# EXHIBIT B

UNITED STATES DISTRICT COURT
CALIFORNIA NORTHERN DISTRICT (SAN FRANCISCO)


IN RE: UBER TECHNOLOGIES, INC.          3:23-md-03084-CRB
PASSENGER SEXUAL ASSAULT
LITIGATION                              May 22, 2025

                                        San Francisco, CA


BEFORE THE HONORABLE LISA J. CISNEROS
UNITED STATES DISTRICT MAGISTRATE JUDGE

TRANSCRIPT OF STATUS CONFERENCE

A P P E A R A N C E S :

For the Plaintiffs: ROOPAL PREMCHAND LUHANA, ESQ.
                    ELIZABETH M. WILKINS, ESQ.
                    Chaffin Luhana LLP
                    600 Third Avenue, 12th Floor
                    New York, NY 10016
                    luhana@chaffinluhana.com
                    wilkins@chaffinluhana.com

                    RACHEL BETH ABRAMS, ESQ.
                    TIFFANY R. ELLIS, ESQ.
                    SARA CRAIG, ESQ.
                    Peiffer Wolf Carr Kane Conway
                    & Wise, LLP
                    555 Montgomery Street, Suite 820
                    San Francisco, CA 94111
                    rabrams@peifferwolf.com
                    tellis@peifferwolf.com
                    scraig@peifferwolf.com


      - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                ROBIN L. HERRERA, RMR, CRR, CRC
                   (Via Zoom Videoconferencing)
                   United States Court Reporter
                     401 West Evans Street
                       Florence, SC 29501
                 robin_herrera@scd.uscourts.gov

              (Stenotype/Computer-Aided Transcription)

```
A P P E A R A N C E S    C O N T I N U E D:

For the Plaintiffs:  MEREDITH DRUKKER STRATIGOPOULOS, ESQ.
                     Edelson PC
                     1728 16th Street, Suite 210
                     Boulder, CO 80302
                     mdrukker@edelson.com

                     TRACEY B. COWAN, ESQ.
                     Clarkson Law Firm, PC
                     95 3rd Street, 2nd Floor
                     San Francisco, CA 94103
                     tcowan@clarksonlawfirm.com

                     CELINE EMILY CUTTER, ESQ.
                     Cutter Law PC
                     401 Watt Avenue
                     Sacramento, CA 95864
                     ccutter@cutterlaw.com

For the Uber        MICHAEL BRIAN SHORTNACY, ESQ.
Defendant:          CHRISTOPHER VINCENT COTTON, ESQ.
                    VERONICA HAYES GROMADA, ESQ.
                    JEREMIAH S. WIKLER, ESQ.
                    KATHLEEN FRAZIER, ESQ.
                    JENNIFER S. HILL, ESQ.
                    MARIA SALCEDO, ESQ.
                    Shook Hardy & Bacon LLP
                    2121 Avenue of the Stars, Suite 1400
                    Los Angeles, CA 90067
                    mshortnacy@shb.com
                    ccotton@shb.com
                    vgromada@shb.com
                    jwikler@shb.com
                    kfrazier@shb.com
                    jhill@shb.com
                    msalcedo@shb.com

                    ALLISON M. BROWN, ESQ.
                    CHRISTOPHER D. COX, ESQ.
                    Kirkland & Ellis LLP
                    601 Lexington Avenue
                    New York, NY 10022
                    alli.brown@kirkland.com
                    christopher.cox@kirkland.com
```

```
 1              SAN FRANCISCO, CA; THURSDAY, MAY 22, 2025
 2                    ZOOM VIDEOCONFERENCING
 3                HONORABLE LISA J. CISNEROS, PRESIDING
 4                            * * *
 5         (Proceedings commence at 10:46 AM.)
 6              COURTROOM DEPUTY:  Court is now in session.
 7    Judge Lisa J. Cisneros presiding.  We are calling
 8    23-md-03084 In Re: Uber Technologies, Inc.
 9              Counsel will state their appearances for the
10    record, and we'll start with plaintiffs.  Roopal, can you
11    please start us off?
12              MS. LUHANA:  Sure.  Good morning, Your Honor.
13    Roopal Luhana with Chaffin Luhana for the plaintiffs.
14    Nice to see you.
15              MS. ABRAMS:  Good morning, Your Honor.
16    Rachel Abrams from Peiffer Wolf for the plaintiffs.
17              MS. STRATIGOPOULOS:  Good morning, Your Honor.
18    Meredith Stratigopoulos for plaintiffs.
19              MS. WILKINS:  Good morning.  Beth Wilkins from
20    Chaffin Luhana for the plaintiffs.
21              MS. COWAN:  Good morning, Your Honor.
22    Tracey Cowan from Clarkson Law Firm for plaintiffs.
23              MS. CUTTER:  Good morning.  Celine Cutter for
24    JCCP plaintiffs.
25              MS. ELLIS:  Good morning.  Tiffany Ellis from
```

1    Peiffer Wolf for the plaintiffs.

2           MS. CRAIG:  Good morning.  Sara Craig for the

3    plaintiffs, from Peiffer Wolf.

4           COURTROOM DEPUTY:  And Michael, please start us

5    off for the defense.

6           MR. SHORTNACY:  Sure.  Good morning, Your Honor.

7    It's nice to see you.  Michael Shortnacy from Shook Hardy

8    firm speaking for the Uber defendants.  I have a few

9    colleagues with me today that will be speaking on issues

10   from time to time depending on the issue:  Christopher

11   Cotton, Veronica Gromada, Jeremy Wikler, Kathleen Frazier,

12   Jennifer Hill, and Maria Salcedo.

13          And I will turn to my colleagues from Kirkland

14   to introduce themselves.

15          MS. BROWN:  Good morning, Your Honor.

16   Alli Brown from Kirkland & Ellis for Uber, and my

17   colleague Chris Cox is on as well.

18          THE COURT:  Okay.  Good morning to the attorneys

19   who have appeared today.  Thank you for coming to the Zoom

20   for the status conference.

21          In addition to the status conference, we also

22   have a set of issues related to the depositions scheduled

23   for Kalanick, Travis Kalanick; so I'll address that as

24   well.

25          Now, to start out with the deposition for

1   Mr. Kalanick, the parties in this MDL are jointly looking

2   to have that continued from next week, on the 27th, to

3   July 3rd.  And there's also -- in the background there was

4   some discussion of a delay in the deposition for

5   Ms. Hazelbaker, which was supposed to happen today.

6           And I've already granted the request to continue

7   the deposition for Mr. Khosrowshahi, which was supposed to

8   happen two days ago, on May 20th, but will now happen

9   on -- be held on July 1st.

10          So anyhow, I expressed a lot of concern in the

11  prior hearing on the deposition request for a continuance

12  for Mr. Khosrowshahi's deposition and Mr. Kalanick, and

13  I'm still very concerned about the delays for a couple of

14  reasons.

15          First of all, it did seem like some of these

16  production issues that are the basis for the request to

17  continue these, you know, from the May dates, these

18  depositions from May to a later point in time is because

19  of some document production issues which the MDL parties

20  expect to resolve.

21          But in my view, it seems like this could have

22  been handled earlier in the spring, and I'm not sure why

23  these issues weren't resolved earlier.

24          And then these aren't the only two high-level

25  executives, current or former, where it's taking some

1    amount of effort to actually get the deposition completed

2    because now I've learned that Ms. Hazelbaker's deposition

3    was continued for some emergency business reason.  And,

4    you know, at least for Ms. Hazelbaker, I wasn't planning

5    to supervise that deposition, but for the CEOs that has

6    been, you know, part of a court order that I will be

7    supervising.

8            And the parties stipulated to the dates for

9    these depositions, and I accommodated that and approved

10   those stipulations and, you know, when I did that, I

11   set -- that put me in a position of not scheduling other

12   matters and, you know, whether that's setting other cases

13   for hearing or scheduling settlement conferences, you

14   know, and, you know, that is a concern to me because there

15   is not -- this case is an MDL, but the parties, you know,

16   really don't -- you know, are not in any special position

17   to move dates that they've agreed to and that they

18   presented to me and then -- you know, then turn around and

19   ask to continue because of -- and for Mr. Kalanick, it

20   seems to be simply because he is busy with his company

21   that does international business.

22           And the plaintiffs had previously said that they

23   were willing to travel internationally.  Although, it's

24   not clear to me, he might be here domestically, but the

25   reasons given to, you know, push this into July is that

1    Mr. Kalanick seems to be busy for some -- you know, with

2    his company, which I already considered when I was ruling

3    on the parties' -- on his motion to, you know, not appear

4    for a deposition because he is an executive of a company.

5    So anyhow, so I still have some reservations about this.

6          And to the extent that the delays are due to the

7    parties not presenting to me document production disputes

8    earlier then, you know, that's a problem with how this

9    case is being managed, and we've already missed a

10   substantial production deadline back in September.  So we

11   need to stay on track.

12         Moving this to -- moving the deposition to July

13   is not a -- it's before the September cutoff for

14   discovery, but we still have to deal with

15   bellwether-specific discovery, and we've got expert

16   discovery following on the corporate common discovery.

17         So I worry about, you know, delays in that

18   rippling down.  So it may seem like, okay, well, we're

19   still doing this well before September, but there are

20   other elements of discovery at play here.

21         I know the JCCP plaintiffs object to moving

22   Mr. Kalanick's deposition to July 3rd.  You know, that --

23   you know, that's some consideration, but to me -- for me,

24   the MDL plaintiffs and Uber in this case drive the

25   discovery, and there's been a number of times where I

1    haven't held to what -- how discovery is being handled in

2    the JCCP either with respect to schedule or on certain

3    substantive disputes.

4           So why is it that Mr. Kalanick's deposition

5    can't be done -- say we've got production completed on

6    June 6th.  I know the one device is going to be imaged and

7    produced then.  And why can't Mr. Kalanick's deposition be

8    done in the second half of June?  Like, what is the real

9    burden or limitation there?  I already considered that he

10   was a busy executive when I limited the deposition to

11   three hours.

12          MS. LUHANA:  Your Honor, Roopal Luhana for the

13   plaintiffs.  I actually had an opportunity to speak with

14   Mr. Kalanick's counsel this morning, Mr. Walt Brown.  And

15   he, unfortunately, represented that he has no dates

16   available in June; that he's a very busy CEO of a company

17   and they're in 70 countries, and he's not in one place --

18   you know, in different places every day.  And so July 3rd

19   was the earliest date that he had available.

20          And I just want to say we really, truly

21   apologize for the inconvenience to the Court here, but

22   unfortunately, this is critical discovery that we need to

23   effectively prepare for the deposition; that's why we're

24   trying to adjourn it.

25          But if there was an earlier date in June, we

 1    would proceed, but we've been told Mr. Kalanick, who is a

 2    third party, can't appear sooner than July 3rd, and that's

 3    why within the confines of what's allowed in PTO 21, we

 4    want to take certain depositions, including

 5    Mr. Kalanick's, post the June 16th timeline and, of

 6    course, significantly before the September 22nd timeline,

 7    and that's what we're trying to do here by proceeding on

 8    July 3rd with Mr. Kalanick's deposition.

 9                 THE COURT:  Go ahead.

10                 MS. BROWN:  Thank you, Your Honor.  I could just

11    jump in on that.  We also corresponded with Mr. Brown in

12    an effort to see if we could facilitate earlier dates as

13    well, and I would just echo what Counsel just said, which

14    is that Mr. Brown told us he went back multiple times to

15    try and confirm if there was any way to give us an earlier

16    date, and July 3rd appears to be the very first

17    unscheduled date in his schedule.

18                 So I do think we did try multiple times to

19    really pressure test that, Judge, because I understand it

20    seems like a long way out, and we did, at least with his

21    counsel, go back several times.

22                 THE COURT:  Okay.  For Ms. Luhana, if his

23    deposition is so important and you oppose the -- you know,

24    his position not to appear at all for deposition, then

25    why -- what was the delay in terms of doing the

1    document -- teeing up the document production disputes?

2            MS. LUHANA:  Judge, we raised this issue with

3    his custodial file for some time, and I'll represent to

4    you that initially we had sent a letter November 2024; we

5    had followed up.  And as you can appreciate, there's a TAR

6    validation that we've been doing to complete custodial

7    files.

8            So the defendants had assured us let's wait

9    till, you know, TAR is complete, and that was done at the

10   end of April 2025, the completion for the TAR validation,

11   for two rounds of it.  And while there were thousands more

12   documents produced for Mr. Kalanick, unfortunately, it's

13   less than 150 emails authored by him.

14           And so in terms of this issue, we had raised it

15   to the Court to give the Court an update in the

16   December 2024 JSR, the January 2025 JSR.  We also

17   represented an April 2025 JSR in terms of the validation

18   and where we were in terms of the hundreds of thousands of

19   documents that had been produced.

20           And as soon as we reviewed those documents, we

21   raised this issue with defendants on May 2nd and had

22   raised that this was an issue that we were seeing a

23   deficient custodial file for Mr. Kalanick and a concern

24   for someone -- a CEO who was heavily involved in the

25   company to have only 100-something emails that he's

1    authored was concerning to us, and that's why we dug

2    further and that's why defendants are now willing --

3    they've located a cell phone, and they're willing to

4    search that cell phone and produce those documents.  And

5    then we have some other outstanding issues that we're

6    addressing with the defendants.

7              But in addition to that, Judge, the board of

8    director minutes are critical here.  The board is making

9    key decisions in terms of Uber strategy.  They monitor the

10   management's performance; they ensure compliance with

11   legal and ethical standards; they assess the internal

12   safety concerns and legal exposure and what Uber is

13   prioritizing.

14             So we need these documents to be able to review

15   them and see them in the full context of the production to

16   effectively take Mr. Kalanick's deposition.

17             THE COURT:  Okay.  So it sounds like based on

18   what Ms. Brown said that July 3rd, according to

19   Mr. Kalanick's counsel, was the first unscheduled date

20   that was available for him after the May date had been

21   scheduled.

22             And so to me that's concerning because, you

23   know, he may have certain things scheduled, personal or

24   otherwise, in June, but they may not be as important as

25   his obligation to appear for a deposition in this MDL.

1          It's unclear what the other scheduled activities
2     are.  You know, sometimes they are critically important,
3     you know, pre-long-set board meetings for his company,
4     important medical appointments, and the like.
5          But I just don't see why -- it doesn't sound
6     like his attorney has addressed whether or not he could
7     reschedule some of the other, you know, commitments that
8     he had in his calendar because it's just not -- that
9     wasn't -- I don't have any kind of -- anything in the
10    record to that effect that he engaged in that level of
11    diligence, yeah, because in order to address the
12    outstanding -- in order to move this May date, which is on
13    account of these delays in document production, you know,
14    I'm willing to do that so that all of the documents are
15    available and we can have a deposition in one go rather
16    than reopening it.
17         But this amount of delay is still not clear to
18    me that it's entirely warranted.  And I think my concern
19    is that, you know, compliance with court orders to appear
20    for a deposition for any person are of utmost importance
21    even for an executive of a company, an executive of a
22    major company.
23         And so it is crucial; so it's an emergency or
24    it's like -- it's emergency-legal priority, it's urgent to
25    show up for the deposition and get that done.  So it's not

1    going to happen in May if I choose to continue it but, you

2    know, why it needs to wait more than a month is not clear

3    to me that Mr. Kalanick is -- or his counsel are treating

4    this with the kind of urgency that I think it deserves

5    given the delays that have already happened in the

6    discovery schedule.

7            So it -- and I think the situation with

8    Ms. Hazelbaker just raises my -- the concerns and it --

9    because it just adds to this sort of environment where

10   there's a laxity around the deposition schedule.

11           But what is the business emergency, without

12   disclosing, like, any confidential business or proprietary

13   information, like...

14           MS. BROWN:  So without disclosing any

15   confidential reasons -- which I can't, actually -- it

16   relates to her role on the executive leadership team.  As

17   part of her function on the ELT an unexpected conflict

18   arose for today's deposition.

19           As soon as we learned of it, we reached out to

20   counsel to inform them and to try to work with them on

21   quickly getting a replacement date on the calendar.  We

22   worked very hard, and we went back and forth a number of

23   times to find something that would happen before

24   June 16th, and we are just one day off on that,

25   Your Honor.  We are able to get and agree on June 17th.

```
 1              And so while I certainly, you know, appreciate
 2    that this is difficult for the Court and that we are
 3    asking for a lot of accommodations, this was an unexpected
 4    ELT-related conflict that I think we've worked together
 5    very cooperatively with the Court's approval to try and
 6    get this on calendar -- back on calendar as soon as
 7    possible.
 8              MS. CUTTER:  Your Honor, if I may.  It's not
 9    entirely accurate that June 17th is an agreed-upon date.
10    It's certainly not an agreed-upon date for the JCCP.
11    The JCCP counsel who is taking Ms. Hazelbaker's
12    deposition, as well as the MDL attorney, offered May 29th
13    for Ms. Hazelbaker.
14              Her deposition was to occur today by
15    stipulation, and that was a date that was scheduled at
16    Ms. Hazelbaker's convenience, and looking forward,
17    May 29th is the day that will work best for counsel given
18    our obligations for preparing for trial and opposing
19    summary judgment and working through expert discovery.
20              MS. BROWN:  Your Honor, we worked very hard to
21    see if that could work, if the 29th could work.  And, in
22    fact, we were trying to do that while Ms. Hazelbaker was
23    at the White House, and we tried our best to see if that
24    can be accommodated.  It cannot.
25              I offered counsel a declaration with the nature
```

1    of the conflicts to the extent they're not confidential,

2    but we have worked very cooperatively, certainly at least

3    with the MDL plaintiffs, to be able to find a date that

4    would be suitable to them.  As I understand, that was the

5    order for the deposition here originally, and I think we

6    found something that is agreeable to the MDL plaintiffs

7    just one day beyond the 16th.

8              And it's our position that we should be able to

9    move forward at that date.  And if the Court requires us

10   to go to Judge Breyer as a result of being one day beyond

11   the 16th, certainly, as we mentioned in our submission, we

12   would be prepared to do that promptly and cooperatively.

13             THE COURT:  It's under submission.

14             MS. LUHANA:  And, Judge, I would represent that

15   we have gone back and forth with Ms. Brown and tried to

16   coordinate with the JCCP plaintiffs.  And unfortunately

17   for us, we are prepared to go forward on June 17th with

18   Ms. Hazelbaker's deposition if the Court allows.

19             THE COURT:  Okay.  Thank you.

20             MS. CUTTER:  Your Honor, the 17th is simply not

21   possible for the JCCP.  And if I may be heard on the

22   Kalanick deposition issue before the Court takes that

23   under submission?

24             THE COURT:  Go ahead.  I mean, you've got the

25   least amount of weight in this, but I'll certainly hear

1    what you have to say.

2          MS. CUTTER:  Understood, Your Honor, and I

3    appreciate the Court's time.

4          We have not heard from Uber whether it plans to

5    produce any of the documents at issue here at all, which

6    documents it plans to produce related to Mr. Kalanick,

7    when it plans to produce them, and if it has identified

8    documents that it plans to produce, Uber's made no

9    statement on the record as to why those documents have not

10   previously been produced.  So at this point, there's no

11   record as to why that deposition should not go forward.

12   Thank you.

13         THE COURT:  I think that there was going to be

14   an imaged personal device that was going to be produced or

15   searched.

16         MS. LUHANA:  Yes.

17         MR. COX:  That's right, Your Honor, and we have

18   tried to be responsive to MDL plaintiffs' requests and the

19   conferrals we've had with them.  While we don't disagree

20   that Mr. Kalanick's file is deficient, we did locate an

21   image of this phone which contains 60,000 documents that

22   we're expeditiously loading so we can review and produce

23   any responsive materials from that phone.

24         We're also working expeditiously to produce the

25   board materials that Ms. Luhana described earlier, and the

1    planned productions are described in the submission to

2    Your Honor today, which it was made available to JCCP

3    counsel.  And we're, of course, willing to meet and confer

4    and describe that -- those planned productions further

5    with JCCP counsel if that would be helpful.

6            THE COURT:  We need to make sure that the JCCP

7    counsel have a copy of the letter that was filed here and

8    explain and answer any further questions that Ms. Cutter

9    might have about what documents will be produced.

10           MR. COX:  I'll reach out to Ms. Cutter right

11   after this hearing.

12           THE COURT:  Okay.  Now let's turn to the status

13   report.

14           MS. BROWN:  Your Honor, could I just respond to

15   one JCCP argument before we leave the deposition

16   rescheduling?

17           THE COURT:  Sure.

18           MS. BROWN:  I just want to underscore, and I

19   know we put it in our letter, but it's our position that

20   these depositions were ordered by the MDL court.  JCCP did

21   not previously have an order for those depositions, and

22   it's this Court and the agreement subject to the Court's

23   approval with the MDL plaintiffs that, of course, should

24   govern here.  Meaning the right to these depositions is

25   coming from this court, not the JCCP court, and so I think

1    as the Court has already indicated, the arguments we heard

2    on behalf of the JCCP should not be given weight, or as

3    much weight.  Thank you.

4            THE COURT:  Right.  Let's move on to the status

5    report.

6            MS. LUHANA:  Your Honor, Roopal Luhana for the

7    plaintiffs.  May I say something about PTO 21?

8            THE COURT:  Yes.

9            MS. LUHANA:  We just -- the parties respectfully

10   request that we be allowed to take certain depositions and

11   schedule them post the June 16th timeline, but in advance

12   of the September 22nd close of discovery timeline.

13           And, of course, this isn't an attempt to, like,

14   derail or delay discovery.  As you know, the parties have

15   been working around the clock to move the case forward and

16   prepare it for trial.  We just want the Court to give us

17   the grace to schedule certain depositions post the

18   June 16th timeline, and we believe this complies with the

19   deadlines that Judge Breyer has put in his PTO -- in PTO

20   21 because the close of discovery is September 22nd.  So I

21   just wanted to raise that with the Court.

22           THE COURT:  The deposition you want to schedule

23   after June 16th?

24           MS. LUHANA:  We're working to schedule a number

25   of 36(b)(6) depositions, and so there are a handful of

1    36(b)(6) depositions based on the witnesses' availability

2    as well as counsels' availability.  It's difficult to get

3    them all before the June 16th timeline.  So we're --

4                THE COURT:  How many?  Who were you talking

5    about?  The general topic areas?

6                MS. LUHANA:  Yeah.  There are a handful of

7    30(b)(6)s, and we haven't finalized all those dates.  I

8    believe we have three dates that are finalized, and there

9    are a handful more that we're trying to schedule, but we

10   can submit the schedule to the Court if Your Honor would

11   like.

12               THE COURT:  Well, yeah.  If you're referring to

13   a handful, I don't know if that means, like, 20 or 5.

14               MS. LUHANA:  Five or potentially -- seven

15   potentially.  But it's because one 30(b)(6) notice there

16   may be, like, two or three witnesses that cover that

17   notice.

18               And so in terms of the 30(b)(6) notices, I

19   believe we have eight notices out.  A number of them will

20   be before the June 16th timeline, but a handful will be

21   after the June 16th timeline, and we're working to

22   finalize the schedule right now.

23               THE COURT:  Are you going to serve 30(b)(6)

24   notices -- are you asking to serve 30(b)(6) notices after

25   June 16th, or just to deal with -- you're not serving any

1    more, you're just trying to schedule to address those
2    eight notices?
3                MS. LUHANA:  Correct.  They've been served some
4    time ago, the notices.  I believe sometime in February
5    they were served.  We're just looking to schedule these
6    depositions.
7                THE COURT:  And your expectation is that there's
8    five to seven?
9                MS. LUHANA:  That may be post June 16th, that is
10   correct.
11               THE COURT:  So I think scheduling a 30(b)(6)
12   noticed witness after June 16th is not a clear violation
13   of that discovery deadline, but cumulatively, you know, if
14   we have a whole lot of common nonexpert discovery going
15   off -- going on after June 16th to the point that
16   substantial amount of common discovery is still going
17   after June 16th, then it becomes a violation of
18   Judge Breyer's rule.
19               But I have to kind of look at it in the context
20   of what's going on, and we've already got a number of
21   executives who for, you know, any number of reasons are
22   seeking to have their depositions after the substantial
23   discovery cutoff.  And that, along with a bunch of
24   30(b)(6) depositions being delayed, I think, you know,
25   might start to tip the scales.

1          One approach might be for me to set a cutoff for

2     non-case-specific depositions to be completed by July 16th

3     absent exceptional circumstances, because what I'm trying

4     to control, of course, you've got expert discovery coming

5     on and also the bellwether case-specific discovery; so

6     you're going to be busy, you know, doing those

7     depositions, briefing those disputes.

8          So we have to kind of sequence and stagger the

9     work.  And the executives that are -- you know, it's

10    getting to the point where it's creating an impression of

11    foot dragging, but I wouldn't say that's entirely the case

12    here because we also seem to be -- you know, there seems

13    to be some significant delay as far as teeing up

14    document -- completing document production, though some of

15    that delay seems attributed to the TAR -- the second TAR

16    validation, which I ordered.

17         So all of this is to say everybody's working

18    very hard; so I want to recognize that, but also I issued

19    an order that said these, you know, executives need -- you

20    know, certain executives need to appear for deposition,

21    and I considered how important their business is and their

22    work is already, and that's accounted for already when I

23    ordered them to appear for deposition.

24         And if there's extended delay on account of

25    challenges to scheduling the deposition around all this

1    other business activity, then it has an effect of their

2    achieving -- avoiding a deposition by being an executive

3    in charge of a large business.

4         And so we kind of achieve what they ask for

5    through a different -- you know, through a different

6    tactic, discovery-delay tactic, and so -- and it's to the

7    detriment of the overall case management schedule, and it

8    creates a burden on the Court where I'm monitoring the

9    deposition.

10        So anyhow, I'm segueing back to the earlier

11   issues around the deposition schedule for Mr. Kalanick and

12   now for, you know, Ms. Hazelbaker.  But coming back to

13   this issue related to the 30(b)(6), what are the parties'

14   response to my setting July 16th as the cutoff for

15   30(b)(6) depositions and get them done by that date,

16   absent some exceptional circumstances they won't be

17   scheduled after June 16th?

18        MS. LUHANA:  I believe the parties can work

19   towards that, of course, and we understand Your Honor's

20   concern.  And the goal here is, of course, to ensure that

21   this doesn't delay the progress of the litigation in

22   preparing for trial, and we'll work around that timeline.

23        I believe Mr. Cox may have something more to add

24   to that in terms of scheduling some of these depositions

25   because he's been working to find the witnesses'

1    availability for these 30(b)(6)s.

2        MR. COX:  Thank you.  Yes, we have.  And I think

3    we can work with the date that Your Honor just suggested,

4    and I think all the dates we've been talking about so far,

5    and we've gone back and forth many times trying to work

6    collaboratively to accommodate different people's

7    schedules.  We're in June; so, you know, I think if

8    Your Honor is talking about a July 16th deadline, then, as

9    Ms. Luhana said, I think we can work towards that

10   effectively.

11       THE COURT:  Okay.  Anyone else?

12       Okay.  So ordering 30(b)(6) depositions to be

13   scheduled and completed before July 16th, 2025, absent

14   exceptional circumstances.  And the parties are further

15   advised that you should not expect or plan for any kind of

16   extension on the expert discovery deadlines.

17       So we've addressed the 30(b)(6) witness

18   scheduling.  Now let's get to the status reports and the

19   different issues there.

20       So for the defendants' responses to plaintiffs'

21   bellwether discovery requests, there's a dispute there and

22   I'd like to get it teed up in a PTO 8 letter.  So when can

23   the parties file that letter with the Court?

24       MS. STRATIGOPOULOS:  Thank you, Your Honor.

25   Meredith Stratigopoulos for the plaintiffs.  We would

1    propose that the plaintiffs have their portion to

2    defendants on Monday at 5:00 PM Pacific Time.  We know

3    that it's a holiday, but the members of our team on that

4    brief have said they can make that work.  Defendants'

5    response by Tuesday evening, to the Court by Wednesday at

6    5:00 PM Pacific, and then we would like a hearing as fast

7    as possible on these; so perhaps Thursday or Friday.

8            THE COURT:  The 29th or the 30th?

9            MS. GROMADA:  If I may, Your Honor,

10   Veronica Gromada for Uber.  I have no objection to Monday

11   for plaintiffs' date, but I would ask that we follow the

12   typical PTO 8 schedule, which would be the defendants

13   providing their response three days later, and that's in

14   part because there are a number of productions that have

15   already been made, even through last night, and so we're

16   not even 100 percent clear on where certain disputes

17   exist.

18           And so I think that there's an opportunity

19   between now and Monday for the parties to have further

20   conversations to get clarity around what has and has not

21   been provided and what's forthcoming.

22           MS. STRATIGOPOULOS:  Your Honor, if I may, we

23   have the first plaintiff bellwether deposition starting on

24   June 9th.  We do not want to reschedule that.  But if we

25   are moving this to the first week of June, there's a very

1    real risk of that happening.

2         If to the extent that plaintiffs don't believe

3    that we have received all of the bellwether documents that

4    we've requested that could be used to prepare for, provide

5    context to, or be used as an exhibit in those plaintiffs'

6    depositions, what we are still missing that -- again,

7    maybe they've come in in the last 20 minutes or so -- we

8    have not seen responses for all of the wave one

9    bellwether's supplemental responses to the requests for

10   production that identify by Bates ranges the specific

11   documents that are actually responsive to that request.

12        Among other issues, candidly, we have been

13   trying to tee this up for PTO 8, and the defendants just

14   continue to move the goalpost just enough that that

15   briefing is not ripe.  And so we agree with the Court that

16   it's time for this to get teed up.

17        We would like to move as quickly as possible to

18   ensure that these bellwether depositions don't have to be

19   rescheduled.  If we're kicking this into the first week of

20   June, we think that there's a very serious risk of that,

21   versus if we can try and get this resolved next week with,

22   hopefully, an order from the Court that first week of

23   June, it potentially gives us enough time to review a

24   supplemental production that would be in response to the

25   Court's order.

1          MS. GROMADA:  Your Honor, if I may briefly

2     respond.  So far we've provided more than 2,100

3     bellwether-specific documents since bellwether discovery

4     has commenced.  And in some instances, communications logs

5     being an example, one of those 2,100 documents could be as

6     long as 20,000 pages.

7          So we have been responding, and not only have we

8     been responding, we've been trying to communicate with

9     plaintiffs about providing more particularized discovery

10     requests so that we're not having to respond to what seems

11     to be essentially cookie-cutter requests across the board.

12     And let me give a very specific example that I think is

13     going to be insightful here, Your Honor.

14          With respect to one particular bellwether

15     plaintiff, they are asking for marketing-related

16     information regarding the use -- I'm sorry -- regarding

17     alcohol.  For example, maybe if Uber had certain marketing

18     ads with respect to Mothers Against Drunk Driving and any

19     of those types of collaborative efforts.

20          Yet, the plaintiffs have indicated, with respect

21     to this particular bellwether, that there's no indication

22     that alcohol consumption is at play in that particular

23     case.  So why should, in that case, for example, Uber have

24     to search for these specific cities: Johnston, Iowa;

25     Council Bluffs, Iowa; Crescent, Iowa; Omaha, Nebraska, and

 1    Rockland, California, and there are specific date ranges
 2    given, Your Honor.
 3            Why should we have to search for any
 4    Uber-specific marketing to those specific cities or
 5    geographic areas when that is not even something that the
 6    plaintiffs have put in place in that particular
 7    bellwether?
 8            Those are the type of more particularized
 9    discussions that we should be having versus all plaintiffs
10    across the board should be getting the exact same types of
11    documents.  That's just not appropriate at this stage of
12    bellwether litigation.
13            MS. STRATIGOPOULOS:  Your Honor, if I may, it's
14    the first time we're hearing that, May 22nd, and they've
15    had these requests since April 26th.  The particular
16    plaintiff that they're talking about is not in wave one,
17    and the marketing data that they're referring to, 2,100
18    documents across 20 bellwethers is -- it's about 20
19    documents a bellwether.
20            And the marketing spreadsheets that opposing
21    counsel is referring to are, indeed, going to be a subject
22    of this briefing because for some of them I will use the
23    Peiffer Wolf case in wave one AR.
24            In AR case, the communications that Uber sent to
25    the plaintiff are produced in a spreadsheet that contains

1    raw data that's about 60,000 rows.  And plaintiffs are

2    unable to actually interpret what was sent to the

3    plaintiffs by Uber in many of these rows because they

4    appear as raw data.  For example, like,

5    apple-designate-color-!.  And so --

6                THE COURT:  Yes.  I'm going to make a point for

7    all of the attorneys to understand where I'm coming from

8    on discovery.  I have been largely dialed in and locked

9    in, focused on the common discovery.  And we are shifting

10   into this realm where we're getting deeper and deeper in

11   into the bellwether discovery, and so kind of grasping and

12   starting to understand what types of discovery issues are

13   going to be presented in the bellwether discovery

14   disputes.

15               I'm just kind of getting up to speed to

16   understand what the dynamics are and what the common types

17   of issues are beyond what I've already seen with the fact

18   sheets.  And so the parties' discussion of some of these

19   particulars, like the argument that you're starting to

20   preview, are of the limited value.

21               But what I do want to get to is scheduling so

22   that we can -- I just was chastising, you know, counsel

23   for delay and getting document production disputes teed up

24   for me, especially related to the executives, so we can

25   stay on track with the schedule for, you know, these

1    depositions at the end of May, though recognizing the

2    point that, you know, was raised about when the TAR

3    production's completed.

4            So anyways, I don't want to have the same

5    problems with bellwether discovery where the depositions

6    are delayed on account of document production issues that

7    were not, you know, properly teed up.

8            You know, maybe one approach would be for

9    plaintiffs to just go ahead and file what your dispute is,

10   your portion on Monday, so you get that out there.

11           And to the extent that, Ms. Gromada, you think

12   that there's a couple of issues that might be -- go away

13   or be negotiated, that can be done over the next few days

14   before plaintiff, you know, files their portion of the PTO

15   letter with me and then, you know, Uber can file the

16   response on Wednesday, and then I'll decide.

17           I could potentially set a hearing that follows

18   Judge Breyer's CMC or later in the day after

19   Judge Breyer's CMC case management conference on Thursday.

20   So that would move this along, you know, quickly, but you

21   all would be kind of working out a PTO later in the joint

22   format.

23           Ms. Gromada, you're shaking your head.  Does

24   this sound -- an approval like that make sense?

25           MS. GROMADA:  If I may briefly just -- I want to

```
 1    make sure just from a point of clarity.  As I hear
 2    Your Honor, plaintiffs would file their PTO 8 on Monday,
 3    but from there are we following PTO 8 and the times that
 4    are set forth within PTO 8, because from the beginning of
 5    receiving plaintiffs' draft through the end of the
 6    process, if my memory serves me correctly, is one week.
 7             And so then we would have to work together over
 8    the next few days with, again, plaintiffs giving us their
 9    half, three business days later they would receive our
10    half, and then the parties would work on revisions and
11    then file it with the court, as I recall, within one week.
12    Is that what Your Honor is stating?
13             THE COURT:  It's something different.  In my
14    recollection of PTO 8 is that whole process takes six
15    business days.  And somebody could disagree if my memory
16    is off, but about week, but, like, slightly more than a
17    week, and then here we've got a holiday.  So -- but what
18    I'm proposing is something different.
19             Plaintiff files with the court what they would
20    otherwise put in their portion of the joint PTO 8 letter.
21    They just file that text, that argument, in a letter
22    directly to me.  And then if we move very quickly, Uber
23    would respond on Wednesday, and then I would have the
24    hearing on Thursday later in the day after the case
25    management conference before Judge Breyer.
```

1          MS. GROMADA:  Go it.

2          And so again just to be clear, Your Honor,

3   you're suggesting separate submissions to Your Honor with

4   Uber responding by Wednesday of next week, okay.

5   Understood Your Honor.

6          THE COURT:  Right.

7          MS. STRATIGOPOULOS:  Your Honor, if I may,

8   plaintiffs are completely on board with that.  We do have

9   two administrative requests.  The first would be for some

10  extra pages.  Given the amount of deficiencies, we would

11  ask for five extra pages.

12         We would also ask to be able to attach a

13  spreadsheet that itemizes here's the requests that are at

14  issue, here are the responses, when they were due, and

15  here's where we are on each.  We think that would be an

16  easy way to consolidate some of these issues.

17         MS. GROMADA:  Your Honor, if I may, especially

18  given the holiday, and we do need an opportunity once we

19  see plaintiffs' portion to work through any -- you know,

20  any nuanced itemized issues that may need to be addressed

21  with our client, if we could please have until Thursday,

22  we'd appreciate that.

23         THE COURT:  To file your response?

24         MS. GROMADA:  Yes, Your Honor.

25         THE COURT:  Okay.  Then we would do the hearing

1    on Friday.  Just a moment.  Let me just look at me.

2                COURTROOM DEPUTY:  You do have a settlement

3    conference that day, Your Honor.

4                THE COURT:  Yeah.  That might just be an early

5    morning hearing.

6                COURTROOM DEPUTY:  The settlement conference

7    starts at 10:00 AM; so earlier would be 9:00 or 9:30,

8    8:30, 9:00 o'clock.

9                MS. GROMADA:  We definitely appreciate the

10   Court's willingness for an accommodation, especially in

11   light of the likelihood of additional pages.

12               THE COURT:  And did you want to review the

13   spreadsheet?  The plaintiffs want to submit a spreadsheet

14   with it that has everybody's positions on it.  But I guess

15   the defendants would --

16               MS. STRATIGOPOULOS:  Your Honor, I should have

17   been more clear.  It wouldn't have everybody's positions

18   on it.  It would just be here are the -- like, here are

19   the requests at issue, here's when they were served,

20   here's when we received responses, and here's the request.

21               Of course, the defendants can make their own

22   that they submit on Thursday if they think there's

23   something wrong with it.  I appreciate counsels'

24   representations that they'll try to resolve some of these

25   issues over the weekend; so hopefully that spreadsheet

1  will become less, or perhaps we will eliminate the need

2  for it.  But that is our understanding of what we would

3  like to submit just to make sure that they're all in one

4  place.

5          THE COURT:  Your portion of the joint letter is

6  ordinarily two and a half pages, is my recollection; so

7  you're asking for an additional five pages?

8          MS. STRATIGOPOULOS:  Yes, Your Honor.

9          THE COURT:  Okay.  I'll just -- I'll give you

10  six pages, and you can attach the spreadsheet.

11          MS. STRATIGOPOULOS:  Thank you, Your Honor.

12          THE COURT:  And the interrogatory requests or

13  the production -- the written discovery request and

14  written response, and then Uber shall have until Thursday

15  at 5:00 PM to file their response.

16          I don't -- I have to think about when the

17  hearing is going to be because that's going to be a very

18  limited amount of time, depending on the nature of the

19  disputes, a, to whether or not we can have -- will be --

20  I'll be ready by Friday morning at 8:30.  So it might need

21  to be pushed over.  It might be a more effective hearing

22  if it's on Monday.

23          But, again, if I have it on Monday, June 2nd,

24  it's going to be early, at 8:30 or 9:00.

25          MS. STRATIGOPOULOS:  The plaintiffs just are

```
 1    open to however soon the Court is able to do it.  But, of
 2    course, we'll work with whatever date the Court proposes.
 3                THE COURT:  All right.
 4                MS. GROMADA:  Understood, Your Honor.  Thank
 5    you.
 6                THE COURT:  Okay.  Now, there's also disputes
 7    that are a mirror -- I mean, the particulars of the
 8    dispute, but there's a general set of disputes that
 9    defendants have regarding plaintiffs' responses to the
10    defendants' bellwether written discovery requests.
11                So that needs to be presented to me, whether we
12    do the PTO letter approach or the modified approach that I
13    just laid out.
14                MR. COTTON:  Yeah.  Your Honor, this is
15    Chris Cotton for Uber just briefly on that.  We actually
16    did submit a PTO 8 submission on those issues the other
17    day.
18                THE COURT:  Oh, okay.
19                MR. COTTON:  Happy to address it now or
20    supplement.
21                THE COURT:  Okay.  So clearly I haven't had a
22    chance to review it.  Yes.  I think there's a bunch of
23    disputes related to the interrogatories on these
24    productions; so I don't have -- I'm not prepared to hear
25    argument on it right now.
```

```
 1              MR. COTTON:  Fair enough.
 2              THE COURT:  But thank you for getting it teed
 3    up, and I'll try to deal with that before I address the
 4    upcoming discovery that's going to be filed on Monday.
 5              MR. COTTON:  Appreciate it, Your Honor.
 6              THE COURT:  Okay.  All right.  So let's keep
 7    moving.
 8              Now I'm on Section 4 of the status report,
 9    safety incident report data.
10              MS. WILKINS:  Good afternoon, Your Honor.  I can
11    speak to that, hopefully, very briefly.  We have been
12    continuing to meet and confer at least by text and email
13    on that issue since we submitted the status report,
14    and I think we are very close to an agreement on a
15    schedule for submitting something to Your Honor if we
16    haven't reached an agreement before then as to June 3rd
17    for a date to submit any disputes to you, but I will let
18    Michael Shortnacy speak to that as well.
19              MR. SHORTNACY:  Good morning, Your Honor.
20    Michael Shortnacy speaking for Uber defendants.  That is
21    correct.  Ms. Wilkins and I have been conferring.  I think
22    that we are still in disagreement as to how we got here
23    and the parties' agreement that will be presented to the
24    Court, but I won't preview that for you here.
25              I do think we're aligned on at least a schedule
```

1    to present the issue to the Court along of lines of what

2    Ms. Wilkins said, which would also -- I would just add,

3    the parties expect to complete their conferral process by

4    May 28th, and we would submit on June -- I think

5    Ms. Wilkins, if you're agreeable, June 4th is probably the

6    better date to select for submission.

7            But, Your Honor, subject to your views, of

8    course, we would propose that be the schedule for briefing

9    and submitting the PTO 8, if there is one, that remains.

10           MS. WILKINS:  That's fine for plaintiffs.

11           THE COURT:  So we were dealing with this back at

12    the March 27th status conference, and in an effort to try

13    to get this teed up and presented to me real quickly, I

14    had set an April 4th deadline for the parties to meet and

15    confer and either file a stipulation or a motion by Uber

16    for relief from that written discovery.

17           So then I got some sort of letter that was filed

18    on April 4th, and it had an update, and there was no

19    stipulation or a motion for relief filed, and the parties

20    said that they had reached an agreement on some issues,

21    most of the issues; so I just took that as a request to

22    continue that deadline that I set for the dispute to be

23    submitted to me.

24           And anyhow, on -- I set -- I continued that

25    deadline to April 10th.  And then I got -- a joint status

1    report was filed and the statement was that all of the

2    disputes had been resolved, and now we're here on May 22nd

3    and it sounds like there's still disputes related to this.

4              So these are related disputes; right?  I mean,

5    it seems like what is going to be presented to me is

6    basically plaintiffs' contentions that Uber's responses to

7    the interrogatories were not in compliance with the

8    April 4th agreement.  Is that what's going to -- is that

9    what you expect to file with me?

10             MS. WILKINS:  So, Your Honor, I think there are

11   kind of two separate issues here.  The first is the

12   parties did believe that we had an agreement on April 4th

13   and April 10th, and now that the plaintiffs have seen

14   Uber's responses to those interrogatories, it seems that

15   we misunderstood each other on a couple of relatively

16   small aspects but important from plaintiffs' perspective.

17             THE COURT:  When did you receive those responses

18   from Uber?

19             MS. WILKINS:  We received them over a number of

20   dates, but I think they were complete -- I would have to

21   double-check that.

22             MR. SHORTNACY:  April 23rd.

23             THE COURT:  What did you say?  When were they

24   complete?

25             MR. SHORTNACY:  April 23rd for a portion of the

Robin L. Herrera, RMR, CRR, CRC

1    interrogatories, and May 1st for the second portion.  We

2    had to split them up into two pieces in response.

3              THE COURT:  Okay.  So then on -- when you all

4    filed your joint letter on April 10th saying that the

5    issues had been resolved, they had been resolved in the

6    sense that there was some sort of agreement about what

7    Uber was going to submit, but Uber hadn't actually

8    submitted it by April 10th?

9              MS. WILKINS:  That's correct.  We had agreed on

10   which interrogatories Uber would respond to and some

11   modifications in the scope of those.

12             And if I could continue.  So the problems that

13   have arisen since we've received the responses are, one,

14   it appears there was some misunderstanding about some

15   scope issues, and then separately the data that was

16   produced in response to some of the interrogatories has

17   some what appear to be discrepancies from plaintiffs'

18   review.  And so we need to work through those and

19   understand whether they are discrepancies and can be

20   resolved or whether there's a dispute on that data.

21             MR. SHORTNACY:  Your Honor, if I may be heard.

22   Michael Shortnacy speaking.  Our view, again, to preview,

23   is that there is nothing ambiguous or unclear about the

24   parties' agreement.  Uber would, pursuant to that

25   agreement, provide categorization counts for cases

1    connected to the first three safety reports.

2            And in exchange for other concessions and

3    compromises, we would not provide categorizations for the

4    data that is in process and still being audited by the

5    company, and that instead we would respond to an

6    interrogatory with sworn, verified responses.

7            And then also in the deposition of the chief

8    data scientist, who was deposed in late April, would

9    explain why that is the case, that those claims or reports

10   are being analyzed by the company; their data is in

11   process, and categorization of it simply is not possible

12   in the way that it was possible for the earlier periods

13   that have been finalized and reported on.

14           And so that is the nature of the dispute.  We

15   believe the parties' agreement was crystal clear on that

16   exchange of compromise, and we've complied with that.

17   We've provided all of the testimony in written form and in

18   deposition form, which -- and in addition to the actual

19   data for the earlier reported periods which Your Honor

20   will remember was the crux of the dispute.  What was the

21   underlying data of the reports.  Plaintiffs are now

22   seeking information beyond that for data that's in

23   process.

24           THE COURT:  Okay.  So when do plaintiffs propose

25   having this dispute filed with me?

1          MS. WILKINS:  I think we agreed on June 4th.

2          THE COURT:  Okay.

3          MR. SHORTNACY:  Correct, Your Honor.

4          THE COURT:  June 4th.  Because really this -- to

5     me it doesn't seem like this is the usual, you know, PTO

6     letter that's needed in the sense that you all had an

7     agreement on April 4th.  I just need to know what the

8     agreement is.  I assume the agreement was in writing --

9          MR. SHORTNACY:  Yes.

10         THE COURT:  -- and what Uber's responses were

11    and then plaintiffs can have an argument about why it was

12    insufficient and Uber can respond as to why it was

13    sufficient and compliant with the agreement.

14         So I don't -- I mean, can that be filed on

15    Tuesday, the 27th?  You're not having a deposition on the

16    27th potentially.

17         MS. WILKINS:  A separate issue from the scope of

18    the interrogatories is the data issue that I was referring

19    to.  I think we might need a little bit additional time to

20    work through the specific data points that are

21    problematic, because I think my understanding is

22    Mr. Shortnacy's team will need to go back to their data

23    people and kind of double-check some of the things that

24    we're seeing as potential problems, and then we'll need to

25    be able to go back to our experts with their responses and

1   run through those.

2          So for the data portions which are related to

3   the interrogatories 16, 29, and 28 that we pointed out in

4   the JSR, I don't know that we can handle those by the

5   27th, but certainly interrogatories 7 and 8 that are more

6   the scope issues we could address those by the 27th.

7          MR. SHORTNACY:  Your Honor, I agree with that.

8   I think that the issues connected to these so-called

9   discrepancies -- which we don't agree with, of course,

10  that terminology -- but to the extent that plaintiffs have

11  raised issues and some of them they have raised in

12  providing us with certain IDs and specifics that we can --

13  now enables us to do an investigation of what there may be

14  in the data, and we're working with plaintiffs on that, I

15  think that's right to sort of cleave those issues off

16  because I think they will either turn on a discrepancy

17  that's there or it isn't, and if it is there, if it's

18  resolvable or if it isn't.

19         And I don't think based on the disputes -- and I

20  invite Mr. Wikler to correct me -- but I don't think the

21  disputes there necessarily that Uber has withheld

22  information, it's what we have given purportedly has a

23  data error or something.

24         And so to me those are uniquely susceptible to

25  being worked through by the parties and their experts if

1    they can be worked through, and so I think that can go on

2    a -- I would propose to the Court that that may go on a

3    separate track because it would require more time with our

4    respective analysts to get through those issues.

5         THE COURT:  Okay.  So it sounds like the parties

6    are in a sense coming up with an agreement right in front

7    of me, which is to separate this kind of group of disputes

8    into two tracks.  One track the plaintiffs could file

9    their -- I don't know, can you guys do a PTO 8 letter and

10   file that by the 27th?  That would mean setting aside the

11   mutual dates for drafting up the letter.

12        MR. SHORTNACY:  Your Honor, I would just ask,

13   respectfully, because we do have stakeholders and

14   individuals that we would need to run information by over

15   the holiday weekend that, you know, if we could push that

16   date out further to permit the turn of briefs and so on to

17   be less compressed over the holiday weekend, I think that

18   would be most appreciated and may be a point that

19   Ms. Wilkins and I can agree on, on that score.  If the

20   Court would be amenable to pushing that date to say, like,

21   Thursday, for example, the 29th.

22        MS. WILKINS:  I would defer to the Court here.

23   We can do the 27th; we can do the 29th.

24        THE COURT:  Okay.  So which group of -- what

25   letter would be filed on the 29th?

1         MS. WILKINS:  The letter on the 29th would

2   address the disputes about the scope of the discovery

3   separate from what we're referring to as the data

4   deficiencies, which would be addressed on June 6th -- I'm

5   sorry, June 4th.

6         THE COURT:  Okay.  And in both cases for the

7   29th and June 4th, you would submit joint letters?

8         MS. WILKINS:  Correct.

9         MR. SHORTNACY:  Correct, Your Honor.

10         THE COURT:  All right.  So the data discrepancy

11   joint letter will be due on June 4th, 2025, and the joint

12   letter regarding the scope of discovery will be due on

13   June 29th.

14         MS. WILKINS:  Thank you, Your Honor.

15         THE COURT:  Okay.

16         MR. SHORTNACY:  Sorry.  I think May 29th.

17         THE COURT:  Sorry, May 29th.  I misspoke.

18         MR. SHORTNACY:  Thank you, Your Honor.  We

19   appreciate that consideration.

20         THE COURT:  Okay.  All right.  So let's keep

21   moving.  We're now to Section 5.  This concerns the

22   adoption of medical records.  Plaintiffs' position is that

23   the issues are not ripe yet.

24         MS. ABRAMS:  Yes, Your Honor.  Rachel Abrams for

25   the plaintiffs.  We just recently received letters

1    individually in cases raising concerns about redactions.
2    Certain firms have redacted some medical records, private
3    mental health records, and provided privilege logs.  But
4    these are individual issues and being dealt with
5    individually with Uber's counsel.
6            THE COURT:  Does there need to be any kind of
7    deadline for getting them resolved?
8            MS. ABRAMS:  We just received in Peiffer Wolf
9    cases last week the letters raising concerns about these
10   redactions.  I have personally sent letters in the two
11   cases that have -- Uber has raised issues with.  I can't
12   speak for other counsel and what their redaction concerns
13   are, but these are not ripe and are being met and
14   conferred on on an individual basis.
15           MR. COTTON:  And, Your Honor, this is
16   Chris Cotton, if I may briefly be heard.
17           THE COURT:  Yes, go ahead.
18           MR. COTTON:  Yeah.  So, again, as Ms. Abram,
19   indicated, this issue is unfolding in the context of
20   medical and mental health records where privacy is being
21   lodged as a basis to redact.  And just fundamentally, Your
22   Honor, I think that's an issue.  If we need to address
23   them on a case-by-case basis, we certainly can.  My
24   concern with that would be the time it will take
25   necessarily to do so.

 1          Obviously, when we're talking about medical and

 2     mental health records in the first instance, we're

 3     inherently talking about private matters to begin with,

 4     and we certainly have a protective order in place to

 5     safeguard those understandable interests.

 6          MS. ABRAMS:  And again, Your Honor,

 7     Rachel Abrams for the plaintiffs.  They are very

 8     individual issues with regards to each case.  I can't

 9     speak globally on these issues of redaction of mental

10     health records for the other bellwether cases or other law

11     firms and plaintiffs.

12          But, again, not knowing the scope and concerns

13     that Uber's counsel has in regards to these redactions,

14     you know, again, they're an individual concern I think

15     that should be addressed, and if there is a more global

16     concern, we can raise it via the PTO 8 process.

17          THE COURT:  All right.  Let's keep moving to the

18     next section.  I'm not going to set any kind of deadline

19     with regard to the redaction of medical issues.

20          But moving on to the hyperlinks in Section 6 of

21     the joint status report, is there a deadline that should

22     be scheduled to present any outstanding disputes on

23     hyperlinks?

24          MS. CRAIG:  Good afternoon, Your Honor.

25     Sara Craig for the MDL plaintiffs.  I don't believe we had

1    an area of dispute here.  We merely understood that the

2    Court wished for an update; so this was by way of

3    providing an update.

4            THE COURT:  Okay.

5            MS. CRAIG:  Thank you.

6            THE COURT:  All right.  And Section 7, my

7    thinking is that Uber should provide some deposition

8    dates.

9            MR. COX:  Your Honor, we have provided

10   deposition dates for the case specific 30(b)(6)

11   depositions.  As we indicated in the letter, we identified

12   four witnesses.  We have offered dates, continuing to work

13   with plaintiffs to settle on dates that work for both

14   parties.

15           MS. STRATIGOPOULOS:  Your Honor, if I may,

16   Meredith Stratigopoulos for plaintiffs.  So the dates that

17   have been offered are quite simply not enough time to

18   complete the 30(b)(6) depositions.  These are for wave one

19   depositions; so there are six plaintiffs in wave one.

20   They each have seven hours, and there is not a lot of

21   overlap on the case specific 30(b)(6) issues.  They are

22   about individual riders, drivers, and rides.  There is not

23   a lot of overlap.

24           And so we have been trying to get dates from

25   Uber since we served these notices on April 14th-ish and

1  have been following up with them over and over again.
2  It's only in response to the IDC brief we sent them last
3  night that we finally received some dates.
4          However, the dates, again, are not enough time.
5  For example, for one of the witnesses we think Uber will
6  need to provide four dates so that plaintiffs can use the
7  time that's allocated to them to depose him.
8          This is one where we would ask the Court, if
9  they're open to it, to move as quickly as possible in
10 getting this issue teed up.  We would like to present our
11 position, have defendants present theirs, and then just
12 get these dates on the schedule.
13         Of course, to the extent that they get resolved
14 before then, that would be great, but we really do think
15 we need a hard deadline here as, again, we have been
16 trying to get these dates calendered for over a month and
17 the ball keeps moving on defendants' side.
18         And, again, every time we try to tee it up and
19 send the brief, as we have last night, we get the goalpost
20 moved just enough that it's not quite ripe.  But we do not
21 have a lot of time to get these scheduled, and we think
22 that we're, hopefully, getting closer, but this is one
23 where we just want to get them on the calendar; we want to
24 make sure that there's enough time to cover the topics at
25 issue.

1           THE COURT:  You got the dates last night?

2           MS. STRATIGOPOULOS:  They are insufficient.

3           THE COURT:  Right, you're telling me that.  But

4    have you had a chance to talk with defendants to work

5    through that and get through -- you know, come up with a

6    new set of dates?  I mean, what I'm thinking is if you

7    have until the 28th to finalize these dates, maybe

8    that's -- I could set a deadline of May 28th --

9           MS. STRATIGOPOULOS:  That would be great.

10          THE COURT:  -- to meet and confer and then iron

11   out these dates.  And plaintiff sounds happy with that

12   deadline, but does Uber think differently?

13          MR. COX:  Sounds fine to me.  We offered dates.

14   We hadn't heard that, you know, those were not working for

15   plaintiffs; so...

16          THE COURT:  Okay.  Well, now you've heard when I

17   heard.  So you have until May 28th to work this out with

18   the plaintiffs --

19          MS. STRATIGOPOULOS:  Thank you, Judge.

20          THE COURT:  -- with that scheduling.

21          Okay.  All right.  Now, this is the final item,

22   it concerns the clawbacks, and this is Section 9 of the

23   joint status report.  I think it does make sense to set a

24   stricter schedule for Uber to provide a privilege log and

25   any other relevant material after a clawback is asserted.

1          But, I would -- you know, hopefully you all

2     could work out what that timeline would be, and if not,

3     I'd need to get a joint letter with your respective

4     proposals.  I don't think it -- I don't have -- Uber is

5     permitted to instruct a witness not to answer questions

6     about a document that it's seeking to claw back on account

7     of privilege, but I do want to point out that previously

8     I'd declined to allow Uber to clawback documents that it

9     had removed the privilege designation after re-reviewing;

10    so Uber can't -- the defendants can't instruct a witness

11    not to answer a question about a document where Uber has

12    waived the privilege on account of removing a designation

13    when I ordered a re-review of the documents and after

14    issuing my early rulings on privilege.

15          So this -- that's an issue that I addressed.

16    I'm not recalling the specific date, but it was an order

17    and it was final.  But to the extent that there are

18    clawbacks that don't relate to documents in that bucket,

19    it would seem to me that Uber can instruct the witness not

20    to answer questions about a privileged document subject to

21    clawback objection.

22          So are there any other -- any reactions to that

23    that we need to address?

24          MS. ELLIS:  Your Honor, Tiffany Ellis on behalf

25    of the MDL plaintiffs.  We appreciate this court and the

1   master's extensive efforts with respect to privilege and
2   clawbacks.
3          We have attempted to confer with Uber about a
4   faster turnaround for clawbacks and materials related to
5   them and have not been able to reach any consensus or
6   substantive conversation really about it.  So we're happy
7   to provide the dispute in a more formal way to the Court,
8   and we can do that, you know, next week.
9          MS. HILL:  Your Honor, if I may, this is
10  Jennifer Hill on behalf of the Uber defendants.  We have
11  not had an opportunity to properly confer about this
12  issue, and it's our position that this issue should be
13  discussed in more depth before there's any modification of
14  the pretrial order already in place.
15         I would also like to just provide some
16  additional context.  As to the plaintiffs' complaints
17  about the timing of replacement images and privilege logs,
18  this is an issue that plaintiffs have actually already
19  raised to the special master, and the special master has
20  addressed it in master order number 4.
21         And I understand that plaintiffs believe that
22  they're not able to challenge certain clawback notices
23  until they receive the materials that they're owed, but
24  under master order number 4, their time to challenge
25  clawbacks does not even begin to run until they've

1    received those materials.

2            So this is an issue that we believe has already

3    been considered by the special master and is already

4    addressed by the special master's order and that process

5    should continue.  If there's any disagreement, we're happy

6    to confer with plaintiffs further about -- to work out any

7    other issues on that front.  But it's our position that

8    it's already addressed.  To the extent it needs to be

9    addressed any further, we can confer with plaintiffs.

10           MS. ELLIS:  Your Honor, if I might just add one

11   point.  Ms. Hill has identified the specific issue that

12   plaintiffs are concerned about.  We're not able to

13   challenge the clawbacks until we receive all the

14   materials.

15           THE COURT:  Can you hear me?

16           MS. ELLIS:  Yes.

17           THE COURT:  Okay.  I just wanted to ask a

18   question, though, of Ms. Hill.  So as far as the privilege

19   logs, does the special master's order number 4 set a

20   deadline for privilege logs?

21           MS. HILL:  There's not a specific deadline in

22   master order number 4 for how soon after clawback notices

23   privilege logs are issued.  But I will tell the Court that

24   we have made every effort to issue those privilege logs

25   and replacement images expeditiously, and when it is at

1    all possible, we've done that at the same time as our

2    clawback notices.

3            And so from our perspective, this isn't a true

4    issue.  We have every intention to do it as fast as

5    possible, but also in an orderly fashion so that any

6    challenges can be discussed and teed up in the way that

7    the special master has envisioned under that order.

8            THE COURT:  So you provide the privilege log

9    with the clawback notice?

10           MS. HILL:  When it's possible.  And, in fact, I

11   think our most recent clawback notice was issued in

12   addition to the privilege log and the replacement images.

13   So in the most recent instance, plaintiffs had all of the

14   information at the very same time.

15           MS. ELLIS:  While that may be true of some

16   occasions, it is not true of all of them.  And it has been

17   an issue where we are not able to meet and confer or

18   challenge or even start this process in hopes of being

19   able to substantively question witnesses about this until

20   we receive all the materials.

21           We received notices of clawbacks during

22   depositions, in advance of depositions, then days,

23   sometimes over a week later, will receive an additional

24   privilege log which includes the clawbacks.  Plaintiffs

25   simply just don't see why we can't -- why Uber can't issue

1    privilege logs that are just related to those clawback

2    notices and then get the materials out to us as soon as

3    possible so that we can start the process.

4            We appreciate that a special master has

5    addressed these issues.  We do not believe that the

6    current guidelines and orders are sufficient to address

7    the delays that we're seeing and facing at this point in

8    discovery, and that's why we've asked for modification of

9    this order.

10           MS. HILL:  Your Honor, if I may.  The existing

11   PTO 14 does provide a timeframe for providing the

12   materials related to clawback notices.  We have made every

13   effort to inform plaintiffs as soon as practicable and in

14   a quick way --

15           THE COURT:  What is the timeframe for providing

16   the materials related to the clawback?

17           MS. HILL:  I'm sorry.  I didn't hear that.

18           THE COURT:  What is the timeframe for providing

19   the material related to the clawback?  It's a PTO 14.  I

20   just don't remember the specifics.

21           MS. HILL:  Yes.  Under PTO 14, defendants are

22   providing their clawback notices and associated privilege

23   logs within 21 days of discovery that there's a clawback

24   that's necessary.  And we've abided by that and in many

25   cases were acting even faster than that timeframe provides

1  just so these issues can be teed up and resolved as
2  quickly as possible.
3          THE COURT:  Given the stage of the discovery and
4  everything that's going on, I don't think that's going to
5  be workable.  21 days is too much time, and you've been
6  providing -- Uber's been providing the privilege logs
7  within -- at the same time, in many cases, not in all
8  cases.  Why would -- why can't Uber provide that within 24
9  hours of the clawback notice, the privilege log
10 specifically?
11         MS. HILL:  There are certain technical
12 limitations with providing, you know, replacement images
13 where redactions may need to be applied to certain
14 documents and then processed through a vendor for
15 production, and so we're working as quickly as possible.
16         THE COURT:  Replacement images, but what about
17 the privilege log?  Why can't you provide a privilege log
18 either simultaneously with a clawback notice or no later
19 than 24 hours after?
20         MS. HILL:  Yeah.  That process is complicated.
21 It requires an export of metadata that needs to go into
22 that privilege log, and so we're working as quickly as
23 possible.  Just in some instances it may not be practical
24 to do it within 24 hours, but we are doing it as quickly
25 as possible.

55

1        THE COURT:  What metadata -- so you've got to

2   collect some metadata that lands somewhere in the

3   privilege log and sometimes it takes more than 24 hours to

4   do that?  Do you need 72 hours?  28 hours?  Maybe I can

5   just address that issue right now, and we don't need to go

6   through further briefing on it.

7        MS. HILL:  Your Honor, we would appreciate the

8   opportunity to really understand the plaintiffs' concerns,

9   because I believe the way that we have been operating this

10  issue is not an issue because we've always been -- we've

11  been providing this information in far under 21 days.  And

12  so it certainly just depends on the timing when a clawback

13  may need to happen and the unique circumstances of that

14  particular document.

15       But from our perspective, there isn't an issue.

16  We've been issuing these privilege logs and replacement

17  images just as quickly as possible, and we could talk to

18  the plaintiffs to understand their concern and present any

19  remaining issues to the Court for a decision, but from our

20  perspective, there's no true problem here.

21       THE COURT:  Well, what I'm understanding from

22  Ms. Ellis is there are times when clawback notices are

23  given at the deposition.  And so if they have to wait 20

24  days or 15 days for a privilege log, I mean, I can't

25  imagine that the metadata takes that long to do.

56

1      So I'm just looking for, given the speed with
2   which this discovery is being completed, it doesn't -- I
3   think Ms. Ellis's concerns are obvious.  I don't need
4   another discovery letter to explain it.  What I need to
5   understand is what are the technical concerns that you
6   mentioned a few minutes ago?  You mentioned the data, the
7   metadata exports that need to be added into the privilege
8   log.
9      But it strikes me that that could probably be
10  done in, you know, two business days, but it just needs to
11  be made a priority by somebody who is in the discovery and
12  the discovery vendor needs to be notified that it's a
13  discovery priority.
14      MS. HILL:  Your Honor, and to be clear, we
15  absolutely do make it a priority, and when it's possible
16  to get it in a very quick turnaround, two days or less, we
17  would do that.  And there haven't been instances, at least
18  in the recent depositions, where we've taken the full 21
19  days to provide those replacement images and the privilege
20  logs.  And so, you know, this has just not been a true
21  issue in practice as of recent depositions.
22      MS. ELLIS:  Your Honor, I strongly disagree.
23  This has been an issue because we have a number of --
24  again, we appreciate the master's efforts as well as this
25  Court's efforts, but we are working our way through a

1    number of clawback disputes that are in front of the

2    master.

3           We have other documents that are continuing to

4    be clawed back that we're still, you know, waiting on

5    materials for.  21 days is simply too long.  We see no

6    reason why clawbacks can't be dealt with immediately with

7    at least a privilege log entry, and then as soon as

8    technologically possible, they give us the redacted

9    materials if that's the case.

10          If it's not redacted and they're going to try to

11   claw back and hold, then we will be able to address it

12   with the special master and Uber immediately upon

13   receiving the privilege log notice -- or the privilege

14   log.

15          But right now, we're getting a notice of

16   clawback in any number of different ways and then not

17   receiving anything else that we would need to claw back

18   for days later, and that simply cannot be at this point in

19   discovery.

20          It is preventing us from getting testimony about

21   these highly relevant documents to plaintiffs' case and

22   dealing with all of the other sorts of issues that we've

23   been hearing about today.  We simply need a quicker

24   timeframe.  Uber -- we've addressed this with Uber, we've

25   addressed this with the special master, and that's

1     precisely why we put it in the status report today.

2             So we would ask that they be ordered to comply

3     with a firm deadline for providing these materials that we

4     may resolve these disputes.

5             MS. HILL:  Your Honor, the documents for which

6     counsel was referencing where they were expecting

7     replacement images or logs, those have been addressed.

8     And since then we've implemented a process where we're

9     doing this very quickly, and I think kind of the nuances

10    of this topic illustrate why it's not ripe for a ruling

11    today.  We need to be able to confer with Ms. Ellis,

12    understand her position and, you know, what we can work

13    out before the Court intervenes.

14            THE COURT:  Well --

15            MR. SHORTNACY:  Your Honor, may I be heard?

16            MS. ELLIS:  Your Honor, we tried to meet and

17    confer with counsel, and they've said that there is an

18    order and that's what should be abided by.  And so this is

19    where we are right now.

20            MR. SHORTNACY:  Your Honor, it's

21    Michael Shortnacy.  The existing order is being complied

22    with, as Ms. Hill stated, and I think what we're trying to

23    convey to the Court is that, you know, first, we don't see

24    an issue here because we have not provided logs 20 days

25    after providing a clawback; so that's sort of simply a

1    construction of this argument.

2           We have endeavored to provide them immediately,

3    and the reason that some documents come up as clawbacks in

4    connection with proximity to deposition is because

5    witnesses are being prepared.  And so sometimes documents

6    arise that we, you know, discover facts that need to lead

7    to a clawback situation.

8           And so that is not what any party wants, but it

9    does happen in litigation.  And so that is sort of the

10   explanation for why in certain limited instances there is

11   some proximity to the depositions.

12          But I would just say, Your Honor, that PTO 14

13   date is being complied with.  To the extent that there

14   should be a variance from that, I think that we are

15   amenable to, of course, conferring with plaintiffs as we

16   have been doing, and we'll come up with a date that we can

17   propose to the Court that makes some sense that's probably

18   on the order of five -- something like five days.

19          Because there are requirements that have been

20   put in place for the processing of the log and the

21   information that should be on the log, and the parties

22   have agreed to go far beyond the scope of the requirements

23   in PTO 14 for the types of information that should be

24   provided on the log.

25          That requires manual work, and so it's just a

1    very complicated process, Judge, and so we have, as

2    Ms. Hill suggested, in -- certainly in the last, you know,

3    several weeks or number of clawbacks endeavored to get the

4    documents and logs out simultaneously.

5          And when there's a few instances of documents

6    that are clawed back, that's feasible, but in certain

7    cases, there are more documents that may be more

8    complicated and require further intervention.

9          And so I would just request, Your Honor, that we

10    be permitted to at least confer on this issue and present

11    some proposed modification to that PTO, which I think

12    would require notice and a showing of good cause.

13          MS. ELLIS:  Your Honor, if I may just address

14    one more point briefly.  The vast majority of the

15    documents -- we are having some trouble with your audio,

16    Your Honor.

17          THE COURT:  Thank you.  Go ahead and make your

18    point.

19          MS. ELLIS:  All right.  The vast majority of the

20    documents that we're talking about should have come

21    through tranche one through four and were subject to your

22    order to re-review the privilege and all those documents

23    by March 10th.  Any further documents that are being

24    produced would have been subject to a more recent

25    privilege log review.

 1              So these clawbacks that we're talking about are
 2    happening after Uber has had five, six, seven, eight, nine
 3    times to go back and look at the privilege, has recently
 4    produced these documents and looked at privilege for them
 5    already, and then are trying to take yet another bite at
 6    the apple by clawing them back, and then we're delayed in
 7    raising our challenges to it because of these delays in
 8    the process.
 9              So we need some framework here because what the
10    practical effect is, is that this is jamming plaintiffs'
11    ability to be able to address these highly relevant
12    documents with the witnesses.  And as we approach the
13    30(b)(6) depositions coming up, this is becoming even more
14    critical of an issue for plaintiffs' ability to prove our
15    case.
16              THE COURT:  Okay.  So the 21-day period for Uber
17    to provide the materials related to the clawback notice
18    was ordered by the Court pursuant to the parties'
19    stipulation some time ago.  I mean, like, quite a long
20    time ago, early in the discovery process in a world where
21    the expectation was that -- I mean, I think I did approve
22    some of these protocols back in the spring 2024 where the
23    expectation was that substantial document discovery would
24    be completed by September 2024.
25              So that -- in that world, had we achieved that,

1    there would have been clawback notices through the fall or

2    summer because the document production would have been

3    done much earlier in this discovery litigation.  And so

4    the 21-day time period made sense at that point in

5    April 2024 when I approved it.

6            But now we have to change the approach, and I

7    don't really have a clear indication about what makes

8    sense.  You know, Uber wants to stick with 21 days.  You

9    know, it seems like Ms. Ellis wants immediate production,

10   but there's some technical limitations to it.

11           I don't want to go through a meet and confer PTO

12   8 process.  I think the issue is clear enough to me

13   already.  What I can do, though, to give some ability to

14   address some nuance that I don't understand, if there is

15   such a nuance, that the requirement will be for Uber to

16   provide a privilege log entry related to the clawback

17   within two business days and absent the parties' agreement

18   to a different deadline or a further court order seeking a

19   different deadline.  So that's just based on the

20   discussion today.

21           I'm going to set -- I have enough of an

22   understanding to set a two-business-day deadline for the

23   privilege log, but if that is a challenge in a particular

24   instance, Uber can still reach out to plaintiffs to agree

25   to some other timeframe for it.  And if the plaintiffs are

1    not willing to agree, then Uber can file an administrative

2    motion for relief from the deadline that I'm setting

3    today.

4            MS. HILL:  Your Honor, I would just reiterate

5    our request to be heard through formal briefing on this

6    issue.  There are a lot of moving parts to issuing a

7    privilege log and providing replacement images and a lot

8    of unique circumstances that I don't feel has been

9    discussed or conferred upon adequately, and we would just

10    reiterate our request to be heard given these

11    circumstances.

12            THE COURT:  I'm addressing your request to be

13    heard by allowing you to file an administrative motion for

14    relief from the two-business-day deadline.  And we have a

15    local rule that explains what administrative motions are,

16    and you get to attach a declaration, and you can present

17    whatever particular argument it is.

18            But it seems like in a number of instances the

19    privilege log is provided with a clawback notice,

20    sometimes shortly thereafter.  You explained the technical

21    challenges with the metadata.  I give you two business

22    days to deal with that, and then if there's any other

23    concern, including a global concern about the technical

24    issues, you would file it in an administrative motion.

25            And this deadline, the two-business-day

1    deadline, is just for the privilege log order.  It's not

2    for the images issue, the production of the replacement

3    image, which I think the special master has already dealt

4    with.

5              But I was told today that the special master

6    order number 4 didn't deal with the privilege log issue;

7    so I'm dealing with that in that way that gives the

8    parties some guidance that the 21-day timeframe is no

9    longer applicable.  I'm modifying that deadline to be two

10   business days for the privilege log, absent the parties'

11   agreement otherwise or a court order that Uber can seek by

12   filing an administrative motion.

13             MS. HILL:  Understood.

14             MS. ELLIS:  Your Honor, we would just ask for

15   clarity of the record that that is -- that that two-day

16   requirement apply whether -- no matter how clawback notice

17   is given, whether through a formal letter or verbally in a

18   deposition or in any way that a document is attempted to

19   be clawed back by Uber.

20             THE COURT:  I will grant that.  I mean, does

21   Uber have any reason why that deadline shouldn't kick in

22   at the deposition if you raise a clawback notice on the

23   record at the deposition?  Why shouldn't that

24   two-business-day deadline apply, other than your larger

25   arguments that you might raise in an administrative

1    motion?

2         MS. HILL:  Sure.  No, Your Honor.  It's always

3    our intention if any document is clawed back at a

4    deposition that we would follow it with the letter or

5    notice, and I understand Your Honor's position on the

6    timing of privilege logs.

7         THE COURT:  Okay.  So the privilege log will be

8    due two business days after the notice of clawback,

9    whether that notice of clawback is in a letter, some other

10   written document, or asserted verbally at a deposition.

11        MS. HILL:  Understood.

12        MS. ELLIS:  Thank you, Your Honor.

13        THE COURT:  Okay.  I think that was the last

14   issue.  Thanks, everyone for --

15        MS. BROWN:  May I raise just one quick

16   housekeeping item, Your Honor?  Could we move to seal the

17   very limited portions of this transcript where we

18   discussed ELT members' whereabouts or scheduling?  And I

19   don't know how the Court prefers we do that, in writing,

20   or can I make a verbal motion to do that right now?

21        THE COURT:  So ELT members would be --

22        MS. BROWN:  We discussed Ms. Hazelbaker and

23   Mr. Kalanick and just where they have been, where they are

24   scheduling-wise, and just for security reasons I'm asking

25   that we seal those discussions.

1          THE COURT:  So chances are someone will request

2    a transcript, and once the transcript is filed you can

3    file a motion to seal that identifies the lines within the

4    transcript and that will just help me make a discerning

5    narrow decision about what to seal.

6          MS. BROWN:  Understood.  I appreciate that,

7    Your Honor.  Thank you.

8          MR. COTTON:  There's one topic I think we

9    missed.

10          THE COURT:  Oh, go ahead, Mr. Cotton.

11          MR. COTTON:  Yeah.  Sorry.  Yeah, I think we

12    inadvertently missed a topic that started on page 8 of the

13    JSR regarding plaintiffs' obligations under the ESI

14    protocol.  I can be very brief on that.

15          THE COURT:  Okay.  Go ahead.

16          MR. COTTON:  Just briefly, I think at the moment

17    the immediate issue is just simply timing of those

18    disclosures.

19          THE COURT:  Right.  Yes.  Well, for this

20    particular issue it seems straightforward because the

21    plaintiffs don't seem to acknowledge the requirement that

22    they have to disclose their process for collecting the

23    documents.  But Mr. Cotton, you just said that the issue

24    is about timing of when this disclosure happens?

25          MR. COTTON:  Yeah, that's right.  So I had a

1    meet and confer with plaintiffs' leadership earlier this
2    week -- this is an issue we raised earlier in the month --
3    and have separately communicated with individual
4    plaintiffs' counsel and met and conferred with leadership
5    earlier this week.
6           The update is leadership for plaintiffs has
7    recommended to the wave one plaintiffs' counsel to provide
8    the disclosures required by the ESI protocol by --
9    initially they suggested next Monday.  I understand they
10   now want to push it to next Tuesday.
11          From our perspective, Your Honor, it's something
12   that has some urgency to it.  We do have concerns about
13   plaintiffs' productions and want to start the conversation
14   around their collection and search efforts just to make
15   sure we're aligned on what they're doing, and to the
16   extent there are gaps, we can promptly address them before
17   plaintiffs' upcoming deposition.
18          We asked for those disclosures by yesterday.  I
19   understand that has come and gone, but would respectfully
20   amend that request to get those disclosures by tomorrow.
21          MS. STRATIGOPOULOS:  Your Honor, if I may.
22   Meredith Stratigopoulos for plaintiffs.  So to be clear,
23   plaintiffs never articulated the position to the
24   defendants that we did not think we had to comply with the
25   Court's order.

What happened is that the defendants brought up
the ESI issue on an unrelated meet and confer late last
week and then sent letters to individual counsel on the
matter this week, and then -- pardon me, last week -- and
then we met and conferred on the issue on Monday to make
sure that we understood what Uber was asking for just
because there were some discrepancies between that initial
time it was brought up on the meet and confer and two sets
of emails that had gone out from defendants.

We now think that we're on the same page with
what individual counsel is supposed to be doing and that
they are supposed to provide the methods of preservation
and collection that they used to defendants.

We have requested that wave one plaintiffs get
this -- so initially we had said Monday simply because I
forgot Monday was a holiday.  But we've asked them to do
it by Tuesday for the wave one plaintiffs, and then to the
extent that there are disputes after that, they can
individually meet and confer.  But as we're here today, we
don't think the issue is ripe as plaintiffs have reviewed
the order and individual plaintiffs will be responding to
defendants' letters.

MR. COTTON:  Just briefly, if I may, Your Honor,
in reply.  I agree that the immediate issue at the moment
simply is that of timing and when those disclosures are

1  made.

2          Our concern is if we wait until Tuesday, we're

3  not going to begin our conversations regarding what

4  individual counsel did or didn't do until sometime after

5  that, of course, and as we get closer and closer to

6  plaintiff depositions, it becomes a growing concern from

7  our perspective.

8          THE COURT:  Okay.  So there hasn't been any -- I

9  mean, these disclosures were -- when were they due

10  previously?  I mean, it's just there's this obligation to

11  provide the disclosure on the part of plaintiffs.

12          MR. COTTON:  Yeah.  There's no set deadline

13  under the ESI protocol, it's just a standing obligation.

14          THE COURT:  Okay.

15          MS. ABRAMS:  Your Honor, Rachel Abrams for the

16  plaintiffs.  And we did send a notice in compliance with

17  the PTO 2 in terms of, you know, after PTO 2 is entered on

18  behalf of plaintiffs at that time and understood the

19  ongoing obligation to have plaintiffs, you know, preserve

20  the PTO 2; so...

21          THE COURT:  Okay.  Is there any practical

22  difficulty to responding by tomorrow?  It doesn't seem

23  like a terribly complicated --

24          MS. STRATIGOPOULOS:  To the extent that it would

25  require individual counsel to follow up with their

1  plaintiffs, these are individual survivors of sexual
2  assault, many of which have children, many of which have
3  jobs.
4        And so to the extent that it requires that back
5  and forth, you know, initially just the two-day turnaround
6  seemed unrealistic versus it being by Tuesday is something
7  that we've advised individual counsel for the wave one
8  bellwethers to do, and so that that is kind of the
9  practicality, is that to the extent that it requires
10  attorney/client communications, candidly, we hear it on
11  the other side from defendants all the time.
12        Every time we ask for anything, they need a few
13  days to go to their client.  And plaintiffs of individual
14  counsel, these are individuals located all across the
15  country in different time zones, with lives, with kids,
16  with all those sorts of things and they need time --
17        THE COURT:  I understand that.  It's just what
18  needs to be disclosed is the process for preservation and
19  collection of documents, including the sources from which
20  the documents were collected and the parameters and search
21  and review of them.
22        So, you know, there's probably some need to
23  confer with individual plaintiffs, and just there's some
24  practical difficulties of doing that in 24 hours' notice
25  where there hasn't been a firm deadline set earlier.

1          So I don't see the -- I understand, Mr. Cotton,

2    your sense of urgency here and, you know, Tuesday was --

3    I'm sorry, I lost track -- I think the 27th was actually a

4    Monday.  Or excuse me.  Tuesday, the 27th, seems to be,

5    you know, moving with sufficient urgency given the number

6    of counsel and the need to confer with their clients.

7          MR. COTTON:  Yeah.  If I may just be heard

8    briefly on two points.  One is, obviously, it's a standing

9    obligation of the protocol, and it's something we raised

10   with plaintiffs a couple weeks back; so it's not as if

11   we're asking for them to turn this around in two days.

12   It's something that's been pending for a couple of weeks.

13         Secondly, I do have some concern that these

14   conversations apparently haven't taken place yet.  It's

15   unclear to me why it is counsel want to have some

16   familiarity with their collection, review, and production

17   efforts already.  And so frankly, I find that troubling.

18         All the more reason, Your Honor, from my

19   perspective to set an earlier deadline so we can start

20   these conversations because our deadlines to depose

21   plaintiffs and any issues that we need to address ahead of

22   those need to, likewise, be promptly addressed.

23         MS. STRATIGOPOULOS:  Your Honor, if I may.  I

24   can't speak to and certainly wouldn't disclose

25   attorney/client communications that have occurred, but at

```
 1   no point did plaintiff suggest that there has never been a
 2   conversation or that these conversations were just
 3   starting.
 4           It's very possible that individual -- if not
 5   inevitable, that individual counsel has communicated
 6   preservation obligations to plaintiffs when they were
 7   signed up, those types of things, and so I think that's a
 8   mischaracterization.
 9           As well for the timing, again, defendants
10   brought this up on an unrelated meet and confer without
11   giving us the opportunity to prepare for it or look at the
12   order or anything like that on the 9th in the afternoon,
13   and then the letters that they sent out came earlier --
14   they came out last week, and then defendants requested to
15   meet and confer on the issue last Friday or this Monday,
16   and plaintiffs provided availability and met and conferred
17   this Monday.
18           THE COURT:  Okay.  I've heard enough.  I'm going
19   to give the plaintiffs until Tuesday to make this
20   disclosure.  It's moving with sufficient speed.  I don't
21   think that -- and I don't think there's a strong record
22   here to suggest a need for moving -- or that it's even
23   feasible to move more quickly than that.
24           MS. STRATIGOPOULOS:  Your Honor, if I may.  I
25   apologize.  There may be a mischaracterization.  So
```

1    leadership advised the wave one plaintiffs to do this by

2    Tuesday.  We advised all other bellwether plaintiffs to

3    make sure that they're reviewing this to try to get to it

4    as quickly as possible, but especially for the firms that

5    have multiple bellwether plaintiffs across various waves

6    to prioritize wave one.

7              THE COURT:  My order was specific to wave one.

8              MS. STRATIGOPOULOS:  Thank you.

9              THE COURT:  And the other waves for Friday next

10   week.

11             MR. COTTON:  Thank you, Your Honor.

12             THE COURT:  Okay.  All right.  We are done for

13   the day, but thank you for your time and your patience.

14             COURTROOM DEPUTY:  Court is adjourned.

15        *(Proceedings adjourn at 12:33 PM.)*

16                         * * *

17

18                 CERTIFICATE OF REPORTER

19        I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled
20   matter.

         */s/  Robin L. Herrera*          May 29th, 2025
21   Robin L. Herrera, RMR, CRR, CRC     Date
     Official Court Reporter
22

23

24

25

Robin L. Herrera, RMR, CRR, CRC