UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 23-md-03084-CRB (LJC) |
| This Document Relates To:<br><br>ALL CASES. | **ORDER REGARDING MOTIONS FOR SANCTIONS AGAINST BRET STANLEY AND RELATED SEALING MOTIONS**<br><br>Re: Dkt. No. 4232, 4233, 4420, 4604 |

## I.    INTRODUCTION

The Court previously determined that Plaintiffs' counsel Bret Stanley violated the Protective Order in this MDL by disclosing in other litigation information that Defendants (collectively, Uber) had designated here as confidential. The Court ordered remedial steps, including notice to the counsel and courts in the other cases where improper disclosures occurred. Uber now moves for monetary sanctions against Bret Stanley under Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority, based both on the previous violations of the Protective Order and on violations of the previous remedial Order to provide notice. Dkt. No. 4233 (First Motion for Sanctions). Specifically, Uber seeks to recover attorneys' fees totaling $168,572.97. Uber seeks sanctions only against Stanley, not against any of his clients or any other attorney. Uber has also filed a Second Motion for Sanctions based on Stanley's search for documents that Uber produced in this MDL to aid in Stanley's prosecution of an unrelated, non-MDL case. Dkt. No. 4604 (Second Motion for Sanctions).

The Court held a hearing on Uber's First Motion for Sanctions on December 9, 2025. As discussed below, Stanley's view of the Protective Order would let attorneys determine for themselves what portions of an opponent's confidential documents can and cannot be disclosed to

United States District Court
Northern District of California

advance a lawsuit that is not part of this MDL.  That interpretation is impermissible and unreasonable, and some sanction is warranted for Stanley's unilateral disclosures.  On the other hand, Uber has not shown any significant actual or likely harm from the disclosure of the material at issue, and its request for attorneys' fees is excessive under the circumstances presented.  Uber's Motion is therefore GRANTED IN PART, and Stanley is ORDERED to pay Uber $30,000 as partial reimbursement for its attorneys' fees, no later than thirty days from the date of this Order.

The Court held a hearing on Uber's Second Motion for Sanctions on January 20, 2026.  For the reasons discussed below, the Court finds that Stanley once again violated the Protective Order.  Stanley is ORDERED to pay Uber's reasonable attorneys' fees for bringing that Motion, in an amount that the parties are encouraged to negotiate.  This Court refers Uber's request to disqualify Stanley from the Plaintiff Steering Committee to Judge Breyer, to be resolved on the current record or whatever further briefing Judge Breyer might order.

## II.    FIRST MOTION FOR SANCTIONS

### A.    Background

#### 1.    Previous Motion to Enforce

On July 18, 2025, Uber filed a motion to enforce the Protective Order, asserting that Stanley disclosed a spreadsheet listing hundreds of Uber's policy-related resources, which Stanley had derived from indices that Uber produced in discovery in this MDL and designated as confidential.  *See generally* Dkt. No. 3512.  That motion followed meet-and-confer efforts in which Uber attempted to determine whether Stanley and other Plaintiffs' counsel contended that Uber policy names were not confidential even when the policy name was identified by reviewing the content of a confidential MDL document.  Dkt. No. 3512-16 at 5.  Uber also asked Stanley and other Plaintiffs' counsel whether they agreed that the contents of a particular document (which Uber had designated as confidential) were confidential under the Protective Order.  *Id.*; Dkt. No. 4233-2, ¶ 4.  According to Uber, Stanley refused to answer those questions and refused a proposal to seek permission from Uber or the Court before sharing information derived from that document in other cases.  Dkt. No. 3512-16 at 5; Dkt. No. 4233-2, ¶¶ 4, 6.  Stanley disagreed that the material he shared was protected, and he rejected Uber's proposal as "unworkable" because Uber

was not producing documents in other cases without requests for specific policy documents by name.  Dkt. No. 4421-1, ¶¶ 15–20 & Exs. C–E.  In a July 11, 2025 email, Stanley told defense counsel Veronica Gromada that the parties' disputes "need to be brought in front of the Court," and requested to "discuss a filing and response schedule" based on the premise that it was "[Uber's] claim."  Dkt. No. 3512-16 at 2–3.  Uber filed its Motion to Enforce one week later.  Dkt. No. 3512.

In that previous Motion, Uber asserted that Stanley or his co-counsel Bruce Stern included lists containing protected information, specifically the names of Uber policies and how Uber has categorized them, in discovery requests that they served on Uber in two cases in Texas and New Jersey (*Smith* and *Lord*) and that nearly identical discovery request were served by other plaintiffs' attorneys in two other New Jersey cases (*Jones* and *Soto*).  Uber also charged that Stern publicly filed the list of policy names in the *Lord* case, another attorney at Stern's firm served a discovery request in *Jones* that was nearly identical to the *Lord* request, and another plaintiff's attorney served a nearly identical discovery request in *Soto*.  *See generally* Dkt. No. 3512.  In Uber's view, Stanley improperly disclosed information designated as confidential[1] at least to his co-counsel in other cases, thus leading to disclosure to still other attorneys who are not part of this MDL and to the public.  The only references to other sanctions in that motion was the following footnote in Uber's Notice of Motion: "Defendants reserve the right to seek appropriate sanctions for violations of the Protective Order as the facts may develop in connection with this Motion and following based on any Orders by the issuing court."  Dkt. No. 3512 at 2 n.2.

In its Motion, Uber did not argue that Stanley breached the Protective Order by the mere disclosure of a policy name.  Instead, Uber asserted a violation based on the broader disclosure of information extracted from protected material that it contends revealed a "roadmap" for its "information infrastructure" and the issues that arise in its business, how it classifies and analyzes

---

[1] Stanley never challenged Uber's confidentiality designations under the Protective Order's process to raise such a challenge.  The Court therefore has never had occasion to address whether the material at issue actually warrants protection.  Under the terms of the Protective Order, absent a successful challenge, parties are restricted from disclosing material *designated* as confidential.  *See* Dkt. No. 176 at 12–13 (Protective Order § 7.2).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  those issues, and its strategic choices.  ECF No. 3598 at 5–7.

2          This Court agreed that Stanley had violated the Protective Order, ruling on the record of an

3  August 12, 2025 hearing that it was "pretty straightforward that a disclosure occurred" of

4  information that Uber had designated as confidential.  *See* Dkt. No. 3720 at 14:17.  The Court

5  noted that Stanley could have challenged Uber's confidentiality designations if he had wished to

6  do so, but that he never did.  *See, e.g.*, *id.* at 11:20–12:6.  The Court relied in part on a declaration

7  by defense counsel Gromada detailing how Stanley's spreadsheets and the document requests in

8  other litigation compared to documents designated as confidential here.  For example, a document

9  that Uber designated as confidential with Bates number UBER_JCCP_MDL_000250806 consisted

10  of list of topics or policies under the heading "New Hire Onboarding."[2]  Dkt. No. 3511-3, ¶ 15

11  (under seal; redacted public version filed as Dkt. No. 3512-1).  The discovery request in the *Lord*

12  case listed several of those items and categorized them as "New Hire Onboarding," thus revealing

13  much of the substance of the document designated as confidential and, to at least some degree, the

14  nature of Uber's training program for new employees.  *Id.* ¶ 22.

15          The minutes of the August 12, 2025 hearing read in relevant part as follows:

16          The Court held on the record that Plaintiffs' attorney Bret Stanley
   violated the protective order by disclosing the complete substantive
17          contents of certain documents produced in discovery and designated
   as confidential, i.e., lists of policy documents and the manner in which
18          Uber organized them. The Court determined that Uber's proposed
   relief (a finding of violation, and requiring Stanley to identify others
19          to whom he disclosed such information and share with them a copy
   of the Court's order) is justified, but that Uber's proposed order is
20          vague and potentially overbroad as to the confidential material at
   issue, such that a recipient might not know what material is covered.
21          The Court ordered the parties to file within three business days (by
   August 15, 2025) either a joint revised proposed order or separate
22          revised proposed orders consistent with that determination. Plaintiffs'
   filing or joining in a proposed order consistent with the Court's ruling
23          shall not be deemed a waiver of any right to seek relief from that
   ruling.

24

25  Dkt. No. 3692.

26

27  _____

28  [2] Uber previously asked Stanley and other Plaintiffs' counsel to confirm whether they believed
   this documents' contents were confidential.  As noted above, at least according to Uber, they
   refused to do so.  Dkt. No. 4233-2, ¶ 4.

4

United States District Court
Northern District of California

The parties jointly submitted a proposed order, which the Court adopted on August 18, 2025.  That Order found that Stanley violated the Protective Order by using and disclosing 587 rows of information on a spreadsheet, which consisted of information about Uber's internal policies that Uber had designated as confidential under the Protective Order.  Dkt. No. 3708 at 2.  To redress that violation, that Order required the following remedy:

> (c) Within three days of the date of this Order, Mr. Stanley shall identify to Defendants' counsel all persons outside of the MDL Litigation to whom Mr. Stanley has disclosed any information covered by the Protective Order, including without limitation, the Confidential Information, *and Mr. Stanley shall identify to Defendants' counsel all court proceedings in which Mr. Stanley is aware that the Confidential Information has been used or disclosed in discovery or otherwise*;

> (d) Within three days of the date of this Order, Mr. Stanley shall provide a copy of this Order to all persons *and courts* identified pursuant to paragraph (c) of this Order *with notice to Defendants' Counsel of same*; and

> (e) *Mr. Stanley shall take reasonable efforts to retrieve or ensure the destruction of all unauthorized Confidential Information to all persons identified pursuant to paragraph (c) of this Order*.

Dkt. No. 3708 at 2 (emphasis added).  The portions italicized above (among other text that is less relevant to the present dispute) did not appear in Uber's original proposed order, and thus presumably was added during the parties' joint discussions of appropriate relief to comply with the Court's Order.  *Cf.* Dkt. No. 3512-19 (proposed order filed with Uber's Motion to Enforce the Protective Order).

## 2.    Compliance with August 18 Order

The three-day deadline for Stanley to provide notice was August 21, 2025.

On August 22, 2025, Gromada sent an email to Stanley asserting that he had "failed to comply with the August 18, 2025 Order as follows:

> 1. <u>Lord</u>: You have not provided a copy of the August 18, 2025 Order to the court.

> 2. <u>Casey Jones</u>: Even though you are aware that confidential information is being used in this case, you have not provided a copy of the August 18, 2025 Order to the court.

> 3. <u>Soto</u>: Even though you are aware that confidential information is being used in this case and has been disclosed to the plaintiff's

1

> counsel, you have not provided notice and a copy of the August 18, 2025 Order to the plaintiff's counsel or to the court.

2   Dkt. No. 4233-2 at 22.

3       Stanley responded later that evening:

4   > I didn't disclose anything to the Soto counsel. I informed you I had no knowledge of which court the case was in or who counsel was.

5

6   > Stop playing games. If you have information, then share it.

7   > If you would prefer to go to the Court, I'll be there.

8   *Id.* at 21.  Stanley's initial response did not mention the *Lord* or *Jones* cases.

9       The current record reflects that Stanley and other attorneys took the following actions in

10  each of the four cases where an improper disclosure occurred.

11              **a.    *Smith* Case**

12      Stanley timely notified all counsel in the *Smith* case of this Court's August 18 Order,

13  provided them with a copy of that Order, and requested that they "take efforts to destroy Exhibit A

14  to Plaintiff's 5th Request for Production" on August 20, 2025.  Dkt. No. 4421-3 at 2–3; *see also*

15  Dkt. No. 4421-1, ¶ 29.  Stanley timely notified the *Smith* court of this Court's Order and provided

16  a copy of that Order on August 21, 2025.  Dkt. No. 4421-1, ¶ 30; Dkt. No. 4421-3 at 6.  The

17  document at issue was not publicly filed in the *Smith* case, but only exchanged among counsel.

18  Uber does not contend that Stanley breached his obligations under the August 18 Order with

19  respect to the *Smith* case.

20              **b.    *Lord* Case**

21      On August 12, 2025—the day of this Court's hearing and decision on the record that

22  Stanley violated the Protective Order, but before the Court issued an order requiring remedial

23  measure—Stanley's co-counsel Bruce Stern emailed opposing counsel in the *Lord* case requesting

24  that they provide "a consent order to take down exhibit A" in light of this Court's decision.  Dkt.

25  No. 4421-3 at 8.  The consent order was filed that day and adopted by the *Lord* court the following

26  day.  *Id.* at 10–11.

27      Stanley sent an email to his co-counsel and Uber's counsel in the *Lord* case on August 20,

28  2025, notifying them of this Court's Order and asking them to "take efforts to destroy the

United States District Court
Northern District of California

6

previously received version of Exhibit A to Plaintiff's 12 NTP [i.e., Notice to Produce]." Dkt. No. 4421-3 at 13–14. Stanley stated to defense counsel that he would "be reworking an amended Exhibit to Plaintiff's 12th NTP that does not include protected material." *Id.* at 14. That email also stated that a "Notice to the Court of the attached Order will be emailed to the Court in accordance with the attached MDL Order." *Id.*

Stanley attempted to email the judge in the *Lord* case on August 21, 2025, but the message did not successfully send from his outbox in Outlook. Dkt. No. 4421-1, ¶ 35. On August 26, Stanley sent a response to Gromada's August 18 email (discussed above) that read as follows:

> The Correspondence to the Court in the *Lord* matter was hung in my outbox. We notified the court in both the *Jones* matter and in the *Smith* Matter. I didn't realize the email to Judge Hurd in the *Lord* matter was not received.
>
> As you know, Uber Counsel for Bowman and Brook have now notified the Court in *Lord* and I intend to inform the Court now.
>
> We can have a call about this today or tomorrow, at your convenience.

Dkt. No. 4421-4 at 2.

Stanley emailed the judge in *Lord* later that day, attaching this Court's Order, noting that this Court determined that a discovery request in that case violated the MDL Protective Order, and noting that the document improperly filed in the public record had previously been removed. Dkt. No. 4421-4, at 12.

The next day, Stanley sent another email to Gromada explaining that a close childhood friend's mother (with whom Stanley was also close) had died the previous week, and that Stanley's travel to her funeral had contributed to his failure to recognize that his email had not been sent. Dkt. No. 4421-4 at 31. Gromada responded with condolences and thanked Stanley for the update. *Id.* at 30. Stanley states in his present declaration that the loss caused a substantial emotional toll and professional disruption for him. Dkt. No. 4421-1, ¶¶ 55–59. Gromada states in her present declaration that "between August 18, 2025 and August 26, 2025, Mr. Stanley sent at least ten emails to Defendants' MDL counsel and Defendants' counsel in *Smith* . . . related to his continued efforts to obtain discovery in the *Smith* case." Dkt. No. 4233-2, ¶ 19.

United States District Court
Northern District of California

7

1

### c.   *Soto* Case

On August 20, 2025, Stanley sent an email to defense counsel stating that he did not "have any connection to any counsel in the *Soto* matter and did not disclose anything to that firm." Dkt. No. 4421-5 at 2. It is not clear what prompted that email. Defense counsel did not respond until two days later.

Around noon on August 22, 2025, Gromada responded to Stanley's email, stating that Stanley was "aware from Uber's submissions to the court" that "Confidential Information has been used or disclosed in discovery or otherwise in <u>Soto</u>," and that Uber therefore believed Stanley was required to provide the Court's Order to counsel and the court in that case, and take reasonable efforts to recover confidential information. Dkt. No. 4421-5 at 4. Stanley promptly responded:

> I do not know the lawyers in the Soto matter and did not disclose the documents to any lawyers in Soto. I know nothing about that case or who the firms involved.
>
> I have instructed all attorneys to delete what they have seen that is in violation according to Cisneros and provided the Order to the Courts subject to my disclosure.
>
> I'm happy to talk about this and this email should not be construed with a negative tone.

*Id.*

Later that evening, as noted above, Stanley asserted that he had previously "informed [defense] counsel that [he] had no knowledge of which court the case was in or who counsel was." Dkt. No. 4421-5 at 7.

Gromada was correct that Uber's previous filings included information about *Soto*. A discovery request from that case was included with Uber's previous motion to enforce the Protective Order, listing the court (the Superior Court of New Jersey Law Division: Hudson County) and the plaintiffs' attorney who served the request (Corey S. Gaul, of the New Jersey law firm Gaul, Baratta & Roselo, LLC). Dkt. No. 3512-18. That discovery request attached a spreadsheet containing information that Uber had designated as confidential in this MDL. Dkt. No. 3511-9 (same document filed under seal) at 25–46.

Apparently unbeknownst to Stanley, Gromada had sent Gaul a letter via email on August 14, 2025 noting this Court's finding of a violation and identifying Stanley's obligations under the Protective Order following unauthorized disclosure of protected material.  Dkt. No. 4421-5 at 16–18; *see also* Dkt. No. 4232-5 at 12 (billing entry).  The letter indicates that defense counsel had previously informed Gaul on July 21, 2025 of their view that Stanley violated the Protective Order.  Dkt. No. 4421-5 at 16.

Stanley addressed the *Soto* case in his August 27, 2025 email to Gromada (discussed above in the context of *Lord*) as follows;

> Concerning the *Soto* matter, my position remains that I did not disclose any information to the attorneys who are claimed to have made the requests subject to Cisneros's Order. I'm not counsel of record and no attorney connected to me claims to know who the attorneys are. I have called Corey Gaul and left a voicemail, but his email is not on Exhibit 17 and is not on their website. I am working to find information about which judge is handling the matter. I believe my intervention in the *Soto* matter is beyond the scope of the Order but **I am making efforts today to notify the attorneys involved and the Court.**

Dkt. No. 4421-4 at 17.

At Stanley's request, Gaul submitted a copy of this Court's August 18 Order to the *Soto* court on August 28, 2025.  Dkt. No. 4421-5 at 20–23.  Stanley states that he was not able to file anything in the *Soto* matter because he is not an attorney in that case.  Dkt. No. 4421-1, ¶ 54.

### d.     *Jones* Case

As in *Soto* and *Smith*, confidential information was attached to a discovery request in the *Jones* case but not filed in the public record.  Uber's MDL counsel Veronica Gromada emailed all counsel in that case to alert them to the disclosure and Uber's position that it violated the Protective Order on July 18, 2025.  Dkt. No. 4421-4 at 27.  On August 14, Gromada followed up to alert counsel in that case to this Court's August 12 ruling that Stanley's disclosures violated the Protective Order.  *Id.* at 26.  Plaintiffs' counsel Evan Lide, a partner of Bruce Stern at the Stark & Stark firm, responded the same day that he understood the issue to relate to Notice to Produce, which he was willing to withdraw in relevant part.  *Id.* at 25–26.

On August 20, 2025, Stanley sent the following email addressed to Uber's counsel

United States District Court
Northern District of California

Madeline Baio, and also including Lide, Stern, Gromada, and others as recipients:

> Ms. Baio –
>
> While I did not disclose any information to you and we have never spoken, I am connected to Stark and Stark and portions of the notice to produce referenced below was ruled to be in breach of MDL 3084's Protective Order.
>
> It is my understanding that no public posting of Exhibit A to Mr. Lide's request was ever made.
>
> Attached hereto is an Order from MDL 3084 that ruled that portions of Exhibit A to the Notice to Produce served by Mr. Lide in the *Jones* matter (and referenced below) amount to a breach of MDL 3084's Protective Order. Per this order, you should take efforts to destroy Exhibit A to the Notice to Produce.
>
> I am not counsel in the *Jones* matter and do not know who the parties are. To the extent any other counsel for the Defense has Exhibit A to the Notice to Produce, they should destroy it too.
>
> Sincerely,
> Bret Stanley

Dkt. No. 4421-4 at 25.

Stanley states that he "contacted the Court in the *Jones* Matter about providing a copy of this Court's Order finding Breach of the Protective Order by email, but was told since I am not counsel of record I cannot send the Order directly to the Court myself, but a filing would have to be made." Dkt. No. 4421-1, ¶ 44. It is not clear when that occurred, but Stanley told Gromada on August 27, 2025 (in the same email where he shared the death of his friend's mother) that he had requested that counsel of record file notice, and had been informed that she had done so. Dkt. No. 4421-4 at 30–31. Stanley's present declaration states that he was informed of that filing on August 28, 2025. Dkt. No. 4421-1, ¶ 44.

### 3. Subsequent Disclosure in *Lord*

Notwithstanding Stanley's instruction to destroy the material at issue and his *Lord* co-counsel Stern's knowledge of this Court's finding of a violation, Stern filed the same material again in the public record on October 8, 2025. On October 9, 2025, Gromada emailed Stanley that defense counsel were "shocked and beyond disappointed" by that filing. Dkt. No. 4421-4 at 14–15. Stanley responded the same day that he was also surprised by the filing and "had a very

10

heated discussion with counsel questioning how this mistake could have been made." *Id.* at 14. Stanley asserts that Stern's filing of that material was "by mistake and not intentional," and that Stern "should have deleted the offending material as previously requested." Dkt. No. 4421-1, ¶ 37.

According to Stanley, Plaintiffs' counsel in *Lord* called the case coordinator to immediately remove the filing and submitted a consent order to delete the document the same day. *Id.* at 14. According to Gromada, the filing remained on the public docket "thirteen days after Mr. Stanley's co-counsel filed it"—implying that it was removed on October 21, 2025, three days before Uber filed its present Motion. Dkt. No. 4233-2, ¶ 21. Stanley stated in his declaration that the material at issue "was removed from the docket immediately," Dkt. No. 4421-1, ¶ 38, but conceded at the hearing that he did not have sufficient information to dispute Gromada's account that the filing in fact remained available for nearly two weeks, notwithstanding the prompt requests to have it removed.

### 4. Uber's Attorneys' Fees

Uber staffed this dispute with six partners and counsel at the firm Shook, Hardy & Bacon: partner Michael Shortnacy, partner Veronica Gromada, partner (and former U.S. Magistrate Judge) Kimberly Priest Johnson, partner Daniel Cummings, senior counsel Arianna Berg, and senior counsel Brittany Kirk. Dkt. No. 4232-4 (Shortnacy Decl.), ¶¶ 5–6. Cummings has more than eight years of experience; all of the others have at least eighteen. Dkt. No. 4232-4, ¶¶ 4, 6. At least according to Uber's billing records, no associates worked on any aspect of the dispute.

Four of those attorneys spent 37.2 hours on "Cease & Desist and Investigation Work" from May 6 through June 2, 2025, billing $22,426.80. Dkt. No. 4232-5 at 2–3. Those same four senior attorneys spent 16.5 hours from May 25 through August 1, 2025 on "Conferral Related Work," billing $10,346.10. *Id.* at 4–5. All six attorneys spent a total of 155.5 hours from July 3 through August 1, 2025 briefing Uber's Motion to Enforce and related documents, billing $91,146.70. *Id.* at 6–8. That did not include preparing for the hearing and arguing the motion, for which three

partners and one senior counsel spent a total of 33.6 hours from August 4 through 12, 2025,[3] and billed $21,430.80.  *Id.* at 9.  All six attorneys—again, no one below the level of senior counsel— spent 37.8 hours ($23,368.80) on a related administrative motion to file under seal.  *Id.* at 10. Uber's counsel spent 12.3 hours ($8,419.50) preparing a proposed order, primarily as part of the Court-ordered meet-and-confer process after the August 12, 2025 hearing.  *Id.* at 11.  They then spent 14.4 hours ($10,164.60) from August 12 through 21, 2025 on "Enforcement of August 18, 2025 Order."  *Id.* at 12–13.

In total, Uber seeks fees for 307.3 hours of work by those attorneys.  *Id.* ¶ 10.  After a voluntary ten percent reduction from its actual billing rates, Uber seeks a total of $168,572.97.  *Id.* ¶ 14.

Uber currently only seeks recovery for work, as detailed above, by its counsel at Shook, Hardy & Bacon.  Dkt. No. 4232-4, ¶ 12.  Uber's counsel at Kirkland & Ellis *also* apparently spent time preparing for and appearing at the August 12, 2025 hearing, preparing the proposed order, and seeking to compel compliance.  *Id.*  Uber omits such fees from its present Motion, purportedly "without waiver."  *Id.*  Uber has also "deferred seeking" fees for its outside counsel "advising and communicating with [its] in-house counsel team, and general development of strategies to combat Mr. Stanley's serial violations of the Court's orders," as well as fees incurred by Uber's "non-MDL outside counsel in the four non-MDL matters, *Lord*, *Smith*, *Jones*, and *Soto*."  *Id.* ¶ 11.

Uber has not, at least presently, sought any attorneys' fees for time spent after the August 21, 2025 deadline for Stanley's compliance.  *See* Dkt. No. 4232-5 (provisionally under seal); Dkt. No. 4233-3 at 10–21.  As for one category of such fees, Gromada states in her declaration that Uber has not included the fees it incurred to address the October 8 filing in *Lord* in its present Motion, but "reserves [the] right to bring a separate motion seeking appropriate relief at a later time."  Dkt. No. 4233-2 at 9 n.5.

**B.    Legal Standard**

Rule 37 of the Federal Rules of Civil Procedure lists several sanctions that a court may

---

[3] Including a half-hour time entry for "Hearing on Defendants' Motion to Enforce Protective Order" on August 8, 2025, which was not the date that hearing occurred.  Dkt. No.4232-5 at 9.

issue when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P.

37(b)(2)(A).  Subpart (b)(2)(C) of that rule then provides that "[i]nstead of or in addition to" those

measures, "the court *must* order the disobedient party, the attorney advising that party, or both to

pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure

was substantially justified or other circumstances make an award of expenses unjust." Fed. R.

Civ. P. 37(b)(2)(C) (emphasis added).  "'Rule 37(b) sanctions may serve either remedial and

compensatory purposes or punitive and deterrent purposes,' but ultimately, '[t]he imposition and

selection of particular sanctions are matters left to the sound discretion of the trial court.'"

*Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (quoting *Falstaff Brewing*

*Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783–84 (9th Cir. 1983)) (alteration in original).

Even though the plain language of the rule speaks to orders "to provide or permit

discovery," *see* Fed. R. Civ. P. 37(b)(2)(A), "the Ninth Circuit has repeatedly held that Rule 37

'provide[s] comprehensively for enforcement of all [discovery] orders, including Rule 26(c)

protective orders.'"  *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846-LHK (PSG), 2014 WL

12596470, at *5 (N.D. Cal. Jan. 29, 2014) (citing, *e.g.*, *Westinghouse Elec. Corp. v. Newman &*

*Holtzinger, P.C.*, 992 F.2d 932, 934–35 (9th Cir. 1993); *United States v. Nat'l Med. Enters., Inc.*,

792 F.2d 906, 911 (9th Cir. 1986)) (alterations in original).[4]

"[T]he burden of showing substantial justification and special circumstances is on the party

being sanctioned." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).  "While a finding

of bad faith is not a requirement for imposing sanctions [under Rule 37], good or bad faith may be

a consideration in determining whether imposition of sanctions would be unjust." *Id.*  A "trial

---

[4] Federal courts also have inherent authority to "assess attorney's fees as a sanction for the willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (cleaned up). To award such sanctions based on inherent authority, as opposed to Rule 37, "the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).  At the hearing, the Court raised the question of whether inherent authority is appropriate in circumstances more specifically governed by Rule 37(b)(2).  *See Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024) (holding inherent authority improper in at least some circumstances regarding spoliation governed more specifically by Rule 37(e)).  The parties agreed that the present dispute is best viewed through the lens of Rule 37(b)(2), and Uber did not pursue arguments for sanctions based on inherent authority.

13

1    court has broad discretionary powers" in considering these exceptions.  *Liew v. Breen*, 640 F.2d

2    1046, 1050 (9th Cir. 1981).

3        A fee-shifting sanction pursuant to civil procedures "may go no further than to redress the

4    wronged party 'for losses sustained'; it may not impose an additional amount as punishment for

5    the sanctioned party's misbehavior" without implicating "procedural guarantees applicable in

6    criminal cases, such as a 'beyond a reasonable doubt' standard of proof."  *Goodyear Tire &*

7    *Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (citation omitted).  "The essential goal in shifting

8    fees is to do rough justice, not to achieve auditing perfection," such that "a district court may take

9    into account its overall sense of a suit, and may use estimates in calculating and allocating an

10   attorney's time."  *Id.* (cleaned up).

11       **C.      Analysis**

12            **1.      Stanley Violated the Protective Order and the August 18, 2025 Order**

13       This Court previously determined that Stanley violated the Protective Order, which is itself

14   a basis for sanctions under the Ninth Circuit's construction of Rule 37(b)(2).  *See Apple*, 2014 WL

15   12596470, at *5.  There is also no dispute that Stanley did not notify the *Lord*, *Jones*, and *Soto*

16   courts or counsel in *Soto* of this Court's August 18, 2025 Order within three days of that Order, as

17   required therein.  That Order also falls within the Ninth Circuit's construction of Rule 37(b)(2) as

18   encompassing "all discovery orders."  *See Westinghouse*, 992 F.2d at 935 (cleaned up).

19       To the extent that Stanley argued in correspondence with defense counsel that he was not

20   required to notify the *Soto* court—an argument that he does not specifically pursue in his

21   opposition brief, Dkt. No. 4421—this Court disagrees.  The Court's previous Order required

22   Stanley to "provide a copy of this Order to all persons and courts identified pursuant to paragraph

23   (c)."  Dkt. No. 3708 at 2.  Paragraph (c) referenced "all court proceedings in which Mr. Stanley is

24   aware that the Confidential Information has been used or disclosed in discovery or otherwise."  *Id.*

25   Uber's previous Motion to Enforce discussed in detail and attached the discovery request in *Soto*

26   that included a copy of spreadsheet at issue in other disclosures.  Stanley's opposition brief in

27   response to that motion did not controvert Uber's evidence that the same information was

28   disclosed in *Soto*, but instead simply ignored both that case and *Jones*.  *See generally* Dkt. No.

United States District Court
Northern District of California

14

3584.  Based on Uber's previous motion, Stanley was aware that the material at issue was "disclosed in discovery" in *Soto*.  Stanley was therefore required to notify the *Soto* court in addition to the *Smith*, *Lord*, and *Jones* courts.

### 2.    Stanley's Violation Was Not Substantially Justified

At the hearing, Stanley argued that his violation of the Protective Order was substantially justified because there was a legitimate basis to dispute whether it prohibited his disclosure of policy names and categories in other litigation.  He orally cited the Supreme Court's decision in *Pierce v. Underwood*, 487 U.S. 552 (1988), and the Ninth Circuit's decision in *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647 (9th Cir. 1982),[5] as construing the phrase "substantially justified" as encompassing circumstances where reasonable minds could differ.

That argument does not appear in the "substantial justification" section of Stanley's opposition brief, Dkt. No. 4421 at 13–14, though he presented similar contentions in the fact section of that brief, *id.* at 5–6.  Stanley also did not cite either *Pierce* or *Reygo* in his brief.  *See generally* Dkt. No. 4421.  In any event, the Court is not persuaded that there was any reasonable basis to dispute the application of the Protective Order to the disclosures at issue.  The violation was instead "pretty straightforward."  *See* Dkt. No. 3720 at 14:17.

Gromada's declaration regarding the Motion to Enforce detailed how Stanley effectively disclosed the contents of certain index documents that Uber had designated as confidential.  *See* Dkt. No. 3511-3, ¶¶ 15–16, 22–25 (under seal; redacted public version filed as Dkt. No. 3512-1).  The only way such disclosure could be permissible would be if those documents were not protected at all.  But under the terms of the Protective Order, documents designated as confidential are protected unless and until a party brings a challenge to the designation and the Court sustains that challenge (or the designating party withdraws its designation). *See* Dkt. No. 176 at 12–13 (Protective Order § 7.2, restricting disclosure of material *designated* as confidential).  Disclosure might also have been permissible if Stanley had successfully moved to modify the protective order to allow such disclosure, but he filed no such motion either before or after disclosing the material

---

[5] Overruled on other grounds as stated in *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1055 n.2 (9th Cir. 2007).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    at issue.

2        A different outcome could *perhaps* be appropriate if Stanley disclosed only the names of

3    policies that he learned from passing references in confidential strategy documents, where a reader

4    might be forgiven for believing (even if mistakenly) that Uber's confidentiality designation

5    pertained to other aspects of the document, and that the policy names were public knowledge that

6    Uber did not seek to protect.[6]  Here, though, Uber designated as confidential documents that

7    effectively did no more than list the policies that fell within certain categories.  *See, e.g.*, Dkt. No.

8    3511-3, ¶ 15.  Those confidentiality designations could only mean that Uber considered those

9    lists—the names of the policies together with their association with certain categories—to be

10   confidential.  Stanley's disclosure of that information unilaterally rendered Uber's designations

11   meaningless, disregarding the Protective Order's process for challenging a designation if parties

12   reasonably disagree over whether information should be protected.  *See* Dkt. No. 176 at 10–12

13   (Protective Order § 6).  Stanley's apparent refusal to discuss the validity of confidentiality

14   designations of particular documents before Uber filed its Motion to Enforce, *see* Dkt. No. 3512-1,

15   ¶ 35, further undermines any claim to substantial justification.

16       Nor could any difficulty obtaining discovery in other cases, or even improper obstruction

17   of discovery by Uber in those cases, justify Stanley's violation of the Protective Order entered

18   here.  Attorneys do not have "discretion to decide unilaterally that competing rationales . . . permit

19   the blatant breach of preexisting protective orders."  *L.D. v. United Behav. Health*, No. 4:20-cv-

20   02254-YGR, 2025 WL 3256506, at *3 (N.D. Cal. Oct. 7, 2025), *tentative order adopted*, ECF No.

21   521 (Oct. 15, 2025).[7]

22       Rule 37(b)(2)(C) therefore requires the Court to order Stanley (or perhaps his clients[8]) "to

23

24   [6] This hypothetical example of a *somewhat* more reasonable mistake that *might* not warrant
     sanctions should not be taken as suggesting that parties should feel free to guess what portions of
25   confidential documents they may disclose.  The parties should adhere scrupulously to the
     Protective Order.  When in doubt as to its application, they should confer with opposing counsel
26   prior to any disclosure.
     [7] Stanley argued at the hearing that the *L.D.* case is distinguishable because it involved a more
27   serious disclosure than here.  That may be so, but the principle quoted above remains sound,
     regardless of the extent of a disclosure.
28   [8] Uber has not requested such relief, and no basis is apparent to penalize any Plaintiff for Stanley's
     disclosures.

pay [Uber's] reasonable expenses, including attorney's fees, caused by the failure" to comply with both the Protective Order and the August 18, 2025 Order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Some sanction against Stanley is warranted, but the following considerations support a significant reduction from the full sum that Uber seeks.

### 3. Uber Delayed Seeking Sanctions for Violation of the Protective Order

Uber appears to have sandbagged its request for sanctions for violation of the Protective Order. The Court's previous Order granting relief for violations of the Protective Order was based on the understanding that it was the only relief Uber sought for the conduct at issue. Nothing in Uber's motion to enforce the Protective Order indicated that more than $150,000 in attorneys' fees would remain like a sword hanging by a slender thread, ready to drop if Stanley was late or otherwise delinquent in meeting his obligations. Nor did that motion indicate that Uber would seek its attorneys' fees regardless of whether Stanley complied with any subsequent order enforcing the Protective Order, which Uber represented at the December 9 hearing was always its intent.

The only references to other sanctions in the Motion to Enforce was the following footnote in Uber's Notice of Motion: "Defendants reserve the right to seek appropriate sanctions for violations of the Protective Order as the facts may develop in connection with this Motion and following based on any Orders by the issuing court." Dkt. No. 3512 at 2 n.2. To the extent that sentence is intelligible, it seems to indicate that Defendants might seek sanctions if additional facts came to light to warrant such sanctions. It did not put either the Court or Stanley on notice that Uber would pursue six figures worth of fees for the same violation at issue in the Motion to Enforce. Uber's reply brief in support of that motion did not mention sanctions at all. Dkt. No. 3598.

Under this Court's Local Rules, a motion for sanctions "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." Civ. L.R. 7-8(c). Some delay is not necessarily unreasonable, particularly where parties are attempting to cooperate to resolve a dispute. *See, e.g.*, *Oracle Am., Inc. v. Hewlett*

United States District Court
Northern District of California

1  *Packard Enter. Co.*, 328 F.R.D. 543, 548 (N.D. Cal. 2018) (finding that an "approximately two

2  month delay was reasonable").  Here, though, Uber's failure to bring—or at least foreshadow—a

3  motion for sanctions until more than five months after Uber first became aware of Stanley's

4  violation reduced the options available to the Court to mitigate the expenses that might be incurred

5  in resolving the dispute.  *See* Dkt. No. 4232-5 at 2 (May 6, 2025 billing entry to draft a cease-and-

6  desist letter).  That is not to say that parties should not try to resolve such disputes among

7  themselves before seeking sanctions.  Indeed, this Court's Local Rules require a motion under

8  Rule 37 to "[d]escribe in detail the efforts made by the moving party to secure compliance without

9  intervention by the Court."  Civ. L.R. 37-4.  But it is not clear when, if ever, Uber first notified

10  Stanley that it would seek to recover attorneys' fees for his violations of the Protective Order

11  before a conference on October 16, 2025, *see* Dkt. No. 4233-2, ¶ 22, and Uber did not indicate to

12  the Court that it would do so before filing the Motion on October 24, 2025.

13         At the hearing, Uber argued that it appropriately took an "incremental" approach in

14  seeking to establish a violation before pursuing fees.  There is some tension between such a

15  strategy and Uber's (correct) position that Stanley's violations were sufficiently clear to negate a

16  defense of substantial justification.  More importantly, that approach is not consistent with Civil

17  Local Rule 7-8(c)'s requirement to file a motion for sanctions "as soon as practicable."  Civ. L.R.

18  7-8(c).  Uber could have sought sanctions when it first moved to enforce the Protective Order—as

19  indicated by Uber's Second Motion for Sanctions against Stanley that Uber filed on the eve of the

20  hearing on this Motion, where Uber raised a new purported violation for the first time and

21  simultaneously moved for an award of "reasonable attorneys' fees" in an amount to be established

22  through a subsequent "fee petition."  Dkt. No. 4604 at 14–15.  No reason is apparent why Uber did

23  not take or could not have taken the same approach with respect to this Motion.  A court might

24  reasonably choose to defer its *determination* regarding sanctions until after it has addressed

25  whether a violation occurred, but the Local Rules' requirement that a party *move* for sanctions

26  promptly is important to allow all parties and the Court to understand the stakes of the dispute.

27         Uber's failure to indicate that it would seek its fees at least when it moved to enforce the

28

United States District Court
Northern District of California

Protective Order rendered its present Motion something of an ambush,[9] and warrants some reduction to the extent that Uber seeks fees for that underlying violation.

### 4. Uber Has Not Substantiated Fees Resulting from Violation of the August 18, 2025 Order

To the extent that Uber seeks to recover fees for Stanley's violations of the August 18, 2025 Order, it has not substantiated any such fees. None of the billing entries for which Uber seeks recovery postdate the August 21, 2025 deadline for compliance. *See* Dkt. No. 4233-3 at 21 (final billing entries for "Enforcement of August 18, 2025 Order" dated August 21, 2025). When a court shifts fees based on litigation misconduct, the "complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (*Fox v. Vice,* 563 U.S. 826, 836 (2011)).[10] If Stanley had sent a few more emails (or perhaps secured filings by counsel of record in the other cases at issue) later in the evening of August 21, 2025, after the final billing entries for which Uber currently seeks fees, he would not have violated the August 18, 2025 Order. Fees that Uber incurred while Stanley still had time to comply with the August 18, 2025 Order thus cannot reasonably be said to have resulted from his failure to meet its deadline.

Some aspects of Stanley's noncompliance with that deadline also had at least some justification. The Court credits Stanley's declaration that he attempted to send an email to the presiding judge in the *Lord* matter on August 21, 2025, and that the failure of that email to send (and Stanley's failure to recognize that it did not) resulted from Stanley attending to a personal loss. *See* Dkt. No. 4421-1, ¶ 35. Other aspects were not so justified. Stanley's failure to identify the *Soto* court and counsel based on Uber's previous filings was unreasonable, and Stanley has

---

[9] This may have contributed to the apparently misplaced focus of Stanley's opposition brief on his violation of the August 18, 2025 Order, with only limited discussion of the original violations of the Protective Order. Uber's reply brief faults Stanley for his failure to address the underlying violations. Dkt. No. 4471 at 8.

[10] *Goodyear* addressed a court's inherent authority to impose sanctions rather than specifically sanctions under Rule 37, but this Court is aware of no authority suggesting that the causal standard for sanctions under Rule 37 differs. *Goodyear*'s citation to *Fox*, a case shifting fees under 42 U.S.C. § 1988 based on a plaintiff's frivolous claim, indicates that the but-for causation standard applies broadly to fee-shifting for litigation conduct.

United States District Court
Northern District of California

offered no specific explanation for his failure at least to take steps within the deadline to ensure that the *Jones* court would be notified of this Court's Order, as opposed to simply emailing counsel regarding this Court's ruling. Because Uber has not substantiated any fees resulting from Stanley's noncompliance with that Order, however, the Court need not resolve with precision the extent to which his conduct after August 18, 2025 was justified, or what if any harm resulted from Stanley's delayed compliance. The same is true of whether Stanley's single email instructing his co-counsel Bruce Stern to destroy the wrongfully disclosed material in *Lord*—which was apparently not effective, as Stern retained the information and filed it again later—constituted "reasonable efforts" by Stanley "to retrieve or ensure the destruction of all unauthorized Confidential Information." *See* Dkt. No. 3708 at 2.

### 5. Uber's Fees Are Excessive in Light of the Material in Dispute

Uber's billing records indicate that its Motion to Enforce the Protective Order and prior enforcement efforts were overstaffed and overworked, beyond what is reasonable for the matters in dispute. As noted above, Uber seeks to recover fees for more than three hundred hours of work by senior attorneys, primarily partners at a large law firm, with no attorneys below the level of senior counsel having worked on even procedural matters like preparing an administrative motion to file under seal. "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection," and the Court declines to go line-by-line to second-guess particular billing entries. *See Goodyear Tire*, 581 U.S. at 108. Stanley also carries some blame for the extensive litigation of this issue due to his failure to compromise with Uber (in addition to his underlying violations). But "a district court may take into account its overall sense of a suit," and the Court is confident here that Uber could have achieved the results of the August 18, 2025 Order with far less investment of attorney resources. *See id.*

On the other side of the scale, it is also not clear that the interests at stake warranted such an investment. The material that Stanley disclosed consisted of names and categories of Uber policy documents. In seeking to seal that material, Uber asserted that a "competitor, potential competitor, or other actor could use this information to attempt to replicate Defendants' information infrastructure or business practices, such as which specific topics and categories of

1    topics it should develop policies about to optimize business performance," or that the "roadmap

2    could also allow anyone who is able to breach Defendants' information security systems to locate

3    information of particular importance and value." Dkt. No. 3511 at 8. Perhaps so. The Court

4    accepts those interests, attenuated and speculative as they may be, as sufficient to warrant sealing

5    and to preclude public disclosure.[11] But disclosing Uber's available policy documents to attorneys

6    in other litigation, subject to sufficient safeguards, would not meaningfully implicate those

7    concerns. There was room in this dispute for both sides to compromise, but there is no indication

8    that Uber has entertained the possibility of sharing lists of policy documents with other attorneys

9    or allowing Stanley to use them in other litigation. When Stanley requested such permission

10   (albeit after this Court found that he violated the Protective Order), Uber refused it. Dkt. No.

11   4421-1, ¶ 73; Dkt. No. 4421-6 at 2.

12        This is not to say that Stanley was justified in disclosing them without permission. As

13   previously discussed, the Protective Order restricts disclosure of material *designated* as

14   confidential, and an attorney cannot unilaterally decide that his own rationales for disclosure

15   outweigh that protection. Adherence to those terms going forward is critically important, because

16   there may be circumstances where a disclosure that appears harmless could in fact cause serious

17   damage for reasons that might not be apparent to the non-designating party. If a party believes

18   that an opponent's designation is unwarranted, the correct path is to meet and confer with that

19   party, and raise a challenge to the Court if the parties are unable to resolve their dispute. But

20   while the lack of actual harm does not substantially justify Stanley's conduct, it informs this

21   Court's assessment of a just sanction. *See* Fed. R. Civ. P. 37(b)(2)(A), (C).

22        Uber's previous Motion to Enforce did not hide that Uber was *also* concerned, at least in

23   large part, with not "allowing MDL discovery to serve as a litigation war chest that plaintiffs [sic]

24

25   ─────────────────
     [11] The Court finds sufficient cause for nondisclosure under the Protective Order in the absence of
26   any challenge pursuant to section 6 of that Order, and sufficient cause to seal this material on the
     docket at least under the "good cause" standard applicable to protective orders and to filings only
27   tangentially related to the merits of a case. The Court has no occasion to consider whether
     "compelling reasons" would support sealing this material in a context more closely related to the
28   merits, nor has the Court prejudged any challenge that might be raised under section 6 of the
     Protective Order.

United States District Court
Northern District of California

1  attorneys could use in future litigation involving *any* type of claim." Dkt. No. 3512 at 18. That

2  interest carries at most limited weight. The Ninth Circuit "strongly favors access to discovery

3  materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut.*

4  *Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). "Allowing the fruits of one litigation to

5  facilitate preparation in other cases advances the interests of judicial economy by avoiding the

6  wasteful duplication of discovery." *Id.*

7      To be clear, such access is not to be granted "automatically," *id.* at 1132, and Stanley

8  followed *none* of the appropriate procedures to allow for such access either under the Protective

9  Order entered in this case or under the Ninth Circuit's discussion in *Foltz* of how such a request

10  might be raised.[12] A violation occurred, and some sanction is appropriate. But Uber does not

11  have a significant legitimate interest in preventing litigation adversaries from understanding what

12  documents might be relevant to their claims, subject to discovery, and available for production.

13  To the extent that Uber brought its previous Motion to Enforce for that purpose, it is reasonable

14  for Uber to bear a large portion of its costs for doing so.

15              **6.    Uber's Own Litigation Conduct Warrants a Reduction**

16      Uber's own conduct in this MDL also warrants a reduction in the fees that it should be

17  permitted to recover. This Court previously found that Uber likely violated at least one Order of

18  the Court regarding discovery of the sort of policy documents at issue in the present dispute. *See*

19  Dkt. No. 2545 at 4. The Court previously denied without prejudice a procedurally improper

20  request by Plaintiffs for sanctions for that violation, *id.* at 6–7, and Plaintiffs did not renew that

21  request. In general, the process of identifying and producing relevant policy-related documents

22  has been laborious, and Uber has "wasted the Court's and Plaintiffs' time" through incomplete and

23  misleading disclosures. *Id.* at 3.[13] That history does not justify Stanley's violations, but it

24

25  [12] Nor is it appropriate for a plaintiff's attorney in this MDL to seek overbroad discovery in the
    hope of obtaining material that might be useful in other litigation, as Uber accused Stanley of

26  doing at the December 9, 2025 hearing. The Court makes no finding of whether Stanley in fact
    previously sought discovery for improper reasons, but emphasizes that the legitimate interest in

27  sharing discovery between cases for the sake of efficiency is not a license to pursue additional,
    irrelevant discovery in one case (or here, MDL proceeding) that is intended for use in another.

28  [13] Stanley asserts that Uber has similarly impeded discovery in other cases and refused to produce
    policy documents that plaintiffs' attorneys do not specifically name. Such assertions are

1  constitutes "other circumstances" that render a *complete* "award of expenses unjust."  *See* Fed. R.

2  Civ. P. 37(b)(2)(C).

3  ### 7.    Stanley's Violation Was Not Egregious

4  As discussed above, Stanley clearly violated the Protective Order and did so without

5  substantial justification.  That said, there is a range of conduct that can meet that threshold.  In

6  *Harmon v. City of Santa Clara*, for instance, counsel erroneously and negligently determined that

7  a video designated as confidential had not been so designated, failed to advise their client that the

8  video was protected, and alerted local new outlets to the video after their client posted it to

9  YouTube, thus resulting in substantial media coverage and republication.  323 F.R.D. at 620–21.

10  That disclosure could not be undone.  Judge Cousins found further protection of the video no

11  longer appropriate in part based on the reality that "as a practical matter that the video has already

12  escaped to the wilds of the internet, rendering a protective order less useful" and any interest in

13  privacy "a moot point."  *Id.* at 625.  Under those circumstances, Judge Cousins found "limited

14  sanctions" appropriate and awarded the defendants their reasonable attorneys' fees, which totaled

15  $69,756.31.  *Id.* at 626, 628.

16  Here, in contrast, Stanley directly revealed protected material only to other attorneys and

17  courts.  The material at issue effectively disclosed the contents of documents designated as

18  confidential, but Stanley did not simply hand over protected documents to anyone, much less to

19  the press.  To the extent that any public exposure resulted, it occurred only temporarily on the

20  docket of a New Jersey state trial court, with no indication that either those disclosures or that case

21  more generally attracted any public attention.  The conduct here is thus less egregious than in a

22  case like *Harmon*.

23  The Court is also satisfied that, more likely than not, Stanley genuinely—though

24  unreasonably—believed that his disclosure of policy names and categories in discovery requests

25  did not violate the Protective Order.  The Court has serious concerns about Stanley's lax approach

26  to the Protective Order, but Uber has not shown bad faith.  *See Hyde & Drath*, 24 F.3d at 1171

27  ——————————————

28  consistent with the history of discovery before this Court, but this Order makes no specific
findings of any violation or misconduct before other courts.

1  ("[G]ood or bad faith may be a consideration in determining whether imposition of sanctions

2  would be unjust.").

3        The degree of blameworthiness of Stanley's conduct supports the conclusion that assessing

4  Uber's six-figure attorneys' fees in their entirety would be unjust.

5                                              * * *

6        Stanley violated the Protective Order and this Court's August 18, 2025 Order.  Sanctions

7  are warranted under Rule 37(b)(2)(C) and necessary to ensure compliance with court orders going

8  forward.  The considerations above, however, counsel against an award even approaching the full

9  $168,572.97 that Uber now seeks.

10       The Court's authority under Rule 37(b)(2)(C) to decline to award fees when

11 "circumstances make an award of expenses unjust" implies authority to reduce a fee award to an

12 amount that is just under the circumstances.  Rule 37(b)(2)(A) also authorizes the Court to issue

13 "issue further just orders" for violation of a discovery order, which "*may* include" a specifically

14 enumerated list of sanctions.  Fed. R. Civ. P. 37(a)(2)(A) (emphasis added).   That rule "provides a

15 *non-exclusive* list of sanctions that the court may, in its discretion, impose on a party who fails to

16 obey an order."  *Ocasio v. City of Canandaigua*, No. 18-cv-6712 MAV CDH, 2025 WL 1064721,

17 at *12 (W.D.N.Y. Apr. 9, 2025) (emphasis added) (citation and internal quotation marks omitted);

18 *see also, e.g.*, *All. Labs, LLC v. Stratus Pharms., Inc.*, No. 2:12-cv-00927 JWS, 2013 WL

19 12107463, at *5 (D. Ariz. Sept. 17, 2013).  The Court can therefore issue a monetary sanction less

20 than the entirety of Uber's attorneys' fees under either subpart (A) or subpart (C), to the extent that

21 such an award is "just" and a greater award would be "unjust."  The Court does so here principally

22 based on subpart (C), or in the alternative based on subpart (A).

23       The Court finds that partial compensation of Uber's attorneys' fees is appropriate, but that

24 an award greater than necessary to deter future violations would be unjust under the circumstances

25 presented.  Taking into account Stanley's cavalier approach to the Protective Order, and his stated

26 intent at the December 9, 2025 hearing to continue testing its boundaries, the Court finds an award

27 of $30,000 necessary and sufficient to deter future violations and appropriate to partially

28 compensate Uber for its costs.  Stanley is ORDERED to pay Uber that sum no later than thirty

United States District Court
Northern District of California

days from the date of this Order.

### D.    Confidentiality of Policy Names

The Court's analysis above (and in the previous ruling granting Uber's Motion to Enforce) rests on the premise that the Protective Order prohibits the disclosure of a substantial portion of the contents of a document designated as confidential, absent either an agreement by the designating party or a ruling by the Court sustaining a challenge to the designation. That principle should not be controversial.

Protective orders limiting the disclosure of confidential information produced in discovery[14] are vital to efficient and effective discovery in cases that involve propriety corporate documents or sensitive personal information, both of which are at issue in this MDL. *See, e.g.*, *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (recognizing district courts' "broad latitude to grant protective orders to prevent disclosure of materials for many types of information"). Discovery in this litigation would be far more difficult without such protections, and violations of the Protective Order risk undermining its ability to serve that purpose. As the Ninth Circuit recognized in *Foltz*, however, protective orders for confidential information are not intended to serve as barriers to efficient and effective discovery in other litigation. *See* 331 F.3d at 1131–32. Such inefficiency is sometimes a necessary side effect of protection sufficient to safeguard parties' needs for confidentiality, but *Foltz* instructs district courts to limit "wasteful duplication of discovery" when reasonably possible. *Id.*

Neither this Order nor the previous Order resolve the question of whether Uber can properly prevent Stanley from merely identifying policies by name in other litigation. If Stanley learns the names of policies from documents designated as confidential, the names might constitute "information . . . designated 'CONFIDENTIAL'" and thus restricted from disclosure. Dkt. No. 176 at 12 (Protective Order § 7.2). But Stanley might reasonably ask Uber whether it intended its designation to govern such names, and any such designation might or might not be warranted under the Protective Order and capable of withstanding a challenge.

---

[14] As distinct from protective orders limiting the scope of discovery. *E.g.*, Fed. R. Civ. P. 26(c)(1)(A), (B), (D).

The answer may not be the same for all policies.  Hypothetically, if Uber had a policy titled "Business Travel Reimbursement Guidelines"—or even, say, "Checklist for Responding to Allegations of Sexual Assault by Drivers"—Uber might be hard pressed to justify restricting disclosure of the *name* of that document.  On the other hand, if Uber had a policy titled "Testing Protocols for Secret Forthcoming Personal Teleportation Service," Uber might have a strong interest in keeping even the name of that document confidential.

The parties are therefore ORDERED to meet and confer no later than February 24, 2026 regarding the degree to which Uber's policy names are "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" within the meaning of the Protective Order.  The parties may also wish to consider whether a modification to the Protective Order is appropriate to allow for limited use of this or other material designated as confidential in serving discovery requests in other litigation, subject to specific safeguards to prevent undue public disclosure.  If the parties are unable to reach an agreement, Plaintiffs' counsel must secure permission from the Court—either through a challenge under the terms of the Protective Order, or by modifying the Protective Order—before disclosing policy names that Plaintiffs learned from documents designated under the Protective Order and that Uber believes cannot be disclosed.

Any challenge to a confidentiality designation must be raised in accordance with Section 6 of the Protective Order.  Any request to modify the Protective Order to allow for use of protected material in other litigation must be presented either by stipulation and proposed order or through the process of Pretrial Order No. 8.

## III.    SECOND MOTION FOR SANCTIONS

With the relevant legal standards and the framework of the Protective Order set forth in large part above, the Second Motion for Sanctions (Dkt. No. 4604) does not require as extensive discussion.  The brevity of the Court's analysis should not be construed as suggesting that the conduct at issue is not serious, or that the Court has not considered in detail the parties' filings and arguments.

This Motion also relates to Stanley's work in the *Smith* case in Texas.  The history of that litigation is extensive, and the parties have raised a number of disputes as to the meaning of

particular documents and their relevance to that case. The most important facts, however, are straightforward and not in dispute. Stanley searched for documents related to the *Smith* case in a repository of documents that Uber produced in this MDL, including documents designated as confidential under the Protective Order. Stanley then relied on what he found in a document designated as confidential to advance arguments in *Smith*, though he did not disclose that document to the *Smith* court, the public, or anyone else who was not authorized to see it.

As a "basic principle," the Protective Order provides that a "Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case *only* for prosecuting, defending, or attempting to settle this Action or the consolidated [California JCCP] action captioned <u>In re Uber Rideshare Cases</u>, Case No. CJC-21-005188, so long as such use is permitted herein." Dkt. No. 176 at 12, ¶ 7.1 (emphasis added). "Protected Material" is defined as material that a party designates as confidential (or as Highly Confidential – Attorneys' Eyes Only). *Id.* at 4, ¶ 2.16.

Here, Stanley identified a confidential document in the MDL discovery repository containing the unique "UUID" identification number of the Uber Eats delivery person who allegedly injured Stanley's client in *Smith*. *See* Dkt. No. 4780-4 (Stanley Decl.) ¶ 25. At the hearing, Stanley (eventually) acknowledged that he found that document by searching for it specifically, because he believed such a document would exist to rebut an assertion made by Uber's counsel in *Smith*. Dkt. No. 5141 at 6:9–25. Stanley then asserted to opposing counsel in the *Smith* case that a representation she had made was "untrue based on documents related to [the] UUID," Dkt. No. 4604-2 at 3, and that Uber attorneys with access to "the MDL database" could corroborate that by searching for the UUID, *id.* at 2.

Notwithstanding Stanley's arguments to the contrary, there is no reasonable basis to dispute that Stanley "used" protected material for a purpose other than prosecuting this MDL or the JCCP litigation when he searched the corpus of discovery in this MDL for information relevant to his client's claims in *Smith*, and at the very least when he then relied on what he found there to pursue arguments in *Smith*. While the Court remains open to considering *requests* to allow use of discovery materials from this MDL in other litigation in appropriate circumstances,

United States District Court
Northern District of California

1  the Protective Order does not permit such use by an attorney acting unilaterally.  Stanley therefore

2  violated the Protective Order when he resorted to self-help to research his *Smith* client's claims in

3  the confidential MDL discovery repository, and sanctions are appropriate under Rule 37(b)(2)(C).

4        Stanley's self-help displayed a serious disregard for the Protective Order and the role of

5  courts in regulating discovery in litigation.  Courts routinely consider requests to modify

6  protective orders and for the re-production of relevant information produced in collateral or related

7  litigation and investigations.  *E.g.*, *Sheet Metal Workers Nat'l Pension Fund v. Bayer*

8  *Aktiengesellschaft*, No. 20-cv-04737-RS, 2025 WL 2380970 (N.D. Cal. Aug. 15, 2025); *Haeger v.*

9  *Goodyear Tire & Rubber Co.*, No. CV 05-2046-PHX-ROS, 2008 WL 11226106 (D. Ariz. May 5,

10  2008).  Through such motion practice, courts consider relevancy and proportionality, and balance

11  the need for efficient and complete discovery with the burdens associated with the further

12  disclosure of litigants and non-litigants' private and proprietary information.  Stanley, however,

13  short-circuited those consideration by resorting to obvious self-help for non-MDL cases.  Taking

14  into account the clear-cut nature of the violation and that this violation occurred after the Court

15  had already found previous violations as discussed above, and while Stanley was litigating Uber's

16  First Motion for Sanctions, the Court does not find an award of attorneys' fees unjust.

17        Stanley is ORDERED to reimburse Uber's *reasonable* attorneys' fees and costs incurred to

18  bring, brief, and argue the Second Motion for Sanctions.  The Court declines to award fees

19  incurred in relation to discovery disputes in the *Smith* case, because it is not clear that the same or

20  similar issues would not have been litigated there if Stanley had pursed discovery through more

21  appropriate means.

22        The parties are instructed to meet and confer as to an appropriate measure of those fees and

23  costs.  The parties' agreement as to the amount of fees and costs shall not be construed as waiving

24  any right to challenge the merits of this Order.  If they are unable to agree, they may file a joint

25  letter consistent with Pretrial Order No. 8, attaching the materials called for by Civil Local Rule

26  37-4, no later than March 17, 2026.  If the Court determines that Stanley's position is wholly

27  unreasonable, the Court may award Uber additional fees to compensate for the negotiation

28  process.  If the Court determines that Uber's position is wholly unreasonable, the Court may deny

fees entirely or reduce them significantly.

Uber also asks the Court to recommend that Judge Breyer remove Stanley from the Plaintiff Steering Committee (PSC), and in the interim to restrict the access to discovery materials that Stanley is afforded as a result of his membership in the PSC—i.e., access to confidential materials that do not pertain to Stanley's individual clients in the MDL.  Membership in the PSC is a discretionary decision of the judge presiding over the MDL.  This Court is not in a position to balance all of the reasons Judge Breyer may have had for appointing Stanley to the PSC against his more recent violations of the Protective Order.  Nor has the Court considered the PSC's position regarding the impact of the removing Stanley from his role or removing his access to the repository of MDL discovery.  The Court therefore declines to issue a recommendation on the subject.  This Court, however, REFERS that question to Judge Breyer, to be decided on the existing record or whatever further briefing Judge Breyer might solicit.

The Court also declines to limit Stanley's access to confidential discovery materials while he remains a member of the PSC, as doing so may undermine the PSC's ability to function effectively or Stanley's ability to serve in the role to which Judge Breyer appointed him.  The Court expects Stanley's strict compliance with the Protective Order going forward.

## IV.    SEALING MOTIONS

### A.    Sealing Motions Regarding First Sanctions Motion

Uber filed an administrative motion to file portions of its First Motion for Sanctions and supporting documents under seal.  Dkt. No. 4232.  Stanley filed an administrative motion to seal portions of his opposition brief and supporting documents based on Uber's confidentiality designations, Dkt. No. 4420,[15] and Uber filed a statement in support of sealing those materials, Dkt. No. 4463.  Plaintiffs oppose Uber's sealing requests to the extent that they relate to Uber's attorney billing rates and time entries, Dkt. No. 4253, which Uber contends should be maintained under seal to avoid competitive disadvantage to both Uber and Shook, Hardy & Bacon in negotiating engagements with other law firms or clients.  *See generally* Dkt. No. 4232.

---

[15] The Court construes that filing as an administrative motion to consider whether documents should be sealed pursuant to Civil Local Rule 79-5(f).

United States District Court
Northern District of California

The public has a right of access to judicial proceedings, such that parties usually must show "compelling reasons" to file under seal, although a lower standard of "good cause" applies to sealing documents filed in contexts no more than tangentially related to the merits of a case, such as the discovery status report at issue here. *See generally Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016). Even the "good cause" standard, however, "requires a 'particularized showing' that 'specific prejudice or harm will result' if the information is disclosed." *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-cv-00220-LHK, 2018 WL 2317835, at *6 (N.D. Cal. May 22, 2018) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning' will not suffice." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

Courts in this district have reached differing conclusions as to whether negotiated attorney billing rates warrant sealing to prevent disadvantage in future negotiations, or whether such interests are insufficient to overcome the public interest in understanding the basis for a request for or award of attorneys' fees. *Compare, e.g.*, *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, No. 3:08-cv-02658-WHO, 2019 WL 6525752, at *6 (N.D. Cal. Dec. 4, 2019) (granting sealing), *with Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 6901744, at *1 (N.D. Cal. Dec. 8, 2014) (denying sealing). Here, because the Court awards Uber only a portion of its fees that is not based on the specific rates that its attorneys billed, the Court will allow the rates recited in Uber's Motion (Dkt. No. 4233 at 20) and Shortnacy's declaration (Dkt. No. 4232-4, ¶¶ 4, 6), and the dollar values associated with specific time entries in Exhibit A thereto (Dkt. No. 4232-5), to remain under seal. The Court does not reach the question of whether sealing those values would have been appropriate if this Order had relied directly on Uber's billing rates to award relief. To the extent that other information in the billing records, as well as this Order's summary of Uber's fees in the background section above, include more information than Uber's public filings, from which a reader might be able to discern *aggregated* billing rates for certain categories of work, the Court finds such disclosure to be warranted by the public's right of access to judicial proceedings.

United States District Court
Northern District of California

1    Courts also sometimes seal attorneys' narrative descriptions in billing records of the work

2    they performed "[b]ecause such records may implicate privileged information" or reveal litigation

3    strategy. *See, e.g.*, *Quackenbush v. Am. Honda Motor Co., Inc.*, No. C 20-05599 WHA, 2023 WL

4    8360045, at *11 (N.D. Cal. Dec. 1, 2023). Here, Uber has already disclosed these billing entries

5    to its litigation adversary by serving its unredacted motion and supporting documents on Stanley.

6    The purpose of the privilege has therefore been defeated and any privilege has been waived. The

7    Court has also reviewed Uber's narrative billing entries and discerns no particularized harm that

8    could be expected to result from their disclosure.

9    Uber's administrative motion to seal is GRANTED with respect to its attorneys' actual

10    billing rates and the dollar values associated with specific time entries. It is DENIED as to

11    aggregate totals billed for categories of work, time values associated with specific time entries,

12    and narrative descriptions. Uber shall file public versions of its Motion, Shortnacy's supporting

13    declaration, and Exhibit A thereto consistent with this Order no later than February 24, 2026.

14    As for Stanley's administrative motion, the request to seal portions of his opposition brief

15    and declaration are DENIED, as they contain only the sort of billing information that the Court

16    declined to seal in the context of Uber's filing. The request to seal portions of Exhibits A and B is

17    GRANTED for the reasons stated in Uber's statement in support of sealing. Dkt. No. 4463 at 2–3.

18    Uber does not address Stanley's redaction to a Bates number in Exhibit E, and the Court discerns

19    no harm likely to result from disclosure of that information. The request to seal that document is

20    therefore DENIED. Stanley shall file unredacted versions of his opposition brief, declaration, and

21    Exhibit E no later than February 24, 2026.

22    **B.    Sealing Motions Regarding Second Sanctions Motion**

23    The parties also filed sealing motions in connection with Uber's Second Motion for

24    Sanctions. Dkt. Nos. 4603, 4780, 4825. Uber is ORDERED TO SHOW CAUSE why those

25    motions should not be denied in part.

26    Uber's sealing requests appear to be overbroad in at least some respects. For example,

27    Uber seeks to seal all references to the full name of Uber's "VFB" auditing program in which

28    Stanley contends an Uber Eats delivery person relevant to the *Smith* case was flagged, despite both

United States District Court
Northern District of California

31

Stanley *and counsel for Uber* having used that name in open court in that case.  *See* Dkt. No. 4780-7 (Stanley Decl. Ex. 3, provisionally under seal).  Stanley also repeatedly named the program in open court at this Court's January 20, 2026 hearing, without objection by Uber.  Dkt. No. 5141.  The Court is therefore unlikely to allow sealing of the program's name.  *See* Dkt. No. 3296 (denying an administrative motion to seal statements made in open court).  That said, the Court will allow Uber a further opportunity to brief that issue if it wishes to pursue it.

In its response to Stanley's Administrative Motion to File Under Seal, Uber also requests extensive further redactions to documents that Stanley filed in the public record.  Dkt. No. 4826 at 3–5.  Notwithstanding Uber's familiarity with this Court's usual practice of addressing sealing motions in conjunction with underlying substantive motions, or sometimes later than the underlying motions, Uber did not file a motion to provisionally seal Stanley's filings that appeared in the public record, nor did it raise the issue at the January 20, 2026 hearing.  Instead, Uber rested on a "Statement in Support of Bret Stanley's Administrative Motion to File Under Seal."  Dkt. No. 4826.  Those filings have therefore remained in the public record for several weeks, and foreseeably so, in litigation that has attracted significant public attention.  *See, e.g.*, Dkt. No. 5179 at 5 (motion to intervene for the purpose of accessing public trial exhibits, by a foundation that "has obtained, and intends to obtain, public records related to this action and ensure that they remain publicly available").  The Court now provisionally ORDERS docket entry 4783 and its sub-entries sealed pending a final resolution of the parties' sealing motions, but Uber must address the significance of the public disclosure of those materials—and its own previous lack of urgency in its efforts to seal them—if it wishes to pursue further redactions beyond those made by Stanley.

Finally, much of the material at issue in these sealing motions seems to fall in the category of information that Uber agrees Stanley may disclose in other litigation.  In its reply brief, Uber asserts that "Mr. Stanley can tell the *Smith* court what he thinks a [redacted] is from his general knowledge and why he believes it exists in that case."  Dkt. No. 4827 at 11.  Much of the material sought to be sealed relates to a basic understanding of the subject redacted in that sentence.  If Stanley can disclose that information in the *Smith* case, it seems doubtful that it should be sealed here.

Accordingly, Uber is ORDERED TO SHOW CAUSE why all sealing requests related to its Second Motion for Sanctions should not be denied, by filing a response no later than March 3, 2026.  Uber is encouraged to narrowly tailor its sealing requests.

**V.    CONCLUSION**

For the reasons discussed above, Uber's First Motion for Sanctions is GRANTED IN PART.  Stanley is ORDERED to pay Uber the sum of $30,000 no later than thirty days from the date of this Order, as partial compensation for attorneys' fees that Uber incurred due to Stanley's violations discussed above.  This Motion is otherwise DENIED, and the Court will not entertain any subsequent motion seeking further sanctions for the same conduct.

The parties shall meet and confer no later than February 24, 2026 regarding confidentiality of Uber's policy titles.  If the parties are not able to reach an agreement, and Plaintiffs' counsel wish to disclose policy titles that they learned from documents designated as confidential, Plaintiffs must raise a challenge to Uber's confidentiality designations in accordance with the Protective Order or otherwise seek a court order authorizing such disclosure.

Uber's Second Motion for Sanctions is also GRANTED IN PART, and Stanley is ORDERED to pay Uber's reasonable attorneys' fees and costs for bring that Motion.  The parties shall meet and confer as to the sum of fees and costs.  If they cannot agree, they shall file a joint letter as discussed above no later than March 17, 2026.  The Court declines it issue a recommendation regarding removal of Stanley from the PSC, but refers that decision to Judge Breyer to be decided on the current record or whatever further briefing he may request.  The Court declines to restrict Stanley's access to confidential discovery at this time.

The parties' sealing motions are resolved as discussed above.  Uber shall file public versions of its First Motion, Michael Shortnacy's supporting declaration, and Exhibit A thereto consistent with this Order no later than February 24, 2026.  Stanley shall file unredacted versions of his opposition brief, declaration, and Exhibit E by the same deadline.  Uber is ORDERED TO SHOW CAUSE why its sealing requests related to the Second Motion should not be denied, and must file a response no later than March 3, 2026 Order addressing what material filed in connection with that Motion truly warrants sealing.

Stanley is admonished to comply strictly with the Protective Order and any other court orders in this litigation going forward.  Any future violation may result in more severe sanctions.

**IT IS SO ORDERED.**

Dated: February 17, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California