

Emilie Boman

**EX 2036**

P.S. 10.01.25

exhibitsticker.com

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

# UBER

**AMENDMENT AND RESTATEMENT**
**OF**
**MASTER SERVICES AGREEMENT**

This Amendment and Restatement ("Restatement") is entered into and made effective as of February 12, 2020 ("Restatement Effective Date") by and between Uber Technologies, Inc. ("Uber") and Pennsylvania Coalition Against Rape ("Consultant") and hereby amends the Master Services Agreement, with an effective date April 5, 2019 by and between Uber and Consultant's d/b/a National Sexual Violence Research Center (collectively, the "Agreement"). Any undefined, capitalized terms used in this Amendment shall have the meaning set forth in the Agreement. In the event of any conflict between the terms of the Agreement and this Amendment, the terms of this Amendment shall govern.

WHEREAS, the Agreement identified Consultant's d/b/a, the National Sexual Violence Research Center as the signatory;

WHEREAS, the proper signatory for Consultant is the Pennsylvania Coalition Against Rape; and

WHEREAS, the Parties now seek to amend the Agreement to correct this misidentification on the terms and conditions more fully set forth herein.

NOW, THEREFORE, in consideration of the covenants set forth below, the sufficiency of which is hereby acknowledged, Uber and Consultant hereby agree to amend the Agreement as follows:

1. All references to the National Sexual Violence Research Center or the NSVRC shall be replaced with references to the *Pennsylvania Coalition Against Rape* or the *PCAR* respectively as set forth in the Amended and Restated Master Services Agreement attached hereto as Exhibit A.

The Agreement shall be superseded and replaced by the Amended and Restated Master Services Agreement. This Amendment and its attachments may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same original instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the Effective Date.

| **Uber Technologies, Inc.** | **Pennsylvania Coalition Against Rape** |
|---|---|
| By: *Andrew Byrne* | By: *Karen Baker* |
| Name: Andrew Byrne | Name: Karen Baker |
| Title: Director of Policy | Title: CEO |

**Trial Exhibit No.**

**P-00393**

**CONFIDENTIAL**                **Valor000001**

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

Exhibit A

**Amended and Restated**
**MASTER SERVICES AGREEMENT**

This Master Services Agreement ("**Agreement**") is entered into and made effective as of April 05, 2019 ("**Effective Date**") by and between **Uber Technologies, Inc.**, a Delaware corporation, located at 1455 Market St., Suite 400, San Francisco, California 94103 ("**Uber**") and **Pennsylvania Coalition Against Rape**, a(n) Pennsylvania 501(c)(3) organization, whose address is 2101 N Front St, Governor's Plaza North, Building #2, Harrisburg, PA 17110 ("**Consultant**").

**Section 1.          DEFINITIONS.** The following terms shall have the meanings set forth below:

1.1      "**Affiliate**" means, with respect to any entity, any other entity that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such entity, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through ownership of voting securities, by contract or otherwise.

1.2      "**Deliverables**" means the specific materials, software, designs, devices, products or other deliverables that are provided by Consultant to Uber as a result of performing the Services (as contemplated by an applicable SOW).

1.3      "**Intellectual Property**" shall mean all worldwide rights in and to intellectual property, including, without limitation rights to inventions, trade secrets, know-how, technology, research tools, data, software, improvements and rights of authorship and attribution, whether or not protected by patents or copyrights, and including, without limitation, patent applications, patents, trade secret rights, copyrights, trademarks, and other exclusive or non-exclusive rights pertaining to intellectual property owned or controlled by a party.

1.4      "**Payment Schedule**" means the schedule of payment(s) relating to the performance of the Services set forth in the applicable SOW.

1.5      "**Purchase Order**" means the document issued by Uber to Consultant to authorize the payment of Consultant's invoice.

1.6      "**Project Schedule**" means the timetable relating to the performance of the Services set forth in the applicable SOW.

1.7      "**Services**" means the services described in the applicable SOW.

1.8      "**Statement of Work**" or "**SOW**" means a mutually executed document containing the description of the Services, including but not limited to, the Deliverables, Project Schedule, Payment Schedule, acceptance criteria and other information applicable to the Services, in a form substantially similar in form to Exhibit A, attached hereto and incorporated herein by reference. Each SOW and any amendment thereto may not be made except by a writing signed by both Uber and Consultant. In the event of any inconsistencies between the terms of a SOW and the terms herein, this Agreement shall govern, except for instances where the SOW specifically references a deviation from the Agreement, in which case the terms set forth in the SOW will prevail for that SOW only. Each SOW (as may be amended) taken together with the incorporated terms of this Agreement shall be a separately enforceable agreement.

**Section 2.          SUPPLY OF SERVICES.**

**CONFIDENTIAL**

**Valor000002**

**P-00393.00002**

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

2.1    Description of Services. Consultant will perform the Services as described herein and as set forth in each SOW attached hereto and as agreed upon by the parties. During the Term of this Agreement, the parties may agree on additional SOWs (which may be prepared using the template provided at Exhibit A), and Consultant shall provide Uber with such Services, including any Deliverables, as set forth in such SOW. Each party hereby agrees that by referencing this Agreement each SOW will be understood as implicitly incorporating by reference the terms herein even if the SOW does not expressly do so. An SOW issued pursuant to this Agreement may be entered into by Uber or any of its Affiliates, as specifically stated in the applicable SOW, and in any such instance, all references to "Uber" in this Agreement and in such SOW shall refer to such Affiliate for that SOW only.

2.2    Change Orders. Uber may, at any time, by written notice to Consultant, issue additional instructions, require additional Services or reduce or waive Services covered by the applicable SOW. In such event, a mutually agreed upon adjustment in price and time of performance will be made. Any claim by Consultant for increased compensation must be made within thirty (30) days after receipt of written notice regarding the change in Services or delivery of adjusted or new Services.

2.3    Performance. The manner and means by which Consultant chooses to complete the Services are in the Consultant's sole discretion and control. Consultant represents and warrants that Consultant and its employees are skilled, experienced and fully-qualified to perform and deliver the Services consistent with the highest standards of Consultant's profession, business or industry. Unless otherwise specified in the applicable SOW, Consultant shall provide all necessary equipment, tools and other material, at Consultant's own expense, necessary to complete the Services.

2.4    Personnel. Consultant shall at all times provide a sufficient number of properly qualified, skilled and experienced personnel ("**Personnel**") to perform and complete the Services, and Consultant shall take reasonable measures to ensure that all of its Personnel who perform any Services hereunder will comply with the duties and obligations applicable thereto under this Agreement. Subject to Section 2.5 below, all Personnel shall be employees of Consultant. Uber reserves the right to reject for any lawful and reasonable reason whatsoever any of the Personnel assigned by Consultant in connection with any SOW, and Consultant shall as soon as possible thereafter provide a replacement satisfactory to Uber. Upon the request of Uber from time to time, Consultant agrees to conduct background checks of proposed or current Personnel, subject to legal regulations and limitations. In no event shall performance of the Services be delayed or shall Uber be charged for any time required for the recruitment of any Personnel needed under an SOW or for any replacement Personnel to be trained to provide Services, whether the replacement is requested by Uber or not. Consultant shall be solely responsible for assuring the safety of its Personnel performing any Services. Consultant shall comply with all applicable health and safety laws and regulations.

2.5    Subcontractors. Consultant may engage subcontractors to assist with the performance of the Services, provided that Consultant obtains prior written approval of subcontractors in each instance. Consultant shall be solely responsible for the acts and omissions of all subcontractors engaged by Consultant to perform Services hereunder. If approved by Uber, subcontractors performing Services shall be deemed Personnel for the purposes of this Agreement.

**Section 3.    COMPENSATION.**

3.1    Payment. Subject to Section 3.3, Uber will pay Consultant for the Services rendered in accordance with the Payment Schedule as provided in the applicable SOW. Unless expressly provided for in the applicable SOW, Consultant assumes the risk for all other costs and expenses. In no event shall Uber be required to directly compensate any Personnel with respect to the Services under this Agreement.

3.2    Invoices. Each invoice for Services, Deliverables, or approved reimbursable expenses shall be supported by (a) an itemized description of the Services, Deliverable, or expense(s) claimed and (b) attached receipts, when such receipts are reasonably available. Invoices shall reference this Agreement. Invoices will fairly and accurately report

**CONFIDENTIAL**

**Valor000003**

P-00393.00003

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

the use of any funds in connection with performing this Agreement and will not disguise, mislabel or fail to disclose any payments to third parties. Unless otherwise set forth in the applicable SOW, the associated payment shall be made within thirty (30) days after Uber's receipt of an undisputed invoice accompanied by all required documentation. Invoices and support documentation shall be remitted to the address set forth in the applicable SOW.

3.3      Acceptance. Payment shall not be due until (a) all Deliverables have been accepted by Uber as set forth below, and (b) all Services have been performed to the satisfaction of Uber. Except as may be provided in an SOW, within fifteen (15) days after receipt of the Deliverables ("**Acceptance Period**"), Uber will: (i) provide written notification of acceptance to Consultant, or (ii) provide written notification of any deficiencies, after which Consultant shall promptly correct such deficiencies and resubmit the Deliverables to Uber within ten (10) days of receipt of notice. This process shall continue until Consultant has corrected all noted deficiencies and Uber accepts the Deliverables or Uber may terminate the applicable SOW in accordance with Section 10. Uber will be deemed to have accepted the Deliverables if Uber fails to notify Consultant within the Acceptance Period.

3.4      Records. Consultant shall keep accurate records of the time spent, work performed, and all charges and expenses, associated with the Services. Uber shall have access to and the right to examine any pertinent books, documents, papers and records of Consultant relating to the Services, upon reasonable notice to Consultant and during Consultant's regular business hours, for a period of two (2) years after final payment under the applicable SOW.

**Section 4.         RELATIONSHIP BETWEEN THE PARTIES.**

4.1      Status. Consultant's relationship with Uber shall be that of a non-exclusive independent contractor and nothing in this Agreement shall be construed to create a partnership, joint venture, or employer-employee relationship. Consultant is not an agent of Uber and is not authorized to make any representation, contract, or commitment on behalf of Uber. Consultant and its employees and Personnel shall not be entitled to any of the benefits that Uber may make available to its employees. Consultant shall be solely responsible for all tax returns and payments required to be filed with or made to any federal, state or local tax authority with respect to Consultant's performance of Services and receipt of payments under this Agreement.

4.2      No Withholding. Uber will not withhold or make payments for social security, make unemployment insurance or disability insurance contributions, or obtain worker's compensation insurance on behalf of Consultant or its agents, employees, or Personnel. Consultant hereby agrees to indemnify, defend, and hold Uber harmless against any and all such taxes or contributions, including penalties and interest.

4.3      Gratuities. Consultant represents and warrants that neither it nor any of its employees, agents or representatives has offered or shall offer any gratuity to Uber's employees, agents or representatives with a view toward securing a contract or securing favorable treatment related to the Services contemplated under this Agreement.

4.4      Foreign Corrupt Practices Act. Consultant represents that it is aware that it is illegal under the United States Foreign Corrupt Practices Act ("**FCPA**") to give, offer, promise or authorize giving anything of value to any government official or political party in an effort to win or retain business or secure any improper advantage. Consultant will not take any action that, if done by an American citizen, would be a violation of the FCPA, and Consultant will ensure that any individual that performs work under this Agreement will not take such action.

4.5      Conflict of Interest. Consultant further represents that it currently has no relationship with an employee of Uber that would constitute a conflict of interest and that Consultant shall not engage in any activity during the Term of this Agreement that may present such a conflict of interest.

**CONFIDENTIAL**

**Valor000004**

P-00393.00004

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

**Section 5.**          **CONFIDENTIAL INFORMATION.**

5.1      <u>Definition</u>. "**Confidential Information**" means any information disclosed by Uber to Consultant, whether disclosed verbally, in writing, or by inspection of tangible objects. Confidential Information includes, but is not limited to, all Uber product designs, capabilities, specifications, drawings, program code, mask work designs, models, documentation, components, software (in various stages of development), test and development boards, hardware reference code and platforms, architectures, agreement terms, financial and pricing information, business and marketing plans, actual and potential customers and suppliers, information regarding the skills and compensation of employees of Uber, the Services, Statements of Work, and other similar information that is proprietary to Uber. Confidential Information shall not include any information that: (a) was in Consultant's lawful possession prior to the disclosure, as clearly and convincingly corroborated by written records, and had not been obtained by Consultant either directly or indirectly from Uber; (b) is lawfully disclosed to Consultant by a third party without actual, implied or intended restriction on disclosure through the chain of possession, or (c) is independently developed by Consultant without use of or access to the Confidential Information, as clearly and convincingly corroborated by written records

5.2      <u>Requirements</u>. Consultant agrees that it shall not disclose or use in any way, other than in the course of performance of the Services under this Agreement, Uber's Confidential Information to any third parties. Consultant will disclose Confidential Information only to Consultant's Personnel having a need-to-know for the performance of the Services under this Agreement, provided Consultant shall have entered into confidentiality agreements with any such Personnel having obligations of confidentiality as strict as those herein prior to the disclosure to such Personnel and shall cause all such Personnel to adhere to said confidentiality obligations. Consultant shall not, and shall not authorize others to, remove, overprint or deface any notice of copyright, trademark, logo, legend, or other notices of ownership from any originals or copies of the Confidential Information. Consultant will promptly upon discovery of any loss or unauthorized use or disclosure of Confidential Information notify Uber in writing and take all necessary steps to mitigate the loss or unauthorized use or disclosure of Confidential Information. The foregoing prohibition on disclosure of Confidential Information shall not apply to the extent certain Confidential Information is required to be disclosed by Consultant as a matter of law or by order of a court, provided that Consultant provides Uber with prior written notice of such obligation to disclose and reasonably assists in obtaining a protective order. Upon termination of this Agreement or earlier as requested by Uber, Consultant shall deliver to Uber or, at Uber's election and in accordance with any instructions from Uber, destroy all materials, documents and other media (whether maintained electronically or otherwise) containing Confidential Information, together with all copies thereof in whatever form, and shall certify in writing the completion of such return or destruction, as the case may be.

5.3      <u>Definition</u>. "**Personal Data**" means any information obtained in connection with this Agreement (i) relating to an identified or identifiable natural person; (ii) that can reasonably be used to identify or authenticate an individual, including but not limited to name, contact information, precise location information, persistent identifiers, government-issued identification numbers, passwords, or PINs, financial account numbers and other personal identifiers; and (iii) any information that may otherwise be considered "personal data" or "personal information" under the applicable law.

5.4      <u>No Transfer of Personal Data</u>. Consultant acknowledges that the transfer of Personal Data from Uber to Consultant is not required for the performance of the Services contemplated by this Agreement. If Consultant becomes aware that Personal Data is being transferred from Uber to Consultant, Consultant shall notify Uber immediately in order for Uber to cease such Personal Data transfer to the Consultant and shall destroy any and all materials, documents or other media (whether maintained electronically or otherwise) containing Personal Data, together with all copies thereof in whatever form.

5.5      <u>Data Privacy and Security</u>. Should the transfer of Personal Data from Uber to Consultant become necessary for the performance of the services contemplated by this Agreement, Consultant agrees to implement the legal, administrative, technical, physical and organizational privacy and security measures specified in Exhibit B "Data Processing Agreement."

**CONFIDENTIAL**

**Valor000005**

P-00393.00005

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

**Section 6.        INTELLECTUAL PROPERTY.**

6.1      Uber's Intellectual Property.  Uber owns and shall retain all rights, title and interest in and to its Intellectual Property, and nothing in this Agreement or an SOW shall be deemed to grant any license or rights to the Consultant.

6.2      Work Product.     To the extent the Services involve the development of software, technology, or other intellectual property, Consultant agrees that all work product and Intellectual Property developed by Consultant, Consultant's subcontractors or Consultant's employees (solely or jointly with others) under the scope of this Agreement, including all Deliverables (collectively, the "**Work Product**") are and shall be protected as a "work made for hire" and, as such, shall be and remain the sole and exclusive property of Uber, unless otherwise expressly set forth in an SOW. Except for Retained Rights (defined below), Consultant hereby irrevocably assigns, transfers and conveys to Uber all worldwide right, title and interest in and to the Work Product and all Intellectual Property therein, including the right to sue for past, present and future infringement thereof. Except as set forth below, Consultant retains no rights in the Work Product and agrees not to challenge the validity of Uber's ownership in the Work Product.

6.3      Retained Rights. Consultant retains all right, title and interest in and to Intellectual Property (a) owned, made, conceived or reduced to practice by Consultant prior to the Effective Date of this Agreement or (b) developed by Consultant during the Term of, but outside the scope of, this Agreement (collectively, the "**Retained Rights**"). In the event that Consultant incorporates Retained Rights in any Work Product or that the use of Retained Rights is necessary for the intended use of any Work Product, Consultant hereby grants to Uber, under Consultant's Intellectual Property rights, a perpetual, nonexclusive, paid-up, royalty-free, transferable, irrevocable and worldwide right and license, including the right to sublicense, to use and otherwise exploit in any manner such Retained Rights in connection with the Work Product, including future products, services or business derived therefrom; provided, however, that nothing in this section shall be interpreted to permit Uber the right to use or exploit Retained Rights separate from such Work Product or derivatives thereof.

6.4      Consultant's Waiver of Rights. With respect to any Work Product, if Consultant has or subsequently acquires any rights to the Work Product that cannot be assigned to Uber, including any moral rights, Consultant hereby unconditionally and irrevocably waives any and all rights to assert and enforce such rights against Uber its affiliates and their successors and assigns, employees, agents and customers.

6.5      Assistance. To the extent applicable, during the Term and after, Consultant shall, and shall cause Personnel to, reasonably assist Uber in obtaining registrations for and enforcing Intellectual Property rights relating to the Work Product. To that end, Consultant shall execute, verify and deliver such documents and perform such other acts as Uber may reasonably request for use in registering, applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Intellectual Property rights, and assignments thereof. In addition, Consultant shall execute, verify and deliver all documents reasonably necessary to give effect to the foregoing. Uber will compensate Consultant at a reasonable rate after the termination of this Agreement for the time actually spent by Consultant at Uber's request on such assistance.

**Section 7.        REPRESENTATIONS AND WARRANTIES.** Consultant hereby represents and warrants that: (a) the Services will be performed in a competent and professional manner by Personnel skilled, experienced and fully qualified in the relevant areas of expertise, the Services and Work Product will be performed and delivered consistent with the highest standards of Consultant's profession, business or industry, and the Services and Work Product will meet the specifications in the applicable SOW; (b) the Work Product will be the original work of Consultant, and, except as expressly agreed in an SOW, Consultant will not incorporate in any manner in the Work Product any third party Intellectual Property or materials; (c) the provision of the Services and all Work Product, do not and will not infringe, misappropriate or otherwise violate the Intellectual Property of any third party; (d) the Deliverables are not or will not be subject to any adverse claims, including without limitation, restrictions or to any mortgages, liens, pledges, security interests, encumbrances or encroachments; (e) Consultant has and will continue

**CONFIDENTIAL**

**Valor000006**

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

to have the requisite rights and licenses to fully comply with Section 6 (Intellectual Property) of this Agreement; (f) Consultant has not taken and will not take any action which will have the direct or indirect effect of any Work Product being deemed Publicly Available Software. "**Publicly Available Software**" shall mean any software that requires as a condition of use, modification and/or distribution of such software that such software or other software incorporated into, derived from or distributed with such software (i) be disclosed or distributed in source code form, (ii) be licensed for the purpose of making derivative works, or (iii) be redistributable at no charge; and (g) Consultant shall comply with all applicable state, federal and local laws and regulations in the performance of Services and provision of the Deliverables under this Agreement, and shall notify Uber immediately if Consultant becomes the subject of a government audit or investigation.

**Section 8.        INSURANCE.** Consultant shall carry commercial general liability and automobile liability insurance and, if applicable, worker's compensation insurance as required by law, together with employer's liability insurance coverage and professional errors and omissions liability insurance coverage. Consultant shall furnish a certificate of insurance evidencing the commercial general liability insurance policy limits, including premises liability, completed operations/products, if applicable, and contractual liability, and automobile liability limits not less than One Million Dollars ($1,000,000) combined single limit per occurrence for bodily injury, death and property damage liability and Two Million Dollars ($2,000,000) in the aggregate. Consultant shall also furnish a certificate of insurance evidencing professional errors and omissions liability insurance limits of not less than (i) One Million Dollars ($1,000,000) per claim and (ii) Two Million Dollars ($2,000,000) in the aggregate. All policies shall be written by reputable insurance companies authorized to do business in California and a Best's policyholder rating of not less than A VII and except for the workers compensation and professional liability insurance shall list Uber as an additional insured. Such insurance shall be primary and non-contributing to any insurance maintained or obtained by Uber and all such insurance shall not be cancelled or materially reduced without thirty (30) days prior written notice to Uber. In no event shall the limits of any policy be considered as limiting the liability of Consultant under this Agreement.

**Section 9.        INDEMNITY; LIMITATION OF LIABILITY.**

9.1        Indemnification. Consultant shall fully indemnify, defend and hold harmless Uber, its affiliates, and their officers, directors, employees, agents, successors and assigns ("**Uber Indemnitees**") from and against any and all third party claims, damages, liabilities, losses, and expenses (including any and all reasonable attorney fees, expenses and costs) incurred by or asserted against any Uber Indemnitee of whatever kind or nature due to (a) a breach or alleged breach by Consultant of any obligation, representation or warranty in this Agreement, (b) a claim related to the negligence or willful misconduct of Consultant, its employees, agents, or Personnel. Uber shall promptly notify Consultant of any such claims, suits and actions, and upon request, provide reasonable assistance to Consultant. Consultant shall not enter into any settlement or compromise related thereto that contains an admission on the part of Uber or otherwise negatively impacts Uber in any manner without the prior written consent of Uber.

9.2        LIMITS OF LIABILITY. IN NO EVENT SHALL UBER BE LIABLE FOR ANY CLAIM FOR ANY INDIRECT, WILLFUL, PUNITIVE, INCIDENTAL, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES, FOR LOSS OF BUSINESS PROFITS, OR DAMAGES FOR LOSS OF BUSINESS OF CONSULTANT OR ANY THIRD PARTY ARISING OUT OF THIS AGREEMENT, OR LOSS OR INACCURACY OF DATA OF ANY KIND, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. BECAUSE SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, THE ABOVE LIMITATION MAY NOT APPLY. IN NO EVENT SHALL UBER'S TOTAL CUMULATIVE LIABILITY OF EACH AND EVERY KIND UNDER THIS AGREEMENT EXCEED THE TOTAL AMOUNT PAID TO CONSULTANT FOR SERVICES PERFORMED IN ACCORDANCE WITH THE APPLICABLE SOW. THE FOREGOING LIMITATION OF LIABILITY AND EXCLUSION OF CERTAIN DAMAGES SHALL APPLY REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES.

**Section 10.       TERM AND TERMINATION.**

10.1        Term. This Agreement shall commence on the Effective Date and shall continue for one (1) year from the Effective Date ("**Initial Term**") unless earlier terminated as provided below, provided that, unless otherwise indicated

**CONFIDENTIAL**

**Valor000007**

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

by Uber, SOWs and Purchase Orders still in effect as of the termination of the Agreement shall remain in effect after such termination, subject to the terms and conditions of this Agreement, until the expiration or earlier termination of each such SOW and/or Purchase Order. This Agreement may be extended for successive one (1) year periods upon the mutual written agreement of the parties ("Renewal Term") thirty days prior to the expiration of the Initial Term and any subsequent Renewal Term(s).

10.2    Termination. Uber may at its sole discretion terminate all or any part of this Agreement, an SOW or Purchase Order hereunder at any time. Uber will provide written notice and Consultant shall be entitled to its costs already incurred in the performance of the Services properly performed through the effective date of termination. Any termination claim by Consultant must be submitted within thirty (30) days after the effective date of termination. Uber may also terminate this Agreement immediately at its sole discretion upon written notification to Consultant of Consultant's material breach of any other provision of this Agreement or if Consultant makes an assignment for the benefit of its creditors, is declared insolvent, or has a receiver or trustee in bankruptcy appointed to take charge of all or part of Consultant's property.

10.3    Consequences of Termination. Upon termination of this Agreement, Consultant shall (a) deliver to Uber all Work Product, including work in process, developed under this Agreement up to the date of termination and (b) return or destroy all Uber property and Confidential Information in Consultant's possession, and (c) submit a final invoice to Uber. Outstanding payment obligations and Sections 1, 3-9, 10.3, and 11 of this Agreement shall survive any termination of this Agreement.

**Section 11.    GENERAL.**

11.1    Affiliates.  An SOW issued pursuant to this Agreement may be entered into by Uber or any of its Affiliates (as specifically stated in the applicable SOW and in any such instance, all references to "Uber" in this Agreement and in such SOW shall refer to such Affiliate). Any such SOW will become an independent agreement between Consultant and such Affiliate and Uber Technologies, Inc. (or any of Uber Technologies, Inc's Affiliates) shall have no liability (joint, several or otherwise) under such SOW.

11.2    Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to its choice or conflict of laws provisions. Consultant hereby consents to exclusive jurisdiction and venue in the state and federal courts sitting in San Francisco County, California.  With respect to an SOW where Uber B.V. is the contracting party, this Agreement shall be governed by and construed in accordance with the laws of The Netherlands without regard to its choice or conflict of laws provisions, and Consultant hereby consents to exclusive jurisdiction and venue in The Netherlands. With respect to any other Uber Affiliate contracting under an SOW pursuant to this Agreement, the law and venue shall be as agreed to by such Uber Affiliate and Consultant in the applicable SOW.  If any dispute between the parties arises out of any matter governed by this Agreement, each party will first attempt in good faith to reach a settlement through negotiation by its appointed representative.

11.3    Entire Agreement. This Agreement and the Exhibits attached hereto contain the full and complete understanding and agreement between the parties relating to the subject matter hereof and supersede all prior and contemporary understandings and agreements, whether oral or written, relating such subject matter hereof. Any modification or amendment to this Agreement shall be effective only if in writing and signed by both parties.

11.4    Notice. Any and all notices permitted or required to be given hereunder shall be deemed duly given: (i) upon actual delivery, if delivery is by hand; or (ii) one (1) day after being sent by overnight courier, charges prepaid. Notices to Uber shall be sent to the address first written above, or at such other address for which Uber gives notice hereunder. Notices to Consultant shall be sent to the address first written above, or at such other address for which Consultant gives notice hereunder. The parties may agree in an SOW to provide non-legal notice by email related to such SOW.

**CONFIDENTIAL**

**Valor000008**

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

11.5    Assignment. This Agreement may not be assigned, in whole or in part, by Consultant without the prior written consent of Uber. Uber may freely assign or transfer this Agreement, in whole or in part, to any of its Affiliates and to a successor of all or substantially all of its assets or stock (whether by sale, acquisition, merger, change of control, operation of law or otherwise).  Any attempted assignment or delegation by Consultant without such consent, except as expressly set forth herein, will be void. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of each party hereto and its respective successors and assigns.

11.6    Export. Consultant shall comply with all United States, foreign and local laws and regulations including, without limitation, export control laws and regulations.

11.7    No Publicity.  Consultant will not refer to Uber or use Uber's name and/or logo in the press or for advertising or promotional purposes, or otherwise refer to Uber in any manner with respect to this Agreement, the Services or otherwise, without Uber's prior written consent in its sole discretion.

11.8    Waiver, Modification. The failure of either party to enforce, at any time or for any period of time, the provisions hereof, or the failure of either party to exercise any option herein, shall not be construed as a waiver of such provision or option and shall in no way affect that party's right to enforce such provisions or exercise such option.

11.9    Severability. In the event any provision of this Agreement is determined to be invalid or unenforceable by ruling of an arbitrator or court of competent jurisdiction, the remainder of this Agreement (and each of the remaining terms and conditions contained herein) shall remain in full force and effect.

11.10    Captions. Paragraph titles or captions contained herein are inserted only as a matter of convenience and for reference.

11.11    Drafter. No party will be deemed the drafter of this Agreement, and both parties acknowledge that they had sufficient time to have this Agreement reviewed by counsel and that this Agreement will be deemed to have been jointly prepared by the Parties. If this Agreement is ever construed, whether by a court or arbitrator, such court or arbitrator will not construe this Agreement, or any provision hereof, against any party as drafter.

11.12    Counterparts. This Agreement may be executed in one or more counterparts and by exchange of signed counterparts transmitted by facsimile or other electronic transmission, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same original instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**Uber Technologies, Inc.**                                         **Pennsylvania Coalition Against Rape (PCAR)**

*Andrew Byrne*                                         *Karen Baker*

By                                                                By
Andrew Byrne                                         Karen Baker
Name                                                            Name
Director of Policy                                    CEO
Title                                                             Title

**CONFIDENTIAL**

**Valor000009**

P-00393.00009

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

**EXHIBIT A**

STATEMENT OF WORK

No.

This Statement of Work ("**SOW**") is entered into and made effective as of          (the "**Effective Date**"), by and between Uber Technologies, Inc., a Delaware corporation, located at 1455 Market St., Suite 400, San Francisco, CA 94103 ("**Uber**") and **Pennsylvania Coalition Against Rape (PCAR)**, a Pennsylvania 501(c)(3) organization, whose address is 2101 N Front St, Governor's Plaza North, Building #2, Harrisburg, PA 17110 ("**Consultant**").

This SOW is governed by the terms and conditions of the Master Services Agreement between Uber and Consultant with an Effective Date of April 5, 2019, as amended.

1.      **Term**:

Unless terminated earlier as provided herein, the term of this SOW shall commence on the SOW Effective Date and shall expire on          .

2.      **Description of Services**:

3.      **Specifications**:

4.      **Project Schedule**:

5.      **Deliverables**:

6.      **Acceptance Criteria and Procedures**:

7.      **Location of Performance**:

Services shall be primarily performed at          facilities located at          .

8.      **Project Managers**:

Uber
Name:
Telephone No:
Email:

**CONFIDENTIAL**

**Valor000010**

P-00393.00010

DocuSign Envelope ID: BA73EC3C-DFED-442A-9BB0-080B4ACB1A13

Consultant
Name:
Telephone No:
Email:

9.      **Reporting**:

Consultant shall prepare written reports for Uber on an as requested basis during the course of this SOW. Such reports shall be sent to the Uber Project Manager via facsimile, email, or hardcopy sent to the address in listed in Section 8 of this SOW.

10.     **Fees and Payment Schedule**:

In consideration of Services to be furnished by Consultant, Uber will pay to Consultant the amount of          ("**Fees**") subject to receipt of undisputed invoices and the issuance of a Purchase Order. In no event shall the amount paid to Consultant exceed the Fees stated in this paragraph. Incomplete invoices will not be paid until all requested information has been received by Uber. Unless otherwise expressly stated herein or in the Agreement, Consultant assumes all risks associated with any cost overruns.

Consultant shall obtain approval from Uber prior to incurring travel expenses that Consultant requests be reimbursed. If approved, Uber shall reimburse Consultant for such travel expenses provided that Consultant provide Uber with an itemized description of expenses claimed and receipts for such expenses.

Purchase Order Number:

11.     **Retained Rights and Third Party Materials Disclosure**:

The following is a list of all Retained Rights and third party materials that Consultant intends to incorporate in Work Product in performing under the applicable SOW (or "**N/A**" if none):

Retained Rights: N/A

Third party materials:  N/A

IN WITNESS WHEREOF, the parties have executed this SOW as of the date first above written.

**Uber Technologies, Inc.**                                      **Pennsylvania Coalition Against Rape (PCAR)**

By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____

**CONFIDENTIAL**

**Valor000011**