## UBER_JCCP_MDL_000252011

## Metadata

| | | |
|---|---|---|
| **#Author** | sytske@uber.com | SEMANTIC |
| **#Date Modified** | 04/24/2018 | SEMANTIC |
| **#DateCreated** | 03/20/2017 | SEMANTIC |
| **#Title** | Analyses for sexual misconduct policy | SEMANTIC |
| **Account** | frank@uber.com; | SEMANTIC |
| **All Custodians** | Chang, Frank;Fuldner, Gus;Parker, Kate; | SEMANTIC |
| **All Paths** | Chang, Frank: \EDISCO-25937_frank@uber.com\EDISCO-25937_frank@uber.com_88.zip; Chang, Frank: \EDISCO-25937_frank@uber.com\EDISCO-25937_frank@uber.com_88.zip; Fuldner, Gus: \JCCP-EDISCO-23800_2018yr\JCCP-EDISCO-23800_2018yr_125.zip; Fuldner, Gus: \JCCP-EDISCO-23800_2018yr\JCCP-EDISCO-23800_2018yr_125.zip; Parker, Kate: \JCCP_DRIVE006\JCCP_DRIVE006_45.zip; Parker, Kate: \JCCP_DRIVE006\JCCP_DRIVE006_45.zip | SEMANTIC |
| **Application** | Microsoft 2007 Word Document | SEMANTIC |
| **Attachment Names** | word | SEMANTIC |
| **Begin Family** | UBER_JCCP_MDL_000252011 | SEMANTIC |
| **Collaborators** | mfrangopoulos@uber.com; actuaryzhang@uber.com; frank@uber.com; akankshu@uber.com; gus@uber.com; johnathon@uber.com; rafiq@uber.com; hadi@uber.com; kcorti@uber.com; binnings@uber.com; jzan@uber.com; kateparker@uber.com; sjeon@uber.com; dpurdy@uber.com | SEMANTIC |
| **Confidentiality** | Confidential | SEMANTIC |
| **Date Created** | 03/20/2017 5:49 pm | SEMANTIC |
| **Date Modified** | 04/24/2018 3:54 pm | SEMANTIC |
| **DocID** | 17Z4ROOmkC5rE4xecEKwtboWhos5wglwBD_OIoFK5X6o | SEMANTIC |
| **Document Type** | Electronic File | SEMANTIC |
| **End Family** | UBER_JCCP_MDL_000252011 | SEMANTIC |
| **File Path** | \EDISCO-25937_frank@uber.com\EDISCO-25937_frank@uber.com_88.zip | SEMANTIC |
| **File Size** | 536039 | SEMANTIC |
| **Filename** | Analyses for sexual misconduct policy_17Z4ROOmkC5rE4xecEKwtboWhos5wglwBD_OIoFK5X6o.docx | SEMANTIC |
| **GoogleDocumentType** | DOCUMENT | SEMANTIC |
| **Hash Value** | 50f8fbe827215b02e95d327503cac20e | SEMANTIC |
| **Hidden Content** | Yes; | SEMANTIC |
| **ILS All Bates** | UBER_JCCP_MDL_000252011;UBER_JCCP_MDL_000252011.0001;UBER_JCCP_MDL_000252011.0002;UBER_JCCP_MDL_000252011.0003;UBER_JCCP_MDL_000252011.0004;UBER_JCCP_MDL_000252011.0005;UBER_JCCP_MDL_000252011.0006;UBER_JCCP_MDL_000252011.0007;UBER_JCCP_MDL_000252011.0008;UBER_JCCP_MDL_000252011.0009;UBER_JCCP_MDL_000252011.0010;UBER_JCCP_MDL_000252011.0011;UBER_JCCP_MDL_000252011.0012;UBER_JCCP_MDL_000252011.0013;UBER_JCCP_MDL_000252011.0014;UBER_JCCP_MDL_000252011.0015;UBER_JCCP_MDL_000252011.0016;UBER_JCCP_MDL_000252011.0017;UBER_JCCP_MDL_000252011.0018;UBER_JCCP_MDL_000252011.0019;UBER_JCCP_MDL_000252011.0020;UBER_JCCP_MDL_000252011.0021;UBER_JCCP_MDL_000252011.0022;UBER_JCCP_MDL_000252011.0023;UBER_JCCP_MDL_000252011.0024;UBER_JCCP_MDL_000252011.0025;UBER_JCCP_MDL_000252011.0026;UBER_JCCP_MDL_000252011.0027;UBER_JCCP_MDL_000252011.0028;UBER_JCCP_MDL_000252011.0029;UBER_JCCP_MDL_000252011.0030;UBER_JCCP_MDL_000252011.0031 | SEMANTIC |
| **ILS Document Date** | 04/24/2018 | SEMANTIC |
| **ILS Prod Date** | 1/2/2025 | SEMANTIC |
| **ILS Prod Vol** | JCCP_MDL055 | SEMANTIC |
| **LINKSOURCEBEGBATES** | UBER_JCCP_MDL_000266435; UBER_JCCP_MDL_000966106; UBER_JCCP_MDL_001161384; UBER_JCCP_MDL_001574262; UBER_JCCP_MDL_001574310; UBER_JCCP_MDL_001574311; UBER_JCCP_MDL_001574313; UBER_JCCP_MDL_001574315; UBER_JCCP_MDL_001574356; UBER_JCCP_MDL_001574421; UBER_JCCP_MDL_001574610; UBER_JCCP_MDL_001708050; UBER_JCCP_MDL_002406825; UBER_JCCP_MDL_004614562 | SEMANTIC |
| **Other Custodians** | Fuldner, Gus;Parker, Kate;Chang, Frank; | SEMANTIC |
| **Primary Date** | 03/20/2017 5:49 pm | DOC_TYPE_ALIAS |
| **Production Volume** | JCCP_MDL001;JCCP_MDL055; | SEMANTIC |
| **Redacted** | Yes | SEMANTIC |
| **Sort Date** | 04/24/2018 3:54 pm | SEMANTIC |


Trial Exhibit No.
P-00753

| **SourceHash** | 6afcd6e0c473ca503cb6e5cbf2c4085a | SEMANTIC |

A/C PRIVILEGED - Prepared at the direction of counsel

## Analyses for sexual misconduct policy

Sytske Besemer
Criminal Justice Researcher, Trust and Safety Research Team
June 2017

**Summary / overview**

I carried out several analyses to inform the new sexual misconduct policy.
1) I analyzed the current categorization and used this to propose an updated categorization.
2) I carried out qualitative analyses including analyzing drivers with many sexual misconduct tickets, drivers with L4 sexual misconduct tickets and visiting the Center Of Excellence in Phoenix, AZ and shadowing and interviewing IRT agents working on these tickets.
3) I analyzed sexual misconduct in a quantitative manner by investigating whether certain variables such as ratings, cancellation and driving patterns, other sexual misconduct incidents and other safety incidents identify drivers involved in higher level or many sexual misconduct incidents.
4) I analyzed whether there is a relationship between the number of sexual misconduct incidents and the number of trips a driver has made.

The proposed new categorization can be found here.

Summarized, we propose/highlight the following:

- Community guidelines should be highlighted in the signup process and everyone should check a box to acknowledge that they have read and understood these (digital signature at the bottom) before they can move forward.

- We should always reach out to the reported offender to hear their side of the story and to let them know what behavior is unacceptable and what are consequences of future behavior. If a phone call is too expensive, we should find another way in which we make sure that our message has reached them, for example by implementing a button that needs to be clicked to say they acknowledged it.

- I think it would be helpful to have a specific support team available for sexual misconduct incidents only, including the lower level ones, especially because the consequences of having three of such tickets are huge for drivers (deactivation). That way, the chances that the same agents will work on the same incidents also increases which is good for quality (more efficient than having three or four different agents having to read the full history each time).

- Current saved replies need to be updated and feel less robotic, what is the update here?

> **Commented [1]:** +karna@uber.com if you have an update, please edit here. Thanks!
> _Assigned to Deleted user_

- Riders and drivers often don't know that phone numbers are anonymized, so they are afraid that drivers can reach them (i.e. 'I felt like I couldn't lie about my number as he had my number'). Can we increase our communications about phone anonymization, so both driver partners and riders feel safer when using the platform *and* safer to report incidents?

1

**A/C PRIVILEGED - Prepared at the direction of counsel**

- Driver partners often don't feel supported when they feel unsafe. Can we support drivers more? I have been focusing on a policy for sexual misconduct by drivers, not by riders. However, I feel that both are equally important. Driver partners are key to Uber's business, but if they feel unsafe (especially women drivers) and unsupported, they get the impression that we do not value them enough.

The quantitative analyses show that:

- inappropriate comments is the largest category of sexual misconduct

- the majority of drivers have only one sexual misconduct ticket (92% of those with an L4 incident, 82% of those with an L3 incident, 90% of those with an L1L2 incident). Previous tickets are not good predictors of future predictors.

- We don't see a relationship between the number of trips and the number of sexual misconduct incidents. We propose a lifetime lookback period for sexual misconduct.

- We also analyzed whether there might be other predictors of the level and number sexual misconduct incidents, looking at ratings, tenure of drivers, driving patterns, cancellations, other non-sexual misconduct safety incidents.
- The percentage of one star ratings is the only meaningful correlate of the total number of sexual misconduct tickets a driver has.
- The percentage of trips taken on weekend nights and cancellation rate are the only variables related to a higher level (L3L4) incident versus a lower level sexual misconduct incident.

> **Commented [2]:** Wayne has done some modeling on IPC, which shows decent lift on SML claims (limited to claims which we report to our insurer).

> **Commented [3]:** Thanks Frank! I chatted with +actuaryzhang@uber.com and he said he had not looked at sexual misconduct by itself yet, if I remember correctly. For the second phase of the policy revamp we will sit down together to look at these behaviors. I also asked for his input below:
> https://docs.google.com/document/d/17Z4ROOmkC5rE4xecEKwtboWhos5wglwBD_OIoFK5X6o/edit#heading=h.3ra09t6nezq7

In phase 2 of the SM policy work we want to refine analyses predicting those drivers who might be involved in a second sexual misconduct incident. We will use the information from the multivariate regression analyses. Other preliminary analyses show that it might be relevant to look at the following:

- Analyses also indicate that other non-sexual misconduct behaviors might be related to the number of sexual misconduct behaviors, such as verbal altercations, discriminatory comments, and drug/alcohol use are related to sexual misconduct.

**Overview of Document and analyses:**

I) Reevaluate the Categories and definitions for sexual misconduct
II) Qualitative analyses
   a) Analyzing drivers with many sexual misconduct incidents and analyzing drivers with serious (L4) sexual misconduct incidents
   b) Visiting Center of Excellence in Phoenix, shadowing IRT agents
III) Quantitative analyses
   a) Analyzing identifiers of drivers with sexual misconduct
   b) Analyzing related but non-sexual misconduct behaviors
IV) Lookback period: No correlation between total number of trips and number of sexual misconduct incidents

2

**A/C PRIVILEGED - Prepared at the direction of counsel**

3

CONFIDENTIAL

P-00753.00005

UBER_JCCP_MDL_000252011.0002

A/C PRIVILEGED - Prepared at the direction of counsel

## Reevaluate the Categories and definitions back to top

Currently (April-June 2017), the following policy exists for IRT agents where there are four basic categories of sexual misconduct (here is an archived copy). This is the policy that we want to redesign. Below is a summary of the categories. The first four columns display the current support logic including the Bliss contact type. The last two columns on the right map the new taxonomy to the existing Urgent Support Logic.

| Current Urgent Support Logic | | | | | New IRT taxonomy | |
|---|---|---|---|---|---|---|
| Main categories | Identification / description | Bliss contact type | Level | Cat | Subcategory | |
| Sexually Inappropriate Remarks or Conversation | Inappropriate sexual comments include commenting on appearance, asking overly personal questions, and making unwanted advances towards another user. If any physical contact is made between parties, the issue should be treated as assault and routed to IRT: Urgent > Sexual Assault. | *IRT: Incidents > Inappropriate sexual comment - no physical contact* | 2 | SM | Inappropriate Remarks | |
| | | | | SM | Staring / Leering | |
| Explicit Behavior | Explicit conversation is graphic in nature and makes people uncomfortable. This includes talking about sex acts, soliciting sex, etc. Explicit behavior includes displaying pornographic material and consensual rider-on-rider sex acts. | *IRT: Incidents > Inappropriate sexual comment - no physical contact* | 2 | SM | Offer or Solicitation of Sex, Prostitution, Sexual Information | |
| | | | | SM | Consensual Sex Acts - Not Involving Driver | |
| | | | | SM | Consensual Sex Acts - Involving Driver | |
| Indecent Exposure | Indecent exposure refers to the criminal activity of intentionally showing one's sexual organs in public or the act of outraging public decency by being naked in a public place. This includes any report of a user masturbating in the vehicle. | *Other > IRT: Urgent > Sexual Assault* | URGENT | SA | Masturbation / Lewd Conduct | |
| Sexual Assault | NOTE: Before selecting this contact type please check the sexual misconduct definition. This contact is often selected in error. -> Forced sexual intercourse An attempted rape that includes physical contact Unwanted sexual contact between victim and offender (grabbing or fondling) Verbal threats of rape or sexual assault References to sexual intercourse with a minor. | *Other > IRT: Urgent > Sexual Assault* | URGENT | SA | Non-consensual Intercourse | |

4

A/C PRIVILEGED - Prepared at the direction of counsel

| | | | | SA | Threat of Sexual Assault |
|---|---|---|---|---|---|
| | | | | SA | Non-consensual Touching |

To summarize here, In Bliss we have the following (current, ignoring 'deleted') contact types related to sexual misconduct:

| Inappropriate sexual comment - no physical contact | Staring or leering |
|---|---|
| Inappropriate sexual comment - no physical contact | Inappropriate comment |
| Sexual Assault | |

## Practical implementation of categories - auditing a sample of tickets

We started with the categories in the proposed taxonomy - a condensed version of the taxonomy proposed by the research team in 2016. We evaluated whether these are appropriate and useful from a research as well as IRT perspective:

We (Sytske, Karna and Rafiq) first audited a sample of tickets to see whether the proposed categories are useful from an IRT perspective: are we able to categorize the reports coming in? If not, what are we missing? Below is a summary of our observations:

- **Inappropriate remarks** is a very broad category and the most commonly used for sexual misconduct in Bliss. We think it should be split it in more specific subcategories. For example, the following behaviors are different regarding seriousness of sexual misconduct:
  a) asking personal questions
  b) commenting on appearance
  c) flirting
  d) asking me out / soliciting more contact
  Related to this, many reports are quite non-specific, for example "Asking too many personal question. It was quite long drive so uncomfortable." "Made me feel uncomfortable by asking personal questions and commenting on my appearance" or "I want a full refund. My driver was asking me questions that made me feel uncomfortable".

- **Asking personal questions** does not necessarily have to be sexual misconduct and in these cases should not be classified sexual misconduct. For example: "The fellow on this trip put me through an inquisition, too. I tried cutting it short and making stuff up.... can I just, like, kick people out if they put me through an inquisition? Are Riders allowed to question me incessantly about where I grew up an what I do and did for a living?"

**Commented [4]:** If this is the case, why do we have a policy (0.5 pts) on this? Should we not have 0 for unsupported?

**Commented [5]:** there are still examples of personal questions that are classified as minor sexual misconduct, for example "Do you have a boyfriend?" "Are you married?" "How many drinks did you have tonight?" "The driver kept asking me personal question and was creepy"'

**Commented [6]:** Upon adjudication, if there is no support for sexual misconduct...

**Commented [7]:** No support is not evidence that it did not happen. If there is evidence that a report is false, we will not count such false reports. We often don't know whether it happens, but we still want to take unsupported reports into account, without deactivating someone very quickly. This is why the score is very low. If someone only has reports for asking personal questions, they need 6 reports of this nature before they would be deactivated. However, I look forward to analyzing whether these reports are related to later more serious sexual misconduct and if we don't see any relationship at all, we could consider changing the score. At the moment, however, we have no data to analyze this, as personal questions was always grouped under 'inappropriate comments'.

5

A/C PRIVILEGED - Prepared at the direction of counsel

- Where should we classify **sexual harassment**? For example: "... uber driver was being inappropriate verbally about sexually and it highly made my husband feel uncomfortable and then he locked the doors joking saying oh I can't let you out boss man....that is sexual harassment !" Inappropriate remarks might not convey the seriousness of the situation, but sexual assault is too severe for this situation.

- **Indecent Exposure** currently seems to include:
  1. Inappropriate dressing ( Inappropriate attire ( guys without shirt, girls in a bikini' need to be clearly defined )
  2. "Inappropriate exposure of Private parts"
  3. Masturbation
  The Urgent Support Logic definition is: "Indecent exposure refers to the criminal activity of intentionally showing one's sexual organs in public or the act of outraging public decency by being naked in a public place. This includes any report of a user masturbating in the vehicle." Clearly, reports of someone inappropriately dressed should not fall under indecent exposure.

- **Sexual Assault** is also a rather broad category. Following the new taxonomy, it would be good to have these subcategories:
  1. Non-consensual Intercourse
  2. Threat of Sexual Assault / Sexual Harassment
  3. Non-consensual Touching
  Non-consensual touching should then be split up in two subcategories:
  a. Physical touching, e.g. "He touched my shoulder,my hand, my leg"
  b. Forcible sexual touching, e.g. "He kissed me or grabbed me"
  Touching should not automatically lead to deactivation, while forcible kissing / grabbing, attempted rape and rape / intercourse should lead to deactivation.

- **Consensual Sexual Intercourse** - Drivers often write in about Riders indulging in sexual acts with co-riders. In the proposed IRT categories, we have two categories for 'consensual' sexual acts and they are classified under L1L2 sexual misconduct - no physical contact:
  Consensual Sex Acts - Not Involving Driver
  Consensual Sex Acts - Involving Driver
  If drivers are involved in sexual acts, we should categorize this as urgent and not classify as 'consensual'. If someone reports this issue, they were upset, otherwise there is no reason to write in. So I would almost suggest to remove the second category  - or at least let the consequence be that drivers are deactivated if they were involved in sexual acts.

- **Urinating** is often categorized as indecent exposure. However, this is not necessarily sexual misconduct and should be classified separately. There are also two options:
  a. Rider/Driver urinating in the car

6

**A/C PRIVILEGED - Prepared at the direction of counsel**

    b.  Driver/Rider urinating after stopping the car and going behind the car/tree

- Often riders report **multiple issue types** in one incident (i.e. inappropriate remarks, staring/leering, quality of vehicle, etc.). We should have clear guidelines on how IRT agents should categorize such incidents, which should include a list of most severe to least severe.

- Many behaviors are categorized as sexual misconduct, even though they are not explicitly sexual misconduct. Some examples: "he was rude and very offensive", "He told us that he didn't have till money and would only take us if we went around the toll. He then asked us how much we won at the casino and made a call to someone during the ride. It was unsettling/scary." These should not be categorized as sexual misconduct, but instead as: Rider >> Trips >> Feedback about Driver >> Professionalism >> Rude Driver or Disagreement with Driver.

We audited the following categories in our analysis:

| | | |
|---|---:|---:|
| **Discriminatory Comments - Sexist** | 7 | 2.3% |
| **Need more Information** | 26 | 8.5% |
| **Not Sexual Misconduct** | 47 | 15.4% |
| **Others** | 7 | 2.3% |
| **SEXUAL ASSAULT - Masturbation / Lewd Conduct** | 2 | 0.7% |
| **SEXUAL ASSAULT - Non-consensual Intercourse** | 3 | 1.0% |
| **SEXUAL ASSAULT - Non-consensual Touching** | 24 | 7.9% |
| **SEXUAL ASSAULT - Threat of Sexual Assault** | 2 | 0.7% |
| **SEXUAL MISCONDUCT - Consensual Sex Acts - Not Involving Driver** | 7 | 2.3% |
| **SEXUAL MISCONDUCT - Explicit Gesture** | 4 | 1.3% |
| **SEXUAL MISCONDUCT - Inappropriate Remarks** | 146 | 47.9% |
| **SEXUAL MISCONDUCT - Offer or Solicitation of Sex, Prostitution, Sexual Information** | 15 | 4.9% |
| **SEXUAL MISCONDUCT - Staring / Leering** | 15 | 4.9% |
| **Grand Total** | 305 | 100.0% |

7

A/C PRIVILEGED - Prepared at the direction of counsel

**Theoretical discussion**
We also discussed whether these categories make sense from a theoretical standpoint. We suggest to include in the new categorization:

- *Intent for non-consensual touching*: what about the situation where someone might be big and unintentionally touches a rider (no bad intent) - we do not want to classify this as level 3 sexual assault.

- *Conclusiveness*: ideally we would be able to distinguish between 1) conclusive (incident type happened), 2) inconclusive (unclear whether it happened) or 3) false accusation (incident type did not happen). This is not only important for research purposes, but also for IRT purposes. If someone was falsely accused, this shouldn't 'show up' on their record and shouldn't count as a strike.

The Strike team also worked on recategorization of sexual misconduct incidents (Bliss) at the same time (RFC). They conducted an audit of 239 Bliss and 100 Jira tickets and suggest the following 'subcategories' in Bliss for L1L2 incidents:

| Type | Category | # of Tickets | % of Total |
|------|----------|-------------:|-----------:|
| Non-Explicit | Staring | 13 | 5.4% |
| Non-Explicit | Staring with comment | 4 | 1.7% |
| Non-Explicit | Uncomfortable Conversation | 49 | 20.5% |
| Non-Explicit | Personal Questions | 38 | 15.9% |
| Non-Explicit | Comment On Appearance | 11 | 4.6% |
| Non-Explicit | Asking for number or date | 24 | 10.0% |
| Non-Explicit | Creepy Behavior | 4 | 1.7% |
| Non-Explicit | Flirting | 18 | 7.5% |
| | | | |
| Explicit | Soliciting Sex | 21 | 8.8% |
| Explicit | Masturbating | 13 | 5.4% |
| Explicit | Sex in car | 4 | 1.7% |
| Explicit | Explicit Conversation | 17 | 7.1% |
| | | | |
| Other | Insult | 4 | 1.7% |
| Other | Using bathroom | 19 | 7.9% |

**Commented [8]:** The Explicit types seem more serious than L1L2...

**Commented [9]:** In particular, Masturbating is an L3, the others could be L3 (e.g. if Explicit Conversation becomes a Threat of Assault)

**Commented [10]:** This is the strike team's work.

For L3L4 incidents, they distinguish between:
- Touching
- Sexual (kissing groping etc.)
- Intercourse

8

A/C PRIVILEGED - Prepared at the direction of counsel

Comparing both approaches:

- Their work aligns with our observation that the most prevalent Bliss contact type is **'inappropriate comments'** and that this contact type is too broad. It is vital for reporting as well as research purposed that we split the category 'inappropriate comments' into subcategories, where some subcategories will get a more serious first warning than others: Asking for number or date is more serious than Personal Questions. The latter can be due to a difference in interpretation as to what is appropriate.

- Insults and urinating (is often outside the car) should indeed not be included in sexual misconduct, but should be rerouted to *Cleaning Fees* or *Professionalism*

**Proposed new categorization of sexual misconduct**

Summary, moving forward with the recategorization based on the new taxonomy, I propose:

- Four subcategories within **inappropriate comments**:
  a) asking personal questions
  REDACTED - PRIVILEGED
  c) flirting
  d) asking me out / soliciting more contact

- Masturbation / Lewd Conduct should be renamed to Masturbation / Inappropriate exposure of Private parts to make clear this category also includes indecent exposure of private parts / sexual organs.

- Remove **Consensual Sex Acts - Not Involving Driver**. If someone reports this behavior, it cannot have been consensual. Moreover, we don't allow any sexual behavior on the platform. All sexual intercourse involving a driver should be classified under the main category '**Non-consensual Intercourse**' and we should specifically indicate that this includes any sexual acts involving driver, regardless of whether it was 'consensual'. This will remove any confusion for IRT agents and all incidents of intercourse with a driver involved can be classified under the same category.

- **Threat of Sexual Assault** should also include Sexual Harassment.

- Two subcategories for **Non-consensual Touching**:
  a) Physical touching, e.g. "He touched my shoulder,my hand, my leg"
  b) Forcible sexual touching, e.g. "He kissed me or grabbed me"
  Plus, the investigation should include finding out the intent behind the touching; if someone touched by accident (for example because they are big), this should not count as a strike for sexual misconduct.
- Moreover, there are several behaviors which are often classified as sexual misconduct, which should not be classified as sexual misconduct, but as the contact type described below:

**Commented [11]:** Suggest a sub-category here on
REDACTED - PRIVILEGED

**Commented [12]:** REDACTED - PRIVILEGED
REDACTED - PRIVILEGED

**Commented [13]:** REDACTED - PRIVILEGED
REDACTED - PRIVILEGED

9

A/C PRIVILEGED - Prepared at the direction of counsel

- Rude behavior: Feedback about Driver >> Professionalism >> Rude Driver or Disagreement with Driver
- Sexist discriminatory comments: Discriminatory Comments > Sexism
- Contacting by phone after trip: IRT: Incident>>Inappropriate Contact After Trip>>Calls or Messages
- Stalking in Person: IRT:Urgent >> Stalking
- Urinating: Rider >> Trips >> Feedback about Driver >> Professionalism
- Inappropriate dressing: Rider >> Trips >> Feedback about Driver >> Professionalism

This should also be clearly indicated for IRT agents, so that they classify these behaviors as above and not as sexual misconduct.

**REDACTED - PRIVILEGED**

**REDACTED - PRIVILEGED** Although, in an ideal situation, we would like to know whether an incident really happened in the way the reporter describes, in the majority of cases we will not be able to know. A small proportion of tickets will be false, but the majority will be inconclusive and this is the reality that we will have to base decisions on.

- We should create a ranking of severity of these categories, because incidents often describe behaviors that would fit in several categories. IRT agents should then choose the highest (most severe) category.

The full overview of sexual misconduct categories is visible here:

| Ancestor_1 | Ancestor_2 | Ancestor_3 | Ancestor_4 | Ancestor_5 |
|---|---|---|---|---|
| | | | | asking personal questions |
| | | | | commenting on appearance |
| | | | | flirting |
| | | | Non-explicit Inappropriate Remark | asking out / soliciting more contact |
| | IRT: Incident L1/L2 | Sexual Misconduct | Staring or Leering | |
| | | | Explicit Inappropriate Remark | |
| | | | Masturbation/Indecent exposure of private parts | |
| | | | Threat of Sexual Assault | |
| | | | | Physical Touching |
| Rider/ Driver/ Other | | | Reported Sexual Touching | Forced Sexual Touching |
| | IRT: Urgent | Sexual Assault* | Reported Sexual Intercourse | |

Commented [14]: Please see charts in p.16 below.

Commented [15]: +mfsanopoulos@uber.com **REDACTED - PRIVILEGED**

**REDACTED - PRIVILEGED**

Commented [16]: **REDACTED - PRIVILEGED**

**REDACTED - PRIVILEGED**

Commented [17]: (also fyi +hrothenberg@uber.com)

**REDACTED - PRIVILEGED**

10

**A/C PRIVILEGED - Prepared at the direction of counsel**

I also propose to evaluate the usefulness of these categories in the evaluation of the policy.

11

A/C PRIVILEGED - Prepared at the direction of counsel

## Qualitative Analyses into Sexual Misconduct back to top

**Qualitative approach: analyzing drivers with many sexual misconduct incidents and analyzing drivers with serious (L4) sexual misconduct incidents**

Some drivers have a large number of sexual misconduct tickets. I analyzed their behavior patterns in a qualitative way by reading their tickets.

From my reading of the more severe sexual misconduct incidents (non-consensual intercourse), situational factors play a tremendous role in these events happening. The typical scenario for a non-consensual intercourse incident is where a male driver picks up an intoxicated female rider. The female rider might actually make sexual advances towards the driver. Regardless of whether she seemed to want sexual intercourse, this behavior is not acceptable on the Uber platform: sexual intercourse is not allowed in any case and we disapprove of 'taking advantage' of the fact that the female rider is intoxicated. However, I do want to point out that the majority of these drivers would most likely not have engaged in sexual misconduct had they not been in this specific situation with this 'opportunity' for sexual misconduct. Routine Activity Theory hypothesizes that crime will take place under three necessary conditions: a motivated offender, a suitable target and the absence of a capable guardian, coming together in time and space. *This is important to keep in mind when we consider the literature on sexual offending, because sexual offending is a serious form of criminal behavior and I am not convinced that the drivers involved in incidents described above are similar to most serious sex offenders.*

> **Commented [18]:** This would suggest we should be acting on the situational factors rather than driver previous ticket history?

**Qualitative approach: visiting Center of Excellence in Phoenix, shadowing IRT agents back to top**

On May 11 and 12, 2017, I shadowed several Incidence Response Team agents working on sexual misconduct incidents in the COE in Phoenix, AZ. I observed the process of them handling and investigating these issues, talking to riders and driver partners on the phone. Moreover, I talked with them about the current policy / urgent support logic for sexual misconduct and their experience in working on these issues. This visit was incredibly meaningful: IRT agents work on these incidents every day and are very familiar with challenges related to sexual misconduct. Below I describe some conclusions from my visit.

### Categorization
- The current category for inappropriate comments is too broad: there is a vast difference between someone asking whether you have kids / partner versus someone asking you out for a date. Perhaps 'overly personal questions' should be a category of its own - it is not necessarily inappropriate in a sexual / rude way.

> **Commented [19]:** We created and pushed for this Bliss and JIRA ticket type based on earlier research as well as the indication (from yourself, Rafiq, Johnathon, and others) that this was necessary for further study in SML.

### Urgent Support Logic
### Outreach: Phone call to accused party (driver partner)
- Often there is no phone call to the driver after a riders files a report for inappropriate comments. The current Urgent Support Logic only says to call the accused party with a third report, not with a first or second report. The problem with this is that we never hear their side of the story, which means we completely rely on the reporter's side of the

> **Commented [20]:** If this is vague it is running counter to my effort to reduce vagueness and confusion in JIRA and would undermine my credibility to continuing to push for further improvements in JIRA....

> **Commented [21]:** This is about the old category, not the improved ones.

12

**A/C PRIVILEGED - Prepared at the direction of counsel**

story. Moreover, we want to communicate to the driver that the reported behavior is not accepted (regardless of whether they did it or not, we can still communicate that the reported behavior is inappropriate). I propose to make a phone call to the accused party mandatory as part of the urgent support logic. Then we should have the accused party watch the video about inappropriate comments (see the storyboard here) and have them acknowledge that they watched this (after 1st report) before they can go back online. This way we know we have communicated our message clearly. I have had feedback from Michael O'Herlihy that making a phone call after each sexual misconduct ticket is too expensive, as a ticket involving a phone call costs $40, while a ticket without a phone call costs $4 If it is not possible to make phone calls to each party, we should design another way in which we can make sure that our message reached the involved drivers, for example by having them click an 'acknowledge' button before they can access the app again.

> **Commented [22]:** I'm fairly certain that, even if there is not a phone call, there should be outreach (i.e. messaging, email).

> **Commented [23]:** I know that this is too expensive, as a phone call costs $40 per ticket, but I still think we should reach out to drivers in an appropriate manner after the first and second report, not just the third.

> **Commented [24]:** compromise: send the video on first ticket, perhaps experiment on forced acknowledgement on the video, save the phone call. I believe phone calls are standard for the Urgent ticket types (L3/L4)

- The Urgent Support Logic consists of several steps. Is completion of a step necessary to continue to the following step? For example, what if the reporting party doesn't pick up the phone which is step a/b/c), should we continue with refunding (step d)? See below for the current steps for 'Sexually Inappropriate Remarks or Conversation'

   **First or Second Report**

   1. Call and interview the reporting party
      a. If the reporting party is a Teen Account, **do not** make contact by phone and only respond in Bliss
      b. If calling with LiveOps, copy and paste the LiveOps URL in an internal note in Bliss
      c. If calling with Dialpad, upload the Dialpad recording to the JIRA case
      d. Full refunds are standard practice if the rider is the reporting party
   2. Notify the suspected offender via Bliss outbound message
   3. If the reporting party and suspected offender were paired as rider and driver, block future pairing

   I think it is vital to first speak to the reporting party, but this also creates issues when the reporting party doesn't pick up the phone. Do we wait with intervening actions (such as waitlisting a driver partner) until they pick up the phone?

> **Commented [25]:** Would love to get others' input here.

**Determining conclusiveness is essential - flag riders who file fake reports**

- There are a lot of people trying to cheat Uber by filing a fake report. There are even websites encouraging people to file a complaint to get a refund (e.g. see #5 here). I propose that we should not immediately refund someone's money. If something bad really happened, they generally don't care about the money, they want to be safe and want others to be safe and when we say we refunded the money they respond something like 'I don't care about the refund, I want to be safe'. They certainly don't say 'I WANT A REFUND'. Often it will be relatively easy to see whether a rider files a fake report - and such riders should be flagged and they should be told that them filing a fake report can have immense consequences for innocent drivers (although this of course will be difficult as we can't really say that they're faking this, this is too sensitive) (see an example of such a report here).

   Moreover, we should flag the report when it is inconclusive (it should be visible in the Bliss/Jira title in Safety Lens) as we should count conclusive reports fully in our counts of three strikes, but might decide that one needs two inconclusive reports count similar to one conclusive report. If it is not immediately visible from the title, IRT agents will count an inconclusive report as a 'full' strike when determining how many previous

13

A/C PRIVILEGED - Prepared at the direction of counsel

incidents someone has had. They might go and read the full story, but more often they will just see the title in Safety Lens and include it as a count. If we know that the report is false (so stronger than inconclusive), it should not show up in their safety lens history.

**Handling of sexual misconduct incidents**

- I think it would be helpful to have a specific support team available for sexual misconduct incidents only, including the lower level ones, especially because the consequences of having three of such tickets are huge for drivers (deactivation). That way, the chances that the same agents will work on the same incidents also increases which is good for quality (more efficient than having three or four different agents having to read the full history each time).

> **Commented [26]:** +karna@uber.com , can you explain what has been done for dangerous driving (excluding incidents where riders have been flagged as 'fraudulent' because of high appeasements and high refunds) and think about how we could implement something similar for sexual misconduct?
> _Assigned to Deleted user_

> **Commented [27]:** We have this on agenda.. we are discussing how to incorporate that in our process...

- Reporting parties (driver partners as well as riders) often feel they are not being listened to, because they get responses based on a template. This feel impersonal to them and they feel as if a robot is responding, not a person. IRT agents also struggle with this; they want to make sure partners are being heard and want to be personal, but they also have to comply with legal requirements. I think these highly formatted responses are fine for issues with for example payments, but more problematic when someone has experienced a safety incident, especially sexual misconduct. This is probably not immediately relevant for our policy / urgent support logic, but something we might want to discuss with Michael and Roger, as it impacts the customer experience tremendously?

> **Commented [28]:** +karna@uber.com in the meeting Thursday, can you check in what the status is for the saved replies? I know they were working on this. Would be good to be able to link to their changes/recommendations.
> _Assigned to Deleted user_

**Focus on drivers**

- Driver partners often don't feel supported when they feel unsafe. Can we support drivers more? I have been focusing on a policy for sexual misconduct by drivers, not by riders. However, I feel that both are equally important. Driver partners are key to Uber's business, but if they feel unsafe (especially women drivers) and unsupported, they get the impression that we do not value them enough.

**Other thoughts**

> **Commented [29]:** Perhaps this does not have to be in this document, but I wanted to share this with our team anyway. Happy to remove it later!

- I found it very insightful to 'follow' some cases, it made me realize what kind of situations Uber creates that might be opportunities for sexual misconduct: anyone can come drive on the platform. Yes we do background screening, but that really doesn't mean we can screen out all drivers that show this kind of behavior. This is an inherent risk we will have to live with, but we should try all we can to still prevent this behavior as much as we can.

- In the signup process, important things such as the community guidelines should be highlighted, and driver partners (as well as riders?) should check a box to acknowledge that they have read and understood these (digital signature at the bottom). Now drivers don't really pay attention and also don't know what is expected of them.

- Riders often don't know that phone numbers are anonymized, so they are afraid that drivers can reach them (i.e. 'I felt like I couldn't lie about my number as he had my number'). Can we increase our communications about phone anonymization, so both driver partners and riders feel safer when using the platform *and* safer to report incidents?

14

**A/C PRIVILEGED - Prepared at the direction of counsel**

- Coming back to riders who often file reports that might not be genuine, what do we do with them? Some riders seem to really abuse the system and when they do, they are recognizable: their ratio of appeasements per total trips is high and their reports are often very similar. This is not necessarily part of the policy on sexual misconduct, but I do think it would be valuable to design policy on what to do with these people. IRT agents are very aware of these people and it is frustrating to them to see people abusing the system so much (and it must cost Uber a lot of money).

15

A/C PRIVILEGED - Prepared at the direction of counsel

## Quantitative Analyses into Sexual Misconduct [back to top]

### Research Design and sampling

_Question:_ What features distinguish driver partners with many or serious sexual misconduct ticket from those who don't have sexual misconduct tickets?

_Significance:_ The first aim for these analyses is to help develop a new strike policy for those driver partners that are involved in sexual misconduct incidents.
If there exist features that distinguish driver partners with sexual misconduct incidents from those who are not involved in such incidents, these features could be used to improve predictions about each user's likelihood of causing a business critical safety incident in the future. This intelligence could also enable us to stop them from doing so using a variety of preventative interventions -- including safety messaging/nudging, warnings, and in the worst cases, suspension/de-activation.

To identify correlates to sexual misconduct safety incidents, I collect data on a sample of 63,902 driver-partners in the USA and Canada. Because sexual misconduct incidents are rare, the sampling procedure involved sampling all users that have been involved in a sexual misconduct safety incident on the Uber platform (between Jan 1, 2016 and March 31, 2017) and under-sampling users that have not. All analyses (and links to SQL queries to pull the data) can be found in this R script file, which I later split in an Analyses script file and Descriptives script file. This was done by drawing:

- All driver partners involved in 4,853 sexual misconduct tickets in the USA and Canada (queried from Jira from Jan 1, 2016 to March 31, 2017)
- All driver partners involved in 47,120 non sexual misconduct safety incidents tickets (from Jan 1, 2016 to March, 2017)
- All driver partners involved in 21,622 sexual misconducts L1/L2 tickets as registered in Bliss in the USA and Canada (from Aug 1, 2016 to Feb 28, 2017)

This process generated a sample that consists of 22,027 driver partners involved in 25,540 sexual misconduct incidents and 41,875 driver partners involved in 47,764 non-sexual misconduct incidents.

### Descriptive results

First, I will provide descriptive details about the sexual misconduct ticket data. I have combined L1 and L2 incidents, because sexual misconduct incidents coming from BLISS are L1L2 without a distinction between L1 or L2. Below is a graph to show the proportion of different types of contact types. Most of these are 'inappropriate comment'. I have included Discriminatory Comments - sexism and sexual orientation, because these might be related to gender inequality and I want to see whether they might be precursors of more serious sexual misconduct.

**Commented [30]:** Please explain this choice of selection. This imbalances all the statistics from this point onward...

**Commented [31]:** We want to include all sexual misconduct incidents. This is a common choice to ensure that we have enough data for the issue that we are interested in. I have also seen this approach in for example Sunny's work on bouncer: https://docs.google.com/document/d/1sb3fkmb_X9f0QnbB8v4wRuAdSjzvOrC7-1cE4gLslGk/edit

**Commented [32]:** The issue is not getting all the sexual misconduct ticket, the issue is exclude all drivers who do not have other tickets.

--

Frank Chang

Director, Insurance and Safety Analytics

[image: Uber_logotype_email_2x.png]
1455 Market St. San Francisco, CA 94103

**Commented [33]:** You mean we should include a sample of drivers with no tickets at all?

**Commented [34]:** I do not have access to the R files. Where do drivers who have both sexual and non-sexual incidents get grouped?

**Commented [35]:** Among those with sexual misconduct. I also gave you access to the R files.

16

**A/C PRIVILEGED - Prepared at the direction of counsel**



**Commented [36]:** Are you including types here which in the pages above you said to exclude (e.g. calls or messages)?

**Commented [37]:** See p 10

**Commented [38]:** I am including all tickets that have been classified using these specific contact types. I'm not including those other contact types on page 10, but if these incidents have been misclassified as sexual misconduct they are included - I am relying on the data that is available in Bliss here.

**Commented [39]:** Calls or messages seems like the inappropriate contact identified in p 10.

Most of the sexual misconduct incidents in Jira are level 3:



| Level: | 2 | 3 | 4 |
|---|---|---|---|
| Number of tickets: | 966 | 3720 | 167 |

Once we include the Bliss data, most of them are level 2:

17

**A/C PRIVILEGED - Prepared at the direction of counsel**



| Level: | 2 | 3 | 4 |
|---|---|---|---|
| Number of tickets: | 21,653 | 3720 | 167 |

Most people have 0 or a few sexual misconduct incidents, some have more, we see a very skewed distribution:



| Number of sexual misconduct tickets | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| Number of drivers | 41,875 | 19,443 | 1,935 | 451 | 137 | 45 | 12 | 3 | 1 |

18

UBER_JCCP_MDL_000252011.0017

**A/C PRIVILEGED - Prepared at the direction of counsel**

### Number of previous sexual misconduct tickets for drivers with sexual misconduct tickets

The majority of drivers involved in L4 incidents have only 1 sexual misconduct incident. Only 2 (1.2%) have two other tickets, while 12 (7.2%) have one other ticket. For drivers with L3 incidents, the majority also has only one ticket (82.1%), 470 (13.1%) have one other ticket, 125 (3.5%) have two other tickets, and 48 (1.4%) have three to five other tickets. Although we do see a proportion of drivers with more than one ticket, the majority (80-90%) has only one ticket. One big consideration with these particular analyses, however, is that we were only able to use Jira data starting January 2016 and Bliss data starting August 2016. It is obviously possible that drivers were involved in sexual misconduct incidents before these dates. It will be useful to repeat this analysis in H1 of 2018 to see whether we see a similar pattern.

| Number of drivers per highest level of sexual misconduct incident: | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| L12 | 16,350 | 1,453 | 324 | 102 | 36 | 8 | 3 | 1 |
| Percentage of those with L12 | 89.5% | 7.9% | 1.8% | 0.6% | 0.2% | 0.04% | 0.02% | 0.01% |
| L3 | 2,940 | 470 | 125 | 35 | 9 | 4 | 0 | 0 |
| Percentage of those with L3 | 82.1% | 13.1% | 3.5% | 1.0% | 0.3% | 0.1% | | |
| L4 | 153 | 12 | 2 | 0 | 0 | 0 | 0 | 0 |
| Percentage of those with L4 | 91.6% | 7.2% | 1.2% | | | | | |

**Commented [40]:** If this is the case, why do we have a table which scores tickets up to 3 before deactivation. This would suggest that tickets are a weak way of preventing future L3/4's.

**Commented [41]:** Exactly - this is what I have been saying throughout the policy discussion and this is also why I have started looking at other variables that might be informative in preventing future sexual misconduct. However, I also think we might not see this pattern, because we do not have enough data. Moreover, regardless of whether we can predict/prevent sexual misconduct with previous tickets we still want to respond to the 10% of people who do continue to engage in sexual misconduct.

**Commented [42]:** see comment above.

19

UBER_JCCP_MDL_000252011.0018

P-00753.00021

**A/C PRIVILEGED - Prepared at the direction of counsel**

**Identifiers of drivers with sexual misconduct** back to top

As a first step towards understanding the data, users are categorized by the most severe sexual misconduct safety ticket they received (between Jan 1, 2016 - March 31, 2017). The coding scheme based on the current urgent support logic for ticket severity is as follows (L0/None, L1L2, L3, L4):

- **L0 (None):** No sexual misconduct tickets.
- **L1 (Minor)/L2 (Moderate):** Inappropriate remarks, staring / leering, flirting, Masturbation / Indecent Exposure, Consensual Sex Acts, Prostitution, Offer or Solicitation of Sex, Prostitution, Sexual Information, Unwelcome Attempt to Form Personal Relationship, Non-Consensual Touching.
- **L3 (Critical):** Physical or verbal sexual assault.
- **L4 (Business Critical):** (attempted) rape (Potentially catastrophic incidents immediately threatening).

I then analyzed correlations between the number of safety incidents, the highest level of sexual misconduct and the independent variables. Below I first describe the results and then I present a table with the results.

Ratings
*Average rating up until highest level incident* - people involved in L4 sexual misconduct incidents actually have the highest average rating (see the table below), while people involved in L1-2 sm incidents have the lowest average rating. L4 having the highest rating is not what one would expect theoretically.

*Average rating over the last 7 days before the incident* - We see a similar pattern as for lifetime rating, but the only significant difference is between L1-2 (4.723) and L0 (4.735).

*Percentage of 1 star ratings (over total number of trips)* - We also wanted to investigate whether we see a higher percentage of trips rated with 1 star for drivers involved in sexual misconduct incidents. We do not see a linear relationship when we look at the highest level of sexual misconduct: instead drivers with L1-2 and L3 incidents have a higher percentage of 1 star ratings compared with L0 and L4. However, when we look at the correlation with the total number of sexual misconduct incidents, we see a moderate correlation with 1-star ratings ($r=0.126$ when all drivers are included, $r=0.283$ when only drivers with sexual misconduct are included). *Therefore, the percentage of 1-star ratings might be a useful indicator that drivers are more likely to be involved in more sexual misconduct incidents.*

Tenure of drivers
*Total number of trips (over lifetime and before the highest level incident)* - Driver partners who are involved in a level 4 incident have driven fewer trips (average of 1284) compared with those who were involved in a level 12 incident (average of 1707). Below are the distributions of total number of trips before the incident for level 1-2 and level 4 incidents:

20

P-00753.00022

**A/C PRIVILEGED - Prepared at the direction of counsel**



Both distributions are skewed with a minority of drivers having a really high number of trips. Below are descriptive numbers:

| | n | mean | sd | median | min | max | range |
|---|---|---|---|---|---|---|---|
| L2$n_trips_before_incident | 18149 | 1707.21 | 2090.42 | 944 | 1 | 18808 | 18807 |
| L4$n_trips_before_incident | 162 | 1283.91 | 1281.32 | 893.5 | 5 | 7340 | 7335 |

**Driving patterns: Percentage of trips taken at night, on weekends and on weekend nights**

The percentage of trips taken at night, weekends, and weekend nights specifically increases with the level of sexual misconduct.

For drivers involved in L4 incidents, the percentage of trips taken at *night* (between 9pm and 6am) is on average 44%, for L3 38%, for L1-2 30% and for those drivers not involved in sexual misconduct it is 27%.

For drivers involved in L4 incidents, the percentage of trips taken on *weekends* is on average 58%, for L3 54%, for L1-2 51% and for those drivers not involved in sexual misconduct it is 50%.

For drivers involved in L4 incidents, the percentage of trips taken on *weekend nights* (Saturday and Sunday mornings between midnight and 6am) is on average 16%, for L3 13%, for L1-2 11% and for those drivers not involved in sexual misconduct it is 9%.

Summarizing, a higher percentage of trips taken at night (44% versus 27%), on weekends (58% versus 50%) and on weekend nights in particular (16% versus 9%) seems to be an indicator of drivers being involved in higher levels of sexual misconduct. However, these driving patterns are not related to the number of sexual misconduct incidents. Moreover, it is important to understand that we cannot draw any conclusions about causality from these results. We see a relationship between these driving patterns and levels of sexual misconduct and this fits very well with what we know about the situations in which the more serious (L4) sexual misconduct incidents happen, but we can not and do not want to necessarily take actions based on this information: we cannot disqualify drivers because they drive more on weekend nights.

**Commented [43]:** +sytske@uber.com your deactivation rule will be at driver level. Suppose we are sure night trips are more likely to have SM tickets, or L34 SM tickets, but my question is how do you plan to come up with a driver-level policy based on that information?

**Commented [44]:** +hrothenberg@uber.com would love to hear your thoughts on this. It's interesting and fits what we know about SM happening in certain situations, but I don't know how we can take action using this information and/or incorporate this in the policy.

**Commented [45]:** This might be an interesting discussion group for our internal weekly stand up. Maybe this is information used for targeted communication/education or other types of broader interventions.

Or as you mention below for inclusion in the multivariate analysis as an indicator for flagging potentially higher risk first offenses?

21

A/C PRIVILEGED - Prepared at the direction of counsel

## Cancellations by drivers

***Cancellation percentage*** - Cancellation percentage seems to be slightly higher for those driver partners involved in L3 (5.09) incidents compared to L0 (4.44) and L12 (4.54). Cancellation percentage is also relatively high for those with L4 incidents (4.99), but this is likely not statistically significant due to the low sample size. Either way, the difference in cancellation percentage is practically not very significant, we cannot distinguish between drivers with a cancellation percentage of 4% versus 5%.

***Cancellation percentage during weekend nights -*** We see no meaningful difference in cancellation percentages on weekend nights between drivers involved in different levels of sexual misconduct, nor do we see a correlation with the number of sexual misconduct tickets.

## Safety incident behavior

I also checked whether there was a difference in the number of safety incident tickets for those drivers involved in different levels of sexual misconduct. Drivers involved in L3 sexual misconduct have the highest number of safety incidents, also when we only include sexual misconduct safety incidents. However, the differences are small: on average 1.26 tickets for those with L1-2 incidents, 1.35 for L3 and 1.17 for L4. Similarly, for sexual misconduct tickets only: 1.14 for L1-2, 1.25 for L3, 1.10 for L4. We do not see that drivers involved in L4 incidents have more other incidents than drivers involved in lower level sexual misconduct incidents. When we only include safety incidents that are not sexual misconduct, we don't see a relationship with the level of sexual misconduct or the number of tickets with sexual misconduct. *Previous safety / sexual misconduct incidents are not identifiers of L4 sexual misconduct.*

## Table: Overview of comparisons of indicators for driver partners with different levels of sexual misconduct incidents back to top

|  | L0 | L12 | L3 | L4 | MCP Significant | Correlation with total number of SM incidents | Same correlation (only including those with SM) |
|---|---|---|---|---|---|---|---|
| *Ratings* |  |  |  |  |  |  |  |
| Average rating up until highest level incident | 4.710 | 4.703 | 4.693 | 4.755 | L2-L0 L3-L0 L4-L0 L4-L2 L4-L3 | -0.036 (-0.044--0.028) | -0.077 (-0.091--0.064) |
| Average rating of trips in the 7 days preceding the highest level incident | 4.735 | 4.723 | 4.723 | 4.767 | L2-L0 | -0.039 (-0.047--0.031) | -0.079 (-0.092--0.066) |
| Percentage of 1-star | 1.193 | 1.372 | 1.511 | 1.195 | L2-L0 | 0.126 | 0.283 |

22

A/C PRIVILEGED - Prepared at the direction of counsel

| | | | | | | |
|---|---|---|---|---|---|---|
| ratings over total number of trips | | | | | L3-L0 L3-L2 | (0.118-0.133) | (0.271-0.295) |
| Average ratings by women | | | | | | | |
| **Tenure** | | | | | | | |
| Total number of trips over lifetime | 3,231 | 3,070 | 2,960 | 2,180 | L2-L0 L3-L0 L4-L0 L4-L2 L4-L3 | -0.024 (-0.032--0.016) | 0.001 (-0.012-0.015) |
| Total number of trips before highest incident | 1,692 | 1,707 | 1,643 | 1,284 | L4-L2 | 0.001 (-0.007-0.009) | 0.003 (-0.010-0.016) |
| **Driving patterns** | | | | | | | |
| Percentage of trips taken at night | 26.6% | 30.3% | 37.8% | 43.8% | L2-L0 L3-L0 L4-L0 L3-L2 L4-L2 L4-L3 | 0.106 (0.098-0.113) | 0.026 (0.013-0.040) |
| Percentage of trips taken on weekends (Fri, Sat, Sun) | 50.4% | 51.3% | 53.8% | 57.5% | L2-L0 L3-L0 L4-L0 L3-L2 L4-L2 L4-L3 | 0.036 (0.028-0.043) | -0.011 (-0.025-0.002) |
| Percentage of trips taken on weekend nights (Sat + Sun midnight - 6am) | 9.3% | 10.6% | 13.4% | 16.3% | L2-L0 L3-L0 L4-L0 L3-L2 L4-L2 L4-L3 | 0.084 (0.076-0.092) | 0.006 (-0.007-0.020) |
| **Cancellation patterns** | | | | | | | |
| Cancellation percentage | 4.44% | 4.54% | 5.09% | 4.99% | L3-L0 L3-L2 | 0.020 (0.012-0.027) | 0.013 (0.000-0.27) |
| Cancellation percentage on weekend nights (midnight-6am Sat Sun) | 9.17% | 9.11% | 8.83% | 8.53% | L3-L0 | -0.006 (-0.014-0.002) | -0.001 (-0.015-0.012) |
| Cancellation percentage of male riders | | | | | | | |
| **Safety incident behavior** | | | | | | | |

23

P-00753.00025

A/C PRIVILEGED - Prepared at the direction of counsel

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total number of safety tickets | 1.06 | 1.26 | 1.35 | 1.17 | L2-L0 L3-L0 L4-L0 L3-L2 L4-L2 L4-L3 | NA | NA |
| Total number of safety tickets that are not sexual misconduct | 1.06 | 0.12 | 0.10 | 0.08 | L2-L0 L3-L0 L4-L0 L3-L2 | -0.728 (-0.732--0.725) | 0.044 (0.031-0.057) |
| Total number of sexual misconduct safety tickets | NA | 1.14 | 1.25 | 1.10 | L3-L2 L4-L3 | NA | NA |

*Notes:* Means across severity levels. "MCP Significant" column lists which differences in means are statistically distinguishable from zero in a multiple comparisons of means test with Tukey contrasts (at the alpha = 0.05 level).

**Dichotomous predictor for sexual misconduct**

I also aggregated drivers into two groups: any sexual misconduct versus no sexual misconduct to see whether we find differences regardless of the level or number of sexual misconduct incidents. None of these differences are highly informative, so it makes sense to keep more detail in our analyses, both in terms of the level of sexual misconduct as well as in the number of sexual misconduct tickets (as we have done above):

| | No sexual misconduct | Sexual misconduct | t (df) |
|---|---|---|---|
| Lifetime_rating | 4.730 | 4.716 | 9.5605 (49320) |
| Average rating of trips in the 7 days preceding the incident | 4.735 | 4.723 | 5.0889 (46053) |
| Percentage of 1-star ratings over total number of trips | 1.193% | 1.393% | -14.36 (47742) |
| Total number of trips over lifetime | 3,231 | 3,046 | 7.0835 (47859) |
| Total number of trips before highest incident | 1,692 | 1,694 | -0.083875 (45557) |
| Cancellation percentage | 4.44% | 4.63% | -4.6331 (46230) |
| Cancellation percentage on weekend nights (midnight–6am Sat Sun) | 9.17% | 9.06% | 1.7464 (48418) |
| Percentage of trips taken at night | 26.6% | 31.5% | -27.334 (42131) |

24

P-00753.00026

A/C PRIVILEGED - Prepared at the direction of counsel

| | | | |
|---|---|---|---|
| Percentage of trips taken on weekends | 50.4% | 51.7% | -11.201 (45764) |
| Percentage of trips taken on weekend nights (Sat + Sun midnight - 6am) | 9.3% | 11.1% | -22.226 (40316) |
| Total number of safety tickets | 1.06 | 1.27 | -48.272 (26077) |

*Note*: all differences are statistically significant, apart from Total number of trips before highest incident and Cancellation percentage on weekend nights. However, statistical significance is less important (especially with such big sample sizes) than practical significance: we should focus on whether the difference is meaningful. For example, The difference in average rating for the last 7 days might be statistically significant, but not meaningfully different when trying to distinguish drivers (4.735 versus 4.723).

### Multivariate regression analyses predicting number of sexual misconduct tickets

Next, I added all significant independent variables together in one multivariate (negative binomial) regression model. The full models can be found in this document. Here I just describe the conclusion from the models. The percentage of one star ratings is the only meaningful predictor of the total number of sexual misconduct tickets a driver has. However, the differences in the percentages are small and this variable is not useful as a tool as part of the human adjudication process by IRT agents. However, we propose that this variable could be used to 'flag' risky drivers (also combined with other 'risk' factors). Similar to what happens with dangerous driving, once someone hits a 'threshold' (in case of dangerous driving, three tickets for that behavior), a Jira ticket is created automatically and this driver needs to be evaluated by a highly trained IRT agent who has experience with sexual misconduct incidents.

### Multivariate regression analyses predicting highest level of sexual misconduct

Then, I analyzed the outcome variable of highest level of sexual misconduct in relation to the independent variables. The odds ratio for the independent variable percentage of trips taken on weekend nights is rather small, but significantly related to our outcome variable. When we look at the actual percentage for each of the groups, we see that for drivers involved in L4 incidents, the percentage of trips taken on *weekend nights* (Saturday and Sunday mornings between midnight and 6am) is on average 16.3%, for L3 13.4%, and for L1-2 10.6%. However, I am not sure how we should include this variable in our policy. It is not surprising that we find this relationship, as we know that most serious sexual misconduct incidents take place on weekend nights. So it is not surprising that people who drive more on weekend nights have more opportunity to be involved in a sexual misconduct incident. However, a) we cannot analyze cause and effect and b) we want our drivers to drive on weekend nights, so I don't think we should 'punish' drivers who drive on weekend nights. Would love to hear others' thoughts on how we can use this knowledge in our policy.

**Commented [46]:** +hrothenberg@uber.com this is the conclusion from the multivariate regression analyses. Let me know what you think.

**Commented [47]:** +sytske@uber.com your deactivation rule will be at driver level. Suppose we are sure night trips are more likely to have SM tickets, or L34 SM tickets, but my question is how do you plan to come up with a driver-level policy based on that information?

25

P-00753.00027

A/C PRIVILEGED - Prepared at the direction of counsel

Cancellation rate was the only other meaningful variable distinguishing drivers who were involved in level 3 and 4 incidents and drivers only involved in lower level sexual misconduct. The odds ratios are quite high, but the difference between the groups is rather small (4.5% for L1L2 and 5% for L3L4). Again, we recommend that this variable will be used to 'flag' high risk drivers, but IRT agents should not manually distinguish between those with an average cancellation of 4.5% versus 5%.

> **Commented [48]:** +hrothenberg@uber.com this is the conclusion from the multivariate regression analyses. Let me know what you think.

## Relationship between specific sexual misconduct behaviors and number of sexual misconduct tickets and higher level sexual misconduct back to top

I wanted to analyze whether certain categories of tickets are related to either the total number of tickets, or having an L3 or L4 ticket. Below is the table presenting the results. However, these results are not necessarily very meaningful to inform our policy for a variety of reasons:
- These analyses are based on the current categorization, and especially inappropriate comments is a very broad category with a variety of behaviors.
- The majority of people have only 1 ticket, so this data is meaningless to analyze the relationship between different types of tickets.
- In these analyses I do not take into account which behaviors happened first.
- We see that people involved in lower level incidents have more tickets for sexual misconduct. This is not surprising, as they are 'allowed' to have three tickets before they are deactivated. If someone is involved in an L3 or L4 incident, they are more likely to be deactivated and therefore they are unable to accumulate more tickets.
- Similarly, we see that people with lower level incidents are less likely to have an L3 or L4 ticket than those without those specific lower level categories. This is also unsurprising, as we have seen before that most people have only one ticket. In a sense, we have distinct groups of people with only one ticket in one specific category.
- As mentioned before, I recommend analyzing patterns of sexual misconduct behavior in 6-12 months time, when we have data with the new categorization. I also recommend taking into account which behaviors came first. Perhaps it might be helpful to do some kind of latent class analysis to see whether we can identify certain 'types' of drivers with specific behavior patterns.

| | Average number of sexual misconduct tickets | | | Percentage with L3L4 incident | | |
|---|---|---|---|---|---|---|
| SM category of behavior | People without this category | People with category | t (df) | People without this category | People with category | OR (95% CI) |
| Inappropriate comment | 1.036 | 1.227 | -34.569 (19267) | 42.1% | 3.4% | 0.048 (0.043-0.053) |
| Inappropriate contact after trip | 1.153 | 1.247 | -5.4345 (1574) | 18.1% | 2.4% | 0.112 (0.079-0.154) |

26

**A/C PRIVILEGED - Prepared at the direction of counsel**

| Indecent Exposure | | | | | |
|---|---|---|---|---|---|
| Masturbation | | | | | |
| | | | | | |
| Non-Consensual Touching | | | | | |
| Non-Consensual Intercourse | | | | | |

> **Commented [49]:** +hrothenberg@uber.com. I stopped here, because I realized that these analyses are not as meaningful, but would be happy to analyze the rest and fill out the rest of the table.

**Analyzing related but non-sexual misconduct behaviors** [back to top](#)

One would expect that people who show sexually inappropriate behavior are more likely to also show other inappropriate behaviors, such as rude comments. It is rare that people 'specialize' in one type of delinquent behavior, offending is versatile rather than specialized (Piquero, Farrington, & Blumstein, 2007). Do we see that drivers engaged in sexual misconduct have more tickets for safety incidents than those drivers who are not involved in safety incidents? I think the following behaviors (chosen from Not Another Taxonomy Sheet) might be relevant to look at, this is based on tickets I have seen before as well as a theoretical foundation of what might be similar behaviors:

| IRT | Rider | IRT: Incident | Verbal Altercation |
|---|---|---|---|
| IRT | Rider | IRT: Incident | Discriminatory Comments |
| IRT | Rider | IRT: Incident | Drug or alcohol |
| IRT | Other | IRT: Urgent | Kidnapping |
| IRT | Other | IRT: Urgent | Physical Assault |

For drivers in our sample, I wanted to know whether or not they had the types of behaviors described above (between August 2016 - April 2017) and whether they were more likely to have such incidents than drivers who were not involved in sexual misconduct incidents. When we look at the highest level of sexual misconduct for a driver, none of these behaviors predicts an L4 incident. Drivers with an L4 incident actually have a lower prevalence of these behaviors compared with drivers involved in lower level sexual misconduct incidents. However, most of these behaviors do seem related to drivers being involved in L1L2 incidents, especially verbal altercations and discriminatory comments seem to be relevant.

When we ignore the level of sexual misconduct, but look at the number of sexual misconduct incidents that drivers have been involved in, we see a weak to moderate correlation (r=0.124) with the total number of tickets, especially when we consider drivers who have at least one report of sexual misconduct). We might consider including the number of other safety incidents as an indicator for more sexual misconduct tickets.

27

A/C PRIVILEGED - Prepared at the direction of counsel

|  | L0 | L12 | L3 | L4 | MCP Significant | Correlation with total number of SM incidents | Same correlation (only including those with SM) |
|---|---|---|---|---|---|---|---|
| Verbal Altercation | 0.11 | 0.15 | 0.10 | 0.04 | L4-L2 L3-L2 L2-L0 | 0.055 (63900) | 0.066 (22025) |
| Discriminatory Comments | 0.04 | 0.09 | 0.05 | 0.01 | L4-L2 L3-L2 L3-L0 L2-L0 | 0.096 (63900) | 0.095 (22025) |
| Drug or alcohol | 0.08 | 0.11 | 0.09 | 0.04 | L2-L0 L3-L2 | 0.051 (63900) | 0.080 (22025) |
| Kidnapping | 0.00098 | 0.00033 | 0 | 0 | L2-L0 | -0.010 (63900) | 0.006 (22025) |
| Physical Assault | 0.010 | 0.003 | 0.016 | 0 | L2-L0 L3-L0 L3-L2 | -0.023 (63900) | 0.002 (22025) |
| Total of behaviors above | 0.24 | 0.35 | 0.26 | 0.08 | L2-L0 L4-L0 L3-L2 L4-L2 L4-L3 | 0.097 (63900) | 0.124 (22025) |

*Notes:* Means across severity levels. "MCP Significant" column lists which differences in means are statistically distinguishable from zero in a multiple comparisons of means test with Tukey contrasts (at the alpha = 0.05 level).

### Dichotomous non sexual misconduct behavior predictors for sexual misconduct

I also analyzed this question using dichotomous variables: are drivers involved in sexual misconduct incidents more likely to have any of the other behaviors? The table below shows the percentages of drivers with each of the other behaviors in the group drivers without and with sexual misconduct incidents. Drivers with sexual misconduct incidents are more likely to have reports of discriminatory comments (6.7% versus 3.3%, OR = 2.09). They are also more likely to have reports of verbal altercations (11.1% versus 8.4%, OR = 1.37) and reports of drugs or alcohol (8.6% versus 5.9%, OR = 1.51). Kidnapping and physical assault are not predictive of sexual misconduct.

Summarizing, verbal altercations, discriminatory comments, and drug/alcohol use are related to sexual misconduct. When drivers are involved in any of these, the odds of them being involved in sexual misconduct are 1.5-2 times higher. However, the proportions of drivers involved in these other behaviors are still pretty small. The majority of people who have these other behaviors do not engage in sexual misconduct. I am not sure whether this is enough ground to include this in the decision making process when deciding on interventions for sexual misconduct, other than that it might be helpful to see whether drivers have (m)any reports for these behaviors and if so, we should be extra careful.

|  | No sexual misconduct | Sexual misconduct | OR (95% CI) |
|---|---|---|---|

28

P-00753.00030

**A/C PRIVILEGED - Prepared at the direction of counsel**

| Verbal Altercation | 8.4% | 11.1% | 1.37 (1.30-1.45) |
|---|---|---|---|
| Discriminatory Comments | 3.3% | 6.7% | 2.09 (1.94, 2.25) |
| Drug or alcohol | 5.9% | 8.6% | 1.51 (1.42, 1.61) |
| Kidnapping | 0.098% | 0.027% | 0.28 (0.11, 0.61) |
| Physical Assault | 1.0% | 0.5% | 0.50 (0.40, 0.61) |
| Total of behaviors above | 16.3% | 22.8% | 1.51 (1.45, 1.57) |

29

UBER_JCCP_MDL_000252011.0028

A/C PRIVILEGED - Prepared at the direction of counsel

## Lookback period: No correlation between total number of trips and number of sexual misconduct incidents back to top

I have run analyses to see whether there is a correlation between the number of trips a driver has taken and the number of sexual misconduct incidents. This information is relevant, because if we do not see a 'natural' increase in sexual misconduct tickets, we can consider previous sexual misconduct incidents over the lifetime (instead of for example over the last N trips or the last N months/years). I have calculated this in several ways, but I do not see any relationship at all (r = -0.024, 95% CI -0.032--0.016). Since the variable lifetime trips is very skewed with many drivers having fewer than 5,000 trips and a minority having many more trips (up to 20k+) I divided the drivers in percentiles and calculated the average number of safety incidents for each group (in the table below)

**Commented [50]:** +sjeon@uber.com would love to hear your input here.
_Assigned to Sunny Jeon_

**Commented [51]:** +actuaryzhang@uber.com, would love to hear your thoughts here.
_Assigned to Wayne Zhang_

**Commented [52]:** +hadi@uber.com +kcorti@uber.com +pparigi@uber.com This is the analyses we talked about yesterday: considering whether we should use a lifetime lookback period versus a specific number of trips. Please add any feedback or thoughts you might have.

| Lifetime trips | <398 | <753 | <1154 | <1621 | <2167 | <2831 | 3731 | <5023 | <7300 | >=7300 |
|---|---|---|---|---|---|---|---|---|---|---|
| Number of sexual misconduct incidents | 0.33 | 0.39 | 0.43 | 0.45 | 0.46 | 0.45 | 0.44 | 0.42 | 0.39 | 0.35 |



Lifetime completed trips by number of sexual misconduct tickets

30

**A/C PRIVILEGED - Prepared at the direction of counsel**

There are, however, two considerations to keep in mind:
- I am using information on incidents from Jira starting January 2016 and Bliss starting August 2016, so the lookback period is not that far.
- perhaps it is difficult to find such a correlation as sexual misconduct incidents are rare.

31

UBER_JCCP_MDL_000252011.0030

P-00753.00033

**A/C PRIVILEGED - Prepared at the direction of counsel**

**Proposed Category - Agent Flow:**



**Commented [53]:** +sytske@uber.com - This is the way I was thinking we can execute on your proposed category. This is what we do for Dangerous Driving/Others.
So, what we need to do for agents is:
1. clearly define what goes into proposed category and when to assign them
2. when to ask for clarifications before assigning
3. when to remove from SM category
_Assigned to Sytske Besemer_

**Commented [54]:** Hi Karna, I think this makes sense. Do you want to apply this to all SM tickets or only certain ones? Do you want to include this in the Urgent Support Logic or is this mostly for us?

**Commented [55]:** This would be the approach for L1/L2 incidents. The policy violators will get automatically flagged based on a set of rules( new policy). For L3/L4, Investigation agent will make a decision in Real-time based on rules the new policy may define.

**Commented [56]:** +karna@uber.com , I think we can leave this out of the current analyses document, right? _Reassigned to Deleted user_

32