RASIER, LLC / RASIER-CA, LLC / RASIER-PA, LLC / RASIER-DC, LLC / RASIER-MT, LLC / HINTER-NM

**TECHNOLOGY SERVICES AGREEMENT**

Last update: December 11, 2015

This Technology Services Agreement ("*Agreement*") constitutes a legal agreement between you, an individual ("*you*") and Rasier-CA, LLC if your Territory (as defined below) is within the State of California, Rasier-PA, LLC if your Territory is within the State of Pennsylvania, Rasier-DC, LLC if your Territory is within the State of Florida, Rasier-MT, LLC if your Territory is within the State of Montana, Hinter-NM if your Territory is within the State of New Mexico, or Rasier, LLC if your Territory is anywhere else within the United States (as applicable, "*Company*").

Company, a subsidiary of Uber Technologies, Inc. ("*Uber*"), provides lead generation to independent providers of rideshare or peer-to-peer (collectively, "*P2P*") passenger transportation services using the Uber Services (as defined below). The Uber Services enable an authorized transportation provider to seek, receive and fulfill requests for transportation services from an authorized user of Uber's mobile applications. You desire to enter into this Agreement for the purpose of accessing and using the Uber Services.

**You acknowledge and agree that Company is a technology services provider that does not provide transportation services.**

In order to use the Uber Services, you must agree to the terms and conditions that are set forth below. Upon your execution (electronic or otherwise) of this Agreement, you and Company shall be bound by the terms and conditions set forth herein.

**IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS, EXCEPT AS PROVIDED IN SECTION 15.3, THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION.  BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION.  IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.**



Trial Exhibit No.
**04177**

1. **Definitions**

1.1     "*Affiliate*" means an entity that, directly or indirectly, controls, is under the control of, or is under common control with a party, where control means having more than fifty percent (50%) of the voting stock or other ownership interest or the majority of the voting rights of such entity.

1.2     "*City Addendum*" means an addendum or supplemental information to this Agreement setting forth additional Territory-specific terms, as made available and as updated by Company from time to time.

1.3     "*Company Data*" means all data related to the access and use of the Uber Services hereunder, including all data related to Users (including User Information), all data related to the provision of Transportation Services via the Uber Services and the Driver App, and the Driver ID.

1.4     "*Company Device*" means a mobile device owned or controlled by Company that is provided to you solely for your use of the Driver App to provide Transportation Services.

1.5     "*Device*" means a Company Device or Your Device, as the case may be.

1.6     "*Driver App*" means the mobile application provided by Company that enables transportation providers to access the Uber Services for the purpose of seeking, receiving and fulfilling on-demand requests for transportation services by Users, as may be updated or modified from time to time.

1.7     "*Driver ID*" means the identification and password key assigned by Company to you that enables you to use and access the Driver App.

1.8     "*Fare*" has the meaning set forth in Section 4.1.

1.9     "*Service Fee*" has the meaning set forth in Section 4.4.

1.10    "*Territory*" means the city or metro areas in the United States in which you are enabled by the Driver App to receive requests for Transportation Services.

1.11    "*Tolls*" means any applicable road, bridge, ferry, tunnel and airport charges and fees, including inner-city congestion, environmental or similar charges as reasonably determined by the Uber Services based on available information.

1.12    "*Transportation Services*" means your provision of P2P passenger transportation services to Users via the Uber Services in the Territory using the Vehicle.

1.13    "*Uber Services*" mean Uber's on-demand lead generation and related services licensed by Uber to Company that enable transportation providers to seek, receive and fulfill on-demand requests for transportation services by Users seeking transportation services; such Uber Services include access to the Driver App and Uber's software, websites, payment services as described in Section 4 below, and related support services systems, as may be updated or modified from time to time.

1.14    "*User*" means an end user authorized by Uber to use the Uber mobile application for the purpose of obtaining Transportation Services offered by Company's transportation provider customers.

1.15    "*User Information*" means information about a User made available to you in connection with such User's request for and use of Transportation Services, which may include the User's name, pick-up location, contact information and photo.

1.16    "*Vehicle*" means your vehicle that:  (a) meets the then-current Company requirements for a vehicle on the Uber Services; and (b) Company authorizes for your use for the purpose of providing Transportation Services.

1.17    "*Your Device*" means a mobile device owned or controlled by you:  (a) that meets the then-current Company specifications for mobile devices as set forth at www.uber.com/byod-devices; and (b) on which the Driver App has been installed as authorized by Company solely for the purpose of providing Transportation Services.

2.    **Use of the Uber Services**

2.1    **Driver IDs**. Uber will issue you a Driver ID to enable you to access and use the Driver App on a Device in accordance with this Agreement. Company reserves the right to deactivate your Driver ID if you have not fulfilled a request for Transportation Services using the Driver App at least once a month. **You agree that you will maintain your Driver ID in confidence and not share your Driver ID with any third party. You will immediately notify Company of any actual or suspected breach or improper use or disclosure of your Driver ID or the Driver App.**

2.2    **Provision of Transportation Services**. When the Driver App is active, User requests for Transportation Services may appear to you via the Driver App if you are available and in the vicinity of the User. If you accept a User's request for Transportation Services, the Uber Services will provide you with certain User Information via the Driver App, including the User's first name and pickup location. In order to enhance User satisfaction with the Uber mobile application and your Transportation Services, it is recommended that you wait at least ten (10) minutes for a User to show up at the requested pick-up location. You will obtain the destination from the User, either in person upon pickup or from the Driver App if the User elects to enter such destination via Uber's mobile application. You acknowledge and agree that once you have accepted a User's request for Transportation Services, Uber's mobile application may provide certain information about you to the User, including your first name, contact information, photo and location, and your Vehicle's make and license plate number. You shall not contact any Users or use any User's personal data for any reason other than for the purposes of fulfilling Transportation Services. As between Company and you, you acknowledge and agree that:  (a) you shall be solely responsible for determining the most effective, efficient and safe manner to perform each instance of Transportation Services; and (b) except for the Uber Services or any Company Devices (if applicable), you shall provide all necessary equipment, tools and other materials, at your own expense, necessary to perform Transportation Services. You understand and agree that you have a legal obligation under the Americans with Disabilities Act and similar state laws to transport Users with Service Animals (as defined by applicable state and federal law), including guide dogs for the blind and visually impaired Users, and there is no exception to this obligation for allergies or religious objections. Your knowing failure to transport a User with a Service Animal shall constitute a material breach of this Agreement. You agree that a "knowing failure" to comply with this legal obligation shall constitute either: (1) a denial of a ride where you state the denial was due to a Service Animal; or (2) there is more than one (1) instance in which a User or the companion of a User alleges that you cancelled or refused a ride on the basis of a Service Animal.

2.3    **Your Relationship with Users**. You acknowledge and agree that your provision of Transportation Services to Users creates a direct business relationship between you and the User. Company is not responsible or liable for the actions or inactions of a User in relation to you, your activities or your Vehicle. You shall have the sole responsibility for any obligations or liabilities to Users or third parties that arise from your provision of Transportation Services. You acknowledge and

UBER-MDL3084-BW-00001495
$( %+'$$$'

agree that you are solely responsible for taking such precautions as may be reasonable and proper (including maintaining adequate insurance that meets the requirements of all applicable laws including motor vehicle financial responsibility laws) regarding any acts or omissions of a User or third party. You acknowledge and agree that Company may release your contact and/or insurance information to a User upon such User's reasonable request. You acknowledge and agree that, unless specifically consented to by a User, you may not transport or allow inside your Vehicle individuals other than a User and any individuals authorized by such User, during the performance of Transportation Services for such User. You acknowledge and agree that all Users should be transported directly to their specified destination, as directed by the applicable User, without unauthorized interruption or unauthorized stops.

2.4   **Your Relationship with Company**. You acknowledge and agree that Company's provision to you of the Driver App and the Uber Services creates a direct business relationship between Company and you. Company does not, and shall not be deemed to, direct or control you generally or in your performance under this Agreement specifically, including in connection with your provision of Transportation Services, your acts or omissions, or your operation and maintenance of your Vehicle. You retain the sole right to determine when, where, and for how long you will utilize the Driver App or the Uber Services. You retain the option, via the Driver App, to attempt to accept or to decline or ignore a User's request for Transportation Services via the Uber Services, or to cancel an accepted request for Transportation Services via the Driver App, subject to Company's then-current cancellation policies. With the exception of any signage required by local law or permit/license requirements, Company shall have no right to require you to:  (a) display Company's or any of its Affiliates' names, logos or colors on your Vehicle(s); or (b) wear a uniform or any other clothing displaying Company's or any of its Affiliates' names, logos or colors. You acknowledge and agree that you have complete discretion to provide services or otherwise engage in other business or employment activities.  For the sake of clarity, you understand that you retain the complete right to; (i) use other software application services in addition to the Uber Services; and (ii) engage in any other occupation or business. Company retains the right to deactivate or otherwise restrict you from accessing or using the Driver App or the Uber Services in the event of a violation or alleged violation of this Agreement, your disparagement of Company or any of its Affiliates, your act or omission that causes harm to Company's or its Affiliates' brand, reputation or business as determined by Company in its sole discretion.

2.5   **Ratings**.

2.5.1   You acknowledge and agree that:  (a) after receiving Transportation Services, a User will be prompted by Uber's mobile application to provide a rating of you and such Transportation Services and, optionally, to provide comments or feedback about you and such Transportation Services; and (b) after providing Transportation Services, you will be prompted by the Driver App to provide a rating of the User and, optionally, to provide comments or feedback about the User. You shall provide your ratings and feedback in good faith.

2.5.2   You acknowledge that Company desires that Users have access to high-quality services via Uber's mobile application. In order to continue to receive access to the Driver App and the Uber Services, you must maintain an average rating by Users that exceeds the minimum average acceptable rating established by Company for your Territory, as may be updated from time to time by Company in its sole discretion ("*Minimum Average Rating*"). Your average rating is intended to reflect Users' satisfaction with your

Transportation Services rather than your compliance with any of Company's policies or recommendations. In the event your average rating falls below the Minimum Average Rating, Company will notify you and may provide you, in Company's discretion, a limited period of time to raise your average rating above the Minimum Average Rating. If you do not increase your average rating above the Minimum Average Rating within the time period allowed (if any), Company reserves the right to deactivate your access to the Driver App and the Uber Services. Additionally, you acknowledge that your repeated failure to accept User requests for Transportation Services while you are logged in to the Driver App creates a negative experience for Users of Uber's mobile application. If you do not wish to accept User requests for Transportation Services for a period of time, you agree that you will log off of the Driver App.

2.5.3   Company and its Affiliates reserve the right to use, share and display your and User ratings and comments in any manner in connection with the business of Company and its Affiliates without attribution to you or your approval. You acknowledge and agree that Company and its Affiliates are distributors (without any obligation to verify) and not publishers of your and User ratings and comments, provided that Company and its Affiliates reserve the right to edit or remove comments in the event that such comments include obscenities or other objectionable content, include an individual's name or other personal information, or violate any privacy laws, other applicable laws or Company's or its Affiliates' content policies.

2.6     **Devices**.

2.6.1   Company encourages you to use Your Device in providing Transportation Services. Otherwise, if you elect to use any Company Devices, Company will supply you upon request with Company Devices and provide the necessary wireless data plan for such Devices, provided that Company will require reimbursement from you for the costs associated with the wireless data plan of each Company Device and/or request a deposit for each Company Device. You agree that:  (a) Company Devices may only be used for the purpose of enabling your access to the Uber Services; and (b) Company Devices may not be transferred, loaned, sold or otherwise provided in any manner to any party other than you. Company Devices shall at all times remain the property of Company, and upon termination of this Agreement or your termination or deactivation, you agree to return to Company the applicable Company Devices within ten (10) days. You agree that failure to timely return any Company Devices, or damage to Company Devices outside of "normal wear and tear," will result in the forfeiture of related deposits.

2.6.2   If you elect to use Your Devices:  (i) you are responsible for the acquisition, cost and maintenance of Your Devices as well as any necessary wireless data plan; and (ii) Company shall make available the Driver App for installation on Your Device. Company hereby grants you a personal, non-exclusive, non-transferable license to install and use the Driver App on Your Device solely for the purpose of providing Transportation Services.  You agree to not provide, distribute or share, or enable the provision, distribution or sharing of, the Driver App (or any data associated therewith) with any third party.  The foregoing license grant shall immediately terminate and you will delete and fully remove the Driver App from the Driver-Provided Device in the event that you cease to provide Transportation Services using Your Device. You agree that:  (i) use of the Driver App on Your Device requires an active data plan with a wireless carrier associated with Your Device, which data plan will be provided by you at your own

expense; and (ii) use of the Driver App on Your Device as an interface with the Uber Services may consume very large amounts of data through the data plan. **COMPANY ADVISES THAT YOUR DEVICE ONLY BE USED UNDER A DATA PLAN WITH UNLIMITED OR VERY HIGH DATA USAGE LIMITS, AND COMPANY SHALL NOT BE RESPONSIBLE OR LIABLE FOR ANY FEES, COSTS, OR OVERAGE CHARGES ASSOCIATED WITH ANY DATA PLAN.**

2.7     **Location Based Services**. You acknowledge and agree that your geo-location information must be provided to the Uber Services via a Device in order to provide Transportation Services. You acknowledge and agree that:  (a) your geo-location information may be obtained  by the Uber Services while the Driver App is running; and (b) the approximate location of your Vehicle will be displayed to the User before and during the provision of Transportation Services to such User. In addition, Company and its Affiliates may monitor, track and share with third parties Driver's geo-location information obtained by the Driver App and Device for safety and security purposes.

3.  **You and Your Vehicle**

3.1     **Your Requirements**. You acknowledge and agree that at all times, you shall:  (a) hold and maintain (i) a valid driver's license with the appropriate level of certification to operate your Vehicle, and (ii) all licenses, permits, approvals and authority applicable to you that are necessary to provide passenger transportation services to third parties in the Territory; (b) possess the appropriate and current level of training, expertise and experience to provide Transportation Services in a professional manner with due skill, care and diligence; and (c) maintain high standards of professionalism, service and courtesy. You acknowledge and agree that you may be subject to certain background and driving record checks from time to time in order to qualify to provide, and remain eligible to provide, Transportation Services. You acknowledge and agree that Company reserves the right, at any time in Company's sole discretion, to deactivate or otherwise restrict you from accessing or using the Driver App or the Uber Services if you fail to meet the requirements set forth in this Agreement.

3.2     **Vehicle Requirements**. You acknowledge and agree that your Vehicle shall at all times be:  (a) properly registered and licensed to operate as a passenger transportation vehicle in the Territory; (b) owned or leased by you, or otherwise in your lawful possession; (c) suitable for performing the passenger transportation services contemplated by this Agreement; and (d) maintained in good operating condition, consistent with industry safety and maintenance standards for a Vehicle of its kind and any additional standards or requirements in the applicable Territory, and in a clean and sanitary condition.

3.3     **Documentation**. To ensure your compliance with all requirements in Sections 3.1 and 3.2 above, you must provide Company with written copies of all such licenses, permits, approvals, authority, registrations and certifications prior to your provision of any Transportation Services. Thereafter, you must submit to Company written evidence of all such licenses, permits, approvals, authority, registrations and certifications as they are renewed. Company shall, upon request, be entitled to review such licenses, permits, approvals, authority, registrations and certifications from time to time, and your failure to provide or maintain any of the foregoing shall constitute a material breach of this Agreement. Company reserves the right to independently verify your documentation from time to time in any way Company deems appropriate in its reasonable discretion.

4.  **Financial Terms**

UBER-MDL3084-BW-00001498
$( %÷+'$$$*

4.1    **Fare Calculation and Your Payment**. You are entitled to charge a fare for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services (*"Fare"*), where such Fare is calculated based upon a base fare amount plus distance (as determined by Company using location-based services enabled through the Device) and/or time amounts, as detailed at www.uber.com/cities for the applicable Territory ("*Fare Calculation*"). You acknowledge and agree that the Fare provided under the Fare Calculation is the only payment you will receive in connection with the provision of Transportation Services, and that neither the Fare nor the Fare Calculation includes any gratuity. You are also entitled to charge User for any Tolls, taxes or fees incurred during the provision of Transportation Services, if applicable. You:  (i) appoint Company as your limited payment collection agent solely for the purpose of accepting the Fare, applicable Tolls and, depending on the region and/or if requested by you, applicable taxes and fees from the User on your behalf via the payment processing functionality facilitated by the Uber Services; and (ii) agree that payment made by User to Company (or to an Affiliate of Company acting as an agent of Company) shall be considered the same as payment made directly by User to you. In addition, the parties acknowledge and agree that as between you and Company, the Fare is a recommended amount, and the primary purpose of the pre-arranged Fare is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to: (i) charge a fare that is less than the pre-arranged Fare; or (ii) negotiate, at your request, a Fare that is lower than the pre-arranged Fare (each of (i) and (ii) herein, a "*Negotiated Fare*"). Company shall consider all such requests from you in good faith. Company agrees to remit, or cause to be remitted, to you on at least a weekly basis:  (a) the Fare less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees. If you have separately agreed that other amounts may be deducted from the Fare prior to remittance to you (*e.g.*, vehicle financing payments, lease payments, mobile device usage charges, etc.), the order of any such deductions from the Fare shall be determined exclusively by Company (as between you and Company).

4.2    **Changes to Fare Calculation**. Company reserves the right to change the Fare Calculation at any time in Company's discretion based upon local market factors, and Company will provide you with notice in the event of changes to the base fare, per mile, and/or per minute amounts that would result in a change in the recommended Fare. Continued use of the Uber Services after any such change in the Fare Calculation shall constitute your consent to such change.

4.3    **Fare Adjustment.** Company reserves the right to:  (i) adjust the Fare for a particular instance of Transportation Services (*e.g.*, you took an inefficient route, you failed to properly end a particular instance of Transportation Services in the Driver App, technical error in the Uber Services, etc.); or (ii) cancel the Fare for a particular instance of Transportation Services (*e.g.*, User is charged for Transportation Services that were not provided, in the event of a User complaint, fraud, etc.). Company's decision to reduce or cancel the Fare in any such manner shall be exercised in a reasonable manner.

4.4    **Service Fee**. In consideration of Company's provision of the Driver App and the Uber Services for your use and benefit hereunder, you agree to pay Company a service fee on a per Transportation Services transaction basis calculated as a percentage of the Fare determined by the Fare Calculation (regardless of any Negotiated Fare), as provided to you via email or otherwise made available electronically by Company from time to time for the applicable Territory ("*Service Fee*"). In the event regulations applicable to your Territory require taxes to be calculated on the Fare, Company shall calculate the Service Fee based on the Fare net of such taxes. Company reserves the right to change the Service Fee at any time in Company's discretion

based upon local market factors, and Company will provide you with notice in the event of such change. Continued use of the Uber Services after any such change in the Service Fee calculation shall constitute your consent to such change.

4.5     **Cancellation Charges**. You acknowledge and agree that Users may elect to cancel requests for Transportation Services that have been accepted by you via the Driver App at any time prior to your arrival. In the event that a User cancels an accepted request for Transportation Services, Company may charge the User a cancellation fee on your behalf. If charged, this cancellation fee shall be deemed the Fare for the cancelled Transportation Services for the purpose of remittance to you hereunder ("*Cancellation Fee*"). The parties acknowledge and agree that as between you and Company, this Cancellation Fee is a recommended amount, and the primary purpose of such Cancellation Fee is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to:  (i) charge a cancellation fee that is less than the Cancellation Fee; or (ii) negotiate, at your request, a cancellation fee that is lower than the Cancellation Fee (each of (i) and (ii) herein, a "*Negotiated Cancellation Fee*"). If charged, the Cancellation Fee (regardless of any Negotiated Cancellation Fee) shall be deemed the Fare for the cancelled Transportation Services for the purpose of remittance to you hereunder.

4.6     **Receipts**. As part of the Uber Services, Company provides you a system for the delivery of receipts to Users for Transportation Services rendered. Upon your completion of Transportation Services for a User, Company prepares an applicable receipt and issues such receipt to the User via email on your behalf. Such receipts are also provided to you via email or the online portal available to you through the Uber Services. Receipts include the breakdown of amounts charged to the User for Transportation Services and may include specific information about you, including your name, contact information and photo, as well as a map of the route you took. Any corrections to a User's receipt for Transportation Services must be submitted to Company in writing within three (3) business days after the completion of such Transportation Services. Absent such a notice, Company shall not be liable for any mistakes in or corrections to the receipt or for recalculation or disbursement of the Fare.

4.7     **No Additional Amounts**. You acknowledge and agree that, for the mutual benefit of the parties, through advertising and marketing, Company and its Affiliates may seek to attract new Users to Uber and to increase existing Users' use of Uber's mobile application. You acknowledge and agree such advertising or marketing does not entitle you to any additional monetary amounts beyond the amounts expressly set forth in this Agreement.

4.8     **Taxes**. You acknowledge and agree that you are required to:  (a) complete all tax registration obligations and calculate and remit all tax liabilities related to your provision of Transportation Services as required by applicable law; and (b) provide Company with all relevant tax information. You further acknowledge and agree that you are responsible for taxes on your own income arising from the performance of Transportation Services. Notwithstanding anything to the contrary in this Agreement, Company may in its reasonable discretion based on applicable tax and regulatory considerations, collect and remit taxes resulting from your provision of Transportation Services and/or provide any of the relevant tax information you have provided pursuant to the foregoing requirements in this Section 4.8 directly to the applicable governmental tax authorities on your behalf or otherwise.

5.     **Proprietary Rights; License**

5.1   **License Grant**. Subject to the terms and conditions of this Agreement, Company hereby grants you a non-exclusive, non-transferable, non-sublicensable, non-assignable license, during the term of this Agreement, to use the Uber Services (including the Driver App on a Device) solely for the purpose of providing Transportation Services to Users and tracking resulting Fares and Fees. All rights not expressly granted to you are reserved by Company, its Affiliates and their respective licensors.

5.2   **Restrictions**. You shall not, and shall not allow any other party to:  (a) license, sublicense, sell, resell, transfer, assign, distribute or otherwise provide or make available to any other party the Uber Services, Driver App or any Company Device in any way; (b) modify or make derivative works based upon the Uber Services or Driver App; (c) improperly use the Uber Services or Driver App, including creating Internet "links" to any part of the Uber Services or Driver App, "framing" or "mirroring" any part of the Uber Services or Driver App on any other websites or systems, or "scraping" or otherwise improperly obtaining data from the Uber Services or Driver App; (d) reverse engineer, decompile, modify, or disassemble the Uber Services or Driver App, except as allowed under applicable law; or (e) send spam or otherwise duplicative or unsolicited messages. In addition, you shall not, and shall not allow any other party to, access or use the Uber Services or Driver App to:  (i) design or develop a competitive or substantially similar product or service; (ii) copy or extract any features, functionality, or content thereof; (iii) launch or cause to be launched on or in connection with the Uber Services an automated program or script, including web spiders, crawlers, robots, indexers, bots, viruses or worms, or any program which may make multiple server requests per second, or unduly burden or hinder the operation and/or performance of the Uber Services; or (iv) attempt to gain unauthorized access to the Uber Services or its related systems or networks.

5.3   **Ownership**. The Uber Services, Driver App and Company Data, including all intellectual property rights therein, and the Company Devices are and shall remain (as between you and Company) the property of Company, its Affiliates or their respective licensors. Neither this Agreement nor your use of the Uber Services, Driver App or Company Data conveys or grants to you any rights in or related to the Uber Services, Driver App or Company Data, except for the limited license granted above. Other than as specifically permitted by the Company in connection with the Uber Services, you are not permitted to use or reference in any manner Company's, its Affiliates', or their respective licensors' company names, logos, products and service names, trademarks, service marks, trade dress, copyrights or other indicia of ownership, alone and in combination with other letters, punctuation, words, symbols and/or designs (the "UBER Marks and Names") for any commercial purposes. You agree that you will not try to register or otherwise use and/or claim ownership in any of the UBER Marks and Names, alone or in combination with other letters, punctuation, words, symbols and/or designs, or in any confusingly similar mark, name or title, for any goods and services.

6.   **Confidentiality**

6.1   Each party acknowledges and agrees that in the performance of this Agreement it may have access to or may be exposed to, directly or indirectly, confidential information of the other party ("*Confidential Information*"). Confidential Information includes Company Data, Driver IDs, User Information, and the transaction volume, marketing and business plans, business, financial, technical, operational and such other non-public information of each party (whether disclosed in writing or verbally) that such party designates as being proprietary or confidential or of which the other party should reasonably know that it should be treated as confidential.

UBER-MDL3084-BW-00001501
$( %÷+'$$$-

6.2     Each party acknowledges and agrees that:  (a) all Confidential Information shall remain the exclusive property of the disclosing party; (b) it shall not use Confidential Information of the other party for any purpose except in furtherance of this Agreement; (c) it shall not disclose Confidential Information of the other party to any third party, except to its employees, officers, contractors, agents and service providers ("*Permitted Persons*") as necessary to perform under this Agreement, provided Permitted Persons are bound in writing to obligations of confidentiality and non-use of Confidential Information no less protective than the terms hereof; and (d) it shall return or destroy all Confidential Information of the disclosing party, upon the termination of this Agreement or at the request of the other party (subject to applicable law and, with respect to Company, its internal record-keeping requirements).

6.3     Notwithstanding the foregoing, Confidential Information shall not include any information to the extent it:  (a) is or becomes part of the public domain through no act or omission on the part of the receiving party; (b) was possessed by the receiving party prior to the date of this Agreement without an obligation of confidentiality; (c) is disclosed to the receiving party by a third party having no obligation of confidentiality with respect thereto; or (d) is required to be disclosed pursuant to law, court order, subpoena or governmental authority, provided the receiving party notifies the disclosing party thereof and provides the disclosing party a reasonable opportunity to contest or limit such required disclosure.

7.  **Privacy**

7.1     **Disclosure of Your Information**. Subject to applicable law, Company and its Affiliates may, but shall not be required to, provide to you, a User, an insurance company and/or relevant authorities and/or regulatory agencies any information (including personal information (*e.g.*, information obtained about you through any background check) and any Company Data) about you or any Transportation Services provided hereunder if:  (a) there is a complaint, dispute or conflict, including an accident, between you and a User; (b) it is necessary to enforce the terms of this Agreement; (c) it is required, in Company's or any Affiliate's sole discretion, by applicable law or regulatory requirements (*e.g.*, Company or its Affiliates receive a subpoena, warrant, or other legal process for information); (d) it is necessary, in Company's or any Affiliate's sole discretion, to (1) protect the safety, rights, property or security of Company or its Affiliates, the Uber Services or any third party; (2) to protect the safety of the public for any reason including the facilitation of insurance claims related to the Uber Services;  (3) to detect, prevent or otherwise address fraud, security or technical issues;  (4) to prevent or stop activity which Company or any of its Affiliates, in their sole discretion, may consider to be, or to pose a risk of being, an illegal, unethical, or legally actionable activity); or (e) it is required or necessary, in Company's or any Affiliate's sole discretion, for insurance or other purposes related to your ability to qualify, or remain qualified, to use the Uber Services. You understand that Company may retain your personal data for legal, regulatory, safety and other necessary purposes after this Agreement is terminated.

7.2     Company and its Affiliates may collect your personal data during the course of your application for, and use of, the Uber Services, or may obtain information about you from third parties. Such information may be stored, processed, transferred, and accessed by Company and its Affiliates, third parties, and service providers for business purposes, including for marketing, lead generation, service development and improvement, analytics, industry and market research, and such other purposes consistent with Company's and its Affiliates' legitimate business needs. You expressly consent to such use of personal data.

8.  **Insurance**

8.1    You agree to maintain during the term of this Agreement on all Vehicles operated by you under this Agreement automobile liability insurance that provides protection against bodily injury and property damage to third parties at levels of coverage that satisfy the minimum requirements to operate a private passenger vehicle on the public roads within the Territory. This coverage must also include any no-fault coverage required by law in the Territory that may not be waived by an insured. You agree to provide Company and its Affiliates a copy of the insurance policy, policy declarations, proof of insurance identification card and proof of premium payment for the insurance policy required in this Section 8.1 upon request. Furthermore, you must provide Company with written notice of cancellation of any insurance policy required by Company. Company shall have no right to control your selection or maintenance of your policy. You must be a named insured or individually rated driver, for which a premium is charged, on the insurance policy required in this Section 8.1 at all times.

8.2    **You agree to maintain during the term of this Agreement workers' compensation insurance as required by all applicable laws in the Territory. If permitted by applicable law, you may choose to insure yourself against industrial injuries by maintaining occupational accident insurance in place of workers' compensation insurance. Furthermore, if permitted by applicable law, you may choose not to insure yourself against industrial injuries at all, but do so at your own risk.**

8.3    You understand and acknowledge that your personal automobile insurance policy may not afford liability, comprehensive, collision, medical payments, personal injury protection, uninsured motorist, underinsured motorist, or other coverage for the Transportation Services you provide pursuant to this Agreement. If you have any questions or concerns about the scope or applicability of your own insurance coverage, it is your responsibility, not that of Company, to resolve them with your insurer(s).

8.4    Company may maintain during the term of this Agreement insurance related to your provision of Transportation Services as determined by Company in its reasonable discretion or as described in a City Addendum, provided that Company and its Affiliates are not required to provide you with any specific insurance coverage for any loss to you or your Vehicle. You are required to promptly notify Company of any accidents that occur while providing Transportation Services and to cooperate and provide all necessary information related thereto.

9.    **Representations and Warranties; Disclaimers**

9.1    **By You**. You hereby represent and warrant that: (a) you have full power and authority to enter into this Agreement and perform your obligations hereunder; (b) you have not entered into, and during the term will not enter into, any agreement that would prevent you from complying with this Agreement; and (c) you will comply with all applicable laws in your performance of this Agreement, including holding and complying with all permits, licenses, registrations and other governmental authorizations necessary to provide (i) Transportation Services using the Vehicles pursuant to this Agreement, and (ii) passenger transportation services to third parties in the Territory generally.

9.2    **Disclaimer of Warranties**. COMPANY AND ITS AFFILIATES PROVIDE, AND YOU ACCEPT, THE UBER SERVICES, DRIVER APP AND THE COMPANY DEVICES ON AN "AS IS" AND "AS AVAILABLE" BASIS. COMPANY AND ITS AFFILIATES DO NOT REPRESENT, WARRANT OR GUARANTEE THAT YOUR ACCESS TO OR USE OF THE UBER SERVICES, DRIVER APP OR THE COMPANY DEVICES: (A) WILL BE UNINTERRUPTED OR ERROR FREE; OR (B) WILL RESULT IN ANY REQUESTS FOR TRANSPORTATION

CONFIDENTIAL

SERVICES. COMPANY AND ITS AFFILIATES FUNCTION AS AN ON-DEMAND LEAD GENERATION AND RELATED SERVICE ONLY AND MAKE NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE ACTIONS OR INACTIONS OF THE USERS WHO MAY REQUEST OR RECEIVE TRANSPORTATION SERVICES FROM YOU, AND COMPANY AND ITS AFFILIATES DO NOT SCREEN OR OTHERWISE EVALUATE USERS. BY USING THE UBER SERVICES AND DRIVER APP, YOU ACKNOWLEDGE AND AGREE THAT YOU MAY BE INTRODUCED TO A THIRD PARTY THAT MAY POSE HARM OR RISK TO YOU OR OTHER THIRD PARTIES. YOU ARE ADVISED TO TAKE REASONABLE PRECAUTIONS WITH RESPECT TO INTERACTIONS WITH THIRD PARTIES ENCOUNTERED IN CONNECTION WITH THE USE OF THE UBER SERVICES OR DRIVER APP.NOTWITHSTANDING COMPANY'S APPOINTMENT AS THE LIMITED PAYMENT COLLECTION AGENT OF YOU FOR THE PURPOSE OF ACCEPTING PAYMENT FROM USERS ON YOUR BEHALF AS SET FORTH IN SECTION 4 ABOVE, COMPANY AND ITS AFFILIATES EXPRESSLY DISCLAIM ALL LIABILITY FOR ANY ACT OR OMISSION OF YOU, ANY USER OR OTHER THIRD PARTY.

9.3     **No Service Guarantee**. COMPANY AND ITS AFFILIATES DO NOT GUARANTEE THE AVAILABILITY OR UPTIME OF THE UBER SERVICES OR DRIVER APP. YOU ACKNOWLEDGE AND AGREE THAT THE UBER SERVICES OR DRIVER APP MAY BE UNAVAILABLE AT ANY TIME AND FOR ANY REASON (*e.g.*, DUE TO SCHEDULED MAINTENANCE OR NETWORK FAILURE). FURTHER, THE UBER SERVICES OR DRIVER APP MAY BE SUBJECT TO LIMITATIONS, DELAYS, AND OTHER PROBLEMS INHERENT IN THE USE OF THE INTERNET AND ELECTRONIC COMMUNICATIONS, AND COMPANY AND ITS AFFILIATES ARE NOT RESPONSIBLE FOR ANY DELAYS, DELIVERY FAILURES, OR OTHER DAMAGES, LIABILITIES OR LOSSES RESULTING FROM SUCH PROBLEMS.

10.  **Indemnification**. You shall indemnify, defend (at Company's option) and hold harmless Company and its Affiliates and their respective officers, directors, employees, agents, successors and assigns from and against any and all liabilities, expenses (including legal fees), damages, penalties, fines, social security contributions and taxes arising out of or related to:  (a) your breach of your representations, warranties or obligations under this Agreement; or (b) a claim by a third party (including Users, regulators and governmental authorities) directly or indirectly related to your provision of Transportation Services or use of the Uber Services. This indemnification provision shall not apply to your breach of any representations regarding your status as an independent contractor.

11.  **Limits of Liability.**  COMPANY AND ITS AFFILIATES SHALL NOT BE LIABLE UNDER OR RELATED TO THIS AGREEMENT FOR ANY OF THE FOLLOWING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES:  (i) ANY INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY, CONSEQUENTIAL, OR OTHER INDIRECT DAMAGES OF ANY TYPE OR KIND; OR (ii) YOUR OR ANY THIRD PARTY'S PROPERTY DAMAGE, OR LOSS OR INACCURACY OF DATA, OR LOSS OF BUSINESS, REVENUE, PROFITS, USE OR OTHER ECONOMIC ADVANTAGE. EXCEPT FOR COMPANY'S OBLIGATIONS TO PAY AMOUNTS DUE TO YOU PURSUANT TO SECTION 4 ABOVE, BUT SUBJECT TO ANY LIMITATIONS OR OTHER PROVISIONS CONTAINED IN THIS AGREEMENT WHICH ARE APPLICABLE THERETO, IN NO EVENT SHALL THE LIABILITY OF COMPANY OR ITS AFFILIATES UNDER THIS AGREEMENT EXCEED THE AMOUNT OF SERVICE FEES ACTUALLY PAID TO OR DUE TO COMPANY HEREUNDER IN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH CLAIM.

12.  **Term and Termination**

12.1    **Term**.  This Agreement shall commence on the date accepted by you and shall continue until terminated as set forth herein.

12.2     **Termination**. Either party may terminate this Agreement:  (a) without cause at any time upon seven (7) days prior written notice to the other party; (b) immediately, without notice, for the other party's material breach of this Agreement; or (c) immediately, without notice, in the event of the insolvency or bankruptcy of the other party, or upon the other party's filing or submission of request for suspension of payment (or similar action or event) against the terminating party. In addition, Company may terminate this Agreement or deactivate your Driver ID immediately, without notice, with respect to you in the event you no longer qualify, under applicable law or the standards and policies of Company and its Affiliates, to provide Transportation Services or to operate the Vehicle, or as otherwise set forth in this Agreement.

12.3     **Effect of Termination**. Upon termination of the Agreement, you shall:  (a) promptly return to Company all Company Devices; and (b) immediately delete and fully remove the Driver App from any of Your Devices. Outstanding payment obligations and Sections 1, 2.3, 2.5.3, 4.7, 4.8, 5.3, 6, 7, 9, 10, 11, 12.3, 13, 14 and 15 shall survive the termination of this Agreement.

13.  **Relationship of the Parties**

13.1     **Except as otherwise expressly provided herein with respect to Company acting as the limited payment collection agent solely for the purpose of collecting payment from Users on your behalf, the relationship between the parties under this Agreement is solely that of independent contracting parties. The parties expressly agree that:  (a) this Agreement is not an employment agreement, nor does it create an employment relationship, between Company and you; and (b) no joint venture, partnership, or agency relationship exists between Company and you**.

13.2     You have no authority to bind Company or its Affiliates and you undertake not to hold yourself out as an employee, agent or authorized representative of Company or its Affiliates. Where, by implication of mandatory law or otherwise, you may be deemed an agent or representative of Company, you undertake and agree to indemnify, defend (at Company's option) and hold Company and its Affiliates harmless from and against any claims by any person or entity based on such implied agency or representative relationship.

14.  **Miscellaneous Terms**

14.1     **Modification**.  In the event Company modifies the terms and conditions of this Agreement at any time, such modifications shall be binding on you only upon your acceptance of the modified Agreement. Company reserves the right to modify any information referenced at hyperlinks from this Agreement from time to time. You hereby acknowledge and agree that, by using the Uber Services, or downloading, installing or using the Driver App, you are bound by any future amendments and additions to information referenced at hyperlinks herein, or documents incorporated herein, including with respect to Fare Calculations. Continued use of the Uber Services or Driver App after any such changes shall constitute your consent to such changes. Unless changes are made to the arbitration provisions herein, you acknowledge and agree that modification of this Agreement does not create a renewed opportunity to opt out of arbitration.

14.2     **Supplemental Terms**. Supplemental terms may apply to your use of the Uber Services, such as use policies or terms related to certain features and functionality, which may be modified from time to time ("*Supplemental Terms*"). You may be presented with certain Supplemental Terms from time to time. Supplemental Terms are in addition to, and shall be deemed a part of, this Agreement. Supplemental Terms shall prevail over this Agreement in the event of a conflict.

14.3    **Severability**. If any provision of this Agreement is or becomes invalid or non-binding, the parties shall remain bound by all other provisions hereof. In that event, the parties shall replace the invalid or non-binding provision with provisions that are valid and binding and that have, to the greatest extent possible, a similar effect as the invalid or non-binding provision, given the contents and purpose of this Agreement.

14.4    **Assignment**. Neither party shall assign or transfer this Agreement or any of its rights or obligations hereunder, in whole or in part, without the prior written consent of the other party; provided that Company may assign or transfer this Agreement or any or all of its rights or obligations under this Agreement from time to time without consent:  (a) to an Affiliate; or (b) to an acquirer of all or substantially all of Company's business, equity or assets.

14.5    **Entire Agreement**. This Agreement, including all Supplemental Terms, constitutes the entire agreement and understanding of the parties with respect to its subject matter and replaces and supersedes all prior or contemporaneous agreements or undertakings regarding such subject matter. In this Agreement, the words "including" and "include" mean "including, but not limited to." The recitals form a part of this Agreement.

14.6    **No Third Party Beneficiaries**. There are no third party beneficiaries to this Agreement, except as expressly set forth in the Arbitration Provision in Section 15.3. Nothing contained in this Agreement is intended to or shall be interpreted to create any third-party beneficiary claims.

14.7    **Notices**.  Any notice delivered by Company to you under this Agreement will be delivered by email to the email address associated with your account or by posting on the portal available to you on the Uber Services. Any notice delivered by you to Company under this Agreement will be delivered by contacting Company at http://partners.uber.com in the "Contact Us" section. Additional Territory-specific notices may be required from time to time.

15.  **Governing Law; Arbitration**

15.1    The choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the Federal Arbitration Act. Accordingly, and except as otherwise stated in Section 15.3, the interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction.  Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services that are not subject to the arbitration clause contained in Section 15.3 shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California. However, neither the choice of law provision regarding the interpretation of this Agreement nor the forum selection provision is intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 15.3, are only intended to specify the use of California law to interpret this Agreement and the forum for disputes asserting a breach of this Agreement, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside or provide services in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 15.3 or to any arbitrable disputes as defined therein.  Instead, as described in Section 15.3, the Federal Arbitration Act shall apply to any such disputes.  The failure of Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless

acknowledged and agreed to by Uber in writing.

15.2    Other than disputes regarding the intellectual property rights of the parties and other claims identified in Section 15.3.ii, any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services shall be subject to arbitration pursuant to Section 15.3.


**15.3    Arbitration Provision**

Important Note Regarding this Arbitration Provision:

- Except as provided below, arbitration does not limit or affect the legal claims you may bring against the Company.  Agreeing to arbitration only affects where any such claims may be brought and how they will be resolved.

- Arbitration is a process of private dispute resolution that does not involve the civil courts, a civil judge, or a jury.  Instead, the parties' dispute is decided by a private arbitrator selected by the parties using the process set forth herein.  Other arbitration rules and procedures are also set forth herein.

- Unless the law requires otherwise, as determined by the Arbitrator based upon the circumstances presented, you will be required to split the cost of any arbitration with the Company.

- IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, except as provided below, pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision.  Except as provided below, this provision will preclude you from bringing any class, collective, or representative action (other than actions under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq. ("PAGA")) against the Company or Uber, and also precludes you from participating in or recovering relief under any current or future class, collective, or representative (non-PAGA) action brought against the Company or Uber by someone else.

    o    ***Cases have been filed against Company or Uber and may be filed in the future involving claims by users of the Service, including by drivers.  You should assume that there are now, and may be in the future, lawsuits against the Company or Uber alleging class, collective, and/or representative (non-***

*PAGA) claims on your behalf, including but not limited to claims for tips, reimbursement of expenses, and employment status.  Such claims, if successful, could result in some monetary recovery to you.  (THESE CASES NOW INCLUDE, FOR EXAMPLE, YUCESOY ET AL. V. UBER TECHNOLOGIES, INC., ET AL., CASE NO. 3:15-CV-00262(NORTHERN DISTRICT OF CALIFORNIA); IN RE UBER FCRA LITIGATION, CASE NO. 14-CV-05200-EMC (NORTHERN DISTRICT OF CALIFORNIA); AND O'CONNOR  V. UBER TECHNOLOGIES, INC., ET AL., CASE NO. CV 13-03826-EMC (NORTHERN DISTRICT OF CALIFORNIA).The contact information for plaintiffs' counsel in the O'Connor matter is as follows: Shannon Liss-Riordan, Lichten & Liss-Riordan, P.C., 100 Cambridge Street, 20th Floor, Boston, MA 02114, Telephone: (617) 994-5800, Fax: (617) 994-5801, email: sliss@llrlaw.com.)*

o **The mere existence of such class, collective, and/or representative lawsuits, however, does not mean that such lawsuits will ultimately succeed.  But if you do agree to arbitration with the Company, you are agreeing in advance, except as otherwise provided, that you will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative (non-PAGA) lawsuit, except as provided below.**

o **However, as discussed above and except as provided below, if you agree to arbitration, you will not be precluded from bringing your claims against the Company or Uber in an individual arbitration proceeding. If successful on such claims, you could be awarded money or other relief by an arbitrator (subject to splitting the cost of arbitration as mentioned above).**

**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION.  YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER**

**RESEARCH AND TO CONSULT WITH OTHERS — INCLUDING BUT NOT LIMITED TO AN ATTORNEY — REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.**

       i.     <u>How This Arbitration Provision Applies</u>.

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce.  This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates.  Nothing contained in this Arbitration Provision shall be construed to prevent or excuse you from utilizing any informal procedure for resolution of complaints established in this Agreement (if any), and this Arbitration Provision is not intended to be a substitute for the utilization of such procedures.

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration.  Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.  All such matters shall be decided by an Arbitrator and not by a court or judge. However, as set forth below, the preceding sentences shall not apply to disputes relating to the interpretation or application of the Class Action Waiver or PAGA Waiver below, including their enforceability, revocability or validity.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and the Company or Uber, as well as all disputes between You and the Company's or Uber's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship.  This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for individual claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

UBER-MDL3084-BW-00001509

This Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision.

Uber Technologies, Inc. is an intended, third party beneficiary of this Agreement.

ii.    <u>Limitations On How This Agreement Applies</u>.

The disputes and claims set forth below shall not be subject to arbitration and the requirement to arbitrate set forth in this Arbitration Provision shall not apply:

A representative action brought on behalf of others under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq., to the extent waiver of such a claim is deemed unenforceable by a court of competent jurisdiction;

Claims for workers compensation, state disability insurance and unemployment insurance benefits;

Regardless of any other terms of this Agreement, nothing prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs, and nothing in this Agreement or Arbitration Provision prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Arbitration Provision. Nothing in this Arbitration Provision shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration;

Disputes that may not be subject to a predispute arbitration agreement pursuant to applicable Federal law or Executive Order are excluded from the coverage of this Arbitration Provision;

Disputes regarding your, the Company's, or Uber's intellectual property rights;

This Arbitration Provision shall not be construed to require the arbitration of any claims against a contractor that may not be the subject of a mandatory arbitration agreement as provided by section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.

iii.    <u>Selecting The Arbitrator and Location of the Arbitration</u>.

The Arbitrator shall be selected by mutual agreement of the Company and you.  Unless you and the Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted.  If the Parties cannot agree on an Arbitrator, then an arbitrator will be selected using the alternate strike method from a list of five (5) neutral arbitrators provided by JAMS (Judicial Arbitration & Mediation Services).  You will have the option of making the first strike.  If a JAMS arbitrator is used, then the JAMS Streamlined Arbitration Rules & Procedures rules will apply; however, if there is a conflict between the JAMS Rules and this Agreement, this Agreement shall govern. Those rules are available here:

http://www.jamsadr.com/rules-streamlined-arbitration/

The location of the arbitration proceeding shall be no more than 45 miles from the place where you last provided transportation services under this Agreement, unless each party to the arbitration agrees in writing otherwise.

> iv.   <u>Starting The Arbitration</u>.

All claims in arbitration are subject to the same statutes of limitation that would apply in court.  The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period.  The demand for arbitration shall include identification of the Parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company or Uber shall be provided to Legal, Rasier, LLC, 1455 Market St., Ste. 400, San Francisco CA 94103.  The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

> v.   <u>How Arbitration Proceedings Are Conducted</u>.

In arbitration, the Parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver"). The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis**. **The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis.**  Notwithstanding any other provision of this Agreement, the Arbitration Provision or the JAMS Streamlined Arbitration Rules & Procedures, disputes regarding the enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, or representative  action and (2) there is a final judicial determination that all or part of the Class Action Waiver unenforceable, the class, collective, and/or representative action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

While the Company will not take any retaliatory action in response to any exercise of rights you may have under Section 7 of the National Labor Relations Act, if any, the Company shall not be precluded from moving to enforce its rights under the FAA to compel arbitration on the terms and conditions set forth in this Agreement.

**Private Attorneys General Act**.

Notwithstanding any other provision of this Agreement or the Arbitration Provision, to the extent permitted by law, (1) **You and Company agree not to bring a representative action on behalf of others under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq., in any court or in arbitration**, and (2) for any claim brought on a private attorney general basis—i.e., where

UBER-MDL3084-BW-00001511

you are seeking to pursue a claim on behalf of a government entity—both you and Company agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether you have personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other individuals in a single or collective proceeding (i.e., to resolve whether other individuals have been aggrieved or subject to any violations of law) ("PAGA Waiver"). Notwithstanding any other provision of this Agreement or the Arbitration Provision, the validity of the PAGA Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. If any provision of the PAGA Waiver is found to be unenforceable or unlawful for any reason, (1) the unenforceable provision shall be severed from this Agreement; (2) severance of the unenforceable provision shall have no impact whatsoever on the Arbitration Provision or the Parties' attempt to arbitrate any remaining claims on an individual basis pursuant to the Arbitration Provision; and (3) any representative action brought under PAGA on behalf of others must be litigated in a civil court of competent jurisdiction and not in arbitration. To the extent that there are any claims to be litigated in a civil court of competent jurisdiction because a civil court of competent jurisdiction determines that the PAGA Waiver is unenforceable with respect to those claims, the Parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

      vi.    <u>Paying For The Arbitration</u>.

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law (i.e., a party prevails on a claim that provides for the award of reasonable attorney fees to the prevailing party).  In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law. However, you will not be required to bear any type of fee or expense that you would not be required to bear if you had filed the action in a court of law.  Any disputes in that regard will be resolved by the Arbitrator as soon as practicable after the Arbitrator is selected, and Company shall bear all of the Arbitrator's and arbitration fees until such time as the Arbitrator resolves any such dispute.

      vii.    <u>The Arbitration Hearing And Award</u>.

The Parties will arbitrate their dispute before the Arbitrator, who shall confer with the Parties regarding the conduct of the hearing and resolve any disputes the Parties may have in that regard.  Within 30 days of the close of the arbitration hearing, or within a longer period of time as agreed to by the Parties or as ordered by the Arbitrator, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief.  The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision.  The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.  A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.  The Arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

### viii.     Your Right To Opt Out Of Arbitration.

Arbitration is not a mandatory condition of your contractual relationship with the Company.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (*e.g*, UPS, Federal Express, etc.), or by hand delivery to:

> Legal
> Rasier, LLC
> 1455 Market St., Ste. 400
> San Francisco CA 94103

In order to be effective, the letter under option (2) must clearly indicate your intent to opt out of this Arbitration Provision, and must be dated and signed. The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you.  Your writing opting out of this Arbitration Provision, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company.  Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of your choice concerning this Arbitration Provision.  You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.

### ix.     Full and Complete Agreement Related to Formal Resolution of Disputes; Enforcement Of This Agreement.

This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement.  Except as stated in subsection v, above, in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

By clicking "I accept", you expressly acknowledge that you have read, understood, and taken steps to thoughtfully consider the consequences of this Agreement, that you agree to be bound by the terms and conditions of the Agreement, and that you are legally competent to enter into this Agreement with Company.