## VGM Buggy Mobility LLC DBA UCARS

## COMMERCIAL VEHICLE SHORT-TERM RENTAL AGREEMENT

**THIS COMMERCIAL VEHICLE SHORT-TERM RENTAL AGREEMENT** (the "Agreement") is made and entered as of **10/03/23 03:40PM** ("Effective Date") by and between Fast Track Leasing, LLC, a New York limited liability company and VGM Buggy Mobility LLC, a New York limited liability Company, (jointly and severally: the "Company"), maintaining an address at 445 Empire Boulevard, Brooklyn, NY 11225 and an email service@ucarsaz.com, on one hand and **HASSAN IBRAHIM TURAY** residing at **8721 N 69TH AVE APT 130  Peoria AZ 85345** hereinafter jointly and severally referred to as ("Renter" or "Driver"), on the other hand. The Renter and the Company are sometimes referred to herein collectively as "Parties" and individually as a "Party".

### RECITALS

**WHEREAS**, the Company is the owner of a certain passenger car (the "Vehicle") as described on "Exhibit A" attached hereto and made part hereof, and

**WHEREAS**, Renter is a driver specifically approved by Uber Technologies, Inc., or an affiliate thereof ("Uber") to perform certain services subject to the terms and conditions set forth by Uber, and as stated in a separate agreement between Driver and Uber (the "Uber and Driver Agreement");

**WHEREAS**, Renter desiring to rent a vehicle under the terms and conditions as hereinafter specified acknowledges that the Vehicle is in good working order, free of any damages other than as indicated on "Exhibit C" attached hereto and made a part hereof;

**WHEREAS,** Renter wishes to rent the Vehicle for the sole purpose of using the Vehicle for carrying passengers for hire under the terms of the Uber and Driver Agreement and under the terms and conditions as hereinafter specified.

**NOW, THEREFORE**, in consideration of the foregoing premises, the mutual covenants and agreements contained herein and in any accompanying documents, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto hereby agree as follows:

1. **RENTAL TERM AND PAYMENT AMOUNTS.**
   The rental terms and payment amounts are set forth below and in "Exhibit B" attached hereto and made a part hereof.

2. **REPRESENTATIONS.**
   Driver represents, warrants and covenants to the Company that Driver has all licenses, permits and approvals required to perform the for hire services related to the transportation of commercial passengers or delivery or ancillary services under the Uber platform and that Driver will perform such services in accordance with, all applicable policies, procedures, standards, codes of conduct, and other terms and conditions of Uber and the Company, and all applicable laws, regulations, permits, licenses, administrative pronouncements and court rulings, including without limitation: (i) those governing transportation network companies and drivers utilizing their platforms; (ii). those governing the provision of for hire transportation services at airports; and (iii). those prohibiting discrimination or harassment against any individual by reason of race, creed, color, age, physical or mental disability, national origin, sex, union membership, or any characteristic protected by law, or against any individual who has a visual, hearing or mobility impairment or uses a service animal.

Agreement Id: FHVNAT64062

Trial Exhibit No.

**P-04510**

3.    **GENERAL RENTAL PROVISIONS.**

a)    <u>Rental of Vehicle; Termination of Rental Term</u>. This Agreement creates a rental of the Vehicle only for the rental Term set forth in Exhibit "B" attached hereto and made part hereof. Notwithstanding anything to the contrary herein contained, the Company may terminate this Lease at any time, with or without cause, including for the convenience of the Company, upon 24 hours advance notice and, in such event, the Vehicle must be returned at the expiration of such 24 hours as if that time was the natural expiration of the Term ("<u>Unilateral Termination</u>"). The Driver may terminate the Rental Term under this Agreement subject to seven (7) day advance notice to Company. This Agreement does not create a sale thereof or the creation of any other interest therein by Renter or transfer title to the Vehicle. Renter shall not permit, through any action or inaction by Renter, any liens or encumbrances on the Vehicle (notwithstanding any liens and encumbrances the Vehicle is subject to as of the Effective Date of this Agreement) and any liens or encumbrances on the Vehicle caused by the Renter, shall result in an immediate breach and termination of this Agreement. Renter acknowledges that it will not be treated as the owner of the Vehicle for federal income tax or any other purposes.

b)    <u>Additional Rent</u>. Renter, in addition to renting the Vehicle, desires the Company to provide the following optional items, indicated by placing his or her initials adjacent to each item below. The additional items will be termed as "Additional Rent" hereinafter. The payment amounts of each additional optional item, as well as additional terms and agreements, are set forth on "Exhibit B" attached hereto and made a part hereof. The following are the additional items:

*HT*            (i) Collision and Damage Insurance. The Company shall assume all obligations to repair (only at the Repair Shop, as defined below) damages to the Vehicle caused by an event customarily covered by full coverage collision and damage insurance, with the Driver assuming the responsibility to pay only the first $1,000.00 per any occurrence, unless the driver has signed up for the Deductible Waiver and is current on all of the payments required hereunder, in which case the Driver will be subject to the terms of the Deductible Waiver Agreement with regard to collision and damage liability.

*HT*            (ii) Deductible Waiver. The Company shall assume the obligation to pay Driver's deductible, pursuant to the terms of a separate Deductible Waiver Agreement.

*HT*            (iii) Subrogation Fee. The Company will charge the Renter a Subrogation Fee to pursue any and all third-party claims on behalf of the Renter.

*HT*            (iv) Energy and Licensing Fee. The Company will charge a Fee for all charges relating to energy and licensing expenses.

c)    <u>Vehicle Use.</u> Renter will rent the Vehicle for the primary purpose of business and commercial use as a commercial car rental for carrying commercial passengers for hire, in exchange for monetary value, as part of the services provided by the platform of Uber ("Permitted Use"), all in strict conformity with all the applicable driver rules and regulations of local, state and federal laws. Renter is specifically forbidden to use the Vehicle for any other purpose other than the Permitted Use, including, but not limited to (i) for any street hails of any nature at any time, or (ii) for Renter's personal use as a primary purpose of the Vehicle rental (other than personal use incidental to the Permitted Use). Subject to the foregoing, and any other terms and conditions hereof, the Renter shall have full and sole responsibility for the management of Renter's operation of the Vehicle.

d)    <u>Control of Vehicle.</u> The Vehicle rented herein shall be at all times **under the sole and absolute control of Renter**, subject to the rights of the Company as provided herein, shall be used only for the Permitted Use and **no other third person or entity shall be permitted to operate the Vehicle** or conduct any business therewith without the express written permission of the Company (any use of the Vehicle, by Renter or any other person, other than Permitted Use by the Renter, shall be defined as "<u>Unauthorized Use</u>"). Renter shall be responsible for all charges, fees or costs associated with any Unauthorized Use and upon a breach of this <u>Section 3(d)</u>, Renter will

Agreement Id: FHVNAT64062

indemnify, defend and hold harmless, the Company and the Company's affiliates, and their respective owners, officers, members, managers, employees, agents, consultants, professional advisors and representatives (any or all of the foregoing, "Indemnitees") from and against, to the fullest extent permitted by law: (a) all claims, actions, suits, proceedings, costs, expenses, damages, losses and liabilities, including without limitation attorneys' fees and disbursements, arising out of, in connected with, relating to or resulting from the Unauthorized Use of the Vehicle; (b) all loss and damage to each Vehicle during any Unauthorized Use of the Vehicle; (c) all costs and expenses incurred by the Company in performing any obligation of Renter under the Agreement or relating to any Vehicle as a result of the Unauthorized Use of the Vehicle; and (d) The Company's assessment or exercise of any right or remedy under the Agreement or otherwise after any default by Renter, whether or not the default has been formally declared or a lawsuit has been instituted including without limitation the third-party invoiced repossession cost of repossessing or repairing any Vehicle and collecting any sums owed by Renter in connection with the Unauthorized Use of the Vehicle.

e)    Rental Payment Obligations. Upon acceptance of the Vehicle, the obligation of Renter to pay the initial Rent payment and weekly or daily payments set forth on "Exhibit B" hereof for the Term hereunder is absolute and unconditional unless the Company exercises its right to a Unilateral Termination. The payments consist of "Rent" for the Vehicle, any "Additional Rent" the Renter has chosen to add, and any fees ("Fees") described in this Agreement. For purposes of this Agreement, "Rent" is the gross weekly payment due and owing by Renter to Company for the right to operate the Vehicle, and "Additional Rent" are the optional items the Renter has chosen for the Company to provide as identified above.  The "Rent", "Additional Rent" shall be paid by Renter on a weekly basis as described in "Exhibit B" and otherwise herein.

f)    Payment; Security Deposit. Renter shall make timely each payment of Rent, any Additional Rent, and any Fees becoming due under this Agreement in immediately available funds on the schedule as set forth on "Exhibit B", or as separately invoiced as described in this Agreement. Upon execution of this Agreement, Renter shall deposit with Company an initial security deposit of an amount as set forth on "Exhibit B" (the "Security Deposit"). Said Security Deposit shall be held by Company in order to secure Renter's performance of all its obligations hereunder. The parties herewith further agree that in no event shall said Security Deposit be intended to limit or otherwise establish the measure of Renter's liability or the Company's damage under any of the terms hereunder or the Renter's use of the Vehicle, and should any default by Renter hereunder continue for one (1) day, Company in its sole discretion, may apply such sums as necessary from said Security Deposit to remedy any default by Renter hereunder. Said Security Deposit may be used to pay, delinquent Rent, any Additional Rent payments, and any Fees; any sales, use, or excise taxes, fines or other penalties incurred; repossession fees and/or legal costs, expenses and attorneys' fees incurred by Company in the enforcement of this Agreement; or payments or obligations due or reimbursement for any other damages sustained by Company, including physical damage to the Vehicle or liability incurred in connection with the use thereof. In the event that Company in its sole discretion makes application of any amounts of said Security Deposit to any of Renter's financial obligations referred to above, Renter shall deposit with Company upon demand made, such amounts as are necessary to restore the amount of the Security Deposit to its original amount. Failure by Renter to maintain said Security Deposit in the amount listed herein shall constitute a default by said Renter of this Agreement and a breach thereof entitling Company to the exercise of all available remedies hereunder.

Provided Renter is not in default, as defined herein, the Company agrees that it will return to Renter, within thirty (30) days of the termination of this Agreement, the amount of the Security Deposit less any amounts remaining due and owing Company by Renter under this Agreement or any other agreements with Company or its affiliates. Return of the Security Deposit is further conditioned upon Renter returning the Vehicle in the condition called for in Section 3. Any deduction for repairs or substandard return condition shall be made at the rates determined by the Company's retail shop.

Agreement Id: FHVNAT64062

Driver must provide details of a valid credit card to the Company. Driver may elect to provide details of a debit card to the Company in addition to Driver's credit card. Rent, Additional Rent and Fees shall be paid to Company either through Credit Card or debit card. Payments received by Company from or on behalf of Renter shall be applied first to any Additional Rent, second to Rent and third to Fees. The Renter shall be charged a $30.00 administrative fee ("Disputed Payment Fee") for any credit card payment or other form of payment from a Financial Account that does not clear due to it being disputed by the Renter. Renter shall be further charged a Fee equal to $12 per day for any day following the due date in which Renter's Credit Card attempted charge by the Company was declined, and until the amount due was paid in full ("Declined Credit Card Charge").

**The Renter authorizes the Company, without further notice, to collect the Rent, Additional Rent, and any other Fees, by charging the credit card, debit card or any of the financial accounts (each a "Financial Account") that Renter has designated for payment, immediately when such Rent, Additional Rent, and any other Fees, becomes due. In the event payment is returned or declined, Renter authorizes Company to resubmit the charge together with any applicable Fees. Any processing fee associated with the Financial Account (including, but not limited to, currency conversion fees, insufficient fund fees, reversal fees, or overdraft fees) are the responsibility of Renter and if Company shall be charged with any such fees, Renter shall reimburse the Company for such charge. Renter acknowledges, represents and warrants that Renter is an account holder on each Financial Account that Renter has designated for immediate payment and Renter has actual authority to use each Financial Account, including without limitation, a credit card, debit card or any other payment method with which Renter's payments (including without limitation, Rent, Additional Rent, and any other Fees) are to be made. Renter may update each Financial Account or cancel Renter's authorization at any time by providing written notice to the Company. Renter authorizes Company to receive automatic updates of each Financial Account information from the financial institution in order to keep the payment information current.**

In the event that a payment was denied, disputed, or if the Renter failed to timely make such payment, within 24 hours of the time such payment was due, the Renter must (i) pay the delinquent amount, together with any other outstanding Rent, Additional Rent and Fees; or (ii) return and surrender the Vehicle to the Company. Renter acknowledges and agrees that in the event Renter's account is delinquent for more than 24 hours or if Renter otherwise breached his obligations under this agreement, the Company, at its sole and absolute discretion, may send commands to the Vehicle through a remote system to deactivate the Vehicle, lock the vehicle or otherwise cause the Vehicle to be inoperable. Renter hereby expressly agrees to allow the Company to access the Vehicle remotely and perform such actions as set forth herein.

g)    Toll Pass Account and Tag. Renter shall have a valid and existing account to pay tolls in Renter's name, as applicable in the State (as defined in Exhibit B), at all times during the Term ("Toll Pass"). Renter shall at all times during the operation of the rented Vehicle have the Toll Pass tag connected to the Renter's Toll Pass account visible and positioned to pay tolls. If the Renter passes through a toll and the Renter's Toll Pass does not pay the applicable toll for any reason and the Vehicle is charged with the toll, then the Company shall pay the toll on behalf of the Renter and will charge the Renter the applicable toll fees paid plus an Administrative Fee of $5.00 per day, for each day that toll is paid by the Company on Renter's behalf.

h)    Summons Fines and Violations. Renter shall promptly pay any and all summons, fines and violations written in the name of the Renter from any regulatory agency or governmental body relating to the operation of the Vehicle. If any summons or violation for a parking ticket or red-light violation are issued to the Company, Renter shall pay Company the full amount thereof together with an administrative fee of $10.00. If any summons or violation for a parking ticket or red-light violation are transferred by Company to the Renter during the Term of this Agreement, the Renter shall pay the amount of the assessed fine directly to the ticketing authority and pay the Company the administrative fee of $10.00. All charges will be invoiced separately, for each such summons and/or violation as part of Renter's Fees, payable with the Rent, together with the next payment of Rent due to Company hereunder. For all tickets not transferred to the Renter, the Company may pay the violation fee to the

Agreement Id: FHVNAT64062

appropriate authority and If the Company paid such violation,  the Renter will reimburse the Company with the amount paid, together with the administrative fee, with the next Rent payment but in any event within not less than 5 business days from the date the Company made such payment.

i)　　Maintenance/Repairs. Renter shall keep and maintain the Vehicle in the same condition as delivered to Renter and shall take any other actions necessary to ensure that the Vehicle is suitable for use to operate for the Permitted Use and in accordance with all local, state and federal laws; except that the Company shall be responsible for all service of the Vehicle, inclusive of regular maintenance checks as recommended by the manufacturer; provided, however, Renter is required to bring the Vehicle in for scheduled service as instructed by the Company.  Additionally, Renter shall be fully responsible for the cost of repairs and maintenance, mechanical or otherwise occasioned by collision or casualty, including, the replacement of all parts and equipment of the Vehicle resulting from or otherwise arising out of the negligence, carelessness, willful misconduct of the Renter, or it being operated by under the influence of (or while intoxicated by) alcohol, any drug (whether or not prescribed by a physician) or any other controlled substance by Renter or any Unauthorized User, or it being operated by any third person not authorized hereunder to operate the Vehicle or in the event of an Unauthorized Use. Renter agrees that in the event of a collision, Renter is responsible to take all measures to minimize any additional damage to the Vehicle (By way of example only, Renter shall not continue to drive the Vehicle when a collision has rendered the Vehicle inoperable or in a condition that could cause further damage). Any such additional damage will be fully the responsibility of Renter. In the event of any payment(s) hereunder, Company shall be subrogated to all of Renter's rights of recovery therefore against any person or organization, and Renter shall execute and deliver instruments and papers and take any necessary action to secure such rights.

j)　　Repair Shop and Notification. Renter shall inform the Company immediately of any required repair to the Vehicle.  The Company shall designate a repair shop (including its own or that of an affiliate) which shall perform any and all required repairs to the Vehicle (the "Repair Shop") and the Renter must deliver the Vehicle to the Repair Shop or call the Company to have the vehicle towed, in the event the Vehicle requires a repair. If the tow is from (i) outside of the Repair Shop service area (as designated by the Repair Shop), or (ii) outside of the Towing Zone set forth in Exhibit B, the Renter will be responsible for the towing fee, to the Repair Shop, as charged by the towing service. The failure of paying the towing fee shall relieve the Company of its obligations to pay for such required repairs, even if the Renter has Collision and Damage Insurance available hereunder. In the event of collision or casualty loss, Renter shall immediately notify in writing: (1) the Company's insurance carrier all Collisions that are required to be reported to the insurance carrier; (2) all Collisions that are required to be reported to the DMV, or other governmental agencies under local, state and federal laws; and (3) the Company of any collision, theft, loss or casualty affecting the Vehicle and disclose to the Company the extent of damage. In the event of a collision, Company shall cause such damage to be repaired according to manufacturer specifications at facilities designated by the Company.

k)　　Vehicle Return. Renter covenants and agrees to return the Vehicle to Company in the same condition as delivered. In the event the Vehicle was not returned in the same condition as delivered, Renter shall pay Company, as fees, the cost to repair or replace the Vehicle, or otherwise compensate the Company for loss damage in and to the Vehicle. Without limiting the foregoing, Renter agrees to be financially responsible for any and all damages to the Vehicle, which are outside of the normal wear and tear caused by the operation and use of the Vehicle for the Permitted Use, including but not limited to WAV equipment. If Renter has chosen for the Company to provide liability insurance, Renter's liability for physical damage to the Vehicle as a consequence of a collision shall be limited to the deductible amount set forth on "Exhibit B" attached hereto, except for damages arising out of the negligence, carelessness, willful misconduct of the Renter, or it being operated under the influence of (or while intoxicated by) alcohol, any drug (whether or not prescribed by a physician) or any other controlled substance, or it being operated by any third person not authorized hereunder to operate the Vehicle or it being operated for Unauthorized Use.

Agreement Id: FHVNAT64062

l) **Company Inspection.** Company is hereby given the absolute and unfettered right, but not the duty to inspect the Vehicle on Company's premises, or at Company's discretion, at the premises of its approved automotive service provider, wherever located, or at any other location, upon 24 hours advance notice to the Renter. In the event that Company determines that Renter is not maintaining the Vehicle in good operating condition, or does not make the Vehicle available for inspection as provided herein, the Company may demand that the renter immediately deliver the Vehicle to the Company's or its approved automotive service provider's premises, without the need for 24 hours advance notice.

m) **Information/Consumer Reporting.** Renter agrees, upon Company's request, to furnish Company with Renter's most recent credit information and any other matters relating to the use and operation of the Vehicle as may, in the reasonable judgment of Company, be pertinent. Renter hereby instructs that all consumer reporting agencies provide Company consumer reports regarding Renter. Renter acknowledges that Company may use credit reports, release information, and other credit and employment history to review a current account, reinvestigate credit, monitor this Agreement or the Vehicle, for collection, or for marketing to the full extent permitted by law without any requirement for Company to specify a particular purpose.

n) **Limitation on Use within the Metro Area and the State**. **Renter may use and operate the Vehicle only within the Metro Area described in Exhibit B**; and  (ii) only within the State (as defined in Exhibit B), provided, however, that if Renter is picking up an Uber passenger, who requested a ride with a drop off outside of the Metro Area (but within the State), Renter may drive outside of the Metro Area to drop off such passenger and return immediately to the Metro Area without picking up any new passengers, or otherwise extending the drive, outside of the Metro Area.  In the event Renter violates the limitation set forth in this Section, the Renter shall be liable for an out of area fee of $100 per day, and may be required to appear for a  vehicle inspection at a location designated by the Company. If the Driver fails to appear for such inspection, in addition to any other remedy that the Company may have,  the Company, at its sole and absolute discretion, may send commands to the Vehicle through a remote system to deactivate the Vehicle, lock the vehicle or otherwise cause the Vehicle to be inoperable or disabled. Renter hereby expressly agrees to allow the Company to access the Vehicle remotely and perform such actions as set forth herein.

o) **Warranties.** COMPANY MAKES NO WARRANTY, REPRESENTATION, OR GUARANTEE, EXPRESS OR IMPLIED, WRITTEN OR ORAL, OF MECHANICAL CONDITION, RELIABILITY, CAPACITY, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE WHATSOEVER. THE VEHICLE IS RENTED AND ACCEPTED BY RENTER STRICTLY "AS IS". COMPANY SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND ANY LIABILITY FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE VEHICLE. FURTHER, RENTER SPECIFICALLY ACKNOWLEDGES THAT IT HAS HAD FULL OPPORTUNITY TO INSPECT SAID VEHICLE TO ITS FULL AND COMPLETE SATISFACTION AND IT IS FURTHER AGREED BETWEEN THE PARTIES HERETO THAT NO ORAL REPRESENTATIONS OR STATEMENTS MADE BY COMPANY SHALL BE BINDING UPON COMPANY OR FORM A PART OF THIS AGREEMENT OR IN ANY MANNER BE INCORPORATED HEREIN. COMPANY SHALL BE DEEMED TO HAVE FULLY PERFORMED ITS OBLIGATIONS UNDER THIS AGREEMENT AT THE TIME THE VEHICLE IS DELIVERED AND ACCEPTED BY RENTER.

**To the extent permitted by law, Renter waives the right to (i) repudiate the Agreement; (ii) reject the Vehicle; (iii) revoke acceptance of the Vehicle; (iv) recover damages from Company for breaches of warranty or any other reason; (v) grant a security interest in the Vehicle to a third party; (vi) deduct from Rent, Additional Rent and Fee payments all or any part of any claim damages resulting from Company's default, if any.**

p) **Operation.** ONLY RENTER SHALL OPERATE THE VEHICLE. RENTER SHALL OPERATE THE VEHICLE IN COMPLIANCE WITH ALL APPLICABLE LAWS, RULES AND REGULATIONS, INCLUDING BUT NOT LIMITED TO ANY STATE, LOCAL OR MUNICIPAL LAWS REGULATING FOR-HIRE- VEHICLES, DEPARTMENT OF TRANSPORTATION,

ENVIRONMENTAL AND MOTOR VEHICLE REGULATIONS. RENTER SHALL NOT TRANSPORT ANY HAZARDOUS MATERIALS OR CONTROLLED SUBSTANCES HOWEVER DEFINED.

q)    Assignment. Renter shall not assign or sublet any interest or right in the Agreement or in the Vehicle or permit any Vehicle to be used by anyone other than Renter, without the Company's prior written consent, which may be withheld for any reason or no reason at all. The Company will require any proposed assignee or sublessee to agree and consent to the terms and conditions of this Agreement. Any assignment or sublet in violation of this provision shall be void and of no force and effect. Should Company discover or otherwise obtain a reasonable basis to believe that the Renter has assigned this Agreement or sublet the subject Vehicle to any third party, Company shall have the unequivocal and unlimited right to immediately repossess the Vehicle, in addition to all other available remedies. The Company reserves the right to assign this Agreement and this Agreement shall remain in full force and effect following assignment by Company. Company may assign this Agreement or grant a security interest in the Vehicle, or both, in whole or in part, without notice to Renter. Renter agrees to subordinate any leasehold interest in the Vehicle if requested by Company. If Renter is given notice of such assignment, if requested, it shall acknowledge receipt of that notice in writing and follow the payment directions in such notice. Each assignee or grantee shall have all of the rights but none of the obligations of Company (provided such assignee is a financial company) under this Agreement and Renter shall not assert against any subsequent assignee and/or grantee any claim, defense, counterclaim or offset that Renter may have against the Company.

r)    License and Registration Fees. If required by applicable state law, Company will register title of the Vehicle with the laws of the State in which Renter will principally operate the Vehicle as set forth on "Exhibit A" listing Company as owner and having said title delivered to Company.

s)    Taxes. Renter will be responsible for the payment of, and indemnify Company for and hold Company harmless from and against, all taxes, charges, assessments, or fees, together with any penalties, fines, or interest thereon, arising out of (i) this Agreement and transactions contemplated by this Agreement; (ii) the possession, leasing, use, operation, or return of the Vehicle; or (iii) the Rent, Additional Rent and Fees payments, receipts, or earnings arising therefrom, regardless of whether such taxes, levies, imposts, duties, charges, assessments, fees, withholdings, or penalties, fines or interest are, by law or otherwise, imposed against Company, Renter, or the Vehicle, including, any and all titling, registration, documentation, and leasing fees and taxes, sales taxes, use taxes, personal property taxes, ad valorem taxes, state, county, municipal, or other property taxes, excise taxes, and other taxes of every kind or nature. If the legal obligation for any of the taxes referenced above or other charges is imposed upon Company, same shall be deemed Fees hereunder, separately invoiced, and payable by Renter to Company on demand. Renter's obligations under this paragraph are absolute and shall survive the termination and/or the completion of this Agreement, irrespective of the date such taxes are determined to be owing. Renter shall not, however, be obligated to pay any taxes on or measured by Company's net income. Renter further agrees to comply with all state or local laws requiring the filing of ad valorem, property, or other tax returns with respect to the Vehicle.

t)    Performance by Company. If Renter shall fail to duly and promptly perform any of its obligations under this Agreement with respect to the Vehicle, Company may, at its option, but without the duty to do so, perform any act or make any payment, which Company deems necessary for the maintenance and preservation of the Vehicle and Company's title thereto, including payments for satisfaction of liens, repairs, taxes, fines, levies and insurance. All sums so paid or incurred by Company, together with interest thereon at ten percent (10%) per annum, and all legal fees incurred by Company in connection therewith, shall be Fees under this Agreement and payable by Renter to Company. The performance of any act or payment by Company as aforesaid shall not be deemed a waiver or release of any obligation or default on the part of Renter, all of Company's remedies being cumulative.

Agreement Id: FHVNAT64062

u) Power of Attorney. Renter hereby appoints Company as Renter's Attorney-in-Fact to execute and deliver proofs of claim, receive payments, endorse checks and other documents, and to take actions necessary to pursue insurance claims and recover payments. Renter hereby irrevocably appoints Company as Renter's attorney-in-fact to execute, apply, amend, file, or take necessary action to confirm or perfect Company's security interest in the equipment. Before distributing recovered payments, if any, to Renter, the Company has the right to offset costs and expenses associated with pursuing claims, perfecting title, and recovering payments. Renter agrees that as driver and operator of the Vehicle, Renter shall be permitted to accept service of summonses or Commission notices, but shall notify the Company immediately of such service of each summons or Commission notice.

v) Agreement to Replace Lost or Misplaced Documents and to Correct Misstated or Inaccurate Documents. Regardless of the reason for any loss, misplacement, or inaccuracy in any document evidencing and/or securing this Agreement, Renter agrees to execute and/or initial and deliver any and all "Replacement Documents" as defined in this paragraph. Renter agrees to deliver to Company any documents Company deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). The documents Company requests Renter to execute and/or initial and deliver pursuant to this paragraph shall hereinafter be referred to as "Replacement Documents". Renter agrees to deliver the "Replacement Documents" within ten (10) days after receipt by Renter of a written request from Company for them.

w) Lost Key. In the event Renter loses the key of the Vehicle, Renter will be charged a three hundred dollar ($300.00) administrative fee for a replacement key.

x) No Smoking or Vaping in Vehicle. In the event that Renter is found to have allowed smoking or vaping in the Vehicle, Renter will be charged a $250.00 administrative fee for cleaning services.

y) Driver Behavior and Activities. Renter agrees that as driver of the Vehicle, Renter shall comply at all times with local, state and federal rules, laws and regulations, as amended, applicable to drivers carrying passengers for hire. Renter shall further comply with all terms imposed by Uber applicable to Uber drivers. This includes, but is not limited to:

1. Maintenance of a valid state-issued license or equivalent at all times during the rental. Renter will immediately report to the Company loss or misplacement of license document. The original state-issued license of Renter may be demanded by the Company at any time for review, without prior notice and upon such demand, Renter must present Renter's license to the Company.
2. Renter will report to the Company immediately if any Vehicle equipment or items are broken, inoperable, missing, or damaged. The Company may at any time after such report, direct that the Vehicle be returned or sent for maintenance to correct the reported conditions and Renter shall immediately comply with such demand.
3. Renter will not at any time move, remove, deface, or alter any marking, decal, certificate or license plate issued by Department of Motor Vehicles or other government entity. Doing so is immediate default of the Agreement, and will result in a fine/fee of $1,500, and may subject Renter to penalties provided by law.
4. Renter will not bribe or offer gratuity, or attempt to offer bribe or gratuity to any public servant. Any demand by public official for bribe or gratuity will be reported immediately to the Company and relevant governmental entity.
5. Renter must not commit or attempt to commit, alone or in concert with another, any act of fraud, misrepresentation or theft.
6. Renter agrees not to harass, threaten, or abuse any person while using Vehicle, whether on duty or not.
7. Renter agrees not to use physical force against any person while using Vehicle, whether on duty or not.
8. Renter agrees to not distract, harm or use physical force against or attempt to distract, harm or use physical force against a service animal accompanying a person with a disability.

Agreement Id: FHVNAT64062

9.  Renter agrees to cooperate with all law enforcement officers and all authorized representatives.
10. Renter agrees to be courteous to passengers at all times while using Vehicle.
11. Renter will not sexually harass passengers while using Vehicle.
12. Renter will not engage in sexual activities of any kind in the Vehicle.
13. Renter agrees that the Vehicle will not be used at any time to engage in criminal conduct, including, but not limited to, participation in sex trafficking.
14. Renter agrees to obey all traffic laws and drive in a safe and courteous manner.
15. Renter agrees that they will not engage in conduct likely to create a nuisance, such as engaging in excess horn honking, littering, or playing loud audio material.
16. Renter will not make any alterations of any kind to the Vehicle, including adding equipment of any kind, without the express written permission of the Company.
17. Renter will immediately report defective seat belts to the Company.
18. Renter will immediately report defective air conditioning or heating equipment to the Company.
19. Renter agrees to never engage in unlicensed or unauthorized for-hire activity using the Vehicle.
20. Renter agrees to conform to any additional requirements or rules imposed by Uber and the Company.
21. Renter agrees to follow any new relevant laws and rules enacted or enforced after the signing of this contract, even if not specifically enumerated in this contract.
22. Renter agrees to not use the Vehicle to transport passengers in excess of ten (10) hours per twenty-four (24) hour period and not more than sixty (60) hours per seven-day period, which seven day period shall commence on Monday and terminate on Sunday.
23. Other than for use of the Uber driver application, Renter agrees to refrain from the use of a telephone or other handheld electronic device while operating the Vehicle unless parked or standing.
24. Renter agrees not to smoke or vape in the Vehicle.
25. Renter agrees not to lock the rear doors of the Vehicle when there is a passenger present, unless the passenger requests it or the Vehicle automatically locks the rear doors of the Vehicle when driving commences.
26. Renter agrees to comply with all reasonable passenger requests.
27. Renter agrees not to carry or transport weapons of any kind in the Vehicle.

4.  **RISK OF LOSS AND DESTRUCTION OF VEHICLE.**

a)      The Company shall not be responsible for loss or damage to property or other materials belonging to the Renter, its agents, employees, suppliers, or anyone directly or indirectly in the Vehicle at any time during the Term or upon its return to, or repossession by, the Company. The Renter is encouraged to obtain appropriate personal property insurance against such risk of loss. The Renter waives all rights of subrogation against the Company for such losses.

b)      During the Term of this Agreement, the Renter assumes and bears the risk of loss for the Vehicle arising out of the negligence, carelessness, willful misconduct of the Renter, or it being operated under the influence of (or while intoxicated by) alcohol, any drug (whether or not prescribed by a physician) or any other controlled substance, or it being operated by any third person not authorized hereunder to operate the Vehicle. Renter hereby assigns to Company all Renter's rights under any policy of insurance and agrees that Company shall be entitled to the full amount of any and all insurance proceeds. Nothing contained herein shall be construed to relieve Renter from any obligations otherwise set forth in this Agreement.

c)      In the event Renter is involved in two (2) motor vehicle collisions (inclusive of crashes with pedestrians), during the Term, the Agreement may be immediately terminated by the Company. All past due Rent, any Additional Rent, and any Fees shall be immediately due and owing to Company upon such termination.

d)      In the event that there is an insurance claim pending pertaining to the use of the Vehicle by Renter, Renter must provide to the Company and the insurance carrier promptly detailed information pertaining to the

Agreement Id: FHVNAT64062

incident, including, but not limited to, whether the incident occurred when Driver was using the Vehicle (i) while the Uber application was off, (ii) while the application was on and Driver was waiting for a ride request, (iii) while the request was accepted but the passenger did not yet occupy the car; or (iv) while a commercial passenger was occupying the car.

5.    **DEFAULT**

a) The following events shall constitute an "Event of Default":

   i. Renter shall default in the payment when due of Rent, Additional Rent and any Fees, or any other amount due under this Agreement, or any amendment hereof, or other agreements between Renter with Company or any of its affiliates, time being of the essence for each such payments pursuant to the deadlines of each such payment as defined in this Agreement; or

   ii. Renter shall cease to be affiliated with Uber for any reason; or

   iii. Renter shall default in the performance of any other covenant in this Agreement or any other agreement between Renter and the Company or any of its affiliates, pursuant to the terms of this Agreement or any other agreement, as applicable; or

   iv. Any material misrepresentation made by the Renter to the Company at any time; or

   v. The suspension or closure of any Financial Account from which the Company was theretofore authorized by the Renter to make credit/debit card collection, without (I) prior written notice to the Company and (II) the Renter having provided a reasonably acceptable alternative account or credit/debit card to the Company which shall serve as a source of payment under this Agreement; or

   vi. Company deems, in its sole and exclusive discretion and notifies the Renter of such determination, that the condition of the Vehicle or the continued use and/or operation of the Vehicle by Renter to be unsafe or insecure; or

   vii. Company determines, in its sole and exclusive discretion and notifies the Renter of such determination, that Renter's continued operation of the Vehicle presents a risk of harm to passengers or other vehicle operators (by way of example only and without limiting the foregoing, if the Renter appears to be intoxicated, then the Company can declare an Event of Default by giving immediate notice to the Renter); or

   viii. The insolvency or bankruptcy of the Renter, the commencement of a voluntary or involuntary bankruptcy proceeding by or against the Renter, or the subjection of any of the Renter's property to any levy, seizure, assignment, application, or sale for or by any creditor or government agency; or

   ix. Any material damage to, or seizure of, the Vehicle or legal action brought against the Company as a result of the Renter's use, operation, or maintenance of the Vehicle in a manner other than in strict conformity with this Agreement; or

   x. The suspension or revocation of the Driver's license(s) issued by the DMV or the suspension or revocation of any other license required by any governmental authority to operate the Vehicle; or

   xi. Renter is charged with or arrested for any criminal offense, including a misdemeanor; or

   xii. The Vehicle is lost, stolen, or determined by Company to be unsuitable for use to operate on the Uber platforms or Renter fails to permit its inspection by the Company, or deliver same to the Company or its approved automotive service provider for such purposes, as and when required hereunder; or

   xiii. If Renter does not commercially operate the Vehicle pursuant to the intended purpose under this Agreement; or

Agreement Id: FHVNAT64062

      xiv. If Renter makes to the Company or any of its employees, principals, agents or representatives, any threatening, abusive, intimidating, or other statements which make such individuals feel uncomfortable or unsafe; or

      xv. Fails to immediately return the Vehicle to the Company upon the expiration of the Term of this Agreement or upon a Unilateral Termination.

      xvi. A breach by Renter of its obligations under the Uber and Driver Agreement.

b) Upon the occurrence of any such Event of Default, to the extent permitted by applicable law, the Company shall have the right to exercise any of the following remedies:

    i. Without notice, demand or legal process take possession of and remove the Vehicle, whereupon all rights of Renter in the Vehicle shall terminate absolutely, and Company may hold, use, lease, sell or otherwise dispose of any or all of the Vehicle in such manner as Company in its sole discretion may decide;

    ii. Recover the following:

        1. all past due Rents, Additional Rent and other amounts, Fees, and assessments pursuant to the terms and conditions of this Agreement, plus

        2. any indemnity payment, if then determinable; plus

        3. the sum of weekly Rent payments that would come due through the scheduled end of the Term of this Agreement had this Agreement not been terminated hereunder, as liquidated damages and not as a penalty (other than in the case of a Unilateral Termination, in which case such sums shall be paid up to the date the Vehicle is returned as required hereunder);

        4. Recover for all losses or damages which Company sustains (including all attorneys' fees and costs incurred by Company) by reason of Renter's failure or refusal to execute and/or initial and deliver any Replacement Documents to the Company more than ten (10) days after a request by Company to do so; or

        5. Exercise any other right which may be available to it under the Uniform Commercial Code or other applicable law or proceed by appropriate court action to enforce the terms hereof or to recover damages for the breach hereof or to rescind this Agreement.

c) Renter shall be liable for all reasonable expenses incurred in the enforcement of these provisions, including attorneys' fees, collection fees, costs, disbursements and expenses, and accumulated late payment charges. If the Renter does not return the Vehicle to the Company the Renter shall additionally be liable for a repossession fee of $500.00. The remedies of Company hereunder are cumulative and may, to the extent permitted by law, be exercised concurrently or separately and the exercise of one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of Company to exercise, and no delay in exercising any right or remedy herein, shall be deemed a waiver thereof, nor shall any single or partial exercise by Company of any right or remedy hereunder preclude any other or further exercise thereof, the exercise of any other right or remedy.

Failure to pay Company payments when due under the terms and conditions contained in this Agreement shall constitute an immediate Event of Default prohibiting Renter's further use of the Vehicle, after such default and upon demand by Company, Renter shall return the Vehicle to Company within twenty-four (24) hours of said demand. Local authorities may be notified of any unauthorized use.

Agreement Id: FHVNAT64062

If upon default by Renter or termination by the Company, Renter shall refuse to return the subject Vehicle upon the Company's demand therefor, the Company may, at its option, repossess said Vehicle (including, but not limited to, by use of the starter interrupt system that will allow the Vehicle to be shut down or disabled remotely) or resort to legal process to recover possession thereof whether the same be denominated claim and delivery, or replevin or other procedures. Should Company commence legal process to recover possession, Renter agrees to pay and Company shall be entitled to recover from Renter the costs, expenses, disbursements and attorneys' fees incurred as a result of said action or proceeding, pursuant to this Agreement. Company's right to recover these costs, expenses and attorneys' fees are in addition to any expenses Renter shall be responsible for in the event that Company incurs costs and expenses in the repossession of said Vehicle without resort to legal process.

Renter understands if Renter has an unpaid balance to the Company and does not make satisfactory payment arrangements, Renter's account may be placed with external collection agency. Renter will be responsible for reimbursement of any third-party invoiced fees from any collection agency (the "Collection Agency"), including all costs and expenses incurred collecting Renter's account, and including attorney fees if so incurred during collection efforts.

In order for the Company or their designated external Collection Agency to service Renter's account and where not prohibited by applicable law, Renter agrees that the Company and the designated external Collection Agency are authorized to (i) contact Renter by telephone, at the telephone number(s) Renter provides, including wireless telephone numbers, which could result in charges to Renter, (ii) contact Renter by sending text messages (message and data rates may apply) or emails, using any email address Renter provides and (iii) methods of contact may include using pre-recorded/artificial voice message and/or use of an automatic dialing device, as applicable.

d)   Should Renter change or disconnect phone lines, Renter must advise Company how to contact Renter immediately and in any event within one (1) day. Should Renter fail to do so, the Vehicle may be, at the discretion of the Company, automatically remotely turned off and Company will repossess the Vehicle.

AS AN INDUCEMENT TO COMPANY TO RENT THE VEHICLE DESIGNATED HEREIN, RENTER HEREBY AGREES UPON DEFAULT, TO ALLOW COMPANY, ITS ASSIGNS OR DESIGNATED AGENTS TO ENTER UPON RENTER'S PREMISES AND REPOSSESS THE VEHICLE FROM SAID PREMISES OR FROM WHEREVER LOCATED. RENTER AGREES UPON DEFAULT TO IMMEDIATELY QUIETLY AND PEACEABLY SURRENDER POSSESSION OF THE VEHICLE TO COMPANY.

6.   **TERMINATION, REDELIVERY AND TOTAL LOSS.**

a)       Scheduled Termination and Redelivery. On the expiration of this Agreement or sooner termination by Company (whether due to an Event of Default, a Unilateral Termination or otherwise), then the Renter shall return the Vehicle to Company at a location designated by the Company and pay any amounts due the Company under this Agreement.

b)       Upon the return of the Vehicle to the Company (whether upon the natural expiration of the Term, Unilateral Termination, or on a confirmed Rental Return Date), the Driver must inform the Company of any and all damage to the Vehicle, as well as any operational, mechanical and/or structural issues therewith during the Term (including any warning lights or signals that may have lit up). Additionally, the Driver shall return the Vehicle to the Company clean and free of any personal property. A cleaning fee of $80.00 will be charged if the Vehicle was not

cleaned prior to its return, free of any damages, stains, personal property and trash in any part thereof and in good working order and in addition to the fee, Driver shall be responsible to pay the Company for the actual costs of any required cleaning and/or repair. The Renter agrees to have the Vehicle returned with fuel in an amount equal to the fuel amount that was provided to Driver on the Rental Commencement Date. if the Vehicle is missing fuel, the Renter will be charged $25.00 per quarter tank.

7. **SECURITY INTEREST AND FURTHER ASSURANCES.**

To the extent that any court or rule of law interprets this Agreement to be a conditional sales contract, Renter hereby grants to Company a security interest in the Vehicle described herein to the extent of Renter's interest hereunder and for this purpose, this Agreement shall, in addition to all other rights and obligations herein created, be deemed a Security Agreement. Renter shall upon request promptly execute and deliver to Company such further documents and take such further actions as Company may request in order to carry out more effectively the intent and purpose of this Agreement.

8. **RIGHT OF SET OFF AND CROSS-DEFAULT.**

In the event that the parties hereto have entered into any separate agreement(s)whereby Renter has any financial obligation to Company, or any of Company's affiliated companies, Company retains the right of set off for any monies due and owing Company by Renter on account of this Agreement with respect to any other separate agreements, including any advance payments made or security deposits made by Renter and held by Company. Renter shall not set-off or have the right to do so on account of any other contracts, or agreements with Company, or any of its affiliated companies. All payments made by Renter shall be applied to the oldest debt first, whether on account of this Agreement or any other indebtedness, including parts, shop or repair invoices owed by Renter to Company or to any related or affiliated companies. An Event of Default under this Agreement shall constitute a default under any other such separate agreement(s) pursuant to which Renter has a financial obligation to Company, or any of its affiliated companies.

9. **INDEMNITY CLAUSE.**

The Renter shall indemnify the Company, its parent companies, affiliates, subsidiaries, officers, directors, members, managers, agents, representatives and employees (collectively "Indemnified Parties") against, and hold the Indemnified Parties, harmless from, any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including attorney's fees, arising out of, connected with, or resulting from the Renter's hire, possession, use, operation, maintenance and/or return of the Vehicle or from any other breach or non-compliance with the Renter's obligations under this Agreement. The Renter shall further indemnify the Indemnified Parties, and hold the Indemnified Parties harmless from all loss and damage to the Vehicle during the Term not assumed by the Company hereunder. The Renter recognizes and agrees that included in this indemnity clause, but not by way of limitation, is the Renter's assumption of any and all liability for injury, disability and death of workmen and other persons caused by the operation, use, control, handling, or transportation of the Vehicle during the Term. Renter's obligation under this Section 9 shall survive the termination of this Agreement.

10. **REPLACEMENT VEHICLE.**

Company may request Driver, at any time during the Term, upon notice, at the Company's sole discretion, with or without reason (including, but not limited to, the Company's convenience, due to damage, repair, technical issue, or other issue with the Vehicle), to replace the Vehicle rented by Driver hereunder with a different compatible Vehicle and within twelve hours of such request, Driver shall return the Vehicle to the Company in exchange for a different vehicle ("Exchanged Vehicle"). Following such exchange, the Exchanged Vehicle shall be deemed the Driver's Vehicle under this Agreement and all the terms and conditions hereunder shall continue to apply to the Exchanged Vehicle, as if it was the original Vehicle rented by Driver.

Agreement Id: FHVNAT64062

11.    **GENERAL**

a)    Company shall not be liable for loss of business by, or other damage to, Renter or otherwise due to delay or failure to deliver Vehicle at commencement of the Rental Term or due to the Vehicle's failure to operate at any time during Term, whether because of the manufacturer's breach of warranty or otherwise.

b)    This Agreement shall inure to the benefit of, and be binding upon the Parties hereto, their successors, permitted assigns, transferees and their heirs, executors, administrators, and legal representatives.

c)    If Renter is not an individual, Renter agrees to provide written notice to Company of any change in its ownership structure and to provide copies of any and all documents evidencing such change thirty (30) days prior to the effectiveness of such change. Company reserves the right to terminate this Agreement and take possession of the Vehicle upon a change in the ownership structure of Renter which is not acceptable to Company.

d)    This agreement does not establish Renter as an employee, agent, legal representative, joint venturer or partner of Company or Servicer for any purpose whatsoever. The parties agree that Renter is an independent contractor and is not authorized to make any contract, agreement, warranty, or representation of behalf of Company. Renter acknowledges and agrees that he/she will not and is not entitled to, receive benefits, including retirement or worker's compensation benefits, traditionally associated with an employee/employer relationship and waives any and all rights thereto to the greatest extent permitted by law.

e)    This Agreement constitutes the entire agreement between the parties with respect to the matters referred therein and cannot be amended or altered in any manner except in writing signed by both parties.

f)    The laws of the State (as defined in Exhibit B) shall govern the validity, construction, enforcement, and interpretation of this Agreement. Renter hereby consents to the personal jurisdiction of the state and federal courts located in the State, in the County of the Pick Up Location in connection with any controversy relating to this Agreement, waives any argument that venue in such forums is not convenient and agrees that any litigation instigated by the Renter against the Company in connection herewith shall be venued in the Courts of the State, in the County of the Pick Up Location. **THE RENTER AND COMPANY EACH WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. THE RENTER AND COMPANY EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT**.

g)    If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the Term hereof, such provisions shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provisions had never comprised a part hereof; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement.

h)    Regular communications between Driver and the Company during the rental period may be done through the Buggy Driver Application, email, text message or telephone. Except as expressly provided otherwise in this Agreement, any notice or other communication required to be given pursuant to this Agreement

Agreement Id: FHVNAT64062

shall be in writing and shall be made by one of the following methods: (i) delivered personally to the party to be notified (with written confirmation of receipt), (ii) sent by certified or registered United States mail, return receipt requested, first class postage prepaid, to the party to be notified,  (iii) delivered by an overnight delivery courier service, next business day delivery, to the party to be notified (receipt requested); or (iv) sent by email (with confirmation of transmission).  Such Notice shall be deemed to have been received, upon actual receipt or refusal thereof in the case of personal delivery, within three (3) days, in the case of certified or registered mail,  on the next business day in the case of overnight courier or on the date sent by email (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient.  Any notice to any Party shall be addressed to such Party's address specified in the preamble of this Agreement. Any Party may designate a different address to which notices are to be sent to such Party by notifying all other Parties as to such different address in the manner set forth above in this section.

i)       The Vehicle will be kept and/or garaged at all times at the address of the Renter hereinabove set forth.

j)       In the event that Company shall, during the Term hereof, waive any provision contained herein, such waiver shall not be deemed continuing, and Company may at any time exercise all available remedies set forth herein without further notice.

k)       Renter specifically agrees that all of the following shall apply: (i) Company may monitor and record telephone calls related to this Agreement to assure the quality of Company's service or for other reasons; (ii) Renter expressly consents to the Company's use of prerecorded/artificial voice messages, text messages and/or automatic dialing equipment while providing services or collecting payments under this Agreement, subject to applicable law.

l)       Renter agrees that Company may use the telephone number(s),  and email addresses that Renter provides in any credit application, or that the Company receives from another source, including, but not limited to, mobile or cellular telephone, at any time , for voice calls and sms text messaging . Renter acknowledges that Company's use of Renter's  number may result in charges to Renter.

m)       The Vehicle may be equipped with a Global Positioning System ("GPS") unit or other location tracking system that will allow the Vehicle to be monitored by Company. Additionally, the Vehicle may be equipped with a starter interrupt system that will allow the Vehicle to be shut down or disabled remotely. Any tampering with the GPS unit, Starter interrupt system or other location tracking system will cause a default in this Agreement.  Should Renter tamper and/or disconnect the GPS on the Vehicle, a $1,000.00 fee will be added to the total amount due from Renter.

n)       The headings and subheadings of this Agreement have been inserted for convenience only and are to be ignored in any construction of the provisions hereof.  The singular shall include the plural and the plural shall not exclude the singular unless the context otherwise indicates or requires.

o)       If this Agreement is executed by more than one Driver, each Driver shall be jointly and severally liable for the performance of all liabilities under this Agreement, including the full payment of all amounts due, whether or not such individual Driver had possession or otherwise used the Vehicle during the relevant time. Notice provided by Company to one Driver shall be deemed provided to any Driver who executed this Agreement.

p)       Company shall not be liable for any failure to perform any provision hereof resulting from fire or other casualty, riot, terrorist act, strike or other labor difficulty, governmental regulation, pandemic, quarantine, or restriction of any cause beyond Company's control. In no event shall Company be liable for any loss

Agreement Id: FHVNAT64062

or profits or other consequential damages or any inconvenience resulting from any theft, damage to, loss of, defect in or failure of the Vehicle or the time consumed in recovering, repairing, adjusting, servicing or replacing the same, and there shall be no abatement or apportionment of amounts due hereunder during such time. Notwithstanding the foregoing, the Rent shall be pro-rated if the Vehicle is unavailable for use during any part of the Term for any reason that is not the Renter's responsibility.

12.   **CONSENT TO THE USE OF DRIVER'S DATA ON THE ARGYLE PLATFORM**

a)   Driver agrees to set up an account with Argyle Systems Inc.("Argyle") on the Argyle Platform, through the following Client Application link: [add link]. Capitalized terms in this section shall have the meaning set forth in the Argyle Terms or otherwise on the Argyle Platform.

b)   The Company shall be designated by Driver as a "Client" on the Argyle Platform. **Driver specifically authorizes the delivery of Driver's personal data, as updated from time to time on the Argyle Platform, and as specifically authorized by Driver on the Argyle Platform, to the Company.** Driver further specifically consents to the terms and conditions set forth in https://argyle.com/legal/consumers/end-user-terms/ and in https://argyle.com/legal/consumers/privacy-notice/ , as amended from time to time (jointly: "Argyle Terms").

c)   **Driver hereby consents to the collection and use by the Company, subject to applicable law and the privacy policy of the Company, of Driver's personal data received from the Argyle Platform from time to time for all matters relating, directly and indirectly, to Driver's use and operation of any vehicle Driver shall rent from the Company, including, but not limited to, information relating to (i) payments received by Driver from other third parties in connection with ride share services, (ii) Driver's ride share activities, (iii) Driver's driving violation history; (iv) Driver's use and operation of other vehicles and the vehicle rented from the Company; (v) billing information; and (vi) any additional information which Driver includes in Driver's Argyle Platform (jointly: "Driver and Vehicle Information").**

d)   **This Consent shall survive the termination of this Agreement, shall be effective with respect to all rentals of vehicles by Driver from the Company and its affiliates, and shall be deemed renewed by Driver, for each additional vehicle Driver rents from the Company, until specifically terminated by Driver in writing. Driver acknowledges that Driver may terminate this Consent at any time by providing written notice to the Company.**

13.   **STATE SPECIFIC PROVISIONS**

If Renter rents the Vehicle in any of the following states, or operates the rented Vehicle in any of the following states, the applicable provisions below shall apply:

## ARIZONA:

**Return of Car**. Arizona Revised Statute Section 13-1806 provides the following, "A person commits unlawful failure to return rented property if, without notice to and permission of the lessor of the property, the person knowingly fails without good cause to return the property within seventy-two hours after the time provided for in the membership contract. Unlawful failure to return rented or leased property if the property is a motor vehicle is a class

Agreement Id: FHVNAT64062

5 felony." The maximum penalty for this offense is imprisonment for 2 years and a fine of not more than $150,000 for the first offense.

**Liability Protection.** You acknowledge that, pursuant to Arizona revised statutes section 28-2166, the Company does not extend any of its motor vehicle financial responsibility or provide public liability insurance coverage to the Renter, or any Driver.

## FLORIDA:

**Return of Car.** Failure to return rental property or equipment upon expiration of the rental period and failure to pay all amounts due (including costs for damage to the property or equipment) are evidence of abandonment or refusal to redeliver the property, punishable in accordance with section 812.155, Florida Statutes.

**Liability Protection.** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by §§ 324.021 (7) and 627.736, Florida Statutes.

## PENNSYLVANIA:

**Rejection of Uninsured Motorist Protection**. You are rejecting uninsured motorist coverage under this rental Agreement, and any policy of insurance or self-insurance issued under this Agreement, for yourself and all other passengers of this Vehicle. Uninsured coverage protects you and other passengers in the car for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.

## TEXAS:

**Loss Damage Waiver.** The DSW offers, for an additional charge, an optional waiver to cover all or a part of your responsibility for damage to or loss of the vehicle. Before deciding whether to purchase the waiver, you may wish to determine whether your own automobile insurance or credit card agreement provides you coverage for rental vehicle damage or loss and determine the amount of the deductible under your own insurance coverage. The purchase of the DSW is not mandatory. The waiver is not insurance.

[*Signature Page Follows*]

Agreement Id: FHVNAT64062

**IN WITNESS WHEREOF**, the Company and Renter have executed this Agreement as of the date first written above.

VGM Buggy Mobility LLC                           RENTER

Name: Tom Peterson
Title: Chief Commercial Officer                  Name: HASSAN IBRAHIM TURAY

**EXHIBIT A**

**VEHICLE DESCRIPTION**

| Make & Model: | TOYOTA Camry |
|---|---|
| Year: | 2016 |
| Color: | Black |
| VIN: | 4T1BF1FKXGU128928 |
| Plate: | PBA1LN |
| Odometer at Lease Commencement: | 0 |

Agreement Id: FHVNAT64062

**EXHIBIT B**

**RENTAL TERMS AND PAYMENT AMOUNTS**

If there is any conflict between this Exhibit B and the general terms of the Agreement, the terms of Exhibit B shall prevail.

| | |
|---|---|
| **Pickup Location** | 313 W Apache St, Phoenix, AZ 85003 |
| **State** | Arizona |
| **Metro Area** | Pinal County, Maricopa County. |
| **Rental Commencement Date:** | 10/03/23 03:40PM |
| **Initial Term:** | The initial rental term under this Agreement shall commence on the Rental Commencement Date and shall continue for a period of thirty one (31) days thereafter (for a total of thirty two (32) days) (the "Initial Term"). |
| **Termination Date of Initial Term** | 03/11/2023 |
| **Optional Auto-Renewal:** | By initiating here _Off_          , the Renter hereby agrees that after the Initial Term or any extension thereof, the rental term under this agreement shall **automatically renew** for one (1) additional day, (each, a "Renewal Term" and together with the Initial Term, collectively, the "Term" or the "Rental Term"). The Renter shall make timely payments of Rent, any Additional Rent, and any Fees becoming due under this Agreement for each Renewal Term subject to the terms set forth herein. |
| **Non-Renewal Notice/Early Termination Notice by Driver** | **The Term shall continue to automatically renew pursuant to the terms of this Agreement unless the Renter provides written notice, at least seven (7) days prior to the end of any Renewal Term, to the Company that the Renter does not wish to extend the Agreement for an additional Renewal Term, (a "Non-Renewal Notice").** |
| | **In addition, Renter may terminate this Agreement during the Initial Term, subject to providing a seven day advance early termination notice to Company ("Early Termination Notice").** |
| | The Non Renewal Notice/Early Termination Notice shall be deemed received only upon confirmation by the Company of its receipt. For the avoidance of doubt, once a Non-Renewal Notice/Early Termination Notice is provided, the Rental Term shall continue (and Driver will be obligated to pay Rent, Additional Rent and Fees) for the next seven (7) additional days. By way of example if the Non-Renewal Notice/Early Termination Notice is provided by close of business on Tuesday, the Driver may use the Vehicle and shall pay Rent, Additional Rent and Fees until the following close of business Tuesday, and once the Vehicle is returned by the Return Time Deadline, on Wednesday by 12pm, in accordance with the terms of this Agreement, the Rental Term shall end. |
| | If a Renter fails to provide a timely Non-Renewal Notice/Early Termination Notice, in breach of the notice provision herein, and returns the Vehicle without such prior timely notice, the Renter shall be charged: (1) Rent, Additional Rent and applicable Fees up to and |

Agreement Id: FHVNAT64062

<table>
<tr><td></td><td>including the date that the Vehicle was returned; (2) a fee of $50 ("Unscheduled Return Fee"); and (3) any balance of weekly Rent and Additional Rent that was prepaid by the Driver shall not be refunded to the Driver and shall be deemed liquidated damages for the failure to provide timely notice. This shall be in addition to any other remedy that the Company may have, under this Agreement, in law or in equity.<br><br>**A Non-Renewal Notice/Early Termination Notice from the Renter must be sent by text message to the Company's Returns Department at (888) 524-8449. Upon receipt by the Company of the Renter's Non-Renewal Notice/Early Termination Notice, the Renter will receive a link via text message of the Vehicle return requirements. The Renter must ensure it receives a confirmation of the Non-Renewal Notice/Early Termination Notice via text message to confirm the applicable notice is received and processed (a "Company Termination Notice").**<br><br>The "Rental Termination Date" shall mean the end of the applicable Initial Term or Renewal Term following a Driver's Non-Renewal Notice/Early Termination Notice and subsequent Company's Termination Notice.</td></tr>
</table>

| Vehicle Rental Return Date and Time | The "Rental Return Date" shall mean the day after the Rental Termination Date. All Vehicles shall be returned by Renter by 12pm (the "Return Time Deadline").<br><br>For the avoidance of doubt, and by way of example only, if the Non-Renewal Notice/Early Termination Notice and the Company Termination Notice is provided by close of business on Tuesday, the Renter shall be obligated for the Rent and all other applicable fees and costs hereunder, through and including the following Tuesday. The Vehicle shall be returned by 12pm on Wednesday. |
|---|---|
| Failure to Return the Vehicle on Time | If the Renter fails to return the Vehicle by the Return Time Deadline, the Non Renewal Notice/Early Termination Notice shall be deemed void.<br><br>If the Renter provides a Non-Renewal Notice/Early Termination Notice and receives a Company Termination Notice, but fails to return the Vehicle by the Return Time Deadline, the Renter shall be required to give a new Non-Renewal Notice/early Termination Notice (**which shall require prior written notice, of no less than seven (7) days**) and receive a new Company Termination Notice. The Renter shall be responsible for Rent, Additional Rent and all other applicable Fees and costs hereunder, as if the original Non Renewal Notice/Early Termination Notice was never provided, until the new Rental Return Date. |
| Maximum Term | The maximum Term of this Agreement shall not exceed the statutory maximum rental period permitted under the laws of the State |

Agreement Id: FHVNAT64062

| Unilateral Termination by the Company | Notwithstanding anything to the contrary herein contained, the Company may terminate this Agreement at any time, with or without cause, including for the convenience of the Company, upon 24 hours advance notice and, in such event, the Vehicle must be returned at the expiration of such 24 hours as if that time was the natural expiration of the Term ("Unilateral Termination").<br><br>In the event that the Vehicle is not returned at the expiration of such 24 hours by the applicable Return Time Deadline pursuant to a Unilateral Termination, then the Renter shall be obligated to pay the Company: (1) a one-time Unscheduled Return Fee of $50; (2) rent of $75 per any additional day following the termination day; and (3) other Additional Rent and applicable fees and costs pursuant to this Agreement, until the Vehicle is returned. This shall be in addition to any other remedy that the Company may have, under this Agreement, in law or in equity. |
|---|---|
| Base Rent Amount | **Daily Payment Amount:**<br>29.65<br>**Sales tax at a rate of 8.6%**<br>2.55<br>**Total: 32.20**<br>**Weekly Payment Amount:**<br>207.55<br>**Sales tax at a rate of 8.6%**<br>17.85<br>**Total: 225.40** |
| First Payment Date: | 2023-10-10 |
| First Payment Amount of Rent and Additional Rent (for 7 days): | Base: **$341.15**<br>Tax: **$17.85**<br>Total: **$359.00** |
| Payment Due Dates | On the Rental Commencement Date, Renter shall make an advance payment for seven days of the Rent and Additional Rent due hereunder (with any applicable taxes). Renter shall continue to make advance payments of the applicable Rent and Additional Rent (with any applicable taxes), every seven (7) days, together with all accrued Fees and costs hereunder.<br><br>Upon the return of the Vehicle, any outstanding Rent, Additional Rent, taxes and applicable Fees and costs hereunder, shall be collected. Any credit due Driver on the Rental Return Date shall be refunded within 10 business days following the Rental Return Date.<br><br>If applicable, any outstanding Rent and Additional Rent due upon the Rental Return Date shall be pro-rated on a per day basis in accordance with the terms and conditions hereunder. |
| **Optional Liability Insurance**<br>**– Additional Rent**<br>**Payment due: In advance for seven (7) days, upon Commencement Date and every Seven (7) days thereafter, if Optional Auto-Renewal is elected. Any** | Weekly cost of: **$48.10**<br>Tax: **$0.00**<br>Total: **$48.10**<br><br>Daily cost of: **$6.87** |

Agreement Id: FHVNAT64062

| | |
|---|---|
| outstanding amount shall be paid on the Rental Return Date. | Tax: **$0.00**<br>Total: **$6.87** |
| **Optional Collision and Subrogation Fee – Additional Rent**<br>Payment due: In advance for seven (7) days, upon Commencement Date and every Seven (7) days thereafter, if Optional Auto-Renewal is elected. Any outstanding amount shall be paid on the Rental Return Date. | Weekly cost of: **$12.00**<br>Tax: **$0.00**<br>Total: **$12.00**<br><br>Daily cost of: **$1.71**<br>Tax: **$0.00**<br>Total: **$12.00** |
| **Administrative Fee – Additional Rent**<br><br>Payment due: In advance for seven (7) days, upon Commencement Date and every Seven (7) days thereafter, if Optional Auto-Renewal is elected. Any outstanding amount shall be paid on the Rental Return Date. | Weekly cost of: **$56.00**<br>Tax: **$0.00**<br>Total: **$56.00**<br><br>Daily cost of: **$8.00**<br>Tax: **$0.00**<br>Total: **$8.00** |
| **Recovery and Licensing Fee – Additional Rent**<br><br>Payment due: In advance for seven (7) days, upon Commencement Date and every Seven (7) days thereafter, if Optional Auto-Renewal is elected. Any outstanding amount shall be paid on the Rental Return Date. | Weekly cost of: **$17.50**<br>Tax: **$0.00**<br>Total: **$17.50**<br><br>Daily cost of: **$2.50**<br>Tax: **$0.00**<br>Total: **$2.50** |
| **Optional Fuel Charge**<br>Payment Due: upon return or exchange of Vehicle | $20.00 per quarter tank. |
| **Security Deposit:** | $249 |
| **Collision Deductible:** | $1,000 |
| **Unscheduled Return Fee** | $50 plus tax |
| **Towing Zone** | Within the metro area and in any event within the State |
| **Terms Applicable to Insurance Coverage** | (a) In the event of a collision, theft, or other loss arising from or in connection with the operation of the Vehicle, Renter must provide written notice of the facts of the incident to the Company as soon as feasible (but no later than 24 hours after the incident). Renter agrees to provide prompt notice to the Company if any claim, demand, suit, or process is made upon Renter. Renter agrees to cooperate in the defense or pursuit of any claim on behalf of Company.<br>(b) Renter acknowledges that in the event of a collision, theft, loss or casualty that is determined to have arisen out of the negligence, carelessness, willful misconduct of the Renter, or while it was being operated under the influence of (or while intoxicated by) alcohol, any drug (whether or not prescribed by a physician) or any |

Agreement Id: FHVNAT64062

other controlled substance, or it being operated by any third person not authorized hereunder to operate the Vehicle, Renter shall be wholly responsible for damages whose amount exceeds the insurance coverage provided under this Agreement. In such an event, Renter could be liable for amounts in excess of the coverage. Renter further acknowledges that Renter may obtain additional insurance coverage at Renter's own expense to reduce Renter's exposure to a claim whose damages exceed the amounts of insurance provided under this Agreement. If Renter decides to obtain additional insurance coverage, Renter may do so at his/her own expense. Renter agrees to provide Company with a copy of any insurance policy purchased that may cover claims against Renter arising in connection with Renter's operation of the Vehicle.

(c)  Renter must comply with all of the terms and requirements of this Agreement. If Renter fails to comply or is otherwise in default of this agreement, the coverages provided herein will be void. Renter's responsibilities, duties, and obligations related to the coverage provided under this Agreement, including but not limited to indemnities, assumptions of liability, and subrogation rights, shall survive the termination of this Agreement. No insurance coverage is provided under this Agreement if, when the claim arises, the Vehicle is being operated by any person other than Renter.

(d)  Renter agrees and acknowledges that the insurance provided by Company under this Agreement provides no coverage or duty to provide a defense for any claim, demand or lawsuit (or portion thereof) seeking to recover (i) punitive or exemplary damages against Renter; or (ii) damages based upon intentional or deliberate actions by Renter, including but not limited to assault and battery.

(e)  Renter's responsibilities, duties, and obligations related to the insurance coverage provided herein shall survive the expiration or earlier termination of this Agreement.

(f)  Renter hereby appoints the Company as Renter's Attorney-in-Fact to execute and deliver proofs of claim, receive payments, endorse checks and other documents, and to take any other actions necessary to pursue insurance claims and recover payments. Before distributing recovered payments, if any, to Renter, the Company has the right to offset costs and expenses associated with pursuing claims, perfecting title, and recovering payments.

(g)  Company does not maintain a rental reimbursement option and is not obligated to provide a substitute vehicle for the period of time in which the Vehicle will be out of service or off the road.

I acknowledge that I reviewed and understood all terms in Exhibit B

_Hoyomg Tingy_

_____

Driver

### PERSONAL DATA DISCLOSURE

Agreement Id: FHVNAT64062

VGM BUGGY MOBILITY LLC, and its affiliates ("Buggy"), from time to time, collects data relating to its drivers. Such data includes, but is not limited to, Name, Address, Email, Phone, Driver License information, driving records etc. Buggy collects such data as provided by driver. Buggy collects this data to improve its services and provide its drivers with a better experience, pricing, and service. For Buggy to be able to maximize the use of such data, Buggy intends to share your personal data with Ride Hailing Companies, such as Uber, and requests you agree to the sharing of such data.

Consent to Share Data:

I authorize the collection, use and/or disclosure to Ride Hailing Companies of my personal information provided to or obtained by Buggy. I understand that at any time I have the right to see and obtain a copy of my personal information as described herein and I may opt out of such disclosure at any time by contacting Buggy and providing a written request for such opt out. I further understand that Buggy will not sell or share my personal information other than as stated herein without my consent.

HASSAN IBRAHIM TURAY

*Hassan Turay*

Date: 10/03/23 03:40PM

Agreement Id: FHVNAT64062

P-04510.00025

## Credit Card/Debit Card Payment Authorization

You authorize charges to your credit card/debit card for all the amounts indicated in the Commercial Vehicle Short-Term Rental Agreement and related documents ("Agreement"). A receipt for each payment will be provided to you and the charge will appear on your credit card/debit card statement. You agree that no prior-notification will be provided for each charge.

I, HASSAN IBRAHIM TURAY authorize VGM Buggy Mobility LLC or its affiliates (the "Company") to charge my Credit Card/Debit Card indicated below for all amounts due for the rental of the vehicle under the Agreement. Such amounts may include, but are not limited to, Rent, Additional Rent (including, but not limited to, insurance charges) and Fees, as such terms are defined in the Agreement and immediately when they become due under the Agreement.

### Billing Information

Billing Address 8721 n 69th ave Apt 130Phone # +16024877447

City, State, Zip Peoria Az 85345          Email hassanturay730@gmail.com

### Card Details

Type: visa

Cardholder Name Hassan Turay

CC Last 4 Digits 7379

Expiration Date 8 / 2027

Zip Code 85345

I understand that this authorization will remain in effect until I cancel it in writing, and I agree to notify the Company in writing immediately, of any changes in my account information or termination of this authorization. I acknowledge that the origination of Credit Card/Debit Card transactions to my account must comply with the provisions of applicable law. I certify that I am an authorized user of this Credit Card/Debit Card and will not dispute these authorized transactions, so long as the transactions correspond to the terms indicated in this authorization form. In the event a payment is returned for insufficient or uncollected funds, or otherwise, I authorize the Company to resubmit the charge. I further authorize the Company to receive automatic updates of my account information from the credit card/debit card company in order to keep the payment information current.

SIGNATURE *Hassan Turay*                    DATE 10/03/23 03:40PM
(Cardholder's Signature)

Agreement Id: FHVNAT64062

P-04510.00026