# VEHICLE SOLUTIONS PROGRAM
## STRATEGIC RELATIONSHIP AGREEMENT

This Vehicle Rental Strategic Relationship Agreement (the "**Agreement**") is effective as of July 1, 2022 (the "**Effective Date**"), and is made by and between Voyager Global Mobility LLC, d/b/a "Buggy" and "FastTrack" a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1515 3rd Street, San Francisco, CA 94158 ("**Uber**").  Company and Uber may be referred to individually as a "party" and together as the "parties."

**WHEREAS,**

**1.** Company operates a vehicle rental and leasing company that connects individuals wishing to access vehicles (each vehicle, a "**Company Vehicle**") that are owned, leased, or otherwise legally possessed by Company.

**2.** Uber has developed and makes available in cities throughout the world a mobile application and related technology that connects people seeking rides or deliveries with individual transportation providers seeking to provide rides or deliveries including individual drivers and drivers employed by commercial fleets (the "**Uber App**").

**3.** Company and Uber both desire to make vehicles accessible to people who request or provide rides or deliveries with the Uber App. In connection with accomplishing these goals, the parties enter into this Agreement in order to increase the number of vehicles available for rides and deliveries via the Uber App (the "**Program**") in certain cities in the United States, each city, a "**Location**"). Location-specific details for each Location are provided in the Location addenda attached hereto (each, a "**Location Addendum**").

**NOW, THEREFORE**, in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1. **Scope of Agreement.**

   **1.1.** **Vehicle Solutions Program**. The parties agree to perform the promotional, marketing and other business activities to create and market a vehicle solutions program for drivers who accept passenger ride and/or delivery requests on the Uber vehicle marketplace ("**Vehicle Solutions Program**") as further set forth in Attachment 1 hereto and incorporated herein.

   **1.2.** **Scope.** Uber and Company wish to enter into a marketing arrangement in each Location to enable Uber to provide prospective independent drivers or delivery persons who use or plan to use the Uber App with information about renting Company Vehicles from Company.  All rentals associated with this Agreement shall be consistent with the terms advertised by Company to drivers and delivery persons, and will be negotiated and contracted directly between Company and each Joint Member (as defined in Section 1.4 below), at their sole discretion and initiative, and all responsibilities and obligations thereto shall be performed directly between Company and each Joint Member.  Uber shall

CONFIDENTIAL



Trial Exhibit No.

**P-04537**

P-04537.00001

UBER-MDL3084-BW-00054177

DocuSign Envelope ID: 592F957F-3DD3-491C-98FD-4920F92664AC

not be a party to, and shall not have any responsibility for, the rental agreement between Company and any Joint Member related to the Program described herein.

**1.3.    Company Rental Drivers.**  In consideration of the undertakings set forth herein, Company will make Company Vehicles available for rent to its customers ("**Company Rental Drivers**") according to the terms set forth in the applicable attachment(s).

**1.4.    Company Rental Driver Eligibility.**  Prior to offering Company Vehicles for rent, Company shall validate each Company Rental Driver's eligibility to rent a Company Vehicle, which may include but not be limited to ensuring that they have complied with all applicable laws and requirements in each Location. Additionally, each Company Rental Driver must sign up for or maintain a driver account on the Uber App to seek and accept requests for rides or deliveries via the Uber App. Signing up for access to the Uber App requires drivers to agree to and comply with Uber's Terms and Conditions and pass a background check.  Company Rental Drivers who meet the aforementioned requirements are hereinafter referred to as "**Joint Members**" under this Agreement.  The Parties acknowledge and agree that Joint Members: (i) are independent contractors of Uber and the Company, (ii) are not the legal representatives or agents of Uber or the Company, and (iii) do not have the power to obligate either party (Uber or the Company) for any purpose whatsoever.

## 2.    Term and Termination.

**2.1.    Term.**  The term of this Agreement will commence as of the Effective Date and will continue for a period of one (1) year (the "**Initial Term**") following the Effective Date and may be renewed by mutual written agreement of the parties.  (each a "**Term**"). Unless the parties have a written agreement for a subsequent Term (whether subsequent to an Initial Term or a Term), the Agreement shall terminate at the end of the ongoing Term.

**2.2.    Termination.**  During the Term, (i) upon written notice, either party may terminate this Agreement in the event of a material breach by the other party if the breach is not cured by the other party within thirty (30) days' notice thereof by the non-breaching party; (ii) either party may terminate this Agreement immediately upon notice to the other party in the event the other party makes an assignment for the benefit of creditors, files an involuntary petition in bankruptcy or is adjudicated bankrupt or insolvent, has a receiver appointed for any portion of its business or property, or has a trustee in bankruptcy or trustee in insolvency appointed for it under law; or (iii) either party may terminate this agreement immediately if the other party is no longer in good standing with applicable laws or regulations beyond any applicable grace or cure periods.

**2.3.    Effect of Termination or Expiration.**  Upon termination or expiration of this Agreement, each party shall return or destroy, upon the other party's election, all Confidential Information (as defined in Section 9.1 below).  Those terms that by their nature are intended to be performed after the termination or expiration of this Agreement will survive termination or expiration.

## 3.    Uber Responsibilities.

**3.1.**    During the Term, Uber shall perform the following responsibilities:

**(a)**    Promote and provide information, including, but not limited to, digital advertising on the Uber Vehicle Solutions Marketplace, about the availability of Company Vehicles to drivers (including Joint Members) who use the Uber app to offer rides or deliveries in a Location at levels determined in Uber's sole discretion.

CONFIDENTIAL                                                                    UBER-MDL3084-BW-00054178

(b)    Cooperate with Company to identify and test marketing and promotional opportunities directed at drivers and delivery persons within the Uber App and on the Uber website, provided that the scope, content, appearance and format of any such efforts shall be subject to the agreement of the parties.

(c)    Obtain and maintain the insurance coverage set forth in the applicable Location Addendum.

(d)    Provide information to the Company regarding the Joint Members, including    : driver information (name, phone number, picture, email); driver status; and driver status update and any additional information specifically agreed by the parties,    subject to applicable law. Such information shall be provided using methods elected by Uber, which may include the API system. The Company shall ensure that all Joint Members shall specifically agree to share their information and the Joint Members shall confirm their consent by executing a consent form, to be approved by Uber, which shall be provided by the Company to the Joint Members together with the driver contract and as an integral part of the onboarding process.

(e)    Operate in good faith to provide mutually agreed upon information, to enable the parties to better serve the Joint Members, improve the parties' respective operations and to expand their business to other cities. Such information shall be provided using methods solely elected by Uber, which may include Uber's API system.

(f)    The parties may collaborate in good faith to negotiate an agreement permitting the Company to have a Company representative present virtually, (or if in person subject to a separate written agreement) at mutually agreed upon Uber's Green Light Hub locations.

(g)    Perform any additional obligations and adhere to all provisions set forth in each applicable attachment.

4.    **Company Responsibilities**.

4.1.    During the Term, Company shall perform the following responsibilities:

(a)    Possess, maintain and offer Company Vehicles that meet the Uber vehicle qualification standards and comply with all applicable laws and regulations, as such laws and regulations now exist or may hereafter be updated or amended. Company shall ensure that all Company Vehicles offered for rent meet the Vehicle Quality Standards set forth in Attachment 1 (Vehicles Solutions Program).

(b)    Confirm that each Company Rental Driver has met the eligibility requirements set forth in Section 1.4 and enable each such Joint Member to view and select Company Vehicles for rent, provided that Company may rely on a Driver's active status, in addition to available information on the Supplier Portal, or substantially similar in its function tools for confirming driver information and onboarding Company Vehicles and driver/delivery person assignment.

(c)    Schedule and manage the Company Vehicle pick-up and return process and provide roadside assistance for Company Vehicle vehicles.

(d)    Obtain and maintain the insurance coverage set forth in the applicable Location Addendum.

3

UBER-MDL3084-BW-00054179

**(e)** Provide reports to Uber regarding the Program, if and when requested by Uber, including the number of drivers who become Joint Members, as well as other information regarding performance of the Program, as mutually agreed upon by the parties and subject to applicable law.

**(f)** To the extent permitted by applicable law and Company's privacy and law enforcement policies, monitor Joint Members for material moving violations or unlawful activity including without limitation actions that may cause the suspension or revocation of such Joint Member's status as a licensed (in the applicable jurisdiction) driver or deactivation from the Uber App

**(g)** Coordinate with Uber and take commercially reasonable steps to ensure the Program operations comply with all applicable laws.

**(h)** Company shall comply with Uber's terms and conditions (including all applicable privacy and community policies and addenda thereto).

**(i)** Perform any additional obligations and adhere to all provisions set forth in each applicable attachment.

5. **Fees and Payment**.

   **5.1. Costs and Expenses.** Other than as expressly set forth in this Agreement (including all attachments hereto), each party will bear their own costs of performing the responsibilities set forth in this Agreement.

   **5.2. Billing and Collections.** Company will be responsible for billing and collecting fees from Joint Members associated with the rent of Company Vehicles. For the sake of clarity, the price and rates of any such fees shall be determined in Company's sole discretion and in accordance with Attachment 1 (Vehicle Solutions Program).

6. **Program Management**.

   **6.1.** Within three (3) days of the Effective Date, each party will identify a primary point of contact for operational issues and other communications regarding the Program. The primary points of contact will meet as necessary to maintain and review the progress of the Program. Uber and Company will work together to identify and address each party's growing vehicle needs, interests, and/or opportunities during the Term. The parties may participate in meetings, including without limitation periodic strategic business reviews, to create alignment on each party's vehicle strategy and discuss potential collaboration on additional vehicle projects in current and additional locations.

7. **Feedback**.

   **7.1.** Each party may provide to the other party feedback or suggestions regarding the other party's program, ways to enhance the effectiveness of the parties' collaboration hereunder and/or the other party's performance of its responsibilities under this Agreement (collectively, "**Feedback**"). Any Feedback that Company provides to Uber regarding its products, platforms, and services will be treated by Uber as non-proprietary to Company, and may be used by Uber for any purpose without attribution or compensation. Any Feedback that Uber provides to Company regarding its products, platforms, and services will be treated by Company as non-proprietary to Uber, and may be used by Company for any purpose without attribution or compensation.

8. **Proprietary Rights**.

CONFIDENTIAL                                                      UBER-MDL3084-BW-00054180

**8.1.    Intellectual Property.**  For the purposes of this Agreement, "**Intellectual Property**" means patents, rights to apply for patents, smartphone applications, trademarks, trade names, service marks, domain names, copyrights and all applications and registration of such worldwide, schematics, industrial models, inventions, know-how, trade secrets, computer software programs, and other intangible proprietary information (any all derivative works related thereto now existing or hereafter created and/or acquired), including without limitation all direct and/or ancillary rights related thereto.

**8.2.    License to Use Uber Marks.**  Uber hereby grants Company a limited, non-exclusive, non-transferable, non-sublicensable, royalty-free license in the United States during the Term to use the Uber name, logos, trademarks, designs, social media or other handles, hashtags, and other forms of identification that are provided to Company by Uber ("**Uber Marks**") solely for the purpose of promoting the Program as set forth in writing by the parties, subject to Section 8.4 below. Notwithstanding anything to the contrary herein, the Uber Marks will remain the property of Uber.

**8.3.    License to Use Company Marks.**  Company hereby grants Uber a limited, non-exclusive, non-transferable, non-sublicensable, royalty-free license in the United States during the Term to use the trademarks of Company, including the company name, logos, trademarks, designs, social media, or other handles, hashtags, and other forms of identification that are provided to Uber by Company ("**Company Marks**") solely for purpose of promoting the Program as set forth in writing by the parties.  Notwithstanding anything to the contrary herein, the Company Marks will remain the property of Company.

**8.4.    Restrictions.**  Each use of a party's marks by the other party will be in the form and format specified or approved by the owner of such marks. Neither party will use the other party's marks without the prior, express, written consent of the other party.  All goodwill related to the use of a party's marks by the other party shall inure to the benefit of the owner of such marks. Except as expressly set forth herein, neither party shall be deemed to grant the other party any license or rights under any Intellectual Property or other proprietary rights. All rights not granted are expressly reserved.

**8.5.    Data.**  Each party agrees that any third-party data and/or personal information that may be obtained by such party as part of any promotion hereunder ("**Data**") will be collected, stored and maintained according to its own privacy policy, terms of use or other agreements with such individual, and in accordance with applicable government law, rule or regulation. Each party agrees to publish and abide by a privacy policy detailing such party's data practices. Subject to the relevant privacy policy, each party shall own, and shall not be required to share, any Data that it collects with respect to this Agreement.

**8.5.1.    Data Rights and Licenses.**  As between the parties, Uber will retain all right, title, and interest in and to the Data obtained by Uber ("**Uber Data**"), including all elements thereof.  As between the parties, Company will retain all right, title, and interest in and to the Data obtained by Company ("**Company Data**"), including all elements thereof.  Company hereby grants to Uber a non-exclusive, non-transferable, non-sublicensable, revocable, limited license to use the Company Data during the Term of this Agreement for the sole purpose of performing its obligations under this Agreement. Nothing herein shall be deemed to grant Uber any right, title or interest in or to the Company Data other than the limited license rights set expressly set forth herein.  Uber hereby grants to Company a non-exclusive, non-transferable, non-sublicensable, revocable, limited license to use the Uber Data during the Term of this Agreement for the sole purpose of performing its obligations under this Agreement. Nothing herein shall be deemed to grant Company any right, title or interest in or to the Uber Data other than the limited license rights set expressly set forth herein.

**8.5.2.    Additional Restrictions Relating to Uber Data.**  Company expressly agrees not to use Uber Data to market, or to permit a third party to market, the products or services of

5

an Uber Competitor. "**Uber Competitor**" means any entity, other than Uber or its affiliates, that provides a technology platform for drivers seeking riders and riders seeking drivers or for delivery persons providing on-demand delivery of food or other products through Uber's app(s).

        **8.5.3.**    **Additional Restrictions Relating to Company Data.** Uber expressly agrees to (1) not provide any Company Data, including aggregated Company Data, to any third party, including, but not limited to, any competitor of Company; and (2) not use the Company Data for any purpose other than as strictly necessary for the Vehicle Solutions Program between Uber and Company.

        **8.6.**    **No Development.**  THE PARTIES ACKNOWLEDGE AND AGREE THAT THERE SHALL BE NO DEVELOPMENT OF TECHNOLOGY, CONTENT OR MEDIA OR OTHER INTELLECTUAL PROPERTY BY EITHER PARTY FOR THE OTHER PARTY UNDER THIS AGREEMENT. Intellectual Property development activities, if any, must be the subject of a separate written agreement between Uber and Company prior to the commencement of any such Intellectual Property development.

## 9. Confidentiality.

    **9.1.**    **Definition.** For purposes of this Agreement, the term "**Confidential Information**" means any non-public information of a party or its affiliates that is disclosed or otherwise made available by or on behalf of such party or its affiliates ("**Disclosing Party**") to the other party ("**Receiving Party**"), before or after the Effective Date and whether orally, visually, in writing or in any other form, including, without limitation, the existence and terms of this Agreement and information about the Disclosing Party's technology, products, properties, employees, finances, businesses and operations. Confidential Information includes all notes, analyses, compilations, interpretations or other documents prepared by or for the Receiving Party, to the extent they contain, reflect or are based upon the Disclosing Party's Confidential Information. "**Representative**" means a Receiving Party, its controlled subsidiaries, and their respective officers, directors, employees, consultants and agents. Confidential Information shall not include information that: (i) is or becomes generally available to the public through no act or omission of the Receiving Party or its Representatives; (ii) was already known by the Receiving Party without any obligation of confidentiality; (iii) is lawfully disclosed by a third party to the Receiving Party without any obligation of confidentiality; (iv) the Receiving Party independently develops without use of, or reference to, the Disclosing Party's Confidential Information; or (v) that Disclosing Party gave prior written permission to Receiving Party to disclose, but only to the extent of such permitted disclosure.

    **9.2.**    **Obligation**. Each party agrees that, during the Term and for the period prescribed in Section 9.5 below, it will not disclose to any third party or use any Confidential Information disclosed to it by the other party except as expressly permitted in this Agreement, and that it will take all reasonable measures to maintain the confidentiality of the Confidential Information of the other party in its possession or control.

    **9.3.**    **Requirements.** A Receiving Party may disclose the Disclosing Party's Confidential Information as required by applicable law or regulation, provided that the Receiving Party, to the extent legally permissible, gives the Disclosing Party written notice of such required disclosure and reasonably assists the Disclosing Party in protecting, preventing or limiting such disclosure at the Disclosing Party's expense. The Receiving Party shall only disclose that portion of the Disclosing Party's Confidential Information as legally required for disclosure, and shall exercise all reasonable efforts to receive confidential treatment for such Confidential Information.

    **9.4.**    **Remedies.** Each Receiving Party acknowledges that the unauthorized use or disclosure of the Disclosing Party's Confidential Information would cause the Disclosing Party irreparable harm

6

and significant damages. Accordingly, each Receiving Party agrees that the Disclosing Party may seek equitable relief in connection with any unauthorized use or disclosure of its Confidential Information, in addition to any other rights and remedies at law or in equity.

**9.5.    Duration and Return of Confidential Information.**  The Receiving Party's obligations (including, without limitation, non-use and non-disclosure) under this Article 9 shall continue for three (3) years from the termination or expiration of this Agreement.  Upon the Disclosing Party's request, the Receiving Party will return or, at the Disclosing Party's election, destroy the Disclosing Party's Confidential Information and all copies thereof, including electronic, and, if requested by the Disclosing Party, shall certify in writing such return or destruction. Each Receiving Party may retain copies of the Disclosing Party's Confidential Information solely to the extent (i) required by applicable law or regulation or (ii) created by technical, automatic archiving or backup processes maintained in the ordinary course of business, provided that Receiving Party's obligations under this Agreement survive as set forth in this Section 9.5.

**10.    Representations and Warranties**.

**10.1.**    Each party hereby represents and warrants that: (a) it has full power and authority to enter into this Agreement and perform its obligations hereunder; (b) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its origin; (c) it has not entered into, and during the Term will not enter into, any agreement that would prevent it from complying with this Agreement; (d) it will comply with all laws and regulations applicable to it in its performance of its obligations under this Agreement; and (e) the content, media and other materials used or provided as part of the Vehicle Solutions Program shall not infringe or otherwise violate the Intellectual Property rights, rights of publicity or other proprietary rights of any third party; (f) it will implement reasonable security controls in order to prevent the transmission of viruses in connection with any electronic transmissions (of data or otherwise) between Uber and its agents and Company and its agents and vice versa.  Additionally, the Company represents and warrants that its marketing shall, at all times, conspicuously and clearly disclose all pricing and other material terms regarding vehicle pricing.  Company shall provide Uber with no less than three (3) days prior written notice (email sufficient) of any increase, to the material pricing or promotional terms that could result in a higher price or less favorable terms to Joint Members, to permit Uber sufficient time to update any marketing on Uber channels.

**10.2.    DISCLAIMER.**  EXCEPT AS SET FORTH HEREIN, EACH PARTY MAKES NO REPRESENTATIONS, AND HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING ITS SERVICES OR ANY PORTION THEREOF, THE UBER SERVICE AND UBER APPLICATION ARE PROVIDED "AS IS" AND ON AN "AS-AVAILABLE" BASIS, WITHOUT WARRANTY OF ANY KIND. UBER DOES NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE UBER SERVICE AND UBER APPLICATION, WILL MEET COMPANY'S REQUIREMENTS OR THAT THE OPERATION THEREOF WILL BE UNINTERRUPTED, VIRUS-FREE, SECURE OR ERROR FREE. COMPANY'S SERVICE AND COMPANY'S APP (IF APPLICABLE) AND ANY REPLACEMENT SERVICE OR APP THEREFOR ARE PROVIDED "AS IS" AND ON AN "AS-AVAILABLE" BASIS, WITHOUT WARRANTY OF ANY KIND. COMPANY DOES NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE COMPANY SERVICE, COMPANY APP (IF APPLICABLE) AND ANY REPLACEMENT SERVICE OR APP THEREFOR, WILL MEET UBER'S REQUIREMENTS OR THAT THE OPERATION THEREOF WILL BE UNINTERRUPTED, VIRUS-FREE, SECURE OR ERROR FREE. COMPANY ACKNOWLEDGES AND AGREES THAT THE UBER SERVICE IS A TECHNOLOGY PLATFORM THAT ENABLES ACCESS TO REQUEST ON-DEMAND GROUND TRANSPORTATION, DELIVERY AND LOGISTICS SERVICES PROVIDED BY INDEPENDENT PROVIDERS. UBER IS NOT A TRANSPORTATION, DELIVERY OR LOGISTICS PROVIDER. UBER DOES NOT GUARANTEE AVAILABILITY OF TRANSPORTATION, DELIVERY OR LOGISTICS SERVICES, ON-TIME ARRIVALS OR DEPARTURES THEREOF, OR ANY OTHER

CONFIDENTIAL

UBER-MDL3084-BW-00054183

SERVICES RELATED TO INDEPENDENT TRANSPORTATION, DELIVERY OR LOGISTICS PROVIDERS THAT MAY BE OBTAINED VIA THE UBER SERVICE OR UBER APPLICATION.

**10.3.    FTC Order Acknowledgement.**  Company acknowledges receipt of the Stipulated Order for Permanent Injunction and Monetary Judgment entered in *FTC. v. Uber Technologies Inc.*, Case No. 3:17-cv-00261 (N.D. Ca. Feb. 2, 2017) (the "FTC Driver Earnings Order")(available, as of Dec. 8, 2017, at https://www.ftc.gov/enforcement/cases-proceedings/152-3082/uber-technologies-inc), and agrees to comply with Section I (Prohibitions Against Misrepresentations) of the FTC Driver Earnings Order, and retain all corresponding compliance records for five (5) years.

## 11.    Indemnification and Limitation of Liability.

### 11.1.    Indemnification.

**(a)    By Uber**.  Uber shall indemnify, defend and hold harmless Company and its affiliates, officers, directors and employees from any liabilities, damages, tax, penalties, interest, losses and expenses (including reasonable attorneys' fees) resulting from a third party claim (collectively, "Claims"), to the extent that such Claims arise out of or relate to: (i) a breach of Uber's representations, warranties and responsibilities under Section 3 and 10 in this Agreement; (ii) any actual or alleged violation of applicable law or regulation by Uber; (iii) the gross negligence or willful misconduct of Uber, its employees or agents or contractors in their performance of this Agreement (for the avoidance of doubt, the terms of this provision do not include drivers or delivery persons who use the Uber platform); (iv) any claims that Uber Marks or any other materials provided to Company in connection with the Vehicle Solutions Program infringe a third party's Intellectual Property rights, as long as the Uber Marks and materials have been used by Company in the manner approved by Uber; (v) the unauthorized use by Uber of the Company Marks or materials provided by Company in connection with the Vehicle Solutions Program; (vi) an allegation Uber's marketing of the Vehicle Solutions Program to consumers, including but not limited to claims regarding Uber that Uber provides to Company (to the extent not changed by Company without Uber's prior written approval) or marketing materials provided to Uber by Company and where such allegation arises solely from a change to such materials by Uber without Company prior written approval, is unfair, deceptive or otherwise violates applicable law; (vii) an allegation Uber breached an agreement with a driver or delivery person, which agreement governs such driver or delivery person while operating a vehicle rented in connection with this Agreement; or (viii) the use of products and incentives provided to a driver or delivery person by Uber in connection with this Agreement.

**(b)    By Company.**  Company shall indemnify, defend and hold harmless Uber and its affiliates, officers, directors and employees from any Claims to the extent that such Claims arise out of or relate to: (i) a breach of Company's representations warranties and responsibilities under Section 4 and 10 of this Agreement; (ii) any actual or alleged violation of applicable law or regulation by Company; (iii) the negligence or willful misconduct of Company, its employees or agents or contractors in their performance of this Agreement (for the avoidance of doubt, the terms of this provision do not include drivers or delivery persons who are customers of the Company); (iv) any claims that Company Marks or any other materials provided to Uber in connection with the Vehicle Solutions Program infringe a third party's Intellectual Property rights, as long as the Company Marks and materials have been used by Uber in the manner approved by Company; (v) the unauthorized use by Company of the Uber Marks or materials provided by Uber in connection with the Vehicle Solutions Program; (vi) an allegation Company's marketing of the Vehicle Solutions Program to consumers, including but not limited to claims regarding Company that Company provides to Uber (to the extent not changed by Uber without Company's prior written approval) or marketing materials provided to Company by Uber and where such allegation arises solely from a change to such materials by Company without Uber's prior written approval, is unfair, deceptive or otherwise violates applicable law; (vii) an allegation Company breached

CONFIDENTIAL                                                                                    UBER-MDL3084-BW-00054184

the rental agreement entered into with a driver or delivery person on the Uber platform in connection with this Agreement; (viii) the rental or use of Company's vehicles, products, incentives or offers provided by Company; or (ix) the condition of the vehicles provided to drivers or delivery persons by Company in connection with the Vehicle Solutions Program.

(c)    **Procedure.**  A party (an "**Indemnified Party**") shall provide prompt notice to the other party (the "**Indemnifying Party**") of any potential claim subject to indemnification hereunder. The Indemnifying Party will assume the defense of the claim through counsel designated by it and reasonably acceptable to the Indemnified Party. The Indemnifying Party shall not settle or compromise any claim, or consent to the entry of any judgment, without written consent of the Indemnified Party, which will not be unreasonably withheld. The Indemnified Party will reasonably cooperate with the Indemnifying Party in the defense of a claim, at Indemnifying Party's expense.

**11.2.    Limitation of Liability.** EXCEPT FOR THE INDEMNIFICATION OBLIGATIONS UNDER SECTION 11.1, BREACHES OF THE PROPRIETARY RIGHTS PROVISION IN ARTICLE 8, BREACHES OF THE CONFIDENTIALITY PROVISIONS IN ARTICLE 9, AND BREACHES OF THE DATA PRIVACY; IT SECURITY PROVISIONS IN ARTICLE 12, (JOINTLY: "SECURITY AND PRIVACY OBLIGATIONS") IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOST PROFITS, LOSS OF BUSINESS, OR LOSS OR INACCURACY OF DATA OF ANY KIND, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  BECAUSE SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, THE ABOVE LIMITATION MAY NOT APPLY.  THE FOREGOING LIMITATION OF LIABILITY AND EXCLUSION OF CERTAIN DAMAGES SHALL APPLY REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES. THE PARTIES AGREE THAT THE TOTAL LIABILITY OF EACH PARTY FOR INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE SECURITY AND PRIVACY OBLIGATIONS SHALL NOT EXCEED FIVE MILLION DOLLARS ($5,000,000) PER CLAIM AND TEN MILLION DOLLARS ($10,000,000) IN THE AGGREGATE.

## 12.    Data Privacy; IT Security.

**12.1.**    The parties will comply with all applicable data protection laws and will use any information relating to an identified or identifiable natural person arising out of, in connection with, or as a result of this Agreement ("**PII**") only for the purposes of this Agreement and for no other purpose and will not distribute, transmit or otherwise make accessible or available any part of the same to any third party without the express written consent of the Joint Members, as may be required by applicable law**.** The parties shall comply with Attachment 2 (Data Processing Agreement) which is attached to and incorporated by reference into this Agreement.

## 13.    Dispute Resolution; Arbitration.

**13.1.**    The parties shall attempt to resolve all disputes between the parties arising out of or relating to this Agreement amicably through good faith negotiations upon the written request of any party.

**13.2.**    In the event that any such dispute cannot be resolved within a period of forty-five (45) days after notice of a dispute has been given (the last day of such forty-five (45) day period being herein referred to as the "**Arbitration Date**"), such dispute shall, at election of either party, be finally settled by arbitration in New York, New York, in accordance with the Arbitration Rules and Procedures of the

Judicial Arbitration and Mediation Service, Inc. ("**JAMS**") then in effect, by one arbitrator with substantial experience in the technology industry selected in accordance with JAMS rules.

13.3.    The arbitrator shall have the authority to allocate between the parties the costs of arbitration (including service fees, arbitrator fees, reasonable attorneys' fees, expert witness fees and all other fees and expenses related to the arbitration) in such equitable manner as the arbitrator may determine. Judgment on the arbitrator's award will be final and binding, and may be entered in any court having jurisdiction.

13.4.    Notwithstanding the foregoing provisions of this Article 13, each party may seek injunctive or other equitable relief in a court of competent jurisdiction with respect to any dispute related to the actual or threatened infringement, misappropriation of a party's intellectual property rights or breach of confidentiality obligations.

13.5.    Neither party has the right to arbitrate on a class action basis any dispute, controversy or claim arising out of or relating to this Agreement, or the interpretation, enforceability, performance, breach, termination, or validity thereof, including, without limitation, this arbitration clause.

13.6.    This Article 13 shall be construed and enforced under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

13.7.    This Article 13 governs all dispute resolution (including arbitration) matters between Uber and Company including any matter arising under Uber's terms and conditions applicable to use of Uber's platform or the provision of rides and/or delivery services in connection with the Uber platform.

**14.    Miscellaneous**.

14.1.    **Relationship of the Parties.**  Neither this Agreement nor the relationship set forth herein shall be deemed or construed to create any partnership, joint venture, employment, or agency relationship between the parties.  Except to the extent expressly provided, neither party is, nor shall either party hold itself out to be, vested with any power, or right to bind the other party contractually or to act on behalf of the other party as its employee, contracting broker, agent or otherwise.

14.2.    **Interpretation.** In this Agreement, "including" and "include" mean "including, but not limited to."

14.3.    **Headers.** Headers and section titles are inserted solely for the convenience of the parties and shall not be used for purposes of interpreting or construing this Agreement.

14.4.    **No Publicity.** Except as may be expressly set forth in this Agreement, neither party may issue a press release or otherwise refer to the other party in any manner with respect to this Agreement or otherwise, without the prior written consent of such other party. Each party agrees to make reasonable efforts to participate in and facilitate publicity and promotional opportunities related to the Program, including but not limited to a joint announcement of the Program, as mutually agreed in writing by the parties.

14.5.    **No Waiver.** The failure of either party to enforce, at any time or for any period of time, the provisions hereof, or the failure of either party to exercise any option herein, shall not be construed as a waiver of such provision or option and shall in no way affect that party's right to enforce such provision(s) or exercise such option(s).

10

**14.6.    Cumulative Remedies.**  The remedies herein provided are cumulative and not exclusive of any remedies provided in law or equity.

**14.7.    Regulatory Changes.**  In recognition of the fact that the business and regulatory landscape may significantly change over time, the parties agree that this Agreement shall be immediately subject to renegotiation upon the written request of either party in the event that there are changes to any applicable statute, regulation, or other law that either party reasonably believes would require a modification to any of the provisions of this Agreement to comply with the applicable statute, regulation, or law.

**14.8.    Force Majeure.** Neither party shall be liable to the other party for failure or delay in performance or non-performance caused by circumstances beyond the reasonable control of the party affected which materially interrupts, hinders, or interferes with the purpose of this Agreement, and occurs on or after the Effective Date, including but not limited to acts of God, fire, flood, explosion, war, terrorism, epidemics, pandemics, quarantine, unusually severe weather, embargo, action or request of governmental or judicial authority, strikes, labor stoppages or other industrial disturbances, civil commotion, civil riot or insurrection.  In the event that either party is unable to perform its obligations under this Agreement by reason of force majeure, it shall immediately give notice thereof to the other party and shall use commercially reasonable efforts to recommence performance.

**14.9.    Assignment, Binding Effect.**  Company may assign, in whole or in part, this Agreement to one or more Affiliates of Company.  "Affiliate" shall mean, with regards to the Company, any other entity that, directly or indirectly, or through one or more intermediaries, control, is controlled by or is under the common control with the Company. Company may not otherwise assign this Agreement without the prior written consent of Uber. This provision includes the reassignment of the Agreement due to a Change of Control Event (as defined below) experienced by the Company. At the outset of change in ownership, change of control, merger, reorganization or sale of all or substantially all of the Company's assets to a third party (a "**Change of Control Event**"), Company must immediately provide notice of the Change of Control Event to Uber, and Uber may terminate the agreement upon ten (10) days' prior written notice at any time after the closing of such transaction. Uber may freely assign or transfer this Agreement, in whole or in part, to any of its affiliates and to a successor of all or substantially all of its assets or interest (whether by sale, acquisition, merger, change of control, operation of law or otherwise). Any attempted assignment or delegation by Company without consent, except as expressly set forth herein, will be void. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of each party hereto and its respective successors and assigns.

**14.10.    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

**14.11.    Partial Invalidity; Severability.**  Invalidity of any provision of this Agreement does not affect the rest of this Agreement. The parties shall replace the invalid or non-binding provision with provision(s) that are valid and binding and that have, to the greatest extent possible, a similar effect as the invalid or non-binding provision, given the contents and purpose of this Agreement.

**14.12.    Notice.**  Any and all notices permitted or required to be given hereunder shall be sent to the address first set forth above, or such other address as may be provided, and deemed duly given: (a) upon actual delivery, if delivery is by hand; or (b) one (1) day after being sent by overnight courier, charges prepaid, with delivery confirmation receipt.  Additionally, the parties may agree to the provision of certain notices by email where expressly indicated in this Agreement, provided that if a notice is sent by email, it shall be deemed duly given on the date that a response email or confirmation is sent by the recipient (automatic replies shall not constitute a response for notice purposes).

CONFIDENTIAL                                                                UBER-MDL3084-BW-00054187

**14.13.    Further Action.** From time to time after the date hereof, the parties agree to cooperate with each other in good faith, and at the reasonable request of the other party, to execute and deliver any further instruments or documents and to take all such further action as the other party may reasonably request in order to evidence or effectuate the consummation of the transactions contemplated hereby and to otherwise carry out the intent of the parties hereunder.

**14.14.    Survival.**    Articles 5 (Fees and Payment), 7 (Feedback), 8 (Proprietary Rights), 9 (Confidentiality),10 (Representations and Warranties), 11 (Indemnification and Limitation of Liability), 12 (Data Privacy; IT Security), Article 13 (Dispute Resolution; Arbitration), this Article 14 (Miscellaneous), and the Attachments hereto (for the periods specified therein) shall survive termination or expiration of this Agreement.

**14.15.    Conflicts.** If there is a conflict between this Agreement and any supplemental terms, including Uber's Terms and Conditions, this Agreement will prevail with respect to the specific subject matter provided herein.

**14.16.    Modification.**  No amendment or modification of this Agreement shall be made except by a writing duly executed by both parties.

**14.17.    Entire Agreement.**  This Agreement, including any attachments hereto, together with Uber's Terms and Conditions, contains the full and complete agreement between the parties relating to the subject matter hereof and supersedes all prior and contemporary understandings and agreements, whether oral or written, relating to the subject matter hereof.

**14.18.    Counterparts.**  This Agreement may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement.  The parties agree that they will accept signature by electronic transmission in portable document format (PDF) in lieu of original signatures and that the Agreement and any amendments hereto will have the same binding and enforceable effect with electronic PDF signatures as they would have with original signatures.

CONFIDENTIAL                                                                                UBER-MDL3084-BW-00054188

P-04537.00012

**IN WITNESS WHEREOF,** the parties have caused their authorized representatives to execute this Agreement as of the Effective Date.

**Voyager Global Mobility LLC**

By: _Tom Peterson_
258EFB6AFC484BA...

Name: ___Tom Peterson___

Title: ___Chief Commercial Officer___

**Uber Technologies, Inc.**

By: _Ashwin Dias_
632F4025AE02408...

Name: ___Ashwin Dias___

Title: ___Director, Vehicles___

CONFIDENTIAL                                                UBER-MDL3084-BW-00054189

P-04537.00013

**ATTACHMENT 1**
**VEHICLE SOLUTIONS PROGRAM**

1.  **General Obligations**.

    a.  The Vehicle Solutions Program will be included in the Uber vehicle rental marketplace for drivers and delivery persons who use the Uber platform.  The parties endeavor in good faith to have an API integration for the Vehicle Solutions Program to facilitate access to the Company's platform. In the event the parties proceed with an API integration, the parties shall comply with the API requirements set forth on Attachment 2, Annex 1 Personal Data.

    b.  Uber and Company shall mutually agree on the cities (email sufficient) where the Vehicle Solutions Program containing Company Vehicles will be made available. The parties anticipate that the initial focus will be the greater New York City metro area, and major Miami, FL metro areas.  The parties will endeavor to launch the Vehicle Solutions Program in the greater New York City metro area with approximately 5,000 vehicles generally available on Company's platform, all subject to market conditions and applicable demand for Company's services.

    c.  Company will endeavor, subject to market conditions and applicable demand for Company's services, to make approximately 6,000 Company Vehicles generally available on its platform within one year following the Launch Date (defined below).  Vehicle types will be determined by the Company.  "**Launch Date**" shall be defined as the first day a Company Vehicle is made available to drivers or delivery persons on the Uber platform as part of the Vehicle Solutions Program.

    d.  Uber will offer Company vehicle management tools such as Supplier Portal or substantially similar in its function for onboarding Company Vehicles and driver/delivery person assignment.

    e.  The parties will work in good faith on fleet and volume planning.  The parties may share regular and updated demand forecasts for vehicle solutions opportunities in U.S. markets.

    f.  Prior to the Launch Date, Company will provide Uber a copy of the terms and conditions applicable to Company's agreement with drivers and delivery persons as part of the Vehicle Solutions Program, as in effect on the date of provision of such document. Company may change such terms and conditions, in its sole discretion, and written notice of such change, not including change to pricing terms, shall be provided to Uber at least ten (10) days in advance of the effective date of such change.

    g.  During the Term, Company will not take any intentional action, unsolicited or otherwise, to encourage any Joint Members (drivers or delivery persons) to enroll in any substantially similar driver collaboration program between Company and any Uber Competitor (defined in Section 8.5.2 of the Agreement). Notwithstanding, this clause in no way limits a Joint Member's ability to choose to work with any Uber Competitor on their own volition. Nor does this clause dictate that Company only rent or lease Company Vehicles to drivers using the Uber app. It is specifically understood that the Company is not precluded from providing all drivers, including Joint Members, information pertaining to rental of vehicles for use in collaboration with Uber Competitors.

14

DocuSign Envelope ID: 593F9E7F-3DD3-404C-98FD-4620F92664AC

2.    **Marketing Obligations**

In accordance with plans mutually agreed to by the parties and Article 8 (Proprietary Rights) of the Agreement, the parties may individually and/or jointly market the Company Vehicles offered in the Vehicle Solutions Program.

3.    **Rates.**  Minimum starting Rates are set forth in the applicable Location Addendum.

4.    **Vehicle Quality Standards**

a.    Company will maintain comprehensive vehicle quality standards for inspection, service, cleaning, preventative maintenance and repair of all Company vehicles in accordance with the vehicle quality standards for a vehicle to be eligible on the Uber platform.  Prior to being delivered to a Joint Member, the applicable vehicle will comply with all applicable (a) laws, (b) required original equipment manufacturer warranties, and (c) recall specifications. Company will be responsible for (i) complying with state and local transportation network company ("**TNC**") and rental vehicle inspection requirements in each Location; and (ii) maintaining current registration, insurance and plating requirements under applicable law for all vehicles in all Locations.  Company will be responsible for making any necessary repairs to any damaged vehicle in accordance with its driver agreement(s).

b.    In the event that a Company Vehicle suffers mechanical or operational issues that render the Company Vehicle potentially unsafe or unreliable, the Joint Member shall be entitled to return the Company Vehicle to a Company Location in exchange for a replacement vehicle, all subject to the terms of the applicable Company's agreement with drivers.

CONFIDENTIAL

UBER-MDL3084-BW-00054191

**ATTACHMENT 2**
**UBER DATA PROCESSING AGREEMENT**

This data processing agreement (" **Agreement**"), including Annexes 1 and 2, form part of the main agreement(s) between Uber and VOYAGER GLOBAL MOBILITY LLC **("Company")** (each individually a **Party** and collectively the "**Parties**") and all further agreements executed under it (collectively, the "**Main Agreement**"). This Agreement is effective as of (1) the execution date of the Main Agreement if incorporated as an exhibit thereto; or (2) the date last signed if executed as an amendment to or otherwise separately from the Main Agreement.

## DEFINITIONS

The following terms shall have the following meanings. Capitalized terms not defined herein shall have the same meaning set forth in the Main Agreement.

a.  "**Affiliate**" means an entity that owns or controls, is owned or controlled by, or is under common control or ownership with a Party.

b.  "**Controller**" means the Party or Parties to this Agreement that determine(s) the purposes and means of the Processing of Personal Data for purposes of the Agreement or the Main Agreement.

c.  "**Controller Personal Data**" means any Personal Data Processed by a Party under the Agreement in its capacity as a Controller.

d.  "**Data Protection Law(s)**" means all laws and regulations applicable to the Processing of Uber Personal Data under the Agreement, including, as applicable, the laws and regulations of the United States, the European Union, the European Economic Area and their member states, Switzerland and the United Kingdom, including as applicable the General Data Protection Regulation (EU) 2016/679 ("**GDPR**"), the California Consumer Privacy Act of 2018 ("**CCPA**") and the Brazilian General Data Protection Law (the *Lei Geral de Proteção de Dados*).

e.  "**Data Subject**" means an identified or identifiable natural person.

f.  "**Personal Data**" shall mean "personal data," "personal information," or equivalents as defined in applicable Data Protection Laws. In the absence of applicable Data Protection Laws, "Personal Data" shall mean any information relating, directly or indirectly, to an identified or identifiable natural person.

g.  **"Process," "Processes," "Processing,"** or **"Processed"** means any operation or set of operations which is performed on Personal Data or on sets of Personal Data, whether or not by automated means, such as collecting, recording, accessing, releasing, disclosing, making available, organizing, structuring, storing, adapting or altering, retrieving, consulting, using, disclosing by transmission, dissemination or otherwise, aligning or combining, restricting, erasing or destroying.

h.  "**Processor**" means a Party to this Agreement that Processes Personal Data on behalf of Uber or Uber Affiliates. The term Processor as used herein is equivalent to the term "Processor" as used in the GDPR, and the term "Service Provider" as used in the CCPA.

i.  "**Sub-processor**" means a Processor engaged by a Processor, including Company, to Process Uber Personal Data."

j.  **"Uber Data Subject"** means the Data Subject whose Uber Personal Data is, or will be, Processed.

k.  **"Uber Personal Data"** means Uber Data Subject Personal Data that is Processed by Company for the purposes described in **Annex 1** to this Agreement. For purposes of this Agreement, Uber Personal Data does not include the name and contact information of those Uber employees who are responsible for

CONFIDENTIAL                                                                   UBER-MDL3084-BW-00054192

interacting with Company to perform under the Main Agreement, and any Personal Data incidentally received by Company as a result of those interactions.

1. **GENERAL TERMS**

    **1.1.**    **Roles of Parties.** The Parties acknowledge and agree that Uber is Controller of the Uber Personal Data Processed in connection with the Main Agreement[1], and that Company is [**check one**]:

        \_    a **Processor** of such Personal Data, **in which case the Processor Terms set forth in Section 2 shall apply (in exclusion of the terms in Section 3)**.

        X    an independent **Controller** of such Personal Data, **in which case the Controller Terms set forth in Section 3 shall apply (in exclusion of the terms in Section 2)**.

    **1.2.**    **Overview of Uber Personal Data Processing.** Company shall complete **Annex 1**, and shall not Process Uber Personal Data other than as indicated in **Annex 1** without the prior written permission of Uber. If Company is designated as a Processor in Section 1.1 above, the Parties acknowledge and agree that **Annex 1** reflects Uber's written instructions regarding the Processing of Uber Personal Data in connection with the Agreement.

    **1.3.**    **Cross border transfer.** If Company's Processing of Personal Data involves the transfer of Personal Data of Uber Data Subjects in the EEA, United Kingdom and/or Switzerland to a country or territory outside of those regions, the parties hereby incorporate, and agree to comply with, the **Standard Contractual Clauses** of June 4, 2021 ("**SCCs**") approved by the European Commission. In such case:

        **1.3.1.**    Module 1 (Controller to Controller) of the SCCs shall apply if Company is designated as a Controller under Section 1.1 above.

        **1.3.2.**    Module 2 (Controller to Processor) of the SCCs shall apply if Company is designated as a Processor under Section 1.1 above.

        **1.3.3.**    The parties will complete Annex 1, and agree to Annex 2, of this Agreement in lieu of the Annexes to the SCCs.

        **1.3.4.**    The competent supervisory authority for purposes of the SCCs is the Dutch Data Protection Authority (*Autoriteit Persoonsgegevens*).

        **1.3.5.**    The Parties represent that they do not believe the laws and practices in any country to which Uber Personal Data is transferred for purposes of the Main Agreement will prevent Company from fulfilling its obligations under this Agreement or the SCCs.

    **1.4.**    **Compliance with laws.** Company shall comply with applicable laws, rules, self-regulatory requirements, and regulations, including Data Protection Laws, in connection with its Processing of Uber Personal Data.

    **1.5.**    **Limitations and Prohibitions**.

---

[1] Please refer to Uber's Privacy Notice for a determination of Uber data controllers in your region. Where an entity other than the designated controller enters into this Agreement on behalf of Uber, it is authorized to do so by the relevant data controller(s). Uber reserves the right to designate another Uber affiliate as Data Controller for purposes of this Agreement.

CONFIDENTIAL    UBER-MDL3084-BW-00054193

P-04537.00017

**1.5.1.**    Company shall only Process Uber Personal Data for the purpose of performing its obligations under the Main Agreement, and may not use Uber Personal Data for any other purpose unless otherwise agreed by the Parties in writing.

**1.5.2.**    Company shall (1) limit access to Uber Personal Data to only those employees or agents that require access to perform their roles and responsibilities in connection with the Main Agreement, and (2) under no circumstances rent, sell or disclose Uber Personal Data, except as otherwise allowed under this Agreement or the Main Agreement.

**1.5.3.**    Company will not combine Uber Personal Data with data from any other source, company, organization or entity, unless necessary to perform its obligations under the Main Agreement. Company will not copy or reproduce Uber Personal Data for its own purposes or those of any Sub-processor or other third party.

**1.6.    Data Security.** Company will maintain appropriate measures to protect the integrity, security and confidentiality of all Uber Personal Data against any anticipated threats or hazards, and/or unauthorized access to or use of such data, which measures shall include at a minimum those set forth in **Annex 2** to this Agreement.

**1.7.    Data Retention and Deletion**

**1.7.1.**    Unless otherwise required by law, Company shall, and shall require any Sub-processor to, destroy or return to Uber (at Uber's election) all Uber Personal Data in its/their possession, custody and control: (a) upon termination or expiration of the Main Agreement; (b) upon the winding down or insolvency of the Company's business; (c) once no longer necessary to perform its obligations under the Main Agreement; or (d) upon request by Uber. If Company, or any Sub-processor of Company, is prevented from deleting or destroying any Uber Personal Data in these circumstances by applicable law, it shall notify Uber in writing and delete or destroy such Uber Personal Data once it is no longer prevented from doing so by applicable law. At Uber's request, the Company shall provide Uber with a written log evidencing the destruction and any retention of Uber Personal Data. Company cannot meet the requirements of this paragraph by anonymizing or aggregating Uber Personal Data in lieu of destruction or return of such data to Uber.

**1.8.    Data Security Incidents**

**1.8.1.    Notice to Uber.** Company shall notify Uber within twenty-four (24) hours of discovery of an actual or suspected unauthorized access to, or acquisition or disclosure of, Uber Personal Data, or other actual or suspected breach of security or confidentiality with respect to Uber Personal Data in the possession or control of Company, its representatives, and/or any Sub-processor of Company (a "**Data Security Incident**"). Such notice shall be sent to the Uber persons or team designated to receive notices under the Main Agreement; and (2) via email to vendorsecurity@uber.com.

**1.8.2.    Third Party Notices.** If a Data Security Incident requires notice to any regulator, Data Subject or other third party: (1) Company shall assist Uber to provide such notifications if requested by Uber; (2) Uber shall have sole control over the content, timing and method of distribution of any needed notice, unless otherwise required by applicable law; (2) Company may notify the affected parties only upon Uber's prior written approval and instructions, unless otherwise required by applicable law (in which case Company shall provide Uber with a copy of such notice as soon as possible and in all events prior to providing such notice to any regulator, Data Subject or other third party, unless otherwise required by law); and (3) Company shall reimburse Uber all reasonable expenses incurred by Uber in connection with any notice with respect to any breach of security or confidentiality for which Company is wholly or partially responsible.

18

P-04537.00018

**1.8.3.  Notice requirements.** The notice to Uber required under Paragraph 1.8.1 shall include:

(i)    a description of the Data Security Incident, including the location, date and time the Data Security Incident occurred and the location, date and time the Data Security Incident was discovered;

(ii)   a description of the steps Company has taken, or plans to take, to investigate the Data Security Incident;

(iii)  an overview of the affected Uber Personal Data, including the types of Uber Personal Data and whether the Uber Personal Data was encrypted or redacted;

(iv)   the number of affected Uber Data Subjects and the city, state (if applicable) and country of the Data Subjects;

(v)    the expected consequences of the Data Security Incident; and a description of the measures Company has taken, or plans to take, to mitigate such consequences.

**1.9.    Indemnification.** In addition to the terms set forth in the Main Agreement(s), Company agrees, subject to Company's cyber liability cap to fully indemnify, defend and hold harmless Uber, its directors, officers, employees and agents from and against any and all losses, damages, fees and expenses arising from any claims due to, arising out of, or relating in any way to Company's loss, alteration, or misuse of Uber Personal Data, or unauthorized access to or destruction or disclosure of Uber Personal Data. Company shall defend against all third-party claims, suits and actions with counsel subject to Uber's reasonable approval and shall not enter into any settlement or compromise related thereto that contains an admission on the part of or otherwise negatively impacts Uber in any manner without the prior written consent of Uber.

**1.10.   Cyber liability insurance coverage**. Company shall carry cyber liability and furnish a certificate of insurance evidencing cyber liability insurance coverage providing protection against liability for (a) system attacks, (b) denial or loss of service attacks, (c) spread of malicious software code, (d) unauthorized access and use of computer systems, (e) crisis management and customer notification expenses, (f) privacy regulatory defense and penalties and, (g) loss, liability and defense arising from violations of privacy and data protection obligations set forth in this Agreement; and (h) liability arising from the loss or disclosure of confidential data with coverage limits of not less than (i) Five Million Dollars ($5,000,000) per claim and (ii) Ten Million Dollars ($10,000,000) in the aggregate.

## 2.  PROCESSOR TERMS

**2.1.    Compliance with Uber instructions.** Company shall only process Uber Personal Data pursuant to Uber's written instructions, including as reflected in the Main Agreement and this Agreement. If at any time Company determines that it can no longer process Uber Personal Data in accordance with Uber's written instructions and/or applicable Data Protection Laws, Company will notify Uber and provide an explanation as to why it can no longer meet its processing obligations pursuant to this Agreement and/or applicable Data Protection Laws. Upon such notice, Uber shall have the right to take reasonable and appropriate steps to stop and remediate Company's unauthorized processing of Uber Personal Data.

**2.2.    Assistance to demonstrate compliance with laws.** Company shall reasonably assist Uber to demonstrate compliance with applicable Data Protection Laws, including by responding promptly and adequately to inquiries from Uber regarding such compliance.

**2.3.    Information Security Risk Assessment.**  Company shall complete and pass an information security risk assessment ("Risk Assessment") conducted by Uber's Third-Party Risk Management

CONFIDENTIAL

UBER-MDL3084-BW-00054195

before the Effective Date. After the initial Risk Assessment, Company shall complete Risk Assessments conducted by Uber's Third-Party Risk Management periodically (not more than once per year) or if any of the following occur: (i) Company begins providing additional products or services to Uber that were not in scope during the initial or latest assessment; (ii) the nature of or purposes for Processing Uber Personal Data changes; (iii) Company begins transferring EEA Uber Personal Data outside the EEA or begins transferring EEA Uber Personal Data to a different third country that was not in scope during the initial or latest assessment; (iv) Company makes a material change to the Processing of Uber Personal Data that might impact the security of that data or Company's ability to comply with this Agreement; (v) an assessment is reasonably necessary for Uber to comply with Data Protection Laws or other data security compliance obligations; (vi) an assessment is reasonably necessary for Uber to comply with a request, order, or settlement with a supervisory or other legal obligation; or (vii) a Data Security Incident occurs.

    **2.3.1. Assessment Requirements**. Company shall provide to Uber all information reasonably necessary to complete the Risk Assessment. Such information may include, but is not limited to, risk assessment questionnaires; information security policies and procedures; data classification and handling policies and procedures; data security compliance or audit reports that assess the effectiveness of Company's information security program, system(s), internal controls, and procedures relating to the Processing of Uber Personal Data against an industry-accepted framework such as ISO, SSAE16, SOC, or NIST; and other information requested by Uber to assess Company's information security program, controls, and Processing of Uber Personal Data. Copies of Company's policies, procedures, or other documents may be provided to Uber, or presented over a mutually agreed-upon screen-sharing application.

**2.4.** **Uber Audits.** In addition to the Risk Assessment in Section 2.3 and upon reasonable advance written notice, Uber may (not more than once per year) during normal business hours and at its own expense, audit Company's facilities, networks, systems, procedures, Processing and maintenance of Uber Personal Data, and compliance with this Agreement. Notwithstanding the foregoing, Uber shall be permitted to exercise such audit right any time a Data Security Incident (as defined in Section 1.2.5.1 above) has occurred or when required to comply with Data Protection Laws, a request, order, or settlement with a Data Protection Authority, or other legal obligation. Company shall reasonably cooperate with such audit by providing access to knowledgeable personnel, physical premises as applicable, documentation, infrastructure, and any application software that Processes Uber Confidential Information and/or Uber Personal Data or otherwise has access to Uber's facilities, networks, systems, procedures. Uber shall be responsible for its costs and expenses of such audit (or the fees and costs of the third party performing the audit), unless such audit reveals, or is initiated because of, a material breach of the Main Agreement including this Agreement, in which case Company will reimburse Uber for such costs and expenses. Company will promptly address and correct all deficiencies identified in any such audit.

**2.5.** **Requests or Demands from Governmental or Regulatory Bodies**. Company shall inform Uber as soon as possible if it receives a request or demand from a governmental or regulatory body with authority over Company or Uber relating to Company's Processing of Uber Personal Data, and shall fully cooperate with Uber in connection with any response to such request or demand.

**2.6.** **Data Subject Rights.** Company shall promptly notify Uber of any request by an Uber Data Subject to exercise their rights under applicable Data Protection Laws, and reasonably assist Uber to fulfill such request. Company shall not respond to such requests, unless instructed by Uber to do so.

**2.7.** **Data Handling Frameworks**: If requested by Uber, Company shall further agree to contractually comply with PCI DSS Standards, requirements for business associates under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), as well as similar and other frameworks, if and to the extent such frameworks apply to Company's processing of the Uber Personal Data.

CONFIDENTIAL

UBER-MDL3084-BW-00054196

P-04537.00020

### 2.8.    Sub-processors

**2.8.1.    Permitted Sub-processors**. Uber and Company agree that Company may not engage any Sub-processor to Process Uber Personal Data, other than those identified in **Annex 1** to this Agreement, unless with Uber's prior written approval as indicated in this paragraph. In the event Company seeks to engage a Sub-processor not identified in **Annex 1**, Company shall notify Uber of its intent to engage such Sub-processor, and the purposes for which it will process Uber Personal Data, at least 30 days prior to any Processing of Uber Personal Data by the Sub-processor. If Uber does not object to such engagement, Uber will be deemed to have approved such engagement.

**2.8.2.    Sub-processor obligations.** Company will not permit any Sub-processor to Process Uber Personal Data, unless Company and the Sub-processor have entered into an agreement that imposes obligations on the Sub-processor that are no less restrictive and at least equally protective of Uber Personal Data than those imposed on Company under this Agreement. Uber may request a copy of such agreement between Company and any Sub-processor, and may withhold consent to the use of such Sub-Processor if Company does not provide such agreement or such agreement does not contain sufficient protection of Uber Personal Data. Company may redact such agreement prior to sharing with Uber to the extent necessary to protect its trade secrets or confidential information.

**2.8.3.    Sub-processor compliance with Data Protection Laws.** Company is responsible for ensuring the compliance of Sub-processors with applicable Data Protection Laws, and with Company's agreements with Sub-processors consistent with Section 2.8.2 of this Agreement, as relates to Sub-processors' Processing of Uber Personal Data.

**2.8.4.    Liability.** Company's use of Sub-processors does not affect or limit Company's liability under this Agreement.

## 3.    CONTROLLER TERMS

### 3.1.    Roles of Parties. Each Party:

**3.1.1.    **is an independent Controller of Controller Personal Data under the Data Protection Laws, and will not Process Controller Personal Data as joint controllers.

**3.1.2.    **will individually determine the purposes and means of its Processing of Controller Personal Data.

**3.1.3.    **is responsible for its own compliance with applicable Data Protection Laws, including as relates to notifying Data Subjects of its Processing of their Personal Data and how they may exercise their rights, and obtaining any required consents.

**3.1.4.    **will comply with the obligations applicable to it under the Data Protection Laws with respect to the Processing of Controller Personal Data.

### 3.2.    Restrictions. Section 3.1 does not affect any restrictions on either Party's rights to use or otherwise Process Controller Personal Data under the Main Agreement.

## 4.    MISCELLANEOUS

### 4.1.    Termination and Survival. This Agreement and all provisions herein shall survive so long as, and to the extent that, Company Processes or retains Uber Personal Data.

21

4.2.    **Counterparts.** This Agreement may be executed in any number of counterparts and any Party (including any duly authorized representative of a Party) may enter into this Agreement by executing a counterpart.

4.3.    **Non-compliance**: Company shall promptly inform Uber if it is unable to comply with this Agreement. If Company cannot comply within a reasonable period of time, or the Company is in substantial or persistent breach of this Agreement or its obligations under this Agreement, Uber shall be entitled to terminate the Agreement and the Main Agreement insofar as it concerns processing of Uber Personal Data.

4.4.    **Ineffective clause.** If individual provisions of this Agreement are or become ineffective, the effectiveness of the remaining provisions shall not be affected. The Parties shall replace the ineffective clause with a legally allowed clause, which will accomplish the intended commercial intention as closely as possible.

4.5.    **Conflicts.** In case of contradictions between this Agreement and the provisions of the Main Agreement, the provisions of this Agreement shall prevail. In case of contradictions between this Agreement and the provisions of a Business Associate Agreement ("**BAA**") pursuant to HIPAA, the provisions of the BAA shall prevail.

4.6.    **Applicable law and jurisdiction.** The applicable law and jurisdiction as set forth in the Main Agreement apply to this Agreement.

CONFIDENTIAL                                                                UBER-MDL3084-BW-00054198

P-04537.00022

**Annex 1 - Overview of Uber Personal Data Processing**

In order to utilize Uber APIs throughout the Term, Company must establish a developer account (a "Developer Account") by completing the online sign up process available at developer.uber.com, which, among other things, requires Company to agree to the Uber API Terms of Use ("Uber API TOU") available at https://developer.uber.com/docs/drivers/terms-of-use.  Company's use of Uber APIs shall be governed by the Uber API TOU and the terms of this Agreement. Company represents and warrants that throughout the Term it will use Uber APIs solely in accordance with the Uber API TOU and this Agreement. In the event of a conflict between the Uber API TOU and this Agreement, the terms of this Agreement shall control solely with respect to that conflict. Capitalized terms used but not otherwise defined in this Agreement shall have the respective meanings ascribed to such terms in the Uber API TOU.

| Uber API - Driver Eligibility and Risk Assessment | Weblink Reference Details |
| --- | --- |
| [API] GET Driver Info | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/get-driver-info |
| [API] GET Compliance Info | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/get-compliance-info |
| [Webhook] Driver Status Change | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/driver-status-change |

CONFIDENTIAL

UBER-MDL3084-BW-00054199

P-04537.00023

DocuSign Envelope ID: 593F9E7F-3DD2-404C-98FD-4620F92664AC

**Annex 2 - Organizational/Administrative, Physical and Technical Measures**

1.    **Organizational/Administrative Security Measures:** Company has implemented, and will maintain and update as appropriate throughout its Processing of Uber Personal Data:

    1.1.    A written and comprehensive information security program in compliance with applicable data protection laws.

    1.2.    A data loss prevention program that reflects reasonable policies or procedures designed to detect, prevent, and mitigate the risk of data security breaches or identify theft, which shall include at a minimum:

        1.2.1.    appropriate policies and technological controls designed to prevent loss of Uber Personal Data; and

        1.2.2.    a disaster recovery/business continuity plan that addresses ongoing access, maintenance and storage of Uber Personal Data as well as security needs for back-up sites and alternate communication networks.

    1.3.    Policies and procedures to limit access to Uber Personal Data to those who require such access to perform their roles and responsibilities in connection with the Main Agreement, including regular updates to such access based on changes to Company's personnel, policies or procedures.

    1.4.    Procedures to verify all access rights through effective authentication methods.

    1.5.    A government agency data access policy that refuses government access to data, except where such access is required by law, or where there is imminent risk of serious harm to individuals.

    1.6.    Policies and procedures for assessing legal basis for, and responding to, government agency requests for data.

    1.7.    Specific training of personnel responsible for managing government agency requests for access to data, which may include requirements under applicable Data Protection Laws.

    1.8.    Processes to document and record government agency requests for data, the response provided, and the government authorities involved.

    1.9.    Procedures to notify Uber about any request or requirement for government agency access to data, unless legally prohibited.

2.    **Physical Security Measures**

    2.1.    Company has implemented, and will maintain and update as appropriate throughout its Processing of Uber Personal Data, appropriate physical security measures for any facility used to Process Uber Personal Data and continually monitor any changes to the physical infrastructure, business, and known threats.

3.    **Technical Security Measures:** Company shall throughout its Processing of Uber Personal Data:

    3.1.    perform vulnerability scanning and assessments on applications and infrastructure used to Process Uber Personal Data.

    3.2.    secure its computer networks using multiple layers of access controls to protect against unauthorized access.

CONFIDENTIAL

UBER-MDL3084-BW-00054200

P-04537.00024

**3.3.**    restrict access through mechanisms such as, but not limited to, management approvals, robust controls, logging, and monitoring access events and subsequent audits.

**3.4.**    identify computer systems and applications that warrant security event monitoring and logging, and reasonably maintain and analyze log files.

**3.5.**    use up-to-date, industry standard, commercial virus/malware scanning software that identifies malicious code on all of its systems that Process Uber Personal Data.

**3.6.**    encrypt Uber Personal Data in transit.

encrypt Uber Personal Data at rest and solely manage and secure all encryption keys (i.e., no other third party shall have access to these encryption keys, including Sub-processors).

25

UBER-MDL3084-BW-00054201

P-04537.00025

**ATTACHMENT 3**
**LOCATION ADDENDUM #1**

This Location Addendum ("**Location Addendum #1**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #1 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and VOYAGER GLOBAL MOBILITY LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #1 and the Agreement, this Location Addendum #1 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Miami, FL |
|---|---|
| # of Vehicles | Approximately 20-50, subject to market demand |
| Location Addendum #1 Effective Date & Term | The "Location Addendum #1 Effective Date" shall be the Effective Date set forth in the Agreement.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the |

26

Commercial General Liability and Commercial Automobile Liability insurance policies referenced above.

In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) Delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below.

**Company Insurance Obligations.**

1. During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the Commercial General Liability and Automobile Liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

27

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with minimum liability limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, uninsured and underinsured motorist bodily injury coverage as required by law, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

**Delivery Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with minimum limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability. Uber will not maintain any physical damage coverage during this Period.

CONFIDENTIAL

UBER-MDL3084-BW-00054204

P-04537.00028

| | • **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible). |

**2. Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1: Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Miami, FL | $259/week |

29

UBER-MDL3084-BW-00054205

P-04537.00029

**ATTACHMENT 4**
**LOCATION ADDENDUM #2**

This Location Addendum ("**Location Addendum #2**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #2 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #2 and the Agreement, this Location Addendum #2 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | New York City |
|---|---|
| # of Vehicles | 4,000 |
| Location Addendum #1 Effective Date & Term | The "Location Addendum #1 Effective Date" shall be the Effective Date of the Agreement. The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | **Company Insurance Obligations.** During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including During the Term of this Agreement company shall maintain commercial auto liability insurance coverage in the amount of not less than $100,000 per person and $300,000 per occurrence and $200,000 PIP (Personal Injury Protection), or as otherwise required by local law. All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall be primary and non-contributory to any insurance maintained by Ube and shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon Uber's request, Company shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any |

CONFIDENTIAL                                UBER-MDL3084-BW-00054206

P-04537.00030

DocuSign Envelope ID: 593F9E7F-3DD2-404C-98FD-4620F92664AC

Case 3:23-md-03084-CRB    Document 5259-50    Filed 02/17/26    Page 31 of 72

<table>
<tr><td></td><td>policy be considered as limiting the liability of a party under this Agreement.</td></tr>
</table>

**2. Rates.**  Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of vehicle maintenance, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) including taxes and excluding fees and insurance surcharge |
|---|---|---|---|
| Mid-Size | Nissan Sentra | New York City | $389/week |
| Full Size | Hyundai Sonata | New York City | $399/week |
| EV | Tesla Model 3 | New York City | $679/Week |

CONFIDENTIAL

**AMENDMENT NO. 1 TO THE**
**VEHICLE SOLUTIONS PROGRAM**
**STRATEGIC RELATIONSHIP AGREEMENT**

This Amendment No. 1 ("**Amendment No. 1**") is made as of July 18, 2022 ("**Amendment No. 1 Effective Date**") and hereby amends the Vehicle Solutions Program Strategic Relationship Agreement, dated July 1, 2022, (the "**Agreement**") by and between Voyager Global Mobility LLC, d/b/a "Buggy" and "FastTrack" a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1515 3rd Street, San Francisco, CA 94158 ("**Uber**"). Capitalized terms used but not otherwise defined in this Amendment No. 1 have the respective meanings ascribed to such terms in the Agreement. In the event of any inconsistency or conflict between the Agreement and this Amendment No. 1, the terms and conditions of this Amendment No. 1 shall govern and control.

**NOW, THEREFORE,** in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1. **Location Addendum** #1 (Miami, FL) is hereby amended to include Orlando, FL as an additional Location.

2. **Additional Provisions**

    a. **Effect on Agreement**:  Except as specifically amended hereby, the terms and provisions of the Agreement are in all other respects ratified and confirmed and remain in full force and effect without modification or limitation.

    b. **Governing Law:**  This Amendment No. 1 shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

    c. **Counterparts:**   This Amendment No. 1 may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. The parties agree to accept signature by electronic transmission in portable document format (PDF) in lieu of original signatures and that this Amendment No. 1 will have the same binding and enforceable effect with electronic PDF signatures as it would have with original signatures.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment No. 1 as of the Amendment No. 1 Effective Date.

**Voyager Global Mobility LLC**

By: _Tom Peterson_
    258EFB6AFC484BA...

Name: Tom Peterson

Title: Chief Commercial Officer

**Uber Technologies, Inc.**

By: _____
    632F4025AE02408...

Name: Ashwin Dias

Title: Director, Vehicles

CONFIDENTIAL

**AMENDMENT NO. 2 TO THE**
**VEHICLE SOLUTIONS PROGRAM**
**STRATEGIC RELATIONSHIP AGREEMENT**

This Amendment No. 2 ("**Amendment No. 2**") is made as of October 11, 2022 ("**Amendment No. 2 Effective Date**") and hereby amends the Vehicle Solutions Program Strategic Relationship Agreement, dated July 1, 2022, (the "**Agreement**") by and between Voyager Global Mobility LLC, d/b/a "Buggy" and "FastTrack" a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1515 3rd Street, San Francisco, CA 94158 ("**Uber**"). Capitalized terms used but not otherwise defined in this Amendment No. 2 have the respective meanings ascribed to such terms in the Agreement. In the event of any inconsistency or conflict between the Agreement and this Amendment No. 2, the terms and conditions of this Amendment No. 2 shall govern and control.

**WHEREAS,** Uber and Company executed the Agreement to make vehicles accessible to people who request or provide rides or deliveries with the Uber App;

**WHEREAS**, the parties amended the Agreement on July 18, 2022 to include Orlando, FL as an additional Location;

**WHEREAS,** the parties now desire to add Phoenix, Arizona, Dallas, Texas, and Atlanta, GA as additional Locations.

**NOW, THEREFORE,** in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1.  Company has acquired UCars Management LLC, a wholly-owned subsidiary of Voyager Global Mobility, d/b/a "UCars".  The parties hereby acknowledge that all references to Company may include "UCars" and all respective obligations of Company in the Agreement shall apply to "UCars".

2.  **A new Location Addendum #3** is hereby added to include Phoenix, AZ as an additional Location and is attached hereto as Attachment 1.

3.  **A new Location Addendum #4** is hereby added to include Dallas, TX  as an additional Location and is attached hereto as Attachment 2.

4.  **A new Location Addendum #5** is hereby added to include Atlanta, GA as an additional Location and is attached hereto as Attachment 3.

5.  **Additional Provisions**

    a.  **Effect on Agreement**:  Except as specifically amended hereby, the terms and provisions of the Agreement are in all other respects ratified and confirmed and remain in full force and effect without modification or limitation.

    b.  **Governing Law:**  This Amendment No. 2 shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

    c.  **Counterparts:**   This Amendment No. 2 may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. The parties agree to accept signature by electronic transmission in portable document format (PDF) in lieu of original signatures and that this Amendment No. 2 will have the same binding and enforceable effect with electronic PDF signatures as it would have with original signatures.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment No. 2 as of the Amendment No. 2 Effective Date.

**Voyager Global Mobility LLC**

By: *Tom Peterson*
258EFB6AFC484BA...

Name: Tom Peterson

Title: Chief Commercial Officer

**Uber Technologies, Inc.**

By: 632F4025AE02408...

Name: Ashwin Dias

Title: Director, Vehicles

CONFIDENTIAL

UBER-MDL3084-BW-00054210

P-04537.00034

**ATTACHMENT 1**
**Location Addendum #3**

This Location Addendum ("**Location Addendum #3**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #3 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #3 and the Agreement, this Location Addendum #3 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| | |
|---|---|
| City ("**Location**") | Phoenix, AZ |
| # of Vehicles | Approximately 300, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #3 Effective Date" shall be the Amendment No. 2 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the Commercial General Liability and Commercial Automobile Liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) Delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

**Company Insurance Obligations.**

1.  During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the Commercial General Liability and Automobile Liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with minimum liability limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, uninsured and underinsured motorist bodily injury coverage as required by law,

and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

**Delivery Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with minimum limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

2. **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Mid-Size | Toyota Prius Hybrid | Phoenix, AZ | $199/week |

**ATTACHMENT 2**
**Location Addendum #4**

This Location Addendum ("**Location Addendum #4**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #4 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #4 and the Agreement, this Location Addendum #4 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

3.   **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Dallas, TX |
|---|---|
| # of Vehicles | Approximately 150, subject to market demand |
| Location Addendum #4 Effective Date & Term | The "Location Addendum #4 Effective Date" shall be the Amendment No. 2 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1.   **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the Commercial General Liability and Commercial Automobile Liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) Delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

**Company Insurance Obligations.**

2. During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the Commercial General Liability and Automobile Liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with minimum liability limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, uninsured and underinsured motorist bodily injury coverage as required by

law, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

**Delivery Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:

● **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

● **Period 1: App On (Available)** – Company maintains a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with minimum limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability. Uber will not maintain any physical damage coverage during this Period.

● **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

4. **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1: Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Mid-Size | Toyota Prius Hybrid | Dallas, TX | $199/week |

**ATTACHMENT 3**
**Location Addendum #5**

This Location Addendum ("**Location Addendum #5**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #5 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #5 and the Agreement, this Location Addendum #5 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

5. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Atlanta, GA |
| --- | --- |
| # of Vehicles | Approximately 50-100, subject to market demand |
| Location Addendum #5 Effective Date & Term | The "Location Addendum #5 Effective Date" shall be the Amendment No. 2 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the Commercial General Liability and Commercial Automobile Liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) Delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

**Company Insurance Obligations.**

2. During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the Commercial General Liability and Automobile Liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with minimum liability limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, uninsured and underinsured motorist bodily injury coverage as required by

law, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

**Delivery Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with minimum limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $2,500 deductible).

6.  **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three(3) days prior to such change.

**Table 1: Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Atlanta, GA | $259/week |

**AMENDMENT NO. 3 TO THE**
**VEHICLE SOLUTIONS PROGRAM**
**STRATEGIC RELATIONSHIP AGREEMENT**

This Amendment No. 3 ("**Amendment No. 3**") is made as of March 6, 2023 ("**Amendment No. 3 Effective Date**") and hereby amends the Vehicle Solutions Program Strategic Relationship Agreement, dated July 1, 2022, (the "**Agreement**") by and between Voyager Global Mobility LLC, d/b/a "Buggy" and "FastTrack" a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1515 3rd Street, San Francisco, CA 94158 ("**Uber**"). Capitalized terms used but not otherwise defined in this Amendment No. 3 have the respective meanings ascribed to such terms in the Agreement. In the event of any inconsistency or conflict between the Agreement and this Amendment No. 3, the terms and conditions of this Amendment No. 3 shall govern and control.

**WHEREAS,** Uber and Company executed the Agreement to make vehicles accessible to people who request or provide rides or deliveries with the Uber App;

**WHEREAS**, the parties amended the Agreement on July 18, 2022 to include Orlando, FL as an additional Location;

**WHEREAS**, the parties amended the Agreement on October 11, 2022 to include Phoenix, Arizona, Dallas, Texas, and Atlanta, GA as additional Locations;

**WHEREAS,** the parties now desire to add Las Vegas, Nevada as an additional Location.

**NOW, THEREFORE,** in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1. **A new Location Addendum #6** is hereby added to include Las Vegas, Nevada as an additional Location and is attached hereto as Attachment 1.

2. **Additional Provisions**

   a. **Effect on Agreement**:  Except as specifically amended hereby, the terms and provisions of the Agreement are in all other respects ratified and confirmed and remain in full force and effect without modification or limitation.

   b. **Governing Law:**  This Amendment No. 3 shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

   c. **Counterparts:**   This Amendment No. 3 may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. The parties agree to accept signatures by electronic transmission in portable document format (PDF) in lieu of original signatures and that this Amendment No. 3 will have the same binding and enforceable effect with electronic PDF signatures as it would have with original signatures.

CONFIDENTIAL                                              UBER-MDL3084-BW-00054220

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment No. 3 as of the Amendment No. 3 Effective Date.

| **Voyager Global Mobility LLC** | | **Uber Technologies, Inc.** | |
|---|---|---|---|
| By: | *Tom Peterson* | By: | *Jack Kloster* |
| Name: | Tom Peterson | Name: | Jack Kloster |
| Title: | Chief Commercial Officer | Title: | Sr Director, Business Development |

CONFIDENTIAL

UBER-MDL3084-BW-00054221

P-04537.00045

**ATTACHMENT 1**
**Location Addendum #6**

This Location Addendum ("**Location Addendum #6**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #6 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #6 and the Agreement, this Location Addendum #6 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Las Vegas, NV |
|---|---|
| # of Vehicles | Approximately 150, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #6 Effective Date" shall be the Amendment No. 3 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the Commercial General Liability and Commercial Automobile Liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) Delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

**Company Insurance Obligations.**

1. During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of one million dollars ($1,000,000) each incident; $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the Commercial General Liability and Automobile Liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

- **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company maintains a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with minimum liability limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with limits and coverages as required by law, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible).

|  | **Delivery Auto Insurance**<br><br>The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:<br><br>• **Period 0: App Off** – No Uber Insurance maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.<br><br>• **Period 1: App On (Available)** – Company maintains a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with minimum limits of at least $50,000 per individual/$100,000 per accident for bodily injury liability and $25,000 for property damage liability. Uber will not maintain any physical damage coverage during this Period.<br><br>• **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible). |
|--|--|

2.   **Rates.**  Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Chevy Malibu, Nissan Sentra, Toyota Camry, Nissan Altima, Chevy Equinox, Chevy Traverse etc. | Las Vegas, NV | $299/week |

**AMENDMENT NO. 4 TO THE**
**VEHICLE SOLUTIONS PROGRAM**
**STRATEGIC RELATIONSHIP AGREEMENT**

This Amendment No. 4 ("**Amendment No. 4**") is made as of November 15, 2023 ("**Amendment No. 4 Effective Date**") and hereby amends the Vehicle Solutions Program Strategic Relationship Agreement, dated July 1, 2022, (the "**Agreement**") by and between Voyager Global Mobility LLC, d/b/a "Buggy", "FastTrack" and "UCars", a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1515 3rd Street, San Francisco, CA 94158 ("**Uber**"). Capitalized terms used but not otherwise defined in this Amendment No. 4 have the respective meanings ascribed to such terms in the Agreement. In the event of any inconsistency or conflict between the Agreement and this Amendment No. 4, the terms and conditions of this Amendment No. 4 shall govern and control.

**WHEREAS,** Uber and Company executed the Agreement to make vehicles accessible in Miami, FL and New York City to people who request or provide rides or deliveries with the Uber App;

**WHEREAS**, the parties amended the Agreement on July 18, 2022 to include Orlando, FL as an additional Location;

**WHEREAS**, the parties amended the Agreement on October 11, 2022 to include Phoenix, AZ, Dallas, TX, and Atlanta, GA as additional Locations;

**WHEREAS,** the parties amended the Agreement on March 6, 2023 to add Las Vegas, Nevada as an additional Location.

**WHEREAS,** the parties now desire to amend the Agreement to extend the Term and add Tampa, FL, Houston, TX, Philadelphia, PA, Boston, MA, Washington, DC, and Baltimore, MD as additional Locations.

**NOW, THEREFORE,** in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1. **Section 2.1 (Term)** is hereby amended as follows:

"**2.1    Term.**  The term of this Agreement will commence as of July 1, 2023 and will continue for a period of one (1) year (the "**Term**"), which may be automatically renewed for a period of one (1) additional year unless either party has provided written notice of non-renewal at least sixty (60) days prior to the expiration of the Term."

2. **Location Addendum #1 (Miami & Orlando, FL)** is hereby amended to include Tampa, FL as an additional Location.

3. **Location Addendum #4 (Dallas, TX)** is hereby amended to include Houston, TX as an additional Location.

4. **A new Location Addendum #7** is hereby added to include Philadelphia, PA as an additional Location and is attached hereto as Attachment 1.

5. **A new Location Addendum #8** is hereby added to include Boston, MA as an additional Location and is attached hereto as Attachment 2.

6. **A new Location Addendum #9** is hereby added to include Washington, DC as an additional Location and is attached hereto as Attachment 3.

1

7. **A new Location Addendum #10** is hereby added to include Baltimore, MD as an additional Location and is attached hereto as Attachment 4.

8. **Additional Provisions**

   a. **Effect on Agreement**:  Except as specifically amended hereby, the terms and provisions of the Agreement are in all other respects ratified and confirmed and remain in full force and effect without modification or limitation.

   b. **Governing Law:**  This Amendment No. 4 shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

   c. **Counterparts:**    This Amendment No. 4 may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. The parties agree to accept signatures by electronic transmission in portable document format (PDF) in lieu of original signatures and that this Amendment No. 4 will have the same binding and enforceable effect with electronic PDF signatures as it would have with original signatures.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment No. 4 as of the Amendment No. 4 Effective Date.

| **Voyager Global Mobility LLC** | **Uber Technologies, Inc.** |
|---|---|
| By: _Tom Peterson_ | By: _Jack Kloster_ |
| 258EFB6AFC484BA... | 8745B50ABCC441D... |
| Name: Tom Peterson | Name: Jack Kloster |
| Title: Chief Commercial Officer | Title: Head of Business Development, US&C |

2

**ATTACHMENT 1**
**Location Addendum #7**

This Location Addendum ("**Location Addendum #7**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #7 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #7 and the Agreement, this Location Addendum #7 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Philadelphia, PA |
|---|---|
| # of Vehicles | Approximately 50-700, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #7 Effective Date" shall be the Amendment No. 4 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident and $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the commercial general liability and commercial automobile liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

3

**Company Insurance Obligations.**

1. During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the commercial general liability and automobile liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

● **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

● **Period 1: App On (Available)** – Company will maintain a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

● **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with limits and coverages required by law, and contingent collision and

4

|  | comprehensive coverage (up to actual cash value, subject to a $1,000 deductible).<br><br>**Delivery Auto Insurance**<br><br>The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:<br><br>● **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.<br><br>● **Period 1: App On (Available)** – Company will maintain a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability. Uber will not maintain any physical damage coverage during this Period.<br><br>● **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible). |
|---|---|

2.  **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Philadelphia, PA | $243/week |
| Comfort | Chevy Malibu | Philadelphia, PA | $275/week |
| UberXL | Chevy Traverse | Philadelphia, PA | $370/week |

5

**ATTACHMENT 2**
**Location Addendum #8**

This Location Addendum ("**Location Addendum #8**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #8 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #8 and the Agreement, this Location Addendum #8 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1.  **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Boston, MA |
|---|---|
| # of Vehicles | Approximately 50-700, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #8 Effective Date" shall be the Amendment No. 4 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1.  **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident and $1,000,000 disease, each employee and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the commercial general liability and commercial automobile liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

6

**Company Insurance Obligations.**

1.  During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the commercial general liability and automobile liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

- **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company will maintain a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with limits and coverages required by law, and contingent collision and

7

UBER-MDL3084-BW-00054231

|  | comprehensive coverage (up to actual cash value, subject to a $1,000 deductible).<br><br>**Delivery Auto Insurance**<br><br>The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:<br><br>● **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.<br><br>● **Period 1: App On (Available)** – Company will maintain a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability. Uber will not maintain any physical damage coverage during this Period.<br><br>● **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible). |
|---|---|

2.   **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Boston, MA | $243/week |
| Comfort | Chevy Malibu | Boston, MA | $275/week |
| UberXL | Chevy Traverse | Boston, MA | $370/week |

CONFIDENTIAL                                                    UBER-MDL3084-BW-00054232

P-04537.00056

**ATTACHMENT 3**
**Location Addendum #9**

This Location Addendum ("**Location Addendum #9**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #9 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #9 and the Agreement, this Location Addendum #9 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Washington, DC |
|---|---|
| # of Vehicles | Approximately 50-700, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #8 Effective Date" shall be the Amendment No. 4 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the commercial general liability and commercial automobile liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

9

DocuSign Envelope ID: AA10B960-72DD-4144-B2BC-9C45E0EDF2E2

**Company Insurance Obligations.**

1.   During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident; $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below.  Company agrees to add Uber as an additional insured to the commercial general liability and automobile liability insurance policies                    listed                    herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

●    **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

●    **Period 1: App On (Available)** – Company will maintain a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability, and any other state required coverages.  Uber will not maintain any physical damage coverage during this Period.

●    **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with limits and coverages required by law, and contingent collision and

10

|   | comprehensive coverage (up to actual cash value, subject to a $1,000 deductible). **Delivery Auto Insurance** The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform: <ul><li>**Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.</li><li>**Period 1: App On (Available)** – Company will maintain a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability. Uber will not maintain any physical damage coverage during this Period.</li><li>**Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible).</li></ul> |
|---|---|

2.  **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Washington, DC | $243/week |
| Comfort | Chevy Malibu | Washington, DC | $275/week |
| UberXL | Chevy Traverse | Washington, DC | $370/week |

11

UBER-MDL3084-BW-00054235

P-04537.00059

**ATTACHMENT 4**
**Location Addendum #10**

This Location Addendum ("**Location Addendum #10**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #10 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #10 and the Agreement, this Location Addendum #10 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1.  **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| | |
|---|---|
| City ("**Location**") | Baltimore, MD |
| # of Vehicles | Approximately 50-700, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #10 Effective Date" shall be the Amendment No. 4 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1.  **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the commercial general liability and commercial automobile liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

12

**Company Insurance Obligations.**

2.  During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the commercial general liability and automobile liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

*   **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

*   **Period 1: App On (Available)** – Company will maintain a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

*   **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with limits and coverages required by law, and contingent collision and

13

|  | comprehensive coverage (up to actual cash value, subject to a $1,000 deductible).<br><br>**Delivery Auto Insurance**<br><br>The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:<br><br>●    **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.<br><br>●    **Period 1: App On (Available)** – Company will maintain a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability. Uber will not maintain any physical damage coverage during this Period.<br><br>●    **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible). |
|---|---|

3. **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of, liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Baltimore, MD | $243/week |
| Comfort | Chevy Malibu | Baltimore, MD | $275/week |
| UberXL | Chevy Traverse | Baltimore, MD | $370/week |

14

**AMENDMENT NO. 5 TO THE**
**VEHICLE SOLUTIONS PROGRAM**
**STRATEGIC RELATIONSHIP AGREEMENT**

This Amendment No. 5 ("**Amendment No. 5**") is made as of August 27, 2024 ("**Amendment No. 5 Effective Date**") and hereby amends the Vehicle Solutions Program Strategic Relationship Agreement, dated July 1, 2022, (the "**Agreement**") by and between Voyager Global Mobility LLC, d/b/a "Buggy", "FastTrack" and "UCars", a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1725 3rd Street, San Francisco, CA 94158 ("**Uber**"). Capitalized terms used but not otherwise defined in this Amendment No. 5 have the respective meanings ascribed to such terms in the Agreement. In the event of any inconsistency or conflict between the Agreement and this Amendment No. 5, the terms and conditions of this Amendment No. 5 shall govern and control.

**WHEREAS,** Uber and Company executed the Agreement to make vehicles accessible in Miami, FL and New York City to people who request or provide rides or deliveries with the Uber App;

**WHEREAS**, the parties amended the Agreement on July 18, 2022 to include Orlando, FL as an additional Location;

**WHEREAS**, the parties amended the Agreement on October 11, 2022 to include Phoenix, AZ, Dallas, TX, and Atlanta, GA as additional Locations;

**WHEREAS,** the parties amended the Agreement on March 6, 2023 to add Las Vegas, Nevada as an additional Location;

**WHEREAS,** the parties amended the Agreement on October 17, 2023 to extend the Term and add Tampa, FL, Houston, TX, Philadelphia, PA, Boston, MA, Washington, DC, and Baltimore, MD as additional Locations;

**WHEREAS,** the parties now desire to amend the Agreement to Austin, TX and Milwaukee, WI as additional Locations and add an additional API to Annex 1 of the Data .

**NOW, THEREFORE,** in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1. **Attachment 2 (Uber Data Processing Agreement) Annex 1 (Overview of Uber Personal Data Processing)** is hereby amended to add an additional API as follows:

"

| Uber API - Driver Eligibility and Risk Assessment | Weblink Reference Details |
|---|---|
| [API] GET Driver Info | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/get-driver-info |
| [API] GET Compliance Info | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/get-compliance-info |
| [Webhook] Driver Status Change | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/driver-status-change |
| [API] Search Drivers | https://developer.uber.com/docs/vehicles/references/api/v1/driver-risk/search-drivers |

"

2. **Location Addendum #4 (Dallas, TX)** is hereby amended to include Austin, TX as an additional Location.

3. **A new Location Addendum #11** is hereby added to include Milwaukee, WI as an additional Location and is attached hereto as Attachment 1.

4. **Additional Provisions**

   a. **Effect on Agreement**: Except as specifically amended hereby, the terms and provisions of the Agreement are in all other respects ratified and confirmed and remain in full force and effect without modification or limitation.

   b. **Governing Law:** This Amendment No. 5 shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

   c. **Counterparts:** This Amendment No. 5 may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. The parties agree to accept signatures by electronic transmission in portable document format (PDF) in lieu of original signatures and that this Amendment No. 5 will have the same binding and enforceable effect with electronic PDF signatures as it would have with original signatures.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment No. 5 as of the Amendment No. 5 Effective Date.

| **Voyager Global Mobility LLC** | | **Uber Technologies, Inc.** | |
|---|---|---|---|
| By: | *Tom Peterson* | By: | *Jack Kloster* |
| | EDEDF847E05140E... | | 8745B50ABCC441D... |
| Name: | Tom Peterson | Name: | Jack Kloster |
| Title: | Chief Commercial Officer | Title: | Head of Business Development, US&C |

UBER-MDL3084-BW-00054240

**ATTACHMENT 1**
**Location Addendum #11**

This Location Addendum ("**Location Addendum #11**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #11 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #11 and the Agreement, this Location Addendum #11 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| | |
|---|---|
| City ("**Location**") | Milwaukee, WI |
| # of Vehicles | Approximately 50-300, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #11 Effective Date" shall be the Amendment No. 5 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Corporate Insurance**<br><br>1. **Uber's Insurance Obligations.** During the Term of this Agreement, Uber will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident and $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a combined single limit of at least $1,000,000. Uber agrees to add Company as an additional insured to the commercial general liability and commercial automobile liability insurance policies referenced above.<br><br>In addition, during the Term of this Agreement, Uber will maintain (e) TNC/rideshare and (f) delivery automobile insurance on behalf of drivers operating on the Uber platform as detailed below. |

**Company Insurance Obligations.**

1. During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the commercial general liability and automobile liability insurance policies listed herein.

All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A- VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement.

**TNC/Rideshare Auto Insurance**

The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in TNC passenger transportation activity on the Uber platform:

- **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.

- **Period 1: App On (Available)** – Company will maintain a primary commercial auto liability policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $30,000 per accident for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.

- **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with limits and coverages required by law, and contingent collision and

UBER-MDL3084-BW-00054242

|  | comprehensive coverage (up to actual cash value, subject to a $1,000 deductible).<br><br>**Delivery Auto Insurance**<br><br>The below insurance requirements shall apply to an accident occurring while Joint Members are engaged in delivery activity on the Uber platform:<br><br>●     **Period 0: App Off** – No Uber insurance will be maintained on behalf of Joint Members operating on the Uber platform. Company or Joint Member must maintain state compliant primary commercial automobile coverage, including for liability.<br><br>●     **Period 1: App On (Available)** – Company will maintain a primary commercial automobile insurance policy on behalf of Joint Members operating on the Uber platform with limits of at least $50,000 per person and $100,000 per accident for bodily injury liability and $25,000 per accident for property damage liability, and any other state required coverages. Uber will not maintain any physical damage coverage during this Period.<br><br>●     **Period 2-3: App On (En Route or On Trip)** – Uber will maintain a primary commercial auto insurance policy on behalf of Joint Members operating on the Uber platform, with a combined single liability limit of at least $1,000,000, and contingent collision and comprehensive coverage (up to actual cash value, subject to a $1,000 deductible). |
|---|---|

2.    **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Nissan Sentra | Milwaukee, WI | $243/week |
| Comfort | Chevy Malibu | Milwaukee, WI | $275/week |
| UberXL | Chevy Traverse | Milwaukee, WI | $375/week |

CONFIDENTIAL

**AMENDMENT NO. 6 TO THE**
**VEHICLE SOLUTIONS PROGRAM**
**STRATEGIC RELATIONSHIP AGREEMENT**

This Amendment No. 6 ("**Amendment No. 6**") is made as of March 25, 2025 ("**Amendment No. 6 Effective Date**") and hereby amends the Vehicle Solutions Program Strategic Relationship Agreement, dated July 1, 2022 (the "**Agreement**") by and between Voyager Global Mobility LLC, d/b/a "Buggy", "FastTrack" and "UCars", a New York limited liability company with offices at 445 Empire Blvd, Brooklyn, NY 11225 ("**Company**") and Uber Technologies, Inc., a Delaware corporation, with offices located at 1725 3rd Street, San Francisco, CA 94158 ("**Uber**"). Capitalized terms used but not otherwise defined in this Amendment No. 6 have the respective meanings ascribed to such terms in the Agreement. In the event of any inconsistency or conflict between the Agreement and this Amendment No. 6, the terms and conditions of this Amendment No. 6 shall govern and control.

**WHEREAS,** Uber and Company executed the Agreement to make vehicles accessible in Miami, FL and New York City to people who request or provide rides or deliveries with the Uber App;

**WHEREAS**, the parties amended the Agreement on July 18, 2022 to include Orlando, FL as an additional Location;

**WHEREAS**, the parties amended the Agreement on October 11, 2022 to include Phoenix, AZ, Dallas, TX, and Atlanta, GA as additional Locations;

**WHEREAS,** the parties amended the Agreement on March 6, 2023 to add Las Vegas, Nevada as an additional Location;

**WHEREAS,** the parties amended the Agreement on October 17, 2023 to extend the Term and add Tampa, FL, Houston, TX, Philadelphia, PA, Boston, MA, Washington, DC, and Baltimore, MD as additional Locations;

**WHEREAS,** the parties amended the Agreement on August 27, 2024 to add Austin, TX and Milwaukee, WI as additional Locations and add an additional API to Annex 1 of the Data Processing Agreement.

**WHEREAS,** the parties now desire to amend the Agreement to add Westchester, NY as an additional Location and add additional APIs to Annex 1 of the Data Processing Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Uber and Company agree as follows:

1.  **Section 2.1 (Term)** is hereby deleted in its entirety and replaced with the following:

    "**2.1 Term.**  The term of this Agreement will commence as of July 1, 2023 and will continue for a period of one (1) year, which will be automatically renewed for subsequent one (1) year periods (individually and collectively, the "**Term**"), unless either party has provided written notice of non-renewal at least sixty (60) days prior to the expiration then-current Term."

2.  **Attachment 2 (Uber Data Processing Agreement) Annex 1 (Overview of Uber Personal Data Processing)** is hereby amended to add additional APIs as follows:

"

| ID | Status | API Category | API User | Uber API | Weblink Reference Details |
|----|--------|--------------|----------|----------|---------------------------|
| 1 | Active | Driver Management | Rentals | [API] GET Driver Info | https://developer.uber.com/docs/vehicles/references/api/v1/driver-management/get-driver-info |

| 2 | Active | Driver Management | Rentals | [API] GET Compliance Info | https://developer.uber.com/docs/vehicles/references/api/v1/driver-management/get-compliance-info |
| 3 | Active | Driver Management | Rentals | [Webhook] Driver Status Change | https://developer.uber.com/docs/vehicles/references/api/v1/driver-management/driver-status-change |
| 4 | Active | Driver Management | Rentals | [API] Search Drivers | https://developer.uber.com/docs/vehicles/references/api/v1/driver-management/search-drivers |
| 5 | New | Vehicle Onboarding and Compliance | Rentals | [API] Upload Document | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-onboarding/upload-document |
| 6 | New | Vehicle Onboarding and Compliance | Rentals | [Webhook] Document Status Change | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-onboarding/document-status-change |
| 7 | New | Vehicle Onboarding and Compliance | Rentals | [Webhook] Vehicle Status Change | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-onboarding/vehicle-status-change |
| 8 | New | Vehicle Management | Fleets/Rentals | [API] Create Vehicle | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-management/create-vehicle |
| 9 | New | Vehicle Management | Fleets/Rentals | [API] Get Vehicle | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-management/get-vehicle |
| 10 | New | Vehicle Management | Fleets/Rentals | [API] Delete Vehicle | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-management/delete-vehicle |
| 11 | New | Vehicle Management | Rentals | [API] Update Vehicle | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-management/update-vehicle |
| 12 | New | Vehicle Management | Rentals | [API] Get Vehicles By Owner | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-management/get-vehicles-by-owner |
| 13 | New | Vehicle Management | Rentals | [API] Search Vehicles | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-management/search-vehicles |
| 14 | New | Organization Management | Fleets/Rentals | [API] Get Organizations | https://developer.uber.com/docs/vehicles/references/api/v1/org-management/get-orgs |
| 15 | New | Offline Reporting | Fleets/Rentals | [API] Generate Report | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-suppliers/suppliers/generate-report |
| 16 | New | Offline Reporting | Fleets/Rentals | [API] Get Report By Report ID | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-suppliers/suppliers/get-report-by-report-id |

| 17 | New | Offline Reporting | Fleets/Rentals | [API] List All Reports for the Organization | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-suppliers/suppliers/list-reports |
| 18 | New | Offline Reporting | Fleets/Rentals | [API] Create Report URL for the Report | https://developer.uber.com/docs/vehicles/references/api/v1/vehicle-suppliers/suppliers/create-report-url |

"

3. **A new Location Addendum #12** is hereby added to include Westchester, NY as an additional Location and is attached hereto as Attachment 1.

4. **Additional Provisions**

   a. **Effect on Agreement**:  Except as specifically amended hereby, the terms and provisions of the Agreement are in all other respects ratified and confirmed and remain in full force and effect without modification or limitation.

   b. **Governing Law:**  This Amendment No. 6 shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its choice or conflict of laws provisions.

   c. **Counterparts:** This Amendment No. 6 may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. The parties agree to accept signatures by electronic transmission in portable document format (PDF) in lieu of original signatures and that this Amendment No. 6 will have the same binding and enforceable effect with electronic PDF signatures as it would have with original signatures.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment No. 6 as of the Amendment No. 6 Effective Date.

**Voyager Global Mobility LLC**

By: _Tom Peterson_

Name: Tom Peterson

Title: Chief Commercial Officer

**Uber Technologies, Inc.**

By: _Jack Kloster_

Name: Jack Kloster

Title: Head of Business Development, US&C

**ATTACHMENT 1**

"

**Location Addendum #12**

This Location Addendum ("**Location Addendum #12**") to the Vehicle Solutions Program Strategic Relationship Agreement (the "**Agreement**") is entered into as of the effective date set forth below (the "**Location Addendum #12 Effective Date**") by Uber Technologies, Inc. ("**Uber**") and Voyager Global Mobility LLC, ("**Company**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed in the Agreement. In the event of a conflict between this Location Addendum #12 and the Agreement, this Location Addendum #12 shall prevail with respect to the subject matter set forth herein. In consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

1. **Addendum Terms.** The table below sets forth certain additional terms and activities to be undertaken by each party:

| City ("**Location**") | Westchester, NY |
|---|---|
| # of Vehicles | Approximately 100-500, subject to market demand |
| Location Addendum #3 Effective Date & Term | The "Location Addendum #12 Effective Date" shall be the Amendment No. 6 Effective Date.<br><br>The Term shall be in accordance with Section 2.1 (Term) set forth in the Agreement. |
| Additional Uber Responsibilities (from Article 3) | N/A |
| Additional Company Responsibilities (from Article 4) | N/A |
| Location-Specific Insurance Requirements | **Company Insurance Obligations.**<br><br>During the Term of this Agreement and for a period of three (3) years thereafter for claims-made policies, Company will provide and maintain, at its sole expense, insurance consistent with acceptable and prudent business practices, including, at a minimum: (a) workers' compensation insurance in accordance with applicable law; (b) employer's liability insurance with minimum limits of $1,000,000 each incident, $1,000,000 disease, each employee, and $1,000,000 disease, policy limit; (c) commercial general liability insurance including but not limited to coverage for product and completed operations, personal and advertising injury, and contractual liability coverage with minimum limits of $5,000,000 per occurrence and $5,000,000 in the aggregate; and (d) commercial auto liability covering owned, non-owned, and hired vehicles used on the Uber platform as detailed below. Company agrees to add Uber as an additional insured to the commercial general liability and automobile liability insurance policies listed in (a) through (d) above.<br><br>In addition, during the Term of this Agreement, Company shall maintain a primary commercial auto liability insurance policy covering Joint Members while engaged in passenger transportation activity on the Uber platform with minimum liability limits in the amount not less than the minimum limits and coverages required by the Westchester |

UBER-MDL3084-BW-00054247

| | County Transportation and Limousine Commission, and any other state required coverages.<br><br>All policies shall be written by reputable insurance companies with an A.M. Best rating of not less than A- VII. Company agrees that the above-referenced insurance shall not be canceled or materially reduced without thirty (30) days' prior written notice to Uber, and that Company's insurers issuing those insurance policies shall waive rights of subrogation and indemnity against Uber. Upon either party's request, the other party shall provide a certificate of insurance as evidence of the above requirements. In no event shall the limits of any policy be considered as limiting the liability of a party under this Agreement. |
|---|---|

2. **Rates.** Company plans to charge drivers and delivery persons the rates set forth in Table 1 below, and such rates shall be exclusive of liability insurance and physical damage coverages that shall be provided in accordance with the terms set forth in the table above. Company, in its sole discretion, may adjust the rates for any Location and per Section 10.1 in the Agreement shall provide Uber with notice of any price increase three (3) days prior to such change.

**Table 1:  Rates**

| Vehicle Class | Makes and Models | City | Minimum Starting Rate (Hourly or Weekly) excluding taxes and fees and insurance surcharge |
|---|---|---|---|
| Compact + Mid-Size | Toyota Camry | Westchester, NY | $280/week |

"