https://www.tampabay.com/opinion/2021/12/16/sex-offender-registry-laws-dont-work-heres-what-might-column/

OPINION | Guest Column

Meghan M. Mitchell,
Kristen M. Zgoba,
Alex R. Piquero

# Sex offender registry laws don't work. Here's what might. | Column

The uncomfortable truth? Those who commit sexual offenses are usually not strangers.

   

Trial Exhibit No.
P-05002

P-05002.00001

https://www.tampabay.com/opinion/2021/12/16/sex-offender-registry-laws-dont-work-heres-what-might-column/

Published Dec. 16, 2021

There are roughly half a million sexual assault incidents in the United States every year — and more than 11,000 in Florida alone. These numbers are troubling.

So it's no surprise that people search the sex offender registration website to make sure that no one convicted of a sexual offense lives near them or more worrisome, their children's school, day care or neighborhood park. The premise is simple: to make people feel safer in their community. But are they truly safer? Have we been relying on the wrong system?



Kristen M. Zgoba [ Provided ]

P-05002.00002

Long before the world was introduced to the predatory behavior of people like

lawmakers across the nation worked to deter victimization and protect citizens from sexual assault. They enacted policies governing individuals convicted of sexual offenses — known as sex offender registration and notification (SORN) laws. These policies allow for law enforcement to maintain a list to track and monitor sex offenders, and registry websites provide the public with registrants' addresses and identifying information.



Meghan M. Mitchell [ Provided ]

But do registration and notification policies actually deter individuals inclined to commit sexual offenses and protect citizens?

A new study of ours shows that these policies are not effective in deterring crime or protecting citizens. We summarized 25 years of research and 474,640 formerly incarcerated sex offenders. We found that such policies do not reduce sexual or non-sexual recidivism.



Alex R. Piquero [ Courtesy of Alex R. Piquero ]

No reduction. At all.

If the policies are ineffective, then why do we have them?

These policies exist as a governmental response to community fear and outrage. There is political pressure to increase public safety. The problem is that these laws were enacted very quickly after child murder cases and became wide-reaching governmental mandates without research to back their existence and effectiveness. Fast forward 25 years, and the public and politicians are relying on window-dressing to feel safe.

This false sense of safety comes with real consequences.

First, sex offender registration and notification policies have had a net-widening effect, making more registrants eligible and for considerably longer periods of time even though individuals convicted of sexual offenses age out of crime, as do others.

https://www.tampabay.com/opinion/2021/12/16/sex-offender-registry-laws-dont-work-heres-what-might-column/

Second, these policies use a "one size fits all" approach and misallocate resources and supervision to offenders with lower risk levels. The ever-growing registry has become a fiscal burden for states.

Finally, sex offender registration and notification policies continue to label and stigmatize individuals after they have served their time. Subsequent dehumanization disrupts any meager attempts to reintegrate the person back into society. Despite what seems like common sense, these policies create obstacles to the factors that promote law-abiding behavior: jobs, secure housing and social support.

P-05002.00005

https://www.tampabay.com/opinion/2021/12/16/sex-offender-registry-laws-dont-work-heres-what-might-column/

There are better ways. We need to educate the public, law enforcement and policy makers that governmental oversight of registrants is not a feasible solution to protecting potential sexual abuse victims. This is not a call to "go soft" on crime, it is an encouragement to "go smart" on crime and use data to make informed decisions. This reimagining requires us as a society to confront the uncomfortable truth that those who commit sexual offenses are usually not strangers — they are more likely to be the most trusted figures around us — our loved ones, our babysitters, coaches, teachers and close family friends.

In the end, parents, community members, and potential home buyers and renters will continue to frequent the sex offender registration website, gathering a false sense of safety — potentially at their own peril — until we as a society are willing to address who the perpetrators of sexual violence are and accept the fact that sex offender registration and notification policies demonstrate little value in making a meaningful impact. Tough-on-crime policies are not always smart policies. It is time to do better.

Meghan M. Mitchell (mmitchell@ucf.edu; @MeghanMMitchell) is an assistant professor in the Department of Criminal Justice at the University of Central Florida. Kristen M. Zgoba (kzgoba@fiu.edu) is an assistant professor in the Department of Criminology and Criminal Justice at Florida International University. Alex R. Piquero (axp1954@miami.edu; @DrAlexPiquero) is chair of the Department of Sociology and Criminology and Arts & Sciences Distinguished Scholar at the University of Miami.