UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 23-md-03084-CRB   (LJC) |
| This Document Relates To:<br><br>ALL CASES. | **ORDER RESOLVING JOINT DISCOVERY LETTER REGARDING SUBPOENAS TO LYFT**<br><br>Re: Dkt. No. 5003 |

### A.    Introduction

In this MDL, six bellwether cases have been selected for the first wave of trials including one case (*Dean*) for which the trial has now concluded with a jury verdict. Pending before the Court is a joint discovery letter in which four of the bellwether Plaintiffs seek an order compelling third-party Lyft, a ride-hailing platform like Uber, to provide information regarding the drivers at issue in those bellwether cases. Dkt No. 5003. Specifically, the subpoenas seek (a) complete background check results for each and every background check completed on the subject driver; (b) all documents related to the subject driver that were generated for or otherwise shared with the Industry Sharing Safety Program (ISSP), HireRight, LLC or any regulator (including law enforcement); and (c) all documents generated by Lyft in relation to the subject driver, including specifically reports of sexual harassment, sexual misconduct, or sexual assault and driving history. Dkt No. 5003-2 at 9. The subpoenas were served on April 11, 2025, and in a subsequent email to meet and confer regarding the discovery request, the Plaintiffs agreed to narrow the scope of the documents requested and limit the request to records dated prior to each incident. Dkt. No. 5003-4 at 1. To date, Lyft has provided no documents in response to the subpoenas. Plaintiffs represent, and Lyft has not disputed, that Lyft has refused to search for any of the requested documents.

United States District Court
Northern District of California

The Court earlier denied a similar request filed on Christmas Eve in connection with the first bellwether case to proceed to trial, the case brought by Plaintiff Jaylynn Dean.  See Dkt. Nos. 4797, 4800.  The Court determined that on the record presented, there was insufficient evidence that Plaintiff Dean had pursued her subpoena with diligence.  An attorney for Dean who had picked up the discussions with Lyft concerning the subpoena in October 2025 provided a one-page declaration with limited information concerning his understanding of what had happened.  The attorney and law firm that handled the meet and confer concerning the subpoena was unidentified and no particular information regarding the substance of that attorney's engagement on the issue was provided.  Accordingly, given that the discovery cut-off for the Wave 1 bellwether Plaintiffs had been set for October 6, 2025, *see* Dkt. No. 3533 at 3,[1] and taking into account how new "last-minute" evidence could "jeopardize the efficient management of" that then-imminent trial, the Court denied the late request based on an insufficient showing of diligence.  Dkt. No. 4800.  The denial, however, was limited to the request as it pertained to the Dean case, and the Court permitted the other Wave I Plaintiffs to file a letter concerning their subpoenas and provide a more fulsome record on the issue.  *Id.*

The Court granted Plaintiffs' request for an extension of time for that letter, without prejudice to Lyft arguing that the requested extension weighed against Plaintiffs showing diligence.  Dkt. No. 4952.  On January 14, 2026, four bellwether Plaintiffs[2] filed a joint discovery letter with Lyft to further litigate the issue as it pertained to their subpoenas, and they provided more detail concerning what had happened.  Dkt. No. 5003.  Plaintiffs' counsel Sommer Luther filed an "amended declaration" on January 20, 2026 adding information about a subpoena that Uber served on Lyft in November 2025, Dkt. No. 5039, and Lyft responded to the declaration,

---

[1] An October 13, 2025 Order set a mid-November cutoff for "ongoing Wave 1 discovery, namely that in connection with the undersigned's recent discovery orders, Dkt. Nos. 3973, 4060."  Dkt. No. 4123 at 2–3.  The subpoenas at issue here are not connected to those earlier discovery Orders, and no other fact discovery specific to the Wave 1 cases should have been "ongoing" as of that date if the parties had complied with the October 6, 2025 cut-off.

[2] Bellwether Plaintiff WHB 318 has not served a subpoena on Lyft, at least as of the date of the parties' January 14, 2026 joint letter.  *See* Dkt. No. 5003 at 2 n.1.  That Plaintiff was added to the first wave of bellwether trials later than the other Plaintiffs and has a different discovery schedule. Pursuant to Judge Breyer's Order at Dkt. No. 4682, the discovery cut-off in the *WHB 318* case is February 27, 2026.

2

1    Dkt. No. 5053.  The Court sua sponte grants leave for these supplemental filings and considers

2    them both.

3        **B.    Plaintiffs' Diligence**

4        Civil Local Rule 37-3 required Plaintiffs to raise this discovery-related motion no later

5    than seven days after the October 6, 2025 case-specific discovery cut-off.  Plaintiffs' failure to do

6    so implicates the "good cause" standard to modify a scheduling order under Rule 16(b) of the

7    Federal Rules of Civil Procedure, which focuses on diligence.  "Although the existence or degree

8    of prejudice to the party opposing the modification might supply additional reasons to deny a

9    motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If

10   that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975

11   F.2d 604, 609 (9th Cir. 1992) (citation omitted).  But a "district court 'is given broad discretion in

12   supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a

13   pretrial order'" fall within the scope of that discretion.  *C.F. ex rel. Farnan v. Capistrano Unified*

14   *Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011) (quoting *Johnson*, 975 F.2d at 607).

15       As this Court previously held in another case, "diligence is not a binary question," and the

16   possibility that a "*more* diligent attorney might have" behaved differently does not resolve the

17   issue.  *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-cv-04850-AMO (LJC), 2025 WL

18   351596, at *2 (N.D. Cal. Jan. 31, 2025).  In other words, a moving party must show diligence, but

19   it need not be perfect.  The history of a given case is relevant to the question of diligence.  *See,*

20   *e.g.*, *C.F.*, 654 F.3d at 984 (affirming a district court's decision to allow an amended answer after

21   the deadline set by a scheduling order where an intervening summary judgment decision, "rather

22   than any bad faith or dilatory purpose," motivated the defendant to amend).

23       Lyft is a third party that has actively litigated a range of discovery issues during the course

24   of the MDL.  In particular, the Court ordered Lyft in 2024 to produce discovery regarding the

25   Industry Sharing Safety Program (ISSP), a safety measure adopted by Uber and Lyft whereby they

26   agreed to share information about passenger complaints against drivers.  *See* Dkt. No. 695 at 5–9;[3]

27

28   [3] *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2024
     WL 3416644, at *3–5 (N.D. Cal. July 14, 2024).

United States District Court
Northern District of California

1    Dkt. Nos. 1776, 1797.

2    　　　As the MDL advanced to case-specific discovery, Plaintiffs served the subpoenas at issue

3    in April of 2025, well in advance of the discovery cut off.  ECF No. 5003-1, ¶ 4 & Ex. 1.  The

4    record includes, among other things, a copy of correspondence exchanged between the attorney

5    who followed up with Lyft regarding the company's response to subpoenas, including the last

6    email that the attorney sent to Lyft's counsel on June 30, 2025.  Dkt. No. 5003-4 at 1.  Plaintiffs'

7    counsel's emails show a meaningful effort in June 2025 to justify the request in light of ISSP

8    information Plaintiffs had already received or not received regarding the subject drivers.  There is

9    no indication in the record regarding whether Lyft responded to that final email or the substance of

10    Lyft's response, if there was one.

11    　　　Plaintiffs (specifically, Dean's attorney Simon Grille) resumed discussions with Lyft

12    regarding the subpoenas at some point in October, and those discussions continued until they

13    reached an impasse on December 8, 2025.  *See* Dkt. No. 5003-1, ¶ 8.  Plaintiffs first notified the

14    Court of this dispute in a December 15, 2025 status report, Dkt. No. 4674 at 2–3, and the Court

15    notified Plaintiffs that they would need to show diligence to raise that dispute after the Local Rule

16    37-3 deadline, Dkt. No. 4717.  As noted above, Dean and Lyft filed a discovery letter brief on

17    December 24, 2025, and the Court promptly denied relief as to that case, which was set for trial in

18    January.  Dkt. Nos. 4797, 4800.

19    　　　In the meantime, unbeknownst to Plaintiffs or the Court, Uber had served a subpoena on

20    Lyft in November seeking documents related to Dean, and Lyft produced some documents in

21    response (though it asserts that it did not produce all documents that Uber sought).  Dkt. No. 5039,

22    ¶¶ 15–17 & Ex. 4; Dkt. No. 5039 at 2 n.1.

23    　　　The record presented by Plaintiffs and Lyft does not reveal or explain their engagement on

24    this particular discovery dispute between June and their resumed discussions in October, but

25    Plaintiffs demonstrated more diligence than Uber.  Uber waited until after the close of case-

26    specific discovery even to serve its subpoena on Lyft for the *Dean* case, for which Lyft produced

27    at least some documents.  Moreover, while non-parties are generally entitled to greater protection

28    in discovery than parties, a non-party's contention that a particular party was not diligent carries

less weight when it accepts a late subpoena for third-party discovery from another party. Deadlines imposed by the Court protect the parties' ability to prepare for trial, the Court's ability to manage its docket, and guard against burdening parties and non-parties alike with endless discovery requests in an action. Lyft, as a non-party, is not affected by the prospect of late discovery requests on the eve of a trial to which it is not a party. To the extent that the case-specific discovery cut-off in this litigation offered a shield from third-party discovery obligations, Lyft has not justified why one party may be permitted to serve a subpoena after the cut-off while another party should be disallowed from renewing a request for discovery pursuant to a timely served subpoena. In other words, Lyft has not persuaded the Court that different standards for diligence should apply to different parties in the same action, at least so long as any such delay does not require Lyft to produce documents on an unreasonable timeline.

Lyft's lack of awareness regarding the discovery schedule in the *Dean* is not persuasive, as Lyft could have applied the same attentiveness to managing its responses to Uber's discovery requests in the *Dean* case. *See* Dkt. No. 5053 at 2 n.1 (asserting that Lyft was not "aware of the discovery schedule in *Dean*" when it produced documents in response to Uber's subpoena). There is no indication that Lyft expressed concerns to Plaintiffs regarding their diligence or lack thereof before the Court raised the issue, much less that Lyft objected to Uber's belated subpoena. Interests of the Court and other parties to the case in holding to the case schedule, as well the burden on a subpoena recipient to produce documents on an expedited basis before an imminent trial, can of course sometimes justify denying a belated motion to enforce a subpoena served on a third party, as the Court did here with respect to the *Dean* case. But when Lyft has already produced documents in response to a subpoena that Uber served after the applicable discovery cut-off, and there is sufficient time before the next bellwether trial for Lyft to produce documents without undue burden or disruption, interests of justice weigh against denying Plaintiffs' motion as untimely.

Under the unusual circumstances presented, the Court finds Plaintiffs' degree of diligence sufficient and does not find that other considerations warrant denying Plaintiffs' motion based on its untimeliness. The Court therefore proceeds to consider the merits of the subpoena.

United States District Court
Northern District of California

5

C.    **Relevance and Burden**

This Order presumes the reader's familiarity with Rule 45 of the Federal Rules of Civil Procedures, background principles of discovery in federal civil litigation, and caselaw recognizing the heightened protection afforded to non-parties to litigation.

Plaintiffs' subpoenas seek the following documents:

> **REQUEST 1**: Please produce the complete background check results in Your possession for each and every background check completed on the Subject Driver.
>
> [. . .]
>
> **REQUEST 2**: Please produce all documents related to the Subject Driver that were generated for or otherwise shared with the Industry Sharing Safety Program, HireRight, L.L.C., or any Regulator (including any law-enforcement agency).
>
> [. . .]
>
> **REQUEST 3**: Please produce all documents You generated in related [sic] to the Subject Driver, including specifically reports of sexual harassment, sexual misconduct, or sexual assault and driving history.

Dkt. No. 5003-3 at 3–4.

Those documents generally could be relevant to show what information Uber could have learned if it had conducted more thorough background checks before allowing drivers to use its platform, or if Uber (in conjunction with Lyft) had structured or implemented their ISSP data-sharing partnership differently, or perhaps also if Uber had conducted more thorough investigations in response to riders' complaints. Such information, if found, would likely be admissible and relevant at trial. Even if Lyft might not have any relevant information beyond what Uber already knew, or if Plaintiffs do not ultimately prevail in showing any defect in Uber's background checks or investigations, Plaintiffs have a legitimate interest in exploring those issues.

On the other side of the scale, Lyft has asserted only conclusory and generic concerns about the burden or cost of responding. Lyft's concerns about sharing information with its primary competitor are mitigated by the Protective Order in this litigation. As Plaintiffs note, such concerns apparently did not prevent Lyft from sharing at least some records related to Plaintiff Dean in response to Uber's subpoena, without need for Uber to seek relief from the Court. The Protective Order, in conjunction with further measures addressed below, is also sufficient to

6

1    protect the privacy interests of Lyft's non-party customers, which Lyft mentioned briefly in the

2    objections it served on Plaintiffs but did not address in its portion of the joint letter submitted to

3    the Court.

4        Some restrictions are appropriate.  First, Plaintiffs agreed in correspondence with Lyft that

5    they were "willing to limit [their] requests to records dated prior to each incident, as [they] agree

6    that subsequent reports or deactivations would not be relevant."  Dkt. No. 5003-4 at 1.  That

7    concession was appropriate, and the Court holds them to it.  For all three of the requests in the

8    subpoenas, Lyft need only produce documents predating the alleged incident giving rise to the

9    case at issue.

10        Second, Plaintiffs' third request is overbroad to the extent it seeks "all documents [Lyft]

11    generated in related to the Subject Driver, including . . . driving history."  Dkt. No. 5003-3 at 4.

12    Plaintiffs have not attempted to justify the relevance of *all* documents Lyft might have created

13    with respect to a particular driver, and under the circumstances of Lyft's relationship with its

14    drivers, "driving history" sweeps nearly as broadly as "all documents."  In response to Request

15    No. 3, Lyft must produce all documents it generated regarding the Subject Driver that relate to

16    sexual harassment, sexual misconduct, or sexual assault, including but not limited to documents

17    that relate to allegations of such misconduct or the trip during which the alleged misconduct

18    occurred, or analyze the risk of such misconduct by the Subject Driver.

19        Third, the parties' joint letter does not address the privacy of interests of Lyft's customers

20    that may have reported sexual misconduct by a driver.  All personally identifying information of

21    Lyft's customers shall be treated as Highly Confidential – Attorneys' Eyes Only under the

22    Protective Order.  Plaintiffs' counsel shall not contact Lyft customers identified through Lyft's

23    document production without leave of the Court.[4]  Lyft need not notify its customers before

24    producing documents, but if it chooses to do so, the parties shall meet and confer and submit a

25    joint statement no later than three business days from the date of this Order presenting a joint

---

[4] Unlike the Uber customers addressed in the Court's June 25, 2025 Order, Lyft's customers seem less likely to have relevant information about what *Uber* might have learned through more thorough investigations, and any defect in *Lyft's* investigatory or reporting practices seems unlikely to be relevant to Plaintiffs' claims against Uber.  *Cf.* Dkt. No. 3346 at 2.

United States District Court
Northern District of California

proposed form of notice or separate proposals, which should be modeled off of Uber's notice that the Court approved on July 2, 2025.  *See* Dkt. No. 3410.

With those modifications, the Court finds that the relevance of Plaintiffs' subpoenas outweighs their burden on Lyft or other non-parties who may be affected by Lyft's production of documents.  Lyft shall produce documents as stated above no later than three weeks from the date of this Order for Plaintiff WHB 832 (whose trial is approaching in April), and no later than two months from the date of this Order for the other three Plaintiffs at issue.

**D.     Conclusion**

Plaintiffs' motion to compel is GRANTED IN PART, and Lyft is ORDERED to produce documents as stated above.

**IT IS SO ORDERED.**

Dated: February 18, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge