LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Uber
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S (COLLECTIVELY "UBER") REPLY IN SUPPORT OF THEIR OBJECTION TO SPECIAL MASTER'S ORDER** |
| This Document Relates to:<br><br>ALL ACTIONS | |
| | Judge: Hon. Charles R. Breyer<br>Date: N/A<br>Time: N/A<br>Courtroom: 6-17th Floor |

1    Plaintiffs continue to make unfounded accusations of gamesmanship, but there is nothing underhanded or nefarious about a litigant seeking to exercise its right to attorney-client privilege and work-product protection. Their recitation of the events leading to the present objection only underscores the fact that, even after many months, Uber still has not had the opportunity to address the merits of its privilege claims for the 42 documents at issue. The Court should right this wrong, enforce Pretrial Order No. 14's non-waiver provision, and direct that Uber's clawback privilege claims be considered on the merits.

I.   **Uber's Objection Is Timely.**

Plaintiffs' argument that Uber's objection is untimely is baseless. Uber filed its objection five days after the Master entered the order via ECF, exactly as required by the Amended Appointment Order. *See* Dkt. 2302. Uber requested that the Master enter the order on ECF even though it is not required to do so. The present objection is timely.[1]

Plaintiffs' separate argument that the underlying clawbacks were untimely misses the point. Because of the blanket waiver rule, the document-specific facts and circumstances were never considered by Judge Cisneros or Judge Jones. Uber welcomes the opportunity to address the merits of its clawbacks, including why each and every document at issue was clawed back within the requisite time.[2] Plaintiffs cannot have it both ways by arguing that Uber categorically waived the right to claw back documents while also faulting Uber for failing to address the merits of its privilege claims, including justifying the timing of each clawback.

Moreover, to support their untimeliness argument, Plaintiffs applied the wrong standard. Plaintiffs used the date of production as the triggering event for the time to issue a clawback notice. (Pls.' Opp. at 5-6.). But PTO No. 14 requires the producing party to issue a clawback notice within 21 days "**upon discovery** that a document has been produced for which the Producing Party asserts

---

[1] Plaintiffs also made vague accusations that Uber harbored some intent to "cause maximum prejudice to Plaintiffs" by objecting to the Special Master's order before the *Dean* trial started. This is demonstrably false, and they acknowledge that they were able to use the documents they chose at trial resulting in no actual prejudice in any event.

[2] For example, several documents were clawed back when privileged content was discovered as documents were used as deposition exhibits. In those instances, the documents were clawed back within 21 days of the deposition.

privilege and/or other protection." Dkt. 396 at ¶ 4 (emphasis added). The triggering event is therefore discovery of the production of privileged material, not the date of production. This standard makes sense, particularly in a case in which approximately 1.7 million documents were produced.

Plaintiffs also cited the wrong order and corresponding protections governing waiver. PTO No. 14 governs this dispute, but Plaintiff cited the Protective Order [Dkt. 176]. Plaintiffs claimed Uber's clawbacks were untimely because they were not made within a "'reasonable amount of time' after discovering the inadvertent disclosure." (Pls.' Opp. at 6). That "reasonable amount of time" standard comes from a superseded portion of the Protective Order [Dkt. 176]. The Protective Order contained a rudimentary clawback procedure and 502(d) order, but the parties, with the Court's approval, stipulated to a Rule 502(d) and Privileged Materials Order with a more detailed clawback procedure and a new 502(d) provision, signed by the Court as PTO 14 [Dkt. 396].

**II.     The Issue Before the Court Is Whether the Special Master Erred in Finding that Uber May Not Clawback the Documents At Issue Because It Waived Privilege and Work-Product Protections.**

Plaintiffs are wrong to frame the question as simply "whether anything had changed" after the Special Master's appointment.

The dispositive issue in the clawback rulings at issue was whether Uber waived its ability to assert privilege over the documents. The key question for the Special Master in deciding whether Uber could clawback any of the 42 documents was not "whether anything had changed" after the Special Master was appointed, as Plaintiffs argue (Pls.' Opp. at 6), but rather whether the principles of the blanket waiver ruling should be applied to documents de-designated during the Special Master's privilege oversight. *See* Dkt. 2855 (Judge Cisneros ruling that "whether that principle applies to documents de-designated after privilege issues were referred to Judge Jones is a question for Judge Jones."); Sept. 3, 2025 Special Master Letter ("Uber may submit additional briefing . . . and should address whether the same principles identified by Judge Cisneros regarding waiver should apply to the 46 documents de-designated after February 6, 2025.") (Dkt. 5004-3). The *sua sponte* blanket waiver ruling was procedurally and legally flawed for the reasons Uber explained in its objection. (*See generally* Defs.' Obj.). By solely relying upon and applying that ruling to the clawbacks at issue, the

3

Special Master avoided addressing the merits of Uber's clawback claims and replicated Judge Cisneros's earlier errors. If, as Plaintiffs suggest, the Special Master was only required to decide "whether anything had changed," it would only compound the due process problems created by the original blanket waiver ruling.

Uber has been denied an opportunity to be heard on the key legal issue underlying the erroneous blanket waiver ruling: whether PTO 14 and Rule 502(d)'s protection against waiver by production applies to the 42 documents in light of the specific circumstances of their production. The Court should correct the error and direct this issue to be resolved on the merits.

### III.     Production, Regardless of Inadvertence, Does Not Result in Waiver of Privilege.

As a hindsight justification for the Court's *sua sponte* ruling, Plaintiffs point to the Protective Order, Dkt. 176, entered on December 28, 2023, to suggest that Rule 502(d)'s non-waiver protection only extends to inadvertently produced materials. However, their reliance on the original protective order is misplaced. As noted above, the parties later stipulated to a more comprehensive 502(d) order with additional protections for the production of privileged materials, which the court entered as PTO 14 on April 4, 2024. Dkt. 396. PTO 14 expanded the non-waiver provision to apply to "the production of **any** privileged or otherwise protected or exempted information in this case." Dkt. 396 (emphasis added). The fact that the original protective order referenced only inadvertently produced documents did not prevent the Court from extending the protection, as it did in PTO 14. Indeed, district courts have the authority to modify interlocutory or pre-trial rulings (*Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996)), and the original protective order specifically acknowledged "the right of any person to seek its modification by the court in the future." Dkt. 176, ¶ 12.1.

Besides citing a superseded portion of the protective order, Plaintiffs fail to address the fact that the majority of courts interpret 502(d) orders as allowing clawback of privileged materials "without regard to whether the disclosure was inadvertent." *GLXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024); *see also* Defs.' Obj. at 7 (citing cases). Moreover, Plaintiffs ignore the declaration by Professor Daniel Capra, the co-author of the text of Rule 502, who explained that the Advisory Committee "clearly intended that Rule

502(d) orders could cover intentional disclosures as well as mistaken ones." Ex. I to Defs.' Obj. at ¶ 6. PTO 14 provides this broad protection.

As for PTO 14 itself, the most Plaintiffs can muster is to argue that "'production' does not mean 'withholding from production, production, then re-withholding from production.'" (Pls.' Opp. at 7). But Plaintiffs provided **no legal support** for their position that the PTO No. 14 and Rule 502(d) protections against waiver do not apply to productions following a good faith re-review.

Congress designed Rule 502(d) to avoid fact-intensive disputes over whether a given production met the standard for "inadvertence." *See* Capra Decl. ¶ 5 (Dkt. 5004-9). But even if a showing of inadvertence were required, Uber could make such a showing here. Plaintiffs argue that Uber must "explain the circumstances surrounding the de-designation and re-designation of each of the 42 documents." Pls.' Opp. 8. But Uber has never had a chance to do so because privilege was deemed to have been categorically waived. Still, Uber has provided examples of how certain documents were mistakenly produced in full when redactions were needed or other documents were produced with incomplete redactions. Defs.' Obj. at 13. Therefore, Uber's clawbacks were justified regardless of whether a showing of inadvertence was required.

## CONCLUSION

The protections of PTO 14 should not be ignored or erased after Defendants justifiably relied on the non-waiver provision in producing millions of pages of documents in this litigation. Uber respectfully requests that the Court vacate the Special Master's January 9, 2026, order and direct her to decide all of Uber's clawback privilege claims on the merits.

DATED: February 18, 2026

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
    Maria Salcedo

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN

5
DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION TO SPECIAL MASTER'S ORDER
Case No. 3:23-MD-3084-CRB

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
   oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
   adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
   ccotton@shb.com
JENNIFER HILL (Admitted *Pro Hac Vice)*
   jshill@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
   msalcedo@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

6
DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION TO SPECIAL MASTER'S ORDER
Case No. 3:23-MD-3084-CRB