1  *[Counsel Listed on Signature Page]*

2
3
4
5
6
7
8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT STATUS REPORT FOR MARCH 5, 2026 DISCOVERY STATUS CONFERENCE** |
| This Document Relates to: ALL ACTIONS | Judge:       Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**JOINT STATUS REPORT**

In advance of the discovery status conference set for March 5, 2026 at 2:00PM PST (ECF 5270), Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), respectfully submit this Joint Status Report.

---

JOINT STATUS REPORT FOR THE MARCH 5, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB

I.     **Application of Rulings Regarding Zgoba and Orchowski**

**Plaintiffs' Position:** The Court's order regarding Zgoba and Orchowski should apply to WHB 318. WHB 318 is a Wave 1 bellwether case, and Wave 1 bellwether cases have all been streamlined to have expert discovery done together. While WHB 318 is on a slightly slower pace with respect to discovery, it is still part of Wave 1 and should still be subject to Wave 1 rulings. The parties' agreement with respect to expert discovery reflect this understanding. In an email dated January 14, 2026, the parties agreed that "the general expert reports, including the rebuttal and supplemental reports, that were served in WHB 823 by either side be deemed served in WHB 318, excluding any case-specific portions that do not apply to WHB 318." Consistent with that agreement, Plaintiff served only additional case specific reports and Uber asserted that expert depositions of Zgoba and Orchowski would be limited to an hour (as depositions previously taken would apply to WHB 823 as well). Thus, despite the modified schedule in WHB 318, the same general expert reports previously served were carried forward. The same should apply with respect to the Court's order.

Insfoar as Uber is attempting an end-run around the Court's order by characterizing Zgoba and Orchowski's rebuttal reports as "opening" reports the argument should be rejected. The parties agreed that the general expert reports would be deemed served consistent with prior Wave 1 bellwethers and thus the Court's rulings should have the full weight and effective on those reports. This ensures fairness through all bellwether trials, maintains consistencies in the Court's rulings, and eliminates the need for unnecessary briefings on issues that have already been decided.

**Defendants' Position:** Uber believes that the ruling is limited to the original five bellwethers for which expert reports have been submitted, and the order should not limit Drs. Zgoba or Orchowski with respect to opinions they might offer in WHB 318. WHB 318 has a different schedule for affirmative and rebuttal expert reports than other Wave 1 bellwether cases. Drs. Zgoba and Orchowski have issued new opening reports in that case, in part to address the objection that certain prior opinions were improper rebuttal. Plaintiffs have not objected to the WHB 318 opening reports; to the contrary, they also issued a new opening report on behalf of one of their experts (though they have subsequently withdrawn it). Plaintiffs also had the opportunity to submit rebuttal opinions in response to Drs. Zgoba

and Orchowski, and they elected not to do so. And they were offered deposition dates for both witnesses–and took a deposition of Dr. Zgoba–making it impossible for them to establish any prejudice or harm from the disclosure. The parties never, as Plaintiffs suggest, agreed to forego affirmative reports for Drs. Zgoba and Orchowski in WHB 318. In the email cited by Plaintiffs above, Uber's counsel confirmed that "one addendum for avoidance of confusion [is that] nothing about the agreements below preclude either party from disclosing additional opening, rebuttal or supplemental reports." Plaintiffs' counsel responded, "Yes, understood!" Plaintiffs' attempt to characterize this email as an agreement not to issue affirmative reports for Drs. Zgoba and Orchowski is simply inaccurate.

## II.     **Backstop Deadlines for Wave 1 Cases**

**Plaintiffs' Position**: Plaintiffs submit that the "backstop" deadline for Wave 1 cases (except for WHB 823) should be tied to the scheduled trial date of each individual case, closing forty-five (45) days before that trial date. For WHB 823, set for trial April 14, 2026, Plaintiffs request a backstop date of March 10, 2026. As explained below, the Dean trial demonstrated material gaps in previously requested but unproduced discovery. A deadline triggered from the trial date ensures any narrowly tailored discovery is anchored to actual deficiencies and omissions from Uber's prior productions that become apparent through the most recently completed bellwether trial.

**Defendants' Position**: Per ECF 5270, Uber proposes March 15, 2026 as a "backstop" deadline for parties to raise case-specific discovery disputes or requests related to all remaining Wave 1 cases except for WHB 318, subject to the qualifications outlined in the Order. Uber's proposal for a single, near-term "backstop" date for the purposes described by the Court is consistent with the parties' simultaneous work-up of the Wave 1 cases as well as the fact that the deadline for close of discovery in these cases was more than four months ago, on October 6, 2025. In contrast, Plaintiffs' proposal effectively seeks a "re-do" of case-specific discovery following each bellwether trial, based on "lessons learned." Such a serial approach would result in continuing case-specific discovery throughout 2026 and likely into 2027 as remaining Wave 1 cases are tried, and is manifestly at odds with the limited purpose of "clearing any backlog" of case-specific discovery issues. ECF 5270 at 2.

The parties' identification of specific discovery issues in this JSR (see Sections V - VIII.) underscores the feasibility of a March 15, 2026 "backstop" deadline.

### III. Categories of disputes (if any) that should not be subject to "backstop" deadline

**Defendants' Position:** Uber has been diligent in pursuing outstanding discovery related to specific cases. Discovery from additional fact witnesses not identified by Plaintiffs prior to the "backstop" deadline should not be subject to the "backstop" deadline. In addition, disputes about whether each Plaintiff should sit for a limited-in-time-and-scope refreshed deposition in advance of trial should not be subject to the "backstop" deadline to the extent the parties are not able to reach agreement on this issue themselves.

**Plaintiffs' Position:** Uber's position is inconsistent with the Court's directive that any post-deadline case-specific discovery requires leave and a showing of good cause for failing to meet both the original discovery cutoff and the backstop deadline. ECF 5270. There should be no carve-out for allegedly "additional fact witnesses" as Uber has a duty to exercise its own due diligence in identifying witnesses through discovery and should have taken depositions it deemed necessary before the Wave 1 cut-off. Moreover, the Bellwether Protocol caps both the number and time allotted for bellwether depositions. Uber should not be able to circumvent those negotiated and Court-approved time limits or create an end-run around them by recasting such discovery as outside the backstop deadline as defined by the Court's Order.

### IV. Amended PTO 10 Certification

**Plaintiffs' Position:** Plaintiffs agreed to Amended PTO 10 in good faith to address Uber's represented concerns about document production. Uber now attempts to use that Order as a basis to dismiss cases that have complied with their discovery obligations. Plaintiffs at issue submitted verified PFSs affirming that they did not receive medical treatment, therapy, or did not report the incident to the police. Uber's effort to dismiss these cases on the ground that Plaintiffs did not separately confirm the same information through MDL Centrality is unfounded, particularly where Ubers failed to further meet and confer before seeking dismissal.

In January 2026, the parties conferred regarding Plaintiffs' obligations under Amended PTO

10. Plaintiffs' position was that individuals who never alleged medical treatment, therapy, or law enforcement involvement—and who submitted verified PFSs affirming that no such records exist—are not required to duplicate that certification in MDL Centrality. Uber disagreed. On January 7, 2026, Plaintiffs requested that Uber reconsider its position or proceed under PTO 8, as the issue reflects a disagreement over the interpretation of Amended PTO 10 on a technical point rather than a basis for dismissal. Without responding to that request or providing further notice or conferring with any individual counsel, Uber filed a motion to dismiss on February 19, 2026. ECF 5279. Amended PTO 10 requires production or confirmation through MDL Centrality only where a Plaintiff represented the existence of medical, therapy, or law enforcement records. Where a verified PFS states that no such records exist, requiring an additional certification is duplicative and unnecessary, and any dispute regarding compliance should have been addressed through the PTO 8 procedure rather than by a baseless motion to dismiss.

**Defendants' Position:** This is not a discovery dispute subject to PTO 8. This Court has recognized on multiple occasions that Rule 37 motions like Defendants' present motion are not discovery motions. *See, e.g.,* ECF 5253, 5232, 4979, 4442, 3922; *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, No. 10-cv-1284, 2011 WL 4841285, at *3 (E.D. Cal. Oct. 12, 2011).

Amended PTO 10, stipulated by the Parties and entered by Judge Breyer on November 3, 2025, could not be more clear: "***Within 30 days of this Order, or from the deadline to submit a completed PFS, whichever is later, counsel will confirm via MDL Centrality*** that all [medical, law enforcement, and/or therapy] records have been uploaded, ordered by Plaintiffs' counsel…***or that no records exist.***" ECF 4287 at 4 (*emph. added)*. Thousands of Plaintiffs have complied with the Amended PTO certification requirements, including hundreds of Plaintiffs who did not previously provide records authorizations. Despite this, more than 500 Plaintiffs failed or refused to certify "that no records exist" and therefore are the subject of Defendants' motion to dismiss currently before Judge Breyer. ECF 5279.

Plaintiffs now seek reconsideration of Judge Breyer's ruling in Amended PTO 10 that Plaintiffs be required, "within 30 days of this Order," to "confirm via MDL Centrality . . . that no records exist."

5
JOINT STATUS REPORT FOR THE MARCH 5, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB

10. Plaintiffs' position was that individuals who never alleged medical treatment, therapy, or law enforcement involvement—and who submitted verified PFSs affirming that no such records exist—are not required to duplicate that certification in MDL Centrality. Uber disagreed. On January 7, 2026, Plaintiffs requested that Uber reconsider its position or proceed under PTO 8, as the issue reflects a disagreement over the interpretation of Amended PTO 10 on a technical point rather than a basis for dismissal. Without responding to that request or providing further notice or conferring with any individual counsel, Uber filed a motion to dismiss on February 19, 2026. ECF 5279. Amended PTO 10 requires production or confirmation through MDL Centrality only where a Plaintiff represented the existence of medical, therapy, or law enforcement records. Where a verified PFS states that no such records exist, requiring an additional certification is duplicative and unnecessary, and any dispute regarding compliance should have been addressed through the PTO 8 procedure rather than by a baseless motion to dismiss.

**Defendants' Position:** This is not a discovery dispute subject to PTO 8. This Court has recognized on multiple occasions that Rule 37 motions like Defendants' present motion are not discovery motions. *See, e.g.,* ECF 5253, 5232, 4979, 4442, 3922; *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, No. 10-cv-1284, 2011 WL 4841285, at *3 (E.D. Cal. Oct. 12, 2011).

Amended PTO 10, stipulated by the Parties and entered by Judge Breyer on November 3, 2025, could not be more clear: "***Within 30 days of this Order, or from the deadline to submit a completed PFS, whichever is later, counsel will confirm via MDL Centrality*** that all [medical, law enforcement, and/or therapy] records have been uploaded, ordered by Plaintiffs' counsel…***or that no records exist.***" ECF 4287 at 4 (*emph. added)*. Thousands of Plaintiffs have complied with the Amended PTO certification requirements, including hundreds of Plaintiffs who did not previously provide records authorizations. Despite this, more than 500 Plaintiffs failed or refused to certify "that no records exist" and therefore are the subject of Defendants' motion to dismiss currently before Judge Breyer. ECF 5279.

Plaintiffs now seek reconsideration of Judge Breyer's ruling in Amended PTO 10 that Plaintiffs be required, "within 30 days of this Order," to "confirm via MDL Centrality . . . that no records exist."

Plaintiffs seek to add to Amended PTO 10 a new exception to that requirement if "a verified PFS states that no such records exist." That argument fails for at least two reasons. First, that motion for reconsideration should be brought before Judge Breyer, and is not a discovery dispute subject to PTO 8. Second, and in any event, there is no verified PFS "stat[ing] that no such records exist." Contrary to Plaintiffs' assertions, the original Plaintiff Fact Sheet did not require a certification of whether records existed or not. Judge Breyer's November 3, 2025 Order is clear that all Plaintiffs are required to provide a certification regarding their record production. To the extent certain Plaintiffs disagree with the plain text of this Order, they should raise their arguments in connection with the motion to dismiss briefing before Judge Breyer.

## V.   Outstanding Wave 1 Discovery

**Plaintiffs' Position:** There is good cause for additional case-specific discovery for Wave 1 cases in light of material gaps in Uber's production which came to light during the Dean trial. Fed. R. Civ. P. 26(e)(1) requires that Uber supplement initial discovery and discovery responses; however, Uber has not done so in many critical areas, including those identified below. Plaintiffs will seek narrowly tailored, case-specific supplementation to complete the record and ensure that Wave 1 trials proceed fairly. Additionally, Plaintiffs are assessing Uber's recent productions and Plaintiffs' October 6 discovery requests to determine what additional, narrowly tailored discovery may be needed for non-Wave 1 cases and common issues. Plaintiffs intend to meet and confer with Uber to address the following issues and, in accordance with the Court's order (ECF 5270), will seek leave for outstanding discovery to the extent necessary for Wave 1 cases.

Specifically, Plaintiffs seek: (1) <u>Rental Car Agreements</u> - Plaintiffs will seek limited production of rental-car discovery including agreements applicable to Wave 1 drivers, communications regarding the onboarding and eligibility decisions involving rental vehicles, and driver-specific trip logs showing vehicles used; (2) <u>Supply Plans and S-RAD Data</u> – as a result of Uber's destruction of supply plans and S-RAD data, Plaintiffs will seek targeted production of alternative supply plans, related forecasting documents, comparative S-RAD scores, and internal communications concerning supply balancing for the relevant markets and dates involved in Wave 1

cases (Plaintiffs also intend to move for sanctions); (3) <u>Non-Profits</u> – Plaintiffs will seek narrowly tailored production of relevant non-profit communications and documents, and limited third-party discovery and 30(b)(6) depositions of non-profit witnesses ( Uber cited these non-profits as validation for its business decisions); (4) <u>Custodial Files and Limited Depositions</u> – Plaintiffs will seek complete custodial files for any Uber witness Uber intends to call live in Wave 1 cases (limited to relevant subject matter and time periods), and seeks the opportunity to depose Uber's chief witness, Sachin Kansal on the issues he testified to live at trial, as well as discovery obtained after his prior deposition (as an Apex witness, Mr. Kansal's prior deposition was shared time between the JCCP/MDL and limited in scope); (5) <u>Driver, Rider, and Trip History</u> - Plaintiffs will seek targeted discovery for each Wave 1 case with respect to driver, rider and trip history (Uber's selective production of this information resulted in severe prejudice at trial)[1]; and, (6) <u>Case Specific Marketing Content</u> – Plaintiffs will seek marketing ad content and when each campaign ran, for marketing that was targeted to the geographic location where plaintiff lived, and the platforms plaintiff used (Instagram, Facebook, etc.).

Plaintiffs also request updated initial disclosures and verifications for interrogatory responses. To the extent, Uber intends to call case specific witnesses live, who were not previously identified in Rule 26 disclosures, Plaintiffs will seek pre-trial depositions.

**Defendants' Position**: In contrast to the specifically enumerated case-specific discovery relating to A.R. and B.L. that Uber has been diligently seeking (discussed below), Plaintiffs' six itemized requests constitute an improper attempt to re-open both case-specific and general discovery, some of which are being raised for the first time in this JSR and others of which were not seriously pursued during the now-expired discovery period for Wave 1 cases. Plaintiffs' claims that such requests are "narrowly tailored" are belied by the lengthy discussion necessary to even identify them. Moreover, many requests appear to seek information and documents already extensively and sufficiently discovered, including discovery from Uber on "non-profits," driver, rider and trip histories, and marketing. Likewise, while Plaintiffs claim that Mr. Kansal was an apex witness whom

---

[1] In line with these discovery issues, on February 19, 2026, Plaintiff WHB 823 (set for trial April 14) identified a narrow set of production deficiencies to Uber with respect to driver-related discovery (the underlying discovery requests were originally served in August 2025).

they were "limited" in deposing, Mr. Kansal was in fact deposed for more than 8 hours and there were no limitations on scope except those that Plaintiffs themselves imposed. Plaintiffs' requests for additional custodial collections – despite the extensive custodian negotiation process that included a day-long courthouse meet-and-confer as well as multiple rounds of motion practice that resulted in the list of 55 custodians for both the JCCP and MDL *(see, e.g.*, ECF 607, 671, 779, 867, 1137, 1542, 1638, 1652, 1698) – are also untimely and misguided. Without conceding that Plaintiffs' categories of requests are appropriate, Defendants will meet and confer with Plaintiffs regarding them.

As to item 2 (supply plans and S-RAD data), Plaintiffs have known about the unavailability of supply plan data since August, and are *only now* raising the need for supplemental discovery. Plaintiffs first requested supply plan data for the bellwether trips on August 11, 2025. During a meet and confer on August 15, Uber's counsel informed them that supply plan data was no longer available because it is maintained for a rolling 30 days. Plaintiffs acknowledged this via email on September 4. On September 24, the parties submitted a PTO 8 letter in which Plaintiffs asked for written verification of the destruction of supply plan data (among other new, unrelated S-RAD data). ECF 4009. In a sworn declaration, Sunny Wong confirmed: "Uber does not maintain data about historical supply plans older than 30 days." *Id.* at Ex. H. On October 3, Judge Cisneros denied further S-RAD data productions as untimely and unduly burdensome, deferred further questions on supply plans to Mr. Wong's next deposition, and instructed Plaintiffs to raise any follow-ups within 2 days of the deposition. Plaintiffs did not. Plaintiffs' requests for new discovery now are far beyond even the most generous bounds of timeliness.

## VI. Outstanding disputes in A.R.

**Defendants' Position**: Following the Court-ordered depositions of Plaintiff A.R. and witness I.E. (ECF 3985), the parties promptly began negotiating a protocol for production of responsive documents that were improperly withheld from production by Peiffer Wolf. Uber provided the latest iteration of the draft protocol on December 16, 2025. Plaintiffs have not yet substantively responded despite repeated reminders. Uber reserves the right to seek Court intervention if the issues are not resolved. Because Uber raised this issue many months ago and Plaintiffs have delayed in finalizing

the protocol and making required productions, any further disputes flowing from the re-production, including but not limited to any further depositions of witnesses who were ordered to make this re-production, should not be subject to the backstop deadline set by the Court.

**Plaintiffs' Position**: The parties have met and conferred numerous times regarding the timing and scope for the document collection protocol. At the outset, following ECF 3985, Peiffer Wolf advised all third parties involved of their duty to preserve responsive documents and information as the parties negotiated the collection protocol, and Uber was advised of the same. Peiffer Wolf represents bellwether wave 1 Plaintiff Jaylynn Dean and the recent trial delayed finalizing the A.R. protocol, which (without objection) was clearly conveyed to Uber. Plaintiff's final edits to this protocol will be sent to Uber this week.

VII.     **Outstanding disputes in B.L.**

**Defendants' Position**: The parties are meeting and conferring regarding a number of discovery issues in B.L., including: (1) Plaintiff's incomplete productions and overbroad redactions of evidence; (2) Plaintiff's failure to cure records release authorizations issues; (3) Plaintiff's failure to timely or accurately disclose fact witnesses or supplement her production with treatment records;  (4) Uber's request for additional fact witness and expert depositions; (5) and outstanding documents from Dr. Mechanic. The parties have met and conferred several times to no avail.  Uber reserves the right to seek Court intervention if the issues are not resolved.

*Redacted and Incomplete Discovery Documents:* Plaintiff has produced several text, social media, and email messages between Plaintiff and various third parties. However, these exchanges have been heavily redacted by Plaintiff's counsel even when they relate to the alleged incident, this litigation, and Plaintiff's mental health diagnoses and treatments. Further, Plaintiff's production appears to omit a number of messages. Plaintiff's privilege log offers no valid bases for these redactions.

Uber notified Plaintiff that one of her mental health providers, Ruth Awah, only provides records directly to patients and here, provided Plaintiff with a copy of her file in June. Despite requests, Plaintiff has never produced these records.

*Supplemental Discovery Responses/Information Regarding New Treaters & Witnesses:* Plaintiff's counsel has confirmed that Plaintiff has received relevant medical and mental health treatment since the close of fact discovery. It is unclear, based on Uber's review of the records, whether Plaintiff has identified all new providers. Nevertheless, it appears Plaintiffs are in agreement that—to the extent Plaintiff has seen relevant healthcare providers after the close of fact discovery and intends to rely upon them at trial—Uber can take depositions of those individuals but there may be a dispute as to the length of those depositions. To the extent the parties are unable to reach agreement on this issue, Uber will file a PTO 8 letter brief. Additionally, Plaintiff's case-specific expert, Dr. Mechanic conducted "collateral source" interviews of four of Plaintiff's friends. Dr. Mechanic's interviews suggest these witnesses have extensive knowledge regarding Plaintiff's current mental status and damages, which is generally in conflict with Plaintiff's written discovery responses provided during the fact discovery period which state, for some of these witnesses, that Plaintiff had not spoken to them for years. It cannot be that both the discovery responses and the information in Dr. Mechanic's report are correct.  Uber has requested depositions of these individuals – who they previously chose not to depose based on the information in Plaintiff's discovery responses – and plan to file a PTO 8 letter brief if a dispute remains.

**Plaintiffs' Position**: Plaintiff disagrees with Uber's characterizations that Plaintiff has failed to produce documentation or timely comply with any discovery obligations. The parties should continue discussing these issues through meet and confers and any remaining disputes can be raised via the PTO 8 briefing procedure.

With respect to redactions, the parties meet and conferred and Plaintiff agreed to re-review redactions and provide an update by February 24. With respect to Ms. Awah, Plaintiff informed Uber that she is working to obtain the medical records and will update accordingly. With respect to Releases, all requested authorizations have been provided.

With respect to supplemental discovery and additional depositions, Plaintiff will continue to meet and confer with Uber on the requested discovery. While Plaintiff is open to additional, relevant depositions of previously unknown witnesses, Plaintiff objects to depositions of individuals that have

been known to Uber since well before the close of discovery. For example, Uber asserts that it is entitled to deposition of collateral sources interviewed by Dr. Mechanic, but these sources were disclosed in Dr. Mechanic's opening report and previously disclosed in Rule 26 Disclosures. Uber did not seek their depositions and should not now be able to reopen discovery for something it should have sought months ago.

### Dr. Mechanic Invoices and Deposition

**Joint Statement:** Last week, Plaintiffs' counsel produced Dr. Mechanic's notes and testing documents in cases other than *Dean* pursuant to the Court's January 4, 2026 order. The parties are meeting and conferring about whether additional depositions of Dr. Mechanic are warranted. To the extent the parties are unable to reach agreement, PTO 8 briefing will be submitted to the Court across the Wave 1 cases.

## VIII. Lyft and Checkr Discovery

**Plaintiffs' Position:** The Court issued orders resolving the remaining disputes on Plaintiffs' subpoena to Lyft for Wave 1 cases. ECF 5263; ECF 5281. Plaintiffs will advise the Court of any issues that arise related to Lyft productions. With respect to Checkr, prior to the close of discovery for Wave 1 cases, Plaintiffs served Checkr with subpoenas to obtain information related to background check investigations of the subject drivers. There is no dispute that the requested documents are relevant and necessary to this case, yet Checkr's production has been critically deficient. Plaintiffs will continue to meet and confer with Checkr and seek the Court's intervention as needed, including potentially moving to compel a 30(b)(6) deposition.

**Defendants' Position:** Uber understands these to be matters (i) between Plaintiffs and the respective third parties, (ii) subject to, respectively, existing Orders and continued conferrals, and therefore (iii) unnecessary or unripe to be raised here.

| | |
|---|---|
| By: */s/ Roopal Luhana* | By: */s/ Christopher Cox* |
| ROOPAL P. LUHANA *(Pro Hac Vice)* | |
| **CHAFFIN LUHANA LLP** | **KIRKLAND & ELLIS LLP** |
| 600 Third Avenue, Fl. 12 | ALLISON M. BROWN |
| New York, NY 10016 | CHRISTOPHER COX |
| Telephone: (888) 480-1123 | JESSICA DAVIDSON |
| Email: luhana@chaffinluhana.com | LAURA VARTAIN |
| | |
| SARAH R. LONDON (SBN 267083) | **SHOOK, HARDY & BACON L.L.P**. |
| **GIRARD SHARP LLP** | MICHAEL B. SHORTNACY |
| 601 California St., Suite 1400 | PATRICK L. OOT, JR. |
| San Francisco, CA 94108 | CHRISTOPHER V. COTTON |
| Telephone: (415) 981-4800 | ALYCIA A. DEGEN |
| Email: slondon@girardsharp.com | |
| | **O'MELVENY AND MYERS LLP** |
| RACHEL B. ABRAMS (SBN 209316) | SABRINA H. STRONG |
| **PEIFFER WOLF CARR KANE** | JONATHAN SCHNELLER |
| **CONWAY & WISE, LLP** | |
| 555 Montgomery Street, Suite 820 | *Attorneys for Defendants* |
| San Francisco, CA 94111 | UBER TECHNOLOGIES, INC., |
| Telephone: (415) 426-5641 | RASIER, LLC, and RASIER-CA, LLC |
| Email: rabrams@peifferwolf.com | |
| | |
| *Co-Lead Counsel for Plaintiffs* | |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: February 23, 2026

By: /s/ *Ellyn Hurd*
Ellyn Hurd

# CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Ellyn Hurd*
Ellyn Hurd