Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

MICHAEL B. SHORTNACY (SBN: 277035)
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
mshortnacy@shb.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S MOTION FOR SANCTIONS AGAINST BRET STANLEY** |
| This Document Relates to: | Judge:      Hon. Lisa J. Cisneros |
| ALL ACTIONS | Courtroom:   G-15th Floor |
| | Date:       December 2, 2025 |
| | Time:       10:30 a.m. |

## NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST BRET STANLEY

## TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 2, 2025 at 10:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Lisa J. Cisneros, in Courtroom G, on the 15th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants") will and hereby do move the Court for an Order sanctioning Bret Stanley pursuant to Federal Rule of Civil Procedure 37(b) and/or under the Court's inherent authority based on the Court's prior finding that Mr. Stanley violated the stipulated Protective Order (ECF 176), and based on Mr. Stanley's violation of this Court's August 18, 2025 Order (ECF 3708). Specifically, Defendants request entry of an Order that requires Mr. Stanley to pay Defendants' reasonable attorneys' fees and costs incurred: (a) investigating Mr. Stanley's Protective Order violations and attempting to compel Mr. Stanley to comply with the Protective Order without Court intervention; (b) drafting, filing, and arguing their Motion to Enforce Protective Order (ECF 3512) and related filings (Administrative Motion to Shorten Time, Motion to Seal, and Reply Supporting Motion to Enforce Protective Order); and (c) seeking to compel Mr. Stanley to perform the remedial measures required by this Court's August 18, 2025 Order (ECF 3708). Defendants request all other and further relief this Court deems just and proper.

The Motion for Sanctions (the "Motion") is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying supporting Declarations of Veronica Hayes Gromada and Michael B. Shortnacy, the pleadings and papers on file herein, any Reply that may be filed in support of this Motion, and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED: October 24, 2025

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
    MICHAEL B. SHORTNACY

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY & BACON L.L.P**.
ALYCIA A. DEGEN
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

# **TABLE OF CONTENTS**

I.    Introduction and Summary of Argument ........................................................................ 1

II.   Facts ............................................................................................................................... 3

    A.    Mr. Stanley's violation of the Protective Order forced Defendants to incur attorneys' fees.... 3

    B.    The Court ordered Mr. Stanley to take specific actions to mitigate the damage caused by his violations of the Protective Order. ................................................................................. 3

    C.    Defendants have incurred additional attorneys' fees as a direct result of Mr. Stanley's violations of the August 18, 2025 Order.................................................................... 4

    D.    On October 8, 2025, Mr. Stanley's *Lord* co-counsel again publicly filed Defendants' Confidential Information, despite the August 18, 2025 Order's requirement that Mr. Stanley "take reasonable efforts to retrieve or ensure the destruction of all unauthorized Confidential Information….".................................................................................................................. 6

III.  Law ................................................................................................................................. 6

IV.   Argument ....................................................................................................................... 7

    A.    This Court should award Defendants' attorneys' fees under Rule 37(b)(2)(C)........................ 7

    B.    Alternatively, this Court may award Defendants attorneys' fees under the Court's inherent authority. ........................................................................................................................... 9

    C.    The attorneys' fees Defendants seek are reasonable............................................................ 11

V.    Conclusion ................................................................................................................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Apple, Inc. v. Samsung Elecs. Co.*,
5     No. 511CV01846LHKPSG, 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014) ...........................8

6

*Blackwell v. Foley*,
    724 F. Supp. 2d 1068 (N.D. Cal. 2010) ...................................................................................12
7

8

*Bradshaw v. Vilsack*,
    286 F.R.D. 133 (D.D.C. 2012)...................................................................................................3

9

*Camacho v. Bridgeport Fin., Inc.*,
10     523 F.3d 973 (9th Cir. 2008) ...................................................................................................11

11

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)..............................................................................................................9, 10
12

13

*Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*,
    25 F.3d 743 (9th Cir. 1994) .....................................................................................................12

14

*David v. Hooker, Ltd.*,
15     560 F.2d 412 (9th Cir. 1977) .....................................................................................................8

16

*Eagle Eyes Traffic Indus. USA Hldg. LLC v. E-Go Bike LLC*,
    No. 21-cv-07097, 2025 WL 1482389 (N.D. Cal. March 28, 2025).........................................13
17

18

*F.T.C. v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999) ...................................................................................................7

19

*Facebook, Inc. v. OnlineNIC Inc.*,
20     No. 19-cv-7071, 2025 WL 510430 (N.D. Cal. Feb. 14, 2025)................................................12

21

*Gonzales v. Charter Commc'ns, LLC*,
    No. 2:20-CV-08299-SB-AS, 2022 WL 570003 (C.D. Cal. Jan. 26, 2022) ..............................6
22

23

*Gopher Media, LLC v. Spain*,
    No. 3:19-cv-02280-CAB-KSC, 2020 WL 6449193 (S.D. Cal. Nov. 3, 2020)....................7, 8

24

*In re Hyundai and Kia Fuel Economy Litigation*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................................................12
25

26

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) .................................................................................................11

27

*Khraibut v. Chahal*,
28     No. 15-CV-04463-CRB, 2022 WL 1438113 (N.D. Cal. Mar. 22, 2022). Civil .......................7

ii

*Kim v. Fujikawa*,
    871 F.2d 1427 (9th Cir. 1989) ............................................12

*L.D. v. United Behavioral Health*,
    No. 4:20-cv-02254, Dkt. No. 521 (N.D. Cal. Oct. 15, 2025) ...........................3, 8, 9

*Leon v. IDX Systems Corp.*,
    464 F.3d 951 (9th Cir. 2006) ............................................10

*Liew v. Breen*,
    640 F.2d 1046 (9th Cir. 1981) ............................................8

*Lofton v. Verizon Wireless (VAW) LLC*,
    308 F.R.D. 276 (N.D. Cal. 2015)............................................10

*Mulato v. Wells Fargo Bank, N.A.*,
    76 F. Supp. 3d 929 (N.D. Cal. 2014) ............................................10

*Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*,
    721 F.3d 1122 (9th Cir. 2013) ............................................7

*National Hockey League v. Metropolitan Hockey Club*,
    427 U.S. 639 (1976) (*per curiam*) ............................................8

*Oliner v. Kontrabecki*,
    305 B.R. 510 (N.D. Cal. 2004) ............................................7

*Pacific Steel Grp. v. Commercial Metals Co.*,
    No. 20-cv-07683, 2025 WL 2772618 (N.D. Cal. Sept. 29, 2025)...........................13

*Puckett v. Cnty. of Sacramento*,
    No. 2:22-cv-0350, 2024 WL 2304885 (E.D. Cal. May 21, 2024)...........................13

*R.G. Abrams Ins. v. Law Offices of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022) ............................................13

*Roadway Express, Inc. v. Piper*,
    447 US 752 (1980)............................................9

*Toussaint v. McCarthy*,
    826 F.2d 901 (9th Cir. 1987) ............................................13

*Unigard Sec. Ins. v. Lakewood Engineering & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ............................................9

*Vargas v. City and Cty. of Honolulu*,
    No. 19-cv-0116-LEK-WRP, 2020 WL 13904131 (D. Haw. July 23, 2020) ...........................8

iii

**Rules**

Fed. R. Civ. P. 16(f)..................................................................................................8

Fed. R. Civ. P. 26(c) .................................................................................................8

Fed. R. Civ. P. 37............................................................................................3, 6, 8, 9

Fed. R. Civ. P. 37(b)(2).......................................................................................6, 7, 8

Fed. R. Civ. P. 37(b)(2)(A)(ii-vii).............................................................................8

Fed. R. Civ. P. 37(b)(2)(A)(vii) ................................................................................6

Fed. R. Civ. P. 37(b)(2)(C) .........................................................................2, 7, 8, 13

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    Introduction and Summary of Argument**

3       On August 12, 2025, this Court found that Plaintiffs' Steering Committee ("PSC") member

4   Bret Stanley violated the Protective Order governing this MDL. ECF 3692. Mr. Stanley's violation of

5   the Protective Order was clear. Yet, Defendants repeatedly conferred and offered compromises in an

6   attempt to avoid motion practice. Ultimately, Mr. Stanley brazenly made clear that he would not stop

7   using and disclosing their Confidential Information[1] unless this Court ordered him to do so.

8       After finding that Mr. Stanley violated the Protective Order, this Court entered an Order jointly

9   submitted by the parties (including Mr. Stanley) requiring Mr. Stanley to take modest steps to mitigate

10   the damages caused by his violation (the "August 18, 2025 Order"). Rather than promptly taking these

11   required remedial actions, Mr. Stanley instead violated the August 18, 2025 Order. Specifically, the

12   Court ordered Mr. Stanley to provide a copy of the August 18, 2025 Order to courts that were

13   overseeing cases in which parties were using the Confidential Information disclosed by Mr. Stanley.

14   Mr. Stanley failed to do so in multiple cases.

15       Over one month later, on October 8, 2025, Mr. Stanley's co-counsel violated the August 18,

16   2025 Order by filing Defendants' Confidential Information on the public docket of a non-MDL case

17   for the second time, once again demonstrating that, despite this Court's order, Mr. Stanley did not

18   "take reasonable efforts to retrieve or ensure destruction of all unauthorized Confidential

19   Information…." ECF 3708.

20       Mr. Stanley's actions demonstrate a wholesale disregard for this Court's orders. Mr. Stanley

21   simply does not care about violating protective orders. Instead, Mr. Stanley regularly seeks extensive

22   discovery then uses Defendants' Confidential Information to prosecute other cases despite protective

23   orders prohibiting this conduct. Mr. Stanley admitted as much to this Court, but appears to believe his

24   conduct is justified because Defendants do not produce all information as he demands in all cases. Mr.

25   Stanley's conduct in disregarding the orders of this Court is not justified, undermines the rule of law,

26   and he should be sanctioned accordingly.

27

28

---

[1] "Confidential Information" is defined in this Court's August 18, 2025 Order. ECF 3708.

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

1    Defendants should not have been forced to incur costs enforcing either the Protective Order or

2  the August 18, 2025 Order. Indeed, Mr. Stanley had at least three opportunities to avoid motion

3  practice. First, as this Court repeatedly noted, he could have challenged Defendants' confidentiality

4  designations through the process required by the Protective Order. *See* Exhibit A, Transcript of August

5  12, 2025 Hearing at 6:21-7:4; 11:21-23. Second, Mr. Stanley could have stopped violating the

6  Protective Order when Defendants demanded it. Third, Mr. Stanley could have accepted Defendants'

7  proposed compromise, which would have required him to seek Defendants' or this Court's permission

8  before further use of the Confidential Information. Mr. Stanley rejected all of these options thus

9  forcing Defendants to incur fees because of his clear violation of the Protective Order and the August

10  18, 2025 Order.

11    Federal Rule of Civil Procedure 37(b)(2)(C) provides that, when addressing the failure to

12  comply with a court order, the court "must order the disobedient party, the attorney advising that party,

13  or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

14  failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R.

15  Civ. P. 37(b)(2)(C). Here, Mr. Stanley failed to comply with both the December 28, 2023 Protective

16  Order (ECF 176) and the August 18, 2025 Order (ECF 3708). As a direct result, Defendants incurred

17  attorneys' fees. Mr. Stanley's failure to comply with these orders was not substantially justified and

18  no circumstances make an award of fees unjust. To the contrary, sanctions are necessary both to

19  compensate Defendants and deter additional future violations.

20    Having now identified the fees they were forced to incur because of Mr. Stanley's violations

21  of the Protective Order, and having incurred further fees because of Mr. Stanley's violations of the

22  August 18, 2025 Order (causing Defendants to seek his compliance once again), Defendants

23  respectfully request that the Court require Mr. Stanley to pay Defendants' reasonable attorneys' fees

24  incurred: (a) investigating Mr. Stanley's Protective Order violations and attempting to compel Mr.

25  Stanley to comply with the Protective Order without Court intervention; (b) drafting, filing, and

26  arguing their Motion to Enforce Protective Order and related filings; and (c) seeking to compel Mr.

27

28

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

Case No. 3:23-MD-3084-CRB

Stanley to perform the remedial measures required by this Court's August 18, 2025 Order.[2]

**II.    Facts**

      **A.    Mr. Stanley's violation of the Protective Order forced Defendants to incur attorneys' fees.**

Despite Mr. Stanley's clear violation of the Protective Order, Defendants made every effort to avoid motion practice. Exhibit B, Gromada Dec., ¶2-7. Defendants demanded that Mr. Stanley cease violating the Protective Order, but he refused without explaining why information pulled from the face of documents marked Confidential and Highly Confidential/Attorneys' Eyes Only was not covered by the Protective Order. Exhibit B, Gromada Dec., ¶2-7. Defendants conferred with Mr. Stanley and proposed an "agreement to disagree" that would have required Mr. Stanley to request this Court's permission before any further use of the Confidential Information, but Mr. Stanley said this was "not workable." Exhibit B, Gromada Dec., ¶2-7.

Shortly thereafter, Defendants' MDL counsel learned that Mr. Stanley's co-counsel in one non-MDL case had publicly filed the Confidential Information and that Mr. Stanley's spreadsheet containing Defendants' Confidential Information was being further disseminated among other plaintiff's counsel in non-MDL cases. Exhibit B, Gromada Dec., ¶8. Thus, Defendants were left with no choice but to seek expedited court intervention. *Id.*

      **B.    The Court ordered Mr. Stanley to take specific actions to mitigate the damage caused by his violations of the Protective Order.**

After finding that Mr. Stanley violated the Protective Order, this Court entered the August 18, 2025 Order, which was jointly submitted by the parties, requiring Mr. Stanley to take specific actions

---

[2] To be clear, Defendants seek recovery of fees and costs as against *Mr. Stanley* for his conduct as counsel of record in this MDL. Defendants do not seek entry of an award of fees or costs as against any Plaintiff(s) in this action. Mr. Stanley alone is responsible for his own professional misconduct, and Defendants do not believe it should be imputed to his clients. *See L.D. v. United Behavioral Health*, No. 4:20-cv-02254, Dkt. No. 521, at 7–8 (N.D. Cal. October 15, 2025) (Gonzalez Rogers, J.) (sanctioning the plaintiffs' lawyer and his law firm for protective order violation) (tentative order made final on October 15, 2025 (Dkt. No. 521)); *Bradshaw v. Vilsack*, 286 F.R.D. 133, 144 (D.D.C. 2012) (finding that imposing a monetary penalty on a plaintiff for the "misdeeds of his attorney would be unjust" but that monetary sanctions under Rule 37 against his attorney, "on the other hand, are firmly justified by the cost, inconvenience, and difficulty that his professional misconduct has imposed on the defendants, the Court, and his own [] client").

3

to mitigate the damages caused by his violations of the Protective Order. ECF 3708. Paragraph (c) of the August 18, 2025 Order required Mr. Stanley to "identify to Defendants' counsel all court proceedings in which Mr. Stanley **is aware** that the Confidential Information has been used or disclosed in discovery or otherwise" by August 21, 2025. ECF 3708 (emphasis added). Paragraph (d) required Mr. Stanley to "provide a copy of this Order to all persons **and courts** identified pursuant to paragraph (c) of this Order" by August 21, 2025. ECF 3708 (emphasis added).

In the Motion to Enforce Protective Order, Defendants identified the four cases in which Defendants knew that Confidential Information was being used; therefore, Mr. Stanley was indisputably aware of these four cases. ECF 3512-1, 18, 40, 42; ECF 3512-17; ECF 3512-18. These cases are: *Smith v. Uber Technologies, Inc., et al.*; *Lord v. Uber Technologies, Inc., et al.*; *Casey Jones v. Uber Technologies, Inc., et al.*; and *Soto v. Uber Technologies, Inc., et al. See* ECF 3512-1, ¶ 18, 40, 42; ECF 3512-17; ECF 3512-18.

### C. Defendants have incurred additional attorneys' fees as a direct result of Mr. Stanley's violations of the August 18, 2025 Order.

Mr. Stanley violated this Court's August 18, 2025 Order when he failed to provide a copy of that Order to the courts in *Lord*, *Jones*, and *Soto* by August 21, 2025 as required. Exhibit B, Gromada Dec., ¶11-19 and Exhibit 1. In addition, Mr. Stanley also failed to "take reasonable efforts to retrieve or ensure the destruction of all unauthorized Confidential Information" because his *Lord* co-counsel not only had access to the Confidential Information, but publicly filed it a second time in October 2025. Exhibit B, Gromada Dec., ¶20-21. Mr. Stanley's repeated violations collectively demonstrate a disregard for the Court's Orders rather than a single oversight or misunderstanding. Exhibit B, Gromada Dec., ¶2-8; 11-21.

Mr. Stanley failed to provide a copy of the August 18, 2025 Order to the *Lord* court by August 21, 2025 as required. Exhibit B, Gromada Dec., ¶11. Defendants identified this violation and swiftly emailed Mr. Stanley to notify him. *Id*. However, Mr. Stanley's response failed to address the issue. Exhibit B, Gromada Dec., ¶11 and Exhibit 1 (Gromada August 22, 2025 email) and Exhibit 2 (Stanley August 22, 2025 email). As a result, Defendants filed the August 18, 2025 Order with the *Lord* court

---

4

themselves. Exhibit B, Gromada Dec., ¶12.[3] Mr. Stanley also failed to provide a copy of the August 18, 2025 Order to the *Jones* court even though Mr. Stanley disclosed the Confidential Information to the plaintiff's counsel in that case (Evan Lide)[4]. Exhibit B, Gromada Dec., ¶13. After the August 21, 2025 deadline, Defendants' counsel emailed Mr. Stanley *three times* asking for confirmation that he provided the August 18, 2025 Order to the *Jones* court as required. Exhibit B, Gromada Dec., ¶13. Mr. Stanley did not respond to the first two emails and failed to address the *Jones* case when responding to the third email. *Id*. at ¶13 and Exhibit 2.[5]

Mr. Stanley was aware that the Confidential Information was disclosed in *Soto*. Exhibit B, Gromada Dec., ¶14. Mr. Stanley also knew the identity of the plaintiff's counsel who disclosed the Confidential Information in *Soto*, as well as the court and case number. *Id*. Despite this knowledge, Mr. Stanley maintained that he was not required to take any action in *Soto* because he claims he did not personally disclose the Confidential Information to the *Soto* plaintiff's counsel. Exhibit B, Gromada Dec., ¶14-15. Mr. Stanley claimed he "[did] not know the lawyers in the *Soto* matter" and knew "nothing about that case or who [sic] the firms involved." Exhibit B, Gromada Dec., ¶ 15-16.

Defendants then pointed Mr. Stanley to the language in the Order (that he jointly prepared with Defendants) requiring Mr. Stanley to provide a copy of the August 18, 2025 Order to the *Soto* court because Mr. Stanley knew the Confidential Information had been disclosed in the *Soto* case. Exhibit B, Gromada Dec., ¶17. After receiving no response from Mr. Stanley, Defendants again raised Mr. Stanley's failure to comply in *Soto*. Exhibit B, Gromada Dec., ¶17. Mr. Stanley responded: "I didn't disclose anything to the *Soto* counsel. I informed you I had no knowledge of which court the case was in or who counsel was. Stop playing games. If you have information, then share it. If you would prefer to go to the Court, I'll be there." Exhibit B, Gromada Dec., ¶18 and Exhibit 2 (Stanley's August 22,

---

[3] Thereafter, Mr. Stanley claimed that his email transmitting the August 18, 2025 Order to the *Lord* court was "hung in my outbox." Exhibit B, Gromada Dec., ¶12. Mr. Stanley explained that he failed to respond to Defendants' counsel's email identifying this violation because he "thought [they] were working from stale information." Exhibit B, Gromada Dec., ¶12.

[4] Mr. Lide is an attorney with Stark & Stark, PC, along with Bruce Stern, Mr. Stanley's co-counsel in *Lord*.  Exhibit B, Gromada Dec., ¶13.

[5] Ultimately, the *Jones* court received the August 18, 2025 Order from Mr. Lide -- not Mr. Stanley -- on August 25, 2025. *Id.*

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

Case No. 3:23-MD-3084-CRB

1  2025 email). Based on Mr. Stanley's response, Defendants had no choice but to provide the August

2  18, 2025 Order to the *Soto* court themselves on August 26, 2025. Exhibit B, Gromada Dec., ¶ 18.

3        **D.**    **On October 8, 2025, Mr. Stanley's *Lord* co-counsel <u>again</u> publicly filed**
4                **Defendants' Confidential Information, despite the August 18, 2025 Order's**
              **requirement that Mr. Stanley "take reasonable efforts to retrieve or ensure the**
5                **destruction of all unauthorized Confidential Information…."**

6        On October 8, 2025, Mr. Stanley's co-counsel in *Lord* once again publicly filed Defendants'

7  Confidential Information. Exhibit B, Gromada Dec., ¶20. Specifically, Mr. Stanley's co-counsel

8  publicly filed the exact same discovery request that was attached to Defendants' Declaration

9  Supporting Motion to Enforce Protective Order. Exhibit B, Gromada Dec., ¶20; ECF 3512-7. This

10  Court found that this discovery request contained Confidential Information that Mr. Stanley used and

11  disclosed in violation of the Protective Order. Exhibit B, Gromada Dec., ¶20. This Court's August 18,

12  2025 Order required Mr. Stanley to "take reasonable efforts to retrieve or ensure the destruction of all

13  unauthorized Confidential Information…." ECF 3708. Therefore, Mr. Stanley's co-counsel should not

14  have had possession of any Confidential Information to *again* publicly disclose. Exhibit B, Gromada

15  Dec., ¶21.[6] Defendants' Confidential Information remained on the *Lord* public docket for thirteen days

16  after Mr. Stanley's co-counsel filed it. Exhibit B, Gromada Dec., ¶21.

17  **III.**   **Law**

18        Federal Rule of Civil Procedure 37(b)(2) allows the court to treat the failure to obey an order

19  "as contempt of court…." Fed. R. Civ. P. 37(b)(2)(A)(vii). "A court need not find bad faith before

20  imposing sanctions for violations of Rule 37." *Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-

21  08299-SB-AS, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26, 2022) quoting *Oracle USA, Inc. v. SAP*

22  *AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009).

23

24

25  ---

26  [6] Defendants continue to have to police Mr. Stanley's compliance. Because factual questions remain outstanding, including how the plaintiff's counsel in *Soto* received the Confidential Information and what Mr. Stanley did to prevent the most recent public disclosure in *Lord*, Defendants may be required
27  to seek further relief from this Court in order to prevent continued disclosure of the Confidential Information as a result of Mr. Stanley's violation of the Protective Order and reserve the right to do
28  so at a later date.

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

Rule 37(b)(2)(C) provides that the court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

This Court also has the inherent power to compel compliance with its orders, and compensate parties damaged by violations of court orders, upon a finding of civil contempt. Civil contempt requires a showing that the contemnors violated a specific and definite court order by clear and convincing evidence. *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999); *Oliner v. Kontrabecki*, 305 B.R. 510, 520 (N.D. Cal. 2004). Civil contempt does not require a showing of willfulness. *Khraibut v. Chahal*, No. 15-CV-04463-CRB, 2022 WL 1438113, at *4 (N.D. Cal. Mar. 22, 2022). Civil contempt proceedings serve two purposes: (1) coercing compliance with a court order; and (2) compensating the prevailing party. *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*, 721 F.3d 1122, 1128 (9th Cir. 2013).

Here, sanctions are appropriate under the plain language of Rule 37(b)(2)(C) and the Court's inherent power to deter future violations and remedy contempt.

## IV.    Argument

### A.    This Court should award Defendants' attorneys' fees under Rule 37(b)(2)(C).

Once, as here, the Court has found that Mr. Stanley violated the Protective Order, reimbursement of expenses is mandatory absent an applicable exception. *See Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6449193, at *1 (S.D. Cal. Nov. 3, 2020). Because Mr. Stanley violated both the Court's December 28, 2023 Protective Order (ECF 176) and its August 18, 2025 Order (ECF 3692), Defendants incurred fees: (a) investigating Mr. Stanley's Protective Order violations; (b) communicating with him repeatedly and attempting to make him comply with the Protective Order without Court intervention; (c) drafting and filing their Motion to Enforce Protective Order and related filings; and (d) seeking to compel Mr. Stanley to perform the remedial measures required by this Court's August 18, 2025 Order.

Thus, under Rule 37(b)(2), "the court must order the disobedient party, the attorney advising

1    that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

2    unless the failure was substantially justified or other circumstances make an award of expenses

3    unjust." Fed. R. Civ. Proc. 37(b)(2)(C); *L.D. v. United Behavioral Health,* No. 4:20-cv-02254, Dkt.

4    No. 521, at 4 (N.D. Cal. Oct. 15, 2025).[7] Except where the offender's conduct was "substantially

5    justified," or an award of expenses is otherwise "unjust"—neither of which describes the present

6    case—Rule 37 sanctions are mandatory and "must be applied diligently both 'to penalize those whose

7    conduct may be deemed to warrant such a sanction, [and] to deter those who 'might be tempted to

8    such conduct in the absence of such a deterrent.'" *National Hockey League v. Metropolitan Hockey*

9    *Club*, 427 U.S. 639, 643 (1976) (*per curiam*).

10    The party against whom an award of expenses is sought has the burden of showing the special

11    circumstances that make his failure to comply "substantially justified." *David v. Hooker, Ltd.*, 560

12    F.2d 412, 418-19 (9th Cir. 1977); Fed. R. Civ. P. 37(b)(2), 1970 Advisory Committee Notes. A

13    position is not substantially justified where "reasonable people could not differ" on its lack of merit.

14    *See Gopher Media, LLC*, 2020 WL 6449193, at *2; *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir.

15    1981); *Vargas v. City and Cty. of Honolulu*, No. 19-cv-0116-LEK-WRP, 2020 WL 13904131, at

16    *4-5 (D. Haw. July 23, 2020) (finding reasonable people could not differ on whether the plaintiffs'

17    counsel's failure to comply with protective order was "substantially justified" where the plaintiffs'

18    counsel failed to challenge confidentiality designation or file documents under seal).

19    There is nothing about the facts presented here to suggest that Mr. Stanley's conduct (the only

20    conduct at issue) in disclosing Confidential Information in litigation unrelated to this MDL was at all

21    justified—let alone substantially so. As this Court has previously noted, the Protective Order includes

22    a required process for challenging confidentiality designations, which provided Mr. Stanley a process

23    to dispute any material that he believed was not properly designated. Yet, he failed to do so. Instead,

24    Mr. Stanley admitted that he pulled information from the face of documents marked Confidential and

25

---

26    [7] The Ninth Circuit "has repeatedly held that Rule 37 'provides comprehensively for enforcement of all discovery orders, including Rule 26(c) protective orders.'" *Apple, Inc. v. Samsung Elecs. Co.*, No.

27    511CV01846LHKPSG, 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014); *see also* Fed. R. Civ. P. 16(f) ("[I]f a party or its attorney ... fails to obey a scheduling or other pre-trial order," "the court may

28    issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii-vii)[.]").

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

Highly Confidential/Attorneys' Eyes Only and used and disclosed that information in non-MDL cases because it would "assist in discovery efficiencies…." ECF 3584. But, the supposed ends can never justify the means of violating court orders. And, here, Mr. Stanley's disclosure of the Confidential Information clearly violated the plain language of the Protective Order. Mr. Stanley's use of the Confidential Information outside of the MDL also clearly violated the plain language of the Protective Order.

Mr. Stanley then repeatedly violated the August 18, 2025 Order, which resulted in Defendants' Confidential Information being disclosed *again*. While arguably a single supposed oversight or misunderstanding might be excused as inadvertent, Mr. Stanley's repeated actions collectively demonstrate a disregard for the Court's directives that cannot be minimized under any fair reading of the record.

Because Mr. Stanley's actions were not substantially justified, an award of Defendants' attorneys' fees that were caused by Mr. Stanley's violations is required even if Mr. Stanley's actions were "not willful or malicious." *L.D.*, No. 4:20-cv-02254, Dkt. No. 521, at 4 (ordering the plaintiff's counsel to pay attorneys' fees as sanction for violating the protective order where counsel's "assumptions" that he could provide confidential information to a government regulator after executing a common interest agreement "were not reasonable") (tentative order made final on October 15, 2025 (ECF 521)). Indeed, Mr. Stanley has already admitted his actions were willful, and he cannot credibly claim otherwise now.

**B.    Alternatively, this Court may award Defendants attorneys' fees under the Court's inherent authority.**

Although there is ample basis on the record to find the required award of attorneys' fees justified under Rule 37, the Court may also predicate its order for attorneys' fees under its inherent authority. Federal courts have the inherent power to impose sanctions against attorneys for "bad faith" conduct in litigation or for "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991); *Roadway Express, Inc. v. Piper*, 447 US 752, 764-766 (1980); *see also Unigard Sec. Ins. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are governed not by rule or statute but by the control necessarily

9

1    vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition

2    of cases.") (internal quotation marks and citation omitted).

3        The Court may "safely rely on its inherent power" if other rules do not provide appropriate

4    sanctions. *Chambers*, 501 U.S. at 33. The Court's inherent authority is typically triggered when a party

5    acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon v. IDX Systems Corp.*, 464

6    F.3d 951, 961 (9th Cir. 2006) (citation omitted). Before awarding sanctions in the form of attorney's

7    fees, the court must make an express finding that the sanctioned party's behavior "constituted or was

8    tantamount to bad faith." *Id.* (citation omitted). "A party demonstrates bad faith by delaying or

9    disrupting litigation or hampering enforcement of a court order." *Id.* Because the standard for engaging

10   the court's inherent authority is broad and allows the judge significant power, the Northern District of

11   California has stated it "must be exercised with restraint and discretion." *Mulato v. Wells Fargo Bank,*

12   *N.A.*, 76 F. Supp. 3d 929, 962 (N.D. Cal. 2014). Additionally, the amount of monetary sanctions must

13   be "reasonable." *Leon*, 464 F.3d at 961 (citing *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1184

14   (9th Cir.), *as amended by* 803 F.2d 1085 (1986)).

15       Here, Mr. Stanley's conduct easily supports a finding of bad faith. As detailed above, Mr.

16   Stanley's actions clearly hampered the enforcement of two Court orders—both the underlying

17   Protective Order and this Court's August 18th Order. Defendants gave Mr. Stanley ample notice and

18   opportunity to cure his violations of the Protective Order, which he willfully ignored. Moreover, Mr.

19   Stanley's further violation of the August 18, 2025 Order provides additional evidence of his willful

20   bad faith because after Defendants notified Mr. Stanley of three additional violations that he needed

21   to redress, he initially chose to ignore them and told the Defendants to take it to court. Courts are more

22   likely to find evidence of bad faith where a party commits a ***knowing violation***. *See Leon*, 464 F.3d at

23   959 (awarding attorneys' fees under the court's inherent authority and finding bad faith where the

24   plaintiff knowingly destroyed evidence when he knew he had a duty to preserve evidence and that the

25   evidence was relevant to the case); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286-87

26   (N.D. Cal. 2015) (awarding attorneys' fees under inherent authority and finding party acted in bad

27   faith when it knowingly omitted relevant information from its interrogatory responses).

28

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

1      When Defendants confronted Mr. Stanley about his violations of the underlying Protective

2  Order, instead of doing his due diligence and remedying the situation, he knowingly chose to ignore

3  the violations. This alongside Mr. Stanley's comments telling Defendants to "[s]top playing games"

4  and "[i]f you would prefer to go to the Court, I'll be there," in response to Defendants' repeated

5  requests that Mr. Stanley comply with the Court's orders, demonstrate a deliberate choice to continue

6  violating court orders and to waste the Court's time instead of cooperating or remedying the situation.

7  These are clear examples of bad faith behavior, for which this Court should award monetary damages

8  to compensate Defendants and deter future conduct.

9      **C.      The attorneys' fees Defendants seek are reasonable.**

10      Defendants seek an award of the attorneys' fees limited to what they incurred in the MDL

11  matter and as a direct result of Mr. Stanley's violations of court orders. Defendants sought to avoid

12  and minimize these fees through conferrals and compromise offers. Unfortunately, because Mr.

13  Stanley failed to challenge confidentiality designations as required by the Protective Order, rejected

14  all compromise offers, and forced Defendants into motion practice, Defendants incurred extensive

15  fees. In determining what constitutes a reasonable attorneys' fees award, federal courts employ the

16  Lodestar method which is calculated by multiplying the number of hours the prevailing party

17  reasonably expended on the litigation by a reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085,

18  1099 (9th Cir. 2016); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation

19  omitted). A strong presumption exists "that the lodestar figure represents a reasonable fee."

20      Here, Defendants' attorneys expended a total of 307.3 hours due to Mr. Stanley's violation of

21  the Protective Order. *See* Exhibit C, Declaration of Michael B. Shortnacy ("Shortnacy Dec."), ¶ 10.

22  This included 37.2 hours investigating Mr. Stanley's non-compliance with the Protective Order,

23  including but not limited to, tracing the Confidential Information used in the *Lord* and *Smith* cases and

24  researching and preparing cease and desist letters; 16.5 hours conferring and attempting to

25  compromise with Mr. Stanley; 155.5 hours preparing and filing the Motion to Enforce the Protective

26  Order and related and supporting filings over a two month period;[8] 37.80 hours preparing and drafting

27  _____

28  [8] The Motion to Enforce Protective Order filings included work to prepare seven separate documents:
    (1) Motion to Enforce Protective Order with Points and Authorities; (2) 16-page Gromada Declaration

1    Sealing of Motion to Enforce Protective Order to protect the very Confidential Information that Mr.

2    Stanley wrongly disclosed; 33.6 hours preparing for oral argument on Motion to Enforce Protective

3    Order; 12.3 hours drafting and negotiating the Proposed Order on Motion to Enforce Protective Order;

4    and 14.4 hours seeking to compel Mr. Stanley to perform the remedial measures required by this

5    Court's August 18, 2025 Order. Exhibit C, Shortnacy Dec., ¶ 10.

6         The hours expended by Defendants' attorneys were reasonable.[9] A sworn attorney declaration

7    attesting to the time taken and its necessity, like the one Defendants have provided, is "evidence of

8    considerable weight on the issue of the time required." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081

9    (N.D. Cal. 2010). To deny compensation, "it must appear that the time claimed is obviously and

10    convincingly excessive under the circumstances." *Id.* (citation omitted). In addition, courts consider

11    "the quality of the representation" and "the complexity and novelty of the issues presented" in

12    assessing the reasonableness of fees. *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539,

13    570 (9th Cir. 2019).

14         Here, counsel was forced to investigate several collateral legal proceedings that were involved

15    in Mr. Stanley's violations of the Protective Order and review the extensive history of discovery

16    conferrals, orders, and productions in the MDL. *Kim v. Fujikawa*, 871 F.2d 1427, 1435 (9th Cir. 1989).

17    In addition, Mr. Stanley tenaciously opposed Defendants' efforts every step of the way, *see Credit*

18    *Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994),

19    such that his "litigation conduct has caused [Defendants] to have to work harder than [they] otherwise

20    might have." *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-cv-7071, 2025 WL 510430, at *2 (N.D. Cal.

21

22    Supporting Motion to Enforce Protective Order, with exhibits, detailing the scope of Mr. Stanley's
      violations; (3) Proposed Order on Motion to Enforce Protective Order with narrowly tailored relief;

23    (4) Motion to Shorten Briefing Schedule on Motion to Enforce Protective; (5) 8-page required
      Declaration Supporting Motion to Shorten Briefing Schedule; (6) Proposed Order on Motion to

24    Shorten Briefing Schedule; and (7) Reply Memorandum of Points and Authorities Supporting Motion
      to Enforce Protective Order.

25    [9] Defendants have actually incurred more costs and attorneys' fees as a direct result of Mr. Stanley's

26    improper conduct than those fees sought in this Motion. Exhibit C, Shortnacy Dec., ¶¶11-13.
      Defendants incurred MDL Protective Order related fees in four non-MDL matters wherein Mr. Stanley

27    disclosed Confidential Information: *Lord, Smith, Jones, and Soto*. At this time, Defendants ask for
      recovery of only those costs directly tied to and reflecting the work in investigating, seeking

28    compromise, the resulting motion practice, and enforcement in the MDL.

1   Feb. 14, 2025); *see also Puckett v. Cnty. of Sacramento*, No. 2:22-cv-0350, 2024 WL 2304885, at *3

2   (E.D. Cal. May 21, 2024) ("Based on defendants' conduct and the nature of the dispute the undersigned

3   finds the number of hours expended to be reasonable."). Defendants' counsel provided high-quality

4   representation and achieved litigation success on "a plethora of complex issues" in the face of fierce

5   opposition, and the number of hours they spent to do so is therefore reasonable. *Toussaint v. McCarthy*,

6   826 F.2d 901, 904 (9th Cir. 1987).

7        Similarly, the hourly rates charged by Defendants' counsel, which range from $███ to $███

8   are reasonable. Exhibit C, Shortnacy Dec., ¶ 5. In determining whether the hourly rate billed is

9   reasonable for purposes of an attorneys' fees award, the Court must ensure that the requested rates

10  "are in line with those prevailing in the community for similar services by lawyers of reasonably

11  comparable skill, experience, and reputation." *R.G. Abrams Ins. v. Law Offices of C.R. Abrams*, 342

12  F.R.D. 461, 523 (C.D. Cal. 2022) (citations omitted). The relevant community is the community where

13  the district court sits, *Eagle Eyes Traffic Indus. USA Hldg. LLC v. E-Go Bike LLC,* No. 21-cv-07097,

14  2025 WL 1482389, at *12 (N.D. Cal. March 28, 2025), in this case San Francisco. And this Court has

15  previously found reasonable rates of $735 to $2,169 for partners and of counsel; $325 to $1,278 for

16  associates, discovery counsel, and contract attorneys; and $285 to $710 for support staff. *Pacific Steel*

17  *Grp. v. Commercial Metals Co.,* No. 20-cv-07683, 2025 WL 2772618, at *20 (N.D. Cal. Sept. 29,

18  2025). Defendants' counsel's rates are well in line with these rates. Exhibit C, Shortnacy Dec., ¶ 6.

19       Multiplying the hours reasonably expended by Defendants' attorneys by the reasonable hourly

20  rates, Defendants have incurred a total of $187,303.30 in attorneys' fees, which is voluntarily reduced

21  by 10% to $168,572.97. Exhibit C, Shortnacy Dec., ¶ 9-13. Defendants are entitled to an award for

22  these fees under Rule 37(b)(2)(C).

23  **V.    Conclusion**

24       Mr. Stanley violated the Protective Order governing this MDL. Mr. Stanley then failed to take

25  the reasonable actions required by this Court's August 18, 2025 Order. The August 18, 2025 Order

26  that Mr. Stanley violated was meant to mitigate the damages resulting from his violations. It was also

27  meant to prevent further Protective Order violations exactly like the ongoing violation in the *Lord*

28

DEFENDANTS' MOTION FOR SANCTIONS AGAINST BRET STANLEY

1  matter that continues to damage Defendants. Defendants therefore respectfully request that this Court

2  impose monetary sanctions on Mr. Stanley individually (and not as against any Plaintiff) to

3  compensate Defendants for having to incur attorneys' fees as set forth herein.

4

5

6  DATED: October 24, 2025                    **SHOOK, HARDY & BACON L.L.P.**

7

8                                             By: */s/ Michael B. Shortnacy*_____
                                                    MICHAEL B. SHORTNACY
9
                                             **KIRKLAND & ELLIS LLP**
10                                           ALLISON M. BROWN
                                             JESSICA DAVIDSON
11                                           LAURA VARTAIN HORN

12                                           **O'MELVENY AND MYERS LLP**
13                                           SABRINA H. STRONG
                                             JONATHAN SCHNELLER
14
                                             **SHOOK, HARDY & BACON L.L.P.**
15                                           ALYCIA A. DEGEN
16                                           MICHAEL B. SHORTNACY
                                             PATRICK L. OOT, JR.
17                                           CHRISTOPHER V. COTTON

18

19                                           *Attorney for Defendants*
                                             UBER TECHNOLOGIES, INC.,
20                                           RASIER, LLC, and RASIER-CA, LLC

21

22

23

24

25

26

27

28