Roopal P. Luhana (*Admitted Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*All Cases* | Case No.: 3:23-md-03084-CRB<br><br>Hon. Charles R. Breyer<br><br>**PLAINTIFFS' MOTION TO RECONSIDER AND PARTIALLY VACATE ORDER REGARDING MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW-CAUSE ORDERS (ECF NO. 5216)**<br><br>Date:<br>Time:<br>Place: |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to Civil Local Rule 7-9 and the Court's Order Granting Plaintiffs' Motion for Leave to File Motion for Reconsideration, Plaintiffs will and hereby do move the Court to reconsider a portion of its February 10, 2026 Order (ECF No. 5216)(the "Order"). Specifically, Plaintiffs seek reconsideration of Paragraph 2 of the Order that imposes new retroactive and prospective certification mandates on certain Plaintiffs' firms and on certain Plaintiffs. The Motion for Reconsideration (the "Motion") is based on this Notice of Motion and Motion, and the pleadings and papers on file herein.

**INTRODUCTION**

Plaintiffs respectfully move for reconsideration and partial vacatur of Paragraph 2 of the Court's February 10, 2026 Order (ECF No. 5216).[1] Paragraph 2 imposes sweeping retroactive and prospective certification mandates on certain Plaintiffs' firms and on hundreds—if not thousands—of sexual assault survivors without any finding of misconduct, bad faith, or violation of Rule 26(g), and without notice or an opportunity to be heard. It is punitive in scope, untethered to the actual Motion that was before the Court, and is unsupported by the record.

Uber did not request this relief in its November 21, 2025 Motion. (ECF No. 4456, Ex. 2). Rather, Defendants' Motion was expressly limited to identified cases: 27 Plaintiffs subject to show-cause orders for allegedly non-bona-fide receipts and certain Plaintiffs who allegedly failed to provide sufficient documentation under PTO 31. Uber did not seek a firm-wide or MDL-wide certification regime in its Motion. Instead, the new affected cases and the relief appeared for the *first time* in Uber's Reply and "Amended" Proposed Order. It was never the subject of meet-and-confer, noticed motion practice, or adversarial briefing. Plaintiffs were afforded no meaningful opportunity to address its scope, burden, proportionality, or legal basis. The Order thus granted relief that was neither sought by Uber in its Motion nor litigated.

Paragraph 2 now conditions the viability of otherwise substantiated claims on retroactive certifications by counsel and sworn attestations by Plaintiffs—regardless of whether Uber has challenged the authenticity of the ride receipt in a given case. Plaintiffs whose documentation has been verified, and whose receipts Uber does not dispute, are nevertheless subjected to additional certification obligations solely because they are

---

[1] Plaintiffs do not seek reconsideration of Paragraph 1 (dismissing certain cases with prejudice) or Paragraph 3 (dismissing certain cases without prejudice under PTO 31). To the extent any individual Plaintiff contends that dismissal was improper pursuant to the Court's Order, counsel for those individual Plaintiffs will file appropriate, case-specific motions.

represented by a firm that also represented a Plaintiff accused of submitting a non-bona-fide receipt. There has been no finding that any firm knowingly submitted fraudulent materials or engaged in systemic misconduct. To the contrary, the record reflects isolated allegations involving approximately 27 cases out of roughly 3,188 pending in this MDL—*approximately 0.85 percent of the docket*.

And the retroactive certification mandate is not only punitive; it is unworkable. It requires counsel to reconstruct years-old communications, intake steps, and internal verification processes, and to certify after a "full review and analysis" factual matters tied to historical events that may no longer be fully obtainable. Indeed, in some instances, the personnel involved are no longer employed by those firms. The practical consequence is stark: if an affected Plaintiff's counsel cannot attest to historical internal conversations—despite the existence of a genuine receipt that Uber has independently confirmed—that Plaintiff's claim will nevertheless be dismissed. Conditioning the survival of a claim on counsel's and Plaintiff's ability to retroactively memorialize past communications that in many instances occurred years ago, rather than on the authenticity of the underlying evidence, detaches dismissal from the merits and instead substitutes unjustified procedural penalties.

PTO 31 already provides a structured mechanism for receipt verification and dismissal for noncompliance. The expansion imposed by Paragraph 2 goes far beyond that framework. It applies across hundreds or thousands of cases without individualized findings, without evidence of firm-level wrongdoing, and without a showing that existing procedures are inadequate. Such relief is disproportionate to the conduct at issue, exceeds the scope of the Motion before the Court and warrants immediate reconsideration and partial vacatur.

## BACKGROUND

On September 9, 2025, the Court entered PTO No. 31. (ECF No. 3877). PTO 31 was entered to address Defendants' concerns related to non-bona fide ride receipts. Specifically, PTO 31 required that Plaintiffs produce, *inter alia*, a bona fide ride receipt from an Uber trip

connected to the alleged incident or a detailed disclosure to Defendants explaining why the receipt is unavailable, among other requirements.

On November 21, 2025, Defendants filed a Motion to Dismiss Cases for Failure to Comply with PTO 31 and Show-Cause Orders (the "Motion")(ECF No. 4456). In that Motion, Defendants identified 27 Plaintiffs who were subject to the Court's September 9 and September 22, 2025 show-cause Orders and requested dismissal with prejudice of those Plaintiffs' claims. (*Id.*) Defendants also sought dismissal without prejudice of certain Plaintiffs under PTO 31. (*Id.*)

Defendants' November 21 Motion did <u>not</u> request a new global certification regime applicable to specified law firms or to any of the hundreds or thousands of affected cases, regardless of whether or not affected Plaintiffs submitted bone fide ride receipts. Nor did Defendants set forth the detailed Rule 26(g) and sworn Plaintiff certification requirements later imposed by the Court. Defendants' Motion was limited to <u>only</u> those cases cited in the Motion and Proposed Order.

On December 12, 2025, Defendants filed their Reply in Support of the Motion. (ECF No. 4663). In that Reply, *<u>for the first time</u>*, Defendants argued that the Court should impose additional equitable relief to potentially thousands of cases not included in their Motion, including "receipt-review certification requirements applicable to attorneys and plaintiffs for all cases filed by firms that have brought claims involving fraudulent receipts." Defendants attached a new "Amended" Proposed Order containing specific certification language that ultimately formed the basis for Paragraph 2 of the Court's Order.

Defendants did not meet and confer with Plaintiffs regarding any proposed firm-wide certification regime prior to filing their Reply. *See* February 24, 2026 Declaration of Roopal P. Luhana, Esq. ("Luhana Decl."), ¶ 3. Defendants never raised such a certification requirement before including it in their Reply and "Amended" Proposed Order which was filed while Plaintiffs' leadership was preparing for the *Dean* trial and shortly before that trial was set to begin. (*Id.*, ¶ 4)

On February 10, 2026, the Court entered its Order. (ECF No. 5216). Paragraph 2 imposes, *inter alia,* requirements for new and additional certifications from both Plaintiffs and their counsel, for <u>all</u> previously filed cases and for all new cases without any specific basis to do so that is tied to the specific Plaintiff, for those firms identified in the Order and Reply Brief. (*Id*.) There are currently approximately 3,188 cases pending in this MDL. Of those, Defendants identified 27 Plaintiffs as having submitted allegedly non-bona fide receipts. That means that Defendants have argued that approximately <u>*0.85%*</u> of all cases filed allegedly have non-bona fide ride receipts. There has been no finding that any law firm engaged in a pattern of knowingly submitting fraudulent receipts, and no determination that fraudulent receipts extend beyond the limited subset identified by Defendants. PTO 31 remains in effect and establishes a detailed framework governing receipt production, sworn verification, and dismissal for noncompliance.

## ARGUMENT

### I. DEFENDANTS WAIVED THEIR REQUEST FOR A GLOBAL CERTIFICATION REGIME BY RAISING IT FOR THE FIRST TIME IN THEIR REPLY BRIEF

**A. Defendants' New Certification Requests Were Not Raised in Their Motion**

Defendants' November 21 Motion sought dismissal of specified Plaintiffs with prejudice and dismissal of certain PTO 31 Plaintiffs without prejudice. (ECF No. 4456). Although the Motion included general language deferring to the Court regarding "other relief," it did not articulate, brief, or support a specific firm-wide certification regime. Nor was any firm-wide certification regime included in the Proposed Order Defendants attached to their Motion.

Instead, the detailed certification framework—retroactive and prospective Rule 26(g) certifications by counsel and sworn certifications by Plaintiffs—appeared for the first time in Defendants' December 12 Reply and the new "Amended" Proposed Order. Plaintiffs had no opportunity to address the appropriateness, scope, burden, legal basis, or proportionality of that proposed relief in their opposition to the Motion.

Courts in the Ninth Circuit consistently hold that arguments and requests for new relief raised for the first time in a reply brief are waived and should not be considered. The rationale is straightforward: fundamental fairness requires that a party have a meaningful opportunity to respond to the relief sought. *See, e.g., United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993)("a party may not make new arguments in the reply brief."); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir. 2004)(arguments "not raised by a party in its opening brief are deemed waived.")(citation omitted); *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("Defendant's argument ... was raised for the first time in her reply brief. As a result, it is improper for the Court to consider it."); *In re Western Asbestos Settlement Trust*, 2022 WL 4372359, at *11 (N.D. Cal Sept. 21, 2022)("[t[he Court will not consider these new arguments. The unfairness of presenting these arguments for the first time in a reply brief is obvious."); *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, n.15 (N.D. Cal. 2003)("It is improper to raise in reply a series of arguments that amount to an entirely new, unfiled motion.").

Here, the certification regime imposed in Paragraph 2 was not properly noticed, briefed, or supported in the opening Motion. Instead, it was introduced for the first time in reply while Plaintiffs' counsel were engaged with the *Dean* trial and without affording Plaintiffs an opportunity to be heard on its propriety. And it affects hundreds if not thousands of Plaintiffs who were not actually included in Defendants' initial Motion. For these reasons alone, Paragraph 2 of the Court's February 10, 2026 Order should be vacated.

**B. Defendants Failed to Meet and Confer Regarding their Proposed Certification Requirements**

The absence of prior notice is compounded by Defendants' failure to meet and confer regarding the proposed certification regime. Defendants never discussed these additional certification requirements before filing their Reply. Imposing sweeping firm-wide Rule 26(g) obligations and sworn Plaintiff certifications on hundreds if not thousands of sexual assault

survivors under these circumstances, that were not part of Defendants' initial Motion, deprives Plaintiffs of procedural fairness. Paragraph 2 should likewise be vacated on this basis.

## II. EVEN IF NOT WAIVED, THERE IS NOT A PATTERN OF PRODUCING FRAUDULENT RIDE RECEIPTS THAT REQUIRES IMPOSING SWEEPING FIRM-WIDE CERTIFICATION REQUIREMENTS

### A. The Number of Contested Receipts Is De Minimis Relative to the Size of the MDL

There are approximately 3,188 cases currently pending in this MDL. Defendants' Motion identified 27 Plaintiffs in connection with allegedly non-bona fide receipts. Even assuming all 27 receipts were problematic, that represents approximately 0.85% of the docket.

There has been no finding that any law firm knowingly submitted fraudulent receipts. There has been no evidentiary determination that fraudulent receipts are widespread across firms or cases. Nor has there been any showing that submission of contested receipts resulted from systemic screening failures rather than isolated issues.

Plaintiffs' counsel take the integrity of their cases seriously. As this MDL has progressed, counsel's understanding of formatting irregularities and technical anomalies has evolved, and additional internal safeguards have been implemented. Where problematic receipts have been identified, counsel have taken corrective action and have not sought to advance non-meritorious claims. On this record, imposing retroactive certifications for every receipt submitted by entire firms—across hundreds or thousands of cases—cannot be justified as a narrowly tailored response to any demonstrated misconduct.

Sanctions or remedial measures should be proportionate and tailored to address identified misconduct. Here, the identified issue concerns a small subset of allegedly non-bona fide receipts. The appropriate remedy for those cases may be dismissal with prejudice, as set forth in Paragraph 1 of the Order. But extending the remedy to impose firm-wide certifications across hundreds or thousands of cases—past and future—goes well beyond addressing the identified misconduct. There has been no evidentiary hearing, no finding of bad faith by counsel, and no demonstration of systemic screening failures. Paragraph 2 thus imposes a

sweeping, punitive measure untethered to the limited factual findings in the record.

**B. PTO 31 Already Provides a Comprehensive Mechanism to Ensure Receipt Integrity**

PTO 31 governs the issue of unsubstantiated Uber rides. It requires either production of a bona fide receipt verified under penalty of perjury or a detailed sworn statement describing search efforts and identifying the oldest and most recent Uber receipts available in email and in the Uber App. PTO 31 further provides for dismissal without prejudice for noncompliance. The Court has already enforced PTO 31 through Paragraph 3 of the February 10 Order. The existing framework ensures accountability, sworn verification, and dismissal for noncompliance.

Defendants have not demonstrated that PTO 31 is inadequate or that additional Rule 26(g) certifications are necessary to prevent fraud for any of the Plaintiffs that are now impacted. The certification regime imposed in Paragraph 2 duplicates and expands upon safeguards already in place, without any showing of necessity.

Moreover, the new and retroactive certification requirements are disproportionate and unduly burdensome. Paragraph 2 requires counsel to submit Rule 26(g) certifications for each ride receipt already submitted in the MDL by Plaintiffs of specified firms. It also requires each Plaintiff to submit a sworn certification for each such receipt.

These new certification requirements are not administratively workable. The retroactive certification mandate would require counsel and Plaintiffs to reconstruct communications, internal review steps, and verification processes that in many instances occurred years ago. That type of reconstruction is inherently onerous and unwarranted. Indeed, counsel is now required to certify, after a "full review and analysis," factual matters tied to conversations and document-handling processes that may have occurred long ago. In certain instances, the personnel involved in those communications may no longer be employed by the firm. And the practical effect of these new requirements is also unclear—if counsel cannot truthfully certify historical conversations that happened years ago despite the existence of a genuine ride receipt that Uber has independently confirmed, would that Plaintiff's case

nevertheless be dismissed? It is hard to imagine a more unjust result which would be based solely on which law firm a given Plaintiff chose to represent them (and the conduct of another unrelated Plaintiff represented by that same firm). Conditioning the viability of an otherwise substantiated claim on an attorney's ability to retroactively attest to what may be years-old communications will result in dismissal of numerous claims untethered to the merits of the Plaintiff's claim. That result would be disproportionate, inequitable, and unjust.

And, again, there has been no showing that such an extraordinary measure is necessary. Defendants have not identified systemic deficiencies in the ride receipt submissions and have raised no ride receipt issue as to more than 99 percent of Plaintiffs. Imposing a blanket, retroactive certification requirement in the absence of demonstrated widespread irregularities is disproportionate to any articulated concern.

The overwhelming majority of Plaintiffs have submitted genuine receipts or complied with PTO 31 without issue. Yet Paragraph 2 requires Plaintiffs who have not been accused of any wrongdoing, and were not even the subject of Uber's Motion, to undertake additional certifications as if their cases were suspect. In the context of sexual assault litigation, compelling sexual assault survivors to repeatedly revisit documentation issues and execute additional sworn certifications—without individualized cause—will cause victim re-traumatization without any basis whatsoever. The Court should not impose punitive or overbroad requirements on Plaintiffs or their counsel absent a factual basis demonstrating clear systemic misconduct.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court vacate paragraph 2 of its February 10, 2026 Order (ECF No. 5216).

Dated: February 25, 2026

Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108

Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

## FILER'S ATTESTATION

　　I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: February 25, 2026

By: */s/Roopal P. Luhana*
Roopal P. Luhana