Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2500 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO MOTION TO RECONSIDER AND PARTIALLY VACATE ORDER**<br><br>Judge: Honorable Charles R. Breyer |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II. BACKGROUND .................................................................................................. 1

III. LEGAL STANDARD .......................................................................................... 9

IV. ARGUMENT ...................................................................................................... 10

    A. Plaintiffs Fall Far Short of Meeting the Motion for Reconsideration Standard. .................................................................................................... 10

    B. PTO 31 Is Necessary but Insufficient, and the Court Should Reject Plaintiffs' Request to Limit Relief to Dismissals. ....................................... 11

    C. The Relief Ordered by the Court is Narrowly Tailored to Plaintiffs' Firms Who Submitted Fraudulent Receipts. .......................................................... 12

V. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
  No. 21-CV-08787-TSH, 2025 WL 672941 (N.D. Cal. Mar. 3, 2025)......................................10

*In re Deepwater Horizon*,
  907 F.3d 232 (5th Cir. 2018) ................................................................................................7

*Doe v. Bd. of Trs. of Univ. of Ill.*,
  No. CV 19-CV-1107, 2020 WL 13883389 (C.D. Ill. Dec. 14, 2020) ................................4, 11

*Kona Enters., Inc. v. Est. of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ........................................................................................5, 10, 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ................................................................................................10

*Oceania III Condo. Ass'n v. Westchester*,
  No. 22-23681-Civ-Scola, 2023 WL 3943612 (S.D. Fla. June 12, 2023)............................4, 11

*Pac. Coast Fed'n of Fishermen's Ass'n v. Locke*,
  No. C 10-04790 CRB, 2011 WL 289927 (N.D. Cal. Jan. 27, 2011) (Breyer, J.)............4, 9, 10

*Soto v. United Airlines Inc.*,
  No. 24-cv-03045, 2024 WL 3996068 (N.D. Cal. Aug. 28, 2024) ........................................2, 3

*Victory v. Berks Cnty.*,
  No. CV 18-5170, 2019 WL 12097827 (E.D. Pa. Aug. 9, 2019).........................................4, 11

**Rules**

Fed. R. Civ. P. 59(e) ................................................................................................................10

N.D. Cal. Civ. R. 7-9(b)...................................................................................................4, 9, 10

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion for reconsideration should be denied. Fraud is widespread in this litigation and the Court's order imposes the bare minimum requirement to reduce it: requiring a single discussion between Plaintiffs' firms and the Plaintiffs they represent. Plaintiffs' counsels' proposed alternative relief—dismissing certain Plaintiffs without addressing the underlying problem (that certain specified Plaintiffs' firms are not adequately vetting their cases)—is categorically insufficient. The relief entered by the Court is not only the minimum but is also narrowly tailored to apply only to those Plaintiffs' law firms that have previously submitted fraudulent receipts.

The burden about which certain Plaintiffs' counsel now complain is of their own making and is orders of magnitude less than the burden that fraudulent Plaintiffs impose on this Court's resources as well as Uber, which has been required to spend thousands of hours reviewing documents and Plaintiff Fact Sheets (PFS) for fraud, even though Plaintiffs' counsel could much more effectively and efficiently stop fraud through basic vetting.

## II. BACKGROUND

Plaintiffs' motion attacks the Court's February 10 order yet leaves out the long history supporting the entry of the order. Uber filed motions for orders to show cause relating to fraudulent receipts on July 30 and August 28, 2025. ECF 3604, ECF 3784. Some Plaintiffs' counsel ignored the motions and others filed defiant responses, neither admitting to fraud nor providing evidence their clients had not committed fraud. *See, e.g.*, ECF 3771 at 2-4. The Court granted Uber's fraud motions and entered orders to show cause on September 9 and September 22, holding, "Plaintiffs listed in Exhibit A have submitted non-bona-fide receipts. Some of these receipts show on their face that they were generated using websites designed for creating receipts, such as Makereceipt.com. Other of these receipts contain math errors, formatting inconsistencies, and other errors." ECF 3876; *see also* ECF 3972. The vast majority of Plaintiffs' firms (7 out of 10 firms) subject to the show-cause orders chose to ignore the Court's orders, filing no response whatsoever. Uber filed its motion to dismiss on November 21, noting that most Plaintiffs' counsel disregarded the Court's order to show cause and that all Plaintiffs and Plaintiffs' counsel had refused to explain the fraud or apologize for it. ECF 4456. Plaintiffs' counsel filed their responses to the motion to dismiss by December 5, again refusing to explain or apologize for the fraud. ECF 4492; ECF 4574; ECF

1

4577; ECF 4578; ECF 4579; ECF 4587; ECF 4588; ECF 4589; ECF 4590. Uber replied on December 12. ECF 4663. The Court entered its order 60 days later, on February 10. Plaintiffs chose not to raise an issue with Uber's reply during the two months between Uber's December 12 reply and the Court's February 10 order. Plaintiffs instead waited to see the outcome of the Court's order, filing their motion for reconsideration on February 24, 14 days after the Court's order and 74 days after Uber's reply.

Plaintiffs' complaints about Uber's December 12 reply omit most of the context leading up to it. Uber's *opening* brief stated, "*most importantly, this Court should also grant such other relief* as it deems appropriate *to deter fraud and disregard of the Court's orders. Nothing is more critical* to the integrity of our judicial system than honesty and adherence to the rule of law." ECF 4456 at 9 (emphasis added). Uber's opening proposed order made clear that this "most important" relief extended beyond dismissals: "Defendants defer to the Court to insert whatever relief and other language the Court deems necessary *to address these Plaintiffs' fraud* and non-compliance with Court orders, *and to deter future fraud and noncompliance with Court orders*." ECF 4456-2 at 3 (emphasis added). Consistent with Uber's Motion, the Court's February 10 order not only addressed specific Plaintiffs but also "deter[red] future fraud and non-compliance with Court orders." *Id.* Plaintiffs' assertion that "Defendants' Motion was expressly limited to identified cases" (ECF 5299-1 at 3)—and therefore did not support the Court's order—is incorrect. ECF 4456-2 at 3.

In their December 5 responses to Uber's opening motion and the Court's show-cause orders, Plaintiffs' counsel remained unrepentant about the unrebutted fraud. Across 8 separate oppositions, Plaintiffs' counsel (1) did not admit fraud; (2) did not explain Plaintiffs' conduct; (3) offered no rebuttal evidence; and (4) declined to apologize to the Court or Uber for the fraud. ECF 4492; ECF 4574; ECF 4577; ECF 4578; ECF 4579; ECF 4587; ECF 4588; ECF 4589; ECF 4590. Plaintiffs' counsels' responses were completely inconsistent with this Court's precedent, which holds that a response to a show-cause order is "fundamentally inadequate" where, as here, it "contains no explanation as to *why*" the challenged conduct occurred, "fails to acknowledge that [an] error was unacceptable or apologize, and does not reflect any commitment to do better in the future." *See Soto v. United Airlines Inc.*, No. 24-cv-03045, 2024 WL 3996068, at *1 n.1 (N.D. Cal. Aug. 28, 2024) (emphasis in original).

In their December 12, 2025 reply, Defendants explained that Plaintiffs' responses had underscored why dismissal alone is categorically insufficient, and certifications are required:

> In their briefs, plaintiffs do not dispute that a response to a show-cause order is "fundamentally inadequate" where, as here, it "contains no explanation as to *why*" the challenged conduct occurred, "fails to acknowledge that [an] error was unacceptable or apologize, and does not reflect any commitment to do better in the future." *Soto v. United Airlines Inc.*, No. 24-cv-03045, 2024 WL 3996068, at *1 n.1 (N.D. Cal. Aug. 28, 2024) (emphasis in original).
>
> [. . .]
>
> *As these plaintiffs have shown this Court, dismissal with prejudice is not sufficient relief. Plaintiffs have had at least three opportunities to respond. They have shown no remorse. The vast majority of fraud plaintiffs and their counsel view this Court's orders as optional. As such, Uber has attached an amended proposed order to this Reply that imposes a certification requirement for the law firms that represent these fraudulent plaintiffs and their other clients.* Such certifications require counsel and their clients to certify that they conducted a full review and analysis of the ride receipt counsel submitted on each client's behalf before submitting that receipt in this MDL.
>
> [. . .]
>
> If the sole remedy is dismissal with prejudice, Plaintiffs' expected recovery will always be positive. This will also encourage other not-yet-detected fraudulent plaintiffs to remain quiet in the hopes that Uber does not identify their fraud.

ECF 4663 at 3, 7-8 (emphasis added). Uber's reply responded to the nonmoving parties' opposition and therefore was not only wholly appropriate but necessary. The issue was not with Uber's reply (as Plaintiffs belatedly claim after seeing the Court's order), but with more fundamental problems impacting this MDL: Plaintiffs' widespread fraud, Plaintiffs' counsel's inadequate vetting processes, and Plaintiffs' counsel's non-responses and semi-responses to Uber's briefs and the Court's show-cause orders.

Uber's reply brief was filed on December 12. The week after Uber filed its reply brief, multiple Plaintiffs' firms communicated with Uber about the reply, but counsel did not claim then that the reply raised new arguments or file anything with the Court. For example, on December 17, counsel for one Plaintiffs' firm which has a representative on Plaintiffs' Steering Committee communicated to Uber regarding compliance of several PTO 31 Plaintiffs included in Uber's amended proposed order. *See* Ex. 1.

The Court entered its order on February 10, two months after Uber filed its reply. Although Plaintiffs' counsel communicated with Uber in December about other issues related to its reply, no Plaintiffs' counsel argued prior to the Court's order that Uber's reply brief had raised new arguments, as Plaintiffs do now. And no Plaintiffs' counsel filed anything with the Court until months later, after the Court ruled.

The time to raise an issue with Uber's reply was in the 60 days between that reply and the Court's order. This is certainly not the first time a party has employed Plaintiffs' improper strategy of waiting until *after* a Court's order to complain about a reply brief, instead of seeking to file a motion for sur-reply *before* the Court's order. Courts have repeatedly held that a motion for reconsideration is not the proper vehicle for relief to raise alleged issues with a reply brief for the first time.[1] *See, e.g.*, *Doe v. Bd. of Trs. of Univ. of Ill.*, No. CV 19-CV-1107, 2020 WL 13883389, at *4 (C.D. Ill. Dec. 14, 2020) ("The court finds that nothing in Plaintiff's motion reaches the legal standard necessary to succeed on a motion to reconsider. Defendants did not raise the issue of eligibility for readmissions until their Reply (#45), which was filed September 1, 2020. However, the court did not issue its Order (#47) until October 26, 2020. Plaintiff, in that time, could have moved to file a Sur-Reply to address Defendants' argument, but Plaintiff did not."); *Oceania III Condo. Ass'n v. Westchester*, No. 22-23681-Civ-Scola, 2023 WL 3943612, at *2 (S.D. Fla. June 12, 2023) ("[T]o the extent Oceania suggests that it could not adequately address the Defendants' version of events because it was only set forth in their reply in support of dismissal, Oceania could have, but failed to, move the Court for leave to file a sur-reply. . . . Accordingly, and for the reasons explained above, the Court concludes that Oceania has failed to meet the demanding standard for reconsideration . . . ."); *Victory v. Berks Cnty.*, No. CV 18-5170, 2019 WL 12097827, at *1 n.1 (E.D. Pa. Aug. 9, 2019) ("Mses. Victory and Velazquez-Diaz also argue for reconsideration to prevent 'manifest injustice' because they could not respond to Berks County's argument concerning the Equal Rights

---

[1] Even after leave to file the motion is granted under N.D. Cal. Civ. R. 7-9(b), the Court considers the underlying reconsideration motion as "an extraordinary remedy, to be used sparingly." *Pac. Coast Fed'n of Fishermen's Ass'n v. Locke*, No. C 10-04790 CRB, 2011 WL 289927, at *1 (N.D. Cal. Jan. 27, 2011) (Breyer, J.).

Amendment in its reply brief. But under our Policies and Procedures they could have moved for leave to file a sur-reply."; denying motion for reconsideration).

Nor is the *Dean* trial a valid reason for Plaintiffs' counsel not to have sought a sur-reply, or to have waited until after the Court entered the order. Both sides in this litigation are represented by multiple law firms. During the 60 days between when Uber filed its December 12 reply brief and the Court entered its February 10 order, the law firms on Plaintiffs' Leadership or the Plaintiffs' Steering Committee (including Williams Hart & Boundas, LLP, Nigh Goldenberg Raso & Vaughn, PLLC, Simmons Hanly Conroy LLP, Walkup, Melodia, Kelly and Schoenberger, APC, Watts Guerra LLP, Walsh Law PLLC, Lieff Cabraser Heimann & Bernstein, LLP, Peiffer Wolf Carr Kane Conway & Wise, LLP, Chaffin Luhana LLP, and Girard Sharp LLP) engaged in extensive non-*Dean*-trial-related activities, including filing 31 new non-*Dean*-related Complaints, filing 18 non-*Dean*-related briefs, and giving multiple interviews to the media. Other law firms subject to Uber's motion (including Nachawati Law Group, Slater Schulman LP, Levin Simes LLP, Cutter Law PC, and Simmons Hanly Conroy) filed 18 new non-*Dean*-related Complaints and filed 9 non-*Dean*-related briefs. Among these 67 non-*Dean*-related filings, Plaintiffs' counsel could have filed a motion for leave to file a sur-reply, instead of waiting to learn the outcome of the Court's order. In these circumstances, Ninth Circuit precedent forecloses motion-for-reconsideration relief. *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (affirming denial of motion for reconsideration when issue raised could "reasonably have been raised earlier in the litigation").

At its core, Plaintiffs' motion complains about the need for Plaintiffs' counsel to have a single conversation with Plaintiffs who are each suing Uber for upwards of millions of dollars. Plaintiffs' counsel brought this fraud-heavy docket on themselves. Using click-bait ads like the ones below (which comes from a Plaintiffs' firm at issue in this motion)—seeking to entice Plaintiffs with the banner "Qualify Now For Large Settlement!"—Plaintiffs' counsel signed up hundreds for this litigation:



ECF 4456 at 5; *see also id.* at 12 (citing Total Injury Help, *Rideshare Assault – Free Case Evaluation*, https://www.rideshareassaultjustice.com/ (last visited Mar. 4, 2026)).

Lead generation firms like Blue Sky, meanwhile, boast they have "help[ed] law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of $3,600 to $4,800," and "deliver signed retainers at a targeted price range, helping law firms enter or scale into this litigation." *Uber and Lyft Sexual Assault Litigation: MDL and State Court Landscape* (last visited Feb. 27, 2026), https://blueskylegal.com/case-types/uber-and-lyft-sexual-assault/.

### BLUE SKY LEGAL: YOUR STRATEGIC PARTNER IN RIDESHARE ASSAULT LITIGATION

Blue Sky Legal is already helping law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of **$3,600 to $4,800**, depending on the complexity of the criteria. We deliver signed retainers at a targeted price range, helping law firms enter or scale into this litigation with predictable, high-quality case acquisition.

Whether your strategy is MDL, state court, or both, we can align targeting and screening to your needs. Our campaigns are compliance-ready, high-performing, and built with transparency. For litigation funders and law firms looking to participate in a landmark mass tort, we offer the volume and vetting needed to build value from day one.

**Contact us to learn more:** https://blueskylegal.com/contact-us/

These internet ads and lead generators are engines for fraud. Many of these internet-advertising-generated and lead-generated clients have fallen out of communication with their lawyers:

- After an order from this Court, three Plaintiffs' firms admitted that they did not communicate with 73 Plaintiffs after finalizing and before submitting Plaintiff Fact Sheets on their behalf. *See* ECF 4512, 4522, 4742.

- Plaintiffs' counsel have repeatedly attempted to withdraw *after* this Court entered orders relating to fraudulent receipts, citing an inability to talk with clients. This Court has repeatedly denied those motions.

- For example, one Plaintiff's firm admitted that one Plaintiff "has not responded to any efforts to reach her made by myself or [counsel's] staff *since May 9, 2023*" but it still "filed in the MDL" "[o]n August 21, 2024." ECF 4103-1 ¶¶ 2, 5e. The Court denied the Motion. ECF 4168.

Against this backdrop of certain Plaintiffs' counsel who do not communicate adequately with their internet-ad-generated and lead-generator clients, it is predictable that the Court's February 10 order—which requires Plaintiffs' lawyers to have a single conversation with their clients—has elicited such a strong reaction.

An unacceptably high percentage of the Plaintiffs generated from internet ads and lead generators like the ones above are fraudulent. Plaintiffs' motion for reconsideration incorrectly suggests that the number of fraudulent-receipt Plaintiffs is only 27. ECF 5299-1 at 4. But that was the number of fraudulent-receipt Plaintiffs in Uber's *first two fraudulent-receipts motions alone*. Plaintiffs' counsel ignore that Uber has since filed (1) a third fraudulent receipt motion, which was granted by the Court, ECF 4440; (2) a fourth fraudulent receipt motion, which remains pending, ECF 4993; (3) a fraudulent Plaintiff Fact Sheet motion covering 73 Plaintiffs, which remains pending, ECF 4590; and (4) motions regarding missing-receipt Plaintiffs, many of whom stopped pursuing their claims after the Court required them to provide additional detail. Uber has filed seven fraud-related motions.

Further illustrating just how vital this Court's order is in eliminating *active* fraud in the MDL, Uber will need to file yet another fraudulent-receipt motion in the coming weeks that will include fraudulent receipts submitted *in 2026*. Given that Plaintiffs' counsel have added over 917 Plaintiffs to this litigation since Uber filed its first fraud motion, and because these new Plaintiffs continue to submit fraudulent receipts, Uber will have no choice but to file many more fraud motions in this action. The Court's February 10 order properly recognized that dismissals alone would have been an inadequate solution, and that basic vetting by Plaintiffs' counsel is needed to address the underlying fraud problem. Otherwise, these fraud issues "hamper the resolution of meritorious claims by real plaintiffs." *In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018).

Moreover, the fraudulent Plaintiffs identified by Uber to date may only be the tip of the iceberg. Artificial intelligence and fraudster websites mean fraud detection is becoming ever more difficult. Makereceipt.com—another engine of fraud—provides the option for fraudsters to pay extra to generate receipts without telltale watermarks, meaning that more fraud likely exists in this litigation than just what has been detected by Uber thus far:



Makereceipt.com's plans available at https://makereceipt.com/signup-now.php (last visited March 3, 2026).

The burden Plaintiffs' counsel now complain about was largely of their own making.[2] *See* ECF 5299-1. Plaintiffs argue they are required to certify "factual matters tied to historical events that may no longer be fully obtainable." *See* ECF 5299-1 at 4. But Plaintiffs' counsel are in the best position to certify the vetting they are ethically required to undertake for each Plaintiff. Unlike Plaintiffs' counsel, Uber does not have easy access to non-bellwether Plaintiffs to vet their receipts or claims. Uber's search methods to substantiate rides as part of the Defendant Fact Sheet process are robust and involve substantial manual search efforts. ECF 3855 at 3–4. And efforts to detect fraudulent alterations require a laborious, line-by-

---

[2] Plaintiffs' counsel argue that "in certain instances, the personnel involved in those communications *may* no longer be employed by the firm" and may have had the discussion "years" ago, making it challenging to "reconstruct." ECF 5299-1 at 9 (emphasis added). Plaintiffs' counsel offer no proof for this speculative possibility. Moreover, the time to make this argument was before the Court entered its order. If the Court believes an amendment is warranted (which, to be clear, Uber does not believe is necessary), in the alternative, Uber attaches as Exhibit A an amended proposed order which adds the following certification option: "I am unaware whether a full review and analysis of the ride receipt my firm submitted on behalf of Plaintiff _____ was conducted prior to [date], the date my firm submitted Plaintiff's receipt in this MDL, because the firm personnel involved is no longer employed at the firm; however, since February 10, 2026, I have completed a full review and analysis of the ride receipt with that Plaintiff."

line review. As shown in the graphic below, Plaintiffs' counsels' proposal (dismissals alone) improperly seeks to shift the fraud-vetting burden to Uber. In fact, that burden ethically rests with Plaintiffs' counsel, who can vet their own Plaintiffs in a fraction of the time required for Uber.



Uber's alternate approach to fraud, adopted by the Court in its February 10 order, is below.

> Plaintiffs' Counsel and Plaintiffs (Who Plaintiffs' Counsel Should Have Easy Access To) Certify They Had a Single Discussion to Vet Ride Receipts

III.   **LEGAL STANDARD**

On February 24, 2026, Plaintiffs filed a motion seeking reconsideration of the Court's February 10 order. Later that same day, the Court dismissed Plaintiffs' motion without prejudice, ruling that Plaintiffs were first required to seek leave to file a reconsideration motion. ECF 5291. On February 25, Plaintiffs filed a motion seeking leave, and the Court granted leave that day.

Even after leave to file a motion for reconsideration is granted under N.D. Cal. Civ. R. 7-9(b), the Court considers the underlying reconsideration motion as "an extraordinary remedy, to be used sparingly." *See Pac. Coast Fed'n of Fishermen's Ass'n v. Locke*, No. C 10-04790 CRB, 2011 WL 289927, at *1 (N.D. Cal. Jan. 27, 2011) (Breyer, J.) (even though Court had "granted leave" to file a motion for reconsideration, holding that "[r]econsideration of a court's prior ruling is an extraordinary remedy, to be used sparingly,"

and denying reconsideration); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2025 WL 672941, at *2, *5 (N.D. Cal. Mar. 3, 2025) (ultimately denying reconsideration motion after the Court "granted Defendants leave to file the Motion" under N.D. Cal. Civ. R. 7-9(b), stating: "It was not error, clear or otherwise, for the Court not to address an argument that wasn't made. And as noted, a motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation" (citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009))).

In *Locke*, which involved a request for reconsideration of an interlocutory order, this Court cited and quoted the Ninth Circuit's decision in *Kona*, which applied a Rule 59(e) standard to a motion for reconsideration. *See Locke*, 2011 WL 289927, at *1 ("Reconsideration of a court's prior ruling is an 'extraordinary remedy, to be used sparingly." (*quoting Kona*, 229 F.3d at 890)).

In the *Kona* decision cited by this Court in *Locke*, the Ninth Circuit held that motions for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890.

## IV. ARGUMENT

### A. Plaintiffs Fall Far Short of Meeting the Motion for Reconsideration Standard.

Plaintiffs have not met the motion for reconsideration standard. First, Uber's opening brief stated that the "most important[]" and "critical" relief sought was "to deter *future* fraud and noncompliance with Court orders." ECF 4456 (emphasis added). Second, as Uber explained at length in its reply, in Plaintiffs' counsels' "three opportunities to respond," Plaintiffs and certain specified Plaintiffs' firms showed "no remorse," and gave no "apology or explanation," thereby "show[ing] this Court" that "dismissal with prejudice is not sufficient relief," and therefore "Uber has attached a proposed order to this Reply that imposes a certification requirement for the law firms that represent these fraudulent plaintiffs and other clients." ECF 3663 at 7. Third, in the 60 days between Uber's December 12 reply and the Court's February 10 order, Plaintiffs chose not to seek a sur-reply, waiting instead to see the outcome of the Court's order.

At the outset, Plaintiffs' motion for reconsideration fails the Ninth Circuit standard, because Plaintiffs cannot show that their arguments could not "reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890. Courts have repeatedly rejected motions for reconsideration based on

complaints about reply briefs, including for the reason that such a "wait and see" tactic should not be rewarded. *See, e.g.*, *Doe*, 2020 WL 13883389, at *4; *Oceania III*, 2023 WL 3943612, at *2; *Victory*, 2019 WL 12097827, at *1 n.1.

Plaintiffs suggest that the first MDL bellwether trial in January 2026 precluded a pre-February 10 response to Uber's December 12, 2025 brief. But both sides in this litigation are well-resourced. *See* ECF 152 (appointing three attorneys from different firms as co-lead counsel and nine attorneys from different firms as members of Plaintiffs' Steering Committee). During the 60 days between when Uber filed its reply brief and the Court entered its order, the 11 law firms on the Plaintiffs' leadership and steering committee, and the 6 other firms included in Uber's motion, filed 67 non-*Dean* related Complaints and briefs and gave interviews to the media.

In a case with a high number of firms and counsel involved, and given the number of non-*Dean* filings occurring at the same time, failure to object to a reply brief for over 60 days does not come close to the Ninth Circuit's high bar for reconsideration or show that Plaintiffs' argument could not "reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890. The specific Plaintiffs' firms at issue should be required to speak with their clients to ensure their claims are not fraudulent, and Plaintiffs' request to vacate the Court's order should be denied.

### B. PTO 31 Is Necessary but Insufficient, and the Court Should Reject Plaintiffs' Request to Limit Relief to Dismissals.

The Court should further reject Plaintiffs' request only to limit the order to dismissals. This Court properly rejected a dismissal-only order because it would be a superficial solution wholly inadequate to deter fraud. If the sole remedy is dismissal with prejudice, Plaintiffs' expected recovery from the moment they submit a fraudulent receipt will always be positive. Plaintiffs and their counsel will continue to hope for a multi-million-dollar recovery, and their worst-case outcome will be a loss of zero. The weighted-probability-expected outcome from fraud would be a large windfall. Far greater deterrence is required.

Finally, Plaintiffs' reference to PTO 31 is a red herring. PTO 31 applies to *missing* receipts. ECF 3877. The Court's February 10 order applies to *fraudulent* receipts. ECF 5216. Although there is overlap between the two populations, Plaintiffs' counsel have repeatedly argued that missing-receipt Plaintiffs are not necessarily fraudulent Plaintiffs. ECF 5299-1; ECF 3771. PTO 31 does nothing to deter Plaintiffs'

11

counsel or Plaintiffs from submitting fraudulent receipts, which is why the Court's February 10 order was necessary.

### C. The Relief Ordered by the Court is Narrowly Tailored to Plaintiffs' Firms Who Submitted Fraudulent Receipts.

Plaintiffs also incorrectly assert that the certification requirement is disproportionate. ECF 5299-1. First, as discussed in Part II at page 7, *supra*, Plaintiffs' counsel's statistics significantly understate the extent of the fraud. Second, Plaintiff's counsel misleadingly refers to "3,188 [cases] pending in this MDL." *Id.* But the February 10 order does not apply to all 3,188 cases in the MDL. Rather, it applies only to those specific Plaintiffs' firms—each specifically listed in the Court's order—that have already submitted fraudulent receipts on behalf of their clients.[3] ECF 5216. The Court's order is narrowly tailored to the Plaintiffs' firms in this litigation that have shown they do not otherwise conduct necessary diligence on receipts submitted for their clients.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for reconsideration.

DATED: March 4, 2026

Respectfully submitted,

/s/ *Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**

---

[3] One Plaintiffs' firm, Peiffer Wolf, has separately moved for reconsideration of their inclusion in the order's certification requirement because they argue they have not submitted fraudulent receipts in this litigation. ECF 5277. Uber will file an opposition addressing that motion separately.

601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (Admitted *Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

13

DEFENDANTS' OPPOSITION TO MOTION TO RECONSIDER            Case No. 3:23-md-03084-CRB

# PROOF OF SERVICE

I hereby certify that on March 4, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*
Laura Vartain Horn