1  [Submitting counsel below]

2

**UNITED STATES DISTRICT COURT**

3

**NORTHERN DISTRICT OF CALIFORNIA**

4

**SAN FRANCISCO DIVISION**

5

6

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY NEW TRIAL** |
| This Document Relates to: | |
| *Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Judge:      Hon. Charles R. Breyer<br>Courtroom:   Courtroom 6 – 17th Floor |
| | Date Filed: February 2, 2026 |
| | Trial Date: January 13, 2026 |

7

8

9

10

11

12

13

14

15

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

16

17

18

| | |
|---|---|
| JAYLYNN DEAN, | CASE NO. 25-cv-4276-PHX-CRB |
|        Plaintiff, | Judge:      Hon. Charles R. Breyer<br>Courtroom:   501 |
| v. | **ORAL ARGUMENT REQUESTED** |
| UBER TECHNOLOGIES, INC., et al., | |
|        Defendants. | |

19

20

21

22

23

24

25

26

27

28

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

KIM BUENO (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
kim.bueno@kirkland.com
401 W. 4th St.
Austin, TX 78701
Telephone: (512) 355-4390

ALLISON M. BROWN (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
alli.brown@kirkland.com
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

JESSICA DAVIDSON (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

THEANE EVANGELIS (Pro Hac Vice admitted)
DANIEL NOWICKI (Pro Hac Vice admitted)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Counsel for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD .......................................................................................... 4

III.    ARGUMENT ....................................................................................................... 4

        A.      Uber Is Entitled to Judgment Because the Trial Evidence Foreclosed
                Plaintiff's Apparent Agency Claim as a Matter of Law. ......................... 4

                1.      Turay Was Not an Apparent Agent as a Matter of Arizona Law ............... 5

                2.      Turay's Intentional Sexual Assault Was Outside the Scope of Any
                        Conceivable Agency Relationship. ............................................................. 9

                3.      At minimum, the Court should certify the questions presented to the
                        Arizona Supreme Court .............................................................................. 12

        B.      Separately, Two Erroneous Jury Instructions Warrant a New Trial .................... 14

                1.      The Scope-of-Agency Instruction Misstated Schallock's Narrow
                        Exception .................................................................................................... 14

                2.      The Court Erroneously Refused to Instruct the Jury that Plaintiff
                        Was Bound by Uber's Terms. ..................................................................... 16

IV.     CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benson v. Casa de Capri Enters., LLC*,
  980 F.3d 1328 (9th Cir. 2020), *certified question answered*, 502 P.3d 461 (Ariz. 2022) ....... 16

*Butler L. Firm, PLC v. Higgins*,
  410 P.3d 1223 (Ariz. 2018) ................................................................................................ 6

*Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*,
  328 F.3d 528 (9th Cir. 2003) ............................................................................................ 19

*Colson v. Maghami*,
  No. 08-cv-2150, 2010 WL 2744682 (D. Ariz. July 9, 2010) ................................................ 11

*Cooper v. Ariz. W. College Dist. Governing Bd.*,
  610 P.2d 465 (Ariz. App. 1980) .......................................................................................... 7

*Coslett v. Uber Techs., Inc., et al.*,
  No. 2018-cv-005515 (Ariz. Super. Ct. Mar. 14, 2023) ...................................................... 6, 10

*Crawley v. Uber Techs., Inc.*
  No. BER-L-5888-20 (N.J. Super. Ct. Law Div. Sept. 22, 2025) ............................................ 8

*Desmond v. Superior Ct. of Maricopa Cnty.*,
  779 P.2d 1261 (Ariz. 1989) ................................................................................................ 6

*Doe v. Roman Catholic Church Diocese of Phoenix*,
  533 P.2d 214 (Ariz. App. 2023) ................................................................................... passim

*Engler v. Gulf Interstate Eng'g*,
  280 P.3d 599 (Ariz. 2012) ............................................................................................ 12, 15

*Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*,
  515 P.3d 701 (Ariz. App. 2022) ...................................................................................... 5, 8, 9

*Frost v. BNSF Ry. Co.*,
  914 F.3d 1189 (9th Cir. 2019) ......................................................................................... 5, 18

*Klosa v. Uber Techs., Inc., et al.*,
  No. 2019-cv-000428 (Ariz. Super. Ct. Aug. 21, 2022) ......................................................... 7

*Kremen v. Cohen*,
  325 F.3d 1035 (9th Cir. 2026) ....................................................................................... 16, 17

*Lakeside v. Oregon*,
  435 U.S. 333 (1978) ......................................................................................................... 20

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) .................................................................................................. 9

*Moreau v. Air France*,
  356 F.3d 942 (9th Cir. 2003) .............................................................................................. 10

*Murphy v. City of Long Beach*,
  914 F.2d 183 (9th Cir. 1990) ............................................................................................... 5

*N. Pac. Ry. v. Herman*,
  478 F.2d 1167 (9th Cir. 1973) ............................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

*Pavao v. Pagay*,
   307 F.3d 915 (9th Cir. 2002)............................................................ 4

*Ryman v. Sears, Roebuck & Co.*,
   505 F.3d 993 (9th Cir. 2007)........................................................ 8, 15

*State v. Schallock*,
   941 P.2d 1275 (Ariz. 1997).................................................... passim

*Stencel v. Lyft, Inc.*,
   No. 24-cv-1535, 2024 WL 4008752 (N.D. Cal. Aug. 29, 2024) ...................... 12, 13

*Teran v. Citicorp Person-to-Person Fin. Ctr.*,
   706 P.2d 382 (Ariz. App. 1985)........................................................ 8

*Tonner v. United States*,
   No. 24-cv-8057, 2025 WL 2097927 (D. Ariz. July 25, 2025)............................. 12

*Torres v. Goodyear Tire & Rubber Co.*,
   867 F.2d 1234 (9th Cir. 1989)........................................................ 7

*United Nat'l Maint. Inc. v. S.D. Convention Cntr.*,
   766 F.3d 1002 (9th Cir. 2014)....................................................... 19

*Valley Nat'l Bank v. Nat'l Ass'n for Stock Car Auto Racing*, *Inc.*,
   736 P.2d 1186 (Ariz. App. 1987)...................................................... 9

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dept.*,
   447 F.3d 769 (9th Cir. 2006)........................................................ 19

*White v. Ford Motor Co.*,
   312 F.3d 998 (9th Cir. 2002)........................................................ 19

**Statutes**

A.R.S. § 12-1861 ...................................................................... 3, 13

A.R.S. § 23-1603 ......................................................................... 1

A.R.S. § 23-1603(A) .................................................................... 1, 5

**Other Authorities**

Steven Totten, *Governor Ducey signs Airbnb bill, other sharing economy bills*, PHOENIX BUS. J.
   (May 12, 2016), *available at* https://perma.cc/Z9W3-X7NE .................................. 5

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        The jury rejected Plaintiff's claims that Defendants Uber Technologies, Inc., Rasier, LLC,

4    and Rasier-CA, LLC (collectively Uber) were negligent, that the Uber App is a defective product,

5    and that Uber is liable to Plaintiff for punitive damages. ECF 174 at 1.[1] The jury awarded

6    damages to Plaintiff only on her claim that Uber is vicariously liable for an intentional criminal

7    assault allegedly perpetrated by Hassan Turay—on a theory that Turay was Uber's apparent

8    agent. But that verdict must be set aside because Plaintiff's apparent-agency claim is

9    incompatible with Arizona law and with the evidence in this case. Uber accordingly renews its

10   motion for judgment as a matter of law, under Federal Rule of Civil Procedure 50(b).

11       In the alternative, Uber moves for a new trial on the apparent-agency claim under Rule 59

12   because, respectfully, the jury was erroneously instructed as to Arizona law. The instructions did

13   not ask the jury to accurately apply Arizona's scope-of-authority standard, nor did they accurately

14   describe the legal significance under Arizona law of Plaintiff's binding agreement to Uber's

15   Terms of Use ("Terms").

16       **Motion for Judgment as a Matter of Law**: The Court should grant Uber's renewed

17   motion on apparent agency—Plaintiff's only remaining claim—because that claim fails as a

18   matter of Arizona law for no fewer than three independent reasons.

19       ***First,*** Arizona's Qualified Marketplace ("QMP") Statute, A.R.S. § 23-1603, conclusively

20   resolves whether drivers on Uber's platform may be treated as Uber's agents for purposes of

21   imposing vicarious liability for intentional torts. The Arizona Legislature has answered that

22   question in the negative. The QMP Statute mandates that drivers who satisfy its conditions—as

23   Turay indisputably did—"shall be treated as … independent contractor[s] *for all purposes*."

24   A.R.S. § 23-1603(A) (emphasis added).[2]  The legislature's plain design was to eliminate vicarious

25   liability on businesses like Uber for the torts of drivers like Turay. Because Turay worked as an

26   

---

27   [1] Unless otherwise noted, docket cites to "ECF" refer to Case No. 25-cv-4276-PHX-CRB (D. Ariz.), and cites to "Dkt." refer to Case No. 3:23-MD-0384-CRB (N.D. Cal).

28   [2] Unless otherwise noted, all emphases are added, and all internal citations, quotation marks, and alterations are omitted.

independent contractor as a matter of Arizona law, there can be no agency or apparent-agency relationship under state law that could support vicarious liability, and Plaintiff's apparent-agency claim fails at the outset.

*Second*, even if vicarious liability were not categorically foreclosed by the QMP Statute, the next question would be whether an agency relationship between Uber and Turay actually existed as a matter of Arizona law. On that question, the parties' governing contract is dispositive. This Court has already held that Plaintiff is bound by her agreement to Uber's Terms. And those Terms could not be clearer: Turay was <u>not</u> Uber's agent. The Terms unambiguously disclaim any agency relationship, and Arizona law charges Plaintiff with knowledge of that disclaimer.

Based on clear Arizona precedent, as a matter of Arizona law, Plaintiff cannot disclaim her contractual agreement that Turay was not Uber's agent and contend that, instead, Uber represented to her that Turay was its agent. All the more so where, as here, Plaintiff supported her belief in Turay's agency only by vaguely describing advertising stating that safety is one of Uber's important priorities. That Uber emphasizes safety—such as in the onboarding of *independent* drivers and by providing in-app safety features for riders—says nothing at all about the nature of the work relationship: whether Turay operated as Uber's agent or instead worked independently. Advertising a commitment to safety is not a representation of agency as to Mr. Turay, and no reasonable juror could conclude that such statements overcome Plaintiff's binding agreement that Turay was *not* Uber's agent.

*Third*, even if an agency relationship between Uber and Turay had existed notwithstanding all of the above, Arizona law establishes that Turay's alleged sexual assault fell outside the scope of any conceivable apparent authority. Arizona courts have long recognized that sexual assault is conduct motivated solely by personal gratification; it is not and never could be intended to serve the purposes of a company like Uber as a matter of law. That principle is fully consistent with *State v. Schallock*, 941 P.2d 1275 (Ariz. 1997), which recognized a limited exception to this general rule for *managerial* sexual harassment that was implicitly authorized by the employer over time. The Arizona Court of Appeals' decision in *Doe v. Roman Catholic Church Diocese of Phoenix*, 533 P.2d 214 (Ariz. App. 2023), recently reaffirmed the limited

1  reach of *Schallock*, explaining that it "is narrowly applicable to cases involving longstanding

2  abuse and harassment in the workplace by a manager," *id.* at 223, and rejecting vicarious liability

3  on closely analogous facts. If, as *Doe* holds, a church cannot be held vicariously liable for a

4  priest's sexual assault of a parishioner entrusted to his care, then Uber cannot be held vicariously

5  liable for an independent contractor's assault of a rider.

6       Uber respectfully submits that Arizona law already provides clear answers to the

7  dispositive legal questions in this case. But to the extent this Court disagrees, the judgment

8  against Uber here breaks new ground on two questions that no Arizona court has answered in

9  Plaintiff's favor: (1) whether an unambiguous disclaimer of agency, in Plaintiff's undisputedly

10 enforceable contract, forecloses an apparent-agency claim; and (2) whether an alleged assault by

11 a nonmanagerial independent contractor, with no known history of similar acts, can fall within the

12 scope of agency under *Schallock*'s narrow exception for persistent supervisory sexual harassment.

13 If this Court is inclined to deny Rule 50 relief, then it should certify both questions to the Arizona

14 Supreme Court for resolution. *See* A.R.S. § 12-1861. Arizona's highest court should have the

15 opportunity to weigh in before a judgment here recognizes novel tort theories that have never

16 before existed in Arizona, that greatly expand tort theories of liability in Arizona, and that have

17 significant ramifications for Arizona's economy.

18      **Motion for New Trial.** In the alternative, Uber requests a new trial under Rule 59 on

19 Plaintiff's apparent-agency claim because the jury was erroneously instructed on two issues of

20 Arizona law.  Dkt. 5187 (Final Instructions) at 22-23.

21      ***First***, the scope-of-agency instruction that went to the jury inverted Arizona agency law.

22 Even assuming *Schallock* could be extended beyond the supervisory sexual harassment context,

23 the question under that case would be whether the *conduct related to the sexual encounter* was

24 "incidental to the servant's legitimate work activity." *Schallock*, 941 P.2d at 1283. But the Court

25 instructed the jury to ask the opposite: whether "the legitimate conduct and services performed by

26 Mr. Turay as a driver that were incidental to the sexual encounter were done within the scope of

27 his apparent authority as a driver for Uber." Final Instructions at 23. The Court asked the jury, in

28 other words, whether Turay's *driving* was within his apparent authority, and the instruction

1    *presumed* that those driving services were "incidental to" the sexual assault. That is not Arizona

2    law. Indeed, that instruction effectively relieved Plaintiff of her burden and all-but directed a

3    finding of liability here.

4    **Second**, the jury instructions prejudiced Uber's defense by failing to instruct the jury that

5    Plaintiff was bound by the Terms under Arizona law. The instructions treated the Terms as

6    merely one piece of evidence to be weighed alongside other evidence. That instruction permitted

7    the jury to speculate that the Terms' clear disclaimer of an agency relationship was somehow

8    unenforceable, and to equate a binding agreement with Plaintiff's vague, self-serving testimony

9    about advertisements on which she purportedly relied to believe that Turay was Uber's agent.

10    These two independent instructional errors would entitle Uber to a new trial on the

11    apparent agency claim, even if the claim were not foreclosed by Arizona law.

12    ## II.    LEGAL STANDARD

13    Federal Rule of Civil Procedure 50 authorizes judgment as a matter of law when "the

14    evidence, construed in the light most favorable to the nonmoving party, permits only one

15    reasonable conclusion and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307

16    F.3d 915, 918 (9th Cir. 2002). Uber moved for JMOL before the close of evidence on Plaintiff's

17    negligence, product-liability, apparent-agency, and punitive-damages claims, the Court reserved

18    decision, and the jury found for Plaintiff only on the apparent-agency claim. Tr. 3373:1-5.

19    Rule 50(b) also permits an alternative request for a new trial under Rule 59, which

20    authorizes new trials for prejudicially "erroneous jury instructions, as well as the failure to give

21    adequate instructions." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). Courts

22    "must presume prejudice where an erroneous jury instruction is given," and the non-moving party

23    bears the burden of showing that a properly instructed jury would have reached the same verdict.

24    *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1194, 1198 (9th Cir. 2019).

25    ## III.    ARGUMENT

26    ### A.    Uber Is Entitled to Judgment Because the Trial Evidence Foreclosed
Plaintiff's Apparent Agency Claim as a Matter of Law.

27

28    Arizona statutes, case law, and the trial evidence all foreclosed the jury's finding of

1    apparent-agency liability as a matter of law. In Arizona, "[a]n apparent agency is created only

2    when (1) a principal intentionally or inadvertently leads one party to believe an agency exists, and

3    (2) the party justifiably relies on the principal's representations." *Fadely v. Encompass Health*

4    *Valley of Sun Rehab. Hosp.*, 515 P.3d 701, 706 (Ariz. App. 2022). Moreover, any "apparent

5    authority … is limited to the scope of responsibility that is apparently authorized." PTO 17 at 25-

6    26; *see* Dkt. 1932 at 3 ¶ 12 (applying PTO 17 to Arizona-law cases). None of those elements is

7    met here.

### 1.    Turay Was Not an Apparent Agent as a Matter of Arizona Law.

9        **The QMP Statute**:  For one thing, Arizona's QMP Statute categorically establishes that

10   rideshare drivers whose contracts meet certain conditions, all of which are applicable here, "shall

11   be treated as an independent contractor for all purposes." A.R.S. § 23-1603(A); *see* PTO 39 at 1

12   (granting summary judgment on respondeat superior claim). That "clear and unambiguous" text is

13   the best indicator of the Arizona Legislature's intent, which Arizona courts strive to "effectuate."

14   *Butler L. Firm, PLC v. Higgins*, 410 P.3d 1223, 1226 (Ariz. 2018). The Arizona Legislature

15   enacted the QMP Statute to effectuate the state's "commit[ment] to doing everything we can to

16   support 21st-century companies"—like Uber—that "advance the way we do business and

17   improve the way we live," including by "embracing the Sharing Economy."[3]  The statute's

18   independent-contractor command furthers that purpose in large part by shielding Uber and similar

19   companies from the enormous financial burdens that would result from being held vicariously

20   liable for the tortious conduct of countless Arizonans who choose to use sharing-economy

21   platforms to independently offer valuable services to consumers.

22       Statutes must "be construed to mean just what they say," *Desmond v. Superior Ct. of*

23   *Maricopa Cnty.*, 779 P.2d 1261, 1266 (Ariz. 1989), and treating drivers as independent

24   contractors for "all" purposes means *all* purposes, including apparent agency. Holding otherwise

25   would allow the very vicarious liability for tortious conduct that the QMP Statute was designed to

26   prevent. *See* Dkt. 4398-3, *Coslett v. Uber Techs., Inc., et al.*, No. 2018-cv-005515 (Ariz. Super.

27

28   [3] Steven Totten, *Governor Ducey signs Airbnb bill, other sharing economy bills*, PHOENIX BUS. J.
     (May 12, 2016) (quoting Ariz. Gov. Doug Ducey), *available at* https://perma.cc/Z9W3-X7NE.

1  Ct. Mar. 14, 2023) ("*Coslett*") (citing the QMP Statute and explaining "[b]ecause Hannart was an

2  independent contractor, Uber cannot be vicariously liable for Hannart's actions"); Dkt. 4398-4,

3  *Klosa v. Uber Techs., Inc., et al.*, No. 2019-cv-000428 (Ariz. Super. Ct. Aug. 21, 2022) (similar).

4      At a minimum, the QMP Statute demands a far more rigorous showing of apparent agency

5  than Plaintiff could possibly satisfy. To prevail, Plaintiff must have "*reasonably relied* upon

6  [Turay's] apparent authority." *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1237 (9th

7  Cir. 1989) (Arizona law). But by enacting the QMP Statute, the Legislature provided constructive

8  notice to "[a]ll persons"—who are "presumed to know the contents of ... statutory provision[s]"—

9  that rideshare drivers like Turay are independent contractors, **not agents** or employees of the

10  platforms on which they operate. *See Cooper v. Ariz. W. College Dist. Governing Bd.*, 610 P.2d

11  465, 469 (Ariz. App. 1980). If there can ever be apparent agency for independent drivers

12  notwithstanding the QMP Statute, that status could occur only on compelling evidence to

13  overcome that presumption—i.e., evidence that a company actively led a customer to believe a

14  driver was *not* independent. But the evidence in this case shows just the opposite: Far from ever

15  identifying Turay as Uber's agent, Uber expressly confirmed—through Plaintiff's contractual

16  agreement—that Turay was *not* Uber's agent and that he operated independently from Uber.

17  Plaintiff contractually acknowledged Turay's independence, and Uber made no representations

18  that could have led Plaintiff to believe otherwise contrary to Arizona law.

19      **The Terms**: *Fadely* squarely holds that an apparent agency claim is precluded by an

20  unambiguous contract disavowing an agency relationship. *Fadely* is directly on point and is

21  controlling on this Court in this diversity case, because there is no "convincing" reason to believe

22  the Arizona Supreme Court would reject its reasoning. *Ryman v. Sears, Roebuck & Co.*, 505 F.3d

23  993, 994 (9th Cir. 2007). In *Fadely*, the plaintiff signed a form upon admission to a hospital

24  advising her that its doctors "practice independently," "maintain sole responsibility for their

25  medical judgment," and "bill and collect for their services independently from the hospital." 515

26  P.3d at 706. The Arizona Court of Appeals held that because the plaintiff's contract with the

27  hospital "did not represent [the doctors] as its employees or agents to [p]laintiff," and "instead

28

---

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 3:23-MD-03084-CRB/ 25-CV-4276-PHX-CRB

inform[ed] her of the independent relationship," the plaintiff could "not show either the representation or justifiable reliance needed for an apparent agency" claim to survive. *Id.*

Uber's Terms are even more explicit. They conspicuously informed Plaintiff that "independent drivers" like Turay are "not actual agents, apparent agents, ostensible agents, or employees of Uber in any way." P-4531.00013. The Terms further described Turay's functional independence, advising Plaintiff that: (1) "Uber does not control, manage, or direct any third-party providers," (2) drivers on the Uber platform retain discretion whether to accept or reject any ride, and (3) Uber collects payment on the drivers' behalf as their limited-purpose billing agent. *Id.* at 13, 18-19, 21. Under Arizona law, Plaintiff is deemed to know of the terms of the binding contract she agreed to. *See, e.g., Teran v. Citicorp Person-to-Person Fin. Ctr.*, 706 P.2d 382, 384 (Ariz. App. 1985). And under *Fadely*, Plaintiff cannot assert reasonable reliance on beliefs that contradict her own contractual agreement—let alone Arizona law. *See supra* at 5–6; *Fadely*, 515 P.3d at 706; *Crawley v. Uber Techs., Inc.*, No. BER-L-5888-20 (N.J. Super. Ct. Law Div. Sept. 22, 2025) (agreement to Uber's Terms of Service precluded "purported claim of apparent authority").

There is no material distinction between this case and *Fadely*. First, any difference in billing structure is legally insignificant. *Contra* Tr. 2352:6-21. The independent doctors in *Fadely* "bill[ed] and collect[ed] for their services independently from the hospital." 515 P.3d at 706. Uber's Terms similarly provide that riders' payment obligations run "directly to Third-Party Providers," and Uber merely "collect[s] payment of those charges" on the drivers' behalf. P-4531.00018-19. Second, the length of Uber's Terms compared to the "two-page consent" in *Fadely* makes no legal difference. *Contra* Tr. 2353:1-2354:4. That Uber's Terms run 24 printed pages neither renders them unconscionable nor permits Plaintiff to "avoid the[ir] impact … on the ground that [s]he failed to read [them] before" agreeing, *Valley Nat'l Bank v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 736 P.2d 1186, 1190 n.2 (Ariz. App. 1987)—as the Court recognized in holding that the Terms are valid and rejecting Plaintiff's prior attempt to avoid their enforcement. PTO 29 at 3, 15; *see infra* at 17; *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("[T]he language '[b]y creating an Uber account, you agree' is a clear prompt directing

users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."). More fundamentally, *Fadely* did not turn on billing structure or the length of the contract—the defendant was entitled to summary judgment because the contract "inform[ed] [plaintiff] of the independent relationship" between the hospital and doctors. 515 P.3d at 706. So too here, where this Court has already held Plaintiff is bound by the Terms expressly confirming Turay's independent contractor status.

But even assuming misleading representations by an alleged principal could overcome a clear contractual disclaimer of agency—a proposition that no Arizona court has ever endorsed— the evidence here did not remotely suffice to do so. Plaintiff presented no evidence whatsoever that Uber represented drivers generally—and certainly not Turay specifically—as its employees or agents in any messaging that Plaintiff could have seen prior to the alleged incident in 2023. Instead, Plaintiff's testimony was limited to a vague belief that Uber "would keep [her] safe," based on "little ads or little things on the app side itself [that] said 'Safety is our priority.'" Tr. 1780:1-4. Plaintiff could not recall "any specific ad or specific marketing campaign," only "seeing pop-ups on social media." Tr. 1779:24-1780:4, 1883:13-25. From these amorphous recollections, Plaintiff testified that she understood she "w[as] paying" Uber and "believ[ed]" that Uber, rather than Turay, "was responsible for [her] safety during that ride."[4] Tr. 1803:24-1804:8.

That nebulously-described advertising—which Plaintiff could not even say with confidence she viewed *prior to* the ride at issue—made no claims whatsoever about the nature of the work relationship between Uber and drivers, or more importantly, between Uber and Turay specifically. Uber's compliance with Arizona-law safety requirements cannot, as a matter of law, establish actual or apparent agency, and Uber's safety advertisements are just as consistent with Uber prioritizing safety in the selection of independent contractors. *See, e.g.*, *Coslett* at 2 (rejecting employee/agent status where "many of [Plaintiff's] asserted proofs of Uber's control

---

[4] Plaintiff identified no representation by Uber supporting a belief that she was paying Uber rather than Turay for the ride.  The only trial evidence of Uber's representations on that question were Uber's Terms, which state her "[c]harges ... will be owed directly to Third-Party Providers [i.e., drivers]," that Uber collected those payments "on the Third-Party Provider's behalf as their limited payment collection agent," and that those payments "shall be considered the same as payment made directly by you to the Third-Party Provider." P-4531.00018-00019.

over [drivers] are mandated by the statutes"); *see also Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2003) (control exercised by a company to "ensure compliance with various safety and security regulations" is "qualitatively different" from control that is indicative of employee status). In other words, Plaintiff's asserted evidence could not support a finding of reasonable reliance on an agency relationship even in the absence of the QMP statute and Plaintiff's binding agreement to Uber's Terms. *See, e.g.*, *Colson v. Maghami*, No. 08-cv-2150, 2010 WL 2744682, at *12-13 (D. Ariz. July 9, 2010) ("[Plaintiff's] reliance on the [company's] brand signage as a means of establishing apparent agency ... fails to account for the Arizona cases holding that a franchisor's corporate identity does not provide a basis for a finding of apparent agency.") (citing Arizona authority). And Plaintiff's apparent-agency argument surely cannot suffice where, as here, she entered a binding contract and is charged with knowledge of Arizona's contrary statutory command.

In short: No Arizona precedent has ever recognized an apparent-agency relationship on facts remotely resembling the trial evidence here. If plaintiffs could override the legislature's independent-contractor designation and Uber's Terms by vaguely recounting Uber safety advertising, then Uber would be compelled to accompany every advertisement with a disclaimer that drivers are not employees. That burdensome outcome cannot be squared with the policies the QMP statute embodies in unambiguously defining the relationship between Uber and Turay. The only representation by Uber in the record concerning Turay's status is the Terms' unambiguous disclaimer of agency. Under the QMP Statute and *Fadely*, Plaintiff's agreement to that disclaimer forecloses her apparent agency claim as a matter of Arizona law.

### 2. Turay's Intentional Sexual Assault Was Outside the Scope of Any Conceivable Agency Relationship.

Plaintiff's apparent-agency claim fails for an additional, independent reason: even if an agency relationship existed, Turay's sexual assault unequivocally fell outside its scope as a matter of Arizona agency law. Under Arizona law, conduct falls within the scope of an agent's authority only if it is, "at least in part, motivated by a purpose to serve the master rather than solely to serve personal motives unconnected to the master's business." *Schallock*, 941 P.2d at 1283. Sexual

1   assaults categorically fail this test because they are "committed not for any purpose of the

2   employer," but solely to gratify the assailant's personal desires. *Doe*, 533 P.2d at 222; *see Tonner*

3   *v. United States*, No. 24-cv-8057, 2025 WL 2097927, at *4 (D. Ariz. July 25, 2025) ("Arizona

4   courts have consistently held that sexual misconduct rarely furthers an employer's business.").

5   Courts applying Arizona law thus routinely reject vicarious liability for intentional sexual assaults

6   as a matter of law. *See, e.g.*, *Doe*, 533 P.3d at 222; *Stencil v. Lyft, Inc.*, No. 24-cv-1535, 2024 WL

7   4008752, at *4 (N.D. Cal. Aug. 29, 2024) (allegations that assault was "perpetrated due to [the

8   assailant's] job as a Lyft driver and part of or incidental to his role as [such] … fall short of cases

9   in which Arizona courts have found an assault is within the scope of employment").

10      Arizona recognizes only one narrow exception to this rule. In *Schallock*, the Arizona

11   Supreme Court held that an employer could be vicariously liable for "managerial sexual

12   harassment" of a subordinate employee where the employer implicitly authorized the conduct.

13   941 P.2d at 1281-82. *Schallock* itself emphasized that this exception turns on "factors peculiar to

14   supervisory sexual harassment cases," which "distinguish[] the case from the great majority of

15   cases." *Id.* Supervisors, unlike line-level workers, have unique responsibility for effectuating the

16   principal's objectives. *See id.* The Arizona Supreme Court later reaffirmed this limitation of

17   *Schallock* in *Engler v. Gulf Interstate Eng'g*, reiterating that *Schallock* "provides little guidance"

18   in the "great majority of cases" because it involved "managerial sexual harassment" that

19   "occurred as part of [the employee's] supervision of the plaintiff." 280 P.3d 599, 603–04 (Ariz.

20   2012) .

21      Subsequent case law has further confirmed that *Schallock*'s "narrowly applicable"

22   exception is triggered only when two specific conditions are met: (1) the harassment was

23   managerial—perpetrated by a supervisor with authority to "hire and fire, promote and demote,

24   [and] instruct and control" the victim—and (2) the employer "implicitly authorized" it, for

25   example by permitting the misconduct "to occur and recur over a long period at its place of

26   business and during business hours." *Doe*, 533 P.3d at 223-24; *see Schallock*, 941 P.2d at 1282;

27   *Stencel*, 2024 WL 4008752, at *4 (assault by rideshare driver fell outside scope where driver's

28   immediate deactivation "negat[ed] any inference of express or implied authorization"). Absent

both conditions, a "reasonable jury could not find [the employer] implicitly authorized [the employee's] abuse" and the conduct falls outside the scope of employment as a matter of law. *Doe*, 533 P.2d at 224. In *Doe*, for example, a priest sexually assaulted a youth parishioner during a one-on-one counseling trip. The Arizona Court of Appeals held that the assault fell outside the scope of employment as a matter of law because "[t]he acts were committed not for any purpose of the employer, but solely to gratify [the priest's] personal, apparently sexual desires." *Id.* at 222. Neither condition of *Schallock*'s narrow exception was satisfied: the priest was not a workplace manager exercising supervisory authority over a subordinate employee, and the church "lacked notice that [the priest] posed a sexual danger to children," precluding any finding of implicit authorization. *Id.* at 223-24.

This case is even more straightforward because, as this Court has already conclusively determined at summary judgment, Turay was not even Uber's employee at all. *Shallock*—a case about a managerial-employment relationship over more than a decade—is clearly inapplicable to a one-time "crime of opportunity" by an independent contractor where there was no evidence of the contractor's propensity for such criminal conduct.

*Doe* therefore entitles Uber to judgment on the scope question—just as it did for Lyft in *Stencel*. *See supra* at 10. No material distinction legally differentiates a church that authorizes a one-on-one camping trip from a rideshare company that facilitates a one-on-one ride. And neither precondition for *Schallock*'s exception was met here. First, Turay was not even arguably a workplace supervisor. *Doe* forecloses Plaintiff's theory that "significant power imbalances" are enough to expand the scope of employment: the Court of Appeals rejected the church's liability for an assault by a priest against a young parishioner notwithstanding the power imbalance inherent in that relationship. *Contra* Dkt. 4622.2.

Second, no evidence suggested that Uber "condoned and implicitly authorized" "longstanding misconduct" by Turay of which it "knew or should have known." *Doe*, 533 P.3d at 224. Turay had never received a non-fraudulent complaint of sexual misconduct (and none at all of sexual assault), and Uber deactivated Turay's account within minutes of Plaintiff's report and permanently banned him within two days. Tr. 1692:19-1693:3 (Tremblay Cross); Tr. 1107:5-

1108:3 (Cissna). Further, Turay himself testified that he knew he "shouldn't" have sex with riders, that Uber "would have let [him] go" if they "found out," and that his conduct was "unprofessional" and "wrong" even though he believed it was consensual. Dkt. 5103-7 (7/23/25 Turay Dep.) 78:22-79:3, 86:18-86:23, 88:17-88:24. That understanding was consistent with the Uber Community Guidelines ("Uber has a no-sex rule, regardless of whether you know the person or they give you their consent," D-3932 at -367000), and driver training materials "absolutely prohibit[ing]" "sexual contact of any kind, even if it is consensual." D-3975 at 2:10-15. In short, the only relevant testimony at trial confirmed that Uber did *not* authorize Turay's misconduct, implicitly or explicitly.

*Doe*'s rejection of vicarious liability on materially indistinguishable facts—together with its reaffirmation of *Schallock*'s narrow reach—controls this Court's analysis, absent "convincing evidence" the Arizona Supreme Court would not follow it. *Ryman*, 505 F.3d at 994. No such evidence exists. To the contrary, *Schallock* itself described its holding as peculiar to managerial harassment, 941 P.2d at 1281-82; the Arizona Supreme Court has reaffirmed that narrow reach, *Engler*, 280 P.3d at 603-04; and the Arizona Supreme Court denied review of *Doe*, leaving its holding undisturbed, *see* 533 P.3d at 215 ("Review Denied December 15, 2023.").

For all of the foregoing reasons, this Court should enter judgment as a matter of law in Uber's favor on Plaintiff's apparent-agency claim. Even if the Court concluded that the clear mandates of the QMP Statute and Uber's unambiguous Terms did not definitively preclude an apparent-agency finding, Plaintiff presented no evidence of representations that could overcome the notice provided through Uber's Terms, and *Doe* establishes that Turay's intentional misconduct was outside the scope of any authority he purportedly had.

### 3.  At minimum, the Court should certify the questions presented to the Arizona Supreme Court.

As set forth above, *Fadely* and *Doe* squarely control and resolve this case. No Arizona authority supports Plaintiff's contention that Uber can be held liable on this record. But if the Court nevertheless is inclined to enter judgment on the verdict and thereby create a new species of Arizona liability, it should first afford the Arizona Supreme Court the opportunity to weigh in.

1    As just explained, the verdict in this case does not merely extend Arizona law but

2 contradicts recent, controlling Arizona appellate authority on two dispositive questions: whether a

3 plaintiff who has contractually disclaimed an agency relationship can assert an apparent agency

4 claim, *see supra* Part III.A.1, and  whether an unauthorized, intentional sexual assault by an

5 independent contractor performing non-managerial duties can fall within the scope of apparent

6 employment, *see supra* Part III.A.2. If this Court does not grant judgment as a matter of law, it

7 should at minimum certify these two questions to the Arizona Supreme Court before minting

8 liabilities that Arizona courts have considered but rejected. *See Kremen v. Cohen*, 325 F.3d 1035,

9 1038 (9th Cir. 2026) (certification warranted in "the spirit of comity and federalism").

10    Arizona law authorizes federal district courts to certify questions of state law "involved in

11 any proceedings" before the certifying court when two conditions are met:  (1) the question "may

12 be determinative of the cause then pending in the certifying court," and (2) "there is no

13 controlling precedent in the decisions of the supreme court and the intermediate appellate courts

14 of this state." A.R.S. § 12-1861. If this Court were inclined to allow the verdict to stand, then both

15 conditions are readily satisfied.

16    To start, the questions are determinative. The jury found Uber liable on a single claim—

17 apparent agency—and imposed $8.5 million in compensatory damages on that basis alone. If the

18 Arizona Supreme Court were to hold that a contractual disclaimer of agency forecloses an

19 apparent agency claim under *Fadely*, <u>or</u> that a sexual assault by a third-party independent

20 contractor falls outside the scope of any agency under *Doe* and *Schallock*, then Uber would be

21 entitled to judgment on the sole claim for which liability was found.

22    Next, there is no controlling precedent supporting the verdict. To the contrary, Plaintiff's

23 requested extension of *Schallock* beyond supervisory sexual harassment, and a refusal to treat

24 *Fadely*'s contractual-disclaimer rule as dispositive, are without precedent in Arizona law. Leaving

25 the verdict standing would raise questions of broad significance—implicating the scope not only

26 of vicarious liability for sexual assaults by non-managerial employees, but also those committed

27 by non-managerial independent contractors (where the Court already rejected employment and

28 actual agency). The verdict would thereby call into question the ability of hospitals,

semiconductor plants, small business owners, construction companies, farmers, homeowners, and countless others to manage their liabilities through clear contractual terms. Given the novelty of these issues, "the absence of any apparent controlling precedent" supporting the verdict, and "out of respect for Arizona courts and their preeminent role in interpreting Arizona law," certification is "most suitable." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1332 (9th Cir. 2020), *certified question answered*, 502 P.3d 461 (Ariz. 2022) ; *Kremen*, 325 F.3d at 1038 (certifying "new and substantial issue[s] of state law in an arena that will have broad application").

### B.    Separately, Two Erroneous Jury Instructions Warrant a New Trial

Even if Uber were not entitled to judgment under Rule 50 (and it is), a new trial on Plaintiff's apparent agency claim would be warranted because the jury was not properly instructed on the law as to scope of agency or the binding nature of Uber's contract with Plaintiff.

### 1.    The Scope-of-Agency Instruction Misstated *Schallock*'s Narrow Exception.

The "Scope of Agency" instruction told the jury that the scope element would be satisfied if Plaintiff reasonably believed "that the legitimate conduct and services performed by Mr. Turay as a driver that were incidental to the sexual encounter were done within the scope of his apparent authority as a driver for Uber." Final Instructions at 23. Even if *Schallock* applied here, that instruction misstated the *Schallock*'s scope test in two independently prejudicial ways.

First, the instruction asked the jury whether Turay's "*legitimate* conduct and services" fell "within the scope of his apparent authority." Final Instructions at 23. That is not the inquiry under *Schallock*. The right question is whether the alleged agent's "conduct *related to the tort*" (i.e., conduct related to the sexual assault) was so entwined with his authorized duties (i.e., driving) that the jury could reasonably infer the principal authorized the assault. *Schallock*, 941 P.2d at 1283. "[T]o be within the course and scope [of agency], the act must be, at least in part, motivated by a purpose to serve the master rather than solely to serve personal motives unconnected to the master's business." *Id.* The harassment in *Schallock* fell within the scope because it was an exercise of the employee's managerial authority—not merely because it occurred in proximity to authorized conduct. If *Schallock* applied here (which it does not), the jury should have been asked

whether Turay's "conduct related to the tort" served Uber rather than "his personal desires"—not whether Turay's legitimate driving services fell within the scope of his apparent authority. *Id.*

Second, the instruction effectively assumed that Turay's legitimate conduct and services "were incidental to the sexual encounter." Final Instructions at 23. That formulation similarly inverted *Schallock* and bypassed the critical question in a scope-of-agency case. Under *Schallock*, the key issue is whether the tortious conduct was "incidental to th[e] authorized" conduct—i.e., whether "[t]he acts complained of … were part of or incidental to [the] employment." 941 P.2d at 1282-83. The instruction here never asked the jury to determine whether the conduct related to the tort was incidental to Turay's authorized conduct. The instruction instead just referred to "the legitimate conduct and services" of Turay "*that were* incidental to the sexual encounter." Final Instructions at 23.

Together, these errors fundamentally misdirected the jury's scope inquiry. The instruction called on the jury to evaluate whether the wrong conduct was authorized, and then described the relationship between the authorized and tortious conduct backwards. Those material deviations from *Schallock* constitute extraordinary, per se prejudice warranting a new trial. *See, e.g.*, *Frost*, 914 F.3d at 1199 (remanding for new trial based on presumed, unrebutted prejudice from legally erroneous instruction); *N. Pac. Ry. v. Herman*, 478 F.2d 1167, 1171 (9th Cir. 1973) ("The instruction is prejudicial because it is confusing and inconsistent on a material issue and could possibly mislead the jury.").

The instructional errors are per se prejudicial and warrant a new trial all on their own. But the need for a new trial is underscored when those errors are considered alongside the accumulated prejudice to Uber from the erroneous exclusion of evidence bearing on whether a non-consensual assault occurred at all. By excluding Detective Lopez's January 3, 2024 police report about the incident, Dkt. 5098 at 7, and the video recording of Plaintiff's conversation with Mr. McLaughlin (which Plaintiff originally claimed had not occurred but was impeached with at her deposition, Tr. 1900:8–1901:15), the Court effectively bolstered the credibility of Plaintiff's account of the incident and further prejudiced Uber's defense against her apparent-agency claim.

**2. The Court Erroneously Refused to Instruct the Jury that Plaintiff Was Bound by Uber's Terms.**

The jury instruction on "Apparent Agency—Uber's Terms of Use" also prejudicially misled the jury about the enforceability and legal effect of Plaintiff's agreement to Uber's Terms. Although the Court held that the "Terms of Use … constitute a valid, enforceable contract between Uber and Plaintiffs," including this Plaintiff, PTO 29 at 5, 13, the instruction told the jury only (1) "that Plaintiff and Uber are parties to a contract through the Uber Terms of Use," and (2) that it could "consider this evidence along with all the other evidence in this case, in determining whether Hassan Turay was an apparent agent of Uber." Final Instructions at 22. The instruction never told the jury that Plaintiff was bound by the Terms, which the Court had already found as a matter of law. PTO 29 at 5, 13.

That omission was legal error. "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002). And "contract formation and interpretation are questions of law for the court," not the jury. *Wall Data Inc. v. L.A. Cnty. Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006); *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528 (9th Cir. 2003) (The "existence of [a] contract based on undisputed facts is a question of law."). Where a contract's legal effect bears on issues the jury must decide, a court is "required" to provide a "legal interpretation of the contract" and "err[s] ... in not doing so." *United Nat'l Maint. Inc. v. S.D. Convention Cntr.*, 766 F.3d 1002, 1009 (9th Cir. 2014).

The instruction departed from that requirement in two respects. First, by failing to instruct the jury that the Terms constituted an enforceable contract binding on Plaintiff, the instruction left the jury free to speculate that the agreement was unenforceable. And Plaintiff's counsel actively encouraged that speculation. For example, attempting to revive at trial an unenforceability argument the Court had already rejected, PTO 29 at 7, Plaintiff testified that she did not read or remember agreeing to the Terms, *see* Tr. 1760:1-3, and that she accepted the Terms in connection with Uber Eats rather than Uber's ridesharing app and "didn't know it was for both," Tr. 1882:9-161881:16-19, 1759:4-1760:7. Plaintiff's counsel repeatedly attempted to cultivate

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 3:23-MD-03084-CRB/ 25-CV-4276-PHX-CRB

1  such testimony undermining the Terms' enforceability, asking Mr. Kansal whether Uber

2  "require[s] anyone to actually read these Terms of Use before taking a ride with Uber," and

3  playing a demonstrative purporting to illustrate the app-based signup flow. Tr. 3267:13-3628:3.

4        "The very purpose of a jury charge is to flag the jurors' attention to concepts that must not

5  be misunderstood." *Lakeside v. Oregon*, 435 U.S. 333, 340 (1978). By failing to instruct the jury

6  that Uber's Terms were binding on Plaintiff, the Court permitted the jury to deem the Terms

7  inapplicable or insignificant because Plaintiff testified she had not read or understood them—an

8  outcome directly at odds with the Court's ruling that the Terms were enforceable against Plaintiff

9  and applied to "all Uber services," not just Uber Eats. PTO 29 at 12 & n.5. That failure to guard

10  against Plaintiff's invitation to engage in legally erroneous speculation incurably prejudiced Uber

11  by permitting a finding of apparent agency on grounds that contravened the law of the case.

12        Second, the instruction compounded this prejudice by characterizing the Terms as mere

13  "evidence" to be "consider[ed] along with all the other evidence." That formulation downgraded

14  a binding legal agreement to the same evidentiary status as Plaintiff's vague recollections of

15  Uber's advertising. But that equivalence is not permissible under Arizona law. Even setting aside

16  *Fadely*'s holding, *see supra* at 6–7, an enforceable contract that directly addresses the question in

17  dispute is not simply one more piece of evidence to be weighed against Plaintiff's vague and self-

18  serving testimony. An instruction that the Terms were binding on Plaintiff would have corrected

19  this imbalance by establishing the contract's central legal significance regardless of whether

20  Plaintiff acknowledged reading them. Properly instructed, the jury would have understood that it

21  could not premise apparent agency on isolated advertising statements, but rather had to determine

22  whether Plaintiff could reasonably rely on such statements after entering a binding agreement that

23  Turay was *not* Uber's agent. Without that instruction, the jury was free to disregard the contract

24  entirely—and the verdict confirms it did. The resulting prejudice warrants a new trial.

25  **IV.    CONCLUSION**

26        This Court should grant Uber's renewed motion for judgment as a matter of law.  In the

27  alternative, the Court should certify the above unsettled state law questions to the Arizona

28  Supreme Court. Uber is also entitled to a new trial on Plaintiff's apparent-agency claim.

1  Dated: March 6, 2026       Respectfully submitted,

2                 */s/ Laura Vartain Horn*

3                 Laura Vartain Horn (SBN 258485)
                  **KIRKLAND & ELLIS LLP**
4                 555 California Street, Suite 2700
                  San Francisco, CA 94104
5                 Telephone: (415) 439-1625
                  laura.vartain@kirkland.com

6

7                 Kim Bueno (Admitted *Pro Hac Vice*)
                  **KIRKLAND & ELLIS LLP**
                  401 W. 4th Street
8                 Austin, TX  78701
                  Telephone: (512) 678-9100
9                 kim.bueno@kirkland.com

10                Allison M. Brown (Admitted *Pro Hac Vice*)
                  **KIRKLAND & ELLIS LLP**
11                2005 Market Street, Suite 1000
                  Philadelphia, PA 19103
12                Telephone: (215) 268-5000
                  alli.brown@kirkland.com

13

14                Jessica Davidson (Admitted *Pro Hac Vice*)
                  **KIRKLAND & ELLIS LLP**
                  601 Lexington Avenue
15                New York, NY 10022
                  Telephone: (212) 446-4800
16                jessica.davidson@kirkland.com

17                Theane Evangelis (Admitted *Pro Hac Vice*)
                  Daniel Nowicki (Admitted *Pro Hac Vice*)
18                **GIBSON DUNN & CRUTCHER LLP**
                  333 South Grand Avenue
19                Los Angeles, CA 90071-3197
                  Telephone: (213) 229-7000
20                TEvangelis@gibsondunn.com
                  DNowicki@gibsondunn.com

21

22                Sabrina H. Strong (SBN: 200292)
                  Jonathan Schneller (SBN: 291288)
23                **O'MELVENY & MYERS LLP**
                  400 South Hope Street, 19th Floor
24                Los Angeles, CA 90071
                  Telephone: (213) 430-6000
25                sstrong@omm.com
                  jschneller@omm.com

26                *Attorneys for Defendants*
                  UBER TECHNOLOGIES, INC.,
27                RASIER, LLC, and RASIER-CA, LLC

28