[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB <br><br> **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COMMON CARRIER STATUS AND LIABILITY** |
| This Document Relates to: <br><br> *WHB 823 v. Uber Techs., Inc.*, <br> N.D. Cal. No. 24-cv-4900 <br> W.D.N.C. No. 25-cv-737 | Judge: Honorable Charles R. Breyer <br> Date:  April 2, 2026 <br> Time:  2 PM PT <br> Ctrm.:  6-17th Floor <br><br> **REDACTED** |

UNITED STATES DISTRICT COURT
WESERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WHB 823, <br><br>         Plaintiff, <br><br>      v. <br><br> UBER TECHNOLOGIES, INC., et al., <br><br>         Defendants. | No. 25-cv-737 <br><br> Judge: Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

I.     Uber is a common carrier. ................................................................................................ 2

     A.     A common carrier is a company that offers transportation to the public for money. .................................................................................................................. 2

     B.     Undisputed facts establish that Uber offers transportation to the public for money. .................................................................................................................. 3

         1.     Uber holds itself out as a transportation provider and vouches for the safety of its rides. ............................................................................. 3

         2.     Uber is, in fact, in the business of providing transportation. ..................... 4

         3.     Uber's transportation services are on offer to the general public. .............. 4

         4.     Uber is not a mere broker for services offered by independent transportation providers, but rather exercises control over matching, fare setting, payment processing, ride monitoring, and incident response. ..................................................................................................... 5

     C.     Uber's counter-arguments do not show a genuine issue of material fact. ............... 6

         1.     Uber may not avoid common-carrier duties by claiming status as a "broker," "intermediary," or "platform." ...................................................... 6

         2.     It does not matter that Uber does not own the vehicles. ............................ 7

         3.     It does not matter that passengers must register with Uber. ....................... 8

         4.     It does not matter that Uber reserves the right, and sometimes exercises the right, to refuse service. ......................................................... 8

     D.     Uber's lobbyist expert opinion is irrelevant. ............................................................ 9

II.     In North Carolina, Uber, as a common carrier, is vicariously liable for its driver's sexual assault of Plaintiff. ............................................................................................... 10

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Air Evac EMS, Inc. v. Cheatham*,
 910 F.3d 751 (4th Cir. 2018) ........................................................................................ 2

*Arpin v. Santa Clara Valley Transp. Agency*,
 261 F.3d 912 (9th Cir. 2001) ........................................................................................ 2

*Arter v. Orange Cnty.*,
 904 S.E.2d 715 (N.C. 2024) ....................................................................................... 10

*Beavers v. Fed. Ins. Co.*,
 437 S.E.2d 881 (N.C. App. 1994) ......................................................................... 3, 10

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ..................................................................................................... 2

*Doe v. Uber Techs, Inc.*,
 2019 WL 6251189 (N.D. Cal. 2019) ........................................................................ 1, 8

*Doe v. Uber Techs.*,
 2021 WL 2382837 (D. Md. June 9, 2021) .................................................................... 1

*Doe v. Uber Techs., Inc.*,
 184 F. Supp. 3d 774 (N.D. Cal. 2016) ................................................................ 1, 6, 7

*Gornish v. Pa. Pub. Util. Comm'n*,
 4 A.2d 569 (Pa. 1939) .................................................................................................. 9

*Hairston v. Atl. Greyhound Corp.*,
 18 S.E.2d 166 (N.C. 1942) ......................................................................................... 11

*Hendricks v. Leslie Fay, Inc.*,
 159 S.E.2d 362 (N.C. 1968) ....................................................................................... 11

*Hoffman v. Silverio-Delrosar*,
 2021 WL 2434064 (D.N.J. June 15, 2021) ................................................................... 1

*Hoffman v. Silverio-Delrosar*,
 2021 WL 6091107 (D.N.J. Dec. 23, 2021) ................................................................... 8

*Jackson v. Stancil*,
 116 S.E.2d 817 (N.C. 1960) ................................................................................ 3, 6, 7

*Las Vegas Hacienda, Inc. v. C.A.B.*,
 298 F.2d 430 (9th Cir. 1962) ........................................................................................ 2

*Mann v. Va. Dare Transp. Co.*,
 198 S.E.2d 558 (N.C. 1973) ....................................................................................... 10

*McCoy v. Pac. Spruce Corp.*,
 1 F.2d 853 (9th Cir. 1924) ............................................................................................ 2

*Med-Trans Corp. v. Benton*,
 581 F. Supp. 2d 721 (E.D.N.C. 2008) ..................................................................... 3, 8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Morton v. De Oliveira*,
   984 F.2d 289 (9th Cir. 1993) ............................................................................................. 10

*Murray v. Uber Techs., Inc.*,
   486 F. Supp. 3d 468 (D. Mass. 2020) ................................................................................. 1

*Namisnak v. Uber Techs., Inc.*,
   444 F. Supp. 3d 1136 (N.D. Cal. 2020) .............................................................................. 6

*People v. Uber Techs., Inc.*,
   56 Cal. App. 5th 266 (2020) ............................................................................................... 7

*Squaw Valley Ski Corp. v. Sup. Ct.*,
   2 Cal. App. 4th 1499 (1992) .............................................................................................. 8

*Triton Ener. Corp. v. Square D. Co.*,
   68 F.3d 1216 (9th Cir. 1995) ............................................................................................... 2

*Wade v. Dichman, Wright & Pugh*,
   337 U.S. 801 (1949) ........................................................................................................... 7

*Ward v. Housatonic Area Reg'l Transit Distr.*,
   154 F. Supp. 2d 339 (D. Conn. 2001) ................................................................................. 8

*White v. Norfolk & S.R. Co.*,
   20 S.E. 191 (N.C. 1894) ................................................................................................... 11

*Williams v. Gill*,
   29 S.E. 879 (N.C. 1898) ................................................................................................... 11

### STATUTES

N.C.G.S. § 62-3 .......................................................................................................................... 10

N.C.G.S. § 62-3(6) ....................................................................................................................... 3

### OTHER AUTHORITIES

Amtrak, *Terms and Conditions* (Oct. 9, 2025) ............................................................................ 9

Black's Law Dictionary, *Carrier* (12 ed. 2024) .......................................................................... 2

Jeff A. Chamer, *Charlotte light rail suspect had knife on platform months earlier, records say*, Charlotte Observer (Dec. 9, 2025) ........................................................................... 9

**INTRODUCTION**

Plaintiff WHB823 moves for summary judgment on two issues: (1) whether Uber is a common carrier and (2) whether, as a result, Uber is vicariously liable for its driver's alleged sexual assault. In this case, Plaintiff WHB823 alleges that, when she tried to leave the Uber vehicle, her Uber driver grabbed her thigh and made sexualized comments. As the Court earlier explained, in North Carolina, common carriers owe non-delegable duties to provide transportation safely, duties that are breached when the driver assaults a passenger. Common-carrier status therefore creates vicarious liability. *See* PTO 28 at 22-23.

North Carolina applies the traditional common law rule: a common carrier is one who holds itself out as offering transportation to the public for money. Under undisputed facts, that is exactly what Uber is and what Uber does. Indeed, as this Court stated under Florida and Illinois law (materially indistinguishable from that of North Carolina): "There seemingly can be no doubt that … Uber would meet the definition of a common carrier." PTO 18 at 6.

Just last summer, the JCCP, applying similar California law, granted summary judgment against Uber, finding it a common carrier as a matter of law. *In re Uber Rideshare Cases*, JCCP No. 5188, at 9-16 (July 31, 2025) (*JCCP Order*) (Ex. A). Many courts have determined the same at the motion-to-dismiss stage based on allegations that, here, are substantiated by undisputed evidence. *See Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 786-787 (N.D. Cal. 2016) (finding allegations sufficient to establish "Uber is a common carrier"); *Doe v. Uber Techs., Inc.*, 2019 WL 6251189, at *6 (N.D. Cal. 2019) (holding that "Uber's status as an app-based transportation network does not preclude it as a matter of law from being held liable as a common carrier"); *Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 475-76 (D. Mass. 2020) (finding allegations sufficient to plead that Uber's "ride-sharing service is available to the general public"); *Doe v. Uber Techs.*, 2021 WL 2382837, at *5 n.5 (D. Md. June 9, 2021) ("Uber offers no plausible reason to believe that it is not a common carrier[.]"); *Hoffman v. Silverio-Delrosar*, 2021 WL 2434064, at *5 (D.N.J. June 15, 2021) ("[Uber] Defendants are a common carrier because they employ drivers who transport passengers for a fee.").

As a common carrier, Uber owes a non-delegable duty to provide transportation safely.

1  Therefore, Uber is vicariously liable for the alleged sexual assault in this case. Partial summary
2  judgment should be granted, and the triable facts limited to whether the driver assaulted Plaintiff
3  and her resulting damages.

## LEGAL STANDARD

Summary judgment "should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Ener. Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The moving party "bears the initial responsibility of" identifying the evidence that shows the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The "mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and "[f]actual disputes whose resolution would not affect the outcome of the suit are irrelevant." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citation omitted).

## ARGUMENT

**I.     Uber is a common carrier.**

    **A.     A common carrier is a company that offers transportation to the public for money.**

A "common carrier is generally defined as one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to such as may choose to employ him and pay his charges." *McCoy v. Pac. Spruce Corp.*, 1 F.2d 853, 855 (9th Cir. 1924); *see also Las Vegas Hacienda, Inc. v. C.A.B.*, 298 F.2d 430, 434 (9th Cir. 1962) ("[T]he dominant factor in fixing common carrier status at common law is the presence of a 'holding out' to transport the property or person of any member of the public who might choose to employ the proffered service."); *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 764 (4th Cir. 2018) ("A common carrier need not be available to every member of the public; it is enough that the service be available on open terms to even a segment of the population.").

Under North Carolina common law:

> A common carrier is one who holds himself out to the public as engaged in the public business of transporting persons … for compensation from place to place, offering his services to such of the public generally as choose to employ him and pay his charges. The distinctive characteristic of a common carrier is that he undertakes as a business to carry for all people indifferently.

*Beavers v. Fed. Ins. Co.*, 437 S.E.2d 881, 883 (N.C. App. 1994) (quoting *Jackson v. Stancil*, 116 S.E.2d 817, 824 (N.C. 1960)).[1] A company may be a common carrier even if it lacks a "regular schedule," a "fixed route," or a "relatively unlimited carrying capacity." *Jackson*, 116 S.E.2d at 824. Nor does it matter if the carrier offers only "charter" transportation." *Id.* Instead, "[t]he crucial test as to whether one is a common carrier is whether he holds himself out as such, either expressly or by a course of conduct, that he will carry for hire on a uniform tariff all persons applying so long as he has room. The holding out is not a formal matter, but consists of conduct naturally inducing a belief in the minds of the public, … [including through] advertising [or] solicitation." *Id*. at 825 (internal quotation marks, citations, and alterations omitted); *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 733 (E.D.N.C. 2008) (reviewing "common law," including North Carolina, and explaining that "[i]t does not matter that the service offered will be used by a limited subset of the population").

**B.  Undisputed facts establish that Uber offers transportation to the public for money.**

**1.  Uber holds itself out as a transportation provider and vouches for the safety of its rides.**

Uber holds itself out as a transportation provider. For example, Uber advertises to the public: "Ride with Uber," Ex. B (Ross 6/12/25 30b6 Dep.) at 560:6-19 & Ex. C (Ross Ex. 1081); "Let us take you where you need to go," Ex. B at 563:17-564:7, Ex. C; Ex. D (Ross Ex. 1082); and "we'll also get you to and from the airport … we'll get you there," Ex. B at 564:8-568:4 & Ex. E (Ross Ex. 1083). "Uber describes itself as providing rides to people" and "offers to sell rides to people." Ex. B at 556:6-22.

---

[1] There is a parallel statutory definition that tracks the common law language, but applies only as used in one regulatory statute. *See* N.C.G.S. § 62-3(6) ("As used in this Chapter … the term 'Common carrier' means any person …, which holds itself out to the general public to engage in transportation of persons or household goods for compensation, including transportation by bus, truck, boat or other conveyance ….").

1    When Uber holds itself out as a transportation provider, it also vouches for the safety of the
2    rides themselves. In 2015, Uber acknowledged, [redacted]
3    [redacted] *See* Ex. F (Esteves 8/28/25 30b6 Dep.) at 99:11-103:8; Ex. G (Esteves Ex. 2005)
4    at 1739181. Uber advertises: "Safe, reliable pickups within minutes," Ex. B at 561:21-562:3 & Ex.
5    C. In doing so, it is "holding out these rides that it is providing as safe and reliable." Ex. B at
6    561:21-562:3. Anybody downloading the Uber App from the Android store in December 2017
7    would have seen this representation: "4 Reasons to Ride with Uber … Safety is our priority." Ex.
8    H (Ross 6/11/25 30b6 Dep.) at 136:17-138:13; Ex. I (Ross Ex. 1045) at 5757329. Anybody
9    downloading the Uber App from the Apple store in December 2024 would have seen Uber's
10   tagline: "Ride safely with Uber." Ex. H at 142:24-143:20; Ex. I at 5757356. Uber vouches for the
11   safety of its rides because: [redacted]
12   [redacted] Ex. J (Brown Ex. 1110) at 67473.
13   Indeed, Uber held itself out to provide transportation services directly to the Plaintiff in this
14   case: [redacted] Ex.
15   AA (53804) (emphasis added); *see also* Ex. BB (53942) [redacted]
16   [redacted]).

17   **2.   Uber is, in fact, in the business of providing transportation.**

18   Uber does not merely hold itself out as a transportation provider; it is in fact a transportation
19   provider. It "offers to sell rides to people," and "does, in fact, sell rides to people." *See* Ex. B at
20   556:20-557:1. Travis Kalanick, Uber's founder and former CEO, attests that Uber's [redacted]
21   [redacted] *See* Ex. K (Kalanick Dep.) at 104:1-3, 17-19. Kate Parker, Uber's
22   Former Global Director of Product Marketing, Brand Management, & Strategic Initiatives,
23   affirmed that Uber [redacted]
24   [redacted] Ex. L (Parker 12/3/24 Dep.) at 390:5-13. Indeed, [redacted]
25   [redacted] *See* Ex. M (Nilles 6/30/25 30b6 Dep.) at 69:1-4.

26   **3.   Uber's transportation services are on offer to the general public.**

27   Uber does not just provide rides to a select group, but rather offers its rides to the general
28   public. *See* Ex. N (Childs 6/5/25 30b6 Dep.) at 145:24-146:3 [redacted]

▉

▉ Any teenager or adult in the United States can sign up for an Uber account. *See* Ex. B at 557:2-13. Uber would ideally like everyone in the United States who falls within the permitted age range to buy rides from Uber. *Id.* at 557:14-22.

### 4. **Uber is not a mere broker for services offered by independent transportation providers, but rather exercises control over matching, fare setting, payment processing, ride monitoring, and incident response.**

Uber does not broker the services of professional drivers who own independent transportation businesses. Rather, ▉ ▉. *See* Ex. M at 12:10-21. ▉ ▉. *Id.* at 12:22-13:13. Uber drivers need not even own a car. Uber partners with rental agencies where potential Uber drivers can rent vehicles. *See* Ex. O (Dobbs 8/21/25 30b6 Dep.) at 274:4-8.

Uber's transportation business does not function like Airbnb or other platforms that allow the customer to browse and then select from among independent providers whose goods or services are offered via the platform. Instead, when an Uber passenger wants a ride, she uses the Uber App to send the request to Uber. *See* Ex. P (Fuldner 3/26/25 Dep.) at 84:9-15. When Uber receives a ride request, it pairs and dispatches a particular driver. *See* Ex. Q (Wong 6/25/25 30b6 Dep.) at 131:16-20. Uber chooses which driver to dispatch. *See id.* at 133:20-134:3; *see also* Ex. R (G. Brown 7/15/25 30b6 Dep.) at 157:9-13 & 158:21-159:6. Uber does not give riders a menu of drivers to choose from. *See* Ex. S (G. Brown 7/16/25 30b6 Dep.) at 359:4-14. "Uber does not let the passenger choose their driver." Ex. T (Wong 4/16/25 PMQ Dep.) at 321:16-19; *see also id.* at 320:13-321:15. Indeed, a rider does not have any input into which driver is dispatched to her. *See* Ex. R at 159:7-11.

▉. *See* Ex. U (G. Brown 8/26/26 30b6 Dep.) at 346:12-15. ▉ ▉. *See* Ex. T at 323:14-324:4. ▉

1    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. V (M. Sullivan Dep.) at 232:12-23; *see also* Ex. P at 84:20-23.

Uber is involved in the details of rides. It requires vehicle inspection documents to ensure each vehicle is fit for purpose and roadworthy. *See* Ex. W (Nilles 5/29/25 PMQ Dep.) at 556:20-557:5. Through its "RideCheck" program, Uber monitors each ride in real time for anomalies, including long stops, midway drop-offs, route deviations, and crashes. *See* Ex. X (Esteves 7/15/25 30b6 Dep.) at 14:8-15, 16:5-16, 49:24-50:5. If Uber detects an anomaly, it messages the driver or passenger: "Hey, it looks like something is going out of the normal, based on the original program of this trip. Is everything okay? Do you need any help?" *Id.* at 50:6-19; *see also id.* at 14:8-15.

Uber is also responsible for responding to on-trip safety incidents. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. M at 269:10-16. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. T at 324:13-16. Rather, it intends for riders to report safety incidents directly to Uber. *See* Ex. Y (Uber 2017-2018 US Safety Report) at 15, 28, 34. Uber has a specialized team that provides customer support to riders and drivers reporting the most serious safety incidents, including sexual assault. *Id.* at 12. Uber publicizes the numbers of on-trip sexual assault incidents in its Safety Report. *See id.* at 58-59.

### C.   Uber's counter-arguments do not show a genuine issue of material fact.

Uber has advanced several arguments as to why it is not a common carrier. Those arguments should be rejected.

#### 1.   Uber may not avoid common-carrier duties by claiming status as a "broker," "intermediary," or "platform."

In the JCCP (and the *Dean* trial), Uber argued that it operates merely a pairing service, not a transportation service. But the crucial question is how Uber "holds itself out to the public, i.e., its "conduct naturally inducing a belief in the minds of the public, including through "advertising [or] solicitation." *Jackson*, 116 S.E.2d at 825. As described above, Uber holds itself out as a provider of transportation, and vouches for the safety of the transportation services. *See also, e.g., Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1143 (N.D. Cal. 2020) ("Uber's claim that it is 'not a transportation company' strains credulity, given the company *advertises itself* as a 'transportation

1    system.'"); *JCCP Order* at 12 ("[A] number of cases have considered contentions that ride-sharing
2    companies such as Lyft and Uber are in the business solely of creating technological platforms, not
3    of transporting passengers, and have dismissed them out of hand.") (quoting *People v. Uber Techs.,*
4    *Inc.*, 56 Cal. App. 5th 266, 292 (2020)).

5    In addition, Uber's involvement is not confined to brokering services offered by, vouched
6    for, and provided by others. Rather, Uber controls ride booking, driver-rider pairing, dispatching,
7    fare-setting, payment processing, vehicle quality, ride monitoring, communications, and incident
8    response.

9    In the *Dean* case, Uber argued it was a "mere arranger of transportation," citing *Wade v.*
10   *Dichman, Wright & Pugh*, 337 U.S. 801 (1949). But that case did merely applied to standard rule
11   the standard rule of looking to whether the defendant holds itself out as offering transportation to
12   the public, and found the defendant there did not do so. There, the defendant, as a government
13   contractor, had only limited duties in connection with the "a nightly service of two steamboats
14   between Norfolk and Washington," duties that "ended at the shore line." *Id.* at 805-07. It was the
15   "War Shipping Administration" that "carried out" the "actual transportation." *Id.* at 808. The
16   defendant was providing limited services to the U.S. government, not engaging in a business of
17   providing transportation. Consistent with that role, the defendant "never held itself out to the public
18   as ready to engage in such traffic." *Id.* Here, as explained above, Uber *does* hold itself out the
19   public, including to Plaintiff directly, as providing transportation services.

**2.   It does not matter that Uber does not own the vehicles.**

21   A common carrier need not own the vehicles. No common carrier case turns on title to the
22   vehicle. The key question is whether the company holds itself out to the public as offering a
23   transportation service, which Uber does. *See Doe*, 184 F. Supp. 3d at 786; *Jackson*, 116 S.E.2d at
24   825; *Claypool*, 299 P. at 128. As the JCCP explained: "A transit agency is a common carrier,
25   whether it owns the vehicles on which it transports passengers, leases them, or utilizes them on
26   loan from another agency." *JCCP Order* at 13.

27   Moreover, while vehicle control is not a pivotal factor, Uber actually exercises substantial
28   control over vehicles. Uber monitors the route and sends alerts if there are excessive deviations.

For drivers who do not own a vehicle, it helps arrange for car rentals. *See* Ex. O at 274:4-8. Uber also requires vehicle inspection documents to ensure each vehicle is fit for purpose and roadworthy. *See* Ex. W at 556:20-557:5.

### 3. It does not matter that passengers must register with Uber.

Uber has argued that it is not a common carrier because it offers services only to those passengers who register with the company. But "common carrier liability can attach even for transportation services that are of possible use to only a fraction of the population." *JCCP Order*, at 14 (quoting *Doe*, 2019 WL 6251189, at *6); *see also Hoffman v. Silverio-Delrosar,* 2021 WL 6091107, at *6 (D.N.J. Dec. 23, 2021) ("While true that Uber is only accessible to registered users, any person with a smart phone can download the app."); *Squaw Valley Ski Corp. v. Sup. Ct.*, 2 Cal. App. 4th 1499, 1509-10 (1992) ("To be a common carrier, the entity merely must be of the character that members of the general public may, if they choose, avail themselves of it."); *Med-Trans Corp.*, 581 F. Supp. 2d at 733 "It does not matter that the service offered will be used by a limited subset of the population."). Uber's services are offered to any adult or teenager in the United States.

### 4. It does not matter that Uber reserves the right, and sometimes exercises the right, to refuse service.

Finally, Uber has argued that because it sometimes bans rider accounts for violating company policies, it is not a common carrier. This fact is irrelevant: common carriers are expected to, and do, adopt policies to which passengers must adhere to use the service. *See, e.g., Ward v. Housatonic Area Reg'l Transit Distr.*, 154 F. Supp. 2d 339, 349 (D. Conn. 2001) ("[C]ommon carriers are able, by law, to enforce rules and regulations even if that means the deprivation of service to individual passengers."); *see also NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 493 n.42 (5th Cir. 2022) ("[M]ost or all common carriers have terms of service—for example, one must accept FedEx's terms to ship a package—and common carriers retain the right to remove unruly passengers or obscene transmissions."), *vacated and remanded on other grounds*, 603 U.S. 707 (2024).

Buses, trains, and taxis all can and do ban users from their services, but can be common carriers nevertheless. *See, e.g.*, Jeff A. Chamer, *Charlotte light rail suspect had knife on platform*

*months earlier, records say*, Charlotte Observer (Dec. 9, 2025) (noting violent rider banned from light rail);[2] *see also* Amtrak, *Terms and Conditions* (Oct. 9, 2025) ("Amtrak may refuse to carry passengers" for a number of reasons, including those "[w]hose conduct is objectionable").[3]

Uber's inclusion in its Terms of Use of a right to refuse service is similarly irrelevant. There is no evidence in the record that dozens of pages of form language counteract the billions of dollars of marketing inviting the general public to seek safe rides *from Uber*. The "status of one as a common carrier is not changed by an occasional refusal to perform services for which he is equipped." *Gornish v. Pa. Pub. Util. Comm'n*, 4 A.2d 569, 572 (Pa. 1939) (citation omitted. A "carrier which holds itself out to the public as being a common carrier" may not "divest itself of that character because it has a secret or private intention to reserve the right to refuse to serve such parties as it objects to, or because it may, even upon occasion, exercise such right, particularly if such reservation and exercise thereof is in reality, though not ostensible, merely for the purpose of divesting itself of the character and responsibility of a common carrier." *Claypool v. Lightning Deliv. Co.*, 299 P. 126, 128 (Ariz. 1931). It "is the general conduct of the actual business, and not isolated acts or statements, public or private, which fix the character of a common carrier on a party. And no form of subterfuge or evasion will prevent the courts from going behind the form to the substance." *Id.*

### D. Uber's lobbyist expert opinion is irrelevant.

Uber's lobbyist expert Joseph Okpaku asserts that Uber has "not been treated like [a] common carrier under the North Carolina TNC bills." Ex. Z (Okpaku Rpt.) at 32-36. As Mr. Okpaku concedes in a quiet footnote, he can cite no statute in North Carolina stating that Uber is *not* a common carrier. *Id.* at 32 n. 83.[4] The Court should refuse the invitation "to read limitations into the statute … that are just not there." PTO 17 at 31 n.11.

---

[2] https://www.charlotteobserver.com/news/local/crime/article313549593.html
[3] https://www.amtrak.com/terms-and-conditions?msockid=096c4e457c9762b9351c5bea7d3f63e9#termsOfTransportation-carriageOfPassengers
[4] Indeed, Mr. Okpaku's theory is premised on North Carolina adopting a "regulatory framework … substantially modeled off of the regulatory framework that had been set forth by the CPUC" in California. Ex. Z at 10. But in California, Uber is a common carrier. *See JCCP Order* at 9-16.

1    Mr. Okpaku articulates a convoluted theory of how the North Carolina TNC statute, by placing TNCs under the regulation of the Division of Motor Vehicles rather than the Utilities Commission, relates to the statutory definition of "common carrier" in N.C.G.S. § 62-3. Ex. Z at 32-36. But the statutory definition has no relevance outside of that statute. *See* N.C.G.S. § 62-3 (setting out definitions of terms "As used in this Chapter"); *see also Beavers*, 437 S.E.2d at 83 (accepting as a given that "an aircraft transporter of musicians" and "an operator of passenger elevators" are both common carriers, even though neither is regulated by the Utilities Commission). The North Carolina TNC statute says nothing about Uber's tort liability at all, let alone its common-law duties as a common carrier. *See Arter v. Orange Cnty.*, 904 S.E.2d 715, 717 (N.C. 2024) (Statutes "in derogation of common law rights … cannot be construed to include or exclude by implication that which is not is clearly their express terms.") (citation omitted).

## II. In North Carolina, Uber, as a common carrier, is vicariously liable for its driver's sexual assault of Plaintiff.

The Court has already determined that, in North Carolina, common carriers like Uber are vicariously liable when their drivers assault passengers. *See* PTO 28 at 22-23. That analysis controls on summary judgment.

In PTO 28, the Court explained:

> [T]he Court agrees with plaintiffs that '[l]ike California and Illinois (and the majority of states), North Carolina assigns common carriers like Uber a non-delegable duty to transport passengers safely, a duty that gives rise to vicarious liability whether or not the breach was done by an employee at all, let alone by one within the scope of employment.

PTO 28 at 23;[5] *see also Mann v. Va. Dare Transp. Co.*, 198 S.E.2d 558, 569 (N.C. 1973) ("Transportation Company, a common carrier, could not delegate to Coach Company [an

---

[5] In addressing common carrier claims under California law, the Court found that Uber's status as a common carrier gives rise to an independent basis for vicarious liability when Uber drivers assault passengers. PTO 17 at 32-35. In PTO 18, the Court found that as to cases under Florida law in the period before the TNC statute became effective, "Uber's common carrier non-delegable duties can form an independent basis for vicarious liability …." *Id*. at 6. The Court determined the same under Illinois law: "This duty extends to 'the intentional acts of its employees, even if those acts are committed outside the scope of employment.'" PTO 18 at 6 (citation omitted). This rule is not an anomaly. *See generally Morton v. De Oliveira,* 984 F.2d 289, 291-92 (9th Cir. 1993) (noting that "the rule regarding absolute liability for crew members' assaults cannot be traced to obsolete concepts" but instead "it is a widely adopted rule that common carriers owe such an absolute duty to their passengers.").

1  independent contractor] its duty to use the highest degree of care to provide safe buses for its
2  passengers. Under these circumstances, therefore, if Transportation Company was operating a bus
3  with a pre-existing defect in the steering mechanism which Coach Company should have
4  discovered, the negligence of Coach Company was primary and that of Transportation Company
5  was secondary."); *Hendricks v. Leslie Fay, Inc.*, 159 S.E.2d 362, 365-68 (N.C. 1968) (in case cited
6  by *Mann*, explaining that breach of a non-delegable duty based on conduct of a "contractor" creates
7  "vicarious liability").

8        The North Carolina Supreme Court makes this clear: "Since the carrier owes a high duty to
9  a passenger to protect him from assault from any source, a malicious or wanton assault committed
10  on a passenger by an employee while on duty, whether within the line of his employment or not,
11  constitutes a breach of duty directly imposing liability." *Hairston v. Atl. Greyhound Corp.*, 18
12  S.E.2d 166, 170 (N.C. 1942); *accord*, *e.g.*, *Williams v. Gill*, 29 S.E. 879, 879 (N.C. 1898) ("Indeed,
13  where the relation of carrier and passenger exists, the conduct of an employé of the carrier in
14  inflicting violence on the passenger, though the act be outside of the scope of his authority, or even
15  willful and malicious, subjects the carrier to liability in damages just as fully as if the carrier had
16  encouraged the commission of the act."); *White v. Norfolk & S.R. Co.*, 20 S.E. 191, 192-93 (N.C.
17  1894) ("Whether this wrongful act was done by the engineer while acting within the scope of his
18  employment is of no moment. The doctrine of respondeat superior is not involved.").

19  **CONCLUSION**
20        For these reasons, the Court should grant Plaintiff partial summary judgment.

Dated: March 10, 2026         Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

### FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: March 10, 2026         By:   */s/ Andrew R. Kaufman*
Andrew R. Kaufman