[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>*WHB 823 v. Uber Technologies, Inc., et al.*<br>N.D. Cal. No. 3:24-cv-04900<br>W.D.N.C. No. 3:25-cv-00737 | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.**<br><br>Judge: Honorable Charles R. Breyer<br>Date:   April 2, 2026<br>Time:  2:00 PT<br>Ctrm.: 6-17th Floor<br><br>**PROVISIONALLY FILED UNDER SEAL** |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WHB 823,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | No. 3:25-cv-00737<br><br>Judge: Honorable Charles R. Breyer |

I.  **INTRODUCTION**

Plaintiff moves the Court to exclude certain opinions of Defendant Uber Technologies, Inc.'s ("Uber") psychiatry expert Dr. Alison Reminick. Uber retained Dr. Reminick to provide "a records review and psychiatric diagnostic assessment of [] plaintiff … to determine the potential impact of events allegedly occurring in 2019 in a vehicle driven by a driver on the Uber platform on the plaintiff's [] mental health."[1] Exhibit 1, Report of Dr. Alison Reminick p. 2. From that she was to "give [her] psychiatric evaluation, opinion, about this patient…" Exhibit 2, Deposition of Alison Reminick, M.D., p. 11:18-19.

Dr. Reminick strays far from those roles in her "rebuttal report" to certain opinions stated in Plaintiff's psychological expert Dr. Helaya Rad's report about Plaintiff. Exhibit 3, Rebuttal Report of Dr. Alison Reminick p. 2; *see also generally* Exhibit 4, Report of Helaya Rad, Psy.D.[2] First, she renders opinions on certain psychological tests Dr. Rad did on Plaintiff for which Dr. Reminick is not qualified. She admits she has never before administered such tests or interpreted their results. Indeed, she had never even heard of the tests before she read Dr. Rad's report. Second, Dr. Reminick attacks Plaintiff's credibility declaring she is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Third, Dr. Reminick asserts – despite she admits no factual basis upon which to do so – that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

These opinions violate three cardinal rules of expert testimony: (1) experts may opine only on matters for which they are qualified; (2) experts cannot invade the jury's province and opine on witness credibility; and (3) experts cannot speculate but must use sound methodology linking facts, not supposition, to their opinions. Therefore, the opinions enumerated above should be excluded.

---

[1] Hereafter referred to as the "Uber incident."
[2] The Court should note that Plaintiff does not intend to offer Dr. Rad's opinions at trial.

## II.     DR. REMINICK'S OPINIONS

Plaintiff's psychological expert Dr. Helaya Rad administered several well-established and scientifically accepted psychological tests to Plaintiff as part of her assessment. The test results and Dr. Rad's analysis are outlined in her report. Dr. Reminick reviewed Plaintiff's answers to those tests, the "raw data", and her analysis and interpretation of those tests are in her rebuttal report. Exhibit 3, p. 2-4.

Dr. Reminick admits she had no familiarity at all with two of these tests before she read Dr. Rad's report. The first is the Trauma Symptom Inventory – 2nd Edition ("TSI-2"). Exhibit 4, p. 10. This test "assesses psychological sequalae of potentially traumatic events." *Id*. at p. 11. The second is the Detailed Assessment of Post-traumatic Stress ("DAPS"). *Id*. at p. 10. DAPS "provides detailed information about an individual's symptomatic responses to a specific traumatic event." *Id*. at p. 11. Dr. Rad notes Plaintiff, ███████████████████, identified the Uber incident in her DAPs answers as the traumatic event causing her the most stress. *Id*.

Dr. Reminick opines on these two tests' results at length in her rebuttal report. Ex. 3, p. 2-4. She contends the DAPS test itself offers little insight into Plaintiff's current mental condition, stating ████████████████████████████, the DAPS cannot assess the impact of the alleged Uber incident on her mental health." *Id*. at p. 2. She asserts further that the "results do not indicate that [Plaintiff's] ██████████ are specifically from the Uber event." *Id*. at p. 4. Dr. Reminick further contends that while Plaintiff's TSI-2 "scores suggested an elevation in trauma-related symptoms, … it only indicates that [Plaintiff] endorsed self-reported trauma symptoms the day she took the test." *Id*.

Dr. Reminick, however, admits s███████████████████████████████████████████. Ex. 2, p. 48:21-24. In fact, while she purports to be qualified to interpret such tests' results, she admits she never knew such tests existed before she read Dr. Rad's report:

Q.     ████████████████████████████████████

```
1   A.  ███████████████████████████████████████
2
    Q.  ██████████
3
4   A.  ███████████████████████████████████████
5
    Q.  ███████████████████████████████████████
6
7   A.  ████████████████████
```

Ex. 2, pp. 48:25-49:22 (emphasis added). The only qualification she offers to render these opinions is that she is a psychiatrist. But neither in her report nor in her deposition does she explain how that alone qualifies her, especially given that her opinions are squarely based on what she asserts are the tests' inherent limitations, and not Plaintiff's answers *per se*.

Dr. Reminick then broadly attacks Plaintiff's credibility declaring that:

> [Plaintiff] is not a credible historian both because ████████████████
> ████████████████████████████████████████████████████████

Ex. 3, p. 2 (emphasis added); *see also Id*. at p. 10. She elaborates that Plaintiff ████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████ *Id*. at p. 6.

Finally, Dr. Reminick "opines" that it is "unlikely that [Plaintiff] was ████ during the March 2019 Uber ride." *Id*. at p. 9. This is in "rebuttal" to Dr. Rad's opinion that Plaintiff's trauma from the Uber incident was "qualitatively different" from others she has suffered because, ***per Plaintiff's account***, she was ████████████. Ex. 4, p. 12. Dr. Reminick's sole bases for asserting Plaintiff was ████████████ are that Plaintiff has a ████████████, and that Plaintiff has a ████████████████████████████████████

Ex. 3, p. 9; *see also Id*. at p. 10. But Dr. Reminick admits twice in her deposition that there are no facts to support this opinion. She was asked first:

Q. 

A.

Q.

A.

Ex. 2, p. 56:8-18 (emphasis added). She then openly admits to merely speculating on the issue:

Q. 

A.

*Id*. at p. 59:8-21 (emphasis added).

### III.   AUTHORITIES AND ARGUMENT

Admissibility of expert testimony is governed by Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The proponent of the testimony must establish its admissibility by a preponderance of proof. *See Daubert*, 509 U.S. at 592 n. 10 (citing *Bourjaily v. United States,* 483 U.S. 171, 175-76, (1987)); Fed. R. Evid. 702. Rule 702 and its relevant case law manifest that Dr. Reminick's forgoing opinions are inadmissible and should be excluded.

In determining admissibility, the Court must ensure that evidence is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Expert testimony is admissible only if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably

applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 593. These rules "appl[y] not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 249 (4th Cir. 1999) (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137, 138 (1999)).

Reliability requires that the testimony be rooted in "a reliable basis of knowledge and experience of the relevant discipline." *Kumho Tire*, 526 U.S. 137, 150 (1999). Expert testimony may not be rooted in "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); Fed. R. Evid. 702 Advisory Committee's Notes to 2023 Amendments (Rule 702 "does not permit the expert to make claims that are unsupported by the expert's basis and methodology.").

Dr. Reminick's opinions about Plaintiff's TSI-2 and DAPS tests results plainly violate these principles. She does not have the requisite "scientific, technical, or other specialized knowledge" to interpret those test results as she openly admits she is not qualified to administer them and had never heard of the tests until she read Dr. Rad's report. Neither in her report nor in her deposition does she demonstrate by a preponderance of proof why she is qualified to render such opinions beyond her simply being a psychiatrist, despite she had no familiarity at all with the tests before this case. As such, her opinions on this subject are wholly unreliable.

Further, her "opinions" attacking Plaintiff's credibility egregiously supplant one of the most venerated roles of the jury and must be excluded. Simply put, experts cannot opine on witness credibility. The U.S. Court of Appeals for the Fourth Circuit admonishes that "in the absence of unusual circumstances, Rule 702 renders inadmissible expert testimony on issues of witness credibility." *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013). That is because "the evaluation of a witness's credibility is a determination usually within *the jury's exclusive*

*purview.*" *U.S. v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995)(emphasis added). Further, the Fourth Circuit specifically noted in *U.S. v. Cecil* that though expert psychiatrists like Dr. Reminick may opine on a variety of issues if helpful for the jury:

> *…that principle has never been extended to the right of a psychiatrist to give an opinion on the credibility of a witness*. That determination of credibility is one strictly for the jury. Many cases, decided after the adoption of the Federal Rules of Evidence, have so held. In fact, *the authorities seem uniform that a psychiatrist may not testify to the credibility of a witness; that issue is one for the jury*.

836 F.2d 1431, 1441 (4th Cir. 1988)(emphasis added). When Dr. Reminick asserts Plaintiff is ▇▇▇ and has a ▇▇▇ she blatantly arrogates to herself the role of factfinder. Moreover, such "opinions" are grossly and unfairly prejudicial, and therefore, violate Federal Rule of Evidence 403. The potential for a licensed and highly educated medical doctor to unduly influence the jury's assessment of Plaintiff's credibility, which is the province solely of the jury, cannot be overstated.

And for those reasons Dr. Reminick's opinion that Plaintiff was ▇▇▇ during the Uber incident should be excluded as well. Preliminarily, this opinion is rank speculation as Dr. Reminick openly admits there are no "facts" or "data" to support it. But it also impermissibly attacks Plaintiff's credibility. Such was the holding in a very similar case from the U.S. District Court for the Western District of North Carolina. In *Rhyne v. United States Steel Corp.* a defense expert attempted to opine in a benzene exposure case that it was "unlikely" the injured Plaintiff used the product at issue, "Liquid Wrench", as the Plaintiff testified. 474 F. Supp. 3d 733, 765 (W.D.N.C. 2020).

The *Rhyne* Court ruled, however, that by "opining that it is unlikely [Plaintiff] used Liquid Wrench as he testified to using it, [the expert] plainly calls into question [Plaintiff's] credibility. Exclusion of his opinion is appropriate on that basis alone." *Id*. The Court also ruled the expert's methodology fatally flawed. The expert asserted that if Plaintiff used the product as

he testified it would have caused a fire, but no fire occurred. Further, the expert opined that there were more suitable products for the Plaintiff to use. Therefore, the expert concluded it was "unlikely" Plaintiff used the product. *Id*. The Court ruled, however, the expert's "opinion is not reliable — 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. (*citing and quoting Doe v. Ortho-Clinical Diagnostics, Inc*., 440 F.Supp. 2d 465, 471 (M.D.N.C. 2006).

So too should the Court hold here. Dr. Reminick attempts to anchor her factual opinion that it was "unlikely" Plaintiff was ▮ during the Uber ride, *i.e*., that she was ▮, in Plaintiff's ▮. She also tethers the opinion to her assertion Plaintiff has a ▮. Thus, as in *Rhyne*, there is simply too great an analytical gap between the data and the opinion proffered, and it should be excluded. Indeed, that analytical gap here is even wider than in *Rhyne* as Dr. Reminick admits she has no facts upon which to base her opinion.

In sum, the opinions of Dr. Reminick enumerated above should be excluded because: (1) she is not qualified to opine on the DAPS and TSI-2 tests results, and such opinions are unreliable; (2) her opinion that Plaintiff is not a credible witness impermissibly invades the province of the jury; and (3) her factual opinion that Plaintiff was ▮ during the Uber incident is rank speculation, impermissibly attack's Plaintiff's credibility, and there is too great an analytical gap between her opinion and the sparse "data" upon which it relies.

### IV.  CONCLUSION

For the forgoing reasons Plaintiff's motion should be granted.

| | |
|---|---|
| Dated: March 10, 2026 | By: */s/ Sejal K. Brahmbhatt* <br> Sejal K. Brahmbhatt (pro hac vice) <br> John Eddie Williams, Jr. (pro hac vice) <br> John Boundas (pro hac vice) <br> Brian Abramson (pro hac vice) <br> Margret Lecocke (pro hac vice) <br> Walt Cubberly (SBN 325163) <br> Batami Baskin (pro hac vice) <br> Myles Shaw (pro hac vice) <br> Joseph C. Melugin (SBN 279439) <br> Stasja Drecun (pro hac vice) <br> **WILLIAMS HART & BOUNDAS LLP** <br> 8441 Gulf Freeway, Suite 600 <br> Houston, TX 77017-5051 <br> Telephone: (713) 230-2227 <br> Facsimile: (713) 643-6226 <br> sbrahmbhatt@whlaw.com <br> jwilliams@whlaw.com <br> jboundas@whlaw.com <br> babramson@whlaw.com <br> mlecocke@whlaw.com <br> wcubberly@whlaw.com <br> bbaskin@whlaw.com <br> mshaw@whlaw.com <br> jmelugin@whlaw.com <br> sdrecun@whlaw.com <br><br> *Attorneys for Plaintiff* WHB 823 |

By: */s/ Brett E. Dressler*
Brett E. Dressler (NC Bar #34516)

**SELLERS AYERS DORTCH & LYONS P.A.**
301 South McDowell Street, Suite 410
Charlotte, NC 28204
Telephone: (704) 377-5050
Facsimile: (704) 339-0172
Email: bdressler@sellersayers.com

*Local Counsel for Plaintiff* WHB 823

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com


By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

### **FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: March 10, 2026                            By:   */s/ Myles Shaw*