# Exhibit 17

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF YORK<br><br>E.B., a minor, E.R., a minor, S.S., individually and on behalf of E.B., C.B., individually and on behalf of E.B., and K.M., individually and on behalf of E.R.,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Uber Technologies, Inc., Rasier LLC, Andrew Ross Clark, an individual, Elizabeth Caracas, an individual, and DOES 3-25,<br>　　　　　　　　　Defendants. | IN THE COURT OF COMMON PLEAS<br><br>C.A. NO.:  2024-CP-46-02996<br><br><br>**ORDER GRANTING MOTION TO DISMISS** |

This matter comes before the Court on a motion to dismiss, pursuant to Rule 12(b)(6), by defendants Uber Technologies, Inc. and Rasier, LLC (collectively "Uber"). Plaintiffs' operative complaint brings five claims against Uber relating to a sexual assault committed by Jarrod Williams in North Carolina. The matter was heard by the Court on April 15, 2025. After considering the arguments presented and the memoranda and party submissions, the motion to dismiss is granted for the reasons given below. Plaintiffs' claims are dismissed WITHOUT PREJDUICE.

### FACTS

During the events at issue, Plaintiffs E.B. and E.R. were minors residing in South Carolina. (Am. Compl. ¶¶ 1-2.) Jarrod Williams contacted E.B. through Facebook. (*Id.* ¶ 56.) Williams was eighteen at the time and a North Carolina resident. (*Id.* ¶ 54.) Ultimately, Williams asked E.B. if she and E.R. were willing to meet him for intercourse. (*Id.* ¶ 58.) E.B. responded that they were. (*Id.*)

1

Williams gave E.B. instructions for how to sneak away and meet him in North Carolina. (*Id.* ¶ 59.) Williams would request a ride for them using the Uber App, and the girls would meet the driver at "an address down the street from" E.R.'s home. (*Id.*) Williams instructed E.B. that they should "tell the Uber driver that he was their dad." (*Id.*) The girls left the house "in the early afternoon," saying that "they were going to the park." (*Id.* ¶ 60.) E.R. "left her phone at home per Williams' instruction," so that E.R.'s mother could not "track her location." (*Id.*) They walked down the street to the car that was waiting and got in. (*Id.* ¶¶ 60-61.)

The driver, Andrew Clark, did not ask the girls their age but did ask whether "Fayvion" (the name listed on the profile requesting the ride) was their father. (Am. Compl. ¶¶ 9, 62.) E.B. nodded yes in response. (*Id.* ¶ 62.) Clark did not communicate with E.R. or E.B. during the ride and drove them to the pre-determined drop-off location in North Carolina. (*Id.* ¶¶ 63-64.) Throughout the ride, E.B. messaged with Williams. (*Id.* 65.) When Clark stopped at the designated drop-off location in North Carolina, E.R. and E.B. exited the car. (*Id.* ¶ 66.) Williams was not at the drop-off location. (*Id.*) Instead, he was waiting "a few houses down from the actual drop-off location." (*Id.*) After E.R. and E.B. had exited the car, Clark drove off. (*Id.*) E.R. and E.B. then walked down the block to where Williams "was waiving them over." (*Id.* ¶¶ 66-67.)

E.R. and E.B. entered Williams's home. (*Id.* ¶ 68.) Williams asked E.R. and E.B. whether they wanted to have intercourse. (*Id.* ¶ 70.) E.R. declined. (*Id.*) But E.B. "followed Williams into his room." (*Id.* ¶ 72.) Williams closed the door, and the two had intercourse, which Williams video recorded. (*Id.*)

Afterward, William requested another ride home for E.R. and E.B. using the Uber App. (*Id.* ¶ 73.) Like the original ride request, he chose a pick-up location down the street from his home in North Carolina. (*Id.*) E.R. and E.B. left Williams's home and "walk[ed] down the street to meet

2

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

the" second driver, Elizabeth Caracas, at the designated pick-up location. (*Id.* ¶¶ 11, 74.) Caracas drove E.R. and E.B. back to South Carolina, dropping them off at a park down the street from E.R.'s home.

The next day, E.R. received a Facebook message from Williams with that video. (*Id.* ¶ 80.) E.R. shared the video with her mother, who then shared the video with E.B.'s parents. (*Id.* ¶¶ 75-77.) The parents "reported the incident to law enforcement in both South Carolina and North Carolina." (*Id.* ¶ 82.) Williams was taken into custody in North Carolina and charged with several offenses. (*Id.*) He pleaded guilty to statutory rape of a minor under 15 years of age and sexual exploitation of a minor in the second degree. (*Id.*)

## PROCEDURAL HISTORY

After Williams's conviction, Plaintiffs E.R. and E.B.—along with their parents (Plaintiffs K.M., S.S., and C.B.)—filed this lawsuit. The original complaint brought six claims against Uber and the drivers, the latter as Doe defendants. (*See* Orig. Compl. ¶¶ 7-13.) Uber removed the case to federal court in August 2024 based on diversity jurisdiction. While in federal court, Uber moved to dismiss the claims against it for failure to state a claim.

In December 2024, Plaintiffs filed the First Amended Complaint. They replaced the two Doe drivers with Andrew Ross Clark and Elizabeth Caracas. (Am. Compl. ¶¶ 9-12.) Because Mr. Clark is a South Carolina resident, his addition to the case destroyed complete diversity and deprived the federal court of jurisdiction. Accordingly, the federal district court remanded the case to this Court.

Plaintiffs' operative complaint pleads five claims: negligence (Count I); negligent hiring, retention, and supervision (Count II); intentional infliction of emotional distress (Count III); human trafficking under S.C. Code Ann. § 16-3-2020 (Count IV); and tortious interference with

3

parental rights (Count V). (Am. Compl. ¶¶ 113-44.)[1] Shortly after remand, Uber renewed its motion to dismiss in this Court, and Plaintiffs renewed their opposition. The Court heard argument on the motion on April 15, 2025. The Court now grants that motion.

## LAW AND ANALYSIS

Under Rule 12(b)(6), the Court must dismiss a complaint if it fails to state facts sufficient to constitute a cause of action. "Generally, in considering a 12(b)(6) motion, the trial court must base its ruling solely upon the allegations set forth on the face of the complaint." *Doe v. Marion*, 361 S.C. 463, 469, 605 S.E.2d 556, 559 (Ct. App. 2004), *aff'd*, 373 S.C. 390, 645 S.E.2d 245 (2007).

**I.   North Carolina law governs Plaintiffs' common-law claims because the only alleged injuries occurred in North Carolina.**

Before the Court can address the substance of Plaintiffs' claims, it must determine what law applies. The parties dispute whether North or South Carolina law applies to the common-law tort claims. (*Compare* Mot. to Dismiss Br. at 9, 14-15, 19, 21, 23, *with* Plaintiffs' Opp. Br. at 8-10.) South Carolina follows the rule of "lex loci delicti." *Boone v. Boone*, 345 S.C. 8, 13, 546 S.E.2d 191, 193 (2001). Under that rule, "the substantive law governing a tort action is determined by … the law of the state in which the injury occurred." *Id.* Here, the First Amended Complaint's four common-law claims seek relief for "physical and emotional injuries" that were allegedly suffered in North Carolina. (*See* Am. Compl. ¶¶ 63, 72-73, 119, 124, 128-29, 144.) And Plaintiffs' brief does not identify any injuries that occurred in South Carolina. (Plaintiffs' Opp. Br. at 8-9.)

---

[1] In filing the First Amended Complaint, Plaintiffs omitted the false-imprisonment claim that they brought in the original complaint. (*Compare* Am. Compl. ¶¶ 113-44, *with* Orig. Compl. ¶¶ 128-33.) And Plaintiffs' brief says that they have voluntarily dismissed it. (Plaintiffs' Opp. Br. at 8-9 n.1) The Court therefore considers the claim to have been abandoned for purposes of Uber's Rule 12(b)(6) motion.

4

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

Plaintiffs claim, citing *In re Blackbaud*, 567 F.Supp. 667 (D.S.C. 2021) and *Rogers v. Lee*, 777 S.E.2d. 402 (S.C. Ct. App. 2015), that South Carolina law applies because the "last act necessary to complete [Uber's] tort" occurred in South Carolina. This is factually inaccurate. No injury at all occurred to the victims in South Carolina. Further, had the Uber driver turned around after crossing into North Carolina and driven the minor victims back to South Carolina, no injury would have occurred. If the driver had driven to North Carolina, but called the police, or driven to a police station, no injury would have occurred. Under Plaintiff's view of the law, the "last act necessary to complete [Uber's] tort" occurred when the minor Plaintiffs were actually dropped off in North Carolina by the Uber driver. Accordingly, North Carolina tort law applies to Counts I, II, III, and V.

## II.     The First Amended Complaint fails to state a claim for relief against Uber.

Dismissal is warranted because Plaintiffs' claims against Uber fail as a matter of law. *See Cole Vision Corp. v. Hobbs*, 394 S.C. 144, 148, 714 S.E.2d 537, 539 (2011) ("[A] party may move to dismiss a complaint against him based on a failure to state facts sufficient to constitute a cause of action."). Because most of Plaintiffs' claims rely on holding Uber vicariously liable for the conduct of the drivers, the parties argue extensively as to whether the drivers were independent contractors that cannot be treated as employees or agents of Uber. (*Compare* Mot. to Dismiss Br. at 10-13, *with* Plaintiffs' Opp. Br. at 11-17.) But the Court need not decide that issue in order to resolve the motion. Even if Plaintiffs have raised a factual issue as to whether the drivers were Uber's employees or agents, their claims still fail. At bottom, Plaintiffs seek to impose a duty on Uber to protect riders from the intentional acts of third parties that occur after riders have been safely delivered to their destination. And there is no legal basis for imposing such a duty.

### A. Counts I and II fail because Uber had no duty to protect Plaintiffs from Williams's criminal conduct.

5

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

Plaintiffs bring two negligence-based claims against Uber. (Am. Compl. ¶¶ 113-24.) Count I brings an ordinary negligence claim for allegedly "allowing the minor Plaintiffs to be transported across state lines, twice, without an adult present." (Id. ¶ 116.) Count II brings a negligent-supervision claim for allegedly failing to "monitor, train, supervise, and/or control its employees and/or agents," which "led to the trafficking of the minor Plaintiffs." (Id. ¶ 123.)[2]

Counts I and II suffer from the same legal flaw: lack of a legal duty. Establishing a duty of care is an essential element of both ordinary-negligence and negligent-supervision claims. *See Terry v. Pub. Serv. Co. of N. Carolina, Inc.*, 385 N.C. 797, 807, 898 S.E.2d 648, 655 (2024) ("A successful negligence claim requires a plaintiff to prove that the plaintiff was owed a duty by defendant…."); *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 462, 873 S.E.2d 567, 582 (2022) (requiring "a legal duty" for claims that "an employer negligently . . . supervised an employee). Here, Plaintiffs seek to impose a duty on Uber that goes beyond the well-established limits of North Carolina tort law.[3] North Carolina has a "general rule . . . that there 'is no duty to protect others against harm from third persons.'" *King v. Durham Cnty. Mental Health Dev. Disabilities & Substance Abuse Auth.*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994)

---

[2] While the First Amended Complaint styles Count II as a claim for "Negligence [in] Hiring, Supervision, and Retention," (Am. Compl. p. 38), Plaintiffs' brief contends only that Count II supports a claim for negligent supervision, (Plaintiffs' Opp. Br. 26-29). The Court therefore treats Count II as bringing a failure-to-supervise claim. The Court notes, however, that the outcome would be the same under any of the three theories listed in the First Amended Complaint because "a legal duty" is an essential element "when a plaintiff alleges an employer negligently hired, retained, or supervised an employee." *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 462, 873 S.E.2d 567, 582 (2022). And there is no legal duty to protect riders from third-party crimes committed after a rider has safely alighted from the vehicle.

[3] The Court notes that the result would be the same under South Carolina law. South Carolina has a similar no-duty-to-protect rule. *See Rogers v. S.C. Dep't of Parole & Cmty. Corr.*, 320 S.C. 253, 255, 464 S.E.2d 330, 332 (1995) ("Generally, one has no duty to control the dangerous conduct of another or to warn a potential victim of such conduct."). And a common carriers' duty after a passenger has "alight[ed] safely" is limited to ensuring that "the passenger is not in a position or situation as to be imperiled by the starting up of the" carrier's vehicle. *Hurd v. Williamsburg Cnty.*, 363 S.C. 421, 427, 611 S.E.2d 488, 491 (2005).

6

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

(quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 56, at 385 (5th ed. 1984)). That principle applies here because the alleged harm to E.B. and E.R. was caused by the intentional misconduct of a third party—Williams. (*See* Am. Compl. ¶¶ 101-112, 119, 124.)

Plaintiffs try to avoid North Carolina's general no-duty rule by invoking the "exception" that applies "when a special relationship exists between parties." *King*, 113 N.C. App. at 345-46, 439 S.E.2d at 774. Specifically, Plaintiffs contend that Uber had a duty to protect E.B. and E.R. because Uber is a common carrier. (Plaintiffs' Opp. Br. 17-20.) That theory fails for two reasons.

First, assuming (without deciding) that Uber is a common carrier, it did not breach any duty of care here. North Carolina law is clear "that a common carrier can be liable for a third-party assault" only when it occurs "within the scope of the special relationship, i.e., *in transit*." *Scadden v. Holt*, 222 N.C. App. 799, 802, 733 S.E.2d 90, 92-93 (2012) (emphasis added; quotation marks omitted). The North Carolina Supreme Court has held that "the duty is imposed upon the carrier to exercise due care and vigilance to protect the passenger *in transit* from violence threatened by third parties." *Leake v. Queen City Coach Co.*, 270 N.C. 669, 672, 155 S.E.2d 161, 163 (1967) (emphasis added) (quoting *Smith v. Camel City Cab Co.*, 227 N.C. 572, 574-75, 42 S.E.2d 657, 659 (1947)). So, once a passenger—even a minor passenger—has "alighted in safety," the carrier's duty to protect ends. *White v. Chappell*, 219 N.C. 652, 660-61, 14 S.E.2d 843, 849 (1941).

That limiting principle forecloses Plaintiffs' claims here. The factual allegations establish that E.R. and E.B. arrived at the designated destination safely. (*See* Am. Compl. ¶¶ 66-67, 77-78.) And Plaintiffs do not argue that E.R. or E.B. suffered any harm "in transit." (Plaintiffs' Opp. Br. at 23-29.) So E.R.'s and E.B.'s injuries occurred outside the scope of any duty of care that Uber would have owed them as a common carrier.

7

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

Second, Uber is not a "common carrier" under North Carolina law. Plaintiffs offer no authority to support the First Amended Complaint's bare assertion that Uber is a "common carrier." (Am. Compl. 117.) Nor could they. North Carolina classifies Uber as a "transportation network company" ("TNC") that is subject to regulation by the Division of Motor Vehicles under Article 10a of Chapter 20 of its General Statutes, *see* N.C. Gen. Stat. Ann. §§ 20-280.1(6), 20-280.7. It is not a common carrier that is subject to regulation by the North Carolina Utilities Commission under Chapter 62 of the General Statutes, *see id.* § 62-1, *et seq*. That conclusion is bolstered by the fact that TNCs and common carriers are regulated under distinct statutory schemes. *Compare* N.C. Gen. Stat. §§ 20-280.1(6), 20-280.8, *with id.* § 62-1, *et seq*. So any attempt to treat Uber as a common carrier under North Carolina tort law would be contrary to the clear policy choice made by North Carolina's legislature.[4] Accordingly, Uber had no duty to protect E.R. or E.B. at all, either in transport or after, because it is not a common carrier.

Plaintiffs ask this Court to extend tort liability beyond anything North Carolina allows. They argue that Uber is liable despite North Carolina's general no-duty rule because they are a "common carrier." But Uber is not a common carrier under North Carolina law—it is a TNC. So Uber has no duty to protect riders against third-party misconduct. Moreover, even if Uber were a common carrier, it cannot be liable for injuries caused by third parties after the successful and safe conclusion of a trip. *White v. Chappell*, 219 N.C. 652, 660–61, 14 S.E.2d 843, 849 (1941).

Because Uber had no duty to protect E.R. and E.B. from Williams, Plaintiffs fail to state a claim in both Count I and Count II.

---

[4] The Court notes that South Carolina law also precludes treating Uber as a common carrier. The General Assembly has specified, under the Transportation Network Company Act, that "TNC's and TNC drivers are governed exclusively by this article and by any regulations promulgated by the Office of Regulatory Staff consistent with this article." S.C. Code Ann. § 58-23-1710(A) (emphasis added).

8

### B. Count III fails because Uber cannot be liable for emotional distress inflicted by Williams.

Count III alleges that Uber is liable for intentionally inflicting emotional distress on Plaintiffs by "transporting two unaccompanied minors across state lines," where one of them was ultimately sexually assaulted. (Am. Compl. ¶¶ 125–30.) North Carolina does recognize the tort of intentional infliction of emotional distress. *See, e.g., Turner v. Thomas*, 369 N.C. 419, 427, 794 S.E.2d 439, 446 (2016). But the tort cannot be extended to make Uber liable for Williams's despicable conduct.

Under North Carolina law, a defendant is liable only for the infliction of emotional distress that the defendant "intended to cause and does cause." *Moschos v. Moschos*, 287 N.C. App. 162, 166, 882 S.E.2d 401, 404 (2022). In other words, a claim for intentional infliction of emotional distress cannot be based on harm caused by the intentional action of a third party, such as Mr. Williams. *See Turner*, 369 N.C. at 427, 794 S.E.2d at 446 ("The tort also may be established when a *defendant's actions* indicate a reckless indifference to the likelihood that *they will cause* severe emotional distress.") (emphasis added; quotation marks omitted)). Permitting plaintiffs to repackage their claims that a business failed to protect them from a third party's harm as a claim for intentional infliction of emotional distress would undo the "high bar" that North Carolina law has set for such claims. *Biggs v. Edgecombe Cnty. Pub. Sch. Bd. of Educ.*, No. 4:16-cv-271-D, 2018 WL 4471742, at *11 (E.D.N.C. Sept. 18, 2018).

Because the emotional harm that E.B. and E.R. allegedly suffered was caused by Williams, not Uber, Count III fails.

### C. Count IV fails because Plaintiffs cannot establish that Uber had actual knowledge that Williams was trafficking E.R. and E.B.

Count IV alleges that Uber is liable for human trafficking under S.C. Code Ann. § 16-3-2060. (Am. Compl. ¶¶ 131–37.) The parties agree that, because Count IV is a statutory claim, there

9

is no need to perform a choice-of-law analysis. (Mot. to Dismiss Br. at 29-30 & n.22; Plaintiffs' Opp. Br. at 20-23.) The Court therefore analyzes Count IV under S.C. Code Ann. § 16-3-2060, applying South Carolina's substantive law on statutory interpretation.

For Count IV to survive a motion to dismiss, Plaintiff must plausibly allege that Uber had actual knowledge that E.R. and E.B. were being sex trafficked. S.C. Code Ann. § 16-3-2020(A) provides "A person is guilty of trafficking in persons if he . . . transports. . . a victim, <u>knowing that the victim will be subjected to, or for the purposes of, sex trafficking</u>" (emphasis added). Further, S.C. Code Ann. § 16-3-2030(A) explicitly limits criminal liability to business owners who "<u>knowingly</u> aid[] or participate[] in an offense provided in this article" (emphasis added).

Here, there are no factual allegations supporting the assertion Uber knowingly participated in the trafficking of Plaintiffs. When a statute has a legal term or phrase with "a well-recognized meaning in the law," South Carolina courts assume "that the General Assembly intended to use the term in that sense." *Grier v. AMISUB of S.C., Inc*., 397 S.C. 532, 536, 725 S.E.2d 693, 696 (2012) (quotation marks omitted). South Carolina courts have authoritatively construed the term "knowingly" and the phrase "knowingly participated" to mean that "the defendant had actual knowledge of the third party's" wrongful conduct. *Gibson v. Ameris Bank*, 420 S.C. 536, 545, 804 S.E.2d 276, 281 (2017) (collecting cases); *see also Future Grp., II v. Nationsbank*, 324 S.C. 89, 99 100, 478 S.E.2d 45, 50 (1996) (holding that evidence of "actual knowledge" was required to establish that the defendant-bank "knowingly participated in [a third party's] alleged breach of his fiduciary duty"), *overruled on other grounds by Paradis v. Charleston Cnty. Sch. Dist*., 433 S.C. 562, 861 S.E.2d 774 (2021).

The First Amended Complaint fails to establish actual knowledge for two reasons. First, Plaintiffs rely on the allegations that the Plaintiffs told the driver they were "tween" minors, and

10

based on the picture of "Fayvion" in the Uber app, that the driver knew "Fayvion" was too young and the wrong race to be Plaintiffs' father. Notwithstanding the fact that "Fayvion" could have been an adoptive parent, all this demonstrates is the Uber drivers had alleged knowledge of suspicious facts. That is not enough. The statute requires "knowing that the victim[s] will be subjected to. . . sex trafficking," not merely knowledge of suspicious facts.

Second, even if the First Amended Complaint had somehow alleged facts establishing that the drivers had such knowledge, that would not establish that *Uber* had actual knowledge. Plaintiffs' theory of liability relies on imputing the drivers' alleged knowledge about E.R. and E.B. to Uber. But even assuming (without deciding) that the drivers were Uber's agents, "an agent's actual knowledge imputes only <u>constructive</u> knowledge to his principal." *Indep. Nat. Bank v. Buncombe Pro. Park, LLC*, 411 S.C. 605, 608–09, 769 S.E.2d 663, 665 (2015) (emphasis added).[5] And "constructive knowledge" is not "actual knowledge." *Cf. State ex rel. Medlock v. Nest Egg Soc. Today, Inc.*, 290 S.C. 124, 128, 348 S.E.2d 381, 384 (Ct. App. 1986).

Plaintiffs cannot allege facts to establish the actual knowledge required to hold Uber liable under the statute. Count IV therefore fails as a matter of law.

### D. Count V fails because North and South Carolina do not recognize a tort for interference with parental rights.

Finally, Count V seeks to hold Uber liable for "tortious interference with parental rights." (Am. Compl. ¶¶ 138–144.) Plaintiffs have not identified any appellate authority from North or South Carolina that recognizes such a tort. (*See* Plaintiffs' Opp. Br. 32-34.) And the Court is not aware of any such supporting authority. *See Berg v. Muratti*, No. 17-cv-491, 2017 WL 5340383, at *2 (W.D.N.C. Nov. 13, 2017) (dismissing a claim "for Tortious Interference with Parental

---

[5] As explained above, the Court need not decide whether the drivers were acting as employees or agents of Uber to resolve the motion. *See supra* at p. 5.

11

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996

Rights and Alienation of Affection" based on the "absence of any North Carolina law recognizing these claims against non-parent third parties"); James L. Ward, Jr. & Edward J. Westbrook, South Carolina Damages § VI.29.B.14 (2d ed. 2017) ("Tortious Interference with Parental Rights is a cause of action that is not yet recognized in South Carolina."). Because there is no such cause of action under North Carolina law, Count V fails.

## CONCLUSION

Plaintiffs have failed to state a claim for relief against Uber. The motion to dismiss the claims against Uber is therefore granted.

Uber has requested that the claims be dismissed with prejudice. (*See* Mot. to Dismiss Br. at 33; Reply Br. at 14.) In their opposition brief, Plaintiffs included a request for leave to file an amended complaint. (*See* Plaintiffs' Opp. Br. 34-35.) Uber correctly notes Plaintiffs' request does not identify any additional facts that would be included in an amended complaint to overcome the legal deficiencies discussed above. Nevertheless, our Supreme Court has instructed "When a complaint is dismissed under Rule 12(b)(6) for failure to state facts sufficient to constitute a cause of action, the dismissal generally is without prejudice." *Skydive Myrtle Beach, Inc. v. Horry Cnty.*, 426 S.C. 175, 189 (2019) (quoting Spence v. Spence, 368 S.C. 106 (2006)). Trial courts are also instructed "the plaintiff should be given an opportunity to amend a complaint dismissed under Rule 12(b)(6)" and "the trial court should not refuse the amendment on the ground of futility unless the amendment would be clearly futile." The highly detailed factual allegations in Plaintiffs' operative complaint make this a close call. Nevertheless, at the pleading stage without the benefits of any discovery, the Court cannot say with certainty any amendment in this action would be futile. THE MOTION TO DISMISS IS GRANTED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

ELECTRONICALLY FILED - 2025 Jun 13 8:50 AM - YORK - COMMON PLEAS - CASE#2024CP4602996



York Common Pleas

**Case Caption:**   E B , plaintiff, et al  VS  Uber Technologies, Inc. , defendant, et al

**Case Number:**   2024CP4602996

**Type:**   Order/Dismissal

So Ordered

/s William A. McKinnon, #2761, Circuit Judge

Electronically signed on 2025-06-12 23:44:01   page 13 of 13