# C. Cotton Decl. Exhibit 3

| | |
|---|---|
| **From:** | Hooper, Bobbie (SHB) |
| **To:** | David Grimes; Alexander, Amy (SHB) |
| **Cc:** | Shortnacy, Michael (SHB); ksmith@paulweiss.com; *Atkins,Robert; Oot, Patrick L. (SHB); jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price; Wollmuth, Jack; Peden, Kelsey; Achari, Lakshmi (SHB); Lee, Isamu H. (SHB); Angela Nehmens |
| **Subject:** | RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint |
| **Attachments:** | image005.jpg |
| | image006.jpg |
| | image001.jpg |

Counsel,

We categorically disagree with your characterization of the meet and confer process. We appeared ready to conduct a good faith meet and confer and attempt to discuss proposals tailored to the issues in this JCCP matter. Instead, you conducted yourself in an *uncivil* and unacceptable manner, not only in violation of San Francisco Guidelines of Civility and Professionalism but of the Civility Guidelines laid out by the California Bar. Here are just a few of your choice words:

**"Are you guys stupid?"**
**"I don't give a shit Amy."**
**"You guys have you're heads up your asses."**
**"You guys are just plain stupid."**

**"You guys are saying some of the stupidest craziest shit I've ever heard in my life."**

Such behavior and uncivility not only frustrates the meet and confer process, but it does not satisfy the good faith requirement to meet and confer. We made numerous attempts to focus the discussion back to the substance of the discovery and we are disappointed in your incorrect characterizations of the call.

In fact, by way of just one example, the below assertion is explicitly contradicted by our numerous attempts to make proposals regarding potentially relevant transcripts, including the proposal Marc made at the end that we thought you essentially accepted:

"...Uber instead repeated the position, rejected by Judge Schulman as "fatuous" in his Order on Uber's Motion to Strike Plaintiffs' Master Long-Form Complaint, filed 06/22/23, that none of the apex witnesses had personal knowledge of the particular assaults of the plaintiffs and that therefore none of the corporate documents sought could be responsive. Plaintiffs agree with Judge Schulman's binding determination on the issue..."

As Marc stated in the conferral, we will put together and provide a proposal about the deposition transcripts based upon the consideration of what is relevant to the SA/SM issues in the JCCP.

**Bobbie E. Hooper**
*Senior Counsel*
Shook, Hardy & Bacon L.L.P.

Direct Dial: (949) 975-1727
Cell: (949) 543-6169

| bhooper@shb.com



**From:** David Grimes <dgrimes@levinsimes.com>
**Sent:** Thursday, February 27, 2025 5:18 PM
**To:** Alexander, Amy (SHB) <aalexander@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot, Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

**EXTERNAL**

Counsel,

I am disappointed that Uber's attorneys showed up to the meet and confer utterly unprepared. For almost 1 ½ hours, Uber's attorneys objected that the contents of the requested documents were not "relevant" to the case. But they also offered to review the documents to determine if those documents' contents were relevant. In other words, Uber's objections that the contents of the documents sought were not relevant made with total ignorance as to their relevance (not that their opinion would matter as to the propriety of the request). Nor would Uber's counsel's opinion be particularly helpful anyway, as it did not appear that any of the attorneys had even reviewed the complaint in the Boston Retirement litigation. Uber instead repeated the position, rejected by Judge Schulman as "fatuous" in his Order on Uber's Motion to Strike Plaintiffs' Master Long-Form Complaint, filed 06/22/23, that none of the apex witnesses had personal knowledge of the particular assaults of the plaintiffs and that therefore none of the corporate documents sought could be responsive. Plaintiffs agree with Judge Schulman's binding determination on the issue.

The fact that Uber showed up unprepared on its meet and confer call (despite having an astonishing *seven lawyers* on the line – fewer would likely have made scheduling easier, particularly since none bothered to respond to Ms. Alexander's request that they orally vote for her interpretation of the law) does not mean that Plaintiffs have not satisfied their duty to meet and confer.

With respect to Uber's assertion that these are "clone discovery" requests, Uber misunderstands that term. "Clone discovery" is 'requests for **'all'** documents produced in another litigation." *United States v. Anthem, Inc.* (S.D.N.Y., Mar. 13, 2024, No. 20CV2593ALCKHP) 2024 WL 1116276, at *4. Notably, *Anthem* noted that it is appropriate to "capitalize[] on the work already done" in parallel litigation.

We have asked for specific and finite set of relevant deposition transcripts (RPD 430); a specific and finite set of 12 unredacted docket entries (RPD 431); and discrete and specific sets of written discovery responses (RPD 432, 433). That is not "clone" discovery. Those requests are reasonably tailored to the subject of apex depositions in the Boston Retirement litigation, which as I read to you in our meet and confer, touches directly on the topic of apex individuals' knowledge of and suppression of the problem of sexual assault on the Uber platform. The requests are tailored to the needs of this litigation, particularly since Uber has introduced the propriety of apex depositions as an issue with their motions to quash.

In Docket 305 of the Boston Retirement litigation, Mag. Judge Ryu wrote: "ORDER: The court has reviewed the 7/19/2023 Joint Discovery Letter Brief, in which Defendants seek an order staying 16 "apex" depositions, and Plaintiffs cross-move to compel those depositions. By 8/31/2023, the parties shall provide the court with the following information in a summary chart form. For each potential deponent, Plaintiffs shall list (1) the name of the deponent; (2) the title of the deponent; (3) bullet points that summarize deponent's unique, first-hand, non-repetitive knowledge of relevant facts; and (4) bullet points of steps taken to obtain the information sought through other discovery or less intrusive means. In the same chart, Defendants shall give bullet points of any reason constituting good cause for precluding the deposition (e.g., deponent does not have first-hand knowledge; other witnesses could testify to the facts from a similar vantage point; specific prejudice or harm would result from the deposition) with a concise explanation of each basis. The parties shall include brief citations to evidence. The filing may not contain any narrative or any information beyond what the court has specifically requested. The court expects to receive a concise, easy to read chart that summarizes the parties' positions as to each deponent and provides key facts. If the chart does not conform to the court's expectations, it will be rejected."

That chart was filed as Docket 318, albeit entirely redacted.
https://storage.courtlistener.com/recap/gov.uscourts.cand.349352/gov.uscourts.cand.349352.318.0.pdf.

The Court's summary is illuminating, however, as it notes that certain information *directly relevant to this case* – "passenger safety information" – is included in that chart. Dkt. 337 (https://storage.courtlistener.com/recap/gov.uscourts.cand.349352/gov.uscourts.cand.349352.337.0.pdf), n. 2.

The court subsequently granted the apex depositions. (Dkt. 337).

The written discovery requests (RPD 432, 433) relate to what was published as Docket 322-1: an exhibit to a motion for the group of leadership defendants to split their combined discovery responses out individually. **The very first question** is:

> "If You contend that, prior to May 9, 2019, You conducted due diligence into the statements made in Uber's Offering Documents concerning Uber's Passenger Safety Issues, then identify all documents (by Bates number if applicable) and individuals You spoke with (including name, contact information, and when you spoke) that You relied on."

Dkt. 322-1 (https://storage.courtlistener.com/recap/gov.uscourts.cand.349352/gov.uscourts.cand.349352.322.1.pdf)

The first responses, made on behalf of each of the Board members, Dara Kosrowshahi, Chai, and Ceremony, refer to a chart of exhibits identifying particular documents relating to passenger safety issues on which each was purportedly informed:

> The Individual Defendants further refer Lead Plaintiff to Exhibit A attached hereto, which lists examples of documents (identified by Bates number) reflecting the Individual Defendants' reasonable due diligence investigation in connection with the Uber IPO and individuals (including names, contact information, and dates of communication) involved, including rows 1-1,247 for Defendants who were Board members during the relevant time period, as well as rows 1,248-2,649 for Defendants Khosrowshahi, Chai, and/or Ceremony.

We have asked for the individualized responses (since the Court agreed the joint responses were inadequate) as well as the charts and the identified responsive documents. If Uber believes its own employees' and board members' responses were overbroad to the propounded request, that is a self-inflicted wound. Uber's contention that these responses are somehow not "relevant" to this lawsuit is baffling, perhaps explainable only by a profound misunderstanding of what relevance is under California's discovery law.

A refresher:

The "relevance to the subject matter" and "reasonably calculated to lead to discovery of admissible evidence" standards are applied *liberally*. Any doubt is generally resolved in favor of *permitting* discovery, particularly where the precise issues in the case are not yet clearly established. [*Colonial Life & Accident Ins. Co. v. Sup.Ct. (Perry)* (1982) 31 C3d 785, 790, 183 CR 810, 813, fns. 7-8]

2. [8:67] "Reasonably Calculated to Lead to Discovery of Admissible Evidence":, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 8C-2

Admissibility at trial is *not* required. Rather, the test is whether the information sought might reasonably lead to *other evidence* that *would* be admissible. [CCP § 2017.010; see *Davies v. Sup.Ct. (State of Calif.)* (1984) 36 C3d 291, 301, 204 CR 154, 161; *Volkswagen of America, Inc. v. Sup.Ct. (Rusk)* (2006) 139 CA4th 1481, 1490-1491, 43 CR3d 723, 728]

2. [8:67] "Reasonably Calculated to Lead to Discovery of Admissible Evidence":, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 8C-2

The court ruling on a discovery motion cannot determine whether the information sought will in fact be relevant and admissible at trial: "It can only attempt to foresee whether it is *possible* that information in a particular subject area *could* be relevant or admissible at the time of trial." [*Maldonado v. Sup.Ct. (ICG Telecom Group, Inc.)* (2002) 94 CA4th 1390, 1397, 115 CR2d 137, 142-143 (emphasis added)]

2. [8:67] "Reasonably Calculated to Lead to Discovery of Admissible Evidence":, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 8C-2

For discovery purposes, information is relevant if it "might reasonably assist a party in *evaluating* the case, *preparing* for trial, or *facilitating* settlement...." [cite] Admissibility is *not* the test and information, unless privileged, is discoverable if it might reasonably *lead* to admissible evidence. [cite] These rules are applied liberally in favor of discovery [cite], and (contrary to popular belief), fishing expeditions *are* permissible in some cases. Gonzalez v. Superior Court (1995) 33 Cal.App.4th 1539, 1546.

"The phrase "reasonably calculated to lead to the discovery of admissible evidence" makes it clear that the scope of discovery extends to *any information* that reasonably might lead to other evidence that would be admissible at trial." Lipton v. Superior Court (1996) 48 Cal.App.4th 1599, 1612.

Relevant information includes "any information regarding the credibility of a witness (including bias and other grounds for impeachment)". Gonzalez v. Superior Court (1995) 33 Cal.App.4th 1539, 1546

"Grounds for impeachment" naturally includes past sworn discovery responses, *particularly* in a case where the subject matter overlaps with the current case.

As I said, we are on a short timeline with the subject of apex depositions set to be decided at the April 9 CMC. I see zero reason to withdraw or narrow any of our requests. Please let us know a date certain by which Uber will comply. If we do not hear from you we will bring the above to the Court's attention as part of our papers for the March 6 IDC.



**David M. Grimes | Associate Attorney**

**LEVIN SIMES LLP**

1700 Montgomery Street, Suite 250 | San Francisco, CA  94111

Direct (415) 426-3133 | Main (415) 426-3000 | Fax (415) 503-5251

---

**From:** David Grimes
**Sent:** Wednesday, February 26, 2025 9:58 AM
**To:** Alexander, Amy (SHB) <aalexander@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot, Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

I can do 2-3 pm Thursday. Thanks.



**David M. Grimes | Associate Attorney**

**LEVIN SIMES LLP**

1700 Montgomery Street, Suite 250 | San Francisco, CA  94111

Direct (415) 426-3133 | Main (415) 426-3000 | Fax (415) 503-5251

---

**From:** Alexander, Amy (SHB) <aalexander@shb.com>
**Sent:** Tuesday, February 25, 2025 5:41 PM
**To:** David Grimes <dgrimes@levinsimes.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot, Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

David,
As I've mentioned below, we want to understand your requests to see where we can reach common ground. The goal of this exercise is to attempt to eliminate issues where possible. To that end, we continue to request a

discussion. I've rearranged things to work with your schedule. We can set up a Zoom for Thursday at noon – 1pm or 2-3pm. Look forward to meeting with you.

**Amy K. Alexander**
*Partner*
Shook, Hardy & Bacon L.L.P.

415-544-1965 | aalexander@shb.com



---

**From:** David Grimes <dgrimes@levinsimes.com>
**Sent:** Tuesday, February 25, 2025 10:44 AM
**To:** Alexander, Amy (SHB) <aalexander@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot, Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

**EXTERNAL**

Amy,

The information we are seeking is explained in my original email. Monday is worse than Friday for preparing the issue for the IDC. Right now Uber has issued frivolous blanket objections that would invite sanctions if stood upon. It is proposing to articulate no compromise until a couple of hours before the issue must be committed to writing in preparation for the IDC. That is unreasonable and smacks of gamesmanship. You can work with me by proposing your compromise in writing today.

Thank you,



David M. Grimes | Associate Attorney

**LEVIN SIMES LLP**

1700 Montgomery Street, Suite 250 | San Francisco, CA  94111

Direct (415) 426-3133 | Main (415) 426-3000 | Fax (415) 503-5251

---

**From:** Alexander, Amy (SHB) <aalexander@shb.com>
**Sent:** Tuesday, February 25, 2025 10:35 AM
**To:** David Grimes <dgrimes@levinsimes.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot,

Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

David,

Uber properly asserted its objections and invited a conferral to better understand what specific information you are seeking. We have a number of issues to iron out and the court will require a conferral. We provided a date that we are available to confer in less than a week from your original email. If that date doesn't work, we can also offer Monday. In any event, it is our intention to work with you to assess where the parties can reach a compromise, and that should dispel any need for judicial intervention. Let me know if Monday at 1pm PST will work. We can circulate an updated zoom invitation.

Thanks,
Amy

---

**From:** David Grimes <dgrimes@levinsimes.com>
**Sent:** Tuesday, February 25, 2025 9:33 AM
**To:** Alexander, Amy (SHB) <aalexander@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot, Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

**EXTERNAL**

Hi Amy,

I'm not available on Friday, February 28. The written statement before the March 6 CMC/IDC is due Monday, March 3. I've been asking for a meet and confer on this issue since February 18, the same day I received Uber's blanket objections. This needs to get resolved on March 6, in advance of further apex briefing. Can you provide me with a written explanation of Uber's objections so that we can get the ball rolling on resolving this informally?



**David M. Grimes | Associate Attorney**

**LEVIN SIMES LLP**

1700 Montgomery Street, Suite 250 | San Francisco, CA  94111

Direct (415) 426-3133 | Main (415) 426-3000 | Fax (415) 503-5251

---

**From:** Alexander, Amy (SHB) <aalexander@shb.com>
**Sent:** Monday, February 24, 2025 5:16 PM

**To:** David Grimes <dgrimes@levinsimes.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; ksmith@paulweiss.com; ratkins@paulweiss.com; Oot, Patrick L. (SHB) <OOT@shb.com>; jphillips@paulweiss.com; Ridesharefirms@whlaw.com; Wolf, Marc Price <mpricewolf@paulweiss.com>; Wollmuth, Jack <JWollmuth@paulweiss.com>; Peden, Kelsey <kpeden@paulweiss.com>; Hooper, Bobbie (SHB) <bhooper@shb.com>; Achari, Lakshmi (SHB) <LACHARI@shb.com>; Lee, Isamu H. (SHB) <ilee@shb.com>
**Subject:** RE: Uber SROG Set 6, RPD Set 13; Amending the long form complaint

David:

Thank you for your email. Unfortunately we have conflicts in our schedules, but are available Friday at noon. If that works, we can circulate a Zoom link.

**Amy K. Alexander**
*Partner*
Shook, Hardy & Bacon L.L.P.

415-544-1965 | aalexander@shb.com



---

**From:** David Grimes <dgrimes@levinsimes.com>
**Date:** February 21, 2025 at 11:34:19 AM PST
**To:** "Shortnacy, Michael (SHB)" <mshortnacy@shb.com>, "Smith, Kyle" <ksmith@paulweiss.com>, "Atkins, Robert A" <ratkins@paulweiss.com>, "Oot, Patrick L. (SHB)" <OOT@shb.com>, "Hooper, Bobbie (SHB)" <bhooper@shb.com>, "Phillips, Jessica E" <jphillips@paulweiss.com>
**Cc:** Ride Share Firms <Ridesharefirms@whlaw.com>
**Subject: FW: Uber SROG Set 6, RPD Set 13; Amending the long form complaint**

**EXTERNAL**

Mr. Shortnacy,

I'm following up on the below. As you signed the responses I assumed you were the person with whom to confer on them. If you're not I've copied your colleagues here as well.
Please let me know your availability to discuss the below. We would like to have this teed up for the March 6 IDC if we can't come to an agreement before then.
I'm available Monday, Tuesday am, Wednesday PM, and Thursday PM of next week.

Thank you,

**David M. Grimes | Associate Attorney**

**LEVIN SIMES LLP**

1700 Montgomery Street, Suite 250 | San Francisco, CA  94111

Direct (415) 426-3133 | Main (415) 426-3000 | Fax (415) 503-5251

**From:** David Grimes
**Sent:** Tuesday, February 18, 2025 3:44 PM
**To:** Shortnacy, Michael B. (SHB) <mshortnacy@shb.com>
**Cc:** Ride Share Firms <Ridesharefirms@whlaw.com>
**Subject:** Uber SROG Set 6, RPD Set 13; Amending the long form complaint

Mr. Shortnacy,

From reading Uber's responses Uber's responses to SROG set 6 and RPD set 13 it appears that Uber is refusing to produce **any** documents, discovery, or deposition transcripts from Boston Retirement System v. Uber Technologies, Inc., 3:19-cv-06361, (N.D. Cal.), on the basis that that case is "an unrelated federal securities case" and that the requests failed to include an "explanation of a connection to the claims or defenses in this case." The Discovery Act includes no requirement that a request be self-justifying, but the explanation is as follows.

The issues in the lawsuits overlap significantly. The operative pleading in Boston Retirement Systems v. Uber is the Second Amended Complaint, at
https://storage.courtlistener.com/recap/gov.uscourts.cand.349352/gov.uscourts.cand.349352.137.0.pdf
[ECF No. 137].
One of the main allegations in BRS v. Uber was that Uber understated in its Registration Statement its risks relating to passenger safety, including sexual assault. (Paragraphs 13-16 [sex assault problem not properly addressed to maintain growth]; 42-47 [same]; 148-155 [internal culture of misogyny]; 172-180 [misstatements re passenger safety]; 198-202 [same]; 250-301 ["Post-IPO Events Demonstrating That Uber's Rampant Passenger Safety Issues Existed Prior to the Offering"].; *see also* Judge Seeborg's denial of Uber's motion to dismiss,
https://storage.courtlistener.com/recap/gov.uscourts.cand.349352/gov.uscourts.cand.349352.95.0.pdf
[ECF No. 95] ["Here, the optimistic statements in the RS—for example, "it's a new day Uber"—are not mere puffery when taken in context. As described above, the RS admitted Uber had stumbled in its past, by failing to comply with local laws and tolerating sexual harassment and even abuse of its passengers and employees. The RS implied the company had turned a corner, particularly with Khosrowshahi's hiring, and these problems were in the past. "It's a new day" is not mere puffery when the speaker knows significant remnants of the "old day"—for example, continuing to launch in markets where Uber was clearly illegal, and paying fines or bribes as a cost of doing business— remain. Similarly, the RS's claims that Uber was "committed to enhancing safety" or "work[ing] tirelessly to earn [its] customers' trust" are vague without context. However, when presented in the context of Uber's troubled history and the "new day" theme, they imply that something has changed—not, as BRS has pled, that Uber's customer service team was still forbidden from involving law enforcement when passengers reported harassment or assault"].)

This coordinated proceeding directly concerns Uber's corporate knowledge and suppression of its problem with passenger safety and, in particular, sexual assault, in service of its pursuit of growth. *See*, e.g., FAC, paragraphs 3-4 ("3. As early as 2014 Uber became aware that Uber drivers were sexually

assaulting and
raping female passengers. Since 2014, sexual predators driving for Uber have continued to sexually assaulting, harass, falsely imprison, kidnap, physically assault, and/or rape Uber's passengers. Complaints to Uber by female passengers who had been attacked by Uber drivers, combined with subsequent criminal investigations by law enforcement, clearly establish that Uber has been fully aware of these continuing attacks by sexual predators driving for Uber.
4. While Uber has, in recent years, publicly acknowledged this sexual assault crisis,
including the publication of Uber's U.S. Safety Report in December 2019, Uber's response to this sexual predator crisis amongst Uber drivers has been appallingly inadequate. Uber continues to hire drivers without performing adequate background check. Uber continues to allow culpable drivers to keep driving for Uber. And, perhaps most importantly, Uber has failed to adopt and implement reasonable driving monitoring procedures designed to protect the safety of its passengers. As a consequence, Uber passengers continue to be the victims of sexual assaults and rapes by Uber drivers.")

The requests to which Uber has issued blanket objections also go to the propriety of apex depositions. Apex protections were also debated in the BRS v. Uber litigation, and there were denied in favor of the plaintiffs. Our requests were specific to those apex disputes and the resulting depositions. Judge Schulman asked that we exhaust other avenues for securing the information we seek from the apex witnesses whom Uber has sought to protect from being deposed in this case. According to the motion for preliminary approval of the settlement in BRS v. Uber, (ECF No. 477), the following depositions were taken in that case, including the bolded names of those whom we have sought to depose and whom Uber has sought to protect:

1. William Anderson (Uber - Senior eDiscovery Analyst) on August 3, 2022
2. **Brad Rosenthal (Uber - Director of Strategic Operational Initiatives) on May 24, 2023**
3. **Andrew Byrne (Uber - VP, Global Head of Public Policy) on August 9, 2023**
4. Rebecca Messina (Uber - Chief Marketing Officer) on August 15, 2023
5. Glen Ceremony (Uber - Chief Accounting Officer) on August 17, 2023
6. Catherine Gibbons (Uber - Director, Global Head of Platform Safety) on August 25, 2023
7. Barney Harford (Uber - COO) on September 12, 2023
8. Emily Reuter (Uber - VP, Head of Corporate Finance) on September 13, 2023
9. Matt Kallman (Uber - VP of Global Communications) on September 19, 2023
10. Wan Ling Martello (Uber - Director) on November 7, 2023
11. David Trujillo (Uber - Director) on November 9, 2023
12. John Thain (Uber - Director) on November 14, 2023
13. Ursula Burns (Uber - Director) on November 17, 2023
14. **Jill Hazelbaker (Uber - Chief Marketing Officer) on November 30, 2023**
15. Matthew Cohler (Uber - Director) on December 1, 2023
16. Rizvan Dhalla (Morgan Stanley) on December 1, 2023
17. Garrett Camp (Uber - Director) on December 5, 2023
18. Ronald Sugar (Uber - Director) on December 8, 2023
19. Lalit Gurnani (Goldman Sachs) on December 8, 2023
20. Yasir Al-Rumayyan (Uber - Director) on December 12, 2023
21. **Dara Khosrowshahi (Uber - CEO) on December 14, 2023**
22. Arianna Huffington (Uber - Director) on December 14, 2023
23. **Travis Kalanick (Uber - Director) on December 15, 2023**
24. **Gus Fuldner (Uber - SVP of Safety & Core Services) on December 18, 2023**
25. **Ryan Graves (Uber - Director) on December 19, 2023**

26. Nelson Chai (Uber - CFO) on December 20, 2023

Any of the depositions taken in that case could have relevant information, however, and should all be produced. I can think of no valid justification for refusing to produce the requested information, but I am of course willing to hear your side and see what we can work out.

Please let me know when you are available to meet and confer.

&lt;image001.jpg&gt;   **David M. Grimes | Associate Attorney**

**LEVIN SIMES LLP**

1700 Montgomery Street, Suite 250 | San Francisco, CA  94111

Direct (415) 426-3133 | Main (415) 426-3000 | Fax (415) 503-5251

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training,

web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.