Roopal P. Luhana (*Admitted Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*All Cases* | Case No.: 3:23-md-03084-CRB<br><br>Hon. Charles R. Breyer<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO RECONSIDER AND PARTIALLY VACATE ORDER REGARDING MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW-CAUSE ORDERS (ECF NO. 5216)**<br><br>Date: TBD<br>Time: TBD<br>Place: TBD |

**INTRODUCTION**

Uber's opposition confirms the fundamental defect identified in Plaintiffs' motion: the improper burdensome certification regime imposed in Paragraph 2 of the Court's February 10 Order was never requested in Uber's motion and applies to hundreds—if not thousands—of Plaintiffs and their cases that were never named and not the subject of Defendants' motion. Instead, Uber first introduced that relief and these Plaintiffs in its reply brief through a new "Amended" proposed order.

Uber attempts to justify that procedural maneuver by invoking generalized language in its opening motion requesting "other relief." That argument fails as a matter of law. Boilerplate language requesting unspecified relief cannot preserve entirely new remedies affecting thousands of additional Plaintiffs and cases that were never included in their Motion. If it could, the rule prohibiting new arguments in reply briefs would be meaningless.

Uber's opposition also attempts to justify the Order by invoking allegations of "widespread fraud." Yet Uber still does not dispute the central fact underlying Plaintiffs' motion: only one percent of the approximately 3,188 cases pending in this MDL have been alleged to involve fraudulent ride receipts.[1] Even assuming every allegation were true, that percentage reflects isolated instances—not systemic misconduct warranting a burdensome and punitive certification regime on Plaintiffs that have not been accused on any misconduct.

Plaintiffs' counsel share Defendants' concern about maintaining the integrity of these proceedings. Nothing is more critical to the judicial system than honesty and adherence to the rule of law. Plaintiffs' firms do not want fraud on the docket. Fraud harms counsel as well as the Court and the parties because it wastes attorney time, resources, and litigation costs invested in cases that cannot proceed. When issues have been identified, Plaintiffs' firms

---

[1] Uber filed motions alleging that an additional 13 ride receipts are fraudulent, bringing the total to 40. (ECF Nos. 4137, 4933). As of March 2, there are now approximately 3,291 cases filed in the MDL, so Uber has alleged fraudulent receipts have been submitted in approximately 1% of the docket.

have taken corrective action, improved vetting procedures, and not pursued non-viable claims.

The question before the Court is therefore not whether fraud should be addressed—it already is through PTO 31 and through dismissal of cases where fraudulent receipts have been alleged. The question is whether (through Uber's improper Motion) Plaintiffs who have not been accused of wrongdoing should in fact face dismissal of their claims unless they and their counsel can retroactively certify communications that in many cases occurred years ago. Uber offers no evidence that such an extraordinary remedy is appropriate or necessary, and none exists. Paragraph 2 of the Court's February 10 Order is untethered to the limited allegations of misconduct in this MDL and should be vacated.

## **ARGUMENT**

### I. UBER WAIVED ITS REQUEST FOR A GLOBAL CERTIFICATION REGIME BY RAISING IT FOR THE FIRST TIME IN ITS REPLY

Uber's opposition confirms that the improper certification regime imposed in Paragraph 2 did not appear in its motion. Uber's opening motion sought dismissal of identified Plaintiffs who allegedly submitted non-bona-fide receipts and dismissal of certain PTO 31 Plaintiffs who failed to provide required documentation. It did not request the improper and burdensome certification regime that now affects hundreds or thousands of additional cases.

Instead, the certification regime and all the Plaintiffs and respective cases that it affects first appeared in Uber's reply brief and in an amended proposed order submitted with that reply. Uber attempts to avoid this procedural defect by pointing to generalized language in its opening motion requesting whatever additional relief the Court deemed appropriate. That argument cannot withstand scrutiny. Boilerplate language requesting "other relief" the Court deems appropriate cannot preserve entirely new arguments or remedies affecting thousands of additional cases that were never described, briefed, or supported in the opening motion.

If Uber's theory were correct, any party could evade the rule prohibiting new arguments (or new plaintiffs and cases) in reply briefs by including a catch-all clause in its opening motion

and then unveiling an entirely new remedy in reply for plaintiffs that were never named in an initial motion. That is not the law. Courts consistently hold that arguments or requests for relief raised for the first time in a reply brief are waived because the opposing party has no meaningful opportunity to respond. *See, e.g., United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993)("a party may not make new arguments in the reply brief."); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir. 2004)(arguments "not raised by a party in its opening brief are deemed waived.")(citation omitted).

Uber's opposition does not address this issue at all, nor even attempt to distinguish these Ninth Circuit cases. Instead, Uber argues that Plaintiffs should have sought leave to file a sur-reply before the Court ruled. That argument effectively concedes the point. Uber acknowledges that the certification regime was not raised in its motion and appeared only in reply. The waiver doctrine exists precisely to prevent litigants from introducing new relief in reply briefs and then shifting the burden to the opposing party to request permission to respond.[2]

Uber's argument is particularly misplaced in the context of this MDL. Uber introduced improper and sweeping new relief affecting thousands of cases in a reply brief filed while the parties and the Court were preparing for the first bellwether trial. The certification regime was never the subject of meet-and-confer discussions, noticed motion practice, or adversarial briefing. Fundamental fairness requires notice and an opportunity to be heard before such

---

[2] Defendants' cases from other districts arguing that Plaintiffs should have moved to file a sur-reply are factually distinguishable. *See, e.g., Oceania III Condo. Ass'n v. Westchester*, 2023 WL 3943612, at *2 (S.D. Fla. June 12, 2023)(noting that where new evidence is included in reply brief, plaintiff could have provided exhibits and documents refuting that evidence in a sur-reply). And the sole Ninth Circuit case that Defendants cite, *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), actually supports Plaintiffs. In *Kona*, the Ninth Circuit affirmed the District's Court's denial of a motion for reconsideration because the plaintiff there waited more than four months after an *order* from a special master to file their motion for reconsideration. *Id*. Here, Plaintiffs diligently filed their motion approximately two weeks after the Court's Order.

4

sweeping relief is imposed. Plaintiffs were afforded neither. For that reason alone, Uber waived its certification argument and Paragraph 2 should be vacated.

## II.     THE RECORD DOES NOT SUPPORT UBER'S SPECIOUS CLAIMS OF "WIDESPREAD FRAUD"

Uber repeatedly asserts that fraud in this litigation is "widespread." The record demonstrates otherwise. There are approximately 3,188 cases pending in this MDL. Uber's motion identified 27 plaintiffs alleged to have submitted non-bona-fide ride receipts. Even considering additional motions Uber references, the number of cases in which Uber has alleged fraudulent receipts remains approximately one percent of the docket.

One percent is not widespread misconduct. It is the very definition of isolated instances. Uber attempts to inflate the scope of the issue by referencing additional motions involving Plaintiff Fact Sheets or missing documentation. But disputes concerning incomplete documentation occur in virtually every mass-tort litigation involving thousands of plaintiffs. Courts address those issues through structured case-management procedures—precisely what PTO 31 already provides.

Indeed, Uber has already used PTO 31 successfully to seek dismissal of cases that failed to comply with its requirements. That process demonstrates that the existing framework is functioning as intended. Plaintiffs' counsel have no interest in pursing fraudulent claims. Fraud wastes attorney time, litigation costs, and firm resources invested in cases that are not viable. Uber's assertion that the "worst-case outcome" for Plaintiffs' counsel is "a loss of zero" is simply wrong. Each instance of fraud represents a loss of substantial time, money, and professional resources for the firm involved.

Plaintiffs' firms have taken action when issues have been identified. Firms have improved their vetting procedures as Uber has provided additional information regarding receipt irregularities, investigated potentially problematic claims, and withdrawn cases (or attempted to withdraw as counsel) for claims that could not be pursued for a variety of reasons. Uber's suggestion that Plaintiffs' counsel ignored the Court's Orders or tolerated fraud mischaracterizes the record and is simply false.

Uber also continues to speculate that internet advertising or lead generators have produced fraudulent claims. Yet, as always, Uber provides no evidence linking any advertisement to any fraudulent receipt. These assertions are speculation and cannot justify imposing sweeping new burdensome certification requirements on thousands of Plaintiffs who have not been accused of any wrongdoing.

Defendants also attempt to justify the certification regime by asserting that Plaintiffs' counsel showed "no remorse" in responding to the Court's show-cause Orders. That argument is both incorrect and irrelevant. Plaintiffs' counsel cannot "apologize" for alleged misconduct that counsel did not commit. The alleged fraudulent receipts at issue were provided by individual Plaintiffs—not by the law firms representing them. When issues were identified, Plaintiffs' counsel investigated the circumstances, took corrective action where appropriate, and declined to pursue claims that could not ethically proceed. The notion that thousands of unrelated Plaintiffs should face dismissal of their claims because counsel allegedly failed to express sufficient "remorse" for conduct committed by others has no basis in law or equity.

And Uber's assertion that Plaintiffs' firms "ignored" the Court's Orders is equally misplaced. When issues were identified, firms took steps to investigate the circumstances, evaluate the authenticity of the receipts at issue, and take appropriate action where warranted. These are precisely the steps the ethical rules require. Uber's attempt to characterize those responses as "defiance" distorts the record and does not justify imposing a burdensome certification regime on thousands of unrelated cases.

Mass-tort case management tools should be proportional to the problem they are designed to address, and imposing retroactive certification requirements across thousands of cases based on allegations affecting roughly one percent of the docket is not proportional.

### III. THE CERTIFICATION REQUIREMENT IS UNWORKABLE, UNNECESSARY, AND PUNITIVE

Uber repeatedly attempts to minimize the burden imposed by the Court's Order by asserting that it merely requires "a single discussion between Plaintiffs' firms and the Plaintiffs they represent." That characterization is inaccurate and obscures the actual requirements of the

Order.

The issue before the Court is not whether counsel have spoken with their clients. Those conversations necessarily occurred. Plaintiffs could not have filed complaints, completed Plaintiff Fact Sheets, and complied with the MDL's discovery requirements without communicating with counsel. Uber does not—and cannot—dispute that reality.

The Order does not simply require a conversation. It requires Plaintiffs and their counsel to retroactively certify the existence, timing, and substance of communications and internal verification processes that in many cases occurred years ago. That is an entirely different requirement. Uber's opposition never meaningfully addresses this distinction. Instead, Uber repeatedly reframes the Order as though it merely requires counsel to have a conversation with their clients *today*. But the Order demands far more. It requires counsel and Plaintiffs to reconstruct historical communications and intake procedures that occurred years earlier and certify those reconstructed events under penalty of perjury. In many cases, that task will be impossible. Conversations often occurred years ago. Staff members who handled those communications may no longer work at the firm. Documentation reflecting the precise sequence of communications may not exist. These realities are inherent in any MDL involving thousands of Plaintiffs.

The practical consequences are severe. Plaintiffs whose ride receipts are genuine—and whose claims Uber does not dispute—risk dismissal solely because Plaintiffs and counsel cannot reconstruct and certify historical communications that occurred years earlier. That result would detach dismissal from the merits of Plaintiffs' claim and replace it with a procedural trap unrelated to the authenticity of the evidence.

Uber's argument also fails for a more fundamental reason: conversations between Plaintiffs and counsel do not determine whether a ride receipt is genuine. Uber repeatedly argues that Plaintiffs' counsel should detect fraudulent receipts through "basic vetting." But the authenticity of a ride receipt is not determined by what a client tells their lawyer. It is determined by Uber's own proprietary systems. Indeed, Uber is uniquely positioned to know

7

whether a receipt is genuine because the data originates from Uber's platform. Plaintiffs' counsel do not have access to Uber's internal databases and cannot independently verify receipt authenticity. Plaintiffs' counsel vetting process has unquestionably improved, and will continue to improve if Uber provides more information regarding its ride receipts.

Uber's position is internally contradictory. Uber claims that Plaintiffs' counsel should easily detect fraudulent receipts yet simultaneously asserts that Uber itself must spend "thousands of hours" reviewing documents and receipts to identify potential fraud. If detecting fraudulent receipts truly requires extensive manual review by Uber, it cannot plausibly be accomplished through a conversation between counsel and client.

Importantly, PTO 31 already provides a structured mechanism to address receipt verification. Uber has successfully used that process to obtain dismissals where appropriate. Uber provides no evidence that the existing framework is inadequate. The certification regime imposed by Paragraph 2 therefore does not address a demonstrated systemic problem. Instead, it simply imposes sweeping new requirements on thousands of Plaintiffs who have not been accused of wrongdoing.

Finally, these cases involve allegations of sexual assault. Plaintiffs have already provided extensive information through Plaintiff Fact Sheets and other discovery procedures. Requiring additional certifications—particularly where Uber has not challenged the authenticity of their receipts—risks unnecessary re-traumatization of survivors without any demonstrated need. The certification regime imposed by Paragraph 2 is disproportionate, unsupported by the record, and untethered to the limited allegations of misconduct identified in this litigation. It should be vacated.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court vacate paragraph 2 of its February 10, 2026 Order (ECF No. 5216).

Dated: March 11, 2026                                    Respectfully Submitted,

By: */s/ Sarah R. London*

Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: March 11, 2026

By: */s/Roopal Luhana*
Roopal Luhana