RACHEL B. ABRAMS (Cal Bar No. 209316)
ADAM B. WOLF (Cal Bar No. 215914)
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Ph: (415) 766-3544
Fax: (415) 840-9435
Email: rabrams@peifferwolf.com
Email: awolf@peifferwolf.com

TIFFANY R. ELLIS (*Admitted PHV*)
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
15 E. Baltimore Ave.
Detroit, MI 48202
Ph: (313) 210-1559
Fax: (415) 840-9435
Email: tellis@peifferwolf.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*J.H. v. Uber Technologies, Inc., et al; 3:24-cv-03441-CRB* | Case No.: 3:23-md-03084-CRB<br><br>Hon. Charles R. Breyer<br><br>**PEIFFER WOLF'S REPLY IN SUPPORT OF MOTION TO RECONSIDER ORDER REGARDING MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW CAUSE ORDERS** |

## I.  INTRODUCTION

Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf") respectfully submits this

Reply in further support of its Motion to Reconsider the Court's February 10, 2026 Order

requiring certain law firms to submit ride receipt certifications on behalf of their clients in the

Uber MDL. In its opposition, Defendant Uber Technologies, Inc. ("Uber" or "Defendants") argues that Peiffer Wolf's Motion for Reconsideration should be denied due to a procedural technicality, and because Peiffer Wolf failed to meet the requirements for a Motion for Reconsideration. Uber's opposition ignores the Court's inherent discretion to grant Motions to Reconsider. It also ignores its own procedural error in raising a novel issue and request for extraordinary relief in a reply brief that was not included in its original Motion.

Uber's opposition also wrongly asserts that Peiffer Wolf fails to vet its cases and has knowingly submitted fraudulent ride receipts. As stated in the original Motion for Reconsideration, Peiffer Wolf was unaware that either of the ride receipts referenced by Uber were problematic at the time of submission. Peiffer Wolf has never knowingly submitted a fraudulent ride receipt in the MDL, and Uber's accusations that Peiffer Wolf has knowingly committed fraud upon the Court are offensive and unfounded.

## II.    ARGUMENT

### A.  The Court Has Discretion to Grant Motions for Reconsideration.

Uber spends more than half of its opposition arguing that Peiffer Wolf's Motion for Reconsideration should be denied because Peiffer Wolf failed to file a motion for leave before filing its Motion. While the court flagged this procedural deficiency with regard to Leadership's Motion to Reconsider (Docket No. 5291), the Court did not raise this issue for Peiffer Wolf's Motion, and Peiffer Wolf perceived no need or opportunity to file a motion for leave. Further, Peiffer Wolf has filed a Motion to Reconsider without leave of court in the past, and that Motion was granted. At most, this issue turns on a technicality, and the Court has discretion to reach the merits of the motion regardless.

In their Opposition, Uber contends that Plaintiffs have not met the requirements laid out in Civil Local Rule 7-9(b). Under Local Rule 7-9(b)(3), a party seeking leave to file a motion for reconsideration must show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

Both requirements are satisfied here as new facts and law exist that were not considered by the Court at the time the Court issued the February 10, 2026 Order. Uber's original November 21, 2025 Motion did not request this sweeping certification requirement, and the merits of such a requirement were not argued in Plaintiffs' Oppositions. It wasn't until their Reply on December 12, 2025, that Defendants sought to impose the onerous certification requirement. With no meaningful opportunity for Plaintiffs to respond, this Order was granted without considering any arguments by Plaintiffs.

Uber further cites to a number of cases that have held that motions for reconsideration are extraordinary remedies and should be used sparingly. Uber further cites the *Kona* decision which held that motions for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877 at 890. This is an interesting argument considering that Uber did the same thing by waiting until their reply brief to request the sweeping records certification now at issue. As Leadership has pointed out in its Reply, courts have consistently held that arguments or requests for relief raised for the first time in a reply brief are waived because the opposing party has no meaningful opportunity to respond. *See Master Docket No. 5480 at. 4.*

### B. Peiffer Wolf Does Not Have a Pattern of Producing Fraudulent Ride Receipts and has Never Knowingly Submitted a Fraudulent Ride Receipt.

Despite Uber's claims, Peiffer Wolf takes the integrity of its cases very seriously and does not have a pattern of submitting non-bona fide receipts. Even more importantly, Peiffer Wolf has never knowingly submitted a fraudulent ride receipt. In their opposition, Uber brings up a second incident involving a problematic ride receipt in an attempt to show that Peiffer Wolf exhibits a pattern of producing fraudulent ride receipts. As with Plaintiff J.H., the ride receipt produced by Plaintiff A.G. did not appear fraudulent on its face, and Peiffer Wolf relied on Plaintiff A.G.'s assertion that the ride receipt produced was authentic. Peiffer Wolf was not aware that there were any issues with either receipt until Uber flagged them as problematic. In

both cases, as soon as Peiffer Wolf was made aware that there were issues with the ride receipts, it took immediate steps to remedy the issue by contacting the Plaintiffs in an effort to gather more information. Both Plaintiffs failed to respond to Peiffer Wolf's contact attempts, and Peiffer Wolf did the only thing it could do under the circumstances. For Plaintiff J.H, Peiffer Wolf moved to withdraw from her case. *Master Docket No. 2056.* This withdrawal was granted by the Court and her case was dismissed. *Master Docket No. 2221 and Docket No. 10.* In the case of Plaintiff A.G., withdrawal was not an option because she had already appeared on an Order to Show Cause. *Master Docket No.4440.* Accordingly, Peiffer Wolf responded to the Order to Show Cause by confirming that the Plaintiff was unresponsive and had no basis on which to oppose dismissal. *Master Docket No. 4567.*

Because Peiffer Wolf was never able to discuss these problematic ride receipts with the Plaintiffs, it is unknown whether the ride receipts are truly fraudulent or were created with any maligned purpose. Uber's concerns may be well-founded, but Peiffer Wolf must rely on its clients' truthfulness when producing documents in response to discovery requests. Without any evidence on its face that a receipt is fraudulent, Peiffer Wolf has no reason to withhold the documents produced by its clients. Had Peiffer Wolf recognized that these receipts were counterfeit, it would not have submitted them and would have taken any necessary steps to address the issue with the client, Uber, and the Court. As noted in the original motion, Peiffer Wolf's ability to perceive problems with ride receipts that call their authenticity into question has increased as this case has progressed, as has its awareness of this issue broadly. Accordingly, Peiffer Wolf has taken corrective action, improved vetting procedures, and not pursued non-viable claims, as evidenced by no alleged non-bona-fide ride receipts since these 2 isolated cases.

Moreover, all plaintiffs' firms, including Peiffer Wolf, already have an obligation under PTOs 5 and 31 to produce bon-fide ride receipts, and Uber may use these PTOs to seek dismissal for any cases that fail to comply. This framework exists to deal with this exact scenario – plaintiffs who cannot produce sufficient documentation as part of their discovery

obligations are already required to cure their deficiencies or face dismissal. Here, Peiffer Wolf was notified of the problematic ride receipts, attempted to work with the Plaintiffs to cure the issues, and did not oppose dismissal once they were unable to cure. The process is already working as it should. To now require Peiffer Wolf to undertake an onerous and ultimately unworkable certification process, which could place hundreds of cases in jeopardy of dismissal, is inappropriate and grossly disproportionate to the scope of the problem at hand.

**C.  The Certification Process is Onerous, Unnecessary, and Ultimately Unworkable.**

As Leadership has already pointed out in their Reply, the certification process laid out in the Court's February 10, 2026 order is not just onerous, it is wholly unworkable. The Order requires plaintiffs' counsel to retroactively certify the existence and substance of conversations that occurred, in most cases, years ago. Moreover, in some situations, it requires law firms to certify conversations that were had by former employees, which they may not be able to do without violating ethics rules. Even current firm personnel may not specifically recall the exact nature and substance of conversations or other communications it had with a client in the past. Further, re-engaging with plaintiffs with no alleged ride receipt deficiencies can be triggering and cause unnecessary re-traumatization.  Plaintiffs' Counsel will inevitably find themselves having to decide whether to: (1) certify the existence of conversations they did not personally have or cannot accurately recall, (2) certify that no such conversations occurred, without knowing that for sure, or (3) forgo submitting a certification, which would put their cases at risk of dismissal, even when a bona-fide ride receipt has already been produced and substantiated. This process is entirely unworkable.

In addition to being unworkable, the certification requirement is unnecessary and needlessly punitive. All plaintiffs and plaintiffs' firms are already under obligation in accordance with PTO 5 and PTO 31 to provide complete, accurate bona-fide ride receipts or risk dismissal. Requiring certification on top of these already existing obligations will only serve to burden the Court with more motion practice and dismissal of cases that were otherwise already in compliance. This may serve Uber's litigation goals, but these certifications will not,

as Uber suggests, serve as stand-alone proof that the ride receipts being submitted are authentic. Only Uber, using their own platform, can determine that. For example, had this certification requirement existed at the time Peiffer Wolf submitted the ride receipt for Plaintiff A.G., the result would have been the same. The receipt provided by A.G. did not look fraudulent on its face, Peiffer Wolf would have relied on the Plaintiff's representation that the receipt was authentic and submitted it, and Uber would have flagged it as being problematic. Submitting a certification along with that ride receipt would not have changed the outcome.

The certification requirement will not prevent law firms from *unknowingly* submitting non-bona-fide ride receipts. As already stated in the original Motion for Reconsideration, Peiffer Wolf's ability to recognize problematic ride receipts has improved substantially over time. The submission of the two non-bona-fide ride receipts that have been flagged by Uber was not the result of a lack of vetting, or of a desire to commit fraud upon the Court. Peiffer Wolf has always, and will continue, to thoroughly vet all cases and closely review all documents submitted by individual plaintiffs before producing them in discovery and will take the lessons learned from these two instances into consideration when reviewing all future ride receipts. The certification Requirement imposed by the February 10, 2026 Order, however, will not improve the robust vetting process Peiffer Wolf already has in place, but will only serve to require its attorneys to puzzle through how to comply with the Order — or whether they even can — and will put compliant and substantiated cases at risk for dismissal while burdening the Court with unnecessary motion practice.

## III. CONCLUSION

For the foregoing reasons, Peiffer Wolf respectfully requests the Court to vacate the Order as to Peiffer Wolf.


Dated: March 12, 2026                    Respectfully Submitted by:

                                         By: */s/ Rachel B. Abrams*

Rachel B. Abrams (Cal Bar No. 209316)
Adam B. Wolf (Cal Bar No. 215914)
**Peiffer Wolf Carr Kane Conway & Wise**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Ph: 415-766-3544
Fax: (415) 840-9435
Email: rabrams@peifferwolf.com
             awolf@peifferwolf.com

Tiffany R. Ellis (*Admitted PHV*)
**Peiffer Wolf Carr Kane Conway & Wise**
15 E. Baltimore Ave.
Detroit, MI 48202
Ph: (313) 210-1559
Fax: (415) 840-9435
Email: tellis@peifferwolf.com

## FILER'S ATTESTATION

I am the ECF Uber whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: March 12, 2026

By: */s/ Rachel B. Abrams*
Rachel B. Abrams

## CERTIFICATE OF SERVICE

I hereby certify that, on March 12, 2026, I electronically filed the following with the Clerk of the Court using the CM/ECF System, which will send notification of such filing via electronic mail to all counsel of record as maintained in the CM/ECF electronic system.

*/s/ Rachel B. Abrams_____*