# EXHIBIT C

HIGHLY CONFIDENTIAL

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                   Case No. SAN FRANCISCO
 3      -------------------------------
        IN RE:  UBER TECHNOLOGIES, INC.,
 4      PASSENGER SEXUAL ASSAULT
        LITIGATION,
 5
        This Document Relates to:
 6      WHB 832 v. Uber Technologies, Inc.
        et al.
 7      Case No: 3:24-cv-04900
        -------------------------------
 8
 9               ** HIGHLY CONFIDENTIAL **
10             PER TERMS OF THE PROTECTIVE ORDER
11              REMOTE VIDEO DEPOSITION VIA ZOOM
12            Taken on behalf of the Defendants of
13                  █████████████
14                 Raleigh, North Carolina
15                     July 17, 2025
16                      9:04 a.m.
17
18
19      Reported by:  Audra M. Smith, RPR, CRR, FCRR
20      Video by:    John Roberts
21
22
23
24
25        Job No. CS7470285
```

HIGHLY CONFIDENTIAL

Page 25

```
 1         A     It was always -- her mother had
 2    custody, and so the stip -- I think the
 3    stipulation was that  ████████  ███████  be present at
 4    all visitation for both parents.
 5         Q     While you were with Ms. ██████████ did
 6    she ever fail a drug test to your knowledge?
 7         A     Not to my knowledge.
 8         Q     Did Ms. ██████████ ever talk to you about
 9    mental healthcare?
10         A     No.
11         Q     To your knowledge, did Ms. █████████ have
12    trouble sleeping?
13              MR. SHAW:  Object to the form.
14         A     Not to my knowledge.
15    BY MS. POWER:
16         Q     Do you recall what your relationship
17    with Ms. ████████ was like in March of 2019?
18         A     Yes.  We were -- yeah, that was in the
19    beginning, so, yeah, we had a good relationship, I
20    thought.
21         Q     How often did you and Ms. █████████ spend
22    time together in March of 2019?
23         A     All the time.
24         Q     Was Ms. ████████ staying over at your
25    house in March of 2019?
```

HIGHLY CONFIDENTIAL

Page 26

1      A     Yes.

2      Q     What is your understanding of what this

3   litigation is about?

4      A     My understanding is that there was an

5   incident with the driver when she was dropped off

6   at my house.

7      Q     Do you recall Ms. ████     first telling

8   you about that incident?

9      A     I recall her searching the video

10  recording equipment to see the car, to identify

11  the car.

12     Q     When was that?

13     A     I don't know the date.

14     Q     Was it around March of 2019?

15     A     Yes.

16     Q     Other than seeing Ms. ████     searching

17  video records, did Ms. ████     tell you about what

18  happened?

19     A     I can't remember.

20     Q     Sitting here today, what is your

21  understanding of what happened at that incident?

22     A     I don't know.

23     Q     How long were you and Ms. ████

24  together?

25     A     I want to say two years straight, and

HIGHLY CONFIDENTIAL

1     then off and on for a year after that.

2          Q     I understand you lived together during

3     the pandemic restrictions; is that right?

4          A     Yes.

5          Q     So you spent a lot of time together for

6     those months?

7          A     Yes.

8          Q     During that time together, did

9     Ms. ███████ ever bring up this incident that you

10    can recall?

11         A     I can't recall.

12         Q     When you said you were together for two

13    years straight, did that end in about 2021?

14         A     I believe so.

15         Q     Do you recall an incident in which you

16    drove Ms. ███████ to a rehab facility?

17         A     I remember that, yes.

18         Q     Can you tell me about what happened

19    that night?

20         A     That -- that was for drinking alcohol.

21    I had convinced her to go to the facility and

22    checked her in.  And then she left the facility on

23    her own, and I went back to pick her up.  And then

24    leaving from there, we had trouble on the highway

25    where I had to call 911, and they picked her up

HIGHLY CONFIDENTIAL

Page 43

```
 1              A      Ms. ████████

 2              Q      Yes.

 3              A      Probably once a week, yes.

 4              Q      When you were seeing Ms. ██████ once a

 5      week, did you talk to her at all about her

 6      relationship with Ms. ██████?

 7              A      Yes.

 8              Q      What did you talk about?

 9              A      What she was up to at the time.

10              Q      And what was Ms. ██████ up to around

11      2021?

12              MR. SHAW:  Object to the form.

13              A      I'm not sure.

14      BY MS. POWER:

15              Q      Was Ms. ██████ incarcerated in 2021 to

16      your recollection?

17              A      I don't know.

18              Q      Was Ms. ██████ incarcerated for any

19      period of months during your relationship?

20              A      Yes.

21              Q      Do you recall about when that was?

22              A      It was early in -- early in 2020, I

23      believe.  I remember it being cold.

24              Q      Did Ms. ██████ talk to you about any

25      experiences she had in prison?
```

HIGHLY CONFIDENTIAL

Page 44

```
 1            A     I don't remember.
 2            Q     Have you ever spoken with Ms. ████████
 3      about Ms. ████████ Uber ride in March of 2019?
 4            A     No.
 5            Q     Have you ever spoken with ████████
 6      ████████ about Ms. ████████ ████████ Uber ride in
 7      2019?
 8            A     No.
 9            Q     Have you ever spoken with anyone about
10      Ms. ████████ Uber ride in March of 2019?
11            A     No.
12            Q     Do you have any information about the
13      Uber ride in March of 2019 that we have not
14      discussed today?
15            A     No.
16            MR. SHAW:  Object to the form.
17            MS. POWER:  Myles, what's your
18      objection?
19            MR. SHAW:  The objection is -- you want
20      me to go into explain my objection beyond
21      form?  I thought you only wanted it limited
22      to form.
23            MS. POWER:  If you're objecting to
24      form, I'm asking what objection is it?  Is it
25      vague?  Is it compound so I can correct the
```

HIGHLY CONFIDENTIAL

Page 45

```
 1        question?
 2              MR. SHAW:  Okay.  It's vague.
 3    BY MS. POWER:
 4        Q    Mr. ████ do you have any information
 5    about the basis of today's lawsuit as you
 6    understand it that we have not yet discussed
 7    today?
 8        A    No.
 9        Q    Mr. ████ do you have any other
10    information about the impact of the basis of
11    today's lawsuit as you understand it that we have
12    not yet discussed today?
13        A    No.
14              MR. SHAW:  Object to the form.
15    BY MS. POWER:
16        Q    Do you have any other information about
17    this lawsuit that we have not yet discussed today?
18              MR. SHAW:  Object to the form.
19        A    No.
20              MS. POWER:  Nothing further.  Pass the
21        witness.
22              MR. SHAW:  Nothing further on my end.
23        I reserve the right to question at the time
24        of trial.
25              ████ we thank you very much for your
```

HIGHLY CONFIDENTIAL

Page 46

1        time.  We appreciate you being here and taken

2        the time to do this.

3                MS. POWER:  Thanks very much,

4        Mr. ██████

5                THE VIDEOGRAPHER:  We're off the record

6        at 10:09 a.m.  This concludes today's

7        testimony.  The master video files will be

8        retained by Veritext Legal Solutions.

9                (Reserved signature.)

10                (The deposition concluded at 10:09

11        a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 47

```
 1      STATE OF NORTH CAROLINA )

 2      COUNTY OF FORSYTH       )

 3                   REPORTER'S CERTIFICATE

 4            I, Audra Smith, Registered Professional Reporter

 5      in and for the above county and state, do hereby certify

 6      that the deposition of the person hereinbefore named was

 7      taken before me at the time and place hereinbefore set

 8      forth; that the witness was by me first duly sworn to

 9      testify to the truth, the whole truth and nothing but the

10      truth; that thereupon the foregoing questions were asked and

11      the foregoing answers made by the witness which were duly

12      recorded by me by means of stenotype; which is reduced to

13      written form under my direction and supervision, and that

14      this is, to the best of my knowledge and belief, a true and

15      correct transcript.

16            I further certify that I am neither of counsel to

17      either party nor interested in the events of this case.

18            IN WITNESS WHEREOF, I have hereto set my hand this

19      21st day of July, 2025.

20

21

22      Audra Smith, RPR, CRR, FCRR

23      Notary Number:  201329000033

24      Commission Expires:  June 26, 2031

25
```