# EXHIBIT D

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
Case No. 3:23-md-03084-CRB (LJC)

-------------------------------x

IN RE:  UBER TECHNOLOGIES,
INC., PASSENGER SEXUAL
ASSAULT LITIGATION

_____

This Document Relates to:
WHB 832. v. Uber Technologies,
Inc., et al.
Case No: 3:24-cv-04900

_____x

Zoom Video Deposition of ▮▮▮▮▮▮▮▮
(Taken by the Defendants)
Raleigh, North Carolina
Thursday, July 31, 2025

Reported by:   Marisa Munoz-Vourakis -
               RMR, CRR and Notary Public

Job No. CS7470310

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 9

1  oath today, just as you would be if you were testifying
2  in court?
3      A.   Yes.
4      Q.   Okay.  Have you taken any medication or any
5  other substance that you think would impact your
6  ability to remember events during your testimony today?
7      A.   No.
8      Q.   Okay.  And throughout the day, I'll ask you
9  a number of questions asking for your knowledge or your
10 memory of certain events.  It's not meant to be a
11 memory test, and I certainly don't want you to guess or
12 speculate.  If you don't know, I don't know is a
13 perfectly acceptable answer.
14           Some questions that I ask today will
15 probably get into some personal matters, either
16 concerning you or the plaintiff in this case, ▆▆▆▆
17 ▆▆▆▆▆▆▆  My purpose in asking those questions is
18 certainly not to make you uncomfortable or to embarrass
19 anyone.  It's just to try to understand some of the
20 facts and issues that are involved in this lawsuit,
21 okay?
22      A.   Okay.
23      Q.   Do you have any understanding as to what
24 this lawsuit is about?
25      A.   Somewhat, yes.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 10

1    Q.    Okay.  So just in your own words, tell me
2  what you understand this lawsuit to be about?
3    A.    It's supposed to be like a -- some sort
4  of -- it was against the Uber driver for some sexual
5  misconduct of some sort.  That's about all I know.
6    Q.    How did you come to understand that about
7  this lawsuit?  Did somebody tell you that?
8    A.    ▇▇▇▇ had told me.
9    Q.    Okay.  Do you remember when she told you
10  that?
11    A.    No.
12    Q.    And ▇▇▇ is ▇▇▇▇▇▇ the
13  plaintiff in this case, correct?
14    A.    That's correct.
15    Q.    Have you spoken to anyone else about this
16  case?
17    A.    No.
18    Q.    Have you seen a copy of the legal complaint
19  in this lawsuit?
20    A.    No.
21    Q.    Have you seen or spoken to anyone about any
22  testimony provided in this case?
23    A.    No.
24    Q.    Did you have any meetings with anyone to
25  prepare for today's deposition?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 11

```
 1      A.    No.
 2      Q.    Are you currently employed?
 3      A.    Yes.
 4      Q.    Okay.  Where are you employed?
 5      A.    Murphy Motor Co. in Raleigh.
 6      Q.    And how long have you been working there?
 7      A.    I've been working there a few months.
 8      Q.    Did you have a job immediately before that?
 9      A.    I did.
10      Q.    Okay.  Where was that job?
11      A.    It was at Food Lion.  I was a butcher.
12      Q.    Okay.  And how long were you working at
13   Food Lion?
14      A.    Four years.
15      Q.    So that was beginning around 2021 or before
16   that?
17      A.    Yeah, about that time you could say.
18      Q.    Okay.  And do you recall when you first met
19   ████████████ the plaintiff in this case?
20      A.    When I first met her?
21      Q.    Yes.
22      A.    Yeah, to an extent, yeah.  I've known her a
23   long time.
24      Q.    Okay.  Did you grow up together?
25      A.    Yes.
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 16

1   A.   No.
2   Q.   Are you acquainted with any of ▮▮▮▮▮
3   ▮▮▮▮▮ other family members?
4   A.   No.
5   Q.   Do you know whether Ms. ▮▮▮▮▮ has any
6   children?
7   A.   Yes.
8   Q.   Do you know how many children she has?
9   A.   Just one I thought, to my knowledge.
10  Q.   And do you know the child's name?
11  A.   Yeah, ▮▮▮▮▮
12  Q.   Okay.  And are you familiar with who are
13  the caretakers for ▮▮▮▮▮
14       MR. SHAW:  Object to the form.
15  A.   I would assume it's his father, and then
16  ▮▮▮▮▮'s parents as well.
17  Q.   Okay.  Do you know the name of ▮▮▮▮▮'
18  father?
19  A.   No, I don't remember.
20  Q.   Have you ever met ▮▮▮▮▮' father?
21       THE COURT REPORTER:  I'm sorry I
22   didn't hear the answer.
23  A.   No.  I said no, I have not.
24  Q.   As you sit here today, would you say that
25  you're in an exclusive relationship with the plaintiff,

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 17

1  Ms. ▓▓▓▓▓
2      A.   No.
3      Q.   Okay.  You testified earlier today, I
4  believe, that you have some understanding that this
5  lawsuit involves an alleged incident that somehow
6  involved Uber, is that fair?
7      A.   Yes.
8      Q.   Okay.  Do you have any understanding as to
9  when that alleged incident occurred?
10          THE COURT REPORTER:  I'm sorry, I
11      didn't hear an answer again.
12     A.   I'm sorry, it was -- my answer was no.
13     Q.   Do you have any understanding as to whether
14 that incident was within the past year?
15     A.   What I understand, no.
16     Q.   Okay.  Do you have any understanding as to
17 how many years ago the alleged incident may have been?
18     A.   No.
19     Q.   And you testified that no one has discussed
20 that incident with you, other than the plaintiff,
21 Ms. ▓▓▓▓▓ correct?
22     A.   Correct.
23     Q.   Did Ms. ▓▓▓▓▓ say anything to you about
24 the driver of the vehicle that was involved in this
25 incident?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 18

```
 1       A.    No.
 2       Q.    Did Ms. ▇▇▇▇ describe to you any details
 3   of what allegedly happened in the vehicle?
 4       A.    No.
 5             MR. SHAW:  Object to the form.
 6             THE COURT REPORTER:  Mr. ▇▇▇▇  I
 7       just need you to wait for the question to be
 8       asked.  You're kind of overlapping.
 9             THE WITNESS:  I apologize.
10             THE COURT REPORTER:  It's a weird
11       format, I understand.
12             BY MR. SAGALOWSKY:
13       Q.    When did you first become aware that
14   Ms. ▇▇▇▇ was pursuing a lawsuit?
15       A.    I don't remember.
16       Q.    Did she tell you that she was interested in
17   pursuing a lawsuit before she filed the case?
18       A.    I don't remember.
19       Q.    Has Ms. ▇▇▇▇ ever spoken to you about
20   what she hopes to achieve or gain in this lawsuit?
21             MR. SHAW:  Object to the form.
22       A.    No.
23       Q.    Do you know whether Ms. ▇▇▇▇ currently
24   uses any ride sharing applications?
25       A.    No.
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 19

1  Q. No, you don't know; or no, she doesn't?
2  A. No, I don't know.
3  Q. Okay. Thank you. Do you use any ride
4  sharing applications, like Uber or Lyft?
5  A. No. No, sir.
6  Q. Have you ever had the Uber app installed on
7  any of your devices?
8  A. I don't remember. Maybe in the past.
9  Q. Has anyone asked you to provide any written
10 statements in this case?
11 A. No, sir.
12 Q. Have you searched any of your electronic
13 devices or paper files for information that might
14 relate to this case?
15 A. No, sir.
16 Q. Has anyone asked you to search for
17 communications with the plaintiff?
18 A. No, sir.
19 Q. Has anyone asked you to be sure not to
20 delete or destroy communications with the plaintiff
21 about this case?
22 A. No, sir.
23 Q. Has the plaintiff, Ms. ▮▮▮▮▮ at any time
24 spoken to you about any personal health conditions?
25          MR. SAGALOWSKY: Object to the form.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 26

```
 1      Ms. _____'s well-being?
 2              MR. SHAW:  Object to the form.
 3      A.      No.
 4      Q.      No, you haven't observed any?
 5      A.      No.
 6              THE WITNESS:  Excuse me, is it
 7      possible if I could get a charger for this
 8      phone?  It seems like the battery is
 9      shorting out.
10              MR. SAGALOWSKY:  No problem.
11              THE WITNESS:  Give me one moment, I
12      apologize.
13              MR. SAGALOWSKY:  Don't worry.
14              THE VIDEOGRAPHER:  Would you like to
15      go off the record?
16              MR. SAGALOWSKY:  Yes, please.
17              THE VIDEOGRAPHER:  The time on the
18      monitor is approximately 12:35 p.m., and
19      we're off the record.
20              (Recess.)
21              THE VIDEOGRAPHER:  The time on the
22      monitor is approximately 12:38 p.m. eastern
23      standard time, and we're back on the record.
24              You may proceed, sir.
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 27

```
 1              BY MR. SAGALOWSKY:
 2         Q.    Mr.          do you know whether Ms.
 3   has any social media accounts?
 4         A.    No.
 5         Q.    Are you aware of any social media posts by
 6   any person concerning the alleged incidents in this
 7   case?
 8         A.    No, because I'm not on social media.
 9         Q.    Okay.  And I realize it's tedious, but I'll
10   ask the same question with respect to Ms.         's
11   health.
12              Are you aware of any social media posts,
13   public or private by any person concerning
14   Ms.          's physical or mental health?
15         A.    No.
16         Q.    No, you're not aware of any?
17         A.    No, I'm not aware of any.
18         Q.    Okay, Mr.        , I just want to circle
19   back briefly to one point, to make sure I didn't miss
20   something, and I think we may be done.
21              As specifically as you can, please, could
22   you just tell me what Ms.         told you about this
23   lawsuit?
24              MR. SHAW:  Object to the form.
25         A.    As I stated at the beginning, that was
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 28

1  about all I know.
2       Q.   So you understand that this lawsuit
3  involves an alleged incident involving a ride, correct?
4       A.   Correct.
5            MR. SHAW:  Object to the form.
6            BY MR. SAGALOWSKY:
7       Q.   Are you aware of any other specifics that
8  were communicated to you by Ms. ▮▮▮▮▮?
9       A.   No.
10      Q.   And you don't have any other source of
11 information about the incidents involved in this case,
12 is that correct?
13      A.   Correct, sir.
14           MR. SAGALOWSKY:  Okay.  Thank you,
15      Mr. ▮▮▮▮▮   Those are the questions I have
16      for now.
17           I will pass the witness, as we say,
18      and see whether Mr. Shaw has any questions.
19           MR. SHAW:  That's it for me.  I'm
20      reserving remaining time for trial, and I've
21      passed the witness.
22           And thank you for your time,
23      Mr. ▮▮▮▮▮   I appreciate it.
24           THE VIDEOGRAPHER:  This concludes the
25      deposition and testimony of ▮▮▮▮▮▮▮.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 33

1           C E R T I F I C A T E
2       I, Marisa Munoz-Vourakis, Stenographic Reporter, RMR,
3   CRR and Notary Public, certify that on July 31, 2025, in
4   Raleigh, North Carolina, having produced satisfactory
5   evidence of identification, and having been first duly
6   sworn or affirmed by me according to the emergency video
7   notarization requirements contained in G.S. 10B-25, to
8   tell the truth, thereupon testified as set forth in the
9   preceding pages, exclusive of errata sheet and signature
10  page, if required, the examination being reported by me
11  verbatim and reduced to typewritten form by me personally.
12      I further certify that I am neither counsel for,
13  related to, nor employed by any of the parties to this
14  action in which this proceeding was conducted, and
15  further, that I am not a relative or employee of any
16  attorney or counsel employed by the parties thereof, nor
17  financially or otherwise interested in the outcome of the
18  action.
19
20  IN WITNESS WHEREOF, I have hereunto subscribed my name
21  this 1st day of August, 2025.
22

23                      MARISA MUNOZ-VOURAKIS
24  Notary #20032900127
25