1   [Submitting counsel below]

2

3

4                  UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6                    SAN FRANCISCO DIVISION

7

8   **IN RE: UBER TECHNOLOGIES, INC.,**         No. 3:23-md-03084-CRB
    **PASSENGER SEXUAL ASSAULT**
9   **LITIGATION**                              **PLAINTIFF'S NOTICE OF MOTION AND**
                                                **OMNIBUS MOTIONS IN LIMINE**
10  This Document Relates to:
                                                Judge: Honorable Charles R. Breyer
11                                              Date:  April 2, 2026
    *WHB 823 v. Uber Technologies, Inc.*,       Time:  2:00 P.M. PT
12  N.D. Cal. No. 3:24-cv-04900                 Ctrm.:  6-17th Floor
    W.D.N.C. No. 3:25-cv-00737
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 2, 2026, at 2:00 p.m., before the Honorable Charles R. Breyer, Plaintiff will and hereby does, move for an order granting Plaintiff's motions in limine as described herein.

1
2
3

**TABLE OF CONTENTS**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ........................................................................................................ 4

I.    Plaintiff's Motion in Limine No. 1: Exclude Argument or Evidence Relating to Uber's Safety Reports, Safety Measures, the Safety of Uber Rides, Non-Negligent or Pro-Safety Conduct, and its Measures or Commitment to Prevent Sexual Assaults. ................................... 4

II.    Plaintiff's Motion in Limine No. 2: Exclude Argument or Evidence Relating to the Frequency of Safety Issues or Sexual Assault on the Uber Platform, or the Safety of Uber Compared to Other Forms of Transportation. ................................................. 6

III.   Plaintiff's Motion in Limine No. 3: Exclude Argument or Evidence Relating to the Uber Driver's Background Check, Lack of Prior Incidents, Star Ratings, or Feedback from Other Riders. ................................................. 7

IV.   Plaintiff's Motion in Limine No. 4: Exclude Argument or Evidence of Plaintiff's Post-Incident Rideshare Use. ................................................. 7

V.    Plaintiff's Motion in Limine No. 5: Exclude Argument or Evidence that Uber Deactivated the Subject Driver for Legal Reasons or on the Basis of Legal Advice. ................................... 8

VI.   Plaintiff's Motion in Limine No. 6: Exclude Evidence or Argument that Uber Drivers are Independent Contractors or are not Employees. ................................................. 10

VII.  Plaintiff's Motion in Limine No. 7: Juror Anonymity and Pre-Trial and Trial Restriction on Juror Research, Investigation, or Communication by Uber. ................................... 11

VIII. Plaintiff's Motion in Limine No. 8: Exclude Argument or Evidence Regarding Irrelevant and Unduly Prejudicial Aspects of Plaintiff's Personal Life. ................................... 12

    A.   Overview Regarding the Irrelevant and Prejudicial Evidence at Issue. ........................ 12

    B.   Plaintiff's █████████ and ████████ ................................................. 14

    C.   Plaintiff's ████████ ................................................. 15

    D.   Plaintiff's ████████ ................................................. 16

    E.   Dishonesty/Deception ................................................. 18

    F.   Plaintiff ████████ ................................................. 18

    G.   ████████ ................................................. 19

    H.   Plaintiff's ████████ /History ................................................. 20

    I.   Others ████████ ................................................. 20

    J.   ████████ ................................................. 20

    K.   ████ ................................................. 21

CONCLUSION ................................................. 22

1

2

## <u>Table of Authorities</u>

### CASES

*Carroll v. Trump*, 663 F.Supp.3d (S.D.N.Y. 2023) .................................................................. 12
*Chevron Corp. v. Pennzoil Co.*, 974 F.2d (9th Cir. 1992) ..................................................... 10
*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017) ................................. 4
*G.D. by and through S.G. v. Kannapolis City Schools Board of Ed.*, 2024 WL 2832779 (June 4, 2014. M.D.N.C.) ....................................................................................................................... 22
*Hairston v. Atl. Greyhound Corp.*, 18 S.E.2d (N.C. 1942) ................................................... 6
*Jackson v. Stancil*, 116 S.E.2d 817 (N.C. 1960) ................................................................... 11
*Ramachandran v. City of Los Altos*, 2022 WL 316679 (N.D. Cal. Feb. 2, 2022) ................. 22
*Rock River Commc'ns v. Universal Music Grp., Inc.*, 745 F.3d (9th Cir. 2014) ................... 10
*S.M. v. J.K.*, 262 F.3d 914 (9th Cir. 2001) ............................................................................ 17
*Tobeler v. Colvin*, 749 F.3d 830 (9th Cir. 2014) .................................................................... 22
*U.S. v. Brown*, 2018 WL 1903121 (D. Nev. Apr. 19, 2018) .................................................. 22
*U.S. v. Dinkins*, 691 F.3d (4th Cir. 2012) ............................................................................. 12
*U.S. v. Gotti*, 2004 WL 2274712 (S.D.N.Y. Oct. 7, 2004) .................................................... 12
*U.S. v. Heller*, 551 F.3d 1108 (9th Cir. 2009) ...................................................................... 4
*U.S. v. Porter*, 562 F. Supp. 3d 1162 (E.D. Cal. 2022) ....................................................... 17

### OTHER AUTHORITIES

124 Cong. Rec. H11944 (daily ed. Oct. 10, 1978) .................................................................. 17

### RULES

Fed. R. Evid.  412 Advisory Comm. Notes .................................................................... 16, 17
Fed. R. Evid. 401 ................................................................................................................... 3
Fed. R. Evid. 401–402 ........................................................................................................... 2
Fed. R. Evid. 402 ............................................................................................................ 3, 22
Fed. R. Evid. 403 ......................................................................................................... 2, 3, 22
Fed. R. Evid. 404(a) ............................................................................................................... 17
Fed. R. Evid. 404(b)(1) .......................................................................................................... 17
Fed. R. Evid. 412(a) ............................................................................................................... 16
Fed. R. Evid. 412(b)(2) .......................................................................................................... 17
Fed. R. Evid. 412(c) ............................................................................................................... 17

ii

1

2                                     **INTRODUCTION**

3          This case arises from a single incident that occurred during an Uber ride in the early morning

4   hours of March 26, 2019. While Plaintiff was a passenger in an Uber vehicle, the Uber driver

5   reached over and grabbed her inner thigh and asked if he could "keep it with him." Plaintiff

6   immediately exited the vehicle and went inside her residence. The issues for trial are therefore

7   narrow. Under North Carolina law, Plaintiff's sole claim against Uber is based on a common

8   carrier's non-delegable duty to safely transport passengers. The central factual question for the jury

9   will be whether the assault occurred as Plaintiff describes and, if so, the amount of damages.

10         Several of Plaintiff's motions in limine address categories of evidence that Uber relied upon

11  in the Dean case but that are irrelevant to the issues the jury will decide here. Because Plaintiff's

12  claim is based on Uber's non-delegable duty as a common carrier, the case does not turn on Uber's

13  corporate conduct, safety practices, or general record as a transportation platform. Evidence

14  regarding Uber's safety reports, safety features, safety initiatives, partnerships with advocacy

15  organizations, or broader efforts to prevent sexual assault may be relevant in a negligence case, but

16  it has no bearing on the questions the jury will be asked to resolve in this trial. Likewise, statistics

17  concerning the frequency of safety incidents or sexual assault reports on the Uber platform—or

18  comparisons between Uber and other forms of transportation—do not make it more or less likely

19  that the incident at issue occurred.

20         For the same reasons, Uber should not be permitted to introduce evidence concerning the

21  driver's background check, prior ratings, or the absence of prior complaints, nor evidence regarding

22  Plaintiff's post-incident use of rideshare services, nor arguments emphasizing that Uber drivers are

23  independent contractors rather than employees. Each of these categories risks misleading the jury

24  into evaluating Uber's corporate conduct, the driver's past performance, or Plaintiff's later

25  behavior—issues that are not relevant to Plaintiff's sole common carrier claim. Allowing such

26  evidence would improperly shift the jury's focus away from the narrow questions in this case and

27  create a substantial risk of confusion and unfair prejudice under Federal Rule of Evidence 403.

28         Moreover, despite the narrow scope of the issues to be tried, Uber has made clear during

1   discovery that it intends to transform this case into something very different. Rather than focusing
2   on the assault and its consequences, Uber has repeatedly sought to explore wide-ranging aspects of
3   Plaintiff's personal history that have no connection to the assault at issue. For example, Uber
4   deposed Plaintiff, her mother, former friends, and acquaintances at length about deeply personal
5   matters unrelated to the assault. Uber's retained expert psychiatrist likewise devoted substantial
6   portions of her report to cataloging ██████████████████████████████████
7   ████████████████, and other aspects of Plaintiff's personal life that bear no relation
8   whatsoever to the claims or defenses in this case.

9       The evident purpose of this approach is not to prove or disprove whether the assault
10  occurred, but instead to place Plaintiff's character and life history on trial. If permitted, the evidence
11  Uber seeks to introduce would convert a focused trial about an alleged sexual assault during an
12  Uber ride into a broad referendum on Plaintiff's past struggles and personal circumstances. The
13  Federal Rules of Evidence exist precisely to prevent such diversions. Evidence must be relevant to
14  a fact of consequence in the case. Fed. R. Evid. 401–402. And even where evidence has some
15  minimal relevance, it must be excluded if its probative value is substantially outweighed by the
16  danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403.

17      The categories of evidence addressed in these motions in limine illustrate why these rules
18  are necessary. Uber may attempt to introduce evidence regarding Plaintiff's ████████████,
19  ████████████████████████████████████████████████████ and
20  other deeply personal matters. None of these topics has any tendency to prove or disprove whether
21  the Uber driver assaulted Plaintiff on March 26, 2019. Nor do they bear on the garden variety
22  damages Plaintiff is seeking from that assault. But the potential prejudice is obvious. Evidence
23  about ████████████████████████████████████ carries a
24  substantial risk that jurors will judge Plaintiff based on stigma, sympathy, or moral condemnation
25  rather than the facts of the alleged assault.

26      The risk of prejudice is heightened because much of the information Uber seeks to introduce
27  involves events that are remote in time, unproven allegations, or incidents unrelated to the issues
28  the jury will decide. Introducing such evidence would invite the jury to speculate about Plaintiff's

1  character, credibility, or lifestyle instead of focusing on the evidence concerning the assault. Courts
2  consistently exclude this type of evidence because it diverts the jury from the questions it must
3  answer and encourages decisions based on improper considerations.

4      These concerns are particularly acute in a case involving sexual assault. The Federal Rules
5  reflect a strong policy against allowing a victim's unrelated personal history to overshadow the
6  alleged misconduct at issue. Permitting the trial to devolve into a detailed exploration of Plaintiff's
7  past would undermine that policy and risk confusing the jury about the limited questions it must
8  decide.

9      For these reasons, Plaintiff respectfully requests that the Court exclude the categories of
10 irrelevant and unduly prejudicial evidence addressed below. The requested rulings will ensure that
11 the trial remains focused on the issues that matter: whether the assault occurred and the damages
12 that followed. Excluding irrelevant and inflammatory material will promote a fair trial and prevent
13 the proceedings from being diverted into a sideshow concerning aspects of Plaintiff's life that have
14 no bearing on the claims before the Court.

15 ## LEGAL STANDARD

16     Motions in limine are a "procedural mechanism to limit in advance testimony or evidence
17 in a particular area." *U.S. v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial
18 motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the
19 trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

20     Evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency
21 to make a fact more or less probable than it would be without the evidence" and "the fact is of
22 consequence in determining the action." Fed. R. Evid. 401. The Court may exclude relevant
23 evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice,
24 confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
25 cumulative evidence." Fed. R. Evid. 403.

26

27

28

3

## ARGUMENT[1]

I. **Plaintiff's Motion in Limine No. 1: Exclude Argument or Evidence Relating to Uber's Safety Reports, Safety Measures, the Safety of Uber Rides, Non-Negligent or Pro-Safety Conduct, and its Measures or Commitment to Prevent Sexual Assaults.**

Plaintiff's sole claim against Uber in this trial under North Carolina law is that the assault committed by Uber's driver breached Uber's common carrier non-delegable duty to provide safe transportation, giving rise to vicarious liability. As the Court ruled in Pretrial Order No. 28: Order on Defendants' Motion to Dismiss Plaintiffs' Bellwether Complaints (ECF No. 3441), at 22-23:

> "[T]he Court agrees with plaintiffs that '[l]ike California and Illinois (and the majority of states), North Carolina assigns common carriers like Uber a non-delegable duty to transport passengers safely, a duty that gives rise to vicarious liability whether or not the breach was done by an employee at all, let alone by one within the scope of employment.' Opp'n at 28; see also Hairston v. Atl. Greyhound Corp., 18 S.E.2d 166, 170 (N.C. 1942) ("Since the carrier owes a high duty to a passenger to protect him from assault from any source, a malicious or wanton assault committed on a passenger by an employee while on duty, whether within the line of his employment or not, constitutes a breach of duty directly imposing liability.")).

Therefore, there are three main issues to be tried: (1) whether Uber is a common carrier, to the extent this is not resolved through summary judgment; (2) whether the incident happened (*i.e.*, did the Uber driver assault Plaintiff); and (3) if so, what amount of damages are to be awarded. Due to the nature of the claim, Uber's negligence and corporate conduct—good or bad—are not at issue, nor is evidence or argument relating to whether punitive damages should or should not be assessed.

---

[1] Pursuant to the Court's February 17, 2026 Order Granting the Joint Proposed Pretrial Schedule (ECF No. 5249), the Court's rulings on the motions in limine from the Dean case apply in this case, to the extent applicable, which includes, *inter alia*, the Court granting the following: (i) Plaintiff's Motion in Limine No. 1: Exclude Argument or Evidence on the Absence of Criminal Charges, Prosecution, or Conviction of Plaintiff's Uber Driver; (ii) Plaintiff's Motion in Limine No. 7: Exclude Argument or Evidence Referencing Non-Material Amendments to Plaintiff Dean's Plaintiff Fact Sheet; (iii) Plaintiffs' Motion in Limine No. 9: Exclude Argument or Evidence Regarding Contingency Fees, Attorney Advertising, or "Attorney-Driven" Litigation; (iv) Plaintiff's Motion in Limine No. 10: Exclude Argument or Evidence Concerning the Personal Use of Uber by Counsel, Witnesses, or Their Family or Friends; (v) Plaintiff's Motion in Limine No. 14: Exclude Argument or Evidence that Uber has Helped Reduce Drunk Driving Rates; (vi) Plaintiff's Motion in Limine No. 15: Exclude Argument or Evidence that Uber Drivers Are Safer Drivers than the Average Driver; and (vii) Plaintiff's Motion in Limine No. 16: Exclude Argument or Evidence that Uber Drivers Prefer the Independent Contractor Model.

1    The result of this is that substantial evidence, by both Plaintiff and Uber, relating to Uber's conduct

2    (other than as it relates to whether Uber is a common carrier) is irrelevant here.[2]

3          Uber's liability stems not from any alleged wrongdoing on its part, but <u>solely</u> due to its

4    direct or vicarious liability for the actions of the driver, as a result of its non-delegable duty.  The

5    North Carolina Supreme Court's decision in *Hairston v. Atl. Greyhound Corp.,* 18 S.E.2d 166, 169-

6    70 (N.C. 1942), makes this abundantly clear.  Whether a common carrier is "good" or "bad" makes

7    no difference: it remains liable for assaults its drivers commit on passengers.

8          As such, just as Plaintiff cannot introduce evidence or argument that Uber itself was

9    negligent or committed some type of wrongdoing, Uber should be barred from presenting evidence

10   or argument that it was not negligent or committed no wrongdoing, or that it affirmatively had the

11   right corporate priorities or took actions to prevent sexual assaults. So Uber's conduct relating to

12   safety, its safety measures, its commitment to rider safety, or its efforts or commitment to prevent

13   sexual assault are irrelevant.

14         Such irrelevant evidence or argument includes: (1) the issuance of Uber's Safety Reports

15   (which postdated the incident in any event); (2) so-called safety measures Uber has made available

16   such as share my trip, ride check, in-app audio recording, two-way ratings, emergency button, and

17   live ADT agent; (3) Uber's background checks of drivers and the effectiveness or rigorousness of

18   its background checks; (4) Uber's Community Guidelines, safety policies and terms of use; (5) any

19   sexual assault or sexual misconduct education provided to drivers; (6) the safety of Uber rides

20   generally or with respect to the driver at issue in this case; (7) Uber's partnerships with or praise

21   from third party organizations such as RAINN, Raliance, #metoo, NSVRC; (8) Uber's promotion

22   of its commitment to safety; and (9) Uber's corporate attitude towards safety, its commitment to

23   safety or actions to reduce the incidence of sexual assault or misconduct.

24

25

26

27   [2] Uber has concurred that "[g]iven the narrowed scope and dismissal of additional causes of action, there
     will be no punitive damages and the scope of relevant and admissible evidence from both parties will be
28   limited substantially by the contours of this common carrier cause of action."  ECF No. 5264 (Joint
     Submission Regarding Scope and Length of Trial).

1   There is no negligence claim here. In short, no matter how exemplary (or, conversely,

2   negligent) Uber's actions or commitment toward rider safety may be, it bears no relevance to Uber's

3   vicarious liability.

4   Further, even if the evidence had some minimal probative value, any such value is

5   substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading

6   the jury. Fed. R. Evid. 403. Given that the jury will be asked no questions relating to Uber's conduct,

7   allowing such evidence would necessarily be unfairly prejudicial (it would imply a burden to prove

8   negligence or fault by Uber where none exists), and would confuse the issues and mislead the jury

9   (by having them consider whether Uber's conduct was appropriate when in fact its liability stems

10  solely from whether the driver committed the assault). This irrelevant evidence should be excluded.

11  **II.      Plaintiff's Motion in Limine No. 2: Exclude Argument or Evidence Relating to the
12  Frequency of Safety Issues or Sexual Assault on the Uber Platform, or the Safety of
    Uber Compared to Other Forms of Transportation.**

13  In the Dean trial Uber argued among other things that it provides millions of trips per day,

14  more than a billion trips per year, and that 99.9998% do not result in any serious safety report. *See*

15  Ex. 1, attached to 3/13/26 Declaration of Roopal P. Luhana ("Luhana Decl."),[3] Dean Trial Tr. (Day

16  1 AM) 276:2:10. Likewise, Uber has argued that sexual assault on the Uber platform is extremely

17  rare, such as comparing it to the risk of being struck by lightning. *Id.* at 276:11-14. Uber also has

18  argued its safety relative to other forms of transportation, and that the rate of sexual assaults during

19  Uber rides has allegedly declined over certain periods of time.

20  While some of this evidence may arguably be relevant to a negligence claim, given the

21  cause of action and resulting issues in this case (as explained above), any evidence or argument by

22  Uber on the number or rate of safety, sexual assault or misconduct reports, their rarity or decline,

23  or Uber's relative safety, is simply irrelevant. The issue is whether the incident happened as

24  Plaintiff described—for which Uber would therefore bear direct liability—not whether Uber is

25  generally safe, or not negligent, because of a relative lack of or rarity of sexual assault or

26  misconduct reports.

27

28

---

[3] All exhibits are attached to the Luhana Declaration.

To the extent there is any marginal relevance to this evidence (there is none), any probative value would be substantially outweighed by unfair prejudice, confusing the issues, or misleading the jury; again, the jury would be asked to consider evidence that does not bear on the questions they will be asked to decide. Fed. R. Evid. 403.

### III.    Plaintiff's Motion in Limine No. 3: Exclude Argument or Evidence Relating to the Uber Driver's Background Check, Lack of Prior Incidents, Star Ratings, or Feedback from Other Riders.

Uber may argue that the driver in this case had a clear background check; that he had no criminal history; that there was a lack of safety or sexual assault complaints from other riders; that he received "five star" ratings; that he received positive comments from other riders; or that he was provided with sexual misconduct training or Community Guidelines.

Some of this might be fair game in a negligence case. But here, whether Uber had notice or knowledge that the driver did or did not have a prior history of misconduct is irrelevant. Allowing such evidence would have the effect of evading the direct liability that Uber bears, whether or not it was negligent, and instead turn the case into some hybrid negligent hiring or retention case, not at issue here. This would improperly put a burden on Plaintiff to prove something that she does not have to prove under settled North Carolina law.

Allowing Uber to put on such evidence also presents a substantial risk that the jury will consider whether it must find some type of negligence or fault for hiring or retaining a "bad" driver. Or that the driver himself must be someone who has had a criminal history, or prior sexual assault reports, in order for Uber to be liable because it was on notice of a potential danger. Fed. R. Evid. 403. Such evidence should be excluded.

### IV.    Plaintiff's Motion in Limine No. 4: Exclude Argument or Evidence of Plaintiff's Post-Incident Rideshare Use.

Any evidence, argument, or testimony regarding Plaintiff's post-incident use of Uber, Lyft, or other rideshares should be excluded. After the March 2019 incident, Uber's records show that Plaintiff did not take an Uber for over three years and then took 36 Uber rides from July 2022–June 2025. *See* Ex.2 (Compendium of Uber Trip Records for Plaintiff). The claims are substantially different than the Dean case, and such evidence is irrelevant to the issues the jury will decide here.

In the Dean trial, Uber argued that such evidence was relevant because it went to Plaintiff's negligence claims; for example, that Uber was negligent for not adopting safety features, such as women-driver preferred. *See, e.g.,* Dean Pretrial Transcript, Jan. 6, 2026, at 64-65 (ECF No. 4934). But here there is no negligence claim, nor is there a failure to warn claim. And so whether Plaintiff would or wouldn't have used certain safety features had they been available, or whether her continued use of rideshare cuts against a failure to warn claim, is irrelevant.

Uber consequently is left with its argument that such evidence "goes to damages" and is therefore "something that should be explored." *See Id.* at 64. It is not clear how this could be; her garden variety damages result from a discrete incident that happened in 2019, her use of rideshare (years) later is simply not probative on the issue of resulting damages. It is too great a leap to connect Plaintiff's later use of Uber (three years later) to the issue of her damages stemming from the 2019 assault.

Plaintiff's irrelevant use of rideshare services does not speak to whether the assault occurred, the severity of that assault, or her resulting damages. Fed. R. Evid. 401. Allowing such evidence would create a danger of Uber implying or the jury speculating—improperly—that Plaintiff's decision to use a rideshare again indicates exaggeration or falsification of the assault or her injuries. Such insinuations would be misleading and unduly prejudicial under Rule 403.

V.    **Plaintiff's Motion in Limine No. 5: Exclude Argument or Evidence that Uber Deactivated the Subject Driver for Legal Reasons or on the Basis of Legal Advice.**

Uber may argue that it deactivated the subject driver, not because the assault occurred, but out of an abundance of caution based on legal advice. Indeed, Uber's internal records show that ████████████████████████████████████████████████████ UBER-MDL3084-DFS00159967 at 159970, Ex. 3. But Uber redacted the substance of those statements based on asserted attorney-client privilege and work-product protection. Accordingly, the Court should preclude Uber from introducing evidence or argument that it deactivated the driver for "legal reasons" or on the basis of "legal advice."

The driver's deactivation is significant evidence in this case. Uber ████████████████ ████████████████████████████████████████████████████

1                                      *Id.* at UBER-MDL3084-DFS00159968, Ex. 2; *see*

2 *also* Uber's 3rd Supplemental Responses to Plaintiff WHB 832 Special Interrogatories at 21 (Driver

3 "was deactivated on January 28, 2025, for safety reasons, as a result of new information provided

4 to the Responding Party and subsequent investigations."), Ex. 4. That decision reflects Uber's

5 determination, based on its investigation, that the reported conduct warranted the most serious

6 available consequence. The jury is entitled to draw the natural inference: Uber would not have

7 permanently deactivated a driver without evidence supporting the conclusion that the assault

8 occurred.

9          Uber should not be permitted to recharacterize this evidence-based decision as mere legal

10 caution. If Uber tells the jury that the deactivation was for "legal reasons" or at the "direction of

11 counsel," it would reframe the deactivation not as a substantive finding that the assault occurred,

12 but as routine litigation housekeeping. That characterization unfairly diminishes the probative value

13 of Uber's own investigative conclusion and suggests to the jury that the driver was removed as a

14 precautionary or defensive measure rather than because the evidence warranted it. The prejudice to

15 Plaintiff is plain: what should be powerful corroborative evidence that the assault occurred would

16 be neutralized by the suggestion that it was merely a lawyer-driven formality. But "[t]he privilege

17 which protects attorney-client communications may not be used both as a sword and a

18 shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also Rock River*

19 *Commc'ns v. Universal Music Grp., Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) (same). Here, Uber

20 seeks to use privileged legal advice to diminish the evidentiary significance of its own deactivation

21 decision, while preventing Plaintiff from exploring what the investigation actually found, what the

22 true basis for deactivation was, and whether counsel's "direction" was driven by the evidence or

23 by litigation strategy. That is the sword-and-shield problem in its clearest form.

24          This Court confronted the identical dynamic in the Dean trial. After Uber asserted attorney-

25 client privilege to shield legal advice bearing on its decision not to implement a women-rider-

26 preferred safety feature, the Court held that Uber could not then elicit testimony that its witnesses

27 "considered the legal implications" of that decision. As the Court explained: "If you assert the

28 attorney-client privilege, a witness cannot testify that, I considered the legal implications of

whatever I did. . . . [Y]ou can't cross-examine him on the legal implications. And as important as the right to the attorney-client privilege may be, the right to confrontation and cross-examination is also important." Dean Trial Tr. (Day 11 AM) at 2042:13-21, Ex. 1. Just so here. Uber's █████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ UBER-MDL3084-DFS00159967 at 159970, Ex. 2. Uber has redacted the substance of those communications as privileged. Having made that election, Uber cannot introduce evidence or argument recharacterizing its investigative determination as a decision driven by legal advice. Any such evidence should be excluded under Rules 402 and 403.

**VI.    Plaintiff's Motion in Limine No. 6: Exclude Evidence or Argument that Uber Drivers are Independent Contractors or are not Employees.**

Plaintiff moves to exclude any evidence or argument that Uber drivers are independent contractors or are not employees.  As a common carrier, Uber has a non-delegable duty, and so the issue of whether its drivers are independent contractors or employees is irrelevant. Further, allowing such evidence presents a substantial risk of an implication that Uber is not liable for assaults committed by its drivers unless they are employees, when in fact it is. As the Court ruled in Pretrial Order No. 28: "North Carolina assigns common carriers like Uber a non-delegable duty to transport passengers safely, a duty that gives rise to vicarious liability whether or not the breach was done by an employee at all, let alone by one within the scope of employment . . . ." (ECF No. 441), at 22-23 (emphasis added).[4] Such evidence should be excluded.

---

[4] Assuming this issue is not resolved on summary judgment, such evidence also is irrelevant as to whether Uber is a common carrier. *See Jackson v. Stancil*, 116 S.E.2d 817, 824 (N.C. 1960)). A company may be a common carrier even if it lacks a "regular schedule," or a "fixed route." *Jackson*, 116 S.E.2d at 824. Nor does it matter if the carrier offers only "charter" transportation. *Id.* Instead, "[t]he crucial test as to whether one is a common carrier is whether he holds himself out as such, either expressly or by a course of conduct, that he will carry for hire on a uniform tariff all persons applying so long as he has room. The holding out is not a formal matter, but consists of conduct naturally inducing a belief in the minds of the public, ... [including through] advertising [or] solicitation." *Id.* at 825 (internal quotation marks, citations, and alterations omitted).

10

**VII.**    **Plaintiff's Motion in Limine No. 7: Juror Anonymity and Pre-Trial and Trial Restriction on Juror Research, Investigation, or Communication by Uber.**

Plaintiff requests the Court maintain juror anonymity and restrict Uber from accessing juror data and information Uber possesses. Uber should be restricted from accessing juror data and information it possesses—whether a prospective juror or actual juror has an Uber account and their use of it. This information is not public and not equally available to Plaintiff. For the first bellwether trial, "the parties agree[d] that during voir dire and trial, Uber's counsel will never access Uber's company data of any kind concerning potential or selected jurors." (ECF No. 4261 at 7.) Plaintiff requests the Court impose a similar restriction here for Uber to not access juror data it possesses

A district court has discretion to empanel an anonymous jury when: (1) there is strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised absent anonymity; and (2) reasonable safeguards have been adopted to minimize the risk that the accused's rights will be infringed. *See U.S. v. Dinkins*, 691 F.3d 358, 372 (4th Cir. 2012). Courts have also permitted jurors to proceed anonymously in cases to protect them from harassment, unwanted invasions of privacy, and retaliation. *See Carroll v. Trump*, 663 F.Supp.3d 380, 385 (S.D.N.Y. 2023)(holding that "the names, addresses, and places of employment of prospective jurors on the voir dire panel, as well as jurors who ultimately are selected for the petit jury, shall not be revealed")). And juror anonymity will further enhance candor during voir dire by reducing fears of retribution by Uber, a company that may have potential jurors' sensitive information and control over whether and how they can use Uber if they wish to use it. *See U.S. v. Gotti*, 2004 WL 2274712, at *4 (S.D.N.Y. Oct. 7, 2004)("jurors will be more inclined to truthfully answer questions when they do not fear retribution, and such fear will be significantly reduced when their identities are concealed").

As in the Dean case, juror identities should remain anonymous throughout jury selection/voir dire and trial. Their names, addresses, and other personally identifiable information should remain confidential to ensure Uber does not unfairly access juror data from its extensive internal databases and to protect juror privacy during what is expected to be a high-profile case

1   with media coverage. Plaintiff is not accusing Uber of specific juror misconduct.[5] Rather, Plaintiff

2   seeks these restrictions out of an abundance of caution and to ensure fairness to both parties. For

3   these reasons, potential jurors should be precluded from providing a name and signature in the jury

4   questionnaire and questions that would elicit personally identifiable information.

5

6   **VIII.    Plaintiff's Motion in Limine No. 8: Exclude Argument or Evidence Regarding**
        **Irrelevant and Unduly Prejudicial Aspects of Plaintiff's Personal Life.**

7        **A. Overview Regarding the Irrelevant and Prejudicial Evidence at Issue.**

8        The discrete incident at issue was an assault that occurred at 1:53 a.m. on March 26, 2019:

9   Plaintiff was sitting in the front seat during the Uber ride. When the Uber vehicle arrived at

10  Plaintiff's destination, Uber's driver, alone with her in the car in the dark, reached over and grabbed

11  her inner thigh. While grabbing her thigh, the driver asked if he could "keep it with him."

12  Fortunately, Plaintiff was able to immediately exit the car, run inside and lock the door, checking

13  the security camera to make sure he was not following her.  *See* 7/10/2025 Dep. of WHB 823

14  ("WHB Dep.") at 33-34, Ex. 5.

15       Because the issues in this case are narrow, a host of irrelevant and highly prejudicial aspects

16  of Plaintiff's personal life should be excluded. Plaintiff's concern on these issues was confirmed

17  throughout discovery. For example, Uber took the deposition of Plaintiff's former friend that

18  focused almost entirely on irrelevant and damaging aspects of Plaintiff's past. *See* 7/23/25 Dep. of

19  ██████████████ ("A.W.L. Dep."), Ex. 6. Likewise, Uber's retained expert psychiatrist, Dr.

20  Alison Reminick, includes in her report an extensive catalog of irrelevant and unduly prejudicial

21  material of the type described below. Much of the discovery in this case has thus centered not on

22  the assault by Uber's driver, but on extensive questioning of Plaintiff, her mother, and various

23  friends or acquaintances regarding years of Plaintiff's personal history that have no bearing on the

24  claims or defenses at issue.

25

26  _____

27  [5] Although Uber does have a history of surveillance and use of such information. (*See, e.g.*,
    https://www.nytimes.com/2017/03/03/technology/uber-greyball-program-evade-authorities.html;
    https://www.foxnews.com/tech/uber-hacked-and-surveilled-rivals-alleges-ex-manager-in-letter;

28  https://www.buzzfeednews.com/article/johanabhuiyan/uber-is-investigating-its-top-new-york-executive-
    for-privacy; https://www.theguardian.com/technology/2017/nov/28/uber-court-waymo-trade-secrets-trial.)

To provide the Court context, Plaintiff has had a difficult life in many respects, often resulting from her unfortunate history of ███████████████████████████. She also has a history of █████████████. Plaintiff was █████████████ at a very young age and █████████████████████ She reported ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Also stemming from her █████████████, Plaintiff has a significant history █████ ████, many of which were ████████████████, beginning at age sixteen and consisting primarily of █████████████████████████ from December 2022 through April 2024. She was again █████████████ Plaintiff has also been █████████ ████████████████████████ She has been ████████ ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Plaintiff has further experienced a history of █████████, including instances in which her ████████████████████████████████████████████████████.

Given this overview, it is easy to see how this trial could become a sideshow of sheer irrelevance or a referendum on Plaintiff's past, her character, or whether she "deserves" to bring this claim or to recover damages. Uber will likely argue such evidence "goes to damages"[6] or "credibility," but given the context of this case, this evidence is unquestionably irrelevant and unduly prejudicial. Nor is the evidence transported into the realm of admissibility because Uber's

---

[6] Plaintiff has withdrawn expert witness Heleya Rad, Psy.D., who conducted a psychological evaluation of Plaintiff. Plaintiff therefore is not seeking any damages based on any psychological, patient history, evaluation, diagnoses, opinions or conclusions issued by Dr. Rad. As such, any argument by Uber that its evidence is intended to respond to Dr. Rad's observations or opinions is moot. And the mere fact that Dr. Rad (who interviewed the Plaintiff in detail) may have included some of this information in her (now withdrawn) report does not make it relevant.

expert psychiatrist Dr. Reminick wrote it all down in her report.[7] Simply put, any minimal probative value is <u>substantially</u> outweighed by unfair prejudice and confusing the issues. Fed. R. Evid. 403. This evidence should be excluded.

**B. Plaintiff's ████████████ and ████**

Uber may seek to introduce evidence of Plaintiff's ████████████ or that she was ██████████

For example, in her expert report, Uber's expert Dr. Reminick, though the guise of a "psychiatric opinion," included a laundry list of more than twenty ████████ that Plaintiff has faced throughout her life. *See* A. Reminick Expert Report  ("Reminick Report") at 8-9, Ex. 8. Examples include: ████████████████████████████████████████████████████████. *Id.* These, and many of the other items on Dr. Reminick's list (nos. 1-3, 6, 7, 9, 10, 12, 14, 15, and 20), did not result in a ████████████████████ and did not involve ████████████████████. *Id.* Therefore, they should be excluded. *See* Fed. R. Evid. 609. *See, e.g., Smith v. Baltimore City Police Dep.*, 840 F.3d 193, 203 (4th Cir. 2016)("[e]ven if the ████████ possessed a trace of probative value, we find the risk of prejudice from the mention of the ████████ to be 'enormous.' ████████████████████████████████████████████████████████████████████████████████████████████████████████

Uber's list, which it attempts to introduce through its expert and will likely seek to introduce through cross-examination of Plaintiff or other fact witnesses, also includes Plaintiff's ████████████████. *See* Reminick Report at 8–9. The 2013, 2016, and 2018 ████████ should be excluded because they were ████████████ and were ████████████████████ for more than one year. *See* Fed. R. Evid. 609. Plaintiff's 2015 ████████ should likewise be excluded because the ████████████ *Id.*

---

[7] Plaintiff is separately filing a motion to exclude Dr. Reminick's "opinion" that Plaintiff is not credible and has been "known to lie to medical providers (and others) and engage in dishonest conduct." Ex. 7 Reminick Rebuttal Report at p. 1.

14

1   Uber may argue that incidents such as Plaintiff's 2022 ███ should be admissible because

2   Plaintiff was ████████████████████████████████████ But the inquiry does not end there.

3   Because Plaintiff's action against Uber is a civil case, that ████████████████████████████

4   ████████████████████████████████████████—remains subject to

5   the balancing test under Federal Rule of Evidence 403.

6       As evidenced by Dr. Reminick devoting nearly two full pages of her expert report to listing

7   Plaintiff's ██████████—and by Uber's depositions of Plaintiff, her mother, and other

8   acquaintances—Defendants plainly intend to present a side show to the jury. Any probative value

9   of Plaintiff's ██████ (there is none), including her ████████ and resulting

10  ████████, is substantially outweighed by the danger of unfair prejudice, confusing the issues,

11  and misleading the jury. *See* Fed. R. Evid. 403. The evidence risks inviting the jury to evaluate

12  Plaintiff not on the narrow and relevant questions in this case—whether the assault occurred and

13  the damages that followed—but instead on whether Plaintiff is worthy of bringing this lawsuit at

14  all. The ████ at issue do not involve ██████████████████ and have no

15  bearing on whether the alleged assault occurred or on Plaintiff's damages. Most importantly, the

16  fact that Plaintiff has a ████████—including ██████████████████—

17  does not make it any more or less probable that the Uber driver assaulted her on March 26, 2019.

18  *See* Fed. R. Evid. 401.

19      For these reasons, Plaintiff's ██████████ should be excluded. It is irrelevant and

20  threatens to unduly and irreparably prejudice Plaintiff's entire case, which is narrowly tailored to a

21  single cause of action based on a single incident.

22  **C. Plaintiff's ██████████**

23      Plaintiff has struggled with ██████████ throughout her life. For example,

24  she first ████████ at age thirteen. *See* WHB Dep. at 59. She was ████████ at

25  eleven years old. *Id.* at 79. She became ██████████ at age seventeen or eighteen. *Id.* at 73.

26  Her ex-husband pressured her into ██████████ when she was 22. *Id.* at 77, 109. And she

27  ████████████████████. *See* Ex. 9 (FCSO-000092).

28

1          Dr. Reminick repeatedly mentions Plaintiff's ███████████████, including

2    ██████████████████████████████, in her report. *See* Reminick Report at 2,

3    4, 6, 7. Uber spent considerable time deposing Plaintiff (twice), her mother, and other friends or

4    acquaintances on these and the other personal issues (far more than it did covering the incident that

5    this case is about).

6          This evidence is irrelevant because Plaintiff's struggles with ████████████████

7    ██████ have no bearing on whether she was assaulted or her damages stemming from it. The

8    probative value of Plaintiff's struggle with ████████████████████ is <u>substantially</u>

9    <u>outweighed by a danger of unfair prejudice</u>. *See* Fed. R. Evid. 403; *U.S. v. Kizer*, 569 F.2d 504, 506

10   (9th Cir. 1978) ("there is widespread recognition that ██████████ is an issue fraught with

11   potential prejudice[.]"). Likewise, any evidence related to Plaintiff ████████████████ on

12   some occasions are irrelevant for the same reasons; again, she has never been ██████████████

13   ███ *See* WHB Dep. at 75.

14         And Uber cannot rely on evidence of Plaintiff's past ███████████ to speculate that

15   she must have been █████████ at the time of the alleged assault. *See* Fed. R. Evid. 404.

16   Allowing such evidence would invite impermissible character reasoning and encourage the jury to

17   infer conduct on a particular occasion based on prior behavior. Moreover, as noted above, the

18   prejudice inherent in permitting a trial about a single alleged assault during an Uber ride to devolve

19   into a sideshow about Plaintiff's history of ███████████ is overwhelming. This evidence

20   should be excluded.

21       **D. Plaintiff's ██████████**

22         Rule 412 broadly prohibits evidence offered to prove: "that a victim engaged in other sexual

23   behavior." *See* Fed. R. Evid. 412(a). This rule protects sexual assault survivors from

24   embarrassment, bias, and stereotyping that inevitably accompany public disclosure of intimate

25   sexual details. *See* Fed. R. Evid. 412 Advisory Comm. Notes (principal purpose is "to safeguard

26   the alleged victim against the invasion of privacy, potential embarrassment and sexual

27   stereotyping").

28

1    "Sexual behavior" under Rule 412 includes all activities involving physical sexual contact,

2   such as sexual intercourse or touching. *See U.S. v. Porter*, 562 F. Supp. 3d 1162, 1173 (E.D. Cal.

3   2022); Fed. R. Evid. 412 Advisory Comm. Notes. To introduce evidence related to sexual behavior,

4   the proponent must meet a heightened standard showing the "probative value substantially

5   outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid.

6   412(b)(2). The Rule also imposes procedural requirements — a written motion, filed in advance,

7   that specifically describes the evidence and states its intended purpose. Fed. R. Evid. 412(c); *see

8   also S.M. v. J.K.*, 262 F.3d 914, 919 (9th Cir. 2001), amended, 315 F.3d 1058 (9th Cir. 2003)(quoting

9   124 Cong. Rec. H11944 (daily ed. Oct. 10, 1978))("excluding prior instances of sexual assault"

10  serves Rule 412's "principal purpose…to protect rape victims from the degrading and embarrassing

11  disclosure of intimate details about their private lives.").

12    Uber questioned Plaintiff at her deposition about two prior instances of ███████. *See*

13  WHB Dep. at 65-66, 113-119. And Uber questioned Plaintiff again about these past ██████ at a

14  second deposition on March 3, 2026. *See* 3/6/2026 Supplemental Deposition of WHB 823 ("WHB

15  Supp. Dep.") at 51-54, Ex. 10. If Uber intends to offer such evidence, it must comply with Rule

16  412(c)'s procedural requirements of filing a motion that details the evidence and the purposes for

17  its introduction. It has not done so.

18    To the extent Uber attempts to offer such evidence outside of Rule 412, such an attempt

19  fails scrutiny under Rule 403 and Rule 404.[8] The only foreseeable effect of the evidence is to

20  embarrass Plaintiff, trigger improper juror bias, and divert the jury to inflammatory, irrelevant, and

21  confusing issues. This applies to any evidence relating to Plaintiff's ██████ as well. *See

22  Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998) ("[i]nforming the jury that [plaintiff]

23  had had an ██████ present[s] the danger of provoking the fierce emotional reaction that is

24  engendered in many people when the subject of ██████ surfaces in any manner.").

25

26  ────────────
    [8] Fed. R. Evid. 404 states "[e]vidence of a person's character or character trait is not admissible to prove
    that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid.

27  404(a). Further, evidence of "any other crime, wrong, or act is not admissible to prove a person's character
    in order to show that on a particular occasion the person acted in accordance with the character." Fed. R.

28  Evid. 404(b)(1).

1       Based on the above, any evidence related to Plaintiff's past instances of ▇▇▇▇▇▇

2 ▇▇▇▇▇▇ should be excluded.

3     **E. Dishonesty/Deception**

4       Any irrelevant evidence of Plaintiff's allegedly dishonest and deceptive behavior should

5 likewise be excluded.

6       In her rebuttal report, Dr. Reminick claims ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

7 ▇▇▇▇▇▇▇▇▇▇ *See* A. Reminick Rebuttal Report at 2, 6, 10, Ex. 7.[9] For example,

8 Reminick cites to an incident where ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

9 ▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 6. She also accuses Plaintiff of being a liar

10 because ▇▇▇▇▇▇▇▇ (Plaintiff's ex-friend who despises Plaintiff) said that she doesn't

11 recall Plaintiff telling her about the assault even though Plaintiff is certain that she did. *Id.*

12       Uber will undoubtedly attempt to use such information to create the impression that Plaintiff

13 is a chronic liar. It invites the jury to speculate that Plaintiff must be lying about the assault by the

14 Uber driver if, for example, she previously misrepresented the reason for having a ▇▇▇▇▇ or if a

15 former friend does not recall Plaintiff telling her about the assault. Introducing alleged prior "lies"

16 for this purpose violates Rule 404 because it seeks to show that Plaintiff acted in conformity with

17 a purported character for dishonesty when she reported the assault by the Uber driver. *See* Fed. R.

18 Evid. 404. In addition, the probative value of such alleged "lies" is substantially outweighed by the

19 danger of unfair prejudice. *See* Fed. R. Evid. 403. Uber should not be permitted to rely on isolated,

20 uncorroborated statements in medical records or similar materials to invite the jury to decide the

21 case on an emotional or character-based basis rather than on the relevant evidence concerning the

22 actual assault at issue. *See* Fed. R. Evid. 403 advisory committee's notes.

23     **F. Plaintiff** ▇▇▇▇▇▇▇▇

24       Plaintiff ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* WHB Dep.

25 at 147. Uber questioned her about the ▇▇▇▇▇▇▇ at both of her depositions. *Id.* at 151-

26 153; *see also* WHB Supp. Dep. at 41, 42, 57, 71. Uber also questioned Plaintiff's mother, ex-

27 boyfriends, and former friend about this ▇▇▇▇▇▇. *See* 8/7/2025 Deposition of ▇▇▇▇

28

---

[9] Again, Plaintiff is filing a motion to exclude Reminick from offering these "expert opinions."

1       ███ at 31-32, 40, 52, Ex. 11; A.W.L. Dep at 22, 52; 7/31/2025 Deposition of ███

2       at 24, Ex. 12; 7/17/2025 Deposition of ███ at 24-25, Ex. 13.

3            Plaintiff ███ in 2018 has absolutely no probative value towards

4 whether her Uber driver assaulted her on March 26, 2019, her damages, or whether Uber is a

5 common carrier. This is not only irrelevant but could be used as a weapon to inflame the jury by

6 characterizing Plaintiff as an irresponsible and careless person.

7       **G.** ███

8            Evidence relating to ███ that Plaintiff has experienced

9 throughout her life should be excluded.

10           Plaintiff was ███ when she was nineteen

11 years old. *See* WHB Dep. at 66-72. Uber questioned Plaintiff about this incident in great detail

12 during her deposition. *Id.* She was even asked about the size of the ███. *Id.* at 69.

13           And Plaintiff has suffered other ███ and also been involved in other unrelated ███

14 in the past. When Plaintiff was seventeen years old, she was ███. *See* WHB Dep.

15 at 66–72. She was questioned about this incident in detail during her deposition. *Id.* at 63–65. While

16 ███ Plaintiff was involved in ███. *Id.* at 140–144. She also

17 allegedly ███ with her friend's sister—also while she was ███. Ex. 14 (FCSO-

18 000081). There was an incident where she allegedly ███.

19 Ex. 15 (FCSO-000089). And there was an incident where she ███ with her

20 grandfather. *See* Ex. 16 (FCSO-000084).

21           These incidents of ███ are entirely irrelevant and fail the

22 threshold test of Federal Rule of Evidence 401. None of these events have any tendency to make it

23 more or less probable that Plaintiff was assaulted by her Uber driver on March 26, 2019. *See* Fed.

24 R. Evid. 401. Nor are these unrelated incidents relevant to Plaintiff's damages. Even assuming

25 some minimal or tangential relevance, any probative value would be substantially outweighed by

26 the danger of unfair prejudice, confusing the issues, and misleading the jury, and the evidence

27 should therefore be excluded under Federal Rule of Evidence 403.

28

1   **H.  Plaintiff's** ▮▮▮▮▮▮▮**/History**

2          Uber may seek to introduce evidence that Plaintiff has a history of two ▮▮▮▮▮▮▮,

3   one of which was after ▮▮▮▮▮▮▮▮▮▮▮ at age 15, and the other

4   when she was ▮▮▮▮▮▮. *See* Reminick Report at 4, 10-11. In Dr. Reminick's report,

5   she discusses Plaintiff's previous ▮▮▮▮▮▮▮▮. *Id.*

6          Evidence of Plaintiff's past ▮▮▮▮▮▮▮▮ has no tendency to make

7   it more or less probable that Plaintiff was assaulted by her Uber driver on March 26, 2019. *See* Fed.

8   R. Evid. 401. Nor are such incidents relevant to the damages at issue in this case. Even if the Court

9   were to find some marginal relevance, the introduction of evidence concerning ▮▮▮▮▮▮▮

10  would be highly prejudicial, and any probative value would be substantially outweighed by the

11  danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403.

12  **I.  Other**▮▮▮▮▮▮▮

13         When Plaintiff was fifteen years old, her best friend ▮▮▮▮▮▮. *See* WHB Dep. at

14  60-61. There is also evidence in Plaintiff's medical records that her grandfather ▮▮▮▮▮▮.

15  *See* Ex. 17 (OVBHS-000001). Plaintiff's friend's ▮▮▮▮ and her grandfather's ▮▮▮▮▮ are

16  irrelevant because they have no relevance to damages from an assault in an Uber car and no

17  tendency to prove or disprove that the Uber assault happened. *See* Fed. R. Evid. 401. This evidence

18  should be excluded for the same reasons as Plaintiff's own ▮▮▮▮▮▮—any probative value

19  is substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403.

20  **J.** ▮▮▮▮▮▮

21         Uber may seek to introduce evidence that Plaintiff was "diagnosed" with ▮▮▮▮▮▮

22  ▮▮▮▮▮▮. While Plaintiff was ▮▮▮▮, she was treated by Dr. ▮▮▮▮▮ who ruled out

23  ▮▮▮▮▮. *See* 8/29/2025 Dep. of ▮▮▮▮▮ at 24-25, Ex.18. When asked what that meant,

24  Dr. ▮▮ said it meant she had a "high suspicion" that ▮▮▮▮▮▮ was present in the Plaintiff.

25  *Id.* at 25. Ultimately, Dr. ▮▮▮ was unable to reach a conclusion as to whether Plaintiff had ▮▮▮

26  ▮▮. *Id.*

27         Evidence of Plaintiff's ▮▮▮▮▮▮ "diagnosis" should be excluded because she has

28  not been diagnosed with ▮▮▮▮▮▮. But even if she had been so diagnosed, such evidence

20

1   should still be excluded as irrelevant and unduly prejudice. *See* Fed. R. Evid. 402 and 403; *see* also

2   *U.S. v. Brown*, 2018 WL 1903121, at *3 (D. Nev. Apr. 19, 2018)("[C]ertain stigmas attach to any

3   mental illness labeling," making "the low probative value of layperson testimony regarding a

4   mental illness evaluation [] substantially outweighed by [] unfair prejudice … under Rule 403.").

5   This is especially true because Plaintiff herself has repeatedly explained that she has not been

6   diagnosed with ███████████ *See* WHB Dep. at 128, 129, 144, 154-156, 159, 160. Any such

7   evidence should be excluded.

8   **K.** ███████

9       Plaintiff moves to exclude any evidence, testimony, or argument related to Plaintiff's

10   speculation regarding undiagnosed ████████████████ from the subject

11   incident. Plaintiff speculated at her deposition that the incident caused her to develop ████. *See*

12   WHB Dep. at 53-54; 117.

13       Plaintiff is only seeking garden variety emotional distress damages. Plaintiff's speculation

14   regarding ████ is certainly not admissible to prove or suggest Plaintiff actually has ████ from

15   this incident. Plaintiff has never been diagnosed with this condition and no qualified medical expert

16   has opined that she has it. Plaintiff's speculation is no substitute for an actual diagnosis or expert

17   opinion.

18       Fed. R. Evid. 701 limits lay testimony to that which is (1) "rationally based on the witness's

19   perception," (2) "helpful to clearly understanding the witness's testimony or to determining a fact

20   in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the

21   scope of Rule 702." Courts consistently hold that medical diagnoses fall outside the scope of Rule

22   701 because they require expert testimony and are an improper subject for lay witnesses. *See G.D.*

23   *by and through S.G. v. Kannapolis City Schools Board of Ed*., 2024 WL 2832779, at *n.10 (June

24   4, 2014. M.D.N.C.)("S.G. also testified that G.D. was diagnosed with disassociation disorder, []

25   but there is no evidence of such medical diagnosis in the record. A lay witness may not testify about

26   such specialized knowledge [].");  *Ramachandran v. City of Los Altos*, 2022 WL 316679, at *5

27   (N.D. Cal. Feb. 2, 2022)("[plaintiff] and other lay witnesses also may not testify regarding any

28   diagnoses he has received" because "[l]ay witness testimony is incompetent when it consists of a

1   medical diagnosis, because medical diagnoses are beyond the competence of lay witnesses to

2   make")(quoting *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014)).

3           Absent any competent evidence that Plaintiff was actually diagnosed with ████, Uber

4   should be precluded from referencing it at all. Such references would only invite the jury to

5   speculate that Plaintiff might have this disorder, absent any proper basis for doing so. Whatever

6   probative value Plaintiff's testimony on this point might have (and there is none) is far outweighed

7   by the unfair prejudice and confusion it would cause. *See* Fed. R. Evid. 402 and 403; *see also U.S.*

8   *v. Brown*, 2018 WL 1903121, at *3 (D. Nev. Apr. 19, 2018)("[C]ertain stigmas attach to any mental

9   illness labeling," making "the low probative value of layperson testimony regarding a mental illness

10  evaluation [] substantially outweighed by [] unfair prejudice … under Rule 403.").

11                                    <u>CONCLUSION</u>

12          For the reasons stated above, Plaintiff respectfully requests that the Court grant Plaintiff's

13  motions in limine as described herein.

14      Dated: March 13, 2026                        Respectfully Submitted,

15                                                   By: */s/ Sarah R. London*
16                                                   Sarah R. London (SBN 267093)
                                                     **GIRARD SHARP LLP**
17                                                   601 California St., Suite 1400
                                                     San Francisco, CA 94108
18                                                   Telephone: (415) 981-4800

19                                                   By: */s/ Rachel B. Abrams*
20                                                   Rachel B. Abrams (SBN 209316)

21                                                   **PEIFFER WOLF CARR KANE CONWAY**
                                                     **& WISE, LLP**
22                                                   555 Montgomery Street, Suite 820
23                                                   San Francisco, CA 94111
                                                     Telephone: (415) 426-5641
24                                                   Facsimile: (415) 840-9435
                                                     rabrams@peifferwolf.com
25
                                                     By: */s/ Roopal P. Luhana*
26                                                   Roopal P. Luhana
27
                                                     **CHAFFIN LUHANA LLP**
28                                                   600 Third Avenue, 12th Floor

1    New York, NY 10016
     Telephone: (888) 480-1123
2    Facsimile: (888) 499-1123
3    luhana@chaffinluhana.com

4    *Co-Lead Counsel for Plaintiffs*

5    By: */s/ Sejal K. Brahmbhatt*
     Sejal K. Brahmbhatt (pro hac vice)
6    John Eddie Williams, Jr. (pro hac vice)
7    John Boundas (pro hac vice)
     Brian Abramson (pro hac vice)
8    Margret Lecocke (pro hac vice)
     Walt Cubberly (SBN 325163)
9    Batami Baskin (pro hac vice)
     Myles Shaw (pro hac vice)
10   Joseph C. Melugin (SBN 279439)
11   Stasja Drecun (pro hac vice)
     **WILLIAMS HART & BOUNDAS LLP**
12   8441 Gulf Freeway, Suite 600
     Houston, TX 77017-5051
13   Telephone: (713) 230-2227
     Facsimile: (713) 643-6226
14   sbrahmbhatt@whlaw.com
15   jwilliams@whlaw.com
     jboundas@whlaw.com
16   babramson@whlaw.com
     mlecocke@whlaw.com
17   wcubberly@whlaw.com
     bbaskin@whlaw.com
18   mshaw@whlaw.com
19   jmelugin@whlaw.com
     sdrecun@whlaw.com
20
21   *Counsel for Plaintiff WHB 823*

22

23

24

25

26

27

28

23

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated:  March 13, 2026                              By:    */s/ Roopal P. Luhana*
                                                                  Roopal P. Luhana