[*Submitting counsel below*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To: | Judge:        Hon. Charles R. Breyer<br>Courtroom:  6 – 17  Floor (videoconference)<br>Date:          March 20, 2026<br>Time:         12:00 p.m. |
| ALL ACTIONS | |

**JOINT CASE MANAGEMENT STATEMENT**

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Uber" or "Defendants"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for March 20, 2026.

**Proposed Agenda**

    I.    **Status of Case Filings**

    II.    **General Discovery Updates**

    III.    **Proposed Trial Schedule for Next Wave 1 Bellwether Case**

    IV.    **Agreement to Meet and Confer About PTO Topics**

    V.    **WHB 823 Trial**

    VI.    **Trial Availability of Driver**

    VII.    **Settlement / Mediation**

    VIII.    **Next Case Management Conference**

**I.    STATUS OF CASE FILINGS**

    **A.    Number of MDL Case Filings**

As of March 17, 2026, there are 2,946 active cases in this MDL, with approximately 400 new filings since the last case management conference. There have additionally been approximately 315 dismissals.

    **B.    Pending Motions to Dismiss/Motions to Reconsider Dismissals**

There are 228 plaintiffs subject to pending dispositive motions pursuant to PTO 5, 10 or 31:

- On December 5, 2025, Defendants filed a Notice of Motion and Motion Regarding Fraudulent Plaintiff Fact Sheets. ECF 4580. On December 19, 2025, Plaintiffs filed their oppositions at ECF Nos. 4742, 4750, and 4751. Defendants filed their reply on December 27, 2025, at ECF 4802. On February 6, the clerk issued a notice vacating Motion to Compel and Motions to Dismiss, including ECF 4580, and determined that the motion will be determined on the briefs.

- On February 19, 2026, Defendants filed a Motion to Dismiss Cases for Failure to Comply with Amended PTO 10, with a Motion to Dismiss Hearing set for March 27, 2026. ECF 5279. On March 5, 2026, the Parties stipulated to an extended schedule for response and reply briefs.

ECF 5409. Plaintiffs filed their response briefs at ECF Nos. 5412, 5418, 5420, 5452, 5457, 5459, and 5461. Defendants filed their reply at ECF 5533.

- On February 23, 2026, Defendants filed a Motion to Convert Order of Dismissal Without Prejudice to Order of Dismissal with Prejudice, with a Motion Hearing set for March 27, 2026. ECF 5287. On March 9, 2026, Plaintiff filed her response. ECF 5460. On March 16, 2026, Defendants filed their reply. ECF 5534.

- On March 4, 2026, Defendants filed a Motion to Dismiss Cases for Failure to Comply with Amended PTO 10, with a Motion to Dismiss Hearing set for May 8, 2026. ECF 5382. Plaintiffs filed their oppositions at ECF Nos. 5416, 5549, and 5552. Replies are due by March 25, 2026.

- On March 11, 2026, Defendants filed a Motion for (1) Entry of an Order to Show Cause Why Certain Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed with Prejudice and (2) Allowing Depositions of Three Plaintiffs Referenced Herein. ECF 5483. Responses are due by March 25, 2026, and replies are due by April 1, 2026.

- On March 12, 2026, Defendants filed a Motion to Enforce the Court's Prior Orders on Uber's Motions to Dismiss Cases for Failure to Comply with Court Orders, with a Motion Hearing set for May 8, 2026. ECF 5487. Responses are due by March 26, 2026, and replies are due by April 2, 2026.

There are 33 plaintiffs who have filed motions to reconsider dismissal orders.

### C.    Status of JCCP

Approximately 776 cases are pending in the JCCP. The next trial has been set for May 4, 2026.

## II.    GENERAL DISCOVERY UPDATES

The parties appeared before Judge Cisneros for a discovery status conference on March 5, 2026. A joint statement on the status of discovery was filed in advance of the conference at ECF 5288.

Among notable developments, Judge Cisneros set "backstop" deadlines for the Parties to raise lingering case-specific discovery issues as March 13, 2026 for WHB 823 and May 22, 2026 for the remaining Wave 1 bellwether cases. ECF 5450.

## III.    PROPOSED TRIAL SCHEDULE FOR NEXT WAVE 1 BELLWETHER CASE

The Parties submit their proposals for the remaining trial schedules for Wave 1 bellwether cases below.

### A.    Plaintiffs' Position

**The next bellwether trial should be a California case in September 2026**. Plaintiffs propose that, after conclusion of the WHB 823 trial, the next trial be a California trial in September 2026. It makes sense to try a California case after seeing results in Arizona (*Dean*) and North Carolina (*WHB*

*823*). And it makes sense to give the parties more time to prepare a California case, given that those two bellwethers (*B.L.* and *A.R.*) involve the largest number of claims. Plaintiffs will benefit from time to consider streamlining the cases to emphasize priority claims, and both sides will benefit from additional time to evaluate the scope of fact and expert presentation (particularly given the large number of Uber witnesses who will be within the Court's subpoena power).

**The Court should consolidate *B.L.* and *A.R.* for trial.** Plaintiffs propose the Court should order the next trial in this MDL be a consolidated trial of the B.L. and A.R. cases in San Francisco, California in September 2026 or as soon as is convenient for the Court. Plaintiffs respectfully seek leave to request partial reconsideration of the Court's previous denial of Plaintiffs' request for consolidated bellwether trials. ECF 2685, Pretrial Order No. 24. Should the Court prefer formal briefing, Plaintiffs will file a Motion for Leave to Reconsider Bellwether Trial Consolidation under Civil L.R. 7-9.

As this Court has explained: "courts' managerial power is especially strong and flexible in matters of consolidation." PTO 15 (ECF 543) at 21 (internal quotation marks omitted). Where "actions before the court involve a common question of law or fact, the court may ... join for hearing or trial any or all matters at issue in the actions." Fed. R. Civ. P. 42(a)(1). Consolidation "is within the broad discretion of the district court." *Schlaegel v. Palo Alto Networks Inc*., 2024 WL 3747410, at *2 (N.D. Cal. Aug. 9, 2024) (citation omitted). In "determining whether consolidation is appropriate, a court should weigh the interest of judicial convenience against the potential for delay, confusion, and prejudice." *Schlaegel*, 2024 WL 3747410, at *2 (internal quotation marks omitted).

Trial of these two cases will be very similar. B.L. and A.R. plead largely the same claims under California law: negligence; common carrier; respondeat superior; apparent agency; ratification; and strict products liability. A.R. also pleads a fraud claim.

There is significant factual overlap as well, meaning both cases will involve the same experts and same fact witnesses (many of whom are, unlike in Arizona, available to testify live) and likely many of the same company documents (including those admitted at the *Dean* trial).

**B.L.** B.L. was sexually assaulted on August 12, 2022, in San Jose, California. She called an Uber at 3:30 A.M. when she was emotional and intoxicated. The driver groped her during the ride and then, when the vehicle reached the destination, raped her in the back of the car. Uber paired the ride despite multiple known risk factors.

**A.R.** A.R. was sexually assaulted on August 10, 2023, in San Francisco County, California. She called the ride at 12:41 A.M. from an area with bars and restaurants. Mid-way through the ride, the driver indicated on his app that the ride had ended, pulled over, and forcibly kissed A.R. on the lips twice. Uber barely investigated and did not disclose to A.R. a previous rider had complained of "rapist" in reference to the driver. Uber also disregarded the driver's lengthy criminal record. Uber paired the ride despite multiple risk factors.

Consolidation of the B.L. and A.R. trials will advance efficient resolution of these cases without causing delay, confusion, or prejudice. Many Uber witnesses are available to testify live in San Francisco. Consolidation will ensure they need only testify once, not twice. Consolidation will also allow experts to testify once, not twice, saving the parties substantial resources. At this stage in the proceedings, there is little to be gained from repeated and duplicative presentation of the same or similar evidence and much cost and burden on the parties, the witnesses, and the Court. There is no reason to think the jury, properly instructed, cannot evaluate each case on its own merits (as many other MDL juries deciding consolidated trials have done). *See* ECF 2685 at 7 (identifying previous MDLs that consolidated bellwethers for trial).

**Trial Time**. Should the Court consolidate the B.L. and A.R. trials, Plaintiffs respectfully request 70 hours of trial time, which is warranted to ensure sufficient time for each individual case. Plaintiffs respectfully request the same 60-40 time split ordered for the *Dean* case apply to this trial as well.

**B.      Uber's Position**

This Court has already held, based on full briefing by the parties, that consolidation would "impair the effectiveness of the bellwether process." PTO 24 (ECF 2775, Apr. 14, 2025). Plaintiffs

now essentially seek reconsideration of that decision by way of a case management statement, but the Court's ruling was proper and should not be revisited.

As Uber explained in its prior briefing on this topic (incorporated herein by reference), the goal of bellwether trials is to produce informative results that help the parties assess the strengths of their claims and defenses—and the value, if any, of different types of cases. By contrast, studies have shown that multi-plaintiff cases are far more likely to result in plaintiff verdicts and inflated damages awards that neither promote nor inform settlement.[1] This is so for several reasons. First, multi-plaintiff trials are associated with juror confusion regarding which evidence pertains to which case. Second, in multi-plaintiff trials, the jury may be swayed by sympathy for a particular plaintiff (or particular aspects of individual plaintiffs' cases) and hold defendants liable to all plaintiffs based on factors that do not apply across the board. And third, the cumulative impact of having multiple plaintiffs present their cases to one jury is that jurors will draw inferences against the defendant based on the number of plaintiffs in the case. For this reason, judges considering requests to hold consolidated bellwether trials have written that "courts should proceed with extreme caution in consolidating claims." *In re Levaquin Prods. Liab. Litig.*, No. 08-1943 (JRT), 2009 WL 5030772, at *3 (D. Minn. Dec. 14, 2009); *see also, e.g.*, *In re Injectafer Prods. Liab. Litig.*, No. 19-276, 2021 WL 3145729, at *1 (E.D. Pa. July 26, 2021) (explaining that separate bellwether trials are necessary to "define 'the exact factual and legal contours' of the claims and defenses . . . and [to] allow the parties to better assess the value and strength of the remaining matters") (quoting *In re Levaquin*, 2009 WL 5030772, at *3); *Crabtree v. Livanova, PLC*, No. 18-4588, 2022 WL 19517407, at *4 (E.D. La. Mar. 30, 2022) (same).

These concerns are especially acute in trials involving sexual assault, which will already be highly emotional for jurors, because consolidating cases will falsely suggest to jurors that sexual assaults are common in rides associated with the Uber platform, when they are, in fact, exceedingly rare. Frightening jurors in this manner would not yield informative verdicts. Combining cases would

---

[1]     *See, e.g.*, Irwin A. Horowitz & Kenneth S. Bordens, *The Consolidation of Plaintiffs: The Effects of Number of Plaintiffs on Jurors' Liability Decisions, Damage Awards, and Cognitive Processing of Evidence*, 85 J. Applied Psychol. 909, 909, 916 (2000) ("defendant[s] [were] more likely to be judged as liable" as the number of plaintiffs increased).

also obscure key factual differences among different claims, making it impossible to know how jurors would assess different cases with differing facts and evidence.

Plaintiffs' proposal to consolidate *A.R.* and *B.L.* highlights these issues and would be virtually certain to generate uninformative verdicts. Plaintiffs' proposal purports to be about efficiency but the only real outcome would be to severely prejudice Uber. There are currently 2,496 cases in the MDL proceeding. Trying two cases instead of one will not meaningfully reduce the overall case inventory. Moreover, Plaintiffs propose to combine two ***very different*** cases: one involving an alleged rape and one involving an alleged kiss. Given the stark difference in the severity of these two alleged incidents, Plaintiffs' proposal appears calculated to prejudice Uber by evoking juror sympathy for a plaintiff who was allegedly raped, as well as angering jurors against Uber such that they are more likely to believe that both incidents happened and that Uber could have prevented them. All of this would likely culminate in an inflated damages award in the case alleging a forced kiss (*A.R.*). This is a textbook example of why consolidated trials impede the bellwether process: more than 80 percent of cases in this proceeding involve alleged kisses or other alleged incidents that do not involve sexual penetration. Trying *A.R.* and *B.L.* together will provide no insight on how a jury would view such claims; it would simply be intended to generate a big (and ultimately, uninformative) verdict number for both cases by frightening jurors and prejudicing them against Uber.

By contrast, trying the *A.R.* case on its own would better serve the bellwether process. As noted above, the overwhelming majority of this MDL proceeding involves allegations such as A.R.'s that do not include sexual penetration. The parties have already tried a case, *Dean*, that involves such claims, and there would be little, if any, benefit from trying another. Moreover, the *Mensing* case involves touching. Thus, Defendants respectfully suggest that the Court should set *A.R.*, a case involving kissing, as the next bellwether trial. As to timing, Defendants are amenable to Plaintiffs' proposal of setting the next trial in September 2026.

## IV.    AGREEMENT TO MEET AND CONFER ABOUT PTO TOPICS

Plaintiffs have requested supplements to the DFS and an order regarding the process and timing for dispositive motions in non-bellwether cases. The parties have agreed to meet and confer and file joint or competing positions by March 31, 2026.

## V.    WHB 823 TRIAL

### A.    Trial Schedule

The Parties seek clarification on whether trial will be held on Monday, April 20.

### B.    Motion to Strike Uber's Designated Trial Witnesses

On March 12, 2026, Plaintiff WHB 823 moved to strike Todd Gaddis and Erin O'Keefe from Uber's trial witness list. ECF 5486. Uber opposes this motion and will have a response on file before the March 26 (one week before the pre-trial conference) due date.

### C.    Deposition of Mr. D.Y.

On March 12, 2026, Uber moved for leave to depose Mr. D.Y., an individual with knowledge of Plaintiff WHB 823's alleged incident. ECF 5496. Plaintiff previously identified Mr. D.Y. as an individual with knowledge, however, Uber did not previously depose Mr. D.Y.

Plaintiff WHB 823 responded to the motion on March 16, 2026, at ECF 5532, and the motion is now pending before Judge Cisneros.

## VI.    TRIAL AVAILABILITY OF DRIVER

On March 18, the driver of the ride at issue informed Uber's counsel that he had recently had an unexpected medical emergency that will prevent him from traveling to Charlotte to attend trial. Uber's counsel promptly notified Plaintiff's counsel and requested agreement to conduct a trial preservation deposition or, in the alternative, agree to jointly seek the ability for the driver to testify at trial remotely. Plaintiff's counsel will respond to Uber's proposal shortly. Plaintiff has asked Uber to produce all communications that Uber or Uber's counsel has had to or from Mr. Richardson (text messages, voicemails, letters, emails or any other form of communication). Uber will respond shortly. The parties will be prepared to discuss at the conference.

**VII.    SETTLEMENT / MEDIATION**

The parties continue to meet periodically with Judge Andler to discuss the potential for resolution.

**VIII.    NEXT CASE MANAGEMENT CONFERENCE**

The next case management conference has not been scheduled. Plaintiffs request the Court set one on May 1.

Dated: March 18, 2026

By: */s/ Sarah R. London*_____

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*_____

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*_____

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated:  March 18, 2026

**KIRKLAND & ELLIS LLP**

By: */s/ Laura Vartain Horn*
    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN
    JESSICA DAVIDSON
    LAURA VARTAIN HORN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

9
JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

## FILER'S ATTESTATION

I, Sarah R. London, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: March 18, 2026                    /s/ Sarah R. London
                                         Sarah R. London