# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **DECLARATION OF GREG BROWN** |
| This Document Relates to: | Judge:        Hon. Charles R. Breyer |
| | Courtroom:   6 – 17th Floor |
| *WHB 832 v. Uber Techs., Inc.,* | Judge:        Mag. Lisa J. Cisneros |
| N.D. Cal. No. 3:24-cv-04900 | Courtroom:   G – 15th Floor |
| W.D.N.C. No. 3:25-cv-00737 | |

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NORTH CAROLINA

## CHARLOTTE DIVISION

| | |
|---|---|
| WHB 832, | CASE NO. 3:25-cv-00737 |
| Plaintiff, | Judge:        Hon. Charles R. Breyer |
| v. | Courtroom:   501 |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | |

1

DECLARATION OF GREG BROWN

Case No. 3:23-MD-03084-CRB

I, Greg Brown, having personal knowledge of the following, state:

1.      I am the Director, Head of Central Safety, at Uber. I was first employed by Uber from 2014 through 2020, during which time I worked as Operations and Logistics Manager (July 2014 – September 2015); Senior Operations Manager (September 2015 – November 2017); Program Lead, Safety (November 2017 – August 2019); and Senior Program Lead, Safety & Risk (August 2019 – December 2020). When I returned to Uber in 2022, I initially worked as Director of Safety, United States & Canada (September 2022 – August 2024). Since August 2024, I have served in my current role. In that role, I am responsible for overseeing, organizing, and implementing global risk programs, and ensuring, where applicable, that Uber's safety policies and standards are appropriately globalized. I offer this Declaration in the above-captioned matter in support of the Statement in Response to Plaintiff's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber"). The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

2.      I have reviewed Exhibits 3 and 4 to Plaintiff WHB 832's Omnibus Motions in Limine.

3.      Exhibit 3 is a report generated from Uber's project management software, known as JIRA, that reveals the details of Uber's proprietary system for performing comprehensive investigations in response to incident reports related to Uber trips ("Investigative Procedures"). Specifically, the document details the investigation undertaken by Uber in response to Plaintiff WHB 832's complaint to Uber. This report reveals proprietary, highly confidential information regarding Uber's Investigative Procedures, including: Uber's investigative methodology and measures for evaluating reports; the type of information that is collected by Uber and how that information is analyzed and distilled during an investigation; and the process by which reports are characterized, assessed, and classified as a result of Uber's investigation thereof.

4.      I am personally familiar with the Investigative Procedures through my work as it relates to overseeing, improving, and implementing the Investigative Procedures. These Investigative Procedures are only made available to internal Uber employees who need to know about and/or work with or prepare the reports concerning the Investigative Procedures. They are not generally available to any and all

employees within Uber and are restricted based on document access procedures. Uber has expended significant time and money on the implementation and improvement of the Investigative Procedures and has maintained documents and communications related to these processes under strict confidentiality.

5.    If the report were made publicly available, it would allow Uber's competitors unfair insight into, and the ability to replicate, Uber's investigative process, which Uber has invested significant human and financial capital to establish and operationalize.  In other words, Uber's competitors could use the confidential information to alter or improve their own respective businesses, which, given Uber's efforts to safeguard the information, would severely diminish Uber's hard-earned competitive advantage.

6.    In addition, revealing the details of Uber's Investigative Procedures to the public could also allow third-party drivers and riders to identify and exploit areas of Uber's investigative methodology, including through fraudulent activity, to the detriment of overall safety.

7.    Exhibit 4 is a copy of Uber's Amended Supplemental Responses to Plaintiff WHB 823 Special Interrogatories ("Interrogatory Responses"). The portion of the Interrogatory Responses that Uber seeks to redact is a chart providing descriptions of the Mobile Event codes that appear in Uber's Mobile Event logs.

8.    I am personally familiar with Uber's data collection and analysis processes, including through its Mobile Event logs. Information concerning the data that Uber collects and how the data are organized and analyzed is kept confidential within Uber.  Uber has expended significant time and money on its data collection processes and has maintained documents and communications related to these processes under strict confidentiality.

9.    This confidential list of the types of data codes that Uber maintains in connection with its Mobile Event logs and the fields' descriptions would be valuable to Uber's competitors to use and copy in their own data collection and analysis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _____ March 19, 2026          *Greg Brown*
                                                  _____
                                                  GREG BROWN