# EXHIBIT C

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4757
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

**FILED**
San Francisco County Superior Court

OCT 22 2025

CLERK OF THE COURT
BY: _Edward f ll_
Deputy Clerk

E-SERVICE
77424922
Oct 22 2025
10:51PM
File & ServeXpress

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION

| | |
|---|---|
| Coordination proceeding<br><br>*In Re: Uber Rideshare Cases This*<br><br>*Document Relates to:*<br><br>*All Actions* | JUDICIAL COUNCIL COORDINATION PROCEEDING CASE NO. 5188<br><br>CASE NO. CJC-21-005188<br><br>*Assigned to Hon. Ethan P. Schulman, Dept. 304*<br><br>**[PROPOSED] ORDER ON DEFENDANTS UBER TECHNOLOGIES INC. AND RASIER, LLC'S MOTION TO SEAL CONFIDENTIAL MATERIAL CITED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC's MOTION TO SEAL DOCUMENTS FILED WITH OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

The Court grants in part and denies in part Defendants Uber Technologies, Inc. and Rasier, LLC's motion to seal confidential material cited in support of motion for summary judgment or,

in the alternative, summary adjudication, and motion to seal documents filed with opposition to motion for summary judgment.

## BACKGROUND

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). On July 24, 2023, Plaintiffs filed the operative First Amended Master Long Form Complaint ("FAC") alleging causes of action for general negligence, common carrier negligence, negligence by misfeasance, and negligence by nonfeasance. Plaintiffs allege as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (FAC ¶6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers....looking for riders." (*Id.* 1, ¶ 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶ 3; see *id.* ¶ 27.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶¶ 121-122.) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other ridesharing companies. (*Id.* ¶¶ 84-86, 88, 134.) In addition, Uber does not proactively cooperate with law enforcement investigating cases passenger victims report to the police or participate in transportation network company ("TNC") safety hearings. (*Id.* ¶¶ 89-94, 116-120.) Moreover, after a victim reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account, which precludes the victim from accessing pertinent information such as the driver's name, driver's photo, make and model of the vehicle, ride time, ride distance, and route. (*Id.* ¶¶ 94-95, 100, 102.)

Despite marketing itself as a safe and better alternative to other transportation methods, Uber continues to hire drivers without conducting adequate background checks and screening

procedures, allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring and investigation procedures to protect passengers. (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 160 161, 164-168, 170-172, 189-190, 192, 209, 214-215, 218; see, e.g., *id.* ¶¶ 34-43, 66-69, 73-83, 130 [Uber Safe Rides Fee was a revenue source rather than a fund for implementing background checks, vehicle checks, driver safety education, development of safety features, and insurance]; but see *id.* ¶ 111 [the Uber App now includes an emergency button that allows a passenger to call 911].) Due to Uber's failure to implement changes, passengers continue to be victims of sexual assaults. *(Id.* ¶¶ 28, 127.)

Uber filed a motion to seal "confidential information referenced in Uber's memorandum in support of the Motion for Summary Judgment or, in the alternative, Summary Adjudication (the 'Memorandum'), Separate Statement of Undisputed Material Facts, the Declaration of Rebecca Payne, the Declaration of Hannah Nilles, and certain exhibits filed in connection thereto" (collectively, "Confidential Material"). (Motion, 3.) Uber sought to seal Exhibits 1 through 59 and 77 through 86 attached to the Declaration of Randall S. Luskey in support of Uber's Motion for Summary Judgment or, in the alternative Summary Adjudication ("Luskey Declaration"). (Opening Brief, 7-10.) Uber also sought to seal in their entirety the declarations of Rebecca Payne and Hannah Nilles filed in support of Uber's motion for summary judgment, although it did not address those declarations in its opening brief. (Luskey Decl. ¶ 5.) Uber's motion was supported only by a declaration of its then counsel. Plaintiffs oppose the motion.

On reply, Uber narrows its sealing request. "In particular, Uber no longer seeks to seal Exhibits 21-24, Exhibits 47-59, Exhibit 86, and the March 21, 2025 Declarations of Hannah Nilles and Randall S. Luskey. In addition, Uber does not seek to seal Exhibits 1-20, 25-42, and 77-85 in their entirety and instead only proposes redactions to remove Personally Identifying Information ('PII')." (Reply, 2.) Uber states that it "still seeks to seal in whole or in part [] Exhibits 43-46 and the March 21, 2025 Declaration of Rebecca Payne." (*Id.* (cleaned up).) With its reply brief, it filed two additional declarations in support of its sealing request. (*Id.*; July 3, 2025 Brown Decl.; July 3, 2025 Payne Decl.)

Uber also seeks to seal portions of: (1) Plaintiffs' opposition to Uber's motion for summary judgment or, in the alternative, summary adjudication; (2) Plaintiffs' opposition to Uber's separate statement of undisputed material facts; (3) Plaintiffs' separate statement of additional undisputed material facts in support of Plaintiffs' opposition; (4) the Declaration of Angela J. Nehmens in support of Plaintiffs' opposition; (5) Plaintiffs' evidentiary objections in support of Plaintiffs' opposition; (6) Plaintiffs' compendium of evidence in support of Plaintiffs' opposition and certain exhibits attached thereto; (7) Uber's reply brief in support of motion for summary judgment; (10) Uber's response to Plaintiffs' separate statement of additional disputed facts; and (11) the declarations of Greg Brown and Rebecca Payne. (Motion, 4-6.)[1] Plaintiffs oppose the motion.

On July 31, 2025, the Court held a hearing on Defendants Uber Technologies, Inc. and Raiser, LLC's motions to seal various documents filed by the parties in connection with Uber's motion for summary judgment or, in the alternative, summary adjudication. In advance of the hearing, the Court circulated tentative rulings granting those motions in part and denying them in part. At the hearing, Uber agreed to submit to certain of the Court's tentative rulings and offered to narrow its sealing requests, and the parties agreed to meet and confer as to those narrowed requests and to attend a further conference on August 15 to address that subject, among others.

On August 6, 2025, the *New York Times* published an article entitled "Uber's Festering Sexual Assault Problem." In the article, the reporter noted her access to "sealed court records," and that although a court had tentatively ruled that "some" should be unsealed, "the records have yet to be released."[2] On August 11, 2025, the Court ordered the parties to address the public

---

[1] On July 24, 2025, five court days prior to the hearing on the instant motion, Uber filed a Notice of Motion and Supplementary Motion to Seal and Response to Plaintiffs' July 18, 2025 Notice of Lodging. Uber's motion is both untimely and unsupported. In particular, Uber did not provide statutory notice. (See Code Civ. Proc. § 1005(b).) Uber also seeks to seal exhibits and portions of briefing in opposition and reply to its motion to strike without any factual or legal support. Thus, Uber's supplementary motion is denied.

[2] On September 22, 2025, Uber filed a Motion to Enforce the Protective Order due to the access to sealed records referenced in this article, after having previously sought similar relief in the MDL Court, which deferred ruling pending further proceedings in this Court. The person or entity that provided the confidential, sealed materials to the New York Times reporter has not yet been identified, nor come forward.

disclosure of certain information in the media that was subject to the sealing motions. The parties continued to meet and confer thereafter—interrupted to some extent by pretrial preparations and trial—but have been unable to agree on the scope of certain proposed redactions relating to S-RAD documents only.

**LEGAL STANDARD**

In general, the First Amendment provides a right of access to ordinary civil trials and proceedings. *(NBC Subsidiary (KNBC-TV), Inc. v. Super. Ct.* (1999) 20 Cal.4th 1178, 1212.) In *NBC Subsidiary,* the California Supreme Court observed that numerous reviewing courts have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication. *(Id.* at 1208-1209 & fn. 25.) Since *NBC Subsidiary,* California courts have regularly employed a constitutional analysis in resolving disputes over public access to court documents. *(Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 485; see also *In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1078 [discussing common law right of access and constitutional right of access].) The First Amendment principles are embodied in the sealed records rules, rules 2.550 and 2.551 of the California Rules of Court, promulgated by the Judicial Council. *(Overstock,* 231 Cal.App.4th at 486; *In re Marriage of Tamir,* 288 Cal.App.5th at 1079.)

The sealed records rules apply to records sealed or proposed to be sealed by a court order. *(Overstock,* 231 Cal.App.4th at 486.) Pursuant to the sealed record rules, a court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties. *(Id.;* California Rules of Court, rule 2.551(a).) The court may order a record sealed only upon making express findings that (1) There exists an overriding interest that overcomes the right of public access to the record; (2) The overriding interest supports sealing the record; (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; (4) The proposed sealing is narrowly tailored; and (5) No less restrictive means exist to achieve the overriding interest. *(Id.* at 487; California Rules of Court, rule 2.550(d).)

If the trial court finds the declarations in support of a sealing order conclusory or otherwise unpersuasive, the trial court may conclude that the moving party failed to demonstrate an

5

overriding interest that overcomes the right of public access to the records. *(In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 301; see also *In re Marriage of Nicholas,* 186 Cal.App.4th 1566, 1576 [particular facts are necessary to satisfy the constitutional standards for sealing court records]; *H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 894-899 [describing evidentiary submissions that were insufficient to support sealing].)

## DISCUSSION

### A. Uber's Motion to Seal Confidential Information Cited in Support of Motion for Summary Judgment

Uber asserts there is an overriding interest in the Confidential Material (as narrowed) because it "contains personal information, which if disclosed, would infringe on the privacy rights of third parties and the litigants, as well as Uber's commercially sensitive business information." (Motion, 3; see Opening Brief, 10, 12-14; Reply, 3-6.) Uber also asserts there is an overriding interest in the Confidential Material because it includes documents designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES-ONLY" under the stipulated protective orders. (Motion, 3; see Opening Brief, 10, 12-13.) "Plaintiffs agree that their true names and personally identifying information, including their home addresses and contact information, are confidential and should be redacted." (Opposition, 1; see *id.* at 10.) However, Plaintiffs argue that "Uber asserts only a generic privacy interest in its purportedly confidential business information" *(id.)* and "fails to tie its generic assertions of need to the specific records it seeks to seal" (*id.* at 2). (See *id.* at 4-5, 9-12.) Plaintiffs also argue that "the existence of the parties' stipulated protective order during discovery does not justify sealing evidence submitted in support of Uber's MSJ or the extensive redactions to the MSJ and associated materials." *(Id.* at 8-9.)

As a threshold matter, that protective orders exist between the parties is insufficient to support sealing. (See Cal. Rules of Court, rule 2.551(a) ["The Court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties."]; *McNair v. National Collegiate Athletic Assn.* (2015) 234 Cal.App.4th 25, 35-36 ["the mere agreement of the parties alone is insufficient to constitute an overriding interest to justify sealing the documents."].)

6

Indeed, the stipulated protective orders here expressly state: "The Parties further acknowledge . . . that this Stipulated Protective Order does not entitle them to file Confidential Information under seal; the California Rules of Court, including Rules 2.550 and 2.551, set forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal." (Luskey Decl. Ex. A fl 1, Ex. B fl 1.)

As to personal identifying information, the parties do not dispute, and the Court finds an overriding interest in personal identifying information such as birthdates, driver's license numbers, social security numbers, contact information, and Doe Plaintiffs' names, that overcomes the right of public access. (See, e.g., *Overstock.com, Inc.,* 231 Cal.App.4th at 504 [highly sensitive identifying information includes social security numbers]; see also Cal. Rules of Court, rules 2.503(e)(2), 2.507(e) [listing categories of personal identifying information to be redacted from records to which courts allow the public remote access].) The overriding privacy interest in personal identifying information supports sealing portions of the record that contain such information. Indeed, a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed. Moreover, Uber's revised sealing request is narrowly tailored by redacting the information in question, rather than sealing the documents in their entirety. Furthermore, no less restrictive means exist to achieve the overriding interest. Accordingly, the Court grants Uber's motion as to: (1) Exhibit D to Uber's reply brief filed July 9, 2025, which includes revised sealing requests for Exhibits 1 through 20 to the Luskey Declaration; (2) Exhibit E to Uber's reply brief filed July 9, 2025, which includes revised sealing requests for Exhibits 29, 31 through 34, and 36 through 39 to the Luskey Declaration; (3) Exhibit E to Uber's reply brief filed July 9, 2025, which includes revised sealing requests for Exhibits 25 through 28, 40, and 42 to the Luskey Declaration to the extent those documents include license plates, Doe Plaintiffs' names, credit card numbers, police report numbers, and PIN numbers; (4) Exhibit F to Uber's reply brief filed July 9, 2025, which includes revised sealing requests for Exhibits 77 through 84 to the Luskey Declaration to the extent the documents include Doe Plaintiffs' names, contact information, birth dates, and health care information.

7

Uber's motion is denied as to Exhibit E to Uber's reply brief filed July 9, 2025, which includes revised sealing requests for Exhibits 25 through 28 and 40 to the extent those documents include the addresses of pickup or drop off locations as Uber does not demonstrate there is an overriding interest in such information. (See also Opposition, 10 ["Uber provides no explanation for why the pickup or drop off locations of the rides at issue must be sealed where that location is a public address, such as a bar, restaurant, or office building."].) Uber's motion is also denied as to Exhibit F to Uber's reply brief filed July 9, 2025, which includes revised sealing requests for Exhibits 77 through 84 to the Luskey Declaration to the extent the documents include the names of third parties and the addresses of pickup or drop off locations.

As to commercially sensitive information, the law recognizes an overriding interest in protecting trade secrets, confidential business information, and commercially sensitive information. (See *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1286.) Confidential business information may be sealed where the information is competitively sensitive and public disclosure "would interfere with [the litigant's] ability to effectively compete in the marketplace" and would "prejudice" a defendant's "legitimate interests." (*Id.*)

Here, Uber argues Exhibits 43 through 46 to the Luskey Declaration (Jira reports regarding Plaintiffs' incidents) include "proprietary investigatory records" that "reveal the details of Uber's proprietary system for performing comprehensive investigations undertaken by Uber in response to incident reports related to Uber trips." (Reply, 3-4; Brown Decl. filed Jul. 3, 2025 ¶ 53; see also Brown Decl. filed Jul. 3, 2025 ¶ 3.) Uber asserts the investigatory records show "Uber's investigative methodology and measures for evaluating reports; the type of information that is collected by Uber and how that information is analyzed and distilled during an investigation; and the process by which reports are characterized and clarified as a result of Uber's investigation thereof." (Reply, 4-5; Brown Decl. filed Jul. 3, 2025 ¶ 53.) Uber contends that disclosure of these records "would allow Uber's competitors unfair insight into, and the ability to replicate, Uber's investigative process" and "could also allow third-party drivers and riders to identify and exploit areas of Uber's investigative

methodology to the detriment of overall safety." (Reply, 5; see, e.g., Brown Decl. filed Jul. 3, 2025 ¶¶ 8-9, 11, 53.)

The declaration of Greg Brown filed July 3, 2025 establishes an overriding interest in confidential business information, Uber's investigatory records, that supports sealing the record. The declaration of Greg Brown filed July 3, 2025 also demonstrates that a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed. Additionally, Uber's revised sealing request is narrowly tailored. Although Uber seeks to seal Exhibits 43 through 46 to the Luskey Declaration in their entirety, no less restrictive means exist to achieve the overriding interest. Accordingly, Uber's motion is granted as to Exhibits 43 through 46 to the Luskey Declaration.

The Court's tentative order also proposed granting some of Uber's sealing requests related to unlaunched dashcam initiatives. However, as the parties are aware, since the July 31 hearing, there have been media articles which have publicly disclosed the content of certain of the documents that Uber seeks to seal, including information related to the unlaunched dashcam initiatives. Following the publication of the New York Times article, Uber agreed to withdraw its requests related to the unlaunched dashcam initiatives.

## B. Uber's Motion to Seal Documents Filed With Opposition To Motion for Summary Judgment

Uber argues the documents it seeks to seal include "(1) commercially and competitively sensitive information, the public disclosure of which would cause competitive harm to Uber and potentially compromise safety; and/or (2) personally identifiable information, which could harm individuals' privacy interests if disclosed." (Motion, 6; see Opening Brief, 8-11; see, e.g., Opening Brief, 9 [Uber's proprietary trip-matching safety assessment technology; confidential Uber initiatives that are in the planning and development phase; misleading and erroneous data; internal safety processes, including driver screening], 11.) Plaintiffs oppose Uber's sealing request, arguing that "Uber's motion to seal meets none of the requirements imposed by California law" such as making a factual showing for each record it seeks to seal and narrowly tailoring its request.

(Opposition, 1-2; see *id.* at 4; see, e.g., *id.* at 614.) The Court addresses each of Uber's sealing requests in turn.

*First,* Uber originally sought to seal, in whole or in part, twenty-five exhibits relating to Uber's proprietary trip-matching, safety assessment technology (the "Technology," i.e., Safety Risk Assessed Dispatch[3] or "S-RAD") "to prevent competitive harm and to preclude efforts by bad actors to evade Uber's strategies for avoiding behavior that may lead to safety incidents." (Opening Brief, 11 & fn. 3; see also Reply, 4-5.) Additionally, Uber asserts the materials include trade secrets such as "how the Technology works, to how it was developed, to Uber's strategy for improving it." (Opening Brief, 12.)

Courts may seal records in order to protect trade secrets or confidential business information. (See, e.g., *McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 988 [affirming lower court's sealing of trade secret]; *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1284 [discussing confidential financial interests].) Indeed, "[c]ourts have found that the protection of trade secrets is an interest that can support sealing records in a civil proceeding." *(McGuan,* 182 Cal.App.4th at 988.) A trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (*Id.*) Separately, "[confidential business information may be sealed where the information is competitively sensitive and public disclosure "would interfere with [the litigant's] ability to effectively compete in the marketplace" and would "prejudice" a defendant's "legitimate interests." (See *Universal City Studios, Inc.,* 110 Cal.App.4th at 1286.)

Here, the Court tentatively concluded that Uber had not met its burden of demonstrating an overriding interest that overcomes the right of public access. It noted that Sunny Wong, Applied

---

[3] The New York Times article discussed and named the technology, such that its name and certain general aspects of how it works are now public.

Science Manager at Uber, generally declares that the materials Uber seeks to seal regarding the Technology contain "competitively sensitive information and details," which "are unknown to Uber's competitors, and their disclosure would result in competitive disadvantage to Uber." (Wong Decl. ¶¶ 1, 3; see also *id.* ¶¶ 12, 15-35.) Sunny Wong also declares that the materials Uber seeks to seal describe "the purpose of the Technology, and how the Technology functions, including by revealing the inputs and data points that the Technology uses" as well as "specific data and statistics used in developing the Technology, [and] confidential internal discussion regarding strategies and goals related to the Technology." *(Id.* ¶ 5.) The Court noted that although the Wong Declaration defines the term "Technology" as "trip-matching, safety assessment technology" *(id.* ¶ 3), neither the Wong Declaration nor Uber's briefing describes what constitutes "trip-matching, safety assessment technology" or a trade secret. The Court indicated in its tentative ruling twenty-five exhibits that Uber seeks to seal under this category of materials include proposed redactions on a broad range of topics. (See, e.g., Motion, Exs. G- I, M-N.)Moreover, the Court noted in its tentative ruling that Uber sought to seal fourteen of the twenty-five exhibits in their entirety without justification. (Compare Motion, 3 with Opening Brief, 11 fn. 3.) The Court therefore proposed denying Uber's motion as to the twenty-five exhibits regarding the Technology. (See *In re Providian Credit Card Cases,* 96 Cal.App.4th at 301 [in ruling on a sealing motion, a trial court is not required to accept the moving party's declarations as dispositive; if it finds them "conclusory or otherwise unpersuasive, it could conclude . . . that defendants had failed to demonstrate any overriding interest that overcomes the right of public access" (cleaned up)].)

At the July 31 hearing the Court further explained that he had been inclined to deny sealing with respect to the S-RAD documents because he found that the declaration was "cryptic" although he "gather[ed] that that's because [Mr. Wong] didn't want to divulge anything that you all are sensitive about divulging." 7/31/25 Hearing Tr. at 19:8-13. After hearing argument from counsel as to the sensitivity of the S-RAD documents, the Court ultimately directed the parties to meet and confer about the twenty-five exhibits related to S-RAD.

11

The parties have on multiple occasions met and conferred, but were unable to reach agreement as to what redactions should be applied. The Court now finds that Uber has established its overriding interest in maintaining the information reflected in its currently proposed S-RAD redactions. Uber has established that the S-RAD technology is a closely held and economically valuable trade secret, and the narrow and tailored redactions address only the most sensitive and confidential aspects of how S-RAD was developed, how it works, and other specific details about it. Nor is Uber proposing to redact any of the information about S-RAD that was divulged publicly by the New York Times article. Indeed, Uber is now proposing to redact narrowly tailored information in only six out of the 25 documents originally at issue. Moreover, Uber is no longer seeking to seal any documents in full, and has identified redactions that are the least restrictive way to protect Uber's trade secret information.

The redactions approved by the Court are as follows:

Redactions agreed to by both parties:

- **Exhibit 195**. UBER_JCCP_MDL_002658358: Selected Chart Column
- **Exhibit 195**. UBER_JCCP_MDL_002658360: Selected Text
- **Exhibit 196**. UBER_JCCP_MDL_003306687: Selected Text
- **Exhibit 196**. UBER_JCCP_MDL_003306692: Selected Text
- **Exhibit 266**: UBER_JCCP_MDL_003231348: All
- **Exhibit 266**. UBER_JCCP_MDL_003231349-350: Selected Text, Figure 4, and Corresponding Notes
- **Exhibit 270**. UBER_JCCP_MDL_003224079 (produced as native):
  - PP. 24-26 of PDF: All

Uber's Additional Proposed Redactions:

- **Exhibit 12**. UBER_JCCP_MDL_000962561.2: Chart and Selected Text
- **Exhibit 195**. UBER_JCCP_MDL_002658349: Selected Text
- **Exhibit 196**. UBER_JCCP_MDL_003306691: Contents of "Table 2: Predictors of Sexual Assaults"

- **Exhibit 196**. UBER_JCCP_MDL_003306697-698: Text under "4. Most Important Predictors"; Contents of "Table 3: Variable Importance Ranks by Feature Bundle and Model Type"
- **Exhibit 196**. UBER_JCCP_MDL_003306700: "Figure 7"
- **Exhibit 196**. UBER_JCCP_MDL_003306713: Links under "Appendix B: Variable List + Definitions" and "Appendix C: Evaluation Plan"
- **Exhibit 247**. UBER_JCCP_MDL_001687316: Internal Query Text
- **Exhibit 247**. UBER_JCCP_MDL_001687317: Internal Query Text
- **Exhibit 266**. UBER_JCCP_MDL_003231345: Bullet Points Under "Data Pipeline" Heading
- **Exhibit 266**. UBER_JCCP_MDL_003231353: Formulas and Graphs
- **Exhibit 266**. UBER_JCCP_MDL_003231355-356: Text under "Figure 6: Interpersonal Conflict Predictions"; Text under "Predicted versus Actual"
- **Exhibit 266**. UBER_JCCP_MDL_003231357: Figure 7 and Corresponding Notes
- **Exhibit 266**. UBER_JCCP_MDL_003231358: Figure 8 and Corresponding Notes
- **Exhibit 266**. UBER_JCCP_MDL_003231359-360: Table 1 and Selected Text
- **Exhibit 266**. UBER_JCCP_MDL_003231361-362: Selected Text, Formulas, and Figure 9 and Corresponding Notes
- **Exhibit 266**. UBER_JCCP_MDL_003231363-364: Text under Heading "6. Most Important Predictors" and Table 2
- **Exhibit 266**. UBER_JCCP_MDL_003231365: Figure 10
- **Exhibit 270**. UBER_JCCP_MDL_003224079 (produced as native):
  - Page 9 of PDF ("Model Features" Slide): Text and Figure
  - P. 10 of PDF: All
  - P. 12 of PDF (Trigger Rate and Recall" Slide): Selected Text and Graph
  - P. 17 of PDF ("Measuring Impact" Slide): Chart
  - P. 18 of PDF ("Monitoring and Dashboards" Slide): All

13

*Second,* Uber seeks to seal information related "to two highly confidential initiatives (the 'Confidential Initiatives'), neither of which has yet been launched in the United States, in order to prevent significant competitive harm to Uber." (Opening Brief, 13; see *id.* at 14 [Uber seeks to seal thirty-three documents in whole or in part], 15.) Rebecca Payne, Group Product Manager of Uber Grocery and Retail, Delivery Experience, declares the two confidential initiatives are women rider preference and dashcams. (Payne Decl. ¶¶ 3, 6; see also *id.* ¶¶ 7-8.)

As to the women rider preference initiative, Uber's motion is insupportable in light of Uber's recent public launch of its pilot program in the United States that will match female riders with female drivers. (Uber Newsroom, "Coming Soon: Women Preferences" (July 23, 2025), https://www.uber.com/newsroom/women-preferences/); see also *Universal City Studios, Inc.,* 110 Cal.App.4th at 1286 ["In the absence of any evidence of inadvertence or mistake, we are satisfied that defendant's own voluntary disclosure . . . outweighs the confidentiality interests."]; *H.B. Fuller Co.,* 151 Cal.App.4th at 898 ["It should go without saying that there is no justification for sealing records that contain only facts already known or available to the public."].) Therefore, Uber's motion is denied as to Plaintiffs' exhibits and corresponding documents submitted in conjunction with Uber's summary judgment motion regarding the women preferences program.

As to Uber's consideration of whether to use dashcams in Uber rides, the Court previously proposed to seal those documents. However, in light of the publication of the New York Times article and its discussion of the dashcam initiatives, Uber agreed to withdraw its sealing requests as to the dashcams.

*Third,* Uber seeks to "seal certain irrelevant and misleading documents that include inaccurate and inflammatory characterizations of highly confidential, unaudited data, generated from potential safety tickets, that were produced to Plaintiffs in connection with this litigation." (Opening Brief, 15; see also Reply, 5.)[4] Uber asserts that "[p]ublic disclosure of this misleading

---

[4] The documents in question are Plaintiffs' Exhibits 48, 88, and 188. (Opening Brief, 15.) Uber also seeks to seal Exhibits 8 and 96, "two other documents that raise similar concerns related to unaudited data." (*Id.* at 15 fn. 5.)

and incorrect summary of Uber's confidential data would be highly damaging to Uber's competitive standing because it would enable Uber's competitors to use misleading and inaccurate numbers, purportedly derived from data produced by Uber, to their competitive advantage in promoting their own businesses over Uber." (Opening Brief, 16-17.) Plaintiffs disagree, arguing that "Uber does not cite any legal authority to support this basis for sealing information." (Opposition, 2; see *id.* at 12.) Plaintiffs have the better of the argument. Even if the information has been designated as confidential, that a protective order exists between the parties is insufficient to support sealing. (See Cal. Rules of Court, rule 2.551(a) ["The Court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties."]; *McNair v. National Collegiate Athletic Assn.* (2015) 234 Cal.App.4th 25, 35-36 ["the mere agreement of the parties alone is insufficient to constitute an overriding interest to justify sealing the documents."].) Additionally, the sealed record rules make no mention of inflammatory, irrelevant, or misleading documents. Finally, the accuracy and reliability of the data reflected in the documents raises factual issues that cannot properly be resolved on a motion to seal.[5] Accordingly, Uber's motion is denied on this ground.

*Fourth*, Uber seeks to "seal certain highly confidential documents (or portions thereof) relating to Uber's confidential and proprietary driver screening procedures, investigatory processes, and other related internal safety initiatives and processes implemented or considered by Uber because these materials contain confidential and proprietary research, technology, and trade secrets related to Uber's strategic plans in a highly competitive market and would result in a competitive disadvantage to Uber if made publicly available." (Opening Brief, 17 (cleaned up); see *id.* at 19; Brown Decl. ¶ 3 ["Confidential Procedures"].)

---

[5] The Court gives no weight to the unsigned July 2, 2025 letter from the No More Foundation submitted with Uber's motion to seal. (Vartain Decl. Ex. T; Opening Brief, 17; Reply, 6.) That organization did not seek leave to appear as an amicus curiae, nor did Uber seek leave of Court to file that letter. While amici curiae may provide a court with valuable perspective on certain issues, sealing and evidentiary matters are not typically among them.

Greg Brown, Director, Head of Central Safety at Uber, declares that "[d]isclosure of the nature and details of the Confidential Procedures, which Uber has not revealed publicly and has taken great lengths to safeguard, would cause competitive harm to Uber by providing its competitors with confidential information regarding some of the key components of Uber's operational strategies." (Brown Decl. ¶¶ 1, 8.) Mr. Brown also declares that disclosure "could potentially allow competitors to inappropriately co-opt and adopt Uber's proprietary Confidential Procedures, which could harm Uber's competitive standing. In other words, Uber's competitors could . . . alter or improve their own respective systems, which, given Uber's efforts to safeguard information concerning the Confidential Procedures, would severely diminish Uber's hard-earned competitive advantage." (*Id.* ¶ 9; see also *id.* ¶¶ 10 ["could harm Uber by allowing competitors to develop strategies and programs to counter initiatives that Uber is contemplating"], 11 ["may allow users of the Uber platform or other individuals to take steps to undermine or circumvent the effectiveness of these safety measures"].)

Uber seeks to seal fifty-eight exhibits under the umbrella of "Confidential Procedures." (Opening Brief, 18 fn. 7.) Uber contends the Brown Declaration contains facts sufficient to support sealing. (Reply, 2, 9.) The Court disagrees. The Brown Declaration establishes there *may* be an overriding interest in confidential business information related to Confidential Procedures. However, the Brown Declaration does not set forth specific *facts* to support sealing each of the fifty-eight exhibits. (See, e.g., Brown Decl. ¶¶ 14-15, 20-23, 25-30, 32-42, 45-52, 55-67, 69-70.) Rather, the Brown Declaration utilizes the same general reasoning to support sealing. (Compare *id.* with *id.* ¶¶ 8-11.) This is insufficient. (See Cal. Rules of Court, rule 2.551(b)(1) ["The motion or application must be accompanied by a memorandum and a declaration containing facts sufficient to justify the sealing."]; *H.B. Fuller Co.*, 151 Cal.App.4th at 894 [the moving party "must come forward with a specific enumeration of the facts sought to be withheld and specific reasons for withholding them."].) Moreover, Uber's sealing request is not narrowly tailored. Of the fifty-eight exhibits at issue, Uber seeks to seal forty-one of those exhibits in their entirety without adequate support. Therefore, Uber's motion is denied as to exhibits containing "Confidential

Procedures" and references thereto in the summary judgment papers, subject to the following exception.

Uber demonstrates an overriding interest in confidential business information, the Jira incident reports and an unlaunched product feature, that supports sealing the record and that a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed. (Brown Decl. ¶¶ 3, 11, 44, 53-54; see also Reply, 10.) Although Uber seeks to seal Plaintiffs' Exhibits 52, 158, 164, 165, and 278 in their entirety, no less restrictive means exist to achieve the overriding interest. Thus, Uber's motion is granted as to Plaintiffs' Exhibits 52, 158, 164, 165, and 278.

*Lastly*, Uber seeks to seal personal identifying information ("PII"). (Opening Brief, 21; see, e.g., Motion Ex. S.) The parties do not dispute and the Court finds an overriding interest in PII such as birthdates, driver's license numbers, social security numbers, contact information, and Doe Plaintiffs' names, that overcomes the right of public access. (See Opposition, 14; Reply, 1 fn. 1; see, e.g., *Overstock.com, Inc.*, 231 Cal.App.4th at 504 [highly sensitive identifying information includes social security numbers]; see also Cal. Rules of Court, rules 2.503(e)(2), 2.507(e) [listing categories of personal identifying information to be redacted from records to which courts allow the public remote access].) The overriding privacy interest in PII supports sealing portions of the record that contain such information. Indeed, a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed. Moreover, Uber's sealing request is narrowly tailored by redacting the information in question, rather than sealing documents in their entirety. Furthermore, no less restrictive means exist to achieve the overriding interest. Accordingly, Uber's motion is granted as to Exhibit S.

IT IS SO ORDERED.

Dated: Oct. 22, 2015

Ethan P. Schulman

Judge of the Superior Court

17

## CERTIFICATE OF ELECTRONIC SERVICE

## (CCP 1010.6, and CRC 2.251)

I, Edward Santos, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On October 22, 2025, I electronically served:

**ORDER ON DEFENDANTS UBER TECHNOLOGIES INC. AND RASIER, LLC'S MOTION TO SEAL CONFIDENTIAL MATERIAL CITED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S MOTION TO SEAL DOCUMENTS FILED WITH OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Date:    OCT 2 2 2025

Brandon E. Riley, Court Executive Officer

By: _____

Edward Santos, Deputy Clerk