[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*WHB 832 v. Uber Techs., Inc.,*<br>*N.D. Cal. No. 3:24-cv-04900*<br>*W.D.N.C. No. 3:25-cv-00737* | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.**<br><br>**PUBLIC VERSION**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor<br><br>Date Filed:  March 20, 2026<br>Trial Date:  April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 832,<br><br>          Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>          Defendants. | CASE NO. 3:25-cv-00737<br><br>Judge:       Hon. Charles R. Breyer<br><br>Courtroom:   501 |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 2

III.  LEGAL STANDARD .......................................................................................................... 5

IV.   ARGUMENT ....................................................................................................................... 6

    A.    To The Extent Plaintiff Introduces Evidence Regarding Psychological Screening Assessment Tools, Dr. Reminick Is Qualified To Offer Opinions About Their Limitations. ....................................................................................................................... 6

    B.    Dr. Reminick Should Not Be Barred From Testifying That The Available Evidence Is Contrary To ████████████████████████ ████████████ ........................................................................................ 8

    C.    Dr. Reminick's Opinions About ████████████████████ ████████ Does Not Invade The Province Of The Jury. ............................... 9

V.    CONCLUSION .................................................................................................................. 12

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.
Case No. 3.23-md-03084-CRB (LJC)

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Barratt*,
No. 2:23-CV-00474-TL, 2025 WL 1484736 (W.D. Wash. May 23, 2025) ........................................9

*Bouygues Telecom, S.A. v. Tekelec*,
472 F. Supp. 2d 722 (E.D.N.C. 2007).......................................................................................10

*Evans v. Cap. Blue Cross*,
No. 1:19-CV-497, 2021 WL 825764 (M.D. Pa. Mar. 4, 2021) ........................................7

*Hysell v. Raleigh Gen. Hosp.*,
No. 5:18-CV-01375, 2020 WL 3130423 (S.D. W. Va. June 12, 2020)................................7

*Lassiegne v. Taco Bell Corp.*,
202 F. Supp. 2d 512 (E.D. La. 2002)..........................................................................................10

*Leonard v. Denny*,
No. 2:12-CV-00915 TLN AC P, 2020 WL 5039065 (E.D. Cal. Aug. 26, 2020) ...............................8

*Nix v. Chemours Co. FC, LLC*,
805 F. Supp. 3d 626 (E.D.N.C. 2025)......................................................................................5

*Norman v. Leonard's Express, Inc.*,
No. 7:22CV00096, 2023 WL 3244002 (W.D. Va. May 4, 2023) ........................................9

*Rhyne v. United States Steel Corp.*,
474 F. Supp. 3d 733 (W.D.N.C. 2020) ..................................................................................9

*SAS Inst., Inc. v. World Programming Ltd.*,
125 F. Supp. 3d 579 (E.D.N.C. 2015), *aff'd*, 874 F.3d 370 (4th Cir. 2017)........................................5

*United States v. Bilson*,
648 F.2d 1238 (9th Cir. 1981) ................................................................................................7

*United States v. Boccone*,
556 F. App'x 215 (4th Cir. 2014) ...........................................................................................9

*United States v. Cecil*,
836 F.2d 1431 (4th Cir. 1988) ..............................................................................................11

*United States v. Holguin*,
51 F.4th 841 (9th Cir. 2022) ..................................................................................................5

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

*United States v. Lespier*,
  725 F.3d 437 (4th Cir. 2013) ........................................................................................12

*United States v. Smith*,
  919 F.3d 825 (4th Cir. 2019) ..........................................................................................5

*Walker v. DDR Corp.*,
  No. 3:17-CV-01586-JMC, 2019 WL 3409724 (D.S.C. Jan. 4, 2019) .....................................8

*William F. Shea, LLC v. Bonutti Rsch., Inc.*,
  No. 2:10-CV-00615-GLF, 2013 WL 2424382 (S.D. Ohio June 4, 2013) ...........................10

**Rule**

Cal. Evid. Code § 702 ..............................................................................................5

**Other Authorities**

Stephanie M. Jensen et al., *Screening tools for predicting posttraumatic stress disorder in acutely injured adult trauma patients: A systematic review*, 92 Journal of Trauma and Acute Care Surgery 115 (2022) ....................................................................................6

Substance Abuse and Mental Health Services Administration, *Trauma-Informed Care in Behavioral Health Services*, Treatment Improvement Protocol (TIP) Series 57, Publication No. 13-4801 (2014) ...................................................................................6

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Dr. Alison Reminick is a prominent psychiatrist and Director of the Women's Reproductive Mental Health Program in the Department of Psychiatry at the University of California, San Diego. Over the course of two reports, Dr. Reminick synthesizes information from Plaintiff's medical records, her clinical evaluation of Plaintiff, testing data from Plaintiff's now-withdrawn psychological expert, Dr. Heleya Rad, and other testimonial and documentary evidence to form opinions about the existence and causes of Plaintiff's psychiatric symptoms and disorders. Notably, Plaintiff does not challenge the bulk of Dr. Reminick's opinions, including all of the opinions offered in Dr. Reminick's opening report and the majority of the opinions offered in Dr. Reminick's rebuttal report. While Plaintiff does criticize three narrow opinions proffered by Dr. Reminick in her rebuttal report, her arguments are meritless.

*First*, Plaintiff argues that Dr. Reminick is not qualified to testify about the results of two mental health screening assessments given to Plaintiff by Dr. Rad to assess symptoms of trauma. Now that Dr. Rad has been withdrawn by Plaintiff, however, Uber expects that the screening assessments will not be raised at trial, and Dr. Reminick will have no reason to address them. If, however, Plaintiff introduces evidence about such screening assessments, Dr. Reminick is undoubtedly qualified to testify about the limitations of those assessments.

*Second*, there is no merit to Plaintiff's argument that Dr. Reminick should be barred from testifying that Plaintiff ████████████████████████. Plaintiff argues that this opinion should be excluded because it is based on "rank speculation," but there is copious evidence in the medical records and other evidence, including testimony from Plaintiff's then-best friend, that Plaintiff ████████ ████████████████████████████████. Rather than opining on Plaintiff's credibility, Dr. Reminick properly offers her professional medical opinion, based on the evidence in the record regarding ██████████████████████████████████████ ████████.

*Third*, Plaintiff argues that Dr. Reminick's opinion that Plaintiff is not a reliable historian██ ████████ is an improper attack on Plaintiff's character and "credibility." Once again, this

1

misapprehends Dr. Reminick's opinions. Based on her review and analysis of hundreds of pages of medical records pertaining to Plaintiff, Dr. Reminick will testify about ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████. This is proper expert testimony about Plaintiff's medical history, not an opinion regarding her personal character or credibility as a witness.

For each of these reasons, discussed in greater detail below, Plaintiff's motion should be denied.

## II.     BACKGROUND

Dr. Alison Reminick is the Director of the Women's Reproductive Mental Health Program in the Department of Psychiatry at the University of California, San Diego. *See* Reminick CV (Mot. Ex. 1 at Ex. A to 9/26/2025 Report of Alison Reminick, M.D.). After graduating from medical school in 2008, Dr. Reminick completed her residency in psychiatry at Mass General and UCLA, where she rotated through various medical and psychiatric positions touching on intensive care and addiction, among other medical specialties. *See id.*; *see also* 11/3/2025 Reminick Dep. 14:24-15:21 (Ex. 1). After obtaining her board certification in psychiatry nearly 15 years ago, Dr. Reminick went on to specialize in women's mental health issues, treating thousands of patients, including many sexual assault victims, for all manner of psychiatric disorders, including OCD, PTSD, Bipolar Disorder, and Major Depressive Disorder. 11/3/2025 Reminick Dep. 15:17-16:9, 18:5-21; Reminick CV at 1. Nearly half of the more than 2,000 patients Dr. Reminick has evaluated and treated presented with a history of some form of sexual assault or sexual violence. 11/3/2025 Reminick Dep. 19:5-20:2. In her clinical practice, Dr. Reminick is familiar with and utilizes a variety of assessment tools designed to elicit potential psychiatric and medical symptoms, including several of the tools used by Dr. Rad to assess Plaintiff in this case. *See id.* 48:2-24.

In forming her opinions, Dr. Reminick undertook a psychiatric diagnostic assessment based on a wide array of information, *see id.* 29:22-30:7; *see also* 9/26/2025 Reminick Rep. at 2 (Mot. Ex. 1), including her comprehensive review of Plaintiff's available medical, incarceration, and mental health records, *see* 9/26/2025 Reminick Rep. at 3; *see also* 10/24/2025 Reminick Rebuttal Rep. at 2 (Mot. Ex. 3), as well as the available deposition testimony, *see* 10/24/2025 Reminick Rebuttal Rep. at 2; *see also*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

11/3/2025 Reminick Dep. 12:18-13:4, 54:2-14, 60:23-61:9. On August 3, 2025, Dr. Reminick performed her own clinical evaluation of Plaintiff, during which she assessed Plaintiff's psychiatric symptomology, diagnoses, and her current state of functioning, as she would with patients in her clinical practice. *See* 11/3/2025 Reminick Dep. 11:5-13, 12:5-14.

In her opening report, Dr. Reminick explains, based on her review of the evidence, that Plaintiff's alleged injuries were not caused by the alleged incident at issue in this case, but instead by her ███████ █████████████████████████████████████████████ 9/26/2025 Reminick Rep. at 2-3. In addition, Dr. Reminick opines, based on the record and her own psychiatric examination of Plaintiff, that ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ *Id.* at 12. Dr. Reminick also explains that Plaintiff was █████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████. *See id.* at 11-12. Dr. Reminick opines that ████████████ █████████████████████████████████████████████████████████████████████████████████ ████████████. *See id*. at 11-13.

Dr. Reminick explains that Plaintiff ████████████████████████████████████████ ████████████████████████████████████████████████████████████.'" *Id.* at 6. This included the █████████████████████████████████████████████████████████████████████████ ████████████████████████. *Id.* at 7. Plaintiff also ███████████████████████████████ ███████████████████████████████████████████████████████. *Id.* According to Dr. Reminick, ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████. *Id.* at 6, 12. Dr. Reminick reviewed ████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████. *See id.* at 8-9.

In support of her claims, Plaintiff disclosed opinions from Dr. Rad regarding Plaintiff's alleged mental health conditions. Dr. Rad gave Plaintiff a battery of self-report assessments designed to elicit information about Plaintiff's mental health symptoms and personality traits, including the Beck

3

Depression Inventory II ("BDI-II"); Beck Anxiety Inventory ("BAI"); the Detailed Assessment of Post-traumatic Stress ("DAPS"); the Mini Mental Status Exam-2 Brief Version ("MMSE-2-BV"); the Minnesota Multiphasic Personality Inventory-3 ("MMPI-3"); the PTSD Checklist of DSM-5 ("PCL-5"); and the Trauma Symptom Inventory- 2nd Edition ("TSI-2"). *See* Rad Rep. at 10-11 (Mot. Ex. 4). Based on the results of these assessments, Dr. Rad concluded that ████████████████████ ████████████. *See id.* Dr. Reminick reviewed Dr. Rad's report, deposition testimony, and the available data from Dr. Rad's screening assessment tools. *See* 11/3/2025 Reminick Dep. 12:18-13:4, 46:11-19; *see also* 10/24/2025 Reminick Rebuttal Rep. at 2. Dr. Rad also reported that Plaintiff told Dr. Rad ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████. *See* Rad Rep. at 12; *see also* 10/24/2025 Reminick Rebuttal Rep. at 8-9.

After reviewing new information that became available subsequent to the submission of her opening report, including Dr. Rad's report, testing data, and deposition transcript, as well as additional records, Dr. Reminick issued a rebuttal report in which she explained that many of the self-report tools completed by Plaintiff ████████████████████████████████████████ ████████████████████████████████ 10/24/2025 Reminick Rebuttal Rep. at 2; *see also id.* at Ex. A. Dr. Reminick further noted that she agreed with Dr. Rad that ████ ████████████████████████████████████████████████ ████████████████████████████. *Id.* at 2. Dr. Reminick also agreed with Dr. Rad that ████████████████████████████████████ ████████████. *Id.*

In addition, Dr. Reminick's rebuttal report expands on some of her initial opinions ████ ████████████████████████████████████████████████ ████████████████████████. 10/24/2025 Reminick Rebuttal Rep. at 2, 6. Dr. Reminick also notes that ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████. *Id.*; *see, e.g.,* ████████-PC&PS-000005 (Ex. 2) (noting that Plaintiff ████████

4



PC&PS-000037 (Ex. 3) (Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Dr. Reminick also explains that Plaintiff's statement to Dr. Rad that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* 10/17/2025 Rad Dep. 144:1-12 (Ex. 4)—which echoes Plaintiff's deposition testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* 7/10/2025 ▮▮▮▮ Dep. 31:22-32:5 (Ex. 5)—is inconsistent with the evidence in the case. *See* 10/24/2025 Reminick Rebuttal Rep. at 7. Specifically, Dr. Reminick points to other deposition testimony from Plaintiff that she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* 7/10/2025 ▮▮▮▮ Dep. 81:10-16; testimony from Plaintiff's then-best friend that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* 7/23/2025 ▮▮▮▮ Dep. 11:5-16 (Ex. 6); and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* ▮▮▮▮-VBHS-000004 (Ex. 7).

### III.    LEGAL STANDARD

"Under Rule 702, a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019). "A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education," and "[t]he Fourth Circuit has ruled that when an expert's qualifications are challenged, 'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 584-85 (E.D.N.C. 2015), *aff'd*, 874 F.3d 370 (4th Cir. 2017) (citation omitted); *accord United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) ("An expert may be qualified to give expert testimony by 'knowledge, skill, experience, training, or education,' which need only exceed 'the common knowledge of the average layman[.]' This standard is 'liberal.'") (citations omitted). Further, a witness "need not be the most well-known or well-qualified witness" to be qualified under Rule 702. *Nix v. Chemours Co. FC, LLC*, 805 F. Supp. 3d 626, 642 (E.D.N.C. 2025).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

IV.    ARGUMENT

Dr. Reminick applied years of clinical experience as a psychiatrist treating victims of PTSD and assessed the voluminous materials in the record in reaching her psychiatric opinions about ███████ ████████████████████████████████████████████████████████████████████ ████████████████████. Plaintiff does not challenge the overwhelming majority of these opinions. While Plaintiff objects to three opinions in Dr. Reminick's rebuttal report, all of her arguments are meritless.

**A.    To The Extent Plaintiff Introduces Evidence Regarding Psychological Screening Assessment Tools, Dr. Reminick Is Qualified To Offer Opinions About Their Limitations.**

Plaintiff first seeks to exclude opinions offered by Dr. Reminick regarding "certain psychological tests Dr. Rad did on Plaintiff for which Dr. Reminick is not qualified," including: (1) the Trauma Symptom Inventory – 2nd Edition ("TSI-2"), and (2) the Detailed Assessment of Post-traumatic Stress ("DAPS"). Pl.'s Mot. at 2-4, 6. Because Plaintiff has now withdrawn the opinions offered by Dr. Rad about Plaintiff's completion of these assessments, *id.* at 2, Uber does not expect that Dr. Reminick will have any reason to offer opinions about them. If, however, Plaintiff does introduce evidence regarding the DAPS or TSI-2 at trial, Dr. Reminick is more than qualified to opine on the usefulness, interpretation and limitations of these screening assessments.

Plaintiff's suggestion that Dr. Reminick has no familiarity with psychological screening tools, *see* Pl.'s Mot. at 2, is false. When it comes to assessing trauma symptoms, there are hundreds of different instruments, of which the DAPS and TSI-2 are only two.[1] As Dr. Reminick has explained, she does use psychological assessment tools in her practice, including a number that Dr. Rad applied and used with Plaintiff. *See* 11/3/2025 Reminick Dep. 48:2-10, 48:19-20. As a psychiatrist with significant experience

---

[1]    Dozens of instruments, tools, screeners, assessments, etc. exist that purport to capture an individual's trauma symptoms. *See, e.g.*, Stephanie M. Jensen et al., *Screening tools for predicting posttraumatic stress disorder in acutely injured adult trauma patients: A systematic review*, 92 Journal of Trauma and Acute Care Surgery 115 (2022) (reviewing 49 different studies examining accuracy of 38 different screening tools for PTSD); Substance Abuse and Mental Health Services Administration, *Trauma-Informed Care in Behavioral Health Services*, Treatment Improvement Protocol (TIP) Series 57, Publication No. 13-4801 (2014), Appendix D, Screening and Assessment Instruments, https://www.ncbi.nlm.nih.gov/sites/books/NBK207193/ (providing a list of 17 different potential screening tools for PTSD).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.
Case No. 3.23-md-03084-CRB (LJC)

in treating patients, including many sexual assault victims, for trauma-related injuries and other mental health conditions, Dr. Reminick is well qualified to explain and interpret the results of questionnaires designed to assess symptoms of trauma and PTSD—and to explain the limitations of various screening tools. *See United States v. Bilson*, 648 F.2d 1238, 1239 (9th Cir. 1981).

This applies equally to the DAPS or TSI-2. Plaintiff asserts that Dr. Reminick is not qualified to offer any commentary on the DAPS or TSI-2, two different psychological screening tools, because she does not personally use them in her practice as a psychiatrist. However, "[t]he absence of a specialty degree in psychology d[oes] not disqualify [a] psychiatrist from expressing an opinion" about the results of "psychological tests" she does not administer. *Bilson*, 648 F.2d at 1239 (rejecting as "remarkably unpersuasive" the argument that a qualified psychiatrist may not testify about "the results of psychological tests" because they "may be evaluated only by a professional psychologist"). Nor does limited experience with one specific test or procedure disqualify a medical expert from commenting on it. *See Hysell v. Raleigh Gen. Hosp.*, No. 5:18-CV-01375, 2020 WL 3130423, at *4-6 (S.D. W. Va. June 12, 2020) (medical expert is qualified to offer testimony on labor and infant resuscitation even though she only had "some limited training in interpreting" test results, "does not do so as part of her current practice," and has "has not been called to attend to a delivery of a newborn child [for over 15 years]"); *see also Evans v. Cap. Blue Cross*, No. 1:19-CV-497, 2021 WL 825764, at *8 (M.D. Pa. Mar. 4, 2021) (noting that medical expert's "purported lack of experience in performing tests … does not *per se* preclude him from being qualified to draw reasonable inferences from the results of tests set up or performed by others"). Thus, while Dr. Reminick does not specifically employ these particular screening assessments in her practice, she is certainly qualified to explain to the jury, based on her review of the assessments, that neither attributes any of the reporter's current or lifetime of symptoms to any specific trauma event, incident or stressor. 10/24/2025 Reminick Rebuttal Rep. at 4.

In short, to the extent Plaintiff raises issues at trial related to the DAPS and TSI-2, or any other screening tool(s) designed to assess potential trauma, Dr. Reminick is qualified to offer opinions on the usefulness and limitations of those tools.

7

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

**B.     Dr. Reminick Should Not Be Barred From Testifying That The Available Evidence Is Contrary To** ██████████

Plaintiff argues that Dr. Reminick's opinion that "████████████████████████ ████████████████████████████," as Plaintiff claims, 10/24/2025 Reminick Rebuttal Rep. at 3, should be excluded because it is based on "rank speculation" and "impermissibly attacks Plaintiff's credibility." Pl.'s Mot. at 7. Neither argument has merit.

*First*, this testimony is based on the medical and litigation record, not speculation. *See Walker v. DDR Corp.*, No. 3:17-CV-01586-JMC, 2019 WL 3409724, at *6 (D.S.C. Jan. 4, 2019). Plaintiff's former best friend, ████████, testified that ████████████████████████ ██. 7/23/2025 ████ Dep. 11:5-16. Ms. ████ testified that, at the time, she was close with Plaintiff and ████████████████████████████████. *Id.* 7:21-8:18; *see also* 11/3/2025 Reminick Dep. 62:13-23 (testifying that Ms. ████ testimony formed part of the basis for the opinion that it was ████████████████████████████). In addition, Plaintiff's medical records make clear that, ████████████████████████ ████████████████████████████████. *See, e.g.,* ████-PC&PS-0000013 (Ex. 2) (████████████████████████ ████████████████████████████████████). Further, even Dr. Rad admitted that ████████████████████████. *See* 10/17/2025 Rad Dep. 145:2-10.

It is well recognized that medical experts may offer opinions based on a review of available records, testimony, and the experts' own clinical assessment. *See Walker*, 2019 WL 3409724, at *6 (psychological expert "relied on sufficient facts and data" for his opinions about the Plaintiff's ability to work and psychological functioning where he considered "[p]laintiff's medical records, psychological tests, and work history"); *see also Leonard v. Denny*, No. 2:12-CV-00915 TLN AC P, 2020 WL 5039065, at *3 (E.D. Cal. Aug. 26, 2020), *report and recommendation adopted*, No. 2:12-CV-00915-TLN-AC, 2020 WL 5891389 (E.D. Cal. Oct. 5, 2020) ("It is completely acceptable for [a medical expert] to render an opinion based upon h[er] review of medical records, as medical experts may rely on treatment records

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

to form their opinions because experts often receive a wider latitude with which to base their testimony."); *United States v. Boccone*, 556 F. App'x 215, 226 (4th Cir. 2014) (medical expert's "testimony and report were both scientifically valid and helpful to the jury[]" considering her "detailed … review of patient records and evidence considered as a basis for her opinions"). Notably, the case cited by Plaintiff, *Rhyne v. United States Steel Corp.*, 474 F. Supp. 3d 733, 765 (W.D.N.C. 2020), is not to the contrary, as the court there excluded an expert's opinion that "it is unlikely that [the plaintiff] used" a product in the manner described because there was **no evidence** in the record to support that assertion. *Id*.

**Second**, Dr. Reminick's opinion is not an improper assessment of Plaintiff's "credibility" as a witness. *See* Pl.'s Mot. at 7-8. As courts have recognized, medical experts may explain that there are inconsistencies between available record evidence and a plaintiff's own testimony without invading the province of the jury. *See, e.g.*, *Allen v. Barratt*, No. 2:23-CV-00474-TL, 2025 WL 1484736, at *2 (W.D. Wash. May 23, 2025) (an expert "may testify as to whether he believes Plaintiff's testimony is supported by established medical principles and her own medical records"); *see also Norman v. Leonard's Express, Inc.*, No. 7:22CV00096, 2023 WL 3244002, at *5 (W.D. Va. May 4, 2023) (while a medical expert "may not testify about [a plaintiff's] credibility," he or she will "be permitted to testify" about why the opposing party's expert opinions are "inconsistent with the medical record or evaluative tools" used "in forming his opinion"). That is precisely what Dr. Reminick intends to do in this case. Dr. Reminick properly explains that Plaintiff's ███████████████████ are directly contrary to the evidence in the record, including witness testimony and Plaintiff's own medical records demonstrating that ████████ ████████████████████. For this reason, too, Plaintiff's motion should be denied.

**C.    Dr. Reminick's Opinions About ███████████████████ ████████ Does Not Invade The Province Of The Jury.**

The Court should also allow Dr. Reminick to offer opinions that Plaintiff is an unreliable historian ██████████████████████████████████████████████ ██████████████████████████████. *See* Pl.'s Mot. at 4, 6-7. Such opinions are directly relevant to the issues in the case and, contrary to Plaintiff's assertions, do not

9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.
Case No. 3.23-md-03084-CRB (LJC)

go to Plaintiff's credibility or character for truthfulness. *Id*. Further, these opinions are well supported by Plaintiff's medical records and other evidence.

**First**, Dr. Reminick's opinions regarding ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████, is relevant to rebut Plaintiff's assertions that ████████████████████████████. As courts have recognized, an expert "may weigh the evidence in arriving at h[er] opinion." *William F. Shea, LLC v. Bonutti Rsch., Inc.*, No. 2:10-CV-00615-GLF, 2013 WL 2424382, at *3 (S.D. Ohio June 4, 2013); *see also Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 727 (E.D.N.C. 2007) (an expert may opine about a party's credibility where "the expert opinions in question [were] introduced for reasons well beyond merely seeking to attack the credibility of any of [party]'s witnesses"). Indeed, courts have held that an expert's *failure* to consider whether a patient is accurately or reliably reporting information may warrant exclusion of his or her opinions. *See Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 521-22 (E.D. La. 2002) (excluding expert who "acknowledged that malingering needed to be 'ruled out' when the patient has a financial interest in a diagnosis" but never did so despite "mounting evidence of significant omissions from [Plaintiff's] self-reported history"). Dr. Reminick does not offer any opinions about Plaintiff's overall character or whether or not she is a credible witness, including with respect to whether the alleged incident at issue occurred. Instead, her opinion is limited to explaining that ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████.

**Second**, Dr. Reminick's opinion that Plaintiff is not a "credible historian," particularly with respect to ████████████████, is based on and supported by ample facts in the record. For example, Dr. Reminick notes that Plaintiff ████████████████████████████ as demonstrated by both the results of the MMSE assessment given to her by Dr. Rad and ████████████████████ ████████ during Dr. Reminick's own examination. 10/24/2025 Reminick Rebuttal Rep. at 6. Dr. Reminick also explains, based on her significant experience as a medical doctor and Plaintiff's own

10



medical records, that Plaintiff "█████████████████████████████████████████████ █████" and that "████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████." *Id*. These are medical opinions, not assessments of Plaintiff's credibility or character for truthfulness.

Similarly, Dr. Reminick explains that Plaintiff's treating providers contemporaneously documented instances ███████████████████████████████████████████████. For instance, one of her providers at Perkins Counseling wrote in a pre-incident note that Plaintiff "███ ███████████████████████████████████████████████████████████████████████████████ ████████████████." ███████-PC&PS-000039 (Ex. 3). Additional medical records document instances where ██████████████████████████████████████████. *See* ████████-PC&PS-000062 (Ex. 3) (Plaintiff "██████████████████████████████████████████████████████████████████ ████████████████████████████████████."); *see also* ████████-PC&PS-000005 (Ex. 2) (noting Plaintiff ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████"). Indeed, Plaintiff's ██████████████████████ ██████████ came up during a session in which her therapist, Ms. Terry, wrote that she "████████████ ████████████████████████████," after which Plaintiff "██████████████████████ ███[.]" ███████████-PC&PS-000046 (Ex. 3). Yet another record states that Plaintiff "██████████ ████████████████████████████████████████████████████████████████████████████████." ███████-PC&PS-000037 (Ex. 3). Dr. Reminick offers the unremarkable opinion, based on her review of these and other medical records, that ██████████████████████████████.

For these reasons, the cases cited by Plaintiff are inapposite. For example, Plaintiff cites *United States v. Cecil*, 836 F.2d 1431, 1433-41 (4th Cir. 1988), in which a criminal defendant sought to introduce evidence of an unsworn statement by a psychiatrist that a key prosecution witness suffered from an Oedipus complex and "narcissistic personality disorder" that led him to testify untruthfully. The court excluded the evidence because the unsworn statement was made "without some supporting facts" and the prosecution would not have "an opportunity to cross-examine [the psychiatrist] on his opinion[.]" *Id.* at

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.

Case No. 3.23-md-03084-CRB (LJC)

1441.[2] Here, by contrast, Dr. Reminick will offer sworn testimony at trial, subject to cross-examination, that Plaintiff has a well-documented history of ██████████████████████████████ ███████████████████████████.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to partially exclude Dr. Reminick's opinions.

 DATED: March 20, 2026                               Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

---

[2]    Plaintiff's other authorities are equally inapplicable. *See United States v. Lespier*, 725 F.3d 437, 448 (4th Cir. 2013) (excluding expert testimony that inconsistencies in defendant's reporting of post-incident events did not affect defendant's credibility because those inconsistencies were likely the result of sleep deprivation).

12

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF ALISON REMINICK, M.D.
Case No. 3.23-md-03084-CRB (LJC)