[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU** |
| This Document Relates to: | |
| *WHB 832 v. Uber Techs., Inc., N.D. Cal. No. 3:24-cv-04900 W.D.N.C. No. 3:25-cv-00737* | Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Date Filed: March 20, 2026<br>Trial Date: April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 832, | CASE NO. 3:25-cv-00737 |
|     Plaintiff, | Judge: Hon. Charles R. Breyer |
| v. | Courtroom: 501 |
| UBER TECHNOLOGIES, INC., et al., | |
|     Defendants. | |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Joseph Okpaku, an expert in the history, characteristics, and safety standards of the rideshare industry, properly opines that Uber has always exceeded the industry standard for safety in the rideshare industry; that rideshare companies have little control over drivers; and that regulators have treated rideshare companies as distinct from common carriers. *See* Expert Report of Joseph O. Okpaku ("Okpaku Rep.") at 5-6 (Pl.'s Mot. Ex. A). His opinions are based on his deep knowledge and experience in the rideshare industry, having himself worked at "gig economy" companies, including at Lyft. Drawing on this same experience, Mr. Okpaku testified at trial in the *Dean* case, after Plaintiffs' motion to exclude him in *Dean* was denied except as to the issue of control, because it was not at issue in that case.

Plaintiff here seeks, once again, to exclude Mr. Okpaku's opinions, arguing that they are not relevant and/or represent legal conclusions. *See* Pl.'s Mot. at 10. Because Plaintiff has abandoned her negligence claim, Uber agrees that Mr. Okpaku's opinions regarding industry standards, including his subsidiary opinion concerning dashcams, are no longer relevant and will not seek to introduce such testimony at trial, provided the door is not somehow opened to these opinions. That portion of Plaintiff's motion therefore should be denied as moot.

By contrast, Mr. Okpaku's remaining opinions—concerning how regulators have treated rideshare companies as distinct from common carriers and Uber's lack of control over drivers—remain highly relevant in light of Plaintiff's decision to pursue a claim based on Uber's alleged status as a common carrier. Mr. Okpaku's opinions support Uber's position that it is not a common carrier. They also support Uber's position that it cannot be held vicariously liable for a driver's conduct even if it were a common carrier because drivers are independent contractors rather than employees. Thus, they are clearly relevant. And Mr. Okpaku's opinions also do not constitute improper legal opinions. Plaintiff's motion therefore should be denied as meritless as to those opinions.

For each of these reasons, discussed in greater detail below, Plaintiff's motion should be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

## II.    STATEMENT OF ISSUES TO BE DECIDED

Is the testimony of Defendants' expert Joseph Okpaku admissible at trial where it is both relevant and reliable?

## III.    LEGAL STANDARD

"Under Rule 702, a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019). "A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education," and "[t]he Fourth Circuit has ruled that when an expert's qualifications are challenged, 'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 584-85 (E.D.N.C. 2015), *aff'd*, 874 F.3d 370 (4th Cir. 2017) (citation omitted); *accord United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) ("An expert may be qualified to give expert testimony by 'knowledge, skill, experience, training, or education,' which need only exceed 'the common knowledge of the average layman[.]' This standard is 'liberal.'") (citations omitted). Further, a witness "need not be the most well-known or well-qualified witness" to be qualified under Rule 702. *Nix v. Chemours Co. FC, LLC*, 805 F. Supp. 3d 626, 642 (E.D.N.C. 2025).

## IV.    ARGUMENT

All of Plaintiff's arguments flow from a false foundation—that "Uber's [sic] is a common carrier as a matter of law" and therefore owed plaintiff a non-delegable duty to provide safe transportation. *See* Pl.'s Mot. at 6. That premise is fundamentally flawed. First, Uber is not a common carrier under North Carolina law, and Mr. Okpaku's opinions provide further factual support for this conclusion. Second, even if Uber were a common carrier, Mr. Okpaku's opinions provide relevant and reliable factual evidence in support of the conclusion that drivers are independent contractors, which bars any claims for vicarious liability against Uber. Accordingly, Plaintiff's motion should be denied as to these issues.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

### A.    Mr. Okpaku's Opinions Concerning North Carolina's Framework for Regulating Common Carriers Are Relevant and Reliable.

Plaintiff first contends that Mr. Okpaku's opinions regarding regulation of common carriers in North Carolina are irrelevant because, according to Plaintiff: (1) Uber is a common carrier as a matter of law and (2) Mr. Okpaku's opinions are in any event unhelpful and unreliable. Pl.'s Mot. at 6-7. Neither assertion is true.

*First*, it is not true that Uber is a common carrier as a matter of law—quite the opposite. As explained in Uber's Motion for Summary Judgment, Uber is not even a carrier, much less a common carrier specifically. Rather, Uber is a technology company. Consistent with this foundational reality, the North Carolina legislature has recognized Transportation Network Companies ("TNCs") like Uber as a distinct industry that fundamentally differs from traditional carriers. The legislature could have regulated Uber under the state's existing common or motor carrier statutes, but instead chose to regulate Uber under a new TNC statute. That law, in turn, defines Uber's function as "connect[ing] passengers with TNC drivers," and expressly instructs that it is the "TNC drivers"—not TNCs like Uber—"who provide prearranged transportation services." N.C. G.S. § 20-280.1(6). Further, unlike traditional common carriers, TNCs are limited to "prearranged" transportation, are not required to charge standard rates, and are not required to accept any member of the public indiscriminately—indeed, they are affirmatively prohibited from soliciting members of the public for immediate transportation. *See* N.C. G.S. § 20-280.1(3). Uber's limited, statutorily codified role connecting riders and drivers establishes, as a matter of North Carolina law, that Uber is not a carrier at all. *See* Defs.' Mot. for Summ. J. at 12-14, 18-19.[1]

Uber's Terms, which every user must accept, confirm the same: they notify users that Uber's role is limited to facilitating transportation by third parties, assign all transportation responsibilities to third-party drivers, and expressly notify users that Uber is not a "provider of transportation" or a "transportation carrier." *Id*. at 14-15. In addition, Uber owns no vehicles, employs no drivers, and maintains no depots, terminals, or garages. Uber does not guarantee transport to users and advises users that no transport may

---

[1] These arguments are set forth more fully in Defendants' pending Motion for Summary Judgment, Docket No. 5475, which is incorporated herein by reference.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

occur at all if a driver is not available on the platform. *Id.* at 15-16. And Uber lacks the defining hallmarks of a "common" carrier: it retains and exercises the substantial right to refuse service to members of the public (e.g., through account deactivations) for a wide variety of reasons, and it charges individualized dynamic prices rather than fixed tariffs. Independent drivers, too, retain unfettered discretion to refuse service based on expected earnings, rider rating, and other personal preferences. Those practices are totally incompatible with more than a century of unbroken North Carolina law defining common carrier status. *Id.* at 17-19.

**Second**, to the extent Uber's alleged status as a common carrier is an issue for the jury to decide, Mr. Okpaku's opinions are relevant in that they tend to prove Uber's argument that it is not a common carrier. The public is presumed to be aware of North Carolina law, which is thus directly relevant to evaluating whether the public understands Uber to be holding itself out as a carrier. *See* Defs.' Mot. for Summ. J. at 11-14. In his report, Mr. Okpaku explains the North Carolina statutory frameworks for common carriers under the Public Utilities Act and the rideshare industry under the TNC statute, which was enacted in 2015. In so doing, he identifies features that are characteristic (or not) of common carriers under North Carolina's regulatory frameworks (e.g., different approaches to permitting and the distinct treatment of TNCs generally and "brokering TNCs" specifically), which will provide helpful context for the jury to decide a disputed question of common carrier status. Okpaku Rep. at 32-36.

Plaintiff asserts that Mr. Okpaku's testimony regarding the North Carolina TNC statute is irrelevant because that statute does not specifically address tort liability and thus "bears no weight on Uber's status as a common carrier." Pl.'s Mot. at 8. But the notion that a statute specifically governing the rideshare industry has no bearing on that industry's legal status cannot be taken seriously. As elaborated in Uber's summary judgment brief, courts have applied the virtually identical statutory and common law tests for common-carrier status interchangeably. If the Court concludes that the legislature's separate regulation of TNCs and its instruction that TNCs "connect" riders but do not "provide transportation" are not dispositive of Uber's common-carrier status, they would at minimum be relevant to the jury's common-carrier determination.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

Plaintiff also claims that Mr. Okpaku's opinions are unreliable because they amount to legal conclusions. That is also incorrect. An expert's "understanding of the requirements of state law" is admissible even where it "support[s] a finding" on an ultimate issue, provided the expert does not "testif[y] that he had reached a legal conclusion[.]" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004). Here, Mr. Okpaku's opinions highlight the factual features that are characteristic of entities treated as common carriers under North Carolina's regulatory framework, as noted above, which is entirely proper expert opinion. *Id.* As Mr. Okpaku explicitly testified, he reached no "legal opinion" on Uber's common-carrier status, but rather an "expert factual opinion" concerning how the operational features of rideshare differ from traditional carriers like taxis, and how those differences motivated different regulatory approaches under state law—which is entirely proper expert opinion. 11/5/2025 Okpaku Dep. 266:9-268:19 (Ex. 1). Nor do Mr. Okpaku's opinions improperly rest on legal analysis. In forming his opinions, he relied on his deep knowledge and extensive personal involvement in the development of TNC policies and regulation. As Director and then Vice President of Government Relations at Lyft, he was familiar with "every piece of legislation being considered for the ridesharing industry in the United States and Canada." Okpaku Rep. at 3. He testified before city, state, and federal regulatory and legislative bodies, and participated as an industry representative at high-level conferences, symposia, and the like. *Id.* at 4. By the end of his tenure, "over 40 states had enacted legislation enabling and regulating the ridesharing industry." *Id.* at 3. In short, Mr. Okpaku offers ***factual*** information rooted in his professional experience rather than legal conclusions.

**B.    Even If Uber Were A Common Carrier, Mr. Okpaku's Opinions Regarding Uber's Lack Of Control Over Drivers Would Be Admissible.**

Plaintiff next argues that Mr. Okpaku's opinions regarding Uber's control (or lack thereof) over drivers are irrelevant and, at least with respect to Mr. Okpaku's related opinions about Uber Terms, unreliable. Pl.'s Mot. at 9-11. Neither argument is correct.

***First***, Mr. Okpaku's control opinions would be highly relevant even if Uber were a common carrier. Common carriers' vicarious liability for assaults is expressly limited to employees and agents— not independent contractors. *See* Defs.' Mot. for Summ. J. at 20-28. Mr. Okpaku's control opinions

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

directly pertain to whether Plaintiff's driver, Jeffrey Richardson, was an independent contractor, and it therefore is also relevant to the question of vicarious liability.

In North Carolina, "one who employs an independent contractor is not liable for the independent contractor's acts." *DeRose for Est. of DeRose v. DoorDash, Inc.*, 675 F. Supp. 3d 591, 600 (E.D.N.C. 2023). And TNC drivers are presumptively independent contractors. N.C. G.S. § 20-280.8. While this "presumption may be rebutted by application of the common law test for determining employment status," *id.*, North Carolina recognizes employment or agency only where the principal "has the right to control the worker with respect to the manner or method of doing work, as distinguished from the right merely to require certain definite results conforming to the contract." *Little v. Poole*, 182 S.E.2d 206, 209 (N.C. Ct. App. 1971). To evaluate control, courts consider a number of factual questions that "ordinarily earmark one as an independent contractor rather than an employee[.]" *Id.* at 209 (citing *Hayes v. Bd. of Trs. of Elon Coll.*, 29 S.E.2d 137, 140 (N.C. 1944)). Richardson was an independent contractor as a matter of law for the reasons stated in Uber's summary judgment brief. But if the Court were to disagree, Mr. Okpaku's opinions would be highly relevant to the evaluation of many of these factors.

For example, Mr. Okpaku discusses drivers' complete control over when, if, and how much they want to work. *See* Okpaku Rep. at 21-23. He notes they have no schedule, no minimum hours, and no boss; they are free to accept or decline rides at will, and they are even free to provide rides through other apps if they so choose. *Id.* Mr. Okpaku also highlights language in the agreements drivers enter with Uber that is consistent with the autonomy just described and that specifically disavows any employment relationship between drivers and Uber. *Id.* at 23-25. Taken together, these facts lead Mr. Okpaku to conclude that Uber does not exercise control over drivers, which is a significant factor in determining whether they are employees or independent contractors.

Plaintiff objects that, if Uber were a common carrier, it could be held vicariously liable for Richardson's assault regardless of whether he were an employee or independent contractor. *See* Pl.'s Mot. at 10 ("Uber is liable as a common carrier *irrespective* of whether the driver was an employee or not when the assault occurred during the Uber ride."). That is incorrect. Plaintiff cites *Hairston v. Atlantic Greyhound Corp.*, 18 S.E.2d 166 (N.C. 1942), as supporting her contention, *see* Pl.'s Mot. at 10-11

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

(quoting PTO 28 at 24)), but as explained in Defendants' pending Motion for Summary Judgment, *Hairston* does not address whether a common carrier can delegate its transportation duties to independent contractors. Instead, it articulates a narrow rule imposing vicarious liability in "cases of assaults by *employees* of common carriers[.]" 18 S.E.2d at 168 (emphasis added). That limited holding does not remove common carriers from the general rule that principals are not liable for torts committed by independent contractors.[2]

*Second*, Plaintiff objects to Mr. Okpaku's discussion of agreements executed by drivers before they gain access to the Uber platform as an improper legal opinion. This objection also fails. Mr. Okpaku's report simply cites language in these agreements that is consistent with the drivers' expectations regarding their autonomy and flexibility, and Uber's lack of control over them. These are factual statements about what the contracts say, not legal interpretations. And Mr. Okpaku's ultimate opinion—"that drivers have significant control over the amount of their participation on the Uber app, and that Uber does not exercise control over drivers," Okpaku Rep. at 29, is a factual conclusion about the lack of control exercised by Uber that is ***relevant*** to a determination of whether the drivers are independent contractors, but not a legal conclusion that they are. *See Hangarter*, 373 F.3d at 1017 (expert testimony that certain conduct may violate the law was admissible because expert did not conclude that defendants violated the law). In short, Mr. Okpaku's opinions are relevant and admissible.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to exclude Uber's expert Joseph Okpaku as meritless, except as to his opinions on industry standards, as to which the motion is moot.

---

[2]    Notably, in PTO 28 the Court cited *Hairston*, 18 S.E.2d at 170 and quoted Plaintiff's opposition brief for the proposition that a nondelegable duty gives rise to vicarious liability "whether or not the breach was done by an employee ***at all***, let alone by one within the scope of employment." PTO 28 at 23 (quoting Pl.'s Opp'n at 28) (emphasis added). But *Hairston* holds that vicarious liability arises if the breach was done "by an employee ***while on duty***, whether within the line of his employment or not[.]" *Hairston*, 18 S.E.2d at 170 (emphasis added). These are very different statements—Plaintiff's phrasing implies that it does not matter if the act was committed by an employee or not, whereas *Hairston* held that liability arises whether the employee was on duty or not.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)

DATED: March 20, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF JOSEPH OKPAKU

Case No. 3.23-md-03084-CRB (LJC)