# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE:  UBER TECHNOLOGIES     )No. 3:23-md-03088-CRB
INC., PASSENGER SEXUAL ASSAULT)
LITIGATION,                   )
_____)
This Document Relates to:     )
Case No. 24-cv-7940 (B.L.)    )
Case No. 24-cv-7821 (A.R.2)   )
Case No. 24-cv-7019 (LCHB128) )
Case No. 24-cv-6708 (Dean)    )
Case No. 24-cv-4900 (WHB 832) )
_____)

VIDEOTAPED DEPOSITION OF JOSEPH O. OKPAKU

November 5, 2025

9:09 A.M.

555 California Street, Suite 2700

San Francisco, California  94104

Reported by:

Natalie Y. Botelho

CSR No. 9897

Joseph O. Okpaku
November 05, 2025

A.         Right.

Q.         And so even if common carrier is typically discussed in a legal context, is it possible to make factual observations about how the treatment of TNCs is different from typical common carriers?

A.         Yes.  And that's I believe what I was doing, or at least what I was trying to do with my discussion about common carriers.

Q.         And so from a factual point of view, what are some of the differences between how common carriers are typically treated and TNCs are under California's CPUC framework?

A.         Well, I think the biggest thing, as I mentioned before -- I'm sorry.  How they're treated or how they operate?

Q.         Either.

A.         I think how they operate is the biggest issue, right?  As I mentioned, theoretically, I could sign up for Lyft or for Uber and provide one ride -- I guess, theoretically, I could provide zero rides in a year, and somehow I'm going to be considered a common carrier, or my actions on a Lyft -- on a Lyft or Uber platform could be considered like common carrier activities.  That just makes no sense to me in the context of what

historically have been the definitions for common carriers, which are almost always conveyances that are 100% of the time used for public transportation or public enjoyment.

And then, as I mentioned before, I've noted all the, you know, times that the CPUC noted that TNCs were something unique, something new, that this was a new category that was going to go alongside the category of TCPs and that was going to accompany the category of charter party carriers.

And then again, in my report I outline all the things that were required of charter party carriers, which, you know -- that do not apply to TNC drivers or TNC vehicles.  And so that's just a factual analysis.

Q.      Okay.  And then I -- you were asked a couple questions about whether you were just reading something from the regulations.  Do you remember those questions?

A.      I do.

MR. GRILLE:  Object to form.

BY MR. WYATT:

Q.      And I just -- I want to make clear I understand.  Are you intending to provide a legal opinion in this case as to what the statutory

Joseph O. Okpaku
November 05, 2025

interpretation or regulatory interpretation of a specific wording in a statute or regulation is?

A.          No.  And, you know, this is always, I guess, a bit of a challenge when my expertise is in an area that does implicate the law, so that's why I try to be very careful to explain that I am not trying to provide a legal opinion.  I'm trying to provide my expert factual opinion based upon my experience in this industry, based upon my experience about the discussions that went into the development of this regulatory framework going all the way back to 2012.

So the idea that it's just me reading -- you know, as I think I mentioned at some point during my testimony, the idea that it's just me reading a statute or an ordinance is -- doesn't even come close to capturing my depth of experience in every part of the development of the regulatory framework for this industry.

Q.          I think you were asked some questions about whether you ever personally enforced rideshare regulations in your role at Lyft.  Do you remember that -- those questions?

A.          Yes.

Q.          And I think you responded to one of them

Joseph O. Okpaku
November 05, 2025

UNITED STATES DISTRICT COURT    )
NORTHERN DISTRICT OF CALIFORNIA)
SAN FRANCISCO DIVISION          )

           I, Natalie Y. Botelho, CSR No. 9897,

Certified Shorthand Reporter, certify:

           That the foregoing proceedings were taken

before me at the time and place therein set forth,

at which time the witness was put under oath by me;

           That the testimony of the witness, the

questions propounded, and all objections and

statements made at the time of the examination were

recorded stenographically by me and were thereafter

transcribed;

           That a review of the transcript by the

deponent {X} was requested;

           That the foregoing is a true and correct

transcript of my shorthand notes so taken;

           I further certify that I am not a relative

or employee of any attorney of the parties, nor

financially interested in the action.

           I declare under penalty of perjury under

the laws of California that the foregoing is true

and correct.

           Dated this 6th day of November, 2025.

_____

NATALIE Y. BOTELHO, CSR No. 9897