[Submitting counsel below]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COMMON CARRIER STATUS AND LIABILITY** |
| This Document Relates to: | |
| *WHB 823 v. Uber Techs., Inc., et al.*, No. 3:24-cv-04900 | Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Date Filed: March 24, 2026<br>Trial Date: April 14, 2026 |

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NORTH CAROLINA

### CHARLOTTE DIVISION

| | |
|---|---|
| WHB 823, | CASE NO. 3:25-cv-00737-CRB |
| Plaintiff, | |
| v. | Judge: Hon. Charles R. Breyer |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants | |

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
laura.vartain@kirkland.com
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
**KIRKLAND & ELLIS LLP**
alli.brown@kirkland.com
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

JESSICA DAVIDSON (*Pro Hac Vice* admitted)
**KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

SABRINA H. STRONG (SBN: 200292)
JONATHAN SCHNELLER (SBN: 291288)
**O'MELVENY & MYERS LLP**
sstrong@omm.com
jschneller@omm.com
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

BRADLEY R. KUTROW
**MCGUIREWOODS LLP**
bkutrow@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049

Counsel for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 3 |
|  | A. Uber Is Not a Carrier Because It Does Not Carry Passengers | 3 |
|  |    1. A common carrier must actually engage in carriage | 3 |
|  |    2. The TNC statute, Uber's Terms, and the facts on the ground confirm that Uber does not engage in carriage as a matter of law | 5 |
|  |    3. Uber's advertising cannot transform it into a carrier | 11 |
|  | B. Uber is Not a Common Carrier Because It Does Not Serve the Public Indifferently | 12 |
|  |    1. Uber and independent drivers retain and exercise an absolute right to refuse service | 12 |
|  |    2. Uber is not a common carrier because it does not offer its service at uniform rates | 15 |
|  | C. Plaintiff's Nondelegable-Duty Theory Fails as a Matter of Law | 17 |
| III. | CONCLUSION | 19 |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) ................................................................................................ 13, 16

*Beavers v. Fed. Ins. Co.*,
437 S.E.2d 881 (N.C. App. 1994)........................................................................................ 4, 6, 7

*Clott v. Greyhound Lines, Inc.*,
180 S.E.2d 102 (N.C. 1971)...................................................................................................... 4

*E.B. v. Uber Techs., Inc.*,
No. 2024-CP-46-2996 (Jun. 13, 2025 S.C. Ct. Com. Pl.)......................................................... 6

*Godwin v. Carolina Tel. & Tel. Co.*,
48 S.E. 636 (N.C. 1904)...................................................................................................... 13, 15

*Gordon v. Garner*,
493 S.E.2d 58 (N.C. App. 1997)..................................................................................... 4, 10, 18

*Gray v. Cent. Warehouse Co.*,
106 S.E. 657 (N.C. 1921)............................................................................................... 13, 14, 15

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) .................................................................................................... 17

*Guy v. Travenol Labs., Inc.*,
812 F.2d 911 (4th Cir. 1987) .................................................................................................... 20

*Hairston v. Atlantic Greyhound Corp.*,
18 S.E. 2d 166 (N.C. 1942)....................................................................................................... 18

*Home Ins. Co. v. Riddell*,
252 F.2d 1 (5th Cir. 1958) ........................................................................................................ 16

*The Cape Charles*,
198 F. 346 (E.D.N.C. 1912)....................................................................................................... 13

*Jackson v. Stancil*,
116 S.E.2d 817 (N.C. 1960)................................................................................................ *passim*

*Mann v. Va. Dare Transp. Co.*,
198 S.E.2d 558 (N.C. 1973)...................................................................................................... 18

*N. Laramie Land Co. v. Hoffman*,
268 U.S. 276 (1925)..................................................................................................................... 7

*NetChoice L.L.C. v. Paxton*,
49 F.4th 439 (5th Cir. 2022) ..................................................................................................... 15

*Osborne ex rel. Powell v. Yadkin Valley Econ. Dev. Dist., Inc.*,
865 S.E.2d 307 (N.C. App. 2021)........................................................................................ 4, 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Park v. Merrill Lynch*,
582 S.E.2d 375 (N.C. App. 2003)......................................................................................... 8

*Parker v. Erixon*,
473 S.E.2d 421 (N.C. App. 1996)......................................................................................... 18

*Patterson v. Duke Power Co.*,
36 S.E.2d 713 (N.C. 1946).............................................................................................. 4, 9

*Rhyne v. K-Mart Corp.*,
594 S.E.2d 1 (N.C. 2004).................................................................................................. 7

*Saacke N. Am., LLC v. Landstar Carrier Servs., Inc.*,
2013 WL 7121197 (W.D.N.C. Dec. 19, 2013)..................................................................... 5

*Starr Indem. & Liab. Co. v. RXO Capacity Sols., LLC*,
2024 WL 2979728 (W.D.N.C. May 10, 2024) ..................................................................... 5

*State ex rel. Utilities Comm'n v. Am. Courier Corp.*,
174 S.E.2d 814 (N.C. App. 1970)................................................................................. 13, 18

*State ex rel. Utils. Comm'n v. Gulf-Atl. Towing Corp.*,
110 S.E.2d 886 (N.C. 1959)........................................................................................ passim

*State v. Bryant*,
614 S.E.2d 479 (N.C. 2005)............................................................................................... 7

*Weade v. Dichmann, Wright & Pugh, Inc.*,
337 U.S. 801 (1949)................................................................................................. 5, 9, 11

*Wells v. Consol. Jud. Ret. Sys. of N.C.*,
553 S.E.2d 877 (N.C. 2001)............................................................................................... 7

*White v. Norfolk & S.R. Co.*,
20 S.E. 191 (N.C. 1894)............................................................................................. 18, 19

*Williams v. Gill*,
29 S.E. 879 (N.C. 1898).................................................................................................. 18

*Woodson v. Rowland*,
407 S.E.2d 222 (N.C. 1991)............................................................................................. 17

**Statutes**

G.S. § 160A-578 ............................................................................................................. 9

G.S. § 160A-608 ............................................................................................................. 9

G.S. § 20-280.1 ..................................................................................................... 1, 6, 14

G.S. § 20-280.3 ....................................................................................................... 14, 18

G.S. § 20-280.5 ............................................................................................................. 10

G.S. § 20-280.7 ............................................................................................................. 6

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

G.S. § 20-280.8 ................................................................................................................ 6, 10, 19

G.S. § 62-1 ................................................................................................................................... 6

G.S. § 62-2 ................................................................................................................................. 14

G.S. § 62-260 .............................................................................................................................. 7

G.S. § 62-3 ................................................................................................................. 4, 10, 11, 18

**Other Authorities**

14 Am. Jur. 2d Carriers § 678 ..................................................................................................... 5

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment asks the Court to hold Uber absolutely liable—without regard to its own fault—for *any* assault committed by any of the tens of thousands of North Carolinians who offer rides independently using its platform. As explained in Uber's own Motion for Summary Judgment, Plaintiff's claim that Uber is a common carrier finds no support in North Carolina law.[1] The argument contravenes the plain text of North Carolina's statute establishing that Uber is a Transportation Network Company ("TNC") whose function is to *connect* users seeking rides to *others* who independently provide transportation, not a common carrier that provides transportation. Plaintiff's common-carrier argument also contradicts the clear language of her express agreement to Uber's Terms of Use ("Terms"). And her argument is irreconcilable with the undisputed operational realities of the Uber platform. Moreover, Plaintiff's contention that *if* Uber were a common carrier it would be absolutely liable for all tortious acts committed by independent-contractor drivers—even intentional criminal acts—lacks any basis in North Carolina law. The Court should deny Plaintiff's motion and grant Uber's Motion for Summary Judgment.

***Not a carrier.*** Plaintiff's motion ignores the North Carolina legislature's dispositive directive in the TNC statute that Uber is a transportation *intermediary*, not a carrier of persons. In North Carolina, as elsewhere, a carrier must actually carry passengers, not just connect them with others who do the carrying. In enacting the TNC statute, the North Carolina General Assembly explicitly assigned TNCs like Uber a limited, non-carriage role. The legislature bypassed North Carolina's existing common-carrier statute and instead instructed that the function of TNCs like Uber is to operate an "application" that "connect[s]" riders with drivers. The legislature further instructed that it is presumptively independent "TNC driver[s]"—not Uber—"who provide . . . transportation services." G.S. § 20-280.1(5)-(6). That definitive instruction tracks  the reality on the ground: as a matter of North Carolina law, Uber does not perform carriage. Consistent with Uber's statutory mandate, its Terms inform every

---

[1] *See* Defs.' Mot. for Summ. J. (Mar. 10, 2026) (Dkt. 5475) ("Defs.' Mot.") at 11-27. Unless otherwise noted, citations herein refer to materials filed in support of Defendant's pending Motion for Summary Judgment.

1

rider that Uber facilitates transportation by independent contractors but does not itself provide transportation services. And the undisputed facts confirm that Uber neither owns or operates any vehicles nor employs the contractors who provide transportation; transportation is provided by North Carolinians who work independently to offer their services as they see fit, controlling virtually every facet of the rides they agree to provide.

Plaintiff argues that colloquialisms in Uber's advertising—anodyne phrases like "Ride with Uber" and "hold[] [Uber] out as a transportation provider"—trump the TNC statute, Uber's Terms, and the undisputed facts about how Uber operates. Plaintiff's Mot. for Partial Summ. J. ("Mot.") at 3. But Uber advertises against a statutory, contractual, and operational backdrop that leaves no room for doubt it does not perform carriage—particularly given that North Carolina imputes knowledge of the TNC statute and Uber's Terms to all riders. Plaintiff's argument that an advertisement saying "Ride with Uber" is sufficient to create a common-carrier obligation defies not only common sense but also North Carolina's common-carrier statute, which makes clear that an intermediary that holds itself out as providing or furnishing transportation is a "broker" and "not a . . . carrier." Not a single North Carolina case has ever imposed common-carrier liability on an entity that did not undertake to itself perform carriage. This federal court interpreting North Carolina law in diversity should not be the first.

Plaintiff alternatively argues that Uber is a carrier because, among other things, it matches riders and drivers, collects payment, facilitates car rentals for drivers, and requires drivers to undergo vehicle inspections. But North Carolina law mandates vehicle inspections, not Uber, and the driver at issue in this case was not using a rental vehicle. And the other actions Plaintiff points to are all fully consistent with Uber's status as an intermediary rather than a carrier. Indeed, Plaintiff's list is most telling for what it does not include: Any semblance of control over how the independent drivers provide the transportation. That lack of control is fundamentally incompatible with common carrier status. Plaintiff's motion should be denied for that reason alone.

***Not a common carrier.*** Uber also is not a carrier because it does not serve the public indifferently. Both Uber and drivers reserve the right to refuse their respective services at any time for any reason—and they regularly exercise that right. Moreover, in North Carolina a common carrier must

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

"hold out" services at uniform rates, as Plaintiff acknowledges (Mot. 3). But Uber indisputably does not do that. Instead, it proposes dynamic prices driven by supply and demand, which any driver or rider is free to accept or reject. A market-based platform premised on millions of individual discretionary transactions is the opposite of *common* carriage. Plaintiff offers no satisfactory response to these defects: She simply ignores North Carolina's uniform-rate requirement, and her analogies to the very limited right of refusal exercised by common carriers in other jurisdictions looks nothing like the unqualified right to refuse carriage that is exercised by Uber and drivers.

*No "nondelegable" duty.* Even if Uber were a common carrier, it would not be absolutely liable for every assault committed by every independent driver in North Carolina, even when Uber bore no fault and had no reason to know the assault was likely to occur.  Plaintiff's contention that Uber owes a "nondelegable duty" runs headlong into the TNC statute, which explicitly mandates that Uber *delegate* transportation duties to presumptively independent drivers. Even if that were not the case, North Carolina imposes nondelegable transportation duties only on common carriers operating under a state-issued franchise, which Uber does not (and could not) do. Nor would North Carolina's rule that a common carrier is liable for assaults by *on-duty employees* justify liability here, since Richardson was an independent contractor, not an employee or agent.

For all of these reasons, accepting Plaintiff's argument that Uber is a common carrier in North Carolina would require superseding a North Carolina statute and breaking with decades of North Carolina precedent. Plaintiff's common-carrier claim fails as a matter of law, and the Court should deny Plaintiff's motion and enter summary judgment for Uber. At a minimum, Plaintiff's motion must be denied because a reasonable juror could easily conclude Uber neither carries passengers nor offers its services indifferently and therefore is not a common carrier.

## II.    ARGUMENT

### A.    Uber Is Not a Carrier Because It Does Not Carry Passengers.

### 1.    A common carrier must actually engage in carriage.

In North Carolina, as elsewhere, a "carrier" must actually transport persons or goods. "[T]he fundamental service which a common carrier renders is *transportation*." *Beavers v. Fed. Ins. Co.*, 437

S.E.2d 881, 883 (N.C. App. 1994) (emphasis in original).[2] Under both statute and common law, a common carrier "holds itself out to the general public to *engage in transportation*." G.S. § 62-3(6)-(7). By definition, a common carrier exercises "complete control" over the "management and operation of the whole instrumentalities of carriage." *Patterson v. Duke Power Co.*, 36 S.E.2d 713, 714-16 (N.C. 1946); *cf. Clott v. Greyhound Lines, Inc.*, 180 S.E.2d 102, 107 (N.C. 1971) (no carrier liability where there was no "acceptance of . . . baggage into the exclusive custody and control of defendant as a carrier for its transportation"). A company that contracts with independent-contractor drivers to deliver its products is "neither a common nor contract carrier" for the simple reason that it owns "no . . . trucks or other transportation vehicles and is therefore incapable of transporting property for compensation." *Gordon v. Garner*, 493 S.E.2d 58, 62 (N.C. App. 1997); *cf. Osborne ex rel. Powell v. Yadkin Valley Econ. Dev. Dist., Inc.*, 865 S.E.2d 307, 319-320 (N.C. App. 2021) (school district was not liable for school-bus assaults where independent contractor "owned its own vehicles" and had "control" or "custody" over students).[3]

North Carolina's common-carrier statute—which North Carolina courts routinely rely on to interpret tort duties, *see infra* at 6-7—underscores this fundamental requirement that a common carrier must actually *carry* passengers or goods. The statute defines a "broker" in contrast to a "carrier" as an entity that is "*not* . . . [a] motor carrier" but "holds himself . . . as one who *sells, provides, furnishes, contracts, or arranges* for such transportation." G.S. § 62-3(1a). The statute thus recognizes that transportation intermediaries, like Uber, that do not control the means of transportation can "hold themselves out" as "providing," "arranging," or "contracting" for transportation without transforming into "carriers."

---

[2] Unless otherwise noted, all emphases are added and all alterations, citations, and internal quotations are omitted.

[3] As discussed in further detail below, a statutory common carrier operating pursuant to a state-issued franchise cannot delegate the carriage duties that the state-issued franchise entails. That principle is fully consistent with the common law's carriage requirement because a common-carrier franchise imposes an obligation on its recipient *to carry.* It has no application to Uber, which operates pursuant to a permit, not a franchise, under a statutory scheme that requires it to connect riders and drivers, not provide transportation. *See infra* at 6-7.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

That approach accords with general common law principles. A carrier-passenger relationship cannot exist unless a passenger is "in some substantial sense in the custody or under the control of [the] carrier." 14 Am. Jur. 2d Carriers § 678. For example, in *Weade v. Dichmann, Wright & Pugh, Inc.*, the Supreme Court rejected common-carrier liability for a steamboat agent because "the contract called for the *actual transportation* to be carried out by the War Shipping Administration," whereas it bound the agent only "to *arrange* for the transportation of passengers." 337 U.S. 801, 806-7 (1949). Plaintiff asserts that the defendant in *Weade* had "only limited duties" (Mot. 6-7), but in fact the agent was responsible for advertising, hiring the crew, issuing tickets, maintaining the vessel, maintaining the terminal, loading and unloading passengers, and provisioning the ship. *Id.* at 805. The Court nevertheless held that the agent was not a common carrier because it was not responsible for "*the actual movement* of . . . passengers." *Id.* at 808. Courts distinguishing carriers from brokers under the Interstate Commerce Act—which "codified the common law of carriers," *Saacke N. Am., LLC v. Landstar Carrier Servs., Inc.*, 2013 WL 7121197, at \*4 (W.D.N.C. Dec. 19, 2013), similarly hold that the "key question" is whether the entity "accepted legal responsibility to transport" or instead "merely agreed to locate and hire a third party" to undertake the transportation. *Starr Indem. & Liab. Co. v. RXO Capacity Sols., LLC*, 2024 WL 2979728, at \*5 (W.D.N.C. May 10, 2024).

Especially in this diversity-jurisdiction case, it is important to emphasize that Plaintiff's argument has no foundation whatsoever in state law precedent: Plaintiff has not cited a single North Carolina decision imposing common-carrier duties on a party that has not assumed any contractual or statutory duty to carry anything. Uber is aware of none. Plaintiff's common-carrier claim thus requires her to prove that Uber assumed such a duty and exercised the requisite control over her transport.

**2.      The TNC statute, Uber's Terms, and the facts on the ground confirm that Uber does not engage in carriage as a matter of law.**

Uber did not assume any legal duty to carry Plaintiff and did not control her transportation. Instead, Uber operates under a statutory framework making clear it does not carry anyone—and Uber in fact did not carry Plaintiff. *See* Defs.' Mot. 12-17. Moreover, Uber's legal designation as a non-carrier is further confirmed by the express terms of the contract that Plaintiff signed with Uber, which likewise

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

reiterated to her that Uber would not be the one carrying her. Those are each reason enough to deny Plaintiff's motion.

**The TNC Statute.** In enacting the TNC statute, the North Carolina legislature recognized that TNCs like Uber fundamentally differ from common carriers. *See* Defs.' Mot. 2, 6-7, 11-14. The General Assembly could have regulated TNCs like Uber under the State's existing common-carrier statute. *See* G.S. § 62-1, *et seq.* It instead regulated Uber under a distinct statutory framework premised on Uber's role as an intermediary, not a carrier. *See* G.S. §§ 20-280.1(6), 20-280.7.

The TNC statute defines a TNC like Uber as an entity that "uses an online-enabled application or platform to *connect* passengers with TNC drivers *who provide* prearranged transportation services." G.S. § 20-280.1(6) (emphases added). Indeed, *all* TNC transportation services are "provided by a TNC driver." *Id.* § 20-280.1(5). And the "TNC drivers" who "provide . . . transportation" are presumptively "independent contractor[s] and not . . . employee[s]" of the TNC. *Id.* § 20-280.8. The statute thus draws a clear division of responsibilities: On one side, a TNC like Uber runs a software "application or platform" to "connect passengers with . . . drivers"; on the other, presumptively independent "TNC drivers . . . provide prearranged transportation services." *Id.* § 20-280.1(6); *see id.* § 20-280.1(5) (defining "TNC service" as "Prearranged transportation service *provided by a TNC driver*"). As a recent decision interpreting North Carolina tort law explained, the legislature's choice to bypass North Carolina's common-carrier statute and regulate Uber under a "distinct statutory scheme[]" that assigns carriage duties to drivers can only be understood as a "policy choice . . . by North Carolina's legislature" that "Uber is not a 'common carrier.'" *E.B. v. Uber Techs., Inc.*, No. 2024-CP-46-2996 (Jun. 13, 2025 S.C. Ct. Com. Pl.) (Dkt. 5475-18).

Plaintiff's assertion (Mot. 9-10) that the TNC and common-carrier statutes are irrelevant to tort liabilities contradicts North Carolina law. North Carolina's statutory common-carrier test is virtually identical to the common law test, and courts apply the two interchangeably. *See Beavers*, 437 S.E.2d at 883 (applying the statute and common law together); *State ex rel. Utils. Comm'n v. Gulf-Atl. Towing Corp.*, 110 S.E.2d 886, 889-91 (N.C. 1959) ("*GATCO*") (same). Consistent with that convergence, North Carolina's Pattern Jury Instructions for motor vehicle negligence define "common carriers" by

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

reference to the common-carrier statute—"[v]ehicles operated under a certificate of authority issued by the Utilities Commission . . . between fixed termini or over a regular route." *See* N.C.P.I.–Motor Vehicle 999.20 (June 2009) (App. A, Definitions). Indeed, Uber is not aware of a single North Carolina decision imposing common-carrier tort duties on parties that are not regulated under the common-carrier statute or subject to its "[e]xemptions from regulation."[4] *See* G.S. § 62-260. The General Assembly is "[p]resumed to act with full knowledge of prior and existing law." *Wells v. Consol. Jud. Ret. Sys. of N.C.*, 553 S.E.2d 877, 881 (N.C. 2001). Its choice to omit TNCs like Uber from a statutory scheme that—by regulation or exemption—has always encompassed every party subject to common-carrier tort duties can only be understood as a deliberate "policy choice." *E.B.*, *supra*, at 6.

The TNC statute confirms that choice. Whether to impose sweeping common-carrier duties on a technology platform is a question for the General Assembly—North Carolina's "preeminent" "policy-making agency . . . that, unlike the judiciary, is . . . well equipped to weigh all the factors" and "balance competing interests." *Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 8-9 (N.C. 2004). And that body has spoken: The TNC statute states—without qualification—that Uber's function is making connections, not transporting passengers. It would defy logic to hold that Uber "engages in transportation" when the legislature has clearly stated that it does not. And while the TNC statute's unequivocal language is dispositive on its own, the statute also forms a core part of the "facts and circumstances" under which Uber "holds [itself] out to the public." *Jackson v. Stancil*, 116 S.E.2d 817, 824 (N.C. 1960). "'All persons are charged with knowledge of the provisions of statutes . . . .'" *State v. Bryant*, 614 S.E.2d 479, 489 (N.C. 2005) (quoting *N. Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925)). No reasonable juror could find that Uber holds itself out as a carrier when the statute under which it offers its services unequivocally says that it does not provide transportation services.

---

[4] Citing *Beavers*, Plaintiff argues that "passenger elevators" and "an aircraft transporter of musicians" qualify as common-law common carriers even though they are not regulated under common-carrier statute. Mot. 10. But no North Carolina court has ever so held. *Beavers* referenced out-of-state cases about elevators and musician aircrafts in dicta to illustrate that the "basic function of a common carrier is the provision of . . . transportation." 437 S.E.2d at 883. And, unlike for TNCs, no North Carolina law instructs that elevators and charter flights *do not* engage in transportation.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

***Uber's Contracts.*** Uber's Terms likewise inform users unequivocally that it is an intermediary for making connections to carriers, not a carrier itself. *See* Defs.' Mot. 14-15. The Terms define Uber's "Services" as "enabl[ing] users to *arrange and schedule* transportation . . . with third party providers." Dkt. 5475-4 ("Terms") at -478. Users must acknowledge conspicuous language affirming that the "ability to obtain transportation . . . services through the use of [Uber's] services *does not* establish Uber as a provider of transportation . . . or as a transportation carrier." *Id.* Users "agree that Uber has no responsibility to [users] related to *any transportation . . . services* provided to [users] by *third party providers*," *id.* at -483, and that Uber makes no "guarantee regarding the . . . availability of the services," *id.* They further acknowledge that Uber reserves the unqualified right to deny or revoke platform access "at any time for any reason," and that "transportation . . . services" are "subject to acceptance by . . . Third Party Providers." *Id.* at -475, -478; Dkt. 5475-21 (Declaration of Erin O'Keefe ISO Defs.' Mot. for Summ. J. ("O'Keefe Decl.")) ¶¶ 24, 26, 38-39. Drivers likewise acknowledge that they act "solely" as independent contractors, that Uber provides only "lead generation to [them as] independent providers of . . . passenger transportation services," that its services "enable an authorized transportation provider to seek, receive, and fulfill requests," and that providing transportation "create[s] a direct business relationship between [drivers] and [riders]." Dkt. 5475-2 ("Driver Agreement") at -3328, -3329, -3330, -3339.

Far from a "form of subterfuge," Mot. 9, those contractual terms accurately characterize Uber's responsibilities under the TNC statute. *See supra* at 6-7. And as with the TNC statute, North Carolina law imputes knowledge of these Terms to all riders, who must accept them before obtaining transportation through the Uber platform. *Park v. Merrill Lynch,* 582 S.E.2d 375, 380 (N.C. App. 2003). Indeed, this Court has already held that Plaintiff was on "notice" of the agreement and "manifested [her] assent" whether or not she "actually read" its terms. Dkt. 3484 (PTO 29) at 4-5. As a matter of law, riders who understand Uber's non-carrier role (or who are charged with that knowledge) because of the contract they signed cannot show that they *reasonably* understood Uber to hold itself out as a carrier. Just as the agent in *Weade* was not a common carrier where it contracted only to "arrange" transport,

Uber is not a common carrier where it contracts only to "arrange and schedule" transport. *See Weade*, 337 U.S. at 805; *supra* at 8.

***Operational Realities.*** Uber's operations confirm its statutory and contractual role: Uber does not in fact carry anyone. *See* Defs.' Mot. 15-17. Uber does not own, operate, or lease the vehicles independent drivers use to provide transportation. O'Keefe Decl. ¶ 13. Nor does it "dispatch" drivers or control the operational details of the rides like the route. *Id.* ¶ 8. And it does not employ the drivers who control the means of transportation. *Id.* ¶¶ 8-9. Instead, TNC drivers are presumptively independent contractors who bear exclusive responsibility for their vehicles' registration, maintenance, and operation; are responsible for procuring personal auto liability insurance; can serve the geographic area of their choice; have total control over which ride requests to accept (if any); spend less than 20 hours per week on average on the Uber App, and can simultaneously work (i.e., "multi-app") for competitors like Lyft. *Id.* ¶¶ 11-12, 18-19, 20, 22; Driver Agreement at -3331, -3338.

Plaintiff argues that vehicle ownership is irrelevant because transit agencies retain common-carrier status by leasing or borrowing vehicles. Mot. 7. As a threshold matter, transit agencies are carriers for the simple reason that state law requires them to *provide transit. See* G.S. §§ 160A-578, 160A-608 (establishing that the statutory "purpose" of municipal and regional transit authorities is "to provide for a safe, adequate and convenient public transportation system"). The TNC statute, by contrast, affirmatively *withholds* that responsibility from Uber. *See supra* at 6-7. Regardless, whether a transit agency owns, leases, or borrows its fleet, the key legal point is that it maintains direct physical possession of the vehicles and exercises complete control over the employees who operate them. The same cannot be said of Uber. Uber does not own, lease or borrow vehicles, does not employ drivers, and does not otherwise "control" the means of carriage. *Patterson*, 36 S.E.2d at 714-16. It is "incapable of transporting" anyone because it lacks not just the legal authority but the physical means to do so. *Gordon*, 493 S.E.2d at 62.[5]

---

[5] It is not clear what conclusion Plaintiff would have the Court draw from her assertion that drivers are not "professional drivers who own independent transportation businesses." Mot. 5. North Carolina law's only statement on drivers' status is that they are "individual[s]" that "use [] passenger vehicle[s]" to provide "transportation service[s]," G.S. § 20-280.1(4), (5), and are *presumptively independent of Uber*,

Plaintiff alleges that various functions Uber performs render it a carrier, but points to nothing giving Uber control over rides. Mot. 5-6. Plaintiff's assertion that Uber "dispatches a particular driver" plainly misstates the undisputed facts in this case. *Id.* at 5. Uber sends users' trip requests to multiple independent drivers, who retain the "right to decline and/or cancel any trip request" as they see fit. O'Keefe Decl. ¶¶ 15-16, 38. Proposing prices to drivers and riders is likewise consistent with intermediary status—particularly given that Uber earns a service fee for facilitating the connection to independent drivers, not a fare for physical transportation, and takes payment from riders only as the drivers' "limited payment collection agent." *Id.* ¶¶ 35-36; *see also* Driver Agreement at -3334; *cf.* G.S. § 62-3(1a) (brokers arrange transportation "for compensation"). Plaintiff's assertion that Uber "requires vehicle inspection," Mot. 6, is not only insufficient to establish that Uber controls rides; it also ignores that North Carolina law provides that it is "TNC drivers [who must] have their vehicles inspected." G.S. § 20-280.5(a). North Carolina thus imposes the vehicle inspection requirement and assigns the responsibility for vehicle inspections to drivers, not Uber.

The same is true of the other functions Plaintiff cites. "[P]artner[ing] with rental agencies" to connect drivers with rental vehicles (Mot. 5) only underscores that Uber never itself obtains possession, custody, or control over the means of carriage. O'Keefe Decl. ¶ 11. And Uber's steps to improve the safety and transparency of the platform—including channels for "report[ing] safety incidents," "customer support to riders and drivers," and "publiciz[ing] . . . on-trip sexual assault incidents" in its Safety Report, *see* Mot. 6—are exactly what one would expect from a responsible *intermediary*. Those safety precautions say nothing about whether Uber itself "carries" passengers.[6]

What is striking about Plaintiff's list of functions is what it does not include: any act of control over the performance of transportation. Just as the defendant in *Weade* did not become a carrier by

*see id.* § 20-280.8. Whether drivers are professionals, amateurs, or some mix of the two, their independence establishes as a matter of law that it is not Uber that performs transportation.

[6] Plaintiff relies on Uber's "RideCheck" feature as indicative of real-time control over rides, Mot. 7, but RideCheck alerts flagging route deviation did not exist at the time of the alleged incident. *See* Dkt. 4356-3 ¶ 5. Even if they did, providing app- or text-based check-ins would not give Uber control over transportation.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

advertising, ticketing passengers, maintaining and provisioning the ship, loading passengers, and hiring the crew, Uber does not become a carrier by matching riders, processing payments, or offering in-app safety features. *See Weade*, 337 U.S. at 803.

### 3. Uber's advertising cannot transform it into a carrier.

Plaintiff seizes on anodyne advertising slogans ("Ride with Uber") to argue that Uber holds itself out as a "carrier." Mot. 3-4. But in the case she relies on, *Jackson*, there was no dispute that the defendant charter-plane service was a carrier. 116 S.E.2d at 825; *see* Mot. 3 (quoting *Jackson*, 116 S.E.2d at 824). Starting from that premise, the court considered advertising in analyzing "whether *the carrier* is acting as a common carrier or as a contract carrier"; not whether the defendant was a carrier in the first place. *Jackson*, 116 S.E.2d at 824; *see id.* ("The chief test applied to determine whether *a carrier* is a 'common carrier' is whether . . . [he] holds himself out to the public as willing to carry at a fixed rate all persons applying . . . ."); *see id.* ("it is not what *the carrier* declares himself to be but is what the facts and circumstances show him to be").

Plaintiff cites no authority suggesting that a party that is not a carrier to begin with can become one through advertising. That premise contradicts North Carolina's statutory definition of "broker" as a party that is "*not* . . . [a] motor carrier" but "holds himself . . . out by solicitation, advertisements, or otherwise, as one who *sells, provides, furnishes, contracts, or arranges* for such transportation." G.S. § 62-3(1a). As that definition makes clear, a party that is "not . . . [a] carrier" does not become one by "advertis[ing]" itself "as one who sells, provides, furnishes . . . or arranges for . . . transportation." *Id.*

In any event, Uber's advertisements are not disseminated in a vacuum. *See Jackson*, 116 S.E.2d at 824 (common-carrier status depends on "facts and circumstances"). Every North Carolinian who views Uber's advertisements is imputed with knowledge of both its limited statutory role and its Terms' disclaimer that transportation services are performed by independent third parties. *See supra* at 6-9. Uber is entitled to advertise on the assumption that North Carolinians are aware of the statutory, contractual, and operational reality that Uber does not carry anything. The notion that, despite these realities, it becomes a common carrier unless its advertisements trumpet drivers' independent contractor status lacks any basis in North Carolina law.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

The TNC statute, Uber's Terms, and Uber's operations establish that Uber does not carry anyone as a matter of law. But if the Court concluded that a dispute of fact over Uber's advertisements precluded that ruling, then that dispute, too, would merit denial of Plaintiff's motion.

**B.    Uber is Not a Common Carrier Because it Does Not Serve the Public Indifferently.**

The "distinctive characteristic of a common carrier is that [it serves the public] indifferently." *Jackson*, 116 S.E.2d at 824. "The crucial test as to whether one is a common carrier" is thus "whether he holds himself out as such, either expressly or by a course of conduct, that he will carry for hire on a uniform tariff all persons applying so long as he has room." *Id.* at 825. Plaintiff concedes that is the proper test. Mot. 2-3.

But Plaintiff's common-carrier claim fails that test twice over. First, both Uber and independent drivers retain and exercise an unqualified right to refuse their respective services that contrasts sharply with common carriers' very limited right of refusal. Defs.' Mot. 17-20. And it is undisputed that Uber does not charge uniform rates but instead proposes prices dynamically to match supply with demand. *Id*. at 19-20. Both defects require denial of Plaintiff's motion and entry of summary judgment for Uber. *See id.* at 17-20.

**1.    Uber and independent drivers retain and exercise an absolute right to refuse their respective services.**

The core distinction between a common carrier and a private carrier is the reservation and exercise of the right to service on a case-by-case basis. A common carrier "hold[s itself] out to the public as ready to accept and carry . . . all who offer," whereas a private carrier "may refuse to . . . contract for carriage" and "is not bound to serve every person who may apply." *GATCO*, 110 S.E.2d at 889-90. Put differently, private carriers, unlike common carriers, enjoy the right to make "individualized decisions, in particular cases." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 764 (4th Cir. 2018). "The true test of the character of [a business] as to the fact whether [it] is a common carrier or not, is his legal duty and obligation" to transport customers; if it is "optional with him whether he will or will not carry" he is not a carrier, but if he must carry "for all alike" then "he is a common carrier." *The Cape Charles*, 198 F. 346, 349 (E.D.N.C. 1912).

In *GATCO*, for example, the North Carolina Supreme Court held that a barge operator was not a common carrier even though he testified that he would haul for "any" major company that "agree[s] on the terms of service" and "price." 110 S.E.2d at 890-91 ("It wouldn't make any difference who called me if they were going to pay."). Because the operator retained discretion to "choose not to contract with anyone," the court held he was a private carrier as a matter of law. *Id.* By contrast, North Carolina law strictly limits a common carrier's latitude to refuse carriage. A common carrier "could not refuse to convey [a passenger] because he had done an illegal act," *Gray v. Cent. Warehouse Co.*, 106 S.E. 657, 663 (N.C. 1921), and "would not be authorized to refuse to convey the plaintiff because she keeps a bawdy house" or based on a rider's "unlawful and disreputable purpose" or character. *Godwin v. Carolina Tel. & Tel. Co.*, 48 S.E. 636, 637 (N.C. 1904); *see State ex rel. Utils. Comm'n v. Am. Courier Corp.*, 174 S.E.2d 814, 816 (N.C. App. 1970) (while a "common carrier *must* provide service on call and demand to *all of the public* at published regulated rates . . . so long as it is able," a "contract carrier . . . is not required to serve anyone and does not serve anyone except those that it voluntarily enters into contracts with").

Uber plainly does not satisfy this requirement for common-carrier duties. *See* Defs.' Mot. 17-19. The TNC statute imposes no obligation comparable to a statutory common carrier's to provide services "without unjust discrimination, undue preferences or advantages." G.S. § 62-2(a)(4).[7] Uber's Terms accordingly reserve an unqualified contractual right to deny or revoke access to its "Services"—i.e., "enabl[ing] users to *arrange and schedule transportation* . . . with third party providers"—"at any time for any reason," without regulatory review. Terms at -475, 478; O'Keefe Decl. ¶ 26. The Terms likewise "make[] no . . . guarantee regarding the . . . availability of the services." Terms at -483. And Uber systematically exercises that discretion by screening, monitoring, and excluding rider accounts on an ongoing basis for a variety of reasons—such as low user ratings or community guidelines violations,

---

[7] The TNC statute requires Uber to maintain two nondiscrimination policies: a "[p]olicy of nondiscrimination based on customers' geographic departure point or destination," and a "[p]olicy of nondiscrimination based on customers' race, color, national origin, religious belief or affiliation, sex, disability, or age." G.S. § 20-280.3(d)(4)-(5). The General Assembly's choice to mandate *policies*, rather than impose nondiscrimination obligations on Uber itself, further confirms that it is drivers—not Uber—who are tasked with performing transportation. Regardless, neither required policy resembles the broad nondiscrimination obligation of common carriers. *See GATCO*, 110 S.E.2d at 889-90.

13

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

O'Keefe Decl. ¶¶ 26-27—that common carriers cannot legally consider. *See Gray*, 106 S.E. at 663. For example, across 2023, 2024, and 2025, Uber banned more than 750,000 rider accounts in the United States, including a substantial number for discretionary reasons such as low user ratings and community-guidelines violations. Supplemental Decl. of Erin O'Keefe ISO Defs.' Opp'n ¶ 3. Uber similarly blocks rider accounts with fake names. O'Keefe Decl. ¶ 27. As of the time of publishing Uber's 2021-2022 U.S. Safety Report in 2024, Uber had banned over 15,000 rider accounts from the platform as a result of these checks. *Id.*; Dkt. 5475-5 (2021-2022 U.S. Safety Report) at -3561532.

Equally dispositive: an equally broad right of refusal is available to the "TNC Drivers who provide . . . transportation services" through the Uber App. G.S. § 20-280.1(6). Each driver has the absolute right "to accept or to decline or ignore a User's request for Transportation Services via the Uber Services." Driver Agreement at -3331; O'Keefe Decl. ¶ 16. To facilitate the exercise of that right, the App provides the driver with information about the rider and trip—including the requested destination, estimated distance, and rider ratings. *Id.* ¶¶ 38, 41. Drivers are free to decline rides based on, for example, expected earnings, the rider's requested destination, or their unfavorable view of the rider's rating. *Id.* ¶ 39. Drivers likewise retain the "sole right" to determine when, where, and if they use the App at all, and can use the platform as a casual or occasional undertaking, with no regular schedule or minimum-hours requirement. Driver Agreement at -3331; O'Keefe Decl. ¶¶ 15, 17.[8] That is the opposite of common carriage. Richardson's freedom to "furnish[] transportation . . . only to those with whom he [saw] fit to contract" establishes that the services he offered would qualify as contract carriage, not common carriage. *GATCO*, 110 S.E.2d at 890. It cannot reasonably be disputed that drivers on the Uber platform undertake transportation "not for the public convenience" but as a "private transaction." *Id.* at 889. The same is necessarily true for the platform that facilitates their services.

Plaintiff relies on out-of-state cases permitting common carriers to decline service for reasons such as nonpayment or dangerous behavior by passengers. *See* Mot. 8-9 (citing, *e.g., NetChoice L.L.C.*

---

[8] In 2019 (the year of the subject trip), approximately 96.18% of drivers in North Carolina spent less than 20 hours per week in engaged time on App (en route to pick up riders and on trip)—including Plaintiff's driver, who averaged 17.72 hours per week. O'Keefe Decl. ¶¶ 18-19.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

*v. Paxton*, 49 F.4th 439, 493 n.42 (5th Cir. 2022)). Even those jurisdictions recognize only a limited right to refuse service. *See, e.g.*, *NetChoice*, 49 F.4th at 493 n.42 ("common carriers retain the right to remove unruly passengers or obscene transmissions"). And Plaintiff cites no similar North Carolina authority. Whatever right to refuse common carriers may have elsewhere, that right is strictly limited in North Carolina, which requires common carriers to carry passengers even with known disreputable character and past criminal conduct. *Godwin*, 48 S.E. at 637; *Gray*, 106 S.E. at 663. Nor does Uber's right to refuse resemble a Charlotte train's ban of a violent criminal or Amtrak's refusal of service for nonpayment or belligerent conduct. Mot. 8-9.  And unlike FedEx drivers and Amtrak conductors—who have zero discretion to select their customers—Uber and drivers using the Uber App reserve and exercise a categorical right to deny their respective services to anyone, at any time, for any lawful reason—including low user ratings. O'Keefe Decl. ¶¶ 26, 38.

Finally, Plaintiff downplays the right to refuse by arguing that "any person with a smart phone can download the app" and "Uber's services are offered to any adult or teenager in the United States." Mot. 8-9. But Plaintiff's own authority premised common carrier status on a finding that the defendant's passengers "need not be subscribers or have a preexisting contract to receive services," the carrier responded "whenever called," and there was "no individual bartering" over the service. *Air Evac EMS*, 910 F.3d at 764. The opposite is true for Uber's connection services. Riders must be registered users bound by a preexisting contract—the Terms of Use—which reserves an absolute right to deny access. O'Keefe Decl. ¶ 24. A platform available to registered users who accept Uber's Terms and are subject to deactivation at Uber's discretion does not remotely resemble anything that has previously been recognized as common carriage under North Carolina law.

**2.    Uber is not a common carrier because it does not facilitate services at uniform rates.**

Plaintiff quotes—but then completely ignores—another "crucial test" for common carriage. Mot. 3 (quoting *Jackson*, 116 S.E.2d at 824). In North Carolina, a common carrier must be willing to "carry for hire on a uniform tariff." *Id.* When a company "claims to and exercises the right to fix specific rates in each individual case" based on the "contemporary judgment of the moment," this is an "announcement that the carrier will discriminate, [and] will undertake transportation differently, not

15

indifferently." *Home Ins. Co. v. Riddell*, 252 F.2d 1, 4 (5th Cir. 1958); *see GATCO*, 110 S.E.2d at 890 (N.C. 1959) (citing *Riddell* approvingly).

That is exactly what Uber does. *See* Defs.' Mot. 19-20. Uber's algorithm generates dynamic prices driven by supply and demand based on independent drivers' willingness to carry, the requested route, and other real-time variables. O'Keefe Decl. ¶ 37. Neither Uber nor independent drivers hold themselves out as "willing to carry at a fixed rate" in North Carolina. *Jackson*, 116 S.E.2d at 824; O'Keefe Decl. ¶ 35. Instead, Uber's platform is built entirely on individualized bargains. *See id.* ¶¶ 38-41; *see also, e.g.*, Driver Agreement at -3331 (drivers retain option "to accept or to decline or ignore a User's request for Transportation Services"). Drivers' right to treat "each individual [rider] on a separate basis and accept or reject it as wished" establishes that drivers (not Uber) undertake private contract carriage as a matter of law. *Riddell*, 252 F.2d at 4.

*

Plaintiff's motion would require this Court, sitting in diversity, to go far beyond any North Carolina precedent. Uber is aware of no North Carolina case imposing common carrier duties on a party that is not regulated by or expressly exempted from the state's common-carrier statute. Much less a party that does not undertake to itself carry anybody, that reserves the right to refuse service, and that does not charge uniform rates. Plaintiff identifies no reason to think a North Carolina court would make any of these leaps—particularly given the General Assembly's unambiguous instruction that Uber does not itself provide transportation. And her novel theories are all the more unsupportable in a diversity case, where "federal courts . . . rule upon state law *as it exists* and do not surmise or suggest its expansion." *Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016) (emphasis in original). Because Plaintiff's sole remaining claim is foreclosed by multiple binding North Carolina law requirements, the Court should enter summary judgment for Uber.

At an absolute minimum, Plaintiff is not entitled to summary judgment. As the North Carolina Supreme Court has made clear, "[w]here the facts are in conflict, [common-carrier status] is a question for the jury." *Jackson*, 116 S.E.2d at 824. This Court should reject Plaintiff's theory as a matter of law.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

But if the Court concluded that material disputes of fact regarding Uber's responsibilities and practices precluded that ruling, those disputes would still foreclose Plaintiff's motion.

### C.    Plaintiff's Nondelegable-Duty Theory Fails as a Matter of Law.

Nondelegable duties are an "exception to [the] general rule" of nonliability for independent contractors' torts. *Woodson v. Rowland*, 407 S.E.2d 222, 234 (N.C. 1991). Plaintiff argues that Uber is absolutely liable for Richardson's alleged conduct because common carriers owe a "nondelegable duty" to safely transport riders. Mot. 10-11. But even if Uber were a common carrier, Plaintiff's argument would fail because North Carolina imposes nondelegable duties only on *franchised* common carriers regulated under North Carolina's Public Utilities Act. Nothing in North Carolina law forbids a technology platform operating pursuant to a permit from assigning transportation duties to independent contractors. On the contrary, the TNC statute expressly *mandates* that Uber do so.

Plaintiff relies on caselaw holding that the "high degree of care . . . a common carrier *operating under a public franchise* owes to its passengers[] is a nondelegable duty." *Mann v. Va. Dare Transp. Co.*, 198 S.E.2d 558, 565 (N.C. 1973); *see* G.S. §§ 62-3(23)(a)(3)-(4), (11), 62-262(a). But that rule reflects a quid pro quo specific to statutory common carriers. Such a carrier's state-issued franchises grant it "protection" from competition. *Am. Courier Corp.*, 174 S.E.2d at 816-17. So "by virtue of its franchise," a statutory common carrier "ha[s] no power to relieve itself of liability [to] passengers simply by delegating its privilege to others." *White v. Norfolk & S.R. Co.*, 20 S.E. 191, 191 (N.C. 1894). By contrast, North Carolina courts do *not* impose nondelegable duties on common-law common carriers, which do not operate pursuant to such statutory franchises. *See Gordon v. Garner*, 493 S.E.2d 58, 62-64 (N.C. App. 1997) (affirming summary judgment for carrier exempt from statutory franchise requirement because the driver "was an independent contractor"); *Parker v. Erixon*, 473 S.E.2d 421 (N.C. App. 1996) (applying ordinary *respondeat superior* principles to carrier exempt from North Carolina's franchise requirement). Uber falls in the latter category. It operates not under a franchise but under a TNC permit, which confers none of the protections enjoyed by statutory common carriers. G.S. § 20-280.3(a); O'Keefe Decl. ¶ 23. Accordingly, neither the rule of *Mann* nor its animating premise apply.

Plaintiff's other authorities involve a carrier's vicarious liability for assaults by employees, not independent contractors. In *Hairston v. Atlantic Greyhound Corp.*, 18 S.E. 2d 166 (N.C. 1942), where a porter assaulted a passenger at a bus station, the North Carolina Supreme Court articulated two different standards of liability for carriers. On one hand, a common carrier is liable for the acts of third parties only if the assault "could have [been] prevented in the reasonable and proper performance of [its] duty," *id.* at 169—a standard negligence inquiry. By contrast, a common carrier is vicariously liable for an assault committed by *an on-duty employee or agent*: an assault "committed on a passenger by an *employee* while on duty, whether within the line of his employment or not, constitutes a breach of duty directly imposing liability," *id.* at 170; *see Williams v. Gill*, 29 S.E. 879, 879 (N.C. 1898) (holding railroad liable for "the conduct of an employee" because passengers "are in the possession of, and under the immediate supervision and control of, *the carrier's agents*"); *White v. Norfolk & S.R. Co.*, 20 S.E. 191, 191-92 (N.C. 1894) (imposing liability for assault by employees because "among the implied provisions of the contract between a passenger and a [carrier] that the latter has *employed suitable servants to run its trains*"). No North Carolina case has ever suggested that the severe rule of *Hairston* applies beyond on-duty employees. As Uber's motion for summary judgment explains, Richardson was not an employee but an independent contractor, so *Hairston*'s rule is, by its clear terms, inapplicable.[9]

Equally dispositive is the TNC statute itself. While a state-issued public franchise *obligates* a statutory common carrier to transport passengers, the TNC statute does the opposite: it expressly withholds transportation responsibilities from Uber and assigns them instead to presumptively independent drivers. *See supra* at 6-7. That statutory authorization to connect riders with independent third parties precludes Plaintiff's claim that North Carolina law imposes nondelegable transportation duties on Uber. *See Osborne ex rel. Powell*, 865 S.E.2d at 319-20 (holding school's duty to safely transport students delegable in light of statute authorizing school to "enter into a contract with any person . . . for the transportation" of students).

---

[9] *See* Defs.' Mot. at 22-25 (undisputed evidence confirms Richardson's independent contractor status as a matter of law); *see also* G.S. § 20-280.8 (creating rebuttable presumption that a "TNC driver is an independent contractor and not an employee"); Driver Agreement at -3340 ("[T]he relationship between the parties under this Agreement is solely that of independent contracting parties."); O'Keefe Decl. ¶¶ 9, 33 (confirming Richardson's assent).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

For all of these reasons, North Carolina law furnishes no basis to hold Uber liable for Richardson's alleged assault without regard to Uber's fault. Because that is the only theory on which Plaintiff has chosen to proceed, Dkt. 5264 (Joint Submission) at 2, Uber is entitled to summary judgment, and Plaintiff's motion should be denied.

## III.    CONCLUSION

"In applying state law, federal courts have always found the road straighter and the going smoother when, instead of blazing new paths, they restrict their travels to the pavement." *Guy v. Travenol Labs., Inc.*, 812 F.2d 911, 917 (4th Cir. 1987). Yet Plaintiff asks this Court, sitting in diversity, to set aside both the General Assembly's express instruction that Uber does not perform transportation as well as multiple North Carolina legal prerequisites for common-carrier status. The Court should decline that invitation to expand common-carrier duties far beyond what any North Carolina court has ever recognized. The Court should deny Plaintiff's motion and enter summary judgment for Uber. But at the very least, the many material differences between Uber and any entity previously recognized as a common carrier in North Carolina would require submission of the common-carrier question to the jury.

Dated: March 24, 2026

Respectfully submitted,

*/s/* Laura Vartain Horn
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

19

jessica.davidson@kirkland.com

Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
sstrong@omm.com
jschneller@omm.com

Bradley R. Kutrow
**MCGUIREWOODS LLP**
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049
bkutrow@mcguirewoods.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER,
LLC, and RASIER-CA, LLC

20

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB