[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*WHB 832 v. Uber Techs., Inc.,*<br>*N.D. Cal. No. 3:24-cv-04900*<br>*W.D.N.C. No. 3:25-cv-00737* | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE**<br><br>**PUBLIC VERSION**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 832,<br><br>          Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>          Defendants. | CASE NO. 3:25-cv-00737<br><br>Judge:      Hon. Charles R. Breyer<br><br>Courtroom:  501 |

**TABLE OF CONTENTS**

**Page**

I.      RESPONSE TO MIL NO. 1: "EXCLUDE ARGUMENT OR EVIDENCE RELATED TO UBER'S SAFETY REPORTS, SAFETY MEASURES, THE SAFETY OF UBER RIDES, NON-NEGLIGENT OR PRO-SAFETY CONDUCT, AND ITS MEASURES OR COMMITMENT TO PREVENT SEXUAL ASSAULTS."..................................................................1

II.     RESPONSE TO MIL NO. 2: "EXCLUDE ARGUMENT OR EVIDENCE RELATING TO THE FREQUENCY OF SAFETY ISSUES OR SEXUAL ASSAULT ON THE UBER PLATFORM, OR THE SAFETY OF UBER COMPARED TO OTHER FORMS OF TRANSPORTATION." ......................................1

III.    RESPONSE TO MIL NO. 3: "EXCLUDE ARGUMENT OR EVIDENCE RELATING TO THE UBER DRIVER'S BACKGROUND CHECK, LACK OF PRIOR INCIDENTS, STAR RATINGS, OR FEEDBACK FROM OTHER RIDERS."..................................................................3

IV.     RESPONSE TO MIL NO. 4: "EXCLUDE ARGUMENT OR EVIDENCE OF PLAINTIFF'S POST-INCIDENT RIDESHARE USE." ......................................3

V.      RESPONSE TO MIL NO. 5: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DEACTIVATED THE SUBJECT DRIVER FOR LEGAL REASONS OR ON THE BASIS OF LEGAL ADVICE."..................................................5

VI.     RESPONSE TO MIL NO. 6: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DRIVERS ARE INDEPENDENT CONTRACTORS OR ARE NOT EMPLOYEES."..................................................................9

VII.    RESPONSE TO MIL NO. 7: "JUROR ANONYMITY AND PRE-TRIAL AND TRIAL RESTRICTION ON JUROR RESEARCH, INVESTIGATION, OR COMMUNICATION BY UBER."..................................................10

VIII.   RESPONSE TO MIL NO. 8: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING IRRELEVANT AND UNDULY PREJUDICIAL ASPECTS OF PLAINTIFF'S PERSONAL LIFE."..................................................12

        A.      Plaintiff's █████████████████ ......................................13

        B.      Plaintiff's ████████████ ..........................................16

        C.      Plaintiff's ██████████...........................................17

        D.      Plaintiff's Dishonesty/Deception..........................................19

        E.      Plaintiff ██████████████ ..........................................20

                ████████████████████████████████████████ ...22

        G.      Plaintiff's ████████████ .......................................22

                ████████████████████████████████████████

i

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carroll v. Trump*,
    663 F. Supp. 3d 380 (S.D.N.Y. 2023)........................................................................................11

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ....................................................................................................6

*CSX Transp., Inc. v. Gilkison*,
    No. 5:05CV202, 2013 WL 85140 (N.D. W. Va. Jan. 7, 2013)...................................................2

*DeRose for Est. of DeRose v. DoorDash, Inc.*,
    675 F. Supp. 3d 591 (E.D.N.C. 2023).........................................................................................9

*Dow v. Carnegie-Illinois Steel Corp.*,
    224 F.2d 414 (3rd Cir. 1955) ....................................................................................................11

*Gordon v. Garner*,
    493 S.E.2d 58 (N.C. App. 1997).................................................................................................9

*Hairston v. Atl. Greyhound Corp.*,
    18 S.E. 2d 166 (N.C. 1942).......................................................................................................10

*Hansen v. Gen. Motors Corp.*,
    915 F. Supp. 118 (E.D. Mo. 1996)..............................................................................................8

*Jackson v. Stancil*,
    116 S.E.2d 817 (N.C. 1960).........................................................................................................9

*Oakley, Inc. v. Bugaboos Eyewear Corp.*,
    No. 09-CV-2037-JLS (JMA), 2010 WL 4117223 (S.D. Cal. Oct. 15, 2010)............................6

*Osborne v. Yadkin Valley Econ. Dev. Dist., Inc.*,
    865 S.E.2d 307 (N.C. App. 2021)..............................................................................................10

*Quang Minh Tran v. Cate*,
    No. SA CV 12-1439-SJO (PLA), 2013 WL 3755968 (C.D. Cal. July 13, 2013)......................4

*Razaghi v. Razaghi*,
    No. 2:18-CV-01622-EJY, 2024 WL 4539244 (D. Nev. Oct. 21, 2024)...........................2, 3, 4

*Rock River Communications, Inc. v. Universal Music Group, Inc.*,
    745 F.3d 343 (9th Cir. 2014) ......................................................................................................6

*Sinclair v. United States*,
    279 U.S. 749 (1929)...................................................................................................................12

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

*Smith v. California*,
    350 F. App'x 178 (9th Cir. 2009) ...............................................................................................4

*In re Uber Rideshare Cases*,
    JCCP No. 5188, No. CJC-21-005188 (Cal. Super. Ct. S.F. Cnty. Aug. 29, 2025)...................4

*In re Uber Tech., Inc. Passenger Sexual Assault Litig.*,
    No. 23-cv-06708 (N.D. Cal. Jan. 8, 2026)................................................................................4

*In re Uber Techs., Inc. Passenger Sexual Assault Litig.*,
    No. 3:23-md-03084-CRB (N.D. Cal. Oct. 29, 2025).................................................................10

*United States v. Basham*,
    561 F.3d 302 (4th Cir. 2009) .................................................................................................2, 3

*United States v. Bowen*,
    857 F.2d 1337 (9th Cir. 1988) ..................................................................................................2

*United States v. Dinkins*,
    691 F.3d 358 (4th Cir. 2012) ..................................................................................................11

*United States v. Martin*,
    No. CR 07-1205(A) ..................................................................................................................10

*United States v. Mathis*,
    932 F.3d 242 (4th Cir. 2019) ...................................................................................................10

*United States v. Shryock*,
    342 F.3d 948 (9th Cir. 2003) .............................................................................................10, 11

*Webb v. Cent. Fla. Invs., Inc.*,
    No. 5:18-CV-01304, 2021 WL 852139 (S.D. W. Va. Mar. 5, 2021) ........................................8

**Rules**

Fed. R. Evid. 403 .............................................................................................................................2, 3

Fed. R. Evid. 608(b).............................................................................................................................4

iv

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit the following responses to Plaintiff's omnibus motions *in limine*.

**I.     RESPONSE TO MIL NO. 1: "EXCLUDE ARGUMENT OR EVIDENCE RELATED TO UBER'S SAFETY REPORTS, SAFETY MEASURES, THE SAFETY OF UBER RIDES, NON-NEGLIGENT OR PRO-SAFETY CONDUCT, AND ITS MEASURES OR COMMITMENT TO PREVENT SEXUAL ASSAULTS."**

Plaintiff seeks to exclude all evidence related to the safety of Uber's platform. According to Plaintiff, such evidence is irrelevant because she has abandoned her negligence claim and is proceeding solely on the basis of Uber's purported "common carrier non-delegable duty to provide safe transportation, giving rise to vicarious liability." Pl.'s Mot. at 4. As set forth in Uber's response to MIL No. 2, below, Uber objects to this motion to the extent it would bar Uber from presenting evidence and argument that millions of rides are arranged using the Uber platform every day and over 99.99% of those rides do not involve any safety issue. Uber does not oppose the remainder of the motion provided that the prohibition on evidence regarding the safety of the Uber platform applies equally to both parties. Plaintiff appears to agree with this position, stating that "just as Plaintiff cannot introduce evidence or argument that Uber itself was negligent or committed some type of wrongdoing, Uber should be barred from presenting evidence or argument that it was not negligent or committed no wrongdoing, or that it affirmatively had the right corporate priorities or took actions to prevent sexual assault." *Id.* at 5. Uber, however, reserves the right to present other evidence regarding the safety of its platform should Plaintiff open the door to such evidence at trial.

**II.     RESPONSE TO MIL NO. 2: "EXCLUDE ARGUMENT OR EVIDENCE RELATING TO THE FREQUENCY OF SAFETY ISSUES OR SEXUAL ASSAULT ON THE UBER PLATFORM, OR THE SAFETY OF UBER COMPARED TO OTHER FORMS OF TRANSPORTATION."**

Plaintiff seeks to exclude evidence related to the frequency of safety issues on the Uber platform, again arguing that such evidence is irrelevant because she is no longer pursuing a negligence claim. Pl.'s Mot. at 6. Uber opposes this motion because it would bar the company from introducing evidence and argument that "99.9998%" of trips arranged through the Uber app occur without a safety incident. *Id.* As explained below, that statistic is directly relevant to the question of whether the alleged

1

incident occurred.

Plaintiff alleges that an independent third-party driver, Jeffrey Lamar Richardson, engaged in unwanted touching and made inappropriate comments to her, an allegation that Mr. Richardson has adamantly denied. As a result, and as Plaintiff herself recognizes, a central "issue [in this case] is whether the incident happened as Plaintiff described[.]" *Id*. The fact that safety incidents during rides arranged on the Uber platform are extremely rare—i.e., that only a tiny fraction of one percent of the millions of such rides that take place annually result in a reported safety issue—is directly relevant to this question. *See CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2013 WL 85140, at *1 (N.D. W. Va. Jan. 7, 2013) (admitting statistical evidence of positive x-ray findings for asbestosis among railroad workers as relevant to whether defendant's positive x-ray for plaintiff's asbestosis was accurate). In addition, such evidence is relevant to rebut the insinuation by Plaintiff's expert, Veronique Valliere, that rides arranged through the Uber platform are inherently unsafe because they involve being in a car with a stranger (if that opinion is admitted). *See* Expert Report of Veronique N. Valliere, Psy.D. at 15 (Ex. 1) (asserting that "putting passengers in an isolated setting like a car with a complete stranger can create a risk of sexual assault" and that "the idea that a driver and passenger have a relationship has a profound impact on perception and the psychology involved with sexual assault and misconduct for victim/offender decision-making").

Nor is there any risk of unfair prejudice or jury confusion if this statistical information is introduced at trial. The number of rides arranged on the Uber platform that take place annually and the number of safety incidents reported from those rides are basic facts that the jury can easily understand; they are not misleading or confusing in any way. The "simple fact" that Plaintiff believes this information may harm her case is not a basis to exclude it. *See Razaghi v. Razaghi*, No. 2:18-CV-01622-EJY, 2024 WL 4539244, at *5 (D. Nev. Oct. 21, 2024) ("[T]he simple fact that evidence is damaging to a party's case does not warrant exclusion, as 'the more probative the evidence is, the more damaging it is apt to be.'") (citing *United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988)); *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (Under FRE 403, "'damage to a [party's] case is not a basis for excluding probative evidence,' because '[e]vidence that is highly probative

2

invariably will be prejudicial'") (citation omitted).

### III. RESPONSE TO MIL NO. 3: "EXCLUDE ARGUMENT OR EVIDENCE RELATING TO THE UBER DRIVER'S BACKGROUND CHECK, LACK OF PRIOR INCIDENTS, STAR RATINGS, OR FEEDBACK FROM OTHER RIDERS."

Plaintiff moves to exclude evidence related to Mr. Richardson's background check and history with Uber, again arguing that it is irrelevant because her claims are limited to liability under a common carrier theory. Pl.'s Mot. at 7. Uber opposes the motion because the evidence Plaintiff seeks to preclude is relevant to whether the alleged incident underlying Plaintiff's lawsuit actually occurred.

Mr. Richardson's background check, lack of prior incidents, ratings, and reviews are highly relevant because they undercut Plaintiff's theory of the case by demonstrating that the alleged incident is fundamentally at odds with all available information regarding Mr. Richardson's history and overall usage of the Uber platform. Accordingly, this evidence calls into question the veracity of Plaintiff's claims against Mr. Richardson.

While Plaintiff may believe that Mr. Richardson's spotless background will hurt her case, Rule 403 does not permit the exclusion of evidence simply because it does not support a plaintiff's theory of her case, as noted above. *See Razaghi*, 2024 WL 4539244, at *5; *Basham*, 561 F.3d at 326.

Plaintiff also argues that this evidence should be excluded under Rule 403 because, if it were admitted at trial, the jury might be confused into thinking that Plaintiff was required to prove that Uber was negligent in some way or had notice that the driver presented a risk. Pl.'s Mot. at 7. These inferences are not naturally suggested by this evidence, and Uber does not plan to use it for that purpose. In any event, the Court will provide the jury with clear instructions on what Plaintiff must prove in order to prevail, eliminating any risk of juror confusion. For this reason, too, the motion should be denied.

### IV. RESPONSE TO MIL NO. 4: "EXCLUDE ARGUMENT OR EVIDENCE OF PLAINTIFF'S POST-INCIDENT RIDESHARE USE."

Plaintiff argues that any reference to, or evidence regarding, Plaintiff's rideshare use after the alleged incident should be excluded because it is irrelevant and unduly prejudicial. Pl.'s Mot. at 7-8. Nearly identical motions in limine have been denied both by this Court and the court overseeing the JCCP. *See* Order on Motions in Limine at 19, *In re Uber Rideshare Cases*, JCCP No. 5188, No. CJC-

3

21-005188 (Cal. Super. Ct. S.F. Cnty. Aug. 29, 2025) ("JCCP Order") (Ex. 2); Order Regarding *Dean* Pretrial Motions at 3, *In re Uber Tech., Inc. Passenger Sexual Assault Litig.*, No. 23-cv-06708 (N.D. Cal. Jan. 8, 2026), ECF 4941. There is no reason for a different result here.

*First*, evidence concerning Plaintiff's continued rideshare use is highly relevant to her alleged damages. The JCCP court held that such evidence is admissible in cases where the plaintiff claims "emotional distress and other ongoing adverse effects" from an alleged incident during a ride arranged on the Uber platform. JCCP Order at 19 ("the Plaintiff's post-incident use of Uber or other rideshare services bears on the credibility and strength of her damages claims"). Similarly, here, Plaintiff's ongoing use of rideshare services after the alleged incident is probative of the alleged severity, duration, and persistence of her claimed injuries. Plaintiff testified that she continues to experience mental anguish stemming directly from the alleged incident. *See* B.M. Dep. 55:15-57:23, 58:18-25, 126:24-127:12 (Ex. 3). Yet, as conceded in Plaintiff's motion, Plaintiff used the Uber app dozens of times between 2022 and 2025, indicating that any alleged mental anguish related to the alleged incident had abated by that point. Pl.'s Mot. at 7-8. Uber is entitled to present evidence contradicting Plaintiff's testimony about the nature and extent of her alleged injury. *See Smith v. California*, 350 F. App'x 178, 180 (9th Cir. 2009) (extrinsic evidence is admissible to "impeach[] a witness's testimony by contradiction") (quoting Fed. R. Evid. 608(b)).

*Second*, there is no merit to Plaintiff's argument that evidence regarding her use of the Uber app after the alleged incident is "unduly prejudicial" because it indicates "exaggeration or falsification" of Plaintiff's alleged injuries. Pl.'s Mot. at 8. Evidence is not prejudicial "merely because it undermines the opponent's position." *Razaghi*, 2024 WL 4539244, at *5 (citation omitted). Further, "[w]hen the evidence has probative value, and the potential for prejudice resulting from its admission is within tolerable limits, it is not unduly prejudicial and its admission" should be permitted. *Quang Minh Tran v. Cate*, No. SA CV 12-1439-SJO (PLA), 2013 WL 3755968, at *12 (C.D. Cal. July 13, 2013). The evidence of Plaintiff's Uber app usage between 2022 and 2025 is not salacious, inflammatory or otherwise inherently prejudicial. Therefore, Plaintiff's motion should be denied.

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

## V.    RESPONSE TO MIL NO. 5: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DEACTIVATED THE SUBJECT DRIVER FOR LEGAL REASONS OR ON THE BASIS OF LEGAL ADVICE."

Plaintiff seeks to prevent Uber from offering evidence that her independent driver, Mr. Richardson, had his Uber account "deactivated" from the Uber platform in 2025 "not because the assault occurred, but out of an abundance of caution based on legal advice." Pl.'s Mot. at 8. According to Plaintiff, the admission of such evidence is inappropriate because it would "reframe the deactivation not as a substantive finding that the assault occurred, but as routine litigation housekeeping," and would allow Uber to use the attorney-client privilege as both a sword and a shield. *Id.* at 9. Plaintiff's arguments are misguided.

Plaintiff's motion makes clear that she intends to argue at trial that the deactivation of Mr. Richardson's Uber account in 2025 resulted from a purported determination by Uber or its lawyers that the allegations against him had merit and that he should therefore not be allowed to use the platform. *See id*. at 8-9. According to Plaintiff, the jury should be allowed to infer that "Uber would not have permanently deactivated a driver without evidence supporting the conclusion that the assault occurred." *Id.* at 9. Any such inference, however, would be contrary to the facts in the record. As a result, Uber must have the opportunity to explain that: (1) Uber removed Mr. Richardson's access to the Uber platform in ***February 2023***, as a matter of standard business policy, when Uber learned of Plaintiff's allegations through litigation and Mr. Richardson was identified as the driver involved in the alleged incident; and (2) Mr. Richardson's account was formally deactivated in 2025 pursuant to a company policy that drivers are to be deactivated when a lawsuit is filed in connection with this MDL proceeding.

Plaintiff's arguments to the contrary should be rejected for three reasons.

***First***, there is no basis to preclude Uber from explaining that Mr. Richardson was barred from using the Uber platform as a matter of policy—and not due to any determination that the claims against him were valid.

As an initial matter, Plaintiff's motion ignores the fact that Mr. Richardson was placed on a "safety lock" and "waitlisted" from the Uber platform (meaning that he could not use it to go online or arrange rides pursuant to ***routine company policy***) as soon as Plaintiff informed Uber that he was

5

the driver at issue in Plaintiff's lawsuit in February 2023, and remained in that status until he was formally deactivated. *See, e.g.*, G. Brown Dep. 507:15-20 (Ex. 4) (Uber immediately instituted "a safety lock and remove[d] [Mr. Richardson] from the platform" after learning of the complaint against him); *see also* Declaration of Greg Brown ¶ 3 (Mar. 24, 2026) ("Brown Decl.") (Ex. 13). Notably, Plaintiff does not mention the waitlisting of Mr. Richardson in her motion, much less explain why evidence relating to it is not admissible in this case. Nor could she, given that the 2023 waitlisting of Mr. Richardson was routine, did not involve Uber counsel, and does not implicate any privileged legal advice. Uber learned that Mr. Richardson was the driver involved in the alleged incident at issue in Plaintiff's lawsuit on February 2, 2023. *See* UBER_MDL3084-DFS00074490 (Ex. 5). Within three business days, on February 7, 2023, Mr. Richardson was "waitlisted with a temporary safety lock, pending final business decision," meaning that Uber removed his access to the platform and he could no longer use the Uber app to connect with potential riders. *Id*. That action was taken pursuant to established company policy that allegations of sexual assault against an independent driver lead to automatically blocking the driver from accessing the platform, prior to any investigation into the validity of the allegations. *See* Brown Decl. ¶¶ 3, 5. Indeed, at the time Mr. Richardson was placed on a safety lock in February 2023, Uber did not yet have the details of the alleged incident, which became available to Uber when it received the Plaintiff Fact Sheet on October 2, 2024. *See* 10/2/24 Plaintiff Fact Sheet & Verification Form (Ex. 6). As a result, Uber could not have barred Mr. Richardson from using the platform because of some substantive conclusion by counsel—or anyone else—that the alleged incident actually occurred.

For these reasons, evidence that Mr. Richardson was barred from using the Uber platform in February 2023 based on company policy does not implicate any privilege; nor does it use privilege as a "sword and a shield." *See Oakley, Inc. v. Bugaboos Eyewear Corp.*, No. 09-CV-2037-JLS (JMA), 2010 WL 4117223, at *2-3 (S.D. Cal. Oct. 15, 2010) (attorney-client privilege not waived where there was "no showing that [the plaintiff] has actually asserted the advice of counsel defense," plaintiff had "not relied upon the advice of counsel to defend itself in any pleadings filed with the Court," and there was "nothing in the record before the Court that shows that [plaintiff] has produced or presented

6

evidence of its reliance upon the advice of counsel") (emphasis omitted). Plaintiff's cited cases are thus inapposite. In *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (cited in Pl.'s Mot. at 9), there was no dispute that the defendant affirmatively relied upon the advice of counsel to defend the tax position taken on its stock purchase disclosure statement. *Rock River Communications, Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) (cited in Pl.'s Mot. at 9), is even further afield because it addressed an affirmative defense not related to attorney-client communications. Plaintiff's observation that the Court held in *Dean* that Uber may not cite legal reasons for ***declining to adopt specific safety features*** without implicating the attorney-client privilege, Pl.'s Mot. at 9-10, is similarly irrelevant. The evidence clearly demonstrates that Uber's 2023 application of a "safety lock" to Mr. Richardson's account was automatic and based on internal policy, not on any legal reasons, advice, or communications.

In addition, there is also no basis to bar Uber from explaining that the ultimate deactivation of Mr. Richardson's Uber account in 2025 was not the result of any determination by the company that the allegations against him had merit. The evidence is clear that when a plaintiff "files a lawsuit against Uber in this MDL and Uber is told about it, the trust and safety team is told to automatically deactivate the driver." 7/2/2025 Dep. of A, Cissna, *Dean* & *LCHB 128*, 237:15-237:22 (Ex. 12); *see also* Brown Decl. ¶ 4 ("[D]eactivation does not mean that Uber determined or concluded that this incident actually occurred as alleged."). Plaintiff asserts that Uber should be barred from introducing such evidence because a single document produced in this litigation notes that deactivation occurred "at the direction of counsel" and "in furtherance of pending litigation." Pl.'s Mot. at 8. But this document—which was produced to Plaintiffs with the quoted language and was not withheld on the basis of privilege—simply refers to Uber's policy of deactivating drivers involved in lawsuits pending in the MDL. Uber is ***not*** seeking to withhold information regarding the reasons for the deactivation of Mr. Richardson's Uber account based on any claim of privilege. Thus, as explained above, Uber is in no way using privilege as a "sword and a shield."

***Second***, there is nothing misleading or improper about introducing evidence that Mr. Richardson was barred from using the Uber platform in 2023, and formally deactivated in 2025, as a

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

matter of company policy. Plaintiff seeks to bar Uber from "suggest[ing] to the jury that [Mr. Richardson] was removed as a precautionary or defensive measure rather than because the evidence warranted it." Pl.'s Mot. at 9. However, as set forth above, that is precisely what happened. In 2023, Mr. Richardson was "waitlisted" on the Uber platform automatically and independent of any investigation. Two years later, his account was formally deactivated (a formality since he had been barred from the platform since 2023), again as a matter of policy, without any investigation into the veracity of Plaintiff's claims. Thus, **Plaintiff's** suggestion that Mr. Richardson was barred from using the Uber platform because the company believed the allegations against him is itself misleading—the evidence Plaintiff seeks to exclude is not.

 ***Third***, it would be extremely prejudicial to Uber if Plaintiff were allowed to assert at trial that Mr. Richardson's Uber account was deactivated in January 2025 "for safety reasons"—and insist that this decision was made because the company believed that the alleged incident occurred—while barring Uber from offering truthful and accurate evidence contradicting that allegation. If Plaintiff is permitted to introduce evidence of Mr. Richardson's ultimate account deactivation in 2025 and argue that it happened because Uber concluded that Plaintiff's allegations against him were true, basic fairness requires that Uber be allowed to explain: (1) that Uber removed Mr. Richardson's access to his account and the Uber platform in February 2023, just days after Uber learned that he was the alleged driver in this lawsuit, and he has not had access to the account since that time; (2) that suspension occurred as a matter of routine company policy unrelated to any substantive review of, or comment on, the veracity of the allegations against the driver; and (3) the formal deactivation of his account was also a matter of company policy. Otherwise, the jury would hear only a distorted, one-sided version of the facts, which would falsely suggest that Uber permits drivers named in safety-related lawsuits to continue operating until some internal investigation determines that the claims are valid. *See Webb v. Cent. Fla. Invs., Inc.*, No. 5:18-CV-01304, 2021 WL 852139, at \*1 (S.D. W. Va. Mar. 5, 2021) (denying motion to exclude evidence "inasmuch as it would prevent the [nonmovant] from introducing relevant evidence highly probative to their claims"); *see also Hansen v. Gen. Motors Corp.*, 915 F. Supp. 118, 122 (E.D. Mo. 1996) (finding that "not allowing [defendant's] evidence to

8

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

be presented would be manifestly unfair to defendant" even though the evidence is "obviously prejudicial to plaintiff's case").

For all of these reasons, Uber should be permitted to introduce evidence that Mr. Richardson was subject to a "safety lock" and "waitlisted" from the Uber platform in February 2023, as a matter of company policy—and that Mr. Richardson's account was later formally deactivated as a matter of policy, without any investigation into, or determination regarding, the veracity of Plaintiff's claims.

## VI. RESPONSE TO MIL NO. 6: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DRIVERS ARE INDEPENDENT CONTRACTORS OR ARE NOT EMPLOYEES."

Plaintiff seeks to preclude any evidence or argument that third-party drivers using the Uber platform are independent contractors and not employees, contending that independent-contractor status is irrelevant because Uber is purportedly a common carrier as a matter of law and therefore bore a "nondelegable" duty to protect Plaintiff. ECF 5523 at 10. The Court should deny Plaintiff's motion for two reasons. First, if the Court finds that a fact question exists on common-carrier status,[1] evidence of drivers' independent-contractor status would be relevant to the jury's determination of whether Uber is a carrier. *See* ECF 5475 ("Uber MSJ") at 14-16. Second, evidence about the driver's status is highly relevant because, even if Uber *were* a common carrier, it could not be held vicariously liable for his alleged torts absent a jury finding that he was an employee. *Id.* at 20-28.

*First*, the driver's independent-contractor status is relevant to whether Uber is a "carrier" at all. *Contra* ECF 5523 at 10 n.4. If the Court does not grant summary judgment for Uber, the jury would have to determine whether Uber is a common carrier. *See Jackson v. Stancil*, 116 S.E.2d 817, 824 (N.C. 1960). ("Where the facts are in conflict, [common carrier status] is a question for the jury."). A carrier-passenger relationship is premised on the carrier's control of the passenger and the means of carriage. *See* Uber MSJ at 15-16. Evidence that drivers are independent contractors rather than employees is highly relevant to show that Uber does not "carry" any passengers at all—independent third parties do. *See id.* at 16; *Gordon v. Garner*, 493 S.E.2d 58, 62 (N.C. App. 1997) (company transporting goods using independent contractor "neither a common nor a contract carrier" where it

---

[1] *See* ECF 5475, Part III.A.

9

owns ""no . . . trucks or other transportation vehicles and is therefore incapable of transporting property for compensation").

***Second***, even if the jury were to determine that Uber is a common carrier, drivers' independent-contractor status would remain relevant to whether Uber can be held vicariously liable for Richardson's alleged conduct. Under North Carolina law, a defendant is generally not liable for the torts of an independent contractor. *DeRose for Est. of DeRose v. DoorDash, Inc.*, 675 F. Supp. 3d 591, 600 (E.D.N.C. 2023); *see* Uber MSJ at 16. Plaintiff invokes the nondelegable-duty exception to that rule, but North Carolina imposes nondelegable duties only on common carriers that qualify as "public utilities" and operate under a "public franchise" from the State. *See* Uber MSJ at 25-27. That rule is squarely inapplicable to Uber, which does not operate under a public franchise; rather, it operates under a TNC permit issued by the DMV pursuant to a statutory scheme that *affirmatively mandates* "delegation" of transportation functions to independent third-party drivers. *Id.*; *see Osborne v. Yadkin Valley Econ. Dev. Dist., Inc.*, 865 S.E.2d 307, 319-20 (N.C. App. 2021) (nondelegable-duty rule inapplicable where statute authorizes delegation). Because no exception to the general rule of nonliability for independent-contractor torts applies, whether the driver here was an independent contractor is not just relevant but potentially dispositive of whether Uber could be held vicariously liable for the driver's alleged torts.[2]

## VII.    RESPONSE TO MIL NO. 7: "JUROR ANONYMITY AND PRE-TRIAL AND TRIAL RESTRICTION ON JUROR RESEARCH, INVESTIGATION, OR COMMUNICATION BY UBER."

In *Dean*, the parties agreed that Uber would not access internal data Uber may possess with respect to potential jurors in that case. *See* Joint Case Management Statement at 7, *In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, No. 3:23-md-03084-CRB (N.D. Cal. Oct. 29, 2025), ECF 4261. Plaintiff apparently now views that compromise as insufficient and seeks both to bar Uber from

---

[2] Plaintiff has cited *Hairston v. Atl. Greyhound Corp.*, 18 S.E. 2d 166 (N.C. 1942), in support of her vicarious liability claim, but that decision, too, ties vicarious liability to an alleged assailant's employment status: "Since the carrier owes a high duty to a passenger to protect him from assault from any source, a malicious or wanton assault committed on a passenger by *an employee while on duty*, whether within the line of his employment or not, constitutes a breach of a duty directly imposing liability." *Id.* at 170 (emphasis added).

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

considering such information and also to anonymize the jury pool and thus block Uber from investigating potential jurors at all. Both requests should be rejected.

*First*, there is no basis to require juror anonymity in this case. The "use of an anonymous jury is an 'unusual measure' that is permissible only in limited circumstances." *United States v. Martin*, No. CR 07-1205(A) CBM, 2009 WL 453111, at *1 (C.D. Cal. Feb. 20, 2009) (quoting *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003)); *see also United States v. Mathis*, 932 F.3d 242, 252 (4th Cir. 2019) ("Use of an anonymous jury is appropriate 'only in rare circumstances[.]'") (citation omitted). The Ninth Circuit has provided a nonexclusive list of factors to consider in deciding whether anonymization of potential jurors is necessary, including:

> (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*Shryock*, 342 F.3d at 971. The use of juror anonymization is not appropriate here.

For one thing, the rare use of anonymous juries is typically reserved for criminal trials (as indicated by the *Shryock* factors themselves). Plaintiff cites only one civil case in which an anonymous jury was empaneled. *See* Pl.'s Mot. at 11 (citing *Carroll v. Trump*, 663 F. Supp. 3d 380, 385 (S.D.N.Y. 2023)). *Carroll* involved highly-publicized claims that the **President of the United States** engaged in defamation in the context of a case that invoked strong political opinions among the general public—and therefore could encourage politically motivated harm to jurors. That is a rare and extreme case. Plaintiff cannot point to similar concerns here. Further, even the criminal precedent cited by Plaintiff makes clear that "a district court's decision to empanel an anonymous jury . . . must rest on something more than speculation or inferences of potential risk." *United States v. Dinkins*, 691 F.3d 358, 374 (4th Cir. 2012) (cited in Pl.'s Mot. at 11). As set forth below, there is no evidence of any risk to potential jurors if their identities are not shielded from the parties.

Moreover, application of the *Shryock* factors demonstrates that an anonymous jury is not appropriate. Plaintiff does not assert that Uber is involved with "organized crime"; there is no allegation that Uber "participate[es] in a group with the capacity to harm jurors"; there is no evidence

11

that Uber has attempted to interfere with the judicial process or witnesses in the past; and, because this is a civil case, there is no risk that Uber will face a criminal conviction or jail time. *Shryock*, 342 F.3d at 971. And while a trial in this case may be subject to media coverage, this is just one of *thousands* of actions pending within this MDL proceeding, and it is unlikely to attract sufficient publicity to warrant juror anonymity—as demonstrated by the fact that juror anonymity was not ordered or necessary in connection with the *Dean* trial.

*Second*, Uber should not be barred from using information in its possession to investigate potential jurors in anticipation of voir dire. "Litigants are given the right to challenge jurors," and "[i]n order to exercise that right intelligently . . . a reasonable investigation of jurors is helpful[.]" *Dow v. Carnegie-Illinois Steel Corp.*, 224 F.2d 414, 431 (3rd Cir. 1955). To be sure, Uber will strictly adhere to the rules governing such investigations. Uber cannot (and will not) contact prospective jurors or engage in conduct that in any way threatens to intimidate them. *See* ABA Formal Op. 466; *Sinclair v. United States*, 279 U.S. 749, 764-65 (1929). But just as Plaintiff need not disclose to Uber juror information obtained by her own jury consultants, Uber is fully permitted to analyze and consider information in its possession. This would pose no prejudice to Plaintiff, who will have ample opportunity to question prospective jurors about their use of the Uber app and other topics in voir dire. And Plaintiff is further protected from unfairness by the requirement that Uber promptly bring to the Court's attention any information bearing on a juror's fitness to serve. *See* N.C. R. Prof. Conduct 3.5.

Finally, Uber's consideration of potential jurors' usage of the Uber app does not implicate jurors' privacy rights. Usage of the Uber app is a simple biographical fact on which the Court and parties can pose voir dire questions, which the jurors must answer truthfully. Indeed, Uber's Privacy Notice discloses that Uber may access user data "[i]n connection with legal proceedings."[3]

For all of these reasons, Plaintiff's request for a ban on juror research should be rejected.

## VIII. RESPONSE TO MIL NO. 8: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING IRRELEVANT AND UNDULY PREJUDICIAL ASPECTS OF PLAINTIFF'S PERSONAL LIFE."

Plaintiff seeks to exclude a wide range of evidence that is directly relevant to the source and

---

[3] https://www.uber.com/global/en/privacy-notice-riders-order-recipients/.

12

extent of Plaintiff's alleged mental anguish, for which she seeks damages. This includes evidence related to:

- Plaintiff's ███████████;
- Plaintiff's ███████████;
- Prior instances of ███████████;
- Plaintiff's dishonesty;
- Emotional distress experienced by Plaintiff as a result of ███████████;
- ███████████ involving Plaintiff;
- Plaintiff's ███████████;
- Emotional distress experienced by Plaintiff as a result of ███████████; and
- Plaintiff's ███████ diagnosis.[4]

Plaintiff argues that this evidence is either unfairly prejudicial under Federal Rule of Evidence 403 or barred by other Federal Rules of Evidence. That is not the case. There is no question Plaintiff ███████████. A fundamental question at trial, however, will be what caused or contributed to Plaintiff's alleged injuries. Because the challenged evidence "tends to show that something other than [Uber's] conduct caused" or contributed to those alleged injuries, "the probative value of this evidence is not substantially outweighed under Rule 403." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1138 (E.D. Cal. 2020). As a result, the evidence should be admitted.

### A. Plaintiff's ███████████

Plaintiff seeks to exclude evidence regarding her ███████████, arguing that such evidence is barred by Federal Rule of Evidence 609. Pl.'s Mot. at 14-15. Rule 609, however, does not apply because Uber will not use evidence of Plaintiff's ███████ to "attack[ her]

---

[4] Plaintiff also moved to exclude "any evidence, testimony, or argument related to Plaintiff's" own statements that she suffers from "████" as a result of the alleged incident. Pl.'s Mot. at 21-22. Because Plaintiff asserts that she is not alleging ████ as an injury and will not seek damages for any alleged ████, *id*., Uber does not intend to reference Plaintiff's statements about ████ at trial. Accordingly, this request is moot.

13

character for truthfulness[.]" Fed. R. Evid. 609(a). As courts have recognized, "[e]vidence of a conviction or criminal activity can be admissible for other relevant purposes, such as the source and extent of a plaintiff's emotional distress when he or she seeks recovery for such distress." *Regalado v. Hernandez*, No. 5:17-cv-02236-MCS-SP, 2020 WL 6540437, at *1 (C.D. Cal. Oct. 5, 2020); *see also Brooks v. Haggett*, No. C 07-2615 MEJ, 2010 WL 4226693, at *8 (N.D. Cal. Oct. 21, 2010) (admitting evidence of plaintiff's prior police encounters for the purpose of determining damages). That is precisely the purpose for which Uber intends to introduce this evidence here.

Plaintiff's motion focuses largely on the opinions of Uber's expert psychiatrist, Dr. Alison Reminick. Pl.'s Mot. at 14-15. Dr. Reminick opines that Plaintiff's alleged mental health harms stem from ██████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* A. Reminick Expert Report at 6, 8-9, 12 (Ex. 7); A. Reminick Expert Rebuttal Report at 6-7 (Ex. 8). Dr. Reminick's expert reports make clear that evidence related to Plaintiff's ████████████████████████████████████████████████████████████████████████████████████, is directly relevant to the cause of her alleged injuries. *Id*.

As Dr. Reminick explains, ████████████████████████████████████████████████████████████████████████████████████████████████████████████." A. Reminick Expert Report at 13; *see also* A. Reminick Expert Rebuttal Report at 5-6 (enumerating the ████████████████████████████████████████ and that she is "████████████████████████████████████████"). According to Dr. Reminick, Plaintiff's "███████████████████████████████████████████████████████████████████████████████████████████████████████████████" A. Reminick Expert Report at 12 (emphasis added). In other words, Dr. Reminick opines, to a reasonable degree of medical certainty, that ██████████████████████████████████████████████████████████████████████████████

14

██████████████████████████████████████████████████████ both demonstrates the extent and impact of ███████████████████████ and also is evidence of alternative causes of Plaintiff's alleged ████.

Moreover, much of this evidence is particularly relevant to the issue of causation because the ███████████████████████ occurred around the time of the alleged incident. *See Regalado*, 2020 WL 6540437, at *2 (evidence of plaintiff's prior conviction was "highly probative of the origin of Plaintiffs' alleged emotional distress during the pertinent period" because the underlying criminal conduct occurred "just months before" the events that were the subject of the lawsuit). Plaintiff alleges that the alleged March 2019 incident—and nothing else—caused her to suffer mental anguish. But her ███████████ during that same time period directly undermines that allegation. Exactly five months prior to the alleged incident, Plaintiff ████████████████████████████ ████████████████████████████████████. *See* A. Reminick Expert Report at 8-9. And roughly six months after the alleged incident, Plaintiff was ██████████████████████████████. *Id.* Evidence of these experiences is "highly probative" of whether and to what degree the alleged incident, as opposed to Plaintiff's ███████████████, caused Plaintiff's alleged mental anguish. *See Regalado*, 2020 WL 6540437, at *2.

Finally, the probative value of all this evidence is not outweighed by any risk of unfair prejudice or confusion of the issues. *See* Fed R. Evid. 403. Plaintiff has put her alleged mental anguish—and the cause(s) thereof—directly at issue by bringing this lawsuit. The severity and causes of that alleged emotional distress are doubtless sensitive topics. But Plaintiff is not permitted to seek damages for mental health injuries and then bar Uber from presenting evidence of alternative explanations for those alleged injuries, simply because the evidence involves sensitive issues. *See Rashad v. Jetyd Corp.*, No. CV 11-08455-DMG, 2013 WL 12124093, at *4 (C.D. Cal. Nov. 19, 2023) (finding that evidence of Plaintiff's arrest for use of drugs was "highly probative" and its "probative value [was] not substantially outweighed by a danger of unfair prejudice" with regard to the issue of emotional distress damages); *Brooks*, 2010 WL 4226693, at *8 ("Plaintiff has put his mental state at issue here, and . . . it is up to the jury to determine what amount of Plaintiff's emotional distress can

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

be attributed to the incident at issue."). To the extent the Court has concerns that the jury may be confused as to the relevance of information relating to Plaintiff's ████████████████████, it can offer a limiting instruction directing the jury to consider this evidence for the purposes of assessing causation and damages *only*.

**B.  Plaintiff's** ██████████████

Evidence related to Plaintiff's ████████████████ is also directly relevant to the issues of causation and damages. By seeking to recover for her alleged mental anguish, Plaintiff has put her mental health, and the possible causes of her alleged injuries, squarely at issue. Plaintiff's ███████████████████—including up to and after the alleged incident—goes directly to these key issues in the case. *See Easton v. Asplundh Tree Experts, Co.*, No. C-16-1694RSM, 2018 WL 1306456, at *3 (W.D. Wash. Mar. 13, 2018) (denying motion to exclude evidence of plaintiff's drug use because it "goes directly to her claim for damages and to her mental health, which she has put in issue in this case"); *Rashad*, 2013 WL 12124093, at *4 (holding that evidence of plaintiff's drug and alcohol use was "highly probative of his emotional condition and relevant to his emotional distress claim" and that "the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice").

This is particularly true given the expert opinions offered by Dr. Reminick that Plaintiff's ██████████████████████████—rather than the alleged March 2019 incident—"███████████████████████████████." A. Reminick Expert Report at 13. Indeed, Plaintiff's own motion makes clear that her ███████████████████████ has resulted in ███████████ that are alternative causes of her alleged mental health injuries. *See, e.g.*, Pl.'s Mot. at 15 (noting that Plaintiff ████████████████████████ in 2021).

In addition, there is no merit to Plaintiff's assertion that the clear relevance of Plaintiff's ████████████████████████ is substantially outweighed by a danger of unfair prejudice." Pl.'s Mot. at 16. Plaintiff cites *United States v. Kizer*, 569 F.2d 504 (9th Cir. 1978), for the proposition that, as a general rule, evidence regarding drug addiction is unfairly prejudicial. *Id*. But the *Kizer* court excluded evidence regarding a witness's drug addiction because it was "not logically relevant" to ***any*** issue in that case. 569 F.2d at 505-06. By contrast, here, Plaintiff's ██████████████████

16

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

████████████████████████████████████████████████████████████████████████, is highly relevant to the cause of her alleged mental anguish. Indeed, Uber would be highly prejudiced if it were barred from presenting evidence supporting this theory of alternative causation. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (recognizing the due process right "to present every available defense.").

### C. Plaintiff's ███████████

Plaintiff also seeks to exclude arguments and evidence related to instances in which Plaintiff ████████████████, a topic that will be addressed in more detail in Uber's forthcoming Rule 412 motion to admit such evidence. Pl.'s Mot. at 17.[5]

Specifically, Plaintiff seeks to bar Uber from presenting evidence related to ████████████ ███████ discussed at Plaintiff's deposition: (1) a clinical assessment of Plaintiff by Vision Behavioral Health Services that indicates Plaintiff ████████████████████████████ ████████████ and notes that Plaintiff stated she experiences "████████████" and has "████████████████████." ████████-VBHS-000010 (Ex. 9); and (2) Plaintiff's deposition testimony that ████████████████████████████████████████████, *see* B.M. Dep. 114:5-17 (Ex. 3).[6]

Uber recognizes the ██████████████████████████████████, and Uber will address them sensitively at trial. However, this history is highly relevant to Plaintiff's mental state and directly probative of whether her claimed emotional distress is attributable to ████████████ █████, rather than the alleged incident in this case. The Court recognized as much in *Dean*, holding that Uber could introduce expert evidence regarding the ████████████████████ and cross-examine the plaintiff's expert regarding ████████████████████ on the plaintiff. *See* 1/6/2026 *Dean* Pretrial Conf. Tr. 57:2-61:20 (Ex. 10). Similarly, here, Uber should be allowed to introduce this

---

[5]  Pursuant to an agreement with Plaintiff, Uber will file its Rule 412 motion concurrently with this briefing. Plaintiff also seeks to exclude argument and evidence related to Plaintiff's ███████████. Pl.'s Mot. at 17. Uber does not oppose the motion in this respect and will not offer evidence at trial regarding Plaintiff's ████████.

[6]  There is evidence in the record that Plaintiff ████████████████████████████████ including evidence that she ████████████████████. *See* A. Reminick Expert Rebuttal Report at 4; ████████-NCCIW-MD-000155 (Ex. 11). Evidence related to ████████████ is relevant and admissible because it goes directly to the causes of Plaintiff's alleged mental anguish for the reasons set forth herein.

17

evidence through its expert psychiatrist, Dr. Reminick. In addition, because Plaintiff is not offering her own expert on the state of her mental health, Uber must also be permitted to address this evidence during cross-examination of the Plaintiff, especially regarding her assertion that her alleged mental anguish was caused by the alleged incident alone. Plaintiff's arguments that evidence related to these events should be barred under Federal Rules of Evidence 412, 403, and 404 all lack merit.

*First*, Rule 412 precludes only "two narrow categories of evidence" not at issue here: (1) "evidence offered to prove that a victim engaged in other sexual behavior"; and (2) "evidence offered to prove a victim's sexual predisposition." *Lane v. Am. Airlines, Inc.*, No. 18-CV-6110 (MKB), 2024 WL 1200074, at *3 (E.D.N.Y. Mar. 20, 2024) (quoting Fed. R. Evid. 412(a)). Courts have repeatedly held that the admission of an alleged victim's history of sexual assault does not violate Rule 412 when that evidence is offered to show "other causes or sources of emotional distress[.]" *See, e.g.*, *Doe v. Bridges to Recovery, LLC*, No. 2:20-cv-348-SVW, 2021 WL 4690830, at *16 (C.D. Cal. May 19, 2021) ("FRE 412 is inapplicable to the evidence of prior sexual assaults because that evidence is not being offered to prove that Kris Doe engaged in other sexual behavior or to prove her sexual predisposition."); *Lane*, 2024 WL 1200074, at *3 ("Rule 412 is not applicable and does not bar admission of Lane's history of sexual abuse and assault to identify sources of her trauma . . . ."); *Smith v. Ray*, No. 2:08cv281, 2015 WL 13855539, at *3 (E.D. Va. Aug. 5, 2015) (allowing evidence of "the past sexual abuse and assaults that may have also caused [p]laintiff's alleged PTSD symptoms"). That is precisely the case here, as Uber intends to raise ▮▮▮▮▮▮▮▮▮▮ as evidence of alternative causes of Plaintiff's emotional distress and damages. *See* A. Reminick Expert Report at 13 (explaining that Plaintiff's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

*Second*, "[e]ven if FRE 412 applie[d]," evidence of Plaintiff's ▮▮▮▮▮▮ would still be admissible because its "probative" value "substantially outweighs the danger of harm and unfair prejudice" under both Rule 412(b) and Rule 403. *See Doe*, 2021 WL 4690830, at *16; *see, e.g.*, *Gretzinger v. Univ. of Haw. Pro. Assembly*, No. 97-15123, 1998 U.S. App. LEXIS 15370, at *4 (9th

18

Cir. July 7, 1998) ("[t]he trial court did not abuse its discretion in admitting this evidence [of the alleged prior rape] because its probative value was not substantially outweighed by the potential for prejudice" under Rule 403). As noted above, whether (and to what extent) Plaintiff's ███████ contributed to Plaintiff's alleged emotional distress is critical to the jury's evaluation of Plaintiff's claims. By contrast, there is very little risk of any (much less undue) prejudice to Plaintiff if this evidence is admitted. Plaintiff speculates that "[t]he only foreseeable effect of the evidence is to embarrass Plaintiff, trigger improper juror bias, and divert the jury to inflammatory" matters. Pl.'s Mot. at 17. But Uber only seeks to offer the evidence at issue to rebut Plaintiff's theory of causation, not to impugn Plaintiff's character based on archaic notions of morality. *Anderson v. Morrow*, 371 F.3d 1027, 1030 (9th Cir. 2004). Moreover, evidence showing that Plaintiff endured ███████ ███████ prior to the alleged incident is likely to elicit sympathy from jurors, not to prejudice them against her. In any event, the Court is free to instruct jurors that the proffered evidence "must not be used to evaluate [Plaintiff's] character," which would further "dispel[] any potential prejudice against" Plaintiff. *See Berry v. Deloney*, 28 F.3d 604, 608 (7th Cir. 1994) (jury instructions regarding abortion evidence "dispelled any potential prejudice").

**Third**, Plaintiff's argument that admitting evidence of ███████████ would run afoul of Rule 404 also fails. As discussed above, Uber seeks to offer the evidence at issue to rebut Plaintiff's theory of causation and damages, not as character evidence. *See* Fed. R. Evid. 404(b)(2) (evidence admissible for "another purpose"); *see also Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir. 2001) (citation omitted) (upholding district court finding "that the evidence [of prior arrests] was . . . relevant to a contested issue in the case, namely, the extent of damages attributable to emotional distress" and was not barred by Rule 404(b)). For this reason, too, Plaintiff's motion should be denied.

### D.  Plaintiff's Dishonesty/Deception

Plaintiff seeks to exclude "evidence of Plaintiff's allegedly dishonest and deceptive behavior," arguing that such evidence would show that Plaintiff acted in conformity with a purported character for dishonesty under Federal Rule of Evidence 404. Pl.'s Mot. at 18. But Rule 404 is inapplicable because such evidence will not be offered "to prove that on a particular occasion [Plaintiff] acted in

19

accordance with [a] character trait" of dishonesty. Fed. R. Evid. 404(1). Rather, it is directly relevant to rebut Plaintiff's claims ██████████████████████████████

Plaintiff previously moved to preclude Uber's expert, Dr. Remnick, from offering expert opinions regarding the fact that Plaintiff has a ████████████████████████████████████████████████████████████████████████████████████████. *See* ECF 5471. As explained in detail in Uber's Opposition to that motion, *see* ECF 5591, incorporated herein, evidence that Plaintiff is not a credible historian in ████████████████ is directly relevant to rebut Plaintiff's own statements that ████████████████████████████████ ████████. This evidence is not, as Plaintiff contends, being offered to show or suggest that Plaintiff is "a chronic liar." Pl.'s Mot. at 18. Thus, for the same reasons the Court should deny Plaintiff's motion to preclude Dr. Reminick from testifying about Plaintiff's lack of candor and accuracy ████████ ████████████████, Plaintiff's motion in limine should also be denied.

### E.  Plaintiff ████████████████

In 2018, Plaintiff ██████████████████████████████ B.M. Dep. 147:13-16. At the time of her deposition, she had not ████████████. *Id.* 147:17-19. Plaintiff seeks to bar evidence of her ████████, arguing that it has "no probative value." Pl.'s Mot. at 19. But evidence of this undoubtedly difficult situation goes directly to Plaintiff's mental state and the causes of her alleged mental anguish. Plaintiff has personally described ████████████████████ and testified at her deposition that the ████████████████████████. B.M. Dep. 147:23-148:1. In addition, shortly after ██████████████████████, Plaintiff ████████████████████ ████████████████████████████████. *Id.* 150:16-20, 151:14-16. Plaintiff also concedes in her motion that the ██████████████████████████████. Pl.'s Mot. at 20. In light of all of this evidence, Dr. Reminick explains that Plaintiff's ████████████████ ██████████████████████████████████████████." A. Reminick Expert Rebuttal Report at 6. Because Plaintiff's ████████████████████████ ██████████████████████████████████, it is highly relevant to the cause of Plaintiff's alleged mental anguish and therefore should be admitted. *See Kakeh v. United Plan. Org.,*

20

*Inc.*, 587 F. Supp. 2d 125, 128-29 (D.D.C. 2008) (denying motion to exclude plaintiff's family difficulties with his child because it could have contributed to his emotional distress); *Stevenson*, 504 F. Supp. 3d at 1138 ("[E]vidence that tends to show that something other than [defendants'] conduct caused [plaintiff's] physical and mental injuries" is admissible under Rule 403).

Plaintiff next seeks to exclude evidence related to ███████████████ that she has experienced throughout her life, including ███████████████████████. Pl.'s Mot. at 19. Plaintiff's motion is based on bare assertions that "these unrelated incidents [are not] relevant to Plaintiff's damages" and that "any probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury . . . ." *Id.* As with the numerous other ███████ that Plaintiff seeks to exclude from trial, evidence of the ███████████ that Plaintiff sustained throughout her life is directly relevant to the causes of her alleged mental anguish.

When Plaintiff was seventeen years old, she was ███████████████████████. Pl.'s Mot. at 19; *see also* B.M. Dep. 63:9-64:4. Plaintiff told Dr. Reminick that she ███████████ at that moment. A. Reminick Expert Report at 3. When she was nineteen, Plaintiff was ████████████████████████████████████████. A. Reminick Expert Report at 12-13; *see also* B.M. Dep. 66:17-67:22. Plaintiff herself has described this incident as a "███████████." A. Reminick Expert Report at 4. Plaintiff also testified that she has been involved in ███████████████ in her life, including ███████████. B.M. Dep. 119:17-120:1. As Dr. Reminick explains, the impacts of these incidents of ███████████████ were so severe that they likely caused Plaintiff to "████████████████████████████████████████████." A. Reminick Expert Report at 12-13. As a result, these incidents are plainly relevant to Plaintiff's history of ███████, her mental state, and the causes of her alleged injuries. *See Stevenson*, 504 F. Supp. 3d at 1138 ("evidence that tends to show that something other than [defendants'] conduct caused [plaintiff's] physical and mental injuries" is admissible under Rule 403). Further, excluding such evidence would improperly bar Uber from presenting a full defense on the issue of alternative causes, resulting in undue prejudice. *See Lindsey*, 405 U.S. at 66 ("Due process

21

requires that there be an opportunity to present every available defense.").

**G. Plaintiff's** ███████████████

Plaintiff has ███████████████████████████████████████—once at age fifteen ██████████████████████, leading to her ███████████████, and at least once in 2018, leading to ████████████████████████████. *See* ███████-NCCIW-MD-000049; ████████-NCCIW-MD-000151; *see also* A. Reminick Expert Report at 10-11. Plaintiff seeks to exclude evidence of ███████████████████████, arguing, conclusorily, that such evidence is not relevant to the damages at issue in this case and would be unduly prejudicial. Pl.'s Mot. at 20.

As set forth above, Plaintiff has placed her mental state, and the potential causes of her mental health injuries, squarely at issue by alleging that she suffers from emotional distress caused by the alleged incident. *See Cameron v. Ariz. Bd. of Regents*, No. CV-08-01490-PHX-ROS, 2011 WL 13137863, at *4 (D. Ariz. Apr. 13, 2011) (denying motion to exclude evidence regarding mental health issues because such evidence was relevant to the issue of causation). It is therefore highly relevant that Plaintiff was ██████████████████████████████████████████████████████████████████████. Nor is there any evidence that the highly probative value of this evidence will be outweighed by any prejudice. To the contrary, it is likely that such evidence may garner sympathy from the jury.

███████████████████████

Plaintiff suffered ████████████ in her youth due to ████████████████████████████████████████████████████. B.M. Dep. 60:5-14; ████████-OVBHS-000001 (Pl.'s Mot. Ex. 17).

Plaintiff seeks to exclude this evidence, arguing without explanation that it is irrelevant to her claims. Pl.'s Mot. at 20. But, as set forth in detail above, these ████████████, and their effect on Plaintiff's mental health, are directly relevant to the causes of Plaintiff's claimed emotional distress. *See Stevenson*, 504 F. Supp. 3d at 1138; *see also Louden v. City of Whittier*, No. CV 03-7816-GAF, 2005 WL 6000502, at *3 (C.D. Cal. Oct. 27, 2005) ("Evidence of prior psychological difficulties [is]

22

relevant to a determination of whether the event in issue in the lawsuit caused the emotional distress, or whether the plaintiff's emotional state is a product of prior unrelated events."). Further, Plaintiff offers no reason why evidence about Plaintiff's experience with, and reaction to, ███████████ is in any way prejudicial to her; much less does she explain how the risk of prejudice outweighs the clear relevance of this evidence to issues of causation.

Finally, Plaintiff seeks to exclude evidence that she was diagnosed with ███████████ ████, arguing that the doctor who diagnosed her was unable to reach a reliable conclusion. Pl.'s Mot. at 20. Plaintiff's argument on this point is a factual dispute for trial; it is not a proper basis to exclude evidence plainly relevant to her mental health, which she has put squarely at issue in this case. *See Louden*, 2005 WL 6000502, at *3 ("Evidence of prior psychological difficulties [is] relevant to a determination of whether the event in issue in the lawsuit caused the emotional distress, or whether the plaintiff's emotional state is a product of prior unrelated events."); *see also Cameron*, 2011 WL 13137863, at *4 (denying motion to exclude evidence regarding mental health issues because it is related to the issue of causation).

Plaintiff's assertion that her ███████████ diagnosis was later called into question by ███ physician does not render evidence relating to this diagnosis irrelevant. As Dr. Reminick explains in her report, Plaintiff told her "████████████████████████████████████████████████████████████████████████████████████████████████████████████." A. Reminick Expert Report at 10. Dr. Reminick could not find evidence of this in the medical records. But, even if Plaintiff is correct, she does not dispute that she experienced ███████████████████████████ diagnosis. This evidence is highly relevant to Plaintiff's conduct and frame of mind at the time of the alleged incident, and whether the incident occurred at all, given the copious evidence in the record that Plaintiff was ███████████ during the time period when the alleged incident occurred. *See* A. Reminick Expert Rebuttal Report at 6-7. As is the case with respect to Plaintiff's prior ████, Uber is acutely aware of the sensitive nature of evidence related to Plaintiff's medical history, including her

23

mental health history and diagnoses. Uber will treat these issues with the utmost respect and care at trial, but it must be permitted to present a complete picture of Plaintiff's mental health—and the causes of any damage she claims to have experienced—in defending itself at trial.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs' motions in limine should be denied or are otherwise moot.

DATED: March 24, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

24

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*
Laura Vartain Horn

CERTIFICATE OF SERVICE                                                                         Case No. 3:23-md-03084-CRB