# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

---

**IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**

**Case No. 3:23-md-03084-CRB**

---

**REPORT OF VERONIQUE VALLIERE**

**This Report relates to the following Wave 1 Case:**
**Case No. 24-cv-7940 (B.L.)**
**Case No. 24-cv-7821 (A.R.2)**
**Case No. 24-cv-7019 (LCHB128)**
**Case No. 23-cv-6708 (Dean)**
**Case No. 24-cv-4900 (WHB 832)**

**SEPTEMBER 26, 2025**

**Highly Confidential – Subject to Protective Order**

# VERONIQUE N. VALLIERE, PSY.D.
# VALLIERE & COUNSELING ASSOCIATES, Inc.

Forensic Treatment Services
drvalliere@vallierecounseling.com

P.O. Box 864
Fogelsville, PA  18051
Telephone: (610) 530-8392
Fax:  (610) 530-8940

### EXPERT REPORT OF VERONIQUE N. VALLIERE, PSY.D.

**DATE:**       September 26, 2025

**SUBJECT**:    Forensic Psychologist Expert Opinion
J.D. v. Uber Technologies
A.R.2 v. Uber Technologies
B.L. v. Uber Technologies
LCHB128 v. Uber Technologies
WHB 823 v. Uber Technologies

## SUMMARY OF OPINIONS

I have been retained as an expert to provide an expert analysis of Uber ridesharing and the enhanced risk of sexual assault and sexual misconduct of women using Uber.  Lawsuits have been filed on behalf of victims of sexual assault or maltreatment of Uber passengers by Uber drivers.

In my role as an expert on sexual assault, sexual offenders, and victims of sexual assault, I will provide education and my opinion regarding the issues discussed below in this report.  To summarize, some of my main points are:

1.  The rideshare environment is ripe for exploitation and utilization by sexual offenders for numerous reasons.  It enables sexual offenders to use the Uber service, gaining access to potential victims by becoming Uber drivers.  Uber has received hundreds of thousands of reports of sexual assault and sexual misconduct occurring on Uber.  Uber has informed the public about only a small fraction of these reports.

2.  Because it is widely known (and acknowledged by Uber employees) that sexual maltreatment is underreported, the reports made by victims of sexual maltreatment during Uber services should have been understood by Uber as representative of a greater issue.  And, Uber should have been aware that the Uber rideshare environment is ripe for the occurrence of sexual offenses.

3.  In fact, reports reveal that Uber knew that sexual assault was underreported, as well as the clearly documented risk issues associated with a higher rate of sexual assault during Uber rides.  Uber's own documents identify such issues as sex of assailant (male), sex of victim (female), time of day and day of week (night and weekends), intoxication, and proximity to a bar as significant factors raising the risk of sexual assault and incidence of reported sexual assault.  Uber has never informed the public about these high-risk factors.

4.  Uber's own studies revealed numerous driver factors that were predictive of a risk for future sexual misconduct, including sexual assault.  Some of these risk factors include a history of prior interpersonal conflict reports, dangerous driving, 1-star ratings, a history of ride

(https://rainn.org/strategies-to-reduce-risk-increase-safety/tips-for-safer-ridesharing/).  Using these partnerships, Uber continues promoting the *perception* that it takes its responsibility for safety for women using Uber seriously.

*Under-reporting of Sexual Violence*

In fact, Uber does not take this responsibility seriously.  Internally, Uber has repeatedly acknowledged that it has a "sexual assault problem" and did not assist women with safety (UBER_JCCP_MDL_ 001283906, Hasbun Ex. 2707). As Mr. Hasbun wrote, "The truth is we aren't helping.  You help yourself with the tools we give you" (*Id.*).  Messages indicate Uber's need to "change the narrative" to regain women's trust – a statement that belies an intention to take action for safety (UBER_JCCP_MDL_ 000434414, Sheridan Ex. 3811).  The notes from a 2015 Safety Advisory Board meeting included, "[D]rivers are not strangers – they're people from trusted organizations" (UBER_JCCP_MDL_001115339, Boman Ex. 1505/Cardenas Ex. 1229).  The promotion of the idea that a driver and passenger have a relationship has a profound impact on perception and the psychology involved with sexual assault and misconduct for victim/offender decision-making.  Uber understood that putting passengers in an isolated setting like a car with a complete stranger can create a risk of sexual assault and that it needed to address that "threat of interpersonal violence" (Ross Dep., June 12, 2025, at 390-393).  Ms. Ross, as a representative, testified that Uber is trying to "build trust" for its users and was "making sure people feel comfortable with the decision they're making to get into a car with someone they don't know." (Id. at 417-418).  Promoting this "relationship" and Uber's endorsements of its safe drivers disables "stranger danger."  Uber's promoted endorsements of drivers through Uber's screening process was identified as the "biggest opportunity to increase safety perceptions," reiterating the importance of Uber's relationships to and endorsement of Uber drivers to Uber passengers (Ross Dep., dated June 11, 2025, at 231-238, UBER_JCCP_000180990, Ross Ex. 1053).

It is not only the perceived relationship between the offender and victim that has a significant impact on the situation; *it is the relationship between Uber and its drivers that does as well.*  Users of Uber assume that Uber sufficiently vets its drivers and that Uber is aware of the potential problems in safety with its rideshare.  Uber states that with Uber "safety never stops" (https://www.uber.com/en-IN/newsroom/safety-never-stops/).  Given this, users may not be armed with the vigilance and fear that guides instinct or interpretation of behavior.  The same inappropriate or abusive behavior a victim would not tolerate on the subway may be excused, tolerated, or minimized by a victim using Uber because the driver is endorsed by Uber, is friendly, or understood with an assumption of trust and safety.  A stranger in the subway is presumed dangerous; an Uber driver is presumed safe.



Of those reports, the vast majority are about **less serious incidents**, like allegations of staring or asking personal questions.

**3%** Most serious as disclosed in Uber Safety Reports

**97%** All other categories

These are raw numbers disclosed in litigation that have **not been fully audited for accuracy.**

**Source:** Uber's August 6, 2025 blog post: https://www.uber.com/newsroom/ubers-safety-record/

And, while trying to engender a perception of safety, trust, and friendly drivers, Uber does not advise passengers of the true number of sexual assaults and acts of sexual misconduct reported to Uber or when sexual assault and sexual misconduct is more likely to occur. (UBER_JCCP_MDL_ 001283906, Hasbun Ex. 2707; Gaddis Dep., July 11, 2025, at 75; Childs Dep., June 5, 2025, at 36-37; McDonald Dep., October

12. Measures that Uber promotes as "safety features" such as GPS Tracking, RideCheck, the Emergency Button or Share My Ride do not appreciably reduce the risk that a driver will feel "safe" in committing sexual assault and sexual misconduct. Further, misinformation about the methods and motives of sexual offenders, despite Uber's alliance with victim advocates and sexual assault experts, has allowed Uber to promote "safety features" as deterrents to sexual assault.

13. An offender's interactions and method of abusing and exploiting a victim of sexual assault affects the victim's response to the assault and injury. An offender can use threats, camouflage, apology, stalking, or acting like nothing happened to confuse, control, and manipulate the victim.

14. Uber's policies against sexual assault and sexual misconduct are not sufficiently clear or adamant. It has not posted a "zero tolerance" policy anywhere for sexual assault and sexual misconduct, against either the drivers or the passengers. The most adamant statement Uber makes is on its website where it is written that sexual assault or sexual misconduct is "prohibited." Uber's guidelines for safety refer to "respect" and "consent," and a "no-sex" rule between drivers and passengers. The guidelines refer to prevention of sexual assault as a "shared responsibility" of "all of us," which dilutes the issues of sexual assault and misconduct and spreads the accountability to the victim and bystanders, while directing it away from Uber. Uber's efforts to disavow its responsibility to prevent sexual assault and sexual misconduct and to cloud its role in sexual assault and sexual misconduct can be used by offenders and against victims. Clear policies of "no tolerance" eradicate gray areas for offenders and victims. Clear policies also eliminate any need for interpretation that can be manipulated by offenders or confuse victims about sexual misconduct.

I have provided all of these opinions to a reasonable degree of psychological certainty.

Veronique N. Valliere, Psy.D.
Licensed Psychologist