# EXHIBIT 13

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-MD-03084-CRB |
| | **DECLARATION OF GREG BROWN** |
| This Document Relates to: | Judge:      Hon. Charles R. Breyer |
| | Courtroom:  6 – 17th Floor |
| *WHB 823 v. Uber Techs., Inc.*, N.D. Cal. No. 3:24-cv-04900 W.D.N.C. No. 3:25-cv-00737 | |

I, Greg Brown, having personal knowledge of the following, state:

1.    I am the Director, Head of Central Safety, at Uber. I was first employed by Uber from 2014 through 2020, during which time I worked as Operations and Logistics Manager (July 2014 – September 2015); Senior Operations Manager (September 2015 – November 2017); Program Lead, Safety (November 2017 – August 2019); and Senior Program Lead, Safety & Risk (August 2019 – December 2020). When I returned to Uber in 2022, I initially worked as Director of Safety, United States & Canada (September 2022 – August 2024).  Since August 2024, I have served in my current role. In that role, I am responsible for overseeing, organizing, and implementing global risk programs, and ensuring, where applicable, that Uber's safety policies and standards are appropriately globalized. I offer this Declaration in the above-captioned matter in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively, "Uber") Opposition to Plaintiff's Omnibus Motion to Limine.

2.    The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

***Uber Removed Mr. Richardson's Access to his Uber Account Without a Determination on Whether the Alleged Incident Actually Occurred***

3.    On February 2, 2023, through litigation, Uber learned that Mr. Richardson was the independent driver involved in the alleged incident at issue in Plaintiff's lawsuit.  *See* UBER-MDL3084-DFS00159967.  Within three business days, on February 7, 2023, Uber waitlisted Mr. Richardson's account and instituted a safety lock (i.e. he lost access to his account and the Uber platform).  He has not had access to his account since that date.  In accordance with Uber's policies, this action was taken on his account without a determination as to the veracity of the allegation by Plaintiff.  *See* Brown 2025.08.26 Dep. Tr. 507:15-20 ("Q:  …With respect to Jeffery Richardson[,] [w]hen Uber received the complaint from WHB832, did Uber immediately institute a safety lock and remove this driver from the platform? A:  When Uber received the complaint, yes, it did.").

1
DECLARATION OF GREG BROWN
Case No. 3:23-MD-03084-CRB

Docusign Envelope ID: DEA4E418-B060-4535-B38F-6423BE38C410

4.       On January 28, 2025, Mr. Richardson was deactivated from the Uber platform. *See* UBER-MDL3084-BW-00007775. This deactivation does not mean that Uber determined or concluded that this incident actually occurred as alleged.

***Uber's Policies and Procedures***

5.       It is Uber's standard practice to waitlist an independent driver's account and institute a safety lock when it receives a report that the independent driver allegedly engaged in sexual assault during a trip that originated on the Uber platform. Uber applies this standard practice regardless of how the report was first transmitted to Uber (e.g., through the filing of a lawsuit, a rider reporting it directly to Uber, etc.) and without requiring a determination as to the veracity of the report. A waitlist with a safety lock blocks the independent driver's ability to access the Uber platform to provide rides. The safety lock can only be lifted by a limited number of authorized individuals at Uber. So long as the safety lock is in effect, that driver will remain blocked from going online or receiving trip requests on the Uber platform.

6.       Following a waitlist with a safety lock, it is Uber's standard practice to investigate the report to determine if the report meets Uber's deactivation standards. This investigation includes, but is not limited to, contacting the reporting party and the reported-against party to gather more information about the underlying report. *See* UBER_JCCP_MDL_000366728. This investigative process does not require a determination by Uber about whether the alleged incident actually occurred. If, after the investigation is complete, the report meets the standards for deactivation, the reported-against party's account will be deactivated and the reported-against party will permanently lose access to the Uber platform. Deactivation decisions can be made without a determination of whether the alleged incident actually occurred.

7.       When a report is received solely through litigation, Uber may deviate from its standard investigative procedures; for example, where a reporting party is represented by counsel and direct outreach is not permitted. In these instances, as is the situation here, Uber removes the reported-against party's access to the platform and applies a safety lock without additional investigation.

Docusign Envelope ID: DEA4E418-B060-4535-B38F-6423DE38C410

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 24, 2026

*Greg Brown*

_____

GREG BROWN