[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| This Document Relates to: | |
| *WHB 823 v. Uber Techs., Inc., et al.*, No. 3:24-cv-04900 | Judge:          Hon. Charles R. Breyer<br>Courtroom:    6 – 17th Floor |
| | Date Filed: March 31, 2026<br>Trial Date: April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 823, | CASE NO. 3:25-cv-00737-CRB |
| Plaintiff, | |
| v. | Judge:        Hon. Charles R. Breyer |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | |

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
laura.vartain@kirkland.com
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
**KIRKLAND & ELLIS LLP**
alli.brown@kirkland.com
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

JESSICA DAVIDSON (*Pro Hac Vice* admitted)
**KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

SABRINA H. STRONG (SBN: 200292)
JONATHAN SCHNELLER (SBN: 291288)
**O'MELVENY & MYERS LLP**
sstrong@omm.com
jschneller@omm.com
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

BRADLEY R. KUTROW
**MCGUIREWOODS LLP**
bkutrow@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049

Counsel for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 3

    A.  Uber Is Not A Carrier as a Matter of Law. .......................................................... 3

    B.  Uber and Independent Drivers Do Not Offer Their Services Indifferently as a Matter of Law. ................................................................................................ 10

    C.  Even if Uber Were a Common Carrier, It Would Not Be Absolutely Liable for Assaults by Drivers. .......................................................................................... 15

    D.  Plaintiff's Lack of Expert Testimony Precludes the Only Damages Theory She Disclosed. .......................................................................................................... 17

III.  CONCLUSION ............................................................................................................ 18

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Orient Express Railway Co. v. STB*,
484 F.3d 554 (D.C. Cir. 2007) ............................................................................................ 14

*Arizona Corporate Commission v. Reliable Transportation Co.*,
346 P.2d 1091 (Ariz. 1959) ................................................................................................. 14

*Bank of Ky. v. Adams Express. Co.*,
93 U.S. 174 (1876) ................................................................................................................. 7

*Beavers v. Fed. Ins. Co.*,
437 S.E.2d 881 (N.C. App. 1994) ................................................................................ passim

*Brill v. Indianapolis Life Ins. Co.*,
784 F.2d 1511 (11th Cir. 1986) ........................................................................................... 16

*Brueswitz v. Wyeth LLC*,
562 U.S. 223 (2011) ............................................................................................................... 7

*Circle Express Co. v. Iowa State Commerce Commission*,
86 N.W.2d 888 (Iowa 1957) ............................................................................................... 11

*Clark v. Bland*,
106 S.E. 491 (N.C. 1921) .................................................................................................... 18

*Claypool v. Lightning Delivery Co.*,
299 P. 126 (Ariz. 1931) ......................................................................................................... 7

*Daniel R. v. Petersburg R.R. Co.*,
23 S.E. 327 (N.C. 1895) ...................................................................................................... 18

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
2022 WL 884275 (W.D.N.C. Mar. 24, 2022) ................................................................... 21

*E.B. v. Uber Techs., Inc.*,
No. 2024-CP-46-2996 (Jun. 13, 2025 S.C. Ct. Com. Pl.) ................................................... 6

*Essex Insurance Co. v. Barrett Moving & Storage, Inc.*,
885 F.3d 1292 (11th Cir. 2018) ............................................................................................. 5

*G.D. ex rel. S.G. v. Kannapolis City Schs. Bd. of Educ.*,
2024 WL 2832779 (M.D.N.C. June 4, 2024) .................................................................... 22

*Godwin v. Carolina Tel. & Tel. Co.*,
48 S.E. 636 (N.C. 1904) ...................................................................................................... 13

*Gomez v. Superior Ct.*,
113 P.3d 41 (Cal. 2005) ......................................................................................................... 7

*Gordon v. Garner*, 493 S.E.2d 58 (N.C. App. 1997) .......................................................... 4, 5, 6, 19

*Gray v. Cent. Warehouse Co.*,
106 S.E. 657 (N.C. 1921) .................................................................................................... 13

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) .............................................................................................. 11

*Hairston v. Atl. Greyhound Corp.*,
18 S.E.2d 166 (N.C. 1942) ............................................................................................... 6, 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hendrick v. Leslie Fay, Inc.*, 159 S.E.2d 365 (N.C. 1968) ............................................................ 18

*Home Ins. Co. v. Riddell*,
  252 F.2d 1 (5th Cir. 1958)........................................................................................... 16, 17

*Lanier v. Pullman Co.*,
  105 S.E. 21 (N.C. 1920)...................................................................................................... 18

*Mann v. Virginia Dare Transp. Co., Inc.*,
  198 S.E.2d 558 (N.C. 1973) .......................................................................................... 6, 18

*McNeill v. Durham & Charlotte R.R. Co.*,
  47 S.E. 765 (N.C. 1904) ...................................................................................................... 7

*Namisnak v. Uber Techs., Inc.*,
  444 F. Supp. 3d 1136 (N.D. Cal. 2020) ............................................................................... 8

*NetChoice, L.L.C. v. Paxton*,
  49 F.4th 439 (5th Cir. 2022) .............................................................................................. 13

*Orcutt v. Tucson Warehouse & Transfer Co.*,
  318 P.2d 671 (Ariz. 1957).................................................................................................... 8

*Osborne v. Yadkin Valley Econ. Dev. Dist., Inc.*,
  865 S.E.2d 307 (N.C. App. 2021) ...................................................................................... 19

*Park v. Merrill, Lynch*,
  582 S.E.2d 375 (N.C. App. 2003) ................................................................................. 8, 10

*Patterson v. Duke Power Co.*, 36 S.E.2d 713 (N.C. 1946).............................................................. 4, 5

*Patterson v. Old Dominion S.S. Co.*,
  53 S.E. 224 (N.C. 1906)............................................................................................... 12, 14

*People v. Uber Techs., Inc.*,
  56 Cal. App. 5th 266 (2020) ................................................................................................ 8

*Potts v. Howser*,
  161 S.E.2d 737 (N.C. 1968)............................................................................................... 22

*Shoals Techs. Grp., LLC v. Voltage LLC*,
  2026 WL 685697 (M.D.N.C. Mar. 11, 2026) .................................................................... 21

*State ex rel. Utilities Comm'n v. Bird Oil Co.*,
  273 S.E.2d 232 (N.C. 1981)......................................................................................... 15, 16

*State ex rel. Utilities Comm'n v. Tar Heel Indus., Inc.*,
  334 S.E.2d 396 (N.C. App. 1985)...................................................................................... 15

*State ex rel. Utils. Comm'n v. Am. Courier Corp.*,
  174 S.E.2d 814 (N.C. App. 1970) ...................................................................................... 12

*State ex rel. Utils. Comm'n v. Gulf-Atl. Towing Corp.* ("*GATCO*"),
  110 S.E.2d 886 (N.C. 1959)........................................................................... 12, 14, 15, 16

*State ex rel. Utils. Comm'n v. Nello L. Teer Co.*,
  146 S.E.2d 511 (N.C. 1966)............................................................................................... 16

*State v. Bryant*,
  614 S.E.2d 479 (N.C. 2005)............................................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ward v. Housatonic Area Reg'l Transit Dist.*,
  154 F. Supp. 2d 339 (D. Conn. 2001) ................................................................ 13

*Weade v. Dichmann, Wright & Pugh*,
  337 U.S. 801 (1949) .......................................................................................... 4

*White v. Norfolk & S.R.R. Co.*,
  20 S.E. 191 (N.C. 1894) .................................................................................... 19

*Williams v. Gill*,
  29 S.E. 879 (N.C. 1898) .................................................................................... 18

*Woodson v. Rowland*,
  407 S.E.2d 222 (1991) ....................................................................................... 17

**Statutes**

G.S. § 20-280.3(d) ................................................................................................ 12

G.S. § 20-280.3(d)(5) ........................................................................................... 12

G.S. § 62-140 ........................................................................................................ 12

G.S. § 62-3(1a) ....................................................................................................... 8

N.C.G.S. § 20-280.1 ............................................................................................... 6

Raleigh City Code § 12-2037 ............................................................................... 12

**Other Authorities**

1 Bruce Wyman, The Special Law Governing Public Service Corporations and All Others
  Engaged in Public Employment § 160 (1911) .................................................... 3

Restatement (Second) of Torts § 428 .................................................................... 16

*Undertake*, BLACK'S LAW DICTIONARY (12th ed. 2024) ................................... 3, 5

William F. Elliott, A Treatise on the Law of Bailments and Carriers § 128 (1914) ....................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Before summary judgment briefing has concluded, the Court appears to have made itself the first ever to hold both that Uber is a common carrier under North Carolina law, and that the company is liable for any alleged assault by a driver against a passenger, regardless of whether Uber could have foreseen or prevented the incident. Those novel holdings are extraordinary—especially for a federal court sitting in diversity. The Court's ruling would impose boundless liability untethered from longstanding North Carolina precedent. The Court should reconsider, as such a rule contravenes both North Carolina statute and case law defining common-carrier status and the limit of any attendant duty.

Plaintiff does not seriously dispute that, by statute, contract, and practice, Uber does not carry riders but instead only connects them to independent drivers who carry them. Plaintiff maintains that, despite the legislature's designation of Uber as a transportation *network* company rather than a transportation provider, Uber is a common carrier because advertising slogans such as "Ride with Uber" hold it out to the public as a transportation provider. Resp. 2-3. But as Plaintiff's favorite precedent makes clear, a common carrier must not just "hold [itself] out to the public" but actually "*undertake[] as a business to carry. . . .*" *Beavers v. Fed. Ins. Co.*, 437 S.E.2d 881, 883 (N.C. App. 1994).[1] Consistent with that requirement, North Carolina courts have always conditioned common carrier duties on a carrier's control over the passenger and conveyance. Plaintiff would have this Court conclude that North Carolina courts simply did not mean what they said. But nothing in North Carolina law supports reading *carriage* out of the common-carrier test. Indeed, Plaintiff has not cited a single precedent in the history of Anglo-American jurisprudence imposing common carrier duties on a non-carrier based solely on its advertising.

Plaintiff again attempts to rewrite North Carolina law when she argues that Uber is a common carrier notwithstanding its right to refuse service and dynamic pricing. According to Plaintiff, those facts are irrelevant because the hallmark of a common carrier is whether it

---

[1] Unless otherwise noted all emphases are added and all internal quotations, citations, and alterations are omitted.

individually negotiates each transaction. But North Carolina courts have never suggested that. Rather, they hold that a common carrier cannot choose its clientele and must charge uniform rates. The undisputed record shows that neither applies to Uber: Uber does not provide its service indifferently, and rides arranged on Uber's platform do not have the same rate. Because Plaintiff cannot make either required showing, she asks this Court to replace them with a novel non-negotiation requirement. But federal courts sitting in diversity do not make new state tort law.

Plaintiff ventures further into uncharted territory in asking this Court to hold that Uber is liable for any assault committed by any independent driver, regardless of whether Plaintiff can show that Uber itself had any fault. For that draconian rule, Plaintiff points to cases addressing duties under *state-conferred franchises* and assaults by common carriers' *on-duty employees*. Those cases plainly do not apply to Uber, which neither possessed a public franchise nor employed Plaintiff's driver. So Plaintiff again asks this Court to ignore the clear terms of North Carolina holdings and impose a sweeping liability rule—what she calls a "nondelegable duty"—that no North Carolina court has ever recognized in similar circumstances. That request would require this Court to dramatically expand decades-old state-law tort rules. Worse, it would directly contravene the TNC statute, which affirmatively *authorizes* Uber to delegate transportation responsibilities to independent contractors.

Each of these departures from North Carolina law should be dispositive in this diversity case. But the whole is more absurd than the sum of Plaintiff's innovations. It cannot be that a handful of advertising slogans about "ride[s]" transform a company that does not carry anything or control any means of carriage, that reserves and consistently exercises the right to exclude anyone, that utilizes dynamic pricing, and that the General Assembly has authorized to delegate transportation responsibilities, into a common carrier subject to absolute liability when its authorized delegees commit an unforeseeable tort. Holding that a bare reference to "rides" can create a common carrier where the legislature did not want one would violate the separation of powers and seriously intrude on Uber's right to truthfully advertise its services.

The Court should grant summary judgment to Uber because it is not a common carrier as a matter of law, and no reasonable jury could conclude otherwise on this record. In the

2

alternative, the Court should enter partial summary judgment for Uber on Plaintiff's compensatory damages claim because Plaintiff lacks expert evidence that would allow the jury to determine which of her alleged mental suffering damages are attributable to the alleged incident.

**II.    ARGUMENT**

### A.    Uber Is Not a Carrier as a Matter of Law.

Plaintiff does not dispute that: (1) North Carolina's TNC statute assigns Uber only an intermediary role "connect[ing]" riders to drivers; (2) under the TNC statute, transportation services are "provided by" independent drivers, not TNCs, and that the driver here was an independent contractor; (3) Uber's Terms expressly inform riders that Uber does not transport anyone; and (4) Uber does not own or operate any means of transportation, nor employs those who do. Instead, Plaintiff's argument for why Uber is a carrier occupies just two sentences of her Response: she contends that the statutory framework, Uber's contractual obligations, and the realities of its operations are all irrelevant because Uber has advertised with unremarkable phrases such as "Ride with Uber" and "We'll get you there." *See* Resp. at 2. That argument not only defies logic—it contravenes binding North Carolina law.

Plaintiff does not seriously dispute the requirement that a common carrier actually *carry* passengers. As her preferred articulation of the test makes clear (Resp. at 2), a common carrier must not just "hold[] himself out" but actually "*undertake as a business to carry* all people indifferently." *Beavers*, 437 S.E.2d at 883; *see id.* ("Under both statutory and common law, the fundamental service which a common carrier renders is *transportation*.") (emphasis in original). An "undertaking" requires not just advertising, but action: Uber does not "take on" the "obligation or task" of transporting passengers, nor does it "give a formal promise" or "guarantee" that it will itself provide such transportation. *Undertake*, BLACK'S LAW DICTIONARY (12th ed. 2024). The fundamental premise of common-carrier duties—the carrier's monopoly-power "complete control of its roadbeds, stations, platforms, and yards" and "at least . . . limited control over and direction of the passenger"—makes no sense for a party that itself does not carry

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

anything.[2] *Patterson v. Duke Power Co.*, 36 S.E.2d 713, 714-16 (N.C. 1946). In other words, common carriers have historically borne heightened duties because of their power to limit competition and because of their dominating control over the physical environment where the harm occurs. For that fundamental reason, a defendant "incapable of transporting . . . for compensation" because it "does not own or operate" vehicles is not a common carrier. *Gordon v. Garner*, 493 S.E.2d 58, 61-63 (N.C. App. 1997). And it follows that a "mere arranger of transportation does not incur the liability of a common carrier." *Weade v. Dichmann, Wright & Pugh*, 337 U.S. 801, 808 (1949).[3]

Plaintiff's immaterial distinctions of Uber's authorities do not call into question this basic prerequisite: that a common carrier must actually provide transportation. Plaintiff asserts that precedents requiring control over transportation address only "where a person has to be in order for the carrier's duty to attach"—i.e., when a person becomes a "passenger" entitled to the carrier's heightened protection. Resp. 9 (citing *Patterson*, 36 S.E.2d at 714). But that proves Uber's point, not Plaintiff's. Under cases like *Patterson*, a carrier's duty attaches when a passenger is subject to the carrier's "complete control." 36 S.E.2d at 715. That condition necessarily presupposes that the defendant operates a means of carriage over which it can exercise such control.

Similarly, Plaintiff attempts to distinguish *Gordon* because the defendant there owned a "sand pit" and did not "advertise" itself as a transportation service. Resp. 9. But the Court's actual holding turned on a different and more fundamental point: the defendant was not a common carrier because it "ha[d] no dump trucks" and was therefore "incapable of transporting . . . for compensation." *Gordon*, 493 S.E.2d at 62. Plaintiff also dismisses federal authorities under the

[2] *See also* 1 Bruce Wyman, The Special Law Governing Public Service Corporations and All Others Engaged in Public Employment § 160 at 135 (1911) ("Common carriage involves a particular kind of service. The conception of carriage itself involves not only transportation but control during the transit.").

[3] Plaintiff dismisses *Weade* as involving "discrete services" (Resp. 9), but the agent there did far more than Uber—issuing tickets, maintaining terminals, provisioning the ship, and even hiring officers and crew. 337 U.S. at 803. Despite controlling virtually every facet of the vessel other than its actual operation, the defendant was not a common carrier because it was "not in any way engaged in the carriage of passengers." *Id.* at 807-08.

4

Carmack Amendment, but those cases "track[] longstanding common-law rules" in holding that a defendant is not a carrier when "it makes clear in writing that it is merely acting as a go-between to connect the [transportation-seeker] with a suitable third-party carrier." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1301-02 (11th Cir. 2018).[4]

Plaintiff argues that the carriage requirement is irrelevant because common-carrier duties are nondelegable. That argument is circular. Even on Plaintiff's theory, the nondelegable duty doctrine could apply *only after carrier status is established*—it would not alter the threshold requirement that the defendant must have undertaken to carry in the first place. Consistent with that principle, e*very case* Plaintiff cites for the nondelegable duty doctrine involves a defendant that actually assumed an obligation to transport passengers. The defendant in *Mann v. Virginia Dare Transp. Co., Inc.*, 198 S.E.2d 558 (N.C. 1973), owed a nondelegable duty because it assumed transportation responsibilities under a "public franchise" and then *carried the plaintiff* in a bus operated by its employee. *Id.* at 565. The defendant in *Hairston v. Atlantic Greyhound Corp.*, 18 S.E.2d 166 (N.C. 1942), was a bus company that likewise actually carried passengers in its own vehicles and controlled the station in which the plaintiff was assaulted, *id.* at 167, and the court grounded liability in "the relationship of carrier and passenger"—a relationship that existed only because the defendant had undertaken to transport the plaintiff. *Id.* at 169-170. Had those defendants not undertaken to provide transportation—by statute, contract, and practice—they would not have been carriers at all. *See, e.g.*, *Gordon*, 493 S.E.2d at 62.

Plaintiff does not cite a single precedential decision—in North Carolina or anywhere else—imposing common-carrier duties on an entity that neither undertakes nor performs carriage. It would be highly improper for this Court, sitting in diversity, to be the first ever (before briefing was even finished) to determine that a company like Uber that indisputably does not carry anyone and has no statutory or contractual obligation to do so nevertheless is a common carrier under North Carolina law.[5] This is even more absurd where the North Carolina legislature considered

---

[4] Plaintiff cites cases under the Railroad Retirement Act and Iowa's common-carrier statutes when she believes they support her account of North Carolina common law. *See* Resp. 10-11.
[5] Plaintiff's contention that *E.B. v. Uber Techs., Inc.* dismissed "without deciding" whether Uber is a common carrier under North Carolina common law is entirely wrong. Resp. 3 n.4

how to regulate ride-hailing platforms and made a conscious choice to classify Uber as a connective service, rather than regulating Uber on the state's common-carrier framework.

Both the TNC statute and Uber's Terms of Service ("Terms") answer the dispositive common-law question—whether Uber has undertaken to carry passengers—in the negative. Plaintiff's observation that the TNC statute does not abrogate the common law or specifically disclaim common-carrier duties misses the point. Resp. at 3. The statute assigns Uber a limited "*connect*[*ion*]" function, and provides that "TNC drivers" are the parties who "provide transportation services." G.S. § 20-280.1(6) (emphasis added). It thus makes clear that, in operating as a permitted TNC, Uber does not undertake to carry the public.[6]

Similarly, Plaintiff argues Uber's Terms are irrelevant because a common carrier cannot "void" a common carrier status or waive liability for intentional torts "through contract." Resp. 6. That misses the point. The Terms (deemed binding on plaintiff by this very Court) accord with the TNC statute by defining Uber's services—its undertaking—as connecting users with "third party providers providing transportation services," not as providing transportation services itself. Terms of Use at -478.[7] Because "[t]he relation of passenger and carrier is created by contract, express or implied," *McNeill*, 47 S.E. at 770, both the statutory framework and the contractual

_____

(referencing No. 2024-CP-46-2996 (Jun. 13, 2025 S.C. Ct. Com. Pl.) (Dkt. 5475-18)). *E.B.* held that "Uber is not a 'common carrier' under North Carolina law" because "North Carolina classifies Uber as a 'transportation network company'" and not "a common carrier that is subject to regulation by the North Carolina Utilities Commission under Chapter 62." *E.B.*, Dkt. 5475-18, at 8. Thus, "any attempt to treat Uber as a common carrier under North Carolina tort law would be contrary to the clear policy choice made by North Carolina's legislature." *Id.*

[6] Plaintiff alternatively argues that the TNC statute supports common-law liability because it was modeled after regulations in California, where a nonprecedential trial court order would find Uber a common-carrier ten years after the North Carolina TNC statute's enactment. Such "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Brueswitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011). Plaintiff's contention that California applies the same common-carrier test as North Carolina because both states' tests use the phrase "holding out" (Resp. at 4) likewise does not withstand even cursory scrutiny. *Compare Gomez v. Superior Ct.*, 113 P.3d 41, 45 (Cal. 2005) (holding "amusement rides" common carriers) *with Beavers*, 437 S.E.2d at 884 (holding recreational rides not common carriers).

[7] Plaintiff's authorities rejecting contractual disclaimers all involve defendants that *performed* transportation and sought to limit their carrier obligations by contract. *See McNeill v. Durham & Charlotte R.R. Co.*, 47 S.E. 765, 766 (N.C. 1904) (railroad liable where undertaking "the transportation itself"); *Claypool v. Lightning Delivery Co.*, 299 P. 126, 128-29 (Ariz. 1931) (trucking company operated "large fleet[s] of fast trucks"); *Bank of Ky. v. Adams Express. Co.*, 93 U.S. 174, 177 (1876) (express company's employees its own "messengers" to "transport packages from one point to another").

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

terms are not just relevant—they are dispositive. *See, e.g.*, *Orcutt v. Tucson Warehouse & Transfer Co.*, 318 P.2d 671, 673 (Ariz. 1957) ("The law will look to the real transaction, and *if the contract be, in fact, one for transportation*, the undertaking will be considered as that of a common carrier.").

Plaintiff's argument that Uber's Terms are "opaque" and contradict Uber's advertising is false. Resp. 8. The Terms repeatedly state in clear language that Uber provides only platform services connecting users with "third-party providers providing transportation services." Dkt. 5475-4 ("Terms") at -483; *see id.* (Uber is not "a . . . carrier"); *id.* at -479 (transportation services are undertaken by "independent Third Party Providers, including Transportation Network Company drivers"). This Court has already held that Plaintiff had "reasonably conspicuous notice" of the contract and unambiguously "manifested [her] assent to [its] terms." Dkt. 3484 (PTO 29) at 4. North Carolina law imputes knowledge of those Terms to Plaintiff, *Park v. Merrill, Lynch*, 582 S.E.2d 375, 380 (N.C. App. 2003), and, as discussed below, Plaintiff makes no serious argument that catchphrases like "Ride with Uber" modify the parties' agreement.

Although Plaintiff concedes that Uber does not own or operate any vehicles and that drivers who offer their services on the platform are independent contractors as a matter of law, she contends that a "mere arranger" would not check in via app "when something unexpected happens in transit," "limit communication between the driver and the passenger to its own channels," or "determine prices based on its own marketplace goals." Resp. 8–9.[8] But none of those functions involve the *performance of transportation*. And Plaintiff fails to explain how any of them support an inference that Uber undertook to perform Plaintiff's transportation itself. Where the General Assembly says (through the TNC statute) that Uber does not perform

---

[8] To support her operational-reality argument, Plaintiff relies on *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 292, *as modified on denial of rehearing* (2020), and *Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1143 (N.D. Cal. 2020). Resp. 5-6. Both are irrelevant. *People v. Uber* was a California employment-classification case applying California's "ABC" test—a standard irrelevant here, where Plaintiff has stipulated the driver is an independent contractor. Resp. at 15 n. 17. *Namisnak* was an ADA reasonable-modification case assessing whether wheelchair-accessible rides fell outside the company's "area of specialization." 444 F. Supp.3d at 1143. Neither case applied North Carolina's "holding out" test, analyzed common-carrier precedent, or held Uber is a common carrier.

transportation, Uber's Terms say that it does not perform transportation, and Uber does not own vehicles or employ drivers, such non-transportation measures do not support a triable inference that Uber undertook to perform transportation.

Because Plaintiff is unable to suggest that Uber undertook to perform transportation by statute, contract, or deed, she is left to manufacture a baseless argument that a handful of advertising phrases make Uber a carrier regardless of its legal obligations and the practical operation of its business. But the question here is controlled at bottom by legislative judgment: The "brokers" that the North Carolina General Assembly has distinguished from common carriers might well reference "rides" in their advertising, but that would not supersede brokers' legislative designation as non-carriers. Not even Plaintiff's chief North Carolina precedent, *Jackson v. Stancil*, suggests that advertisements can transform a non-carrier into a carrier. 116 S.E.2d 817, 824 (N.C. 1960). *Jackson* addressed a charter aircraft service that undisputedly provided carriage, and considered advertising only to determine "whether *the carrier* is acting as a common carrier or contract carrier," not whether it is a carrier in the first place. *See id.* ("[T]he words 'holds itself out' . . . imply . . . that *the carrier* in some way makes known to its prospective patrons the fact that its services are available, . . . as by advertising"). *No North Carolina precedent* suggests that an advertising slogan can make a non-carrier "*undertake[] as a business to carry* for all people indifferently." *Id.* Indeed, Plaintiff does not cite a single decision *from any jurisdiction* suggesting that vague advertisements can transform a non-carrier into a carrier.[9] In a diversity case, that ought to be dispositive of Plaintiff's common-carrier argument.

Plaintiff's theory also raises serious doctrinal concerns. Under her approach, absolute liability for the intentional torts of independent contractors would not turn on the legislature's

---

[9] North Carolina's common-carrier statute further confirms that "holding out" transportation through advertisements does not turn a non-carrier into a carrier. The statute defines a "broker" as an entity that is "*not* . . . a motor carrier" but "holds . . . itself out, by solicitation, advertisements, or otherwise, as one who sells, provides, furnishes, contracts or arranges . . . transportation for compensation." G.S. § 62-3(1a). Plaintiff protests that the statute is irrelevant to North Carolina common law, but North Carolina's statutory test for common carriage is virtually identical to the common law test, and no North Carolina case has *ever* imposed common carrier tort duties on an entity that does not satisfy the statutory test. *See, e.g.*, *Beavers*, 437 S.E.2d at 883 ("Under both statutory and common law, the fundamental service which a common carrier renders is *transportation*.") (emphasis added).

8

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

deliberate policy choice, the company's contract with its users, or its any statute, contract, or operational conduct, but rather solely on whatever the implications a jury might draw from commonplace advertising phrases—the kind of "vaguely promissory statements to the general public" that courts have long recognized "do not create legal duties." *Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998). The implications of such a rule would extend far beyond this case. If advertising slogans alone can establish common-carrier status where the legislature did not create it, then any company in the service economy that uses aspirational marketing language about its platform's offerings would face potential absolute liability for the misconduct of independent third parties that the company had no meaningful opportunity to control. Plaintiff identifies no limiting principle that would prevent that result and nothing in the history of common-carrier law that supports it.

The unprecedented outcome contemplated by this Court's tentative order is particularly unjustifiable given that the public receives Uber's advertisements against legal and contractual backdrops expressly specifying Uber's non-transportation duties. Riders who view Uber's advertisements are presumed to know Uber's limited statutory and contractual role. *See Park*, 582 S.E.2d at 380; *State v. Bryant*, 614 S.E.2d 479, 489 (N.C. 2005). Plaintiff speculates that, despite that knowledge, riders might conclude Uber is a common carrier because common-carrier duties are, in Plaintiff's view, nondelegable. But North Carolina's holding-out test asks whether the defendant "holds itself out to the public as engaged in the public *business of transporting persons*"; it does not ask what legal conclusions the public might draw about tort duties. *Beavers*, 437 S.E.2d at 883. No reasonable juror could find that a handful of vague advertisements satisfy that test when the TNC statute and Uber's Terms unambiguously inform the public Uber does not "transport[] persons." *Id.*

This Court, sitting in diversity, is bound to "rule upon state law *as it exists* and . . . not surmise or suggest its expansion." *Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016) (emphasis in original). Plaintiff's unprecedented request to impose common-carrier duties on a party that has not contracted to carry nor actually carried anything defies that limited mandate.

**B.**     **Uber and Independent Drivers Do Not Offer Their Services Indifferently as a Matter of Law.**

Even beyond the legal, contractual, and factual reality that Uber does not carry anyone, the record proves that Uber cannot be a common carrier for additional reasons: (1) both Uber and independent drivers retain and exercise a broad right to refuse their respective services for any legal reason; and (2) Uber does not offer its connection services to the public at uniform rates. Rather than identify a factual dispute on either of these prerequisites, Plaintiff once again asks this Court to rewrite North Carolina law.

***Right to refuse.*** Plaintiff's argument that a party can be a common carrier while reserving and consistently exercising its right to refuse service relies on an Iowa case applying a rule North Carolina has rejected. In *Circle Express Co. v. Iowa State Commerce Comm'n*, the Iowa Supreme Court held that a carrier who refused service "mostly due to improper wrappings or [cargo] offered in a dirty and greasy condition" could be regulated under the state's common-carrier statute because a state agency found that it "in fact . . . [held] out to serve all indifferently." 86 N.W.2d 888, 892, 895 (Iowa 1957). In holding that the right to refuse does not foreclose common-carrier status, the court recognized that "many courts" have held the opposite. *Id.* at 895.

The North Carolina Supreme Court is one of those courts. In *State ex rel. Utils. Comm'n v. Gulf-Atl. Towing Corp.* ("*GATCO*"), 110 S.E.2d 886 (N.C. 1959), the court held that because "a private or contract carrier may refuse to contract for carriage," the defendant's reservation of the right to refuse service for business reasons precluded common-carrier status. *Id.* at 889-90. Plaintiff's contention that *GATCO* turned on the mechanics of negotiation (Resp. 11-12) is mistaken. The defendant's negotiation of individual contracts was relevant because it demonstrated the defendant's right to "choose not to contract with anyone." *GATCO*, 110 S.E.2d at 891. It was the right to refuse, not negotiation, that established the defendant did not "hold itself out as willing to transport goods for all who might apply," or "carry for *anyone* without first voluntarily entering into a specific contract for such carriage." *Id.* at 890-91 (carrier was "the sole judge who [it] shall haul for and what [its] rates will be"). Plaintiff protests that *GATCO* applies the statutory, rather than common-law test. But her own common-law precedents confirm that, by

10

definition, a "contract carrier may refuse to contract for carriage." *Jackson*, 116 S.E.2d at 824.

Plaintiff turns North Carolina law on its head when she asserts that "no case requires that a common carrier have a duty to carry all comers in order to have a duty to carry them safely." Resp. 11 n.14. For over a century, North Carolina courts have held that the defining hallmark of common carriage is the obligation to "provide service on call and demand to all of the public" without discrimination. *State ex rel. Utils. Comm'n v. Am. Courier Corp.*, 174 S.E.2d 814, 816 (N.C. App. 1970); *see, e.g.*, *Patterson v. Old Dominion S.S. Co.*, 53 S.E. 224, 224 (N.C. 1906) ("It was its duty to sell tickets to applicants in the order in which they were applied for, without discrimination. . . .").[10] That rule derives from the monopoly power that traditional common carriers possessed—yet another reason it makes no sense to treat Uber as a common carrier. There is no such thing as a North Carolina common carrier with no duty to carry all comers.

Plaintiff tellingly does not cite a single North Carolina case treating a company as a common carrier when it openly reserves unqualified discretion to refuse service. Instead, she attempts to equate Uber's unqualified right to refuse "at any time for any reason" with other out-of-state cases allowing common carriers to decline service to "unruly" or "threatening" passengers. Resp. 12-13 (citing *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 494 n.42 (5th Cir. 2022) & *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 344 (D. Conn. 2001). But even if North Carolina had such a carveout, Uber's broad discretion to refuse service to anyone categorically is nothing like a limited right to refuse service for misbehavior. It is undisputed that Uber has systematically deactivated rider accounts for a variety of discretionary reasons, banning more than 750,000 rider accounts in the United States alone for wide-ranging reasons including "low ratings" and "other violations of Uber's Community Guidelines." Dkt. 5634-1 (Supplemental Decl. of Erin O'Keefe ISO Defs.' Opp'n ("Supplemental O'Keefe Decl.")) ¶ 3. That unqualified discretion does not remotely satisfy a North Carolina common carrier's obligations to serve all comers, including passengers with known disreputable character or

---

[10] *See also, e.g., GATCO*, 110 S.E.2d at 889 ("The distinctive characteristic of a common carrier is that he undertakes as a business to carry for all people indifferently[.]"); *Jackson*, 116 S.E.2d at 824 (same); *Beavers*, 437 S.E.2d at 883 (same).

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

criminal histories. *See Godwin v. Carolina Tel. & Tel. Co.*, 48 S.E. 636, 637 (N.C. 1904); *Gray v. Cent. Warehouse Co.*, 106 S.E. 657, 659 (N.C. 1921).[11]

Moreover, Plaintiff says nothing about independent drivers' own right to refuse ride requests for any reason. That concession, too, should be dispositive. Plaintiff's entire theory of liability is that independent drivers exercise common-carrier duties delegated to them by Uber. *See* Resp. 15-20. If that were true, then an individual driver's arbitrary choice to decline a ride request would make that driver (or Uber) "liable for an action of damages for a wrongful refusal." *Old Dominion*, 53 S.E. at 224; *cf., e.g.*, Raleigh City Code § 12-2037 ("No [taxi] driver shall refuse or neglect to convey any orderly person . . . upon request."). But drivers working on Uber's platform have never faced such liability based on their unquestioned right to refuse transportation. *See* Dkt. 5475-21 (Declaration of Erin O'Keefe ISO Defs.' Mot. for Summ. J. ("O'Keefe Decl.")) ¶ 39.[12]

Plaintiff suggests in a footnote that the TNC statute's nondiscrimination provision obligates Uber to serve the public indifferently. Resp. 10 n.13 (citing G.S. § 20-280.3(d)). In fact, that statute proves the opposite. The statute does not impose a duty on Uber to transport *anyone*; rather, consistent with Uber's intermediary function, it requires Uber only to adopt a "policy" of nondiscrimination for its platform. *See* G.S. § 20-280.3(d)(5). More fundamentally, the limited scope of that mandated policy contrasts sharply with the unqualified common-law obligation to accept all comers indifferently. *See supra* at 10-11; *GATCO*, 110 S.E.2d at 889-90; *cf.* G.S. § 62-140 (prohibiting statutory common carriers and other public utilities from maintaining "any

---

[11] Plaintiff notes that *Gray* and *Godwin* involved a warehouseman and a telephone company (Resp. 11 n.14), but both cases applied the law of *passenger* common carriers. *See Godwin*, 48 S.E. at 636 (holding that telephone compan[ies] "can no more refuse to perform impartially the functions that they have assumed to discharge than a railway company, as a common carrier, can rightfully refuse to perform its duty to the public"); *Gray*, 106 S.E. at 661 (applying "the doctrine of the common law in reference to common carriers" such as "a steamboat or stage line").

[12] Plaintiff's reliance on *Am. Orient Express R. Co. v. Surface Transp. Board*, 484 F.3d 554, 557 (D.C. Cir. 2007), proves Uber's point. The court there found the train company was a common carrier under the federal Railroad Retirement Act despite refusing service to children under eight—a bright-line safety restriction, rather than "customer-by-customer decisions about whether it will deal." *Id.* at 557. Likewise, *Arizona Corp. Commission v. Reliable Transp. Co.*, 346 P.2d 1091, 1099 (Ariz. 1959), dealt with a "secret or private intention" to refuse service as a regulatory subterfuge. By contrast, Uber's right of refusal is explicit, public, contractual, and systematically exercised. *See* O'Keefe Decl. ¶¶ 26-27, Supplemental O'Keefe Decl. ¶ 3.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

unreasonable preference or advantage to *any person*" and "*any* unreasonable difference as to rates or services"). The statute requires a policy against discrimination based on a limited set of characteristics, such as location, race, and disability. Nothing in the statute bars Uber from deactivating user accounts for low ratings, rejecting users with high-risk criminal histories, or targeting discounts and promotions at some riders, but not others.

*Uniform Rates*. Plaintiff concedes that, to qualify as a common carrier, Uber must charge a "uniform tariff." Resp. 13-14; *see State ex rel. Utilities Comm'n v. Bird Oil Co.*, 273 S.E.2d 232, 239 (N.C. 1981) ("[c]ommon carriers, on the other hand, *must charge a uniform tariff* for their services"). Yet Plaintiff does not dispute Uber's showing that it individually proposes fares on a ride-by-ride basis. Instead, Plaintiff asks this Court, sitting in diversity, to superimpose a requirement that tariffs not just be "uniform," but that they also be subject to direct negotiation. Under that reimagination of North Carolina law, because "a person cannot open the Uber app . . . and make a counter-offer," Uber's prices must be "uniform" and "fixed." Resp. 14. Of course, individually negotiated rates are not fixed or uniform. *See State ex rel. Utilities Comm'n v. Tar Heel Indus., Inc.*, 334 S.E.2d 396, 397 (N.C. App. 1985). However, that does not suggest that all other rates are. A uniform tariff means "a fixed rate" or a "fixed" and "regular schedule of charges." *Jackson*, 116 S.E.2d at 824-25. Uber's pricing model is the opposite: fares are determined individually for each ride and can fluctuate in real time based on demand. Even identical trips—with the same pickup and same destination—can carry materially different prices depending on timing and market conditions (i.e. supply and demand). Prices can change minute to minute in response to factors such as weather, traffic, or local events. Rates that vary in this manner are, by definition, neither "fixed" nor "uniform" and thus cannot satisfy the uniform-tariff requirement imposed on common carriers. *See Tar Heel Indus., Inc.*, 334 S.E.2d at 397. An entity that is the "sole judge [of] . . . what [its] rates will be" on a trip-by-trip basis is not a common carrier. *GATCO*, 110 S.E.2d at 890-91. Plaintiff's contrary position would collapse the distinction between fixed tariffs and dynamic, demand-based pricing—an expansion of common-carrier doctrine that North Carolina courts have never endorsed.

Plaintiff also argues that "uniform tariff" means only that pricing terms must be "equally

13

available, and on the same terms, to all." Resp. 13 (quoting *Bird Oil Co.*, 273 S.E.2d at 239). Noticeably omitted from her argument is what made the rate in *Bird Oil* "equally available": it was a published, filed, and transparent "dedicated service" discount available to any shipper that met objective criteria. *Id.* at 234-35. Similarly, *State ex rel. Utilities Commission v. Nello L. Teer Co.*, 146 S.E.2d 511 (N.C. 1966) (cited at Resp. 13), did "not require an equality of [railroad] rates" based on mileage where "substantial difference[s] in service"—such as the need to switch railroad lines—"justify" differences in *fixed and published* tariffs. *Id.* at 516-18. Plaintiff's other authorities are the same. *See Jackson*, 116 S.E.2d at 825 (regular charges of "so much per hour" constituted "a fixed schedule of charges"); *Brill v. Indianapolis Life Ins. Co.*, 784 F.2d 1511, 1512 (11th Cir. 1986) (per curiam) (carrier "charges its customers a flat rate per flying hour").

Uber does not use generally available static or fixed rates in North Carolina. O'Keefe Decl. ¶ 35. Instead, its dynamic pricing algorithm uses multiple real-time variables, including real-time feedback from independent drivers who must accept or reject what are effectively "bids" for trips. O'Keefe Decl. ¶¶ 37-38; *see* Dkt. 5475-2 ("Driver Agreement") at -3330 (independent drivers' agreement to a request "create[s] a direct business relationship between" the provider and rider); *cf. GATCO*, 110 S.E.2d at 887 ("bids, when accepted, result in contracts between [carrier] and [customer]"). In other words, not a single ride through the Uber platform is "equally available, and on the same terms, to all," *Bird Oil Co.*, 273 S.E.2d at 239—every ride is priced individually. That is unequivocally the opposite of "uniform" or "fixed." *See Home Ins. Co. v. Riddell*, 252 F.2d 1, 4 (5th Cir. 1958) (holding carrier who "exercise[d] the right to fix specific rates in each individual case basing the charges not on a regular schedule . . . but on contemporary judgment of the moment" a private rather than common carrier).

In any event, Uber's recommended fares remain just that—*recommended*—until a rider and driver both accept them. Plaintiff characterizes this mutual discretion as irrelevant, likening it to a passenger's choice to "board the bus" on their own accord without being forced to board if they find the fare too expensive. Resp. 14-15. This analogy fails. Unlike a bus, which operates on a fixed, pre-published fare identical for every passenger, Uber's pricing is dynamic and individualized. And where a bus rider's only decision is whether to accept a uniform, set tariff

identical to what every other passenger pays, a rider who believes Uber's proposed fare is too steep can wait five minutes and see whether Uber agrees with that judgment and lowers its proposal. Uber proposes, both parties evaluate, and if either party rejects, the ride does not happen. O'Keefe Decl. ¶¶ 37-41. That is not a "fixed rate" available to the public on equal terms. It is an individualized proposal, based on the "contemporary judgment of the moment," *Riddell*, 252 F.2d at 3-4, that must satisfy two sides of a digital market before any transaction occurs. Neither logic nor North Carolina law supports Plaintiff's contention that such bilateral, dynamic proposals are "fixed" or "uniform."

**C.      Even if Uber Were a Common Carrier, It Would Not Be Absolutely Liable for Assaults by Drivers.**

No North Carolina law supports Plaintiff's contention that common-law common carriers are absolutely liable for assaults by independent contractors. Plaintiff does not dispute that Uber is not liable for an independent driver's conduct absent an "exception to [the] general rule" of nonliability for an independent contractor's torts. *See Woodson v. Rowland*, 407 S.E.2d 222, 350 (1991). Plaintiff points to two lines of cases purportedly establishing an exception, but one does not address independent contractors at all, and the other is plainly inapplicable here.

Plaintiff's primary contention is that *Hairston v. Atlantic Greyhound Corp.*, 18 S.E.2d 166 (N.C. 1942), recognizes "a non-delegable duty that arises from a common carrier's duty to protect its passengers." Resp. 16. However, Plaintiff's reliance on *Hairston* is misplaced. The *Hairston* court recognized a duty to protect passengers specifically from assaults by "an *employee* while on duty"—not independent contractors. 18 S.E.2d at 170. Nor did it describe common-carrier duties as "nondelegable." *Id.* Plaintiff's other authorities likewise address only liability for employees or agents without mentioning independent contractors or nondelegability. Resp. at 16-17.[13]

Plaintiff's contention that the distinction between independent contractors and employees

---

[13] *See, e.g.*, *Clark v. Bland*, 106 S.E. 491, 492 (N.C. 1921) (addressing "torts of . . . agents and employees"); *Lanier v. Pullman Co.*, 105 S.E. 21, 24 (N.C. 1920) (describing carriers' duty to "protect[] a passenger from insults or assaults . . . *by their own servants*"); *Williams v. Gill*, 29 S.E. 879, 879 (N.C. 1898) (carrier liable for "employee" assault because "brakeman was engaged in the service of the company" and "where the relation of carrier and passenger exists, the conduct of an *employee of the carrier* . . . subjects the carrier to liability in damages").

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

is one "without a difference" (Resp. 16) is baffling: The nondelegable duty doctrine is an exception to the general rule "distinguish[ing]" the "torts of an independent contractor" from those of "a servant." *Hendrick v. Leslie Fay, Inc.*, 159 S.E.2d 362, 365 (N.C. 1968). Cases focused exclusively on *employees* say nothing about that rule, much less create an exception to it. Plaintiff's authority confirms that a carrier's vicarious liability does *not* extend to independent-contractor acts because "a contractor is not a servant proper." *Daniel v. Petersburg R.R. Co.*, 23 S.E. 327, 328 (N.C. 1895). The concurring opinion cited by Plaintiff (Resp. 16) likewise contrasts a carrier's "absolute[]" duty for the acts of "his own *servants*" with its "qualified" liability for the acts of "*all* other persons." *Daniel*, 23 S.E. at 328 (Avery, J., concurring).

Plaintiff alternatively invokes cases holding that a common carrier cannot delegate its duties under a state-conferred franchise—which Uber undisputedly does not possess. Plaintiff dismisses the franchise requirement as a few "stray mentions" (Resp. 18), but her own cases expressly premise nondelegability on a franchise: "The high degree of care, which a carrier *operating under a public franchise* owes to its passengers, is a nondelegable duty." *Mann*, 198 S.E.2d at 565. North Carolina law could not be clearer: it is "by virtue of its franchise" that a statutory common carrier cannot "delegat[e] its [franchise] privilege to others." *White v. Norfolk & S.R.R. Co.*, 20 S.E. 191, 191 (N.C. 1894). Accordingly, a common carrier exempt from the common-carrier statute's franchise requirement is "not liable for an independent contractor's negligence." *Gordon*, 493 S.E.2d at 62-63.[14]

Plaintiff also offers no cogent response to the TNC statute's mandate that Uber delegate transportation responsibilities to independent contractors. *See* Mot. at 27-28 (citing *Osborne v. Yadkin Valley Econ. Dev. Dist.*, Inc., 865 S.E.2d 307, 319 (N.C. App. 2021)). Plaintiff argues *Osborne* is irrelevant because it did not address the common-carrier claim in that case (Resp. 19), but that does not change the Court's holding that a school's statutory authority to "contract . . . for the transportation" of students "expressly indicate[d] . . . a delegable duty." *Osborne*, 865 S.E.2d

---

[14] North Carolina thus mirrors the common-law rule that a party is liable for an independent contractor's conduct when "carrying on an activity which can be lawfully carried on only under a franchise granted by public authority." Restatement (Second) of Torts § 428.

16

at 319-20. That holding likewise forecloses Plaintiff's contention that the TNC statute permits Uber to delegate "the task" of transportation but not "the liability" (Resp. 20)—under *Osborne*, Uber's statutory mandate establishes a "delegable *duty*," *id.*, not a delegable *task*.

Because Plaintiff cannot cite an applicable nondelegable duty, she asks the Court to expand the stated scope of *Hairston* and *Mann* to advance "the fundamental principle behind a non-delegable duty." Resp. 16. But that request presumes a rule no North Carolina court has ever even suggested—that the duties of a common carrier with no franchise are nondelegable. Rather than rewriting decades-old state precedents to mint novel and draconian state-law liabilities, the Court should apply the law as it stands and enter summary judgment for Uber.

What's more, even assuming that Uber qualifies as a common carrier subject to a heightened duty of care, that duty does not make Uber an absolute insurer against every conceivable harm. *Hairston* itself limited carrier liability for assaults by "others"—i.e., nonemployees—to injuries that "could have [been] prevented in the reasonable and proper performance of [the carrier's] duty." 18 S.E.2d at 170. Here, the record establishes that this particular assault was not foreseeable through the exercise of any reasonable degree of care: Checkr's background check revealed no disqualifying criminal history; Uber received no complaints about Richardson related to sexual misconduct before the alleged incident; and Richardson maintained a high star rating from riders. *See* Mot. 8. There was, in short, nothing in this driver's record that would have put any carrier on notice that he posed a risk of sexual misconduct, and no "reasonable and proper performance" of Uber's duty could have prevented an assault by a driver with an unblemished record.

### D.    Plaintiff's Lack of Expert Testimony Precludes the Only Damages Theory She Disclosed.

Plaintiff's Response advances a new damages theory she never disclosed in discovery. The Court should reject this untimely pivot, but even if it is considered, Plaintiff still lacks competent evidence to prove her damages.

In response to interrogatories asking Plaintiff to "identify every symptom" or "condition"

she attributed to the incident, Plaintiff identified only two: "PTSD and anxiety symptoms." Dkt. 5475-9 (Ex. 8) at 8-9. Uber took discovery, retained experts, and prepared its defense accordingly. Only after her psychological expert testified she could not tie *any* symptoms to the incident, Plaintiff withdrew the expert for "trial strategy" reasons. Resp. at 20 n.23. Now, Plaintiff abandons her disclosed theory and asserts for the first time unspecified "mental suffering during and after the incident." *Id.* at 21. This end-run on the discovery process deprives Uber of any meaningful opportunity to test that nebulous claim and warrants summary judgment for Uber, not a do-over at trial. *See Duke Energy Carolinas, LLC v. NTE Carolinas II*, LLC, 2022 WL 884275, at *6 (W.D.N.C. Mar. 24, 2022).

Regardless, Plaintiff's reframing does not obviate the need for expert testimony. The question the jury must decide remains the same: How the alleged incident psychologically impacted Plaintiff. Dropping the labels "PTSD" and "anxiety" does not change the substance of that jury's inquiry: what mental anguish injuries, if any, are attributable to the alleged incident rather than Plaintiff's preexisting conditions and prior traumas. *See Potts v. Howser*, 161 S.E.2d 737, 741-42 (N.C. 1968). Regardless how Plaintiff's damages are labeled, that complex causation question requires expert testimony. *See Taylor v. Shreeji Swami, Inc.*, 820 F. App'x 174, 177 (4th Cir. 2020); *Smith v. Herbin*, 785 S.E.2d 743, 744-45 (N.C. App. 2016).

Plaintiff's only cited authority is distinguishable. The plaintiff in *G.D. ex rel. S.G. v. Kannapolis City Schs. Bd. of Educ.*, 2024 WL 2832779 (M.D.N.C. June 4, 2024), offered "specific examples" of behavioral changes that began after the incident. *Id.* at *10. Here, Plaintiff disclosed only "PTSD and anxiety symptoms" during discovery, testified to symptoms mapping to those preexisting diagnoses, which she attributed solely to "PTSD" from the alleged incident. *See, e.g.*, Ex. 7 at 116:16-25, 117:18-23, 146:2-8, 147:4-9; Ex. 8 at 8; Mot. at 9. Whether such symptoms stem from the alleged incident or Plaintiff's preexisting conditions is not a question lay testimony can answer. *See Taylor*, 820 Fed. App'x at 178.

## III.    CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for Uber. In the alternative, Uber is entitled to summary judgment on Plaintiff's claim for compensatory damages.

18

Dated: March 31, 2026

Respectfully submitted,

*/s/* Laura Vartain Horn
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700 San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
sstrong@omm.com
jschneller@omm.com

Bradley R. Kutrow
**MCGUIRE WOODS LLP**
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049
bkutrow@mcguirewoods.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER,
LLC, and RASIER-CA, LLC

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB