# EXHIBIT 1

[Submitting counsel below]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S STATEMENT OF RECENT DECISION** |
| This Document Relates to: | |
| *WHB 823 v. Uber Techs., Inc., et al.*, No. 3:24-cv-04900 | Judge:        Hon. Charles R. Breyer<br>Courtroom:   6 – 17th Floor |
| | Date Filed: April 6, 2026<br>Trial Date: April 14, 2026 |

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NORTH CAROLINA

## CHARLOTTE DIVISION

| | |
|---|---|
| WHB 823, | CASE NO. 3:25-cv-00737-CRB |
| Plaintiff, | |
| v. | Judge:        Hon. Charles R. Breyer |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants | |

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
laura.vartain@kirkland.com
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
alli.brown@kirkland.com
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

JESSICA DAVIDSON (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Bradley R. Kutrow
**MCGUIRE WOODS LLP**
bkutrow@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**STATEMENT OF RECENT DECISION**

Pursuant to N.D. Cal. Civil Local Rule 7-3(d)(2), Defendants Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this Statement of Recent Decision: The court's Order Granting Uber's Motion to Dismiss the Third Amended Complaint in *E.B. v. Uber Technologies, Inc.*, on the ground that Uber is not a common carrier as a matter of North Carolina law. No. 2024-CP-46-2996 (Apr. 3, 2026 S.C. Court of Common Pleas). A copy of the decision is attached hereto as **Exhibit A.** This Statement of Recent Decision is being filed in support of Uber's pending Motion for Summary Judgment (Dkt. 5475) and in opposition to Plaintiff's pending Motion for Summary Judgment (Dkt. 5468).

Dated: April 6, 2026                                    **O'MELVENY & MYERS LLP**


By: /s/ *Jonathan Schneller*

        **O'MELVENY & MYERS LLP**
        JONATHAN SCHNELLER
        SABRINA H. STRONG

        **KIRKLAND & ELLIS LLP**
        LAURA VARTAIN HORN
        ALLISON M. BROWN
        JESSICA DAVIDSON

        **MCGUIRE WOODS LLP**
        BRADLEY R. KUTROW

        *Counsel for Defendants*

# EXHIBIT A

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF YORK | C.A. NO.: 2024-CP-46-02996 |
| E.B., a minor, E.R., a minor, S.S., individually and on behalf of E.B., C.B., individually and on behalf of E.B., and K.M., individually and on behalf of E.R., | |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| v. | |
| Uber Technologies, Inc., Rasier LLC, Andrew Ross Clark, an individual, Elizabeth Caracas, an individual, and DOES 3-25, | |
| Defendants. | |

This matter comes before the Court on a motion to dismiss, pursuant to Rule 12(b)(6), by defendants Uber Technologies, Inc. and Rasier, LLC (collectively "Uber"), joined by Defendants Andrew Clark and Elizabeth Caracas. Plaintiffs' Third Amended Complaint realleges the same five claims against Uber that this Court previously dismissed relating to a sexual assault committed by Jarrod Williams in North Carolina. *See* Order Granting Motion to Dismiss (Jun. 13, 2025) ("Order"). Plaintiffs' only new theory of liability in their Third Amended Complaint is based on allegations that Uber voluntarily undertook a duty to protect E.R. and E.B. against Williams' sexual assault. The parties have once again fully briefed the motion. After considering the arguments presented, the record, and for the reasons given in this Court's previous order and below, the motion to dismiss is granted. Plaintiffs' Third Amended Complaint is dismissed WITH PREJUDICE.

1

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

### FACTS

During the events at issue, Plaintiffs E.B. and E.R. were minors residing in South Carolina. Order at 1; TAC ¶¶ 1–2. Jarrod Williams contacted E.B. through Facebook. Order at 1; TAC ¶ 56. Williams was eighteen at the time and a North Carolina resident. Order at 1; TAC ¶ 54. Ultimately, Williams asked E.B. if she and E.R. were willing to meet him for intercourse. Order at 1; TAC ¶ 58. E.B. responded that they were. *Id.*

Williams gave E.B. instructions for how to sneak away and meet him in North Carolina. Order at 2; TAC ¶ 59. Williams would request a ride for them using the Uber App, and the girls would meet the driver at "an address down the street from" E.R.'s home. *Id.* Williams instructed E.B. that they should "tell the Uber driver that he was their dad." *Id.* The girls left the house "in the early afternoon," saying that "they were going to the park." Order at 2; TAC ¶ 60. E.R. "left her phone at home per Williams' instruction," so that E.R.'s mother could not "track her location." *Id.* They walked down the street to the car that was waiting and got in. Order at 2; TAC ¶¶ 60–61.

The driver, Andrew Clark, did not ask the girls their age but did ask whether "Fayvion" (the name listed on the profile requesting the ride) was their father. Order at 2; TAC Compl. ¶¶ 9, 62. E.B. nodded yes in response. Order at 2; TAC Compl. ¶ 62. Clark did not communicate with E.R. or E.B. during the uneventful ride and drove them to the pre-determined drop-off location in North Carolina. Order at 2; TAC ¶¶ 63–64.

When Clark stopped at the designated drop-off location in North Carolina, E.R. and E.B. exited the car, and Clark drove off. Order at 2; TAC ¶ 66. E.R. and E.B. then walked down the block to where Williams "was waving them over." Order at 2; TAC ¶¶ 66–67. E.R. and E.B. entered Williams's home. Order at 2; TAC ¶ 68. Williams asked E.R. and E.B. if they wanted to

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

have intercourse. Order at 2; TAC ¶ 70. E.R. declined. *Id.* But E.B. "followed Williams into his room," and the two had intercourse, which Williams video recorded. Order at 2; TAC ¶ 72.

Afterward, William requested another ride home for E.R. and E.B. using the Uber App. Order at 2; TAC ¶ 73. Like the original ride request, he chose a pick-up location down the street from his home in North Carolina. *Id.* E.R. and E.B. left Williams's home and "walk[ed] down the street to meet the" second driver, Elizabeth Caracas, at the designated pick-up location. Order at 2–3; TAC ¶¶ 11, 74. Caracas drove E.R. and E.B. back to South Carolina, dropping them off at a park down the street from E.R.'s home. *Id.*

The next day, E.R. received a Facebook message from Williams with that video. Order at 3; TAC ¶ 80. E.R. shared the video with her mother, who then shared the video with E.B.'s parents. *Id.* The parents "reported the incident to law enforcement in both South Carolina and North Carolina." Order at 3; TAC ¶ 82. Williams was taken into custody in North Carolina and charged with several offenses. *Id.* He pleaded guilty to statutory rape of a minor under 15 years of age and sexual exploitation of a minor in the second degree. *Id.*

### PROCEDURAL HISTORY

After Williams's conviction, Plaintiffs E.R. and E.B.—along with their parents (Plaintiffs K.M., S.S., and C.B.)—filed this lawsuit. Order at 3. The original complaint brought six claims against Uber and the drivers, the latter as Doe defendants. *See* Orig. Compl. ¶¶ 7-13. Uber removed the case to federal court in August 2024 based on diversity jurisdiction. Order at 3. In federal court, Uber moved to dismiss the claims against it for failure to state a claim. Order at 3.

In December 2024, Plaintiffs filed the First Amended Complaint, which pleaded five claims and replaced the two Doe drivers with Andrew Ross Clark and Elizabeth Caracas. Order at 3-4. Because Mr. Clark is a South Carolina resident, his addition to the case destroyed complete

3

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

diversity and deprived the federal court of jurisdiction. Order at 3. The federal district court remanded the case to this Court. Order at 3. Shortly after remand, Uber renewed its motion to dismiss in this Court, which this Court granted. Order at 3. The First Amended Complaint was dismissed without prejudice. Order at 1.

In doing so, this Court concluded that:

1. North Carolina law applies to Plaintiffs' common-law, non-statutory claims because the alleged injuries occurred in North Carolina, Order at 4-5;

2. Plaintiffs' negligence and negligent supervision claims fail for two reasons: (a) even if Uber is a common carrier, it had no duty to protect Plaintiffs from Williams's criminal conduct or from events that took place after they were safely transported, Order at 5–8; and (b) Uber is not a common carrier under North Carolina law, Order at 8;

3. Plaintiffs' intentional infliction of emotional distress claim fails because Williams engaged in the intentional wrongful conduct—not Uber or the drivers, Order at 9;

4. North Carolina and South Carolina do not recognize a cause of action for tortious interference with parental rights, Order at 11-12; and

5. Plaintiffs' statutory trafficking claim fails because Plaintiffs have not alleged that Uber or the drivers had actual knowledge that E.R. and E.B. were being trafficked, Order at 9-11.

Despite these "legal deficiencies," this Court ultimately concluded that dismissal should be without prejudice to give Plaintiffs "an opportunity" to attempt to rectify those deficiencies through amendment. Order at 12 (quoting *Skydive Myrtle Beach, Inc. v. Horry Cnty.*, 426 S.C. 175, 189, 826 S.E.2d 585, 592 (2019)).

Plaintiffs timely filed a Second Amended Complaint. Plaintiffs' Second Amended Complaint was substantively identical to the First Amended Complaint that this Court already

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

found legally deficient and dismissed. Defendants moved to dismiss Plaintiffs' Second Amended Complaint with prejudice. Plaintiffs moved for leave to amend and file their Third Amended Complaint, which the Court granted. The Court denied the motions to dismiss as moot.

On August 22, 2025, Plaintiffs filed a Third Amended Complaint. The primary substantive change in the Third Amended Complaint is the addition of a voluntary-undertaking theory to Count I's negligence claim. TAC ¶¶ 115, 118, 120. Uber again moved to dismiss, joined by Defendants Clark and Caracas. The Court now grants the motion with prejudice.

## LAW AND ANALYSIS

Under Rule 12(b)(6), the Court must dismiss a complaint if it fails to state facts sufficient to constitute a cause of action. "Generally, in considering a 12(b)(6) motion, the trial court must base its ruling solely upon the allegations set forth on the face of the complaint." *Doe v. Marion*, 361 S.C. 463, 469, 605 S.E.2d 556, 559 (Ct. App. 2004), *aff'd*, 373 S.C. 390, 645 S.E.2d 245 (2007).

## I.     Plaintiffs' realleged claims fail for the reasons the Court has previously given.

With the exception of the voluntary undertaking theory addressed below, Plaintiffs reallege the same claims that this Court has already dismissed. *Compare* Order, *with* TAC. The minor changes to their factual allegations do not change this Court's legal analysis. The reasoning set forth in this Court's previous order—and summarized above—is unchanged. *See* Order at 4-12.

Plaintiffs argue that the Court should reconsider its conclusion that Uber is not a common carrier under North Carolina law in light of a recent federal multi-district litigation ("MDL") decision. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2025 WL 1892390, (N.D. Cal. July 8, 2025). The MDL court assumed without any analysis that Uber was a common carrier under North Carolina law. This Court is not persuaded for multiple reasons.

5

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

First, the court did not even consider the state's Transportation Network Company statute, under which the North Carolina legislature has classified Uber as a "transportation network company" instead of as a common carrier. Order 8. The legislature's choice not to regulate Uber under the state's common carrier statute is significant because North Carolina courts apply the virtually identical statutory and common-law tests for common carrier status interchangeably. *See, e.g., Beavers v. Fed. Ins. Co.*, 437 S.E.2d 881, 883 (N.C. App. 1994) (applying statute and common law together). Further, the TNC statute specifies that Uber operates by connecting users seeking transportation with *independent* drivers willing to carry them. That is not how common carriers operate. N.C. Gen. Stat. §§ 20-280.1(6), 20-280.8.

Second, under the TNC statute, Uber does not "carry" any passengers. Uber "uses an online-enabled application" to "connect passengers with TNC drivers who" themselves "provide" the "transportation services." N.C. Gen. Stat. §§ 20-280.1(6), 20-280.1(5) (specifying that "transportation service[s]" are "provided by a TNC driver"). And as Plaintiffs alleged, it is those "presumpt[ively]" independent-contractor TNC drivers, N.C. Gen. Stat. § 20-280.8, rather than Uber, are the "owners" of the vehicles used to provide passenger transportation, TAC ¶ 20. Because Uber does not carry any passengers, it cannot, as a matter of law, be a common carrier in North Carolina. *See Patterson v. Duke Power Co.*, 36 S.E.2d 713, 714-16 (N.C. 1946) ("The [common] carrier has … the selection, control, management and operation of the whole instrumentalities of carriage and at least a limited control over and direction of the passenger.").

At bottom, Uber looks nothing like a common carrier under North Carolina law. And the Court is aware of no North Carolina precedent finding that a business comparable to Uber is a common carrier.

6

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

Finally, even if Uber were a common carrier under North Carolina law, the alleged harm here—unlike the harm alleged in the MDL—occurred after the conclusion of an uneventful ride. For the reasons set forth in the earlier order, this claim still fails. Order at 7-8.

## II.    Plaintiffs' new voluntary undertaking theory fails.

Plaintiffs amend their negligence claim in Count I to add a new theory of liability: Uber voluntarily undertook to protect all persons who directly or indirectly used the platform from all harm arising out of the use of the platform. TAC ¶¶ 115, 118, 120. Uber, argues that this theory fails because (1) North Carolina does not recognize the voluntary-undertaking doctrine, and (2) Plaintiffs have failed to plead facts sufficient to establish the required elements. Uber is correct as to both.

### A.    The North Carolina Supreme Court has not and would not adopt the voluntary-undertaking doctrine.

The North Carolina Supreme Court has never adopted the sections of the Second Restatement addressing the voluntary-undertaking doctrine.[1] *See Dawkins ex rel. Est. of Dawkins v. United States*, 226 F. Supp. 2d 750, 755–56 (M.D.N.C. 2002) ("The North Carolina Supreme Court has not recognized a tort law duty based upon Section 324A of the Restatement of Torts."). And "[i]t is unlikely that the North Carolina Supreme Court would impose on a defendant any tort duty based on the Second Restatement of Torts." *Id.* at 756; *Cassell v. Collins*, 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996) ("We reemphasize yet again that the Restatement of Torts is not North Carolina law.")), *abrogated on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998). Additionally, the North Carolina Court of Appeals has refused to impose a similar

---

[1] This doctrine—sometimes called "negligent undertaking," "assumed duty," or "good Samaritan" doctrine—is outlined in sections 323 and 324A of the Second Restatement of Torts. The two sections are materially identical except that section 323 addresses a direct undertaking whereas section 324A addresses an undertaking to benefit a third party.

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

voluntary duty of care based on the self-imposed guidelines and training Plaintiffs argue for here because "[t]o rule otherwise would serve only to discourage, indeed penalize, voluntary assumption or self-imposition of safety standards by commercial enterprises, thereby increasing the risk of danger to their customers and the public." *Hall v. Toreros, II, Inc.*, 176 N.C. App. 309, 317, 626 S.E.2d 861, 867 (2006).

This Court is not persuaded North Carolina does or would recognize the voluntary-undertaking doctrine.

> **B.    Even if North Carolina would recognize the voluntary-undertaking doctrine, Plaintiffs have failed to plead the elements that would be required.**

To state a claim under the voluntary-undertaking doctrine, a plaintiff must satisfy two general elements. First, the plaintiff must demonstrate that the defendant voluntarily undertook "to render services to another which he should recognize as necessary for the protection of the other's person or things." Restatement (Second) § 323. Second, the plaintiff must establish that either: (a) the defendant's "failure to exercise [reasonable] care increase[d] the risk of such harm," or (b) "the harm [wa]s suffered because of the [plaintiff's] reliance upon the undertaking." *Id.* Plaintiffs have not alleged facts establishing any of the required elements. Nor could they through further amendment, because the affirmative allegations in the Third Amended Complaint foreclose any viable claim under the voluntary undertaking doctrine.

> **1.    Plaintiffs fail to allege facts establishing that Uber undertook a duty to protect E.R. and E.B. from sexual misconduct arising from indirect use of its platform.**

The first element of a voluntary-undertaking claim requires factual allegations establishing that the defendant voluntarily undertook "to render services to another which [it] should recognize as necessary for the protection of the other's person or things." Restatement (Second) § 323. A defendant voluntarily assumes such a duty either through "an affirmative course of action" or via

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

"a promise to render a service[.]" *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 660 (Tex. 2023). Plaintiffs have not established this element in at least four ways.

**First.** The voluntary-undertaking doctrine applies only if the defendant "who undertakes … to render services to another which he should recognize as necessary for the protection of the other's person or things." Restatement (Second) § 323. Here, that would mean establishing that Uber "agreed or contracted … to perform services for" Plaintiffs. *HNMC, Inc.* v. *Chan*, 683 S.W.3d 373, 382–83 (Tex. 2024) (cleaned up). Plaintiffs allege the opposite. They allege that Uber had "a minimum age policy, stating that children under the age of eighteen (18) are not permitted to ride in an Uber unless they are 'accompanied by someone 18 years of age or older.'" TAC ¶ 37. So Uber had a policy refusing to render services to unaccompanied minors like E.B. and E.R.

Precedent confirms that a defendant's policy prohibiting a plaintiff from using the defendants' facilities or services is not an undertaking of services to that plaintiff. In *Thorson* v. *Mandell*, 402 Mass. 744, 525 N.E.2d 375 (1988), the plaintiff sued the YWCA after she was paralyzed while performing a backflip on the YWCA's premises. *See id.* at 744, 525 N.E.2d at 376. The plaintiff brought a negligent-undertaking claim against the YWCA, alleging that it "violated a duty it owed to [the plaintiff] by negligently failing to enforce its policy against gymnastics in the auditorium." *Id.* at 748, 525 N.E.2d at 378. The Supreme Judicial Court of Massachusetts reversed the jury's verdict against the YWCA. *Id.* at 744, 525 N.E.2d at 376. The high court rejected the negligent-undertaking theory because "[t]he creation of a policy against gymnastics in the auditorium was not an undertaking to render services for the protection of its users." *Id.* at 748, 525 N.E.2d at 378. The same reasoning applies here. Just as the YWCA "did not allow gymnastics to be performed in the auditorium," *id.* at 746, 525 N.E.2d at 377, Uber did "not allow [unaccompanied minors] to ride in an Uber," TAC ¶ 37. So Uber did not "undertake[]

9

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

to render services" to E.B. and E.R. given that they were unaccompanied minors. *See* Restatement (Second) § 323.

**Second.** "[L]iability for negligent undertaking cannot be predicated on an omission"; "the complained-of undertaking" must be "an affirmative course of action." *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d at 660.8 The undertaking must be "sins of commission rather than omission." *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982).

Plaintiffs allege inaction: "Uber has declined to require age or parental consent verification from passengers or monitor compliance for drivers who regularly fail to enforce community guidelines against minor trips." TAC at 4. And "Uber chose not to enforce protective measure." *Id.*; *see also id.* ¶¶ 43, 93. These are all allegations that Uber "did not do more," which is not a viable basis for recovery under the negligent undertaking theory. *Jackson* v. *Airbnb, Inc.*, 639 F. Supp. 3d 994, 1008–09 (C.D. Cal. 2022).

**Third.** Plaintiffs improperly attempt to impose a duty on Uber that is far "beyond those that it voluntarily undertook." *Hammond* v. *AlliedBarton Sec. Servs., LLC*, 3:10-CV-02441-JFA, 2011 WL 5827604, at *6 (D.S.C. Nov. 16, 2011), *aff'd*, 471 F. App'x 216 (4th Cir. 2012). The voluntary-undertaking doctrine cannot be used to "impos[e] a broad duty, beyond the specific task that the defendant had voluntarily assumed[.]" *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 324, 764 N.E.2d 814, 822 (2002). Otherwise, the doctrine "would effectively 'penalize' the defendant for having taken the precaution[.]" *Id.* And "the natural consequence will be to discourage people from assisting others in the first instance." *Fort Bend Cnty. Drainage Dist.* v. *Sbrusch*, 818 S.W.2d 392, 397 n.4 (Tex. 1991). Plaintiffs "must first show" that Uber "undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff." *Justus*, 725 P.2d at 771. Plaintiffs fail to do so.

10

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

Plaintiffs assert a broad duty that is inconsistent with Uber's actions. For example, Plaintiffs allege that "Uber voluntarily assumed responsibility for the safety of its passengers" based on "its platform design … and operational control." TAC ¶ 51. And, according to Plaintiffs, this duty extended to all "users" and to any "foreseeable harm arising from use of the platform." TAC ¶ 26. But the alleged "design" and "control," TAC ¶ 51, were in no way "reasonably calculate[d] to prevent" third-party criminal conduct that takes place after the passengers had safely disembarked. *Justus*, 725 P.2d at 771.

Plaintiffs also contend that, because Uber took certain measures to restrict unaccompanied minors' access to the platform, that means Uber voluntarily assumed a duty to protect against all the "foreseeable dangers associated with [its] transportation services." TAC ¶ 115; *see id.* ¶¶ 26, 37. But taking some steps to prevent unaccompanied minors from using the platform does not mean that Uber undertook a duty to protect every minor who bypassed its age-limit restriction from third-party criminal conduct occurring after their ride ended. *Delgado* v. *Trax Bar & Grill*, 36 Cal. 4th 224, 249, 113 P.3d 1159, 1175 (2005) (when "a supermarket … chooses to have a security program that includes provision of a roving security guard does not signify that the proprietor has assumed a duty to protect invitees from third party violence"); *see also Barenborg* v. *Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 84, 244 Cal. Rptr. 3d 680, 693 (2019).

Additionally, Plaintiffs undercut their voluntary-undertaking claim by including allegations describing the "Uber Teen" program. TAC ¶ 56. Plaintiffs acknowledge that the program is a service specifically designed for rides by unaccompanied "minors between the ages of thirteen (13) and seventeen (17)." *Id.* But "the Minor Plaintiffs in this case were not using Uber Teen." *Id.* The existence of that unused program cannot "supports the conclusion that Uber voluntarily undertook a duty to implement and enforce safeguards sufficient to protect minors from

11

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

foreseeable harm." *Contra id.* The program is limited to select cities (which do not include the pick-up and drop-off locations here), requires a special account (which neither Williams nor Plaintiffs had), and has enhanced safety features (which were not available during the rides at issue). TAC ¶ 86 nn.27-28. Those distinctions indicate that the "specific task" Uber undertook was to provide additional features to minor passengers using the Uber Teen program, not to assume "a broad duty" to not only prevent all unaccompanied minors from accessing the platform, but also protect them from any potential third-party crimes that might occur after their unauthorized rides concluded. *Cottam*, 436 Mass. at 324, 764 N.E.2d at 822.

**Fourth.** Plaintiffs also base their voluntary-undertaking claim on the assertion that Uber "affirmatively promis[ed] safety through widespread representations to the public and otherwise touting its commitment to safety." TAC ¶ 115. This undertaking-by-promise theory lacks support in the case law.

Plaintiffs must "identify a[] specific advertisement" to support their undertaking argument, *Freyer* v. *Lyft, Inc.*, 639 S.W.3d 772, 790 (Tex. Ct. App. 2021), but they do not identify *any* specific "representations" by Uber, much less regarding "a promise to render a service" that protects minors from third-party criminal acts like the one here, *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d at 660.

But even if Plaintiffs had identified some marketing material, making general claims about Uber's commitment to safety, general marketing statements are not enough. In fact, the California Court of Appeal unanimously rejected an indistinguishable claim in *Jane Doe No. 1* v. *Uber Technologies, Inc.*, 79 Cal. App. 5th 410, 423, 294 Cal. Rptr. 3d 664, 675 (2022). The plaintiffs there alleged that "a statement on the Uber website"—which advertised "that the Uber app offers 'safe pickups ... you stay safe and comfortable wherever you are until your driver arrives'"—was

12

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

a basis to treat Uber as having "undertake[n] a legal duty to protect from third party misconduct." *Id.* (cleaned up). The court reasoned that the marketing statement was "not sufficiently definite or explicit to constitute a 'specific promise' that the Uber entities would undertake a legal duty to protect from third party misconduct." *Id.*[2] That same reasoning applies here.

Additionally, Plaintiffs allege that Uber "*abandon[ed]* its duty to protect minor (and other) riders"—*before* Williams ever ordered a ride—by not providing "guidance, more detailed guidelines, and enforcement mechanisms—such as compulsory dashboard cameras and mandated training." TAC ¶ 43; *see also* TAC ¶¶ 92–94. The Restatement specifies that, even if a defendant has made a "promise" to provide protective services, the defendant "may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him." Restatement Second § 323 cmt. c. So even if Uber's marketing materials could constitute a "promise" to Plaintiffs, Uber was "not required to continue [the protective services] indefinitely, or … do[] everything in [its] power to aid and protect" minors like E.B. and E.R. *Id.*

### 2. Plaintiffs fail to allege facts establishing the increased-risk-of-harm or detrimental-reliance elements.

**Increased risk**. The Restatement specifies that the increased-risk-of-harm prong applies where "the actor has created a[] new risk or increased an existing one." Restatement (Second) § 324A cmt. e. A duty is imposed only if "the risk was increased over what it would have been

---

[2] Other courts have similarly held that marketing statements and general aspirational commitments to safety are not a legitimate basis to declare an "undertaking" that triggers an affirmative duty. *See, e.g.*, *Texas* v. *Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973 (E.D. Tex. 1997) ("Texas courts … have not extended" the negligent-undertaking doctrine "to create a duty based upon corporate statements or advertising"); *Evans* v. *Lorillard Tobacco Co.*, 465 Mass. 411, 447–48, 990 N.E.2d 997, 1026–27 (2013) ("Converting a company's marketing into a special undertaking" would mean that countless companies who advertise their safety efforts would frequently be subjected to duties that are "indefinite" in scope "and potentially permanent in duration." (cleaned up)).

13

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

had the defendant not engaged in the undertaking at all." *Turner v. United States*, 736 F.3d 274, 281 (4th Cir. 2013); *Myers v. United States*, 17 F.3d 890, 903 (6th Cir. 1994). An overwhelming "majority of jurisdictions" agree. *Butler v. Advanced Drainage Sys., Inc.*, 2005 WI App 108, ¶ 27 & n.11, 282 Wis. 2d 776, 796 & n.11, 698 N.W.2d 117, 126 & n.11 (collecting cases), *aff'd on other grounds*, 2006 WI 102, 294 Wis. 2d 397, 717 N.W.2d 760.

Plaintiffs have not alleged any undertaking that created or increased the risk that E.R. and E.B. would meet Williams or have intercourse with him. E.R. and E.B. met Williams and agreed to a "3 sum" before they made any plans to use Uber. TAC ¶¶ 58-59. They also intentionally circumvented all of the controls and safeguards Uber implemented to protect minors by: having Williams order the ride; having Williams inform the driver, Mr. Clark, that he is E.R.'s and E.B.'s father; and having E.R. and E.B. represent to Mr. Clark that Williams was their father. TAC ¶¶ 59–62. Uber's purported undertaking did not create or increase the risk of harm to Plaintiffs when Plaintiffs were actively working to undermine and circumvent the protections Uber had in place.

**Detrimental reliance**. The detrimental-reliance element is met by establishing that the plaintiff's "reliance" on the undertaking "induced him to forgo other remedies or precautions against such a risk." Restatement (Second) 324A cmt. e. The Third Amended Complaint does not allege that Uber's supposed undertaking "induced [Plaintiffs] to forgo other remedies or precautions" against the "risk" of a third-party criminal act like the one Williams committed. *Id.* The Third Amended Complaint does not allege Plaintiffs' reliance on Uber's supposed "undertaking." *See* TAC ¶¶ 20–112.

Plaintiffs' assertions actually cut the other way. E.B. and E.R. were not relying on Uber's safety efforts; they were actively trying to bypass them. They took multiple actions to intentionally mislead the drivers and thereby avoid the drivers refusing to accept them as passengers. TAC ¶¶

14

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996

59, 62. E.B.'s and E.R.'s parents also cannot claim reliance because they were unaware of the alleged undertaking at the time the alleged injury occurred. *See, e.g.*, *Fried* v. *Archer*, 139 Md. App. 229, 267, 775 A.2d 430, 452 (2001), *aff'd sub nom. Muthukumarana* v. *Montgomery County*, 370 Md. 447, 805 A.2d 372 (2002); *City of Haltom City* v. *Aurell*, 380 S.W.3d 839, 858 (Tex. Ct. App. 2012), *disapproved of on other grounds by Town of Shady Shores* v. *Swanson*, 544 S.W.3d 426 (Tex. Ct. App. 2018). The parents were completely unaware, on the day of the incident, that E.R. and E.B. were taking rides ordered by Williams. TAC ¶¶ 60, 74. E.R. and E.B. intentionally misled E.R.'s mother to think that they were going to the park to play. TAC ¶ 60. And E.R. also left her phone at home so that her mother could not track her location and realize they were in a vehicle. (*Id.*) So the Third Amended Complaint's allegations "negate[] the possibility" of reliance by establishing that the parents "did not even know" that their daughters were taking rides ordered on the Uber App. *Aurell*, 380 S.W.3d at 858.

### CONCLUSION

Plaintiffs have failed to state a claim for relief against Defendants. The motion to dismiss Plaintiff's Third Amended Complaint is therefore granted. Because this Court has already previously provided Plaintiffs "an opportunity to amend a complaint dismissed under Rule 12(b)(6)," the Court dismisses the Third Amended Complaint with prejudice. *Skydive Myrtle Beach, Inc. v. Horry Cnty.*, 426 S.C. 175, 189 (2019).

THE MOTION TO DISMISS IS GRANTED WITH PREJUDICE.

**IT IS SO ORDERED.**

_____
Chief Administrative Judge, 16th Judicial Circuit

15

ELECTRONICALLY FILED - 2026 Apr 03 3:23 PM - YORK - COMMON PLEAS - CASE#2024CP4602996



York Common Pleas

**Case Caption:**      E  B , plaintiff, et al VS   Uber Technologies, Inc. , defendant, et al

**Case Number:**      2024CP4602996

**Type:**      Order/Dismissal

So Ordered

/s William A. McKinnon, #2761, Circuit Judge

Electronically signed on 2026-04-03 11:13:32      page 16 of 16