# EXHIBIT 2

[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL BRIEF ADDRESSING QUESTIONS RAISED BY THE COURT AT FINAL PRETRIAL CONFERENCE** |
| This Document Relates to: | |
| *WHB 832 v. Uber Techs., Inc., et al.*, No. 3:24-cv-04900 | Judge:    Hon. Charles R. Breyer<br>Courtroom:    6 – 17th Floor |
| | Date Filed: April 6, 2026<br>Trial Date: April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 832,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants | CASE NO. 3:25-cv-00737-CRB<br><br>Judge:    Hon. Charles R. Breyer |

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
laura.vartain@kirkland.com
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
alli.brown@kirkland.com
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

JESSICA DAVIDSON (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Bradley R. Kutrow
**MCGUIRE WOODS LLP**
bkutrow@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## SUPPLEMENTAL BRIEF ADDRESSING QUESTIONS RAISED BY THE COURT AT FINAL PRETRIAL CONFERENCE

During argument at the Final Pretrial Conference on the parties' cross-motions for summary judgment on April 2, 2026, the Court asked Uber's counsel whether Uber assumes control over transportation (and thus becomes a common carrier) by: (1) enforcing certain basic safety criteria (like seat belts which are required for car occupants under North Carolina law) for independent drivers and their vehicles; or (2) supposedly controlling routes for rides. Because Plaintiff's summary judgment briefing did not assert either of these grounds as a basis for imposing common-carrier duties, Uber has not had an opportunity to brief them for the Court's consideration. Uber accordingly submits this short Supplemental Brief to more fully address the Court's questions and to explain why no North Carolina precedent suggests the referenced factors would convert Uber into a common carrier as a matter of law. If merely requiring adherence to *state-mandated* seatbelt laws were held sufficient to establish "control" that creates a common carrier, then the General Assembly's deliberate designation of Uber as an intermediary—a Transportation Network Company charged not with providing transportation but with connecting riders to the independent drivers who indisputably provide the transportation, N.C.G.S. ("G.S.") § 20-280.1(6)—would be undermined.

As the parties agree, whether an entity is a common carrier in North Carolina depends on whether the entity holds itself out as providing transportation and controls the *actual operation* of the carriage. Defs.' Mot. Summ. J. (Dkt. 5475) at 15-16 (citing *Patterson v. Duke Power Co.*, 36 S.E.2d 713, 714-16 (N.C. 1946)); *see also* Pl.'s Opp'n (Dkt. 5625) at 8-10 (arguing that "Uber has sufficient custody and control over passengers to assume common-carrier duties"). It would not make any sense to impose common-carrier duties on an entity that does not control how the carriage gets provided, and no North Carolina precedent supports such an extreme step. Because the record unambiguously establishes that Uber does not itself transport anyone, Plaintiff has attempted to argue that Uber nevertheless controls the rides. But the factors this Court referenced at the Final Pretrial Conference—which Plaintiff did not assert in her briefing—have never before been treated

1

as "control" that establishes common carriage in North Carolina

1. *Driver and Vehicle Criteria*. The Court first asked whether Uber controlled transportation by enforcing certain baseline driver-eligibility and vehicle standards, such as by requiring that vehicles used to provide rides through the platform have functioning seatbelts or room to fit riders. Plaintiff's summary judgment briefs did not advance this argument as a basis for imposing common-carrier duties, and rightly so. No North Carolina court has ever suggested that, by requiring transportation providers to follow basic state safety laws, a party assumes control over the operation of carriage and becomes a common carrier. North Carolina law *generally* requires seat belt use; when a vehicle traveling on North Carolina's roads has seat belts, then passengers are required to wear them. *See G.S. 20-135.2A.* Uber does not become a common carrier that controls the means of transportation simply by ensuring drivers comply with obligations imposed by *state law* rather than by Uber itself. *Cf. Sw. Rsch. Inst. v. Unemployment Ins. Appeals Bd.*, 81 Cal. App. 4th 705, 709 (2000) ("where the method of performing a task is dictated by health and safety regulations imposed by the government, the principal is not exercising the manner and means of control as an employer").

Moreover, nothing about a seatbelt requirement or other similar safety criteria is in any way inconsistent with the North Carolina legislature's designation of Uber as a facilitator of transportation services—rather than a carrier. North Carolina specifies that Uber's role is to "connect" riders with independent drivers, that those drivers are presumptively independent contractors, and that it is those independent drivers, not Uber, "who provide . . . transportation services." *Id.* § 20-280.1(6); *see id.* § 280.8 (drivers presumptively independent contractors). A transportation intermediary such as a "third party logistics provider . . . ha[s] a duty to investigate the fitness of [a carrier] prior to hiring it to carry." *Jones v. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630, 646 (W.D. Va. 2008); *see* Restatement (Second) Torts § 411 (describing principal's duty "to exercise reasonable care to employ a competent and careful contractor"). Uber's safety screening as to both drivers (*e.g.*, a valid driver's license is required) and vehicles (*e.g.*, seatbelts are required; drivers cannot offer rides on a motorcycle) is mandated by the TNC statute as an

2

exercise of that essential intermediary function. *See* G.S. § 20-280.5(a) (vehicle inspections); § 20-280.6 (background checks and driving history); G.S. §§ 20-135.2, 20-135.2A (seatbelt mandate). But that basic filtering function does nothing to change the answer to the critical question under North Carolina law, which is who controls how the transportation is provided: once a driver is qualified to access the platform, he alone has control over the ride, as confirmed by drivers' presumptive independent contractor status. *See Willoughby v. Kenneth W. Wilkins, M.D., P.A.*, 310 S.E.2d 90, 95 (N.C. App. 1983) ("As distinguished from an agent or employee, an independent contractor is not subject to interference or control by the employer with respect to the manner or method of doing the work.").

The entire premise of the broker-carrier distinction recognized at common law and incorporated in North Carolina's common-carrier statute is that an intermediary's selection of a carrier does not amount to control over the operation of the transportation service itself. *See* G.S.§ 62-3(1a) (defining "broker"); 13 Am. Jur. 2d Carriers § 1 ("Carrier" means one who "undertakes the transportation of persons or property" and who "accepts responsibility for . . . transportation," whereas a "broker's only role is to negotiate and arrange for transportation" and it "does not take possession" of, or actually "transport," anything). Common sense teaches the same thing: A tour operator would not become a common carrier just because it confirms that a vessel it charters complies with safety regulations. *See Stafford v. Intrav, Inc.*, 841 F. Supp. 284, 287 (E.D. Mo. 1993). If this Court became the first ever in North Carolina history to hold that requiring compliance with state-mandated safety standards, or other basic safety standards designed to ensure safe travel for the public, turns a company into a common carrier, it would collapse the legislative distinction between intermediaries and carriers. *See* G.S. §§ 62-3(1a), 20-280.1(6)

Finally, imposing common carrier duties based on "safety-related" standards (including most of which is just the law in North Carolina) for drivers and vehicles would run "against sound public policy." *Beil v. Telesis Const. Co.*, 11 A.3d 456, 468 (Pa. 2011). Parties that transact with independent contractors are entitled to "set minimal safety standards without incurring liability," and are "not required to stand idly by while another is injured or killed in order to avoid liability."

SUPPLEMENTAL BRIEF ADDRESSING QUESTIONS RAISED
BY THE COURT AT FINAL PRETRIAL CONFERENCE
Case No. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

*Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 702 (Tex. App. 2004). As the TNC statute's screening requirements reflect, Uber's enforcement of basic safety standards for drivers and their vehicles is exactly what one would expect from a responsible intermediary. Holding that these beneficial, non-transportation measures transform Uber into a common carrier subject to absolute liability would create harmful incentives directly at odds with the TNC statute's policies.

2. *Routes.* The Court separately asked whether Uber is a common carrier because it exercises control over drivers' routes. The record makes clear that the answer is definitively "no," and Plaintiff has not asserted otherwise. The uncontroverted record at summary judgment is that "If a driver elects to accept a ride, they (or the rider) may determine their own route, including by the navigation technology of their choice." Decl. of Erin O'Keefe ISO of Defs.' Mot. for Summ. J. ¶ 22; *see also* Driver Agreement (Dkt. 5475-2) § 2.2 (independent driver "shall be *solely responsible* for determining the most effective, efficient and safe manner to perform each instance of Transportation Services") (emphasis added). Plaintiff has not proffered any evidence whatsoever that Uber, rather than independent drivers, decides which route a driver must take. That uncontradicted fact further underscores Uber's lack of control over how the transportation services are provided.

Dated: April 6, 2026

**O'MELVENY & MYERS LLP**

By: /s/ *Jonathan Schneller*

**O'MELVENY & MYERS LLP**
JONATHAN SCHNELLER
SABRINA H. STRONG

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN
JESSICA DAVIDSON

**MCGUIRE WOODS LLP**
BRADLEY R. KUTROW

*Counsel for Defendants*

4