[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*WHB 823 v. Uber Techs., Inc., et al.*, No. 3:24-cv-04900 | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF ON PLAINTIFF'S DAMAGES THEORY**<br><br>**REDACTED VERSION**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Date Filed: April 9, 2026<br>Trial Date: April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 823,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants | CASE NO. 3:25-cv-00737-CRB<br><br>Judge: Hon. Charles R. Breyer |

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
laura.vartain@kirkland.com
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
alli.brown@kirkland.com
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

JESSICA DAVIDSON (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Bradley R. Kutrow
**MCGUIREWOODS LLP**
bkutrow@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2049

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................................1

II.   ARGUMENT ........................................................................................................................3

      A.    Plaintiff's Preexisting Psychological Conditions Are Highly
            Relevant to the Jury's Assessment of Plaintiff's Damages ....................................3

      B.    Plaintiff's Prior Claims About Previous Traumas Directly
            Undercut Her Credibility ........................................................................................6

III.  CONCLUSION .....................................................................................................................7

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Behler v. Hanlon*,
   199 F.R.D. 553 (D.Md. 2001)...................................................................................................6, 7

*Doe v. City of Chula Vista*,
   196 F.R.D. 562 (S.D. Cal. 1999) ..................................................................................................3

*E.E.O.C. v. Sheffield Fin.*, *LLC*,
   2007 WL 1726560 (M.D.N.C. June 13, 2007) .............................................................................3

*Goldman Sachs Trust Co., N.A. v. Falls*,
   2018 WL 3429704 (E.D.N.C. 2018)..............................................................................................6

*Kahle v. Leonard*,
   2008 WL 11450648 (D.S.D. 2008).................................................................................................5

*Linden v. Berryhill*,
   736 Fed. App'x 684 (9th Cir. 2018) ..............................................................................................7

*McCleland v. Montgomery Ward & Co.*,
   1995 WL 571324 (N.D. Ill. 1995) ............................................................................................4, 6

*Potts v. Howser*,
   161 S.E.2d 737 (N.C. 1968)..........................................................................................................3

*United States v. Devine*,
   40 F.4th 139 (4th Cir. 2022) .........................................................................................................5

*Vinson v. Superior Ct.*,
   740 P.2d 404 (Cal. 1987) ..............................................................................................................4

**Other Authorities**

N.C.P.I.—Civil 102.22 (Feb. 2024).....................................................................................................3

**TRIAL BRIEF ON PLAINTIFF'S DAMAGES THEORY[1]**

## I.    INTRODUCTION

Throughout this litigation—in her written discovery responses, depositions, and forensic psychological evaluation—Plaintiff has claimed that she suffered "PTSD and anxiety symptoms" allegedly caused when a driver touched her leg during a ride requested through the Uber App. After Plaintiff's own retained psychological expert could not attribute any symptom or aggravation to the alleged leg-touching—as opposed to Plaintiff's long history of serious psychological conditions, extensive substance abuse, and severe traumas—Plaintiff announced on the eve of trial that she would seek damages only for garden variety emotional distress in the 24-hour period after the alleged incident. Apr. 2 Pretrial Conf. Tr. (Dkt. 5770) at 60:9-63:8. Because this new theory came after the close of discovery, Uber does not know exactly what injuries Plaintiff will assert she experienced in those 24 hours. But her history of extensive mental-health conditions and prior traumas remains relevant to *any* trial testimony she might offer about her emotional state for two independent reasons.[2]

*First*, a jury cannot evaluate Plaintiff's emotional-distress claim without understanding her baseline psychological state and the emotional distress associated with her preexisting conditions. Just as Plaintiff previously attributed her PTSD entirely to the alleged leg-touching incident rather than her long history of severe traumas, she will no doubt testify at trial that any anxiety, sleeplessness, or fear she experienced in the 24 hours after the ride at issue resulted solely from the alleged incident. But the fact that Plaintiff now seeks to recover for a shorter period does not diminish the impact of her prior experiences and mental health on any distress she allegedly experienced in that period. And Uber is entitled, as a matter of due process, to present the jury with evidence of alternative explanations for

---

[1] Unless otherwise noted, all emphases are added and internal quotation marks and alterations are omitted.

[2] Uber submits this trial brief pursuant to the leave granted by the Court at the final pretrial conference. Dkt. 5770 at 74:16-22.

Plaintiff's emotional state in the 24 hours after the alleged incident. For example, Plaintiff has testified that she could not sleep immediately after the incident, but her medical records document a ███████. ████████████████████████████████████████. Excluding that history would paint an incomplete and misleading picture for the jury, inviting it to erroneously infer that Plaintiff ██████████████████████████████████████████ she alleges during the 24-hour window at issue must have arisen solely from the alleged incident. That artificial construct would profoundly prejudice Uber.

*Second*, Plaintiff's history also remains highly relevant because her prior self-serving testimony regarding her PTSD theory sharply undermines the credibility of the damages theory she now plans to advance at trial. In particular, Plaintiff testified that her claimed PTSD resulted entirely from the alleged leg-touching incident, rather than severe prior traumas including ████████████████████ — and even assigned a score of "zero" to those obviously serious traumas when asked to quantify their emotional impact. Plaintiff now seeks to abandon that PTSD theory.  But Plaintiff's prior exaggeration regarding the emotional impact of the alleged incident bears directly on her credibility and emotional insight, and thus the weight the jury should afford her current damages claims.  It is essential for the jury to evaluate these inconsistencies in assessing whatever damages testimony Plaintiff offers at trial under her newly disclosed theory.

In short, requiring the jury to evaluate Plaintiff's damages claims on the false assumption that she was an otherwise healthy person with no credibility deficits would pervert the truth-seeking function of trial. For these reasons, discussed further below, the Court should permit Uber to present relevant evidence regarding Plaintiff's medical history and prior traumas, with appropriate limiting instructions confining its use to causation, damages, and credibility.

## II.     ARGUMENT

### A.     Plaintiff's Preexisting Psychological Conditions Are Highly Relevant to the Jury's Assessment of Plaintiff's Damages.

Plaintiff asks the Court to endorse a fiction: that whatever emotional distress Plaintiff testifies she experienced on the night of March 26, 2019 must have arisen from the alleged incident, rather than Plaintiff's preexisting psychological conditions. Uber is entitled to probe whether that is true, and Plaintiff's psychological history is central to that inquiry.

Plaintiff is not entitled to recover for any emotional distress she would have experienced absent the alleged incident. Rather, her recovery is limited to "such increased or augmented suffering as are the natural and proximate result of the [alleged] wrongful act." *Potts v. Howser*, 161 S.E.2d 737, 741-42 (N.C. 1968). Put another way, Plaintiff can recover only for the "additional injury" caused "over and above the consequences" of her "pre-existing" conditions. *Id.*; *see also* N.C.P.I.—Civil 102.22 (Feb. 2024) (Proximate Cause-Activation/Aggravation) (instructing jury that the "defendant is not liable for damages attributable solely to the pre-existing [physical] [mental] condition of the plaintiff.").

That rule squarely applies to emotional-distress damages, and requires the jury to separate any emotional distress caused by the incident from emotional distress caused by Plaintiff's preexisting mental-health conditions. If a plaintiff "rel[ies] on her emotional state to make her case" and "testif[ies] to her emotions near the incident," the "defendant is free to cross-examine her about the depth of her emotional damage and other factors in her life at that time." *Doe v. City of Chula Vista*, 196 F.R.D. 562, 569 (S.D. Cal. 1999). Accordingly, "[w]hen a plaintiff seeks damages for mental anguish"—even "'***garden variety***' incidental compensatory damage"—the plaintiff's "medical and psychological information" is relevant because it "may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being." *E.E.O.C. v. Sheffield Fin.*, LLC, 2007 WL 1726560, at *4-5 (M.D.N.C. June 13, 2007) (collecting cases) (emphasis added). That is true even for everyday emotional injuries such as "sleeplessness" and "fear"—by asserting such injuries, a plaintiff "implicitly claims [the

emotional distress] was not caused by a preexisting mental condition, thereby raising the question of alternative sources of the distress." *Vinson v. Superior Ct.*, 740 P.2d 404, 409 (Cal. 1987).[3]

*McCleland v. Montgomery Ward & Co.*, 1995 WL 571324 (N.D. Ill. 1995), applied this principle to facts strikingly similar to this case. Much as Plaintiff did here, the *McCleland* plaintiffs initially sought "damages for aggravation of any pre-existing psychological or mental conditions," but later narrowed their claims to seek only "compensatory damages for humiliation, embarrassment, and emotional and physical suffering." *Id.* at *1. The court nevertheless rejected their motion to exclude evidence of prior psychological conditions and abuse, holding that the defendant was entitled to "prove that the plaintiff's emotional distress was caused by something other than defendant's actions," and that the psychiatric and prior-abuse evidence was probative of whether "other stressful situations caused plaintiffs' emotional pain and suffering." *Id.* at *2.

Although Uber has not been able to take discovery on Plaintiff's new damages theory, Plaintiff will presumably testify to emotional distress injuries such as fear, anxiety, and inability to sleep. Plaintiff's preexisting conditions and prior traumatic experiences would provide highly relevant alternative explanations for such symptoms. Just months before the alleged incident, Plaintiff was diagnosed with ███████████████████████████████████████████████████████. Ex. 1 at -39, -40. Each of those conditions which would independently explain any feelings of fear, anxiety, or insomnia that Plaintiff testifies she experienced in the 24 hours after the alleged incident.

Indeed, it is difficult to imagine any emotional disturbance Plaintiff might assert that could not have arisen from, or been impacted by, her preexisting psychological conditions. For example, Plaintiff suggested at her deposition that she may have had difficulty sleeping after her ride. *See* Ex. 3 at 35:25-36:16. If that is Plaintiff's trial testimony, Uber would be entitled to present evidence that Plaintiff had

---

[3] Consistent with this authority, the Court held in the *Dean* bellwether trial that Uber could introduce prior sexual assault evidence and cross-examine the plaintiff's expert about the impact of those assaults on the plaintiff. *See* Jan. 6, 2026 Dean Pretrial Conf. Tr. (Dkt. 4934) at 57:2-62:20. In doing so, the Court observed that "family history of drug abuse/criminal convictions" also "very well may come into play" because that evidence helps "explain[] [the plaintiff's] state of mind and explain[] the scope of her damages." *Id.* 61:24-62:5.

UBER'S TRIAL BRIEF ON DAMAGES
CASE NO. 3:23-md-03084-CRB/ 3:25-cv-00737-CRB

several psychological conditions ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Similarly, Plaintiff may testify that the alleged incident caused her to feel sad or depressed, but such feelings are associated with Plaintiff's ████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████ And if Plaintiff claims she felt fearful or anxious after the incident, Uber should be permitted to introduce her diagnosis of ██████████████████ ████████████████████████████████████████████████ ████████████████████████ Ex. 1 at -39, -40; *see* Ex. 6 at -79.

Nor would permitting Uber to present such evidence be unduly prejudicial. By seeking damages for emotional distress, Plaintiff has placed her psychological health squarely at issue in this lawsuit. Moreover, Plaintiff's traumatic history does not portray her "in a bad light," but rather "as a victim of the acts of others." *Kahle v. Leonard*, 2008 WL 11450648, at *2 (D.S.D. Feb. 15, 2008). And any concerns Plaintiff may have that a jury would somehow blame Plaintiff for her painful past can be addressed with a limiting instruction directing jurors to consider the evidence for limited purposes such as causation and damages. *See, e.g., United States v. Devine*, 40 F.4th 139, 150 (4th Cir. 2022) (limiting instructions "are generally sufficient to address any spillover risk").

By contrast, excluding such evidence would incurably prejudice Uber by inviting the jury to assess Plaintiff's emotional distress on the false assumption that she was an otherwise mentally healthy person and no alternative explanations exist for any emotional distress she felt during the relevant 24-hour window. That would be nothing less than a denial of due process.[4]

**B.    Plaintiff's Prior Claims and Statements About Previous Traumas Directly Undercut Her Credibility.**

Plaintiff's trauma history also remains relevant because she has made noncredible claims about previous traumas that cast doubt on the reliability and credibility of any damages testimony she will

---

[4] Uber incorporates by reference and preserves the argument advanced in its pending summary judgment motion that Plaintiff's compensatory damages claims fail in their entirety for lack of expert testimony. *See* Defs.' Mot. for Summ. J. (Dkt. 5475) at 28-30.

offer at trial. The "Fourth Circuit has recognized that evidence of a witness's prior conduct is particularly relevant where it is used to make credibility attacks based upon motive or bias." *Goldman Sachs Tr. Co., N.A. v. Falls*, 2018 WL 3429704, at *8 (E.D.N.C. 2018). Witness credibility also "may always be attacked by showing that his or her capacity to observe, remember or narrate is impaired." *Behler v. Hanlon*, 199 F.R.D. 553, 558 (D. Md. 2001).

Testimony exaggerating a withdrawn damages claim bears directly on the credibility and reliability of Plaintiff's current damages testimony. In *McCleland*, for example, the plaintiffs withdrew their claim that the defendant's conduct led to their hospitalization, but the court nevertheless held that evidence of the hospitalization was admissible "for impeachment purposes" because the "plaintiffs' medical records, treating physicians and therapist directly contradict[ed] plaintiffs' statements" regarding the hospitalization, and therefore "undermin[ed] plaintiffs' claim that [the defendant] caused their emotional distress damages." 1995 WL 571324, at *2.

So too here, Plaintiff should not be allowed to conceal her highly implausible deposition testimony from the jury by abandoning the damages theory to which the statements related. When Plaintiff was asked at her deposition whether her "experience in March of 2019"—i.e., allegedly having had her leg touched by her driver—is the "sole contributing factor to [her] PTSD," she responded: "Yes, that is exactly what I'm saying." Ex. 3 at 117:6-22; *see id.* at 117:6-9 ("Q. [I]s there any other incident in your life that contributes to your PTSD as you perceive it? A. No."). She went on to claim that she "never had social anxiety" before the incident and denied experiencing ███████████ ███████████ related to any other traumatic event. *Id.* at 126:24-127:13. Similarly, when asked by her psychological expert to quantify how much she was bothered by prior traumatic events, she rated each of those prior, serious traumas a "zero." Ex. 2 at 152:16-153:9.

Plaintiff's testimony that her psychological conditions resulted entirely from the leg-touching she alleges—and that ████████████████████████████ had no effect—lacks credibility on its face. And it is contradicted in many particulars by Plaintiff's medical records, which document serious pre-incident mental-health problems, including an ███████████████ to pre-incident traumas. *See supra* at 4-5. Plaintiff's own retained psychological expert "disagree[d] with"

Plaintiff's minimization of her prior traumas and testified that Plaintiff "doesn't have the emotional awareness to be able to understand why she's experiencing this level of distress over this event." Ex. 2 at 111:2-15. Even that charitable explanation would call into question her "capacity to observe, remember or narrate" her emotional experiences and thus directly undercut the reliability of any emotional distress Plaintiff may recount under her new theory. *Behler*, 199 F.R.D. at 558.

Moreover, Uber is entitled to argue for a different, equally relevant inference—that Plaintiff minimized her prior traumas because she is intent on maximizing her recovery in this case. "A tendency to exaggerate is a valid reason to discount a claimant's testimony." *Linden v. Berryhill*, 736 Fed. App'x 684, 685 (9th Cir. 2018). It would be grossly prejudicial to Uber and fundamentally misleading to present the jury with only Plaintiff's subjective account of her emotional state and not inform it that she had previously given transparently unreliable testimony about the incident's emotional impact under a different damages theory.

## III.    CONCLUSION

For the foregoing reasons, the Court should permit Uber to present evidence of Plaintiff's pre-existing trauma and psychiatric history for purposes of causation, damages, and impeachment, subject to limiting instructions that the jury consider that evidence only for those limited purposes.

Dated: April 9, 2026

**O'MELVENY & MYERS LLP**

By:    /s/ *Jonathan Schneller*

JONATHAN SCHNELLER
SABRINA H. STRONG

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN
JESSICA DAVIDSON

**MCGUIREWOODS LLP**
BRADLEY R. KUTROW

*Counsel for Defendants*

8