IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION _____ / | MDL No. 3084 |
| This Order Relates To: *WHB 823 v. Uber Techs., Inc.*, N.D. Cal. No. 3:24-cv-04900 W.D.N.C. No. 3:25-cv-00737 | **PRETRIAL ORDER NO. 43: ORDER REGARDING <u>WHB 823</u> PRETRIAL MOTIONS** |

Having considered the briefing on the Parties' various pretrial motions in the <u>WHB 823</u> bellwether case, as well as oral argument at the April 2, 2026, pretrial conference, the Court **ORDERS** as follows:

## I.    MOTIONS FOR SUMMARY JUDGMENT

Plaintiff's Motion for Partial Summary Judgment on Common Carrier Status and Liability is **GRANTED**.

Under North Carolina law, "[t]he crucial test as to whether one is a common carrier is whether he holds himself out as such, either expressly or by a course of conduct, that he will carry for hire on a uniform tariff all persons applying so long as he has room." <u>Jackson v. Stancil</u>, 116 S.E.2d 817, 825 (N.C. 1960) (citation omitted).  Uber clearly qualifies as a common carrier on that basis.  The undisputed factual record in this litigation demonstrates that Uber holds itself out to the public as a transportation provider through its ubiquitous advertising as well as the control it exerts over Uber rides and the safety of its

passengers.

Had the North Carolina legislature so desired, it could have modeled its TNC statute after states like Florida and Texas that explicitly exempted Uber and other rideshare providers from common carrier liability. See PTO No. 17 at 31; PTO No. 18 at 5. But the legislature did not do so, and therefore Uber cannot use its strained explanation of the TNC regulatory environment to manufacture a statutory limitation on Uber's common law tort liability where one does not actually exist. See Arter v. Orange Cnty., 904 S.E.2d 715, 717 (N.C. 2024) (holding that where "laws are in derogation of common law rights, they cannot be construed to include or exclude by implication that which is not clearly their express terms" (citation omitted)). Uber cites to a recent decision in South Carolina state court reaching a contrary conclusion on this issue, but that court's discussion of North Carolina's TNC statute was mere dicta, as the plaintiff's claims in that case would have failed regardless of Uber's common carrier status because "the alleged harm [there]— unlike the harm alleged in the MDL—occurred after the conclusion of an uneventful ride." E.B. v. Uber Technologies, Inc., No. 2024-CP-46-2996, at *7 (Apr. 3, 2026 S.C. Court of Common Pleas).

Uber's other counterarguments are equally unavailing. While the pricing of each Uber ride does hinge on a variety of variables specific to that ride, the terms still ultimately qualify as a uniform tariff because they are "equally available, and on the same terms, to all" as opposed to the product of individualized bargains between each passenger and Uber. State ex rel. Utils. Comm'n v. Bird Oil Co., 273 S.E.2d 232, 239 (N.C. 1981). And Uber undoubtedly "undertakes as a business to carry for all people indifferently" even if it can and occasionally does bar unruly passengers, just as any bus driver is empowered to do. Jackson, 116 S.E.2d at 824; see also Ariz. Corp. Comm'n v. Reliable Transp. Co., 346 P.2d 1091, 1099-1100 (Ariz. 1959) ("Nor can a carrier which holds itself out to the public as being a common carrier divest itself of that character because it has a secret or private intention to reserve the right to refuse to serve such parties as it objects to, or because it may, even upon occasion, exercise such right.").

2

United States District Court
Northern District of California

Further, as a common carrier Uber owes a non-delegable duty to Plaintiff and other riders to transport them safely, and that duty is breached when an Uber driver assaults a passenger—regardless of whether the driver is properly classified as Uber's employee or an independent contractor under North Carolina law. "Since the carrier owes a high duty to a passenger to protect him from assault from any source, a malicious or wanton assault committed on a passenger by an employee while on duty, whether within the line of his employment or not, constitutes a breach of duty directly imposing liability." Hairston v. Atl. Greyhound Corp., 18 S.E.2d 166, 170 (N.C. 1942) (emphasis added); see also Mann v. Va. Dare Transp. Co., 198 S.E.2d 558, 569 (N.C. 1973) (applying common carrier duty to acts of an independent contractor). While Uber grasps at the stray usage of the word "employee" in Hairston and other cases, there is no meaningful distinction in this context between an independent contractor and an employee who is acting outside the scope of their employment. And for good reason, because any other conclusion would eliminate the entire concept of a non-delegable duty. Similarly, the common law duty of a common carrier in North Carolina does not stem from a "public franchise" but rather the unique relationship that exists between a transportation provider like Uber and the passengers that have entrusted their safety to it.

Accordingly, Uber's Motion for Summary Judgment is **DENIED**. Plaintiff is capable of establishing that she suffered damages immediately stemming from the alleged sexual assault without needing to rely on an expert medical opinion. See G.D. ex rel. S.G. v. Kannapolis City Schs. Bd. of Educ., 2024 WL 2832779, at *7 (M.D.N.C. June 4, 2024) ("Expert testimony is not necessary for a jury to conclude that a physical sexual assault . . . would result in injury, such as emotional pain and mental suffering.").

## II.    MOTIONS TO EXCLUDE EXPERTS

Uber's Motion to Exclude Veronique Valliere's expert testimony is **DENIED**. However, given the limited scope of this case, Dr. Valliere's testimony shall be limited to (1) explaining and rebutting myths about sexual assault victim characteristics and behavior and (2) explaining typical characteristics and behavior of sex offenders.

Plaintiff's Motion to Exclude Joseph Okpaku's expert testimony is **GRANTED**, as his testimony has been rendered irrelevant by the Court's summary judgment ruling.

Plaintiff's Motion to Exclude Alison Reminick's expert testimony is **GRANTED IN PART** to the extent she seeks to offer opinions about Plaintiff's credibility as a witness or that Plaintiff is lying about her sobriety the night of the alleged incident.

## III.    MOTIONS IN LIMINE

For all the Motions in Limine, the Parties should rely first and foremost on the Court's guidance during the pretrial conference.  The Court's rulings may change based on how specific evidence is presented within the context of the trial.

Uber's Motion to Exclude Evidence Related to the Driver's 1-Star Reviews is **GRANTED**.

Uber's Request to Present Evidence of Attorney Advertising is **DENIED**.

Plaintiff's Motions in Limine Nos. 1, 2, 3, and 6 are **GRANTED**.

Plaintiff's Motion in Limine No. 8(e) is **GRANTED IN PART** to the extent that Uber seeks to introduce evidence of this type other than party admissions.

Plaintiff's Motions in Limine Nos. 4, 7, and 8(c) are **DENIED**.

The Court is considering the trial briefs and impending oppositions related to Plaintiff's Motions in Limine Nos. 5, 8(b), 8(d), 8(f), 8(g), 8(h), 8(i), 8(j), and 8(k), as well as Uber's Motion to Permit Evidence under FRE 412.  An order resolving these issues shall be issued before the start of trial.

**IT IS SO ORDERED.**

Dated: April 10, 2026

CHARLES R. BREYER
United States District Judge

4