# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**   25-mc-00121-NYW

**UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,**

*Petitioners-Issuing Parties*,

**v.**

**EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL SERVICES, LLC,**

*Respondents- Subpoenaed Parties*.

---

*Subpoena relates to: In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation, Case No. 3:23-md-03084-CRB, MDL No. 3084, pending in the U.S. District Court for the Northern District of California before Hon. Charles R. Breyer*

---

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iv

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

　Multidistrict Litigation Centralization ..................................................................................... 2

　Fraudulent Receipts Created by Respondents' Service Used in MDL ...................................... 4

　Respondents Refuse to Substantially Comply with Petitioners' Subpoena .............................. 8

ARGUMENT............................................................................................................................... 13

　I.　　THE COURT SHOULD TRANSFER THIS SUBPOENA ENFORCEMENT

　　　　PROCEEDING TO THE MDL COURT UNDER RULE 45(F). ................................ 14

　　A.　The MDL Litigation Will Be Disrupted if the Subpoena Dispute is Not Transferred. . 15

　　B.　Respondents Will Not Suffer Undue Burden or Cost if the Subpoena Dispute is

　　　　Transferred. ...................................................................................................... 18

　　C.　The MDL Court is in the Best Position to Decide this Subpoena Dispute................. 20

　　D.　Respondents Agreed to Submit Any Subpoena Dispute to the MDL Court. .............. 22

　II.　IN THE ALTERNATIVE, THE COURT SHOULD ORDER RESPONDENTS TO

　　　　COMPLY WITH THE SUBPOENAS. ....................................................................... 23

　　A.　The Discovery Petitioners Seek is Highly Relevant to the Underlying Litigation in the

　　　　MDL. ................................................................................................................. 24

　　B.　The Discovery Petitioners Seek is Reasonable in Scope. ........................................ 28

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**　　　　　　　　　　　　Case No. _____

C.    Respondents Have Not Articulated any Undue Burden from Complying with the

Discovery Petitioners Seek. ..............................................................................29

D.    Respondents Failed to Timely Object to Petitioners' Subpoenas. ............................33

CONCLUSION.............................................................................................................. 36

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS**                                    Case No. _____

Case No. 1:25-mc-00121-NYW    Document 1    filed 12/22/25    USDC Colorado    pg 4
Case 3:23-md-03084-CRB    Document 3318-2    Filed 04/10/26    Page 5 of 324
of 545

## TABLE OF AUTHORITIES

**Cases**

*In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 3:23-md-03084-CRB,
MDL No. 3084 ......................................................................................................... *passim*

*Amica Mut. Ins. Co. v. Whois Priv. Prot. Serv., Inc.*, 2012 WL 1657728 (D. Colo. May 11, 2012)
......................................................................................................................................34, 36

*Atherton v. Amazon.com, Inc.*, 2022 WL 974250 (D. Colo. March 31, 2022).........................15, 19

*Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, 2024 WL 2191007 (N.D. Cal. May 14,
2024) .........................................................................................................................................27

*Atkinson v. Atchison, Topeka & Santa Fe Ry. Co.*, 197 F.2d 244 (10th Cir. 1952) ........................24

*Axon Enter. Inc. v. Venjuris PC*, 2023 WL 1796436 (M.D. Fla. Feb. 7, 2023)..............................34

*Barker v. Insight Global*, *LLC*, 2019 WL 1974899 (N.D. Cal. May 3, 2019) ...............................27

*Bennett v. Galer*, 2023 WL 7109620 (M.D. Fla. Oct. 27, 2023)............................................... 33-34

*Beverly v. Interior Elec. Inc. Nev.*, 2023 WL 355692 (9th Cir. Jan. 23, 2023) ..............................27

*Bodyguard Prods., Inc. v. Doe 1*, 2018 WL 8489600 (D. Haw. Nov. 19, 2018)....................... 32-33

*Brown v. Deputy No. 1*, 2014 WL 842946 (S.D. Cal. Mar. 4, 2014)............................................26

*Chevron Corp. v. Donzinger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)...............................33

*Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 2135217 (D. Colo. May 25, 2010).............34

*Chikhakli v. Samuels*, 2017 WL 9988971 (W.D. Okla. Apr. 17, 2017)..........................................27

*Cont'l Cas. Co. v. Multiservice Corp.*, 2008 WL 73345 (D. Kan. Jan. 7, 2008) ...........................28

*Copeland v. C.A.A.I.R., Inc.*, 2024 WL 841215 (N.D. Okla. Feb. 28, 2024)................................34

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 2017 WL 9690400 (N.D. Iowa July 19, 2017) ....
................................................................................................................................................30

*de Leon v. Clorox Co.*, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) ..........................................27

*Del Sol v. Whiting*, 2015 WL 12090268 (D. Ariz. Mar. 10, 2015)..................................................27

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) ........................................................ 34-35

*In re Disposable Contact Lens Antitrust Litigation*, 306 F. Supp. 3d 372 (D.D.C. 2017).................
......................................................................................................................14-18, 21-22

*Edwards v. Dwyer*, 2012 WL 75335 (E.D. Mo. Jan. 10, 2012) .....................................................27

*Erickson v. Builder Advisor Grp. LLC*, 2022 WL 3109587 (N.D. Cal. July 6, 2022) ...................34

*Estes v. 3M Co.*, 2020 WL 8254487 (M.D. Ala. Dec. 29, 2020) ....................................................17

*Fed. Deposit Ins. Corp. v. Amos*, 2017 WL 11682626 (N.D. Fla. May 16, 2017)................... 34-35

*In re FirstEnergy Corp. Secs. Litig.*, 2023 WL 7319413 (S.D. Ohio Nov. 6, 2023)......................27

*First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241 (N.D. Ill. 2011) ......................................33

*Fit Tea LLC v. Alani Nutrition LLC*, 2023 WL 2351657 (M.D. Fla. Mar. 3, 2023).......................34

*In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, 2009 WL 10711650 (U.S. Jud. Pan. Mult. Lit.
June 9, 2009)...............................................................................................................18

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 9065791 (S.D.N.Y.
May 8, 2020)................................................................................................................17

*Intel Corp. v. Prot. Cap. LLC*, 2013 WL 12313348 (S.D. Cal. Oct. 2, 2013)................................27

*Leviton Mfg. Co. v. Nicor, Inc.*, 2006 WL 1305036 (D.N.M. Jan. 6, 2006)..................................27

*Lifetime Prods., Inc. v. Correll, Inc.*, 2004 WL 6034623 (D. Utah Mar. 24, 2004).......................27

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. Feb. 10, 2021) ...........................................32

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS**                Case No. _____

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................................................32

*Manufacturers Alliance Ins. Co. v. Baker*, 2025 WL 951617 (W.D. Okla. Mar. 28, 2025)...........27

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) .................................................23

*Masters v. Gilmore*, 2009 WL 4016003 (D. Colo. Nov. 17, 2009).........................................23, 29

*McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381 (C.D. Cal. 2002).......................................................35

*McGillvary v. Riez*, 2025 WL 2962775 (D.N.J. Oct. 17, 2025).....................................................26

*Melikhov v. Drab*, 2019 WL 5176911 (M.D. Fla. July 1, 2019)....................................................27

*MG Premium Ltd. v. Does 1-20*, 2023 WL 4681379 (C.D. Cal. July 7, 2023) ..............................32

*Mylan, Inc. v. Analysis Grp., Inc.*, 2018 WL 1904183 (D. Mass. Apr. 20, 2018)....................17, 21

*Nasufi v. King Cable, Inc.*, 2017 WL 3334110 (N.D. Tex. Aug. 4, 2017) ......................................34

*In re Nat'l Prescription Opiate Litig.*, 2023 WL 5659047, at *2 (W.D. Tex. Aug. 30, 2023)

............................................................................................................................. 16-17, 21

*In re Niaspan Antitrust Litig.*, 2015 WL 3407543 (D. Md. May 26, 2015).............................17, 21

*Obodai v. Indeed, Inc.*, 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013).........................................33

*In re: Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (U.S. Jud. Pan. Mult. Lit. 2010)

.............................................................................................................................................18

*Parker v. N. W.*, 2025 WL 565817 (E.D. Cal. Feb. 19, 2025).......................................................34

*Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.*, 2012 WL 1059854 (D. Kan. Mar. 28, 2012)

......................................................................................................................................... 27-28

*Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754 (10th Cir. 2020)............................................24

*In re Pork Antitrust Litig.*, 2022 WL 1156726 (S.D. Ind. Apr. 19, 2022)................................17, 19

*Poturich v. Allstate Ins. Co.*, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015)...............................35

*Saewitz v. Lexington Ins. Co.*, 2006 WL 8433179 (S.D. Fla. Apr. 10, 2006)..................................27

*Satcom Sol. & Res. LLC v. Pope*, 2020 WL 4511773 (D. Colo. Apr. 20, 2020) ...........................32

*Schell v. Amendia, Inc.*, 2021 WL 1541712 (D. Colo. Apr. 20, 2021)..................................... 14-15

*Schoonmaker v. City of Eureka*, 2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) ............................34

*Simpson v. Jones*, 316 F. App'x 807 (10th Cir. 2009)..................................................................27

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 3225909
    (N.D. Cal. June 28, 2024) ...............................................................................................27

*Stephenson v. Taser Int'l, Inc.*, 2023 WL 1816866 (M.D. Fla. Feb. 8, 2023)...............................34

*In re Subpoenas Duces Tecum Issued by U.S. Dist. Ct. for Dist. of New Mexico*, 2006 WL
    8443319 (D.N.M. Nov. 3, 2006).......................................................................................34

*In re Syngenta AG MIR162 Corn Litig. v. Syngenta AG*, 2020 WL 5988498 (D. Minn. Oct. 9,
    2020) ............................................................................................................................17, 21

*Syngenta Crop Prot. LLC v. Dorsey*, 2023 WL 6209686, at *2 (W.D.N.Y. Sept. 25, 2023) .............
    ........................................................................................................................ 16, 18-19, 21

*Traut v. Quantum Servicing, LLC*, 2018 WL 1035134 (N.D. Tex. Feb. 23, 2018).......................34

*United Auto. Ins. Co. v. Stucki & Rencher, LLC*, 2021 WL 2174373 (D. Utah Feb. 8, 2021).......27

*United States v. 3M Co.*, 2020 WL 6587052 (S.D. Miss. Nov. 10, 2020) ...............................17, 21

*United States v. Fletcher*, 2015 WL 1607980 (W.D. Okla. Apr. 8, 2015).....................................27

*Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915 (W.D. Tex.
    Apr. 27, 2017) .........................................................................................................17, 19, 21

*Wagner v. Mastiffs*, 2012 WL 5948325 (S.D. Ohio Nov. 28, 2012) .............................................27

*Weddle v. Williams*, 2019 WL 1620815 (D. Colo. Apr. 15, 2019) .................................................15

PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS                              Case No. _____

*Wells v. Pikes Peak Acura, Ltd.*, 2007 WL 24720621 (D. Colo. Aug. 28, 2007) ..........................24

*In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2020 WL 12761382 (U.S. Jud. Pan.

      Mult. Lit. Dec. 15, 2020) ...................................................................................................18

*In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2021 WL 5848067 (U.S. Jud. Pan.

      Mult. Lit. Dec. 3, 2021) .....................................................................................................18

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) ...........................................................32

**Statutes and Rules**

18 U.S.C. § 2510 ............................................................................................................................31

18 U.S.C. § 2702 ....................................................................................................................... 31-32

18 U.S.C. § 2711 ........................................................................................................................ 31-32

Federal Rule of Civil Procedure 45 .....................................................2, 3, 14, 17-19, 21-23, 33-36

Federal Rule of Civil Procedure 26 ...............................................................................................23

**Other Sources**

Jonathan Stempel, *Uber Says Some Sexual Assault Accusers Submitted Fake Receipts*, Reuters,

      Jul. 31, 2025, https://www.reuters.com/sustainability/boards-policy-regulation/uber-says-

      some-sexual-assault-accusers-submitted-fake-receipts-2025-07-31/ .................................5

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                                        Case No. _____

## INTRODUCTION

This miscellaneous action concerns the enforcement of document subpoenas to a Colorado business and its owner and whether that enforcement should be ruled on by this Court or the issuing court, a large and complex multidistrict litigation pending in the U.S. District Court for the Northern District of California.[1]

Respondents Express Digital Services, LLC and Shawn Graft[2] d/b/a Express Digital Services, LLC operate several websites and smartphone apps that allow free and paid users to create their own fake receipts that closely mimic real receipts from real companies, using pre-set receipt templates that Respondents provide. In the underlying MDL litigation, the Court has found that numerous MDL Plaintiffs who allege they were harassed or assaulted by independent drivers on the Uber platform have submitted fraudulent Uber ride receipts.[3] The MDL court is actively addressing these issues and has found the fraudulent receipts include some created on websites like one of Respondents' websites, Makereceipt.com. The MDL Defendants, Petitioners in this action, Uber Technologies, Inc., Raiser, LLC, and Raiser-CA, LLC, issued these subpoenas to Respondents to provide discoverable information to help uncover the identities of individuals who used Respondents' websites and apps to create fraudulent Uber ride receipts, but Respondents have offered only partial, and incomplete, compliance.

---

[1] *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 3:23-md-03084-CRB, MDL No. 3084. Citations to the MDL are referred to as "Uber MDL."

[2] Although the corporate filings for Express identify Justin Taster as its registered agent and only officer, Defendants discovered that Justin Taster is not a real person. *See* ECF 3604 at n.2.

[3] *See* Uber MDL, Dkt. No. 3876, at 1.

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

Petitioners ask this Court to transfer this subpoena enforcement proceeding to the MDL court under Federal Rule of Civil Procedure 45(f) because the MDL court is deeply familiar with the complex litigation and is actively addressing the issues implicated by the subpoenas. In addition, the MDL court has expressly held that it is ready, willing, and able to accept enforcement proceedings transferred from other Courts so that the MDL Court can adjudicate any dispute. Transfer would not impose any burden on Respondents as the MDL court has said it will hold hearings by Zoom to avoid the burden to non-parties challenging subpoenas. In the alternative, this Court should compel Respondents to fully comply with the subpoenas because they seek highly relevant documents, are reasonable in scope, and would not impose an undue burden on Respondents.

## BACKGROUND

### Multidistrict Litigation Centralization

In late 2023, the U.S. Judicial Panel on Multidistrict Litigation (JPML) created the centralized multidistrict litigation proceeding (MDL) *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, assigning it to Judge Charles R. Breyer of the U.S. District Court for the Northern District of California.[4] Judge Breyer referred all discovery matters in the MDL to Magistrate Judge Lisa J. Cisneros.[5] Plaintiffs in the MDL allege that each of them was assaulted or harassed by an independent driver on the Uber platform and contend that Uber is responsible,

---

[4] Uber MDL, Dkt. No. 1 (Oct. 4, 2023).
[5] Uber MDL, Dkt. No. 66 (Nov. 3, 2023).

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

under a variety of legal theories, for having not implemented different or additional safety measures.[6]

The pre-trial litigation in the MDL has been extraordinarily complex. In addition to disputes over complex and novel legal issues under the various state laws applicable to the thousands of Plaintiffs' claims, the MDL Defendants (Petitioners) have produced over 5.5 million pages of documents in discovery and the parties have presented dozens of discovery disputes to the Court for resolution, including on the enforcement of subpoenas to non-parties.[7]

When addressing disputes over subpoenas served by MDL Plaintiffs to numerous non-parties, Judge Cisneros recognized, consistent with Rule 45,[8] that the MDL court has jurisdiction to resolve document subpoenas to non-parties with compliance due outside the Northern District of California when the responding party consents, when the JPML transfers the subpoena enforcement proceeding to the MDL, or when the district where compliance is required transfers the enforcement proceeding to the MDL under Rule 45(f). *See* Uber MDL, Dkt. No. 752, 2024 WL 3559730 at \*1 (N.D. Cal. July 27, 2024) (Exhibit A). But the MDL court invited other courts hearing subpoena enforcement motions to transfer them to the MDL, "find[ing] … that the transfer of subpoena-related motions to this Court will serve the goals of justice, judicial economy, and efficiency in this MDL" and noting that such disputes "will be heard using Zoom to minimize the

---

[6] *See, e.g.*, Uber MDL, Dkt. No. 384 at 15 (Apr. 1, 2024).

[7] *See, e.g.* Uber MDL, Dkt. No. 1044 (Aug. 15, 2024); No. 1792 (Oct. 24, 2024); No. 4369 at 2 (Nov. 12, 2025).

[8] *See* Fed. R. Civ. P. 45(d)(1), (d)(2)(b)(i), (d)(3)(A)-(B), (f) ("the court for the district where compliance is required" decides subpoena enforcement disputes).

PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS                                    Case No. _____

expense and burden on nonparties." *Id.* Judge Cisneros explained that transfer would serve the interests of justice and efficiency:

> If subpoena-related discovery disputes are heard in multiple districts across the country, that will require multiple judges to get up to speed on the nature of the case. Spreading the work will also increase the risk of inconsistent results. … The purpose the MDLs advance—just, as well as efficient, pretrial proceedings—will also be served by considering nonparties' interests in protecting themselves from undue burden and the disclosure of privileged material. … In light of these considerations, the Court finds that transferring such subpoena-related motions to this Court will significantly promote the just and efficient conduct of the actions that have been consolidated in this MDL.

*Id.* at \*2. Both before and after this ruling, many disputes related to non-party subpoenas have been presented to the MDL court and resolved by Judge Cisneros. *See* Uber MDL, Dkt. Nos. 570, 598, 599, 604, 609, 610, 611, 612, 613, 621, 632, 633, 634, 635, 645, 654, 655, 671, 695, 772, 774, 1047, 1530, 1549, 1555, 1619, 1760, 1771, 1776, 1779, 1792, 1794, 1797, 1798, 1814, 1892, 1893, 1905, 3243, 4292 (May 29, June 7, 11, 14, 18, 21, July 14, Aug. 2, 5, 15, 29, 30, Sep. 6, Oct. 16, 17, 18, 22, 24, 25, 31, Nov. 19, 26, 2024, Jun. 12, Nov. 3, 2025).

### Fraudulent Receipts Created by Respondents' Service Used in MDL

To facilitate case-specific discovery for the thousands of cases in the MDL, the MDL court established a standard set of case-specific discovery each party must produce. Each MDL Plaintiff is required to provide a "bona fide ride receipt" and other information and authorizations in a

---

-4-

Plaintiff Fact Sheet (PFS). *See* Uber MDL Dkt. No. 175 at 2-3 (Dec. 28, 2023); Dkt. 348 at 3-4 (Mar. 19, 2024).

Unfortunately, the PFS process has been plagued with fraud.[9] The MDL Court has already found that more than 30 Plaintiffs have submitted fraudulent "non-bona fide receipts" in their PFS submissions. *See* Uber MDL, Dkt. No. 3876 (Sep. 9, 2025) (show cause order; granting motion at Dkt. 3604) ("The 21 Plaintiffs … have submitted non-bona-fide receipts"); Dkt. 3972 (Sep. 22, 2025) (show cause order; granting motion at Dkt. 3784) ("The 6 Plaintiffs … have submitted non-bona fide receipts"); Dkt. No. 4294 (Nov. 3, 2025) (motion for show cause order and limited deposition regarding fraudulent receipts); Dkt. 4440 (Nov. 19, 2025) (show cause order; granting motion at Dkt. 4137) ("The 7 Plaintiffs … have submitted non-bona fide receipts"); Dkt. 4456 (Nov. 21, 2025) (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (Dec. 5, 2025) (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts) Dkt. No. 4575 (Dec. 5, 2025) (same).[10] Motion practice related to fraudulent ride receipts is ongoing and pending before the MDL court, and Uber is also preparing a fourth Fraudulent Receipts Motion that will demonstrate that additional MDL Plaintiffs have submitted non-bona fide receipts in the litigation.

---

[9] *See* Jonathan Stempel, *Uber Says Some Sexual Assault Accusers Submitted Fake Receipts*, Reuters, Jul. 31, 2025, https://www.reuters.com/sustainability/boards-policy-regulation/uber-says-some-sexual-assault-accusers-submitted-fake-receipts-2025-07-31/ (covering dispute over fraudulent ride receipts in Uber MDL).

[10] Uber MDL, Dkt. Nos. 3604, 3784, 3876, 3972, 4137, 4294, 4440, 4456, 4569, and 4575 are attached as Exhibit B.

PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS                    Case No. _____

As the MDL court explained, some of the fraudulent "non-bona fide receipts" were altered versions of real Uber ride receipts, while others were fraudulently generated using apps or websites designed to create receipts:

> The 21 Plaintiffs listed in Exhibit A have submitted non-bona-fide receipts. Some of these receipts show on their face that they were generated using websites designed for creating receipts, *such as Makereceipt.com.* Other of these receipts contain math errors, formatting inconsistencies, and other errors. Other receipts submitted by these Plaintiffs were altered from actual receipts.

Uber MDL, Dkt. No. 3876, at 1 (Exhibit B) (emphasis added). Below are images of two receipts submitted by MDL Plaintiffs, bearing watermarks from Makereceipt.com that read "FOR PRO OR ENTERPRISE MEMBERS ONLY":

---

-6-

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                                    Case No. _____



| | |
|---|---|
| Uber MDL, Dkt. 3604-4 at 2. | Uber MDL, Dkt. 3604-3 at 2. |

Certain Plaintiffs subject to this show cause order were ordered to provide further discovery, including to produce "any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or *the website "Makereceipt.com."* *Id.* at 2 (emphasis added).

-7-

**Respondents Refuse to Substantially Comply with Petitioners' Subpoena**

Makereceipt.com is one of Respondents' services—a service the MDL court found was used to create fraudulent Uber ride receipts submitted by Plaintiffs in the MDL. Uber MDL, Dkt. No. 3876 at 1 (Exhibit B). Respondents' services include ExpressExpense.com, ExpenseFast.com, Docdesk.co, InvoiceWriter.com, Make Receipt app, ExpressExpense app (collectively, "MakeReceipt"). MakeReceipt users can create receipts for free that bear a distinct watermark, or they can pay to create receipts without the watermark. *See* Uber MDL, Dkt. No. 3604 at 3-4. Respondents encourage users of their services to "Make Fake Receipts,"[11] while acknowledging the obvious risk of users making fake receipts "for fraudulent purposes" like returning items to retail stores,[12] but apparently do nothing to stop their services from being used for fraud. Respondents even have multiple templates on their website for creating fraudulent Uber ride receipts,[13] and an article posted after the Uber MDL was formed explaining that "Uber Receipt Generators are Useful for So Many Reasons."[14] *See* Shortnacy Decl. ¶¶ 10-14.

---

[11] *See* expensefast.com.

[12] *See* www.makereceipt.com/faq.php (recommending against making fake receipts for fraudulent purposes); *see also* https://expensefast.com/, stating on the front page of the website: "For entertainment, research and educational purposes ONLY, NOT intended for use for fraudulent purposes," demonstrating Respondents' knowledge that their services are routinely used for fraudulent purposes.

[13] https://makereceipt.com/receipt-templates/taxi/uber-receipt/ ("Uber Receipt Generator – Create & Customize Online"); *see also* https://makereceipt.com/receipt-templates/taxi/uber-receipt-2025-app.

[14] *See* https://expensefast.com/uber-receipt-generators-are-useful-for-so-many-reasons/.

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

| "Uber Receipt Generator - Create & Customize Online" |
|:---:|
|  |
| https://makereceipt.com/receipt-templates/taxi/uber-receipt/ (Shortnacy Decl. ¶ 14.) |
| **"Uber Receipt Generators are Useful for So Many Reasons"** |
| https://expensefast.com/uber-receipt-generators-are-useful-for-so-many-reasons/ (Shortnacy Decl. ¶ 12.) |

PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS                                    Case No. _____

Multiple MDL Plaintiffs submitted receipts in support of their claims bearing the MakeReceipt watermark, and another MDL Plaintiff submitted a receipt without a watermark but that also bears indicia that it was generated using MakeReceipt. Uber MDL, Dkt. No. 3604 at 3-4. Because Respondents' paid receipts do not include the watermark and because users can easily remove watermarks with a variety of online tools, Petitioners reasonably expect that there are additional non-bona fide receipts generated by Plaintiffs using MakeReceipt and not yet detected by Petitioners.

Because of the significant fraud problem in MDL Plaintiffs' ride receipts, including fraudulent receipts created with Respondents' services, Petitioners served subpoenas on Respondents. *See* Exhibit C (subpoena to Express Digital Services, LLC); Exhibit D (subpoena to Shawn Graft d/b/a Express Digital Services, LLC); Exhibit E (amended subpoena to Express Digital Services, LLC). Mr. Graft was served on October 9, 2025, and an amended subpoena to Express Digital Services was served on October 17, 2025. *See* Shortnacy Decl. ¶¶ 5-7. The dates of compliance on each subpoena were 14 days after they were issued and served (October 7, October 23, and October 31, 2025, respectively). *See* Exhibit C; Exhibit D; Exhibit E.

The subpoenas requested identifying contact information and API data related to Uber ride receipts created by Respondents' services on their websites and smartphone apps:

- Documents identifying contact information for any persons that have used or accessed any website or smartphone application developed, maintained, or operated by Petitioners to generate an Uber ride receipt; and

-10-

- Documents containing API data related to or depicting any Uber ride receipts generated using any website or smartphone application developed, maintained, or operated by Petitioners.

*See id.* (requests summarized). At no point have Respondents served any written objections to Petitioners' subpoenas. *See* Shortnacy Decl. ¶ 25.

Following conferral, Respondents produced some data relating only to users of their paid services. But the data they produced was not sufficient to permit Petitioners to match MDL Plaintiffs with users of Respondents' applications or websites. For instance, Respondents produced email addresses used to create non-bona fide Uber ride receipts, which are not the same email addresses MDL Plaintiffs used to create their Uber accounts—and therefore are of no use in most instances in identifying MDL Plaintiffs who used Respondents' services to create fraudulent Uber ride receipts. *See* Shortnacy Decl. ¶ 19.

During conferral with Petitioners, Respondents acknowledged that they have withheld other identifying information. *See* Shortnacy Decl. ¶ 22. The information Respondents have not produced includes:

**Stripe IDs for users of Petitioners' paid services who created fraudulent Uber ride receipts:** Respondents confirmed that they have Stripe IDs for users of their paid services, which are unique alphanumeric identifiers associated with users who have paid for Respondents' services and created fraudulent Uber ride receipts. Stripe, a payment processor (*see* stripe.com), could use those IDs to identify those users (pursuant to a subpoena and court order, if necessary), but Respondents refuse to produce this information. *See* Shortnacy Decl. ¶¶ 21-23.

-11-

**Names and IP addresses for users of Respondents' free and paid services who created fraudulent Uber ride receipts:** Respondents have not provided names or IP addresses associated with users for its free and paid services. The terms of service on Respondents' websites state that, for certain services, users must provide their names and that Petitioners maintain those names, and Respondents' websites also state that Respondents "record[] information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using." *See* Terms and Conditions (Exhibit F[15]). Despite these statements, Respondents' counsel has said in conferrals that they do not have names and IP addresses for users of their free or paid services. Nevertheless, and curiously, Respondents have refused to provide declarations attesting to what their counsel has represented, even when confronted with the contrary language from Respondents' websites. *See* Shortnacy Decl. ¶¶ 8, 24.

Throughout the conferral between Petitioners and Respondents, Respondents' counsel repeatedly represented to Petitioners that Respondents consented to hearing the dispute before the MDL court: "If Uber wants to proceed before [MDL Magistrate] Judge Cisneros, we are happy to do that …." Exhibit G[16] at 1 (Nov. 21, 2025); *see also id.* at 1, 10-13 (Nov. 21, Dec. 1, 2025) ("If instead [of further conferral] you prefer to present the matter to [MDL Magistrate] Judge Cisneros, any hearing will need to be set ….") ("We will plan to seek those costs in front of [MDL Magistrate] Judge Cisneros if we cannot come to an agreement.") ("That's a very simple

---

[15] Available at https://makereceipt.com/terms-conditions.php; https://expressexpense.com/terms-conditions.php; https://expensefast.com/terms-and-conditions/; https://docdesk.co/terms-and-conditions/; https://invoicewriter.com/terms-conditions.php.

[16] *See* emails between Michael Shortnacy, Adam Shoshtari, and Jay Haider, counsel for Petitioners, and Kelly Twigger, counsel for Respondents dated Oct. 15-Dec. 8, 2025 (collected as Exhibit G).

-12-

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                                      Case No. _____

relevance/proportionality argument that we can have with [MDL Magistrate] Judge Cisneros as needed.") ("We will seek to pursue my client's expenses directly with [MDL Magistrate] Judge Cisneros.").

In light of these statements, once the parties reached an impasse, Petitioner's counsel emailed Respondents' counsel on November 26, 2025 and stated that "Uber will exercise its rights under Pre Trial Order No 8 in the MDL … ." *See id.* at 12. Then, on December 2, 2025, Petitioners' counsel emailed Respondents' counsel with Petitioners' portion of a joint letter brief on enforcing the subpoenas, pursuant to the discovery briefing procedure set out in MDL Pretrial Order No. 8 (PTO 8). *See id.* at 24-25; Uber MDL, Dkt. 323 (Mar. 1, 2024). About a week later, Respondents changed their position, stating for the first time that they had not actually consented to the MDL court's jurisdiction, but only engaged in "informal discussion" and made "references to a judge's name." Exhibit G at 17 (Dec. 8, 2025). As a result, Petitioners prepared and filed this motion in the U.S. District Court for the District of Colorado.

## ARGUMENT

This Court should transfer this subpoena enforcement miscellaneous action to the MDL court to rule on Petitioners' motion to compel compliance with the subpoenas served on Respondents. In the alternative, if the Court declines to transfer, it should grant Petitioners' motion to compel Respondents' compliance with the subpoenas to produce relevant and important discovery.

-13-

## I.    THE COURT SHOULD TRANSFER THIS SUBPOENA ENFORCEMENT PROCEEDING TO THE MDL COURT UNDER RULE 45(F).

The Court should transfer this subpoena enforcement proceeding to the MDL court because, as numerous courts have held, the complexity of MDL proceedings constitutes an exceptional circumstance justifying transfer under Rule 45(f), transfer would not impose any meaningful burden on Respondents, and the MDL court is in the best position to decide the subpoena dispute.

When weighing transfer of a subpoena enforcement proceeding under Rule 45(f) to the issuing court, courts consider "avoiding burdens on local nonparties subject to subpoenas" and the need "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Schell v. Amendia, Inc.*, 2021 WL 1541712, at *3 (D. Colo. Apr. 20, 2021) (quoting Fed. R. Civ. P. 45, Advis. Comm. Notes, subsection (f)).

The opinion and order from *In re Disposable Contact Lens Antitrust Litigation*, by then-District Judge, now U.S. Supreme Court Justice, Ketanji Brown Jackson is instructive on how this analysis applies in the context of MDLs. *See* 306 F. Supp. 3d 372, 373-83 (D.D.C. 2017). As she explained, "[a]t bottom, the established considerations appear to relate to three overarching questions: (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether, based on various considerations, the issuing court

is in the best position to rule on the motion to compel." *Id.* at 376; *see also Atherton v. Amazon.com, Inc.*, 2022 WL 974250, at *1 (D. Colo. March 31, 2022); *Weddle v. Williams*, 2019 WL 1620815, at *3 (D. Colo. Apr. 15, 2019); *Schell*, 2021 WL 1541712, at *3. Here, all three factors weigh in favor of transfer to the MDL court.

### A. The MDL Litigation Will Be Disrupted if the Subpoena Dispute is Not Transferred.

The MDL court has been addressing discovery issues in this litigation for over two years, resolving dozens of discovery and other disputes, including issues related to fraudulent receipts generally and Makereceipt.com specifically. *See* Uber MDL, Dkt. 3604 at 9-11, 14, 20 (motion for show cause discussing fraudulent receipts from makereceipt.com); Dkt. 3876 at 1 (show cause order finding that certain plaintiffs "have submitted non-bona-fide receipts. Some of these receipts show on their face that they were generated using websites designed for creating receipts, such as Makereceipt.com") (Exhibit B); *see also* Dkt Nos. 3784 at 6, 3972, 4137 at 6-7, 4440 (Exhibit B). In a recent order, the MDL court ordered certain Plaintiffs to provide further discovery, including to produce "any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or ***the website "Makereceipt.com.***" Dkt. 3876 at 2 (emphasis added).

Disputes over fraudulent "non bona fide receipts" are not going away in the MDL and are currently being litigated. *See, e.g.*, Uber MDL Dkt. No. 4294 (motion for show cause order and limited deposition regarding fraudulent receipts); Dkt. No. 4456 (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding

discovery and depositions about fraudulent ride receipts); Dkt. No. 4575 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts) (Exhibit B); *see also* Uber MDL Dkt. No. 4580 (Dec. 5, 2025) (motion regarding fraudulent PFS); Uber MDL Dkt. Nos. 4492, 4506-12, 4514-59, 4563-64, 4567, 4571, 4573-74, 4577-79, 4582-90 (Nov. 27, Dec. 3, 4, 5, 2025) (Plaintiffs' statements, briefs, and dismissals in response to show cause orders and motion to dismiss regarding PFS non-compliance and fraudulent ride receipts). Uber is about to file yet another motion for additional plaintiffs, and investigations continue in order to root out additional fraud; the Court has pending motions before it related to PFS compliance and fraudulent ride receipts. *See, e.g.*, Uber MDL, Dkt. 4580 (Dec. 5, 2025) (motion regarding fraudulent plaintiff fact sheets).

Failing to transfer would undermine the MDL court's ongoing and complex work in this area. As the MDL court itself explained, "[s]preading the work" of subpoena enforcement to different courts will "increase the risk of inconsistent results." Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *1.

The MDL status of the underlying litigation increases the risk of disrupting the litigation and the harm of inconsistent rulings—as numerous courts have uniformly held.[17] "[T]he MDL

---

[17] *See, e.g.*, *Syngenta Crop Prot. LLC v. Dorsey*, 2023 WL 6209686, at *2 (W.D.N.Y. Sept. 25, 2023) (noting that many courts "have transferred similar motions because of 'the posture and complexity of the underlying rulings, ... to avoid unnecessary delay[,] ....' This is especially so in MDL cases. The fact that the issuing court is overseeing multidistrict litigation is typically considered an exceptional circumstance warranting transfer, since such litigation is by its nature typically complex. Numerous cases so hold."); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 5659047, at *2 (W.D. Tex. Aug. 30, 2023) ("This Court, like others, finds that the complex MDL status of the underlying litigation is an exceptional circumstance weighing strongly in favor of transfer 'because the same concerns about orderliness and disruption that led to the consolidation

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

status of the underlying litigation is surely an 'exceptional circumstance' that weighs strongly in

favor of transfer to the Issuing Court under Rule 45(f), because the same concerns about orderliness

and disruption that led to the consolidation of actions as an MDL in the first place arise with respect

to pretrial disputes regarding subpoenas issued in the context of that complex litigation." *In re*

---

of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation.'"); *In re Pork Antitrust Litig.*, 2022 WL 1156726, at *2 (S.D. Ind. Apr. 19, 2022) (transferring under Rule 45(f) because "the MDL proceedings … would be significantly disrupted if the subpoena is adjudicated [by the issuing court]. Adjudicating the subpoena [by the issuing court] risks inconsistency in rulings and threatens the cohesiveness achieved by [MDL court] since the case was filed nearly four years ago."); *Estes v. 3M Co.*, 2020 WL 8254487, at *1 (M.D. Ala. Dec. 29, 2020), rep. and rec. adopted, 2021 WL 218729 (M.D. Ala. Jan. 21, 2021) (finding "that the judicial interest in avoiding disruption of the pending MDL outweighs any stated interest in resolving the motion to quash locally."); *United States v. 3M Co.*, 2020 WL 6587052, at *3 (S.D. Miss. Nov. 10, 2020) ("the underlying litigation … is complex multidistrict litigation … [and with bellwether] trials on the horizon, the Court would also risk upending the smooth litigation process in the" MDL court (citations omitted)); *In re Syngenta AG MIR162 Corn Litig. v. Syngenta AG*, 2020 WL 5988498, at *4 (D. Minn. Oct. 9, 2020) ("This dispute does not arise from a run-of-the-mill lawsuit, but an exceptional one. The [] case is part of a complex, years-long MDL action comprised of hundreds of federal lawsuits. The assigned MDL judges are tasked with globally managing discovery for thousands of related state court actions. It seems implausible that this court could identify and give proper weight to the implications [the subpoena enforcement] motion may have on the MDL Court's management of its cases. This fact alone arguably is enough to justify transfer."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 9065791, at *1 (S.D.N.Y. May 8, 2020) ("Courts have deemed the fact that a subpoena was issued in an MDL litigation to be "an 'exceptional circumstance' that weighs strongly in favor of transfer to" the court that issued the subpoena under Rule 45(f)."); *Mylan, Inc. v. Analysis Grp., Inc.*, 2018 WL 1904183, at *1 (D. Mass. Apr. 20, 2018) (transferring under Rule 45(f) "[i]n light of the complexity of the underlying [MDL litigation and] the risk of inconsistent orders if this Court was to rule on plaintiff's motion to compel"); *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915, at *2 (W.D. Tex. Apr. 27, 2017) (transferring under Rule 45(f) because, among other reasons, the underlying litigation "is complicated multidistrict litigation" so the "[u]niformity of discovery rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties"); *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) ("where the underlying action is a multidistrict litigation, transfer may be warranted to avoid piecemeal rulings by different judges, reaching different conclusions, in resolving identical disputes").

-17-

*Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (Brown Jackson, J.).

Similarly, the JPML—the judicial panel tasked by statute with transferring cases to MDL proceedings—has repeatedly found that subpoena enforcement proceedings should be transferred to the MDL court for resolution. *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2021 WL 5848067, at *2-*3 (U.S. Jud. Pan. Mult. Lit. Dec. 3, 2021); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2020 WL 12761382, at *2 (U.S. Jud. Pan. Mult. Lit. Dec. 15, 2020); *In re: Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (U.S. Jud. Pan. Mult. Lit. 2010); *In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, 2009 WL 10711650, at *1 (U.S. Jud. Pan. Mult. Lit. June 9, 2009). As the JPML has explained, a responding parties' "objections will require assessment of [the issuing party's] need for the discovery relative to the needs of the [MDL] litigation" and the MDL "court is well placed to resolve [a responding party's] challenges to [a] subpoena given its extensive familiarity with the factual and legal issues in" the MDL, "something that … cannot easily be shared or coordinated with the court" where compliance is required. *In re Zantac*, 2021 WL 5848067, at *2.

**B.    Respondents Will Not Suffer Undue Burden or Cost if the Subpoena Dispute is Transferred.**

Weighing strongly in favor of transfer is the absence of any burden on Respondents from transfer. In the Rule 45(f) transfer burden analysis, "the focus is not on the burden that would be imposed on the nonparty by compliance with the subpoena, but on the nonparty's interest in having the motion to compel decided in his home district." *Syngenta Crop Prot.*, 2023 WL 6209686, at

*2. Here, there is no burden on Respondents by this dispute being adjudicated by the MDL court rather than this Court.

Rule 45(f) provides that, upon transfer of a subpoena enforcement proceeding to the issuing court, "if the attorney for [the responding party] is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court." So there would be no burden on Respondents to retain separate counsel admitted in the Northern District of California.

Nor would there be any burden of travel expenses associated with transfer. MDL Judge Cisneros invited courts to transfer subpoena disputes to the MDL court and said that hearings "will be heard using Zoom to minimize the expense and burden on nonparties." Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *1 (N.D. Cal. July 27, 2024) (Exhibit A); *Atherton*, 2022 WL 974250, at *1 (emphasizing that any travel burden on subpoena recipient is mitigated because the issuing court "has shown flexibility in holding hearings telephonically"); *In re Pork Antitrust Litig.*, 2022 WL 1156726, at *2 (finding that the responding party "faces minimal burden from its motion to quash being transferred to the [MDL]" where "[n]o travel will be required, as the MDL Court already … set a hearing on Plaintiffs' motion to compel via Zoom videoconference"). Nor is the expense of document production any different based on which court adjudicates the subpoena enforcement dispute. *Visionworks of Am.*, 2017 WL 1611915, at *2 (transferring under Rule 45(f) because, among other reasons, the "place of compliance is of little moment in this instance").

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

### C.    The MDL Court is in the Best Position to Decide this Subpoena Dispute.

The MDL court is also in the best position to decide this subpoena dispute. In addition to presiding over discovery that is enormous in scale and extensive motion practice over the past two years, it has addressed and continues to address disputes over the PFS procedure and non bona fide receipts, including fraudulent receipts created by Respondents' services in particular. The MDL court is in the best position to understand the relevance, importance, and proportionality of the discovery sought in the subpoenas to Respondents, as well as the undue burden balancing analysis.

An issuing court's familiarity with complex litigation generally, and the particular issues involved in a subpoena enforcement dispute specifically, are weighed heavily in determining whether the issuing court is in a better position to rule on a subpoena dispute—especially when the underlying litigation is an MDL. *See supra*, § I-A (citing MDL filings regarding Plaintiff fact sheets and fraudulent, non-bona fide Uber ride receipts). As the MDL court here explained, "[t]his Court has been actively managing discovery in this MDL for" two years at this point, addressed dispositive motion practice, and "has had ample time to understand the nature of Plaintiffs' claims. The purpose the MDLs advance—just, as well as efficient, pretrial proceedings—will also be served by considering nonparties' interests in protecting themselves from undue burden and the disclosure of privileged material. … In light of these considerations, the Court finds that transferring such subpoena-related motions to this Court will significantly promote the just and efficient conduct of the actions that have been consolidated in this MDL."  Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *2.

-20-

As numerous courts have held, an issuing "MDL court is clearly in the best position to rule on [relevance and undue burden] objections in light of that court's familiarity with all related proceedings. That court is in the best position to determine whether this subpoena against [the responding party] should be enforced or not." *Syngenta Crop Prot. LLC*, 2023 WL 6209686, at *2.[18]

---

[18] *See also In re Nat'l Prescription Opiate Litig.*, 2023 WL 5659047, at *3 (finding "that the [MDL court] is in the best position to make rulings on the scope of discovery and evaluate the relevance of the requested documents. … The issues presented in the [non-parties'] Motion to Quash likely have been or will be presented to the [MDL court] in other discovery motions"); *United States v. 3M Co.*, 2020 WL 6587052, at *3 (transferring under Rule 45(f), noting that the MDL "has been in front of [the MDL judge] for more than a year and a half, making considerations of judicial economy weigh in favor transferring the [subpoena enforcement] case back"); *In re Syngenta AG MIR162 Corn Litig.*, 2020 WL 5988498, at *5 ("Here, the underlying MDL is complex. … [The MDL] Magistrate [has] deep familiarity with these issues … [which] would benefit the parties in resolving this dispute. … [T]he MDL Court is better suited to balance relevance and necessity of discovery against the need to protect [the responding party], while at the same time giving due consideration to the years of discovery it has overseen under the Coordination Order."); *Mylan, Inc.* 2018 WL 1904183, at *1 (transferring under Rule 45(f) in "the interests of judicial economy" where the MDL court "already has before it more than ten outstanding motions to compel in that MDL matter raising similar types of issues"); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 381–82 ("[T]he MDL Panel [JPML] apparently believed that the Issuing Court is particularly qualified to manage and conduct the pretrial proceedings and discovery in this complicated" MDL and "[t]he subpoena dispute centers on several points of contention that implicate the underlying MDL and would benefit from the application of [the MDL district and magistrate judges'] expertise," such as relevance to the MDL claims and the interpretation and sufficiency of the MDL court's protective order); *Visionworks of Am., Inc.*, 2017 WL 1611915, at *2 ("[T]he presiding [MDL] judge … is in a much better position than this Court to determine how crucial the documents requested from [the responding party] are to [the MDL defendant's] defense in the MDL case, which is a significant part of the balancing analysis a court needs to conduct to decide [the responding party's] undue burden objection. Finally, the evaluation of the efficacy of the underlying court's confidentiality order in protecting [the responding party's] interests is best made by that court and not this one."); *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (transferring under Rule 45(f) to MDL court, noting that "familiarity with the underlying action … is a compelling factor in 'highly complex' cases where the issuing court is aware of 'the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'").

Unlike courts that approach the underlying action cold, with "limited exposure to and understanding" of it, "judges who are presiding over [an] MDL are already 'knee-deep in the nuances of the underlying litigation,' and thus are clearly 'in a much better position … to evaluate relevance,'" and other issues implicated by a subpoena dispute. *In re Disposable Contact Lens Antitrust Litig*., 306 F. Supp. 3d at 381–82.

### D.      Respondents Agreed to Submit Any Subpoena Dispute to the MDL Court.

While the Court need not address the issue because there are exceptional circumstances justifying transfer under Rule 45(f), Respondents' previous agreement to submit any subpoena dispute to the MDL court weighs in favor of transfer.

Respondents repeatedly represented to Petitioners that they consented to presenting this subpoena dispute to the MDL court. During the conferral, Petitioners' counsel suggested to Respondents' counsel that the potential dispute be presented to the MDL court: "If we cannot reach agreement, we are prepared to go to the MDL Court. The Court has heard several subpoena disputes, as the docket reflects; and typically does so promptly."  Exhibit G at 1 (Nov. 20, 2025). In response, Respondents' counsel said unambiguously, ***"If Uber wants to proceed before [MDL Magistrate] Judge Cisneros, we are happy to do that …."***  Exhibit G at 1 (Nov. 21, 2025). Thereafter, Respondents' counsel made repeated references to submitting the dispute to the MDL court. *See id.* at 1, 10-13 (Nov. 21, Dec. 1, 2025). Respondents' last-minute change of position, on the eve of filing, substantially prejudiced Petitioners, who relied on the representation to brief the dispute pursuant to the MDL court's procedures and did not begin subpoena enforcement

proceedings before this Court, as they would have at an earlier date but for Respondents'

representations.

Respondents' unambiguous statements, and strategic last-minute about face, weigh

strongly in favor of transfer. *Cf. Martinez v. Bally's Louisiana, Inc*., 244 F.3d 474, 477 (5th Cir.

2001) (holding that representation by counsel to opposing counsel was a binding judicial

admission).

## II.    IN THE ALTERNATIVE, THE COURT SHOULD ORDER RESPONDENTS TO COMPLY WITH THE SUBPOENAS.

If the Court does not transfer this subpoena enforcement proceeding to the MDL court, it

should order Respondents to comply with the subpoenas in full because the discovery sought is

highly relevant, reasonable in scope, and would not impose an undue burden on Respondents.

Discovery from non-parties under Rule 45 is governed by the scope of discovery applicable

to non-parties in Rule 26(b)(1). *See Masters v. Gilmore*, 2009 WL 4016003, at *2 (D. Colo. Nov.

17, 2009). "Relevancy under Rule 26 is extremely broad." *Id.* An objecting party bears the burden

of showing the discovery sought is irrelevant or burdensome, and "cannot sustain this burden with

boilerplate claims that the requested discovery is oppressive, burdensome or harassing.'" *Id.* "The

fact that discovery is sought from a non-party is one factor the Court may weigh in determining

whether [a party] is entitled to enforcement of the subpoena. Courts are required to balance the

need for discovery against the burden imposed when parties are ordered to produce information or

materials, and the status of a person or entity as a non-party is a factor which weighs against

disclosure." *Id.* (citation omitted).

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                                    Case No. _____

**A.      The Discovery Petitioners Seek is Highly Relevant to the Underlying Litigation in the MDL.**

There is no serious dispute that the outstanding discovery—Stripe IDs for users of Respondents' paid services who used the services to create fraudulent Uber ride receipts, and names and IP addresses for users of Respondents' paid and free services who used the services to create fraudulent Uber ride receipts—are relevant. Evidence of fraud and forgery is relevant to the credibility and authenticity of Plaintiffs and the documents submitted by Plaintiffs. *See Wells v. Pikes Peak Acura, Ltd*., 2007 WL 2472062, at \*1 (D. Colo. Aug. 28, 2007) (granting motion to compel, finding discovery request for "all customer files … of financed customer deals at" car dealership relevant to alleged "falsifications, and inside notes directing the consumer fraud," "relevant concerning the practices that took place at the Defendant dealership and … relevant on the issue of impeachment," and were not unduly burdensome because "the privacy interests of the customer personal information contained these customer files can be protected by a protective order and by limiting" contact with customers); *cf. Peterson v. XPO Logistics, Inc*., 812 F. App'x 754, 755-60 (10th Cir. 2020) (holding that documents relevant to alleged forgery of emails were not protected from discovery by judicial proceeding privilege); *Atkinson v. Atchison, Topeka & Santa Fe Ry. Co*., 197 F.2d 244, 246 (10th Cir. 1952) ("The credibility of the witness is always relevant in the search for truth.").

Moreover, the MDL court has already recognized the relevance of fraudulent ride receipts submitted by MDL Plaintiffs by granting several of Petitioners' (MDL Defendants') motions for order to show cause why certain Plaintiffs who submitted fraudulent "non-bona fide ride receipts" should not have their cases dismissed with prejudice. *See* Uber MDL, Dkt. No. 3876 (show cause

order; granting motion at Dkt. 3604); Dkt. 3972 (show cause order; granting motion at Dkt. 3784); Dkt. 4440 (show cause order; granting motion at Dkt. 4137); Dkt. 4456 (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4575 (same) (Exhibit B); *see also* Dkt. 4456 (Nov. 21, 2025) (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Uber MDL Dkt. No. 4580 (Dec. 5, 2025) (motion regarding fraudulent PFS); Uber MDL Dkt. Nos. 4492, 4506-12, 4514-59, 4563-64, 4567, 4571, 4573-74, 4577-79, 4582-90 (Nov. 27, Dec. 3, 4, 5, 2025) (Plaintiffs' statements, briefs, and dismissals in response to show cause orders and motion to dismiss regarding PFS non-compliance and fraudulent ride receipts).

In fact, the MDL court in a show cause order specifically found that, of "[t]he 21 Plaintiffs [at issue in the motion who] submitted non-bona-fide receipt[,] [s]ome of these receipts show on their face that they were generated using websites designed for creating receipts, such as Makereceipt.com," and ordered further discovery of "any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or ***the website "Makereceipt.com.***"  *See* Uber MDL, Dkt. No. 3876 at 1-2 (Exhibit B) (emphasis added).

The Stripe IDs for users of Respondents' paid services who created fraudulent Uber ride receipts are relevant to uncovering identities of additional MDL Plaintiffs who have submitted

fraudulent Uber ride receipts in the MDL. The Stripe IDs are unique identifiers that can be associated with identifying information through discovery from Stripe. Respondents do not dispute that they possess Stripe IDs for these paid users. The Court should order Respondents to produce all Stripe IDs for anyone who used Respondents' services to create Uber ride receipts.

Likewise, the names and IP addresses for users of Respondents' free and paid services to create fraudulent Uber ride receipts are also relevant. Respondents do not disagree. Rather, Respondents' objections are based on their counsel's informal representation that Respondents do not possess this information—despite the statements on Petitioners' website that they do maintain names and collect IP addresses. *See* Terms and Conditions (Exhibit F[19]). But when asked to sign a declaration attesting to their counsel's representation, Respondents balked, saying that a declaration is not required by the Federal Rules of Civil Procedure. *See* Exhibit G at 12 (Nov. 21, 2025).

Courts routinely order both parties and non-parties to submit declarations to support representations about discovery and compliance with subpoenas. *See Brown v. Deputy No. 1*, 2014 WL 842946, at *6 (S.D. Cal. Mar. 4, 2014) (requiring non-party subpoena recipient to produce version of video with audio or file a declaration stating that no audio version exists); *McGillvary v. Riez*, 2025 WL 2962775, at *12 (D.N.J. Oct. 17, 2025) ("If … [the non-party subpoena recipient] locates no additional responsive records … it shall file a sworn declaration from an official with knowledge that describes its diligent review of the relevant records consistent with this Order.");

---

[19] Available at https://makereceipt.com/terms-conditions.php; https://expressexpense.com/terms-conditions.php; https://expensefast.com/terms-and-conditions/; https://docdesk.co/terms-and-conditions/; https://invoicewriter.com/terms-conditions.php.

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

*Intel Corp. v. Prot. Cap. LLC*, 2013 WL 12313348, at \*6 (S.D. Cal. Oct. 2, 2013) (requiring non-party subpoena recipient to file declaration describing search for documents and, "[i]f there are no responsive documents, an explanation …").[20]

Respondents' counsel's informal representations are not evidence, much less competent evidence, to show that they do not possess names and IP addresses of their users, especially in the face of evidence to the contrary on Respondents' websites. *See Simpson v. Jones*, 316 F. App'x 807, 811–12 (10th Cir. 2009) ("In the absence of other evidence, an unsworn allegation does not meet the evidentiary requirements of Fed.R.Civ.P. 56."); *United States v. Fletcher*, 2015 WL 1607980, at \*2 (W.D. Okla. Apr. 8, 2015) (granting summary judgment because representations of being denied discovery were not supported by "affidavit or declaration to" support the representations); *Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.*, 2012 WL 1059854, at \*9 (D. Kan. Mar. 28, 2012) ("[T]he court will not entertain a claim … that is based on nothing more

---

[20] *See also, e.g.*, *Manufacturers Alliance Ins. Co. v. Baker*, 2025 WL 951617, at \*3 n.6 (W.D. Okla. Mar. 28, 2025) (non-party); *United Auto. Ins. Co. v. Stucki & Rencher, LLC*, 2021 WL 2174373, at \*2 (D. Utah Feb. 8, 2021); *Chikhakli v. Samuels*, 2017 WL 9988971, at \*5 (W.D. Okla. Apr. 17, 2017) (non-party); *Leviton Mfg. Co. v. Nicor, Inc.*, 2006 WL 1305036, at \*3 (D.N.M. Jan. 6, 2006); *Lifetime Prods., Inc. v. Correll, Inc.*, 2004 WL 6034623, at \*4 (D. Utah Mar. 24, 2004); *Beverly v. Interior Elec. Inc. Nev.*, 2023 WL 355692, at \*3 (9th Cir. Jan. 23, 2023) (non-party); *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 3225909, at \*3 (N.D. Cal. June 28, 2024); *Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, 2024 WL 2191007, at \*4 (N.D. Cal. May 14, 2024) (non-party); *In re FirstEnergy Corp. Secs. Litig.*, 2023 WL 7319413, at \*2 (S.D. Ohio Nov. 6, 2023) (non-party), *withdrawn in unrelated part*, 2024 WL 1149873 (S.D. Ohio Mar. 12, 2024); *de Leon v. Clorox Co.*, 2020 WL 4584204, at \*9 (N.D. Cal. Aug. 10, 2020); *Melikhov v. Drab*, 2019 WL 5176911, at \*6 (M.D. Fla. July 1, 2019) (non-party); *Barker v. Insight Global, LLC*, 2019 WL 1974899, at \*2 (N.D. Cal. May 3, 2019) (non-party); *Del Sol v. Whiting*, 2015 WL 12090268, at \*1 (D. Ariz. Mar. 10, 2015) (non-party); *Wagner v. Mastiffs*, 2012 WL 5948325, at \*2 (S.D. Ohio Nov. 28, 2012); *Edwards v. Dwyer*, 2012 WL 75335, at \*2 (E.D. Mo. Jan. 10, 2012) (non-party); *Saewitz v. Lexington Ins. Co.*, 2006 WL 8433179, at \*4 (S.D. Fla. Apr. 10, 2006).

than unverified and unsworn representations ….”); *Cont'l Cas. Co. v. Multiservice Corp.*, 2008 WL 73345, at \*7 (D. Kan. Jan. 7, 2008) (“The court declines to simply rely on [] counsel's unsworn representations in the motion.”).

As to the names and IP addresses for users of Respondents' free or paid services to create Uber ride receipts, the Court should require Respondents to either: (1) produce these names and IP addresses or, in the alternative, (2) provide declarations attesting that they are not in possession, custody, or control of names or IP addresses for any users who have created Uber ride receipts (nor have they been in the past), explaining the steps taken to locate such names and IP addresses, and confirming that they have produced all available responsive information for each website, app, and service for all available time periods.

## B.    The Discovery Petitioners Seek is Reasonable in Scope.

The discovery Petitioners seek from Respondents is reasonable in scope. Respondents contended in conferrals that the request for Stripe IDs for users of Respondents' paid services who created fraudulent Uber ride receipts is overbroad because Petitioners had not identified which specific users they believed used Respondents' services and submitted fraudulent Uber ride receipts in the MDL. *See* Exhibit G at 15 (Nov. 21, 2025). This makes no sense. The reason Petitioners are seeking Stripe IDs is to identify those users in order to determine which Plaintiffs created fraudulent ride receipts. If Petitioners could already identify those MDL Plaintiffs, they would not need the Stripe IDs.

Nor does Respondents' assertion that the request is overbroad because Petitioners have not, at the time, identified MDL Plaintiffs from the email addresses of paid users that created fraudulent

Uber ride receipts, hold any water. As Petitioners explained, individuals creating fraudulent ride receipts in order to submit them in litigation are highly unlikely to use the same email address to sign up for the service as the email used for their Uber account. *See id.* at 14 (Nov. 21, 2025). Petitioners are not seeking the Stripe IDs of every paid user of Respondents' services. They are seeking only the IDs of users who used Respondents' services to create Uber ride receipts.

As to the names and IP addresses of those who used Respondents' free and paid services to create fraudulent Uber ride receipts, Respondents have not at this point asserted that this request is overbroad. *See id.* at 12-13, 17-18 (Nov. 21, Dec. 8, 2025). Nor would such an objection hold any merit. Respondents were able to efficiently identify paid users who created fraudulent Uber ride receipts and export a list of email addresses associated with those users. If data relating to names and IP addresses exists, there is no apparent reason why Respondents could not similarly export and produce that data for all users who created fraudulent ride receipts with little difficulty.

**C.    Respondents Have Not Articulated any Undue Burden from Complying with the Discovery Petitioners Seek.**

Complying with the subpoenas would not be an undue burden on Respondents. The undue burden analysis requires courts to "balance the need for discovery against the burden imposed when parties are ordered to produce information or materials." *Masters*, 2009 WL 4016003, at *2.

As explained above, the documents requested are highly relevant and critical to uncover Plaintiffs in the MDL who have rested their claims on fraudulent ride receipts. Respondents uniquely possess information about the identities of those who used their services to create fraudulent Uber ride receipts. The time period in the amended subpoena is limited to documents "from January 1, 2018 to present." *See* Exhibit E.

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                                    Case No. _____

Respondents have not explained in the conferrals why producing Stripe IDs would be any more time-consuming or costly than simply exporting that data. *See* Exhibit G at 2, 10-12, 15, 18 (Nov. 17, Nov. 21, Dec. 1, Dec. 8, 2025); Shortnacy Decl. ¶ 22. Instead, they put forward two reasons why they did not want to produce the Stripe IDs along with the other data they produced for paid users who created fraudulent Uber ride receipts.

First, they said that the Stripe IDs "are information created by another third party application when and if a user signs up for an account," and the IDs "do not belong to Express Digital Services," so they were "***uncertain*** as to whether the contract with Stripe or other legal issues preclude it from providing them." Exhibit G at 11 (Dec. 1, 2025) (emphasis added).

But "uncertain[ty]" about whether there are contractual restrictions on disclosing Stripe IDs is not sufficient when Respondents apparently have not actually bothered to check the contract. Even if the Stripe contract had a confidentiality clause prohibiting the disclosure of Stripe IDs (and Respondents only speculate that it might), such provisions routinely have exceptions allowing disclosure pursuant to subpoenas and other legal processes. *See, e.g. CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 2017 WL 9690400, at *2 (N.D. Iowa July 19, 2017) (ordering production, notwithstanding an "objection to producing the confidential settlement agreement … based on that agreement's confidentiality clause").

Further, any privacy objection is a red herring, as evidenced by Respondents' offer to provide a sample of Stripe IDs, *see* Exhibit G at 15 (Nov. 21, 2025); Shortnacy Decl. ¶ 23, and because the alphanumeric Stripe IDs do not disclose anyone's identity. Moreover, when it comes time for Stripe to provide the identities associated with these IDs, Stripe may do so pursuant to the

-30-

MDL court's Protective Order. In fact, the MDL court previously ordered Uber to disclose unique user IDs for hundreds of thousands of non-parties, including individuals who are allegedly survivors of incidents of sexual assault or misconduct. Uber MDL, Dkt. No. 2647 (Mar. 27, 2025) (ordering production while acknowledging the possibility that disclosure of the unique user IDs might reveal non-parties' identities). Respondents cannot expect to receive a different result for IDs associated with individuals who used their services to create non-bona fide Uber ride receipts. Further, Respondents have waived any privacy objections because they have already disclosed (without a confidentiality designation) email addresses for users who have created non-bona fide Uber ride receipts. *See* Exhibit G at 6, 10, 17 (Oct. 26, Dec. 1, Dec. 8, 2025); Shortnacy Decl. ¶¶ 18-19, 23. Additionally, Respondents notify their subscribers that they will disclose users' identifying information when "complying with legal process" and when "preventing fraud," which is precisely what the subpoena seeks here. *See* Terms and Conditions (Exhibit F).

Respondents later asserted in conferrals that production of Stripe IDs is "barred by the Stored Communications Act" (SCA). Exhibit G at 10 (Dec. 1, 2025). This assertion is misplaced for two reasons. First, the SCA does not apply to MakeReceipt, but rather applies only to "electronic communication services" (*e.g.*, AT&T, Gmail, Facebook Messenger) and "remote computing services" (*e.g.*, Dropbox, Google Drive, Microsoft 365). 18 U.S.C. § 2702(a)(1)-(2); *see* 18 U.S.C. § 2711(2) ("'remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communication system"); 18 U.S.C. § 2510(15) ("'electronic communication service' means any service which provides to

-31-

users thereof the ability to send or receive wire or electronic communications") (definition incorporated into SCA by 18 U.S.C. § 2711(1)).

The SCA "is *not* meant to provide a 'catch-all … to protect the privacy of stored internet communications.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 686 (N.D. Cal. Feb. 10, 2021) (emphasis in original); *see also, e.g.*, *Satcom Sol. & Res. LLC v. Pope*, 2020 WL 4511773, at *1, *7 (D. Colo. Apr. 20, 2020), *report and recommendation adopted*, 2020 WL 2188922 (D. Colo. May 6, 2020) (dismissing claim under SCA because "an online marketplace for commercial satellite communications equipment and services in Colorado" was not subject to SCA); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1023-24 (N.D. Cal. 2012) (noting that "the SCA has a narrow scope" and did not apply to LinkedIn in this case).

And even if Respondents were the type of provider covered by the SCA (which they are not), the SCA does not prevent disclosure of Stripe IDs, names, and IP addresses, but rather expressly allows disclosure of this non-content information. 18 U.S.C. § 2702(c)(6); *see also, e.g.*, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (noting that the SCA "expressly allow[s]" "the disclosure of personally identifiable information," including "subscribers' names, addresses, telephone connection records, length of service, telephone numbers, subscriber numbers, credit card numbers, and bank account numbers"); *MG Premium Ltd. v. Does 1-20*, 2023 WL 4681379, at *3 (C.D. Cal. July 7, 2023) (compelling non-party to provide "all user information … including but not limited to all payment information, billing and credit card information, and login/logout IP address(es)"); *Bodyguard Prods., Inc. v. Doe 1*, 2018 WL 8489600, at *2 (D. Haw. Nov. 19, 2018) (rejecting "argu[ment] that the production of the requested information would

-32-

violate the Stored Communications Act … [because] the subpoenas here seek only subscriber information and do not seek the content of communications"); *Chevron Corp. v. Donzinger*, 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013); *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at *3-4 (N.D. Cal. Mar. 21, 2013); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011).

Lastly, the cost of compliance does not present an undue burden. As Petitioners have told Respondents throughout the conferrals, Petitioners are willing to pay for reasonable expenses for producing responsive documents if Respondents' compliance is satisfactory.[21] *See* Exhibit G at 3, 5, 12, 15, 20 (Oct. 30, Oct. 31, Nov. 10, Nov. 21, Dec. 8, 2025). Thus, any argument as to the costliness of Respondents' production is baseless. Cost allocation can be determined once Respondents have fully complied with the subpoena, through the parties' negotiations and, if necessary, by submitting the issue for adjudication by this Court or the MDL court.

**D.    Respondents Failed to Timely Object to Petitioners' Subpoenas.**

While there are ample reasons for the Court to compel Respondents to comply with the subpoena, as set out above, it can do so for the additional reason that Respondents never served written objections and did not raise objections in the conferrals within the time period set out in Rule 45.

As clearly set out in Rule 45(d)(2)(B), "[w]ritten objections [to a subpoena duces tecum] may be served by the non-party, but the objection must be served before the earlier of the time

---

[21] Petitioners do not believe that *reasonable* expenses include Respondents' expenses associated with their continued noncompliance and motion practice to enforce the subpoena, which would not be necessary if Respondents complied with the subpoena.

-33-

specified for compliance or 14 days after the subpoena is served." *Bennett v. Galer*, 2023 WL 7109620, at *1 (M.D. Fla. Oct. 27, 2023) (citing Fed. R. Civ. P. 45(d)(2)(B)). "If no timely written objection is served, the person subject to the subpoena generally waives any objection to production as commanded by the subpoena." *In re Subpoenas Duces Tecum Issued by U.S. Dist. Ct. for Dist. of New Mexico*, 2006 WL 8443319, at *2 (D.N.M. Nov. 3, 2006); *see also Amica Mut. Ins. Co. v. Whois Priv. Prot. Serv., Inc.*, 2012 WL 1657728, at *3 (D. Colo. May 11, 2012) ("Courts generally have held that failure to object in writing to a subpoena duces tecum within the time specified in this rule constitutes a waiver of objections."). "Waiver occurs whether the objections are substantive or procedural in nature. Timely asserting one type of objection does not preserve other types of objections under Rule 45(c)(2)(B)." *Copeland v. C.A.A.I.R., Inc.*, 2024 WL 841215, at *4 (N.D. Okla. Feb. 28, 2024) (citations omitted); *Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 2135217, at *3 (D. Colo. May 25, 2010) ("The Court agrees with Petitioner that the [party's] tardiness in challenging the issuance of the subpoenas waives their present assertions of privilege").[22] There is good reason why "Rule 45(c)(2)(B) []require[s] the recipient of a subpoena

---

[22] *See also, e.g.*, *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("We believe that Rule 45(c)(2)(B) does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a "game." … [W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days …."); *Parker v. N. W.*, 2025 WL 565817, at *3 (E.D. Cal. Feb. 19, 2025) ("Failure to serve timely objections waives all grounds for objections."); *Bennett v. Galer*, 2023 WL 7109620, at *1 (M.D. Fla. Oct. 27, 2023); *Fit Tea LLC v. Alani Nutrition LLC*, 2023 WL 2351657, at *2 (M.D. Fla. Mar. 3, 2023); *Stephenson v. Taser Int'l, Inc.*, 2023 WL 1816866, at *3 (M.D. Fla. Feb. 8, 2023); *Axon Enter. Inc. v. Venjuris PC*, 2023 WL 1796436, at *3 (M.D. Fla. Feb. 7, 2023); *Erickson v. Builder Advisor Grp. LLC*, 2022 WL 3109587, at *3 (N.D. Cal. July 6, 2022), rep. and rec. adopted, 2022 WL 3109563 (N.D. Cal. Aug. 4, 2022); *Schoonmaker v. City of Eureka*, 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018); *Traut v. Quantum Servicing, LLC*, 2018 WL 1035134, at *6 (N.D. Tex. Feb. 23, 2018); *Nasufi v. King Cable, Inc.*, 2017 WL 3334110, at *4 (N.D. Tex. Aug. 4, 2017); *Fed.*

to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("[W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days ….").

Here, the initial subpoena to Express Digital Services, LLC was issued on September 23, but attempted service was unsuccessful on September 24 because the registered address was a private mailbox service, Pack & Ship. The amended subpoena to Express Digital Services, LLC was served to its counsel by consent on October 17—at Petitioners' counsel's request to add a time frame for the document requests and provide additional time to produce documents—with compliance due 14 days later on October 31, 2025. Respondents did not serve objections by the October 31 deadline. The subpoena to Shawn Graft was served on October 9, with compliance due 14 days later on October 23, 2025. Respondents did not serve objections by the October 23 deadline. *See* Shortnacy Decl. ¶¶ 5-7, 25-26.

The first communication by Respondents' counsel was on October 15, but the discussions with Respondents' counsel through October 31 were about *how* Respondents would comply with the subpoena, not *whether* they would comply. *See* Exhibit G at 4-9 (Oct. 15, Oct. 17, Oct. 20, Oct. 23, Oct. 26, Oct. 30, Oct. 31, 2025). Respondents made their limited production on October 26, and produced a corrected file on October 31—their only productions to date. *See* Shortnacy Decl. ¶¶ 16, 18, 26.

---

*Deposit Ins. Corp. v. Amos*, 2017 WL 11682626, at *2 (N.D. Fla. May 16, 2017); *Poturich v. Allstate Ins. Co*., 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015); *McCoy v. Sw. Airlines Co*., 211 F.R.D. 381, 385 (C.D. Cal. 2002).

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**                    Case No. _____

The first time Respondents' counsel offered any specific narrowing of the subpoena requests was on November 17 when they asked Petitioners to limit their request for Stripe IDs to specific identified individuals. *See* Exhibit G at 2. But even to date, Respondents still have not served any written objections to any of the subpoenas. *See* Shortnacy Decl. ¶ 26.

Respondents' "failure to object in writing to" Petitioners' "subpoena duces tecum within the time specified in" Rule 45(d)(2)(B), "constitutes a waiver of objections." *Amica Mut. Ins. Co.*, 2012 WL 1657728, at *3. Because any objections have been waived, the Court should order Respondents to comply in full.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully ask the Court to transfer this action to the U.S. District Court for the Northern District of California. In the alternative, Petitioners ask the Court to order Respondents to: (1) produce all Stripe IDs associated with all users who created an Uber ride receipt using one of Respondents' services, and (2) either produce all names and IP addresses associated with all users who created an Uber ride receipt using Respondents' services, or provide a declaration to Petitioners from each Respondent, stating under oath that they:

- do not store or maintain names of individuals that paid to use apps or services;

- do not store or maintain names of individuals that did not pay to use apps or services;

- do not not store or maintain IP addresses related to users who pay for apps or services;

- do not store or maintain IP addresses related to users who do not pay for apps or services;

- do not store or maintain IP addresses related to users who download the apps from the Apple Store or Google Play Store;

-36-

Case No. 1:25-mc-00121-NYW   Document 1   filed 12/22/25   USDC Colorado   pg 45
Case 3:23-md-03084-CRB   Document 3518-2   Filed 04/10/26   Page 46 of 324
of 45

- do not have any way to connect User IDs that they store and maintain to IP addresses related to users;

- have produced all available information responsive to the Subpoena for each of the websites, apps, and services;

- do not store or maintain any of the information already provided for the users who paid to use apps or services, for the users who do not pay for services; and

- confirm that they have all produced all information within their possession, custody, or control that is responsive to the Subpoena for all available time and from all sources.

Dated:  December 19, 2025

Respectfully submitted,

*/s/ Daniel E. Rohner*
Daniel E. Rohner, #27469
**SHOOK, HARDY & BACON L.L.P.**
1660 17th Street, Suite 450
Denver, CO 80202
Telephone: 303-285-5300
Facsimile: 303-285-5301
Email: drohner@shb.com

*Attorney for Petitioners Uber*
*Technologies, Inc., Rasier LLC, and*
*Rasier-CA, LLC's*

PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO
COMPEL COMPLIANCE WITH SUBPOENAS                                    Case No. _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**  25-mc-00121-NYW

**UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,**

> *Petitioners-Issuing Parties*,

**v.**

**EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL SERVICES, LLC,**

> *Respondents- Subpoenaed Parties*.

---

*Subpoena relates to: In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation, Case No. 3:23-md-03084-CRB, MDL No. 3084, pending in the U.S. District Court for the Northern District of California before Hon. Charles R. Breyer*

---

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

## DECLARATION OF MICHAEL B. SHORTNACY

I, Michael B. Shortnacy, declare pursuant to 28 U.S.C. § 1746:

1.      I am over the age of 18 and am a resident of Los Angeles, California. I respectfully submit this declaration in Support of Petitioners Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLC's (collectively, "Petitioners") Motion to Transfer Proceeding to Enforce Subpoenas Duces Tecum Issued by the U.S. District Court for the Northern District of California to the Issuing Court or to Compel Compliance with Subpoenas, regarding the Subpoenas issued by the U.S. District Court for the Northern District of California in the matter *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB, MDL No. 3084, pending in the before Hon. Charles R. Breyer (the "Uber MDL"), directed to and served upon Respondents Express Digital Services, LLC and Shawn Graft d/b/a Express Digital Services, LLC

2.      I am a partner at the law firm of Shook, Hardy & Bacon L.L.P., representing Respondents in the Uber MDL. I am a member in good standing of the Bar of the State of California, the Bar of the State of New York, and the Bar of the District of Columbia. I make this declaration based upon matters within my own personal knowledge. If called as a witness, I could and would competently testify to the matters set forth herein.

3.      Attached as Exhibit A is a true and accurate copy of Docket number 752 in the Uber MDL, an order by Magistrate Judge Lisa J. Cisneros captioned "Order Re: Nonparty Subpoena Disputes," dated July 27, 2024, and reported on the Westlaw platform at 2024 WL 3559730.

-2-

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS

Case No. _____

4.      Attached as Exhibit B are true and accurate copies of Docket numbers 3604, 3784, 3876, 3972, 4137, 4294, 4440, 4456, 4569, and 4575 in the Uber MDL, orders entered by District Judge Charles R. Breyer on September 9 and 22 and November 19, 2025, and motions filed by Defendants in the MDL on July 30, August 28, October 13, November 3 and 21, and December 5, 2025. These motions and orders relate to the submission of fraudulent Uber ride receipts, including those created using Respondents' services, in the Uber MDL.

5.      Attached as Exhibit C is a true and accurate copy of the subpoena issued and served on Express Digital Services, LLC, dated September 23, 2025, and an Affidavit of Due Diligence for the attempted service of this subpoena. Attempted service was unsuccessful on September 24, 2025 because the registered address was a private mailbox service, Pack & Ship. Petitioners had to subpoena Pack & Ship to learn the owner of the mailbox was Shawn Graft.

6.      Attached as Exhibit D is a true and accurate copy of the subpoena issued and served on Shawn Graft d/b/a Express Digital Services, LLC, dated October 9, 2025 and served on that same date.

7.      Attached as Exhibit E is a true and accurate copy of the subpoena issued and served on Express Digital Services, LLC, dated October 17, 2025 and served on that same date. This second subpoena to Express Digital Services, LLC was served at the request of counsel for Respondents and served on counsel for Respondents by email with Respondents' consent.

8.      Attached as Exhibit F are true and accurate copies of the Terms and Conditions for Respondents' online and smartphone app services, as posted on Respondents' websites. The Terms

-3-

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

Case No. _____

and Conditions for Respondents' service MakeReceipt are found at "https://makereceipt.com/terms-conditions.php." The Terms and Conditions for Respondents' service ExpressExpense are found at "https://expressexpense.com/terms-conditions.php." The Terms and Conditions, titled "Site Contents, Ownership, and Use Restrictions," of Respondents' service ExpenseFast are found at "https://expensefast.com/terms-and-conditions/." The Terms and Conditions for Respondents' service DocDesk are found at "https://docdesk.co/terms-and-conditions/." The Terms and Conditions for Respondents' service InvoiceWriter are found at "https://invoicewriter.com/terms-conditions.php." The copies of these terms and services included in Exhibit F were collected from Respondents' websites on December 18, 2025.

9.      Attached as Exhibit G are true and correct copies of three email chains between Michael Shortnacy, Adam Shoshtari, and Jay Haider (counsel for Petitioners) and Kelly Twigger (counsel for Respondents), with emails dated: (1) October 15, October 17, October 20, October 23, October 26, October 30, October 31, November 4, November 10, November 17, November 19, November 20, and November 21, 2025; (2) November 21, November 26, and December 1, 2025; and (3) December 2, December 3, December 5, December 6, December 7, and December 8, 2025.

**MDL Plaintiffs' Use of Respondents' Services to Create Fake Uber Ride Receipts**

10.      On information and belief, Respondents' services include MakeReceipt.com, ExpressExpense.com, ExpenseFast.com, Docdesk.co, InvoiceWriter.com, Make Receipt app, ExpressExpense app (collectively, "MakeReceipt"). As Respondents' counsel stated in a

-4-

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS

Case No. _____

November 17, 2025 email regarding the difference between free and paid accounts, "any receipts created from my client's applications [for free users] would carry a watermark that says either 'Become a member to remove watermark' or 'For pro or enterprise members only.'" *See* Ex. G at 2 (Nov. 17, 2025). MakeReceipt's website further states, "If you choose to become a member, the receipt watermark will be removed." https://makereceipt.com/; *see also* https://expressexpense.com/ ("Members enjoy watermark-free receipts for a professional look.").

11.    The front page of the Expense Fast website ("https://expensefast.com/") states, "For entertainment, research and educational purposes ONLY," and the next line immediately below, "NOT intended for use for fraudulent purposes," demonstrating Respondents' knowledge that their services could be used for fraudulent purposes. The front page of the Expense Fast website also includes a list of four links on the center-right side, one of which reads "Make Fake Receipts." A true and accurate screenshot of the front page of the Expense Fast website, taken on December 16, 2025, is below:

-5-

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

Case No. _____



-6-

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

Case No. _____

12.    The Expense Fast website ("https://expensefast.com/uber-receipt-generators-are-useful-for-so-many-reasons/") has an article dated July 24, 2024 titled "Uber Receipt Generators are Useful for So Many Reasons." A true and accurate screenshot of that article, taken on December 15, 2025, is below:



13.    On the Make Receipt website ("www.makereceipt.com/faq.php"), under the FAQ section, under the question "Can I use the Walmart or Target receipts for returns at the store?," Respondents state, "We do not recommend attempting to use any of our receipt templates for fraudulent purposes," demonstrating Respondents' knowledge that their services could be used for fraudulent purposes.

14.    The Make Receipt website ("https://makereceipt.com/receipt-templates/taxi/uber-receipt/") has a template for creating fake Uber ride receipts, with the heading "Uber Receipt

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

Case No. _____

Generator – Create & Customize Online." A true and accurate screenshot of that article, taken on

December 15, 2025, is below:



15.      Multiple Plaintiffs in the Uber MDL submitted receipts in support of their claims

bearing the MakeReceipt watermark, and another MDL Plaintiff submitted a receipt without a

watermark but that also bears indicia that it was generated using MakeReceipt. *See* Uber MDL,

Dkt. No. 3604 at 3-4. On information and belief, individuals can easily remove watermarks with a

variety of readily accessible tools.

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

Case No. _____

**Respondents' Noncompliance with Subpoenas, Which Seek the Identities of Users**

**Who Have Created Fake Uber Ride Receipts**

16.    The first communication between counsel for Petitioners and counsel for Respondents was on October 15, 2025. Counsel for Petitioners and counsel for Respondents conferred by videoconference on October 16, November 6, and November 21, 2025. I have personal knowledge of those discussions because I participated in those conferrals.

17.    On the October 16, 2025 conferral, counsel for Petitioners and Respondents discussed Respondents' compliance, and Petitioners' service of an amended subpoena that added a limitation on the timeframe for the documents to be produced by Respondents and provided Respondents 14 days to comply.

18.    On October 26, 2025, Respondents produced six spreadsheets for Respondents' various services, containing data relating to requests to produce Uber receipts by paid users. On October 31, 2025, Respondents made a supplemental production because, according to Respondents, the spreadsheet for Expense Fast had incorrect information. The supplemental production provided a replacement file for one of the previously-produced spreadsheets.

19.    The data produced by Respondents related only to users of their paid services. This data was not sufficient to permit MDL Defendants (Petitioners) to match MDL Plaintiffs with users of Respondents' applications or websites. For instance, Respondents produced email addresses used to create non-bona fide Uber ride receipts, which, on information and belief, are not the same email addresses MDL Plaintiffs used to create their Uber accounts—and therefore are of no use in

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS

Case No. _____

most instances in identifying MDL Plaintiffs who used Respondents' services to create fraudulent Uber ride receipts.

20.     On the November 6, 2025 conferral, counsel for Petitioners and Respondents discussed Respondents' compliance, including the potential differences in responsive documents for paid users and free users. Counsel for Petitioners stated that they would discuss with their client the possibility of paying for Respondents' reasonable compliance costs.

21.     On the November 21, 2025 conferral, counsel for Petitioners and Respondents discussed Respondents' compliance, including Petitioners' request for Stripe IDs.

22.     During the conferrals, Respondents acknowledged that they are withholding Stripe IDs for individuals who used Respondents' paid services to create Uber ride receipts. Stripe IDs are unique alphanumeric identifiers associated with users who have paid for Respondents' services. Stripe is a payment processor (*see* stripe.com) that could, on information and belief, use those IDs to identify those users (pursuant to a subpoena and court order, if necessary). Respondents refused to produce this information. Respondents have not explained in the conferrals why producing Stripe IDs would be any more time-consuming or costly than simply exporting that data.

23.     Counsel for Respondents offered, on November 21, 2025, to produce only the Stripe IDs for transactions in their produced data for which there is evidence that the user submitted a receipt in the Uber MDL that the user generated using Respondents' services. *See* Ex. G at 15 (Nov. 21, 2025). On November 21, 2025, Petitioners' counsel showed Respondents' counsel redacted "receipts" that MDL Plaintiffs have submitted in the Uber MDL that bear Respondents'

-10-

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING
TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS

Case No. _____

watermark, which "receipts" are also publicly available as part of Defendants' first motion for order to show cause regarding non-bona fide ride receipts. *See* Uber MDL, Dkt. 3604 at 3 (Exhibit B).

24.    Respondents have not produced names and IP addresses associated with users for its free or paid services. Respondents' counsel has said in conferrals that Respondents do not possess names and IP addresses for users of their free or paid services. Nevertheless, and curiously, Respondents have refused to provide declarations attesting that they do not possess, and have not at any time possessed, names and IP addresses for users of their free or paid services.

25.    At no point have Respondents served any written objections to Petitioners' subpoenas.

26.    The conferrals by email and videoconference through October 31, 2025 were about how Respondents would comply with the subpoena, not whether they would comply. The first time Respondents' counsel offered any specific narrowing of the subpoena requests was on November 17, 2025 when they asked Petitioners to limit their request for Stripe IDs to specific identified individuals.

27.    Counsel for Respondents repeatedly and consistently represented, both in writing and orally during conferrals, that Respondents consented to having Judge Cisneros of the MDL court resolve this subpoena dispute. For example, on November 21, counsel for Respondents stated in writing, "**If Uber wants to proceed before Judge Cisneros, we are happy to do that . . . .**" Ex. G at 1 (Nov. 21, 2025) (emphasis added); *see also, e.g.*, *id.* ("If instead you prefer to present

**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

Case No. _____

the matter to Judge Cisneros, any hearing will need to be set after the Thanksgiving holiday at this point."); *id.* at 12-13 (Nov. 21, 2025) ("We will plan to seek those costs in front of Judge Cisneros if we cannot come to an agreement."); *id.* at 10 (Dec. 1, 2025) ("That's a very simple relevance/proportionality argument that we can have with Judge Cisneros as needed."); *id.* ("We will seek to pursue my client's expenses directly with Judge Cisneros.").

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Michael B. Shortnacy*

Executed on December 19, 2025 in Los Angeles, California.

---

-12-

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS

Case No. _____

# Exhibit A

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

This Document Relates To:

ALL CASES

Case No.  23-md-03084-CRB   (LJC)

**ORDER RE: NONPARTY SUBPOENA DISPUTES**

Re: Dkt. No. 598

In this multidistrict litigation (MDL) proceeding, there are several pending nonparty subpoenas served by Plaintiffs requesting documents only where compliance with the subpoena is required outside of this District.  The parties previously filed a joint letter addressing "whether the Court, pursuant to the JPML [Judicial Panel on Multidistrict Litigation] order, has authority to resolve nonparty requests for relief from the subpoenas where compliance is required outside of" the Northern District of California "and any proposals for streamlining the presentation of such disputes."  Dkt. No. 598.  Having considered the parties' submission and arguments, and all relevant authorities, the Court holds that it will hear motions to quash, modify, or enforce document-only subpoenas where (1) the responding nonparty consents to having the dispute filed in the first instance and adjudicated in this Court; (2) the JPML has transferred the motion to this Court; or (3) the district in which compliance is required has transferred the motion to this Court pursuant to Rule 45(f) of the Federal Rules of Civil Procedure.  The Court also finds, for the reasons explained below, that the transfer of subpoena-related motions to this Court will serve the goals of justice, judicial economy, and efficiency in this MDL.  Motions that meet the criteria above will be heard using Zoom to minimize the expense and burden on nonparties.

United States District Court
Northern District of California

## I.   DISCUSSION

Given the proliferation of subpoena-related disputes in this litigation, the Court must address the extent of its authority, as the MDL transferee court, to decide motions to quash, motions to modify, and/or motions to enforce document subpoenas.  The Court begins by first reviewing the procedures established by Rule 45, which governs motions to quash, modify, or enforce a subpoena.  A motion to quash or modify a subpoena must be brought in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3).  A motion to enforce a subpoena must also be brought in the court where compliance is required.  *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.").  However, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).  "The Advisory Committee Notes to Rule 45 make clear that the intention of the rule is to protect nonparties by enabling the local resolution of disputes about subpoenas, but also that 'transfer to the court where the action is pending is sometimes warranted.'" *Dr. Muhammad Mirza and Allied Medical and Diagnostic Services, LLC v. Yelp, Inc.*, No. 21-MC-80077-TSH, 2021 WL 2939922, at *2 (N.D. Cal. July 13, 2021) (quoting Fed. R. Civ. P. 45, Advisory Committee Notes on 2013 Amendments).  "'Rule 45(f) provides that the court where compliance is required may do so' when protection of nonparties is unnecessary, as when nonparties subject to the subpoena consent to transfer to an issuing court." *Id.*

Several courts have recognized, however, that the statute which governs MDL proceedings, 28 U.S.C. § 1407, "provides different rules for discovery." *In re: Zantac (Ranitidine) Products Liability Litigation*, No. 20-MD-2924, 2022 WL 168574, at *2 (S.D. Fla. Jan. 19, 2022).  "Where pretrial proceedings have been consolidated by the judicial panel on multidistrict litigation . . . '[s]uch coordinated or consolidated pretrial proceedings shall be conducted by a judge . . . to whom such actions are assigned . . .'" *In re Welding Rod Prod. Liab. Litig.*, 406 F. Supp. 2d 1064, 1066 (N.D. Cal. 2005) (quoting 28 U.S.C. § 1407(b)).  "Further, that

judge 'may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.'" 28 U.S.C. § 1407(b). Under Section 1407(b), "an MDL court has the authority to enforce deposition subpoenas even if the court does not sit in the district where the deposition would be held." *In re: Zantac (Ranitidine)*, 2022 WL 168574, at *2 (citing *HCA, Inc. v. U.S. ex rel. Pogue*, No. 3:02-MC-0047, 2002 WL 31953748, at *3 (M.D. Tenn. Nov. 21, 2002)). On the other hand, "[c]ourts are split on the question of whether § 1407(b) also authorizes an MDL court to enforce a documents-only subpoena requiring compliance in a different district." *Id.* Some courts have found that "the rationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the conclusion that Section 1407(b)'s grant of authority applies to both deposition subpoenas and documents-only subpoenas." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 469, n.6 (6th Cir. 2006). Others have held that Section 1407(b) "expands a transferee court's discovery powers only to pretrial depositions." *VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002). This Court finds persuasive the reasoning in *U.S. ex rel. Pogue* and *In re Welding Rod Products Liability Litigation*, and holds that, pursuant to 28 U.S.C. § 1407(b), it may adjudicate motions to quash, modify, and/or enforce document-only subpoenas that require compliance outside the issuing district as part of its authority to conduct consolidated pretrial proceedings in this multidistrict litigation.

Next, the Court determines in which circumstances it would be permissible for it to exercise such authority to resolve out-of-district subpoena related disputes. First, Rule 45(f), as described above, provides that subpoena-related motions may be transferred by the court where compliance is required when the person or entity subject to the subpoena consents, or if the court where compliance is required finds exceptional circumstances. Fed. R. Civ. P. 45(f). If the nonparty consents, then the subpoena-related dispute may also be filed in the first instance in this Court. *See U.S. ex rel. Pogue*, 444 F.3d at 469 (noting that Section 1407(b) gave the MDL court "jurisdiction to entertain [Pogue]'s motions to compel compliance with his subpoenas duces tecum" filed in the MDL court). Second, where a subpoena-related motion has been filed in the district where compliance is required, the JPML also has the authority under 28 U.S.C. § 1407(a)

United States District Court
Northern District of California

to transfer the dispute to the MDL court.  Indeed, the parties have proposed that litigants may seek to transfer subpoena-related motions to this Court through the JPML transfer process.  They cite to *In re Fosamax Prod. Liab. Litig.*, No. MDL 1789, 2009 WL 10711650, at \*1 (U.S. Jud. Pan. Mult. Lit. June 9, 2009) and *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. MDL 2924, 2020 WL 12761382, at \*2 (U.S. Jud. Pan. Mult. Lit. Dec. 15, 2020), two JPML orders transferring subpoena-related actions to an MDL court.  In an MDL proceeding, nothing in Rule 45 limits the jurisdiction of the transferee court to decide a discovery dispute that has been transferred by the JPML.  Accordingly, this Court will decide motions to quash, enforce, or modify document-only subpoenas when the nonparty subject to the subpoena consents, or when the motion has been transferred to this Court by the JPML or the court in the district where compliance is required.[1]

Finally, the Court considers whether "just and efficient" proceedings will be promoted by the transfer of subpoena-related motions from districts across the country to this MDL court.  This MDL commenced on October 4, 2023, and thereafter this Court issued fifteen pretrial orders.  On February 15, 2024, Plaintiffs filed their Master Long-Form Complaint against Defendants.  Dkt. No. 269.  This Court has been actively managing discovery in this MDL for 8 months and has resolved numerous discovery disputes.  Furthermore, there are pending motions to dismiss, and this Court has had ample time to understand the nature of Plaintiffs' claims.  If subpoena-related discovery disputes are heard in multiple districts across the country, that will require multiple judges to get up to speed on the nature of the case.  Spreading the work will also increase the risk of inconsistent results.  A recent status report indicated that there are potentially numerous subpoena-related disputes.  *See* Dkt. No. 599.  The purpose the MDLs advance—just, as well as efficient, pretrial proceedings—will also be served by considering nonparties' interests in protecting themselves from undue burden and the disclosure of privileged material.  "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Maplebear Inc. v. Uber Technologies, Inc.*, No. 21-mc-80007-SK, 2021 WL

---

[1] The Court notes that nonparties did not participate in the briefing that led to this Order.  Any nonparty, however, will have the option to respond to, and oppose, a motion to transfer filed before the JPML or the district court where compliance is required.  *See* Rules 6.1, 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation; Fed. R. Civ. P. 45(f).

1845535, at *1 (N.D. Cal. Mar. 23, 2021) (citation omitted); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).  In light of these considerations, the Court finds that transferring such subpoena-related motions to this Court will significantly promote the just and efficient conduct of the actions that have been consolidated in this MDL.

**IT IS SO ORDERED.**

Dated: July 27, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

5

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com
Jessica Davidson (Admitted *Pro Hac Vice*)

Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**MOTION FOR ENTRY OF (1) AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE AND (2) A CASE MANAGEMENT ORDER ADDRESSING CERTAIN PLAINTIFFS WHO HAVE NOT SUBMITTED RECEIPTS**<br><br>Judge:     Hon. Charles R. Breyer<br>Date:     September 19, 2025<br>Time:     10:00 a.m.<br>Courtroom:  6 – 17th Floor |

NOTICE OF MOTION AND MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

## NOTICE OF MOTION AND MOTION FOR ENTRY
## OF TWO ORDERS RELATED TO RECEIPTS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on September 19, 2025 at 10:00 a.m. before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, Uber) will and hereby do move for Entry Of (1) An Order To Show Cause Why Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed With Prejudice And (2) A Case Management Order Addressing Certain Plaintiffs Who Have Not Submitted Receipts.

This motion is made pursuant to Federal Rule of Civil Procedure 37(b) and seeks relief under that Rule and the Court's inherent authority. Uber seeks (1) entry of an order to show cause why the claims of those Plaintiffs listed in the Proposed Order to Show Cause who have submitted non-bona-fide receipts should not be dismissed with prejudice; and (2) entry of a case management order requiring those Plaintiffs listed in the Proposed Case Management Order who have not produced bona fide receipts to do so if they seek to proceed with their lawsuits, or provide a detailed, non-boilerplate reason why they cannot, or else face dismissal.

This motion is based on this notice, the accompanying memorandum of points and authorities, the declarations of Laura Vartain, Brett D. Harrison, Chad Dobbs, and Kristin Fournier, and their accompanying exhibits, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing.

A meet and confer certification is being filed herewith.

DATED: July 30, 2025                              Respectfully submitted,


                                                  */s/ Laura Vartain Horn*
                                                  _____

1

NOTICE OF MOTION

Case No. 3:23-md-03084-CRB (LJC)

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac
Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**

2

NOTICE OF MOTION

Case No. 3:23-md-03084-CRB (LJC)

255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

---

3

NOTICE OF MOTION

Case No. 3:23-md-03084-CRB (LJC)

# **TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT ................................................................................ 1

II.     BACKGROUND ................................................................................................... 2

        A.      PTO #5 ....................................................................................................... 2

        B.      NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS...... 2

III.    ARGUMENT ...................................................................................................... 10

        A.      THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B)
                TO ORDER PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE
                RECEIPTS TO SHOW CAUSE WHY THEIR CLAIMS SHOULD NOT BE
                DISMISSED WITH PREJUDICE. ....................................................... 10

        B.      THE COURT SHOULD ENTER A NEW CASE MANAGEMENT ORDER
                GOVERNING RIDE RECEIPTS ...................................................... 14

IV.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) ...................................................................................10

*Anheuser-Busch, Inc. v. Nat. Beverage*,
69 F.3d 337 (9th Cir. 1995) .......................................................................................11

*In re Cook Med., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*,
MDL No. 2440, 2018 WL 4698953 (S.D. W. Va. Sept. 28, 2018) ...........................15

*In re Deepwater Horizon*,
907 F.3d 232 (5th Cir. 2018) .....................................................................................13

*Freeman v. Wyeth*,
764 F.3d 806 (8th Cir. 2014) .....................................................................................15

*Garcia v. Berkshire Life Ins. Co. of Am.*,
569 F.3d 1174 (10th Cir. 2009) .............................................................................11, 13

*IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*,
No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
2009) ..................................................................................................................11, 12, 13

*Malone v. U.S. Postal Serv.*,
833 F.2d 128 (9th Cir. 1987) .................................................................................11, 12, 13

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ...............................................................................2, 11, 15

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
727 F.2d 1470 (9th Cir. 1984) ...................................................................................1, 10

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ......................................................................12, 13

*Singh v. Hancock Nat. Res. Grp., Inc.*,
No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb.
21, 2017) ....................................................................................................................11, 13

*Thompson v. Hous. Auth. of City of L.A.*,
782 F.2d 829 (9th Cir. 1986) .....................................................................................10

*United States v. W.R. Grace*,
526 F.3d 499 (9th Cir. 2008) .....................................................................................15

ii

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

*Wyle v. R.J. Reynolds Indus.*,
  709 F.2d 585 (9th Cir. 1983) ...............................................................................................10

*Yourish v. Cal. Amplifier*,
  191 F.3d 983 (9th Cir. 1999) ...............................................................................................11

**Rules**

Fed. R. Civ. P. 16(f)...............................................................................................................10

Fed. R. Civ. P. 16(f)(C)..........................................................................................................10

Fed. R. Civ. P. 37...............................................................................................................10, 11

Fed. R. Civ. P. 37(b)(2)(A)(v) ...............................................................................................10

Fed. R. Civ. P. 37(b)(2)(C) .......................................................................................................1

Fed. R. Civ. P. 60(b) ................................................................................................................4

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

## I.      SUMMARY OF ARGUMENT

Nothing is more critical to the integrity of our judicial system than honesty. Unfortunately, Uber has discovered that certain Plaintiffs in this MDL proceeding have submitted non-bona-fide receipts to support their lawsuits. Other Plaintiffs have failed to provide any ride receipts in support of their claims, raising the question in some circumstances whether the ride even occurred. Accordingly, Uber respectfully moves for an order to show cause why the claims of those Plaintiffs who have submitted non-bona-fide receipts should not be dismissed. Uber also seeks entry of a case management order requiring Plaintiffs who have not produced bona fide receipts to do so if they seek to proceed with their lawsuits, or else face dismissal.

As the Ninth Circuit has recognized, dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (upholding dismissal under Fed. R. Civ. P. 37(b)(2)(C) where "[p]ursuant to a discovery order, [a party] produced documents" that were "falsified," including "photocopies of checks"). Here, the Plaintiffs discussed in Section II.B either: (1) generated phony receipts using websites designed for that purpose (*e.g.*, Makereceipt.com); (2) produced receipts containing evidence of alterations including glaring math errors and formatting inconsistencies; (3) provided receipts that contained alterations from an actual receipt (*e.g.*, the actual receipt shows a female driver and the receipt produced in this litigation is otherwise identical but altered to show a male driver); or (4) produced two different versions of the same receipt, both altered from the original. The Court should issue an order to show cause why these plaintiffs' claims should not be dismissed with prejudice.

In addition to the Plaintiffs in the MDL who have altered their receipts, over 300 Plaintiffs in the MDL have failed to produce any ride receipts whatsoever. Of those, this motion focuses on 90 who have either provided no reason for not submitting a receipt or have provided only a boilerplate reason. For these 90 Plaintiffs, Uber respectfully requests that the Court enter Uber's proposed case management order, requiring that Plaintiffs either (1) produce a receipt for the trip

1

that is the basis for their allegations (and verify under penalty of perjury that the receipt is authentic and they took the trip covered by the receipt); (2) provide a detailed, non-boilerplate reason why no receipt is available and the reasonable search efforts taken to identify such receipt (also under penalty of perjury); or (3) be dismissed with prejudice.[1] *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226, 1240 (9th Cir. 2006).

## II.    BACKGROUND

### A.    PTO #5

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" PTO #5, ECF 175, ¶ 4; *see also* PTO #10, ECF 348, ¶ 2.

### B.    NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS

At least 21 Plaintiffs listed in this Section II.B (and Exhibit 1 of the proposed order to show cause) have violated the Court's Order by submitting receipts that are not bona fide. There are likely to be additional such Plaintiffs, including but not limited to Plaintiffs who purchased the "Pro" or "Enterprise" membership from Makereceipt.com (discussed below), which makes receipt alteration more difficult to detect. This motion addresses only certain Plaintiffs whose alterations Uber has been able to identify through its manual, line-by-line review process thus far.

#### 1.    Fake Receipts Generated Through Third-Party Websites

Makereceipt.com is a website that assists users in creating phony receipts. Although it advertises itself as "[t]rusted by thousands of people in 84 countries," Makereceipt.com used fictitious names and addresses in its California Secretary of State filings. Vartain Dec. ¶2.[2]

With just a few basic inputs, Makereceipt.com can generate receipts that otherwise appear to have been generated by Uber (or other companies). Harrison Decl. at 3. The website offers users different levels of membership, including "Standard," "Pro," and "Enterprise" plans:

---

[1] Although not addressed in this Motion, Uber does not concede that the reasons for not providing a receipt offered by all of the remaining Plaintiffs are valid.

[2] The company that owns the Makereceipt.com website (Express Digital Services LLC) no longer resides at its registered address - 340 S. Lemon Ave., Ste. 1544, Walnut, CA 91789-2706. Vartain Decl., Par. 2. The registered agent and only officer listed—Justin Taster—is not a real person. *Id.*

2

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS

Case No. 3:23-md-03084-CRB (LJC)



Makereceipt.com's Plans available at https://makereceipt.com/signup-now.php

The FAQ section in the website states: "[Q:] Help! I am a member and still see watermarks on my receipt. [A:] Many of our receipts are for PRO or Enterprise members only. You will see a watermark stating 'For Pro or Enterprise Members Only' on these receipts. . . . Standard members need to upgrade their account from the ACCOUNT page to access these PRO-level receipts." In other words, users who buy the lower-cost Standard Plan get receipts with watermarks, and users who buy Pro and Enterprise Plans get receipts without watermarks. Harrison Decl. at 3.

The receipts below, submitted by Plaintiffs with MDL ID 2812 and MDL ID 1914, include watermarks stating "FOR PRO OR ENTERPRISE MEMBERS ONLY," indicating that the receipts were generated on Makereceipt.com using the Standard Plan. *Id.* at 12–13, 30–31.

**Ex. 1-A (MDL ID 2812)[3]**          **Ex. 2-A (MDL ID 1914)**

          

---

[3] The 22 receipt exhibits are attached to the Vartain Declaration.

3

As discussed in the attached declaration of Brett Harrison, a forensic expert at FTI, these receipts, like others listed in this Motion, also contain other indicators that they have been altered, including significant variations from Uber's standard receipt formats. *Id.*[4]

Because Pro and Enterprise Memberships permit users to generate receipts without the watermark (*id.* at 3), there may well be additional receipts created by such members of Makereceipt.com (or similar websites) that Uber has not yet been able to identify. For example, the first receipt discussed in the section immediately below does not contain a Makereceipt.com watermark but does contain a telltale sign that it was generated using Makereceipt.com.

### 2.    Receipts With Math Errors And Other Internal Inconsistencies

Other Plaintiffs have produced receipts with math errors, internal inconsistencies, and errors in the way that times, addresses, and payments are displayed. For example, some of Plaintiffs' receipts, like the one pictured below, miscalculate the total ride time. The ride in the receipt below, which does not contain a watermark, is shown as lasting 23 hours and 45 minutes, while the ride occurred from 11:46 p.m. until 12:01 a.m. *Id.* at 4. This miscalculation results from an error using Makereceipt.com. FTI has confirmed, by purchasing a Makereceipt.com account, that users who input a ride-start time shortly before midnight and a ride-end time shortly after midnight generate a ride receipt showing a ride time close to 24 hours. *Id.*

**Ex. 3 (MDL ID 1194)**



Actual Duration = 15 Minutes

---

[4] MDL 1914 was previously dismissed without prejudice on June 2, 2025 due to failure by the plaintiff to file a notice indicating whether they intended to pursue their action following the withdrawal of their counsel, but given the seriousness of the conduct at issue the dismissal should be converted to with-prejudice pursuant to Federal Rule of Civil Procedure 60(b).

4

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Case 3:23-md-03084-CRB    Document 3364    Filed 07/30/25    Page 76 of 324

The above receipt also contains other indicators it was altered. For example, it does not capitalize street names in the pick-up and drop-off addresses, does not use commas to separate the street name from the city, does not have a space between the city and state, and includes a period after the state abbreviation—all of which is inconsistent with Uber's formatting. *Id.* at 4.

Other Plaintiffs have produced receipts with math errors. In the below examples, the line-item charges add up to different totals than what is reflected on the receipts. *Id.* at 5-7, 9-10, 19. Below, the numbers on the receipt add up to $7.03, but "Total" is listed as $7.12.

**Ex. 4 (MDL ID 2918)**



MDL ID 3425's receipt's numbers add up to $14.49, but the listed "Total" is $14.99.

**Ex. 5 (MDL ID 3425)**

Listed Total = $14.99
Actual Total = $14.49



MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Below, the numbers add up to $37.15, but the listed "Total" is $36.79.

**Ex. 7 (MDL ID 3038)**



Listed Total = $36.79
Actual Total = $37.15

Bona fide Uber receipts also do not reflect "surcharges" and "benefits" for a given state unless a ride occurs in that state. Dobbs Decl. ¶ 3. But certain Plaintiffs, including MDL ID 2723, produced receipts erroneously showing fees that are charged in certain states on receipts for trips allegedly completed in a different state, as shown in Appendix A.6.[5] App.A.6; Ex. 6.

Plaintiffs have also produced receipts with timestamp errors, including receipts showing purported payments made months before the alleged ride. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed. An example in Appendix A (A.5), for MDL ID 3425, shows a payment timestamp an *entire year* before the trip-start timestamp. Harrison Decl. at 6; App.A.5; Ex.5.

The same payment timing issue occurs in receipts submitted by MDL ID 3286 (*i.e.*, payment time of 9:20PM which was 14 minutes prior to the 9:34PM pickup and 30 minutes prior to the 9:50PM drop-off), MDL ID 2734 (*i.e.*, payment time of 3:31PM which was 1 hour and 11 minutes prior to the pickup and 1 hour and 28 minutes prior to the 4:59PM drop-off), MDL ID 2918 (*i.e.*, payment time of 12:11PM which was 17 minutes prior to the 12:28PM pickup and 24 minutes prior to the 12:35PM drop-off), and MDL ID 2959 (*i.e.*, payment time of 6:54PM which was 1 hour and 33 minutes prior to the 7:47PM drop-off). Harrison Decl. at 5-6, 10–11, 14–15, 18–19; *see also* Exs. 4, 9-B, 10, 14.

---

[5] Appendix A attached to this brief contains screenshots from various receipt exhibits. The complete exhibits are attached to the Vartain Declaration.

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

### 3.    Receipts Inconsistent with Uber's Formatting

Other receipts submitted by Plaintiffs are inconsistent with the standard formatting used in Uber's system. For example, in addition to having a "FOR PRO OR ENTERPRISE MEMBERS ONLY" stamp indicating that Makereceipt.com was used, the receipt submitted by MDL ID 2812 (App.A.1) is missing the street indicators and commas included in Uber's receipts. Harrison Dec. 12-13; Ex. 1.  The receipt submitted by MDL ID 3422 (App.A.13) is also missing punctuation. Harrison Decl. 17-18; Ex. 13. Appendix A (App.A.1) also includes an example receipt showing what the address on a bona fide Uber receipt looks like.

Other Plaintiffs have submitted receipts that reference "cash" payments, even though at the time of the alleged incident, cash payment options were not available via the Uber app. An example of a receipt submitted by Plaintiffs with a reference to "cash" (in an area where cash was not accepted by Uber at the relevant time) is shown at Appendix A.2. *See also* Dobbs Decl., ¶ 8; Ex. Harrison Decl. at 31; Ex. 2.

Another Plaintiff, MDL ID 2350, submitted a receipt where the "X" in "UberX" was not capitalized. A bona fide Uber receipt with the correct capitalization of "UberX" is shown in the Appendix 11.B. Harrison Dec. at 15; Ex. 11.B. Moreover, the receipt submitted by MDL ID 2350 uses forward slashes between the timestamps and addresses, rather than vertical lines. It also does not include "AM" or "PM," does not capitalize the street name in the drop-off address, and does not include commas in either address - all inconsistent with Uber's formatting. Harrison Decl. 15.

Another inconsistency exists where the line-item charges are not uniformly right-justified in accordance with Uber's standard formatting. The MDL ID 3078 receipt included at Appendix A.12 shows the wrong justification, while the below Uber receipt in Appendix A shows correct justification. Harrison Decl. at 16-17. The MDL ID 3078 receipt also includes a line-item charge with a leading zero ("$02.60"), which is inconsistent with Uber's formatting. *Id.*; *see also* Ex. 12

Other Plaintiffs produced receipts that contain extraneous "0s" in the timestamps and dates. Receipts incorrectly formatted with these extraneous "0s," as well as Uber receipts showing standard formatting without any extraneous "0s" are shown in Appendix A.14.  For example, MDL

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

ID 2959's receipt (App.A.14) shows a start time of "7:018 pm." The receipt submitted by Plaintiff with MDL ID 2959 also does not include commas between the street name and city or the city and state in the pick-up address. Harrison Decl. at 18–19; App.A.14; Ex. 14.

The receipt submitted by MDL 3198 (App.A.15) contains a reference to "0 hour," but bona fide Uber receipts do not "0 hour." Harrison Decl. at 20-21; App'x A.15, Ex. 15. And the receipt submitted by MDL 1194 does not state the rider's name as a bona fide Uber receipt would; it only says, "Here's your updated ride receipt." Harrison Decl. at 15; AppA.3; Ex. 3.

### 4. Receipts with Stray Marks

Other receipts were produced with stray marks, indicating alteration. One example of such a stray mark is the gray circle pictured in the middle of the receipt for MDL 3047 shown in Appendix A.21-B. Harrison Decl. at 32-33; App.A.21-B; Ex. 21-B.

### 5. Two Different Receipts Produced in the MDL by One Plaintiff.

The receipts MDL ID 2103 and 2277 were both submitted by the same Plaintiff. The name of the rider, time of the trip, origin and destination addresses and distance between them (*see* App.A.16-B, 16-C), and payment date are identical between the two versions. *Id.* at 21-23. But the date of the ride and name of the driver are different. The Plaintiff who submitted these receipts dismissed (without prejudice) the claim associated with MDL 2277, but kept the claim associated with MDL 2103. *See* App.A.16-B, 16-C; Exs. 16-B, 16-C.

### 6. Two Plaintiffs Submitting Different Versions of the Same Receipt.

In another example, two Plaintiffs, MDL ID 3510 and 3521, represented by the same law firm submitted different versions of the same original receipt (App.A.17-B, 17-C). The two produced receipts have the same request time, start/end times, locations, fare, and driver name. However, the receipts have different rider names and PayPal info. In one part of the MDL 3521 receipt, the trip date is "July 19, 2021," although another part of the receipt inexplicably lists a different date "July 7" for the same ride. Harrison Decl. 23-26; Ex. 17-B, 17-C.

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Uber has also identified the original authentic receipt (which has not been produced by any Plaintiff) from which both of these two above receipts were adapted. Vartain Decl. 23.

7.    **The Alteration of Actual Receipts, Including to Change Female Driver Names to Male Driver Names.**

On the below left is the original receipt of an actual ride that occurred on August 9, 2024, with a female driver name. On the below right is the version of the receipt produced in the litigation, which was altered to change the name from a female drive ███ to a male driver ███. All other details in the receipt remained the same. Harrison Decl. at 28–29.

**Original:**                    **Ex. 19-B (MDL ID 3303)**





Another example submitted by Plaintiff with MDL ID 3048 (at App.A.18-B) is from an actual ride on August 9, 2024. *Id.* at 27. The version of the receipt produced in the litigation was altered, changing the name from a female driver ███ to a male driver ███ and changing the date of the ride. All other details in the receipt remained the same. *Id.*; App.A.18-B; Ex. 18-B. Yet another example, MDL ID 3047, is from an actual ride (App.A.21-A) that occurred on March 29, 2024. Harrison Decl. 32-33. The version of the receipt produced in the litigation (App.A.21-

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

B) was altered, such that the name of the rider is different (changing the name from ▮▮▮▮▮▮ to ▮▮▮▮▮▮), but all other details are identical. *Id.*; *see also* Ex. 21A, 21B.

In another example, MDL ID 312, an actual receipt (App.A.20-A) with another female driver ▮▮▮▮▮▮ was changed to name a male driver ▮▮▮▮▮ (App.A.20-B). Once again, all other details in the receipt remained the same. Harrison Decl. 31-32; *see also* Exhibit 20A, 20B.

## III.    ARGUMENT

### A.    THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO ORDER PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS TO SHOW CAUSE WHY THEIR CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE.

At least the 21 Plaintiffs listed in Section II.B have not complied with this Court's order to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" PTO #5, ECF 175, ¶ 4; PTO #10, ECF 348, ¶ 2. The Court should order these Plaintiffs to show cause why their claims should not be dismissed with prejudice.

Federal Rule of Civil Procedure 16(f) provides that "the [C]ourt may issue any just orders" when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(C). Such "just orders" may include, for example, "dismissing the action[.]" Fed. R. Civ. P. 37(b)(2)(A)(v); *Wyle v. R.J. Reynolds Indus.*, 709 F.2d 585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes the sanction of dismissal[.]"). The production of "falsified" discovery in response to a "discovery order" is grounds for dismissal under Rule 37. *Pro. Seminar*, 727 F.2d at 1472-73 (affirming default judgment against defendant that "did not assert that the documents were genuine.").

Courts may also impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court[.]"[6] *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle*, 709 F.2d at 589. "Where a party has engaged deliberately in deceptive practices that undermine the

---

[6] "[D]ismissal sanctions under Rule 37 and a court's inherent powers are similar." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990). The Ninth Circuit therefore "use[s] cases involving dismissal under Rule 37 and inherent powers interchangeably." *Id.*

integrity of judicial proceedings"—such as "fabricat[ing]" evidence during discovery—"[i]t is well settled that dismissal is warranted" under the Court's inherent authority. *IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*, No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, at *2, *14 (C.D. Cal. May 13, 2009) (dismissing action where plaintiff "fabricated an invoice" during discovery) (citing *Anheuser-Busch, Inc. v. Nat. Beverage*, 69 F.3d 337, 348 (9th Cir. 1995)).[7]

Regardless of whether a district court is acting pursuant to Rule 37 or its inherent authority, the Ninth Circuit has held that "[a] district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (citation and internal quotations omitted). Each of the *Malone* factors support dismissal here.

***Public interest and the Court's docket***. The first two factors—"the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket"—both "strongly support the court's dismissal" of the claims of Plaintiffs who deliberately fail to comply with court orders or engage in fraudulent discovery. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226, 1240 (9th Cir. 2006). "[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). "Sound management of the court's docket also counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *Id.* at 1234.

---

[7] *See also, e.g.*, *Singh v. Hancock Nat. Res. Grp., Inc.*, No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893, at *24 (E.D. Cal. Feb. 21, 2017) (plaintiffs "falsified documents to respond to discovery requests," which "demonstrate bad faith and . . . willful abuse of the judicial process and support the issuance of terminating sanctions."); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176, 1179 (10th Cir. 2009) (affirming dismissal where plaintiff "fabricated a number of discovery documents in an effort to win her case.").

11

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Deterrence is especially important here. There are now more than 2,455 Plaintiffs in this proceeding, resulting in part from aggressive online advertising from plaintiffs' counsel, such as the following ads offering a "Free Compensation Check!" or "**Significant Compensation**":



At the same time, Makereceipt.com and even Reddit users have provided suggestions on creating Uber receipts, advertised as "UnethicalLifeProTips." https://www.reddit.com/r/UnethicalLifeProTips/comments/1f0zvt2/ulpt_need_someone_to_create_an_uber_receipt/ (providing a link to Makereceipt.com). Prospective plaintiffs need to understand there is a consequence for alteration of evidence, and that doing so will not result in monetary compensation.

*Prejudice*. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. Here, Plaintiffs' fabrication of receipts means that Uber has "been forced to defend this case from the outset – despite its basis in fraud," which is the paradigmatic form of prejudice. *See IV Sols.*, 2009 U.S. Dist. LEXIS 133650, at *20; *see also In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (filing claims based on false diagnoses forced defendants to "pay significant costs litigating meritless claims."). This misconduct also calls into question the "veracity" of all of these Plaintiffs' other discovery responses, which will require Uber to "attempt

12

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

independent corroboration of each submission, at substantial expense or time and money, or to accept the real possibility that those discovery documents . . . are inaccurate." *Garcia*, 569 F.3d at 1180 ("submission of falsified evidence substantially prejudices an opposing party"). Moreover, allowing these claims to proceed would also prejudice the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts." *In re Silica*, 398 F. Supp. 2d at 636; *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (such conduct "hamper[s] the resolution of meritorious claims by real plaintiffs.").

*Public policy*. Where Plaintiffs have "purposefully and defiantly violated a court order"— in this case, by submitting non-bona-fide receipts—"it is unnecessary … to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d at 132. Nor is any further warning to Plaintiffs necessary. There is no concern that the receipts at issue were somehow generated in good faith by unsophisticated people. For example, in the case of receipts generated from Makereceipt.com, it takes a level of sophistication and consciousness of wrong-doing to know that the internet provides the ability to falsify receipts and to go to that website for such a purpose. Dismissal is thus very strongly in the public interest.

*Availability of lesser sanctions*. "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook[.]" *IV Sols.*, 2009 U.S. Dist. LEXIS 133650, at *23. Such actions "demonstrate bad faith and Plaintiffs' willful abuse of the judicial process and support the issuance of terminating sanctions." *Singh*, 2017 U.S. Dist. LEXIS 24893, at *24. Lesser sanctions would not sufficiently deter other current (or potential) Plaintiffs from engaging in similar conduct.

For these reasons, the Court should enter Uber's proposed order attached hereto, requiring the 21 Plaintiffs listed in Section II.B (and Exhibit 1 to the proposed show cause order) to show cause why their claims should not be dismissed with prejudice.

**B.    THE COURT SHOULD ENTER A NEW CASE MANAGEMENT ORDER GOVERNING RIDE RECEIPTS**

Separate and apart from the Plaintiffs in Section II.B who have submitted non-bona-fide receipts, over 300 Plaintiffs in this MDL have failed to submit a receipt at all. PTO #5 provides that "[f]or those cases where a receipt is not readily available, Plaintiffs' counsel must disclose to Defendants . . . why the receipt is unavailable." PTO #5, ECF 175, ¶ 4. But 92 Plaintiffs have either provided no reason for not submitting a receipt or have provided boilerplate reasons.

For example, 21 Plaintiffs represented by Levin Simes have submitted an identical, boilerplate reason for not providing a receipt: "Plaintiff's counsel is working with Plaintiff to obtain the ride receipt." For some Plaintiffs, that boilerplate justification was provided in February 2024, meaning Plaintiffs have been "working" with "Plaintiff's counsel" to provide a receipt for 18 months. These Plaintiffs should be required to provide a receipt promptly, to provide a detailed reason why they cannot, or be dismissed with prejudice.[8]

At this stage, Uber does not ask this Court to apply the new case management order to all the Plaintiffs who have not provided a receipt. For example, Plaintiff ID 1331 (who is not the subject of this Motion) alleges that "Friend requested Uber for her." Putting aside for now the issue of whether Plaintiffs such as this one could obtain receipts from their friends, Uber does not ask that the Case Management Order apply at this stage to Plaintiffs who allege that others ordered their Uber, or who have provided reasons other than the boilerplate, non-detailed reasons those set forth in Exhibit 25 to the Vartain Declaration. Rather, Uber only asks that the order apply to the 90 Plaintiffs listed Uber's Proposed Case Management Order who have provided only boilerplate reasons—or none at all—for not providing a receipt.

---

[8] Another 42 Plaintiffs represented by Williams Hart & Boundas, LLP all stated: "Plaintiff is unable to obtain receipt for the ride at issue." Other Plaintiffs' firms provided reasons that are lengthier, but that are still classic boilerplate. For example, no fewer than 18 Plaintiffs represented by Nachawati Law Group submitted exactly the same boilerplate reason for not providing a receipt: "Despite a diligent search of Plaintiff's email address that she believes was associated with her Uber account at the time of the subject ride, Plaintiff cannot locate a ride receipt and does not recall whether she ever received a receipt of the ride. Plaintiff has been unable to access her account and locate the receipt despite a diligent effort to do so. Additionally, while Plaintiff believes the below phone number and email address were associated with this ride and account, it is *possible* that an older or now expired number or email address may have instead been associated with this ride or account, any details of which she does not recall at this time." (__) (emphasis added).

14

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

The Court has authority to enter such an order. "[A]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (internal citation omitted). This authority is especially important in the MDL context given the "enormous" task of "mov[ing] thousands of cases toward resolution on the merits while at the same time respecting their individuality." *In re PPA*, 460 F.3d at 1231. Pretrial orders—and the parties' compliance with those orders and their deadlines—"are the engine that drives disposition on the merits." *Id.* at 1232. "A [court's] 'willingness to resort to sanctions' in the event of noncompliance" with pretrial orders "can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation." *In re Cook Med., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2440, 2018 WL 4698953, at *2 (S.D. W. Va. Sept. 28, 2018) (citing *Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.")).

The Ninth Circuit has approved case management orders in the context of MDL proceedings that "implement[] progressively more severe penalties and issu[e] warnings" and, ultimately, dismiss non-complying parties. *In re PPA*, 460 F.3d at 1240. The Court should thus enter Uber's proposed case management order, attached hereto, which requires the Plaintiffs listed therein to either (1) produce a receipt, submitted under penalty of perjury, or (2) provide a detailed reason why no receipt is available (including information about the most recent Uber receipts available in the Plaintiff's email and Uber app), also under penalty of perjury. To the extent Plaintiffs fail to comply with this order, their claims should be dismissed with prejudice.

**IV.    CONCLUSION**

Uber respectfully requests that the Court (1) enter the order attached hereto requiring the Plaintiffs listed therein to show cause why their claims should not be dismissed for providing a non-bona-fide receipt; and (2) enter the case management order attached hereto addressing certain Plaintiffs who have not produced receipts.

15

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

DATED: July 30, 2025

Respectfully submitted,

_/s/ Laura Vartain Horn_

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted _Pro Hac Vice_)
Christopher D. Cox (Admitted _Pro Hac Vice_)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted _Pro Hac Vice_)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

16

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Case 3:23-md-03084-CRB    Document 3384    Filed 07/30/25    Page 24 of 244

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

17

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Uber*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY 6 PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE** |
| This Document Relates to: | |
| ALL ACTIONS | Complaint Filed Date: |
| | Judge:     Hon. Charles R. Breyer |
| | Date:     October 3, 2025 |
| | Time:     10:00 a.m. |
| | Courtroom:   6 – 17th Floor |

## NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER RELATED TO RECEIPTS

Please take notice that on October 3, 2025 at 10:00 a.m. before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, Uber) will and hereby do move for Entry Of An Order To Show Cause Why 6 Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed With Prejudice. This motion is made pursuant to Federal Rule of Civil Procedure 37(b) and seeks relief under that Federal Rule of Civil Procedure and the Court's inherent authority. Uber seeks entry of an order to show cause why the claims of those Plaintiffs listed in the Proposed Order to Show Cause who have submitted non-bona-fide receipts should not be dismissed with prejudice. This motion is based on this notice, the accompanying memorandum of points and authorities, the declarations of Brett D. Harrison and Chris Cotton, and their accompanying exhibits, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing. A meet and confer certification is being filed herewith.

DATED: August 28, 2025                    Respectfully submitted,


                                          _/s/ Laura Vartain Horn_

1

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

Case 3:23-md-03084-CRB    Document 3384    Filed 04/28/25    Page 91 of 324

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER RELATED TO
RECEIPTS ................................................................................................................. 1

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND .............................................................................................. 1

        A.      PTO #5 ................................................................................................. 1

        B.      Non-Bona-Fide Receipts Submitted by Certain Plaintiffs ..................... 1

III.    ARGUMENT ................................................................................................... 8

        A.      Like the Request in Uber's Receipts Motion the Court Should Exercise its
                Authority Under Rule 37(b) to Dismiss the Claims of Plaintiffs who have
                Submitted Non-Bona-Fide receipts. ...................................................... 8

IV.     CONCLUSION ............................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) ...............................................................................................8

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ...................................................................................................9

*Garcia v. Berkshire Life Ins. Co. of Am.*,
569 F.3d 1174 (10th Cir. 2009) .........................................................................................9, 10

*IV Sols., Inc. v. Office Depot Emp. Welfare Benefit Plan*,
No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13, 2009)......9, 10, 11

*Malone v. U.S. Postal Serv.*,
833 F.2d 128 (9th Cir. 1987) ............................................................................................9, 10

*In re Deepwater Horizon*,
907 F.3d 232 (5th Cir. 2018) ...............................................................................................10

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) .........................................................................................9, 10

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ...................................................................................10

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
727 F.2d 1470 (9th Cir. 1984) ............................................................................................1, 8

*Singh v. Hancock Nat. Res. Grp., Inc.*,
No. 93-17335, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb. 21, 2017).................................9, 11

*Thompson v. Hous. Auth. of City of Los Angeles*,
782 F.2d 829 (9th Cir. 1986) .................................................................................................8

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) .................................................................................................8

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) .................................................................................................9

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

Case 2:23-cv-03084-RB Document 583-1    Filed 04/28/25    Page 53 of 124

**Rules**

Fed. R. Civ. P. 16(f)(C) ..................................................................................................8

Fed. R. Civ. P. 37 ......................................................................................................8, 9

Fed. R. Civ. P. 37(b)(2)(A)(v) .......................................................................................8

Fed. R. Civ. P. 37(b)(2)(C) .............................................................................................1

Fed. R. Civ. P. 60(b) .................................................................................................5, 6

## I.  INTRODUCTION

Unfortunately, and once again, Uber has discovered that certain Plaintiffs in this MDL proceeding have submitted non-bona-fide receipts to support their lawsuits. Accordingly, Uber respectfully moves for an order to show cause why the claims of those Plaintiffs who have submitted non-bona-fide receipts should not be dismissed. *See* Exhibit A; *see also* Uber's Motion for Entry of an Order to Show Cause (ECF 3604) ("Receipts Motion"). As the Ninth Circuit has recognized, dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (upholding dismissal under Fed. R. Civ. P. 37(b)(2)(C) where "[p]ursuant to a discovery order, [a party] produced documents" that were "falsified," including "photocopies of checks," without holding an evidentiary hearing). Here, in light of the conduct, which again includes the alteration of bona-fide receipts, the Court should issue an order to show cause why these Plaintiffs' claims (*see* Exhibit A) should not be dismissed with prejudice.

## II.  BACKGROUND

### A.  PTO #5

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" PTO #5, ECF 175, ¶ 4; *see also* PTO #10, ECF 348, ¶ 2.

### B.  NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS

At least an additional 6 Plaintiffs listed in Exhibit A have violated the Court's Order by submitting receipts that are not bona fide, and 5 Plaintiffs are represented by law firms included in Uber's Receipts Motion. In fact, one Plaintiff's firm has been on notice about the fraudulent nature of their client's receipt since at least May 2024. There are likely to be additional such Plaintiffs, including but not limited to Plaintiffs who purchased the "Pro" or "Enterprise" membership from Makereceipt.com (discussed in Uber's Receipts Motion), which makes receipt alteration more difficult to detect. This motion addresses only those that Uber has been able to identify through its manual, line-by-line review process thus far.

1

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

### 1. **Uber Has Identified the Alteration of Additional Actual Receipts[1]**

The below is the original receipt for an actual ride that occurred on November 30, 2022, with a female driver name ("████"). Ex. 1-A.




The version of the receipt produced in the litigation was altered, changing the name from a female driver ("████") to a male driver ("████"). Harrison Decl. 10 § 12 – 16. Ex. 1-B. All other details – e.g., pick-up location and time, drop-off location and time, trip fare – in the receipt remained the same.

---

[1] MDL ID 1199 also filed a case in *In re Uber Rideshare Cases* in the JCCP and Uber's Counsel previously addressed the unsubstantiated ride receipt (Ex. 6) produced in both litigations with Plaintiff's Counsel via letter on May 14, 2024. Ex. 10. Plaintiff's counsel has been on notice about the fraudulent nature of the receipt submitted and yet has taken no action in 10 months. MDL ID 1199 is currently the subject of Judge Breyer's August 8, 2025 Order Regarding Motion to Dismiss Cases for Failure to Comply with Court Order. ECF 3666. Nevertheless, and in light of the production of a non-bona-fide ride receipt, Uber respectfully requests that for the same reasons identified in Ex. 10, MDL ID 1199's case be dismissed with prejudice.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

**MDL ID 2642 (Ex. 1-B)**

  

The below is a real receipt for an actual ride that occurred on January 5, 2018. Ex. 2-A. The real receipt details (e.g., "Base Fare," "Distance," "Time," pick-up location, drop-off location, and payment) uncannily mirror the version of the receipt submitted by MDL ID 1384. *Id.*



3

The version of the receipt produced by MDL ID 1384 in the litigation appears to have been materially altered or recreated using aspects of a real receipt, such that the year comprising the Google Maps data ("2018") from the receipt precedes the year in which the trip was completed ("2022"), the date of the ride ("January 1, 2022") is misaligned with the text residing next to it (" | uberX"), the fees listed under "Subtotal" are missing "Driver Paid Sick & Safe Time" expected during the time period of the ride, and there is the presence of stray black dots near the image of the trip map. Harrison Decl. at 5 – 6; Ex. 7.

**MDL ID 1384 (Ex. 2-B)**                    **Real Receipt (2022) (Ex. 7)**



MDL ID 1384 filed a complaint on June 7, 2024 through her counsel, Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf"). On January 8, 2025, Peiffer Wolf Carr Kane Conway & Wise, LLP moved to withdraw its representation of MDL ID 1384 on the grounds that Plaintiff "failed to establish useful communication with Peiffer Wolf" and "failed to provide Peiffer Wolfe with sufficient

4

or adequate information to confirm [Plaintiff's] claim." ▮, No. 3:24-cv-03441-CRB, ECF 7 at 2. Ex. 11. On February 3, 2025, the Court granted that motion. ▮. No. 3:24-cv-03441-CRB. ECF 8 at 1. Ex. 12. In parallel, Plaintiff had also retained Kherker Garcia and filed a duplicate complaint on December 31, 2024. Kherker Garcia set-up an MDL Centrality ("MDLC") profile under MDL ID 2774. Notably, MDL ID 2774 did not upload a ride receipt but rather a "Uber Ride Information Form" (*see* MDLC Doc. ID 42135) which stated, in part, that (a) "Plaintiff is not able to provide the ride receipt at this time. Will supplement if available." (see Question No. 1); (b) provided the date of the ride as "Jan 1 2022" (see Question No. 3; this also matches the date of the ride receipt produced via MDL ID 1384); and (c) stated "Will supplement." for the approximate starting address and approximate ending address (see Question No. 4). Ex. 13. Uber previously identified this Plaintiff in the Receipts Motion as one of the 90 Plaintiffs that either provided no reason for not submitting a receipt or having provided boilerplate reasons. *See* ECF 3604. Uber now understands why MDL ID 2774 failed to submit a ride receipt a second time.[2]

**MDL ID 1384**

**MDL ID 2774**

---

[2] MDL ID 1384 ("▮▮▮") was previously dismissed without prejudice on June 2, 2025 due to the failure by the plaintiff to file a notice indicating whether they intended to pursue their action following the withdrawal of their counsel, but given the seriousness of the conduct at issue the dismissal should be converted to with-prejudice pursuant to Fed. R. Civ. P. 60(b). In addition, the duplicate claim filed as MDL ID 2774 ("▮▮▮") should also be dismissed with prejudice.

### 2. Additional Receipts Inconsistent with Uber's Formatting

Uber has identified additional receipts submitted by Plaintiffs that are inconsistent with the standard formatting used in Uber's system. The receipt submitted by MDL ID 1507[3] contains several indicators that it was altered. Harrison Decl. 8 – 9; Ex. 3. For example, the receipt does not capitalize street names in the pick-up and drop-off addresses and does not use commas to separate the street name from the city and state. Harrison Decl. 8 § 15-20; Ex. 3. The receipt also contains a reference to "0 hour 0 min" for the trip duration but bona fide Uber receipts do not include "0 hour" for the trip duration. Ex. 8.

| MDL ID 1507 (Ex. 3) | UBER'S FORMATTING (Ex. 8) |
|---|---|
|  |  |

Beyond this, the pick-up ("8:13PM") and drop-off ("8:13PM") times displayed in the produced receipt are also the same for a trip that, even based on the receipt submitted by MDL ID 1507, resulted in travel of 1.3 miles and from one address to another. Harrison Decl. 8 § 2 – 5; Ex. 3.

The receipt submitted by MDL ID 3841[4] includes a timestamp error showing purported payment made over an hour before the alleged ride occurred. Harrison Decl. 12 § 6 – 8; Ex. 4. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed. Harrison Decl. § 6 – 8. The receipt also does not use a comma to separate the street name from the city and state in the drop-off location which is expected in bona fide Uber receipts. *Id.* at 12 § 3 – 6.

---

[3] MDL ID 1507 was previously dismissed without prejudice on June 2, 2025 due to the failure by the plaintiff to file a notice indicating whether they intended to pursue their action following the withdrawal of their counsel but given the seriousness of the conduct at issue the dismissal should be converted to with-prejudice pursuant to Fed. R. Civ. P. 60(b).

[4] MDL ID 3841 uploaded the ride receipt on August 8, 2025. Uber understands that Plaintiff's counsel is attempting to clawback the document reasoning that it was "Uploaded in error." Uber has not received any additional explanation from the Plaintiff and/or Plaintiff's counsel and thus, Uber respectfully requests that the Plaintiff's claim be dismissed with prejudice.

**MDL ID 3841 (Ex. 4)**



Another inconsistency exists where the date of the receipt is not justified in accordance with Uber's standard formatting. The receipt submitted by MDL ID 3659 includes an improperly justified date in the top right corner that is contrary to Uber's standard formatting. *Id.* at 11 § 18 – 20; Ex. 5.

**MDL ID 3659 (Ex. 5)**



**Uber's Formatting (Ex. 9)**



7

The receipt submitted by MDL ID 3659 also does not use a comma to separate the street name from the city and state in the drop-off location. Harrison Decl. 11 § 16 – 18; Ex. 5.

**MDL ID 3659 (Ex. 5)**



## III.    ARGUMENT

### A.    LIKE THE REQUEST IN UBER'S RECEIPTS MOTION THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO DISMISS THE CLAIMS OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS.

An additional 6 Plaintiffs included in Exhibit A have not complied with this Court's order to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" PTO #5, ECF 175, ¶ 4; PTO #10, ECF 348, ¶ 2. These Plaintiffs' claims should be dismissed with prejudice.

Federal Rule of Civil Procedure 16(f) provides that "the [C]ourt may issue any just orders" when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(C). Such "just orders" may include, for example, "dismissing the action[.]" Fed. R. Civ. P. 37(b)(2)(A)(v); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes the sanction of dismissal[.]"). The production of "falsified" discovery in response to a "discovery order" is grounds for dismissal under Rule 37. *Pro. Seminar*, 727 F.2d at 1472-73 (affirming default judgment against defendant that "did not assert that the documents were genuine.").

Courts may also impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court[.]"[5] *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle*, 709 F.2d at

---

[5] "[D]ismissal sanctions under Rule 37 and a court's inherent powers are similar." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990). The Ninth Circuit therefore "use[s] cases involving dismissal under Rule 37 and inherent powers interchangeably." *Id.*

8

589. "Where 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings'"—such as "fabricat[ing]" evidence during discovery—"[i]t is well settled that dismissal is warranted" under the Court's inherent authority. *IV Sols., Inc. v. Office Depot Emp. Welfare Benefit Plan*, No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, at \*14 (C.D. Cal. May 13, 2009) (dismissing action where plaintiff "fabricated an invoice" during discovery) (citing *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also, e.g.*, *Singh v. Hancock Nat. Res. Grp., Inc.*, No. 93-17335, 2017 U.S. Dist. LEXIS 24893, at \*24 (E.D. Cal. Feb. 21, 2017) (plaintiffs "falsified documents to respond to discovery requests," which demonstrate "bad faith and . . . willful abuse of the judicial process and support the issuance of terminating sanctions."); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176, 1179 (10th Cir. 2009) (affirming dismissal where plaintiff "fabricated a number of discovery documents in an effort to win her case.").

Regardless of whether a district court is acting pursuant to Rule 37 or its inherent authority, the Ninth Circuit has held that "[a] district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (citation and internal quotations omitted).

Each of the *Malone* factors support dismissal here.

***Public interest and the Court's docket***. The first two factors—"the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket"—both "strongly support the court's dismissal" of the claims of Plaintiffs who deliberately fail to comply with court orders or engage in fraudulent discovery. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226, 1240 (9th Cir. 2006). "[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Plaintiffs' failure to comply honestly with their court ordered discovery obligations has also consumed scarce judicial time and resources in a litigation with thousands of plaintiffs. "Sound management of the court's docket also

9

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *Id.* at 1234.

Deterrence is especially important here. There are now more than 2,500 Plaintiffs in this proceeding, resulting in part from aggressive online advertising from plaintiffs' counsel, such as the ad promising "Significant Compensation" with "No Paperwork" and "No Hassle." Available at https://www.rideshareassaultjustice.com/. Prospective plaintiffs need to understand there is a consequence for alteration of evidence, and that doing so will not result in monetary compensation.

*Prejudice*. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. Here, Plaintiffs' fabrication of receipts means that Uber has "been forced to defend this case from the outset – despite its basis in fraud," which is the paradigmatic form of prejudice. *See IV Sols.*, 2009 U.S. Dist. LEXIS 133650, at *20; *see also In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (filing claims based on false diagnoses forced defendants to "pay significant costs litigating meritless claims.") This misconduct also calls into question the "veracity" of all of these Plaintiffs' other discovery responses, which will require Uber to "attempt independent corroboration of each submission, at substantial expense or time and money, or to accept the real possibility that those discovery documents . . . are inaccurate." *Garcia*, 569 F.3d at 1180 (submission of falsified evidence substantially prejudices an opposing party). Moreover, allowing these claims to proceed would also prejudice the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts." *In re Silica*, 398 F. Supp. 2d at 636; *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (explaining that non-bona-fide lawsuits "hamper the resolution of meritorious claims by real plaintiffs.").

*Public policy*. Where Plaintiffs have "purposefully and defiantly violated a court order"—in this case, by submitting non-bona-fide receipts—"it is unnecessary … to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d at 132. Nor is any further warning to Plaintiffs necessary. There is no concern that the receipts at issue were somehow generated in good faith by unsophisticated people. For example, in the case of receipts altered utilizing bona fide Uber receipts, it takes a level of

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

sophistication and consciousness of wrong-doing to know how to edit certain aspects of an image (even if doing so on a mobile device like an Apple iPhone). Dismissal is thus very strongly in the public interest.

*Availability of lesser sanctions*. "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook[.]" *IV Sols.*, 2009 U.S. Dist. LEXIS 133650, at *23. Such actions "demonstrate bad faith and Plaintiffs' willful abuse of the judicial process and support the issuance of terminating sanctions." *Singh*, 2017 U.S. Dist. LEXIS 24893, at *24. Lesser sanctions would not sufficiently compensate Uber for having to defend against these claims. Nor would lesser sanctions deter other current (or potential) Plaintiffs from engaging in similar conduct.

For these reasons, the Court should enter Uber's proposed order attached as Exhibit A, requiring the 6 Plaintiffs listed above to show cause why their claims should not be dismissed with prejudice.

## IV.    CONCLUSION

Uber respectfully requests that the Court enter the order attached as Exhibit A requiring the Plaintiffs listed to show cause why their claims should not be dismissed with prejudice.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

DATED: August 28, 2025                    Respectfully submitted,

/s/ Laura Vartain Horn

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT, JR. (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac*

12

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

*Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

13

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*
Laura Vartain Horn

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>~~[PROPOSED]~~ **REVISED ORDER TO SHOW CAUSE WHY PLAINTIFFS IN EXHIBIT A WHO HAVE SUBMITTED NON-BONA-FIDE RIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE**<br><br>Re: Dkt. No. 3604 |

Having considered Uber's Motion for Entry of an Order to Show Cause Why Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed with Prejudice, the Court hereby GRANTS the motion.

The Court's Pretrial Order No. 5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident."

The 21 Plaintiffs listed in Exhibit A have submitted non-bona-fide receipts. Some of these receipts show on their face that they were generated using websites designed for creating receipts, such as Makereceipt.com. Other of these receipts contain math errors, formatting inconsistencies, and other errors. Other receipts submitted by these Plaintiffs were altered from actual receipts.

The Ninth Circuit has recognized that dismissal of claims is warranted under Federal Rule of Civil Procedure 37 where a party "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472 (9th Cir. 1984). Courts may also impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

~~[PROPOSED]~~ REVISED ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB

Accordingly, the 21 Plaintiffs listed in Exhibit A are hereby ORDERED TO SHOW CAUSE why their claims should not be dismissed with prejudice.

Levin Simes, counsel for Plaintiffs with MDL IDs 1194 and 2350, represents that these two Plaintiffs have "assure[d]" them that "their receipts are authentic."  ECF No. 3771 at 2.  Uber served Defense Fact Sheets indicating it was not able to validate these receipts.  The Court orders that Plaintiffs with MDL IDs 1194 and 2350 be required to: (1) produce native versions of their receipts, in accordance with the parties' agreed upon ESI Protocol (dkt. 524), including all available metadata outlined in Appendix 2; (2) produce within 14 days of this Order any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or the website "Makereceipt.com"; and (3) submit within 30 days to a deposition not to exceed 3 hours relating to the authenticity of their receipts.

**IT IS SO ORDERED.**

Dated: _____September 9_____, 2025



_____
HONORABLE CHARLES R. BREYER
United States District Court Judge

[PROPOSED] REVISED ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB

Case 3:23-md-03084-CRB    Document 1837    Filed 04/09/25    Page 130 of 324

# EXHIBIT A

| MDL ID | Law Firm |
|--------|----------|
| 2812 | Nachawati Law Group |
| 1914 | Slater Schulman LLP |
| 1194 | Levin Simes LLP |
| 2918 | Nachawati Law Group |
| 3425 | Chaffin Luhana |
| 2723 | Nachawati Law Group |
| 3038 | Chaffin Luhana |
| 3286 | Cutter Law PC |
| 2734 | Walkup, Melodia, Kelly & Schoenberger |
| 2350 | Levin Simes LLP |
| 3078 | Pulaski Law Firm |
| 3422 | Pulaski Law Firm |
| 2959 | Simmons Hanly Conroy |
| 3198 | Pulaski Law Firm |
| 2103 | Cutter Law |
| 3510 | Pulaski Law Firm |
| 3521 | Pulaski Law Firm |
| 3048 | Pulaski Law Firm |
| 3303 | Pulaski Law Firm |
| 3125 | Pulaski Law Firm |
| 3047 | Pulaski Law Firm |

[PROPOSED] REVISED ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | ~~[PROPOSED]~~ **ORDER TO SHOW CAUSE WHY PLAINTIFFS IN EXHIBIT A1 WHO HAVE SUBMITTED NON-BONA FIDE RIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE** |
| ALL ACTIONS | |

Having considered Uber's Motion for Entry of an Order to Show Cause Why 6 Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed with Prejudice, the Court hereby GRANTS the motion.

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" ECF 175, ¶ 4.

The 6 Plaintiffs listed in Exhibit A1 have submitted non-bona fide receipts.

The Ninth Circuit has recognized that dismissal of claims is warranted under Federal Rule of Civil Procedure 37 where a party "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984). Courts may also impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court[.]" *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Accordingly, the 6 Plaintiffs listed in Exhibit A1 are hereby ORDERED TO SHOW CAUSE why their claims should not be dismissed with prejudice. The Plaintiff with MDL ID 2774 should include in their response an explanation for their representation to the Court that the receipt submitted in MDL ID 1384 was from a "prior, unrelated litigation." ECF 3845 at 2.

~~[PROPOSED]~~ ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB

**IT IS SO ORDERED.**

Dated: <u>September 22</u>, 2025



~~[PROPOSED]~~ ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE
RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB

# EXHIBIT A1

| MDL ID | Law Firm |
|---|---|
| 2642 | Pulaski Law Firm |
| 1199 | Levin Simes LLP |
| 1384[1] | Peiffer Wolf |
| 2774[2] | Kherkher Garcia |
| 1507[3] | Nachawati Law Group |
| 3841 | Pulaski Law Firm |
| 3659 | Pulaski Law Firm |

[1] Plaintiff was dismissed without prejudice after the Court granted the withdrawal of counsel (Peiffer Wolf) on February 3, 2025. Plaintiff must show cause why dismissal should not be converted to dismissal with prejudice.

[2] Same Plaintiff as Plaintiff with MDL ID 1384.

[3] Dismissed without prejudice on June 2, 2025 due to the failure by Plaintiff to file a notice indicating whether they intended to pursue their action following the withdrawal of Nachawati. Plaintiff must show cause why dismissal should not be converted to dismissal with prejudice.

3

[PROPOSED] ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE
RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com
Jessica Davidson (Admitted *Pro Hac Vice*)

Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Uber*

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **MOTION FOR (1) ENTRY OF AN ORDER TO SHOW CAUSE WHY 7 PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE AND (2) ALLOWING LIMITED DEPOSITIONS OF TWO PLAINTIFFS REFERENCED HEREIN** |
| This Document Relates to: | |
| ALL ACTIONS | |
| | Judge:      Hon. Charles R. Breyer |
| | Courtroom:  6 – 17th Floor |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

A.      PTO #5 ...................................................................................................................2

B.      NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS...................2

    1.      Uber Has Identified the Alteration of Additional Actual Receipts ..........................3

III.    ARGUMENT.........................................................................................................14

A.      THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO
        DISMISS THE CLAIMS OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-
        FIDE RECEIPTS. ......................................................................................................14

B.      THE COURT SHOULD ALLOW DEFENDANTS TO TAKE LIMITED AND
        NARROWLY TAILORED DEPOSITIONS OF MDL IDS 3621 AND 3962..................18

IV.     CONCLUSION......................................................................................................18

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ...............................................................................................15

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995) ..................................................................................................15

*Estate of Arroyo v. Cnty. of San Diego*,
   No. 21-cv-1956, 2025 WL 1914399 (S.D. Cal. April 14, 2025) ...........................................18

*Barton v. Delfgauw*,
   No. 3:21-cv-05610, 2025 WL 814484 (W.D. Wash. March 13, 2025)...................................18

*In re Deepwater Horizon*,
   907 F.3d 232 (5th Cir. 2018) .................................................................................................17

*Garcia v. Berkshire Life Ins. Co. of Am.*,
   569 F.3d 1174 (10th Cir. 2009) .......................................................................................15, 17

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017)...............................................................................................................18

*IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*,
   Case No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
   2009) ......................................................................................................................15, 16, 17

*Malone v. U.S. Postal Serv.*,
   833 F.2d 128 (9th Cir. 1987) ...........................................................................................16, 17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) ...............................................................................................16

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
   727 F.2d 1470 (9th Cir. 1984) .............................................................................................1, 15

*In re Silica Prods. Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ...................................................................................17

*Singh v. Hancock Natural Res. Grp., Inc.*,
   Case No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb. 21,
   2017) ..................................................................................................................................15, 17

*Thompson v. Hous. Auth. of City of Los Angeles*,
   782 F.2d 829 (9th Cir. 1986) .................................................................................................15

ii

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

*Wood v. Cnty. of Los Angeles*,
No. 16-cv-7451, 2018 WL 6332275 (C.D. Cal. May 16, 2018)..............................................18

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) .................................................................................................15

*In re Yasmin, and Yaz (Drospirenone) Marketing, Sales Practices and Products Liab.
Litig.*,
No. 3:09-md-02100-DRH-PMF, 2011 WL 3035087 (S.D. Ill. July 25, 2011) .......................18

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) .................................................................................................16

**Rules**

Fed. R. Civ. P. 16(f)..................................................................................................................15

Fed. R. Civ. P. 16(f)(C).............................................................................................................15

Fed. R. Civ. P. 37......................................................................................................................15

Fed. R. Civ. P. 37(b)(2)(A)(v) ..................................................................................................15

Fed. R. Civ. P. 37(b)(2)(C) .........................................................................................................1

**Other Authorities**

https://www.rideshareassaultjustice.com/...................................................................................16

L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-
02/settlement-story-ab218-sex-abuse ...................................................................................2, 16

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

## I.    INTRODUCTION

In response to Uber's first Fraud Motion, Plaintiffs' Leadership stated in a brief filed on August 27, 2025 that "fraud has no place in the MDL." ECF 3768. Unfortunately, these statements by Plaintiffs' Leadership have not been backed by action by other Plaintiffs' Counsel in the MDL. To this day, Plaintiffs' attorneys continue to submit fraudulent receipts provided by their clients.

Uber has discovered that at least 7 additional Plaintiffs have submitted non-bona fide receipts to support their lawsuits. 4 out of 7 Plaintiffs filed their lawsuit and submitted a non-bona fide receipt *after* Uber filed its First Fraudulent Receipts Motion on July 30, 2025 (ECF 3604). Even more surprisingly, of those 4 Plaintiffs, *3 out of 4* Plaintiffs filed their lawsuit and *submitted a non-bona fide receipt after Plaintiffs' Leadership stated that "fraud has no place in this MDL."* ECF 3768.

Uber respectfully moves for an order to show cause why the claims of these 7 Plaintiffs who have submitted non-bona fide receipts should not be dismissed with prejudice. *See* Exhibit A. Moreover, in light of the apparently coordinated use of bona-fide Uber receipts as the basis for Plaintiffs' PTO #5 submissions, Uber respectfully moves for an order to allow Uber to conduct targeted depositions of Plaintiffs with MDL IDs 3621 and 3962. Uber has a good-faith basis for its concern that there may be a larger issue with third parties working with Plaintiffs to commit fraud in this litigation. Thus, Uber seeks a 3-hour deposition of these Plaintiffs on the topics of how the Plaintiffs became involved in the litigation, how the fraudulent receipt was generated and distributed, and who else was involved in or aware of the fraud at issue here.

As the Ninth Circuit has recognized, dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (upholding dismissal under Fed. R. Civ. P. 37(b)(2)(C) where "[p]ursuant to a discovery order, [a party] produced documents" that were "falsified," including "photocopies of checks," without holding an evidentiary hearing). This relief is consistent with the Court's two prior orders on the issue of submission of fraudulent receipts. ECF 3876 and 3972.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

## II.    BACKGROUND

### A.    PTO #5

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident." PTO #5, ECF 175, ¶ 4; *see also* PTO #10, ECF 348, ¶ 2.

### B.    NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS

At least an additional 7 Plaintiffs listed in Exhibit A1 have violated the Court's Order by submitting receipts that are non-bona fide. 4 Plaintiffs are represented by law firms included in Uber's First (Pulaski Law Firm, PLLC) and Second (Pulaski Law Firm, PLLC and Peiffer Wolf Carr Kane Conway & Wise) Fraudulent Receipts Motions. ECF 3604 and 3784. Based on these recent filings, it is clear that Plaintiffs' counsel have not implemented additional processes to vet their clients' allegations and/or detect fraudulent behavior prior to the filing of additional lawsuits. These processes are particularly important to prevent fraud where, as here, mass tort cases are brought "through social media campaigns promising payouts and privacy." Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse.[1] These fundamental case intake measures are crucial at a time when so many cases filed in mass torts are unsupported, involve manufactured or exaggerated injuries, or stem from outright fraud.

Since July 30, 2025 (*i.e.*, the filing of Uber's First Fraudulent Receipts Motion), Plaintiffs have submitted at least 4 additional fraudulent receipts. There are likely to be additional such Plaintiffs moving forward, including but not limited to Plaintiffs who purchased the "Pro" or "Enterprise" membership from Makereceipt.com (discussed in Uber's Receipts Motion), which makes receipt alteration more difficult to

---

[1] This article primarily discusses Downtown LA Law Group, which has not filed cases on behalf of any clients in this MDL. Downtown LA Law Group has filed 13 claims in the coordinated JCCP proceeding.  The article also discusses Slater Slater Schulman's "pattern of 'irregularities' and 'procedural and factual problems' among its plaintiffs" in its "avalanche of sex abuse cases against the Boy Scouts of America."  *See* Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse.  Beyond this, Slater Slater Schulman has filed 58 cases in this MDL and 14 in the JCCP and previously represented a Plaintiff (MDL ID 1914) that is currently subject to Uber's First Fraudulent Receipts Motions. ECF 3604.

2

detect. The present motion addresses only those that Uber has been able to identify through its manual, line-by-line review process thus far, but adds to the growing population already subject to a Motion.

### 1. Uber Has Identified the Alteration of Additional Actual Receipts

The below is a version of the original receipt identified by Uber for an actual ride that occurred on November 9, 2023 not September 20, 2023 as Plaintiff with MDL ID 3962 alleges. Cotton Decl. Ex. 1.

**Real Receipt (Cotton, Decl. Ex. 1[2])**



The version of the receipt produced in the litigation was altered to match the allegations made by Plaintiff with MDL ID 3962. Specifically, the name of the rider was changed from "████" (as it appears in Uber's system) to "████" (as it appears in the fraudulent receipt), the date on the ride receipt was changed from "November 9, 2023" to "September 20, 2023", and the "3" in "2023" is cut-off. Harrison Decl. at 8, § 12 – 24; Exs. 1-2. Further, the PTO #5 submission includes a timestamp error showing purported payment made before the alleged ride occurred. Harrison Decl. at 8, § 19 – 20; Ex. 2. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed. Further, and most telling of the fraudulent nature of this receipt, the Trip ID in MDL ID 3962's

---

[2] References to exhibits in the Cotton Declaration will be marked by exhibit number.

3

PTO #5 submission matches that of the bona-fide receipt (in Uber's system) *and* the PTO #5 submission for an entirely different MDL ID (3286). Harrison Decl. at 8, § 15 – 17; Ex. 2. The real receipt (as reflected in Uber's system) and associated Trip ID is now the basis of *two* fraudulent receipts in the above captioned litigation – one of which (MDL ID 3286) is already subject to the Court's Order to Show Cause issued on September 9, 2025. ECF 3876. Based on this, MDL ID 3962 should also be ordered to show cause.

**MDL ID 3962 (Ex. 2)**



**Real Receipt (Ex. 1)**                    **MDL ID 3286 (Ex. 2)**

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

The below is a version of the original receipt identified by Uber for an actual ride that occurred on August 30, 2023 not on August 16, 2023 as the Plaintiff with MDL ID 3666 alleges. Ex. 4.

**Real Receipt (Ex. 4)**

 

The version of the receipt production in the litigation was altered to match the allegations made by Plaintiff with MDL ID 3666. Specifically, the date on the ride receipt was changed from "August 30, 2023" to "August 16, 2023". Harrison Decl. at 4, § 8. In addition, there are three stray black lines under the total of $38.91, the presence of a white line above the altered date of August 16, 2023, and use of a dollar sign character ($) that is inconsistent with Uber's standard formatting. *Id.* at 4, § 1 – 19; Ex. 5.

**MDL ID 3666 (Ex. 5)**



MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

The below is a version of the original receipt identified by Uber for an actual ride that occurred on August 31, 2024 with an actual rider ("██████"). Ex. 6.

**Real Receipt (Ex. 6)**



The version of the receipt production in the litigation was altered to match the allegations made by Plaintiff with MDL ID 3699. Specifically, the name of the rider was changed from "████" to "████". Harrison Decl. at 4, § 27; Ex. 7. All other details within the ride receipt remain the same.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

**MDL ID 3699 (Ex. 7)**



Further, MDL ID 3699 appears to have *received* a copy of this non-bona fide receipt via text message (SMS) as indicated via her PTO #5 submission. Ex. 7.

**MDL ID 3699**



MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

The below is a version of the original receipt identified by Uber for an actual ride that occurred on July 29, 2023, with a rider named "█████". Ex. 8. Another lawsuit was filed and a receipt was submitted by the Plaintiff with MDL ID 3621 ("████████████") on June 26, 2025. Ex. 9.

**Real Receipt (Ex. 8)**                    **MDL ID 3621 (Ex. 9)**

The receipt submitted by MDL ID 3787 in the litigation was altered as compared to another receipt that appears in Uber's system. Specifically, the name of the rider was changed from "█████" to "████". Harrison Decl. at 5, § 18 – 19; Ex. 10. All other details within the ride receipt remain the same, including, e.g., the form of payment (i.e., the last four digits of the credit card), driver, and trip duration.

8

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

MDL ID 3787 (Ex. 10)

Further, the receipt previously submitted by MDL ID 3621 shares similar visual elements to the receipt submitted by MDL ID 3787. Specifically, the cell phone (Apple iOS) user interface in both submissions share identical timestamps ("6:26"), call length ("10m"), Wi-Fi strength, and battery life, indicating that the screenshots for both PTO #5 submissions were likely captured at the same time.

9

**MDL ID 3621 (Ex. 9)**     **MDL ID 3787 (Ex. 10)**

 

The below is the original receipt identified by Uber for an actual ride that occurred on May 25, 2024, with an actual rider ("⬛⬛⬛⬛"). Ex. 11. This version includes the $3 tip provided by ⬛⬛⬛⬛.

**Real Receipt (Ex. 11)**



10

The version submitted by MDL ID 3877 in this litigation was altered to match the allegations made by Plaintiff with MDL ID 3877. Specifically, the name of the rider was changed from "█████" to "████" and the month was changed from "May" to "August". Harrison Decl. at 6, § 14 – 25; Ex. 12.

**MDL ID 3877 (Ex. 12)**



The below is the original receipt identified by Uber for an actual ride that occurred on May 29, 2024, with an actual rider ("█████"). Ex. 13. The unique Trip ID is included at the bottom.

11



The version submitted by MDL ID 3977 in this litigation was altered to match the allegations made by Plaintiff with MDL ID 3977. Specifically, the name of the rider was changed from "███████" to "███████", the date of the ride was changed from "May 29, 2024" to "September 29, 2024", and the PTO #5 submission includes a timestamp error showing purported payment made before the alleged ride occurred. Harrison Decl. at 9, § 10 – 23; Ex. 14. Regardless of when the ride was requested, the payment

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

timestamp on bona fide receipts is published after the trip is completed. Further, and most telling of the fraudulent nature of the receipt, the Trip ID in MDL ID 3977's PTO #5 submission matches that of the Trip ID contained in the bona-fide receipt. Harrison Decl. at 9, § 13 – 15; Ex. 14.

**MDL ID 3977 (Ex. 14)**




Uber has also identified an additional receipt submitted by a Plaintiff that is inconsistent with the standard formatting used in Uber's system. Exhibit A1. Specifically, the receipt submitted by MDL ID 3921 contains several indicators that it was altered or fabricated altogether. Harrison Decl. at 7, § 13 – 24; Exhibit 15. For example, the font weight and text spacing are anomalous throughout the receipt (i.e., bold font, font type, font spacing), the trip duration is displayed as "21 mins" not "21 min" as expected within bona fide receipts, and the "Visit the trip page…" statement is indented rather than left-justified as expected within bona fide receipts. Harrison Decl. at 7, § 13 – 24; Ex. 15. Further, the receipt submitted

13

by MDL ID 3921 includes a timestamp error showing purported payment made before the alleged ride occurred. Harrison Decl. at 7, § 20 – 21; Ex. 15. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed.

**MDL ID 3921 (Ex. 15)**



### III.   ARGUMENT

**A.   THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO DISMISS THE CLAIMS OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS.**

An additional 7 Plaintiffs included in Exhibit A1 have not complied with this Court's order to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident." PTO #5, ECF 175, ¶ 4; PTO #10, ECF 348, ¶ 2. These Plaintiffs' claims should be dismissed with prejudice.

14

Rule 16(f) provides that "the [C]ourt may issue any just orders" when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(C). Such "just orders" may include, for example, "dismissing the action." Fed. R. Civ. P. 37(b)(2)(A)(v); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes the sanction of dismissal."). The production of "falsified" discovery in response to a "discovery order" is grounds for dismissal under Rule 37. *Pro. Seminar Consultants, Inc.*, 727 F.2d at 1472 (affirming default judgment against defendant that "did not assert that the documents were genuine"). Courts may impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court."[3] *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle, Inc.*, 709 F.2d at 589. "Where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings'—such as "fabricat[ing]" evidence during discovery— '[i]t is well settled that dismissal is warranted" under the Court's inherent authority. *IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*, Case No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, *14 (C.D. Cal. May 13, 2009) (dismissing action where plaintiff "fabricated an invoice" during discovery) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also, e.g.*, *Singh v. Hancock Natural Res. Grp., Inc.*, Case No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893, *24 (E.D. Cal. Feb. 21, 2017) (plaintiffs "falsified documents to respond to discovery requests," which "demonstrate "bad faith and . . . willful abuse of the judicial process and support the issuance of terminating sanctions"); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176 (10th Cir. 2009) (affirming dismissal where plaintiff "fabricated a number of discovery documents in an effort to win her case.").

Regardless of whether a district court is acting pursuant to Rule 37 or its inherent authority, the Ninth Circuit has held that "[a] district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

---

[3] "[D]ismissal sanctions under Rule 37 and a court's inherent powers are similar." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990). The Ninth Circuit t "use[s] cases involving dismissal under Rule 37 and inherent powers interchangeably." *Id.*

15

favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (internal quotations omitted).

Each of the *Malone* factors support dismissal with prejudice here.

***Public interest and the Court's docket***. The first two factors— "the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket"—both "strongly support the court's dismissal" of the claims of Plaintiffs who deliberately fail to comply with court orders or engage in fraudulent discovery. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1247 (9th Cir. 2006). "The public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifie*r, 191 F.3d 983, 990 (9th Cir. 1999). Plaintiffs' failure to comply honestly with their discovery obligations or even conduct the most basic of investigations has also consumed scarce judicial time and resources. "Sound management of the court's docket also counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *Id. at 1234.* Given the already rampant fraud, deterrence is vital here. There are now more than 2,700 Plaintiffs in this proceeding, resulting in part from aggressive online advertising from Plaintiffs' counsel, such as the ad promising "Significant Compensation" with "No Paperwork" and "No Hassle." *See* https://www.rideshareassaultjustice.com/; *see also* Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse. (stating that in Instagram attorney advertisement for L.A. County sex abuse lawsuit, "a representative for the firm's intake department called" a Times reporter who entered their phone number in the ad "more than 38 times"). Prospective plaintiffs need to understand there is a consequence for falsifying evidence and that doing so will not result in monetary compensation.

***Prejudice***. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. Here, Plaintiffs' fabrication (and Plaintiffs' firms' failure to conduct a reasonable investigation) of receipts means that Uber has "been forced to defend this case from the outset – despite its basis in fraud," which is the paradigmatic form of prejudice. *See IV Solutions Inc.*, 2009 U.S. Dist. LEXIS 133650, *20; *see also*

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

*In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (filing claims based on false diagnoses forced defendants to "pay significant costs litigating meritless claims[.]") This misconduct also calls into question the "veracity" of all of these Plaintiffs' other discovery responses, which will require Uber to "attempt independent corroboration of each submission, at substantial expense or time and money, or to accept the real possibility that those discovery documents . . . are inaccurate." *Garcia*, 569 F.3d at 1180 ("submission of falsified evidence substantially prejudices an opposing party). Allowing these claims to proceed would also prejudice the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts[.]" *In re Silica*, 398 F. Supp. 2d at 636; *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (explaining that non-bona-fide lawsuits "hamper the resolution of meritorious claims by real plaintiffs").

*Public policy*. Where Plaintiffs have "purposefully and defiantly violated a court order"—in this case, by submitting non-bona-fide receipts— "it is unnecessary … to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d at 132. Nor is any further warning to Plaintiffs necessary. There is no concern that the receipts at issue were somehow generated in good faith by unsophisticated people. For example, in the case of receipts altered utilizing bona-fide Uber receipts, it takes a level of sophistication and consciousness of wrong-doing to know how to edit certain aspects of an image (even if doing so on a mobile device like an Apple iPhone). Dismissal is thus very strongly in the public interest.

*Availability of lesser sanctions*. "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook[.]" *IV Solutions Inc.*, 2009 U.S. Dist. LEXIS 133650, *23. Such actions "demonstrate bad faith and Plaintiffs' willful abuse of the judicial process and support the issuance of terminating sanctions." *Singh*, 2017 U.S. Dist. LEXIS 24893, *24. Lesser sanctions would not sufficiently compensate Uber for having to defend against these claims. Nor would lesser sanctions deter other current (or potential) Plaintiffs from engaging in similar conduct.

For these reasons, the Court should enter Uber's proposed order attached as Exhibit A, requiring the 7 Plaintiffs listed above to show cause why their claims should not be dismissed with prejudice.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

**B.      THE COURT SHOULD ALLOW DEFENDANTS TO TAKE LIMITED AND NARROWLY TAILORED DEPOSITIONS OF MDL IDS 3621 AND 3962.**

In addition, this Court should allow Uber to take limited depositions of Plaintiffs with MDL IDs 3621 and 3962 in light of the use of bona-fide receipts as the basis for Plaintiffs' PTO #5 submissions. Courts have recognized that additional discovery may be an appropriate remedy for violations of court orders. *See, e.g., Estate of Arroyo v. Cnty. of San Diego,* No. 21-cv-1956, 2025 WL 1914399, at *12 (S.D. Cal. April 14, 2025) (ordering deposition to permit exploration of late-produced evidence); *Barton v. Delfgauw,* No. 3:21-cv-05610, 2025 WL 814484, at *4 (W.D. Wash. March 13, 2025) (ordering limited discovery after late disclosure of evidence that "call[s] into question the veracity of Plaintiff's claim"); *Wood v. Cnty. of Los Angeles,* No. 16-cv-7451, 2018 WL 6332275, at *4 (C.D. Cal. May 16, 2018) (ordering limited discovery to mitigate prejudice from production violating scheduling order). Given the substantial "questions about the credibility of the information that has been obtained" through the PFS, depositions would be doubly helpful for counsel on both sides to assess the quality of these claims and whether they "should proceed to trial, settlement, or dismissal." *In re Yasmin, and Yaz (Drospirenone) Marketing, Sales Practices and Products Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 3035087, at *3 (S.D. Ill. July 25, 2011). Courts and litigants alike have reason to be concerned about potential fraud in the discovery process and to explore whether a plaintiff has "initiate[d] a case in complete bad faith." *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 110 (2017). Ordering limited depositions of just these 2 Plaintiffs with non-bona fide receipts based on their coordination with an MDL Plaintiff (MDL ID 3621) and a non-party (whose receipt is also the basis of another fraudulent receipt) to create their PTO #5 submissions would help safeguard the credibility of Plaintiffs' allegations without substantial inconvenience or expense.

**IV.      CONCLUSION**

Uber respectfully requests that the Court (1) enter the order attached as Exhibit A requiring the Plaintiffs listed to show cause why their claims should not be dismissed with prejudice; and (2) enter the order attached as Exhibit A allowing for limited depositions of Plaintiffs with MDL IDs 3621 and 3962.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

Case 3:23-md-03084-CRB    Document 581837    Filed 04/13/26    Page 236 of 324

DATED:  October 13, 2025                    Respectfully submitted,

                                           */s/ Laura Vartain Horn*

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**

20

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (*Admitted Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2500 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY SUPPORTING MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE AND LIMITED DEPOSITIONS** |
| This Document Relates to: | Judge:     Honorable Charles R. Breyer |
| ALL ACTIONS | Date:      December 12, 2025 |
| | Time:      10:00 a.m. |
| | Courtroom: 6 – 17th Floor |

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................................1

ARGUMENT .........................................................................................................................................2

I.      Plaintiff A.G. has not responded to Uber's Motion and therefore should be deemed to have consented to the relief sought. ..................................................................................................2

II.     Five other Plaintiffs have failed to make substantive arguments or cite legal authority in opposition to Uber's Motion and should therefore be deemed to have waived any challenge to the relief sought. ..................................................................................................................3

III.    The only Plaintiff that substantively responded to Uber's Motion, R.L., did not argue that the first receipt was bona fide but instead submitted a second fraudulent receipt...........................3

IV.     Depositions of Plaintiffs A.E. and J.H. related to the potential submission of fraudulent receipts are highly relevant and not unduly burdensome. And given their new fraudulent receipt submitted in this litigation, a deposition of Plaintiff R.L. is warranted. .......................6

V.      Conclusion ....................................................................................................................................7

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Sotelo*,
No. 3:16-cv-02161, 2018 WL 3019928 (S.D. Cal. June 18, 2018) ...........................................6

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) .....................................................................................................1

*Al Otro Lado, Inc. v. Wolf*,
No. 3:17-cv-02366, 2020 WL 4336064 (S.D. Cal. July 27, 2020)...............................................7

*Allen v. Lizarraga*,
No. 5:15-cv-04387, 2018 WL 3956207 (N.D. Cal. Aug. 17, 2018)............................................3

*Estate of Arroyo v. Cnty. of San Diego*,
No. 21-cv-1956, 2025 WL 1914399 (S.D. Cal. Apr. 14, 2025) .............................................2, 6

*Barton v. Delfgauw*,
No. 3:21-cv-05610, 2025 WL 814484 (W.D. Wash. Mar. 13, 2025)..........................................6

*Blumenkron v. Multnomah Cnty.*,
91 F.4th 1303 (9th Cir. 2024) .....................................................................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-cv-5944, 2016 WL 11505721 (N.D. Cal. March 9, 2016)...............................................7

*DeCastro v. McKnight*,
No. 2:24-cv-435, 2025 WL 2431688 (D. Nev. Aug. 21, 2025)...................................................7

*Garcia v. Berkshire Life Ins. Co. of Am.*,
569 F.3d 1174 (10th Cir. 2009) ..................................................................................................1

*George v. United States*,
901 F. Supp. 2d 1179 (N.D. Cal. 2012) ......................................................................................2

*Hager v. Arioso Diagnostics, Inc.*,
No. 23-mc-80261, 2023 WL 8654388 (N.D. Cal. Dec. 14, 2023) .............................................7

*Hughes v. Rodriguez*,
31 F.4th 1211 (9th Cir. 2022) .....................................................................................................3

*IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*,
No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
2009) ...........................................................................................................................................1

ii

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

*M&F Fishing, Inc. v. Certain Underwriters at Lloyds*,
No. 06-cv-0934, 2007 WL 9706491 (S.D. Cal. April 13, 2007) ..............................7

*McKinney v. Corsair Gaming, Inc.*,
646 F. Supp. 3d 1133 (N.D. Cal. 2022) .....................................................................3

*Pro Seminar Consultants, Inc. v. Sina Am. Tech. Exch. Council, Inc.*,
727 F.2d 1470 (9th Cir. 1984) ...................................................................................1

*Shammam v. Am. Honda Fin. Corp.*,
No. 3:24-cv-00648, 2025 WL 2816791 (S.D. Cal. Sep. 25, 2025)............................7

*Singh v. Hancock Nat. Res. Grp., Inc.*,
No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb. 21,
2017) ..........................................................................................................................1

*Soto v. United Airlines Inc.*,
No. 24-cv-03045, 2024 WL 3996068 (N.D. Cal. Aug. 28, 2024) .............................4

*Sotoodeh v. City of S. El-Monte*,
No. 24-3848, 2025 WL 1409493 (9th Cir. May 15, 2025).......................................2

*Spears v. Baldwin Park Unified Sch. Dist.*,
No. 24-1428, 2025 WL 2028305 (9th Cir. July 21, 2025).....................................1, 2

*Thompson v. Hous. Auth. of City of Los Angeles*,
782 F.2d 829 (9th Cir. 1986) (per curiam)................................................................1

*Twins Special Co., Ltd. v. Twins Special, LLC*,
No. 23-cv-223, 2025 WL 1292528 (S.D. Cal. May 5, 2025) ...................................6

*United States v. Graf*,
610 F.3d 1148 (9th Cir. 2010) ...................................................................................3

*United States v. Holmes*,
129 F.4th 636 (9th Cir. 2025) ....................................................................................4

*United States v. Wenger*,
No. 23-cr-00268, 2025 WL 256988 (N.D. Cal. Jan. 17, 2025) ................................3

*Universal Dyeing & Printing, Inc. v. Zoetop Business Co., Ltd.*,
No. 22-cv-3741, 2023 WL 9004983 (C.D. Cal. June 23, 2024)................................7

*Waterkeeper All. v. U.S. EPA*,
140 F.4th 1193 (9th Cir. 2025) ...............................................................................2, 3

**Rules**

Fed. R. Civ. P. 37...............................................................................................................1

iii

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

Case 3:23-md-03084-CRB Document 756-4    Filed 04/11/25    Page 143 of 324

Fed. R. Civ. P. 41 ....................................................................................................................2

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS

Case No. 3:23-MD-3084-CRB

**INTRODUCTION**

In their Motion, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber" or "Defendants") provided evidence, including forensic analysis, that the Plaintiffs at issue had submitted non-bona fide receipts. ECF 4137. Specifically, Uber demonstrated that several of these Plaintiffs submitted ride receipts that showed signs of having been altered from bona fide receipts in Uber's system from other rides and riders. *Id.* at 3–13. Another produced a ride receipt that was formatted in a way that was inconsistent with the standard formatting used in Uber's system. *Id.* at 13–14. None of Plaintiffs' responses deny the alleged fraud. The submission of falsified discovery is grounds for an order to show cause why plaintiffs should not be dismissed *with* prejudice under Federal Rule of Civil Procedure 37. *Pro Seminar Consultants, Inc. v. Sina Am. Tech. Exch. Council, Inc.,* 727 F.2d 1470, 1474 (9th Cir. 1984).

The nature of Plaintiffs' fraud, the prejudice to Uber, and the inadequacy of lesser sanctions favor this result. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).[1] Indeed, courts have repeatedly ordered cases to be dismissed with prejudice under similar circumstances. *See, e.g.*, *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) ("We have repeatedly upheld the imposition of the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and court orders."); *IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*, No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, at *14 & *26 (C.D. Cal. May 13, 2009); *see also, e.g.*, *Singh v. Hancock Nat. Res. Grp., Inc.*, No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893, at *24 (E.D. Cal. Feb. 21, 2017); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176 (10th Cir. 2009).

One of the seven Plaintiffs who was identified in Uber's Motion (Plaintiff A.G.) failed to file a response to that motion and therefore should be deemed to have consented to the relief Uber sought. *Spears v. Baldwin Park Unified Sch. Dist.,* No. 24-1428, 2025 WL 2028305, at *1 (9th Cir. July 21, 2025). Five other Plaintiffs filed responses but made only the conclusory assertion that Uber's Motion

---

[1] In their responses, none of the Plaintiffs subject to Uber's Motion addressed any of the five factors identified in cases like *Adriana* as bearing on whether a court should dismiss with prejudice under Federal Rule of Civil Procedure 37. ECF 4244; ECF 4248. In light of that, Uber does not repeat its analysis of those factors here, but rests on its earlier briefing. ECF 4137 at 14–17.

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

should be denied. ECF 4244; ECF 4248. They did not raise any arguments that their receipts were not fraudulent or otherwise make a case for why they should not be ordered to show cause; nor did they cite any legal authority. These five Plaintiffs, too, have waived any substantive arguments against the relief Uber seeks. Accordingly, Uber's motion should be granted. *See Waterkeeper All. v. U.S. EPA,* 140 F.4th 1193, 1213 (9th Cir. 2025). As discussed in Section III, the remaining Plaintiff subject to Uber's motion responded by submitting another fraudulent receipt via MDL Centrality. The Court should grant Uber's request to depose this Plaintiff.

Finally, two Plaintiffs whose limited depositions Uber has requested to explore fraud issues argue, without any details or supporting arguments, that the depositions would be "fishing expedition[s] lacking any relevance" to their claims and "unduly burdensome." ECF 4244; ECF 4248. The requested depositions of Plaintiffs with MDL IDs 3962 and 3621 are wholly relevant to Plaintiffs' claims and the evidence of fraud therein as well as to the issue of whether others are assisting them (and/or other plaintiffs like them) in committing fraud. Uber's requested relief imposes no burden that these Plaintiffs have not agreed to undertake by choosing to file their complaints. *See Estate of Arroyo v. Cnty. of San Diego,* No. 21-cv-1956, 2025 WL 1914399, at *12 (S.D. Cal. Apr. 14, 2025).

Like Uber's prior motions for orders to show cause why plaintiffs should not be dismissed for submitting fraudulent receipts, ECF 3876; ECF 3972, Uber's current motion should be granted.

## ARGUMENT

### I.   Plaintiff A.G. has not responded to Uber's Motion and therefore should be deemed to have consented to the relief sought.

Peiffer Wolf Carr Kane Conway & Wise (Peiffer"), representing the Plaintiff in *A.G. v. Uber Technologies, Inc., et al.,* No. 3:25-cv-07373-CRB, did not file a response in opposition to Uber's Motion. "Plaintiff's failure to respond may be interpreted as nonopposition." *George v. United States,* 901 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012). And unopposed motions can be granted under Rule 41. *Sotoodeh v. City of S. El-Monte,* No. 24-3848, 2025 WL 1409493, at *2 (9th Cir. May 15, 2025). Even in the context of case-terminating motions to dismiss, failure to respond is deemed to be consent to the motion being granted. *Spears,* 2025 WL 2028305, at *1. Thus, because A.G. failed to timely oppose Uber's Motion, the motion should be granted as to A.G.

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

**II.    Five other Plaintiffs have failed to make substantive arguments or cite legal authority in opposition to Uber's Motion and should therefore be deemed to have waived any challenge to the relief sought.**

Pulaski Kherkher, PLLC and Reich and Binstock, LLP filed "responses" on behalf of their clients, but did not include any supporting arguments or citations as to five of those clients: P.T., S.W., A.E., A.D., and K.H. ECF 4244; ECF 4248. Both briefs are only one paragraph long and state the conclusion that this Court should deny Uber's motion without any explanation as to why. ECF 4244; ECF 4248. These purported oppositions do not argue that Plaintiffs did not commit fraud or cite authority suggesting that potential discovery fraud is not serious or should not result in a show-cause order. ECF 4244; ECF 4248. It is well established that courts "will generally not consider . . . arguments that are not meaningfully developed." *Waterkeeper All.,* 140 F.4th at 1213; *see also United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."); *United States v. Wenger,* No. 23-cr-00268, 2025 WL 256988, at *11 (N.D. Cal. Jan. 17, 2025) (argument waived through failure to point to evidence or provide citations to the record). Indeed, parties can be deemed to have "abandoned" claims or arguments that they fail to sufficiently develop. *Blumenkron v. Multnomah Cnty.,* 91 F.4th 1303, 1318 (9th Cir. 2024); *see also Hughes v. Rodriguez,* 31 F.4th 1211, 1224 (9th Cir. 2022) (claims waived where party failed to "include his 'contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relie[d]'"); *Allen v. Lizarraga,* No. 5:15-cv-04387, 2018 WL 3956207, at *18 (N.D. Cal. Aug. 17, 2018) (claim "effectively waived" where party "provide[d] no arguments to support" it). Because Plaintiffs P.T., S.W., A.E., A.D., and K.H. have waived any opposition to Uber's arguments in the Motion by failing to specifically respond to them, Uber's Motion should be granted as to these five Plaintiffs. *See McKinney v. Corsair Gaming, Inc.,* 646 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022) (granting motion to dismiss where Plaintiffs waived their opposition by failing to address argument).

**III.    The only Plaintiff that substantively responded to Uber's Motion, R.L., did not argue that the first receipt was bona fide but instead submitted a *second* fraudulent receipt.**

In response to Uber's Motion, Pulaski Kherkher argues that "[t]he Court should further deny Defendant's show cause motion with respect to Plaintiff R.L who recently produced a *bona fide* ride

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS
Case No. 3:23-MD-3084-CRB

receipt via MDL Centrality." ECF 4244 (emphasis in original). The new receipt is not "bona fide," but fraudulent.

As set forth in Uber's Motion, Plaintiff R.L. initially submitted a receipt in this litigation that was altered from an original receipt for a different ride that actually took place on August 30, 2025. ECF 4137 at 5. The date on the ride receipt was changed from "August 30, 2023" to "August 16, 2023," and the formatting on the submitted receipt was inconsistent with Uber's standard formatting. *Id.* Plaintiff R.L.'s response to Uber's motion does nothing to explain or contradict these indicia of fraud; indeed, it does not even address them. ECF 4244. A response that "contains no explanation as to *why*" the challenged conduct occurred, "fails to acknowledge that [an] error was unacceptable or apologize, and does not reflect any commitment to do better in the future" is "fundamentally inadequate[.]" *Soto v. United Airlines Inc*., No. 24-cv-03045, 2024 WL 3996068, at *1 n.1 (N.D. Cal. Aug. 28, 2024) (emphasis in original). Moreover, the fact that Plaintiff R.L. did not deny that the first receipt was fraudulent—but instead submitted a new receipt—is dispositive. *See United States v. Holmes,* 129 F.4th 636, 657 (9th Cir. 2025) (evidence that party took remedial measures was "highly probative" of party's "state of mind" and awareness of problem remediated). If the receipt Plaintiff initially submitted was valid, the logical course would be for her to substantiate its validity, not to remain silent about it and submit a different receipt as support for her filed claim.

Worse still, the new receipt Plaintiff R.L. provided via MDL Centrality is also fraudulent. The receipt again shows a ride by ▮▮▮▮▮ on August 16, 2023 for a total of $38.91. However, the receipt includes an active "Download PDF" link and, when clicked, the link includes the same Trip uuID ▮▮▮▮▮▮▮▮▮▮▮▮ for an August 30, 2023 trip, *not* the fraudulent August 16, 2023 trip that Plaintiff now claims in this litigation. Ex. 1; Harrison Decl. 4:1–6:15.

---

4

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS

Case No. 3:23-MD-3084-CRB



**Exhibit A: 3666_160574.pdf**

**Uber web server response to requested embedded "Download PDF" URL contained in 3666_160574.pdf**



**Exhibit B: 3666_Real Receipt_Email Version.pdf**

In sum, Plaintiff R.L: (a) does not deny that the first submitted receipt was fraudulent (nor does Plaintiff's response even address Uber's evidence of fraud) and (2) has now doubled down and submitted a second fraudulent receipt. Plaintiff R.L should therefore be ordered to show cause why their claims should not be dismissed with prejudice.

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS

Case No. 3:23-MD-3084-CRB

**IV.** **Depositions of Plaintiffs A.E. and J.H. related to the potential submission of fraudulent receipts are highly relevant and not unduly burdensome. And given their new fraudulent receipt submitted in this litigation, a deposition of Plaintiff R.L. is warranted.**

Plaintiffs A.E. (MDL ID 3962) and J.H. (MDL ID 3621) both assert, without citing facts or legal authority in support, that deposing them about the submission of non-bona fide receipts would be "an impermissible fishing expedition lacking any relevance to [their] claims against Defendants." ECF 4244; ECF 4248. They are incorrect. The discovery misconduct that Plaintiffs appear to have committed (MDL ID 3962) or assisted with (MDL ID 3621) relates to "issues [that] are not peripheral" but that "go to [the] underlying questions in this case[,]" specifically whether and how Plaintiffs committed fraud. *Twins Special Co., Ltd. v. Twins Special, LLC,* No. 23-cv-223, 2025 WL 1292528, at *10 (S.D. Cal. May 5, 2025). Moreover, the depositions are needed to determine whether others assisted Plaintiffs in committing fraud. Specifically, and as previously explained in Uber's Motion, the receipt submitted by Plaintiff with MDL ID 3962 includes a Trip uuID that is now the basis of *two* fraudulent receipts in the above captioned litigation—one of which (MDL ID 3286) is already subject to the Court's Order to Show Cause issued on September 9, 2025. ECF 4137 at 3:26–4:25, ECF 3876. That Plaintiff did not respond to the Court's show-cause order. Separately, the receipt submitted by Plaintiff with MDL ID 3787 (which is at issue in this Motion) is similar to the receipt submitted by Plaintiff with MDL ID 3621. Both Plaintiffs with MDL IDs 3787 and 3621 are represented by Pulaski Kherkher, PLLC and thus, the deposition of MDL ID 3621 is needed to determine how MDL ID 3621 assisted MDL ID 3787 in committing fraud in this case.

Because information about whether Plaintiffs fabricated receipts could "corroborate or undermine Plaintiff[s'] claims in this case," it is highly relevant and warrants further investigation. *Adams v. Sotelo,* No. 3:16-cv-02161, 2018 WL 3019928, at *3 (S.D. Cal. June 18, 2018). As set forth in Uber's Motion, ECF 4137 at 18, courts have repeatedly granted additional limited discovery to investigate potential litigation misconduct like that at issue here. *See, e.g.*, *Estate of Arroyo,* 2025 WL 1914399, at *12; *Barton v. Delfgauw,* No. 3:21-cv-05610, 2025 WL 814484, at *4 & *6 (W.D. Wash. Mar. 13, 2025).

Plaintiffs' claim that the proposed depositions would be "unduly burdensome" is similarly unpersuasive. ECF 4244; ECF 4248. "The party claiming that a discovery request is unduly

6

burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Universal Dyeing & Printing, Inc. v. Zoetop Business Co., Ltd.,* No. 22-cv-3741, 2023 WL 9004983, at *8 (C.D. Cal. June 23, 2024) (internal quotations omitted); *see also Al Otro Lado, Inc. v. Wolf,* No. 3:17-cv-02366, 2020 WL 4336064, at *3 (S.D. Cal. July 27, 2020) (permitting deposition where party opposing failed to provide "competent evidence demonstrating the time, expense, burden, or specific, non-speculative harm that will result") (internal quotations omitted). Plaintiffs have provided no specific evidence of burden from these depositions, but only the bare assertion that such a burden exists. Uber seeks only narrowly tailored depositions "not to exceed 3 hours" on limited topics "regarding how the Plaintiffs became involved in the litigation, how the fraudulent receipt was generated and distributed, and who else was involved in or aware of the fraud at issue here." ECF 4137-1. Courts have recognized that such tailoring avoids potential burden to the deponent. *See Hager v. Arioso Diagnostics, Inc.,* No. 23-mc-80261, 2023 WL 8654388, at *3 (N.D. Cal. Dec. 14, 2023); *Shammam v. Am. Honda Fin. Corp.,* No. 3:24-cv-00648, 2025 WL 2816791, at *4 (S.D. Cal. Sep. 25, 2025). This Court should permit the limited depositions of MDL IDs 3962 and 3621 that Uber seeks. Further, and in light of Plaintiff R.L.'s submission of a second fraudulent receipt, this Court should permit the limited deposition of Plaintiff with MDL ID 3666. *See M&F Fishing, Inc. v. Certain Underwriters at Lloyds,* No. 06-cv-0934, 2007 WL 9706491, at *1 & *7 (S.D. Cal. April 13, 2007) (permitting deposition as relevant and proper where authenticity of records was at issue). Because R.L.'s second fraudulent submission was made in response to Uber's Motion and thus could not be addressed at the time that Motion was made, it is appropriate for Uber to address that submission for the first time in this Reply. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944, 2016 WL 11505721, at *3 (N.D. Cal. March 9, 2016); *DeCastro v. McKnight,* No. 2:24-cv-435, 2025 WL 2431688, at *4 (D. Nev. Aug. 21, 2025) ("New arguments are permitted—indeed expected—in a reply if they are responsive to points or authorities raised in the response . . . ."). A revised proposed Order including the additional deposition is attached as Exhibit C.

## V.   Conclusion

The Plaintiffs subject to this Motion committed (and even now, continue to commit) serious litigation misconduct. Plaintiffs in their oppositions have failed to rebut this evidence of fraud or

7

provide any explanation or excuse. The only Plaintiff to provide any substantive response has not disputed that the first submitted receipt was fraudulent and instead has submitted a second fraudulent receipt. This Court should grant the order requiring Plaintiffs to show cause why their claims should not be dismissed with prejudice and grant the limited depositions that Uber requests.

8

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS

Case No. 3:23-MD-3084-CRB

DATED: November 3, 2025

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)

9

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS

Case No. 3:23-MD-3084-CRB

mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

---

10

DEFENDANTS' REPLY SUPPORTING MOTION FOR ENTRY OF ORDER
TO SHOW CAUSE AND LIMITED DEPOSITIONS

Case No. 3:23-MD-3084-CRB

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>~~[PROPOSED]~~ **AMENDED ORDER TO SHOW CAUSE WHY PLAINTIFFS IN EXHIBIT A1 WHO HAVE SUBMITTED NON-BONA FIDE RIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE**<br><br>Judge:    Honorable Charles R. Breyer |

### ~~[PROPOSED]~~ AMENDED ORDER

Having considered Uber's Motion for Entry of an Order to Show Cause Why 7 Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed with Prejudice, the Court hereby GRANTS the motion.

The Court's Pretrial Order No. 5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" ECF 175, ¶ 4.

The 7 Plaintiffs listed in Exhibit A1 of the Motion have submitted non-bona fide receipts.

The Ninth Circuit has recognized that dismissal of claims is warranted under Federal Rule of Civil Procedure 37 where a party "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984). Courts may also impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court[.]" *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Accordingly, the 7 Plaintiffs listed in Exhibit A1 are hereby ORDERED TO SHOW CAUSE why their claims should not be dismissed with prejudice. The Plaintiffs shall file a written response

1

~~[PROPOSED]~~ AMENDED ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

no later than December 5, 2025. The response must specifically address the factual and legal basis for the submission of the non-bona fide receipts and why the conduct does not warrant dismissal under the Court's inherent powers.

The Court orders Plaintiffs with MDL IDS 3621, 3962, and 3666 to submit within 30 days to a deposition not to exceed 3 hours regarding how the Plaintiffs became involved in the litigation, how the fraudulent receipt was generated and distributed, and who else was involved in or aware of the fraud at issue here.

**IT IS SO ORDERED.**

Dated: ___November 19___, 2025



HON
United                                    ge
Judge Charles R. Breyer

[PROPOSED] AMENDED ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

# EXHIBIT A1

| MDL ID | Law Firm |
|---|---|
| 3666 | Pulaski Law Firm, PLLC |
| 3699 | Pulaski Law Firm, PLLC |
| 3787 | Pulaski Law Firm, PLLC |
| 3877 | Reich and Binstock, LLP |
| 3921 | Peiffer Wolf Carr Kane Conway & Wise |
| 3962 | Reich and Binstock, LLP |
| 3977 | Reich and Binstock, LLP |

[PROPOSED] AMENDED ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

ALLISON M. BROWN (Admitted *Pro Hac Vice*)
alli.brown@kirkland.com
JESSICA DAVIDSON (Admitted *Pro Hac Vice*)
jessica.davidson@kirkland.com
CHRISTOPHER D. COX (Admitted *Pro Hac Vice*)
christopher.cox@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW-CAUSE ORDERS** |
| This Document Relates to: | |
| *See Exhibit to Motion* | Date:        January 16, 2026<br>Time:        10:00 a.m.<br>Courtroom:   6 – 17th Floor |

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

## NOTICE OF MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 16, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order (1) dismissing without prejudice the claims of the Plaintiffs listed in Exhibit B to the Declaration of Michael B. Shortnacy and subject to Pretrial Order No. 31 ("PTO 31") for failing to prosecute their cases and comply with that order; (2) dismissing with prejudice the claims of the Plaintiffs listed in Exhibit A to the Declaration of Michael B. Shortnacy and subject to this Court's September 9 and September 22, 2025 show-cause orders for failing to comply with those orders to show cause why their claims should not be dismissed; and (3) ordering such relief as necessary to deter further fraud and widespread disregard of this Court's Orders.

This Motion is made pursuant to PTO 31 (ECF 3877), this Court's September 9 and September 22, 2025, orders to show cause (ECF 3876; ECF 3972), Rules 16(f)(1)(C), 37(b)(2)(A)(v), and 41(b) of the Federal Rules of Civil Procedure. This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Michael B. Shortnacy; the concurrently filed Proposed Order; all evidence, pleadings, and papers filed herewith; the entire file in this coordinated action; any Reply that may be filed in support of this Motion; and any other arguments or evidence that may be presented to the Court in support of this Motion.

Dated: November 21, 2025

---

1

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT..........................................................................................................1

BACKGROUND .........................................................................................................................4

ARGUMENT ..............................................................................................................................8

I.    THE CLAIMS OF 181 PLAINTIFFS WHO FAILED TO RESPOND TO PTO 31
      SHOULD BE DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 41(B). ... 8

    A.    Four *Malone* Factors Support Dismissal.................................................................. 9

    B.    The Remaining *Malone* Factor Does Not Weigh in Plaintiffs' Favor Due to Ongoing
      Noncompliance. ...................................................................................................... 10

II.   THE CLAIMS OF THE 27 PLAINTIFFS WHO FAILED TO RESPOND (OR
      ADEQUATELY RESPOND) TO THE ORDER TO SHOW CAUSE SHOULD BE
      DISMISSED WITH PREJUDICE PURSUANT TO RULE 41(B). ................................ 10

III.  THE COURT SHOULD ORDER SUCH OTHER RELIEF AS NECESSARY TO
      DELIVER JUSTICE AND SEND THE MESSAGE THAT FRAUD AND DISREGARD
      OF THE COURT'S ORDERS WILL NOT BE REWARDED......................................... 12

CONCLUSION.......................................................................................................................... 13

i

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amatrone v. Champion*,
No. 15-cv-01356-JST, 2017 WL 4618671 (N.D. Cal. Oct. 16, 2017)........................................9

*Amina v. WMC Mortg. Corp.*,
554 Fed. App'x 555 (9th Cir. 2014) ......................................................................................11

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prods. Liab. Litig.*,
2007 WL 136625 (N.D. Cal. Jan. 12, 2007) ..........................................................................10

*Computer Task Group, Inc. v. Brotby*,
364 F.3d 1112 (9th Cir. 2004) ...............................................................................................10

*In re Deepwater Horizon*,
907 F.3d 232 (5th Cir. 2018) .................................................................................................13

*Fair Hous. of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) ...................................................................................................9

*GS Holistic, LLC v. TM Smoke Shop, Inc.*,
No. 23-cv-380, 2023 WL 3741621 (C.D. Cal. May 30, 2023)..................................................12

*Hedges v. United States*,
No. 23-cv-03429, 2024 WL 5666537 (N.D. Cal. Mar. 26, 2024) ...........................................12

*Malone v. USPS*,
833 F.2d 128 (9th Cir. 1987) .........................................................................................8, 9, 10

*Pagtalunan* v. *Galaza*,
291 F.3d 639 (9th Cir. 2002) ...................................................................................................9

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig. (In re PPA)*,
460 F.3d 1217 (9th Cir. 2006) ...........................................................................................9, 10

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ....................................................................................13

*Sokolsky v. Meeks*,
789 F. App'x 63 (9th Cir. 2019) .............................................................................................10

*Soto v. United Airlines Inc.*,
No. 24-cv-03045, 2024 WL 3996068 (N.D. Cal. Aug. 28, 2024) ...........................................11

*Thompson* v. *Hous. Auth. of L.A.*,
782 F.2d 829 (9th Cir. 1986) ...................................................................................................9

ii

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

*United States v. Hayes,*
    763 F. Supp. 3d 1054 (E.D. Cal. 2025)......................................................................11

**Rules**

Fed. R. Civ. P. 16............................................................................................................8

Fed. R. Civ. P. 37.........................................................................................................8, 9

Fed. R. Civ. P. 41.....................................................................................................8, 9, 11

iii

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

**SUMMARY OF ARGUMENT**

Plaintiffs' recent, widescale non-responses to Court orders demonstrate there is significant fraud and Plaintiff non-participation in this MDL. Hundreds of individuals have been signed up for this case through click-bait ads and lead generators. After they click on the ads, they nominally become "Plaintiffs." But many do not participate meaningfully in this litigation, and recently an alarming number of these Plaintiffs have been ignoring Court orders.

On July 30, 2025, Uber moved for a case management order requiring Plaintiffs who had not provided a ride receipt to provide a detailed explanation, under penalty of perjury, why they could not produce one. ECF 3604. Plaintiffs argued that Uber's motion was "disingenuous[]," claiming that there was no link between missing receipts and fraud. ECF 3771 at 1. Over Plaintiffs' protests, the Court entered Uber's proposed case management order for Plaintiffs with missing receipts. ECF 3877.

On September 9, 2025, the Court ordered, in PTO 31: "Within 30 days of receiving Uber's written notice, the Plaintiff must either (i) produce a bona fide ride receipt to Defendants via MDL Centrality, or (ii) serve a statement indicating that the Plaintiff is unable to locate the receipt, explaining in detail the reasonable efforts that have been undertaken by Plaintiff to search their email and the Uber app for the receipt, and explaining why Plaintiff has been unable to locate the receipt." *Id.*

Of the 303 Plaintiffs subject to PTO 31's requirements, 181 (approximately 60%) have failed to respond at all, much less by the October 13, 2025 date required under PTO 31:

1

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

Case 3:23-md-03084-CRB    Document 99-5 143-6    Filed 04/11/25 11/21/25    Page 173 of 324



On September 9 and September 22, 2025, the Court also ordered that 27 Plaintiffs "have submitted non-bona-fide receipts. Some of these receipts show on their faces that they were generated using websites designed for creating receipts, such as Makereceipt.com. Other of these receipts contain math errors, formatting inconsistencies, and other glaring errors proving their inauthenticity. Other receipts submitted by these Plaintiffs were altered from actual receipts." ECF 3876; ECF 3972. To address that fraud, the Court ordered these 27 Plaintiffs to "SHOW CAUSE why their claims should not be dismissed with prejudice." *Id.* Of these 27 fraudulent Plaintiffs, 25 (over 90%) entirely failed to respond to the Court's orders. The other two did not claim that their receipts were not fraudulent.

2

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB



### MDL Plaintiffs Subject to Fraudulent Receipts Motions & Subsequent Show Cause Orders

TOTAL # OF PLAINTIFFS — 27

NO REPLY SUBMITTED — 25

REPLY SUBMITTED BUT DID NOT CLAIM RECEIPTS WERE NOT FRAUDULENT — 2

Just two days ago, the Court found that an additional "7 Plaintiffs listed in Exhibit A1 of the Motion have submitted non-bona fide receipts," and ruled that they are "ORDERED TO SHOW CAUSE why their claims should not be dismissed with prejudice." ECF 4440. But, as the above graphic shows, over 90 percent of Plaintiffs have not been responding to this Court's show-cause orders.

Plaintiffs' counsel has argued that there is no problem with fraudulent and non-participating Plaintiffs, as long as non-bellwether Plaintiffs can "resurface" one day in order to receive a settlement. ECF 3771 at 4 ("At the end of the day, no case can go to trial nor settle without the involvement of the plaintiff asserting the claim. Uber faces no risk from those cases where the plaintiff never resurfaces."). But there is certainly no Federal Rule permitting a Plaintiff to remain submerged throughout litigation—immune from Court orders—as long as they are designated "non-bellwether." The Federal Rules and this Court's orders apply to all claimants, including any added via internet

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

advertising promising "significant compensation" with "no paperwork." Total Injury Help, *Rideshare Assault – Free Case Evaluation,* https://www.rideshareassaultjustice.com/ (last visited Nov. 19, 2025).

Uber seeks (1) dismissal without prejudice of the cases of 181 Plaintiffs who have failed to comply with PTO 31; and (2) an order dismissing with prejudice the cases of 27 Plaintiffs subject to this Court's September 9 and 22, 2025 orders to show cause (ECF 3876; ECF 3972).

Most importantly, this Court should also grant such other relief as it deems appropriate to deter fraud and disregard of the Court's orders. Nothing is more critical to the integrity of our judicial system than honesty and adherence to the rule of law.

## BACKGROUND

The material statistics relating to fraudulent receipts are below:

### Fraudulent Receipts

| | |
|---|---|
| Number of Plaintiffs Who Uber Claimed Provided Fraudulent Receipts | 27 |
| Number of Receipts Plaintiffs' Counsel Claim Are Bona Fide | 0 |
| Number Who Plaintiffs' Counsel Claim to Be Unable to Contact | 11 |
| Number of Plaintiffs Subject to the Court's Show-Cause Orders | 27 |
| Number of Plaintiffs Who Failed to Respond to the Court's Show-Cause Orders | 25 |
| Number of Plaintiffs Who Responded to the Court's Show-Cause Orders But Did Not Dispute Fraud | 2 |
| Number of Fraud Plaintiffs Whose Attorneys Moved to Withdraw | 23[1] |
| Number of Fraud Plaintiffs Whose Attorneys' Motions to Withdraw Were Denied | 17 |

Levin Simes LLP, representing Plaintiffs Jane Doe LS 333 and Jane Doe LS 397, initially stated that those Plaintiffs "assure us their receipts are authentic," ECF 3771 at 2, but did not ultimately file any responses to the Court's order to show cause and instead moved to withdraw, ECF 4146. On November 19, 2025, the Court ruled that these same two Levin Simes Plaintiffs (1) had violated this Court's Orders to produce documents; (2) are required to produce documents relating to their fraud; and (3) and are required to sit for a deposition relating to, among other things,

[1] This figure does not include the first counsel withdrawal for Plaintiff Jane Doe 693827, who also filed a separate lawsuit (now dismissed) with different counsel under the pseudonym J.H. Although Peiffer Wolf withdrew as counsel for J.H., it did so before Uber filed its fraud motion. Kherkher Garcia has separately moved to withdraw as counsel for Jane Doe 693827.

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

Case 3:23-md-03084-CRB   Document 5045   Filed 04/20/26   Page 166 of 324

whether others may have been involved in the fraud. ECF 4443 ("Having considered Defendants' Motion to Compel Compliance with Court Orders & to Reset Deadline for Certain Depositions, the Court finds that the Plaintiffs Jane Doe LS 333 and Jane Doe LS 397 have *violated this Court's September 9 and 22, 2025 Orders* (ECF 3876 & 3904) by failing to produce documents by the extended deadline ordered by this Court." (emphasis added)).

The material statistics relating to missing receipts are below:

**Missing Receipts**

| | |
|---|---|
| Number of Plaintiffs with Missing Receipts Subject to PTO 31 For Missing Receipts | 303 |
| Number of PTO 31 Plaintiffs Who Have Since Provided Receipts (Out of 303) | 10 |
| Number of PTO 31 Plaintiffs Subject to PTO 31 Who Failed to Respond | 181 |

Multiple factors are responsible for the significant fraud and Plaintiff non-participation in this docket. First, Plaintiffs' counsel have engaged in aggressive (and highly successful) online click-bait style advertising. The number of Plaintiffs has increased by over 300 just since Uber filed its first fraud Motion on July 30, resulting, in part, from ads like the following "Free Compensation Check!" promise from the Nachawati Firm:



---

5

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

Lead generation firms like Blue Sky, meanwhile, boast that they have "help[ed] law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of $3,600 to $4,800," and "deliver signed retainers at a targeted price range, helping law firms enter or scale into this litigation." *See* Blue Sky Legal, *Uber and Lyft Sexual Assault Litigation: MDL and State Court Landscape*, https://blueskylegal.com/case-types/uber-and-lyft-sexual-assault/ (last accessed Nov. 19, 2025).

> **BLUE SKY LEGAL: YOUR STRATEGIC PARTNER IN RIDESHARE ASSAULT LITIGATION**
>
> Blue Sky Legal is already helping law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of **$3,600 to $4,800**, depending on the complexity of the criteria. We deliver signed retainers at a targeted price range, helping law firms enter or scale into this litigation with predictable, high-quality case acquisition.
>
> Whether your strategy is MDL, state court, or both, we can align targeting and screening to your needs. Our campaigns are compliance-ready, high-performing, and built with transparency. For litigation funders and law firms looking to participate in a landmark mass tort, we offer the volume and vetting needed to build value from day one.
>
> **Contact us to learn more:** https://blueskylegal.com/contact-us/

Once Plaintiffs click on the "Free Compensation Check" (or similar click-bait language in these ads) and their attorneys file a complaint on their behalf, each Plaintiff is required to fill out a Plaintiff Fact Sheet ("PFS"). Plaintiffs must then verify that they have reviewed the PFS and confirmed the answers—which are required to be based on their personal knowledge, information, and belief—are true and correct. Unfortunately, Uber has learned that many Plaintiffs do *not* actually fill out the PFS themselves or even participate meaningfully in the process, let alone review the PFS before submission. Instead, many PFS are systemically "auto-populated" by the law firm without verification prior to upload. And many of the required verifications are not provided at all or are plainly inadequate. *See, e.g.*, ECF 3855 at 4; ECF 4203 (Uber's Amended Motion to Dismiss Cases for Failure to Comply with PTO 10 which was granted by Judge Breyer on November 19, 2025 (ECF 4442)).

Under PTO 5 and PTO 31, Plaintiffs are required to provide a ride receipt or ride information form. Plaintiffs' law firms often auto-populate or mass-populate the reason for not providing ride

6

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

receipts. Over 50 Plaintiffs represented by Williams Hart[2], over 40 Plaintiffs represented by Levin Simes[3], and over 60 Plaintiffs represented by Nachawati Law Group[4] submitted via MDL Centrality ("MDLC") the exact-same or near-exact-same boilerplate reasons for why they could not provide a receipt within the ride information form. Many of these are not real Plaintiffs who are fulfilling their obligations under the Federal Rules; they are instead individuals who clicked on an advertisement to join the litigation and are now having their responses auto-populated or mass-populated at each stage of the case.

Plaintiffs' counsel have repeatedly attempted to withdraw *after* this Court entered orders relating to fraudulent receipts, citing an inability to communicate with their clients. This Court has repeatedly denied those motions:

- One Plaintiff's firm admitted that one Plaintiff "has not responded to any efforts to reach her made by myself or [counsel's] staff since May 9, 2023" but it still "filed in the MDL" "[o]n August 21, 2024." ECF 4103-1 ¶¶ 2, 5e. The Court denied the Motion. ECF 4168.

- Another Plaintiff's firm attempted to withdraw where Plaintiff "has not responded to any phone calls, emails, SMS, or mail delivered to Plaintiff M.J.'s last known address over the last several months." ECF 4258-1 ¶ 2. The Court denied the Motion. ECF 4434.

- A third Plaintiff's firm submitted a show-cause response following this Court's order stating that it "reached out to Plaintiff numerous times from December 31, 2024 to present [October 17, 2025]," ECF 4175-1 ¶ 2, but "[t]o date, Counsel's repeated efforts to contact MDL 2774 have been unsuccessful." ECF 4175 at 2. That counsel filed Plaintiff's case on December 31, 2024. *Id.* at 2.

---

[2] Williams Hart provided the following boilerplate reason (or a near-exact same) within over 50 Plaintiffs' Ride Information Forms via MDLC: "Plaintiff is unable to obtain the receipt for the ride at issue."

[3] Levin Simes provided the following boilerplate reasons (or a near-exact same) within over 40 Plaintiffs' Ride Information Forms via MDLC: (a) "Plaintiff cannot locate the receipt."; or (b) "Plaintiff's counsel is working on getting in contact with Plaintiff to obtain the ride receipt."

[4] Nachawati Law Group provided the following boilerplate reason (or a near-exact same) within over 60 Plaintiffs' Ride Information Forms via MDLC: "Despite a diligent search of Plaintiff's email address that she believes was associated with her Uber account at the time of the subject ride, Plaintiff cannot locate a ride receipt and does not recall whether she ever received a receipt of the ride. Plaintiff has been unable to access her account and locate the receipt despite a diligent effort to do so. Additionally, while Plaintiff believes the below phone number and email address were associated with this ride and account, it is possible that an older or now expired number or email address may have instead been associated with this ride or account, any details of which she does not recall at this time."

7

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

While certain Plaintiffs provided no receipt whatsoever—indeed, this Motion seeks dismissal of 181 such Plaintiffs—other Plaintiffs submitted fraudulent receipts. Plaintiffs incorrectly claim that the fraud problem is limited. In fact, and most concerningly, there may be many more receipts produced by Plaintiffs created using Makereceipt.com (or similar websites) that Uber has not yet been able to identify. For example, Pro or Enterprise level Makereceipt.com memberships permit users to generate receipts without a watermark, *see, e.g.*, ECF 3604 at 3, resulting in fraud that goes undetected.[5]

## **ARGUMENT**

Federal Rule of Civil Procedure 41(b) empowers a court to dismiss a case with prejudice for failure to comply with a court order. Rule 37(b)(2) likewise provides a court with the authority to dismiss an action with prejudice for failure "to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(v); *see also* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."). Pursuant to both Rule 41(b) and Rule 37(b)(2), dismissal of Plaintiffs' claims is justified here.

**I.    THE CLAIMS OF 181 PLAINTIFFS WHO FAILED TO RESPOND TO PTO 31 SHOULD BE DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 41(B).**

Uber moves for dismissal under Rule 41(b) of the claims of 181 Plaintiffs (listed in Ex. B to the Declaration of Michael B. Shortnacy[6]) for their failure to respond to the Court's Pretrial Order 31.[7]

---

[5] To the extent Uber is able to substantiate Plaintiff's ride, it then produces numerous documents consistent with this Court's orders, including: (a) the Chronicle Trip map for the Subject Trip; (b) the Background Check Results for *each and every* background check conducted on the driver; (c) a complete log of Agreements the Driver accepted with Uber; (d) a complete Account Status Log for the Driver; (e) the Driver "Tax Summary" for *every* year the Driver accepted any rides using the Uber Driver App; (f) all Tickets for the Driver; (g) all Communications exchanged between Uber and various third parties related to alleged misconduct and/or crimes by the Driver; and (h) all Communications, regarding the incident, between Uber and Plaintiff, Uber and the Driver, or Uber and any other witness to the Incident. *See* ECF 4287 at 46-49.

[6] This Declaration is attached hereto as Exhibit 1.

[7] "The standards governing dismissal for failure to obey a court order are basically the same under either" Rule 41(b) or Rule 37(b)(2). *Malone*, 833 F.2d at 130. "Rule 37 sanctions, including dismissal, may be imposed where the violation [of a court order] is 'due to willfulness, bad faith, or fault of the

8

The Court already warned Plaintiffs that failure to comply with this order would lead to dismissal. ECF 3877 ¶ e; *see also* ECF 4443 (contemplating dismissal with prejudice for two Plaintiffs' failure to comply with multiple orders of the Court).

When deciding whether to dismiss a case for non-compliance with a court order under Rule 41(b), a district court considers five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. USPS*, 833 F.2d 128, 130 (9th Cir. 1987) (quoting *Thompson* v. *Hous. Auth. of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986)). These factors favor dismissal of Plaintiffs' claims.

### A.    Four *Malone* Factors Support Dismissal.

The first factor, the public's interest in expeditious resolution of the litigation, "always favors dismissal." *Pagtalunan* v. *Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citation omitted). The second factor, the Court's need to manage its docket, also strongly supports dismissal. Adherence to orders like PTO 31 is particularly important in an MDL, where the "district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial." *In re PPA*, 460 F.3d 1217, 1232 (9th Cir. 2006). Under the third *Malone* factor, Plaintiffs' violation of PTO 31 has prejudiced—and continues to prejudice—Uber. A defendant is prejudiced when "the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* at 1227 (quoting *Adriana Int'l Corp,* 913 F.2d at 1412).

The details of where and when the Uber ride on which Plaintiffs were allegedly assaulted took place are some of the most basic information about Plaintiffs' claims. To defend itself, Uber needs to know at a minimum the basis on which Plaintiffs are seeking relief. *Amatrone v. Champion,* No. 15-cv-01356-JST, 2017 WL 4618671, at *4 (N.D. Cal. Oct. 16, 2017). Without this information, it is

party.'" *In re PPA*, 460 F.3d at 1233 (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). "Disobedient conduct not shown to be outside the litigant's control meets this standard." *Id.* The 200 Plaintiffs at issue willfully violated PTO 31 because they have not demonstrated that it was impossible for them to comply with the order. Dismissal is also appropriate under Rule 37. *See In re PPA*, 460 F.3d at 1232–34.

9

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

impossible for Uber to prepare for trial. *See Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004). The third *Malone* factor supports dismissal. The final *Malone* factor, the availability of less drastic sanctions, also supports dismissal. Uber is merely asking for the relief the Court previewed in PTO 31—dismissal of Plaintiffs' claims without prejudice. ECF 3877 ¶ e. "It is hard to imagine a less drastic sanction than dismissal without prejudice." *Sokolsky v. Meeks*, 789 F. App'x 63, 64 (9th Cir. 2019) (cleaned up). This statement is particularly true here, because this Court already warned that dismissal without prejudice could follow Plaintiffs' noncompliance with PTO 31.

Plaintiffs have not complied with PTO 31 and the first three and final *Malone* factors weigh in favor of dismissing their claims.

**B.    The Remaining *Malone* Factor Does Not Weigh in Plaintiffs' Favor Due to Ongoing Noncompliance.**

The remaining *Malone* factor—the public policy favoring disposition of cases on their merits—does not outweigh the other four factors here. A "case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *In re PPA*, 460 F.3d at 1228. These cases cannot be litigated or tried while Plaintiffs refuse to comply with the Court's orders to provide a bona fide ride receipt or statement. Each Plaintiff's case depends on establishing the necessary—but not sufficient—fact that a ride actually took place. Plaintiffs' disregard of court-ordered discovery on this point dooms their cases. Further, the evidence of ongoing fraud in the docket is a tangible result of willful noncompliance with this Court's orders. The preference for resolving cases on the merits therefore does not weigh in Plaintiffs' favor, including because the documents evidencing the merits were not produced in violation of Court orders. *In re Bextra & Celebrex Mktg., Sales Prac. & Prod. Liab. Litig.*, MDL No. 1699, 2007 WL 3022241, at *1 (N.D. Cal. Oct. 12, 2007) (preference for merits resolution did "not weigh in favor of plaintiffs at all" due to failure to comply with court orders).

**II.    THE CLAIMS OF THE 27 PLAINTIFFS WHO FAILED TO RESPOND (OR ADEQUATELY RESPOND) TO THE ORDER TO SHOW CAUSE SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO RULE 41(B).**

This Court previously ordered the 27 Plaintiffs listed in Ex. A to the Declaration of Michael B. Shortnacy to show cause why their cases should not be dismissed with prejudice. ECF 3876; ECF

10

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

3972. The deadline for their response was October 17, 2025. ECF 4120. As of that date, 25 Plaintiffs chose to disregard the Court's order and submit no response at all. Shortnacy Decl. ¶ 3 & Ex. A (listing Plaintiffs subject to order to show cause and their responses or lack thereof). Under the circumstances, these Plaintiffs' claims should be dismissed with prejudice. ECF 3876; ECF 3972; *see, e.g., Amina v. WMC Mortg. Corp.,* 554 Fed. App'x 555, 555 (9th Cir. 2014) (affirming dismissal with prejudice under Rule 41 where Plaintiff failed to respond to order to show cause).

The two Plaintiffs who did respond to the order to show cause said nothing that negates or excuses the fraud this Court already found:

- Jane Doe 693827, the Plaintiff in 24-cv-09515, had two responses filed by two different law firms. Shortnacy Decl. ¶ 3. She was also the Plaintiff in 3:24-cv-03341 under a different pseudonym (J.H.), but her counsel in that case withdrew and the case was dismissed without prejudice. *Id.* The first law firm, Peiffer Wolf, filed a response merely to state that it no longer represents J.H. ECF 4171 ("We no longer represent J.H. and we defer to the Court on this matter.") Of course, Peiffer Wolf did represent J.H. at the time she submitted the fraudulent receipt. Shortnacy Decl. ¶ 3. The second law firm, Kherkher Garcia, did not deny that Jane Doe 693827 had submitted a fraudulent receipt, but simply stated that it did not represent her at the time the receipt was filed and *that it could not get in touch with her to discuss the matter.* ECF 4175 ("Counsel has not been able to confer with MDL 2774 with regards to the authenticity of any ride receipt she may have produced as MDL 1384 and therefore cannot here and now show cause against dismissal with prejudice in that regard."). Notably, Kherkher Garcia states that the last time it attempted to contact Jane Doe 693827 was in August 2025, a month before the Court entered the show-cause order as to her. *See* ECF 3972 (entered Sep. 22, 2025). Neither response disputed that Jane Doe 693827 had submitted a fraudulent receipt.

- Plaintiff R.M. filed a response suggesting that "difficulties in retrieving legacy receipts do not reasonably imply fraud" without directly addressing the indicia of fraud identified by Uber. ECF 4176. In her response, she consented to dismissal with prejudice. *Id.* ("In light of that dismissal with prejudice, the issues identified in the Court's Order to Show Cause are largely moot. Plaintiff respectfully requests that the Court discharge the Order to Show Cause and deny any further discovery or sanctions proceedings as unnecessary."). Plaintiff R.M. did not dispute having submitted a fraudulent receipt.

Neither response addresses Uber's specific evidence that the Plaintiffs submitted fraudulent receipts or otherwise makes a case for why Plaintiffs should be permitted to continue to press their cases before this Court. A response to a show-cause order is "fundamentally inadequate" where, as here, it "contains no explanation as to *why*" the challenged conduct occurred, "fails to acknowledge that [an] error was unacceptable or apologize, and does not reflect any commitment to do better in the future." *Soto v. United Airlines Inc.,* No. 24-cv-03045, 2024 WL 3996068, at *1 n.1 (N.D. Cal. Aug. 28, 2024) (emphasis in original); *see also United States v. Hayes,* 763 F. Supp. 3d 1054, 1066 (E.D.

11

Cal. 2025) (response to order to show cause "inadequate and not credible" where it failed to explain how challenged conduct occurred); *GS Holistic, LLC v. TM Smoke Shop, Inc.,* No. 23-cv-380, 2023 WL 3741621, at *1–2 (C.D. Cal. May 30, 2023) (response to order to show cause "inadequate and insufficient" where it failed to "explain why these failures occurred"). Given Plaintiffs' utter failure to justify or explain their fraud, after several months of not responding to this Court's Order, all 27 of their cases should be dismissed with prejudice. *See Hedges v. United States*, No. 23-cv-03429, 2024 WL 5666537, at *4 (N.D. Cal. Mar. 26, 2024).

**III.  THE COURT SHOULD ORDER SUCH OTHER RELIEF AS NECESSARY TO DELIVER JUSTICE AND SEND THE MESSAGE THAT FRAUD AND DISREGARD OF THE COURT'S ORDERS WILL NOT BE REWARDED.**

Over 200 Plaintiffs willfully failed to respond to either (1) the Court's show-cause orders regarding fraud or (2) the Court's PTO 31 regarding missing receipts. And at least 27 Plaintiffs do not dispute that they committed fraud. *See also* ECF 4440 (Court ordering an additional 7 Plaintiffs to show cause for why they should not be dismissed for fraudulent receipts).

Meanwhile, since Uber filed its first fraud motion on July 30, hundreds of "Plaintiffs" have been lured to file new claims in this MDL, by ads such as this one, promising a "**Significant Compensation**" with "**No Paperwork**" and "**No Hassle**." Total Injury Help, *Rideshare Assault – Free Case Evaluation,* https://www.rideshareassaultjustice.com/ (last visited Nov. 19, 2025).

12

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

Fraudulent and non-compliant Plaintiffs, as well as the advertisers and lead generators who lure them, should be aware that there is no such thing as litigation with "no paperwork" and "no hassle."

Absent such an Order from this Court, this litigation will be clogged with fraudulent and frivolous claims, thereby prejudicing "meritorious" claimants who have complied with their discovery obligations and undermining their "full and meaningful access to the courts." *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005); *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (such conduct "hamper[s] the resolution of meritorious claims by real plaintiffs.").

Uber's proposed Order, attached as Exhibit 2, provides the Court an opportunity to include in its order such remedies and language as are necessary to both deliver justice and deter additional fraud and disregard of Court orders.

## CONCLUSION

This Court clearly notified Plaintiffs of their PTO 31 obligation to produce a bona fide ride receipt or a statement explaining their search efforts and reasons why they have been unable to locate said receipt. ECF 3877. Despite this clear warning, and after specific notice, 181 Plaintiffs still failed to provide a receipt or statement within the allotted time, and this Court should dismiss their claims without prejudice. Similarly, this Court ordered 27 Plaintiffs who submitted fraudulent receipts in this litigation to show cause why their cases should not be dismissed with prejudice. ECF 3876; ECF 3972. Those Plaintiffs failed to do so. Those cases should now be dismissed with prejudice.

Uber also respectfully requests that the Court order such other relief as necessary to both deliver justice and deter fraud and non-compliance with the Court's orders.

Dated: November 21, 2025     Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)

13

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*)
ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108

14

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

Case 3:23-md-03084-CRB   Document 2594-3   Filed 04/20/25   Page 176 of 324

Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

15

DEFENDANTS' MOTION TO DISMISS CASES FOR FAILURE TO COMPLY
WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415ll) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Christopher V. Cotton (Admitted *Pro Hac Vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
ccotton@shb.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SECOND MOTION TO COMPEL COMPLIANCE WITH COURT ORDERS** |
| This Document Relates to: | Date:  February 13, 2026 <br> Time:  10:00 a.m. <br> Courtroom:  6 – 17th Floor |
| *Jane Doe LS 333 v. Uber Technologies, Inc., et al.*, No. 3:23-cv-05930-CRB | |
| *Jane Doe LS 397 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05864-CRB | |

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

## <u>NOTICE OF MOTION TO COMPEL</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 13, 2026, at 10:00 a.m. Pacific, or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order (1) compelling Plaintiffs Jane Doe LS 333 and 397 to comply with this Court's September 9, September 22, and November 19, 2025 Orders within five court days, (2) compelling a sworn declaration from Plaintiffs' counsel that addresses counsel's presuit investigation as to the claims of Plaintiffs Jane Doe LS 333 and LS 397, and (3) ordering such further relief as the Court deems appropriate given Plaintiffs' fraud and repeated noncompliance with this Court orders.

This Motion is made pursuant to this Court's September 9, September 22, and November 19 Orders (ECF 3876; ECF 3977; ECF 4443) and Rules 16(f)(1)(C) & 37(b)(2)(A) of the Federal Rules of Civil Procedure. This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Christopher V. Cotton; the concurrently filed Proposed Order; all evidence, pleadings, and papers filed herewith; the entire file in this coordinated action; any Reply that may be filed in support of this Motion; and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED: December 5, 2025                    Respectfully submitted,

                                           **SHOOK, HARDY & BACON L.L.P.**

                                           By: */s/ Christopher V. Cotton*

                                           CHRISTOPHER V. COTTON

                                           *Attorney for Defendants*
                                           UBER TECHNOLOGIES, INC.,
                                           RASIER, LLC, and RASIER-CA, LLC

---

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

## STATEMENT OF RELIEF SOUGHT

Uber seeks an order (1) compelling Plaintiffs Jane Doe LS 333 and 397 – both clients of the Levin Simes firm – to comply with this Court's September 9, September 22, and November 19, 2025 Orders within five court days, (2) compelling a sworn declaration from Plaintiffs' counsel within five court days that addresses counsel's pre-suit investigation as to the claims of Plaintiffs Jane Doe LS 333 and Jane Doe LS 397; and (3) ordering such further relief as the Court deems appropriate given Plaintiffs' fraud and repeated noncompliance with this Court orders.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Levin Simes Clients Jane Does LS 333 and 397 Have Repeatedly Disregarded Court Orders Relating To The Fraud That This Court Found Them To Have Committed.

This Court has already found that Jane Does LS 333 and 397 – both clients of the Levin Simes firm – have committed fraud. *See* ECF 3876. The Court twice ordered those Plaintiffs to provide discovery, including documents, relating to their fraud. ECF 3876; ECF 4443. The Plaintiffs have repeatedly disregarded those Court orders and not produced the required fraud-related documents. Neither Plaintiffs' fraud nor their repeated disregard of Court orders should be permitted. Uber respectfully requests that the Court order – for yet a third time – that Plaintiffs provide discovery relating to their fraud, and also order any further relief the Court deems appropriate to address Plaintiffs' fraud and repeated non-compliance with Court orders.

In July of this year, Uber made this Court aware that Plaintiffs Jane Does LS 333 and 397 submitted fraudulent receipts. ECF 3604. In response, counsel for Plaintiffs Jane Does LS 333 and 397 asserted – without a shred of supporting evidence – "their receipts are authentic, and that their

---

[1] Uber brings this motion before the Court rather than the Magistrate because it is "a motion relating to sanctions pursuant to Rule 37," which courts have recognized is "not a discovery motion." *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.,* No. 10-cv-1284, 2011 WL 4841285, at *3 (E.D. Cal. Oct. 12, 2011). This Court's referral to the Magistrate was limited to "ALL DISCOVERY PURPOSES." ECF 66. In addition, "district courts are in the best position to interpret their own orders." *Northern Central Distributing, Inc. v. Bogenschutz*, No. 1:17-cv-01351, 2019 WL 1004843, at *6 n.2 (E.D. Cal. March 1, 2019) (*quoting JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.,* 359 F.3d 699, 705 (4th Cir. 2004)). Indeed, Magistrate Judge Cisneros herself has observed that disputes over violations of a district court's order "should be directed to [the district judge] in the first instance, subject to referral [back to the magistrate] if he determines that such a motion implicates discovery issues best addressed by the undersigned." *Wills v. City of Monterey*, No. 21-cv-01998, 2024 WL 1008596, at *9 (March 8, 2024).

---

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

assaults were real," belittling Uber's motion as a "waste [of] court time," "disingenuous," and "violence to due process." ECF 3771 at 1, 4. The Court disagreed, and on September 9, 2025, found that Plaintiffs had "submitted non-bona-fide receipts," ordered them to show cause why their claims should not be dismissed with prejudice, and ordered that they (1) produce native versions of their receipts; (2) produce within 14 days of this Order any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or the website "Makereceipt.com"; and (3) submit within 30 days to a deposition not to exceed 3 hours relating to the authenticity of their receipts. ECF 3876.

Plaintiffs never produced any documents, and so the depositions did not go forward. Instead, on October 14, their counsel at Levin Simes informed Uber by email that "[w]e will be moving to withdraw as counsel from these two cases" and asked for further extensions. ECF 4206-1 ¶ 5. That same evening, Levin Simes filed the motion to withdraw, representing in a supporting declaration that counsel was "unaware of any responsive documents to produce," although he also stated that "[c]ounsel and clients have experienced a fundamental breakdown in communication." ECF 4146-1 ¶¶ 2 & 6. The Court denied the motion to withdraw. ECF 4167.

### 1. Uber's First Motion to Compel as to Jane Does LS 333 & LS 397.

On October 22, 2205, Uber moved to compel Jane Does LS 333 and 397 to produce the documents and sit for the depositions required by the Court's September 9 Order. ECF 4206. Among other things, Uber explained why Plaintiffs' position that no responsive documents exist was untenable. Uber provided expert declarations explaining why documents relating to these frauds must exist, including in the form of credit card statements. ECF 4206-3. First, both Jane Does previously submitted static images of their alleged receipts in February (LS 333) and September (LS 397) 2024. ECF 4206-1 ¶ 3. At a minimum, Plaintiffs must have the underlying sources for those static images (authentic or not) and therefore would be able to respond to the Court's Order to produce "native versions of [those] receipts." ECF 3876. Second, the two alleged rides at issue in Plaintiffs' cases were allegedly paid for by credit cards, so at the very least credit card statements would provide another form of available documentation. ECF 4206-3 at 9. Third, because Plaintiff Jane Doe LS 333 appears

2

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

to have used the website Makereceipt.com to create a fraudulent receipt, she should have credit card statements reflecting the charges for Makereceipt.com, as well as communications and login information relating to her account with that website. *Id.* at 4 & 9. These materials would be responsive to this Court's order that Plaintiffs produce documents relating to "generation of their receipts" and to "the website Makereceipt.com." ECF 3876.

Jane Does LS 333 and 397 and their Levin Simes counsel did not file a response to Uber's motion to compel, which the Court granted on November 19. ECF 4443. The Court ordered Plaintiffs to "immediately" produce the documents called for by its September 9 Order. *Id.*

### 2. Plaintiffs' continued non-compliance.

Plaintiffs continue to defy this Court's orders and refuse to produce documents. On November 25, Plaintiffs' counsel stated that "our clients deny the existence of any responsive documents" and suggested that Uber should "depose them about it." Cotton Decl. ¶ 5. When Uber pointed out that the denial was baseless for the reasons previously detailed to the Court in an expert declaration, Plaintiffs' counsel simply repeated that "[t]hey can't produce something they say does not exist." *Id.* Uber met and conferred with counsel for Jane Does LS 333 and 397 on December 1, 2025. During that meet and confer, Plaintiffs' counsel conceded that he *does not know what these two plaintiffs did to search for responsive documents*. See Cotton Decl. ¶ 6.

### B. The identities of the persons who assisted plaintiffs in committing fraud against this Court and Uber are not known, and further investigation is required in order to deliver justice.

Uber continues to discover fraudulent claims through its ongoing assessment of this docket of cases. *See* ECF 3604; ECF 3784; ECF 4137. The full extent of the fraud being perpetrated is unknown but increasingly concerning. For example, as Uber has previously explained, certain websites allow fraudsters to pay a bit more to make the fraud very difficult to detect. ECF 3604 at 4. Given the breadth of the fraud, a key question needs to be addressed: what are the identities of the persons who are assisting plaintiffs in committing fraud? This question must be addressed, and the fraud must be rooted out and remedied, in order to resolve this docket.

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

Dismissal of fraudulent cases is certainly warranted, but dismissal alone is not enough. Uber is entitled to – as this Court has already ordered – certain document discovery and deposition testimony from Plaintiffs that have submitted fraudulent receipts. *See* ECF 3876; ECF 3972; ECF 4440; ECF 4443. This discovery will enable Uber to more fully who is involved with the fraud and lead to measures that better enable the Court, Uber, and the appropriate authorities to weed it out.

Instead of complying with this Court's orders, Plaintiffs and their counsel simply ignore their court-ordered obligations. That is exactly what Uber is facing from Plaintiffs Jane Doe LS 333 and Jane Doe LS 397. This conduct must end. This Court's orders must be enforced.

## **ARGUMENT**

Federal Rule of Civil Procedure 37(b)(2) states that, where a party "fails to obey an order to provide or permit discovery," a court "may issue further just orders." *See also* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."). These orders may include orders to exclude evidence, strike pleadings, or even dismiss actions, Fed. R. Civ. P. 37(b)(2), but "<u>courts have broad discretion to fashion an appropriate sanction for conduct which abuses the judicial process.</u>" *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 244 (9th Cir. 2021) (internal quotation omitted) (emphasis added). This can include ordering additional discovery. *See, e.g.*, *Hardin v. Mendocino Coast Dist. Hosp'l*, No. 17-cv-05554, 2019 WL 4256383, at *3 (N.D. Cal. Sept. 9, 2019) ("one result that may come from a motion to compel is an order compelling additional discovery."); *Cortez v. Chipotle Mexican Grill, Inc.*, No. 17-cv-4787, 2018 WL 6017033, at *14 (C.D. Cal. May 7, 2018) (ordering document production under Rule 37).

**A. Plaintiffs must comply with this Court's Order to produce documents.**

"Compliance with court orders is not optional" and parties are "not free to ignore the Court's Orders with impunity." *Narula v. Orange Cnty. Superior Ct.*, No. 8:19-cv-00133, 2021 WL 2406810, at *4 (C.D. Cal. May 3, 2021). Indeed, parties (and their attorneys) must comply with a court's discovery orders or face sanctions, including fee shifting and/or the dismissal with prejudice of their claims. Fed. R. Civ. P. 37(b)(2); *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F. 4th 1136, 1146 (9th

4

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

Cir. 2024); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.* (*In re PPA*), 460 F.3d 1217, 1232 (9th Cir. 2006). This Court has not once but twice ordered Jane Does LS 333 and 397 to produce native versions of their receipts and related documents. ECF 3876; ECF 4443. And the Court made clear that the documents must be produced in advance of Plaintiffs' depositions. *Id.* Plaintiffs must comply with these orders.

## B. Dismissal of Plaintiff's claims with prejudice is warranted but does not moot the need for discovery.

Nor can Plaintiffs simply accept a dismissal of their cases as a sanction for their fraudulent submissions and non-compliance with this Court's now-repeated order that they produce documents and sit for depositions. *See Telluride Mgmt. Sols., Inc. v. Telluride Inv. Grp.*, 55 F.3d 463, 466 (9th Cir. 1995) (failure to appear for court-ordered deposition not substantially justified despite prior dismissal of complaint), *abrogated on other grounds by Cunningham v. Hamilton Cnty., Ohio,* 527 U.S. 198, 202 (1999). A plaintiff's "mere desire to dismiss the case did not, and does not, abrogate his duty to comply with his discovery obligations and court orders." *Barrett v. Apple Inc.*, No. 20-cv-4812, 2023 WL 3006641, at *2 (N.D. Cal. April 18, 2023). Due to Plaintiffs' "own choice to file mass-joinder cases," they face court-ordered obligations as any litigant would. *In re PPA*, 460 F.3d at 1233. By choosing to file litigation, Plaintiffs have agreed to take on the burdens of compliance with court orders, which are by their nature sometimes unpleasant or even "coercive," but regardless, "compliance is not optional." *Capolupo v. Ellis*, No. 18-cv-07458-RMI, 2019 WL 2327883, at *7 (N.D. Cal. May 31, 2019). They cannot simply walk away now that dealing with the consequences of their apparent litigation fraud has become inconvenient.

Indeed, it is well established that "the avoidance of an adverse ruling is an abusive reason to seek dismissal." *White v. Donley*, No. 05-cv-7728, 2008 WL 4184651, at *3 (C.D. Cal. Sept. 4, 2008); *see also Coupa Software Inc. v. DCR Workforce, Inc.*, No. 3:23-cv-3102, 2023 WL 6247252, at *4 (N.D. Cal. Sep. 22, 2023) ("District courts have broad discretion to deny a motion for voluntary dismissal when the purpose is to avoid an adverse determination on the merits of the action.") (quoting *Moore's Federal Practice* § 41.40[7][b][v] (3d ed. 2018)). Nor can a plaintiff use dismissal "to escape

5

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

the effect of unfavorable discovery rulings." *Chicano v. Monier, Inc.*, No. 06-cv-5028, 2007 WL 951761, at *1 (W.D. Wash. March 27, 2007). Although dismissal with prejudice is absolutely warranted here as a result of Plaintiffs' fraud and failure to comply with court orders, *see* Fed. R. Civ. P. 37(b)(2), they should not be permitted to use that dismissal as a means to deprive Uber the discovery it seeks regarding the fraudulent conduct.

It is particularly important that Jane Does LS 333 and LS 397 comply with their document production obligations because "discovery misconduct" is a "serious matter." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005). Where it has occurred, courts have not hesitated to order additional discovery as a remedy. *See Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA) Inc.*, No. 14-cv-298, 2016 WL 9454422, at *5 (C.D. Cal. Jan. 21, 2016). Uber has presented significant evidence, which this Court has previously accepted, that Plaintiffs submitted fraudulent receipts in support of their claims, but only Plaintiffs themselves know the full story of their conduct and means by which they perpetrated this fraud. They must answer for it in discovery so that Uber and this Court can better understand the scope of the fraud problem in this MDL and determine appropriate remedies.

In addition, discovery from Jane Does LS 333 and LS 397 is crucial for this Court to understand whether counsel fulfilled its "duty **prior to** filing a complaint . . . to conduct a reasonable factual investigation." *Christian v. Mattel*, 286 F.3d 1118, 1127 (9th Cir. 2002) (emphasis added). These Plaintiffs' fraud (not to mention that of more than thirty other Plaintiffs in this MDL) raises serious questions about whether counsel performed adequate due diligence before initiating the actions it and its clients now want to walk away from. Indeed, a federal judge in Pennsylvania recently referred a matter to the Department of Justice for investigation after finding plaintiffs' attorneys in a product liability action had, among other things, "conducted grossly inadequate presuit investigations" and filed complaints "which include numerous false, misleading, and baseless allegations." *Johnson v. Smithkline Beecham Corp.*, No. 11-cv-5782, 2025 WL 3455934, at *1 (E.D. Penn. Dec. 2, 2025). Fraud issues in mass tort litigation are real, are serious, and warrant full investigation. It is clear there are fraudulent claims on this Court's docket – the extent of which remains unknown.

6

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

**C. Plaintiffs' claim no responsive documents exist is baseless and has already been rejected by this Court.**

Plaintiffs have allegedly told their counsel that no responsive documents exist, but that is not credible on its face. To claim native receipts do not exist after still images of said documents were submitted as proof of their claims is disingenuous, at best, but also more than likely a confirmation of their fraud. In addition, this is the same explanation that Plaintiffs' counsel offered when the parties met and conferred before Uber's first motion to compel, and which the Court previously rejected. ECF 4206 at 2; ECF 4443.

"[I]n order to fulfill its discovery obligations," a party "must confirm that it conducted a thorough search – not just a convenient one – with due diligence." *Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-cv-2286, 2020 WL 2527056, at *7 (C.D. Cal. Feb. 6, 2020). It is not sufficient for a party to simply assert no responsive documents exist. *ML Prods., Inc. v. Aster Graphics, Inc.*, No. 5:23-cv-2904, 2025 WL 2995106, at *5 (N.D. Cal. Oct. 8, 2025). But that is precisely what these Plaintiffs have done. They have only made the naked assertion that no responsive documents exist, without any supporting details or sworn statements. Under these circumstances, Plaintiffs should provide a declaration "describing with specificity what [they] did to search for and collect responsive documents." *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, No. 2020 WL 2838806, No. 16-cv-6370, at *7 (N.D. Cal. June 1, 2020). Without one, it is impossible for the opposing party or the court to "determine whether the party made a reasonable inquiry and exercised due diligence." *Flodin v. Central Garden & Pet Co.*, No. 21-cv-01631, 2024 WL 3859803, at *3 (N.D. Cal. Aug. 16, 2024).

Plaintiffs' counsel's concession that he has no idea what – if anything – these Plaintiffs did to search for responsive documents is likewise troubling and insufficient. "[I]t is not enough for counsel to simply give instructions to his clients and count on them to fulfill their discovery obligations." *Logtale, Ltd. v. IKOR, Inc.*, No. 4:11-cv-5452, 2013 WL 3967750, at *2 (N.D. Cal. July 31, 2013). The Federal Rules of Civil Procedure place an affirmative obligation on attorneys to provide reasonable oversight on their clients' searches for responsive documents and information. *Id.* Plaintiffs' counsel have failed to meet their obligations here.

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

A party's claim that no responsive documents exist must be rejected "where the seeking party presents convincing evidence that further responsive documents do exist." *Block v. Quest Diagnostics, Inc.*, No. 2:24-cv-00059, 2024 WL 5411206, at *11 (C.D. Cal. Nov. 13, 2024). That is precisely the case here. Uber has presented convincing evidence, including a declaration from a forensic expert, that Jane Does LS 333 and 397 must have responsive documents. ECF 4206-3. And common sense dictates that some responsive documents must exist. For example, this Court ordered Plaintiffs to "native versions of [their alleged ride] receipts." ECF 3876. Both Jane Does previously produced ride receipts in this litigation, ECF 4206-1 ¶ 3, so they must have native versions of those receipts that they could produce. Similarly, both Jane Does have claimed that they paid for the Uber rides at issue in this litigation with credit cards, so their credit card statements would constitute "documents… relating to the production of their ride receipts," the production of which this Court has required. ECF 3876. And Jane Doe LS 333's receipt bore indicia that it was created using MakeReceipt.com, ECF 3604-38 at 6, so she should have documents related to her creation of the receipt via that website. Plaintiffs' assertion that these documents do not exist is simply unbelievable and should be rejected. *See Ceballos v. Banda Maguey Corp.*, No. 2:23-cv-10911, at *7 (C.D. Cal. Jan. 31, 2025) (rejecting assertion responsive documents did not exist in light of convincing evidence to the contrary).

**D. Deposition testimony is no substitute for the required production.**

Plaintiffs' counsel argues that Uber should just take these Plaintiffs' depositions and ask them about their failure to produce any responsive documents. However, regardless of whether depositions are to take place, this Court has separately ordered the document production. Plaintiffs' counsel's argument is a blatant attempt to sidestep its obligation to ensure compliance with this Court's order. Counsel should not be encouraged to once again shirk its responsibility and force Uber to extract previously ordered document productions from their uncooperative (and obstructive) clients. Plaintiffs' counsel misses the point of the depositions. These depositions are not about missing documents. Instead, these depositions are about the fraud being perpetrated on this Court and Uber. Importantly, courts have recognized that "a deposition is not a substitute for responding to requests for production of documents." *Penn Nat'l Mut. Casualty Ins. Co. v. Va. Elec. & Power Co.*, No. 2:20-

8

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

cv-66, 2021 WL 6203177, at *5 (E.D.N.C. May 19, 2021); *see also Hirschman v. Agraria Ins. Co.*, No. 4:23-cv-4123, 2024 WL 4068745, at *10 (D.S.D. Sept. 5, 2024) ("deposition testimony does not substitute for the production of documents under Rule 34…. it is not for [defendant] to customize its discovery responses however it sees fit."). Jane Does LS 333 and 397 have already been ordered to produce responsive documents immediately, ECF 4443; now they must do so or face sanctions.

## CONCLUSION

This Court set clear deadlines for Plaintiffs Jane Does LS 333 and 397 to produce documents related to the fraudulent receipts they submitted in this litigation. Plaintiffs are expressly refusing to comply based on the incredible and unsupported contention that no responsive documents exist. This Court should order the following:

(1) Plaintiff Jane Doe LS 333 and Plaintiff Jane Doe LS 397 must produce the documents previously ordered to be produced within five court days. If either Plaintiff takes the position that no responsive documents exist, that Plaintiff must provide a sworn declaration within five court days explaining why the documents identified by Uber herein are allegedly not available for production. If either Plaintiff neither produces all responsive documents nor provides the declaration described herein, such Plaintiff(s) will be found in contempt of Court. Further proceedings will be addressed separately in the event either Plaintiff is in contempt of Court.

(2) Each Plaintiff shall appear for deposition, as previously ordered by the Court for up to three hours, no later than 30 days after entry of this Court's order.

(3) Plaintiffs' counsel shall provide within five court days a sworn declaration that addresses counsel's pre-suit investigation as to the claims of Plaintiffs Jane Doe LS 333 and Jane Doe LS 397, including a privilege log of all communications with each Plaintiff.

(4) Other relief that the Court deems necessary to address Plaintiffs' fraud and non-compliance with the Court's discovery orders.

9

DEFENDANTS' SECOND MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS

Case No. 3:23-MD-3084-CRB

DATED: December 5, 2025

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Christopher V. Cotton*

CHRISTOPHER V. COTTON

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

10

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415ll) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Christopher V. Cotton (Admitted *Pro Hac Vice*)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
ccotton@shb.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*J.H. v. Uber Technologies., Inc., et al.*, No. 3:25-cv-05342-CRB<br><br>*R.L. v. Uber Technologies, Inc., et al*, No. 3:25-cv-05515-CRB<br><br>*A.E. v. Uber Technologies, Inc. et al.*, No. 3:25-cv-07668-CRB | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO COMPEL COMPLIANCE WITH COURT ORDER**<br><br>Date:        February 13, 2026<br>Time:        10:00 a.m.<br>Courtroom:   6 – 17th Floor |

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

# NOTICE OF MOTION TO COMPEL

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 13, 2026, at 10:00 a.m. Pacific, or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order compelling (1) Plaintiffs J.H., R.L., and A.E. to comply with this Court's November 19, 2025 Order by sitting for depositions within 30 days; and (2) Plaintiffs' counsel to produce within five court days a sworn declaration that addresses counsel's presuit investigation as to these Plaintiffs' claims.

This Motion is made pursuant to this Court's November 19 Order (ECF 4440) and Rules 16(f)(1)(C) & 37(b)(2)(A) of the Federal Rules of Civil Procedure. This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Christopher V. Cotton; the concurrently filed Proposed Order; all evidence, pleadings, and papers filed herewith; the entire file in this coordinated action; any Reply that may be filed in support of this Motion; and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED: December 5, 2025                    Respectfully submitted,

                                           **SHOOK, HARDY & BACON L.L.P.**

                                           By: */s/ Christopher V. Cotton*

                                           CHRISTOPHER V. COTTON

                                           *Attorney for Defendants*
                                           UBER TECHNOLOGIES, INC.,
                                           RASIER, LLC, and RASIER-CA, LLC

---

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

**STATEMENT OF RELIEF SOUGHT**

Uber seeks an order compelling (1) Plaintiffs J.H., R.L., and A.E. to immediately comply with this Court's November 19, 2025 Order by sitting for depositions; and (2) Plaintiffs' counsel to produce a sworn declaration that addresses counsel's presuit investigation as to these Plaintiffs' claims.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. J.H., R.L., and A.E., The Evidence That Individuals Have Coordinated To Commit Fraud, And The Persistent Fraud Problem in this MDL.**

As this Court has recognized, a growing number of Plaintiffs in this MDL have submitted fraudulent receipts in support of their claims. ECF 3876; ECF 3972. Uber is continuing to find fraud on a regular basis and will continue to report it to the Court. Moreover, as Uber has previously informed this Court, the fraud found to date may be only part of the iceberg – for example, websites like makereceipt.com allow fraudsters to pay a small price to make fraud much more difficult to detect. ECF 3604 at 4.

On October 13, 2025, Uber filed a Motion for Order to Show Cause that made this Court aware that Plaintiffs and A.E. (MDL 3962) and R.L. (MDL 3666) were among these Plaintiffs. ECF 4137. Specifically, A.E. submitted a receipt bearing a Trip ID that matched a bona-fide receipt in Uber's system, but the name of the rider and date of the ride had been altered on the receipt A.E. submitted. *Id.* at 3-4. In addition, A.E.'s purported receipt included a timestamp error showing purported payment before the alleged ride occurred; the payment timestamp on bona fide receipts is published after the trip is completed. *Id*. at 3. **Moreover, four other Plaintiffs from the MDL have also submitted altered receipts based on the same receipt (with the same Trip ID) that A.E.'s purported receipt altered, suggesting coordination by several individuals engaged in fraud.** Cotton Decl. ¶ 3. Uber

---

[1] Uber brings this motion before the Court rather than the Magistrate because (1) it is to follow up on this Court's prior Orders; and (2) it is a motion "pursuant to Rule 37," which courts have recognized is "not a discovery motion." *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.,* No. 10-cv-1284, 2011 WL 4841285, at *3 (E.D. Cal. Oct. 12, 2011). This Court's referral to the Magistrate was limited to "ALL DISCOVERY PURPOSES." ECF 66. In addition, "district courts are in the best position to interpret their own orders." *Northern Central Distributing, Inc. v. Bogenschutz*, No. 1:17-cv-01351, 2019 WL 1004843, at *6 n.2 (E.D. Cal. March 1, 2019) (*quoting JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.,* 359 F.3d 699, 705 (4th Cir. 2004)).

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

has made multiple attempts to serve a third-party deposition subpoena on the individual whose bona fide receipt served as the basis for these altered receipts, but she has tellingly evaded service. *Id.*

Similarly, Plaintiff R.L. submitted a receipt that matched a bona fide receipt in Uber's system, but had been altered to correspond with Plaintiff's allegations in the MDL. ECF 4137 at 5. In addition, R.L.'s purported receipt included formatting inconsistent with Uber's standard formatting. *Id.* Moreover, when confronted with this evidence of fraud, R.L. did not deny it, but rather submitted a different receipt in support of her claims. Cotton Decl. ¶ 4. That receipt, too, was determined by a forensic expert to have been altered to include a different date from the bona fide receipt with that Trip ID. *Id.* Metadata confirmed that this receipt was created over two years later using Acrobat PDFMaker. *Id.*

Another Plaintiff, J.H. (MDL 3621), submitted a bona fide receipt, but that receipt appeared to have been used as the basis for a fraudulent receipt submitted by another Plaintiff in the MDL. ECF 4137 at 18.

**B. This Court's November 19 Order.**

After reviewing Uber's submissions, on November 19 this Court concluded that Plaintiffs A.E. and R.L. had submitted fraudulent receipts and ordered them to show cause why their claims should not be dismissed with prejudice. ECF 4440. It further ordered A.E., R.L., and J.H. "to submit within 30 days [which would be by December 19] to a deposition not to exceed 3 hours regarding how the Plaintiffs became involved in the litigation, how the fraudulent receipt was generated and distributed, and who else was involved in or aware of the fraud at issue here." *Id.*

**C. Plaintiffs' non-compliance.**

As of the morning of December 5, 2025, despite multiple requests from Uber, Plaintiffs have not provided potential dates for the depositions ordered by this Court. Cotton Decl. ¶ 6. Indeed, according to their attorneys at the Pulaski Law Firm and Reich & Binstock, Plaintiffs A.E. and R.L. have reportedly not responded to multiple communications from counsel regarding their obligations under this Court's November 19 order. *Id.* Plaintiff J.H. reportedly spoke with her counsel on December 4 but declined to provide proposed dates for a deposition. *Id.* During a December 5 meet

2

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

and confer, counsel for Plaintiff J.H. indicated he did not expect Plaintiff J.H. would appear for a deposition if Uber unilaterally noticed the deposition. *Id.* In short, although Uber met and conferred with counsel for these Plaintiffs on December 2 and 5, 2025, counsel could not provide any assurances that their clients would appear for depositions.[2] *Id.* Accordingly, the parties reached an impasse on these issues. *Id.*

## ARGUMENT

Federal Rule of Civil Procedure 37(b)(2) states that, where a party "fails to obey an order to provide or permit discovery," a court "may issue further just orders." *See also* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."). These orders may include orders to exclude evidence, strike pleadings, or even dismiss actions, Fed. R. Civ. P. 37(b)(2), but "courts have broad discretion to fashion an appropriate sanction for conduct which abuses the judicial process." *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 244 (9th Cir. 2021) (internal quotation omitted). This can include ordering additional discovery. *See, e.g.*, *Hardin v. Mendocino Coast Dist. Hosp'l*, No. 17-cv-05554, 2019 WL 4256383, at *3 (N.D. Cal. Sept. 9, 2019) ("one result that may come from a motion to compel is an order compelling additional discovery."); *Cortez v. Chipotle Mexican Grill, Inc.*, No. 17-cv-4787, 2018 WL 6017033, at *14 (C.D. Cal. May 7, 2018) (ordering document production under Rule 37).

### A. Plaintiffs must sit for the depositions this Court has ordered.

"Compliance with court orders is not optional" and parties are "not free to ignore the Court's Orders with impunity." *Narula v. Orange Cnty. Superior Ct.*, No. 8:19-cv-00133, 2021 WL 2406810, at *4 (C.D. Cal. May 3, 2021). Indeed, parties (and their attorneys) must comply with a court's discovery orders or face sanctions, including fee shifting and the dismissal with prejudice of their claims. Fed. R. Civ. P. 37(b)(2); *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F. 4th 1136, 1146 (9th Cir. 2024); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.* (*In re PPA*), 460 F.3d 1217, 1232

---

[2] Given that Plaintiffs' counsel have not heard from their clients and cannot represent they will appear, noticing the depositions would be "a waste of time and resources." *Starbuzz Tobacco, Inc. v. Gold Star Tobacco Inc.,* No. 2020 WL 1162702, at *5 (C.D. Cal. Jan. 7, 2020).

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

(9th Cir. 2006). This Court has ordered Plaintiffs A.E., R.L., and J.H. to sit for depositions. ECF 4440. Plaintiffs must comply with this order. *See Williams v. Parsells*, No. 24-254, 2025 WL 2709500, at *1 (9th Cir. Sept. 23, 2025) (affirming dismissal of plaintiff's action for failing to comply with order to appear for and participate in deposition).

**B. Dismissal of Plaintiffs' claims with prejudice is warranted but does not moot the need for discovery.**

Nor can Plaintiffs simply accept a dismissal of their cases as a sanction for their non-compliance and ignore this Court's order that they sit for depositions. *See Telluride Mgmt. Sols., Inc. v. Telluride Inv. Grp.*, 55 F.3d 463, 466 (9th Cir. 1995) (failure to appear for court-ordered deposition not substantially justified despite prior dismissal of complaint), *abrogated on other grounds by Cunningham v. Hamilton Cnty., Ohio,* 527 U.S. 198, 202 (1999). In fact, if dismissal was the *only* result after Plaintiffs' coordinated fraud efforts in this docket, other fraudulent Plaintiffs would be encouraged to risk *only* that if they were to also be caught. A plaintiff's "mere desire to dismiss the case did not, and does not, abrogate his duty to comply with his discovery obligations and court orders." *Barrett v. Apple Inc.*, No. 20-cv-4812, 2023 WL 3006641, at *2 (N.D. Cal. April 18, 2023). Due to Plaintiffs' "own choice to file mass-joinder cases," they face court-ordered obligations as any litigant would. *In re PPA*, 460 F.3d at 1233. By choosing to file litigation, Plaintiffs have agreed to take on the burdens of compliance with court orders, which are by their nature sometimes unpleasant or even "coercive," but regardless, "compliance is not optional." *Capolupo v. Ellis*, No. 18-cv-07458-RMI, 2019 WL 2327883, at *7 (N.D. Cal. May 31, 2019). They cannot simply walk away now that dealing with the consequences of their apparent litigation fraud has become inconvenient.

Indeed, it is well established that "the avoidance of an adverse ruling is an abusive reason to seek dismissal." *White v. Donley*, No. 05-cv-7728, 2008 WL 4184651, at *3 (C.D. Cal. Sept. 4, 2008); *see also Coupa Software Inc. v. DCR Workforce, Inc.*, No. 3:23-cv-3102, 2023 WL 6247252, at *4 (N.D. Cal. Sep. 22, 2023) ("District courts have broad discretion to deny a motion for voluntary dismissal when the purpose is to avoid an adverse determination on the merits of the action.") (quoting *Moore's Federal Practice* § 41.40[7][b][v] (3d ed. 2018)). Nor can a plaintiff use dismissal "to escape

4

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

the effect of unfavorable discovery rulings." *Chicano v. Monier, Inc.*, No. 06-cv-5028, 2007 WL 951761, at *1 (W.D. Wash. March 27, 2007). Although dismissal with prejudice is absolutely warranted here as a result of Plaintiffs' fraud and failure to comply with court orders, *see* Fed. R. Civ. P. 37(b)(2), they should not be permitted to use that dismissal as a means to deprive Uber the discovery it seeks, and was awarded, regarding the fraudulent conduct.

It is particularly important that these Plaintiffs sit for their depositions because "discovery misconduct" is a "serious matter." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005). Where it has occurred, courts have not hesitated to order additional discovery as a remedy. *See Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA) Inc.*, No. 14-cv-298, 2016 WL 9454422, at *5 (C.D. Cal. Jan. 21, 2016). Uber has presented significant evidence, which this Court has previously accepted, that Plaintiffs submitted fraudulent receipts in support of their claims, but only Plaintiffs themselves know the full story of their conduct and the extent of coordination with others. They must answer for it in their depositions so that Uber and this Court can better understand the scope of the fraud problem in this MDL and determine appropriate remedies and hopefully methods to weed it out.

In addition, discovery from these Plaintiffs is crucial for this Court to understand whether counsel fulfilled its "duty **prior to** filing a complaint . . . to conduct a reasonable factual investigation." *Christian v. Mattel*, 286 F.3d 1118, 1127 (9th Cir. 2002) (emphasis added). Plaintiffs' fraud (not to mention that of more than thirty other Plaintiffs in this MDL) raises serious questions about whether counsel performed adequate due diligence before initiating the actions it and its clients now want to walk away from. The persistence of clickbait-generated clients in this docket – and Plaintiffs' counsels' lack of contact with their clients this far into litigation – further underscores the need for proper pre-filing vetting by Plaintiffs' counsel to avoid injecting even more fraudulent cases in the mix. Indeed, a federal judge in Pennsylvania recently referred a matter to the Department of Justice for investigation after finding plaintiffs' attorneys in a product liability action had, among other things, "conducted grossly inadequate presuit investigations" and filed complaints "which include numerous false, misleading, and baseless allegations." *Johnson v. Smithkline Beecham Corp.*, No. 11-cv-5782, 2025 WL 3455934, at *1 (E.D. Penn. Dec. 2, 2025). Fraud issues in mass tort litigation are real, are

5

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

serious, and warrant full investigation. It is clear there are fraudulent claims on this Court's docket – the extent of which remains unknown but increasingly concerning.

**C. This Court should use Rule 37 to compel Plaintiffs' compliance.**

Under the Federal Rules of Civil Procedure, a court can "treat[] as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ P. 37(b)(2)(vii). This includes orders to sit for depositions where a party has failed "to take all reasonable steps within the party's power to comply." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2389 F.R.D. 548, 552 (N.D. Cal. Feb. 19, 2013). And civil contempt may appropriately be used to get a party to make good faith efforts to comply with a discovery request. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1480 (9th Cir. 1992); *Aldapa v. Fowler Packing Co., Inc.*, No. 1:15-cv-420, 2012 WL 2551000, at *15 (E.D. Cal. June 22, 2021) (using civil contempt to encourage witnesses to appear for depositions). That is exactly what is needed here.

Plaintiffs A.E., R.L., and J.H. have already been ordered to sit for depositions, but they have not made any efforts to comply with that order or even apparently acknowledge it. The Court can and should impose sanctions to prevent the Plaintiffs from simply ignoring its order. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1106 (9th Cir. 2005) (affirming imposition of sanctions to prevent "an intentional effort, reckless and in bad faith… to ignore the court's orders"); *Buccola v. Boucher*, No. 22-cv-3877, 2024 WL 4584-35, at *4 (N.D. Cal. Oct. 24, 2024) (granting sanctions because none of plaintiff's excuses "speak to why [she] could willingly ignore a Court order"). Indeed, this Court has already recognized the possibility that the conduct at issue here – submitting fraudulent ride receipts – "could potentially result in a variety of penalties, including but not limited to dismissal of plaintiffs' claims with prejudice and sanctions against plaintiffs' counsel." ECF 3759.

**CONCLUSION**

This Court set a clear deadline for J.H., R.L., and A.E. to sit for depositions related to the fraudulent receipts they submitted in this litigation. In response, Plaintiffs are non-responsive or, at least in the case Plaintiff J.H., simply refuse to comply with this Court's November 19 Order. This Court should order the Plaintiffs to sit for deposition within 30 days of this Court's order. If any

6

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

Case No. 3:23-MD-3084-CRB

Plaintiff fails to appear for deposition, such Plaintiff(s) should be found in contempt of Court and further proceedings should follow separately. In addition, in light of the circumstances of these cases, Plaintiffs' counsel should be ordered to produce a sworn declaration within five court days of this Court's order that addresses counsel's presuit investigation as to these Plaintiffs' claims, including a privilege log of all communications with each Plaintiff.

.

DATED: December 5, 2025                    Respectfully submitted,

                                           **SHOOK, HARDY & BACON L.L.P.**

                                           By: /s/  Christopher  V. Cotton

                                           CHRISTOPHER V. COTTON

                                           *Attorney for Defendants*
                                           UBER TECHNOLOGIES, INC.,
                                           RASIER, LLC, and RASIER-CA, LLC

7

DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH COURT ORDER

                                           Case No. 3:23-MD-3084-CRB

# Exhibit C

Michael B. Shortnacy (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
|---|---|
| This Document Relates to:<br><br>ALL ACTIONS | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUPOENA DUCES TECUM FOR PRODUCTION FROM A NON-PARTY** |

DEFENDANTS UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT
TO SERVE SUBPOENA

*Case No. 3:23-md-03084-CRB*

YOU ARE HEREBY NOTIFIED that in accordance with Rule 45 of the Federal Rules of Civil Procedure, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC ("Uber") intends to issue a subpoena, copy of which is attached hereto, to be served upon the following person, who is not a party in the above captioned lawsuit and to produce items listed at the time and place specified in the attached Subpoena:

- **Express Digital Services, LLC, 9878 W Belleview Ave, PMB 3038, Littleton, CO 80123**

DATED: September 23, 2025                    Respectfully submitted,

                                            **SHOOK, HARDY & BACON L.L.P.**

                                            By: */s/  Michael B. Shortnacy*
                                                    MICHAEL B. SHORTNACY

                                            *Attorney for Defendants*
                                            UBER TECHNOLOGIES, INC.,
                                            RASIER, LLC, and RASIER-CA, LLC

2

DEFENDANTS UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUBPOENA

*Case No. 3:23-md-03084-CRB*

Case No. 1:25-mc-00121-NYW    Document 1-4    filed 12/22/25    USDC Colorado    pg 4
Case 3:23-md-03084-CRB    Document 828-2    Filed 04/10/26    Page 201 of 324
of 88

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  3:23-md-03084-CRB |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Express Digital Services, LLC, 9878 W Belleview Ave, PMB 3038, Littleton, CO 80123

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.
In lieu of appearance, responsive documents may be mailed/emailed to Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067 (mshortnacy@shb.com).

| Place: Shook, Hardy & Bacon L.L.P., 1660 17th St., Suite 450, Denver, CO 80202 | Date and Time: 10/07/2025 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      09/23/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Michael B. Shortnacy |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC              , who issues or requests this subpoena, are:

Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## DEFINITIONS

1. "ALL" AND "ANY" both INCLUDE "each" AND "every."

2. "DOCUMENTS" means the original OR a copy of handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail OR facsimile, AND every other means of recording upon ANY tangible thing, ANY form of communication OR representation, INCLUDING letters, words, pictures, sounds, OR symbols, or combinations thereof, AND ANY record thereby created, regardless of the manner in which it has been stored, INCLUDING electronically stored information as defined in Fed. R. Civ. P. 34.

3. "INCLUDE" AND "INCLUDING" shall mean "INCLUDING, but not limited to."

4. "OR" AND "AND" shall INCLUDE AND/OR.

5. "PERSON" shall INCLUDE a natural PERSON, firm, association, organization, partnership, business trust, corporation, limited liability company, OR public entity.

6. "RELATING TO" OR "RELATED TO" means, by way of example AND without limitation; demonstrates, describes, memorializes, evidences, comprises, refers to, pertains to, supports, contradicts, affects, discusses, reflects OR concerns ALL OR ANY portion of the matter, facts, AND contentions specified in these requests.

7. "YOU," "YOUR" or "YOUR COMPANY" shall mean, as applicable, Express Digital Services, LLC, INCLDUING YOUR agents, officers, employees, attorneys OR representatives, AND ANY of YOUR parent companies, subsidiaries, affiliates OR divisions, AND ANY of their respective agents, officers, employees, attorneys OR representatives, which were acquired by YOU.

## INSTRUCTIONS

1. Any production YOU make in response to the Requests for Production below, and any subsequent use thereof by any of the parties to this litigation, is subject to the attached Protective Order (ECF 176).

## REQUESTS FOR PRODUCTION

1. ANY AND ALL DOCUMENTS identifying ANY PERSON that has used OR accessed ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com, to generate an Uber ride receipt.

2. ANY AND ALL DOCUMENTS identifying ANY PERSON that has used OR accessed ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, and Make Receipt – Receipt Generat, to generate an Uber ride receipt.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>_____/<br><br>This Order Relates To:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**PROTECTIVE ORDER** |

Pursuant to Pretrial Order No. 4, the parties filed a Stipulated Protective Order and a letter brief outlining certain outstanding disputes on December 21, 2023. Dkt. No. 170. This Protective Order adopts those provisions on which the parties agreed and resolves the disputes identified in the parties' letter brief.

1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.5, below, that this Stipulated

Protective Order does not entitle them to file CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY Information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the court to file material under seal.

2.      DEFINITIONS

2.1     Action: MDL No. 3084 and all related cases that have been or later are filed in, transferred to, or removed to MDL No. 3084.

2.2     Challenging Party: A Party or Non-Party that challenges the designation of information or items under this Order.

2.3     "CONFIDENTIAL" Information or Items: Any Discovery Material that the Producing Party believes in good faith contains financial or business plans or projections; proprietary business information, or other confidential research, design, development, financial, business or commercial information; information regarding or relating to a Party's insurance program; personnel information; personal information about any Party to this lawsuit or employees (current or former) or board members (current or former) of any Party to this lawsuit; the personal information and any identifying information of any Non-Party; non-public incident reports; executive committee selection; and any information regarding any Party or Non-Party not otherwise available to the public that is protected from disclosure by law, regulation, or contract.

2.4     Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.5     Designating Party: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.6     Disclosure or Discovery Material: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, Testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7     Expert: A person with specialized knowledge or experience in a matter pertinent to the litigation, along with his or her employees and support personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action.

2.8     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items: Extremely sensitive "CONFIDENTIAL" Information or Items as defined in Section 2.3 that the Designating Party reasonably believes to be economically or competitively sensitive and warrants the extra layer of protection described below. By way of example, and not limitation, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information includes non-public information reflecting: transactional sales data; technical, sales, product and design research or analysis; research or analysis pertaining to drivers who use Uber's platform; sales information related to specific customers or classes of customers; financial, marketing, or strategic business planning information; trade secrets; pricing information; information related to government or regulatory investigations; information relating to research, development, testing of, or plans for existing or proposed future products; information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs; and communications that constitute, incorporate, summarize, or reference any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information. In designating Discovery Material as Highly Confidential Information, the Producing or Designating Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.9     In-House Counsel: Attorneys who are employees of a party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

3

2.10    Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.11    Outside Counsel of Record: Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12    Party: Any party to this Action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.13    Privileged Material: Disclosure or Discovery Material subject to a claim of attorney-client privilege, work-product protection, or any other legally recognized privilege or immunity from production.

2.14    Producing Party: A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15    Professional Vendors: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.17    Receiving Party: A Party that receives Disclosure or Discovery Material from a Producing Party.

2.18    Testimony: All depositions, declarations, or other testimony taken, provided or used in this Action.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

4

United States District Court
Northern District of California

Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order. Nothing in this Protective Order shall modify or abrogate the rights or responsibilities of the Parties under HIPAA or any other existing data privacy statute.

This Stipulation and Protective Order is without prejudice to the right of any Party to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence any of the material covered by the Stipulation and Protective Order. This stipulation and Protective Order is without prejudice to the right of any Party to seek further or additional protection of any materials or to modify this Stipulation and Protective Order in any way, including, without limitation, an Order that certain materials not be produced at all. This stipulation and Protective Order does not alter, waiver, modify, or abridge any right, privilege or protection otherwise available to any Party with respect to the discovery of matters, including, but not limited to, any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

In the event that additional parties join or are joined in this Action, they shall not have access to the materials designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" pursuant to this Stipulation and Protective Order unless and until the additional parties have executed and, at the request of any Party, filed with the Court, their agreement to be bound by this Stipulation and

United States District Court
Northern District of California

Protective Order in the form of their signing the Acknowledgment and Agreement to Be Bound (Exhibit A).[1]

Nothing in this Stipulation and Protective Order shall be construed to preclude any Party from asserting in good faith that certain Protected Materials require additional protection, such as protection of one Party's sensitive personal information from being disclosed to other Parties. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

4.   DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   DESIGNATING PROTECTED MATERIAL

5.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies under the appropriate standards. The Designating Party must designate for protection only those materials, documents, items, or oral or written communications that qualify—so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. If only a limited and clearly delineated part of

---

[1] If additional non-natural persons are later added as parties to this action and this Protective Order is insufficient to address a party's needs for protection, the party may seek a modification of this Protective Order at that time.

6

the materials, documents, items, or oral or written communications qualify for protection, The Designating Party shall, to the extent practicable, make all reasonable efforts to designate for protection only those parts that qualify.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions, just as disclosure of Protected Material in violation of this order would do. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has

7

United States District Court
Northern District of California

indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES-ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES-ONLY" legend to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)     For Testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party designates within thirty (30) days after receipt of a final transcript, all protected Testimony and specify the level of protection being asserted by giving written notice to the court reporter and all Parties. A Designating Party may specify at the deposition, hearing, or other proceeding, or up to 30 days after receipt of the transcript, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" by the court reporter. All rough or final Testimony transcripts shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" until thirty (30) days after receipt of the final transcript. After that period ends, only Testimony that has been properly designated for protection consistent with the provisions of this Section 5.2(b) shall be covered by the provisions of this Order. Should a pending motion or procedural requirement necessitate an earlier date, the parties shall meet and confer as to a reasonable

8

United States District Court
Northern District of California

date for provision of the confidentiality designation notice.

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. For paper copies of transcribed deposition Testimony, pages of transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. The Designating Party shall inform the court reporter of these requirements. Any failure of or refusal by the court reporter to comply with these procedures will not invalidate the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" designation.

(c)     For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). When possible, in order to minimize the likelihood of inadvertent disclosure of information protected by this Order transmitted by electronic means, the Producing Party shall make a good faith effort to place the appropriate confidentiality designation in the subject of the electronic mail conveying the Protected Material and on the title of the digital document or media through which it is conveyed, or otherwise notify the Receiving Party of the fact that Protected Material is being conveyed. A failure to place the appropriate confidentiality designation in the subject of the electronic mail conveying the information and on the title of the digital document or media through which it is conveyed, or to otherwise notify the Receiving Party of the fact that information protected by this Order is being conveyed, does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. However, a Designating Party cannot seek sanctions against the

Receiving Party if the Receiving Party fails to treat the produced information as "CONFIDENTIAL" until such time as the Designating Party corrects any error or omission as the confidential nature of said information or electronic mail in writing to the Receiving Party, unless the Receiving Party is otherwise on notice that the information is "CONFIDENTIAL" through, for example, a confidentiality stamp on the document.

5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If any Producing Party inadvertently produces or disclosed Protected Material without marking it with an appropriate designation, the Producing Party or a Designating Party shall promptly notify the Receiving Party that the Protected Material should be treated in accordance with the terms of the Stipulated Protective Order, and shall forward appropriately stamped copies of the items in question. Within five (5) days of the receipt of the appropriately stamped copies of the items in question, the Receiving Party shall return or destroy the previously unmarked versions of the items and all copies thereof, and, additionally, must make all other reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The inadvertent disclosure shall not be deemed a waiver of confidentiality.

If any information was disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order prior to notice of the inadvertent failure to designate, the non-Designating Party responsible for the disclosure shall bring all pertinent facts relating to such disclosure of such Protected Materials, to the extent such facts are known or reasonably knowable to the non-Designating Party, to the immediate attention of the Designating Party.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Parties may agree to seek informal conference with the Court. If the Parties still cannot resolve the challenge or do not have such a conference, the Designating Party must file and serve a motion to retain or challenge confidentiality within 14 days of conferring on the challenged designation or an informal conference with the court, whichever is later. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Unless prompt intervention to resolve a dispute over a confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to seek an informal conference with the Court promptly after the Parties have completed the procedure set forth above. The procedures set out in this provision shall be procedural

11

only, and shall not affect the burden on challenging or maintaining a designation as established under applicable law.

6.4    Frivolous challenges. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Action or the consolidated action captioned In re Uber Rideshare Cases, Case No. CJC-21-005188, so long as such use is permitted herein. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)    The officers, directors, and employees, including current and former employees, as well as In-House Counsel, of the Receiving Party to whom disclosure is

12

United States District Court
Northern District of California

reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts (as defined in this Order) or insurers of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The court and its personnel, and any appellate court in this litigation;

(e)     Court reporters, stenographers, or videographers and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f)     Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(h)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information, or any current employee of the Designating Party.

(i)     Special masters or discovery referees appointed by the Court.

(j)     Mediators or settlement officers, and their supporting personnel, mutually agreed upon by the Parties engaged in settlement discussion.

(k)     Any other person as to whom the Designating Party has consented to disclosure in advance.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items. Unless otherwise ordered by the court or permitted in

United States District Court
Northern District of California

13

United States District Court
Northern District of California

writing by the Designating Party, a Receiving Party may disclose any information or item designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" to:

(a)    The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)    Designated In-House Counsel of the Receiving Party who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    Experts of the Receiving Party who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)    The Court and its personnel, and any appellate court in this litigation.

(e)    Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to be Bound." (Exhibit A);

(f)    The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(g)    Special masters, mediators, or other third parties retained by the parties for settlement purposes or resolution of discovery disputes or mediation;

(h)    During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

8.    <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that

14

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY," that Party must:

(a)    Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)    Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)    Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material– and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.    <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

(a)    The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, and the Party is subject to an agreement

United States District Court
Northern District of California

with the Non-Party not to produce the Non-Party's Protected Material, then the Party shall:

(1)     Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)     Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)     Make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use reasonable efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1.   Pursuant to Federal Rule of Evidence 502(d), if a Producing Party inadvertently discloses information (including both paper documents and electronically

United States District Court
Northern District of California

Case 3:23-mc-08430843CRBocument 1-2575ef 87  Filed 04/28/2026 Page 1 72 2210 of 324

stored information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

11.2    When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

11.3    This stipulated Order set forth in this section and its subparts does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege. This agreement also is not intended to waive or limit in any way any Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Right to Additional Protection. Nothing in this Order shall be construed to preclude either Party from asserting in good faith that certain Protected Material requires

17

additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

12.4    This Order shall be binding upon the Parties to this action, upon their attorneys, and upon the Parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The Parties, their attorneys and employees of such attorneys, and their expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order.

12.5    <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action, or any other action, any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court. While a motion to seal is pending before the Court, no Party shall make use in open court, in public, or in any way inconsistent with the protection in this order of any Disclosure or Discovery Material that is subject to that motion to seal without the consent of the Designating Party or the permission of the Court.

United States District Court
Northern District of California

18

## 13.   FINAL DISPOSITION

Within 90 days after the final disposition of this Action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all reasonably accessible copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports and work product, attorney work product, and consultant work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute as Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

Dated: December 28, 2023

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

19

Case No. 1:25-mc-00121-NYW    Document 1-4    filed 12/22/25    USDC Colorado    pg
285 of 282
Case 3:23-md-03084-CRB    Document 58122    Filed 04/10/26    Page 225 of 324

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>Michael B. Shortnacy (SBN 277035)<br>SHOOK, HARDY & BACON L.L.P.<br>2121 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>　Telephone No:　424-285-8330<br><br>　*Attorney For:*　Plaintiff | **For Court Use Only** |

| | |
|---|---|
| *Ref. No. or File No.:*<br>40940 416489 | |

*Insert name of Court, and Judicial District and Branch Court:*
United States District Court, Northern District of California, San Francisco Division

*Plaintiff:*　IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT
　　　　　　LITIGATION
*Defendant:*

| **AFFIDAVIT OF DUE DILIGENCE** | *Hearing Date:*<br>10/07/2025 | *Time:*<br>5:00 pm | *Dept/Div:* | *Case Number:*<br>3:23-md-03084-CRB |
|---|---|---|---|---|

1. I, Brian Olds , and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject Express Digital Services, LLC as follows:

2. *Documents:* Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; Protective Order; Defendants Uber Technologies, Inc., Rasier, Llc, And Rasier-Ca, Llc's Notice Of Intent To Serve Supoena Duces Tecum For Production From A Non-Party

| **Attempt Detail** |
|---|

1) Unsuccessful Attempt by: Brian Olds on: Sep 24, 2025, 2:58 pm MDT at 9878 West Belleview Avenue PMB 3038, Littleton, CO 80123
This is a private mailbox service, Pack & Ship. I am unable to serve here.

Recoverable cost Per CCP 1033.5(a)(4)(B)

3. **Person Who Served Papers:**
　a. Brian Olds
　b. **FIRST LEGAL**
　　1517 W. Beverly Blvd.
　　LOS ANGELES, CA 90026
　c. (213) 250-1111

　d. **The Fee** for Service was: $324.65
　e. I am: NOT A Registered California Process Server

4. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

10/08/2025
*(Date)*　　　　　　　　　　　　　　　　*(Signature)*

AFFIDAVIT OF
DUE DILIGENCE

*14223713*
*(17464016)*

# Exhibit D

Michael B. Shortnacy (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUPOENA DUCES TECUM FOR PRODUCTION FROM A NON-PARTY** |
| This Document Relates to:<br><br>ALL ACTIONS | |

YOU ARE HEREBY NOTIFIED that in accordance with Rule 45 of the Federal Rules of Civil Procedure, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC ("Uber") intends to issue a subpoena, copy of which is attached hereto, to be served upon the following person, who is not a party in the above captioned lawsuit and to produce items listed at the time and place specified in the attached Subpoena:

DEFENDANTS UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUBPOENA

*Case No. 3:23-md-03084-CRB*

- **Shawn Graft d/b/a Express Digital Services, LLC, 9878 W Belleview Ave., PMB 3038, Littleton, CO 80123**

DATED: October 9, 2025

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: */s/  Michael B. Shortnacy*
       MICHAEL B. SHORTNACY

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

2

DEFENDANTS UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT
TO SERVE SUBPOENA

*Case No. 3:23-md-03084-CRB*

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.  3:23-md-03084-CRB |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Shawn Graft d/b/a Express Digital Services, LLC, 9878 W Belleview Ave., PMB 3038, Littleton, CO 80123

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

In lieu of appearance, responsive documents may be mailed/emailed to Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067 (mshortnacy@shb.com).

| Place: Shook, Hardy & Bacon L.L.P., 1660 17th St., Suite 450, Denver, CO 80202 | Date and Time:  10/23/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      10/09/2025

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Michael B. Shortnacy |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC _____ , who issues or requests this subpoena, are:

Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*


_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

1. "ALL" AND "ANY" both INCLUDE "each" AND "every."

2. "CONTACT INFORMATION" means ANY information that could be used to identify a PERSON, INCLUDING name, phone number, physical address, email address, IP address, Apple Account ID, Google Account ID, OR the number AND financial institution RELATED TO ANY payment method, INCLUDING ANY credit card, debit card, OR bank account.

3. "DOCUMENTS" means the original OR a copy of handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail OR facsimile, AND every other means of recording upon ANY tangible thing, ANY form of communication OR representation, INCLUDING letters, words, pictures, sounds, OR symbols, or combinations thereof, AND ANY record thereby created, regardless of the manner in which it has been stored, INCLUDING electronically stored information as defined in Fed. R. Civ. P. 34.

4. "INCLUDE" AND "INCLUDING" shall mean "INCLUDING, but not limited to."

5. "OR" AND "AND" shall INCLUDE AND/OR.

6. "PERSON" shall INCLUDE a natural PERSON, firm, association, organization, partnership, business trust, corporation, limited liability company, OR public entity.

7. "RELATING TO" OR "RELATED TO" means, by way of example AND without limitation; demonstrates, describes, memorializes, evidences, comprises, refers to, pertains to, supports, contradicts, affects, discusses, reflects OR concerns ALL OR ANY portion of the matter, facts, AND contentions specified in these requests.

8. "YOU," "YOUR" or "YOUR COMPANY" shall mean, as applicable, Shawn Graft d/b/a Express Digital Services, LLC, INCLUDING YOUR agents, officers, employees, attorneys OR representatives, AND ANY of YOUR parent companies, subsidiaries, affiliates OR divisions, AND ANY of their respective agents, officers, employees, attorneys OR representatives, which were acquired by YOU.

## INSTRUCTIONS

1. Any production YOU make in response to the Requests for Production below, and any subsequent use thereof by any of the parties to this litigation, is subject to the attached Protective Order (ECF 176).

## <u>REQUESTS FOR PRODUCTION</u>

1. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com, to generate an Uber ride receipt.

2. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt – Receipt Creator, to generate an Uber ride receipt.

3. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts ever generated using ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com.

4. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts ever generated using ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt – Receipt Creator.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>_____/<br><br>This Order Relates To:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**PROTECTIVE ORDER** |

Pursuant to Pretrial Order No. 4, the parties filed a Stipulated Protective Order and a letter brief outlining certain outstanding disputes on December 21, 2023. Dkt. No. 170. This Protective Order adopts those provisions on which the parties agreed and resolves the disputes identified in the parties' letter brief.

1.   <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.5, below, that this Stipulated

Protective Order does not entitle them to file CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY Information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the court to file material under seal.

2.    DEFINITIONS

2.1    Action: MDL No. 3084 and all related cases that have been or later are filed in, transferred to, or removed to MDL No. 3084.

2.2    Challenging Party: A Party or Non-Party that challenges the designation of information or items under this Order.

2.3    "CONFIDENTIAL" Information or Items: Any Discovery Material that the Producing Party believes in good faith contains financial or business plans or projections; proprietary business information, or other confidential research, design, development, financial, business or commercial information; information regarding or relating to a Party's insurance program; personnel information; personal information about any Party to this lawsuit or employees (current or former) or board members (current or former) of any Party to this lawsuit; the personal information and any identifying information of any Non-Party; non-public incident reports; executive committee selection; and any information regarding any Party or Non-Party not otherwise available to the public that is protected from disclosure by law, regulation, or contract.

2.4    Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.5    Designating Party: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.6    Disclosure or Discovery Material: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, Testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

United States District Court
Northern District of California

2.7    Expert: A person with specialized knowledge or experience in a matter pertinent to the litigation, along with his or her employees and support personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action.

2.8    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items: Extremely sensitive "CONFIDENTIAL" Information or Items as defined in Section 2.3 that the Designating Party reasonably believes to be economically or competitively sensitive and warrants the extra layer of protection described below. By way of example, and not limitation, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information includes non-public information reflecting: transactional sales data; technical, sales, product and design research or analysis; research or analysis pertaining to drivers who use Uber's platform; sales information related to specific customers or classes of customers; financial, marketing, or strategic business planning information; trade secrets; pricing information; information related to government or regulatory investigations; information relating to research, development, testing of, or plans for existing or proposed future products; information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs; and communications that constitute, incorporate, summarize, or reference any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information. In designating Discovery Material as Highly Confidential Information, the Producing or Designating Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.9    In-House Counsel: Attorneys who are employees of a party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

3

2.10 <u>Non-Party</u>: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.11 <u>Outside Counsel of Record</u>: Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12 <u>Party</u>: Any party to this Action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.13 <u>Privileged Material</u>: Disclosure or Discovery Material subject to a claim of attorney-client privilege, work-product protection, or any other legally recognized privilege or immunity from production.

2.14 <u>Producing Party</u>: A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15 <u>Professional Vendors</u>: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 <u>Protected Material</u>: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.17 <u>Receiving Party</u>: A Party that receives Disclosure or Discovery Material from a Producing Party.

2.18 <u>Testimony</u>: All depositions, declarations, or other testimony taken, provided or used in this Action.

3. <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order. Nothing in this Protective Order shall modify or abrogate the rights or responsibilities of the Parties under HIPAA or any other existing data privacy statute.

This Stipulation and Protective Order is without prejudice to the right of any Party to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence any of the material covered by the Stipulation and Protective Order. This stipulation and Protective Order is without prejudice to the right of any Party to seek further or additional protection of any materials or to modify this Stipulation and Protective Order in any way, including, without limitation, an Order that certain materials not be produced at all. This stipulation and Protective Order does not alter, waiver, modify, or abridge any right, privilege or protection otherwise available to any Party with respect to the discovery of matters, including, but not limited to, any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

In the event that additional parties join or are joined in this Action, they shall not have access to the materials designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" pursuant to this Stipulation and Protective Order unless and until the additional parties have executed and, at the request of any Party, filed with the Court, their agreement to be bound by this Stipulation and

United States District Court
Northern District of California

Protective Order in the form of their signing the Acknowledgment and Agreement to Be Bound (Exhibit A).[1]

Nothing in this Stipulation and Protective Order shall be construed to preclude any Party from asserting in good faith that certain Protected Materials require additional protection, such as protection of one Party's sensitive personal information from being disclosed to other Parties. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

## 4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## 5.    DESIGNATING PROTECTED MATERIAL

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies under the appropriate standards. The Designating Party must designate for protection only those materials, documents, items, or oral or written communications that qualify—so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. If only a limited and clearly delineated part of

---

[1] If additional non-natural persons are later added as parties to this action and this Protective Order is insufficient to address a party's needs for protection, the party may seek a modification of this Protective Order at that time.

6

the materials, documents, items, or oral or written communications qualify for protection, The Designating Party shall, to the extent practicable, make all reasonable efforts to designate for protection only those parts that qualify.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions, just as disclosure of Protected Material in violation of this order would do. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2   Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)   For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has

7

United States District Court
Northern District of California

indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES-ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES-ONLY" legend to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)    For Testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party designates within thirty (30) days after receipt of a final transcript, all protected Testimony and specify the level of protection being asserted by giving written notice to the court reporter and all Parties. A Designating Party may specify at the deposition, hearing, or other proceeding, or up to 30 days after receipt of the transcript, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" by the court reporter. All rough or final Testimony transcripts shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" until thirty (30) days after receipt of the final transcript. After that period ends, only Testimony that has been properly designated for protection consistent with the provisions of this Section 5.2(b) shall be covered by the provisions of this Order. Should a pending motion or procedural requirement necessitate an earlier date, the parties shall meet and confer as to a reasonable

date for provision of the confidentiality designation notice.

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. For paper copies of transcribed deposition Testimony, pages of transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. The Designating Party shall inform the court reporter of these requirements. Any failure of or refusal by the court reporter to comply with these procedures will not invalidate the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" designation.

(c)    For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). When possible, in order to minimize the likelihood of inadvertent disclosure of information protected by this Order transmitted by electronic means, the Producing Party shall make a good faith effort to place the appropriate confidentiality designation in the subject of the electronic mail conveying the Protected Material and on the title of the digital document or media through which it is conveyed, or otherwise notify the Receiving Party of the fact that Protected Material is being conveyed. A failure to place the appropriate confidentiality designation in the subject of the electronic mail conveying the information and on the title of the digital document or media through which it is conveyed, or to otherwise notify the Receiving Party of the fact that information protected by this Order is being conveyed, does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. However, a Designating Party cannot seek sanctions against the

Receiving Party if the Receiving Party fails to treat the produced information as "CONFIDENTIAL" until such time as the Designating Party corrects any error or omission as the confidential nature of said information or electronic mail in writing to the Receiving Party, unless the Receiving Party is otherwise on notice that the information is "CONFIDENTIAL" through, for example, a confidentiality stamp on the document.

5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If any Producing Party inadvertently produces or disclosed Protected Material without marking it with an appropriate designation, the Producing Party or a Designating Party shall promptly notify the Receiving Party that the Protected Material should be treated in accordance with the terms of the Stipulated Protective Order, and shall forward appropriately stamped copies of the items in question. Within five (5) days of the receipt of the appropriately stamped copies of the items in question, the Receiving Party shall return or destroy the previously unmarked versions of the items and all copies thereof, and, additionally, must make all other reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The inadvertent disclosure shall not be deemed a waiver of confidentiality.

If any information was disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order prior to notice of the inadvertent failure to designate, the non-Designating Party responsible for the disclosure shall bring all pertinent facts relating to such disclosure of such Protected Materials, to the extent such facts are known or reasonably knowable to the non-Designating Party, to the immediate attention of the Designating Party.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

10

does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Parties may agree to seek informal conference with the Court. If the Parties still cannot resolve the challenge or do not have such a conference, the Designating Party must file and serve a motion to retain or challenge confidentiality within 14 days of conferring on the challenged designation or an informal conference with the court, whichever is later. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Unless prompt intervention to resolve a dispute over a confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to seek an informal conference with the Court promptly after the Parties have completed the procedure set forth above. The procedures set out in this provision shall be procedural

11

only, and shall not affect the burden on challenging or maintaining a designation as established under applicable law.

6.4     Frivolous challenges. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Action or the consolidated action captioned In re Uber Rideshare Cases, Case No. CJC-21-005188, so long as such use is permitted herein. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)     The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)     The officers, directors, and employees, including current and former employees, as well as In-House Counsel, of the Receiving Party to whom disclosure is

12

United States District Court
Northern District of California

reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) or insurers of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) The court and its personnel, and any appellate court in this litigation;

(e) Court reporters, stenographers, or videographers and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f) Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(h) The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information, or any current employee of the Designating Party.

(i) Special masters or discovery referees appointed by the Court.

(j) Mediators or settlement officers, and their supporting personnel, mutually agreed upon by the Parties engaged in settlement discussion.

(k) Any other person as to whom the Designating Party has consented to disclosure in advance.

7.3 <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items</u>. Unless otherwise ordered by the court or permitted in

writing by the Designating Party, a Receiving Party may disclose any information or item designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" to:

(a)      The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)      Designated In-House Counsel of the Receiving Party who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)      Experts of the Receiving Party who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)      The Court and its personnel, and any appellate court in this litigation.

(e)      Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to be Bound." (Exhibit A);

(f)      The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(g)      Special masters, mediators, or other third parties retained by the parties for settlement purposes or resolution of discovery disputes or mediation;

(h)      During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

8.      <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that

14

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY," that Party must:

(a)    Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)    Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)    Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material– and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)    The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, and the Party is subject to an agreement

15

United States District Court
Northern District of California

with the Non-Party not to produce the Non-Party's Protected Material, then the Party shall:

(1)    Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)    Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)    Make the information requested available for inspection by the Non-Party.

(c)    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use reasonable efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1.    Pursuant to Federal Rule of Evidence 502(d), if a Producing Party inadvertently discloses information (including both paper documents and electronically

16

stored information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

11.2    When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

11.3    This stipulated Order set forth in this section and its subparts does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege. This agreement also is not intended to waive or limit in any way any Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Right to Additional Protection. Nothing in this Order shall be construed to preclude either Party from asserting in good faith that certain Protected Material requires

United States District Court
Northern District of California

17

additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

12.4    This Order shall be binding upon the Parties to this action, upon their attorneys, and upon the Parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The Parties, their attorneys and employees of such attorneys, and their expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order.

12.5    Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action, or any other action, any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court. While a motion to seal is pending before the Court, no Party shall make use in open court, in public, or in any way inconsistent with the protection in this order of any Disclosure or Discovery Material that is subject to that motion to seal without the consent of the Designating Party or the permission of the Court.

18

## 13.   <u>FINAL DISPOSITION</u>

Within 90 days after the final disposition of this Action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all reasonably accessible copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports and work product, attorney work product, and consultant work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute as Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

Dated: December 28, 2023

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

19

# Exhibit E

Michael B. Shortnacy (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM FOR PRODUCTION FROM A NON-PARTY** |
| This Document Relates to: | |
| ALL ACTIONS | |

YOU ARE HEREBY NOTIFIED that in accordance with Rule 45 of the Federal Rules of Civil Procedure, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC ("Uber") intends to issue a subpoena, copy of which is attached hereto, to be served upon the following person, who is not a party in the above captioned lawsuit and to produce items listed at the time and place specified in the attached Subpoena:

- **Express Digital Services, LLC, 9878 W Belleview Ave., PMB 3038, Littleton, CO 80123**

DEFENDANTS UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT
TO SERVE SUBPOENA

*Case No. 3:23-md-03084-CRB*

DATED: October 17, 2025          Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
          MICHAEL B. SHORTNACY

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

2

DEFENDANTS UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT
TO SERVE SUBPOENA

*Case No. 3:23-md-03084-CRB*

Case No. 1:25-mc-00121-NYW    Document 1-6    filed 12/22/25    USDC Colorado    pg 4
Case 3:23-md-03084-CRB    Document 3818-2    Filed 04/10/26    Page 256 of 324
of 27

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | ) | |
|---|---|---|
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.  3:23-md-03084-CRB |
| | ) | |
| | ) | |
| _Defendant_ | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Express Digital Services, LLC, 9878 W Belleview Ave., PMB 3038, Littleton, CO 80123

_(Name of person to whom this subpoena is directed)_

✔ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

In lieu of appearance, responsive documents may be mailed/emailed to Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067 (mshortnacy@shb.com).

| Place: Shook, Hardy & Bacon L.L.P., 1660 17th St., Suite 450, Denver, CO 80202 | Date and Time: 10/31/2025 5:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        10/17/2025

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| | | /s/ Michael B. Shortnacy |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC , who issues or requests this subpoena, are:

Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case No. 1:25-mc-00121-NYW    Document 1-6    filed 12/22/25    USDC Colorado    pg 6
Case 3:23-md-03084-CRB    Document 818-2    Filed 04/10/26    Page 258 of 324
of 27

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## DEFINITIONS

1. "ALL" AND "ANY" both INCLUDE "each" AND "every."

2. "CONTACT INFORMATION" means ANY information that could be used to identify a PERSON, INCLUDING name, phone number, physical address, email address, IP address, Apple Account ID, Google Account ID, OR the number AND financial institution RELATED TO ANY payment method, INCLUDING ANY credit card, debit card, OR bank account.

3. "DOCUMENTS" means the original OR a copy of handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail OR facsimile, AND every other means of recording upon ANY tangible thing, ANY form of communication OR representation, INCLUDING letters, words, pictures, sounds, OR symbols, or combinations thereof, AND ANY record thereby created, regardless of the manner in which it has been stored, INCLUDING electronically stored information as defined in Fed. R. Civ. P. 34.

4. "INCLUDE" AND "INCLUDING" shall mean "INCLUDING, but not limited to."

5. "OR" AND "AND" shall INCLUDE AND/OR.

6. "PERSON" shall INCLUDE a natural PERSON, firm, association, organization, partnership, business trust, corporation, limited liability company, OR public entity.

7. "RELATING TO" OR "RELATED TO" means, by way of example AND without limitation; demonstrates, describes, memorializes, evidences, comprises, refers to, pertains to, supports, contradicts, affects, discusses, reflects OR concerns ALL OR ANY portion of the matter, facts, AND contentions specified in these requests.

8. "YOU," "YOUR" or "YOUR COMPANY" shall mean, as applicable, Express Digital Services, LLC, INCLUDING YOUR agents, officers, employees, attorneys OR representatives, AND ANY of YOUR parent companies, subsidiaries, affiliates OR divisions, AND ANY of their respective agents, officers, employees, attorneys OR representatives, which were acquired by YOU.

## INSTRUCTIONS

1. Any production YOU make in response to the Requests for Production below, and any subsequent use thereof by any of the parties to this litigation, is subject to the attached Protective Order (ECF 176).

## REQUESTS FOR PRODUCTION

1. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com, to generate an Uber ride receipt from January 1, 2018 to present.

2. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt – Receipt Creator, to generate an Uber ride receipt from January 1, 2018 to present.

3. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts generated from January 1, 2018 to present, using ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com.

4. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts generated from January 1, 2018 to present, using ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt – Receipt Creator.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3084 CRB |
|---|---|
| _____/ | **PROTECTIVE ORDER** |
| This Order Relates To: | |
| ALL ACTIONS | |

Pursuant to Pretrial Order No. 4, the parties filed a Stipulated Protective Order and a letter brief outlining certain outstanding disputes on December 21, 2023. Dkt. No. 170. This Protective Order adopts those provisions on which the parties agreed and resolves the disputes identified in the parties' letter brief.

1.    <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.5, below, that this Stipulated

Protective Order does not entitle them to file CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY Information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the court to file material under seal.

2.   DEFINITIONS

2.1   Action: MDL No. 3084 and all related cases that have been or later are filed in, transferred to, or removed to MDL No. 3084.

2.2   Challenging Party: A Party or Non-Party that challenges the designation of information or items under this Order.

2.3   "CONFIDENTIAL" Information or Items: Any Discovery Material that the Producing Party believes in good faith contains financial or business plans or projections; proprietary business information, or other confidential research, design, development, financial, business or commercial information; information regarding or relating to a Party's insurance program; personnel information; personal information about any Party to this lawsuit or employees (current or former) or board members (current or former) of any Party to this lawsuit; the personal information and any identifying information of any Non-Party; non-public incident reports; executive committee selection; and any information regarding any Party or Non-Party not otherwise available to the public that is protected from disclosure by law, regulation, or contract.

2.4   Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.5   Designating Party: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.6   Disclosure or Discovery Material: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, Testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2

2.7    Expert: A person with specialized knowledge or experience in a matter pertinent to the litigation, along with his or her employees and support personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action.

2.8    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items: Extremely sensitive "CONFIDENTIAL" Information or Items as defined in Section 2.3 that the Designating Party reasonably believes to be economically or competitively sensitive and warrants the extra layer of protection described below. By way of example, and not limitation, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information includes non-public information reflecting: transactional sales data; technical, sales, product and design research or analysis; research or analysis pertaining to drivers who use Uber's platform; sales information related to specific customers or classes of customers; financial, marketing, or strategic business planning information; trade secrets; pricing information; information related to government or regulatory investigations; information relating to research, development, testing of, or plans for existing or proposed future products; information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs; and communications that constitute, incorporate, summarize, or reference any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information. In designating Discovery Material as Highly Confidential Information, the Producing or Designating Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.9    In-House Counsel: Attorneys who are employees of a party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.11    Outside Counsel of Record: Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12    Party: Any party to this Action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.13    Privileged Material: Disclosure or Discovery Material subject to a claim of attorney-client privilege, work-product protection, or any other legally recognized privilege or immunity from production.

2.14    Producing Party: A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15    Professional Vendors: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.17    Receiving Party: A Party that receives Disclosure or Discovery Material from a Producing Party.

2.18    Testimony: All depositions, declarations, or other testimony taken, provided or used in this Action.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

*United States District Court*
*Northern District of California*

Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order. Nothing in this Protective Order shall modify or abrogate the rights or responsibilities of the Parties under HIPAA or any other existing data privacy statute.

This Stipulation and Protective Order is without prejudice to the right of any Party to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence any of the material covered by the Stipulation and Protective Order. This stipulation and Protective Order is without prejudice to the right of any Party to seek further or additional protection of any materials or to modify this Stipulation and Protective Order in any way, including, without limitation, an Order that certain materials not be produced at all. This stipulation and Protective Order does not alter, waiver, modify, or abridge any right, privilege or protection otherwise available to any Party with respect to the discovery of matters, including, but not limited to, any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

In the event that additional parties join or are joined in this Action, they shall not have access to the materials designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" pursuant to this Stipulation and Protective Order unless and until the additional parties have executed and, at the request of any Party, filed with the Court, their agreement to be bound by this Stipulation and

5

Protective Order in the form of their signing the Acknowledgment and Agreement to Be Bound (Exhibit A).[1]

Nothing in this Stipulation and Protective Order shall be construed to preclude any Party from asserting in good faith that certain Protected Materials require additional protection, such as protection of one Party's sensitive personal information from being disclosed to other Parties. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

## 4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## 5.    DESIGNATING PROTECTED MATERIAL

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies under the appropriate standards. The Designating Party must designate for protection only those materials, documents, items, or oral or written communications that qualify—so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. If only a limited and clearly delineated part of

_____

[1] If additional non-natural persons are later added as parties to this action and this Protective Order is insufficient to address a party's needs for protection, the party may seek a modification of this Protective Order at that time.

United States District Court
Northern District of California

the materials, documents, items, or oral or written communications qualify for protection, The Designating Party shall, to the extent practicable, make all reasonable efforts to designate for protection only those parts that qualify.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions, just as disclosure of Protected Material in violation of this order would do. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has

7

indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES-ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES-ONLY" legend to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)     For Testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party designates within thirty (30) days after receipt of a final transcript, all protected Testimony and specify the level of protection being asserted by giving written notice to the court reporter and all Parties. A Designating Party may specify at the deposition, hearing, or other proceeding, or up to 30 days after receipt of the transcript, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" by the court reporter. All rough or final Testimony transcripts shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" until thirty (30) days after receipt of the final transcript. After that period ends, only Testimony that has been properly designated for protection consistent with the provisions of this Section 5.2(b) shall be covered by the provisions of this Order. Should a pending motion or procedural requirement necessitate an earlier date, the parties shall meet and confer as to a reasonable

8

United States District Court
Northern District of California

date for provision of the confidentiality designation notice.

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. For paper copies of transcribed deposition Testimony, pages of transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. The Designating Party shall inform the court reporter of these requirements. Any failure of or refusal by the court reporter to comply with these procedures will not invalidate the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" designation.

(c)    For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). When possible, in order to minimize the likelihood of inadvertent disclosure of information protected by this Order transmitted by electronic means, the Producing Party shall make a good faith effort to place the appropriate confidentiality designation in the subject of the electronic mail conveying the Protected Material and on the title of the digital document or media through which it is conveyed, or otherwise notify the Receiving Party of the fact that Protected Material is being conveyed. A failure to place the appropriate confidentiality designation in the subject of the electronic mail conveying the information and on the title of the digital document or media through which it is conveyed, or to otherwise notify the Receiving Party of the fact that information protected by this Order is being conveyed, does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. However, a Designating Party cannot seek sanctions against the

9

Receiving Party if the Receiving Party fails to treat the produced information as "CONFIDENTIAL" until such time as the Designating Party corrects any error or omission as the confidential nature of said information or electronic mail in writing to the Receiving Party, unless the Receiving Party is otherwise on notice that the information is "CONFIDENTIAL" through, for example, a confidentiality stamp on the document.

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If any Producing Party inadvertently produces or disclosed Protected Material without marking it with an appropriate designation, the Producing Party or a Designating Party shall promptly notify the Receiving Party that the Protected Material should be treated in accordance with the terms of the Stipulated Protective Order, and shall forward appropriately stamped copies of the items in question. Within five (5) days of the receipt of the appropriately stamped copies of the items in question, the Receiving Party shall return or destroy the previously unmarked versions of the items and all copies thereof, and, additionally, must make all other reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The inadvertent disclosure shall not be deemed a waiver of confidentiality.

If any information was disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order prior to notice of the inadvertent failure to designate, the non-Designating Party responsible for the disclosure shall bring all pertinent facts relating to such disclosure of such Protected Materials, to the extent such facts are known or reasonably knowable to the non-Designating Party, to the immediate attention of the Designating Party.

6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

10

does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Parties may agree to seek informal conference with the Court. If the Parties still cannot resolve the challenge or do not have such a conference, the Designating Party must file and serve a motion to retain or challenge confidentiality within 14 days of conferring on the challenged designation or an informal conference with the court, whichever is later. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Unless prompt intervention to resolve a dispute over a confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to seek an informal conference with the Court promptly after the Parties have completed the procedure set forth above. The procedures set out in this provision shall be procedural

only, and shall not affect the burden on challenging or maintaining a designation as established under applicable law.

6.4    Frivolous challenges. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Action or the consolidated action captioned In re Uber Rideshare Cases, Case No. CJC-21-005188, so long as such use is permitted herein. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)    The officers, directors, and employees, including current and former employees, as well as In-House Counsel, of the Receiving Party to whom disclosure is

12

reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    Experts (as defined in this Order) or insurers of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)    The court and its personnel, and any appellate court in this litigation;

(e)    Court reporters, stenographers, or videographers and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f)    Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)    During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(h)    The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information, or any current employee of the Designating Party.

(i)    Special masters or discovery referees appointed by the Court.

(j)    Mediators or settlement officers, and their supporting personnel, mutually agreed upon by the Parties engaged in settlement discussion.

(k)    Any other person as to whom the Designating Party has consented to disclosure in advance.

7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items. Unless otherwise ordered by the court or permitted in

writing by the Designating Party, a Receiving Party may disclose any information or item designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" to:

(a)     The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)     Designated In-House Counsel of the Receiving Party who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The Court and its personnel, and any appellate court in this litigation.

(e)     Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to be Bound." (Exhibit A);

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(g)     Special masters, mediators, or other third parties retained by the parties for settlement purposes or resolution of discovery disputes or mediation;

(h)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

8.     <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that

United States District Court
Northern District of California

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY," that Party must:

(a)     Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)     Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)     Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material– and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.     <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

(a)     The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, and the Party is subject to an agreement

15

United States District Court
Northern District of California

with the Non-Party not to produce the Non-Party's Protected Material, then the Party shall:

(1)    Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)    Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)    Make the information requested available for inspection by the Non-Party.

(c)    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use reasonable efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1.    Pursuant to Federal Rule of Evidence 502(d), if a Producing Party inadvertently discloses information (including both paper documents and electronically

stored information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

11.2    When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

11.3    This stipulated Order set forth in this section and its subparts does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege. This agreement also is not intended to waive or limit in any way any Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Right to Additional Protection. Nothing in this Order shall be construed to preclude either Party from asserting in good faith that certain Protected Material requires

17

additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

12.4    This Order shall be binding upon the Parties to this action, upon their attorneys, and upon the Parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The Parties, their attorneys and employees of such attorneys, and their expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order.

12.5    Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action, or any other action, any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court. While a motion to seal is pending before the Court, no Party shall make use in open court, in public, or in any way inconsistent with the protection in this order of any Disclosure or Discovery Material that is subject to that motion to seal without the consent of the Designating Party or the permission of the Court.

18

## 13. FINAL DISPOSITION

Within 90 days after the final disposition of this Action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all reasonably accessible copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports and work product, attorney work product, and consultant work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute as Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

Dated: December 28, 2023

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

19

# Exhibit F

# Terms and Conditions

MakeReceipt is for entertainment, research and educational purposes ONLY. It is NOT intended for use for fraudulent purposes

SITE CONTENTS, OWNERSHIP, AND USE RESTRICTIONS
The information contained in this Site including all images, illustrations, designs, writings and other materials that appear herein are copyrights, trademarks, trade dress or other intellectual property owned, controlled, or licensed (all of which, collectively, are herein referred to as the "Contents") by MakeReceipt or are the property of their respective owners.
You may use the Site as part of your personal or business correspondence. You may not use the Site to send illegal, harmful, threatening, abusive, harassing, defamatory, hateful or other offensive material. You may not use the Site to send or create unsolicited advertisements, spam, or junk digital services. Automated submission of digital services (including but not limited to information submitted using any bot, script, or macro) is not permitted.
Any other use of the Contents on this Site including reproduction for purposes other than as noted above, and including any reproduction, modification, distribution, or republication may violate copyright or trademark laws, and, without the prior written permission of MakeReceipt, is strictly prohibited.

DISCLAIMER OF WARRANTY
MAKERECEIPT PROVIDES THIS SITE AND ITS CONTENTS ON AN "AS IS" BASIS AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OR CONDITIONS OF TITLE OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALTHOUGH MAKERECEIPT BELIEVES THE CONTENT TO BE ACCURATE, COMPLETE, AND CURRENT, MAKERECEIPT DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION ACCESSIBLE ON THIS SITE IS ACCURATE, COMPLETE, OR CURRENT.
MakeReceipt does not guarantee that digital services, whether paid or free, will be delivered; nor does it guarantee that digital services will be delivered within a particular time period. We cannot guarantee that a digital service or digital asset will be delivered to the person for whom it is intended. You understand that digital service or digital asset information may be transmitted without encryption over the Internet and other telecommunications networks; and stored on our servers, and is not guaranteed to be private. You understand that MakeReceipt has no control over material sent via the digital service or digital asset site.
You agree to hold MakeReceipt harmless from any damages caused by usage of this site, damage to your computer or anything else you can think of. Use this Site at your own risk.

DISCLAIMER OF LIABILITY
IN NO EVENT SHALL MAKERECEIPT BE LIABLE FOR SPECIAL, INDIRECT, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES WHATSOEVER, INCLUDING BUT NOT LIMITED TO, LOSS OF USE, DATA, FRAUD, OR PROFITS, WITHOUT REGARD TO THE FORM OF ANY ACTION, INCLUDING BUT NOT LIMITED TO CONTRACT, NEGLIGENCE, OR OTHER TORTIOUS ACTIONS, ALL ARISING OUT OF OR IN CONNECTION WITH THE USE, COPYING, OR DISPLAY OF THE CONTENTS OF THIS SITE OR FILES DOWNLOADED FROM IT.
In an effort to provide our customers with the most current information, MakeReceipt will, from time to time, make changes in the Contents and in the products or services described on this Site.

PRIVACY POLICY
MakeReceipt takes online privacy very seriously. We actively protect the privacy of users of our web sites and people who subscribe to our mailing lists.
Subscription Lists & Email Addresses -- To receive certain services such as mailing lists, you must provide us with your name and email address -- without it, we can't send you anything. We hold the names and email addresses of subscribers in the strictest confidence, and will not disclose specific subscriber information unless complying with legal process, preventing fraud or imminent harm, or ensuring the security of our network and services. Subscription lists can be accessed by only a few members of the MakeReceipt staff and are well protected against theft, tampering, and misuse. Aggregate information about subscription lists (such as the total number of subscribers) may be disclosed.
Web Server Usage -- MakeReceipt records information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using. Unless your IP address or its DNS name identifies you specifically, there's no way to use this connection information to identify a particular user. We may record information about queries submitted to our sites to better understand how people use our features. As with other web access, this information generally cannot be associated with any particular user; in any case, query information is not disclosed to anyone outside our staff. Aggregate information about the usage of MakeReceipt's web servers may be available to the public.
MakeReceipt web sites may use cookies to keep track of your online session.
Advertisments -- We reserve the right to allow third-party advertising companies to serve ads when you visit our website. These companies may use cookies to serve ads. They may also use information (not including your name, address, email address, or telephone number) about your visits to this and other websites in order to provide advertisements about goods and services of interest to you. If you would like more information about this practice and to know your choices about not having this information used by these companies, click here.
External Links -- The MakeReceipt web sites may contain numerous links to other sites. MakeReceipt cannot be responsible for the privacy practices of other organizations or the content of external web sites.

Privacy Policy Revisions -- MakeReceipt may revise this policy by updating this page. By using the MakeReceipt web sites, you agree to be bound by any such revisions and should therefore periodically visit this page to determine the policies to which you are bound.

PAYMENT POLICY
In order to utilize some MakeReceipt Services or product offerings, the user of such Services or product offerings must pay MakeReceipt either a recurring subscription, one-time, or other fees. In addition, the user is responsible for any state or local sales taxes associated with the Services or product offerings purchased.

BILLING AND PAYMENT
If you sign up for a MakeReceipt paid membership subscription, you agree to pay MakeReceipt all subscription charges associated with the plan you subscribe to as described on the Site at the time you subscribe and provide your payment information. You also authorize MakeReceipt to charge your chosen payment provider according to the terms of the plan to which you subscribe. The subscription period and the amount and frequency of the charges will vary depending on the subscription plan you select. MakeReceipt reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

To the extent you elect to purchase other Services or product offerings we may offer for a fee, you authorize MakeReceipt to charge your chosen payment provider for the Services and/or products you purchase. You agree that if MakeReceipt already has your credit card on file as a result of prior purchases you have made, we may charge that credit card for the additional Services/products you purchase.

AUTOMATIC SUBSCRIPTION RENEWAL AND CANCELLATION
MAKERECEIPT PAID MEMBERSHIP SUBSCRIPTIONS WILL CONTINUE INDEFINITELY UNTIL CANCELLED BY THE USER. AFTER YOUR INITIAL SUBSCRIPTION COMMITMENT PERIOD, AND AGAIN AFTER ANY SUBSEQUENT SUBSCRIPTION PERIOD, YOUR SUBSCRIPTION WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL EQUIVALENT PERIOD AS THE SUBSCRIPTION TERM YOU ORIGINALLY SELECTED AND AT THE SUBSCRIPTION RATE AND FREQUENCY DISCLOSED TO YOU ON THE SITE WHEN YOU ORIGINALLY SUBSCRIBED, UNLESS OTHERWISE PROVIDED AT THE TIME YOU SUBSCRIBED. IF YOU SIGN UP FOR A PAYMENT PLAN THAT ALLOWS YOU TO BE CHARGED MONTHLY OR ANNUALLY OVER THE SUBSCRIPTION PERIOD AND YOU DECIDE TO CANCEL YOUR SUBSCRIPTION DURING THE SUBSCRIPTION PERIOD, YOU ACKNOWLEDGE AND AGREE THAT YOU WILL CONTINUE TO BE BILLED FOR THE SUBSCRIPTION ON A MONTHLY OR ANNUAL BASIS UNTIL ITS ORIGINALLY SCHEDULED EXPIRATION DATE.

You may cancel your paid membership subscription by following the instructions on your account settings page or contacting MakeReceipt's customer service department at (805) 364-2225 or info@MakeReceipt. If you cancel your subscription, you typically will be permitted to use your subscription until the end of your then-current subscription term. Your subscription will not be renewed after your then-current term expires, but your credit card will be charged, and you will be required to pay, any cancellation or other fees associated with your early termination and disclosed to you at the time you signed up for the subscription plan.

REFUND POLICY
In accordance with standard practice for online digital sales and our terms of sale for each transaction, we are unable to refund any payment after any purchase is made. This no refund policy is a result of the non-returnable nature of digital products.
Digital products sold via this website are like software purchases made at a store that are not refundable once opened. Once you have been granted access to the product (membership), upon payment, it has been subject to being "opened", utilized/read/viewed/listened to, and/or copied and it cannot be returned and therefore cannot be refunded. Access to your purchase is defined as having been granted as soon as your payment is completed.
All sales are final.

FAIR USAGE
Receipts are included in your Account and subject to a usage limit of 2,500 receipts generated per month, per Plan. Use of the Service in excess of 2,500 receipts per month is excessive use and is a violation of MakeReceipt Terms and Conditions. Once the receipts included in your Plan have been used, your account will be suspended for the balance of the month.
Please contact us for pricing tiers above 2,500 receipts per month.

TERMS OF USE REVISIONS
MakeReceipt may revise these terms of use by updating this posting. You agree that in the event any portion of these Site terms of use are found to be unenforceable, the remainder of these Site terms and conditions shall remain in full force and effect. By using this Site you agree to be bound by any such revisions and should therefore periodically visit this page to determine the then current terms of use to which you are bound.

## Terms and Conditions

SITE CONTENTS, OWNERSHIP, AND USE RESTRICTIONS
The information contained in this Site including all images, illustrations, designs, writings and other materials that appear herein are copyrights, trademarks, trade dress or other intellectual property owned, controlled, or licensed (all of which, collectively, are herein referred to as the "Contents") by ExpressExpense or are the property of their respective owners.
You may use the Site as part of your personal or business correspondence. You may not use the Site to send illegal, harmful, threatening, abusive, harassing, defamatory, hateful or other offensive material. You may not use the Site to send or create unsolicited advertisements, spam, or junk digital services. Automated submission of digital services (including but not limited to information submitted using any bot, script, or macro) is not permitted.
Any other use of the Contents on this Site including reproduction for purposes other than as noted above, and including any reproduction, modification, distribution, or republication may violate copyright or trademark laws, and, without the prior written permission of ExpressExpense, is strictly prohibited.

DISCLAIMER OF WARRANTY
EXPRESSEXPENSE PROVIDES THIS SITE AND ITS CONTENTS ON AN "AS IS" BASIS AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OR CONDITIONS OF TITLE OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALTHOUGH EXPRESSEXPENSE BELIEVES THE CONTENT TO BE ACCURATE, COMPLETE, AND CURRENT, EXPRESSEXPENSE DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION ACCESSIBLE ON THIS SITE IS ACCURATE, COMPLETE, OR CURRENT.
ExpressExpense does not guarantee that digital services, whether paid or free, will be delivered; nor does it guarantee that digital services will be delivered within a particular time period. We cannot guarantee that a digital service or digital asset will be delivered to the person for whom it is intended. You understand that digital service or digital asset information may be transmitted without encryption over the Internet and other telecommunications networks; and stored on our servers, and is not guaranteed to be private. You understand that ExpressExpense has no control over material sent via the digital service or digital asset site.
You agree to hold ExpressExpense harmless from any damages caused by usage of this site, damage to your computer or anything else you can think of. Use this Site at your own risk.

DISCLAIMER OF LIABILITY
IN NO EVENT SHALL EXPRESSEXPENSE BE LIABLE FOR SPECIAL, INDIRECT, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES WHATSOEVER, INCLUDING BUT NOT LIMITED TO, LOSS OF USE, DATA, FRAUD, OR PROFITS, WITHOUT REGARD TO THE FORM OF ANY ACTION, INCLUDING BUT NOT LIMITED TO CONTRACT, NEGLIGENCE, OR OTHER TORTIOUS ACTIONS, ALL ARISING OUT OF OR IN CONNECTION WITH THE USE, COPYING, OR DISPLAY OF THE CONTENTS OF THIS SITE OR FILES DOWNLOADED FROM IT.
In an effort to provide our customers with the most current information, ExpressExpense will, from time to time, make changes in the Contents and in the products or services described on this Site.

PRIVACY POLICY
ExpressExpense takes online privacy very seriously. We actively protect the privacy of users of our web sites and people who subscribe to our mailing lists.
Subscription Lists & Email Addresses -- To receive certain services such as mailing lists, you must provide us with your name and email address -- without it, we can't send you anything. We hold the names and email addresses of subscribers in the strictest confidence, and will not disclose specific subscriber information unless complying with legal process, preventing fraud or imminent harm, or ensuring the security of our network and services. Subscription lists can be accessed by only a few members of the ExpressExpense staff and are well protected against theft, tampering, and misuse. Aggregate information about subscription lists (such as the total number of subscribers) may be disclosed.
Web Server Usage -- ExpressExpense records information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using. Unless your IP address or its DNS name identifies you specifically, there's no way to use this connection information to identify a particular user. We may record information about queries submitted to our sites to better understand how people use our features. As with other web access, this information generally cannot be associated with any particular user; in any case, query information is not disclosed to anyone outside our staff. Aggregate information about the usage of ExpressExpense's web servers may be available to the public.
ExpressExpense web sites may use cookies to keep track of your online session.
Advertisments -- We reserve the right to allow third-party advertising companies to serve ads when you visit our website. These companies may use cookies to serve ads. They may also use information (not including your name, address, email address, or telephone number) about your visits to this and other websites in order to provide advertisements about goods and services of interest to you. If you would like more information about this practice and to know your choices about not having this information used by these companies, click here.
External Links -- The ExpressExpense web sites may contain numerous links to other sites. ExpressExpense cannot be responsible for the privacy practices of other organizations or the content of external web sites.
Privacy Policy Revisions -- ExpressExpense may revise this policy by updating this page. By using the ExpressExpense web sites, you agree to be bound by any such revisions and should therefore periodically visit this page to determine the policies to which you are bound.



PAYMENT POLICY
In order to utilize some ExpressExpense Services or product offerings, the user of such Services or product offerings must pay ExpressExpense either a recurring subscription, one-time, or other fees. In addition, the user is responsible for any state or local sales taxes associated with the Services or product offerings purchased.

BILLING AND PAYMENT
If you sign up for a ExpressExpense paid membership subscription, you agree to pay ExpressExpense all subscription charges associated with the plan you subscribe to as described on the Site at the time you subscribe and provide your payment information. You also authorize ExpressExpense to charge your chosen payment provider according to the terms of the plan to which you subscribe. The subscription period and the amount and frequency of the charges will vary depending on the subscription plan you select. ExpressExpense reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

To the extent you elect to purchase other Services or product offerings we may offer for a fee, you authorize ExpressExpense to charge your chosen payment provider for the Services and/or products you purchase. You agree that if ExpressExpense already has your credit card on file as a result of prior purchases you have made, we may charge that credit card for the additional Services/products you purchase.

AUTOMATIC SUBSCRIPTION RENEWAL AND CANCELLATION
EXPRESSEXPENSE PAID MEMBERSHIP SUBSCRIPTIONS WILL CONTINUE INDEFINITELY UNTIL CANCELLED BY THE USER. AFTER YOUR INITIAL SUBSCRIPTION COMMITMENT PERIOD, AND AGAIN AFTER ANY SUBSEQUENT SUBSCRIPTION PERIOD, YOUR SUBSCRIPTION WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL EQUIVALENT PERIOD AS THE SUBSCRIPTION TERM YOU ORIGINALLY SELECTED AND AT THE SUBSCRIPTION RATE AND FREQUENCY DISCLOSED TO YOU ON THE SITE WHEN YOU ORIGINALLY SUBSCRIBED, UNLESS OTHERWISE PROVIDED AT THE TIME YOU SUBSCRIBED. IF YOU SIGN UP FOR A PAYMENT PLAN THAT ALLOWS YOU TO BE CHARGED MONTHLY OR ANNUALLY OVER THE SUBSCRIPTION PERIOD AND YOU DECIDE TO CANCEL YOUR SUBSCRIPTION DURING THE SUBSCRIPTION PERIOD, YOU ACKNOWLEDGE AND AGREE THAT YOU WILL CONTINUE TO BE BILLED FOR THE SUBSCRIPTION ON A MONTHLY OR ANNUAL BASIS UNTIL ITS ORIGINALLY SCHEDULED EXPIRATION DATE.

You may cancel your paid membership subscription by following the instructions on your account settings page or contacting ExpressExpense's customer service department at (805) 364-2225 or info@ExpressExpense. If you cancel your subscription, you typically will be permitted to use your subscription until the end of your then-current subscription term. Your subscription will not be renewed after your then-current term expires, but your credit card will be charged, and you will be required to pay, any cancellation or other fees associated with your early termination and disclosed to you at the time you signed up for the subscription plan.

REFUND POLICY
In accordance with standard practice for online digital sales and our terms of sale for each transaction, we are unable to refund any payment after any purchase is made. This no refund policy is a result of the non-returnable nature of digital products.
Digital products sold via this website are like software purchases made at a store that are not refundable once opened. Once you have been granted access to the product (membership), upon payment, it has been subject to being "opened", utilized/read/viewed/listened to, and/or copied and it cannot be returned and therefore cannot be refunded. Access to your purchase is defined as having been granted as soon as your payment is completed.
All sales are final.

API FAIR USAGE
Receipts are included in your Account and subject to a usage limit of 2,500 receipts generated per month, per Plan. Use of the API Service in excess of 2,500 receipts per month is excessive use and is a violation of ExpressExpense Terms and Conditions. Once the receipts included in your Plan have been used, your receipt API usage will be suspended for the balance of the month.
Please contact us for pricing tiers above 2,500 receipts per month.

TERMS OF USE REVISIONS
ExpressExpense may revise these terms of use by updating this posting. You agree that in the event any portion of these Site terms of use are found to be unenforceable, the remainder of these Site terms and conditions shall remain in full force and effect. By using this Site you agree to be bound by any such revisions and should therefore periodically visit this page to determine the then current terms of use to which you are bound.



SITE CONTENTS, OWNERSHIP, AND USE RESTRICTIONS

ExpenseFAST is for entertainment, research and educational purposes ONLY – NOT intended for use for fraudulent purposes.

The information contained in this Site including all images, illustrations, designs, writings and other materials that appear herein are copyrights, trademarks, trade dress or other intellectual property owned, controlled, or licensed (all of which, collectively, are herein referred to as the "Contents") by expenseFAST or are the property of their respective owners.

You may use the Site as part of your personal or business correspondence. You may not use the Site to send illegal, harmful, threatening, abusive, harassing, defamatory, hateful or other offensive material. You may not use the Site to send or create unsolicited advertisements, spam, or junk digital services. Automated submission of digital services (including but not limited to information submitted using any bot, script, or macro) is not permitted.

Any other use of the Contents on this Site including reproduction for purposes other than as noted above, and including any reproduction, modification, distribution, or republication may violate copyright or trademark laws, and, without the prior written permission of expenseFAST, is strictly prohibited.

DISCLAIMER OF WARRANTY

EXPENSEFAST PROVIDES THIS SITE AND ITS CONTENTS ON AN "AS IS" BASIS AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OR CONDITIONS OF TITLE OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALTHOUGH EXPENSEFAST BELIEVES THE CONTENT TO BE ACCURATE, COMPLETE, AND CURRENT, EXPENSEFAST DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION ACCESSIBLE ON THIS SITE IS ACCURATE, COMPLETE, OR CURRENT.

expenseFAST does not guarantee that digital services, whether paid or free, will be delivered; nor does it guarantee that digital services will be delivered within a particular time period. We cannot guarantee that a digital service or digital asset will be delivered to the person for whom it is intended. You understand that digital service or digital asset information may be transmitted without encryption over the Internet and other telecommunications networks; and stored on our servers, and is not guaranteed to be private. You understand that expenseFAST has no control over material sent via the digital service or digital asset site.

You agree to hold expenseFAST harmless from any damages caused by usage of this site, damage to your computer or anything else you can think of. Use this Site at your own risk.

DISCLAIMER OF LIABILITY

IN NO EVENT SHALL EXPENSEFAST BE LIABLE FOR SPECIAL, INDIRECT, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES WHATSOEVER, INCLUDING BUT NOT LIMITED TO, LOSS OF USE, DATA, FRAUD, OR PROFITS, WITHOUT REGARD TO THE FORM OF ANY ACTION, INCLUDING BUT NOT LIMITED TO CONTRACT, NEGLIGENCE, OR OTHER TORTIOUS ACTIONS, ALL ARISING OUT OF OR IN CONNECTION WITH THE USE, COPYING, OR DISPLAY OF THE CONTENTS OF THIS SITE OR FILES DOWNLOADED FROM IT.

In an effort to provide our customers with the most current information, expenseFAST will, from time to time, make changes in the Contents and in the products or services described on this Site.

PRIVACY POLICY

expenseFAST takes online privacy very seriously. We actively protect the privacy of users of our web sites and people who subscribe to our mailing lists.

Subscription Lists & Email Addresses — To receive certain services such as mailing lists, you must provide us with your

name and email address — without it, we can't send you anything. We hold the names and email addresses of subscribers in the strictest confidence, and will not disclose specific subscriber information unless complying with legal process, preventing fraud or imminent harm, or ensuring the security of our network and services. Subscription lists can be accessed by only a few members of the expenseFAST staff and are well protected against theft, tampering, and misuse. Aggregate information about subscription lists (such as the total number of subscribers) may be disclosed.

Web Server Usage — expenseFAST records information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using. Unless your IP address or its DNS name identifies you specifically, there's no way to use this connection information to identify a particular user. We may record information about queries submitted to our sites to better understand how people use our features. As with other web access, this information generally cannot be associated with any particular user; in any case, query information is not disclosed to anyone outside our staff. Aggregate information about the usage of expenseFAST's web servers may be available to the public.

expenseFAST web sites may use cookies to keep track of your online session.

Advertisments — We reserve the right to allow third-party advertising companies to serve ads when you visit our website. These companies may use cookies to serve ads. They may also use information (not including your name, address, email address, or telephone number) about your visits to this and other websites in order to provide advertisements about goods and services of interest to you. If you would like more information about this practice and to know your choices about not having this information used by these companies, click here.

External Links — The expenseFAST web sites may contain numerous links to other sites. expenseFAST cannot be responsible for the privacy practices of other organizations or the content of external web sites.

Privacy Policy Revisions — expenseFAST may revise this policy by updating this page. By using the expenseFAST web sites, you agree to be bound by any such revisions and should therefore periodically visit this page to determine the policies to which you are bound.

PAYMENT POLICY

In order to utilize some expenseFAST Services or product offerings, the user of such Services or product offerings must pay expenseFAST either a recurring subscription, one-time, or other fees. In addition, the user is responsible for any state or local sales taxes associated with the Services or product offerings purchased.

BILLING AND PAYMENT

If you sign up for a expenseFAST paid membership subscription, you agree to pay expenseFAST all subscription charges associated with the plan you subscribe to as described on the Site at the time you subscribe and provide your payment information. You also authorize expenseFAST to charge your chosen payment provider according to the terms of the plan to which you subscribe. The subscription period and the amount and frequency of the charges will vary depending on the subscription plan you select. expenseFAST reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

To the extent you elect to purchase other Services or product offerings we may offer for a fee, you authorize expenseFAST to charge your chosen payment provider for the Services and/or products you purchase. You agree that if expenseFAST already has your credit card on file as a result of prior purchases you have made, we may charge that credit card for the additional Services/products you purchase.

AUTOMATIC SUBSCRIPTION RENEWAL AND CANCELLATION

EXPENSEFAST PAID MEMBERSHIP SUBSCRIPTIONS WILL CONTINUE INDEFINITELY UNTIL CANCELLED BY THE USER. AFTER YOUR INITIAL SUBSCRIPTION COMMITMENT PERIOD, AND AGAIN AFTER ANY SUBSEQUENT SUBSCRIPTION PERIOD, YOUR SUBSCRIPTION WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL EQUIVALENT PERIOD AS THE SUBSCRIPTION TERM YOU ORIGINALLY SELECTED AND AT THE SUBSCRIPTION RATE AND FREQUENCY DISCLOSED TO YOU ON THE SITE WHEN YOU ORIGINALLY SUBSCRIBED, UNLESS OTHERWISE PROVIDED AT THE TIME YOU SUBSCRIBED. IF YOU SIGN UP FOR A PAYMENT PLAN THAT ALLOWS YOU TO BE CHARGED MONTHLY OR ANNUALLY OVER THE SUBSCRIPTION PERIOD AND YOU DECIDE TO

CANCEL YOUR SUBSCRIPTION DURING THE SUBSCRIPTION PERIOD, YOU ACKNOWLEDGE AND AGREE THAT YOU WILL CONTINUE TO BE BILLED FOR THE SUBSCRIPTION ON A MONTHLY OR ANNUAL BASIS UNTIL ITS ORIGINALLY SCHEDULED EXPIRATION DATE.

You may cancel your paid membership subscription by following the instructions on your account settings page or contacting expenseFAST's customer service department at (805) 364-2225 or info@expenseFAST. If you cancel your subscription, you typically will be permitted to use your subscription until the end of your then-current subscription term. Your subscription will not be renewed after your then-current term expires, but your credit card will be charged, and you will be required to pay, any cancellation or other fees associated with your early termination and disclosed to you at the time you signed up for the subscription plan.

REFUND POLICY

In accordance with standard practice for online digital sales and our terms of sale for each transaction, we are unable to refund any payment after any purchase is made. This no refund policy is a result of the non-returnable nature of digital products.

Digital products sold via this website are like software purchases made at a store that are not refundable once opened. Once you have been granted access to the product (membership), upon payment, it has been subject to being "opened", utilized/read/viewed/listened to, and/or copied and it cannot be returned and therefore cannot be refunded. Access to your purchase is defined as having been granted as soon as your payment is completed.

All sales are final.

TERMS OF USE REVISIONS

expenseFAST may revise these terms of use by updating this posting. You agree that in the event any portion of these Site

terms of use are found to be unenforceable, the remainder of these Site terms and conditions shall remain in full force and effect. By using this Site you agree to be bound by any such revisions and should therefore periodically visit this page to determine the then current terms of use to which you are bound.

Copyright 2025 expenseFAST



# Terms and Conditions

SITE CONTENTS, OWNERSHIP, AND USE RESTRICTIONS

The information contained in this Site including all images, illustrations, designs, writings and other materials that appear herein are copyrights, trademarks, trade dress or other intellectual property owned, controlled, or licensed (all of which, collectively, are herein referred to as the "Contents") by DocDesk or are the property of their respective owners.

DocDesk is for entertainment, research and educational purposes ONLY – NOT intended for use for fraudulent purposes.

You may use the Site as part of your personal or business correspondence. You may not use the Site to send illegal, harmful, threatening, abusive, harassing, defamatory, hateful or other offensive material. You may not use the Site to send or create unsolicited advertisements, spam, or junk digital services. Automated submission of digital services (including but not limited to information submitted using any bot, script, or macro) is not permitted.

Any other use of the Contents on this Site including reproduction for purposes other than as noted above, and including any reproduction, modification, distribution, or republication may violate copyright or trademark laws, and, without the prior written permission of DocDesk, is strictly prohibited.

DISCLAIMER OF WARRANTY

DOCDESK PROVIDES THIS SITE AND ITS CONTENTS ON AN "AS IS" BASIS AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OR CONDITIONS OF TITLE OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALTHOUGH DocDesk BELIEVES THE CONTENT TO BE ACCURATE, COMPLETE, AND CURRENT, DocDesk DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION ACCESSIBLE ON THIS SITE IS ACCURATE, COMPLETE, OR CURRENT.

DocDesk does not guarantee that digital services, whether paid or free, will be delivered; nor does it guarantee that digital services will be delivered within a particular time period. We cannot guarantee that a digital service or digital asset will be delivered to the person for whom it is intended. You understand that digital service or digital asset information may be transmitted without encryption over the Internet and other telecommunications networks; and stored on our servers, and is not guaranteed to be private. You understand that DocDesk has no control over material sent via the digital service or digital asset site.

You agree to hold DocDesk harmless from any damages caused by usage of this site, damage to your computer or anything else you can think of. Use this Site at your own risk.

DISCLAIMER OF LIABILITY

IN NO EVENT SHALL DOCDESK BE LIABLE FOR SPECIAL, INDIRECT, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES WHATSOEVER, INCLUDING BUT NOT LIMITED TO, LOSS OF USE, DATA, FRAUD, OR PROFITS, WITHOUT REGARD TO THE FORM OF ANY ACTION, INCLUDING BUT NOT LIMITED TO CONTRACT, NEGLIGENCE, OR OTHER TORTIOUS ACTIONS, ALL ARISING OUT OF OR IN CONNECTION WITH THE USE, COPYING, OR DISPLAY OF THE CONTENTS OF THIS SITE OR FILES DOWNLOADED FROM IT.

In an effort to provide our customers with the most current information, DocDesk will, from time to time, make changes in the Contents and in the products or services described on this Site.

PRIVACY POLICY

DocDesk takes online privacy very seriously. We actively protect the privacy of users of our web sites and people who subscribe to our mailing lists.

Subscription Lists & Email Addresses — To receive certain services such as mailing lists, you must provide us with your name and email address — without it, we can't send you anything. We hold the names and email addresses of subscribers in the strictest confidence, and will not disclose specific subscriber information unless complying with legal process, preventing fraud or imminent harm, or ensuring the security of our network and services. Subscription lists can be accessed by only a few members of the DocDesk staff and are well protected against theft, tampering, and misuse. Aggregate information about subscription lists (such as the total number of subscribers) may be disclosed.

Web Server Usage — DocDesk records information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using. Unless your IP address or its DNS name identifies you specifically, there's no way to use this connection information to identify a particular user. We may record information about queries submitted to our sites to better understand how people use our features. As with other web access, this information generally cannot be associated with any particular user; in any case, query information is not disclosed to anyone outside our staff. Aggregate information about the usage of DocDesk's web servers may be available to the public.

DocDesk web sites may use cookies to keep track of your online session.

Advertisments — We reserve the right to allow third-party advertising companies to serve ads when you visit our website. These companies may use cookies to serve ads. They may also use information (not including your name, address, email address, or telephone number) about your visits to this and other websites in order to provide advertisements about goods and services of interest to you. If you would like more information about this practice and to know your choices about not having this information used by these companies, click here.

External Links — The DocDesk web sites may contain numerous links to other sites. DocDesk cannot be responsible for the privacy practices of other organizations or the content of external web sites.

Privacy Policy Revisions — DocDesk may revise this policy by updating this page. By using the DocDesk web sites, you agree to be bound by any such revisions and should therefore periodically visit this page to determine the policies to which you are bound.

PAYMENT POLICY

In order to utilize some DocDesk Services or product offerings, the user of such Services or product offerings must pay DocDesk either a recurring subscription, one-time, or other fees. In addition, the user is responsible for any state or local sales taxes associated with the Services or product offerings purchased.

BILLING AND PAYMENT

If you sign up for a DocDesk paid membership subscription, you agree to pay DocDesk all subscription charges associated with the plan you subscribe to as described on the Site at the time you subscribe and provide your payment information. You also authorize DocDesk to

Case No. 1:25-mc-00121-NYW    Document 1-7    filed 12/22/25    USDC Colorado    pg
Case 3:23-md-03084-CRB    Document 658-1 92    Filed 04/10/26    Page 294 of 324
159 of 192

charge your chosen payment provider according to the terms of the plan to which you subscribe. The subscription period and the amount and frequency of the charges will vary depending on the subscription plan you select. DocDesk reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

To the extent you elect to purchase other Services or product offerings we may offer for a fee, you authorize DocDesk to charge your chosen payment provider for the Services and/or products you purchase. You agree that if DocDesk already has your credit card on file as a result of prior purchases you have made, we may charge that credit card for the additional Services/products you purchase.

AUTOMATIC SUBSCRIPTION RENEWAL AND CANCELLATION

DOCDESK PAID MEMBERSHIP SUBSCRIPTIONS WILL CONTINUE INDEFINITELY UNTIL CANCELLED BY THE USER. AFTER YOUR INITIAL SUBSCRIPTION COMMITMENT PERIOD, AND AGAIN AFTER ANY SUBSEQUENT SUBSCRIPTION PERIOD, YOUR SUBSCRIPTION WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL EQUIVALENT PERIOD AS THE SUBSCRIPTION TERM YOU ORIGINALLY SELECTED AND AT THE SUBSCRIPTION RATE AND FREQUENCY DISCLOSED TO YOU ON THE SITE WHEN YOU ORIGINALLY SUBSCRIBED, UNLESS OTHERWISE PROVIDED AT THE TIME YOU SUBSCRIBED. IF YOU SIGN UP FOR A PAYMENT PLAN THAT ALLOWS YOU TO BE CHARGED MONTHLY OR ANNUALLY OVER THE SUBSCRIPTION PERIOD AND YOU DECIDE TO CANCEL YOUR SUBSCRIPTION DURING THE SUBSCRIPTION PERIOD, YOU ACKNOWLEDGE AND AGREE THAT YOU WILL CONTINUE TO BE BILLED FOR THE SUBSCRIPTION ON A MONTHLY OR ANNUAL BASIS UNTIL ITS ORIGINALLY SCHEDULED EXPIRATION DATE.

You may cancel your paid membership subscription by following the instructions on your account settings page or contacting DocDesk's customer service department at (805) 364-2225 or info@DocDesk.co – If you cancel your subscription, you typically will be permitted to use your subscription until the end of your then-current subscription term. Your subscription will not be renewed after your then-current term expires, but your credit card will be charged, and you will be required to pay, any cancellation or other fees associated with your early termination and disclosed to you at the time you signed up for the subscription plan.

REFUND POLICY

In accordance with standard practice for online digital sales and our terms of sale for each transaction, we are unable to refund any payment after any purchase is made. This no refund

policy is a result of the non-returnable nature of digital products.

Digital products sold via this website are like software purchases made at a store that are not refundable once opened. Once you have been granted access to the product (membership), upon payment, it has been subject to being "opened", utilized/read/viewed/listened to, and/or copied and it cannot be returned and therefore cannot be refunded. Access to your purchase is defined as having been granted as soon as your payment is completed.

All sales are final.

## COPYRIGHT AND TRADEMARK CONCERNS

If you represent a company and do not want your receipt or invoice template displayed on DocDesk.co, send a removal request to info@docdesk.co. Removal requests will be processed promptly. If you believe your copyrighted material or trademarks are being infringed, please provide a description of the material, proof of ownership, and your contact details. DocDesk will address claims promptly.

## DISCLAIMER OF INTELLECTUAL PROPERTY LIABILITY

DocDesk templates include brand names, trademarks, and design elements for educational and research purposes. DocDesk does not claim ownership over third-party trademarks or copyrighted materials.

## FINAL ACKNOWLEDGMENT

By using DocDesk, you agree to these terms and assume full responsibility for the use of the system. You agree to resolve any disputes amicably or through appropriate legal channels.

## TERMS OF USE REVISIONS

DocDesk may revise these terms of use by updating this posting. You agree that in the event any portion of these Site terms of use are found to be unenforceable, the remainder of these Site terms and conditions shall remain in full force and effect. By using this Site you agree to be bound by any such revisions and should therefore periodically visit this page to determine the then current terms of use to which you are bound.

Case No. 1:25-mc-00121-NYW    Document 1-7    filed 12/22/25    USDC Colorado    pg
Case 3:23-md-03084-CRB    Document 3818-2    Filed 04/10/26    Page 296 of 324
175 of 192



Create custom receipts, invoices and documents from a huge template library of templates.

## Let's Connect!

Connect with entrepreneurs, build your network, make great business.

## Important Links

Terms and Conditions

Privacy Policy

## Quick Links

Home

Receipt / Invoice Templates

Sign In

Get Started

Copyright © 2025 docdesk                    Powered by docdesk

Case No. 1:25-mc-00121-NYW     Document 1-7     filed 12/22/25     USDC Colorado     pg
185 of 192
Case 3:23-md-03084-CRB     Document 5892     Filed 04/10/26     Page 297 of 324

## Terms and Conditions

SITE CONTENTS, OWNERSHIP, AND USE RESTRICTIONS
The information contained in this Site including all images, illustrations, designs, writings and other materials that appear herein are copyrights, trademarks, trade dress or other intellectual property owned, controlled, or licensed (all of which, collectively, are herein referred to as the "Contents") by InvoiceWriter or are the property of their respective owners.
You may use the Site as part of your personal or business correspondence. You may not use the Site to send illegal, harmful, threatening, abusive, harassing, defamatory, hateful or other offensive material. You may not use the Site to send or create unsolicited advertisements, spam, or junk digital services. Automated submission of digital services (including but not limited to information submitted using any bot, script, or macro) is not permitted.
Any other use of the Contents on this Site including reproduction for purposes other than as noted above, and including any reproduction, modification, distribution, or republication may violate copyright or trademark laws, and, without the prior written permission of InvoiceWriter, is strictly prohibited.

DISCLAIMER OF WARRANTY
INVOICEWRITER PROVIDES THIS SITE AND ITS CONTENTS ON AN "AS IS" BASIS AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OR CONDITIONS OF TITLE OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALTHOUGH INVOICEWRITER BELIEVES THE CONTENT TO BE ACCURATE, COMPLETE, AND CURRENT, INVOICEWRITER DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION ACCESSIBLE ON THIS SITE IS ACCURATE, COMPLETE, OR CURRENT.
InvoiceWriter does not guarantee that digital services, whether paid or free, will be delivered; nor does it guarantee that digital services will be delivered within a particular time period. We cannot guarantee that a digital service or digital asset will be delivered to the person for whom it is intended. You understand that digital service or digital asset information may be transmitted without encryption over the Internet and other telecommunications networks; and stored on our servers, and is not guaranteed to be private. You understand that InvoiceWriter has no control over material sent via the digital service or digital asset site.
You agree to hold InvoiceWriter harmless from any damages caused by usage of this site, damage to your computer or anything else you can think of. Use this Site at your own risk.

DISCLAIMER OF LIABILITY
IN NO EVENT SHALL INVOICEWRITER BE LIABLE FOR SPECIAL, INDIRECT, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES WHATSOEVER, INCLUDING BUT NOT LIMITED TO, LOSS OF USE, DATA, FRAUD, OR PROFITS, WITHOUT REGARD TO THE FORM OF ANY ACTION, INCLUDING BUT NOT LIMITED TO CONTRACT, NEGLIGENCE, OR OTHER TORTIOUS ACTIONS, ALL ARISING OUT OF OR IN CONNECTION WITH THE USE, COPYING, OR DISPLAY OF THE CONTENTS OF THIS SITE OR FILES DOWNLOADED FROM IT.
In an effort to provide our customers with the most current information, InvoiceWriter will, from time to time, make changes in the Contents and in the products or services described on this Site.

PRIVACY POLICY
InvoiceWriter takes online privacy very seriously. We actively protect the privacy of users of our web sites and people who subscribe to our mailing lists.
Subscription Lists & Email Addresses -- To receive certain services such as mailing lists, you must provide us with your name and email address -- without it, we can't send you anything. We hold the names and email addresses of subscribers in the strictest confidence, and will not disclose specific subscriber information unless complying with legal process, preventing fraud or imminent harm, or ensuring the security of our network and services. Subscription lists can be accessed by only a few members of the InvoiceWriter staff and are well protected against theft, tampering, and misuse. Aggregate information about subscription lists (such as the total number of subscribers) may be disclosed.
Web Server Usage -- InvoiceWriter records information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using. Unless your IP address or its DNS name identifies you specifically, there's no way to use this connection information to identify a particular user. We may record information about queries submitted to our sites to better understand how people use our features. As with other web access, this information generally cannot be associated with any particular user; in any case, query information is not disclosed to anyone outside our staff. Aggregate information about the usage of InvoiceWriter's web servers may be available to the public.
InvoiceWriter web sites may use cookies to keep track of your online session.
Advertisments -- We reserve the right to allow third-party advertising companies to serve ads when you visit our website. These companies may use cookies to serve ads. They may also use information (not including your name, address, email address, or telephone number) about your visits to this and other websites in order to provide advertisements about goods and services of interest to you. If you would like more information about this practice and to know your choices about not having this information used by these companies, click here.
External Links -- The InvoiceWriter web sites may contain numerous links to other sites. InvoiceWriter cannot be responsible for the privacy practices of other organizations or the content of external web sites.

Privacy Policy Revisions -- InvoiceWriter may revise this policy by updating this page. By using the InvoiceWriter web sites, you agree to be bound by any such revisions and should therefore periodically visit this page to determine the policies to which you are bound.

PAYMENT POLICY
In order to utilize some InvoiceWriter Services or product offerings, the user of such Services or product offerings must pay InvoiceWriter either a recurring subscription, one-time, or other fees. In addition, the user is responsible for any state or local sales taxes associated with the Services or product offerings purchased.

BILLING AND PAYMENT
If you sign up for a InvoiceWriter paid membership subscription, you agree to pay InvoiceWriter all subscription charges associated with the plan you subscribe to as described on the Site at the time you subscribe and provide your payment information. You also authorize InvoiceWriter to charge your chosen payment provider according to the terms of the plan to which you subscribe. The subscription period and the amount and frequency of the charges will vary depending on the subscription plan you select. InvoiceWriter reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

To the extent you elect to purchase other Services or product offerings we may offer for a fee, you authorize InvoiceWriter to charge your chosen payment provider for the Services and/or products you purchase. You agree that if InvoiceWriter already has your credit card on file as a result of prior purchases you have made, we may charge that credit card for the additional Services/products you purchase.

AUTOMATIC SUBSCRIPTION RENEWAL AND CANCELLATION
INVOICEWRITER PAID MEMBERSHIP SUBSCRIPTIONS WILL CONTINUE INDEFINITELY UNTIL CANCELLED BY THE USER. AFTER YOUR INITIAL SUBSCRIPTION COMMITMENT PERIOD, AND AGAIN AFTER ANY SUBSEQUENT SUBSCRIPTION PERIOD, YOUR SUBSCRIPTION WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL EQUIVALENT PERIOD AS THE SUBSCRIPTION TERM YOU ORIGINALLY SELECTED AND AT THE SUBSCRIPTION RATE AND FREQUENCY DISCLOSED TO YOU ON THE SITE WHEN YOU ORIGINALLY SUBSCRIBED, UNLESS OTHERWISE PROVIDED AT THE TIME YOU SUBSCRIBED. IF YOU SIGN UP FOR A PAYMENT PLAN THAT ALLOWS YOU TO BE CHARGED MONTHLY OR ANNUALLY OVER THE SUBSCRIPTION PERIOD AND YOU DECIDE TO CANCEL YOUR SUBSCRIPTION DURING THE SUBSCRIPTION PERIOD, YOU ACKNOWLEDGE AND AGREE THAT YOU WILL CONTINUE TO BE BILLED FOR THE SUBSCRIPTION ON A MONTHLY OR ANNUAL BASIS UNTIL ITS ORIGINALLY SCHEDULED EXPIRATION DATE.

You may cancel your paid membership subscription by following the instructions on your account settings page or contacting InvoiceWriter's customer service department at (805) 364-2225 or info@InvoiceWriter. If you cancel your subscription, you typically will be permitted to use your subscription until the end of your then-current subscription term. Your subscription will not be renewed after your then-current term expires, but your credit card will be charged, and you will be required to pay, any cancellation or other fees associated with your early termination and disclosed to you at the time you signed up for the subscription plan.

REFUND POLICY
In accordance with standard practice for online digital sales and our terms of sale for each transaction, we are unable to refund any payment after any purchase is made. This no refund policy is a result of the non-returnable nature of digital products.
Digital products sold via this website are like software purchases made at a store that are not refundable once opened. Once you have been granted access to the product (membership), upon payment, it has been subject to being "opened", utilized/read/viewed/listened to, and/or copied and it cannot be returned and therefore cannot be refunded. Access to your purchase is defined as having been granted as soon as your payment is completed.
All sales are final.

TERMS OF USE REVISIONS
InvoiceWriter may revise these terms of use by updating this posting. You agree that in the event any portion of these Site terms of use are found to be unenforceable, the remainder of these Site terms and conditions shall remain in full force and effect. By using this Site you agree to be bound by any such revisions and should therefore periodically visit this page to determine the then current terms of use to which you are bound.

# Exhibit G

---

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Friday, November 21, 2025 9:24 AM
**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
**Cc:** Shoshtari, Adam M. (SHB) <ASHOSHTARI@shb.com>; Taylor, Joshua J. (SHB) <JJTAYLOR@shb.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation

**EXTERNAL**
Good morning Michael,

If Uber wants to proceed before Judge Cisneros, we are happy to do that, as my client has more than complied with the subpoena and been very cooperative to date. Note that we will seek to recover those costs as well.

Early east coast time (as I mentioned in my email) is not 9:30am. I was at the airport boarding a plane then. Please keep in mind that your travel kept you from responding for an entire week with no notice you were out, where I told you I was out and could meet this afternoon.

I have time between 11-2pm mountain time today and will be in the office on Monday and Tuesday (until 2pm) next week before the Thanksgiving holiday. If there's a time that works in that block today, please send an appt and we can bring this to a conclusion. If you want to meet next week, please send some times that you are available.

If instead you prefer to present the matter to Judge Cisneros, any hearing will need to be set after the Thanksgiving holiday at this point. I would appreciate knowing exactly what it is you plan to argue to the Court as non-compliance. Just a reminder that after today, my client will be unavailable until January 6th due to previously booked travel.

Thanks,

Kelly


On Nov 20, 2025, at 12:24 PM, Shortnacy, Michael (SHB) wrote:

Kelly – we have not heard back from you. Recognize you are traveling. We would like to move this along to conclusion, as we understand from you that your client desires this. If we cannot reach agreement, we are prepared to go the MDL Court. The Court has heard several subpoena disputes, as the docket reflects; and typically does so promptly. Could we please nail down a firm time on Friday as our final conferral. We continue to hope that we can cooperatively resolve this dispute. Thank you, Michael
**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

1

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)

**From:** Shortnacy, Michael (SHB) <[mshortnacy@shb.com](mailto:mshortnacy@shb.com)>
**Sent:** Wednesday, November 19, 2025 11:53 AM
**To:** Kelly Twigger <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>
**Cc:** Shoshtari, Adam M. (SHB) <[ASHOSHTARI@shb.com](mailto:ASHOSHTARI@shb.com)>; Taylor, Joshua J. (SHB) <[JJTAYLOR@shb.com](mailto:JJTAYLOR@shb.com)>; Wikler, Jeremy (SHB) <[JWIKLER@shb.com](mailto:JWIKLER@shb.com)>
**Subject:** RE: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation

Kelly – thank you for your email. We want to move this along promptly to conclusion. Could we please set a call tomorrow (Thursday) as you suggest early. Does 7:30 am PT work for you? Michael

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)

**From:** Kelly Twigger <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>
**Sent:** Monday, November 17, 2025 12:10 PM
**To:** Shortnacy, Michael (SHB) <[mshortnacy@shb.com](mailto:mshortnacy@shb.com)>
**Cc:** Shoshtari, Adam M. (SHB) <[ASHOSHTARI@shb.com](mailto:ASHOSHTARI@shb.com)>; Taylor, Joshua J. (SHB) <[JJTAYLOR@shb.com](mailto:JJTAYLOR@shb.com)>
**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation

**EXTERNAL**

Hi Michael, I haven't heard back, so guessing top of the hour doesn't work.

To help your team move forward, Adam asked on our last call about whether the data is different for free v. Paid plans. The answer is that yes, any receipts created from my client's applications would carry a watermark that says either "Become a member to remove watermark" or "For pro or enterprise members only". We would like to see a copy of files that you believe have watermarks suggesting that they originated from my client's sites or apps.

Adam also asked about the cells on the DocDesk spreadsheet. The answer is that the cell titled "data" contains the JSON that creates the receipt. The information on that spreadsheet is the only information that Express Digital Services maintains from DocDesk.

The only other open issue is the Stripe IDs for all of the records provided. As we discussed, Uber is not able to narrow the set of user IDs from the spreadsheets provided by my client in order to identify the Stripe IDs that correspond with emails already at issue in the litigation, apparently as a result of masked email addresses input by users. As such, you are asking my client to provide Stripe IDs for ALL of the user IDs listed on the spreadsheets. Each line on a spreadsheet represents a specific transaction, and they number in the tens of thousands. Asking Uber to narrow their request is reasonable here. There's a fine line between my client providing data in response to a subpoena and maintaining compliance with its terms and conditions as provided to users. We can discuss further when we are able to connect on a call. Safe travels this week. Please note that my client is unavailable due to travel schedules from Thanksgiving through to January 6th.

2

Let's plan to connect this Friday afternoon — alternatively I can try and make myself available Thursday morning early. I'll be in Eastern time.

Please let me know what works so we can bring this to a close for my client.

Thanks,

Kelly

| | |
|---|---|
| **1.   Kelly Twigger**<br>ESI Attorneys LLC | (720) 370-0435 | (720) 485-9695<br>ktwigger@esiattorneys.com<br>www.esiattorneys.com<br>2945 Juilliard Street, Boulder, CO 80305 |

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Nov 17, 2025, at 11:20 AM, Kelly Twigger <ktwigger@esiattorneys.com> wrote:

Hi Michael, I'm heading to the airport this afternoon for the balance of the week, but I can hop on for a short call at 1pm MT/2pm CT. Can that work? Otherwise, I'm back Friday afternoon and in the office next week.

Thanks,

Kelly

On Nov 17, 2025, at 8:52 AM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

Kelly – I was OOO last week. Could you and I hop on a Zoom today. Would like to discuss your fee question, and also determine the best way to proceed logistically (including your invoices and other tax information from your firm that would be required). Could you also have an update on the questions discussed on our last call? Michael

**Michael B. Shortnacy**

*Partner*

Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com

**From:** Kelly Twigger <ktwigger@esiattorneys.com>

**Sent:** Monday, November 10, 2025 2:20 PM

**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>

**Cc:** Shoshtari, Adam M. (SHB) <ASHOSHTARI@shb.com>; Taylor, Joshua J. (SHB) <JJTAYLOR@shb.com>

**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation

**EXTERNAL**

Hi Michael, following up on your agreement to discuss fees with your client so that Express Digital Services can be reimbursed for its costs in responding to the subpoena. You and your investigator have told both my client and me that you will have that discussion for weeks, but I have not heard anything

3

concrete. Please advise and note that the calculations I discussed last week did not include any amount for my client's time — more than 17 hours spent — to pull this information together.

I look forward to hearing from you on this issue.

Thanks and hope you had a great weekend,

Kelly

On Nov 4, 2025, at 10:01 PM, Kelly Twigger <ktwigger@esiattorneys.com> wrote:

Hi Michael,

I can do 12pm to 1pm on Thursday. Mountain Time. Please send over an appt to reserve the time.

Thanks,

Kelly

On Nov 4, 2025, at 9:00 AM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

Kelly,

Thanks again for this information.

Do you have time to connect on a Zoom perhaps tomorrow (Weds, before 2 pm MT) or Thursday (before 1 pm MT)?

Thank you,

Michael

**Michael B. Shortnacy**

*Partner*

Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Friday, October 31, 2025 1:19 PM
**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
**Cc:** Shoshtari, Adam M. (SHB) <ASHOSHTARI@shb.com>; Taylor, Joshua J. (SHB) <JJTAYLOR@shb.com>
**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
**EXTERNAL**

MIchael, the new file has been added. Please go through it with your team and let's aim for Tuesday. I teach on Monday afternoons.

If there are questions on the data and you can send them over, I will make sure I have the information for our call.

Thanks, have a great weekend and happy halloween!

Kelly

4

On Oct 31, 2025, at 10:19 AM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

Kelly,

Thank you for your email and the information about the expected supplemental production. We think it makes sense for us to digest the information you provide and then set a call afterwards, when we have had a chance to do so on our end. That seems to be most efficient, and we are cognizant of your clients' concerns about efficiency. In addition, I will confer with my client about the issue you raise on costs. Shall we aim for a time late Monday or early Tuesday (presuming you are able to provide the supplemental data today, as of this writing, we have not yet received it.)

Thank you,

Michael

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Thursday, October 30, 2025 12:51 PM
**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
**Cc:** Shoshtari, Adam M. (SHB) <ASHOSHTARI@shb.com>; Taylor, Joshua J. (SHB) <JJTAYLOR@shb.com>
**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation

**EXTERNAL**

Michael, good afternoon.

My client advised me today that the expensefast spreadsheet had the incorrect information. I will update the new data to the SFTP site in a couple of hours.

This data is all of the data that my client has and will constitute compliance with the subpoena. I can talk with you tomorrow afternoon at noon MT. If that works, please send a meeting invite.

Please also note that my client has incurred more than $3,000 to now respond to this subpoena, not including the time he spent communicating with your investigator. This is a significant cost for his size business. Please be prepared to discuss whether Uber will reimburse Express Digital Services for its costs in accordance with Rule 45.

Thanks,

Kelly

| | |
|---|---|
| **2.    Kelly Twigger**<br>ESI Attorneys LLC | (720) 370-0435 | (720) 485-9695<br>ktwigger@esiattorneys.com<br>www.esiattorneys.com<br>2945 Juilliard Street, Boulder, CO 80305 |

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Oct 30, 2025, at 8:57 AM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

Kelly – thank you for providing this material, and for your email earlier today. This email acknowledges receipt. Now that we have had a chance to digest the data that you provided, we would like to have a call with you to talk through a few questions. We do not believe that compliance is complete, based on what we are seeing. But, that is what we would like to discuss, and we see no reason that the cooperative posture we have struck together should not continue. We greatly appreciate your cooperation here. Are there times today (preferably) or tomorrow to hop on a Zoom or Teams call and share screen to cover some of our questions on the data? Thank you, Michael

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Sunday, October 26, 2025 10:09 AM
**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
**Cc:** Shoshtari, Adam M. (SHB) <ASHOSHTARI@shb.com>; Taylor, Joshua J. (SHB) <JJTAYLOR@shb.com>
**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
**EXTERNAL**

Michael, I was out of the office on another client end of last week and am just getting to messages.

My client has gave me permission to upload the exports to the SFTP Adam provided below. I've created an account and uploaded the native csv files from my client that were exported using the date range criteria discussed on our call for the available data. We are not running a formal production so you are receiving the native .csv files as listed below.

There are five separate .csv files that I uploaded, one for each website or app that my client maintains that have responsive data:

- Docdesk
- ExpenseFast
- ExpressExpense
- InvoiceWriter
- MakeReceipt

This upload completes my client's obligations to respond under the Subpoena. Per your email on Friday, if there is something further to discuss, please advise me asap. My client has already incurred costs to respond here that are significant and wishes to keep those at a minimum.

I expect you will provide a copy of this data to opposing counsel as required by the Rules.

Thank you,

Kelly

| | |
|---|---|
| **3.    Kelly      Twigger**<br>ESI Attorneys LLC | ([720) 370-0435](#) \| [(720) 485-9695](#)<br>[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)<br>[www.esiattorneys.com](http://www.esiattorneys.com)<br>2945 Juilliard Street, Boulder, CO 80305 |

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Oct 23, 2025, at 9:55 AM, Shortnacy, Michael (SHB) <[mshortnacy@shb.com](mailto:mshortnacy@shb.com)> wrote:

Kelly, following on Adam's email below, we thought it might be helpful to connect briefly. Do you have any time today or tomorrow? Thank you, Michael

**Michael B. Shortnacy**

*Partner*

Shook, Hardy & Bacon L.L.P.

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)

**From:** Shoshtari, Adam M. (SHB) <[ASHOSHTARI@shb.com](mailto:ASHOSHTARI@shb.com)>

**Sent:** Monday, October 20, 2025 7:36 PM

**To:** Kelly Twigger <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>

**Cc:** Taylor, Joshua J. (SHB) <[JJTAYLOR@shb.com](mailto:JJTAYLOR@shb.com)>; Shortnacy, Michael (SHB) <[mshortnacy@shb.com](mailto:mshortnacy@shb.com)>

**Subject:** RE: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation

Kelly,

I hope you had a nice weekend.

Below is a link to the sFTP (Kiteworks). Please let me know if you have any questions.

[Kiteworks Non-Party Upload](#)
Thanks.
**Adam M. Shoshtari**


Shook, Hardy & Bacon L.L.P. | Los Angeles
424-285-8844 | [ashoshtari@shb.com](mailto:ashoshtari@shb.com)



**From:** Shortnacy, Michael (SHB) <[mshortnacy@shb.com](mailto:mshortnacy@shb.com)>
**Sent:** Friday, October 17, 2025 8:29 PM
**To:** Kelly Twigger <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>
**Cc:** Shoshtari, Adam M. (SHB) <[ASHOSHTARI@shb.com](mailto:ASHOSHTARI@shb.com)>; Taylor, Joshua J. (SHB) <[JJTAYLOR@shb.com](mailto:JJTAYLOR@shb.com)>
**Subject:** RE: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
Kelly,
Thank you again for the conferral yesterday. You advised us that you are authorized by your client to accept service of an amended subpoena. A copy of the amended subpoena is therefore attached for service upon you. Note that the Protective Order is also appended to the subpoena.
We will be back in touch early next week regarding the items we discussed in our conferral. In the meantime, have a great weekend.
Michael
**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)



**From:** Shortnacy, Michael (SHB)
**Sent:** Wednesday, October 15, 2025 10:03 PM
**To:** 'Kelly Twigger' <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>
**Subject:** RE: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
Kelly – thanks for your email, and good to see you again. We understand you are now retained and have given the instruction to the investigator. It would be great to connect tomorrow at 4 pm MT, which fits in one of your available windows. I will send a calendar invitation to hold the time for us. Look forward to speaking with you. Michael
**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)



**From:** Kelly Twigger <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>
**Sent:** Wednesday, October 15, 2025 4:48 PM

**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
**Subject:** Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
**EXTERNAL**

Michael,

Please be advised that Express Digital Services has retained ESI Attorneys to represent it in response to the Notice of Subpoena under FRCP 45 that you sent to Shawn Graft last week. I've had a chance to sit down with the client. Are you available tomorrow or Friday to discuss?

Tomorrow is a little tight, but I've got a couple of windows from 11:30 to 1pm and 3-5pm MT, so one hour earlier than Central. Is there a time in there that works for you?

My cell is the best way to reach me 720.485.9695.

Please let your investigator know that at this point all conversations should go through me.

Thanks,

Kelly

| | |
|---|---|
| **4.    Kelly Twigger**<br>ESI Attorneys LLC | (720) 370-0435 | (720) 485-9695<br>ktwigger@esiattorneys.com<br>www.esiattorneys.com<br>2945 Juilliard Street, Boulder, CO 80305 |

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

| | |
|---|---|
| **From:** | Kelly Twigger <ktwigger@esiattorneys.com> |
| **Sent:** | Monday, December 1, 2025 2:21 PM |
| **To:** | Shortnacy, Michael (SHB) |
| **Cc:** | Wikler, Jeremy (SHB); Haider, Jay B. (SHB) |
| **Subject:** | Re: Express Digital Services Subpoena Compliance |

**EXTERNAL**

Michael, thanks for your email below which I received at 7:42 pm on the Wednesday before Thanksgiving. As I was out of the office, I saw it this morning.

Several things from your email below are flat out wrong and require correction. I will caution you from misrepresenting our conversations to the Court. I specifically asked that we record them so there was no conflict like this and you (and the other two attorneys that you have insisted on having on every call) refused. The purpose of recording the calls was to avoid this exact situation.

First, you have not provided any evidence whatsoever that plaintiffs have used Express Digital Services tools to create receipts that have been submitted in the underlying action. I asked twice for physical proof, you refused, claiming they are protected but Uber has not allowed us to sign said protective order to view them. You showed me one receipt from a plaintiff on our last Zoom call, but refused to allow to provide it for me to show my client. In no way did it reference the name of any of my client's services. And you admitted in your previous email that you used the information already provided by my client to cross match against your database and found **zero** matches. Again, that is not reason to provide more information, ***it's a reason that there is no basis to provide more information***. That's a very simple relevance/proportionality argument that we can have with Judge Cisneros as needed.

Second, my client has provided all of the information that the users who created receipts for Uber provide that is maintained by Express Digital Services. The productions made in response to Uber's subpoena contain a spreadsheet from each of the five services which my client has spent in excess of 18 hours to create and produce at its expense. The fact that the information my client maintains is not sufficient for Uber to identify which plaintiffs may have submitted receipts that were created using my client's services is not my client's responsibility, and it far exceeds my client's obligations under Rule 45. From an evidentiary perspective, the fact that a receipt was created using any service, my client's or otherwise, does not mean that the ride didn't happen.

The Stripe IDs are not information provided by users, they are information created by another third party application when and if a user signs up for an account. And, as I have told you, users who create free receipts do not create accounts, so there will be no Stripe ID for them.

Express Digital Services has millions of customers. I have advised you multiple times to identify from the 30,000 transactions provided which ones it believes submitted receipts from my client's services. Absent any basis for why a transaction has evidentiary value, the request that my client provide more than 30,000 Stripe IDs with no basis that they will be of value in the underlaying litigation is not relevant or proportional, and is barred by the Stored Communications Act. It is not a matter of exporting just another field to provide those Stripe IDs.

1

10

Case No. 1:25-mc-00121-NYW    Document 1-8    filed 12/22/25    USDC Colorado    pg
Case 3:23-md-03084-CRB    Document 2582    Filed 04/10/26    Page 310 of 324
125 of 126

Finally, you told me on our last call that you have already subpoenaed Stripe directly. The information my client provided is not subject to the protective order, so give it to Stripe and have them run the IDs. They do not belong to Express Digital Services, and as I have already told you, my client is uncertain as to whether the contract with Stripe or other legal issues preclude it from providing them.

I am assuming from your lack of mention of it below that you are now reneging on the multiple promises both your Investigator and You have made to cover my client's costs to respond to the subpoena which we relied on. We will seek to pursue my client's expenses directly with Judge Cisneros.

Hope you had a Happy Thanksgiving,

Kelly

**Kelly Twigger**

ESI Attorneys LLC

(720) 370-0435 | (720) 485-9695

ktwigger@esiattorneys.com

www.esiattorneys.com

2945 Juilliard Street, Boulder, CO 80305



  

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Nov 26, 2025, at 7:33 PM, Shortnacy, Michael (SHB) wrote:

Kelly,

Thank you for your email, which we have now had a chance on our side to consider.

As we discussed on our call on Friday, plaintiffs in the Uber MDL have used your client's services to create non-bona fide Uber receipts. But your client has not produced information sufficient to identify these and other plaintiffs who have used your client's services. As I explained on our call, the email addresses provided by your client to date do not necessarily tie to any information (i.e., other email address) that has been disclosed in the MDL by a plaintiff, which only underscores the insufficiency of the production and why we need your client to produce the Stripe IDs that you previously said your client would produce but are now withholding. You have explained to us that there is no substantial burden in providing this Stripe ID information, and that it would be a matter of exporting that field from your client's systems correlating to the information your client has already provided.

Because your client is now refusing to provide information that could be used to determine which plaintiffs in the MDL have used your client's services to create non-bona fide Uber receipts and because your client is refusing to state under oath (by answering the simple questions posed below) that he does not have other information that could be used to identify individuals who have used his services (even though his website and Terms of Use indicates otherwise), it is apparent to us that we have reached an impasse. Uber will exercise its rights under Pre Trial Order No 8 in the MDL, and expressly reserves its rights and remedies under all applicable rules and procedures to enforce the Subpoena.

Likewise wishing you a happy Thanksgiving.

Michael

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)



---

**From:** Kelly Twigger <[ktwigger@esiattorneys.com](mailto:ktwigger@esiattorneys.com)>
**Sent:** Friday, November 21, 2025 3:51 PM
**To:** Shortnacy, Michael (SHB) <[mshortnacy@shb.com](mailto:mshortnacy@shb.com)>
**Cc:** Wikler, Jeremy (SHB) <[JWIKLER@shb.com](mailto:JWIKLER@shb.com)>; Haider, Jay B. (SHB) <[jhaider@shb.com](mailto:jhaider@shb.com)>
**Subject:** Re: Express Digital Services Subpoena Compliance

**EXTERNAL**

Michael, I've had a chance to review your email below with my client.

On our call this morning, I told you that Uber would need to provide me with the language from the Federal Rules of Civil Procedure and supporting case law for the basis for a declaration. I do not see that in the email below. There's simply no authority for it. I did not invite you to send a list as you suggest, I told you that you could send it, but without any authority for such a declaration, my client would not be providing one.

Further, your email states that there were no cross matches with your data from the data my client sent, which only strengthens my client's case that providing Stripe IDs for all 30.000+ transactions is overbroad. If you want to continue the dialogue on this issue, please provide the email addresses by line and service on the spreadsheets provided that you believe are masked and the basis for the belief, and we can start there, or you can provide some other basis on which to identify which transactions suggest that they may have come from plaintiffs/riders who submitted receipts in the underlying litigation.

As to the cost issue, the sum you note below were the costs (attorneys' fees only as I stated) before the last few weeks of back and forth and Uber's additional requests. Attorneys fees at this point are approximately $8,500 and climbing and Shawn Graft's time on behalf of Express Digital Services to create the searches and run them multiple times is at $9,000 when billing his time at a reduced cost of $500/hour. Given that Uber has had 3 attorneys on every call we've had on this subpoena, that is a low number, but one that is clearly significant under Rule 45. We will plan to seek those costs in front of Judge Cisneros

3

12

if we cannot come to an agreement. As I informed you in our first call, Uber has previously retained Shawn Graft to provide expert services for the Company, so it is well aware that $500 is a reduced rate for his services.

I am leaving the office now for the weekend, but will be in on Monday and Tuesday (until 3pm). I would be happy to get on a call to review the information you have regarding masked email addresses as a way to start trying to identify how to narrow the transactions provided to a set that makes sense.

If we don't connect, wishing you all a very Happy Thanksgiving.

Thanks,

Kelly

**Kelly Twigger**

ESI Attorneys LLC

(720) 370-0435 | (720) 485-9695

ktwigger@esiattorneys.com

www.esiattorneys.com

2945 Juilliard Street, Boulder, CO 80305



  

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Nov 21, 2025, at 3:32 PM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

Kelly,

Thank you for your email, and thank for your time this morning on the Zoom. As we discussed during our call, we need confirmation in the form of a declaration from your client that certain information you have conveyed to us during our prior conferrals and written communications is accurate. We do not have reason to doubt you but would simply like to have confirmation the information conveyed to you, and then us, is accurate.

Because you asked us to provide the pieces of information that we would like confirmed from your client quickly following our call, we have sketched out our questions in the bullets below. We can revise this further or schedule another meet and confer, but wanted to give you the questions we have, including questions related to information provided that seems to contradict the statements in your client's Terms and Conditions regarding retention of names and IP addresses, so that you can discuss with your client. These questions, framed below, are intended to apply to all apps and services that are subject of the Subpoena, that could be used to generate a document in the style of an Uber receipt via the free or paid options offered by your client. For brevity, and because you asked that we send these questions right away following our call this morning, we are not crafting them individually / separately to relate specifically to each separate source of data. By "client"

4

13

we also mean to broadly include the entity or entities that have access to or store the data, not just your individual client Sean Graft, himself:

- Your client does not store or maintain names of individuals that paid to use apps or services.
- Your client does not store or maintain names of individuals that did not pay to use apps or services.
- Your client does not store or maintain IP addresses related to users who pay for apps or services.
- Your client does not store or maintain IP addresses related to users who do not pay for apps or services.
- Your client does not store or maintain IP addresses related to users who download the apps from the Apple Store or Google Play Store.
- Your client does not have any way to connect User IDs that your client stores and maintains to IP addresses related to users.
- Your client has produced all available information responsive to the Subpoena for each of the apps or services, except for the Stripe IDs.
- Your client does not store or maintain any of the information already provided for the users who paid to use apps or services, for the users who do not pay for services.
- Your client's written confirmation of the time periods for all available data for each source produced pursuant to the Subpoena.

Lastly, as discussed, the Stripe IDs are needed in order to cross-check individuals who do not currently have a match to information we have from complaints or other information provided pursuant to court order. We are not able to provide you plaintiff-specific information due to the agreed upon terms of the Protective Order that we attached to the Subpoena that was served on your client. Also, as you know, the data your client has provided has many anonymized and masked email addresses. We need Stripe IDs to get more information on those users. Additionally, for email addresses that *don't* match we need Stripe IDs to confirm whether they are connected to the litigation. As discussed, we are able to conduct an exercise of locating potentially matching email addresses, and have done so. You asked me to get additional information on this, and I have done so, and can say the following without waiving any work product protection. The cross-checking to date has not yielded any relevant matches to the data you provided. As we explained in our call earlier, this is precisely why we need the Stripe IDs to be able to generate information with which to perform a cross-check of the data. It cannot be inferred that no matches means that no Express Receipt users are plaintiffs in the MDL. As we see in your data, users mask emails, or they could use separate or different emails to file a claim vs. generating a receipt, and your client says it does not have names of users from which matches could be derived.

With the provision of the requested Stripe ID information, and a declaration attesting to the simple facts you have already communicated to us outlined above, we would consider compliance with the Subpoena complete, with a reservation of rights. In addition, in line with the above, Uber is willing to cover your client's reasonable fees for compliance, with confirmatory

Case No. 1:25-mc-00121-NYW    Document 1-8    filed 12/22/25    USDC Colorado    pg
165 of 262
Case 3:23-md-03084-CRB    Document 3084-2    Filed 04/10/26    Page 314 of 324

information to be provided by you (e.g., invoice, W-9, etc.), which we understand from our last call was then around $3,500.

It probably makes sense to hop on a call before 4 pm MT as you suggest. We are available until then, and following that time today to confer and reach resolution – as you have advised us your client will be unavailable after today until January.

Michael

----

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com



---

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Friday, November 21, 2025 1:25 PM
**To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
**Subject:** Express Digital Services Subpoena Compliance

**EXTERNAL**

Michael, as a follow up to our call this morning, I've spoken with my client regarding the two additional questions that Uber has asked about the data provided under the subpoena, and reviewed whether the subpoena covers either one.

If you have the information regarding the work done to marry the email addresses provided to Uber on October 23, 2026, we can hop on this afternoon and discuss. I can make time until 4pm MT, then again on Monday as needed. The only information that we have to date about why Uber cannot use the emails provided to narrow the set of customers for which it is requesting Stripe IDs is that the emails "are masked". That doesn't give us sufficient detail to make an analysis.

Express Digital Services is willing to provide Stripe IDs for the transactions on the lists provided by service for which there is evidence that they submitted receipts for inclusion in the pending matter. Anything broader than that is not relevant to Uber's defenses in this case.

Please let me know if you have the information and would like to hop on a call. We did not discuss the cost recovery issue this morning, so that will need to be first on the agenda.

Thanks,

Kelly

**Kelly Twigger**

ESI Attorneys LLC

📞 (720) 370-0435 | (720) 485-9695

✉ ktwigger@esiattorneys.com

6

15

 www.esiattorneys.com

 2945 Juilliard Street, Boulder, CO 80305





This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

7

| | |
|---|---|
| **From:** | Kelly Twigger <ktwigger@esiattorneys.com> |
| **Sent:** | Monday, December 8, 2025 10:53 PM |
| **To:** | Shortnacy, Michael (SHB) |
| **Cc:** | Wikler, Jeremy (SHB); Haider, Jay B. (SHB) |
| **Subject:** | Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO 8 |

**EXTERNAL**

Michael,

I want to be very clear about our client's position.

Rule 45(f) requires express consent from the nonparty before a subpoena dispute can be transferred to the issuing court. Our client has not provided such consent. References in prior correspondence to Judge Cisneros or to the possibility of presenting issues in the MDL were part of discussions about potential avenues for resolution, not an express, irrevocable consent to MDL jurisdiction under Rule 45(f).

If Uber had authority suggesting that informal discussion or references to a judge's name constitute consent under Rule 45(f), I would expect you to cite it. To my knowledge, there is no such precedent; the rule and case law require explicit consent from the person subject to the subpoena, and protect nonparties from precisely this kind of implied-consent argument.

As a Colorado nonparty, Express Digital Services' district of compliance is the District of Colorado, and that court is the proper forum for any subpoena-related motion. MDL pretrial orders, including PTO 8 and its joint letter deadlines, do not apply to our client absent explicit consent, which has not been given.

We have met and conferred with Uber multiple times, produced information, and repeatedly advised you of the burden and expense involved, as well as our intent to seek cost-shifting under Rule 45(d)(2)(B)(ii), which both you and your investigator stated in writing Uber would be willing to cover. I also advised you that Shawn Graft, the sole owner and operator of Express Digital Services is traveling internationally and unavailable to gather additional information until after January 6. Against that backdrop, I do not agree that we are causing improper delay by declining to participate in an MDL procedure that does not apply to a nonparty who has not consented to transfer.

To be clear, Express Digital Services has already produced all responsive data maintained in its systems. The Company does not store first or last names, does not maintain additional identifying information beyond the fields already produced, and does not have any mechanism to identify which of the 30,000 transactions provided—if any—are connected to receipts submitted to Uber by plaintiffs. On the other hand, Uber has a database of plaintiffs and receipt information against which it verified that <u>none</u> of the transactions provided by my client produced hits.

As such, Uber has provided no evidence to identify that any of the transactions provided by my client are linked to submitted receipts and therefore relevant to any claim or defense, nor has it offered a basis for demanding expanded data fields that were never included in the subpoena or in the parties' prior

discussions. Rule 45 does not require a nonparty to generate new information, reverse engineer third-party processes, or provide sworn declarations.

Stripe is a web-based service that serves solely the payment processor for our client's services. When a user creates a paid account to generate a receipt, they enter an email address and password, then click Pay. Payment information is submitted through a payment service like Google Pay directly into Stripe's system to manage the payment details. Express Digital Services does not receive or retain the user's first or last name, billing address, or any personally identifiable information beyond the email address voluntarily entered by the user. The only customer-specific data our client maintains is the email address. That is by design and the purpose of a payment processor.

Further, any user that creates a receipt using a free account does not create ant account, and thus, there would be no Stripe ID. The only receipt that Uber has shown me as counsel (visually on Zoom, but precluded me from providing to my client) would have been from a free account, if it came from my client's services at all. Thus, there would not even be an email tied to the transaction or a Stripe ID created for it.

Stripe transaction IDs alone cannot identify any user, cannot link a transaction to any plaintiff, and cannot assist Uber in determining who generated or submitted any receipt. They therefore have no relevance to Uber's stated purpose, and producing them would impose burden without yielding any additional identifying information.

If Uber believes a motion is necessary, Rule 45 requires that it be filed in the District of Colorado.

To confirm:

- Express Digital Services does not consent to have this dispute adjudicated in the MDL under Rule 45(f).
- We will not be providing a PTO 8 joint letter or proceeding under MDL party procedures.
- Any motion to compel or for other relief must be filed in the District of Colorado, and we will respond there and assert all protections available under Rule 45, including with respect to scope and costs.

The subpoena at issue is directed to Express Digital Services LLC, not to Mr. Graft individually, and we will address any issues regarding that subpoena in the District of Colorado if and when Uber files a motion there. Continuing to debate jurisdiction and consent by email is not productive, so we will await proper notice and service of any motion in the District of Colorado.

Have a great night,

Kelly

**Kelly Twigger**
ESI Attorneys LLC

 

(720) 370-0435 | (720) 485-9695
ktwigger@esiattorneys.com
www.esiattorneys.com

2945 Juilliard Street, Boulder, CO 80305



  

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Dec 8, 2025, at 2:19 PM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

Kelly,

Thank you for your email.

Your effort to delay resolution of these longstanding issues is improper. We have already met and conferred multiple times, and your client has refused to provide the basic information we have requested. We have already reached an impasse on these issues and will be seeking judicial intervention, as we told you nearly two weeks ago on November 26. If your clients are now willing to provide the requested information, outlined in the draft joint letter brief we provided last Tuesday, December 2, that will resolve this particular dispute. Absent that, we will be seeking judicial intervention. We do not agree to any further delay in resolving these issues, as you have already created unnecessary delay, including due to your changing position on adjudicating this dispute in the MDL Court.

You repeatedly and consistently represented, both in writing and orally during our conferrals, that your clients consent to having Judge Cisneros resolve this dispute.  For example:

- On November 21, you stated in writing, "**If Uber wants to proceed before Judge Cisneros, we are happy to do that . . . .**" Nov. 21 Email from Kelly Twigger (7:24 a.m. PT) (emphasis added); *see also, e.g., id.* ("If instead you prefer to present the matter to Judge Cisneros, any hearing will need to be set after the Thanksgiving holiday at this point."); Nov. 21 Email from Kelly Twigger (3:51 p.m. PT) ("We will plan to seek those costs in front of Judge Cisneros if we cannot come to an agreement.");

- On December 1 you stated in writing, "That's a very simple relevance/proportionality argument that we can have with Judge Cisneros as needed."; *id.* ("We will seek to pursue my client's expenses directly with Judge Cisneros."). Email from Kelly Twigger (12:21 p.m. PT).

You know that it is not appropriate to tell Uber that your clients are willing to proceed before Judge Cisneros, have Uber prepare a joint PTO 8 letter pursuant to your representations and Judge Cisneros's procedures, and then, on the day that the filing is due to be filed in the MDL Court, suddenly change your position completely.

Based on your representations that your clients were happy to proceed before Judge Cisneros, Uber informed you, on November 26, that "Uber will exercise its rights under Pre Trial Order No 8 in the MDL . . . ." Nov. 26 Email from Michael Shortnacy (6:34 p.m. PT). While you responded to that email, you did not say anything about jurisdiction, let alone that your clients were

3

19

revoking their prior consent to proceed before Judge Cisneros. Uber therefore prepared its portion of a PTO 8 joint letter brief, which Uber provided to you on December 2. That December 2 draft plainly stated – consistent with your representations – that the joint letter was being submitted to Judge Cisneros "with the third-parties' consent to submit this subpoena-related dispute to this Court." Again, while you responded to that email, you did not say anything about jurisdiction, let alone that your clients were revoking their prior consent to proceed before Judge Cisneros.   Rather, on December 3, you requested copies of the publicly available MDL filings cited in Uber's position, and Uber promptly provided you with copies of those filings the same day.  Your clients' portion of the joint letter brief was due to Uber on December 5. But you did not provide it. On December 5, Uber emailed you, requesting that you provide your client's position. You did not respond. Uber emailed you again on December 6, asking when you would be sending your clients' portion of the joint letter brief. You did not respond. Uber then emailed you a third time on December 7, requesting that you provide your clients' portion of the joint letter brief. You did not respond. Instead, you waited until today, December 8 – the day the PTO 8 letter is due to be filed with the MDL Court – to inform Uber that, contrary to your multiple prior representations, your clients are no longer consenting to proceed before Judge Cisneros.

These actions obviously created unnecessary delay in resolving this dispute and created unnecessary expense for Uber.

Judge Cisneros is deeply familiar with the issues in this litigation, has expressed a willingness to resolve disputes involving non-party subpoenas, has in fact resolved disputes involving other non-party subpoenas, and is better positioned to do so (compared with a Court with not background on these issues) based on her years of experience with the MDL. We are also confident that any motion to compel compliance with the subpoenas will be transferred to the MDL Court in the end – thus, this prejudicial, last-minute shuffle in your position is only driving additional costs for your clients. To state the obvious, the costs and expenses being generated by you and your clients' inconsistent positions, forcing procedural hurdles that will no doubt only delay resolution of the dispute (and will almost certainly land in front of Judge Cisneros in any event) are not compensable under Rule 45.  You and your clients' actions are generating needless costs, when the less expensive and more efficient option of proceeding directly in the MDL (as you previously agreed), remains available.

Further, to the extent your clients are unwilling to confirm their prior consent to having Judge Cisneros resolve this dispute (despite your previous representations), Uber will consider next steps with respect to seeking its costs for now seeking relief in the District of Colorado from Mr. Graft and Express Digital Services, LLC. Uber's costs in this regard are only increasing because of your lack of candor and changing positions.

Michael

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com



**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Monday, December 8, 2025 7:57 AM
**To:** Haider, Jay B. (SHB) <jhaider@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Subject:** Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO 8

**EXTERNAL**

Jay,

Express Digital Services has not consented to transfer under Rule 45(f). As a Colorado non-party, my client is subject to the jurisdiction of the District of Colorado for all subpoena-related matters. Any suggestion that we have consented to MDL jurisdiction is incorrect. Consent under Rule 45(f) must be explicit, and we do not provide such consent.

Because we do not consent to transfer, the MDL pretrial orders—including PTO 8's joint letter deadlines—do not apply to my client.
Your attempts to impose those deadlines on a non-party have no basis under Rule 45. I will not be preparing a draft joint letter in accordance with PTO 8.

As previously communicated, our client is traveling internationally and is unavailable to provide additional information until after January 6. We will meet and confer regarding the scope and burden of any remaining issues after that date.

We have repeatedly notified Uber of the burden and expense associated with these requests and our intent to seek cost-shifting under Rule 45(d)(2)(B)(ii). That position remains unchanged.

We remain willing to confer in good faith, but we will do so under the procedures required by Rule 45 in the District of Colorado—not under MDL party procedures.

Please direct all further subpoena-related communications with the understanding that the District of Colorado is the proper compliance forum unless and until our client expressly consents otherwise.

Kelly

**Kelly Twigger**
ESI Attorneys LLC

📞 (720) 370-0435 | (720) 485-9695
✉️ ktwigger@esiattorneys.com
🔗 www.esiattorneys.com
📍 2945 Juilliard Street, Boulder, CO 80305



    

5

21

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Dec 7, 2025, at 2:56 PM, Haider, Jay B. (SHB) <jhaider@shb.com> wrote:

Kelly,  we have still not received your client's portion of the PTO 8 joint letter, which was due to be returned to us on Friday.

This is our third reminder.

Please provide us with your portion of the letter as soon as possible.

Thank you,

Jay

Get Outlook for iOS

---

**From:** Haider, Jay B. (SHB) <jhaider@shb.com>
**Sent:** Saturday, December 6, 2025 9:09:27 AM
**To:** Kelly Twigger <ktwigger@esiattorneys.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Subject:** Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO 8

Hi Kelly,

Your client's portion of the PTO 8 letter brief was due yesterday. When will you be sending it to us?

Thanks,
Jay

Get Outlook for iOS

---

**From:** Haider, Jay B. (SHB) <jhaider@shb.com>
**Sent:** Friday, December 5, 2025 7:31:58 PM
**To:** Kelly Twigger <ktwigger@esiattorneys.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Subject:** Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO 8

Hi, Kelly. Please provide your client's portion of the PTO 8 letter.

6

22

Thanks,
Jay

Get Outlook for iOS

---

**From:** Haider, Jay B. (SHB) <jhaider@shb.com>
**Sent:** Wednesday, December 3, 2025 12:26:57 PM
**To:** Kelly Twigger <ktwigger@esiattorneys.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Wikler, Jeremy (SHB)
<JWIKLER@shb.com>
**Subject:** Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO 8

Kelly, as a courtesy please find attached ECF nos. 2647, 3604, 3876, 3972,
and 4440.

Thanks,

**Jay B. Haider**
*Senior Counsel*
Shook, Hardy & Bacon L.L.P.

| jhaider@shb.com



---

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Wednesday, December 3, 2025 12:02 PM
**To:** Haider, Jay B. (SHB) <jhaider@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Wikler, Jeremy (SHB)
<JWIKLER@shb.com>
**Subject:** Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO
8

**EXTERNAL**

Thanks, Jay. Your materials also mention several other documents that you
presumably referenced in drafting, all from the docket, many of which you had not
advised me of before this email. Please forward those as well. It is unreasonable to
suggest that my client incur that expense to find information you are relying on from a
case in which it is not a party.

Kelly

> On Dec 3, 2025, at 10:57 AM, Haider, Jay B. (SHB)
> <jhaider@shb.com> wrote:
>
> Hi Kelly,

7

23

PTO 8 is on the docket at ECF 323. Please find attached a courtesy copy.

Thanks,

**Jay B. Haider**
*Senior Counsel*
Shook, Hardy & Bacon L.L.P.

| jhaider@shb.com

<Outlook-sd5s0bta.png>

---

**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Wednesday, December 3, 2025 10:39 AM
**To:** Haider, Jay B. (SHB) <jhaider@shb.com>
**Cc:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Subject:** Re: Uber MDL - Express Digital Services Subpoena - letter brief per PTO 8

**EXTERNAL**
Jay, please forward PTO 8 for my review. I do not see it in your attachments.

> On Dec 2, 2025, at 5:24 PM, Haider, Jay B. (SHB) <jhaider@shb.com> wrote:
>
> Hi Kelly,
>
> As previewed in Michael's Nov. 26 email, please find attached Uber's portion of a letter brief pursuant to Pretrial Order No. 8 (ECF 323) and the accompanying declaration. We reserve the right to make further edits.
>
> Pursuant to PTO 8, your clients' portion and any supporting materials you wish to provide are due to Uber on **Friday, December 5**. On **Monday, December 8,** we will exchange revised draft portions with any additional changes, and Uber will assemble and file the joint letter brief along with Uber's supporting declaration and materials, and any support you wish to provide on the same day.
>
> Thank you.

**Jay B. Haider**
*Senior Counsel*
Shook, Hardy & Bacon L.L.P.

| jhaider@shb.com

<Outlook-kgznk4ej.png>
CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.<Shortnacy dec ISO Letter Brief re Expr Digi Svcs and S Graft Subpoenas.docx><MDL_ Joint Discovery Letter re Makereceipt (uber section).docx>

<2024.03.01 PTO 8 (ECF 323) N.D. Cal. 23-md-03084.pdf>

9