# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL SERVICES, LLC,

Respondents-Subpoenaed Parties.

---

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

---

Respondents Express Digital Services, LLC ("EDS") and Shawn Graft

("Respondents")[1], non-parties to the underlying multidistrict litigation, respectfully submit

the following brief in Response to the above-titled motion are responding only to the

merits of the motion to compel compliance and not the transfer issue raised by Uber.

**I.      INTRODUCTION**

EDS seeks the protection that Rule 45 was designed to provide for non-parties:

protection from the undue burden and expense of continually expanding discovery

---

[1] Although Uber captioned this motion against "Express Digital Services and Shawn Graft d/b/a Express Digital Services," Uber agreed during the parties' October 16, 2025 meet-and-confer that the subpoena should be directed to Express Digital Services rather than Mr. Graft personally and subsequently served an amended subpoena addressed only to Express Digital Services. Twigger Dec. ¶ 7. Mr. Graft therefore is not a proper party to this motion.

1

Case No. 1:25-mc-00121-NYW    Document 18    filed 03/11/26    USDC Colorado    pg 2
Case 3:23-md-03084-CRB    Document 5818-3    Filed 04/10/26    Page 3 of 70
of 58

demands. Uber served a subpoena on EDS, a Colorado non-party, seeking "contact information" for users who generated Uber receipt templates through EDS's platforms. EDS cooperated immediately, meeting and conferring with Uber regarding the structure of its systems and producing the responsive data within ten days of service of the subpoena.

After receiving that production, however, Uber concluded that the information EDS maintains was insufficient to identify individuals involved in the underlying multidistrict litigation. Rather than concluding its inquiry, Uber repeatedly expanded the scope of the information it sought from this non-party—first demanding Stripe transaction identifiers, then requesting IP address data that was not requested in the subpoena, and ultimately demanding that EDS provide a sworn declaration confirming the production and suggesting that Uber would seek deposition testimony from EDS's owner if such confirmation were not provided.

As a result of these escalating demands, EDS has been required to devote substantial time and resources responding to requests that extend beyond the scope of the subpoena and the information maintained by its systems. Rule 45 imposes an affirmative duty on the issuing party to avoid imposing undue burden or expense on non-parties and requires courts to protect subpoena recipients from significant compliance costs. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). This Court should enforce those protections by confirming that EDS has satisfied its obligations under the subpoena and by directing Uber to reimburse EDS for the costs incurred responding to Uber's expanding requests.

The issue before this Court is a narrow one. It is not whether fraud occurred in the MDL litigation or whether any receipt in that litigation was generated using EDS's services. It is whether EDS—after producing the "contact information" requested by the subpoena—must continue responding to new demands for additional technical data fields that were not requested in the subpoena, while incurring the significant costs associated with those expanding requests. EDS respectfully seeks a ruling confirming that it has complied with its obligations under Rule 45 so that this non-party discovery dispute may be brought to a close and the issue of EDS's compliance costs may be addressed.

## II.    FACTS

EDS is a Colorado business owned and operated by Shawn Graft. Graft Dec. ¶ 1. EDS operates several online platforms, including MakeReceipt.com and related services, that allow users to generate receipts from templates. Id. ¶ 2. Mr. Graft originally developed the receipt generator after losing a receipt needed for an expense report and recognizing that businesses and individuals often need replacement or sample receipts for legitimate recordkeeping purposes. Id. ¶ 3.

**Receipt Generation Platforms and MakeReceipt.com**

Receipt generation platforms such as those operated by EDS serve a variety of legitimate business and technological purposes. EDS's platforms are used by thousands of small businesses to generate receipts for products and services, including mobile service providers and small vendors that require simple tools to document transactions. Id. ¶ 4. In recent years, customers have also contracted with EDS to

3

create synthetic receipt datasets used by universities, start-ups, and established companies to train machine learning systems and improve expense-processing workflows. Id. In fact, in 2017 <u>Uber itself contracted with EDS</u> to create a dataset of one million synthetic receipts used to improve optical character recognition and data extraction technologies. Id. ¶ 5.

Over the past five years numerous other receipt-generation platforms have entered the market and operate using similar models that allow users to generate receipts from templates and remove watermarks through paid subscriptions. Id. ¶ 6. Several competing services—including needreceipt.com, createreceipt.com, receiptfaker.com, and receiptmake.com—offer Uber receipt templates among the many formats available to users. Id. Advances in artificial intelligence have also accelerated the development of platforms capable of generating photo-realistic receipts using AI technologies. Id.

Users may generate receipts through either free access or paid subscriptions. For users who generate receipts without creating a paid account, the platforms do not collect identifying information because no login is required. Id. ¶ 8. For paid accounts, the platforms maintain limited information associated with transactions, including the email address associated with the subscription, certain technical data relating to the receipt generation request, the template used, the date and time of the request, and the IP address transmitting the request. Id. ¶ 14. The platforms do not require users to provide names, physical addresses, or telephone numbers. Id. ¶ 13.

Payment processing for paid accounts is handled through Stripe, a third-party payment processor. Id. ¶ 17. When a user completes a payment transaction, Stripe generates a transaction identifier associated with that payment, known as a Stripe ID. Id. ¶ 18. That identifier is an internal reference number used within Stripe's payment processing system. Id. ¶ 19. The only identifying information transmitted from EDS to Stripe during the payment process is the email address associated with the user account. Id. ¶ 21.

**Uber's Identification of EDS**

Uber began investigating whether receipt-generation platforms had been used by plaintiffs in the underlying MDL litigation after questions arose regarding the authenticity of certain ride receipts submitted by plaintiffs. In August 2025, Uber served a subpoena on Cloudflare, a domain name service provider used by EDS, seeking to identify the entity operating the MakeReceipt.com and ExpressExpense.com platforms. Id. ¶ 30.

On October 8, 2025, a private investigator retained by Uber appeared at Mr. Graft's personal residence and informed him that Uber needed information about the MakeReceipt platform in connection with the MDL litigation. Id. ¶¶ 33–34. The investigator asked questions regarding what data the platform retained and indicated that a subpoena would be served to obtain the requested information. Id. ¶ 36. Later that same day the investigator sent Mr. Graft a draft subpoena and relayed a message from Uber's counsel stating that Uber would reimburse reasonable costs associated with compliance. Id. ¶ 38. Mr. Graft subsequently retained counsel and directed Uber to serve the subpoena on EDS rather than him personally. Id. ¶ 40.

**EDS's Response to the Subpoena**

After Mr. Graft retained counsel, the parties began meeting and conferring regarding the scope of Uber's subpoena and the information maintained by EDS's systems. Twigger Dec. ¶ 5. During the initial meet-and-confer on October 16, 2025, EDS explained the structure of its platforms and the limited data retained by its systems, including that the platforms do not store names of users and retain only email addresses associated with paid accounts, along with certain technical data relating to receipt generation requests. Id. ¶ 9. EDS also explained that it does not retain copies of generated receipts older than fourteen days and therefore had no data responsive to Requests 3 and 4 of the subpoena. Id.

Based on that discussion, Uber confirmed that its objective was to compare EDS's data against the database of plaintiffs in the MDL to determine whether any plaintiffs had generated Uber receipts using the services. Id. ¶ 10. Uber requested that EDS provide available email addresses, transaction timestamps, and the script used to generate receipts for transactions involving Uber receipt templates. Id. Uber did not request Stripe identifiers or IP address data during that discussion. Id. ¶ 11.

Uber served the subpoena on October 17, 2025. Id. ¶ 12. EDS worked promptly to respond and produced native spreadsheets containing the requested data on October 26, 2025—ten days after service. Id. ¶ 13. That production included the identifying contact information maintained by the platforms for those transactions. Id.

The parties continued to meet and confer while Uber reviewed the production. During a call on November 6, 2025, Uber raised concerns that the email addresses

Case No. 1:25-mc-00121-NYW    Document 18    filed 03/11/26    USDC Colorado    pg 7
of 58
Case 3:23-md-03084-CRB    Document 5818-3    Filed 04/10/26    Page 8 of 70

provided did not allow it to identify individuals in the MDL and requested additional information that might allow identification through other means. Id. ¶ 15. Uber requested that EDS provide Stripe identifiers associated with the transactions so that Uber could attempt to obtain additional information from Stripe. Id. EDS explained that the only identifying information transmitted to Stripe during payment processing is the same email address information already produced and that Stripe identifiers are internal payment processor reference numbers that do not identify a user. Id. EDS nevertheless offered to provide Stripe IDs for transactions in which email addresses matched individuals in Uber's database of plaintiffs. Id.

During a further meet-and-confer on November 21, 2025, Uber again pressed for production of Stripe identifiers for all transactions and, for the first time, requested that EDS produce IP address data associated with the transactions. Id. ¶¶ 18–20. During that discussion Uber acknowledged that its comparison of the email addresses produced by EDS against information available in the MDL had not identified any matching individuals. Id. ¶ 24.

Uber then requested that Mr. Graft provide a sworn declaration verifying that the production was complete and suggested that Uber might seek deposition testimony if such confirmation was not provided. Id. ¶ 21. When asked to provide authority requiring a non-party to submit such a declaration in response to a Rule 45 subpoena, Uber did not identify any rule or case law supporting that request. Id.

Throughout these discussions EDS repeatedly raised the costs associated with compliance with the subpoena. Id. ¶¶ 8, 15, 26. Uber had previously represented that it

Case No. 1:25-mc-00121-NYW    Document 18    filed 03/11/26    USDC Colorado    pg 8
Case 3:23-md-03084-CRB    Document 5818-3    Filed 04/10/26    Page 9 of 70
of 58

would reimburse reasonable costs incurred in responding to the subpoena. Id. ¶ 25. As the meet-and-confer process continued and Uber's requests expanded beyond the information sought in the subpoena, the costs associated with responding to those requests continued to increase. Id. ¶ 26.

EDS produced the identifying contact information maintained by its systems within ten days of service of the subpoena and repeatedly explained the limits of the data retained by its platforms. Id. ¶¶ 9, 13, 15. Over the following weeks Uber's requests expanded to include demands for Stripe transaction identifiers, IP address data, and a sworn declaration verifying the production, along with suggestions that Uber might seek deposition testimony. Id. ¶¶ 18–21. At no point during those discussions did Uber identify a clear point at which it would consider EDS to have satisfied its obligations under the subpoena. Id.

Uber nevertheless initiated enforcement proceedings, including the present motion and a related tag-along filing before the Judicial Panel on Multidistrict Litigation, increasing the costs incurred by this Colorado non-party in responding to a subpoena directed to a narrow category of information. Id. ¶¶ 29–30.

Despite Uber's extensive investigation into receipt-generation platforms, Uber has never provided EDS with any evidence that a receipt submitted in the MDL litigation was generated using EDS's services. Id. ¶ 28. Nor has Uber identified any MDL plaintiff whose information matched the email addresses produced by EDS. Id. ¶ 24. Public filings in the MDL further reflect that Uber has successfully had at least 21 of the alleged claims initially identified as involving allegedly fraudulent receipts dismissed by the MDL

8

Case No. 1:25-mc-00121-NYW    Document 18    filed 03/11/26    USDC Colorado    pg 9
Case 3:23-md-03084-CRB    Document 5818-3    Filed 04/10/26    Page 10 of 70
of 18

court with more motions pending.[2] Against that backdrop, Uber nevertheless seeks additional technical data and a sworn declaration from this non-party regarding systems whose operation is readily observable through the platforms themselves and which EDS has already explained in detail during the parties' meet-and-confer discussions and through the declarations submitted in connection with this motion.

## III.    ARGUMENT

**EDS Fully Complied with Uber's Subpoena by Producing the Contact Information It Maintains**

This motion concerns a narrow Rule 45 issue: whether a non-party that promptly produced the contact information requested in a subpoena must continue responding to expanding demands for additional technical data fields that were not requested in the subpoena. Rule 45 protects non-parties from such open-ended discovery by requiring courts to prevent undue burden and to protect subpoena recipients from significant expense. The subpoena issued to EDS requested documents identifying "contact information" for users who generated Uber receipt templates through EDS's services. Twigger Dec. ¶¶ 9. EDS produced the identifying contact information it maintains for those users. Id.¶13.

Uber nevertheless seeks to compel the production of additional technical data fields, including Stripe transaction identifiers and IP address data, that are not "contact information" and were not requested in the subpoena. Rule 45 does not authorize such expanded discovery from a non-party after the subpoena has been satisfied. To the

---

[2] See *In re: Uber Techs., Inc. Passenger Sexual Assault Litig.*, N.D. Cal. Case No.3:23-3084-CRB, MDL No. 3084, Dkt. 3604, Dkt. 3784, Dkt. 4137, and Dkt. 4933.

contrary, the rule imposes an affirmative obligation on the party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court must enforce that duty. Fed. R. Civ. P. 45(d)(1). When a court orders compliance from a non-party, it must also "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). The Tenth Circuit has emphasized that these protections are mandatory and must be applied when evaluating discovery directed at non-parties. See *Rhea v. Apache Corp.*, 833 F. App'x 771, 782–83 (10th Cir. 2020) (vacating order compelling non-party production where the district court failed to adequately protect the non-party from significant expense under Rule 45(d)(2)(B)(ii)). Uber's effort to compel additional technical identifiers therefore falls outside the scope of the subpoena and the protections afforded to non-parties under Rule 45. Absent a ruling defining the limits of the subpoena, a non-party would have no clear point at which its compliance obligations end.

A.    Stripe Transaction Identifiers Are Not "Contact Information"

The subpoena served on EDS requested documents identifying "contact information" for individuals who generated Uber receipt templates through EDS's services. Twigger Dec. ¶¶ 9, 13. EDS produced the identifying contact information it maintains for those transactions, including the email addresses associated with user accounts. Graft Dec. ¶ 41.

Uber now seeks to compel production of Stripe transaction identifiers associated with those transactions. A Stripe identifier, however, is not contact information. It is an

internal reference number generated by Stripe's payment processing system that identifies a transaction within Stripe's internal records. Graft Dec. ¶ 19. The identifier does not contain or reveal a user's name, email address, phone number, mailing address, or any other information that would allow the individual associated with the transaction to be contacted. Id. Nor can EDS use a Stripe identifier to determine the identity of a user.

As explained in the Graft Declaration, the only information transmitted by EDS to Stripe in connection with a transaction is the same email address information that EDS has already produced in response to the subpoena. Graft Dec. ¶ 21. EDS does not maintain customer names or other identifying information associated with those transactions beyond the email addresses already provided. Id. Thus, the Stripe identifier itself does not identify any individual user and does not provide contact information beyond what Uber already possesses.

Uber was aware from the outset of the parties' discussions that EDS's systems generate Stripe transaction identifiers and capture other technical data fields. Twigger Dec. ¶ 9; Graft Dec. ¶ 18. The subpoena nevertheless requested only "contact information," and Uber did not initially request production of Stripe identifiers during the parties' early meet-and-confer discussions. Id.

Uber now seeks those identifiers because they may allow Uber to pursue additional information from Stripe regarding transactions maintained in Stripe's own systems. But any such information is maintained by Stripe, not EDS. Rule 45 does not

require a non-party to produce internal technical identifiers so that Uber may pursue additional information from Stripe that is maintained in Stripe's own systems.

Because Stripe transaction identifiers do not constitute "contact information" and do not identify any individual user, they fall outside the scope of the subpoena served on EDS.

B. IP Addresses Are Not "Contact Information" and Were Not Requested in the Subpoena

Uber also seeks to compel production of IP address data associated with receipt generation activity on EDS's platforms. As with Stripe identifiers, IP address data does not constitute "contact information" within the meaning of the subpoena.

An IP address is a technical identifier associated with an internet connection or device. It does not identify a specific individual user and does not provide information that would allow that individual to be contacted. Courts have repeatedly recognized that an IP address identifies an internet connection rather than the person using it. *See Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1144–45 (9th Cir. 2018) (" Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle."); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (observing that the assumption that the subscriber associated with an IP address is the individual who engaged in the alleged conduct is "tenuous"). For that reason, an IP address does not constitute "contact information" that would allow the user associated with the receipt generation activity to be contacted. The subpoena served on EDS requested only

documents identifying "contact information" for users of the Services. Twigger Dec. ¶¶ 9, 13. It did not request IP address data.

Uber was aware during the parties' early discussions that EDS's systems capture certain technical data fields, including IP address information. Twigger Dec. ¶ 9; Graft Dec. ¶ 8. Uber nevertheless chose to seek only "contact information" in its subpoena and did not request production of IP address data until later in the parties' meet-and-confer process. Because IP address data does not constitute "contact information" and was not requested in the subpoena, Uber's request to compel production of that data likewise falls outside the scope of the subpoena served on EDS.

C. Rule 45 Does Not Require a Non-Party to Provide a Sworn Declaration Confirming the Completeness of Its Production

After EDS produced the contact information requested in the subpoena and explained the limits of the information maintained by its systems, Uber demanded that EDS provide a sworn declaration confirming that the information produced was complete. Twigger Dec. ¶ 21. The subpoena itself did not request such a declaration.

Rule 45 requires a subpoena recipient to produce documents within the scope of the subpoena. It does not require a non-party to submit sworn testimony regarding the completeness of its production absent a court order. EDS nevertheless explained through counsel, and through the technical information provided by Mr. Graft, the nature of the data maintained by its systems and the limits of the information available for production. Twigger Dec. ¶ 9; Graft Dec. ¶ 8.

Uber's demand for a declaration illustrates the broader problem presented by this motion. After EDS completed its production, Uber raised additional requests that had

not been included in the subpoena, including requests for Stripe transaction identifiers and IP address data, along with the demand for a sworn declaration confirming the production. Twigger Dec. ¶¶ 20–21.  During this same period, EDS repeatedly advised Uber that the costs associated with responding to the subpoena were increasing as Uber's requests expanded. Id. ¶¶ 8, 15, 26. Uber had previously represented that it would reimburse reasonable costs associated with compliance. Id. ¶ 25. The parties were ultimately unable to resolve the dispute, and Uber initiated enforcement proceedings in this Court and filed a related tag-along notice before the Judicial Panel on Multidistrict Litigation. Id. ¶¶ 29–30. As a result, EDS has been required to participate in motion practice both in this Court and before the JPML regarding a subpoena directed to a narrow category of information maintained by a Colorado non-party.

Rule 45 does not require a non-party to respond to successive new requests beyond the scope of the subpoena once the subpoena as issued has been satisfied. EDS therefore respectfully requests that the Court confirm that it has complied with the subpoena as served, or alternatively define the limited additional production required so that this non-party's obligations under Rule 45 may be brought to a close.

## IV.    CONCLUSION AND REQUESTED RELIEF

EDS has produced the contact information requested in Uber's subpoena and has explained the limits of the information maintained by its systems. Uber nevertheless seeks to compel production of additional technical identifiers and a sworn declaration that were not requested in the subpoena.

Case No. 1:25-mc-00121-NYW   Document 18   filed 03/11/26   USDC Colorado   pg 15
of 18
Case 3:23-md-03084-CRB   Document 5818-3   Filed 04/10/26   Page 16 of 70

At no point during the parties' extensive meet-and-confer discussions did Uber identify a clear endpoint at which it would consider EDS to have satisfied its obligations under the subpoena with an agreement to cover EDS's costs. Instead, after EDS completed its production, Uber raised successive additional requests—including Stripe transaction identifiers, IP address data, a sworn declaration regarding the completeness of EDS's production, and a potential deposition. Rule 45 requires courts to protect non-parties from undue burden and significant expense and to define the limits of non-party discovery. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). EDS therefore respectfully requests that the Court:

1. Confirm that EDS has complied with the subpoena as served;

2. Alternatively, define the limited additional production required so that EDS's obligations under the subpoena may be brought to a close; and

3. Order that EDS be protected from significant expense resulting from compliance, including by permitting EDS to seek recovery of its reasonable costs and attorneys' fees incurred in responding to the subpoena and this motion.

Respectfully submitted this 11th day of March 2026.

*/s/ Kelly H. Twigger*

Kelly H. Twigger
ESI Attorneys LLC
2945 Juilliard Street
Boulder, CO 80305
720-370-0435
ktwigger@esiattorneys.com
*Counsel for Respondent*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

      Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL
SERVICES, LLC,

      Respondents-Subpoenaed Parties.

---

### CERTIFICATE OF SERVICE

---

I hereby certify that on this 11th day of March, 2026, I electronically filed Respondents'
Opposition to Petitioners' Motion to Transfer Proceeding toEnforce Subpoenas Duces
Tecum Issued by the U.S. District Court for the Northern District of California to the
Issuing Court or to Compel Compliance With Subpoenas, Declaration of Kelly Twigger,
and Declaration of Shawn Graft using the CM/ECF system which will send notification of
such filing to the following email addresses:

        Daniel Edward Rohner
        Shook Hardy & Bacon LLP
        1660 17th Street, Suite 450
        Denver, CO 80202
        Email: drohner@shb.com

*s/Kelly H. Twigger*

Kelly H. Twigger

1

ESI Attorneys LLC
2945 Juilliard Street
Boulder, CO 80305
720-370-0435
ktwigger@esiattorneys.com
*Counsel for Respondents*

## CERTIFICATION PURSUANT TO DECEMBER 1, 2025 STANDING ORDER

The undersigned counsel certifies that generative artificial intelligence—specifically, ChatGPT—was used to draft this filing.  I further certify that Express Digital Services and Shawn Graft d/b/a Express Digital Services were advised of and consented to such use.  All cited authority was manually reviewed by counsel of record.

*/s/ Kelly H. Twigger*
Kelly H. Twigger
ESI Attorneys LLC
2945 Juilliard Street
Boulder, CO 80305
720-370-0435
ktwigger@esiattorneys.com
*Counsel for Respondents*

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL
SERVICES, LLC,

Respondents-Subpoenaed Parties.

---

**DECLARATION OF SHAWN GRAFT**

---

I, Shawn Graft, declare as follows:

1.      I am the Sole Proprietor and Owner of Express Digital Services LLC

("EDS") , a Limited Liability Company based in Colorado.

2.      EDS owns and operates separate receipt generating platforms (the

"Services"):  MakeReceipt.com, ExpenseFast.com, InvoiceWriter.com,

ExpressExpense, DocDesk.co. and PDFPro.us.

3.      Back in April 2014, I was compiling receipts for submitting an expense

report and could not find a receipt. As a result, I was unable to submit the expense

1

report because of the loss of documentation. Although I had the credit card statement showing the receipt, company policy and my manager required the receipt for reimbursement and I had lost it. With no reliable way to replace the lost receipt, I used my skills as a developer to build an online receipt generator. It was built to solve the business problem of creating receipts for small businesses or replacing lost receipts. The growth of the ExpressExpense website allowed the other websites to be launched to provide additional technological advancements for those seeking to create receipts online. In 2018, EDS began offering synthetic receipt datasets for companies like Intuit, Canon, and Workday; those companies used those datasets to train their early machine learning models for digesting receipts from employees and customers.

4.     EDS's Services are used by thousands of small businesses to generate receipts for products and services. Mobile auto detailers, lawncare companies, painting contractors, flea-market vendors, for example, all rely on being able to generate receipts using our software. Since 2022, there has been a very strong interest in our systems for creating training data for AI and machine learning systems. Universities, start-ups and established companies use our systems to analyze and generate receipts to create better workflow for expense, tax and other business purposes.

5.     In 2017, Uber hired EDS to create a dataset of 1 million synthetic receipts including travel, restaurant, and expense receipts. These datasets were used for

2

Case No. 1:25-mc-00121-NYW     Document 18-1     filed 03/11/26     USDC Colorado     pg
Case 3:23-md-03084-CRB     Document 5858-3     Filed 04/10/26     Page 22 of 70
3 of 45

improving OCR (Optical Character Recognition), data extraction, and image labeling/ classification for EDS.

6.      In the last 5 years many other receipt generators have come to market. These online receipt generators operate in the same model as MakeReceipt and other services. Customers can create customized receipts from templates and remove watermarks by becoming a paid member. Many of these other services also provide Uber receipts among their inventory of receipt generators / templates available for customers. The table below lists a few examples of other online receipt generators not owned by EDS and whether they offer Uber templates for generating receipts:

| Website / App | Founded | Offers Uber Receipts |
|---|---|---|
| needreceipt.com | 2017 | YES |
| createreceipt.com | 2024 | YES |
| receiptfaker.com | 2025 | YES |
| receiptmake.com | 2025 | YES |

Within the last 12 months, AI technologies have begun to proliferate the internet in the receipt generation space — reeaiden.com and paperplugg.com are examples of platforms that are using AI to generate photo-realistic receipts using AI.

**User Account Information Stored by the Platform**

7.      Each of the platforms from EDS follow the same model. For example, Makereceipt.com is a subscription based SaaS tool that offers both free access and paid accounts. A user can go to the website and create a receipt using any of the more than 1000 pre-existing templates for free without creating an account. When a user

3

Case No. 1:25-mc-00121-NYW     Document 18-1     filed 03/11/26     USDC Colorado     pg
Case 3:23-md-03084-CRB     Document 5858-3     Filed 04/10/26     Page 23 of 70
4 of 45

creates a receipt for free, that receipt can be immediately downloaded to their device and contains a watermark that may say "Become a member to remove watermark" or "For pro or enterprise members only" or "expensefast". Users must sign up for a paid account to remove the watermark.

8.      Receipts created using the free version of the Services do not require a user account or login. Because users do not create accounts to generate receipts on the free plan, the Services do not collect or maintain any identifying or contact information for those users. Specifically, the Services do not collect first or last names, email addresses, IP addresses, or any other identifying information when a user generates a receipt through the free version of the platform.

While the database architecture for the Services has evolved over time due to storage capacity considerations, receipts generated through the free plan are identifiable only by the presence of a watermark on the generated receipt image. The system does not associate those receipts with any user identity or contact information.

9.      When a user creates a paid account on each of the Services, the user selects a paid plan and is taken to a screen like the one below from Makereceipt.com:

4



10.    Once the user selects the paid plan they want, they are taken to a page

with a Stripe plugin as depicted in the image below:



11.    The user inputs their email address and password into the plugin to create

the account. When the user clicks enter, the following screen comes up. If as below, the

user has information pre-saved, it allows them to choose their payment method, or they

Case No. 1:25-mc-00121-NYW    Document 18-1    filed 03/11/26    USDC Colorado    pg
Case 3:23-md-03084-CRB    Document 558-3    Filed 04/10/26    Page 25 of 70
6 of 15

can input a new credit card and click Update Payment Method:



12.    Once the user clicks through this screen and confirms payment, the email address and credit card information are transmitted to Stripe.

13.    The user's email address that they used to create the account is stored in the database for the Service with the specific transaction. The platform does not require users to provide any other identifying information including:  first or last name, physical address, or a phone number. Anyone walking through the steps of each Service can verify that no other identifying information is collected without having to set up a paid account.

14.    For users who create paid accounts, the database for the platform on which they create the receipt (MakeReceipt.com, etc.) stores the email address, the script used to create the receipt, the IP address from which the communication was made to the service, and the date and time of the request.

15.    Each of the other Services operates substantially the same as Makereceipt.com.

6

16.     The retained data for paid accounts from each Service differs due to
server capacity and data retention policies.

| Website / Service | No records are available prior to |
|---|---|
| MakeReceipt.com | 2023-03-13 |
| ExpressExpense.com | 2016-02-26 |
| InvoiceWriter.com | 2019-03-13 |
| ExpenseFAST.com | 2020-01-08 |
| DocDesk.co | 2023-12-16 |
| PDFPro.us | 2023-03-06 |

**Payment Processing Through Stripe**

17.     For paid accounts, payment processing is handled by Stripe, Inc., the
world's largest independent third-party payment processor. Companies often use
third-party payment processors such as Stripe to securely handle credit card
transactions. When a customer enters payment information on a website that uses
Stripe, the card data is transmitted directly to Stripe's secure servers, rather than to the
company operating the website. Stripe processes the transaction and returns a
confirmation or transaction token to the business without providing the underlying credit
card number. As a result, the business does not store or maintain customers' payment
card information on its own servers. This structure helps businesses comply with
Payment Card Industry Data Security Standard (PCI-DSS) requirements by relying on
Stripe's secure infrastructure to handle sensitive payment data.

7

18.     When a user clicks to create a paid account, they view a screen with a window that requires their email address and credit card information. When a payment is processed, Stripe generates a Stripe identifier ("Stripe ID") associated with the payment transaction. That Stripe ID is then submitted to the platform (e.g. Makereceipt.com) and stored as part of the record for that transaction.

19.     A Stripe ID is an internal reference number used within Stripe's payment processing system.

20.     The Stripe ID that Express Digital Services has does not identify a person, does not contain personal identifying information, and cannot be used to contact a person.

**Information Provided to Stripe**

21.     The only information that the Services provide to Stripe during payment processing is the email address associated with the account.

22.     EDS does not transmit additional identifying information to Stripe beyond the email address already produced in response to the subpoena.

**Information Stored by EDS Regarding Stripe Transactions**

23.     EDS stores the Stripe ID associated with the transaction as a reference to the Stripe payment record.

24.     The Stripe ID itself does not reveal the identity of the user.

25.     Any identifying information associated with the payment transaction is maintained by Stripe, not EDS.

**IP Address Logs**

26.     Like most web platforms, the system may log IP addresses associated with certain user interactions.

27.      An IP address is a technical network identifier assigned to an internet connection at a particular time; it identifies the connection used to access a service, not the specific individual operating a device.

28.     Internet connections are frequently shared by multiple users, including members of a household, coworkers within an organization, guests on a network, or other individuals accessing a shared or unsecured Wi-Fi connection.

29.     Accordingly, the presence of a particular IP address in a system log does not establish the identity of the individual who performed a specific online action.

**Subpoena to Cloudflare to Identify Express Digital Services**

30.     On August 15, 2025, I received notice from Cloudflare's legal department that it had received a legal request to identify the company that owned Makereceipt.com and Expressexpense.com. Cloudflare is a leading Domain Name Server ("DNS") provider, and provides DNS services for Express Digital Services. Attached as Exhibit A is a true and correct copy of the Notice of Issuing of Subpoena from Uber in the MDL to Cloudflare and the legal notice received via email.

31.    Language of Cloudflare notice:

We received the attached legal request regarding the following domains managed through your Cloudflare account: makereceipt.com, expressexpense.com.

The legal request requires us to provide information in our systems related to these websites. We have determined that this is a valid request, and we are required to provide the requested information. In accordance with our Privacy Policy, we are informing you before we provide any of the requested subscriber information.

We plan to turn over documents in response to the legal request unless you intervene in the case within one (1) week of the date of this notice. If you plan to intervene in this process, we would suggest that you contact local counsel at your earliest convenience. Please know that removing or deleting content will not halt this process.

32.    I elected not to challenge the release of the information via Cloudflare.

**Subpoena from Uber to Express Digital Services**

33.    On Wednesday, October 8, 2025, I arrived home at my personal residence to find a man approaching me as I was getting out of my vehicle. He immediately introduced himself as a Private Investigator named Blake Schnitker. He informed me that I was being contacted because of the Uber Sexual Assault Lawsuit MDL. This conversation was held in front of my home and I was very surprised that this investigator would speak about this case in the street in front of my home. He didn't offer to go somewhere more private.

34.    Mr. Schnitker asked if I operated MakeReceipt.com and told me that I "wasn't in any trouble — Uber just needs some data from me right away." He told me that Uber's attorneys had hired him to locate me and asked if I would be willing to provide data to Uber to help identify people who used MakeReceipt.com to generate

10

fake receipts for Uber rides that are now claiming sexual assault. I told him I would be happy to help but that I would contact him later because I had guests arriving at my home. Mr. Schnitker handed me his business card and said to call him immediately when I was available.

35.    I phoned Mr. Schnitker that afternoon, October 8, 2025 at 5:50 pm and spoke with him for 11 minutes. I told him that I would work on retaining an attorney specifically for this request. He asked for specifics about what kind of data MakeReceipt.com retains on its customers. I told him we do store customer information and likely have some information that may be useful like email addresses, the API request information and time/date stamps for transactions. I told him that we do not maintain images of created receipts.

36.    Mr. Schnitker called me the very next day, on October 9, 2025, in the morning. I returned his call at 8:16am. He wanted specifics of what data MakeReceipt captured and if it included specific receipt details like exactly what receipts each user had created. He questioned how quickly I'd be able to produce the data and told me he would be serving a subpoena to get this data and follow proper process. The call lasted 19 minutes.

37.    Mr. Schnitker called again that same day, less than two hours later at 9:56 am. I told him I was retaining an attorney but I was traveling for the next few days and it might take longer to find an attorney than expected. I told him I would reach out to him

11

Case No. 1:25-mc-00121-NYW    Document 18-1    filed 03/11/26    USDC Colorado    pg
Case 3:23-md-03084-CRB    Document 3813-3    Filed 04/10/26    Page 31 of 70
12 of 51

after the weekend and give him a status update. I told Mr. Schnitker this Rule 45 request will take a significant amount of my time and attorney time to complete and requested that he discuss covering our costs with his client. This call lasted 7 minutes.

38. Later that day, Mr. Schnitker emailed me at 5:54 pm and included a copy of the subpoena that they intended to serve. He included a note from his client, Uber's Counsel of Record, Michael Shortnacy, Esq. of  Shook, Hardy & Bacon. That note said:

> You may tell Mr. Graft that we will agree to reimbursement of
> reasonable costs incurred complying with the subpoena.
> However, we ask that once he is served with the subpoena
> his attorney is the one that responds in writing with a request
> pursuant to the Federal Rules of Civil Procedure.

39. I emailed Mr. Schnitker on Tuesday, October 14, 2025, at 9:24 am and told him we were still working on identifying proper counsel for this Rule 45 request.

40. Mr. Schnitker called the next day, on October 15, 2025, at 9:20 am. I returned his call at 9:37 am. I informed him that I had retained ESI Attorneys LLC and Kelly Twigger, Esq. as counsel, and provided her information to him for service of the subpoena. I told him that the subpoena draft that was sent to me was in my personal name and it should be to my company, Express Digital Services. He agreed to change the subpoena to the business name instead and said he was the one who decided it would be in my personal name and not the company and it would be changed. The call lasted 15 minutes.

12

**Process to Identify and Produce Data in Response to Subpoena**

41.    In response to the subpoena, the company produced five native spreadsheets of responsive data from the Services containing more than 34,000 transactions with email addresses associated with user accounts that generated Uber ride receipts during the relevant time period.

42.    Those email addresses represent the only identifying contact information maintained by the Services for those accounts.

43.    The process to extract additional data fields is not a simple export as Uber suggests. Because each website runs on its own server and database, the reporting can't be pulled from one central place. A "single" report request is really five separate data pulls plus consolidation and validation. In practice, this is why it can take several hours, especially for these complex, high-volume queries. For each website/server, the workflow includes the following steps:

- Extract data from the production database (often in chunks to avoid impacting live site performance).

- Transfer and import the export into the analysis environment.

- Normalize and clean the data (standardize IDs, dates/time zones, naming, and formats so the sites can be compared).

- Transform and join tables to support cross-site analysis (mapping keys, building helper tables, indexing).

13

- Run reporting queries and generate the requested outputs.

- Validate results (sanity checks and spot checks to ensure totals match source systems).

- Export deliverables to the final file format.

- Upload and share via cloud storage.

44.     Following the initial meet and confer with Uber on October 16, 2025, I ran the above workflow to identify the individual transactions for users that had created receipts using the Uber template for each Service on the data available. Per Uber's request, I identified approximately 34,000 transactions and created a spreadsheet for each Service that included the date and time of the transaction, the email address and the script for the API call.

45.     To go back and pull the additional Stripe ID and IP address fields for all 34,000 transactions would require running this workflow again and would take several hours to complete, verify and provide the data.

**Matching Process Offered to Uber**

46.     After producing the dataset of email addresses, EDS offered to provide Stripe identifiers for any accounts whose email addresses matched individuals in Uber's own database.

47.     Uber conducted that comparison and reported that no matches were found.

14

48.    As a result, there were no accounts for which Stripe identifiers

corresponded to individuals identified by Uber as relevant.

**Review of Alleged Receipts Created by Makereceipt.com**

49.    Despite multiple requests from Counsel, Uber has not provided any of the

alleged receipts that it claims were created using the Services, so I have not seen or

had an opportunity to examine a physical or digital file.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 11th day of March, 2026.

*/s/ Shawn Graft*
Shawn Graft

15

# Declaration of Shawn Graft

# Exhibit A

SHOOK, HARDY & BACON LLP
Michael B. Shortnacy (SBN 277035)
mshortnacy@shb.com
Alycia A Degen (SBN 211350)
adegen@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:    424-285-8330
Facsimile:    424-204-9093

Christopher V. Cotton (Admitted *Pro Hac Vice*)
ccotton@shb.com
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUPOENA DUCES TECUM FOR PRODUCTION FROM A NON-PARTY** |
| ALL ACTIONS | |

DEFENDANT UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT TO
SERVE SUBPOENA

Case No. 3:23-md-03084-CRB

YOU ARE HEREBY NOTIFIED that in accordance with Rule 45 of the Federal Rules of Civil Procedure, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC ("Uber") intends to issue a subpoena, copy of which is attached hereto, to be served upon the following person, who is not a party in the above captioned lawsuit and to produce items listed at the time and place specified in the attached Subpoena:

- **Cloudflare, Inc. C/O Registered Agent Solutions, Inc. 720 14th Street, Sacramento, CA 95814**

DATED: July 30, 2025                    Respectfully submitted,

                                        **SHOOK, HARDY & BACON L.L.P.**

                                        By: /s/ Michael B. Shortnacy
                                            MICHAEL B. SHORTNACY

                                        *Attorney for Defendants*
                                        UBER TECHNOLOGIES, INC.,
                                        RASIER, LLC, and RASIER-CA, LLC

2

DEFENDANT UBER TECHNOLOGIES, INC.; RASIER, LLC; AND RASIER-CA, LLC'S NOTICE OF INTENT TO SERVE SUBPOENA

Case No. 3:23-md-03084-CRB

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

IN RE: UBER TECHNOLOGIES, INC., PASSENGER
SEXUAL ASSAULT LITIGATION  )
| | |
|---|---|
| *Plaintiff* ) | |
| v. ) | Civil Action No.  3:23-md-03084-CRB |
| ) | |
| ) | |
| *Defendant* ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Cloudflare, Inc. C/O Registered Agent Solutions, Inc. 720 14th Street, Sacramento, CA 95814

To:

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.
In lieu of appearance, responsive documents may be mailed/emailed to Michael B. Shortnacy, Shook, Hardy & Bacon LLP, 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067 (mshortnacy@shb.com).

| Place: Shook, Hardy & Bacon LLP<br>555 Mission Street, Suite 2300<br>San Francisco, CA 94105 | Date and Time:<br><br>08/04/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/30/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Michael B. Shortnacy |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC_____ , who issues or requests this subpoena, are:

Michael B. Shortnacy, Shook, Hardy & Bacon LLP, 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:23-md-03084-CRB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### DEFINITIONS

1.  "ALL" AND "ANY" both INCLUDE "each" AND "every."

2.  "COMMUNICATION(S)" means ANY AND ALL oral AND/OR written COMMUNICATIONS INCLUDING a telephone COMMUNICATION, memorandum, letter, e-mail, message, telegram, telex, AND ANY other instance in which information is transmitted from one PERSON to another through ANY means whatsoever.

3.  "DOCUMENTS" means the original or a copy of handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which it has been stored.

4.  "INCLUDE" AND "INCLUDING" shall mean INCLUDING, but not limited to.

5.  "OR" AND "AND" shall INCLUDE AND/OR.

6.  "PERSON" shall INCLUDE a natural PERSON, firm, association, organization, partnership, business trust, corporation, limited liability company, OR public entity.

7.  "RELATING TO" OR "RELATED TO" means, by way of example AND without limitation: demonstrates, describes, memorializes, evidences, comprises, refers to, pertains to, supports, contradicts, affects, discusses, reflects OR concerns ALL OR ANY portion of the matter, facts, AND contentions specified in these requests.

8.  "YOU," "YOUR" or "YOUR COMPANY" shall mean, as applicable, Cloudflare, Inc., and any of YOUR parent companies, subsidiaries, affiliates or divisions, and any of their respective agents, officers, employees, attorneys or representatives, which were acquired by YOU.

### RECORDS TO BE PRODUCED

1.  ANY AND ALL DOCUMENTS RELATED TO MakeReceipt.com, Registry Domain ID 1951426295_DOMAIN_COM-VRSN, INCLUDING ANY AND ALL DOCUMENTS identifying ANY PERSON RELATED TO Makereceipt.com, Registry Domain ID 1951426295_DOMAIN_COM-VRSN.

2.  ANY AND ALL DOCUMENTS RELATED TO ExpressExpense.com, Registry Domain ID 1853711213_DOMAIN_COM-VRSN, INCLUDING ANY AND ALL

1

DOCUMENTS identifying ANY PERSON RELATED TO ExpressExpense.com, Registry Domain ID 1853711213_DOMAIN_COM-VRSN.



**Cloudflare**                                                          Aug 15, 10:39 am

From  notices@trustandsafety.cloudflare.com

---

##– Please type your reply above this line –##

Hello info@expressexpense.com,

---

### Cloudflare Trust & Safety (Cloudflare)

Aug 15, 2025, 10:38AM PDT

To Whom It May Concern:

We received the attached legal request regarding the following domains managed through your
Cloudflare account: makereceipt.com, expressexpense.com.

The legal request requires us to provide information in our systems related to these websites. We have
determined that this is a valid request, and we are required to provide the requested information. In
accordance with our Privacy Policy, we are informing you before we provide any of the requested
subscriber information.

We plan to turn over documents in response to the legal request unless you intervene in the case within
one (1) week of the date of this notice. **If you plan to intervene in this process, we would suggest that
you contact local counsel at your earliest convenience**. Please know that removing or deleting content
will not halt this process.

Regards,

Cloudflare Legal Department

Note –– When responding please make sure to keep #19878736 in the subject line.

---

This email is a service from Cloudflare. Delivered by **Zendesk**

[ **3.23-MD-03…84-CRB.pdf** ]

---

⚡ **Automatically Assign** was run                                      Aug 15, 10:39 am

Case No. 1:25-mc-00121-NYW     Document 18-3     filed 03/11/26     USDC Colorado     pg
Case 3:23-md-03084-CRB     Document 5428-3     Filed 04/10/26     Page 44 of 70
1 of 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL
SERVICES, LLC,

Respondents-Subpoenaed Parties.

---

**DECLARATION OF KELLY H. TWIGGER**

---

I, Kelly H. Twigger, declare as follows:

1.      I am counsel for Respondents Express Digital Services, LLC ("EDS") and

Shawn Graft regarding the third party subpoena sent to EDS by Uber in the underlying

MDL in which more than 3000 claims have been filed accusing Uber drivers of sexually

assaulting their passengers.

2.      I submit this declaration in support of Respondents' Opposition to

Petitioners' Motion to Transfer Proceeding to Enforce Subpoenas Duces Tecum Issued

1

by the U.S. District Court for the Northern District of California to the Issuing Court or to Compel Compliance With Subpoenas.

3.    I have personal knowledge of the facts stated herein.

4.    Express Digital Services, LLC is a nonparty to the underlying multidistrict litigation. It is a sole proprietor LLC owned and operated by Shawn Graft.

5.    I met and conferred with counsel for Uber regarding compliance with the subpoena on multiple occasions between October 16, 2025, and December 8, 2025.

6.    During our initial meet and confer on October 16, 2025, held via Zoom, I asked the three partners from Shook, Hardy and Bacon on the call — Michael Shortnacy, Joshua Taylor and Adam Shoshtari — whether we could record the call using my AI notetaker so that there would be no confusion about what was discussed or agreed to by the parties. I informed them that they would receive a copy of the notes as participants on the call, as well as access to the recording. Mr. Shortnacy refused to allow the recording, so I instead took detailed handwritten notes about the meet and confer calls in order to be clear about what my client would provide and what both parties agreed to do.

7.    During that call, I advised counsel that Express Digital Services owned and operated the following services that were used to generate receipts: MakeReceipt.com, ExpenseFast.com, InvoiceWriter.com, ExpressExpense, DocDesk.co. and PDFPro.us, ("the Services") and that I was authorized to accept service of a subpoena directed solely to Express Digital Services. I had reviewed the earlier subpoenas directed to the client in preparation for the call. Counsel for Uber

2

agreed to modify the subpoena and to drop the subpoena against Shawn Graft in his individual capacity/dba Express Digital Services. The modified subpoena I received and to which EDS responded is attached as Exhibit A.

8.      I advised Uber that EDS was willing to cooperate with Uber in providing the information it was seeking, but that it needed to have its investigator, Blake Schnitker, stop contacting Shawn Graft, and that all communications should go through me regarding the subpoena. I also advised Counsel for Uber that my client was a sole proprietor, and that the cost of compliance of the subpoena was significant and that we would be seeking costs under Rule 45.

9.      In terms of available data, I advised counsel of the following information regarding the data at EDS:  1) that EDS does not store first and last names, but that it captured email addresses for paid accounts, as well as the script that generated the receipt (API calls), the IP address used to connect to the Services, the data and time of each transaction, and the Stripe ID provided to the Services for paid accounts, and 2) that EDS does not retain images of the receipts generated by users older than 14 days whether they are created using free access or on a paid account. As a result, EDS could provide the "contact information" it had that was available under Requests 1 and 2 of the subpoena, but that it had no information responsive to Requests 3 and 4.

10.     During that same call, counsel for Uber advised me that:

   a.  The data range for responsive information to the subpoena was January 1, 2018 to the present;

   b.  Neither EDS nor Shawn Graft was a target of the litigation;

3

c. Uber agreed to modify the subpoena to name only EDS;

d. They were surprised that names and receipts were not retained for the Services;

e. That Uber wanted the following data from the Services given what was available: email addresses, the script used to generate the receipt (API call) and the date and time of the transactions for anyone who created a receipt using an Uber template;

f. That the goal was to load EDS's data against the database they have of plaintiffs and see who would have generated Uber receipts from EDS's websites or apps; and

g. That Uber was anxious to have the information as quickly as possible given that the first bellwether trial was set to begin in January 2026; and

h. That EDS could produce documents by uploading them to their Secured File Transfer Protocol versus incurring the cost to provide a formal production since the data would be native excel spreadsheets. Counsel then provided access credentials to me from Kite, its SFTP platform.

11. Uber did not request Stripe IDs or IP addresses during the meet and confer.

12. Uber served the subpoena to me via email on October 17, 2025. The subpoena included four categories of requested documents:

4

1. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com, to generate an Uber ride receipt from January 1, 2018 to present.

2. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt Receipt Creator, to generate an Uber ride receipt from January 1, 2018 to present.

3. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts generated from January 1, 2018 to present, using ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com.

4. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts generated from January 1, 2018 to present, using ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt Receipt Creator.

13.     Ten days later, on October 26, 2025,  Express Digital Services produced spreadsheets containing the responsive data requested by Uber from the Services by uploading the native spreadsheets to the SFTP site provided by Uber. The spreadsheets contained a total of more than 34,000 transactions representing users who had created a receipt using the Uber templates provided by the Services.

14.     On October 30, 2025, I emailed Michael Shortnacy to confirm that EDS had fully complied with the subpoena. He replied that Uber did not believe EDS had fully complied despite the fact that EDS had produced all "contact information" EDS had for all transactions where a user created a receipt using an Uber template.

15.     The parties met and conferred again on November 6, 2025. At that time, I responded to multiple inquiries regarding the data provided, what was retained for receipts generated for free (again nothing) and that data provided was for paid plans. I also confirmed the language contained on watermarks on free receipts generated by the Services, and asked to see copies of the receipts that Uber alleged were created using EDS's Services. Counsel for Uber indicated that the email addresses provided by EDS were "masking the real emails so [Uber] can't tie them to the same person." Counsel wanted "more information to be able to identify the user." I responded that EDS had provided all of the information that is available and responsive to the subpoena. Because we had no additional identifying information, and they were unable to match the email addresses provided to plaintiffs in their system, Uber now wanted *all Stripe IDs of all 34,000 transactions* in order to subpoena information from Stripe. I explained to Counsel that the only identifying information my client retained that was responsive to

6

the subpoena had been produced in the form of email addresses, and that is the same information transmitted to Stripe to create the Stripe ID. Uber can use those emails to go to Stripe with a subpoena. I again raised the issue of Uber paying EDS's costs on the subpoena including both attorneys fees and his costs and advised of the costs to date given the increased volume of meet and confers since production. Mr. Shortnacy agreed to speak with his client on the issue.

16.    On November 10, 2025, I emailed Mr. Shortnacy again asking about his discussions with his client on paying my client's costs. See Exhibit B. He did not respond.

17.    On November 17, 2025, I emailed counsel for Uber regarding additional questions raised in the November 6th call regarding the watermarks on receipts generated for free, and asked again for Uber to provide copies of the receipts it believed were generated by my client's Services. At that time, the only open issue on compliance with the subpoena was the Stripe IDs. I also advised Uber that my client would be traveling and out of the country from Thanksgiving until January 6, 2026, and offered to connect to resolve issues prior to that even while I was traveling on another matter.

18.     On November 21, 2025, Uber's demands escalated again. I participated in a meet and confer with Uber's counsel Michael Shortnacy, Jay Haider, and Jeremy Wikler from the Shook Firm. Uber again asked if names were available for the transactions at issue; I advised for the third time that they were not.

19.    Uber expressed the need to resolve the Stripe issue; I again explained my client's position that 1) the Stripe ID's were not "contact information" under the

7

Subpoena, 2) that we had provided all of the same information provided to Stripe and 3) that Rule 45 was not intended to be used as an investigation tool to jump from non-party to non-party. Under a subpoena, Stripe could use the emails provided to identify any information it has in the same manner that EDS has done. Given Uber's belief that users had input masked email addresses, I requested specific transaction data from what was produced (line by line from the spreadsheets produced by EDS) that Uber believed were masked or some other evidence to identify specific transactions for us to provide those Stripe IDs.

20.     For the first time, Mr. Shortnacy acknowledged that it had tested EDS's data against its database of plaintiffs and received no matches. Uber then asked for IP addresses for all 34,000 transactions; I responded that the subpoena did not cover IP addresses and that Uber was already given an opportunity to choose the fields of data it wanted and it did not ask for them. To comply at this point would require a guarantee that Uber would cover my client's costs as Uber had stated it would multiple times in writing.

21.     Uber's demands then escalated to require a declaration from Shawn Graft that the data being produced has been fully "verified". And despite the fact that the subpoena was limited to document production, counsel threatened that they "can depose him, but there isn't a problem with the information."  I requested the legal basis for requiring a declaration following production from a non-party under Rule 45, either by rule or case law. Mr. Shortnacy provided neither. I also pointed out that the subpoena issued was for documents, not a deposition.

8

Case No. 1:25-mc-00121-NYW    Document 18-3    filed 03/11/26    USDC Colorado    pg
Case 3:23-md-03084-CRB    Document 5828-3    Filed 04/10/26    Page 52 of 70
9 of 12

22. Mr. Shortnacy also represented to me during the call that Uber had already subpoenaed Stripe.

23. Mr. Shortnacy followed with an email to me later that afternoon stating that "we need confirmation in the form of a declaration from your client that certain information you have conveyed to us during our prior conferrals and written communications is accurate. We do not have reason to doubt you but would simply like to have confirmation the information conveyed to you, and then us, is accurate." The email laid out the bullets they sought in a declaration. See Exhibit C.

24. Mr. Shortnacy's email also conceded that counsel for Uber explained that Uber had attempted to cross-check the email addresses produced by EDS against information available in the MDL but had not identified any matching individuals. Counsel stated that Uber therefore requested the Stripe transaction identifiers associated with EDS user accounts so that Uber could attempt to obtain additional information about those users through Stripe and conduct further cross-checking to determine whether any such users might be connected to claims in the MDL.

25. Finally, despite threats of a deposition and a request for IP addresses, Uber offered that by providing the declaration and the Stripe IDs for all produced transactions, Uber would consider compliance and cover costs as they had been stated in mid-October: "In addition, in line with the above, Uber is willing to cover your client's reasonable fees for compliance, with confirmatory information to be provided by you (e.g., invoice, W-9, etc.), which we understand from our last call was then around $3,500."

9

26.    In response that same evening, I informed Uber's counsel that I was not aware of any provision of the Federal Rules of Civil Procedure requiring a non-party to provide such a declaration in response to a Rule 45 subpoena and asked that they provide any authority supporting that request. I also noted that Uber had advised that its comparison of the email addresses produced by EDS against information available to Uber had not identified any matching individuals. Based on that representation, I explained that Uber's request that EDS produce Stripe transaction identifiers for more than 34,000 transactions appeared overbroad. I stated that if Uber believed particular email addresses in the production were masked or otherwise required further review, Uber could identify those specific entries and provide the basis for that belief so the parties could evaluate whether any narrower production would be appropriate. I also advised Uber's counsel that the costs incurred by EDS in responding to the subpoena were continuing to increase, including attorneys fees and the time required for EDS personnel to run searches and compile the requested data, and that the costs referenced in my October call had more than doubled in attorneys fees. Exhibit D.

27.    Mr. Shortnacy responded on November 26, 2025 at 9:34pm, the night before Thanksgiving with the following:

> "As we discussed on our call on Friday, plaintiffs in the Uber MDL have used your client's services to create non-bona fide Uber receipts. But your client has not produced information sufficient to identify these and other plaintiffs who have used your client's services. As I explained on our call, the email addresses provided by your client to date do not necessarily tie to any information (i.e., other email address) that has been disclosed in the MDL by a plaintiff, which only underscores the insufficiency of the production and why we need your client to produce the Stripe IDs that you previously said your client would produce but are now withholding. You have explained to us that there is no substantial burden in providing this Stripe ID information, and that it would be a matter of exporting that

10

field from your client's systems correlating to the information your client has already provided.

Because your client is now refusing to provide information that could be used to determine which plaintiffs in the MDL have used your client's services to create non-bona fide Uber receipts and because your client is refusing to state under oath (by answering the simple questions posed below) that he does not have other information that could be used to identify individuals who have used his services (even though his website and Terms of Use indicates otherwise), it is apparent to us that we have reached an impasse. Uber will exercise its rights under Pre Trial Order No 8 in the MDL, and expressly reserves its rights and remedies under all applicable rules and procedures to enforce the Subpoena.

Exhibit E.

28.    To date, Uber has never provided me or my client with any evidence, either digital or hard copy, that receipts submitted by plaintiffs in the MDL were created using any of EDS's Services.

29.    EDS did not consent to the jurisdiction of the MDL for any enforcement proceeding, and notified Uber's Counsel of the lack of consent on December 8, 2025.

30.    15 days later, on December 23, 2025, Uber filed the current motion with the District of Colorado. At the same time, Uber filed a tag-along action with the Judicial Panel on Multi-District Litigation (JPML). Both motions sought transfer of this narrow Rule 45 dispute to the MDL court. EDS moved to vacate the conditional transfer order issued by the JPML, and that motion is being heard without argument from the parties on March 26, 2026, one day after the filing is complete on this Motion. Uber's filing of a tag along motion has dramatically increased the costs for EDS to respond in various courts on this motion.

31.    Throughout my representation of EDS in connection with this subpoena, I have been mindful that EDS is a small business operated by a sole proprietor and have

11

taken steps to conduct this matter as efficiently as possible in order to minimize the

costs imposed on EDS while responding to Uber's requests.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 11th day of March, 2026.

> */s/ Kelly H. Twigger*
> Kelly H. Twigger
> ESI Attorneys LLC
> 2945 Juilliard Street
> Boulder, CO 80305
> 720-370-0435
> ktwigger@esiattorneys.com
> *Counsel for Respondents*

# Declaration of Kelly Twigger

# Exhibit A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   3:23-md-03084-CRB |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Express Digital Services, LLC, 9878 W Belleview Ave., PMB 3038, Littleton, CO 80123

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.
In lieu of appearance, responsive documents may be mailed/emailed to Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067 (mshortnacy@shb.com).

| Place: Shook, Hardy & Bacon L.L.P., 1660 17th St., Suite 450, Denver, CO 80202 | Date and Time: 10/31/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          10/17/2025

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Michael B. Shortnacy |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC_____ , who issues or requests this subpoena, are:

Michael B. Shortnacy, Shook, Hardy & Bacon L.L.P., 2121 Ave of the Stars, Ste 1400, Los Angeles, CA 90067

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## DEFINITIONS

1. "ALL" AND "ANY" both INCLUDE "each" AND "every."

2. "CONTACT INFORMATION" means ANY information that could be used to identify a PERSON, INCLUDING name, phone number, physical address, email address, IP address, Apple Account ID, Google Account ID, OR the number AND financial institution RELATED TO ANY payment method, INCLUDING ANY credit card, debit card, OR bank account.

3. "DOCUMENTS" means the original OR a copy of handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail OR facsimile, AND every other means of recording upon ANY tangible thing, ANY form of communication OR representation, INCLUDING letters, words, pictures, sounds, OR symbols, or combinations thereof, AND ANY record thereby created, regardless of the manner in which it has been stored, INCLUDING electronically stored information as defined in Fed. R. Civ. P. 34.

4. "INCLUDE" AND "INCLUDING" shall mean "INCLUDING, but not limited to."

5. "OR" AND "AND" shall INCLUDE AND/OR.

6. "PERSON" shall INCLUDE a natural PERSON, firm, association, organization, partnership, business trust, corporation, limited liability company, OR public entity.

7. "RELATING TO" OR "RELATED TO" means, by way of example AND without limitation; demonstrates, describes, memorializes, evidences, comprises, refers to, pertains to, supports, contradicts, affects, discusses, reflects OR concerns ALL OR ANY portion of the matter, facts, AND contentions specified in these requests.

8. "YOU," "YOUR" or "YOUR COMPANY" shall mean, as applicable, Express Digital Services, LLC, INCLUDING YOUR agents, officers, employees, attorneys OR representatives, AND ANY of YOUR parent companies, subsidiaries, affiliates OR divisions, AND ANY of their respective agents, officers, employees, attorneys OR representatives, which were acquired by YOU.

## INSTRUCTIONS

1. Any production YOU make in response to the Requests for Production below, and any subsequent use thereof by any of the parties to this litigation, is subject to the attached Protective Order (ECF 176).

## REQUESTS FOR PRODUCTION

1. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com, to generate an Uber ride receipt from January 1, 2018 to present.

2. ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL PERSONS that have ever used OR accessed ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt – Receipt Creator, to generate an Uber ride receipt from January 1, 2018 to present.

3. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts generated from January 1, 2018 to present, using ANY website developed, maintained, OR operated by YOU, INCLUDING MakeReceipt.com OR ExpressExpense.com.

4. ANY AND ALL DOCUMENTS containing API data RELATED TO, OR which otherwise depict, ANY AND ALL Uber ride receipts generated from January 1, 2018 to present, using ANY smartphone application developed, maintained, OR operated by YOU, INCLUDING Make Receipt, ExpressExpense, OR Make Receipt – Receipt Creator.

# Declaration of Kelly Twigger

# Exhibit B

**From:** Kelly Twigger ktwigger@esiattorneys.com
**Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
**Date:** November 10, 2025 at 5:20 PM
**To:** Shortnacy, Michael (SHB) mshortnacy@shb.com
**Cc:** Shoshtari, Adam M. (SHB) ASHOSHTARI@shb.com, Taylor, Joshua J. (SHB) JJTAYLOR@shb.com
**Bcc:** shawngraft@gmail.com

Hi Michael, following up on your agreement to discuss fees with your client so that Express Digital Services can be reimbursed for its costs in responding to the subpoena. You and your investigator have told both my client and me that you will have that discussion for weeks, but I have not heard anything concrete. Please advise and note that the calculations I discussed last week did not include any amount for my client's time — more than 17 hours spent — to pull this information together.

I look forward to hearing from you on this issue.

Thanks and hope you had a great weekend,

Kelly

> On Nov 4, 2025, at 10:01 PM, Kelly Twigger <ktwigger@esiattorneys.com> wrote:
>
> Hi Michael,
>
> I can do 12pm to 1pm on Thursday. Mountain Time. Please send over an appt to reserve the time.
>
> Thanks,
>
> Kelly
>
>> On Nov 4, 2025, at 9:00 AM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:
>>
>> Kelly,
>>
>> Thanks again for this information.
>>
>> Do you have time to connect on a Zoom perhaps tomorrow (Weds, before 2 pm MT) or Thursday (before 1 pm MT)?
>>
>> Thank you,
>>
>> Michael
>>
>> **Michael B. Shortnacy**
>> *Partner*
>> Shook, Hardy & Bacon L.L.P.
>>
>> 424-324-3494 | mshortnacy@shb.com
>>
>> <image001.jpeg>
>>
>> **From:** Kelly Twigger <ktwigger@esiattorneys.com>
>> **Sent:** Friday, October 31, 2025 1:19 PM
>> **To:** Shortnacy, Michael (SHB) <mshortnacy@shb.com>
>> **Cc:** Shoshtari, Adam M. (SHB) <ASHOSHTARI@shb.com>; Taylor, Joshua J. (SHB) <JJTAYLOR@shb.com>
>> **Subject:** Re: Express Digital Services Subpoena/In re Uber Sexual Assault Litigation
>>
>>
>> **EXTERNAL**
>>
>> MIchael, the new file has been added. Please go through it with your team and let's aim for Tuesday. I teach on Monday afternoons.
>>
>> If there are questions on the data and you can send them over, I will make sure I have the information for our call.
>>
>> Thanks, have a great weekend and happy halloween!
>>
>> Kelly
>>
>>
>>> On Oct 31, 2025, at 10:19 AM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

# Declaration of Kelly Twigger

# Exhibit C

Case No. 1:25-mc-00121-NYW     Document 18-6     filed 03/11/26     USDC Colorado     pg
2 of 3
Case 3:23-md-03084-CRB     Document 5818-3     Filed 04/10/26     Page 65 of 70



**From:** **Shortnacy, Michael (SHB)** mshortnacy@shb.com
**Subject:** RE: Express Digital Services Subpoena Compliance
**Date:** November 21, 2025 at 5:32 PM
**To:** Kelly Twigger ktwigger@esiattorneys.com
**Cc:** Wikler, Jeremy (SHB) JWIKLER@shb.com, Haider, Jay B. (SHB) jhaider@shb.com

Kelly,

Thank you for your email, and thank for your time this morning on the Zoom.  As we discussed during our call, we need confirmation in the form of a declaration from your client that certain information you have conveyed to us during our prior conferrals and written communications is accurate.  We do not have reason to doubt you but would simply like to have confirmation the information conveyed to you, and then us, is accurate.

Because you asked us to provide the pieces of information that we would like confirmed from your client quickly following our call, we have sketched out our questions in the bullets below.  We can revise this further or schedule another meet and confer, but wanted to give you the questions we have, including questions related to information provided that seems to contradict the statements in your client's Terms and Conditions regarding retention of names and IP addresses, so that you can discuss with your client.   These questions, framed below, are intended to apply to all apps and services that are subject of the Subpoena, that could be used to generate a document in the style of an Uber receipt via the free or paid options offered by your client.  For brevity, and because you asked that we send these questions right away following our call this morning, we are not crafting them individually / separately to relate specifically to each separate source of data.  By "client" we also mean to broadly include the entity or entities that have access to or store the data, not just your individual client Sean Graft, himself:

- Your client does not store or maintain names of individuals that paid to use apps or services.
- Your client does not store or maintain names of individuals that did not pay to use apps or services.
- Your client does not store or maintain IP addresses related to users who pay for apps or services.
- Your client does not store or maintain IP addresses related to users who do not pay for apps or services.
- Your client does not store or maintain IP addresses related to users who download the apps from the Apple Store or Google Play Store.
- Your client does not have any way to connect User IDs that your client stores and maintains to IP addresses related to users.
- Your client has produced all available information responsive to the Subpoena for each of the apps or services, except for the Stripe IDs.
- Your client does not store or maintain any of the information already provided for the users who paid to use apps or services, for the users who do not pay for services.
- Your client's written confirmation of the time periods for all available data for each source produced pursuant to the Subpoena.

Lastly, as discussed, the Stripe IDs are needed in order to cross-check individuals

Lastly, as discussed, the Stripe IDs are needed in order to cross-check individuals who do not currently have a match to information we have from complaints or other information provided pursuant to court order. We are not able to provide you plaintiff-specific information due to the agreed upon terms of the Protective Order that we attached to the Subpoena that was served on your client.   Also, as you know, the data your client has provided has many anonymized and masked email addresses.  We need Stripe IDs to get more information on those users. Additionally, for email addresses that *don't* match we need Stripe IDs to confirm whether they are connected to the litigation. As discussed, we are able to conduct an exercise of locating potentially matching email addresses, and have done so. You asked me to get additional information on this, and I have done so, and can say the following without waiving any work product protection.  The cross-checking to date has not yielded any relevant matches to the data you provided.  As we explained in our call earlier, this is precisely why we need the Stripe IDs to be able to generate information with which to perform a cross-check of the data.  It cannot be inferred that no matches means that no Express Receipt users are plaintiffs in the MDL.  As we see in your data, users mask emails, or they could use separate or different emails to file a claim vs. generating a receipt, and your client says it does not have names of users from which matches could be derived.

With the provision of the requested Stripe ID information, and a declaration attesting to the simple facts you have already communicated to us outlined above, we would consider compliance with the Subpoena complete, with a reservation of rights.  In addition, in line with the above, Uber is willing to cover your client's reasonable fees for compliance, with confirmatory information to be provided by you (e.g., invoice, W-9, etc.), which we understand from our last call was then around $3,500.

It probably makes sense to hop on a call before 4 pm MT as you suggest.  We are available until then, and following that time today to confer and reach resolution – as you have advised us your client will be unavailable after today until January.

Michael

----

**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | [mshortnacy@shb.com](mailto:mshortnacy@shb.com)



**From:** Kelly Twigger <ktwigger@esiattorneys.com>
**Sent:** Friday, November 21, 2025 1:25 PM

# Declaration of Kelly Twigger

# Exhibit D

| | |
|---|---|
| **From:** | **Kelly Twigger** ktwigger@esiattorneys.com 📎 |
| **Subject:** | Re: Express Digital Services Subpoena Compliance |
| **Date:** | November 21, 2025 at 6:51 PM |
| **To:** | Shortnacy, Michael (SHB) mshortnacy@shb.com |
| **Cc:** | Wikler, Jeremy (SHB) JWIKLER@shb.com, Haider, Jay B. (SHB) jhaider@shb.com |
| **Bcc:** | shawngraft@gmail.com |

Michael, I've had a chance to review your email below with my client.

On our call this morning, I told you that Uber would need to provide me with the language from the Federal Rules of Civil Procedure and supporting case law for the basis for a declaration. I do not see that in the email below. There's simply no authority for it. I did not invite you to send a list as you suggest, I told you that you could send it, but without any authority for such a declaration, my client would not be providing one.

Further, your email states that there were no cross matches with your data from the data my client sent, which only strengthens my client's case that providing Stripe IDs for all 30.000+ transactions is overbroad. If you want to continue the dialogue on this issue, please provide the email addresses by line and service on the spreadsheets provided that you believe are masked and the basis for the belief, and we can start there, or you can provide some other basis on which to identify which transactions suggest that they may have come from plaintiffs/riders who submitted receipts in the underlying litigation.

As to the cost issue, the sum you note below were the costs (attorneys' fees only as I stated) before the last few weeks of back and forth and Uber's additional requests. Attorneys fees at this point are approximately $8,500 and climbing and Shawn Graft's time on behalf of Express Digital Services to create the searches and run them multiple times is at $9,000 when billing his time at a reduced cost of $500/hour. Given that Uber has had 3 attorneys on every call we've had on this subpoena, that is a low number, but one that is clearly significant under Rule 45. We will plan to seek those costs in front of Judge Cisneros if we cannot come to an agreement. As I informed you in our first call, Uber has previously retained Shawn Graft to provide expert services for the Company, so it is well aware that $500 is a reduced rate for his services.

I am leaving the office now for the weekend, but will be in on Monday and Tuesday (until 3pm). I would be happy to get on a call to review the information you have regarding masked email addresses as a way to start trying to identify how to narrow the transactions provided to a set that makes sense.

If we don't connect, wishing you all a very Happy Thanksgiving.

Thanks,

Kelly

**Kelly Twigger**
ESI Attorneys LLC

 (720) 370-0435 | (720) 485-9695

 ktwigger@esiattorneys.com

 www.esiattorneys.com

2945 Juilliard Street, Boulder, CO 80305



  

This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

On Nov 21, 2025, at 3:32 PM, Shortnacy, Michael (SHB) <mshortnacy@shb.com> wrote:

# Declaration of Kelly Twigger

# Exhibit E

Case No. 1:25-mc-00121-NYW     Document 18-8     filed 03/11/26     USDC Colorado     pg
Case 3:23-md-03084-CRB     Document 18-3     Filed 04/10/26     Page 69 of 70

**From:** **Shortnacy, Michael (SHB)** mshortnacy@shb.com 📎
**Subject:** RE: Express Digital Services Subpoena Compliance
**Date:** November 26, 2025 at 9:34 PM
**To:** Kelly Twigger ktwigger@esiattorneys.com
**Cc:** Wikler, Jeremy (SHB) JWIKLER@shb.com, Haider, Jay B. (SHB) jhaider@shb.com

Kelly,

Thank you for your email, which we have now had a chance on our side to consider.

As we discussed on our call on Friday, plaintiffs in the Uber MDL have used your client's services to create non-bona fide Uber receipts. But your client has not produced information sufficient to identify these and other plaintiffs who have used your client's services.  As I explained on our call, the email addresses provided by your client to date do not necessarily tie to any information (i.e., other email address) that has been disclosed in the MDL by a plaintiff, which only underscores the insufficiency of the production and why we need your client to produce the Stripe IDs that you previously said your client would produce but are now withholding.  You have explained to us that there is no substantial burden in providing this Stripe ID information, and that it would be a matter of exporting that field from your client's systems correlating to the information your client has already provided.

Because your client is now refusing to provide information that could be used to determine which plaintiffs in the MDL have used your client's services to create non-bona fide Uber receipts and because your client is refusing to state under oath (by answering the simple questions posed below) that he does not have other information that could be used to identify individuals who have used his services (even though his website and Terms of Use indicates otherwise), it is apparent to us that we have reached an impasse. Uber will exercise its rights under Pre Trial Order No 8 in the MDL, and expressly reserves its rights and remedies under all applicable rules and procedures to enforce the Subpoena.

Likewise wishing you a happy Thanksgiving.

Michael


**Michael B. Shortnacy**
*Partner*
Shook, Hardy & Bacon L.L.P.

424-324-3494 | mshortnacy@shb.com



**From:** Kelly Twigger <ktwigger@esiattorneys.com>