[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE** |
| This Document Relates to: | Judge: Hon. Charles R. Breyer Courtroom: 6 – 17th Floor |
| *WHB 823 v. Uber Techs., Inc., N.D. Cal. No. 3:24-cv-04900 W.D.N.C. No. 3:25-cv-00737* | Date Filed: April 12, 2026 Trial Date: April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 823, | CASE NO. 3:25-cv-00737 |
| Plaintiff, | Judge: Hon. Charles R. Breyer |
| v. | Courtroom: 501 |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's "offer of proof" of Dr. Veronique Valliere's proposed testimony relates almost entirely to two issues that Plaintiff ostensibly "abandon[ed]" in pursuit of a very narrow theory of liability: the traumatic impacts of sexual assaults and Uber's conduct.[1] The former is no longer relevant because Plaintiff has narrowed her theory of damages to the immediate after-effects of the alleged touching (i.e., the first 24 hours after the alleged incident) and the latter is no longer relevant because Plaintiff dismissed any claims relating to Uber's alleged wrongdoing (i.e., negligence, design defect, punitive damages). Plaintiff's only remaining theory of liability is a common carrier claim. Consistent with the Court's statements at the April 2 pre-trial conference, Dr. Valliere should not be allowed to offer any of this testimony

*First*, and most fundamentally, most of the testimony being proposed does not fit the facts or scope of Plaintiff's narrowed theories of damages and liability. Despite counsel's representation that Plaintiff is no longer claiming any emotional distress "beyond the day" of the alleged assault, 4/2/2026 Hr'g Tr. 75:6-10, Plaintiff seeks to elicit testimony from Dr. Valliere about the purportedly "traumatic" effects of sexual assaults, ranging from "neurobiological changes" to memory loss, and "significant fear in victims." Pl.'s Br. at 3-4 (citing *Dean* Trial Tr. 770:22-771:1 & Valliere Rep. at 42). The same mismatch appears on liability. Although Plaintiff has represented that Uber's "corporate conduct" and "safety practices" have "no bearing on the questions the jury will be asked to resolve," Pl.'s Omnibus Mot. in Limine at 1 (ECF 5523), she now intends to elicit testimony from Dr. Valliere that "the Uber environment" created "opportunities for sexual misconduct" (i.e., that the platform was *unsafe*). Pl.'s Br. at 5 (citing *Dean* Trial Tr. 593:9-12). Because such opinions are supposedly off-limits under Plaintiff's own narrowed framing of her case, this Court should not permit Plaintiff to reintroduce them through an expert. Nor would the

---

[1]     On April 10, the Court ruled that "given the limited scope of this case, Dr. Valliere's testimony shall be limited to (1) explaining and rebutting myths about sexual assault victim characteristics and behavior and (2) explaining typical characteristics and behavior of sex offenders." PTO No. 43 at 3. While Uber fully appreciates the Court's attempt to limit the scope of Dr. Valliere's proposed testimony, it understands that ruling only to address the pending *Daubert* motion and not Plaintiff's offer of proof, which Uber had not yet addressed. For the reasons set forth in this brief, the proffered testimony should not be admitted notwithstanding the Court's order.

1

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

proposed testimony assist the jury in deciding this case, as Rule 702 requires. Plaintiff insists that Dr. Valliere's claims about sexual assault offenders and victims will assist jurors in "evaluating the testimony from both Plaintiff and the driver and deciding whether the assault alleged in this case" occurred. Pl.'s Br. at 1. But jurors are the arbiters of witness credibility and are more than capable of resolving that case-dispositive question without the imprimatur of a medical expert opining on Uber's corporate conduct. Notably, in denying Uber's motion for summary judgment, the Court reasoned that Plaintiff can establish damages "without needing to rely on an expert medical opinion." PTO No. 43 at 3. If that is true, similar logic should obviate the need for any "expert" testimony on the more straightforward question of who is telling the truth.

*Second*, even if Dr. Valliere's proposed testimony were somehow relevant or helpful to the jury, it could not possibly survive Rule 403 scrutiny. Any tenuous probative value would be substantially outweighed by the undue weight jurors would likely ascribe to generalized expert testimony about sexual assault. The resulting prejudice to Uber would be profound, especially given Plaintiff's position that Uber should be barred from introducing any evidence about its corporate conduct or safety initiatives, as well as evidence of the litany of stressors that have plagued Plaintiff over the course of her life and are obvious alternative explanations for the types of victim "traumas" outlined in Dr. Valliere's suggested testimony. Put another way, Plaintiff would be allowed to present a one-sided, confusing, and distorted view of the facts of this case while foreclosing Uber from offering the context necessary to test it. This is precisely the kind of unfair prejudice that requires exclusion under Rule 403.

*Third*, to the extent Dr. Valliere is permitted to opine about sexual assault victim "traumas," that would necessarily open the door to Plaintiff's history of serious trauma that has contributed to her very complicated mental health state. Indeed, the Court essentially recognized as much on the record at the pre-trial conference, warning that any suggestion by Plaintiff that she was harmed outside the narrow 24 hours "immediately following" the incident "may open some doors" for Uber to address this very evidence. 4/2/2026 Hr'g. Tr. 61:9-14, 62:14-22. Thus, at a minimum, basic fairness dictates that Uber have an

2

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

opportunity to rebut any suggestion by Dr. Valliere that the alleged incident contributed to Plaintiff's emotional distress beyond the immediate 24-hour period following that event.[2]

Finally, if the Court allows Dr. Valliere (as Plaintiff's "offer of proof" previews) to opine that "common" traits of offenders are "entitlement, misogyny, or 'sexual distorted beliefs,'" Pl.'s Br. at 5 (citing *Dean* Trial Tr. 592:10-593:2), that would unfairly suggest (without any evidentiary basis) that Mr. Richardson exhibited such characteristics. To challenge that false comparison, Uber should be allowed to present evidence of Mr. Richardson's background check, his positive ratings and feedback from riders, and the fact that he did not have any prior incidents on the platform.

In sum, Plaintiff's "offer of proof" is little more than a blueprint for impermissible expert testimony and highlights why Dr. Valliere's proposed testimony would unfairly taint the trial.

## II.     ARGUMENT

### A.     <u>Dr. Valliere's Proposed Testimony Would Not Help Jurors Decide This Case.</u>

At the most basic level, "expert testimony must fit the facts of the case"—i.e., be probative of the claims or defenses. *See Williams v. Sig Sauer, Inc.*, 799 F. Supp. 3d 470, 480 (E.D.N.C. 2025); *see also United States v. Prezioso*, 782 F. App'x 586, 588 (9th Cir. 2019) (affirming exclusion of expert whose intended testimony on accounting standards and duties had "no bearing" on the "specific facts of th[e] case"). Even if relevant, "[e]xpert testimony is admitted only if it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Prezioso*, 782 F. App'x at 588 (citing Fed. R. Evid. 702). To be "helpful" to jurors, the testimony "must be outside the common knowledge or function of the fact finder." *Williams*, 799 F. Supp. 3d at 480; *see also United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (affirming exclusion of expert psychological testimony on effects of sleep deprivation on the reliability of an eyewitness to a crime because they are "readily comprehended by jurors and do not require an expert for their explanation"); *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) (affirming exclusion of expert testimony about the amount of weight that an individual could safely lift

---

[2]    As Uber explained in its trial brief on damages (ECF 5801, filed April 9, 2026), Plaintiff's prior traumatic experiences are necessarily admissible, even under Plaintiff's narrowed 24-hour theory of harm because there is no practical way to segregate what (if any) nominal harm was purportedly caused by the alleged assault on the day of the incident from these myriad other stressors that have impacted Plaintiff's mental state.

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

because "[t]he typical juror knows that it is more difficult to lift objects from a seated position"). The testimony outlined in Plaintiff's brief does not satisfy either of these basic requirements.

*First*, Dr. Valliere's opinions do not "fit" the facts of Plaintiff's narrowed case. While Plaintiff insists that Dr. Valliere will offer "relevant" testimony about victim characteristics and behavior, the bulleted examples in her brief cover issues that have nothing to do with Plaintiff's sole remaining theory. For example, Plaintiff highlights Dr. Valliere's testimony from the *Dean* trial discussing studies and experience purportedly "show[ing] that people assume that threats come from ***violent*** predators 'who are going to jump out'" of the vehicle. Pl.'s Br. at 2 (citing *Dean* Trial Tr. 598:21-599:2) (emphasis added). But there is no evidence that Plaintiff harbored such feelings in this case. Similarly, Plaintiff repeatedly cites to testimony from Dr. Valliere discussing "***rape*** myths and misinformation," Pl.'s Br. at 4 (citing *Dean* Trial Tr. 577:11-14; *id.* 779:10-25) (emphasis added)—which are completely disconnected from the narrow assault/battery theory she is supposedly advancing. This mismatch is even more pronounced given Plaintiff's counsel's representation that "[t]here is no lasting effect to her emotionally or physically beyond the day" of the alleged assault. 4/2/2026 Hr'g Tr. 75:6-10. Yet, she seeks to introduce "expert" testimony that "[a]fter a traumatic sexual assault, memory is often impaired," Pl.'s Br. at 3; that "[t]rauma can disorganize," *id.*; and that "[s]exual harassment and physical boundary violations can ***terrify*** a lone passenger," producing "***significant fear*** in victims," *id.* at 4 (citing Valliere Rep. at 42) (emphases added). These generalized opinions about lasting trauma and psychological effects are irreconcilable with Plaintiff's narrowed claims as outlined in her recent filings and by her counsel at the pre-trial conference. Because this testimony does not bear on the "specific facts of th[e] case," it fails Rule 702's fit requirement and should be excluded. *Prezioso*, 782 F. App'x at 588.

Dr. Valliere's proposed testimony on "offender" characteristics and behavior similarly does not "fit" the facts of Plaintiff's narrowed case. Because Plaintiff's only remaining claim is based on Uber's alleged duty as a common carrier, she has taken the position that evidence of "Uber's corporate conduct, safety practices, or general record" is irrelevant and inadmissible. Pl.'s Omnibus Mot. in Limine at 1. But the descriptions of Dr. Valliere's proposed testimony cover precisely those subjects. For example, Plaintiff highlights Dr. Valliere's testimony from *Dean* claiming that "[o]ffenders seek out environments, ***like the***

4

*Uber environment*, that present opportunities for sexual misconduct." Pl.'s Br. at 5 (citing *Dean* Trial Tr. 593:9-12) (emphasis added); *see also id.* ("[b]y its nature, ridesharing offers an offender ready access to victims."); *id.* (citing Valliere Rep. at 34). Plaintiff also points to Dr. Valliere's statements criticizing the fact that passengers are "matched by Uber with the driver" and that the independent drivers "are not supervised and can choose w[hat] times of day and what parts of town they want to work," allegedly facilitating "an opportunity to evaluate his potential victim . . . ." *Id.* at 6 n.3 (quoting Valliere Rep. at 11). The clear import of this proposed testimony is for Plaintiff to advance the argument that the Uber platform is unsafe and that Uber acted improperly. Because such testimony "has no bearing on the questions the jury will be asked to resolve in this trial," Pl.'s Omnibus Mot. in Limine at 1, Plaintiff should not be allowed to introduce it under the guise of expert testimony.

*Second*, Dr. Valliere's proposed testimony in any event would not help jurors decide nearly any relevant fact in this case.[3] Under Plaintiff's framing of her case, the "narrow" issues for trial are "whether the assault occurred as Plaintiff described and, if so, the amount of damages" (for one day). Pl.'s Omnibus Mot. in Limine at 1; *see also* 4/2/2026 Hr'g Tr. 75:6-10. Although Plaintiff contends that Dr. Valliere's opinions about "the characteristics and behavior of both sexual assault offenders and victims" "will assist the jury in evaluating the testimony from both Plaintiff and the driver," Pl.'s Br. at 1, jurors do not need an expert to perform that basic function. The Court's summary judgment ruling (i.e., that jurors are "capable" of determining emotional distress damages "without needing to rely on an expert medical opinion") only supports this conclusion: if jurors do not need a medical expert, they certainly do not need a credibility expert. Indeed, expert testimony on whether Plaintiff's or the independent driver's account is true would "intrude[] on the jury's role regarding the assessment of the credibility of witnesses." *Lespier*, 725 F.3d at 449 (citation omitted); *see also United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (expert testimony on credibility of particular witnesses was improperly admitted because credibility is an area in which jurors do not need expert assistance).

The child sex abuse cases Plaintiff cites admitting Dr. Valliere's testimony do not support admission here. The courts in those cases reasoned that Dr. Valliere's testimony on why child sex abuse

---

[3]    As previously noted, the potential exception is underreporting.

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

victims may not initially come forward would "assist the jury because many jurors are at a disadvantage when dealing with sexual abuse of children." *United States v. Leroy*, 787 F. App'x 74, 79-80 (3d Cir. 2019) (Dr. Valliere's testimony "assisted the jury in learning about ***specialized*** topics") (citation omitted) (emphasis added); *see also United States v. Maurizio*, No. 3:14-23, 2015 WL 5228031, at *5 (W.D. Pa. Sept. 8, 2015) (admitting Dr. Valliere's testimony "regarding why child sexual abuse victims may initially hide the abuse, delay disclosure, and/or attempt to recant the abuse"). Here, by sharp contrast, jurors will simply be asked to decide whether Mr. Richardson, as Plaintiff alleges, "reached over and grabbed her inner thigh and asked if he could 'keep it with him'" and, if so, what (if any) damages she sustained as a result. Pl.'s Omnibus Mot. in Limine at 1. At least to the extent the Court holds that Plaintiff's history of trauma is excluded from the case, these are simple and straightforward questions and do not require a "specialized" inquiry that requires the aid of an expert witness.

In short, Dr. Valliere's proposed testimony will not "help the trier of fact to understand the evidence or to determine a fact in issue" at trial, requiring its exclusion.

## B.    Dr. Valliere's Proposed Testimony Should Also Be Excluded Under Rule 403.

Even if Dr. Valliere's proposed testimony satisfied the dictates of Rule 702, it would easily fail Rule 403's balancing test. *See* Fed. R. Evid. 403. As the Supreme Court has explained, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises ***more control*** over experts than lay witnesses." *Id.* (emphasis added). This principle applies with special force to opinions offered by experts opining on medical issues given the undue weight generally accorded to such witnesses. *See Tchatat v. City of New York*, 315 F.R.D. 441, 447 (S.D.N.Y. 2016) ("What little value they have is far outweighed by the danger that the jury would accord too much weight to such opinions because they come from the mouth of a medical professional."). Dr. Valliere's proposed testimony on "offenders" and "victims" is inadmissible under these principles.

***First***, Dr. Valliere's claims about "offenders" would be unduly prejudicial to Uber. Despite Plaintiff's labels, these opinions plainly impugn the safety of the platform and Uber's conduct, effectively

6

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

accusing Uber of giving "offenders" the "opportunity" to assault women. Pl.'s Br. at 5. Such evidence has zero probative but immense prejudicial value under Plaintiff's framing of the case. In addition, introducing this testimony would protract what Plaintiff has claimed is supposed to be a "narrow" trial focused solely on whether Mr. Richardson assaulted Plaintiff. Moreover, permitting Plaintiff to cover these topics through an expert—while simultaneously barring Uber from addressing them on the theory that Plaintiff has narrowed her litigation theory—would leave jurors with a completely one-sided and distorted picture of the facts of this case and violate Uber's right to a fair trial.

*Second*, Dr. Valliere's proposed testimony about "victims" also fails the requirements of Rule 403. Although Dr. Valliere has not examined Plaintiff (much less formulated any opinions about the nature of her alleged injuries), she apparently seeks to tell jurors that sexual assault victims react "individualistically," depending on their "level of disbelief, confusion, terror, fear, [or] humiliation," 1/16/2026 *Dean* Trial Tr. 764:13-18, and that "trauma causes neurobiological changes in the body," *id.* 770:22-771:1. The obvious message that jurors would hear from that testimony is that ***Plaintiff herself*** experienced these emotions and biological changes. But in opposing Uber's motion for summary judgment, Plaintiff argued that jurors can address the question of Plaintiff's alleged emotional distress based on "logic and common sense." Pl.'s Opp'n to Mot. for Summ. J. at 21 (ECF 5624-2). And in denying Uber's motion for summary judgment, the Court credited that argument, concluding that Plaintiff can establish damages immediately stemming from the alleged assault "without needing to rely on an expert medical opinion." PTO No. 43 at 3. Admitting Dr. Valliere's ruminations about hypothetical (and highly charged) emotional and biological reactions to sexual assault (indeed, even rape) would unfairly play to the emotions of jurors and embellish a theory of injury and causation that, according to Plaintiff and the Court, does not require an expert (and does not extend past one day). *See Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 183688, at *28 (N.D. Cal. Nov. 2, 2017) (expert testimony that "would likely distort" the record "with the façade of expertise" "should be excluded under both FRE 702 and FRE 403").

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE
Case No. 3.23-md-03084-CRB (LJC)

In short, Plaintiff seeks to introduce issues that she previously deemed off the table, do so under the guise of expert testimony, and simultaneously preclude Uber from responding in kind. Such a presentation would squarely violate Rule 403 as well as Uber's due process right to defend itself.

C.      **At The Very Least, Dr. Valliere's Testimony Would Open The Door To Plaintiff's Prior Traumas And Mr. Richardson's Background Check And Positive History On The Uber Platform.**

Finally, portions of Dr. Valliere's proposed testimony would necessarily open the door to certain categories of evidence Uber has maintained are highly relevant to its defense but that the Court has excluded under Plaintiff's narrowed litigation theory. Most fundamentally, any "trauma"-related testimony from Dr. Valliere would necessarily open the door to Plaintiff's prior traumas.[4] *See Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 U.S. Dist. LEXIS 77865, at *14-15 (N.D. Cal. Apr. 12, 2011) ("[I]f Plaintiff presents testimony or other evidence that opens the door to his mental health status and history, Defendants may move at that time to introduce evidence of Plaintiff's mental health status and history for impeachment and rebuttal purposes."). As the Court recognized during the pre-trial conference, a reason it was inclined to grant Plaintiff's motion to exclude evidence of her troubled past (apart from her drug addiction) is because Plaintiff is no longer seeking any emotional distress damages "for her ongoing life subsequent to the 24 hours surrounding the incident." 4/2/2026 Hr'g Tr. 61:1-5. As the Court put it, Plaintiff "abandon[ed]" her broader theory of alleged harm based on a "cost benefit analysis," strictly limiting her case to the immediate 24-hour window following the alleged incident. *Id.* 64:23-65:5. Thus, to get the benefit of any ruling excluding other stressors, the Court made clear that Plaintiff may only "describe how she felt as a result ***immediately*** following the incident[.]" *Id.* 62:20-23 (emphasis added). Indeed, when Plaintiff's counsel seemed to equivocate on the scope of the claimed injury, the Court made clear that ***any*** suggestion that the alleged incident harmed Plaintiff beyond that very narrow 24-hour period (e.g., how Plaintiff was feeling a week later) "may open some doors" for Uber. *Id.* 61:9-14 ("[I]f you are

---

[4]     To be clear, Uber's position is that this door cannot be closed in the first place for all the reasons set forth in its trial brief on damages (ECF 5801, filed April 9, 2026), which Uber incorporates here by reference and does not waive by separately arguing here in the alternative, that any door, even if somehow initially closed, would be opened by the testimony Plaintiff proposes to present through Dr. Valliere.

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

looking at her damages that she suffered basically after the incident, then I've got to look at it one way, and if it ends as of the incident, then I look at it a different way.").

Much of Dr. Valliere's proposed testimony would open these doors. As discussed, Plaintiff seeks to have Dr. Valliere opine that "trauma causes neurobiological changes in the body," 1/16/2026 *Dean* Trial Tr. 770:22-771:1; that "*[a]fter* a traumatic sexual assault, memory is often impaired," Pl.'s Br. at 3 (emphasis added); and that sexual harassment "can *terrify* a lone passenger, especially when the offending party may have access to that passenger's location, address, name, and other information," *id.* at 4 (emphasis added). Such sweeping claims would effectively reintroduce Plaintiff's broader theory of harm back into this case, suggest that Plaintiff was afflicted in the hypothetical manner portrayed by Dr. Valliere, and invite jurors to find that the alleged incident is the reason for those traumatic experiences. That would open the door to the various tragic aspects of Plaintiff's life because they may explain "alternative or contributing causes to that emotional distress." *Kakeh v. United Plan. Org., Inc.*, 587 F. Supp. 2d 125, 128 (D.D.C. 2008) (a "plaintiff seeking damages for emotional distress essentially 'opens the door' to intense scrutiny of his psychological status and history"); *see also Ramirez v. Kranski*, No. 15-cv-365-wmc, 2021 U.S. Dist. LEXIS 112684, at *13 (W.D. Wis. June 16, 2021) ("[S]hould plaintiff claim psychological harm, this may open the door to defendant introducing causation evidence relating to other incidents.").

Similarly, Plaintiff's offer of proof shows that Dr. Valliere's proposed testimony about various "stereotype[s] of sex offenders" would open the door to aspects of Mr. Richardson's background that the Court excluded as improper "propensity" evidence, including his clean background check, lack of prior incidents, five-star ratings, and positive reviews from riders. Simply put, if the Court permits Dr. Valliere to suggest to the jury that Mr. Richardson has "'problematic personality traits' like entitlement, misogyny, or 'sexually distorted beliefs'" that are "common" characteristics of offenders, *see* Pl.'s Br. at 5 (citing *Dean* Trial Tr. 592:10-593:2), then Uber must be permitted to challenge that claim by cross-examining Dr. Valliere about whether she has seen anything in Mr. Richardson's background that supports her false analogy and presenting evidence of his spotless record.

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)

In short, the Court should exclude Dr. Valliere's testimony under Rules 401, 702, and 403. Moreover, in the event the Court permits Plaintiff to elicit opinions regarding "trauma" suffered by sexual assault victims and offender stereotypes, such opinions would necessarily open the door to all of Plaintiff's other traumas and Mr. Richardson's history and overall usage of the Uber platform.

## III.    CONCLUSION

For the foregoing reasons, the only proper subject of expert testimony outlined in Plaintiff's trial brief is the extent to which sexual assault is underreported. The Court should preclude Dr. Valliere from opining on any other subject.

DATED: April 12, 2026                              Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: TESTIMONY OF DR. VALLIERE

Case No. 3.23-md-03084-CRB (LJC)