[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*WHB 823 v. Uber Techs., Inc.,*<br>*N.D. Cal. No. 3:24-cv-04900*<br>*W.D.N.C. No. 3:25-cv-00737* | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFF'S OFFER OF PROOF RE DRIVER DEACTIVATION**<br><br>**PUBLIC VERSION**<br><br>Judge:  Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor<br><br>Date Filed:  April 12, 2026<br>Trial Date:  April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 823,<br><br>       Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>       Defendants | CASE NO. 3:25-cv-00737-CRB<br><br>Judge:  Hon. Charles R. Breyer<br>Courtroom:  501 |

1

During the April 2, 2026 Pre-Trial Conference, the Court indicated that it would allow Plaintiff to provide an offer of proof that Uber's deactivation of Jeffery Richardson resulted from an investigation by Uber such that it constitutes an admission from Uber that the alleged incident occurred.

While Plaintiff's Offer of Proof (Dkt. No. 5800) ("Pl.'s Offer") claims that the deactivation evidence "squarely supports Plaintiff's credibility," *id.* at 1, it does nothing of the sort. To the contrary, the evidence in the record—including evidence cited by Plaintiff—makes clear that Mr. Richardson's Uber account was deactivated in January 2025 pursuant to a default company policy under which the accounts of drivers named in cases in this litigation are automatically deactivated. Plaintiff's contrary assertion—that Uber deactivated Mr. Richardson's account based on an investigation into the facts of her case or a determination regarding the credibility of her allegations—rests on a series of speculative inferences and a misreading of the record materials. The Court should not allow Plaintiff to mislead and confuse the jurors in this manner.

## RELEVANT FACTS

This case involves a ride, arranged using the Uber platform, that took place on March 26, 2019. Ex. 1, UBER-MDL3084-BW-00048509. Plaintiff now claims that the driver touched her leg, but she never reported the alleged incident directly to Uber. Instead, on February 2, 2023, four years after the ride, Uber's Insurance Team received limited information through Plaintiff's counsel alleging that Mr. Richardson had engaged in an unspecified incident of sexual assault against their client, WHB 823, on March 26, 2019. *See* Ex. 2, UBER-MDL3084-DFS00074490 (Uber incident report noting "sexual assault – insufficient information" and that "Details – No information has have been provided" about the allegations or the nature of the alleged injury).

On February 7, 2023, Uber's Trust and Safety Team received the above information from the Insurance Team and created a document called a "JIRA" to memorialize that information. UBER-MDL3084-DFS00074490. Uber's Trust and Safety Team is the team responsible for handling safety reports, including those involving alleged sexual assault or misconduct, as well as any investigation following such a report and any actions taken on user accounts at the conclusion of such an investigation. The JIRA document memorializes the steps taken and the information obtained through that process.

That same day, February 7, 2023, Uber's Trust and Safety Team automatically waitlisted Mr. Richardson with a safety lock. *Id.*; Ex. 3, UBER-MDL3084-BW-00007775. This waitlist, with a safety lock, blocked Mr. Richardson's ability to access the Uber platform to provide rides. *Id.* There is no dispute that it is Uber's standard policy to waitlist every driver involved in an alleged safety incident "automatically, without any determination as to the veracity of [the] allegations[.]" Pl.'s Offer at 3-4; *see also* Ex. 4, UBER_JCCP_MDL_000366728. There was no investigation or outreach to either Plaintiff or Mr. Richardson prior to the waitlist decision. UBER-MDL3084-DFS00074490. In fact, because Plaintiff is a represented party, Uber could not reach out to her to investigate her claim. As Uber's Director, Head of Central Safety, explains in his Declaration, "When a report is received solely through litigation, Uber may deviate from its standard investigative procedures; for example, where a reporting party is represented by counsel and direct outreach is not permitted. In these instances, ***as is the situation here***, Uber removes the reported-against party's access to the platform and applies a safety lock without additional investigation." *See* Decl. of Greg Brown at 4 (Dkt. No. 5641-14, filed Mar. 24, 2026) (emphasis added).

On August 8, 2024, more than a year after Uber waitlisted Mr. Richardson with a safety lock, Plaintiff filed her MDL Complaint. Plaintiff's Complaint did not include any specifics regarding her allegations against Mr. Richardson, claiming only that she "was sexually assaulted, harassed, battered, or otherwise attacked." Compl., *WHB 823 v. Uber Technologies Inc.*, No. 3:24-cv-4900 (N.D. Cal. Aug. 8, 2024), ECF No. 1. On October 2, 2024, Plaintiff served Uber with her Plaintiff Fact Sheet, in which she described the alleged incident for the first time. The JIRA document was not updated at that time with Plaintiff's allegations.

Uber has a company policy with respect to the investigation of safety reports. *See* UBER_JCCP_MDL_002270576-87 ("Mass Tort Policy") (attached as Ex. E to Pl.'s Offer). As of January 7, 2025, that policy included a "Mass Tort Incident Severity Matrix," which expressly states that the "***Default* Account Action/Decision**" for an alleged incident of "Urgent Sexual Assault/Misconduct" is to "***Deactivate account***." UBER_JCCP_MDL_002270584-85 (emphases added).

3

On January 28, 2025, consistent with these policies and procedures, Uber took the *default* account action and deactivated Mr. Richardson. Ex. 3, UBER-MDL3084-BW-00007775; Ex. 5, UBER-MDL3084-DFS00159966.

The JIRA document includes an update dated January 27, 2025 stating that the action was taken "at the direction of counsel" "and in furtherance of pending litigation." Ex. 6, UBER-MDL3084-DFS00159967 at -970 (unredacted version).[1] The unredacted version of the JIRA document clarifies that the purpose of the January 27, 2025 update was "to review driver account status" and to "update per MT [Mass Tort] guidance," i.e., the January 2025 Mass Tort Policy, which states that deactivation is the automatic, default action where sexual misconduct is reported. UBER-MDL3084-DFS00159967

Uber did not speak with either Plaintiff or Mr. Richardson prior to deactivating Mr. Richardson's Uber account. *See* UBER-MDL3084-DFS00159967. The only time Uber communicated with Mr. Richardson was to send him an automatic notification, pursuant to a standard protocol, that his account had been permanently deactivated. *See* UBER-MDL3084-DFS00159966. On January 28, 2025, the same day that Uber deactivated Mr. Richardson, Uber resolved the JIRA related to this report. UBER-MDL3084-DFS00159967.

---

[1]   Certain limited portions of the JIRA were previously redacted based on a colorable, good-faith claim of attorney-client privilege and attorney work product protection. Plaintiff has now speculated—without any basis—that the redacted portions of the document must reveal that Mr. Richardson was deactivated based on some conclusion by Uber's counsel that the alleged incident occurred. *See* Pl.'s Offer at 5; Pl.'s Mot. in Lim. at 8-9. Accordingly, Uber has reevaluated the redactions and concluded that the document can be produced in full, without a risk of subject matter or other additional privilege waiver, in order to correct Plaintiff's misunderstanding of the record.

On February 28, 2025, one month after the JIRA was resolved and Mr. Richardson was permanently deactivated, the JIRA was updated with information from Plaintiff's Fact Sheet "to reflect the most up-to-date information received *via litigation*." UBER-MDL3084-DFS00159967 (emphasis added).

## RESPONSE TO OFFER OF PROOF

Plaintiff's proffered evidence provides no support for her speculative assertion that Uber's deactivation of Mr. Richardson's account constitutes an admission by Uber that the alleged incident occurred. While the Court granted Plaintiff the opportunity to offer proof related to Uber's decision to deactivate Mr. Richardson, Plaintiff failed to provide any evidence of an investigation, conclusion, or any facts uncovered by Uber related to Plaintiff's credibility or her allegations. Instead, Plaintiff relies on a misleading description of Uber's Mass Tort Policy and testimony by Uber representatives about general safety processes, rather than any evidence of an investigation *in this case*. And Plaintiff ignores that, as of January 2025, Uber's Mass Tort Policy clearly states that deactivation was the default outcome for any driver named in a case in this litigation. In short, Plaintiff seeks to admit something that is not true, which Uber would then need to marshal evidence and/or live witness testimony to correct, resulting in an unproductive use of the Court's and the jury's time.

Plaintiff asserts that "Uber's own safety investigators, acting under Uber's own written standards and with access to objective corroborating data, found Plaintiff's account credible enough to permanently remove Richardson from the platform[.]" Pl.'s Offer at 1. But Plaintiff's offer of proof contains no evidence of any "objective corroborating data" or any credibility determination regarding Plaintiff's allegations by Uber. That is because no such evidence exists. Plaintiff attempts to characterize general deposition testimony by Uber employees as proof of an investigation, but the cited testimony does not say anything at all about Mr. Richardson and establishes only the undisputed fact that Uber can deactivate a driver for a single, serious allegation. *See* Ex. A to Pl.'s Offer, Cissna Dep. 169:23-170:10; Ex. C to Pl.'s Offer, Shuping Dep. 282:10-18. Although Ms. Luu generally agreed that, when a JIRA report is resolved, it "means that the investigation has concluded and Uber has done everything it needed to do to investigate it," her testimony is not specific to the Mass Tort Policy that dictated the deactivation of Mr. Richardson's account; nor did she offer any testimony suggesting that Uber had conducted any such investigation of

5

Plaintiff's allegations specifically. Ex. B. to Pl.'s Offer, Luu Dep. 180:9-15. In fact, Plaintiff's offer of proof does not identify any evidence of any investigation into this particular Plaintiff's claims.

Notably, the JIRA document itself contains a roadmap of all the steps taken and all the information obtained by Uber's Safety Team regarding an alleged incident—and it makes clear that no factual investigation of Plaintiff's claims was undertaken prior to the decision to deactivate Mr. Richardson's account. UBER-MDL3084-DFS00159967. Specifically, the JIRA document confirms that Uber's Safety Team found the statement of experience provided by Plaintiff's attorneys "Insufficient" and there was no "Relevant Information present in the report." *Id.* When Uber reviewed the GPS Data from the trip, it identified "[n]o abnormal stops or deviations in [the] route," and placed an "N" next to the question: "Does this corroborate/conflict/neutral the Key Event." *Id.* Thus, at the time the JIRA was resolved on January 28, 2025, Uber's Trust and Safety Team did not know one way or the other whether Plaintiff alleged that there were "any deviations or key context as related to the trip's movement," *id.*, because Uber's Trust and Safety Team were not aware of Plaintiff's specific factual allegations at that time. The JIRA was not updated with information from Plaintiff's Fact Sheet until February 28, 2025, one month after the JIRA was resolved and Mr. Richardson was permanently deactivated. *Id.* The JIRA also confirms that the additional information Uber obtained in February 2025 was "received via litigation" rather than through investigation by the Trust and Safety Team. *Id.* In other words, Uber could not have deactivated Mr. Richardson in January 2025 based on a finding that the alleged incident occurred as Plaintiff claims because the Trust and Safety Team was not aware of Plaintiff's allegations at the time of the deactivation.

Finally, the January 2025 Mass Tort Policy confirms that Uber's deactivation of Mr. Richardson occurred by default as a matter of company policy. While Plaintiff agrees that the policy lays out the mass tort investigative standard, she ignores that it also dictates that the "***Default Account Action/Decision***" for an alleged incident of "Urgent Sexual Assault/Misconduct" is "***Deactivate account.***" UBER_JCCP_MDL_002270584-85 (attached as Ex. E to Pl.'s Offer) (emphases added). The fact that Plaintiff selectively fails to note this critical language demonstrating that the decision was made as part of a "default" policy highlights the misleading nature of her proposed Offer or Proof. Plaintiff argues that there is an "unbridged gap" between Uber placing Mr. Richardson on a waitlist in 2023 and then permanently deactivating his account in January 2025. Pl.'s Offer at 4. But the Mass Tort Policy makes

6

clear that, as of January 2025, deactivation occurred as a matter of routine company policy unrelated to any substantive review of, or comment on, the veracity of the allegations against the driver. Cissna Dep. 237:15-237:22 (attached as Ex. 12 to Uber's Opp. to Pl.'s Mot. in Limine). The evidence is clear that when a plaintiff "files a lawsuit against Uber in this MDL and Uber is told about it, the trust and safety team is told to automatically deactivate the driver." *Id*.

In short, Plaintiff has been unable to muster **any** reliable evidence to support her speculation that Mr. Richardson's Uber account was deactivated based on an assessment of the credibility of Plaintiff's allegations or a determination by Uber that the alleged incident occurred. Accordingly, Plaintiff's offer of proof should be rejected, and Plaintiff should be barred from introducing evidence or argument at trial on this topic.

DATED: April 12, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' OPPOSITION TO PLAINTIFF'S OFFER OF PROOF RE DRIVER DEACTIVATION
Case No. 3.23-md-03084-CRB / 3:25-cv-00737