[Submitting counsel below]

UNITED STATES DISTRICT COURT
OF NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB **PLAINTIFF'S TRIAL BRIEF RE: CAUSE CHALLENGES** Judge:  Honorable Charles R. Breyer |
| This Document Relates to: *WHB 823 v. Uber Techs., Inc.*, N.D. Cal. No. 24-cv-4900 W.D.N.C. No. 25-cv-737 | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WHB 823,          Plaintiff,      v. UBER TECHNOLOGIES, INC., et al.,          Defendants. | No. 25-cv-737 Judge: Honorable Charles R. Breyer |

**INTRODUCTION**

Plaintiff respectfully submits this trial brief on two anticipated voir dire issues: (1) Plaintiff should be permitted to rehabilitate prospective jurors who indicated on their juror questionnaires that have personal experience with sexual assault and (2) prospective jurors who own stock in Uber should be disqualified from the jury panel. Exclusion of jurors who have who have personal experience with sexual assault for cause without an oral examination to probe their understanding of the rules and their questionnaire responses would run afoul of the Court's task to select a jury that represents "a fair cross section of the community." 28 U.S.C. § 1861. The issue of selecting a fair jury panel is not case-specific: a fair and thorough process here will protect the integrity of jury selection for all future bellwether trials.[1]

**BACKGROUND**

On the juror questionnaire, Question No. 21 asks: "Have you or anyone close to you ever been sexually abused or assaulted?". Prospective jurors may check "Yes, self," "Yes, someone close," or "No." They are then asked: "If yes, explain a) the age of the victim; b) the relationship between the people involved; c) whether it was reported."

In response to Question No. 21, forty-six prospective jurors answered "Yes, self" or "Yes, someone close." *See, e.g.*, Questionnaire Responses of Prospective Jurors ("Wife – About 20 years ago, and the suspect was charged," "One of my good friends was sexually assaulted when she was in high school by a peer at a party," "I was 8. It was a friend of my parents, it was not reported," and "My ex would assault me."). This amounts to 33% of the jury pool.

No question on the juror questionnaire asked whether potential jurors were stockholders of Uber.

**LEGAL STANDARD**

Federal judges are "accorded ample discretion in determining how to best conduct the voir dire." *United States v. Caro*, 597 F.3d 608, 614 (4th Cir. 2010). A juror is properly "excluded for cause if his views would prevent or substantially impair the performance of his duties as a juror in

---

[1] Plaintiff also respectfully renews her request that the jury be asked Plaintiff's submitted voir dire questions, including whether any potential juror has been accused of sexual assault. *See* ECF 5537.

PL'S TRIAL BRIEF RE: CAUSE CHALLENGES
N.D. CAL. NO. 24-CV-4900; W.D.N.C. NO. 25-CV-737

accordance with his instructions and his oath." *United States v. Fulks*, 454 F.3d 410, 427 (4th Cir. 2006) (internal quotation marks omitted). Challenges for cause are appropriate "where actual bias is shown." *Pers. v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988). The trial court "is to exclude veniremen who cannot be impartial. A juror is impartial only if he can lay aside his opinion and render a verdict based on the evidence presented in court." *United States v. Turner*, 389 F.3d 111, 117 (4th Cir. 2004) (internal quotation marks omitted). Actual bias is defined as a prospective juror's "inability to act impartially or a refusal to weigh the evidence properly." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220 (9th Cir. 1997). In assessing bias, a prospective juror's "initial impressions or initial bias may be irrelevant" if the prospective juror "commits to lay aside those feelings and reach a verdict based on the evidence presented and the court's instructions." *Id.* A prospective juror's statement that he "can lay aside his impressions and decide the case on the evidence presented and the charge of the court should [] be weighed in the discretion of the trial judge." *United States v. Claiborne*, 765 F.2d 784, 800 (9th Cir. 1985), *abrogated on other grounds*, *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

## ARGUMENT

### A.   Plaintiff should be permitted to rehabilitate prospective jurors who indicated on their juror questionnaires that they have personal experience with sexual assault.

The Fourth Circuit has declined "to establish a Per se rule of disqualification where a juror [was] related to a victim of a similar crime." *United States v. Jones*, 608 F.2d 1004, 1008 (4th Cir. 1979). This standard has been affirmed and applied to a prospective juror who was related to a victim of sexual assault. *United States v. Fulks*, 454 F.3d 410, 433 (4th Cir. 2006) ("[The prospective juror] assured the court that she could be fair, and [defendant] can point to nothing other than her sister's sexual assault to suggest otherwise. Accordingly, the court did not abuse its discretion in qualifying [the prospective juror] as a juror in [defendant's] trial"). In a case involving rape, the fact that a prospective juror who was sexually molested as a child did not make it "highly unlikely" that the juror "could remain impartial." *Prieto v. Davis*, 2014 WL 3867554, at *22 (E.D. Va. Aug. 5, 2014) ("Is a rape victim as a mater of law incapable of being

impartial in the trial of an accused rapist? We think not.") (internal citations omitted).

This makes sense for a few reasons. First, "to hold that a rape victim can never be an impartial juror in a rape trial [] would insult not only all rape victims but also our entire jury system, which is built upon the assumption that jurors will honestly try to live up to the sanctity of their oath." *Fields v. Brown*, 503 F.3d 755, 775 (9th Cir. 2007) (cleaned up). Second, as Uber itself has recognized[2], a staggering proportion of Americans—and women in particular—have been victims of sexual violence. In Uber's 2021-2022 US Safety Report, the company stated, "[n]ational data shows that women are disproportionately affected by sexual violence. In Uber-related reports of non-consensual sexual penetration, women were 89% of the survivors..." (internal citations omitted).[3] The CDC's National Center for Injury Prevention and Control recently reported that 53.1% of women in Arizona have experienced contact sexual violence (including rape, sexual coercion, and/or unwanted sexual contact)—an estimated 1,463,000 women.[4] 22.3% of women in Arizona have experienced completed or attempted rape.[5] These rates are slightly higher than those for women in the U.S. as a whole (45.1% and 21%, respectively).[6] Automatic exclusion of those personally affected by sexual violence would

---

[2] https://tb-static.uber.com/prod/udam-assets/drclg/UberUSSafetyReport_201718_FullReport.pdf (last accessed January 5, 2026) ("Sexual assault is one of the most pervasive yet under-reported crimes in modern society.... [N]early 44% of US women and nearly 25% of US men will be the victim of contact sexual violence in their lifetime. This is an issue that almost 52.2 million women and 27.6 million men live with every single date."); https://uber.app.box.com/s/lea3xzb70bp2wxe3k3dgk2ghcyr687x3?uclick_id=5e4f66f9-4137-4bf4-910a-f2b153952795 (last accessed January 5, 2026) ("Sexual violence is a devastating and pervasive crime that profoundly affects every facet of society. In the United States, nearly 1 in 2 women and about 1 in 4 men experience some form of sexual violence in their lifetime.")

[3] https://uber.app.box.com/s/lea3xzb70bp2wxe3k3dgk2ghcyr687x3?uclick_id=5e4f66f9-4137-4bf4-910a-f2b153952795 (last accessed January 5, 2026).

[4] https://www.cdc.gov/nisvs/media/pdfs/sexualviolence-brief.pdf?ACSTrackingID=FCP_3_USCDC_1104-DM151455&ACSTrackingLabel=%5BProof%203%5D%20CDC%20Releases%20the%20National%20Intimate%20Partner%20and%20Sexual%20Violence%20Survey%20(NISVS)%3A%20New%202023%2F2024%20Sexual%20Violence%20Data%20&deliveryName=FCP_3_USCDC_1104-DM151455&ACSTrackingID=USCDC_1104-DM151455&ACSTrackingLabel=CDC%20Releases%20the%20National%20Intimate%20Partner%20and%20Sexual%20Violence%20Survey%20(NISVS)%3A%20New%202023%2F2024%20Sexual%20Violence%20Data%20&deliveryName=USCDC_1104-DM151455 (last accessed on January 5, 2026).

[5] *Id*.

[6] *Id*.

PL'S TRIAL BRIEF RE: CAUSE CHALLENGES
N.D. CAL. NO. 24-CV-4900; W.D.N.C. NO. 25-CV-737

eliminate an enormous swath of potential jurors, predominantly women.

Given the statistics, it is unsurprising that many prospective jurors within the jury pool here reported direct or indirect personal experience with sexual violence. The juror questionnaire further did not provide the jurors with an opportunity to affirm whether they could be fair and impartial.

If, during voir dire, a juror with a direct or indirect personal experience with sexual violence indicates that they could not be impartial, the Court should permit time for potential rehabilitation. Rehabilitation will not be unduly time-consuming or difficult: a simple explanation of impartiality and inquiry as to whether jurors can follow the Court's instructions and make a judgment based solely on the evidence presented is all that is required. But the value of assessing jurors' in-person demeanor cannot be understated. *See Huguely v. Clarke*, 509 F. Supp. 3d 575, 614 (W.D. Va. 2020) ("Like all matters involving credibility, *voir dire* relies on the perceptions of those present in the courtroom and is particularly within the province of the trial judge.") (internal quotation marks omitted).

In determining whether a juror can be fair and impartial despite personal experience with sexual violence, the Court may inquire how that experience affected the juror, and how it compares factually to Plaintiff's. *See Fulks*, 454 F.3d at 433 (describing inquiry to determine whether a prospective juror could be fair and impartial due to her sister's sexual assault experience and similarities between a potential juror's daughter and plaintiff.).

The Fourth Circuit has found no abuse of discretion in cases where the lower court rejected cause challenges to strike jurors whose juror questionnaires indicated potential bias where the jurors asserted at voir dire that they will nevertheless heed their duty to set that bias aside. *See, e.g. Fulks*, 454 F.3d at 433 (finding no abuse of discretion for qualifying prospective juror who indicated on questionnaire that sister had been the victim of sexual assault but affirmed that she "could be fair."). Other courts have rejected cause challenges specifically for prospective jurors who reported personal experiences with sexual assault in cases involving the same. *See, e.g.*, *State v. Atherton*, 144 A.3d 311, 317 (Vt. 2016) (prospective jurors in sexual assault trial did not have actual or fixed bias despite reporting in questionnaires that they knew sexual assault

victims and that it would affect their ability to be fair and impartial, where no jurors indicated that they would be unable to be fair and impartial at voir dire following court and counsel's instructions, explanations, and further questioning); *see also id*. at 316 ("[W]hile written responses to a questionnaire may alert the trial court and the parties to a potential issue of juror bias, voir dire provides the opportunity to explore the issue and confirm or deny its actual existence. … It is hardly surprising [] that a juror's initial written response on a questionnaire may change in the voir dire proceeding, just as an initial response in the proceeding itself may change after further questioning and instruction."); *People v. Richardson*, 350 P.3d 905, 915 (Colo. App. 2014) (same, for prospective juror whose mother was a sexual assault victim and wrote on questionnaire that she believed she could not be fair and impartial, but said at voir she could "do her best" to base her verdict on the evidence). Here, in light of the pervasive nature of sexual violence, the Court should utilize voir dire to elicit thorough, informed answers from each prospective juror who reported personal experience with the subject to determine whether they can nevertheless serve as fair and impartial jurors.

**B.    Prospective jurors who own stock in Uber should be disqualified from the jury panel.**

The Fourth Circuit has established a per se rule that stockholders in a party to a lawsuit are incompetent to serve as jurors, making such individuals subject to mandatory disqualification for cause. *See Chestnut v. Ford Motor Co.*, 445 F.2d 967, 971 (4th Cir. 1971) ("That a stockholder in a company which is a party to a lawsuit is incompetent to sit as a juror is so well settled as to be black letter law.").

The Court should disqualify any prospective juror for cause who are stockholders of Uber, regardless of whether the juror claims that they can be fair and impartial. *See Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1050 (4th Cir. 1984) ("The fact that the juror in the instant case, after disclosing stock ownership also swore that such ownership would not destroy the juror's objectivity, is irrelevant. If, as is the law, the juror is legally disqualified from acting, the juror's analysis of his subjective qualifications is beside the point.").

PL'S TRIAL BRIEF RE: CAUSE CHALLENGES
N.D. CAL. NO. 24-CV-4900; W.D.N.C. NO. 25-CV-737

## CONCLUSION

For these reasons, the Court should decline to strike for cause prospective jurors on the basis of their personal experience with sexual assault alone. The Court should, however, strike for cause any prospective jurors that are stockholders of Uber.

Dated: April 13, 2026                              Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated:  April 13, 2026                    By:     */s/ Maya R. Kalonia*
Maya R. Kalonia

PL'S TRIAL BRIEF RE: CAUSE CHALLENGES
N.D. CAL. NO. 24-CV-4900; W.D.N.C. NO. 25-CV-737