UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., <br><br> PASSENGER SEXUAL ASSAULT LITIGATION <br><br><br> This Document Relates to: <br><br><br> ALL ACTIONS | Case No: 3:23-MD-03084 CRB <br><br><br> JOINT LETTER BRIEF REGARDING NONPROFIT DEPOSITIONS <br><br><br> Judge:    Hon. Lisa J. Cisneros <br> Courtroom:    G – 15th Floor |

Pursuant to Pretrial Order 8 [ECF 323], the Parties submit this joint letter regarding party and nonparty depositions concerning nonprofits that endorsed or consulted on Uber's safety policies or safety features, which remains in dispute following meet and confers on March 30 and April 6, 2026. The Parties agree that this dispute does not concern the WHB 823 bellwether trial scheduled for this April.

## I.        Plaintiffs' Position

**Request:** In light of new documents and testimony produced on the eve of and during the *Dean* trial, Plaintiffs request leave to take 30(b)(6) deposition of Uber and the nonprofits[1] it worked with to clarify the role those nonprofits played in conceptualizing, developing, and endorsing the following safety practices or features at Uber:  (1)Safety Risk Assessed Dispatch (SRAD); (2) Marketing Campaigns, (3) Safety Reports and Safety Taxonomy, and (4) Driver Education Modules

**Background:** Plaintiffs noticed the 30(b)(6) depositions of Uber and 9 third party nonprofits.[2] *See* PX-1, Notice of Uber 30(b)(6) Deposition—Nonprofits; Ex. B, Notice of Intent to Serve Deposition Subpoenas—Nonprofits. The Parties met and conferred through Zoom on March 30 and April 6. On March 30, Plaintiffs suggested that Uber identify specific third parties it would rely on in subsequent Wave 1 trials so Plaintiffs could narrow their proposal to these third parties. Plaintiffs also suggested resolving some questions in writing with the aim of narrowing the number and scope of depositions they would need. Uber refused all of Plaintiffs' proposals.

**Argument:** There is good cause to permit 30(b)(6) depositions of Uber and nonprofits that conceptualized, developed, or endorsed Uber safety features or processes including S-RAD and driver education modules. In determining whether "good cause" exists, courts consider the diligence of the requesting party. *Frary v. County of Marin*, 2014 2110026, at *1 (N.D. Cal. May 20, 2014) (citing *Johnson v. Mammoth Enter.*, 975 F.2d 604, 609 (9th Cir. 1992)). Under this standard, the court may permit additional discovery if a prior deadline could "not reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 – 1983 Advisory Comm. Note.

Plaintiffs could not reasonably have obtained this discovery last year. The request is based on contradictory stories emerging on the eve of (and during) the *Dean* trial. Hours before Emilie Boman's October 1 30(b)(6) deposition, Uber produced a "Deposition Aid" purporting to identify all 138-U.S.-based nonprofits that performed work for Uber and the nature of that work. There is no mention of SRAD. This was consistent with the productions Plaintiffs received from nonprofits, which, in part due to Uber's intervention, included only a portion of what Plaintiffs asked for and needed, also made no mention to S-RAD. While Plaintiffs, given the 11th hour production, were unable to review it in advance of the deposition, they went into the new year with what Uber represented to be a comprehensive list of nonprofits' work for Uber.  Uber's response that Plaintiffs somehow should have seen the needles they buried in earlier haystacks is unpersuasive. Moreover, during the initial phase of discovery, Plaintiffs did pursue documents from third parties, which, in part due to Uber's intervention, took months.

 A trial deposition of Sunny Wong on January 7, 2026, revealed an inconsistency with the Boman deposition aid. Mr. Wong testified that in fact Uber had consulted with "nine different advocacy

---

[1] To minimize any potential burden on third parties under Fed. R. Civ. P. 45, Plaintiffs propose beginning with a 30(b)(6) deposition of Uber followed by depositions of third parties only as needed to fill in any gaps.

[2] These are: Bay Area Women Against Rape, D.C. Rape Crisis Center, Jeh Johnson, National Alliance to End Sexual Violence, National Crime Prevention Council, National Network to End Domestic Violence, NO MORE Foundation, Respect Together, RAINN, .

groups" about "S-RAD" to "understand their point of view." Wong Jan. 7, 2026 Dep. 98:8–23. By that point, Plaintiffs had conflicting information as to whether nonprofits performed work related to S-RAD *at all* and no information on whether those nonprofits had been involved in the development of the S-RAD algorithm or threshold.  While Uber claims to have produced "numerous" documents related to "third party engagement on S-RAD," these documents[3] indicated that engagement was limited to fairness and privacy concerns, plus general public relations support. None of these documents come close to suggesting third parties originated the idea of S-RAD or determed how the algorithm would function. Plaintiffs could not have determined from earlier-produced information that safety features like S-RAD "came directly" from third parties until this was raised during trial.

At trial, Uber's corporate witness testimony muddied the water even further. For example, Ms. Boman testified "so many of our safety features and some of our safety processes that we've now built, we just wouldn't have had the ideas. They really came – came from the advocates directly." *Dean* Tr. 2478:21–2479:6. Similarly, Ms. Boman shared that advocates decided specific data fields to include in Uber's Safety Reports. *See id.* at 2528:24–2529:11. Contrasted with the October 1 deposition aid and Mr. Wong's January 7 testimony, this trial testimony painted an entirely new picture. Now, Ms. Boman suggested that the very safety features and procedures at issue in the bellwether cases really came "directly" from nonprofits—not Uber. Now, Plaintiffs do not know which nonprofits (if any) conceived of which safety features, whether they played any role in the design of these features, or whether they were merely endorsed in marketing features they knew nothing about. Plaintiffs need to be able to explore the role these nonprofits played in crafting safety features like driver education modules or S-RAD, or whether they played a role in feature design, such as informing how training videos would be delivered to drivers or consulting on S-RAD's algorithm and threshold.

Uber argues Mr. Wong's testimony is nothing new. This is mischaracterization. Plaintiffs' request is premised on the contradiction between Mr. Wong's testimony and Ms. Boman's deposition aid and trial testimony. While Mr. Wong suggested Uber consulted with third parties in the context of antidiscrimination work, *see* DX-7 Wong Dep. Ex. 1243, and Ms. Boman's deposition aid made *no* mention of S-RAD, Ms. Boman told an entirely new story at trial. *Dean* Tr. 2478:21–2479:6. With more trials ahead, Plaintiffs need to determine which version (if any) is true.

Plaintiffs sought discovery on Uber's safety features and processes since the beginning. However, the new Boman document and testimony, and the Sonny Wong trial deposition testimony introduce a new and seemingly contradictory dimension to these issues regarding exactly what role third parties played in shaping Uber's approach to sexual assault prevention. Additional depositions are warranted under the circumstances. *VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 2007 WL 9812773, at *3 (N.D. Cal. July 26, 2007) (permitting additional depositions because new depositions may be ordered where "new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition.") (quotations omitted). Given Ms. Boman's and Mr. Wong's recent testimony and the apparent conflict with the

---

[3] This includes "S-RAD Advocate and Validation Strategy," UBER_JCCP_MDL_003342905; "S-RAD Advocate Strategy Policy/Comms," and "External Engagements," UBER_JCCP_MDL_005254534.

deposition aid, Plaintiffs need additional discovery to get the story straight. This satisfies the good cause standard. *See id.*; *see also Bickerstaff v. Amazon.com Services, LLC*, 2024 WL 4994344, at *1 (S.D. Cal. Dec. 5, 2024) ("Discovery of new evidence is often sufficient to satisfy the good cause standard." (quotations omitted)); *Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006) (same).

Plaintiffs anticipate that in upcoming trials, Uber will leverage the role of nonprofits in developing or endorsing Uber's safety features just as it did in the *Dean* trial. Plaintiffs should be permitted to explore what third parties were involved; what work they performed related to Uber's safety features like S-RAD and driver education modules; and what information they had about the efficacy of those features over time and Uber's sexual assault rates—especially if those third parties endorsed Uber or its features publicly. At trial, Uber also referenced three members of the Safety Advisory Board by name: Jeh Johnson, Erica Olsen (of NNEDV), and Pamela Zaballa (of NO MORE). *Dean* Trial Tr. 2461:12–23. Plaintiffs therefore intend to further probe these advocates' work. For example, Plaintiffs believe Uber will emphasize that nonprofits developed or endorse its use of S-RAD, and Plaintiffs intend to discover whether nonprofit involvement was related to privacy or fairness-based issues, as opposed to sexual assault prevention. Moreover, Plaintiffs need to understand if these third parties actually endorsed or approved the 1.25% threshold, or if they simply helped to develop the algorithm. Plaintiffs also need to know whether nonprofits work on driver education models simply developed it or if they made recommendations about the appropriateness of the content, length, and frequency of the modules. This is significant because if a nonprofit told Uber driver education was a good idea but never signed off on a delivery method of short, easily skipped videos, this undermines the credibility of Uber employees pointing to nonprofits' endorsements. Finally, for those nonprofits who played a role in the marketing, Safety Reports, or Taxonomy, including by engaging in publicity for the Safety Reports and Taxonomy, Plaintiffs need to understand what they really knew when making these endorsements.

**Efforts to Minimize Burden:** Plaintiffs plan to keep these depositions narrowly tailored to new information about the role of nonprofits in conceptualizing, developing, or marketing S-RAD, driver education modules, the Safety Reports, or the Safety Taxonomy, starting with Uber's corporate representative and only if there are outstanding questions about the role of third parties, questioning those third parties directly. Plaintiffs' proposed modifications also remain on the table.

Plaintiffs' proposal therefore meets the "good cause" standard and Plaintiffs should be permitted to conduct additional discovery related to nonprofits.

## II.        Uber's Position

Plaintiffs' claim that they need ***up to 10 more depositions*** – one of Uber and nine of third-parties – regarding Uber's communications with third-parties about safety-related initiatives is not supported by good cause, but instead reflects a transparent attempt to reopen discovery based on their own failure to pursue information available to them for at least a year. The "new" information Plaintiffs identify is neither new nor contradictory. Plaintiffs have long possessed extensive discovery on Uber's third-party engagements concerning S-RAD, driver education, the Safety Reports, taxonomy, and safety-related marketing, including from multiple corporate witnesses (including Ms. Boman on October 1, 2025)[4] and tens of thousands of produced documents. Neither Mr. Wong's January 2026 testimony nor Ms. Boman's *Dean* trial testimony altered the factual landscape. Indeed, the document used at Mr. Wong's January 2026 deposition – which Plaintiffs claim to be revelatory as to third-party involvement in S-RAD – ***was also used by Plaintiffs to examine Mr. Wong seven months earlier, during his June 2025 deposition***. This is not a needle in a haystack as Plaintiffs claim. And Ms. Boman's trial testimony in *Dean* about third parties did not herald their involvement, but merely echoed information provided by prior Uber testimony. Having failed to act diligently when they had ample opportunity, Plaintiffs cannot show good cause to obtain such discovery now. Their requests should be rejected.

### A.        Plaintiffs cannot show good cause as to S-RAD because the information they seek has been available since late 2024, but they failed to pursue it.

Plaintiffs' claim that third-party involvement in S-RAD only recently came to light is demonstrably false. Uber produced extensive discovery on this topic well before Plaintiffs completed multiple rounds of S-RAD depositions.  In late 2024 and early 2025, Uber produced many easily identifiable documents explicitly addressing third-party engagement on S-RAD, identifying specific organizations and documenting their input, including materials titled: *"S-RAD Advocate and Validation Strategy"* (UBER_JCCP_MDL_003342905); "*External Engagements*" (UBER_JCCP_MDL_005438145); and "*S-RAD Advocate Strategy Policy/Comms*" (UBER_JCCP_MDL_005254534). Uber also produced a variety of S-RAD public policy plans with sections on "Consultants and external engagements" (UBER_JCCP_MDL_002346713), "Advocacy Engagement Strategy" (UBER_JCCP_MDL_003043784), and "2020 Advocate Feedback" (UBER_JCCP_MDL_003390034), as well as a series of "S-RAD Advocate Strategy Biweekly Reports" documenting engagement with each entity (*see, e.g.*, UBER_JCCP_MDL_002621413). All of these were in Plaintiffs' possession prior to the four depositions they took of Mr. Wong, totaling more than 19 hours of testimony. Further, the scope of the third parties' S-RAD engagement (e.g., on fairness, privacy, and discrimination concerns) is not contradicted by anything new in the record. Ms. Boman's trial testimony does not support Plaintiffs' pure speculation that those third parties came up with S-RAD or determined how the algorithm would function. Nonetheless, Plaintiffs had every opportunity to explore the scope, substance, and significance of third-party involvement in S-RAD and simply chose not to.

---

[4] Notably, following that deposition, Plaintiffs initially sought further testimony from Ms. Boman, but ultimately dropped the request, indicating to Uber counsel:  "We've decided to stick with the record with Boman as is."  See DX-1 (11/3/25 email from A. Walsh to J. Levy).  Nothing that has occurred since provides good cause for Plaintiffs to revisit that decision.

Plaintiffs' reliance on Mr. Wong's January 2026 testimony is particularly misplaced. The testimony they now characterize as revelatory was based on a document produced in January 2025, and used by Plaintiffs themselves during Mr. Wong's June 2025 deposition – seven months earlier. (DX-2, 6/25/25 Wong Dep. Ex. 1243; DX-3, 1/7/26 Wong Dep. Ex. 3867).[5] The document plainly identifies advocacy group engagement, including headings such as "***Which advocacy groups did we talk to?***" and "***What concerns did advocacy groups have?***" Yet Plaintiffs chose not to ask any questions on those topics. Only after Uber's counsel elicited testimony on these issues in January 2026, Plaintiffs asked a single follow-up question – whether Uber paid these groups. (DX-4, 1/7/26 Wong Tr. at 96:4-100:3; 162:23-163:6). Plaintiffs had ample opportunity to explore the scope of Uber's engagement and the information the third parties had, and chose not to do so.[6] Plaintiffs' regret over their prior litigation choices does not establish good cause to re-open discovery now.[7]

**B.      Plaintiffs are not entitled to additional discovery on Uber's engagement with third parties related to driver education, the taxonomy and Safety Reports, and marketing because they have already obtained substantial discovery on those issues.**

Plaintiffs cannot establish good cause for even more discovery into Uber's engagement with nonprofits concerning driver education, the taxonomy and Safety Reports, or marketing. The involvement of third parties in these areas has been a central and thoroughly-developed topic of discovery for years. Plaintiffs' attempt to recast longstanding evidence as "new" based on selective excerpts of trial testimony does not justify reopening discovery.

Ms. Boman's *Dean* trial testimony did not introduce new facts and was entirely consistent with her prior deposition testimony and that of other Uber witnesses. *See, e.g.,* 3/5/25 Boman Tr. at 178:8-12 (testifying that Uber worked with advocates to "assess what was an appropriate level of categories to include in the Safety Report"); 4/1/25 Boman Tr. (same); *id*. at 413:11-15 (testifying that Uber worked with safety advocates to inform Safety Report, safety products, and investments); 3/26/25 Fuldner Tr. at 31:16-23 (explaining work with outside advisors to determine Safety Report content); 4/2/25 Payne Tr. at 87:1-18 (discussing reliance on third-party experts in "formulating our safety measures").  Plaintiffs may have failed to elicit the details they now seek, but they had ample opportunities to explore these issues through depositions of Ms. Boman and others.[8]

---

[5] Mr. Wong's JCCP testimony, also available to Plaintiffs, used the *same* document to discuss third-party feedback on S-RAD.  (*See* DX-5, 4/16/25 Wong Tr. at 405:20-409:1, DX-6 2827).

[6] Their lack of diligence is further underscored by their failure to take advantage of the opportunity the Court gave Plaintiffs to seek written verification of S-RAD representations within two days of Mr. Wong's October 14, 2025 deposition. (ECF 4060 at 8).

[7] Plaintiffs' professed confusion about a deposition aid also fails to provide a basis for additional discovery. It was responding to a specific 30(b)(6) topic ("Uber's payments to nonprofit organizations whose work involves combatting sexual violence, including the amount(s), date(s), and circumstances of the payment(s)") about which Ms. Boman testified. *See* DX-7, 10/1/25 Boman Dep. Ex. 2059. There was no request for organizations that Uber spoke to about S-RAD.

[8] For example, Plaintiffs' Safety Reports 30(b)(6) topics included "how and why it chose which data to report" and the "200 gender-based violence prevention experts" referenced in the Safety Report.

The documentary evidence is equally extensive. Uber has produced more than 17,000 documents to and from the third parties Plaintiffs identified, and over 47,000 documents referencing at least one of them. Two of the organizations, RAINN and NSVRC, were subpoenaed by Plaintiffs and independently produced over 10,000 documents in 2024. Plaintiffs' suggestion that they need to depose Safety Advisory Board members or their affiliated organizations due solely to a passing reference at the *Dean* trial is disingenuous given that SAB members are identified in Uber's Safety Reports, as well as on Uber's website, and have been the subject of prior deposition testimony.

Plaintiffs have long been aware of the partnerships they now claim require exploration. For example, Uber's collaboration with RAINN on driver education has been publicly disclosed and extensively documented. (*See* 12/4/20 Blog at https://www.uber.com/us/en/newsroom/delivering-on-safety-commitments/). In fact, in September 2025, Uber produced all driver education training modules, which themselves disclose RAINN's involvement. Uber's public Safety Report and website also disclose Uber's work with RAINN to develop the trainings. Plaintiffs explored this relationship throughout 2025 depositions, and discussed it in their own expert reports (*see, e.g.*, Valliere Expert Report at 19). Similarly, advocates' roles in taxonomy development, the Safety Report, and marketing have been the subject of years of discovery. Even Plaintiffs' experts (Drumwright and Valliere) discussed nonprofits' endorsement of the taxonomy, Safety Report, and marketing in their reports, and Plaintiffs referenced those endorsements in their February 2024 Master Complaint. (ECF 269 at ¶327).

Against this backdrop, Plaintiffs cannot plausibly claim that they lacked information about third-party involvement. Any alleged gaps in the details are the product of Plaintiff's own litigation choices—not any deficiency in Uber's disclosures, testimony, or productions.

Dated: April 15, 2026

Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

*/s/ Christopher Cox*
CHRISTOPHER D. COX (Admitted *Pro Hac Vice*)
christopher.cox@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022

Telephone: (212) 446-4800

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*