# PX-1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF

CALIFORNIA SAN FRANCISCO

DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB<br><br>**NOTICE OF SUBPOENA** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Charles R. Breyer |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE, pursuant to Federal Rule of Civil Procedure 45, that Plaintiffs intend to serve a subpoena, in the form attached hereto, on the following third parties on April 9, 2026 or as soon thereafter as service may be effectuate:

- Bay Area Women Against Rape

- D.C. Rape Crisis Center

- Jeh Johnson

- National Alliance to End Sexual Violence

- National Crime Prevention Council

- National Network to End Domestic Violence

- Respect Together (formerly known as Pennsylvania Against Rape) (also known as National Sexual Violence Resource Center)

- Rape Abuse and Incest National Network

By: */s/ Sarah R. London*       Dated: April 9, 2026
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400

San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Civil Action No.    3:23-md-03084-CRB</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>IN RE: UBER TECHNOLOGIES, INC.,<br>PASSENGER SEXUAL ASSAULT LITIGATION</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>This document relates to: All Actions</td><td>)</td><td></td></tr>
</table>

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Bay Area Women Against Rape

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: | Date and Time: |
|---|---|
| Zoom<br>555 Montgomery St #820, San Francisco, CA 94111 | 8 AM PT on May 1, 2026 |

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | */s/ Samantha Hoefs* |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether h"andwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

2 | Case No. 3:23-MD-3084-CRB-LJC

      i.   Future of Privacy Forum
      j.   Harvard Data Science Initiative
      k.   It's On Us
      l.   National Sexual Violence Resource Center (NSVRC)
      m.  National Crime Prevention Council (NCPC)
      n.   National Network to End Domestic Violence
      o.   The NO MORE Foundation (d/b/a "NO MORE")
      p.   Rape Abuse and Incest National Network (RAINN)
      q.   RALIANCE
      r.   Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
      s.   San Francisco Women Against Rape
      t.   Stanford Center for Internet and Society
      u.   The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "BAY AREA WOMEN AGAINST RAPE" "YOU," or "YOUR," shall be used interchangeably and refer to BAY AREA WOMEN AGAINST RAPE, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

### Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

4 | Case No. 3:23-MD-3084-CRB-LJC

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

5 | Case No. 3:23-MD-3084-CRB-LJC

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## <u>SCHEDULE B</u>

### Document Requests

1.  The most recent resume and/or LinkedIn profile for the deponent;

2.  A substantially complete production of the deponent's custodial file; and

3.  All documents reviewed by the deponent in preparation for their deposition.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

|  |  |
|---|---|
|  | ) |
|  | ) |
|  | )    Civil Action No.    3:23-md-03084-CRB |
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | ) |
|  | ) |
| This document relates to: All Actions | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                      D.C. Rape Crisis Center

_____
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place:                        Zoom<br>14 Ridge Sq, 3d Floor, Washington DC, 20016 | Date and Time:<br><br>8 AM ET on May 1, 2026 |
|---|---|

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  | CLERK OF COURT |  | OR | /s/ Samantha Hoefs |  |
|---|---|---|---|---|---|

_____        _____
*Signature of Clerk or Deputy Clerk*                           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether h"andwritten or otherwise;

   b. emails;

   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;

   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;

   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"

   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;

   g. voicemails and voice messages;

   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

2 | Case No. 3:23-MD-3084-CRB-LJC

      i.   Future of Privacy Forum
     j.   Harvard Data Science Initiative
    k.   It's On Us
    l.   National Sexual Violence Resource Center (NSVRC)
    m.  National Crime Prevention Council (NCPC)
    n.   National Network to End Domestic Violence
    o.   The NO MORE Foundation (d/b/a "NO MORE")
    p.   Rape Abuse and Incest National Network (RAINN)
    q.   RALIANCE
    r.   Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
    s.   San Francisco Women Against Rape
    t.   Stanford Center for Internet and Society
    u.   The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "D.C. RAPE CRISIS CENTER," "YOU," or "YOUR," shall be used interchangeably and refer to D.C. RAPE CRISIS CENTER, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

## Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

5 | Case No. 3:23-MD-3084-CRB-LJC

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

|  |  |
|---|---|
| ) | |
| ) | |
| ) | Civil Action No.    3:23-md-03084-CRB |
| IN RE: UBER TECHNOLOGIES, INC., ) | |
| PASSENGER SEXUAL ASSAULT LITIGATION ) | |
| This document relates to: All Actions ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                     National Alliance to End Sexual Violence

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place:    ZOOM; or | Date and Time: |
|---|---|
| 14 Ridge Sq, 3d Fl, Washington DC 20016 | 9:00 AM ET on May 1, 2026 |

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Samantha Hoefs |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
, who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**Definitions**

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether h"andwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

     i.   Future of Privacy Forum
     j.   Harvard Data Science Initiative
     k.   It's On Us
     l.   National Sexual Violence Resource Center (NSVRC)
     m.  National Crime Prevention Council (NCPC)
     n.   National Network to End Domestic Violence
     o.   The NO MORE Foundation (d/b/a "NO MORE")
     p.   Rape Abuse and Incest National Network (RAINN)
     q.   RALIANCE
     r.   Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
     s.   San Francisco Women Against Rape
     t.   Stanford Center for Internet and Society
     u.   The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "NATIONAL ALLIANCE TO END SEXUAL VIOLENCE," "NAESV" "YOU," or "YOUR," shall be used interchangeably and refer to NATIONAL ALLIANCE TO END SEXUAL VIOLENCE, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

## Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

|  |  |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | ) ) ) ) ) ) |

This document relates to: All Actions

Civil Action No.    3:23-md-03084-CRB

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                    National Crime Prevention Council

*(Name of person to whom this subpoena is directed)*

✔ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: Zoom 14 Ridge Sq, 3d Floor, Washington DC, 20016 | Date and Time: 8 AM ET on May 1, 2026 |
|---|---|

The deposition will be recorded by this method:    Stenographic means, audio/video recording

✔ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

                    *CLERK OF COURT*

/s/ Samantha Hoefs

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____Plaintiffs_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before

trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

2 | Case No. 3:23-MD-3084-CRB-LJC

      i.    Future of Privacy Forum
      j.    Harvard Data Science Initiative
      k.    It's On Us
      l.    National Sexual Violence Resource Center (NSVRC)
      m.   National Crime Prevention Council (NCPC)
      n.    National Network to End Domestic Violence
      o.    The NO MORE Foundation (d/b/a "NO MORE")
      p.    Rape Abuse and Incest National Network (RAINN)
      q.    RALIANCE
      r.    Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
      s.    San Francisco Women Against Rape
      t.    Stanford Center for Internet and Society
      u.    The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "YOU," or "YOUR," shall be used interchangeably and refer to the entity to whom these requests are made, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

## Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

5 | Case No. 3:23-MD-3084-CRB-LJC

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1.  The most recent resume and/or LinkedIn profile for the deponent;

2.  A substantially complete production of the deponent's custodial file; and

3.  All documents reviewed by the deponent in preparation for their deposition.

6 | Case No. 3:23-MD-3084-CRB-LJC

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

|  |  |
|---|---|
| ) | |
| ) | |
| ) | Civil Action No.    3:23-md-03084-CRB |
| IN RE: UBER TECHNOLOGIES, INC.,<br>PASSENGER SEXUAL ASSAULT LITIGATION ) | |
| ) | |
| This document relates to: All Actions ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                         National Network to End Domestic Violence (NNEDV)

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place:    ZOOM; or<br>14 Ridge Sq, 3d Fl, Washington DC 20016 | Date and Time:<br>9:00 AM ET on May 1, 2026 |
|---|---|

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | | /s/ Samantha Hoefs |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

    a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
    b. emails;
    c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
    d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
    e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
    f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
    g. voicemails and voice messages;
    h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

    i.   Future of Privacy Forum
    j.   Harvard Data Science Initiative
    k.   It's On Us
    l.   National Sexual Violence Resource Center (NSVRC)
    m.  National Crime Prevention Council (NCPC)
    n.   National Network to End Domestic Violence
    o.   The NO MORE Foundation (d/b/a "NO MORE")
    p.   Rape Abuse and Incest National Network (RAINN)
    q.   RALIANCE
    r.   Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
    s.   San Francisco Women Against Rape
    t.   Stanford Center for Internet and Society
    u.   The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "YOU," or "YOUR," shall be used interchangeably and refer to the entity to whom these requests are made, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

**Deposition Topics**

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

|  |  |
|---|---|
| ) | |
| ) | |
| ) | Civil Action No.   3:23-md-03084-CRB |
| IN RE: UBER TECHNOLOGIES, INC., ) | |
| PASSENGER SEXUAL ASSAULT LITIGATION ) | |
| This document relates to: All Actions ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                 The No More Foundation

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place:                                    Zoom | Date and Time: |
|---|---|
| 600 3d Ave, 12th Floor, New York, New York 10016 | 8 AM ET on May 1, 2026 |

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  CLERK OF COURT |  /s/ Samantha Hoefs |
|---|---|
|  | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before

trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                          *Server's signature*

                                                   _____
                                                          *Printed name and title*

                                                   _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

    a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;

    b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;

    c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.

    d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

    a. A Call to Men
    b. AI Now Institute
    c. Albright Stonebridge
    d. Bay Area Women Against Rape
    e. Berkman Center for Internet and Society
    f. Center for Democracy and Technology
    g. D.C. Rape Crisis Center (DCRCC)
    h. Electronic Frontier Foundation

      i.   Future of Privacy Forum
      j.   Harvard Data Science Initiative
      k.   It's On Us
      l.   National Sexual Violence Resource Center (NSVRC)
      m.  National Crime Prevention Council (NCPC)
      n.   National Network to End Domestic Violence
      o.   The NO MORE Foundation (d/b/a "NO MORE")
      p.   Rape Abuse and Incest National Network (RAINN)
      q.   RALIANCE
      r.   Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
      s.   San Francisco Women Against Rape
      t.   Stanford Center for Internet and Society
      u.   The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

3 | Case No. 3:23-MD-3084-CRB-LJC

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "YOU," or "YOUR," shall be used interchangeably and refer to the entity to whom these requests are made, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

### Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

5 | Case No. 3:23-MD-3084-CRB-LJC

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

|  |  |
|---|---|
|  | ) |
|  | ) |
|  | )   Civil Action No.    3:23-md-03084-CRB |
| IN RE: UBER TECHNOLOGIES, INC., | ) |
| PASSENGER SEXUAL ASSAULT LITIGATION | ) |
| This document relates to: All Actions | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      National Sexual Violence Resource Center, also known as Respect Together (formerly
         Pennsylvania Coalition Against Rape), also known as RALIANCE
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place:  Zoom | Date and Time: |
|---|---|
| 325 Chestnut St, Suite 900, Philadelphia PA | May 1, 2026 at 9:00 am ET |

        The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

           *CLERK OF COURT*                                     /s/ Samantha Hoefs
                                              OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before

trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

     i.    Future of Privacy Forum

     j.    Harvard Data Science Initiative

    k.    It's On Us

    l.    National Sexual Violence Resource Center (NSVRC)

    m.   National Crime Prevention Council (NCPC)

    n.    National Network to End Domestic Violence

    o.    The NO MORE Foundation (d/b/a "NO MORE")

    p.    Rape Abuse and Incest National Network (RAINN)

    q.    RALIANCE

    r.    Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))

    s.    San Francisco Women Against Rape

    t.    Stanford Center for Internet and Society

    u.    The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

3 | Case No. 3:23-MD-3084-CRB-LJC

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "YOU," or "YOUR," shall be used interchangeably and refer to the entity to whom these requests are made, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

### Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

5 | Case No. 3:23-MD-3084-CRB-LJC

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1.  The most recent resume and/or LinkedIn profile for the deponent;

2.  A substantially complete production of the deponent's custodial file; and

3.  All documents reviewed by the deponent in preparation for their deposition.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

|  |  |
|---|---|
| )<br>)<br>)<br>IN RE: UBER TECHNOLOGIES, INC.,<br>PASSENGER SEXUAL ASSAULT LITIGATION )<br>)<br>This document relates to: All Actions ) | Civil Action No.    3:23-md-03084-CRB |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                Rape Abuse and Incest National Network

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place:<br>    Zoom<br>    14 Ridge Sq, 3d Floor, Washington DC, 20016 | Date and Time:<br>    8 AM ET on May 1, 2026 |
|---|---|

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  |  |
|---|---|
| *CLERK OF COURT* | /s/ Samantha Hoefs |
|  | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before

trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

1 | Case No. 3:23-MD-3084-CRB-LJC

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:
   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:
   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

     i. Future of Privacy Forum
     j. Harvard Data Science Initiative
     k. It's On Us
     l. National Sexual Violence Resource Center (NSVRC)
     m. National Crime Prevention Council (NCPC)
     n. National Network to End Domestic Violence
     o. The NO MORE Foundation (d/b/a "NO MORE")
     p. Rape Abuse and Incest National Network (RAINN)
     q. RALIANCE
     r. Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
     s. San Francisco Women Against Rape
     t. Stanford Center for Internet and Society
     u. The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "YOU," or "YOUR," shall be used interchangeably and refer to the entity to whom these requests are made, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

**Deposition Topics**

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.


*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.


## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.


6 | Case No. 3:23-MD-3084-CRB-LJC

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

)
)
)  Civil Action No.    3:23-md-03084-CRB
IN RE: UBER TECHNOLOGIES, INC., )
PASSENGER SEXUAL ASSAULT LITIGATION )
This document relates to: All Actions )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                             Jeh Johnson

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: | Date and Time: |
|---|---|
| Zoom 555 Montgomery St #820, San Francisco, CA 94111 | 8 AM PT on May 1, 2026 |

The deposition will be recorded by this method:    Stenographic means, audio/video recording

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule B

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*                                    /s/ Samantha Hoefs
                                            OR

_____          _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*       Plaintiffs
_____ , who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before

trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

   a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
   b. emails;
   c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
   d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
   e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
   f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
   g. voicemails and voice messages;
   h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:
   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:
   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

2 | Case No. 3:23-MD-3084-CRB-LJC

      i.    Future of Privacy Forum
      j.    Harvard Data Science Initiative
      k.    It's On Us
      l.    National Sexual Violence Resource Center (NSVRC)
      m.   National Crime Prevention Council (NCPC)
      n.    National Network to End Domestic Violence
      o.    The NO MORE Foundation (d/b/a "NO MORE")
      p.    Rape Abuse and Incest National Network (RAINN)
      q.    RALIANCE
      r.    Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
      s.    San Francisco Women Against Rape
      t.    Stanford Center for Internet and Society
      u.    The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.

9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

1. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.

2. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile  phone application that is used by Drivers to offer Rides.

3. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

4. "YOU," or "YOUR," shall be used interchangeably and refer to the entity to whom these requests are made, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

## Deposition Topics

*Driver Education*

1. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

2. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS whether or not implemented by UBER.

3. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.

4. The amount YOU were paid by UBER for work performed in connection with DRIVER EDUCATION MODELS.

*S-RAD*

5. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on S-RAD.

4 | Case No. 3:23-MD-3084-CRB-LJC

6. Information and documents UBER shared with YOU about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.

7. YOUR analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.

8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

9. The amount YOU were paid by UBER for work performed in connection with S-RAD, its TRIGGER RATE, or its THRESHOLD.

*Uber's Safety Reports*

10. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S SAFETY REPORT(S).

11. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

12. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

13. The amount YOU were paid by UBER for work performed in connection with UBER'S SAFETY REPORT(S).

*Uber's Taxonomy*

14. The nature and scope of YOUR work in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

15. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement

in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

16. YOUR analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

17. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

18. The amount YOU were paid by UBER for work performed in connection with UBER'S Sexual Assault and Sexual Misconduct Taxonomy.

*Miscellaneous*

19. Any grants or other payments YOU received from UBER.

20. UBER's role in drafting press releases, social media posts, white papers, or publications YOU made or issued.

21. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.

## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.