# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | **JOINT PTO 8 LETTER REGARDING COLLATERAL SOURCE AND TREATER DEPOSITIONS** |
| *B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Judge:        Hon. Lisa J. Cisneros<br>Courtroom:   G - 15th Floor |

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding deficient productions by Plaintiff B.L.

DATED: April 9, 2026                              Respectfully Submitted,

By: *Sommer D. Luther*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com
    *Co-Lead Counsel for Plaintiffs*

By: *Laura Vartain*
    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN (*pro hac vice*)
    Alli.brown@kirkland.com
    JESSICA DAVIDSON (*pro hac vice*)
    Jessica.davidson@kirkland.com
    LAURA VARTAIN
    Laura.vartain@kirkland.com

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    sstrong@omm.com
    JONATHAN SCHNELLER
    jschneller@omm.com

    *Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**Uber's Position:**

Plaintiff B.L. has repeatedly made false statements under oath, concealed critical information and witnesses, and sought to keep Uber from deposing witnesses on which she seeks to rely. For months, Plaintiff concealed her communications with three key witnesses—L.P., R.H., and M.B.—while she was extensively discussing her allegations with them. She even instructed her expert witness to interview them as a foundation for her opinions, all while hiding the witnesses' significance from Uber. Now that the discovery deadline has passed, Plaintiff has revealed that she maintained years of regular, relevant communications with these witnesses. Likewise, Plaintiff disclosed additional treaters after the discovery deadline—on October 30, 2025 and February 24, 2026 (at least one of whom began treating her months before the cut-off). At first, Plaintiff objected to Uber deposing any of these witnesses because the very delay she caused meant the depositions would occur after the discovery deadline. In an effort to appear cooperative, Plaintiff then proposed five hours *total* for five key witness depositions—a limit that would render the depositions useless.[1] Worse yet, after Uber shared its draft briefing on this issue and Plaintiff's improper redactions, Plaintiff revealed, on April 1, 2026, that this was not the extent of her misconduct and concealment. Through subsequent productions of now-unredacted documents, it became clear that a witness whom Plaintiff had identified as a "friend" was actually a treating provider she saw multiple times in the weeks following the alleged incident. And two additional witnesses were revealed to have highly probative information about the alleged incident. Plaintiff has yet to provide treatment records from the treater, and Uber has well-founded concerns that Plaintiff is suppressing more relevant information about these witnesses and others. In any event, Uber has the right to depose these undisclosed witnesses and the Court should grant Uber leave to subpoena *each* of them for deposition.[2] Uber should also be allowed to re-depose Plaintiff in light of the new information. Uber intends to separately seek sanctions before Judge Breyer for Plaintiff's misconduct and the resulting prejudice. Lacking any real response, Plaintiff resorts to ill-conceived deflection, improperly attempting to blame Uber for her own misconduct. These efforts cannot undo the egregious nature of Plaintiff's discovery misconduct.

*Background.* In verified interrogatory responses, dated April 14, 2025, Plaintiff purported to identify all parties she spoke with about the alleged incident or her damages, but omitted L.P., R.H., and M.B. Ex. A (Pl.'s 10th Supp. Interrogs. Resps.) at No. 2. Over the next *three months*, Plaintiff amended those responses *six times*—each time reaffirming under oath that she had no relevant communications with L.P. or R.H., and minimizing her contacts with M.B.[3] That has been proven false.[4] During her June 21-22, 2025 interview with Dr. Mechanic, Plaintiff identified L.P., R.H., and M.B. as three of four key witnesses Dr. Mechanic should interview to understand the impact of the alleged incident. Ex. B (11/22/25 M. Mechanic Dep. Excerpts) 216:20-220:7; 222:14-25; 224:10-226:8; 227:16-24. Plaintiff's own conduct leaves no doubt these concealed witnesses have information that is critical to her case.[5]

---

[1] The Court has already rejected this type of arbitrary "cap" on depositions. *See* ECF No. 2754.

[2] Uber originally offered Plaintiff to cap the depositions at five hours per deposition but Plaintiff did not accept that offer. Given Plaintiff's ongoing misconduct, any artificial time limit for these depositions is inappropriate.

[3] While Plaintiff mentioned "a handful" of conversations with M.B. in the fifth iteration of her verified responses, subsequent discovery indicated that the communications were much more extensive.

[4] Plaintiff's Rule 26 disclosures did not name L.P., R.H., and M.B. until the second revision in June 2025. That disclosure underrepresented the witnesses' role while emphasizing that other witnesses "exchanged messages" with Plaintiff regarding the event. *See* Ex. C (Pl.'s 9th Supp. Rule 26 Disclosures) at 7-8.

[5] Plaintiff also perjured herself at her deposition on June 25, 2025—*3 days after her interview with Dr. Mechanic*—when she testified she had never "had an exam" or "appointment[]" with a doctor for this litigation. *See* Ex. D (Pl. Dep.) 27:15-20. Counsel did not correct the misrepresentation until Dr. Mechanic's report was served.

On July 2, 2025, unbeknownst to Uber, Dr. Mechanic interviewed L.P., R.H., and M.B. and relied on their statements about their regular interactions with Plaintiff in forming her opinions on causation and damages. Ex. E (9/26/25 Mechanic Rpt.) at 52-54, 57-58; Ex. B at 220:11-223:16. Two weeks later, L.P. and R.H. finally appeared in Plaintiff's *eighth* verified responses, which noted a single text exchange with L.P. in December 2024, and intermittent text exchanges with R.H. between August and September 2022. Ex. A at No. 2. For both, Plaintiff swore "they have not spoken since." *Id.* This was another falsehood. Plaintiff also maintained that any contact with M.B. was limited and predated June 11, 2025. *Id.* This is false, too. Just four days after the discovery deadline, Plaintiff served Dr. Mechanic's report containing the witnesses' contrary statements. But it was not until October 30, 2025—*more than one month past the end of fact discovery*—that Plaintiff finally amended her verified responses to reveal what she had hidden for six months: she "had *numerous conversations… over the last few years*" with L.P., "*continue[d]* to speak *monthly*" to M.B., and "[spoke] *frequently* with [R.H.]" *about the alleged incident*. Ex. A at No. 2.[6] Similarly, Plaintiff was treated by therapist L.B. since at least August 1, 2025. Ex. F (B.L.-Baobab Psychiatry-000012). But she waited *three months, until after the close of discovery*, to reveal L.B. Then *five months after the close of discovery,* on February 24, 2026, Plaintiff disclosed psychiatrist G.B. for the first time. Ex. A at No. 2. Perhaps most egregiously, on April 2, 2026, after being confronted with Uber's briefing on these issues, Plaintiff produced unredacted messages, which revealed even more obstruction.[7] The late production shows that Plaintiff saw an additional treater, "███████"—who, until now, Plaintiff identified as a "friend"—in the weeks following the alleged incident and that Plaintiff told "███████" ███████████████████████████████████████ " Ex. G (BL – SMS – ███ 000001-14). There is no justification for this deception, and Plaintiff does not offer one.

Plaintiff's April 2, 2026 production also identified two new witnesses: T.R. and ███████ *See* Ex. H (B.L. – SMS T.R. – 000002). It appears Plaintiff may have been on the phone with T.R. during the alleged Uber ride that forms the basis of her lawsuit.[8] Plaintiff's unredacted message to ███████ shows that Plaintiff told ███████ about the alleged incident and, when discussing the incident, stated, "███████ ███████████████████████████████████████ . This is just what Uber has learned to date, but Uber believes there may be additional hidden witnesses as well.[9]

***Legal Standard.*** Scheduling orders may be modified "for good cause[.]" Fed. R. Civ. P. 16(b)(4). The "'good cause' standard primarily considers the diligence of the party seeking amendment." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Courts also consider whether: (i) "trial is imminent"; (ii) "the request is opposed"; (iii) "the non-moving party would be prejudiced"; (iv) "the moving party was diligent"; (v) "the need for additional discovery [was foreseeable]"; and (vi) it is likely "that the discovery will lead to relevant evidence." *Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). Good cause is "liberally construed[.]" *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 342 (S.D.N.Y. 2005). "A party seeking discovery meets this standard by demonstrating that it could not reasonably meet its deadline despite diligent efforts." *Id.*

***Legal Argument.*** Nearly every good-cause factor favors Uber: (i) The earliest this case will be tried is September 14, 2026, and any delay is the fault of Plaintiff; (ii) Plaintiff has articulated no substantive reason why these depositions should not move forward, particularly given her untimely disclosures. Despite Plaintiff's assertion that "PTO 16 proposed a 12-hour

---

[6] Plaintiff continues to communicate with L.P., R.H., and M.B. about the alleged incident. *See* Ex. A at No. 2 (citing 3-10 conversations for each witness between October 30, 2025 and February 24, 2026).

[7] Plaintiff's improper, pervasive use of redactions is the subject of a separate PTO 8 brief.

[8] During an April 6, 2026 conferral, Plaintiff represented the timestamp was due to differing time zones but was unable to identify which time zones were purportedly at issue.

[9] Plaintiff's unsupported accusations that Uber has bullied witnesses or caused tension between Plaintiff and her treaters are baseless and should not distract from Plaintiff's flagrant and extensive discovery abuse.

cap on depositions of fact witnesses[,]" the Court *never adopted that proposal*, and Plaintiff should not be rewarded for her deception; (iii) Plaintiff cannot claim prejudice—she already knows what these witnesses will say because she supplied them the information; she has already reaped the benefit of their knowledge through Dr. Mechanic's work product; and she has had months longer than Uber to prepare for their testimony; (iv) Good cause turns on diligence, and Uber has been diligent at every step. Within six business days of receiving Dr. Mechanic's report, Uber analyzed it, compared it to prior disclosures, flagged the undisclosed witness interactions, and expressed its intent to depose these witnesses. *See* Ex. I (10/06/25 Benfield Email). Ten days later, Uber conferred with Plaintiff, reiterated its right to depose the witnesses, and identified that Plaintiff likely had undisclosed treaters and requested their names—***14 days before*** Plaintiff disclosed L.B. and ***months before*** G.B. Ex. J (10/16/25 Benfield Email).[10] Moreover, as soon as Plaintiff made her April 2, 2026 disclosure, Uber raised the additional witnesses and conferred with Plaintiff, who had no explanation for the prior concealment; (v) Plaintiff intentionally obscured the truth, swearing repeatedly that the witnesses were irrelevant. A party who creates a discovery crisis should not benefit from its misconduct. In fact, Plaintiff's misconduct is itself good cause. *Prewitt v. Hamline Univ.*, 764 F. App'x 524, 529 (6th Cir. 2019); and (vi) These depositions are virtually certain to yield relevant evidence. The collateral witnesses have been discussing Plaintiff's allegations with her for years, and Dr. Mechanic relied on their accounts to form her opinions, making them relevant to her credibility as well. The treaters, meanwhile, are closest to Plaintiff's actual current mental state—the core of Plaintiff's damages claim.

 *Conclusion.* For the foregoing reasons, the Court should grant Uber relief from the discovery deadline to subpoena L.P., R.H., M.B., L.B., G.B., S.S., J.L., and T.R. for depositions and allow a supplemental deposition of Plaintiff herself on these topics.[11]

---

[10] Dr. Mechanic's reliance materials—including her interview notes and documents such as text messages between Plaintiff and L.P.—have still not been produced, despite several requests. Ex. K (11/19/25 Benfield Email); Ex. L (02/13/26 Benfield Email); Ex. M (11/20/25 Luther Email).

[11] To the extent there are additional witnesses Plaintiff has yet to disclose, Uber reserves the right to depose them. This includes the numerous medical providers Plaintiff has disclosed during the meet-and-confer process, and as to whom Plaintiff has offered only generic descriptions of the scope of their interactions with Plaintiff.

**Plaintiff's Position:**

Uber's overwrought submission misstates the record in this case, and appears to be little more than a continuation of the company's (aggressive) campaign of harassment and oppression of Plaintiff B.L. and other survivors of sexual abuse.[12] The Court should reject Uber's invitation to endorse its discovery abuses and should instead impose the reasonable limitations that Plaintiff suggests. The Court should also make clear that this dispute should have been resolved through meaningful conferral (as Plaintiff here attempted to do) rather than the sort of maximalist motions practice that Uber initiated here.

To start, Plaintiff has not engaged in any discovery violations in this case. Quite the contrary: Plaintiff has tried to work with Uber to resolve its concerns even when those concerns rely on assumptions of bad faith unsupported by the record. Prior to the close of fact discovery, Plaintiff disclosed all the individuals that Uber now seeks to depose. To be sure, during case specific discovery, Uber completed sixteen (16) fact witness depositions.[13] After Uber received the expert report of Mindy Mechanic, which included references to interviews with collateral witness L.P., R.H. and M.B. (all of whom had been previously disclosed), the parties discussed additional depositions to include L.P., R.H., M.B. as well as Plaintiff's new treating providers. Plaintiff's position is the same now as it was then – Plaintiff is agreeable to additional depositions subject to appropriate and reasonable time limits. In November of 2025, Plaintiff advised Uber that Plaintiff was not opposed to additional depositions in this case and specifically addressed depositions of the new of the treating providers. [**Ex 1**, Luther Email 11/20/25]. Since that time, Plaintiff has consistently maintained her position with respect to additional depositions in this case. [**Ex. 2**, Luther Email 4/2/2026]. Plaintiff agrees that *limited* further depositions are appropriate. She has also produced large volumes of highly sensitive and personal information in response to Uber's ever-evolving complaints related to redactions, even though that information is not responsive to any of Uber's discovery requests.

Uber's complaints about the "late disclosure" of new medical providers is also baseless. It was not a strategic choice by Plaintiff, but a forced necessity due to defense counsel's bullying. Uber's lawyers subjected Plaintiff's treating physicians to harsh, protracted cross examination that communicated a clear if unspoken message: it's going to be exceedingly unpleasant for you to testify in this case. Plaintiffs' providers heard the message loud and clear and dropped her as a patient shortly after their depositions. Defense cannot both sabotage a physician-patient relationship and then cry "prejudice!" when Plaintiff is forced to seek substitute care and (timely) disclose those new providers.

---

[12] A particular example of this involves messages between Plaintiff and L.P. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This type of classification and narrative is not only abhorrent but also harassing and oppressive and exemplifies the manner in which Uber utilizes and refers to highly sensitive information during the discovery process.

[13] Prior to the close of fact discovery, Defendant requested and completed the depositions of sixteen (16) fact witness: (1) B.L. (Plaintiff); (2) L.L. (Plaintiff's sister); (3) L.L. (Plaintiff's brother); (4) P.L. (Plaintiff's father); (5) H.S. (Plaintiff's friend); (6) S.C. (Plaintiff's Uncle); (7) M.M. (Plaintiff's sister-in-law); (8) D.H. (Plaintiff's father's girlfriend); (9) S. Molinar (treating provider); (10) Dr. Ogu (treating provider); (11) Dr. Ogbu (treating provider); (12) Nurse Black (SANE nurse); (13) C.C. (spiritual healer); (14) Dr. Fleeger (treating provider); (15) Det. Edith Fong (law enforcement); and (16) Officer Andrew Colton (law enforcement).

There is no late disclosure; it is a supplementation of Plaintiff's care team (and discovery responses) made necessary by Defense counsel's own unjustified aggression. Further, the extraordinary results of defense counsel's oppressive conduct appear to have prompted neither reflection nor moderation. This entire PTO 8 brief is necessitated by nothing other than Uber's propensity for harassment and their lawyer's refusal to properly confer.

As ever, Plaintiff is committed to resolving disputes and moving this case toward the trial date set by Judge Breyer. To that end, when the rhetoric and vitriol are removed from Uber's submissions, it quickly becomes clear that there are simple solutions here, namely implementing an aggregate time limit on any additional depositions to be taken in this case. Uber seeks the depositions of the following individuals: L.P.[14], R.H.[15], M.B.[16], L.B.[17], G.B.[18], S.S.[19], J.L.[20] and T.R.[21] To be sure, Plaintiff *has never* taken the position that Uber may not take additional depositions in this case. Plaintiff has proposed *limited and efficient* protocols to be put into place to control the conduct of these depositions.

The Court should adopt those limits in light of the (extensive) discovery already completed, the exhaustion of time limits that Uber agreed to, and Uber's proclivity for abusive discovery practices. This last reason—discovery that embarrasses or oppresses Plaintiff and/or the deponent—is of particular concern to Plaintiff.

---

[14] L.P. is a friend of the Plaintiff and was interviewed by Plaintiff's damages expert, Dr. Mindy Mechanic. L.P. was initially disclosed in this on June 24, 2025. B.L. was asked questions about L.P. during her deposition taken by Uber on June 25, 2025.

[15] R.H. is a friend of the Plaintiff and was interviewed by Plaintiff's damages expert, Dr. Mindy Mechanic. R.H. was initially disclosed in this case on June 24, 2025.

[16] M.B. is a friend of the Plaintiff and was interviewed by Plaintiff's damages expert, Dr. Mindy Mechanic. M.B. was initially disclosed in this case on June 11, 2025.

[17] L.B. is a treating provider of the Plaintiff who Plaintiff was required to engage after Plaintiff's treating providers refused to continue to provide treatment following the depositions conducted by Uber in this case. L.B. began treating the Plaintiff on August 1, 2025 and was initially disclosed in this case on October 30, 2025.

[18] G.B. is a medical provider who provided a one-time evaluation of the Plaintiff during a hospitalization for an unrelated meningitis condition. G.B.'s one-time evaluation was performed on August 21, 2025. G.B. was initially disclosed in this case on February 24, 2026.

[19] S.S. is an individual that Plaintiff communicated with about the incident. Uber continues to improperly refer to S.S. as a 'treating provider'. S.S. is not a licensed medical or mental health professional and does not hold herself out as such. S.S. was initially disclosed in this case on July 16, 2025.

[20] J.L. is a friend of the Plaintiff. J.L. was initially disclosed in this case on June 24, 2025.

[21] T.R. is a friend of the Plaintiff that spoke with the Plaintiff a few hours prior to the incident occurring. T.R. was initially disclosed in this case on May 23, 2025.

5

 This type of questioning is not proportional to the needs of the case. *See, e.g.*, Fed. R. Evid. 412(a), (b)(2); Fed. R. Civ. P. 26(b). It appears (quite cynically) calibrated to harass, embarrass, and oppress Plaintiff. Limits on additional (out of time) discovery by Uber are eminently necessary.

Indeed, Uber has already agreed to such limits. The discovery protocol calls for case specific plaintiff and *associated fact witnesses* to be capped. The time limits were contemplated and stipulated to by *both parties* for logical reasons, among them this is an alleged sexual assault litigation – the very nature of which takes place, most often, between two individuals *and no eyewitnesses*. Plaintiff permitted extensive depositions during fact discovery; however, Uber does not now get another bite at the apple and discovery cannot begin anew.

Again, Plaintiff is amenable to limited additional discovery subject to strict time limits. Plaintiff respectfully submits that a time limit of 5 hours for all further depositions is more than adequate. Any time limits outside of these 5 hours will likely result in further intimidation, bullying and harassing of the Plaintiff, her friends, and her medical providers.

6

7

## **FILER'S ATTESTATION**

I, Laura Vartain, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April 9, 2025

By: *Laura Vartain*
    Laura Vartain

7