Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street, Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **DECLARATION OF KATELYN MARSHALL BENFIELD IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE JOINT PTO 8 LETTER REGARDING PLAINTIFF'S IMPROPER USE OF REDACTIONS** |
| This Document Relates to: | |
| *B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | |
| | Judge:      Hon. Charles R. Breyer |
| | Courtroom:  6 – 17th Floor |

BENFIELD DECLARATION ISO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE JOINT PTO 8
LETTER REGARDING PLAINTIFF'S IMPROPER USE OF REDACTIONS
Case No. 3:23-MD-03084-CRB

I, Katelyn Marshall Benfield, declare as follows:

1.      I am a partner at Kirkland & Ellis LLP, counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"). I offer this Declaration in the above-captioned matter in support of Uber's Administrative Motion for Leave to File Joint PTO 8 Letter Regarding Plaintiff's Improper Use of Redactions.

2.      On April 30, 2025, Plaintiff produced text messages with several individuals including those identified as M.B., L.L., Lu.L., P.L., and W.L. Those conversations included extensive redactions and appeared to be missing messages. For example, in her messages with L.L. a blue bubble can be seen at the end of the document, but the text is cut off. *See* Ex. A (B.L. - SMS L.L. – 000001-000010) at -10. These productions were accompanied by a privilege log that asserted "privacy protections" and "relevancy" as a basis for those redactions and citing "*Doe v. Purdue Univ.*, No. 20-cv-05672-YGR, 2021 WL 5023916, at *2 (N.D. Cal. Oct. 28, 2021)" in support of her position.

3.      On May 23, 2025, Plaintiff produced an amended privilege log still asserting privacy and relevance as a basis for her redactions.

4.      On June 11, 2025, Plaintiff produced additional text messages with L.L., Lu.L. and P.L. which confirmed that messages had been withheld from the prior production. For example, the newly produced messages with L.L. confirmed that Plaintiff had messages immediately prior to and immediately after those produced on April 30, 2025. *See* Ex. B (B.L. - SMS L.L. – 000011-000047) at -22 (demonstrating that Plaintiff's last message in the initial production— ███████████████ ████████████████████████ —was followed up 4 second later with the message, ██████████ ). Plaintiff also produced messages with additional individuals identified as C.C. and H.G. for the first time. All of these documents contained extensive redactions.

5.      On June 24, 2025, Plaintiff produced social media and text messages with individuals identified as A.M., J.F., J.H., M.G., and Pete for the first time. The messages included extensive redactions. At the same time, Plaintiff revised the redactions she previously applied to W.L., revealing limited messages which directly referenced the alleged Uber incident but leaving pages of discovery

entirely blacked-out. This production was accompanied by an amended privilege log still asserting relevance and privacy protections as a basis for the redactions in the messages produced in June of 2025.

6. On June 27, 2025, Plaintiff produced an amended privilege log still asserting privacy and relevance as a basis for her redactions.

7. On July 2, 2025, Plaintiff produced certain email communications and text messages with an individual identified as M.L. for the first time.

8. On July 16, 2025, Plaintiff produced messages with individuals identified as Missy L., R.H., and Synthia for the first time. Despite the conversation with R.H. indicating a total "Message Count" of 1,036, Plaintiff only produced 95 messages. Similarly the conversations with Missy L. and Synthia indicated a total message count of 47 and 162, but Plaintiff only produced 33 and 41 messages, respectively. And all of these documents included extensive redactions.

9. On August 25, 2025, Plaintiff served her Eighth Supplemental Responses to Uber's discovery requests and identified several hundred pages of additional responsive documents that would be produced.

10. On September 9, 2025, I emailed Plaintiff's counsel and indicated that Plaintiff's productions remained incomplete. Having not received a response, I sent another email on September 11, 2025 requesting that Plaintiff produce outstanding discovery and provide availability for a meet and confer.

11. On October 6, 2025, I emailed Plaintiff's counsel raising several issues with her productions and disclosures. *See* Ex. C at 24-25.

12. On October 10, 2025, I emailed Plaintiff's counsel and provided Uber's availability for a meet and confer to address outstanding discovery issues. *See* Ex. C at 23.

13. On October 13, 2025, having not received a response from Plaintiff's counsel, I emailed asking them to provide their availability for a meet and confer. The parties conferred later that day. *See* Ex. C at 21-23.

14. On October 16, 2025, I sent an email to Plaintiff's counsel outlining our call. The email explicitly raised outstanding and redacted messages and emails and noted that some redactions were not even covered by Plaintiff's then-operative privilege log. Ex. C at 19-20.

15. On October 20, 2025, Plaintiff produced messages with an individual identified as L.P. Out of 26 messages in that production, 20 were entirely redacted and another was partially redacted. This production was accompanied by an updated privilege log which still asserted relevance and privacy as a basis for Plaintiff's redactions.

16. On October 28, 2025, I sent an email to Plaintiff's counsel recapping a subsequent conferral on the redactions issue. Ex. C at 15.

17. On October 30, 2025, Plaintiff reproduced messages with several witnesses including J.H., L.P. and Pete with limited redactions removed. Extensive redactions remained on those messages.

18. On November 17, 2025, I emailed Plaintiff's counsel and raised, again, that there were extensive redactions throughout the produced messages, in some cases covering almost the entire produced conversation and requested that Plaintiff supplement her productions with unredacted messages. *See* Ex. C at 15-16.

19. On November 19, 2025, I emailed Plaintiff's counsel regarding unproduced expert documents. Ex. C at 15. Plaintiff's Counsel responded and addressed the redactions by stating that she personally reviewed messages with L.P. and a production of unproduced messages was forthcoming. Ex. C at 14. Despite having identified several other problematic documents with redactions, Plaintiff's Counsel stated that Uber needed to raise specific issues with Plaintiff's redactions before she would address the problem. *Id.* The same day, I emailed Plaintiff's counsel noting that none of the redaction issues previously raised had been cured and outlining several specific examples of improper redactions in Plaintiff's productions. Ex. D at 5-20.

20. On November 20, 2025, Plaintiff's counsel represented that they were analyzing the messages and would address the redactions issues once their review was complete. Ex. C at 10-11.

21. On February 13, 2026, I emailed Plaintiff's Counsel indicating that they still had not produced unredacted messages and that Uber did not believe the bases set out in Plaintiff's privilege log

BENFIELD DECLARATION ISO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE JOINT PTO 8 LETTER REGARDING PLAINTIFF'S IMPROPER USE OF REDACTIONS
Case No. 3:23-MD-03084-CRB

were valid grounds on which to withhold or redact documents. I also requested that Counsel provide availability for a meet and confer. Ex. C at 9-10. Plaintiff's Counsel indicated that they were available on certain days but that the parties needed to wait for availability from Rachel Abrams (Peiffer Wolf Carr Kane Conway & Wise). Ex. C at 8-9.

22. On February 19, 2026, having not received a response from Ms. Abrams, I emailed Plaintiff's Counsel and suggested that we meet and confer the same day. Ms. Abrams indicated that she was traveling and suggested a new time, which Uber accommodated. Ex. C at 7-8.

23. On February 20, 2026, the parties conferred regarding the outstanding issues. I emailed Plaintiff's counsel on February 23, 2026 outlining the parties' discussions, including the extensive redactions in Plaintiff's productions and Uber's repeated attempts to work with Plaintiff to come to a resolution. Ex. C at 3-4.

24. On February 24, 2026, Plaintiff's Counsel responded, indicating that they had reviewed messages from numerous witnesses and determined that it was "appropriate to unredact some messages." Ex. C at 1-3. Namely, Plaintiff admitted that messages in produced conversations with Ashley Nakano, H.G., J.H., M.G., L.L., P.L. R.H. were improperly redacted. Ex. C at 1-3.

25. On February 24, 2026, Plaintiff produced additional messages with L.L and reproduced messages with H.G., M.G., Lu.L., and R.H. with limited redactions removed. Extensive redactions remained on those messages and the 941 messages with R.H. that were withheld from Plaintiff's prior production remaining unproduced. Plaintiff produced an amended privilege log which asserted similar relevance and privacy arguments as a basis for the redactions, but removed any reference to the *Doe* case previously cited.

26. On March 26, 2026, I emailed Plaintiff's counsel to inform them that due to Plaintiff's repeated failure to resolve Uber's concerns with Plaintiff's discovery, Uber considered the parties at an impasse and would seek Court intervention related to the extensive redactions across her productions and depositions of several late-disclosed witnesses. Ex. E at 7-8. Attached to that email, I provided two draft PTO 8 letter briefs outlining Uber's position on the issues.

BENFIELD DECLARATION ISO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE JOINT PTO 8 LETTER REGARDING PLAINTIFF'S IMPROPER USE OF REDACTIONS
Case No. 3:23-MD-03084-CRB

27.     On March 31, 2026, I conferred with Plaintiff's counsel. Plaintiff's counsel offered to allow Uber 5 hours to depose the 5 late-disclosed witnesses that had been identified at that time. In exchange, Plaintiff's counsel demanded that Uber forego raising both the late-disclosed witnesses and the improper redactions to the Court. Plaintiff's counsel offered no remedy for the redacted messages. I informed Plaintiff's counsel that this was an unworkable solution and emailed confirmation that Uber would be moving forward with the PTO 8 briefing process. *See* Ex. E at 5-6.

28.     On April 2, 2026 Plaintiff's Counsel emailed contending that Uber still had not identified specific issues with Plaintiff's redactions and proposed that Uber allow Plaintiff to run 6 search terms across her messages which Plaintiff would then review. Ex. E at 4.The same day, I responded attaching a chart which identified Plaintiff's problematic redactions despite the fact that Uber had already identified these issue and that such issues are obvious on the face of the documents Plaintiff has redacted and/or withheld. Ex. E at 3-4. I also indicated that Uber would move forward with the PTO 8 briefing process as Plaintiff's search terms proposal was unworkable and Uber had already been subjected to substantial delay by Plaintiff. *Id.*

29.     The same day, on April 2, 2026, Plaintiff's Counsel made Uber aware that it published additional documents on its online repository. Ex. E at 1-2. Those documents included communications with an individual identified as James L. and reproduced messages with J.F., L.L., Missy L., and Synthia which removed a limited number of redactions and revealed messages directly relating to the alleged Uber incident, including descriptions of the events immediately prior to the purported event. Plaintiff also supplemented the conversation with Synthia by including the 121 messages she had withheld from her initial production but did not produce the 14 messages missing from the conversation with Missy L. Entire pages messages in these documents remain redacted.

30.     On April 3, 2026, Uber reached out to Plaintiff's Counsel and requested to meet and confer regarding concerns about Plaintiff's late production. Ex. F at 3-4.

31.     On information and belief, the parties met and conferred on April 6, 2026. An April 7, 2026 follow-up email from Uber to Plaintiff's Counsel summarized the parties' discussions, including Uber's concerns that highly probative messages had been withheld from Uber for months, including but not

limited to, messages that suggested Synthia, who was previously disclosed as Plaintiff's "friend," was actually a treating provider, messages reflecting Plaintiff's representation that she was ██████████ ████████████ and messages with two ex-boyfriends where Plaintiff stated what happened in the alleged Uber incident ████████████████████████ *See* Ex. F at 1-2.

32.    On April 8, 2026, the parties agreed on a briefing schedule and the joint PTO 8 letter brief regarding Plaintiff's redactions was filed by Uber on April 9, 2026. *See* Dkt. No. 5802-3.

Dated: April 18, 2026

*/s/ Katelyn Marshall Benfield*
Katelyn Marshall Benfield

BENFIELD DECLARATION ISO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE JOINT PTO 8 LETTER REGARDING PLAINTIFF'S IMPROPER USE OF REDACTIONS

Case No. 3:23-MD-03084-CRB