[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*WHB 823 v. Uber Techs., Inc., et al.*, No. 3:24-cv-04900 | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DR. ALISON REMINICK'S TESTIMONY**<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom:   6 – 17th Floor<br><br>Date Filed:   April 20, 2026<br>Trial Date:    April 14, 2026 |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

| | |
|---|---|
| WHB 823,<br><br>          Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>          Defendants | CASE NO. 3:25-cv-00737-CRB<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom:   4A |

1

The Court should deny Plaintiff's belatedly filed motion to strike portions of Dr. Reminick's testimony. The Court already ruled on this issue at multiple junctures. On April 10, 2026, the Court's Pretrial Order No. 43 addressed Plaintiff's motion to exclude Dr. Reminick and granted it only "to the extent she seeks to offer opinions about Plaintiff's credibility as a witness or that Plaintiff is lying about her sobriety the night of the alleged incident." (ECF 5809 at 4.) On April 16, 2026, the Court held a charge conference at which Dr. Reminick's four permitted opinions were specifically delineated and approved: (1) extensive alcohol and substance abuse; (2) memory and recall significantly impaired; (3) no evidence in the medical records that Plaintiff reported the Uber incident to her health care providers; and (4) Plaintiff's own admissions of dishonesty regarding substance use. (4/16/2026 Tr. 345:1-23.) And on April 17, 2026, before Dr. Reminick took the stand, the Court conducted an extensive sidebar reviewing each exhibit and slide to ensure her testimony fell within the permitted scope. (4/17/2026 Tr. 444:1-475:22.) The Court rejected the very argument Plaintiff raises here. It specifically ruled that the possibility that medical records testimony could have come in through another witness was not a basis to exclude her testimony "because it just seems unfair coming on the eve of trial to suddenly say, well, we're not interested in that, and then they're sitting there flatfooted because they don't . . . have a witness lined up to testify . . . based upon that witness's observations of the records." (*Id.* 447:21-448:3.) Plaintiff's motion is therefore an improper attempt to relitigate issues the Court has already decided, and striking testimony the jury has already heard would be extraordinarily prejudicial to the defense.

In any event, the entire premise of Plaintiff's motion—that for three of her four opinions Dr. Reminick gave "no expert opinion at all but simply summarized Plaintiff's medical records" (ECF 5925 at 2)—is demonstrably false. Dr. Reminick drew upon her psychiatric training—including her work as the Director of the Women's Reproductive Mental Health Program at University of California, San Diego; over a decade of clinical practice where she has evaluated and treated around 3,000 mostly female patients, many of whom suffer from substance use and the psychiatric sequelae of sexual assault. (*See* 4/17/2026

2

Tr. 436:3-22, 437:4-16.) For this case, she applied that expertise in reviewing Plaintiff's extensive medical records; analyzing all of the depositions of fact witnesses; and performing a "clinical evaluation" as she "would with any patient" to dive "into her background" and assess her "substance abuse history" and "psychiatric history." (*Id*. 437:17-21; 438:2-22.) Essentially, she "went through her entire lifespan of medical events and anything that was salient." *Id.*

The mere fact that she also read the contents of medical records to illustrate the basis of her opinions does not alter the analysis. "Medical professionals have long been expected to rely on the opinions of other medical professionals in forming their opinions." *Geyer v. NCL (Bah.) Ltd.*, 203 F. Supp. 3d 1212, 1217 (S.D. Fla. 2016) (holding that doctor could offer opinions based entirely on review of medical records) (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000)); *Beving v. Union Pac. R.R. Co.*, No. 3:18-cv-00040, 2020 WL 6051598, at *10 (S.D. Iowa Sept. 8, 2020) ("It is well within the bounds of permissible expert testimony for medical experts to interpret the records in the case, because such records are of the kind they 'would reasonably rely on . . . in forming an opinion.'") (quoting Fed. R. Evid. 703).[1]  And as Dr. Reminick pointed out, "there's a lot of acronyms and things we use as doctors," so "looking through the medical charts, I don't think a layperson could . . . understand them the way I do." (4/17/2026 Tr. 514:7-20.) Here, Dr. Reminick appropriately interpreted medical records in connection with expert opinions that she offered to the jury on each topic.

---

[1] Plaintiff's cases are wholly inapposite. *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D. W. Va. 2013) (cited in ECF 5925 at 3) addressed expert testimony that "merely state[d] what the plaintiffs told them," *id.*—not contents of medical records, to which the medical expert applies expertise. *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. 18-2885, 2021 WL 11669758, at *3 (E.D. La. July 28, 2021) (cited in ECF 5925 at 3) addresses essentially the same type of issue (the proffered testimony "simply restate[d] Plaintiffs' testimony dressed up and sanctified as the opinion of an expert.") (internal quotations and citation omitted). And *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (cited in ECF 5925 at 3) did not concern medical testimony at all but rather experts who sought to funnel "hearsay statements, made by freelance artists in both formal and informal settings, concerning Marvel's general practices towards its artists during the relevant time period" through their testimony, *see id.* Here, by contrast, the contents of medical records are not barred by the hearsay rule. (4/17/2026 Tr. 361:7-14 (ruling that Uber is "correct" "about the admissibility" of medical records notwithstanding the hearsay rule).) And here, Dr. Reminick conducted her own clinical evaluation of Plaintiff, reviewed hundreds of pages of medical records, and synthesized that information through the lens of her board-certified psychiatric practice—including treating thousands of patients and nearly 1,000 sexual assault survivors.

3

*First*, Dr. Reminick offer multiple opinions "regarding Plaintiff's alcohol and substance abuse" (ECF 5925 at 3), including the following:

- She opined that "it's very common" that individuals struggling with difficult addiction issues do not want to seek help or go to rehab, which is "why there's interventions and different things we do to try to get patients into their appropriate care." (4/17/2026 Tr. 484:2-15.)

- Dr. Reminick testified based on Plaintiff's overall medical history in response to a question whether it would have been easy to skip a day of use of alcohol that, "given how much she said she was drinking on a daily basis, and the medical record that we saw, it was a pint of vodka. Going a day without it she would have significant withdrawal symptoms." (*Id*. 491:12-18.)

- Similarly with respect to daily drug use reported in Plaintiff's medical records, Dr. Reminick opined, "Usually when they're using, they're using daily. And there's not sober days." (*Id*. 491:19-23.)

- Dr. Reminick also interpreted the significance of a medical record recommending a higher level of care than outpatient treatment, explaining that it indicated a high level of severity of her illness: "It's saying that this is no longer something that she can do on an outpatient basis, that Ms. Mensing needs a higher level of care, meaning inpatient care or -- PHP is partial hospitalization. So they'd be hospitalized from 9:00 to 3:00 five days a week. And so really saying she needs much more intensive care. And so they discharged her with a referral to a higher level of care because she was so acute and her illness was so severe." (*Id*. 493:10-24.)

- Dr. Reminick also opined that with "chronic use" of drugs or alcohol a person "can have long-term cognitive impairment." (*Id*. 496:7-14.)

- Dr. Reminick similarly described how the process of making memories is impaired by chronic substance abuse, and how diminished concentration relates to the same issue. (*Id*. 488:15-489:7

4

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DR. ALISON REMINICK'S
TESTIMONY
Case No. 3.23-md-03084-CRB / 3:25-cv-00737

("Yeah. So if you don't have concentration, then you're not, you know, able to retain it and put it in your hippocampus for memory. So really poor concentration and decision, cognitive impairment just usually means that too, that there's really impaired short-term memory and long-term memory.").

- She also opined based both on the medical records and her own examination of Plaintiff on the degree to which such impairment appears to have affected Plaintiff, testifying, "Her memory impairment seems pervasive. So, you know, large swaths of time she doesn't remember much. When examining her, she often says I don't remember. I don't know. So she's -- I found her to be a pretty poor historian of her own history because of her cognitive impairment secondary to her substance abuse." Dr. Reminick further testified that "it seemed significant that she did not remember many details of large swaths of her life, large periods of time." (*Id*. 496:23-497:19.)

- Dr. Reminick made clear that she was "describing what [she] know[s] about substance abuse and [her] patients that use daily." (*Id*. 513:7-12.)

***Second***, Plaintiff's second argument that Dr. Reminick offered only recitations from medical records regarding "Plaintiff[']s acknowledg[ment] [that] she lied or minimized her substance abuse" (ECF 5925 at 4) is also wrong. As a threshold matter, the Court specifically addressed this category of testimony during the April 17 sidebar and ruled that Plaintiff's own statements admitting dishonesty about substance use are admissible as admissions by a party-opponent—not as expert opinion on credibility. The Court stated: "I don't think that that's an opinion of the…psychiatrist; it's an admission of the witness that she gave…untrue statements. That can come in." (4/17/2026 Tr. 445:14-19.) The Court further clarified: "The question is whether she did in the past say things which were false. That comes in." (*Id*. 446:1-3.) Plaintiff's motion to strike this testimony is therefore foreclosed by the Court's own ruling that the testimony is properly admitted on a non-expert basis.

In any event, Dr. Reminick also offered expert opinions on this topic:

- Dr. Reminick opined that lying about substance abuse is "part of the disease process," in which addiction "affects their rewards system," "their impulse control," "their decision-making," "their insight," and "their memory." (*Id*. 490:8-491:6.)

- She similarly opined that "denying use . . . is typical for someone who is suffering from substances," and that "usually minimization and being dishonest about substances is part of the symptoms of substance addiction, substance disorder." (*Id*. 487:10-17.)

- Along similar lines, Dr. Reminick testified that such denials are "really typical. So having insight and minimization of substance use and alcohol use is the norm. We always say it's kind of you just get the tip of the iceberg if they tell you anything about their substance or alcohol use. And that's of no fault of the patient. It is part of the disease process. It's a symptom." (*Id*. 490:17-25.)

- In addressing one of the episodes of lying about substance use in Plaintiff's medical records, Dr. Reminick explained that such behaviors are "pretty on point for somebody who has a history of addiction of just having difficulty with insight and really admitting how much substances they were using, or alcohol." (*Id*. 489:15-490:2.)

***Third***, Dr. Reminick also not only testified to the "absence of a record that Plaintiff had reported the assault to medical providers" (ECF 5925 at 4)—which has its own value in that it obviates the need for a jury to sift through years of medical records—but she also opined on the significance of that fact:

- Dr. Reminick explained that a review of all the medical records was part of approaching Plaintiff's case "like [she] would with any patient" in order to identify "anything that was salient" in a patient's history. (4/17/2026 Tr. 437:17-438:22.) (Of course, Dr. Reminick could not address all of the "salient" issues in light of the Court's rulings on her mental health background.)

6

- As she further described her process, Dr. Reminick "go[es] through people's medical records to understand what diagnoses they have and what they're suffering with. And so I know when they come what their diagnoses are and how to treat them." (*Id*. 513:25-514:6.)

- Given this framework, Dr. Reminick pointed out that the omission of the alleged incident was notable because "[t]here were multiple other incidents that she mentioned and discussed with providers when they asked about any emotional disturbances or anything that was emotionally distressing." (*Id*. 498:19-499:14.)

***Finally***, and in any event, the medical records that Plaintiff asserts constitute the entirety of Dr. Reminick's testimony on these matters are independently admissible. As the Court acknowledged on Friday, Uber was "correct" about "the admissibility" of the records notwithstanding the hearsay rule. (*Id*. 361:7-14.) As a result, Plaintiff's argument, even if it were correct, would accomplish nothing material because it would strike the expert's testimony but not the records on which it was based. Indeed, Plaintiff does not even attempt to argue otherwise in her motion. Accordingly, Plaintiff's argument is entirely formalistic, and no purpose would be served in granting the motion.

Plaintiff also waived any objection to this testimony by failing to seek a contemporaneous ruling excluding these opinions at the time they were offered or, at the very latest, immediately after the conclusion of the testimony. Federal Rule of Evidence 103(a)(1)(A) requires that a party "timely object[] or move[] to strike." Generally, "[t]imeliness of objection under the Rule requires that it be made at the time the evidence is offered." *U.S. v. Roof*, 225 F. Supp. 3d 406, 410 (D.S.C. 2016) (quoting *U.S. v. Parodi*, 703 F.2d 768, 783 (4th Cir. 1983)). Where the Court overrules a motion in limine to exclude expert testimony, the moving party must nevertheless "object[] to specific instances where they" believe the expert's testimony is inadmissible. *U.S. v. Wilson*, 484 F.3d 267, 278 (4th Cir. 2007). Saving objections until "the day after [the testimony] occurred" is not timely and effects a waiver of any objection. *Roof*,

7

225 F. Supp. 3d at 411; see also *U.S. v. Odom*, 736 F.2d 104, 112 (4th Cir. 1984) (motion to strike testimony the day after it occurred waived any objection to admissibility).

Plaintiff's counsel was present throughout Dr. Reminick's testimony, had the opportunity to object to each question and answer, and made various objections on other grounds—but did not move to strike any of the three categories of testimony now challenged. Indeed, the Court itself acknowledged that the decision to present evidence through Dr. Reminick rather than through cross-examination of Plaintiff was "an appropriate trial decision," and that it was "equally important, equally appropriate for the other side to comment that if this is so significant, why not ask her questions about it." (4/17/2026 Tr. 462:6-15.) Plaintiff cannot now, after the evidence has been presented and the defense has rested, seek to strike testimony that was specifically authorized by the Court's pretrial and in-trial rulings.

For all these reasons, the Court should deny Plaintiff's belated motion.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DR. ALISON REMINICK'S TESTIMONY
Case No. 3.23-md-03084-CRB / 3:25-cv-00737

DATED: April 20, 2026                      Respectfully submitted,


                                           /s/ Laura Vartain Horn
                                           Laura Vartain Horn (SBN 258485)
                                           **KIRKLAND & ELLIS LLP**
                                           555 California Street, Suite 2700
                                           San Francisco, CA 94104
                                           Telephone: (415) 439-1625
                                           laura.vartain@kirkland.com

                                           Allison M. Brown (Admitted *Pro Hac Vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           2005 Market Street, Suite 1000
                                           Philadelphia, PA 19103
                                           Telephone: (215) 268-5000
                                           alli.brown@kirkland.com

                                           Jessica Davidson (Admitted *Pro Hac Vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           601 Lexington Avenue
                                           New York, NY 10022
                                           Telephone: (212) 446-4800
                                           jessica.davidson@kirkland.com

                                           *Attorneys for Defendants*
                                           UBER TECHNOLOGIES, INC.,
                                           RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DR. ALISON REMINICK'S TESTIMONY
Case No. 3.23-md-03084-CRB / 3:25-cv-00737