**WAGSTAFF LAW FIRM**
Sommer D. Luther*
940 Lincoln Street
Denver, CO 80203
Tel: (303) 263-8949
Fax: (303) 376-6361
sluther@wagstafflawfirm.com

*Attorney for Plaintiff*
*\*Appearing Pro Hac Vice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB<br><br>MDL No. 3084 |
| This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc., et al.*, No. 24-cv-7940 | **DECLARATION OF SOMMER D. LUTHER IN SUPPORT OF PLAINTIFF B.L.'S RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO REFILE JOINT PTO 8 LETTER REGARDING PLAINTIFF'S IMPROPER USE OF REDACTIONS**<br><br>Honorable Lisa J. Cisneros |

I, Sommer D. Luther, declare:

1. I am an attorney in the law firm of Wagstaff Law Firm, and counsel for Plaintiff in the above-captioned Multi-District Litigation. I am a member of the State Bar of Colorado and am admitted to practice before this Court pro hac vice. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I respectfully submit this declaration in support of Plaintiff B.L.'s Response to Defendants' Administrative Motion for Leave to Refile Joint PTO 8 Letter Regarding Plaintiff's Improper Use of Redactions [ECF 5917].

-1-

2. In total, Plaintiff has produced text, email, and social media messages between Plaintiff and 27 individuals.

3. On April 12, 2025, Uber requested depositions of twelve (12) lay witnesses.

4. On May 23, 2025 Plaintiff submitted her supplemental discovery responses which included text messages from individuals L.L, Lu.L, M.B., P.L., and W.L.

5. On May 29, 2025, Uber sent a deficiency letter to Plaintiff. The deficiency letter raised concerns regarding redactions in the production involving individuals: M.B. and W.L.

6. On June 4, 2025, and again on June 23, 2025, I participated in a meet and confer with Uber relating to the May 29, 2025 deficiency letter.

7. On June 11, 2025, Plaintiff supplemented her production and produced messages with individuals: Pa. L., C.C., H.G., M.L.

8. On June 24, 2025, based on my conversations with Uber on June 4, 2025 and June 23, 2025, Plaintiff supplemented her production, removed some redactions, and re-produced messages with witness W.L.

9. On June 24, 2025, Plaintiff supplemented her production and produced messages with individuals: A.M., J.L., J.H., J.F., M.G., and Pete.

10. On June 27, 2025, Plaintiff supplemented her production and produced messages with individual: Aunt Laurel.

11. On July 16, 2025, Plaintiff supplemented her production and produced messages with individuals: A.N., Missy L., R.H., and S.S.

12. On September 9, 2025, Uber emailed alleging they had not received the "hundreds of pages" of supplemental documents referenced in Plaintiff's August 25, 2025 discovery responses. Upon receipt of this email, I directed my team to audit our production records. We confirmed that all documents identified in the August 25 supplementation had been successfully uploaded to the shared Box platform and were available to Uber on the same day the written responses were served.

13. On September 11, 2025, my colleague responded to Uber's inquiry and provided a screenshot of the Box production folder. This screenshot served as a contemporaneous record, showing that the files Uber claimed were "missing" were present in the folder with an upload

timestamp of August 25, 2025. Despite this proof of prior delivery, Uber responded on September 12, 2025, requesting a new link to the same August 25 production. We provided the duplicate link and proceeded with the scheduled meet-and-confer. During the meet and confer on September 12, 2025, no mention of text messages or redactions were mentioned, as confirmed by Uber's follow-up email recapping the outstanding items from Ms. Benfield.

14. On October 30, 2025, Plaintiff produced messages with individual: L.P. Along with this production, my team responded and again reiterated the specific dates in June 2025 when the text messages Uber claimed were not produced had been originally served.

15. On November 19, 2025, Uber sent an email raising issues with text messages and included a generic complaint that many text messages were heavily redacted.  I responded on the same date and advised Uber, "If you have concerns about other redactions, please send me specific concerns. I will be happy to address each of them. Thank you and please let me know if you have any other questions. I am happy to continue to meet and confer and discuss any of these issues with you." [ECF 5919-3, Exhibit C to Defendant's Affidavit in Support].

16. In response, Uber sent an email containing screenshots of messages with the statement that, "[t]hese are meant to be examples and are not the only issues. Please produce unredacted and complete messages at your earliest convenience."

17. On November 20, 2025, I responded to Uber and reiterated my willingness to continue to meet and confer regarding the messages and further stated that I would re-review the previously produced messages.

18. There were no additional communications between the parties related to redactions until Uber raised the issue during a meet and confer on February 13, 2026.  During that communication, Uber immediately stated it was initiating the PTO 8 protocol.

19. On February 23, 2026, the parties engaged in a meet and confer.

20. On February 24, 2026, Plaintiff supplemented her production, removed some redactions, and re-produced messages with witnesses:  M.G., S.S., H.G., Lu.L., Pa.L., R.H., A.N.

21. On March 20, 2026, Judge Breyer Ordered that the B.L. case and the A.R.2 case be tried in immediate succession, with the first trial to begin in September of 2026.

22. On March 26, 2026, Uber again raised issues related to the redactions.

23. On March 31, 2026, the parties met and conferred. Uber sent a follow up email summarizing the meeting. I then responded, correcting the mistaken notes from Uber. I reiterated again in writing that I was willing to move forward with depositions with certain parameters in place, although I have arguments that there is no good faith basis to proceed with depositions for some of the witnesses. I then sent a second follow up email the same day, reiterating that I had previously noted that Uber's blanket statements about redactions, as opposed to pointing out the specific redactions that are of concern, was problematic in my opinion because it appeared that the use of general complaints was so amorphous that the issue was unlikely to be brought to a final resolution. I was aware that in other bellwether cases, a search term protocol had been utilized and I proposed to Uber that we could work together to put in place a search term protocol to search through all of the text messages and confirm that all relevant and discoverable information had been identified and produced. (EXHIBIT 1).

24. On March 30, 2026, for the first time, my office was able to make contact with a previously identified and disclosed witness: T.R.

25. On March 31, 2026, Plaintiff supplemented her production and produced messages from individual: T.R

26. On April 2, 2026, Uber rejected my proposal for a search term protocol and indicated that the issue could only be resolved through the PTO 8 process.

27. On April 6, 2026, I met and conferred with Uber regarding the depositions and redactions. Michael Vives started the conversation by stating Uber sees no opportunity for a resolution of the issues raised but was proceeding through the process to satisfy the PTO 8 requirements.

28. On April 7, 2026, Uber circulated its meet and confer notes. On that date, I responded to Uber's email and corrected many of the notes and characterization that I believed misrepresented the conversation on April 6, 2026.

29. Uber has further mischaracterized one of the individual witnesses as a "mental health provider" and has lodged accusations against me for failing to properly disclose this individual. There is not basis or evidence to support the claim that the subject individual is licensed medical

or mental health provider but rather this individual holds herself out to be a "mentor" and "internet personality."

30. The parties jointly submitted a PTO 8 brief to the Court on this issue on April 9, 2026.  Per the Court's Order of April 12, 2026 [Doc. 5823] that PTO 8 brief was stricken.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2026 in Denver, Colorado

_____
Sommer D. Luther
*Attorney for Plaintiff B.L.*

DECLARATION OF SOMMER D. LUTHER ISO
PLAINTIFF B.L.'S RESPONSE
MDL NO. 3084 CRB, CASE NO. 24-CV-7940