Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC
[*Additional Counsel Listed on Signature Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*ALL ACTIONS* | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S UNOPPOSED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NO. 5894]**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  Courtroom G – 15th Floor |

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NO. 5894]

Case No. 3:23-MD-3084-CRB

I, Daniel Cummings, declare:

1. I am a partner at the law firm of Shook, Hardy & Bacon LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC, (collectively, "Uber"). I am a member in good standing of the Bars of the States of Missouri, Kansas, and Nebraska. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so. I offer this Declaration in the above-captioned matter in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's Statement in Support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Materials Should Be Sealed, dated April 15, 2026, ECF 5894 ("Letter Brief" and "Statement in Support of Sealing").

2. I have reviewed Exhibits DX-1, DX-2, DX-3, DX-6, DX-4, DX-5, and DX-7 to the Letter Brief.

3. The documents at issue here are exhibits to a discovery motion and have no bearing on the public's ability to understand the merits of the litigation. Neither the Letter Brief nor the sealed exhibits are related to a dispositive motion.

4. The exhibits Defendants seek to seal consists of proprietary, confidential technical information regarding Uber's S-RAD system and non-public details regarding Uber's relationships with third parties.

5. Exhibit DX-4 consists of excerpts of the transcript of the January 7, 2026, deposition of Uber's Director, Applied Science for Safety, Sunny Wong. Uber seeks to seal one page of the eight-page exhibit, at pp. 100:8-101:1. The portion of Exhibit DX-4 Uber seeks to seal consists of questions and testimony disclosing confidential, non-public information regarding the design and operation of Uber's S-RAD system, namely thresholds and trigger rates for the system. A true and accurate redacted copy of Exhibit DX-4 with the portion Uber seeks to seal (pp. 100:8-101:1) redacted is attached as Exhibit A to this Declaration.

2

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NO. 5894]

Case No. 3:23-MD-3084-CRB

6.       On information and belief, disclosing S-RAD thresholds and trigger rates would provide competitors insights and visibility into Uber's trade secrets, which even on a limited basis could allow competitors to begin to reverse engineer this highly confidential technology, the details of which Uber has not revealed publicly and has gone to great lengths to safeguard, [causing] competitive harm to Uber.

7.       Balanced against the compelling reasons to maintain this information in Exhibit DX-4 under seal is the complete absence of any public interest in the disclosure of S-RAD thresholds and trigger rates.  This information adds nothing to the public's understanding of the merits of this litigation.

8.       Exhibit DX-7 is a deposition guide provided by Uber to Plaintiffs for the 30(b)(6) deposition of Emilie Bowman.  The exhibit provides detailed, exhaustive information on the 30(b)(6) topic "Uber's payments to nonprofit organizations whose work involves combatting sexual violence (including the amount(s), date(s), and circumstances of the payment(s))," and is designated "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" pursuant to the Protective Order.

9.       Exhibit DX-7 includes detailed information covering 60 pages regarding the dates and amounts of Uber's payments and donations to nonprofit organizations and describes the nature of the partnership or relationship with each organization. On information and belief, disclosure of this non-public information might reveal corporate strategy in a manner that might cause Uber competitive harm or impair its relationships with nonprofit partners.

10.      There is no countervailing public interest in the disclosure of the detailed non-public information regarding Uber's relationships with and details of payments to nonprofit organizations in Exhibit DX-7; it is not necessary for the public to understand the merits of this litigation.

11.      There are no less restrictive alternatives to sealing the unredacted Stipulation— Defendants seek only narrowly-tailored redactions to one exhibit and to seal one other exhibit, consisting of confidential information, in full.

3

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NO. 5894]

Case No. 3:23-MD-3084-CRB

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 22, 2026.                    By:     */s/ Daniel Cummings*

                                                                Daniel Cummings

4

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NO. 5894]

Case No. 3:23-MD-3084-CRB

# DX-4

Sunny Wong
January 07, 2026

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


IN RE: UBER TECHNOLOGIES,   )   No. 3:23-md-03084-CRB
INC., PASSENGER SEXUAL      )
ASSAULT LITIGATION          )
_____)
This Document Relates to:   )
                            )
Jaylynn Dean v. Uber Techs, )
Inc.                        )
N.D.Cal.No. 23-cv-06708     )
D.Ariz.No. 25-cv-4276       )
_____)


*** CONFIDENTIAL ***

VIDEOTAPED DEPOSITION OF SUNNY WONG

January 7, 2026

9:43 a.m.



555 California Street, 27th Floor

San Francisco, California  94104



Reported by:

Natalie Y. Botelho

CSR No. 9897

Sunny Wong
January 07, 2026

Uber starting in May 2018, right?  And so I'm not aware that it was launched as early as 2018, yeah.

BY MS. BLAKE:

Q.        And in your work on S-RAD as Director of Applied Science, do you have any information as to whether or not any third-party groups or organizations were consulted with respect to S-RAD?

A.        I'm aware from reviewing documents that we've, you know, worked with many advocacy groups outside of Uber.  One, understanding, you know, fairness and discrimination, and also just getting a point of view from them.  But I believe there are -- have been documents that show multiple third-party advocacy groups we worked with.

MS. WALSH:  Okay.  Object -- based on that testimony, objection to the foundation with respect to that question.

MS. BLAKE:  And if we could pull up, please, Exhibit 3867.

TRIAL TECH ACOSTA:  Yes, ma'am.  Just a moment.

MS. BLAKE:  Thank you so much.

(Whereupon Exhibit 3867 was marked for identification.)

Sunny Wong
January 07, 2026

BY MS. BLAKE:

Q.        And Mr. Wong, if it's easier for you to also have a hard copy of the document, I'm happy to hand that to you.

A.        Yeah, that would be helpful.

        MS. BLAKE:  I can hand that to you as well, Counsel, if you'd like to see that.

        BY MS. BLAKE:

Q.        And on the screen is Exhibit 3867.  I've also handed you a copy, Mr. Wong.  Is this a document that you've seen before?

A.        Yes.

Q.        And can you just explain to the jury what this document is?

A.        I believe it's a slide deck that was presented in April 2021 at a meeting called MTR, which I believe stands for Monthly Tech Review.  So this is just a meeting where we provide updates on, you know, projects we're working on.

        MS. WALSH:  Counsel, could we -- just given the situation here, can we please get the beginning Bates number for this document, please?

        MS. BLAKE:  Absolutely.  The beginning Bates number is UBER_JCCP_MDL_002340895.

        MS. WALSH:  Awesome.  Thank you.

Sunny Wong
January 07, 2026

MS. BLAKE:  You're welcome.

BY MS. BLAKE:

Q.        And on the copy that's both on the screen and that I've handed to you, Mr. Wong, if you could turn to what's marked as 3867.0006, which is just the sixth page.  And are you there?

A.        I am.

Q.        And if I could direct you to that last bullet point.  Says, "Which advocacy groups did we talk to?"  Did you see that?

A.        I do see that.

Q.        And do you have an understanding as to what that is referencing in this document?

A.        My understanding from what has been referenced here, these are the different advocacy groups.  It looks like nine different advocacy groups that we talked to about S-RAD to understand any concerns they have, I believe mainly from, you know, racial discrimination, fairness perspective. So I think it was important to get a point of view from them.  But it shows that we worked with multiple advocacy groups to really understand their point of view.

Q.        And does that list of advocacy groups extend on to Page 7 of this document?

Sunny Wong
January 07, 2026

MS. WALSH:  Objection; form, leading.

THE WITNESS:  Yes, it looks like it does,
yes.

MS. BLAKE:  You can pull that down.  Thank
you.

BY MS. BLAKE:

Q.        Mr. Wong, based on your work on S-RAD and
your understanding of the third-party organizations
that we were just discussing, would it be correct or
incorrect if someone said that -- or insinuated that
S-RAD was a secret that were withheld from
third-party groups?

MS. WALSH:  Objection; form.

THE WITNESS:  I would -- yeah.

MS. WALSH:  You may want to retry that
one, Counsel.

BY MS. BLAKE:

Q.        Would it -- based on your understanding
and work with S-RAD, would it be correct or
incorrect if someone said that it was kept a secret
or withheld -- the S-RAD model was withheld from
third-party groups?

MS. WALSH:  Objection; form, leading.

THE WITNESS:  Yeah, I wouldn't agree with
that.  It was pretty clear that we worked with many

third-party advocacy groups, over ten, again, really to understand their point of view, you know, when we were building S-RAD.

BY MS. BLAKE:

Q.      We've talked a little bit today about threshold scores.  Can you just explain to the jury what a threshold score is?

A.          I don't recall.  I'm not sure we went over every single slide of all the -- or page of all the documents.  So...

MS. WALSH:  Okay.  Let's pull up Trial Exhibit 03867.

BY MS. WALSH:

Q.          You recall this document, correct?

A.          Yes.

Q.          Okay.  And you endorsed certain parts of this document, correct?

A.          What do you mean by "endorsed"?  What part of it?

Q.          Well, Counsel led you to a couple pages in to have you testify about the fact that this document indicates that certain nonprofit groups were consulted regarding -- regarding S-RAD, correct?

MS. BLAKE:  Objection; form.

THE WITNESS:  I recall discussions about us talking to some advocacy groups about S-RAD.

BY MS. WALSH:

Q.          Okay.  Do you know how much money Uber paid those advocacy groups over the last several years?  Are you aware of that?

Sunny Wong
January 07, 2026

A.          I'm not aware of those.

Q.          Okay.  That wasn't something that you looked into before you showed that portion of the document to the jury?

MS. BLAKE:  Objection; form.

THE WITNESS:  I'm not aware of those.

BY MS. WALSH:

Q.          Okay.  One second.  Okay.  So if you turn with me in just a moment -- I'm pulling it up on my end.  Okay.  So to remind the jury, this is FAQ for MTR, right?

A.          Yes, looks like it, yes.

Q.          Okay.  And who made this document?

A.          I'm not sure who created this.

Q.          Okay.  Well, let's -- you all brought it up, so let's take a look at it.  If you go to the page ending in .004, and if you look at the third bullet from the bottom.  This is what we've been talking about, right?  "How do you decide the trip trigger rate?"  Do you see that?

A.          I do see that.

Q.          And it says, "We work with individual regional teams to determine at a trigger rate" -- "a trigger rate strikes a good balance between safety and marketplace metrics."  Do you see that?