Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT** |
| *B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | **PUBLIC VERSION** |
| | Judge:      Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor |
| | Judge:      Mag. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

## NOTICE OF MOTION AND MOTION TO EXCLUDE

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to both Rule 37 and the Court's inherent authority, for discovery sanctions in the form of: (1) an award of all fees and costs that Uber incurred as a result of Plaintiff's egregious discovery misconduct, including fees and costs in connection with conducting additional depositions; and (2) removal of Plaintiff's case from the Wave 1 bellwether pool, with the WHB 318 case to be tried as the fourth bellwether trial.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: April 22, 2026                                    KIRKLAND & ELLIS LLP


                                                         By: */s/ Laura Vartain Horn*

                                                         *Counsel for Uber*

## TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...........................................................................................................1

II.   ARGUMENT................................................................................................................7

    A.    Plaintiff's Longstanding Discovery Misconduct Warrants Sanctions. ............................7

        1.    Plaintiff Engaged In Repeated, Egregious Discovery Violations........................8

        2.    Plaintiff Cannot Show That Her Violations Were Substantially Justified Or Harmless. ...................................................................................................12

    B.    The Appropriate Sanction For Plaintiff's Misconduct Is An Award Of Fees And Costs, Along With Removal Of This Case From The Wave 1 Trial Pool.....................13

III.  CONCLUSION ..........................................................................................................15

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Career Coll. Inc. v. Medina*,
    673 F. Supp. 3d 1139 (C.D. Cal. 2023) ......................................................................................7, 12

*Cabanillas v. Am. Fam. Ins.*,
    No. CV-13-00057-PHX-JJT, 2015 WL 11117189 (D. Ariz. Mar. 4, 2015)....................................12

*Cervantes v. Zimmerman*,
    No. 17-cv-1230-BAS-NLS, 2019 WL 1598219 (S.D. Cal. Apr. 15, 2019) ........................................14

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ......................................................................................................................8

*Clarity Sports Int'l LLC v. Redland Sports*,
    No. 1:19-cv-00305, 2024 WL 3743680 (M.D. Pa. Aug. 9, 2024).....................................................11

*Dehghani v. Castro*,
    782 F. Supp. 3d 1051 (D.N.M. 2025) ..........................................................................................10

*Englebrick v. Worthington Indus., Inc.*,
    944 F. Supp. 2d 899 (C.D. Cal. 2013), *aff'd*, 620 F. App'x 564 (9th Cir. 2015) .................................8

*Fang v. Hechalou US LLC*,
    No. CV 25-1180 PA, 2025 WL 3049873 (C.D. Cal. Sept. 12, 2025)....................................................9

*Fast v. GoDaddy.com LLC*,
    340 F.R.D. 326 (D. Ariz. 2022) ..................................................................................................10

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ........................................................................................................8

*In re Bard IVC Filters Prods. Liab. Litig.*,
    603 F. Supp. 3d 822 (D. Ariz. 2022), *aff'd*, 81 F.4th 897 (9th Cir. 2023)...........................................15

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    655 F. Supp. 3d 899 (N.D. Cal. 2023) ......................................................................................8, 12

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*,
    953 F.2d 162 (4th Cir. 1992) ......................................................................................................15

*Kessler v. City of Atwater*,
    No. 1:25-CV-00288 JLT SKO, 2025 WL 1918003 (E.D. Cal. July 11, 2025) ..................................10

*L. Tarango Trucking v. Cnty. of Contra Costa*,
    202 F.R.D. 614 (N.D. Cal. 2001)................................................................................................14

ii

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

*Lemus v. Olaveson*,
No. 2:14-cv-01381-JCM-NJK, 2015 WL 995378 (D. Nev. Mar. 5, 2015) .........................................12

*Martinez v. Univ. of San Diego*,
2024 WL 479970 (S.D. Cal. Feb. 7, 2024) .........................................................................7, 12, 14

*O'Hanlon v. Matrixx Initiatives*,
No. CV 04-10391AHM, 2006 WL 4729249 (C.D. Cal. Sept. 12, 2006) ..........................................13

*Orellana v. Cnty. of Los Angeles*,
No. CV 12-01944 MMM, 2013 WL 12129290 (C.D. Cal. June 26, 2013).......................................13

*Orthopaedic Hosp. v. DJO Glob., Inc.*,
No. 3:19-CV-00970-JLS-AHG, 2021 WL 3726036 (S.D. Cal. Aug. 23, 2021) ...............................9

*Terry v. Reg. Tapes Unlimited, Inc.*,
No. 2:16-CV-00806-WBS-AC, 2018 WL 3207892 (E.D. Cal. June 29, 2018) .................................9

*United States v. Hayes*,
763 F. Supp. 3d 1054 (E.D. Cal. 2025).............................................................................................10

**Rules**

Cal. Rules of Prof. Conduct 3.1(a)(2) ...................................................................................................10

Fed. R. Civ. P. 26............................................................................................................................6

Fed. R. Civ. P. 26(a) .......................................................................................................................7

Fed. R. Civ. P. 33............................................................................................................................7

Fed. R. Civ. P. 37................................................................................................................. *passim*

Fed. R. Civ. P. 37(b)(2)(A)(iv) ....................................................................................................7, 8

Fed. R. Civ. P. 37(c) ........................................................................................................................7

Fed. R. Civ. P. 37(c)(1)...........................................................................................................7, 10, 12

Fed. R. Civ. P. 37(c)(1)(A) ..........................................................................................................7, 14

Fed. R. Civ. P. 37(c)(1)(C) .............................................................................................................7

Fed. R. Civ. P. 37(d) ........................................................................................................................7

Fed. R. Civ. P. 37(d)(1)(A)(ii) ........................................................................................................7

Fed. R. Civ. P. 37(d)(3)................................................................................................................8, 12

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff has engaged in a months-long campaign of concealing from Uber relevant, responsive discovery. As part of that effort, Plaintiff has improperly redacted relevant information from produced documents (without any valid justification); selectively chosen to produce only parts of records (without any valid justification for withholding the remaining parts); failed to identify key witnesses with vital information (including a witness who may have been on the phone with Plaintiff during the alleged incident, ███████████████████████████████████, and three witnesses with whom Plaintiff had extensive conversations about the alleged incident); and withheld the identity of mental health providers who treated Plaintiff and/or failed to produce those providers' records. Plaintiff's longstanding and repeated effort to withhold relevant discovery has robbed Uber of the opportunity to explore evidence necessary for its defense against Plaintiff's claims, including deposing key fact witnesses and medical treaters, and questioning Plaintiff about documents directly relevant to her claims.

Uber has filed letter briefs and an administrative motion with Judge Cisneros seeking to reopen some fact discovery in Plaintiff's case, compel Plaintiff to provide all requested discovery, allow Uber to depose the numerous fact witnesses who were only recently disclosed, and require Plaintiff to sit for another deposition to address the newly-disclosed evidence. Thus far, Judge Cisneros has ordered Plaintiff to make eight additional witnesses available for deposition. See ECF 5823. Judge Cisneros has not yet ruled on the issue of Plaintiff's improperly withheld and redacted messages.[1]

Reopening discovery, however, will not fully address the prejudice to Uber. Accordingly, Uber asks that the Court: (1) award Uber its fees and costs associated with briefing these issues and conducting the additional depositions ordered by Judge Cisneros; and (2) remove Plaintiff's case from the Wave 1 bellwether pool, with the *WHB 318* case to be tried as the fourth bellwether trial instead.

## I.    BACKGROUND

Fact discovery in this case closed on October 6, 2025. Stipulation and Order to Reset Deadlines (ECF 3533). Plaintiff failed to comply with her discovery obligations and instead unilaterally withheld or

---

[1] Judge Cisneros initially struck the joint PTO 8 letter brief on this issue and instructed Uber to demonstrate good cause for leave to reopen fact discovery for the purpose of addressing the dispute. Uber filed an Administrative Motion for Leave to Refile the Joint PTO 8 Letter Regarding Plaintiff's Improper Use of Redactions on April 17, 2026. *See* ECF No. 5917. Plaintiff has indicated an intent to oppose that motion. See ECF 5917-8.

redacted evidence directly probative of her claims and Uber's defenses. Following is a non-exhaustive list of some of the most egregious examples of Plaintiff's discovery misconduct:

***Improper Redactions of Documents.*** Across multiple productions,[2] text messages, conversations in social media applications and emails were heavily redacted, and extensive messages were entirely withheld.[3] For some conversations, despite Uber's requests to do so, Plaintiff has not set forth any purported justification for withholding and redacting the messages. For example, in a conversation with ███████, Plaintiff either withheld or redacted over 99% of the messages exchanged but did not list that conversation in any iteration of her privilege log, including the operative version. *See* Ex. 4, Privilege Log (Feb. 24, 2026). By February 24, 2026, Plaintiff conceded that she had applied improper redactions to certain documents, including messages with at least ***eight*** witnesses. Ex. 5, 2/24/2026 Guidry Email. Since that date, Plaintiff has reproduced several additional conversations with certain redactions removed.[4]

Plaintiff's redactions have obfuscated relevant (and at times vital) information. For example, in response to a request for "ALL COMMUNICATIONS RELATED TO the ALLEGED INCIDENT[,]" Plaintiff produced a message in which she stated that she had ███████████████████ ████████████████████████████████████ *Id.* at 2. Plaintiff's next message—sent 26 seconds later—is redacted, followed closely by the message, ████████████████████████ *Id.* at 3. In another text, Plaintiff initially redacted a message conceding she had been ████████████████████ Ex. 6,

---

[2] Many of these productions were only made as a result of Uber's continuing efforts to seek complete discovery, and even then, Plaintiff's supposed attempts to cure the apparent deficiencies in her productions were insufficient, leaving countless messages improperly withheld or redacted.

[3] *See, e.g.*, Ex. 1, B.L. – SMS L.P. – 000001 – 000002 (as produced Oct. 30, 2025) (of 26 messages in the conversation, 20 were redacted in whole, and 1 was redacted in part—only 5 messages were produced in full); Ex. 2, B.L. SMS – ██████ – 000001 – 000004 (as produced July 16, 2025) (of 162 messages in the conversation, 121 were entirely unproduced, 32 were redacted in whole, and 2 were redacted in part—only 8 messages were produced in full); Ex. 3, B.L. – SMS R.H. – 000001 – 000008 (as produced July 16, 2025) (of 1,036 messages in the conversation, 941 were entirely unproduced, 84 were redacted in whole, and 2 were redacted in part—only 9 messages were produced in full).

[4] *Compare* Ex. 2, B.L. – SMS – ██████ – 000001 – 000004 (as produced July 16, 2025) *with* Ex. 6, B.L. – SMS – ██████ – 000001 – 000014 (as produced Apr. 1, 2026) *and* Ex. 7, B.L. – Email Communications – 000001 – 000006 (as produced July 2, 2025) *with* Ex. 8, B.L. – Email Communications – 000001 – 000006 (as produced Apr. 1, 2026). Nonetheless, extensive redactions remain across the conversations she has produced. *See, e.g.*, Ex. 9, B.L. – SMS W.L. – 000001 – 000052 (redactions revised June 24, 2025) (44 of 52 pages in the conversation are entirely redacted along with several other individual messages); Ex. 10, B.L. - SMS Lu.L. – 000006 -000021 (93 of 194 messages redacted).

2

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

B.L. – SMS – ▋ – 000001-000014 (as produced Apr. 1, 2026) at 2. And an email to her ex-boyfriend, ▋, discussed the alleged "sexual[] assault[] in an Uber" and related "police report," but inexplicably redacted an entire paragraph of text later revealed ▋ ▋, which Plaintiff herself compared to the alleged Uber incident. *Compare* Ex. 7, B.L. - Email Communications - 000001 - 000006 (as produced July 2, 2025) at 3 *with* Ex. 8, B.L. – Email Communications – 000001 – 000006 (as produced Apr. 1, 2026) ("▋ ▋").[5]

Naturally, Uber is concerned that Plaintiff's remaining redactions continue to shroud relevant evidence as well.

***Failure To Produce Complete Communications.*** As discussed above, Plaintiff has repeatedly excluded cherry-picked messages from her productions. For example, in messages with ▋, Plaintiff wrote to ▋ Ex. 11, B.L. - Instagram Messages M.G. - 000001, at 1. But Plaintiff's entire "rant" was excluded from the produced thread. *Id.* Similarly, Plaintiff produced only a portion of her four-day conversation about the alleged incident with ▋. Ex. 12, B.L. – SMS - ▋ – 000001 - 000004 (containing 48 messages despite a "Message Count" of 68). A later production including the missing messages confirmed that Plaintiff had removed those messages without explanation. *See* Ex. 13, B.L. – SMS - ▋ – 000001 - 000006. The same is true for Plaintiff's messages with ▋ ▋ *Compare* Ex. 14, B.L. – SMS L.L. – 000001 – 000010 (produced Apr. 30, 2025) (ending with Plaintiff's message ▋) *with* Ex. 15, B.L. – SMS L.L. – 000011 – 000047 (4 seconds after the previous message, Plaintiff wrote, ▋ ▋).[6]

---

[5] Plaintiff's counsel contends that it was "highly inappropriate to suggest that the emails are in any way similar to what occurred in the Uber." Ex. 16, 4/7/2026 Luther Email. That assertion is belied not only by Plaintiff's own assertions in those emails, but by concurrent messages with Synthia. *See* Ex. 6, B.L. – SMS – ▋ – 000001 – 000014 (as produced Apr. 1, 2026) at -7 (Plaintiff "loved" ▋ message: ▋ ).

[6] These are just examples of a larger issue—other conversations are still missing a significant number of messages. *See, e.g.*, Ex. 17, B.L. – SMS R.H. – 000001 – 000008 (as produced Feb. 24, 2026) (missing 941 messages); Ex. 18, B.L. – SMS ▋ L. – 000001 – 000003 (as produced Apr. 1, 2026) (missing 14 messages).

3

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

Perhaps most egregiously, Plaintiff initially failed to produce communications that are highly relevant to the impact of the alleged incident and her mental state more generally. In an August 21, 2022 message to a mental health provider that Plaintiff had initially redacted, Plaintiff stated, while discussing the night of the alleged incident, that the focus of her anger was ████████ with whom she had a ████████████████████ and whom she was with immediately before the Uber ride in question. Ex. 6, B.L. - SMS ████ - 000001 – 000014 (as produced Apr. 1, 2026) at -1, 5. Over the next several days, Plaintiff had other communications with the provider about interpersonal relationships that are highly relevant to her emotional state and its causes. *Id.* at -5-13.

***Failure To Identify Key Fact Witnesses.*** Plaintiff has repeatedly failed to identify (or, at best, belatedly disclosed) key witnesses to Uber. For example, Plaintiff's April 2, 2026 production revealed a new witness, ████████, with whom Plaintiff was apparently on the phone ***at the time of the alleged incident***. *See* Ex. 19, B.L. – SMS T.R. – 000002. Additionally, in her verified interrogatory responses dated April 14, 2025, Plaintiff purported to identify all parties to "each COMMUNICATION [she] had CONCERNING the ALLEGED INCIDENT OR [resulting] DAMAGES[.]" Ex. 20, Pl.'s 10th Supp. Interrogs. Resps. at No. 2. But Plaintiff omitted three witnesses—████████████████—from her responses. Over the next three months, Plaintiff amended those responses six times—each time reaffirming under oath that she had no relevant communications with ████████ and minimizing the extent of her contacts with ████████ by claiming she only had "a handful" of conversations with her.

Despite these misrepresentations ***to Uber***, during her June 21-22, 2025 interview with her paid expert Dr. Mechanic, Plaintiff identified ████████████████████████ as three of four key witnesses whom Dr. Mechanic should interview to understand the impact of the alleged incident. Ex. 21, 11/22/2025 M. Mechanic Dep. 216:20-220:7, 222:14-25, 224:10-226:8, 227:16-24.[7] Weeks after her interview with Dr. Mechanic, Plaintiff ***finally*** listed ████████████████ in her eighth verified interrogatory responses—which described a single text exchange with ████████ in December 2024 and

---

[7] Plaintiff also perjured herself at her deposition on June 25, 2025—*3 days after her interview with Dr. Mechanic*—when she testified she had never "had a[n] exam" or "appointment[]" with a doctor for this litigation. *See* Ex. 22, B.L. Dep. 27:15-24. Plaintiff's counsel did not correct the blatant misrepresentation or notify Uber of B.L.'s IME with Dr. Mechanic until Dr. Mechanic's report was served.

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

intermittent text exchanges with ███████ between August and September 2022. Ex. 23, at No. 2, Supp. Resp. 07/16/25. For each, Plaintiff indicated, under oath, that those messages were the last she spoke with those witnesses. *Id.* Those representations were false. Plaintiff also maintained that her contact with ███████ was limited and predated June 11, 2025. *Id.* at No. 2, Supp. Resp. 07/16/25. This, too, was false. *Cf. id.*

Four days after the discovery deadline, Plaintiff served Dr. Mechanic's report containing contrary statements. Ex. 24, 9/26/2025 Opening Report of M. Mechanic (B.L.) at 52 (noting that ███████ told Dr. Mechanic he and Plaintiff ████████████████████████████████████████████ ████████████████████████████; *see also id.* (reporting that Mr. ██████ told Dr. Mechanic ████████████████████████████████████████; *id.* (detailing Mr. ██████ view of Plaintiff's post-assault functioning over the course of nine detailed paragraphs based on his recent interactions with her); *id.* at 53-54 (stating that Ms. ██████ and Plaintiff have been friends for nine years and providing commentary about how Ms. ██████ perceives Plaintiff during their recent visits); *id.* at 57 (indicating that Mr. ██████ has known Plaintiff for "eight or nine years" and commenting on his observed changes in the past few years); *id.* (writing that Mr. ██████ and Plaintiff ██████ ████████████████ after the alleged incident); *id.* (stating that Mr. ██████ believed he ██████ ████████████████████████████████████. And it was not until October 30, 2025—***nearly one month after the close of fact discovery***—that Plaintiff finally amended her verified responses, revealing she █████████████████████████████████████████ ████████████████████████████████████████████████ ███████████ Ex. 25, at No. 2. Because these disclosure came well after the close of discovery, Uber was prevented from exploring these topics with the witnesses or Plaintiff at depositions.

***Failure To Identify Medical Providers.*** Plaintiff has also repeatedly failed to disclose the identity of her medical providers and/or produce medical records in response to propounded discovery. For example,

- On October 30, 2025—***almost a month after the close of fact discovery***—Plaintiff disclosed therapist ███████ for the first time, even though she had been treated ████████████

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

████████████ Ex. 26, B.L. - ████████████ - 000012; Ex. 34, Pl.'s 11th Suppl. Resps. to Interrogatories at 15 (10/30/25 Supp.).

- On February 24, 2026—***four months after the close of discovery***—Plaintiff disclosed psychiatrist ████████ for the first time. Ex. 27, at 8.

- On April 2, 2026—***six months after the close of discovery***—Plaintiff produced unredacted messages (described above) that revealed an additional therapist, ████████, whom Plaintiff had falsely identified as a "friend" in July 2025. *See* Ex. 6, B.L. - SMS ████ – 000002; Ex. 28, Pl.'s 10th Suppl. Rule 26 Disclosures at 8 (7/16/25 Supp.). Plaintiff still has not disclosed ████ as a treater in her discovery responses or Rule 26 disclosures.

To this day, Plaintiff has not provided medical records for any of these providers.

***Discovery of Plaintiff's Misconduct.*** Uber raised these serious discovery issues with Plaintiff repeatedly over the course of several months and conferred with Plaintiff on multiple occasions in an effort to resolve these disputes without the need for Court intervention. *See, e.g.*, Ex. 29, 2/23/2026 Benfield Email; Ex. 30, 10/16/2025 Benfield Email. Despite these efforts, Plaintiff still has not produced all relevant documents in unredacted form or remedied her late disclosures, which precluded Uber from conducting full discovery into relevant issues.

In March 2026, Uber invoked the PTO 8 briefing process and sent Plaintiff its inserts for letter briefing. Several days later and in response, Plaintiff made a new production, which confirmed that relevant information had been withheld and redacted from Plaintiff's prior productions. Uber conferred with Plaintiff's counsel on April 6, 2026 and requested explanations for the prior redactions and undisclosed witnesses, but Plaintiff did not provide any reasoning beyond her assertion that she acted in good faith. *See* Ex. 31, 4/7/2026 Vives Email. On April 9, 2026, the Parties filed two PTO 8 letters, outlining the issues of additional depositions and overexpansive redactions.

On April 12, 2026, Judge Cisneros entered an Order granting, in part, the relief sought by Uber. *See* ECF 5823 (resolving Uber's PTO 8 Letter Brief Regarding Collateral Source and Treater

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

Depositions).[8] Judge Cisneros did not rule on Uber's Letter Brief related to Plaintiff's improper redactions. Instead, Judge Cisneros struck that Letter Brief without prejudice and instructed Uber to seek leave to refile. Uber filed an Administrative Motion laying out its good cause for this issue to be heard on April 17, 2026. *See* ECF 5917. Plaintiff has indicated that she intends to oppose that Motion.

## II.    ARGUMENT

Plaintiff's discovery misconduct is sanctionable under both the Court's statutory and inherent authority. As explained below, the proper sanction for Plaintiff's discovery misconduct is: (1) an award of Uber's fees and costs associated with the misconduct, including fees and costs related to the additional deposition discovery sought; and (2) removal of Plaintiff's case from the Wave 1 bellwether pool, with the *WHB 318* case to be tried as the fourth bellwether trial instead.

### A.    Plaintiff's Longstanding Discovery Misconduct Warrants Sanctions.

Plaintiff's rampant discovery misconduct, which continues to this day, justifies sanctions. "Rule 37 provides the means by which courts not only enforce discovery procedures, but also punish and deter discovery misconduct." *Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1147 (C.D. Cal. 2023). Rule 37(c) authorizes the imposition of sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). Sanctions may include the "order [of] payment of the reasonable expenses, including attorney's fees, caused by the failure" to disclose discovery and "other appropriate sanctions," such as "staying further proceedings until the order is obeyed[.]" Fed. R. Civ. P. 37(c)(1)(A), (C); Fed. R. Civ. P. 37(b)(2)(A)(iv). Sanctions under Rule 37(c)(1) are warranted absent a showing by the violating party that the discovery violations were "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *see also Martinez v. Univ. of San Diego*, 2024 WL 479970, at *7 (S.D. Cal. Feb. 7, 2024) ("The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless.") (quotation marks omitted). In addition, pursuant to Rule 37(d), a court may sanction "a party [who], after being properly served with interrogatories under Rule 33 . . ., fails to serve its answers, objections, or written response." Fed. R. Civ.

---

[8] In this letter, Uber sought to depose eight witnesses after the discovery cutoff due to Plaintiff's belated disclosures. Plaintiff urged the Court to limit those depositions to a total of five hours. The Order permitted Uber 2.5 hours for each deposition, with the ability to extend that time where reasonably necessary. *See* ECF 5823.

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

P. 37(d)(1)(A)(ii). Where a party fails to properly answer interrogatories, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust" and may award other sanctions, including "staying further proceedings until the order is obeyed[.]" Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(b)(2)(A)(iv).

Federal courts also have inherent authority to levy "sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). This power is broad and allows courts "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). A court "must find that the conduct 'constituted or was tantamount to bad faith'" before it can impose sanctions pursuant to its inherent authority, but "[t]hat standard may be met . . . 'when a party acts for an improper purpose,'" such as "delaying or disrupting the litigation[.]" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924-25 (N.D. Cal. 2023) (citations omitted). "Sanctions are [also] available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994; *see also Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013), *aff'd*, 620 F. App'x 564 (9th Cir. 2015) ("[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault.") (citation omitted). A court may exercise its inherent sanction power "by requiring the sanctioned party to pay the opposing party's attorney's fees." *In re Facebook*, 655 F. Supp. 3d at 924.

The record here is clear that Plaintiff acted willfully and disobediently by engaging in repeated discovery violations, and that these violations were neither justified nor harmless. As a result, sanctions are appropriate.

### 1.    Plaintiff Engaged In Repeated, Egregious Discovery Violations.

Plaintiff's misconduct warrants the imposition of sanctions under both Rule 37 and the Court's inherent authority because Plaintiff has engaged in repeated, egregious and ongoing discovery violations by, *inter alia*, concealing key information, documents, and witnesses in her responses to Uber's document requests and interrogatories. In particular:

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

***Failure To Properly Redact Documents.*** Pursuant to Uber's discovery requests, Plaintiff had an obligation to produce all documents "RELATED TO the ALLEGED INCIDENT[.]" Ex. 32, Uber's RFPs, Set One, at Nos. 2-3. Plaintiff, however, applied improper redactions to highly relevant messages between Plaintiff and multiple witnesses. Ex. 5, 2/24/2026 Guidry Email. To date, Plaintiff has not fully removed the redactions from her produced messages with these witnesses or acknowledged the full scope of the unjustified redactions across communications with additional witnesses. Ninth Circuit courts have repeatedly recognized that such "improper redactions" warrant the imposition of Rule 37 sanctions. *See Terry v. Reg. Tapes Unlimited, Inc.*, No. 2:16-CV-00806-WBS-AC, 2018 WL 3207892, at *7 (E.D. Cal. June 29, 2018) (holding that "monetary sanctions" were appropriate "in light of [the party]'s improper redactions); *see also Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 3:19-CV-00970-JLS-AHG, 2021 WL 3726036, at *10 (S.D. Cal. Aug. 23, 2021) (noting that "an improper claim of privilege is sanctionable" and granting in part "Defendant's motion for Rule 37 sanctions" where "Plaintiff failed to recognize at any point during this lengthy process of meeting and conferring . . . that many of its redactions of the . . . documents . . . were improper").

Compounding this misconduct, Plaintiff served multiple versions of her privilege log that cite legal support for her redactions ***that does not exist***. *See* Ex. 33, Old Privilege Logs. Although Plaintiff's counsel had denied the apparent use of AI-hallucinated citations to support her redactions, Plaintiff recently provided a sixth iteration of her log that removed citations to the erroneous caselaw, tacitly admitting that those citations were improper.[9] *See* Ex. 4, Privilege Log. Plaintiff's citations violate the Federal Rules and the California Code of Conduct, and are—on their own—a sanctionable offense. *See, e.g.*, *Fang v. Hechalou US LLC*, No. CV 25-1180 PA (JDEx), 2025 WL 3049873, at *2-3 (C.D. Cal. Sept. 12, 2025) (recognizing that "'[a]cross the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases'" and finding that because "it [wa]s undeniable that defense counsel's actions unreasonably multiplied the proceedings in this case and [] as a result, awarding sanctions based on the

---

[9] Plaintiff has suggested that the two hallucinated case cites referred to published cases with similar names that simply were "not directly on point." *See* Joint PTO 8 Letter Regarding Deficient Productions by Plaintiff (ECF 5802-3). But Plaintiff cannot refute that the citations referred to the wrong reporters, jurisdictions, and/or dates, very strongly indicating that they were hallucinated by AI. And even the cases Plaintiff now claims she meant to cite—one of which is still not cited correctly—either do not discuss discovery at all or concern discovery of putative class members, which is irrelevant.

9

amount of attorneys' fees incurred because of the use of AI generated cases is warranted"); *Kessler v. City of Atwater*, No. 1:25-CV-00288 JLT SKO, 2025 WL 1918003, at *1 (E.D. Cal. July 11, 2025) (ordering attorney to show cause as to why sanctions should not be imposed where "it appears to the Court that [the attorney] cited to cases that do not exist, cited to cases that do not stand for the proposition claimed, or included purported quotations that do not exist in the cited case"); *Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1058, 1062 (D.N.M. 2025) (affirming sanctions where brief contained "numerous inaccurate caselaw citations, including some caselaw apparently fabricated out of whole cloth"); *see also United States v. Hayes*, 763 F. Supp. 3d 1054, 1064 (E.D. Cal. 2025) ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."); Cal. Rules of Prof. Conduct 3.1(a)(2) (a lawyer shall not "present a claim or defense in litigation that is not warranted under existing law").

*Failure To Produce Complete Records.* Plaintiff has also failed to produce complete records in response to Uber's discovery requests. Plaintiff has repeatedly produced partial records that appear to have been selectively cut or altered to withhold materials without disclosing this manipulation of the record to Uber. For example, as set forth above, Plaintiff produced a chain of text messages with Ms. ▮▮▮ but Uber's investigation revealed that only 48 of the 68 messages in the chain were included in the document produced to Uber. *See* Ex. 12, B.L. – SMS - ▮▮▮ – 000001 - 000004. Similarly, Plaintiff's production of text messages with Ms. ▮▮ was missing 121 of 162 messages in the thread. Ex. 2, B.L. SMS – ▮▮ Redacted - 000001 – 000004. Plaintiff still has not provided any basis for cherry-picking her productions to Uber. And although Plaintiff has since produced these particular missing records, that production was not made until months *after* the close of fact discovery, precluding Uber from using the content of the newly-produced messages in depositions. Further, Uber is concerned that other relevant messages or portions of documents were also improperly excised from Plaintiff's production. As courts have recognized, failures like this to produce relevant materials warrant sanctions. *See, e.g.*, *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 351-52 (D. Ariz. 2022) (sanctions were warranted under Rule 37(c)(1) where plaintiff failed to produce Facebook messages, audio recordings, and email communications).

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

***Failure to Identify Key Fact Witnesses.*** Plaintiff has also repeatedly failed to identify key witnesses, or, at best, belatedly produced information about important witnesses to Uber. *See Clarity Sports Int'l LLC v. Redland Sports*, No. 1:19-cv-00305, 2024 WL 3743680, at *10, *14-15 (M.D. Pa. Aug. 9, 2024) (finding sanctionable discovery misconduct where a party failed to timely identify known individuals with "knowledge of the facts" in response to interrogatories). For example, Plaintiff's April 2, 2026 production—provided to Uber seven months after the close of fact discovery—revealed for the first time two new witnesses: (1) ██████████—who may have been on the phone with Plaintiff during the alleged incident; and (2) ████████—whom Plaintiff ████████████████████ (noting that what happened during the alleged incident ██████████████████████████). *See* Ex. 19, B.L. – SMS T.R. – 000002. In addition, although Uber propounded interrogatory requests requiring Plaintiff to identify all parties with whom she communicated about the alleged incident, Ex. 20, Pl.'s 10th Supp. Interrogs. Resps. at No. 2, Plaintiff failed to timely disclose the extent of her communications pertaining to the alleged incident with three fact witnesses—████████████████████████ It was not until October 30, 2025—after fact discovery was closed—that Plaintiff amended her verified responses to reveal that: she "had numerous conversations… over the last few years" with Mr. ██████ about the alleged incident; she "continue[d] to speak monthly" to Ms. █████; and she "[spoke] frequently with ████ ██████" about the alleged incident. Ex. 25, at No. 2. This failure is particularly problematic given that Plaintiff informed her own expert that ████████████████████████ were ***key witnesses*** regarding the impact of the alleged incident on her, Ex. 21, 11/22/2025 M. Mechanic Dep. 216:20-220:7, 222:14-25, 224:10-226:8, 227:16-24, and therefore was clearly aware of the relevance of these witnesses to the case.

***Failure to Identify Healthcare Providers.*** Plaintiff also failed to identify three medical providers—████████████████████████ (whom Plaintiff has previously, and incorrectly, identified as only a "friend")—until months after the completion of fact discovery. Indeed, Plaintiff was treated by therapist Ms. ██████ as recently as August 2025, Ex. 26, B.L. - ████████████ - 000012— two months prior to the close of fact discovery—but still waited until two months ***after*** the close of discovery to identify Ms. ██████ as a treating provider. In addition, Plaintiff still has not produced medical records from these providers. It is well recognized that, where a party's physical or mental health is at

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)

issue, the failure to timely provide information about his or her healthcare providers and records is a discovery violation warranting sanctions. *See, e.g.*, *Cabanillas v. Am. Fam. Ins.*, No. CV-13-00057-PHX-JJT, 2015 WL 11117189, at *3 (D. Ariz. Mar. 4, 2015) (awarding fees and costs as a sanction under Rule 37 where plaintiff failed to disclose "all medical records stemming from her accident-related injuries" because that failure "affected [defendant's] ability to evaluate her claim"); *Lemus v. Olaveson*, No. 2:14-cv-01381-JCM-NJK, 2015 WL 995378, at *1, *11-12 (D. Nev. Mar. 5, 2015) (awarding fees and costs as a sanction under Rule 37 where plaintiff had "only produc[ed] medical records that made it appear as if Plaintiff had not treated with any physician . . . since March 2014.").

* * * * *

In sum, there can be no real question that Plaintiff's longstanding pattern of obfuscation and delay in her discovery responses—including selectively withholding relevant portions of requested materials that she apparently believed were unhelpful to her case—violated the discovery rules and have "delay[ed] [and] disrupt[ed] the litigation[.]" *In re Facebook*, 655 F. Supp. 3d at 925 (citation omitted); *see also Am. Career Coll.*, 673 F. Supp. 3d at 1149 (concluding that a party's "pattern of discovery misconduct and other litigation abuses warrants the imposition of sanctions under both Rule 37 and the Court's inherent authority").

### 2.      Plaintiff Cannot Show That Her Violations Were Substantially Justified Or Harmless.

Plaintiff cannot possibly show that the discovery violations outlined above were "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37(d)(3); *see also Martinez*, 2024 WL 479970, at *7 ("The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless.") (quotations omitted). As set forth in detail above, Plaintiff possessed the discovery at issue and knew it was relevant to her case; nonetheless, she refused to provide it to Uber (despite her obligation to do so) and in some cases, appears to have affirmatively manipulated documents to produce only portions of materials, misrepresenting the record. There is no legitimate or "substantial justification" for Plaintiff's failure to timely provide relevant discovery to Uber; rather, these tactics were evidently intended to hinder Uber's preparation of its defense of Plaintiff's case. *Orellana v. Cnty. of Los Angeles*, No. CV 12-01944 MMM (CWx), 2013 WL

12

12129290, at *6 (C.D. Cal. June 26, 2013) (party could not "claim that her failure to disclose [witnesses] was substantially justified, as she knew or should have known of the relevance of their testimony at all times after the commencement of this action").

Nor is Plaintiff's discovery misconduct "harmless." To the contrary, evidence that Plaintiff produced months after the close of discovery has revealed, among other things, that Plaintiff reported to a provider that she was ███████ over the driver at issue in the alleged incident; that Plaintiff may have been on the phone with previously undisclosed witness ████████ during the alleged incident; and that Plaintiff sought mental health treatment from three undisclosed providers (██████████████████ ███████████). This is not only relevant evidence; it is vital to Uber's defense. Thus, Plaintiff's unilateral decision to produce it after the close of discovery (or withhold it entirely), was far from harmless. *See, e.g.*, *O'Hanlon v. Matrixx Initiatives*, No. CV 04-10391AHM (JTLx), 2006 WL 4729249, at *1 (C.D. Cal. Sept. 12, 2006) (issuing sanctions where plaintiffs "failed to show that Defendants were not harmed by the delay" where "fact discovery and expert discovery [had] both ended" and "Defendants would be unable to rebut any" of the belatedly produced evidence).

For these reasons, too, Plaintiff's repeated discovery violations warrant sanctions.

**B.    The Appropriate Sanction For Plaintiff's Misconduct Is An Award Of Fees And Costs, Along With Removal Of This Case From The Wave 1 Trial Pool.**

Because Plaintiff has yet to produce relevant information—and only recently identified new witnesses who need to be deposed and new materials that warrant reopening previously-conducted depositions—Uber filed two PTO 8 Letter Briefs and an Administrative Motion seeking leave to raise the redactions issue with Judge Cisneros. Judge Cisneros has now ordered Plaintiff to tender eight additional witnesses for depositions in response to one letter brief. She has not yet ruled on Uber's Administrative Motion. Plaintiff should be required, as a sanction for her pattern of discovery misconduct, to pay Uber's costs and fees for taking the additional depositions and any additional discovery allowed by Judge Cisneros. In addition, given the prejudice to Uber if it is required to conduct this discovery with a trial date looming, the Court should also remove Plaintiff's case from the Wave 1 bellwether pool and proceed instead with *WHB 318* as the fourth bellwether trial.

*First*, fairness demands that Plaintiff be required to pay Uber's fees and costs in conducting additional discovery to address relevant witnesses and materials hidden from Uber during the discovery period. Courts within the Ninth Circuit have repeatedly awarded fees and costs incurred as a result of discovery misconduct. *See, e.g.*, *Cervantes v. Zimmerman*, No. 17-cv-1230-BAS-NLS, 2019 WL 1598219, at *8 (S.D. Cal. Apr. 15, 2019) ("Courts impose cost-shifting sanctions pursuant to Rule 37(c)(1)(A) for costs not yet incurred, but which will be incurred from a limited reopening of discovery to address untimely disclosed information."); *Martinez*, 2024 WL 479970, at *12 (reopening discovery for the limited purpose of curing an untimely report by plaintiffs' expert and ordering plaintiffs "to pay all reasonable costs and expenses, including but not limited to attorney's fees, incurred by Defendant during the limited reopening of discovery"); *see also L. Tarango Trucking v. Cnty. of Contra Costa*, 202 F.R.D. 614, 623 (N.D. Cal. 2001) (ordering that the "cost incurred by plaintiffs in preparing for and litigating the reopened trial proceedings, including attorneys' fees, will be paid by defendants" as a Rule 37 sanction where defendants belatedly produced several relevant documents).

The same result is appropriate here. Plaintiff's discovery misconduct—including improperly withholding relevant portions of produced documents and misrepresenting or obfuscating the role of relevant witnesses—precluded Uber from conducting full and fair discovery, including complete depositions of Plaintiff and other witnesses. Awarding fees and costs "incurred from a limited reopening of discovery to address untimely disclosed information" is a proper "cost-shifting" sanction for Plaintiff's pattern of repeated discovery violations. *Cervantes*, 2019 WL 1598219, at *8.

*Second*, the Court should remove Plaintiff's case from the Wave 1 trial pool—as both a discovery sanction and as part of its inherent authority to control its own docket. Plaintiff's discovery violations have unnecessarily complicated this case by requiring Uber to reopen discovery to depose new witnesses about newly-revealed information relevant to the alleged incident. As set forth above, this includes evidence that Plaintiff was potentially communicating with someone during the incident, that she reported to a medical provider that she was ███████ over the driver involved in the alleged incident, and that she engaged in previously undisclosed communications with multiple individuals about the alleged incident. Given the need to investigate these new facts and take new testimony, it is no longer logical, or fair, for this case to proceed on the same timeline as the other Wave 1 bellwether cases. To address this significant

14

complication, which is entirely of Plaintiff's own making, the Court should remove Plaintiff's case from the Wave 1 bellwether trial pool and instead try *WHB 318*, in which discovery is complete, as the fourth bellwether trial.

This is not only an appropriate sanction for discovery misconduct; it is also within the Court's general power to manage this MDL proceeding. "[I]t is well established that federal courts . . . possess certain inherent powers, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[.]" *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 831 (D. Ariz. 2022) (citation and quotations omitted), *aff'd*, 81 F.4th 897 (9th Cir. 2023). These inherent powers provide a district court with "broad discretion in coordinating and administering multi-district litigation." *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). Uber respectfully requests that the Court exercise this broad discretion to reorder the bellwether trials in a manner that is practicable given the need for additional discovery in this case, and the readiness of *WHB 318* as an alternative trial candidate.

## III.    CONCLUSION

For the foregoing reasons, sanctions are warranted under both Rule 37 and the Court's inherent authority, and Uber requests that the Court: (1) award all fees associated with the misconduct, including costs of conducting the additional depositions; and (2) remove Plaintiff's case from the Wave 1 bellwether pool, with the *WHB 318* case to be tried as the fourth bellwether trial.

DATED: April 22, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

15

alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' MOT. FOR SANCTIONS FOR PLAINTIFF'S DISCOVERY MISCONDUCT
Case No. 24-cv-7940-CRB (LJC)