# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before the Honorable Charles R. Breyer, Judge

IN RE UBER TECHNOLOGIES, INC.,   )   No. 3:23-MD-03084-CRB
PASSENGER SEXUAL ASSAULT         )
LITIGATION,                      )
                                 )
_____
WHB 823 v. Uber Techs, Inc., et al.)
No. 3:24-cv-04900                )
_____)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

                                 )
WHB 823,                         )
                                 )   No. 3:25-cv-00737-CB
            Plaintiff,           )
                                 )
        vs.                      )
                                 )   VOLUME I
UBER TECHNOLOGIES, INC., et al., )
                                 )   Pages 1 - 253
            Defendants.          )
_____)

TRANSCRIPT OF JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE CHARLES R. BREYER
UNITED STATES SENIOR DISTRICT COURT JUDGE
WEDNESDAY, APRIL 15, 2026 AT 9:15 A.M.

JILLIAN M. TURNER, RMR, CRR, CRC
Official U.S. District Court Reporter
United States District Court
Charlotte, North Carolina

APPEARANCES:

For Plaintiffs:

        SARAH R. LONDON, ESQ.
        ANDREW KAUFMAN, ESQ.
        Girard Sharp LLP
        601 California Street, Suite 1400
        San Francisco, California   94108

        JOHN T. BOUNDAS, ESQ.
        SEJAL BRAHMBHATT, ESQ.
        Williams Hart & Boundas, LLP
        8441 Gulf Freeway, Suite 600
        Houston, Texas   77017

        WILLIAM L. SMITH, ESQ.
        ALEXANDRA M. WALSH, ESQ.
        Anapol Weiss
        6060 Center Drive, 10th Floor
        Los Angeles, California   900045

        THIEN AN V. TRUONG, ESQ.
        Simmons Hanly Conroy
        112 Madison Avenue
        New York, New York   10016


For Defendants:

        ALLISON M. BROWN, ESQ.
        LAURA VARTAIN HORN, ESQ.
        CAROLINE POWER, ESQ.
        GEOFFREY M. WYATT, ESQ.
        Kirkland & Ellis LLP
        2005 Market Street, Suite 1000
        Philadelphia, Pennsylvania   19103

        MICHAEL A. BROWN, ESQ.
        Nelson Mullins
        100 S. Charles Street, Suite 1600
        Baltimore, Maryland   21201

3

I N D E X

PAGE

OPENING STATEMENT BY PLAINTIFF                          26

OPENING STATEMENT BY DEFENDANT                         37

PLAINTIFF'S WITNESSES

BRIANNA MENSING

    Direct Examination by Mr. Boundas              53
    Cross-Examination by Ms. Brown               125
    Redirect Examination by Mr. Boundas          195

DAVID YANKOWSKI

    Direct Examination by Ms. Brahmbhatt         202
    Cross-Examination by Mr. Brown               212
    Redirect Examination by Ms. Brahmbhatt       221
    Recross-Examination by Mr. Brown             221

MELISSA MENSING (Via Video Deposition)                 224

PLAINTIFF'S EXHIBITS
NO.                                               RECEIVED

P-0498.00001                                           93

P-04659                                                85

P-4691                                                211

P-04695                                                73

P-04929                                                86

P-04941                                                68

P-04944                                                65

P-04946                                                63

P-04951                                                62

P-04962.00005                                          90

P-04962                                                91

4

## PLAINTIFF'S EXHIBITS (Cont.)

| NO. | DESCRIPTION | ENTERED |
|---|---|---|
| P-04966 | | 64 |
| P-04969 | | 85 |
| P-04973 | | 68 |
| P-04977 | | 76 |
| P-04978 | | 108 |
| P-04979 | | 110 |

## DEFENDANTS' EXHIBITS

| NO. | RECEIVED |
|---|---|
| D-4018 | 126 |
| D-4038 | 134 |
| D-4046 | 138 |
| D-4046 | 141 |
| D-4091 | 172 |
| D-4153 | 155 |
| D-4186 | 177 |

127

BRIANNA MENSING - CROSS

MS. BROWN:  Okay.

Ms. Mensing, here is a copy for you.

Do you need a copy?

MR. BOUNDAS:  I don't.

BY MS. BROWN:

Q.   Ms. Mensing, I'm handing you a document, and --

MS. BROWN:  Your Honor, do we have permission to bring it up on the screen now that it's evidence?

THE COURT:  Yes, it's admitted.  You don't need my permission.

MS. BROWN:  Thank you very much.

And can we first go to the cover first, Mr. Delaney.

BY MS. BROWN:

Q.   This is entitled "Amended Plaintiff Fact Sheet."  Do you see that there, Ms. Mensing?

A.   Yes.

Q.   All right.  And if we go to the very, very last page of this document, we see something called a verification.  Do you see that there?

A.   Yes, ma'am.

Q.   All right.  And this verification states that the person signing it has reviewed the fact sheet and the statements set forth therein are true and correct.  Do you see that?

A.   Yes, ma'am.

128

BRIANNA MENSING - CROSS

Q.    And it's dated -- this one we're looking at is dated October 2nd, 2024, correct?

A.    Yes, ma'am.

Q.    And that is your electronic signature, I believe.  Do you see that?

A.    Yes, ma'am.

Q.    And you, as part of this litigation process, provided us with some information about your claim, correct?

A.    Yes.

Q.    And you swore back in October of 2024 that it was true and accurate to the best of your ability, correct?

A.    Yes.

Q.    All right.  And so I want to direct you, if we could, to page 9 where you were asked on this form to give a description in our own words of the incident.  Do you see that?  It's on the screen to you.

A.    Yeah, I see it.

Q.    I know it's a little small.  You see that there, right?

A.    Yes, I see it.

Q.    All right.  And one of the things you told us here in October of 2024 was that you got into the Uber, and your Uber driver and you were having a casual conversation.  And that's correct, right?

A.    Yes.

Q.    All right.  Do you recall any of the things you spoke to

BRIANNA MENSING - CROSS

Mr. Richardson about?

A.    Nothing bad.  I don't -- casual conversation.  It was nothing provocative.  There was nothing that indicated, Hey, you should totally touch me.  It was not -- it was just a casual conversation.

Q.    All right.  And you said, in fact, at first the Uber driver was very friendly, correct?

A.    Yeah.  Yes, ma'am.

Q.    And what you said here is, When we made it to my destination, the Uber driver turned around and grabbed my thigh.  Do you see that?

A.    Yeah, I see that, but that's not -- I don't know how this came about.

Q.    Okay.

A.    I've been wondering about this.

Q.    Let's keep going.  Where it says here the Uber driver turned around and grabbed my thigh, is that not true?

A.    He didn't turn around.

Q.    All right.  The next sentence says, The Uber driver told me he wanted to lick them.  You see that?

A.    I see that, but that is not what occurred.

Q.    All right.  And this is the description of the incident that you provided and swore was true and accurate to the best of your ability back in October of 2024, right?

A.    Apparently, yes, but I don't agree with it.  I was told

BRIANNA MENSING - CROSS

to sign something and I just signed it.  That's gotten me into a lot of trouble before.  Obviously, yes.

Q.    Do you recall signing this document in October of 2024?

A.    No, not really.  No.

Q.    When you signed it, did you look at it to make --

A.    No.

Q.    -- sure it was true and accurate?

A.    No.

Q.    Okay.  So when we looked at your verification saying everything in here is true and accurate, that wasn't exactly right, fair?

A.    Yes.

Q.    Because you hadn't actually looked at any of this?

A.    I didn't see that part.

Q.    Okay.  Do you have any idea how a description of the incident where the drive turns around and makes a statement that he wants to lick something would have gotten into your plaintiff fact sheet?

A.    I have no idea.

Q.    All right.  In December of 2024, Ms. Mensing, you had the opportunity to look at the information in your plaintiff fact sheet one more time and certify that it was true and accurate.  Do you recall that?

A.    No.

Q.    Let's take a look.

BRIANNA MENSING - CROSS

MS. BROWN:  Your Honor, permission to display P-4109, which is Tab 18 in the Court's binder.

THE COURT:  One moment, please.

MS. BROWN:  Yes.

And for the Court, it would again be at Number 9.

THE COURT:  Okay.  4019.

MS. BROWN:  Permission to approach.

THE COURT:  Page what?

MS. BROWN:  Nine, Your Honor.

THE COURT:  Page 9.

MS. BROWN:  Permission to approach the witness and display.

THE COURT:  Sure.

MS. BROWN:  Thank you.

BY MS. BROWN:

Q.   Now, Ms. Mensing, what I'm showing you that has been marked and admitted as D-4019, Mr. Delaney, if we can bring that up and look again at the first page, is the same document.  Do you see that?

A.   Yes.

Q.   All right.  And if we flip to the very last page of this document, you see this is verification that you electronically signed on December 16th of 2024.  Do you see that?

A.    I see that it says December 17th right there underneath

BRIANNA MENSING - CROSS

it, but -- and it says 16th, so I'm confused by that.  But yes, I see it.

Q.   All right.  And do you recall having the opportunity to review and give your electronic signature to this document that the information in it was true and correct?

A.   No, because that is not a day that I would be -- I wouldn't even be looking at it on that day.  That is a significant day to me, and I know that I would not have been doing that on that date.

Q.   Which one of those days is significant, the 17th?

A.   The 16th of December.

Q.   The 16th of December.  And we don't need to know why if it's personal.  But it's a significant date to you, right?

A.   Um-hum.

Q.   And so this document that we received in this lawsuit has your electronic signature and swearing that everything in it is true and correct, you believe that to be false?

A.   I don't believe that it was true.  I don't recall it.  I don't -- I don't -- I would not be signing things on that day.  Like, it's a bad day for me, and I would not be doing it.

Q.   If you look right under your signature, and maybe Mr. Delaney can help us to pull it up.  It looks like the electronic signature is dated December 17th, 2024.  Was that a significant day for you?

BRIANNA MENSING - CROSS

A.    No, not as significant as the 16th.

Q.    All right.  Do you have reason to believe that you are not the person who electronically signed this document with your name on December 17th, 2024?

A.    I can't say I did or didn't because I don't recall that at all.

Q.    Well, let's look at the description of the incident on this version of the document now a few months after the one we just looked at.  This is again page 9.  You see a similar Number 20 question asking you to describe the incident in your own words.  Do you see that?

A.    It's the same thing.  What number is it?  Yes, I see this.

Q.    Okay.  And, once again, the description that somebody swore was true and accurate says that the driver turned around, right?

A.    That's what it says.

Q.    And the description that somebody used your electronic signature to verify says that the Uber driver told me he wanted to --

        MR. BOUNDAS:  Your Honor, I'm going to object.  Someone used her electronic signature.  There's no evidence of that.  It didn't happen.

        THE COURT:  Sustained.

BRIANNA MENSING - CROSS

BY MS. BROWN:

Q.    This document that is certified with your electronic signature, ma'am, once again says the driver told you that he wanted to lick them, correct?

A.    That's what it says.

Q.    Okay.  And once again we're looking at a document with your electronic signature certifying truthful and accurate statements, and you believe these statements to be false?

A.    Yes.

Q.    Okay.  At some point you changed a number of things in the description of the incident, correct?

A.    I never changed anything that I said.  What that says is not ever what I said.

Q.    Okay.  Well, do you have any idea how it would have gotten into a document with your electronic signature?

A.    I would imagine it was through a computer.  I don't know.

Q.    All right.  Let's look at a version that contains different information, if we could.

        MS. BROWN:  Your Honor, permission to admit what is at Tab 19 in the Court's binder, D-4038.

        THE COURT:  And the page?

        MS. BROWN:  Your Honor, this would be at page 10.

        THE COURT:  Page 10.  Admitted.

        (Defendants' Exhibit Number D-4038 was received

BRIANNA MENSING - CROSS

into evidence and published.)

MS. BROWN:  Thank you, Your Honor.  Permission to approach the witness?

THE COURT:  Yeah.  Go ahead.

MS. BROWN:  Thank you.

And now, Mr. Delaney, if we could take a look at the first page of what's been admitted as D-4038.

BY MS. BROWN:

Q.   You see the same document, correct, Ms. Mensing?

A.   Yes.

Q.   If we look to the very, very last page, the verification here, this is your signature, not an electronic one, right?

A.   Yes.

Q.   And this is from July 9th, 2025.  Do you see that?

A.   Yes.

Q.   All right.  And if we flip to page 10, we have a description of the incident again.  Do you see that?

A.   Yeah.

Q.   All right.  And this time there's some additional and different information in the description.  Do you see that?

A.   Yes.

Q.   Okay.  Here it says, I got in the Uber vehicle and my Uber driver asked me to sit in the front seat.  Do you see that?

A.   Yes.

BRIANNA MENSING - CROSS

Q.   And we didn't see that in any of the prior versions, correct?

A.   Yes.

Q.   All right.  You talk here about the casual conversation and the Uber driver being friendly, correct?

A.   Yes.

Q.   Okay.  And here it says, When we made it to my destination, the Uber driver turned around -- still there right?

A.   What is?

Q.   Uber driver turned around, right?

A.   That's what it says, yes.

Q.   Okay.

A.   Yeah.

Q.   That's what you swore to be true and accurate, right?

A.   Apparently.  I did not read it word for word.  He did turn and grabbed my leg, yes, he did.  My upper thigh, inner thigh.

Q.   Well --

A.   He didn't turn around.  I didn't write this.  It's not my handwriting obviously.  It's (indicating).  He -- I didn't write that.  But that's more accurate than the last one.

Q.   All right.  Well, they all say that you certified they were true and accurate, so I'm just trying to understand how there might be some different versions.

BRIANNA MENSING - CROSS

THE COURT:  Well, I think you should finish reading the statement.

MS. BROWN:  Sure.  Sure.  Thank you, Your Honor.

BY MS. BROWN:

Q.   So when we made it to my destination, the Uber driver turned around and grabbed my inner thigh and said, Can I keep this with me?  Do you see that?

A.   Yes.

Q.   Okay.  And that's different than Can I lick them, right?

A.   Yeah.  It is very different because I did not say the first statement.  I said that.

Q.   All right.  All right.  And in terms of whether it was the upper thigh or the inner thigh, which one is right?

A.   I mean, there's only -- both, upper inner, inner thigh. I mean, he has big hands.  It was almost my whole thigh. What -- it was gross.  I don't know.  It was like what do you -- I don't understand what you're even asking me, really.

Q.   In terms of the statement that the Uber driver turned around in this incident description; is that right?

A.   That's what it says.

Q.   Yes, ma'am.

A.   If you're sitting in the driver's seat, you have to turn to grab somebody's leg, correct?  I might have said turned, not turn around like I'm in the back seat because I wasn't in the back seat.  That was all.  That's all I got to say about

138

BRIANNA MENSING - CROSS

that.

Q.   And the reason I ask, Ms. Mensing, is because in another version of this fact sheet you deleted that part.  You crossed it out.  Do you remember doing that?

A.   Which part?  Where he turned around?

Q.   Yes, ma'am.

A.   I just told you that it wasn't true.  I just said that I didn't say "turned around."  Correct?

Q.   So this part is wrong, correct?

A.   It is all correct until "turned around."  The "around," not accurate.

Q.   All right.

A.   I was not behind him.

Q.   Let's take a look at the final two.  There's one final cross out and a verification.

        MS. BROWN:  Your Honor, may we look at and admit D-4046, which is Tab 11 in the Court's binder at page 10?

        THE COURT:  Let's see.  It's Tab 6.

        MS. BROWN:  Tab 11, Your Honor.

        THE COURT:  Oh, Tab 11.  Page 10?

        MS. BROWN:  Yes, sir.

        THE COURT:  Okay.

        MS. BROWN:  And the exhibit number is D-4046.

        THE COURT:  And that's admitted.

        (Defendants' Exhibit Number D-4046 was received

139

BRIANNA MENSING - CROSS

into evidence and published.)

THE COURT:  What is the date of that?

MS. BROWN:  Your Honor, this has the same dated certification.  And I believe it took place at the deposition, which was the next day.  And then there's another version with a 2026 certification.

THE COURT:  Okay.  So this -- you believe that this occurred on what day?

MS. BROWN:  July 10th.

THE COURT:  Of?

MS. BROWN:  2025.

THE COURT:  July 10th of 2025.

MS. BROWN:  Okay.  Thank you.

THE COURT:  Admitted.  Admitted.  Admitted.

BY MS. BROWN:

Q.   Ms. Mensing, do you recall prior to having your deposition taken in this case you had the opportunity to look at this with your lawyer sitting next to you?

A.   On the 10th of July, is that what you're saying?

Q.   Yes, ma'am.

A.   I'm not sure.

Q.   All right.

A.   I mean, it's -- I don't -- I see it's got a date of the 9th on it.  I just signed it.  I assumed it would have been correct.

BRIANNA MENSING - CROSS

Q.   All right.

MS. BROWN:  Let's take a look at page 10, if we could, Mr. Delaney.

BY MS. BROWN:

Q.   Do you recall at your deposition, or just prior to your deposition, making further changes to the description of the incident?

A.   As in what?

Q.   It's up on the screen, ma'am.  It's also on page 10, if it's helpful.

A.   That's exactly what I just said.

Q.   And do you recall crossing out what had been in three prior versions that the Uber driver turned around?

A.   I just told you that he didn't turn around.

Q.   All right.

A.   That's why it says that.  That's why I scratched it out. Whoever was typing got it wrong.  I didn't type that out. So -- there's lack of communication.

Q.   Finally, ma'am if we can look at the last certified version we have?

MS. BROWN:  Your Honor, it's Tab 20.  Permission to admit and display 4045 at page 10.

THE COURT:  Okay.  And that is dated what day?

MS. BROWN:  February 24th, 2026.

THE COURT:  Admitted.

BRIANNA MENSING - CROSS

MS. BROWN:  Thank you, Your Honor.

(Defendants' Exhibit Number D-4046 was received into evidence and published.)

BY MS. BROWN:

Q.   Now, Ms. Mensing, we've looked at a number of different versions of this fact sheet here, and this is the very last one I want to show you.

MS. BROWN:  If we look, Mr. Delaney, at the last page of D-4045.

BY MS. BROWN:

Q.   We see a version that you certified not that long ago on February 24th of 2026.  Do you see that?

A.   Yes.

Q.   And, once again, this time we have your electronic signature, correct?

A.   Yes.

Q.   Similar to the electronic signature we saw on some of the forms you felt were inaccurate, correct?

A.   That's actually my signature.

Q.   All right.

A.   The other ones were not.

Q.   Okay.

A.   Those were obviously -- these ones right here, yeah -- not that one.

THE COURT:  So this is your signature.  Excuse me.

142

BRIANNA MENSING - CROSS

This is your signature, Ms. Mensing?

THE WITNESS:  The really ugly one, yes, that is my signature.

THE COURT:  And you are identifying 4045 at 10, the one that was dated February 24, 2026?

THE WITNESS:  Yes.

THE COURT:  Okay.  Thank you.

BY MS. BROWN:

Q.   And if we go to page 10 now on the most recent one, you'll see a description of the incident that now includes all the updates we've looked at.  Do you see that?

A.   Yes.

Q.   Now, we have your addition that the driver asked you to sit in the front seat, correct?

A.   Yes.

Q.   That he grabbed your inner thigh, correct?

A.   Yes.

Q.   And that he said, Can I keep this with me, correct?

A.   Correct.

Q.   And in terms of the earlier versions that we saw with different information that were certified under your signature, you believe those not to be accurate, correct?

A.   Correct.

Q.   And you don't know how it is that that information got in those documents under your signature?

BRIANNA MENSING - CROSS

A.   Correct, but -- okay.  So the ones that are wrong, that is a font.  That is not my signature.  It is just my name.  Just my name.

Q.   Do you --

A.   This is my actual signature.

Q.   Do you understand that that electronic signature was provided to us as yours?  Did anyone tell you that?

A.   I -- no.  I don't know.  I don't know.  How did I get this many of these?  When did this even -- like, this is insanity.  I wouldn't have signed the same thing so many times.

Q.   All right, ma'am.

A.   Especially the first two that were not correct.

Q.   Let's move on, Ms. Mensing.

A.   Okay.

Q.   I want to put up a picture that came up into evidence.

        MS. BROWN:  Actually, Mr. Delaney, could you bring up what is in evidence under the direct examination of P-04929.

BY MS. BROWN:

Q.   This is a picture, Ms. Mensing, of Mr. Richardson that your counsel put up during your examination.  Do you recall looking at this picture?

A.   Yes.

Q.   When -- did you -- who got this picture?  Where did this

197

BRIANNA MENSING - REDIRECT

A.   Yes.

Q.   Were you engaged in some plot to try to get all of these people to testify?

A.   No, I wasn't.

Q.   Let's talk about this thigh-licking business.  Do you remember all of that?

A.   Yeah.  I never said that one time.

Q.   Okay.  But I want to talk to you about it because it came up, right?  So remember they showed you what were called discovery responses?

A.   Yes.

Q.   And that one of them said -- two of them said something about licking the thigh, right?

A.   Yes.

Q.   First of all, have those words ever come out of your mouth about this incident?

A.   No.

Q.   Okay.  Did you type up those discovery responses?

A.   No.

Q.   Did you write them?

A.   No.

Q.   When you -- this was something that was actually typed up by somebody in our office, right?

A.   That was like over the phone, I'm assuming, because that's the first time I said anything to anybody.

198

BRIANNA MENSING - REDIRECT

Q.   Now, you read it, it's a mistake, right?

A.   Yes.

Q.   And when you got -- when you were getting ready for your deposition because, you know, Uber's lawyers were going to question you.  Do you remember that?

A.   Yes.

Q.   And you actually did then, at that point, look through these discovery responses more carefully, right?

A.   Yes.

Q.   All right.  And I'm going to show -- this was marked as an exhibit.  It was already shown.  It's the July 2025.

     So -- so this was right before your deposition, right?

A.   Yeah.

Q.   Okay.  And when you -- at that point you actually did a detailed review of this document, right?

A.   Yes.

Q.   Okay.

     And let me show you.  Did you correct mistakes in them?

A.   I sure did.

Q.   Let's take a look.  So page 3 --

     THE COURTROOM DEPUTY CLERK:  I'm sorry.  Exhibit number, please.

     It's on the front page.

     MR. BOUNDAS:  It's not on the front page of mine.

     THE COURT:  Is this 4046?

BRIANNA MENSING - REDIRECT

What are you showing the witness?

MR. BOUNDAS:  It's the July 2025.

THE COURT:  Oh, 4045.  D-4045.

THE COURTROOM DEPUTY CLERK:  Thank you.

MR. BOUNDAS:  Thank you, Your Honor.  My copy was an old one without a sticker, so.

BY MR. BOUNDAS:

Q.   Okay.  So looking at 4045, did you -- at that point when you were getting ready to be questioned by Uber's lawyers, did you go through and actually correct mistakes?

A.   Yes.

Q.   Okay.  This whole thing about the thigh licking, was it just a mistake?

A.   Yes.

Q.   Okay.  Let's keep going.  Page 4.  You crossed some things -- is that your handwriting?

A.   It sure is.

Q.   So you fixed those, right?

A.   Yes.

Q.   Page 5, fixed that?

A.   Definitely my handwriting, yes, sir.

Q.   Okay.  Let's go to page 10, which is this.  So here when we're talking -- you were talking about the incident, you actually read what was written there that you did not type, right?

BRIANNA MENSING - REDIRECT

A.    Correct.

Q.    And you actually corrected it yourself, right?

A.    Correct.

Q.    To make it --

A.    Correct, yes.

Q.    And, you know, Uber's lawyers -- lawyer, Ms. Brown -- were showing you all of these typewritten documents about what you -- well, about what somebody else wrote about what you said, right?

A.    Correct.

Q.    They didn't show you the actual testimony that you gave under oath, did they?

A.    No.

Q.    And when they asked you under oath what you -- what the driver said to you, you said the same thing you told the jury, right?

A.    Correct.

Q.    And when they had a psychiatrist interview you, did she record that interview?

A.    Yes.

Q.    Okay.  And on that recorded interview, did you tell her the same thing you told the jury?

A.    Yes.

Q.    Okay.  So have the words ever from you, Brianna, ever to anybody -- friend, family, lawyer, psychiatrist, me, jury --

201

BRIANNA MENSING - REDIRECT

ever changed?

A.   No.

Q.   Did you ever tell anyone that the driver said he wanted to lick your thigh?

A.   I've never said those words ever.

Q.   Just a couple more questions.

You were asked -- well, I want to ask you this question.

Can both of these two statements be true:  Is it true that you've used drugs and alcohol throughout your life?

A.   Yes.  It started at a very young age.

Q.   Okay.  Can the second statement also be true, that you were assaulted by Uber's driver in March of 2019?

A.   Yes.

Q.   And you were asked about drugs and alcohol and how they affected your memory, right?

A.   Yes.

Q.   Do you remember lots of things in your life?

A.   Yeah.

Q.   I mean, it's not like you're walking vacant.  You know your son's birthday, right?

A.   Yes.

Q.   You just told the jury Neal's address from six years ago off the top of your head, right?

A.   Yes.

Q.   And does your use of drugs and alcohol, does that