# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | **JOINT PTO 8 LETTER REGARDING DEFICIENT PRODUCTIONS BY PLAINTIFF B.L.** |
| *B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G - 15th Floor |

Dear Judge Cisneros:

　　Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding deficient productions by Plaintiff B.L.

DATED: April 26, 2026　　　　　　　　　　　　Respectfully Submitted,

By: */s/ Roopal P. Luhana*
　　ROOPAL P. LUHANA (*Pro Hac Vice*)
　　**CHAFFIN LUHANA LLP**
　　600 Third Avenue, Fl. 12
　　New York, NY 10016
　　Telephone: (888) 480-1123
　　Email: luhana@chaffinluhana.com

　　SARAH R. LONDON (SBN 267083)
　　**GIRARD SHARP LLP**
　　601 California St., Suite 1400
　　San Francisco, CA 94108
　　Telephone: (415) 981-4800
　　Email: slondon@girardsharp.com

　　RACHEL B. ABRAMS (SBN 209316)
　　**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
　　555 Montgomery Street, Suite 820
　　San Francisco, CA 94111
　　Telephone: (415) 426-5641
　　Email: rabrams@peifferwolf.com

　　*Co-Lead Counsel for Plaintiffs*

By: */s/ Laura Vartain Horn*
　　**KIRKLAND & ELLIS LLP**
　　ALLISON M. BROWN (*pro hac vice*)
　　Alli.brown@kirkland.com
　　JESSICA DAVIDSON (*pro hac vice*)
　　Jessica.davidson@kirkland.com
　　LAURA VARTAIN HORN
　　Laura.vartain@kirkland.com

　　**O'MELVENY AND MYERS LLP**
　　SABRINA H. STRONG
　　sstrong@omm.com
　　JONATHAN SCHNELLER
　　jschneller@omm.com

　　*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**Uber's Position:**

Plaintiff has engaged in a months-long campaign of concealing relevant information by applying baseless and pervasive redactions across her production. Plaintiff is well aware of her obligation to produce all documents "RELATED TO THE ALLEGED INCIDENT" in full—not merely those portions she deems favorable. Ex. B (Uber's RFPs, Set One) at Nos. 2-3; *see also* Ex. C (10/16/25 Benfield Email). Yet, rather than comply with those obligations, Plaintiff has cherry-picked which information she wishes to provide Uber, while unilaterally withholding or redacting other evidence that is directly probative of her claims and Uber's defenses. *See, e.g.*, Ex. D (Email Thread). This misconduct has become even more apparent during the course of submitting this PTO 8 letter brief to the Court, because on April 1, Plaintiff finally produced unredacted versions of certain communications with a previously undisclosed therapist that are not only highly relevant but underscore that Plaintiff's redactions lack any legitimate basis.[1] Rather than attempt to defend the serious discovery misconduct outlined by Uber in this letter brief, Plaintiff instead attempts to deflect and somehow blame Uber for her own misconduct. Plaintiff's resort to personal attacks does not somehow absolve her for her prolonged discovery misconduct. To be clear, Uber also intends to separately seek sanctions before Judge Breyer for Plaintiff's misconduct and the prejudice it has caused.

Compounding this misconduct, Plaintiff served multiple versions of a privilege log with the same flawed application of law and authorities that do not support her redactions. In fact, several versions of the privilege log rely on citations to cases that ***do not exist at all.*** Ex. E (Old Privilege Logs). In an effort to remedy this clear misconduct,[2] Plaintiff provided a sixth iteration of her log that removed the hallucinated citations and simply asserts privilege with no supporting cases at all.[3] At a conferral on April 6, 2026, Uber asked Plaintiff's counsel if they used AI to create their privilege log. Plaintiff's counsel declined to answer.

Uber raised these issues with Plaintiff repeatedly over the course of several months and conferred with Plaintiff on multiple occasions in an effort to resolve the dispute without Court intervention. *See, e.g.*, Ex. F (2/23/26 Benfield Email); Ex. C (10/16/25 Benfield Email). During those discussions, Plaintiff conceded that redactions she applied to messages between Plaintiff and at least ***eight*** other witnesses were improper. Ex. G (2/24/26 Guidry Email). But despite this concession, Plaintiff has not removed the redactions from those messages or acknowledged the full scope of the unjustified redactions across communications with multiple additional witnesses. Uber has made all reasonable efforts to secure the productions from Plaintiff, but its efforts have only been met with delay. Because there is no valid basis for the redactions and omissions, the Court should compel Plaintiff to produce complete, unredacted documents immediately.[4] Uber also intends separately to seek sanctions for Plaintiff's misconduct before Judge Breyer.

**Improper Relevance Redactions.** Plaintiff's privilege log purports to rely on the so-called "privilege" over "irrelevant personal communication under Fed. R. Civ. P. 26(b)(1)" and "third-

---

[1] *Compare* Ex. I (B.L. - SMS - ███████ - 000001 – 000004 as produced 7/16/25) *and* Ex. J (B.L. - SMS - ███████ - 000001 – 000014 as produced 2/24/26) *with* Ex. K (B.L. - SMS - ███████ - 000001 – 000014 as produced 4/1/26).

[2] Citations to fabricated cases in court filings violate the Federal Rules and the California Code of Conduct and are a sanctionable offense serious enough in some cases to lead to disbarment. *See, e.g.*, *Malkeet LNU v. Bondi*, 2025 U.S. App. LEXIS 29108, at *3 (9th Cir. Nov. 4, 2025); *Kessler v. City of Atwater*, 2025 U.S. Dist. LEXIS 132834, at *1-12 (E.D. Cal. July 11, 2025). The same policy applies to using such citations in legal documents and communications shared between counsel.

[3] Plaintiff's new assertion that these cases were "not directly on point" is a massive understatement. The *Purdue* case does not discuss discovery *at all*, let alone redacting PII in discovery as Plaintiff represented. And *Artis v. Deere & Co.*—which Plaintiff *still* cites incorrectly—concerns discovery of putative class members and found that such discovery *was warranted*. 276 F.R.D. 348, 353 (N.D. Cal. 2011).

[4] For ease of reference, an index of the deficiencies for each document is attached as Ex. A.

1

party privacy." Ex. H (Updated Privilege Log). This is not a valid privilege.[5] *See, e.g., Francisco v. Emeritus Corp.*, 2017 WL 11036693, at *6 (C.D. Cal. Sept. 5, 2017) (The Rules "do not grant parties the power to unilaterally redact information on the basis of relevance."); *Found. for Global Sports Dev. v. U.S. Olympic Comm.*, 2021 U.S. Dist. LEXIS, 252941, at *25-26 (C.D. Cal. June 24, 2021) ("Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive[.]").

Regardless, it is obvious that these communications ***are*** responsive to Uber's requests and relevant to the claims and defenses in this action. For example, in one thread with a contact named ▮▮▮, Plaintiff writes, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮" Ex. L (BL-SMS-JH00001) at 1. Less than 30 seconds later, ▮▮▮ responds, but Plaintiff redacts that response. *Id.* In the same document, Plaintiff writes, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮" *Id.* at 2. Plaintiff's next message, sent 26 seconds later, is redacted. *Id.* at 3. Then she adds, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* The relevance of these messages is undeniable and Plaintiff's redactions are a clear tactic to hide communications regarding the alleged incident from Uber.

**Improper "Privacy" Redactions.** Plaintiff has also applied significant redactions to key documents, including email messages where she discusses the alleged incident. Ex. D (B.L.-Email Communications-000001-6) at 3 (an email describing the alleged "sexual[] assault[] in an Uber" and related "police report" redacting an entire paragraph of text). She contends that these redactions were made "for privacy protections pursuant to Fed. R. Civ. P. 26(c)." Exs. E and H (Privilege Logs). This argument is similarly unavailing. The proper procedure for privacy protections is to mark such material "CONFIDENTIAL" in accordance with the Protective Order entered by the Court. *See* ECF 176 at § 2.3. Plaintiff knows this because the provision of the Federal Rules she cites in support of her claims of privilege merely allows a party to seek a protective order—it does not contemplate unilaterally applying redactions to produced documents.

**Improper Minor Redactions.** Likewise, Plaintiff's assertion that Fed. R. Civ. P. 5.2(a) "require[s] redaction of identifying information of minors" is incorrect. Exs. E and H (Privilege Logs). This rule concerns filings on a court docket, ***not discovery material***. *Id.* Even if the rule were applicable, it requires substitution of sensitive identifiers with less revealing ones (e.g., initials rather than a minor's full name) so that parties can identify the relevant persons while protecting sensitive data. Plaintiff offers no such substitute. *See, e.g.*, Ex. M (B.L.-SMS Pa.L.-000001-12). Accordingly, Plaintiff provides no support for the redactions.[6]

**Failure to Produce Complete Records.** In some cases, Plaintiff intentionally ***excluded*** certain messages from documents. For example, in Instagram messages with ▮▮▮▮▮▮▮, Plaintiff writes, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. N (B.L.-Instagram Messages M.G.-000001) at 1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, Plaintiff's discussions concerning these ▮▮▮▮▮▮▮▮▮ are clearly responsive. Yet, all of the prior messages, including the "rant" Plaintiff describes, are cut off in the screenshots Plaintiff provides.



Text message threads were similarly produced in a concerning manner. Plaintiff previously produced her texts with ▮▮▮▮▮▮▮ as Ex. O (B.L. SMS-▮▮▮▮▮▮▮▮-00001-4). This document appeared to be one thread beginning on August 14, 2022 and ending August 17, 2022, where Plaintiff discusses the alleged Uber incident. The thread included a "Message Count" showing 68 messages, but only 48 messages appeared. When Plaintiff produced Ms. ▮▮▮

---

[5] As the Court previously noted, discoverable material must be produced "regardless of whether Plaintiff perceives [its] relevance." ECF 3675.

[6] Uber is sensitive to the nature of the claims in this case and the information being produced, but the Protective Order—not Plaintiff's unilateral judgments—is what protects confidential information.

texts again in February, it became clear that Plaintiff had simply removed certain messages from the document *without any explanation.* Ex. P (B.L. SMS-█████████-000001-6).

Plaintiff's conduct regarding texts between herself and ██████████ is even more problematic. On July 16, 2025, Plaintiff produced texts with Ms. █████ that were missing 121 of 162 messages in the thread. Ex. I (B.L. - SMS - ██████ - 000001 - 000004 as produced 7-25-2026). In February 2026, Plaintiff produced the missing messages, but redacted nearly everything other than what appeared to potentially support her case. Ex. J (B.L. - SMS - ██████ - 000001 - 000014 as produced 2-25-2026). Then, on April 1, 2026—a few days after receiving Uber's position on this issue—Plaintiff produced the entire thread without redactions. Ex. K (B.L. - SMS - ██████ - 000001 - 000014 as produced 4-1-2026). The content of those messages makes Plaintiff's obfuscation even more striking. Not only do the messages reveal Ms. █████ to be Plaintiff's mental health provider (despite previously being identified as a "friend"), but they include a striking admission from Plaintiff that she was "██████" over the Uber driver—an admission Plaintiff's counsel wrongfully withheld from Uber for nearly a year.

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Shockingly, Plaintiff's counsel has stated in conferrals that she "stands by the redactions previously made," asserting that this text thread is somehow not relevant or discoverable. All of this confirms Uber's longstanding concerns: that discovery is being withheld in bad faith and without justification and that there are likely to be other, highly relevant messages yet to be produced.

**No Countervailing Policy.** Plaintiff's counsel has admitted that they imaged Plaintiff's phone. Thus, there is no burden on Plaintiff to collect any of the messages identified in Ex. A. And any burden in producing complete and unredacted documents is minimal, particularly when weighed against the apparent probative value of the discovery material and in light of Plaintiff's bad-faith efforts to conceal information in clear contradiction of applicable law.[7]

In sum, Plaintiff has continually produced wholly deficient discovery accompanied by meritless and, in some cases, false legal justifications. This Court should require Plaintiff to cure her deficient productions by removing the identified redactions and producing complete documents without making any determinations of relevance or false claims of privilege.

---

[7] Attempting to shift blame for her own misconduct, Plaintiff raises entirely unrelated and baseless accusations that Uber violated the Protective Order in this case during a deposition of ██████████. The record is clear, Ex. Q (P.L. Dep. 23:4-36:15), and Plaintiff's smokescreen should not distract from her misconduct and obfuscation.

**Plaintiff's Position:**

Uber believes that they are entitled to unfettered access to Plaintiff's personal and highly sensitive information.  Not so.   Uber seeks information that is not only non-responsive to any discovery that was propounded in this case but also personal and private information (both of Plaintiff as well as third parties and minor children) that are protected from disclosure and admissibility due to the sensitive nature and which is completely devoid of any probative value that may come close to outweighing the obvious prejudice.

Uber raise numerous accusations against Plaintiff but fails to provide the Court with the necessary context, including the relevant history of the litigation of this case (and the litigation tactics employed by Uber).  To start, Uber's allegations above bears repeating what should be obvious (including to Uber): Plaintiff came forward to hold Uber accountable for its actions and omissions that lead to Plaintiff being raped by an Uber driver.  Uber's response has been to use the discovery process to embarrass, humiliate, oppress, and harass – both here with B.L. and more generally.  For B.L., that has meant humiliation through the disclosure of highly sensitive and personal information to third parties in violation of the Protective Order entered in this case; the loss of treating providers after those treating providers underwent condescending and unnecessarily aggressive deposition questioning by Uber; the realization that ███████████ ████████████████████████████████████████████, was told *by Uber* in a deposition that ███████████████████████████████████████████████████████████; and, ███████████ █████████████████████████████████████ that *have no relationship* to the rape by the Uber driver.

Throughout this litigation and despite discovery practices intended to embarrass and oppress, Plaintiff B.L. has produced hundreds of pages of personal text messages, medical records, emails, and social media posts. Not only has B.L. disclosed incredibly personal messages in response to Defendants' discovery requests but has *continued* to provide information for over a year even though the vast majority of Plaintiffs' productions go far beyond the scope of both Defendants' requests and permissible discovery.  Despite these good faith efforts, it is apparent that Uber will not be satisfied until they achieve the goal of unfettered access (or, alternatively, B.L. drops her claims).  That goal became readily apparent when during the most recent meet and confer videoconference, Uber began the conversation by stating that there was no solution they believed was appropriate and threatened sanctions on multiple occasions prior to Plaintiff having an opportunity to address the issues.  Plaintiff offered potential processes that could alleviate the concerns raised by Uber, which were never even acknowledged by Uber.  The ultimate goal here is not a reasonable resolution but instead are an unrelenting quest to continue to embarrass and harass and oppress the Plaintiff.

In an effort to work with Defendants, Plaintiff has spent hours re-reviewing redactions and providing supplemental disclosures. Plaintiff has also produced all information on *all* social media topics, despite much of that information being beyond the scope of discovery in this case.[8]   The

---

[8]    Plaintiff's disclosure of information is not a waiver of any arguments regarding relevancy or admissibility.

4

result of these efforts has proven to be Uber using B.L.'s highly personal and private information and inappropriately disclosing the same to third parties in a flagrant disregard of the Protective Order entered in this case.[9] This only stands to confirm the importance of appropriate redactions to prevent the production of sensitive information that has been used by Defendants to harass, embarrass, and oppress Plaintiff.

Uber fails to acknowledge that Plaintiff has fully complied and responded to the discovery Uber has chosen to propound in this litigation.  As relevant to this letter brief, Defendant propounded discovery requests seeking the production of documents, which included: RFP # 2 – production of "all communications related to the alleged incident that you have had with any person;" RFP # 3 – production of "all documents about or relating to the alleged incident, including but not limited to documents that describe, document, identify, or depict the alleged incident;" RFP #8 – production of "all communications you have had with any person regarding the emotional distress you claim as a result of the alleged incident;" and RFP #15 – production of "all documents and communications on social media that were posted or sent by you, or directed to and received by you, from the date of the alleged incident to the present relating to the alleged incident, regardless of whether the information is publicly available or requires a password and login in access".[10]

To confirm for the Court that Plaintiff has complied with her discovery obligations, Plaintiff has prepared the attached chart, which provides specific information regarding the nature of the redactions complained about by Defendant. *See* **Ex. 2**, Chart of Messages Disclosed. Many of Uber's representations are simply incorrect.  For example, Uber attempts to classify S.S. as a "mental health provider". This is simply untrue.  S.S. represents herself to be a "███████████ ███████████████████████████████████████".[11] In addition, through the meet and confer process, B.L. voluntarily removed redactions to hundreds of unrelated messages, which included exchanges involving scheduling time with family or arranging get-togethers with friends. Uber also fails to advise the Court that the content and substance of the messages that have been disclosed by Plaintiff has also been disclosed – in similar detail and description – through the expert report of Mindy Mechanic, which Uber initially received on September 26, 2025.  Dr. Mechanic is scheduled to sit for a second deposition in the B.L. case on April 11, 2026.

Plaintiff remains committed to working in good faith to assure both Uber and this Court that all relevant information has been disclosed.  To that end, Plaintiff has proposed that the parties negotiate a search term protocol that can be used to search through all text messages and ensure

---

[9] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See* PTO 8 Letter re: Further Depositions (filed concurrently herewith).

[10] Plaintiff has continued to provide updated discovery responses a new information has become available, including as recently as March 31, 2026. See **Ex. 1**, Plaintiff's Discovery Responses.

[11] ████████████████████████████

that complete disclosure of relevant information is produced. Plaintiff is confident that this process could be completed efficiently and within a reasonable time frame and will resolve Defendants' overwrought concerns.

Finally, Uber raises a concern regarding a few case citations identified in Plaintiff's privilege log produced over a year ago. To be clear, Plaintiff's privilege logs have sometimes identified both the information being withheld and the basis for the redaction, as well as references to case law. Some of the case citations in privilege logs produced over a year ago were incorrectly cited or not on point.[12] Once this issue was brought to counsel's attention, the privilege log was amended to remove the referenced citations and add appropriate cases for the privileges being asserted. The privilege logs correctly identified the basis for redaction (e.g., privilege, privacy, or outside the scope of permissible discovery) from the start, and citation to case law is not a required feature of privilege logs.[13] Counsel regrets any error and commits to ensuring that any case law cited in a privilege log is correctly cited.

---

[12] Plaintiff cited to (a) *Artis v. Deere & Co.,* No. 20-cv-07385-BLF, 2022 WL 178130387, at *3 (N.D. Ca. Dec. 9, 2022); the correct citation for this case is *Artis v. Deere & Co.*, 276 FRD 348 (N.D. Cal. 2011) and (b) *Doe v. Purdue Univ.*, No. 20-cv-05672- YGR, 2021 WL 5023916 *2 (N.D. Cal. October 28, 2021); the correct citation for this case is *Doe v. Purdue Univ.,* 928 F.3d 652 (7th Cir. 2019).

[13] *See generally* Advisory Committee Note to Fed R. Civ. P. 26(b)(5)(A) (noting that "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection"); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1147-49 (9th Cir. 2005) (noting that "[t]his circuit has held that a privilege log is *sufficient* to properly assert the privilege, without explicitly holding that it is *necessary*"); *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) ("We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach.").

**FILER'S ATTESTATION**

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April 26, 2026

By: */s/ Laura Vartain Horn*