**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | **JOINT PTO 8 LETTER REGARDING CUSTODIAL FILES AND DEPOSITIONS OF UBER'S WAVE 1 LIVE TRIAL WITNESSES** |
| ALL MATTERS | Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G - 15th Floor |

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding outstanding Plaintiffs' request for discovery regarding custodial files and depositions of Uber's Wave 1 live trial witnesses.

DATED: April 28, 2026                    Respectfully Submitted,


By: */s/ Elizabeth Wilkins*

ROOPAL P. LUHANA (*Pro Hac Vice*)
ELIZABETH WILKINS (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com


SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com


RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111

By: */s/Christopher Cox*

CHRISTOPHER D. COX (*Pro Hac Vice*)
Jessica Davidson (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
christopher.cox@kirkland.com
jessica.davidson@kirkland.com


Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com


Allison M. Brown (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103

Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

Telephone: (215) 268-5000
alli.brown@kirkland.com

*Co-Lead Counsel for Plaintiffs*

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER,
LLC, And RASIER-CA, LLC

**<u>Plaintiffs' Position:</u>**

The discovery process is intended to prevent trial by ambush. Yet Uber has repeatedly prejudiced Plaintiffs at trial by calling or seeking to call surprise witnesses it did not disclose as individuals likely to have discoverable information in its Rule 26 disclosures, for whom Uber did not produce custodial files, and who have not testified in their individual capacity (or testified at all). Without full custodial files and pretrial depositions, Plaintiffs are at substantial disadvantage during cross-examination at trial. *<u>In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.</u>, 2025 WL 2962453, at \*3 (N.D. Cal. Oct. 20, 2025)* (requiring defendants to produce custodial files for witnesses disclosed as trial witnesses who were not disclosed under Rule 26, even though the request for custodial files occurred months after the close of discovery and after 30(b)(6) depositions of those witnesses).

For the reasons below, Plaintiffs therefore request that the Court order Uber to:
1) supplement its Rule 26 Initial Disclosures within 7 days of the Court's Order, produce custodial files for newly-disclosed witnesses within 30 days of the Court's Order, and produce newly-disclosed witnesses for deposition within 60 days of the Court's Order;
2) produce custodial files for Chad Dobbs, Emilie Boman, Todd Gaddis, and Erin O'Keefe within 30 days of the Court's Order; and
3) produce Sachin Kansal for a 4-hour deposition within 30 days of the Court's Order.

Shortly before the recent *Mensing* trial, Uber identified Erin O'Keefe and Todd Gaddis as live trial witnesses. Uber has not produced either witness's custodial file. Uber absurdly claims that because it produced 90 documents "relating to" O'Keefe and around 5,000 "relating to" Gaddis, "Plaintiffs already possess ample documents from each of the identified trial witnesses...". But Uber does not dispute that it has produced *no* substantive documents involving O'Keefe—indeed, most if not all the documents relating to O'Keefe are calendar invitations or acceptances. Further, O'Keefe has never been deposed and before identifying her as a witness in *Mensing* trial, Uber had never identified her as a potential witness or person with relevant information, including in its Rule 26 disclosures. Uber likewise did not disclose Gaddis in its Rule 26 disclosures and likewise exaggerates the sufficiency of its document production for Gaddis. Uber has produced fewer than 400 documents that Gaddis actually authored and arguably none that would support his later purported testimony. And of those 400 documents, nearly 70% are spreadsheets of dense data that are meaningless without a deposition to understand their contents. Moreover, although Gaddis has given 30(b)(6) testimony, he has never been deposed in his individual capacity. Because Gaddis appears to be one of Uber's repeat, star witnesses at trial, it would be unfair for Uber to continue to call a witness so central to its case without giving Plaintiffs an opportunity to review his custodial file and depose him personally.

Uber likewise has not produced custodial files for Chad Dobbs and Emilie Boman, witnesses Uber called live at the *Dean* trial. Although they provided 30(b)(6) testimony, neither was deposed in their individual capacity and their trial testimony went well beyond the scope of their pre-trial depositions. For example, although Dobbs' 30(b)(6) testimony was limited to topics related to increasing the number of Uber riders and drivers, he offered trial testimony on a wide range of topics including Uber's purported safety features, driver background checks, and case-specific onboarding of Dean's driver (in fact, Uber produced other witnesses on these topics). Similarly, Boman was designated to give 30(b)(6) testimony about Uber's costs and expenditures

spent for its transportation network, Uber's costs and expenditures spent for the purpose of preventing sexual assault and sexual misconduct, and Uber's payments to nonprofit organizations. During Boman's deposition, Uber's counsel objected to questions about the timing, motivation, and content of Uber's Safety Reports as beyond the scope of Boman's designation. Yet at trial, Uber elicited extensive testimony about its Safety Reports from Boman; in fact, Boman was Uber's primary witness on Safety Reports. Further, although Boman Uber did *not* designate Boman on Uber's Women Preferences Program and instead provided other witnesses on that topic, thus, Plaintiffs did not question her on that topic. Yet at trial, Uber elicited extensive testimony from Boman about the program.

Uber also called Sachin Kansal live at the *Dean* trial. Although Uber produced Kansal's custodial file, Uber objected to Plaintiffs' efforts to depose Kansal before trial, arguing under the Apex doctrine that Kansal had "no unique personal knowledge of the facts at issue" in this litigation and "[did] not possess unique personal knowledge about Uber's safety measures and practices that Plaintiffs allege were inadequate." (ECF 2425 at 18). Further, Kansal filed a declaration, signed under oath, stating that he was "not responsible for responding to or investigating incidents of any nature between drivers and riders," was "not involved with reviewing driver background checks," does "not make decisions regarding rider or driver account deactivations," and is "not uniquely involved in the development, implementation, or execution of the safety measures and practices that are the focus of Plaintiffs' lawsuits," and "[a]ny knowledge [he] may have of those matters would be information that would have been reported to [him] by other executives or others directly responsible for those matters." ECF 2424-7 at ¶ 7.

Although Uber did produce Kansal for a limited deposition, given his sworn statements, Plaintiffs narrowed their already limited deposition time to exclude topics on which he disclaimed personal knowledge. However, at trial, Kansal testified on matters he had previously sworn to have no knowledge about. For example, given that Kansal claimed that he was "not involved with" investigating sexual assault reports by riders, Plaintiffs were surprised to learn at trial that Kansal, in his role as Chief Products Officer, had conversations with survivors of sexual assault on the Uber platform. And despite claiming that any knowledge he had about sexual assault incidents on the Uber platform and measures that Uber implemented to prevent them would have come only from other Uber employees, Kansal testified that as a result of what he learned through his *personal* conversations with survivors,  he and Uber made changes to address safety concerns.

Uber's refusal to produce custodial files for trial witnesses is contrary to authority from *this jurisdiction* that is directly on point. Ignoring that authority, Uber is instead reduced to reliance on trial court opinions from outside of this circuit. But as The Honorable Peter H. Kang, Magistrate Judge, determined recently under factually analogous circumstances, if a defendant lists witnesses on its trial witness list for whom the defendant has never produced custodial files, it must produce those custodial files before trial.  *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig., 2025 WL 2962453, at \*3* ("The failure to search and produce responsive documents from these files does deprive Plaintiffs of the opportunity to determine whether there are documents in those custodial files which substantially contradict, undercut, rebut, or merely even weaken the defenses.)". This is true even if the witness has provided testimony under Rule 30(b)(6) and even if the request for the custodial file comes well after the discovery cutoff. *Id*.

Likewise, Uber's claim that depositions are unwarranted is undercut by Judge Breyer's

orders in *this litigation*, specifically with respect to Gaddis. Uber pulled him down as a witness in the *Mensing* trial only after Judge Breyer ordered an eleventh-hour deposition that would have occurred hours before he was to testify at trial on Thursday. Notably this was the second time Uber advanced Gaddis as a trial witness on topics for which he was undisclosed and un-deposed, and the second time Judge Breyer required his deposition the day prior to trial. *Dean* trial.[1] This is exactly the type of prejudicial conduct that pretrial discovery rules are intended to prevent.

Without a witness's custodial file, Plaintiffs are limited in their ability to evaluate and understand the entire scope of the witness' role at Uber and may be deprived of documents that might be used to probe the witness' recollection, show their bias, or importantly, to impeach the witness. Similarly, where witnesses are permitted to testify at trial without a pretrial deposition (or beyond the scope of their pretrial deposition) Plaintiffs are deprived of the opportunity to fully discover their testimony before trial. This greatly prejudices Plaintiffs' ability to prepare a complete cross examination of Uber's live trial witnesses and undermines a key purpose of pretrial discovery- to avoid surprise.

## II.      Uber's Position:

Plaintiffs' claims of prejudice and ambush have no merit. Across two trials, Judge Breyer has ensured that Plaintiffs have had a fair opportunity to prepare for the trial testimony of all of Uber's disclosed witnesses. Plaintiffs' requests that Uber prematurely disclose trial witnesses through the guise of a Rule 26 supplementation, produce "full custodial files" of future trial witnesses (as well as Boman, Dobbs, Gaddis, and O'Keefe), and tender Kansal for an additional deposition are unsupported by good cause and should be rejected.

### A. Plaintiffs' Requests For Custodial Files Of All Live Trial Witnesses Are Overreaching And Not Supported By Good Cause

Plaintiffs claim that they have been and will be "greatly prejudice[d]" and "ambush[ed]" at trial without production of full custodial files of of unnamed future trial witnesses and specific individuals (Boman, Dobbs, Gaddis, and O'Keefe) who were disclosed at *prior* trials. This claim ignores that: (1) courts (including this one) have found that full custodial files are not warranted to impeach and cross-examine a trial witness and (2) Plaintiffs already have a wealth of documents and testimony relating to these witnesses and/or topics of their trial testimony. There is no basis to credit Plaintiffs' speculative assumption that they are at a "substantial disadvantage" without access to "full custodial files." Indeed, Judge Breyer already has denied requests to preclude Dobbs, Gaddis (twice), and O'Keefe from testifying at trial on the same grounds raised here: that Plaintiffs would be "prejudiced" by the trial testimony because, *inter alia*, their custodial files were never produced. *See* ECF 4740, 5486. The Court should reach the same result again and deny Plaintiffs' overbroad requests.

*First*, as courts have expressly recognized in denying similar requests, plaintiffs are not "entitled to custodial files (i.e., ESI) of each witness whom [a defendant] intends to call in support of its case." *In re Simply Orange Orange Juice Mktg. & Sales Pracs. Litig.*, No. 4:12-md-02361-FJG, 2018 WL 522785, at *2 (W.D. Mo. Jan. 23, 2018). Asking for full custodial files "for impeachment" or cross-examination purposes—as Plaintiffs do here—"is not a good reason to compel the production of a witness's emails and hard drive," "particularly when considering the

---

[1] Uber only declined to call Gaddis during the *Dean* trial after documents that demonstrated how he investigated the subject at hand were disclosed as a result of Judge Breyer's order.

proportionality concerns outlined in Fed. R. Civ. P. 26(b)(1), where the burden and expense of such production certainly must outweigh the likely benefits of such production." *Id.*; *see also In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:14-mn-00001-DCN, 2015 WL 4167786, at *2 (D.S.C. July 9, 2015) (denying plaintiffs' motion to compel production of custodial files for 12 witnesses; such discovery "will not only take time, but also cause [defendant] to incur significant expenses.").

This is all the more true for witnesses who have been (or will be) designated to testify about limited and case-specific issues. In the single case cited by Plaintiffs–-*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 2962453, at *3 (N.D. Cal. Oct. 20, 2025)–-the court ***denied*** plaintiffs' request for production of full custodial files for two witnesses, noting that the production "would necessarily reach more expansive topics" than the witnesses would speak on at trial. *Id.* at *4. Although the court ordered production of documents "appropriately limited" to search terms that encompassed the "scope of the Rule 30(b)(6) topics" on which the witnesses were designated to speak, *id.*, that holding is inapposite because Plaintiffs here do not (and cannot) claim that they have no documents from 30b6 witnesses on their noticed topics. Instead, Plaintiffs attempt to cast specific witnesses (Boman, Dobbs, Gaddis, and O'Keefe) as "star" and "primary" trial witnesses to justify wholesale production of their documents on topics the witnesses may (or may not) testify about. But given that Uber's trial strategy remains subject to change, Plaintiffs' speculation about who may testify about what in the future and their bare claim that they need ***all*** documents "to impeach the witness[es]" is flatly insufficient to subject Uber to such burdensome discovery. *In re Simply Orange*, 2018 WL 522785, at *2. And in any event, Plaintiffs mischaracterize the witnesses' trial testimony. For example, Plaintiffs call Gaddis a "a witness [] central to [Uber's] case," but in *Dean*, Gaddis was designated to testify on a very limited issue that arose late in discovery due to an erroneous inference by Plaintiffs' expert—the meaning of a few entries in the driver's extensive mobile events log. Gaddis was deposed individually for 3 hours, allowing Plaintiffs to sufficiently explore the scope of his anticipated testimony, and ultimately never testified. Production of the full custodial file of Gaddis—one of Uber's longest-tenured employees——would have been (and remains) overkill and disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

***Second***, Plaintiffs' custodial files request ignores the broader discovery landscape. Uber's document production ***exceeds 5.5 million pages***, drawn from an agreed-upon list of 55 custodians (representing every relevant functional area of Uber) and other sources. While Uber has not produced full custodial files for Boman, Dobbs, Gaddis, and O'Keefe, Uber has produced documents relating to these individuals (including documents to and from them) from their custodian colleagues, including over 11,000 relating to Boman; more than 2,000 relating to Dobbs; over 5,000 relating to Gaddis; and approximately 90 relating to O'Keefe. Moreover, Plaintiffs – through Uber's vast document production – have available abundant documents regarding the subject matter of each witness's anticipated testimony. Production of full custodial files would result in needless duplication at significant burden and expense to Uber. *See, e.g.*, *In re Pella Corp.*, 2015 WL 4167786, at *2 (denying plaintiffs' motion to compel production of custodial files, noting "plaintiffs are not without any files" concerning witnesses).

Despite this extensive discovery, Plaintiffs claim Boman, Dobbs, Gaddis, and O'Keefe are "surprise witnesses" because they were not disclosed in Uber's Rule 26 initial disclosures. But as Plaintiffs' cited case makes clear, Rule 26(e)(1) only requires supplementation "if the additional . . . . information has not otherwise been made known to the other parties during the discovery process[.]" *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL

2962453, at *3. Here, Plaintiffs have long been aware of Boman, Dobbs and Gaddis, so their claim of surprise "rings hollow." *Id.*; *see also Procongps, Inc. v. Skypatrol, LLC*, 2013 WL 4551828, at *1 (N.D. Cal. Aug. 27, 2013) (denying request to prevent non-disclosed witness from testifying because the witness's "identity and role as a technician was effectively disclosed to plaintiff"). Indeed, Boman and Dobbs were specifically discussed during custodian negotiations more than a year ago but Plaintiffs affirmatively declined to select either. *See* ECF 1652-1 (under seal) (Plaintiffs' rationale for excluding Boman and Dobbs from the list of 55 custodians). Boman, Dobbs, and Gaddis were each deposed as 30b6 witnesses, and Gaddis was deposed individually for 3 hours before the *Dean* trial. Uber also offered to present O'Keefe for a deposition regarding her anticipated *WHBE823* trial testimony, but plaintiff refused. Given that Uber made these witnesses known through the discovery process, Plaintiffs' request that Uber list all of its ***trial*** witnesses in its Rule 26 disclosures is a blatant attempt to get early access to Uber's trial preparation efforts and improperly usurp the authority of Judge Breyer to establish pre-trial scheduling. And Plaintiffs cannot dispute that they could have sought individual depositions of these employees during the Wave 1 discovery period but chose not to. Having elected not to pursue this discovery, Plaintiffs cannot now claim prejudice from its absence (or establish good cause to seek it now). Given the breadth of agreed-upon custodians and subject matters covered by Uber's document production and depositions, Plaintiffs have more than enough discovery needed to cross-examine Uber's trial witnesses.

### B. No Good Cause Exists For Another Deposition Of Kansal

Plaintiffs claim surprise that Kansal gave trial testimony about conversations with sexual assault survivors based on ***one answer*** indicating that he spoke with survivors and their family members as a part of the product development process, a subject on which he was deposed. Plaintiffs had documents showing such discussions before their May 2025 deposition of Kansal. *E.g.,* UBER_JCCP_MDL_000560160. Thus, Plaintiffs had ample opportunity to depose Kansal on such issues during his 7 hours of testimony – yet chose not to. Plaintiffs' intimation that Kansal's prior declaration stating that he was not responsible for "responding to or investigating incidents of any nature between drivers and riders" discouraged them from questioning him about his contact with survivors is unavailing; engaging with survivors as part of product development is categorically different from being responsible for investigating incidents. Plaintiffs' decision not to explore those issues does not establish good cause.

### C. No Good Cause Exists For *Individual* Depositions Of *All* Trial Witnesses

Uber acknowledges that depositions of trial witnesses who have not been previously deposed on the subject matter of their anticipated trial testimony – either as a 30b6 or individually – may be appropriate in certain circumstances. But Plaintiffs' demand for far more – individual depositions of all witnesses who will provide live trial testimony – is unsupported. Plaintiffs' claims that Boman and Dobbs' trial testimony exceeded the scope of their 30b6 depositions – on which they rely – are demonstrably incorrect. Indeed, Judge Breyer already found that the majority of Dobbs' trial testimony was within the scope of his 30b6 deposition. ECF 5140; Dean Tr. at 2312:6-11. Likewise, Boman's trial testimony was consistent with her deposition testimony, during which she was deposed at length concerning the Safety Report (Uber did not instruct Boman not to answer questions regarding the Safety Report) and about nonprofits' role in the development of safety features. Boman Dep. 40:19-41:2 (testifying that nonprofits "have been involved in a number of safety features that we have launched"). Moreover, Plaintiffs concede as they must that they have both documents and testimony regarding the subject matters about which Dobbs and Boman testified at trial.

**FILER'S ATTESTATION**

I, Elizabeth Wilkins, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April 28, 2026                                  By: /s/ *Elizabeth M. Wilkins*
                                                            Elizabeth M. Wilkins


**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated: April 28, 2026                                  By: /s/ *Elizabeth M. Wilkins*
                                                            Elizabeth M. Wilkins