[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY NEW TRIAL**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 – 17th Floor<br><br>Date Filed: May 1, 2026<br><br>Trial Date: January 13, 2026 |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

| | |
|---|---|
| JAYLYNN DEAN,<br><br>      Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants | CASE NO. 25-cv-4276-PHX-CRB<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom:  501<br><br>**ORAL ARGUMENT REQUESTED** |

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

KIM BUENO (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
401 W. 4th St.
Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

ALLISON M. BROWN (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

JESSICA DAVIDSON (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
jessica.davidson@kirkland.com

THEANE EVANGELIS (Pro Hac Vice admitted)
DANIEL NOWICKI (Pro Hac Vice admitted)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

SABRINA H. STRONG (SBN: 200292)
JONATHAN SCHNELLER (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
sstrong@omm.com
jschneller@omm.com

MICHAEL R. HUSTON (SBN: 038763)
JORDAN M. BUCKWALD (SBN: 036610)
**PERKINS COIE LLP**
2525 E. Camelback Road, Ste. 500
Phoenix, AZ 85016
Telephone: 602.351.8000
mhuston@perkinscoie.com
jbuckwald@perkinscoie.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

The jury rejected Plaintiff's claims that Uber was negligent, is liable for a defective product, or should pay punitive damages. The damages award rests solely on a theory that Hussan Turay, the independent-contractor driver, was Uber's *apparent* (but not actual) agent, and that his intentional criminal assault was "within the course and scope" of that agency. On that basis, Plaintiff seeks a judgment holding Uber liable for Turay's crime. The jury reached that verdict because it was incorrectly instructed about Arizona tort standards. Applying the proper standard, the verdict cannot stand as a matter of Arizona law.

To establish apparent agency, Plaintiff had to show that she was "led or misled" to think Turay was Uber's agent, and that she "justifiably relie[d]" on representations to that effect. *Fadely v. Encompass Health Valley of Sun Rehab. Hosp.*, 515 P.3d 701, 706 (Ariz. App. 2022). Plaintiff did not come close to proving those elements at trial. Arizona has established by statute that Turay was *not* Uber's agent; he was an independent contractor. Uber also unambiguously told Plaintiff—in a contract she agreed to and that this Court has already held is binding on her—that Turay was not Uber's agent. Plaintiff's Opposition confirms (at pp. 7-9) that her apparent-agency theory rests solely on generalized advertising that Uber cares about rider safety—advertising Plaintiff did not claim to have relied on in requesting her ride with Turay. Even assuming Plaintiff saw that advertising (a dubious proposition given her trial testimony), it did not remotely say or suggest that independent drivers like Turay were "agents or employees" instead of independent contractors. In the face of state law and Plaintiff's own contractual commitment both clearly designating Turay's independent-contractor status, she cannot possibly show that she "justifiably relie[d]" on a diametrically opposite understanding just because some ads said things like "Ride safely with Uber" (Opp. 7). Uber invests enormous resources to ensure that rides arranged "with Uber" are "safely" provided *by independent contractors*. No evidence suggested Uber "led or misled" Plaintiff to believe otherwise. *Fadely*, 515 P.3d at 706. And Plaintiff identifies no court in Arizona (or anywhere) that has found apparent agency based on nothing more than generic safety messaging in ads.

Plaintiff's apparent-agency claim fails for the additional reason that Turay's criminal sexual assault "was clearly outside the scope of" any authority he allegedly had from Uber. *Doe v. Diocese*

*of Phoenix*, 533 P.3d 214, 222 (Ariz. App. 2023). Plaintiff's reliance on *State v. Schallock*, 941 P.2d 1275 (Ariz. 1997), is misplaced. *Schallock* by its own terms applies only in the narrow context of sexual harassment by a workplace supervisor—where the perpetrator carries out the misconduct *as an exercise of* employer-vested authority. *See id.* at 1281-82 (emphasizing the "special factual and legal considerations" "peculiar to supervisory sexual harassment cases" that "distinguishe[d] [*Schallock*] from the great majority of cases involving torts committed by a servant against … a non-employee"). This case involves none of those features: no workplace harassment, no known and persistent misconduct, no supervisory relationship, and no misconduct in the exercise of any Uber-conferred managerial authority. Where those factors are missing, the Arizona Court of Appeals has held that *Doe* controls. 533 P.3d at 223-24 (distinguishing *Schallock* on that basis). Plaintiff makes no serious attempt to reconcile the verdict with *Doe*.

If this Court is not prepared to enter judgment for Uber, then it should certify to the Arizona Supreme Court whether apparent agency can exist notwithstanding the QMP statute and Plaintiff's contract, and whether Turay's conduct could reasonably be found within the scope of his duties. This Court should afford Arizona's highest court the opportunity to review the verdict before it expands Arizona tort liability in ways that no Arizona court has before.

Alternatively, a new trial is warranted. The jury instructions materially misstated Arizona tort law on both apparent agency and the binding force of Plaintiff's contract with Uber. Those misstatements led the jury to reach an erroneous verdict.

## ARGUMENT

### I.    Turay was not Uber's apparent agent as a matter of law.

Under Arizona law, rideshare drivers work independently, not as employees or agents. And Plaintiff knew that because she agreed to a contract that expressly told her as much. That knowledge precludes the essential basis of an apparent-agency claim—a justifiable misapprehension.

### A.    Arizona's Qualified Marketplace Statute forecloses apparent agency here.

Rideshare drivers like Turay are "independent contractor[s] for *all purposes* under state and local laws" if certain contractual conditions are met. A.R.S. § 23-1603(A) (emphasis added). Plaintiff does not dispute these conditions are met here. Opp. 1-3; Dkt. 4356 at 11-12. Turay's undisputed

independent-contractor status is dispositive of Plaintiff's apparent agency claim because Arizona law charges Plaintiff with knowledge that Turay worked independently—not as Uber's agent. Motion 5-6. When a plaintiff is aware of a contract "unambiguously stat[ing] that all" specified workers are "independent contractors," an apparent agency claim fails as a matter of law. *Amick v. Banner Health*, 2023 WL 5217704, at *8 (Ariz. App. Aug. 15, 2023) (describing *Fadely*, 253 Ariz. 515); *contra* Opp. 2 (arguing "no case bar[s] an apparent agency claim" based on independent-contractor status). Here, Arizona also adopts that status by statute. A.R.S. § 23-1603(A)(2)-(3)(a). Plaintiff thus cannot carry her burden to prove apparent agency. *See Gulf Ins. Co. v. Grisham*, 613 P.2d 283, 286 (Ariz. 1980) ("party asserting the agency relationship has the burden of proving [it]").

Plaintiff's only response (Opp. 1-2) is to assert that Uber forfeited this argument. That is incorrect. A "Rule 50" motion "is not required to preserve" legal issues raised at summary judgment, *see Dupree v. Younger*, 598 U.S. 729, 736 (2023) (cited at Opp. 1-2), and Plaintiff acknowledges that Uber invoked Arizona's QMP Statute at summary judgment, *see* Dkt. 4356 at 1, 10. Plaintiff complains that Uber did not use the words "constructive notice" or "presumption." But "it has never been true that principles of waiver and forfeiture operate at such microscopic units of argumentation." *Perez v. Reubart*, 150 F.4th 1164, 1173 n.3 (9th Cir. 2025). "[I]t is claims that are deemed waived or forfeited, not arguments." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). Uber is therefore free to "raise[] an alternative argument to support what has been [its] consistent claim from the beginning": Arizona law forecloses vicarious liability here. *Brown v. Arizona*, 82 F.4th 863, 873 (9th Cir. 2023) (citation omitted).

**B.      The evidence of Uber's Terms foreclosed apparent agency.**

In addition to the QMP Statute, the Terms of Use that Plaintiff agreed to likewise defeat both elements of apparent agency. Those Terms conclusively establish that Uber never "led or misled Plaintiff to think" Turay was Uber's agent, *and* that Plaintiff could not "justifiably" have so believed. *Fadely*, 515 P.3d at 706. The Terms explained, four times over, that "independent third-party providers are not actual agents, apparent agents, or employees of Uber in any way." P-04531.00013 (capitalization altered); *see also id.* at 14, 21, 22. And the Terms informed Plaintiff that Uber did not control Turay (or any other independent driver) or direct his operations. *Id.* at 21.

Those Terms are dispositive: "[O]ne who signs a written document is bound to know and assent to its provisions." *Teran v. Citicorp Person-to-Person Fin. Ctr.*, 706 P.2d 382, 384 (Ariz. App. 1985). Because Uber "did not represent" Turay "as its employee[ ] or agent[ ], instead informing [Plaintiff] of the independent relationship between them, Plaintiff cannot show either the representation or justifiable reliance needed for an apparent agency." *Fadely*, 515 P.3d at 706. It is as simple as that.

Plaintiff contends that she can evade *Fadely*'s clear rule by claiming Uber's Terms were confusing. But *Fadely* does not allow that argument: the Arizona court rejected the argument that a contractual disclaimer of agency was "ambiguous and thus *unenforceable*" because it did not "include[] the words 'agent, agency or [the like].'" 515 P.3d at 706 (emphasis added). This Court has already held that the Terms are enforceable. PTO 29 at 4-5, 12-13. And the Terms here *did* say that Turay was not Uber's "agent" or "apparent agent," making this case even easier than *Fadely*.

Plaintiff does not engage with the Terms' language that explicitly communicates driver independence. She instead expresses confusion (Opp. 5) as to how Uber's definition of "Services" could "communicate[] that Mr. Turay was acting on his own." But it was not that definitional provision that gave notice of the driver's independence; it was the Terms' specification that independent drivers like Turay are not agents or employees, and that Uber does not control them.

*Chandrasekhar v. Koszyk-Szewczyk*, 2023 WL 11909594 (Ariz. Super. Ct. July 11, 2023) (cited at Opp. 4-5)—an unpublished trial court order—thus does not support Plaintiff's argument. That court observed that, under *Fadely*, a business "can negate apparent agency by providing clear notice to the" consumer that service providers are "independent actors." *Id.* at *1. The court held that the notice there was not clear, in part because it did not specify that the "hospital does not 'control'" independent actors and failed to "plain[ly]" distinguish employees from independent actors, leaving the patient to guess who was an agent. *Id.* at *1-3. Uber's Terms do both: they specify that "Uber does not control, manage or direct any third-party providers," P-04531.00021, and specify that *all* "independent drivers" are independent actors, not agents, P-04531.00013.

Plaintiff next says (Opp. 6) that *Amick*, 2023 WL 5217704, shows that *Fadely*'s holding depends on "comparing the language of the … forms against the other relevant facts." But the *Amick* disclaimer stated merely that "physicians are '*generally not* employees or agents' of" the

defendant. *Id.* at *8. It was that "equivocal" language that allowed a jury question whether any given physician was an apparent agent. *Id.* Here, Uber's Terms "unambiguously state[] that all" independent drivers are not agents, so there can be no apparent agency as a matter of law. *Id.*

Plaintiff also invokes (Opp. 3) *Contreras v. City of Nogales*, 2022 WL 22885260 (D. Ariz. Oct. 25, 2022), but there the plaintiff did not receive the form clarifying the worker's status until *after* receiving services. *Id.* at *4-5. Nothing like that happened here. And Plaintiff cites no support for her novel theory (Opp. 5) that an express contractual statement of non-agency can fade into obscurity within "seven months." (Emphasis removed.) No Arizona case requires continuous reminders to preserve a clear contractual term. Nor does Plaintiff identify any support for her suggestion (Opp. 4) that the length of the contract matters: No Arizona court has said a signatory can ignore a contract because it is 22 pages instead of two. *See Teran*, 706 P.2d at 384 (signatory is deemed to know contractual provisions). When this Court held that Plaintiff is bound by the contract, PTO 29 at 4-5, 12-13, that ruling applied to the whole agreement—not just select provisions or the first few pages. No Arizona contract law would offer a basis to limit the Terms in that manner.

Plaintiff makes much of her subjective belief that she was paying Uber for services, rather than the third-party provider. Opp. 4, 8. But *Fadely* did not turn on subjective understandings of payment structures. In the face of a contract unambiguously confirming that a worker is not an agent, the terms of the billing arrangement cannot possibly create *justifiable reliance* on a contrary impression. *Fadely* described what the contract told the plaintiff about the billing structure, not the plaintiff's subjective beliefs about her payment obligations. *See* 515 P.3d at 706. Here, Uber's terms informed Plaintiff that her payment obligations ran "directly to Third-Party Providers," with Uber acting only as a collection agent "on the Third-Party Provider's behalf." P-04531.00018-19. Because courts cannot "superimpose a contrary subjective intent" onto contract terms, Plaintiff's payment theory fails as a matter of law. *Galbraith v. Johnston*, 373 P.2d 587, 590 (Ariz. 1962).

Unable to evade *Fadely*, Plaintiff resorts to arguing that she did not read Uber's Terms. Opp. 4-5. But whether she read the Terms before agreeing to them is legally irrelevant:

> It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law.

-5-
DEFENDANTS' REPLY IN SUPPORT OF RJMOL/NEW TRIAL MOTION
CASE NO. 3:23-MD-03084-CRB/ 25-CV-4276-PHX-CRB

*Mutual Benefit Health & Accident Ass'n v. Ferrell*, 27 P.2d 519, 523 (Ariz. 1933) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)). Uber unambiguously represented that independent drivers like Turay were *not* employees or agents, and Plaintiff accepted the Terms providing that notice. This Court already recognized as much when it held that Plaintiff is bound by the Terms. PTO 29 at 12-13. And no "reasonable person would think that there's an agency," Tr. 2356:35-2357:1, when they *know*, as a matter of Arizona contract law, that there is not.

The contract alone thus forecloses Plaintiff's theory of apparent agency as a matter of law. But even if there were a fact question, Plaintiff would need far more than her own subjective (and self-serving) inferences from advertisements to overcome the clear contractual disclaimer. *E.g.* Tr. 2340:4-17; *see* Opp. 7-8. *Nothing* in the Uber ads that Plaintiff cites says or suggests that drivers work as agents rather than contractors. Plaintiff contends (Opp. 8) that she took the ads to mean that Uber "provides" the rides. But that just misunderstands the apparent authority question, which is not whether Uber markets providing rides but whether Uber misrepresented to Plaintiff that the independent drivers provide services as agents rather than as independent contractors. Plaintiff identifies no such representation. In any event, "signage and advertising, without more, is not sufficient manifestation" to "establish apparent agency." *Courtland v. GCEP-Surprise, LLC*, 2013 WL 3894981, at *9 (D. Ariz. July 29, 2013). Uber's ads show that it cares deeply about safe transportation by *independent* drivers—consistent with the Terms that Plaintiff accepted.

Plaintiff's purported "evidence" that Uber represented independent drivers as its agents would be untenably weak even absent the strong countervailing evidence that came out at trial. In the face of all that evidence, no reasonable jury could have accepted Plaintiff's theory.[1]

**II.   Turay's criminal assault was outside the scope of any conceivable apparent agency.**

The jury concluded that Turay's intentional sexual assault was within the scope of his apparent agency because it was improperly instructed, as explained below. But even before that, on

---

[1] Uber did not forfeit its sufficiency-of-the-evidence argument. *Contra* Opp. 6-7. Uber's Rule 50(a) motion argued that "the trial evidence failed to show the required representation or justifiable reliance because Plaintiff undeniably contractually agreed Turay was not Uber's agent." Dkt. 5172 at 4. Uber's Rule 50(b) motion presents at minimum a "logical extension" of previous arguments. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 962 (9th Cir. 2009).

this trial record the Court should have entered judgment as a matter of law. *See Brutinel v. Nygren*, 154 P. 1042, 1045 (Ariz. 1916) ("Each acting within the scope of the authority conferred binds his principal; each acting beyond that scope binds himself only or no one.") (citation omitted). Plaintiff is wrong to contend that *Schallock* is controlling here. Even if it were, Turay's tortious conduct was obviously outside the scope of any conceivable authority he had as a rideshare driver. Plaintiff conflates the negligence evidence that the jury rejected with the proper scope-of-agency inquiry.

### A.   *Doe*, not *Schallock*, controls this situation in Arizona.

The controlling Arizona precedent for the facts of this case is *Doe*. Plaintiff seriously mischaracterizes *Schallock* in suggesting it stands for the proposition that sexual-misconduct torts commonly fall within the scope of a worker's authority. Opp. 9-12. Plaintiff can advance that argument only by ignoring the *Schallock* Court's own statement that the case turned on "factors peculiar to supervisory sexual harassment cases" like that one. 914 P.2d at 1281. Indeed, the "special factual and legal considerations" in that context "distinguish[] [*Schallock*] from the great majority of cases," like here, "involving torts committed by a servant against … a non-employee." *Id.* at 1282.

That is why *Doe* observed that "*Schallock* is narrowly applicable to cases involving longstanding abuse and harassment in the workplace by a manager with authority to 'hire and fire, promote and demote, and instruct and control' subordinates the manager victimizes." 533 P.3d at 223-24 (quoting *Schallock*, 941 P.2d at 1282-83). *Schallock* applied the widely settled rule that, "to be within the course and scope, the act must be, at least in part, motivated by a purpose to serve the master rather than solely to serve personal motives unconnected to the master's business." 941 P.2d at 1283 (citing Restatement (Second) of Agency § 235). Few cases outside the workplace-manager context will satisfy that test, because in most instances a perpetrator commits sexual assault "solely to gratify" his own "personal … desires," "not for any purpose of his employer." *Doe*, 533 P.3d at 222. The supervisory situation in *Schallock* was the exceptional case: By "offering advancement for sex," the supervisor there "was *both* serving the master by running the office—a task he was explicitly authorized to do—and serving his personal desires." 941 P.2d at 1283 (emphasis added). Plaintiff here makes no attempt to explain how Turay's assault "serv[ed]" Uber.

The Arizona Supreme Court has reaffirmed that *Schallock* "provides little guidance" outside

-7-

the "managerial sexual harassment" context. *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 603-04 (Ariz. 2012). In cases like this one that do not involve any "mixed motive," *Schallock*, 941 P.2d at 1283, courts in Arizona and "the majority of … other jurisdictions that have addressed this issue" find that sexual assault is outside the scope of a worker's authority, precisely because a criminal assault does not serve any employer purpose (even improperly). *Doe*, 533 P.3d at 223.

Plaintiff wrongly cites non-binding cases (Opp. 10-11) to argue that *Schallock* extends beyond persistent harassment by a workplace supervisor. But those cases, like *Schallock* itself, involved perpetrators abusively exercising functions assigned by their employer. In *Higgins v. Assmann Electronics, Inc.*, 173 P.3d 453 (Ariz. App. 2007), the employer was held liable only for wrongful termination, not assault, when the CEO authorized to fire an employee did so during an assault, and the employer implicitly authorized that act through silence. *Id.* at 457, 461-63. In *Larson v. Berumen*, 1997 WL 608676 (9th Cir. Oct. 27, 1997)—a pre-2007 unpublished Ninth Circuit memorandum disposition not suitable for citation, *see* 9th Cir. R. 36-3—a sheriff's deputy vested with law-enforcement authority sexually assaulted a citizen who had called for help. In both cases, the perpetrators committed their tort as an exercise of their employer-granted power (to fire, or to exercise law-enforcement authority). Those torts were, in the words of the Restatement, an "escalation" of the activity their employers had authorized. *See infra* 9. By sharp contrast, Turay's driving authority bears no functional connection to a sexual assault: the assault could never be coherently described as an escalated exercise of the assigned function of driving passengers.[2]

Because *Schallock* does not apply outside the managerial context, *Doe* controls here and forecloses Plaintiff's scope arguments as a matter of law. Motion 11-12. Plaintiff's efforts to sideline *Doe* as non-binding (Opp. 11-12) are wrong. Federal courts are bound by intermediate state appellate decisions unless the state's highest court *clearly* would not follow it. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007); *In re K F Dairies*, 224 F.3d 922, 925 (9th Cir. 2000). *Doe* does not conflict with *Schallock*; it applies *Schallock* to a non-supervisory setting and

---

[2] Plaintiff also cites *Tonner v. United States*, 2025 WL 2097927 (D. Ariz. July 25, 2025), despite it explicitly limiting *Schallock* to cases involving alleged "longstanding managerial harassment." *Id.* at *4 n.4. *Tonner*—ruling on a motion to dismiss—considered the scope of employment only with respect to invasion of privacy and emotional distress, *not* sexual misconduct. *Id.* at *4-5.

reaches the result *Schallock*'s own reasoning dictates. The Arizona Supreme Court's denial of review in *Doe* confirms that *Doe* is consistent with its precedent. *See* Ariz. R. App. P. 23(d)(3).

**B.      Even if *Schallock* controlled, Turay's conduct would still be outside the scope.**

Under *Schallock*, the question would be whether Turay's tortious conduct was "incidental to his position and authority." 941 P.2d at 1284. But Plaintiff misses the whole point of *Schallock* by claiming that a tort committed during *any* authorized work is automatically "incidental to" that work. Opp. 9-10, 18. That approach collapses *Schallock*'s multi-factor test (941 P.2d at 1282-83), and would mean that virtually every sexual assault by a worker while performing his duties is within scope. The majority rule, including in Arizona, is just the opposite. *See Doe*, 533 P.3d at 223.

As explained above, the *Schallock* context—persistent, known but unaddressed sexual harassment by a workplace supervisor—presents the unusual circumstance where a worker could be found to be serving "both" the master and his own personal desires. 941 P.2d at 1283. The harassment in *Schallock*, though corrupt, was an exercise of the supervisor's delegated managerial functions; he could not have "offer[ed] advancement for sex" without the delegated power to promote, or coerced compliance without the power to fire. *Id.* at 1282-83. As the Third Restatement puts it, the harassment was an "escalation" of, and therefore incidental to, the supervisor's authorized conduct. *See* § 7.07 cmt. b.[3] Here, by contrast, Turay's criminal assault was a major "departure" from, and totally unrelated to, his delegated authority to transport passengers safely. *See id.*

Moreover, Uber lacked the requisite control over Turay. Under *Engler*, and consistent with *Schallock*, "[a]n employee's tortious conduct falls outside the scope of employment when" it "is not within the control or right of control of the employer." 280 P.3d at 602; *Schallock*, 941 P.2d at 1283; *see* § 7.07 (similar). This Court has already confirmed that Turay was an independent contractor and thus Uber did not control the way he performed his work. *See* PTO 39 at 1.

*Schallock* also requires considering the employer's knowledge of and response to the perpetrator's patterns. 941 P.2d at 1282. Because that employer "was aware for close to a decade that [the perpetrator] … was engaged in egregious improprieties and did little or nothing to call a halt,"

---

[3] The Arizona Supreme Court has adopted Section 7.07 as "the appropriate test" for determining when inappropriate conduct is "incidental to" assigned functions. *Engler*, 280 P.3d at 602-04.

it was reasonable to assume the activities were approved or within scope. *Id.* at 1282-83. That employer inaction was key to the outcome in *Schallock*, but it is the exact opposite of the facts here. The only prior "report of sexual misconduct" (Opp. 12-13) was Turay "compl[i]ment[ing] [one rider by] stating [she] was beautiful." Tr. 1005:17-24. Uber promptly contacted Turay to admonish him. Tr. 1009:8-19, 1010:2-13. A single offensive comment that Uber immediately disapproved is nothing like the *Schallock* employer's pattern of turning a blind eye to persistent harassment. Uber's undisputed no-sex policy, driver training materials forbidding sexual relationships (even consensual) between riders and drivers, and immediate deactivation of Turay upon notice of Plaintiff's assault all further negate any inference that his tortious conduct was within the scope of his authority. Tr. 1692:19-1693:3; 1107:5-1108:3; *see Stencel v. Lyft, Inc.*, 2024 WL 4008752, at \*4 (N.D. Cal. Aug. 29, 2024) (suspension "negat[es] any inference of express or implied authorization").[4] That evidence supports only one reasonable conclusion: Turay acted solely to serve his own personal interests, not Uber's. *See Doe*, 533 P.3d at 222.

Because Plaintiff cannot tie her claims to the *Schallock* factors, she points to evidence of *opportunity*—that Uber designed a "product[]" that "inherently bring[s] people closer" and gives drivers control of the vehicle. Opp. 13. But that is simply a bid to revive the direct-negligence and design-defect theories that the jury rejected. The argument has no footing in agency law: Opportunity for misconduct does not make assault "incidental to" the function of driving. Section 7.07's Illustration 9 makes this clear: A truck driver who follows another car threateningly performs assigned work (driving) the entire time, but his tortious conduct is not "incidental" to trucking because it serves only his own purposes. So too here.

Plaintiff also conflates *foreseeability* with employer authorization—precisely the error that Restatement § 7.07 comment b warns against. The *Doe* court, applying *Schallock*, confirmed that even where an employer knew its employee would be alone with a vulnerable person (a priest-parishioner counseling trip), foreseeability did not establish authorization. 553 P.3d at 221-24. If a

---

[4] Plaintiff is wrong to contend (Opp. 11 n.9) that *Stencel* applied a standard rejected by *Schallock. Schallock* applied Restatement (Second) § 219, *see* 941 P.2d at 1286-87, which is now part of Restatement (Third) § 7.07. Under Section 7.07, an employer's condoning response to misconduct is probative of whether the tortious conduct was within the employer's control.

church counselor being alone with a minor parishioner is insufficient for a within-scope finding, then a rideshare driver providing transportation must be insufficient. Plaintiff cites evidence that Uber knew about other assaults by other drivers, generalized concerns about paperwork and poor performance, and what Plaintiff subjectively deems lax enforcement of Uber's Community Guidelines. Opp. 12-14. But Plaintiff does not identify any case in Arizona (or anywhere) that has ever found similar facts predictive of a sexual assault. That's because the critical question is whether the employer knew or should have known of *this worker's* propensity for *this type of misconduct*, and by doing nothing, "condoned and implicitly authorized" it. *Doe*, 533 P.3d at 223-24; *see id.* at 221. Uber did not know or do that, and Plaintiff points to no evidence that it did.

### III.   In the alternative, certification is warranted.

Plaintiff opposes certification on three grounds. Opp. 14-15. None is persuasive.

***First***, while ample Arizona law supports Uber's position, "no controlling precedent in the decisions of the [Arizona] supreme court and the intermediate appellate courts" supports the verdict. A.R.S. § 12-1861. On scope, Plaintiff says (Opp. 14) the Arizona Supreme Court has "already answered" whether sexual assault is per se outside scope. But the actual question here is whether a non-workplace sexual assault by a *nonmanagerial independent contractor* with *no known history of similar acts* can qualify as an act in furtherance of a business like Uber's. No Arizona court has ever suggested that answer is "yes." *Supra* 7-9. On apparent agency, Plaintiff asserts (Opp. 14-15) that no Arizona precedent "precludes" her claim. But no Arizona appellate court has ever recognized apparent agency in the face of a binding and unambiguous contractual disclaimer. If Arizona law is suddenly going to be expanded to permit liability based on a plaintiff's subjective misapprehension of agency status notwithstanding clear contrary contractual language, that change should come from the Arizona Supreme Court—not a federal court sitting in diversity.

***Second***, Uber's request is timely. *Contra* Opp. 15. Certification becomes appropriate when the court has concluded that existing precedent does not resolve a controlling question. *See, e.g.*, *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003). Uber has maintained its legal position throughout this case, and this Court reserved decision on Uber's Rule 50(a) motion. It is Plaintiff's request to enter judgment in accordance with the verdict—notwithstanding *Fadely*, *Doe*, *Schallock*,

and *Engler*—that asks this Court to take a novel step without support in Arizona case law.

***Third***, the "particularly compelling reasons" standard from *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984), is satisfied here. The certification statute requires only "no controlling precedent" in Arizona appellate courts, A.R.S. § 12-1861, and certification is "most suitable" when that condition is satisfied and the questions are determinative, *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1332 (9th Cir. 2020). Plaintiff has not identified a single Arizona decision recognizing apparent agency despite a binding contractual disclaimer, nor any case holding that a nonmanagerial independent contractor's sexual assault falls within the scope of agency. The verdict thus breaks new ground on two dispositive questions that no Arizona court has ever answered in Plaintiff's favor. These are not incremental extensions of existing doctrine. They implicate the bounds of vicarious liability across Arizona's economy—affecting hospitals, franchisers, construction companies, and gig-economy platforms that rely on contractual disclaimers to manage their liabilities through clear terms. Motion 13-14. Allowing the verdict to stand would also effectively overrule *Doe* notwithstanding the Arizona Supreme Court's denial of review—which itself signals that *Doe* accurately states Arizona law. Given the novelty of these issues, the absence of any controlling precedent supporting the verdict, and appropriate "respect for Arizona courts and their preeminent role in interpreting Arizona law," certification is warranted. *Benson*, 980 F.3d at 1332.

## IV.    Erroneous jury instructions independently warrant a new trial.

Even if Uber were not entitled to judgment as a matter of law, the jury instructions on both the scope of agency and the Terms of Use were legally erroneous and prejudiced Uber. Each error independently warrants a new trial. Plaintiff's contrary arguments are unavailing.

### A.    The scope-of-agency instruction misstated *Schallock*.

Plaintiff defends the scope instruction by asserting that it "accurately conveyed the relevant law" and "point[ed] the jury to the conduct related to the tort." Opp. 15. It did neither.

The instruction asked the jury the wrong question. The relevant inquiry is whether the "conduct related to the tort" was "incidental to th[e] authorized" conduct—*i.e.*, whether the tortious conduct was so connected to the agent's *authorized duties* that it was "in furtherance of the [principal's] business." *Schallock*, 941 P.2d at 1282-83. But the instruction instead asked whether

Turay's "legitimate conduct and services"—his driving—fell "within the scope of his apparent authority as a driver for Uber." Final Instructions 23. That question answers itself: driving is what a driver is authorized to do. Worse still, the instruction's use of "incidental to" ran in the wrong direction and effectively took the key question away from the jury. Rather than asking whether the tort-related conduct was "incidental to [the] employment," *Schallock*, 941 P.2d at 1283, the instruction affirmatively *described* Turay's authorized driving as "incidental to the sexual encounter," Final Instructions 23 (the "services performed by Mr. Turay as a driver *that were incidental to* the sexual encounter"). The instruction thus replaced the key inquiry with a tautological question that could be answered only in Plaintiff's favor.

Plaintiff argues (Opp. 15-16) that the instruction tracked *Schallock*'s direction to look at "conduct related to the tort" rather than the tortious act itself. But *Schallock* did not hold that whatever the perpetrator was authorized to do *is* "conduct related to the tort," or that any assault happening close in time or place to the perpetrator's job duties is within scope. 941 P.2d at 1282. Rather, *Schallock* explained that the scope inquiry turns on whether the tortfeasor's "conduct related to the tort" was so intertwined with his authorized duties that the tortious act itself could be considered incidental to the employment—*i.e.*, in furtherance of the employer's business. *Id.* at 1282-83. That standard was met in *Schallock* because supervising junior employees was part of the supervisor's authorized job duties. *That* is why the supervisor's harassment was inextricable from his exercise of managerial authority: "offering advancement for sex" was simultaneously "serving the master by running the office" (albeit improperly). *Id.* at 1283.[5] The instruction here collapsed that critical distinction into the trivially true observation that Turay was driving shortly before the assault occurred, rather than asking the jury to consider whether the assault itself bore any connection to Turay's authorized duties and furthered Uber's business in any way. (It did not.)

Plaintiff contends (Opp. 15) that Uber "never proposed an instruction … consistent with *Schallock*." That is wrong on the facts and law. Uber proposed asking whether the "sexual encoun-

---

[5] *Higgins* illustrates the same principle: the Court of Appeals found scope liability only for wrongful termination—because the supervisor used his managerial authority to fire plaintiff, "albeit in an improper manner." 173 P.3d at 461-62. The court rejected liability on assault and endangerment, which were standalone tortious acts unconnected to any authorized function. *Id.*

DEFENDANTS' REPLY IN SUPPORT OF RJMOL/NEW TRIAL MOTION
CASE NO. 3:23-MD-03084-CRB/ 25-CV-4276-PHX-CRB

ter" was "the kind of act that agent was apparently authorized to perform" and was "apparently motivated by a purpose to serve the apparent principal." Uber's Proposed Instructions 11. Anyway, a party need only raise "the matter objected to and the grounds for the objection"—not submit an alternative. Fed. R. Civ. P. 51(c)(1). Uber repeatedly objected on these grounds. *E.g.* Dkt. 139.

Plaintiff also asserts (Opp. 16) that Uber "never establishes any prejudice." But when an instruction is legally erroneous, prejudice is presumed and the burden shifts to the non-movant to show that a properly instructed jury would have reached the same verdict. *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1194 (9th Cir. 2019). An instruction that replaced *Schallock*'s substantive inquiry with a self-answering question on the sole claim for which Uber was found liable—effectively directing a finding in Plaintiff's favor by asking whether a driver's driving fell within the scope of his authority to drive—cannot possibly be deemed harmless.

**B.     The Terms of Use instruction failed to convey their legal significance.**

The jury was instructed that "Plaintiff and Uber are parties to a contract" (the Terms of Use), and it could "consider this evidence, along with all the other evidence in this case, in determining whether Hassan Turay was an apparent agent of Uber." Final Instructions 22. That instruction never told the jury that the contract is *enforceable*—as this Court held. The instruction thus reduced a binding legal document to just another piece of "evidence." Those errors were prejudicial.

***First***, the phrase "parties to a contract" is not equivalent to "bound by the Terms." *Contra* Opp. 16-17. The distinction mattered because Plaintiff's trial strategy was to convince the jury that the Terms could be disregarded. Plaintiff's counsel asked Uber's Chief Product Officer whether Uber "require[s] anyone to actually read these Terms of Use before taking a ride," and played a demonstrative purporting to illustrate how long it would take to scroll to the relevant provision. Tr. 3267:13-3268:3. Telling the jury that Plaintiff and Uber were merely "parties to a contract" left the jury free to conclude the Terms did not bind her. "The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood[.]" *Lakeside v. Oregon*, 435 U.S. 333, 340 (1978). An instruction that Plaintiff was "bound by" the Terms would have conveyed what this Court determined: the Terms are an enforceable contract regardless of whether Plaintiff read them.

***Second*** and relatedly, the Terms are not merely "evidence." Plaintiff contends (Opp. 17)

that Uber "is not entitled to jury instructions highlighting [its] evidence." But that principle applies to ordinary *factual* disputes—not to the legal effect of a binding contract. Where "a contract's legal effect bears on issues the jury must decide," a court is "required" to provide a "legal interpretation of the contract" to the jury and "err[s] … by not doing so." *United Nat'l Maint. v. San Diego Convention Ctr.*, 766 F.3d 1002, 1009 (9th Cir. 2014). Plaintiff dismisses *United National Maintenance* (Opp. 17) because it involved a "contract claim." But the principle applies whenever a contract's legal effect is relevant to the jury's determination. Here, the Terms bore directly on the two key elements of apparent agency: Uber's representations and justifiable reliance. A binding contract unambiguously disclaiming agency and expressly clarifying that drivers are "not actual agents, apparent agents, ostensible agents, or employees of Uber in any way" is not simply one more piece of evidence to be weighed against vague recollections of advertising. The contract represents a legal determination—already made by this Court—that should have been conveyed to the jury as such.

Plaintiff attempts (Opp. 16-17) to minimize "the agreement's enforceability" by arguing that the "question is what Uber represented to Ms. Dean." That proves Uber's point: The Terms *are* Uber's representation to her about Turay's working status. *Supra* 3-6. And unlike her imprecise recollections of generalized ad themes, the Terms are an unambiguous, written representation that she agreed to. By reducing the Terms to mere "evidence," the instruction allowed the jury to treat the strongest representation as no more significant than Plaintiff's impressions of unidentified ads.

Plaintiff cannot carry her burden to show that a properly instructed jury "would have reached the same verdict." *Frost*, 914 F.3d at 1194. The verdict—finding apparent agency despite Plaintiff's binding agreement that Turay was not Uber's agent—confirms that the jury did precisely what a correct instruction would have prevented: it credited Plaintiff's subjective impressions of advertising over the unambiguous contractual representation to which she was bound.

## CONCLUSION

This Court should grant Uber's renewed motion for judgment as a matter of law, or at minimum certify the above questions to the Arizona Supreme Court. In the alternative, the Court should grant a new trial on Plaintiff's apparent-agency claim.

Dated: May 1, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

SABRINA H. STRONG (SBN: 200292)
JONATHAN SCHNELLER (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
sstrong@omm.com
jschneller@omm.com

THEANE EVANGELIS (Pro Hac Vice
admitted)
DANIEL NOWICKI (Pro Hac Vice admitted)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

LAURA VARTAIN HORN (SBN: 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

MICHAEL R. HUSTON (SBN: 038763)
JORDAN M. BUCKWALD (SBN: 036610)
**PERKINS COIE LLP**
2525 E. Camelback Road, Ste. 500
Phoenix, AZ 85016
Telephone: 602.351.8000
mhuston@perkinscoie.com
jbuckwald@perkinscoie.com

KIM BUENO (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
401 W. 4th St.
Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

ALLISON M. BROWN (Pro Hac Vice
admitted)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

JESSICA DAVIDSON (Pro Hac Vice
admitted)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
jessica.davidson@kirkland.com

*Attorneys for Defendants* UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC