Sommer Luther (*pro hac vice*)
sluther@wagstafflawfirm.com
Wagstaff Law Firm
940 Lincoln St.
Denver, CO 80203
Telephone: 303-376-6360
Facsimile: 888-875-2889

*Attorney for Plaintiff B.L.*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 5964)** |
| *B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

Defendants' motion will likely seem familiar to the Court. At its core, the motion is simply a more virulent version of the PTO 8 letter brief concerning redactions. That brief was not properly filed until after this motion,[1] and has not yet been ruled on by the Court. Defendants' motion will also seem familiar because, shortly before the *Dean* trial, Uber did something quite similar: it created a conflict where none ought to exist, infused it with apocalyptic-sounding adjectives, and sought sanctions without meaningfully conferring with opposing counsel. *See* Joint Letter re: Sanctions for Misconduct by Plaintiffs and Counsel, *Dean v. Uber, et al.* (ECF No. 3669). The Court rejected Uber's attempt at delay in *Dean*. ECF No. 3786.

---

[1] The Court struck Defendants' first attempt to file that brief for failure to seek leave. ECF No. 5823.

The same outcome is warranted here for similar procedural and substantive reasons. Three warrant particular attention:

*First*, Defendants (together, "Uber") have not complied with the rules pertaining to motions like this one. Federal Rule of Civil Procedure 37 requires motions for sanctions to "include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act." Fed. R. Civ. P. 37(d)(1). Defendants' motion includes no such certification. Similarly, Civil Local Rules 37-1 and 37-4 require discovery motions to be preceded by meaningful, good-faith conferral, memorialized "by competent declarations which . . . [d]escribe in detail the efforts made by the moving party to secure compliance without intervention by the Court." Civ. L.R. 37-4(b)(2). Uber's motion lacks these mandatory elements as well. And Judge Cisneros's Civil Standing Order requires "[a]ll motions or non-stipulated requests [to] include a certification, which may be submitted separately or included in the body of the filing, that the parties have complied with this meet and confer requirement." Civil Standing Order for Magistrate Judge Lisa J. Cisneros, at ¶ E(1). This too is missing.

These omissions are perhaps more than an accident. Uber's counsel did *not* meaningfully confer with undersigned counsel on the issues raised by their motion. Instead, the conferral—with lawyers who neither signed the motion (ECF No. 5964) nor the accompanying declaration (ECF No. 5964-1)—began with defense counsel's announcement that they had deemed sanctions appropriate, and that Plaintiff's counsel was unlikely to convince them otherwise. To state the obvious: threats of sanctions are not a place to begin a conferral of any kind, let alone the sort of meaningful, good-faith conferral that is contemplated by the rules. These procedural failures are a sufficient basis to deny the motion.

*Second*, even if the Court were to reach the merits, Uber's motion lacks any basis in fact or law. Rule 37 is not a monolith; the sanctions authorized under the Rule are separated into discrete categories, each bearing unique requirements and standards. At the first step of the analysis, Uber's motion does not identify any violation of Rules 37(b), (c), or (d). While citing those provisions throughout their brief, Uber does not grapple with each sub-section's particular requirements and so fails to state an actual discovery violation. As to the second, Uber has not identified any meaningful prejudice that resulted from the things they complain of. At best, the argument seems to be that B.L.'s compliance with her duty to supplement discovery came too late and that the course of her life in recent years has not proceeded with the tidy

precision of a public company. But that argument is preempted by Judge Breyer's recent reopening Wave 1 discovery. *See* ECF No. 6063 at 2; *see also* ECF No. 6067. If Uber wishes to obtain more discovery from or about Plaintiff, it can. Indeed, that is precisely what Plaintiff offered as part of the abortive meet and confer process. *See* ECF No. 5987, at 5-6. Uber cannot show any prejudice that would warrant sanctions.

*Third*, even if the Court were to reach the merits and conclude that some sort of sanctions may be appropriate, the remedies Uber seeks are wholly unsupported. Again, any (meritless) argument for removing B.L. from the Wave 1 bellwether pool need not be addressed here, as Judge Breyer has expressly reserved that issue for his own determination, and reopened Wave 1 discovery during the May 1, 2026, hearing. *See* ECF No. 6063 at 2; *see also* ECF No. 6067. And Uber's fleeting request for fees and costs is neither warranted nor accompanied by the required declaration "itemiz[ing] with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set[ting] forth an appropriate justification for any attorney-fee hourly rate claimed." Civ. L.R. 37-4(b)(3). Uber's unsupported requests for relief are without merit.

The motion should be denied.

## II.    BACKGROUND

On March 15, 2025, Uber served its first set of Requests for Production of Documents on Plaintiff B.L. Declaration of Sommer D. Luther ("Luther Decl.") at ¶ 3. Defendants utilized expansive definitions for terms such as "communications," which purported to encompass every transmission or exchange of information by telephone, letter, e-mail, message, telegram, or any other means of written, electronic, or other medium. Luther Decl. at ¶ 4. Uber sought a wide array of Plaintiff's personal, medical, and digital history. Luther Decl. at ¶ 3. Most notably, Defendants demanded "ALL COMMUNICATIONS RELATED TO the ALLEGED INCIDENT that YOU have had with ANY PERSON." Luther Decl. at ¶ 5. Defendants also requested all communications with any person regarding the emotional distress Plaintiff claims. Luther Decl. at ¶ 6.

The date of incident in Plaintiff's case is August 12, 2022. Luther Decl. at ¶ 2. B.L. is thus required to produce all documents and social media communications from two years prior to the incident to the present that depicts or relates to Plaintiff's social gatherings, hobbies, and any mental or emotional condition. ECF No. 3209. Furthermore, Uber sought all documents relating to Plaintiff's medical

treatments and diagnoses of preceding and postdating the incident, and any writings by the Plaintiff related to the incident or injuries. Luther Decl. at ¶¶ 7-9.

Upon receiving Defendants' plainly overbroad requests, Plaintiff properly and timely lodged specific and well-founded objections. Plaintiff preserved all protections under the attorney-client privilege, the work-product doctrine, and the patient-physician privileges. Luther Decl. at ¶ 10. Plaintiff formally objected to Defendants' boundless use of the phrase "relating to," and noted that overbroad requests for "all documents" related to sweeping categories of documents are inherently disproportionate to the needs of the case. *See, e.g., Frieri v. Sysco Corp.,* 2017 WL 3387713, at *11 (S.D. Cal. Aug. 4, 2017); *see also* ECF No. 3136 (requiring requests for production to "describe with reasonable particularity the items sought"). Subject to and without waiving these valid objections, Plaintiff's counsel conducted a comprehensive forensic extraction of Plaintiff's mobile device that spanned many years of her private life. Luther Decl. at ¶ 11. Counsel then manually parsed through the exports to isolate responsive messages across dozens of contacts and threads. Luther Decl. at ¶ 12. Simultaneously, counsel harvested and reviewed Plaintiff's email accounts and social media profiles. Luther Decl. at ¶ 13. All documents were reviewed line-by-line for responsiveness, privilege, and the highly sensitive privacy concerns of Plaintiff and any third parties. Luther Decl. at ¶¶ 13-14.

The sheer volume of information and the evolving nature of this litigation required ongoing, rolling productions, which Uber did not object to. Luther Decl. at ¶ 14. *see also* ECF No. 3136 at 5 (Judge Cisneros holding that "[i] n some cases, social media document production may end up being an iterative process"). Here, the production of text messages and emails was an inherently iterative process. Luther Decl. at ¶ 15. Over the course of the litigation, the parties conducted sixteen fact-witness depositions and engaged in voluminous written discovery. Luther Decl. at ¶ 16. As these depositions took place and the factual record developed, new individuals, aliases, and contextual details came to light. Luther Decl. at ¶ 17. Because "[s]upplemental discovery requests might (or might not) be appropriate after reviewing an initial production or taking a plaintiff's deposition," ECF No. 3136 at 5, B.L. has continued to review for and produce responsive information. Luther Decl. at ¶ 18.

To date, Uber has served three sets of Requests for Production of Documents for a total of 63 requests. Plaintiff has produced 11 supplemental responses to its Requests for Production Set One, and one

supplemental response for each of the other two sets. Luther Decl. at ¶¶ 19-21. These numerous supplemental productions are the direct result of Plaintiff's unwavering diligence in fulfilling her obligations within this Court-acknowledged iterative framework.

By the close of discovery, Plaintiff's team engaged in sixteen fact-witness depositions, timely included all fact witnesses in discovery prior to deadlines, and produced some 379 pages of personal text messages, in addition to medical records, emails, and social media posts. Luther Decl. at ¶¶ 16, 22. Plaintiff's counsel took painstaking efforts to protect the *extensive* amount of highly sensitive, non-relevant information across dozens of private conversations between Plaintiff and her family and friends, that span three years and nine months' worth of communications. Luther Decl. at ¶ 23. These protections were, in counsel's judgement, especially necessary in this case, where Uber's lawyers had, during a deposition, disclosed highly intimate details of B.L.'s personal life to a third party who was not previously aware of those details. Luther Decl. at ¶ 24. *See* ECF No. 5987.

Throughout this long discovery process, Uber raised the issue of redactions one prior time. The parties met and conferred in early July 2025 regarding messages between Plaintiff and M.B. and Plaintiff and W.L. Luther Decl. at ¶ 25. Following conferral with Uber's lawyers (not the same lawyers who are dealing the allegations in this motion), Plaintiff's counsel unredacted some messages and produced them. Luther Decl. at ¶ 26. At no other time during discovery did Uber raise an issue with redacted messages. Luther Decl. at ¶ 27. At no time did Uber file a motion during discovery for an extended deadline to review the messages, or to compel further unredacted production. Luther Decl. at ¶ 28. Indeed, no motion was ever filed during discovery regarding such messages. Uber did not raise the issue of redacted communications until October 13, 2025, a week after the close of discovery. Luther Decl. at ¶ 29.

Despite Uber's delay, Plaintiff has always been willing to meet and confer. Uber's counsel, Katie Benfield, has been the point of contact for discovery issues since the fall of 2025. Luther Decl. at ¶ 30. In February 2026, Michael Vives became involved along with Ms. Benfield during meet and confers. Luther Decl. at ¶ 31. At no time has Ms. Laura Vartain participated in meet and confers with B.L.'s counsel about plaintiff-specific discovery. Luther Decl. at ¶ 32.

Beginning in the fall of 2025, the once productive conferrals with Uber, *see supra*, began to break down. In September 2025, Uber mistakenly believed hundreds of documents were not produced, that were

in fact produced months prior. Plaintiffs and Uber met and conferred regarding these issues. Despite the meet and confer and Plaintiff's explicit email directing Ms. Benfield to when certain messages were produced, Uber again claimed these documents were never produced. Plaintiffs again directed Uber to exactly where and when said messages were produced. In October 2025, Uber's counsel raised generalized concerns about redactions and mentioned its concerns about M.B., R.H., and L.P., who were collateral witnesses mentioned in Dr. Mechanic's expert report. Luther Decl. at ¶ 33. Plaintiffs and Uber met and conferred. When Uber brought up its redaction concerns, Plaintiff respectfully requested more specificity about its objections so that Plaintiff could make a meaningful response. Luther Decl. at ¶ 34. Instead, Uber responded by re-sending an email it had previously sent about redactions. Luther Decl. at ¶ 35. Uber did not raise the issue of redactions or collateral witnesses again until February 13, 2026. Instead of meaningfully restarting conferrals, Uber simply stated on February 13 that it was initiating PTO 8 briefing despite its three months of silence. Luther Decl. at ¶ 36.

During the PTO preparation process, Ms. Benfield and Plaintiff's counsel discussed the redactions and the witnesses raised that would be raised in the PTO 8 submission. Plaintiff's counsel *agreed* to the deposition of the witnesses Uber requested and proposed a discovery protocol for searching B.L.'s texts. Luther Decl. at ¶ 37. Plaintiff's counsel communicated willingness to re-review Uber's concerns about specific messages or threads. Luther Decl. at ¶ 38. In a continued good-faith effort to resolve disputes without court involvement, Plaintiff's counsel conducted a secondary review of the previously redacted materials. Luther Decl. at ¶ 39. What counsel discovered were many non-responsive text messages, some of which disclosed highly personal and sensitive information about B.L.'s life. Luther Decl. at ¶ 40. But, given Uber's growing aggressiveness in discovery, B.L.'s counsel also came to realize that redacted content had been disclosed in other contexts. Luther Decl. at ¶ 41. Thus, Plaintiff voluntarily and unilaterally unredacted materials that did not strictly meet the "highly sensitive" threshold outlined in the ESI protocol. Luther Decl. at ¶ 42. She began to supplement her productions in February 2026 and completed supplemental productions in March 2026. Luther Decl. at ¶ 43. This brought Plaintiff B.L.'s productions to Uber to dozens of productions and thousands of pages of produced documents. Luther Decl. at ¶¶ 20, 44, 69 & Ex. 1 (summary of productions and responses).

Despite Plaintiff's continued efforts to supplement her productions and proactively resolve these

disputes, Uber refused to engage in a meaningful meet and confer process. Luther Decl. at ¶ 45. Instead of working collaboratively, Uber relied on vague, blanket complaints about the redactions even after unredacted materials were produced; the company did not identify specific concerns or propose a solution. Luther Decl. at ¶ 46. Recognizing the unworkability of this theoretical approach to discovery, Plaintiff's counsel proposed a concrete solution: running a targeted search term protocol, using terms such as "Rape," "Uber," "Assault," "Litigation," "Settlement," and "Driver," across the texts and emails to objectively resolve the remaining redaction dispute. Luther Decl. at ¶ 47. Uber flatly rejected this compromise, asserting that the issues were "apparent on the face of the documents," and declared an impasse without offering any potential solutions. Luther Decl. at ¶ 48. Tellingly, Ms. Benfield unilaterally declared this impasse an entire month after B.L. had produced the unredacted materials described above, and a mere week after Judge Breyer set Plaintiff's case for trial. Luther Decl. at ¶ 48.

Uber's failure to meaningfully confer also extended to the dispute over fact witness depositions. Luther Decl. at ¶ 49. After a March 31, 2026, meet and confer, Ms. Benfield misstated Plaintiff's position on depositions. Luther Decl. at ¶ 50. Plaintiff reiterated again that she was willing to move forward with depositions with reasonable parameters in place, such as time limits, and had been for months. When Uber asked for an initial proposal on time allocation, Plaintiff responded, and Uber immediately dismissed the offer and terminated the discussion in favor of PTO 8 briefing. Luther Decl. at ¶¶ 51-52.

Despite proposing solutions to Uber, Uber continued to simply refuse to participate in arriving at a resolution, all while its tone of outrage escalated markedly. Luther Decl. at ¶ 53. Uber's counsel Mr. Vives finally asked for a meet and confer on April 7, 2026. Ms. Benfield and Mr. Vives (but not Ms. Vartain) attended. Luther Decl. at ¶ 54. Mr. Vives opened the discussion by expressly stating that he and his team had decided that sanctions against Plaintiff were called for and there was really nothing that Plaintiff could say to change their minds. Luther Decl. at ¶ 55. He announced a sanctions motion was coming. Luther Decl. at ¶ 56. B.L.'s counsel attempted to confer on the remaining topics of dispute, but to no avail. Luther Decl. at ¶ 57.

This motion followed and was referred to Judge Cisneros. ECF No. 5971.

## III.    LEGAL STANDARDS

### A.    Procedural Requirements

Sanctions are an extraordinary remedy; the procedural requisites applied to such motions are similarly extraordinary. The Federal Rules of Civil Procedure provide that "[a] motion for sanctions for failing to answer or respond *must* include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B) (emphasis added).

This Court's local rules impose further requirements. Rule 37-1 provides that "[t]he Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Civ. L.R. 37-1(a). Rule 37-4 states that motions for sanctions under Rule 37 "must . . . [b]e accompanied by competent declarations which . . . [d]escribe in detail the efforts made by the moving party to secure compliance without intervention by the Court; and . . . [i]f attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." Civ. L.R. 37-4(b)(2)-(3).

Judge Cisneros's standing order also provides: "The parties shall meet and confer (in person, by video conference, or by phone) before filing any motion or non-stipulated request. All motions or non-stipulated requests shall include a certification, which may be submitted separately or included in the body of the filing, that the parties have complied with this meet and confer requirement." Civil Standing Order for Magistrate Judge Lisa J. Cisneros, at ¶ E(1).

### B.    Substantive Standards

Sanctions may be sought under Federal Rule of Civil Procedure 37(b), (c), or (d). "The first step in requesting discovery sanctions is for the movant to establish a violation that triggers a particular provision of Rule 37"; "[d]ifferent types of discovery violations trigger different provisions." *McCart-Pollak v. Saevitzon*, No. 2:20-CV-01624-GMN-NJK, 2025 WL 1706894, at *2 (D. Nev. June 17, 2025).

Rule 37(b) authorizes the district court where an action is pending to impose sanctions "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—

fails to obey an order to provide or permit discovery. . . ." Fed. R. Civ. P. 37(b)(2)(A). "[A] condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37[(b)]" is that the party to be sanctioned "must have violated a Court Order." *Guifu Li v. A Perfect Day Franchise, Inc.,* 281 F.R.D. 373, 390 (N.D. Cal. 2012) (citing *Wanderer v. Johnston*, 910 F.2d 652, 657 (9th Cir. 1990)).

Rule 37(c) sanctions may be appropriate "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . ." Fed. R. Civ. P. 37(c)(1). Rule 26(a) supplies categories of initial disclosures that a "party must, without awaiting a discovery request, provide to the other parties." Fed. R. Civ. P. 26(a)(1). Rule 26(e) provides that parties "who ha[ve] made a disclosure under Rule 26(a)— or who ha[ve] responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . or as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B).

Rule 37(d) sanctions pertain to a party's failure to appear for deposition or to respond at all to written discovery. *See* Fed. R. Civ. P. 37(d)(1)(A)(i)-(ii).

If movant fails to identify an actual discovery violation with reference to a particular sub-section of Rule 37, the analysis ends and the motion for sanctions must be denied. *See McCart-Pollak*, 2025 WL 1706894, at *2. If the movant identifies a discovery violation, the burden may, for practical purposes, switch to respondent to show that any violation was harmless, but only for certain types of alleged violations. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Only after determining that a discovery violation occurred and was not harmless under all the circumstances of the case may a court consider the potential remedies. *See id*.

The standards for imposition of sanctions under a Court's inherent powers are even higher. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting that courts' inherent powers, "because of their very potency . . . must be exercised with restraint and discretion."). Such allegations require either willful violation of a court order, or *proof* of the offending party's subjective intent to derail the proceedings; even a showing of recklessness is not enough. *See id.*; *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090

(9th Cir. 2021) ("[B]ad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires *proof* of bad intent or improper purpose." (emphasis added)); *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (holding that "recklessness . . . is an insufficient basis for sanctions under a court's inherent power"); *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995) ("[F]or those inherent power sanctions that are fundamentally penal . . . the district court must find clear and convincing evidence of the predicate misconduct.").[2]

## IV.    ARGUMENT

Uber's motion fails at each step of the analysis. The company has not met basic procedural requirements for a sanctions motion. Nor has Uber identified a particular discovery violation tied to a particular provision of Rule 37(b), (c), or (d). Though Uber cites each sub-section of that rule except Rule 37(c), it relies on none. But even if it had, the purported (unestablished) violation(s) would be harmless in light of the reopening of discovery. And, in all events, Uber has not identified a lawful remedy for the (unestablished) violations to which it devotes its ire and invective. The motion should be denied.

### A.    Uber's Motion is Procedurally Improper

As was true of Uber's motion for sanctions before the *Dean* trial, Uber's motion regarding B.L. "is procedurally defective." *See* ECF No. 3786 at 1. That is true for at least three reasons, any one of which is sufficient to deny the motion. *See id.*

*First*, Uber's motion for sanctions contains no Rule 37 "certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). That certification is more than mere window dressing. It imposes a real requirement to meaningfully confer with an opposing party in an honest effort to resolve the dispute without judicial intervention. *See Coles v. Eagle*, No. 09-00167 LEK-BMK, 2014 WL 5149188, at *4 (D. Haw. Oct. 14, 2014) ("In light of the fact that the . . . Motion does not comply with the requirements of Rule 37(d)(1)(B), and the fact that the City ultimately obtained [the contested records] . . . this Court declines to impose sanctions."). And it serves to deter precisely the sort of behavior on

---

[2] *But see F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1143 n.11 (9th Cir. 2001) ("The Ninth Circuit has not yet determined by what standard of proof the district court must make its bad faith determination.").

display here, where Uber's lawyers came to the conferral having decided that sanctions were warranted, come what may. Perhaps realizing that their conferral efforts were not up to Rule 37 standards, Uber's counsel did not attempt to make any representation to the Court about their efforts. That failure alone is sufficient to deny this motion.

*Second*, Uber's motion for sanctions does not comply with the local rules, which require both meaningful conferral and competent declarations that describe "in detail the efforts made by the moving party to secure compliance without intervention by the Court." Civ. L.R. 37-4(b)(2); *see also* Civ. L.R. 37-1. These requirements are not satisfied here. As described above, the conferral in question involved a threat of sanctions from Uber's lawyers followed by a refusal to be convinced that sanctions were inappropriate. Further, no declaration (much less a "competent" one) describing the conferral is filed with Uber's motion. The only declaration is from Ms. Vartain (ECF No. 5964-1), who was not present during the conferral in question. Her declaration only attests to the accuracy of the attached correspondence, which includes some email traffic between counsel. But emails do not satisfy conferral requirements. As Judge Cisneros's standing order makes clear, the standard here is "in person, by video conference, or by phone," not by email. Civil Standing Order for Magistrate Judge Lisa J. Cisneros, at ¶ E(1). Uber was required by the local rules to submit "competent declarations" that detailed, based on personal knowledge, the non-email conferral efforts. Civ. L.R. 37-4(b)(2); *see also* Civ. L.R. 7-5 (requiring declaration to "conform as much as possible to the requirements of Fed. R. Civ. P. 56(e)"); Fed. R. Civ. P. 56(e) (referring to Rule 56(c), which provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). They have not, which is another reason to deny the motion.

*Third*, Uber's motion violates the letter and the spirit of Judge Cisneros's standing order. The requisite certification is, as described above, absent. But so too is any attempt to accomplish what the standing order seeks to require: a non-hostile meeting of the parties to openly discuss disputes so that compromises can be reached, the litigation can move forward, and the Court's attention can be reserved for discreet topics that require intervention and resolution. *See generally* Civil Standing Order for Magistrate Judge Lisa J. Cisneros, at ¶ E(1). This motion subverted that process in favor of vitriol,

oppression, and harassment. This is yet another reason the motion should be denied.

**B.      Uber's Motion Lacks Merit**

Even if the Court were to consider the merits of Uber's motion (it need not), it would find that Uber's submission fails at each step of the analysis.

**1.      Uber Has Not Identified a Violation of Rule 37**

Uber's motion for sanctions cites Rules 37 (b), (c), and (d), but does not analyze or apply any of them. Instead, the company's brief merely relies on an eclectic mix of cases from across the country that, like Uber's conferral efforts, are colorful but lack meaning for *this* case. Given the vagueness of Uber's motion, and in the interest of completeness, Plaintiff will assume that Uber seeks fees under each sub-section of Rule 37. None entitle Uber to sanctions relief.

**a.      There is No Violation of Rule 37(b) Because Uber Does Not Identify a Court Order**

Rule 37(b) authorizes courts to impose sanctions when a party violates a court order. Indeed, the existence a court order is "a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37[(b)]." *Guifu Li,* 281 F.R.D. at 390; *see also Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (noting that, when applying its inherent sanctions powers, "a district court must find . . . a willful"—that is, deliberate—"violation of a court order").

Uber's motion does not identify any order of this Court that Plaintiff allegedly violated. *See* ECF No. 5964 at 7 (citing Rule 37(b) remedies available under that sub-section); *id*. at 8 (same). Nor could it. This motion was filed on April 22, 2026. *Id*. Uber asked for leave to file its PTO 8 brief on the same topics on April 17, 2026. ECF No. 5917.[3] Plaintiff opposed on April 21, 2026, ECF No. 5948, and the Court did not grant leave until April 24, 2026, *after* the motion for sanctions had been filed. ECF No. 5982. The Court is still considering that letter brief and has instructed the parties to appear for an in-person hearing "to provide guidance to the attorneys regarding how discovery shall be conducted in these Uber sexual assault and misconduct cases." ECF No. 5823 at 4. There is yet no Court order on the topic of this sanctions motion.

---

[3] Uber had previously filed the PTO 8 letter brief in question without leave, which the Court struck. *See* ECF No. 5823 at 1-2.

Plaintiff will continue to diligently follow the Court's instructions concerning discovery. Plaintiff will also continue to make herself available to work with Uber to resolve discovery disputes. But Uber's motion—which cites no order that Plaintiff allegedly violated—is neither conducive to those efforts nor a proper basis for sanctions under Rule 37(b).

### b.    There Is No Violation of Rule 37(c) Because There Was No Failure to Disclose or Supplement

Rule 37(c) authorizes sanctions when a party fails to provide information or identify a witness as required by Rule 26(a) or (e). Those Rules in turn refer to initial disclosures without the need for a discovery request, and the affirmative duty to supplement prior responses to "an interrogatory, request for production, or request for admission" in a "timely manner" when "the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties . . . ." Fed. R. Civ. P. 26(e)(1)(A)-(B). "Federal Rule of Civil Procedure 26(e) places litigants under an affirmative duty to supplement non-deposition discovery responses, even after the discovery cut-off date." *Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 933 (N.D. Cal. 2013).

### i.    Rule 26(a)

On its face, Uber's motion does not allege that B.L. violated Rule 26(a), nor does it deploy that rule for any part of its argument. *See* ECF No. 5964 at 7 (merely reproducing the text of Rule 37(c)). That alone is enough to end this prong of the analysis. *See Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) ("There is a good reason that we afford leeway to pro se parties, who appear without counsel and without the benefit of sophisticated representation . . . . That logic does not apply to practicing attorneys, nor should the grace extend to them." (citation omitted)). But even if the Court were to liberally construe Uber's motion, no purported failure to disclose violated Rule 26(a) (and, in turn, Rule 37(c)).

### (1)    Fact Witnesses

Uber objects to B.L.'s supposed "failure to identify key fact witnesses."  ECF No. 5964 at 11. But Uber's single paragraph on this topic fails to state a violation of Rule 26(a). The Rule requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use

to support its claims or defenses, unless the use would be solely for impeachment" and "based on the information then reasonably available to" the disclosing party. Fed. R. Civ. P. 26(a)(1)(A), (E). As an initial matter, B.L. did not intend to rely on any of the witnesses named by Uber for *her* claims or defenses; one of her experts, Dr. Mechanic, spoke to some of the listed witnesses in the process of generating her report and timely disclosed that report to Uber. Luther Decl. at ¶¶ 33, 60. Thus, it is not clear that B.L. was under any duty to disclose these witnesses under Rule 26(a). Further, based on recent deposition experience, the purpose of Uber's discovery on these witnesses appears to be exclusively impeachment of B.L., a purpose that does not trigger any Rule 26(a) obligation. *See* Luther Decl. at ¶ 24.

But even if she was under a duty, B.L. *did* disclose all of the names listed in Uber's terse allegations, a fact that Uber omits from its motion. B.L. herself disclosed L.P., J.L., and T.R. during her deposition on June 25, 2025. Luther Decl. at ¶ 58. B.L. amended her Plaintiff Fact Sheet on June 25, 2025, to identify M.B., L.P., R.H., and J.L.[4] And Dr. Mechanic timely disclosed M.B., R.H., and L.P. on September 25, 2025, in her report. *See* Fed. R. Civ. P. 26(a)(2)(B). In short, Uber *was* informed of the existence of these witnesses, there was no conspiracy or artifice to keep Uber in the dark, and Uber has had ample time to seek additional discovery from those people—including depositions that B.L. has *agreed* to. *See* ECF No. 5823 at 3. There is no Rule 26(a) violation here. The only delay in seeking discovery is on Uber's part. *See* ECF No. 5823 at 2-3 (Judge Cisneros noting "serious concerns about the timing of this dispute as to at least some witnesses, whose relevance seems to have been apparent to Uber almost six months ago, only days or weeks after the discovery cut-off").

### (2)    New Health Care Providers

Uber next objects that B.L.'s three new health care providers were not disclosed. ECF No. 5964 at 11-12. As set out in detail in the relevant PTO 8 letter brief, B.L. timely disclosed the names of new health care providers, whom she only had to seek because Uber's aggressive deposition tactics scared off her prior providers. *See* ECF No. 5804. As to the allegations here, B.L. began seeing Lindsay Bisby on August 1, 2025, and disclosed Ms. Bisby to Uber on October 30, 2025. Luther Decl. at ¶ 61. Dr. Bernardin, who appears to have briefly evaluated B.L. as part of a hospitalization for meningitis in August 2025, was

---

[4] Plaintiff has not identified T.R. in her plaintiff fact sheet because Plaintiff never disclosed the sexual assault by an Uber driver to T.R.

disclosed to Uber on February 24, 2026, about a month after medical records concerning his (short) treatment of B.L. were received from the Marker Group.[5] Luther Decl. at ¶ 62. And S.S. is not a health care provider at all, so was not disclosed as such. Undersigned counsel became aware of S.S.—apparently a non-professional "narcissistic-abuse" survivor advocate whom B.L. informally spoke to from time to time—about a month before disclosing her identity to Uber out of an abundance of caution on July 16, 2025. Luther Decl. at ¶¶ 63-64. All of these people will be deposed with B.L.'s consent. *See* ECF No. 5823 at 3. There is no violation of Rule 26(a).

<b>ii.      Rule 26(e)</b>

Uber's motion does not allege that B.L. violated Rule 26(e). It does not cite that Rule at all in its 15-page memorandum. Again, this Court is not required to liberally construe Uber's pleadings and can end the analysis there. *See Huffman*, 81 F.4th at 1021.

But if it continues, the Court will discover only timely supplementation by B.L. and negligence on Uber's part. Rule 26(e) requires parties "who ha[ve] made a disclosure under Rule 26(a)—or who ha[ve] responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . or as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B).

Uber's only allegation is that B.L. over-redacted text messages to exclude relevant information. *See* ECF No. 5964 at 9-10. Where Uber attempts to conjure a conspiracy, there is only the sort of frequent supplementation that Rule 26(e) contemplates and that is not only permitted but required after the close of fact discovery. *See Hernandez.*, 19 F. Supp. 3d at 933. Uber has served three sets of requests for production of documents on B.L. Luther Decl. at ¶ 19. The requests that contemplate productions of B.L.'s text messages include RFPs 2, 3, 4, 7, 8, 9, 26, 29, 31. Luther Decl. at ¶ 19 & Ex 1. Uber served the relevant RFP(s) on March 15, 2025, and B.L. made her first production in response on April 14, 2025. Luther Decl. at ¶ 10. That response was supplemented with new productions of documents on April 30, 2025; May 9,

---

[5] Marker Group is believed to have shared these records with Uber in January 2026. Luther Decl. at ¶ 62.

2025; May 23, 2025; June 11, 2025; June 24, 2025; June 27, 2025; July 16, 2025; August 25, 2025; October 30, 2025; February 24, 2026; and March 31, 2026, as new documents were discovered and collected. Luther Decl. at ¶ 20. Each response contained or referred to an objection like this one:

> Plaintiff objects to Request for Production . . . on the basis that it would encompass materials protected by the attorney-client privilege and/or the attorney work-product doctrine. Plaintiff will not produce such materials. Plaintiff further objects to producing information that is protected from disclosure by the patient-physician privilege, psychotherapist privilege, and or doctor-patient privilege. Plaintiff will only produce such materials to the extent that Plaintiff has placed the materials at issue by virtue of Plaintiff's claims and allegations. Plaintiff will produce all non-privileged communications Plaintiff has in Plaintiff's possession, custody, or control related to either medical treatment or mental health treatment related to the ALLEGED INCIDENT. Plaintiff objects to producing communications that Plaintiff had with Defendant regarding the alleged incident, as this is unnecessarily duplicative of Defendants' Request for Production Number One. As to such documents, Plaintiff reasserts, as if stated in full, the objections stated above in her response to Request for Production Number One. Plaintiff will not search for and produce such documents, absent an affirmative showing of the proportionality of such request. Plaintiff objects to Propounding Parties' use of the overbroad term "relating to." *See, e.g., Frieri v. Sysco Corp.*, 2017 WL 3387713, at *11 (S.D. Cal. Aug. 4, 2017) ("[O]verbroad requests for "all documents" related to the broad categories identified are not proportionate to the needs of the case.").

Plaintiff's Responses to Defendants' First Set of RFPs, at Request 2, Luther Decl. at ¶¶ 10, 70 & Ex. 2.

Uber never challenged those objections and never raised any concern about the redactions until October 16, 2025. Luther Decl. at ¶¶ 27-29. By then, other discovery—of medical records, at depositions, and of other documents—had revealed much of what undersigned counsel had previously redacted. Luther Decl. at ¶ 41. Rule 26(e) does not require supplementation to provide the same information that has "otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Yet, in the spirit of full disclosure, and mindful of the Rules' emphasis on just, speedy, and efficient use of party and Court resources, *see* Fed. R. Civ. P. 1, B.L.'s counsel elected to re-produce text messages that were largely unredacted beginning in February and continuing in March 2026. Luther Decl. at ¶¶ 42-43. The contrived controversy now before the Court followed.

For the avoidance of doubt, B.L.'s counsel has never conspired to hide information from Uber (and, as explained in the next section, Uber has not been prejudiced in all events). To the contrary, B.L. has actively and continuously disclosed *more* than was strictly required by either the Rules or Uber's requests. That certain text messages are newly unredacted is in the nature of a Rule 26(e) supplemental production. In hindsight, undersigned counsel may well have redacted less when initially producing the subject text

messages.[6] But that too is in the nature of sprawling and complex litigation like this MDL. B.L.'s lawyers were simply not aware at the time she made her initial production that Uber's strategy in this litigation was to blame rape victims for getting assaulted on the Uber platform. Luther Decl. at ¶¶ 65-67. It was not conceivable to counsel that Uber would take the position that a woman riding in an Uber late at night *wanted* to be forced to have sex with her driver. *Id.* Indeed, that blame-the-victim litigation strategy did not become apparent until the two recent MDL bellwether trials. *Id.* By the same token, it was not obvious to undersigned counsel that the many, many unresponsive text messages B.L. had redacted *might* form any of Uber's blame-the-victim defense. *See* Fed. R. Civ. P. 26(e)(1)(A). Uber did not update its discovery requests to reflect its shifting strategy, nor has it disclosed its contentions in B.L.'s case. Of course, B.L. does not believe that Uber's exceedingly invasive and oppressive discovery tactics are within the scope of permissible discovery, much less productive of admissible evidence. *See* Fed. R. Civ. P.  26(b)(1); Fed. R. Evid. 412; *see also* ECF No. 5987 at 4-6. But, if given a chance for a do-over, Plaintiff's counsel would seek to more proactively confer with Uber on the topic of redactions (even if conferrals that begin and end with threats of sanctions from Uber's lawyers are not often productive).[7] B.L. remains committed to fulfilling her discovery obligations and will endeavor to do all in her power to avoid conflicts like this one.

Uber's attempt to weave a tale of bad faith, and thereby invoke this Court's inherent powers, runs into the facts outlined above. Uber's submission is missing any proof of B.L.' (or her lawyers') subjective intent. *See Chambers*, 501 U.S. at 44; *Rousseau*, 985 F.3d at 1090; *In re Keegan Mgmt.*, 78 F.3d at 436 (9th Cir. 1996); *see also* ECF No. 5964 at 8. B.L. has and continues to produce required materials, even if her good faith attempts to comply with her discovery obligations are not to Uber's liking. Indeed, Uber's many vitriolic references to conspiracy and bad faith are, when stripped of their hyperbole, little more than the company's *assumption*—without evidence—that the complexities and untidiness of an ordinary

---

[6] Including perhaps the single word from a text message that Uber makes much of in its motion. *See* ECF No. 5964 at 2, 13-14. That issue is dealt with more fully in Plaintiff's portions of the PTO 8 letter brief on redactions issues. ECF No. 5804. As described there, the word at issue is not as significant (or responsive) as Uber seems to believe and, in all events, the nature of Uber's defenses in this action were not as clear at the time of original production as they are now. Uber's complaints about Plaintiff's privilege log are also addressed more fully in Plaintiff's PTO 8 submissions.

[7] B.L.'s proposed order denying Uber's motion includes a passage requiring parties seeking sanctions to first obtain leave of Court. B.L. believes such a prerequisite will deter quick resorts to threats in the future.

person's life are tantamount to the requisite ill intent. But, as explained throughout, B.L. has no interest in delay or in abusing these proceedings. The only party seeking delay here is Uber.

Uber has not identified a Rule 26(e) violation, so there is no violation of Rule 37(c). Nor has Uber invoked anything more than assumptions to justify its claims of bad faith. The law requires more and the motion should be denied.

### c.    There Is No Violation of Rule 37(d) Because B.L. Did Respond to Discovery Requests

Uber appears to claim that B.L. violated Rule 37(d)(1)(A)(ii). ECF No. 5964 at 7-8. That Rule says that sanctions may issue when "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). But it only applies when a party *completely* fails to timely respond or object to a discovery request under Rule 33 or 34. *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1339-40 (9th Cir. 1985) (reversing the district court's grant of sanctions under Rule 37(d) because a party's "'answers were incomplete, evasive and in some cases false'" and holding that the party "'did not "fai[l] ... to serve answers or objections to interrogatories. . . .'" so "Rule 37(d) . . . did not give the district court authority to impose sanction" (citations omitted)); *see also Zipperer v. Premera Blue Cross Blue Shield of Alaska*, No. 3:15-CV-00208 JWS, 2017 WL 2176518, at *1 (D. Alaska May 14, 2017) (holding that Rule 37(d) "applies where a party takes *no action whatsoever* in response to properly-served discovery requests, including interrogatories and RFPs, or fails to appear for a properly-noticed deposition" (emphasis added)).

Incomplete responses or objections cannot be the subject of a Rule 37(d)(1)(A)(ii) sanctions motion; "[i]f the discovering party deems another party's discovery response to be inadequate, the party must move to compel an adequate response under Rule 37(a)." *Zipperer*, 2017 WL 2176518, at *1.

Uber's motion admits that B.L. both timely responded and objected to the company's discovery requests; there is no allegation that B.L. failed to respond *at all* to a request under Rule 33 or 34. To the contrary, B.L. has timely responded and/or objected to Uber's many, many requests for discovery. Luther Decl. at ¶ 68. Uber's objections to those responses must be dealt with via a "mo[tion] to compel an adequate response under Rule 37(a)." *Zipperer*, 2017 WL 2176518, at *1. That motion, ECF No. 5804, is pending before the Court. Uber has failed to state a Rule 37(d) violation.

### 2.    Any Violation Was Harmless

Even if the Court were to disagree and believe that some violation of the Rules may have occurred, that violation has been rendered harmless by recent developments. *See generally Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) ("We have found the element of prejudice to be essential, stating that sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" (citation omitted)). Although Uber's prejudice allegations are relatively superficial—the company mostly just repeats its invective about Plaintiff's recent productions—they seem to stem from the fact that, when Uber filed their motion, discovery in B.L.'s case was closed. *See* ECF No. 5964 at 12-13. Putting aside the fact that this Court authorized further discovery at Uber's request, ECF No. 5823, and granted it leave to file a motion to compel, ECF No. 5804, recent developments have completely dissipated any possible prejudice. Judge Breyer reopened discovery in all Wave 1 bellwether cases, including this one, on May 1, 2026. ECF No. 6063 at 2. And Judge Cisneros vacated the previously applicable backstop discovery deadline and the requirement that parties seek leave before raising discovery disputes. ECF No. 6067. If the new data provided by B.L.'s supplemental responses is so important to Uber's defense, there is now no impediment to the company seeking what they think they need. Any disputes about what Uber (or Plaintiff) is entitled to can be resolved in the ordinary course pursuant to PTO 8. Neither party can now complain too loudly of unwarranted delay. Uber cannot make the showing of prejudice required to obtain sanctions under any of its (underdeveloped) theories. This is another reason to deny the motion.

### C.    The Remedies Uber Seeks Are Inappropriate

Finally, even if the Court were to conclude that some sort of sanctions may be warranted, the sanctions Uber seeks are not. *See* ECF No. 5964 at 14-15. There is no reason to remove B.L. from the Wave 1 bellwether pool for the same reasons explained above: all parties have ample opportunity to conduct any remaining discovery they believe necessary to present their case to the jury. Indeed, avoiding surprises—that is, matters not fully aired in discovery—is the very reason that Judge Breyer reopened Wave 1 discovery, and reserved ruling on B.L.'s trial date for himself. ECF Nos. 6063 at 2, 5971. Kicking B.L. out is not an appropriate response to B.L.'s supplemental discovery responses. Indeed, Uber's objections to B.L.'s redactions are already being dealt with in the appropriate PTO 8 forum. If the Court

agrees with Uber in that motion, it can enter appropriate orders to compel discovery, a less severe yet still curative remedy. *See generally Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (noting that "the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery"). There is no reason to take action here too.

Uber also makes a fleeting and unsupported request for attorneys' fees and costs. ECF No. 5964 at 14. But it fails to make the showing required by the local rules. Requests for attorneys' fees in connection with a sanctions motion require a declaration "itemiz[ing] with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set[ting] forth an appropriate justification for any attorney-fee hourly rate claimed." Civ. L.R. 37-4(b)(3). Uber has not submitted such a declaration. And, in all events, Uber also owes Plaintiff materials that the company has hence forth withheld, and which Judge Breyer just ordered produced. ECF No. 6063. Having to continually supplement productions, including in response to court orders, is a feature of Rule 26 and Rule 37, not a departure that would warrant attorneys' fees. All parties in this action should get on with the business of preparing this case for trial without any further detours into overwrought demands for sanctions and fees.

## V.    CONCLUSION

Uber's motion should be denied.


Dated:  May 6, 2026                                    Respectfully submitted,


                                                        /s/ *Sommer D. Luther*
                                                        Sommer D. Luther, *Pro Hac Vice*
                                                        sluther@wagstafflawfirm.com
                                                        Wagstaff Law Firm
                                                        940 Lincoln St.
                                                        Denver, CO 80203
                                                        Telephone: 303-376-6360
                                                        Facsimile: 888-875-2889

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record as maintained in the CM/ECF electronic system.

Dated:  May 6, 2026

/s/ *Sommer D. Luther*
**SOMMER D. LUTHER**