**WAGSTAFF LAW FIRM**
Sommer D. Luther*
940 Lincoln Street
Denver, CO 80203
Tel: (303) 263-8949
Fax: (303) 376-6361
sluther@wagstafflawfirm.com

*Attorney for Plaintiff*
*\*Appearing Pro Hac Vice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB<br><br>MDL No. 3084 |
| This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc., et al.*, No. 24-cv-7940 | **DECLARATION OF SOMMER D. LUTHER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 5964)**<br><br>Honorable Charles R. Breyer |

I, Sommer D. Luther, declare:

1.  I am an attorney and partner at Wagstaff Law Firm, and counsel for Plaintiff in the above-captioned Multi-District Litigation. I am a member of the State Bar of Colorado and am admitted to practice before this Court pro hac vice. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I respectfully submit this declaration in support of Plaintiff's Opposition to Defendants' Motion for Sanctions (ECF No. 5964).

2.  An Uber driver sexually assaulted Plaintiff B.L. on August 12, 2022.

3.  On March 15, 2025, Uber served its Requests for Production of Documents, Set One on Plaintiff B.L, which sought a wide array of Plaintiff's personal, medical, and digital history.

4.  Defendants defined "COMMUNICATION(S)" "in its broadest sense to encompass ANY transmission or exchange of information, ideas, facts, data, proposals, OR ANY other matter, whether between individuals OR between OR among members of a group, whether face-to-face, by telephone, letter, e-mail, message, telegram, OR ANY other means of written, electronic, OR other medium."

5. Defendants' Requests for Production of Documents, Set One sought "ALL COMMUNICATIONS RELATED TO the ALLEGED INCIDENT that YOU have had with ANY PERSON."

6. Defendants' Requests for Production of Documents, Set One sought "ALL COMMUNICATIONS YOU have had with ANY PERSON regarding the emotional distress YOU claim as a result of the ALLEGED INCIDENT."

7.  Defendants' Requests for Production of Documents, Set One sought "ALL DOCUMENTS RELATING TO YOUR medical treatment AND ANY diagnoses within the five (5) years preceding the ALLEGED INCIDENT."

8.  Defendants' Requests for Production of Documents, Set One sought "ALL DOCUMENTS RELATING TO medical treatment YOU sought OR received for the alleged INJURIES YOU claim to have sustained as a result of the ALLEGED INCIDENT."

9.  Defendants' Requests for Production of Documents, Set One sought "ANY AND ALL writings by YOU RELATED TO the ALLEGED INCIDENT OR RELATED TO ANY INJURIES YOU claim to have sustained as a result of the ALLEGED INCIDENT, INCLUDING but not limited to notes, journal entries, diary entries, OR writings of ANY kind."

10. Plaintiff B.L. timely responded to the Requests for Production of Documents, Set One on April 14, 2025, which included proper objections on the grounds of attorney-client privilege, work-product and patient-physician privileges.

11. My office conducted a comprehensive forensic extraction of Plaintiff B.L.'s mobile device that spanned many years of her private life.

DECLARATION OF SOMMER D. LUTHER ISO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

12. My office manually parsed through dozens of contacts and threads and isolated messages responsive to Defendants' Requests. The documents were reviewed line-by-line for responsiveness, privilege, and the highly sensitive privacy concerns of Plaintiff and any third parties.

13. My office also obtained and reviewed Plaintiff B.L.'s email accounts and available social media profiles. Plaintiffs agreed to incorporate all social media topics contemplated by the search terms to be agreed upon by the parties in a good-faith spirit of cooperation with defense. The documents were reviewed line-by-line for responsiveness, privilege, and the highly sensitive privacy concerns of Plaintiff and any third parties, which in some cases take the documents outside the scope of permissible discovery.

14. The volume of information and evolving nature of this litigation requires ongoing, rolling productions, which Uber did not object to.

15. The production of B.L.'s text messages and emails was an iterative process.

16. Over the course of this litigation, the parties conducted sixteen fact-witness depositions and engaged in voluminous written discovery (which timely included all plaintiff fact witnesses). Plaintiffs agreed to more fact witnesses than the three originally contemplated by the joint deposition protocol.

17. As these depositions took place and the factual record developed, new individuals, aliases, and contextual details came to light, which informed the scope and content of document discovery.

18. Plaintiff B.L. has continued to review for and produce responsive information to fulfill ongoing discovery obligations.

19. To date, Uber has served three sets of Requests for Production of Documents for a total of 63 requests. The requests that contemplate productions of B.L.'s text messages include RFPs 2, 3, 4, 7, 8, 9, 26, 29, 31 from Requests for Production, Set One.

20. To date, Plaintiff B.L. has produced eleven supplemental responses to Uber's Requests for Production, Set One, on April 30, 2025; May 9, 2025; May 23, 2025; June 11, 2025; June 24, 2025; June 27, 2025; July 16, 2025; August 25, 2025; October 30, 2025; February 24, 2026; and March 31, 2026, as new documents were discovered, collected, and reviewed.

DECLARATION OF SOMMER D. LUTHER ISO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

21. To date, Plaintiff B.L. has produced one supplemental response to Uber's Requests for Production, Sets Two and Three.

22. To date, Plaintiff B.L. has produced 379 pages of texts, email, and social media messages.

23. My office undertook painstaking efforts to protect the extensive amount of highly sensitive, non-relevant information across dozens of private conversations between Plaintiff and her family and friends that span three years and nine months' worth of communications.

24. During a deposition in this case, Uber's lawyers disclosed highly intimate details of B.L.'s personal life to a third party who was not previously aware of those details. The details of this offense are disclosed in Plaintiff's portion of the joint PTO 8 letter, ECF No. 5987.

25. I met and conferred with Uber in July 2025 regarding redactions in messages between Plaintiff and M.B. and Plaintiff and W.L.

26. Following this conferral, I unredacted some of the messages between her ex-boyfriend, W.L. and Plaintiff and produced them.

27. Uber did not raise an objection to those redactions.

28. Nor did Uber file a motion to extend discovery deadlines to review the messages, a motion compel further unredacted productions, or any other motion regarding such messages while discovery was open.

29. Uber, through counsel Ms. Katie Benfield, did not raise any concern about redacted communications until October 13, 2025, a week after the close of discovery.

30. Uber's counsel, Katie Benfield has been the point of contact for discovery issues since the fall of 2025.

31. In February 2026, Mr. Michael Vives became involved along with Ms. Benfield during meet and confers.

32. At no time since B.L.'s productions of documents began has my office participated in a meet in confer with Laura Vartain about plaintiff-specific discovery.

33. In October 2025, Uber's counsel for the first time raised generalized concerns about redactions and mentioned concerns about M.B., R.H. and L.P., who were collateral witnesses mentioned in Dr. Mechanic's report, which was timely disclosed.

34. I requested more specificity about Uber's objections so that Plaintiff could make a meaningful response to their concerns.

35. Uber's response was to re-send an email that it had previously sent about redactions and did not raise the issue of collateral witnesses again until February 13, 2026.

36. Instead of meaningfully restarting conferrals, Uber stated on February 13, 2026, that it was initiating PTO 8 briefing despite the company's three months of silence about these issues.

37. I agreed to the deposition of the witness Uber requested and proposed a discovery protocol for searching Plaintiff's text messages.

38. I communicated willingness to re-review specific messages or threads in response to Uber's concerns.

39. In a good-faith effort to resolve disputes without court involvement, I conducted a secondary review of the previously redacted materials.

40. During this review, I discovered many non-responsive text messages that did not fit within any discovery sought by Uber, some of which disclosed highly personal and sensitive information about Plaintiff B.L.'s life.

41. I also came to realize that some of the redacted text messages' content had been disclosed in other contexts in this litigation.

42. I voluntarily and unilaterally undertook a process to un-redact materials that did not strictly meet the "highly sensitive" threshold outlined in the ESI protocol.

43. Supplemental productions including these messages were made in February 2026 and March 2026.

44. To date, Plaintiff B.L. has produced over 2,403 pages of documents in this litigation, including these many text messages.

45. Despite Plaintiffs' efforts to supplement productions and proactively resolve the disputes, Uber refused to engage in a meaningful meet and confer process.

46. Instead of collaborating, Uber relied on vague, blanket complaints about the redactions even after unredacted materials were produced; Uber did not identify specific concerns or propose a solution.

DECLARATION OF SOMMER D. LUTHER ISO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

47. I proposed a concrete solution if Uber was not satisfied with the un-redacted productions: running a targeted search term protocol, using terms such as "Rape," "Uber," "Assault," "Litigation," "Settlement," and "Driver," across Plaintiff's texts and emails to objectively resolve any remaining redaction dispute.

48. An entire month after B.L. had produced the unredacted materials, and a week after Judge Breyer set Plaintiff's case for trial, Uber flatly rejected the compromise and asserted that the issues were "apparent on the fact of the documents," and declared an impasse without offering any potential solutions.

49. Uber's failure to meaningfully confer also extended to the dispute over fact witness depositions.

50. After a March 31, 2026 ,meet and confer, Ms. Benfield misstated Plaintiff's position on depositions.

51. I reiterated that I was willing to move forward with depositions with reasonable parameters in place, such as time limits, and had been for months.

52. When Uber asked for an initial proposal on time allocation, I responded, but Uber immediately dismissed the offer and terminated the discussion in favor of PTO 8 briefing.

53. Despite proposing solutions, Uber continued to simply refuse to participate in arriving at a resolution, all while its tone of outrage escalated markedly.

54. Uber's counsel Mr. Vives finally asked for a meet and confer on April 7, 2026, which Ms. Benfield and Mr. Vives attended (but not Ms. Vartain).

55. Mr. Vives opened the discussion by expressly stating that he and his team had decided that sanctions against Plaintiff were called for and there was really nothing that Plaintiff could say to change their minds.

56. Mr. Vives announced a sanctions motion was coming.

57. I attempted to confer on the remaining topics of dispute, but to no avail.

58. Plaintiff B.L. disclosed L.P., J.L. and T.R. during her deposition on June 25, 2025. J.L., M.B., L.P., R.H. and T.R. had previously been disclosed to Uber in written discovery responses served before the deposition.

DECLARATION OF SOMMER D. LUTHER ISO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24 CV 7940

59. Plaintiff B.L. amended her Plaintiff Fact Sheet on June 25, 2025, to identify M.B., L.P., R.H. and J.L.

60. Dr. Mechanic timely disclosed M.B., R.H. and L.P. on September 25, 2025, in her report.

61. Plaintiff began seeing Lindsay Bisby on August 1, 2025, and disclosed Ms. Bisby to Uber on October 30, 2025.

62. Dr. Bernardin appears to have briefly evaluated B.L. as part of a hospitalization for meningitis in August 2025, and was disclosed to Uber on February 24, 2026, about a month after medical records concerning his (short) treatment of B.L. were received from the Marker Group. I believe that Marker Group shared these records with Uber in January 2026.

63. S.S. is not a healthcare provider at all, so was not disclosed as one of B.L.'s providers.

64. I became aware of S.S. about a month before disclosing her to Uber out of an abundance of caution on July 16, 2025. I believe S.S. is a victim advocate.

65. At the time of B.L.'s initial production on April 14, 2025, it was not clear to me that Uber's strategy in this litigation was to blame rape victims for getting assaulted on the Uber platform and that Uber's discovery positions would be in furtherance of that strategy.

66. Earlier in this litigation, I did not believe that Uber would take the position that a woman riding in an Uber late at night *wanted* to have sex with her Uber driver despite being unable to give consent.

67. However, I have followed the bellwether trials in this MDL and have learned from those trials of Uber's blame-the-victim litigation strategy.

68. Plaintiff B.L. has timely responded and/or objected to Uber's many requests for discovery and intends to continue doing so.

69. **Exhibit 1** to this declaration is a true and accurate summary of the B.L.'s discovery responses in this bellwether case. It was created for the purposes of this opposition and contains the true names of B.L. and third parties and so is subject to a concurrently filed administrative motion to seal.

70. **Exhibit 2** to this declaration is a true and correct copy of Plaintiff's Responses to Defendants' First Set of RFPs, which I believe is a fair representation of the type of objection B.L.

has lodged to the discovery at issue in Uber's motion. contains the true name of B.L. as well as other confidential information and so is subject to a concurrently filed administrative motion to seal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2026 in Denver, Colorado

_____

Sommer D. Luther
*Attorney for Plaintiff B.L.*

DECLARATION OF SOMMER D. LUTHER ISO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24 CV 7940