**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to:<br><br>ALL MATTERS | **JOINT PTO 8 LETTER REGARDING SUPPLEMENTATION OF DISCOVERY**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G - 15th Floor |

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding outstanding Plaintiffs' request for supplementation of Uber's discovery.

DATED: May 15, 2026                    Respectfully Submitted,

By:    /s/ Elizabeth M. Wilkins
ROOPAL P. LUHANA (*Pro Hac Vice*)
ELIZABETH WILKINS (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com
*Co-Lead Counsel for Plaintiffs*

By: */s/Christopher D. Cox*
Christopher D. Cox (Pro Hac Vice)
Jessica Davidson (Pro Hac Vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
christopher.cox@kirkland.com
jessica.davidson@kirkland.com

Laura Vartain Horn (SBN 258485)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Pro Hac Vice)
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER,
LLC, And RASIER-CA, LLC

**Plaintiffs' Position:**

Plaintiffs seek an Order requiring Uber to supplement its document production by producing documents dating December 1, 2024 through December 31, 2025. To date, Uber has generally only produced documents from custodial files dating through December 1, 2024. Uber's refusal to supplement its document production is at odds with the Federal Rules of Civil Procedure, which permit discovery on any nonprivileged matter that is relevant to any party's claim and requires timely supplementation. *See, e.g., Hatamian v. Advanced Micro Devices*, No. 14-cv-00226, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."); *In re Bofl Holding, Inc. Sec. Litig.,* No. 3:15-cv-02324-GPC-KSC, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021) ("The relevant time period for discovery must be determined on a case-by-case basis. There is no rule that discovery be constrained to a particular time period beyond the general standard under Rule 26(b)(1) requiring that discovery be relevant and proportionate.").

As the Court has previously recognized, ongoing production of documents is warranted because "Uber continues to operate the rideshare service at issue in this litigation and new Plaintiffs using that service continue to allege that they were sexually assaulted or harassed by drivers." (ECF 1879 at 4). In fact, more than 200 plaintiffs have filed claims alleging that they were sexually assaulted by their Uber drivers after December 1, 2024. Each of these 200 plaintiffs has the right to discovery from the time period during which they were injured. Plaintiffs allege that, even today, Uber continues to fail to adequately vet, train, and monitor its drivers while it also continues to vehemently promote Uber's safety to the public. And while Uber has implemented a Women's Preferences program in recent months, Uber still has not implemented basic safety measures like video and audio recording. Moreover, with respect to incidents that occurred both before and after December 1, 2024, Uber's repeated actions or inactions are integral to the reprehensibility analysis to support a punitive damages award. *See, e.g.*, *Lopez v. Watchtower Bible*, 246 Cal.App.4th 566, 592-593 (2016) (post-conduct evidence "may also be relevant on the issue whether [the defendant] acted with the willful and conscious disregard for [the plaintiff's] rights.").

Plaintiffs are therefore entitled to discovery including but not limited to the following topics:
- background check policies and procedures, including documents regarding the pros and cons of alternatives;
- Uber's policies and procedures for training its drivers with respect to sexual assault and sexual misconduct including copies of all training materials;
- the policies and procedures Uber used to match plaintiffs with their Uber drivers;
- the S-RAD "features" (metrics) that were in place that the time of the plaintiffs' trip as well as metrics that were available but not used in the S-RAD algorithm and metrics that Uber considered but did not build into S-RAD, as well as documents regarding the rationale for including or excluding S-RAD features/metrics;
- Uber's knowledge that Uber users experience sexual assault as a result of using Uber, including: the frequency of assaults; the patterns and trends associated with trips resulting in sexual assault or misconduct reports; and drivers reported for sexual assault or sexual misconduct;
- Uber's reporting, investigation, and deactivation policies;

1

- The purported safety features or tools that were available to plaintiffs, as well as the effectiveness of those features;
- Safety features or tools that Uber considered and/or tested but did not implement, for example, video and audio recording, including any testing or cost-benefit analysis Uber conducted;
- Uber's bring your own device (camera) programs;
- Potentially matching rides with known risk factors only with drivers who have dashcams;
- Uber's data about trips with audio or video recording, included but not limited to the number of drivers who have cameras in their vehicles, data from pilot programs, and data regarding safety incident reports and the presence or absence of audio or video recording;
- Uber's Women Preferences program, which was piloted and made available after December 1, 2024, including discussions regarding the timing and reasons for implementing the program, the costs of the program, and the efficacy of the program in reducing safety incidents;
- Uber's efforts to reduce sexual assault and sexual misconduct on its platform;
- Uber's marketing efforts to attract female riders;
- Uber's marketing efforts with respect to safety;
- Uber's consumer research with respect to female riders or safety;
- Uber's communications and partnerships with sexual violence organizations;
- Uber's communications with law enforcement, the media, and government entities regarding sexual assault or sexual misconduct on its platform;
- Documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries within the United States of Uber with respect to sexual assault, as required by Pretrial Order No. 5 ("PTO 5"), paragraph 6(B) (ECF 175);
- Documents Defendants produced in other Uber sexual assault cases, including arbitrations, as required by PTO 5, paragraph 6C.

Uber's burden objections should fail.[1] First, Uber's estimate for TAR review is significantly inflated. It ignores that the core set of training documents that will determine responsiveness will be nearly identical to the pre-2025 documents, the custodians remain unchanged (and have been reduced by nearly half), the post-2024 documents cover primarily the subjects as the pre-2025 documents and are unlikely to contain meaningfully different vocabulary, and the new documents, even by Uber's estimates, represent only a small fraction of the current production. *See* Jaffe Decl. ¶¶ 12-17. Second, Uber's privilege review estimate is likewise exaggerated. The identities of Uber attorneys are already largely known from the pre-2025 review

---

[1] *See, e.g., In re XF-TRW Airbag Control Units Prod. Liab. Litig*., 2022 WL 19425956 at *3 (C.D. Cal. Feb 9, 2022)("the party who resists discovery has the burden to show discovery should not be allowed" by "clarifying, explaining, and supporting its objections"); *Debeaubien v. California*, 2021 WL 1616111, at *2 (E.D. Cal. Apr. 26, 2021) (when opposing discovery on burden grounds, the party bears the obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents); *Ardestani v. BMW of North Am*., LLC, 2018 WL 6016955, at *3 (C.D. Cal. May 4, 2018) (quoting Advisory Committee Notes to the 2015 Amendments to Rule 26) ("the burden of responding to discovery lies heavier on the party who has more information, and properly so").

process, and the documents at issue were generated after this litigation commenced, making them more readily identifiable and cullable than the prior production, which stretched back to 2012. *Id.* at ¶¶ 13-18. Even accepting Uber's estimates at face value, the asserted burden does not outweigh Plaintiffs' entitlement to relevant discovery (both those with pre- and post- 2025 incidents), and considering the number of claims filed, remains proportionate to the needs of the case.[2]

Uber is also wrong that Plaintiffs have not attempted to be targeted about their asks. To the contrary, the foregoing list demonstrates that Plaintiffs have substantially narrowed and targeted the requested discovery. Moreover, Plaintiffs did offer to table their requests for supplemental safety data (which is the subject of a pending dispute under PTO 8), so long as Uber agrees not to discuss safety data or statistics from the period during which Uber has not provided this information to Plaintiffs at the Wave 1 trials. Uber has not yet responded to this offer of compromise.

Finally, the Court should disregard Uber's kitchen sink argument regarding potential leaks of confidential information, which Uber itself relegates to a footnote. As this Court has already recognized, there is no evidence that the Plaintiffs or their counsel improperly disclosed any confidential information, to which Uber's own employees and counsel had equal or greater access. (ECF No. 3695).

---

[2] Despite the clear deadlines under PTO No. 8 (ECF No. 323) which required Uber to provide its portion of this letter yesterday, May 14, and finalize all edits by 3:00 on May 15, Uber provided a new declaration from Ms. Brown at 7:00 p.m. on May 15 which contained significant modifications and additions. Given that timing, Plaintiffs are unable to meaningfully respond. If the Court is inclined to credit or rely on Ms. Brown's declaration, Plaintiffs seek the opportunity to submit a further response.

## II.    Defendants' Position:

The Federal Rules "do[] not impose a 'never-ending obligation to produce documents continuously as they are created.'" *Marlin v. Bos. Sci. Corp.*, No. 8:20-CV-181, 2021 WL 424440, at \*2 (D. Neb. Feb. 8, 2021) (citation omitted); *see also* ECF 1879 at 4 (holding "Uber is not expected to 'produce discoverable documents in real time as they are created'" (citation omitted)). Courts have recognized that "endless rolling production would undermine the mandate of Federal Rule of Civil Procedure 1 to apply the rules 'to secure the just, speedy, and inexpensive determination of every action,' and Rule 26(b)(2)(C)(iii) to ensure that discovery is proportionate to the needs of the case." *Our Children's Earth v. Leland Stanford Junior Univ.*, No. 13-CV-00402-EDL, 2015 WL 12964638, at \*3 (N.D. Cal. Oct. 29, 2015). This Court has also cautioned that endless discovery would not be appropriate. ECF 1879 at 4; ECF 1938.

Nonetheless, Plaintiffs seek an order requiring Uber to do just that: collect, process, review and produce documents from dozens of custodians and central sources for an entirely new time period—December 1, 2024 through December 31, 2025. Plaintiffs label this request "supplement[ation]" but they identify nothing that is materially incomplete or inaccurate. The request is "more accurately [] described as a new round of discovery collection" and "an unduly burdensome re-collection process." *See Marlin*, 2021 WL 424440, at \*2 (denying request to "supplement" discovery where plaintiff's request was "not really 'supplementation'"); *see also Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2018 WL 4849312, at \*3 (D. Or. Oct. 5, 2018) (denying motion to compel where plaintiffs were "not, in fact, requesting supplementation, but [we]re requesting ongoing discovery"). Such a wholesale request for an updated document production should be denied for multiple reasons.

*First*, Plaintiffs' request defies this Court's prior order making clear that a "limitation of custodial document production to documents created through December 1, 2024" was appropriate. ECF No. 2028, at 2. The Court has already rejected Plaintiffs' bid to extend the document production cut-off date. In so holding, the Court expressly considered Plaintiffs' argument—identical to the argument Plaintiffs advance here—that "so long as new cases continue to be filed, newly created documents *could* continue to be relevant," but held that "Plaintiffs have not shown any special relevance of documents created after December 1, 2024." *Id.* Plaintiffs do not – and cannot – offer any meaningful basis to revisit this ruling because these circumstances remain true today; as demonstrated herein, Plaintiffs have not identified a single fact or topic that is not covered by the current production. Nor do they identify any uniquely probative 2025 documents that would justify revisiting that ruling. Even Plaintiffs concede that the "post-2024 documents cover primarily the subjects as the pre-2025 documents and are unlikely to contain meaningfully different vocabulary." As such, Plaintiffs have presented no basis to depart from this Court's prior Order refusing to extend the production cut-off date.

*Second*, this Court previously recognized that extending the cut-off date for common discovery "[wa]s neither feasible nor proportional to needs of this litigation." *Id.*; *see also id.* (noting targeted collections would be more appropriate than "the full scope of discovery" to not impose "undue burden."). To date, Uber has produced more than 5.5 million pages of documents and hundreds of millions of rows of data. Forcing Uber to update the entire document production would require Uber to collect, process and review nearly one million documents. *See* Brown Decl. ¶ 9.[3] This effort would be a months-long collection and processing process, *id.* ¶¶ 6-7, followed

---

[3] Contrary to Plaintiffs' assertion, Uber provided a draft of Ms. Brown's declaration on May 14, and following the provision of Mr. Jaffe's declaration for the first time on the afternoon of May

by a "substantial" and more time-consuming review process (6,080 to 8,400 hours of review time) that would be particularly onerous "because the documents were generated during the pendency of the litigation," and thus the volume of privileged documents is expected to be considerably higher. *Id.* ¶¶ 8-11. The costs incurred are estimated to total ***more than $1,500,000***. *Id.* ¶¶ 12-15.[4] Although Plaintiffs claim these figures (provided with evidentiary support) are "significantly inflated," they do not dispute that Uber will be subjected to substantial burden. Thus, in light of Uber's evidence of the substantial expense and hardship, Plaintiffs cannot demonstrate that subjecting Uber to "an unduly burdensome re-collection process" is warranted. *See Marlin*, 2021 WL 424440, at *2. Plaintiffs' generalized assertion that "more than 200 plaintiffs have filed claims alleging" sexual assault after December 1, 2024 does not justify requiring Uber to re-do common discovery. Even accepting that figure, those cases represent ***only approximately 5% of the total cases*** on the MDL docket (none of which are part of the current bellwether pool), and thus cannot support a wholesale "supplement[ation]" of the millions of pages and data already in Plaintiffs' possession. Proportionality does not permit imposing a seven-figure, months-long undertaking to pursue duplicative discovery for a small subset of non-bellwether cases.

Plaintiffs also ignore that Uber has already produced (or will agree to produce) some of the documents they now seek. This Court previously recognized that Plaintiffs "***might***" be permitted to seek "***narrowly targeted*** custodial discovery of particularly relevant documents created after" the December 1, 2024 cut-off date, such as where "Uber later changed a relevant policy." ECF No. 2028, at 2 (emphasis added). The Court noted that such targeted discovery requests are "expected" to entail "a much smaller subset of custodian(s), document request(s), and search term(s) than the full scope of discovery thus far, such that responsive documents could be gathered and produced on an expedited basis without undue burden." *Id*. Consistent with this guidance, based on a negotiated agreement with Plaintiffs in October 2025, Uber is currently producing documents from ***five*** agreed-upon individuals for the period December 1, 2024 through October 1, 2025 pertaining to Uber's Women's Preference program which launched in the U.S. in July 2025.[5]

In addition, Uber agrees to produce data regarding sexual assault and misconduct reported incidents from Flack for 2025 (previously produced through 2024), thereby satisfying Plaintiffs' request for "the frequency of [alleged] assaults" (as well as other requests made by Plaintiffs).[6] Uber is further willing to meet and confer regarding the production of documents on "smaller" and/or "targeted" topics that have "changed" in 2025. *See* ECF No. 2028, at 2. But Plaintiffs have failed to  identify ***any*** such "changed . . . policy" or "targeted" topic. *Id*. Rather, Plaintiffs seek

---

15, Ms. Brown made minor edits to her declaration, which was then provided to Plaintiff's counsel.  No "new" declaration was provided.

[4] Notably, these estimated costs do not account for processing, review and production of ***non-custodial*** materials that may be necessary to address Plaintiffs' supplementation requests.

[5] Ignoring the prior agreement and ongoing efforts, Plaintiffs now invoke that same program as a justification for an updated production, but Plaintiffs do not demonstrate that ***more*** documents on this topic would be relevant, non-duplicative or proportional to the needs of this case.

[6] Although Uber has affirmatively offered to produce data that Plaintiffs specifically request in their letter, Plaintiffs have not seriously offered to narrow or limit their requests in compliance with this Court's prior order. Instead, Plaintiffs offer to "table their requests for supplemental safety data" if Uber agrees to limit evidence it can introduce at future trials. Plaintiffs' efforts to unilaterally control Uber's trial strategy at this phase is not proper, and highlights that Plaintiffs' requests are not necessary to litigate their cases, but rather intended to burden and harass.

wholesale "supplement[ation]" of the entirety of the document production, generally claiming that they are "entitled" to discovery that has already been *extensively* addressed in the document production, written discovery and deposition testimony that has occurred to date—for example, Uber's "background check policies and procedures, Uber's training policies, Uber's safety features, "Uber's reporting, investigation,  and deactivation policies," Uber's marketing efforts and "Uber's knowledge that [] users experience sexual assault."[7] These expansive requests disregard this Court's prior guidance on the scope of permissible discovery, *id.*, and unnecessarily duplicate existing discovery.

   ***Lastly***, to the extent this Court deems that "supplementation" is warranted (beyond what Uber has agreed to undertake), cost-shifting is appropriate. Uber has already produced millions of pages of documents and hundreds of millions of rows of data. Pursuant to FRCP 26(c), although "the producing party should ordinarily bear the costs of production," allocation of expenses to the requesting party is appropriate "to protect [the producing party] from undue burden and expense." *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *1 (D. Kan. June 18, 2020), *aff'd*, No. 18-1100-EFM, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) (granting motion to cost-shift where defendant "ha[d] already borne its fair share of expenses providing discovery on this subject matter by accommodating [plaintiff]'s ESI requests for the custodians and search terms"); *see also In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 588 (E.D.N.Y. 2024) (granting a motion to produce "additional custodians" but noting that "costs" would "be borne by [p]laintiffs and Exactech"). Because Plaintiffs "want[] to proceed with the [updated document production] at a point in time when it [i]s disproportional to the needs of the case," allocation of expenses from Uber to Plaintiffs is necessary "to protect [Uber] from undue burden and expense." *Lawson*, 2020 WL 3288058, at *22.[8]

---

[7] Plaintiffs baldly claim that these requests are "targeted," but a cursory review of their letter – which contains twenty separate requests for broad categories of documents and explicitly seeks wholesale "supplement[ation]" – belies that cursory claim.

[8] Given earlier leaks of confidential information (whose sources have not been identified), a broad, non-targeted production would increase the risk of improper disclosure of Uber's confidential business information in violation of the Court's protective order (ECF 176).

**FILER'S ATTESTATION**

I, Elizabeth Wilkins, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: May 15, 2026

By: _____*/s/ Elizabeth M. Wilkins*_____
Elizabeth M. Wilkins

**CERTIFICATE OF SERVICE**

I, Elizabeth Wilkins, hereby certify that on May 15, 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated: May 15, 2026

By: _____*/s/ Elizabeth M. Wilkins*_____
Elizabeth M. Wilkins

7