[*Submitting counsel below*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To: | Judge:        Hon. Charles R. Breyer |
| | Courtroom:   6 – 17  Floor (videoconference) |
| ALL ACTIONS | Date:         May 22, 2026 |
| | Time:         10:00 a.m. |

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

**JOINT CASE MANAGEMENT STATEMENT**

Defendants Uber Technologies, Inc., Raiser, LLC, Raiser-CA, LLC (collectively "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for May 22, 2026.

**Proposed Agenda**

    I.    **Status of Case Filings**

    II.    **Discovery Updates**

    III.    **Proposed Trial Length and Allocation for *B.L.***

    IV.    **S-Rad and Preservation**

    V.    **Proposals for Scheduling Future Trials**

    VI.    **Settlement / Mediation**

    VII.    **Next Case Management Conference**

**I.    STATUS OF CASE FILINGS**

    **A.    Number of MDL Case Filings**

As of May 19, 2026, there are 3,057 cases in this MDL, with more than 330 new filings and 220 dismissals since the last case management conference.

    **B.    Status of JCCP**

Approximately 854 cases are pending in the JCCP. The next trial has been set for September 14, 2026.

**II.    DISCOVERY UPDATES**

On May 1, the Court reopened discovery in the remaining Wave 1 bellwether cases.[1] ECF No. 6063. Also on May 1, Judge Cisneros vacated the requirement to seek leave before taking case-specific discovery or raising disputes in Wave 1 cases and vacated the "backstop" deadline for such

---

[1] Four cases remain in Wave 1: B.L. (24-cv-7940), A.R.2 (24-cv-7821), LCHB128 (24-cv-7019), and WHB 318 (24-cv-4889)

discovery and disputes. ECF No. 6067. In its May 1 Order, the Court directed the parties to "confer regarding what an appropriate new discovery cutoff deadline would be in relation to the September trials for the B.L. and A.R.2 cases." Pursuant to PTO 44, the parties will address the discovery cut off date in the pretrial schedule on which they are working and will file it soon.

In its May 1 Order, the Court also amended Pretrial Order No. 10 to require additional categories of information in Defendant Fact Sheets ("DFS"). *Id.* The Amended DFS requirements apply to all cases filed after the May 1 Order and 200 cases selected by Plaintiffs, including the 18 remaining bellwether cases. *Id.* Plaintiffs will be submitting their designated cases to Uber shortly. The parties met and conferred on a stipulation that will be submitted to the Court soon.

**Plaintiffs' Position**

On May 14, Uber disclosed confidential, highly sensitive personal information regarding BL's sexual history (unrelated to the Uber rape) and other third-party witnesses (ECF No. 6194) and again disclosed protected witness information on May 15 (ECF No. 6205). Pursuant to Judge Cisneros' Orders (ECF No. 6207, 6214), the parties are conferring regarding what measures should be taken to address these disclosures, including ensuring that all copies of that information have been destroyed (i.e., from those receiving contemporaneous PDFs of filings from commercial docket services).

Plaintiffs are concerned that this is not the first time such highly sensitive information has been disclosed in violation of the Protective Order in bellwether cases (*see, e.g.*, ECF No. 4356 exhibits disclosing confidential highly sensitive information about Ms. Dean and the identity of a former sexual partner), and the chilling effect that public dissemination of information regarding a Plaintiff's prior sexual history (and that of a third-party witness) would naturally have on their willingness to continue to participate in these proceedings. Plaintiffs are investigating these violations further and may seek relief from the Court. While Plaintiffs acknowledge the complexity in the sealing process and the general cooperation among the parties in complying with the Protective Order (Plaintiffs have not kept score of how many sealing motions they have filed to protect Uber's confidential information, but it is no small number), the severity of the violation in

these two cases indicates that Uber and its counsel must ensure adequate resources are devoted to compliance.

**Defendants' Position**

The parties have a submission due to Judge Cisneros on Friday, which will address this issue. Uber is committed to protection of information covered under the Protective Order ("PO"), including information that Plaintiffs assert or may assert is covered under the PO. This case involves a significant volume of information that is, or that Plaintiffs may assert is covered under the PO, which is reflected in the number of sealed filings in this case. Since December 15, 2025, Uber has filed at least 17 motions to file another party's material under seal, four motions to seal PII, and other motions to seal information concerning Plaintiff-protected information. The parties have worked collaboratively to set schedules on complex sealing issues, particularly when larger volumes of protected information are at issue, such as in pretrial pleadings to ensure that there is adequate time for the important and labor-intensive work involved in sealing across these cases.

## III.    PROPOSED TRIAL LENGTH AND ALLOCATION FOR *B.L.*

*B.L. v. Uber* is set for jury selection to begin on September 14, at 9:15 a.m. ECF No. 6190. Trial will begin September 15 at 9:15 a.m. and is set for 3 weeks. *Id.*

### A.    Plaintiffs' Position

**F actual Summary**. B.L. was sexually assaulted on August 12, 2022, in San Jose, California. She called an Uber at 3:30 A.M. when she was emotional and intoxicated. The driver groped her during the ride and then, when the vehicle reached the destination, raped her in the back of the car. Uber paired the ride despite multiple known risk factors. Despite a warrant for his arrest, Uber hired the driver to transport passengers in Columbia, where he had fled after the rape.

**Trial Time and allocation**. Plaintiffs look forward to another meaningful bellwether trial in September. To that end, Plaintiff BL intends to try a number of claims, including ratification, which has not yet been tried in the MDL and JCCP, and to seek punitive damages under California law. Plaintiffs are mindful of the great virtues of efficiency and have learned from the two recent bellwethers how to focus and streamline their cases. If the Court is inclined to impose trial time

limits, Plaintiffs respectfully request a presumptive 65 hours of trial time, excluding closing statements, and a 60-40 allocation of time between Plaintiff's and Defendants' respective cases. Plaintiffs anticipate that the number of claims and witnesses presented will be similar to the *Dean* trial (even if the types of theories and experts may differ), where the parties were allotted 65 hours of trial time, split 60-40. Plaintiffs propose to exclude closing statements to ensure the jury has adequate time to consider both sides' arguments, and to avoid unfairly compressing Plaintiff's ability to adequately test Uber's witnesses—particularly if they opt to bring their most substantive company witnesses at the end of the case. As Plaintiff has the burden of proof, she should be allotted more time. Uber's proposal is unfair and prone to gamesmanship in Uber's favor, and is based on a revisionist and incomplete history of the *Dean* proceedings and this Court's appropriate management of the time.

### B.    Uber's Position

As an initial matter, there is a motion pending before Judge Cisneros (ECF 5964) that may impact B.L.'s trial selection. Pursuant to the Court's Order, Judge Cisneros will decide the motion and "following Judge Cisneros' ultimate ruling, the Court shall determine what effect, if any, there will be on the Wave 1 bellwether trial schedule."  ECF 5971.

The Court allocated 65 hours of trial time for Dean. See 2025.12.05 Case Management Conf. Tr. 8:24-9:3). This was inclusive of closing statements, and Uber submits that the same duration is appropriate here, and that a 50-50 allocation of time between Plaintiff's and Defendants' cases is also warranted. Uber does not oppose Plaintiffs' request to have the trial allotment at 65 hours exclusive of closing arguments, as long as the parties have equal time for closing argument. In Dean, Defendants agreed to a 60-40 time allocation on the understanding that time limits would be strictly enforced.[2] Defendants carefully managed its time during Plaintiff's case to ensure sufficient time for Defendants' case[3] and closing argument.  It was not until the second week of trial, and only after

---

[2] Trial Tr. 681:14-16 (The Court: "[T]he overall limitation . . . is in fact the time limits that are being imposed, which I intend to enforce.").

[3] Trial Tr. 693:12-15 (Ms. Bueno: "We are choosing very carefully what to do, and it really goes into decisions even about … what to play with the witness videos.").

Defendant's cross-examinations of key witnesses (which were shortened to save time for its case-in-chief), that the Court informed the parties that closing arguments would *not* be included in the time allocations.[4]  Ultimately, stayed within the bounds of the Court's time limits.[5] Plaintiff, on the other hand, ran out of time yet was granted additional time on the final day of trial, significantly prejudicing Uber.[6] An equal allocation of trial timethat will be enforced throughout the trial will lead to transparency and fairness and allow the parties to sequence their cases as they see fit without prejudicing either side.

## IV.    S-RAD AND PRESERVATION

### A.    Plaintiffs' Position

During discovery that led up to the Dean trial, Plaintiffs requested that Uber produce the S-RAD scores and supply plans for each Uber ride that resulted in an alleged sexual assault. Based upon prior conferral between the parties and the information available from Uber to date, Plaintiffs understand that Uber did not preserve the supply plans or S-RAD scores for certain plaintiffs.[7] Plaintiffs, accordingly, intend to move to (1) preclude Uber from making certain arguments premised on the absence of an S-RAD score or an alternative supply plan, (2) instruct the jury that Uber had evidence concerning how risky the ride was and the availability of potentially safer rider, but destroyed it, and (3) if the Court finds intent to deprive, instruct the jury that it may or must presume that Uber had safer drivers that it could have sent to each applicable Plaintiff. Plaintiffs believe this relief is appropriate under Rule 37 and is the most efficient way to manage a very large

---

[4]Trial Tr. 1163:13-17.

[5] Defendants used 23 hours and 27 minutes of its allocated 26 hours.

[6] Trial Tr. 1126:19-22 (Ms. Bueno: "So I just want to make very sure that Your Honor is enforcing the time that has been given because that is what our expectation is. I just don't want to leave ourselves short on witnesses if you're going to give people more time."); *id*. at 1127:708 (The Court: "I understand that. I mean, there has to be some basic fairness to an arbitrary decision."); *id.* at 3204:22-3205:1 (Ms. Bueno: "Your Honor, in light of Your Honor's rulings and the way we curtailed our cross-examination of plaintiff's witnesses for our case, it really would be unfair at this point to allow them now to cross-examine additional witnesses.")

[7] Uber's recent Supplemental Briefing on Issues related to Preservation of Supply Plan Data (ECF No. 6212) does not change this understanding.

gap in crucial evidence in each of these cases. *See* Fed. R. Civ. P. 37(e)(2)(B) (If the Court determines that a party "acted with intent to deprive another party of the information's use in the litigation," it may "instruct the jury that it may or must presume the information was unfavorable to the party.").

### B.    Uber's Position

Plaintiffs have put the cart before the horse in proposing to file a sanctions motion without endeavoring to meet and confer about it. At no point did Plaintiffs request a meet and confer on the issues as set forth in this Case Management Statement prior to sending it to Uber this week. Setting aside that procedural requirement, Plaintiffs' interest in seeking a broad sanction cutting across cases does not make sense. As the Court knows, Safety Risk Assessed Dispatch ("S-RAD") data and supply plans are irrelevant to many cases in the bellwether pool. To the extent that Plaintiffs are seeking relief concerning the upcoming bellwether trials of B.L. and A.R., the relief they seek is overly broad and unwarranted. For example, Plaintiffs want to (1) preclude Uber from making certain arguments premised on the absence of an S-RAD score or an alternative supply plan. Plaintiffs do not state what "certain" arguments Uber should be precluded from making. In Dean, where Plaintiffs also sought sanctions on this issue, the entire issue was moot precisely because Uber did not make the very argument that Plaintiff said would be improper, i.e., that there was no safer ride.  Plaintiffs' next proposed sanction– to instruct the jury that Uber had evidence concerning how risky the ride was and the availability of potentially safer rider, but destroyed it –is not warranted for either B.L. or A.R.. Uber cannot reasonably be found to have intentionally deleted or failed to preserve supply plan data in either case. In each case, the 30-day rollover of any supply plans occurred long before Uber was on notice that these or any other plaintiff would articulate a theory that supply plans were relevant and even before the formation of the MDL.  Likewise, and as it concerns the third sanction that Plaintiffs seek, the record will establish that Plaintiffs are not entitled to an adverse inference instruction.

On Friday, May 15, Uber submitted Supplemental Briefing on Issues Related to Preservation of Supply Plan Date, together with declarations. *See* ECF 6212. This briefing, in addition to that

submitted in the course of the *Dean* trial, *see* ECF 5152, explains Uber's supply plan data, as well as S-RAD. This additional record should be informative to the Court on these issues, and reinforces why sanctions are not appropriate for the routine rollover of data at issue with S-RAD and supply plan data, particularly for cases initiated before Plaintiff first identified a relevance to the supply plans by requesting information concerning them on August 11, 2025. Uber respectfully suggests that Plaintiffs should review it and with that background, pursue a meet and confer in which Plaintiffs identify specific relief, as tied to a specific case, to Uber for productive discussion. A case management statement is not a vehicle for litigating sanctions issues (or to litigate any issue). Plaintiffs should follow proper channels and should not advocate for extreme sanctions while giving Uber a mere day to respond. A more appropriate and productive way to proceed would be to request a meet and confer on the cases set for trial so that the parties can specifically and productively address the issues.

## V.    PROPOSALS FOR SCHEDULING FUTURE TRIALS

### A.    Plaintiffs' Position

With two bellwether trials completed and two more set for September, the parties continue to gain valuable insight into the strengths and weaknesses of the cases within this MDL. The parties have also taken discovery relating to a wide variety of claims and defenses. In light of this growing knowledge and the stage of these proceedings, Plaintiffs believe that multiple cases can be tried within a shorter period of time going forward and should proceed in a way that will advance resolution of this MDL.

The parties continue to meet periodically with the Settlement Special Master and have an in-person session scheduled for May 27 in San Francisco. Additionally, Uber has approached certain individual firms, including some with MDL bellwether cases, to participate in confidential settlement negotiations. However, only a small percentage of MDL cases have resolved to date.

To advance resolution of this MDL, Plaintiffs propose that the Court augment the bellwether process and consider setting more cases for trial on a more compressed schedule. For example, the Court could transfer certain cases to the state in which the alleged incidents occurred so that multiple

trials can proceed simultaneously, or set multiple cases brought by the same firm for trial such that one case is tried every month or every two months. *See, e.g.*, Ex. A, Amended Case Management Order No. 5, *In re Paraquat Products Liability Litigation*, No. 559 (Ct. of Common Pleas, Phil. Cty.) (setting trials every two months). Prioritizing and sequencing these trials would work best in conjunction with ADR milestones, to be determined with input from the Settlement Special Master and the parties.

Plaintiffs propose that within 10 days after the in-person mediation session planned for May 27, the parties should propose joint or competing proposals on prioritizing and scheduling future trials for the Court to consider, along with input from the Settlement Special Master.

**B.    Uber's Position**

Uber agrees that the parties and the Court should discuss ways to make the bellwether trial process more efficient in an effort to advance this MDL proceeding. Accordingly, Uber is amenable to Plaintiffs' proposal that the parties meet and confer and submit joint or competing proposals on prioritizing and scheduling future trials in a manner that comports with due process.[8]

**VI.    SETTLEMENT / MEDIATION**

The parties continue to meet periodically with Judge Andler to discuss the potential for resolution.

**VII.    NEXT CASE MANAGEMENT CONFERENCE**

The parties request that the Court set the next monthly Case Management Conference.

Dated: May 21, 2026                              By: */s/ Sarah R. London*_____

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108

---

[8] Plaintiffs assert that only a small percentage of cases in this proceeding have been resolved to date, but fail to note that 438 MDL cases and those dismissals will make the way through the docket. Additional settlement discussions continue. In addition, the number of cases in the proceeding has been further reduced by dismissals arising from failures to comply with PTO 5, Amended PTO 10, and PTO 31 (pursuant to which over 530 Plaintiffs have been dismissed), with an additional 27 Plaintiffs' claims dismissed with prejudice due to the submission of fraudulent receipts.

Telephone: (415) 981-4800
slondon@girardsharp.com

By: /s/ Rachel B. Abrams

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated:  May 21, 2026                **KIRKLAND & ELLIS LLP**

By: /s/ Laura Vartain Horn
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

9
JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

## FILER'S ATTESTATION

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: May 21, 2026

/s/ Laura Vartain Horn
Laura Vartain Horn