Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DECLARATION OF KATELYN MARSHALL BENFIELD IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>**FILED UNDER SEAL**<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom:    6 – 17th Floor |

1

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

I, Katelyn Marshall Benfield, declare as follows:

1.      I am a partner at Kirkland & Ellis LLP, counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"). I offer this Declaration in the above-captioned matter in support of Uber's Reply In Support of Motion for Sanctions for Plaintiff's Discovery Misconduct. I have personal knowledge of each and all of the facts stated in this declaration and, if called as a witness, could and would competently testify to the facts contained herein.

2.      On April 30, 2025, Plaintiff produced her text messages with several individuals, including those identified as M.B., L.L., Lu.L., P.L., and W.L. Those produced conversations included extensive redactions and many appeared to be missing messages. For example, in her messages with L.L. a blue bubble can be seen at the end of the document, but the text is cut off. *See* Ex. A, B.L. - SMS L.L. – 000001-000010, at -10. These productions were accompanied by a privilege log that asserted "privacy protections" and "relevancy" as a basis for those redactions and cited "Doe v. Purdue Univ., No. 20-cv-05672-YGR, 2021 WL 5023916, at *2 (N.D. Cal. Oct. 28, 2021)" in support of Plaintiff's position. Uber's counsel checked this case citation. The cited case (2021 WL 5023916) does not exist on Westlaw and, upon information and belief, appears to be a hallucinated case citation. There are cases with similarly named parties, but they do not relate to the propositions cited.

3.      On May 23, 2025, Plaintiff produced an amended privilege log related to these messages that still asserted privacy and relevance as a basis for her redactions.

4.      On June 11, 2025, Plaintiff produced additional text messages with L.L., Lu.L. and P.L., which confirmed that messages had been withheld from the prior production. For example, the newly produced messages with L.L. confirmed that there were relevant messages immediately prior to and immediately after those produced on April 30, 2025 that had initially been withheld from production. *See* Ex. B, B.L. - SMS L.L. – 000011-000047, at -22 (demonstrating that Plaintiff's last message in the initial production—███████████████████████████████████████—was followed up 4 second later with the message, ███████████ At this time, Plaintiff also produced messages with additional individuals identified as C.C. and H.G. for the first time. All of these documents continued to contain extensive redactions.

5. On June 24, 2025, Plaintiff produced social media and text messages with individuals identified as A.M., J.F., J.H., M.G., and ▮ for the first time. The messages included extensive redactions. At the same time, Plaintiff revised the redactions she previously applied to text messages with W.L., revealing only limited messages that directly referenced the alleged Uber incident but leaving pages of communications entirely blacked-out. This production was accompanied by an amended privilege log still asserting relevance and privacy protections as a basis for the redactions in the messages produced in June of 2025.

6. On June 27, 2025, Plaintiff produced an amended privilege log still asserting privacy and relevance as a basis for her redactions.

7. On July 2, 2025, Plaintiff produced certain email communications and text messages with an individual identified as M.L. for the first time.

8. On July 16, 2025, Plaintiff produced messages with individuals identified as ▮ R.H., and ▮ for the first time. Despite the conversation with R.H. indicating a total "Message Count" of 1,036, Plaintiff only produced 95 messages. Similarly, the conversations with ▮ and ▮ indicated a total message count of 47 and 162, respectively, but Plaintiff only produced 33 and 41 messages, respectively. And all of these documents included extensive redactions.

9. On August 25, 2025, Plaintiff served her Eighth Supplemental Responses to Uber's discovery requests and identified several hundred pages of additional responsive documents that would be produced.

10. On September 9, 2025, I emailed Plaintiff's counsel and indicated that Plaintiff's productions remained incomplete. Having not received a response, I sent another email on September 11, 2025, requesting that Plaintiff produce outstanding discovery and provide availability for a meet and confer.

11. On October 6, 2025, I emailed Plaintiff's counsel, raising several issues with her productions and disclosures. *See* Ex. C, 11/2025 – 2/2026 K. Benfield Correspondence, at 24-25. Plaintiff's expert, Dr. Mindy Mechanic, served her expert report on September 26, 2025. Dr. Mechanic claimed to have interviewed several of Plaintiff's friends ▮ ▮ Dr. Mechanic claimed that these interviewees reported extensive knowledge

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

regarding Plaintiff's current mental status and alleged damages; this claim contradicted Plaintiff's prior sworn statements regarding the knowledge of these witnesses. I explained this issue to Plaintiff's counsel, notified counsel that we intended to depose these witnesses, and asked that Plaintiff's counsel let me know if they would be representing the witnesses at their depositions.

12. On October 10, 2025, I emailed Plaintiff's counsel and provided Uber's availability for a meet and confer to address outstanding discovery issues. *See* Ex. C at 23.

13. On October 13, 2025, having not received a response from Plaintiff's counsel, I emailed again, asking them to provide their availability for a meet and confer. The parties conferred later that day. *See* Ex. C at 21-23. The parties conferred regarding a number of discovery issues related to Plaintiff's disclosures and production.

14. On October 16, 2025, I sent an email to Plaintiff's counsel outlining our meet-and-confer call. The email explicitly raised withheld and redacted messages and emails and noted that some redactions were not even covered by Plaintiff's then-operative privilege log. Ex. C at 19-20. I also explained that some of the produced message threads appeared incomplete based on the message counts included at the top of some of the threads. *Id.* And I again reiterated Uber's request to depose the collateral source witnesses whom Dr. Mechanic interviewed and noted that Plaintiff's representations in her sworn discovery responses regarding the scope of the collateral source witnesses' knowledge was not consistent with Dr. Mechanic's report. *Id.*

15. On October 20, 2025, Plaintiff produced messages with an individual identified as L.P. Out of 26 messages in that production, 20 were entirely redacted and another was partially redacted. This production was accompanied by an updated privilege log, which still asserted relevance and privacy as a basis for Plaintiff's redactions.

16. On October 28, 2025, I sent an email to Plaintiff's counsel recapping a subsequent conferral on the redactions issue. *See* Ex. D, 10/28/2025 K. Benfield Correspondence.

17. On October 30, 2025, Plaintiff reproduced her messages with several witnesses, including J.H., L.P., and ▮▮▮ with limited redactions removed. Extensive redactions remained on those messages.

18. Also on October 30, 2025, a paralegal at the Wagstaff Law Firm, Emma Guidry, responded to my prior email. Ms. Guidry reiterated that Plaintiff "oppose[d] any additional depositions in this case."

Ex. C at 17. Ms. Guidry further stated that it was "Plaintiff's position that any information sought by Uber related to these collateral source witnesses can be obtained from Ms. Mechanic at the time of her deposition." *Id.* Ms. Guidry stated that Plaintiff was "reproduc[ing]" certain messages and threads and that she was working on obtaining outstanding messages with other witnesses. *Id.* Ms. Guidry also provided an updated privilege log. *Id.*

19.    The messages reproduced by Plaintiff did not address or cure the majority of the extensive redaction issues. Additionally, the updated privilege log contained the same incorrect and/or hallucinated case citations as the prior privilege log.

20.    On November 17, 2025, I emailed Plaintiff's counsel and raised, again, that there were extensive redactions throughout the produced messages, in some cases covering almost the entire produced conversation, and requested that Plaintiff supplement her productions with unredacted messages. *See* Ex. C at 15-16.

21.    On November 19, 2025, I emailed Plaintiff's counsel again regarding unproduced expert documents and the redacted messages. Ex. C at 15. Plaintiff's counsel responded and addressed the redactions by stating that she personally reviewed Plaintiff's messages with L.P. and a production of unproduced messages was forthcoming. *Id.* at 14. Even though Uber had specifically identified several other problematic documents with redactions, Plaintiff's counsel stated that Uber needed to raise *specific* issues with Plaintiff's redactions before she would address the problem. *Id.*

22.    The same day, I emailed Plaintiff's counsel noting that none of the redaction issues previously raised had been cured and outlining several specific examples of improper redactions in Plaintiff's productions. *See* Ex. C at 11-13. I included screenshots of many of the redacted messages, along with descriptions of the issues in my email. *Id.* Among other issues, I specifically flagged redacted messages with ███████████ as a problem. I explained that Plaintiff's objections based on relevancy and third-party privacy did not appear applicable. I also flagged that the message count at the top of the document indicated 162 total messages were exchanged, but that only 41 messages had been provided, and only 9 of those messages contained visible/unredacted texts. *See id.* (citing BL-SMS-█████ Redacted-00001-4).

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

23.     On November 20, 2025, Plaintiff's counsel responded to my email. Plaintiff's counsel represented that their team was analyzing the messages and would address the redaction issues once their review was complete. Ex. C at 10-11. In response to my email outlining specific issues with the redactions with screenshots, Ms. Luther responded "Thank you very much and my team and I are going through this now to help work with you on these issues. I'll be in touch after we've reviewed everything." *Id.*

24.     I relied in good faith on Plaintiff's counsel's representation that she was "going through" the redactions "now to help work with [Uber] on these issues," and that she would "be in touch after we've reviewed everything." However, Plaintiff's counsel never reached back out or produced additional messages until many months later and only after additional follow-up requests and meet-and-confers initiated by Uber.

25.     On February 13, 2026, after the *Dean* trial completed, I emailed Plaintiff's counsel, indicating that they still had not produced unredacted messages and reiterating again that Uber did not believe that the supposed bases for withholding or redacting communications set out in Plaintiff's privilege log were valid. I also requested that Plaintiff's counsel provide availability for a meet-and-confer. Ex. C at 9-10. Plaintiff's counsel indicated that they were available on certain days but that the parties needed to wait for availability from Rachel Abrams (Peiffer Wolf Carr Kane Conway & Wise). Ex. C at 8-9.

26.     On February 19, 2026, having not received a response from Ms. Abrams, I emailed Plaintiff's counsel and suggested that we meet and confer the same day. Ms. Abrams indicated that she was traveling and suggested a new time, which Uber accommodated. *See* Ex. C at 7-8.

27.     On February 20, 2026, the parties conferred regarding the outstanding issues. I emailed Plaintiff's counsel on February 23, 2026, outlining the parties' discussions, including the extensive redactions in Plaintiff's productions and Uber's repeated attempts to work with Plaintiff to come to a resolution. Ex. C at 4-5. I also reiterated multiple prior requests for updated discovery responses identifying all witnesses, including treaters. Plaintiff had begun seeing several additional treaters since the close of fact discovery but had not provided updated discovery responses disclosing all treaters.

28.     On February 24, 2026, Plaintiff's counsel responded, indicating that they had reviewed messages from numerous witnesses and determined that it was "appropriate to unredact some messages."

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

Ex. C at 1-3. Namely, Plaintiff admitted that messages in Plaintiff's produced conversations with ███ ███ H.G., J.H., M.G., L.L., P.L., and R.H. were improperly redacted. Ex. C at 1-3.

29.    On February 24, 2026, Plaintiff produced additional messages with L.L and reproduced messages with H.G., M.G., Lu.L., and R.H. with limited redactions removed. Extensive redactions remained on those messages and the 941 messages with R.H. that were withheld from Plaintiff's prior production remained unproduced. Plaintiff produced an amended privilege log, which asserted similar relevance and privacy arguments as a basis for the redactions but removed any reference to the *Doe* case previously cited.

30.    On March 26, 2026, I emailed Plaintiff's counsel to inform them that, due to Plaintiff's repeated failure to resolve Uber's concerns with Plaintiff's discovery, Uber considered the parties at an impasse and would seek Court intervention related to the extensive redactions across her productions and Uber's request for depositions of several late-disclosed witnesses. Ex. E, 3/2026 – 4/2026 K. Benfield Correspondence, at 7-8. Attached to that email, I provided two draft PTO 8 letter briefs outlining Uber's position on the issues.

31.    On March 31, 2026, I conferred with Plaintiff's counsel. Plaintiff's counsel offered to allow Uber five (5) hours total to depose all late-disclosed witnesses. In exchange, Plaintiff's counsel demanded that Uber forgo raising both the late-disclosed witnesses and the improper redactions with the Court. Plaintiff's counsel offered no remedy for her improper redaction of text messages. I informed Plaintiff's counsel that this was an unworkable solution and emailed confirmation that Uber would be moving forward with the PTO 8 briefing process. *See* Ex. E at 5-6.

32.    On April 2, 2026, Plaintiff's counsel emailed me, asserting that Uber still had not identified specific issues with Plaintiff's redactions and proposed that Uber allow Plaintiff to run six (6) search terms across her messages, which Plaintiff would then review. Ex. E at 4. The same day, I responded and attached a chart that identified Plaintiff's problematic redactions, even though Uber had already identified these issues with exemplar screenshots and the issues were obvious on the face of the documents Plaintiff had redacted and/or withheld. Ex. E at 3-4. I also indicated that Uber would move forward with the PTO 8 briefing process as Plaintiff's search terms proposal was unworkable and Plaintiff had already caused substantial delay. *Id.*

33.    The same day, on April 2, 2026, Plaintiff's counsel made Uber aware that it published additional documents on its online repository. Ex. E at 1-2. Those documents included communications with an individual identified as ██████ nd reproduced messages with J.F., L.L., ██████ and ██████ removing a limited number of redactions and revealing previously withheld messages directly relating to the alleged Uber incident, including descriptions of the events immediately prior to the purported event. Plaintiff also supplemented the conversation with ██████ by including the 121 messages she had withheld from her initial production, but did not produce the 14 messages missing from the conversation with ██████ ██ Entire pages of messages in these documents remain redacted.

34.    The documents produced by Plaintiff for the first time in early April 2026 contain highly relevant, discoverable information directly related to the issues at the center of this case. *See* Ex. F, Unredacted ██████ Email. For example, on April 2, 2026, Plaintiff provided this unredacted email for the first time. *See id.*

██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

35.    Plaintiff's counsel had possession of a copy of this highly relevant email during the discovery period. *See* Ex. G, Redacted ██████ Email. On July 2, 2025, this email was originally produced with the key information about ████████████████████ improperly redacted, as shown below. *See id.* at 3.

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB



36.    Until April 2026, Uber was unaware Plaintiff had made these allegations against █████████

37.    Plaintiff's texts with ████████ are another example of her improper redactions and withholding of relevant evidence. Prior to the close of fact discovery, Plaintiff identified ██████████ as "a friend"; she was not identified as a treater, though it has been recently revealed through texts that ████ provided some sort of coaching or counseling services to Plaintiff for compensation. *See* Ex. H, 7/16/2025 B.L. Fourth Supplemental Rule 26 Disclosure. Below is a screenshot of a portion of texts with ██████ ████ that were disclosed during the discovery period. Only four pages of redacted messages were produced during the discovery period. *See* Ex. I, Original ██████ Text Thread (B.L. SMS - ████_Redacted - 000001 - 000004), at -1.

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

38.    During the meet-and-confer process over the redactions, Plaintiff provided two additional versions of this text thread with ███████████ The second version of the ██████ thread was produced on February 24, 2026. *See* Ex. J, 2/24/2026 Version of ██████████ Text Thread. This thread that was produced after multiple meet-and-confers revealed that Plaintiff's counsel had previously redacted highly relevant materials, including a text message from Plaintiff to ██████ on August 20, 2022 (8 days after the alleged incident) stating that she was ██████████ over the independent driver in this case. *See id.* at 1.

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

*See id.* at 2.

39.    However, the ▮▮▮ messages produced on February 26, 2026 still contained heavy redactions, concealing facts related to the nature of Plaintiff's relationships with ▮▮▮ and with ▮▮▮ On April 2, 2026, Plaintiff's counsel produced a third version of these texts with additional messages unredacted. *See* Ex. K, 4/2/2026 Version of ▮▮▮ Texts. Screenshots from a selection of messages that were produced in unredacted form for the first time on April 2, 2026 are below. *See id.* at 6.

40.     The new production also revealed that the version of the text thread produced by Plaintiff in February had redacted a portion of the thread that addressed ▮▮▮▮ by ▮▮▮▮ *See* Ex. J at 7.

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB



BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB

41.     Based on Uber's current understanding of the relationship between ▌▌ and Plaintiff, Uber believes there are additional texts from Plaintiff's sessions with ▌▌ that still have not been produced that relate to Plaintiff's mental health and other relevant issues, despite repeated requests by Uber.

42.     Plaintiff's improper withholding of messages with ▌▌ and ▌▌ are just two examples of the types of issues that have come up in this case with respect to Plaintiff's improper redactions and withholding discoverable information after meet-and-confers. Plaintiff still has not willingly provided copies of all of the unredacted messages Uber has repeatedly requested, which necessitated a PTO letter on the redactions issue (which is currently pending) and are relevant to the additional depositions Uber has requested (and the Court has approved).

43.     On April 3, 2026, my colleague Mike Vives reached out to Plaintiff's counsel and requested to meet and confer regarding Uber's continued concerns about Plaintiff's late production of Plaintiff's relevant communications and continued refusal to produce other redacted messages. Ex. L, M. Vives Correspondence, at 3-4.

44.     The parties met and conferred on April 6, 2026. My colleague Mike Vives has submitted a Declaration summarizing this meet and confer. In a follow-up email from Uber to Plaintiff's counsel on April 7, 2026, Uber summarized the parties' discussions, including Uber's concerns that highly probative messages had been withheld from Uber for months. Plaintiff's counsel responded that "despite not being discoverable, the Plaintiff did agree to unredact certain information, as Plaintiff has been willing to do throughout this litigation, going back to the last year when we were engaging in similar discussions."

45.     However, to date, Plaintiff's counsel still have not produced all of the requested messages in unredacted form.

46.     I, along with my colleagues, attempted in good faith to resolve these issues over the course of many months without the Court's intervention. Plaintiff's counsel repeatedly represented that they wanted to work with Uber, but this appears to have been a delay tactic. Many of the messages at the core of this discovery dispute, which should have been produced during the course of fact discovery, have yet to be produced. Uber has been prejudiced by Plaintiff's failure to participate in good faith in the discovery process and improper withholding of this critical evidence.

Dated: May 13, 2026

/s/ Katelyn Marshall Benfield
Katelyn Marshall Benfield

BENFIELD DECLARATION ISO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
Case No. 3:23-MD-03084-CRB