# EXHIBIT 2

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS** |
| This Document Relates to: | **PUBLIC VERSION** |
| *B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Judge:    Hon. Charles R. Breyer |
| | Courtroom:    6 – 17th Floor |

---

1

DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Case No. 3:23-MD-03084-CRB

I, Michael David Vives, declare as follows:

1. I am a partner at Kirkland & Ellis LLP, counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"). I offer this Declaration in the above-captioned matter in support of Uber's Reply to Plaintiff's Opposition to Uber's Motion for Discovery Sanctions. I have personal knowledge of each and all of the facts stated in this declaration and, if called as a witness, could and would competently testify to the facts contained herein.

2. In February 2026, I became involved in meeting and conferring with Plaintiff's counsel, Sommer Luther, about long-standing discovery issues in the B.L. case.

3. Over the next two and a half months, I exchanged numerous emails and joined at least three meet and confers, via videoconference, with Ms. Luther to discuss Plaintiff's deficient interrogatory responses/witness disclosures, as well as Plaintiff's overbroad redactions. The issues we discussed, at length, are memorialized in Uber's two PTO 8 letter briefs (Dkt. 5802-3 and 5987), as well as Uber's Motion for Sanctions (Dkt. 5964).

4. The first meet-and-confer on these issues in which I participated occurred on February 20, 2026.

5. During that February 20, 2026 meet and confer, I expressed serious concerns that Uber had been raising discovery issues with Ms. Luther and her firm for months, including, but not limited to, seeking depositions of the witnesses interviewed by Plaintiff's expert Dr. Mindy Mechanic, seeking accurate and updated interrogatory responses (particularly as to treaters), and requesting that Plaintiff remove extensive relevancy redactions on a large number of communications between Plaintiff and third parties.

6. During that meet-and-confer, my colleague, Katie Benfield, and I explained to Ms. Luther that our detailed concerns had largely been ignored for several months. In response, Ms. Luther indicated that she was planning to personally re-review all of the redacted messages and would remove any erroneous redactions shortly thereafter. As to Uber's request for additional depositions, Ms. Luther indicated that she would only agree to a small number of additional hours of deposition testimony across all of the depositions requested, but never clearly stated which depositions she agreed could proceed.

2

DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

7.      On February 23, 2026, my colleague, Katie Benfield, emailed Plaintiff's counsel and summarized the parties' February 20, 2026 meet and confer, as well as Uber's repeated attempts to work with Ms. Luther to come to a resolution on these issues dating back to 2025.

8.      On February 24, 2026, Plaintiff's counsel sent an email indicating that they had re-reviewed messages from numerous witnesses and determined that it was "appropriate to unredact some messages." Dkt. 5963-7. At that time, Plaintiff's counsel re-produced approximately 10 documents that removed redactions from communications with seven witnesses: ███████, H.G., J.H., M.G., L.L., P.L., and R.H. *Id.* At no point did Plaintiff's counsel explain why they were removing redactions from communications with seven witnesses, for the first time, several months after the close of fact discovery.

9.      In that same February 24, 2026 email, Plaintiff's counsel stated that they would agree to Uber deposing five newly disclosed fact witnesses but only for five hours total, adding "that is not a per deposition time limit." *Id*.

10.     On March 26, 2026, Ms. Benfield emailed Plaintiff's counsel to inform them that due to Plaintiff's repeated failure to resolve Uber's long-standing concerns with Plaintiff's discovery and Plaintiff's unworkable proposals, Uber considered the parties at an impasse and would seek Court intervention related to the extensive redactions across Plaintiff's productions and depositions of several late-disclosed witnesses. Benfield Decl. Ex. E. Ms. Benfield attached to her email two draft PTO 8 letter briefs outlining Uber's position on the issues.

11.     On March 31, 2026, I conferred with Plaintiff's counsel again, along with Ms. Benfield. Ms. Luther's position during this meet and confer remained the same. She again offered to allow Uber a maximum of five hours to depose the five late-disclosed witnesses who had been identified as of that date. In exchange, Plaintiff's counsel demanded that Uber forgo raising both the late-disclosed witnesses and the improper redactions to the Court. At no point during that meet and confer did Plaintiff's counsel offer any remedy or explanation as to why the messages at issue had been redacted in the first place, why they were subsequently unredacted, or why extensive redactions remained across multiple text threads. I informed Plaintiff's counsel that their proposal continued to be unworkable, and Ms. Benfield emailed

---

3

DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

confirmation that Uber would be moving forward with the PTO 8 briefing process. *See* Benfield Decl. Ex. E.

12. On April 1, 2026, while the parties were working on finalizing the two PTO 8 letter briefs, Plaintiff produced—for the first time—a series of highly relevant communications. Plaintiff also removed additional redactions on that date, even though Ms. Luther had previously represented in February 2026 that she personally had re-reviewed these messages and confirmed that all remaining redactions were proper and appropriate.

13. Those documents included communications with an individual identified as ▮▮▮▮ in which Plaintiff accuses ▮▮▮▮ ▮▮▮▮. Also included were reproduced messages with four witnesses (J.F., L.L., ▮▮▮ L., and ▮▮▮ S.) which removed some redactions and revealed messages directly relating to the alleged Uber incident, including descriptions of the events immediately prior to the purported event. In particular, the unredacted messages with ▮▮▮ S., as described in Uber's Motion for Sanctions and the Reply brief in support of that motion, are highly relevant and plainly should have been produced many months prior.

14. On April 3, 2026, I emailed Sommer Luther and Tara Doyle and requested a meet and confer about this new production. In my email, I informed Ms. Luther and Ms. Doyle that, in light of their continued discovery deficiencies and the new late productions, Uber was considering a Motion for Sanctions, and requested that Ms. Luther and Ms. Doyle provide "a very clear explanation as to how or why the materials that were now unredacted (seven months after the close of fact discovery and after months of follow-up) were not provided previously." *See* Benfield Decl. Ex. L.

15. Plaintiff's counsel agreed to Uber's request to meet and confer, and the parties participated in a videoconference on April 6, 2026.

16. During that meet and confer, I explained that Uber had attempted to work with Plaintiff's counsel for months to resolve these issues only to be met with delay, a lack of information, and no credible path forward to resolve these issues absent Court intervention. I told Ms. Luther that if she did not offer a

4
DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

meaningful compromise or explain her conduct in a satisfactory way, Uber would have no choice but to seek sanctions.

17.    Ms. Luther and Ms. Doyle did not provide any explanation or rationale during the meet and confer as to why relevant messages were only now being provided to Uber and instead continued to assert—without any rationale—that their conduct was appropriate and justified.

18.    Ms. Luther also took the position that all of the documents first produced on April 1, 2026—including messages where the Plaintiff indicated she was "█████" over the independent driver who allegedly assaulted her and where she suggested her prior boyfriend had ████████████ ████████—were not relevant.

19.    On April 8, 2026, Plaintiff reiterated this remarkable position in writing, stating "[a]s we discussed during the call, Plaintiff stands by the redactions previously made and has further indicated that despite not being discoverable, the Plaintiff did agree to unredact certain information, as Plaintiff has been willing to do throughout this litigation, going back to last year when we were engaging in similar discussions." (Vives Decl. Ex. A).

20.    At this point, Uber realized there was no reasonable way to resolve these issues absent Court intervention.

21.    During the parties' April 6, 2026 meet and confer, Ms. Luther continued to offer the same proposals that she had offered previously and that Uber had already rejected. She again offered that Uber could depose eight witnesses over five hours and that Uber should consent to a limited search protocol. She offered no new compromise in light of Uber's representation that it was considering moving for sanctions.

22.    During the April 6, 2026 meet and confer, I also requested clarity from Ms. Luther as to whether the redactions log that had been provided to Uber that cited to what appeared to be hallucinated caselaw was created through the use of Artificial Intelligence. Ms. Luther flatly refused to answer that question.

23.    As the record makes clear, Uber has attempted to work with Ms. Luther for months on these issues. During that process, Ms. Luther never once provided Uber with any explanation for Plaintiff's

5

DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

discovery conduct and instead relied upon broad and general statements that she approached the discovery process with good faith. She never once explained why Plaintiff amended her interrogatory responses eleven times. She never once explained why relevant messages were not produced until seven months after the close of fact discovery. And she never once provided Uber with any proposal that would seek to remedy the prejudice to Uber. Because of that—and because Uber had attempted to work with Ms. Luther for months to resolve this issue without avail—Uber filed its motion seeking sanctions.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated: May 13, 2026

/s/ Michael Vives
Michael Vives

6

DECLARATION OF MICHAEL VIVES IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS