# EXHIBIT A

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to:<br><br>ALL CASES | **DEFENDANTS' UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR RECONSIDERATION AND STAY OF ORDER**<br><br>Judge:     Mag. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

## NOTICE OF MOTION AND MOTION FOR RECONSIDERATION AND STAY OF ORDER

### TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Civil Local Rule 7-9 and the Court's Order Granting Defendants' Motion for Leave to File Motion for Reconsideration, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will and hereby do move the Court to reconsider, in part, its May 15, 2026 Order (Dkt. 6209) (the "May 15 Order") and grant a stay of the May 15 Order in its entirety pending the Court's review of Uber's motion for reconsideration and forthcoming appeal pursuant to Rule 72. Specifically, Uber seeks reconsideration of the portion of the May 15 Order requiring Uber, within 30 days, to: (1) produce the custodial files of Emilie Boman, Chad Dobbs, Todd Gaddis, and Erin O'Keefe; and (2) disclose other un-named "employee witnesses" whom Uber may call at future trials and produce custodial files for them as well. May 15 Order at 1-2. The enormous burdens associated with this discovery would far outweigh any potential relevance of the materials. The Motion for Reconsideration and Stay of Order is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attached Declarations of Christopher Cox and Jamie A. Brown, and the pleadings and papers on file herein.

DATED: May 22, 2026

Respectfully submitted,

By: /s/ Laura Vartain Horn
Laura Vartain Horn

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
ALLISON M. BROWN
JESSICA DAVIDSON

## MEMORANDUM OF POINTS AND AUTHORITIES

Uber respectfully requests that this Court reconsider and vacate the portions of its May 15, 2026 Order requiring Uber, within 30 days, to: (1) produce the custodial files of Emilie Boman, Chad Dobbs, Todd Gaddis, and Erin O'Keefe; and (2) provide supplemental disclosures identifying other un-named "employee witnesses" whom Uber may call at future trials and produce custodial files for them as well. *See* Dkt. 6209 at 1-2 ("May 15 Order").[1] Reconsideration is warranted because the compressed PTO No. 8 joint-letter process did not provide a meaningful opportunity for Uber to develop and submit evidence demonstrating the burdens associated with the ordered production. Further, Judge Breyer's May 1, 2026 order reopening discovery in the Wave 1 Bellwether cases materially changed the discovery posture of the litigation, s*ee* Dkt. 6063 at 2, and then the May 15 Order imposed a near-term, 30-day production obligation as to the custodial files of four long-tenured employees, as well as an additional 30-day deadline to produce custodial files for any other employees who may potentially testify at future trials. These orders made it critical for Uber to submit evidence detailing the substantial burdens associated with the ordered discovery. This is particularly true because the materials at issue include highly confidential, tangentially relevant information, and their disclosure would threaten more leaks to the media of the type that occurred in 2025.

The evidence now before the Court clearly establishes that the ordered production is inappropriate under Rule 26 because it would be significantly and disproportionately burdensome, would require privilege-intensive review, and is infeasible within 30 days. As detailed in the attached Declaration of Jamie A. Brown, who serves as outside counsel to Uber, it would take Uber ***at least four and a half***

---

[1] Uber intends to seek Judge Breyer's review of these and other aspects of the May 15 Order pursuant to Rule 72, as necessary. That filing, which is due on May 29, 2026, will also address challenges to the May 15 Order that are not dependent on the changed circumstances and resulting new evidence addressed in the instant motion. These include, but are not limited to, challenges to the portions of the May 15 Order requiring additional depositions of Uber employees such as Sachin Kansal, as well as Ms. Boman, Mr. Dobbs, Mr. Gaddis, and Ms. O'Keefe.

*months* (and potentially longer) to complete the collection, processing, review, and production of the custodial files for the four specific employees at issue in light of how long these individuals have worked for Uber and their particular roles. Further, the cost of this undertaking would be exorbitant given the hours required, with an estimated cost of approximately *$1.7 million*. Such an expenditure of time and resources is grossly disproportionate to the needs of this case given the very narrow testimony, if any, that these individuals could potentially provide in future trials (and the irrelevance of the vast majority of the employees' custodial files to such testimony). Further, Ms. Brown's declaration makes clear that, given the size and scope of the custodial files at issue, it is simply not possible for Uber to collect, review, and produce them within 30 days as ordered by the Court. Ms. Brown's declaration also explains that the process of collecting, reviewing, and producing custodial files of any as-yet-unidentified employees who may one day testify at trial would be similarly cumbersome, time-consuming, and costly.

While the issues at stake in this litigation are significant, the custodial files of the four identified employees bear only a tangential connection to the specific claims of the individual Wave 1 Bellwether plaintiffs. Further, Uber has already produced more than 18,000 documents relating to these witnesses' anticipated testimony—documents directly relevant to the discrete topics on which they may testify. The marginal value of hundreds of thousands of additional custodial documents, covering years of unrelated corporate work, is vanishingly small relative to the estimated cost and timeline for the production of these materials. The same is likely true with respect to any other potential trial witnesses whose custodial files Uber would have to produce pursuant to the May 15 Order.

Accordingly, Uber respectfully requests that the Court reconsider its ruling in light of the changed discovery landscape of the case and this new evidence. Uber also asks the Court to issue a stay with respect to the May 15 Order in its entirety pending consideration of this motion (and Uber's forthcoming appeal

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

of the May 15 Order to Judge Breyer pursuant to Rule 72) in light of the overwhelming burdens associated with the discovery at issue and lack of imminent need for the materials.[2]

## BACKGROUND

On March 5, 2026, Plaintiffs wrote to Uber to request additional discovery related to the Wave 1 Bellwether cases even though the Wave 1 fact discovery period had closed. *See* 3/5/2026 Ltr. from Chaffin Luhana LLP to C. Cox (Ex. 1 to Decl. of Christopher Cox ("Cox Decl.")). In that letter, Plaintiffs requested, *inter alia*, that Uber produce "complete custodial files for any current or former Uber employee that Uber intends to call in any of the Wave 1 cases, limited to relevant subject matter and time periods." *Id.* at 3. The parties met and conferred about these discovery requests, and—unable to reach a compromise on a number of the requests—began preparing a joint letter pursuant to PTO No. 8 to present the parties' arguments to the Court. On April 21, 2026, Plaintiffs' counsel provided Uber with a draft of the joint letter that included a specific request for the production of the custodial files of Ms. Boman, Mr. Dobbs, Mr. Gaddis, and Ms. O'Keefe (who were not identified by Plaintiffs as custodians during the fact discovery period) regardless of whether Uber intends to call them to testify in any future cases. *See* 4/21/2026 Email from B. Wilkins to C. Cox and attachments (Cox Decl. Ex. 2).

On April 28, 2026, the parties filed their joint letter pursuant to PTO No. 8, Dkt. 323, which addressed a number of discovery disputes and was limited to two and a half pages of argument per side, *see* Dkt. 6000 (the "Joint Letter"). Plaintiffs argued that they needed the custodial files of Ms. Boman and Mr. Dobbs because each had previously testified at the *Dean* trial. Plaintiffs also demanded the custodial files of Mr. Gaddis and Ms. O'Keefe, who had been designated (but never called to testify) in the *Dean* and/or *WHB 823* trials. *See id.* at 1. According to Plaintiffs, because it is possible that Uber may

---

[2] The May 15 Order provides that Uber shall "supplement its initial disclosures" to "include any witnesses it intends to call at trial" within seven days of the Order. Uber does not intend to provide such supplemental disclosures until its request for stay pending this motion for reconsideration and forthcoming request for review pursuant to Rule 72 are resolved.

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

theoretically call these witnesses to testify at future trials, Plaintiffs would be at a "substantial disadvantage during cross-examination" without being able to review their custodial files. *Id.*

In response, Uber argued that good cause did not exist to reopen discovery and require the production of the full custodial files for these four employees, primarily because of the limited nature of the testimony any of them may provide in future trials and the discovery already provided with respect to these witnesses. *Id.* at 3-5. As Uber explained, Ms. Boman, Mr. Dobbs, and Mr. Gaddis were each deposed as Rule 30(b)(6) witnesses. *Id.* at 5. At the *Dean* trial, Ms. Boman and Mr. Dobbs testified consistently with their Rule 30(b)(6) deposition testimony—and therefore the materials in their individual custodial files were irrelevant to their testimony. And while Mr. Gaddis was designated to testify in *WHB 823* about the meaning of a few entries in the specific driver's extensive mobile events log (a very narrow issue specific to *that* case), he was never called as a trial witness. *Id.* at 4. Similarly, Ms. O'Keefe, who also never testified at trial, was designated as a potential witness in *WHB 823* to address the narrow issue of vicarious liability under the common carrier doctrine. In addition, Uber has already produced voluminous documents relating to each employee's anticipated testimony, including more than 11,000 documents related to Ms. Boman, more than 2,000 documents related to Mr. Dobbs, more than 5,000 documents related to Mr. Gaddis, and about 90 documents related to Ms. O'Keefe. *See id.*

On May 1, 2026, after the parties submitted the Joint Letter to the Court, Judge Breyer issued an order reopening discovery in the Wave 1 Bellwether cases. *See* Dkt. 6063. The Court went on to rule on the arguments set forth in the Joint Letter on May 15, 2026, directing Uber to "produce custodial files for Chad Dobbs, Emilie Boman, Todd Gaddis, and Erin O'Keefe" within 30 days based on the arguments in the parties' April 28 Joint Letter. Dkt. 6209 at 2. The May 15 Order also directed Uber to, among other things, "supplement its initial disclosures no later than seven days from the date of th[e] Order to include any witnesses it intends to call at trial," and provided that "[f]or any employee witnesses that Uber intends

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

to reserve the right to call at trial, Uber must produce custodial files . . . no later than thirty days from the date of this Order." *Id*. at 1-2.

As set forth in detail in the Declaration of Jamie A. Brown ("Brown Decl.") (filed herewith), producing custodial files for additional employees would be extremely onerous, expensive, and time-consuming, and simply cannot be accomplished in the 30-day time frame provided in the May 15 Order. Brown Decl. ¶ 4. As Ms. Brown explains, Uber has already provided custodial data for 55 custodians in both the JCCP and the MDL proceeding, a process that proceeded in stages and took well over a year. *Id*. ¶ 5. The production of custodial files is a complicated process that requires copious machine and person hours to collect, process, review, and produce all data for a specific employee. *Id*. ¶ 4. Ms. Brown estimates that it will take "several months to collect, process, review, and produce the entire custodial files for the four custodians named" in the May 15 Order, all of whom have worked at Uber for years and three of whom have been with the company for over a decade. *Id*. ¶¶ 6-7. According to Ms. Brown, it will take two to four months just to ***collect*** the data pertaining to these individuals that has not yet been collected from other sources. *Id*. ¶ 8. After that, it would take approximately one month or more to process this previously-uncollected data so that it is in a format that can be machine reviewed. *Id*. ¶ 9. The review time will be even longer, as it will take approximately five to seven weeks to retrain, validate and run the technology-assisted review model, and approximately 7,101 to 9,785 hours to conduct human review for responsiveness and privilege. *Id*. ¶¶ 10-13. As a result, Ms. Brown estimates "that it would take Uber approximately four-and-a-half months and potentially much longer to complete the collection, processing, review, and production of data for these four custodians." *Id*. ¶ 14. According to Ms. Brown, "the total estimated costs associated with" collecting, processing and reviewing "the approximately 397 months of data for these four custodians . . . would be ***$1,629,991-$1,792,371***. *Id*. ¶ 18 (emphasis added). Ms. Brown also explains that, to the extent additional Uber employees' custodial files will need to be produced, this "would also take longer than 30 days" even if it is assumed that those employees have been with the

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER

Case No. 3:23-md-03084-CRB (LJC)

company for only 24 months, given the machine and human review times outlined in her declaration. *Id.* ¶ 19.

## **ARGUMENT**

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders "may be revised at any time before entry of a judgment adjudicating all the claims[.]" Fed. R. Civ. P. 54(b). Local Rule 7-9(b)(1) allows a party to seek reconsideration where "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought."

A party seeking reconsideration of a *judgment* under Federal Rule of Civil Procedure 59(e) must show "newly discovered evidence, [] clear error, or … an intervening change in the controlling law." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). However, "when a district court issues 'an *interlocutory order*, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59.'" *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)) (emphasis added). The same standard applies where a party seeks reconsideration of a discovery order issued by a magistrate judge. *See Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18-cv-07689-LB, 2022 WL 3083713, at *2, *5 (N.D. Cal. Aug. 3, 2022) (magistrate judge noting "the court's 'inherent power rooted firmly in the common law' to 'rescind an interlocutory order over which it has jurisdiction'") (citation omitted). Accordingly, this Court "possesses the inherent procedural power to reconsider, rescind, or modify [its] interlocutory order for cause seen by it to be sufficient." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 741 (9th Cir. 2025) (citation omitted).

Sufficient cause exists for the Court to reconsider its May 15 Order because Judge Breyer's May 1, 2026 order reopening discovery ***after*** the parties briefed the issue of the production of additional custodial files changed the landscape of the dispute, elevating the importance of the enormous burdens posed by this discovery. Accordingly, the Court should reconsider its decision, taking into account new

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

record evidence related to these burdens, in particular the Brown Declaration, submitted herewith. Such evidence bears directly on Rule 26's proportionality requirements because it shows that the ordered production is extraordinarily burdensome, largely untethered to any concrete trial need, and impossible to complete on the Court's 30-day schedule.

### I.    **RECONSIDERATION IS WARRANTED GIVEN THE CHANGED CIRCUMSTANCES AND NEW EVIDENCE.**

The changed circumstances of the case warrant reconsideration of the Court's May 15 Order regarding the production of the custodial files of additional employees, including, but not limited to, Ms. Boman, Mr. Dobbs, Mr. Gaddis, and Ms. O'Keefe. At the time of Uber's submission to the Court in opposition to Plaintiffs' request for production of additional employees' custodial files, fact discovery was closed. For these reasons, Uber focused its submission—which addressed multiple discovery requests from Plaintiffs and was limited to two and a half pages pursuant to Court rules—on Plaintiffs' lack of need for these employees' custodial files, including the fact that the four specific employees identified by Plaintiffs have not been named as witnesses in any specific future trial, and, to the extent they have been proposed as trial witnesses or testified as witnesses in past trials, it has been on discrete, often case-specific issues as to which the vast majority of their custodial files would be irrelevant. *See* Dkt. 6000 at 3-4. Now that discovery has been reopened by Judge Breyer, however, it falls to Uber to establish that a protective order or other relief is appropriate because the burden of this particular discovery outweighs its potential relevance. *Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-06751-JSC, 2023 WL 3395117, at *1 (N.D. Cal. Apr. 5, 2023) (noting that the party opposing disclosure during the discovery period has the burden of "showing that specific prejudice or harm will result if the protective order is not granted") (citation omitted). In addition, the May 15 Order imposed an onerous 30-day production obligation, making clear that the burden calculus is the central issue requiring evidentiary support. Accordingly, it is critical that the Court consider evidence from Uber detailing the enormous amount of time and resources Uber would have to dedicate to the production of additional custodial files. *See* Fed. R. Civ. P. 26, advisory

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

committee's note to 2015 amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes. . . . A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination.").

In particular, reconsideration and reversal of the Court's May 15 Order requiring production of the custodial files for Ms. Boman, Mr. Dobbs, Mr. Gaddis, and Ms. O'Keefe is warranted in light of Ms. Brown's declaration detailing the enormous burdens to Uber. Ms. Brown serves as Uber's outside counsel and has worked closely with Uber's discovery vendors in facilitating the production of custodial files. Brown Decl. ¶ 2. As Ms. Brown explains, the burden of collecting, reviewing, and producing the custodial files of these witnesses would be particularly onerous given the long tenures of these witnesses, who collectively have 397 months of custodial data (from the beginning of each individual custodian's employment at Uber through December 1, 2024). *See id.* ¶¶ 8, 11 & n.4. Indeed, "[t]hree of the four custodians at issue . . . have been employed by Uber for over a decade" and "[b]ased on a preliminary review of these custodians' *Google Drive data alone* (not accounting for any other custodial data source), Uber has determined that these three custodial files are exceptionally large." *Id.* ¶ 7. Accordingly, Ms. Brown estimates that it will take Uber and its vendors approximately 2 to 4 months just to **collect** the custodial data for these witnesses, with a substantial amount of additional time needed to process and review the data once collected. *Id.* ¶ 8. The review of these witnesses' files will be particularly taxing given their roles at Uber and frequent interactions with Uber's counsel. In particular, Mr. Gaddis and Ms. O'Keefe provide significant support to Uber's Legal department in connection with defending litigation and therefore special scrutiny of their files will be necessary to ensure that protected privileged communications are not disclosed.[3] *Id.* ¶ 10; *see Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*, No. SA

_____

[3] The 30-day production timeline set forth in the May 15 Order is particularly inappropriate because it would be virtually impossible for Uber to perform an adequate privilege review of the many documents

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

CV 23-01709-CBM (DFMx), 2024 WL 4404967, at *3 (C.D. Cal. Jan. 30, 2024) (refusing to order production of categories of information likely to involve "discussions about legal actions filed against Defendants" that are "potentially privileged" and therefore "reviewing those documents for privilege and creating a privilege log would take several hundred hours"). Ms. Brown estimates that, in total, it will take *four and a half months* at a minimum to collect, process, and review all the custodial data for just these four employees, which will, in turn, cost approximately *$1,629,991 to $1,792,371*. Brown Decl. ¶¶ 14, 18.

In addition, while the time and financial burdens associated with producing custodial files for additional employees who may be identified as potential trial witnesses will depend on the particular individuals and the nature of their materials, Ms. Brown's declaration explains that production of such custodial files would be a significant undertaking that would "take longer than 30 days[.]" *Id.* ¶ 19.

Ms. Brown's declaration clearly establishes that the burdens of collecting, reviewing, and producing the custodial files for Ms. Boman, Mr. Dobbs, Mr. Gaddis, and Ms. O'Keefe—as well as any additional employees—would be substantial, vastly outweighing any possible need Plaintiffs have for this enormous set of materials. This is particularly true with respect to the four specific employees identified in the May 15 Order, none of whom have yet been designated to testify in a future trial. Nor have Plaintiffs tied their request for wholesale custodial files to any specific trial date, witness designation, past testimony, relevant topics, or purported gap in the discovery already produced. And even if Uber presents any of these individuals as trial witnesses in the future, past trials have made clear that they would be offered to testify about very *limited* and, in some cases, case-specific issues that have no relation to the sprawling materials included in their substantial custodial files. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2025 WL 2962453, at *4 (N.D. Cal. Oct. 20, 2025) (denying plaintiffs' request for production of full custodial files for two witnesses,

---

potentially subject to protection within that time, making inadvertent production of privileged materials highly likely.

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

noting that the production "would necessarily reach more expansive topics" than the witnesses would address at trial); *see also In re Simply Orange Orange Juice Mktg. & Sales Pracs. Litig.*, No. 4:12-md-02361-FJG, 2018 WL 522785, at *2 (W.D. Mo. Jan. 23, 2018) (noting that plaintiffs are not "entitled to custodial files (i.e., ESI) of each witness whom [a defendant] intends to call in support of its case," particularly "where the burden and expense of such production certainly must outweigh the likely benefits of such production").

Further, Ms. Brown's declaration makes plain that it is simply not possible for Uber to produce the custodial files of Ms. Boman, Mr. Dobbs, Mr. Gaddis, and Ms. O'Keefe—or any other new employee custodian—within the 30-day window provided in the Court's May 15 Order. *See* Brown Decl. ¶¶ 14, 19. As Ms. Brown explains, it will take at least two months to even collect the relevant materials from these employees using machine technology, and longer still to process and review the materials for relevance and privileged material. *See id.* ¶¶ 8, 14, 19. It would be patently unfair to hold Uber to a 30-day production window that is not technologically feasible.

For all of these reasons, the Court should reconsider and vacate the portion of the May 15 Order requiring the identification of all trial witnesses and the production of additional employees' custodial files.

## II.    THE COURT SHOULD STAY THE MAY 15 ORDER PENDING RECONSIDERATION AND RULE 72 APPEAL TO JUDGE BREYER.

Uber also requests that the Court issue a stay of the May 15 Order while the Court considers Uber's motion for reconsideration *and* to allow Uber to seek Judge Breyer's review of the order as a whole pursuant to Fed. R. Civ. P. 72. In deciding whether to stay the effect of a magistrate's discovery order pending review, courts consider four criteria: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *Alvarez v. Larose*, No. 3:20-CV-00782-

DMS-AHG, 2020 WL 5632659, at *2 (S.D. Cal. Sept. 21, 2020). Each factor supports a stay.

*First*, Uber has made a showing of likelihood of success on the merits with respect to its motion for reconsideration (and any necessary appeal to Judge Breyer stemming therefrom) by presenting the Court with evidence showing: (1) the overwhelming burdens associated with the production of additional employees' custodial files; and (2) that it would be impossible for Uber to produce additional custodial files in the 30-day timeframe ordered by the Court. In addition, this factor favors staying the effect of the May 15 Order as a whole to give Uber the opportunity to seek review of other aspects of the order by Judge Breyer pursuant to Rule 72, including, but not limited to, the portions of the May 15 Order requiring Uber employees, such as Sachin Kansal (who has already been deposed at length), to sit for additional depositions within 30 days of the order. *See* Dkt. 6209 at 1-2. Courts have recognized that, because a request to stay discovery must be timely made to avoid prejudice, it is appropriate to grant a stay pending Rule 72 review even if a magistrate judge is unable to determine whether the party moving for a stay is likely to succeed on the merits before the district judge. *See Alvarez*, 2020 WL 5632659, at *2. This is because "it would be unfair to penalize [a party] for failing to show the likelihood that their forthcoming objections will succeed by providing a rushed preview of the objections" that will be presented to the district judge in the future. *Id.*

*Second*, Uber has "made a showing of irreparable injury if the stay is not granted[.]" *Id.* As explained above, absent a stay, Uber will be required to do the impossible: complete within 30 days a large production that, even with the most diligent efforts, would take at least four and a half months just for the four employees specifically identified in the May 15 Order. Thus, refusing to stay the effect of the relevant portions of the May 15 Order will significantly hamper Uber's ability to defend itself at trial by creating a scenario in which Uber will have to forgo the opportunity to use certain witnesses, even to address a discrete or case-specific issue, because it is not possible (and/or too risky given the significant privilege concerns at issue) to produce their entire custodial files in the time allotted by the Court. It will

also force Uber to expend enormous resources attempting to comply with an order that this Court or Judge Breyer may ultimately vacate or modify. In addition, the resolution of both Uber's motion for reconsideration and its forthcoming Rule 72 motion for review will almost certainly extend beyond the current production deadline. Accordingly, without a stay, Uber would "effectively be deprived of its ability to seek review of the Discovery Order, which itself constitutes irreparable harm." *Id*. The same is true of the other aspects of the May 15 Order, which require Uber to identify all potential trial witnesses and provide document and deposition discovery on an expedited timeframe and therefore would necessitate compliance *before* Judge Breyer has the opportunity to review and rule on a Rule 72 request.

As courts routinely recognize, this reality not only constitutes irreparable harm; *it alone warrants a stay* because once discovery is produced—or substantial compliance efforts are undertaken—the right to review is effectively lost. *See, e.g., Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 2309972 (C.D. Cal. May 10, 2021) (granting a stay because without it, "Defendants would be deprived of any meaningful right to reconsideration of the discovery order by this Court"); *Alvarez*, 2020 WL 5632659, at *2 (granting stay despite lack of showing of likelihood of success on the merits where absence of stay "would effectively deprive Respondents of their right to reconsideration of the Discovery Order by the district judge altogether").

*Third*, there is no evidence that "granting of the stay would substantially harm the other parties[.]" *Alvarez*, 2020 WL 5632659, at *2. Courts regularly hold that plaintiffs do not suffer substantial harm based on a short delay in obtaining discovery while a discovery order is reviewed and that any potential harm from a stay can be addressed, if necessary, through corresponding adjustments to case deadlines. *See, e.g., Canchola v. Allstate Ins. Co.*, No. 8:23-CV-00734-FWS-ADS, 2025 WL 1377817, at *3 (C.D. Cal. Apr. 17, 2025) (collecting cases). This is particularly true here given that Uber has not yet identified any of the four employees at issue (none of whom were requested by Plaintiffs as custodians during the initial discovery period) as potential witnesses in an imminent trial and Plaintiffs therefore have no actual

need to obtain their custodial files within the next 30 days. Nor is there any pressing need for the other discovery at issue in the May 15 Order.

*Fourth*, "the granting of the stay would serve the public interest." *Alvarez*, 2020 WL 5632659, at *2. Staying a discovery order that would cause burden and expense pending review satisfies this criterion "because the public interest favors 'just, speedy, and inexpensive determination of every action[.]'" *Canchola*, 2025 WL 1377817, at *4 (citing Fed. R. Civ. P. 1).

In short, all four factors favor a stay while this Court considers Uber's motion for reconsideration and Judge Breyer considers forthcoming objections to the May 15 Order generally.

<u>**CONCLUSION**</u>

For the foregoing reasons, Uber requests that the Court: (1) grant its Motion for Reconsideration and vacate its May 15 Order to the extent it requires Uber to, within 30 days, produce custodial files for Emilie Boman, Chad Dobbs, Todd Gaddis, and Erin O'Keefe, and to disclose (and provide custodial files for) any other employee who may testify in a future trial; and (2) stay the effect of the May 15 Order pending resolution of this motion and the forthcoming request for review pursuant to Fed. R. Civ. P. 72.

DATED: May 22, 2026                          Respectfully submitted,


                                             */s/ Laura Vartain Horn*
                                             _____

14

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER

Case No. 3:23-md-03084-CRB (LJC)

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)