# EXHIBIT 1



**Sent from:** New York Office
March 5, 2026

<u>*Sent via Email*</u>
Christopher Cox
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Christopher.cox@kirkland.com

### *Re: Outstanding Wave 1 Discovery*

Dear Counsel,

I write to follow up on outstanding case-specific discovery for Wave 1 bellwether cases. Plaintiffs have identified material gaps in Uber's production in connection with the recent Dean trial. Fed. R. Civ. P. 26(e)(1) requires that Uber supplement initial discovery and discovery responses; however, Uber has not done so in critical areas, including, *inter alia,* Uber drivers' history, its safety appraisals of alternative driver-rider matches, and marketing to Wave 1 Plaintiffs. Plaintiffs seek narrowly tailored, case-specific supplementation to complete the record and ensure that Wave 1 bellwether trials proceed fairly. Plaintiffs wish to meet and confer with Uber to address the issues detailed below, and, in accordance with the Court's order (ECF 5270), Plaintiffs will seek leave for this outstanding discovery, to the extent necessary.

### 1. **Rental Car Agreements**

Uber's 30b6 witnesses were asked about documents indicating the Wave 1 drivers were "fleet active" but professed ignorance. Further, in a follow-up written discovery response at the 11th hour, Uber gave a vague, insufficient description of what "fleet active" means. Based on evidence that came to light in conjunction with the Dean trial, "fleet active" may refer to the drivers' use of an Uber-contracted rental vehicle. Also at the 11th hour, Uber produced a new version of the driver trip log for the Dean case, showing what vehicle Dean's driver had been driving for each trip. Immediately prior to trial Uber revealed that the Dean driver had been using an Uber-contracted rental car. The rental contract, produced during trial, showed that Uber maintained broad control over the vehicle and could have equipped the vehicle with cameras.

Plaintiffs previously requested documents related to partnerships or contracts with vehicle rental companies or other entities to facilitate Drivers' vehicle rentals or leases. *See e.g.,* Plaintiffs' First Set of Requests for Production, Request No. 147.[1] However, Uber has not produced discovery

---

[1] Plaintiffs have made similar discovery request for the Wave 1 Plaintiffs. *See e.g.,* Plaintiff B.L.'s First Set of Requests for Production, Request 1; Plaintiff LCHB128's Furst Set of Request for

CONNECTICUT • NEW YORK • PENNSYLVANIA • WEST VIRGINIA
Chaffin Luhana LLP • Toll Free: (888) 480-1123 • Fax: (888) 499-1123 • ChaffinLuhana.com

sufficient to show whether any of the remaining Wave 1 drivers were using rental vehicles at or near the time of the incident trips. Whether Wave 1 drivers used Uber-contracted rental vehicles and the details of any rental agreements is essential discovery for the remaining Wave 1 cases. Plaintiffs seek limited production of rental vehicle discovery including (1) clarification of what "fleet active" means, (2) whether each Wave 1 driver was driving an Uber-contracted rental vehicle with respect to the incident trip, (3) whether each Wave 1 driver had an active rental vehicle contract with Uber at the time of the incident trip; (4) production of Uber-contracted rental vehicle agreements applicable to Wave 1 drivers, and (5) driver-specific trip logs showing vehicles used.

### 2. Trip Supply Plans and S-RAD

Plaintiffs have previously requested documents to show how Uber pairs riders and drivers, including the use of S-RAD. *See e.g.,* Plaintiffs' First Request for Production, Request No. 144; Plaintiffs' Second Request for Production, Request No. 30. To date, Uber has not produced supply plan data for any remaining Wave 1 cases and has not indicated whether it destroyed supply plan data ("supply plans" means the alternative driver pairings Uber could have matched a rider with and Uber's safety assessment of each driver-rider pairing for that trip). In the Dean trial deposition of Sunny Wong, Uber confirmed that, after it knew of Ms. Dean's rape allegation, it nonetheless destroyed alternative supply plans that could have been assigned to Ms. Dean. The absence of this data severely prejudiced Plaintiffs, including by destroying evidence of a potentially safer ride. Plaintiffs therefore seek targeted production of alternative supply plans, circumstantial evidence from which alternative supply plans can be reconstructed, internal communications concerning supply balancing for the relevant markets and dates involved in Wave 1 cases, and documents sufficient to show the average SRAD scores, including the score distribution, for the day of week and time of day in each city or geographical region where the Wave 1 incident trips were requested. Additionally, Plaintiffs intend to move for sanctions for Uber's failure to preserve supply plans for those cases in which Uber had notice of the alleged incident prior to destroying the respective supply plans.

### 3. Non-Profits

At the Dean trial, Uber relied on its relationships with non-profit organizations to justify decisions (including parameters for S-RAD) and safety policies, yet it did not produce the underlying communications or internal documents reflecting those interactions. Plaintiffs previously requested documents that identify, reflect, or describe communications Uber had with any external organization concerning Sexual Assault. *See e.g.,* Plaintiffs' First Request for Production, Request No. 109. Because Uber cited these relationships as validation, it should provide the materials that support those claimed endorsements. Plaintiffs seek narrowly-tailored production of relevant non-profit communications and documents (at minimum, those which demonstrate the basis for Uber's claims that third parties had endorsed any of its actions or played a role in Uber's sexual assault prevention, education, marketing, or S-RAD efforts), and limited third-party discovery and 30(b)(6) depositions of Uber and non-profit witnesses.

---

Production, Request No. 1; Plaintiff A.R.'s First Set of Requests for Production, Request No. 1; and Plaintiff WHB 318 First Set of Requests for Production, Request No. 1.

2

### 4. Custodial Files and Depositions

Uber called live witnesses at trial, including Chad Dobbs and Emilie Boman, whose complete custodial files had not been produced. Plaintiffs experienced substantial disadvantage during cross-examination due to these production deficiencies. Plaintiffs seek complete custodial files for any current or former Uber employee that Uber intends to call in any of the Wave 1 cases, limited to relevant subject matter and time periods.

Uber also called live its chief witness, Mr. Sachin Kansal. Plaintiffs request an opportunity to depose Mr. Kansal again to address areas of his live testimony that went significantly beyond earlier limitations and before critical S-RAD documents were produced.

Lastly, Plaintiffs request that Uber update its initial disclosures immediately including producing verified interrogatory responses. See Fed. R. Civ. P. 33(b)(3).

### 5. Driver, Rider, and Trip History

At the Dean trial, it became apparent that Uber created proof problems by selectively omitting certain items from its production of driver, rider, and trip history. Specifically, Uber should be required to produce for all Wave 1 cases:

a. mean (not just median) driver 1-star ratings for the city or geographical region where the incident trip was requested, sufficient to determine the mean driver 1-star ratings by day of week and time of day,
b. the mean and median percent of driver late-night trips and weekend trips for the relevant city/time period,
c. complete trip log including all feedback tags, with information sufficient to determine the trip time in local time, up to the time the driver was deactivated (rather than ending at the incident trip),
d. the basis for Uber's claims about distribution of the fares for the incident trips,
e. the trip ID for any prior IPC or dangerous driving reports (so Plaintiffs can tell which trip they pertain to).
f. documents sufficient to identify the safety tools that were available to each Plaintiff and which were used with the corresponding time period, and provide a decoder (data dictionary) so that Plaintiffs can read and understand the mobile events log entries describing these tools.
g. copies of all marketing ad content along with dates that each ad ran or was distributed, for marketing that was targeted to the geographic locations where plaintiffs lived including all platforms Uber used (including but not limited to Instagram, Twitter, Facebook, radio, billboards, email, in-ap marketing, etc.), and
h. the contact information of each rider who had left the feedback tags "professionalism" "driver not polite" or "comfort" or "conversation" for each Wave 1 driver.

This narrowly tailored discovery is central to liability, notice, causation, and evaluation for each of the Wave 1 cases and understanding the larger picture for the trials. Plaintiffs have previously propounded similar discovery regarding driver details, safety tools, and marketing. *See,*

3

*e.g.,* Plaintiffs' Second Request for Production, Request No. 59; and Plaintiffs' First Request for Production, Request Nos. 43–50 and 98–105.[2]

We would like to meet and confer early next week and will reach out to schedule shortly. Thank you.

Sincerely,

*/s/Roopal P. Luhana*
**Roopal P. Luhana, Esq.**

*/s/Sarah R. London*
**Sarah R. London, Esq.**

*/s/Rachel B. Abrams*
**Rachel B. Abrams, Esq.**

cc: Laura Vartain, Esq.
    Michael Shortnacy, Esq.
    Chris Cotton, Esq.

---

[2] Plaintiffs have made similar discovery request for the Wave 1 Plaintiffs. *See e.g.* Plaintiff B.L.'s First Set of Special Interrogatories No. 1; Plaintiff B.L.'s Second Set of Special Interrogatories Nos. 10, 11, 14; Plaintiff B.L.'s Requests for Production, Request Nos. 10-27, 50, 56, and 57; Plaintiff LCHB128's First Set of Special Interrogatories, Nos. 8, 9, 12, and 50; Plaintiff LCHB128's First Set of Requests for Product, Request Nos. 10-27; Plaintiff A.R.'s First Set of Special Interrogatories, No. 1; Plaintiff A.R.'s First Set of Requests for Production, Request Nos. 10-27, 50, 56, and 57; Plaintiff WHB 832's First Set of Special Interrogatories, No. 1; Plaintiff WHB 832's Second Set of Special Interrogatories, No. 14; Plaintiff WHB 832's First Set of Requests for Production, Request Nos. 10-27, 50, 56, and 57; and Plaintiff WHB 318 First Set of Special Interrogatories Nos. 9, 10, and 13; Plaintiff WHB 318 First Set Request for Production, Nos. 10-27 and 50.

4