# EXHIBIT 2

| From: | Beth Wilkins |
|---|---|
| To: | Cox, Christopher |
| Cc: | Reenee Gangopadhyay; Vartain, Laura; Michael Shortnacy; Chris Cotton; Sarah London; Rachel Abrams; Geoffrey Spaulding; Sara Peters; Sara Craig; Sommer Luther; mshaw@whlaw.com; Stasja Drecun; Maya Kalonia; Florencia Cudos; Roopal Luhana; St. Amand, Amy; Roopal Luhana; Coverstone, Kaitlyn L.; Uber MDL Discovery Team |
| Subject: | RE: In re: Uber 23-md-03084-CRB - Wave 1 Discovery |
| Date: | Tuesday, April 21, 2026 10:54:56 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | DRAFT PTO 8 re custodians- Plaintiffs" Portion.docx |
| | DRAFT PTO 8 re rental cars- Plaintiffs" Portion.docx |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Chris and all,

The issues below remain unresolved despite our attempts to meet and confer, therefore, please find PTO 8 letters on the custodians and rental vehicle issues, attached.

With respect to our efforts to meet and confer about supply plans, we request that Uber provide recreated S-RAD scores for the potential matches that were available for each Wave 1 bellwether plaintiff. We understand Uber can do so based on Mr. Wong's testimony about how Uber recreated the S-RAD score for B.L.'s incident trip. If you believe it is necessary to meet and confer on this further, please provide times that you are available within the next 3 days, per PTO 8. Please be aware that if we do not have commitment from Uber by April 29 that it will provide these recreated scores, we will proceed with seeking relief from the court.

Thank you,
Beth


**Beth Wilkins | Partner**
E: Wilkins@chaffinluhana.com
P: (412) 643-0290

**Serving clients nationwide with offices in CT, NY, PA, and WV.**



ChaffinLuhana.com
ChaffinLuhanaFoundation.org

**Mailing Address:**
Chaffin Luhana LLP 615 Iron City Drive, Pittsburgh, PA, 15205

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL MATTERS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**JOINT PTO 8 LETTER REGARDING CUSTODIAL FILES AND DEPOSITIONS OF UBER'S WAVE 1 LIVE TRIAL WITNESSES**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G - 15th Floor |

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding outstanding Plaintiffs' request for discovery regarding Uber-associated rental vehicle agreements for Wave 1 Bellwether drivers.

DATED: April 27, 2026              Respectfully Submitted,

By: _____

    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641

By: _____

Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

**Plaintiffs' Position:**

A primary purpose of the discovery process is to avoid surprise at trial. Yet Uber has repeatedly prejudiced Plaintiffs at trial by calling live witnesses for whom Uber has not previously produced a custodial file and who have not testified in their individual capacity or testified at all. Plaintiffs seek an order requiring Uber to produce custodial files for all Uber witnesses who will provide live trial testimony and to tender all witnesses who will provide live trial testimony for deposition in their individual capacity. Without full custodial files and pretrial depositions, Plaintiffs are at substantial disadvantage during cross-examination at trial.

During the *Dean* trial, Uber called Chad Dobbs and Emilie Boman as live witnesses, however Uber has never produced Mr. Dobbs' or Ms. Boman's custodial files and neither been deposed in their individual capacities. Although Mr. Dobbs and Ms. Boman provided 30(b)(6) testimony before trial, their trial testimony went well beyond the scope of their pre-trial depositions. For example, although Mr. Dobbs' 30(b)(6) testimony was limited to topics related to increasing the number of riders and drivers on the Uber platform, he offered trial testimony on a wide range of topics including Uber's purported safety features, driver background checks, and case-specific onboarding of Ms. Dean's driver (Mr. Turay). These topics, which Uber produced other corporate witnesses on,[1] were well outside of the scope of Mr. Dobbs' pretrial testimony.

Similarly, Ms. Boman was designated to give pretrial 30(b)(6) testimony about Uber's costs and expenditures spent for its transportation network, Uber's costs and expenditures spent for the purpose of preventing sexual assault and sexual misconduct, and Uber's payments to nonprofit organizations. During Ms. Boman's deposition, Uber's counsel objected to questions about the timing, motivation, and content of Uber's Safety Reports as beyond the scope of Ms. Boman's designation. Yet at trial, Uber elicited extensive testimony about its Safety Reports from Ms. Boman; in fact, Ms. Boman was Uber's primary witness on Safety Reports. And although Ms. Boman was designated on the costs related to safety and prevention, Uber did *not* designate her on the specifics of any safety program and instead provided other witnesses on those topics. Specifically, Uber offered Mariana Esteves to address Uber's Women Preferences Program and thus, Plaintiffs did not question Ms. Boman on that topic. Yet at trial, Uber elicited extensive testimony from Ms. Boman about Uber's Women Preferences Program.

Without Mr. Dobbs' and Ms. Boman's full custodial files and an opportunity to depose them in their individual capacity before trial, Plaintiffs were at a serious disadvantage at trial. Although Uber knew the witnesses' full role and responsibilities within Uber, Plaintiffs' understanding was limited to the topics that had been addressed during 30(b)(6) depositions. Because these witnesses testified at trial beyond the scope of their 30(b)(6) testimony, Plaintiffs were deprived of the opportunity to conduct comprehensive discovery. Further, without complete custodial files, Plaintiffs were deprived of the opportunity at trial to use documents that might refresh the witnesses' recollections, show bias, or importantly, impeach their trial testimony.

Uber also called Sachin Kansal live at the *Dean* trial. Although Uber produced Sachin Kansal's custodial file, Uber objected to Plaintiffs' efforts to depose Mr. Kansal before trial, arguing under the Apex doctrine that Mr. Kansal had "no unique personal knowledge of the facts at issue" in this litigation and "[did] not possess unique personal knowledge about Uber's safety measures and practices that Plaintiffs allege were inadequate." (ECF 2425 at 18). Further, Mr. Kansal filed a declaration, signed under oath, stating that he was "not responsible for responding to or investigating incidents of any nature between drivers and riders," was "not involved with

---

[1] Uber produced Hannah Nilles on background check topics and case-specific driver onboarding and Greg Brown and Mariana Estevez on topics related to safety features.

reviewing driver background checks," does "not make decisions regarding rider or driver account deactivations," and is "not uniquely involved in the development, implementation, or execution of the safety measures and practices that are the focus of Plaintiffs' lawsuits," and "[a]ny knowledge [he] may have of those matters would be information that would have been reported to [him] by other executives or others directly responsible for those matters." ECF 2424-7 at ¶ 7.

Plaintiffs deposed Mr. Kansal in May 2025. Given his sworn statements, Plaintiffs narrowed their already limited deposition time with Mr. Kansal to outside of what he claimed to have no personal knowledge. However, at trial, Mr. Kansal testified on matters he had previously sworn to have no knowledge of. For example, given that Mr. Kansal claiming in his declaration that he was "not involved with" investigating sexual assault reports by riders, Plaintiffs were surprised to learn at trial that Mr. Kansal, in his role as Chief Products Officer, had conversations with survivors of sexual assault survivors on the Uber platform and their families. And despite claiming that any knowledge he had about sexual assault incidents on the Uber platform and measures that Uber implemented to prevent them would have come only from other Uber employees, Mr. Kansal testified that as a result of what he learned through his *personal* conversations with survivors, he and Uber made changes to address safety concerns. Moreover, despite his declaration, Mr. Kansal gave extensive trial testimony about Uber's S-RAD feature and was Uber's primary witness on S-RAD at trial despite Uber identifying another employee (Sonny Wong) as Uber's most knowledgeable person about S-RAD.

Uber's use of surprise witnesses resurfaced in the *Mensing* trial. Shortly before trial, Uber identified Erin O'Keefe and Todd Gaddis as live witnesses for the *Mensing* trial. Uber has never produced the custodial file for either Ms. O'Keefe or Mr. Gaddis. Ms. O'Keefe has never been deposed in this litigation in any capacity. Before identifying her as a witness in the *Mensing* trial, Uber had never identified Ms. O'Keefe as a potential witness or person with relevant information. To date, Uber has produced *no* substantive documents involving Ms. O'Keefe. Although Mr. Gaddis has given 30(b)(6) testimony, Uber has only produced limited documents that he authored and arguably none that would support his later purported testimony. He has never been deposed in his individual capacity in this litigation. Uber pulled him down as a witness in the *Mensing* trial only after Judge Breyer ordered an eleventh-hour deposition that would have occurred late Wednesday night before he was to testify at trial on Thursday. Notably this is the second time Uber advanced Mr. Gaddis as a trial witness on topics for which he was undisclosed and un-deposed, which previously required his deposition the day prior to the *Dean* trial. Uber only declined to call Gaddis during the *Dean* trial after documents that demonstrated how he investigated the subject at hand were disclosed during and after that eleventh-hour deposition. This is exactly the type of prejudicial conduct that pretrial discovery rules are intended to prevent.

Without a witness's custodial file, Plaintiffs are limited in their ability to evaluate and understand the entire scope of the witness' role at Uber and may be deprived of documents that might be used to probe the witness' recollection, show their bias, or importantly, to impeach the witness. This greatly prejudices Plaintiffs' ability to prepare a complete cross examination of Uber's live trial witnesses and undermines a key purpose of pretrial discovery- to avoid surprise.

Plaintiffs therefore request:
1) Uber be ordered to produce custodial files for Chad Dobbs, Emilie Boman, Todd Gaddis, and Erin O'Keefe within 30 days of the Court's Order.
2) Uber be ordered to produce Sachin Kansal for a 4-hour deposition within 30 days of the Court's Order.

3) Uber be ordered to produce custodial files for any live witnesses they intend to call at trial no less than 60 days before trial.
4) Uber be ordered to produce witnesses who Uber intends to call at trial for deposition no fewer than 21 days before trial.

## II.     Defendants' Position:

### FILER'S ATTESTATION

I, _____, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April __, 2026

By: /s/ _____

[NAME]

3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to: | **JOINT PTO 8 LETTER REGARDING RENTAL VEHICLE USE BY WAVE 1 BELLWETHER DRIVERS** |
| ALL MATTERS | Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G - 15th Floor |

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding outstanding Plaintiffs' request for discovery regarding Uber-associated rental vehicle agreements for Wave 1 Bellwether drivers.

DATED: April 27, 2026                     Respectfully Submitted,


By: _____          By: _____

ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641

Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

**Plaintiffs' Position:**

Whether it was feasible for Uber to require cameras in Uber vehicles is a key dispute in this case. For more than two years, Plaintiffs have sought confirmation of whether Wave 1 Drivers used Uber-associated rental vehicles. Plaintiffs first asked for this on February 28, 2024.[1] Yet it came to light in the *Dean* trial that Uber has not provided complete, accurate information and has not complied with its obligation under Rule 26 to timely supplement discovery responses. Plaintiffs therefore seek an order compelling Uber to provide additional discovery regarding the use of Uber-associated rental vehicles by Wave 1 bellwether drivers, as outlined below.

As Plaintiffs argued in the *Dean* trial, when an Uber driver is using an Uber rental vehicle, Uber has even more control over the ride environment than in a driver-owned vehicle. Chiefly, Uber could require Uber drivers using Uber rental vehicles to have dashcams. In fact, as addressed in the *Dean* trial, Uber has run dashcam pilot programs in its rental vehicles and those pilots show that dashcams are feasible and effective at reducing safety incidents. Additionally, Uber's internal evidence indicates that drivers using Uber rental cars have a higher risk for committing sexual assault or sexual misconduct.

Uber's discovery conduct with respect to Mr. Turay, the Uber driver accused of rape by Ms. Dean, provides an example to understand the significance of this issue and why there is good cause for additional discovery. In response to initial discovery requests, Uber produced documents that indicated Mr. Turay was "fleet active," however, Uber's discovery responses as to the meaning of "fleet active" are an incomprehensible word salad.[2] Further, Uber's case-specific 30(b)(6) witnesses were unable to provide answers as to what "fleet active" means both generally and with respect to the vehicle Mr. Turay used during Ms. Dean's trip.

Following those depositions, Plaintiffs sought additional information on what "fleet active" means with respect to an Uber driver's use of a rental vehicle. On September 9, 2025, Uber served sworn discovery responses in lieu of a 30(b)(6) deposition affirming that Mr. Turay was *not* using an Uber-associated rental vehicle for the incident trip. However, nearly four months later and just days before the Dean trial, Plaintiffs discovered that Mr. Turay was in fact driving an Uber-associated rental car during the incident trip. Plaintiffs made this discovery when investigating a declaration from Hannah Nilles, Uber's Global Head of Safety, filed in support of Uber's Motion for Summary Judgment. Ms. Nilles testified that Uber complied in all respects with Arizona law with respect to the incident trip. (ECF 4356-2, filed Nov. 10, 2025).

Because Arizona law requires Uber drivers to have vehicle insurance, yet Plaintiffs were aware that Mr. Turay did not have vehicle insurance at the time of the incident trip, Plaintiffs sought to depose Ms. Nilles. Instead, Uber produced documents on January 4, 2026 which indicated that Mr. Turay *was* in fact driving an Uber rental vehicle during the incident trip, despite

---

[1] Plaintiffs' First Requests for Production sought: REQUEST NO. 147: Any and all DOCUMENTS RELATING TO YOUR partnerships or contracts with car rental companies or other entities to facilitate DRIVERS' vehicle rentals or leases."

[2] In response to Plaintiffs' request to Uber to define "fleet active," Uber answered: "Uber states that "Fleet Active" is not a tag that has any meaning or function for P2P drivers. That tag has historically been auto populated in Investigations Workbench, but the designation does not have utility for the Wave 1 drivers. "Fleet" refers to commercial drivers and in that context can be used to denote whether a driver is a driver within a particular commercial fleet (i.e. the fleet of vehicles on the account that could be operated). For P2P drivers, the designation has no utility in Investigations Workbench."

its earlier discovery responses and corporate witness testimony. Yet Uber still refused to produce copies of the actual agreement under Judge Breyer ordered it to on January 23, 2026, well into the *Dean* trial.

Whether Wave 1 Uber drivers were using or had access to Uber rental vehicles during the incident trip is highly relevant to the Wave 1 plaintiffs' claims. Plaintiffs therefore request:

1) Uber produce a witness for a four-hour deposition to address what a fleet is, what fleets were available to each Wave 1 bellwether driver, whether each Wave 1 bellwether driver was "fleet active" and if so, at what dates and with what fleets, and further address questions about the use or potential use of cameras in fleet vehicles.

2) Provide a verified response for each Wave 1 bellwether driver indicating whether the driver, at any time, rented a vehicle through Uber or any of Uber's rental partners or programs. If so, provide copies of each rental vehicle contract or agreement and all other documentation in Uber's possession, custody, or control regarding the rental, as well as all agreements between Uber and the respective rental partner(s).

3) Uber produce all Uber-associated rental vehicle agreements or contracts to which any Wave 1 Driver was a party at any time and all other documentation in Uber's possession, custody, or control regarding the rental, as well as all agreements between Uber and the respective rental partner(s).

## II.    Defendants' Position:



### FILER'S ATTESTATION

I, _____, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April __, 2026

By: /s/_____
　　　[NAME]

2