UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No: 3:23-MD-03084 CRB |
| | JOINT LETTER BRIEF REGARDING MOBILE EVENT LOG DEFINITIONS |
| This Document Relates to: | Judge:    Hon. Lisa J. Cisneros Courtroom:    G – 15th Floor |
| ALL ACTIONS | |

Pursuant to Pretrial Order 8 [ECF 323], the Parties submit this joint letter regarding Plaintiffs' request for documents which define all event types that are included in a mobile events log, which remains in dispute following several meet and confers culminating on May 21, 2026.

## I.    Plaintiffs' Position

**Request:** Plaintiffs respectfully request that the Court order Uber to produce documents sufficient to show the meaning of all event types used on a mobile event log. Uber has been able to produce responses to requests for this information as to specific event types for Bellwether plaintiffs. This request simply allows Plaintiffs to fully understand what took place on the rides at issue in each case.

**Background and Argument:** Uber has the ability to generate a mobile events log for any driver or passenger for a specified time period. Uber has produced these logs for each Bellwether case. The mobile events log captures every push of a button, every push notification, and every action taken by a driver or a passenger on their phones. These logs detail when rides start and stop (and prolonged stops), route deviations, and contain telematics information that includes the speed of a driver's vehicle. These logs show (down to the minute and often the second) what was happening inside a driver's car. There is no dispute that mobile event logs are important pieces of evidence in each and every case. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery into matter related to any party's claim or defense). These logs have been used at trial and during several depositions to piece together what took place at various points during rides.

While some entries in the mobile events log are relatively straightforward, many are not. Because these logs are a crucial piece of evidence that allows all parties to understand what took place during a ride, it necessarily follows that all parties are entitled to understand what each entry means. Otherwise, Uber would have an advantage in using this information at trial, whereas Plaintiffs would lack the necessary information to respond.  *See Bean v. John Wiley & Sons Inc.*,

No. CV 11-08028-PCT-FJM, 2012 WL 129809, at *1 (D. Ariz. Jan. 17, 2012) (compelling production of "keys explaining the spreadsheets" where "defendant's use of cryptic abbreviations without definition renders these portions of the spreadsheets meaningless, just as if the data had been produced in code or in a non-readable format"); *see also id* ("It is defendant's burden to translate ESI into a useful format.).

This became an issue in the *Dean* case. Weeks after the close of discovery and in the days leading up to the *Dean* trial, Uber submitted a declaration from one of its employees attesting that "there was never an in-app audio recording during the Subject Trip" despite the following notation appearing on the mobile event log for Ms. Dean's driver: "safety_audio_recorder_driver_trip_ended_with_recording." Ex. A, 12/4/25 Declaration of Todd Gaddis, ¶¶ 3-5. Yet Uber previously represented that that exact event means: "When a trip ends with a recording going on." *E.g.*, Ex. B at 23 (Uber's Second Supplemental Responses to Plaintiff LCHB128's Special Interrogatories). Plaintiffs make this request now in an effort to avoid discrepancies like this in the future. Plaintiffs will be severely prejudiced if they are unable to pin down Uber's understanding and usage of the events in the log before trial.

During the process of working up individual Bellwethers, Plaintiffs submitted specific entries to Uber to inquire about their meaning. Uber was able to respond to interrogatories that asked about the meaning of events in the mobile event log and was able to provide response that explained what each specific event meant. *See, e.g.*, Ex. B, Uber's Response to Special Interrogatory No. 11, *LCHB128 v. Uber Technologies, Inc.*, No. 3:24-cv-7019 (N.D. Cal. June 12, 2025). This process was long, tedious, and is not scalable across all other cases being worked up, especially because the parties are now in the process of working up at least 200 additional cases.

To that end, Plaintiffs subsequently requested that Uber produce a document or whatever compilation of documents contained definitions for each type of event that could be entered into the mobile events log. To date, Uber has maintained that such documents do not exist, but this cannot be possible when Uber was previously able to produce responses to individual requests. *See id.* This seems even more implausible when Uber has posted blogs about how it has standardized this exact dataset. *See* Ben Hjerrild et al., *How Uber Standardized Mobile Analytics for Cross-Platform Insights*, Uber: Eng. Blog (Oct. 2, 2025), https://www.uber.com/us/en/blog/how-uber-standardized-mobile-analytics/. Even if there is not one single document that defines all terms, Uber evidently has the resources to compile this information and take a position on what it means. It has even posted a blog post about how it has undertaken to compile and standardize precisely what Plaintiffs are asking for. Nonetheless, if documents that define mobile events do not exist then as an alternative, Uber should be ordered to provide definitions in the form of interrogatory responses for each type of event that might be used. Plaintiffs are heartened to see Uber explain that many of these are easily explained.

Plaintiffs are entitled not to be surprised at trial. *See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute."). Uber's repeated tactic of producing a declaration from Mr. Gaddis each time a dispute arises concerning the definition of mobile events terms highlights Plaintiffs' need for access to the information Uber uses to define these terms in the regular course of its business. Mr. Gaddis's

statements are contradicted by Uber's own publicly posted blogs and do not negate the need for this critical information that Uber is evidently capable of obtaining. Uber's authorities are inapposite because Plaintiffs do not ask that Uber create documents that do not exist. Instead, Plaintiffs seek access to the same information that is already available to Uber's employees—the definition of technical terms in its logs, which necessarily must be understood by different employees across Uber's large enterprise.

Plaintiffs' only ask is that Uber do what it already has shown it can do: produce definitions for all mobile event log types. This will allow Plaintiffs and Defendants to begin trials with the same knowledge about what these logs show occurred during each ride.

## II.     Uber's Position

Although Uber has produced more than 5.5 million pages of documents, Plaintiffs continue to dream up new, burdensome requests that, at best, have tangential relevance to this litigation. Plaintiffs' request that Uber create a comprehensive, platform-wide glossary defining every mobile event that "might be used" in a case follows the same pattern. It would require Uber to expend enormous resources compiling information that would be largely irrelevant to Plaintiffs' claims. And it would ultimately be useless even where relevant, because the meaning of many entries can only be discerned by event-specific investigation and contextual analysis.

After Uber pointed out that the Federal Rules do not allow a party to demand the creation of new documents, Plaintiffs pivoted, reframing their request as one that merely seeks a very long interrogatory response, rather than the creation of a new document. But that is a distinction without a difference. The Court should deny Plaintiffs' requests under Rules 33, 34, and 26 because: (1) the comprehensive mobile events glossary that Plaintiffs seek ***does not exist***; (2) the law does not require Uber to create a document to satisfy Plaintiffs' request; and (3) the burden of creating a mobile events glossary would be grossly disproportionate to the needs of the case. Plaintiffs' request is particularly unreasonable because most mobile event entries will never be relevant to any case; Uber has been diligently providing (and will continue to provide) clarifications of such entries where necessary; and the burdens of creating such a glossary would be extremely onerous, involving significant research and consultation with numerous Uber employees. At most, Plaintiffs are entitled to clarification of specific, case-relevant entries, when the need arises in a particular matter—not the creation of a platform-wide technical reference document, whether produced as a standalone document or pasted into interrogatory responses.

**The Requested Glossary Does Not Exist.** Plaintiffs' request fails at the threshold because it seeks materials that do not exist: Uber documents sufficient to show the meaning of every possible event type used on a mobile events log. *See Lerblance v. Calyx Energy III, LLC*, No. CIV-23-47-JFH-GLJ, 2024 WL 3275789, at \*3-4 (E.D. Okla. July 2, 2024) ("It is well-settled that a responding party's obligations under Fed. R. Civ. P. 34 do not extend to non-existent materials."). Uber does not possess a single glossary or compilation defining every possible mobile events log entry. *See* Decl. of T. Gaddis (June 2, 2026) ("Decl.") ¶ 5. Nor does Uber maintain a collection of documents that together comprehensively and authoritatively define all such entries across the platform. *See id.* ¶ 6. That should end the inquiry: Rule 34 requires production of existing documents and ESI; it does not require a responding party to research, synthesize, and draft a new technical/legal reference document for its adversary.

Plaintiffs insist that because "Uber was previously able to produce responses to individual requests," Uber must have the requested documents. Not so. The fact that Uber has investigated and answered targeted questions regarding discrete entries does not mean that Uber has a reference guide covering all possible event types across the platform. To the contrary, each time such a question has arisen in this litigation, Uber has conducted a time-intensive investigation, consulting multiple documentary materials relevant to the specific request and reaching out to engineers and other employees, as needed, who could help explain the notations. *See id.* ¶ 7; Gaddis Dep. 61:17-21, 62:2-13, Jan. 12, 2026. That context-specific investigation is not evidence of a hidden glossary; it is evidence that no such glossary exists.

Plaintiffs also point to an October 2025 Uber blog post that discussed Uber's efforts to standardize analytics data across platforms. But nothing in that post suggests that Uber has created a comprehensive guide defining every possible mobile events entry. *See* Decl. ¶ 3. Nor does it

4

suggest that Uber has compiled historical, context-specific definitions for tens of thousands of entries across different products, platforms, time periods, and use cases.

**The Law Does Not Require Uber to Create Plaintiffs' Desired Glossary.** Plaintiffs have alternatively argued that Uber should "compile" a glossary if one does not exist. But it is black-letter law that parties cannot be compelled to create new documents in response to discovery requests. *See, e.g.*, *Ujhelyi v. Vilsak*, No. C 12-04282 JSW, 2014 WL 4983550, at *4 (N.D. Cal. Oct. 6, 2014) ("A party . . . is not required to create a document where none exists."); *Automotive Fin. Corp. v. DZ Motors, LLC*, No. 16-7955 (MAS) (DEA), 2018 WL 11446277, at *6 (D.N.J. Dec. 17, 2018) (similar); *Lerblance*, 2024 WL 3275789, at *3-4 (similar). Plaintiffs' effort to avoid this prohibition by recharacterizing their request as seeking an interrogatory response elevates form over substance. Asking Uber to create a new document and then paste it into an interrogatory response does not somehow avoid this prohibition. Either way, Plaintiffs are asking Uber to investigate, interpret, and reduce to writing technical explanations in a format that does not presently exist.

**Plaintiffs' Request Is Highly Disproportionate To The Needs Of The Litigation.** Even if a party could ever be compelled to create a document for purposes of discovery, Plaintiffs' request would still be inappropriate because the burdens and costs of creating such a document would be grossly disproportionate to any need for the material.

*First*, Plaintiffs vastly overstate the need for a glossary. To date, mobile events logs have been requested and  produced in only a few cases. And in the two Wave 1 bellwether cases that have been tried to verdict, only one mobile events log—the driver's log in *Dean*—was introduced into evidence. This is because mobile events logs do not—as Plaintiffs claim—"show what was happening in a driver's car." Rather, as was the case in *Dean*, certain mobile events entries ***may*** be relevant to particular issues (in *Dean*, whether an audio recording of the ride had been created by the driver). Most of the often hundreds of entries in an individual mobile events log are indisputably irrelevant to Plaintiffs' claims.

*Second*, Plaintiffs' actual discovery needs with respect to understanding the meaning of relevant mobile events entries have been, and can continue to be, addressed on a case-by-case basis.[1] After Plaintiffs first raised this issue nearly a year ago, the parties reached an agreement—submitted to the Court on June 9, 2025—that if Plaintiffs had questions about the meaning of particular log entries, Uber would investigate and provide further information. *See* ECF 3219. Plaintiffs do not claim that Uber has failed to comply with this agreement. Plaintiffs' insistence that they will "be severely prejudiced" without the requested information therefore rings hollow. Indeed, ***Plaintiffs fail to identify a single relevant log entry for which they require clarification*** that Uber has not provided (or indicated it would not provide). *See Finjan, Inc. v. Juniper Network, Inc.*, No. 17-cv-05659-WHA (TSH), 2019 WL 2865942, at *1 (N.D. Cal. July 3, 2019) (denying motion to compel where party made "no argument that any responsive documents exist that Juniper has failed to produce").[2] That targeted process, already in place, is the proportional solution for addressing any relevant mobile events entries.

---

[1] As Plaintiffs acknowledge, some entries in mobile events logs are self-explanatory and require no clarification as to their meaning.

[2] *Bean v. John Wiley & Sons, Inc.*, No. CV 11-08028-PCT-FJM, 2012 WL 129809 (D. Ariz. Jan. 17, 2012), cited by Plaintiffs, is inapposite. There, the court compelled the defendant to "supply definitions already in its possession" that were necessary to interpret certain spreadsheets that the

***Third***, it would be extraordinarily burdensome and time-consuming for Uber to create the type of comprehensive glossary that Plaintiffs seek, regardless of format. As explained by Todd Gaddis, obtaining a full and accurate "definition" for a mobile events log entry is a multi-faceted process, involving review of the relevant entry (as well as other entries for context), research of other information available on Uber's systems, and consultation with knowledgeable Uber engineers and/or other employees. Decl. ¶ 8. For context, it took 3-4 hours to determine the meaning of a ***single*** mobile events log entry in the *Dean* case. *Id.* ¶ 7. And there are tens of thousands of possible entries in mobile events logs. *Id.* ¶ 4. Thus, while the time needed to investigate a particular entry may vary, it would likely take thousands of hours to create the type of "glossary" Plaintiffs seek. *Id.* ¶¶ 8, 11. And due to the variables associated with accurately understanding the meaning of any event in a particular mobile events log entry, such a "glossary" still could not be utilized as an "off the shelf" reference manual to understand all mobile events in context. *Id.* ¶¶ 9-11. Given that only a fraction of the mobile events log entries are likely to ever be relevant, and Uber is willing to provide clarifications on an as-needed basis, the creation of such a glossary cannot be justified under Rule 26's proportionality standard.

Plaintiffs' reliance on the issue that arose in *Dean* supports Uber's point, not theirs. After all, the dispute in *Dean* illustrates not just the time-consuming nature of Plaintiffs' requests, but also why event labels cannot always be treated as self-defining or interpreted outside their technical and factual context. Future disputes (if any) about mobile events entries that are actually relevant to a specific case are most efficiently and accurately addressed in the context of a particular case. In short, creating a static glossary would not only be enormously burdensome; it would also risk creating the very type of confusion Plaintiffs purportedly seek to avoid.

For all of these reasons, the Court should deny Plaintiffs' requested relief.

---

defendant had produced. *Id*. at *1. Here, by contrast, Plaintiffs seek a generalized reference guide covering all log entries across the platform, whether relevant to any pending case or not.

Dated: June 2, 2026                                    Respectfully Submitted,


By: */s/ Sarah R. London*                              */s/ Christopher Cox*
Sarah R. London (SBN 267093)                           CHRISTOPHER D. COX (Admitted *Pro Hac*
**GIRARD SHARP LLP**                                   *Vice*)
601 California St., Suite 1400                          christopher.cox@kirkland.com
San Francisco, CA 94108                                **KIRKLAND & ELLIS LLP**
Telephone: (415) 981-4800                              601 Lexington Avenue
slondon@girardsharp.com                                New York, NY 10022
                                                       Telephone: (212) 446-4800

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY
& WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com


By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

7

**FILER'S ATTESTATION**

I, Marlene Goldenberg, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated:  June 2, 2026

By: /s/  Marlene Goldenberg
Marlene Goldenberg

**CERTIFICATE OF SERVICE**

I, Marlene Goldenberg, hereby certify that on June 2, 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated:  June 2, 2026

By: /s/  Marlene Goldenberg
Marlene Goldenberg