# EXHIBIT 5

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| Jaylynn Dean, an individual, ) | No. 2:25-cv-04276-CRB |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Phoenix, Arizona |
| ) | January 20, 2026 |
| UBER TECHNOLOGIES, INC., a ) | 9:12 a.m. |
| Delaware Corporation; RASIER, ) | |
| LLC, a Delaware Limited ) | |
| Liability Company; and DOES 1 ) | |
| through 50, inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**BEFORE:   THE HONORABLE CHARLES R. BREYER, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**JURY TRIAL – DAY 6 – A.M. SESSION (Pages 921 – 996)**

Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

Q.  You mean it could if there were other --

A.  Other confirming factors, whether it's admitted to or we have audio or video or something like that.

Q.  Okay.  So, but if a driver doesn't admit it, and there isn't audio or video, that -- what I just described, a driver saying "I'm going to rape you," that does not result -- that doesn't give you three notations.  It doesn't get you off the platform, right?

A.  Right.

Q.  And then what if an Uber driver solicits oral sex from a rider?  That also would not be enough to give three notations or removed from the platform, correct?

A.  Correct.

Q.  And taking a video of a woman in the backseat without her consent, that's also not the kind of conduct that would remove a driver and give three notations, correct?

A.  Correct.

Q.  Now, also if Uber decides something that is invalid, meaning if there is a report and Uber has a classification for certain reports that it calls invalid, correct?

A.  Yes.

Q.  And if that -- following your logic and the standards that Uber gives you, if something is deemed invalid, then there are no notations, right?

A.  Correct.

Q. And same thing goes with excluded.  There's a category according to your logic that if certain things are met for a report, it would be excluded; and then that would also not result in any new notations, right?

A. Yes.  So if something's invalid, it is also excluded; but something could be excluded but not invalid.  That would be something like a rider reported in that they were assaulted but we can, with GPS, see that our rider and driver went in separate ways at the same time, like as if they got in the wrong vehicle.  So we would say, we're not saying this is invalid, that it didn't happen, but we're excluding the notation from the driver because we have something that can show that wasn't the case.

Q. Right.  And if Uber receives information in the course of an investigation that contradicts the rider's report, Uber doesn't hesitate to reactivate a driver, right?

A. It wouldn't always.  I mean, it's -- everything is a case-by-case basis.  You know, we're trained to think really critically, ask questions, speak with each other, you know, go based off of precedent of previous cases that we've investigated.

So if something was or was not corroborated it wouldn't necessarily mean that we would or wouldn't reactivate or deactivate, but it is a contributor for sure.

Q. And you are aware in the past that there have been times

when Uber gets a report, it looks at the available GPS, and decides based on the logic that's followed and the discussions and the collaboration to mark that report as either excluded or invalid and go ahead and reactivate the driver.  Even in cases of rape that's happened, right?

A.   Yeah.  There would be a lot of other things that would go into stating something is invalid beyond just GPS not aligning fully.

Q.   Understood.  Understood.

     After a complete investigation, right?

A.   Yeah, right.

Q.   Uber has made determinations that those standards were not met to deactivate a driver even on a claim of rape; and in those circumstances, it's Uber's policy to go ahead reactivate the driver, right?

A.   Can you repeat your question?

Q.   It would be Uber's policy to go ahead and reactivate the driver under those circumstances, right?

A.   And the circumstances being?

Q.   Thank you.  I will ask it again more slowly and in a better way.

     You're aware there have been circumstances where a reporter has reported a rape, Uber has conducted its investigation, as you discussed --

A.   Uh-huh.

Q.  -- and has determined that report should be considered invalid or excluded, and then has --

A.  Yes.

Q.  Would -- at that point, the policy would say reactivate the driver?

A.  Yes.

Q.  Okay.  And at that point, is there -- Uber's policy is not to inform or provide any kind of further information to a passenger that such a report had been made; is that right?  Do you know?

A.  No.  Well, we don't provide that information on either side, any previous reports made.

Q.  Okay.  Any previous reports made, whether Uber found them valid or invalid?

A.  Yeah, or rider or driver.

Q.  I think you mentioned earlier the Safety Lens, and I want to go over that a little bit.

A.  Yeah.

Q.  The Safety Lens, that's a report of the driver's previous history and things -- a list of certain types of things that have been reported about the driver?

A.  Yeah.  Safety Lens is the same for riders and drivers.  It tracks any kind of allegation that's been made that's, you know, safety related or urgent, yeah.

Q.  And that is something that is considered in an

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Jaylynn Dean, an individual,　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　)　2:25-cv-04276-CRB
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　Phoenix, Arizona
UBER TECHNOLOGIES, INC., a,　　)　January 20, 2026
Delaware Corporation; RASIER, )　1:00 p.m.
LLC, a Delaware Limited　　　　)
Liability Company; and DOES　　)
1 through 50, inclusive,　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants.　　)
_____)


**BEFORE:　THE HONORABLE CHARLES R. BREYER, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**<u>JURY TRIAL - DAY 6 - PM SESSION</u>**
**<u>(Pages 997-1155)</u>**


Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251


Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

resolve it.  Per our logic, we have a couple things that could; but for the Statement of Experience, no, we did not have one.

Q.    Okay.  And then if you go down to where it says "Resolution," it states, "Driver has denied allegations in relation to this report.  Driver's Safety Lens shows 1 prior incident resulting in 1 notation.  This case is considered an Excluded and Invalid report resulting in 0 notations.  Driver has not met the threshold for deactivation and will be reactivated."

And that was the resolution as of April 21st of 2023, correct?

A.    Yes.

Q.    And when it states the driver has not met the threshold for deactivation -- now, at this point Mr. Turay is on what you call the safety lock or he's on -- he's on hold, right?

A.    Right.

Q.    He's not driving, to be fair right now, while Uber is investigating this, correct?

A.    Correct.

Q.    And so when we say he's being reactivated, it means they're taking him off of that hold status and releasing him to go drive again and pick up more passengers and be dispatched to more passengers if that's what he wants to do, right?

A.    Right.

Q.    Okay.  But let's -- Uber found this to be an excluded and invalid report.  That was based on some of the, I guess, what Uber determined to be kind of suspicious behavior from the account holder, correct?

A.    Yeah, I believe it's documented in the background data as well, the suspected support abuse of the reporting account holder.

Q.    So why don't we go ahead and just -- we can just go ahead and show the jury what Uber found in its investigation here and if you go under this -- it's Page 5.

        Okay.  So we went and -- we were looking at the -- if you just go back to "4" for a second so the jury can see where we are.  So we were still in this background data section and we went over that.  We went over the Driver Safety Lens --

A.    Right.

Q.    -- that was looked at?

A.    Uh-huh.

Q.    Okay.  Then it goes into the next page and some of the things that -- other things that Uber looked at as part of that investigation was that Chronicle map.  So we showed the jury.  They saw that map, right, of the location and I think you said that the trip went to the exact place that the --

A.    Yeah.

Q.    -- passenger wanted to go, right?

forth between Mr. Turay and Uber during the investigation?

A.   Yeah, and they might have opened up a separate, you know, support to try and, you know, communicate with the team.

Q.   Okay.  And here Mr. Turay says, you know, he got a message saying his account had been placed on hold because of a customer complaint; and then the very last thing he says in this communication is, "I currently am renting a vehicle through Hertz/Uber and will have to return it if I don't hear back from him today."

     That's what Mr. Hassan -- that's what Mr. Turay communicated to Uber during the course of this investigation, right?

A.   Yeah.

Q.   Okay.  And just to make sure I'm clear on the math of the notation, now this report if -- you know, if Uber had determined, based on its investigation, that it was a valid report, that would have resulted in three notations, correct?

A.   If we had been able to speak with the reporting user or we used anything from the GPS to maybe corroborate and move it to resolved, that would have been three notations and a deactivation; but, also, I'd say prior history would go into that determination as well.

Q.   That's right.  And he had one notation at the time, right?

A.   Uh-huh.

Q.   So -- it would have been another three notations and then Mr. Turay at that point -- if -- just if this would have been deemed valid, Mr. Turay at this point -- Uber would have done what you called deactivate and blocked him, correct?

A.   Yeah, typically if there's a -- like multiple allegations that are going towards the reaching the total of the notations, we would do a little bit of a deeper dive into that previous notation as well to assure its validity as well and then, you know, take the corrective action based on whatever notation total we found it to be, two or three.

Q.   Okay.  And in this case it was invalid, no notation, correct?

A.   Correct.

Q.   And -- but it did get put into Uber's -- and Uber characterized its investigation into this -- this matter was a very careful and thorough investigation, right?

A.   Yes.

Q.   And Uber told that to Mr. Turay, that, in fact, it had conducted a very careful investigation, right?

A.   I believe that's the terminology in the SAFE reply, yeah.

          MS. LONDON:  Okay, pull that up.  Let's go ahead and show that message back to Mr. Turay, which is Exhibit 3376 --

          THE COURT:  Admitted.

          MS. LONDON:  -- Page 3.

               *(Exhibit No. 3376 admitted into Evidence.)*

BY MS. LONDON:

Q.   All right.  We looked at this string of communications a little bit earlier, and I want to draw your attention to Page 3.

Okay, and if you go to the -- towards the bottom of the page when Ms. Bacon writes back to Mr. Turay it says, "Hi Hassan.  Thank you for your patience while we investigated this report.  After careful review of this information available, your account has been reactivated.  You may continue to use Uber apps."

That's what they told him, right?

A.   Yes.

Q.   And then it says, "The actions you take while using the Uber apps can have big impact on safety and comfort of others."  That's what they told him, right?

A.   Yes.

Q.   A then a little bit later down just want to point out they said, "If other users submit additional reports describing misconduct, you may lose access to Uber permanently."  That's what they said here, right?

A.   Yes.

Q.   Okay.

MS. LONDON:  And then if we go back to -- I think it's Exhibit 503, which is the Safety Lens.

BY MS. LONDON:

Q.    All right.  And just to follow along with us here, we are now in -- looks like April 17th of 2023.  Uber did note this report onto the driver's Safety Lens, correct?

A.    So it would be auto pulled.  When the case is closed, there are certain fields that have to be pulled out -- or filled out, and indicating that a report is invalid is one of those fields.  So that's what's auto pulling here is that little red "invalid."

Q.    Understood.  So anyone opening up Mr. Turay's Safety Lens could see, yes, there was this incident reported but Uber had deemed it invalid?

A.    Correct.

Q.    Okay.  And as of -- and then this -- again, it refers to the rider as the reporting party against the driver, and then it kind of links to the ticket so anyone looking at it could go check it out, right?

A.    Yes.

Q.    Okay, so then let's move on.  After this -- Mr. Turay's reactivated it looks like -- we just looked at that -- September -- excuse me, April 22nd, 2023, and that same day when he's back on-line -- we'll just pull up another slide of some of the communications he received that day and the day after.  Slide 10.

        So on April 22nd --

                MS. BUENO:  Same objection, your Honor.