# A.1



**<u>VIA ECF</u> – <u>FILED UNDER SEAL</u>**

The Honorable Charles R. Breyer
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

> RE: *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*,
> MDL No. 3084 CRB; Order of Wave 1 Trials

Your Honor:

Plaintiffs respectfully submit this brief concerning the order in which the Wave 1 bellwethers should be tried. In summary:

1. **Agreement on first two trials**. The parties agree that the first trial should be **Dean**, a plaintiff-pick Arizona case, and the second trial should be **WHB 823**, a defense-pick North Carolina case. The Court should adopt the parties' proposal. Dean involves the widest range of facts related to Uber's potential liability, has no significant outstanding discovery disputes, and includes a deposition of the driver. WHB 823, as an older case (2019), is less representative, but Plaintiffs agree to a defense pick going second (the other defense pick has not yet completed fact discovery).

2. **Agreement on staggering pretrial deadlines**. The parties agree that the remaining pretrial deadlines should be staggered by trial date, i.e., the existing schedule applies to Dean, dates for WHB 823 will track backwards from her trial date when it is assigned, etc. The Court should adopt the parties' proposal. Preparing for multiple trials at once imposes a significant burden not only on the lawyers, but also on the non-lawyer participants. Should one case resolve, the parties will be able to work up a replacement trial in a relatively short amount of time (and the availability of California cases ensures a replacement trial date can be quickly obtained).

3. **Availability of either district in North Carolina**. In Plaintiffs' view, the Court can try the North Carolina cases in either the Eastern or Western District of North Carolina. Relatedly, the Court can try the Arizona cases in any division of the District of Arizona, but, for the convenience of all, Plaintiffs request the Court utilize the Phoenix or Tucson courthouses.

4. **If Dean cannot be tried first, the Court should try B.L. and then either A.R.2 or LCHB128**. If venue in Arizona is not available for the first trial (or if Dean settles), the Court should try B.L., followed by A.R.2 or LCHB128. California is the easiest

August 12, 2025
Page 2

venue to secure another trial date promptly, and B.L. is the most representative and appropriate case to try.

5. **The Court should not try WHB 823 first.** The Court should reject Uber's request that, if Dean cannot be tried, WHB 823 be tried first. It is more practical to secure a quick substitute trial date in California than in North Carolina. And, WHB 823 was assaulted in 2019, so her case is not representative of the MDL and does not allow a jury to evaluate Uber's post-2019 safety initiatives.

6. **The Court should set a new fact discovery deadline for WHB 318 and slot it later in the trial order.** WHB 318 was accepted as a Wave 1 case only on August 11 and has not yet completed fact discovery.

I.   **The parties agree that the first trial should be Dean and the second trial WHB 823.**

There are six Wave 1 bellwethers, five of which (all but WHB 318) have substantially completed fact discovery:

| PLAINTIFF | CASE NO. | ST. | DATE | PARTY | INCIDENT TYPE |
|---|---|---|---|---|---|
| A.R.2 | 24-7821 | CA | 8/10/23 | Plaintiffs | Kissing of a Sexual Body Part |
| B.L. | 24-7940 | CA | 8/12/22 | Plaintiffs | Sexual Penetration |
| LCHB128 | 24-7019 | AZ | 6/28/24 | Plaintiffs | Touching of a Sexual Body Part |
| Jaylynn Dean | 23-6708 | AZ | 11/15/23 | Plaintiffs | Sexual Penetration |
| WHB 823 | 23-4900 | NC | 3/26/19 | Defendants | Touching of a Non-Sexual Body Part |
| WHB 318 | 24-4889 | NC | 3/20/21 | Defendants | Touching of a Non-Sexual Body Part |

A.   **Dean should be the first trial.**

Jaylynn Dean was sexually assaulted on November 15, 2023, after midnight in Maricopa County, Arizona. The ride started with lewd comments. After five minutes, the driver stopped in a remote location and marked the trip as completed on the driver app. The driver raped Dean in the back seat. Before Dean's assault, Uber received several reports of driver misconduct, including lewd comments and sexual touching. Uber disregarded these reports and did not disclose them to Dean. Uber also ignored driver-specific red flags like a limited driving history, inability to complete a background check going back further than a few years, many low-star ratings, early drop-offs, long stops, a preference for night-driving, a high cancellation rate, and a decision not to voluntarily use a dashcam. Finally, Uber paired the ride despite the presence of multiple known risk factors: late-night ride, origination near bars; and a driver with reported sexual and dangerous driving misconduct. Dean pleads claims under Arizona law for negligence;

August 12, 2025
Page 3

fraud; respondeat superior; apparent agency; and strict products liability (Gender Matching; App-Based Ride Recording; and GPS Route Discrepancy Alerts).[1]

Dean should be the first trial because the case involves the widest range of liability facts and theories and so will generate the most information for the parties:

**Variety of red flags**. Some cases involve specific prior complaints about the driver (sufficient to support a nondisclosure fraud claim). Otherwise involve more subtle driver behavior, such as a habit of cancelling rides with male passengers at a higher rate than those with female passengers. Finally, still others involve ride-specific factors such as a late-night ride. Dean's case includes all three categories, allowing the jury to evaluate the different types of knowledge Uber had but failed to act on.

**Intoxication element**. Dean was intoxicated when she called the Uber and believed doing so was a safe choice. Although the Court dismissed Plaintiffs' designated-driver fraud claims, Uber's conduct in promoting and selling its product to intoxicated women remains relevant to the negligence claims.

**Range of legal theories**. Dean's case is useful because it involves both fraud and respondeat superior / apparent agency theories and so will provide information on how juries evaluate those claims. Arizona does not assign common carriers non-delegable or heightened duties of care, but the fact question of whether Uber is a common carrier will be addressed in the first JCCP trial.[2]

**Driver involvement**. In this MDL, Uber has repeatedly stressed the importance of drivers at trial (including filing cross-complaints in numerous cases). But Dean is the only Wave 1 case in which a driver was deposed. To the extent the driver's narrative is important evidence in these cases, as Uber has consistently maintained, Dean is the only case to include that evidence.

**Severe incident**. Dean, like more than 380 other MDL cases, is a sexual penetration case. This MDL was created to address fact questions concerning Uber's conduct and to what extent the company is liable for its drivers' misconduct. Trial in Dean's case will avoid time and argument spent disputing how severe one kind of incident is versus another. Everyone's time (the parties, the Court, the jury panel) will be more efficiently spent focusing on the core factual disputes in this MDL.

---

[1] By describing potentially relevant facts in each Wave 1 case, Plaintiffs do not waive their right to rely on any theory permitted by the evidence and the Federal Rules of Civil Procedure.
[2] Arizona does assign common carriers like Uber a duty of ordinary care. *See Nunez v. Professional Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104 (Ariz. 2012).

August 12, 2025
Page 4

> **B.  Contingent on Dean being the first trial, Plaintiffs agree that WHB 823 should be the second trial.**

WHB 823 was sexually assaulted on March 26, 2019, in Wake County, North Carolina after 1:20 A.M. At the end of the ride, the driver turned toward her, grabbed her upper thigh, and made sexualized comments. Uber paired the ride despite multiple known risk factors: late-night ride, young female passenger, new driver, and a series of one-star ratings of the driver. WHB 823 pleads claims under North Carolina law for negligence, common carrier, implied warranty, and negligent design defect (the latter two both concerning App-Based Ride Recording).

For the reasons explained in Section V below, WHB 823 is not a representative case. But Plaintiffs agree a defense pick should go second if Dean is tried first. And the other defense pick—WHB 318—has not yet completed fact discovery and so is not a good candidate for the first trials.

**II.  The parties agree that the remaining pretrial deadlines should be staggered to reflect trial dates.**

The parties agree that the Court should stagger the remaining expert discovery and other pretrial deadlines. So, the existing deadlines under PTO 26 would apply to **Dean** only. Once **WHB 823**, the second trial, has a trial date, the expert and pretrial deadlines would be calendared backwards from that trial date. And so on. Plaintiffs propose the Court order the parties to submit a proposed schedule for WHB 823 five days after the trial date is identified.

The Court should adopt the parties' agreement. The parties need predictability and narrowing of the work required to prepare for the first trial in December or January. As the Court can observe from the portions of the docket submitted to Judge Cisneros, the parties have been working around the clock to meet the aggressive schedule set by the Court. Those efforts have yielded benefits: despite some lingering issues, five bellwether cases are reasonably close to completing fact discovery.

But there can be only one trial at a time, and there is good cause to stage the remaining pretrial deadlines for subsequent cases. Pretrial work will be extensive even for that one case— dispositive and *Daubert* briefing, the joint proposed pretrial order, jury instructions, verdict forms, and exhibit and witness lists. In addition, as a practical matter, it is extraordinarily difficult to have multiple cases ready to try on December 8. Trial setting affects many people beyond the lawyers. Plaintiffs, Uber employees, and third-party witnesses need to plan travel, take time off work, and otherwise modify their personal and professional lives to participate in trial. Everyone benefits from working up the final stages of one case at a time. If the first-trial case resolves, the parties will have the benefit of the work done and the Court's rulings and will be able to complete pretrial proceedings or a substitute case on a much faster timeline.

August 12, 2025
Page 5

### III.    The Court can try the North Carolina cases in either district in the State (and the Arizona cases in any division of the single district in that State).

The Court asked the parties for their views on whether, under Uber's Terms of Use, the Court can try a North Carolina case in either the Eastern or Western District of North Carolina. In Plaintiffs' view, the Court can. As the Court observed, Uber's forum-selection clause states that cases "shall be brought exclusively in the state or federal courts in the state in which the incident or accident occurred." PTO 29 at 2. Plaintiffs argued that the clause was unenforceable, but the Court disagreed. By statute, the Court "may transfer any civil action … to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Under PTO 29, the parties to the North Carolina cases "have consented" to transfer to any "federal court[]" in North Carolina. *See Atl. Marine Constr. Co., Inc. v. U.S. Distr. Ct.*, 571 U.S. 49, 59 (2013) ("§ 1404(a) … permits transfer … to any district to which the parties have agreed by contract….").

Relatedly, the Court may try the Arizona cases in any division of the single district of that State. For the convenience of counsel, the parties, and witnesses, however, Plaintiffs request the Court try Dean and LCHB128 in either the Phoenix or Tucson courthouses.

### IV.    If, due to venue problems or settlement, Dean is not available to try first, the Court should try B.L. and then either A.R. 2 or LCHB128.

The parties' agreement is premised on Dean being the first trial. If that is not possible, either because venue in Arizona is not available or because Dean settles, the Court should try a California case. The Northern District of California allows for the easiest trial setting. And B.L., one of the California cases, is a strong, representative bellwether.

**B.L.** B.L. was sexually assaulted on August 12, 2022, in San Jose, California. She called an Uber at 3:30 A.M. when she was emotional and intoxicated. The driver groped her during the ride and then, when the vehicle reached the destination, raped her in the back of the car. Uber disregarded red flags that B.L.'s driver was associated with multiple driver accounts under different names and declined to use a dashcam voluntarily. Uber also paired the ride despite multiple known risk factors, including late-night ride, young woman, and a new driver with an incomplete background check.

B.L. pleads claims under California law for negligence; common carrier; respondeat superior; apparent agency; and strict products liability (Gender Matching; App-Based Ride Recording; and GPS Route Discrepancy Alerts). In addition, Uber recently identified "errors" in its B.L. document productions and, on July 22, dramatically revised those productions. *See* ECF 3557 (presenting related issues to Judge Cisneros); ECF 3569 (order regarding same). The new evidence shows B.L.'s driver driving for Uber under different accounts and different names. The evidence also shows that B.L.'s driver was still driving for Uber in Colombia as of early July. Uber completed the revised productions only on August 5. Plaintiff will seek leave to plead a ratification claim based on those facts.

(415) 981-4800          601 California Street, Suite 1400          www.girardsharp.com
San Francisco, CA 94108

August 12, 2025
Page 6

**A.R.2**. A.R. 2 was sexually assaulted on August 10, 2023, in San Francisco County, California. She called the ride at 12:41 A.M. from an area heavy with bars and restaurants. Midway through the ride, the driver indicated on his app that the ride had ended, pulled over, and forcibly kissed A.R.2 on the lips twice. Uber barely investigated and did not disclose to A.R.2 a previous rider had complained of "rapist" in reference to the driver. Uber also disregarded the driver's lengthy criminal record and his choice not to use a dashcam voluntarily. Finally, Uber paired the ride despite multiple known risk factors, including late-night ride, origination near bars; and a driver with reported misconduct.

A.R.2 pleads claims under California law for negligence; fraud; common carrier; respondeat superior; apparent agency; ratification; and strict products liability (Gender Matching; App-Based Ride Recording; and GPS Route Discrepancy Alerts).

Although A.R.2 is a strong bellwether, there are open discovery issues that caution against placing it in priority position. Uber alleges that counsel in A.R.2 engaged in discovery misconduct and has requested supplemental discovery among other remedies. ECF 3669. Plaintiffs assert Uber's claims are meritless and expect to prevail on these issues before Judge Cisneros. But the potential for a sideshow and extended discovery weighs against trying A.R.2 before B.L.[3]

**LCHB128**. Finally, LCHB128 was sexually assaulted on June 28, 2024, in Maricopa County, Arizona after 10:30 PM. The driver convinced LCHB128 to move into the front seat. Once on the freeway, the driver freely groped LCHB128 until the vehicle arrived at her destination. Uber disregarded, and failed to disclose to LCHB128, numerous reports of driver misconduct, including one credible report of aggressive sexual propositioning and unconsented parking of the vehicle. Uber also ignored that the driver drove two vehicles for Uber, one with a dashcam and one without, and had an incomplete background check. Finally, Uber paired the ride despite multiple known risk factors, including late-night ride, origination from a restaurant, a longer ride, and a previous report of sexual misconduct.

LCHB128 pleads claims under Arizona law for negligence; fraud; respondeat superior; apparent agency; and strict products liability (Gender Matching and App-Based Ride Recording). If for some reason the Dean case cannot be tried, the Court should slot LCHB128 after one or both California cases (depending on when a substitute trial date in Arizona can be secured).

## V. The Court should not try WHB 823 first.

Uber will argue that, if Dean cannot be tried, the first trial should be WHB 823. The Court should reject this argument. It is more practical to secure a quick substitute trial date in California than in North Carolina. And WHB 823 is not a representative bellwether.

---

[3] Uber has also raised discovery issues in Dean (ECF 3669 & 3670), but all documents at issue and available have been produced.

August 12, 2025
Page 7

WHB 823 was sexually assaulted on March 26, 2019, in Wake County, North Carolina after 1:20 A.M. At the end of the ride, the driver turned toward her, grabbed her upper thigh, and made sexualized comments. Uber paired the ride despite multiple known risk factors: late-night ride, young female passenger, new driver, and a series of recent one-star ratings of the driver. WHB 823 pleads claims under North Carolina law for negligence, common carrier, implied warranty, and negligent design defect (the latter two both concerning App-Based Ride Recording).

WHB 823 is not a particularly representative case. In addition to advancing a relatively limited set of legal claims, WHB 823 was assaulted in 2019. But of the approximately 2,550 MDL cases, more than 2,000 arose after January 1, 2020.[4] And first JCCP bellwether is a 2016 case, making federal trial of late cases only more useful and informative.

The date of incident matters because over the last several years Uber has rolled out numerous safety features (punctuated by adoption of woman:woman matching just a couple of weeks ago) designed to or capable of reducing the risk of sexual assault. More recent bellwethers are more "representative" not only literally but also substantively because Uber's use, misuse, or failure to use these safety features go to its liability.

Key examples include:

**Voluntary dashcams and ride recording**. Starting in 2020, Uber (it claims) encouraged drivers to use their own dashcams. In 2023, Uber added a feature called "Record My Ride," allowing drivers to automatically record their trips. And Uber knew, or should have known, that both features deter sexual assault, and that drivers who choose not to use safety features are more dangerous than ones who opt otherwise. Yet Uber paired post-2020 bellwethers with drivers who did not use the safety features.

**S-RAD**. Starting in 2022, Uber deployed a program called S-RAD—"Safety Risk Assessed Dispatch." S-RAD is an algorithmic model that seeks to identify risk factors for sexual assault during Uber rides. Uber uses S-RAD to decide whether to block a driver-rider pairing due to the risk of sexual assault. For cases where S-RAD was available, trial will determine whether Uber (1) did not use S-RAD in when correct assessment of the factors should have blocked the ride; (2) did not employ a strong-enough "filter," i.e., paired known risky trips; or (3) ignored S-RAD when the business impacts were too great, i.e., no less-risky driver was available. The Court dismissed Plaintiffs' products liability claims concerning S-RAD, but Uber's knowledge of risk factors and subsequent action or inaction remains central to Plaintiffs' negligence claims.

Uber may also argue that WHB 823 is more representative due to her assault being coded (by Uber) as lower severity. But as Uber has acknowledged, *see* ECF 2847, a substantial number of cases allege more severe incidents—Plaintiffs' current estimates show that 58% of cases involve penetration or touching a sexual body part.[5] More importantly, the bellwether trials are

---

[4] The number of cases in the MDL is a moving target, so these numbers are reasonable estimates.
[5] These estimates reflect cases with submitted plaintiff fact sheets with incident information.

(415) 981-4800          601 California Street, Suite 1400          www.girardsharp.com
San Francisco, CA 94108

August 12, 2025
Page 8

not intended to give the parties new information about how juries value sexual assault cases. Rather, they will give the parties information about how juries evaluate Uber's conduct.

**VI.    The Court should enter a revised schedule for fact and expert discovery in WHB 318 and slot the case at the back of the trial wave order.**

WHB 318 was sexually assaulted on March 20, 2021, in Charlotte, North Carolina. The ride began with lewd comments. At a stop light, the driver turned back and reached towards Plaintiff's chest. Before the driver could touch her, Plaintiff slapped his hand down. The driver grabbed Plaintiff's knee and squeezed it. Despite the driver's insistence that she stay in the car, Plaintiff exited the Uber early before reaching her destination.

WHB 318 pleads claims under North Carolina law for negligence, common carrier, implied warranty, and negligent design defect (the latter two both concerning Gender Matching and App-Based Ride Recording).

WHB 318 should be slotted towards the back of the trial wave. Uber selected WHB 318 as a substitute Wave 1 on July 22. ECF 3542. The Court added WHB 318 to Wave on August 11. The Court accepted the proposal on August 11. PTO 30. The Court ordered the parties to comply with the PTO 26 discovery schedule for WHB 318. But the deadline for substantial completion of fact discovery for Wave 1 cases passed nearly a month ago. Plaintiffs respectfully submit that a modified schedule is necessary for this bellwether. The Court should order the parties to submit agreed or competing schedules in the case management conference statement due on August 20.

Respectfully,

Sarah R. London

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)

August 12, 2025
Page 9

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

August 12, 2025
Page 10

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory identified above has concurred in this filing.

Dated: August 12, 2025

By: */s/ Andrew R. Kaufman*