# C.7

# EXHIBIT 20

## FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

---

**IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**

**Case No. 3:23-md-03084-CRB**

---

**REPORT OF VERONIQUE VALLIERE**

**This Report relates to the following Wave 1 Case:**
**Case No. 24-cv-7940 (B.L.)**
**Case No. 24-cv-7821 (A.R.2)**
**Case No. 24-cv-7019 (LCHB128)**
**Case No. 23-cv-6708 (Dean)**
**Case No. 24-cv-4900 (WHB 832)**

**SEPTEMBER 26, 2025**

**Highly Confidential – Subject to Protective Order**

Given how quickly sexual assaults occur, it is highly unlikely if not impossible that a loved one could notice an anomaly and intervene or seek intervention in time to prevent a sexual assault.

Share Your Ride is not special to Uber.  It is a feature anyone can utilize in various apps and smartphones.  But because Uber has incorporated it into their application, Uber further promotes the perception that it is safety oriented, garnering the trust of the passenger without educating the passenger about the fact that the driver's GPS is being used (UBER_JCCP_MDL_005497691**;** UBER_JCCP_MDL_001720345, Ross Ex. 1049).  When Uber depends on the driver's data, the driver has more control.  As I have stated, this feature is not a deterrent to offenders; they have continued to sexually assault and mistreat victims whether the victim has this feature herself or Uber provided it. Uber's witnesses, including Mr. Fuldner, have testified that they have not measured the effectiveness of Share My Ride (and Trusted Contacts) in preventing sexual assault (Fuldner Dep, March 27, 2025, at 565; Wong Dep., April 16, 2025, at 12, 467-468) or analyzed if any of their safety features have any impact on the rate of Uber drivers committing sexual assault and sexual misconduct on the Uber platform (Esteves Dep., Aug. 28, 2025, Esteves Ex. 1991 and documents cited UBER_JCCP_MDL002631458, UBER_JCCP_MDL001682455, UBER_JCCP_002073153, UBER_JCCP_MDL_002656939, UBER_JCCP_MDL003279841, UBER_JCCP_MDL_002656378, UBER000142462).

*GPS, 911 Button, Dashcams and Optional Audio-Recording*

GPS tracking is the backbone of the RideCheck and Share Your Ride features. GPS, whether through Ridecheck, Share Your Ride, or independently, is only useful before or during an offense if it is vigilantly monitored and there is an immediate way to intervene in any acts, and I have not seen evidence here that GPS provides a way to immediately intervene to stop sexual assaults in an Uber.  After an offense, use of GPS monitoring only provides corroborative evidence if it matches with a victim's report of an assault or misconduct.  An offender can prepare for explaining deviations from a route or delays revealed by GPS monitoring, saying a client had to stop to go to the bathroom or vomit, or requested some other deviation, like stopping to check for her phone she thought she forgot at the bar.

Given that GPS provides neither a reliable means to intervene in real time nor reliable, incontrovertible corroborating evidence, GPS does not substantially deter drivers from deviating for the purpose of sexually assaulting a rider (reiterating the findings of RideCheck or Share Your Ride).  Furthermore, Uber investigates deviations *only* if a passenger reports a safety incident, to corroborate or disprove a reported event.  If the report is delayed, as the majority of reports are, there is no direct, immediate confrontation of the driver's behavior, making the intervention useless.  The driver can claim a lack of memory or provide an explanation for the deviation that cannot then be verified.  In one example, a victim reported a sexual assault in the San Francisco area, Uber looked at the GPS and confirmed it supported the passenger's story, but Uber declined to remove the driver because the passenger no longer wanted to keep communicating with Uber about the event (UBER_JCCP_MDL_000387036, Whaling Ex. 3005).

An example of GPS' uselessness as a deterrent when a 12-year-old was sexually assaulted by an Uber driver (Nilles Dep., July 23, 2025, at 376-389, UBER_JCCP_MDL_003279797, Nilles Ex. 1731).  This incident demonstrates not only that the GPS did not deter the driver from deviating from the route, but it was also not monitored or challenged in real time.  It was only investigated after the victim reported. Real time monitoring and intervention by Uber with outreach to law enforcement with Ridecheck triggers would a potential deterrent.  Additionally, if Uber had confronted its drivers immediately regarding these types of deviations and instituted consequences, it would have confirmed to each driver that he was being monitored, that that Uber was taking responsibility for passenger safety, and drivers would be held accountable.

It is redundant but necessary to highlight the illusory nature of the safety provided by Uber's use and failure to monitor GPS.  As Ms. Esteves stated, the "main purpose of checking GPS for drivers is to make the platform available" (Esteves Dep., July 15, 2025, at 49).  Uber's business relies on the use of driver

12. Measures that Uber promotes as "safety features" such as GPS Tracking, RideCheck, the Emergency Button or Share My Ride do not appreciably reduce the risk that a driver will feel "safe" in committing sexual assault and sexual misconduct. Further, misinformation about the methods and motives of sexual offenders, despite Uber's alliance with victim advocates and sexual assault experts, has allowed Uber to promote "safety features" as deterrents to sexual assault.

13. An offender's interactions and method of abusing and exploiting a victim of sexual assault affects the victim's response to the assault and injury. An offender can use threats, camouflage, apology, stalking, or acting like nothing happened to confuse, control, and manipulate the victim.

14. Uber's policies against sexual assault and sexual misconduct are not sufficiently clear or adamant. It has not posted a "zero tolerance" policy anywhere for sexual assault and sexual misconduct, against either the drivers or the passengers. The most adamant statement Uber makes is on its website where it is written that sexual assault or sexual misconduct is "prohibited." Uber's guidelines for safety refer to "respect" and "consent," and a "no-sex" rule between drivers and passengers. The guidelines refer to prevention of sexual assault as a "shared responsibility" of "all of us," which dilutes the issues of sexual assault and misconduct and spreads the accountability to the victim and bystanders, while directing it away from Uber. Uber's efforts to disavow its responsibility to prevent sexual assault and sexual misconduct and to cloud its role in sexual assault and sexual misconduct can be used by offenders and against victims. Clear policies of "no tolerance" eradicate gray areas for offenders and victims. Clear policies also eliminate any need for interpretation that can be manipulated by offenders or confuse victims about sexual misconduct.

I have provided all of these opinions to a reasonable degree of psychological certainty.

Veronique N. Valliere, Psy.D.
Licensed Psychologist