# C.8

# EXHIBIT 1

**EXHIBIT FILED UNDER SEAL**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


IN RE:  UBER TECHNOLOGIES,   Case No. 3:23-md-03084
INC., PASSENGER SEXUAL                 CRB
ASSAULT LITIGATION
_____
This Document Relates to:

ALL ACTIONS
_____




VIDEO DEPOSITION OF UBER TECHNOLOGIES, INC.'s

30(b)(6) CORPORATE REPRESENTATIVE - ELIZABETH ROSS

San Francisco, California

Wednesday, June 11, 2025

Volume 1




STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491

JOB NO. 6899600-001

PAGES 1 - 344

A.    I think they could, yes.

Q.    Okay.  So essentially, saying "safety is our priority" is -- is similar in meaning, from a marketing point of view, to "safety is our top priority"?

A.    I think it's similar, yes.

Q.    Okay.

MS. WALSH:  Let's take a look now at -- let's look at the page ending with -356, which is PDF 64, please.

Q.    (By Ms. Walsh)  Just let me know when you're there.

A.    Sorry.

Q.    No worries.

A.    Turning pages.

Okay.

Q.    Okay.  And tell us what we see on this page.

A.    Do you mind if I just take a second --

Q.    Yup.

A.    -- to --

Q.    I mean, nope.

A.    Yeah.

Okay.  Yeah, what we're looking at here are the App Store screenshots on the iOS store.

Q.   Okay.  So this is if you have a -- have an Apple phone, right?

A.   Yes.

Q.   Okay.  And these are the App Store screenshots in 2024, right?

A.   Yes, that's what it looks like.

Q.   December 10th.

A.   Yes.

Q.   Okay.  And if we look -- so anyone who was going to look -- download the Uber app or maybe, you know, reload it on a new Apple device would have seen -- would have seen these materials, right?

A.   Yes, they could scroll down in the app store and see this beneath our app icon and where they could either download it or update their app.

Q.   Okay.  And if you look all -- on the top row, all the way on the right, do you see where it says, "Ride safely with Uber"?

A.   I do.

Q.   Okay.  From Uber's perspective, is the purpose of saying "Ride safely with Uber" to communicate to someone considering using Uber that Uber can give you a safe ride?

A.   Yeah, I mean, this App Store is

part of the team that wrote the safety report.

Q. Okay. Well --

MS. LEVY: We also have designated witnesses as the experts on the safety report. Not -- that is not this witness.

MS. WALSH: I hear you.

Okay. Let me show you what we're going to mark as Exhibit --

MR. REDE: 1049.

MS. WALSH: -- 1049 to your deposition.

MR. REDE: AW53. Here you go.

(Exhibit 1049 was marked for identification by the Court Reporter and is attached hereto.)

THE DEPONENT: Can I put this one away?

Q. (By Ms. Walsh) For now, yes.

A. Okay.

Q. Okay. And you see that the title of this document is "Project - T Business Decisions," right?

A. Yes.

Q. Okay. And if you flip forward with me to the page ending in -357.

A. Okay.

Q. And do you see that it says there, "Day

and Time Trends," right?

A.   Yes.

Q.   Okay.  And if you flip to the next page, it says "Day and Time Trends."

And it says "Pros:  Would serve as a 'compromise' for consumers looking to learn more on how to manage their safety," right?

A.   Yes.

Q.   And in "Cons," it says "Serious business implications - may prompt less users in high peak times."

Do you see that?

A.   I do.

Q.   Next, it says, "Would inadvertently reveal substance use involvement."

Do you see that?

A.   I do.

Q.   Next, it says, "Could undermine Uber as a safer alternative to driving under the influence."

Do you see that?

A.   Yes.

Q.   And at the very bottom, do you see where it says "Recommendation:  No"?

A.   I do.

Q.   Okay.  Flip with me to the page ending

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


IN RE:  UBER TECHNOLOGIES,   Case No. 3:23-md-03084
INC., PASSENGER SEXUAL                    CRB
ASSAULT LITIGATION
_____
This Document Relates to:

ALL ACTIONS
_____



VIDEO DEPOSITION OF UBER TECHNOLOGIES, INC.'s

30(b)(6) CORPORATE REPRESENTATIVE - ELIZABETH ROSS

San Francisco, California

Thursday, June 12, 2025

Volume 2



STENOGRAPHICALLY REPORTED BY:
REBECCA L. ROMANO, RPR, CSR, CCR
California CSR No. 12546
Nevada CCR No. 827
Oregon CSR No. 20-0466
Washington CCR No. 3491

JOB NO. 6899605-001

PAGES 345 - 610

Q.   Before we do that, let me ask you this: Uber knows, and has known for a while, that putting passengers in an isolated setting like a car with a complete stranger can create a risk of sexual assault?

A.   Yes.

I think from the document we were just looking at, there are risks that are noted there, yes.

Q.   Okay.

MS. WALSH:   Let's take a look at AW167, please.

Actually, I take that back.

Let's look at AW192, please.   And we're going to mark this --

MR. REDE:   1063.

MS. WALSH:   -- as 1063.

MR. REDE:   AW192.

(Exhibit 1063 was marked for identification by the Court Reporter and is attached hereto.)

MS. LEVY:   It's a big document.   You can take a minute to look at it if you need to.

Q.   (By Ms. Walsh)   And if it's helpful, I'm going to direct your attention -- we're just going

No, that information that we looked at in internal decks around digging into specific insights and data is not shared publicly in marketing campaigns.

Q.   (By Ms. Walsh)  Okay.  Thank you.

Ms. Ross, Uber is a transportation company, correct?

MS. LEVY:  Object to the form, and well outside of the topics.

THE DEPONENT:  The way that we describe ourselves is a technology company.

Q.   (By Ms. Walsh)  Uber describes itself as providing rides to people, right?

A.   Yes --

Q.   Okay.

A.   -- rides and food and other goods, yes.

Q.   Okay.  You understand this case is about rides, though, right?

A.   Yes.

Q.   Okay.  So Uber offers to sell rides to people, right?

A.   Yes.

Q.   Okay.  And Uber does, in fact, sell rides to people, right?

A.   Yes, people can take rides on the Uber

Elizabeth Ross Volume 2 30(b)(6)
June 12, 2025

platform.

Q.   And Uber offers rides to everyone, right?

A.   To anybody with an account.

Q.   Okay.  And that's, just focusing on the United States, to -- anyone who wants to sign up for an account in the United States, they can do that if they're over 18, right?

A.   Yes.

Q.   Although now you are expanding these services to -- to minors, right?

A.   Yeah, to teenagers.

Q.   Okay.  Who are not adults, right?

A.   They are not.

Q.   Okay.  So Uber would like everyone in the United States to use -- to buy rides from the company, right?

MS. LEVY:  Object to form.

THE DEPONENT:  Can you -- yes, ideally.

Like people who are signing up for Uber accounts that fall within the allotted age ranges that can take an Uber, if they want to take a ride, they can choose to take a ride.

Q.   (By Ms. Walsh)  Okay.  Without regard for what city they live in?

A.   Yeah, no.

yes.

Q.   Okay.  So if we look at this document, which is 1081 --

MS. WALSH:  And zoom in on the top portion, please.

Q.   (By Ms. Walsh)  -- you see where it says "Uber.  Run with Nike.  Ride with Uber."  Right?

A.   Yes.

Q.   And it's talking about Uber partnering with Nike to give riders free rides, right?

A.   Yes.

Q.   Okay.  So this is saying that -- and it's encouraging people to get the app, right?

A.   Uh-huh.

Q.   And if -- the implication of this is if you get this app and you use the app, you're going to be riding with Uber, right?

A.   Yes.

Q.   Okay.

MS. WALSH:  Let's take a look at -- and if you look down below -- scroll down, please, Brian, and zoom in on "Never Hail a Taxi Again," right, and the black car.

Q.   (By Ms. Walsh)  You're wanting people to

A.   Not to my knowledge, no.

Q.   Okay.  That's data that a company could buy to engage in marketing, right?

A.   They could, yeah.

Q.   And your -- Uber's testimony is that it doesn't do that?

A.   Not to my knowledge, no.

Q.   Well, what about to Uber's knowledge?

A.   Not to Uber's knowledge, not as far as I'm aware of what I learned in preparation for this deposition.

Q.   Okay.  So this says -- and, again, you see these Xs are where the person -- the recipient of this email, their information, would -- it would be -- specific information input for them, right?

A.   Uh-huh.

Q.   And what it says is, "(Firstname), let us take you where you need to go," right?

A.   Uh-huh.

Q.   It doesn't say, Let an independent contractor who is using our technology platform to broker a ride come and get you and take you where you need to go, right?

A.   Yes.

Q.   It says, "Let us take you where you need

to go"?

A.   Uh-huh.

Q.   And the implication of that is that it's Uber that's going to be taking you on the ride, right?

A.   Yes.

Q.   Okay.

MS. WALSH:  And let's look now at Exhibit -- at AW120, which we will mark --

MR. REDE:  1083.

MS. WALSH:  -- as 1083 to your deposition.

(Exhibit 1083 was marked for identification by the Court Reporter and is attached hereto.)

Q.   (By Ms. Walsh)  Okay.  And does this look to you to be an email or --

A.   Yes.

Q.   Okay.  So, again, an email that would have been sent to folks who Uber is hoping will buy a ride from Uber, right?

A.   Yes.

It looks like it is a rider email that was sent during the pandemic.

Q.   Okay.  So 2020, 2021 --

Elizabeth Ross Volume 2 30(b)(6)
June 12, 2025

A.    Uh-huh.

Q.    -- likely?

A.    Uh-huh.

Q.    And, to your knowledge -- and I guess I'd ask the same question about the last email we looked at -- would these emails have been restricted in terms of -- like, in terms of who they were sent to, like, based on geography, based on where the riders live?

A.    If I can just look at it quickly.

Q.    Uh-huh.

A.    This does not look like it has any kind of -- and I'm just basing that off of the fact that some emails will say -- similar to the emails that we looked at --

Q.    Yeah.

A.    -- Hey, Denver, or something like that. This email looks very general, so it looks like it could have gone to any rider within the U.S.

Q.    Okay.  And what this email says is, "One Uber fits all," right?

A.    Yes.

Q.    And underneath --

MS. WALSH:  If you scroll down, please, Brian.

Q.   (By Ms. Walsh)  -- it says, "Your day, your ride," right?

A.   Uh-huh.

Q.   "Run errands, see friends, or commute - our rides fit easily into your plans."

Do you see that?

A.   I do.

Q.   We -- "We'll" -- meaning Uber --

A.   Uh-huh.

Q.   -- "also get you to and from the airport to make your travel plans stress-free," right?

A.   Uh-huh.

Q.   And if you look down below, "Commute to the office."

Do you see that?

A.   Yes.

Q.   It says, "Whether it's a daily ride to the office or just when you don't feel like the walk, we'll get you there," right?

A.   Yes.

Q.   And so --

MS. WALSH:  Brian, if you could circle these, like, "we'll get you there" and "we'll also get you to and from," please.

Q.   (By Ms. Walsh)  In these statements,

Elizabeth Ross Volume 2 30(b)(6)
June 12, 2025

again, Uber is not saying an independent contractor who happens to connect with you through our technology platform --

A.    Uh-huh.

Q.    -- will get you to and from the airport, right?

A.    No, it does not say that.

Q.    It's not saying an independent contractor who we merely allow access to our technology platform to broker rides, that they'll get the rider to the office, right?

A.    No, it does not say that.

Q.    Uber is holding itself out to the world and to consumers as the entity that will get riders from where they are to where they want to go, right?

        MS. LEVY:  Object -- object to the question as phrased.

        THE DEPONENT:  Sorry, can you reask the question.

Q.    (By Ms. Walsh)  Yeah.

        When Uber says, "we'll get you there, we'll get you to and from the airport" --

A.    Uh-huh.

Q.    -- Uber is indicating by the very