Sommer D. Luther, *Pro Hac Vice*
sluther@wagstafflawfirm.com
Wagstaff Law Firm
940 Lincoln St.
Denver, CO 80203
Telephone: 303-376-6360
Facsimile: 888-875-2889

*Attorney for Plaintiff B.L.*

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | **PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

Pursuant to the Court's order at the hearing of May 29, 2026, Plaintiff B.L. respectfully submits this sur-reply in opposition to Uber's motion for sanctions, ECF No. 5964.[1]

Uber's reply, ECF Nos. 6194 and 6280,[2] attempts to infer bad faith where none existed, and to diminish its own role in creating the circumstances that the company now complains of. Plaintiff respectfully submits that, while she made mistakes in discovery that she will not repeat, she did not act in bad faith. Instead, a fair reading of the record reveals a breakdown of the conferral process that coincided

---

[1] May 29, 2026, Hearing Transcript ("Hearing Tr.") (ECF No. 6349) at 27:17-19.

[2] Uber had to file the reply twice because, the first time, it posted Highly Confidential – Attorney's Eyes-Only materials on the public docket. *See* ECF Nos. 6194 (original filing), 6199 (emergency admin motion to seal), 6200 (order provisionally sealing), 6207 (order sealing and directing refiling). These filings are referred to here as the "Reply."

with one party's headlong pursuit of sanctions to the exclusion of other available options. This conduct has required Court intervention via the PTO 8 procedures, but Plaintiff respectfully submits that it is not sanctionable. Happily, the parties have begun to remedy the dysfunction that existed at the time this motion was filed, consistent with the guidance the Court provided at the May 29 hearing. That and the reopening of discovery, ECF No. 6063, dissipates Uber's claims of generalized prejudice. Indeed, under Uber's theory of sanctionable conduct, many aspects of this hard-fought litigation—for example, the existence of SRAD, which was not timely disclosed by Uber—would be ripe for sanctions. That position is untenable; neither the parties nor, more importantly, the Court should have to sort out a sanctions motion nearly every time a discovery dispute arises. The motion should be denied.

## I.     Plaintiff Has Not Acted in Bad Faith

Uber focuses on two categories of discovery responses: (1) disclosure of witnesses, and (2) redactions of documents. These allegations do not withstand scrutiny.

### A.     Disclosures Were Timely

Fact witnesses and treaters were disclosed to Uber promptly. For context: Judge Breyer proposed Plaintiff as a Trial Wave 1 bellwether pick on April 4, 2025, ECF No. 2875, and confirmed that selection on May 1, 2025, ECF No. 2894. Declaration of Sommer Luther ("Luther Decl.") at ¶ #. Plaintiff's deposition was taken June 25, 2025. *Id.* at ¶ #. Wave 1 fact discovery was initially set to close on September 22, 2025. ECF No. 2894.

Rule 26(a) "requires identification of potential witnesses;" a general statement that a potential witness may testify "[r]egarding the claims of the underlying case and the damages at issue" is sufficient. *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1190 (9th Cir. 2022) (citations omitted) (reversing district court for sanctioning party based on failure to identify "subjects of [the potential witnesses'] information" with greater specificity). "[P]arties are expected to supplement and/or correct their disclosures promptly" if required by Rule 26(e). *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 679 (N.D. Cal. 2015). "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." *Burger v. Excel Contractors, Inc.*, No. 2:12-CR-01634-APG-CW, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013) (quoting Advisory Comm. Notes to 1993 Amendments to Rule 26).

*First*, each of the potential fact witnesses—L.P., R.H., M.B., T.R., and J.L.—that Uber claims were not disclosed until fact discovery closed, Reply at 3, were in fact disclosed to Uber in May and June of 2025. T.R. was first disclosed on May 9, 2025. Luther Decl. at ¶ #, Ex. # (Plaintiff's Second Supplemental ROG Responses).[3] M.B. was disclosed on June 11, 2025. *Id.* at Ex. # (Plaintiff's Fourth Supplemental ROG Responses).  L.P., R.H., and J.L were disclosed on June 24, 2025. *Id.* at Ex. # (Plaintiff's Second Supplemental Rule 26 Initial Disclosures). Those disclosures were supplemented as additional information became known or as Plaintiff recalled additional details about her interactions with the potential witnesses. Luther Decl. at ¶¶ #, Ex. # (Plaintiff's Fifth Supplemental ROG Responses (June 24, 2025)), Ex. # [Add all supplementations]. Plaintiff testified about these people during her deposition. *Id.* at Ex. # (Plaintiff Deposition Excerpts). Plaintiff produced documents referring to them in June 2025 as well. *See infra.*

Uber's suggestion that these disclosures were incomplete because they did not detail "each communication" Plaintiff had with a witness misses the point. *See* Reply at 3. Uber does not mention that Plaintiff answered that interrogatory subject to objections based on overbreadth and redundancy in light of other discovery, including productions of communications. Luther Decl. ¶ #, Ex. #. Uber has not contested these objections or conferred with Plaintiff on them; the company instead declared an impasse regarding disclosures on February 13, 2026, and initiated the PTO 8 process, even though Plaintiff had already agreed that these witnesses should be deposed. Luther Decl. ¶ #, Exs. #. *See also infra* at #.

Further, the Reply omits the parts of Plaintiff's responses that address Uber's concerns. For instance, Uber claims that Plaintiff "repeatedly lied" about the "extent of her communications" with L.P. "until after fact discovery was closed." Reply at 3. That is untrue. Plaintiff's June 24, 2025, interrogatory responses stated that she and L.P. "continue to speak *regularly* since the date of the offense about Plaintiff's continuing distress and damages from the incident." *Id.* at Ex. # (Plaintiff's Fifth Supplemental ROG Responses).

Similarly, Uber suggests that Plaintiff did not disclose that she "may have been on the phone" with T.R. during the incident. Reply at 3. Again, Uber is incorrect. On May 9, 2025, Plaintiff disclosed that T.R. "reached out to Plaintiff on Facebook Messenger after reading her post and she spoke with him for quite a

---

[3] This May 2025 disclosure was of T.R.'s name as Plaintiff knew it. Luther Decl. at ¶ #. Counsel later learned T.R.'s true name and promptly disclosed it to Uber on March 31, 2026. *Id.*

while . . . [f]*ollowing the conversation*, plaintiff . . . took an Uber to her brother's house around 3:00 a.m." Luther. Decl. at ¶ #, Ex. # (Second Supplemental ROG Responses) at ROG 9. On May 23, 2025, Plaintiff supplemented that response to correct the time the Uber ride began to 3:53 a.m. in California. *Id.* Ex. # (Third Supplemental ROG Responses) at ROG 9. At deposition, Uber's counsel asked a general question about timing: "so August 11th in the evening or 12th in the morning would have been the time that you would have been talking to [T.R.] on the phone, correct?" *Id*. Ex. # (Plaintiff Deposition Excerpts) at 252:11-15. Plaintiff responded yes, she was talking to T.R. "on the phone through the Facebook Messenger app." *Id.* Counsel asked no follow-ups. Plaintiff further supplemented her responses recently to clarify (again) that she was speaking with T.R. "immediately prior to the incident." *Id.* Ex. # (Tenth Supplemental Rule 26 Disclosures) at 9. On March 31, 2026, Plaintiff also produced screenshots showing the call on the night of the incident after receiving them from T.R. on March 17, 2026 (the same day that counsel learned T.R.'s real name). Luther. Decl. at ¶ #. Those documents show that Plaintiff's call with T.R. ended at 3:56 a.m. on the night of the incident but were screenshotted while T.R. was in Colorado. *Id.* Plaintiff understands that Meta products like Facebook localize timestamps to a user's current time zone. *Id.* Thus, T.R.'s screenshots appear to show that Plaintiff's call with T.R. ended at 2:56 a.m. Pacific Time (3:56 a.m. MT), about an hour before the subject ride began. *Id.* Plaintiff continues to explore how to obtain native versions of these documents, which may help confirm the times. In all events, Plaintiff disclosed T.R. and promptly supplemented her discovery responses. The parties have not meaningfully conferred on this issue. *Id.*

Perhaps Uber's most cogent argument is that Plaintiff's disclosures may have led Uber to believe that some of the fact witnesses, namely L.P., R.H., and M.B., had fewer conversations with Plaintiff than later became known. *See* Luther Decl. at ¶ #, Ex. #. This is not a failure to disclose; Rule 26(a) requires the identification of potential witnesses, not exposition of their potential testimony. *See Brodeur*, 41 F.4th at 1190. Plaintiff's other responses reflect her recollection and the data available at the time, not a desire to withhold. Luther Decl. at ¶ #, Ex. #; Luther In-Camera Decl. at ¶ #. And, in all events, Uber's lawyer had an opportunity to ask about these witnesses at Plaintiff's deposition. Counsel asked general questions about Plaintiff's relationships and learned that L.P. had been her "friend[] for a very long time, over 10 years." Luther Decl. at ¶ #, Ex. # (Deposition Excerpts) at 79:5-11. Counsel did not ask about R.H. or M.B. despite

knowing before the deposition that they had spoken to Plaintiff about her assault. Luther Decl. at ¶ #. Uber did not meaningfully confer with Plaintiff on this issue until after it declared an impasse on February 13, 2026, and initiated PTO 8 briefing. As part of the PTO 8 conferrals, Plaintiff agreed that each of these witnesses should be deposed. *See infra* at #.

**Second**, Plaintiff has timely disclosed the new treating providers. Uber complains that Lindsay Bisby, Guerin Bernadin, and S.S. were not properly disclosed. Again, Uber misreads the record. Dr. Bisby is affiliated with Baobab Psychiatric Services, where Plaintiff had been referred to on July 11, 2025, and which was disclosed to Uber on July 16, 2025. Luther Decl. at ¶ #, Ex. # (Plaintiff's Seventh Supp. ROGs Response) at ROG 6. Plaintiff was initially evaluated at Baobab Psychiatric Services on August 1, 2025. *Id.* Uber requested records from Baobab Psychiatric Services on August 4, 2025, and obtained them on October 17, 2025.[4] *Id.* Those records identified Dr. Bisby by name. *Id.* Plaintiff supplemented her discovery responses to list Dr. Bisby by name on October 30, 2025. Luther Decl. at ¶ #, Ex. # (Plaintiff's Ninth Supp. ROG Responses) at ROG 5. Disclosure was proper and prompt. Uber did not meaningfully confer with Plaintiff on the disclosure of Dr. Bisby prior to declaring an impasse and beginning PTO 8 briefing. Plaintiff agreed that Dr. Bisby should be deposed. *See infra* at #.

The same is true of Guerin Bernardin. Plaintiff saw Dr. Bernardin once, on August 21, 2025, as part of a longer hospitalization for meningitis. Luther Decl. at ¶ #. He was disclosed on February 24, 2026, after counsel learned he had treated Plaintiff. *Id.* at Ex. # (Ninth Supp. R. 26 Initial Disclosures) at 8. But Uber had learned his identity back on October 24, 2025, when it obtained billing records related to Plaintiff's hospital stay. Luther Decl. at ¶ #. There was no attempt to hide Dr. Bernadin from Uber. Uber did not meaningfully confer with Plaintiff on the disclosure of Dr. Bernardin prior to declaring an impasse and beginning PTO 8 briefing. Plaintiff agreed that Dr. Bernardin should be deposed. *See infra* at #.

S.S. is the outlier. S.S. is not a medical or mental healthcare provider at all; she is an advocate for victims of narcissistic abuse. Luther Decl. at ¶ #. As part of her business, S.S. offers paying clients access to a recovery course, Zoom and texting sessions, and other forms of mentorship and healing. *Id.* But she is not licensed in any state and does not purport to be a therapist; she offers validation and a listening ear to

---

[4] Marker Group obtained the records on October 6, 2025; Plaintiff did not assert privilege over the records and they were made available to Uber on October 17, 2025. Luther Decl. at ¶ #.

people who have suffered narcissistic abuse. *Id.* It appears that Plaintiff first engaged with S.S. in May 2022. *Id.* Plaintiff disclosed S.S. on July 16, 2025, identifying her as "a friend of the Plaintiff" who "may have knowledge and information regarding the subject incident and the impact of the incident on Plaintiff." *Id.* Ex. # (Plaintiff's Fourth Supplemental R. 26 Initial Disclosures) at 8. That was error. Plaintiff should have declined to characterize the relationship with S.S., described S.S. as a "mentor," or perhaps included caveats indicating uncertainty, even if she remembered S.S. as friendly person she could speak to. *Id.*; *see also* Luther In-Camera Decl. at ¶ #. Plaintiff did not intend to conceal S.S. from Uber—indeed, she correctly acknowledged that S.S. was a potential witness with knowledge of the assault as required by Rule 26(a) on July 16, 2025, and on the same day produced an unredacted text referring to Plaintiff wanting a "session" with S.S. Luther Decl. at ¶ #. Uber raised the redactions of text messages with S.S. in October 2025, *see infra*, but those conferrals were not completed before Uber declared an impasse and initiated PTO 8 briefing. Plaintiff agreed that S.S. should be deposed. *See* Letter Brief; *see also infra* at #. The parties have been negotiating production of documents by S.S.

**Third**, Uber raised its concerns on these issues in fits and starts. Despite knowing the identity of the above-described witnesses, Uber did not depose Plaintiff about many of them, or raise any concerns about them until after discovery closed. Luther Decl. at ¶ #. On October 6, 2025, Uber's counsel raised a purported mismatch between discovery responses and expert testimony on October 6, 2025. *Id.* Following conferral on October 16, 2025, Uber's counsel sent an email claiming that Uber was prevented from taking these witnesses' depositions, and suggesting (wrongly) suggesting that Dr. Mechanic's report disclosed a greater number of contacts between the witnesses and Plaintiff than Plaintiff had disclosed. *Id.* Plaintiff disagreed; Dr. Mechanic's report had revealed the *effects* of the Uber assault that witnesses had observed, not the *quantum* of contacts with Plaintiff. *Id.* at Ex. ## (Mechanic Report). Uber could have sought that same information if it had wanted, but it had declined to do so. *See id.* At that time, Plaintiff flagged that Plaintiff had sought new providers and suggested that Uber seek information supposedly obtained from the collateral witnesses from Dr. Mechanic during her deposition. *Id.* at ¶ #. After a month of silence, Uber sends an email claiming that none "of the remaining issues flagged in my email from October [16] have been cured." *Id.* Plaintiff replies on October 20, 2025, that Plaintiff is willing to work through everything with Uber to resolve the issues. *Id.* Three months pass with no contact. On February 13, 2026, Uber declares

and impasse and begins the PTO 8 process. During a February 20, 2026, conferral, Plaintiff states that she does not oppose depositions of treating providers and three collateral witnesses, subject to time limitations. *Id.* A month later on March 31, 2026, the parties confer again, and Plaintiff again expresses openness to additional depositions of fact witnesses and treaters, subject to certain limitations *Id.* Uber replies that any limitation is a non-starter, and that Uber will proceed to the Court. *Id.* A short conferral on April 3, 2026, addressed mostly redactions, though whether S.S. is a treater was briefly discussed. *Id.* That conferral began and ended with Uber stating it planned to seek sanctions. *Id.* Plaintiff has not tried to withhold witnesses from Uber; she has tried to work with Uber to find reasonable solutions to disputes, which Uber has rejected.

### B. Redactions Were Not Made in Bad Faith

Uber argues that Plaintiff attempted to hide relevant information via redactions. That is not the case. Plaintiff admittedly redacted too much in an attempt to protect what she then viewed as highly sensitive, non-responsive materials, and the private information of non-parties, including minors. Luther Decl. at ¶ #. The Court is already aware of some of the reasons for those actions, including harassing and embarrassing conduct by Uber in depositions. *See* ECF No. 5987. Those concerns have grown rather than diminished as this case has moved forward. For instance, Uber recently posted highly confidential, attorneys-eyes-only documents on the public docket and would not agree to take necessary steps to cure that violation of the Protective Order, which necessitated the Court's intervention. *See* ECF Nos. 6200, 6207. Just a day later, in a filing seeking to "reassure the Court and Plaintiffs that [Uber's lawyers] has added an extra lawyer of attorney review . . . prior to filings . . . to ensure that similar errors do not recur," Uber again filed confidential information on the public docket. ECF Nos. 6205, 6229 (refiled); ECF No. 6211 at ¶ 1 (stipulating that "Uber attached exhibits on the public docket containing a third-party name that the Court ordered kept under seal yesterday afternoon"). These concerns provide context for consideration of Plaintiff's redactions. In addition, Plaintiff has already removed most responsiveness and privacy-related redactions, and will shortly remove any that remain and reproduce documents to Uber. *See* ECF Nos. 6367, 6383.

Still, it is for Plaintiff to explain why she redacted certain documents. Two examples are instructive.

First, Uber cites a text exchange between Plaintiff and S.S. as emblematic of the redaction issues here.[5] Luther Decl. ¶ #, Exs. # and #. The texts that Plaintiff originally redacted concern the complicated relationship between Plaintiff and a family member, a romantic relationship that Plaintiff was attempting to cope with,  and other issues not directly related to the incident. *Id.* Ex. #. The materials directly relating to the assault in an Uber are not redacted, including references to "fawning" that have played such an important role in Uber's briefing. *Id* at 2; *see also* Reply at 1. The messages that discuss both the incident and Plaintiff's family history are also unredacted. *See* Ex. # at 2. Counsel seriously considered what should and should not be redacted in this document, and consulted with co-counsel with decades of mass tort experience. *Id.* The consensus was that non-responsive materials should be redacted. *Id.* Uber's document requests and this Court's rulings focus on documents related to the incident and damages, not any communication about a plaintiff's personal life. *Id.* Undersigned counsel believed in good faith that those appropriate redactions were applied here, and was confident that Uber would raise the issue if the company felt otherwise. They did not (prior to this motions practice), *see infra*, but Plaintiff nonetheless elected to un-redact the document. *Id.*

Second is the email in which Plaintiff discusses the assault, which is addressed to a former romantic partner and dated about 10 days after the assault. ECF No. 6914-2 (Benfield Decl.) at ¶¶ 34-35.[6] Again, Plaintiff originally redacted the portion of the email about Plaintiff's and the former romantic partner's relationship; the portion of the email about the sexual assault on the Uber platform was not redacted. *Id.* As with the above, undersigned counsel believed in good faith that the redacted portion of the email was not responsive to Uber's requests about the incident or Plaintiff's damages resulting from the incident (the redacted portion of the email is from after the incident but refers to back to experiences while the couple was together). Again, undersigned counsel believed in good faith that those appropriate redactions were applied here, and was confident that Uber would raise the issue if the company felt otherwise. They did not (prior to this motions practice), *see infra*, but Plaintiff nonetheless elected to un-redact the document.

---

[5] Hearing Tr. at 22:2-8 ("I would invite Your Honor as you're thinking about your ruling to really go back and look at Exhibit 2 to Uber's motion for sanctions which is the initial text thread that was produced to Uber with the extensive redactions and compare that to Exhibit 6 which is then the full version that was produced to Uber without the redactions.").

[6] This is the Attorneys Eyes Only material that Uber filed on the public docket. *See* ECF No. 6199.

*Id.* Conferral would have been especially useful as to this document since Plaintiff's counsel has recently discovered that it appears to be a draft, which was never sent. Luther Decl. at ¶ #. Plaintiff shared that information with Uber. *Id.*

Though Plaintiff does not believe she acted in bad faith, she of course takes a different position concerning her documents today. Based on experience in this case since last July, as well as the Court's guidance, Plaintiff will not impose redactions for responsiveness going forward. Indeed, if given the chance at a do-over, Plaintiff would not make the same choices. *See infra* at #. But her historic discovery choices were made in good faith and not for the purpose of withholding evidence.

That good faith is further confirmed by Plaintiff's willingness to un-redact materials even as Uber's response to the redactions, which were in place in one form or another for close to a year, proceeded in fits and starts. *See* Reply at 5 & n.7. On June 23, 2025, Uber raised the redactions issue as to messages to/from M.B. and W.L. and in certain medical records. Luther Decl. at ¶ #. Following correspondence, the parties agreed that Plaintiff would un-redact certain medical records, and re-review certain message. *Id.* Plaintiff ultimately did un-redact some communications involving W.L. Plaintiff did not hear back.

On October 6, 2025, Uber raised issues concerning disclosure of witnesses, *see supra*, which led to a conferral on October 13, 2025, which included leadership. Luther Decl. at ¶ #. Follow ups to that conferral raised issues concerning updates of witnesses' text messages, missing texts from L.P., and concerns about how privilege was being logged. *Id.* Plaintiff supplemented productions of both her privilege log and certain communications on October 16, 2025. A month later, on November 17, 2025, Uber emailed to say that redactions on L.P.'s texts were too numerous. *Id.* Plaintiff's counsel asked Uber to identify specific concerns in a reply email of November 19; Uber replied that "I don't think any of the remaining issues flagged in my email of October 28 have been cured." (Counsel is believed to be referring to her email of October 16.). *Id.* Plaintiff assured Uber she would work through any remaining disputes following review of the relevant documents. *Id.* Uber did not respond for three months. *Id.*

On February 13, 2026, Uber's counsel informed Plaintiff via email that the parties were at an impasse and Uber was initiating PTO 8 briefing. *Id.* A conferral followed on February 20, 2026, including leadership. *Id.* Uber raised questions about redactions and AI, along with Plaintiff's privilege log. *Id.* Following conferral, Plaintiff reviewed redactions of communications involving 12 witnesses, and re-

produced documents for those witnesses with fewer redactions. *Id.* The parties conferred as part of the PTO 8 process. *Id.* Plaintiff expressed openness to removing redactions, but wanted to set out a protocol for using search terms to identify responsive communications. *Id.* Uber focused on blanket statements about the impropriety of redactions rather than exploring options. *Id.* Plaintiff substantially un-redacted documents and reproduced them to Uber on March 31, 2026. On April 3, 2026, Uber emailed stated they may be seeking sanctions. *Id.* At a conferral on April 7, 2026, Uber began the meeting by stating the company would seek sanctions unless Plaintiff could convince them otherwise. *Id.* No meaningful discussion of avoiding Court involvement was had. *Id.* This motion followed.

## II.    Any Prejudice to Uber Has or Will Be Cured

Plaintiff respectfully submits that Uber has not identified any meaningful prejudice beyond the general suggestion "that things would have been much, much different"[7] if discovery had proceeded differently, or that Uber had to "prod[]" and "follow up" with Plaintiff.[8] That is not the sort of prejudice that warrant sanctions. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). If it were, this Court would receive a sanctions motion along with every PTO 8 submission, and Plaintiffs in this MDL would have ample reason to seek sanctions for Uber's discovery intransigence. There is a reason that having to "follow up" with your litigation opponent is not harmful enough to warrant sanctions.

Further, the Court's order reopening discovery gives the parties time to complete discovery, including dealing with any materials that are to be unredacted (and any follow-on discovery). Indeed, Plaintiff was already in the process of refreshing her discovery responses when the Court reopened discovery. Luther Decl. at ¶ #. Counsel is recollecting Plaintiff's ESI and will refresh prior productions to include responsive documents generated after the last collection. *Id.* Plaintiff will also produce responsive materials that Uber has just recently requested via subpoena for deposition testimony of the fact witnesses discussed above. These requests are far broader that Uber's prior requests (for instance "all communications" with Plaintiff). *Id.* And, finally, in an effort to assuage any concerns about Plaintiff's past productions, Plaintiff will re-review all prior productions and collections to ensure that all responsive documents (including apparent duplicates) have been produced or properly logged as privileged. *Id.*

---

[7] CMC Tr. at 14:12-14.

[8] Hearing Tr. at 21:9-12.

PLAINTIFF'S SUR-REPLY OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff expects to be able to begin making productions shortly.

**III.      Uber's Motion Is Not Properly Supported**

Finally, it bears mentioning that Uber's Reply does not remedy the motion's procedural and legal deficits. First, the Reply all but concedes that the motion for sanctions was not factually supported as required by Civil Local Rule 37-4, which requires conferral for the purpose of attempting to avoid Court involvement. Civ. L.R. 37-4(b)(2). As described above, a sanctions motion was already decided upon by Uber's lawyers before they scheduled a call to discuss it. *See supra* at #. No meaningful conferral occurred and Uber failed to submit competent evidence that it did when it filed its original motion.

Second, Uber continues to eschew application of any particular legal standard to this dispute. Its Reply refers to "both Rule 37(c) and (3), as well as the Court's inherent authority" and, at the hearing, Uber's counsel generally referenced a "kind of a belt and suspenders approach to some extent from Uber" that "this conduct does [] fall under 37(c) in terms of failure to disclose and supplement, and also falls under 37(d) in terms of failure to serve proper answers . . . you know, I think the . . . inherent authority is an independent ground to impose sanctions, but I don't know that Your Honor needs to get there . . . ."[9] Sanctions are an extraordinary remedy, and Uber's papers do not apply a clear legal authority permitting their application here.

* * *

The motion for sanctions, ECF No. 5964, should be denied.

Dated:  June 4, 2026.                              Respectfully submitted,

/s/ *Sommer D. Luther*
Sommer D. Luther
Attorney for Plaintiff B.L.

---

[9] Hearing Tr. at 13:24 – 14:7.