**WAGSTAFF LAW FIRM**
Sommer D. Luther*
940 Lincoln Street
Denver, CO 80203
Tel: (303) 376-6360
Fax: (303) 376-6361
sluther@wagstafflawfirm.com
*Appearing Pro Hac Vice*

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB<br><br>MDL No. 3084 |
| This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc., et al.*, No. 24-cv-7940 | **DECLARATION OF SOMMER D. LUTHER IN SUPPORT OF PLAINTIFF B.L.'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Hon. Charles R. Breyer |

I, Sommer D. Luther, declare:

1.      I am an attorney in the law firm of Wagstaff Law Firm, and counsel for Plaintiff in the above-captioned action. I am a member of the State Bar of Colorado and am admitted to practice before this Court pro hac vice. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I respectfully submit this declaration in support of Plaintiff B.L.'s Sur-Reply in Opposition to Defendants' Motion for Sanctions.

2.      To protect the privacy of non-parties, and consistent with the Court's orders, e.g., ECF Nos. 174 and 176, I refer to Plaintiff and certain witnesses by their initials—including ▮▮▮▮

3. Plaintiff-specific discovery commenced after Plaintiff B.L. was selected for the Wave 1 bellwether pool.

4. Plaintiff's deposition was taken on June 25, 2025.

5. Wave 1 fact discovery was initially set to close on September 22, 2025, ECF No. 2894.

6. Plaintiff disclosed each of the fact witnesses at issue—L.P., R.H., M.B., T.R., and J.L.—to Uber in May and June 2025, as set forth in the following paragraphs.

**Witness T.R.**

7. On May 9, 2025, T.R. was first disclosed to Defendants in Plaintiff's Second Supplemental Responses to Interrogatories, a true and correct copy of which is attached hereto as **Exhibit 1**. This disclosure consisted of T.R.'s name as Plaintiff knew it. Plaintiff disclosed that T.R. "reached out to Plaintiff on Facebook Messenger after reading her post and she spoke with him for quite a while . . . [f]ollowing the conversation, plaintiff . . . took an Uber to her brother's house around 3:00 a.m."

8. On May 23, 2025, Plaintiff supplemented that response to correct the spelling of his first name and provided a last name. Plaintiff also corrected the time the Uber ride began to 3:53 a.m. in California. A true and correct copy of Plaintiff's Third Supplemental Responses to Interrogatories is attached hereto as **Exhibit 2.**

9. On June 25, 2025, Plaintiff identified T.R. during her deposition. Uber's counsel asked: "so August 11th in the evening or 12th in the morning would have been the time that you would have been talking to [T.R.] on the phone, correct?" Plaintiff responded that she was talking to T.R. "on the phone through the Facebook Messenger app." Counsel asked no follow-up questions on the subject. A true and correct copy of relevant excerpts of Plaintiff's deposition are attached hereto as **Exhibit 3**.

10.     On March 17, 2026, Plaintiff's Counsel learned T.R.'s true name. T.R. sent Plaintiff's Counsel screenshots of his and Plaintiff's Facebook Messenger call on the night of the incident. The screenshots reflect that Plaintiff's call with T.R. ended at 3:56 on the night of the incident, but they were captured while T.R. was located in Colorado. My understanding is that Meta products such as Facebook Messenger display timestamps localized to the viewing user's then-current time zone, the screenshots appear to reflect that the call ended at 2:56 a.m. Pacific Time (3:56 a.m. Mountain Time), approximately one hour before the subject ride began. Plaintiff continues to seek native-format versions of these documents, which may assist in confirming the times.

11.     On March 31, 2026, Plaintiff disclosed T.R.'s legal name to Uber and the screenshot communications in her Tenth Supplemental Rule 26 Initial Disclosures, a true and correct copy of which is attached hereto as **Exhibit 4**, and in her Eleventh Supplemental Response to Uber's Set One of Request for Productions, a true and correct copy of which is attached hereto as **Exhibit 5**. Plaintiff explained again that she was speaking with T.R. "immediately prior to the incident."

**Witness M.B.**

12.     On June 11, 2025, M.B. was first disclosed to Defendants in Plaintiff's Fourth Supplemental Responses to Interrogatories, a true and correct copy of which is attached as **Exhibit 6**. Texts involving M.B. had been previously produced.

13.     On June 24, 2025, Plaintiff disclosed M.B. in her Second Supplemental Rule 26 Initial Disclosures, a true and correct copy of which is attached hereto as **Exhibit 7**, and in her Fourth Amended Plaintiff Fact Sheet.

14.     On October 30, 2025, in Plaintiff's Ninth Supplemental Responses to Interrogatories, Plaintiff supplemented her response to include an update on frequency and nature of communications between her and M.B. A true and correct copy of Plaintiff's Ninth Supplemental Responses to Interrogatories is attached hereto as **Exhibit 8**.

15.     On February 25, 2026, in Plaintiff's Tenth Supplemental Responses to Interrogatories, a true and correct copy of which is attached hereto as **Exhibit 9**, Plaintiff provided

a further update on communications with M.B. about the incident and approximate last date of contact.

**Witnesses L.P., R.H., and J.L.**

16.     On June 24, 2025, L.P., R.H., and J.L. were disclosed to Defendants in Plaintiff's Second Supplemental Rule 26 Initial Disclosures and also in Plaintiff's Fifth Supplemental Responses to Interrogatories, a true and correct copy of which is attached hereto as **Exhibit 10**. Plaintiff stated that she and L.P. "continue to speak regularly since the date of the offense about Plaintiff's continuing distress and damages from the incident." ROG 2 at 9.

17.     On June 25, 2025, Plaintiff identified L.P., R.H. and J.L. in her Fourth Amended Plaintiff Fact Sheet. Plaintiff also testified about L.P. and J.L. during her deposition. Uber's counsel asked general questions about Plaintiff's relationships and learned that L.P. had been Plaintiff's "friend[] for a very long time, over 10 years." Uber's counsel did not ask Plaintiff about R.H. or M.B. at deposition Plaintiff's earlier disclosure of them.

18.     Plaintiff continued to serve supplemental discovery responses as additional information became known to her or as Plaintiff recalled additional details about her interactions with potential witnesses. Uber has not contested Plaintiff's objections to ROG # based on redundancy with Uber's requests for production.  Subject to those objections, Plaintiff has provided Uber with the names of persons she spoke with but has not summarized the content of her communications.

19.     On February 13, 2026, Uber declared an impasse on witness disclosures and initiated the PTO 8 process. Plaintiff agreed that the witnesses should be deposed.

**Dr. Lindsay Bisby**

20.     On July 11, 2025, Plaintiff was referred to Baobab Psychiatric Services.

21.     On July 16, 2025, Plaintiff disclosed Baobab Psychiatric Services to Uber on July 16, 2025, in her Seventh Supplemental Responses to Interrogatories, a true and correct copy of which is attached hereto as **Exhibit 11.**

22.     On August 1, 2025, Plaintiff had her initial evaluation at Baobab Psychiatric Services.

23. On August 4, 2025, Uber requested records from Baobab Psychiatric Services. Records were sent to the Marker Group on October 6, 2025, and were released to Uber on October 17, 2025 after Plaintiff did not assert privilege. These records identify Lindsay Bisby by name.

24. On August 25, 2025, Plaintiff served her Eighth Supplemental Interrogatory Responses to include updated dates of service for her treatment at Baobab Psychiatric Services along with some prescribed medications. A true and correct copy of these responses is attached hereto as **Exhibit 17.**

25. On October 13, 2025, Plaintiff agreed that Dr. Bisby should be deposed in a meet and confer with Ms. Benfield.

26. On October 30, 2025, Plaintiff disclosed Dr. Lindsay Bisby in her Ninth Supplemental Interrogatory Responses and produced records in her Ninth Supplemental Responses to Uber's Set One Requests for Production, a true and correct copy of which is attached hereto as **Exhibit 12**.

27. On March 2, 2026, Plaintiff identified Dr. Lindsay Bisby/Baobab Psychiatric Services in her Sixth Amended Plaintiff Fact Sheet.

28. On March 31, 2026, Plaintiff served her Tenth Supplemental Rule 26 Initial Disclosures and disclosed Dr. Lindsay Bisby/Baobab Psychiatric Services as her treating provider who "may have knowledge and information regarding the care and treatment provided to Plaintiff following the subject incident."

29. Uber did not meaningfully confer with Plaintiff regarding the disclosure of Dr. Bisby before declaring an impasse and beginning PTO 8 briefing.

**Dr. Guerin Bernardin**

30. On August 21, 2025, Plaintiff was seen by Dr. Guerin Bernardin during a longer hospitalization for meningitis.

31. On October 24, 2025, Uber obtained billing records through The Marker Group, its record retrieval company, for Plaintiff's insurance company which identified Dr. Bernardin by name along with the August 21, 2025 date of treatment.

32.     On February 24, 2026, Plaintiff disclosed Dr. Bernardin in her Tenth Supplemental Interrogatory Responses after Plaintiff's Counsel learned of his treatment of Plaintiff.

33.     On October 13, 2025, Plaintiff agreed that Dr. Bernardin should be deposed in a meet and confer with Ms. Benfield, and acknowledged in her meet and confer follow up email dated October 16, 2025. ECF No. 6280-5

**S.S.**

34.     On July 16, 2025, Plaintiff disclosed S.S. in her Fourth Supplemental Rule 26 Initial Disclosures, identifying her as "a friend of the Plaintiff" who "may have knowledge and information regarding the subject incident and the impact of the incident on Plaintiff." On the same day, Plaintiff produced an unredacted text message referring to Plaintiff wanting a "session" with S.S. A true and correct copy of Plaintiff's Fourth Supplemental Rule 26 Initial Disclosures is attached hereto as **Exhibit 13.** Plaintiff does think of S.S. as a friend.

35.     S.S. is not a medical or mental healthcare provider. She has no medical license and does not purport to be a therapist. S.S. is an advocate for victims of narcissistic abuse. She offers services to victims including a recovery course, Zoom and texting sessions, and other forms of mentorship and healing. Plaintiff first engaged with S.S. in or around May 2022. Uber has requested to depose S.S., which Plaintiff has agreed to, and has requested production of all conversations with Plaintiff in connection with that deposition.

36.     In October 2025, Uber raised the redactions of text messages with S.S. to Plaintiff, but the parties were unable to complete the conferral process before Uber declared an impasse and initiated the PTO 8 briefing. The parties have been negotiating the production of documents by S.S. Plaintiff has produced communications with S.S.

37.     Despite knowing the identity of the above-described witnesses other than treating providers Plaintiff saw later, Uber did not depose Plaintiff about many of them or raise concerns about them until after the close of discovery. On October 6, 2025, Uber's counsel raised a purported mismatch between Plaintiff's discovery responses and expert testimony. The parties conferred on October 16, 2025. Following that conferral, Uber's counsel sent an email asserting that Uber had been prevented from taking the witnesses' depositions and suggesting that the report of Dr.

DECL. OF SOMMER D. LUTHER ISO PLAINTIFF'S SUR-REPLY IN OPP. TO DEFS' MOTION FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

Mechanic disclosed a greater number of contacts between the witnesses and Plaintiff than Plaintiff had disclosed.

**Disclosure-Related Conferral**

38.    Dr. Mechanic's report described effects of the incident that the witnesses had observed; it did not dwell on the quantity or number of contacts between the witnesses and Plaintiff. During this period, Counsel noted that Plaintiff had sought new treating providers and suggested that Uber could obtain information regarding the collateral witnesses from Dr. Mechanic at her deposition.

39.    A few weeks later, Uber sent an email stating that none "of the remaining issues flagged in my email from October [16] have been cured." On October 20, 2025, Plaintiff responded that she was willing to work through the issues in order to resolve them. The issue remained dormant for about 3 months. ECF No. 6280-5.

40.    On February 13, 2026, Uber declared an impasse and began the PTO 8 process.

41.    During a February 20, 2026, conferral, Plaintiff stated that she did not oppose depositions of treating providers and three collateral witnesses, subject to time limitations.

42.    On March 31, 2026, the parties conferred again, and Plaintiff again expressed openness to additional depositions of fact witnesses and treaters, subject to certain limitations. Uber responded that any limitation was a non-starter and that it would proceed to the Court.

43.    A conferral on April 3, 2026, addressed primarily redactions; whether S.S. is a treater was also briefly discussed. That conferral began and ended with Uber stating that it planned to seek sanctions.

44.    Plaintiff has produced communications between Plaintiff and A.N., S.S., M.G., and L.L., which were collected from Plaintiff, including in the First Supplemental Rule 26 Disclosure (June 11, 2025), Fourth Supplemental Response to RFP, Set One (June 11, 2025), Second Supplemental Rule 26 Disclosure (June 24, 2025), Fifth Supplemental Response to RFP, Set One (June 24, 2025), Fourth Supplemental Rule 26 Disclosure (July 16, 2025), and Seventh Supplemental Response to RFP, Set One (July 16, 2026).

**Redactions**

45. Plaintiff's counsel redacted material that she viewed as highly sensitive and non-responsive and that contained private information of non-parties, including minors. Counsel's purpose in redacting this information was protecting this highly sensitive information from disclosure or misuse. Plaintiff's counsel consulted with leadership, including highly experienced mass tort lawyers, about the types of information that should be produced and the types of information that ought to be redacted. Counsel was always open to conferring with Uber to try to resolve any concerns regarding redactions.

46. Plaintiff produced a redacted version of these texts, which still made clear B.L. intended to litigate against Uber. A true and correct copy of excerpts of the redacted text messages is attached hereto as **Exhibit 14**.

47. Uber raised redactions issue as to messages to/from M.B. and W.L. and in certain medical records on May 29, 2025. There was a re-review of redactions and a conferral on June 24, 2025. Plaintiff agreed to remove some redactions from communications with W.L. which were produced that same day. Plaintiff's Fifth Supplemental Responses to RFP, Set One (June 24, 2025) and Second Supplemental Rule 26 Disclosures (June 24, 2025). Plaintiffs and Uber met and conferred about redactions up until July 1, 2025. Plaintiffs did not hear from Uber on redactions again until October 2025. A true and correct copy of email correspondence with Uber's counsel in June 2025 is attached hereto as **Exhibit 15**.

48. Plaintiff conferred with Uber's counsel on October 13, 2025, concerning redactions and disclosures; a member of plaintiff's leadership attended. That conferral and follow ups raised issues concerning updates of witnesses' text messages, missing texts from L.P., and concerns about how privilege was being logged.

49. Plaintiff's privilege log was supplemented and produced on October 30, 2025, along with certain communications. Plaintiff's Ninth Supplemental ROG Responses (October 30, 2025); Plaintiff's Ninth Supplemental RFP Responses (October 30, 2025); Plaintiff's Seventh Supplemental Rule 26 Disclosures (October 30, 2025).

50. On November 17, 2025, Uber's counsel emailed that redactions in texts with L.P. were too numerous. ECF No. 6280-5.. Plaintiff asked Uber to identify any specific concerns;

counsel replied that "I don't think any of the remaining issues flagged in my email of October 28 have been cured." Counsel seems to have been referring to her October 16 email. Plaintiff assured Uber that she would work with them on any disputes.

51.     On February 13, 2026, when Uber declared an impasse and began the PTO 8 conferral and briefing process. ECF No. 6280-5. A conferral followed on February 20, 2026, including leadership; Uber raised questions about redactions and AI, along with Plaintiff's privilege log.

52.     Following conferral, Plaintiff reviewed redactions of communications involving 12 witnesses, and re-produced documents for those witnesses with fewer redactions on February 24, 2026 and March 31, 2026 for A.N., R.H., J.L. M.G., A.M. M.B., S.S., H.G., J.H., Lu.L., Pa.L. Plaintiff's Tenth Supplemental ROG Responses (February 24, 2026); Plaintiff's Tenth Supplemental RFP, Set One (February 24, 2026); Plaintiff's Ninth Supplemental Rule 26 Disclosures (February 24, 2026); Plaintiff's Tenth Supplemental Rule 26 Disclosures (March 31, 2026); Plaintiff's Eleventh Supplemental ROGs, Set One (March 31, 2026); Plaintiff's Eleventh Supplemental RFP, Set One (March 31, 2026).

53.     During PTO 8 conferrals, Plaintiff expressed openness to removing redactions but wanted to set out a protocol for using search terms to identify responsive communications. Uber focused on blanket statements about the impropriety of redactions rather than exploring options.

54.     Plaintiff re-reviewed redactions during the conferral process and elected to un-redact a significant portion of the redacted documents. Those documents were served on Uber on March 31, 2026.

55.     On April 73, 2026, Uber emailed to say they may seek sanctions. ECF 6280-16. A conferral followed on April 7, 2026, which began with Uber's lawyers stating that they were seeking sanctions and asking Plaintiff to convince them otherwise. No meaningful discussion of avoiding Court involvement in the dispute was had, nor was there meaningful discussion of how the parties could resolve their dispute.

DECL. OF SOMMER D. LUTHER ISO PLAINTIFF'S SUR-REPLY IN OPP. TO DEFS' MOTION FOR SANCTIONS
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

56.    Plaintiff produced a redacted text thread that used the word fawning on July 16, 2025. A true and correct copy of excerpts of that document is attached hereto as **Exhibit 16**. The same document describes how Plaintiff understood and used that word in this context.

57.    Plaintiff was in the process of re-collecting electronically stored information when the Court ordered discovery reopened on May 1, 2026. Counsel will refresh prior productions to include responsive documents generated after the last collection. Plaintiff will also produce responsive materials that Uber has just recently requested via subpoena for deposition testimony of the fact witnesses discussed above. These requests are broader that Uber's prior requests (for instance "all communications" with Plaintiff). And, in an effort to assuage any concerns about Plaintiff's past productions, Plaintiff will re-review all prior productions and collections to ensure that all responsive documents (including apparent duplicates) have been produced or properly logged as privileged.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2026, in Denver, Colorado.

_____
Sommer D. Luther
*Attorney for Plaintiff B.L.*