*Submitting Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER LLC, AND RASIER-CA, LLC'S AND PLAINTIFFS' JOINT OMNIBUS MOTION TO SEAL**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor |

**TABLE OF CONTENTS**

I.     Introduction and Tables of Documents............................................................................ 1

II.    Uber's Position ................................................................................................................ 7

    A.     Legal Standard .......................................................................................................... 7

    B.     Argument .................................................................................................................. 9

        1.     Redactions Concerning Uber's S-RAD Technology. ........................................ 9

        2.     Redactions Concerning Uber's Financial Information and Strategic
            Resource Allocation and Prioritization. ...................................................... 13

        3.     Information Regarding Executive Compensation. .......................................... 14

        4.     Information Concerning Uber's RideCheck Technology. ................................ 15

        5.     Redactions Concerning Safety Feature Performance and Experimentation. ........ 15

        6.     Information Concerning Uber's Audio Recording Technology and Related
            Experimentation. ........................................................................................ 16

        7.     Redactions Concerning an Unlaunched Uber Initiative. ................................. 16

        8.     Risk Assessments. ........................................................................................ 16

        9.     Research and Analyses Concerning Internal Uber Data. ................................ 17

        10.    Driver Screening and Retention. ................................................................... 18

        11.    Cerebro and uSights. .................................................................................... 19

        12.    Deactivation and Investigation Processes. ..................................................... 19

        13.    Survey Data. ................................................................................................. 20

        14.    Uber's Relationships with Non-Profit Organizations. .................................... 21

        15.    Data re Reports of Sexual Assault/Sexual Misconduct. .................................. 22

        16.    Data Collection, Organization, and Classification. ......................................... 25

        17.    Uber's City-Specific COVID-19 Strategies. .................................................. 25

        18.    Hyperlinks. ................................................................................................... 26

        19.    Uber's Approach to Sealing Is the Least Restrictive Alternative. ................... 26

    C.     Conclusion .............................................................................................................. 27

III.   Plaintiffs' Position ....................................................................................................... 28

    A.     Legal Standard ........................................................................................................ 28

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

B. Argument ...................................................................................................... 28

1. Redactions Concerning Uber's S-RAD Technology ............................................ 29

2. Redactions Concerning Uber's Financial Information and Strategic Resource Allocation and Prioritization................................................................. 32

3. Information Concerning Uber's RideCheck Technology .................................... 33

4. Redactions Concerning Safety Feature Performance and Experimentation ......... 33

5. Risk Assessments................................................................................................ 34

6. Research and Analyses Concerning Internal Uber Data...................................... 34

7. Driver Screening and Retention.......................................................................... 35

8. Cerebro and uSights ........................................................................................... 36

9. Deactivation and Investigation Processes ........................................................... 37

10. Survey Data........................................................................................................ 39

11. Uber's Relationships with Non-Profit Organizations ......................................... 40

12. Data re Reports of Sexual Assault/Sexual Misconduct ...................................... 41

13. Data Collection, Organization, and Classification.............................................. 42

14. Uber's City-Specific COVID-19 Strategies........................................................ 43

15. Personal Identifying Information........................................................................ 43

C. Conclusion ...................................................................................................... 43

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Pacific Fertility Ctr.*,
441 F.Supp.3d 902 ................................................................................ *passim*

*Aerodynamics Inc. v. Ceasars Ent. Operating Co.*,
No. 2:15-CV-01344-JAD, 2015 WL 5679843 (D. Nev. Sept. 24, 2015) ......................9, 14, 32

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,
2024 WL 4487404 (N.D. Cal. Aug. 13, 2024) .........................................................................7

*Anderson v. Marsh*,
312 F.R.D. 584 (E.D. Cal. 2015) ............................................................................................31

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2019 WL 1767158 (N.D. Cal. Apr. 22, 2019) ...........................8, 41

*Apple Inc. v. Samsung Elec. Co. Ltd.*,
2013 WL 312 864 (N.D. Cal. Feb. 2013) ...............................................................................40

*Ashcraft v. Welk Resort Grp., Corp.*,
No. 2:16-CV-02978-JAD-NJK, 2019 WL 12518367 (D. Nev. Sept. 26, 2019)
................................................................................................................................11, 12, 20, 39

*Avila v. Ford Motor Co.*,
--- F.Supp.3d ---, 2026 WL 508364 (N.D. Cal. Feb. 24, 2026)...................................... *passim*

*Bold Ltd. v. Rocket Resume, Inc.*,
No. 22-cv-01045-BLF, 2024 WL 1329921 (N.D. Cal. Mar. 27, 2024).......................... *passim*

*Campbell v. Facebook, Inc.*,
No. 13-cv-05996-PJH (MEJ), 2015 WL 12965295 (N.D. Cal. Oct. 15, 2015) .......................12

*CertainTeed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*,
No. 19-CV-00802-LHK, 2021 WL 6621061 (N.D. Cal. Dec. 13, 2021) ..............11, 16, 19, 30

*Certified Nutraceuticals, Inc. v. Clorox Co.*,
No. 3:18-cv-00744-W-KSC, 2020 WL 4339489 (S.D. Cal. July 28, 2020).....................13, 31

*Craig v. Am. Tuna, Inc.*,
No. 22-CV-473-RSH-MSB, 2023 WL 8242460 (S.D. Cal. Nov. 28, 2023) .....................18, 34

*Craig v. Am. Tuna, Inc.*,
No. 22-CV-473-RSH-MSB, 2023 WL 9503374 (S.D. Cal. Dec. 13, 2023).....................21, 40

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
809 F.3d 1092 (9th Cir. 2016) ...........................................................................................8, 28

JOINT OMNIBUS MOTION TO SEAL          Case No. 3:23-md-03084-CRB (LJC)

*Daybreak Game Co., LLC v. Takahashi*,
   No. 25-CV-01489-BAS-BLM, 2025 WL 3552744 (S.D. Cal. Dec. 11, 2025) ...............18, 35

*DeMartini v. Microsoft Corp.*,
   No. 22-CV-08991-JSC, 2023 WL 4205770 (N.D. Cal. June 26, 2023) ...................................17

*Doe v. Regents of Univ. of Cal.*,
   No. 22-CV-1506 JLS (VET), 2025 WL 1115295 (S.D. Cal. Apr. 14, 2025) ...........................7

*E. W. Bank v. Shanker*,
   No. 20-CV-07364-WHO, 2021 WL 3112452 (N.D. Cal. July 22, 2021)........................ *passim*

*In re Elec. Arts, Inc.*,
   298 F. App'x 568 (9th Cir. 2008) ........................................................................................8

*Esquivel v. Bank of Am., N.A.*,
   No. 2:12-CV-02502-GEB, 2015 WL 4224712 (E.D. Cal. July 10, 2015)...............................20

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ..........................................................................................13

*Exeltis USA Inc. v. First Databank, Inc.*,
   No. 17-CV-04810-HSG, 2020 WL 2838812 (N.D. Cal. June 1, 2020)......................11, 15, 30

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2016 WL 7911651 (N.D. Cal. Apr. 6, 2016)............................11, 20

*Flodin v. Ctrl. Garden & Pet Co.*,
   2024 WL 2190145 ............................................................................................................31

*Gomo v. NetApp, Inc.*,
   No. 17-CV-02990-BLF, 2019 WL 1170775 (N.D. Cal. Mar. 13, 2019)...............................14

*Hodges v. Apple Inc.*,
   2013 WL 607408 (N.D. Cal. Nov. 18, 2013) ......................................................................38

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   No. 12-CV-03844-JST, 2015 WL 12976921 (N.D. Cal. Mar. 31, 2015).............................22

*Kamakana v. City & Cnty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ....................................................................................... *passim*

*Kenny v. Pac. Inv. Mgmt. Co. LLC*,
   No. C14-1987 RSM, 2018 WL 3328224 (W.D. Wash. July 6, 2018)...................................15

*Kowalsky v. Hewlett-Packard Co.*,
   No. 5:10-CV-02176-LHK, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012)
   ................................................................................................................11, 16, 19, 30

*Laatz v. Zazzle, Inc.*,
   No. 22-CV-04844-BLF, 2025 WL 405702 (N.D. Cal. Feb. 5, 2025)........................... *passim*

iv

*Lawson v. Grubhub, Inc.*,
  No. 15-cv-05128-JSC, 2017 WL 2951608 (N.D. Cal. July 10, 2017)..........................8, 19, 35

*Lee on behalf of Symantec Corp. v. Clark*,
  2019 WL 13412548 (N.D. Cal. July 3, 2019)..........................................................................39

*Marks v. Crunch San Diego, LLC*,
  No. 14-cv-348 BAS (BLM), 2014 WL 12508596 (S.D. Cal. July 25, 2014)....................13, 31

*In re Meta Pixel Tax Filing Cases*,
  No. 22-CV-07557-PCP, 2025 WL 1872974 (N.D. Cal. May 9, 2025) ............................20, 39

*Miller v. RP On-Site, LLC*,
  No. 19-CV-02114-LHK, 2021 WL 624175 (N.D. Cal. Jan. 8, 2021) ......................................8

*Nautilus Biotechnology, Inc. v. SomaLogic, Inc.*,
  No. 23-CV-06440-BLF, 2024 WL 4894852 (N.D. Cal. Nov. 26, 2024)..........................15, 16

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978)..............................................................................................8, 23, 42

*Ochoa v. McDonald's Corp.*,
  2015 WL 3545921 (N.D. Cal. June 5, 2021) ..............................................................29, 31, 32

*Oliner v. Kontrabecki*,
  745 F.3d 1024 (9th Cir. 2014) ........................................................................................36, 37

*In re: Pacific Fertility Ctr. Litig.*,
  2021 WL 1082843 (N.D. Cal. Mar. 12, 2021)........................................................................43

*Pintos v. Pac. Creditors Ass'n*,
  605 F.3d 665 (9th Cir. 2010) .....................................................................................23, 24, 25

*In re Qualcomm Litig.*,
  No. 3:17-CV-0108-GPC-MDD, 2017 WL 5176922 (S.D. Cal. Nov. 8, 2017) ............... *passim*

*Rhino Metals, Inc. v. Sturdy Gun Safe, Inc.*,
  2022 WL 657052 (D. Idaho Mar. 4, 2022) .....................................................................13, 31

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2015 WL 13673842 (N.D. Cal. Aug. 4, 2015)......................... *passim*

*In re Roman Catholic Archbishop of Portland in Or.*,
  661 F.3d 417 (9th Cir. 2011) .........................................................................................28, 34

*Tortilla Factory, LLC v. United Natural Foods, Inc.*
  (C.D. Cal. June 10, 2021) ......................................................................................................31

*United States v. Rite Aid Corp.*,
  No. 2:12-CV-1699-KJM-EFB, 2019 WL 1923234 (E.D. Cal. Apr. 30, 2019) .............. *passim*

v

*United States v. Sleugh*,
    896 F.3d 1007 (9th Cir. 2018) ................................................................................8

*Williams v. Apple, Inc.*,
    No. 19-CV-04700-LHK, 2021 WL 2476916 (N.D. Cal. June 17, 2021) .........................11, 30

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    789 F. Supp. 3d 760 (N.D. Cal. 2025) ............................................................ *passim*

**Statute**

15 U.S.C. § 1681c ...............................................................................................35

JOINT OMNIBUS MOTION TO SEAL                          Case No. 3:23-md-03084-CRB (LJC)

## I.      INTRODUCTION AND TABLES OF DOCUMENTS

Pursuant to the Court's March 31, 2025 Order (ECF No. 5702), Defendants Uber Technologies Inc., Rasier LLC, and Rasier-CA, LLC (collectively, "Uber") and Plaintiffs respectfully submit this Joint Omnibus Sealing Motion.[1]

For the reasons set forth herein, Uber contends there are compelling reasons and/or good cause (as applicable) to seal the narrowly-tailored proposed redactions in the following exhibits.[2] Plaintiffs do not oppose these redactions.

| Document | Description |
|---|---|
| **Materials Attached to Rule 702 Motions** ||
| Ex. 1 to Uber's Motion to Exclude Lacey Keller | Table 1 of Appendix D to Expert Report of Lacey Keller |
| Ex. 1 to Uber's Motion to Exclude Lindsay D. Cameron, Ph.D. | Rebuttal Report of Lindsay D. Cameron, Ph.D. at page 48 ¶ 92(a),[3] 49, 52 ¶ 94(a) |
| **Materials Attached to Summary Judgment Motions** ||
| Exhibit 19 to Dean's Opposition to Uber's Motion for Summary Judgment | Excerpts from the July 16, 2025, 30(b)(6) Deposition of Greg Brown (non-public Bellwether Plaintiff name) |
| Exhibit 24 to Dean's Opposition to Uber's Motion for Summary Judgment | UBER_JCCP_MDL_001741625-626, -628-631, -633-636, -646, -648-651, -654-663, -668-669 |
| Exhibit 54 to Dean's Opposition to Uber's Motion for Summary Judgment | July 15, 2025, 30(b)(6) Deposition of Mariana Esteves at 103:10–11 |

---

[1]    The Parties propose that the Court defer a decision on sealing the following redactions, which contain information specific to the next three Wave 1 bellwether cases to be tried, until after the trials in these cases conclude, so that the Parties may more appropriately tailor potential redactions based on what occurs during those trials: Ex. 2071 to the 30(b)(6) Deposition of Sunny Wong (Pl. MSJ Opp. Ex. 55) and Table 3 of the Expert Report of Lacey Keller (non-Dean columns).

[2]    A complete list of the materials, with ECF numbers and pincites, that the Parties seek to seal is included in the competing [Proposed] Orders filed with this Motion.

[3]    Due to a numbering error, there are two paragraphs in the Rebuttal Report of Lindsay Cameron labeled 92(a). The first has no redactions. Plaintiffs here do not oppose Uber's request to redact the highlighted portions of the second paragraph labeled 92(a) on page 48.

| Document | Description |
|---|---|
| **Materials Attached to Motion in Limine Filings** ||
| Ex. 7 to Dean's Omnibus Motion in Limine | UBER_JCCP_MDL_003348796 |
| Ex. 55 to Dean's Omnibus Motions in Limine | QS_00000074-75 |
| Ex. 3 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_000475307 [hyperlinks only] |
| Ex. 4 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_001717430 [hyperlinks only] |
| Ex. 5 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_000118664 [hyperlinks only] |
| Ex. 6 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_002010063 [hyperlinks only] |
| Ex. 7 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_001319387 [hyperlinks only] |
| Ex. 15 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_000890205 [hyperlinks only] |
| Ex. 23 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_000108957 [identical to Dean MSJ Opp. Ex. 24] |
| Ex. 35 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_001711889 [hyperlinks only] |
| Ex. 50 to Dean's Opposition to Defendants' Motions in Limine | Defendants' Responses to Plaintiffs' Interrogatories and Requests for Production, August 18, 2025 |

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

| Document | Description |
|---|---|
| **Materials Attached to Other Filings** | |
| **Document** | **Description** |
| Ex. B to Joint PTO 8 Letter Regarding Outstanding S-RAD Issues | September 22, 2025 Declaration of Jonathan Jaffe |
| Ex. D to Joint PTO 8 Letter Regarding Outstanding S-RAD Issues | July 23, 2025 Rule 30(b)(6) Deposition of Sunny Wong (except at 19:2–22:16, 169:4-13; 225:12-16, which is opposed) |
| Ex. E to Joint PTO 8 Letter Regarding Outstanding S-RAD Issues | Excerpts from May 20, 2025 Deposition of Michael Akamine |
| Ex. H to Joint PTO 8 Letter Regarding Outstanding S-RAD Issues | September 24, 2025 Declaration of Sunny Wong |

For the reasons set forth herein, Plaintiffs contend there are compelling reasons to seal the narrowly-tailored proposed redactions in the following briefs and exhibits. Uber does not oppose these redactions:

| Document | Description |
|---|---|
| **Materials Attached to Rule 702 Motions** | |
| Exhibit 1 to Defendants' Motion to Exclude Opinions of Dr. John Chandler | The names of Wave 1 Bellwether Plaintiffs B.L., LCHB128, and A.R.2 at p.i and ¶¶ 17, 137, 207, 209, 213–14, 217–20 |
| Exhibit 2 to Defendants' Motion to Exclude Opinions of Dr. John Chandler | The name of Wave 1 Bellwether Plaintiff LCHB128 at 206:17 |
| Exhibit 6 to Defendants' Motion to Exclude Opinions of Dr. John Chandler | The names of Wave 1 Bellwether Plaintiffs B.L., LCHB128, and A.R.2 at 435:6, 435:13, 445:9–10, 446:8–9, 446:11, 447:1, 449:2–3, 449:10, 450:10–12, 451:9, 453:16, 453:19, 453:25 |
| Exhibit 1 to Defendants' Motion to Exclude Opinions of Lacey Keller | The names of Wave 1 Bellwether Plaintiffs B.L., LCHB128, and A.R.2 at p. 53 ¶ 76 and Appendix D pp. 4–8, 16, 30, and 37 |

Uber contends that there are compelling reasons and/or good cause (as applicable) to seal the remaining proposed narrowly-tailored redactions in the following briefs and exhibits. Plaintiffs oppose these redactions.

3

| Document | Description |
|---|---|
| **Materials Attached to Rule 702 Motions** | |
| Ex. 1 to Uber's Motion to Exclude Bruce Weiner | Report of Bruce Weiner |
| Ex. 2 to Uber's Motion to Exclude Bruce Weiner | Deposition of Bruce Weiner |
| Ex. 1 to Uber's Motion to Exclude John Chandler, Ph.D. | Expert Report of John Chandler, Ph.D. |
| Ex. 4 to Uber's Motion to Exclude John Chandler, Ph.D. | Rebuttal Expert Report of John Chandler, Ph.D. |
| Ex. 7 to Uber's Motion to Exclude John Chandler, Ph.D. | Rebuttal Report of Victoria Stodden, Ph.D. |
| Ex. 8 to Uber's Motion to Exclude John Chandler, Ph.D. | Incident Report Classification of Dominant Tickets for 2017-2024 |
| Ex. 1 to Uber's Motion to Exclude Lacey Keller | Expert Report of Lacey R. Keller |
| Ex. 2 to Uber's Motion to Exclude Lacey Keller | Deposition of Lacey Keller |
| Ex. 1 to Uber's Motion to Exclude Thomas R. Tremblay | Expert Report of Thomas R. Tremblay |
| Ex. 1 to Uber's Motion to Exclude Veronique Valliere | Expert Report of Veronique Valliere |
| Ex. 1 to Uber's Motion to Exclude Lindsay D. Cameron, Ph.D. | Rebuttal Report of Lindsay D. Cameron, Ph.D. |
| Plaintiffs' Motion to Exclude Expert Testimony | 10:7-8, 10:11, 10:13, 10:17 |
| Ex. C to Plaintiffs' Motion to Exclude Expert Testimony | Export Report of Vida Thomas |

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

| Document | Description |
|---|---|
| Ex. B to Plaintiffs' Motion to Exclude Orchowski | Deposition of Lindsay Orchowski, Ph.D. |
| Uber's Omnibus Opposition to Plaintiffs' Omnibus Motion to Exclude Experts ("Uber's *Daubert* Opposition") | 12:16, 12:18, 13:5-6, 13:8, 13:11-13, 13:15-16, 13:19-20, 13:22-23 |
| Ex. 2 to Uber's *Daubert* Opposition | UBER-MDL3084-000067582 |
| Ex. 3 to Uber's *Daubert* Opposition | UBER_JCCP_MDL_001102150 |
| Ex. 4 to Uber's *Daubert* Opposition | Expert Report of David C. Sawyer |
| Document cited in but not attached as an exhibit to Plaintiffs' Opposition to Uber's Motion to Exclude Expert Testimony | Supplemental Report of Minette E. Drumwright, Ph.D. |
| **Materials Attached to Summary Judgment Filings** | |
| Dean's Opposition to Uber's Motion for Summary Judgment | 6:7-8 [non-Dean S-RAD information] |
| Exhibit 12 to Dean's Opposition to Uber's Motion for Summary Judgment | Ex. 1966B to the 30(b)(6) Deposition of Greg Brown[4] |
| Exhibit 48 to Dean's Opposition to Uber's Motion for Summary Judgment | Excerpts from the July 1, 2025 Deposition of Dara Khosrowshahi |
| Exhibit 52 to Dean's Opposition to Uber's Motion for Summary Judgment | Ex. 1883 to the 30(b)(6) Deposition of Hannah Nilles |
| Exhibit 54 to Dean's Opposition to Uber's Motion for Summary Judgment | Excerpts from the July 15, 2025, 30(b)(6) Deposition of Mariana Esteves |

---

[4]     Uber seeks to redact personally identifying information in this document, specifically, the driver's license plate number.

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

| Document | Description |
|---|---|
| **Materials Attached to Motion in Limine Filings** | |
| Dean's Omnibus Motion in Limine | 10:11-12, 10:14, 10:17, 10:21-22[5] |
| Ex. 8 to Dean's Omnibus Motion in Limine | Excerpts from the July 15, 2025 Deposition of Greg Brown |
| Ex. 29 to Dean's Omnibus Motion in Limine | UBER_JCCP_MDL_000911254 |
| Ex. 30 to Dean's Omnibus Motion in Limine | Exhibit 2041 to the October 1, 2025 Deposition of Emilie Boman |
| Ex. 31 to Dean's Omnibus Motion in Limine | Excerpts from the October 1, 2025 Deposition of Emilie Boman |
| Ex. 55 to Dean's Omnibus Motion in Limine | QS_00000055 at QS_00000073, QS_00000076 |
| Ex. 59 to Dean's Omnibus Motion in Limine | UBER_JCCP_MDL_005579342 |
| Dean's Opposition to Defendants' Motion in Limine | 9:19, 13:14-17 |
| Ex. 3 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_000475307 |
| Ex. 4 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_001717430 |
| Ex. 5 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_000118664 |
| Ex. 17 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_005031659 |

---

[5] This document also reflects Plaintiffs' requested redactions, which the Court granted previously. EPCF No. 5343.

6

| Document | Description |
|---|---|
| Ex. 19 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_003231342 |
| Ex. 20 to Dean's Opposition to Defendants' Motions in Limine | UBER_JCCP_MDL_001701663 |
| Ex. 22 to Dean's Opposition to Defendants' Motions in Limine | Excerpts from July 8, 2025 Deposition of Todd Gaddis |
| Ex. 48 to Dean's Opposition to Defendants' Motions in Limine | August 18, 2025 Declaration of Todd Gaddis |
| Ex. 49 to Dean's Opposition to Defendants' Motions in Limine | Incident Report Field Convenience Descriptions, March 24, 2025 |
| **Materials Attached to Other Filings** | |
| Ex. D to Joint PTO 8 Letter Regarding Outstanding S-RAD Issues | July 23, 2025 Rule 30(b)(6) Deposition of Sunny Wong at 19:2–22:16, 169:4-13; 225:12-16 |
| Ex. F to Joint PTO 8 Letter Regarding Outstanding S-RAD Issues | June 25, 2025 Rule 30(b)(6) Deposition of Sunny Wong |
| Stipulation and [Proposed] Order Regarding S-RAD Scores | Average S-RAD score for daytime trips in CityID 26 (covering Phoenix, AZ and Tempe, AZ) over a 7-day period ending on June 28, 2024 |
| Ex. A to Plaintiff's Opposition to Motion to Quash Trial Subpoenas | Excerpts from March 26, 2025 Deposition of Henry (Gus) Fuldner |

## II.    UBER'S POSITION

### A.    Legal Standard

In the Ninth Circuit, courts use one of two standards to decide whether a document supporting a motion should remain under seal—the "compelling reasons" standard or the "good cause" exception. *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, 2024 WL 4487404, at *1 (N.D. Cal. Aug. 13, 2024) (internal citations omitted). When a motion is dispositive, the compelling reasons standard applies. *Id.* Summary judgment motions are, of course, dispositive. *Daubert* motions are also generally considered dispositive for purposes of a sealing motion. *E.g.*, *United States v. Rite Aid Corp.*, No. 2:12-CV-1699-

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

KJM-EFB, 2019 WL 1923234, at *2 (E.D. Cal. Apr. 30, 2019). Motions in limine are likewise generally considered dispositive for purposes of a sealing motion. *E.g.*, *Doe v. Regents of Univ. of Cal.*, No. 22-CV-1506 JLS (VET), 2025 WL 1115295, at *1 (S.D. Cal. Apr. 14, 2025); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016) ("plenty of technically nondispositive motions—including routine motions in limine—are strongly correlative to the merits of a case").[6] The lower good cause standard applies to discovery motions, since discovery motion materials "are actually one step further removed in public concern from the trial process than the discovery materials themselves." *United States v. Sleugh*, 896 F.3d 1007, 1015 (9th Cir. 2018).

"'[B]usiness information that might harm a litigant's competitive standing [if disclosed]' meets the compelling reasons standard for sealing." *Miller v. RP On-Site, LLC*, No. 19-CV-02114-LHK, 2021 WL 624175, at *2 (N.D. Cal. Jan. 8, 2021) (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)); *see also Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) ("'common-law right of inspection has bowed before the power of a court to insure that its records' are not used as 'sources of business information that might harm a litigant's competitive standing'") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) ("Sources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal, as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage.") (internal alterations and citations omitted); *Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045-BLF, 2024 WL 1329921, at *2 (N.D. Cal. Mar. 27, 2024) ("The Court finds compelling reasons to seal" the requested documents, which "discuss non-public information about Bold's corporate structure and finances, which if released would cause Bold competitive harm."); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2019 WL 1767158, at *2 (N.D. Cal.

---

[6] The Ninth Circuit provided the example of a motion in limine to admit statements in furtherance of a conspiracy, which it noted "will often spell out the very conspiracy alleged in a civil RICO complaint." *Id.* at 1099 n.5. Of course, some motions in limine may be more tangentially related to the merits of the case, particularly when the argument to exclude evidence is that it is irrelevant. Indeed, Plaintiff has argued that the good cause standard applies to motions related to the scope of evidence that may be presented at trial. ECF 4880 at 1. Uber contends that its proposed redactions are appropriate under either the good cause or compelling reasons standard, and addresses the higher standard out of caution.

JOINT OMNIBUS MOTION TO SEAL                                Case No. 3:23-md-03084-CRB (LJC)

Apr. 22, 2019) (noting that under the compelling reasons standard, courts have upheld the sealing of "trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing").

**B.    Argument**

Uber has a compelling interest and/or good cause (as applicable) in redacting the requested portions of the briefs and exhibits. Release of the redacted materials described below to Uber's competitors and the public would result in competitive harm to Uber, which outweighs the public interest in disclosure here. In support of its sealing motions, Uber has submitted multiple declarations from company witnesses that provide detailed reasons why Uber has a compelling interest in keeping its sensitive and valuable business information under seal.[7] Uber operates in a highly competitive industry, and confidential information concerning Uber's business would provide an unfair competitive advantage to its competitors, as explained more fully in the company declarations.[8]

**1.    Redactions Concerning Uber's S-RAD Technology.**

The redacted materials contain specific details concerning Uber's confidential and proprietary trip-matching safety assessment technology called Safety Risk Assessment Dispatch, or S-RAD. *See*

---

[7]    Plaintiffs argue that some of the information that Uber seeks to seal has been made public. They likewise criticize Uber's declarations for not taking that into account. However, in this motion, Uber has addressed what has become public by significantly narrowing the redactions that it previously sought and indeed no longer seeking any redactions whatsoever to many documents. Moreover, although *different* information concerning the confidential topics that Uber seeks to protect has become public, Uber is only seeking to seal information that is distinct from that which has been made public. New declarations are therefore unnecessary for Uber to meet its burden.

[8]    The Court should reject Plaintiffs' efforts to distinguish Uber's caselaw. The purported distinctions that they identify are not genuine distinctions or are, at most, distinctions without a difference. For example, Plaintiffs argue that *E. W. Bank v. Shanker*, No. 20-CV-07364-WHO, 2021 WL 3112452 (N.D. Cal. July 22, 2021) and *Aerodynamics Inc. v. Ceasars Ent. Operating Co.*, No. 2:15-CV-01344-JAD, 2015 WL 5679843 (D. Nev. Sept. 24, 2015), are "misappropriation of trade secrets cases in which the information to be sealed had already been used to harm the plaintiffs." But the courts in those cases did not base their sealing decisions on any such reasoning. Moreover, as in those cases, Uber operates in a highly competitive industry, where its business interests would likewise be threatened by release of its valuable and confidential financial information to its competitors. *E.g.*, *E. W. Bank*, 2021 WL 3112452, at *17 (sealing of "financial investment and budget … is also warranted as it concerns financial information, which if made public, could economically harm [plaintiff's] business); *Aerodynamics Inc.*, 2015 WL 5679843, at *14 (financial and budget information "could be valuable to other potential air carriers"). Plaintiffs' own caselaw is likewise inapposite here, where Uber has proposed narrowly tailored, targeted redactions supported by document-by-document declarations from its company witnesses.

---

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

11/21/2025 Declaration of Sunny Wong ("11/21/2025 Wong Decl.") (ECF No. 4470-35); 12/23/2025 Declaration of Sunny Wong ("12/23/2025 Wong Decl.") (ECF 4848-3). The materials "describe specific variables that are programmed into the S-RAD technology, inputs and data points utilized by the technology, detailed product development and testing information such as results of internal experiments evaluating precision and recall metrics at different settings, details of the technology's development process and design trials, historical information regarding features and variables utilized in different iterations of S-RAD models over time, reasons and internal business rationales for certain design decisions related to S-RAD, and confidential information about how the S-RAD technology functions." 11/21/2025 Wong Decl. ¶ 4; 12/23/2025 Wong Decl. ¶ 4 (similar); *see also* 11/21/2025 Wong Decl. ¶¶ 12-25 (describing the specific competitively sensitive information in the Exhibits concerning S-RAD); 12/23/2025 Wong Decl. ¶¶ 13-18, 20-21 (similar).[9]

Details concerning S-RAD have been kept confidential, even within Uber. 11/21/2025 Wong Decl. ¶ 7; 12/23/2025 Wong Decl. ¶ 7. Indeed, Plaintiffs' own experts have noted that, until very recently, Uber kept even the very existence of S-RAD confidential. Chandler Rep. ¶ 159 (S-RAD "considered confidential") (ECF 4470-9); Valliere Rep. at 21 ("Uber disclosed S-RAD to the public for the first time in August 2025 in response to the *New York Times* article") (ECF 4470-23); Keller Dep. 151:16-21 ("Uber has chosen to do a number of things behind closed doors, including developing the S-RAD program … but they have told the public nothing about that") (ECF 4470-19). Its existence was disclosed only recently in connection with this and related litigation, including via a leak of the sealed JCCP summary judgment opposition materials to the *New York Times* in violation of the Protective Order. *See* 10/22/25 JCCP Order Granting Uber's Mot. to Enforce the Prot. Order (ECF 4470-34). Uber's investment of time and resources

---

[9] Due to the information concerning S-RAD that was made public during the *Dean* trial, the only portions of documents discussing S-RAD addressed in the Wong declarations that Uber still seeks to redact are as follows: Weiner Rep. ¶¶ 140-141, 156; Keller Rep. ¶¶ 50, 56, 64, 68, 71-72; *id.* n.166; *id.* Table 3 (non-Dean columns); *id.* App'x D at Table 1 (non-Dean S-RAD scores); *id.* App'x F; Keller Dep. at 312:8, 312:14; Stodden Rebuttal Rep. ¶ 44; Stipulation and [Proposed] Order Regarding S-RAD Scores (average S-RAD score related to LCHB 128). Uber also seeks to seal the LCHB 128 S-RAD score from Plaintiff's Opposition to Uber's Motion for Summary Judgment. Opp. at 6:7-8. The Court should reject Plaintiffs' suggestion that because information concerning S-RAD was made public during the *Dean* trial, Uber can no longer seek protection of those aspects of its valuable trade secrets that were not made public.

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

in developing and refining the S-RAD technology has been significant. 11/21/2025 Wong Decl. ¶ 7; 12/23/2025 Wong Decl. ¶ 7. Indeed, the JCCP Court, in ordering that redactions to certain S-RAD documents be maintained under seal, found that "Uber has established that the S-RAD technology is a closely held and economically valuable trade secret…." ECF 4684-10 at 12 (October 22, 2025 JCCP Court Order).

Although additional S-RAD information was revealed during the *Dean* trial, disclosure of certain yet undisclosed details concerning S-RAD would cause competitive harm to Uber by providing its competitors with even more information that they could use to Uber's competitive disadvantage and to potentially reverse-engineer the S-RAD technology for their own use. 11/21/2025 Wong Decl. ¶¶ 8-9; 12/23/2025 Wong Decl. ¶¶ 8-9; *see E. W. Bank v. Shanker*, No. 20-CV-07364-WHO, 2021 WL 3112452, at *17 (N.D. Cal. July 22, 2021) (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *4 (N.D. Cal. Apr. 6, 2016) (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products"); *Ashcraft v. Welk Resort Grp., Corp.*, No. 2:16-CV-02978-JAD-NJK, 2019 WL 12518367, at *2 (D. Nev. Sept. 26, 2019) (sealing information that "a competitor could [use to] reverse-engineer" Experian's systems); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) (granting motion to seal when "public release of these documents could give non-party competitors an unfair advantage in the development or marketing of rival products"); *CertainTeed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, No. 19-CV-00802-LHK, 2021 WL 6621061, at *2 (N.D. Cal. Dec. 13, 2021) (granting motion to seal "company's internal report about the efficacy of the company's products" because it "is a 'compilation of information which is used in [the company's] business' and gives the company 'an opportunity to obtain an advantage over competitors who do not know or use it'") (citations omitted); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10-CV-02176-LHK, 2012 WL 892427, at *4 (N.D. Cal. Mar. 14, 2012) (granting motion to seal information concerning party's "product testing, development, and evaluation processes"); *Williams v.*

11

*Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (granting motion to seal "exhibits that comprise internal Apple documents on iCloud's development and technical metrics").

Release of the information could also allow users of the Uber platform or other individuals to take steps to undermine or circumvent S-RAD's effectiveness. 11/21/2025 Wong Decl. ¶ 10; 12/23/2025 Wong Decl. ¶ 10; *see, e.g.*, *Ashcraft*, 2019 WL 12518367, at *2 (sealing information that "identity thieves could use [ ] to develop methods to circumvent Experian's protections"); *Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 12965295, at *2 (N.D. Cal. Oct. 15, 2015) (finding good cause to seal documents that could cause Facebook competitive harm and compromise the technology of the products, harming Facebook and Facebook's end users).

In addition to the S-RAD information that Uber seeks to seal under the compelling interest standard, Uber also seeks to redact pursuant to the good cause standard additional S-RAD information in certain exhibits to the parties' Joint PTO 8 Letter Regarding Outstanding S-RAD Issues (involving a discovery dispute).[10] The same reasons that support sealing non-public S-RAD information under the compelling interest standard apply even more strongly under the good cause standard.

Uber also seeks to maintain Exhibits D and F to the Joint PTO 8 Letter almost entirely under seal. Exhibit D is the entire 427-page transcript of the July 23, 2025 Rule 30(b)(6) deposition of Sunny Wong and Exhibit F is the entire 348-page transcript of the June 25, 2025 Rule 30(b)(6) deposition of Sunny Wong. Plaintiffs cited just four pages of Exhibit D in the Letter Brief (19:2-22:16) and included only a general citation to Exhibit F, not citing any particular pages; Defendants cited portions of two pages of Exhibit D in the Letter Brief (169:4-13; 225:12-16). *See* ECF 4009 at 3, 5.

Despite these limited citations to Exhibits D and F—transcripts designated as Highly Confidential—the transcripts were filed in their entirety. As this Court has recognized, the inclusion of wholly superfluous material protected as highly confidential under the Protective Order is reason alone to seal materials under a good cause standard (or at least to seal all portions not cited in the underlying Letter

---

[10]    Specifically, Uber seeks to seal the following: Ex. B ¶ 20, n. 443; Ex. E; Ex. H ¶¶ 12, 14-16, 23-31, 33-34, 36.

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

Brief). *See* ECF 3976 at 7-8 (requesting that exhibits consisting of the entirety of certain discovery responses be sealed except for those portions cited in the letter brief); ECF 3996 (granting this sealing request); *see also Marks v. Crunch San Diego, LLC*, No. 14-cv-348 BAS (BLM), 2014 WL 12508596, at *2 (S.D. Cal. July 25, 2014) (finding good cause to seal "portions of [a deposition] transcript marked confidential [that] are not cited in [the] briefing"); *Rhino Metals, Inc. v. Sturdy Gun Safe, Inc.*, 2022 WL 657052, at *19 (D. Idaho Mar. 4, 2022) (sealing all portions of deposition transcript "not cited by either Party"); *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("[I]t makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive [] motion filed with the court."); *Certified Nutraceuticals, Inc. v. Clorox Co.*, No. 3:18-cv-00744-W-KSC, 2020 WL 4339489, at *6 (S.D. Cal. July 28, 2020) (concluding that "superfluous documents" that "were neither relevant nor necessary to the Court's determination of this dispute" should not be disclosed).[11]

        2.      Redactions Concerning Uber's Financial Information and Strategic Resource Allocation and Prioritization.

The redacted materials contain confidential information about Uber's strategic resource allocation decisions, including technology investment priorities and phases. *See* 11/21/2025 Decl. of Greg Brown ("11/21/2025 Brown Decl.") (ECF No. 4470-36) ¶ 11.[12] They include specific percentages and dollar figures, representing Uber's feature investment decisions and strategy over multiple years. *Id.* They also contain figures outlining Uber's marketing budget and strategy, including specific dollar allocation. *Id.* Uber also seeks to seal additional descriptions of Uber's financials and costs to run its business, including

---

[11] With respect to the 6 pages of Exhibit D that were actually cited in the joint letter, Uber requests that pages 19-22 and 225 be sealed under the good cause standard due to the non-public information about S-RAD that they reveal. Uber has included page 169 of Exhibit D in the joint public filing. Uber acknowledges that some additional portions of these depositions transcripts were admitted in connection with the Dean trial. However, because those portions were already filed publicly, there is no need to refile those portions in connection with the May 28, 2026 joint public filing, given that they were superfluous to the Joint PTO 8 Letter. Should the Court disagree that these transcripts should be sealed as superfluous, Uber respectfully requests an opportunity to propose redactions.

[12] The information in this category that Uber seeks to maintain under seal is the following: Weiner Rep. ¶¶ 89-90, 101, 116-117, 122-23 & n.146, 269(e); Weiner Dep. 243:9-13, 243:25-244:21, 244:18-21; 245:19-20, 245:25-246-2, 324:9-11, 328:5, 328:13-14, 403:4; Chandler Rep. ¶¶ 147, 167, 178; *id.* Figures 49, 52, 60, 62; Keller Rep. ¶ 59.

JOINT OMNIBUS MOTION TO SEAL        Case No. 3:23-md-03084-CRB (LJC)

many specific dollar amounts, as well as internal considerations and discussions about how to maintain and operate the business. 1/13/2026 Brown Decl. (ECF 4992-25) ¶¶ 11-13.[13] In particular, Uber seeks to seal (1) information concerning Uber's insurance costs, as well as strategies related to lowering those costs; (2) information concerning Uber's survivor resources program, its costs, and the methods through which support funds were distributed to survivors; and (3) financial information, costs, goals, and projections concerning Uber's operations, strategies, and key performance indicators. *Id.* Disclosure of Uber's financial information and priorities, resource allocation decisions, budgeting numbers, and strategies would provide competitively sensitive information to Uber's competitors that they could use to gain insight into Uber's allocation of resources, financial position and priorities, and operational strategies, providing competitors with an unfair competitive advantage over Uber. *See E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "financial investment and budget" information under compelling reasons standard); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy, business transactions, corporate structure, and finances"); *Aerodynamics Inc. v. Caesars Ent. Operating Co.*, No. 2:15-CV-01344-JAD-PAL, 2015 WL 5679843, at *14 (D. Nev. Sept. 24, 2015) (sealing budget analysis and financial model under compelling reasons standard).

3.      Information Regarding Executive Compensation.

Uber seeks to seal the confidential compensation information of one of Uber's executives. 1/13/2026 Brown Decl. ¶ 14 (discussing Ex. 50 to Pl. Opp. to Uber MIL at 13:12). Unlike the compensation of the other executives, which Uber does not seek to seal, this executive's compensation is not publicly reported. Courts have routinely sealed such information. *Gomo v. NetApp, Inc.*, No. 17-CV-02990-BLF, 2019 WL 1170775, at *2 (N.D. Cal. Mar. 13, 2019) (sealing, under compelling interest

---

[13]    The information in this category that Uber seeks to maintain under seal is the following: Ex. 3 to Pl. Opp. to Uber MIL at UBER_JCCP_MDL_000475322, 475425-26, 475436-37, 475442-43, 475445-47, 475449, 475452; Ex. 4 to Pl. Opp. to Uber MIL at 12, 20, 46; Ex. 5 to Pl. Opp. to Uber MIL at UBER_JCCP_MDL_000118664.0001, .0005, .0007-.0009, .0011, .0013, .0023, .0025-.0027; Ex. 17 at 61-62, 74, 76-81, 84-86, 88, 90-91, 94, 124-131, 199-204, 206, 223, 225, 237-239, 258, 342, 344, 354, 356, 372-373, 381, 383, 388, 393, 401, 405, 413-414, 421, 423-424, 430, 432-33, 443-45, 451, 453-54, 461-462, 464, 471-73, 478, 480-481, 487-488, 490, 495-97, 505, 507, 509, 515-16, 518, 526-27, 529, 535-37, 543-44, 546, 551-53, 555-57, 561-64, 575-77, 582-84, 603-605, 609-10, 612, 616-18, 622-24, 629-31, 635-37, 645-647, 654-56, 662-64, 670-672, 676-77, 679, 683, 711-16, 725-29, 887, 895, 909, 934.

14

standard, "non-public, confidential information regarding Defendant NetApp's compensation plan and executives"); *Kenny v. Pac. Inv. Mgmt. Co. LLC*, No. C14-1987 RSM, 2018 WL 3328224, at *2 (W.D. Wash. July 6, 2018) (compelling reasons to seal individual compensation amounts).

4.    Information Concerning Uber's RideCheck Technology.

Uber seeks to seal limited information concerning the functioning of its RideCheck technology, as well as features that it may add to that technology, including a feature it is currently piloting. 12/23/2025 Wong Decl. ¶ 19 (discussing Dean MSJ Opp. Ex. 54).[14] Information concerning the function of RideCheck and concerning Uber's consideration and analysis of a new feature is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public. *Nautilus Biotechnology, Inc. v. SomaLogic, Inc.*, No. 23-CV-06440-BLF, 2024 WL 4894852, at *2 (N.D. Cal. Nov. 26, 2024) (finding compelling reasons to seal "information that would reveal [party's] unreleased platform information"); *Exeltis USA Inc.*, 2020 WL 2838812, at *2; *Laatz v. Zazzle, Inc.*, No. 22-CV-04844-BLF, 2025 WL 405702, at *3 (N.D. Cal. Feb. 5, 2025) (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard). Moreover, the Court previously granted Uber's motion to seal certain confidential information concerning its RideCheck technology in connection with the WHB 823 summary judgment briefing. *See* ECF No. 6012.

5.    Redactions Concerning Safety Feature Performance and Experimentation.

The redacted materials contain internal assessments of Uber's Real Time ID ("Mutombo") safety product. 11/21/2025 Brown Decl. ¶ 12 (discussing Weiner Rep. Ex. C ¶ 13). They also include information concerning Uber's methodology for conducting product testing and experimentation, as well as the results of those tests and experiments. *Id.* Publicly disclosing this information would provide Uber's competitors with the benefits of the insights of Uber's proprietary research, assessments, product testing, and experiments without investing the same resources or efforts. Uber's competitors could use this information

---

[14]    The excerpts of Exhibit 54 the Uber seeks to maintain under redaction are as follows: 25:5-6, 25:11-12, 25:15-18, 25:24-25, 26:9-15, 103:7-8, 103:10-11, 103:13-15, 104:3, 104:9-19, 104:25. Although Plaintiffs argue that certain aspects of RideCheck have been made public, the specific and narrow information that Uber seeks to seal has not been made public.

15

JOINT OMNIBUS MOTION TO SEAL                              Case No. 3:23-md-03084-CRB (LJC)

to develop strategies and programs to counter, preempt, or differentiate themselves from Uber's initiatives and features. *See CertainTeed Gypsum, Inc.*, 2021 WL 6621061, at *2 (granting motion to seal "company's internal report about the efficacy of the company's products"); *Kowalsky*, 2012 WL 892427, at *4 (granting motion to seal information concerning party's "product testing, development, and evaluation processes").

6.      Information Concerning Uber's Audio Recording Technology and Related Experimentation.

Uber seeks to seal limited information concerning its audio recording feature, including a detailed and technical discussion of experimentation with that feature. 1/6/2026 Brown Decl. (ECF No. 4926-11) ¶ 11 (discussing Ex. 7 to Pl. MIL). Information concerning this technology and experimentation is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public. *Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *Kowalsky*, 2012 WL 892427, at *4 (granting motion to seal information concerning party's "product testing, development, and evaluation processes").

7.      Redactions Concerning an Unlaunched Uber Initiative.

Uber seeks to redact portions of the Sawyer Report that describe Uber's strategies and analysis concerning an unlaunched new initiative. 12/15/2025 Declaration of Greg Brown ("12/15/2025 Brown Decl.") (ECF No. 4676-2) ¶ 12. Because Uber has not yet publicly announced its plans regarding whether or not to launch this feature, information concerning Uber's consideration and analysis of this feature is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public. *Nautilus Biotechnology, Inc.*, 2024 WL 4894852, at *2 (finding compelling reasons to seal "information that would reveal [party's] unreleased platform information").

8.      Risk Assessments.

The redacted materials contain confidential information about Uber's internal risk assessment approaches, including the factors and data inputs to a particular risk assessment model and methodology. 11/21/2025 Brown Decl. ¶ 13 (discussing Chandler Rep. ¶ 161). Public disclosure of the information

16

would cause competitive harm to Uber by providing its competitors with confidential information regarding Uber's internal approaches to risk assessment, which competitors could utilize and implement to their own competitive advantage. Additionally, disclosure would cause competitive harm to Uber by providing its competitors with confidential information regarding the data points and specific factors that Uber uses to create new metrics, which Uber's competitors could leverage against Uber to its competitive disadvantage. *See In re Qualcomm Litig.*, No. 3:17-CV-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy").

9.      Research and Analyses Concerning Internal Uber Data.

Uber's internal data and its analyses of that data are core to its business operations and strategies. 12/29/2025 Decl. of Greg Brown ("12/29/2025 Brown Decl.") (ECF 4848-4) ¶ 11. As one of Plaintiff's experts stated, "Uber says that data is 'crucial for [its] products' and that technology is 'at the heart' of its safety approach." Keller Rep. ¶ 59 (ECF 4470-17) (internal footnote omitted; alteration in Keller). Accordingly, Uber seeks to redact information concerning its internal data analyses. Some of the analyses that Uber seeks to redact discuss how various characteristics of rides correlate to sexual misconduct. 12/29/2025 Brown Decl. ¶ 11.b.[15] The documents concerning these analyses also discuss particular strategies that can be deployed to reduce sexual misconduct. *Id.* Uber also seeks to redact additional information concerning research, analyses, and experimentation involving its internal data and products, encompassing both specific analyses and information about how Uber conducts its proprietary analyses, research, and experiments, and the tools that it uses to do so. 1/13/2026 Brown Decl. ¶ 15 (discussing Ex. 3 to Pl. Opp. to Uber MIL at UBER_JCCP_MDL_000475393, 475396, 475405, 475411, 475413, 475418, 475422, 475429, 475469-76, 475479-80, 475483-85). Uber also seeks to seal information concerning a particular proprietary machine learning model. *Id.* (discussing Ex. 17 to Pl. Opp. to Uber MIL at 100-105). Uber, like other companies, closely guards these data, analyses, and strategies, which would be valuable to Uber's competitors, who could gain insight into those data and copy those analyses and apply

---

[15]      The redactions on this topic that Uber continues to seek after the *Dean* trial are the following: Dean MSJ Opp. Ex. 24 at UBER_JCCP_MDL_001741625-626, -628-631, -633-636, -646, -648-651, -654-663, -668-669; Dean MSJ Opp. Ex. 52 at 22-24, 33.

17

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

them to their own data. *See DeMartini v. Microsoft Corp.*, No. 22-CV-08991-JSC, 2023 WL 4205770, at *4 (N.D. Cal. June 26, 2023) (finding compelling reasons to seal "confidential and internal data, including platform user and franchise data, and economic and commercial analysis that are not publicly accessible outside the company"); *Daybreak Game Co., LLC v. Takahashi*, No. 25-CV-01489-BAS-BLM, 2025 WL 3552744, at *3 (S.D. Cal. Dec. 11, 2025) (compelling reasons to seal user engagement metrics, which are the sort of "confidential business information that companies guard closely"); *Craig v. Am. Tuna, Inc.*, No. 22-CV-473-RSH-MSB, 2023 WL 8242460, at *3 (S.D. Cal. Nov. 28, 2023) (finding compelling reasons to seal "aggregated data and analysis that could be used 'as sources of business information that might harm [Defendant's] competitive standing'") (citation omitted); *Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research"). Further, the competitors could copy Uber's strategies derived from the data. *See In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy"); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy").

10.     Driver Screening and Retention.

The redacted materials contain confidential internal details about Uber's driver screening and retention policies, including concerning the impact of screening procedures on risk assessment and compliance, the economic impact that each driver has on Uber, internal strategies for retaining drivers, and internal evaluations and audits of Uber's screening procedures. 11/21/2025 Brown Decl. ¶ 14 (discussing redactions to the Tremblay Report at 23 and the Cameron Rebuttal at 48-49, 52, 57); 12/15/2025 Brown Decl. ¶ 11 (discussing redactions to the Sawyer report at 30-32, 38, 48-49, 51, 54).[16] Disclosure of this information would result in competitive harm to Uber by providing its competitors with confidential information that Uber's competitors could leverage against Uber to its competitive disadvantage. Information concerning how Uber is obtaining and retaining drivers is of great interest to

---

[16] Uber also seeks to redact portions of Exhibit A to Plaintiff's Opposition to Motion to Quash Trial Subpoenas. Ex. A at 421:8-15, 421:20-23, 424:1-7. 424:10-17, 424:25-425:2, 425:7-11. The excerpts that Uber seeks to redact discuss a confidential internal analysis of Uber's driver screening procedures.

JOINT OMNIBUS MOTION TO SEAL          Case No. 3:23-md-03084-CRB (LJC)

Uber's competitors in screening and retaining their own work force and could be leveraged against Uber to its competitive disadvantage. *Lawson*, 2017 WL 2951608, at *10 (sealing information that "discuss[es] how drivers receive orders and how Grubhub manages drivers"); *Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard).

### 11. Cerebro and uSights.

The redacted materials include details concerning Cerebro and uSights, two iterations of an in-house psychometric assessment that could be used in driver screening. 11/21/2025 Brown Decl. ¶ 15 (discussing Valliere Rep. at 24-25; Orchowski Dep. 170:8-20, 171:2-5). They include information about Uber's testing and results, as well as its strategy concerning the deployment of those tools. *Id.* Public disclosure of this competitively sensitive information would harm Uber, because the information could be leveraged by Uber's competitors in developing their own psychometric screening tools and strategies. *See CertainTeed Gypsum, Inc.*, 2021 WL 6621061, at *2 (granting motion to seal "company's internal report about the efficacy of the company's products"); *Kowalsky*, 2012 WL 892427, at *4 (granting motion to seal information concerning party's "product testing, development, and evaluation processes").

### 12. Deactivation and Investigation Processes.

The redacted materials include confidential details concerning Uber's deactivation and investigation procedures following its receipt of various incident reports, including screenshots of Uber's "Investigations Workbench," descriptions of other tools used in investigation and deactivation, and discussion and evaluation of Uber's deactivation decisions. 11/21/2025 Brown Decl. ¶ 16; 1/6/2026 Brown Decl. ¶ 12; 1/13/2026 Brown Decl. ¶ 16.[17] Unsealing these documents would result in competitive harm to Uber because Uber's main competitors could replicate Uber's investigative and deactivation processes, which Uber has invested significant human and financial capital to develop and operationalize. *Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical

---

[17] The redactions on this topic that Uber continues to seek are the following: Thomas Rep. ¶¶ 64-65; Valliere Rep. at 8-9; Keller Rep. App'x D Figures 1, 6, 10-11, 15-16, 20-21, 25; Cameron Rebuttal at 58; Ex. 8 to Pl. MIL at 229:2-10, 229:12-13, 229:18-22, 230:18-25; Ex. 19 to Pl. Opp. to Uber MIL at 12, 14-15, 17, 26; Ex. 20 to Pl. Opp. to Uber MIL at 10, 15-23, 26.

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

operations, technical search processes, [and] internal business processes" under compelling reasons standard); *E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc.*, 2016 WL 7911651, at *4 (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products"); *Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal "'detailed, non-public information' regarding [party's] 'internal data systems, processes, and practices,' . . . consisting primarily of the layout, organization, and content of [party's] 'internal computer system'") (citation omitted); *id.* (compelling reasons existed to seal exhibit where public dissemination "'may allow Defendants' competitors to reap the benefit of the [content] without having to incur the costs associated with developing the[m]'") (citing *Esquivel v. Bank of Am., N.A.*, No. 2:12-CV-02502-GEB, 2015 WL 4224712, at *4 (E.D. Cal. July 10, 2015)). Moreover, revealing Uber's investigative and deactivation processes to the public could allow third-party users of the Uber app to undermine and exploit Uber's methodologies for investigating and deactivating riders and drivers, including through fraudulent activity, compromising safety to the detriment of users and drivers. *Ashcraft*, 2019 WL 12518367, at *2 (sealing information that "identity thieves could use [ ] to develop methods to circumvent Experian's protections").

The Court has previously granted Uber's motions to seal similar information concerning its investigation and deactivation policies. *E.g.*, ECF No. 6171 (granting Uber's motion to seal at ECF No. 5826); ECF No. 6075 (granting Uber's motion to seal at ECF No. 5639). The Court should similarly grant Uber's request to seal such information here.[18]

   13.  Survey Data.

---

[18] *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557-PCP, 2025 WL 1872974, at *3 (N.D. Cal. May 9, 2025), cited by Plaintiffs, is inapposite. In that case, Meta did not demonstrate how the information ("categories of user data Meta allegedly collects from various tax websites, internal Meta communications, and the name of a team within Meta") could be used by bad actors. Here, in contrast, it is obvious that providing bad actors with information about how Uber investigates and deactivates users would allow them to circumvent Uber's policies, or manipulate those policies to their advantage. Uber should not be required to provide a roadmap to such circumvention in order to justify its sealing requests.

The redacted materials describe the results of Uber's confidential research studies and survey data reflecting user safety experiences, perceptions, and beliefs. 11/21/2025 Brown Decl. ¶ 17 (discussing the Chandler Rebuttal ¶¶ 70, 72-74; Figures 2[19]-5); 1/13/2026 Brown Decl. ¶ 17 (discussing Ex. 3 to Pl. Opp. to Uber MIL at UBER_JCCP_MDL_000475467).[20] In addition, Exhibit 2 to Uber's *Daubert* Opposition provides a detailed description of methodology used for a particular survey, including the specific questions and the order in which they were presented to the survey takers. *See* 12/15/2025 Brown Decl. ¶ 10. Exhibit 3 to Uber's *Daubert* Opposition provides information and analysis concerning the results of that same survey.[21] *Id.* Publicizing any of this survey information could put Uber at a competitive disadvantage by providing Uber's competitors with the benefits of Uber's proprietary research insights, enabling competitors to modify or tweak their own safety experiences by free-riding on Uber's investment of time and financial resources. The information could also allow Uber's competitors to assess weak spots in the Uber experience from users' perspectives, and tailor their own products to differentiate themselves or compete with Uber in those specific areas. *See Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research"); *Craig v. Am. Tuna, Inc.*, No. 22-CV-473-RSH-MSB, 2023 WL 9503374, at *2 (S.D. Cal. Dec. 13, 2023) (finding compelling reasons to redact "data from customer surveys concerning the information customers rely on in making a purchasing decision"). There are also compelling reasons to seal the information concerning Uber's survey methodology, since disclosure of the methodology would "allow competitors to replicate the survey to [Uber's] competitive disadvantage." *Id.* at *3.

14.    Uber's Relationships with Non-Profit Organizations.

Uber seeks to seal certain information that divulges its strategies involving and relationships with non-profit organizations. 11/21/2025 Brown Decl. ¶ 18; 12/15/2025 Brown Decl. ¶ 13; 1/6/2026 Brown

---

[19]    The Chandler Rebuttal has two figures labeled 2, and Uber is seeking to redact both of them.

[20]    Uber is no longer seeking to redact p. 7 of Exhibit 4.

[21]    Uber also seeks to redact certain limited portions of its opposition brief that likewise discuss these survey results. In addition, Uber seeks to seal certain pages of Ex. 55 to Plaintiff's Motions in Limine, which discusses confidential consumer research, and Uber's strategies related to the Safety Report in connection with that research. QS_00000073-76.

21

Decl. ¶ 13.[22] Publicizing this information would provide Uber's competitors with valuable confidential information about Uber's confidential strategies in this area, which the competitors could potentially leverage in competing with Uber and use in their own relationships with non-profits.

Judge Cisneros granted Uber's motion to seal these redactions (as well as additional redactions that Uber is no longer pursuing given what was made public at the *Dean* trial) under a good cause standard, finding that the redactions "generally relate to specific internal documents, internal discussions of specific initiatives with specific partners, and monetary values of contributions, all of which might reveal corporate strategy in a manner that might cause Uber competitive harm or impair its relationships with nonprofit partners." ECF 4701 at 21. These same considerations support sealing Uber's requested redactions under a compelling reasons standard. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2015 WL 12976921, at *3 (N.D. Cal. Mar. 31, 2015) (granting motion to seal, under compelling reasons standard, "information about [party's] consulting relationships and other confidential agreements").[23]

15.    Data re Reports of Sexual Assault/Sexual Misconduct.

The redacted materials contain certain raw data (as well as calculations using that data) from Uber's internal systems, in particular Uber's Flack system. 11/21/2025 Brown Decl. ¶ 19; 1/13/2026 Brown Decl. ¶ 18.[24] Certain top-level raw data (total annual counts of sexual assault and sexual

---

[22]    Specifically, Uber seeks to seal the following portions of the Drumwright Supplemental Report: ¶¶ 6-7, 14-15, 17-19, 31, 34, 36, 55 (and some accompanying footnotes). The November 21 and December 15 Brown declarations do not discuss the Drumwright report, but instead address Uber's compelling interest in sealing similar discussions of Uber's relationships with non-profits in the Valliere deposition and Valliere Supplemental Report (neither of which Uber seeks to seal given what was made public at the *Dean* trial). Uber's previous motions to seal the Rule 702 materials did not include the Drumwright Supplemental Report, because Plaintiff cited it in, but did not attach it to, her Opposition to Defendants' Motion to Exclude Expert Testimony. In addition, Uber seeks to seal portions of Exs. 29, 30, and 31 to Plaintiffs' MIL.

[23]    Uber similarly seeks to seal certain similarly confidential and sensitive information concerning its relationship with one of its investors. Ex. 59 to Pl. MIL at 1-2, 5.

[24]    The data that Uber continues to seek to redact after the *Dean* trial are the following: Chandler Rep. ¶ 200; *id.* at Figures 63-67, 76-78; *id.* at App'x D ¶ 17; *id.* at Data Tables 1-3; Chandler Rebuttal at 21 n.65; Stodden Rebuttal ¶¶ 8.f, 9, 14 & nn.20-22, 17, 22, 29.c, 35, 44, 47, 58.a.-c. & nn.138 & 142; *id.* at Figures 2A & 2B; Keller Rep. ¶¶ 9.1, 9.2, 33, 35, 43-43.7 & nn. 62-64, 45-49, 78, 80; *id.* at Table 1; *id.* at Figures 2, 4, 8; Keller Dep. 229:6, 229:8, 229:10, 229:13, 260:22, 261:19, 264:10-11; Valliere Rep. at 17; Incident Report Classification at 6-73 (rows containing category data); Ex. 22 to Pl. MIL Opp. at 2-3.

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

misconduct reports) from Uber's internal systems have been made public through the JCCP trial and now the *Dean* trial, as well as prior to that via a leak of sealed JCCP records to the *New York Times* in violation of the Protective Order. Uber is therefore not seeking to seal any of its raw top-level annual data. However, most data concerning the breakdown of those topline numbers into taxonomy categories have not been made public and have instead been kept confidential within Uber. Moreover, these category data (which were produced from Uber's Flack system) are particularly sensitive, because the data reflect not merely how the reports come into Uber or how a human decisionmaker would classify them, but also the logic employed by the Flack system to choose a dominant category and eliminate duplication. In addition to these category data, Uber also seeks to seal certain non-public sensitive data which concern not the number of complaints, but instead the number of drivers about whom Uber received sexual assault or misconduct complaints. The release of these data to Uber's competitors would provide them with insight that they could leverage in competing with Uber.

Importantly, after the top-line annual data in the sealed JCCP records were leaked to a reporter and published in the *Times*, Consumer Attorneys of California ("CAOC"), a plaintiffs' counsel advocacy group with which certain plaintiffs' counsel in this litigation are affiliated, launched "a robust ad campaign" seeking to leverage the *Times*' reporting on the leaked information. *See CAOC Launches New Campaign: Every 8 Minutes*, J. Gossett, CAOC News (ECF 4498-5). The initial version of the ad falsely attributed to the *New York Times* a statistic that "[a] sexual crime was reported to Uber almost every eight minutes." 11/24/2025 Fournier Decl. (ECF 4470-1) ¶ 20. After Uber sent a cease-and-desist letter, the ad was revised to omit that particular false claim. The ad continued to misleadingly conflate Uber's receipt of a report of sexual misconduct or assault with silencing victims, by claiming "every 8 minutes, Uber tries to silence victims." The willingness of the CAOC—a group affiliated with plaintiffs' counsel here— to make these false and misleading statements supports sealing the non-top-level data that is still confidential so as to protect Uber from further libelous statements and further potential contamination of the juror pool. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use

of records to . . . circulate libelous statements") (citing *Nixon*, 435 U.S. at 598); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 n.6 (9th Cir. 2010) (one of the "relevant factors" to consider in determining whether there are compelling reasons to seal a document is "whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes").

Similarly, Uber seeks to seal certain excerpts from the deposition of Dara Khosrowshahi, Uber's CEO. MSJ Opp. Ex. 48 at 235, 277-78.[25] Plaintiffs misleadingly cited these excerpts in support of the proposition that Uber's CEO does not know "whether Uber keeps a count of incidents." MSJ Opp. at 10:26-28. This mischaracterizes Mr. Khosrowshahi's testimony at page 235 (where he immediately clarified in his next answer the difference between tracking the number of *incidents* and the number of *reports of incidents*). And the other excerpt cited by Plaintiffs (277:25-278:5) does not discuss the number of incidents at all. Because the material cited by Plaintiffs does not support the proposition for which it is cited, the only conclusion to be drawn is that Plaintiffs attached these pages to their summary judgment opposition not for any proper legal purpose but instead to introduce protected material into the public record for "scandalous or libelous purposes." *Pintos*, 605 F.3d at 679 n.6.

In opposing Uber's request to seal data, Plaintiffs rely on the Court's statement in *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 789 F. Supp. 3d 760, 770 (N.D. Cal. 2025), where the Court found that the public interest "far outweighs the ambiguous concern that bad actors might misuse the data." Here, there is no ambiguity about bad actors misusing Uber's data, particularly where the JCCP Court found "there appears to be little room for doubt that sealed filings from this proceeding were improperly disclosed to third parties in violation of the protective order." ECF 4470-34 (October 22, 2025 Order). That particular bad actor has never been identified or faced any consequences for that violation. Moreover, the improper disclosure led directly to a highly biased story in the *New York Times* shortly before the first JCCP bellwether trial. And the contents of the story were then further distorted in the misleading ad campaign carried out by the CAOC, which likewise occurred shortly before the first bellwether trial in

---

[25]    Uber is not seeking to redact pp. 110-11 of the deposition, because most of those two pages were admitted as deposition designations during the Dean trial. Plaintiffs therefore cannot rely on those two pages to support their argument that they did not mischaracterize the other pages of Mr. Khosrowshahi's deposition testimony that Uber seeks to seal.

this Court. The only conclusion that can be drawn from this series of events is that, despite Plaintiffs' repeated high-minded invocation of the public interest, their true motivation is to generate scandal and litigate these cases via the media and outside the courtroom. These data and the excerpts from Mr. Khosrowshahi's deposition should therefore remain sealed.[26]

16.    Data Collection, Organization, and Classification.

The redacted materials also contain related information about how Uber's raw data is stored, labeled, organized, and classified, and the fields of information that are maintained by Uber. 11/21/2025 Brown Decl. ¶ 20 (discussing Keller Rep. ¶¶ 18.2, 19.1-19.4; *id.* at App'x A. at ¶¶ 25.2.1-25.2.4, 25.3, 25.4.1-25.4.4, 28.1-28.4, 30, 34-35, 40, 41.1-41.6, 42-43); 1/13/2026 Brown Decl. ¶ 19 (discussing portions of Exs. 3 and 48 to Plaintiff's Opposition to Uber's MIL that Uber seeks to redact). This is also sensitive and confidential information that would be valuable to Uber's competitors to copy in their own data collection, organization, and analysis. *See Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal information about "the layout, organization, and content of [party's] internal computer system" pursuant to compelling reasons standard) (internal quotation marks omitted).

17.    Uber's City-Specific COVID-19 Strategies.

Uber seeks to seal the detailed city-by-city descriptions of its strategies during various stages of the COVID-19 pandemic. 1/13/2026 Brown Decl. ¶ 20 (discussing Ex. 17 to Pl. Opp. to Uber MIL at 748-753, 755-58, 760-67, 783-788, 791-94, 797-802). Although some of these strategies are no longer directly applicable to Uber's current operations, Uber's approach to the pandemic would be of keen interest to its competitors in gaining insight into how to compete against Uber in the current environment and should another acute pandemic situation arise. *See In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy"); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information,

---

[26]    As the *Pintos* case states and contrary to Plaintiffs' argument, courts are concerned not merely about "libelous information," but also the improper use of information for scandalous purposes. *See also Kamakana*, 447 F.3d at 1179 ("improper purposes" include "promot[ing] public scandal"). Moreover, although Plaintiffs rely on the *Kamakana* court's caution that "embarrassment, incrimination, or exposure to further litigation" is insufficient to justify sealing, the court only stated that those concerns were insufficient "*without more.*" *Id.* (emphasis added). Here, Uber has shown "more,"—i.e., the history of improper use discussed above.

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

including non-public information about a company's business strategy….").

18.    Hyperlinks.

Uber seeks to redact internal hyperlinks in certain exhibits. *See* Ex. 3 at UBER_JCCP_MDL_000475436, 475443, 475473, 475485; Ex. 4 at 32-35, Ex. 5 at UBER_JCCP_MDL_000118664.0028; Ex. 6 at UBER_JCCP_MDL_002010063, 2010071-73, 2010077; Ex. 7 at UBER_JCCP_MDL_001319387, 1319397, 1319402-03; Ex. 15 at UBER_JCCP_MDL_003340516, UBER_JCCP_MDL_003340522-23; Ex. 17 at 937; Ex. 35 at UBER_JCCP_MDL_001711889, 1711892. Redacting the hyperlinks is necessary to avoid any inadvertent access to Uber internal documents by unauthorized individuals, who could click on the link and accidentally be granted access by the internal Uber owners of the documents. Redaction of the hyperlinks here does not impair the public right of access, because the hyperlinks themselves do not reveal any substantive information and the documents to which they link are not part of the public record.

19.    Uber's Approach to Sealing Is the Least Restrictive Alternative.

Uber is not seeking to seal almost any of the exhibits in full, but only to redact limited excerpts that are necessary to seal in order to protect Uber from competitive harm. *See Rodman*, 2015 WL 13673842, at *2 (granting motion to seal when company "has proposed to redact only the portions of the documents containing the confidential information"); *In re Qualcomm*, 2017 WL 5176922, at *2 (granting motion to seal when parties sought "to only redact the portions of the filings and the precise exhibits that implicate such confidential business information"). Indeed, many of Uber's requested redactions involve only isolated sentences or even words. With respect to the few documents that Uber is seeking to seal in full under the compelling interest standard, it is because it is impossible to redact the exhibits and still protect Uber's confidential information.[27] Moreover, to the extent information was already made public in connection with the first JCCP bellwether trial, the Dean or WHB 823 trials, or other proceedings, Uber

---

[27]    The only documents that Uber seeks to seal in full under the compelling interest standard are Exhibit 2 to Uber's *Daubert* Opposition, which is a detailed description of Uber's survey methodology and Exhibit 49 to Dean's Opposition to Defendants' Motions in Limine, as to which Uber seeks to seal all substantive portions of a chart. Under the good cause standard, Uber seeks to seal Exhibit E to the Joint PTO 8 Letter Regarding Outstanding S-RAD issues (a brief deposition excerpt) and the full transcripts of two of Sunny Wong's depositions, Exhibits D and F to the same letter, which Uber seeks to seal as superfluous.

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

is also not seeking to protect that information. Thus, Uber's approach is the least restrictive alternative and is narrowly tailored to protect Uber's competitive and other interests.

**C.    Conclusion**

Accordingly, compelling reasons and/or good cause exists for the Court to redact the Exhibits as described above. Uber therefore respectfully requests that the Court order that the redacted Exhibits be maintained on the docket under seal.

27

## III.    PLAINTIFFS' POSITION

### A.    Legal Standard

The party seeking to seal a judicial record bears the burden of overcoming the "strong presumption in favor of access." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quotations and citations omitted). For documents attached to dispositive motions (including *Daubert* motions), "the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Id.* (quotations and citations omitted). "The relevant standard is only met once a party provides compelling reasons, supported by facts, to explain why the risk of harm that spurred the confidential designation overcomes the traditional presumption of public access." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 789 F.Supp.3d 760, 766 (N.D. Cal. 2025). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulates the factual basis for its ruling without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). This must be done "on a case-by-case, document-by-document level" showing "why each exhibit and document presents the harm that [the moving party] says it does." *Avila v. Ford Motor Co.*, --- F.Supp.3d ---, 2026 WL 508364, at *8 (N.D. Cal. Feb. 24, 2026).

For documents attached to non-dispositive motions, the moving party must establish "good cause" to seal the requested documents or redactions. *Kamakana*, 447 F.3d at 1180. To establish "good cause," the moving party must demonstrate "that specific prejudice or harm will result" absent sealing. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (quotations omitted).

### B.    Argument

Uber failed to meet its burden of establishing compelling reasons or good cause, as applicable, to seal the proposed exhibits and redactions. Uber has not established the requisite prejudice or harm and, for those documents attached to dispositive motions, it has also failed to establish that any such harm outweighs the public's interest in the documents. *Kamakana*, 447 F.3d at 1179–80. Regardless of

whether the documents are attached to dispositive or non-dispositive motions, Uber had to do more than merely allege "competitive harm" without showing *how* it would be harmed. *Ochoa v. McDonald's Corp.*, 2015 WL 3545921, at *1–2 (N.D. Cal. June 5, 2021). [28] Having failed to meet this burden, Uber's requests should be denied. Plaintiffs, on the other hand have established that there are compelling reasons to seal personally identifiable information and have narrowly tailored their requested redactions to omit substantive information and information already disclosed. Plaintiffs' requests should therefore be granted.

### 1. Redactions Concerning Uber's S-RAD Technology

Uber asks the court to redact (or seal in their entirety) materials related to Uber's S-RAD technology that were attached to dispositive and non-dispositive motions under the compelling reasons and good cause standards, respectively. Uber fails to meet the applicable standards because it cannot show that S-RAD's status as a "closely held" Uber trade secret *before* the *Dean* trial affords trade-secret protections to S-RAD materials across the board after information related to the purpose, operation, and variables used in the S-RAD model have since been publicized.

For S-RAD materials attached to dispositive motions,[29] the Court should be especially circumspect. S-RAD, including its development, operation, and implementation, is "directly relevant to the merits of the case" and is therefore "at the heart of the interest" of the public." *Kamakana*, 447 F.3d at 1179–80 (9th Cir. 2006). To be clear, Uber must do more than simply claim competitive harm; it must demonstrate with specific facts that competitive harm will result *and* that it outweighs the public interest. *Id.* It has not done so. In other words, even if documents concern the defendant's "internal operations," they must still provide "specific factual findings … that outweigh the general history of access and the

---

[28] Uber overstates the contents of its declarations. Rather than going document-by-document, as the law requires, *Avila*, 2026 WL 508364, at *8, Uber relies on declarations its company witnesses submitted months in advance of the Dean trial. These declarations include long string cites to documents (many containing multiple redactions) ostensibly belonging to a specific category without regard to whether circumstances have changed since the *Dean* trial. These broad-brush declarations are not as contemplated by this Circuit's courts. *Id.*

[29] Weiner Rep. ¶¶ 140-141, 156; Keller Rep. ¶¶ 50, 56, 64, 68, 72; *id.* n.166; *id.* Table 3 (non-Dean columns); *id.* App'x D at 7 (Table 1); *id.* App'x F; Stodden Rebuttal Rep. ¶ 44.

29

public policies favoring disclosure." *Avila*, 2026 WL 508364, at *8 (quotations omitted) (denying motion to seal materials describing Ford's engineering processes showing how products were designed and developed); *In re Xyrem*, 789 F.Supp.3d at 765 (explaining that even if materials "could be used in business, that does not make it susceptible to becoming a vehicle for improper purposes" where the data "is highly relevant to material issues of triable fact."). Uber failed to make a "case-by-case, document-by-document" showing that it would suffer harm if such redactions were made public and that such harm would outweigh the public's own interest in the materials. *Avila*, 2026 WL 508364, at *8.

The materials consist of test results showing, for example, the model's ability to predict a percentage of incidents;[30] Uber's goals for development of S-RAD, including fairness and economic considerations;[31] and information about how S-RAD scores and trigger rates are calculated.[32] However, Uber cannot establish that it would experience competitive harm if the materials were disclosed because information about Uber's S-RAD testing processes, goals for launching S-RAD, S-RAD variable inputs, and methods for calculating S-RAD scores and trigger rates have already been made public. [33] Most of the material Uber seeks to redact concerns the specific percentages at which the model was able to predict incidents during testing.

Uber cites a series of cases in which business metrics were sealed. *See Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020); *CertainTeed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, 2021 WL 6621061, at *2 (N.D. Cal. Dec. 13, 2021); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *4 (N.D. Cal. Mar. 14, 2012); *Williams v. Apple, Inc.*, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021). To be clear, *none* of these cases stated that test results or other business metrics are automatically sealable. Instead, in each case the court noted that the moving party showed *how* the documents could give an advantage to competitors, something Uber did not do here.  It is well-established that "the mere fact that information discloses … information about its products and design or testing of products … is insufficient." *A.B. v. Pacific Fertility Ctr.*, 441 F.Supp.3d 902. 908

[30] For example: Keller Rept. ¶¶ 50, 56, 68, 72

[31] For example: Keller Rept. ¶ 64, 72 n. 166, Weiner Rept. ¶ 156.

[32] For example: Keller Rept. App'x F; ECF 4008-5; ECF 4008-11.

[33] *Compare* Keller Rept. ¶ 50, App'x F, *and* Weiner Rept. ¶ 156, 140–141 *with e.g.*, *Dean* Trial Tr. 2846:6-2847:8, 2850:9-2851, 2128:1-2131:4; P-01366, P-01681, P-01630, P-01701.

JOINT OMNIBUS MOTION TO SEAL                                     Case No. 3:23-md-03084-CRB (LJC)

(N.D. Cal. 2020). Here, Uber failed to provide the required "specific facts," showing *how* its competitors would use the information to its disadvantage. *See Flodin v. Ctrl. Garden & Pet Co.*, 2024 WL 2190145, at *2 (N.D. Cal. (April 8, 2024) (denying motion to seal test results where defendant failed to articulate how disclosure of those results would result in competitive harm); *see also Tortilla Factory, LLC v. United Natural Foods, Inc.,* at *2 (C.D. Cal. June 10, 2021) (denying motion to seal test results because disclosure of test results would not result in competitive harm); *Ochoa*, 2015 WL 3545921, at *1–2 (denying motion to seal details of defendant's in-store processor system features). This is not the kind of information that could cause Uber competitive harm: one cannot reasonably conclude Uber's competitors could reverse-engineer S-RAD if they knew that, several years ago the model was predicting sexual assaults at a particular rate or that (like most businesses) Uber used "marketplace metrics" to evaluate its performance.

Uber also asks that Exhibits D and F to the Joint PTO 8 Letter regarding S-RAD be sealed almost in their entirety.  The Court should disregard Uber's attempt to upend the burden on a motion to seal. As the moving party, Uber bears the burden of establishing that there is "good cause," or, in other words, that it will suffer "prejudice or harm," if the materials are not sealed. *See Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D.  Cal. 2015). Sealing is not automatically warranted simply because the transcripts were filed in their entirety and, contrary to Uber's mischaracterization, the Court's prior decision to grant an unopposed motion to seal an entire transcript does not create a different rule. *See* ECF 3996.

Plaintiffs' position in the Joint PTO 8 Letter Regarding S-RAD concerned inadequate deposition testimony on the subject to date. To support this position, Plaintiffs produced Mr. Wong's deposition in its entirety so the Court could see that "while his previous testimony was lengthy, it was either incomplete, equivocated, or contradictory." ECF 4009 at 5 (citing Ex. F). The Court did review this transcript and cited it (also generally) in its Order. *See* ECF 4060 at 8. Therefore, this is not a case like *Marks v. Crunch San Diego, LLC*, 2014 WL 12508596, at *2 (S.D. Cal. July 25, 2014) or *Rhino Metals, Inc. v. Sturdy Gun Safe, Inc.*, 2022 WL 657052, at *18 (D. Idaho Mar. 4, 2022), in which the testimony to be sealed was never cited in the briefing. Nor is this a case like *Certified Nutraceuticals, Inc. v. Clorox Co.*, 2020 WL 4339489, at *6 (S.D. Cal. July 28, 2020), in which the testimony to be sealed was not relevant to the court's determination. Here, the materials were specifically considered in the court's determination.

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

Therefore, the court should deny Uber's request to seal Exhibit D at 169:4-13; 225:12-16 (in addition to 19:2-22:16) and Exhibit F.

### 2. Redactions Concerning Uber's Financial Information and Strategic Resource Allocation and Prioritization

Uber's request to seal information related to its insurance costs and strategies; its survivor resource program; and its costs, goals, and projections for strategies, including key performance indicators (KPIs) should be rejected on two grounds. First, Uber does "not flesh out how the fact that" the materials contain financial information "amounts to a compelling reason to seal it." *In re Xyrem*, 789 F.Supp.3d at 770 (denying motion to seal financial information including long-term pricing forecasts). Uber merely makes the broad and unsupported allegation that if financial information were public, its competitors would obtain some sort of unspecified advantage.[34] Uber's reliance on *E.W. Bank v. Shanker*, 2021 WL 3112452, at 2–3 (N.D. Cal. July 22, 2021) and *Aerodynamics Inc. v. Caesars Ent. Operating Co.*, 2015 WL 5679843, at *14 (D. Nev. Sept. 24, 2015) is misplaced. Both *E.W.* and *Aerodynamics, Inc.* were misappropriation of trade secrets cases in which the information to be sealed had already been used to harm the plaintiffs (both of which had unique business enterprises) competitively, including by replicating their business or threatening them.[35] In both cases, the risk of competitive harm was evident because it had already happened. Here, Uber does not identify any potential competitive harm that will result from disclosure of financial information from years ago beyond offering vague speculation that does not meet the compelling reasons standard. Uber therefore falls short of meeting its burden. *Ochoa*, 2015 WL 3545921, at *1 ("An unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient") (quotations omitted).

---

[34] *Bold Ltd. v. Rocket Resume, Inc.*, 2024 WL 1329921 (N.D. Cal. Mar. 27, 2024) is unhelpful. While the court may have had the benefit of the (now-sealed) materials in order to assess the potential for competitive harm, the order does not state what about the materials would render their release competitively harmful. *See generally id.* Since business information is not *per se* sealable, Uber must do more. *See A.B.*, 441 F.Supp.3d at 908.

[35] While Uber counters that the courts in *E.W. Bank* and *Aerodynamics, Inc.* "did not base their sealing decisions" on the fact that information had already been misappropriated, the courts in those cases did not provide any detailed information of how the information at issue could be used to cause competitive harm to those businesses. *See E.W. Bank*, 2021 WL 3112452, at 2–3; *Aerodynamics, Inc.*, 2015 WL 5679843, at *14. However, neither *E.W. Bank* nor *Aerodynamics, Inc.* stands for the proposition that business information is *per se* sealable. *Id.*

JOINT OMNIBUS MOTION TO SEAL                                   Case No. 3:23-md-03084-CRB (LJC)

Second, "the public interest in such materials … far outweighs the ambiguous concern that bad actors might misuse the data." *In re Xyrem*, 789 F.Supp.3d at 770 (denying motion to seal settlement terms, negotiations, and strategies); *see also id.* at 771 (denying motion to seal data that "reflects the totality of ESSDS' financials noting that even if the movant's concerns satisfied the compelling reasons standard "it would not outweigh the public interest in this litigation and the justice system more generally."). In other words, the Court should deny Uber's motion as to these materials because it has failed at both steps of the analysis: it has not articulated how, specifically, it will be harmed and it has not demonstrated that this (unspecified) harm outweighs the public's own interest in understanding the role Uber's financial prioritization of growth over safety—a central issue in this litigation—played in creating the risk environment that gave rise to plaintiffs' sexual assaults.

### 3. Information Concerning Uber's RideCheck Technology

Material related to Uber's RideCheck feature[36] need not be sealed because the purpose and functionality of the feature, including the number of minutes to trigger a "ride check" under various circumstances has already been publicly disclosed by Uber in its safety marketing[37] and at the *Dean* trial.[38] The Court's decision to seal other material on a similar issue is not dispositive because that information has not been made public.

### 4. Redactions Concerning Safety Feature Performance and Experimentation

Uber does not advance "compelling reasons" to seal materials related to RealTime ID (Motumbo). Weiner Rept. Ex. C ¶ 13. Uber asserts that these materials concern details about Uber's process for product testing and experimentation. However, Uber's own corporate witness provided a detailed breakdown of this process during the *Dean* trial, *see Dean* Trial Tr. 2983:11–2986:14, 2990:20–2991:16, and Uber cannot realistically claim that having a small group of its employees beta test a software feature is a "proprietary" testing process, nor that disparaging remarks that the product is ▮▮▮▮ constitute product evaluations Weiner Rept. Ex. C ¶ 13. This information should not be sealed.

---

[36] While addressed in Uber's argument, Plaintiffs do not oppose Uber's redactions to material related to a RideCheck feature Uber is currently piloting.

[37] *See* https://www.uber.com/us/en/newsroom/ridecheck/

[38] *See Dean* Trial Ex. P-01330; P-01447.

JOINT OMNIBUS MOTION TO SEAL                                   Case No. 3:23-md-03084-CRB (LJC)

### 5. Risk Assessments

The court should deny the request to seal redactions related to "risk assessments." Uber's feeble attempt to draw comparisons to *In re Qualcomm Litig.,* 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) falls flat. That case involved trade secrets. *Id.* Here, the risk assessment information includes: (1) a reference to a single data input of the S-RAD model, which has already been publicized at the *Dean* trial, *compare* Chandler Rept. ¶ 161 *with Dean* Trial Tr. 2123:1-10, 2180:7-19; P-01682, and (2) references to Uber's use of common business practices (of which Uber's competitors are certainly aware) like mix-adjusted metrics and KPIs. Unlike the data in *In re Quallcomm*, this information is not sealable.

### 6. Research and Analyses Concerning Internal Uber Data

The Court should decline Uber's request to seal redactions to Exhibit 52 to Plaintiff's Opposition to Uber's Motion for Summary Judgment. This exhibit is a slide deck titled "Sexual Misconduct Policy Revamp Building Blocks," and details the rationale behind Uber's update to its sexual misconduct policy in 2017. *See* Ex. 52 to Dean MSJ Opp at 3. The data Uber asks the Court to redact from this slide deck is of central importance to understanding this proceeding: the slides show the actual data analysis behind predictors of sexual assault and misconduct tickets—and explain what they mean. *See id.* at 22 (explaining what each one-unit increase means for the data with respect to 1-star ratings). Therefore, this data will help the public understand *both* the predictors of sexual assault and misconduct on Uber's platform *and* the basis for Uber's decision to craft its sexual misconduct policies in the way that it did, which are issues at the heart of the *Dean* trial and upcoming bellwether trials.

The Court should likewise decline Uber's request to seal redactions to Exhibit 17 to Plaintiffs' Opposition to its Motions in Limine. Even operating under the more lenient "good cause" standard, Uber failed to make a particularized showing of prejudice or harm. *In re Roman Catholic Archbishop*, 661 F.3d at 424. Uber makes only vague allegations that its competitors will leverage information about sexual assault predictors it identified against it, though it fails to articulate how information about identification of sexual assault predictors that can be used to make ridesharing safer for everyone will harm Uber.

This is not a case like *Craig v. American Tuna, Inc.* The "aggregated data and analysis" in that case would be useful to competitors because it detailed "longitude and latitude at different catch locations" for the defendant's commercial fishing operation. 2023 WL 8242460, at *3 (S.D. Cal. Nov. 28, 2023).

34

The data at issue in Exhibit 52, relates to identification of sexual assault risk factors and, consequently, the safety of the public.  Nor is the data about the risk of Uber passengers being sexually assaulted anything like the kind of "user engagement metrics" at issue in ; *Daybreak Game Co., LLC v. Takahashi*, 2025 WL 3552744, at *3 (S.D. Cal. Dec. 11, 2025) or the "customer research" contemplated by the court in *Rodman v. Safeway, Inc.*, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015). Uber fails under both the compelling reasons and good cause standards to articulate any basis beyond the fact that the documents at issue are data from Uber's business, to support sealing. That is not enough. *A.B.*, 441 F.Supp.3d at 908.

### 7.    Driver Screening and Retention

Uber fails to articulate *how* it will be harmed by disclosure of any of the wide array of materials it identifies related to "driver screening or retention," other than to vaguely state its competitors could (somehow) utilize the materials in their own driver screening and retention efforts. This does not suffice. First, Uber asks the Court to redact information that is common knowledge,[39] that has been made public,[40] or that merely reflects applicable laws.[41] This information is not sealable under any standard, and the Court should deny Uber's request.

As for the remaining information,[42] Uber asserts that it will be harmed because its competitors can use the information to screen and hire their own drivers. As with the other categories of information Uber has requested the Court seal, it fails to articulate *how* its competitors will use *this material* to obtain some competitive advantage. This is not a case like *Lawson v. Grubhub, Inc.*, in which the court sealed material related to how delivery drivers "receive orders" and how GrubHub "manages drivers." 2017 WL 2951608, at *10 (N.D. Cal. July 10, 2017).[43] None of the materials at issue detail how Uber operates, including the systems or processes it uses to source, hire, screen, and retain drivers. Instead, the materials detail the

[39] *Compare* Rebuttal at 48 ¶ 92(b) *with* https://therideshareguy.com/best-times-to-drive-uber/ (last accessed May 25, 2026) (rideshare driver-oriented website advising drivers to drive at night and on the weekends, when people are drinking).

[40] *Compare* Sawyer Rept. at 38 *with Dean* Trial Tr. 401:23-24 ("Uber had information that its background checks were not working."); and *compare* Sawyer Rept. at 48–49 *with Dean* Trial Tr. 622:15-16 ("driving screening was critical and necessary but insufficient.").

[41] *Compare* Sawyer Rept. at 30–32 *with* 15 U.S.C. § 1681c; *see also* https://www.uber.com/us/en/newsroom/background-checks/ (last visited May 25, 2026)

[42] Sawyer Rept. 51, 54; Tremblay Rept. at 23; Cameron Rept. at 57.

[43]

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

error rates for Uber's background check process and the results of those errors (i.e., safety incidents). *Laatz v. Zazzle, Inc.*, on which Uber also relies, is similarly distinguishable because the redactions at issue there concerned "internal technical operations," and not the generalized information here. *See* 2025 WL 405702, *2 N.D. Cal. Feb. 5, 2025). Moreover, *Laatz* involved *unopposed* redactions. While Uber's screening gaps may be embarrassing, this does *not* amount to a compelling reason that warrants sealing. *See Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014).

Finally, Uber does not demonstrate "good cause" to seal Exhibit A to Plaintiffs' Opposition to Motion to Quash Trial Subpoena. Uber has not articulated *specific* prejudice or harm that will result from *this* data being publicized. Nor can it. The proposed redactions in this document concern data from 2012 to 2013 on the number of Uber drivers who had (or may have had) convictions for sexual offenses before the state of Massachusetts updated its TNC requirements. This stale information (which is largely already known)[44] is not sealable. *See Avila*, 2026 WL 508364, at *7 ("Most of the documents [the defendant] seeks to seal were created years ago, undermining an inference of competitive harm.").

8.      Cerebro and uSights

The Court should not seal information related to Uber's shelved psychometric screening tools, Cerebro and uSights. Contrary to Uber's assertion that the information is "competitively sensitive" and could be used by its competitors to create their own such tools, *none* of the information about Cerebro/uSights includes formulas, patterns, plans, or algorithms. All one can glean from the information is that ██████████████████████████████████████████ ███████[45]  Uber is far from unique in developing a psychometric screening tool; numerous other employers have done so and others have operationalized them.[46]  Uber's competitors could not use information about the mere existence of this tool to create their own. *See In re Xyrem*, 789 F. Supp. 3d at 769 (declining to seal documents related to company's plan to launch a generic drug that it ultimately decided not to carry out). The real risk of disclosure (which is *not* a reason for sealing) is purely

---

[44] *See* https://www.nbcboston.com/news/local/mass-rejects-8k-uber-and-lyft-drivers/14587/

[45]      Orchowski Dep. 170:8–20, 171:3–5, Valliere Rept. at 24–25.

[46] *See* https://ocs.yale.edu/channels/psychometric-testing-assessments-next-steps/ (advising job candidates about the various companies using psychometric screening tools).

JOINT OMNIBUS MOTION TO SEAL                          Case No. 3:23-md-03084-CRB (LJC)

reputational: as Uber's own employees indicated, ████████████████████████████ ████████████████████████████████████████████████ ████████████████████. *See* Valliere Rept. at 25 (discussing UBER_JCCP MDL_002002847). However, Uber's interest in shielding its reputation does not amount to a trade secret that outweighs the public's right to know that information, particularly when used to adjudicate dispositive motions. *See Oliner*, 745 F.3d at 1026 (explaining that reputational harms such as embarrassment do not satisfy "compelling reasons" standard).

9.      Deactivation and Investigation Processes

Uber asks the Court to seal two kinds of material related to driver investigations and deactivations. First, Uber asks to seal screenshots of Uber's Investigation Workbench and Safety Lens (Incident History) dashboards for the drivers in upcoming Wave 1 bellwether cases.[47]  However, this is not a case like *U.S. v. Rite Aid*, in which the court sealed "non-public" information concerning the moving party's computer system. 2019 WL 1923234, at *2 (E.D. Cal. Apr. 30, 2019). Here, these dashboards were already introduced or described in the *Dean* trial.  *Dean* Trial Tr. 951:13–952:11, 968:9–17, 1061:618; P-00753, P-00503. Thus, to the extent these dashboards contain information about "the layout, organization, and content" of Uber's computer system, this information has already been made public.

Second, Uber asks to seal descriptions of Uber's deactivation and investigation processes contained in expert reports.[48] These include: a breakdown of the investigation team's contact process and reliance on what Uber has termed "statements of experience," from survivors, a process already detailed in Uber's Safety Reports and at trial, *see* Dean Trial Ex. 3871 (2019–2021 U.S. Safety Rept. at 31–32); Uber's use of "notations" (or strikes), including the number of strikes that result in deactivation how accrual of strikes is impacted by "invalid" or inconclusive reports, *see Dean* Trial Tr. 706:12-22, 954:22-960:8; and Uber's use of quality-improvement classes for deactivated drivers to become reactivated,

_____

[47]     Keller Rept. App'x D. Fig. 1, 6, 10–11, 15–16, 20–21, 25.

[48]     Cameron Rebuttal Rept. at 58; Thomas Rept. ¶ 64–65; Valliere Rept. at 8–9.

JOINT OMNIBUS MOTION TO SEAL                                Case No. 3:23-md-03084-CRB (LJC)

which Uber publicizes on its own website.[49]

Even if Uber could point to portions of these materials that were not already publicly available, it cannot meet its burden of articulating "specific facts" showing that it will be harmed by including this information on the public docket. *Hodges v. Apple Inc.*, 2013 WL 607408, at *1 (N.D. Cal. Nov. 18, 2013). Instead, Uber relies entirely on speculation that its competitors will somehow "replicate" its programs or that "bad actors" will circumvent these programs based on the high-level information contained in the materials. This is not enough. "[T]he mere fact that the information discloses [the defendant's] business processes or information about its products and design or testing of products … is insufficient." *A.B.*, 441 F.Supp.3d at 908. Uber's reliance on *Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 7911651, at *2 (N.D. Cal. April 6, 2016) and *Laatz*, 2025 WL 405702, at *3, is misplaced. Those cases both involved technical materials, including information about source code, technical specifications for a design tool, and engineering documents. Here, the materials related to Uber's deactivation processes do not contain technical or operational specifications describing how these processes are run through Uber's computer systems or application; instead, they merely provide a bird's eye view of Uber's deactivation processes, through general and publicly-available information showing that Uber investigates incidents through phone calls, assigns notations, and deactivates drivers who receive too many. The coding of the computer system that tracks the notations and the mathematical equation used to determine if a driver has too many are not included in the materials to be sealed. *E.W. Bank* is likewise inapposite. While the documents in that case, if disclosed would "allow[] competitors to replicate" the moving party's development of its banking service," 2021 WL 3112452, at *17, the kind of generalized information in the materials Uber asks the Court to seal could not reasonably allow anyone to "replicate" Uber's internal systems.

In addition, while Uber asserts that disclosing information about its deactivation policies would enable bad actors to circumvent those policies, it fails to articulate just *how* information about Uber's general deactivation policies could be circumvented in this way. For example, while Uber asserts that drivers could somehow engage in "fraudulent activity," it fails to make any connection between the

---

[49] *See* https://help.uber.com/en/driving-and-delivering/article/quality-improvement-courses-for-reactivation?nodeId=9deed9cc-6221-43f8-b699-aaf0d0653569

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

information it seeks to seal and potential fraud, beyond mere assertion. This District has rejected requests to seal based on concerns about "bad actors" using the information, where the moving party fails to demonstrate "how revealing this information rationally exposes it to security threats." *In re Meta Pixel Tax Filing Cases*, 2025 WL 1872974, at *3 (N.D. Cal. May 9, 2025).[50] While Uber asserts that *Meta* is inapposite because the defendant there failed to demonstrate how the information "could be used by bad actors," it is in fact directly on point because Uber, likewise, failed to show how the information it seeks to seal could be *used* by bad actors. Uber categorizes the information to be sealed as related to "deactivation" and "investigation," a category that suggests risk; however, on review the information Uber seeks to seal is highly generalized and largely already public. It is unclear and, as in *Meta*, Uber fails to detail, what bad actors could do with this information to cause harm. The court should reject Uber's request to seal just as in *Meta.*

10.     Survey Data

Uber wishes to redact survey data on safety perceptions (sometimes called "safety sentiment."). Much of Uber's work related to safety sentiment is already public because Uber's focus on safety *sentiment* over effective safety measures continues to be one of the central issues in this litigation and was addressed throughout the *Dean* trial. *See Dean* Trial Tr. 3101:16–23; *see also* 373:10–14. Indeed, the portion of Exhibit 3 to Plaintiffs' Opposition to Uber's Motion in Limine uses *exactly the same language* that appears in the *Dean* trial transcript.

In addition, given that the survey material Uber seeks to seal is between five and nine years old,[51] it is certainly stale. *See Lee on behalf of Symantec Corp. v. Clark*, 2019 WL 13412548, at *1 (N.D. Cal. July 3, 2019) (denying motions to seal three-year-old information because it was "stale" and therefore did "not deserve to be kept private."). Information on how users viewed Uber before it had reached its current scale of operations or adopted certain safety features, provides no accurate or actionable insights that can

---

[50] *Ashcraft v. Welk Resort Grp., Corp.*, 2019 WL 12518367, at *2 (D. Nev. Sept. 26, 2019) is distinguishable; that case involved potential disclosure of the underlying codes, not (already public) information on general processes.

[51] Chandler Rebuttal Rept. Figs. 2–5, 70, 72–74 (data from 2017–2018); Exhibit 3 to Plaintiffs' MIL Opposition (data from 2021); Exhibits 2, 3 to Uber's *Daubert* Opposition (data from 2017); Ex. 55 to Plaintiffs' MIL at QS_00000073, 76 (data from 2019).

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

be of use to Uber's competitors and so should not be protected. Uber also fails to justify why sealing Exhibits 2 and 3 to its *Daubert* Opposition in their entirety is merited. Even in *Craig*, 2023 WL 9503374, *3, which is distinguishable in that it does not involve data nearly a decade old, the defendant more narrowly-tailored the sealing request to avoid sealing unnecessary or unsealable information. The Court should deny Uber's overbroad request to seal this stale data.

11.      Uber's Relationships with Non-Profit Organizations

Uber argues it must shield its relationships with nonprofits from competitors who may use this information to some (unspecified) competitive advantage. However, Uber's relationships and financial arrangements with nonprofits were publicized throughout the *Dean* trial. *See*, *e.g.*, *Dean* Trial Tr. 675:5–6, 2467:1–10, 2477:4–2478:20, 2524:4–2525; P-00397, P-00242. Additionally, Uber's competitors have direct knowledge of these relationships from their history of working collaboratively with its primary competitor to leverage nonprofit relationships to promote a shared initiative, through joint meetings and work product shared among Uber, its competitor, and their shared nonprofit partners.[52] Yet, even if Uber's competitors could not already access information about its nonprofit relationships, Uber has failed to meet its burden of making a "particularized showing that specific prejudice or harm will result" from disclosure." *Apple Inc. v. Samsung Elec. Co. Ltd.*, 2013 WL 312 864, at *1 (N.D. Cal. Feb. 2013). Uber's circular argument that it will be harmed by disclosure because the information is "confidential information about confidential strategies," is exactly the kind of "broad allegation[] of harm unsubstantiated by specific examples or articulated reasoning [that] will not suffice." *Id.* (quotations and citations omitted).

Judge Cisneros' decision to permit sealing of these materials under a "good cause" standard when evaluating a motion to seal documents attached to *non-dispositive* motions does not control. *Kamakana*, 447 F.3d at 1179–80. On the other hand, "the public has less of a need for access to court records attached to only non-dispositive motions," *id.* but the "strong presumption of access to judicial records applies fully to dispositive pleadings because the resolution of a dispute on the merits … is at the

---

[52] https://www.raliance.org/wp-content/uploads/2021/03/Uber-and-Lyft-Statement.pdf (""RALIANCE is proud to have a seat at the table working with Lyft and Uber"); https://www.uber.com/us/en/newsroom/industry-sharing-safety/

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Id.* (quotations omitted). Uber has not met its burden under the "compelling reasons" standard that applies to *this* motion, because it failed to "provide any specific reasons, supported by facts, that could outweigh the public policy favoring public access to court filings." *A.B.*, 441 F.Supp.3d at 908 (quotations omitted). Uber's unsupported speculation is not enough.

12.    Data re Reports of Sexual Assault/Sexual Misconduct

Uber advances two reasons to seal data about sexual assault and misconduct reports it receives. Both fall short of the "compelling reasons" standard and the more lenient "good cause" standard.

First, Uber claims release of data about its sexual assault and misconduct data classification and organization will result in competitive harm. Uber says that disclosing data from its Flack system would be harmful because they reflect the "logic" that the Flack system uses to categorize the data but this is simply not true. Nothing about raw percentages reveals *how* Uber's Flack system operates on the back system, deduplicates incidents, or applies categories. All the materials show is the total number of reports Uber received broken down by incident type, and the number of drivers associated with specific incident types. The "topline" (total) numbers have already been made public; what is left is the category-by-category breakdown, which is "directly relevant" to the merits of the case, and to the public's interest in understanding the proceedings, *Kamakana*, 447 F.3d at 1179–80, in order to assess how Uber identified and addressed the risks of specific incidents (including those at issue in the bellwether dispositive motions). Uber's "[b]road allegations of harm," do not suffice to establish either good cause or compelling reasons. *Apple Inc.*, 2013 WL 412864, at *1 (quotations omitted). Uber's vague assertions that its competitors could "leverage" raw percentages do satisfy either standard. However, even *if* Uber's data classification scheme could be adopted by its competitors, Uber has long claimed that it wanted its competitors to do exactly that because "Safety should not be proprietary."[53] Any request by Uber to seal

___

[53] Chandler Rep. ¶ 200; *id.* at Figures 63-67, 76-78; *id.* at App'x D ¶ 17; *id.* at Data Tables 1-3; Chandler Rebuttal at 21 n.65; Stodden Rebuttal ¶¶ 8.f, 9, 14 & nn.20-22, 17, 22, 29.c, 35, 44, 47, 58.a.-c. & nn.138 & 142; *id.* at Figures 2A & 2B; Keller Rep. ¶¶ 9.1, 9.2, 33, 35, 43-43.7 & nn. 62-64, 45-49, 78-80; *id.* at Table 1; *id.* at Figures 2, 4, 8; Keller Dep. 229:6, 229:8, 229:10, 229:13, 260:22, 261:19, 264:10-11; Valliere Rep. at 17; Incident Report Classification at 6-73 (rows containing category data); Ex. 22 to Pl. MIL Opp. at 2-3. Of these only Exhibit 22 is subject to the "good cause" standard, while the remaining materials are subject to the "compelling reasons" standard.

materials related to the number or classification of sexual assault or misconduct reports it has received runs directly counter to own commitment to transparency and data-sharing.

Second, Uber speculates that Plaintiffs will use Uber's data to circulate "false" information about it. Uber goes so far as to suggest—contrary to the record[54]—that the "only conclusion" as to Plaintiffs' inclusion of excerpts of Dara Khosrowshahi's deposition transcript was for "scandalous or libelous purposes" because Uber disagrees that Mr. Khosrowshahi's testimony stands for the proposition for which it was cited. One only need review Mr. Khosrowshahi's testimony to recognize this is not the "only conclusion" or even a reasonable conclusion at all. In any event, Uber's speculation rests on a misapplication of the case law. Courts are clear that their dockets should not serve as "reservoirs of libelous statements for press consumption" *see Nixon v. Warner Comms., Inc.* 435 U.S. 589, 598 (1978); *Kamakana*, 447 F.3d at 1179 (discussing *Nixon*). Courts' unwillingness to have *false statements* on their dockets does not mean that real data should be sealed based on the (speculative) risk that a third party might say something false about it. As the Ninth Circuit went on to explain, the "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" does not warrant sealing. *Id.* In other words, Uber's strained attempts to (falsely) attribute an improper motive to Plaintiffs are immaterial: the issue is whether the documents themselves contain the kind of libelous information courts do not wish to maintain on the public docket, not whether a party's reputation may be harmed by the disclosure of accurate information, as is the case here.

13.    Data Collection, Organization, and Classification

Uber's request to seal information related to data organization and classification asserts that the information "would be valuable to Uber's competitors to copy in their own data collection, organization, and analysis." Rank speculation aside, Uber fails to offer specific facts showing how this would occur or be harmful. Its citation to Rite Aid is unhelpful. In *Rite Aid*, 2019 WL 1923234, at *1–3, the court granted

---

[54] *Compare* Pl's Opp. to MSJ at 10 ("Uber's CEO does not know whether Uber's sexual assault rates have been rising or falling, or even whether Uber keeps a count of incidents.") (citing Ex. 48 at 110:19-111:10, 235:16-18, 277:25-278:5) *with* Ex. 48 at 110:19-111:10 ("Q. To your knowledge, has this information, the fact that in 2023, the rate of critical sexual assaults on the Uber platform had gone up, had this been shared with the public? A. I don't know. Q. … what is going on with the rate of critical sexual assaults on the Uber platform for 2024, did it continue to go up? A. I don't know.") *and* Ex. 48 at 235:16-18 ( ██████ ████████████████████████████████ ).

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

an unopposed request to seal documents attached to a non-dispositive discovery motion. The court also noted that in its briefing, Rite Aid "sufficiently explaine[ed] the proprietary nature of the computer system and the potential competitive harm from public disclosure," id. at *3, which is absent from Uber's briefing.

### 14.    Uber's City-Specific COVID-19 Strategies

The Court should deny Uber's request to seal materials related to its COVID-19 pandemic management strategies, given that these materials are now stale and the potential for another once-in-a-lifetime pandemic is speculative at best. *Avila*, 2026 WL 508364, at *7 ("Most of the documents [the defendant] seeks to seal were created years ago, undermining an inference of competitive harm."). Uber may hold onto hope that it can use future public health emergencies to its competitive advantage, but the COVID-19 pandemic is now over such that any such "advantage" associated with these materials no longer exists.

### 15.    Personal Identifying Information

There are "compelling reasons" to redact personal identifying information (which includes the true names bellwether plaintiffs) from the materials attached to dispositive motions.[55] Courts routinely seal personal identifying information under the compelling reasons standard due to the potential privacy harm to the individual whose personal information may be exposed. *See In re: Pacific Fertility Ctr. Litig.*, 2021 WL 1082843, at *2 (N.D. Cal. Mar. 12, 2021) (granting motion to seal names, email addresses, and customer addresses under compelling reasons standard but *otherwise denying defendant's request to seal*). Plaintiffs' request to seal is narrowly tailored to *only* the PII of Plaintiffs, their medical providers, and their associates in order to protect them from exactly the kinds of privacy concerns courts in this Circuit have consistently recognized.

**C.    Conclusion**

---

[55] Plaintiffs seek to seal redactions to the names of Wave 1 Bellwether Plaintiffs B.L., LCHB128, and A.R.2 at Ex. 1 to Defendants' Motion to Exclude the Opinions of Dr. Chandler (p.i and ¶¶ 17, 137, 207, 209, 213–14, 217–20); Exhibit 2 to Defendants' Motion to Exclude Opinions of Dr. John Chandler (206:17); Exhibit 6 to Defendants' Motion to Exclude Opinions of Dr. John Chandler (435:6, 435:13, 445:9–10, 446:8–9, 446:11, 447:1, 449:2–3, 449:10, 450:10–12, 451:9, 453:16, 453:19, 453:25); and Exhibit 1 to Defendants' Motion to Exclude Opinions of Lacey Keller (p. 53 ¶ 76 and Appendix D pp. 4–8, 16, 30, and 37)

JOINT OMNIBUS MOTION TO SEAL                              Case No. 3:23-md-03084-CRB (LJC)

Uber failed to meet its burden of demonstrating compelling reasons or good cause, as applicable, to seal the proposed redactions. The Court should deny Uber's broad, unsupported requests to seal materials but it should grant Plaintiffs' narrowly-tailored request to seal PII related to sexual assault survivors.

Dated: June 4, 2026

Respectfully submitted,

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC, And RASIER-CA, LLC

*Co-Lead Counsel for Plaintiffs*

JOINT OMNIBUS MOTION TO SEAL    Case No. 3:23-md-03084-CRB (LJC)