# E.7

# EXHIBIT A

## EXHIBIT FILED UNDER SEAL

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION


IN RE:                                 :   CASE NO. CJC-21-005188
UBER RIDESHARE CASES                   :
                                       :
                                       :


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

IN RE:                                 :   CASE NO. 3:23-md-03084-CRB
UBER TECHNOLOGIES, INC,                :
PASSENGER SEXUAL ASSAULT               :
LITIGATION                             :


***HIGHLY CONFIDENTIAL UNDER PROTECTIVE ORDER***

VIDEOTAPED DEPOSITION OF HENRY (GUS) FULDNER

SAN FRANCISCO, CALIFORNIA

WEDNESDAY, MARCH 26, 2025


REPORTED BY:

DEBBIE LEONARD, CSR, RDR, CRR

CSR NO. 14350

PAGES 1 to 277

Henry (Gus) Fuldner  Highly Confidential
March 26, 2025

meeting content.

Q    Okay.  And are you given the rate?  Are you given the actual numbers, the gross numbers?  How is it presented to you?

A    It is typically presented in a rate form.

Q    Do you know why that is?

MR. LUSKEY:  Object to form.

THE WITNESS:  Rate is more helpful in determining and observing trends and -- yeah, there are significant variations in our -- you know, significant -- seasonality and other things that -- where looking at an absolute count would make it more difficult to interpret.

BY MR. ESTEY:

Q    You say there's a seasonality?  There's a seasonality for sexual violence?

MR. LUSKEY:  Object to form.  Mischaracterizes --

THE WITNESS:  I said seasonality --

MR. LUSKEY:  Let me get my objection in.

THE WITNESS:  Sure.

MR. LUSKEY:  Objection.  Mischaracterizes testimony.

You can answer.

THE WITNESS:  I agree it mischaracterizes testimony.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION


IN RE:                              :  CASE NO. CJC-21-005188
UBER RIDESHARE CASES                :
                                    :
                                    :


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

IN RE:                              :  CASE NO. 3:23-md-03084-CRB
UBER TECHNOLOGIES, INC,             :
PASSENGER SEXUAL ASSAULT            :
LITIGATION                          :


***HIGHLY CONFIDENTIAL UNDER PROTECTIVE ORDER***

VIDEOTAPED DEPOSITION OF HENRY (GUS) FULDNER

SAN FRANCISCO, CALIFORNIA

THURSDAY, MARCH 27, 2025


REPORTED BY:

DEBBIE LEONARD, CSR, RDR, CRR

CSR NO. 14350

PAGES 278 to 594

sent you some response here.

Q   All right.  And Exhibit 396, that's the letter that your counsel sent to us responding to Exhibit Number 395 and the objections, correct?

A   I feel like if anyone should be authenticating it, it should be counsel to my right -- to my left.

Q   Is that your understanding --

A   That's my understanding of what this is, yes.

Q   Okay.  Very good.  Thank you.  You can set that aside.

All right.  Mr. Fuldner, I just want to go back to some basics about what Uber does.  Uber sells rides, right?

MR. LUSKEY:  Object to form.

THE WITNESS:  No.

BY MS. LONDON:

Q   Okay.  Uber provides rides?

MR. LUSKEY:  Same objection.

THE WITNESS:  No.

BY MS. LONDON:

Q   Now, you're testifying -- let me ask you this: Do you agree that Uber must do all that human care, vigilance, and foresight reasonably can do under the circumstances to avoid harm to passengers?

MR. LUSKEY:  Object to form.

THE WITNESS:  I think we -- we should -- we can and do work very hard to prevent -- to avoid harm to passengers and protect not just passengers but our drivers and the general public.  I don't -- yeah, I'll leave it there.

BY MS. LONDON:

Q   So, Mr. Fuldner, today there are some questions I'm going to ask you that I just want a "yes" or "no" answer to.

A   Okay.

Q   And if you can't answer "yes" or "no," you can let me know that, and perhaps your counsel can follow up.

But given the time constraints today, I just ask that if you can, please give me a "yes" or "no" answer to this question --

MS. FRANGOPOULOS:  He's allowed to provide context.

BY MS. LONDON:

Q   -- which is, do you agree Uber must do all that human care, vigilance, and foresight reasonably can do under the circumstances to avoid harm to passengers?

MR. LUSKEY:  Object to form.  Asked and answered.  Calls for a legal conclusion.

THE WITNESS:  Broadly, yes.  I don't know the specific meanings of the some of the words in your -- in

your statement.

So as I said before, I -- my team focuses on protecting and -- my team focuses on the safety of riders, drivers, and the public, and we do everything that we can to avoid harm to the public.

MS. LONDON:  All right.  I'm just going to move to strike everything after "Broadly, yes."

BY MS. LONDON:

Q    Mr. Fuldner, do you agree that Uber must use reasonable skill to provide --

MS. FRANGOPOULOS:  I will object to that on the record [indiscernible] --

(Court reporter clarification.)

MS. FRANGOPOULOS:  He's allowed to provide context to his answers, Sarah.  You do not get to decide whether it's a "yes" or "no."

MS. LONDON:  Counsel, I'll just remind you of the deposition protocol here that there are no speaking objections, and we'll just proceed.

BY MS. LONDON:

Q    Mr. Fuldner --

MS. FRANGOPOULOS:  Randy, can I talk to you?

MS. LONDON:  Let's go off the record, please.

MR. LUSKEY:  Off the record.

THE VIDEOGRAPHER:  Going off the record at

Q   -- right --

MR. LUSKEY:  Objection.  Vague --

BY MS. LONDON:

Q   -- as a whole --

MR. LUSKEY:  Sorry.

BY MS. LONDON:

Q   -- to eliminate threats.

MR. LUSKEY:  Sorry.

BY MS. LONDON:

Q   Yes?

MR. LUSKEY:  Objection.  Vague.  Form.

THE WITNESS:  The chart shows a circle around -- connecting or enclosing "Driving Safety" and "Interpersonal Safety" and suggesting that there are broader things that -- that connect them.

I don't find the page super clear, but there is a circle that goes around safety -- around "Driving Safety" and "Interpersonal Safety."  And I see safety as broader than just those -- those two topics, even though those are the main topics we focus on.

BY MS. LONDON:

Q   All right.  Now, as the head of safety, you would agree with me that the system -- any safety system should be designed to constantly improve through measurement and feedback loops, right?

MR. LUSKEY:  Object to form.  Vague.    10:13

THE WITNESS:  We are -- our efforts on safety are focused on continuous improvement, and our efforts on safety never stop.  We will always seek to do better.    10:13

MS. LONDON:  I'm going to just move to strike that and --    10:13

BY MS. LONDON:    10:13

Q   This was one of those, you know, just "yes" or "no."  Do you --    10:13

MS. FRANGOPOULOS:  There --    10:14

MR. LUSKEY:  I got it.  I got it.  I got it.    10:14

BY MS. LONDON:    10:14

Q   Do you agree with me or not, Mr. Fuldner?    10:14

MR. LUSKEY:  I got it.    10:14

So it is not a simple "yes" or "no," and his answer is directly responsive.  You asked a question about feedback loops, and he responded to that by saying, absolutely, we are always looking at continuous improvement.  That's how he interpreted your question and what you meant by "feedback loops."  And so we oppose the motion to strike.  You can ask it again.    10:14

MS. LONDON:  Thank you.    10:14

MS. SEDGHANI:  There's also no judge here, so [indiscernible] --    10:14

(Court reporter clarification.)    10:14

MS. SEDGHANI:  There's no judge here, so I don't know who she's moving to strike to.

MR. ESTEY:  I'll play judge.

MS. FRANGOPOULOS:  We know you'd love to.

MS. LONDON:  So I'll just remind counsel of the order regarding speaking objections, and I will endeavor to ask the question again.

BY MS. LONDON:

Q   Mr. Fuldner, any safety system should be designed to constantly improve through measurement and feedback loops.  Do you agree?  "Yes" or "no"?

MR. LUSKEY:  Same objection.

THE WITNESS:  I agree that any safety system should be -- should continuously improve through measurement.  I'm not entirely sure the meaning of "feedback loops" as you're asking the question.

BY MS. LONDON:

Q   Okay.  Now, as the person in charge of Uber's safety system, you sought to establish metrics for tracking, right?

A   Yes.

MS. LONDON:  I'm going to pull up tab 9.1.  And this one is going to be the next numbered exhibit, which is 415.

(Exhibit 415 marked for identification.)

Henry (Gus) Fuldner Volume II Highly Confidential
March 27, 2025

Q    Okay.  So you're aware the company had done some previous work on sex offenders' recidivism.

Do you see that?

MR. LUSKEY:  Object to form.

THE WITNESS:  That's what this document says.  I don't --

BY MS. LONDON:

Q    It's -- and the "Problem statement" says, ███

It says, "We ask:  To what extent is this a problem for us?"

That's what it says, right?

A    That is what it says, but it doesn't make sense to me, specifically because ███

They would be referring to things that -- like, the statement doesn't make -- isn't internally

consistent.

MS. LONDON:  So, Mr. Fuldner, I respectfully have to move to strike.  I simply asked if that's what the document said.

MR. LUSKEY:  When you ask that --

THE WITNESS:  Okay --

MR. LUSKEY:  -- question, though, he can --

Sorry.

When you ask that question, he can respond by saying, "That's what it says, but it doesn't make sense to me."  That's a perfectly appropriate deposition answer.

MS. LONDON:  As I said, I'm just moving to strike after --

MR. LUSKEY:  Okay.

MS. LONDON:  -- every word after, "That's what it says."

MR. LUSKEY:  I got it.

MS. FRANGOPOULOS:  We talked about the deposition protocol.  That's not a thing, Sarah.  There is no moving to strike.

MS. LONDON:  And I will respectfully remind counsel that we're burning time with speaking objections, so let's move on.

BY MS. LONDON:

Henry (Gus) Fuldner Volume II Highly Confidential
March 27, 2025

Q    All right.  At the very end -- I'll go to -- turn your attention to the last page -- the last paragraph says, "

That's what this document says, right?

A    The logic here is silly in its generality.  I don't know who produced this -- this document.  It is illogical in many areas in terms of its assumptions.  But if you would like me to read the document, that is what the document says.

Q    Sitting here today, you don't -- you can't contest, right, that in Massachusetts,

[REDACTED]                                                12:20

[REDACTED] right?                                         12:20

MR. LUSKEY:  Object to form.                              12:20

THE WITNESS:  As I said at the beginning, which           12:20
you asserted should be stricken, but I -- I would assert  12:20
is highly responsive, the "Problem statement" at the      12:20
beginning doesn't make sense because [REDACTED]           12:20

[REDACTED]                                                12:20

[REDACTED]                                                12:20

[REDACTED]                                                12:20

[REDACTED]                                                12:20

So the whole "Problem statement" doesn't make             12:20
sense to me, but -- so this document makes very little     12:20
sense.  I don't know who wrote it, and -- so if you'd      12:20
like me to keep reading pieces, too, we can spend time on  12:21
that, but --                                               12:21

MS. LONDON:  I respectfully have to move to               12:21
strike.  None of that was responsive to my question.  It   12:21
was just -- but we can -- we can move on.                  12:21

MS. FRANGOPOULOS:  It was absolutely --                   12:21

THE WITNESS:  That was --                                 12:21

MS. LONDON:  We can --                                    12:21

THE WITNESS:  -- absolutely responsive to your            12:21
question.                                                  12:21

BY MS. LONDON:                                             12:21

Q   We can move forward to --

A   I strongly disagree that --

MR. LUSKEY:  Real quick.  So the question you asked, Sarah --

MS. LONDON:  I don't need -- I don't need a lecture.  We're just going to move on.

MR. LUSKEY:  No, not a lecture.  I'm just opposed -- you made a motion.  I get to oppose it, right?

MS. LONDON:  Well, not on my time.  You can do it on your time.

MR. LUSKEY:  I can't oppose the motion you made?

MS. LONDON:  You can.  Go ahead.  You can speak.

MR. LUSKEY:  I oppose the motion.  You asked whether he could contest that statement, and he provided the reason why he is contesting it.  Directly responsive.

Let's move on.

BY MS. LONDON:

Q   Now, this year of this document, which is 2016 -- in 2016, Massachusetts passed a law requiring that Uber drivers undergo a state background check, correct?

A   That is correct, yes.

Q   And then it turned out that over 8,000 Uber and Lyft drivers failed Massachusetts' new background check.  Those are drivers that had passed the company's