Sommer Luther (*pro hac vice*)
sluther@wagstafflawfirm.com
Wagstaff Law Firm
940 Lincoln St.
Denver, CO 80203
Telephone: 303-376-6360
Facsimile: 888-875-2889

*Attorney for Plaintiff B.L.*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc. et al.*, No. 24-cv-7940 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

Pursuant to the Court's order at the hearing of May 29, 2026, Plaintiff B.L. respectfully submits this sur-reply in opposition to Uber's motion for sanctions, ECF No. 5964.[1]

Uber's reply, ECF Nos. 6194 and 6280,[2] attempts to imply bad faith where none existed, and to diminish its own role in creating the circumstances that the company now complains of. Plaintiff respectfully submits that, while she made mistakes in discovery that she will not repeat, she did not act in bad faith and, as explained below, Uber's own actions contributed to the issues that have arisen.

---

[1] May 29, 2026, Hearing Transcript ("Hearing Tr.") (ECF No. 6349) at 27:17-19.

[2] Uber had to file the reply twice because, the first time, it posted Highly Confidential – Attorney's Eyes-Only materials on the public docket. *See* ECF Nos. 6194 (original filing), 6199 (emergency admin motion to seal), 6200 (order provisionally sealing), 6207 (order sealing and directing refiling). These filings are referred to here as the "Reply."

Accordingly, sanctions are not warranted, and the motion should be denied. Further, and consistent with the Court's guidance on May 29 and the reopening of discovery, ECF No. 6063, the parties are now effectively working together to address the discovery issues that need to be resolved to ensure the case is ready for trial.

## I.    Plaintiff Has Not Acted in Bad Faith

Uber focuses on two categories of discovery responses: (1) disclosure of witnesses, and (2) redactions of documents. These allegations do not withstand scrutiny.

### A.    Timeliness of Disclosures

Fact witnesses and treaters were disclosed to Uber promptly. For context: Judge Breyer proposed Plaintiff as a Trial Wave 1 bellwether pick on April 4, 2025, ECF No. 2875, and confirmed that selection on May 1, 2025, ECF No. 2894. Declaration of Sommer Luther ("Luther Decl.") at ¶ 3. Plaintiff's deposition was taken June 25, 2025. *Id.* at ¶ 4. Wave 1 fact discovery was initially set to close on September 22, 2025. ECF No. 2894. *Id.* at ¶ 5.

Rule 26(a) "requires identification of potential witnesses;" a general statement that a potential witness may testify "[r]egarding the claims of the underlying case and the damages at issue" is sufficient. *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1190 (9th Cir. 2022) (citations omitted) (reversing district court for sanctioning party based on failure to identify "subjects of [the potential witnesses'] information" with greater specificity). "[P]arties are expected to supplement and/or correct their disclosures promptly" if required by Rule 26(e). *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 679 (N.D. Cal. 2015). "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." *Burger v. Excel Contractors, Inc.*, No. 2:12-CR-01634-APG-CW, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013) (quoting Advisory Comm. Notes to 1993 Amendments to Rule 26).

*First*, each of the potential fact witnesses—L.P., R.H., M.B., T.R., and J.L.—that Uber claims were not disclosed until fact discovery closed, Reply at 3-4, were in fact disclosed to Uber in May and June of 2025. T.R. was first disclosed on May 9, 2025. Luther Decl. at ¶ 7, Ex. 1 (Plaintiff's Second Supplemental

ROG Responses).[3] M.B. was disclosed on June 11, 2025. *Id* at. ¶ 12, Ex. 6 (Plaintiff's Fourth Supplemental ROG Responses). L.P., R.H., and J.L were disclosed on June 24, 2025. *Id.* at ¶ 16, Ex. 7 (Plaintiff's Second Supplemental Rule 26 Initial Disclosures). Those disclosures were supplemented as additional information became known or as Plaintiff recalled additional details about her interactions with the potential witnesses. Luther Decl. at ¶¶ 18, Ex. 2 (Plaintiff's Third Supplemental ROG Responses (May 23, 2025)), Ex. 10 (Plaintiff's Fifth Supplemental ROG Responses (June 24, 2025)), Ex. 17 (Plaintiff's Eighth Supplemental ROG Responses (August 25, 2025)), Ex. 8 (Plaintiff's Ninth Supplemental ROG Responses (October 30, 2025)), Ex. 9 (Plaintiff's Tenth Supplemental ROG Responses (February 24, 2026)), Ex. 7 (Plaintiff's Fourth Amended Plaintiff Fact Sheet (June 25, 2025)),Ex. 4 (Plaintiff's Tenth Supplemental Rule 26 Initial Disclosures (March 31, 2026)).

Plaintiff testified about L.P. and J.L. during her deposition. *Id.* at 17, Ex. 3 (Plaintiff Deposition Excerpts). Plaintiff produced documents referring to them in June 2025 as well. *See infra*.

Uber's suggestion that these disclosures were incomplete because they did not detail "each communication" Plaintiff had with a witness misses the point. Reply at 3. Uber does not mention that Plaintiff answered that interrogatory subject to objections based on overbreadth and redundancy in light of other discovery, including productions of communications. *See* Luther Decl. at ¶ 18 & Ex. 2. Subject to those objections, Plaintiff has provided Uber with the names of persons she spoke with, but has declined to summarize the content of her communications. Uber has not contested these objections or conferred with Plaintiff on them; the company instead declared an impasse regarding disclosures on February 13, 2026, and initiated the PTO 8 process. *Id.* Meanwhile, Plaintiff agreed that these witnesses should be deposed. *See* ECF No. 5823.

Further, the Reply omits the parts of Plaintiff's responses that address Uber's concerns. For instance, Uber claims that Plaintiff "repeatedly lied" about the "extent of her communications" with L.P. "until after fact discovery was closed." Reply at 3-4. That is untrue. Plaintiff's June 24, 2025, (under oath) interrogatory responses stated that she and L.P. "continue to speak *regularly* since the date of the offense about Plaintiff's continuing distress and damages from the incident." Luther Decl. at ¶ 16, Ex. 10

---

[3] This May 2025 disclosure was of T.R.'s name as Plaintiff knew it. Luther Decl. at ¶ 7. Counsel later learned T.R.'s true name and promptly disclosed it to Uber on March 31, 2026. *Id.*

(Plaintiff's Fifth Supplemental ROG Responses).

Similarly, Uber suggests that Plaintiff did not disclose that she "may have been on the phone" with T.R. during the incident. Reply at 3. Again, Uber is incorrect. On May 9, 2025, Plaintiff disclosed that T.R. "reached out to Plaintiff on Facebook Messenger after reading her post and she spoke with him for quite a while . . . [f]*ollowing the conversation*, plaintiff . . . took an Uber to her brother's house around 3:00 a.m." Luther. Decl. at ¶ 7, Ex. 1 (Second Supplemental ROG Responses) at ROG 9. On May 23, 2025, Plaintiff supplemented that response to correct the time the Uber ride began to 3:53 a.m. in California. *Id.* at ¶ 8, Ex. 2 (Third Supplemental ROG Responses) at ROG 9. At deposition, Uber's counsel asked a general question about timing: "so August 11th in the evening or 12th in the morning would have been the time that you would have been talking to [T.R.] on the phone, correct?" *Id.* at ¶ 9, Ex. 3 (Plaintiff Deposition Excerpts) at 252:11-15. Plaintiff responded yes, she was talking to T.R. "on the phone through the Facebook Messenger app." *Id.* Counsel asked no follow-ups. On March 31, 2026, Plaintiff further supplemented her responses recently to clarify (again) that she was speaking with T.R. "immediately prior to the incident." *Id.* at 11, Exs. 4-5 (Tenth Supplemental Rule 26 Disclosures (March 31, 2026)) at 9. Plaintiff also produced screenshots on March 31, 2026, showing the call on the night of the incident after receiving them from T.R. on March 17, 2026 (the same day that counsel learned T.R.'s real name). Luther. Decl. at ¶¶ 10-11. Those documents show that Plaintiff's call with T.R. ended at 3:56 a.m. on the night of the incident but were screenshotted while T.R. was in Colorado. *Id.* at ¶ 10. Plaintiff understands that Meta products like Facebook localize timestamps to a user's current time zone. *Id.* Thus, T.R.'s screenshots appear to show that Plaintiff's call with T.R. ended at 2:56 a.m. Pacific Time (3:56 a.m. MT), about an hour before the subject ride began. *Id.* Plaintiff continues to explore how to obtain native versions of these documents, which may help confirm the times. In all events, Plaintiff disclosed T.R. and promptly supplemented her discovery responses.

Uber also asserts that Plaintiff's disclosures may have led Uber to believe that some of the fact witnesses, namely L.P., R.H., and M.B., had fewer conversations with Plaintiff than later became known. *See* Reply at 3. But this is not a failure to disclose; Rule 26(a) requires the identification of potential witnesses, not exposition of their potential testimony. *See Brodeur*, 41 F.4th at 1190. Plaintiff's other responses reflect her recollection and the data available at the time, not a desire to withhold. Luther Decl.

at ¶ 18. And, in all events, Uber's lawyer had an opportunity to ask about these witnesses at Plaintiff's deposition. Counsel asked general questions about Plaintiff's relationships and learned that L.P. had been her friend for other 10 years. Luther Decl. at ¶ 17, Ex. 3 (Deposition Excerpts) at 79:5-11. Counsel did not ask about R.H. or M.B. despite knowing before the deposition that they had spoken to Plaintiff about her assault. *Id.* Plaintiff agreed that each of these witnesses should be deposed. *See* ECF No. 5823.

***Second***, Plaintiff has timely disclosed new treating providers.[4] Uber complains that Lindsay Bisby, Guerin Bernadin, and S.S. were not properly disclosed. Reply at 4. Again, Uber misreads the record. Ms. Bisby is a nurse practitioner affiliated with Baobab Psychiatric Services, where Plaintiff had been referred on July 11, 2025, and which Plaintiff disclosed to Uber on July 16, 2025. Luther Decl. at ¶¶ 20-21, Ex. 11 (Seventh Supplemental ROG Responses) at ROG 6. Plaintiff was initially evaluated at Baobab Psychiatric Services on August 1, 2025. *Id.* at ¶ 22. Uber requested records from Baobab Psychiatric Services on August 4, 2025, and obtained them on October 17, 2025.[5] *Id.* at ¶ 23. Those records identified Bisby by name. *Id.* Plaintiff supplemented her discovery responses to list Bisby by name on October 30, 2025. Luther Decl. at ¶ 26, Ex. 8 (Ninth Supplemental ROG Responses) at ROG 5. Disclosure was proper and prompt, contrary to Uber's suggestion otherwise. Reply at 4. Plaintiff agreed that Bisby should be deposed. *Id.* at ¶ 25.

The same is true of Guerin Bernardin. Plaintiff saw Dr. Bernardin on August 21, 2025, during hospitalization for meningitis. Luther Decl. at ¶ 30. He was disclosed on February 24, 2026, after counsel learned he had treated Plaintiff. *Id.* at ¶ 32, Ex. 9 at 8. But Uber had learned his identity back on October 24, 2025, when it obtained billing records related to Plaintiff's hospital stay. Luther Decl. at ¶ 31. There was no attempt to hide Dr. Bernadin from Uber. Plaintiff agreed that Dr. Bernardin should be deposed. *Id.* at ¶ 33.

---

[4] Uber suggests that Plaintiff "has not produced any records from" these witnesses. Reply at 1, 4, 9 & n.9. Plaintiff produced records from Bisby on October 30, 2025. Luther Decl. at ¶ 25, Ex. 12. Records from Dr. Bernadin were accessible to, and obtained by, Uber via Plaintiff's authorizations, and additional records may be produced in future. S.S. is not a healthcare provider and does not appear to maintain medical records. Luther Decl. at ¶¶ 34-35. Plaintiff produced communications with S.S., and Uber has recently requested all of S.S.'s communications with Plaintiff in connection with an upcoming deposition. *Id.* Additional collections are also underway to refresh discovery responses, respond to new requests from Uber (including to S.S.), and to ensure nothing was missed before. *See infra* at 10-11.

[5] Marker Group obtained the records on October 6, 2025; Plaintiff did not assert privilege over the records and they were made available to Uber on October 17, 2025. Luther Decl. at ¶ 23.

S.S. is the outlier. S.S. is not a medical or mental healthcare provider at all; she is an advocate for victims of narcissistic abuse. Luther Decl. at ¶ 35. As part of her business, S.S. offers paying clients access to a recovery course, Zoom and texting sessions, and other forms of mentorship and healing. *Id.* But she is not licensed in any state and does not purport to be a therapist; she offers validation and a listening ear to people who have suffered narcissistic abuse. *Id.* Plaintiff first engaged with S.S. in May 2022. *Id.* Plaintiff disclosed S.S. on July 16, 2025, identifying her as "a friend of the Plaintiff" who "may have knowledge and information regarding the subject incident and the impact of the incident on Plaintiff." *Id.* at ¶ 34, Ex. 13 (Plaintiff's Fourth Supplemental R. 26 Initial Disclosures) at 8. While Plaintiff does consider S.S. a friend, she recognizes that she should have further explained the nature of their relationship. *Id.* That said, Plaintiff did not intend to conceal S.S. from Uber—indeed, she correctly acknowledged that S.S. was a potential witness with knowledge of the assault as required by Rule 26(a) on July 16, 2025, and on the same day produced an unredacted text referring to Plaintiff wanting a "session" with S.S. *Id.* Uber raised the redactions of text messages with S.S. in October 2025, *see infra*, but those conferrals did not make much progress before Uber declared an impasse and initiated PTO 8 briefing. *Id.* at ¶ 36. Plaintiff agreed that S.S. should be deposed. *See* ECF No. 5823. The parties have been negotiating production of documents by S.S.

***Third***, Uber raised its concerns on these issues in fits and starts. Despite knowing the identity of the above-described witnesses, Uber did not depose Plaintiff about many of them or raise concerns about them until after discovery closed. Luther Decl. at ¶ 37. On October 6, 2025, Uber's counsel raised a purported mismatch between discovery responses and expert testimony. *Id.* Following conferral on October 16, 2025, Uber's counsel sent an email claiming that Uber was prevented from taking these witnesses' depositions, and (wrongly) suggesting that Dr. Mechanic's report disclosed a greater number of contacts between the witnesses and Plaintiff than Plaintiff had disclosed. *Id.* Plaintiff disagreed; Dr. Mechanic's report had revealed the *effects* of the Uber assault that witnesses had observed, not the *quantum* of contacts with Plaintiff. *Id.* at ¶ 38. Uber could have sought that same information if it had wanted, but it had declined to do so. At that time, Plaintiff flagged that Plaintiff had sought new providers and suggested that Uber seek information supposedly obtained from the collateral witnesses from Dr. Mechanic during her deposition. *Id.* After a delay, Uber sends an email claiming that none "of the remaining issues flagged in

my email from October [16] have been cured." *Id.* at ¶ 39. Plaintiff replied on October 20, 2025, that Plaintiff is willing to work through everything with Uber to resolve the issues. *Id.* Three months pass with no contact. *Id.* On February 13, 2026, Uber declares and impasse and begins the PTO 8 process. *Id.* at ¶ 40. During a February 20, 2026, conferral, Plaintiff states that she does not oppose depositions of treating providers and three collateral witnesses, subject to time limitations. *Id.* at ¶ 41. A month later on March 31, 2026, the parties confer again, and Plaintiff again expresses openness to additional depositions of fact witnesses and treaters, subject to certain limitations *Id.* at ¶ 42. Uber replies that any limitation is a non-starter, and that Uber will proceed to the Court. *Id.* A short conferral on April 3, 2026, addressed mostly redactions, though whether S.S. is a treater was briefly discussed. *Id.* at ¶ 43. That conferral began and ended with Uber stating it planned to seek sanctions. *Id.*; *see also* ECF No. 6280-16. Plaintiff has not tried to withhold witnesses from Uber; she has tried to work with Uber to find reasonable solutions to disputes, which Uber has with few exceptions rejected.

## B.     Redactions Were Not Made in Bad Faith

Uber argues that Plaintiff attempted to hide relevant information via redactions.[6] That is not the case. Plaintiff's redactions were motivated by a desire to protect what she then viewed and still views as highly sensitive materials, and the private information of non-parties, including minors. Luther Decl. at ¶ 45.[7] These concerns provide context (not excuse) for consideration of Plaintiff's redactions. In connection with these concerns, Plaintiff's counsel consulted with leadership, including experienced mass tort lawyers, about the types of information that should be produced and the types of information that ought

---

[6] Uber also suggests that certain communications were withheld altogether. Reply at 2. Plaintiff did, mostly in the summer of 2025, produce communications between Plaintiff and A.N., S.S., M.G., and L.L., which were collected from Plaintiff. Luther Decl. at ¶ 44. Additional collections are underway to refresh discovery responses, respond to new requests from Uber, and to ensure nothing was missed before. *See infra* at 10-11.

[7] The Court is already aware of some of the harassing and embarrassing conduct by Uber in depositions in this action. *See* ECF No. 5987. Those concerns have grown rather than diminished as this case has moved forward. For instance, Uber recently posted highly confidential, attorneys-eyes-only documents on the public docket and would not agree to take necessary steps to cure that violation of the Protective Order, which necessitated the Court's intervention. *See* ECF Nos. 6200, 6207. Just a day later, in a filing seeking to "reassure the Court and Plaintiffs that [Uber's lawyers] ha[ve] added an extra lawyer of attorney review . . . prior to filings . . . to ensure that similar errors do not recur," Uber again filed confidential information on the public docket. ECF Nos. 6205, 6229 (refiled); ECF No. 6211 at ¶ 1 (stipulating that "Uber attached exhibits on the public docket containing a third-party name that the Court ordered kept under seal yesterday afternoon").

---

to be redacted. *Id.* In addition, Plaintiff has already removed most responsiveness and privacy-related redactions and will shortly remove any that remain and reproduce documents to Uber. ECF Nos. 6367, 6383.[8]

Still, Plaintiff recognizes the need to explain the basis for certain redactions. Two examples are instructive. First, Uber cites a text exchange between Plaintiff and S.S. as emblematic of the redaction issues here.[9] ECF Nos. 6280-11 and 6280-12. The texts that Plaintiff redacted concern the complicated relationship between Plaintiff and a family member, a romantic relationship that Plaintiff was attempting to cope with, and other issues not directly related to the incident. *Id.* The materials directly relating to the assault in an Uber are not redacted. ECF No. 6280-11 at 2; *see also* Reply at 1. Messages that discuss both the incident and Plaintiff's family history are also unredacted. *See* ECF No. 6280-11 at 2. Uber's document requests and this Court's rulings focus on documents related to the incident and damages, not any communication about a plaintiff's personal life. *See, e.g.*, Luther Decl., Ex. 12 (Ninth Supp. RFP Responses) at RFP 2-3. Undersigned counsel believed in good faith that appropriate redactions were applied here but was open to confer should Uber disagree. *Id.* at ¶ 45.

Second is the email in which Plaintiff discusses the assault, which is addressed to a former romantic partner and dated about 10 days after the assault. ECF No. 6194-2 (Benfield Decl.) at ¶¶ 34-35; ECF No. 6280-8 at 3.[10] Plaintiff originally redacted the portion of the email about Plaintiff's and the former romantic partner's relationship including allegations of assault against the partner; the portion of the email about the sexual assault on the Uber platform was not redacted. *Id*. As with the above, undersigned counsel believed in good faith that the redacted portion of the email was not responsive to Uber's requests about the incident or Plaintiff's damages resulting from the incident (the redacted portion of the email is from after the incident but refers to back to experiences from earlier). Again, undersigned counsel believed in good faith

---

[8] Uber references a communication referring to Plaintiff's desire to sue Uber. Reply at 5. Plaintiff would not redact those two text messages today. However, the portions Plaintiff produced *without* redactions back in 2025 make clear that she is going to join a lawsuit against Uber. Luther Decl. at ¶ 46, Ex. 14 at 22 (excerpts of text messages as produced with redactions).

[9] Hearing Tr. at 22:2-8 ("I would invite Your Honor as you're thinking about your ruling to really go back and look at Exhibit 2 to Uber's motion for sanctions which is the initial text thread that was produced to Uber with the extensive redactions and compare that to Exhibit 6 which is then the full version that was produced to Uber without the redactions.").

[10] This is the Attorneys Eyes Only material that Uber filed on the public docket. *See* ECF No. 6199.

that appropriate redactions were applied here.

Though Plaintiff does not believe she acted in bad faith, based on experience in this case since last July, as well as the Court's guidance, Plaintiff will not impose redactions for responsiveness going forward. *See* ECF Nos. 6367, 6383. Indeed, if given the chance for a do-over, Plaintiff would not make the same choices. But her historic discovery choices were made in good faith and not for the purpose of withholding evidence.

That good faith is further confirmed by Plaintiff's willingness to un-redact materials even as Uber's response to the redactions, which were in place in one form or another for close to a year, proceeded in fits and starts. *See* Reply at 5 & n.7. Uber raised the redactions issue in May and June of 2025, namely as to messages to/from M.B. and W.L. and as to certain medical records. Luther Decl. at ¶ 47. The parties conferred and agreed that Plaintiff would un-redact certain medical records, and re-review certain messages. *Id.* Plaintiff ultimately did un-redact some communications involving W.L. *Id.* Plaintiff did not hear back on redactions until after the close of discovery. *Id.*

On October 6, 2025, Uber raised issues concerning disclosure of witnesses, *see supra*, which led to a conferral on October 13, 2025, which included leadership. Luther Decl. at ¶ 48. Follow ups to that conferral raised issues concerning updates of witnesses' text messages, missing texts from L.P., and concerns about how privilege was being logged. *Id.* Plaintiff supplemented productions of both her privilege log and certain communications on October 16, 2025. *Id.* at ¶ 49. A month later, on November 17, 2025, Uber emailed to say that redactions on L.P.'s texts were too numerous. *Id* at ¶ 50. Plaintiff's counsel asked Uber to identify specific concerns in a reply email of November 19; Uber replied that "I don't think any of the remaining issues flagged in my email of October 28 have been cured." (Counsel is believed to be referring to her email of October 16.) *Id.* Plaintiff assured Uber she would work through any remaining disputes following review of the relevant documents. *Id.*

On February 13, 2026, Uber's counsel informed Plaintiff via email that the parties were at an impasse and Uber was initiating PTO 8 briefing. *Id.* at ¶ 50. A conferral followed on February 20, 2026, including leadership. *Id.* Uber raised questions about redactions and AI, along with Plaintiff's privilege log. *Id.* Following conferral, Plaintiff reviewed redactions of communications involving 12 witnesses, and re-produced documents for those witnesses with fewer redactions. *Id.* The parties conferred as part of the

PTO 8 process. *Id.* Plaintiff expressed openness to removing redactions but wanted to set out a protocol for using search terms to identify responsive communications. *Id.* at ¶ 53. Uber focused on blanket statements about the impropriety of redactions rather than exploring options. *Id.* Plaintiff substantially un-redacted documents and reproduced them to Uber on March 31, 2026. *Id.* at 54. On April 3, 2026, Uber emailed stated they may be seeking sanctions. *Id.* at ¶ 55. At a conferral on April 7, 2026, Uber began the meeting by stating the company would seek sanctions unless Plaintiff could convince them otherwise. *Id.*; *see also* ECF No. 6280-16. No meaningful discussion of avoiding Court involvement was had. *Id.* This motion followed.

## II.    Any Prejudice to Uber Has Been or Will Be Cured

Plaintiff respectfully submits that Uber has not identified any meaningful prejudice beyond the general suggestion "that things would have been much, much different"[11] if discovery had proceeded differently, or that Uber had to "prod[]" and "follow up" with Plaintiff.[12] That is not the sort of prejudice that warrants sanctions. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). If it were, this Court would receive a sanctions motion along with every PTO 8 submission, and Plaintiffs in this MDL would have ample reason to seek sanctions for Uber's discovery intransigence. There is a reason that having to "follow up" with your litigation opponent is not harmful enough to warrant sanctions.

Further, the Court's order reopening discovery gives the parties time to complete discovery, including dealing with any materials that are to be unredacted (and any follow-up on discovery). Indeed, Plaintiff was already in the process of refreshing her discovery responses when the Court reopened discovery. Luther Decl. at ¶ 57. Counsel is recollecting Plaintiff's ESI and will refresh prior productions to include responsive documents generated after the last collection. *Id.* Plaintiff will also produce responsive materials that Uber has just recently requested via subpoena for deposition testimony of the fact witnesses discussed above. These requests are far broader that Uber's prior requests (for instance "all communications" with Plaintiff). *Id.* And, finally, in an effort to assuage any concerns about Plaintiff's past productions, Plaintiff will re-review all prior productions and collections to ensure that all responsive

---

[11] CMC Tr. at 14:12-14.

[12] Hearing Tr. at 21:9-12.

documents (including apparent duplicates) have been produced or properly logged as privileged. *Id.*[13] Plaintiff expects to be able to begin making productions shortly. And Plaintiff has agreed that the witnesses described above should be deposed, subject to certain limitations that the Court has already set. ECF No. 5823.

Additionally, despite Plaintiff's redactions, Uber has had access to many of the facts that it claimed were late disclosed since last summer. For instance, Uber makes much of the un-redaction of the verb fawn or fawning. Reply at 1. But when Plaintiff produced the same text thread on July 16, 2025, it included an unredacted message that used the word. Luther Decl. at ¶ 56, Ex 16 (redacted text thread) at 2-3; *see also* ECF No. 6280-11. The same document also explained how Plaintiff uses it: to describe a survival mechanism of appeasing, complying, accommodating, or going still, even when terrified, in order to survive trauma. *Id.* The same text thread includes an unredacted message describing that this happening during the Uber assault. Ex. 16 at 3. Thus, any suggestion that Plaintiff's March 2026 removal of redactions revealed her use of the fawn/fawning for the first time is untrue. (The un-redactions did reveal another instance of the same kind of usage.) Nor does another use of the word in the same context change the nature of either Plaintiff's case or Uber's defenses. The prejudice to Uber as to this exchange is limited or non-existent.

The re-opening of discovery also defeats Uber's request for fees and costs because there is no need to conduct "additional" discovery out of time. *See* Reply at 14-15. The parties need merely to get on with completing discovery pursuant to this Court's guidance and orders—the same discovery that, on Uber's telling, would have been conducted earlier if disclosures were handled differently. *See infra*.

**III.    Uber's Motion Is Not Properly Supported**

Finally, it bears mentioning that Uber's Reply does not remedy the motion's procedural and legal deficits. First, the Reply all but concedes that the motion for sanctions did not comply with Civil Local Rule 37-4, which requires conferral for the purpose of attempting to avoid Court involvement. Civ. L.R.

---

[13] Uber raises issues with Plaintiff's past privilege logs. Reply at 1, 13. Plaintiff addressed those concerns in PTO 8 briefing filed before this motion. *See* ECF No. 5987 at 6. "Once this issue was brought to counsel's attention, the privilege log was amended to remove the referenced citations and add appropriate cases for the privileges being asserted. The privilege logs correctly identified the basis for redaction . . . [c]ounsel regrets any error . . . ." *Id.*

37-4 ("When . . . a party *moves* for an award of attorney fees or other form of sanction under Fed. R. Civ. P. 37, the *motion* must . . . ." (emphasis added); 37-4(b)(2). As described above, a sanctions motion was already decided upon by Uber's lawyers before they scheduled a call to discuss it. *See* ECF No. 6280-16. Further, Uber failed to submit competent evidence that meaningful conferral on the sanctions motion had taken place when it filed its motion. Uber also failed to "itemize with particularity the otherwise unnecessary expenses . . . directly caused by the *alleged* violation." Civ. L.R. 37-4(b)(3) (emphasis added); *see* Reply at 14. The reference to *alleged* misconduct makes clear that such itemized accountings are due "[w]hen . . . a party moves for an award of attorney fees or other form of sanction," not at some later time. Civ. L.R. 37-4. Uber has not attempted to submit any expense, whether it occurred before the filing of its motion or afterwards. That defeats the request and suggests strongly that the principal purpose of this motion was to avoid a B.L. bellwether trial.

Second, Uber continues to eschew application of any particular legal standard to this dispute. Its Reply refers to "both Rule 37(c) and (3), as well as the Court's inherent authority" and, at the hearing, Uber's counsel made general reference to a "kind of a belt and suspenders approach to some extent from Uber" that "this conduct does [] fall under 37(c) in terms of failure to disclose and supplement, and also falls under 37(d) in terms of failure to serve proper answers . . . you know, I think the . . . inherent authority is an independent ground to impose sanctions, but I don't know that Your Honor needs to get there . . . ." Reply at 2, 15.[14] The differences matter. For instance, inherent authority can only be deployed upon a showing of a party's subjective intent. *See* ECF No. 6120 at 8-9. Uber seeks extraordinary remedies, but its papers do not cite a clear legal authority supporting their application.

\* \* \*

The motion for sanctions, ECF No. 5964, should be denied.

Dated: June 5, 2026.                                    Respectfully submitted,


                                                         /s/ *Sommer D. Luther*
                                                         Sommer D. Luther
                                                         Attorney for Plaintiff B.L.

---

[14] Hearing Tr. at 13:24 – 14:7.

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ *Sommer D. Luther*
Sommer D. Luther