United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

This Document Relates To:

ALL CASES.

Case No.  23-md-03084-CRB   (LJC)

**ORDER RESOLVING JOINT LETTER
REGARDING MOBILE EVENT LOG
DEFINITIONS**

Re: Dkt. No. 6368

Uber's systems generate "mobile event logs" with data from each ride completed using Uber's platform.  The parties have filed a joint letter brief in which Plaintiffs "request that the Court order Uber to produce documents sufficient to show the meaning of all event types used on a mobile event log."  Dkt. No. 6368 at 1.  Uber contends that it does not maintain documents defining all of the tens of thousands of different potential entries that might appear in these logs. *Id.* at 4; Dkt. No. 6369-2, ¶¶ 5–6 (provisionally under seal).

Plaintiffs assert that "[t]here is no dispute that mobile event logs are important pieces of evidence in each and every case."  Dkt. No. 6368.  Perhaps so, but it is not apparent that *ambiguous* entries on those logs will be relevant in every case, nor that every entry on every log will be relevant or must be decoded.  As Plaintiffs acknowledge, "some entries in the mobile events log are relatively straightforward." *Id.*

The parties previously raised this issue (among others) in May of 2025.  Dkt. No. 3069 at 3 (addressing Interrogatory No. 13).  After the parties met and conferred in the courtroom, they represented to the Court that they had resolved substantially all issues presented in that joint letter. Dkt. Nos. 3216, 3219.  Uber now asserts, and Plaintiffs do not dispute, that the parties at that time "reached an agreement . . . that if Plaintiffs had questions about the meaning of particular log

United States District Court
Northern District of California

entries, Uber would investigate and provide further information." Dkt. No. 6368 at 5. Plaintiffs assert that that "process was long, tedious, and is not scalable across all other cases being worked up, especially because the parties are now in the process of working up at least 200 additional cases." *Id.* at 2.

Plaintiffs have not shown that any overarching glossary of mobile event log terms exists that could be produced. Plaintiffs cite an Uber website indicating that it has undertaken a standardization effort related to this sort of data. But Uber's data science manager Todd Gaddis explains in a declaration that those recent efforts neither include a comprehensive glossary nor account for all historical events that might be included in logs at issue in this litigation:

> 3. Recently, Uber has worked to standardize mobile events on the top level, i.e., minimize use of ad-hoc "custom" events and assign a fixed category to each newly-created mobile event. This initiative is discussed in the October 2, 2025 blog post referenced by Plaintiffs. That standardization effort concerns high-level categorization of mobile analytics events; it does not mean that Uber maintains a comprehensive glossary, data dictionary, or other authoritative source defining every possible Mobile Events Log entry across Uber's systems and history.
>
> 4. However, over time, Uber engineers have created, at a minimum, tens of thousands of different mobile events entries, and the use and significance of many of these entries has evolved. Those entries were created for product, engineering, analytics, and operational purposes, not to serve as a litigation glossary or case-specific interpretive guide.

Dkt. No. 6369-2, ¶¶ 3–4 (provisionally under seal).[1]

To the extent Plaintiffs seek documents defining *all* of the mobile event terms at issue, the available record reflects that such documents do not exist, at least in any form that would be feasible to compile and produce. *See id.* ¶¶ 5–6. To the extent that Plaintiffs suggest an interrogatory could be an alternative avenue to compel production of the same comprehensive data dictionary, the Court agrees with Uber that responding to such an interrogatory—likely including many definitions that would not be relevant to any disputed issue in any case in this MDL—would be unduly burdensome and disproportionate to the needs of the case.

---

[1] Without resolving the question of whether any other portion of Gaddis's declaration might be subject to sealing, no basis is apparent to seal the portions quoted in this Order, which relate to a publicly disclosed standardization program and discuss Uber's documents only at a high level.

Plaintiffs argue that Uber's ability to respond to specific requests for definitions shows that Uber could produce a comprehensive list of all such definitions. Gaddis states in his declaration that he needed to undertake specific, targeted research to obtain individual definitions in a manner that would not be scalable to the thousands or tens of thousands of terms that appear across all logs, much less to account for the different contexts in which a given term might appear. Dkt. No. 6369-2, ¶¶ 7–9. The fact that Uber was able to respond to targeted inquiries does not show either that Uber has a feasibly ascertainable set of documents defining *all* of the mobile event terms that might appear in logs relevant to this litigation, or that Uber could feasibly compile such a comprehensive list.

That said, it has become clear in this litigation (if it was not already commonly known) that Uber is a company driven by data science, which collects and leverages vast amounts of data to support its business. Even crediting Uber's representations and evidence that is no single documents or compilation or "collection of documents that together comprehensively and authoritatively define all such entries across the platform," Dkt. No. 6368 at 4, Uber's recent standardization effort indicate that at least some entries have been defined in some manner and also suggests that at least some limited dictionaries or glossaries might now exist. Gaddis stops short of disclaiming any such compilations, instead asserting that "Uber does not maintain a glossary, data dictionary or other document or electronic source containing a comprehensive collection of up-to-date and accurate meanings, definitions or descriptions of *all* of the possible mobile events entries." *Id.* ¶ 5 (emphasis added).

If, as part of the standardization initiative or otherwise, Uber has compiled partial dictionaries, glossaries, indices, or other such compilations defining a significant number of potentially relevant log entry terms, those should be produced—even if they may not accurately reflect the usage of terms in all instances. The parties are ORDERED to meet and confer as to what if any such documents exist and whether they can be produced. The parties should also consider whether Plaintiffs can identify specific categories of log entries that might be relevant (e.g., all terms that would indicate an audio recording had been created) and whether it is feasible for Uber to identify or define the terms in those categories. If the parties are unable to reach an

United States District Court
Northern District of California

agreement, Plaintiffs may take a Rule 30(b)(6) deposition to address the existence of definitions for relevant event entries in the mobile logs, the existence of any dictionary or similar documents that define at least some portion of the relevant event types, the feasibility of their production, and/or the degree to which Uber could respond to specific interrogatories seeking definitions of certain categories of events.

The Court notes that this letter exceeds the five-page limit set by Pretrial Order No. 8. Though it appears that all of the parties' substantive argument in this letter could have been contained in five pages if arranged differently, that has not been true for all such letters that the parties have filed recently. *See* Dkt. No. 6251. To promote compliance with the page limit going forward, all joint letter submitted pursuant to Pretrial Order No. 8 must include all substantive argument within five consecutively numbered pages (or within whatever other page limit the Court might specially set for a given dispute). Future letters that fail to comply will be stricken sua sponte.

**IT IS SO ORDERED.**

Dated: June 11, 2026

LISA J. CISNEROS
United States Magistrate Judge

4