[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' STATEMENT RE: BELLWETHER TRIAL SELECTION AND SCHEDULING** |
| This Document Relates to:<br><br>ALL CASES | |

Following the most recent CMC, Uber and *B.L.* counsel stipulated that *B.L.* should not proceed as the next bellwether trial. ECF 6449. Presumably, Uber will resolve the case.

Following that development, Uber and Plaintiffs' leadership met and conferred extensively, exchanged drafts of each side's positions, and agreed to file a joint submission in advance of the June 16 CMC. Then, once the Court granted the *B.L.* stipulation, Uber refused to participate in a joint filing, instead insisting on not filing anything until after the CMC. But time is short to plan for trial in the fall. For that reason, Plaintiffs submit their own position below.

**INTRODUCTION**

At the most recent CMC, the Court urged the parties to identify an alternate bellwether, one that does not raise concerns presented by *B.L.* or the bellwethers already tried. Plaintiffs have identified *Jane Doe QLF 0001* as the best option, one that can be tried in this Court in San Francisco. This case involves a serious sexual assault, for which the Uber driver was charged, tried, and convicted. The driver had committed multiple incidents of sexual misconduct before Uber sent him to drive Jane Doe. Uber knew or should have known of those instances, but nonetheless dispatched him late at night for a ride originating in an area heavy with bars and nightclubs. Uber sent this dangerous driver without providing any warning to Doe of the driver's history and without any video monitoring. The assault Doe suffered on that Uber ride caused Doe lasting trauma, requiring ongoing treatment. Given these facts, it seems unlikely (though not impossible) that Uber will revert to the same strategies of diminishing the harm and questioning survivor credibility and behavior in a trial of Doe's case. Instead, the trial can focus more narrowly on Uber's liability in sending a man with this dangerous profile to drive Doe.

While *Jane Doe QLF 0001* is not a Wave 1 case, it is in the bellwether pool, and discovery that has already occurred means it can be ready for trial in the Northern District of California in mid-October. Plaintiffs' leadership is firmly committed to engaging in all aspects of the remaining discovery to ensure that the case is ready for trial and that the trial is one that deserves the resources of the MDL court and the parties.

If the Court declines to try Doe's case, *A.R.2* can serve as the next bellwether trial. Uber may try to discredit A.R.2 and her counsel to try to prevent *A.R.2* from going to trial. It appears

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084

Uber will make such arguments to avoid trial in any bellwether case it doesn't like (the company certainly did this in *Dean*). This tactic is in keeping with Uber's overall strategy for defending these sexual assault cases: embarrass, discredit, intimidate.[1] The Court should not be distracted. As shown below, *A.R.2* is an appropriate bellwether case.

During meet-and-confer, Uber proposed trying instead *LCHB128* or *Jane Roe CL 68*. These are bad options. In *LCHB128*, Arizona law would apply as it did in *Dean*. Trying another case under the same state law does not advance the ball in this MDL. *Jane Roe CL 68*), like every other defense pick, was clearly selected because it presents a highly vulnerable plaintiff (a woman who works as an exotic dancer), who Uber will not doubt paint as lacking credibility and unworthy of justice for the assault she suffered. There has been enough of that tactic in this MDL already. Working up *Jane Roe CL 68* is not a good use of the Court's or the PSC's resources.

More generally, Uber's selections reflect an incessant focus on its "taxonomy" as a lodestar for bellwether selection, a focus that is misguided. The common questions in this MDL do not go to "how do juries value offensive sexual contact," but rather "how do juries evaluate Uber's role in connection with sexual assaults committed by Uber drivers." *See Uber Techs., Inc v. JPML*, 131 F. 4th 661, 668-69 (9th Cir. 2025). And the relevant question for the Court is not "how do we try as many different kinds of sexual assaults as possible" but rather "what is the best use of the MDL's time and resources."

So, the Court should identify bellwether trials that will efficiently move the ball forward on the key common questions. That means looking at Uber's liability and the state laws at issue. A trial interrogating a plaintiff about "how bad" a "touch of the leg" (which was actually a groping of the inner thigh) was and is not the best use of the Court's time. As the Court has heard from unrebutted expert testimony (testimony supported by Uber's own executives), the specific nature of the assault itself is not dispositive of the harm and the damages caused. Uber had every opportunity to defend its taxonomy in Court with testimony from experts or from the non-profits

---

[1] Meanwhile, Uber itself engages in wide-ranging discovery misconduct, including improper privilege designation of more than 29,000 documents and ongoing failure to timely produce crucial documents. *See*, *e.g.*, ECF 3545 (Magistrate Judge order re Uber's failure to comply with court orders concerning production of company polices).

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084

Uber works with, but declined to do so.

Finally, the last draft of Uber's position statement insisted on rehashing the disputes in *B.L.*, even though Uber agreed to a stay of proceedings in that case. Uber argued that the Court should allow Uber to pick the next bellwether trial because Plaintiffs should not be "rewarded" or receive a "windfall" for the removal of *B.L.* from the trial pool. Nonsense. Plaintiffs' leadership put an enormous amount of time and resources into pre-trial preparation in *B.L*, including working with experts, briefing legal issues, and other common-benefit work. The stipulation by Uber and individual B.L.'s counsel to pull that case down is not a "windfall" to Plaintiffs (quite the opposite). It also does not justify derailing the progress of these proceedings by trying cases that will not advance the MDL's conclusion. To the contrary, comprehensive resolution of this MDL is only possible if the parties have firm trial dates for cases that will actually move the needle.

**I.     The Court should try *Jane Doe QLF 0001*, followed by *A.R.2.***

*Jane Doe QLF 0001* is the right choice for the next bellwether trial for several reasons. First, Jane Doe's assault occurred in Texas, where hundreds of MDL Plaintiffs also allege they were harmed. Second, in Jane Doe's case, the Uber driver has already been convicted and sentenced for assaulting Plaintiff (including forcing her to perform oral sex on him), so the trial will focus on whether Uber's policies and practices were unreasonable, rather than whether the incident happened. Third, the damages Jane Doe suffered are significant and thus justify the substantial time and resources required for a bellwether case. Further, the criminal proceedings, together with discovery completed in state court before Jane Doe's case was re-filed in the MDL, mean the case is more advanced than other bellwether cases outside of Wave 1.

*Jane Doe QLF 0001* involves theories of liability common to other cases that were not tested in *Dean*, including Uber's decision to dispatch a driver with a known prior criminal history of sexual assault and reports of sexual misconduct while driving for Uber, plus Uber's failure to implement adequate safety features for "guest riders" (passengers who take Uber because someone calls them a ride, a group Uber has identified as high risk and comprise a significant number of

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084

MDL cases).[2]

Specifically, in 2017, Mr. Le received a citation and was arrested for assaulting a woman and grabbing her breasts. The victim reported the assault to Uber, as Mr. Le had been pretending to be an Uber driver to commit this assault, and sent Uber Mr. Le's name and photograph.[3] (This victim testified in Mr. Le's trial arising from the *Jane Doe QLF 0001* assault as well.) Despite warnings about Mr. Le from its own background check and from the 2017 victim, Uber let Mr. Le become an actual Uber driver anyway. Shortly thereafter, and before *Jane Doe*'s assault in 2020, Uber received a complaint that Mr. Le offered to come into a rider's home to give her a massage. After interviewing Mr. Le, Uber reactivated his account, describing the incident as "resolved sexual misconduct resulting in 2 notations." Uber then dispatched Mr. Le to pick up a rider late at night leaving from a bar area, *Jane Doe*, whose friend had ordered an Uber believing it would ensure a safe ride home.[4]

*Jane Doe QLF 0001* is a Texas case, and there are nearly 400 Texas cases pending in the MDL. Despite being a Texas case, *Jane Doe QLF 0001* may be tried in N.D. Cal. because Uber did not move to transfer the case. *See* ECF 3020 at 2 n.2. And, even though the case was not part of Wave 1, and so has not completed fact or expert discovery, it can be worked up relatively quickly. That is because, in addition to the record developed during Mr. Le's criminal trial (transcripts of which Uber has), this case is unusual in that the parties litigated in state court before moving the case, by agreement, to the federal forum. So, some discovery work has already been done. Uber has suggested that *Jane Doe QLF 0001* needs to produce certain medical records. But based on Leadership's review, *Jane Doe QLF 0001* apparently has complied with amended PTO 10 requiring medical-record production, and Uber has not served any deficiency notice, suggesting these

---

[2] Uber has suggested that there are few "guest-rider" cases in the MDL, but that is not true. Plaintiffs have not done a comprehensive review of the pending cases on this point, but a recent review of a sample of cases suggests that at least 12% of MDL cases involve rides requested by another person. (The sample included some cases have since been dismissed, but that should not bias the statistic.)

[3] This woman swore under oath she notified Uber and provided the photograph.

[4] While every case is unique as to the notice Uber received as to a particular driver, this case squarely addresses whether Uber's policies and practices regarding screening are reasonable or negligent. The jury's finding on these questions will be meaningful and instructive for future cases and resolution.

complaints are red herrings. In any event, there remains ample time to do whatever discovery is necessary on both sides.

Because of the work already done, and because focusing on one case will enable to the parties to complete discovery quickly, *Jane Doe QLF 0001* can be ready for trial in October consistent with the following schedule, assuming full cooperation among the parties to keep discovery on track:

| EVENT | DATE |
|---|---|
| Initial Disclosures | June 18, 2026 |
| Expert Reports | August 7, 2026 |
| Motions for Summary Judgment / *Daubert* Motions | August 28, 2026 |
| Close of discovery | September 11, 2026 |
| Jury Questionnaire / Voir Dire Questions | September 11, 2026 |
| Motions in Limine / 412 Motions | September 14, 2026 |
| Witness Lists / Exhibit Lists | September 14, 2026 |
| Oppositions to Motions for Summary Judgment / *Daubert* Motions | September 18, 2026 |
| Replies for Motions for Summary Judgment / *Daubert* Motions | October 2, 2026 |
| Jury Instructions / Verdict Forms | October 5, 2026 |
| Oppositions to Motions in Limine / 412 Motions | October 5, 2026 |
| Joint Proposed Pretrial Order | October 9, 2026 |
| Pretrial Conference | October __, 2026 at ___ |
| Trial Briefs (if any) | October 13, 2026 |
| Branded Exhibits | October 14, 2026 |
| Jury Selection | October 20, 2026 |

In arguing that Plaintiffs' proposed schedule is too short, Uber compared *Jane Doe QLF 0001* to the earlier Wave 1 bellwethers. But working up one case is much easier than working up six. And, the Wave 1 cases were the first MDL cases to complete discovery, and so necessitated additional time. For example, multiple Uber 30(b)(6) witnesses (like Mr. Wong and Ms. Nilles) needed to be deposed multiple times because they were not prepared for their depositions. Discovery in *B.L.* was delayed because Uber repeatedly produced information about the wrong driver (and concealed, for example, that *B.L.*'s driver continued to drive on the platform). And Uber

revealed that the *Dean* driver was using an Uber rental car only at summary judgment (after previously swearing under oath he was not). On a tight schedule, and with both sides laser-focused on one case, discovery can move much faster.

Other developments have freed up Uber's counsel to focus on moving this case to trial: a state court sexual assault case set for July has resolved, and the next JCCP trial in September has also resolved. If the Court proceeds with *Jane Doe QLF 0001*, then *A.R.2* can follow. The parties can meet and confer on an appropriate trial date in light of the discovery concerns Uber has raised in connection with that case.

The benefits to the MDL process of proceeding with *Jane Doe QLF 0001* are clear. As the Court has seen, Uber's defenses in the cases thus far have focused on survivor behavior: how the Plaintiff acted, who she told, when she told, and what she told. It does not matter whether the assault was the most severe by Uber's definition (*Dean*) or less severe (*WHB 823*). It does not matter whether the Plaintiff told the police (Dean yes, WHB 823 no), reported to Uber (Dean yes, WHB 823 no), or told family members (both yes). In all instances, Uber is likely to argue that the plaintiff is lying about the incident and has suffered too much other trauma to prove damages. That certainly will be the company's focus in *A.R.2*.

*Jane Doe QLF 001*, by contrast, would allow for a trial without that same hyper-focus on plaintiff-specific issues. In *Jane Doe*, the driver Victor Le groped the Plaintiff and forced her into performing oral sex. Plaintiff reported the assault to family and the police. The driver was charged with, tried, and convicted of sexual assault. *Texas v. Le*, No. 1653872D (Tex. Dist. Ct.). Plaintiff and her mother both testified at Mr. Le's trial. Because the driver was convicted, it seems very unlikely that Uber would argue that the assault did not occur (or was consensual). So, trial will focus on Uber's liability as much as any of these cases can.[5]

---

[5] Uber's anticipated comparison of the criminal conviction in *Jane Doe QLF 0001* to the evidence in *Dean* that the driver was not charged makes no sense. As the Court pointed out in *Dean*, there are countless reasons why a prosecutor might decline to bring charges. In contrast, the fact that the driver in *Jane Doe QLF 0001* was convicted of the assault indisputably makes it very unlikely that Uber will spend trial time arguing the assault did not occur.

**II.    Alternatively, the Court can try *A.R.2* in September, with *Jane Doe QLF 0001* to follow.**

Alternatively, the Court can try *A.R.2* in September, followed by *Jane Doe QLF 0001*. Given the limited discovery that remains, this case will be ready for trial in September, as stipulated by the parties. ECF 5623. If the Court elects to try *A.R.2*, the parties should meet and confer immediately regarding the pre-trial schedule and propose one to the Court within 5 days, with the trial to commence on September 14, 2026.

**a.    A.R.2 remains an appropriate bellwether.**

A.R.2 is a professional who works at a San Francisco-headquartered tech company as a strategy and program leader designing platforms for other companies. A.R.2 was sexually assaulted on August 10, 2023, in San Francisco, California. After several drinks at a charity event, *A.R.2* ordered an Uber ride at 12:38 A.M. from the North Beach neighborhood, an area heavy with bars and restaurants, to her apartment in the Mission District. Upon pickup, the driver (Michael Le) urged *A.R.2* to sit in the front seat, and she complied. Mid-way through the ride in a deserted area on Van Ness Avenue, Mr. Le locked the car doors, indicated on his app that the ride had ended, and continued driving. At a red light, he pulled over and forcibly kissed A.R.2 on the lips once, then attempted to kiss her a second time. Although in shock and terrified, A.R.2 was able to unbuckle her seatbelt, unlock the car door and flee the vehicle. She ran across several lanes of traffic to a bus stop to get home. A.R.2, who, due to her work experience, was familiar with the reporting channels used by Uber, reported the assault to Uber promptly. Today, she continues to suffer from several mental health conditions, including diagnosed PTSD, due to the assault and what could have happened if she was not able to escape.

Plaintiff's liability theories in *A.R.2* are distinct from those tested in *Dean* or *WHB 823*. Specifically, Uber dispatched a driver with a known criminal history of sexual assault and reports of sexual misconduct while driving for Uber. Uber's background checks failed to pick up Mr. Le's prior felony conviction for aggravated assault and kidnapping. He also had been charged with aggravated assault after he allegedly had sex with a woman, recorded the interaction without her consent, and subsequently used force, threats and coercion to continue the relationship against her

will.

Uber also failed to investigate prior complaints of sexual assault by Uber passengers of sexual assault and misconduct by Mr. Le. On June 18, 2023, less than two months before A.R.2 was sexually assaulted, Uber received a complaint in Chinese from an Uber rider stating "rapist." Uber classified the "rapist" report as sexual misconduct and reported the incident to the California Public Utilities Commission. Other than that, Uber took virtually no action. It sent a single written message—in English—to the reporting party, and did nothing else to follow-up with the rider. It never confronted Mr. Le with the accusation made about him, or did a deeper dive on his background in light of this concerning report. It did not warn A.R. that just weeks before she got in the car with Mr. Le another rider has reported him as a "rapist."

Uber's disregard of the danger Mr. Le posed continued even after receiving A.R.2's report of assault. On top of that report, Uber's own data showed that the ride involved suspiciously long stops, Mr. Le prematurely ending the ride, and then, after A.R.2 escaped, Mr. Le. showing up— and lingering—at the intended drop-off location (A.R.2's apartment in the Mission). Despite all of this evidence, Uber never contacted Mr. Le about the ride and did not deactivate Mr. Le until over a year later. Uber then waited another six months to report Mr. Le. to the Industry Sharing Safety Program between Uber and Lyft. During that 6-month delay, Mr. Le continued to drive for Lyft with no one but Uber aware of his dangerous profile.

Uber has suggested that the assault—kissing—in *A.R.2* is not representative, but this argument illustrates how misguided Uber's taxonomy-focused approach is. Kissing is defined, by Uber, as "touching of a sexual body part." Yet when convenient, Uber defines "kissing" as its own unique category.

Uber will defend *A.R.2* by challenging her credibility as to whether the sexual conduct was consensual, and questioning her damages—similar to what the Court saw in *Dean* and *WHB823*.

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084

For that reason, *Jane Doe QLF 0001* is the stronger choice, but *A.R.2* should still be tried.

### b. Uber's allegations of discovery misconduct should not prevent the Court from keeping *A.R.2* in line for trial.

To be clear, Plaintiffs' leadership takes any allegations of failure to comply with discovery rules seriously. They are committed to resolving any issues with *A.R.2*. But it bears emphasis that the issues Uber raises are not of the kind or degree of the allegations made in *B.L.*—not even close. The *A.R.2* issues were first raised to and resolved in part by Judge Cisneros nearly a year ago at the same time as she resolved lingering disputes in *Dean* (those disputes did not delay trial in that case). *See* ECF 3786 (denying request for sanctions, ordering meet and confer on requested additional depositions); ECF 3985 (ordering two additional depositions limited to 90 minutes and specified topics). Co-Lead Counsel Rachel Abrams personally investigated Uber's allegations, determined them to be unfounded or inflated, and addressed them. To be clear: nothing was withheld or hidden by Pfeiffer Wolf, as evidenced by the fact that Uber did not seek additional relief from Judge Cisneros after the two additional depositions that were ordered.

After those depositions, the parties agreed months ago (voluntarily, not under Court order) to a re-collection protocol in which Plaintiff and five third-party witnesses (her friends and parents) re-searched their text messages, emails, social media, photos, videos, and other records using additional search terms. This expansive and overly inclusive recollection process yielded over 1,900 pages of documents that appear to be, for the most part, irrelevant or unresponsive to Uber's requests. Of the 1,900+ pages produced on June 6, only 306 pages contain communications related to the subject incident, A.R.2's damages, or the lawsuit. The bulk of these documents relate to damages arising from *A.R.2*'s continued suffering as the lawsuit progresses and are therefore tangential to the core liability issues at trial.

Uber highlights a few communications that Uber claims should have been produced earlier, but has no concrete description of what, if any, specific additional discovery is required now. Uber's comments on the evidence sound like trial arguments, not reasons for delay. To the extent there is a need for additional discovery, there is ample time to complete it (just as Plaintiffs are still working to secure complete discovery from third-parties Lyft and Checkr).

### III. The Court should reject Uber's proposal to try *LHCB128* or *Jane Roe CL 68* next.

Uber's proposal that the Court try *LCHB128* as a bellwether next does not make sense. *First*, Plaintiffs expect Uber will defend *LCHB128* the same way it defended *Dean* and *Mensing*: by attacking the victim's credibility—pointing to her history of sexual trauma and past drug addiction. So, selecting that case will not yield a trial any more focused on Uber's liability than the cases already tried. *Second*, the parties already tried an Arizona case, and the key legal issues remain pending on post-trial motions and then appeal. *Third*, a relatively lower-level incident by Uber's definition (groping) will, as the Court could see in *WHB 823*, result in a trial focused on "how bad" the assault was or what exactly the driver did. In contrast, a more "severe" assault—as happened in *Jane Doe QLF 0001* and in nearly 20 percent of the anticipated MDL cases, will focus trial on Uber's liability. It also bears noting that the firm-specific inventory settlements Uber has reached came with trials in rape cases impending.

Uber's proposal to work up and try *Jane Roe CL 68* makes even less sense. Jane Roe was working as an exotic dancer and escort at the time her driver assaulted her, and was wearing work clothes when she entered the Uber. While most of those facts are almost certainly inadmissible, they illustrate how Uber will make trial in *Jane Roe CL 68* entirely a referendum on the plaintiff's credibility and worth. That's true of every defense pick (as the Court saw in the *WHB 823* trial). While cases like *Jane Roe CL 68* deserve trials at some point, they do not justify the intense focus of the Court and leadership as a bellwether.

Another problem is the risk that Uber will settle its own defense picks (a problem the Court anticipated when it selected a plaintiff pick to go first). Uber has already settled *D.J.* and *J.E.* And, recall that when Uber originally moved to strike *B.L.* as the first bellwether, the company proposed proceeding with *WHB 318*. Uber has since withdrawn that request. Uber and the same firm (Williams Hart) also stipulated to dismiss with prejudice the JCCP bellwether case that was supposed to go in September. The Court should inquire of Uber how many defense picks remain in the pool.

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084

**IV.    The Court should order the parties to meet and confer and submit proposals for next steps in the MDL generally.**

Several weeks ago, Plaintiffs sent Uber a proposal for the next steps regarding MDL cases, including replenishing the bellwether cases that Uber settled or otherwise resolved, and addressing cases that deserve trial dates, but do not make sense as bellwethers. Plaintiffs proposed a combination of compressed trial schedules and transfer/remand waves. In response, Uber proposed random selection of a limited number of cases.

While the parties were working on the joint submission concerning the next bellwether trial, they agreed to continue discussing global next steps and submit something to the Court in advance of a future CMC. When Uber declined to participate in the joint filing, it threatened to brief global next steps unilaterally if Plaintiffs proceeded with submitting a brief on the identify of the next bellwether trial. Uber's retaliatory tactics are inappropriate and unproductive. The Court should order the parties to discuss next steps and address before the next CMC.

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084

Dated: June 15, 2026                    Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Plaintiffs' Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: June 15, 2026                    By:

*/s/ Andrew R. Kaufman*

STATEMENT RE: BELLWETHER TRIAL SELECTION
AND SCHEDULING.
CASE NO. 3:23-MD-03084