*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER**<br><br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**JOINT STATEMENT**

Pursuant to ECF 6354, and by way of follow-up to the joint status report submitted on June 8, 2026 (ECF 6427), Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") (jointly, "the parties"), respectfully submit this Joint Statement to update the Court on the course of negotiations regarding Plaintiffs' requested supplement custodial file collections from Uber.

The parties advise the Court that they have had further meet-and-confer discussions to attempt to resolve issues related to production of custodial files, which included the parties' e-discovery consultants, as outlined further below.

## I.    Deadline for Uber to Produce Documents from Additional Custodians

### a.  Plaintiffs' Position

The dispute over the discovery at issue began more than three months ago and has been the subject of multiple Court orders, yet Uber is not meaningfully closer to producing it today than it was in March. Uber, one of the most sophisticated tech companies in the world, claims to be unable to make simple, garden-variety document production happen on a reasonable schedule. But the issue is not that the production is too complex or voluminous to complete, but rather, that Uber simply refuses to get started.

Despite the Court's May 15 Order, Uber has not completed collection of data for any of the four custodians at issue and has not even begun to collect any data for Chad Dobbs. This is particularly egregious considering that Uber brought Mr. Dobbs live to the Dean trial and understands the importance of his file to Plaintiffs. Nor has Uber begun to collect Slack messages for these custodians despite knowing the importance of Slack to Plaintiffs. Similarly, Uber has not begun to collect 2025 data for a single custodian, despite the Court's order on this issue more than two weeks ago. (ECF 6358) Uber's egregious (if not sanctionable), unfounded delays have cost the parties significant time.[1]

Following the submission of the parties' Joint Status Report of June 8, 2026, the parties met on June 11, 2026, to discuss the status of Uber's attempts to collect documents from the four custodians who

---

[1] Defendant cites to the Declaration of Jamie Brown, *infra*, in support of their position. The Brown Declaration was produced to Plaintiffs at 12:45am EDT on June 18, 2026. Plaintiffs have not had an opportunity to consult with e-Discovery experts or substantively address it, and therefore take the position that the Declaration is inappropriate for inclusion in this Joint Statement.

are the subject of the Court's May 15, 2026 Order (ECF 6209, modified by ECF 6319 and 6354). The meeting included the parties' e-discovery consultants for input on modifications to the collection, review and/or production process to advance the ball. Plaintiffs sought to understand any specific bottlenecks in the process, including the size of custodial files by source, that may inform adjustments to the discovery that Plaintiffs request. Uber identified three ways it believed discovery could be sped up: limit the number of custodians, limit the timeframe of collection, and limit the sources that data is collected from (for example, email, Google Drive, Slack, etc.). Plaintiffs also identified modifications to the TAR process that could speed up production. Plaintiffs agreed to consider Uber's suggestions, however, Plaintiffs requested that Uber provide information about how much data each custodian has, by source and year, to inform their selection.

Plaintiffs seek the Court's assistance in moving this forward and suggest that the Court should not be swayed by Uber's burden arguments. Plaintiffs worked in good faith to significantly reduce their requests to a reasonable and manageable level. The "impossibility" of producing documents on this schedule is not an impossibility at all, it is simply a matter of the resources Uber is willing to provide to the project. At this point, any burden created by the urgency of this schedule is one of Uber's own making by refusing to take even the most basic steps to move this process forward.

In an effort to narrow the dispute further, Plaintiffs are willing to reduce their request for the files of live trial witnesses significantly and request that Uber produce files only for witnesses Uber has called at trial or will call in the upcoming trials. Under this proposal, Plaintiffs cut their request by more than half, as Uber would be required to produce files for just Boman and Dobbs (so long as Uber does not intend to have any witness testify live if Uber has not already produced their file). In addition, Plaintiffs have offered a temporal limitation, agreeing to forgo documents from before January 1, 2018. Plaintiffs maintain their request to depose, before trial, any live witness who has not been previously deposed in their individual capacity and for Uber to produce the corresponding custodial file sufficiently in advance to allow adequate time for review before each deposition as this Court has already ordered.

b. **Uber's Position**

Uber's collection of custodial files from Emilie Boman, Todd Gaddis, Erin O'Keefe, and Chad

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

Dobbs—which to date includes more than *4 million documents collected*—is in progress. As previewed in Uber's earlier submissions, the custodial files of these four individuals contain very large volumes of data from eight disparate data sources and the collections have been ongoing for several weeks. On June 11, pursuant to the parties' June 8 submission (ECF 6427), Uber identified the information sources from which it is collecting documents and provided Plaintiffs with initial search term hit reports for processed data, organized by terms and custodians. Uber provided a further update to Plaintiffs on its collections and processing on June 17, including a detailed year-by-year breakdown of custodial sources for available processed data sources (which was requested by Plaintiffs during the June 11 meet and confer).

To date, Uber has fully processed, de-duplicated, and run search terms across more than 1.2 million documents, yielding more than 250,000 documents eligible for the TAR process. In addition, as set forth in the June 17, 2026 Declaration of Jamie Brown, filed herewith,[2] approximately *500,000 more documents have been processed (with search term culling pending completion)*, another estimated *2.5 million-plus documents have been collected and are being processed* (which, contrary to Plaintiffs' claims, include an estimated more than 1 million documents from Chad Dobbs), and *unknown volumes of additional documents* from Google Drive, Slack, and Box are still being collected.

The documents are being collected and processed as quickly as practicable, and, following its June 11 meet-and-confer with Plaintiffs and discussion between the parties' respective e-discovery consultants, Jonathan Jaffe and Jamie Brown, Uber agreed to accelerate the TAR re-training process such that it takes place while the collection and processing of certain data continue (even though doing so is less efficient and more costly). Uber anticipates it will begin review of documents by June 29 and then begin rolling productions. Uber will make best efforts to substantially complete productions of these custodial files on a rolling basis by August 31 and will inform Plaintiffs of substantial completions as they occur.[3]

---

[2] Any claims of surprise by Plaintiffs regarding Ms. Brown's declaration should be rejected, particularly given that Plaintiffs did not exchange a *first draft* of their positions until 11:15 pm ET on the day of the filing. Moreover, the substance of Ms. Brown's declaration (including that millions of documents have been collected by Uber) has been referenced in Ms. Brown's prior declaration, the parties' June 11 meet-and-confer discussion, and/or correspondence between the parties, and the declaration was referenced in Uber's initial exchange of its positions on the evening of June 17.

[3] Uber is proceeding with collection and processing and is engaging in further discussions with Plaintiffs without waiver of its rights with respect to the Court's May 15 and May 28 orders. Undertakings set forth in this status report are made subject to any relief granted by the Court pursuant to Uber's pending Rule 72 objections.

3

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

## II.    Plaintiffs' Request for Full Supplementation Through December 31, 2025

### a.  Plaintiffs' Position

Plaintiffs' initial request concerned only one year of data for 28 custodians. On its face, that is not an extraordinary request, particularly in a case of this magnitude. But the issue is not that the production is too complex or voluminous to complete, but rather, that Uber simply refuses to get started. Nonetheless, Plaintiffs have agreed to limit their request to just 10 of these 28 custodians, so long as Uber does not intend to bring any of the remaining 18 witnesses to trial. If Uber intends to have any of the remaining witnesses testify live at trial, then Plaintiffs also request that Uber supplement those files through December 31, 2025. Similarly, Plaintiffs are willing to forgo the Court-ordered supplemental deposition of Sachin Kansal for the time being if Uber commits not to call Mr. Kansal to testify at the upcoming trials. These modifications would significantly reduce Uber's claimed burden.

The parties continue to discuss which 10 of the 28 custodians will be selected for the supplemental document production. However, Uber has not provided even threshold information about what data sources exist for these custodians and how much data is contained in each source leaves Plaintiffs and the Court to evaluate burden without the benefit of basic source and volume information. Nonetheless, again in order to reach the point of production more quickly, Plaintiffs are willing to choose 10 custodians without that information. The parties are in discussions to finalize the selection of the 10 custodians for supplemental production. Plaintiffs have informed Uber of 5[4] of the 10 custodians from which they seek discovery so as not to delay the collection, review and process; however, it is Plaintiffs understanding that Uber has not even begun collection of those 5 custodians that Uber has not disputed. At this juncture, it is imperative that Uber begin collection of at least those 5 custodians immediately so that the discovery that Plaintiffs are owed can be completed sufficiently prior to the trials scheduled for September and October 2026.

### b.  Uber's Position

Unfortunately, the parties' negotiations regarding Plaintiffs' request for supplementation through

---

[4]    Plaintiffs initially identified 6 custodians for supplemental production, including Sachin Kansal; if Uber commits not to call Mr. Kansal, Plaintiffs will not seek collection of his documents.

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

2025 confirm that Plaintiffs' aim is not to obtain additional information actually needed for litigation of these cases, but rather to burden and harass Uber (and interfere with its trial preparation) by insisting on production of large volumes of documents from a significant number of custodians within an unreasonably short time frame. The impact of this strategy will be particularly acute now that Judge Breyer has set a case for trial in September that is only in the early stages of discovery.

Plaintiffs initially indicated that "approximately 20" custodians (of a possible 28) were appropriate for supplementation, but did not identify those individuals until June 15. One day later, on June 16, Plaintiffs communicated that "at this time . . . Plaintiffs are willing to narrow the number of custodians for the current supplemental production to 10" but again did not immediately identify those individuals. Plaintiffs requested information that they know Uber could only provide after completing collection and processing of the data for the 10 unidentified custodians—a process that will take a minimum of weeks (if not months) to complete and could only *begin* upon Plaintiffs' identification of the individuals at issue. Moreover, at no time have Plaintiffs explained how *any* potential custodians are specifically tethered to developments in 2025 that purportedly bear on the issues in this litigation.

While Plaintiffs' request for this supplementation was based on the filing of more than 200 cases with alleged incidents that occurred in 2025, ECF 6213 at 1, no such case is set for an imminent trial. Rather, the next MDL trial involves an alleged incident on a ride that occurred in mid-2020. Given the parties' need to conduct additional case-specific discovery for the upcoming trial case and undertake other trial preparation, Plaintiffs' request that Uber simultaneously engage in the collection of more than 1 million documents and review and produce tens of thousands (if not over 100,000) additional documents, which may someday be relevant to the recently filed cases, is plainly burdensome and harassing—and thus disproportionate. Without waiving its position that supplementation through December 31, 2025 is unnecessary, Uber submits that the parties should continue to meet and confer to discuss topics relevant to specific 2025 developments and identify a reasonable number of custodians who are tied to such topics, and absent agreement, submit competing proposals by June 26. Plaintiffs repeatedly suggest that the parties are discussing "which 10" custodians should be selected but Uber has not agreed that 10 is an

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER
REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

appropriate number. For any custodians that the Court orders are appropriate, Uber will undertake collections with productions to take place following the September 2026 trial.

By: */s/ Roopal P. Luhana (Pro Hac Vice)*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

By: */s/ Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Christopher D. Cox (Pro Hac Vice)
Jessica Davidson (Pro Hac Vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
christopher.cox@kirkland.com
jessica.davidson@kirkland.com

Allison M. Brown (Pro Hac Vice)
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER, LLC, And RASIER-CA, LLC

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

**ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the above signatories.

Dated: June 17, 2026

*/s/ Laura Vartain Horn*

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/  *Laura Vartain Horn*

JOINT STATUS REPORT PURSUANT TO ECF 6354 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB