Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
AND RASIER-CA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| | No. 3:23-md-03084-CRB-LJC |
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR RECONSIDERATION AND STAY OF ORDER** |
| This Document Relates to:<br><br>All Cases | Magistrate Judge: Honorable Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

- 1 -

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-MD-3084-CRB-LJC

### **MEMORANDUM OF POINTS AND AUTHORITIES**

Uber respectfully moves the Court to reconsider and stay portions of its June 11, 2026 Order requiring Uber to: (1) produce Bliss and Jira data through 2025, by June 18, 2026; and (2) supplement Uber's categorized incident report charts by June 30, 2026 and reassess those charts annually until completion of the MDL proceeding. Reconsideration is warranted because Uber did not previously have the opportunity to brief why these obligations are unduly burdensome and disproportionate to the needs of the litigation and why the Jira/Bliss production cannot be accomplished within the Court's deadline.

As detailed in the attached Declaration of Michael B. Shortnacy, compliance with the Court's order regarding Bliss and Jira data would be extremely burdensome because of the many time-consuming and expensive steps required to properly review and redact tens of thousands of rows of data for personally identifiable information and privileged content.

Moreover, these burdens are vastly disproportionate to the needs of the case. The Court ordered production of Jira and Bliss data to allow Plaintiffs to test Uber's statements about "support abuse" and invalid reports. But raw Jira and Bliss ticket data is not necessary for that purpose. Rather, the relevant discovery for that inquiry is incident-level data showing whether reports were categorized, re-categorized, de-duplicated, or determined to be invalid—the type of data reflected in Flack and in the incident-report chart supplementation that Uber is producing. By contrast, raw Jira and Bliss tickets contain duplicative, unaudited, and freeform ticket-level information that may overstate rather than clarify the number or frequency of valid incidents. Notably, Plaintiffs themselves have insisted that Flack data—which is being produced to Plaintiff **this month** and is largely duplicative of Jira and Bliss data—is the relevant data source for reported incidents (and not Jira or Bliss data). Plaintiffs' desire for updated Jira and Bliss data despite all this suggests that their real intent is not to obtain relevant information for trial but to take the data out of context and attempt, unfairly, to cast doubt on Uber's safety reports by pointing to pre-audit data.[1] In short, the data are

---

[1] The parties' experiences in this MDL proceeding, where numerous claims have been dismissed for fraud, highlight the inaccuracy of—and potential dangers of relying on—unaudited data.

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-MD-3084-CRB-LJC

not only unnecessary but also likely to be misused, further highlighting why it is improper and disproportionate to require the updated production

The Court's requirement that Uber continually recompile summaries of incident report data is similarly burdensome and disproportionate to any legitimate need for this information. As Mr. Shortnacy explains in his Declaration, updating the incident report tables requires extensive review of a large set of incident data (from 2017-2025), and it would "take Uber several hours involving different Uber personnel to create, peer review, and validate over the course of several days." Shortnacy Decl. ¶ 13. Moreover, this onerous effort would have diminishing returns, because the number of reclassifications "dwindles markedly over time" as investigations conclude and categorizations stabilize. *Id*.

For these reasons, discussed further below, the Court should find that: (1) production of Jira and Bliss data is not required; and (2) annual supplementation of Uber's incident report charts is unnecessary, or, at a minimum, should be narrowed to require supplementation for only the most recent five-year period. In the alternative, the Court should, at the very least, extend the deadline for production of Jira and Bliss data until July 31, 2026.

Uber also requests that the Court stay its June 2026 production deadlines until Uber's motion for reconsideration (and, to the extent the Court does not grant Uber's motion to reconsider in full, Uber's forthcoming Rule 72 appeal to Judge Breyer) can be addressed.

## BACKGROUND

In April and June 2025, Uber produced to Plaintiffs: (1) incident data from the Jira and Bliss systems through 2022; and (2) a chart that includes the number of alleged incidents for each taxonomy category for each month between January 2017 and December 2024. *See* ECF 3125.

In August 2025, Plaintiffs sought to compel Uber to also produce data from its "Flack" system—a system that uses information from Jira and Bliss to combine multiple incident tickets on the same trip into a single event. In their bid to obtain Flack system data, Plaintiffs argued that because the Jira and Bliss information was unaudited and "there is no way for Plaintiffs to deduplicate the[] numbers" from the Jira and Bliss systems, the Flack system was the proper database from which to

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-MD-3084-CRB-LJC

acquire "current and historic incident rates for sexual assault." ECF 3700, at 3-4; *see also* ECF 3914, at 3-4. This Court agreed and ordered Uber to produce Flack system data through 2024. ECF 3848, at 5. In so holding, the Court acknowledged that Flack data is "important[t] . . . evidence of what Uber knew about the number and rates of sexual assault and sexual misconduct incidents." *Id.* at 4.

More recently, in their PTO 8 letter regarding supplementation of discovery (filed May 15, 2026), Plaintiffs requested a vast array of "supplement[al]" discovery through December 31, 2025, including data on "the frequency of assaults." *See* ECF 6213. Uber offered, in the spirit of compromise, to produce Flack data regarding 2025 reports of alleged sexual assault and misconduct incidents in the United States. Uber intends to produce the Flack data through 2025 to Plaintiffs this month (June 2026).

A few days after Plaintiffs sought broad supplementation of discovery (which this Court denied at the June 1 hearing, instead ordering the parties to negotiate "a narrow scope of custodial discovery to be updated through 2025," ECF 6354), Plaintiffs sought: (1) supplementation of Uber's sexual assault and sexual misconduct incident data through 2025 in the U.S.; (2) supplementation of Uber's categorized incident charts; and (3) production of global incident data from 2022 through 2025. ECF 6251, at 1-2. Plaintiffs did not indicate a specific date by which they needed the requested data. *See id.* at 3. In response, Uber explained that Plaintiffs' request for supplementation of U.S. incident data was "moot" because Uber had already agreed to produce Flack data regarding 2025 reports of alleged sexual assault and misconduct incidents in the U.S. *id.* at 4, and "Jira and Bliss data would be redundant and unnecessary," ECF 6452, at 2.

In its June 11, 2026 Order, the Court ordered Uber to produce "Uber's Bliss and Jira data, in addition to Flack," by June 18, 2026 "to allow Plaintiffs' expert witnesses more of the same data that is available to Uber . . . ." ECF 6452, at 2-3. The Court further ordered Uber to "reassess" its previously-produced incident report charts to provide "updates of each recategorized or invalidated report" by June 30, 2026, and to perform the "reassessment" for each year thereafter "so long as this MDL remains active." *Id.* at 4. The Court also denied Plaintiffs' request for production of global

- 4 -

incident data, noting that the categorization of such data "would be largely redundant to the domestic data Uber has already produced." *Id.* at 5-6.

As set forth in the Declaration of Michael B. Shortnacy (filed herewith), producing the Jira and Bliss data by the Court's June 18, 2026 deadline (a deadline that was not requested by either party) is not feasible. *See* Shortnacy Decl. ¶ 6 ("collecting and producing the additional 2025 raw data from Bliss and Jira will take more than one week to complete"). This is so because the Bliss and Jira data would need to be "reviewed to redact personally identifiable information ('PII') and privileged information contained within the data[.]" *Id.* ¶ 7. The raw data from Jira "includes numerous fields that may contain the names, addresses, or contact information of either (a) potential victims of sexual assault or sexual misconduct, (b) individuals against whom sexual assault or sexual misconduct is alleged, or (c) witnesses to alleged sexual assault or sexual misconduct," "[t]he vast majority of [whom] are not parties in the alleged incidents at issue in this litigation." *Id.* ¶ 8. In addition, the raw data from Bliss contains information—such as "names," "telephone numbers or addresses"—that are "transcribed from telephone communications." *Id.* ¶ 10. Because that data can be misspelled, mis-capitalized or mis-formatted, the data cannot be reviewed automatically; rather, a thorough manual review is required. *Id.* ("these fields require manual review to identify and redact the PII contained in these communications"). And because certain data is transcribed in a variety of foreign languages, the data "would need to be reviewed and redacted for PII and privilege by qualified foreign-language reviewers." *Id.* ¶ 11. In short, because the Bliss and Jira data would require extensive manual privacy and privilege review (sometimes in foreign languages), the production would be highly burdensome, and a one-week turnaround is not feasible.

Mr. Shortnacy further explains that updating the incident report charts "would take Uber several hours involving different Uber personnel to create, peer review, and validate over the course of several days." *Id.* ¶ 13. He also explains that "the number of changes to categorization of earlier reports dwindles" as time passes. *Id.*

## ARGUMENT

### I.    RECONSIDERATION IS WARRANTED.

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims[.]" Fed. R. Civ. P. 54(b). Local Rule 7-9(b)(l) allows a party to seek reconsideration where "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought." Civil L.R. 7-9(b)(1).

Although a party seeking reconsideration of a judgment under Federal Rule of Civil Procedure 59(e) must show "newly discovered evidence, [] clear error, or . . . an intervening change in the controlling law," *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), "when a district court issues 'an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59,'" *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)). The same standard applies where a party seeks reconsideration of a discovery order issued by a magistrate judge. *See Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18-cv-07689-LB, 2022 WL 3083713, at *2, *5 (N.D. Cal. Aug. 3, 2022) (magistrate judge noting "the court's 'inherent power rooted firmly in the common law' to 'rescind an interlocutory order over which it has jurisdiction'") (citation omitted). Accordingly, this Court "possesses the inherent procedural power to reconsider, rescind, or modify [its] interlocutory order for cause seen by it to be sufficient." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 741 (9th Cir. 2025) (citation omitted).

Sufficient cause exists to reconsider and stay portions of the Court's June 11, 2026 Order under this standard because: (1) Uber did not have the opportunity to present evidence and argument on these issues prior to the Court's ruling; and (2) the Court's requirements are unduly burdensome, impracticable within the allotted time, and disproportionate to the needs of the litigation.

**A. Uber Did Not Have An Opportunity To Address Burden And Proportionality Prior To Issuance Of The Court's Order.**

"The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes[. Moreover, a] party claiming undue burden or expense ordinarily has far better information--perhaps the only information--with respect to that part of the determination." *See* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment.

Here, Uber did not have the opportunity to present evidence and briefing on the proportionality of the challenged requirements prior to the Court's June 11, 2026 Order because Plaintiffs did not request a specific date for production of Bliss and Jira data in the parties' joint submission to the Court. *See* ECF 6251. Thus, Uber had no reason to address the substantial burdens and impracticality of producing such data in a week.[2] Similarly, because Plaintiffs never sought annual reassessment of Uber's incident report charts, *see* ECF 6251, Uber had no reason to submit briefing on the burdens and relevance of providing "updates of each recategorized or invalidated report . . . [each] year so long as this MDL remains active" until the Court's June 11, 2026 Order mandating such updates. ECF 6452, at 4.[3] *See Roemen v. United States*, 343 F.R.D. 619, 624 (D.S.D. 2023) (granting a motion to reconsider portions of a ruling on a motion to dismiss where the party argued that the "Court made decisions outside the adversarial issues presented by the parties"). Reconsideration is thus warranted.

---

[2] In its Order, the Court set a June 18, 2026 deadline "unless the parties stipulate to a different production date." ECF 6452, at 3-4. The parties have not been able to reach a compromise.

[3] The June 18 and June 30 deadlines are also not necessary. The next trial is not scheduled until September 2026, ECF 6494, and it involves an alleged 2020 incident. Moreover, the Plaintiff in that case is not eligible for punitive damages, further highlighting why post-incident discovery would be irrelevant to her claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.005(a). In any event, if Uber produced the data at a later (and more feasible) date, there would still be more than enough time to conduct further discovery pertaining to the 2025 data before September. ECF 6251, at 3. (Indeed, Uber is being required to conduct full affirmative discovery on an extremely short timeline for that trial.)

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-MD-3084-CRB-LJC

**B.  The Court's Order Is Overly Onerous And Disproportionate To The Needs Of The Litigation.**

Based on the arguments below and the attached Shortnacy Declaration, the Court should reconsider its prior ruling and find that the Jira/Bliss and incident report obligations are highly disproportionate to the needs of the litigation because: (1) Flack data is sufficient (and indeed, better suited) to satisfy Plaintiffs' request for supplementation of Uber's sexual assault and sexual misconduct incident data through 2025 in the U.S.; and (2) annual supplementation of Uber's incident report charts would provide minimal information to Plaintiffs at a significant burden. In the alternative, and at the very least, the Court should extend Uber's time for compliance with the Jira and Bliss production requirements until July 31, 2026.

1.  <u>Additional Production Of Jira And Bliss Data Is Not Proportionate To The Needs Of The Litigation And Cannot Be Accomplished On The Court's Timeline.</u>

Plaintiffs' own prior arguments confirm that they have no need for additional Jira and Bliss data. Plaintiffs previously insisted that Flack data—and not Jira or Bliss data—was the relevant data source for reported incidents. *See* ECF 3700, 3914. Uber is in the process of producing to Plaintiffs the Flack data through 2025, and should be finished by June 30. Thus, Plaintiffs will very soon have the very data they claim provides the "current and historic incident rates for sexual assault." ECF 3700, at 3-4; *see also* ECF 3848, at 4 (the Court describing Flack data as "important[t] . . . as evidence of what Uber knew about the number and rates of sexual assault and sexual misconduct incidents"). Production of Jira and Bliss data would have minimal benefits to Plaintiffs because Flack uses information from Jira and Bliss to consolidate multiple tickets associated with the same trip into a single event-level record. For the incident-rate, support-abuse, and invalidity issues identified by the Court, Flack is the more direct and less burdensome source. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (discovery should not be permitted where "the discovery sought is unreasonably cumulative or duplicative").

The Court's June 11, 2026 Order reasoned that Plaintiffs have a "significant interest in testing, validating, or challenging" Uber's trial testimony regarding the frequency of fraudulent "support

- 8 -

abuse" reports, and that this interest "warrants production of Uber's Bliss and Jira data, in addition to Flack, to allow Plaintiffs' expert witnesses more of the same data that is available to Uber to assess the frequency of 'support abuse' and other invalid reports." ECF 6452, at 3 (emphasis added). But the Flack system already provides Plaintiffs' experts with the data necessary to conduct precisely this analysis. Because Flack synthesizes the underlying Jira and Bliss ticket data into deduplicated event records—combining multiple tickets on the same trip into a single event—it provides the same picture of the reported incidents from which experts can assess the frequency and validity of reports. The raw Jira and Bliss data, by contrast, would actually impede expert analysis by requiring experts to perform the same deduplication that Flack already accomplishes. Producing "more of the same data" in this duplicative form thus runs afoul of Rule 26's protections against cumulative discovery. The Court recognized as much with respect to the global incident data, holding that "redundant" discovery "to the domestic data Uber has already produced" "would be of at most limited use." ECF 6452, at 5-6 (emphasis added). This conclusion applies equally to the Jira and Bliss data and highlights why requiring additional productions of these data would be highly disproportionate to the needs of the litigation. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit").

Moreover, to the extent the Court's concern is that Plaintiffs' experts be able to assess the validity of Uber's "support abuse" arguments at trial, Plaintiffs' experts will have full access to Flack data through 2025—the very dataset that provides the most complete and accurate event-level view of reported incidents. Plaintiffs previously maintained that Flack data is the appropriate source for analyzing incident rates. ECF 3700. There is no basis to conclude that access to duplicative Jira and Bliss ticket data would materially enhance expert analysis beyond what Flack already provides.

In the alternative, and at the very least, the Court should extend the deadline for compliance with this requirement until July 31, 2026, because it is not feasible for Uber to meet the Court's deadline. As Mr. Shortnacy explains in his attached Declaration, "collecting and producing the additional 2025 raw data from Bliss and Jira will take more than one week to complete." *See*

- 9 -

Shortnacy Decl. ¶ 6. This is so because production will require extensive review and redaction of privacy and privileged information. *Id.* ¶ 7. For example, the raw data from Jira "includes numerous fields that may contain the names, addresses, or contact information of either (a) potential victims of sexual assault or sexual misconduct, (b) individuals against whom sexual assault or sexual misconduct is alleged, or (c) witnesses to alleged sexual assault or sexual misconduct," "[t]he vast majority of" whom "are not parties in the alleged incidents at issue in this litigation." *Id.* ¶ 8. In addition, the raw data from Bliss contains information—such as "names," "telephone numbers or addresses"— "transcribed from telephone communications" that can be misspelled, mis-capitalized or mis-formatted. *Id.* ¶ 10. Such data would need to be manually reviewed. *Id.* And because certain data are transcribed in a variety of foreign languages, the data "would need to be reviewed and redacted for PII and privilege by qualified foreign-language reviewers." *Id.* ¶ 11. In short, "a review to identify and redact PII and privileged information is necessarily more difficult and time-consuming than a review of individual documents[.]" *Id.* ¶ 12.

The Court's Order acknowledged that "manual privilege review" of "the 'raw data'" may be burdensome such that production "cannot be completed by th[e June 18, 2026] deadline"; nonetheless, the Court held that "[a]ny delay in producing those communications should not delay production of other responsive data beyond the deadline." ECF 6452, at 4 n.2. But the need for privilege and privacy review is not limited to "communications"; it pervades the entirety of the Jira and Bliss dataset, including all ten freeform text fields in Jira and the unstructured Bliss entries. *See* Shortnacy Decl. ¶ 9. It is not possible to parse out a subset of the data for belated production, as contemplated by the Court's order. *See id.* ¶¶ 7-11. Accordingly, the Court should, at a minimum, extend the time to July 31, 2026 for complying with this requirement.

        2.   Requiring Annual Reassessment Of Uber's Incident Report Charts Is Not Proportionate To The Needs Of The Litigation.

The Court's requirement that Uber continually recompile summaries of incident report data is similarly burdensome and disproportionate to any legitimate need for this information. Uber is currently completing its production of charts that show the number of incidents for each of the 23

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-MD-3084-CRB-LJC

taxonomy categories for each month between January 2017 and December 2025. As Mr. Shortnacy explains in his Declaration, preparing these tables requires extensive review of a large set of incident data (from 2017-2025), and updating them periodically would "take Uber several hours involving different Uber personnel to create, peer review, and validate over the course of several days." Shortnacy Decl. ¶ 13. Moreover, this onerous effort would have minimal benefit to Plaintiffs, because the number of reclassifications "dwindles markedly over time" as investigations conclude and categorizations stabilize. *Id.* Thus, this, too, would be highly disproportionate to any legitimate need for the materials.

The Court ordered Uber to recompile the information annually based on Uber's trial testimony that it may find "instances of support abuse" not previously detected "years later." ECF 6452, at 2 (citation omitted). But that testimony simply reflects the general nature of living data; it does not establish that the volume of such later-identified changes is sufficient to warrant the burden of a perpetual annual production obligation spanning the entire 2017-to-present timeframe. There is no basis in the Federal Rules for imposing a recurring, open-ended discovery obligation in any litigation, particularly where the marginal informational value of updates to data from 2017-2019 approaches zero. Thus, imposing an obligation to recreate the charts until the close of the MDL is not only burdensome (as set forth in Mr. Shortnacy's declaration), but would also have limited probative value.

For all of these reasons, the Court should vacate the portions of the June 11, 2026 Order requiring Uber to produce Jira and Bliss data through 2025 and annually reassess Uber's incident report charts until the close of the MDL. Alternatively, and at the very least, the Court should: (1) extend the period for producing the Jira and Bliss data until July 31, 2026; and (2) limit Uber's updating obligations to incident reports from the most recent five-year period.

**II.    <u>ALTERNATIVELY, THE COURT SHOULD STAY THE JUNE 11, 2026 ORDER.</u>**

Uber also requests that the Court issue a stay of the June 11, 2026 Order while the Court considers Uber's motion for reconsideration (and pending review of the Order by Judge Breyer pursuant to Fed. R. Civ. P. 72 if the Court does not fully grant Uber's motion for reconsideration). In deciding whether to stay the effect of a magistrate's discovery order pending review, courts consider

four criteria: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *Alvarez v. Larose*, No. 3:20-CV-00782-DMS-AHG, 2020 WL 5632659, at *2 (S.D. Cal. Sept. 21, 2020). Each factor supports a stay.

***First***, Uber has made a showing of likelihood of success on the merits with respect to its motion for reconsideration by presenting the Court with evidence showing: (1) the burdens and unfeasibility associated with the production of Jira and Bliss data; (2) that the Flack data already being produced to Plaintiffs is better suited for assessing the frequency of "support abuse" and other invalid reports, which the Court identified as the basis for the Order; and (3) the burdens and minimal relevance of annually reassessing Uber's incident report charts. In addition, this factor favors staying the effect of the June 11, 2026 Order as a whole to give Uber the opportunity to seek review of the order by Judge Breyer pursuant to Rule 72, including, but not limited to, the portions of the June 11, 2026 Order requiring Uber to produce duplicative Jira and Bliss data, even though Plaintiffs previously (and repeatedly) indicated that Flack data was the relevant data source for reported incidents. *See* ECF 3700, 3914. Courts have recognized that, because a request to stay discovery must be timely made to avoid prejudice, it is appropriate to grant a stay pending Rule 72 review even if a magistrate judge is unable to determine whether the party moving for a stay is likely to succeed on the merits before the district judge. *See Alvarez*, 2020 WL 5632659, at *2. This is so because "it would be unfair to penalize [a party] for failing to show the likelihood that their forthcoming objections will succeed by providing a rushed preview of the objections" that will be presented to the district judge in the future. *Id*.

***Second***, Uber has "made a showing of irreparable injury if the stay is not granted[.]" *Alvarez*, 2020 WL 5632659, at *2. As explained above, absent a stay, Uber will be required to do the impossible: complete within one week a large production that would involve significant privilege and privacy review. And assuming Uber cannot meet the Court's onerous deadline, Uber may be prevented from introducing at trial evidence that undermines Plaintiffs' cases—i.e., that rates of

- 12 -

sexual assault are declining—and thus will be deprived of a full and fair opportunity to defend itself at trial. *See* ECF 6521, at 3 n.4 (Plaintiffs "reserv[ing] all rights to seek to limit Uber's incident evidence at trial"). In addition, the resolution of Uber's motion for reconsideration and its forthcoming Rule 72 motion will extend beyond the production deadline. Accordingly, without a stay, Uber "would effectively [be] deprive[d] [] of [its] right to reconsideration of the Discovery Order," which itself constitutes irreparable harm. *Alvarez*, 2020 WL 5632659, at *2. As courts routinely recognize, this reality not only constitutes irreparable harm; it alone warrants a stay because once discovery is produced (or substantial compliance efforts are undertaken), the right to review is effectively lost. *See, e.g.*, *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 2309972, at *1 (C.D. Cal. May 10, 2021) (granting a stay because without it, "Defendants would be deprived of any meaningful right to reconsideration of the discovery order by this Court"); *Alvarez*, 2020 WL 5632659, at *2 (granting stay despite lack of showing of likelihood of success on the merits where absence of stay "would effectively deprive Respondents of their right to reconsideration of the Discovery Order by the district judge altogether").

**Third**, there is no evidence that "granting of the stay would substantially harm the other parties[.]" *Alvarez*, 2020 WL 5632659, at *2. Courts regularly hold that plaintiffs do not suffer substantial harm based on a short delay in obtaining discovery while a discovery order is reviewed and that any potential harm from a stay can be addressed, if necessary, through adjustments to case deadlines. *See, e.g.*, *Canchola v. Allstate Ins. Co.*, No. 8:23-CV-00734-FWS-ADS, 2025 WL 1377817, at *3 (C.D. Cal. Apr. 17, 2025) (collecting cases). This is particularly true here because, as set forth above, there is no reason why the Court's June 2026 production deadlines are necessary; the data are not relevant to the September trial, and, in any event, a later production deadline would still allow for ample time to conduct any additional discovery (if warranted) into the 2025 incident report data prior to the next scheduled trials.

**Fourth**, "granting [] the stay would serve the public interest." *Alvarez*, 2020 WL 5632659, at *2. Staying a discovery order that would cause undue burden and expense pending review satisfies

this criterion "because the public interest favors 'just, speedy, and inexpensive determination of every action[.]'" *Canchola*, 2025 WL 1377817, at *4 (citing Fed. R. Civ. P. 1).

In short, all four factors favor a stay while the Court considers Uber's motion for reconsideration and pending Uber's forthcoming objections to Judge Breyer under Rule 72.

## CONCLUSION

For the foregoing reasons, Uber respectfully submits that the Court should reconsider portions of its June 11, 2026 Order and find that: (1) production of Jira and Bliss data is not required because Flack data is sufficient to satisfy both Plaintiffs' request for supplementation of incident data through 2025 and Plaintiffs' experts' supposed need to assess the frequency of invalid reports; and (2) annual supplementation of Uber's incident report charts is unnecessary. In the alternative and at a minimum, the Court should: (1) extend Uber's deadline for complying with the Jira and Bliss requirement until July 31, 2026; and (2) only require supplementation of incident report charts for the most recent five years.

Uber also requests that the Court stay its June 2026 production deadlines until Uber's motion for reconsideration can be addressed.

DATED: June 18, 2026

By: */s/ Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-MD-3084-CRB-LJC