Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR RECONSIDERATION AND STAY OF ORDER** |
| This Document Relates to: All Cases | Judge: Hon. Lisa J. Cisneros Courtroom: Courtroom G – 15th Floor |

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER
TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER        Case No. 3:23-md-03084-CRB

I, Michael B. Shortnacy, declare pursuant to 28 U.S.C. § 1746:

1.    I am over the age of 18 and am a resident of Los Angeles, California. I respectfully submit this declaration in support of Defendants Uber Technologies, Inc.'s, Rasier, LLC's, and Rasier-CA, LLC's (collectively, "Uber") Motion for Reconsideration and Stay of Order.

2.    I am a partner at the law firm of Shook, Hardy & Bacon L.L.P., and a member in good standing of the Bar of the State of California, the Bar of the State of New York, and the Bar of the District of Columbia. I represent Uber in this MDL. In that capacity, I have submitted on Uber's behalf many of the discovery letter briefs and status reports to the Court regarding Uber's incident reports. I have also been directly involved in briefing and arguing the issues relevant to this declaration before this Court, including on July 18, 2024, and December 19, 2024. I make this declaration based upon matters within my own personal knowledge, except those matters stated to be based on information and belief. If called as a witness, I could and would competently testify to the matters set forth herein.

3.    In the Order Resolving (6251) Joint Letter Regarding Incident Reports, ECF 6452, the Court ordered Uber to produce to Plaintiffs, *inter alia*, "the raw data from Flack, Bliss, and Jira [associated with a trip that took place between January 1, 2025 and December 31, 2025] that Uber collected for each sexual assault or sexual misconduct incident in the format and scope which the Court has previously ordered Uber to produce," by June 18, 2026 – *i.e.*, within 7 days of the Order. *Id.* at 3. As set forth below, based on my experience and involvement in the prior collection, review, and production of this type of data in this case, it is impossible for Uber to meet the Court's deadline to produce this data.

4.    Upon information and belief, Uber is currently in the process of collecting data from Flack. Uber will produce the Flack data to Plaintiffs by June 30, 2026.

5.    As previously discussed with the Court, Jira and Bliss are ticket-level systems Uber utilizes to store and organize information related to, *inter alia*, individual complaints reported to Uber related to rides. *See* ECF 651, *et seq.* For any given single incident reported to Uber, in Bliss (and to a lesser extent Jira) the report may contain multiple individual tickets. Each of these tickets may contain (a) communications with the reporting party, reported-against party, or third-party witnesses

(b) free-form notes from Uber safety agents, and (c) other unstructured information associated with the underlying reported event.

6.      Upon information and belief, and as described in detail below, collecting and producing the additional 2025 raw data from Bliss and Jira will take more than one week to complete.

7.      As previously raised to this Court and consistent with the incident reports Uber previously produced to Plaintiffs, the raw data would need to be collected and also reviewed to redact personally identifiable information ("PII") and privileged information contained within the data, especially the freeform text fields. *See, e.g.*, July 18, 2024 Hg. Tr. at 41:23-42:8, 45:5-46:24; *see also* December 19, 2024 Hg. Tr. at 17:14-16, 18:12-20:9.

8.      The raw data from Jira, consistent with the incident reports Uber previously produced to Plaintiffs, includes numerous fields that may contain the names, addresses, or contact information of either (a) potential victims of reported sexual assault or sexual misconduct, (b) individuals against whom sexual assault or sexual misconduct is alleged, or (c) witnesses to alleged sexual assault or sexual misconduct. The vast majority of these individuals are not parties in the alleged incidents at issue in this litigation.

9.      Notably, ten of these fields are "freeform text" fields (*i.e.*, the text contained in the individual data cell can be freely input by business users in the ordinary course, as opposed to "drop down" selections or other normalized data inputs like "Y" or "N"). In the previously produced JIRA data, these fields consisted of approximately 1.29 million individual cells of data with some form of freeform text.  As Uber did for the previously produced incident reports, Uber would need to review these freeform text field cells to identify and redact PII prior to production. Additionally, as discussed with the Court on December 19, 2024, the freeform text fields may contain privileged information. Hg. Tr. at 19:4-20:8. Thus, as Uber did for the previously produced incident reports, Uber would also need to review and redact for privilege all of the cells of data in these ten freeform fields prior to production.

10.      The raw data from Bliss that Uber has previously produced to Plaintiffs includes a field containing the reporting party's unedited direct communication to Uber, or a response from an Uber safety agent to the reporting party. A reporting party's communications to Uber may be typed or

dictated-to-text by the user, usually within the Uber app on a mobile device, or transcribed from telephone communications. As such, capitalization and spelling of names is not a given, and PII such as telephone numbers or addresses are often not captured in a standardized format that is amenable to automated review. Additionally, vehicle license plate information may be provided in these fields, and formatting for license plate information varies both across states and within a given state. Therefore, these fields require manual review to identify and redact the PII contained in these communications.

11. Additionally, the previously produced Bliss communications contained tens of thousands of entries in languages other than English, including Spanish, Farsi, Mandarin, and Korean. We thus expect the 2025 data to include communications with riders, independent drivers, or witnesses in languages other than English as well. These communications would need to be reviewed and redacted for PII and privilege by qualified foreign-language reviewers.

12. Further, due to the nature of these large data exports, which are comprised of structured and cell-based data, a review to identify and redact PII and privileged information is necessarily more difficult and time-consuming than a review of individual documents, and, upon information and belief, requires unique processing in order to distribute the large data outputs to a review team, and additional review time because a reviewer will need to investigate each individual cell of data containing PII or privileged information and apply a discrete redaction to the PII or privileged information while leaving the substantive, non-privileged content unredacted.

13. In the Order Resolving (6251) Joint Letter Regarding Incident Reports, the Court also ordered Uber to provide annual supplements through the pendency of the MDL of reports for which the dominant ticket was re-categorized, or determined to be invalid. ECF 6452 at 4. Upon information and belief, based on prior work with Uber to create the summary data tables previously requested by Plaintiffs in their second set of interrogatories, the data tables requested by Plaintiffs in their PTO 8 letter would take Uber several hours involving different Uber personnel to create, peer review, and validate over the course of several days. Further, upon information and belief, while there is a "tail" to reporting – *i.e.*, Uber may receive additional reports or information related to alleged incidents that occurred earlier in time – in the aggregate, the number of changes to categorization of earlier reports dwindles markedly over time.

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER
TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR
RECONSIDERATION AND STAY OF ORDER                    Case No. 3:23-md-03084-CRB

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2026, in Los Angeles, California.

/s/ *Michael B. Shortnacy*

Michael B. Shortnacy

DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR RECONSIDERATION AND STAY OF ORDER          Case No. 3:23-md-03084-CRB