# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: UBER TECHNOLOGIES,    | Case No.
INC., PASSENGER SEXUAL       | 3:23-md-03084-CRB
ASSAULT LITIGATION           |
_____ |
                              |
This Document Relates to:     |
                              |
A.R. v. Uber Technologies,    |
Inc., et al.                  |
Case No. 3:24-cv-07821        |
_____

ORAL AND VIDEOTAPED DEPOSITION OF
ILUKA ENRIGHT
October 13, 2025
REMOTE VIA ZOOM VIDEO

_____

***********************************************************
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
***********************************************************

    REMOTE ORAL AND VIDEOTAPED DEPOSITION OF ILUKA
ENRIGHT, produced as a witness at the instance of the
Defendants, and duly sworn, taken in the above-styled
and numbered cause on October 13, 2025, from 9:04 a.m.
to 10:31 a.m., before Joseph D. Hendrick, Certified
Shorthand Reporter in and for the State of Texas,
reported by machine shorthand, pursuant to Notice and
the Federal Rules of Civil Procedure and any provisions
stated on the record or attached hereto.


    Job No. CS7653065

how did you capture or collect what you believed to be responsive to the notice?

MS. ABRAMS:  Objection.  Asked and answered.

A.     My iCloud.  So my phone essentially is synced to my laptop and I took screenshots on my laptop of everything we've gone over.  There wasn't anything in Notes, but screenshots of text messages mostly.

BY MS. POWER:

Q.     Now shifting to the evening of July 7th, were you able to provide all of the screenshots or other collection methods that you identified independently to your attorneys on that evening?

MS. ABRAMS:  Object to form.

A.     I would have been able to provide, but I did not provide any of the documents I had.

BY MS. POWER:

Q.     Why not?

A.     When we were having a deposition, to my knowledge where we started was top to bottom - right? - like, when did you first find out that Alice was going through a deposition, what did that communication look like.  I shared my screen, I was on my laptop, and I brought up the message from Alice, which was a screenshot of the message between her attorney, Sara

Page 22

Craig, and her, essentially saying something to the lines of, "I'm going to reach out to Iluka," or, "Can you" -- "Iluka, I'm going to reach out to her," some sort of message.

And Alice screenshotted back and sent it to me saying something along the lines of, "Here's a heads-up, my lawyer's going to reach out to you," and I said, "Great, sounds good," something like that.

When I pulled that message up, which was the first piece of evidence that I provided Sara Craig, she and the other attorney on the call seemed quite taken aback by what I was showing them and they laughed and they said, "Oh, no," like, "We don't want to see that," or something to that effect. And I said, "Are you sure? It's really easy for me to pull everything up because I'm on my laptop and everything is indexed by date, time, it's quite easy to search." And they were, like, "No, no, no, we're telling you not to look."

Q.   After that interaction, did you share any other screenshots or communications or captures with your attorneys on the evening of July 7th?

A.   I did not. I stopped sharing my screen, and my assumption based off of those comments was that any documents I had or could provide were not needed or

Page 23

wanted.

Q.     After those comments, did you receive any instructions about what should or should not be provided to attorneys?

MS. ABRAMS:  Object to form.  Relevance.  And also goes to attorney-client privileged communications.

MS. POWER:  I'll rephrase.

BY MS. POWER:

Q.     After the comments you just described, did you do anything else to collect, preserve or provide documents to your attorneys responsive to this deposition notice?

A.     I made no effort, no.

Q.     And did you receive any instructions to make an effort or to not make an effort?

MS. ABRAMS:  Object to form.  Same.  Attorney-client privileged.

A.     Outside of the comments made on the call of "We don't want you to look, we're asking you not to look," I assumed that meant no.  So, no.

MS. POWER:  Let's take this down and return to Exhibit 1.

BY MS. POWER:

Q.     And, Ms. Enright, after that interaction

Page 28

own this document or create this document at the time of her deposition, but afterwards.  And, further --

MS. POWER: Ms. Abrams --

MS. ABRAMS:  -- it was with her and a third -- another third party.  So I am asking you to keep to the scope of the order.

MS. POWER:  Ms. Abrams, your scope objection is noted.  It is not a basis to instruct the witness not to answer.  I am going to keep track of the amount of time you spend on the record and we will be asking to add that to the end of this deposition if necessary.  So I please ask that you keep your deposition objections to form and scope -- or privilege as necessary.

BY MS. POWER:

Q.    Ms. Enright, I asked if during your questioning on July 8th if there were any other portions of your testimony other than the collection and production of documents in response to the deposition notice that you felt were untruthful.  Could you answer that question, please?

MS. ABRAMS:  Object to form.  Same objection.

A.    I -- I was not untruthful in anything that I said outside of the preservation and procurement of

Page 29

the documents.  However, my answers may have been different should that have come up.

BY MS. POWER:

Q.    How so?

MS. ABRAMS:  Object to form.

A.    There would have been more context.

BY MS. POWER:

Q.    Understanding you never sent this draft email to attorneys at Peiffer Wolf, did you nevertheless communicate this sentiment?

A.    I --

MS. ABRAMS:  Object to form.

A.    I did communicate this sentiment with Sara Craig, yes.

BY MS. POWER:

Q.    After communicating this sentiment, what happened?

MS. ABRAMS:  Object to form.

A.    I don't necessarily know that there was, like, something that happened specifically; however, it is my belief that Sara -- it was very obvious the way I was feeling and the way that I was responding to all communications and maybe perhaps my lack of response where I didn't feel like there was need.

BY MS. POWER:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: UBER TECHNOLOGIES,  | Case No.
INC., PASSENGER SEXUAL      | 3:23-md-03084-CRB
ASSAULT LITIGATION          |
_____     |
                            |
This Document Relates to:   |
                            |
A.R. v. Uber Technologies,  |
Inc., et al.                |
Case No. 3:24-cv-07821      |

_____

REPORTER'S CERTIFICATION

DEPOSITION OF ILUKA ENRIGHT

October 13, 2025

        I, Joseph D. Hendrick, Notary Public and Certified Shorthand Reporter in the State of Texas, hereby certify to the following:

        That the Witness, ILUKA ENRIGHT, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

        I further certify that pursuant to FRCP Rule 30(f)(1) the signature of the deponent was requested by the deponent or a party before the completion of the deposition and is to be returned within 30 days from date of receipt of the transcript;

        I further certify that I am neither counsel for, related to, nor employed by any of the parties or

Page 73

attorneys in the action in which this proceeding was taken;

Further, I am not a relative or employee of any attorney of record, nor am I financially or otherwise interested in the outcome of the action.

Subscribed and sworn to on this date: October 14, 2025.

*Joseph D. Hendrick*

Joseph D. Hendrick

CSR(TX), CCR(NM), RPR, CRR

TX CSR #947 Expiration Date 4/30/20276

TX Notary Comm. Exp. 02/13/27

Veritext Legal Solutions

Firm Registration No. 571

300 Throckmorton Street, Ste. 1600

Fort Worth, TX  76102

Telephone (800) 336-4000

calendar-tx@veritext.com

ATTORNEY TIMES:

     Caroline Power - 02:02:47

     Rachel Abrams - 00:02:52