[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT UBER'S MOTION FOR RECONSIDERATION OF JUNE 18, 2026 PRODUCTION DEADLINE** |
| This Document Relates to:<br><br>All Cases | Judge: Hon. Lisa J. Cisneros |

## **INTRODUCTION**

Uber asks the Court to extend the June 18, 2026 deadline for production of the Court-ordered 2025 Flack, Bliss, and Jira data because, according to Uber, collection, review, validation, and production of that information cannot be completed within the timeframe established by the Court. The Court has already rejected Uber's attempt to relitigate whether the 2025 Bliss and Jira data must be produced and reaffirmed that Plaintiffs are entitled to that discovery. The only issue presently before the Court is the timing of Uber's production.

Plaintiffs do not oppose Uber's request for a modified production deadline and are willing to accept the very deadline Uber proposes—July 31, 2026, but *only* with a caveat that is required to make this workable for both sides. If Uber is permitted to delay production until July 31, it should not be permitted to rely on that newly-produced data, or any testimony, expert opinions, analyses, or arguments derived from that data, until Plaintiffs have had sufficient opportunity to both confirm that the data production is complete and accurate, and to fully review the data. This would necessarily mean that Uber cannot make representations about the data, including the number of sexual assaults or sexual misconduct incidents in 2025, at the September 2026 bellwether trial and the bellwether trial immediately thereafter.

Uber's request for an extension acknowledges that the data is sufficiently voluminous and complex that Uber itself requires additional time to collect, review, validate, and produce it. Plaintiffs and their experts cannot reasonably be expected to receive that production on July 31 and then complete validation, expert analysis, follow-up discovery, and trial preparation in the approximately six weeks remaining before trial. Because Plaintiffs are willing to accommodate Uber's request, fundamental fairness requires that any extension be accompanied by an order precluding Uber from using the newly-produced 2025 data in the next two bellwether trials, including, specifically, claims by Uber that it reduced sexual assaults or sexual misconduct incidents on its platform in 2025. To the extent Uber is permitted to use the data or conclusions drawn from it at the two upcoming bellwether trials, Plaintiffs oppose Uber's request for an extension.

**<u>ARGUMENT</u>**

Based on Uber's representations regarding the burden associated with collecting and producing the data at issue, Plaintiffs are willing to accept July 31, 2026 as the deadline for Uber to complete production of the Court-ordered 2025 data, including the raw Flack, Bliss, and Jira data and Uber's updated counts and charts reflecting incident categorizations.[1] However, given this delay, fundamental fairness requires that Uber be prohibited from relying upon that newly-produced data, or any analyses, opinions, testimony, or arguments derived from that data, in the September 2026 bellwether trial and the immediately following bellwether trial.

The Court ordered production of the Bliss and Jira data because Plaintiffs have a significant interest in testing, validating, and challenging Uber's positions regarding reduction of sexual assault and sexual misconduct on its platform, incidence of support abuse, invalid reports, recategorizations, and related issues, and because Plaintiffs' experts require access to the same underlying data available to Uber. That purpose would be defeated if Uber is permitted to delay production until July 31 and then rely on the data at trial before Plaintiffs have a meaningful opportunity to analyze it.

The Federal Rules do not permit litigation by surprise or ambush. As the Ninth Circuit has explained, "[t]he theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush. ... The last thing a party or its counsel wants in a hotly contested lawsuit is to make last-minute preparations and decisions on the run. The late disclosures here were not harmless." *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862-63 (9th Cir. 2014) (internal citation omitted); *see also In re Social Media Prods. Liab. Litig.*, 2024 WL 251404, at *11 (N.D. Cal. Jan. 23, 2024) ("long ago the courts abandoned allowing litigation by ambush or surprise.").

The practical reality is that the work required after production cannot reasonably be completed before the upcoming bellwether trials. Uber represents that it expects to complete production of Flack data by June 30, 2026 and that it cannot complete production of the Court-

---

[1] To be clear, Plaintiffs remain skeptical that the data cannot be produced before July 31, given Uber's representations in its Proxy Statement.

ordered Bliss and Jira data until July 31, 2026. The Bliss and Jira data are particularly essential because they contain the underlying communications and incident-level information necessary to understand why Uber categorized, recategorized, invalidated, or otherwise treated specific incident reports in a particular manner. While Flack data may provide counts and event-level information, the underlying Bliss and Jira materials are where Uber's communications regarding incidents reside. Without those materials, Plaintiffs and their experts cannot adequately evaluate the reliability of Uber's classifications or test Uber's anticipated positions concerning incident reporting, support abuse, and invalid reports. In other words, while a partial production is helpful, the real, time-intensive work of auditing and making sense of all of the data cannot begin in earnest until *all* of it has been produced.

Review of this data is anything but a simple or mechanical exercise. Plaintiffs' experts must first analyze and validate the newly-produced data. Based on prior productions in this litigation, that process will likely require substantial data cleaning, normalization, and reconciliation before any meaningful analysis can occur. For example, fields may require standardization to account for formatting inconsistencies, spaces, hyphens, and other variations. The newly-produced Bliss and Jira data must then be matched to corresponding Flack records and incident reports, a process that involves both automated and manual review.

Plaintiffs' prior experience with Uber's Bliss and Jira productions further demonstrates why a July 31 production date would not provide sufficient time before trial. Earlier productions required significant follow-up efforts before the data could be confirmed as complete and usable. Technical issues and production deficiencies required additional rounds of production and review. Plaintiffs therefore must be afforded a reasonable opportunity to validate the completeness and reliability of any new production before expert analysis can even begin.

After completing that review, Plaintiffs' experts must analyze the data, prepare opinions, and issue any necessary expert reports. Additional discovery may also be required. Plaintiffs previously conducted multiple Rule 30(b)(6) depositions concerning Uber's prior data productions and methodologies. Similar discovery and depositions may be necessary here.

Uber contends that a July 31, 2026 production would still leave sufficient time for Plaintiffs to conduct any necessary follow-up discovery before the September 2026 bellwether trial. That assertion is incorrect. A July 31 production date does not eliminate the prejudice resulting from delayed disclosure; it merely shifts that prejudice to Plaintiffs. Once the data is produced, Plaintiffs and their experts must validate the completeness and accuracy of the production, identify and resolve any deficiencies, reconcile and analyze the data across Uber's various systems, complete expert review, prepare any necessary expert opinions and reports, and conduct any required follow-up discovery, including potential Rule 30(b)(6) depositions. Uber's suggestion that all of those tasks can reasonably be completed within approximately six weeks before the September trial ignores the realities of the discovery and expert process.

Moreover, Uber's position is internally inconsistent. Uber seeks an additional six weeks to produce the data because, according to Uber, the process of collecting, reviewing, validating, and producing the information is complex and burdensome. Uber also repeatedly argues that the purpose of the production is to allow Plaintiffs to evaluate and test Uber's positions regarding support abuse, invalid reports, and incident classifications. Yet Uber simultaneously contends that Plaintiffs can receive that production on July 31 and fully validate, reconcile, analyze, test, and respond to the same data before trial begins approximately six weeks later. This does not even account for the fact that Uber has been in possession of this data, has already had the chance to analyze it, and still requires an extension just to produce it to Plaintiffs.

Plaintiffs cannot process data they have never previously had access to faster than Uber. If the data is sufficiently important and sufficiently complex to justify Uber's requested extension, it is necessarily sufficiently important and complex that Plaintiffs must be afforded a meaningful opportunity to review and analyze it before Uber may rely on it at trial. Uber cannot use its own claimed burden as a basis for extending production while denying the corresponding burden imposed on Plaintiffs by that delayed production.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs will not contest Uber's request for an extension until July 31, 2026 to complete production of the Court-ordered 2025 Flack, Bliss, and Jira data and

- 4 -

related charts and counts, as long as Uber is prohibited from relying upon, introducing, referencing, or presenting testimony, expert opinions, analyses, or arguments based on that newly-produced 2025 data at the September 2026 bellwether trial or the immediately following bellwether trial. To the extent Uber is permitted to use the data or conclusions drawn from it at the two upcoming bellwether trials, Plaintiffs oppose Uber's request for an extension.

Dated: June 24, 2026

Respectfully Submitted,

By: /s/ Sarah R. London
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: /s/ Rachel B. Abrams
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

NO. 3:23-MD-03084

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Roopal P. Luhana*

- 6 -

NO. 3:23-MD-03084