*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

**JOINT STATEMENT**

Pursuant to ECF 6532, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") (jointly, "the parties"), respectfully submit this Joint Statement to update the Court on the course of negotiations regarding Plaintiffs' requested supplement custodial file collections from Uber.

**I.    Deadline for Uber to Produce Documents from Additional Custodians**

**a.  Plaintiffs' Position**

Plaintiffs have made multiple good faith attempts to limit the burden Uber claims in producing custodial files for witnesses for whom Uber has never produced custodial files yet has either brought live to trial (Dobbs, Boman), intended to bring live to previous trials (Gaddis, O'Keefe), or will bring to upcoming trials.[1] Although Plaintiffs do not accept Uber's burden arguments, Plaintiffs have agreed to limit their request significantly—offering to accept custodial files just for Dobbs and Boman as well as any additional custodians that Uber has not yet identified but intends to bring live to upcoming trials. Plaintiffs have also agreed to limit the production to just January 1, 2018 and after. Plaintiffs have also offered to forego the Court-ordered deposition of Kansal Sachin if Uber confirms that he will not testify live at the upcoming trials.

In previous meet and confer discussions, Uber advised Plaintiffs that the production of these documents could be accomplished more quickly by narrowing the number of custodians or the dates of collection. Plaintiffs have done both, yet Uber claims that even this significant narrowing cannot accomplish production for these two custodians on a limited timeframe any more quickly than for all four custodians for an expanded timeframe. Uber's position simply does not make sense and instead, suggests that Uber seeks to delay production so that Plaintiffs are left without essential discovery before the upcoming trials. As Uber knows, August 31—just days before trial begins— provides Plaintiffs essentially no time to review these documents or to get them to their experts, and thus is not workable.

**b.  Uber's Position**

---

[1] To date, Uber still has not updated its Rule 26 disclosures.

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

Uber is approaching the end of its collection of the massive custodial files of Emilie Boman, Todd Gaddis, Erin O'Keefe, and Chad Dobbs—which thus far amount to more than *4 million documents*.[2] As the collection and processing of that data concludes,[3] Uber is simultaneously re-training the TAR model (notwithstanding substantial costs) and remains on track to begin reviewing documents shortly. Uber has assembled an initial first-level review team of approximately two dozen reviewers (which it will expand as needed) and will dedicate substantial resources to second-level and privilege review.[4] Uber will produce materials on a rolling basis and will undertake best efforts to substantially complete productions of these custodial files by August 31. Uber will inform Plaintiffs on a rolling basis of substantial completions as they occur.

This timeline comports with the June 17, 2026 Declaration of Jamie Brown. ECF 6512-1, at 5 ("Based on information currently known and the efforts underway, I estimate that it will take Uber until approximately August 31, 2026, or potentially later, to substantially complete the production of the four custodial files."). It is also consistent with timelines for prior productions, especially given that document collection and processing are ongoing. *See* ECF 2004-1, at 5 (December 20, 2024 Declaration of Jamie Brown projecting production of custodial files approximately 2-3 months *after completion of collection*). Plaintiffs' proposal that Uber produce only the files of Ms. Boman and Mr. Dobbs for the period 2018 and forward in just three weeks (by July 15) and agree not to call Mr. Gaddis or Ms. O'Keefe at trial is not a meaningful compromise offer. Based on the data that has been fully processed and searched for Ms. Boman, her pre-2018 documents comprise only approximately 6% of her total documents. And production of those files within a 3-week timeline is not feasible, as Uber is still in the process of processing and

---

[2]    To date, Uber has fully processed, de-duplicated, date filtered, and run search terms across more than 2 million documents, yielding more than 430,000 documents eligible for the TAR process. In addition, approximately *2 million more documents have been processed (with search term culling pending completion)*, another estimated *650,000 documents have been collected and are being processed*, and *unknown volumes of additional documents* from Slack (all four custodians) and Google Drive (Gaddis) are still being collected.

[3]    Unfortunately, the last export of the Drive collection for Mr. Gaddis—an enormous 5.2 terabyte export—failed on June 22, and must be re-done.

[4]    As Uber has previously explained, Mr. Gaddis and Ms. O'Keefe are likely to have very large volumes of privileged documents, due to the nature of their roles and their substantial involvement with Uber's legal teams.

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

culling hundreds of thousands of documents relating to those individuals.[5] Throughout this litigation, Plaintiffs have repeatedly sought to use discovery as a weapon, rather than a tool. Needless to say, Plaintiffs should not be allowed to decide how Uber defends itself at trial under the guise of a supposed "compromise."

## II.     Plaintiffs' Request for Full Supplementation Through December 31, 2025

### a.  Plaintiffs' Position

Plaintiffs maintain that Uber could and should have provided basic, threshold information about the data sources that exist for the 28 custodians at issue and the estimated amount of data in each source. Nonetheless, in a good faith effort to move this issue forward and ensure meaningful production before upcoming trials, Plaintiffs are willing to accept update files for 10 custodians, and any additional custodians that Uber intends to bring to trial in 2026. Plaintiffs provided a list of those 10 custodians to Uber on June 23, 2026.[6]

Uber has not agreed to begin collecting documents for these 10 custodians and instead seeks to relitigate the relevancy of these custodians, asking Plaintiffs to identify how these custodians are tied to specific relevant activities or developments in 2025. This is gamesmanship. The parties already litigated the relevance of these witnesses two years ago, and each of these witnesses remains in the same or substantially similar positions at Uber as they were when this issue was heavily litigated. If Uber believes that any of the identified custodians are no longer relevant, Uber may raise that issue—but so far, it has not. Instead, this appears to be yet another delay tactic. Indeed, when Plaintiffs requested production of 2024 documents from 28 witnesses and the parties litigated that request, Uber was able to produce documents for 10 of those witnesses within 11 weeks and the remaining 16 witnesses within 14

[5]     Uber is proceeding with collection, processing, and initial review (and further discussions with Plaintiffs) without waiver of its rights with respect to the Court's May 15 and May 28 orders. The efforts set forth in this status report are being made subject to any relief granted by the Court in response to Uber's pending Rule 72 objections.

[6] Plaintiffs previously provided a list of six priority custodians to Uber on June 11 and asked that Uber begin collecting documents for these six custodians immediately. On June 24, counsel for Uber confirmed that Uber has not begun collecting documents for any of the 28 custodians, including the six identified two weeks ago. Uber cannot claim any burden on account of Plaintiffs' reconsideration of two of these six witnesses.

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER
REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

weeks. That production included developing and training TAR. Here, Uber claims a much longer timeframe is necessary to produce documents for just 10 witnesses (each of whom were part of the 28 included in the 2024 update), even though TAR methodology is already in place. Uber has not provided any rationale for why this production should take so much longer than the 2024 update. Instead, it appears that this is a delay tactic to prevent 2025 documents from being produced meaningfully before the upcoming trials.

Indeed, Uber maintains that Plaintiffs should not receive these documents before upcoming trials. But in this litigation where Uber is still operating its platform and women continue to be sexually assaulted on it, each individual plaintiff (even if her sexual assault occurred in 2020), is entitled to understand what Uber knows and is doing today. For example, Uber recently implemented women to women pairing options, despite longstanding concerns that women to women pairing options threatened discrimination lawsuits. Plaintiffs in upcoming trials are entitled to know what Uber has discovered since implementing women to women pairing. Likewise with cameras and recording options that Uber chose not to implement earlier. Moreover, and importantly, for fair cross-examination, Plaintiffs are entitled to the most recent documents for witnesses that Uber intends to bring live to trial.

### b. Uber's Position

The parties' conferral process has confirmed that Plaintiffs do not have an immediate need for supplemental discovery through 2025 from any specific individuals. Rather, their goal is tactical: to distract Uber from necessary trial preparations with onerous document productions. Instead of identifying whose documents they ostensibly need and why, Plaintiffs have instead fixated on the "number" of individuals who will be subject to this requirement, making it clear that their goal is simply to burden Uber. By contrast, when asked to provide names, Plaintiffs have been unable to come up with a definitive list, first offering an incomplete list and then pivoting to a completely new list, with no explanation of how these names were being selected.

On June 16, Plaintiffs indicated that they were pursuing production from 10 custodians but did not identify them. The same day, Uber asked Plaintiffs to "provide the names of the 10 custodians referenced" and "Plaintiffs' rationale for prioritizing them." In the parties' June 17 joint status report,

5

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER

Case No. 3:23-MD-03084-CRB

Plaintiffs seemed to confirm the identity of six of those custodians (Sachin Kansal, Roger Kaiser, Frank Chang, Gus Fuldner, Cory Freivogel, and Andrew Hasbun) but did not identify the remaining individuals. On June 23, Uber reiterated its request for identification of the four remaining individuals and the reason why Plaintiffs seek those individuals' files. But at this point, Plaintiffs pivoted yet again, identifying a new list of people,[7] again without providing any rationale for their selections. Most critically, aside from generalized assertions that 2025 documents are relevant because Uber continued to operate the Rides platform in 2025 and that the alleged incidents underlying approximately 200 filed cases occurred in 2025, Plaintiffs have never explained why they need any portion of these individuals' 2025 documents, let alone why they are needed now.

Because Plaintiffs' list of proposed custodians continues to be a moving target, Uber requests that the Court instruct Plaintiffs by a date certain to (1) submit a final list of 10 custodians; and (2) provide the basis for their selection, including identifying 2025-specific issues to which the custodians are supposedly tied. That is the only way the parties can have meaningful meet-and-confer discussions regarding the number of custodians and revised search terms. In addition, any production should occur after the September 2026 trial. Given the substantial case-specific discovery that must be conducted for the QLF 001 trial over the next few months (as well as the custodial productions described in Section I), Uber should not be forced to simultaneously collect and produce tens of thousands of additional documents, which, at most, may be relevant to recently filed cases that have not been set for trial—and have zero relevance to QLF 001, which involves an alleged incident in 2020.

By: /s/ Roopal P. Luhana
ROOPAL P. LUHANA (Pro Hac Vice)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

By: /s/ Christopher D. Cox

Laura Vartain Horn (SBN 258485)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

---

[7]    In Plaintiffs' June 23 email, they identified Mike Akamine, Brooke Anderson, Cory Frievogel, Gus Fuldner, Andrew Hasbun, Jill Hazelbaker, Roger Kaiser, Safraz Maredia, Andi Pimentel, Nick Silver, and "any custodian who Uber will bring to trial in 2026."

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER
REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

Christopher D. Cox (Pro Hac Vice)
Jessica Davidson (Pro Hac Vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
christopher.cox@kirkland.com
jessica.davidson@kirkland.com

Allison M. Brown (Pro Hac Vice)
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER,
LLC, And RASIER-CA, LLC

## **ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the above signatories.

Dated: June 24, 2026

*/s/ Elizabeth M. Wilkins*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Elizabeth M. Wilkins*

JOINT STATUS REPORT PURSUANT TO ECF 6532 REGARDING NEGOTIATIONS OVER
REQUESTED SUPPLEMENTAL CUSTODIAL COLLECTIONS FROM UBER
Case No. 3:23-MD-03084-CRB