[*Submitting counsel below*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To: | Judge:       Hon. Charles R. Breyer |
| | Courtroom:  6 – 17th Floor (videoconference) |
| ALL ACTIONS | Date:        June 30, 2026 |
| | Time:        10:00 a.m. |

## JOINT CASE MANAGEMENT STATEMENT

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for June 30, 2026.

### Proposed Agenda

    **I.**    **Status of Case Filings**

    **II.**    **Pre-Trial Schedule for *Jane Doe QLF 0001* Trial**

    **III.**    **Trial Length for *Jane Doe QLF 0001* Trial**

    **IV.**    **Updates on Trial Preparation for *Jane Doe QLF 0001***

    **V.**    **Settlement / Mediation**

    **VI.**    **Next Case Management Conference**

## I.    STATUS OF CASE FILINGS

### A.    Number of MDL Case Filings

As of June 25, 2026, there are 3,427 cases in this MDL, with more than 226 new filings and 4 dismissals since the last case management conference.

The following chart provides further detail on the status of the case docket:

| | |
|---|---|
| **No. of Active MDL Cases**<br>*Includes cases pending dismissal or resolution but that remain on the docket* | 3,427 |
| **No. of Active MDL Cases in which Uber has Requested Dismissal Without Prejudice**<br>*Includes cases subject to pending dismissal motions before the Court*<br>*\*ECF Nos. 5891, 5914, 5915, 5989, 6192, 6350, 6420, 6468* | 89* |
| **No. of Active MDL Cases Dismissed Without Prejudice and in which Uber has Requested Conversion to Dismissal With Prejudice**<br>*Includes cases subject to pending conversion motions before the Court*<br>*\*\*ECF Nos. 5567, 6340* | 315** |

| No of Active MDL Cases Dismissed With Prejudice on Any Grounds | 272 |
|---|---|
| *MDL cases dismissed with prejudice to date* | |
| **No. of Active MDL Cases Pending Resolution** | 872 |
| *MDL cases pending resolution but that remain on the docket* | |

**B.    Status of JCCP**

Approximately 778 cases are pending in the JCCP. The next trial set for September 14, 2026 has been vacated.

**C.    Other Cases and Proceedings**

Defendants have provided a current list of civil actions arising from allegations of sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

**II.    PRE-TRIAL SCHEDULE FOR *JANE DOE QLF 0001* TRIAL**

The Parties do not agree on the appropriate schedule for pretrial proceedings in *Jane Doe QLF 0001*.

**Plaintiffs' Position:**

The Court should enter the following schedule:

| EVENT | DATE |
|---|---|
| Initial Disclosures | June 30, 2026 |
| Expert Reports | August 14, 2026 |
| Jury Questionnaire / Voir Dire Questions | August 17, 2026 |
| Motions in Limine / 412 Motions | August 17, 2026 |
| Motions for Summary Judgment | August 17, 2026 |
| Witness Lists / Exhibit Lists | August 20, 2026 |
| *Daubert* Motions | August 21, 2026 |
| Jury Instructions / Verdict Forms | August 27, 2026 |
| Oppositions to Motions for Summary Judgment / *Daubert* Motions | August 31, 2026 |
| Oppositions to Motions in Limine / 412 Motions | August 31, 2026 |
| Joint Proposed Pretrial Order | September 1, 2026 |
| Pretrial Conference | September 3, 2026 at |
| Trial Briefs (if any) | September 9, 2026 |
| Branded Exhibits | September 9, 2026 |
| Jury Selection | Week of September 8, 2026 |

2

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

| EVENT | DATE |
|---|---|
| Trial | September 14, 2026 |

*First*, Uber's proposed schedule does not permit sufficient time to respond to motions in limine, summary judgment, and *Daubert* briefing. Uber does not acknowledge the burden on Plaintiff, who is likely to be the non-moving party with respect to the bulk of summary judgment and *Daubert* motions. Uber's suggestion that this trial presents novel in limine issues only supports more rather than less time for responding to those motions.

*Second*, Uber proposes moving jury selection to September 14. Plaintiffs do not oppose this request, but have submitted a schedule that keeps to the trial plan the Court ordered.

*Third*, Uber's schedule is premised on hard dates for close of fact discovery (a deadline that did not appear in the Wave 1 schedules) and close of expert discovery. While discovery has begun and will proceed quickly, it is not realistic that all fact discovery will be complete by August 7, 5 weeks before trial. Uber's concern is hard to take seriously given that it also proposes to move back the deadline for witness disclosures given its habit of disclosing brand new witnesses right before trial, witnesses who then must be deposed.

Similarly, while experts with new opinions should be deposed promptly, it does not make sense to prescribe a 10-day period for doing so before any briefing begins. In the unlikely event an expert deposition (1) by necessity occurs after a *Daubert* motion is filed and (2) produces evidence of such significance that it will affect the Court's decision-making on an issue, the party can bring that evidence to the Court's attention. The problem Uber envisions is completely speculative given that we don't know even how many new expert opinions will be disclosed (and there would be no basis to re-depose an expert who merely rests on his or her previously disclosed opinions).

**Uber's Position:**

The Court should enter Uber's proposed schedule, which is set forth in the table below, along with Plaintiff's proposal for comparison

| EVENT | UBER PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|---|
| Initial Disclosures | June 29, 2026 | June 30, 2026 |
| Close of Fact Discovery | August 7, 2026 | N/A |
| Expert Reports | August 14, 2026 | August 14, 2026 |
| Close of Expert Discovery | August 24, 2026 | N/A |
| Motion for Summary Judgment | August 27, 2026 | August 17, 2026 |
| Rule 702 Motions | August 27, 2026 | August 21, 2026 |
| Jury Questionnaire / Voir Dire Questions | August 27, 2026 | August 17, 2026 |
| Motions in Limine / 412 Motions | August 27, 2026 | August 17, 2026 |
| Witness Lists / Exhibit Lists | August 27, 2026 | August 20, 2026 |
| Oppositions to Motions for Summary Judgment / *Rule 702* Motions | September 3, 2026 | August 31, 2026 |
| Jury Instructions / Verdict Forms | August 27, 2026 | August 27, 2026 |
| Oppositions to Motions in Limine / 412 Motions | September 3, 2026 | August 31, 2026 |
| Joint Proposed Pretrial Order | September 1, 2026 | September 1, 2026 |
| Pretrial Conference | September 8, 2026 at ___ | September 3, 2026 at ___ |
| Trial Briefs (if any) | September 9, 2026 | September 9, 2026 |
| Branded Exhibits | September 9, 2026 | September 9, 2026 |
| Jury Selection | September 14, 2026**<br>**Uber has requested September 14 for Jury Selection, and Plaintiff does not oppose this request.** | |
| Trial | September 14, 2026 | |

Uber's proposal is far more reasonable than Plaintiff's given the current status of this case, because it provides additional time for fact and expert discovery, the two critical phases of workup that have to be completed before trial. To be sure, Uber's proposed schedule imposes tight deadlines for briefing, but those tight deadlines will be more challenging for Uber than Plaintiff, and they are the only realistic way to get everything done in just a little more than two months.

Plaintiff's suggestion that a two week opposition deadline only imposes burdens on her is not correct. As an example, in the *Mensing* case, Plaintiff filed eight case-specific motions in limine, including one motion that was more than 10 pages long with eleven subparts. Conversely, Uber filed one motion that it withdrew before the Court had to rule on it. Uber, therefore, expects that it will have to oppose considerably more motions in limine in this case than Plaintiff. At the end of the day,

Plaintiffs are the ones who advocated that the parties work up a brand new case on an expedited timeline and cannot and should not be surprised that briefing deadlines are going to be tight.

Uber's schedule also includes important deadlines for the close of fact and expert discovery, to ensure that the case proceeds in a rational manner and that there is time for expert depositions before the filing of Rule 702 motions. Plaintiff does not propose any such deadlines, injecting uncertainty into a compressed schedule. This is particularly concerning because under Plaintiff's proposed schedule, expert reports are due just one week before Rule 702 motions. That schedule would realistically mean that Uber cannot depose Plaintiff's experts before filing Rule 702 motions, which essentially would deprive Uber of any meaningful expert discovery. While the Court has expressed a view that most expert issues have likely been addressed in the prior two trials, this case will involve different expert challenges from *Dean* and *Mensing*, both because Plaintiff was a guest rider (a friend connected with the driver on the Uber app on her behalf) and because Plaintiff is statutorily barred from recovering punitive damages under Tex. Civ. Prac. & Rem. Code Ann. § 41.005. (For similar reasons, Uber intends to file a number of motions in limine that have not been filed in prior cases.)

Finally, Plaintiff does not oppose Uber's request to set jury selection on September 14, 2026. If the Court can accommodate this change, it will provide the Parties and the Court a little breathing room, including additional time for the parties to file oppositions to pretrial motions (thereby addressing Plaintiffs' stated concerns on this issue) and more time for the Court to review and rule on pretrial motions as well.

## III.    EXPERT REPORTS FOR *JANE DOE QLF 0001* TRIAL

The Parties agree that new expert reports will be submitted for all experts disclosed in *Jane Doe QLF 0001*, including experts who submitted a report in connection with the Wave 1 bellwether cases, although experts may incorporate by reference reports previously served in the MDL. While the Parties might use certain experts in *Jane Doe QLF 0001* who were previously disclosed in the MDL, the Parties further agree that any party may disclose new experts and disclose new reports, without limitation.

The Parties also agree that the Court's Rule 702 and in limine rulings in connection with the *Dean* case apply to *Jane Doe QLF 0001* to the extent they are applicable, with all issues preserved for appeal as if the motions were re-filed in this case.

Finally, the Parties agree that either party may file Rule 702 motions to address case-specific issues or other issues not previously briefed, argued, or ruled on by the Court.

## IV.    TRIAL LENGTH FOR *JANE DOE QLF 0001* TRIAL

At the June 16 CMC, the Court asked the Parties to propose two trial lengths for the upcoming *Jane Doe QLF 0001* trial: one if Uber intended to contest whether the assault occurred as alleged, and one if Uber did not intend to contest the assault occurred as alleged.

**Plaintiffs' Position:**

If Uber intends to contest whether the assault occurred, then the trial should be 65 hours (not including jury selection or closing arguments), the same as was set for *Dean* and for *B.L.* Although *Jane Doe* includes fewer legal claims than were at issue in *Dean* and *B.L.*, Plaintiffs' factual presentation at trial will have a similar scope concerning Uber's product and conduct.

Uber has stated its intent to move for summary judgment on punitive damages, citing a Texas statute it contends preclude such damages. Plaintiff does not agree and will brief the issue at summary judgment. However, even if the Court agrees with Uber, removing punitive damages should not shorten the trial much, if at all. For Plaintiff's case, the same kinds of evidence (minus financials) will be required to prove negligence. A trial without punitive damages would, however, preclude Uber from introducing certain post-incident evidence on which it would otherwise rely (safety features, etc.). If the Court excluded such evidence, that would save some trial time.

Uber argues that a "guest rider" trial will not involve evidence of marketing or "Woman Preferred." That is incorrect. In *Dean*, for example, the Court admitted evidence of Uber's marketing to intoxicated woman and rejected Uber's argument that such evidence was rendered irrelevant in light of the dismissal of Ms. Dean's "designated driver" fraud claims. Such evidence is relevant, as it was in *Dean*, to show how Uber knew and intended that intoxicated women, including guest riders, would use the service (and profited from that use), and how Uber was negligent in not adequately providing

for their safety. On "Woman Preferred," Plaintiff pleaded a design defect claim based on the allegation that the person who called the ride would have used "Woman Preferred" had it been available. (Allegations concerning "Woman Preferred" go to negligence as well.).

If Uber intends to concede that the assault occurred more or less as alleged, then the trial should be 55 hours (perhaps a little shorter if Uber is correct that punitive damages are foreclosed). Plaintiff will still need to put in some evidence about the assault to support her claimed damages.

Whatever the length of trial, the Court should divide the time 60-40, as was ordered in both *Dean* and *B.L. See* 5/22/26 H'rg Tr. at 17 (explaining that a 60-40 split makes sense given "that the plaintiffs bear the burden" of proof).

**Uber's Position:**

Uber is only at the very beginning of fact development and trial workup and is not prepared to disclose how it intends to defend itself at trial. Nor is it required to do so. Moreover, Plaintiff's two proposed trial scenarios do not represent the full range of potential defenses to this litigation.

That said, regardless of the precise nature of Uber's defense, this trial should be significantly shorter than *Dean* for several reasons. First, Plaintiff was a "guest rider," not the account holder. That will eliminate the need for much of the evidence Plaintiffs introduced at the *Dean* trial, including marketing evidence and evidence related to Women Preferred. Second, while Plaintiff downplays the impact of Tex. Civ. Prac. & Rem. Code Ann. § 41.005, the Texas statute barring punitive damages in this case, the scope of conduct evidence will be much narrower because this will be a compensatory trial. In light of these considerations, Uber proposes a 40-hour trial, split evenly between the Parties.

While the Court has repeatedly rejected Uber's arguments that trial time should be split 50/50, Uber respectfully submits that fairness demands an even split of time and that providing Plaintiff with more time dilutes the burden of proof by giving Plaintiff an advantage.

## V.    UPDATES ON TRIAL PREPARATION FOR *JANE DOE QLF 0001*

Given the fast-approaching trial date, the Parties provide the following updates on pretrial work in the *Jane Doe QLF 0001* matter.

**Plaintiffs' Position:**

- On June 19, Plaintiffs served case-specific 30(b)(6) notices that largely track the notices served in the Wave 1 bellwether cases. Uber has not responded to Plaintiffs' request to discuss dates and witnesses.

- On June 19, Plaintiffs contacted Uber with a list of deficiencies in Uber's responses to case-specific written discovery and DFS production. Judge Cisneros set a deadline of June 26 to meet and confer, and a deadline of July 2 to raise any unresolved issues to her.

- Plaintiffs have served Checkr, Inc. (Uber's background check vendor) a deposition and document subpoena. Checkr has agreed to produce a witness in July. This deposition is expected to encompass the *Jane Doe QLF* case.

- On June 11, Judge Cisneros ordered the Parties to meet and confer concerning additional productions of certain information appearing in Uber's "mobile event logs." ECF 6454. In the near time, Plaintiffs intend to prioritize information relevant to *Jane Doe QLF 0001*.

- On June 19, Judge Cisneros ordered that Plaintiffs may take depositions of non-profit third parties. ECF 6533. Plaintiffs anticipate those depositions may be used at the *Jane Doe QLF 0001* trial and so have proposed dates in July and early August.

- Judge Cisneros ordered supplemental custodial productions through December 31, 2025. ECF 6209, 6319, 6354. As relevant here, Plaintiffs are seeking productions pertaining to any witness that Uber intends to bring live to trial in 2026. Later, Judge Cisneros ordered narrowed production concerning certain custodians in advance of the *Jane Doe QLF 0001* trial. ECF 6676.

- Judge Cisneros ordered Uber to produce custodial files for witnesses that Uber has called live at previous trials (Mr. Dobbs, Ms. Boman), intended to call live at previous trials (Ms. O'Keefe, Mr. Gaddis), or will bring to upcoming trials. ECF 6209. Judge Cisneros also ordered Uber present for deposition Mr. Kansal and any other witnesses Uber will call at trial. *Id.* Uber sought relief from the Magistrate Judge's order, ECF

3079, which was denied, ECF 6667. Judge Cisneros issued a further order modifying certain deadlines. ECF 6676.

- Judge Cisneros ordered Uber to produce updated safety incident data. ECF 6452. Uber has moved for relief from that order. ECF 6675.

- Regarding Uber's requests for depositions and medical records, the parties have a meet and confer set for June 26.

**Uber's Position:**

- On June 22, Uber sent Plaintiff a list of individuals it intended to depose. Plaintiff's counsel indicated that they represent four of those witnesses (the Plaintiff, her parents, and her sister) and that dates would be forthcoming. Plaintiff's counsel has not provided any dates.

- Uber seeks complete medical and mental health records. Plaintiff has not produced pre-incident medical records, even though the medical records Uber has indicate that she was diagnosed with a psychiatric disorder(s) by the age of 14 (roughly nine years before the alleged incident). Uber is seeking medical records for five years before the alleged incident and any mental health records for the prior ten years. As of this submission, Plaintiff's counsel have not provided their position; nor have they provided the names of any pre-incident treaters.

- Uber intends to serve several third-party subpoenas, including on Lyft.

- On June 23, Uber sent Plaintiff a deficiency letter spelling out extensive issues with her discovery responses (e.g., failure to identify treaters, failure to produce Plaintiff's communications about the incident with third parties, failure to produce social media consistent with the Court's prior orders, etc.). Plaintiff has not responded.

- Uber is seeking an independent medical examination ("IME") and has reached out to Plaintiff for potential dates, although the IME cannot proceed until Uber has complete medical records.

## VI.    UPDATES ON TRIAL PREPARATION FOR *A.R.*

The Parties continue to pursue discovery and trial preparation in the *A.R.* case.

**Plaintiff's Position:**

Plaintiff does not believe that the status of *A.R.2* discovery is a topic worth visiting at this CMC. But because Uber insists on recounting the current state of affairs, Plaintiff responds.

Since June 2025, *A.R.2* was deposed twice, eight third-party depositions were taken; two treating providers were deposed; and five case-specific expert depositions were conducted (one of which was Uber's expert). Between April 2025 and June 2026, Plaintiff produced 2,399 pages of documents including 1,769 pages of medical records and communications as well as 630 pages of social media content. Plaintiff's third-party witnesses (friends and family) produced 751 pages of documents and communications.

On April 27, 2026, voluntarily, and in the spirit of transparency and good faith, the parties agreed to a Recollection Protocol in which *A.R.2* and five third-party witnesses (her friends and parents), again extensively searched their text messages, emails, social media, photos, videos, and other records for material that contained any of 14 different search terms (and exchanges within five hours of the appearance of those terms). This expansive and overly inclusive recollection process yielded over 1,900 pages of documents that are in, the most part, irrelevant or unresponsive to Uber's requests, and was produced to Uber on June 7, 2026. The fifth witness (J.M.) refused to participate in this process despite Plaintiff's counsel's numerous attempts for compliance with the Protocol. Counsel for *A.R.2* informed Uber of same, and that Plaintiff's counsel no longer represented her for the purpose of this lawsuit, and suggested Uber subpoena that witness if it so wishes. Plaintiff's counsel acknowledged and informed Uber's counsel that they would collect more materials from two of the witnesses (*A.R.2's* parents) who unintentionally excluded documents previously produced by *A.R.2,* although Uber already has the communications. This minimal, additional production will be produced shortly.

Uber alleges that Plaintiff's recent recollection protocol production identified five "new fact witnesses not previously disclosed by Plaintiff," but this is false. Three of the witnesses (J.W., E.E.,

and E.A.) were disclosed during *A.R.2's* July 1, 2025 deposition. The fourth third-party witness that Uber alleges is "newly disclosed" (T.G.), was in fact disclosed on July 16, 2025, in a supplemental document production. The fifth witness (C.L.) was disclosed to Uber on September 26, 2025, in Plaintiff's expert Mindy Mechanic's expert report. Plaintiff's Initial Disclosures and interrogatory responses have continuously been updated, including recently after the re-collection protocol production, to include additional information and potential witnesses.

Plaintiff's counsel is obtaining additional deposition dates for Plaintiff and the two already deposed third-party witnesses. Plaintiff is also obtaining a further deposition date for Plaintiff's mental healthcare provider, RNP Patisornik, who was deposed last year. The scope and duration of these depositions have not been agreed to by the Parties.

After Plaintiff's recent Initial Disclosure supplement, on June 24, 2026, Uber requested five additional third-party witnesses. Out of an abundance of caution, Plaintiff's disclosures included every person who may have information related to this lawsuit, but Plaintiff does not intend to call these witnesses at trial. Uber's request for these additional depositions is cumulative, burdensome, and Plaintiff intends to move for a protective order.[1]

On June 24, 2026, Uber requested five additional third-party witnesses. Plaintiff is reviewing Uber's request, but the burden of these additional depositions is likely unwarranted given the limited information the witnesses have regarding Plaintiff's assault, injuries, or lawsuit.

**Uber's Position:**

Due to Peiffer Wolf's discovery misconduct, Plaintiff belatedly produced, on June 7, well over 1,000 pages of communications by and between Plaintiff and other fact witnesses represented by Plaintiff's Counsel, Peiffer Wolf. This production was made pursuant to a protocol the Parties entered into following the revelations by witness I.E. regarding Peiffer Wolf's discovery misconduct. *See* ECF 3669, Joint Discovery Letter Regarding Sanctions for Discovery Misconduct by Plaintiffs and Counsel, ECF 3786, Order Resolving Joint Discovery Letter Regarding Conduct By Peiffer Wolf. As

---

[1] "The Court declines to set a specific limit on the number of such depositions at this time. This Order is without prejudice to Plaintiffs seeking a protective order if they object to the number of witnesses noticed for deposition in a particular case, or to the Court considering a presumptive limit for future cases if the volume of deposition notices is abusive or unduly burdensome." ECF 2754.

11

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

of June 23, Plaintiff maintains that this production is not yet complete. Plaintiff further reported that one witness, J.M., who was represented by Peiffer Wolf at her deposition and is subject to the negotiated protocol, is no longer represented; Uber will seek J.M.'s deposition and supplemental discovery. Plaintiff's production to date has identified five new fact witnesses not previously disclosed by Plaintiff as having knowledge relevant to the litigation and has included documents that should have been produced sooner in response to deposition notices and discovery requests.

On June 12, Uber requested the depositions of nine witnesses, including the Plaintiff.

On June 17, Plaintiff supplemented her Rule 26 disclosures and discovery responses.

On June 22, pursuant to the updated discovery, Uber requested the depositions of four additional witnesses added to Plaintiff's Rule 26 disclosure.

Plaintiff has not yet provided deposition dates and times for the three witnesses represented by Plaintiff's Counsel. Of the remaining ten witnesses, Plaintiff's counsel has provided the contact information for only one.

The witnesses Plaintiff points out as being previously mentioned in deposition—J.W., E.E., and E.A.—were referenced as friends and a then-new boyfriend (in the case of J.W.) in previous discovery, but Plaintiff identified none of these witnesses as having discoverable information relevant to the litigation until after the June 7 production. Witness C.L., referenced in Plaintiff's expert report, was not disclosed or identified until after the previous close of Wave 1 discovery, and she was not added to Plaintiff's Rule 26 disclosure until April 1, 2026. *See* ECF 2894 (setting discovery deadline as September 22, 2025). Each witness for whom Uber has requested a deposition is now included on Plaintiff's Rule 26 disclosure following the June 17 supplement. This CMC statement is the first time Plaintiff has stated (a) that she does not intend to call the witnesses identified on her Rule 26 disclosure at trial, and (b) that she intends to seek a protective order. Uber will meet and confer with Plaintiff on this newly disclosed position.

In addition to these 13 witnesses, Uber is seeking the renewed deposition of Plaintiff's mental healthcare provider, RNP Patisornik, who was deposed last year and whom Plaintiff continues to see for treatment. Uber has asked Plaintiff's counsel to confirm whether there are any additional mental

healthcare providers Plaintiff has seen in the past year; Plaintiff's counsel has not responded to that request.

## VII.    RESOLUTION / MEDIATION

The Parties continue to meet periodically with Judge Andler to discuss the potential for resolution. The most recent meeting with Judge Andler occurred on May 27, 2026.

## VIII.   NEXT CASE MANAGEMENT CONFERENCE

The Parties request that the Court set the next monthly Case Management Conference.

Dated: June 26, 2026

By: */s/ Sarah R. London*_____

    Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*_____

    Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*_____

    Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated:  June 26, 2026

**KIRKLAND & ELLIS LLP**

By: */s/ Laura Vartain Horn*
    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN
    JESSICA DAVIDSON
    LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## FILER'S ATTESTATION

I, Andrew R. Kaufman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: June 26, 2026                    /s/ Andrew R. Kaufman