**JENNER & BLOCK LLP**
Navid Bayar (SBN 319640)
nbayar@jenner.com
525 Market Street, 29th Floor
San Francisco, CA 94105-2708
Telephone: (415) 293-4812

Howard Suskin (*pro hac vice application pending*)
Hsuskin@jenner.com
Gabriel Gillett (*pro hac vice application pending*)
Ggillett@jenner.com
Charles Johnson (*pro hac vice application pending*)
CJohnson@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350

*Attorneys for Nominal Defendant*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Derivatively on Behalf of Nominal Defendant UBER TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DARA KHOSROWSHAHI, RONALD SUGAR, REVATHI ADVAITHI, TURQI ALNOWAISER, NIKESH ARORA, URSULA BURNS, ROBERT ECKERT, AMANDA GINSBERG, JOHN THAIN, ALEXANDER WYNAENDTS, ANDREW MACDONALD, BALAJI KRISHNAMURTHY, and PRASHANTH MAHENDRA-RAJAH, <br><br> Defendants, <br><br> – and – <br><br> UBER TECHNOLOGIES, INC., <br><br> Nominal Defendant | Case No. 26-CV-06155-LJC <br><br> *Also filed in MDL No. 23-md-3084-CRB* <br><br> **NOMINAL DEFENDANT'S RESPONSE TO SUA SPONTE REFERRAL TO DETERMINE WHETHER CASES ARE RELATED** <br><br> Judge: Honorable Lisa J. Cisneros <br> Action filed: June 22, 2026 |

**INTRODUCTION**

Pursuant to the Court's June 26, 2026 Order, Nominal Defendant Uber Technologies, Inc. ("Uber") respectfully submits this response to the Court's Sua Sponte Referral To Determine Whether Cases Are Related. Under the Local Rules, an "action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." L.R. 3-12(a).

These criteria are not satisfied here. The above-captioned shareholder derivative action ("Detroit Action") and the multidistrict litigation *In re Uber Technologies Inc. Sexual Assault Litigation*, 23-md-3084 ("MDL Action"), involve different parties, claims, events, and evidence. This case also involves critical threshold legal questions—related to enforcing Uber's forum selection clause in a derivative action, and whether the plaintiff was obligated to make a pre-suit demand on Uber's board of directors—that are not relevant to the MDL Action and will not be raised there. Referring this case to the judge presiding over the MDL Action therefore would not serve judicial economy. And because there is no overlap of issues between the Detroit Action and MDL Action, there is no risk of conflicting judgments if the cases are decided by different judges. As a result, Uber respectfully opposes finding the Detroit Action and MDL Action are "related" under Civil Local Rule 3-12.

**ARGUMENT**

**I.      The Cases Are Not Related Under Civ L. R. 3-12.**

   **A. The Cases Do Not Concern "Substantially the Same Parties, Property, Transaction or Event."**

The Detroit Action and the MDL Action do not involve the same parties, claims, governing law, or events. Plaintiffs in the MDL Action are thousands of individuals who assert tort claims against Uber arising under the law of approximately 30 different states, based on alleged sexual assaults that occurred in connection with rides facilitated by Uber.

Plaintiff in the Detroit Action, by contrast, asserts different claims against different defendants arising under different laws based on different events.

- The Detroit Action is brought by the Police and Fire Retirement System of the City of Detroit, derivatively on behalf of Uber. Neither Police and Fire Retirement System of the City of Detroit nor Uber are plaintiffs in the MDL Action.

- The Detroit Action names as defendants 13 individuals who served as directors or officers of Uber. None of those individuals is a defendant in the MDL Action.[1]

- The Detroit Action asserts three Delaware state law claims for breach of fiduciary duty, corporate waste, and unjust enrichment, and two conclusory federal claims under the Securities Exchange Act. None of those claims is asserted in the MDL Action;

- The derivative claims in the Detroit Action assert that Uber suffered harm based on alleged conduct by individuals serving as Uber directors and officers related to compliance with the Americans with Disabilities Act and federal consumer protection law. None of that alleged conduct is at issue in the claims in the MDL Action, and the MDL Action does not relate in any way to the compliance issues alleged in the Detroit Action.

- The derivative claims in the Detroit Action also allege that Uber suffered harm based on conduct by individuals serving as Uber directors and officers related to protecting passenger safety. But alleged harm to Uber and alleged conduct by the individual directors and officers is *not* at issue in the MDL Action.

These reasons provide ample grounds for this Court to find the Detroit Action and the MDL are not related. *See, e.g.*, *Tecson v. Lyft, Inc.*, 2019 WL 1903263, at *3-4 (N.D. Cal. April 29, 2019) (denying motion to relate cases involving different plaintiff classes when the classes would be "significantly different" from each other and involve "different facts and claims"); *Ortiz v. CVS Caremark Corp.*, 2013 WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013) (denying motion to relate when there was "limited overlap" of the class members and different key facts at issue);

---

[1] While Uber is styled as a Nominal Defendant in the Detroit Action, because of the derivative nature of the claims Uber functions as more like the plaintiff than a defendant. *See In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1130 (N.D. Cal. 2019) (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

*Evolutionary Intelligence LLC v. Yelp, Inc.*, 2013 WL 12173933, at *1 (N.D. Cal. Oct. 8, 2013) (denying motion to relate where cases involved different but similar patent claims regarding technology and e-commerce products and different defendants); *Sorensen v. Lexar Media, Inc.*, 2008 WL 11344635, *1 (N.D. Cal. July 25, 2008) (denying motion to relate a case filed by the same plaintiffs against different defendants); *see also Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 2020 WL 1888950, at *4 (E.D. Pa. Apr. 16, 2020) (denying consolidation of a securities class action with a derivative action because the parties and claims were "distinct in nature," and citing the unique nature of a derivative action); *Treppel v. Reason*, 793 F. Supp. 2d 429, 437 (D.D.C. 2011) (denying a motion to consolidate case asserting antitrust claims with a derivative action, noting distinction between claims and relevant actors).

### B. It Is Not "Likely That There Will Be an Unduly Burdensome Duplication of Labor and Expense or Conflicting Results" If the Cases Are Not Related.

Because the Detroit Action and the MDL Action present distinct legal and factual issues, assigning the Detroit Action to the judge presiding over the MDL Action will not aid judicial economy, streamline proceedings, or avoid risk of conflicting judgments.

First, in the Detroit Action, a threshold legal question is whether this the United States District Court for the Northern District of California is the proper forum for the claims in the Complaint. The forum selection clause in Uber's Amended and Restated Certificate of Incorporation provides that the Court of Chancery of the State of Delaware is the "sole and exclusive forum" for "any derivative action" or any action asserting a breach of fiduciary duty, corporate waste, and unjust enrichment, unless Uber "consents in writing to the selection of an alternative forum." Amended and Restated Certificate of Incorporation, at 4 (section VII). Uber has not consented in writing to have those claims brought in this jurisdiction, and plaintiff does not allege otherwise in the Complaint. Before this case proceeds, it will need to be decided whether the state-law claims should be dismissed on that basis.[2] That issue has not been raised or decided in the MDL Action, and there is no reason it will be in the future: Uber's forum selection clause

---

[2] Uber reserves all rights and arguments related to improper forum and seeking to dismiss the Detroit Action.

4

has no application to the claims at issue in the MDL Action.[3]

Second, whatever the forum, the presiding judge will need to determine the second threshold question of whether plaintiff's claims must be dismissed for failure to make a pre-suit demand on Uber's board of directors.  Fed. R. Civ. P. 23.1; *see, e.g.*, *In re BofI Holding, Inc. S'holder Litig.*, 808 F. Supp. 3d 1107, 1121-23 (S.D. Cal. 2025). The demand issue turns on the question of whether the Complaint adequately alleges that demand was futile—which focuses on whether a majority of the board is sufficiently disinterested to fairly evaluate the claims. *In re Bofi Holding*, 808 F. Supp. 3d at 1125-37; Compl. ¶¶ 101, 105-06. The answer has nothing to do with any of the claims or evidence in the MDL Action. Demand futility has not been raised or decided in the MDL Action, and there is no reason it will be in the future: there is no requirement that tort claimants, like plaintiffs in the MDL Action, make a pre-suit demand on the Uber board. Simply put, the independence of Uber's officers and directors has nothing to do with the claims in the MDL Action.

Third, on the merits, there is not sufficient overlap between the substance of the claims asserted in the Detroit Action and the MDL Action to justify treating the cases as related. Plaintiff in the Detroit Action alleges certain of Uber's directors and officers breached fiduciary duties to Uber and its shareholders by failing to sufficiently respond to supposed "red flags"—so-called *Caremark* Claims—related to passenger safety, compliance with the Americans with Disabilities Act, and federal consumer protection law related to the Uber One subscription service. *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996); *see also Melbourne Mun. Firefighters' Pension Tr. Fund on Behalf of Qualcomm, Inc. v. Jacobs*, 2016 WL 4076369, at *7 (Del. Ch. Aug. 1, 2016), *aff'd*, 158 A.3d 449 (Del. 2017) ("A *Caremark* claim is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment, and bad faith on the part of the corporation's directors is a necessary condition to liability."). (Plaintiff

---

[3] If this Court honors Uber's forum selection clause—as courts in the Ninth Circuit consistently have done, *see, e.g.*, *Lee v. Fisher*, 70 F.4th 1129, 1135 (9th Cir. 2023)—Plaintiff may well opt to dismiss this action entirely. Plaintiff appears to have pled the federal securities claims solely for jurisdictional purposes; it does not allege any wrongful acts or seek any relief on the federal securities claims that is different from the acts alleged and relief sought on the state-law claims.

also alleges in a conclusory fashion that certain of Uber's directors and officers caused Uber to make allegedly false or misleading Proxy Statements related to those issues.) But plaintiffs in the MDL Action raise no similar allegations in the MDL Action. Their claims do not involve application of the *Caremark* standard (*e.g.*, whether information before the Board constituted red flags and whether the Board acted properly in response) or Uber's Proxy Statements.

These differences in parties, claims, evidence, and legal issues between the Detroit Action and MDL Action make conflicting rulings exceedingly unlikely. *See, e.g., ESS Tech., Inc. v. PCTEL, Inc.*, 2001 WL 1891713, at *6 (N.D. Cal. Nov. 28, 2001) (holding there is no risk of conflicting results when resolution of a common issue is "dependent of a multitude of case-specific facts and issues"). And even if there were a remote chance of some overlap that would not support finding relatedness here. *See, e.g.*, *Allen v. City of Oakland,* 00-civ-4599-TEH (N.D. Cal. November 23, 2011) slip order at 1-2 (holding overlap of legal issues did not mean conflicting results were likely and writing "implicit in Civil Local Rule 3-12(a) is the principle that single judges of this Court do not become responsible for all cases arising in one area of law, even when some of the same parties are involved").

Given the distinct nature of the cases, there is no danger of unduly burdensome duplication in labor or conflicting results if the Detroit Action and MDL Action proceed separately.

<strong>CONCLUSION</strong>

For the reasons set forth above, the Cases are not related under Civil Local Rule 3-12. Therefore, this case should be randomly assigned pursuant to Local Rule 3-3(a) and General Order No. 44.

Respectfully submitted,

Dated:    June 30, 2026    JENNER & BLOCK LLP


By: */s/ Howard Suskin*
Navid Bayar (SBN 319640)
Howard Suskin (pro hac vice application pending)
Gabriel K. Gillett (pro hac vice application pending
Charles J. Johnson (pro hac vice application pending)

*Attorneys for Nominal Defendant Uber Technologies, Inc.*