*Submitting Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER LLC, AND RASIER-CA, LLC'S AND PLAINTIFFS' JOINT OMNIBUS MOTION TO SEAL**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**TABLE OF CONTENTS**

I.      INTRODUCTION AND TABLES OF DOCUMENTS.............................................................1

II.     UBER'S POSITION ................................................................................................................1

   A.    Legal Standard ...............................................................................................................1

      1.    Good Cause. ...........................................................................................................1

      2.    Plaintiffs' Arguments Rest on an Incorrect Legal Standard. ...........................................2

   B.    Argument ........................................................................................................................6

      1.    Uber's Approach to Sealing Is the Least Restrictive Alternative. ...................................6

      2.    The number, size, and lack of relevance of documents supports a finding of good cause. ...............................................................................................................7

      3.    Plaintiffs' assertion that supposedly "stale" documents cannot be protected is wrong.....8

      4.    Plaintiffs' incorrect characterization of documents and trial testimony as "public disclosure" for all purposes is not the law and must be rejected. ...................................10

      5.    Plaintiffs' Do not Oppose Redaction of Employee Personal Identifying Information ("PII"); Other Employee PII should also be protected. ....................................................11

      6.    Non-Public Information About Executive Compensation is Confidential and Should be Protected. ............................................................................................................16

      7.    Uber's Financial Information and Strategic Resource Allocation and Prioritization. ......17

      8.    Safety Feature Performance and Experimentation. ...........................................................18

         a.    S-RAD.............................................................................................................19

         b.    Women Rider Preferred. ...........................................................................................20

         c.    Dashcams and Uber's audio recording technology. ....................................................21

         d.    RideCheck/RideSense.............................................................................................22

      9.    Risk Assessments.............................................................................................................24

      10.   Data Collection, Organization, and Classification.............................................................24

      11.   Data Regarding Reports of Sexual Assault and other Sexual Misconduct......................26

      12.   Research and Analyses Concerning Internal Uber Data.................................................26

      13.   Driver Screening and Retention.......................................................................................27

      14.   Deactivation and Investigation Processes.......................................................................28

      15.   Uber's Relationships with Non-Profit Organizations. .....................................................30

      16.   Lobbying and regulatory strategy. ...................................................................................31

      17.   Communications strategy.................................................................................................33

   C.    Conclusion ...................................................................................................................36

III.    Plaintiffs' Position .................................................................................................................37

   A.    Legal Standard .............................................................................................................37

   B.    Argument ......................................................................................................................37

JOINT OMNIBUS MOTION TO SEAL             Case No. 3:23-md-03084-CRB (LJC)

1.    There Are Compelling Reasons to Seal Plaintiff, Non-Plaintiff Survivor, and Employee PII—But Not Everything Uber Designated as "PII" is PII ................................................39

2.    Uber Failed to Establish Good Cause to Seal the Requested Materials .........................41

    a.    Communications Strategies ...............................................................................41

    b.    Lobbying and Regulatory Communications ......................................................43

    c.    Safety Feature Performance and Experimentation ............................................45

    d.    Financial Information and Strategic Resource Allocation/ Prioritization........48

    e.    Executive Compensation ...................................................................................48

    f.    Data Collection, Organization, and Classification............................................49

    g.    Research and Analyses Concerning Uber's Internal Data.................................49

    h.    Data Regarding Reports of Sexual Assault/Sexual Misconduct.......................51

    i.    Driver Screening/Retention ...............................................................................52

    j.    Deactivation/Investigation Processes................................................................53

    k.    Uber's Relationship with Nonprofits ................................................................55

    l.    Risk Assessments...............................................................................................57

C.    Conclusion ....................................................................................................................58

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Activision Publ'g, Inc. v. EngineOwning UG,*
2023 WL 2347134 (C.D. Cal. Feb. 27, 2023)..............................................................15

*Aerodynamics Inc. v. Caesars Ent. Operating Co.,*
2015 WL 5679843 (D. Nev. Sept. 24, 2015).................................................................18

*Aevoe Corp. v. AE Tech. Co.,*
2013 WL 6210648 (D. Nev. Nov. 27, 2013) ................................................................13

*Am. Automobile Ass'n of N. Cal., Nev., & Utah v. General Motors, LLC,*
2019 WL 1206748 (N.D. Cal. Mar. 14, 2019)..............................................................15

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.,*
2024 WL 4487404 (N.D. Cal. Aug. 13, 2024) ...............................................................1

*Apple Inc. v. Samsung Elecs. Co.*
2012 WL 4120541 (N.D. Cal. Sept. 18, 2012), 2013 WL 412864 (N.D. Cal. Feb.
1, 2013) ........................................................................................................................13

*Ashcraft v. Welk Resort Grp., Corp.,*
2019 WL 12518367 ......................................................................................................30

*ATS Prods., Inc v. Fiber Glass Sytems, L. P.,*
2026 WL 1746969 (N.D. Cal. June 17, 2026).................................................................7

*Baker v. SeaWorld Ent., Inc.,*
2017 WL 5029612 (S.D. Cal. Nov. 3, 2017) ........................................................9, 10, 32, 35

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
966 F.2d 470 (9th Cir. 1992) .........................................................................................5

*Bizarre Academia, LLC v. Wolf,*
2026 WL 603724 (N.D. Cal. Mar. 4, 2026).....................................................................7

*Blockchain Innovation, LLC v. Franklin Resources, Inc.,*
2024 WL 4394758 (N.D. Cal. Oct. 3, 2024)........................................................... *passim*

*Bohannon v. Facebook, Inc.,*
2014 WL 5598222 (N.D. Cal. Nov. 3, 2014) ................................................................12

*Bold Ltd.,*
2021 WL 6621061 ........................................................................................................19

*Bold Ltd. v. Rocket Resume, Inc.,*
2024 WL 1329921 ................................................................................................ *passim*

i

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
   2024 WL 665647 (N.D. Cal. Feb. 16, 2024) ..............................................................24, 27, 33

*United States ex rel. Brown v. Celgene Corp.*,
   2016 WL 6542729 (C.D. Cal. Mar. 14, 2016) ...........................................................................8

*Calhoun v. Google LLC*,
   2022 WL 1122843 (N.D. Cal. Apr. 14, 2022) ........................................................22, 23, 26, 29

*Chandler v. Frauenheim*,
   2018 WL 4056018 (N.D. Cal. Aug. 23, 2018) .........................................................................7

*Clark v. Gargalicana*,
   2025 WL 1596695 (D. Or. May 29, 2025) ..............................................................................4

*Clark v. Metro. Life Ins. Co.*,
   2010 WL 1006823 (D. Nev. Mar. 16, 2010) ..........................................................................13

*Concord Music Group, Inc. v. Anthropic PBC*,
   2025 WL 1665754 (N.D. Cal. May 23, 2025), 2025 WL 1665754 (N.D. Cal. May
   23, 2025) ...............................................................................................................................9

*Contour Ip Holding, LLC v. GoPro, Inc.*,
   2021 WL 75666 (N.D. Cal. Jan. 8, 2021).............................................................................18

*Craig v. Am. Tuna, Inc.*,
   2023 WL 8242460 (S.D. Cal. Nov. 28, 2023) .......................................................................27

*Ctr. For Auto Safety v. Chrysler Group, LLC*,
   809 F.3d 1092 (9th Cir. 2016) .................................................................................... *passim*

*Daybreak Game Co., LLC v. Takahashi*,
   2025 WL 3552744 (S.D. Cal. Dec. 11, 2025).......................................................................27

*DeMartini v. Microsoft Corp.*,
   2023 WL 4205770 (N.D. Cal. June 26, 2023).......................................................................27

*E. W. Bank v. Shanker*,
   2021 WL 3112452 ............................................................................................................17, 29

*Equal Emp. Opportunity Comm'n v. Loflin Fabrication LLC*,
   2020 WL 3845020 (M.D.N.C. July 8, 2020) .............................................................13, 14, 15

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ...........................................................................................2, 4

*Exeltis USA Inc. v. First Databank, Inc.*,
   2020 WL 2838812 ...............................................................................................................23

*Finjan, Inc. v. Proofpoint, Inc.*,
   2016 WL 7911651 ...............................................................................................................29

ii

*Flexible Benefits Council v. Feltman,*
  2008 WL 4924711 (E.D. Va. Nov. 13, 2008)...........................................................................33

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
  331 F.3d 1122 (9th Cir. 2003) ...............................................................................................5

*G&C Auto Body Inc v. Geico Gen. Ins. Co.,*
  2008 WL 687372 (N.D. Cal. Mar. 11, 2008)..........................................................................18

*Gomo v. NetApp, Inc.,*
  2019 WL 1170775 (N.D. Cal. Mar. 13, 2019)...................................................................15, 16

*Hadley v. Kellogg Sales Co.,*
  2018 WL 7814785 (N.D. Cal. Sept. 5, 2018) .............................................................2, 15, 16

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,*
  2015 WL 12976921 (N.D. Cal. Mar. 31, 2015).....................................................................31

*Jackpocket, Inc. v. Lottomatrix NY LLC,*
  2022 WL 17738779 (S.D.N.Y. Dec. 15, 2022) .....................................................................33

*Jones v. PGA Tour, Inc.,*
  2023 WL 7434197 (N.D. Cal. Oct. 5, 2023)..........................................................................15

*Jones v. PGA Tour, Inc.,*
  2023 WL 7440303 (N.D. Cal. Nov. 8, 2023) ............................................................... *passim*

*Kamakana v. City and County of Honolulu,*
  447 F.3d 1172 (9th Cir. 2006) ................................................................................... *passim*

*Kenny v. Pac. Inv. Mgmt. Co. LLC,*
  2018 WL 3328224 (W.D. Wash. July 6, 2018) .....................................................................16

*Kowalsky v. Hewlett-Packard Co.,*
  2012 WL 892427 (N.D. Cal. Mar. 14, 2012)...................................................................19, 22

*Laatz v. Zazzle, Inc.,*
  2024 WL 4493441 (N.D. Cal. Sept. 25, 2024) ...................................................................9, 15

*Laatz v. Zazzle, Inc.,*
  2025 WL 405702 (N.D. Cal. Feb. 5, 2025) ................................................................. *passim*

*Lawson v. Grubhub, Inc.,*
  2017 WL 2951608 ...................................................................................................................28

*Logistics Guys Inc. v. Cuevas,*
  2024 WL 4839824 (E.D. Cal. Nov. 20, 2024).......................................................................15

*Lyft, Inc. v. AGIS Software Dev. LLC,*
  2022 WL 1505879 (N.D. Cal. Apr. 7, 2022).....................................................................18, 19

iii

*MasterObjects, Inc. v. Amazon.com, Inc.*,
   2022 WL 4074653 (N.D. Cal. Sept. 5, 2022), 2022 WL 4074653 (N.D. Cal. Sept. 5, 2022) ...............................................................................................................10

*Mobileum Inc. v. Sarl*,
   2023 WL 8481802 .............................................................................22, 23, 26

*Nautilus Biotechnology, Inc. v. SomaLogic, Inc.*,
   2024 WL 4894852 (N.D. Cal. Nov. 26, 2024) ....................................................22

*Nixon v. Warner Commc'ns Inc.*,
   435 U.S. 589 (1978)...............................................................................................8

*Ochoa v. McDonald's Corp.*,
   2015 WL 3545921 (N.D. Cal. June 5, 2015), 2015 WL 3545921 (N.D. Cal. June 5, 2015) .................................................................................................................6

*In re Pac. Fertility Ctr. Litig.*,
   2021 WL 1082843 (N.D. Cal. Mar. 12, 2021)....................................................15

*Pac. Steel Grp. v. CMC Fabricators, Inc.*,
   2026 WL 1146093 (S.D. Cal. Apr. 28, 2026).....................................................17

*In re PersonalWeb Techs., LLC et al. Patent Litigation*,
   2023 WL 3468296 (N.D. Cal. Apr. 13, 2023), 2023 WL 3468296 (N.D. Cal. Apr. 13, 2023) .................................................................................................................6

*Pintos v. Pac. Creditors Ass'n*,
   605 F.3d 665 (9th Cir. 2010) .................................................................................4

*Pizana v. Sanmedica International, LLC*,
   2023 WL 5533447 (E.D. Cal. Aug. 28, 2023), 2023 WL 5533447 (E.D. Cal. Aug. 28, 2023) .................................................................................................................8

*In re Qualcomm*,
   2017 WL 5176922 .....................................................................................6, 24, 27

*Regents of Univ. of Cal. v. LTI Flexible Prod., Inc.*,
   2021 WL 4133869 (N.D. Cal. Sept. 10, 2021) ...................................................15

*Richter v. Oracle Am., Inc.*,
   2023 WL 5663217 (N.D. Cal. Aug. 30, 2023) ....................................................16

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*,
   187 F.3d 1096 (9th Cir. 1999) ...............................................................................5

*Skillz Platform Inc. v. AviaGames Inc.*,
   2023 WL 6135556 (N.D. Cal. Sept. 18, 2023) ...................................................23

iv

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    2017 WL 386345 (N.D. Cal. Jan. 27, 2017) ...................................................................15

*Snapkeys, Ltd. v. Google LLC*,
    2021 WL 1951250 (N.D. Cal. May 14, 2021) ..............................................................15

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
    2012 WL 6160468 (E.D. Cal. Dec. 11, 2012), 2012 WL 6160468 (E.D. Cal. Dec.
    11, 2012) ....................................................................................................................9

*Stiner v. Brookdale Senior Living, Inc.*,
    2022 WL 1180216 (N.D. Cal. Mar. 30, 2022).............................................................15

*Strike 3 Holdings, LLC v. Doe*,
    791 F. Supp. 3d 1102 (N.D. Cal. 2025) ......................................................................5

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
    2016 WL 6783691 (M.D.N.C. Oct. 6, 2016)..............................................................33

*T1 Payments LLC v. New U Life Corp.*,
    2022 WL 1472665 ......................................................................................................30

*Trainer v. Cnty. of Delaware*,
    2024 WL 1998088 (E.D. Pa. May 6, 2024)..........................................................13, 14

*United States v. Rite Aid Corp.*,
    2019 WL 1923234......................................................................................................25, 30

*U.S. Football League v. Nat'l Football League*,
    634 F. Supp. 1155 (S.D.N.Y. 1986)...........................................................................33

*United States v. Selugh*,
    896 F. 3d 1007 (9th Cir. 2018) ..................................................................................4

*Wanek v. Russell Invs. Tr. Co.*,
    2024 WL 3256534 (D. Nev. June 28, 2024)..........................................................15, 16

**Rules**

Fed. R. Civ. P. 26(b)(1)...................................................................................................4

Fed. R. Civ. P. 26(c) ............................................................................. *passim*

JOINT OMNIBUS MOTION TO SEAL            Case No. 3:23-md-03084-CRB (LJC)

# I.    INTRODUCTION AND TABLES OF DOCUMENTS

Pursuant to the Court's March 30, 2026 Order (ECF 5676), Defendants Uber Technologies Inc., Rasier LLC, and Rasier-CA, LLC (collectively, "Uber") and Plaintiffs respectfully submit this Joint Omnibus Sealing Motion. For the reasons set forth herein, there is good cause to seal in full or in part with the narrowly tailored proposed redactions.[1]

# II.    UBER'S POSITION

## A.    Legal Standard

### 1.    Good Cause.

Courts in the Ninth Circuit use one of two standards to decide whether a document should remain under seal: "compelling reasons" or "good cause." *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, 2024 WL 4487404, at *1 (N.D. Cal. Aug. 13, 2024). Documents that do not relate directly to the merits of a case (*i.e.*, those submitted in connection with a "non-dispositive" motion) are properly sealed when a moving party makes "a particularized showing under the good cause standard of Rule 26(c)." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (internal quotation marks and citations omitted); *see also Ctr. For Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016). Under Federal Rule of Civil Procedure 26(c), good cause may exist to seal in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). District courts have discretion to balance the interests of private parties and public disclosure when deciding to seal documents. *See*

---

[1] A complete list of the materials that the parties seek to seal is included in the competing [Proposed] Orders filed with this Motion. Uber attaches a chart to the accompanying Declaration of Michael B. Shortnacy (the "Shortnacy Declaration") identifying each document Uber seeks to seal and the relevant categories discussed in this motion, declarations in support, and the scope of Uber's request to seal.

The Updated Keller Report (ECF Nos. 4844-5, 4844-6, 4844-7, 4844-8 and 4844-9), the Chandler Supplemental Report (ECF Nos. 4844-3 and 4844-4), and the Stodden Supplemental Expert Rebuttal Report (ECF Nos. 4983-2 and 5044-2) contain material that overlaps significantly with the Joint Omnibus Motion to Seal pending before Judge Breyer. ECF 6404. Judge Breyer's rulings on whether the overlapping materials should be sealed under the compelling interest standard will be instructive (or potentially controlling) as to sealing under the good cause standard. Accordingly, the parties therefore jointly request that the Court defer the sealing briefing on those three documents until two weeks after Judge Breyer rules on the Omnibus Motion to Seal.

1

*Kamakana*, 447 F.3d at 1180 (explaining that "Rule 26(c) gives the district court much flexibility in balancing and protecting the interests of private parties"); *Hadley v. Kellogg Sales Co.*, 2018 WL 7814785, at *1 (N.D. Cal. Sept. 5, 2018).

The documents at issue were submitted in connection with the following discovery-related filings: (1) Plaintiffs' Motion to Compel Custodial Discovery (ECF 1137); (2) Defendants' Motion for Protective Order (ECF 2425); (3) a Joint Letter Regarding the Gus Fuldner Deposition and Apex Order (ECF 2687); (4) a Joint Letter Regarding Defendants' Production of Safety Lens Snapshots in Defendant Fact Sheets (ECF 2796); (5) Plaintiffs' Letter Regarding Defendants' Responses to Plaintiffs' Bellwether Discovery Requests (ECF 3069); (6) a Joint Discovery Letter Brief Regarding Bellwether Plaintiff A.R.2 and Social Media Production (ECF 3191); (7) a Joint Letter Regarding the Corrected Supplemental Report of John Chandler, Ph.D. and the Updated Expert Report of Lacey R. Keller (ECF 2752); (8) a Joint Letter Regarding Deficient Production of Plaintiffs' Expert Materials (ECF 4865); and (9) a Joint Discovery Letter Regarding Stodden and Zgoba Rebuttal Reports (ECF 4982).

These filings all relate to non-dispositive discovery motions or disputes, not the merits of this litigation; therefore, the good cause standard applies.  *See, e.g.*, *Ctr. for Auto Safety*, 809 F.3d at 1097 (stating that the good cause standard is appropriately applied in the context of considering "sealed materials attached to a discovery motion unrelated to the merits of a case"); *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("[W]hen a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted."); *Kamakana*, 447 F.3d at 1179 (noting the good cause exception applies to a "*sealed discovery document* [attached] to a *non-dispositive* motion").

### 2.    Plaintiffs' Arguments Rest on an Incorrect Legal Standard.

Plaintiffs' opposition rests on a misstatement or misunderstanding of the applicable good cause standard and the type of showing required to meet that standard—their arguments are indistinguishable from arguments one would expect under the more demanding compelling reasons standard, which has no application here given the discovery materials at issue.

2

JOINT OMNIBUS MOTION TO SEAL                                        Case No. 3:23-md-03084-CRB (LJC)

First, Plaintiffs begin their argument by stating that there is a "strong presumption in favor of access," and, even under the good cause standard, the proponent must "overcome this presumption." In other words, the deck is stacked against sealing even when the standard is good cause, not compelling reasons. This is flatly incorrect. There is **no presumption** of public access outside the context where the compelling reasons standard applies.

The Ninth Circuit, in explaining the good cause exception to the presumption of public access, favorably cited the Supreme Court and First Circuit for the propositions that "discovery is largely 'conducted in private as a matter of modern practice,' so **the public is not presumed to have a right of access to it**" and "[t]here is **no tradition of public access to discovery**, and requiring a trial court to scrutinize carefully public claims of access would be incongruous with the goals of the discovery process." *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), and *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986) (emphases added)).[2] The Ninth Circuit likewise said that documents which "play only a negligible role in performance of Article III duties ... such as those passed between the parties in discovery," as opposed to documents in dispositive motions "that play a role in 'determining litigants' substantive rights,'" necessarily "lie '**beyond the presumption's reach**,'" *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049-50 (2d Cir. 1995)). That is because the good cause standard is an "exception" to the presumption. The Ninth Circuit has repeatedly instructed that when a "'sealed discovery document [is] [attached] to a non-dispositive motion,' … 'the usual presumption of the public's right of access is rebutted.'"—full stop. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (second alteration in original) (quoting *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)).

All a party must do to support a request to seal documents is satisfy the standard for a protective order under Rule 26(c), which broadly allows courts "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Ctr. for*

---

[2] The Ninth Circuit also distinguished between "the **presumptive** 'compelling reasons' standard or the 'good cause' exception" and referred to "when the **presumption** of public access applies" (treating that as synonymous with the compelling reasons standard), clearly describing the presumption of public access as something that applies when the compelling reasons standard applies and not when the good cause standard applies. *Ctr. for Auto Safety*, 809 F.3d at 1097, 1099.

3

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

*Auto Safety*, 809 F.3d at 1097. Unlike the higher "compelling reasons" standard (*see Kamakana,* 447 F.3d at 1179), Rule 26(c) expressly allows protection from disclosure even for the purpose of avoiding "embarrassment." "The law … gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information." *Phillips*, 307 F.3d at 1211 (emphasis in original) (vacating district court order for "fail[ing] to apply the correct legal standard" and remanding where it appeared the district court erroneously held that "*only* trade secrets or other confidential research, development, or commercial information could be protected from disclosure under Rule 26(c)"). "[P]rotective orders under Rule 26(c) represent an important 'counterbalance' to th[e] generous discovery policy" under Rule 26(b)(1). *Clark v. Gargalicana*, 2025 WL 1596695, at *1 (D. Or. May 29, 2025). Uber need only show "at least some risk of harm" from disclosure (ECF 1818 at 2), not compelling reasons or extensive details about impending harm that is certain to occur.

Discovery motion materials "are actually one step further removed in public concern from the trial process than the discovery materials themselves." *United States v. Selugh*, 896 F. 3d 1007, 1015 (9th Cir. 2018). The diminished public interest in disclosure is particularly true with respect to many of the documents at issue here. For example, Plaintiffs attached over 190 confidential Uber documents as exhibits in support of their brief in opposition to Uber's Motion for Protective Order—a nondispositive discovery matter—and cited each document only briefly or in passing. *See, generally Phillips*, 307 F.3d at 1213 ("[I]t makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive [] motion filed with the court.").

Plaintiffs' arguments also dramatically overstate the showing required to establish good cause. "Th[e] 'good cause' standard presents a lower burden for the party wishing to seal documents than the 'compelling reasons' standard [because t]he cognizable public interest in judicial records that underlies the 'compelling reasons' standard does not exist for documents produced between private litigants." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). In response to specific explanations of potential harm from disclosures, Plaintiffs repeatedly argue Uber is "speculating." In response to on-point case law supporting sealing, Plaintiffs repeatedly argue that such documents are

4

"not *per se* sealable."  In response to further explanations of harm, Plaintiffs stretch for arguments why the explanations are not specific enough about *the exact means by which* that type of harm will occur and that it is highly likely to occur.  That is not the good cause standard.  That is not what Uber is required to show.  That is not the "less exacting" standard articulated by the Ninth Circuit.  *Ctr. for Auto Safety*, 809 F.3d at 1097.

That the good cause standard is far less demanding is no surprise, "[d]ifferent interests are at stake with the right of access than with Rule 26(c) [good cause standard]; with the former [compelling reasons standard], the private interests of the litigants are not the only weights on the scale.  ***Unlike private materials unearthed during discovery***, judicial records" in dispositive motions and trial "are public documents almost by definition, and the public is entitled to access by default."  *Kamakana*, 447 F.3d at 1180.

The good cause standard affects not only the type of materials that may be sealed and justification required, but the level of particularity required by the party seeking sealing.  "Parties are required to show a compelling reason supported by ***specific facts*** to seal documents relating to dispositive motions, while parties ***need only make a particularized showing*** of good cause to seal documents relating to non-dispositive motions."  *Strike 3 Holdings, LLC v. Doe*, 791 F. Supp. 3d 1102, 1104 (N.D. Cal. 2025) (emphases added).  The Ninth Circuit cases articulating the "particularized showing" standard for good cause simply stated the truism that sealing is not justified solely by a document's protection by a stipulated, "blanket" protective order because no "particular" showing has yet been made for those documents,[3] not to set up a heightened standard akin to the required compelling reasons showing.  To be sure, a good cause showing must be sufficiently "particularized"

---

[3] *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("In the instant case, the parties stipulated to a blanket protective order. … International thus never made a particular showing of reliance with regard to the six deposition transcripts at issue here.");  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document.");  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Under the blanket protective order, however, the district court never required State Farm to show that specific discovery documents, whether eventually filed with the court or not, contained [protectable] information.").

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

and not overly broad and conclusory or lacking any kind of "articulated reasoning," but the standard is far less demanding than the compelling reasons standard, and must be applied accordingly. *See* ECF 1818 at 2 (noting that while "a meticulous description of all grounds for sealing every aspect of a document may be unreasonably burdensome," "blanket assertions of confidentiality" are insufficient).

Plaintiffs' criticisms of Uber for jointly articulating the specific bases for sealing similarly situated documents in specific argument sections of this brief misses the mark by elevating form over substance. Plaintiffs would apparently prefer that Uber multiply the length of this omnibus sealing motion (relating to hundreds of documents) many times over by repeating very similar or identical explanations of the risk of harm from disclosure of similarly situated documents. To do so would be a waste of party and judicial resources. Uber has satisfied the good cause standard by providing bases for sealing each document—Uber is not offering "blanket assertions of confidentiality" lacking any "articulated reasoning" or any particularity. The cases Plaintiffs cite for this proposition do not support the argument. What the court rejected in *In re PersonalWeb Techs., LLC et al. Patent Litigation* was the argument that "documents should be sealed simply because [a party] designated the documents as confidential under the Amended Protective Order in th[e] case." 2023 WL 3468296, at *2 (N.D. Cal. Apr. 13, 2023). And the issue in *Ochoa v. McDonald's Corp.* was the insufficient justification offered for sealing the particular documents at issue, not the way the party's arguments were structured. 2015 WL 3545921, at *2 (N.D. Cal. June 5, 2015).

**B.    Argument**

**1.    Uber's Approach to Sealing Is the Least Restrictive Alternative.**

Uber has narrowly tailored its requests to seal. Many of the requests are for narrowly tailored redactions; Uber seeks only to seal documents in full where appropriate in order to protect Uber from harm. *See Rodman*, 2015 WL 13673842, at *2 (granting motion to seal when company "has proposed to redact only the portions of the documents containing the confidential information"); *In re Qualcomm*, 2017 WL 5176922, at *2 (granting motion to seal when parties sought "to only redact the portions of the filings and the precise exhibits that implicate such confidential business information"). Moreover, to the extent information was already made public in connection with the first JCCP

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

bellwether trial, the *Dean* or *WHB 823* trials, or other proceedings, Uber is also not seeking to protect that information. Thus, Uber's approach is the least restrictive alternative and is narrowly tailored to protect Uber's competitive and other interests, as well as the legitimate privacy interests of Uber employees.[4]

### 2. The number, size, and lack of relevance of documents supports a finding of good cause.

Not only does the fact the documents at issue relate to discovery motions weigh in favor of a finding of good cause to seal, but so do several other factors.

When a court does "not rely on the [exhibits] during any of its analysis," the exhibits are "unrelated to the public's understanding of the judicial proceedings in th[e] case, and the public's interest in disclosure of these documents is minimal." *Bizarre Academia, LLC v. Wolf*, 2026 WL 603724, at *1 (N.D. Cal. Mar. 4, 2026); *see also*, *e.g.*, *ATS Prods., Inc v. Fiber Glass Sytems, L. P.*, 2026 WL 1746969, at *2 (N.D. Cal. June 17, 2026) (similar); *Chandler v. Frauenheim*, 2018 WL 4056018, at *49 (N.D. Cal. Aug. 23, 2018) (denying request to include 200 pages of transcripts in the record and ordering that only pages cited in the court's order be made part of the record). Many of the exhibits at issue here were not relied upon by the Court in ruling on the underlying discovery motions, but are only at issue here because, in many instances, Plaintiffs chose to include an unnecessarily excessive number of exhibits. Uber seeks to seal its documents, not because it is overreaching, but because Plaintiffs have freely and, at times, excessively attached confidential documents to motion after motion. Plaintiffs' arguments here that Defendants have not provided sufficiently "document-by-document" explanations about exactly how disclosure will harm Uber should be rejected when the number and volume of documents at issue is largely their own doing.

In many other instances, Plaintiffs elected to attach entire deposition transcripts—sometimes hundreds of pages in length—or other very lengthy documents in their entirety, rather than using only excerpts despite citing only limited portions. For example, Exhibit 113 to Plaintiffs' Opposition to

---

[4] In the event the Court were to deny any of Uber's requests to seal on the basis that they are not sufficiently narrowly tailored, Uber respectfully asks the Court for leave to file supplemental, narrowed requests consistent with the Court's guidance in its ruling.

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

Defendants' Motion for Protective Order (at issue in the sealing motion at ECF 2518) is a complete, 307-page transcript marked "CONFIDENTIAL - ATTORNEYS' EYES ONLY" from the deposition of former Uber CEO Ryan Graves in unrelated litigation filed against Uber by L.A. Taxi Cooperative, Inc.  Plaintiffs cited **only 3 of the 307 pages** in their brief.  *See* ECF 2519 at 18-19; ECF 2518.  In ruling on the motion, the Court did not rely on this exhibit.  *See* ECF 2600 at 6.  In *Pizana v. Sanmedica International, LLC*, the court ruled that a party's "attempt to incorporate the entirety of [deposition] transcripts into their opposition as exhibits, however, is improper" because it "made the Court's job of assessing the validity of [the other party's] request to seal substantially more difficult than necessary."  2023 WL 5533447, at *2 (E.D. Cal. Aug. 28, 2023).  Rather than unfairly require the party seeking sealing to provide and justify detailed redactions of the entire transcripts, the *Pizana* court struck the exhibits and ordered the first party to submit new exhibits consisting of "only those excerpts of the depositions to which they cite in their opposition."  *Id.*; *see also United States ex rel. Brown v. Celgene Corp.*, 2016 WL 6542729, at *9 (C.D. Cal. Mar. 14, 2016) (striking exhibit and ordering that party "shall not re-file the entire transcript of [a witness's] deposition transcript, but only the specific pages cited in its supplemental memorandum. The excerpts may not include any of the portions of [the witness's] testimony that Defendant has identified as confidential.").  The fact that many of the exhibits at issue here, or large portions of them, are superfluous weighs strongly in favor of sealing under the lower good cause standard.

### 3. Plaintiffs' assertion that supposedly "stale" documents cannot be protected is wrong.

Plaintiffs repeatedly characterize certain documents as "stale" and suggest that their age alone defeats a showing of good cause.  That is not the law.  The relevant inquiry under Rule 26(c) is whether disclosure would result in "annoyance, embarrassment, oppression, or undue burden or expense," or otherwise cause competitive harm—not whether a document was created several years ago.  *See* Fed. R. Civ. P. 26(c); *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978).

The age of a document may be one factor courts consider when evaluating the likelihood of competitive harm.  But courts routinely recognize that older confidential business materials remain protectable where they reveal strategic decision-making, proprietary methodologies, operational

8

practices, or other information that competitors can use to understand and anticipate a company's current or future conduct.  The passage of time alone does not place otherwise confidential information into the public domain.  Plaintiffs' argument assumes that the disclosure of confidential documents several years old is unlikely to cause harm, but this is mere speculation and contrary to the way most businesses, including Uber, actually treat such documents in practice—a much more reliable indicator.

Indeed, courts have expressly rejected the argument that confidential business information loses its protectable character merely because it is several years old.  In *Stanislaus Food Products Co. v. USS-POSCO Industries*, the court held that seven-year-old trade secret and other confidential business information was not "stale" because, "even to the extent it does not provide direct insight into current business strategies, the information can be extrapolated to predict future strategies and practices, and is still relevant today."  2012 WL 6160468, at *2 (E.D. Cal. Dec. 11, 2012).  Similarly, in *Concord Music Group, Inc. v. Anthropic PBC*, the court rejected staleness arguments, recognizing that the inquiry focuses on the potential competitive value of the information rather than its age.  2025 WL 1665754, at *2 (N.D. Cal. May 23, 2025).  And in *Laatz v. Zazzle, Inc.*, the court sealed confidential information relating to a 7-year-old business decision under the compelling reasons standard because disclosure could still harm the company's competitive standing.  2025 WL 405702, at *3 (N.D. Cal. Feb. 5, 2025); *see also Baker v. SeaWorld Ent., Inc.*, 2017 WL 5029612, at *5 (S.D. Cal. Nov. 3, 2017) (sealing under compelling reasons standard, notwithstanding argument that information was "stale," "internal business materials including … [party's] legislative strategies").

As these cases recognize, competitors can derive value not only from a company's current plans, but also from understanding the frameworks, methodologies, and decision-making processes that the company employs.  Those competitive interests do not necessarily disappear with time. Plaintiffs' argument that documents cannot be sealed if the document does not "reflect current practice" (relying on out-of-context language from one of this Court's orders, ECF 2308 at 2) is not a correct statement of law—the inquiry is whether there is a good cause showing that disclosure currently poses some risk of "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

JOINT OMNIBUS MOTION TO SEAL                                          Case No. 3:23-md-03084-CRB (LJC)

That is particularly true here.  Many of the challenged documents concern Uber's internal approaches to safety initiatives, risk assessment, regulatory affairs, product development, operational decision-making, and strategic planning.  Even where particular initiatives have evolved, disclosure would still reveal how Uber evaluates problems, allocates resources, develops services, interacts with stakeholders, and formulates business strategy.  Competitors could use those insights to benchmark their own decision-making, replicate aspects of Uber's processes, or infer how Uber is likely to approach similar issues in the future.  Rule 26(c) does not require Uber to demonstrate that every detail in a document remains unchanged today; it requires a showing of annoyance, embarrassment, oppression, undue burden or expense, or harm to competitive standing, which Uber has made.[5]

**4.    Plaintiffs' incorrect characterization of documents and trial testimony as "public disclosure" for all purposes is not the law and must be rejected.**

Plaintiffs argue that many of the documents Uber asks the Court to seal should not be sealed because the information in them has been publicly disclosed at the *Dean* trial or elsewhere.  Plaintiffs do not claim that these documents have been publicly disclosed (Uber has agreed to unseal all such documents) but argue, in substance, that a public disclosure about the same *general topic* renders *all documents* pertaining to the same topic unsealable.  Plaintiffs cite no authority that supports this new rule.  The disclosure about the existence and basic facts about an Uber product feature, initiative, or campaign does not mean that disclosure of confidential documents containing strategy, planning, financial information, and deliberation about the same subject matter poses no risk of "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  The testimony at the *Dean* trial, for example, consists of different and, typically, far more generalized information about topics such as Safety Vision, Driving Change, S-RAD, Women Rider Preferred, driver deactivation and investigation policies, and business and financial information, than the documents at issue here.

---

[5] Plaintiffs' citation to *MasterObjects, Inc. v. Amazon.com, Inc.* offers no support to their argument. 2022 WL 4074653 (N.D. Cal. Sept. 5, 2022).  There, the court concluded the party seeking sealing did not offer a sufficient justification for sealing "stale details" in two documents, with little explanation of how the party's support fell short.  *Id.* at *8-*9.  More importantly, it appears the court was applying the "compelling reasons" standard, not "good cause," rendering the opinion wholly inapposite here.  *See id.* at *1, *7-*8 ("Amazon has not provided any ***compelling justification*** for why this stale information should now be sealed." (emphasis added)).

JOINT OMNIBUS MOTION TO SEAL                                      Case No. 3:23-md-03084-CRB (LJC)

For example, Plaintiffs argue that ECF 2518, Exhibit 53, an email about Driving Change grants by Uber to non-profit organizations, cannot be sealed because "information about Driving Change, including specific amounts paid was disclosed during the *Dean* trial."  But Uber seeks to seal its confidential internal deliberation and strategy related to non-profit grants, not the information disclosed at trial—Uber seeks to seal in part with redactions that do not include the grant numbers. Similarly, the fact that some information about Uber's S-RAD technology has been disclosed does not mean that other confidential and proprietary information or trade secrets regarding S-RAD and its planning and development cannot be sealed.

**5.      Plaintiffs' Do not Oppose Redaction of Employee Personal Identifying Information ("PII"); Other Employee PII should also be protected.**

Uber seeks to seal references to its employees' non-public email addresses, phone numbers, internal job responsibilities (including non-public details of work completed on certain projects), dates of employment, and other personal identifying information, as well as a small amount of similar third-party PII.

There are numerous exhibits containing non-public email addresses and phone numbers of Uber employees, as well as a few third parties, which Uber seeks to redact.  Publicly disclosing these email addresses of Uber employees—who are not personally parties to this litigation—could result in these employees receiving spam, scam, or otherwise unsolicited email messages that present cybersecurity risks or distract from their job duties, causing annoyance, embarrassment, and/or undue burden or expense.  As a result, good cause exists to seal these email addresses.  The Court has allowed such redactions many times before and should do so again here.  *See* ECF 2308 at 3 (order by Judge Cisneros stating that "Uber may redact non-public email addresses and telephone numbers"; *see* ECF 2297 for Uber's statement); ECF 2545 at 7 (order by Judge Cisneros granting motion to consider sealing, as narrowed by Uber's statement in support of sealing, which included sealing of email addresses; *see* ECF 2475 at 4–5, 8 for Uber's statement); ECF 3915 (order by Judge Breyer granting motion to seal re: exhibits containing non-public employee email addresses; *see* ECF 3910 at 3, 5, 10 for Uber's motion); *cf.* ECF 5445 (order by Judge Breyer granting motion to seal re: exhibits containing independent driver email addresses and phone numbers under compelling reasons standard;

*see* ECF 4354 at 5–7 for Uber's motion).  Relatedly, Uber seeks the redaction of a few URL links that have no relevance to this litigation and the disclosure of which pose potential cybersecurity or privacy risks to Uber, its employees, or third parties.

Uber also seeks to seal several charts created for purposes of the parties' conferrals on the selection of custodians, as well as other documents with similar information.  Because these charts are not substantive evidence nor company documents, but were created for conferral purposes related to the negotiation over document custodians, they are multiple levels removed from the merits of this litigation.  Accordingly, there is virtually no public interest in the disclosure of these charts—leaving one end of the balancing inquiry entirely empty.  On the other side of the balancing inquiry, these charts contain employee personal information and non-public information about Uber's operations and internal structure.  They contain information such as non-public details about prospective custodians' data and legal holds, specific roles and responsibilities, specific communications about individual responsibilities and projects, supervising and reporting managers for the employees, job titles with specific start and end dates, and involvement in particular projects.  Disclosure of this information would harm Uber by disclosing non-public employee information that competitors could use to poach employees and to copy Uber's organizational structure and employment and promotion practices.  Plaintiffs' argument "that these employees publicly posted their names, job titles, and dates of employment online" misses the mark; the detailed information in these documents (pulling together information that reveals internal descriptions of roles and responsibilities and job reporting structures) far exceeds the limited information posted online in disparate places.  More to the point, the information in these exhibits, taken in the aggregate, discloses a blueprint of Uber's internal structure, organization, and operations, posing a risk of harm even if a small portion of the individual pieces of information therein (not readily segregable from the other information) may have been disclosed in other locations.  *See, e.g.*, *Bohannon v. Facebook, Inc.*, 2014 WL 5598222, at *3 (N.D. Cal. Nov. 3, 2014) (sealing documents in full because "the Court agrees with Defendant that these 24 documents include substantial amounts of confidential or proprietary information, such that attempts to redact the documents would leave very little public information unredacted.").  Disclosure of this information would also harm the Uber employees by disclosing non-public information about all Uber positions

12

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

and employment dates that would violate their legitimate privacy expectations and could be used by malicious actors for identity theft or other cyber security or privacy harms. *See Trainer v. Cnty. of Delaware*, 2024 WL 1998088, at *2 (E.D. Pa. May 6, 2024) (sealing under strict scrutiny standard a chart of employee information that included employees' "full name, and dates of employment"); *Equal Emp. Opportunity Comm'n v. Loflin Fabrication LLC*, 2020 WL 3845020, at *3 (M.D.N.C. July 8, 2020) (sealing categories of information in exhibit including employees' "dates of hire"); *Aevoe Corp. v. AE Tech. Co.*, 2013 WL 6210648, at *1–*2 (D. Nev. Nov. 27, 2013) (sealing party's "organizational chart, which shows the names of its officers and their reporting relationships"); *Clark v. Metro. Life Ins. Co.*, 2010 WL 1006823, at *1 (D. Nev. Mar. 16, 2010) (sealing information about business's "confidential internal business deliberations, organization, and capabilities").[6]

Plaintiffs' attempt to distinguish *Trainer* and *Loflin* because those courts *also* sealed *other* types of information in the documents is an irrelevant distinction; those courts still sealed "full name, and dates of employment" and "dates of hire." Plaintiffs make no attempt to distinguish *Aevoe*, despite arguing Uber's reliance on it is "misplaced." Plaintiffs argue that *Loflin* is notable because the court also denied sealing of other relevant information and, here, "the roles, responsibilities, and

---

[6] Plaintiffs rely heavily on two sealing decisions from *Apple Inc. v. Samsung Elecs. Co.* 2012 WL 4120541 (N.D. Cal. Sept. 18, 2012) ("*Apple I*"); 2013 WL 412864 (N.D. Cal. Feb. 1, 2013) ("*Apple II*"). But those denials were based on the lack of supporting justification by the parties and do not support Plaintiffs' arguments here. The *Apple* court did allow sealing of information such as internal code names for products, emails and diagrams discussing specific product development, an email discussing details about product development, survey responses regarding a product's features, an internal presentation discussing proprietary product designs and development, an email discussing details about product development, the number of product models produced, internal technical presentations, presentations of customer and designer evaluations, internal emails among employees about specific product development and user feedback, market analysis and product comparison reports, other consumer research, an internal report detailing response to a competitor's product, deposition testimony providing a detailed explanation of accounting practices, subsidiaries' non-public financial statements. These documents are similar to much of what Uber seeks to seal here. Even so, and with respect, these decisions were, at least in part, a misapplication of the lower "good cause" standard that the Ninth Circuit has repeatedly said is based on the lack of a public right to disclosure, in contrast to the more demanding "compelling reasons" standard. It is difficult to see how the *Apple* court's analyses—which began by bemoaning the "the parties' ever-multiplying sealing and redaction requests" that "continue to consume the resources of both the parties and the court"—would have been any more demanding had the court been applying the compelling reasons standard."

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

employment dates of proposed employees were central to the dispute the Court resolved about custodians." That is beside the point. What counts is the relevance of the documents to *the merits* of the litigation, not relevance to a dispute about which individuals will have their documents collected, so that relevant documents in their possession can then be produced, so that Plaintiffs can then draw on those documents and potentially use a subset of them as evidence so the court can then "determin[e the] litigant's substantive rights." *Ctr. for Auto Safety*, 809 F.3d at 1099-1101.

ECF 2424, the Graves, Hazelbaker, Kalanick, Kansal, Khosrowshahi, Maredia, and Whetstone Declarations, are declarations of current and former Uber executives and senior employees filed in support of Uber's Motion for Protective Order related to the depositions of these individuals. The declarations detail the roles and responsibilities of these individuals as well as other Uber employees. Judge Breyer previously allowed two of these declarations to be sealed in part "to the extent [to] which the documents identify the names of specific Uber employees and their job titles." ECF 2776 at 1; *see also* ECF 2805 and 2805-1 (redacted declarations of D. Khosrowshahi and J. Hazelbaker filed on the public docket pursuant to Judge Breyer's order). The Court should allow redactions of all these declarations consistent with Judge Breyer's order. Similarly, the Chang, Fuldner, and Kallman declarations in ECF 1541, submitted for briefing on custodial discovery, should be sealed in part consistent with Judge Breyer's order.

Disclosure of these documents would harm Uber by disclosing extensive non-public information about its internal operations and the respective roles and job responsibilities, communications, and actions of individual team members related to business strategy and policy. Disclosure would also harm the Uber employees referenced in these charts by disclosing non-public information about their Uber positions and employment dates and work history details that would violate their legitimate privacy expectations, would create a high probability of annoyance, embarrassment, and/or undue burden or expense, and could be used by malicious actors for identity theft or other cybersecurity or privacy harms. *See Trainer v. Cnty. of Delaware*, 2024 WL 1998088, at *2 (E.D. Pa. May 6, 2024) (sealing under strict scrutiny standard a chart of employee information that included employees' "full name, and dates of employment"); *Equal Emp. Opportunity Comm'n*

14

*v. Loflin Fabrication LLC*, 2020 WL 3845020, at *3 (M.D.N.C. July 8, 2020) (sealing categories of information in exhibit including employees' "dates of hire").

Courts routinely find good cause (or compelling reasons) to seal documents that contain personally identifiable information, especially where, as here, the information pertains to a non-party to the case and is not relevant to the disposition of a non-dispositive motion. *See, e.g.*, *Laatz v. Zazzle, Inc.*, 2024 WL 4493441, at *2 (N.D. Cal. Sept. 25, 2024) ("District courts within the Ninth Circuit have noted that protecting personal information satisfies the 'compelling reasons' standard and thus also satisfies the less exacting 'good cause' standard."); *Logistics Guys Inc. v. Cuevas*, 2024 WL 4839824, at *2 (E.D. Cal. Nov. 20, 2024) (sealing phone numbers of nonparties and defendant); *Wanek v. Russell Invs. Tr. Co.*, 2024 WL 3256534, at *4 (D. Nev. June 28, 2024) (sealing "identifying information, including phone numbers, addresses, and email addresses."); *Jones v. PGA Tour, Inc.*, 2023 WL 7434197, at *2 (N.D. Cal. Oct. 5, 2023) (sealing "email addresses and other personal identifying information"); *Snapkeys, Ltd. v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021) (collecting cases); *Stiner v. Brookdale Senior Living, Inc.*, 2022 WL 1180216, at *2 (N.D. Cal. Mar. 30, 2022) (sealing "personally-identifying information that has minimal relevance to the underlying causes of action"); *Regents of Univ. of Cal. v. LTI Flexible Prod., Inc.*, 2021 WL 4133869, at *11 (N.D. Cal. Sept. 10, 2021) (sealing employee identification numbers); *In re Pac. Fertility Ctr. Litig.*, 2021 WL 1082843, at *2 (N.D. Cal. Mar. 12, 2021) (sealing "employee email addresses"); *Am. Automobile Ass'n of N. Cal., Nev., & Utah v. General Motors, LLC*, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019); *Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023); *Gomo v. NetApp, Inc.*, 2019 WL 1170775, at *3 (N.D. Cal. Mar. 13, 2019) (sealing "personal information"); *Hadley v. Kellogg Sales Co.*, 2018 WL 7814785, at *3 (N.D. Cal. Sept. 5, 2018) (sealing "phone numbers, and addresses"); *Slot Speaker Techs., Inc. v. Apple, Inc.*, 2017 WL 386345, at *4 (N.D. Cal. Jan. 27, 2017) (sealing phone numbers and email addresses).

Additionally, "sealing is reasonable when … personally identifying information is not relevant to the underlying causes of action" because the "potential harm that may arise from public disclosure of such personally identifying information 'outweighs any concern over public access to the records.'" *Wanek*, 2024 WL 3256534, at *4 (citation omitted); *see also Richter v. Oracle Am., Inc.*, 2023 WL

15

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

5663217, at *1 (N.D. Cal. Aug. 30, 2023) (the "legitimate interest in ensuring the privacy of personal information outweighs the public's interest in access to court filings").  Here, none of the personally identifiable information Uber seeks to seal, such as employees' non-public phone numbers and email addresses, is relevant to the underlying causes of action.  Accordingly, the balance strongly weighs in favor of sealing this private information, under the prevailing good cause standard for discovery related materials.

**6.      Non-Public Information About Executive Compensation is Confidential and Should be Protected.**

Uber seeks to seal one document that features information regarding executive compensation. The document is an email chain between Uber's Executive Compensation Director and other Uber employees that describes a proposal to use a safety metric for executive compensation.  While the basic fact that Uber executive compensation is tied to meeting safety goals is public (*see* 2022 Uber Proxy Statement at 50), the information in this email is not.  The email includes non-public deliberation about which safety metric to use among several options, the means for measuring safety metrics, and logistic and data considerations and concerns for each proposal.  The content of ECF 2518, Exhibit 10, is classic business strategy that courts consistently seal.

Courts have routinely sealed private compensation information and information concerning internal business strategy and decision making.  *See, e.g.*, *Gomo*, 2019 WL 1170775, at *2 (sealing, under compelling reasons standard, "non-public, confidential information regarding Defendant NetApp's compensation plan and executives"); *Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2018 WL 3328224, at *2 (W.D. Wash. July 6, 2018) (compelling reasons to seal individual compensation amounts).

Disclosure of Uber's unique compensation packages, including the metrics behind measuring such compensation and other potential metrics that were not selected to use (at that point), could cause Uber competitive harm by allowing competitors to use such information in their own business without investing the time and resources that Uber did, and also to learn from Uber's discussion of data metrics and analysis.  Such information could also be used to recruit Uber personnel or otherwise compete with Uber for talent. *See Hadley*, 2018 WL 7814785, at *2 ("The Court agrees that compelling reasons exist to seal information that may cause Kellogg competitive harm if disclosed, such as information

JOINT OMNIBUS MOTION TO SEAL                                     Case No. 3:23-md-03084-CRB (LJC)

about Kellogg's business strategies and internal decisionmaking, … and confidential finances."); ECF 4992-25 ¶ 14 (Jan 13, 2026 Decl. of G. Brown). Therefore, these exhibits should be maintained under seal.

### 7.    Uber's Financial Information and Strategic Resource Allocation and Prioritization.

Several exhibits should be sealed because they reveal Uber's financial information and internal analysis on its strategic resource allocation and prioritization. Exhibits in this category include confidential emails, slide presentations, and documents that reflect Uber's budgets, cost estimates, and investment priorities.

ECF 2518, Exhibits 46 through 51, are email chains revealing Uber's internal assessments of background check costs and strategy.  ECF 2518, Exhibit 41, is an email chain containing deliberations about data, goals, metrics, and financial information related to Uber's Stand for Safety initiative.  ECF 2518, Exhibit 33, is an email chain about internal operations and structure related to safety and insurance initiatives.  ECF 2518, Exhibit 88, is a presentation related to rider safety sentiment, Uber's safety initiatives, and budget information related to these topics.  ECF 2518, Exhibit 103, is a lengthy presentation detailing Uber's Rides operations in the U.S. and Canada, and includes information like organizational charts, strategies and plans, and goals for growth, profitability, and budgets.  The information in this presentation and other exhibits in this category is distinct and more detailed than the information disclosed in testimony at the *Dean* trial.

Public disclosure of this type of information would negatively impact Uber's standing in the marketplace and its ability to competitively negotiate with vendors and other third-parties.  It would also allow competitors insights into Uber's strategies and finances that they could use to compete against Uber, causing competitive harm to Uber. Courts routinely recognize the sensitivity of non-public financial information and allow sealing under the "good cause" standard.  *See Pac. Steel Grp. v. CMC Fabricators, Inc.*, 2026 WL 1146093, at *2-*3 (S.D. Cal. Apr. 28, 2026) (sealing "non-public financial information" under good cause standard); *E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "financial investment and budget" information under compelling reasons standard); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business

17

information, including non-public information about a company's business strategy, business transactions, corporate structure, and finances"); *Blockchain Innovation, LLC v. Franklin Resources, Inc.*, 2024 WL 4394758, at *3 (N.D. Cal. Oct. 3, 2024) (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones v. PGA Tour, Inc.*, 2023 WL 7440303, at *2 (N.D. Cal. Nov. 8, 2023) (sealing document containing confidential information on, among other things, "strategic launch plans; financials; internal decision-making processes"); *Lyft, Inc. v. AGIS Software Dev. LLC*, 2022 WL 1505879, at *2 (N.D. Cal. Apr. 7, 2022) ("The Court finds that AGIS Software has shown good cause to file the documents and portions of documents at issue under seal given the sensitive financial and business information they contain."); *Contour Ip Holding, LLC v. GoPro, Inc.*, 2021 WL 75666, at *15 (N.D. Cal. Jan. 8, 2021) (sealing "company financial information" under compelling reasons standard); *Aerodynamics Inc. v. Caesars Ent. Operating Co.*, 2015 WL 5679843, at *14 (D. Nev. Sept. 24, 2015) (sealing budget analysis and financial model under compelling reasons standard); *G&C Auto Body Inc v. Geico Gen. Ins. Co.*, 2008 WL 687372, at *3 (N.D. Cal. Mar. 11, 2008) (granting motion to seal financial information under good cause standard); ECF 4470-36 ¶ 11 (Nov. 21, 2025 Decl. of G. Brown); ECF 4992-25 ¶¶ 11-13 (Jan. 13, 2026 Decl. of G. Brown).

## 8.    Safety Feature Performance and Experimentation.

Uber seeks to seal confidential internal emails, memos, presentations, and deposition transcripts that describe the safety features on Uber's app, analyze the performance and operational considerations related to these features, or disclose information about new features under development, including how they are designed and evaluated before launch. Uber does not seek to seal facts about features that have been publicly disclosed at prior trials or otherwise, but rather seeks to seal non-public business and technical information, strategy, and deliberation.

The scope of information contained in the documents ranges from safety and security at a corporate level to the minutiae of the functionality and performance of specific safety features. Internal documents describing the performance of Uber's safety features and the new features in development should not be released to the public. Indeed, publicly disclosing this information would provide Uber's competitors with the benefits of the insights of Uber's proprietary research,

18

assessments, product testing, and experiments without investing the same resources or efforts. Uber's competitors could use this information to develop strategies and programs to counter, preempt, or differentiate themselves from Uber's initiatives and features. *See CertainTeed Gypsum, Inc.*, 2021 WL 6621061, at *2 (granting motion to seal "company's internal report about the efficacy of the company's products"); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *4 (N.D. Cal. Mar. 14, 2012) (granting motion to seal information concerning party's "product testing, development, and evaluation processes"); *Bold Ltd.*, 2024 WL 1329921, at *2 (finding "[c]ompelling reasons exist to seal confidential business information, including non-public information about a company's business strategy, business transactions, corporate structure, and finances"); *Blockchain Innovation, LLC v. Franklin Resources, Inc.*, 2024 WL 4394758, at *3 (N.D. Cal. Oct. 3, 2024) (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones*, 2023 WL 7440303, at *2 (sealing document containing confidential information on, among other things, "strategic launch plans; financials; internal decision-making processes"); *Lyft, Inc. v. AGIS Software Dev. LLC*, 2022 WL 1505879, at *2 (N.D. Cal. Apr. 7, 2022) ("The Court finds that AGIS Software has shown good cause to file the documents and portions of documents at issue under seal given the sensitive financial and business information they contain."). Moreover, Uber would be harmed by the public disclosure of such documents because the public could misinterpret the safety data and information and reach an inappropriate conclusion regarding the relative safety of Uber in the marketplace.

Groups of documents related to the performance and evaluation of specific safety features are further discussed below.

### a.    S-RAD.

Uber seeks to seal limited information concerning the technical details and development of its safety feature referred to as S-RAD (*i.e.*, Safety Risk Assessed Dispatch). While some general information about S-RAD has been publicly disclosed, Uber does not seek to seal this general information or the existence of the feature, but is entitled to seal confidential non-public information about S-RAD. This subcategory of safety feature documents includes ECF 2518, Exhibits 61, 62, 82, 86, and 89. Exhibit 61 is an internal email that discusses the business strategy for rolling out S-RAD

19

to U.S. cities. Exhibit 62 is a 182-page compilation of presentations related to the research and development of S-RAD that discloses feature design details, pilot study protocols and experimental results, and development timelines.  Exhibit 82 is a draft "Tech Strategy" planning and policy document on "Safety Perception and Incident Reduction," which details current technological development projects categorized by priority tiers and lists Uber's business goals and priorities, situating the development and rollout of S-RAD within the context of Uber's strategic plans.  Exhibit 86 is a presentation for a strategy session on Uber's Stand for Safety campaign that includes a confidential chart detailing Uber's key business themes/goals and how they intersect with the Stand for Safety priorities, and where the development of S-RAD fits into that strategic planning.  And Exhibit 89 is an internal presentation that discloses, *inter alia*, technical details regarding and analysis of experimental results from pilot studies.  Again, this information would provide Uber's competitors with the benefits of the insights of Uber's proprietary research, assessments, product testing, and experiments without investing the same resources or efforts. Uber's competitors could use this information to develop strategies and programs to counter, preempt, or differentiate themselves from Uber's initiatives and features.  *See* ECF 4470-34 ¶¶ 3-11 (Nov. 21, 2025 Decl. of S. Wong); ECF 4470-34 ¶¶ 3-21 (Dec. 23, 2025 Decl. of S. Wong); ECF 2712-1 ¶¶ 3-4 (Apr. 4, 2025 Decl. of D. Kolta).

### b.      Women Rider Preferred.

Uber seeks to seal limited information concerning the technical details and development of its women rider preferred features.  *See* ECF 4992-25 ¶ 21 (Jan. 13, 2026 Decl. of G. Brown).  This subcategory of safety feature documents includes ECF 2518, Exhibits 79, 80, 81, 84, and 92, as well as one redaction in Defendants' Reply in Support of Motion for Protective Order.  Exhibits 79, 80 and 92 are all internal emails that describe design considerations related to the development of this safety feature. Exhibit 81 is an email with extensive strategic and operational considerations for the development and launch of the feature and eventual communication strategy about it.  Exhibit 84 is an email with analysis and deliberation in light of safety sentiment survey data about ride share services, which includes a discussion of the feature.  The reply brief contains a single redaction of a quote from a confidential document about Uber's internal deliberative process on the Women Rider Preferred

20

feature. This information would provide Uber's competitors with the benefits of the insights of Uber's proprietary research, assessments, product testing, and experiments without investing the same resources or efforts. Uber's competitors could use this information to develop strategies and programs to counter, preempt, or differentiate themselves from Uber's initiatives and features. These documents are distinct from the general information about the feature publicly disclosed at the *Dean* trial and elsewhere.

### c.    Dashcams and Uber's audio recording technology.

Uber seeks to seal limited information concerning its internal business strategies, deliberations, and proprietary technical information regarding the use of dashcams and audio recording, including detailed and technical discussions of Uber's internal experimentation of those features. ECF 4926-11 ¶ 11 (Jan. 6, 2026 Decl. of G. Brown) (discussing ECF 4688-6). Information concerning this technology and experimentation is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public. While the fact that Uber allows drivers to register and use dashcams, and drivers and riders to record audio, has been disclosed (*see* Uber.com, Using Dashcam, Audio Recording), Uber does not seek to seal this general information, only Uber's proprietary and confidential information around the adoption, policies, practices, and technology related to dash cams.

For example, ECF 2518, Exhibits 5, 12, 68, 71, 73, 75, 76, and 91 are email chains containing internal deliberations about various technical and policy issues concerning the use of dashcams and audio recording and access to footage and audio, such as "API integration" and privacy considerations. ECF 2518, Exhibit 77, is an email chain discussing the operational aspects of dashcam adoption, including potential third-party business relationships. ECF 2518, Exhibit 6, is a chat between Uber employees about the strategic and consumer experience considerations regarding audio recording. ECF 2518, Exhibit 13, is an excerpt from the deposition of Roger Kaiser in which he testifies about the internal deliberation and decision-making process regarding the adoption and policies for dash cams and audio recording. ECF 2518, Exhibit 14, is the entire transcript of Andi Pimentel's deposition, which includes extensive testimony about confidential internal documents and Uber's deliberations on whether to require the use of dash cams (*see, e.g.*, pp. 90-94). ECF 2518, Exhibits 16

21

and 98, are documents created by Plaintiffs for the purpose of litigation summarizing certain evidence about Uber CEO Dara Khosrowshahi and Chief Product Officer Sachin Kansal, including their role in setting company policy on dash cams and the product impact of dash cam usage. ECF 2518, Exhibit 65, is an internal presentation about planning and strategy for Safe Mode, and includes confidential usage data about audio recording and product design information about this feature. ECF 2518, Exhibit 67, is a confidential strategy and planning document about dash cam pilot programs. ECF 2564, reply brief, contains redactions of quotes from confidential documents about Uber's adoption of dash cams and individual employees' roles with respect to dash cams. ECF 2518, Exhibit 70, is a document titled Safety & Insurance Product Design Review Notes with extensive proprietary information on product design. ECF 2518, Exhibits 74 and 83, consist of an email chain discussion about the potential for audio recording and dash cams to affect consumer experience. ECF 2518, Exhibit 89, is a 62-page presentation on Safety Rides & Platform Check-Ins with descriptions and timelines of goals and pilot testing of dash cams. ECF 2518, Exhibit 90, is a document with an outline of an internal discussion on planning and strategy for safety incidents, and includes a discussion about scaling the use of dash cams and audio recording following pilot testing. The Court should seal this information under the applicable good cause standard. *See Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *Kowalsky*, 2012 WL 892427, at *4; *Mobileum Inc.*, 2023 WL 8481802, at *2; *Calhoun*, 2022 WL 1122843, at *2.

### d.    RideCheck/RideSense.

Uber seeks to seal certain information concerning the functioning of its RideCheck technology, as well as features that it may add to that technology, including a feature it is currently piloting. ECF 4848-3 ¶ 19 (Dec. 23, 2025 S. Wong Decl.). Uber's RideCheck is an in-app safety feature that monitors GPS and smartphone sensor data to detect irregular trip events, such as a possible car crash or an unusually long and unexpected stop. Information concerning the function of RideCheck and concerning Uber's consideration and analysis of a new feature is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public. *Nautilus Biotechnology, Inc. v. SomaLogic, Inc.*, 2024 WL 4894852, at *2 (N.D. Cal. Nov. 26, 2024) (finding compelling

22

reasons to seal "information that would reveal [party's] unreleased platform information"); *Exeltis USA Inc.*, 2020 WL 2838812, at *2 (granting motion to seal when "public release of these documents could give non-party competitors an unfair advantage in the development or marketing of rival products"); *Laatz v. Zazzle, Inc.*, 2025 WL 405702, at *3 (N.D. Cal. Feb. 5, 2025) (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *Mobileum Inc.*, 2023 WL 8481802, at *2 (sealing portions of document addressing "operation of [plaintiff's] proprietary software platform" because the public information "could be used by competitors to undercut the litigant"); *Calhoun v. Google LLC*, 2022 WL 1122843, at *2 (N.D. Cal. Apr. 14, 2022) (sealing is appropriate where public disclosure would provide competitors insight into a party's "internal systems and operations, including details related to internal projects and their proprietary functionalities."); *Skillz Platform Inc. v. AviaGames Inc.*, 2023 WL 6135556, at *2 (N.D. Cal. Sept. 18, 2023) (sealing confidential information such as "internal business plans and propriet[ar]y information about a [party's] products"). ECF 2518, Exhibit 65, is an internal presentation about planning and strategy for Safe Mode, and includes confidential usage and customer feedback data about RideCheck and product design information about this feature. ECF 2518, Exhibit 70, is a document titled Safety & Insurance Product Design Review Notes with extensive proprietary information on product design, including references to RideCheck in the context of other potential features. ECF 2518, Exhibit 64, is an internal presentation about Uber's planned and existing suite of features, how they fit within Uber's strategic safety framework, and deliberation regarding communicating new features to the public. ECF 1135, Exhibit 17 is a confidential document answering questions from a state regulator and includes information about Uber's notifications from, and access to, RideCheck and the Driver Safety Toolkit. ECF 2518, Exhibit 82 is a draft "Tech Strategy" planning and policy document on "Safety Perception and Incident Reduction," which details current technological development projects categorized by priority tiers and lists Uber's business goals and priorities, situating the prioritization and future plans for Ride Check within the context of Uber's strategic plans. Judge Breyer previously granted Uber's motion to seal certain confidential information concerning its RideCheck technology in connection with the WHB 823 summary judgment briefing (*see* ECF 6012), and the Court should likewise do the same here.

23

**9.     Risk Assessments.**

The redacted materials contain confidential information about Uber's internal risk assessment approaches, including the factors and data inputs to a particular risk assessment model and methodology. *See* ECF 4470-36 ¶ 13 (Nov. 21, 2025 Decl. of G. Brown) (discussing the reasons for sealing this type of information in the Chandler Rep. ¶ 161). For example, ECF 2518, Exhibit 122 is a presentation on Safety Intelligence that includes specific short- and long-term goals related to safety intelligence and metrics. ECF 2518, Exhibit 190, is an email analyzing Uber's internal processes with respect to risks and potential gaps. ECF 2518, Exhibit 102, is an email discussion analyzing risks with respect to the implementation of Uber's JIRA system. ECF 2518, Exhibit 182, is a presentation for planning and evaluation of Uber's crisis management process. Public disclosure of the information would cause competitive harm to Uber by providing its competitors with confidential information regarding Uber's internal approaches to risk assessment, which competitors could utilize and implement to their own competitive advantage. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, 2024 WL 665647, at *8 (N.D. Cal. Feb. 16, 2024) (granting motion to seal documents under good cause standard "because they reflect legal, business, accounting, and regulatory analyses"); *Blockchain Innovation*, LLC, 2024 WL 4394758, at *3 (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones*, 2023 WL 7440303, at *2 (sealing document containing "internal decision-making processes"). Additionally, disclosure would cause competitive harm to Uber by providing its competitors with confidential information regarding the data points and specific factors that Uber uses to create new metrics, which Uber's competitors could leverage against Uber to its competitive disadvantage. *See In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy").

**10.     Data Collection, Organization, and Classification.**

The materials also contain information about how Uber's raw data is stored, labeled, organized, and classified, and the fields of information that are maintained by Uber. This is sensitive and confidential information that would be valuable to Uber's competitors to copy in their own data collection, organization, and analysis. For example, in Katherine McDonald's Deposition Excerpts

24

(ECF 3993, Exhibit X), she details confidential and proprietary information about the design and functionality of Uber's Zendesk, Bliss, and JIRA systems and the confidential and proprietary fields used in the systems to categorize safety messages and incidents to triage. Disclosure of the functioning of Uber's data collection and general taxonomy would be highly valuable to Uber's competitors. ECF 2518, Exhibit 11, is an email between Gus Fuldner and Uber CEO Dara Khosrowshahi that outlines Uber's data tracking capabilities and metrics. ECF 2518, Exhibit 22, discusses models and metrics for quantifying safety outcomes. ECF 2518, Exhibit 60, is an internal document marked "CONFIDENTIAL" that details a plan for developing and testing a statistical machine-learning model to predict and limit various types of safety incidents, and includes extensive proprietary technical information. ECF 2518, Exhibit 86, is a presentation for a strategy session on Uber's Stand for Safety campaign that includes a confidential chart detailing Uber's key business themes/goals and how they intersect with the Stand for Safety priorities, relying on internal Uber data. ECF 2518, Exhibit 89, is a 62-page presentation on Safety Rides & Platform Check-Ins with descriptions of Uber's processes for categorizing and auditing data. ECF 2518, Exhibit 97, is an internal email that contains Uber's internal analysis of global safety incident data and discloses non-public information about Uber's methods for categorizing and analyzing the data. ECF 2518, Exhibit 122 is a lengthy presentation that details Uber's goals and methodology for Safety Intelligence, including its goals for improving safety metrics. *See* ECF 5586-2 ¶¶ 7-9 (Mar. 20, 2026 Decl. of G. Brown) (discussing confidential chart of Mobile Events Log fields); ECF 4992-25 ¶ 19 (Jan. 13, 2026 Decl. of G. Brown) (this is "sensitive and confidential information that would be valuable to Uber's competitors to copy in their own data collection and classification"); *Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal information about "the layout, organization, and content of [party's] 'internal computer system'" pursuant to compelling reasons standard).

Judge Breyer granted Uber's request to seal a similar chart of Mobile Event Log fields, as discussed in the March 20, 2026 Brown Declaration. *See* ECF 6046 (sealing chart); *see also* ECF 5586 (requesting that chart of Mobile Event Logs be sealed). Accordingly, the Court should likewise seal the information here.

**11.    Data Regarding Reports of Sexual Assault and other Sexual Misconduct.**

Uber has publicly disclosed a significant amount of safety data in its U.S. Safety Reports, which Uber does not now seek to seal.  For example, Uber does not seek to seal publicly available data on sexual assault or sexual misconduct on rides matched on the Uber platform.  Uber is entitled, however, to seal its confidential internal deliberations, strategies, research, and technical know-how related to safety data.

ECF 1135, Exhibit 15 is a presentation on Uber's internal policies, procedures, and product features related to safety, and features information about Uber's procedures for collecting and reviewing safety data.  ECF 2518, Exhibit 137 is an internal Uber chat about the numbers of certain categories of safety incidents in a specific time period.  ECF 2518, Exhibits 142, 144, 145, are emails and documents containing strategy and planning for the development of Uber's U.S. Safety Report.  ECF 1135, Exhibit 20, is an email that discusses the intersection of Uber's safety incident goals and the U.S. Safety Report and executive team consideration of the same.  Disclosure of this information would cause competitive harm to Uber by allowing competitors insights into Uber's data operations for which it has expended significant time and resources.  *See Laatz*, 2025 WL 405702, at *3; *Mobileum Inc.*, 2023 WL 8481802, at *2; *Calhoun*, 2022 WL 1122843, at *2; ECF 4470-36 ¶ 19 (Nov. 21, 2025 Decl. of G. Brown); ECF 4848-4 ¶¶ 11-12 (Dec. 30, 2025 Decl. of G. Brown); ECF 4992-25 ¶ 18 (Jan. 13, 2026 Decl. of G. Brown).

**12.    Research and Analyses Concerning Internal Uber Data.**

Uber's internal data and its analyses of that data are core to its business operations and strategies. ECF 4848-4 ¶ 11 (Dec. 29, 2025 Decl. of G. Brown); ECF 4992-25 ¶ 15 (Jan. 13, 2026 Decl. of G. Brown). For example, ECF 2518, Exhibit 188, is an email chain in which Uber executives and employees discuss in detail plans, proposals, and ideas about internal structure, data and business analytics, and data quality.  ECF 1135, Exhibit 19, is an internal analysis of data on the reasons why potential drivers fail the background check process.  ECF 1135, Exhibit 41, is an internal email discussion containing a detailed analysis of Uber's data relating to driver activations.  Uber, like other companies, closely guards these data, analyses, and strategies, which would be valuable to Uber's competitors, who could gain insight into those data and copy those analyses and apply them to their

26

own data. *See Bos. Ret. Sys.*, 2024 WL 665647, at *8 (granting motion to seal documents under good cause standard "because they reflect legal, business, accounting, and regulatory analyses"); *DeMartini v. Microsoft Corp.*, 2023 WL 4205770, at *4 (N.D. Cal. June 26, 2023) (finding compelling reasons to seal "confidential and internal data, including platform user and franchise data, and economic and commercial analysis that are not publicly accessible outside the company"); *Daybreak Game Co., LLC v. Takahashi*, 2025 WL 3552744, at *3 (S.D. Cal. Dec. 11, 2025) (compelling reasons to seal user engagement metrics, which are the sort of "confidential business information that companies guard closely"); *Craig v. Am. Tuna, Inc.*, 2023 WL 8242460, at *3 (S.D. Cal. Nov. 28, 2023) (finding compelling reasons to seal "aggregated data and analysis that could be used 'as sources of business information that might harm [Defendant's] competitive standing'") (citation omitted); *Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research"). Further, the competitors could copy Uber's strategies derived from the data. *See In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy"); *Bold Ltd.*, 2024 WL 1329921, at *2 (finding "[c]ompelling reasons exist to seal confidential business information, including non-public information about a company's business strategy"). Accordingly, Uber seeks to seal information concerning its internal data analyses.

### 13.    Driver Screening and Retention.

The materials contain confidential internal details about Uber's driver screening and retention policies, including materials discussing the impact of screening procedures on risk assessment and compliance, the economic impact on Uber of conducting various levels of background checks, internal strategies for retaining drivers, and internal evaluations and audits of Uber's screening procedures. Driver screening and retention is of incredible economic importance to rideshare companies as well as other "on-demand" or "gig economy" platforms. For example, ECF 2518, Exhibit 23, is an email chain outlining a detailed plan for changes to Uber's P2P driver signup page, including competitive information and technical specifications. ECF 2518, Exhibit 49, is an email chain in which Uber employees discuss the details of Uber's initial and ongoing driver screening procedures, including costs, effectiveness, and competitive positioning. ECF 1135, Exhibit 22, is an email chain that

27

provides detailed description of certain challenges relating to the processing of background check data and the steps that the company was considering and undertaking to audit and improve its processes. ECF 1135, Exhibits 23 and 24, are email chains reflecting internal consideration of a new tool to supplement Uber's background check procedures. ECF 1135, Exhibit 37, is an email chain discussing Uber's internal research and briefing on background check policies that Uber developed to engage with legislators and policymakers. ECF 2518, Exhibit 29, is an email chain reflecting internal deliberation necessary to respond to public reports related to Uber's driver screening procedures.

Disclosure of this information would result in competitive harm to Uber by providing its competitors with confidential information that Uber's competitors could leverage against Uber to its competitive disadvantage. Information concerning how Uber is obtaining and retaining drivers is of great interest to Uber's competitors in screening and retaining their own work force and could be leveraged against Uber to its competitive disadvantage. ECF 4470-36 ¶¶ 3, 6, 9, 14-15 (Nov. 21, 2025 Decl. of G. Brown) (discussing how, if released, driver screening and retention information would cause Uber a competitive disadvantage); ECF 4676-2 ¶ 11 (Dec. 15, 2025 Decl. of G. Brown).

Courts in this Circuit regularly seal similar information, even under the more stringent compelling reasons standard. *See Lawson*, 2017 WL 2951608, at *10 (sealing information that "discuss[es] how drivers receive orders and how Grubhub manages drivers"); *Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *Blockchain Innovation, LLC*, 2024 WL 4394758, at *3 (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones*, 2023 WL 7440303, at *2 (sealing document containing "internal decision-making processes"). Accordingly, the Court here should seal materials that relate to driver screening and retention.

### 14.    Deactivation and Investigation Processes.

The documents in this category include confidential details concerning Uber's deactivation and investigation procedures following its receipt of various incident reports, including screenshots of Uber's "Investigations Workbench," descriptions of other tools used in investigation and deactivation, and discussion and evaluation of Uber's deactivation decisions. *See* ECF 4470-36 ¶ 16 (Nov. 21, 2025

Decl. of G. Brown); ECF 4926-11 ¶ 12 (Jan. 6, 2026 Decl. of G. Brown); ECF 4992-25 ¶ 16 (Jan. 13, 2026 Decl. of G. Brown).  For example, ECF 2518, Exhibit 153, is an email chain in which Uber employees discuss the development of driver and rider deactivation policies.  ECF 2518, Exhibit 167 is an email containing a JIRA incident report file that recommended deactivation of a driver's account.  This document contains personally identifiable information and discloses Uber's internal procedures for analyzing, recommending, and approving driver deactivations.  ECF 2518, Exhibit 8, is a document containing detailed notes from a "Deactivation Data Analytics Leadership Meeting," and includes extensive information about business and product strategy and planning.  ECF 2518, Exhibit 34, is an email discussion evaluating Uber's policies regarding which criminal convictions and the age of the conviction should disqualify individuals from driving on the Uber platform.

Unsealing these documents would result in competitive harm to Uber because Uber's main competitors could replicate Uber's investigative and deactivation processes, which Uber has invested significant human and financial capital to develop and operationalize.  *Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc.*, 2016 WL 7911651, at *4 (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products"); *Calhoun*, 2022 WL 1122843, at *2 (sealing is appropriate where public disclosure would provide competitors insight into a party's "internal systems and operations, including  details related to internal projects and their proprietary functionalities."); *Blockchain Innovation, LLC*, 2024 WL 4394758, at *3 (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones*, 2023 WL 7440303, at *2 (N.D. Cal. Nov. 8, 2023) (sealing document containing confidential information on, among other things, "strategic launch plans; financials; internal decision-making processes"); *Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal "'detailed, non-public information' regarding [party's] 'internal data systems, processes, and

29

practices,' . . . consisting primarily of the layout, organization, and content of [party's] 'internal computer system'" (citation omitted)); *id.* (compelling reasons existed to seal exhibit where public dissemination "'may allow Defendants' competitors to reap the benefit of the [content] without having to incur the costs associated with developing the[m]'" (citing *Esquivel v. Bank of Am., N.A.*, 2015 WL 4224712, at *4 (E.D. Cal. July 10, 2015))). Moreover, revealing Uber's investigative and deactivation processes to the public could allow third-party users of the Uber app to undermine and exploit Uber's methodologies for investigating and deactivating riders and drivers, including through fraudulent activity, compromising safety to the detriment of users and drivers. *Ashcraft*, 2019 WL 12518367, at *2 (sealing information that "identity thieves could use [ ] to develop methods to circumvent Experian's protections"); *T1 Payments LLC*, 2022 WL 1472665, at *8 (in the context of a motion to retain a confidentiality designation, finding particularized harm was established where the defendant's "ability to monitor its distributors would be harmed if the distributors learned the monitoring procedures" utilized by the defendant).

The Court has previously granted Uber's motions to seal similar information concerning its investigation and deactivation policies. *See*, *e.g.*, ECF 6171 (granting Uber's motion to seal at ECF 5826); ECF 6075 (granting Uber's motion to seal at ECF 5639). The Court should similarly grant Uber's request to seal such information here.

**15.    Uber's Relationships with Non-Profit Organizations.**

Uber seeks to seal certain information that divulges its strategies involving and relationships with non-profit organizations. For example, ECF 1135, Exhibit 35 is a policy document that reveals specific strategy concerning the reasons for awarding such grants to specific organizations. ECF 2518, Exhibits 40 and 53, and ECF 1135, Exhibit 13 are email chains that similarly describe Uber's strategy regarding its relationships with non-profit organizations and communication strategy about the same. Publicizing this information would provide Uber's competitors with valuable confidential information about Uber's confidential strategies in this area, which the competitors could potentially leverage in competing with Uber and use in their own relationships with non-profits. *See* ECF 4470-36 ¶ 18 (Nov. 21, 2025 Decl. of G. Brown); ECF 4676-2 ¶ 13 (Dec. 15, 2025 Decl. of G. Brown); ECF 4926-11 ¶

JOINT OMNIBUS MOTION TO SEAL                                 Case No. 3:23-md-03084-CRB (LJC)

13 (Jan. 6, 2026 Decl. of G. Brown).  Uber does not seek to seal documents related to its relationships with non-profit organizations that have been publicly disclosed as trial exhibits.

Significantly, the Court previously granted Uber's motion to seal similar information, finding that the redactions "generally relate to specific internal documents, internal discussions of specific initiatives with specific partners," constituting "corporate strategy … that might cause Uber competitive harm or impair its relationships with nonprofit partners." ECF 4701 at 21.  These same considerations support sealing Uber's requested redactions here.  *See*, *e.g.*, *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2015 WL 12976921, at *3 (N.D. Cal. Mar. 31, 2015) (granting motion to seal, under compelling reasons standard, "information about [party's] consulting relationships and other confidential agreements"); *Blockchain Innovation, LLC*, 2024 WL 4394758, at *3 (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones*, 2023 WL 7440303, at *2 (sealing document containing "internal decision-making processes"); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy, business transactions, corporate structure, and finances.").

### 16.     Lobbying and regulatory strategy.

Uber seeks to seal limited documents that concern Uber's confidential non-public lobbying and/or regulatory strategy.  For example, as Erin O'Keefe, Uber's Senior Manager, Corporate Business Operations, explains in her declaration, ECF 2518, Exhibit 165, is a May 2020 confidential email chain in which Uber employees discuss strategy concerning potential legislation in several states concerning driver status.  *Id.* ¶ 8.  The email conveys sensitive negotiation strategy, assessment of risks, economic analysis, and the effect of potential legislation on insurance reserves.  Disclosure of this confidential document would hand counterparties in this legislative effort and Uber's competitors specific information about Uber's negotiating strategy and economic modeling.  Moreover, disclosure of this document could be used to unfairly harm Uber's reputation today.  Although this document is from 2020, driver status remains an active, ongoing issue.  *Id.*

Similarly, ECF 1135, Exhibits 31, 32, 33, 34, 37, and 38 are email chains in which Uber employees candidly discuss confidential, internal strategy with regard to potential state and local

31

legislative proposals regarding driver screening requirements and regulation of rideshare networks. Erin O'Keefe Decl. ¶ 7. ECF 2518, Exhibit 129, is an email discussion related to proposed regulation of ride share services and Uber's strategies on lobbying and communication about the proposal; while several years old, disclosure of this document would still be harmful by disclosing the process and analysis utilized to consider regulatory proposals and how to communicate to the public and lobby regarding such proposals. ECF 2518, Exhibit 150, is a summary of global legislative activity affecting Uber and Uber's activities regarding these proposals, bills, and other activity; while the fact that various legislative proposals were made is likely public, the collection of such information in this document, along with the significant non-public information, provides a roadmap for competitors and opponents to see Uber's plans, activities, and strategies for tracking and influencing legislation.

As Ms. O'Keefe explains her declaration, disclosure of these and similar documents would harm Uber by allowing competitors insights into Uber's operations and strategies, allowing competitors to copy or use the information to compete against Uber. Erin O'Keefe Decl. ¶ 2. Moreover, disclosure could also harm Uber by publishing internal communications made without the benefit of the full context of the discussion that could be used to unfairly harm Uber's reputation regardless of when the document was created. *Id.* ¶ 3. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, 2017 WL 5029612, at *5 (S.D. Cal. Nov. 3, 2017) (sealing under compelling reasons standard, notwithstanding argument that information was "stale," "internal business materials including … [party's] legislative strategies").

Disclosure would also have a chilling effect on the willingness of Uber's employees to speak freely in intracompany communications and a chilling effect on Uber's exercise of its First Amendment right to petition the government. Erin O'Keefe Decl. ¶¶ 4-5; *see also* ECF 1624 (citing authorities supporting argument that compelled disclosure regarding lobbying is subject to a heightened, "exacting scrutiny" standard). Sealing is particularly appropriate where Uber's lobbying and regulatory/government affairs strategies and actions are absolutely immune from liability under the *Noerr-Pennington* doctrine and have no legal relevance. *See* ECF 1698 at 25 (sealed order "rejecting the plaintiffs' contention that information about Uber's lobbying efforts is relevant to their negligence claims" and agreeing "that lobbying activity is not relevant to establish whether Uber

32

violated a duty of care or a common carrier duty to warn its passengers"); ECF 4686 at 15, § XIV (collecting cases re: lobbying and relevance); *see also*, *e.g.*, *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1171 (S.D.N.Y. 1986) ("The low probative value of this [lobbying] evidence is substantially outweighed by the defendants' strong interest in preserving their First Amendment rights to petition Congress."). It is true that the *Noerr-Pennington* doctrine is not a doctrine about sealing documents, but it does bear on relevance, which is relevant to the sealing analysis. Plaintiffs insist that such documents are relevant, despite the court's prior rulings and the firm constitutional rule that petitioning the government cannot be the basis of liability, but do not explain how lobbying documents are relevant. At best, Plaintiffs make an argument that such documents are of tertiary relevance, which still weighs in favor of sealing. Courts routinely seal this type of information. *See Bos. Ret. Sys.*, 2024 WL 665647, at *8 (granting motion to seal documents under good cause standard because they reflect "regulatory analyses"); *Jackpocket, Inc. v. Lottomatrix NY LLC*, 2022 WL 17738779, at *3 (S.D.N.Y. Dec. 15, 2022) (redacting "references to 'individuals [and organizations]'" from documents containing information about party's dealings with government regulators and agencies); *Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 6783691, at *2 (M.D.N.C. Oct. 6, 2016) (sealing "e-mail chains among counsel and between [a party] and its regulatory consulting company"); *Flexible Benefits Council v. Feltman*, 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008) (sealing exhibits containing "historic data on lobbying … expenses"). Aside from the First Amendment protection, these documents should be sealed because they contain confidential business strategy.

### 17.     Communications strategy.

Uber seeks to seal documents that divulge details about its communications strategy. As these documents demonstrate, Uber's approach to public relations, external communications, and media responses reflects extensive, internal deliberations informed by the expertise of Uber employees. Indeed, Brooke Anderson, Uber's Senior Director, Communications, explains her declaration, that Uber's communications team works with various teams at the company to develop strategy for external communications, including communications concerning services, safety, social impact, and public affairs. Brooke Anderson Decl. ¶ 2. This is often an iterative process that requires extensive

33

input from company employees with expertise in their respective fields. Communication strategies and draft public statements evolve as they are finalized and depend on candid discussions among Uber employees. These discussions involve internal company data, research, analysis, and strategy developed at great expense. *Id.*

The documents in this category include internal emails reflecting candid discussions between Uber employees on the company's strategy for public-facing communications. *See*, *e.g.*, Dkt. 2518, Exs. 138, 140, 142-144. For example, ECF 1135, Exhibit 45 is an email chain in which Uber employees discuss strategies for effectively communicating Uber's pickup safety protocols. Brooke Anderson Decl. ¶ 7. The employees that provide input on this communication strategy are experts in their respective fields and leaders at the company, including Rebecca Messina, then-Global Chief Marketing Officer; Kate Parker, then-Head of Safety & Insurance Brand and Initiatives; Barney Harford, then-Chief Operating Officer; Matt Kallman, then-Vice President of Communications; and Gus Fuldner, then-Vice President, Safety & Insurance. *Id.* Similarly, ECF 2518, Exhibit 94, is a confidential draft version of a brief describing Uber's plans for implementing its safety brand platform and communicating its initiatives both internally and externally. Exhibit 94 discusses internal strategy behind specific safety features and initiatives, including those relating to driver screening, and includes comments from Uber employees and the non-public rationale for Uber's safety brand platform. *Id.* ¶ 8. Another example is ECF 2518, Exhibit 24, an email chain in which Uber employees and executives discuss strategy for responding to media reports of safety incidents in the context of responding to a specific incident.

As Ms. Anderson explains in her declaration, public disclosure of these and other documents revealing Uber's communication strategy would chill future internal deliberations necessary for strategic decision-making. Brooke Anderson Decl. ¶ 3. Arriving at an effective communications strategy requires employees to openly debate options, test ideas, and exchange drafts and comments that may be incomplete, contrary to Uber's ultimate position, or otherwise not reflective of Uber's final views. *Id.* Uber employees would be less willing to provide this kind of candid, iterative input if they believed their preliminary thoughts, internal disagreements, or draft materials might be made public. *Id.* This harm would occur regardless of when the document was created. *Id.*

JOINT OMNIBUS MOTION TO SEAL                         Case No. 3:23-md-03084-CRB (LJC)

This chilling effect is especially harmful where the internal discussions concern whether and how to share more information, data, or analysis with the public. *Id.* ¶ 4. If Uber employees know that internal discussions weighing the risks and benefits of greater transparency, sharing internal data, or adopting more disclosure-friendly approaches will be made public, they will be less willing to propose or fully debate those approaches—including ones that would ultimately result in more candid or transparent communications to the public. *Id.* This would harm not only Uber, but the broader public interest in candid corporate deliberation over safety-related communications, because companies will be discouraged from considering and adopting more transparent strategies if doing so risks having those internal deliberations exposed and used against them. *Id.*

Public disclosure would also allow Uber's competitors to leverage the benefit of Uber's expertise, analysis, and data revealed in these communications to gain an unfair advantage in the marketplace. *Id.* ¶ 7. Additionally, publishing internal communications without the benefit of the full context of the discussion could be used to unfairly harm Uber's reputation. *Id.* ¶ 5.

Uber's communications strategies are indistinguishable from business decision making, which courts commonly seal even under the compelling reasons standard. *See, e.g.*, *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy, business transactions, corporate structure, and finances."); *Blockchain Innovation, LLC*, 2024 WL 4394758, at *3 (sealing documents containing confidential information on "internal business strategy and corporate decisionmaking"); *Jones*, 2023 WL 7440303, at *2 (sealing document containing "internal decision-making processes"); *Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making"). And while communications strategy relates to public-facing statements, *internal* strategies and guidance on communications are nevertheless confidential and developed at great expense—communication strategy is entitled to confidentiality just as much as business strategy. *E.g.*, *Baker*, 2017 WL 5029612, at *5 (sealing under compelling reasons standard, notwithstanding argument that information was "stale," "internal business materials including … communications regarding [party's] public relations strategy").

JOINT OMNIBUS MOTION TO SEAL                                Case No. 3:23-md-03084-CRB (LJC)

## C.     Conclusion

Accordingly, good cause exists for the Court to redact the Exhibits as described above. Uber therefore respectfully requests that the Court order that the redacted Exhibits be maintained on the docket under seal.

36

### III.     PLAINTIFFS' POSITION

#### A.     Legal Standard

The party seeking to seal a judicial record bears the burden of overcoming a "strong presumption in favor of access." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quotations and citations omitted). With respect to materials attached to nondispositive motions, the moving party bears the burden of establishing "good cause" to overcome this presumption. *Kamakana*, 447 F.3d at 1180. "Good cause," in this context requires showing "that specific prejudice or harm will result" absent sealing. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (quotations omitted). "Broad allegations of harm unsubstantiated by specific examples of articulated reasoning," are not sufficient. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). For each document proposed to be sealed, the movant must make a "particularized showing" of the "specific prejudice or harm" that will result. *Apple Inc. v. Samsung Elec.*, 2012 WL 4120541, at *1 (N.D. Cal. Sept. 18, 2012). Thus, for example, an "unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient." *Ochoa v. McDonald's Corp.*, 2015 WL 2015 WL 3545921, *1 (N.D. Cal. June 5, 2015) (quotations omitted).

This showing must be made on a document-by-document basis. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 ("A party asserting good cause bears the burden for each particular document it seeks to protect, of showing that specific prejudice or harm will result"); *In re PersonalWeb Techs., LLC et al. Patent Litig.*, 2023 WL 3468296, at *2 (N.D. Cal. April 13, 2023) (rejecting argument that document-by-document showing was unnecessary). As a result, the existence of a "blanket protective order" like the one in this case, does not satisfy the "good cause" standard. *Foltz*, 331 F.3d at 1133. Finally, requests to seal must be "narrowly tailored" to seek sealing only of "sealable" material. *See*, *e.g.*, Civil L. R. 79-5; *Oracle* 2026 WL 1191838, at *1 (declining to seal materials in full where the moving party did not satisfy Rule 79-5.).

#### B.     Argument

This Motion concerns **216** documents attached to nondispositive discovery motions. There are compelling reasons to seal **8** documents containing Plaintiff PII. *See In re: Pacific Fertility Ctr. Litig.*,

37

2021 WL 1082843, at *2 (N.D. Cal. Mar. 12, 2021). Plaintiffs take no position on **81** documents that Uber requests to seal but note that Uber nonetheless bears the burden to establish that the documents are sealable. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

The remaining **127** documents are documents that Uber asks the Court to seal or redact, which Plaintiffs oppose. Within this set, Plaintiffs do not oppose redacting employee PII from **66** documents though they oppose sealing or redacting other, non-PII information. With respect to these documents, Uber consistently failed to carry its burden. Uber's briefing is replete with assertions that the materials it proposes to seal are "confidential" or "proprietary" but no real explanation of what, if anything, could be done with those materials to harm Uber. The Court need not "take at face value" that a document is confidential "simply because Defendants say it is so." *Allagas v. AliveCor*, 2016 WL 324040, at *3 (N.D. Cal. Jan. 27, 2016).

The following overarching deficiencies pervade Uber's requests to seal: (1) failing to narrowly tailor its requests by sweeping in wide swaths of information that is not sealable, *see Oracle Am., Inc. v. Procore Techs., Inc.*, 2026 WL 1191838, at *1–2 (N.D. Cal. May 1, 2026); Civil L. R. 79-5, (2) requesting that the Court seal public information, *see*, *Optimize Tech. Solutions, LLC v. Staples, Inc.*, 2014 WL 1477651, at *2 (N.D. Cal. April 14, 2014); (3) requesting that the court seal stale information, *see Lee on behalf of Symantec Corp. v. Clark*, 2019 WL 13412548, at *1 (N.D. Cal. July 3, 2019); (4) making "[b]road allegations of harm unsubstantiated by specific examples of articulated reasoning," *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), and (5) failing to articulate document-by-document rather than category-by-category justifications for sealing based on prejudice that would result from disclosing each specific document, *Ochoa v. McDonald's Corp.*, 2015 WL 2015 WL 3545921, *1–2 ((N.D. Cal. June 5, 2015).

In its briefing, Uber mischaracterizes Plaintiffs' objections. For example, Uber asserts Plaintiffs attempt to create a "new rule" in which references to the general topic in a public document render any other material on the same topic public information. In reality, the Court instructed Uber to narrow its requests for sealing "accounting for subsequent public disclosures (including but not limited to the *Dean* trial) and guidance from the Court." ECF 5676 at 1. This means that not only do documents that are duplicates of trial exhibits need to be unsealed, but so do materials that contain the same underlying

information. *FibroGen, Inc. v. Hangzhou Andao Pharm Ltd.*, 2023 WL 6237986, at *3 (N.D. Cal. Sept. 22, 2023) ("*Information* that is in the public domain is not sealable.") (emphasis added). Nonetheless, Uber asks the Court to seal information that is obviously public ranging from employee job titles to references to partnerships covered in the news media. Further, while the Court previously rejected Uber's requests to seal materials that were between four and eight years old because Uber failed to articulate how it would be harmed by disclosure of those materials in the present, ECF 1818 at 1–3, ECF 2308 at 1–2, Uber makes the same misstep here with even *older* documents ranging from eight to twelve years old. Uber's "[b]road" and "unsubstantiated" assertions that it will face embarrassment or annoyance if outdated practices are brought to light do not satisfy the good cause standard. *Beckman*, 966 F.2d at 476. The Court should not seal these materials.

**1.      There Are Compelling Reasons to Seal Plaintiff, Non-Plaintiff Survivor, and Employee PII—But Not Everything Uber Designated as "PII" is PII**

Courts routinely seal personal identifying information under the more stringent compelling reasons standard due to the potential privacy harm to the individual whose personal information may be exposed. *See In re: Pacific Fertility Ctr. Litig.*, 2021 WL 1082843, at *2 (N.D. Cal. Mar. 12, 2021) (granting motion to seal names, email addresses, and customer addresses under compelling reasons standard but otherwise denying defendant's request to seal). Plaintiffs' request to seal is narrowly tailored to only PII to protect plaintiffs from exactly the kinds of privacy concerns courts in this Circuit have consistently recognized:

- ECF 3190 Ex. 1, Ex. 2: The sealed material consists of Plaintiff A.R.'s medical information, redacted from interrogatory responses (and a supplement to those responses) which has not been publicly disclosed to date and poses risks to Plaintiff A.R.'s privacy and security if disclosed including specifically revealing medical diagnoses associated with sexual assault, which is highly stigmatizing.

- ECF 3192 Ex. B: Plaintiffs do not possess the unsealed copy of these records, because ECF 3192 was filed by counsel for Uber and an unredacted copy was not shared with Plaintiffs, therefore Plaintiffs cannot compare the contents of these records with those

filed publicly; however, Plaintiffs do not request to seal any portions that are part of the public domain.

- ECF 4864 Ex. 2, 3, 4, 5: The sealed material consists of excerpts of the deposition and report of psychologist Mindy Mechanic and contains highly sensitive medical information and diagnoses regarding bellwether plaintiffs that has not been publicly disclosed to date; disclosure of this information poses risks to these plaintiffs' privacy and security including revealing medical diagnoses associated with sexual assault, which is highly stigmatizing.

Plaintiffs do not object to Uber's request to seal employee contact information to the extent that contact information is not public. However, Uber broadly characterizes wide swaths of documents as containing PII when they do not and attempts to use this (non)-PII to justify sealing the documents in full. For example, Uber asks the Court to seal documents related to the Parties' custodian disputes that include names, job titles, job duties, discovery procedures, and hit count information.[7] Notwithstanding that these employees publicly posted their names, job titles, and dates of employment online,[8] this information is simply not sealable PII. *See Shopify Inc. v. Express Mobile, Inc.*, 2020 WL 4732334, at \*12–13 (N.D. Cal. Aug. 14, 2020) (denying request to seal job titles or job duties).

Uber's reliance on *Trainer v. Cnty. of Delaware*, 2024 WL 1998088 (E.D. Pa. May 6, 2024), *EEOC v. Loflin Fabrication LLC*, 2020 WL 3845020 (M.D.N.C. July 8, 2020), and *Aevoe Corp. v. AE Tech. Co.*, 2013 WL 6210648 (D. Nev. Nov. 27, 2013) is misplaced. There are no indications that the charts in these cases included information that was otherwise publicly available. Further, *Trainer* involved sensitive racial data on employees, 2024 WL 1998088, at \*2, while *Loflin* involved employees' dates of birth and home addresses. 2020 WL 3845020, at \*3. While Uber here claims the information in the custodian charts should be sealed because it is far removed from the merits, *Loflin*

---

[7] ECF 1135 Ex. 4, 7, 8, 9, 26 (custodian charts); ECF 1135 Ex. 49 (hit count report); ECF 1158, Ex. 1, 2 (Uber's objections to custodians); ECF 1541, Ex. B (responses to custodian chart); ECF 1651, Ex. A, B (custodian disclosures and hit count reports); Khosrowshahi, Chang, Hazelbaker, Whetstone, Graves, Kansal, Maredia, and Kalanick Declarations in support of ECF 2424 (redacting job titles of current and former Uber employees); ECF 2518 (descriptions of employee roles).

[8] *See*, *e.g.*, https://www.linkedin.com/in/rachel-whetstone-497890127; https://www.linkedin.com/in/sarfrazmaredia; https://www.linkedin.com/in/sachinkansal; https://www.linkedin.com/in/matt-kallman; https://www.linkedin.com/in/jill-hazelbaker-3aa32422; https://www.linkedin.com/in/gusfuldner; https://www.linkedin.com/in/dara-khosrowshahi-70949862; https://www.linkedin.com/in/traviskalanick; *see also Dean* Trial Ex. P-01572, P-0017 (describing Sarfaz Maredia's role) *and compare with* ECF 2518 Ex. 160.

40

JOINT OMNIBUS MOTION TO SEAL    Case No. 3:23-md-03084-CRB (LJC)

is notable because the court refused to seal data on employees' medical conditions since it was relevant to the court's decision on that discovery matter. *Id.* Here, the roles, responsibilities, and employment dates of proposed employees were central to the dispute the Court resolved about custodians. Further, in this District, courts do not seal this kind of information. *Shopify*, 2020 WL 4732334, at *12–13; *Apple Inc. v. Samsung Elec. Co. Ltd.*, 2012 WL 4120541, at *2 (N.D. Cal. Sept 18, 2012) (denying motion to seal custodian charts, litigation hold notices, information about employee's position, documents detailing discovery procedures, and information about search term hit counts). Uber's request to seal this information should be denied.

### 2.    Uber Failed to Establish Good Cause to Seal the Requested Materials

### a.    Communications Strategies

Uber cannot establish "good cause" to maintain sealing on the documents it categorizes as "communications strategies." Communications strategies and plans are not *per se* sealable; instead, Uber was required to demonstrate what about *these* strategies and plans will result in specific prejudice if disclosed. *See Allagas v. BP Solar Int.'l, Inc.*, 2016 WL 324040, at *2 (N.D. Cal. 2016) (denying request to seal "communications plan" because the "materials do not apparently contain any privileged or trade secret information… The Court can only assume that the defendants wish to avoid embarrassment … but these reasons will not suffice."). Here, the documents so categorized cannot be sealed because they consist (in whole or in part) of material that is several years old,[9] public,[10] or both.

---

[9] ECF 1135 Ex. 13 (12 years old); ECF 1135 Ex. 29 (10 years old); ECF 1135 Ex. 32 (11 years old); ECF 1135 Ex. 46 (8 years old); ECF 2518 Ex. 19 (10 years old); ECF 2518 Ex. 24 (12 years old); ECF 2518 Ex. 28 (12 years old); ECF 2518 Ex. 30 (12 years old); ECF 2518 Ex. 36 (11 years old); ECF 2518 Ex. 37 (11 years old); ECF 2518 Ex. 42 (8 years old); ECF 2518 Ex. 44 (7 years old); ECF 2518 Ex. 48 (9 years old); ECF 2518 Ex. 49 (9 years old); ECF 2518 Ex. 50 (8 years old); ECF 2518 Ex. 51 (8 years old); ECF 2518 Ex. 54 (10 years old); ECF 2518 Ex. 55 (10 years old); ECF 2518 Ex. 57 (9 years old); ECF 2518 Ex. 80 (9 years old); ECF 2518 Ex. 94 (9 years old); ECF 2518 Ex. 131 (10 years old); ECF 2518 Ex. 140 (7 years old); ECF 2518 Ex. 157 (8 years old); ECF 2518 Ex. 184 (11 years old); ECF 2518 Ex. 189 (11 years old).

[10] *Compare* ECF 1135 Ex. 18 *with* U.S. Safety Reports (2017–18, 2019–20, 2021–22); ECF 1135 Ex. 29 (communication to reporter for subsequent publication); *compare* ECF 1135 Ex. 32 *with Dean* Ex. P-01419, P-01457; *compare* ECF 1135 Ex. 40 *with* https://www.uber.com/us/en/safety/, https://www.businessinsider.com/uber-safe-rides-fee-500-million-profit-super-pumped-book-2019-8, and https://help.uber.com/en/driving-and-delivering/article/driver-safety-education?nodeId=e6fc610b-8582-4a8f-b3a1-6b9b03a054cb; ECF 1135 Ex. 44 (transcript of moderated press call about Uber-involved shooting); ECF 1135 Ex. 45 (screenshots of public-facing "Check Your Ride" ad campaign, which has since concluded and quotes from news article about "Check Your Ride" ad campaign); ECF 1135 Ex. 46 (detailing forthcoming CNN story, which has since been published); ECF 2518 Ex. 2 (describing "retweet" of NNEDV quotes from news article); *compare* ECF 2518 Ex. 19 *with* https://help.uber.com/en/riders/article/how-uber-uses-rider-location-information?nodeId=741744cb-125c-4efc-ab3f-4a977940ac87; ECF 2518 Ex. 24 (describing tweet); ECF 2518 Ex. 25 (email from news publication including public press release); ECF 2518 (website copy for blog posts published twelve

*Lee on behalf of Symantec Corp. v. Clark*, 2019 WL 13412548, at *1 (N.D. Cal. July 3, 2019) (denying motion to seal three-year old information and generalized information); *Oliver v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (declining to seal information that was "a matter of public record."). For example, Ex. 94 to 2518 is a 2017 document that lays out Uber's "Safety Vision." In the intervening nine years, Uber has implemented this "Safety Vision" and it has become public through the *Dean* trial. *See Dean* Trial Ex. P-01339. Similarly, ECF 2518 Ex. 53 is an email about Driving Change grants. The grants that are the subject of that email have since been paid and information about Driving Change, including specific amounts paid was disclosed during the *Dean* trial. *Dean* Trial Ex. P-00397, P-00242, P-00395; *Dean* Tr. 844:22-25.

While Uber claims that public disclosure would result in competitive harm, its burden is to show on a document-by-document basis *how* it will be harmed; vague assertions of "competitive harm" are not enough. *Ochoa v. McDonald's Corp.*, 2015 WL 3545921, *1–2 ((N.D. Cal. June 5, 2015) ("An unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient") (quotations omitted). The authorities Uber cites are unhelpful. First, *Bold Ltd. v. Rocket Resume, Inc.*, 2024 WL 1329921 (N.D. Cal. Mar. 27, 2024), *Blockchain Innovation, LLC v. Franklin Resources, Inc.*, 2024 WL 4394758, (N.D. Cal. Oct. 3, 2024), *Jones v. PGA Tour, Inc.*, 2023 WL 7440303, (N.D. Cal. Nov. 8, 2023) and *Rodman v. Safeway, Inc.*, 2015 WL 13673842 (N.D. Cal. Aug. 4, 2015), do not concern

---

years ago); ECF 2518 Ex. 30 (website copy for a since-published webpage); ECF 2518 Ex. 36 (text of Travis Kalanick newspaper editorial which was since published); *compare* ECF 2518 Ex. 37 *with Dean* Ex. P-01419, P-01457; *compare* ECF 2518 Ex. 44 (describing widely-reported Uber safety incident and plan to work with Lyft on safety initiatives) *with* https://www.uber.com/us/en/newsroom/uber-lyft-and-sidecar-support-coalition-to-repeal-rideshare-ordinance/ (joint lobbying) and https://www.uber.com/us/en/newsroom/industry-sharing-safety/ (joint safety initiatives); *compare* ECF 2518 Ex. 52 *with Dean* Ex. P-01419, P-01457; *compare* ECF 2518 Ex. 53 *with Dean* Ex. P-00397, P-00242, P-00395, *Dean* Tr. 844:22–25, and ECF 6401-118; ECF 2518 Ex. 54 (text of letter to editors of news publication); *compare* ECF 2518 Ex. 55 *with Dean* Ex. P-00695; *compare* ECF 2518 Ex. 57 *with Dean* Tr. 2976:2-18, 2987:3-10; *compare* ECF 2518 Ex. 58 *with* P-01037; *compare* ECF 2518 Ex. 80, 131 *with Dean* Ex. P-01481, P-01479; ECF 2518 Ex. 84 (quotation from public article referencing women driver preferred); *compare* ECF 2518 Ex. 94 *with Dean* Ex. P-01339; ECF 2518 Ex. 105 (list of headlines); ECF 2518 Ex. 140 (description of public news coverage about murder of Uber passenger by her driver); *compare* ECF 2518 Ex. 142, 145 *with* U.S. Safety Reports (2017–18, 2019–20, 2021–22); ECF 2518 Ex. 157 (talking points for public facing presentation at university); *compare* ECF 2518 Ex. 170, 171 *with Dean* Ex. P-00178; *compare* ECF 2518 Ex. 184 *with Dean* Ex. P-01701, P-01698, P-00800; *compare* ECF 2686 Ex. 1 *with Dean* Trial Ex. P-0030, P-01486, P-01479; *compare* ECF 2686 Ex. 2 *with Dean* Ex. P-00800, P-00870, P-01689, P-01572 and *Boston Retirement Systems v. Uber Technologies, Inc.*, 3:19-cv-06361-RS. (now-settled class action of exactly the type this Exhibit predicted); *compare* ECF 2686 Ex. A *with Dean* Tr. *954:22-955:1* and *Dean* Trial Ex. P-01457, P-01256, 03871; *compare* ECF 2686 *with Dean* Trial Ex. P-01486, P-01479.

"communications" materials at all. Second, *Baker v. SeaWorld Ent., Inc.,* merely highlights the distinction between documents detailing the company's overarching *strategy*, which the court did seal, and documents related to specific marketing or communications plans, including how employees should respond to questions about a controversial documentary, which were not sealable. 2017 WL 5029612, at *4–5 (S.D. Cal. Nov. 3, 2017). Thus, contrary to Uber's assertion, there are differences between communications plans and business strategies; *see also* ECF 1818 at 2 ("not all internal business information is 'confidential,'"). Further none of the authorities on which Uber relies suggest that communications strategies that have since been publicized must be sealed. These requests should be denied.

### b.    Lobbying and Regulatory Communications

Uber asks to seal documents related to "lobbying" or "regulatory" communications in full. These are exactly the kinds of materials that can and should be unsealed. In *Qualcomm Inc. v. Apple Inc.*, there was not "good cause to seal" regulatory documents including those characterized as concerning "confidential communications with regulatory agencies" and "regulatory policies and strategies." 2021 WL 879871, at *4–5 (N.D. Cal. Mar. 9, 2021). This was because the documents "restate[d] announcements already made by government agencies" or "record[ed] communications" the defendant's "personnel has had or intended to have with such agencies," neither of which "qualifies as confidential. *Id.* at *4. Here, the lobbying and regulatory communications are not sealable because they have been publicly disclosed at trial[11] or are simply communications with outside agencies, like those in *Qualcomm*.

While Uber asserts that courts routinely seal "this type" of information, that argument fails. Uber must show that this *specific* information is sealable. It has not done so. Further, the examples Uber provides are distinguishable. This is not a case like *Boston Retirement Systems v. Uber Technologies, Inc.*, in which documents containing legal and regulatory analyses *by counsel* were submitted to the court for privilege determinations and the court determined that the privileged

---

[11] *Compare* ECF 1135 Ex. 32, 33, 34, 37, 38 *with Dean* Ex. P-01419, P-01457; *compare* ECF 1135 Ex. 35 *with Dean* Ex. P-00242, P-00397, Dkt. 6401-118; *compare* ECF 2518 Ex. 52 *with Dean* Ex. P-01419, P-01457; *compare* ECF 2518 Ex. 165 (describing Uber's plan to lobby state legislatures to classify drivers as independent contractors *with* https://www.theregreview.org/2018/06/28/schriever-uber-lyft-lobby-deregulation-preemption/ (detailing success of those efforts), *Dean* Ex. P-00177.

43

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

materials were also sealable. 2024 WL 665647, at *3–8 (N.D. Cal. Feb. 16, 2024). Nor is this a case like *Syngenta Crop Protection, LLC v. Willowood, LLC*, which involved an unopposed request to seal communications with a "regulatory consulting company," i.e. a consultant that assists with regulatory compliance, and not with regulators themselves. *See* 2016 WL 6783691, at *2 (M.D.N.C. Oct. 6, 2016). In *Flexible Benefits Council v. Feltman*, which Uber cites, the Court also granted an unopposed motion to seal "data on lobbying," though notably the court did not consider the request under the "good cause" standard. 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008). *Jackpocket, Inc. v. Lottomatrix NY LLC*, is also unhelpful because in that case the court permitted redaction of PII contained in regulatory documents but did not hold that regulatory documents were automatically sealable in full. 2022 WL 17738779, at *3 (S.D.N.Y. Dec. 15, 2022).

Moreover, the *Noerr-Pennington* doctrine does not justify sealing. It is well-established that "*Noerr-Pennington* is not an evidentiary privilege and [is] only a limitation on liability." *Natural-Immunogenics Corp v. Newport Trial Grp.*, 2018 WL 6137597, at *4 (C.D. Cal. May 16, 2018). Therefore, it is "within the province of the trial judge to admit this evidence" for other permissible purposes. *United Mine Workers of America v. Pennington*, 381 U.S. 657, 671 n.3 (1965). Here, one need look no further than the evidence of Uber's lobbying activities introduced at trial to reject the claim that Uber's lobbying and regulatory activities "have no legal relevance." *See*, *e.g.*, *Dean* Trial Ex. P-01476, P-01480, P-01037, P-01480. Evidence related to lobbying can be introduced for other permissible purposes, *United Mine Workers*, 381 U.S. at 671, just as it already has been in this litigation.

Six of these documents are ten to eleven years old.[12] Uber claims this is not a problem. Uber cites *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, in which the court concluded seven-year-old trade secret pricing data could be extrapolated to predict future practices. 2012 WL 6160468, at *2 (E.D. Cal. Dec. 11, 2012). Here, Uber made no such showing specific to these documents. *See Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 1283435, at *4–5 (N.D. Cal. Mar. 26, 2013) (considering *Stanislaus* and declining to seal five-year old information absent a showing that the "actual testimony

---

[12] ECF 1135 Ex. 32 (11 years old); ECF 1135 Ex. 33 (11 years old); ECF 1135 Ex. 34 (11 years old); ECF 1135 Ex. 37 (11 years old); ECF 2518 Ex. 38 (11 years old); ECF 2518 Ex. 52 (10 years old).

44

(as opposed to 'this type of information') is protectable"). Any extrapolation from these old documents to current practices is speculation. Similarly, in *Baker*, the age of the documents was not determinative because they included long-term plans that remained current. 2017 WL 5029612, at *5. Uber fails to demonstrate that any of the documents to be sealed included long-term planning through today. In *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1665754, at *2 (N.D. Cal. May 23, 2025), the court determined that materials that were less than two years old were not stale; that is not the issue here where the materials to be sealed are at least 10 years old. *Laatz* is likewise distinguishable because it did not involve old lobbying materials, but rather materials related to technical design specifications, which were also much more recent than the materials at issue here. 2025 WL 405702, at *3. Uber cannot establish "good cause" to seal these stale, public materials related to lobbying activities.

### c.    Safety Feature Performance and Experimentation

Uber lumps dozens of documents into the "safety feature performance and experimentation" bucket, including documents Uber asks the Court to seal in full even though portions of the document are obviously not sealable. Uber does not attempt to make a "particularized showing that specific prejudice or harm will result" from disclosure." *Apple Inc. v. Samsung Elec. Co. Ltd.*, 2013 WL 312864, at *1 (N.D. Cal. Feb. 2013). Instead, Uber asserts that these are business documents related to its products and therefore, it will be harmed if they are disclosed. That is not enough. ECF 1818 at 1; ECF 2308 at 1–2.

Uber identifies a selection of cases in which business or product information was sealed but these decisions are unhelpful. While the court in *CertainTeed Gypsum, Inc. v. Pacific Coast Building Prods., Inc.*, described the materials to be sealed in general terms as a report about the company's products, 2012 WL 6621061, at *2 (N.D. Cal. Dec. 13, 2021), they consisted of a depiction of a "confidential set up in the manufacturing process. 5-19-cv-00802-NC, Dkt. 140-2 at ¶ 2 (filed June 6, 2021). Similarly, while the materials in *Kowalsky v. Hewlett-Packard Co.*, consisted of product information, 2012 WL 892427, at *2 (N.D. Cal. Mar. 13, 2012), those materials were less than 2.5 years old. *See* 5:10-cv-02176, Dkt. 96 ¶¶ 6–8 (filed Mar. 1, 2012). In addition, *Bold*, 2024 WL 1329921, at *2 and *Lyft, Inc. v. AGIS Software Dev. LLC*, 2022 WL 1505879, at *2 (N.D. Cal. Apr. 7,

45

2022) are inapposite because they involved unopposed motions to seal sensitive financial information that was more specific than what is at issue here.

To be clear, none of these cases stand for the proposition that business or product information is *per se* sealable, particularly where it is public or several years old. The Court has routinely denied Uber's requests to seal materials under the good cause standard where, as here, there is no showing that the materials "reflect current practice," the materials contain only "non-substantive discussion," or potential harm is "mitigated by the long period of time" (such as 4–8 years) since the document was created. ECF 2308 at 1–2. Here, Uber's requests to seal fail for the same reasons. These materials consist of stale documents between 7 and thirteen years old.[13] *Avila v. Ford Motor Co.*, 2026 WL 508364, at *7 (N.D. Cal. Feb. 24, 2026) (declining to seal stale material under good cause standard). In addition to their age, the bulk of these materials include information that is public either because it was released as part of the *Dean* trial or by Uber itself. [14] *See* 4, at *7 (N.D. Cal. Feb. 24, 2026) (declining to seal stale material under good cause standard); *Optimize Tech. Solutions, LLC v. Staples, Inc.*, 2014 WL 1477651, at *2(N.D. Cal. April 14, 2014) (declining to seal publicly available information). Finally, the materials do not contain the kind of "confidential technical information" at issue in *Blockchain Innovation*, 2024 WL 4394758, at *3 but instead describe Uber's products in "non-

[13] ECF 1135 Ex. 13 (12 years old); ECF 1135 Ex. 19 (11 years old); ECF 1135 Ex. 20 (7 years old); ECF 1135 Ex. 27 (9 years old); ECF 1135 Ex. 30 (7 years old); ECF 2518 Ex. 4 (8 years old); ECF 2518 Ex. 12 (detailing pilot that concluded 8 years ago); ECF 2518 Ex. 19 (10 years old); ECF 2518 Ex. 23 (13 years old); ECF 2518 Ex. 43 (8 years old); ECF 2518 Ex. 44 (7 years old); ECF 2518 Ex. 77 (8 years old); ECF 2518 Ex. 79 (9 years old); ECF 2518 Ex. 80 (9 years old); ECF 2518 Ex. 85 (9 years old); ECF 2518 Ex. 87 (9 years old); ECF 2518 Ex. 88 (8 years old); ECF 2518 Ex. 94 (9 years old); ECF 2518 Ex. 99 (9 years old); ECF 2518 Ex. 124 (9 years old); ECF 2518 Ex. 134 (9 years old); ECF 2518 Ex. 159 (years old).

[14] ECF 1135 Ex. 15 (contains information about Uber's public taxonomy, as well as statistics and inspirational quotes sourced online); *compare* ECF 1135 Ex. 17 *with Dean* Ex. P-04559. P-00932, P-00508; ECF 1135 Ex. 25 (newsletter describing launches that occurred four years ago); *compare* ECF 1135 Ex. 27 *with* http://help.uber.com/en/riders/section/data-and-privacy?nodeId=8e6d6912-6614-4c62-a39c-1db528ae1bf8; ECF 1135 Ex. 30 (response to a government inquiry about a 2019 TNC report addressing typos and public information, including that Checkr was Uber's background check vendor); *compare* ECF 2518 Ex. 14 *with Dean* Tr. 216:3-7, 218:20-25, 754:18-755:15, 1361:1-16, 1415:6-11, 2411:16-24, 3059:19-3062:17 and *Dean* Ex. P-01419; P-01457; *compare* ECF 2518 Ex. 41 *with Dean* Ex. P-00266; *compare* ECF 2518 Ex. 60 *with Dean* Ex. P-01701, P-00759; *compare* ECF 2518 Ex. 68, 73, 75, 76, *with* http://help.uber.com/driving-and-delivering/article/record-my-ride---frequently-asked-questions?nodeId=7f86cc51-2c3e-4888-8dc1-0ac2b6337b92; *compare* ECF 2518 Ex. 69 *with Dean* Ex. P-01572, P-00178; *compare* ECF 2518 Ex. 79 *with Dean* Ex. P-01486, P-01479; ECF 2518 Ex. 84 (consisting of quotation from public article about safety feature); *compare* ECF 2518 Ex. 85 *with Dean* Tr. 270:11-272:25; *compare* ECF 2518 Ex. 86 *with Dean* Ex. P-00759; ECF 2518 Ex. 120 (describing publicly-documented safety features and including information about lookback periods, a matter of state law, and summaries of newspaper articles); ECF 2518 Ex. 156 (transcript of public presentation at ULC summit); *compare* ECF 2518 Ex. 158 *with Dean* Ex. P-01462; *compare* ECF 2518 Ex. 158 *with Dean* Ex. P-01572, P-00689; *compare* ECF 2518 Ex. 162 *with Dean* Tr. 2713:2–18; *compare* ECF 2518 Ex. 172 *with Dean* Ex. P-01572.

46

substantive" communications that cannot be used by its competitors.[15] *Apple, Inc. v. AliveCor, Inc.*, 2025 WL 2677124, at *2 (N.D. Cal. Sept. 18, 2025) (declining to seal product information under "good cause" standard where assertions of harm were generic and defendant could not explain how it would be prejudiced by disclosure of information from years ago).

For the documents Uber highlights, it fails to establish good cause to seal the documents:

**S-RAD:** ECF 2518 Ex. 61 is an eight year old email chain that describes the proposed timeline for rolling out S-RAD in the U.S., which Uber has since done. As Uber points out, ECF 2518 Ex. 62 is a 128-page slide deck about S-RAD; it fails to establish why sealing the entire document rather than redacting portions is appropriate. Certainly, there are numerous portions of Ex. 62 that are not sealable, including information about Uber's plan to launch S-RAD, the multiple slides marked "old data," the now public S-RAD feature list, Uber's "least N" strategy," and other material that has since become public. *See Dean* Trial Ex. P-01687, P-01711, P-01366, P-01630, P-00797, P-00272, 03867, 03868. Finally, ECF 2518 Ex. 89 is a 60-page slide deck from 2019 that covers S-RAD at a highly generalized level (for example, the description of how S-RAD works is that "Every request has multiple potential matches") and includes data from now-public S-RAD materials. *See id.*

**Women Rider Preferred.** ECF 2518 Ex. 79 and 80 are eight-year-old emails that suggest this feature at a highly general level. Uber launched this feature *after* its main competitor, Lyft, did so. More detailed information about WRP is now public. *See Dean* Trial Ex. P-01486, P-01479.

**Recording.** ECF 2518 Exhibits 68, 71, 73, and 76 are emails (all part of the same chain) concerning how Uber or a third party would get access to dashcam video in the event of a safety incident. Notably, Uber employee Andi Pimental states she is adding two colleagues to address "the technical components" but those employees' responses about the "technical components" are not part

---

[15] *See, e.g.*, ECF 2518 at Ex. 16 (bulleted list describing CEO Dara Khosrowshahi's role with respect to the safety report including: making public appearances, giving "kudos" to employees, and standing for "safety"); ECF 2518 Ex. 85 (outlining safety vision at a high level, including the values of being "safe," "responsive," and "trusted"); ECF 2518 Ex. 14 (describing role of executive leadership team in investigating cameras, but not underlying operating systems or code); ECF 2518 Ex. 90 (presentation notes for Stand for Safety presentation that was an exhibit at the *Dean* trial and which is focused on priorities of safety program, not product design or testing); ECF 2518 Ex. 134 (email chain about whether safety organization had sufficient operational support in 2017); *compare* ECF 2518 Ex. 159 *with Dean* Trial Ex. P-01572, P-00689.

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

of the chains. The remainder of the emails are mirrored by Uber's own public statements.[16] Uber is correct that ECF 2518 Ex. 77 discusses "third party business relationships" related to dashcam adoption, specifically, Uber's widely publicized use of a vendor-integration option.[17] Sealing is not appropriate.

The Court should therefore deny Uber's request to seal information related to safety features.

### d.    Financial Information and Strategic Resource Allocation/ Prioritization

Uber claims disclosure of information related (in any way) to its finances will somehow result in competitive harm. However, Uber cannot establish that it will be harmed by the release of staffing requests, background check costs, objectives and key results (OKRs), or grant payments that six to nine years out of date,[18] all of which are unquestionably stale. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 1836351, at *2–3 (C.D. Cal. Mar. 28, 2017) (denying request to seal financial information on various investment funds that could have been confidential "but some of that information is several years old and it is not obvious … how that information could be used to harm Defendants now."); *see* ECF 2308 at 1–2 (declining to seal materials between four and eight years old).[19] Even if this material did have commercial value it has already been publicly disclosed. Uber's request to seal should be denied.

### e.    Executive Compensation

Uber asks the Court to seal Exhibit 10 to ECF 2518 in full. This exhibit is an email about a proposal to tie executive compensation to safety metrics. Relatedly, Uber asks the Court to redact the language "tying safety to executive compensation" from its briefing at ECF 2564. Unlike in *Gomo v. NetApp, Inc.*, 2019 WL 1170775 (N.D. Cal. Mar. 13, 2019) and *Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2018

---

[16] *See* https://help.uber.com/driving-and-delivering/article/record-my-ride---frequently-asked-questions?nodeId=7f86cc51-2c3e-4888-8dc1-0ac2b6337b92

[17] *See*, *e.g.*, https://www.nytimes.com/2019/11/20/technology/uber-recording-rides-privacy.html (partnership with Nauto) https://help.uber.com/driving-and-delivering/article/cambridge-mobile-telematics-cmt-driving-insights?nodeId=42841df6-1ec1-49c5-b9cc-ade5aeb14e7e (partnership with Cambridge Mobile Telematics); https://www.oregonlive.com/crime/2023/07/portland-uber-drivers-test-out-discounted-dash-cams-amid-rising-safety-worries.html (partnership with Nexar)

[18] *Compare* ECF 1135 Ex. 20 *with Dean* Ex. P-00689, P-01572; ECF 1135 Ex. 35 *with Dean* Ex. P-00242 *and Dean* Ex. P-00397; ECF 2518 Ex. 41 *with Dean* Ex. P-00266; ECF 2518 Ex. 47 *with Dean* Tr. 1379:4-6, 1578:25-1579:13 (describing Uber's relationship with Checkr); ECF 2518 at 53 *with Dean* Ex. P-00397, P-00242, P-00395, *Dean* Tr. 844:22-25 and ECF 6401-118; ECF 2518 Ex. 88 *with Dean* Tr. 3151:11-3152:18, *Dean* Ex. P-01020.

[19] ECF 1135 Ex. 20 (7 years old); ECF 1135 Ex. 36 (9 years old); ECF 2518 Ex. 41 (6 years old); ECF 2518 Ex. 46 (8 years old); ECF 2518 Ex. 50 (8 years old); ECF 2518 Ex. 51 (8 years old); ECF 2518 Ex. 88 (8 years old).

48

JOINT OMNIBUS MOTION TO SEAL    Case No. 3:23-md-03084-CRB (LJC)

WL 3328224 (W.D. Wash. July 6, 2018), Exhibit 10 does not identify compensation paid to any Uber employee or the specific metrics used to calculate compensation.[20] Instead, it discusses tying compensation to safety KPIs, which is publicly documented in proxy statements and in *Dean* Trial Exhibit P-00870. These early-stage ideas which may, or may not, have been implemented are not sealable.

### f.    Data Collection, Organization, and Classification

Uber's request to seal information related to data organization and classification asserts that the information "would be valuable to Uber's competitors to copy in their own data collection, organization, and analysis." Blatant speculation aside, Uber fails to offer specific facts showing how this would occur or be harmful. Its citation to *U.S. v. Rite Aid*, 2019 WL 1923234 (E.D. Cal. Apr. 30, 2019) is unhelpful. There, the court granted an unopposed request to seal documents attached to a non-dispositive discovery motion. *Id.* at *1–3. The court also noted that in its briefing, Rite Aid "sufficiently explaine[ed] the proprietary nature of the computer system and the potential competitive harm from public disclosure," *id.* at *3, which is absent from Uber's briefing. This is because Uber cannot be harmed by disclosure of this (now public) information.[21]

Uber tries to draw comparisons between these documents and the mobile events log that Judge Breyer recently sealed, ECF 6046, but these materials are not mobile events logs. Unlike those documents, the data fields, classification, and organization are either public or is described in the subject materials at a sufficiently general level to prevent competitive harm. Finally, even if Uber could establish that certain data fields were sealable, it has not articulated any basis for sealing the entire document instead of filing a redacted copy on the docket. *Oracle Am*, 2026 WL 1191838, at *1–2. These requests should be denied.

### g.    Research and Analyses Concerning Uber's Internal Data

---

[20] The email appears to include hyperlinks to separate documents that may include this type of information; however the hyperlinks are not clickable and the hyperlink address cannot be viewed, which prevents public access to the underlying material.

[21] *Compare* ECF 2518 Ex. 96 *with Dean* Ex. P-00870, P-00800; ECF 2518 Ex. 100 *with* U.S. Safety Reports (2017–2018, 2019–2020, 2022–2023); ECF 2518 Ex. 102 *with* U.S. Safety Reports (2017–2018, 2019–2020, 2022–2023); ECF 3993 Ex. 1 *with Dean* Tr. 2791:19–2792:22; ECF 2857 *with Dean* Tr. 950:1–4, 961:16–962:7, 987:9–1, *Dean* Ex. P-00503.; ECF 3068 *with Dean* Tr. 1065:6–8, *Dean* Ex. P-00010; ECF 3993 Ex. E, G *with* Keller Rept. at 21; *Dean* Tr. 2160:12–19; ECF 3993 Ex. I, Q *with Dean* Tr. 394:5–8. 1354:8–14, 2114:15–24, *Dean* Ex. P-01177, *Dean* Ex. P-00796, U.S. Safety Reports (2017–2018, 2019–2020, 2022–2023); EF 3993 Ex. T, X, Y, Z <u>*with Dean Tr.* 930:25-952:2, 953:15-954:9; 2792:4-22 and U.S. Safety Reports (2017–18, 2019–20, 2021–22)</u>

49

Uber failed to establish good cause to seal the materials it characterizes as related to its internal data analyses. These materials consist of documents that are between 7 and 11 years old[22] and the information they contain has been publicized.[23] Information that is public or stale is not sealable. *Lee*, 2019 WL 13412548, at *1 (denying request to seal financial data that was "not current," or was "generalized"); *In re Twitter Inc. Sec. Litig.*, 2020 WL 251988, at *2 (N.D. Cal. May 18, 2020) (explaining that information publicly disclosed in earnings call or on the public docket was not sealable).

Uber points to several cases in which materials it claims are similar were sealed, but none of these cases demonstrate that data analyses are always sealable. In any event, each of these cases is distinguishable. In *Boston Retirement*, the court sealed materials that it reviewed *in camera* as part of its privilege determinations and concluded were privileged, meaning even plaintiffs' counsel could not review them. 2024 WL 665647, at *8. Moreover, this is not a case like *Craig v. American Tuna, Inc.* The "aggregated data and analysis" in that case would be useful to competitors because it detailed "longitude and latitude at different catch locations" for the defendant's commercial fishing operation. 2023 WL 8242460, at *3 (S.D. Cal. Nov. 28, 2023). Nor is the data about the risk of Uber passengers being sexually assaulted anything like the kind of "user engagement metrics" at issue in *Daybreak Game Co., LLC v. Takahashi*, 2025 WL 3552744, at *3 (S.D. Cal. Dec. 11, 2025) or the "customer research" contemplated by the court in *Rodman*, 2015 WL 13673842, at *2. And here, unlike in *DeMartini v. Microsoft Corp.*, 2023 WL 4205770, at *4 (N.D. Cal. June 26, 2023), the material Uber seeks to seal is public.[24]

---

[22] ECF 1135 Ex. 19 (11 years old); ECF 1135 Ex. 30 (7 years old) ECF 2517 Ex. 11 (8 years old); ECF 2518 Ex. 19 (10 years old); ECF 2518 Ex. 60 (11 years old); 2518 Ex. 89 (7 years old); ECF 2518 Ex. 188 (11 years old).

[23] ECF 1135 Ex. 30 (noting that Checkr is Uber's background check provider); *compare* ECF 2518 Ex. 11 *with Dean* Ex. P-00695.; *compare* ECF 2518 Ex. 17 (listing teams within Uber including threat operations and safety communications) *with* https://techcrunch.com/2018/01/11/more-details-emerge-of-ubers-tactics-for-thwarting-police-raids/; *compare* ECF 2518 Ex. 19 *with* https://help.uber.com/en/riders/article/how-uber-uses-rider-location-information?nodeId=741744cb-125c-4efc-ab3f-4a977940ac87; *compare* ECF 2518 Ex. 60 *with Dean* Ex. P-01701, P-00759; *compare* ECF 2518 Ex. 89 *with Dean* Ex. P-01687, P-01711, P-01366, P-01630, P-00797, 03867, P-00272, 03868.

[24] *Bold*, 2024 WL 1329921 is unhelpful. While the court may have had the benefit of the (now-sealed) materials in order to assess the potential for competitive harm, the order does not state what about the materials would render their release competitively harmful. *See generally id.* Since business information is not *per se* sealable, Uber must do more. *See A.B.*, 441 F.Supp.3d at 908.

JOINT OMNIBUS MOTION TO SEAL                                      Case No. 3:23-md-03084-CRB (LJC)

Regardless, even if Uber could show that this type of information is generally sealable, that is not enough. To establish "good cause" Uber must demonstrate particularized harm that will result from disclosure of the specific materials at issue here—not business data as a general concept. *See Apple Inc.*, 2013 412864, at *2 (denying motion to seal data and information about how to retrieve information from database under "good cause" standard where designating party failed to articulate how it would be harmed by disclosure). Uber's motion should therefore be denied.

**h.    Data Regarding Reports of Sexual Assault/Sexual Misconduct**

None of the documents Uber identifies as related to safety data are sealable. *FibroGen, Inc. v. Hangzhou Andao Pharm Ltd.*, 2023 WL 6237986, at *3 (N.D. Cal.  Sept. 22, 2023) ("Information that is in the public domain is not sealable."). First, more than half of the slides in ECF 1135 Ex. 15 is a short slide deck consist of information Uber appeared to source from the internet such as statistics on sexual assault in the community, inspirational quotes, screenshots from articles published online.[25] The limited substantive information in the document consists of information that has since been made public, including a list of safety data fields Uber collects from JIRAs and a request for the SIU to provide feedback about the Taxonomy. *See Dean* Trial Ex. P-00508, P-00932, P-01177. Second, ECF 2517 Ex, 137 is a 9-year-old chat about the number of media inquiries that Uber's Safety Communications team "managed." In addition to being years old, communications with the media are not sealable. Finally, ECF 2518 Ex. 17 merely identifies which Uber teams were responsible for internal reporting, external reporting (e.g., Safety Reports) and regulatory reporting (e.g., CPUC) all of which is sufficiently general that it will not allow competitors to leverage these processes against Uber.

*Mobileum Inc. v. Sarl* is distinguishable because there the designating party narrowed its redactions to cover only "sensitive business information" such as closely negotiated and consumer-specific terms that could be leveraged by other customers in future negotiations, rather than the kind of "mundane factual information" that is present in Uber's sealing requests. 2023 WL 8481802, at *2

---

[25] *Compare* slide 8 *with* https://www.thestreet.com/politics/uber-does-right-thing-14589752; *compare* slide 16 *with* https://mashable.com/article/social-good-innovations-2018; *compare* slide 11 *with Helping Industries to Classify Reports of Sexual Harassment, Sexual Misconduct, & Sexual Assault* at 18 https://www.urban.org/sites/default/files/publication/99330/nsvrc_helpingindustries_2.pdf.

51

(N.D. Cal. Dec. 7, 2023). Uber has not shown any particularized harm that will result if the general factual information (for example, that it collects safety data) is disclosed. Therefore, the Court should deny Uber's request to seal.

### i.    Driver Screening/Retention

There is not good cause to maintain sealing on the documents related to driver screening or retention. First, Uber has introduced no evidence to demonstrate that the practices depicted in each of these documents is current but nonetheless demands that documents ranging from seven to twelve years old remain under seal.[26] *Avila*, 2026 WL 508364, at *7 (declining to seal stale material under good cause standard). Second, the information contained in these documents is already in the public domain either as a result of this litigation or because Uber chose to disclose it.[27] *FibroGen*, 2023 WL 6237986, at *3 ("Information that is in the public domain is not sealable."). With respect to these documents, Uber fails to make a "particularized showing," of "specific prejudice or harm" that will result if the documents are not sealed. ECF 1818; *Apple Inc.*, 2013 412864, at *1.

---

[26] ECF 1135 Ex. 12 (12 years old); ECF 1135 Ex. 17 (7 years old); ECF 1135 Ex. 19 (11 years old); ECF 1135 Ex. 28 (10 years old); ECF 1135 Ex. 31 (10 years old); ECF 1135 Ex. 32 (11 years old); ECF 1135 Ex. 33 (11 years old); ECF 1135 Ex. 34 (11 years old); ECF 1135 Ex. 37 (11 years old); ECF 1135 Ex. 38 (11 years old); ECF 1135 Ex. 40 (12 years old); ECF 1135 Ex. 41 (12 years old); ECF 1135 Ex. 42 (12 years old); ECF 2518 Ex. 37 (11 years old); ECF 2518 Ex. 45 (7 years old); ECF 2518 Ex. 46 (8 years old); ECF 2518 Ex. 48 (9 years old); ECF 2518 Ex. 49 (8 years old); ECF 2518 Ex. 50 (8 years old); ECF 2518 Ex. 51 (8 years old); ECF 2518 Ex. 52 (9 years old); ECF 2518 Ex. 55 10 years old); ECF 2518 Ex. 57 (9 years old); ECF 2518 Ex. 85 (9 years old); ECF 2518 Ex. 86 (8 y ears old); ECF 2518 Ex. 87 (9 years old); ECF 2518 Ex. 94 (9 years old); ECF 2518 Ex. 115 (12 years old); ECF 2518 Ex. 117 (12 years old); ECF 2518 Ex. 168 (8 years old); ECF 2518 Ex. 175 (12 years old); ECF 2518 Ex. 181 (12 years old); ECF 2518 Ex. 185 (10 years old).

[27] *Compare* ECF 1135 Ex. 17 *with Dean* ex. 03701, P-01572 and https://help.uber.com/en/driving-and-delivering/article/annual-background-checks?nodeId=4c538b1d-7626-4cdc-9274-68a3fd74e006; *compare* ECF 1135 Ex. 31, 32, 33, 34, 37, 38 *with Dean* Ex. P-01419; P-01457; *compare* ECF 1135 Ex. 40 *with* https://www.uber.com/us/en/safety/, https://www.businessinsider.com/uber-safe-rides-fee-500-million-profit-super-pumped-book-2019-8, and https://help.uber.com/en/driving-and-delivering/article/driver-safety-education?nodeId=e6fc610b-8582-4a8f-b3a1-6b9b03a054cb; ECF 1135 Ex. 44 (transcription of moderated press call about Uber-involved shooting in Kalamazoo, Michigan); ECF 1135 Ex. 48 (text of website copy for public-facing website); *compare* ECF 2518 Ex. 3 *with Dean* Ex. P-00479 and https://www.uber.com/us/en/safety/our-commitment/; *compare* ECF 2518 Ex. 37 *with Dean* Ex. P-01419, P-01457; *compare* ECF 2518 Ex. 45 *with Dean* Tr. 1175:19-1176:25, 2389:20-2390:12 and https://www.uber.com/us/en/newsroom/industry-sharing-safety/; *compare* ECF 2518 Ex. 46 *with* https://www.uber.com/us/en/newsroom/industry-sharing-safety/; *compare* ECF 2518 Ex. 47 *with* 15 U.S.C. § 1681 and *Dean* Tr. 1379:4-6, 1578:25-1579:13; *compare* ECF 2518 Ex. 52 *with Dean* Ex. P-01419; P-01457; *compare* 2518 Ex. 55 *with Dean* Ex. P-00695; *compare* ECF 2518 Ex. 57 *with Dean* Tr. 2976:2-18, 2987:3-10; *compare* ECF 2518 Ex. 58 *with Dean* Ex. P-01037; *compare* ECF 2518 Ex. 85 *with Dean* Tr. 270:11-272:25; *compare* ECF 2518 Ex. 86 *with Dean* Ex. P-00759; *compare* ECF 2518 Ex. 87 *with Dean* Ex. P-01572, P-00689, P-00176; *compare* ECF 2518 Ex. 94 *with* P-01339; *compare* 2518 Ex. 106 *with* 15 U.S.C. § 1681; ECF 2518 Ex. 168 (letter to commissioner describing Uber's background check process at a high-level of generality); *compare* ECF 2518 Ex. 174 *with Dean* Ex. P-00178; *compare* ECF 2518 Ex. 175 *with* https://help.uber.com/en/driving-and-delivering/section/background-checks?nodeId=d60e57e5-4fa2-4d0c-a61b-46b408d5c1f6; *compare* ECF 2518 Ex. 185 *with Dean* Ex. P-01037.

52

This is not a case like *Lawson v. Grubhub, Inc.*, in which the court sealed material related to how delivery drivers "receive orders" and how GrubHub "manages drivers." 2017 WL 2951608, at *10 (N.D. Cal. July 10, 2017). Unlike in *Lawson*, the materials at issue do not describe the system architecture or code Uber uses to dispatch or manage its drivers. *Laatz v. Zazzle Inc.*, on which Uber also relies, is similarly distinguishable because the redactions at issue there concerned "internal technical operations," such as the code underlying a proprietary design tool, and not the high-level discussions at issue here. *See* 2025 WL 405702, at *2 (N.D. Cal. Feb. 5, 2025). Here, the materials consist of outdated and generic discussions of background checks and the importance of promoting safety. Uber has not introduced any evidence to show that these specific materials represent current, *replicable* practices or trends and that these nonspecific discussions could be used by its competitors to obtain a commercial advantage.

Uber's reliance on *Blockchain Innovation*, 2024 WL 4394758 and *Jones*, 2023 WL 7440303 is similarly unavailing. That courts have sealed other business materials in the past does not mean the materials subject to this motion are sealable. As the Court explained, "not all internal business information is 'confidential" and even if Uber treats it as such, "it still must show that disclosure would create at least some risk of harm to establish good cause to seal that information. ECFR 1818 at 3. Uber has failed to make such a showing here its motion should be denied.

### j.    Deactivation/Investigation Processes

Uber does not establish "good cause" to seal documents related to its deactivation processes. First, the information in these documents is not sealable because it is 7–10 years old and Uber has not produced evidence that the information is reflective of current practices.[28] *MasterObjects, Inc. v. Amazon.com, Inc.* 2022 WL 4074653, at *8 (N.D. Cal. Sept. 5, 2022) (declining to seal that was several years old because designating party failed to adequately explain how it would be harmed by its disclosure in the present day). Second, the information contained in these documents is so general that

---

[28] ECF 1135 Ex. 47 (8 years old); ECF 2518 Ex. 20 (11 years old); ECF 2518 Ex. 24 (12 years old); ECF 2518 Ex. 45 (7 years old); ECF 2518 Ex. 46 (8 years old); ECF 2518 Ex. 48 (9 years old); ECF 2518 Ex. 49 (8 years old); ECF 2518 Ex. 50 (8 years old); ECF 2518 Ex. 51 (8 years old); ECF 2518 Ex. 55 (10 years old); ECF 2518 Ex. 99 (9 years old); ECF 2518 Ex. 153 (10 years old); ECF 2518 Ex. 167 (9 years old).

53

JOINT OMNIBUS MOTION TO SEAL                                Case No. 3:23-md-03084-CRB (LJC)

it cannot be used by Uber's competitors or drivers.[29] Third, the information contained in these documents has already been made public.[30] *Oliver*, 745 F.3d at 1026 (finding information was not sealable where it was a matter of public record). For example, Uber highlights ECF 2518 Ex. 153, a 10-year-old email in which Uber employees propose developing a deactivation policy, though the details of the proposed policy are not discussed. Uber eventually implemented a deactivation policy, which is publicly documented. *See Dean* Ex. P-01024, P-01177, P-01020. Uber also highlights ECF 2518, which is a JIRA. While Plaintiffs do not object to redacting PII (phone numbers, email addresses, and driver and rider names), there is no basis to seal the document in full given that multiple JIRAs are on the public docket. *Dean* Trial Ex. P-04559, P-00932.

As a result, these materials are not sealable. Uber asserts that disclosure of these materials will allow its competitors to gain an advantage over it *or* would allow bad actors (such as its drivers) to exploit Uber's deactivation processes. The suggestion that "bad actors" driving for Uber will be able to harm others using strategies gleaned from the court docket is spurious at best. The real risk is employing such individuals in the first place, as Plaintiffs have long pointed out. Uber's burden is not to speculate wildly, but to make a "particularized showing that specific prejudice or harm will result" from disclosure." *Apple Inc. v. Samsung Elec. Co. Ltd.*, 2013 412864, at *1 (N.D. Cal. Feb. 1, 2013). While Uber makes claims about misuse, it has identified no facts demonstrating *how* these materials could be used for the purposes it claims. *Id.* at *2 (rejecting motion to seal where designating party failed to show "how this information would be detrimental if disclosed").

This is not a case like *Rite Aid*, in which the court granted an unopposed motion to seal "non-public" information concerning the moving party's computer system after the moving party

---

[29] ECF 2518 Ex. 20 (proposing, at a high-level incorporating "holistic" assessment into background check, with no details as to what this means or how it would be implemented);

[30] *Compare* ECF 2518 Ex. 3 *with* P-00479, https://www.uber.com/us/en/safety/our-commitment/; ECF 2518 Ex. 24 (describing public tweet); *compare* ECF 2519 Ex. 45 (proposing deactivation sharing) *with* https://www.uber.com/us/en/newsroom/industry-sharing-safety/ (announcing launch of ISSP, also called "deactivation sharing" internally); see also *Dean* Tr. 1175:19-1176:25, 2389:20-2390:12; *compare* ECF 2518 Ex. 46 (proposing annual background check re-runs) *with* https://help.uber.com/driving-and-delivering/article/annual-background-checks?nodeId=4c538b1d-7626-4cdc-9274-68a3fd74e006 (describing annual re-run policy); *compare* ECF 2518 Ex. 47 *with Dean* Tr. 1379:4-6, 1578:25-1579:13 and 15 U.S.C. § 1681; ECF 2518 Ex. 48 (outlining background for reporters and describing existing California law); *compare* ECF 2518 Ex. 50, 51 *with* 15 U.S.C. § 1681; *compare* ECF 2518 Ex. 55 *with Dean* Ex. P-00695 (revamping policy described in Ex. 55); *compare* ECF 2518 Ex. 99 *with Dean* Ex. P-00932; *compare* ECF 2518 Ex. 167 *with Dean* Ex. P-04559, P-00932, *Dean* Tr. 706:8-22, 954:22-964:25; ECF 1135 Ex. 47 (describing CNN story and Safety Report, both of which have since been published).

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

"sufficiently explain[ed] the proprietary nature of the computer system." 2019 WL 1923234, at *2–3. Here, not only has Uber failed to show what its competitors or users could actually *do* with the information in these documents to work competitive or other harm on Uber or its users, but it cannot make such a showing because this information is out-of-date or already public.  Nor is this a case like *Ashcraft v. Welk Resort Grp. Corp.*, 2019 WL 12518367 (D. Nev. Sept. 26, 2019), *Calhoun v. Google LLC*, 2022 WL 1122843 (N.D. Cal. April 14, 2022), *Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 791151, (N.D. Cal. April 6, 2016), or *Laatz*, 2025 WL 405702, in which the courts sealed information that was nonpublic and concerned the underlying functionalities and code of the designating party's systems. Here, the documents at issue do not describe Uber's code or how its deactivation processes are operationalized and, the information that is included has been made public either by Uber itself or at trial. *E. W. Bank v. Shanker* is likewise inapposite because the documents in that case contained sufficient information that could allow another to replicate the designating party's banking service— which had in fact occurred. 2021 WL 3112452, at *17 (N.D. Cal. July 22, 2021). However, Uber has not shown that the information contained in the documents at issue is sufficiently specific that anyone could "replicate" Uber's deactivation systems, particularly when substantially more information detailing what these systems are and how they function is already available in the public record. Finally, Uber's reliance on *T1 Payments LLC v. New U Life Corp.* is misplaced because, as the court emphasized "the Court [wa]s not deciding whether documents should be sealed." 2022 WL 1472665, at *4 (D. Nev. May 9, 2022) (applying *Glenmede* standard for evaluating confidentiality designations which accounts, among other things, for embarrassment and which differs from the "good cause" standard for sealing).

Uber claims the Court previously granted its motions to seal "similar" materials," ECF 6171, 6075, but the materials covered by those (unopposed) motions are now in the public record. *See WHB 823* Trial Ex. P-04751, P-00536, P-04746. Though this matter is not currently before the Court, those materials should be unsealed. In any event, Uber failed to show how it will be harmed by disclosure of these specific documents. The request to seal should be denied.

k.      **Uber's Relationship with Nonprofits**

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

Uber claims documents related to its relationships with nonprofits must be sealed to prevent its competitors from leveraging this information for their own commercial gain. The assertion that Uber's nonprofit relationships must be kept secret because they are commercially valuable is at odds with Uber's public representations that it works with nonprofits out of a genuine desire to prevent sexual assault.[31]  Regardless, these materials are not sealable.

These relationships are no secret because Uber repeatedly touts its relationships with nonprofits, including at trial. While Uber cites *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, there is no indication that the designating party publicized the information about is "consulting relationships" that it then asked the Court to seal. 2015 WL 12976921, at *3 (N.D. Cal. Mar. 31, 2015). Here, information about the organizations Uber works with, the Uber employees charged with managing these relationships, funding amounts, and structure, are all part of the public domain.

For example, ECF 1135 Ex. 35, highlights Uber's Driving Change funding strategy for the 2020–2021 fiscal year. This information is stale because Uber has paid out Driving Change grants for that year and introduced *no evidence* that any non-public elements of the strategy in this document is representative of its current practice. *See* ECF 2308 at 1–2 (denying motions to seal documents that were several years old absent evidence they were representative of Uber's "current practice."). Just last month Uber withdrew its sealing request for ECF 6401-118, which details Uber's analysis of Driving Change funding requests for the subsequent year and covers the same nonprofit organizations. Additional documents related to Uber's Driving Change grant process and its relationships with these nonprofit organizations are also part of the public record in this case. *See Dean* Trial Ex. P-00242, P-00397; ECF 6401-86 at 410:2–9; ECF 6401-83 at 268:10–24. Similarly, ECF 1135 Ex. 53 is a nine year old email that identifies Uber's Driving Change partners and Uber's plans to hold listening sessions with those partners and educate Uber's executive leadership team, support agents, and drivers. This information is unquestionably stale, and it has all been made public by Uber.[32] It is not sealable.

---

[31] https://www.uber.com/us/en/newsroom/driving-change-2023/ ("At Uber, we are dedicated to doing our part to address this societal challenge… Supporting and investing in the work of organizations is a critical part of ending gender-based violence in our communities.").

[32] https://www.uber.com/us/en/newsroom/progress-driving-change-end-sexual-assault/

JOINT OMNIBUS MOTION TO SEAL                          Case No. 3:23-md-03084-CRB (LJC)

Uber cannot explain how nonprofit-related materials, which include information that is several years old,[33] public,[34] or highly general, could be used to gain a competitive advantage over Uber. Uber's reliance on ECF 4701 is misplaced. While the Court granted Uber's unopposed request to seal documents related to nonprofits, *see* ECF 4394-1, this decision predates the *Dean* trial during which Uber employee Emilie Boman testified about Uber's nonprofit relationships at length and numerous documents detailing the nature, scope, and financing of those relationships were introduced into evidence.[35] Indeed, the very purpose of the instant Motion is to "present[] narrowed requests for sealing … accounting for subsequent public disclosures (including but not limited to the *Dean* trial)." ECF 5676 at 1. Uber's heavy-handed requests to seal entire documents that contain information already made public flies in the face of this admonition. These requests should be denied.

### l.     Risk Assessments

Uber cannot establish that the documents it characterizes as "risk assessments" are sealable. While Uber points to several cases in which business-related information (though not risk assessments) were sealed, none of these decisions compel sealing in this instance. *Boston Retirement*, 2024 WL 665647 is inapposite. Not only did that case involve highly detailed financial information not present here, but the documents were sealed because they were submitted to the court for *in camera* review of privilege determinations—and the court determined that the materials were privileged such that even the *plaintiffs* could not access the materials. *Id.* at *3–8. *In re Qualcomm Litig.*, is also unhelpful because the information to be sealed in that case consisted of licensing information and information subject to nondisclosure agreements with third parties. 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017). Finally, *Jones* does not provide that business information is automatically sealable. 2023 WL 7440303, at *3–4. On the contrary, *Jones* involved narrow, line-by-line redactions of sensitive

---

[33] ECF 1135 Ex. 13 (12 years old); ECF 1135 Ex. 36 (9 years old)

[34] *Compare* ECF 1135 Ex. 15 *with* U.S. Safety Reports (2017–2018, 2019–2020, 2021–2022), https://www.urban.org/sites/default/files/publication/99330/nsvrc_helpingindustries_2.pdf, https://www.thestreet.com/politics/uber-does-right-thing-14589752, and https://mashable.com/article/social-good-innovations-2018; *compare* ECF 1135 Ex. 18 *with Dean* Ex. P-00242, *Dean* Tr. 2454:20–2455:25, 2524:4–13, ECF 5113-1 at 422–44; *compare* ECF 1135 Ex. 35 *with Dean* Ex. P-0024, P-00397, Dkt. 6401-118; *compare* ECF 2518 Ex. 53 *with Dean* Ex. P-00397, P-00242, P-00395, *Dean* Tr. 844:22-25, ECF 6401-118.

[35] *Dean* Tr. 2450:12–14, 2452:15–2455:5, 2456:13–2461:24, 2465:8–2467:13, 2470:2–2473:12, 2474:3–2481:11, 2520:16–2521:4, 2523:3–2527:2, 2530:9–14, 2664:9–12; ECF 5113-1 at 422–44, ECF 6401-118, *Dean* Trial Ex. P-00397, P-00242, P-00395.

57

JOINT OMNIBUS MOTION TO SEAL                                    Case No. 3:23-md-03084-CRB (LJC)

financial information including negotiations with professional athletes and sponsors as well as investor involvement in decision-making. *Id.*; *see also* ECF 1818 at 3, ECF 2308 at 1–2.

Turning to the documents Uber characterizes as "risk assessments," specifically, none of these documents are sealable. To start, many of these documents are not risk assessments at all,[36] are stale (7–10 years old),[37] or are public.[38] *Lee*, 2019 WL 13412548, at *1 (denying motion to seal information more than three years old); *Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 2006354, at *3–4 (N.D. Cal, Mar. 6, 2015) (denying motion to seal materials where "the same or similar information [] has already been made available for public viewing."). ECF 2518 Ex. 122, which Uber highlights, is emblematic of these issues across this document set. This 10-year old slide deck is not a risk assessment but an overview of Uber's Safety Intelligence team, much of which is replicated exactly in publicly accessible documents.[39] This outdated, "non-substantive" material is not sealable. *See* ECF 2308 at 1–2.

### C.    Conclusion

Plaintiffs respectfully request that the Court find there is good cause to seal Plaintiff PII and deny Uber's requests to seal or redact materials for lack of good cause *or* for failing to narrowly tailor its redactions to only sealable material in accordance with Civil L.R. 79-5.

[36] ECF 2518 Ex. 11 (eight year old email listing serious interpersonal conflict rate for 2018); ECF 2518 Ex. 54 (email containing text of a letter to the editors of BuzzFeed News); ECF 2518 Ex. 187 (10 year old email identifying Gus Fuldner as the "insurance guy"); ECF 2686 (quotations from joint letter brief describing Safety Report, ISSP, and lack of fingerprinting in background checks).

[37] ECF 2518 Ex. 11 (8 years old); ECF 2518 Ex. 44 (7 years old); ECF 2518 Ex. 54 (10 years old); ECF 2518 Ex. 85 (9 years old); ECF 2518 Ex. 86 (8 years old); ECF 2518 Ex. 87 (9 years old); ECF 2518 Ex. 22 (7 years old); ECF 2518 Ex. 122 (10 years old); ECF 2518 Ex. 187 (10 years old).

[38] *Compare* ECF 2518 Ex. 11 *with* U.S. Safety Reports (2017–2018, 2019–2020, 2021–2022); *compare* ECF 2518 Ex. 60 *with Dean* Ex. P-01701, P-00759; *compare* ECF 2518 Ex. 85 *with Dean* Tr. 270:11–272:25.; *compare* ECF 2518 Ex. 86 *with Dean* Ex. P-00759; *compare* ECF 2518 Ex. 87 *with Dean* Ex. P-01572, P-00689, P-00176; *compare* ECF 2518 Ex. 122 *with Dean* Ex. P-00681; *compare* ECF 2518 Ex. 135 *with* https://www.buzzfeednews.com/article/williammalden/meet-the-guy-who-solved-ubers-insurance-problem; ECF 2518 Ex. 187 *with Dean* Ex. P-02702, P-01698, P-01572, P-00304; ECF 2686 *with Dean* Tr. 2791:19–2792:22; *compare* ECF 2686 *with* U.S. Safety Reports (2017–2018, 2019–2020, 2021–2022), https://www.uber.com/us/en/newsroom/industry-sharing-safety/, and *Dean* Ex. P-01419, P-01457.

[39] For example, the goal to "Provide actionable data & insights that paints a complete picture of Uber's safety landscape" appears in both ECF 2518 Ex. 122 and Dean Trial Exhibit P-00681. Similarly, both documents identify "↑Data Accuracy ↑ Data Veracity ↑ Data Completeness ↓Data Latency" as KPIs or success metrics. *Id.* This document also describes basic data science principles (e.g., "garbage in, garbage out") that are not proprietary to Uber. *Compare id. with* https://towardsdatascience.com/garbage-in-garbage-out-721b5b299bc1/

58

JOINT OMNIBUS MOTION TO SEAL                          Case No. 3:23-md-03084-CRB (LJC)

DATED:  July 16, 2026

Respectfully submitted,

By: /s/ *Michael B. Shortnacy*

MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400

ALLISON M. BROWN (Admitted *Pro Hac Vice*)
alli.brown@kirkland.com
JESSICA DAVIDSON (Admitted *Pro Hac Vice*)
jessica.davidson@kirkland.com
CHRISTOPHER D. COX (Admitted *Pro Hac Vice*)
christopher.cox@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

Dated: July 16, 2026

/s/            *Sam Hoefs*

SAM HOEFS (Admitted *pro hac vice*)
**NIGH GOLDENBERG RASO & VAUGHN, PLLC**
60 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 445-0202
Email: shoefs@nighgoldenberg.com

MARLENE J. GOLDENBERG (Admitted *pro hac vice*)
**NIGH GOLDENBERG RASO & VAUGHN, PLLC**
14 Ridge Square NW, Third Floor
Washington, D.C. 20016
Telephone: (202) 928-2228

Email: mgoldenberg@nighgoldenberg.com

ANDREW R. KAUFMAN (*Admitted Pro Hac Vice*)
SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com
        akaufman@girardsharp.com

RACHEL B. ABRAMS (Cal Bar No. 209316)
ADAM B. WOLF (Cal Bar No. 215914)
SARA B. CRAIG (Cal Bar No. 301290)
**PEIFFER WOLF CARR KANE CONWAY**
 **& WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415.766.3544
Facsimile: 415.840.9435
Email: rabrams@peifferwolf.com
        awolf@peifferwolf.com
        scraig@peifferwolf.com

ROOPAL P. LUHANA (*Admitted Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com


*Co-Lead Counsel for Plaintiffs*

JOINT OMNIBUS MOTION TO SEAL                    Case No. 3:23-md-03084-CRB (LJC)

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: July 16, 2026

/s/ Michael B. Shortnacy
Michael B. Shortnacy

61