Docusign Envelope ID: 3CE7E3DB-4B43-8F5B-83CB-214BDDFD56B2

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (Pro Hac Vice admitted)
alli.brown@kirkland.com
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DECLARATION OF BROOKE ANDERSON IN SUPPORT OF DEFENDANTS' OMNIBUS MOTION TO SEAL** |
| This Document Relates to: | |
| ALL ACTIONS | Judge: Hon. Charles R. Breyer<br>Courtroom: 6-17th Floor |

**DECLARATION OF BROOKE ANDERSON**

I, Brooke Anderson, having personal knowledge of the following state:

1. I am Senior Director, Communications, at Uber. I was first employed by Uber in March 2015 and have held several positions since then, including Midwest Public Affairs Lead; Head of Global Safety Communications; Director, Communications; and Head of Product Communications. Throughout my tenure at Uber, I have led public relations and external communications concerning consumer, brand, services, safety, social impact, and public affairs. I offer this Declaration in the above-captioned matter in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's Omnibus Motion to Seal. The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called.

2. Uber's communications team works with various teams at the company to develop strategy for external communications, including communications concerning products, services, safety, social impact, and public affairs. This is often an iterative process that requires extensive input from company employees with expertise in their respective fields. Communication strategies and draft public statements evolve as they are finalized and depend on candid discussions among Uber employees. These discussions involve internal company data, research, analysis, and strategy developed at great expense. Uber takes multiple steps to ensure that these internal discussions remain private to Uber and confidential, including by making these communications available only to those internal Uber employees who need to participate in, know about, work from, analyze or prepare the document. These documents are restricted based on document access procedures.

3. Public disclosure of documents revealing Uber's communication strategy would chill future internal deliberations necessary for strategic decision-making. Arriving at an effective communications strategy requires employees to openly debate options, test ideas, and exchange

2

Docusign Envelope ID: 3CE7E3DB-4B43-8F5B-83CB-214BDDFD56B2

drafts and comments that may be incomplete, contrary to Uber's ultimate position, or otherwise not reflective of Uber's final views. Uber employees would be less willing to provide this kind of candid, iterative input if they believed their preliminary thoughts, internal disagreements, or draft materials might be made public. This harm would occur regardless of when the document was created.

4. This chilling effect is especially harmful where the internal discussions concern whether and how to share more information, data, or analysis with the public. If Uber employees know that internal discussions weighing the risks and benefits of greater transparency, sharing internal data, or adopting more disclosure-friendly approaches will be made public, they will be less willing to propose or fully debate those approaches—including ones that would ultimately result in more candid or transparent communications to the public. This would harm not only Uber, but the broader public interest in candid corporate deliberation over safety-related communications, because companies will be discouraged from considering and adopting more transparent strategies if doing so risks having those internal deliberations exposed and used against them.

.

5. Additionally, publishing internal communications without the benefit of the full context of the discussion could be used to unfairly harm Uber's reputation. This harm would occur regardless of when the document was created.

6. I  have reviewed the documents in Defendants' Omnibus Motion to Seal that fall under the category of "Communication Strategy." I address two of those documents below as examples of the matters I described in paragraphs 1-5 of this declaration.

7. ECF 1135, Ex. 45, is an example of a document that reveals Uber's confidential external communications strategy. Ex. 45 is an email chain between several Uber employees discussing

3

DECLARATION OF BROOKE ANDERSON ISO OF DEFENDANTS' OMNIBUS MOTION TO SEAL

Case No. 3:23-MD-3084-CRB

Docusign Envelope ID: 3CE7E3DB-4B43-8F5B-83CB-214BDDFD56B2

strategies for communicating to the public Uber's pick up safety protocol. The employees that provide input on this communication strategy are experts in their respective fields and business leaders at the company, including Rebecca Messina, then-Global Chief Marketing Officer; Kate Parker, then-Head of Safety & Insurance Brand and Initiatives; Barney Harford, then-Chief Operating Officer; Matt Kallman, then-Vice President of Communications; and Gus Fuldner, then-Vice President, Safety & Insurance. Public disclosure of this email chain would harm Uber's competitive advantage by revealing strategy and business decision making processes concerning public communications regarding safety. Competitors could leverage the expertise, analysis, and data revealed in these communications to gain advantage in the marketplace without having to spend the resources Uber spent. Moreover, disclosure would chill candid deliberations among Uber employees concerning safety communications for fear that their words will become public.

8. Another example is ECF 2518, Ex. 94. This confidential document is a draft version of a brief describing Uber's plans for implementing its safety brand platform and communicating its initiatives both internally and externally. I am listed as the point of contact for Safety Communications. Ex. 94 discusses internal strategy behind specific safety features and initiatives, including those relating to driver screening. Ex. 94 also includes comments from Uber employees and the non-public rationale for Uber's safety brand platform, including candid discussion of the risks and benefits of a more transparent, data-driven approach to public safety reporting. Public disclosure of this document would harm Uber by discouraging this kind of candid internal weighing of more transparent disclosure options, since employees would be less willing to openly consider or debate innovative approaches involving greater public disclosure if those preliminary discussions could later be made public and used against their company.

I declare under penalty of perjury that the foregoing is true and correct.

4

Docusign Envelope ID: 3CE7E3DB-4B43-8F5B-83CB-214BDDFD56B2

Executed on _July 16, 2026_____.                    By: _Brooke Anderson____

DECLARATION OF BROOKE ANDERSON ISO OF DEFENDANTS' OMNIBUS MOTION TO SEAL

Case No. 3:23-MD-3084-CRB