RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:      Hon. Lisa J. Cisneros |
| | Courtroom:  G – 15th Floor |

MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
    oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-2-

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

It is widely recognized that, as the responding party, Uber is in the best position and generally entitled to identify the appropriate document custodians. Uber has agreed to 37[1] of the 55 custodians for both the JCCP and MDL. In an effort to provide Plaintiffs with unique, relevant information, Uber has identified 18 additional custodians to fill the remaining slots.[2] Those custodians include coverage for the Industry Safety Sharing Program (ISSP); contacts with third-party advocacy organizations; independent driver screening and background checks, including contacts with third-party background check providers; women's and personal safety operations and strategy; safety compliance; regulatory operations and compliance; app safety feature development; contacts with law enforcement; operations of Uber's U.S. rides business; independent driver misconduct complaints and deactivation reviews; and business growth and expansion. If Uber's proposed custodians are not included within the 55 cap, Plaintiffs will not receive certain documents they have requested in written discovery, which are contained within these custodians' files.

Without addressing any of the custodians Uber has proposed,[3] Plaintiffs insist upon 18 different proposed custodians who do not provide coverage related to the relevant subject matters described above. Instead, Plaintiffs propose employees such as Uber's Chief Legal Officer, Tony West, who provides legal advice across the business, senior executives rejected by the JCCP Court whose work spans across Uber's business and well beyond issues relevant to this Action, and other individuals whose coverage is already addressed by more appropriate custodians.[4] The agreed list of custodians already includes over a dozen individuals who were deeply involved in drafting, reviewing, publishing, and/or publicizing Uber's U.S. Safety Reports. Additionally, the agreed list

---

[1] Uber agrees to the inclusion of Brooke Anderson, reducing the dispute to 18 custodians.

[2] MDL and JCCP Plaintiffs previously proposed 17 of the 18 custodians Uber now proposes. The only exception, Jenny Luu, was added by Uber to provide ISSP related documents. Shortnacy Decl., ¶¶3-5.

[3] Plaintiffs have repeatedly stated that they may seek leave to file a reply brief, even though their current filing stands at over 750 pages. Plaintiffs cannot use their strategic decision not to address any of Uber's 18 proposed custodians individually or address issues like ISSP, within those 750+ pages, as the basis to request that the Court reopen briefing.

[4] Plaintiffs' Motion inexplicably does not include any specific explanation on an individual level as to why Plaintiffs believe the Court should compel production from Plaintiffs' proposed custodians. Plaintiffs' reasoning for particular custodians can be found only by digging through, and trying to piece together, their hundreds of pages of exhibits.

-3-

includes a number of senior executives, including current and former CEOs, Uber's Chief Marketing Officer and SVP of Policy and Communications, and Uber's SVP of Safety and Core Services; executives involved in marketing, communications, operations, customer relations, driver growth and development, data science, and dashcams; as well as individuals closer to individual rider safety incident reporting. The agreed custodians also include direct reports of Plaintiffs' proposed custodians and executive employees to whom Plaintiffs' proposed custodians report. An employee is not appropriate as a custodian merely because they had some connection to the events in question.

Plaintiffs have not come close to demonstrating that Uber's 18 proposed custodians are "manifestly unreasonable," and Plaintiffs cannot credibly claim that Uber's 18 proposed custodians are insufficient, such that any of Plaintiffs' proposed custodians should replace any of Uber's proposed custodians. For these reasons, Plaintiffs' Motion should be denied.

## LEGAL STANDARD

"A responding party is generally entitled to select the custodians most likely to possess responsive information." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.,* 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018).[5] This is because a responding party "is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case." *EpiPen,* 2018 WL 1440923, at *2; *see also Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *4 (N.D. Cal. Sept. 29, 2022); *The Sedona Principles Third Edition,* 19 SEDONA CONF. J. 1, 119–20 (2018) (the responding party is in the best position to "determin[e] what is relevant and proportional under the circumstances for each matter").[6]

The party seeking to compel bears the initial threshold burden of showing that a disputed

[5] *See also, e.g.*, *B&G Foods N. Am., Inc. v. Embry*, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024); *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 2024 WL 628021, at *8 (S.D. Cal. Feb. 14, 2024); *Servicios Funerarios GG, S.A. de C.V. v. Advent Int'l Corp.*, 2023 WL 7332836, at *2 (D. Mass. Nov. 7, 2023); *HNA Sweden Hospitality Mgmt. AB v. Equities First Holdings, LLC*, 2021 WL 11961093, at *18 (S.D. Ind. Nov. 1, 2021); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).

[6] *See also, e.g.*, *Servicios Funerarios*, 2023 WL 7332836, at *2; *HNA Sweden*, 2021 WL 11961093, at *18; *Houston v. Papa John's Int'l, Inc.*, 2020 WL 6588505, at *2 (W.D. Ky. Oct. 30, 2020); *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, NA.,* 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017).

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY
Case No. 3:23-MD-3084-CRB

custodian likely possesses uniquely relevant information that is not available from the sources already designated. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021); *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020).[7] "[T]he fact that a person may have had *some* connection to the events in question does not automatically mean that such person must be included as an ESI custodian." *Enslin v. Coca-Cola Co.,* 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (emphasis added).[8] Courts normally do not designate custodians unless responding parties' selections are "manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient." *Firefighters' Ret. Sys.,* 2018 WL 276941, at *4.[9]

The scope of civil discovery is not limitless. *See, e.g.*, *Fashion Nova LLC v. Citizens Ins. Co. of Am.*, 2023 WL 8872092, at *3 (C.D. Cal. Nov. 8, 2023). Rather, discovery is limited to non-privileged information that is both relevant to a claim or defense and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. PROC. 26(b)(1);[10] *see also* ECF 639 at 2:14–15 (custodian requests must be, *inter alia*, "proportionate considering the importance of the information").

---

[7] *See also, e.g.*, *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2024 WL 3174874, at *4 (S.D. Cal. June 25, 2024); *B&G Foods*, 2024 WL 626962, at *3; *Servicios Funerarios*, 2023 WL 7332836, at *2; *EpiPen,* 2018 WL 1440923, at *2; *Mortg. Resol. Servicing*, 2017 WL 2305398, at *2; *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013).

[8] *See also, e.g.*, *Lifescan, Inc. v. Smith*, 2022 WL 20853087, at *6 (D.N.J. July 29, 2022); *Nupson v. Schnader Harrison Segal & Lewis LLP*, 2021 WL 1293557, at *8 (E.D. Pa. Apr. 7, 2021); *Fort Worth*, 297 F.R.D. at 107–08.

[9] *See also, e.g.*, *Servicios Funerarios*, 2023 WL 7332836, at *2; *Lifescan*, 2022 WL 20853087, at *10; *HNA Sweden*, 2021 WL 11961093, at *18; *EpiPen,* 2018 WL 1440923, at *2; *Mortg. Resol. Servicing*, 2017 WL 2305398, at *2.

[10] Plaintiffs improperly rely on the outdated "reasonably calculated" language, which was removed in 2015 because it "has been used by some, incorrectly, to define the scope of discovery." FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment; *see, e.g.*, *San Diego Unified Port District v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2017 WL 3877731, at *1 (S.D. Cal. Sept. 5, 2017) ("the *Oppenheimer Fund* definition, like the version of Rule 26(b)(1) that preceded the 2015 amendments, is now relegated only to historical significance").

-5-

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

This Court ordered that, with respect to custodians, "[t]he parties shall pay particular attention to concerns regarding duplicative and cumulative discovery." ECF 639 at 3:2–3. Indeed, a court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative[.]" FED. R. CIV. PROC. 26(b)(2)(C). When a proposed custodian has limited involvement in relevant subject matters and is duplicative, "concerns regarding cumulative discovery are valid, and narrowing search terms and de-duplicating documents will not mitigate the burden." *See, e.g.*, *Rusoff v. Happy Grp., Inc.*, 2023 WL 114224, at *5 (N.D. Cal. Jan. 5, 2023); *see also, e.g.*, *Handloser*, 2020 WL 7405686, at *3 ("a narrowed list of search terms and de-duplication techniques . . . are insufficient by themselves" to justify disputed custodians).

As for senior executives, "mere speculation that one's position as a senior executive might increase the relevance of that individual's files is *not* a basis for designating that individual as a custodian." *EpiPen,* 2018 WL 1440923, at *2 (emphasis added).[11] Rather, courts consider the "executive's level of involvement in discussions and decisions serving as the basis for the claims at issue in the case" and "whether the executive's relevant ESI is unique and would not be available from other designated custodians." *EpiPen,* 2018 WL 1440923, at *2.[12] For example, in *Sugg v. Virtusa,* 2020 WL 6585872, at *2 (D.N.J. Nov. 10, 2020), the court declined to compel designation of certain senior executives, reasoning that they would be duplicative of their direct reports and subordinates whom the defendant had already designated. The same is true here, and Plaintiffs have offered nothing more than conclusory assertions of relevance and citations to articles and produced documents discussing irrelevant or tangentially related matters (which, in any event, are already covered by the 37 agreed custodians).

---

[11] *See also, e.g.*, *Lauris v. Novartis AG,* 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) (requiring "more than mere speculation to order Defendants to include the apex custodians in the search protocol"); *Mortg. Resolution Servicing*, 2017 WL 2305398, at *3 ("To the contrary, it is equally plausible to assume that because of his senior position, he would have less information about specific transactions than employees lower in the hierarchy.").

[12] *See also, e.g., Servicios Funerarios,* 2023 WL 7332836, at *3; *Harris v. Union Pac. R.R. Co.,* 2018 WL 2729131, at *4 (D. Neb. June 6, 2018); *Lutzeier v. Citigroup Inc.,* 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015).

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

## **ARGUMENT**

### **A.  Uber's Proposed Custodians Offer Superior Coverage of Core Issues**

In proposing custodians, Uber looked to individuals who are likely to have unique responsive documents on subject matters not already covered by the 37 agreed custodians, and with one exception, are custodians whom the MDL and JCCP Plaintiffs themselves proposed and have long been part of the parties' dialogue. Smith Decl., ¶¶3-11; Shortnacy Decl., ¶¶3-5.

For example, Plaintiffs' proposal does not include a single custodian with deep involvement in the ISSP, even though "the Court order[ed] that Plaintiffs' review their custodian list ... to assure that they are taking reasonable steps to gather ISSP-related information through ordinary party discovery." ECF 1068 at 3:9–11.[13] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. A; *see also* Lyft Letter (ECF 1530) (stressing importance of including Ms. Luu as a custodian). Likewise, Plaintiffs have subpoenaed multiple third parties for discovery, but have removed or omitted Uber's points of contact with these same third parties from their proposal. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. A.

Uber's proposed custodians also fill in other substantive gaps in Plaintiffs' proposal. For example, Plaintiffs inexplicably removed multiple custodians with roles and responsibilities directly related to women's safety or prevention of interpersonal conflict. Uber proposes adding three back: ▮▮▮▮▮▮▮▮▮▮▮. *Id.* Uber also proposes including three custodians whose roles include development of safety features for the Uber app at different times: ▮▮▮▮▮▮▮▮▮▮▮. *Id.* Additionally, Uber proposes including ▮▮▮▮▮▮▮▮▮▮▮. *Id.*

Uber's proposed custodians also close some temporal gaps in coverage from Plaintiffs' list. For instance, Uber proposes adding ▮▮▮▮▮▮▮▮▮▮▮, a key and relevant role. *Id.* Plaintiffs also removed custodian ▮▮▮▮▮▮▮▮▮▮▮

---

[13] In fact, Plaintiffs do not even mention the ISSP within their 750+ page filing.

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

driver deactivation reviews. *Id.* Likewise, Uber proposes multiple custodians responsible for ████████████████████████████████████████████████████████████. *Id.* Uber further proposes four custodians related to operations, another key organization within Uber relevant to the claims and defenses: ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████. *Id.*

Uber therefore respectfully requests that the Court approve these 18 custodians Uber has proposed to complete the set of 55 document custodians for the MDL and JCCP. Uber identified custodians likely to possess information not already sufficiently addressed by the 37 agreed custodians. Compared to Plaintiffs' duplicative and irrelevant proposed custodians, Uber's 18 proposed custodians provide superior coverage for issues that are important for resolving issues in this Action.

### B. Plaintiffs' Proposed Custodians Whom the JCCP Court Rejected Are an Improper End-Run and Should Be Rejected for the Same Reasons

While Uber *proposed* every custodian JCCP Plaintiffs successfully moved to compel during the conferral process, MDL and JCCP Plaintiffs re-introduced for their joint list *multiple* custodians rejected by the JCCP Court. In particular, Plaintiffs propose four custodians specifically rejected by the JCCP Court in the face of two motions to compel, and two custodians related to lobbying activities, a subject matter the JCCP Court rejected in response to another motion to compel. Further, the JCCP Court's logic in rejecting these motions to compel applies equally to the MDL, and thus provides independent bases for denying Plaintiffs' instant motion, beyond the impropriety of including these custodians on a list for both the JCCP and MDL.

Most recently, the JCCP Court rejected Plaintiffs' motion to compel VP of Applied Science,

-8-

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

Frank Chang. *See* Ex. C. The JCCP court relied on *Epipen* and *Facebook*, in part, "because of the pendency of the MDL proceeding involving similar cases" and "the parties are currently negotiating a coordination order that would govern discovery in both the JCCP and MDL[.]" *Id.* at 4 n.1. The JCCP Court found Mr. Chang cumulative and duplicative of his direct report, Uber's Director of Data Science, Katherine McDonald. Ms. McDonald, an agreed custodian, held "direct and primary responsibility for maintaining safety incident data … [and] was directly involved in the development of Uber's ... Taxonomy." *Id.* at 5-6; *see also* Chang Decl., ¶¶8-10. ██████████████████████████████████████████████████████████. Chang Decl., ¶9. Additionally, the JCCP Court agreed that Mr. Chang's supervisor, agreed custodian Gus Fuldner, SVP of Safety and Core Services and Executive Leadership Team ("ELT") member, would have been party to relevant communications that Ms. McDonald may not have. *Id.* Plaintiffs here fail to support their own relevance arguments as to Mr. Chang, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. B.

As to SVP of Global Operations, Ryan Graves, the JCCP Court denied Plaintiffs' motion because they could not establish a connection between Mr. Graves and "any … issues relevant to the proceeding." *See* Ex. D. MDL Plaintiffs likewise fail to do so, ████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. B.

The JCCP Court noted SVP of Mobility and Business Operations, Andrew Macdonald, the JCCP Court had some involvement in safety measures, but denied Plaintiffs' motion because of his global role and scope, and because Uber agreed to designate its former and current U.S.-focused Operations leads, and because Dennis Cinelli, Rachel Holt, and Camiel Irving would provide "more comprehensive, targeted, and relevant documents than Mr. Macdonald's files." *See* Ex. D. Mr. Cinelli and Ms. Holt are agreed custodians; Uber proposes Ms. Irving as a custodian. Plaintiffs'

-9-

evidence contradicts none of that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. B.

As to SVP of Business, Emil Michael, the JCCP Court found that his close relationship with Mr. Kalanick "does not establish he is a relevant custodian," that he was the driving force behind Uber capital campaigns and not its policies, and that there is no nexus between certain "embarrassing incidents" and the issues in the litigation. *See* Ex. D. Plaintiffs' effort to support their proposal is limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. B. None of this suggests Mr. Michael will have unique relevant information in this Action.

Further, Plaintiffs advance the same, previously rejected arguments regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 1137-10. The JCCP Court denied Plaintiffs' motion to compel, finding under the federal *Noerr-Pennington* doctrine, "[t]he Court is unpersuaded that Plaintiffs' allegations regarding Uber's lobbying activities … render their requests for lobbying documents relevant to the issues or reasonably likely to lead to the discovery of admissible evidence." *See* Ex. E. Under the *Noerr-Pennington* doctrine, petitioning the government (i.e., lobbying) is absolutely protected by the First Amendment and cannot be the basis for liability. *E.g.*, *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535-41 (9th Cir.); *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1059-62 (9th Cir. 1998). It is true that the *Noerr-Pennington* doctrine is not a total bar on discovery, but as the JCCP court recognized, the doctrine bears on relevance, rendering lobbying outside the scope of discovery in the absence of an independent basis for relevance. Plaintiffs have identified no basis for relevance that does not involve holding Uber liable for lobbying. They argue "Uber's lobbying activities are relevant because Uber lobbied extensively to avoid regulations" related to safety. Even

-10-

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

if true, this theory of relevance is directly precluded by *Noerr-Pennington*. *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) ("That a private party's political motives are selfish is irrelevant [to the application of *Noerr-Pennington*]."). Plaintiffs' only other evidence for either custodian is ███████████████████████████████████████████ ████████████████ *See* Ex. B.

Uber therefore respectfully requests that the Court deny Plaintiffs' motion to compel the production of documents from these six custodians previously rejected directly or by subject matter by the JCCP Court. It improper for Plaintiffs to include custodians rejected by the JCCP Court for a joint JCCP and MDL custodian list. The evidence Plaintiffs cite to support designating these custodians only underscores that these custodians are duplicative and not relevant to this litigation. Plaintiffs' efforts to advance the same arguments rejected by the JCCP Court are equally unavailing.

### C. Plaintiffs' Other Proposed Custodians Should Also Be Rejected

As this Court previously emphasized, a critical proportionality factor under Rule 26(b)(1) is the importance of the discovery to resolving the issues in the case. *See* ECF 639 at 2. Plaintiffs' remaining proposed custodians are not important to resolving the issues because they provide information in subject areas well covered by other custodians, or their involvement in relative issues was more tangential than central, and Plaintiffs exclude custodians related to important topics, including those specifically identified by the Court.

Over two weeks after Plaintiffs' deadline to disclose their proposed custodians and after the parties met and conferred, Plaintiffs proposed Uber's Chief Legal Officer, Tony West. Shortnacy Decl., ¶10. This proposal violated the parties' agreement, reported to the Court on July 8, 2024: Uber agreed to Jodi Kawada Page as an MDL custodian, and Plaintiffs agreed to remove Tony West from consideration. *Id.* Plaintiffs take Mr. West out of context to claim ████████████████ ██████████████████████ ECF 1137-10; *s*ee Ex. B. Further, ████████████████████ █████████████████████████████████ Fuldner Decl., ¶13. Moreover, reviewing the files of Uber's Chief Legal Officer requires a heightened privilege review, which is unnecessary and unduly burdensome given that any relevant non-privileged emails between Mr. West and relevant

-11-
UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY
Case No. 3:23-MD-3084-CRB

business actors will be captured in those custodians' files.

Plaintiffs also seek the files of senior executive Meghan Joyce, who has a broad scope of responsibility and is not appropriate for this litigation. Plaintiffs will already be receiving the files from a number of custodians involved in Safety Operations, including Cory Freivogel, Greg Brown, and Roger Kaiser, and Uber has proposed ███████████████████████████████████ ████████████████████████████████ *Id.* at ¶19. Plaintiffs' support for including Ms. Joyce consists of ███████████████████████████████████████████████████ ███████████████████████. *See* Ex. B.

Plaintiffs also seek three further custodians related to Uber's capital projects, acquisitions, or business development: David Richter, Cameron Poetzscher, and Ed Baker. Mr. Richter was Mr. Michael's successor, and the substantive arguments that led the JCCP Court to deny Plaintiffs' motion to compel Mr. Michael apply equally to Mr. Richter. Fuldner Decl., ¶6. Employees with deeper involvement in the relevant issues include agreed custodians Andi Pimentel and Phil Cardenas, ████████████████████████████████████████. *Id.* Plaintiffs' other support for including Mr. Richter is ███████████████████████████████████ ██████████████████████████████ *See* Ex. B. As to ██████████████████ ████████████████████████████████. Fuldner Decl., ¶7. Plaintiffs point only to ██ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *See* Ex. B. Mr. Baker is cumulative and duplicative of a number of agreed custodians as to Uber's efforts to increase driver customers. Fuldner Decl., ¶10. Plaintiffs provide only ████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████ ECF 1137-10, 1137-42, 1137-43.

Plaintiffs also seek multiple custodians related to Uber's communications: Matt Kallman, Nairi Hourdajian, and Rachel Whetstone. They are cumulative and duplicative of agreed custodians Brooke Anderson, Tracey Breeden, and Jill Hazelbaker. ██████████████████ ████████████████████████████ Kallman Decl., ¶¶3-4. ██████████████████

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶¶6-8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶10. Plaintiffs' support for including Mr. Kallman consists of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. B. Likewise, Plaintiffs provide insufficient evidence to include Ms. Hourdajian or Ms. Whetstone: for Ms. Hourdajian, ▮▮▮▮▮▮ ▮▮▮▮▮▮ for Ms. Whetstone, ▮▮▮▮▮▮▮▮▮▮ *See* Ex. B.

Lastly, Plaintiffs seek three custodians who are not relevant to this litigation: former CTO Thuan Pham, former Chief Security Officer Joe Sullivan, and former Director of Engineering Mat Henley. Plaintiffs make a number of claims about Mr. Pham, ▮▮▮▮▮▮ *See* Ex. B. ▮▮▮▮▮▮ Fuldner Decl., ¶16. As to Mr. Sullivan, Plaintiffs point only to ▮▮▮▮▮▮ *See* Ex. B.  As to Mr. Henley, ▮▮▮▮▮▮, Plaintiffs provide only ▮▮▮▮▮▮ *See* Ex. B.

Uber therefore respectfully requests that the Court deny Plaintiffs' motion to compel as to these 12 custodians who are cumulative, duplicative, and not relevant to the litigation. As with Plaintiffs' six other proposed custodians, the evidence Plaintiffs cited in support of these proposed custodians served only to demonstrate their lack of involvement in core issues and that they are cumulative of other custodians from whom Uber will be producing documents.

-13-

UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIAL DISCOVERY

Case No. 3:23-MD-3084-CRB

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' motion to compel these 18 duplicative, disproportionate, and irrelevant custodians, and instead adopt Uber's slate of 18 relevant and material custodians likely to possess unique responsive information.

Dated: August 29, 2024

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**
By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY

MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2049 Century Park East, Ste. 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420
        *Attorneys for Defendants*
        UBER TECHNOLOGIES, INC.,
        RASIER, LLC, and RASIER-CA, LLC

-14-