**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| This Document Relates to:<br><br>ALL MATTERS | **JOINT LETTER REGARDING GUS FULDNER DEPOSITION AND APEX ORDER**<br><br>Judge:　　　　Hon. Lisa J. Cisneros<br>Courtroom:　　G - 15th Floor |

Dear Judge Cisneros:

In its March 24, 2025, Order Granting in Part and Denying in Part Corrected Motion for Protective Order Barring Apex Depositions (ECF No. 2600) (the "Order"), the Court ordered that "[n]o later than three business days after the deposition of Gus Fuldner has concluded, the parties shall file either a joint letter or stipulation and proposed order as to whether Fuldner's deposition testimony warrants altering this Order in any way." *Id.* at 8. The parties respectfully submit this joint letter in response.

By: */s/ Roopal R. Luhana*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Randall S. Luskey*
    RANDALL S. LUSKEY (SBN: 240915)
    **PAUL, WEISS, RIFKIND,**
    **WHARTON & GARRISON LLP**
    535 Mission Street, 25th Floor
    San Francisco, CA 94105
    Telephone: (628) 432-5100
    Email: rluskey@paulweiss.com

    ROBERT ATKINS (*Pro Hac Vice*)
    **PAUL, WEISS, RIFKIND,**
    **WHARTON & GARRISON LLP**
    1285 Avenue of the Americas
    New York, NY 10019
    Telephone: (212) 373-3000
    Email: ratkins@paulweiss.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## I.      Additional Limitations on the Depositions of Dara Khosrowshahi and Jill Hazelbaker

### A.      Defendants' Position.[1]

In its March 24, 2025 Order, the Court recognized that "Rule 26(c)(1) protects a party or a person from . . . 'unreasonably cumulative or duplicative' discovery." (ECF No. 2600 at 5 (the "Order").)  Accordingly, while it generally denied Uber's motion for a protective order barring certain "apex" depositions, the Court permitted the parties to submit a joint letter addressing whether the deposition of Uber's Senior Vice President of Safety & Core Services, Gus Fuldner, "warrants altering th[e] Order in any way." (*Id*. at 8.)  On March 26 and 27, Plaintiffs deposed Mr. Fuldner for over 14 hours, during which he was exhaustively questioned about the alleged safety issues that underlie this litigation.  As the member of Uber's Executive Leadership Team ("ELT") responsible for safety and customer support, Mr. Fuldner repeatedly made clear that he was responsible for the decisions related to these subjects and did not defer to either Chief Executive Officer Dara Khosrowshahi or Chief Marketing Officer and Senior Vice President, Communications and Public Policy Jill Hazelbaker in any of his responses.  In light of this testimony, Uber respectfully requests that the Court impose additional limitations on the upcoming depositions of these high-ranking executives by precluding any questioning related to subjects that would be cumulative of Mr. Fuldner's testimony.  And because Mr. Fuldner's testimony strongly suggests that any questioning of Mr. Khosrowshahi about his public statements would also be duplicative of forthcoming testimony from lower-ranking employees, the Court should further consider the propriety of the CEO's deposition after that other discovery is completed.

***Mr. Khosrowshahi***.  Plaintiffs' proffered justification for Mr. Khosrowshahi's deposition is to explore: (1) the basis for his public statements; (2) his supposed role in publishing the US Safety Report; and (3) his alleged involvement with "safety-related initiatives" such as Uber's background checks, use of dashcams, Uber's deactivation policy, tying safety-related goals to ELT compensation, and the Women Rider Preferred program.  (Pls.' Opp'n to Apex Mot. at 4-6.)[2] However, Mr. Fuldner's recent testimony demonstrates that deposing Mr. Khosrowshahi about these subjects  would be "'unreasonably cumulative or duplicative[.]'" (Order at 5 (citing Fed. R. Civ. P. 26(c), 26(b)(2)(c)).)

For example, Plaintiffs' counsel repeatedly questioned Mr. Fuldner about the genesis and substance of the US Safety Report.  (*See, e.g.*, Luskey Ex. 1, 3/26/25 Fuldner Dep. 22:9-37:4 (discussing the thought process and decision-making behind the original Safety Report).)[3]  In his

---

[1] This request is without prejudice to Uber's intent to file objections to the Court's Order on apex depositions with the district court pursuant to Fed. R. Civ. P. 72.

[2] In their apex briefing, Plaintiffs also claim that Mr. Khosrowshahi played a role in a decision on in-app audio recordings. (Pls.' Opp'n to Apex Mot. at 5.)  But Plaintiffs did not even raise this issue at Mr. Fuldner's deposition, and it was already discussed extensively in the deposition of Andi Pimentel.  Moreover, Plaintiffs have the opportunity to discuss this issue again with Sachin Kansal, Ms. Pimentel's supervisor, as well as forthcoming 30(b)(6) witnesses who will be able to best address the issue.  As such, they should not be permitted to question Mr. Khosrowshahi about it.

[3] (*See also* Luskey Ex. 1, 54:9-55:21 ( ███████████████████████████████████ ; *id*. 79:12-80:3 (Mr. Fuldner noting the

1

responses, Mr. Fuldner made explicitly clear that he, not Mr. Khosrowshahi, ███████████ ████████████████████████████████" (*Id*. 186:11-19; *see also id*. 22:20-23:24 (Mr. Fuldner testifying that he was ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Mr. Fuldner explained that he was the individual who " ████████████████████████████████████████████████████████████ (*Id*. 25:4-9.) Because Mr. Fuldner has already "sufficiently cover[ed]" all matters related to the Safety Report, questioning Uber's CEO about those matters would contravene Rule 26's proportionality requirement. *See Arminak* v. *Arminak & Assocs.*, No. CV 16-3382 JAK (SSx), 2017 U.S. Dist. LEXIS 230112, at *16-17 (C.D. Cal. Mar. 30, 2017) (precluding deposition of high-ranking executive where other executives have "already testified" on the subject).

The same is true for the other safety-related initiatives on which Plaintiffs seek to question Mr. Khosrowshahi. For example, Mr. Fuldner's testimony on background checks and driver screening spans nearly *one hundred pages of deposition transcript*, explaining that Mr. Fuldner "███████████████████████████████████████████████████████████████████ ████████████████████████████████" and that Mr. Fuldner had "███ ████████████████████████████████████████████████████████████ (Luskey Ex. 2, 3/27/25 Dep. of Gus Fuldner 114:23-116:2.) ████████████████ ████████████████████████████████ (*See* Luskey Ex. 1, 90:11-94:10, 199:5-16, 236:5-238:16.) Plaintiffs' counsel also repeatedly questioned Mr. Fuldner about his intimate knowledge of Uber's deactivation policies. (*See, e.g.*, Luskey Ex. 2, 179:8-189:7 (beginning a series of questions on deactivation despite noting that Mr. Fuldner "covered that a lot yesterday"); *see also id*. 247:18-251:2 (███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████.

Notably, Mr. Fuldner never suggested that he would defer to Mr. Khosrowshahi on these safety-related subjects or that Mr. Khosrowshahi would have any additional insight into them. Rather, as Mr. Fuldner clearly explained, Mr. Khosrowshahi merely "████████████████████ ████████████████████████████████████████████████████████████" (Luskey Ex. 1, 97:14-98:1.) This testimony makes clear that Mr. Fuldner is responsible for Uber

---

Safety Report identifies the screening and background checks that Uber implements); *id*. 99:20-102:10 (discussing data from the Safety Report published in 2019); *id*. 126:12-132:25 (████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████); *id*. 180:9-191:3 (discussing a memo sent to the ELT (including Mr. Khosrowshahi) that summarized the Safety Report).)

safety programs, that he has the best knowledge of these topics, and that questioning Mr. Khosrowshahi about them would not break any new ground.

Finally, Mr. Fuldner's testimony also strongly suggests that questioning Mr. Khosrowshahi about his public statements would also be cumulative. For example, Mr. Fuldner testified that forthcoming deponents like Brooke Anderson will be able to address the bases for Mr. Khosrowshahi's public statements, explaining that Ms. Anderson is the (metadata) "author" of a document used to prepare Mr. Khosrowshahi for a public appearance. (*See* Luskey Ex. 1, 231:15-232:12.) Although Uber strongly disagrees that Mr. Khosrowshahi's public statements are a legitimate basis for any deposition, any such examination should not duplicate discovery taken from other employees. Indeed, the deposition of Ms. Anderson and other employees may ultimately obviate Plaintiffs' supposed need for testimony from Mr. Khosrowshahi. Because the Court cannot properly determine whether (and, if so, how) any deposition of Mr. Khosrowshahi should proceed until lower-ranking employees like Ms. Anderson are deposed, the Court should preclude Mr. Khosrowshahi's deposition pending completion of that other discovery.

*Ms. Hazelbaker*. Plaintiffs seek to depose Ms. Hazelbaker about her supposed involvement in (1) "████████████████████████████████████████████████ ████████████████████████████" (Pls.' Opp'n to Apex Mot. at 11.) But as previously discussed, Mr. Fuldner covered these very topics in great detail, made clear that he led Uber's initiatives on them, and never suggested that he deferred to any other Uber executive in doing so, let alone Ms. Hazelbaker. Notably, Mr. Fuldner did not just cover Uber's general approach to the issue of background checks (*see, e.g.*, Luskey Ex. 2, 100:13-168:8); he also specifically addressed ████████████████



Accordingly, Ms. Hazelbaker's deposition should be strictly limited to Uber's marketing-related efforts, which are the only subjects that Mr. Fuldner has not already "sufficiently cover[ed]." *Arminak*, 2017 U.S. Dist. LEXIS 230112, at *16-17.

In sum, to avoid "'unreasonably cumulative or duplicative' discovery" (Order at 5), Uber respectfully requests that the Court defer any final determination about the propriety of Mr. Khosrowshahi's examination until other lower-ranking employees are deposed and limit any questioning of Ms. Hazelbaker to the company's marketing and communications-related efforts.[4]

---

[4] Plaintiffs' arguments below largely regurgitate their prior briefing and fail to acknowledge the copious testimony provided by Mr. Fuldner on the broad range of topics for which they claimed to be seeking Mr. Khosrowshahi's and Ms. Hazelbaker's depositions.

### B.      Plaintiffs' Position.

Gus Fuldner's deposition testimony does not warrant altering the Court's Order in the way Uber requests. Uber makes many of the same arguments that this Court previously rejected. Plaintiffs do not have to show that Mr. Khosrowshahi or Ms. Hazelbaker will offer "unique" information. ECF 2600 at 2-3. Regardless, Mr. Fulder could not and cannot answer numerous questions that only Dara Khosrowshahi and Jill Hazelbaker can answer. Plaintiffs' apex opposition brief (ECF No. 2519) cited numerous critical documents that only Khosrowshahi or Hazelbaker can explain.

*Mr. Khosrowshahi*. Evidence shows that Mr. Khosrowshahi was directly involved in developing and implementing Uber's policies and strategies related to sexual assault on Uber's platform. He personally oversaw critical safety-related initiatives and came up with his own ideas to improve safety. When deponent Jenny Luu was questioned regarding what Khosrowshahi meant regarding certain aspects of Uber's deactivation policies, Ms. Luu replied that only Khosrowshahi could provide that information. ECF No. 2519 at 5-6. Moreover, Gus Fuldner ███████████ ████████. He cannot speak to decisions made before then. And "just because another witness has testified regarding the same facts does not mean such testimony would be repetitive." *Kennedy v. Jackson Nat. Life Ins. Co.*, 2010 WL 1644944, at *2 (N.D. Cal. Apr. 22, 2010) (internal citation omitted).  Just so here—simply because Mr. Fuldner may have subjectively testified regarding his knowledge on a particular topic does not render Mr. Khosrowshahi's testimony repetitive or irrelevant. Indeed, Khosrowshahi is the only custodian on 936 documents. Only he can answer questions regarding these documents. Uber relies on *Arminak v. Arminak & Assocs., LLC*, 2017 WL 10402987, at *4 (C.D. Cal. Mar. 30, 2017), but that case applied a different legal standard than the one the Court articulated. *See id.* (holding that "high-ranking officers and officials are not normally subject to deposition absent extraordinary circumstances") (internal quotation marks omitted).

Uber's recounting of Mr. Fuldner's testimony is therefore irrelevant. It is also overstated. For example, Uber states that "Mr. Fuldner made explicitly clear that he, not Mr. Khosrowshahi, was '█████████████████████████'" But Fuldner was reluctant to take accountability for the contents of the report, insisting that "████████████████████ ████████████████" Ex. C at 22:9-16.

Uber also states that Mr. Fuldner "████████████████ █████████████████████████████ But Fuldner did not testify (nor could he) as to how Uber balances profit against safety in evaluating whether to adopt safety initiatives. For example, Mr. Fuldner was asked about an ████████████████████ ████████████████████████████████████ ████████████████████████████████████

*Id*. at 237:16-18. Only Uber's CEO can testify how safety was incorporated into Uber's business model. *See* ECF No. 2600 at 3 ("This is not a slip and fall case where a single plaintiff seeks to depose the CEO of a grocery store chain; rather this is an aggregated litigation that 'concerns important aspects of [Uber's] business model that are plainly the result of high-level executive decisions,' and thus, it is more appropriate for high-level executives to be deposed.").

4

Additionally, Uber states that Mr. Fuldner clearly explained that Mr. Khosrowshahi merely "████████████████████████████████████████████████████████████████████████." But Plaintiffs' counsel did not waste their deposition time of Mr. Fuldner establishing what a different witness knew or didn't know, did or didn't do. Regardless, Fuldner only confirmed Mr. Khosrowshahi's granular involvement in safety: "█████████████████████████████████████████████████████████████████████." Ex. C at 97:21-98:1.

Further, Khosrowshahi's personal, subjective intent is relevant to Plaintiffs' punitive damages claims. *See* ECF No. 2600 at 4. His testimony is highly relevant to his intent and is a uniquely direct method to assess it. *Id*. Fuldner cannot (and did not) testify regarding Khosrowshahi's intent to implement or bypass numerous safety initiatives, the crux of this litigation. Uber does not argue otherwise. Because evidence shows that Mr. Khosrowshahi was personally involved in numerous relevant decisions, his testimony is not cumulative of Fulner nor rendered unnecessary because of Fulner's subjective testimony on certain issues. The relevance of Khosrowshahi's testimony outweighs any burden to Uber, particularly given the time limits the Court has already imposed.

***Ms. Hazelbaker***. Likewise, evidence shows that Jill Hazelbaker was directly involved in issues related to safety, Mr. Fuldner's testimony notwithstanding. For example, ████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ██████████████." ECF No. 2519 at 10-11. Fuldner did not testify to Hazelbaker's subjective intent on these issues, nor could he. Hazelbaker is the only custodian on 4,401 documents; Fuldner cannot answer questions regarding these documents.

At bottom, Mr. Fuldner's testimony does not show that the burden of these depositions outweighs their relevance. The Court has already substantially limited the time Plaintiffs have to depose these witnesses which addresses Uber's concerns regarding unreasonably duplicative discovery. Plaintiffs will not use the limited time available to them to simply ask questions that Fuldner either testified to or could have testified to. As this Court held, deposing Dara Khosrowshahi and Jill Hazelbaker is not disproportionate to the needs of this litigation, and Mr. Fulder's testimony does not change this fact.

## II.    Special Master Monitoring of Depositions

### A.    Plaintiffs' Position.

The Fuldner deposition warrants altering the Court's Order (ECF 2600) and related Order (ECF 2647) in part. The Fuldner deposition included multiple instances of improper deposition conduct, including instructing the witness not to answer, encouraging the witness to give non-responsive speeches, and multiple defense attorneys engaging in colloquoy expressly prohibited by the Stipulated Deposition Protocol. This obstreperous conduct impeded and delayed fair examination, notwithstanding the 14 hours provided for Mr. Fuldner's deposition.

The Court should reconsider the portion of its Orders denying Plaintiffs' request that Special Master Barbara Jones observe depositions of Defendants' Executive Leadership Team. ECF 2647 at 1. And the Court should grant the Special Master authority to permit "apex" depositions to exceed the time limits provided for in the Court's order if she finds additional time is warranted due to witness or attorney misconduct.

1. <u>Counsel Repeatedly Instructed the Witness Not to Answer.</u>

Under Rule 30(c)(2), "[a] person may instruct a deponent not to answer a question only when necessary to preserve a privilege, to enforce a limitation directed by the Court, or to present a motion under Federal Rule of Civil Procedure 30(d)(3)." PTO 16 repeated: "A person may instruct a deponent not to answer a question only when necessary to preserve a privilege, to enforce a limitation directed by the Court, or to present a motion under [Rule] 30(d)(3)." ECF 866 at 12.

At the Fuldner deposition, counsel for Defendants repeatedly instructed the witness not to answer questions, in violation of the Federal Rules and PTO 16. For example, counsel refused to allow the witness to answer questions that merely touched on Uber's business outside the United States, even where the questions were otherwise relevant.

Uber says that the questions violated a Court order, but does not cite any such order. In any event, an agreement between the parties to limit document discovery concerning foreign activities does not justify instructions not to answer deposition questions. Fed. R. Civ. P. 30(c)(2).

For example, Exhibit 441 is an email where Mr. Fuldner



multiple Uber in-house and outside counsel, after conversing about on the record, instructed him not to answer:

Q:

A:
Q:      Then can you just read the next paragraph?
MS. FRANGOPOULOS:      Same objection.  Same instruction.
MR. LUSKEY:      You can read it but you can only answer questions to the extent you can do so without revealing information about practices outside of the United States.
THE WITNESS:      Sorry.  Could you repeat your statement?  I'm not sure I followed -
MR. LUSKEY:      Her question right now is can you read the e-mail.  You can read the e-mail.
THE WITNESS:      Okay.
MR. LUSKEY:      Or the paragraph.
Q:      Just the paragraph.

6

> A:
>
> MS. FRANGOPOULOS:   Yeah, it's a document relative to international practices.  Why are we letting him read into the record.
>
> MR. LUSKEY:   Okay.  Instruct you not to read the paragraph.  You can put it aside.

Ex. A at 219:3-220:7; *see also id.* at 151:8-155:6 (similar instruction).

> 2. <u>Counsel Repeatedly Made Speaking Objections Including Those Calculated to Coach the Witness.</u>

PTO 16 also prohibits "[s]peaking objections or those calculated to coach the deponent." ECF 866 at 12. Yet Uber counsel repeatedly did just that. For example:

> MR. LUSKEY:   <u>Object to form.  Calls for a legal conclusion as to rights.</u>
> THE WITNESS:
>
>

Ex. A at 56:1-9. Uber says this is just one example, but there are others. *See* Ex. C at 17:22-18:1 ("MR. LUSKEY:  Objection.  Mischaracterizes testimony. You can answer. THE WITNESS:  I agree it mischaracterizes testimony."); Ex. A at 22:16-18s ("MR. LUSKEY: The document speaks for itself. THE WITNESS: I agree the document speaks for itself.").

> 3. <u>Counsel Repeatedly Engaged in Colloquy, Yelled at Plaintiffs' Counsel, and Encouraged the Witness to Give Non-Responsive Speeches.</u>

PTO 16 also generally provides that "Counsel shall refrain from engaging in colloquy during a deposition." ECF 866 at 12. The Court emphasized: "Counsel may be subject to sanctions if they consistently impede, or otherwise unreasonably delay, the fair examination of the deponent." *Id.* at 13. Notwithstanding this instruction, *three* Uber attorneys, Randy Luskey, Maureen Frangopoulos, and Yasi Sedghani, defended the Fuldner deposition, jumping into colloquy, yelling at Plaintiffs' counsel and speaking over even each other. And repeatedly encouraging the witness to give non-responsive speeches, and then wasting time arguing about it. The above examples include some of this. And there are more:

> BY MS. LONDON:   I'm just going to move to strike that. This is one of those, you know, just yes or no.
>
> MS. FRANGOPOULOS:   There--
>
> MR. LUSKEY:   I got it. I got it. I got it.
>
> MS. LONDON:   Do you with me or not, Mr. Fuldner?

MR. LUSKEY        I got it. So it's not a simple yes or no, and his answer is directly responsive. You asked a question about feedback loops and he responded to that by saying absolutely, we are always looking at continuous improvement. That's how he interpreted your question and what you meant by feedback loops. So we oppose the motion to strike. You can ask it again.

MS. LONDON:      Thank you.

…

MS. SEDGHANI:    There's also no judge here so I don't know who she's moving to strike too.

Ex. A at 57:10-58:8.



Q:        So, Mr. Fuldner, I respectfully have to move to strike. I simply asked if that's what the document said?

MR. LUSKEY:      When you asked that question he can respond by saying that's what it says but it doesn't make sense to me. That's a perfectly appropriate deposition answer.

MS. LONDON:      As I said, I'm just moving to strike after every word after –

MS. FRANGOPOULOS:   We talked about the deposition protocol. That's not a thing, Sarah. There is no moving to strike.

MS. LONDON:      And I will respectfully remind counsel that we're burning time with speaking objections, so let's move on.

Ex. A at 124:9-17.

BY MS. LONDON:   Oh, okay. Can I just finish this topic because then I'm done?

MS. SEDGHANI:    How much more?

MS. LONDON:      Like, five minutes. Not even. Just one short document.

MS. FRANGOPOULOS:   I'll set the timer. Proceed.

*Id.* at 143:6-18.

Q:     <u>Sitting here today, you don't --</u>

MR. LUSKEY:     Object to form.

THE WITNESS:

MS. LONDON:     I respectfully have to move to strike. None of that was responsive to my question. It was just – but we can – we can—

MS. FRANGOPOULOS:     It was absolutely.

THE WITNESS:     That was absolutely responsive to your question.

*Id.* at 127:18-129:7

MS. LONDON:     All right. I have to move to strike everything after this is what the document says?

MR. LUSKEY:     Oppose the motion.

MS. SEDGHANI:     It's not a real motion so stop doing it.

*Id.* at 98:25-99:4.

Two final points. First, Uber, in response, objects to Plaintiffs' counsel for asking "yes or no" questions at the deposition. Those criticisms are unfounded. *See Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2017 WL 10574264, at *8 (C.D. Cal. June 29, 2017) ("There is no authority supporting Baker's contention that counsel on direct examination cannot ask a deponent to answer a question with a "yes" or "no"; although counsel for the deponent may object to the form of the question, the deponent must answer "yes" or "no." If a "yes" or "no" answer is viewed as misleading by the deponent's counsel or a party's counsel, he or she may ask the deponent on cross-examination for a more complete answer. That is one of the purposes of cross-examination under Rule 30."), *objection overruled in relevant part*, 2017 WL 10562691 (C.D. Cal. Aug. 7, 2017). But regardless, vehement disagreement over deposition conduct is only more reason for Judge Jones to oversee future ELT depositions.

Second, while it does not immediately bear on amending the Court's Orders, it is worth noting that at the hearing Uber suggested its motion was supported by production of Gus Fuldner's deposition in *Boston Retirement System v. Uber Technologies, Inc., et al.,* No. 3:19-CV-06361-RS. Plaintiffs' counsel reviewed the *Boston* deposition; it did help on background, but was much

more limited in scope than our case as it focused on the timing of the IPO related to the safety report. London Decl.¶ 4.

## B.     Defendants' Position

Plaintiffs ask the Court to require oversight of the depositions of Uber's ELT members and grant the Special Master authority to increase the time allotted for these depositions based on witness or attorney conduct.  Plaintiffs argue that such relief is appropriate because defense counsel improperly objected to certain lines of questioning during Mr. Fuldner's examination.  This request should be denied, again.  Indeed, their argument is backwards.  While Defense counsel only interposed proper objections, Plaintiffs' counsel acted improperly at the deposition, wasting the parties' time with needless questions and abusive tactics.  Indeed, Plaintiffs' counsel's conduct only confirms what Uber argued in its motion:  that apex depositions would be used as a weapon to burden the company and its high-ranking executives with needless and burdensome examinations.

*First*, Plaintiffs complain about three instances in which defense counsel instructed Mr. Fuldner not to answer certain questions about documents that pertained to issues outside of the U.S.  But those objections were based on this Court's "order and the parties' agreement that documents outside of the US with the exception of a few countries are not relevant." (Luskey Ex. 2, 284:10-15.)  In any event, as for the first instance, Mr. Fuldner *did* answer counsel's questions regarding a document pertaining to Latin America (*see id.* 150:12-154:6 (█████████████████ ███████████████████████████████████████)  Similarly, in the second instance, Mr. Fuldner explicitly overrode defense counsel's objection and proceeded to answer questions about a different document that related to Uber's operations in South Africa.  (*Id.* 155:7-156:23 ("Q. You're going to follow your lawyer's instruction? A I think I'm actually not going to.").)  And as for the third instance, Mr. Fuldner abided by counsel's instruction to not read into the record an email he had sent concerning ██████████████████████████████████████ (*Id.* 218:11-220:10.)  This objection was in line with this Court's order, and even if this Court ultimately disagrees on whether to sustain it, the appropriate remedy is not to appoint a monitor with authority to increase the time for other apex depositions.  As these examples illustrate, defense counsel acted reasonably in attempting to abide by the Court's explicit geographic limits on questioning of apex witnesses.  By contrast, Plaintiffs' counsel sought to inject these peripheral subjects into Mr. Fuldner's deposition in derogation of the Court's clear directive.

*Second*, Plaintiffs claim that defense counsel repeatedly coached Mr. Fuldner but only point to a single instance in which defense counsel clarified the basis of his objection—*i.e.*, that it calls for a legal conclusion.  (*See* Luskey Ex. 1, 55:23-56:9 ("Object to form. Calls for a legal conclusion as to rights.").)  This is an appropriate objection.  *See Thomas* v. *Texaco*, 998 F. Supp. 368, 370 (S.D.N.Y 1998) (magistrate judge correctly held that counsel "interposed appropriate objections when plaintiff, a layperson not qualified to give a legal conclusion . . . was questioned in her deposition" about a legal issue); *Schwartz* v. *State Farm Mut. Auto Ins. Co.*, 2009 WL 2197370, at *5 (D. Nev. July 23, 2009) (noting that "[c]ounsel for Defendant properly preserved

10

his objection to the deposition question 'as calling for a legal conclusion'").[5]    In any event, even if succinctly clarifying the basis for an appropriate objection could be construed as "coaching" (and it cannot), a single incidence does not warrant an expansion of the time allotted for all the other apex depositions.

*Third*, Plaintiffs claim that more time could be needed for apex depositions by pointing to instances in which defense counsel appropriately objected to Plaintiffs' counsel's repeated motions to strike Mr. Fuldner's testimony.  But it is Plaintiffs who were acting improperly, not Defendants. *On 12 separate occasions* during the second day of Mr. Fuldner's deposition, Plaintiffs' counsel (Ms. London) moved to strike Mr. Fuldner's responses as non-responsive.  (*See* Luskey Ex. 2, 6:7-7:2, 14:14-15:17, 57:1-12, 84:25-85:13, 87:25-88:22, 95:14-96:1, 120:19-122:8, 124:18-125:16, 127:18-128:16, 214:1-215:13, 240:21-241:18, 253:7-254:13.)[6]   This was a blatant attempt to intimidate Mr. Fuldner and discourage him from offering full explanations to complex (and often loaded) questions.  For example, after Plaintiffs' counsel demanded a yes or no answer in asking whether Mr. Fuldner agrees that Uber "must do all that human care, vigilance, and foresight reasonably can do under the circumstances to avoid harm to passengers?," Mr. Fuldner testified "broadly yes" and then explained that he did not "know the specific meanings of the some of the words" in Ms. London's question and that his "team focuses on the safeties of riders, drivers, and the public, and we do everything that  we can to avoid harm to the public. (*See* Luskey Ex. 2, 6:7-7:2.)  Plaintiffs' counsel once again moved to strike Mr. Fuldner's entire answer when he was asked if he agrees that "Uber has spent considerable [] resources to demonstrate its commitment to safety." (*Id.* 253:7-254:5.)  But Mr. Fuldner's response was perfectly appropriate.  Specifically, Mr. Fuldner succinctly explained that Uber spends "███████████████████████████████████████████████████████████████████████████." (*Id.*)

The import of these examples is clear: Plaintiffs' counsel simply did not want Mr. Fuldner to provide fulsome and contextualized responses.  Rather, they wanted slanted and misleading soundbites that support their litigation theories.  That is not a basis for striking a response, and there was nothing untoward about defense counsel appropriately objecting and making clear that Mr. Fuldner's answers were "responsive" and offered "important context."  (*See, e.g., id.* at 240:21-241:18.)  Moreover, Plaintiffs' claim that these instances improperly wasted time is belied by the record.  The back and forth on concerning Plaintiffs' repeated attempts to strike Mr. Fuldner's testimony took up no more than 10 minutes of the total 14-hour deposition.

In sum, Plaintiffs' examples only highlight their vexatious usage of apex depositions, which is precisely what Uber warned about in moving to preclude apex depositions altogether.

---

[5] Plaintiffs now point to another objection in which Defendants' counsel stated that a question mischaracterized the witness's testimony.  This, too, is a common objection made at depositions and no basis for any relief.  *See Perrizo* v. *Santa Clara Cnty. Office Of Edu.*, No. 5:15-cv-01512-EJD (HRL), 2016 WL 4398301, at *2-3 (N.D. Cal. Aug. 18, 2016) (finding no issue with an objection that a question misstates previous testimony).

[6] Notably, Plaintiffs' counsel at the first deposition (Mr. Estey) did not move to strike a single time.

The fact that Plaintiffs' counsel adhered to that playbook during Mr. Fuldner's deposition certainly does not justify a court-appointed monitor or increasing the allotted time for apex depositions.

## FILER'S ATTESTATION

I, Randall S. Luskey, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April 1, 2025

By: */s/ Randall S. Luskey*
Randall S. Luskey