**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB |
| | **JOINT LETTER REGARDING DEFENDANTS' PRODUCTION OF SAFETY LENS SNAPSHOTS IN DEFENDANT FACT SHEETS** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:        Hon. Lisa J. Cisneros |
| | Courtroom:   G – 15th Floor |
| | **FILED UNDER SEAL** |

1

Dear Judge Cisneros:

   Pursuant to Pretrial Order No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding production of Safety Lens snapshots as part of the Defendant Fact Sheet.

Dated: April 17, 2025           Respectfully Submitted,

By: */s/Roopal Luhana*  
ROOPAL P. LUHANA *(Pro Hac Vice)*  
**CHAFFIN LUHANA LLP**  
600 Third Avenue, Fl. 12  
New York, NY 10016  
Telephone: (888) 480-1123  
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)  
**GIRARD SHARP LLP**  
601 California St., Suite 1400  
San Francisco, CA 94108  
Telephone: (415) 981-4800  
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)  
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**  
555 Montgomery Street, Suite 820  
San Francisco, CA 94111  
Telephone: (415) 426-5641  
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

*/s/ Michael B. Shortnacy*

  **KIRKLAND & ELLIS LLP**  
  ALLISON M. BROWN  
  JESSICA DAVIDSON  
  LAURA VARTAIN

  **SHOOK, HARDY & BACON L.L.P**.  
  MICHAEL B. SHORTNACY  
  PATRICK L. OOT, JR.  
  CHRISTOPHER V. COTTON  
  ALYCIA A. DEGEN

  **O'MELVENY AND MYERS LLP**  
  SABRINA H. STRONG  
  JONATHAN SCHNELLER

  *Attorneys for Defendants*  
  UBER TECHNOLOGIES, INC.,  
  RASIER, LLC, and RASIER-CA, LLC

## I.    **<u>Plaintiffs' Position</u>:**

<u>Introduction</u>

The Fact Sheet Implementation Order requires Uber to produce customer support tickets (hereinafter "Tickets") related to sexual assault, sexual misconduct, and other dangerous and violent behavior by the drivers involved in Plaintiffs' complaints, as well as information linked or attached to each of these Tickets. *See* ECF No. 348 (PTO No. 10); ECF No. 348-2, ¶¶ 26-27 (Defendant Fact Sheet, "DFS"). Many Tickets link to the driver "Safety Lens," an interface with a tally of the driver's prior safety incidents by category, along with context regarding the prior incidents.

As relevant here, PTO 10 provides:

Production of a Ticket, where required by this form, must include production of **all information attached or linked to the Ticket**, including without limitation the Chronicle map snapshot, Voyager data, comments, names of Uber personnel reflected in the tickets, and all Communications connected with the ticket.

ECF 348-2 at 2 (emphasis added). Notwithstanding this unambiguous language, unless a customer support agent happened to attach a screenshot of the Safety Lens (as an image file) to the Ticket at the time of an investigation, Uber has refused to produce snapshots of the driver Safety Lens information linked to Tickets, **even for bellwether cases for which the production of this information is critically urgent.**

As a compromise, Plaintiffs offered to accept, for now, a limited production of the linked Safety Lens information for the bellwethers only, deferring the issue as to non-bellwether cases. Uber will not accept this compromise. As a preview, Plaintiffs made the same proposal with regard to other ongoing disputes regarding the DFS productions, including regarding other information linked to the Tickets. Plaintiffs had hoped, given the tight bellwether discovery schedule, that the parties could at least move forward quickly with completing those productions.

<u>The Parties' Discussions</u>

The parties met and conferred on March 10, 2025 to discuss global DFS deficiencies for Bellwethers, including the issues set forth herein. Uber's Counsel stated they would not produce linked Safety Lens data, because they did not think this material was subject to production, despite the clear language in the DFS to the contrary. Further, Uber said that, because the linked materials included multi-page and interactive interfaces, production would require taking screenshots of those interfaces. When Plaintiffs' counsel pointed out that the DFS required production of "all information attached **or linked** to the Ticket" (emphasis added), Uber's Counsel still maintained that linked material was not subject to production under the DFS.

Later that day, Uber's Counsel called Plaintiffs' counsel and stated they were considering asking Uber if they would produce the Safety Lens materials for Bellwethers only, if Plaintiffs agreed not to seek Safety Lens data for any other Plaintiffs. On March 12, 2025, Plaintiffs made clear to Uber's Counsel that the DFS already requires Uber to produce information from Safety Lens (and any other linked materials in the JIRA tickets) for all Plaintiffs, and that they were not willing to waive that production, but that they were willing to prioritize the production for Bellwethers and table the issue for other cases. Uber refused this proposal. Despite a further exchange of emails and another phone call, the Parties came to an impasse.

1

Argument

The DFS explicitly provides that the production of Tickets "must include production of all information attached **or linked** to the Ticket, including without limitation the Chronicle map snapshot[ and] Voyager data[.]" (Emphasis added.) Uber's Counsel contends that Uber need not produce screenshots of Safety Lens information unless an Uber agent happened to take the screenshots at the time of the investigation and attach them as images to the Ticket. *See* Kaufman Decl. Ex. 1 (a JIRA Ticket from one of the bellwether cases where the agent attached some limited screenshots of maps and other information, but not the full Safety Lens summary. The Safety Lens was therefore not produced for this case). Uber's construction defies the plain language of the DFS and excludes critical information linked to Tickets from other sources. *See Court Concepts, Inc. v. Scottsdale Indemnity Co.*, 2018 WL 3570330, at *7 (S.D. Cal. Jul. 25, 2018) ("[T]he use of the word 'including,' is ordinarily a term of enlargement rather than limitation.").

Uber is seeking to relitigate the PTO 10. The existing order requires production of linked materials.

The information sought is not only Court-ordered, but also centrally relevant. The driver "Safety Lens" is an interface that lists ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. *See* Kaufmann Decl. Ex. 2 (a screenshot of a Safety Lens summary that Uber inadvertently produced in one of the bellwether cases). The Safety Lens provides helpful context and organization for the JIRA Tickets and Bliss documents Uber produced. It serves as a backstop to ensure that Plaintiffs have all the relevant tickets. It also gives an overview of how many safety incidents a driver had in categories other than those for which the Court ordered production of Tickets. This information is relevant in light of corporate documents showing that Uber knows, and has long known, that drivers with repeated non-sexual safety incidents pose a higher risk of sexual incidents as well.

Uber does not contest the relevance of this information. Instead, Uber argues that, because **some** information in the Safety Lens is duplicative of the information in the Tickets Uber produced, it should not have to produce the complete linked data. But Rule 26(b) only limits discovery requests that are "**unreasonably** cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). The fact that there is slight, occasional redundancy is not enough. In other words, Uber falls well short of "clarifying, explaining, and supporting its objection[.]" *In re XF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 19425956 at *3 (C.D. Cal. Jul. 25, 2022).

Finally, Uber's counsel has indicated that it may be burdensome to produce information from Safety Lens because the interface cannot be printed out or downloaded with the click of a button but can only be produced via screenshots. The production of electronic sources such as interfaces is nothing new to this Court – or even to this litigation – and is expressly contemplated under Rule 34. *See* Fed. R. Civ. P. 34(a)(1)(A) (referencing "data compilations – stored in any medium"). Indeed, courts routinely require the production of similar ESI. *See Kudos Inc. v. Kudoboard LLC,* 2021 WL 4206547, at *2 (N.D. Cal. Sept. 16, 2021) (requiring production of interface); *In re Meta Pixel Healthcare Litig.*, 2023 WL 7555289, at *2 (N.D. Cal. Nov. 13, 2023) (ordering production of electronic data sources).

Rectifying this deficiency is particularly crucial for the 20 bellwether cases, though there is no reason Uber should not produce this information for all Plaintiffs. Plaintiffs request the Court order Uber to correct the deficiencies for the 20 bellwether cases within 3 days, and the remaining Plaintiffs within 90 days.

**II.   Defendants' Position.** PTO 10 requires Defendants to produce *information* attached or linked to a Ticket in DFS. ECF 348-2, at 3, as Defendants are doing. What Plaintiffs seek here is not information "stored" within the meaning of Rule 34(a)(1)(A) and as contemplated by PTO 10, but the creation of new documents to snapshot a user interface. Plaintiffs openly seek these newly-created documents to discard the limitations on discovery Judge Breyer established in PTO 10 and to conduct impermissible discovery on discovery. Further, the responsive contents of such newly-created snapshots are unreasonably cumulative and duplicative of Defendants' existing DFS productions. Their creation and production is at odds with Rule 34 and is unduly burdensome. This Court must deny Plaintiffs' request.

**Plaintiffs seek Safety Lens snapshots as an end run around the limits imposed in PTO 10.** Defendants have complied with PTO 10, producing *all* information attached or linked to a Ticket,[1] as exemplified by Exhibit 2, which was not "inadvertently" but *deliberately* produced as an attachment to a responsive Ticket.[2] Defendants are also producing documents linked to Tickets, such as communications or related Tickets. By contrast, Safety Lens is a proprietary, internal web-based interface that organizes information about riders and drivers for safety agents, and would require the creation of new documents to produce. *See* O'Connor Decl., ¶ 5; Ex 2. Despite Plaintiffs' cursory claim that these snapshots are "centrally relevant," they baldly admit that they seek creation of Safety Lens snapshots to discover alleged incidents "other than those for which the Court ordered production of Tickets," *i.e.*, incidents *out of the scope of DFS productions*.[3] The Court must reject this attempt to require creation of new documents so Plaintiffs may discover reports that Judge Breyer excluded from DFS productions in PTO 10.

**Plaintiffs impermissibly seek discovery on discovery.** Under PTO 10, DFS document productions are governed by the Rules applicable to requests for production. ECF 348, ¶ 5. Plaintiffs' request for Safety Lens snapshots as a "backstop" to ensure production of responsive Tickets is like demanding that a production of custodial emails also include a snapshot of the custodian's email inbox to ensure production of responsive emails. But that is self-evidently not

---

[1] While Judge Breyer specified that a snapshot of the Chronicle map should be created, he notably *also* specified production of the Chronicle map snapshot in a separate DFS question. ECF 348-2, at 3. But he did not similarly specify the creation of snapshots for Safety Lens, nor did he direct Defendants to produce those separately elsewhere in the DFS.

[2] In the ordinary course, it was discovered that a Ticket included information concerning an unrelated independent driver. This information, which includes Exhibit 2, was removed, and an updated Ticket with comments reflecting the timing and nature of updates therein was produced.

[3] Note that Exhibit 1 includes hyperlinks to Safety Lens landing pages for both driver and rider. But PTO 10 does not require production of any Tickets for a *rider*. Additionally, PTO 10 requires production of Tickets for prior incidents. Those Tickets may include hyperlinks to Safety Lens for non-parties who reported incidents, which are also non-responsive and include PII. Judge Breyer could not have intended for Defendants to manufacture new documents only to provide Plaintiffs wholly non-responsive information that invades the privacy of non-parties.

required. Rather, in that scenario, the responding party produces responsive non-privileged emails, without creating a custom snapshot of the inbox as "information" about the email collection. Plaintiffs' request to create snapshots as a "backstop" is speculative discovery on discovery. Discovery on discovery is generally disfavored, and mere speculation about missing evidence is insufficient to permit it.[4] Further, Judge Breyer established a DFS deficiencies resolution process in PTO 10. ECF 348 ¶ 8. Plaintiffs have served deficiency notices for all 20 bellwethers and an additional 15 other MDL Plaintiffs. Defendants have timely responded with explanations and, in some cases, additional document productions. No discovery on discovery is necessary for this process to work, just as Defendants have not required discovery on discovery from Plaintiffs to work through PFS deficiencies. Further, the cases Plaintiffs cite to assert their request is "routine" are inapposite. *Kudos* concerned a trademark dispute in which two <u>customer-facing</u> interfaces were <u>directly at issue</u>, necessitating production of images of the interface. *See* 2021 WL 4206547, at *2. *In re Meta Pixel* concerned *documents* "sufficient to identify…databases, logs, or other electronic sources." *See* 2023 WL 7555289, at *2. Plaintiffs here seek the creation of new snapshots, not existing documents about data sources.

**Production of Safety Lens snapshots is unreasonably cumulative and duplicative.** Plaintiffs admit that their request for Safety Lens snapshots is cumulative and duplicative of the information they are already receiving.[5] They only claim their request is not "unreasonably" so. Yet, Plaintiffs are already receiving all the responsive information visible in a Safety Lens snapshot. First, responsive ███████████████ listed in such snapshots are the same ones Defendants are already producing in response to DFS Questions 26, 27, and 31(d). *See* ECF 348-2, at 6; O'Connor Decl., ¶¶ 5-6. Second, the responsive ███████████████████████ ████████████ is already provided in response to specific DFS Questions[6] and is readily available to Plaintiffs through DFS printouts as well as reporting out of MDL Centrality. Third, Plaintiffs are getting ████████████████████████████████ within multiple fields of the Ticket itself. *See* Ex 1, at UBER-MDL3084-DFS00003728-31. Therefore, Plaintiffs' request is unreasonable and completely at odds with Rule 34. *See* Fed. R. Civ. P. 34(b)(2)(E)(iii) ("A party need not produce the same [ESI] in more than one form"); *see also Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016) (denying motion to compel cumulative production, when the relevant data and information had already been produced).

**Plaintiffs' request is unduly burdensome and not proportionate to the needs of the case.** Plaintiffs would have Defendants manually create new documents related to riders (including any guest riders) and independent drivers found in a Ticket. At least 1,100 of the more 2,100

---

[4] *Taylor v. Google, LLC*, No. 20-CV-07956-VKD, 2024 WL 4947270 (N.D. Cal. Dec. 3, 2024) (quoting *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152 (N.D. Ill. 2023)); *see also The Sedona Principles*, 3rd. Ed., 19 Sedona Conf. J. 1, 123 (2018) ("there should be no discovery on discovery, absent…specific, tangible, evidence-based indicia…")

[5] Plaintiffs above assert Safety Lens captures "███████████████████████████." It does not.

[6] *E.g.*, Questions 3(d) and 29 (tally of, respectively, Plaintiffs' and independent driver's trips), and 30 (average star rating). See ECF 348-2, Ex 2. Other summary data visible in a Safety Lens screenshot is outside the scope of PTO 10, *e.g.*, tally of Uber Eats deliveries, rider's star rating, and a report tally that includes non-responsive reports. *See* Ex 2.

Tickets produced in DFS to date,[7] contain hyperlinks to one or more Safety Lens landing pages. Capturing these landing pages is a burdensome, multi-step process. First, an employee with credentials to access both the Tickets and the Safety Lens interface must isolate the hyperlinks, which cannot always be automatically extracted.[8] O'Connor Decl., ¶ 8. Once isolated, each link would need to be manually accessed, and a screenshot manually taken. O'Connor Decl., ¶ 9. These snapshots would then need to be collected and staged for processing. Additionally, approximately 30% of the current Tickets containing links to the Safety Lens user interface relate to prior incidents (DFS Questions 26 and 27). Snapshots from these Tickets would need careful review and redaction of nonparty PII. While this requested discovery is either non-responsive or so unreasonably cumulative and duplicative that arguably zero burden would be too high, here there are real financial and opportunity costs to satisfying Plaintiffs' whims for the equivalent of snapshots of email inboxes.

Notwithstanding that PTO 10 does not require the creation of new Safety Lens snapshots, Defendants sought compromise on multiple occasions. However, Plaintiffs never demonstrated a corresponding willingness to moderate their demands and agree to reasonable–or any–guardrails on expanding the scope of discovery. Instead, Plaintiffs offered only delay. Defendants cannot be expected to accept mere delays in improperly expanding the scope of discovery, when Plaintiffs' interpretation of PTO 10 is wrong, seeks to circumvent the limits Judge Breyer placed on DFS discovery and conduct impermissible discovery on discovery, and would lead to unreasonably cumulative and duplicative discovery. As such, Plaintiffs' request must be rejected.

---

[7] New Plaintiffs are being added every day. From April 1 to April 16 alone, 33 new Plaintiffs submitted ride receipts, triggering the creation of a DFS.

[8] Hyperlinks to Safety Lens landing pages are often simply the URL, but sometimes the URL is hidden under text, which adds a layer of complication to identifying hyperlinks to Safety Lens landing pages.

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: April 17, 2025

By: /s/ *Andrew Kaufman*