ROBERT ATKINS (Admitted *Pro Hac Vice*)
ratkins@paulweiss.com
JACQUELINE P. RUBIN (Admitted *Pro Hac Vice*)
jrubin@paulweiss.com
CAITLIN E. GRUSAUSKAS (Admitted *Pro Hac Vice*)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (Admitted *Pro Hac Vice*)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000

RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
MARC PRICE WOLF (SBN: 254495)
mpricewolf@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

[*Additional Counsel Listed on Following Page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **FILED UNDER SEAL** |
| This Document Relates to: | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER** |
| ALL MATTERS | |
| | Judge: Hon. Lisa J. Cisneros |
| | Date: March 21, 2025 |
| | Time: 1:00 p.m. |
| | Courtroom: G - 15th Floor |

KYLE SMITH (Admitted *Pro Hac Vice*)
    ksmith@paulweiss.com
JESSICA PHILLIPS (Admitted *Pro Hac Vice*)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006
Telephone: (202) 223-7300

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-ii-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

Case No. 3:23-md-03084-CRB

TABLE OF CONTENTS

PRELIMINARY STATEMENT....................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

I.      Relevant Knowledge Is Insufficient To Justify An "Apex" Deposition. ............................... 2

II.     The Apex Doctrine Is Not Limited To CEOs Or Presidents.................................................. 4

III.    The Senior Executives Do Not Possess Unique Knowledge. ................................................ 5

IV.     Plaintiffs Must Exhaust Less-Intrusive Means Of Discovery................................................ 15

V.      The Court Should Issue A Protective Order Against The Deposition Of Joseph Sullivan.. 15

VI.     A Protective Order Can Eliminate Or Lessen The Burdens Of An Apex Deposition. ......... 15

CONCLUSION ............................................................................................................................... 15

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                  Case No. 3:23-md-03084-CRB

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Credit Union* v. *Apple Inc.*,
2024 WL 3859802 (N.D. Cal. Aug. 16, 2024)............................................................................ 1

*Affinity Labs of Texas* v. *Apple, Inc.*,
2011 WL 1753982 (N.D. Cal. May 9, 2011) ........................................................................... 2, 6

*Apple Inc.* v. *Samsung Elec. Co., Ltd.*,
282 F.R.D. 259 (N.D. Cal. 2012) ............................................................................... 3, 4, 5, 15

*In re Apple Iphone Antitrust Litig.*,
2021 WL 485709 (N.D. Cal. Jan. 26, 2021) ............................................................................ 3, 4

*Baine* v. *General Motors Corp.*,
141 F.R.D. 332 (M.D. Ala. 1991) ................................................................................................ 2

*Boston Ret. Sys.* v. *Uber Tech., Inc.*,
2023 WL 6132961 (N.D. Cal. Sept. 19, 2023) ....................................................................... 3, 4

*Brown* v. *Google, LLC*,
2022 WL 2289059 (N.D. Cal. Apr. 4, 2022) ............................................................................... 2

*Celerity, Inc.* v. *Ultra Clean Holding, Inc.*,
2007 WL 205067 (N.D. Cal. Jan. 25, 2007) .......................................................................... 2, 15

*Davis* v. *Pinterest, Inc.*,
2021 WL 11117688 (N.D. Cal. May 27, 2021) ........................................................................... 4

*Doble* v. *Mega Life and Health Ins. Co.*,
2010 WL 1998904 (N.D. Cal. May 18, 2010) ..................................................................... 2, 6, 10

*Ellena* v. *Standard Ins. Co.*,
2013 WL 4520200 (N.D. Cal. Aug. 23, 2013)............................................................................. 4

*In re Google Litig.*,
2011 WL 4985279 (N.D. Cal. Oct. 19, 2011)......................................................................... 3, 15

*Groupion, LLC* v. *Groupon, Inc.*,
2012 WL 359699 (N.D. Cal. Feb. 2, 2012) .......................................................................... *passim*

*Hunt* v. *Cont'l Cas. Co.*,
2015 WL 1518067 (N.D. Cal. Apr. 3, 2015) ............................................................................... 3

*Icon-IP Pty Ltd.* v. *Specialized Bicycle Components, Inc.*,
2014 WL 5387936 (N.D. Cal. Oct. 21, 2014)............................................................................. 1

-iv-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                    Case No. 3:23-md-03084-CRB

*Jackson Family Wines, Inc.* v. *Zurich Am. Ins. Co.*,
   2024 WL 3325485 (N.D. Cal. July 8, 2024) ........................................................................ 3, 15

*Kennedy* v. *Jackson Nat. Life Ins. Co.*,
   2010 WL 1644944 (N.D. Cal. Apr. 22, 2010) ............................................................................ 3

*Laatz* v. *Zazzle, Inc.*,
   2024 WL 4487355 (N.D. Cal. Sept. 5, 2024) .............................................................................. 3

*Robertson* v. *McNeil-PPC Inc.*,
   2014 WL 12576817 (C.D. Cal. Jan. 13, 2014) ........................................................................... 6

*Schneider* v. *Chipotle Mexican Grill, Inc.*,
   2017 WL 4127992 (N.D. Cal. Sept. 19, 2017) ................................................................ 2, 9, 11

*Symantec Corp.* v. *Acronis, Inc.*,
   2013 WL 12184286 (N.D. Cal. Oct. 10, 2013) ........................................................................... 2

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
   2014 WL 939287 (N.D. Cal., Mar. 6, 2014) ......................................................................... 3, 15

*Updateme Inc.* v. *Axel Springer SE*,
   2018 WL 5734670 (N.D. Cal. Oct. 31, 2018) ............................................................................ 3

*In re Yosemite Nat'l Park Hantavirus Litig.*,
   2017 WL 2861162 ............................................................................................... 7, 10, 11, 14

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................................. 15

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                    Case No. 3:23-md-03084-CRB

## PRELIMINARY STATEMENT

The apex doctrine asks a straightforward question: what "unique, non-repetitive, firsthand knowledge" do the Senior Executives possess that Plaintiffs cannot obtain from the other deponents? *Groupion, LLC* v. *Groupon, Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012).[1] Plaintiffs have not answered this question. They instead submitted thousands of pages of emails, documents, and deposition testimony to try to create the impression that the Senior Executives must know facts that cannot be discovered through the 45 depositions Plaintiffs will likely take. But sifting through that paper shows only that the Senior Executives have some knowledge of relevant information by virtue of being copied on documents, communicating with their reports, or making public statements—all of which could be said of almost any apex witness at any company. That does not suffice to order their depositions. None of the exhibits Plaintiffs have provided show that Dara Khosrowshahi or any other Senior Executives has unique knowledge.

What the evidence shows is that Plaintiffs can obtain the information they seek from the deponents they have deposed and the 21 depositions they have requested but not yet taken, which include long-time employee Gus Fuldner, the member of Uber's Executive Leadership Team ("ELT") responsible for customer support and safety, and members of the Senior Executives' teams who are (or were) directly responsible for the relevant matters. There will also be depositions of Uber's corporate representatives; Plaintiffs just served Rule 30(b)(6) notices. Thus, Plaintiffs have not "exhausted other means of obtaining this information"—"the second prong of this conjunctive test." *Icon-IP Pty Ltd.* v. *Specialized Bicycle Components, Inc.*, 2014 WL 5387936, at *2 (N.D. Cal. Oct. 21, 2014). They apparently haven't even tried to do so, choosing not to depose custodians on the documents or question others about this evidence during their depositions. *See, e.g.*, Opp. Exs. 28 (Hourdajian), 55 (Parker), 173 (Joyce). Plaintiffs should not be able to take Senior Executive depositions before questioning these other witnesses, who are the "key players"

---

[1] Plaintiffs seek shelter in the fact that the apex witnesses are custodians in this matter and imply that Uber has waived "apex" arguments. Opp. at 1 n.1. As explained in Uber's motion, the question whether one is a proper custodian is not the same as whether a deposition is appropriate. Mot. at 20-21. "Depositions of 'apex witnesses' merit extra guardrails." *Affinity Credit Union* v. *Apple Inc.*, 2024 WL 3859802, at *2 (N.D. Cal. Aug. 16, 2024). Uber did not waive the deposition-specific apex doctrine, and Plaintiffs' reliance on this Court's prior custodial ruling is misplaced.

-1-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                    Case No. 3:23-md-03084-CRB

responsible for the "development, implementation, and modifications of the[] policies and practices" Plaintiffs claim "are of utmost importance." Opp. at 1.

In sum, Plaintiffs have shown only that the Senior Executives acted as senior executives. They have not shown that the Senior Executives possess unique knowledge that they cannot not obtain through less intrusive methods of discovery.

## ARGUMENT

### I.   Relevant Knowledge Is Insufficient To Justify An "Apex" Deposition.

Plaintiffs argue "first-hand knowledge of important, relevant facts" is sufficient. *See, e.g.*, Opp. at 4. Plaintiffs are incorrect. "[C]laiming it is sufficient to show that [an executive] 'has firsthand knowledge of relevant information'" "misstates the standard for deposing [an executive]." *Affinity Labs of Texas* v. *Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). "[T]o accept [Plaintiffs'] argument would mean that so long as an executive may possess relevant information that executive is subject to deposition even if lower level employees possess the same information. Such a proposition is contrary to the law." *Symantec Corp.* v. *Acronis, Inc.*, 2013 WL 12184286, at *2 (N.D. Cal. Oct. 10, 2013).

Courts in this District draw the distinction between knowledge of relevant information and unique knowledge. Where "[t]he evidence cited to by [the deposing party] confirms that [the apex witness] has knowledge, but does not necessarily show that he had unique knowledge," an apex deposition is unjustified. *Schneider* v. *Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *3 (N.D. Cal. Sept. 19, 2017). That an executive may have first-hand knowledge of relevant facts—*e.g.*, participation in relevant emails, decision-making, public speaking, and even authoring highly relevant memoranda—does not mean that his or her knowledge is unique when there are other employees who can speak to the same matters. *See id.*; *Brown* v. *Google, LLC*, 2022 WL 2289059, at *2 (N.D. Cal. Apr. 4, 2022); *Doble* v. *Mega Life and Health Ins. Co.*, 2010 WL 1998904, at *3-4 (N.D. Cal. May 18, 2010); *Celerity, Inc.* v. *Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3-4 (N.D. Cal. Jan. 25, 2007); *Baine* v. *General Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991).

Accordingly, Plaintiffs cannot justify depositions of the Senior Executives by submitting hundreds of emails and documents that show the Senior Executives managed the affairs of the

-2-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                                    Case No. 3:23-md-03084-CRB

company, as all executives do. They must show that the Senior Executives have unique, non-repetitive knowledge that cannot be obtained through "less intrusive means of discovery, such as interrogatories or depositions of lower-ranking employees." *Groupion*, 2012 WL 359699, at *4.

Plaintiffs' cases do not hold otherwise; they emphasize that an apex deponent must have unique knowledge of relevant facts. For example, Plaintiffs cite antitrust matters, in which, for example, the Court found that a CEO's "understanding of [the competition the company faces] is almost by definition unique and non-repetitive." *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021). In such a case, "[t]here is really no one like [the] CEO who can testify about how [the company] views competition in these various markets that are core to its business model." *Id.*[2] They also cite intellectual property disputes, Opp. at 3, in which "evidence . . . suggest[ed] [the CEO] may have had a direct hand in authoring" a "'copycat' strategy" that was the basis of the infringement lawsuit, *Apple Inc.* v. *Samsung Elec. Co., Ltd.*, 282 F.R.D. 259, 266 (N.D. Cal. 2012), or where the executive "undisputedly created and developed," and was a "named inventor" of the software at issue. *In re Google Litig.*, 2011 WL 4985279, at *1 (N.D. Cal. Oct. 19, 2011).[3]

Plaintiffs also point to *Boston Ret. Sys.* v. *Uber Tech., Inc.*, 2023 WL 6132961 (N.D. Cal. Sept. 19, 2023), in which this Court permitted depositions of Khosrowshahi, Kalanick, Graves, and Hazelbaker. *See* Opp. at 2 n.2, 7. That case is inapposite. It involved alleged violations of federal securities laws based on allegedly misleading statements *made by the apex witnesses* in documents issued in connection with Uber's initial public offering ("IPO"). *See* Sec. Am. Compl. ¶¶ 145-47, 234, 339-63, No. 19-CV-06361-RS (DMR), ECF No. 137. Khosrowshahi, Kalanick, and Graves were each named defendants because they signed Uber's offering documents, allegedly "certifying that [they] had 'reasonable grounds to believe'" that those materials contained no material

---

[2] *See also In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *4 (N.D. Cal., Mar. 6, 2014) (supervisor "could provide unique, firsthand information").

[3] The other cases cited by Plaintiffs, Opp. at 6, 7, 11, similarly focus on unique knowledge. *See Laatz* v. *Zazzle, Inc.*, 2024 WL 4487355, at *2 (N.D. Cal. Sept. 5, 2024); *Jackson Family Wines, Inc.* v. *Zurich Am. Ins. Co.*, 2024 WL 3325485, at *2 (N.D. Cal. July 8, 2024); *Updateme Inc.* v. *Axel Springer SE*, 2018 WL 5734670, at *2 (N.D. Cal. Oct. 31, 2018); *Hunt* v. *Cont'l Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015); *Kennedy* v. *Jackson Nat. Life Ins. Co.*, 2010 WL 1644944, at *2 (N.D. Cal. Apr. 22, 2010).

-3-

inaccuracies or omissions. *Id.* ECF No. 340 at 1, 40, 47. The plaintiffs alleged that Khosrowshahi *personally drafted* a letter containing misinformation, which was included in the "front of [Uber's] Registration Statement." *Id*. at 1. Kalanick, for his part, asserted an affirmative "due diligence" defense, claiming that he "individually, 'exercised due diligence'" and believed that any "purported misstatements and/or omissions . . . were true." *Id.* at 47. In short, that case is about, *inter alia*, the Senior Executives' own actions and own words at issue in that case, and the plaintiffs had already conducted significant discovery in that lawsuit prior to seeking the depositions of Uber's officers, with the fact discovery deadline only days away. 2023 WL 6132961, at *3 n.5.

These cases confirm the standard: the executives "engaged in 'the type of hands-on action which demonstrates the **unique** personal knowledge required to compel a deposition of a [senior official].'" *Apple Inc.*, 282 F.R.D. at 265 (emphasis added). That cannot be said of the Senior Executives here because with respect to each major issue in the litigation—*e.g.*, safety features, background checks, incident investigations—there are other executives (like ELT member, Fulder) and senior employees with equal or more hands-on involvement and equal or more knowledge of the issues.

## II. The Apex Doctrine Is Not Limited To CEOs Or Presidents.

Plaintiffs assert that the apex doctrine only protects a corporation's "CEO or President." Opp. at 2. They are wrong. Courts regularly prevent the depositions of all types of senior officials, including c-suite executives, board members, vice presidents, and department heads. *See, e.g.*, *Groupion*, 2012 WL 359699, at *1, *5 (preventing depositions of "four Senior Vice Presidents"); *Davis* v. *Pinterest, Inc.*, 2021 WL 11117688, at *1 (N.D. Cal. May 27, 2021) (preventing depositions of "current head of engineering," "former COO," and "former head of engineering"). Executives who "report[] directly to the CEO," are "responsible for overall strategy and management" of a corporate unit, and have many employees who "report to [them] directly" are apex witnesses. *Ellena* v. *Standard Ins. Co.*, 2013 WL 4520200, at *1-2 (N.D. Cal. Aug. 23, 2013).

Plaintiffs' authorities say nothing to the contrary. They hold that a person's "degree of 'apex-ness'" should be a consideration in determining the type of showing "required to justify their depositions." *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *4. In those cases the courts

-4-

looked at the "relative position of the proposed witness in the company and within his sub-organization," and acknowledge there can be "peak[s] in the corporate mountain range"—not just one for the CEO and President—and that a witness is more likely to receive apex protection when they are "closer" to any one of those peaks. *Apple Inc.*, 282 F.R.D. at 263.

All of the Senior Executives are "apex" witnesses. These individuals sit at the top of Uber's corporate hierarchy and are collectively responsible for managing a company that has over 31,000 full-time employees. Hazelbaker is a member of Uber's ELT with executive oversight of Uber's global marketing, communications, and public policy efforts; she reports directly to the CEO and manages teams comprising hundreds of employees. Hazelbaker Decl. ¶¶ 3-5. Rachel Whetstone was Hazelbaker's predecessor and also reported to the CEO. Whetstone Decl. ¶¶ 3-4. Sachin Kansal is a member of Uber's ELT, reports directly to the CEO, and has executive oversight of Uber's app management, design, and operations teams for the Delivery and Mobility segments that comprise hundreds of employees spanning the globe. Kansal Decl. ¶¶ 3-5. Chang and Maredia report directly to members of Uber's ELT, are Vice Presidents and the heads of major Uber divisions, and oversee hundreds and thousands of employees, respectively. Chang Decl. ¶¶ 3-7; Maredia Decl. ¶¶ 3-5. Each of these witnesses easily fits the bill of an "apex" witness.

**III. The Senior Executives Do Not Possess Unique Knowledge.**

**1. Dara Khosrowshahi.** Plaintiffs argue they can depose Khosrowshahi because he is the company's "chief decision-maker," has served as the public face of the company, and sets priorities for the company relating to safety. Opp. at 4-7. In other words, they seek his deposition because he is the CEO, not because he knows something no one else knows or knows more about something than anyone else. That is exactly what the apex doctrine aims to prevent: burdening a company with the deposition of its highest-ranking officers when others (like Gus Fuldner) can provide the same facts. *See Groupion*, 2012 WL 359699, at *2. Plaintiffs have not identified any topics of discovery about which Khosrowshahi is the only source of information or has unique knowledge.

Plaintiffs cite Khosrowshahi's public statements. Opp. at 4-5; Opp. Exs. 1-2. But their evidence shows that others in the company—including Brooke Anderson, Andrew Hasbun, and Jodi Page—managed Khosrowshahi's public engagements and Uber's communications. *See* Opp.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                   Case No. 3:23-md-03084-CRB

Exs. 1-2. Indeed, Anderson and other members of the communications team helped prepare the Khosrowshahi blog post Plaintiffs cite as evidence of his supposed unique knowledge (Opp. at 4). *See* Luskey Ex. 1. Acting as the "public face of the company"—a duty of most if not all CEOs—does not subject Khosrowshahi to a deposition. Doble, 2010 WL 1998904, at *3. "Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues." *Affinity Labs*, 2011 WL 1753982, at *16 (citing cases); *Robertson* v. *McNeil-PPC Inc.*, 2014 WL 12576817, at *19-20 (C.D. Cal. Jan. 13, 2014).

Plaintiffs argue the apex doctrine does not apply because Khosrowshahi set "foundational cultural values" and priorities for the company. Opp. at 4-5; Opp. Exs. 3-4. But all CEOs set company values and priorities. To argue that an apex witness can be deposed by virtue of his or her leadership position, and doing what all leaders do, would turn the apex doctrine into a nullity. For example, the so-called ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs cite to, Opp. at 6, were motivational, not substantive: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. Ex. 14, Tr. 254:4-12. Such "pure high-level management [is] not the type of hands-on action which demonstrates the unique personal knowledge required to compel a deposition of a CEO." *Doble*, 2010 WL 1998904, at *3.

Plaintiffs claim that "Uber couldn't test or implement certain safety initiatives without [Khosrowshahi's] direction and approval." Opp. at 1, 5. That is not what the record shows. When asked whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Roger Kaiser (Global Head of Safety Operations) testified, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Luskey Ex. 2, Tr. 68:3-8. Kaiser further testified that decisions as to what "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* 69:7-11.

Plaintiffs' exhibits show that it is the past and forthcoming deponents who are (or were) primarily responsible for developing and implementing the safety-related policies and measures at Uber and possess facts and information Plaintiffs seek. For example, in Exhibits 5 and 6, Hasbun and Danielle Sheridan (née Portugal), among others, discuss ▮▮▮▮▮▮▮▮. Hasbun's aside ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Opp. Ex. 5, does not show that Khosrowshahi has unique

-6-

knowledge. Similarly, in Exhibit 12, it is Anderson and Kayla Whaling (not Khosrowshahi) discussing ████████████. That email shows that the team gave a presentation to Khosrowshahi who provided "feedback." Opp. Ex. 12 at 1387249. In Exhibit 9, Andi Pimentel—the unnamed "subordinate[]," Opp. at 5, and custodian that Plaintiffs are choosing not to depose—notes in her email that the "team [is] ready ████████████ and I'm working on getting all the pre-briefs done with various folks to make it productive." Opp. Ex. 9 (emphasis added). Khosrowshahi responds "Gus [Fuldner]"—Uber's senior executive responsible for safety and an upcoming deponent in this litigation—"mentioned it to me." Id.[4] Exhibit 10 reveals Fuldner developing standards for ████████████

Plaintiffs also focus on the Safety Report, and suggest that prior testimony shows it was a decision Khosrowshahi made alone. Opp. at 5. Stevenson testified he "████████████████████████████████████████████████████████████████" Opp. Ex. 3 at 102:3-11. More importantly, Stevenson further testifies that it was ████████████████████. Id. 102:16-25. Indeed, many of the Uber deponents were primarily responsible for developing the Safety Report: Gus Fuldner (who oversaw its development, Chang Decl. ¶ 13): Katy McDonald (who led data collection and auditing processes, id. ¶¶ 10-12); Roger Kaiser (████████████████ ████████████, Luskey Ex. 2, Tr. 101:11-102:3); Brooke Anderson (who was primarily responsible for communicating to the public, Hazelbaker Decl. ¶ 9; as well as Kate Parker, Jodi Page, and Tracey Breeden. Chang Decl. ¶ 15. If somehow Khosrowshahi knows relevant facts unknown to any of these witnesses, or if he knows relevant facts better than they do, Plaintiffs' opposition does not prove it.

Likewise, Khosrowshahi's email announcing the Safety Report to the entire company (Opp. Exs. 126, 127) fails to show unique knowledge of discoverable facts. On the contrary, that email

---

[4] Plaintiffs also point to communications showing Khosrowshahi asking for information regarding statistics on safety (which were provided by Fuldner), Opp. Ex. 11, or weekly updates, Opp. Ex. 8. A CEO's keeping "informed" and "abreast" of relevant matters does not justify an apex deposition. *See In re Yosemite*, 2017 WL 2861162, at *3.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                          Case No. 3:23-md-03084-CRB

states that Gus Fuldner and others were part of the decision-making; it summarizes the data and analytics in the report, which will be the subject of the deposition of Katy McDonald; ▮▮▮▮▮ ▮▮▮▮▮, which was the subject of the JCCP deposition of Andi Pimintel, ▮▮▮▮▮ ▮▮▮▮▮; and it mentions other new technologies, which were the responsibility of Rebecca Payne, a forthcoming PMK on safety features in the JCCP. Moreover, Khosrowshahi later acknowledges in that same chain that the Safety Report was the result of "an enormous amount of work from a cross functional team." Opp. Ex. 127. Plaintiffs have not shown that Khosrowshahi possesses unique knowledge of these issues that cannot be obtained from these other employees.

Finally, Plaintiffs' selective quotation of testimony from prior depositions does not establish that Khosrowshahi possesses unique knowledge. Opp. at 6. Plaintiffs claim that Khosrowshahi should be deposed because certain witnesses could not recall discussions or meetings with Khosrowshahi or could not speak to the meaning of a document. See Opp. Exs. 15, 16. The fact of whether or not these people recall speaking with Khosrowshahi about certain topics, or can't testify precisely to what he meant in a tweet or a single email, does not mean that Khosrowshahi has unique knowledge of relevant facts that justifies his deposition. Uber's motion refers to these Uber deponents because each was directly involved in the development, implementation, or execution of safety practices, technologies, and other measures. Regardless of their interactions with Khosrowshahi, they possess discoverable facts about those issues. And Plaintiffs still fail to show that Khosrowshahi has any unique or better knowledge about those issues.

**2. Jill Hazelbaker.** For similar reasons, Plaintiffs' citation of internal communications or documents sent or received by Hazelbaker fails to show that she possesses unique knowledge. Opp. at 10-11; Opp. Exs. 40-54, 137-46. For example, in one email, Hazelbaker forwards Khosrowshahi's company-wide announcement of the Safety Report to email listservs for the policy and communications teams, and provides inspirational commentary marking the occasion. Opp. Ex. 42. In another email, deponent Meghan Joyce asks for Hazelbaker's "reaction" to a proposal "if [she] ha[d] a sec," but notes that Brooke Anderson "was in the meeting and is a big thumbs up" concerning that proposal. Opp. Ex. 43. The "discussion" that Hazelbaker allegedly "spearheaded," Opp. at 11, in Exhibit 44 included Fuldner and Anderson, and was precipitated by an email co-

-8-

signed by Anderson ("Cheers, Jill, Matt and Brooke").  Opp. Ex. 44.  In other correspondence, Hazelbaker provides brief responses to emails asking for feedback on draft memos prepared by other employees.  Opp. Ex. 138.  Other documents attached to Plaintiffs' opposition belie any claim that Hazelbaker has unique knowledge.  *See* Opp. Ex. 52 (explaining that "[t]he team" did the work); Opp. Ex. 53 (communicating with deponents Tracey Breeden and Rachel Holt); Opp. Exs. 46-47, 49-51 (multiple versions of email chain showing that Anderson and Fuldner were involved).

In sum, Plaintiffs seek to depose Hazelbaker given she is the company's chief officer in charge of Uber's marketing, communications, and policy.  But Plaintiffs' evidence shows only that "[Hazelbaker] worked with other individuals, many of whom were [or will be] deposed by Plaintiffs."  *See Schneider*, 2017 WL 4127992, at *3; Hazelbaker Decl. ¶¶ 9-11.  Plaintiffs' evidence "does not suggest unique knowledge given the other individuals who were on the e-mails [and documents], several of whom were [or will be] deposed by Plaintiffs."  *See Schneider*, 2017 WL 4127992, at *3; *see* Opp. Exs. 40-44, 46-47, 49, 51, 53, 137, 140, 141.

**3.  Travis Kalanick.**  None of Plaintiffs' exhibits shows that Kalanick has unique knowledge.  Their evidence shows nothing more than the routine conduct of a CEO, *i.e.*, "prioritizing what's going to matter most to Uber *from a high-level*."  Opp. Ex. 18 (emphasis added).  Setting high-level goals does not justify the deposition of a CEO particularly where, as here, Plaintiffs' evidence proves that numerous other individuals were equally, if not more actively, involved in handling the issues Plaintiffs identify as most relevant to this litigation.

For example, Plaintiffs claim Kalanick's purported involvement with safety communications justifies his deposition.  Opp. at 8-9.  But the evidence shows otherwise.  Plaintiffs' exhibits show it was members of the communications team, like deponent Nairi Hourdajian, who drafted Uber's communications.  *See, e.g.*, Opp. Exs. 28, 30, 35, 37.  While Kalanick may have provided feedback or participated in conversations regarding those communications, that "does not suggest unique knowledge given the other individuals who were on the e-mails, several of whom were [or will be] deposed by Plaintiffs."  *Schneider*, 2017 WL 4127992, at *3.  Even if Kalanick "had the final say on Uber's safety messaging," Opp. at 9 (Exs. 32-34), as they claim, participation in "decision-making" alone is insufficient.  *Schneider*, at *2.

-9-

Similarly, Kalanick's participation in meetings, asking questions, sharing thoughts, or delegating tasks in response to information presented to him does not demonstrate unique knowledge—that is what CEOs do. *See* Opp. Exs. 19-23, 36. This is particularly true given the other deponents or custodians in this case participated in these conversations and workstreams. *See* Opp. Exs. 24 (Cardenas reporting on media inquiries and Kalanick asking for other's thought on how to respond), 26 (Kalanick forwarding inquiry regarding alleged incident to Cardenas, who replied "on it"), 29 (conversation regarding blog post including Meghan Joyce and Rachel Holt), 134 (Kalanick replying "thanks" to a note shared by Holt regarding safety-related matters).[5] Plaintiffs also cite emails Kalanick sent to the entire company providing updates like the fact that Uber would have a "unified Safety and Insurance team under Gus Fuldner." *See* Opp. Exs. 32-33.

Finally, Plaintiffs point to a set of notes that were purportedly "Kalanick's personal notes." Opp. at 9; Opp Ex. 38. These notes concern subjects regarding safety data, incident response, and policies and procedures relating to safety. As explained in Uber's Motion, Plaintiffs will have access to multiple current and former employees that were directly responsible for these matters and can speak to them. Plaintiffs do not explain why a CEO keeping notes means that only he can speak to substance of those topics, and even then, why "less intrusive discovery methods, such as by interrogatory," would not suffice. *In re Yosemite Nat'l Park Hantavirus Litig.*, 2017 WL 2861162, at \*2 (N.D. Cal. July 5, 2017). Plaintiffs' evidence shows Kalanick acted like a typical executive, leaning on the expertise of his employees and providing "high-level management" on next steps. *Doble*, 2010 WL 1998904, at \*3. Plaintiffs effectively ask this Court to short-circuit the apex analysis, arguing that "Kalanick possesses unique first-hand knowledge" solely because "he was responsible for all levels of Uber's business." Opp. at 8, 10. Again, a party cannot seek the deposition of a CEO by pointing out that he performed quintessential CEO activities.

**4. Sachin Kansal.** Plaintiffs contend that Kansal should be deposed because of his "critical role in overseeing safety product initiatives." Opp. at 13. They cite his involvement with certain safety-related technologies. Opp. at 14. Even accepting this contention, involvement does not meet

---

[5] If this information is important to Plaintiffs' cases, they would have chosen to participate in the deposition of Phillip Cardenas. Instead, they chose not to.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

Case No. 3:23-md-03084-CRB

the bar of "unique" knowledge. *Schneider*, 2017 WL 4127992, at *3. Plaintiffs have or will depose several witnesses whose involvement in these technologies make Kansal's deposition testimony repetitive. These deponents serve as custodians or collaborators for the documents Plaintiffs' cite, or worked on the same projects as Kansal, such as Fuldner (Opp. Exs. 60, 62-63, 65-66, 75, 77-78), Holt (Opp. Exs. 78-80), Pimentel (Opp. Exs. 63, 67-68, 71, 73), Parker (Opp. Exs. 69, 72), Payne (JCCP PMK) (Opp. Exs. 74, 81, 83), Ross (JCCP PMK) (Opp. Exs. 60, 64-65), Gibbons (Opp. Ex. 83), and Sheridan (Opp. Ex. 61).[6] Indeed, Plaintiffs can participate in the forthcoming JCCP deposition of Rebecca Payne, who reported directly to Kansal and was directly responsible for the consideration, development, or implementation of the safety features. *See* Kansal Decl. ¶ 8. They will also depose Michael Akamine, Director of Product Management, who reports directly to Kansal and has led teams that were responsible for innovating and delivering apps to market and for creating and implementing various types of features. *Id.* ¶ 10. Plaintiffs do not even attempt to reckon with the availability of Payne and Akamine for deposition.

Further, many of the documents Plaintiffs claim as evidence of Kansal's involvement show nothing more than Kansal copied on exchanges, Opp. Exs. 61, 75, 80. In certain emails, the conversation is driven by witnesses Plaintiffs have deposed or will depose. *See, e.g.*, Opp. Exs. 61 (Sheridan), 72 (Parker), and 80 (Holt). To the extent Plaintiffs wish to depose Kansal regarding presentations he contributed to and meetings he participated in about safety issues, Opp. at 14-15 (Opp Exs. 96-97), mere participation in meetings on relevant subject matter is insufficient to compel an apex deposition. *See Schneider*, 2017 WL 4127992, at *2 (granting protective order despite claim that CMO participated in "key meetings and decision-making"). The same is true if the apex witness briefs other individuals about relevant issues because it "only demonstrate[s] that he was involved." *See In re Yosemite*, 2017 WL 2861162 at *2. In addition, numerous deponents are collaborators or custodians for these presentations, including senior employees with explicit responsibilities for safety.[7] Kansal's knowledge of these presentations and the issues described in them is thus hardly "unique, non-repetitive" information. *Groupion*, 2012 WL 359699, at *2.

---

[6] *See* Luskey Exs. 3-8 (metadata for Opp Exs. 60, 64-65, 67, 69-70).
[7] *See* Luskey Exs. 9-13 (metadata for Opp Exs. 85-89 collectively listing Breeden, Cardenas, Anderson, Kaiser, Gibbons, Burke, McDonald, Parker, Fuldner, and Cinelli).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                      Case No. 3:23-md-03084-CRB

**5. Frank Chang.** Plaintiffs seek to depose Chang because of his team's involvement with safety incident data, the Safety Report, and Uber's taxonomy. Opp. at 15-16; Opp. Exs. 99-102. And they will depose the member of his team, Katy McDonald, who: (i) has held direct and primary responsibility for maintaining data at Uber relating to, among other things, safety and incidents, Chang Decl. ¶ 10; (ii) was intimately involved in developing the Taxonomy, *id.* ¶ 11; and (iii) led data collection and auditing processes for Safety Reports and was also involved in authoring Safety Reports, *id.* ¶¶ 11-12. Plaintiffs do not claim Ms. McDonald cannot provide the same if not better information on these matters. Instead, Plaintiffs focus on the fact that McDonald could not testify as to whether Chang would have seen a document. Opp. at 16. That does not show that Chang has unique knowledge concerning Uber's safety data or taxonomy. Between McDonald and other deponents, like Gus Fuldner (Chang's direct superior, *id.* ¶ 13), Plaintiffs will be able to obtain comprehensive coverage of Uber's safety data. Chang's deposition therefore would provide no "unique, non-repetitive" information and so should be denied. *Groupion*, 2012 WL 359699, at *2.

**6. Sarfraz Maredia.** Plaintiffs do not attempt to explain why the testimony they seek from Maredia cannot be obtained from any of the other members of Uber's operations team they have deposed or seek to depose (Holt, Joyce, Barnes, Sheridan). Instead, Plaintiffs point to a handful of safety-related discussions that Maredia was involved in, without explaining why Maredia's knowledge as to any of them is unique or relevant. For instance, Plaintiffs argue Maredia at one point directed a pause of new deactivation thresholds tied to mask usage during COVID, which has nothing to do with this lawsuit. Opp. Ex. 104. Plaintiffs similarly allege that Maredia "made comments about improving safety," in response to a kidnapping; but public statements do not show unique knowledge. And Plaintiffs do not explain how that shows Maredia had any unique knowledge. Similarly, Plaintiffs argue that Maredia was involved in reactivating a former driver, but do not argue that the driver was in fact involved in any safety incident or that Maredia possesses unique knowledge of Uber's reactivation practices more generally. Opp. Ex. 106. Plaintiffs' remaining examples are all discussions of background checks that involve a number of different Uber employees, and Plaintiffs do not attempt to explain why Maredia's knowledge of these topics

-12-

is unique as compared to any other operations employee. *See* Opp. Exs. 107-09.[8]  Plaintiffs have thus failed to meet their burden of showing Maredia has relevant knowledge of the issues central to this litigation that cannot be obtained from other deponents.

**7. Rachel Whetstone**.  Plaintiffs fail to identify any unique knowledge that Whetstone holds that is relevant to the issues raised in this case.  First, Plaintiffs turn apex protection on its head by arguing that due to her senior "role" in building Uber's communications infrastructure, all of Whetstone's knowledge is necessarily "unique."  Opp. at 12.  However, the composition of Uber's communications department is not the subject of this lawsuit.  Moreover, this is the exact type of argument that apex protections are designed to protect against—the assertion that a deponents' seniority alone subjects them to the intrusive process of deposition, regardless of whether they hold unique personal knowledge of the subject matter of the litigation.

As to the specific emails that Plaintiffs claim prove Whetstone's unique knowledge, none shows that Whetstone acquired any relevant knowledge in her less-than two years as Uber's global communications leader that cannot be obtained from other employees.  For example, Plaintiffs rely on emails about Whetstone's efforts to coordinate marketing campaigns internationally.  *See* Opp. Exs. 56 (Europe, Middle East and Asia), 57 (UK and Australia).  Neither is relevant to this lawsuit, which is limited to the United States.  The other email involves other deponents in this litigation, like Brooke Anderson and Kate Parker.  *See* Opp. Ex. 55.  Plaintiffs also mischaracterize this email as expressing Whetstone's "concerns" that Uber's messaging undermines safety.  Whetstone merely makes the anodyne observation that publicly identifying examples of poor rider behaviors "encourage[s]" better rider behavior and increases driver's faith in Uber.  *Id*.

Plaintiffs finally point to communications guidelines, arguing Whetstone is the "author" and "only custodian" based on the document metadata.  Opp. 13; Opp Ex. 58.  Using metadata to show that Whetstone knows about this document proves nothing, particularly given the document identifies the "owner" as "Jena Wu," there are multiple "collaborators" identified in the metadata,

---

[8] The "additional evidence" fares no better.  It includes documents with other deponents and custodians. *See e.g.*, Opp. Ex. 170, Luskey Ex. 14 (Freivogel, Parker, Sheridan, Silver); Opp Exs. 171 (Joyce), 172 (Silver), 173 (Parker, Silver, Joyce).  Others copy Maredia or evidence no substantive involvement.  Opp. Exs. 166–67.

-13-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                      Case No. 3:23-md-03084-CRB

Luskey Ex. 15, and multiple iterations of these guidelines have been produced from the custodial files of multiple deponents (Parker, Anderson, Breeden, Freivogel, Fuldner, McDonald). *See, e.g.*, Luskey Exs. 16-17 (metadata coversheets). Metadata aside, Whetstone's input on the document consists of leaving high-level comments suggesting, for instance, the author "edit this down." *See* Ex. 58. Plaintiffs have failed to identify unique knowledge possessed by Whetstone.[9]

**8. Ryan Graves.** Plaintiffs seek Graves' deposition because he was allegedly involved in "█████████" and a "key decision-maker concerning background checks." Opp. at 18-19. But Plaintiffs have not shown that Graves' has unique knowledge of these subjects that cannot be obtained through less intrusive means. The evidence shows only that Graves acted as the head of operations. For example, Graves testified in unrelated litigation, "████████████████ ██████████████████████████████████," Opp. Ex. 112, Tr. 129:5-9, and jokingly listed himself as the "moral support :)" team member in the email setting up the team, which included deponents Fuldner and Hourdajian, "█████████████████████" Opp. Ex. 111. In other exhibits, Graves asked employees "to take a look," Opp. Ex. 118, asked for and received updates/information on various workstreams, or was cc'd on correspondence, see Exs. 114-117. That Graves kept "informed" and "abreast" regarding his subordinates' work does not justify his deposition. See In re Yosemite, 2017 WL 2861162, at *3. Plaintiffs also cite Grave's prior testimony (in a different lawsuit), which actually shows a lack of knowledge. They cite to pages claiming Graves was responsible for implementing early safety measures at Kalanick's direction. Opp. at 19. But Graves repeatedly testified he did not recall seeing the email Plaintiffs point to. Opp. Ex. 113, Tr. 116:4-21. Thus, Plaintiffs have not shown that Graves has "unique, non-repetitive" information that cannot be obtained from these other sources. Groupion, 2012 WL 359699, at *2. The information they seek can be obtained from other custodians in this matter that can, have been, or will be deposed, and were parties to the documents Plaintiffs cite. See Opp. Exs. 114, 177 (Barnes); 175-76, 183 (Cardenas (in the JCCP)); 174 (Richter); 116, 184 (Holt); 117, 180-81 (Fuldner).

---

[9] Plaintiffs' improper "Additional Evidence" exhibits similarly fail to demonstrate unique knowledge. *See* Opp. Exs. 147 (copied on blog post distributed to the policy and communications teams), 148 (sharing news article), 150 (sending newsletter).

-14-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

Case No. 3:23-md-03084-CRB

## IV.  Plaintiffs Must Exhaust Less-Intrusive Means Of Discovery.

Plaintiffs have not exhausted less intrusive means.  They seek to avoid this requirement by arguing that it does not apply because "there is a compressed discovery schedule and a 'soft cap' of 45 total depositions."  Opp. at 20 (citing Jackson Family Wines, 2024 WL 3325485).  The "soft cap" is irrelevant and the facts of Jackson Family Wines are exceptional and distinguishable:  there, the discovery cut-off date was only nine days after the release of the court's decision on the apex motion, and the lower-level employees' depositions were scheduled to occur within that nine-day window.  Id. at *3.  The discovery cutoff date here is June 16, 2025—just under three months from now—and Plaintiffs are scheduled to depose dozens of witnesses with knowledge that is equal, if not superior, to that of the Senior Executives months before that deadline.

## V.  The Court Should Issue A Protective Order Against The Deposition Of Joseph Sullivan.

Uber accepts Plaintiffs' representation that they will not depose Sullivan about his criminal conviction.  Opp. at 19.  But Sullivan's deposition remains unwarranted because it would be "unreasonably cumulative [and] duplicative," Fed. R. Civ. P. 26 (b)(2)(C)(i), of testimony that Plaintiffs can and have already obtained from other sources, including from Phillip Cardenas (in the JCCP), former global head of safety and Sullivan's direct report.  See Mot. at 24.

## VI.  A Protective Order Can Eliminate Or Lessen The Burdens Of An Apex Deposition.

Rule 26 provides this Court flexibility to fashion a protective order that eliminates or lessens the burdens of an apex deposition.  The Court can issue a protective order without prejudice to Plaintiffs seeking to lift it after taking more depositions and when the record is more developed. *See, e.g., Celerity*, 2007 WL 205067, at *5.  If any of these depositions move forward, the court can order time limitations, as the Courts routinely have done.  *See In re Transpacific*, 2014 WL 939287, at *6 (limiting deposition to two hours); *Apple, Inc.*, 282 F.R.D. at 265 (two or three hours); *In re Google Litig.*, 2011 WL 4985279 at *2 (limiting deposition to three hours).

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court grant Uber's Motions and issue a protective order against the depositions of the Senior Executives and Joseph Sullivan.

-15-

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER                                   Case No. 3:23-md-03084-CRB

Dated: March 20, 2025

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Robert Atkins*
ROBERT ATKINS
RANDALL S. LUSKEY

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-16-