**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal No. 3:24-cv-08783<br>W.D.T.X. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S MEDICAL RECORDS AUTHORIZATIONS**<br><br>Judge:        Hon. Lisa J. Cisneros<br>Courtroom:   G – 15th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

|  |  |
|---|---|
| JANE DOE QLF 001,<br><br>        Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>        Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:        Hon. Charles R. Breyer<br><br>Courtroom:   501 |

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff Jane Doe QLF 001's medical records authorizations.

Respectfully submitted,

DATED: July 17, 2026

By: /s/  *Roopal P. Luhana*
ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/  *Laura Vartain Horn*
LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

KIM BUENO (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX  78701
Telephone: (512) 678-9050
kim.bueno@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Counsel for Defendants Uber Technologies, Inc.,
Rasier, LLC, and Rasier-CA, LLC*

## I.    Uber's Position:

Plaintiff has put her mental health history at issue in this lawsuit by alleging emotional distress from the underlying June 2020 incident and seeking damages for that alleged injury. In order to defend itself at trial, Uber is entitled to information regarding other potential causes of Plaintiff's emotional distress that are unrelated to the alleged incident, including ███████ ███████ predating 2020. Unfortunately, Plaintiff claims she does not remember the identities of her pre-incident ████████████████████, including providers who treated conditions and symptoms directly related to her claimed damages. As such, Uber asked Plaintiff to execute pharmacy and insurance record authorizations for the ten years prior to the incident,[1] which would likely reveal ███████ ██████████████████. See Ex. 1. Plaintiff has refused to sign these authorizations and her own belated steps to identify the providers are inadequate. Given the compressed pre-trial schedule, the Court should require Plaintiff to execute the authorizations immediately.

*Background.* Plaintiff's claim for damages rests almost entirely on alleged emotional distress caused by the incident in question. To date, Plaintiff has produced only one pre-incident medical record, as well as several post-incident medical records. The post-incident records clearly establish that ████████████████████████████████████████████████████████ ████████████████████████████ For example, ████████████████████████ ███████████. See Ex. 2, DOE QLF 0001267-1268, at 1268. ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Those records also reference ████████████████████████████████████████████ See Exs. 3, 4. In addition, Plaintiff reported that ████████████████████████████████ ████████████████████████████████████ Sixth Amended Plaintiff Fact Sheet ("PFS"), Addendum at 4, Ex. 5. She further alleges that ██████████████████████ by the alleged incident, making her pre-incident records particularly critical. *Id.*; PFS at 20.

In discovery, Uber sought the identities of all mental health providers who had diagnosed or treated Plaintiff for any mental health condition, including the conditions reflected in the records produced to date. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████ See Pl. Jane Doe QLF 001's Fourth Suppl. Resp. to Defs. Uber Technologies, Inc.'s, Rasier, LLC's, and Rasier-CA, LLC's Interrogs., Set One ("Rog. Resp."), at 9-11, Ex. 6. She could not recall the name for either provider, *id.*, making it impossible for Uber to obtain discovery from them.

At the June 16, 2026 case management conference, Uber voiced concerns that it had not yet received the medical records necessary to prepare its defense, and the Court agreed that Uber is entitled to these records. *See* June 16, 2026 Tr. at 27 ("I agree. I couldn't agree with you more. You need the medical records. You need to prepare your experts. I agree. You are absolutely right."). Moreover, the Court made clear that it expected Plaintiff to do everything in her power to ensure that these records were produced "quickly." *Id.* at 28. Although Plaintiff's counsel promised they would do so, *id.* at 30, Uber has not received any new pre-incident records or identifying information more than a month later.

In light of Plaintiff's stonewalling and the urgency of obtaining the relevant records, Uber proposed a common-sense solution—that Plaintiff execute pharmacy and insurance record authorizations that would allow Uber to identify the relevant providers and initiate the often-lengthy process of requesting the relevant medical records. Plaintiff flatly refused, and instead

---

[1] Plaintiff has already agreed that producing ten years of pre-incident mental health records is appropriate.

offered to provide a pharmacy authorization going back only five years (to 2021), which would not cover the pre-incident time periods ███████████████████████████████████████████████████

*See* June 30, 2026 email from M. Vives to S. London, Ex. 7.

On July 2, 2026, Plaintiff belatedly offered to "subpoena Plaintiff's insurance provider ... to obtain the list of Plaintiff's mental health providers (10 years back)," but still maintained her refusal to produce pharmacy records. *See* July 2, 2026 email from I. Velez to M. Vives, Ex. 8. Plaintiff issued a subpoena to BlueCross BlueShield ("BCBS") on July 7, 2026, but later indicated—only after questions from counsel for Uber—that Plaintiff's BCBS coverage began in 2015 and therefore did not span the relevant time period. *See* July 13, 2026 email from I. Velez to M. Vives, Ex. 9. While Plaintiff initially claimed to be "working to determine Plaintiff's insurance carrier prior to 2015," *id.*, her counsel has refused to answer basic questions about what steps they have taken. After initially declining to answer, Plaintiff now generally represents that she has interviewed family members[2] and is continuing to investigate. But Plaintiff has still not identified the missing insurer or providers, and has not provided any timetable for ever being able to do so. Plaintiff should not be allowed to evade her discovery obligations when there is a simple solution to obtain at least some of the missing information.

The BCBS subpoena not only is limited in years but is also inadequate for other reasons, too. As noted above, Plaintiff says she does not recall all of her insurers from the relevant ten-year period. In addition, mental health providers frequently do not participate with insurance plans, and not all insurance plans cover mental health treatment. In either scenario, mental health care would not be reflected in insurer records. Pharmacy records may separately identify medications, prescribers, and treatment that do not appear in available insurance claims. The two sources are therefore complementary, not duplicative.

As to the pharmacy authorizations, Plaintiff offers no legitimate basis for refusing to sign them. Instead, she argues that she "has already signed authorizations (medical and mental health) that expressly encompass pharmacy records" and that "Uber has used those authorizations to put in record requests for Walmart, CVS, and Walgreens." But those are medical authorizations, not pharmacy authorizations. While Uber has attempted to repurpose them, it is unclear whether the pharmacies will honor these documents in place of their own standard ***pharmacy*** authorization forms. With trial set to begin in less than three months, Uber needs to utilize all available options to obtain complete information as quickly as possible.

***Uber Is Entitled To Pre-Incident Medical Records.*** There is no dispute that Plaintiff has squarely placed her mental health at issue in this case. In her PFS, Plaintiff states that she has ███████████████████████████████ that she is ███████████████ and that she ███████ PFS at 18. Her discovery responses also assert that following the alleged incident, she ████████████████████████████ ████████████████ Rog. Resp. at 8. As the Court has already recognized, Uber is "entitled" to the relevant medical records because Plaintiff has placed her mental health at issue. *See also, e.g., Doe v. Bridges to Recovery, LLC*, No. 2:20-CV-348-SVW, 2021 WL 4690830, at *1 (C.D. Cal. May 19, 2021) ("when a plaintiff alleges that the defendants' conduct caused emotional distress, evidence of other causes or sources of emotional distress is relevant") (collecting cases); *Christin v. Wal-Mart Assocs., Inc.*, No. 1:24-CV-00619-KES-SAB, 2025 WL 391013, at *3 (E.D. Cal. Feb. 3, 2025) ("By placing her physical disability and mental conditions at issue in this action, Plaintiff has waived her right to privacy of her medical and mental health records."). Were it otherwise, Uber would be denied its due-process-based right "to present every available defense" to Plaintiff's claims that her alleged mental and emotional damages are attributable to Uber. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted).

---

[2] The sufficiency of this investigation is critical because Plaintiff was a minor at this time and would have been under the care of her parents.

Plaintiff argues that the records Uber seeks are too temporally removed from the alleged incident to be relevant. ██████████████████████████████████████████████ ██████ Moreover, ████████████████████████████████████████████████████ ████████████████████████████████, confirming that this is an appropriate timeframe. In short, Plaintiff has sought to put up repeated roadblocks to thwart Uber's ability to identify and collect what are plainly relevant documents. Uber has already been prejudiced by the unnecessary delay in obtaining these records. In order to prevent further prejudice, the Court should compel Plaintiff to immediately sign the attached authorizations for pharmacy and insurance records so that Uber can identify the relevant providers and conduct the discovery necessary to present its defense at trial.

## II.    Plaintiff's Position:

Uber's demands for insurance and pharmacy authorizations go far beyond the scope of proportionate discovery and are duplicative of efforts already completed by the parties. The request should be denied.

To start, Plaintiff has already provided Uber with all records, authorizations and information for known medical and ████████████████. Since January 1, 2025, Plaintiff has been providing medical and mental health authorizations. Most recently on June 30, 2026, Plaintiff provided medical authorizations going back five years and mental health authorizations going back ten years prior to the incident. The scope of these authorizations is consistent with PTO 10. Velez Decl., ¶ 3. Both authorizations include pharmaceutical records and, pursuant to those authorizations, Uber has already submitted several pending requests to pharmacies. In addition, Plaintiff identified numerous medical and ████████████████. In Plaintiff's Fourth Supplemental Response to Defendant's Interrogatory Nos. 5, 6, and 8 (dated April 28, 2026), she provided four pre-incident medical providers and ████████████████████. Ex. 6. Plaintiff's Sixth Amended Fact Sheet identifies eight post-incident and pre-incident medical and ████████████████. Ex. 5.

Notwithstanding these efforts, Uber now demands separate authorizations for nearly 30 years of pharmacy and insurance records. Uber's only basis is what it characterizes as "foot dragging" by Plaintiff regarding the identify of two providers from her teenage years. ██████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Velez Decl., ¶ 6. Due to the passage of time and Plaintiff's age at the time of treatment, Plaintiff cannot recall these precise details. *Id.* Indeed, there is no dispute that she was a minor and had no responsibility for the scheduling, documentation, and record keeping as to these providers. That Plaintiff cannot recall is not "foot dragging" but rather the practical realities of memory limitations and discovery demands that span decades.

Despite these challenges, Plaintiff has made every effort to obtain the missing information. ████████████████████████████, Plaintiff has called family members and even drove around Grand Prairie to locate the building where she received this treatment. Velez Decl., ¶ 7. While she was able to identify the building where she believes treatment took place, ████████████████ ████████ was not at this location (or perhaps no longer at this location). *Id.* For the other provider,

---

[3]    Plaintiff notes that the BCBS authorization dates back to 1997, but that is a red herring because Plaintiff has indicated she was only covered by BCBS beginning in 2015. Uber has no intention of seeking any records that pre-date the alleged incident by more than ten years.

which would enable Uber to obtain any missing information that is available. *Id.* It is unclear what more Uber is demanding.

Uber seizes this as an opportunity to move for overbroad authorizations as to all insurance and pharmacy records. But the discoverability of mental health information, even where a Plaintiff places it "at issue" is not without limits, as PTO 10 recognizes. Such discovery must still be limited to "reasonable discovery that will shed light on the nature of Plaintiff's alleged emotional distress and on the sources that proximately gave rise to it." *Bangoura v. Andre-Boudin Bakeries*, 2012 WL 5349991, at *2 (N.D. Cal. Oct. 29, 2021). Uber's current demand for authorizations contravenes this reasonableness standard. Its motion to compel should be denied.

*First,* the demanded authorizations on their face are overbroad and encompass material far beyond what is at issue in this case. Among the authorizations demanded are ones for "*any and all"* Walgreens pharmacy records without limitation as to scope *or timing* (*see* Ex. 1 at 2), and general authorizations for pharmacy information and insurance information going back to 2010 (*see* Ex. 1 at 5, 8). These sweeping authorizations would give Uber carte blanche to delve into Plaintiff's personal history, without regard to the needs of the case. Plaintiff has already agreed to provide, and has provided, authorizations for medical information going back five years and mental health records going back ten years. There is no basis for Uber demand more and its proposed authorizations go beyond its stated position that it is only seeking mental health records for ten years prior to the incident. Uber's requests are not tailored to this case, let alone the specific information that Uber claims to be missing as to the two providers noted above. Plaintiff has offered to consider more tailored pharmaceutical authorizations, but Uber declined to engage. Velez Decl., ¶ 8.

*Second*, the demanded pharmacy and insurance authorizations are duplicative of efforts already completed. With respect to pharmacy records, as noted above, Plaintiff has already signed authorizations (medical and mental health) that expressly encompass pharmacy records. Uber has used those authorizations to put in record requests for Walmart, CVS, and Walgreens, and has already received documents from one of those providers (Walmart) thus far with success. There is no basis for separate, boundless requests.

With respect to insurance records, Uber seeks two authorizations – one a general authorization that goes back to 2010 (*see* Ex. 1 at 5), and a second authorization specific to BlueCross BlueShield that would go back *29 years* (to Plaintiff's birth) (*see* Ex. 1 at 12-14). On July 7, Plaintiff subpoenaed BlueCross BlueShield for both medical and mental health records going back five and ten years prior to the incident, respectively. Plaintiff has informed Uber that BlueCross BlueShield was her insurance carrier from 2015 onwards and that she does not recall who her insurance provider was prior to that date. *See* Ex. 9, July 13, 2026 email from I. Velez to M. Vives. Given that Plaintiff was only 17 or 18 years old in 2015, it should come as no surprise that she cannot remember her insurance providers, nor is it unreasonable. And while Uber continues to press its demand for an authorization, it has failed to respond to Plaintiff's question as to how she can provide a reasonably tailored authorization when she does not remember who her insurance provider was. Velez Decl., ¶ 9. Plaintiff and her counsel have conducted a reasonable investigation to identify prior insurers, including interviewing Plaintiff's parents who may know the identity of her provider. Velez Decl., ¶ 10-11. Uber's demand for a virtually unlimited insurance authorization is overbroad and unduly burdensome in light of these circumstances. Plaintiff is continuing to investigate the identity of insurance providers prior to 2015 and has committed to update Uber with any responsive information. Velez Decl., ¶ 12. Plaintiff also intends to review (and will share with Uber) records received from her subpoena to BlueCross BlueShield, which she anticipates will identify relevant providers, including before 2015. Plaintiff will advise Uber promptly of any responsive information. Uber's current demand for duplicative and overbroad authorizations for BlueCross BlueShield is therefore unreasonable and unwarranted.

Uber's demand for insurance and pharmacy authorizations is unreasonable and unnecessary. The request should be denied.

## **FILER'S ATTESTATION**

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Laura Vartain Horn*
Laura Vartain Horn

1