[*Submitting counsel below*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To: | Judge: Hon. Charles R. Breyer |
| | Courtroom: 6 – 17th Floor (videoconference) |
| ALL ACTIONS | Date: July 21, 2026 |
| | Time: 10:00 a.m. |

**JOINT CASE MANAGEMENT STATEMENT**

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for July 21, 2026.

**Proposed Agenda**

    I.     **Status of Case Filings**

    II.    **Pre-Trial Schedule for *Jane Doe QLF 0001* Trial**

    III.   **Trial Length for *Jane Doe QLF 0001* Trial**

    IV.   **Proposals for Scheduling Future Bellwether and Non-Bellwether Trials**

    V.    **Status of QLF Trial Workup**

    VI.   **Settlement / Mediation**

    VII.  **Next Case Management Conference**

**I.  STATUS OF CASE FILINGS**

    **A.     Number of MDL Case Filings**

As of July 17, 2026, there are 3,723 cases in this MDL, with more than 304 new filings and 8 dismissals since the last case management conference. Of these 3,723 filed claims, a substantial percentage are subject to dismissal motions (see Section I(A)) or are otherwise alleged by Uber to be fundamentally deficient (e.g., they are not connected to a trip arranged on the Uber app).

The following chart provides further detail on the status of the case docket:

| | |
|---|---|
| **No. of Active MDL Cases** <br> *Includes cases pending dismissal or resolution but that remain on the docket* | 3,723 |
| **No. of Active MDL Cases in which Uber has Requested Dismissal Without Prejudice** <br> *Includes cases subject to pending dismissal motions before the Court* <br> *\*ECF Nos. 5891, 5914, 5915, 5989, 6192, 6350, 6420, 6468, 6785* | 93\* |

| | |
|---|---|
| **No. of Active MDL Cases Dismissed Without Prejudice and in which Uber has Requested Conversion to Dismissal With Prejudice** *Includes cases subject to pending conversion motions before the Court* *\*\*ECF Nos. 5567, 6340* | 315\*\* |
| **No. of Active MDL Cases Dismissed With Prejudice on Any Grounds** *MDL cases dismissed with prejudice to date* | 273 |
| **No. of Active MDL Cases Pending Resolution** *MDL cases pending resolution but that remain on the docket* | 831 |

### B.  Status of JCCP

Approximately 776 cases are pending in the JCCP. The next trial set for September 14, 2026, has been vacated.

### C.  Other Cases and Proceedings

Defendants have provided a current list of civil actions arising from allegations of sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

## II.  PRE-TRIAL SCHEDULE FOR *JANE DOE QLF 0001* TRIAL

The parties stipulated to and the Court entered a pretrial schedule for the Jane Doe QLF 0001 trial. ECF 6784.

## III. TRIAL LENGTH FOR *JANE DOE QLF 0001* TRIAL

At the June 16 CMC, the Court asked the Parties to propose two trial lengths for the upcoming Jane Doe QLF 0001 trial: one if Uber intended to contest whether the assault occurred as alleged, and one if Uber did not intend to contest that the assault occurred as alleged. The parties submitted their positions in the CMCs submitted in advance of the June 30 CMC. See ECF 6678.

**Plaintiffs' Position**

Whether Uber will contest that the assault actually occurred is the factor that will have the largest impact on length of trial. But rather than confirm its position on this issue, Uber seeks to delay the determination of trial length until the Court has ruled on the ability of Plaintiff to assert punitive damages.

Plaintiffs reiterate their position as set forth in ECF 6678: even if the Court agrees with Uber that punitive damages are foreclosed, that ruling will not meaningfully shorten trial. The same kinds of evidence needed to prove punitive damages will be required to prove negligence, with the sole exception of Uber's financial condition evidence. If anything, a ruling foreclosing punitive damages would primarily limit the scope of Uber's case, since Uber would no longer be entitled to introduce certain post-incident evidence (e.g., safety feature rollouts) that it otherwise intends to rely on solely in the punitive damages context. Regardless, the impact on trial length that the ruling on punitive damages will have is minimal.

The trial should be 65 hours if Uber contests the fact of the assault, and 55 hours if Uber concedes on the issue, and the Court should divide the time 60-40 since Plaintiffs bear the burden of proof.

**Uber's Position**

As part of the Parties' stipulation on the QLF pretrial schedule, ECF 6784, the Parties have agreed to a briefing schedule regarding punitive damages, in which that issue will be fully briefed by the end of July. Whether Plaintiff is entitled to punitive damages bears on trial length, and Uber respectfully suggests that a decision on this issue as soon as possible after briefing is complete will be helpful to determining trial length.

## IV. PROPOSALS FOR SCHEDULING FUTURE BELLWETHER AND NON-BELLWETHER TRIALS

**Plaintiffs' Position**

Due to trials and settlements, the bellwether pool is depleted. At the same time, while this MDL has been pending for nearly three years, only a small percentage of cases have resolved. The Court should determine the steps forward for all of the cases that deserve trial dates.

Plaintiffs have made a proposal to Uber that would (1) replenish the bellwether pool for future bellwether trial waves with cases that will facilitate resolution by providing the parties with new information about the strengths and weaknesses of claims and defenses in this MDL; (2) following streamlined discovery, remand/transfer non-bellwether cases in waves grouped by injury type and

case-dispositive legal issues; and (3) set ADR milestones (mandatory sessions, reporting obligations, etc.).

Uber's reliance on settlement progress to date does not address the core problem Plaintiffs' proposal is designed to solve. The substantial majority of filed cases are still without any defined path forward, nearly three years into this litigation. Case-by-case settlements without MDL leadership involvement is not a substitute for a structured process aimed at getting cases resolved, tried, or remanded.

Further, Uber's concerns about skewing the bellwether pool are unsupported and can be addressed through collaboration on future case selection. Likewise, Plaintiffs' remand proposal is a structured, category-based approach intended to provide insight into how different claims perform outside the bellwether pool, not an effort to favor particular cases.

Plaintiffs propose that the parties continue discussions regarding the proposed order and address the issue at the next CMC.

**Uber's Position**

The parties have achieved significant success in resolving MDL, JCCP, and state cases in the last year, with the assistance of JCCP Settlement Master Randi Ellis. This includes 972 filed MDL claims (approximately 25% of current MDL inventory) and 379 filed JCCP claims that are subject to final agreements or agreements in principle, as well as a substantial number of unfiled claims. This progress will continue. Uber agrees that replenishment is important to advance the bellwether process, but Plaintiffs' proposal would further distort the bellwether pool, undermining resolution efforts rather than facilitating them. As it stands, the bellwether pool is predominately comprised of Plaintiffs' selections, and Plaintiffs have proposed an approach that would skew the cases even more. In order to advance the litigation toward resolution, replenishment must correct the imbalance of the bellwether pool. Similarly, Plaintiffs' premature remand proposal is intended to pluck out Plaintiffs' preferred cases rather than meaningfully understand the value, if any, of different categories of cases across different venues. Uber will meet and confer with Plaintiffs and propose a more reasonable approach, and the Parties will discuss a briefing schedule to raise these important issues with the Court. Given

the breadth and significance of these issues, a case management statement and conference is not well-suited to fully vetting these issues.

## V.    STATUS OF QLF 001 TRIAL WORKUP

**Uber's Position**

After *B.L.* was pulled from the bellwether trial lineup, Plaintiffs' counsel assured the Court that QLF 001, a Wave 4 bellwether case, would be ready for trial in the Fall because discovery had "already occurred" before the case was transferred to the MDL and that it did not present the same issues as *B.L.* ECF 6483 at 2.[1] The past month has demonstrated that neither is the case: the majority of discovery has not occurred and there are significant discovery issues. This submission focuses on the significant discovery issues that have presented to date, which include: 1) Plaintiff's failure to preserve any relevant, contemporaneous text messages, including the text messages or communications with the witnesses who she allegedly discussed the incident with; 2) Plaintiff's failure to identify highly relevant *pre-incident* ███████████████████████████ ███████████████████████████, which has barred Uber from collecting highly relevant medical records; and 3) Plaintiff's highly deficient social media production where Plaintiff has been very active and vocal regarding this incident. Each of those issues is discussed in more detail below, and these will be presented to Judge Cisneros at the appropriate junctures, including through a Joint Status Report next week and in PTO 8 letters.

*Lack of Preservation of Text Messages.* Uber recently learned that Plaintiff failed to preserve any contemporaneous text messages regarding the alleged 2020 incident because she obtained a new phone in 2021 and did not transfer any of the data from 2020 onto her new phone. This revelation was surprising and contrary to Plaintiff's prior representations about the case. On March 15, 2025, Uber requested these contemporaneous communications in written discovery requests and Plaintiff responded on April 14, 2025 and agreed to produce those communications. Nevertheless, three weeks ago, after the Court set this matter for trial, Uber found out these communications were not preserved. The loss of these messages is a serious matter. Plaintiff testified under oath in a criminal trial that she

---

[1] Uber accurately advised this Court that significant discovery remained outstanding, making Plaintiff's proposal unfair and unrealistic.

made calls or texts "before and after the Uber ride," (8/31/2022 *State v. Le Trial* Tr. 35:6-9), and acknowledged in this lawsuit that she had contemporaneous communications about the alleged incident since then with at least 13 people, (6th Am. PFS) at 17; (4th Suppl. Resps. to Interrogs.) at Resp. No. 9. Those conversations would include critical evidence of Plaintiff's recollections and mental state immediately following the alleged incident. Making matters worse, just last week, Plaintiff informed Uber that she also damaged and then lost her subsequent phone, which she used from 2021 to 2024, and may not have any text messages from that device either (despite retaining counsel in July 2023).

Rather than providing clear and consistent information about what data does and does not exist, Plaintiff has provided conflicting information that has changed by the day and by the hour. Despite Uber repeatedly raising this issue and asking Plaintiff to clarify what data does and does not exist, Plaintiff now claims, for the first time in this statement, that she has text messages dating back to 2021 from a laptop which she previously stated "did not uncover contemporaneous text communications surrounding the incident." Obviously, this raises serious questions about the veracity of Plaintiffs' prior, contrary statements. Accordingly, the Court should require Plaintiff to promptly identify the name of the purported "expert" she has been working with and require that expert to explain what efforts were taken and to produce all information about what data does and does not exist on Plaintiff's various cell phones, related backups, and the forensic image of her laptop. The Court should also require this expert to sit for a deposition. Uber does not have the luxury of continuing to wait, while Plaintiff procrastinates producing her communications. Uber is also actively working to mitigate the effect of these preservation failures (including by serving document and deposition subpoenas on third-party witnesses Plaintiff said she communicated with about the incident, whom Plaintiff said she would work with to identify relevant communications) and is not yet in a position to request any specific relief but will seek all appropriate relief.

***Failure to Identify Relevant Mental Health Providers.*** Plaintiff has put her mental health history at issue in this lawsuit by alleging emotional distress from the underlying June 2020 incident and seeking damages for that alleged injury. Uber therefore requires discovery concerning other

potential causes of Plaintiff's claimed distress, including relevant mental health treatment predating the alleged incident. Plaintiff claims that she cannot remember the identities of her ██████████ ███████.[2] Existing records indicate, however, that Plaintiff ███████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Uber has not received information sufficient to identify the relevant providers or evaluate this ████████████, all of which is necessary to evaluate Plaintiff's claim███████████████████████████████.

During the June 16, 2026 case management conference, the Court specifically recognized that to be able to try this case Uber "need[s] the medical records," to prepare the case for trial and directed Plaintiff to do everything in her power to ensure that these records were produced "quickly." *See* Hg. Tr. at 27-30. Despite that clear guidance, Plaintiff still has not identified any new █████████ ███████████████████████████████████████████████ and has not produced any new pre-incident medical records. At this point, Uber is no closer to being able to collect and identify relevant records because Plaintiff has sought to impede and stonewall every reasonable effort Uber has proposed to help identify Plaintiff's pre-incident treaters. For example, Plaintiff has refused to execute pharmacy and insurance record authorizations that would aid in identifying the ██████████ ████████████████████████████████████████ prior to the alleged incident.[3]

_____

[2] Plaintiff states that she "███████████████████████████████████████████████████████ ███████████████ to Uber in discovery responses well before this case was selected for trial (produced to Uber on April 28, 2026)." That statement is highly misleading because █████████████████████████████ ███████████████████████████████████████ Plaintiffs cannot, and does not dispute, that she has been unable to identify ██████████████████████████

[3] As to the pharmacy authorization, Uber seeks that information because the records make clear these ████████████████████████████████████████████████, meaning that the records would reveal names of treaters. As to insurance authorization, Plaintiff served a subpoena on her *current* insurance carrier for records. But after questioning from Uber, it became clear that Plaintiff only used this carrier from 2015 onwards, such that this subpoena will not permit identification of the ███████ ██████████████████████████████████ Plaintiff allegedly does not recall who her insurance carrier was before 2015. And while Uber understands and appreciates that it may be difficult for Plaintiff to recall the names of her insurance company dating back several years, it appears Plaintiffs' counsel has not conducted a reasonable investigation to try to determine that information. In fact, during a July 15, 2026 conferral, Plaintiff's counsel flatly refused to answer whether they have even asked Plaintiff's parents – who counsel also represents – if they know who Plaintiff previously used for insurance. They

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

Because Plaintiff has refused to do so, Uber has filed a PTO 8 letter brief seeking to compel this information. Plaintiff's refusal to cooperate on this issue continues to delay and drag out the discovery process, thereby jeopardizing the tight schedule in this case.

*Deficient Social Media Production.* Plaintiff has dragged out her social media productions in the hopes of running out the clock on discovery. Despite Judge Cisneros previously entering an order explaining what social media materials should be produced in each case, Plaintiff waited until July 10—nearly a month after this case was first selected for trial—to begin producing any social media-related material, and even this production is plainly deficient (for example, the communications provided do not identify who the Plaintiff is speaking with), and will need to be corrected. That late production is particularly improper because documents first produced by Plaintiff on July 10 indicate that she downloaded them from her social media accounts as early as **April 2025**. Plaintiff has provided no reasonable explanation as to why she waited until July 2026 to produce materials she has had in her possession for over a year (even though Uber requested these materials in 2025 and followed up repeatedly after this case was selected for trial). This is part of an apparent pattern to delay necessary discovery, which Uber will address with Judge Cisneros.

In short, Uber is concerned that discovery issues in *QLF 001* may mirror those of *B.L.*, which was voluntarily removed from the pool after Uber uncovered serious discovery issues related to third-party communications, and wants to ensure the Court is fully apprised regarding some of the current issues. *See* ECF 6483 ("At the most recent CMC, the Court urged the parties to identify an alternate bellwether, one that does not raise concerns presented by *B.L.* or the bellwethers already tried. Plaintiffs have identified *Jane Doe QLF 0001* as the best option . . .").

*Uber Has Complied with Its Discovery Obligations.* In an attempt to deflect attention from her own conduct, Plaintiff suggests that Uber has somehow failed to comply with its discovery obligations because it has not yet provided deposition dates for two witnesses and not agreed to Plaintiff's demands about how many days certain materials need to be produced in advance of a

---

then changed that position a day later, claiming that they did ask Plaintiff's parents, but the parents were unable to provide any information.

30(b)(6) deposition. This is apples and oranges. Uber has already indicated it will provide dates this week, and disputes over how many days before a deposition preparation materials must be provided are a far cry from Plaintiffs' repeated narrative-shifting about whether highly relevant discovery even exists, and if so, when it will be produced. Plaintiffs also claim, with no support or explanation, that Uber has "refused to produce documents" related to the QLF case. That could not be further from the truth as Uber has met and conferred with Plaintiffs extensively and completed its production of case-specific documents in QLF. Unlike Plaintiff's baseless accusations, Uber's concerns have very serious ramifications for trial-readiness, and Plaintiff's continued filibustering undermines Plaintiff's counsel's repeated assurances to the Court that discovery was nearly complete in this case.

**Plaintiff's Position**

Uber devotes its portion of this statement to a manufactured set of unripe "discovery concerns" dressed up as prejudice, deployed for one purpose – delay. As Uber concedes, the parties are continuing to discuss those matters, and any genuine dispute will be resolved by Judge Cisneros through the PTO 8 process. None of it bears on QLF 001's readiness for trial. None of it resembles the third-party communication problems that led to the withdrawal of B.L. The first issue is not a discovery failure at all: it concerns text messages on a phone Plaintiff replaced, in the ordinary course, years before any duty to preserve arose. The second and third are ordinary, actively managed discovery matters that Plaintiff is completing on an expedited basis ahead of her deposition.

Uber's accusations, aired prematurely here, do not withstand scrutiny. As discussed in greater detail below, and as will be presented to Judge Cisneros if the parties cannot resolve these disputes, Plaintiff has met and exceeded her discovery obligations. Meanwhile, Uber has refused to produce documents, long overdue, that Plaintiffs need to proceed with case-specific 30(b)(6) depositions of Uber and other company witnesses. Chasing Uber to comply diverts resources. Plaintiff, however, is working with Uber to address these issues. Plaintiff is ready. Plaintiff remains willing to work with Uber to resolve these discovery matters and to get this case fully ready for trial on schedule.

***Plaintiff Has Met Her Preservation Obligations and Produced Contemporaneous Communications.*** Uber misstates Plaintiff's preservation obligations and misrepresents the parties'

communications. As Plaintiff informed Uber almost four weeks ago, in February 2021 Plaintiff traded in the iPhone that she had at the time of the assault; this trade-in was roughly a year and a half prior to obtaining representation (July 2023), roughly two years prior to commencing her state court action (August 2023) and over three years prior to filing in the MDL (December 2024). Plaintiff informed Uber of these facts during a June 26 conferral, and further informed Uber that she was working with a data recovery specialist to recover communications from her phone, and that there was a possibility some text messages from around the time of the assault would be unrecoverable despite those efforts. The circumstances surrounding Plaintiff trading in this phone does not implicate any preservation obligations that Plaintiff had at that time, nor does the speculative loss of text messages from this phone constitute a preservation failure – as opposed to practicalities of extended discovery requests.

In early 2024, Plaintiff inadvertently damaged her second phone beyond repair. In March 2024, Plaintiff obtained a new phone. To address this device change, Plaintiff's data recovery specialist imaged Plaintiff's current phone and Plaintiff's laptop that she has owned since before the assault. Through those efforts, Plaintiff has identified text messages dating back to 2021, as well as email communications from before the assault, which she is reviewing on an expedited basis and will produce to the extent they are responsive and non-privileged. Plaintiff intends to substantially complete this production by July 20.

While Plaintiff has been working to identify these communications, Uber has peppered her with invasive questions about her searches and accusations of preservation failures. This tactic is unproductive and has only led to miscommunications between the parties. When Plaintiff offered to confer about the items on this district's ESI checklist, Uber declined. Regardless, Plaintiff has complied with her preservation duties and continues to produce documents and communications responsive to Uber's requests on a rolling basis. Uber now demands details regarding Plaintiff's data recovery specialist, but the identity of that consultant and the details of counsel's work with that consultant are protected work product. *See* Fed. R. Civ. P. 26(b)(4)(D)

In addition, as Plaintiff advised Uber during a June 26 conferral, Plaintiff communicated with others through social media messaging. The first batch of these communications were produced to

Uber on July 10 and Plaintiff intends to substantially complete production of social media communications from two years prior to the assault through May 2025 (the date Uber served its requests) by July 20. The rolling productions will include communications from the months leading up to the assault, the day of the assault, and the days, weeks, and months following the assault.

***Plaintiff Has Conducted a Reasonable Investigation and Identified Mental Health Providers That She Can Recall.*** Uber's charge that Plaintiff "failed to identify" her relevant ██████████ providers is inaccurate. To date, Plaintiff has identified at least 10 ███████████████ ████████████████ treaters to Uber in discovery responses well before this case was selected for trial (produced to Uber on April 28, 2026).

Uber's current complaint is based on two discrete pieces of information that Uber then leverages to seek overbroad (effectively all access) authorizations for pharmacy and insurance records: ███████████████████████████████████████████████████████████ ████████████████████████████████. These entities ███████████████ ████████████████████████████████████████. That she cannot recall the provider name ██ ███████████████ is no surprise, given her young age at the time and lapse in time. Nonetheless, Plaintiff has made every effort to obtain the missing information, including calling family members, speaking with her parents, driving to the locations ███████████████████t, and *providing an authorization* for one of the entities (███████████████) where she cannot recall the identity of her provider. Despite these efforts, Plaintiff is unable to recall the identity of the first provider and cannot recall the treating counselor's name.

Notwithstanding these efforts, Uber demands grossly disproportionate authorizations that implicate information far beyond what is outlined above; and its reasoning is logically flawed – it is unclear how blanket authorizations will address Uber's complaints of "missing" information when it is unknown who to direct the requests to. Plaintiff is not attempting to hide the ball, but she cannot produce the identity ███████████████████████ that she cannot remember, despite great lengths to refresh her memory. Plaintiff continues her investigation ███████████████ and will provide Uber with any responsive information she is able identify.

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

***Uber's Productions Remain Deficient and the PSC Must Expend Needless Resources to Force Compliance.*** The PSC and Plaintiff have devoted substantial resources to ensure this bellwether is on track and have produced documents on a rolling basis, executed authorizations, issued subpoenas, and repeatedly offered to confer to narrow the parties' disputes. Uber, meanwhile, has withheld discovery Plaintiff is entitled to—including deposition dates for its own key trial witnesses, Todd Gaddis and Emilie Boman, and the deposition aids, documents requested in the deposition notices, and documents Plaintiff needs to prepare for those depositions and for trial. Uber cannot credibly claim prejudice from discovery timing while withholding the very dates and materials to which Plaintiff is entitled, forcing the PSC to expend considerable time and energy to ensure Uber's compliance with Rule 26. Nonetheless, Plaintiff remains committed to meeting all deadlines and is prepared to move forward with discovery in order to ensure that the trial commences on time. To that end, Plaintiff has, and will continue, to follow up with and meet with Uber on a consistent basis to ensure that all depositions and discovery proceed at a schedule that does not disrupt the Parties' ability to proceed with trial.

***Plaintiff's Social Media Production.*** Consistent with Judge Cisneros' order that scope of social media productions will differ on a case-by-case basis (see ECF 3136 at 6), the parties began conferrals on this issue on about June 23, 2026. On June 30, the parties reached agreement regarding the scope of social media production. Since then, Plaintiff has worked diligently to complete review of all social media communications from two years prior to the incident through May 2025. Given the multiple platforms and apps at issue, and the span of time under review, the cataloguing and review of information could not be completed by Uber's demanded deadline (July 17), but will be substantially completed one business day later, on July 20. Plaintiff has offered to adjust deposition dates as needed, but will be prepared to proceed on schedule on July 22.

Plaintiff began her rolling production on July 10 to get documents to Uber as quickly as possible. Uber faults Plaintiff for this speed by pointing to technical production deficiencies, but Plaintiff is working to remedy any deficiencies in her forthcoming July 20 production. Some things, however, are beyond Plaintiff's control. For example, some communications may not identify the

counterparty because the social media platform removes certain names, such as when a person's account is deleted. Uber points to some subset of documents that Plaintiff downloaded in April 2025 to begin review and production, but at that time Plaintiff objected to Uber's overly broad requests, and the parties and the Court subsequently turned their focus to prioritize the Wave 1 cases. Plaintiff began production immediately after the parties agreed on scope.

## VI. RESOLUTION / MEDIATION

On July 15, 2026, the Court entered Amended Pretrial Order 22, directing the parties "to submit any proposals for managing settlement discussions, as discussed during the last case management conference, by July 17, 2026." Pretrial Order 22 § 3.c, ECF 2459, addresses these issues. The Parties continue to meet and confer regarding these issues and to discuss a potential replacement for Judge Andler as MDL Settlement Master.

## VII.    NEXT CASE MANAGEMENT CONFERENCE

The Parties request that the Court set the next monthly Case Management Conference.

Dated: July 20, 2026

By: */s/ Sarah R. London*

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated:  July 20, 2026

**KIRKLAND & ELLIS LLP**

By: */s/ Laura Vartain Horn*
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

14
JOINT CASE MANAGEMENT STATEMENT
Case No. 3:23-md-03084-CRB

## FILER'S ATTESTATION

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: July 20, 2026

*/s/ Laura Vartain Horn*
Laura Vartain Horn