*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT STATUS REPORT FOR JULY 23, 2026 DISCOVERY STATUS CONFERENCE** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:        Hon. Lisa J. Cisneros |
| | Courtroom:   G – 15th Floor |

**JOINT STATUS REPORT**

In advance of the discovery status conference set for July 23, 2026 at 10:30AM PST, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), respectfully submit this Joint Status Report.

I. **Duration for Driver/Rider History and Regional case-specific 30b6s**

**Plaintiffs' Position:** On June 19, Plaintiffs served 30(b)(6) notices on topics relating to the QLF 001 trial. The parties disagree on the duration of the depositions, given Uber intends to designate more than one witness per notice. Plaintiffs propose five hours for each designated witness, to be divided at the discretion of the questioner. From past experience, Uber has often split topics that

overlap, necessitating time across witnesses to lay foundation for documents and ask questions of multiple witnesses multiple times when, if one witness was covering the topics, Plaintiffs would only need to ask once. Plaintiffs' proposal is consistent with PTO 16 and the Federal Rules. *See* Fed. R. Civ. P. 30(d)(1)); Fed. R. Civ. P. 30(d)(1) advisory committee's note to 2000 amendment (deposition of each person designated under 30(b)(6) "should be considered a separate deposition" which would allow 7 hours per designated witness). Uber's proposal, however, seeks to limit Plaintiffs' deposition time regardless of the number of witnesses, which risks significant prejudice to Plaintiffs, particularly considering that Uber still has not indicated the number or identity of witnesses it will designate.

**Defendants' Position:** The Parties agree that if Uber presents a single witness in response to a 30(b)(6) notice, Plaintiff is limited to a maximum of seven hours of questioning under the Federal Rules. Plaintiff argues that if two witnesses are proffered on a single notice, she needs at least three more hours because she will need to ask background and foundational questions twice. But the witnesses Uber may use for these depositions are well known to Plaintiff and have been deposed previously; moreover, any foundational questions about a witness's preparation efforts can be covered in far less than three hours. Plaintiff's counsel have a pattern of taking onerous and duplicative depositions. Especially given the proximity to trial and the cumulative, overlapping nature of Plaintiff's Notices, the Court should require the depositions to be conducted efficiently, limiting additional Rule 30(b)(6) testimony to 7 hours across all served Notices.

## II.    Timeline for Uber to object to case-specific 306bs (including document requests)

**Plaintiffs' Position:** With respect to the June 19 case-specific 30(b)(6) notices, Uber agreed to provide objections to document requests within those notices and a motion for protective order for certain topics by deadlines that Uber unilaterally moved and ultimately, ignored. Late into the evening that this submission was due, Uber finally provided draft objections to document requests and a draft PTO 8 letter objecting to one notice entirely. It is unclear whether Uber intends to object to any other topics or document requests. Plaintiffs ask that Uber be ordered to provide any additional objections by June 24 and any objections lodged after that date be waived.

Additionally, to date, Uber has agreed to produce a witness on some topics on August 7 but

has not identified which topics he will address. Plaintiffs ask that the Court order Uber to, by July 24: (1) identify topics to be covered by the August 7 witness; (2) provide alternative dates for remaining deposition topics to which it does not object. Further, because Uber's late objections prevent the parties from working through disputes and seeking relief from the Court in time for documents to be produced before the August 7 deposition, Plaintiffs request the Court (3) preclude Uber from designating the August 7 witness on topics related to document requests to which Uber objects and (4) order Uber to file a motion for protective order regarding any unresolved objections by July 27.

**Defendants' Position**: Plaintiff's position blames Uber for her own delay. During the parties' conferrals, Uber has repeatedly explained that it will seek relief on: (a) lobbying topics in Plaintiff's "regional" notice; and (b) Plaintiff's "Ride Matching" notice (since SRAD was not in effect for the ride in question). The Parties have already exchanged drafts of a PTO 8 letter brief on the lobbying topics to be filed by July 21, and as to "Ride Matching," Uber sent Plaintiff a draft letter brief on July 20. Plaintiff has refused to expedite the time for responding to these drafts despite taking the opposite position on her own PTO 8 letters. Thus, any delay is of her own making.

The other remaining dispute is that Plaintiff has 25 very broad document requests across her 30(b)(6) notices, which seek either a) general discovery documents that the parties have been addressing under the supervision of the Court for several months; or b) case-specific documents that Uber has already produced (*See* Dkt 6730, 6739). At the parties' July 16 conferral, Plaintiff's counsel could not identify a single requested document that had not been previously produced. If the parties are unable to reach agreement on this issue, Uber will file a motion for a protective order by July 27.

III.     <u>**Timeline for Uber to produce documents before depositions (including deposition aids)**</u>

**Plaintiffs' Position:** Uber should provide deposition aids and documents responsive to requests in deposition notices no less than one week in advance of each deposition. Uber has often produced lengthy deposition aids referencing hundreds of documents and large document productions the night before depositions. Uber should not be permitted to dump heaps of information upon Plaintiffs at the eleventh hour and insist that a full deposition should be taken the next morning. These late disclosures severely prejudice Plaintiffs and the only remedy is to leave the deposition open. At

this late stage before trial, the practical reality is that there is no time to reopen depositions.

**Defendants' Position:** Some of Uber's prior 30(b)(6) deponents have prepared deposition aids that include detailed facts it would be difficult to memorize. These aids organize information already in Plaintiffs' possession. Uber should not be required to produce these documents a week before a deposition. First, the aids are prepared by witnesses as part of the deposition preparation process, which is not typically complete a week in advance. Plaintiff cites no rule or authority requiring a designee to complete preparation—or disclose preparation materials—seven days before a deposition.

Second, the deposition aids include facts (based on produced documents) Plaintiff already has, such as when the driver was onboarded onto the Uber platform, when the alleged incident occurred, etc. Plaintiff does not need a week to review information she already has. The Court should therefore deny Plaintiff's request.

**IV.    Date for 30b6 regarding Uber's new background check policy**

**Plaintiffs' Position:** Plaintiffs have yet to receive a date for this deposition, which was noticed on July 9. Plaintiffs request that Uber be compelled to provide dates by July 24. Per PTO 16, Uber was to provide dates by July 19. Chasing down Uber for deposition dates has been an ongoing problem. Plaintiffs requested dates for Uber witness Matt Mermel on June 19 but, in violation of PTO 16, Uber did not provide dates until July 15. Similarly, Uber did not provide dates for depositions the Court ordered weeks ago—Boman, Gaddis, and Kansal—until July 20.

**Defendants' Position:** Uber is evaluating Plaintiff's broad notice related to Uber's background check policy rolled out in July 2026 and will provide dates for a witness this week in the event that it does not move for a Protective Order. Uber has concerns that this Notice, which seeks sweeping testimony and includes 30 separate document requests, is an attempt at end-run around the Court's prior rulings and the Parties' prior discussions related to which data and documents need to be supplemented in advance of trial. As to other witnesses, Plaintiff's position makes clear Uber has offered dates for these individuals and that no dispute remains.

**V.    QLF 001 Specific-Discovery**

**Defendants' Position**: In seeking to elevate QLF 001, a Wave 4 bellwether, to the next trial

JOINT STATUS REPORT FOR THE JULY 23, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB

slot, Plaintiff assured the Court that: (1) discovery had been conducted before the case was transferred to the MDL and was nearly complete; and (2) the case did not present the same concerns as B.L. ECF 6483 at 2. Neither was true. Very little discovery had been conducted, and there are extensive and pervasive discovery issues in QLF 001 that may materially impact trial-readiness.

### A.  Plaintiff's Failure to Preserve Extensive, Relevant Communications

On June 26, 2026, Plaintiff's counsel disclosed for the first time that Plaintiff replaced her phone in 2021 without transferring or otherwise preserving the data from her prior device. Plaintiff also recently disclosed that a later phone was broken and not backed up. Since that time, Plaintiff has offered numerous shifting and contradictory explanations about whether she has any text messages at all between 2020 and 2024, and if not, what happened to them. Just this evening, Plaintiff indicated for the first time that she plans to produce 5,000 pages of documents (apparently communications), though it is unclear when they were sent or received and what types of communications they are (e.g., text messages vs social media).[1] At this point, Uber has no idea what Plaintiff retained (if anything), what was recovered by her purported data expert (if anything), and what remains irretrievable.

Plaintiff's constantly shifting narratives make it impossible to know the truth. The Court should require Plaintiff to provide Uber **by the end of the week** with an explanation of: (1) how and why her phone(s) were damaged, replaced, and/or lost; and (2) what efforts Plaintiff has taken to mitigate the prejudice to Uber of these losses. In addition, Plaintiff should be required to: (1) identify her data expert; (2) provide detailed information about what efforts he/she made; (3) produce all information about what data does and does not exist on Plaintiff's various cell phones, related backups, and the forensic image of her laptop; and (4) allow Uber to depose the expert by the first week in August.

---

[1]  Plaintiff's production, delivered at 6:00 PST on July 20, appears to include over 5,000 documents that they say are "communications, social media, and payment transactions." On initial review, it appears this production includes additional documents collected in 2025 (but for some reason not timely produced), documents plagued by technical issues, and a large amount of irrelevant content. Most the "communications" do not appear to be text messages and Uber has yet to identify any produced text messages about the alleged incident.  Uber reserves the right to raise additional specific issues about this production with the Court during the July 23rd hearing and through subsequent briefing.

The loss of more than three years of relevant text message communications has substantially prejudiced Uber. Plaintiff testified under oath in a criminal trial that she made calls or texts "before and after the Uber ride," (8/31/2022 *State v. Le* Trial Tr. 35:6-9) and acknowledged in discovery that she had contemporaneous communications about the alleged incident ***with at least 13 people***. Those communications would include critical evidence of Plaintiff's recollections and mental state. While Plaintiff has argued that her failure to preserve these messages is not prejudicial because she has produced social media messages, one set of messages cannot replace another. Indeed, the Court has already indicated that both must be produced.

C.    Deficient social media productions

Plaintiff has repeatedly waffled on what documents she would agree to provide from her social media accounts and only began producing documents after Uber sent her a draft PTO 8 letter. This is highly troubling because some of the documents indicate that she downloaded them from her social media accounts as early as **April 2025,** meaning that she had them in her possession at the same time she was arguing that producing this material would be highly burdensome. Plaintiff's July 10 production was not only late, however. It was also woefully inadequate, as explained below:

- ***Missing dates and other metadata in photos and videos.*** Plaintiff's production lacks basic metadata. As a result, Uber is unable to determine the source of these images, the date on which they were posted or sent, or to whom and for what purpose they may have been posted or sent.

- ***Missing names and recipients in messages***. Numerous messages do not identify the other participants, either on the face of the document or in associated metadata. Plaintiff has also refused to informally identify the individuals in these messages.

- ***Potentially Altered Messages.*** Certain messages were produced in inconsistent formats, including enlarged, reduced, rotated, or cropped images. These formats make it difficult to determine whether the production contains complete conversation threads. Uber is entitled to complete, legible versions of each conversation.

- ***Failure to Produce Embedded Images.*** Plaintiff has produced multiple messages that indicate the presence of embedded images, but those images are not visible and, if they were produced, Plaintiff has not provided Uber a way to link the images to the relevant messages.

Plaintiff's generic statement that "she intends to rectify certain technical deficiencies" is inadequate, particularly given how she has sought to drag out proper production of social media documents. For example, when Uber pointed out the deficiencies above and proposed that the parties amend the existing draft PTO 8 letter brief to address these topics, Plaintiff insisted that Uber had to

restart the PTO 8 process, adding needless delay. Again, there is no time for such filibustering with an October 5 trial pending. The Court should order Plaintiff to: (1) complete her social media productions by July 24, remedying the deficiencies listed above; (2) certify the completeness of her production; and (3) agree to expedited briefing on this and other discovery issues if and when they arise.

**Plaintiff's Position:** Uber casts aspersions to give the impression that Plaintiff is avoiding discovery obligations. The record demonstrates otherwise. Plaintiff has addressed Uber's complaints in conferral and produced today (July 20) over 5,000 pages of documents.

Plaintiff Has Met Her Preservation Obligations and Produced Contemporaneous Communications. Far from preservation failure, Uber points to a routine cell phone upgrade long before Plaintiff even retained counsel for this action. In February 2021, Plaintiff traded in the iPhone that she had at the time of the assault—roughly *a year and a half prior* to retaining counsel for this action, and roughly *two years prior* to commencing this action.

In early 2024, Plaintiff inadvertently damaged her second phone beyond repair by dropping it in water. She obtained a new phone in March 2024, which has been backed up. Plaintiff's data recovery specialist imaged Plaintiff's current phone and her laptop (which she has owned since before the assault). Through these efforts, Plaintiff has identified text messages dating back to 2021 and email communications from before the assault. Plaintiff reviewed these records on an expedited basis and produced responsive documents. Consistent with Plaintiff's RFP responses, the production includes communications from before the assault, around the time of the assault, and after the assault. As Plaintiff has advised Uber, her agreement to produce communications extends to social media messaging. The first batch of these communications were produced to Uber on July 10, and Plaintiff substantially completed production on July 20. The production includes direct messages on social media apps regarding the assault, her mental health before and after the assault, discussions of rideshare use, and other documents responsive to Uber's voluminous requests.

Uber complains that Plaintiff did not disclose that she traded-in her old phone in her RFP responses, but the appropriate time for this type of discussion would be an ESI conferral. Plaintiff invited Uber to confer about the items on this district's ESI checklist, but Uber declined. Uber points

to "13" people who Plaintiff disclosed as individuals she spoke with around the time of the incident. But this number includes the Uber driver who assaulted her, the Sherrif, nurses who cared for her, and others for whom there is no reason to believe Plaintiff exchanged any text messages and who Uber can subpoena. For others on that list, Plaintiff will produce any communications in her possession, and Uber is scheduled to depose those who Plaintiff's counsel represents, including Plaintiff's parents. Uber has or is not entitled to the other information it demands. Plaintiff explained the circumstances of her trade-in and destroyed phone. The identity of Plaintiff's consulting expert is work product and so are the details of counsel's work with that consultant. *See* Fed. R. Civ. P. 26(b)(4)(D).

Plaintiff's Social Media Production. The relief Uber seeks is moot. *First*, Plaintiff substantially completed her social media production on July 20. *Second*, that production remedied technical deficiencies in her initial production to the extent feasible. *Third*, Plaintiff agreed to produce social media documents in every category Uber demanded. *Finally*, there is no dilatory conduct, as Plaintiff has informed Uber of this information and complied with PTO 8 when Uber sent a letter on this topic.

Consistent with this Court's order that the scope of social media productions will differ on a case-by-case basis (*see* ECF 3136 at 6), the parties began conferrals on this issue on June 23, 2026. On June 30, the parties reached agreement, and since then Plaintiff has worked diligently to complete production. Given the amount of data (30gb), the multiple platforms and apps at issue, and the span of time under review, the cataloguing and review of this information could not be completed by Uber's initial demanded deadline of July 17. That Plaintiff downloaded a handful of documents as early as April 2025 does change this burden analysis. And while Plaintiff initially objected to Uber's broad requests, she began producing documents promptly after the parties agreed on scope.  Plaintiff has offered to adjust deposition dates as needed.

Uber raised purported deficiencies in Plaintiff's production for the first time on July 14. Plaintiff made an initial production as quickly as possible in response to Uber's demands. Her further production addresses technical problems, such as date and source information Uber claims is missing. Embedded images have been produced to the extent available, as well as identifying information of counterparties to communications. Plaintiff cannot, however, control when social media platforms

remove certain information, such as when a person's account is deleted or how parties are identified. Finally, messages have been and will be produced in context.

Uber accuses Plaintiff of "needless delay," but Plaintiff responded to Uber's initial PTO 8 letter regarding social media in accordance with PTO 8. It was Uber who chose not to file on the appointed day. Uber then threatened to send a new letter and demanded a response within 24 hours, which prompted an objection from Plaintiff. Uber never sent another letter on this topic.

**VI.    Plaintiff's Initial Disclosures and Uber's 26 case specific depositions in QLF 001**

**Plaintiff's Position**: Without leave of court, Uber served deposition subpoenas on 26 nonparty individuals in the QLF 001 case. This far exceeds the presumptive 10 deposition limit under the Federal Rules and does not even include depositions Uber intends to take of Plaintiff or her experts. While the Court previously declined to set a specific limit on nonparty depositions, it did so "without prejudice to Plaintiffs seeking a protective order if they object to the number of witnesses noticed for a deposition in a particular case." ECF 2754. The Court further noted it would consider limits "if the volume of deposition notices is abusive or unduly burdensome." 26 nonparty depositions in a case set for trial in a little over two months is abusive and unduly burdensome. Uber's justification for this barrage is that these individuals were named in Initial Disclosures. But Plaintiff's disclosures are not the same as her trial witness list, and Plaintiff has since provided a narrowed list of 16 individuals she will likely call at trial. Uber, nevertheless, refuses to withdraw *any* of the 26 deposition notices. Plaintiff, accordingly, anticipates seeking a protective order through PTO 8.

Uber's accusation that Plaintiff failed to preserve messages about the incident or failed to provide accurate medical records is inaccurate (*see* above and ECF 6832) and does not validate its discovery abuses. Plaintiff is amenable to a bilateral stipulation that an individual appearing on a party's trial witness list, who has not previously been deposed, may be made available for a pretrial deposition, but the parties have been unable to negotiate the details. For example, the stipulation must be consistent with the Federal Rules, apply equally to each party, and not waive rights to challenge and object to late-disclosed witnesses. Despite these discussions, Uber has refused to streamline its third-party deposition subpoenas and has not responded to Plaintiff's most recent request for conferral.

**Defendants' Position:** Plaintiff's counsel have taken more than 60 depositions of Uber witnesses; they have listed 60 individuals on her initial disclosures as supposedly having relevant information; and they have identified 16 "may call" trial witnesses. By contrast, they complain that Uber seeks non-party depositions to obtain information needed to defend itself at trial. The notion that Plaintiff should be allowed to bombard Uber with discovery, while Uber is hamstrung in developing its defense, is consistent with her counsel's pattern of treating discovery like a one-way street.

Third-party discovery (both document requests and depositions) is particularly critical here, because, as noted in Section II, Plaintiff has failed to preserve any text messages related to the incident and has not been able to remember the identities of her healthcare providers. In short, Uber does not intend to take depositions of 26 witnesses but has been forced to issue these subpoenas to piece together the facts of this case because of Plaintiff's failure to provide timely information.

In order to streamline discovery and avoid unnecessary depositions, Uber proposed that any third-party witness included on either party's trial witness list who has not previously been deposed be made available for a pretrial deposition. As of this evening, Plaintiff appears to agree with that proposal (albeit while refusing to state that directly), which should streamline Uber's requests. If a dispute remains, the parties will brief this issue pursuant to the PTO 8 process.

## VII.    Pending PTO 8 Letter Brief

**Joint**: The Parties will be prepared to discuss the Joint Letter Brief Regarding Plaintiff Jane Doe QLF 001's Medical Records Authorizations (ECF 6832) at the Discovery Status Conference.

## VII.    Lyft Subpoena

**Plaintiffs' Position:** On July 1, Plaintiff QLF 001 served Lyft with a subpoena for deposition and documents. The document requests track the scope of this Court's order in connection with other bellwether cases. Lyft did not serve objections by its July 15 deadline; instead, its counsel represented that it intends to move to quash. The parties are scheduled to confer under PTO 8 on July 21.

JOINT STATUS REPORT FOR THE JULY 23, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB

By: */s/ Roopal Luhana*

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Michael Vives*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN
MICHAEL VIVES

**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

JOINT STATUS REPORT FOR THE JULY 23, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: July 20, 2026

By: /s/ *Ellyn Hurd*
*Ellyn Hurd*

JOINT STATUS REPORT FOR THE JULY 23, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Ellyn Hurd*
Ellyn Hurd

JOINT STATUS REPORT FOR THE JULY 23, 2026 DISCOVERY STATUS CONF.
Case No. 3:23-MD-3084-CRB