# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S 30(b)(6) DEPOSITION NOTICE RE RIDE MATCHING AND RISK ASSESSMENT**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

|  |  |
|---|---|
| JANE DOE QLF 001,<br><br>      Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:     Hon. Charles R. Breyer<br><br>Courtroom:  501 |

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff's Notice of 30(b)(6) Deposition Regarding Ride Matching and Risk Assessment.

Respectfully submitted,

DATED: July 22, 2026

By: /s/ *Roopal P. Luhana*
ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Laura Vartain Horn*
LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

KIM BUENO
State Bar No. 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Tel: (512) 678-9100
Email: kim.bueno@kirkland.com

JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Counsel for Defendants Uber Technologies, Inc.,
Rasier, LLC, and Rasier-CA, LLC*

2

## I.    Uber's Position:

**Plaintiff's Ride Matching Notice is irrelevant and burdensome.** Plaintiff has served three 30(b)(6) deposition notices on Uber in this case that include 21 topics, 83 so-called subtopics, and 93 unique definitions. One of those notices, Plaintiff's Notice of 30(b)(6) Deposition Regarding Ride Matching and Risk Assessment (the "Ride Matching Notice") seeks to compel a corporate witness to prepare for and testify to broad, complex topics related to Uber's matching processes and the Safety Risk Assessed Dispatch Model ("S-RAD"). Ex. A (Pl.'s 30(b)(6) Notice) at 5-6.[1] The notice should be quashed because: (1) S-RAD was not in existence at the time of Plaintiff's ride; (2) Plaintiff was a guest rider, which means S-RAD (or any other risk model) has no relevance to her case; and (3) Uber witnesses have repeatedly testified that prior to S-RAD, the metrics used by Uber's matching system focused solely on efficiency and did not assess the risk of sexual assault or misconduct.

Plaintiff concedes that S-RAD evidence is not relevant.[2] Nonetheless, instead of simply withdrawing her notice—or drastically narrowing it to focus on the evidence she claims to need—Plaintiff argues that Uber should proffer a corporate representative for a seven-hour deposition to provide broad testimony about what, if any, matching system was in place (or could have been in place) with respect to risk before S-RAD. Plaintiff has no need for such a deposition. Uber's corporate representative has already testified that there was no matching system that considered risk before S-RAD; instead, prior matching systems simply considered efficiency metrics like estimated time of arrival. Moreover, the technical aspects of how Uber decided to employ efficiency metrics to pair riders with drivers before S-RAD are not relevant or proportional to the needs of this case and do not bear on whether Uber was or was not negligent with respect to this particular ride.

Uber has offered to provide Plaintiff with a sworn declaration stating that S-RAD was not in effect at the time of this ride and that Uber only considered efficiency metrics when pairing riders and drivers. That is more than sufficient to satisfy any conceivable need she could have for this information. Plaintiff's refusal to accept such a declaration strongly suggests that the purpose of the deposition is to harass, not to obtain relevant information.

**Background.** Prior to 2022, Uber paired riders with drivers using only efficiency-based controls, such as wait times and proximity. Ex. B (7/23/25 Wong Dep.) 110:4-19, 112:4-19. In July 2022—***more than two years after the alleged incident***—Uber launched the first iteration of S-RAD, which was the first model to account for safety-related factors in pairing riders and drivers. *Id.* 33:4-34:14; 116:2-5 (Before S-RAD, "Uber did not take into account the risk of sexual assault or sexual misconduct" in the matching process).[3] Plaintiff is well aware of these facts. Counsel in the MDL and JCCP have already deposed Sunny Wong, Uber's Senior Manager of Applied Science for Safety, for more than ***44 hours***, both about S-RAD and about the efficiency model pre-dating S-RAD. Indeed, the four topics in the Ride Matching Notice are *identical* to those served in Plaintiffs' last MDL notice: (i) the method of driver selection; (ii) the use of "Risk

---

[1]    The parties are conferring regarding other overbroad and disproportionate topics in these notices. Uber reserves its rights to raise these issues with the Court if they cannot be resolved.

[2]    Despite this admission, Plaintiff indicates she will still pursue those topics should the deposition move forward.

[3]    Mr. Wong's testimony addressed the historical development and operation of Uber's matching systems generally; it was not limited to North Carolina or to the ride discussed in the cited questioning.

Sensitive Matching"; (iii) the assigned "Risk Ratings"; and (iv) the identified "Risk Factors." Ex. C (July 18, 2025 30(b)(6) Notice) at 5-6.

**Legal Standard.** The keystone of discovery is proportionality. Parties may only obtain discovery "that is relevant to [a] claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because "Rule 30(b)(6) places substantial responsibilities and burdens on the responding corporate party," the bar for seeking such discovery is high. *Darbeevision, Inc. v. C&A Mktg.*, 2019 U.S. Dist. LEXIS 134914, at *20 (C.D. Cal. Jan. 28, 2019). Thus, the topics on which a 30(b)(6) deposition is sought cannot be irrelevant, overly broad, duplicative, cumulative, or harassing. *3D Sys., Inc. v. Wynne*, 2026 U.S. Dist. LEXIS 76606, at *5-6 (S.D. Cal. Apr. 7, 2026); *see also id.* at *7 ("The assessment of burden and proportionality in the context of a Rule 30(b)(6) deposition notice involves 'a healthy dose of common sense.'").

The requesting party has the burden of "painstaking specificity" in designating topics "that are relevant to the issues in dispute" and are not overbroad. *Darbeevision*, 2019 U.S. Dist. LEXIS 134914, at *20. And "Plaintiff is not entitled to duplicative information[.]" *Burton v. Abbvie, Inc.*, 2023 U.S. Dist. LEXIS 128048, at *12-13 (C.D. Cal. June 21, 2023). "Courts 'have not hesitated to issue protective orders when'" a party fails to tailor topics within these permissible boundaries. *Id.* (citation omitted). Likewise, courts may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Moreover, a "court must limit discovery that… 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Dean v. Uber Techs., Inc.*, 2025 U.S. Dist. LEXIS 169501, at *145 (N.D. Cal. Aug. 29, 2025) (Cisneros, J.) (quoting Fed. R. Civ. P. 26(b)(2)(C)); *see also, e.g.*, *Robinson v. Cnty. of San Bernardino*, 2025 U.S. Dist. LEXIS 188056, at *8, *9-10 (C.D. Cal. Sept. 23, 2025) (granting a protective order on 30(b)(6) topics related to internal investigations by the defendant where a knowledgeable witness could sign a declaration saying no such investigations were conducted).

**The Court Should Grant a Protective Order**. The Court should grant a protective order as to the Ride Matching Notice because the listed topics are not proportionate to the needs of the case.

*First*, Mr. Wong has already testified, under oath, that ***risk assessment factors were not incorporated in the matching process at the time of the subject ride***. Ex. B (7/23/25 Wong Dep.) 111:14-22, 112:17-19, 115:24-116:5. The only conceivably relevant subject within the Ride Matching Notice is the "algorithm(s) Uber utilized" for and "parameters, variables, and data-pertaining [*sic*] to the Subject Ride, Subject Driver, and/or Plaintiff" (Topic 1). But even that topic is, at best, marginally probative of Plaintiff's claims—Uber has already provided sworn testimony that these factors were related only to efficiency. *See, e.g.*, *id.* 112:4-19. To the extent Plaintiff wants to hammer that point with jurors, she already has plenty of ammunition to do so.

*Second and relatedly*, the Ride Matching Notice would place an undue burden on Uber, requiring significant time and resources to prepare for and attend the deposition. Particularly given the limited amount of time between now and trial, the parties should focus on matters that are actually relevant to trial. As noted above, most of the Notice concerns a system that Plaintiff concedes did not exist during the relevant period, and the potentially relevant portion has already been explored extensively. And the fact that Plaintiff was a guest rider renders the evidence doubly irrelevant. In short, any deposition would divert substantial resources from trial preparation without any material benefit to Plaintiff (who did not even arrange the ride or use her own account).

*Third,* "a signed declaration from a knowledgeable [] employee" is sufficient to establish the limited facts sought by Plaintiff. *Robinson*, 2025 U.S. Dist. LEXIS 188056, at *8, *9-10*. Uber could submit a declaration explaining (as it already has in depositions) that matching for the subject ride only used factors such as proximity, with the goal of maximizing efficiency, and did not assess

risk. Where this "'more convenient, less burdensome, or less expensive'" method of obtaining discovery exists, the Court "must limit discovery" to that method. *Dean*, 2025 U.S. Dist. LEXIS 169501, at *145 (Cisneros, J.).[4] Plaintiff argues that a declaration does not suffice because "declarations cannot testify at trial." But, as noted above, Plaintiff already has ample deposition testimony to the effect that S-RAD did not exist in 2020. Any additional testimony on this topic would be cumulative and wasteful.

In short, the Ride Matching Notice is not proportional to the needs of the case; nor is it aimed at legitimate discovery. For all of these reasons, the Court should grant Uber a protective order as to the Ride Matching Notice.

## II.    Plaintiffs' Position:

The question presented by this letter brief is whether Plaintiff may depose Uber on the factors Uber considered, or could have considered, in choosing Victor Le to drive Plaintiff the night she was sexually assaulted. The obvious answer is yes: how Uber chose this driver for this ride is the central question in the case. Every previous bellwether obtained 30(b)(6) testimony about the selection and assignment of the specific driver in that case; this bellwether should be no different.

Plaintiff and Uber agree on one thing: this deposition does not need to be about S-RAD. Uber's position misses the point: Plaintiff's ride did occur before S-RAD was launched, but that is precisely the reason that Plaintiff now seeks a deposition about what measures Uber took or could have taken at the time of Plaintiff's ride to protect her, and how Uber chose to send this driver for this ride.

Uber's position statement represents an incorrect and overbroad reading of the deposition notice. Even though S-RAD was not active at the time of Plaintiff's ride, Uber nonetheless was not powerless to act in other ways to prevent dangerous driver-rider pairings. This is an area that was not explored during S-RAD depositions, because, to state the obvious, those depositions focused on S-RAD. To that end, this testimony is anything but duplicative. To date, there have not been depositions that focused on this specific ride, how the driver and rider were matched, or how drivers and riders were matched generally during the specific time period when Plaintiff's ride occurred.

Uber suggests that 16 lines of testimony from Mr. Wong's deposition (including questions and objections) render the noticed deposition duplicative. Uber is incorrect. Mr. Wong testified only that, when Ms. Mensing was assaulted in 2019 in North Carolina, "S-RAD was not on during that time so it was measuring whatever controls were on the matching platform at that particular time period …." Ex. B (7/23/25 Wong Dep.) 112:12-16. To state the obvious, North Carolina in 2019 is not Texas in 2020 (and Uber has long maintained that its practices vary by region). More importantly, when pressed on what factors Uber *did* look to at that time, Mr. Wong avoided answering the question:

---

[4]    A sworn declaration that no "Risk Sensitive Matching," "Risk Rating(s)," or "Risk Factors" were used for the subject ride (or the subject driver or Plaintiff herself) would also moot Topics 2-4, just as the declaration in *Robinson* did by stating that no investigation took place. *Id.* Regardless, Plaintiff does not seriously argue that those Topics are relevant to her claims.

Q:      And those controls were only controls related to efficiency, right?

A:      Yes. … I can't speak for the matching team, so they generally focus on ETA and potentially other factors, right. But I can't speak to what the matching team does.

Q:      Well, you've been designated by Uber to speak on its behalf about the topic how Uber selected the subject drivers for the subject ride, right?

A:      Right.

Q:      And you know that Uber used efficiency considerations in selecting the subject driver for the subject rider in March of 2019, right?

A:      There's lot of factors that the marketplace team teams into account to match a driver for a particular trip request. But again, during this particular trip request, S-RAD was still being tested and was not active during this time period.

*Id.* at 112:17-113:16; *see also id.* at 117:6-10 ("Q: [A]re you able to tell me whether in the pairing decision Uber took into account any safety considerations for Ms. Mensing's trip? A: Not specifically for the pairing.").

Nor will a written declaration suffice. Declarations cannot testify at trial. And Uber executives are outside the subpoena power of the Western District of Texas. Absent a deposition on these issues, Uber will have the unilateral choice of whether a witness testifies at trial about how Uber came to select this driver for this ride. A deposition is Plaintiff's only chance to obtain testimony she may choose to use at trial.

Indeed, the first topic in Plaintiff's notice seeks testimony on how Uber selected "the Subject Driver for the Subject Ride." (Exhibit A, p. 5). Plaintiffs are entitled to explore how this passenger and driver were paired and what alternatives were available. Further, the other three topics deal with datasets, such as risk ratings and Risk Sensitive Matching (not S-RAD) and are not duplicative and are again specific to this ride. That some testimony was previously obtained about how Uber generally matched passengers and drivers in the pre-S-RAD era, does not negate Plaintiffs' need for case-specific testimony on these topics. Barring Plaintiff from taking this deposition simply because Plaintiffs were able to ask general questions about the years-long pre-S-RAD era would be like telling a plaintiff in a medical device case that she was allowed to take depositions to establish general but not specific causation.

Finally, to the extent Uber's primary objection to this notice is that it does not want Plaintiff taking another deposition solely about S-RAD, there is no pending dispute, and Uber failed to lodge an objection that may be used to prevent this deposition from moving forward. Plaintiff is entitled to deposition testimony about this driver, this passenger, and how they came to be matched on this ride. To that end, Plaintiff requests that the Court compel Uber to provide a witness and a date for the deposition notice at issue (Exhibit A).

6

## <u>FILER'S ATTESTATION</u>

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Laura Vartain Horn*
Laura Vartain Horn

1