# EXHIBIT 5

**Emilie Boman**

**EX 2093**

R.O. 06.04.26

exhibitsticker.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br> All Cases | No. 3:23-md-03084-CRB<br><br>**ALL PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION OF UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC**<br><br>Judge: Honorable Charles R. Breyer |

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rules of Civil Procedure Rules 30(b)(6) and 45, all Plaintiffs will take the deposition by oral examination of Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber") through one or more of their designees on the topics listed below. This deposition will be taken before a duly qualified Notary Public, at the time and place specified, and continued from day to day thereafter, Sundays and holidays excepted, until completed, on behalf of all Plaintiffs. Pursuant to Federal Rules of Civil Procedure Rules 30(b)(3)(A) and 45(a)(1)(B), notice is given that the deposing party intends to record the testimony by audio and video technology in addition to the stenographic method.  Notice is hereby given that the video is intended for use at trial.

| | |
|---|---|
| **WITNESS:** | **Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC** |
| **DATE:** | **June 4, 2026** |
| **TIME:** | **8:00 a.m. Pacific Time** |
| **LOCATION:** | **Zoom** |

Plaintiffs request that Uber identify in writing at least ten (10) business days in advance of the deposition the name(s) of the person(s) who will testify on their behalf and the subject(s) on which each person will testify. And if Uber intends to have a custodian whose deposition is already scheduled (in his or her personal capacity) testify on its behalf on any of these categories, Plaintiffs request that Uber provide notice of the same at least ten (10) business days in advance of that witness' deposition.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, deponent is directed to produce and permit inspection and copying of the documents and/or tangible things specified in Attachment A to this notice at the time and place of deposition.

DATED: May 22, 2026

By: */s/ Sarah R. London*
Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

2

**DEFINITIONS**

The following terms shall have the meanings identified herein:

1. "**Driver Education Module(s)**" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

2. "**Nonprofit organization(s)**" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men

   b. AI Now Institute

   c. Albright Stonebridge

   d. Berkman Center for Internet and Society

   e. Center for Democracy and Technology

   f. D.C. Rape Crisis Center (DCRCC)

   g. Electronic Frontier Foundation

   h. Future of Privacy Forum

   i. Harvard Data Science Initiative

   j. It's On Us

   k. National Alliance to End Sexual Violence

   l. National Sexual Violence Resource Center (NSVRC)

   m. National Crime Prevention Council (NCPC)

   n. National Network to End Domestic Violence

3

    o.  NYU Center for Race Inequality and the Law

    p.  The NO MORE Foundation (d/b/a "NO MORE")

    q.  Pennsylvania Coalition Against Rape (PCAR)

    r.  Rape Abuse and Incest National Network (RAINN)

    s.  RALIANCE

    t.  Stanford Center for Internet and Society

    u.  The Urban Institute

    v.  Time's Up

    w.  Valor US (CAL Casa)

3.  "Safety Advisory Board" shall be used to refer to all iterations of Uber's Safety Advisory Board, announced in 2015[1] from 2015 to today[2].

4.  **"Safety Report(s)"** shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").

5.  **"S-RAD"** shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.

6.  **"Threshold"** shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

7.  **"Trigger rate"** shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

---

[1] https://www.uber.com/us/en/newsroom/safetyadvisoryboard/
[2] https://www.uber.com/us/en/safety/safety-advisory-board/

4

All other terms used herein shall have the same definitions as used in Plaintiffs' First and Second Requests for Production. Any term not defined herein or in Plaintiffs' First or Second Requests for Production shall have the standard dictionary definition of the term.

**DEPOSITION TOPICS**

*Driver Education*

1. The NONPROFIT ORGANIZATIONS involved in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES, including the employees, contractors, volunteers, or agents of each nonprofit organization involved in this work.

2. The scope and nature of the work performed by each NONPROFIT ORGANIZATION involved in designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

3. Any recommendations or conclusions made or offered by NONPROFIT ORGANIZATIONS related to DRIVER EDUCATION MODULES, including but not limited to recommendations or conclusions related to the content, form, and duration of DRIVER EDUCATION MODULES.

4. The NONPROFIT ORGANIZATIONS involved in evaluating the efficacy or adequacy of UBER'S DRIVER EDUCATION MODULES at preventing sexual assault or sexual misconduct from occurring; the content and methodology of such evaluations; and the way such evaluations were arranged or procured.

5. The amount Uber paid each NONPROFIT ORGANIZATION, individually and in the aggregate, for work performed in connection with designing, developing, reviewing, researching, testing, approving, or otherwise consulting on DRIVER EDUCATION MODULES.

*S-RAD*

6. The NONPROFIT ORGANIZATIONS involved in designing, developing, reviewing,

5

researching, testing, approving, or otherwise consulting on the S-RAD model.

7. The NONPROFIT ORGANIZATIONS involved in setting, evaluating, analyzing, testing, recommending, approving, or otherwise consulting on the TRIGGER RATE or THRESHOLD Uber used (or considered using) for the S-RAD model.

8. The scope and nature of the work performed by each NONPROFIT ORGANIZATION involved in designing, developing, reviewing, researching, testing, or approving the S-RAD model and any recommendations or conclusions made by nonprofit organizations related to the S-RAD model, whether or not implemented by Uber.

9. Any analyses, recommendations, or conclusions made or offered by each NONPROFIT ORGANIZATIONS related to the S-RAD model, its TRIGGER RATE, or its THRESHOLD, including any recommendations or conclusions any NONPROFIT ORGANIZATIONS made regarding the S-RAD model, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by Uber.

10. The NONPROFIT ORGANIZATIONS involved in evaluating the efficacy of UBER's S-RAD model at preventing sexual assault or sexual misconduct from occurring; the content and methodology of such evaluations; and the way such evaluations were arranged or procured.

11. The amount Uber paid each NONPROFIT ORGANIZATION, individually and in the aggregate, for work performed in connection with designing, developing, reviewing, researching, testing, approving, or otherwise consulting on the S-RAD model or any factor (e.g., late nights, opposite sex pairings) that went into the S-RAD model or any version thereof.

12. The NONPROFIT ORGANIZATIONS from whom Uber sought endorsement of the S-RAD model, and the nature and content of any endorsements proposed or discussed.

13. Information Uber shared with NONPROFIT ORGANIZATIONS about the S-RAD model, the S-RAD trigger rate, or the S-RAD threshold.

6

*Marketing and Public Relations*

14. The NONPROFIT ORGANIZATIONS that endorsed, commented on, publicized, or made statements in support of Uber; the contents of the contents of such endorsements, comments, publicity, or statements; and the way such endorsements, comments, publicity, or statements were arranged or procured.

15. Documents, communications, or other information provided to NONPROFIT ORGANIZATIONS that endorsed, commented on, publicized, or made statements in support of Uber concerning the true rate of sexual assault or sexual misconduct on the Uber platform or the S-RAD threshold.

16. Uber's role in drafting social media posts, press releases, white papers, or publications made or issued by each NONPROFIT ORGANIZATION related to Uber, S-RAD, or the rate of sexual assault or misconduct in Uber or the rideshare industry generally.

*Nonprofit Involvement in Uber's "Safety" features.*

17. The identity(ies) of any NONPROFIT ORGANIZATION that Uber claims endorsed or approved the safety, efficacy, or adequacy or any of YOUR safety features (including, but not limited to: RideCheck, S-RAD, Record My Ride, Women to Women, Share My Trip, Realtime ID, Uber's Safety Center, Uber's Safety Toolkit, 911 Calling and Messaging, In-App Audio and/or Video Recording, LiveHelp from a Safety Agent).

18. The identity(ies) of any NONPROFIT ORGANIZATION that conceived of, came up with, or otherwise assisted in the development or design of any of YOUR safety features (including, but not limited to: RideCheck, S-RAD, Record My Ride, Women to Women, Share My Trip, Realtime ID, Uber's Safety Center, Uber's Safety Toolkit, 911 Calling and Messaging, In-App Audio and/or Video Recording, LiveHelp from a Safety Agent).

19. For each NONPROFIT ORGANIZATION that endorsed the safety, efficacy, or adequacy or any of YOUR safety features (including, but not limited to: RideCheck, S-RAD, Record My Ride, Women to Women, Share My Trip, Realtime ID, Uber's Safety Center, Uber's

7

Safety Toolkit, 911 Calling and Messaging, In-App Audio and/or Video Recording, LiveHelp from a Safety Agent) or conceived of, came up with, or otherwise assisted in the design or development of such safety feature(s), the documents and information YOU provided to each NONPROFIT ORGANIZATION that formed the basis for those endorsements.

20. For each NONPROFIT ORGANIZATION that endorsed the safety, efficacy, or adequacy or any of YOUR safety features (including, but not limited to: RideCheck, S-RAD, Record My Ride, Women to Women, Share My Trip, Realtime ID, Uber's Safety Center, Uber's Safety Toolkit, 911 Calling and Messaging, In-App Audio and/or Video Recording, LiveHelp from a Safety Agent) or conceived of, came up with, or otherwise assisted in the design or development of such safety feature(s), the documents and information the NONPROFIT ORGANZIATION provided to YOU regarding these features.

*Safety Advisory Board*

21. The identities of all members of the Uber Safety Advisory Board at all times, how much Uber paid members on an annual basis and in total, what their job duties were, what internal information they had access to regarding Uber's safety profile and Uber's safety record.

22. All powers and authority delegated to the Safety Advisory Board, and specifically whether the Safety Advisory Board and/or its members had the ability to override, veto, or vote on any safety-related decisions at UBER.

**EXHIBIT A: DOCUMENT REQUESTS**

1. The most recent resume and/or LinkedIn profile for the deponent;

2. A substantially complete production of the deponent's custodial file; and

3. All documents reviewed by the deponent in preparation for their deposition.

8

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the undersigned caused a copy of the foregoing to be served via electronic mail on May 22, 2026, to counsel for Defendants Uber Technologies, Inc., Rasier LLC and Rasier-CA, LLC, at the following email addresses:

- jlevy@kirkland.com
- christopher.cox@kirkland.com
- mshortnacy@shb.com
- laura.vartain@kirkland.com
- CCOTTON@shb.com
- amy.stamand@kirkland.com
- kaitlyn.coverstone@kirkland.com

Dated: May 22, 2026

**By:**     ***Marlene Goldenberg***
Marlene Goldenberg *(admitted pro hac vice)*
Nigh Goldenberg Raso & Vaughn PLLC
14 Ridge Square NW
Third Floor
Washington, DC 20016
mgoldenberg@nighgoldenberg.com

9

Case No. 3:23-MD-3084-CRB