**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING UBER'S REQUEST FOR A PROTECTIVE ORDER REGARDING LOBBYING TOPICS**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 001,<br><br>     Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>     Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:     Hon. Charles R. Breyer<br><br>Courtroom:  501 |

1

The Parties respectfully submit this joint letter regarding disputed issues related to lobbying topics included in Plaintiff's 30(b)(6) Deposition Notice.

Respectfully submitted,

DATED: July 22, 2026

By: /s/  *Roopal P. Luhana*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

  *Co-Lead Counsel for Plaintiffs*

By: /s/  *Laura Vartain Horn*
    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    555 California St., 27th Floor
    San Francisco, CA 94104
    Telephone: (415) 439-1400
    laura.vartain@kirkland.com

    ALLISON M. BROWN (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    2005 Market Street, Ste. 1000
    Philadelphia, PA 19103
    Telephone: (215) 268-5000
    alli.brown@kirkland.com

    KIM BUENO (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    401 W. 4th Street
    Austin, TX 78701
    Tel: (512) 678-9100
    Email: kim.bueno@kirkland.com

    JESSICA DAVIDSON (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    601 Lexington Ave.,
    New York, NY 10022
    Telephone: (212) 446-4800
    jessica.davidson@kirkland.com

  *Counsel for Defendants Uber Technologies, Inc.,*
  *Rasier, LLC, and Rasier-CA, LLC*

2

## I.      Uber's Position:

Defendants Uber Technologies, Inc. and Rasier, LLC (collectively "Uber") respectfully request a Protective Order preventing Plaintiff from deposing Uber's 30(b)(6) designee on Topic 5, which seeks information relating to Uber's lobbying efforts in Texas. Pl.'s Not. of 30(b)(6) Dep. at 16 (June 19, 2026) (Ex. A). While Plaintiff couches Topic 5 as addressing "Uber's compliance with Texas state and local statutes," the nine sub-topics actually relate to Uber's lobbying activities, including Uber's "opposition to" or "support of" specific legislative efforts. *Id.* Uber anticipates that Plaintiff will seek to examine a designated representative about Uber's activities related to: (i) Austin's Proposition 1 in 2016 (ultimately defeated by the voters), which would have, *inter alia*, prohibited required fingerprinting for independent drivers; and (ii) Texas House Bill 100 (signed into law in May 2017), which established a uniform, statewide regulatory framework for rideshare companies like Uber and Lyft. Such discovery would be irrelevant and disproportionate, requiring Uber to prepare a corporate witness on years-old political advocacy that has no bearing on the alleged assault. It is particularly inappropriate in this fast-tracked bellwether trial.

Judge Breyer previously excluded evidence of lobbying in the *Dean* trial, holding that evidence of Uber's lobbying activities was "barred by *Noerr-Pennington*." *Dean* Pretrial Hr'g Tr. 28:4-7 (Jan. 6, 2026); *see also* MDL Mot. In Limine Order, Dkt. No. 4941, at 2 (Jan. 8, 2026). Although the Court reached this decision in the context of trial, the JCCP applied the same principles in precluding any ***discovery*** into these protected activities, recognizing that "Plaintiffs' lobbying theories go nowhere, and no legitimate purpose would be served by allowing discovery on this topic." JCCP Order Denying Motion to Compel Lobbying Documents at 10 ("JCCP Lobbying Order") (Feb. 6, 2024); *see also* JCCP Omnibus MIL Order at 59 (Aug. 29, 2025) (together with JCCP Lobbying Order, Ex. B) (excluding lobbying evidence because "[i]t cannot be a violation of a party's duty of care to lobby for laws and regulations, which is absolutely protected by the First Amendment") (quoting JCCP Lobbying Order).[1] In short, lobbying evidence is not just inadmissible; it is not "***reasonably likely to lead to the discovery of admissible evidence.***" JCCP Lobbying Order at 7 (emphasis added). This Court should reach the same conclusion here for multiple reasons.[2]

***First***, questioning regarding Uber's lobbying activities is not "relevant to the issues or reasonably likely to lead to the discovery of admissible evidence." *See* JCCP Lobbying Order at 7. Other courts have similarly denied requests for discovery into a party's lobbying activities for lack of relevance. *See UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.*, No. 3:21-CV-364-DCLC-DCP, 2025 WL 3240962, at *14 (E.D. Tenn. May 16, 2025) ("The Court finds that Plaintiffs' request for Defendants' lobbying efforts does not make it more or less likely that Defendants defrauded Plaintiffs . . . ."), *appeal denied*, No. 3:21-CV-00364-DCLC-DCP, 2025

---

[1] Plaintiff brushes the JCCP ruling aside on the ground that it "applied a different discovery standard than the one set out by Rule 26[.]" But California's "rules of discovery serve the same purpose, authorize the same scope of discovery, and provide for similar protective relief as do the federal rules." *Pratt v. Union Pacific Railroad Co.*, 168 Cal. App. 4th 165, 180 (2008).

[2] Although a Missouri trial court recently compelled discovery into Uber's lobbying activities, it did so in a cursory hand-written order that is devoid of any reasoning. *See Doe* 3/13/2026 Order. This Court should follow the well-reasoned approach of the JCCP court, which accords with the generally applicable principles recognized by Judge Breyer in *Dean* and the prevailing weight of authority set forth in text.

WL 3217033 (E.D. Tenn. Nov. 18, 2025); *Smith v. Life Invs. Ins. Co. of Am.*, No. 2:07-CV-681, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009) (denying motion to compel discovery on lobbying activities because defendant's lobbying in support of passage of laws was not relevant to plaintiff's claims). The same is true here. Plaintiff's claims turn on what (if any) duty Uber had to Plaintiff; whether Uber breached any purported duty; and whether Uber's alleged conduct was the cause of Plaintiff's alleged injuries. Deposing an Uber representative about its lobbying activities would not yield any evidence that helps resolve those questions.

Plaintiff's proffered theories of relevance do not justify Topic 5's sweeping inquiry. For example, Plaintiff contends that Uber's lobbying in favor of Texas House Bill 100 is relevant because "Houston once required fingerprint-based background checks and warrant checks[.]" But that is a red herring. Plaintiff provides no evidence that any different background check process would have mattered in this case. Moreover, Plaintiff has questioned multiple 30(b)(6) witnesses about background checks, their feasibility and efficacy, and the factual basis for Uber's screening decisions. Plaintiff has also already served a separate 30(b)(6) notice that includes Topics about the methods used (and not used) to screen this particular driver.

Plaintiff also cites product liability cases holding that a manufacturer's communications with Congress or the FDA may be admissible to prove "knowledge" that its product was unsafe. But again, Plaintiff can explore Uber's state of mind regarding its policies without discovery into its lobbying activities.[3] And Plaintiff also asserts that "Uber's advocacy" is relevant to the credibility of its witnesses like Emilie Boman, who testified about Uber's reliance on non-profit partners regarding efforts to prevent sexual assault. Once again, Plaintiff is grasping at straws. The fact that Uber advocated a uniform, statewide regulatory framework for rideshare companies in Texas law has no tendency whatsoever to undercut the veracity of that testimony. Rather, it is clear that Plaintiff seeks to prejudice jurors against Uber by telling them about the Company's lobbying activities: precisely the purpose for which this evidence should never be used.

***Second***, discovery into Uber's lobbying activities would also prejudice Uber by chilling its First Amendment activities. Judge Breyer previously found that evidence of Uber's lobbying was "barred by *Noerr-Pennington*." *Dean* Pretrial Hr'g Tr. 28:4-7. Plaintiff points out that Judge Breyer did not issue "a written explanation," but the ruling speaks for itself and accords with ample federal and state caselaw, including a thorough written opinion by the JCCP court. And although the Court specifically ruled that such evidence was inadmissible, requiring any deposition questioning on this topic would similarly deter Uber from exercising its core First Amendment right to petition the government. *See All. of Auto. Mfrs., Inc. v. Jones*, No. 4:08CV555-MCR/CAS, 2013 WL 4838764, at *5 (N.D. Fla. Sept. 11, 2013) (finding no compelling need for discovery into lobbying activities, noting that the Supreme Court "has not permitted probing into the political affairs of citizens . . . or other proponents of legislation"). Statutes and regulations are the result of

---

[3] Plaintiff's reliance on these cases is further misplaced because, in one of them, the manufacturer had already "introduced some such evidence [of its communications with the FDA] itself." *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2018 WL 305503, at *10 (N.D. Ill. Jan. 6, 2018). And in another case, the court merely held that *Noerr-Pennington* did not categorically bar all evidence of communications with Congress or the FDA (it did not actually decide the question of relevance under Rule 401). *See In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 306 (E.D. Pa. 2016). Plaintiff's authorities establish only that lobbying evidence is not categorically privileged; they do not hold that a party may obtain broad corporate testimony about political advocacy without demonstrating a concrete, non-cumulative connection to a claim or defense.

all kinds of inputs and interests, from an array of stakeholders and voices, and all sorts of compromises and concessions. Permitting discovery into a company's participation in that process would not only undermine the integrity of the law but also impinge on the constitutional right to advocate for the passage (or defeat) of proposed laws. *See* JCCP Lobbying Order at 10 (agreeing with Uber that "allowing discovery" into protected lobbying activities "presents a host of serious practical obstacles," such as chilling its First Amendment rights).

 ***Third***, discovery into Uber's lobbying activities is disproportionate to the needs of this case, particularly given the expedited discovery and trial schedule. *See United States v. Real Prop. Located in L.A.*, No. CV 20-6314-CAS (KS), 2024 U.S. Dist. LEXIS 112469, at \*19-20 (C.D. Cal. June 11, 2024) ("The [c]ourt . . . is unpersuaded that compelling Rule 30(b)(6) deposition testimony . . . on these topics meets the relevance and proportionality requirements of Rule 26(b)(1)."). As already discussed, multiple courts (including Judge Breyer) have recognized that lobbying evidence is plainly ***inadmissible***. Given this reality, deposing an Uber representative about its lobbying activities several years before the alleged assault in this case would not help the parties prepare for the fast-approaching October trial. Instead, Plaintiff's proposal would effectively harass Uber and its representative by forcing them (and their counsel) to divert their attention from legitimate discovery and trial preparation efforts under an already-compressed schedule. *See Bear Down Brands, LLC v. Bora Servs.*, No. SA CV 22-01998-CJC (DFMx), 2024 U.S. Dist. LEXIS 92116, at \*2-3 (C.D. Cal. Apr. 19, 2024) (agreeing that 30(b)(6) topics are "unreasonable and harassing" where they serve no legitimate purpose).

## II. Plaintiff's Position:

 This is a case about screening. Plaintiff will contend that, had Uber employed more rigorous screening methods (looking for warrants, fingerprinting, etc.), then it never would have let the driver in this case onto the platform. Uber no doubt disputes Plaintiff's contention and may argue that expanded screening would not work, would not be feasible, or would have undue effects on the availability of Uber's services.

 But what is at issue now is not what positions either side will take at trial, or who is right and who is wrong. Rather, the question before the Court is whether Plaintiffs get to ask Uber questions about its knowledge and statements about the feasibility and efficacy of different screening methods and the effects that using those methods might have on Uber's business. The obvious answer is yes: Uber's knowledge and statements are clearly relevant. And they are particularly relevant to this case in particular, where Houston once required fingerprint-based background checks and warrant checks, and Uber successfully operated in that city before advocating at the state level for the elimination of those requirements.

 Nevertheless, Uber seeks to preclude such discovery to the extent that it overlaps with Uber's "lobbying" activities, which Uber says are protected from liability under *Noerr-Pennington*. But courts consistently recognize that *Noerr-Pennington* is "not a bar the discovery of evidence." *Wal-Mart Stores, Inc. v. City of Turlock*, 2005 WL 8176355, at \*3 (E.D. Cal. Jan. 28, 2005) (emphasis added); *Natural-Immunogenics Corp v. Newport Trial Grp.*, 2018 WL 6137597, at \*4 (C.D. Cal. May 16, 2018) ("*Noerr-Pennington* is not an evidentiary privilege and only a limitation on liability"); *see also Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 618035, at \*11 (C.D. Cal. June 12, 2018) (explaining that because "the *Noerr-Pennington* doctrine is not a rule of evidence that operates as a complete bar to admissibility… the issue of whether documents … are discoverable … is separate and apart from the issue of whether

5

Defendants can be held liable for their conduct").

Courts do not just allow discovery into lobbying. They admit the evidence at trial to prove notice, knowledge, motive, and intent. In the Tylenol litigation, the court refused to read Noerr-Pennington as an evidentiary bar, finding that a plaintiff may "offer evidence about how the defendants attempted to influence, petition, or communicate with" the government "to show their knowledge, state of mind, or intent." *In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prods. Liab. Litig.*, 181 F. Supp. 3d 278 (E.D. Pa. 2016). It would be "a stretch," the court explained, to say the doctrine "bars any use of any evidence of the defendants' petitioning of the government, and its agencies, or evidence of any communications with [government agencies]." *Id.* Other courts agree. *See*, *e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2023 WL 356128, 6-7 (D.S.C. May 19, 2023) (denying motion in limine to exclude evidence of lobbying activities under *Noerr-Pennington* because such evidence was admissible to prove motive, opportunity, and intent); *In re Testosterone Replacement Therapy Prods. Liability Litig.*, 2018 WL 305503, at *10 (N.D. Ill. Jan. 6, 2018) ("The Court disagrees that the *Noerr-Pennington* doctrine is applicable. … [plaintiff] intends to offer evidence of that activity to demonstrate [defendant's] motive or intent."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prods. Liab. Litig.*, 181 F. Supp. 3d 278 (E.D. Pa. 2016) ("It would be a stretch to say that *Noerr-Pennington* bars any use of any evidence of the defendants' petitioning of the government and its agencies.").

Evidence of Uber's advocacy is also relevant here because it goes to the credibility of Uber's witnesses and to Uber's motive. Uber's 30(b)(6) deponent Emilie Boman testified in *Dean* (and is expected to testify in *QLF*) that Uber goes all out to prevent sexual assault, informed at every step by the knowledge and advice of its non-profit partners. ████████████████ ████████████████████████████████ *See* Ex. C at 186-87, 189-91, 205-06. ████████████████ goes directly to the credibility of Ms. Boman's defense of the company's approach to sexual assault, as well as the credibility of its nonprofit partners, who publicly advocate for strong screening measures and advocate for, rather than against, sexual assault victims. In other words, Plaintiffs need to be able to rebut Uber's safety claims by showing the jury that its motivation is not actually safety, but safety *sentiment* and that its motivation is profit above all else.

Uber's support or opposition to changes in Texas law also included representations to the public, which are evidence of marketing, not just lobbying. *See*, *e.g*., Ex. D (005145641) (stating ██████████████████████ ); Ex. E (001428352) (describing Uber's TV and radio campaign promoting Uber as "safe"). While some companies lobby in private, Uber was very public about its advocacy and sponsored and marketed (including on social media) a ballot initiative to overturn Austin's background-check ordinance. These efforts include sending out mailers with specific safety representations, including that Uber's background checks were more rigorous than fingerprint-based checks. *See*, *e.g.*, Ex. F (003391655). Later, in advocating for state-law laws, Uber marketed directly to consumers, including in the airport. *See* Ex. G (004602053). None of that evidence is even arguably implicated by *Noerr-Pennington*.

Uber cites Judge Breyer's MIL ruling in *Dean*, but Judge Breyer never issued a written explanation of that ruling, admissibility at trial does not determine discoverability, and in *Dean*

the plaintiff did not seek to admit any Arizona-specific evidence (instead, the issue was evidence of Uber's California-based lobbying, *see* ECF 4836 at 15-16). Uber also relies on a JCCP discovery ruling, but the JCCP applied a different discovery standard than the one set out by Rule 26, and this Court has explained that it is "not bound by the decisions [or] the scope of discovery in the JCCP." 6/13/24 H'rg Tr. at 38:20-22. Uber cites *UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.*, 2025 WL 3240962, at *14 (E.D. Tenn. May 16, 2025) and *Smith v. Life Invs. Ins. Co. of Am.*, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009), but in neither case did the plaintiffs identify specific fact issues to which lobbying-related statements were relevant.

Finally, Uber has not shown burden or prejudice sufficient to tip the proportionality analysis. *Compare Smith*, 2009 WL 2045197, at *7 (denying requested discovery where defendant demonstrated "the burden of searching for and producing such documents"). Uber suggests that preparing and presenting a witness on Topic 5 would chill its First Amendment expression. But the only case cited for this speculative proposition does not support it. *See Alliance of Auto. Mfrs., Inc. v. Jones*, 2013 WL 4838764, at *5 (N.D. Fla. Sept. 11, 2013) (disallowing discovery meant to show "a statute's purpose and intent").

## **FILER'S ATTESTATION**

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


*/s/ Laura Vartain Horn*

1