**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S 30(b)(6) DEPOSITION NOTICE RE NEW BACKGROUND CHECK POLICY**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

|  |  |
|---|---|
| JANE DOE QLF 001,<br><br>      Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:     Hon. Charles R. Breyer<br><br>Courtroom:  501 |

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff's Notice of 30(b)(6) Deposition Regarding Uber's Background Check Policy.

Respectfully submitted,

DATED: July 27, 2026

By: /s/ *Roopal P. Luhana*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

  *Co-Lead Counsel for Plaintiffs*

By: /s/ *Laura Vartain Horn*
    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    555 California St., 27th Floor
    San Francisco, CA 94104
    Telephone: (415) 439-1400
    laura.vartain@kirkland.com

    ALLISON M. BROWN (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    2005 Market Street, Ste. 1000
    Philadelphia, PA, 19103
    Telephone: (215) 268-5000
    alli.brown@kirkland.com

    KIM BUENO
    State Bar No. 24065345
    **KIRKLAND & ELLIS LLP**
    401 W. 4th Street
    Austin, TX 78701
    Tel: (512) 678-9100
    Email: kim.bueno@kirkland.com

    JESSICA DAVIDSON (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    601 Lexington Ave.,
    New York, NY 10022
    Telephone: (212) 446-4800
    jessica.davidson@kirkland.com

    *Counsel for Defendants Uber Technologies, Inc.,*
    *Rasier, LLC, and Rasier-CA, LLC*

2

## I.    Uber's Position:

Plaintiffs' 30(b)(6) Notice should be quashed because it seeks discovery that is inadmissible, irrelevant, overly broad, largely privileged, and predicated on material misrepresentations of the facts and the record.

On June 26, 2026, Uber publicly announced changes to its criminal background check process for drivers and couriers, including: (i) broadening the criteria for convictions that permanently disqualify someone from driving or delivering on the Uber platform; and (ii) lengthening the lookback period for the Social Security Number ("SSN") trace to identify counties where an individual has lived or potentially had contact with law enforcement.[1] Plaintiffs' 30(b)(6) Deposition Notice (the "Notice") (Ex. 1) regarding this new policy—with 52 topics/subtopics and 30 document requests—is enormously burdensome and overbroad, particularly given the expedited schedule for *QLF 001* trial preparation. There is no need for discovery on this topic— and certainly no need right now. In selecting the *QLF 001* case for trial in October, the Court instructed the parties to devote their resources to preparing ***that case*** for trial on an expedited timeline. Plaintiffs' sweeping Notice instead seeks irrelevant discovery concerning a policy adopted six years after the QLF incident. Even if the new policy were relevant to some future trial case, any deposition should take place at that time, not now.[2] As set forth below, the Notice should be quashed for multiple reasons.[3]

*First*, Uber's new background check policy—which took effect in June 2026—was obviously not in effect at the time of the alleged incident in *QLF 001,* or any bellwether lawsuit. As such, Uber's policy change has no possible relevance to these cases. Most notably, a policy adopted in 2026 cannot bear on whether Uber acted reasonably in 2020, based on the information and circumstances existing at the time. This is especially true because the driver at issue in the case had no prior criminal record. Thus, Plaintiff *does not and cannot credibly claim* that he would have been barred from the platform under the new policy. And while Plaintiffs suggest the new policy would have led to a different outcome in *A.R.*, that is another red herring, because, again, the evidence does not support that argument.[4]

While Plaintiffs argue that they are entitled to discover information about the feasibility of adopting the changes earlier, their requests are far broader than that. And to the extent Plaintiffs seek evidence of feasibility to show that Uber did not act reasonably with respect to its prior policies, that is precisely the use of subsequent remedial measures that is barred by Rule 407.

---

[1] Uber, *A New Standard for Background Checks* (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/.

[2] Contrary to Plaintiffs' representations, Uber's updated background check policy is not proper impeachment evidence. A change in policy a year after testimony is provided does not mean the prior testimony was false or is subject to impeachment. Uber's testimony is consistent that there were regional variations in how far back Uber looked using an SSN trace, and this was known to Plaintiffs for nearly one year. *See* Nilles 8/7/2025 Dep. 194:13-195:21 (Ex. 2).

[3] Plaintiffs' counsel continues to raise unripe disputes with the Court and then request that the Court set highly accelerated briefing schedules. This is a pattern. Plaintiffs never raised this issue prior to the July 23rd hearing, and the *first conferral* on this issue occurred on July 24. Uber did not even receive Plaintiffs' position on these issues until the night this filing was due. All of this is contrary to the letter and spirit of PTO 8.

[4] Plaintiffs cannot support this argument because Uber was already conducting 99-year SSN traces in California when the *A.R.* driver was on the platform. *See* Ex. 2, Nilles 8/7/2025 Dep. 195:12-13.

Moreover, Plaintiffs' argument that Uber "placed th[e] . . . issue before the Court" of whether the driver in *QLF* or in any other bellwether case would have been disqualified under the new policy does not make sense. Uber responded to Plaintiffs' attempt to connect the new policy to the current bellwether cases; that response did not place the policy's entire development history at issue or otherwise waive Uber's Rule 26 objections. More critically, if Plaintiffs had any evidence that the specific changes Uber made to its background check policy would have disqualified the driver in any bellwether case, they would have provided that. The fact that Plaintiffs have not provided any contradictory evidence—for both *QLF* and *A.R.*—underscores that this discovery is a fishing expedition.

*Second*, Plaintiffs' sweeping Notice is overbroad and grossly disproportionate to the needs of this litigation. Plaintiffs' notice seeks discovery on *every* person who participated in the policy change (Topics 1(a)-1(c)), *every* reason why Uber decided to implement this change (Topics 2(a)-2(e)), *all* information Uber had regarding shortcomings in the prior policy (Topics 3(a)-3(d)), *every* third party that Uber consulted with regarding the change (Topic 4(a)), and *all* documents and communications regarding the change (e.g., Document Requests 3, 4, 6, 8, 10, etc.).

Additionally, complying with Plaintiffs' broad requests would be enormously burdensome. Uber would have to conduct further custodial productions and reviews—even though Uber has already produced more than 5.5 million pages of documents from over 55 custodians in this litigation—all to obtain information that has no bearing on pending cases. Moreover, Plaintiffs have already taken hours of deposition discovery—both 30(b)(6) and fact witnesses, including four days of deposition testimony in this MDL and two additional days in the JCCP from Ms. Nilles on the topic of Uber's background check policies and any alternatives—on the very issues that they claim justify this request (namely, whether Uber could have "done more" regarding background checks). At some point, discovery must come to an end; that is the very reason for the proportionality requirement. Otherwise, discovery can simply be used as a bludgeon, rather than a means of learning the truth.

*Lastly*, the Notice is clearly drafted to intrude extensively into privileged communications and legal advice. Decisions about how and whether to change Uber's background check policy were heavily informed by legal advice and legal decision-making. This includes not only legal advice about what can and cannot be considered as part of a background check, but also legal advice about what offenses may or must be disqualifying under various states' laws. The discovery Plaintiffs seek about Uber's decision to adopt the new policy is therefore privileged because it is pervaded with legal advice—including legal advice about this MDL.

Plaintiffs seem to acknowledge that fact and go so far as to ask for documents reflecting privileged legal advice, highlighting the inappropriate nature of their Notice. *See, e.g.*, Topic 3 (Uber's knowledge of "limitations, gaps, deficiencies, or shortcomings" in the prior background check policy); Request 3 ("All documents reflecting the decision-making process that led to the background check policy change, including but not limited to internal memoranda, presentations, project plans, meeting minutes, proposals, and approving records."); Request 6 ("All communications among Uber employees, officers, or executives regarding the background check policy change."); Request 16 ("All documents reflecting any connection between the background check policy change and claims or litigation arising from safety incidents, including but not limited to MDL 3084."); Request 17 ("All documents discussing any involvement of Uber's legal department, outside counsel, or claims and risk management personnel in the development, timing, or approval of the background check policy change.").

Furthermore, even if some responsive documents were not privileged, the need to assess privilege on a document-by-document basis for such a sweeping set of requests—and potentially log privileged documents as well—would only add to the already enormous burden of providing

the discovery Plaintiffs seek. Moreover, to the extent Plaintiffs seek Uber's non-privileged communications with outside organizations regarding its background check policies, that only underscores the breadth of these requests and their tangential (at best) relevance to the narrow question of *what Uber knew at the time* of the alleged assaults at issue. For these reasons, too, the Notice should be quashed.

*   *   *

For the foregoing reasons, the Court should enter a protective order denying the discovery Plaintiffs seek on Uber's June 2026 background check policy change.

## II.    Plaintiffs' Position:

### A.    *The Deposition Seeks Relevant Discovery*

For years, Uber maintained that its background check process represented the best it could reasonably do and that legal constraints prevented broader screening. Then, after defending two bellwether trials and only months before two additional bellwether trials, Uber announced sweeping changes, including expanding permanent disqualification categories and replacing its seven-year SSN trace with a lifetime SSN trace. Plaintiffs are entitled to discover whether those measures were feasible years earlier, when Uber first concluded they were necessary, and why it delayed implementing them.

It is "very unusual for a court to prohibit the taking of a deposition altogether ***absent extraordinary circumstances***." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (emphasis added). And the party seeking to prevent a deposition carries a "heavy burden." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). No extraordinary circumstances exist here, and Uber fails to carry its heavy burden.

To begin, Uber's motion rests on the mistaken premise that Plaintiffs seek discovery merely because Uber announced changes to its background check process in June 2026. That is incorrect. Plaintiffs seek discovery regarding what Uber knew before June 2026, when Uber first considered these changes, why it delayed implementing them, whether they were feasible years earlier, and what information ultimately caused Uber to abandon positions it had maintained for years. Topics 2, 3, 6, 8, 9, and 10, for example, expressly seek testimony concerning Uber's pre-June 2026 knowledge, analyses, and decision-making. Judge Breyer recently reopened discovery, and this deposition falls squarely within that reopened discovery.

Uber's assertion that the QLF001 driver "would have been allowed" under the new policy only underscores why discovery is necessary. Indeed, Uber has voluntarily placed that factual issue before the Court. Plaintiffs are entitled to discover the analyses, assumptions, methodology, and factual basis underlying that assertion. Topic 10 specifically seeks testimony concerning whether application of the new standards would have affected drivers involved in this litigation. Uber cannot rely upon factual representations concerning retroactive application while preventing Plaintiffs from examining the evidence supporting those representations.

In the A.R. case, the bellwether trial scheduled to immediately follow QLF001, Uber onboarded the driver in 2022 despite a 1998 felony conviction that admittedly should have permanently disqualified him. This was confirmed by Hannah Nilles at her case-specific 30(b)(6) deposition. But Uber's background check, performed by Checkr, failed to uncover that conviction. This, too, is likely a product of Uber's previously less-comprehensive background checks. Plaintiffs expect that testimony on the recent changes to Uber's background checks may, in turn, reveal why such convictions previously fell through the cracks.

The testimony is also directly relevant for impeachment. During Uber's June 30, 2025 Rule 30(b)(6) deposition, Uber's corporate representative testified that Uber's background check process was "the best that it can do to keep bad actors off the platform" and that Uber was "not aware of any plans to change [Uber's] screening practices[.]" *See* Nilles 6/30/25 Dep. Tr. at 252:12-16; 266:23-267:5, Ex. 3. Less than a year later, Uber announced sweeping changes to that very process. Plaintiffs are entitled to determine when Uber actually began considering these changes, whether such plans existed when its corporate representative testified, and whether Uber's prior Rule 30(b)(6) testimony accurately reflected Defendants' knowledge.

Uber's own documents further demonstrate why this discovery is appropriate. In 2018, Jill Hazelbaker, a member of Uber's Executive Leadership Team, acknowledged that failing to conduct lifetime lookbacks was "indefensible." *See* Nilles 6/30/25 Dep. (Ex. 698), Ex. 4. Yet Uber continued using a seven-year SSN trace anyway until June 2026. Likewise, Uber's recent announcement acknowledges the county-coverage limitations that Plaintiffs have challenged throughout this litigation. But Uber has long known of this gap and previously claimed that closing it was not feasible. *See* Nilles 6/30/25 Dep. Tr. at 155:5-156:14. Plaintiffs are entitled to discover what Defendants knew about these shortcomings in their screening processes applicable to all Plaintiffs, when they knew them, and why they delayed implementing feasible measures Uber now publicly promotes as improving rider safety.

Moreover, Uber's relevance argument is, in reality, a Rule 407 admissibility argument disguised as a discovery dispute. Rule 407 governs admissibility—not discoverability. Discovery is governed by Rule 26. Regardless, Rule 407 expressly permits evidence offered for impeachment and feasibility, both of which are directly implicated here. Uber contends its prior background check process was reasonable while simultaneously adopting broader screening measures that Plaintiffs contend were feasible years earlier. Plaintiffs are entitled to discover whether those measures could have been implemented before June 2026 and why Uber delayed doing so. Rule 407 does not bar such discovery. *See* Fed. R. Civ. P. 26(b)(1); *Bernat v. City of California City*, 2010 WL 4008361 (E.D. Cal. Oct. 12, 2010); *Smith v. Am. Pain & Wellness, PLLC*, 2024 WL 4535619, at *2 (E.D. Tex. Oct. 21, 2024).

### B. Uber Has Not Demonstrated Undue Burden

Uber likewise fails to satisfy its burden of establishing undue burden or disproportionality. A party seeking a protective order must make a particularized showing of specific prejudice or harm. *See, e.g., Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992). Uber submitted no declaration, no estimate of hours or costs, no witness describing any burden, and no topic-by-topic analysis. Instead, it simply labels the deposition burdensome while pointing to the 5.5 million pages produced in the MDL—a statistic having nothing to do with this deposition.

This deposition should proceed now. Uber could have proposed narrowing topics during the parties' meet and confer. But it chose not to, instead seeking to prohibit the deposition altogether. Regardless, Uber itself has injected its new policy into QLF001 by arguing the driver would have remained eligible under the revised standards, while AR2 immediately follows and likewise will involve Uber's background check process. As Uber concedes, its decision-makers completed these policy changes only recently, making this the optimal time to preserve testimony while memories remain fresh.

### C. Uber's Blanket Privilege Assertions Are Improper

Finally, Uber's assertion that "virtually all" responsive testimony is privileged is legally insufficient. Blanket privilege assertions are "extremely disfavored." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). And the attorney-client privilege protects confidential communications, not underlying facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). Plaintiffs seek, among other things, factual testimony regarding who made the decisions, when they were made, why they were made, implementation timelines, third-party consultations, costs, and retroactive analyses. Those facts remain discoverable.

Moreover, Uber's own press release identifies consultations with outside organizations regarding the policy changes. The existence of those consultations, the recommendations made, whether Uber adopted or rejected them, the identity of the participants, and whether those

7

organizations were compensated are factual matters, not privileged communications. Given Uber's numerous specious privilege assertions throughout this MDL that the Court or Special Master ultimately rejected, Plaintiffs are entitled to examine the factual basis for Uber's current privilege claims rather than simply accepting generalized assertions that "virtually all" responsive testimony is privileged. To the extent any particular question implicates privileged legal advice, Uber may assert an objection on a question-by-question basis during the deposition. But that is not a basis to quash the deposition in its entirety.

At bottom, Uber seeks to prevent Plaintiffs from discovering when it first recognized deficiencies in its background check process, whether the newly adopted measures were feasible years earlier, and why it chose to implement those measures only after defending two bellwether trials and immediately before two additional bellwether trials in which those same background check practices remain at issue. Rule 26 does not permit that result. Because Uber has failed to establish irrelevance, undue burden, or privilege sufficient to justify the extraordinary relief it seeks, its motion should be denied.

.

## FILER'S ATTESTATION

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Laura Vartain Horn*
Laura Vartain Horn