# EXHIBIT 4

## UBER-MDL3084-000126224

## Metadata

| Case | Case 86 | SEMANTIC |
|---|---|---|
| Cc | Brooke Anderson <brooke.anderson@uber.com> It is US residence history. Our checks include international databases such as Office of Foreign Asset Control (OFAC), FBI Most Wanted, Interpol, and the Specially Designated Nationals and Blocked Persons List. But we do not go into non-US countries to pull records due to the complexity and lack of consistency in the way records are accessed in different countries. My understanding is that in the UK, for example, a certificate of good conduct from individuals' home country embassies is required to obtain a TfL license, if they have not been in the country for the last five years. Not sure how feasible this would be in the US but maybe something to consider. I am not sure whether our agreement with Checkr includes an exclusivity clause. They position themselves as more tech savvy than other providers, which was one reason we switched to them from Hirease. We have also created systems specifically designed to work with Checkr's infrastructure, so there's been heavy investment on our side into our Checkr relationship. But Gus would have more details on the nuts and bolts. On 1 March 2018 at 11:38, Jill Hazelbaker <jill@,uber.com> wrote: Re the lifetime lookback that Checkr would do - this is not just US residence history, but global? And we'd go try to get convictions from those non-US locations? Is Checkr the only provider here? On Mar 1, 2018, at 9:02 AM, Brooke Anderson <brooke.an.derson.@uber.com> wrote: | SEMANTIC |
| Custodian | Uber | SEMANTIC |
| Date Sent | 03/01/2018 12:15 pm PST | SEMANTIC |
| File Path | UBER-MDL-009_pt7/UBER-MDL3084-000126224.pdf | SEMANTIC |
| Filename | UBER-MDL3084-000126224.pdf | SEMANTIC |
| From | Jena Wuu <jena@uber.com> | SEMANTIC |
| ILS Prod Date | 3/8/2024 | SEMANTIC |
| ILS Prod Vol | UBER-MDL-009 | SEMANTIC |
| Primary Date | 03/01/2018 12:15 pm PST | DOC_TYPE_ALIAS |
| Redacted | No | SEMANTIC |
| Subject | Re: BGCs | SEMANTIC |
| To | Jill Hazelbaker <jill@uber.com> | SEMANTIC |

**EXHIBIT**

tabbles

698

DC 5/6/25

**From:** Jena Wuu <jena@uber.com>
**Sent:** Thu, 1 Mar 2018 12:15:33 -0800
**Subject:** Re: BGCs
**To:** Jill Hazelbaker <jill@uber.com>
**Cc:** Brooke Anderson <brooke.anderson@uber.com>

It is US residence history. Our checks include international databases such as Office of Foreign Asset Control (OFAC), FBI Most Wanted, Interpol, and the Specially Designated Nationals and Blocked Persons List. But we do not go into non-US countries to pull records due to the complexity and lack of consistency in the way records are accessed in different countries. My understanding is that in the UK, for example, a certificate of good conduct from individuals' home country embassies is required to obtain a TfL license, if they have not been in the country for the last five years. Not sure how feasible this would be in the US but maybe something to consider.

I am not sure whether our agreement with Checkr includes an exclusivity clause. They position themselves as more tech savvy than other providers, which was one reason we switched to them from Hirease. We have also created systems specifically designed to work with Checkr's infrastructure, so there's been heavy investment on our side into our Checkr relationship. But Gus would have more details on the nuts and bolts.

On 1 March 2018 at 11:38, Jill Hazelbaker <jill@uber.com> wrote:

> Re the lifetime lookback that Checkr would do - this is not just US residence history, but global? And we'd go try to get convictions from those non-US locations?
>
> Is Checkr the only provider here?
>
> On Mar 1, 2018, at 9:02 AM, Brooke Anderson <brooke.anderson@uber.com> wrote:
>
>> Note regarding the 2nd point- a key press painpoint for us has been when crimes take place outside the county of residence, which often isn't caught by National Crim database, and reducing these misses is still a net gain.
>> Also I view the last point about Lyft as a good thing- broader safety benefit for consumers, bigger than Uber, another proof point to regain credibility - doing the right thing. Headine: "why Uber's new screening process makes everyone safer." Things like like this regain trust and after we do a few of them (driver hour limits- sos- stronger screenings) it's a trend and a new direction, and we can pitch it as so
>>
>> Sent from my iPhone
>>
>> On Mar 1, 2018, at 8:47 AM, Jena Wuu <jena@uber.com> wrote:
>>
>>> There is no standard cadence for updating records. Some states/jurisdictions may regularly update their records, but we also know anecdotally from criminal justice experts that it can take 18-24 months for records to get updated.
>>> Also to lay out some of the sensitivities of lifetime lookbacks but happy to discuss further in person:
>>>
>>> • The way that our BGCs currently work is that Checkr looks back seven years of residence history (which is standard industry practice), and reports back all reportable convictions going back a lifetime in those places. If we see a heinous crime conviction anywhere on the record, we will disqualify. This is why some people say we already do a lifetime lookback.
>>>
>>> • What this update would do is it would expand the residence history to a lifetime. This means that Checkr would now pull records from all of the places associated with you ever in your life. While there is a cost increase to this, it's also important for the business to know that it could also significantly increase the BGC processing time.

Confidential
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY

• We also cannot guarantee finding all records because a) some states restrict how far back Checkr is allowed to report crimes to us; and b) many old records are not digitised or they are archived, and thus not findable. There will almost certainly still be misses. So there has been concern in the past about overpromising on lifetime lookbacks -- but this goes back to Brooke's point about no BGC being perfect.

• Checkr, due to federal Fair Credit Reporting Act requirements, is required to share with its clients all reportable information that it has about a person. This means that if Uber proactively pays for a lifetime lookback, Checkr will be legally obligated to share that full information with Lyft as well (since Lyft is now using Checkr too). So Uber will incur the extra time and cost (in some places, a lifetime lookback will increase the cost by 3X), Lyft will benefit from it, and this will not be a strong differentiator for us. I think it's arguable that we're doing this to go the extra mile and make it safer for everyone, but this is something for the business to be aware of.

On 1 March 2018 at 08:07, Jill Hazelbaker <jill@uber.com> wrote:

Do not forward
Seems as though he has been a bit captured by some our friends in Ops. Jena - how frequently are the records out of date? I think he may also need education on the fact that we are not doing background checks in some places globally.

Begin forwarded message:

**From:** Brooke Anderson <brooke.anderson@uber.com>
**Date:** March 1, 2018 at 7:26:33 AM PST
**To:** Jill Hazelbaker <jill@uber.com>
**Subject: Re: BGCs**

Perfect.

FYI The sensitivities are b/c we are def not doing everything we can to find out (more of a bare minimum that we look at the records we get and if we see anything, we'll act) and even if we were, there are some things outside our control (like the fact that court records can sometimes be outdated etc.) Doing lifetime lookbacks won't mean it's a perfect process (no bcg screening method is), but definitely allows us to talk about it externally. Also it's more than Lyft does.

My view is, if we are going to do something, we should feel good about saying it. The fact this is an internal policy that we don't feel comfortable talking about externally highlights the need for improvement here.

Yesterday I asked Mike White on Ops (who is great) to get me a point person to join our working group planning this announcement and he will let me know today. Great to know we've got buy in on the proposal from the top- which I can convey to Gus and Scott

On Thu, Mar 1, 2018 at 6:42 AM, Jill Hazelbaker <jill@uber.com> wrote:

Sent from my iPhone

Begin forwarded message:

Confidential
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY

UBER25489
UBER-MDL3084-000126225

**From:** Barney Harford <barney@uber.com>
**Date:** March 1, 2018 at 2:04:05 AM PST
**To:** Jill Hazelbaker <jill@uber.com>
**Subject: Re: BGCs**

Thanks for flagging. I hadn't heard about this.

Who is point person in Ops who is pushing back on this?

My immediate Q is whether the cost represents the best negotiated outcome here, as I'm sure the incremental cost to the vendor isn't anything like this number, so have we engaged through BD/procurement to get the best possible price etc. It does seem a lot of $ but I also agree w you that if we're not doing this already, we should be.

I had been told when I asked that we do have a lifetime ban policy on murder, sexual assault etc, but that there were sensitivities in communicating that. But I guess I'd been told our policy when we know, not whether we do everything we can do understand whether there is such history.

On Feb 28, 2018, at 21:38, Jill Hazelbaker <jill@uber.com> wrote:

Per my ping. My view is it is indefensible not to do both 1 and 2 and the reputation costs associated with not doing it far exceeds the dollar amount. Happy to discuss live.

Thanks,

Jill

**BACKGROUND CHECK COSTS:** Ops has indicated to Safety team that they are not yet on board with background check changes that have costs associated with them.

- **Lifetime lookbacks:** $15.2M annual cost + $16.8M initial backfill for currently active drivers
- **Annual re-runs:** $1.7M. Expected very low supply impact (less than 1%)
- Clear; Cost TBD and feasibility being determined (we have back up options)

\*\*\*\*\*\*

**COSTS BREAKDOWN**

**1. Lifetime lookbacks for heinous crimes**
In places where lifetime lookbacks are not legally required, Checkr sends us reportable information for

Confidential
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY

UBER25490
UBER-MDL3084-000126226

seven years of residence history as well as criminal records flagged through national databases. We have an internal policy to disqualify potential drivers if we are aware of any heinous crime convictions on their records (e.g. murder, sexual assault, terrorism, kidnapping, etc).

Action:

- Upgrade our Checkr package to access records for residence history for a person's lifetime in all places. Note, this won't always be fool proof or exhaustive because records aren't always updated or maintained as we know

What it takes:

- $15.2M annual cost + $16.8M initial backfill for currently active drivers
- 20 weeks to set up

## 2. Annual criminal re-runs everywhere

In places where background check re-runs are not legally required, we have implemented a proactive re-run policy for criminal history every two years. This figure was determined based on anecdotal input from criminal justice experts that criminal records are updated every 18-24 months, as well as additional data like driver churn frequency.

Action:

- Change our criminal re-run policy from every two years to every year in places where re-runs are not legally required.
  - 40% of our markets do not have legally required re-runs. But some regulated markets have less frequent re-run requirements, and most of our biggest markets (e.g. Chicago, CA, etc) already have re-run requirements.

What it takes:

- $1.7M
- Expected very low supply impact (less than 1%)

## 3. Clear partnership on terrorist predictive risk modeling

Confidential
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY

UBER25491
UBER-MDL3084-000126227

Clear has a predictive risk model that, upon receiving basic identification data regarding Uber's prospective/current driver-partners, can flag individuals deemed "not low risk" for terrorist activity. Those individuals would undergo additional screening methods, e.g. an open source media search, before onboarding.

Action:
- Partner with Clear to help identify prospective drivers who pose a higher terrorism risk and need additional screening.

What it takes:
- Cost tbd
- Time?
- Policy position on discrimination concerns

--
Brooke Anderson
Uber Communications

Confidential
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY

UBER25492
UBER-MDL3084-000126228