[SUBMITTING COUNSEL BELOW]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694-CRB | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S 30(b)(6) DOCUMENT REQUESTS**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

|  |  |
|---|---|
| JANE DOE QLF 001,<br><br>          Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>          Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:        Hon. Charles R. Breyer<br><br>Courtroom:   501 |

1

The Parties respectfully submit this joint letter regarding disputed issues related to

Plaintiff Jane Doe QLF 001's 30(b)(6) document requests.

Respectfully submitted,

DATED: July 28, 2026

By: /s/ *Roopal P. Luhana*
ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Michael Vives*
MICHAEL VIVES (Admitted *pro hac vice* in
N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com

LAURA VARTAIN HORN (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

KIM BUENO (Admitted *pro hac vice* in N.D.
Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX  78701
Telephone: (512) 678-9050
kim.bueno@kirkland.com

ALLISON M. BROWN (Admitted *pro hac
vice* in N.D. Cal.)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

JESSICA DAVIDSON (Admitted *pro hac vice*
in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Counsel for Defendants Uber Technologies, Inc.,*
*Rasier, LLC, and Rasier-CA, LLC*

## I.    Uber's Position:

At the July 23 hearing—before conferring with Uber on the topic—Plaintiff erroneously represented that several serious disputes existed related to document requests in two of her 30(b)(6) notices and that the parties needed an expedited briefing schedule.[1] Plaintiff's position ignored the fact that Uber had already produced—consistent with the parties' prior agreements on case-specific productions, s*ee* ECF 6730, 6739—nearly all of the documents Plaintiff sought through these notices.[2] Indeed, following conferral on July 24, Plaintiff identified only *one* ripe dispute related to the 25 document requests in these two notices regarding regional marketing materials. At Plaintiff's insistence, this letter addresses two additional topics that are *not* ripe, as the parties are pursuing a mutual compromise. Uber is optimistic they can be resolved.

Plaintiff now seeks to compel Uber to search for and produce marketing materials specifically "sent or directed to the Northeast Texas Region at any time prior to the [alleged] Incident" through "any channel" from (at least) 2012 to 2020. Ex. 1 (Am. Reg'l Not.) at Request No. 7. Not only does Plaintiff already have the information she needs, but there is simply no rational basis for additional, burdensome marketing discovery in this case because: (i) Plaintiff testified she does not recall seeing any particular Uber advertisement, Ex. 2 (Pl. Dep.) 226:19-227:18; (ii) Plaintiff has never requested a ride through her own account and did not request the ride in question; (iii) there is no evidence that the individual who did, H.M., relied on any marketing materials; and (iv) Plaintiff's statements suggest that she believed she was getting into *a Lyft* rather than an Uber, making any Uber marketing wholly irrelevant in this case. Plaintiff's inappropriate request should be denied.

This request is doubly problematic because of the extensive productions Uber has made to date related to marketing materials. Uber has produced over 1.5 million documents in general discovery, including years of marketing-related documents. Uber's production of marketing materials has been so extensive that Plaintiff has proffered an expert, Dr. Minette Drumwright, who devoted nearly an entire 100+ page report to Uber's marketing practices. Uber has also produced the communications logs for Plaintiff and H.M. (the individual who ordered the ride for Plaintiff), which show every communication or advertisement sent to H.M. through the Uber app. While Uber believes all marketing evidence is irrelevant in this particular case and intends to move *in limine* to exclude it, Plaintiff has more than enough discovery to advance at trial any legally permissible argument she chooses regarding Uber's marketing. Plaintiff also takes issue with how Uber has designated 30(b)(6) witnesses, but Uber has identified the witness who will cover most of these topics and has told Plaintiff it will identify any additional witnesses this week. As such, there is no ripe dispute. Plaintiff's final request—that Uber bring a laptop to the deposition—is likewise unripe as the parties first discussed this issue on July 24 and are working on a potential resolution without the need for Court intervention.

**Background.** Plaintiff served her initial 30(b)(6) Notices Regarding Regional Discovery and Driver and Rider History on June 19, with both notices being amended on July 16.[3] Both notices included requests for documents. The parties agreed on production scope for the case-specific materials in this case and informed the Court of certain agreements. ECF 6730, 6739. On

---

[1] The parties have conferred on the Topics in Plaintiff's Ride History and Regional notices and Uber has informed Plaintiff it does not have substantive disputes with the Topics, other than requests for lobbying-related testimony. A PTO 8 letter brief was filed on that issue on July 22, 2026. ECF 6860.

[2] This is not the first time Plaintiff has raised disputes with the Court and insisted on briefing schedules before meaningful conferral. In fact, during the June 25, 2026 discovery management conference, Plaintiffs' counsel requested a briefing schedule as to the production of case-specific documents despite the fact that the parties had not yet conferred on that issue and, as the stipulations make clear, Uber was planning to produce nearly all requested documents. The Court should respectfully ensure that before expedited briefing is set on issues, that Plaintiff is required to exhaust meet-and-confer efforts consistent with PTO 8.

[3] As a preliminary matter, Plaintiff's notices are unenforceable because they do not "state the time and place of the deposition" as required by Fed. R. Civ. P. 30(b)(1). *See Gould v. Allstate Vehicle & Prop. Ins. Co.*, No. 22-00820-LK, 2023 U.S. Dist. LEXIS 69491, at *23 (W.D. Wash. Apr. 20, 2023) (declining to compel because "TBD" for date and time "did not constitute proper notice").

July 7, the parties first conferred regarding the notices and agreed to supply certain information the following week. On July 13, 2026, Uber offered a date for the History Notice and identified Cory Freivogel as the witness "likely to cover the bulk of the topics across these two notices." After extensive emails and another conferral, Uber provided its specific objections to the document requests in both notices at Plaintiff's behest on July 20 and offered to confer before the July 23 hearing. Plaintiff did not respond to that email. On the morning of the hearing, the parties discussed open discovery items, but Plaintiff did not raise the requests as an issue. Despite that, Plaintiff requested that the Court set this issue for an expedited briefing schedule.

**Legal Standard.** "The party moving to compel bears the burden of demonstrating why the information sought is relevant and why the responding party's objections lack merit." *In re Uber Techs., Inc.*, No. 23-03084-CRB (LJC), 2025 U.S. Dist. LEXIS 106524, at *75 (N.D. Cal. June 2, 2025).[4] Discovery must not be irrelevant, overly broad, duplicative, cumulative, or harassing. *3D Sys., Inc. v. Wynne*, No. 21-cv-1141-AGS-DDL, 2026 U.S. Dist. LEXIS 76606, at *5-6 (S.D. Cal. Apr. 7, 2026). Courts "have not hesitated to issue protective orders when" discovery violates these principles. *Darbeevision, Inc. v. C&A Mktg.*, No. 18-0725 AG (SSx), 2019 U.S. Dist. LEXIS 134914, at *23 (C.D. Cal. Jan. 28, 2019) (citation omitted). Courts may also issue protective orders to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Moreover, a "court must limit discovery that… 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Dean v. Uber Techs., Inc.*, No. 23-cv-03084-CRB (LJC), 2025 U.S. Dist. LEXIS 169501, at *145 (N.D. Cal. Aug. 29, 2025) (Cisneros, J.) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

**Regional Marketing**. Marketing materials are wholly irrelevant to this case, as Plaintiff has testified she does not recall seeing any and has seemingly never requested a ride through her own Uber account; regardless, Uber has already provided Plaintiff with all of the information she needs. Plaintiff could not have relied on any advertisement in choosing to use Uber's services because she did not order the subject ride. Moreover, she told responding officers that the car she took was a *Lyft*, not an Uber. Ex. 3 (Tarrant County_000190) at 193. She also admitted at her deposition that she does not recall ever seeing a specific Uber advertisement. Ex. 1 (Pl. Dep.) 226:19-227:18. In short, there is *no* basis for Plaintiff to contend she relied on Uber's marketing when getting into the car on June 9, 2020. Even still, she cannot credibly assert she believed any safety representations from Uber—during her interview with a detective days after the ride, she stated her belief from events prior to the ride that Uber "refused to do a background check on drivers" and "they do not care."[5] Knowing they cannot support an argument that this discovery is relevant for the Plaintiff, Uber expects Plaintiff will argue that she needs to understand what marketing the individual who used the Uber App—H.M.—may have seen before requesting the ride. But that argument fails too because there is no evidence *at all* that H.M. saw or relied upon any marketing either. This is fatal. To demonstrate even a modicum of relevance, Plaintiff must trace statements in an Uber advertisement directly to H.M. She has not met that burden.

Even assuming Plaintiff could establish relevance—which she cannot—Uber has already produced documents that describe *every* marketing message sent to Plaintiff and H.M. through the Uber app. In addition, Uber has produced extensive marketing materials used across the country. *See In re Uber Techs., Inc.*, MDL No. 3084, 2025 U.S. Dist. LEXIS 132269, at *12 n.9 (N.D. Cal. July 8, 2025) (Breyer, J.) ("Uber has produced a variety of marketing materials"). Plaintiff now seeks to compel Uber to conduct yet *another* investigation to identify specific ads used in Northeast Texas over *more than 8 years*.[6] The Court should deny this request for four independent reasons: *First*, Plaintiff seeks to conscript Uber into doing her work—identifying which already-produced or publicly available documents were used in a particular area. Indeed, Plaintiff admits she seeks

---

[4] Though it is Plaintiff seeking to compel production, she insisted Uber take the affirmative stance in this brief. Regardless, the burden is still on her to demonstrate the relevance of the discovery sought. She cannot do so.

[5] This quote is from Plaintiff's video interview with an investigating detective, which requires specific law enforcement software to view. Given the format, it has not been attached as an exhibit.

[6] Plaintiff cannot seek documents from this extensive period in any case. 30(b)(6) document requests must be "few and simple, and closely related to the oral examination." Fed. R. Civ. P. 34(b)(5), advis. comm's. note (1970 Amend.). The topic related to marketing in the Regional Notice covers "two years prior to" 2020.

a "subset" of the "substantial volumes of marketing materials [Uber has already produced] in this litigation." *Infra* at 6. No legal basis exists to impose such an obligation, and a document request is not the proper mechanism. *Second*, the request is overbroad. Purporting to seek ads she or H.M. may have seen, Plaintiff demands ads utilized anywhere in a vast region of Texas rather than examining the communications logs showing exactly which ads they received. The argument defies logic. *Third*, the request is unreasonably cumulative given the vast volume of marketing materials already produced. *Fourth*, the request is unduly burdensome. Plaintiff seeks all documents sent by all platforms and channels ("including… the Uber app, email, or social media") in an entire region of Texas for 8+ years. The burden far outweighs any marginal value, and Plaintiff has not articulated a basis to believe additional ads exist, or that the region was targeted by any campaign. For each of these reasons, and because this request is entirely disproportionate to the needs of the case, the Court should not compel Uber to produce materials for this request.

**30(b)(6) Designations.** In light of the compressed pre-trial schedule, Uber has identified one witness who it expects will testify on the majority of topics across these two notices and has set that individual's deposition for August 7. Uber has told Plaintiff it will identify any additional witnesses this week. In any event, Plaintiff knows that she has to question an Uber corporate representative on all of the applicable topics and so there is no prejudice that Plaintiff does not yet know which precise witness will cover which precise topics. Uber will continue to provide information in short order, but Plaintiff articulates no legal basis to justify imposing an artificial deadline on Uber. Nor does she have a basis to seek a proactive order on custodial files. Uber has not designated a non-custodian witness, and even if it had, the Court order applies to *"witnesses [Uber] intends to call… at trial,"* not witnesses for *Plaintiff's* depositions. *See* ECF 6209.

**Company Laptop.** Plaintiff asks that Uber's corporate representative designated to respond to the regional notice bring a laptop to the deposition to display internal Uber systems during the deposition. *See* Ex. 1 at Request No 4. This request is highly problematic, and the Court has acknowledged that "[i]n many cases, such a request would not be appropriate." *In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2025 U.S. Dist. LEXIS 92326, at *79 (N.D. Cal. May 14, 2025) (Cisneros, J.). It was not until the parties' July 24 conferral that Plaintiff explained, with any specificity, what she was seeking with this request. Namely, Plaintiff says she seeks specific information about links between the subject driver's accounts when he gained access in 2020 through "uGraph, Known Linked Accounts, and Related Accounts." *Infra* at 7. This is an entirely new request—the notice does not mention these programs, let alone anything about account links. Moreover, there is no topic in the Regional Notice that relates to that information, and thus, it is not an appropriate request for the notice. Nonetheless, Uber is working with Plaintiff to see if this dispute can be mooted.

## II.    Plaintiffs' Position

### A. Regional Marketing

Uber attempts to characterize Plaintiffs' requests as an effort to obtain irrelevant marketing materials because Plaintiff testified that she does not recall a specific Uber advertisement and did not personally request the subject ride. Uber's arguments entirely miss the point and misstate Plaintiffs' claims.

The relevant inquiry is not limited to whether Plaintiff herself recalls a particular advertisement. Plaintiff was transported because she was a guest rider in a ride ordered by H.M.. Uber has long promoted the concept of ordering rides for others, including national campaigns encouraging users to order rides for friends who should not drive, such as after consuming alcohol. *See, e.g.*, *Dean* Ex. 313 ("Rideshare is common use for friends and security to send an overly intoxicated individual home. This leaves riders vulnerable on the Uber platform. … Friends of riders want to be good friends but they don't do enough to keep their intoxicated friends safe during a night out. They think the safest/best thing to do is send people home alone in an Uber."). H.M.

has not yet been deposed. Plaintiffs therefore do not know what representations, messaging, or advertising influenced her decision to request the Uber ride. To that end, Plaintiffs requested targeted discovery about marketing that was specifically directed at the region in which Plaintiff and H.M. were in at the time the ride was requested. Uber arbitrarily limited this request only to the communications log, which would capture marketing delivered directly via email or through the app, but this does not cover marketing on any external channel, such as social media. Plaintiffs are entitled to discover what marketing Uber directed to Plaintiff and toward H.M., before H.M.'s deposition so they may fairly examine her regarding the representations she received and relied upon.

Nor is the requested discovery limited to H.M. or Plaintiff alone. Plaintiffs seek marketing directed to the Northeast Texas region because the decisions that culminated in Plaintiff entering the Uber vehicle did not occur in isolation. Plaintiff's decision to accept the ride, H.M.'s decision to order it, and the encouragement Plaintiff received from others to use Uber were all likely influenced by Uber's extensive marketing efforts in that region. As such, Uber's marketing is not confined to advertisements viewed by a single individual. It includes campaigns designed to shape public perception of Uber's safety and reliability, including through widespread exposure and word-of-mouth marketing.

Indeed, Plaintiff anticipates presenting evidence regarding Uber's word-of-mouth marketing strategy. Uber's own advertising campaigns were designed to generate exactly this scenario: friend encouraging an intoxicated friend to take an Uber, because Uber told the public that this was the safe thing to do. Plaintiff is therefore entitled to discover what messaging was being disseminated in the relevant geographic area that may have fueled those recommendations and public perceptions. Discovery is not limited to advertisements a witness specifically remembers seeing years later. Rather, Plaintiff is entitled to obtain discovery that reveals the marketing environment that influenced consumers and encouraged use of Uber's services in Northeast Texas before Plaintiff was sexually assaulted by her Uber driver.[7]

Uber's argument that communications logs showing advertisements sent directly through the Uber app eliminate the need for additional discovery likewise misses the mark. Plaintiffs do not seek only individualized in-app communications. Indeed, Plaintiff's Request No. 7 seeks marketing directed to the relevant region through any channel because regional campaigns, digital advertising, social media, email, and other marketing efforts collectively shape consumer perceptions and behavior. Uber itself distinguishes between individualized communications and broader marketing campaigns. The communications logs therefore are not a substitute for discovery concerning the broader marketing materials disseminated in the relevant region.

And Uber has not demonstrated that the requested discovery would impose any undue burden. Uber has already acknowledged producing substantial volumes of marketing materials in this litigation. Plaintiffs seek only the subset of those materials directed to the relevant geographic region during the relevant time period. Given Uber's extensive reliance on marketing to promote rider safety and encourage use of its platform, the requested discovery is plainly proportional to the needs of this bellwether case.

---

[7] Uber asserts that Plaintiff thought she was entering a Lyft the night she was assaulted. This argument misrepresents Plaintiff's deposition testimony. Plaintiff testified that, around the time of the assault, she used the terms "Uber" and "Lyft" interchangeably to mean "rideshare." *See* Ex. 2 at 187:8-15. To her, the term "Uber" was "like Kleenex." *Id.* at 231:18-22.

**B. 30(b)(6) Witness Designations**

Uber represents that it intends to identify any remaining Rule 30(b)(6) witnesses "this week." Plaintiffs simply request that Uber do so promptly. At present, Plaintiffs still have not received the names of all witnesses or the topics each witness will cover. With depositions (and trial) rapidly approaching, Plaintiffs need this information now to prepare efficiently and avoid unnecessary disputes.

To the extent any designated Rule 30(b)(6) witness is not already a previously disclosed custodian, Uber should also promptly produce that witness's custodial file. Although Rule 30(b)(6) testimony, in prior bellwether trials, Uber presented several Rule 30(b)(6) witnesses who later appeared at trial as fact witnesses and testified in their personal capacities. The Court therefore previously ordered Uber to produce those witnesses' custodial files. *See* ECF Nos. 6000, 6284. Plaintiffs seek to avoid repeating that process here.

If Uber identifies its witnesses and promptly produces custodial materials for any non-custodian witnesses, there may be no remaining dispute. Plaintiffs should not, however, be required to reserve every issue for a future Joint Status Report simply to obtain basic information necessary to prepare for noticed depositions.

**C. Laptop with Access to Uber Investigator Tools**

Plaintiffs' request for a 30(b)(6) witness to bring a laptop with access to investigator tools is not only appropriate under Rule 30(b)(6) and Rule 34 but is especially necessary when the parties are preparing for trial on an expedited timetable. In QLF 001, the case-specific deposition of Uber's 30(b)(6) witness is to commence on August 7. A shared laptop would facilitate truth-seeking and clarity at the deposition, under circumstances where multiple rounds of pre-deposition discovery were not feasible due to the short time.

More specifically, here, Uber produced documents indicate that the perpetrator-driver had at least five separate Uber accounts, at least one of which Uber had banned before onboarding the driver account used during the incident. It is not clear whether, at the time it onboarded the new account, Uber knew that the person behind the account was the same person previously banned. Uber has a number of tools, including uGraph, Known Linked Accounts, and Related Accounts, which (through a series of tabs, links, and linked data) would enable the parties to understand the timeline of what Uber knew about the shared identity behind these accounts.

As Plaintiffs have briefed in the past, and the Court has agreed, a request that a party bring a laptop computer to his deposition can be appropriate under both Rule 30(b)(6) and Rule 34, which allows a party to request inspection of ESI and "designated tangible things." Courts have routinely recognized such limited inspections as valid under Rule 34 when tailored to support fact-finding without undue burden. *See, e.g.*, *Dawe v. Corrections US*A, 263 F.R.D. 613, 619 (E.D. Cal. 2009) (granting motion to compel inspection of computer and its ESI); *Ukiah Automotive Investments v. Mitsubishi Motors of North America, Inc.*, 2006 WL 1348562, at *11-12 (N.D. Cal. May 17, 2006) (granting request to produce computer for inspection); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999) (appointing computer expert to inspect and create a mirror image of the hard drive); *Dawe v. Corrections USA*, 263 F.R.D. 613,619-620 (E.D. Cal. 2009) (granting inspection of computer and its ESI). Here, that need is especially pressing for the reasons set out above. The parties may be able to work out an alternative solution, but the laptop should be available as a back-up.

**CERTIFICATE OF SERVICE**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing

/s/ *Michael Vives*
Michael Vives

1