UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates To:

ALL CASES.

Case No.  23-md-03084-CRB   (LJC)

**ORDER RESOLVING JOINT LETTERS REGARDING TEXAS LOBBYING AND JUNE 2026 BACKGROUND CHECK POLICY**

Re: Dkt. Nos. 6860, 6902

**A.      Joint Letter Regarding Texas Lobbying Efforts**

**1.      Disputes Raised by the Parties**

The Court has reviewed the parties' Joint Letter, Dkt. No. 6860, in which Uber seeks "a Protective Order preventing Plaintiff from deposing Uber's 30(b)(6) designee on Topic 5, which seeks information relating to Uber's lobbying efforts in Texas" for the purpose of the *QLF001* bellwether trial.  Dkt. No. 6860 at 3.  Uber's characterization is a generally accurate description of Topic 5.  ECF No. 6860-2 at 18.  Plaintiff asserts that "the question before the Court is whether Plaintiffs get to ask Uber questions about its knowledge and statements about the feasibility and efficacy of different screening methods and the effects that using those methods might have on Uber's business," *id.* at 5, but Topic 5 as written does not directly address that issue, which Plaintiffs have had ample opportunity to explore through common corporate discovery.

Taking into account Judge Breyer's exclusion of lobbying evidence from the *Dean* bellwether trial, Dkt. No. 4934 at 28:4–7, and the short time remaining before this trial with other more pressing discovery matters still to resolve, the Court finds the likelihood of Plaintiff obtaining relevant and admissible evidence from this deposition topic to be modest and the burden on Uber to prepare a witness for this very broad topic encompassing nine subtopics therefore

disproportionate to needs of this bellwether case.  To the extent that Plaintiff contends that Topic 5 is relevant to test the credibility of Emilie Bowman's contention that Uber "goes all out to prevent sexual assault" and its efforts are "informed at every step by the knowledge and advice of its non-profit partners," Topic 5 is plainly overbroad.  Uber's request for a protective order is therefore GRANTED to the extent that Topic 5 is stricken from the deposition notice and Uber's witness(es) need not prepare to answer questions responsive to that topic.  The Court declines, however, to bar lines of questioning entirely.  Any dispute as to whether a question is within the scope of the remaining topics noticed for deposition is not grounds for an instruction not to answer, even if it might support an objection or exclusion of testimony from trial.

**2.    Sua Sponte Concerns Regarding Improper Objections and Instructions**

Relatedly, the record in support of this Joint Letter has raised concerns on the part of the Court regarding potential improper instructions directing Bowman during her deposition testimony not to answer questions that were perceived as "outside the scope" of the corporate deposition.  *See e.g.* Dkt. No. 6859-2 at 5 ("Object to form.  I'm going to instruct you not to answer anything – it's way outside the scope . . . ."); *id.* at 9 (Boman Dep. at 205:20–23) ("That's not what she's here to talk about, so I'm going to instruct the witness not to answer that."); *id.* at 10 (Boman Dep. at 206:13–15) ("Beyond the scope both of my question and the deposition notice. You don't need to answer that question.").  In some instance it appears that the questions are intended to lay foundation for further questioning, and the instructions obstruct the line of questioning that the deposing counsel was pursuing regarding Uber's safety efforts.

In connection with at least one other discovery dispute concerning deposition testimony, the Court has specified, "Any dispute over the scope [of questioning] shall not be grounds for a witness to refuse to answer a question."  Dkt. No. 3985; *see also, e.g.*, *In re SanDisk SSDs Litig.*, No. 23-cv-04152-RFL (LJC), 2025 WL 1501211, at *1 (N.D. Cal. May 22, 2025) ("Defendants have apparently conceded, correctly, that they were wrong to instruct White not to answer questions based on the scope of the notice.").  Pretrial Order No. 16: Stipulated Deposition Protocol states, "A person may instruct a deponent not to answer a question only when necessary to preserve a privilege, *to enforce a limitation directed by the Court*, or to present a motion under

United States District Court
Northern District of California

Federal Rule of Civil Procedure 30(b)(3)." ECF No. 866 at 12 (emphasis added). Addressing the equivalent language of Rule 30(c)(2), this Court has explained that not all court orders—much less deposition notices that have not been addressed by the Court—constitute "such a 'limitation.'" Dkt. No. 2705 at 3.[1] Most "[o]rders limiting the scope of document discovery (which are often based on relevance and burden) or generally addressing relevance (which is not in itself a basis to refuse to answer) are not grounds to instruct a witness not to answer a question at a deposition." *Id.* To support an instruction not to answer, an order must "reflect a determination that information should not be revealed." *See id.*

The Court also notes that Uber's counsel defending Boman's deposition repeatedly failed to comply with the previous Order that "objections (other than instructions not to answer) may be stated *only* as 'objection to form' or words to that effect." Dkt. No. 2705 at 3; 2025 WL 999712, at *2; *see, e.g.*, Dkt. No. 6859-2 at 6 (Boman Dep. at 189:20–21) ("calls for speculation"); *id.* at 9 (Boman Dep. at 205:18–20) ("This deposition is about Uber's work with advocates. It's not about Fong amendment."); *id.* at 10 (Boman Dep. at 206:16–18) ("She's not an expert on – she's not here for that, and she's not Uber's corporate representative on proposed legislation."). To clarify going forward, counsel defending a Rule 30(b)(6) deposition in this MDL may also state an objection as "outside the scope of the notice" or words to that effect (in addition to "objection to form"), but may not make further speaking objections regarding the basis for that assertion unless the attorney taking the deposition requests clarification, and may not instruct a witness not to answer on that basis. Grossly improper questioning may nevertheless be the basis for a sanctions motion after the deposition.

### B.    Joint Letter Regarding June 2026 Background Check Policy

The Court has reviewed the parties' Joint Letter (Dkt. No. 6902) addressing discovery regarding Uber's new background check policy, which took effect in June 2026 and expanded the time period Uber considered for drivers' criminal histories, among other changes. Plaintiffs have served a deposition notice under Rule 30(b)(6) of the Federal Rules of Civil Procedure seeking

---

[1] *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2025 WL 999712, at *2 (N.D. Cal. Apr. 3, 2025).

wide-ranging testimony and documents regarding the intent and development of the new policy. Dkt. No. 6902-2 at 10–19.

As the parties acknowledge, Judge Breyer has directed them to focus on discovery for the *QFL001* bellwether trial.  That case addresses an incident that occurred in 2020.  Case No. 24-cv-8783, Dkt. No. 1 at 3.  The next bellwether case, *A.R.*, addresses an incident that occurred in 2023.  Case No. 23-cv-7821, Dkt. No 1 at 3.

Plaintiffs argue that discovery should be permitted "regarding what Uber knew before June 2026, when Uber first considered these changes, why it delayed implementing them, whether they were feasible years earlier, and what information ultimately caused Uber to abandon positions it had maintained for years."  Dkt. No. 6902 at 6.  Uber contends that any evidence related to its new policy would be barred by Rule 407 of the Federal Rules of Civil Procedure, and that this discovery is overbroad and disproportionate to the needs of this litigation.  *Id.* at 3–4.  Plaintiffs respond that Rule 407 governs admissibility rather than discoverability, and that remedial measures can be admitted in evidence for some purposes, including to impeach Uber's Head of Safety Hannah Nilles's June 2025 deposition testimony that Uber's earlier background check policy was "the best that it [could] do to keep bad actors off the platform" and that Nilles was "not aware of any plans to change any of [Uber's] screening practices at [that] time beyond [other efforts she had] already mentioned."  *Id.* at 6–7 (quoting Dkt. No. 6902-4 at 5, 7 (Nilles Dep. at 252:12–16, 267:3–5)).

Plaintiffs have had the opportunity to take discovery regarding Uber's development of policies through (and beyond) the dates of the incidents in question. The promulgation of a new policy is not grounds to rehash that previous discovery fully, nor is there reason to expect that all of the details of the new 2026 policy will be relevant to the two upcoming bellwether cases concerning events multiple years earlier.  Exhaustive discovery regarding the 2026 policy, which is reflected in the broad range of topics included in Plaintiffs' 30(b)(6) notice, is therefore not proportional to the needs of this MDL at this time, when the parties have limited time to conduct other discovery that is more necessary for the next two trials.

That said, Plaintiffs have reasonable grounds to explore whether this new policy calls into

question the accuracy or credibility of Nilles's June 2025 testimony that Uber was doing all that it could with respect to driver screening and that she was not aware of plans to change its screening practices. Plaintiffs also have a legitimate interest in exploring whether it would have been feasible for Uber to implement sooner the expanded background checks that it is now conducting, though the admissibility of such evidence will ultimately be a question for Judge Breyer. The Court therefore authorizes the following limited discovery at this time:

(1) Unless Uber stipulates for the purpose of the next two bellwether trials that the expanded background check policy it adopted in 2026 would have been feasible at the time of the incidents in question for those trials, Uber shall produce a witness under Rule 30(b)(6) no later than four weeks from the date of this Order to testify to the reasons why that would not have been feasible.

(2) At least seven days before that deposition, Uber shall produce any documents that it intends to preserve the right to introduce at either of the next two bellwether trials to show that such earlier adoption would not have been feasible.

(3) No later than two weeks from the date of this Order, Uber shall produce contemporaneous documents sufficient to show when Hannah Nilles became aware of Uber's intent to make some or all of the changes to its background check policy that it adopted in June of 2026, or a privilege log of specific documents if all such documents are privileged.

(4) No later than two weeks from the date of this Order, Uber shall produce a declaration by Hannah Nilles stating when she first became aware of Uber's intent to make those changes. If Hannah Nilles is the witness (or one of the witnesses) designated under Rule 30(b)(6) above, Plaintiffs may question her at that deposition about this declaration. If she is not, they may take her deposition regarding that issue upon a specific showing of good cause.

Uber contends that its development of the new policy is largely privileged, Dkt. No, 6902 at 4–5, while Plaintiffs dispute that blanket privilege assertion, *id.* at 7–8. The limited discovery authorized here is not so clearly privileged on its face to warrant denying it, without prejudice to

United States District Court
Northern District of California

5

any particularized and assertions of privilege that Uber might make regarding specific issues or documents.

As the Court has noted before, new cases continue to be filed in this MDL concerning new allegations of sexual assault and harassment, and ongoing discovery is necessary to allow those new plaintiffs to prosecute their claims. To the extent cases are filed alleging assault or harassment that occurred after implementation of the new policy, its details are more likely to be relevant. Right now, no such cases are set for trial so such discovery is not particularly urgent, but it may be relevant to the parties' evaluation of such cases for settlement even in the absence of an imminent trial. The parties are therefore directed to meet and confer regarding additional discovery concerning this policy that might be warranted as the MDL proceeds, and to file a joint letter addressing any unresolved disputes no later than: (1) one month after the conclusion of the next two bellwether trials; or (2) January 7, 2027; whichever is sooner.

The parties are reminded going forward that in the absence of a specific order to the contrary, joint discovery letters in this MDL must contain all substantive argument in five consecutively numbered pages.

**IT IS SO ORDERED.**

Dated: July 30, 2026

LISA J. CISNEROS
United States Magistrate Judge

6