[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES** |
| This Document Relates to: | Judge: Honorable Charles R. Breyer |
| | Date:   August 14, 2026 |
| *Jane Doe QLF 1 v. Uber Techs. Inc.*, N.D. Cal. No. 24-cv-8783, W.D. Tex. No. 26-cv-01694 | Time:   11:00 AM |
| | Ctrm.:   6-17th Floor (zoom) |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JANE DOE QLF 0001, | No. 26-cv-01694-CRB |
| Plaintiff, | Judge: Honorable Charles R. Breyer |
| v. | |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.      The plain text of Section 41.005 permits punitive damages in this case. ........................... 3

II.     The structure of Section 41.005 supports the plain meaning interpretation. ..................... 5

III.    The Court should disregard the non-binding precedent on which Uber relies. ................. 5

        A.      Non-binding authority cannot override the plain text of the statute. ..................... 5

        B.      The cases on which Uber relies do not correctly interpret the statute. ................... 6

CONCLUSION .................................................................................................................. 9

**INTRODUCTION**

"For over 150 years, [the Texas Supreme] Court has held that exemplary damages serve to punish the wrongdoer and 'set a public example to prevent the repetition of the act.'" *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 555 (Tex. 2008) (quoting *Cole v. Tucker*, 6 Tex. 266, 268 (1851)). In this case, Uber hired and dispatched Mr. Le despite his criminal history and reported sexual misconduct. *See* ECF 2505 (Am. Compl.) Plaintiff seeks punitive damages because of Uber's conscious indifference and reckless disregard for her safety, not for the driver's downstream criminal conduct. This case is not about punishing the driver and Uber for the same wrong, but about punishing two distinct actors for two distinct wrongs. The driver has already been punished and deterred for his conduct—he is in prison. Uber has not been punished or deterred for *its* conduct.

Uber claims extraordinary immunity from punitive damages because Texas law states that "a court may not award exemplary damages against a defendant because of the criminal act of another." Tex. Civ. Prac. & Rem. Code § 41.005(a). No problem: In this trial, the jury will be asked to award punitive damages "because of" Uber's gross negligence in hiring the driver, not "because of" the driver's criminal act. Appropriate jury instructions will ensure the jury segregates Uber's conduct from that of its driver. Straightforward application of the plain text requires denial of Uber's motion.

Exercising diversity jurisdiction, this Court's role is to predict how the Texas Supreme Court would interpret Section 41.005. In that court, "text is the alpha and the omega of the interpretive process." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017); *see also Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021) (describing the Texas Supreme Court as "text-centric"). The Texas Supreme Court "interpret[s] statutes by hewing to their plain text and eschewing speculation about what their drafters may have intended to accomplish." *River Creek Dev. Corp. v. Preston Hollow Cap., LLC*, -- S.W.3d --, 2026 WL 1699928, at *5 (Tex. June 12, 2026).

That is why, every time the Texas Supreme Court mentions Section 41.005, it describes the statute as doing exactly what its plain text says it does: "Section 41.005(c) … addresses the

imposition of exemplary damages against a defendant *for the criminal act of another.*" *Bennett v. Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010) (emphasis added); *accord Massage Heights Franchising, LLC v. Hagman*, 712 S.W.3d 615, 620 (Tex. 2025) ("Section 41.005 … prohibits such damages *for the criminal acts of another.*") (emphasis added); *Fairfield*, 246 S.W.3d at 667 (describing Section 41.005: "A defendant's liability for exemplary damages based on the conduct of employees, agents, and associates is also limited.").

Uber asks the Court to depart from the plain text of the statute. According to Uber, even though the statute says no punitive damages "because of" another's criminal act, in fact it precludes punitive damages in any case where *the harm* resulted from another's criminal act. But that is not what the statute says or how the Texas Supreme Court has described it.

Uber finds support only in a few opinions from the Texas intermediate appellate court and federal district courts. But those opinions, while they "may provide guidance," "are not controlling." *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010). The question for the Court is not what the intermediate appellate court has decided, but what the Texas Supreme Court would decide were the question put to it. In so discerning, the Court "must do its best (not its worst) to determine what that law is. It must use its judicial brains, not a pair of scissors and a paste pot." *Putman v. Erie City Mfg. Co.*, 338 F.2d 911, 918 (5th Cir. 1964) (citation omitted). The decisions on which Uber relies disregard the plain text of the statute, and so fail to do what this Court must do, which is "use the same methods of statutory interpretation used by the Texas Supreme Court." *Camacho*, 993 F.3d at 311. Because the plain text authorizes punitive damages in this case, and the plain text is what the statute means, the Court should deny Uber's motion.[1]

---

[1] Uber's motion is also procedurally improper. A motion to strike must be made "before responding to the pleading." Here, Uber already answered the complaint. ECF 3799. And a motion for judgment on the pleadings generally must target "at least an entire cause of action or an affirmative defense." *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1062-63 (S.D. Cal. 2019) (collecting cases "refus[ing] to entertain motions for judgment on the pleadings that seek to dispose of only a part of an individual claim or defense"). Plaintiff does not have a "claim for punitive damages," only claims for negligence and strict products liability.

Even if Uber re-fashioned its motion as one for summary judgment, ruling on Section 41.005 would be premature. *See Jung v. 24 Hour Fitness USA, Inc.*, 2018 WL 5045214, at *7 (E.D. Tex. Oct. 17, 2018) (denying summary judgment on punitive damages under Section 41.005 as "premature because the decision is only relevant if Plaintiff establishes actual damages").

PL'S OPP'N TO MOT. TO STRIKE
N.D. CAL. 3:23-MD-03084; W.D. TEX. 26-CV-1694

**ARGUMENT**

**I.     The plain text of Section 41.005 permits punitive damages in this case.**

Because the driver's conduct was criminal, Uber claims a windfall—no punishment, no deterrence. The plain text of the relevant Texas statutes requires denial of Uber's motion. Tex. Civ. Prac. & Rem. Code Section 41.003(a) sets out the general rule concerning punitive damages: "exemplary damages may be awarded" where the plaintiff "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." By its terms, Section 41.003(a) authorizes punitive damages where the harm results from the specified kind of conduct. But the statute does not distinguish between the conduct of a defendant and that of a third party.

Tex. Civ. Prac. & Rem. Code Section 41.005(a) provides an "exemption" in cases involving criminal conduct: In "an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another." The plain text precludes imputed or vicarious liability, instead requiring that in a case involving criminal acts, exemplary damages be awarded "because of" the defendant's *own conduct*, not "because of" the criminal perpetrator's act. (It bears noting that Section 41.005 was enacted in 1995, before the United States Supreme Court imposed constitutional limits on the scope of punitive damages, so restrictions that now apply to such damages did not exist at that time.)

Uber's position requires an extreme interpretation of the phrase "because of." The "ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (citation omitted). In turn, "the phrase 'by reason of' denotes some form of causation." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 769 (2018). Depending on "context," a statute may "demand[] only but-for cause as opposed to proximate cause or sole cause." *Id.*; *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-68 (1992) (explaining that the interpretation of "by reason of" as requiring merely "but for cause" is "hardly compelled" and rejecting it). For example, the Texas Supreme Court has interpreted the similar phrase "arises from" "as something more than actual cause but less than proximate cause." *Ryder Integrated Logistics,*

*Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 928-29 (Tex. 2015).[2]

Here, Uber's interpretation of the statute is unsupported by any ordinary understanding of "because of." Start with the lowest possible standard: "but for cause." In this case, the jury will decide whether Uber was grossly negligent. Gross negligence means:

> an act or omission … which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and … of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code § 41.001(11). So, the jury will evaluate Uber's "act[s] or omission[s]" in light of the company's "actual" knowledge. The driver's criminal conduct is not a fact the jury need consider in determining *Uber*'s liability for punitive damages. Uber could be grossly negligent even if the driver's conduct did not rise to the level of a criminal act. Driver criminality is therefore not a "but-for" cause of any such damages.

If "because of" requires "something more than actual cause"—whether it be proximate cause, sole cause, or something in the middle—then the answer is even more clear. Because any punitive damages will be based on Uber's conduct, not the driver's, the driver's criminal acts cannot be deemed a proximate cause or sole cause of such damages. *See* Tex. Pattern Jury Charge 2.4 (proximate cause requires "substantial factor").

Uber's position necessarily rests on an interpretation of "because of" that finds the required causal relationship because the criminal act exists in the same case as the potential punitive damages. But had the legislature intended to immunize defendants from punitive damages in all cases involving third-party criminal conduct, it would have been simple to write a statute doing so: "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant who did not commit the criminal act." Instead, the legislature required only that punitive damages not be awarded "because of the criminal act of another." The language sets out a limitation, not immunity, and so supports a jury instruction, not judgment on the pleadings. So long as the jury awards punitive damages only to punish and deter

---

[2] Later, the Texas Supreme Court revisited the same statute and interpreted it to require proximate cause. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 873-74 (Tex. 2023).

Uber's own conduct, not "because of" the driver's assault of Jane Doe QLF, the statute is enforced.

**II.     The structure of Section 41.005 supports the plain meaning interpretation.**

The rest of Section 41.005 confirms its plain-text meaning. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) ("We construe the words in light of their statutory context, considering the statute as a whole."). Specifically, sub-section (b) provides several exceptions to the exemption, each of which allows exemplary damages against a defendant because of the criminal actions of another, without the defendant itself necessarily being guilty of malice, fraud, or gross negligence—in other words, imputed or vicarious liability.

The first exception is where "the criminal act was committed by an employee of the defendant," subject to further requirements under sub-section (c). Tex. C.P.R. Code § 41.005(b)(1). The second exception is where "the defendant is criminally responsible as a party to the criminal act under the provisions of Chapter 7, Penal Code." *Id.* § 41.005(b)(2). Chapter 7 of the Penal Code, in turn, provides for vicarious liability: "Criminal Responsibility for Conduct of Another." Tex. Penal Code, tit. 2, ch. 7. The third exception is where "the criminal act occurred at a location where … the defendant was maintaining a common nuisance … and had not made reasonable attempts to abate the nuisance." Tex. Civ. Prac. & Rem. Code § 41.005(b)(3). And the fourth exception is where "the criminal act resulted from the defendant's intentional or knowing violation" of statutes requiring security devices in rental units. *See id.* § 41.005(b)(4). None requires actor-specific proof of the predicates for exemplary damages under Section 41.003.

**III.     The Court should disregard the non-binding precedent on which Uber relies.**

Lacking support in the plain text of the statute or the Texas Supreme Court's discussions of it, Uber relies on decisions from the Texas intermediate appellate court (and a federal district court case citing those decisions). But such authority, though relevant, does not resolve the question before the Court.

**A.     Non-binding authority cannot override the plain text of the statute.**

In "a diversity case like this one, when no Texas Supreme Court case precisely resolves the legal issue," the Court "must make an *Erie* guess and determine as best [it] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019)

(internal quotation marks omitted). The "decisions of Texas intermediate appellate courts may provide guidance, but are not controlling." *Packard*, 624 F.3d at 729-30; *see also Martinez*, 935 F.3d at 400-01 (disregarding "intermediate appellate case" that the federal court determined was "unlikely [to] reflect[] the Texas Supreme Court's view" on the issue).

An "overly rigid deference to the decision of an intermediate appellate court can easily distract a federal court from the constitutionally-based north star of its inquiry: what would the highest court of the state do if the present case was now before that court?" *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F. 4th 919, 928 (7th Cir. 2024). "Consequently, a federal court must be alert to indications that the highest court of the state might well reject the view of the intermediate appellate court." *Id.*; *see also Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 467 n.2 (3d Cir. 2024) ("[I]f we believe an opinion is unsupported, we should not reflexively follow it. Circuit courts are competent to interpret state law, too.").

In particular, "[w]hen interpreting a Texas statute, [the Court] use[s] the same methods of statutory interpretation used by the Texas Supreme Court." *Camacho*, 993 F.3d at 311. The Court "follow[s] the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 277 (5th Cir. 2015) (citation omitted). Accordingly, "the decisions of lower state courts … are only persuasive to the extent that they are well-reasoned and reflect the faithful application of Texas's framework for statutory interpretation." *Perez v. Am. Med. Sys. Inc.*, 461 F. Supp. 3d 488, 503-04 (W.D. Tex. 2020) (disregarding Texas intermediate appellate court decision and several federal district court decisions for reaching conclusion unsupported by the plain text of the statute). *Cf. Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 779 (Tex. 2011) ("*[S]tare decisis* does not compel perpetuating an interpretation of [a statute] that the entire Court agrees cannot be discerned from the text of the statute.").

**B.**     <u>**The cases on which Uber relies do not correctly interpret the statute.**</u>

Only one decision is principally relevant because later cases cite to it without undertaking any independent analysis of the statute itself. That case is *Healthcare Ctrs. of Tex., Inc. v. Rigby*,

97 S.W.3d 610 (Tex. App. 2002, pet. denied), the first decision to interpret Section 41.005.[3] There, a resident of a nursing home (Underwood) sued the nursing home for failing to prevent an attempted sexual assault by another resident (Jones). *Id.* at 614-17.

The opinion is not a model of clarity. But it appears that the court held that Section 41.005 precluded punitive damages against the nursing home for three reasons. First, the court held that "the injury to Mrs. Underwood was indivisible" and the court found "it highly improbable that the jury awarded $50 million in punitive damages solely because of the [conduct] of the nursing home, separate and apart from any criminal act by Jones." *Id.* at 618. The court also suggested that the jury instructions and verdict form were "posited such that the jury could not distinguish between the criminal act of Jones and malice attributed to [the nursing home]." *Id.* at 619. The court could have stopped there; it is indisputable that Section 41.005 precludes a judgment for punitive damages if it is determined (from the jury instructions, from the size of the verdict itself, or from other evidence) that the jury assigned punitive damages for the criminal conduct of another person.

Second, the court emphasized the plaintiff's "judicial admission" that the harm was caused by Jones, even though such an admission does not say anything about whether the punitive damages were awarded "because of" Jones's conduct (and it was "undisputed that the direct cause of [the plaintiff's] harm was the criminal conduct of another"). *Id.* at 618. This portion of the opinion does not make much sense.

Third, the court went on to interpret Section § 41.005 more broadly—and erroneously in light of the plain text of the statute. The key holding is this:

> In interpreting or applying 41.005 to any scenario, it seems implicit that our legislature anticipated a jury might find a defendant acted with malice even though the harm to a plaintiff was caused by the criminal act of another. Because the plaintiff admitted her harm was caused by the criminal conduct of Jones, she is barred from recovering exemplary damages under section 41.005 despite the jury's finding that Healthcare acted with malice.

*Id.* at 619-20.

---

[3] When the Texas Supreme Court *refuses* a petition, the court of appeals' opinion "has the same precedential value as an opinion of the Supreme Court." Tex. R. App. P. 56.1(c). A notation of "pet. denied," by contrast, does not signify the Supreme Court's approval of the court of appeals' opinion or its reasoning. *See id.* R. 56.1(b).

PL'S OPP'N TO MOT. TO STRIKE
N.D. CAL. 3:23-MD-03084; W.D. TEX. 26-CV-1694

This analysis pays scant attention to the actual text of the statute, instead reaching a conclusion based on the court's opinion of what was "implicit" that the "legislature anticipated." But that is not how the Texas Supreme Court interprets statutes. *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 493 (Tex. 2013) ("A fundamental constraint on the courts' role in statutory interpretation is that the Legislature enacts the laws of the state and the courts must find their intent in that language and not elsewhere."). Indeed, the court's reasoning treats the statute's introductory clause—"an action arising from harm resulting from an assault, theft, or other criminal act"—as the operative prohibition, and gives minimal effect to the language the legislature actually chose*:* "because of the criminal act of another."

*Rigby* never once grappled with the plain text of Section 41.005(a). The only textual analysis in the decision concerned the exceptions in Section 41.005(b). The *Rigby* court determined that the "four exceptions to a defendant's exemption from punitive damages because of the criminal act of another" precluded the court from recognizing any "other exemptions." 97 S.W.3d at 618. The problem with this conclusion—like the rest of the court's analysis—is that it skips past the plain text of Section 41.005(a) and does not examine the textual meaning of "because of the criminal act of another." As explained above, the exceptions actually support Plaintiff's interpretation, because they each set out a basis for imputed or vicarious liability.[4]

Uber cites other decisions for quantity rather than quality, because they add very little. None analyzes the text of Section 41.005(a). In *Massage Heights Franchising, LLC v. Hagman*, 679 S.W.3d 298 (Tex. App. 2023), *reversed in part on other grounds*, 712 S.W.3d 615 (Tex. 2025), the court cited *Rigby* without undertaking any independent analysis of the statute. *Id.* at 309-10. In *In re Islamorada Fish Co. Tex. LLC*, 319 S.W.3d 908 (Tex. App. 2010), the court addressed only a discovery issue, cited only an earlier unpublished memorandum opinion that itself cited *Rigby*

---

[4] *Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823 (Tex. App. 2012), which Uber does not cite, is similar. There, the court paid lip service to the plain-text analysis (which is more than can be said of *Rigby*), but ultimately "construe[d] Section 41.005 to preclude punishing a defendant for harm resulting from a criminal act of a third party when that defendant's actions are a concurrent cause of the harm." *Id.* at 826-27. The court did not acknowledge that "award exemplary damages against a defendant because of the criminal act of another" (the statutory language) is not the same as "punishing a defendant for harm resulting from a criminal act" (the court's language). The court also relied on *Rigby* for the mistaken analysis of the exceptions in Section 41.005(b).

without further analysis, and even so cautioned that "this opinion should not be construed as foreclosing a challenge to the applicability of section 41.005(a) should the issue arise again." *See id.* at 912 & n.4 (citing *Wilson v. K.W.G., Inc.*, 2004 WL 1925599, at *1 (Tex. App. Aug. 31, 2004) (mem. op., not designated for publication)).[5]

Neither *Rigby* nor cases citing it are "well-reasoned" or "reflect the faithful application of Texas's framework for statutory interpretation." *Perez*, 461 F. Supp. 3d at 502. None justifies departure from the "[p]lain text," the "truest manifestation of legislative intent." *City of San Antonio v. Realme*, 731 S.W.3d 342, 350 (Tex. 2026) (internal quotation marks omitted); *see also Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir. 2007) ("[U]nder Texas law the starting point of our analysis is the plain language of the statute.").

## CONCLUSION

For these reasons, the Court should deny Uber's motion to strike.

---

[5] Like the Texas cases, *R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203 (D. Or. 2018) cited *Rigby* without analyzing the text of the statute. *Id.* at 1216-17.

Dated: July 30, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: July 30, 2026

By:    */s/ Andrew R. Kaufman*
Andrew R. Kaufman