[SUBMITTING COUNSEL BELOW]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S PRESERVATION AND PRODUCTION OF COMMUNICATIONS**<br><br>Judge:          Hon. Lisa J. Cisneros<br>Courtroom:   G – 15th Floor |

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

|  |  |
|---|---|
| JANE DOE QLF 001,<br><br>             Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>             Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:          Hon. Charles R. Breyer<br><br>Courtroom:   501 |

1

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff Jane Doe QLF 001's preservation and production of communications related to the alleged incident.

Respectfully submitted,

DATED: July 30, 2026

By: /s/ *Roopal P. Luhana*
    ROOPAL P. LUHANA (*pro hac vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

 *Co-Lead Counsel for Plaintiffs*

By: /s/ *Michael Vives*
    MICHAEL VIVES (*pro hac vice*)
    JESSICA DAVIDSON (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    601 Lexington Ave.,
    New York, NY 10022
    Telephone: (212) 446-4800
    michael.vives@kirkland.com
    jessica.davidson@kirkland.com

    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    555 California St., 27th Floor
    San Francisco, CA 94104
    Telephone: (415) 439-1400
    laura.vartain@kirkland.com

    ALLISON M. BROWN (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    2005 Market Street, Ste. 1000
    Philadelphia, PA, 19103
    Telephone: (215) 268-5000
    alli.brown@kirkland.com

    KIM BUENO
    State Bar No. 24065345
    **KIRKLAND & ELLIS LLP**
    401 W. 4th Street
    Austin, TX 78701
    Telephone: (512) 678-9100
    kim.bueno@kirkland.com

    *Counsel for Defendants Uber Technologies, Inc.,*
    *Rasier, LLC, and Rasier-CA, LLC*

## I.    Uber's Position:

Despite repeated efforts, Uber has not been able to get a straight story from Plaintiff about whether she still has text messages sent and received between 2020 and 2024. To the contrary, Plaintiff's story has materially shifted multiple times over the course of a few weeks.

- On July 8, Plaintiff declared that she had "exhaust[ed]" efforts and that an expert had "concluded that there are no backups on the iCloud" or "contemporaneous communications" available (Ex. 1 (7/8/26 Velez Email) at 23);
- On July 15, Plaintiff said she was not in possession of any text messages from 2020-2024;
- On July 17, Plaintiff provided a draft of the Joint Status Report indicating that she *had* "identified text messages dating back to 2021" (ECF 6839 at 7);
- At her July 22 deposition, Plaintiff testified (contrary to prior statements), that she transferred data each time she got a new phone (Ex. 2 (Pl.'s Dep.) 277:23-278:14) ("Q. Every time you got a new phone, would the phone be completely blank? Would you start over from scratch? A. No. It was backed up from previous phones… Q. And so to your knowledge, you didn't lose any data in that process. It just transferred from one phone to the other, correct? A. To my knowledge, that's what I assumed had happened, yes."); and
- On July 27 (two days before the filing of this brief), Plaintiff disclosed for the first time that there *is* an iCloud backup of a prior phone, though it is incomplete.[1]

These shifting narratives raise serious concerns about Plaintiff's efforts to preserve (and produce) relevant discovery. They also raise concerns about whether Plaintiff and her counsel are properly communicating, given the contradictions between her testimony and statements by her counsel (both on this topic and others). In her response below, Plaintiff seeks to deflect attention from her constantly shifting representations about whether—and if so, which—communications were preserved by blaming Uber for seeking the discovery, suggesting that Uber is somehow engaging in improper conduct by seeking relevant communications (when Plaintiff has obtained 5.5 million pages of documents from Uber) and attempting to minimize the extent of Plaintiff's counsel's utterly inconsistent statements about document preservation. These are sideshows. The only way to determine what has (and has not) been done to preserve Plaintiff's communications is to depose Plaintiff's unidentified expert. Plaintiff opposes such a deposition, arguing that consulting experts are protected from discovery. But that is not a hard-and-fast rule. To the contrary, Rule 26 is clear that work product protections must yield where, as here, a party requires information that cannot be obtained elsewhere.

For these reasons, Uber requests that Plaintiff: (i) identify the expert(s) she used to analyze her devices; (ii) submit a declaration from the expert(s) describing their credentials, the methods they used, and a full accounting of their analyses, results, and conclusions; and (iii) provide that expert to sit for a deposition. The Court should also compel Plaintiff's phone records showing what texts were sent and received by Plaintiff from 2020-2024 (*see, e.g.*, Ex. 3 (DOE QLF 001136)). This will allow Uber to assess what messages Plaintiff has not been able to produce from the relevant time period. Uber also reserves the right to seek all additional relief in the future.

---

[1]    On July 28, Plaintiff produced some texts from the newly discovered backup. She claims she has "produced 473 text message strings spanning 2021 through 2024." But she has produced *no text message*s (iMessage, SMS, and RCS) from 2022 or 2023, and only *two* from 2024. She also has failed to produce *any* text messages from 2020, when the alleged incident occurred. The "Message" files Plaintiff points to in her position do not fall within these texting platforms.

**Legal Standard.** "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, [or] likely to be requested during discovery." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015). A criminal action is enough to trigger this duty. *Crema v. Las Vegas Metro. Police Dep't*, 2023 WL 6262556, at *4 (D. Nev. Sept. 25, 2023). "[E]ven for an individual without sophisticated knowledge about litigation or forensic analysis, trading in a phone, without making a backup, and after becoming aware of pending litigation where communications … were potentially relevant, would constitute a failure to take reasonable steps to preserve evidence." *Spencer v. Lunada Bay Boys*, 2017 WL 11527978, at *12 (C.D. Cal. Nov. 29, 2017). Moreover, the consulting expert privilege is waived if the party puts the subject matter at issue or it is impractical for the other side to "obtain facts or opinions on the same subject by other means." *Zeiger v. Wellpet LLC*, 2018 U.S. Dist. LEXIS 63019, at *4 (N.D. Cal. Apr. 10, 2018).

**Duty to Preserve.** Plaintiff's duty to preserve was triggered immediately after the alleged assault on June 9, 2020, when a criminal case was opened against the driver. Plaintiff was interviewed by a detective, asked for phone records, and eventually testified at trial. Ex. 2 (Pl.'s Dep.) 206:21-207:1; 268:12-16. The driver was convicted in 2022 and appeals continued through January 2025. Plaintiff started looking for an attorney to pursue civil claims against Uber as early as 2021, Ex. 4 (DOE QLF 007490), was speaking to attorneys as early as 2022, Ex. 5 (DOE QLF003493), and retained her counsel in 2023, Ex. 1 (7/8/26 Velez Email) at 23. Plaintiff failed to preserve evidence even after the latest of these dates.

**Plaintiff's Ever-Changing Narrative.** Last year, Plaintiff agreed to produce all "communications or writings regarding the [alleged incident]." Ex. 6 (Pl.'s Resps. to RFPs) at Resp. No. 2. She did not. Instead, on June 26, 2026, Plaintiff informed Uber that her phone was missing. Uber immediately sought information from Plaintiff, leading to piecemeal disclosures that: (i) she also lost the phone she used from 2021-2024, (ii) she consulted experts who determined that contemporaneous texts could not be recovered, and (iii) there were no backups other than one of her current phone (which Plaintiff's counsel represented had no data from 2020-2024). Ex. 1 (June/July 2026 Email Exchange). Uber has repeatedly sought more information about these issues but Plaintiff's counsel have largely ignored those requests. Uber is thus missing, among other things, communications with the ten friends and three family members about the incident and texts sent and received in the hours leading up to and after the subject ride. Ex. 3 (DOE QLF 001136).

Relying on her expert's apparent findings, Plaintiff's counsel stated at a July 15 meet-and-confer that she did not have any text messages from 2020-2024. That changed two days later when Plaintiff's draft Joint Status Report stated she had "identified text messages dating back to 2021[.]" ECF 6839 at 7. Plaintiff's counsel also claimed for weeks that she had not backed up or transferred data from her prior phones to her current device, but Plaintiff herself testified to the exact opposite at her deposition. Ex. 2 (Pl.'s Dep.) 277:23-278:14 ("[W]hen you got your phone, when you went to T-Mobile, they took everything from the earlier phone and put it on? A. Correct."). (Uber's counsel asked Plaintiff at her deposition to check her phone and see how far back her photos went, but her counsel did not allow her to.) Following Plaintiff's deposition, her counsel then stated "[t]he apparent lack of text messages… appears to result from a routine cell phone upgrade[.]" Ex. 7 (7/23/26 Grille Letter) at 1-2. This makes no sense; if the data was transferred across phones, why would Plaintiff have lost data through a "routine cellphone upgrade"? Most recently, despite a prior expert conclusion that no iCloud backups of the relevant phones existed, Plaintiff claims to have found exactly that for a limited set of messages, none of which relate to the alleged incident. These conflicting representations raise serious concerns about Plaintiff's collection and production process. Uber is also concerned that but for persistent follow-up, Plaintiff never would have

2

produced relevant messages given the representation three weeks ago that she had "exhaust[ed]" efforts and no backups or contemporaneous texts existed. Ex. 1 (7/8/26 Velez Email) at 23-24.

**Plaintiff's Expert(s) and Data Sources.** Plaintiff has relied heavily on her purported expert(s) for her assertions that certain documents and sources were unavailable, but asks the Court to shield that expert's identity, methods, and analyses. This request should be denied. Plaintiff's expert was not "retained for purposes of preparing for trial" and thus is not protected under Rule 26(b)(4)(D), as the Court noted. Ex. 8 (7/23/26 Hr'g Tr.) 31:1-7. Regardless, Plaintiff cannot have it both ways. By placing this work at issue, she has waived any privilege. *See Zeiger*, 2018 U.S. Dist. LEXIS 63019, at *5. And even if she had not, the information is discoverable because there is no other avenue by which Uber could acquire these facts and opinions. *Id.* (citing Fed. R. Civ. P. 26(b)(4)). As Plaintiff acknowledged at the July 23 conference, with these e-discovery issues, "we get into a realm which is beyond what lawyers are best equipped to handle because we are dealing with highly technical information." Ex. 8 (7/23/26 Hr'g Tr.) 29:23-30:1. Uber should thus be allowed to depose Plaintiff's expert and understand what happened to Plaintiff's communications and what efforts were taken to retrieve them. This is particularly so because Plaintiff has improperly "use[d] expert testimony as both a sword and a shield." *See Worley v. Avanquest N. Am., Inc.*, 2013 U.S. Dist. LEXIS 175305, at *14-17 (N.D. Cal. Dec. 13, 2013).

For all of these reasons, the Court should compel Plaintiff to provide: (i) the identity of the expert(s) Plaintiff used to analyze her devices; (ii) a declaration from the expert(s) describing their credentials, the methods they used, and a full accounting of their analyses, results, and conclusions; (iii) a deposition of Plaintiff's data expert(s); and (iv) Plaintiff's phone records from 2020 to 2024, or at the very least, an authorization so that Uber may seek those records on its own.

## II.    Plaintiff's Position:

Uber's letter attempts to transform an ordinary discovery dispute into a fishing expedition to pierce the protections afforded to a consulting expert under Rule 26(b)(4)(D). The record does not support that result. Plaintiff has undertaken extensive efforts to identify, recover, and produce responsive ESI, supplementing her production as additional information became available, exactly as the Federal Rules contemplate. Plaintiff has now produced over 7,000 pages—over 400 text messages, emails, and social-media communications spanning years before and after she was raped by her Uber driver on June 9, 2020. Uber nevertheless seeks discovery into Plaintiff's litigation preparation—not because it has established the "exceptional circumstances" required by Rule 26(b)(4)(D), but because it baselessly questions the results of Plaintiff's forensic collection efforts. The Federal Rules do not permit such discovery.Further, Uber's phone-log demand should also be denied: Plaintiff produced the only log she has, Ex. 3 (DOE QLF 001136), and the log shows only the date, time, and number of a communication, not its content, so it cannot identify any "missing" responsive message. In light of Plaintiff's extensive efforts to identify and produce responsive ESI, this request should not be granted.

### A. Uber Has Not Demonstrated the Exceptional Circumstances Necessary to Discover Plaintiff's Consulting Expert.

Rule 26(b)(4)(D) establishes a strong presumption against discovery from non-testifying consulting experts. Such discovery is permitted only upon a showing of exceptional circumstances, and the party seeking discovery bears a heavy burden. *See, e.g., U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010); *In re Pizza Time Theatre Securities Litig.*, 113 F.R.D. 94, 97 (N.D. Cal. 1986). Uber has not come close to making that showing.

The premise underlying Uber's request—that Plaintiff failed to produce text messages from 2021 through 2024—is false. Plaintiff has now produced 473 text message strings spanning 2021 through 2024 after locating an Apple iCloud backup through technology which was previously not accessible.[2] Plaintiff promptly utilized the newly available technology to access a previously inaccessible iCloud backup, collect it, and extract additional responsive messages for production by July 28. Plaintiff also produced thousands of additional pages of emails, social-media communications, and messaging-app data recovered from her phone, laptop, and online accounts.

That supplementation is evidence of compliance with the Federal Rules—not evidence of misconduct. Plaintiff's supplementation reflected the continuing nature of the forensic collection process rather than any change in Plaintiff's factual representations. Indeed, Plaintiff promptly supplemented her production once additional extraction technology became available and Plaintiff's forensic consultant was able to identify and access an Apple iCloud backup that had not previously been accessible. This sequence demonstrates the ordinary, iterative nature of ESI discovery—not concealment or inconsistent factual representations. Uber's attempt to manufacture a crisis of credibility out of ordinary litigation nuance speaks more to its litigation strategy than to any actual deficiency. That Uber claims it "can no longer take Plaintiff at her word" is unfounded, unsupported by the record, and suggests that Uber is more interested in attacking Plaintiff personally than addressing the merits of her claims. Courts have consistently held that credibility determinations are for the trier of fact, not opposing counsel. Minor inconsistencies between a client's testimony and counsel's representations regarding technical matters, which are common in any complex litigation, do not constitute a breakdown in attorney-client communication. Uber offers no legal authority or evidence to support this remarkable suggestion, and the Court should disregard it accordingly.

Courts recognize that discovery requires reasonable—not perfect—collection efforts. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013)("[t]he Federal Rules do not demand perfection."). Plaintiff has far exceeded that standard. She retained data-recovery specialists, forensically examined her available devices and accounts, manually searched additional sources, employed updated extraction technology as it became available to access data from an iCloud backup outside of her physical phone and laptop, and continuously supplemented her production as new information was recovered. Uber identifies no authority holding that these efforts somehow justify compelling discovery from Plaintiff's consulting expert.[3]

Nor has Plaintiff placed her consulting expert's opinions "at issue." Plaintiff has not offered her consulting expert's opinions to establish liability or damages. The fact that Plaintiff informed Uber of the results of her collection efforts and supplemented her production accordingly does not waive Rule 26(b)(4)(D)'s protection as Uber erroneously suggests.

**B. Uber's Request Is Impermissible Discovery on Discovery.**

Uber's request also constitutes improper "discovery on discovery." Courts recognize that such discovery "should be the exception, not the norm." *LKQ Corp. v. Kia Motors Am., Inc.*, 345

---

[2]    Defendants' assertion that there are no text messages from 2022, 2023, and 2024 is wildly incorrect. *See, e.g.,* DOE QLF006060, DOE QLF007780, DOE QLF005678, DOE QLF005423.

[3]    Any alleged gap in Plaintiff's text-message production has little relevance to Uber's request. This case centers on Uber's conduct, policies, and safety practices—not the driver's culpability. The driver was convicted and is serving an eleven-year sentence after his conviction was affirmed on appeal. The alleged absence of post-assault text messages therefore does not constitute the exceptional circumstances required to overcome Rule 26(b)(4)(D)'s protection for consulting experts.

F.R.D. 152, 162 (N.D. Ill. 2023). Before obtaining discovery into an opposing party's collection efforts, the moving party must present concrete evidence demonstrating a material deficiency in the opposing party's reasonable inquiry. Mere speculation that additional documents may exist is insufficient. *Id*.

Uber has not met that threshold. Instead, Uber relies primarily on what it characterizes as "shifting representations" concerning Plaintiff's collection efforts. But the alleged inconsistencies disappear when viewed in context. As additional forensic tools became available and additional repositories were examined, Plaintiff supplemented her production and kept Uber informed of those developments.[4] That is exactly how ESI discovery is intended to function. It is improper to infer bad faith from ordinary supplementation of discovery responses. *See, e.g., Reinsdorf*, 296 F.R.D. at 615.

Moreover, Uber never explains why less intrusive discovery mechanisms would be inadequate. Uber has deposed Plaintiff at length regarding her June 2020 phone, her February 2021 phone, and her March 2024 phone, upgrades, backups, and preservation efforts. Ex. 2 (Pl's. Dep.) at 265:12-270:20; 277:20-278:17. Uber remains free to argue at the appropriate time that certain evidence is unavailable or incomplete. What Uber cannot do is use those concerns as a vehicle to invade the protections afforded to consulting experts under Rule 26(b)(4)(D).

### C. Uber's Preservation Arguments Do Not Justify Piercing Rule 26(b)(4)(D).

Much of Uber's argument focuses on when Plaintiff's duty to preserve allegedly arose. That argument misses the mark. Even assuming that Uber could establish an earlier preservation obligation from before Plaintiff first retained counsel (which, again, was over three years after she was raped by her Uber driver), that would not create the "exceptional circumstances" required to discover a consulting expert.[5] Those preservation events occurred between 2020 and 2023, years before Plaintiff's consultant was retained. The consultant therefore has no percipient knowledge of the devices, settings, or transfers at issue. The only witness with firsthand knowledge is Plaintiff herself, whom Uber has already deposed at length on precisely these topics. Ex. 2 (Pl's. Dep.) at 265:12-272:20. Courts recognize that exceptional circumstances generally arise only where a consulting expert's work forms the basis of a testifying expert's opinions or where equivalent information truly cannot be obtained elsewhere. *See U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 228 (D.D.C. 2012). Neither circumstance exists here.[6]

---

[4]     Plaintiff also attempted to address any ESI issues cooperatively before Uber sought Court intervention. On July 6, 2026, Plaintiff proposed that the parties meet and confer regarding this District's ESI Checklist to discuss Plaintiff's collection efforts and any remaining questions. Ex. 1 (7/6/26 Velez Email) at 28.  Rather than pursue that process, Uber elected to immediately seek relief from the Court.

[5]     Uber's reliance on *Crema* is misplaced. There, the court addressed Rule 37(e) sanctions after law enforcement failed to preserve body-camera footage that was material to a pending criminal prosecution in violation of the Department's own policies. *See Crema*, 2023 WL 6262556, at *4-*5. Likewise, *Spencer* involved a defendant who disposed of his cellphone after receiving notice of a lawsuit and failed to preserve its data. *See Spencer*, 2017 WL 11527978, at *12-*13. Neither case involved discovery from a non-testifying consulting expert under Rule 26(b)(4)(D).

[6]     Even if the Court concludes that some additional factual disclosure concerning Plaintiff's collection efforts is appropriate, compelling the deposition of Plaintiff's consulting expert is neither necessary nor proportional. If so ordered, Plaintiff is prepared to provide a declaration describing the non-privileged factual steps undertaken to search for and recover responsive text messages.

## **FILER'S ATTESTATION**

I, Michael Vives, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Michael Vives*
Michael Vives

1