[SUBMITTING COUNSEL BELOW]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694-CRB | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S PRODUCTION OF SOCIAL MEDIA MATERIALS**<br><br>Judge:        Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

|  |  |
|---|---|
| JANE DOE QLF 001,<br><br>         Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>         Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge:        Hon. Charles R. Breyer<br><br>Courtroom:   501 |

1

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff Jane Doe QLF 001's production of social media materials.

Respectfully submitted,

DATED: August 3, 2026

By: /s/ *Roopal P. Luhana*
 ROOPAL P. LUHANA (*Pro Hac Vice*)
 **CHAFFIN LUHANA LLP**
 600 Third Avenue, Fl. 12
 New York, NY 10016
 Telephone: (888) 480-1123
 Email: luhana@chaffinluhana.com

 SARAH R. LONDON (SBN 267083)
 **GIRARD SHARP LLP**
 601 California St., Suite 1400
 San Francisco, CA 94108
 Telephone: (415) 981-4800
 Email: slondon@girardsharp.com

 RACHEL B. ABRAMS (SBN 209316)
 **PEIFFER WOLF CARR KANE**
 **CONWAY & WISE, LLP**
 555 Montgomery Street, Suite 820
 San Francisco, CA 94111
 Telephone: (415) 426-5641
 Email: rabrams@peifferwolf.com

 *Co-Lead Counsel for Plaintiffs*

By: */s/ Michael Vives*
 MICHAEL VIVES (Admitted *pro hac vice* in N.D. Cal. and W.D. Tex.)
 **KIRKLAND & ELLIS LLP**
 601 Lexington Ave.,
 New York, NY 10022
 Telephone: (212) 446-4800
 michael.vives@kirkland.com

 LAURA VARTAIN HORN (SBN 258485)
 **KIRKLAND & ELLIS LLP**
 555 California St., 27th Floor
 San Francisco, CA 94104
 Telephone: (415) 439-1400
 laura.vartain@kirkland.com

 KIM BUENO (Admitted *pro hac vice* in N.D. Cal.)
 TX SBN 24065345
 **KIRKLAND & ELLIS LLP**
 401 W. 4th Street
 Austin, TX  78701
 Telephone: (512) 678-9050
 kim.bueno@kirkland.com

 ALLISON M. BROWN (Admitted *pro hac vice* in N.D. Cal.)
 **KIRKLAND & ELLIS LLP**
 2005 Market Street, Ste. 1000
 Philadelphia, PA, 19103
 Telephone: (215) 268-5000
 alli.brown@kirkland.com

 JESSICA DAVIDSON (Admitted *pro hac vice* in N.D. Cal. and W.D. Tex.)
 **KIRKLAND & ELLIS LLP**
 601 Lexington Ave.,
 New York, NY 10022
 Telephone: (212) 446-4800
 jessica.davidson@kirkland.com

 *Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**I.    Uber's Position:**

Plaintiff's discovery mantra in the *QLF 001* case can best be described as "you must hurry, but we can dawdle." Plaintiff has demanded very tight turnarounds from Uber on discovery, pointing to the imminent trial date in this case, while at the same time, dragging her feet on producing highly relevant documents, including communications and social media materials. Plaintiff has also changed her story so many times (both before the Court and with Uber) that it is impossible to know what is true and what is not.

Plaintiff suggests that she should be given a pass for her discovery misconduct and obfuscation because she is an individual suing a major company. But Plaintiff has engaged very sophisticated and successful Plaintiff's counsel who have the resources to litigate cases against Uber (and other defendants) in jurisdictions across the country. Plaintiff's counsel should not be allowed to hide behind their client as a way of excusing their discovery failings. Nor does the fact that Plaintiff has alleged sexual assault give her counsel license to make misrepresentations to the Court. There is no time in the pre-trial schedule for filibustering. Accordingly, Plaintiff should be compelled to: (1) remedy the deficiencies in her social media productions discussed below; (2) complete her social media productions by August 7; and (3) certify their completeness on that date as well.

As the Court is already aware, Plaintiff has forced Uber to engage in a drawn-out process to obtain her responsive social media materials. On July 10, after repeatedly waffling about what documents she would agree to provide from her social media accounts, Plaintiff finally produced for the first time a set of posts and messages from her accounts. This production was not only late (indeed, some of the documents indicate that Plaintiff downloaded them as early as April 2025); it was also woefully inadequate. Plaintiff argues that her production was voluminous,[1] but she does not deny the following serious deficiencies:

- ***Missing names and recipients in messages.*** Numerous messages do not identify the other participants, either on the face of the document or in associated metadata. *E.g.*, DOE QLF 002375 (Ex. 1) (omitting name of person with whom Plaintiff is messaging). Plaintiff has also refused to informally identify the individuals in these messages, instead repeatedly testifying at her deposition that she could not recall the identities of people with whom she exchanged various messages. *See* Ex. 2, Pl. Dep. 107:20-24, 157:12-13, 205:8-10. That makes it all the more imperative for Plaintiff to produce versions of these messages that identify the other participants in each conversation, particularly because Plaintiff apparently failed to preserve messages from the phone she had at the time of the alleged incident.
- ***Potentially Altered Messages.*** Certain messages were produced in inconsistent formats, including enlarged, reduced, rotated, or cropped images. *E.g.*, DOE QLF 002207 (Ex. 3) (compilation of various messages sent by Plaintiff, omitting conversational context). These formats make it difficult to determine whether the production contains complete conversation threads. Uber is entitled to complete,

---

[1] Plaintiff points to the fact that she has produced "7,000 pages of discovery" as evidence that she has taken discovery seriously. But that statistic is highly misleading because nearly everything Plaintiff has produced is unrelated to the alleged incident or her mental health (e.g., countless pages of emails about concert venues, blank pages, TikToks about bingo and cats, etc.), strongly suggesting that she padded her productions on issues unrelated to the alleged incident precisely to make this rhetorical point. Plaintiff notes that Uber asked for documents related to hobbies, but that was just one of many requests, and Plaintiff produced almost no documents in response to several others, including communications about the subject incident.

legible versions of each conversation. Notably, when shown Exhibit 3 during her deposition, Plaintiff acknowledged that these messages appeared "spliced." Pl. Dep. 230:15. Plaintiff should be ordered to produce the full content of responsive conversations without "splicing" messages together as she or her attorneys see fit.

- ***Failure to Produce Embedded Images.*** Plaintiff has produced many messages that indicate the presence of embedded images, but the images are not visible and, even if they were produced elsewhere, Plaintiff has not provided a way to link the images to the relevant messages. *E.g.*, DOE QLF 002298 (Ex. 4) (omitting embedded image). Plaintiff should produce all posts and messages in the format in which they actually appear.

- ***Failure to Produce Posts Plaintiff is Replying To.*** In several instances, Plaintiff has produced her reply to someone's post without producing the underlying post. At least two such replies reference Plaintiff's alleged assault, making it crucial that Uber have the full context of what Plaintiff is reacting to. *See* DOE QLF 007120 (Ex. 5) (Plaintiff replying to an unproduced video regarding rideshare issues and referencing the alleged assault); DOE QLF 007121 (Ex. 6) (Plaintiff replying to an unproduced post by C.S. and referencing alleged assault). Plaintiff should produce the underlying posts.

Despite these massive holes in Plaintiff's production, Plaintiff argues in her response below that the relief Uber seeks is moot. Plaintiff's argument is disingenuous. Over the last several weeks, Uber has repeatedly given Plaintiff's counsel the opportunity to remedy the deficiencies outlined above, but Plaintiff made no efforts to do so. Instead, Plaintiff told Uber and the Court in the July 20 Joint Status Report ("JSR") that she had completed her production. ECF No. 6839 at 6-9. This led the Court to observe at the subsequent case management conference that it was "clear" that the parties "haven't worked out a resolution to [this] issue." In the same JSR, Plaintiff also stated to Uber and the Court that "[e]mbedded images have been produced ***to the extent available***, as well as identifying information of counterparties to communications. Plaintiff cannot, however, control when social media platforms remove certain information, such as when a person's account is deleted or how parties are identified." *Id.* In other words, Plaintiff represented that she had done all she could to address the problems with her production.

When Uber sent Plaintiff its PTO8 letter briefing on this issue, Plaintiff's counsel suddenly changed their tune, insisting on yet another meet and confer. At that conference, Plaintiff's counsel stated that they would agree to investigate whether it was technically feasible to address Uber's concerns. Of course, this contradicted Plaintiff's counsel's prior representation both to Uber and the Court that she ***had*** investigated the deficiencies and determined they were unfixable. *E.g.*, ECF No. 6839 at 8-9.

Despite significant concerns that Plaintiff and her counsel are simply engaged in a pattern of delay,[2] Uber proposed one final compromise to avoid judicial involvement: (1) that Plaintiff agree, where feasible, to remedy the deficiencies in her production; and (2) that Plaintiff provide a certification from a properly credentialed e-discovery expert that it is not technically possible to remedy the remaining issues identified by Uber. Uber also reserved its right to move for sanctions if necessary and appropriate. Plaintiff objects to Uber's request that she certify that her productions are complete, but her objections are without merit. Plaintiff has dragged her feet on producing social media for weeks, and the substantial completion deadline for fact discovery is now just 18

---

[2] Plaintiff has taken similarly conflicting positions with respect to text messages. Only after Uber raised the issue with the Court did Plaintiff produce a limited (also deficient) set of such messages from an iCloud backup that her supposed expert previously said did not exist.

days away. Plaintiff's delay has already prejudiced Uber in various ways, including by requiring Uber to depose her without a complete set of her social media materials.

Plaintiff also objects that certification would require her personal time and effort, and that certification would prevent her from supplementing her productions if the parties later agree that additional topics are relevant. None of this is true. Again, Plaintiff is represented by highly experienced and well-resourced counsel; it would be very easy—and require little or no effort on the part of Plaintiff personally—for her counsel to have a vendor access Plaintiff's social media accounts and run search terms and look for responsive materials. Moreover, Uber is only asking Plaintiff to certify the completeness of her productions as to the topics that the parties have already agreed are responsive; if additional topics arise in the future, Plaintiff would, of course, have an opportunity to supplement her productions. In short, Plaintiff has not offered any legitimate objections to certifying the completeness of her productions; rather, this is just another attempt by her counsel to prejudice Uber through continued delay.

For all of these reasons, the Court should compel Plaintiff to: (1) remedy the serious deficiencies in her social media productions discussed above; (2) complete her social media productions by August 7; and (3) certify their completeness.

## II.    Plaintiff's Position

Plaintiff is a 29-year-old rape survivor navigating the personal and logistical demands of federal litigation against one of the largest publicly traded technology companies in the world. Since the parties reached agreement on the scope of social media production on July 2, 2026, she has produced over 7,000 pages of discovery including deeply personal communications, such as texts, emails, and social media records spanning years of her life.  She has made these productions on an expedited basis and without a single relevance redaction. Uber's response to that record  has been to manufacture a host of crises by painting a sensationalized picture of delay, deficiency, and bad faith that is flatly contradicted by the timeline of events. It does so by levying *ad hominem* attacks using words like "misconduct" and "obfuscation."  More troubling, when Plaintiff stated that she was going to address the deficiencies identified in this brief and offered to stipulate to the terms in writing (rendering this motion moot before it was filed), Uber responded by moving the target entirely, introducing a host of unprecedented demands that appeared nowhere in its draft brief, were never a part of the relief it sought, and had never been raised at any point in this case, or the larger litigation.

The Court should deny this motion for three reasons. First, it is moot.  Plaintiff has agreed to complete a supplemental social media production by Uber's own requested deadline of August 7. Second, Uber's account of discovery in this case is starkly inaccurate and unsupported by the record. Third, the certification Uber seeks is not a discovery tool; it is a call for baseless and meritless exercise , and Uber's own eleventh-hour proposed stipulation proves it.

**Uber's Motion Is Moot.** Before the Court reaches the substance of Uber's complaints, it should understand one threshold fact: Plaintiff agreed to give Uber exactly what its brief requested. Uber's response (as documented below) calls into serious question whether Uber has been conferring with Plaintiff in good faith.

Uber transmitted a draft letter brief regarding Plaintiff's social media production on July 30, 2026 and demanded that Plaintiff provide her response by July 31 so that the parties could file the brief with the Court. Ex. 7 (7/30/26 emails) at 9. Uber's brief requested that Plaintiff address identified deficiencies in her social media production and certify the production by August 7, 2026. Because the Parties had not yet conferred on this point as required by PTO 8, Plaintiff requested that prior to filing any such dispute, the Parties engage in a meet-and-confer on these social media

issues.[3] Ex. 7 (7/30/26 emails) at 10. While Uber initially balked at the request to meet-and-confer, Plaintiff insisted, and the Parties did eventually convene on July 31.  During that conferral, Plaintiff informed Uber that she was already working to address the deficiencies raised in Uber's PTO 8 brief and was prepared to complete a supplemental social media production by Uber's own requested deadline of August 7. Plaintiff further offered to stipulate to the terms of that supplemental production in lieu of burdening the Court with this filing.

Uber responded by sending a proposed stipulation which bore little resemblance to anything related to the relief sought in Uber's draft PTO 8 brief, or the discussions had during the conferral. Ex. 8 (7/31 emails) at 12. In that document Uber introduced, for the first time, a host of burdensome demands that went far beyond anything discussed during the conferral, including, (1) extensive metadata and ESI requirements not contemplated by the Parties' ESI Order for plaintiff-specific productions, and never imposed on any other bellwether plaintiff in this litigation; (2) a demand that Plaintiff pre-stipulate to Uber's right to seek sanctions; and (3) a demand for declarations from certified experts. None of these requirements appeared anywhere in Uber's PTO 8 draft brief. [4]

In short, Uber's ever changing shifting of the goalposts made the meet and confer process meaningless.  Nevertheless, Plaintiff responded with her own proposed stipulation that addressed the deficiencies that were within Plaintiff's control to address, and allowed this particular PTO 8 briefing to be stayed until after the production on August 7. Ex. 9 (Plaintiff's Proposed Stipulation). Uber rejected this proposal and insisted on proceeding with this filing. Ex. 11 (7/31/26 emails) at 1.

Plaintiff remains committed to making a supplemental social media production and will do so by Uber's own requested deadline of August 7. This motion is therefore moot. The PTO 8 process is designed to give the responding party a meaningful opportunity to investigate, respond, and potentially resolve a dispute before burdening the Court. Uber's attempt to circumvent that process (by  including unprecedented demands that are burdensome and unnecessary through a proposed stipulation at the eleventh hour) is precisely the kind of conduct the PTO 8 process is meant to avoid. The Court should not reward it.

**Uber's Account of Discovery in This Case is Starkly Inaccurate.** Uber's hyperbolic portrayal of Plaintiff's social media production as dilatory and deficient is not just inaccurate, it is contradicted by the factual record at every turn.

When this case was set for trial in June, the parties had not yet reached agreement on the scope of the social media documents at issue.  Indeed, Plaintiff had raised legitimate objections to Uber's requests, and those disputes remained unresolved.  On June 29, Uber proposed that Plaintiff produce various categories of social media documents and communications. Ex. 10 (emails regarding social media discovery) at 6-7. On July 2, the parties reached agreement on eleven social media categories to produce in accordance with the time period established by the Court's Order regarding social media productions. *See* ECF No. 3209; Ex. 10 (emails regarding social media discovery) at 2-3. Between July 2 and July 10, Plaintiff informed Uber that her social media records were voluminous, consisting of roughly 30 gigabytes of data, and would be produced on a rolling basis. Plaintiff produced a first tranche of social media documents on July 10, followed by a second tranche of social media documents on July 20.

---

[3] Defendants initially raised this issue in passing at the July 23 CMC and the Court ordered that the parties submit their PTO 8 letter by July 31.

[4] Because these items represent new requests, which have not been previously discussed during any conferral process, they are not ripe as part of this PTO 8 brief.

The timeline speaks for itself. Eight days after the parties reached agreement on the scope of production, Plaintiff delivered over 1,000 pages of social media documents. She has since produced over 7,000 pages in total, including text messages, emails, and private social media communications spanning years before and after she was raped by her Uber driver on June 9, 2020, dating back to as early as 2018. While Defendants now argue much of this production is "padded" because it includes "TikToks about bingo and cats," this is precisely what the Defendants demanded Plaintiff produce.  Ex. 10 at 2 (emails re: social media discovery requesting "social media that depict or make reference to Plaintiff's participation in hobbies."). She has made no relevance redactions, even where productions contained plainly irrelevant and highly personal communications interspersed with responsive ones. Plaintiff has been an open book. Uber's attempt to recast that record as a story of delay and deficiency is a manufactured sideshow designed to shift focus away from the merits of this case, a pattern that has become all too familiar in the lead-up to trial.

**The Court Should Not Order Plaintiff to Certify the Completeness of Her Social Media Production.** Plaintiff is a regular individual, often working up to 60 hours a week as a bartender. She is not a publicly traded technology corporation with legal and IT departments. Every step of her social media production, such as identifying responsive accounts, downloading records, reviewing messages that contain intimate details of her personal life, and coordinating with counsel to organize and produce those materials, requires her direct and personal involvement. There is a substantial and personal burden that the collection and review of social media impose on Plaintiff as a private individual. It is a mentally draining exercise.  Consequently, it is against this backdrop that Uber's demand for a certificate of substantial completion must be viewed for what it is: a sanctions trap.

Discovery from a private individual is, by its nature, an iterative and evolving process. This is especially true for discovery from social media sources, which are largely not within Plaintiff's control. Platforms periodically update their data export functions. Additional accounts or posts may be recalled during review of other materials. Archived content may surface through continued collection efforts. As Uber conceded in the meet and confer, Uber has no knowledge of what it is like to produce from social media sources because it has not done so in this litigation.  While Plaintiff believes she has produced all relevant social media (and is endeavoring to fix the formatting issues identified by Uber in this letter), something may become relevant due to Uber's evolving legal strategy. Plaintiff is not privy to all of Uber's potential defenses to which she may need to respond. A blanket certification of completeness at a fixed point in time does not make Plaintiff's production more complete.  Rather, it only serves to create a litigation weapon that Uber can wield the moment any additional responsive material comes to light, however innocently. Uber's intentions are plainly on display in the fine print of its eleventh-hour proposed stipulation, which included a pre-negotiated right to file a sanctions motion against Plaintiff the moment any new material surfaces. Ex. 9. Plaintiff should not be required to sign a certification that exposes her to future scrutiny every time a post, message, or account surfaces through the ordinary, good-faith processes of continued investigation and review. Federal Rule of Civil Procedure 26(e) already obligates parties to supplement their disclosures and productions when they learn that a prior response is incomplete or incorrect.  Plaintiff takes that obligation seriously. No additional certification is warranted. Imposing one would serve only to set the stage for future motion practice and divert the Parties' efforts away from the key issues on the merits of this case.

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

/s/ Michael Vives
Michael Vives