**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*, No. 1:26-cv-01694-CRB | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING DEFENDANTS' DEPOSITION LIMITS FOR QLF 001**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 001,<br><br>          Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>          Defendants. | Case No.: 26-cv-01694-CRB<br><br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  501 |

The Parties respectfully submit this joint letter regarding Plaintiff's motion to limit Uber to the default ten-deposition limit imposed by the Fed. R. Civ. P. 30(a)(2)(A)(i).

Respectfully submitted,

DATED: August 3, 2026

By: /s/ _Roopal Luhana_

    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

  *Co-Lead Counsel for Plaintiffs*

By: /s/ _Michael Vives_

    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    555 California St., 27th Floor
    San Francisco, CA 94104
    Telephone: (415) 439-1400
    laura.vartain@kirkland.com

    ALLISON M. BROWN (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    2005 Market Street, Ste. 1000
    Philadelphia, PA 19103
    Telephone: (215) 268-5000
    alli.brown@kirkland.com

    JESSICA DAVIDSON (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    601 Lexington Ave.,
    New York, NY 10022
    Telephone: (212) 446-4800
    jessica.davidson@kirkland.com

  *Counsel for Defendants Uber Technologies, Inc.,*
  *Rasier, LLC, and Rasier-CA, LLC*

2

## I.    Plaintiff's Position:

Uber should be held to the presumptive ten-deposition limit for case-specific depositions, subject to an exception for later disclosed trial witnesses. The limit ensures that pre-trial depositions will be tailored to the needs of the fast-approaching trial, as opposed to straining the time and resources of all involved. Such limit is particularly warranted here, where Uber has deliberately allocated most of its limited depositions to peripheral witnesses while postponing depositions of others who are central to the case. The tactic is clear: Uber seeks to exhaust its ten depositions under Fed. R. Civ. P. 30 and then argue that additional depositions are required to account for principal witnesses. This is pure gamesmanship. Uber's need for additional depositions is entirely self-inflicted and should not justify relief from the presumptive limits.

**Background.** Starting July 8, Uber noticed 22 third-party depositions—a staggering number that placed a calculated strain on Plaintiff's time and resources. Uber justified this overreach by arguing (incorrectly) that it is entitled to depose *any* individual named on an initial disclosure without regard to the ten-deposition limit under Rule 30. Plaintiff's disclosures were designed to provide Uber maximum information given the short amount of time before trial (disclosing Plaintiff's family members and friends, prosecutors, defense attorneys, and the judge involved in the criminal trial, as well as individual riders that had previously made complaints to Uber regarding the subject driver). The scope of Plaintiff's disclosures was not, as Uber contends, an attempt to "muddy the waters," but rather to provide full transparency.[1] Such transparency does not create a free-for-all for depositions. Uber also criticizes the disclosures for "cursory descriptions." In truth, Plaintiff provided clear and concise descriptions, e.g., "friends with Plaintiff at the time of the incident; at bar before Uber pickup." This is more than sufficient.[2]

To streamline depositions, and at Uber's request, on July 15, Plaintiff identified a narrower list of 16 individuals whom Plaintiff is most likely to call at trial. Thus, Plaintiff provided Uber with the full landscape of potential discovery through initial disclosures, as well as those most likely to be called at trial; Uber can then select witnesses for trial depositions as it sees fit within the bounds of the Federal Rules. And, to account for any possible late-disclosed witnesses, Plaintiff proposed a stipulation wherein the Parties would agree to depositions for any witness that was not previously disclosed in Plaintiff's list of 16, but who was subsequently added to the "most likely to call at trial" list, provided said witness had not been previously deposed.

Uber rejected this proposal, instead scheduling depositions for ten individuals (excluding Plaintiff), six of whom are outside Plaintiff's most likely to call at trial list, while at the same time signaling its intent to pursue depositions of all other individuals, and to depose anyone listed on a trial witness list. Indeed, Uber has chosen to depose witnesses related to the days surrounding the assault. Two of these individuals were with Plaintiff the night before the assault but left *before* an Uber ride was called for Plaintiff. Two others were friends that communicated with Plaintiff before and/or after the assault. Another was simply friends with Plaintiff at the time of her assault. The apparent purpose behind these depositions is to elicit testimony as to what happened to Plaintiff the morning of June 9, 2020. However, the answer to this question is not in dispute: on the morning of June 9, 2020, Plaintiff was raped by her Uber driver, and he was convicted and sentenced to

---

[1] In bellwether B.L., Uber accused plaintiff of insufficient disclosures, a distraction that Plaintiff seeks to avoid in this case.

[2] Plaintiff provided all contact information known for each individual. For those whose last names are unknown, information was provided to help identify them, e.g., one individual was an Uber rider who made a complaint to Uber, the other a Victim Assistance Advocate at Fort Worth PD.

eleven years in prison for this crime. As the Court noted, this is a case of negligence and product liability—not the driver's culpability, which has already been thoroughly investigated and decided by a criminal jury. *See* Ex. A, 6/16/26 Case Management Conference Tr. at 24:17-19 ("A fair amount of investigation has been conducted with respect to what happened that night"); 18:2-13 ("It is based upon negligence and based upon a…products liability issue…it's nice and clean"). These witnesses are not central to this trial and instead reflect Uber's strategy to impermissibly circumvent Rule 30's deposition limit. It cannot seek relief from limits that it intentionally squandered in the first instance.

**Argument.** Under the Federal Rules, parties are limited to ten depositions per side. *See* Fed. R. Civ. P. 30(a)(2)(A)(i); *Cisco Sys. Inc. v. Arista Networks, Inc.*, 2016 WL 632000, at *2 (N.D. Cal. Feb. 17, 2016). A party seeking to go beyond this presumptive limit must seek leave of Court. *Id.* This requires "a *particularized showing* of the need for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) (emphasis added). Notably, "a party must show not only that the additional depositions are warranted, but also that the depositions the party has already taken were warranted." *Galajian v. Beard*, 2016 WL 5373116, at *2 (W.D. Wash. Sep. 26, 2016); *see also Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482 (N.D. Tex. 2001).

The standard cannot be met where, as here, a party intentionally used depositions on marginal witnesses, while delaying depositions on those it knows to be central to the case. Courts faced with similar scenarios have rejected this type of gamesmanship as inconsistent with Rule 26's proportionality requirement, emphasizing that parties should not be rewarded for taking superfluous depositions. For example, in *Barrow,* the court affirmed the denial of additional depositions where the party had "indirectly circumvent[ed] the cap on depositions by exhausting the maximum allotted number to take those that she could not justify under the Rule 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that she could substantiate." 202 F.R.D. at 482-83. Similarly, in *Galajian*, the Court recognized that "[a]llowing additional depositions without analyzing the need for the first 10 depositions would reward a party for taking superfluous depositions early in the course of discovery." 2016 WL 5373116 at *2, n.3.

Uber's current approach raises the same concern. Rather than prioritizing witnesses most likely to testify at trial, Uber elected to depose six witnesses outside Plaintiff's principal trial witness list. Having made that strategic choice, Uber should not be permitted to rely on any resulting inability to depose witnesses as a basis for exceeding the presumptive limit. Any such prejudice would be the product of Uber's own litigation decisions.

To the extent Uber argues it is entitled to depose every witness on Plaintiff's initial disclosures, courts have rejected this as sufficient in and of itself to justify additional depositions. *See Epicentrx, Inc. v. Carter*, 2022 WL 2196877, at *2 (S.D. Cal. Jan. 6, 2022) ("number of witnesses identified in Defendant's initial disclosure is not, by itself, sufficient grounds to find that the additional requested depositions comport with" Rule 26); *Thykkuttathil v. Keese*, 294 F.R.D. 597, 600 (W.D. Wash. Sept. 13, 2013) (inability to depose all witnesses on a party's witness list is insufficient, without more, to justify additional depositions); *Murray v. Southern Route Maritime, S.A.*, 2014 WL 2154259, at *2, n.2 (W.D. Wash. May 22, 2014) ("extensive" and "indiscriminate" initial disclosures insufficient, without particularized showing, to justify additional depositions where defendant had basic information regarding witnesses' connection to the case and "defendants made knowing choices regarding their deposition strategy with full knowledge of" Rule 30's limitations). The same is true of witnesses on Plaintiff's narrowed trial witness list. *See*

*Murray*, 2014 WL 2154259 at *2 ("[i]f such a generalized need-to-avoid-surprise [at trial] rationale were sufficient, the limitation on the number of depositions imposed by the rules would be essentially meaningless"). Nonetheless, Plaintiff's proposed stipulation mitigates any concern of unfair surprise, allowing for depositions should a party augment its trial witness list with an individual not previously disclosed as a potential trial witness.

Uber seeks to distract from the core dispute by raising issues regarding trial stipulations and document subpoenas. Plaintiff has agreed that certain medical records are authentic without the need for a deposition. Regarding the third-party subpoena, Plaintiff has informed third parties of her objections to subpoenas so that documents are not produced until the parties have resolved the objections—standard practice. Regardless, those issues are not relevant to the question presented by this brief.

Uber's reliance on previous Court orders is misplaced. In ECF 2754, the Court rejected a 4-deposition (and 16-hour) cap on third-party depositions. The Court said nothing about the 10-deposition limit imposed by Rule 30. And in the *B.L.* order, Plaintiff did not object to additional depositions, a fact specifically noted in the Court's order. ECF 5823 at 3. *B.L.* also required more depositions because, unlike here, the driver had not been criminally convicted of the assault.

Uber's briefing merely confirms its intent to exceed the Federal Rules but seeks to delay ruling by the Court so that it can first exhaust the limits, thereby presenting *a fait accompli* scenario. The Court should preclude Uber from exceeding the ten-deposition limit.

## II.     Uber's Position

Plaintiff's position is the culmination of a strategy to delay and obstruct Uber's trial preparation—first by flooding Uber with vague and shifting witness disclosures, then by impeding third-party discovery, and finally, by asking the Court to tie Uber's hands and impair its ability to prepare for trial. In fact, just a few days ago, Plaintiff's counsel instructed third-party witnesses not to comply with Uber's document subpoenas, even though production of documents would reduce the number of depositions Uber requires. The Court should deny Plaintiff's request to restrict Uber to 10 case-specific depositions because: (1) the dispute is unripe; (2) an arbitrary 10-deposition limit would be inconsistent with the Court's approach in other bellwether cases; and (3) any need for more than 10 depositions (if it arises) would be a problem of Plaintiff's own creation. Uber should not be prejudiced by Plaintiff's attempts to first inflate the number of witnesses and then obfuscate which individuals actually have knowledge of the most significant facts.

**Factual Background.** Plaintiff's Rule 26 initial disclosures, served on June 30, 2026, listed over *50* non-Uber-affiliated individuals "likely to have discoverable information," Ex. B, and despite Rule 26's directive to specify the "subjects" of each such individual's discoverable knowledge, Plaintiff included only cursory descriptions of these individuals. *Id.* Two individuals were identified only by first name. And although the disclosures named approximately 15 medical treaters with "knowledge of Plaintiff's medical care," that list was incomplete because additional treaters were identified only by the description "other Physicians, Nurses, and Staff" at various facilities. *Id.* Uber has also identified additional treaters who were never disclosed.

Uber promptly objected that Plaintiff's list did not provide Uber sufficient information to conduct the targeted discovery contemplated by the Court's expedited schedule. As Uber explained, Plaintiff's initial disclosures were not only enormously overinclusive but also, at the same time, so vague and lacking in specifics that Uber could not possibly use that list to identify which witnesses to prioritize for deposition. Particularly given the short time to trial, forcing Uber

to run around chasing information in Plaintiff's possession strongly suggests bad faith.

Plaintiff responded by producing, on July 15, 2026, a list of 16 "third-party fact witnesses that Plaintiff will most likely call to trial," "without prejudice to Plaintiff's ability to make changes to this list." Ex. C. This list is over-inclusive because, under Plaintiff's proposal, Uber would not even be able to depose all of these witnesses. It is also under-inclusive because it omits several friends whom Plaintiff saw, or communicated with, on the night of the alleged incident—strongly suggesting that Plaintiff seeks to mislead Uber about the identities of key witnesses. Plaintiff's list also omits multiple key treaters identified by Plaintiff. As a result, this list, and Plaintiff's proposed stipulation, are barely more helpful to Uber than the original list of 50-plus names.

Despite Plaintiff's repeated attempts to muddy the waters, Uber has expended significant efforts to streamline discovery and narrow down the list of witnesses Uber intends to depose. To date, Uber has taken only one case-specific deposition: that of Plaintiff herself. Uber is currently pursuing eight other depositions of key witnesses: Plaintiff's parents, sister, and five friends whom she saw or communicated with on the night of, or shortly after, the alleged incident. That would bring the total to nine, and most will be short Zoom depositions. Although more depositions may ultimately be necessary, Uber has also bent over backwards to *avoid* having to depose certain witnesses by, for example, offering not to depose certain treaters if Plaintiff would stipulate to the admissibility of their medical records.[3] To date, Plaintiff has rebuffed these offers, and, if she continues to do so, it will be necessary for Uber to depose these and other treaters.

Plaintiff has also engaged in other tactics that are interfering with Uber's efforts to narrow down whom it needs to depose. Last week, Plaintiff's counsel sent highly improper letters and subpoena objections to third-party witnesses and Plaintiff's medical providers,[4] ***instructing them not to produce relevant and responsive documents to Uber***, based on legally erroneous arguments—e.g., that "Defendants have failed to establish that this discovery from this non-party is warranted."[5] This alarming, potentially sanctionable conduct is certainly not "standard practice"; rather, it is part of a pattern that appears intended to undermine Uber's efforts to prepare for trial.

**Argument.** Plaintiff's request to preemptively limit Uber to 10 depositions is both unripe and meritless. *First*, the dispute is not ripe because Uber has not yet sought to exceed the default limit. As noted above, Uber has deposed only one witness to date (Plaintiff herself), and six more depositions are scheduled. While it is true that Uber served 23 subpoenas on non-party fact witnesses, it did so primarily to obtain documents from them before the August 21 substantial completion deadline, and Uber does not—as Plaintiff is well aware—intend to pursue depositions

---

[3] Plaintiff argues that Uber need not depose certain treaters because she has stipulated that their records are authentic. But authenticity is not the only reason for deposing treaters. Here, Plaintiff repeatedly questioned the veracity of her medical records in her deposition testimony, making it critical to obtain their testimony on the accuracy of their observations as well. *See, e.g.*, Ex D, Pl.'s July 22, 2026 Dep. 220:14-221:16. Uber has also already agreed not to depose certain witnesses, provided Plaintiff does not later indicate she will call these witnesses at trial.

[4] Plaintiff's interference with the production of her medical records by treaters is particularly egregious given Judge Breyer's statement at the June 16 CMC that Uber is entitled to that discovery: "I couldn't agree with you more. You need the medical records. You need to prepare your experts. I agree. You are absolutely right. Now, so we now talk to the Plaintiffs and say: When are you going to produce these records? How can you expedite it?" Ex A, 6/16/26 CMC Hr'g Tr. 27:17-23.

[5] *E.g.*, Ex. E (letter to Dr. S., Plaintiff's medical treater); Ex. F (letter to M.S, Plaintiff's friend).

of all these witnesses.[6] Although Uber may need to exceed 10 depositions, it does not yet have a concrete sense of how many witnesses it will seek to depose, particularly given Plaintiff's continued deficient discovery and obstructionist conduct. Rule 30 permits Uber to make a showing of why more than 10 depositions are necessary, and Uber will do so when the need arises. But the Court need not take up this dispute until such time as Uber seeks additional depositions.

*Second*, Plaintiff's proposal is inconsistent with this Court's approach in other bellwether cases. The Court declined a previous invitation by Plaintiffs to "set a specific limit" on the number of case-specific non-party depositions, reasoning that "Plaintiff's proposed uniform limit for the bellwether cases may unreasonably interfere with Uber's ability to seek the testimony from third-party witnesses that is relevant and may be proportional to the needs of the case." ECF No. 2754. In *B.L.*, Uber took 16 case-specific fact witness depositions, after which the Court permitted an additional eight, for a total of 24, before it was deselected for trial. Although these prior orders arose on different facts, the Court's message is clear: the number of depositions must be tailored to the specifics of each case. Here, the need for non-party depositions is greater than in *B.L.*, because Plaintiff first identified more than 50 fact witnesses, including 15-plus medical treaters, as having discoverable knowledge. Again, Uber has offered to enter into stipulations that would reduce the number of treater depositions, but Plaintiff has not agreed.

*Third*, to the extent Uber needs more than 10 depositions, that will largely be because Plaintiff has refused to narrow her witness list or produce requested documents, and has rebuffed Uber's efforts to streamline discovery. Plaintiff's suggestion that the present situation is the result of Uber's "gamesmanship" is backwards. As set forth above, it is Plaintiff who has hidden the ball and forced Uber to waste time and resources determining who the key witnesses are. While Plaintiff faults Uber for noticing depositions of a handful of individuals who are not on Plaintiff's "most likely to call" list, those individuals: (a) were with Plaintiff on the night of the alleged incident; (b) communicated with Plaintiff that night; or (c) communicated with Plaintiff later about the alleged incident. These are not "peripheral witnesses," as Plaintiff falsely represents to the Court, and their omission from the "most likely to call" list raises more questions than answers.

At bottom, Plaintiff appears to be suggesting that because the driver was convicted, Uber should not be allowed to put on a full defense of this case. Of course, that is not the law. Plaintiff has brought a lawsuit for money damages, and Uber has a Constitutional right to conduct fact discovery and defend itself in the manner it believes is warranted. Judge Breyer has recognized as much. *See* Ex. A, 6/16/26 CMC Hr'g Tr. at 18-19  (noting that trial length will differ depending on whether Uber decides to contest that the assault occurred); Ex. G, 6/30/26 CMC Hr'g Tr. at 11. While Plaintiff may wish to control the narrative by limiting Uber's access to relevant facts and selecting which witnesses Uber can and cannot depose, that is not how civil litigation works.

In short, Uber does not contend that it is "entitled to depose every witness on Plaintiff's initial disclosure." Rather, Uber has sought in good faith to narrow its list of potential deponents, while Plaintiff has repeatedly stymied, and in some cases actively and improperly obstructed, those efforts. Accordingly, any "gamesmanship" is on the part of Plaintiff, not Uber. For all of these reasons, the Court should deny Plaintiff's Motion.

---

[6] These witnesses include people with whom Plaintiff says she communicated near the time of the alleged incident. Because Plaintiff has discarded or lost the messages, Uber can only obtain them through third-party subpoenas. Uber has also had to seek social media documents through such subpoenas because of the deficiencies in Plaintiff's production.

**FILER'S ATTESTATION**

I, Ellyn Hurd, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


*/s/ Ellyn Hurd*
Ellyn Hurd