**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084-CRB |
| | **JOINT LETTER REGARDING DEFENDANTS' THIRD PARTY DOCUMENT SUBPOENAS FOR QLF 001** |
| This Document Relates to: | |
| *Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*, No. 1:26-cv-01694-CRB | Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 001, | Case No.: 26-CV-01694-CRB |
| Plaintiff, | |
| v. | Judge: Hon. Charles R. Breyer<br>Courtroom: 501 |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | |

The Parties respectfully submit this joint letter regarding Plaintiff's motion for a protective order concerning Uber's third party document subpoenas.

Respectfully submitted,

DATED: August 11, 2026

By: /s/  Sarah R. London
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

    *Co-Lead Counsel for Plaintiffs*

By: /s/  Michael Vives
    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    555 California St., 27th Floor
    San Francisco, CA 94104
    Telephone: (415) 439-1400
    laura.vartain@kirkland.com

    ALLISON M. BROWN (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    2005 Market Street, Ste. 1000
    Philadelphia, PA 19103
    Telephone: (215) 268-5000
    alli.brown@kirkland.com

    JESSICA DAVIDSON (*pro hac vice*)
    **KIRKLAND & ELLIS LLP**
    601 Lexington Ave.,
    New York, NY 10022
    Telephone: (212) 446-4800
    jessica.davidson@kirkland.com

    *Counsel for Defendants Uber Technologies, Inc.,*
    *Rasier, LLC, and Rasier-CA, LLC*

## I.     Plaintiff's Position:

The Court should issue a protective order narrowing Uber's document requests to non-parties to conform to the parties' agreements and the Court's orders regarding discoverable documents and communications. Uber's requests contain no limit as to relevant time period, are significantly overbroad, and encompass materials protected by the attorney work-product doctrine. Further, most of these non-parties are unrepresented and do not have any knowledge regarding the scope of discoverable documents and communications in this case.  Plaintiff tried to meet and confer with Uber on the scope of the requests, but Uber declined to do so, in violation of the local discovery rules and this Court's orders. Uber's attempt to cast Plaintiff's good-faith and reasonable efforts to complete discovery in the limited time remaining before trial as part of a grand scheme involving the New York Times is ridiculous.

**Background.** Starting July 8, Uber served document subpoenas on 21 third parties: 7 treaters, 11 of Plaintiff's friends, two individuals who made reports to Uber about the driver in this case, and H.M., the person who ordered the Uber ride for Plaintiff. Ex. A (subpoenas). On July 23, 2026, Plaintiff served objections. Ex. B (Plaintiff's objections to the four distinct set of subpoena). Plaintiff also notified Uber that same day that she intended to send letters to these non-parties attaching Plaintiff's objections to ensure that the documents covered by the objections were not produced until the parties or the Court resolved the disputed issues. When Uber objected to Plaintiff's proposed course of action, Plaintiff offered various alternatives to Uber and provided Uber with ample time and opportunity to negotiate before the letters went out and Plaintiff sought relief with the Court. Plaintiff first requested on July 24 that Uber send authority supporting its position that these letters advising third parties of Plaintiff's objections are improper for Plaintiff's consideration, and reiterated this request on a July 27 meet and confer. Plaintiff also offered to send a joint letter to the non-parties to alert them to Plaintiff's objections on July 24. Uber did not engage with this proposal and did not send any authority to support its position. On July 28, Plaintiff again attempted to negotiate with Uber on narrowing the scope of its subpoenas, requesting a meet and confer. Uber ignored this request. After all of Plaintiff's requests and offers to negotiate went ignored for a week, Plaintiff sent letters to the third parties attaching her objections and initiated this briefing. Ex. B (letters and objections).

Uber casts Plaintiff's letters as an attempt to prevent third parties from producing documents, prevent depositions from moving forward, and intimidate witnesses. The language of the letter and Plaintiff's conduct reveals that this is untrue. The letter makes clear that Plaintiff's objections are only to Uber's document requests, not to the deposition itself. *See* Ex. B at 1 ("Plaintiff has objected to the document requests in the subpoena as overbroad…"). Further, Plaintiff does not categorically ask the third parties to never produce responsive documents, only to "hold off on making an *early* production of documents" (emphasis added) to allow Plaintiff time to reach agreement with Uber or for the Court to rule on Plaintiff's objections. *See id.* Upon learning that one third party ▓▓▓▓▓) had concerns about sitting for a deposition, Plaintiff contacted the third party and confirmed that Plaintiff does not object to the deposition moving forward.[1] Uber misrepresents Dr. ▓▓▓▓ position as stated in Exhibit E.

**Argument.** Uber's subpoenas stretch far beyond relevant and proportional discovery. *See* ECF 695 at 3 ("The scope of discovery under Rule 45 is the same as under Rule 26(b)."). Uber requests documents and communications from third parties that stretch far beyond relevant time

---

[1] Uber claims Plaintiff's conduct is sanctionable, but the only case cited is clearly distinguishable. *See Price v. Trans Union, LLC*, 847 F. Supp. 2d 788, 794-95 (E.D. Pa. 2012) (party did not ever intend to move to quash the subpoenas).

periods and relevant topics that parties in this case have already agreed upon or that the Court has ruled on. Uber's impermissible document requests would also reveal protected work product.[2]

Uber's overbroad document requests fall into four categories: (1) medical records that are not relevant to the claims and defenses at issue in this case; (2) non-parties' communications with Uber that are not relevant or proportional to the needs of this case; (3) communications regarding ██████████████████████████ that contain no limitation as to time or subject matter; and (4) communications with *anybody* regarding Plaintiff's assault or this lawsuit.

*First*, Uber's document requests to Plaintiff's treaters are overbroad in scope and time, as mental health records from over 10 years prior to Plaintiff's assault and medical records from over 5 years prior to Plaintiff's assault are not relevant or and are not discoverable, as the Court has ordered and as parties have agreed. Uber's document requests to treaters do not contain any time limitation, and are thus overbroad. *See*, *e.g.*, Ex. A at 6 (Request No. 2). Uber's assertion that Plaintiff's signed authorizations are sufficient to identify the relevant time scope to treaters is not accurate—in fact, after receiving overbroad subpoenas, some of Plaintiff's providers have produced medical records *outside* of the scope of the time periods Plaintiff authorized. Further, Uber's statement that Plaintiff identified zero treaters from before the alleged incident is false. In April 2025, Plaintiff identified ████████████████████. Ex. C at 10. To the extent that the requests *are* relevant and proportional, they are cumulative with the documents Uber has already received under the Court-approved authorizations.

*Second*, Uber requests that Plaintiff's friends produce all documents or communications they have had with Uber. *See*, *e.g.*, Ex. A at 12 (Request No. 7). Putting aside that Uber already has all of these communications, individuals' Uber usage has nothing to do with Plaintiff's case.

*Third*, Uber requests that Plaintiff's friends produce "all non-privileged documents and communications concerning Plaintiff's pre- or post- incident mental health and/or Plaintiff's alleged damages that you created, received, or exchanged with anyone," *see*, *e.g.*, Ex. A at 12 (Duces Tecum Request No. 7) and that third-party H.M. produce "all non-privileged documents and communications about or related to ████████████████████ ██████" *see*, *e.g.*, Ex. A at 20 (Request No. 9). These requests do not contain *any* scope or time limitations and simply refer ambiguously to Plaintiff's "pre- or post- incident mental health" or "alleged damages." These third parties do not know what alleged damages or aspects of Plaintiff's mental health are at issue.

Further, the documents Uber seeks here go beyond the scope of communications parties have agreed to. Uber argues that the time limitations for communications with non-treaters regarding mental health should be even broader than for treater records, however, the parties have agreed that Plaintiff will produce similar communications from 2 years prior to the incident to present per this Court's order, a time limitation that should apply to third parties as well. *See* ECF 3209 (ordering communications from no earlier than 2 years prior to the assaults, and evaluating categories of mental health communications on a case-by-case basis). In addition, the parties

---

[2] Plaintiff has standing to challenge the subpoenas on relevant and proportionality grounds because the subpoenas seek her personal medical records and communications. *See* ECF 695 at 4 (finding Uber had standing to move to quash "where the subpoena calls for the production of Uber's confidential and proprietary information"). Uber says that Plaintiff waived any privacy interest in her medical records by filing a lawsuit, but any such waiver extends only to "reasonable discovery," as Uber's own case states. *Gaspard v. Hedgpeth*, 2013 WL 1819335, at *4 (N.D. Cal. Apr. 30, 2013). Alternatively, Plaintiff has standing to move for a protective order under Rule 26(c). *See* ECF 695 at 4.

agreed to eleven specific categories of social media to produce that define the type of mental health communications are relevant to this litigation. The Court should not allow Uber to request communications from Plaintiff's friends beyond these categories and time limitation. That a third party produced a communication that Plaintiff did not produce simply reflects that the search terms Plaintiff ran to search her documents did not hit on this particular document. In fact, when Plaintiff invited Uber to propose search terms in June, Uber did not engage.

*Fourth*, Uber is requesting that that third parties produce communications they have had with anybody (not just Plaintiff) regarding Plaintiff's assault or this lawsuit. *See*, *e.g.*, Ex. A at 12 (Request No. 1). What random people in Plaintiff's life think about her assault or her lawsuit is not relevant. At best, Uber is fishing for inadmissible character evidence.

*Finally*, Uber's document requests to certain third parties would reveal protected attorney work product. (Uber's claim that disclosure to a third party waives work product privilege is not correct, *see*, *e.g.*, *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120 (9th Cir. 2020)). Those communications will be included on Plaintiff's privilege log (which will be served on Uber by August 19). If Plaintiff's work-product objection is sustained, then the documents are not discoverable. If Uber successfully challenges the work product objection, then Uber may obtain the communications from Plaintiff directly. To be sure, Uber limited its subpoenas to non-privileged information. But unrepresented third-party friends of Plaintiff have no idea what is privileged and what is not. Plaintiff requests that the Court order her to advise the relevant third parties to withhold these specific communications.

## II.    Uber's Position

Plaintiff's request that the Court quash Uber's third-party subpoenas is part of an ongoing effort to stymie every attempt by Uber to discover the relevant facts underlying *QLF 001*'s claims. The subpoenas at issue are critical to Uber's pre-trial preparations because of the deficiencies in Plaintiff's own productions. Indeed, the messages Uber seeks are merely replacements for what Plaintiff lost or destroyed, and the Court has already agreed that Plaintiff's medical records are a necessity to Uber's defense. Ex. D (6/16/26 Hr'g Tr.) 27:17-23 ("I couldn't agree with you more. You need the medical records. You need to prepare your experts. I agree. You are absolutely right."). Nonetheless, on July 30, Plaintiff sent most of the witnesses cover letters instructing them not to produce documents and attaching objections falsely suggesting that the production of documents could run afoul of federal law. There is no legal basis for Plaintiff's improper and obstructionist conduct, which includes baseless objections such as, "there appears to be no reason to seek this discovery from a third party" and "Defendants have failed to establish that this discovery from this non-party is warranted." Ex. B (Pl's Objs.) at 13. And even if these objections were proper or accurate, Plaintiff would not have standing to lodge them. Plaintiff's counsel's letters and objections (perfectly timed with their aggressive media strategy that led the New York Times to vilify Uber counsel) are a clear attempt to obstruct discovery and intimidate potential witnesses. Already, one witness canceled his deposition, saying he needed to "check with [his] malpractice attorney" because "[i]t looks like [his] patient [Plaintiff] does not want me to testify." Ex. E at 4 (Messages from Dr. ███). Despite Plaintiff's claim that she contacted Dr. ███ and "confirmed [she] does not object to the deposition moving forward[,]" Dr. ███ sent notice to Uber today, August 11, 2026 stating that he "cannot proceed until the objections are resolved." Ex. E (Messages from Dr. ███). Absent a clear rejection of Plaintiff's positions by the Court, more will likely follow.

After Uber raised concerns about Plaintiff's misconduct, her counsel sought to deflect such criticism by seeking a protective order. Plaintiff's request should be denied both for lack of standing and because her objections are meritless.

**Background.** On July 8, Uber noticed and served subpoenas on 15 friends and relatives whom **Plaintiff had identified as having relevant discovery**, Ex. F (Notice of Subpoenas), and five days later, Uber served similar subpoenas on Plaintiff's identified treaters. Plaintiff served Uber with improper and inaccurate objections 15 days after it served its initial subpoenas on July 8. Ex. B (Pl's Objs.) at 13. Among other things, Plaintiff objected that "discovery from a non-party[,]" is not "warranted" and that Uber had not first sought discovery from Plaintiff. *Id*. This objection is not only factually inaccurate—Uber *did* seek this discovery from Plaintiff and was told that she had failed to preserve texts—it is also legally invalid. ECF 3786 at 2. During conferrals on July 24 and 27, Uber explained that its primary objective in serving subpoenas on Plaintiff's friends was to recover messages she had failed to preserve. Uber also agreed to consider a proposal for narrowed requests, but Plaintiff did not follow up. Instead, on July 30, Plaintiff sent her objections directly to the third parties over Uber's objection and included misstatements suggesting that Uber's requests were inconsistent with federal law and prior Court orders. Ex. B (Pl's Objs.) at 12-13. Since then, one witness has backed out of his deposition.

Plaintiffs' misconduct is particularly egregious because it is part of a clear pattern of discovery suppression across the MDL. In *A.R.*, counsel instructed a third-party witness not to search for and produce documents responsive to Uber's subpoena (ECF 3786); in *B.L.*, counsel withheld highly probative third-party communications (ECF 5964); and in *Dean*, counsel withheld communications with the Dr. Phil show (ECF 3675). Plaintiff's counsel has also sought to vilify Uber in the media for seeking standard discovery to which the Court has already recognized Uber was entitled, leading to threats against Uber's counsel.

**Legal Standard.** A party "does not have standing to object to a nonparty subpoena on the basis that the subpoena 'seeks irrelevant information, or that it would impose an undue burden… when the nonparty has not objected.'" ECF 695 at 4 (citation omitted). Rather, a party *only* has standing to raise issues regarding "claims of privilege or personal rights." *Openevidence, Inc. v. Doximity, Inc.*, 2026 U.S. Dist. LEXIS 58398, at *3 (N.D. Cal. Mar. 19, 2026). Notably, a plaintiff "waive[s] h[er] privacy rights with respect to [her] medical and mental health records" by seeking related damages. *Alcon v. Adams*, 2015 U.S. Dist. LEXIS 52355, at *3-4 (N.D. Cal. Apr. 21, 2015); *see also Gaspard v. Hedgpeth*, 2013 U.S. Dist. LEXIS 61830, at *12 (N.D. Cal. Apr. 30, 2013) (medical records). Courts have sanctioned parties for interfering with third-party subpoenas. *See, e.g.*, *Price v. TransUnion, L.L.C.*, 847 F. Supp. 2d 788, 793-796 (E.D. Pa. 2012).

**Friend Subpoenas.** Plaintiff challenges requests for communications related to: (i) the third-parties' Uber use; (ii) Plaintiff's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (iii) the alleged assault/this lawsuit. She has no standing to do so on grounds of relevance or burden. Nor can Plaintiff identify any legitimate privacy right she seeks to protect since she waived any privacy claim related to her mental health history by suing Uber. *Alcon*, 2015 U.S. Dist. LEXIS 52355, at *3-4. The Court's opinion in ECF 695 addressed a subpoena seeking Uber's *proprietary information* from an *objecting* third party and is thus inapposite. And Plaintiff obviously cannot claim a privacy interest in third parties' communications with Uber.

Even if she had standing, Plaintiff's objections would still miss the mark. Communications related to her mental health and substance abuse are relevant to evaluating the extent of her alleged injuries. ECF 3136 at 4. This is especially so given Plaintiff's assertion that ▮▮▮▮▮▮▮▮▮▮ Ex. G (Pl's Dep.) 144:14-18, 219:8-220:2. Moreover, Plaintiff explicitly disclaimed numerous

statements and ████████████████████████ at deposition. Ex. G (Pl's Dep.) 86:3-88:8, 111:4-112:18, 139:5-140:24, 220:20-221:16. Worse, Plaintiff has lost or discarded years of texts, including those sent immediately before and after the alleged incident. Despite telling the Court that she would mitigate that loss by recovering available messages from third parties (Ex. H (6/30/26 Hr'g Tr.) at 22-23), Plaintiff has not served a single subpoena seeking to do so. Notably, the one production Uber managed to obtain contains messages with Plaintiff from 2022 that she herself never turned over. Uber has a right to discovery that could salvage those messages, reveal pre-existing symptoms, and test Plaintiff's credibility. Indeed, Uber is *required* to seek those communications before pursuing further relief under Rule 37(e).

Plaintiff's arguments about scope are similarly unavailing. Plaintiff conceded the relevance of mental health records up to ten years before the alleged incident by producing authorizations to that effect, and the Court ordered additional authorizations for that timeframe. ECF 6840. Uber never agreed to limit communications to two years before the alleged incident,[3] and communications related to mental health—which lack the legal protections afforded to treater records—should be *broader* in scope, not narrower. Regardless, Plaintiff's friendships with these witnesses do not date back that far, making her time-period concern illusory. Ex. G (Pl's Dep.) 54:25-55:13 (2020), 57:13-14 (2021), 103:11-17 (2020). Likewise, Plaintiff's assertions that terms are "ambiguous[]" are unfounded. If third parties find Uber's requests unclear, they can raise that themselves—yet, Uber already received one production without complaint. As a final gambit, Plaintiff argues that third-party communications about the alleged incident and this lawsuit are irrelevant and inadmissible. But admissibility is not the standard for discovery, and communications *about the alleged incident or this lawsuit*, are facially relevant. All of Uber's requests are tailored by subject matter, persons, and/or timeframe and aimed at legitimate discovery. Plaintiff's objections, on the other hand, are unsubstantiated, and her persistent pattern of obstruction and delay as trial approaches is highly concerning.

**Treater Subpoenas.** Plaintiff's treater objections are also meritless. The treater subpoenas include authorizations *signed by Plaintiff* that dictate the relevant period. And the Court was clear that Uber "need[s] the medical records" and Plaintiff should "expedite [their production]." Ex. D (6/16/26 Hr'g Tr.) 27:17-23. Regardless, Plaintiff has repeatedly said she cannot recall her pre-incident treaters and has only identified those she saw afterward. Assuming that is true, the subpoenaed treaters would not have any pre-incident records or documents.

**Privilege Objections.** Plaintiff's privilege assertions are similarly baseless. Each of Uber's requests explicitly seeks "non-privileged" documents. Nonetheless, any document that Plaintiff claims is privileged would have lost that protection when she shared it with an unnecessary third party. *Sony Comp. Entm't Am., Inc. v. Great Am. Ins. Co.*, 229 F.R.D. 632, 634 (N.D. Cal. 2005) (collecting cases).[4] Regardless, it is Plaintiff's burden to show that privilege applies to a particular document in spite of a third party's presence, and she has not done so. *Id.* ("Where a third party is present… the usual allocation of burden of proof, resting with the proponent of the privilege, applies…"). Nevertheless, Plaintiff asks the Court to allow her to sift through third-party productions before Uber sees them and unilaterally decide what to withhold. Plaintiff offers no legal basis or precedent for such an approach, and Plaintiff's counsel's prior discovery conduct strongly suggests that any such power would be misused. The Court should deny her requested relief for this reason as well.

---

[3] Plaintiff mischaracterizes ECF 3209, which only relates to social media.

[4] Plaintiff recently attempted to claw back a message with a third party based on a frivolous assertion of privilege, which Uber will be separately challenging.

**FILER'S ATTESTATION**

I, Andrew Kaufman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


*/s/ Andrew Kaufman*
Andrew Kaufman