UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES. | Case No.  23-md-03084-CRB   (LJC)<br><br>**ORDER REGARDING JULY 30, 2026 QLF001 DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 6951, 6959 |

### A.      Joint Letter Regarding Documents for Rule 30(b)(6) Depositions

The parties raise several disputes regarding Plaintiff Jane Doe QLF 001's demand for production of documents and inspection of a laptop computer included in a deposition notice seeking corporate testimony under Rule 30(b)(6) of the Federal Rules of Civil Procedure.  *See generally* Dkt. Nos. 6951 (joint letter), 6951-2 (deposition notice).

Uber asserts that some of these issues were the subject of ongoing discussions and that the parties might be able to resolve them.  This Order is not intended to disturb any firm agreements that the parties may have reached prior to its issuance.  Any party that believes this Order conflicts with such an agreement must file notice to that effect no later than one business day after the date of this Order.  Any such prior agreement will control over the terms of this Order.

### 1.      Regional Marketing Materials

Request No. 7 of the deposition notice at issue calls for Uber to produce "[c]opies of all Drinking-Related Communications and Safety Communications Uber sent or directed to the Northern Texas Region at any time prior to the Incident, by any channel (including but not limited to through the Uber app, email, or social media)."  Dkt. No. 6951-2 at 19.  Both parties discuss that request as pertaining more generally to "marketing" directed to that region.  *See* Dkt. No.

6951 at 3 (Uber's introduction, describing Request No. 7); *id.* 4–5 (Uber's arguments regarding marketing materials); *id.* at 5–6 (Plaintiff's arguments regarding marketing materials). The Court understands the dispute as limited to Request No. 7 and not Request Nos. 5 and 6, which seek "marketing and advertising materials or communications" that Uber sent to Plaintiff and to the non-party, H.M., who ordered a ride for Plaintiff. *See* Dkt. No. 6951-2 at 19 (requests for production); Dkt. No. 6951 at 3 (introducing Uber's argument regarding marketing materials as pertaining to Request No. 7).

Uber asserts, and Plaintiff does not dispute, that Uber has already "produced extensive marketing materials used across the country." Dkt. No. 6951 at 4. The Court's familiarity with the history of discovery in this case supports that assertion. Uber also asserts that marketing is unlikely to be relevant when Plaintiff did not order her own ride or, at her deposition, recall seeing any specific Uber advertisement. *Id.* at 4. Plaintiff contends that H.M. (who had not yet been deposed, at least at the time of the joint letter) might have been influenced by advertising or marketing, and that such materials might also be relevant to showing that Plaintiff or H.M. were influenced by word-of-mount marketing campaigns. *Id.* at 5–6.

Under the circumstances of this case, with trial rapidly approaching, Plaintiff's theories regarding potential relevance of marketing materials are too speculative to render the request at issue—and the effort that Uber would need to take to produce all marketing materials used in large geographic region or identify them from previous productions—proportional to the needs of the case. Uber need not produce documents in response to Request No. 7. As part of the Court's resolution of this matter, however, the Court authorizes Plaintiff to serve narrowly tailored interrogatories or requests for admission addressing whether specific marketing campaigns of interest to Plaintiff were deployed in the North Texas region, and Uber shall respond to such requests within one week. This Order is also without prejudice to Plaintiffs seeking a narrowly tailored production of certain marketing materials if warranted after H.M's deposition.

### 2. Witness Designations and Custodial Files

Plaintiff seeks production of custodial files for any witnesses Uber designates to testify under Rule 30(b)(6) in response to Plaintiff's deposition notice, arguing that Uber has previously

2

called such witnesses at trial. Dkt. No. 6951 at 6–7. Uber asserts, and Plaintiff specifically acknowledges, that Uber has already designated the witnesses who will testify. *Id.* at 5, 6. Uber also asserts, and Plaintiff does not dispute or otherwise address, that Uber has not designated any witness who is not already a custodian. *See id.* This dispute therefore appears to be moot. To the extent that it is not, the Court has already required Uber to produce custodial files for witnesses it intends to call at trial. Dkt. No. 6209. Plaintiff has not shown that it is necessary also to produce custodial files for Rule 30(b)(6) deposition witnesses whom Uber does *not* intend to call at trial, or that it is feasible to do so in the time that remains for discovery in this bellwether case.

In a related dispute, Plaintiff asserts that Uber has not offered any dates before September 11, 2026 for one of its Rule 30(b)(6) witnesses. Dkt. No. 6951 at 6. The case schedule for this bellwether trial calls for substantial completion of fact discovery by August 21, 2026; expert reports to be served by August 24, 2026; and the close of expert discovery on September 2, 2026; with motions for summary judgment, motions in limine, and other substantive motions due only days thereafter. Dkt. No. 6784. Uber is ORDERED to make these witnesses available for deposition no later than Sunday, August 23, 2026, or to show cause no later than two business days after the date of this Order why it is impossible for it to do so.

### 3. Laptop with Access to Internal Investigator Tools

Plaintiff's deposition notice calls for Uber's witness(es) to:

> bring to the deposition a laptop or other computer capable of logging into the platform(s) that Uber's investigators use when they are investigating a reported Safety Incident, such that the witness is able to demonstrate the architecture of the platform(s), and the way in which the investigator's resources, including but not limited to Chronicle, Fractal, Voyager, Background Check Portal, Safety Lens, JIRA, Bliss, etc., are organized, linked, accessed, viewed, and interacted with.

Dkt. No. 6951-2 at 19 (Request No. 4).

Plaintiff asserts that Uber's investigative tools will be relevant in this case because the driver who sexually assaulted Plaintiff "had at least five separate Uber accounts, at least one of which Uber had banned," and Plaintiff seeks to understand how Uber investigates and cross-references the possibility that a driver has multiple accounts. Dkt. No. 6951 at 7. Plaintiff notes

United States District Court
Northern District of California

(without citation) that the Court previously authorized a procedure to require an Uber witness to bring a laptop to a deposition. *Id.*

The Court previously required Uber witnesses to bring laptops to depositions under narrow and unusual circumstances where the parties had previously engaged in extensive disputes over the manner in which Uber organized its documents, and the Court set stringent requirements for how Plaintiffs could request demonstrations of Uber's systems. Dkt. No. 2995 at 5–8.[1] The Court did not then, and does not now, intend for such requirements to become routine. Plaintiff has not shown that similar circumstances warrant such demonstrations here. Uber need not comply with the request for its witnesses to bring laptops.

### B. Joint Letter Regarding Plaintiff's Document Preservation and Production

Plaintiff in the *QLF001* case has lost and replaced her phone multiple times after the alleged sexual assault in 2020, including after beginning to look for counsel to pursue a civil claim in 2021 or 2022, which would trigger an obligation to preserve relevant evidence. Uber seeks to compel:

> (i) the identity of the expert(s) Plaintiff used to analyze her devices; (ii) a declaration from the expert(s) describing their credentials, the methods they used, and a full accounting of their analyses, results, and conclusions; (iii) a deposition of Plaintiff's data expert(s); and (iv) Plaintiff's phone records from 2020 to 2024, or at the very least, an authorization so that Uber may seek those records on its own.

Dkt. No. 6959 at 5.

Plaintiff and her counsel have made inconsistent statement about the degree to which prior potentially relevant communications could be recovered. Plaintiff might well have good reasons for updating her position and for ultimately obtaining evidence that previously appeared to be lost. This Order does not make any finding of wrongdoing. That said, Uber has a legitimate interest in understanding Plaintiff's data recovery process, whether potentially relevant communications are still lost, and whether there are additional steps that could be taken in the very limited time remaining before trial to attempt to recover them.

---

[1] *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2025 WL 1393216, at *3–5 (N.D. Cal. May 14, 2025).

4

Plaintiff relies on the presumption against discovery-on-discovery, and on Rule 26(b)(4)(D)'s presumption against discovery from trial preparation experts:

> (D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> > (i) as provided in Rule 35(b) [governing mental and physical examinations of a person, not at issue here]; or
> >
> > (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).

None of the cases cited by the parties that applied that provision are on point. In *Zeiger v. Wellpet LLC*, cited by Uber, Judge Orrick found waiver of protection under Rule 26(b)(4)(D) where a party cited its expert's test results in an operative complaint. *Zeiger*, No. 17-cv-04056-WHO, 2018 U.S. Dist. LEXIS 63019 (N.D. Cal. Apr. 10, 2018). Here, Plaintiff has not relied on her data recovery expert's opinions as a basis for liability. On the other hand, none of Plaintiff's cited cases relate to an expert retained to facilitate a party's compliance with discovery obligations. *U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*, 268 F.R.D. 614, 616 (N.D. Cal. 2010) (addressing an expert retained for technical analysis of an engineering issue); *In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. 94, 96 (N.D. Cal. 1986) (addressing a request for an opponent to disclose the identities of accounting experts to whom a party's records would be shown); *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 224 (D.D.C. 2012) (addressing an expert involved in testing ballistic vests).

It is not obvious that Rule 26(b)(4)(D) is intended to shield a party's document collection or recovery efforts from discovery. As noted in one of the cases that Plaintiff cites, "the drafters of that subparagraph wanted it to reinforce each litigant's motivation to aggressively develop his own side of any given case by retaining and relying on his own expert. The flip side of that objective was to discourage lazy or unscrupulous lawyers from trying to cut case-preparation corners by leaching basic information or valuable opinions from experts retained by their

United States District Court
Northern District of California

5

opponents." *In re Pizza Time*, 113 F.R.D. at 96 (citing the Advisory Committee's Note regarding 1970 amendments). Such interests do not apply to factual questions of what steps a party has taken to comply with its discovery obligations, which that party's opponent has no means to learn through retention of its own competing expert.

"Courts may find exceptional circumstances to order the production of non-testifying expert records when it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means . . ." *U.S. Inspection Servs.*, 268 F.R.D. at 623. There is no other means apparent for Uber to learn how Plaintiff's expert attempted to recover documents—and thus whether such efforts were reasonable and sufficient—other than having Plaintiff's expert(s) explain that steps were taken to recovery all of the available data. To the extent that such recovery efforts might constitute or reveal non-opinion work product, Uber has shown sufficient cause to overcome that protection for much the same reasons. *See* Fed. R. Civ. P. 26(b)(3)(A).

Plaintiff offers that "if the Court concludes that some additional factual disclosure concerning Plaintiff's collection efforts is appropriate, . . . Plaintiff is prepared to provide a declaration describing the non-privileged factual steps undertaken to search for and recover responsive text messages." Dkt. No. 6959 at 7 n.6. This a reasonable step, but it must be done promptly. Plaintiff's expert shall provide this declaration by August 18, 2026.

Plaintiff also disputes the significance of her own "post-assault text messages" (and perhaps other communications) because she contends that this "case centers on Uber's conduct, policies, and safety practices" and "the driver's culpability is not meaningfully in dispute" when he is serving an eleven-year prison sentence as a result of the assault. Dkt. No. 6959 at 6 n.3. Even if Uber does not intend to dispute the driver's culpability, however, Plaintiff's communications may be relevant to damages.

Plaintiff is therefore ORDERED to identify any experts she used to attempt to collect or recover communications responsive to Uber's document requests and provide a declaration from each expert describing their efforts and results no later than August 18, 2026. The experts shall not disclose privileged communications or "mental impressions, conclusions, opinions, or legal

theories of a party's attorney or other representative concerning the litigation." *See* Fed. R. Civ. P. 26(b)(3)(B). This ruling is without prejudice to any further request by Uber to depose an individual expert. Any such requests shall be made no later than August 20, 2026, and if there is an unresolved dispute it shall be briefed in a joint letter no later than August 24, 2026.

Plaintiff does not address Uber's request for production of her phone records and thus has waived any argument in opposition. Plaintiff shall produce any phone records within her custody or control showing text messages sent and received for the years from 2020 to 2024 (but not the contents of such messages unless otherwise responsive to document requests) no later August 19, 2026. In correspondence between counsel (but not in the joint letter), Plaintiff's attorney represented that Plaintiff has already produced her phone records. Dkt. No. 6957-2. If Plaintiff has already produced all such records, Plaintiff's counsel may attest that this production is complete.

**IT IS SO ORDERED.**

Dated: August 12, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

7