# EXHIBIT A

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER**<br><br>Judge:      Mag. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**NOTICE OF MOTION AND MOTION FOR**

**PARTIAL RECONSIDERATION AND STAY OF ORDER**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Civil Local Rule 7-9 and the Court's Order Granting Defendants' Motion for Leave to File Motion for Reconsideration, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will and hereby do move the Court to partially reconsider its July 30, 2026 Order (Dkt. 6935) (the "July 30 Order") and grant a stay of the July 30 Order pending the Court's review of Uber's motion for reconsideration and forthcoming appeal pursuant to Rule 72 (if necessary). As further explained in Uber's accompanying Memorandum of Points and Authorities, Uber seeks reconsideration of the July 30 Order for multiple reasons.

First, the Order forces Uber into an untenable choice: make an unqualified admission that the June 2026 background-check policy was "feasible" years earlier, or prepare a Rule 30(b)(6) witness to explain why it was not. That framing is flawed. Feasibility, in this context, is not a yes-or-no proposition. In the abstract, a company can theoretically direct a background-check vendor to apply any number of different criteria. But the fact that a vendor could technically be instructed to do something does not answer whether the policy was legally supportable, operationally workable, safety-justified, validated, proportionate, or reasonable at the relevant time. The testimony of Hannah Nilles, Uber's Head of Global Safety, makes that distinction clear. Ms. Nilles testified that Uber's safety systems evolve as "technology has changed," that Uber continues "to improve" and "monitor" its systems, and that her testimony about Uber's then-existing screening process was a point-in-time assessment, not a claim that Uber had exhausted every conceivable future safety iteration.

Second, the California Supreme Court's recent *Gilead* decision reinforces why that distinction matters: tort law should not treat later innovation as proof that an earlier product, process, or safety system was defective.

Finally, because Judge Cisneros recognized that admissibility remains for Judge Breyer, the Order should be stayed pending reconsideration and (if needed) Rule 72 review, before Uber is compelled to make an incomplete admission or prepare burdensome corporate testimony that Plaintiffs will seek to use

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

at trial in *QLF 001*, even though the June 2026 policy postdates the incident by many years and is utterly irrelevant to the case.

This Motion for Partial Reconsideration and Stay is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the pleadings and papers on file herein.

DATED: August 13, 2026                  Respectfully submitted,


                                        By: */s/ Laura Vartain Horn*
                                            Laura Vartain Horn

                                        **KIRKLAND & ELLIS LLP**
                                        LAURA VARTAIN HORN
                                        ALLISON M. BROWN
                                        JESSICA DAVIDSON

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Uber respectfully requests that this Court partially reconsider and vacate its July 30, 2026 Order requiring Uber to produce certain discovery regarding its June 2026 background check policy because the July 30 Order reduces a nuanced, context-dependent question of feasibility to a binary admission, misapprehends testimony from Hannah Nilles, Uber's Global Head of Safety, that Uber's safety practices continually evolve, and—contrary to *Gilead* and the policy against penalizing subsequent safety improvements—effectively requires Uber either to make a misleading concession for Plaintiffs to use at trial or bear the burden of disproportionate discovery.

The Court's Order imposes on Uber the Hobson's choice of either "stipulat[ing] for the purpose of the next two bellwether trials that the expanded background check policy it adopted in 2026 would have been feasible at the time of the incidents in question for those trials," or submitting to a burdensome deposition as to why "such earlier adoption would not have been feasible." But Uber cannot stipulate to the former, because "feasibility" is not a simple yes or no question. Ms. Nilles testified in June 2025 that Uber is constantly looking to iterate and improve on its safety processes, but its ability to do so is limited by legal and operational, in addition to technical, concerns. In the abstract, therefore, a policy change may be technically capable of earlier implementation in the limited sense that the systems, workflows, or vendor-supported processes necessary to implement it could have been built or deployed. But that narrow concept of technical capability says nothing about whether a particular policy change is reasonable at an earlier time, operationally appropriate, advisable, required by any applicable standard of care, or supported by evidence that it would materially improve rider safety. Nor is that limited proposition inconsistent with Ms. Nilles's testimony, which reflected Uber's overall judgment about its then-existing global screening and safety program—not the abstract technical possibility that its policies and processes could continue to evolve and improve over time. Uber should not be coerced into an admission that is incomplete and would be used against it at trial. The Court should not compel Uber to make that admission—or effectively penalize Uber for declining to do so by requiring an onerous 30(b)(6) deposition on an issue that is ultimately irrelevant.

The California Supreme Court's August 3, 2026 decision in *Gilead Tenofovir Cases*, S283862, 2026 WL 2223748, at *23 (Cal. Aug. 3, 2026), makes clear that feasibility is not a relevant inquiry here,

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

raising policy concerns that make the Court's Hobson's choice even more improper. That concern is particularly salient in the safety context, where policies and practices are necessarily iterative and evolve as environmental circumstances change. And it would be doubly disproportionate to compel such a deposition while the parties are rushing to prepare for trial in *QLF 001*, a case where the new background check policy is indisputably irrelevant.

The Court appears to have based its ruling in large part on a misleading claim by Plaintiffs that Ms. Nilles testified at her deposition in June 2025 that the then-existing policy was the best Uber could do (for all time) and that she was not aware of any upcoming changes. That is not what Ms. Nilles said. Rather, Ms. Nilles testified that given Uber's *screening processes* around the globe (which include not just background checks but also other screening measures such as identity verification and insurance validation)—including in countries outside the U.S. where background checks are not possible— she generally felt Uber was doing all it could to prevent bad actors from gaining access to the platform. She also testified that Uber is "always looking to improve" its background screening processes, Nilles 6/30/25 Dep. 256:5-14 (Ex. 1).

While Plaintiffs suggest that Ms. Nilles falsely testified that she was not aware at the time of any forthcoming changes to the background check policy, Ms. Nilles did not learn of Uber's intention to adopt the June 2026 policy changes until approximately March 2026, almost a year after her deposition. *See* Declaration of Hannah Nilles ("Nilles Decl.") ¶ 5 (Ex. 2). Thus, nothing about Ms. Nilles's testimony is inconsistent with Uber's later adoption of additional safety measures. Rather, her testimony reflected her judgment, at the time, that Uber's then-existing global screening processes were the best it could do to keep bad actors off the platform, while she also acknowledged that Uber's safety work is iterative: "technology has changed," what Uber can do "over the years has changed," and Uber continues "to improve" and "monitor" its systems. Nilles 6/30/25 Dep. 102:22-103:12.

In short, a subsequent policy change reflects continued safety iteration, not an admission that Uber's prior policies were deficient or unsafe. It is therefore no surprise that Ms. Nilles was unaware of the forthcoming policy change at the time, and the subsequent promulgation of the new policy in no way implies that Ms. Nilles's testimony was untrue—or that her judgment call about Uber's work to keep bad actors off the platform was inconsistent with the June 2026 announcement. Two things can be true here:

4

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

Ms. Nilles believed Uber was doing all that it could do in June 2025, based upon her work and experience, to prevent bad actors from gaining access to the platform ***and*** Uber will continue to iterate on safety because it believes its work on safety is never done.

For all of these reasons, discussed further below, the Court should grant reconsideration and vacate its July 30 Order, in part. Additionally, Uber requests that the Court stay the July 30 Order pending consideration of this motion (and Uber's forthcoming appeal of the July 30 Order to Judge Breyer pursuant to Rule 72, if necessary).

**<u>BACKGROUND</u>**

On June 26, 2026, Uber publicly announced forthcoming changes to its criminal background check process for drivers and couriers, explaining that its "approach to safety has never been static," and that after consulting with "various subject matter experts, including leaders in civil rights and women's safety," the Company decided to implement certain changes, including (i) broadening the criteria for convictions that permanently disqualify someone from driving or delivering on the Uber platform; and (ii) lengthening the lookback period for the Social Security Number ("SSN") trace to identify counties where an individual has lived or potentially had contact with law enforcement from 7 years to 99 years nationwide.[1]

On July 9, 2026, Plaintiffs served a 30(b)(6) Deposition Notice (the "Notice") (Ex. 3) seeking extensive discovery regarding virtually every aspect of the June 2026 policy and the circumstances leading to its adoption. Uber subsequently moved for a protective order prohibiting the discovery requested in the Notice. Dkt. 6902. In its briefing, Uber argued that the 2026 background check policy is not relevant to any bellwether case. As Uber explained, the new policy was not in effect at the time of the alleged incident in *QLF 001* (2020) or in *A.R.* (2023). Uber also argued that the Notice's 52 topics/subtopics and 30 document requests are overbroad, unduly burdensome, and grossly disproportionate to the needs of this litigation. *Id.* at 3-4.[2]

---

[1] Uber, *A New Standard for Background Checks* (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/.

[2] Uber also argued that much of the discovery Plaintiffs sought is privileged, because Uber's decisions about how and whether to change its background check policy were heavily informed by legal advice and legal decision-making. *Id.* at 4-5.

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER

Case No. 3:23-md-03084-CRB (LJC)

On July 30, 2026, the Court entered an Order (the "July 30 Order") granting in part and denying in part Uber's motion for protective order. Dkt. 6935 at 3-6. The Court largely agreed with Uber that the "[e]xhaustive discovery regarding the 2026 policy" sought by the Notice is "not proportional to the needs of this MDL at this time, when the parties have limited time to conduct other discovery that is more necessary for the next two trials." *Id.* at 4. Nonetheless, the Court held that discovery into the June 2026 background check policy is relevant in two respects.

First, the Court stated that Plaintiffs "have a legitimate interest in exploring whether it would have been feasible for Uber to implement sooner the expanded background checks that it is now conducting." *Id.* at 5. The July 30 Order therefore compels Uber to produce documents and 30(b)(6) deposition testimony regarding why "such earlier adoption would not have been feasible," "[u]nless Uber stipulates for the purpose of the next two bellwether trials that the expanded background check policy it adopted in 2026 would have been feasible at the time of the incidents in question." *Id.*

Second, the Court held that "Plaintiffs have reasonable grounds to explore whether this new policy calls into question the accuracy or credibility of [Uber corporate representative Hannah] Nilles's June 2025 testimony that Uber was doing all that it could with respect to driver screening and that she was not aware of plans to change its screening practices." *Id.* at 4-5. The July 30 Order accordingly compels Uber to produce "contemporaneous documents sufficient to show when Hannah Nilles became aware of Uber's intent to make some or all of the changes to its background check policy that it adopted in June of 2026." *Id.* at 5. The Court also *sua sponte* ordered Uber to produce a declaration by Ms. Nilles "stating when she first became aware of Uber's intent to make those changes."[3] *Id.*

Uber has now complied with this portion of the Order by producing a declaration by Ms. Nilles stating that she first learned of Uber's intent to adopt the new background check policy in approximately March of 2026[4] and by producing a privilege log identifying the contemporaneous documents sufficient

---

[3] The July 30 Order also states that a deposition of Ms. Nilles may be permitted "upon a specific showing of good cause." *Id.*

[4] Uber's June 26, 2026 press release announcing the new background check policy also confirms that conversations about this change did not begin until earlier this year—i.e., after Ms. Nilles's 2025 deposition. *See* Uber, *A New Standard for Background Checks* (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/.

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

to show the same. The other portion of the Court's Order requiring a stipulation, however, appears to have been premised on a fundamental misunderstanding of Ms. Nilles's deposition testimony that requires correction. Properly considered, the ***full record*** of Ms. Nilles's June 2025 deposition makes clear that the subsequent background check policy change—promulgated a full year later—does not in any way undermine the accuracy or credibility of Ms. Nilles's testimony. This is so because Ms. Nilles did *not* actually testify, as Plaintiffs claim, that "Uber was doing all that it could with respect to driver screening and that she was not aware of plans to change its screening practices." Dkt. 6935 at 5. To the contrary, Ms. Nilles testified at her 2025 deposition that Uber is "always looking to improve" its background screening processes, Nilles 6/30/25 Dep. 256:5-14; that Uber is "investigating what the best options are" with regard to screening, *id.* 190:21-191:8; and that Ms. Nilles is "constantly looking for ways to reduce sexual assault," *id.* 277:22-278:9.  Importantly, Plaintiffs conflate Ms. Nilles's testimony, which reflected Uber's overall judgment about its then-existing global screening and safety processes as a whole with the abstract technical possibility that ***one*** component of that global screening and safety processes (background checks) could continue to evolve over time. Thus, the whole thrust of her testimony was that background check policy is inherently iterative, and even a sound policy is subject to technological and operational enhancement.

Plaintiffs cherry-picked a line taken out of context, in light of the full picture of the discussion on global screening processes and whether Uber was doing what it could to prevent bad actors from gaining access to the platform. Ms. Nilles's statement was not that Uber had exhausted every technically imaginable screening modification or that it would never revise or adjust any of its safety policies and procedures. It was that Uber's then-existing screening processes as a whole were the best safety program Uber could reasonably stand behind in context, while Uber continued to monitor, improve, and adopt changes over time. Instead, the plaintiffs are interpreting the testimony to mean "the best Uber could do forever and all of time"—which is not what Ms. Nilles said. That interpretation would imply that every iteration of a safety policy would require in-depth discovery on feasibility and deposition testimony. Such a requirement is likely to have a chilling effect for companies looking to improve on existing policies.

Uber did not have an adequate opportunity to rebut Plaintiff's  mischaracterizations, both because Uber was limited to two-and-a-half pages in its PTO 8 briefing and because Uber was focused on the

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

ultimate issue of whether the sweeping discovery Plaintiff sought was relevant; however, the testimony should be considered as a whole and not taken out of context. There is discussion throughout the deposition about changes and improvements to the background check process over time, and Ms. Nilles did not concede that prior versions of the policy were "unsafe," just that there will always be operational and technological enhancements that are considered. *E.g.*, Nilles 6/30/25 Dep. 102:4-17. Requiring a deposition every time Uber makes a change to its safety policy on whether prior testimony about the effectiveness of safety is somehow inconsistent with the enhancement is not appropriate or proportionate under Rule 26.

## ARGUMENT

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims[.]" Fed. R. Civ. P. 54(b). Local Rule 7-9(b)(1) allows a party to seek reconsideration where "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought."

A party seeking reconsideration of a *judgment* under Federal Rule of Civil Procedure 59(e) must show "newly discovered evidence, [] clear error, or … an intervening change in the controlling law." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). However, "when a district court issues 'an *interlocutory order*, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59.'" *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)) (emphasis added). The same standard applies where a party seeks reconsideration of a discovery order issued by a magistrate judge. *See Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18-cv-07689-LB, 2022 WL 3083713, at *2, *5 (N.D. Cal. Aug. 3, 2022) (magistrate judge noting "the court's inherent power rooted firmly in the common law to rescind an interlocutory order over which it has jurisdiction") (citation omitted). Accordingly, this Court "possesses the inherent procedural power to reconsider, rescind, or modify [its] interlocutory order for cause seen by it to be sufficient." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 741 (9th Cir. 2025) (citation omitted).

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

Sufficient cause exists for the Court to partially reconsider its July 30 Order because (1) feasibility is not a simple yes-or-no proposition insofar as safety is always evolving, and the full context of Ms. Nilles's testimony shows that she understood safety and screening practices to be inherently iterative, not static; and (2) *Gilead* confirms that feasibility is not the proper inquiry and cautions against treating subsequent safety improvements as evidence that prior practices were deficient, making the compelled stipulation particularly inappropriate. Moreover, the Order should be stayed because the Court should not coerce Uber into making an incomplete and potentially damaging admission for use at trial where the issue is not even at issue in the next upcoming *QLF 001* trial, a case where the new background check policy is indisputably irrelevant.

## I.  RECONSIDERATION IS NECESSARY BECAUSE THE COURT DID NOT CONSIDER THE FULL CONTEXT OF MS. NILLES'S TESTIMONY, HIGHLIGHTING THAT FEASIBILITY IS NOT A SIMPLE YES-OR-NO PROPOSITION INSOFAR AS SAFETY IS ALWAYS EVOLVING.

The Court should reconsider the July 30 Order because it forces Uber to choose between making an admission that will inevitably be used against it at the next two bellwether trials or submitting to a burdensome, irrelevant and disproportionate deposition that is contrary to public policy.

As explained further below, Uber cannot stipulate that it was "feasible" to adopt the 2026 background check policy at an earlier time, because feasibility is not a simple yes or no proposition. In the abstract, almost any screening rule is technically feasible, even if it would violate the law: Uber could instruct a vendor to disqualify drivers based on any number of criteria, including criteria that would be arbitrary, overinclusive, legally problematic, unsupported by safety data, or operationally unworkable. The legally meaningful question is not whether a command could be sent to a vendor, but whether a national screening change was appropriate in light of the full safety, operational, technological, legal, regulatory, and evidentiary environment at the relevant time. Accordingly, Uber should not be coerced into making either a damaging admission or submitting to a burdensome deposition.[5]

---

[5] Even the experts with whom Uber consults in connection with its background check policy agree that the question of "feasibility" is nuanced and requires proper balancing of multiple factors. For example, many experts "emphasized that years of safe participation on the Uber platform should be weighed alongside past offenses when evaluating existing drivers." These experts confirmed that "public safety and economic justice" are all relevant to the construction of a sound background screening policy, and

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

Uber did not have an adequate opportunity to present the full context of Ms. Nilles's June 2025 deposition testimony on which the Court relied in ordering discovery concerning the June 2026 background check policy. Uber was limited to two-and-a-half pages in its PTO 8 briefing and was principally responding to Plaintiffs' broader arguments concerning the relevance of the sweeping discovery they sought. Uber therefore addressed Plaintiffs' characterization of Ms. Nilles's testimony only briefly in a footnote. *See* Dkt. 6902 at 3 n.1. The full record, however, materially affects the meaning of that testimony and makes clear that Uber's subsequent adoption of additional safety measures is entirely consistent with what Ms. Nilles actually said.

Plaintiffs characterized Ms. Nilles as testifying that Uber's then-existing background check policy was the "best [Uber] can do to keep bad actors off the platform." Nilles 6/30/25 Dep. 252:12-16. But that isolated statement cannot be understood apart from the context in which it was made. Ms. Nilles was discussing Uber's *global screening processes*, including screening in countries outside the United States where background checks may not be available. *See id.* 247:20-252:16. Critically, the discussion was not directed at the effectiveness or adequacy of U.S. criminal background check practices. Rather, it concerned the effectiveness of overall screening globally and the potential organizational benefits of consolidating non-U.S. screening resources—specifically EMEA and APAC—under a U.S.-based team. The U.S. screening processes she was describing were broader than criminal background checks alone: they encompassed the various measures Uber uses to screen individuals seeking access to the platform, including identity verification, social security number validation, driver's license and vehicle document review, and motor vehicle record checks. *See id.* 100:1-11; 144:14-20. Accordingly, Ms. Nilles's testimony in that context should not be recast as an assessment of whether Uber's U.S. background-check policies were deficient or whether additional U.S. screening measures were feasible. Her testimony reflected her overall judgment, based on the information, technology, and circumstances existing at the time, about Uber's global efforts to prevent bad actors from accessing the platform. It was not a representation that Uber had exhausted every technically conceivable modification to its background check policies or that its safety processes could never change.

that weighing these considerations is consistent with the goal of "build[ing] the safest platform." *A New Standard for Background Checks*, *supra* n.1.

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

Indeed, the remainder of Ms. Nilles's testimony makes that distinction clear. She repeatedly explained that Uber's safety and screening work is iterative: Uber is "always looking to improve" its background screening processes, Nilles 6/30/25 Dep. 256:5-14; is "investigating what the best options are" with respect to screening, *id.* 190:21-191:8; and is "constantly looking for ways to reduce sexual assault," *id.* 277:22-278:9. She likewise explained that "technology has changed," that what Uber can do "over the years has changed," and that Uber continues to "improve" and "monitor" its systems. *Id.* 103:4-12. Read as a whole, her testimony therefore drew no inconsistency between believing that Uber's existing screening program represented its best judgment at a particular point in time and continuing to identify and implement improvements as technology, information, and circumstances evolved.

That context matters because Plaintiffs' contrary reading effectively transforms Ms. Nilles's point-in-time assessment into a representation that Uber's safety practices were fixed permanently—that "the best Uber could do" in June 2025 necessarily meant the best Uber could ever do. That is not what she testified. Nor does a subsequent policy change retroactively alter the meaning of her testimony or establish that Uber's earlier screening practices were unsafe, unreasonable, or deficient. **Two propositions can readily coexist: Uber can reasonably believe that its existing safety processes are appropriate based on the circumstances at a particular time, while continuing to seek ways to improve those processes as circumstances change.** That is the nature of iterative safety work.

In short, the full context of Ms. Nilles's testimony makes clear that Uber is continually looking for ways to enhance safety and improve its processes, taking into account many competing considerations that cannot simply be boiled down to feasible or infeasible. Plaintiffs' and the Court's suggestion that this is merely a binary inquiry is based, in part, on Plaintiffs' misreading of Ms. Nilles's deposition testimony. Uber should not be coerced into making either a damaging admission or submitting to a burdensome deposition, all based on a false premise (and one that is contrary to public policy). Because the Court did not have the benefit of the full context of Ms. Nilles's testimony when it entered the July 30 Order, the Court should reconsider the Order in light of that materially different record. *See, e.g.*, *Kamradt v. Esurance Ins. Co.*, No. 22-cv-01445-TL, 2023 WL 9187193, at *1 (W.D. Wash. Dec. 19, 2023) (granting reconsideration of discovery order "premised on an incomplete set of facts and a key point of which neither the Court nor Defendant was aware").

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)

## II. RECONSIDERATION IS ALSO NECESSARY BECAUSE THE CALIFORNIA SUPREME COURT'S RECENT RULING IN *GILEAD* CONFIRMS THAT FEASIBILITY IS NOT THE PROPER INQUIRY AND CAUTIONS AGAINST TREATING SUBSEQUENT SAFETY IMPROVEMENTS AS EVIDENCE THAT PRIOR PRACTICES WERE DEFICIENT.

The above is all the more true given the California Supreme Court's recent opinion in *Gilead Tenofovir Cases*, S283862, 2026 WL 2223748 (Cal. Aug. 3, 2026), which makes clear that feasibility is not even a legitimate topic of inquiry under California law. In *Gilead*, the Court affirmed that a company has no duty under California law to bring a safer product to market when the pre-existing product is not unreasonably dangerous.

The holding in *Gilead* directly undermines the rationale this Court adopted as to why discovery into the June 2026 background check policy is relevant: that "Plaintiffs . . . have a legitimate interest in exploring whether it would have been feasible for Uber to implement sooner the expanded background checks that it is now conducting." Dkt. 6935 at 5. *Gilead* clarifies that Uber had no duty to adopt the most comprehensive version of a background check policy that was "feasible" at any given point in time. Whether Uber did so or not therefore has no bearing on the actual questions at issue in the bellwether cases—i.e., whether Uber was negligent or whether the Uber App was defective. Accordingly, as a matter of California law (which governs in *A.R.*), the question of feasibility is irrelevant. The same was already true under Texas law (which governs in *QLF 0001*). *See Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 93 (Tex. 1974) ("[T]he manufacturer is not charged by the law nor expected by the purchasing public to design every part to be the best that science can produce or to guarantee that no harm will befall the user."). This is all the more true because, as Uber argued in its PTO 8 brief—and this Court apparently agreed— the feasibility of the June 2026 policy at earlier times is irrelevant as a factual matter in both *QLF 001* and *A.R.*, because it is undisputed that the new policy would not have caused a different outcome with respect to the driver in either case.

An animating concern behind the *Gilead* holding is that turning every corporate change into a litigation issue would stifle innovation and ultimately harm the public. *Id.* at 18. In other words, tort law should not transform later innovation into proof that a prior product or system was defective. This is critical as a matter of public policy. Otherwise, every product update, safety enhancement, or revised screening protocol would become an admission that the prior version was unsafe – even where, as here,

Ms. Nilles testified at her deposition that background screening policies are inherently iterative. Here, Plaintiffs are attempting to extract testimony for the very purpose foreclosed by *Gilead* – to turn every development or innovation at Uber into an issue in this MDL (even if it occurred years after a Plaintiff's alleged injuries).

Along the same lines, Ms. Nilles's deposition testimony already bears on the question of whether future policy changes were feasible. She answered that question by testifying that Uber does the best it can do to keep bad actors off the platform, but that it is constantly innovating and iterating in response to legal, operational, and technological changes. Plaintiffs' argument that they need yet *more* discovery on this topic is inherently intertwined with their flawed argument that Ms. Nilles's testimony was somehow untruthful. That argument is meritless for all the reasons above, and the Court should reconsider and vacate the July 30 Order on this additional ground.

For all of these reasons, the Court should reconsider and vacate its July 30 Order compelling Uber to produce documents and 30(b)(6) deposition testimony regarding whether it would have been feasible for Uber to adopt at an earlier time the expanded background check policy it ultimately adopted in June 2026.

**III.    THE COURT SHOULD STAY THE JULY 30 ORDER PENDING RECONSIDERATION AND RULE 72 APPEAL TO JUDGE BREYER RATHER THAN REQUIRE UBER TO DIVERT RESOURCES FROM AN IMMINENT BELLWETHER TRIAL TO UNDERTAKE DISCOVERY THAT HAS NO BEARING ON THAT TRIAL.**

Uber also requests that the Court issue a stay of the July 30 Order while it considers Uber's motion for reconsideration ***and*** to allow Uber to seek Judge Breyer's review of the order pursuant to Fed. R. Civ. P. 72 (if needed). In deciding whether to stay the effect of a magistrate's discovery order pending review, courts consider four criteria: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *Alvarez v. Larose*, No. 3:20-CV-00782-DMS-AHG, 2020 WL 5632659, at *2 (S.D. Cal. Sept. 21, 2020). Each factor supports a stay.

***First***, Uber has made a showing of likelihood of success on the merits with respect to its motion for reconsideration (and any necessary appeal to Judge Breyer stemming therefrom) by demonstrating that

the discovery sought by Plaintiffs and compelled by the Court is not relevant. As set forth above, that is because (1) Ms. Nilles's testimony has been taken out of context and she never suggested that Uber would never implement safety enhancements, with respect to background checks or otherwise, in the future, meaning that discovery into when she learned of the new policy has no possible use for impeachment; and (2) neither California nor Texas law imposes a duty to adopt, at every prior point in time, the most expansive screening configuration that might later become technically and operationally "feasible," and, indeed, the contrary rule would improperly convert every subsequent safety enhancement into evidence that the prior version was unsafe or defective. The irrelevance of the compelled discovery is particularly stark in light of the parties' imminent October trial in *QLF 001*. The June 2026 background check policy was adopted years after the incident at issue in *QLF 001*, and it is undisputed that the policy changes would not have disqualified the driver in that case. Thus, while the parties are devoting substantial resources to preparing for an approaching bellwether trial, the July 30 Order would require Uber to divert those resources to documents and a 30(b)(6) deposition concerning a later policy change that would not have altered the facts of that very trial. That disconnect further demonstrates both the limited relevance and the disproportionality of the compelled discovery—and weighs strongly in favor of preserving the status quo while the Court considers reconsideration and, if necessary, Judge Breyer reviews the Order under Rule 72. Moreover, this Court need not be absolutely convinced that Uber will prevail on the merits of its Rule 72 objections in order to grant a stay. *See Alvarez*, 2020 WL 5632659, at *2 (noting that "it would be unfair to penalize [the objecting party] for . . . providing a rushed preview of the objections in their Motion to Stay, when [the objecting party's] ability to seek a stay at all might be jeopardized if they wait[ed] too long to do so").

**Second**, Uber has "made a showing of irreparable injury if the stay is not granted[.]" *Id.* As explained above, absent a stay, Uber will be forced, within days, to produce patently irrelevant discovery and sit for yet another burdensome deposition, or to stipulate to an inaccurate, yet damaging, fact that will materially undermine Uber's position at trial. As explained above, the "feasibility" framing itself prejudices Uber because that is not a simple yes or no question.

In addition, resolution of both Uber's motion for reconsideration and its forthcoming Rule 72 motion for review will almost certainly extend beyond the current production deadlines. Accordingly,

without a stay, Uber would be "effectively deprived of its ability to seek review of the Discovery Order," which itself constitutes irreparable harm. *Canchola v. Allstate Ins. Co.*, No. 8:23-CV-00734-FWS-ADS, 2025 WL 1377817, at *3 (C.D. Cal. Apr. 17, 2025). As courts routinely recognize, this reality not only constitutes irreparable harm; *it alone warrants a stay* because once discovery is produced—or substantial compliance efforts are undertaken—the right to review is effectively lost. *See, e.g.*, *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 2309972, at *1 (C.D. Cal. May 10, 2021) (granting a stay because without it, "Defendants would be deprived of any meaningful right to reconsideration of the discovery order by this Court"); *Alvarez*, 2020 WL 5632659, at *2 (granting stay despite lack of showing of likelihood of success on the merits where absence of stay "would effectively deprive Respondents of their right to reconsideration of the Discovery Order by the district judge altogether").

*Third*, there is no evidence that "granting of the stay would substantially harm the other parties[.]" *Alvarez*, 2020 WL 5632659, at *2. Courts regularly hold that plaintiffs do not suffer substantial harm based on a short delay in obtaining discovery while a discovery order is reviewed and that any potential harm from a stay can be addressed, if necessary, through corresponding adjustments to case deadlines. *See, e.g.*, *Canchola*, 2025 WL 1377817, at *3 (collecting cases). This is particularly true here given that Plaintiff has identified no pressing need for the discovery at issue in the July 30 Order.

*Fourth*, "the granting of the stay would serve the public interest." *Alvarez*, 2020 WL 5632659, at *2. Staying a discovery order that would cause burden and expense pending review satisfies this criterion "because the public interest favors 'just, speedy, and inexpensive determination of every action[.]'" *Canchola*, 2025 WL 1377817, at *4 (citing Fed. R. Civ. P. 1).

In short, all four factors favor a stay while this Court considers Uber's motion for reconsideration and Judge Breyer considers forthcoming objections to the July 30 Order generally.

## CONCLUSION

For the foregoing reasons, Uber requests that the Court: (1) grant Uber's Motion for Reconsideration and vacate the July 30 Order requiring Uber to produce discovery relating to the June 2026 background check policy change; and (2) stay the effect of the July 30 Order pending resolution of this motion and the forthcoming request for review pursuant to Fed. R. Civ. P. 72.

DATED: August 13, 2026                    Respectfully submitted,


                                          /s/ Laura Vartain Horn
                                          Laura Vartain Horn (SBN 258485)
                                          **KIRKLAND & ELLIS LLP**
                                          555 California Street, Suite 2700
                                          San Francisco, CA 94104
                                          Telephone: (415) 439-1625
                                          laura.vartain@kirkland.com

                                          Allison M. Brown (Admitted *Pro Hac Vice*)
                                          **KIRKLAND & ELLIS LLP**
                                          2005 Market Street, Suite 1000
                                          Philadelphia, PA 19103
                                          Telephone: (215) 268-5000
                                          alli.brown@kirkland.com

                                          Jessica Davidson (Admitted *Pro Hac Vice*)
                                          **KIRKLAND & ELLIS LLP**
                                          601 Lexington Avenue
                                          New York, NY 10022
                                          Telephone: (212) 446-4800
                                          jessica.davidson@kirkland.com

                                          *Attorneys for Defendants*
                                          UBER TECHNOLOGIES, INC.,
                                          RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND STAY OF ORDER
Case No. 3:23-md-03084-CRB (LJC)