[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' RESPONSE TO UBER'S STATEMENT REGARDING BELLWETHER SELECTION AND REMAND** |
| This Document Relates to:<br><br>All cases | Judge:  Honorable Charles R. Breyer<br>Date:    August 14, 2026<br>Time:    11:00 AM<br>Ctrm.:   6-17th Floor (zoom) |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.  Bellwether Issues ................................................................................................. 1

    A.  The bellwether pool should comprise cases that raise important common issues, but Uber's proposal does not aim at that goal. ........................... 1

    B.  Uber's unprecedented request for a settlement guardian ad litem aims to promote Uber's interests, not protect Plaintiffs. .................................. 2

    C.  As explained in the CMCS, there is no basis to appoint a "Fraud Special Master". ................................................................................................... 4

    D.  The Court should stick to the trial time allocation it has repeatedly ordered and decide overall trial lengths based on the needs of each case. .......... 4

    E.  The Court should resolve the overarching questions about the bellwether and remand processes and order the parties to meet and confer on specific schedules. ............................................................................................... 5

II.  Remand Issues ...................................................................................................... 5

    A.  As Plaintiffs proposed, the date of filing should be a factor in selecting priority remand cases. ............................................................................... 5

    B.  Uber claims to want to remand and try cases but resists the imperatives of Rule 1 and Rule 26(b), which govern all litigated cases, as well as the principles of 28 U.S.C. § 1407. ............................................................... 6

III.  Uber misrepresents Plaintiffs' proposal concerning settlement negotiations, which (by agreement) is not yet before the Court. ........................................................ 7

CONCLUSION .................................................................................................................... 7

**INTRODUCTION**

Rather than address bellwether and remand issues in the Joint Case Management Statement (ECF 7020), Uber instead said it would file "two briefs" "this week." *Id.* at 9. Conveniently, the two briefs became one brief, filed minutes after the CMCS appeared on the docket, evidently designed to deprive the Court of Plaintiffs' full response before the CMC, and so delay progress on these important issues. To keep the ball moving forward, Plaintiffs respectfully submit this short response to the points Uber makes in its brief, without reiterating arguments already made in the CMCS. In short, the Court should adopt Plaintiffs' proposal for bellwether and remand processes (submitted at ECF 7020-1), subject to additional meeting and conferring on specific schedules.

**ARGUMENT**

**I.      Bellwether Issues**

   **A.      The bellwether pool should comprise cases that raise important common issues, but Uber's proposal does not aim at that goal.**

Plaintiffs agree that bellwethers should be designed to test important negligence theories. But Uber's commitment is lip service. Uber's actual proposal does nothing to target those kinds of cases. In contrast, Plaintiffs picked 15 cases (ECF 7020-1) that aim to try negligence theories, in general because law enforcement involvement makes it less likely that Uber will contend the sexual assault did not occur, but also due to other case-specific facts that put the focus on Uber's alleged negligence (Plaintiffs can provide such details if the Court would like to consider them). This follows on Plaintiffs proposing, over Uber's strenuous objection, to try *Jane Doe QLF 0001*, a case that does not involve any vicarious liability theories.

*First*, Uber says that Plaintiffs seek to "erase Uber from any involvement in the bellwether selection." But Plaintiffs proposed 15 cases (and are happy to explain them in detail). And they invited Uber to make a counterproposal. 28 pages of CMC statement and 23 pages of briefing later, Uber has not identified a single case. Now is the time to propose cases and get moving (especially because Uber complains that any trial date in a new bellwether case must not be too soon).

*Second*, Uber says that the bellwether pool must target only three specific types of Uber's taxonomy of sexual assault cases. In the CMCS, Plaintiffs explained why Uber's incessant focus

on its taxonomy makes no sense and is in fact counterproductive. By focusing on incidents that the company deems of lower severity, Uber aims to make the trials as much as possible about whether the incident occurred and its severity, rather than about whether Uber was negligent. Uber's inexplicable dismissal of what was proven to have happened to Brianna Mensing as "non-sexual touching" only proves the point.[1] As does Uber's insistence that *Jane Doe QLF 001* involved only "oral penetration" and so was not the right kind of "penetration" case to be a bellwether.

The point is not that a "lower" severity incident cannot be a good bellwether. Rather, the point is that Plaintiffs have proposed selecting cases designed to be good bellwethers based on the facts of those cases. Uber, in contrast, has proposed no cases, but only an artificial filter that by design and effect excludes many good bellwethers from consideration.

*Third*, Uber says that to find informative negligence cases, the Court must first exclude most cases with vicarious liability theories. But why? That a case has a vicarious liability theory (or not—Uber, of course, denies the validity of any such theories) says nothing one way or the other about the nature, validity, or representativeness of the case's negligence theories. And litigating such cases is valuable because they shed light on the validity of such theories. We can walk (try negligence) and chew gum (explore Uber's vicarious liability) at the same time.

*Fourth*, Uber says that Plaintiffs' proposal requires Uber to "concede that an alleged sexual assault occurred." Statement at 17. It does not. Uber can maintain any defense it wants. The question before the Court, however, is which cases to pick. And it makes sense to pick cases where that defense at least has a chance of playing a less prominent role, thus spending the Court's and the MDL's time most productively.

### B. Uber's unprecedented request for a settlement guardian ad litem aims to promote Uber's interests, not protect Plaintiffs.

Uber says that the Court needs to appoint a guardian at litem "to protect the interests of bellwether Plaintiffs and ensure they received appropriate information about resolution opportunities or otherwise have a neutral representative who can convey their interests as they move through the trial process." Statement at 8. The Court should not be fooled about whose interests

---

[1] Uber may cease referring to the assaults in *Dean* and *Mensing* as "alleged." Both assaults were proven to juries, and Uber has not preserved any challenge to those findings on appeal.

Uber advocates for here and what those interests are.

Nothing prevents Uber from trying to settle cases. Uber may make a settlement offer to any plaintiff it chooses, bellwether or other. Any written settlement offers must be conveyed to the client. *See*, *e.g.*, Cal. R. Prof. Cond. 1.41(a)(2), 1.8.7. If the client wants to accept the settlement, she may. So, there is no problem to solve here.

Uber's proposal is a ruse. Uber doesn't need a path to settle cases—it can already do that. Uber is upset if bellwethers are interested in settling only as a part of a transparent global process rather than a secret pick-off procedure. What Uber wants to do is to force bellwether plaintiffs to sit in a mediation room with Uber's lawyers, before a mediator of Uber's choice, and be bound to Uber's onerous mediation terms to never reveal any settlement offers and not to speak with Plaintiffs' Leadership. The aim is to intimidate and bully and to derail the bellwether process, the integrity of which Uber spends so many pages extolling.

How does Uber justify this proposal? Not by citing any federal statute or rule. Only by pretending that Plaintiffs lack their own retained lawyers and are instead the minors or incompetent persons Rule 17(c) contemplates. *Cf. Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038-39 (9th Cir. 2021) ("[C]ourts have generally acknowledged a civil litigant's Fifth Amendment due process right to retain and fund the counsel of their choice.").

Uber hints at unexplained and unsubstantiated conflicts of interest, but the Court could ask: who is it who might have a conflict here? Lawyers with contingency-fee arrangements ensuring they win or lose along with their clients? *See In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *4 (N.D. Cal. Dec. 6, 2017) ("[C]ontingent fees are good for clients[.]"). Or a defense firm that gets paid only if the litigation continues? Perhaps Plaintiffs are not the ones in need of a "neutral representative" to make sure their interests are not set aside in favor of litigation imperatives.

Unsurprisingly, Uber has zero authority for the extraordinary procedure it proposes. In *Burress v. Blake*, 2016 WL 11475018 (E.D. Tex. Dec. 1, 2016), the plaintiff "disappeared" before trial, and so her own "attorneys s[ought] the appointment of a guardian ad litem" given her inability to make the "ultimate decision with respect to any settlement offers" that the ethical rules assigned

to her. *Id.* at *1. *Cf. Rangel v. Adtalem Global Educ., Inc.*, 2021 WL 980623, at *2 (W.D. Tex. Mar. 16, 2021) (refusing to rely on *Burress* even where a plaintiff "had only been missing … for several weeks"). And in *In re World Trade Ctr. Disaster Site Litig.*, 769 F. Supp. 2d 650, 657 (S.D.N.Y. 2011), the court found an actual conflict of interest relating to whether a sub-group of plaintiffs was eligible for an aggregate settlement and so appointed new counsel (not a guardian ad litem). *Id.* at 657. Indeed, the lawyer at issue at one point *agreed* that an "independent special counsel" was required. *Id.* at 651. The circumstances there bear no resemblance to the self-interested and deceptive request Uber makes here.

**C.    As explained in the CMCS, there is no basis to appoint a "Fraud Special Master"**

Plaintiffs explained in detail in the CMCS why Uber's claims for fraud are overblown and largely unsubstantiated. *See* CMCS at 7-9. They will not rehash those arguments here.

All that is new here is Uber's proposal that its Fraud Special Master and related processes play a gate-keeping role in deciding which cases are eligible to be bellwethers or remand candidates. Statement at 3. The Court should consider asking Uber whether the company has resolved cases that it has alleged—here or in the JCCP—involve fraud. And whether the inventory settlements that Uber has reached involved the gate-keeping process that Uber proposes before litigating any cases any further. The Court can evaluate for itself whether Uber's proposal is disingenuous.

**D.    The Court should stick to the trial time allocation it has repeatedly ordered and decide overall trial lengths based on the needs of each case.**

Uber asks the Court to presumptively allocate 45 hours of trial time, including closing arguments, and allocate the time 50/50. The total amount of time required should be decided on the needs of each case. The Court has repeatedly explained the good reasons why closing arguments should be excluded from trial time. And the Court has repeatedly allocated trial time 60/40 on the basis that it is Plaintiffs that bear the burden of proof. Uber offers no new arguments or basis for the Court to reconsider its prior orders. *Cf.* N.D. Cal. L.R. 7-9(b) (setting out bases for motion for reconsideration). Uber cites two new cases, but neither shows error in the Court's previous decisions. *See Jensen v. Pratt*, 2021 WL 12312167, at *2 (D. Ariz. Sept. 2, 2021) (not even clear

anyone asked for an allocation other than 50/50, and offering no reasoning); *Bejamin v. Sparks*, 986 F.3e 332, 344-45 (4th Cir. 2021) (affirming only that trial time is within the trial court's discretion, and rejecting an appeal where the plaintiff never objected to the time limits before trial).

**E.    <u>The Court should resolve the overarching questions about the bellwether and remand processes and order the parties to meet and confer on specific schedules.</u>**

Uber objects to Plaintiffs' proposed schedules for bellwether trials and pretrial proceedings. Statement at 18-19. Some of Uber's objections are well-taken (reply briefs can probably be dispensed with). Others are not. But everything depends on the parameters of the processes the Court adopts. For example, Uber would likely agree that a bellwether picked next week can get to trial much earlier in 2027 than one picked after an extended process of case selection based on taxonomy criteria and "fraud" vetting. And Plaintiffs would likely agree that the processes Uber proposes will take more time to identify cases, and therefore more time to get to trial. So, the Court should decide how the bellwether process is going to work (and perhaps when the first trial will be), and then instruct the parties to meet and confer on remaining scheduling issues.

**II.    <u>Remand Issues</u>**

**A.    <u>As Plaintiffs proposed, the date of filing should be a factor in selecting priority remand cases.</u>**

In the CMCS, Plaintiffs explained that their remand proposal groups cases "according to the nature of the alleged assault and relevant state-law issues, with additional priority within each tier given to cases that have been pending longest and involve earlier alleged incidents." CMCS at 5. To be sure, Plaintiffs' remand proposal is designed to encourage global resolution. Experience in Uber sexual assault litigation teaches that cases with the most significant injuries and serious legal claims are the ones that drive resolution.

Uber does not want that encouragement (for obvious reasons). But rather than attack Plaintiffs' proposal on the merits, Uber slings mud: "Plaintiffs apparently no longer care about giving claimants whose cases have been pending longest their day in court." Statement at 21. But again, as Plaintiffs proposed, long-pending cases should receive "additional priority." CMCS at 5. So, Uber just ignores what Plaintiffs are saying.

**B.**  **Uber claims to want to remand and try cases but resists the imperatives of Rule 1 and Rule 26(b), which govern all litigated cases, as well as the principles of 28 U.S.C. § 1407.**

In the CMCS, Plaintiffs explained that their remand proposal groups strikes a proportional balance: giving each side substantial case-specific discovery while still processing cases efficiently towards remand. *See* CMCS at 5. Plaintiffs proposed reasonable bounds of case-specific discovery that are proportional to the needs of these thousands of cases, *see* Fed. R. Civ. P. 26(b)(1), and which, in addition to the PFS and DFS discovery the Court has already ordered in every case, will fairly and efficiently prepare the many cases for trial, *see* Fed. R. Civ. P. 1.

Uber *does* want discovery before remand—only it wants that discovery to be (1) focused exclusively on "fraud" and resolution and (2) to be conducted secretly under the auspices of its preferred "Fraud Special Master" and Settlement Special Master. *See* Statement at 3 (inventory must pass Uber's "fraud investigations" before any case can be included in remand); *id.* at 21 ("Uber agrees that the parties should exchange preliminary written and oral discovery prior to remand in order to determine whether a case can be resolved[.]"). It makes far more sense to spend the time doing the actual, Court-supervised discovery needed to prepare cases for trial. And, yes, that includes depositions of Uber, because Uber has case-specific information that has not yet been discovered (and which the bellwethers have taught Plaintiffs how to find).

Uber's have-it-both-ways request also undermines the efficiency principles underlying Section 1407. Uber cites MDLs that completed case-specific discovery on remand, which, to be sure, sometimes happens in MDL (and sometimes does not). But Uber does not propose immediate remand. Rather, Uber wants to use the MDL to do the discovery it wants to do—test for "fraud" and for settlement—but not actually progress cases towards trial, which is the point of "pretrial proceedings." *Uber Techs., Inc. v. J.P.M.L.*, 131 F.4th 661, 666 (9th Cir. 2025).

Finally, it bears some emphasis, though obvious, that once a case is remanded, it is out of this Court's hands. Nothing prevents a judge overseeing a remanded case from ordering additional discovery if good cause is shown.

### III. Uber misrepresents Plaintiffs' proposal concerning settlement negotiations, which (by agreement) is not yet before the Court.

As reported in the CMCS, the parties agreed to continue negotiating settlement mechanics and to not raise those issues at tomorrow's CMC. *See* CMCS at 28-29 ("The Parties continue to meet and confer regarding this topic …."). The parties have exchanged drafts of a proposed order on settlement issues and aimed to continue discussions.

Despite that agreement, Uber attacks Plaintiffs for "suggest[ing] that Uber should be barred from negotiating any settlements with an individual Plaintiff's own lawyers and should instead be required to include Plaintiffs' Lead Counsel in all settlement discussions …." Statement at 13. This assertion is false. Plaintiffs' proposal includes no such terms. Rather, Plaintiffs have proposed that Uber share certain *information* with Plaintiff's Leadership (which is exactly what the Court ordered the parties to meet and confer about).

Uber has Plaintiffs' proposal in writing and knows what it says. And Uber agreed that it was premature to raise these issues with the Court. The parties will continue to discuss and raise these issues with the Court when those discussions have concluded.

### CONCLUSION

For these reasons, the Court should adopt Plaintiffs' proposals for bellwether and remand tracks.

PL'S RESPONSE RE:
BELLWETHER SELECTION & REMAND
CASE NO. 3:23-MD-03084

Dated: August 13, 2026                     Respectfully submitted,

                                           By: /s/ Sarah R. London
                                               Sarah R. London (SBN 267083)

                                           **GIRARD SHARP LLP**
                                           601 California St., Suite 1400
                                           San Francisco, CA 94108
                                           Telephone: (415) 981-4800
                                           slondon@girardsharp.com

                                           By: /s/ Rachel B. Abrams
                                               Rachel B. Abrams (SBN 209316)

                                           **PEIFFER WOLF CARR KANE
                                           CONWAY & WISE, LLP**
                                           555 Montgomery Street, Suite 820
                                           San Francisco, CA 94111
                                           Telephone: (415) 426-5641
                                           Facsimile: (415) 840-9435
                                           rabrams@peifferwolf.com

                                           By: /s/ Roopal P. Luhana
                                               Roopal P. Luhana

                                           **CHAFFIN LUHANA LLP**
                                           600 Third Avenue, 12th Floor
                                           New York, NY 10016
                                           Telephone: (888) 480-1123
                                           Facsimile: (888) 499-1123
                                           luhana@chaffinluhana.com

                                           *Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: August 13, 2026              By:    /s/ Andrew R. Kaufman
                                           Andrew R. Kaufman