Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br><br>This Document Relates to:<br><br>ALL CASES | Case No.: 3:23-MD-03084-CRB<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER
Case No. 3:23-md-03084-CRB (LJC)

Uber respectfully requests that this Court partially vacate the July 30, 2026 Order entered by Judge Cisneros, Dkt. 6935, which requires Uber to make a misleading concession for Plaintiffs to use at trial or bear the burden of presenting a corporate witness on the "feasibility" of adopting its June 2026 background check policy enhancements earlier.[1] The July 30 Order reduces a nuanced, context-dependent question of feasibility to a binary admission; rests on a clearly erroneous reading of Uber's Global Head of Safety Hannah Nilles's testimony concerning Uber's continually evolving safety processes; and is contrary to the California Supreme Court's recent decision *Gilead Tenofovir Cases*, S283862, 2026 WL 2223748, at *23 (Cal. Aug. 3, 2026), and the underlying policy against penalizing subsequent safety improvements.

The July 30 Order imposes on Uber the Hobson's choice of either "stipulat[ing] for the purpose of the next two bellwether trials that the expanded background check policy it adopted in 2026 would have been feasible at the time of the incidents in question for those trials," or submitting to a burdensome deposition as to why "such earlier adoption would not have been feasible." But Uber cannot stipulate to the former, because "feasibility" is not a simple yes or no question. Ms. Nilles testified in June 2025 that Uber is constantly looking to iterate and improve its safety processes, but its ability to do so is limited by legal and operational, in addition to technical, concerns.

Uber should not be coerced into an admission that is incomplete and would be used against it at trial on pain of an onerous 30(b)(6) deposition, particularly on an issue that is irrelevant. The California Supreme Court's August 3, 2026 decision in *Gilead Tenofovir Cases*, S283862, 2026 WL 2223748, at *23 (Cal. Aug. 3, 2026), makes clear that feasibility is not a relevant inquiry here, raising policy concerns that make the Hobson's choice even more improper. That concern is particularly salient in the safety context, where policies and practices are necessarily iterative and evolve as environmental circumstances change. And it would be doubly disproportionate to compel such a deposition while the parties are rushing to prepare for trial in *QLF 001*, where the new background check policy is indisputably irrelevant.

Judge Cisneros appears to have based her ruling in large part on a misleading claim by Plaintiffs that Ms. Nilles testified at her June 2025 deposition that the then-existing policy was the best Uber could

---

[1] Judge Cisneros also required Uber to provide a declaration from Uber's Global Head of Safety Hannah Nilles, which Uber provided to Plaintiffs earlier this evening.

do (for all time) and that she was not aware of any upcoming changes. That is not what Ms. Nilles said. Rather, Ms. Nilles testified that given Uber's *screening processes* around the globe (which include not just background checks but also other screening measures such as identity verification and insurance validation)—including in countries outside the U.S. where background checks are not possible—she generally felt Uber was doing all it could to prevent bad actors from gaining access to the platform. She also testified that Uber is "always looking to improve" its background screening processes, Nilles 6/30/25 Dep. 256:10-14 (Ex. 1). While Plaintiffs suggest that Ms. Nilles falsely testified that she was not aware at the time of any forthcoming changes to the background check policy, Ms. Nilles did not learn of Uber's intention to adopt the June 2026 policy changes until approximately March 2026, almost a year after her deposition. *See* Declaration of Hannah Nilles ¶ 5 (Ex. 2). Thus, nothing about Ms. Nilles's testimony is inconsistent with Uber's later adoption of additional safety measures. Rather, her testimony reflected her judgment, at the time, that Uber's then-existing global screening processes were the best it could do to keep bad actors off the platform, while she also acknowledged that Uber's safety work is iterative: "technology has changed," what Uber can do "over the years has changed," and Uber continues "to improve" and "monitor" its systems. Nilles 6/30/25 Dep. 103:4-12 (Ex. 1).

In short, two things can be true here: Ms. Nilles believed Uber was doing all that it could do in June 2025, based upon her work and experience, to prevent bad actors from gaining access to the platform, *and* Uber will continue to iterate on safety because it believes its work on safety is never done. For these reasons, the July 30 Order was "clearly erroneous" and "contrary to law" and should be partially reversed. Fed. R. Civ. P. 72(a).

## ARGUMENT

### I. THE ORDER RESTS ON A CLEARLY ERRONEOUS READING OF MS. NILLES'S TESTIMONY AND AN ARTIFICIALLY BINARY VIEW OF FEASIBILITY.

The Court should vacate the July 30 Order, which adopts Plaintiffs' erroneous interpretation of the deposition record and improperly forces Uber to choose between making an admission that will be used against it at the next two bellwether trials or submitting to a burdensome, irrelevant, and disproportionate deposition. Read properly, Ms. Nilles's deposition underscores why the Court's relief

was improper. Uber cannot stipulate that it was "feasible" to adopt the 2026 background check policy at an earlier time, because feasibility is not a simple yes or no proposition. In the abstract, almost any screening rule is technically feasible, even if it would violate the law: Uber could instruct a vendor to disqualify drivers based on any number of criteria, including criteria that would be arbitrary, overinclusive, legally problematic, unsupported by safety data, or operationally unworkable. The legally meaningful question is not whether a command could be sent to a vendor, but whether a national screening change was reasonable and appropriate in light of the full safety, operational, technological, legal, regulatory, and evidentiary environment at the relevant time. Accordingly, Uber should not be coerced into making either a damaging admission or submitting to a burdensome deposition.[2]

Additionally, Plaintiffs characterized Ms. Nilles as testifying that Uber's then-existing background check policy was the "best [Uber] can do to keep bad actors off the platform," Nilles 6/30/25 Dep. 252:12-16 (Ex. 1), by misleadingly isolating a snippet of the testimony. That isolated statement cannot be understood apart from the context in which it was made. Ms. Nilles was discussing Uber's *global screening processes*, including screening in countries outside the United States where background checks may not be available. *See id.* 247:20-252:16. Critically, the discussion was not directed at the efficacy or adequacy of U.S. criminal background check practices. Rather, it concerned the efficacy of overall screening globally and the potential organizational benefits of consolidating non-U.S. screening resources—specifically EMEA and APAC—under a U.S.-based team. The U.S. screening processes she was describing were broader than criminal background checks alone: they encompassed the various measures Uber uses to screen individuals seeking access to the platform, including identity verification, social security number validation, driver's license and vehicle document review, and motor vehicle record checks. *See id.* 100:13-102:1; 144:14-20. Accordingly, it is a clear error to treat that testimony as

---

[2] The experts Uber consults in connection with its background check policy agree that the question of "feasibility" is nuanced and requires proper balancing of multiple factors. For example, many experts "emphasized that years of safe participation on the Uber platform should be weighed alongside past offenses when evaluating existing drivers." These experts confirmed that "public safety and economic justice" are all relevant to the construction of a sound background screening policy, and that weighing these considerations is consistent with the goal of "build[ing] the safest platform." Uber, *A New Standard for Background Checks* (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/.

an assessment of whether Uber's U.S. background-check policies were deficient or additional U.S. screening measures were feasible. Ms. Nilles's testimony reflected her overall judgment, based on the information, technology, and circumstances at the time, about Uber's global efforts to prevent bad actors from accessing the platform. It was not a representation that Uber had exhausted every technically conceivable modification to its background check policies or that its safety processes could never change.

The rest of Ms. Nilles's testimony makes that distinction clear. She repeatedly explained that Uber's safety and screening work is iterative: Uber is "always looking to improve" its background screening processes, *id*. 256:5-14; "investigating what the best options are" with respect to screening, *id.* 190:21-191:8; and "constantly looking for ways to reduce sexual assault," *id.* 277:22-278:9. That context matters because Plaintiffs' contrary reading transforms Ms. Nilles's point-in-time assessment into a representation that Uber's safety practices were fixed permanently—that "the best Uber could do" in June 2025 meant the best Uber could ever do. That is not what she testified. Nor does a subsequent policy change retroactively alter the meaning of her testimony or establish that Uber's earlier screening practices were unsafe, unreasonable, or deficient. That is the nature of iterative safety work.

In short, the full context of Ms. Nilles's testimony makes clear that Uber regards safety as iterative, not static. The Order's feasibility inquiry ignores that nuance and instead seeks to coerce Uber into a misleading and damaging admission based in part on the misinterpretation advanced by Plaintiffs. For this reason alone, the Order is clearly erroneous.

## II.    THE ORDER'S REQUIREMENT OF A FEASIBILITY INQUIRY IS CONTRARY TO THE LAW AND POLICY CONFIRMED IN *GILEAD*.

The California Supreme Court's recent opinion in *Gilead Tenofovir Cases*, S283862, 2026 WL 2223748 (Cal. Aug. 3, 2026), also underscores why the ruling was erroneous. In *Gilead*, the Court affirmed that a company has no duty under California law to bring a safer product to market when the pre-existing product is not unreasonably dangerous. The holding in *Gilead* directly undermines the rationale Judge Cisneros adopted as to why discovery into the June 2026 background check policy is relevant: that "Plaintiffs . . . have a legitimate interest in exploring whether it would have been feasible for Uber to implement sooner the expanded background checks that it is now conducting." Dkt. 6935 at

5. *Gilead* clarifies that Uber had no duty to adopt the most comprehensive version of a background check policy that was "feasible" at any given point in time, highlighting the irrelevance of the discovery at issue. The question here is whether Uber was negligent or whether the Uber App was defective, not whether Uber adopted the most comprehensive policy possible. Accordingly, as a matter of California law, the question of feasibility is irrelevant.[3] This is all the more true because, as Uber argued in its PTO 8 brief—and Judge Cisneros apparently agreed—the feasibility of the June 2026 policy at earlier times is irrelevant as a factual matter in both *QLF 001* and *A.R.*, because it is undisputed that the new policy would not have caused a different outcome with respect to the driver in either case.

An animating concern behind the *Gilead* holding is that turning every corporate change into a litigation issue would stifle innovation, harming the public. *Id.* at \*18. This is critical as a matter of public policy: tort law should not transform later innovation into proof that a prior product or system was defective. Otherwise, every product update, safety enhancement, or revised screening protocol would become an admission that the prior version was unsafe—even where, as here, Ms. Nilles testified at her deposition that background screening policies are inherently iterative. Plaintiffs are attempting to extract testimony through precisely the kind of hindsight reasoning *Gilead* cautions against—i.e., to turn every development or innovation at Uber into an issue in this MDL.

The deposition record also already establishes the relevant point: Uber does the best it can do to keep bad actors off the platform, but continues constantly innovating and iterating in response to legal, operational, and technological changes. Plaintiffs' argument that they need yet *more* discovery on this topic is inherently intertwined with their flawed argument that Ms. Nilles's testimony was somehow untruthful. That argument is meritless for all the reasons above.

### CONCLUSION

For the foregoing reasons, this Court should vacate the July 30 Order insofar as it requires Uber to produce discovery regarding the June 2026 background check policy. The Court should also stay the deadlines in the July 30 Order pending its consideration of these Objections.

---

[3] The same was already true under Texas law (which governs in *QLF 0001*). *See Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 93 (Tex. 1974).

DATED: August 13, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER
Case No. 3:23-md-03084-CRB (LJC)