# EXHIBIT F

RECEIVED

AUG 14 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO DR. INDIRA HENARD,<br><br>Non-Party Movant, | Case: 1:26-mc-00117<br>Assigned To : Reyes, Ana C.<br>Assign. Date : 8/14/2026<br>Description: Misc. |

*Underlying Action*

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br>(Pending in the United States District Court for the Northern District of California) |

**MOTION TO MODIFY SUBPOENA TO NON-PARTY**
**DR. INDIRA HENARD**

Non-party Dr. Indira Henard ("Dr. Henard"), through her undersigned counsel, hereby moves pursuant to Federal Rule of Civil Procedure 45(d)(3) for entry of an order modifying the subpoena issued to her by the Plaintiffs in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB, pending in the United States District Court for the Northern District of California.

The grounds supporting this motion are set forth in the Memorandum of Law in Support of Motion to Modify Subpoena and the Declarations of Dr. Indira Henard and Nadira Clarke, and exhibits submitted herewith.

Counsel for the parties discussed this motion on Thursday, August 13, 2026, as required by Local Civil Rule 7(m), but could not resolve their differences.

Dr. Henard respectfully requests oral argument on this Motion.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Rebecca Mandel*

Rebecca Mandel (DC Bar No. 976808)
**HOGAN LOVELLS**
**CADWALADER US LLP**
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-5600
rebecca.mandel@hlc.com

*Counsel for Dr. Indira Henard*

*OF COUNSEL:*

Nadira Clarke
**HOGAN LOVELLS**
**CADWALADER US LLP**
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-5600
nadira.clarke@hlc.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of August, 2026, I caused a copy of the foregoing Motion to Modify Subpoena to Non-Party Dr. Indira Henard, including the memorandum, declarations, and exhibits in support thereof, to be served by electronic mail and first class mail upon:

Alexandra Walsh, Esq.
**ANAPOL WEISS LLP**
14 Ridge Square, NW, 3rd Floor
Washington, D.C. 20016
awalsh@anapolweiss.com

Marlene Goldenberg, Esq.
Samantha Hoefs, Esq.
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
14 Ridge Square, NW, 3rd Floor
Washington, D.C. 20016
mgoldenberg@nighgoldenberg.com
shoefs@nighgoldenberg.com

*/s/ Rebecca Mandel*
Rebecca Mandel
*Counsel for Dr. Indira Henard*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO DR. INDIRA HENARD,<br><br>Non-Party Movant, | Miscellaneous Case No. _____ |

*Underlying Action*

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br>(Pending in the United States District Court for the Northern District of California) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY SUBPOENA TO NON-PARTY DR. INDIRA HENARD**

Rebecca Mandel (D.C. Bar No. 976808)
**HOGAN LOVELLS**
**CADWALADER US LLP**
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-5600
rebecca.mandel@hlc.com

*Counsel for Dr. Indira Henard*

*OF COUNSEL:*

Nadira Clarke
**HOGAN LOVELLS**
**CADWALADER US LLP**
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-5600
nadira.clarke@hlc.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1
FACTUAL BACKGROUND ........ 3
I. DR. HENARD PERFORMS CRITICAL ADVOCACY FOR SURVIVORS OF SEXUAL VIOLENCE ........ 3
II. INITIAL NEGOTIATIONS WITH PLAINTIFFS' COUNSEL REGARDING THEIR BROAD SUBPOENA SUGGESTED POSSIBLE COMPROMISE. ........ 4
III. PLAINTIFFS' COUNSEL ABRUPTLY EXPANDED THEIR DEMANDS WHILE OFFERING TO DROP DEPOSITION ENTIRELY IF DR. HENARD REQUESTED UBER NOT RAISE HER OR DCRCC AT TRIAL. ........ 6
IV. DR. HENARD CONTINUED ATTEMPTS AT REASONABLE COMPROMISE TO NO AVAIL. ........ 7
LEGAL STANDARD ........ 9
ARGUMENT ........ 9
I. THE SUBPOENA IS UNDULY BURDENSOME TO DR. HENARD. ........ 10
A. Document Production Should be Limited to Dr. Henard's Communications with Uber. ........ 10
B. Deposition Should be Limited to a Half-Day. ........ 15
II. PLAINTIFFS' OFFER TO WITHDRAW THE DEPOSITION UNDERSCORES THE SUBPOENA'S UNREASONABLENESS. ........ 16
III. PLAINTIFFS COULD OBTAIN THE DISCOVERY FROM OTHER SOURCES. ........ 18
CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Recs. LLC v. Lime Grp. LLC*,
No. 06 CV 5936 KMW, 2011 WL 781198 (S.D.N.Y. Mar. 4, 2011) ....................................11

*In re Centrix Fin., LLC*,
No. CIV.A. 12-6471 AET, 2012 WL 6625920 (D.N.J. Dec. 18, 2012) ..............................9, 18

*Davis v. Nanny*,
No. 3:13-CV-1260-SMY-RJD, 2018 WL 656597 (S.D. Ill. Feb. 1, 2018) .............................16

*Dell Inc. v. DeCosta*,
233 F. Supp. 3d 1 (D.D.C. 2017) ..........................................................................................13

*Ford Motor Co. v. Versata Software, Inc.*,
316 F. Supp. 3d 925 (N.D. Tex. 2017) ..................................................................................12

*In re Lazaridis*,
865 F. Supp. 2d 521 (D.N.J. 2011) .........................................................................................16

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
269 F.R.D. 360 (S.D.N.Y. 2010) ...........................................................................................11

*Millenium TGA, Inc. v. Comcast Cable Comms., LLC*,
286 F.R.D. 8 (D.D.C. 2012).................................................................................................8, 18

*N.C. Right to Life, Inc. v. Leake*,
231 F.R.D. 49 (D.D.C. 2005)...........................................................................................7, 13, 17

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
659 F. Supp. 3d 54 (D.D.C. 2023) ....................................................................................10, 11, 13

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984) ...................................................................................................9

*In re O'Hare*,
Misc. A. No. H-11-0539, 2012 WL 1377891 (S.D. Tex. Apr. 19, 2012)................................13

*Phillips & Cohen, LLP v. Thorpe*,
300 F.R.D. 16 (D.D.C. 2013)...................................................................................................10

*RIMSTAT, Ltd. v. Hilliard*,
207 B.R. 964 (D.D.C. 1997) ......................................................................................................9

*SEC v. Kapoor*,
No. 23-24903-CV, 2024 WL 5264454 (S.D. Fla. Oct. 9, 2024)....................11

*In re Subpoena to Rape Abuse and Incest National Network*,
1:24-mc-0073-ACR Dkt. No. 1-1 (D.D.C. May 31, 2024)....................14

*In re Subpoena to Rape Abuse and Incest National Network*,
1:24-mc-0073-ACR Dkt. No. 13 (D.D.C. April 15, 2025)....................14

*Washington v. Thurgood Marshall Acad.*,
230 F.R.D. 18 (D.D.C. 2005)....................11

*Watts v. SEC*,
482 F.3d 501 (D.C. Cir. 2007)....................9, 18

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018)....................17

*Wyoming v. U.S. Dep't of Agric.*,
208 F.R.D. 449 (D.D.C. 2002)....................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)-(2)....................18

Fed. R. Civ. P. 45.................... *passim*

## PRELIMINARY STATEMENT

Dr. Indira Henard ("Dr. Henard"), a nationally-recognized advocate for victims of sexual violence and Chief Executive Officer ("CEO") of the D.C. Rape Crisis Center ("DCRCC"), is forced to seek relief from this Court regarding a facially overbroad subpoena issued in the above-captioned sprawling multidistrict litigation ("MDL") against Uber Technologies, Inc. ("Uber") that has been pending in the Northern District of California since 2023. Plaintiffs' counsel in the underlying case served Dr. Henard with a subpoena demanding a deposition and production of Dr. Henard's entire "custodial file," without limitation as to time, subject matter, or relevance – all on short order, in advance of a trial currently scheduled to commence on October 5, 2026. The subpoena relates to work Dr. Henard has performed in collaboration with Uber on various safety initiatives.

Dr. Henard promptly engaged with Plaintiffs' counsel to negotiate a reasonable scope; however, despite multiple meet-and-confer efforts, Plaintiffs' counsel repeatedly increased their demands, and the parties were unable to reach a negotiated resolution. The relief Dr. Henard seeks is modest: Dr. Henard requests that the Court (1) narrow the document requests, which impose an undue burden on Dr. Henard and set an impossible timeline for compliance and (2) limit Dr. Henard's deposition to a half-day or order a deposition on written questions, with such questions reasonable in number and targeted in scope.

The subpoena should be modified for three primary reasons. *First*, the subpoena on its face, and in later proposals by Plaintiffs' counsel, imposes an undue burden on Dr. Henard. Dr. Henard is an extremely busy individual who has no personal staff dedicated to support her in matters relating to IT, and due to delays in critical grant funding, is currently personally having to both staff shifts at DCRCC and spearhead fundraising efforts to keep DCRCC from having to

make critical cuts to survivor services. Declaration of Dr. Indira Henard ("Henard Decl.") at ¶¶ 9-12. Plaintiffs' counsel's demand that Dr. Henard, on an accelerated timeline, conduct a sweeping search for every document that contains the word "Uber" adds unreasonable obligations upon Dr. Henard's already-overburdened schedule supporting survivors of sexual violence. And a full day deposition is not only disproportionate to Dr. Henard's small role as a third-party consultant to Uber, it unduly strains Dr. Henard's limited time.

*Second*, Plaintiffs' counsel's offer to relieve Dr. Henard of the burden of deposition entirely – but *only if* Dr. Henard sends a letter to Uber requesting that Uber not reference its work with her or DCRCC at the upcoming trial – improperly injects Dr. Henard into Plaintiffs' counsel's dispute with Uber, while simultaneously revealing that Plaintiffs' counsel do not need the discovery they demand. This *quid pro quo* "offer" seeks to use Dr. Henard as a pawn in Plaintiffs' counsel's litigation strategy by threatening Dr. Henard with unreasonable discovery demands that will simply disappear if Dr. Henard arms Plaintiffs' counsel in their fight against Uber. Dr. Henard is an independent non-party individual who is willing to provide relevant factual evidence to the parties' dispute subject to a reasonable schedule and scope. She stands by the important safety related work that she has done with Uber. The kind of gamesmanship demonstrated by Plaintiffs' counsel poses a distinct risk of chilling the important advocacy work of leaders in the non-profit space and the organizations they serve.

*Third*, the information Plaintiffs' counsel seeks is readily obtainable from more convenient, less burdensome sources, namely from Uber itself. Plaintiffs' counsel's decision to burden an individual CEO of a non-profit rather than seek this information from the party defendant supports Dr. Henard's request to modify the overbroad subpoena.

Dr. Henard does not seek to obstruct legitimate discovery through this motion. From the outset, Dr. Henard has made clear her willingness to produce her email communications with Uber—a compromise to which Plaintiffs' counsel initially appeared receptive—and sit for a reasonably tailored deposition or respond to written questions. But Dr. Henard cannot comply with an unreasonable subpoena that demands additional document collection and a lengthy deposition, on a timeline that is simply not feasible for her demanding work schedule. For these reasons, the Court should exercise its broad discretion under Rule 45 to modify the subpoena as requested herein.

## FACTUAL BACKGROUND

### I. DR. HENARD PERFORMS CRITICAL ADVOCACY FOR SURVIVORS OF SEXUAL VIOLENCE.

Dr. Henard is an accomplished leader in the non-profit space, whose life's work has been focused on directly supporting survivors of sexual violence. *See* Henard Decl. ¶¶ 2-5. Dr. Henard holds multiple degrees, including a Doctorate of Social Work from the University of Southern California, and has participated in multiple prestigious post-doctoral fellowships. *Id.* at ¶ 2. She currently serves as the CEO of DCRCC, the oldest rape crisis center in the country, at which she often will take a role in providing direct services to survivors of sexual violence. *Id.* at ¶ 3. Dr. Henard also is active outside DCRCC, teaching multiple courses as an adjunct faculty member and serving as a member of multiple boards of directors and advisory boards. *Id.* at ¶¶ 4-6. One of the many boards upon which Dr. Henard currently serves is Uber's Safety Advisory Board ("the Board"). *Id.* at ¶ 6. Dr. Henard serves on the Board in her individual capacity, and not as a representative of DCRCC or any other organization. *Id.* As part of the Board, Dr. Henard attends meetings and receives updates on matters including sexual assault and violence prevention, safety initiatives being considered by the company, and updates relevant to safety at Uber. *Id.* at ¶ 7.

She, along with the rest of the Board, will also sometimes provide ad hoc feedback on policies and products being considered by Uber and attend events and focus groups. *Id.*

Dr. Henard's current work schedule could not be more overwhelming. Her teaching obligations for her two courses, one starting August 17 and the other September 8, will occupy approximately 12 hours a week of work combined. *Id.* at ¶ 4. She has consistent obligations to the multiple boards she serves upon, with several of those organizations holding key events in the coming months that will require her close attention. *Id.* at ¶ 5. And her daily work as CEO of DCRCC has her performing work at all levels of the organization, at all hours of the day and night. *Id.* at ¶¶ 10-12. In addition to her role as CEO, for which she has no dedicated support staff to assist her, Dr. Henard is on the front lines of survivor support at DCRCC, serving as a responder on DCRCC's nightly survivor support hotline from 6:00 pm to 7:00 am every day and periodically as a DCRCC hospital advocate for twelve-hour shifts. *Id.* at ¶¶ 9, 12. Additionally, DCRCC is undergoing a funding crisis due to delays from DCRCC's main funding sources, necessitating Dr. Henard to spearhead an emergency campaign to raise funds and engage new potential donors through personal and social media outreach. *Id.* at ¶ 11. Even before the subpoena at issue in this litigation, these work obligations placed an immense physical and emotional strain on Dr. Henard. *Id.* at ¶ 15.

## II. INITIAL NEGOTIATIONS WITH PLAINTIFFS' COUNSEL REGARDING THEIR BROAD SUBPOENA SUGGESTED POSSIBLE COMPROMISE.

On June 24, 2026, Plaintiffs' counsel served Dr. Henard with a subpoena in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB (N.D. Cal.) (hereinafter "Uber MDL"), seeking deposition testimony and production of documents. *See* Ex. A ("Subpoena"). The Subpoena is not limited to any specific timeframe, propounds 17 topics for deposition and three document requests, and is materially identical to subpoenas served on four

other non-parties around the same time. *Id*. One of the document requests requires Dr. Henard to produce "a substantially complete production of the deponent's custodial file" without limitation as to time, subject matter, topic, or relevance to the claims or defenses in the Uber MDL. *Id.* The Subpoena commands Dr. Henard to collect, review, and produce the entire "custodial file," and appear for a deposition by July 28, 2026. *Id.*

On July 7, 2026, Dr. Henard, through counsel, reached out to Plaintiffs' counsel to discuss the Subpoena. Declaration of Nadira Clarke ("Clarke Decl.") at ¶ 3. During this initial outreach, Dr. Henard's counsel explained the challenges Dr. Henard faced at work and expected difficulties with document collection. *Id.* Dr. Henard's counsel proposed the idea of deposition by written questions, but Plaintiffs' counsel noted they were likely to demand an oral deposition. *Id.* Nonetheless, Plaintiffs' counsel assured Dr. Henard's counsel that they were sensitive to burdening Dr. Henard. *Id.* On July 8, 2026, Counsel for Dr. Henard offered to set a tentative deposition date for Friday, August 28, 2026; Plaintiffs' counsel agreed to hold that date. *Id.* at ¶ 4.

On July 17, 2026, Dr. Henard's counsel met and conferred with Plaintiffs' counsel in a good faith attempt to clarify the burdensome scope of the Subpoena's document request for the "custodial file." *Id.* at ¶ 5. Plaintiffs' counsel initially informed Dr. Henard's counsel that a search for emails with the domain name "@uber.com" would be sufficient, even going so far as to indicate that Dr. Henard need not abide by the ESI protocol and could produce "print-outs" of the emails (an implicit acknowledgement that Dr. Henard's production might be small). *Id.* at ¶ 6. Plaintiffs' counsel also requested that Dr. Henard share preliminary search count estimates of emails with the domain name "@uber.com." *Id.* Dr. Henard reasonably relied on this proposal and began the process of collecting her communications with the assistance of a third-party vendor retained by counsel. *Id.*

## III. PLAINTIFFS' COUNSEL ABRUPTLY EXPANDED THEIR DEMANDS WHILE OFFERING TO DROP DEPOSITION ENTIRELY IF DR. HENARD REQUESTED UBER NOT RAISE HER OR DCRCC AT TRIAL.

Plaintiffs' counsel subsequently changed their tune on a July 24, 2026 call. At Plaintiffs' counsel's request for preliminary search counts, counsel for Dr. Henard preliminarily reported that she had identified an estimated 200 potentially responsive emails with the domain name "@uber.com." *Id.* at ¶ 7. This estimate reflected total number of emails, not all documents, including "family member" attachments. *Id.* Expressing disappointment with the number of potentially responsive emails, Plaintiffs' counsel suggested they may require a broader sweep, including internal emails discussing Uber. *Id.* Plaintiffs' counsel also orally proposed an entirely new approach: that Dr. Henard could be relieved from the deposition entirely if Dr. Henard would send Uber a letter requesting that Uber not reference Dr. Henard at trial. *Id.* Plaintiffs' counsel committed to reducing this proposal to writing. *Id.*

On Wednesday, July 29, 2026, counsel for Plaintiffs proposed that Dr. Henard "produce all responsive docs with Uber domain name by Tuesday [August 4, 2026]," a deadline that was not referenced or required by the Subpoena, and that Plaintiffs would "alert [counsel] asap whether [they] need further production." *See* Ex. B at 4; Clarke Decl. ¶ 8. Dr. Henard's counsel responded that she would respond to the proposal and flagged that Dr. Henard had already begun the process of collecting and reviewing emails with the assistance of a third-party electronic discovery vendor. Ex. B at 3; Clarke Decl. at ¶ 8.

On July 30, 2026, Plaintiffs' counsel sent a letter documenting the previous oral offer of relief from deposition in exchange for Dr. Henard making "a written request to Uber to refrain from presenting any evidence or argument about her or the D.C. Rape Crisis Center as part of its defense strategy in upcoming trials – and to share that written request with [Plaintiffs' counsel]." Ex. C at 1-2. Alternatively, if the proposal were not accepted by Dr. Henard, the July 30 Letter

sought to impose a deadline requiring "all responsive documents" to be produced "72 hours" prior to the date of the deposition, despite the Subpoena only requiring Dr. Henard to bring documents "to the deposition." Ex. C at 2; Ex. A at 1.

## IV. DR. HENARD CONTINUED ATTEMPTS AT REASONABLE COMPROMISE TO NO AVAIL.

In a letter dated August 3, 2026, Dr. Henard declined Plaintiffs' counsel's proposal to send the requested letter to Uber, opting to stand by her willingness to produce documents and sit for a deposition under reasonable parameters. Ex. D; Clarke Decl. at ¶ 10. Dr. Henard took this position because she has no interest in being caught in the middle of Plaintiffs' counsel's litigation strategies and prefers simply to offer her relevant information through reasonable discovery. Dr. Henard also stated her proposed document production and deposition parameters, acceded to Plaintiffs' counsel's request to produce 72 hours before the date of deposition, and memorialized her formal objections. *Id.*

Plaintiffs' counsel responded that same day, offering to provide counsel for Dr. Henard briefing from the Uber MDL about "Uber's litigation strategy that have necessitated the Subpoenas" and asking what "modifications to our proposal [to provide a written request to Uber] would potentially incline your clients to consider our proposal so that they might avoid the 'burden' you assert and focus on the important work of their organizations." Ex. B at 1. Plaintiffs' counsel followed with a letter the next day, which included a demand for (1) a full seven-hour deposition; (2) "rolling productions" rather than the 72-hour advance production timeline they had last proposed; and (3) "internal emails referencing 'Uber'" in addition to emails with the @uber.com domain name. Ex. E; Clarke Decl. at ¶ 12. The letter also discounted the hardship faced by Dr. Henard in connection with complying with Plaintiffs' counsel's demands. *See id.*

Dr. Henard's counsel met and conferred with Plaintiffs' counsel once again on August 6, 2026, where no progress was made. Clarke Decl. at ¶ 13. Plaintiffs' counsel rejected a shorter deposition length and demanded that Dr. Henard make a production on Wednesday, August 12, 2026, of all documents, including internal emails discussing Uber. *Id.* Dr. Henard's counsel explained that she could not meet this demand given her current time constraints. *Id.* Plaintiffs' counsel ended the call stating that they intended to raise this dispute with the Uber MDL Court if Dr. Henard did not comply with their demands. *Id.* The next day, Dr. Henard's counsel sent a letter to Plaintiffs' counsel confirming that Dr. Henard could not meet Plaintiffs' counsel's production demand and withdrawing her prior proposed deposition date. Ex. F; *id.* at ¶ 14. Despite noting that Dr. Henard was still open to find a compromise, Dr. Henard's counsel requested Plaintiffs' counsel meet and confer pursuant to Local Civil Rule 7(m) for the United States District Court for the District of Columbia. *Id.*

Plaintiffs' counsel ignored Dr. Henard's counsel's request to meet and confer. *Id.* at ¶ 15. Instead, Plaintiffs' counsel attempted to initiate the process to raise this dispute to the Uber MDL Court by serving their portion of a joint letter brief.[1] *Id.* Dr. Henard's counsel once again requested to meet and confer on August 11, 2026, after which Plaintiffs' counsel agreed to meet again on August 13, 2026. *See* Ex. G. Despite Dr. Henard's counsel's further attempts to negotiate a compromise in good faith, the parties remained at an impasse, thereby necessitating this motion. Clarke Decl. at ¶ 17.

[1] Dr. Henard's counsel has consistently made clear to Plaintiffs' counsel that they do not believe that the Uber MDL Court currently has jurisdiction over this dispute and that Dr. Henard does not consent to the jurisdiction of the Uber MDL Court.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 vests this Court with "the authority to quash a subpoena that compels production of privileged documents or subjects the subpoenaed party to undue burden." *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). In determining "whether to quash or modify a subpoena" under Rule 45, this Court "has broad discretion." *RIMSTAT, Ltd. v. Hilliard*, 207 B.R. 964, 970 (D.D.C. 1997) (citations modified); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) ("A trial court has broad, but not unlimited, discretion in evaluating the circumstances of a case when considering quashing a subpoena on grounds of oppressiveness."). Courts must be "sensitive to the costs imposed on third parties when considering a motion" to modify and must consider "whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Millenium TGA, Inc. v. Comcast Cable Comms., LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (*quoting Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007)) (citation modified); *see also In re Centrix Fin., LLC,* No. CIV.A. 12-6471 AET, 2012 WL 6625920, at *6 (D.N.J. Dec. 18, 2012) ("A non-party is afforded greater protection from discovery than a normal party.").

## ARGUMENT

Dr. Henard's request is modest. Dr. Henard does not ask for this Court to quash the Subpoena in its entirety. As Dr. Henard's counsel has consistently emphasized to Plaintiffs' counsel throughout this process, Dr. Henard asks only that the deposition and document production be reasonably tailored given Dr. Henard's limited non-party role, the expedited pace at which Plaintiffs seek the discovery, and the real-world burden imposed on Dr. Henard by the Subpoena. For the reasons discussed below, this Court should exercise its discretion pursuant to Rule 45 to modify the unreasonable and burdensome document and deposition requests of the Subpoena.

## I. THE SUBPOENA IS UNDULY BURDENSOME TO DR. HENARD.

"The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena." *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013) (citation modified); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv) ("[T]he court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."). Courts in this district consider a variety of factors, including "whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Thorpe*, 300 F.R.D. at 18 (citation omitted). "Non-party status is one of the factors the court uses in weighing the burden of imposing discovery," and "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in the Rule 45 inquiry." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452-53 (D.D.C. 2002); *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 60 (D.D.C. 2023) (citation modified). Here, the burden placed on Dr. Henard's strained resources by the Subpoena's overbroad requests and Plaintiffs' counsel's insistence on an unreasonably accelerated production schedule outweighs the likely benefit, particularly because Dr. Henard has already offered to provide relevant discovery.

### A. Document Production Should be Limited to Dr. Henard's Communications with Uber.

The Subpoena's document request for "a substantially complete production of the deponent's custodial file" (*see* Ex. A), without limitation as to time, subject matter, or relevance,

is facially unreasonable. *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) (narrowing broad subpoena request which had "no limiting principle whatsoever"). Indeed, a litigant is not entitled under Rule 45 to subject a non-party to an overbroad subpoena or compel a non-party to produce irrelevant documents. *See, e.g., SEC v. Kapoor*, No. 23-24903-CV, 2024 WL 5264454, at *4 (S.D. Fla. Oct. 9, 2024) ("Overbreadth, therefore, can justify the quashing of a subpoena because it can be unduly burdensome to subject a non-party to a remarkably overbroad subpoena"); *see also In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d at 59 (quashing document requests that "bear little apparent connection" to the underlying litigation).

Here, despite numerous attempts by Dr. Henard and initial reasonable proposals by Plaintiffs' counsel, they have not narrowed their Subpoena in a single respect, demanding every internal document with the word "Uber." But Dr. Henard's communications directly with Uber are the best evidence of the work that she did with Uber and the most reasonable interpretation of Dr. Henard's "custodial file." *See* Ex. A. Plaintiffs' counsel have also not articulated what they mean by Dr. Henard's "internal communications," given that Dr. Henard was subpoenaed in her personal capacity only, or provided any basis for why they have a substantial need for any such "internal" communications, instead appearing to be on a fishing expedition. *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 269 F.R.D. 360, 364 (S.D.N.Y. 2010) (modifying subpoena to require production of non-party's communications with MDL defendant but not requiring non-party "to produce either its *internal* communications or any internal work product") (emphasis added); *see also Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 781198, at *3 (S.D.N.Y. Mar. 4, 2011) (holding that magistrate judge's order requiring non-party to "produce their internal communications was clearly erroneous" in large part because of "the burden of collecting, searching, reviewing, and producing all internal communications").

This interest in internal communications also appears to be new, as Plaintiffs' counsel previously represented to the Uber MDL Court[2] that they needed leave to issue subpoenas to Dr. Henard and nonprofit advocacy organizations simply to "hear from these third parties directly" about "what safety information Uber did, and did not, share with them; what advice Uber did, and did not, receive from them; and what 'safety' efforts these third parties did or did not endorse." Uber MDL, Dkt. No. 6510 at 1. Notably, these types of information are all ascertained from Dr. Henard's *direct* communications with Uber, not her "internal" documents. Regarding Dr. Henard specifically, Plaintiffs represented they wished to "explore Ms. Henard's knowledge of Uber's sexual assault rate and efficacy of Uber's safety features." *Id.* at 3. Whether and what Dr. Henard had from Uber, again, will be shown in Dr. Henard's proposed production of her communications with Uber.

Moreover, the search proposed by Plaintiffs' counsel – running "Uber" across Dr. Henard's personal emails without regard to time period and then reviewing and producing all hits within a matter of a few weeks – is unduly burdensome. *See Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 933–34 (N.D. Tex. 2017) ("Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests 'seek all

---

[2] Plaintiffs' counsel have intimated to Dr. Henard's counsel that objections to the scope and relevance of the subpoenas to Dr. Henard and the non-profits would be "rejected" by the Uber MDL Court based on motions and briefing evidently engaged in by the parties prior to Dr. Henard's involvement. Ex. E at 2. As an initial matter, Dr. Henard was not party to those proceedings nor given the opportunity to speak on her own behalf. For avoidance of doubt, burden to Dr. Henard and the other non-parties was explicitly not litigated during the briefing on subpoenas filed in the Uber MDL. The Court stated that its order permitting service of the deposition notices was made "without prejudice to any arguments the recipient entities might raise in response." Uber MDL, Dkt. No. 6533. Moreover, nothing in the MDL briefing that Dr. Henard has since reviewed indicates that Plaintiffs' counsel sought or received permission to subpoena documents at all, let alone to seek such a broad document production. *See* Uber MDL, Dkt. No. 6510 (parties' joint briefing on issuing non-party subpoenas); Dkt. No. 6533 (granting permission to serve *deposition* notices on third-party advocacy organizations).

documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date'; '[t]he requests are not particularized'; and '[t]he period covered by the requests is unlimited.'") (*citing In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012)). Courts in this district have squarely recognized that small, non-profit organizations suffer a disproportionate burden when subpoena requests force them to sacrifice critical resources and work time to comply with a party's document demands. *See N.C. Right to Life, Inc.*, 231 F.R.D. at 51–52 ("It is a great burden to require an organization to sacrifice such a large proportion of its staff for several weeks.") (citation modified). *See also In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. at 60-61 (quashing an "open document request[]" which could lead to a non-profit having to review and redact possibly "thousands of documents" as it constituted an undue burden) (*quoting Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017)).

These considerations are greatly exacerbated for an individual like Dr. Henard. Dr. Henard has no personal assistant or support staff, let alone any personal expertise in, document or data management. *See* Henard Decl. at ¶ 9. DCRCC, which is not itself subject to the Subpoena, can offer Dr. Henard no help in this regard. *Id.* Indeed, DCRCC is so short-staffed that Dr. Henard, its CEO, must be on call for nightly support hotline duty and pick up twelve-hour shifts as a DCRCC hospital advocate. *Id.* at ¶ 12. That direct service work is in addition to her formal duties as CEO, which now include managing a funding crisis and emergency fundraising campaign given recent delays in DCRCC's main grant funding sources, *id.* at ¶ 11, her ongoing teaching obligations, which will take up approximately 12 hours a week, and her other duties relating to her service on multiple boards. *Id.* at ¶¶ 4-6.

Dr. Henard's strained time limits her availability to stop everything she is doing and work with outside counsel and vendors on an expedited basis to collect and evaluate her "internal" files and to help outside counsel identify any sensitive or confidential materials, including sensitive information from the non-subpoenaed entity, DCRCC, and her other board positions. *Id.* at ¶ 14. Should any document collection and production broader than communications with Uber be required, Dr. Henard would need to be available to outside counsel to assess confidential materials from DCRCC and her other board engagements. *See id.* Such work would be in addition to the time Dr. Henard already needs to spend to prepare for deposition, not to mention time to address her actual job responsibilities at DCRCC and beyond, including her critical on-the-ground work supporting survivors of sexual violence. *Id.* at ¶¶ 10-13. Nor can Dr. Henard otherwise outsource document collection logistics given that she was served the Subpoena in her individual capacity. *Id.* at ¶ 9.

Plaintiffs' counsel have suggested that their unreasonable document scope and accelerated timeline is acceptable because other non-parties in this action have been subjected to demands that "far eclipse" what they are requesting of Dr. Henard. *See* Ex. E, at 2–3. Putting aside how any document request could possibly "eclipse" the Subpoena's initial request for Dr. Henard's full custodial file, the example cited by Plaintiffs' counsel, their subpoena of the Rape Abuse and Incest National Network ("RAINN"), instead demonstrates why their request in this instance is so unreasonable. On May 31, 2024, Plaintiffs' counsel filed a motion to compel RAINN to comply with a non-party subpoena it served on April 16, 2024, and to transfer enforcement of the subpoena to the Uber MDL. *See In re Subpoena to Rape Abuse and Incest National Network*, No. 1:24-mc-0073-ACR, Dkt. No. 1-1, at 2 (D.D.C. May 31, 2024). However, according to the parties' filings, RAINN did not make substantive progress on its document production until November 26, 2025,

six months after the motion to compel was filed and seven months after the subpoena was served. *See id.* at Dkt. No. 13 at 1 (noting that custodial productions were still occurring). RAINN did not certify substantial completion of all productions and depositions until April 2025—**almost a full year** after Plaintiffs served their subpoena. *See id.* Plaintiffs' demand that Dr. Henard, as an individual, accomplish in weeks what took a large nonprofit organization nearly a year to do is fundamentally unreasonable and underscores the undue burden imposed by the Subpoena's artificially accelerated timeframe.

Dr. Henard's proposed production of her communications with Uber provides Plaintiffs with the most relevant discovery and comports with what Plaintiffs told the MDL court they need. In view of the failure of Plaintiffs' counsel to articulate a compelling need for Dr. Henard's "internal communications," let alone what that means given she is an individual, and the considerable additional burden that such a scope would place on non-party Dr. Henard, the Rule 45 factors weigh in favor of modifying the Subpoena.

### B. Deposition Should be Limited to a Half-Day.

Not only have Plaintiffs' counsel not accommodated Dr. Henard on document collection through any form of compromise, they also have not circumscribed the burdens of their deposition demand. Plaintiffs' counsel's insistence that Dr. Henard must sit for a full seven-hour deposition is unduly burdensome and disproportionate in light of Plaintiffs' needs in this case.

There is nothing in the record to suggest that Dr. Henard is needed for a full seven hours. It should not take that long for Plaintiffs to "hear[ ] from [Dr. Henard] directly" to "explore Ms. Henard's knowledge of Uber's sexual assault rate and efficacy of its safety features" as they have previously represented. Uber MDL, Dkt. No. 6510 at 1, 3. A half-day deposition allows Plaintiffs'

counsel to meaningfully probe these issues without unduly increasing the burden on Dr. Henard.[3] Indeed, courts routinely impose limits on deposition length, particularly for non-party witnesses with discrete areas of testimony. *See, e.g., Davis v. Nanny*, No. 3:13-CV-1260-SMY-RJD, 2018 WL 656597, at *2 (S.D. Ill. Feb. 1, 2018) (limiting deposition of "any non-party witnesses" to be "two hours on the record"). The only explanation provided by Plaintiffs' counsel to justify their demand for a full day of testimony is uncertainty about how much time *Uber* will take questioning Dr. Henard at the deposition. Clarke Decl. at ¶ 13. This is not a proper basis for refusing to limit their own time and, in any event, should be addressed directly by Plaintiffs' counsel with Uber, not Dr. Henard.

Given the crushing restraints on Dr. Henard's time, the ongoing funding emergency at DCRCC, and her other commitments, forcing her to sit for a whole day of questioning would be significantly burdensome to Dr. Henard, not to mention DCRCC's operations. *See* Henard Decl. at ¶ 17. Dr. Henard has already offered to reasonably accommodate a disruption to her work schedule to be deposed; however, a full day's absence from work in the midst of DCRCC's ongoing funding crisis imposes a tremendous burden on Dr. Henard and DCRCC (which is not subject to the Subpoena but stands to be impacted by Dr. Henard's time away). *Id.* at ¶ 10.

## II. PLAINTIFFS' OFFER TO WITHDRAW THE DEPOSITION UNDERSCORES THE SUBPOENA'S UNREASONABLENESS.

When balancing the burden and scope of a subpoena, courts will often factor in whether a party is utilizing the subpoena improperly and may actually be seeking information for purposes other than uncovering relevant evidence for the underlying case. *In re Lazaridis*, 865 F. Supp. 2d 521, 527 (D.N.J. 2011). Courts do so to prevent Rule 45 subpoenas from being wielded as tools

[3] From a logistical perspective, a half-day deposition could also offer more flexibility regarding scheduling.

that improperly discourage non-parties from participating in important societal activities lest they risk "subjecting themselves to severe scrutiny and onerous discovery requests." *N.C. Right to Life, Inc.*, 231 F.R.D. at 51-52 (in the context of amicus brief filings). Indeed, courts have recognized that non-party advocacy groups in a "morally and politically consequential case," such as the underlying litigation here, are subjected to an "additional burden" where a party forces an organization into "the 'Hobson's choice' of retreating from the public square or defending its position while creating a precedent (for the first time) that may open its internal deliberations to public scrutiny, or at least, ill-informed judicial scrutiny." *Whole Woman's Health v. Smith*, 896 F.3d 362, 375 (5th Cir. 2018).

Rather than treating Dr. Henard as the non-party fact witness she is and negotiating reasonable scope in light of Dr. Henard's burden, Plaintiffs' counsel have improperly attempted to put Dr. Henard in the middle of the litigation. This tactic came to a head when Plaintiffs' counsel offered Dr. Henard an inappropriate choice: provide Plaintiffs' counsel with a letter they can presumably wield against Uber for strategic litigation purposes at trial and in the public sphere or be subject to a subpoena whose terms Plaintiffs' counsel have refused to narrow in a reasonable way. Plaintiffs' proposal was additionally problematic because it demanded that Dr. Henard also make this request on behalf of DCRCC, even though DCRCC is not subject to the Subpoena. Ex. C at 2. Such a tactic sets a dangerous precedent, especially regarding a non-profit leader working in sensitive and socially important spaces, and risks chilling the vital public interest work Dr. Henard does for private companies, public interest groups, and survivors of sexual violence. *See Whole Woman's Health*, 896 F.3d at 375 ("[non-party] has been challenged by the plaintiffs to either produce internal communication documents or withdraw its witness. This looks like an act of intimidation"). It also reveals that Plaintiffs' counsel do not really need Dr. Henard's testimony;

they just want to conscript Dr. Henard into their litigation strategy. Dr. Henard stands ready to meet her discovery obligations and seeks only to be treated reasonably and fairly as a non-party; she has no wish to become enmeshed in the underlying litigation.

## III. PLAINTIFFS COULD OBTAIN THE DISCOVERY FROM OTHER SOURCES.

Finally, the already significant burden faced by Dr. Henard is made even more unnecessary by the fact that Plaintiffs have another, more convenient and less burdensome way to obtain the relevant information they seek. In evaluating whether a subpoena imposes undue burden on a non-party, courts in this Circuit must consider "whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Watts*, 482 F.3d at 508 (quoting Fed. R. Civ. P. 26(b)(1)-(2)); *see also Millenium TGA, Inc., LLC*, 286 F.R.D. at 11.

This principle carries particular force where, as here, the subpoena is directed at a non-party while the information sought is readily available from a party to the litigation. *See Centrix Fin., LLC*, 2012 WL 6625920, at *6 ("[A] non-party is afforded greater protection from discovery than a normal party."). Indeed, Plaintiffs' counsel could obtain the information, and especially the most relevant documents they seek, directly from Uber. Uber possesses its own copies of relevant documents relating to the "Driving Change" Initiative, the Safety Advisory Board, and any other partnership activities with individual advocates, like Dr. Henard. Plaintiffs' counsel's decision to burden an individual rather than pursue this information from the party defendant is not proportional to the needs in this case. *See Watts*, 482 F.3d at 508.

## CONCLUSION

As set forth above, Dr. Henard is not asking this Court to fully quash the Subpoena. Plaintiffs' counsel have represented they have relevant questions to ask Dr. Henard, and Dr. Henard is prepared to answer them. However, Dr. Henard respectfully requests the Court modify the Subpoena to strike the unduly burdensome request for Dr. Henard to produce her full "custodial

file." *See* Ex. A. Instead, the Court should require Dr. Henard to produce email communications she had with Uber, as Plaintiffs' counsel initially proposed and Dr. Henard acted upon. In addition, given Dr. Henard's limited availability and demanding work obligations, Dr. Henard requests that the Court limit the length of deposition to a half-day, or such other length as the Court deems reasonable, or alternatively order deposition upon written questions, reasonably limited in number and targeted in scope to the specific safety-related engagement of Uber with Dr. Henard.

For the foregoing reasons, Dr. Henard respectfully requests that the Court enter an order pursuant to Federal Rule of Civil Procedure 45 modifying the Subpoena's document requests as described herein.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Rebecca Mandel*

Rebecca Mandel (DC Bar No. 976808)
**HOGAN LOVELLS CADWALADER US LLP**
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-5600
rebecca.mandel@hlc.com

*Counsel for Dr. Henard*

*OF COUNSEL:*

Nadira Clarke
**HOGAN LOVELLS CADWALADER US LLP**
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-5600
nadira.clarke@hlc.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO DR. INDIRA HENARD,<br><br>Non-Party Movant, | Miscellaneous Case No. _____ |

*Underlying Action*

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br>(Pending in the United States District Court for the Northern District of California) |

**DECLARATION OF DR. INDIRA HENARD**

Pursuant to 28 U.S.C. § 1746, I, Dr. Indira Henard, hereby declare:

1. I have personal knowledge of the information set forth in this Declaration, which I submit to the best of my present knowledge and understanding, in support of my motion (the "motion") to modify the subpoena (the "Subpoena") issued to me by Plaintiffs in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB (N.D. Cal.) (hereinafter "Uber MDL").

2. For over 30 years, I have worked to help survivors of sexual assault and violence, both on the ground in my community and on the national stage. I hold a Master of Social Work from The Catholic University of America and a Doctorate of Social Work from the University of Southern California. My educational experience also includes fellowships with Duke University's Ralph Bunche Institute, the Congressional Truman Fellowship, the Charles Hamilton Houston Fellowship at Georgetown University Law Center, the Starr International Fellowship at Nelson Mandela University, and the Shannon Institute at the Wilder Foundation.

3. I currently serve as the Chief Executive Officer ("CEO") of the D.C. Rape Crisis Center ("DCRCC"). DCRCC is the oldest rape crisis center in the country, and the only one currently serving Washington, D.C. A core part of DCRCC's work is to run a 24/7 crisis intervention hotline and provide 24/7 advocacy services, in which I often play direct roles to support survivors. DCRCC also helps empower survivors and supports them as they regain control of their lives following sexual violence and participates in advocacy initiatives across the country as well.

4. In addition, I serve as an adjunct faculty member at Howard University and the University of Nevada, where I teach courses on social work. This semester, I am teaching a course at Howard University School of Social Work, which begins August 17 and will require me to spend approximately 8 hours a week teaching, preparing course materials, and being available for students. I am also teaching a course at the University of Nevada starting September 8, which will require me to spend approximately 4 hours a week teaching, preparing course materials, and being available for students remotely.

5. I also currently serve as a member on multiple boards of directors as well as advisory boards, including, for example, the Girl Scouts Nation's Capital Women's Advisory Board, Academy on Violence and Abuse Board, Women's Bar Association Foundation, and the DC Social Transformation Network under the DC Bar Foundation, for which I serve as co-chair. Several of these organizations have major upcoming events in the fall which require my participation as a board member. I also serve as a Trustee for Wheaton College-MA and a Trustee of the Federal City Council, both of which have and will require a large time commitment, especially given ongoing struggles in higher education and an upcoming mayoral transition in Washington, D.C.

6. In addition, I serve on the Uber Safety Advisory Board (the "Board"). I do so in an individual capacity, and not as a direct representative of DCRCC.

7. My work for the Board includes, among other things, attending biannual meetings, one in the fall and one in the spring. At those meetings, and in updates provided at other times during the year, my experience is that Uber updates the Board on matters including sexual assault and violence prevention, safety initiatives being considered by the company, and other information relevant to safety at Uber. Board members, including myself, will also sometimes provide *ad hoc* feedback on policies and products being considered by Uber. I have also been invited to attend events and focus groups as a member of the Board.

8. I have reviewed the Subpoena, and I have been made aware of Plaintiffs' counsel's demands regarding production of additional documents and communications from my personal records. Such demands would be incredibly burdensome for me to comply with in the time requested by Plaintiffs' counsel.

9. The Subpoena is written to me in my personal capacity. I do not personally have a support staff, let alone any form of background or expertise in maintaining, processing, exporting, or carrying out the other tasks that may be required for a large document search and production. Nor is assistance available from DCRCC, given that the organization's resources in these areas are limited; DCRCC does not have dedicated support staff, even for the CEO.

10. My work in the advocacy, education, and survivor support space requires me to be consistently available on short notice to help these organizations and individuals. In particular, DCRCC, like many other non-profits, has been experiencing difficulties due to budget constraints and is currently short staffed. DCRCC currently only has 12 full-time employees. With this small staff, DCRCC must run its two 24/7 programs—its crisis hotline and its hospital advocacy for

survivors of sexual violence. DCRCC's full-time staff also includes a clinical team serving over 100 active clients. Additionally, the upcoming months are especially busy for the organization. DCRCC is cohosting the National Sexual Assault Conference from August 19–21, and DCRCC staff will be responsible for providing crisis support. DCRCC is responding to two simultaneous routine audits, which I have to directly support and respond to as CEO.

11. As CEO, I have also been at the forefront of responding to DCRCC's ongoing financial support crisis due to delays in DCRCC's main grant funding sources. In response, I have led DCRCC's emergency fundraising campaign, which has required significant focus and time, and will continue to do so until the crisis abates. My work at the forefront of DCRCC's outreach and fundraising includes creating and propagating messaging like the one below through social media campaigns and personal outreach.




12. In addition to being CEO and handling the ongoing funding crisis, I am on call for DCRCC's direct survivor service support hotline from 6:00 pm to 7:00 am every day. This role will sometimes require me to work through the night and the next morning to provide on-the-

ground support to a survivor who actively needs help. Additionally, given staffing shortages, I will also step in to cover periodic twelve-hour shifts where I am on call to be dispatched as a DCRCC advocate to support survivors at area hospitals.

13. Given the significant amount of time I am required to spend on my multiple work commitments, despite best efforts, I have exceedingly limited availability to work with outside counsel and vendors on collection and review of additional files. I already worked within my limited availability to collect my emails to and from accounts with an "@uber.com" domain, which I understood was sufficient to meet Plaintiffs' counsel's demands.

14. The additional collection, review, and production work would be on top of any work needed to prepare for deposition, as well as my pre-existing daily and nightly work commitments. My personal email account also contains confidential information from other entities not subject to the Subpoena, including DCRCC and other board positions. Given current circumstances, additional collection, review, and production on an accelerated timeline is not feasible. This would be especially true in the event I was asked to collect information from sources outside my personal account.

15. Further, these ongoing work obligations, including the active funding crisis at DCRCC, are taxing mentally and physically. The stress of complying with the Subpoena in the timeframe allotted has exacerbated this strain.

16. Finally, given the demands of my multiple positions, especially in light of the staffing challenges at DCRCC described above, a full-day deposition taking me away from my responsibilities imposes a tremendous burden not only on myself, but the multiple other individual survivors and groups who depend on my work and who are not subject to the Subpoena.

17. The Subpoena, if not modified, will unduly burden me and negatively impact my ability to carry out my work advocating for and directly supporting survivors of sexual violence.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of August, 2026.

Dr. Indira Henard

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO DR. INDIRA HENARD,<br><br>Non-Party Movant, | Miscellaneous Case No. _____ |

*Underlying Action*

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br>(Pending in the United States District Court for the Northern District of California) |

**DECLARATION OF NADIRA CLARKE**

Pursuant to 28 U.S.C. § 1746, I, NADIRA CLARKE, hereby declare:

1. I am an attorney at law, barred in the District of Columbia and Commonwealth of Pennsylvania. I am a partner at the law firm Hogan Lovells Cadwalader US LLP, which serves as counsel for Dr. Indira Henard ("Dr. Henard") in the above-referenced matter ("Counsel for Dr. Henard"). I have personal knowledge of the information set forth in this Declaration, which I submit to the best of my present knowledge and understanding, in support of Dr. Henard's motion (the "Motion") to modify a subpoena issued to Dr. Henard by Plaintiffs in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB (N.D. Cal.) (hereinafter, "Uber MDL").

2. On June 24, 2026, Dr. Henard was served with a subpoena by Plaintiffs' counsel in the Uber MDL (the "Subpoena") seeking deposition testimony and production of documents (the "Subpoena"). Attached hereto as **Exhibit A** is a true and correct copy of the Subpoena.

3. On July 7, 2026, Counsel for Dr. Henard met with Plaintiffs' counsel to discuss the Subpoena. During this conversation, Counsel for Dr. Henard explained the challenges faced by Dr. Henard's work and expected difficulties with document collection. Counsel for Dr. Henard proposed the idea of deposition by written questions. Plaintiff's counsel indicated that they would take the request under consideration but intimated that they were likely to demand an oral deposition, nonetheless assuring Dr. Henard's counsel that they were sensitive to burdening Dr. Henard.

4. Perceiving that Plaintiffs' counsel was not interested in the option of deposition by written questions, Dr. Henard promptly sought in good faith to find a mutually agreeable time to hold the deposition. On July 8, 2026, Counsel for Dr. Henard offered to set a tentative deposition date for Friday, August 28, 2026. Plaintiffs' counsel agreed to hold that date.

5. On July 17, 2026, Counsel for Dr. Henard met and conferred with Plaintiffs' counsel again. Dr. Henard sought in good faith to narrow, and clarify the meaning of, the Subpoena's request for Dr. Henard to produce her entire "custodial file." Counsel for Dr. Henard also requested a deposition lasting less than seven hours.

6. Plaintiffs' counsel informed Counsel for Dr. Henard that a search for emails with the domain name "@uber.com" would be sufficient to meet the Subpoena's document request for the deponent's custodial file. Plaintiffs' counsel further offered that Dr. Henard did not have to comply with the formal production requirements of the Uber MDL's ESI protocol and could produce "print-outs" of the emails. Counsel for Dr. Henard understood the willingness to forego formal ESI procedures to mean that time was of the essence and that Plaintiffs' counsel expected the production to be limited. Plaintiffs' counsel requested that Dr. Henard share preliminary search count estimates of emails with the domain name "@uber.com." Relying on this proposal, Counsel

for Dr. Henard began the process of identifying and collecting Dr. Henard's communications with Uber with the assistance of a third-party vendor retained by counsel.

7. Counsel for Dr. Henard met and conferred again with Plaintiffs' counsel on July 24, 2026. At Plaintiffs' counsel's request for preliminary search counts, Counsel for Dr. Henard preliminarily reported the identification of an estimated 200 potentially responsive emails with the domain name "@uber.com." This estimate reflected total number of emails, not all documents, including "family member" attachments. Plaintiffs' counsel expressed disappointment with the number of potentially responsive emails and promptly stated that they may need a broader sweep, to include internal emails discussing Uber. Plaintiffs' counsel also orally proposed an entirely new approach: that Dr. Henard could be relieved from the deposition entirely if Dr. Henard would send Uber a letter requesting that Uber not reference Dr. Henard at trial. Plaintiffs' counsel advised that they would follow-up with Dr. Henard's counsel to share any revised parameters sought for additional document collection. They also promised to reduce to writing their proposal for dispensing with the deposition entirely.

8. On Tuesday, July 28, 2026, Plaintiffs' counsel stated in an email to Counsel for Dr. Henard that they would provide their position on additional document collection by noon the following day. Attached hereto as **Exhibit B** is a true and correct copy of an email chain between Plaintiff's Counsel and Counsel for Dr. Henard spanning July 21-August 3 including correspondence from Alexandra Walsh sent Tuesday, July 28, 2026. On Wednesday, July 29, 2026, Plaintiffs' counsel sent an email that proposed Dr. Henard "produce all responsive docs with Uber domain name by Tuesday, [August 4, 2026]," a deadline that was not referenced or required by the Subpoena, and that Plaintiffs would "alert [counsel] asap whether [they] need further production." Ex. B at 4 (correspondence from Alexandra Walsh sent July 29, 2026). Counsel for

Dr. Henard acknowledged that they would respond to the proposal and that Counsel for Dr. Henard had already begun the process with an electronic discovery vendor to collect and review emails. *Id.* at 3.

9. On July 30, 2026, Plaintiffs' counsel sent Dr. Henard a letter documenting the offer of relief from deposition in exchange for Dr. Henard making "a written request to Uber to refrain from presenting any evidence or argument about her or the D.C. Rape Crisis Center as part of its defense strategy in upcoming trials – and to share that written request with [Plaintiffs' counsel]." Plaintiffs' counsel stated that if the proposal was not accepted by Dr. Henard, Plaintiffs' counsel would seek to impose a new deadline requiring "all responsive documents" to be produced "72 hours" prior to the date of the deposition. Attached hereto as **Exhibit C** is a true and correct copy of the July 30, 2026 letter from Plaintiffs' counsel sent to Dr. Henard. That same day, nearly identical letters were also sent to two other non-parties subject to similar subpoenas.

10. On August 3, 2026, Counsel for Dr. Henard sent Plaintiffs' counsel a letter on behalf of Dr. Henard, declining Plaintiffs' counsel's proposal and standing behind Dr. Henard's prior offers of compromise to produce documents and sit for deposition under reasonable parameters. Counsel for Dr. Henard also memorialized in writing her formal objections to the Subpoena and the parties' positions in their meet and confer efforts. Attached hereto as **Exhibit D** is a true and correct copy of the August 3, 2026 letter from Counsel for Dr. Henard to Plaintiffs' Counsel.

11. Plaintiffs' counsel responded promptly that same day, offering to provide Counsel for Dr. Henard briefing from the Uber MDL about "Uber's litigation strategy that have necessitated the Subpoenas" and asking what "modifications to our proposal [to provide a written request to

Uber] would potentially incline your clients to consider our proposal so that they might avoid the 'burden' you assert and focus on the important work of their organizations." Ex. B at 1.

12. The next day, On August 4, 2026, Plaintiffs' counsel sent a letter refusing Dr. Henard's offer to compromise. The letter included: (1) a demand for a full seven-hour deposition; (2) a demand for "rolling productions" rather than the 72-hour advance production timeline they had last proposed, and (3) a demand for "internal emails referencing 'Uber'" in addition to emails with the @uber.com domain name. The letter also discounted the hardship faced by Dr. Henard in connection with complying with Plaintiffs' counsel's demands. Attached hereto as **Exhibit E** is a true and correct copy of the August 4, 2026 letter from Plaintiffs' counsel.

13. Counsel for Dr. Henard met and conferred with Plaintiffs' counsel again on August 6, 2026, to discuss the production in response to the Subpoena and length of deposition. No progress was made, with Plaintiffs' counsel indicating that they were unable to compromise on a shorter time on the record for Dr. Henard's deposition because they were uncertain how much time Uber would require to question Dr. Henard. Plaintiffs' counsel also demanded that Dr. Henard make a production on Wednesday, August 12, 2026, of all documents, including internal emails discussing Uber. Counsel for Dr. Henard explained that the demanded August 12, 2026 date was not achievable. The meet and confer call closed with Plaintiffs' counsel's stated intention to raise this dispute before the Uber MDL Court if their terms were not met. It was agreed that Counsel for Dr. Henard would formally respond to the latest articulation of the demand the following day after consultation with Dr. Henard.

14. On August 7, 2026, Counsel for Dr. Henard sent a letter to Plaintiffs' counsel confirming that Dr. Henard could not meet Plaintiffs' counsel's production demands. Counsel for Dr. Henard emphasized in the letter that Dr. Henard was still open and willing to find a

compromise, but given Plaintiffs' counsel's repeatedly changing demands, Dr. Henard withdrew the proposed deposition date of August 28 and requested that Plaintiffs' counsel share availability for a meet and confer for Monday, August 10, 2026, regarding Dr. Henard's forthcoming motion, in accordance with Local Civil Rule 7(m) for the United States District Court for the District of Columbia. Attached hereto as **Exhibit F** is a true and correct copy of the August 7, 2026 letter from Dr. Henard.

15. Plaintiffs' counsel did not respond to the Rule 7(m) request to meet and confer. Instead, on August 10, Plaintiffs' counsel sent their portion of a letter brief they proposed to file with the Uber MDL Court requesting that the Court compel Dr. Henard's attendance at a 7-hour deposition on mutually agreeable dates on or before September 20, 2026, and the rolling production of documents (including internal emails referencing Uber) one week in advance of the deposition. Plaintiffs sent their position statement only one business day after the August 6, 2026, meet and confer, in contravention of the Uber MDL Court's order. *See* Uber MDL, Dkt. No. 323 at 2, ¶ 3 (moving party may "no earlier than three business days after the parties have concluded the meet and confer process, proffer via email to the opposing party its two and-a-half-page portion of the joint letter") but offered no availability to meet and confer on Dr. Henard's intended motion.

16. Counsel for Dr. Henard responded on August 11, 2026, requesting for a second time that Plaintiffs' counsel meet and confer regarding a forthcoming motion. Counsel for Dr. Henard and Plaintiffs' counsel eventually agreed to meet and confer once again on Thursday, August 13, 2026. Attached hereto as **Exhibit G** is a true and correct copy of an email chain between Plaintiff's Counsel and Counsel for Dr. Henard from August 11, 2026 to August 12, 2026.

17. Despite Dr. Henard's counsel's further attempts to compromise in good faith, at the August 13th meet and confer, the parties remained at an impasse. Counsel for Dr. Henard confirmed that Plaintiffs' counsel opposed the relief sought in this motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2026.

*/s/ Nadira Clarke*
Nadira Clarke

# EXHIBIT A

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This document relates to: All Actions

Civil Action No. 3:23-md-03084-CRB

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Indira Henard

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: Zoom<br>14 Ridge Sq. NW, 3d Fl, Washington, DC 200016 | Date and Time:<br>9:00 AM EST July 28, 2026 |
|---|---|

The deposition will be recorded by this method: Stenographic means, audio/video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Schedule B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 6/22/2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

*/s/ Samantha Hoefs*

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs, who issues or requests this subpoena, are:

Sam Hoefs, Nigh Goldenberg Raso & Vaughn PLLC, 60 S 6th St, #2800, Minneapolis, MN 55402, (612) 445-0202 shoefs@nighgoldenberg.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:23-md-03084-CRB

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

☐ I served the subpoena by delivering a copy to the named individual as follows: ______________
__________________________________________________________________
______________________________________ on *(date)* ______________ ; or

☐ I returned the subpoena unexecuted because: ______________________________
__________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### Definitions

The following terms shall have the meanings identified herein. Any term not defined shall have the standard dictionary definition:

1. "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:
    a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;
    b. emails;
    c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;
    d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;
    e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"
    f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;
    g. voicemails and voice messages;
    h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.
2. "DOCUMENT(S)" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or

retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer- generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media.

3. "DRIVER EDUCATION MODULE(S)" shall be used to refer to any audio or visual content shown, accessible, or made available to drivers through the Uber app for educational or training purposes.

4. "IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

   a. When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;
   b. When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;
   c. When used in reference to a document, it shall mean to state the type of Document, date, author, addressee, recipient, title, present location, custodian, and the substance of its contents.
   d. When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5. "NONPROFIT ORGANIZATION(S)" shall be used to refer to the following entities, individually, collectively, or in any combination thereof; their parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on their behalf:

   a. A Call to Men
   b. AI Now Institute
   c. Albright Stonebridge
   d. Bay Area Women Against Rape
   e. Berkman Center for Internet and Society
   f. Center for Democracy and Technology
   g. D.C. Rape Crisis Center (DCRCC)
   h. Electronic Frontier Foundation

i. Future of Privacy Forum
j. Harvard Data Science Initiative
k. It's On Us
l. National Sexual Violence Resource Center (NSVRC)
m. National Crime Prevention Council (NCPC)
n. National Network to End Domestic Violence
o. The NO MORE Foundation (d/b/a "NO MORE")
p. Rape Abuse and Incest National Network (RAINN)
q. RALIANCE
r. Respect Together (formerly Pennsylvania Coalition Against Rape (PCAR))
s. San Francisco Women Against Rape
t. Stanford Center for Internet and Society
u. The Urban Institute

6. "SAFETY REPORT(S)" shall be used to refer to Uber's 2017–2018 U.S. Safety Report (individually, the "First Safety Report"), Uber's 2019–2020 U.S. Safety Report (individually, the "Second Safety Report") or the Uber's 2021–2022 U.S. Safety Report (individually, the "Third Safety Report").
7. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.
8. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal conduct or staring) of a sexual nature that is without consent and has the effect of threatening or intimidating, including but not limited to all acts addressed in Defendants Sexual Assault and Sexual Misconduct Taxonomies and RALIANCE's Sexual Assault and Sexual Misconduct Taxonomy.
9. "S-RAD" shall be used to refer to Uber's Safety Risk Assessed Dispatch model, including any version or component thereof.
10. "THRESHOLD(S)" shall be used to refer to the S-RAD score at which trips are flagged by the S-RAD model, as set by Uber, which may be set differently by Uber based on the geographic region or time of day.
11. "TRIGGER RATE(S)" shall be used to refer to the percentage of trips flagged by Uber's S-RAD model as set by Uber, which may be set differently by Uber based on the geographic region or time of day.

12. "UBER APP" and "UBER APPLICATION" refer to Uber's mobile phone application that is used by Riders to order Rides.
13. "UBER DRIVER APP" and "UBER DRIVER APPLICATION" refer to Uber's mobile phone application that is used by Drivers to offer Rides.
14. "UBER" "DEFENDANT," or "DEFENDANTS" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.
15. "DCRCC" shall be used to the D.C. Rape Crissi Center, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.
16. "YOU" or "YOUR" shall be used to refer to Indira Henard.

## Deposition Topics

*Driver Education*

1. Analyses, conclusions, recommendations, evaluations, or critiques of UBER'S DRIVER EDUCATION MODELS that YOU or DCRCC shared with Uber whether or not implemented by UBER.
2. Any past or present opinions YOU or DCRCC expressed or held regarding the adequacy or efficacy of UBER'S DRIVER EDUCATION MODELS, and all information that formed the bases for those opinions.
3. The knowledge or information YOU or DCRCC possessed regarding the efficacy of UBER's DRIVER EDUCATION MODELS, including as related to the content or format of those DRIVER EDUCATION MODELS.

*S-RAD*

4. Information and documents UBER shared with YOU or DCRCC about S-RAD, including specifically information related to the efficacy of S-RAD at predicting or preventing SEXUAL ASSAULT or SEXUAL MISCONDUCT incidents involving users of the UBER APP; the THRESHOLD or TRIGGER RATE that UBER set or considered; and the basis for UBER'S decision to set the THRESHOLD or TRIGGER RATE that it ultimately did set.
5. YOUR or DCRCC's analyses, conclusions, recommendations, evaluations, or critiques of S-RAD, its TRIGGER RATE, or its THRESHOLD, whether or not implemented by UBER.
6. Any past or present opinions YOU or DCRCC expressed or held regarding the adequacy or efficacy of the S-RAD TRIGGER RATE or its THRESHOLD, and all information that formed the bases for those opinions.

*Uber's Safety Reports*

7. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S SAFETY REPORT(S), including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.
8. Any past or present opinions YOU expressed or held regarding the adequacy or efficacy of UBER'S SAFETY REPORT(S) or the safety of the Uber platform as it relates to SEXUAL ASSAULT OR SEXUAL MISCONDUCT, and all information that formed the bases for those opinions.

*Uber's Taxonomy*

9. YOUR endorsements, public comments (including on social media), press releases, or publicity related to UBER'S Sexual Assault and Sexual Misconduct Taxonomy. including specifically the nature and contents of such endorsements, public comments, press releases, or publicity and Uber's involvement in providing drafts, templates, or talking points related to such endorsements, public comments, press releases, or publicity.

10. YOUR or DCRCC's analyses, conclusions, recommendations, evaluations, or critiques of UBER's Sexual Assault and Sexual Misconduct Taxonomy, including but not limited to whether UBER's Sexual assault and Sexual Misconduct Taxonomy could prevent or reduce the rate of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.
11. Any past or present opinions YOU or DCRCC expressed or held regarding the adequacy or efficacy of UBER'S Sexual Assault and Sexual Misconduct Taxonomy, and all information that formed the bases for those opinions.

*Miscellaneous*

12. Any grants or other payments YOU or DCRCC received from UBER.
13. UBER's role in drafting press releases, social media posts, white papers, or publications YOU or DCRCC made or issued.
14. DOCUMENTS, COMMUNICATIONS, or other information shared with YOU or DCRCC relating to the true rate or risk of SEXUAL ASSAULT or SEXUAL MISCONDUCT involving users of the UBER APPLICATION.
15. YOUR or DCRCC's knowledge of safety features conceptualized, conceived of, designed, or developed by DCRCC or any other NONPROFIT.

## SCHEDULE B

### Document Requests

1. The most recent resume and/or LinkedIn profile for the deponent;
2. A substantially complete production of the deponent's custodial file; and
3. All documents reviewed by the deponent in preparation for their deposition.

# EXHIBIT B

**From:** Walsh, Alexandra <awalsh@anapolweiss.com>
**Sent:** Monday, August 3, 2026 11:10 PM
**To:** Clarke, Nadira; Sam Hoefs; Marlene Goldenberg
**Cc:** Dolejsi, Holly; Mandel, Rebecca C.; Skarjune, Melissa; Smith, William; Smith, Bolton
**Subject:** Re: Reschedule Call to Friday

**[EXTERNAL]**
Thanks Nadira. We will respond in detail asap.

In the meantime, to address a critical point. You cite in both letters what you characterize as “the considerable burdens” the Subpoenas purportedly imposes on your clients, failing to acknowledge that it is Uber’s litigation strategy that have necessitated the Subpoenas—did you have a chance to review the briefing and the Court’s order on this point? If not, we would be happy to send. You also note that that your clients are both are “not inclined” to accept our client’s proposal, which would obviate the need for the Subpoenas. We are happy to hear what modifications to our proposal would potentially incline your clients to consider our proposal so that they might avoid the “burden” you assert and focus on the important work of their organizations. Would a call on this point be helpful?

---

**From:** Clarke, Nadira <nadira.clarke@hlc.com>
**Sent:** Monday, August 3, 2026 6:39 PM
**To:** Sam Hoefs <shoefs@nighgoldenberg.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>; Smith, William <wsmith@anapolweiss.com>; Smith, Bolton <bolton.smith@hlc.com>
**Subject:** RE: Reschedule Call to Friday

Hi Sam:

Thank you for your email. By way of clarification, please see below for details. In addition, attached please find letters on behalf of Dr. Indira Henard and NAESV responding to Marlene and Alex’s recent correspondence and further articulating our objections and positions on reasonable scope. We will respond on behalf of NNEDV shortly.

- **NAESV** – We previously proposed **Aug. 19**. Given rolling furloughs and previously scheduled vacation, this is the only date we were able to identify in August. We avoided September dates because, again, due to the organization’s furlough schedule, September would prove very challenging.

- **NNEDV** – This organization is most challenged from an availability perspective. Unfortunately, the dates you propose below will not work. The dates we are able to propose (subject to agreeing to the length of the deposition and scope of the document production) are for half-day slots on **Sep. 14**, **Sep. 23**, or **Sep. 29.**

Please note that we have a new member of our team, Bolton Smith, who I have copied on this email. Going forward, please include him on all correspondence. Thank you.

Nadira

**Nadira Clarke**
*Partner*

---

**From:** Sam Hoefs <shoefs@nighgoldenberg.com>
**Sent:** Monday, August 3, 2026 12:41 PM
**To:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Clarke, Nadira <nadira.clarke@hoganlovells.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hoganlovells.com>; Skarjune, Melissa <melissa.skarjune@hoganlovells.com>; William Smith <wsmith@anapolweiss.com>
**Subject:** Re: Reschedule Call to Friday

**[EXTERNAL]**
Hi Nadira,

I am following up to get dates on the calendar for NNEDV and NAESV. Can you let us know whether September 9, 10, 16, or 17 work for these clients?

Thanks,

**Sam Hoefs**
Senior Associate

Nigh Goldenberg Raso & Vaughn, PLLC
800 LaSalle Plaza
Suite 920
Minneapolis, MN
55402

D - (612) 445-0202
T - (202)-792-7927
F - (202)-792-7927

nighgoldenberg.com

Calendly

On Thu, Jul 30, 2026 at 5:42 AM Marlene Goldenberg <mgoldenberg@nighgoldenberg.com> wrote:

> Nadira,
>
> As a follow up to Friday's conversation, please see the attached correspondence relating to each of your clients. As discussed in each of the letters, we are also including a copy of the complaint filed in the case that is set for trial next in the MDL.
>
> Please let us know if there is anything you would like to discuss.
>
> Thank you,

Marlene

**Marlene J. Goldenberg**

Founding Partner

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C. | 20016

D - (202) 978-2228
T - (202) 792-7927
F - (202) 792-7927

nighgoldenberg.com

On Wed, Jul 29, 2026 at 8:26 PM Walsh, Alexandra <awalsh@anapolweiss.com> wrote:

Thanks very much Nadira.

Get Outlook for iOS

---

**From:** Clarke, Nadira <nadira.clarke@hlc.com>
**Sent:** Wednesday, 29 July 2026 13:41:56
**To:** Walsh, Alexandra <awalsh@anapolweiss.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Cc:** Sam Hoefs <shoefs@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>
**Subject:** RE: Reschedule Call to Friday

Hi Alex, thank you for your email. I will revert back as soon as I can, but please know that we heard you regarding timing and have been working with a vendor on collection.

Nadira

**Nadira Clarke**
Partner

**Hogan Lovells US LLP**
D +1 202 637 6951 | M +1 202 702 1401

nadira.clarke@hoganlovells.com

**Vcard**

**From:** Walsh, Alexandra <awalsh@anapolweiss.com>
**Sent:** Wednesday, July 29, 2026 11:35 AM
**To:** Clarke, Nadira <nadira.clarke@hoganlovells.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Cc:** Sam Hoefs <shoefs@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hoganlovells.com>; Skarjune, Melissa <melissa.skarjune@hoganlovells.com>
**Subject:** Re: Reschedule Call to Friday

**[EXTERNAL]**

Hi Nadira,

Marlene and I have carefully considered the concerns you've raised about document production in connection with our subpoenas to your clients. At this time we can propose the following:

1. you produce all responsive docs with Uber domain name by Tuesday.
2. we will promptly review those emails and alert you asap whether we need further production and make every effort to specifically target those production requests to further info needed.

Our clients cannot at this stage, without the opportunity to review emails, forgo the right to seek further production of documents. If that means it's more efficient for you and your clients to begin the process of working with a vendor, we understand and respect that. We'd be happy to jump on the phone today or tomorrow to discuss search terms etc if that would be helpful.

Thanks and let us know if you'd like to talk today or tomorrow.

Get Outlook for iOS

---

**From:** Walsh, Alexandra <awalsh@anapolweiss.com>
**Sent:** Tuesday, 28 July 2026 14:02:04
**To:** Clarke, Nadira <nadira.clarke@hlc.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Cc:** Sam Hoefs <shoefs@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>
**Subject:** Re: Reschedule Call to Friday

Hi Nadira, circling back with a quick note to say Marlene and I will be back to you with our position on issues we discussed Friday, including document requests, by noon tomorrow at the latest. Thanks

Get Outlook for iOS

---

**From:** Clarke, Nadira <nadira.clarke@hlc.com>
**Sent:** Tuesday, 21 July 2026 19:30:33
**To:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Sam Hoefs <shoefs@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>
**Subject:** RE: Reschedule Call to Friday

Marlene:

Thank you for your flexibility. We are working on collecting proposed dates now.

Nadira

**Nadira Clarke**
*Partner*

---

**From:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Sent:** Tuesday, July 21, 2026 4:56 PM
**To:** Clarke, Nadira <nadira.clarke@hoganlovells.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Sam Hoefs <shoefs@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hoganlovells.com>; Skarjune, Melissa <melissa.skarjune@hoganlovells.com>
**Subject:** Re: Reschedule Call to Friday

**[EXTERNAL]**

Hi Nadira,

Let's do the 4:00 slot on Friday. In the interim, if you're able to send us dates when the deponents are available, we can also check our calendars and make sure we can confirm those for you by Friday.

Thanks,

Marlene

**Marlene J. Goldenberg**

Founding Partner

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C. | 20016

D - (202) 978-2228
T - (202) 792-7927
F - (202) 792-7927

nighgoldenberg.com

On Tue, Jul 21, 2026 at 4:39 PM Clarke, Nadira <nadira.clarke@hlc.com> wrote:

Marlene & Team:

I am writing in the hopes that we can move our call to a mutually convenient time on Friday. I realize how challenging it is to schedule these calls, but we need a few additional days to collect the information we discussed and promised to you regarding the likely volume of documents for each organization. Could we move tomorrow's call to Friday, 7/24?

Our team has a lot of flexibility that day, including:

- 9:00-10:30 a.m. ET
- 11:00-12:30 p.m. ET
- 1:30-3:30 p.m. ET
- 4:00-5:00 p.m. ET

Thank you in advance for your flexibility.

Nadira

**Nadira Clarke**
*Partner*

Hogan Lovells Cadwalader US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel: +1 202 637 5600
Fax: +1 202 637 5910

Direct: +1 202 637 6951
Mobile: +1 202 702 1401

nadira.clarke@hlc.com

**hlc.com** **LinkedIn**

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

# EXHIBIT C

NGRV NIGH GOLDENBERG RASO & VAUGHN

July 30, 2026

*Via email*

Nadira Clarke
Hogan Lovells Cadwalader US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
nadira.clarke@hlc.com

**Re:** Deposition of Indira Henard

Dear Nadira,

Thank you for the productive conversation on Friday. We really appreciate you taking the time and wanted to follow up on a few items.

**First**, we discussed and want to reiterate how much we and our clients respect and value the work Ms. Henard performs and the commitment that she and her organization have to prevent sexual violence and to educate others about prevention strategies. And while we do not believe the deposition of Ms. Henard would impose an undue burden, we acknowledge your concerns about the potential impact of that deposition on her schedule. Please know that we have and will continue to do everything we can to minimize any such impact.

In the meantime, we do want to stress that it is not our client who has created the need for Ms. Henard's deposition. Rather, the reason we need this deposition—and the reason the Court has permitted it—is because *Uber* has chosen to invoke Ms. Henard and the D.C. Rape Crisis Center as part of its litigation strategy. *See* ECF No. 6533 (permitting depositions of five entities, including Ms. Henard, in light of "Uber's trial presentation in the Dean bellwether case and Emilie Boman's recent deposition testimony"). As explained on Friday, our clients need and deserve an opportunity to respond to Uber's chosen litigation strategy—including by discovering and presenting to the jury the actual facts surrounding the "partnership" Uber claims to have with Ms. Henard and the D.C. Rape Crisis Center. In particular, our clients are entitled to understand the specific work your client actually did—and did not—perform for Uber and the specific information your client was—and was not— privy to—before making public statements in support of Uber.

Put simply, our need to discover these facts—and understand the accuracy of assertions Uber has made about them—arises from what Uber has said at prior trials and presumably plans to repeat in upcoming proceedings. The situation would be far different if Uber were to refrain from invoking your client's name and reputation as part of its trial presentation. For that reason, and as we discussed Friday, we respectfully ask you to pass on to your client the following proposal: If Ms.

NGRV NIGH GOLDENBERG RASO & VAUGHN

Henard is willing to make a written request to Uber to refrain from presenting any evidence or argument about her or the D.C. Rape Crisis Center as part of its defense strategy in upcoming trials—and to share that written request with us—we would be willing to forgo the deposition the Court has ordered. We very much appreciate you relaying this request and are happy to answer any questions you or Ms. Henard may have about this proposal.

**Second**, since we first spoke, you have told us it would be helpful to you and your client to have additional information about issues that may arise as part of any deposition that occurs. We've shared with you some of our concerns surrounding that request without knowing more about any joint privilege Uber may assert with Ms. Henard. If you are able to shed additional light on that situation, we would appreciate it.

That said, we are at this juncture able to relay publicly available background information regarding the assault that is at issue in the next case that will be tried. Indeed, we believe this may be important information for your client to understand to the extent it may bear on a decision about the proposal we make in our first point. This background information is a summary of salient facts from the Texas Court of Appeals' opinion, affirming the criminal conviction of the Uber driver who raped our client. *Le v. State of Texas*, No. 07-22-00287-CR (Tx. Ct. App. Aug. 2, 2023).

In June 2020, when our client was 23 years old, she took an Uber home from a bar after a night of drinking. When she arrived home, she went inside and told her parents she had been sexually assaulted by the driver Uber sent. That assault included, among other things, the driver forcibly penetrating Ms. Doe's mouth with his penis. After our client described the assault to her parents, they called the police. The assault was also reported to Uber. In the following months, Uber's driver was criminally charged and at trial convicted of the second-degree felony offense of sexual assault, resulting in a sentence of eleven years of imprisonment. The driver appealed the conviction to the Texas Court of Appeals, where the verdict was affirmed. We are also attaching a copy of the publicly filed Complaint in this case for your reference.

Notwithstanding these facts, Uber has stated in open court that it reserves the right to contest at trial whether this forcible penetration actually occurred—in other words, to take the position that our client is making it up.

Again, we appreciate your willingness to relay this and other information we may be able to share with Ms. Henard.

If the deposition does go forward, we are available to proceed on the date you provided. We request that you complete production of all responsive documents within 72 hours of that date to avoid any need to continue the deposition. We have set forth our position regarding document

production in our email correspondence but again are happy to discuss further at your convenience.

Sincerely yours,

Alex and Marlene

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW
Third Floor
Washington, DC 20016

T: (202) 792-7927 ext. 101
D: (202) 978-2228
F: (202) 792-7927
mgoldenberg@nighgoldenberg.com

Washington D.C.
Minnesota
Kansas
Florida

# EXHIBIT D

HOGAN LOVELLS
CADWALADER

Hogan Lovells Cadwalader US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

T: +1 202 637 5600
F: +1 202 637 5910
www.hlc.com

August 3, 2026

**By Electronic Mail**

Marlene Goldenberg, Esq.
Nigh Goldenberg Raso & Vaughn PLLC
14 Ridge Square NW
Third Floor
Washington, D.C. | 20016
mgoldenberg@nighgoldenberg.com

**Re: Objections to Subpoena for Indira Henard, *In Re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-MD-3084-CRB**

Dear Marlene,

We are writing further to our ongoing discussions regarding the subpoena for deposition and documents served on Dr. Indira Henard in the above-referenced matter (the "Subpoena").

We appreciate your constructive engagement with us to date, and we hope to continue in the same spirit to appropriately scope your document requests and the length of Dr. Henard's deposition in view of her non-party status and the considerable burden the Subpoena is placing upon her. The terms to which Dr. Henard is willing to commit are set forth below. In the meantime, given the exigencies of your requested timing and the provisional nature of our discussions to date, we write to memorialize and formalize Dr. Henard's objections to the Subpoena pursuant to Federal Rule of Civil Procedure 45 in the hopes of advancing our discussions to more concrete terms. While we would prefer not to have to seek relief from the appropriate court with jurisdiction, on behalf of Dr. Henard, we reserve all rights.

As previously referenced, Dr. Henard is a non-party to this litigation. She serves as President and Chief Executive Officer of the D.C. Rape Crisis Center ("DCRCC"), the District's only rape crisis center, which operates 24 hours a day, 7 days a week to serve survivors of sexual assault. DCRCC is a direct services provider and Dr. Henard, in addition to her executive responsibilities, is personally "on call" day and night. Further, Dr. Henard's current availability not only is constrained by the need to navigate DCRCC through a time that is proving challenging for many non-profits, but pre-existing personal commitments during the summer months.

In an effort to be cooperative, Dr. Henard has tentatively agreed to appear for a deposition on August 28, 2026, at 9:00 a.m., subject to reaching agreement on our previously-expressed concerns about both the scope of document production and the length of deposition. With regard to document production, you initially stated that you would not require Dr. Henard to comply with the operative ESI protocol and that producing email communications to and from the "uber.com" domain would be acceptable. We have proceeded with collection on that basis and, subject to reaching agreement on other terms, are prepared to make such a production 72 hours in advance of the deposition (on or before 9:00 a.m., August 25, 2026) per your request in your letter of July 30. For purposes of clarity, we respectfully decline your proposal by email on July 29, 2026, requesting a production of documents

Hogan Lovells Cadwalader US LLP is a limited liability partnership registered in the state of Delaware. "Hogan Lovells Cadwalader" is an international legal practice that includes Hogan Lovells Cadwalader International LLP and Hogan Lovells Cadwalader US LLP, with offices in: Alicante Amsterdam Baltimore Beijing Berlin Birmingham Boston Brussels Charlotte Colorado Springs Denver Dubai Dublin Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Munich New York Northern Virginia Paris Philadelphia Riyadh Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Tokyo Washington, D.C. Associated Offices: Jakarta Shanghai FTZ. Business Services Centers: Johannesburg Louisville. For more information see www.hlc.com.

for your initial review by Tuesday, August 4, 2026, and holding open the possibility of follow-up productions. That deadline simply is not feasible and the requested timing for Dr. Henard's deposition does not allow for iterative negotiations of document production.[1]

Moreover, we previously raised limiting the length of the deposition; however, you were not in a position to respond to this request during our last conversation on July 24, 2026. Dr. Henard is prepared to be available for one-half day (3.5 hours), which is more than sufficient given her non-party status. Please confirm Plaintiffs' commitment to limit Dr. Henard's deposition to a half day or provide Plaintiffs' position as to appropriate deposition length for our consideration in terms of next steps. If our proposed terms regarding document production and length of deposition are acceptable, we are prepared to finalize the August 28, 2026, deposition date.

For purposes of the record and to facilitate our further meet and confer efforts, Dr. Henard memorializes her objections to the Subpoena on the following grounds:

1. Dr. Henard objects to Plaintiffs' subpoena for deposition as unduly burdensome, particularly as Dr. Henard offered to provide information by less burdensome means, such as deposition by written questions (an offer we understand Plaintiffs have declined). *See* Rule Fed. R. Civ. P. 45(d) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

2. Dr. Henard objects to the deposition topics in Schedule A of the subpoena to the extent that they seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, including any obligation for Dr. Henard in her individual capacity to prepare testimony on the identified topics.

3. Dr. Henard objects to all requests for production of documents to the extent that they are unduly burdensome, overly broad, seek documents already in Plaintiffs' possession, and/or seek discovery beyond the scope permissible under the applicable Federal Rules of Civil Procedure.

4. Dr. Henard also objects to the request for "deponent's custodial file," *see* Schedule B Document Requests, as vague, ambiguous, not reasonably limited in time, and undefined and unduly burdensome.

5. Dr. Henard objects to the definitions of "Communications," "Document(s)," "Identity," "Identification," or "Identify," and "DCRCC" as overbroad and unduly burdensome and to the extent they seek to impose obligations on Dr. Henard beyond those required by the Federal Rules of Civil Procedure.

6. Dr. Henard objects to the Subpoena to the extent that it seeks information that is in the possession of and/or more easily and directly obtained from Uber Technologies, Inc. ("Uber").

[1] We note that the Subpoena requires production on the date of deposition; we are of course willing to work with you to provide reasonable review in advance. However, for us to have sufficient time to permit you an advance review period will be dependent upon a reasonable document scope, as we note herein.

7. Dr. Henard objects to the Subpoena to the extent it purports to impose any obligations to respond on behalf of any person or entity other than Dr. Henard, including without limitation DCRCC.

8. Dr. Henard objects to the Subpoena to the extent that it calls for information protected by (1) the attorney-client privilege, (2) the work-product doctrine, or (3) any other applicable privilege(s) or immunity or immunities. In responding to the Subpoena, Dr. Henard does not waive any objection based on privilege. Should Dr. Henard provide any privileged or protected information in responding to the Subpoena, unless stated otherwise, such disclosure is inadvertent and shall not constitute a waiver of any applicable privilege or immunity or of any other ground for objecting to discovery with respect to such information, or of Dr. Henard's right to object to the use of such information.

9. Dr. Henard objects to the Subpoena to the extent that it seeks information subject to confidentiality or non-disclosure agreements, including agreements with Uber. Dr. Henard reserves the right to meet any applicable notification obligations prior to production of documents or her deposition.

10. Dr. Henard objects to the Subpoena to the extent it seeks information that is not relevant to the claims or defenses of any party, reasonably calculated to lead to the discovery of admissible evidence, or proportional to the needs of the case and Dr. Henard's status as a non-party.

11. Dr. Henard objects to the Subpoena to the extent it seeks documents or information beyond her possession, custody, or control. Dr. Henard will produce responsive documents only to the extent that any such documents exist and only to the extent that such documents are in her possession, custody, or control as required by the Federal Rules of Civil Procedure.

Finally, we want to address your July 30, 2026 correspondence in which you proposed that Dr. Henard's deposition would be unnecessary if she submitted a written request to Uber asking that it refrain from presenting any evidence or argument about her or the D.C. Rape Crisis Center as part of its defense strategy in upcoming trials and share that written request with Plaintiffs. Dr. Henard is not inclined to accept your offer at this time.

We look forward to our continued discussions with you to address these concerns and the scope of Dr. Henard's response to the Subpoena.

Sincerely,

**Nadira Clarke**
Partner
nadira.clarke@hlc.com
D: 202 637 6951

**Rebecca Mandel**
Partner
rebecca.mandel@hlc.com
D: 202 637 5488

cc:
Sam Hoefs, shoefs@nighgoldenberg.com
Holly Dolejsi, hdolejsi@anapolweiss.com
Alexandra Walsh, awalsh@anapolweiss.com

# EXHIBIT E

NGRV NIGH GOLDENBERG RASO & VAUGHN

August 4, 2026

Via Email
Nadira Clarke
Rebecca Mansel
Bolton Smith
Hogan Lovells Cadwalader US LLP
555 Thirteenth St NW
Washington, DC 20004
nadira.clarke@hlc.com
rebecca.mandel@hlc.com
Bolton.smith@hlc.com

Re: Deposition of Indira Henard

Dear Nadira,

Plaintiffs write in response to your letter regarding the deposition subpoena for Indira Henard. We reiterate that we value Dr. Henard's work on behalf of sexual assault survivors and the only reason that Plaintiffs need to take her deposition is because Uber has chosen to juxtapose its relationships with survivor advocates like Dr. Henard with trial tactics that harass, retraumatize, and undermine survivors. Given that Uber's positions at trial have been flatly inconsistent with the values Dr. Henard and the D.C. Rape Crisis Center espouse, we wanted to alert Dr. Henard that Uber was invoking her name and organization in this way and offer her the chance to request that it stop doing so. We understand from your letter that Dr. Henard is "not inclined" to do so at this time. However, since we anticipate Uber will continue to invoke her name and her organization at trial to suggest that this relationship means Uber does "the right thing" for sexual assault survivors, we need to take her deposition and explore this relationship.

**Timing.** Plaintiffs will be reserving the full seven-hour deposition time for Dr. Henard on August 28. Nothing in Rule 45 provides for truncated depositions for nonparties. Unfortunately, Uber failed to provide sufficient information regarding its relationships with nonprofits when we deposed its corporate representative. Thus, while Plaintiffs had hoped to take a shorter deposition of Dr. Henard, this is not feasible. Plaintiffs will need to "further explor[e]" the issues that Uber's corporate representative could not or would not address during her deposition through the depositions of Uber's nonprofit partners, including Dr. Henard. *See* ECF 6533.

**Productions.** In preparation for Dr. Henard's August 28 deposition, we request that Dr. Henard make rolling productions of documents responsive to our requests for (1) documents with the @uber.com domain name and (2) internal emails referencing "Uber." These productions should begin no later than Friday, August 7. Given your representations about the number of responsive documents, we do not agree that it takes one month from the date of last week's request to collect, review, and produce the small number of responsive documents. Nor do we agree that Plaintiffs should only be permitted to review these documents 72 hours before the scheduled deposition. As you know, Plaintiffs already substantially narrowed our document requests from Dr. Henard's entire custodial file to just these two categories of documents.

NGRV NIGH GOLDENBERG RASO & VAUGHN

**Jurisdiction.** In your letter, you suggest that you may "seek relief from the appropriate court with jurisdiction." However, should you seek relief from a court other than the MDL court, Plaintiffs will tag that dispute to the JPML and have it promptly transferred to the MDL where it belongs. *See* ECF 752. The MDL Court has consistently required nonparties to produce documents in response to subpoenas. *See*, *e.g.*, ECF 695, 1776, 5263. Even if Plaintiffs did not tag a subpoena dispute to the JPML, the U.S. District Court for the District of Columbia has ordered extensive custodial discovery of a nonparty sexual violence advocacy organization in this MDL. *See In re Subpoena to Rape Abuse and Incest National Network*, 24-0073-ACR, Transcript Order (D.D.C. Aug. 6, 2024). There is no reason to believe that the much narrower requests at issue here would be denied, particularly given the Court's finding that Plaintiffs already demonstrated a "sufficient interest in further exploring this issue" of your client's relationship with Uber. ECF 6533. Such a waste of time and resources is not warranted.

**Relevance (Objection 10).** Uber previously objected that deposing nonparties on these topics was not relevant. ECF 6510. Judge Cisneros rejected this argument and authorized Plaintiffs to explore these topics with nonparties, including Dr. Henard. ECF 6533.

**Burden (Objections 1–5).** Plaintiffs recognize and have accounted for Dr. Henard's status as a nonparty. First, we took steps to minimize any potential burden on Dr. Henard by deposing Uber's corporate representative, Emilie Boman in an attempt to eliminate the need for a deposition of your client or, at a minimum, to narrow the scope to matters Ms. Boman did not or could not address. Second, though our subpoena requested Dr. Henard's entire custodial file, which is a reasonable request given our need to examine what Dr. Henard actually knew about the safety features and processes she endorsed, Plaintiffs offered a compromise. Specifically, Plaintiffs asked Dr. Henard to produce emails with the @uber.com domain name and internal emails referencing "Uber." With respect to the first category, you estimated that there are approximately 200 responsive emails; with respect to the second category, you have not provided an estimate. Please provide an estimate regarding the second category no later than August 7. As a starting point, we note that it takes only a few hours at most to collect and review 200 emails. This is not burdensome.

Further, any purported burden on Dr. Henard as a nonparty is mitigated if Uber is paying for your representation or Dr. Henard's time. To date, you have declined to respond to inquiries regarding whether Uber is paying for your services or your client's time, even citing potential privilege concerns. However, the amount paid for legal services and the identity of the entity paying for such services is not privileged. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *In re Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992). You have identified no other basis for withholding information about the fee arrangement between Uber and your firm regarding Dr. Henard's deposition. Nevertheless, the silence on this question certainly suggests to Plaintiffs that Uber is paying for your services and your client's time. If this is not the case, we welcome your prompt clarification.

Among other things if Uber is funding your representation of Dr. Henard, the collection and review of documents responsive to Plaintiffs narrowly-tailored document requests will impose a negligible (if any) burden on Dr. Henard. The productions other third parties in this litigation have been ordered to make far eclipse what Plaintiffs request from your client. By way of example, nonparty sexual assault advocacy organization RAINN was ordered by the U.S. District Court for the District of Columbia to produce. *See In re Subpoena to Rape Abuse and Incest National Network*, 24-0073-ACR, Transcript Order (D.D.C. Aug. 6, 2024)

NGRV NIGH GOLDENBERG RASO & VAUGHN

(ordering custodial discovery for five "core" custodians regarding RAINN's role in Safety Report). Collecting and reviewing several hundred emails, particularly where this work is likely funded by Uber, does not impose a burden on your client. Again, if this is not accurate, please let us know.

Deposition by written questions is not appropriate here. Uber has a history of drafting public statements and talking points for your client and is likely involved in your representation. Plaintiffs do not need written responses prepared by Uber. Plaintiffs have already asked Uber their questions with no success. Indeed, that is the entire purpose of this deposition. ECF 6533. Therefore, Plaintiffs need to be able to ask Dr. Henard directly. As described herein, Uber's likely involvement in your representation, paired with Plaintiffs' efforts to minimize any remaining potential burden on Dr. Henard, more than suffice to comply with Rule 45.

**Privilege/Confidentiality (Objections 8–9). 7.** To the extent you claim any information requested is subject to any privilege, please produce an appropriate log. However, to the extent you claim any information requested is subject to a nondisclosure or other confidentiality agreement, the Protective Order in this case, ECF 176, will adequately protect your client's or Uber's privacy interest in the underlying material. ECF 695.

**Documents in Uber's Possession (Objection 6).** Dr. Henard objects that information sought is in Uber's possession. As an initial matter, Plaintiffs have made these requests to Uber and Dr. Henard should therefore direct these concerns to Uber, which has failed to preserve and produce responsive documents. In any event, Plaintiffs are not required to exhaust party discovery before seeking these materials from Dr. Henard. *Viacom Intern. Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3–4 (N.D. Cal. Aug. 18, 2008) (rejecting argument that plaintiffs must first exhaust party discovery as "without merit" and stating that there is "no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in a defendant's possession."); *see also Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (rejecting argument that discovery would be "duplicative" because plaintiff was entitled to "verify the accuracy" of defendants' reports and defendant had not demonstrated that sales figures were "fully and completely produced"); *see also Roberts v. Cnty. of Riverside*, 2021 5993528, at *8 (C.D. Cal. Oct 7, 2021) (rejecting argument that, because information sought was allegedly available from other sources, including parties, subpoena must be quashed).

Plaintiffs look forward to continuing to work with you. Please let us know your position on scheduling, timing, and productions by Friday, August 7.

Sincerely,

Marlene Goldenberg
Sam Hoefs
Nigh Goldenberg Raso & Vaughn PLLC

Alex Walsh
Holly Dolejsi
Anapol Weiss

# EXHIBIT F

HOGAN LOVELLS CADWALADER

Hogan Lovells Cadwalader US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

T: +1 202 637 5600
F: +1 202 637 5910
www.hlc.com

August 7, 2026

**By Electronic Mail**

Marlene Goldenberg, Esq.
Nigh Goldenberg Raso & Vaughn PLLC
14 Ridge Square NW
Third Floor
Washington, D.C. | 20016
mgoldenberg@nighgoldenberg.com

**Re: Response to Meet and Confer of August 6, 2026, *In Re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-MD-3084-CRB**

Dear Marlene,

We are writing on behalf of Dr. Indira Henard, National Alliance to End Sexual Violence ("NAESV") and National Network to End Domestic Violence ("NNEDV") (collectively "our clients") in the above-referenced matter (the "Subpoena") in follow-up to the meet and confer held on August 6, 2026.

As you are aware, our clients offered, in the spirit of compromise, to accelerate our production of emails to and from the "@uber.com" domain beyond the 72 hours in advance of a deposition requested by Plaintiffs' counsel. We also reiterated our request for Plaintiffs' counsel to agree to limit a deposition to 3.5 hours but offered to further discuss if we could otherwise reach agreement on document production.

In response, as we were made to understand, Plaintiffs' counsel are demanding that our clients produce all internal emails referencing Uber in addition to its communications with Uber. Plaintiffs' counsel demanded production by this Wednesday, August 12, 2026. Plaintiffs' counsel stated they are unwilling to move from their demand for a full 7-hour deposition because Plaintiffs' counsel are unwilling to limit their time without knowing how much time (if any) Uber will get. In other words, as we understand it, Plaintiffs' counsel have not offered meaningful compromise or narrowing of the Subpoena's request for documents and deposition.

This letter confirms that our clients are unable to accede to Plaintiffs' counsel's demands. As mentioned at the meet and confer and on numerous prior occasions, our clients are experiencing a time of immense logistical struggles, caused by circumstances pre-dating the issuance of the Subpoenas. Our clients nevertheless have been willing to work with Plaintiffs' counsel to find a compromise that would not pose an undue burden, while simultaneously continuing their important work for survivors of sexual assault, sexual violence, and domestic violence. We are disappointed that Plaintiffs' counsel—despite initial indications of willingness to narrow and compromise—have not met us in the middle in any meaningful respect.

As we have continuously stated throughout this process, our clients are committed to resolving any ongoing dispute without requiring judicial intervention and remain open to doing so. In the

meantime, to be clear, our clients are no longer holding the proposed deposition dates on their respective calendars. If Plaintiffs' counsel are unwilling to attempt further compromise, please provide us times via email for Monday, August 10, 2026, when you would be available for a meet and confer regarding a forthcoming motion to modify the Subpoena as required by Local Rule 7(m) for the United States District Court for the District of Columbia.

Sincerely,

**Nadira Clarke**
Partner
nadira.clarke@hlc.com
D: 202 637 6951

**Rebecca Mandel**
Partner
rebecca.mandel@hlc.com
D: 202 637 5488

cc:
Sam Hoefs, shoefs@nighgoldenberg.com
Holly Dolejsi, hdolejsi@anapolweiss.com
Alexandra Walsh, awalsh@anapolweiss.com

# EXHIBIT G

**From:** Walsh, Alexandra <awalsh@anapolweiss.com>
**Sent:** Wednesday, August 12, 2026 8:15 AM
**To:** Levy, Jennifer; Clarke, Nadira; Sam Hoefs; Cham, Mariama
**Cc:** Marlene Goldenberg; Dolejsi, Holly; Mandel, Rebecca C.; Smith, Bolton; Skarjune, Melissa
**Subject:** Re: Correspondence

**[EXTERNAL]**
Sure! Looks like it will have to be 10am tomorrow.

@Cham, Mariama could you please send a calendar invite to this crew?

Thanks

Get Outlook for iOS

---

**From:** Levy, Jennifer <jlevy@kirkland.com>
**Sent:** Wednesday, 12 August 2026 08:03:19
**To:** Clarke, Nadira <nadira.clarke@hlc.com>; Walsh, Alexandra <awalsh@anapolweiss.com>; Sam Hoefs <shoefs@nighgoldenberg.com>
**Cc:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Smith, Bolton <bolton.smith@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>
**Subject:** RE: Correspondence

If this includes discussion of deposition dates I would like to be included (whatever time parameters are agreed-upon will need to include time for Uber to question the witnesses). I'm on vacation this week but will try to join if possible – please copy me on the calendar invite.

**Jennifer G. Levy**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., N.W., Washington, D.C. 20004
**T** +1 202 389 5211 **M** +1 202 378 8015
**F** +1 202 389 5200

jennifer.levy@kirkland.com

---

**From:** Clarke, Nadira <nadira.clarke@hlc.com>
**Sent:** Tuesday, August 11, 2026 9:51 PM
**To:** Walsh, Alexandra <awalsh@anapolweiss.com>; Sam Hoefs <shoefs@nighgoldenberg.com>
**Cc:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Smith, Bolton <bolton.smith@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>; Levy, Jennifer <jlevy@kirkland.com>
**Subject:** RE: Correspondence

Thank you, Alex.

We do appreciate your note that you are willing to have constructive discussions. Is there any possibility we could make tomorrow (Wednesday) work? If not please share proposed times for Thursday.

Nadira

**Nadira Clarke**
Partner

**Hogan Lovells US LLP**
D +1 202 637 6951 | M +1 202 702 1401
nadira.clarke@hoganlovells.com

**Vcard**

---

**From:** Walsh, Alexandra <awalsh@anapolweiss.com>
**Sent:** Tuesday, August 11, 2026 7:56 PM
**To:** Clarke, Nadira <nadira.clarke@hoganlovells.com>; Sam Hoefs <shoefs@nighgoldenberg.com>
**Cc:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hoganlovells.com>; Smith, Bolton <bolton.smith@hoganlovells.com>; Skarjune, Melissa <melissa.skarjune@hoganlovells.com>; Jennifer Levy (jennifer.levy@kirkland.com) <jennifer.levy@kirkland.com>
**Subject:** Re: Correspondence

**[EXTERNAL]**
Sorry! Sent too soon. To complete my message:

We would very much welcome an opportunity to meet and confer on issues that are important to your clients and ours. While we may not be able to resolve the dispute, it is certainly possible we could narrow it and thereby reduce the burden on the Court. We definitely believe it's worth a try. So before making the representations you describe below to the Court, please let us know if you will accept our offer to meet and confer on Thursday.

---

**From:** Walsh, Alexandra <awalsh@anapolweiss.com>
**Sent:** Tuesday, August 11, 2026 7:39 PM
**To:** Clarke, Nadira <nadira.clarke@hlc.com>; Sam Hoefs <shoefs@nighgoldenberg.com>
**Cc:** Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hlc.com>; Smith, Bolton <bolton.smith@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>; Jennifer Levy (jennifer.levy@kirkland.com) <jennifer.levy@kirkland.com>
**Subject:** Re: Correspondence

Hi Nadira, we have offered to meet and confer on Thursday (the day after tomorrow). Are you declining that offer?

---

**From:** Clarke, Nadira <nadira.clarke@hlc.com>
**Sent:** Tuesday, August 11, 2026 7:31 PM
**To:** Sam Hoefs <shoefs@nighgoldenberg.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C.

<rebecca.mandel@hlc.com>; Smith, Bolton <bolton.smith@hlc.com>; Skarjune, Melissa <melissa.skarjune@hlc.com>; Jennifer Levy (jennifer.levy@kirkland.com) <jennifer.levy@kirkland.com>
**Subject:** RE: Correspondence

Sam (and Alex, Marlene, Holly):

Thank you for your below response.
In anticipation of filing our clients' forthcoming motion to modify in U.S. District Court for the District of Columbia, pursuant to Local Civil Rule 7(m), we requested a meet and confer on Friday, August 7. We received no response on that request. We made a second request to meet and confer today, August 11, or tomorrow, August 12, and you indicated that nobody on your team could be available until Thursday, August 13, or Friday, August 14.
Our clients Indira Henard, NAESV and NNEDV are non-parties to the litigation underlying their respective subpoenas. Please be advised that, on behalf of NAESV, we intend to file a motion to modify the terms of the subpoena tomorrow. Similar motions will be filed on behalf of Indira Henard and NNEDV in the following days. In light of your lack of responsiveness to our requests to meet this week and given what you have represented to us in our prior meet and confers (including most recently on August 6, 2026), we intend to represent to the Court that the motion is opposed and that we attempted in good faith to resolve the dispute without court intervention but were unable to do so. As a courtesy, please note that our motion will describe and attach as exhibits, our written communications. I am copying those exhibits here for your awareness. For counsel for Uber's awareness, I am also copying them on this communication.
Nadira

**Nadira Clarke**
Partner

**Hogan Lovells US LLP**
D +1 202 637 6951 | M +1 202 702 1401
nadira.clarke@hoganlovells.com

**Vcard**

---

**From:** Sam Hoefs <shoefs@nighgoldenberg.com>
**Sent:** Tuesday, August 11, 2026 2:05 PM
**To:** Clarke, Nadira <nadira.clarke@hoganlovells.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hoganlovells.com>; Smith, Bolton <bolton.smith@hoganlovells.com>; Skarjune, Melissa <melissa.skarjune@hoganlovells.com>
**Subject:** Re: Correspondence

**[EXTERNAL]**
Hi Nadira,

Unfortunately, we have limited availability this week. Can you let us know your availability for Thursday and Friday of this week?

Thanks,

**Sam Hoefs**

Senior Associate

Nigh Goldenberg Raso & Vaughn, PLLC
800 LaSalle Plaza
Suite 920
Minneapolis, MN
55402

D - (612) 445-0202
T - (202)-792-7927
F - (202)-792-7927

nighgoldenberg.com

Calendly

On Tue, Aug 11, 2026 at 9:30 AM Clarke, Nadira <nadira.clarke@hlc.com> wrote:

Sam (and Alex, Marlene, Holly):

We are in receipt of Plaintiffs' insert to the PTO8 letter regarding nonprofit depositions.

Pursuant to Local Civil Rule 7(m), for a second time, we are requesting that you meet and confer regarding our clients' forthcoming motion, to be filed in U.S. District Court for the District of Columbia. Please provide times for this afternoon or tomorrow, Wednesday, August 12, at the latest, so that we can promptly meet and confer. If you do not respond, we will represent same in our filing. We assume that you will accept service by email. Please promptly notify us if that is not the case and you will require service by other means.

Nadira

**Nadira Clarke**
*Partner*

---

**From:** Sam Hoefs <shoefs@nighgoldenberg.com>
**Sent:** Monday, 10 August 2026 12:56:55
**To:** Clarke, Nadira <nadira.clarke@hoganlovells.com>
**Cc:** Walsh, Alexandra <awalsh@anapolweiss.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Dolejsi, Holly <hdolejsi@anapolweiss.com>; Mandel, Rebecca C. <rebecca.mandel@hoganlovells.com>; Smith, Bolton <bolton.smith@hoganlovells.com>; Skarjune, Melissa <melissa.skarjune@hoganlovells.com>
**Subject:** Re: Correspondence

**[EXTERNAL]**
Hi Nadira,

As discussed on Thursday, Plaintiffs are serving their insert to the PTO 8 letter regarding nonprofit depositions. In accordance with PTO 8, your response on behalf of the nonprofits is due within three business days.

Sam

**Sam Hoefs**
Senior Associate

Nigh Goldenberg Raso & Vaughn, PLLC
800 LaSalle Plaza
Suite 920
Minneapolis, MN
55402

D - (612) 445-0202

T - (202)-792-7927

F - (202)-792-7927

nighgoldenberg.com

Calendly

On Fri, Aug 7, 2026 at 12:13 PM Clarke, Nadira <nadira.clarke@hlc.com> wrote:

Alex, Marlene, Sam and Holly:

Please see attached correspondence. Thank you.

Nadira

**Nadira Clarke**
Partner

**Hogan Lovells US LLP**
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109

**D +1 202 637 6951 | M +1 202 702 1401**

nadira.clarke@hoganlovells.com

Vcard

---

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

---

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

---

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

---

**About Hogan Lovells Cadwalader**
Hogan Lovells Cadwalader is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP. For more information, see www.hlc.com.

**CONFIDENTIALITY.**
This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

**PRIVACY.**
Hogan Lovells Cadwalader processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hlc.com/en/privacy.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO DR. INDIRA HENARD,<br><br>Non-Party Movant, | Miscellaneous Case No. _____ |

*Underlying Action*

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br>(Pending in the United States District Court for the Northern District of California) |

**[PROPOSED] ORDER MODIFYING SUBPOENA TO NON-PARTY DR. INDIRA HENARD**

This matter having come before the Court on the motion of non-party Dr. Indira Henard ("Dr. Henard") for entry of an Order, pursuant to Federal Rule of Civil Procedure 45(d)(3), modifying the subpoena issued by the Plaintiffs in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation,* Case No. 3:23-md-03084-CRB, pending in the United States District Court for the Northern District of California (the "Subpoena"); and the Court having considered the submissions and the argument of counsel; and good cause having been shown; the Court **GRANTS** Dr. Henard's motion in full and modifies the Subpoena thus:

1. Dr. Henard shall produce responsive email communications she had with Uber Technologies Inc. no later than 72 hours before a deposition date to be mutually agreed between Dr. Henard and Plaintiffs;
2. Any deposition of Dr. Henard shall be no longer than 3.5 hours on the record. [OR Any deposition of Dr. Henard shall be upon written questions, reasonably limited

in number and targeted in scope to the specific safety-related engagement of Uber with Dr. Henard.]

**IT IS SO ORDERED.**

Date:

______________________________________
, U.S.D.J.