# EXHIBIT B

FILE COPY

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

No. 07-22-00287-CR

| | | |
|---|---|---|
| Victor Huynh Le<br>Appellant | § | From the 372nd District Court<br>of Tarrant County |
| | § | |
| v. | | August 2, 2023 |
| | § | |
| The State of Texas<br>Appellee | § | Opinion by Chief Justice Quinn |

## JUDGMENT

Pursuant to the opinion of the Court dated August 2, 2023, it is ordered, adjudged, and decreed that the judgment of the trial court be affirmed.

Inasmuch as this is an appeal *in forma pauperis,* no costs beyond those that have already been paid are adjudged.

It is further ordered that this decision be certified below for observance.

o O o

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00287-CR

VICTOR HUYNH LE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1653872D, Honorable Robert P. Brotherton, Presiding

August 2, 2023

## MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, Victor Huynh Le, appeals from his conviction by jury of the second-degree felony offense of sexual assault and his resulting sentence of eleven years of imprisonment. Appellant raises seven issues, challenging 1) proof of venue, 2) admission of evidence, and 3) jury instructions. We affirm.

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

***Background***

In June 2020, the 23-year-old victim lived in Cresson, Texas, with her parents. One night, she went to a bar with her friend and her friend's boyfriend in nearby Arlington, Texas. During the night, the couple got into a fight and left the victim at the bar. She met with other acquaintances and became intoxicated.

At some point, the wife of the manager of the bar called an Uber to take the victim home. Appellant was the responding Uber driver. She entered the back seat. However, appellant told her that if she wanted to go home, she needed to get into the front seat. Though "scared," she wanted to go home and complied. When she did, appellant put "his hand in between [her] legs" and touched her. He then took her hand and placed it on his genitals over his clothing. He next unzipped his pants and made her touch his "bare penis" by holding his hand over hers. Then, as the ride progressed, he placed his hand on the back of her head and pushed her head down onto his penis. She performed oral sex on him because she felt she had no choice. She said she was in a car, on a highway traveling seventy miles an hour, in the middle of the night, and she did not know where she was or what the driver could do. Within about ten minutes of the oral sexual assault beginning, she arrived home. She opened the car door and ran to the door of her house. She went inside, sat on the couch, and "sobbed." She then told her parents what happened, and they called police.

After speaking with the victim, police realized the assault must have occurred in Tarrant County, so the case was transferred to the Sexual Assault Unit of the Fort Worth Police Department. Prosecutors with the Tarrant County district attorney pursued the charge against appellant, resulting in this conviction.

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

***Issues One and Two—Venue***

By his first two issues, appellant argues that the State failed to meet its burden of proving venue within Tarrant County and the trial court erred in denying his request for a directed verdict on the matter. We overrule the issues.

Generally, venue is proper in the county where an alleged sexual offense takes place. TEX. CRIM. PROC. CODE ANN. arts. 13.04 and 13.17; *Edwards v. State*, 97 S.W.3d 279, 285 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The burden of proof is on the State to establish proper venue by a preponderance of the evidence. *Id.* However, it is presumed that venue is proven in the trial court unless the record affirmatively shows otherwise or is made an issue at trial. *Id.* *See* TEX. R. APP. P. 44.2(c)(1). Evidence is sufficient to establish venue if "from the evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Edwards*, 97 S.W.3d at 285. And, when venue is sought to be established by someone in a moving vehicle, specific points of reference and measurable passages of time can establish the offense occurred in the State's proffered county. *Id.* at 286.

Two modes of establishing venue were included in the jury charge. One involved venue when the offense occurs by the border of two counties. TEX. CODE CRIM. PROC. ANN. art. 13.04 (stating that "[a]n offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties . . ."). The other concerns sexual assault. *Id.* at art. 13.15 (stating that "[s]exual assault may be prosecuted in the county in which it is committed, in the county in which the victim is abducted, or in any county through or into which the victim is transported in the course of the abduction and sexual assault").

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

Here, evidence appears of record indicating that the charged offense of oral sexual assault was shown to have occurred, at least in part, in Tarrant County. For instance, appellant directed the victim to move to the front seat if she wanted to go home. That occurred when the vehicle was on I-30 and passing the Channel 11 tower in Fort Worth. Then began the abduction (or so one could reasonably infer) and the locale lay in Tarrant County. So too did she state that when appellant forced her head down onto his penis, they were about ten minutes from her home, and she estimated they were on Route 377 near Whiskey Flats between Cresson and Benbrook. The State presented evidence illustrating that Whiskey Flats was at the intersection of Routes 377 and 1187. That locale lay within Tarrant County. We find this evidence sufficiently preponderated to establish that venue of the sexual assault lay in Tarrant County. So, the trial court did not err in denying the motion for directed verdict.

***Issue Three—Extraneous Bad Act Evidence***

Appellant next contends the trial court reversibly erred when it allowed G.M. to testify to extraneous bad acts of appellant in the guilt/innocence phase of trial. The trial court permitted the testimony as a rebuttal to a defensive theory suggested during voir dire that the victim made a false allegation. It also found the testimony was more probative than prejudicial and instructed the jury on its limited use. However, appellant contends he never presented "false allegation" as a defensive theory and therefore, the trial court erred in admitting the testimony.[2] We overrule the issue.

[2] He also contends G.M.'s testimony was more prejudicial than probative. As noted by the State, appellant failed to develop his Rule 403 argument, did not cite any authority, and did not apply the relevant factors to the facts of this case. As such, he has waived his Rule 403 argument. TEX. R. APP. P. 38.1; *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

We review the admission or exclusion of evidence for an abuse of discretion, which the record shows only when the ruling falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016); *Merrick v. State*, 567 S.W.3d 359, 375 (Tex. App.—Fort Worth 2018, pet. ref'd). Furthermore, authority obligates us to uphold the trial court's decision if correct under any applicable legal theory. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

After appellant objected to the admission of G.M. s testimony, the trial court held a hearing outside the presence of the jury. Following it, the trial court said it was admitting the "extraneous testimony as it was presented during the proffer to rebut the suggestion that was raised in voir dire that there's a false allegation." The parties were also told that such "will be the limited purpose for it" and "[t]he jury will be instructed orally at the time the proffer . . . [and] in writing in the Court's charge."

The evidence in question consisted of G.M.'s testifying that after a work event, she unsuccessfully attempted to obtain an Uber ride. Thereafter, she saw appellant waving his hand and heard his offer to take her home. During the exchange, appellant told her he was an Uber driver, and she accepted his offer. G.M. recognized him from her previous job at the mall and characterized him as a "weird, friendly—weird" guy.

G.M. sat in the front seat of appellant's car as he took her home. He put his hand down her shirt and pulled on her breasts. She removed his hand and told him to stop. That resulted in his accelerating the vehicle. Appellant also "attempted to put his hand down [her] pants." The circumstances "scared" her.

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

Appellant acknowledges that a defensive theory may arise during voir dire. So too does he acknowledge broaching the concept of "false allegations" during voir dire. Other topics broached included 1) consent, 2) opportunities for the victim to exit the car, 3) the unlocked state of the car, 4) the victim's level of intoxication, 5) her credibility, and 6) her purportedly inconsistent stories concerning the events of that night. Though appellant may not have uttered the exact words "she is lying" or "it's all a fabrication," meaning may be inferred from the context of what was said. Juxtapositioning the different topics of his argument as he did could reasonably induce one to think he was insinuating the victim fabricated the allegation of assault. Thus, it was not outside the zone of reasonable disagreement for the trial court to rule that G.M. 's testimony could be admissible to rebut appellant's defensive theories. So, we find no abused discretion here.

***Issues Four and Five—Expert Testimony***

By his fourth and fifth issues, appellant complains of the admission of the testimony of Amy Jones, the chief executive officer for the Dallas Area Rape Crisis Center. Though acknowledging that she had been qualified as an expert in other cases, he contends she was not an expert, her testimony did not meet any of the criteria permitting her to testify and, therefore, the trial court erred in overruling two of his objections to her testimony. We will overrule the issues.

The admission of expert testimony is reviewed on appeal for an abuse of discretion. *Salinas v. State*, No. 02-18-00060-CR, 2019 Tex. App. LEXIS 2996, at *20 (Tex. App.—Fort Worth Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication). A trial court's ruling on the admissibility of it is rarely to be disturbed by an

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

appellate court. *Id*. And, as with other types of evidentiary rulings, we must uphold the ruling unless it lies outside the zone of reasonable disagreement. *Id.*

Before admitting expert testimony, the trial court must be satisfied that three conditions are met: 1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; 2) the subject matter of the testimony is appropriate for expert testimony; and 3) admitting the testimony will actually assist the fact finder in deciding the case. *Salinas*, 2019 Tex. App. LEXIS 2996, at *21-22. These conditions are frequently referred to as 1) qualification, 2) reliability, and 3) relevance. *Id*. at *21.

Qualification need not be established through education; knowledge, skill, training, or experience may suffice. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). The witness must have a sufficient background in a particular field, and the trial court must determine if the background applies to the matter on which the witness is expected to testify. *Id.* As acknowledged in *Davis*, "years of researching, studying, teaching, and advising about the subject" can carry the day despite the lack of formal education or lack of authorship on the topic. *Id.* at 814.

Reliability focuses on the subject matter of the witness's testimony. *Salinas,* 2019 Tex. App. LEXIS 2996, at *21-22. The proponent of the expert testimony must demonstrate by clear and convincing evidence that the expert testimony is reliable. *Id.* at *21. The focus of the reliability analysis is to determine whether the evidence has its basis in sound scientific methodology so as to eliminate testimony about "junk science." *Id.* And, in cases of a soft science, like that discussed by Jones, the proponent of the expert testimony must establish that 1) the field is a legitimate one, 2) the subject

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

matter of the expert's testimony is within the scope of that field, and 3) the expert's testimony properly relies on or utilizes the principles involved in that field. *Id.* at *22. But the methods of proving reliability can vary with a soft science. *Id.*

In turn, "[r]elevance is by nature a looser notion than reliability." *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. 1996). To show relevance, the expert "must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of [the expert's] testimony." *Id.*

Here, Jones testified she 1) was the chief executive officer of the Dallas Area Rape Crisis Center, 2) conducts training for attorneys, law enforcement, the community, and various social services agencies on sexual assault, 3) obtained her master's degree in professional counseling, 4) spent nearly twenty years working directly with sexual assault survivors, 5) worked with "over a thousand, if not 1500, survivors as a therapist," 6) has done "anything that you can imagine in a rape crisis center or domestic violence agency . . . ," 7) had expertise in "the dynamics of sexual and domestic violence which includes intimate partner violence, the impact of that, . . . typical victim behavior, the impact of that, the immediate acute impact of that, the long-term impact of that; trauma in the brain, understanding how trauma affects someone in what we might call in this setting some counterintuitive victim behavior . . . ," and 8) had experience in addressing various myths concerning sexual assault and responses to it. And, it seems rather nonsensical to deny that the trauma wrought by sexual abuse, assault, and violence on a victim's behavior and psyche is a legitimate field of study. *See e.g., Brewer v. State*, 370 S.W.3d 471, 474 (Tex. App.—Amarillo 2012, no pet.) (recognizing that Texas courts found expert testimony concerning the dynamics of domestic violence admissible under Rule of

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

Evidence 702); *see also Chavez v. State*, No. 01-19-00002-CR, 2020 Tex. App. LEXIS 5572, at *14-15 (Tex. App.—Houston [1st Dist.] July 21, 2020, pet. ref'd) (mem. op., not designated for publication) (recognizing that "[e]xpert testimony concerning general behavioral characteristics of sexually abused children, however, is admissible because it 'helps the jury understand the seemingly illogical behavior of the child who changes her story, seems confused, and does not immediately disclose a sexual assault'"). These circumstances and evidence place the trial court's decision to deem Jones as qualified to testify on the topic as an expert within the zone of reasonable disagreement. The same is also true regarding the decision to view her testimony as reliable.

As for relevance, appellant believed the testimony irrelevant because she had not previously reviewed the victim's case and failed to tie her expertise to the facts and details of it. Yet, an expert may base an opinion on facts or data made known before and during trial. *In re Commitment of Regalado*, 598 S.W.3d 736, 743 (Tex. App.—Amarillo 2020, no pet.). Thus, an expert is not required to interview the complainant or review particular evidence before trial. Moreover, the tenor of Jones's expected testimony was not to focus on the victim at bar but rather on the characteristics or behaviors of those who suffered assault akin to the victim. The jury would then be free to compare those characteristics to the victim's conduct while assessing her credibility. And, appellant cannot deny that her credibility was under attack.

Jones also illustrated a link between her expertise and the prosecution through her extensive experience with people involved in sexual assault and the behaviors they may exhibit. She testified to those behaviors in a way that could explain why appellant's victim "acquiesced" to the assault, why she did not escape, why she did not remember certain

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

aspects of the assault, and why her version of events may have changed over time. This, in turn, leads us to also conclude that deeming her testimony relevant fell within the zone of reasonable disagreement. So, in short, the trial court did not abuse its discretion in permitting her to testify as she did.

As for two specific objections raised by appellant, they involved the questions: 1) "What about—what are some of the reasons that you have seen from survivors where they have a hard time talking about everything that happened during the initial conversations," and 2) "[d]o you come across any misconceptions about the force or energy that perpetrators put into executing a sexual assault?" Appellant contends that the questions were irrelevant and outside the scope of Jones's permissible testimony. However, allowing the witness to answer them can be viewed as assisting the jury in understanding why the victim acted in the manner she did, in understanding why she told her version of events the way she did, and in evaluating whether she was a credible witness. Such are permissible reasons to allow expert testimony. *See, e.g.*, *Chavez*, *supra.* Again, we find no abused discretion.

***Issues Six and Seven—Jury Charge Error***

By his final two issues, appellant contends the trial court erred by including various statements in its jury charge. We overrule the issues.

The first statement consists of informing the jury that "[a]n offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties."[3] Allegedly, no evidence supported its submission. Appellant is mistaken.

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 13.04 (so providing).

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

While appellant argues the evidence conclusively demonstrated the sexual assault occurred in Parker County, the victim testified the oral assault began ten minutes before she arrived home, near the Whiskey Flats area. The State provided as evidence a map of the area showing Whiskey Flats is at the intersection of Routes 377 and 1187 inside Tarrant County, within sight of the Parker County line. This is some evidence supporting the proposition that the sexual assault occurred "on the boundaries of two or more counties, or within four hundred yards thereof". Thus, the trial court did not err in including this instruction in its charge to the jury.

The second statement involves the trial court's definition of "without consent." Through it, the jurors were told that a sexual assault is without consent if the "actor compels the other person to submit or participate by threatening to cause harm to the other person, and the other person believes that the actor has the present ability to execute the threat." Appellant argues there was no evidence of any actual threat and, consequently, the definition should have been omitted. He is again mistaken.

At trial, the State presented evidence of appellant directing the victim to sit in the front if she wanted to go home. This occurred after she had entered the rear seat and the ride began. That left the victim feeling scared and believing that she had no option but to acquiesce. Her feeling of being threatened continued due to being in a motor vehicle traveling at seventy miles per hour late at night in an area with which she was unfamiliar while being unable to leave the car and not knowing of what appellant was "capable." Nor can we ignore the testimony of appellant forcing her head down toward his penis as he drove. Threats need not be explicit. Implicit ones may be just as effective. The aforementioned evidence would permit a rational fact finder to interpret appellant's

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

actions as a threat placing her safety in jeopardy if she did not cooperate. So, too would it warrant the trial court's submitting the definition in question.

Having overruled each issue, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.

FILE COPY

A CERTIFIED COPY
ATTEST: 03/06/2024
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Christopher Geiger

BRIAN QUINN
Chief Justice

JUDY C. PARKER
Justice

LAWRENCE M. DOSS
Justice

ALEX YARBROUGH
Justice

# Court of Appeals

Seventh District of Texas
Potter County Courts Building
501 S. Fillmore, Suite 2-A
Amarillo, Texas 79101-2449
www.txcourts.gov/7thcoa.aspx

BOBBY RAMIREZ
Clerk

MAILING ADDRESS:
P. O. Box 9540
79105-9540

(806) 342-2650

August 2, 2023

Heather M. Lytle
Attorney at Law
500 East Front Street #160
Arlington, TX 76011
* DELIVERED VIA E-MAIL *

Anne Grady
Assistant Criminal District Attorney
401 West Belknap, 4th Floor
Fort Worth, TX 76196
* DELIVERED VIA E-MAIL *

**RE:** Case Number: 07-22-00287-CR
Trial Court Case Number: 1653872D

**Style:** Victor Huynh Le v. The State of Texas

Dear Counsel:

The Court this day issued an opinion and judgment in the referenced appeal. *See* TEX. R. APP. P. 48.

Pursuant to Section 51.204(b)(2) of the Texas Government Code, exhibits on file with this Court, if any, will be destroyed three years after final disposition of the case or at an earlier date if ordered by the Court.

Sincerely,
Bobby Ramirez
Bobby Ramirez, Clerk

cc: Honorable David Scott Wisch (DELIVERED VIA E-MAIL)
Honorable Robert P. Brotherton (DELIVERED VIA E-MAIL)
Thomas A. Wilder (DELIVERED VIA E-MAIL)