[Submitting Counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 23-MD-03084-CRB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR TEMPORARY PROTECTIVE ORDER**<br><br>Judge: Honorable Charles R. Breyer<br>Date: September 25, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6 – 17th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 25, 2026, at 10:00 A.M. PST, before the Honorable Charles R. Breyer, Plaintiffs will and hereby do, move for a temporary protective order pursuant to Federal Rule of Civil Procedure 26(c) in the form of an order prohibiting Uber from accessing, using, or disseminating materials obtained from non-party legal marketing and client acquisition services pending resolution of these discovery disputes before Magistrate Judge Lisa J. Cisneros.

The documents at issue (which are wholly irrelevant to the claims and defenses in this MDL) contain information protected under the attorney-client privilege and work product doctrine, and include improper disclosure of personal identifying information, private and personal accountings of individuals' sexual assaults and trauma made for the purpose of seeking legal assistance, not only for this litigation but dozens of others, including OBGYN abuse, clergy abuse, human trafficking, opioids, Camp Lejeune, hair relaxer, talc powder, Roundup, social media harms, Paraquat, and many more. It appears the productions disclose client information for over 80,000 individuals. Plaintiffs are filing motions to quash and for protective orders over these documents, and have attempted to meet and confer with Uber, but irreparable harm will result if Uber is permitted to continue reviewing, using, and potentially disseminating this information while negotiations and, if necessary, discovery briefings are conducted.

The Motion will be made on this Notice and Motion, the accompanying declaration, and the Memorandum of Points and Authorities below.

## TABLE OF CONTENTS


I. INTRODUCTION .... 5

II. BACKGROUND .... 6

A. The Subpoenas .... 7

B. Uber's Motion to Compel and Resulting Productions .... 8

III. LEGAL STANDARDS .... 9

IV. ARGUMENT .... 10

A. Uber Served Subpoenas Despite the Stay of Plaintiff Discovery Outside the Bellwether Cases and Failed to Provide Notice Under Rule 45 .... 10

B. The Subpoenas Demand Irrelevant Information .... 11

C. The Subpoenas Demand Privileged Attorney-Client Communications .... 12

1. The Communications Are Confidential .... 13

2. The Communications Were Made in the "Course of" the Attorney-Client Relationship .... 15

D. The Subpoenas Violate Constitutional Rights to Privacy .... 15

E. The Subpoenas Demand Protected Attorney Work Product .... 17

V. CONCLUSION .... 19

# TABLE OF AUTHORITIES

## CASES

*Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104 (9th Cir. 2005) ..... 14

*Boler v. Super. Ct.*, 247 Cal. Rptr. 185 (Cal. Ct. App. 1987) ..... 15

*City & Cnty. of San Francisco v. Super. Ct. In and For City and Cnty. of San Francisco*, 231 P.2d 26 (Cal. 1951) ..... 14

*Deslandes v. McDonald's USA, LLC*, 2019 WL 7480646 (N.D. Ill. July 17, 2019) ..... 14

*Doe by and through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d 721 (S.D. Cal. 2021) ..... 16

*Doe v. Doe 1,* 2026 WL 1370113 (C.D. Cal. Mar. 25, 2026) ..... 11

*Hickman v. Taylor*, 329 U.S. 495 (1947) ..... 18

*Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992) ..... 17

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) ..... 17

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3416644 (N.D. Cal. July 14, 2024) ..... 9, 11, 12

*Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076 (C.D. Cal. 2010) ..... 17

*Kerner v. Super. Ct.*, 141 Cal. Rptr. 3d 504 (Cal. Ct. App. 2012) ..... 13

*Laub v. Horbaczewski*, 331 F.R.D. 516 (C.D. Cal. 2019) ..... 15

*Moreno v. AutoZone, Inc.*, 2008 WL 906510 (N.D. Cal. Apr. 1, 2008) ..... 18

*Pearce v. Club Med Sales, Inc.*, 172 F.R.D. 407 (N.D. Cal. 1997) ..... 16

*PlayUp, Inc. v. Mintas*, 2024 WL 472639 (D. Nev. Feb. 6, 2024) ..... 9

*Priest v. Rotary*, 98 F.R.D. 755 (N.D. Cal. 1983) ..... 16

*Ulrich v. General Motors LLC*, 2026 WL 183676 (S.D.N.Y. Jan. 23, 2026) ..... 13, 18

*Vinson v. Super. Ct.*, 740 P.2d 404 (Cal. 1987) ..... 15

## STATUTES

Cal. Evid. Code § 951 ..... 14

Cal. Evid. Code § 952 ..... 13

Cal. Evid. Code § 954 ..... 13

Fed. R. Civ. P. 26 ..... *passim*

Fed. R. Civ. P. 45 ..... 10

## I. INTRODUCTION

Uber issued third-party subpoenas to numerous marketing and client acquisition services. Beyond seeking clearly irrelevant information, the subpoenas swept in attorney-client communications, work product, and other confidential and intensely personal information maintained by these litigation support entities. Critically, the productions to date have exposed privileged and confidential information of over 80,000 individuals seeking legal representation across many litigations not limited to Uber, including OBGYN abuse, clergy abuse, human trafficking, opioids, Camp Lejeune, hair relaxer, talc powder, Roundup, social media harms, Paraquat, and more. The productions disclose individuals' full names, home and email addresses, phone numbers, and other personally identifying information. More troubling still, the productions include each potential plaintiff's personal narrative descriptions of the harms experienced, including details of sexual assaults, child sexual abuse, addictions, medical conditions, and other deeply sensitive matters—all of which were provided by these individuals in the course of seeking legal representation. The most recent productions were served on August 7 and August 17, totaling over 17,000 documents. The materials span law firms and individuals with no connection at all to this MDL, and there is no indicia that they have been notified and provided an opportunity to seek relief.

Uber should never have served these subpoenas. On their face, the requests are wholly irrelevant to this case and reflect a flagrant abuse of the discovery system. Plaintiffs will address this discovery dispute with Magistrate Judge Cisneros and have requested to meet and confer with Uber. But right now, it is imperative that the already produced documents—which are replete with privileged information—be sequestered, a case management issue properly brought before this Court.

Accordingly, Plaintiffs seek a temporary protective order to prevent Uber from accessing, using, or disseminating the materials until all impacted parties are notified and Plaintiffs and other parties have had an opportunity to review the productions in their entirety for privilege, work product, privacy, and relevance, and Judge Cisneros resolves any disputes.

## II. BACKGROUND

To the best of Plaintiffs' knowledge, Uber served third-party document subpoenas on the following entities: Isla Marketing, LLC d/b/a LegalCove.com (Isla); Publisher First, Inc. d/b/a Freestar (Freestar); Mass Tort Ad Agency (MTAA); Blue Sky Legal, LLC (Blue Sky); and Meta Platforms, Inc. (Meta). *See* Hurd Decl. at Exs. 1 (Isla Subpoena), 2 (Freestar Subpoena), 3 (Blue Sky Subpoena), 4 (Meta Subpoena), 5 (MTAA Subpoena). On August 19, 2026, Plaintiffs learned for the first time that Uber also served a subpoena on NexLevel Direct LLC (NexLevel) back in December 2025.[1] *See* Hurd Decl. Ex. 9.

MTAA is a legal advertising and case acquisition services company that contracts with law firms for specific litigations. *See Uber v. Mass Tort Ad Agency*, M.D. Fla. Case No. 26-mc-00012, ECF No. 7 at 2 (attached as Ex. 6). When MTAA is engaged, it builds a web page with a questionnaire or "lead form" designed to identify individuals who may have viable claims. *See id.* These lead forms are created with criteria supplied by counsel, and are directly informed by attorneys' legal analysis related to statutes of limitations, qualifying injuries, liability, causation, and other relevant criteria. Several law firms engaged MTAA to connect with potential clients seeking representation against Uber related to sexual assaults committed by its drivers. *See id.* at 4. As part of that work, MTAA created intake forms that captured potential clients' full names and contact information (email address, phone number), the nature of the assault, a narrative summary of the assault, and the dates of incidents. *See* Hurd Decl. at ¶ 13. The forms required potential clients to acknowledge that they understood this was an attorney advertisement and they expressly requested to be contacted by a law firm. *See id.* at ¶ 10. Once a potential client filled out the form and submitted it to MTAA, it was "transmitted directly and automatically to the law firm or the law firm's designated intake agent. That [was] the end of MTAA's involvement with that individual." *MTAA*, M.D. Fla. Case No. 26-mc-00012, ECF No. 7, Ex. 6 at 2.

Blue Sky likewise provides attorney-advertising campaigns and client intake services for specific litigations. The forms and webpages created by Blue Sky for its work on the Uber sexual

[1] In violation of Rule 45, Uber failed to serve Plaintiffs with Notice of Intent to Serve MTAA and NexLevel. Plaintiffs became aware of the MTAA subpoena when the recipient made a production, and only became aware of NexLevel when Plaintiffs pressed Uber for a full accounting of all third parties at issue. *See infra*.

assault litigation included the names of specific law firms and invited survivors to request a free confidential claim review from attorneys. *See* Hurd Decl. at ¶ 16. These forms also captured potential clients' names, contact information, dates of birth, incident dates and locations, ride information, type of assault, whether the incident was reported, whether treatment or counseling was received and where, and detailed narrative descriptions of the abuse. *See id.* at ¶ 17. Blue Sky also appears to have facilitated the execution of retainer agreements with law firms as part of this workflow. *See id.* at ¶ 19.

Isla Marketing provides similar services to Blue Sky and MTAA but first establishes contact with potential clients and then connects them with attorneys for potential representation. Isla appears to have created and operated a webpage dedicated to Rideshare assault claims that explained their attorneys were committed to providing support. *See* Hurd Decl. at ¶ 21. The webpage includes a questionnaire requesting the client's first and last name, email address, telephone number, incident date, a brief description of what occurred, and the type of abuse or assault suffered. *See id.* The form further states that by providing a cell phone number, the potential client acknowledged and consented to receive communications from lawyers. *See id.*

Freestar appears to be a programmatic advertising partner that serves advertisements. *See* Freestar, https://freestar.com/.

NexLevel, whom Plaintiffs only learned of on the eve of this filing, is believed to also be a legal marketing and plaintiff acquisition service.

As discussed below, Uber's subpoenas to these litigation support and client services entities are breathtaking in scope and brazenly exceed the bounds of permissible discovery.

### A. The Subpoenas

The subpoenas Uber issued to Isla, MTAA, and NexLevel  contain more than a dozen requests, spanning from January 1, 2018 to present, for two broad categories of materials. *First*, they seek "ANY AND ALL DOCUMENTS" related to "LEADS," defined as "potential plaintiffs" in this litigation, including communications with leads and law firms, alleged fraud, alterations, fabrications, claim screening, and vetting materials. *See* Hurd Decl. at Exs. 1, 5, 9. *Second*, the subpoenas seek "ANY AND ALL DOCUMENTS" related to "creative content" for this litigation,

geographic targeting, return-on-investment reports, budgets, and tracking information like Meta Pixel data. *See id.*

The subpoena to Blue Sky includes the same requests, plus an additional dozen requests, including "ANY AND ALL retainer agreements" provided to clients and "ANY AND ALL DOCUMENTS" related to intake scripts, lead criteria, and advertising for this litigation. *See* Hurd Decl. at Ex. 3.

The subpoena to Meta demands essentially the entire account history of a Facebook profile associated with an @islamarketing.com email address, including "all communications, including those transmitted via Facebook Messenger to and from the" profile, private messages, group messages and chats, and attachments; "all content created, posted, shared, or stored by" the profile; and all documents pertaining to any advertisement run or otherwise promoted by the profile. *See* Hurd Decl. at Ex. 4.

The subpoena to Freestar demands "any and all documents" related to litigation advertising, including ad layouts, marketing strategies, agreements, budgets, geographic targeting, ad placement, return-on-investment reports, engagement metrics, and communications concerning advertisements or social media posts related to the litigation. *See* Hurd Decl. at Ex. 2.

**B. Uber's Motion to Compel and Resulting Productions**

On April 1, 2026, Uber filed a motion to compel compliance with the MTAA subpoena in the U.S. District Court for the Middle District of Florida. *MTAA*, M.D. Fla. Case No. 26-mc-00012, ECF No. 1 (attached as Ex. 7). Uber failed to provide notice to MDL Plaintiffs' counsel of its intent to serve the subpoena or of the Florida enforcement proceedings.[2] The docket indicates that MTAA, which was *unrepresented* in the Florida case, agreed to produce documents after conferring with Uber's counsel, mooting the motion to compel. *See id.* at ECF No. 14 (attached as Ex. 8).

Ultimately, MTAA, along with Isla, Blue Sky, and Meta, produced materials responsive to Uber's subpoenas. The productions total more than 17,000 documents.

The documents produced in response to these subpoenas confirm the harms apparent on the face of each subpoena. As noted above, the productions contain the full names, email and home

[2] Plaintiffs do not know if other motions to compel for other entities were filed as they have received no notice.

addresses, and telephone numbers of thousands of Uber sexual assault survivors responding to questionnaires seeking legal representation, including graphic descriptions of being subjected to heinous sexual acts committed by Uber drivers. *See* Hurd Decl. at ¶¶ 11, 13, 14, 18, 22.[3] This information was disclosed in the course of seeking legal representation, and a substantial amount of it was provided by individuals who are not even a party to this litigation. Uber is not entitled to this information and should never have asked for it.

The breach doesn't stop with this litigation. The MTAA production includes a broad swath of information for more than 80,000 potential clients spanning various litigations, *e.g.,* OBGYN abuse, clergy abuse, human trafficking, opioids, Camp Lejeune, hair relaxer, talc powder, Roundup, social media harms, Paraquat, and many more. *See* Hurd Decl. at ¶ 8. It includes privileged and confidential materials regarding the identities, contact information and medical conditions of potential plaintiffs across all of these different cases, as well as detailed descriptions of sexual assaults, childhood sexual abuse, sex trafficking, addictions, medical diagnoses, and other deeply personal traumas or injuries. The productions also include notes indicating whether and why some individuals were "disqualified" from a particular litigation, according to criteria and legal analysis presumably provided by counsel in those litigations. *See id.* at ¶ 13.

Finally, Meta produced responsive documents that appear to include information in the form of account data, including IP addresses, login/logout timestamps, and the associated email address for the targeted Isla Marketing Facebook account.[4]

## III. LEGAL STANDARDS

Rule 26(c) authorizes the Court to issue a protective order for good cause shown restricting third-party discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A party may seek a protective order with respect to a third-party subpoena where the subpoena implicates that party's own rights or privileges. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3416644, at *2 (N.D. Cal. July 14,

[3] To protect privacy interests, Plaintiffs refrain from including the details of these narratives in this motion, but can provide the Court with examples for *in camera* review should that be needed.

[4] The current Meta production does not appear to contain the same categories of privileged and confidential information produced by Isla, MTAA, and Blue Sky. However, the subpoena remains facially overbroad and it is unclear to Plaintiffs whether Meta will produce additional documents.

2024). The Court's authority under Rule 26 includes "forbidding the disclosure or discovery" at issue and ordering a party "not to review or utilize the subpoena responses that had been provided[.]." Fed. R. Civ. P. 26(c)(1)(A); *PlayUp, Inc. v. Mintas*, 2024 WL 472639, at *1 (D. Nev. Feb. 6, 2024).

## IV. ARGUMENT

A temporary protective order is necessary to protect Plaintiffs and nonparties from annoyance, embarrassment, oppression, and undue burden while the parties negotiate, and if necessary litigate, the validity of the subpoenas. *First*, Uber failed to notify Plaintiffs' counsel of its intent to serve the MTAA subpoena prior to its service, in violation of Rule 45(a)(4), preventing Plaintiffs from raising objections before compliance. The subpoenas are further procedurally defective because the Court expressly stayed all discovery on Plaintiffs, with the exception of discovery specific to the bellwether cases *Second,* the subpoenas seek vast categories of irrelevant discovery, including information about nonparty sexual-assault survivors, attorney advertising, and records from unrelated litigation. *Third*, the subpoenas invade the attorney-client privilege by demanding confidential communications submitted by clients and prospective clients seeking legal representation. *Fourth*, the subpoenas intrude on profound privacy interests, including sexual assault history, discovery of which is not proportional to the needs of this case. *Fifth*, the subpoenas seek protected work product by targeting counsel-directed screening criteria, questionnaire content, and communications reflecting counsel's legal analysis and case-development strategies.

### A. Uber Served Subpoenas Despite the Stay of Plaintiff Discovery Outside the Bellwether Cases and Failed to Provide Notice Under Rule 45

Uber's subpoenas are procedurally improper. The subpoenas were served from December 2025 through April 2026, after the Court's December 2023 order that "all discovery on Plaintiffs remains stayed," with the exception of disclosures not at issue here. PTO No. 5, ECF No. 175, ¶ 4(B). The only plaintiff-side discovery later authorized was discovery specific to the bellwether cases (and limited depositions in cases where Uber alleged false ride receipts). The subpoenas are therefore in violation of the Court's discovery orders and improper from the outset.

Moreover, the MTAA and NexLevel subpoena failed to comply with Rule 45, which

provides that if a subpoena commands the production of documents or electronically stored information "then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). The notice requirement exists to "enabl[e] the other parties to object[.]" Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment.

Uber failed to provide Plaintiffs with any notice of the MTAA and NexLevel subpoena. Plaintiffs became aware of the MTAA subpoena only upon receiving a sprawling production of nearly 17,000 documents containing privileged, protected, and confidential information. As to NexLevel, Plaintiffs learned of this subpoena only during the preparation of this Motion, when Plaintiffs had requested a full accounting of all third parties at issue. Plaintiffs had no opportunity to object to these subpoenas prior to the compliance date to protect their interests. Plaintiffs had no opportunity to intervene in the Florida proceedings where Uber's counsel convinced unrepresented party, MTAA, to turn over an indiscriminate document production. The prejudice is plain, and the appropriate remedy is for a temporary protective order prohibiting Uber from accessing, using, or disseminating produced materials until all impacted parties are notified and Plaintiffs and other parties have had an opportunity to review the production and raise any relevant discovery disputes before Magistrate Judge Cisneros.

**B. The Subpoenas Demand Irrelevant Information**

The subpoenas are equally defective in substance. They demand, and the resulting productions in fact contain, vast categories of material with no conceivable relevance to this litigation. Rule 26 does not permit discovery untethered to the parties' claims or defenses. *See* Fed. R. Civ. P. 26(b)(1).[5]

Uber's subpoenas explicitly encompass information specific to sexual assault survivors who never filed suit against Uber, demanding "any and all documents" related to any "*potential* plaintiff" to this litigation, as well as potential plaintiffs in litigation that does not involve Uber at

---

[5] A party may seek to protect its interests related to relevance and burden through a protective order pursuant to Rule 26(c) regarding a subpoena issued to a nonparty if it believes its own interest is jeopardized by the discovery sought from that nonparty." *In re Uber Techs.,* 2024 WL 3416644 at *3 (cleaned up) (citations omitted). Uber itself recently served a discovery dispute letter brief purporting to challenge subpoenas served on non-parties in the *QLF 001* bellwether case.

all. The subpoenas also request broad categories of irrelevant (and protected) information related to how counsel formed attorney-client relationships, screening criteria, geographic targeting, marketing budgets, and performance metrics for advertisements. There is no credible justification for this discovery that, by its own terms, targets potential litigants who are strangers to this litigation, and seeks swaths of information that has no bearing on the parties' claims or defenses. *See Doe v. Doe 1,* 2026 WL 1370113, at *1 (C.D. Cal. Mar. 25, 2026) (quashing on relevance and proportionality grounds a subpoena requesting "a copy of the Facebook advertisement [seen] by Plaintiff, all public advertising approved or displayed in the 90 days before the firm's contact with Plaintiff, and any lead-generating service that led to Plaintiff retaining the firm").

Uber contended in the Florida proceedings, of which Plaintiffs had no notice, that the MTAA subpoena was necessary to root out fraudulent ride receipts and fabricated claims. *See MTAA*, M.D. Fla. Case No. 26-mc-00012, ECF No. 1, Ex. 7 at 4. This purported rationale was based purely on Uber's speculation that MTAA "*may* be involved in, or have knowledge of" fraud and "*may* possess" relevant information. *Id.* at 11, 13. Even assuming alleged fraud in filed Uber cases is a proper basis for third-party discovery, and that Uber's unsupported hunch is sufficient to justify such expansive requests, the subpoenas here remain completely irreconcilable with Uber's stated purpose. Nonparties who never filed suit against Uber have no relevance to Uber's fraud theory. Nor does that thin justification support Uber's requests for "any and all" information related to Plaintiffs and potential plaintiffs and various aspects of the litigation support companies' work, such as marketing campaigns, marketing budgets and geographic targeting decisions.[6]

If Uber has evidence that a specific Plaintiff submitted fraudulent documentation, the proper vehicle is targeted discovery or a narrowly tailored request tied to that Plaintiff, not a dragnet through privileged and confidential information belonging to clients and nonparties who never filed suit. "[T]he Court cannot bend the relevance and proportionality standards so that Defendant can follow a hunch[.]" *Doe 1,* 2026 WL 1370113, at *3.

**C. The Subpoenas Demand Privileged Attorney-Client Communications**

Uber's subpoenas demand, and Uber has already obtained, confidential intake

[6] Uber cannot "demonstrate the relevancy" of requests for "all" documents and the Court consistently denies these kinds of requests. *In re Uber Techs.*, 2024 WL 3416644 at *6.

communications and questionnaire responses submitted by prospective clients to MTAA, Blue Sky, and Isla for the purpose of seeking legal representation. These communications are squarely protected from disclosure by the attorney-client privilege. The fact that communications were made through MTAA, Blue Sky, or Isla, acting as agents of clients and counsel, makes no difference. Uber cannot obtain confidential intake communications from an attorney's agent that it could not obtain directly through the attorney herself.[7]

The attorney-client privilege attaches to "confidential communications" between an attorney and client (or prospective client) made in "the course of" the attorney-client relationship. Cal. Evid. Code §§ 952, 954; *Kerner v. Super. Ct.*, 141 Cal. Rptr. 3d 504, 529 (Cal. Ct. App. 2012) (privilege attaches "even if the attorney is never hired"). Communications are "confidential" if they are disclosed to "no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information[.]" Cal. Evid. Code § 952.

1. <u>The Communications Are Confidential</u>

MTAA, Blue Sky, and Isla performed the "reasonably necessary" function of connecting prospective clients with counsel. Courts have recognized that this is an "essential" task in mass actions involving thousands of potential plaintiffs across the country, where there is no other realistic way to inform potential plaintiffs of the litigation and provide a mechanism for them to pursue their claims. In *Ulrich v. General Motors LLC*, the Southern District of New York explained that an entity performing similar services as MTAA, Blue Sky, and Isla "was acting as an agent of class counsel by performing the essential service of informing potential class members about the [] class action and providing a mechanism for them to share their stories . . . and get involved in the litigation . . . Accordingly, the questionnaires constitute communications between prospective clients and class counsel's agent." 2026 WL 183676, at *5 (S.D.N.Y. Jan. 23, 2026) (cleaned up). The court rejected the defendants' framing that "advertising services" were not necessary for counsel to communicate with clients: "S4 facilitated communications between prospective clients

[7] Plaintiffs are in the process of reviewing the productions to determine the full extent to which documents or communications involving MDL Plaintiffs or their counsel have been disclosed. But there is no question that a violation has occurred.

and class counsel—***an essential task in mass litigation involving thousands of consumers across the 50 states*** . . . S4, acting at the direction of class counsel, received users' questionnaires regarding their potential legal claims against [the defendant] and connected them to class counsel for ongoing litigation." *Id.* at *6.

The court in *Berger Montague v. Robinhood Financial* held similarly, reasoning that plaintiffs' counsel "is a law firm, it is not a marketing agency, and the firm partnered with Season 4 [to place advertisements concerning the class action] to gain clients in order to maintain an effective class action . . . [Season 4's] marketing and connection services were necessary to Berger Montague to obtain clients for this matter." S.D.N.Y. Case No. 23-mc-00075, ECF No. 31 at 40:15-25. The Ninth Circuit too has made clear that online intake forms do not change the privilege analysis, emphasizing that "[t]he changes in law and technology that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable [attorney-client privilege] principles." *Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal*., 410 F.3d 1104, 1112 (9th Cir. 2005). Underscoring the confidential nature of the communications, the MTAA's intake forms were submitted directly to the law firms without additional involvement by MTAA or used by MTAA for independent purposes. *See MTAA*, M.D. Fla. Case No. 26-mc-00012, ECF No. 7, Ex. 6 at 2 (intake forms are "transmitted directly and automatically to the law firm or the law firm's designated intake agent."). Blue Sky forms and webpages further stated that consultations with attorneys were 100% confidential. *See* Hurd Decl. at ¶ 16.

To the extent Uber argues Isla was acting for potential clients rather than law firms, that distinction makes no difference. "It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both." *City & Cnty. of San Francisco v. Super. Ct. In and For City and Cnty. of San Francisco*, 231 P.2d 26, 31 (Cal. 1951); *see also* Cal. Evid. Code § 951 (defining "client" as a "person who, directly *or through an authorized representative*, consults a lawyer") (emphasis added).

2. The Communications Were Made in the "Course of" the Attorney-Client Relationship

The Ninth Circuit has recognized that individuals who complete a law firm's online questionnaire "with a view to retention of the law firm" are communicating "in the course of" an attorney-client relationship and thus are presumptively privileged. *Barton*, 410 F.3d at 1110 (internal quotation marks omitted); *see also Deslandes v. McDonald's USA, LLC*, 2019 WL 7480646, at *5 (N.D. Ill. July 17, 2019) ("as Plaintiff sought legal guidance through the questionnaire, attorney-client privilege attaches to protect the communication.").

Here, prospective clients understood that they were providing information for the purpose of obtaining legal representation. MTAA's questionnaire, for instance, required individuals to acknowledge that they understood that they were responding to attorney advertising and expressly requested to be contacted by a law firm. *See* Hurd Decl. at ¶ 10. The Isla form similarly contained an acknowledgement that potential clients agreed to be contacted by lawyers and stated experienced attorneys were committed to providing support. *See id.* at ¶ 21. The Blue Sky workflow included the names of law firms directly on the advertisements with the intake forms. *See id.* at ¶ 16. These communications were thus plainly made with the view of retaining counsel and thus in the course of the attorney-client relationship.

**D. The Subpoenas Violate Constitutional Rights to Privacy**

Even if communications are not privileged, the significant privacy rights at stake warrant protection. As set out above, the productions include the names, addresses, emails, and phone numbers of sexual assault survivors,[8] and often include detailed descriptions of their sexual assaults.

Federal courts recognize a constitutional right to privacy encompassing a right to nondisclosure of one's personal information, along with the privacy rights protected by state constitutions or statutes. *See Laub v. Horbaczewski*, 331 F.R.D. 516, 521-22 (C.D. Cal. 2019). "Resolution of a privacy objection requires a balancing of the need for the particular information against the privacy right asserted." *Id.* at 522. The right of sexual privacy is a

[8] The productions also include the sexual assault history of individuals who never filed (or contemplated) a lawsuit against Uber, including individuals who sought legal advice regarding to trafficking claims.

fundamental liberty under both the California Constitution and United States Constitution. *See Boler v. Super. Ct.*, 247 Cal. Rptr. 185, 188 (Cal. Ct. App. 1987) ("The California right has been described as a protective ' "zone of privacy" ' surrounding sexual behavior"); *see also Vinson v. Super. Ct.*, 740 P.2d 404, 410 (Cal. 1987) ("California accords privacy the constitutional status of an 'inalienable right,' on a par with defending life and possessing property" and the "privacy protection . . . embraces sexual relations."). Thus, when discovery implicates sexual privacy, the requesting party bears a heavy burden of showing "practical necessity" and that the discovery is "narrowly drawn." *Id.* Even absent constitutional concerns, privacy interests are a significant factor to be weighed in evaluating proportionality under Rule 26.

Uber's subpoenas indiscriminately intrude on the sexual privacy of both Plaintiffs and nonparties, seeking all documents related to sexual assault survivors, regardless of whether the information even was provided in contemplation of a claim against Uber. Uber cannot show any need, let alone a compelling one, for such information. With respect to Plaintiffs who have filed suit against Uber, this Court has already struck a careful balance regarding the scope of discoverable information concerning Plaintiffs' sexual assaults and other highly personal matters. Uber has brazenly attempted to circumvent those discovery rulings vis-à-vis third-party subpoenas to agents of Plaintiffs' counsel. For individuals who did not file suit and are not parties to this litigation, the requested discovery has no conceivable relevance to this case, certainly not one that justifies such a severe intrusion into the most private domains of their lives.

Courts have long recognized that this type of intrusion is especially harmful in cases involving sexual misconduct because discovery has the "clear potential" to discourage litigants from vindicating their rights. *Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983). For plaintiffs "who are determined to have their day in court, it has the potential to annoy and harass them significantly." *Id.*; *see also Doe by and through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d 721, 733 (S.D. Cal. 2021) ("The court is mindful 'a historic social stigma has attached to victims of sexual violence. In particular, a tradition of "blaming the victim" of sexual violence sets these victims apart from those of other violent crimes.'") (citations omitted). That is precisely the threat posed here by Uber's facially overbroad and invasive discovery requests, which serve to chill

participation by sexual assault survivors, other injured parties, and counsel who seek to assist them. Uber may be pleased with such an outcome, but it has no basis for this profound invasion of privacy. A protective order should be issued. *See Priest*, 98 F.R.D. at 762 (issuing protective order in sexual harassment suit prohibiting discovery of plaintiff's sexual behavior); *Doe,* 576 F. Supp. 3d at 733 (minor sexual assault victim had sufficient privacy interest in their name and address to warrant nondisclosure); *see also Pearce v. Club Med Sales, Inc*., 172 F.R.D. 407, 411 (N.D. Cal. 1997) (denying motion to compel discovery into sexual matters and ordering sanctions against the movant).[9]

**E. The Subpoenas Demand Protected Attorney Work Product**

Uber's subpoenas also target counsel's case development strategies and analysis, including criteria counsel used to screen potential claims, the questions counsel choose to ask prospective clients related to injuries and causation, and counsel's various other instructions to their litigation support consultants. That is quintessential attorney work product.

Rule 26(b)(3)(A) protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). A document is prepared "in anticipation of litigation" where, in light of its nature and the factual situation in the particular case, it can fairly be said to have been created "because of" the prospect of litigation. *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004) (internal quotation marks and citations omitted). A party seeking ordinary work product must show that it has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see Kandel v. Brother Int'l Corp*., 683 F. Supp. 2d 1076, 1084 (C.D. Cal. 2010). "A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test[:] . . . when mental impressions are *at issue* in the case and the need for material is compelling." *Holmgren*

[9] The same result should be reached for the nonparties whose information was swept into the productions because they sought legal representation for other litigations not involving sexual assault or abuse. These individuals have a privacy interest in their communications while seeking legal representation, their contact information, and the personal details they disclosed, which included medical histories, conditions, diagnoses, and other private matters. When balanced against the unquestionable lack of relevance, these interests outweigh any purported need for discovery.

*v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis in original).

Counsel engaged litigation support companies to identify and evaluate potential claims for various actions. That engagement did not merely *anticipate* litigation — in most instances, litigation was already ongoing. Thus, every communication between counsel and these companies occurred because of litigation, and the companies acted throughout as counsel's agents in advancing their participation in that litigation. Those communications are protected in their entirety. *See Ulrich*, 2026 WL 183676, *10; *Berger Montague*, ECF No. 31 at 44:16-45:21.

Further, Uber cannot establish a substantial need for counsel's intake and screening materials, or any hardship in obtaining the underlying facts elsewhere. Substantial need exists only where the material sought is "essential to the preparation of one's case." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *see Ulrich*, 2026 WL 183676 at *10 ("[m]ere relevance is insufficient to establish substantial need.") (internal quotation marks and citation omitted). The requesting party must articulate a concrete reason for the need and must offer evidence that the information is unavailable from other sources. *See Ulrich*, 2026 WL 183676 at *10.

As noted above, Uber's asserted interest in obtaining this information in connection with its concerns about fraudulent or fabricated claims fails. Uber already has discovery from Plaintiffs: plaintiff fact sheets, written discovery, document productions, and depositions of Plaintiffs whose claims it wishes to test. This information has been more than sufficient to identify the (handful of) claims with purportedly inauthentic ride receipts. Uber also has its own extensive records. *See Ulrich*, 2026 WL 183676 at *10 ("GM also has not offered any evidence whatsoever establishing that the information is not available to them from other sources.") (internal quotation marks and citation omitted); *Berger Montague*, ECF No. 31 at 47:20-48:3. If Uber believes that a particular claim is fabricated, it may probe that claim through the Plaintiff who asserts it; it may not access troves of counsel's protected work product through third parties.

Uber also cannot meet the greater showing required for opinion work product. Much of what the subpoenas demand is material that reveals counsel's mental impressions, conclusions, opinions, and legal analysis. The intake and screening materials were prepared at counsel's direction and embody counsel's judgments about what facts matter and why. Each inquiry is a

considered choice by counsel reflecting its analysis of the elements of a claim, the anticipated defenses, and various other legal or factual problems that have been considered. The screening criteria ultimately reveal counsel's evaluation of which claims are viable, which are time-barred, and which warrant development. And the questions counsel omitted are potentially as revealing as those included. *See Moreno v. AutoZone, Inc.*, 2008 WL 906510, at *2 (N.D. Cal. Apr. 1, 2008) (noting in dicta that "[a]rguably, the blank questionnaires are opinion work product . . ."). The communications between counsel and their litigation support companies are the record of counsel directing the development of its litigation strategy, which is clearly protected work product.

Uber cannot satisfy either half of the standard for obtaining protected opinion work product. Counsel's mental impressions are not at issue in this litigation. Whether counsel assessed a given claim as strong or weak, timely or barred, worth developing or not, is not an element of any claim or defense, and Uber cannot contend otherwise. Nor is Uber's need compelling. Uber has not articulated a concrete need for this material at all, and the underlying facts it professes to want are available from Plaintiffs directly. Uber thus cannot even clear the substantial-need threshold and is nowhere near making the heightened showing required.

## V. CONCLUSION

For the reasons set out above, Plaintiffs respectfully request the Court issue a temporary protective order preventing Uber from accessing, using, or disseminating the materials produced in response to its subpoenas to litigation support companies until Plaintiffs have had an opportunity to thoroughly review the productions, and Magistrate Judge Cisneros has resolved any related discovery disputes.

Dated: August 19, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: August 19, 2026

By: */s/ Ellyn Hurd*
Ellyn Hurd

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated: August 19, 2026

By: */s/ Ellyn Hurd*
Ellyn Hurd