# EXHIBIT 7

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC

Petitioners-Issuing Parties,

vs.

MASS TORT AD AGENCY

Respondent-Subpoenaed Party.

***Subpoena relates to: In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation, Case No. 3:23-md-03084-CRB, MDL No. 3084, pending in the U.S. District Court for the Northern District of California before Hon. Charles R. Breyer.***

Case No. __________

**PETITIONERS' MOTION TO COMPEL MASS TORT AD AGENCY TO COMPLY WITH SUBPOENA DUCES TECUM**

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Petitioners Uber Technologies, Inc., Rasier LLC, and Rasier CA, LLC (collectively, "Uber") respectfully move to compel compliance with subpoena duces tecum issued by the United States District Court for the Northern District of California. In support, Uber states:

**INTRODUCTION**

This miscellaneous action concerns the enforcement of a document subpoena (the "Subpoena") (attached hereto as Exhibit 1) issued by Uber to Respondent Mass Tort Ad Agency, f/k/a X Social Media ("MTAA"), a Florida business. The subpoena was issued as part of a multidistrict litigation pending in the U.S. District Court for the Northern District of California (the "MDL"). While the MDL is large and complex, ruling on this motion is straightforward. Uber properly served the subpoena. MTAA failed to respond in any way. After MTAA missed the deadline to comply with the subpoena, Uber sent a follow up letter by certified mail. Again, MTAA offered no response. By failing to respond by the deadline for compliance, MTAA waived any objection to the enforcement of this subpoena and this Court should compel it to comply.

Waiver aside, the subpoena should be enforced because it seeks information that is relevant and proportional, and it does not impose an undue burden. MTAA is a "lead generator" that recruits clients for plaintiffs' law firms. Unfortunately, the MDL has been tainted by fraud, involving numerous claims filed with little or no vetting by counsel or, in some cases, fraudulent evidence or demonstrably false representations. Uber issued the subpoena to MTAA to aid its ongoing efforts to root out ongoing fraud in the MDL, seeking various targeted categories of documents and information that are directly relevant to whether MDL Plaintiffs' claims are supported by legitimate documentation rather than fraudulent submissions. As one of the non-parties responsible for recruiting plaintiffs for the MDL, MTAA is likely to possess

information relevant to fraud in the MDL and/or Rule 11 violations by various Plaintiffs' firms relating to their pre-suit investigations. Indeed, MTAA themselves have sounded the alarm regarding fraud in the MDL via blog posts on their own website. And as a party that communicated to and with MDL Plaintiffs about the Uber litigation and their then-pre-suit claims, MTAA is likely to have relevant information on the merits of these Plaintiffs' cases.

Uber respectfully asks the Court to compel MTAA to comply with the subpoena in full.

## <u>BACKGROUND</u>

### The Multidistrict Litigation

In late 2023, the U.S. Judicial Panel on Multidistrict Litigation (JPML) created the centralized multidistrict litigation proceeding (MDL) *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, assigning it to Judge Charles R. Breyer of the U.S. District Court for the Northern District of California.[1] Judge Breyer referred all discovery matters in the MDL to Magistrate Judge Lisa J. Cisneros.[2] Plaintiffs in the MDL allege that each of them was assaulted or harassed by an independent driver on the Uber platform and contend that Uber is responsible, under a variety of legal theories, for having not implemented different or additional safety measures.[3]

---

[1] Uber MDL, Dkt. No. 1 (Oct. 4, 2023).
[2] Uber MDL, Dkt. No. 66 (Nov. 3, 2023).
[3] *See, e.g.*, Uber MDL, Dkt. No. 384 at 15 (Apr. 1, 2024).

To facilitate case-specific discovery for the thousands of cases in the MDL, the MDL court established a standard set of case-specific discovery each party must produce. Each MDL plaintiff is required to provide a "bona fide ride receipt" and other information and authorizations in a Plaintiff Fact Sheet (PFS). *See* Uber MDL Dkt. No. 175 at 2-3 (Dec. 28, 2023); Dkt. 348 at 3-4 (Mar. 19, 2024); Dkt. 4287 at 3-5 (Nov. 3, 2025). Unfortunately, the PFS process has been plagued with fraud.[4] To date, the MDL court has already found that more than 30 Plaintiffs have submitted fraudulent "non-bona fide receipts" in their PFS submissions. *See* Uber MDL, Dkt. No. 3876 (Sep. 9, 2025) (show cause order; granting motion at Dkt. 3604) ("The 21 Plaintiffs … have submitted non-bona-fide receipts"); Dkt. 3972 (Sep. 22, 2025) (show cause order; granting motion at Dkt. 3784) ("The 6 Plaintiffs … have submitted non-bona fide receipts"); Dkt. No. 4294 (Nov. 3, 2025) (motion for show cause order and limited deposition regarding fraudulent receipts); Dkt. 4440 (Nov. 19, 2025) (show cause order; granting motion at Dkt. 4137) ("The 7 Plaintiffs … have submitted non-bona fide receipts"); Dkt. 4456 (Nov. 21, 2025) (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (Dec. 5, 2025) (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4575 (Dec. 5, 2025) (same).[5] Investigation and motion practice

---

[4] *See* Jonathan Stempel, Uber Says Some Sexual Assault Accusers Submitted Fake Receipts, Reuters, Jul. 31, 2025, https://www.reuters.com/sustainability/boards-policy-regulation/uber-says-some-sexual-assault-accusers-submitted-fake-receipts-2025-07-31/ (covering dispute over fraudulent ride receipts in Uber MDL).

[5] Uber MDL, Dkt. Nos. 3604, 3784, 3876, 3972, 4137, 4294, 4440, 4456, 4569, and 4575 are attached as Exhibit 4.

related to fraudulent ride receipts is ongoing and pending before the MDL court with additional motions being prepared that will demonstrate that other MDL plaintiffs have submitted non-bona fide receipts in the litigation and continue to do so to this day regardless of the consequences.

**MTAA's Mass Tort Lead Generation**

MTAA is a "lead generator" firm that recruits clients for mass tort litigations on behalf of various plaintiffs' firms. *See, e.g.*, Ex. 5 ("At Mass Tort Ad Agency, we specialize in helping law firms acquire more clients for their mass tort projects through targeted advertising campaigns."). For many such clients, the Plaintiffs' firms do not properly vet the legitimacy of these Plaintiffs' claims, as demonstrated by the fraud that persists in the MDL (and in other mass torts)—a fact MTAA has even acknowledged in a publicly-available blog post. *See* Ex. 6 at 2 (Mass Tort Ad Agency, "*Mass Tort Fraud Exposed: Billion-Dollar Scams and the Fight to Save Our Industry*", available at https://masstortadagency.com/mass-tort-fraud-exposed) ("I've learned of major fraud schemes in the Uber … litigation. Case sellers are accused of peddling invalid claims[.]").

**MTAA's Non-Compliance With the Subpoena**

Uber issued the Subpoena of MTAA to discover whether MTAA is involved in, facilitating, or has knowledge of fraudulent claims and/or Rule 11 violations in the Uber MDL, including by misleading communications and advertisements like offering false promises of "no paperwork," "easy settlements," or facilitating "one click" recruitment of plaintiffs without colorable claims. These and similar practices have the

effect of facilitating Plaintiffs' firms' efforts to artificially inflate their inventory of MDL cases with non-colorable claims, perhaps under the belief that the cases may end up settling with little scrutiny being given to individual cases.

The Subpoena seeks 12 targeted categories of documents and information concerning MTAA's involvement in recruiting clients for the MDL:

1) ANY AND ALL DOCUMENTS identifying CONTACT INFORMATION for ANY AND ALL law firms or entities or persons working with or at the direction thereof for whom YOU have generated, forwarded, or otherwise collected LEADS RELATED TO the [Uber MDL] LITIGATION, from January 1, 2018, to present.

2) ANY AND ALL DOCUMENTS RELATED TO agreements between YOU and law firms or entities or persons working with or at the direction thereof RELATED to the [Uber MDL] LITIGATION, from January 1, 2018, to present.

3) ANY AND ALL DOCUMENTS related to LEADS you have generated RELATED TO the [Uber MDL] LITIGATION, including any tracking information that may include contract details, IP address, MAC address or platform-based user accounts, from January 1, 2018, to present.

4) ANY AND ALL DOCUMENTS RELATED TO instructions, guidelines, SOPs or creative content RELATED TO LEADS YOU have generated, forwarded, or otherwise collected, RELATED TO the [Uber MDL] LITIGATION, from January 1, 2018, to present.

5) ANY AND ALL DOCUMENTS identifying marketing instructions, ad placement, geographic targeting return on investment (ROI) reports or budgets YOU have received, generated, forwarded, or otherwise collected RELATED TO the [Uber MDL] LITIGATION, from January 1, 2018, to present.

6) ANY AND ALL DOCUMENTS RELATED TO the [Uber MDL] LITIGATION identifying tracking information related to internet-based platforms, including but not limited to Meta Pixels, that may involve collecting data on user behavior on a website, such as page views, button clicks, form submissions, product views, and purchases, January 1, 2018, to present.

7) ANY AND ALL DOCUMENTS RELATED TO instructions, guidelines, or other direction provided by YOU to LEADS relating to ride receipts or Plaintiff Fact Sheets, from January 1, 2018, to present.

8) ANY AND ALL DOCUMENTS RELATED TO trip receipts gathered from or submitted by LEADS, including but not limited to communications with LEADS and law firms or entities or persons working with or at the direction thereof RELATED TO this [Uber MDL] LITIGATION, from January 1, 2018, to present.

9) ANY AND ALL DOCUMENTS RELATED TO alterations, fabrications, or forgeries by LEADS or others of trip receipts for this [Uber MDL] LITIGATION, from January 1, 2018, to present.

10) ANY AND ALL DOCUMENTS RELATED TO fraud, including attempted fraud, committed by LEADS RELATED TO this [Uber MDL] LITIGATION, from January 1, 2018, to present.

11) ANY AND ALL DOCUMENTS RELATED TO screening for fraud in this [Uber MDL] LITIGATION, from January 1, 2018, to present.

12) ANY AND ALL DOCUMENTS RELATED TO Plaintiff Fact Sheets gathered from or submitted by LEADS RELATED TO this [Uber MDL] LITIGATION, from January 1, 2018, to present.

*See* Ex. 1 (Subpoena).

Uber caused the Subpoena to be personally served on MTAA's registered agent, Jacon Malherbe, on December 18, 2025, over 3 months ago. *See* Decl. ¶ 4; Ex. 2 (Proof of Service). The Subpoena required MTAA to produce the requested documents and information on or before January 17, 2026. *See* Decl. ¶ 3; Ex. 1 (Subpoena). MTAA did not comply with the Subpoena, did not serve written objections, and did not otherwise respond to the Subpoena by that date. *See* Decl. ¶ 5. On February 6, 2026, having received no response to the Subpoena, counsel for Uber sent a letter via certified mail and email, informing MTAA of its noncompliance, requesting production of the requested documents and information no later than February 13, 2026, and offering to

meet and confer with MTAA regarding the Subpoena and MTAA's required compliance. *See* Decl. ¶ 6; Ex. 3 (Feb. 6, 2026 Ltr. from M. Shortnacy). Once again, MTAA failed to respond, and has not responded as of the date of this Motion. *See* Decl. ¶ 11.

## ARGUMENT

MTAA should be compelled to comply with the Subpoena in full because (1) it has waived any objections to the Subpoena by failing to serve written objections and (2) the Subpoena is within the proper scope of discovery, is reasonable and proportional to the needs of the case, and not unduly burdensome.

Federal Rule of Civil Procedure 45(a)(2) provides that a "subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). A party seeking enforcement of the subpoena, however, "must file its motion to compel in 'the district where compliance is required.'" *In re Monat Hair Care Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2020 WL 1950463, at *1 (S.D. Fla. Apr. 23, 2020) (quoting Fed. R. Civ. P. 45(d)(2)(B)(i)). Compliance is required "within 100 miles of where the person resides, is employed, or regularly transacts business in person…." *Id.* MTAA resides within the Middle District of Florida, and its compliance is thus required in this Court.

### I. MTAA Waived Its Right to Object to the Subpoena

The Subpoena was properly served. A subpoena must be served in a manner "reasonably calculated to ensure receipt of the subpoena." *McFarlane v. Clear Blue Spec. Ins. Co.*, 2025 WL 4057123, at *1 (M.D. Fla. Mar. 4, 2025). "Courts may … look to [Federal Rule of Civil Procedure] 4 for guidance as to what constitutes personal service

upon a corporation." *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 2008 WL 11342610, at *2 (M.D. Fla. Apr. 15, 2008), which provides that a corporation may be served through "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Rule 45 also requires that service of a non-party subpoena duces tecum be made by "delivering a copy to the named person[.]" Fed. R. Civ. P. 45(b)(1). As stated above, Uber caused the Subpoena to be personally served on MTAA's registered agent on December 18, 2025, *see* Decl. ¶ 4; Ex. 2 (Proof of Service), constituting proper service under Rules 45.

MTAA has not provided ***any*** response to the Subpoena—much less formal written objections—even after Uber sent a follow-up letter to MTAA's registered agent via certified mail. *See* Decl. ¶ 6. As set out in Rule 45(d)(2)(B), "[w]ritten objections [to a subpoena duces tecum] may be served by the non-party, but the objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Bennet v.* Galer, 2023 WL 7109620, at *1 (M.D. Fla. Oct. 27, 2023). It is well-established that failure to timely raise any objections, move to quash, or proffer any adequate excuse for failing to comply with a subpoena constitutes a waiver of the non-party's ability to contest the subpoena. *See, e.g.*, *Cadle v. GEICO Gen. Ins. Co.*, 2014 WL 12639859, at *3, 2014 U.S. Dist. LEXIS 197378, (M.D. Fla. Aug. 29, 2014) ("Typically, failure to serve written objections to a subpoena in the time provided by [Rule 45] waives any objections the party may have."); *Golden Krust Franchising, Inc. v. Clayborne*, 2020 WL 7260774, at *1, 2020 U.S. Dist. LEXIS 231774,

at *3-4 (M.D. Fla. Dec. 10, 2020) ("[A]s a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived."); *Whatley v. World Fuel Services Corp.*, 2020 WL 2616209, at *3, 2020 U.S. Dist. LEXIS 90776, at *3 (S.D. Fla. May 22, 2020) (finding party waived the right to object to the subpoena because the "failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objection, as does failing to file a timely motion to quash").

Here, the Subpoena was properly served on December 18, 2025, *see* Decl. ¶ 4; Ex. 2 (Proof of Service), at which point the clock for MTAA to comply or object to the Subpoena began to run. The clock expired on January 17, 2026, the date of compliance specified by the Subpoena, *see* Ex. 1, and MTAA has not complied, served written objections, or otherwise responded to the Subpoena or even Uber's counsel's attempts to confer in any way. *See* Decl. ¶ 11. MTAA's failure to object to the Subpoena thus constitutes a waiver of objections, and the Court should thus compel MTAA to comply in full.

## II. The Discovery Petitioners Seek is Within the Scope of Discovery Provided by the Federal Rules of Civil Procedure

Parties may obtain discovery regarding any non-privileged matter relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The scope of non-party discovery under Rule 45 is the same as the scope of discovery under Rule 26. *See, e.g.*, *Bennett*, 2023 WL 7109620, at *1; *Geico v. Martineau*, 2020 WL 2128477, at *1 (M.D. Fla. 2020); *Anthony v. FDE Mktg. Grp. LLC*, 2021 WL

5937683, at *1, 2021 U.S. Dist. LEXIS 240593 (S.D. Fla. Dec. 16, 2021). When determining the propriety of a subpoena, the Court is to consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.'" *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 697 (N.D. Ga. 2016).

Fed. R. Civ. P. 45(d) provides for a subpoena to be quashed or modified if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Although the party seeking to enforce a subpoena has the burden of establishing that the information sought is relevant, *Fadalla v. Life Auto. Prods, Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007), the party opposing the subpoena has the burden to "demonstrate that compliance with the subpoena presents an undue burden or that it requires the disclosure of privileged or protected information," *see, e.g., Metzler v. Nat'l Gas & Elec., LLC*, 2022 WL 4235040, at *1-2 (M.D. Fla. June 26, 2012) (granting motion to compel non-party to produce subpoenaed documents where plaintiff "request[ed] relevant and proportional information").

**a. The Requested Discovery is Relevant to the Underlying MDL Litigation**

There can be no serious dispute that the requested discovery is relevant to the claims of MDL plaintiffs.

In particular, MTAA may be involved in, or have knowledge of, conduct facilitating fraudulent claims and/or Rule 11 violations (*i.e.*, failure to conduct an adequate pre-suit investigation) in the MDL by offering misleading statements about

the process of filing claims and obtaining compensation. Lead generators like MTAA and plaintiffs' firms have a history of making false promises of "no paperwork," "easy settlements," or facilitating "one click" recruitment of plaintiffs. *See, e.g.*, *Holley v. Gilead Scis., Inc.*, 2021 WL 940594, at *1 (N.D. Cal. Mar. 12, 2021) ("The record demonstrates that HMG was responsible for disseminating advertising that falsely claimed that Gilead provided no warnings about Truvada's side effects, falsely stated that the FDA approved Truvada in 2012 (and not 2004), and misleadingly implied that cash settlements were available.")[6]; *cf.* U.S. Fed. Trade Comm., *FTC Flags Potentially Unlawful TV Ads for Prescription Drug Lawsuits* (Sep. 24, 2019), https://www.ftc.gov/news-events/news/press-releases/2019/09/ftc-flags-potentially-unlawful-tv-ads-prescription-drug-lawsuits. Indeed, MTAA has published that it has knowledge of fraud in this MDL. *See* Ex. 6 at 2. Evidence of fraud or insufficient pre-suit investigation in the filing of a plaintiff's claims is relevant, because it goes directly to the veracity of the allegations underlying those claims, and directly bears upon that plaintiff's credibility. *See id.* (MTAA referring to the "vast ecosystem of fraud feeding mass tort case sellers"). Courts routinely recognize that discovery regarding a plaintiff's credibility is relevant under the scope of Rule 26(b). *See, e.g.*, *Stergis v. United Parcel Service, Inc.*, 2006 WL 8439220, at *1 (M.D.Fla., 2006) (requested discovery was "relevant to [a witness's] credibility and therefore, is discoverable.").

---

[6] MTAA, f/k/a/ X Social Media,, was one of the third parties working to create and disseminate those advertisements in *Holley*.

Indeed, the MDL court has already recognized the relevance of fraudulent information submitted by MDL Plaintiffs by granting several of Petitioners' (MDL Defendants') motions for order to show cause why certain Plaintiffs who submitted fraudulent "non-bona fide ride receipts" should not have their cases dismissed with prejudice. *See* Uber MDL, Dkt. No. 3876 (show cause order; granting motion at Dkt. 3604); Dkt. 3972 (show cause order; granting motion at Dkt. 3784); Dkt. 4440 (show cause order; granting motion at Dkt. 4137); Dkt. 4456 (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4575 (same) (Exhibit 4); see also Dkt. 4456 (Nov. 21, 2025) (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Uber MDL Dkt. No. 4580 (Dec. 5, 2025) (motion regarding fraudulent PFS); Uber MDL Dkt. Nos. 4492, 4506-12, 4514-59, 4563-64, 4567, 4571, 4573-74, 4577-79, 4582-90 (Nov. 27, Dec. 3, 4, 5, 2025) (Plaintiffs' statements, briefs, and dismissals in response to show cause orders and motion to dismiss regarding PFS non-compliance and fraudulent ride receipts). As a "lead generator," MTAA may possess information regarding the sort of fraudulent information that directly led to these dismissals. This includes, for example, information regarding how Plaintiffs without colorable claims came to be represented by Plaintiffs' firms in the MDL;

whether Plaintiffs were recruited to participate in the MDL through assurances of limited vetting of their claims; and whether MTAA or any of the Plaintiffs' firms with which it did business had knowledge of fraudulent claims being submitted in the MDL.

Aside from fraud, the MTAA is likely to have relevant information for the simple reason that they have non-privileged communications with potential claimants (many of whom were successfully converted to MDL Plaintiffs) about their claims—evidence that goes to the merits of those claims. MTAA tells plaintiffs' law firms on its website that they provide "Real, Verified Claimants Not Just 'Leads,'" and "We deliver signed retainers and high-intent inquiries that meet your exact case criteria." Ex. 7. Hand-delivering "real, verified claimants" to "ensure that every case [plaintiffs' firms] purchase is legitimate and well-documented" logically suggests communications related to the merits of those claims. *Id.*

**b. The Discovery Petitioners Seek is Reasonable and Proportional to the Needs of the Case**

If MTAA was concerned about the scope of discovery sought in the Subpoena, it had the opportunity to seek relief from the Court under Rule 45. See Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). It failed to do so, and has now waived that opportunity. *See CITGO Petro. Corp. v. Petro. Logistics Serv. USA, Inc.*, 2022 WL 2341226, at *4, 2022 U.S. Dist. LEXIS 117137, at *13 (S.D. Fla. Apr. 11, 2022) ("[F]ailure to timely raise any objections to the non-party subpoena, move to quash the subpoena, or proffer any adequate excuse for the noncompliance has resulted in … waiver of the ability to contest the subpoena."). It did not do so and, regardless, the discovery sought is

reasonable and proportional in light of the importance of uncovering fraudulent cases in the MDL.

In assessing whether the requested discovery is proportional, the Court must consider, among other factors, "the importance of the issues at stake in the action," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the benefit of the requested discovery clearly outweighs the associated burden or expense. As the MDL Court has recognized, dismissal of claims is warranted under Federal Rule of Civil Procedure 37 where a party "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See, e.g.*, Uber MDL, Dkt. 4440 (show cause order; granting motion at Dkt. 4137). To date, dozens of Plaintiffs have had their cases dismissed on this basis. *See supra* at 2-3 (citing dismissal orders). But the MDL currently includes more than 2,900 active Plaintiffs, and the process of rooting out fraudulent claims from that number is taxing on both Uber and the MDL court, diverting resources away from the resolution of non-fraudulent claims. Discovery that aids Uber in identifying which of the thousands of active Plaintiffs submitted falsified information will facilitate the prompt dismissal of fraudulent claims, thus aiding the MDL court in managing its docket in this sprawling, complex multidistrict proceeding.

### c. Complying With the Subpoena Will Not Impose an Undue Burden

As the responding party, it is MTAA's burden to demonstrate that compliance with the Subpoena presents an undue burden or that it requires the disclosure of privileged or protected information. *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). By failing to serve written objections as required by Fed. R. Civ. P. 45(d)(2)(B), MTAA has waived its ability to object to the Subpoena on the basis of undue burden. *See Cadle*, 2014 WL 12639859, at *3.

In any event, complying with the Subpoena does not present an undue burden for MTAA. It requires only that MTAA search for, collect, and produce information and documents falling within 12 targeted categories of information. Courts routinely reject assertions of undue burden under similar facts. *See, e.g.*, *Bailey Industries, Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 672 (N.D. Fla. 2010) (non-party document subpoena "did not impose an undue burden," where the subpoena "was not overly-broad," "called for the production of correspondence and ESI that would have reasonably been expected to have been retained … in the ordinary course of business and reasonably expected to have been retrievable without imposing an undue burden," and "concerned a limited time frame and subject matter"); *Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.*, 345 F.R.D. 532, 538 (N.D. Fla. 2024) (subpoena recipient's "conclusory" assertion that responding to the subpoena would require production of "hundreds of thousands" of documents was insufficient to establish undue burden); *Sams v. GA West Gate, LLC*, 316 F.R.D. 693, 697 (N.D. Ga.

Case 3:23-md-03084-CRB  Document 705-8  Filed 08/19/26  Page 218 of 18

2016) (non-party subpoena recipient's objection that complying would "require many hours of retrieval and review" was "insufficient" to establish undue burden).

**CONCLUSION**

For the reasons set forth above, Petitioners respectfully request that the Court order Respondent to comply with the Subpoena in full.

April 1, 2026

Respectfully submitted,

*/s/ Anitra R. Clement*

Anitra R. Clement
**SHOOK, HARDY & BACON L.L.P.**
100 North Tampa Street, Suite 2900
Tampa, FL 33602
Telephone: 813.202.7110
Email: aclement@shb.com

*Attorney for Petitioners-Issuing Parties*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC