*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR AUGUST 27, 2026 DISCOVERY STATUS CONFERENCE**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**<u>JOINT STATUS REPORT</u>**

In advance of the discovery status conference set for August 27, 2026 at 11:00AM PT, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), respectfully submit this Joint Status Report.

## I. Authorization of Social Media Records (QLF 001)

**Defendants' Position:** Despite numerous attempts by Uber to rectify the issue, Plaintiff's social media productions are still highly deficient. First, Plaintiff has failed to identify the third-party participants in hundreds of message threads. Her purported expert admits that the unidentified participants could be discovered with "[redacted]" (Ex. 1, Rincon Decl. ¶ 9); yet Plaintiff has not sought this information and refuses to provide Uber with the authorization it needs to seek the information for itself. Uber has a right to know whom Plaintiff was messaging in these relevant communications and Plaintiff must, at a minimum, provide the required authorization if she refuses to obtain the information herself. Second, Plaintiff's purported expert claims that "[redacted]. *Id.* ¶¶ 10-11. However, there is also an activity log on Facebook that provides exactly that information. Plaintiff's position makes clear that she made no effort to collect that log and seemingly did not even know it existed until Uber pointed it out to her. While Uber has attempted to work with Plaintiff on this issue and avoid the need for further Court intervention (as the parties' prior stipulation - ECF 7016 - makes clear) that has failed. Uber thus asks that the Court order Plaintiff to make good-faith efforts to comply with her discovery obligations and provide the relief requested herein.

**Plaintiff's Position:** Plaintiff QLF 001's counsel has exerted an inordinate amount of time and resources to assist Uber in its review of the social media production, including a comprehensive spreadsheet cross-referencing hundreds of pages and thousands of messages (something Uber could have done itself), and proactively reproducing documents in more manageable formats. Notwithstanding these efforts, Uber continues to baselessly accuse Plaintiff of insufficient production and delay. *First,* Plaintiff produced Facebook messages as they appear from Facebook "Download Your Information." For message participants who deleted their Facebook account, their account name appears as a de-identified number assigned by Facebook. Uber does not identify a single de-identified user communication that is material to this case. Instead, Uber demands access to Facebook records of all these third parties—over which Plaintiff has no custody or control—for information that may or

may not exist, regarding deleted accounts. This is a textbook fishing expedition. *Second,* as to the Facebook activity log, Uber did not raise this issue until August 20 and now misrepresents how it functions. The activity log is not a discrete, downloadable feature within the "Download Your Information" tool (which Uber acknowledges Plaintiff did collect). It is a separate and laborious process requiring manual search and screen-grabs of individual activity for over four years. And yet, Uber has demanded it without any temporal or topical limitations whatsoever.

## II. Second Date for Deposition of Plaintiff (QLF 001)

**Defendants' Position:** On July 21, 2026, Plaintiff sat for an initial, abbreviated deposition in this case. At her initial deposition and afterwards, Plaintiff's counsel agreed to present Plaintiff for her resumed deposition at a later date. Uber has followed up repeatedly for dates. With less than one week's notice, Plaintiff's counsel offered two dates that do not work due to existing scheduling conflicts including a date during an existing CMC. As such, Uber requests an Order that Plaintiff be made available on August 31 or September 2. Plaintiff rejects these dates but offers nothing in response. Failure to provide a workable date before expert reports are due (September 3) will have downstream effects for the trial readiness of this case.

**Plaintiff's Position:** The Parties have had ongoing conferrals to find a mutually agreeable date, including consideration of weekend dates, to accommodate trial counsel's early September trial in another matter. Uber is aware that August 31 and September 2 are not currently workable.

## III. Witness Intimidation (QLF 001)

**Defendants' Position:** Plaintiff's pattern of witness intimidation and interference continues to undermine Uber's efforts to prepare for trial. Uber served subpoenas on numerous witnesses (with notice provided to Plaintiff), and Plaintiff's counsel has yet to file a motion to quash any subpoena, but instead sent letters and formal legal objections to witnesses suggesting that they should not comply with Uber's subpoenas (something that has never been done in any other prior case). While this issue is the subject of a pending letter brief, Uber wanted to be sure the Court understood that one of Plaintiff's highly relevant treaters, Dr. C.G., remains unwilling to sit for a deposition in light of Plaintiff's letter. In fact, Dr. C.G.'s belief, after receiving Plaintiff counsel's letter, was that his "patient

does not want [him] to testify." Plaintiff's intimidation is not limited to these improper letters. For example, during a recent deposition Plaintiff's ex-boyfriend testified that he felt intimidated by Plaintiff's counsel because they called all members of his family.[1] As a result, Uber requests that the Court enter an order compelling Plaintiff's counsel to send follow-up letters notifying third-party witnesses that they are withdrawing their improper objections, that the witnesses should ignore their prior letters, and that Plaintiff counsel should refrain from intimidating future witnesses.

**Plaintiff's Position:** Plaintiff's counsel has not intimidated or instructed witnesses not to appear for deposition. Uber's claim relies on a single misleading example wherein Uber fails to inform the Court that Plaintiff's counsel, with Uber's knowledge, assured Dr. C.G. it was appropriate to proceed with the deposition. Uber further fails to inform the Court that Dr. C.G.'s decision to not participate was made after he consulted with his own attorney and was advised by said attorney not to appear. The referenced letters were properly sent to all interested parties informing them of Plaintiff's objections; they were not directed at any individual witness, much less any instruction to not appear or participate. The letters included copies of Plaintiff's objections to document requests (not the deposition itself) that were properly lodged against overbroad, invasive, and unduly burdensome.

It is Uber's conduct towards witnesses that is questionable and intimidating. One witness notified Plaintiff's counsel that he had not been served. Another witness notified Plaintiff's counsel that Uber's counsel told him he would go to jail if he did not appear. Yet, another witness recounted at deposition how Uber's process server banged on her door and attempted to force entry into her home causing her to fear for her and her family's safety. These accounts are deeply concerning. Uber should provide proofs of service for all upcoming depositions to ensure deponents are properly served and need to appear. Plaintiffs have made this request, but Uber has yet to provide them.

[1] Plaintiff's counsel's accusations are false and easily refuted. All depositions of Plaintiff's friends have been completed and no one has testified that they were not served or that Uber's counsel acted improperly in any way. Surely if Plaintiffs believed these accusations were true, they would have attempted to generate testimony on these issues, which they did not. Defendants were first alerted by one witness at her deposition on Friday that a process server knocked aggressively on her door, are looking into this, and will not be using this process server again.

## IV. Medical Records/First Look Process (QLF 001)

**Defendants' Position:** Plaintiff is continuing to hinder Uber's ability to obtain and review mental health records. Uber therefore requests that the Court suspend the "first look privilege review" process for *QLF 001*, which is serving no purpose in this matter other than interfering with Uber's trial preparation efforts.

There is no need for the "first look privilege review" here for multiple reasons. First, there is no privilege that would apply to mental health records under Texas law, as Plaintiff has placed her mental health squarely at issue in this case and waived any existing privilege. Second, Plaintiff has unduly delayed the production of records in this lawsuit, and appears to be using this provision for more delay. After Uber complained, Plaintiff's counsel agreed to shorten the period to 5 days, but this is still too long. Third, Plaintiff is expanding the first look process beyond its intended scope. Uber recently received notice from its vendor, Marker, that Plaintiff's counsel unilaterally reached out and demanded Marker pull down ***pharmacy and medical*** records that had already been released, apparently invoking the "first look process." This is highly problematic not just because there is no basis for extending the process to such records, but also because the very records Plaintiff objected to were ones the Court ordered Plaintiff to provide pursuant to a separate Court Order. *See* ECF 6840. As a result, Uber requests that the Court suspend the "first look" process for *QLF 001* and enter an order stating that records may be immediately released by Marker to both parties, as they become available.

**Plaintiff's Position:** Plaintiff has not hindered Uber's ability to obtain or review records under the Court-ordered procedure, nor has there been any indication of abuse of process. Indeed, Uber has not disputed the propriety of any redaction or assertion of privilege to date. Rather than "hinder," Plaintiff agreed to accommodate Uber by reducing the review period to five days. Uber's only cited example of delay relates to an inquiry by Plaintiff's counsel regarding medical and pharmacy records that exceeded the scope of time approved by the Court. This was not an "expansion" of the process but rather a proper inquiry into an improper document request and production.

## V. Plaintiff's Improper Claims of Privilege

**Defendants' Position:** Plaintiff's overdue privilege log, produced on August 20, 2026, raises serious concerns that she is improperly withholding communications with third parties based on groundless assertions of privilege. Plaintiff has redacted several text messages and Facebook messages in which she (and her friends) appear to be casually discussing this litigation, claiming that they constitute "attorney work product." Needless to say, a Plaintiff's informal communications with friends about her lawsuit is not "material prepared in anticipation of litigation" to which work product protections apply. And even if the communications repeat communications between Plaintiff and her counsel, any protection was waived by Plaintiff's disclosure to third parties who have no legitimate role in developing Plaintiff's litigation strategy. Moreover, the context of some communications, i.e., conversations regarding Plaintiff's financial situation and the possibility of coming into money in the future, indicates that the redacted messages may contain highly relevant impeachment evidence regarding Plaintiff's motives and credibility. Uber plans to formally challenge Plaintiff's privilege claims, but given the imminent trial date and the need to obtain these messages before Plaintiff's continued deposition, Uber is willing (and Plaintiff agrees) to submit these messages to the Court for an *in camera* review so a quick resolution can occur.

**Plaintiff's Position:** Plaintiff's privilege log is neither overdue nor improper. At issue are six documents containing mental impressions and legal strategies of Plaintiff's counsel, and work of non-testifying experts. They are protected work product and are not waived by any third-party disclosure. "[D]isclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or has substantially increased the opportunities for potential adversaries to obtain the information." *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1120-21 (9th Cir. 2020). Here, any disclosure was to close personal confidants, not adversaries, so there is no basis to conclude that they "substantially increased the odds that [Plaintiff's] adversaries would obtain the protected material." *Greenlight Cap., Inc. v. Fishback*, 2025 WL 2642583, at *3 (S.D.N.Y. Sept. 15, 2025); *see also U.S. v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003) (no waiver when sent to a family member). If the Court has concerns, Plaintiff is amenable to *in camera* review.

## VI. Uber's Document Subpoenas to Legal Marketing and Client Acquisition Services

**Plaintiffs' Position:** After plaintiff discovery was stayed (*see* PTO 5 at ¶ 4(B)), Uber served subpoenas on third-party legal marketing and plaintiff acquisition services. The full number of third parties at issue is unknown. Plaintiffs did not receive notice of intent to serve in every instance (Plaintiffs' MDL leadership learned of one subpoena after production of ~17,000 documents, and Uber disclosed on Aug. 19, 2026 that it served another entity without notice to Plaintiffs in December 2025).

Uber should never have served these subpoenas. On their face, they are shockingly broad and irrelevant, seeking documents related to *any* potential plaintiff, irrespective of whether Uber is involved, without regard to privileged and work product communications, and without connection to claims or defenses in this matter (e.g., legal marketing strategies, budgets, ROIs). The productions confirm the impropriety of Uber's requests. They reveal not only sheer irrelevance but also expose confidential information of over 80,000 individuals across dozens of litigations, e.g., clergy abuse, human trafficking, opioids, social media harms, and more. They contain full names, home and email addresses, phone numbers, and personal narratives of harms experienced, including graphic details of sexual assaults, child sexual abuse, human trafficking, medical conditions, and other deeply sensitive matters—all of which were provided in the course of seeking legal representation. They also reveal attorney work product (e.g., legal strategies on case criteria, analysis of statute of limitations) and implicate many different law firms. There is no indication that those impacted—many of whom are not involved in this case—were notified and provided an opportunity to assert their privileges. Many documents do not have appropriate confidentiality designations despite the sensitive contents.

Given the significant privacy and privilege violations, Plaintiffs moved for a temporary protective order before Judge Breyer to prohibit Uber's access, use, and dissemination of this information until the Parties have an opportunity to meet and confer, consider methods of notice to impacted nonparties, and fully brief disputes. *See* ECF 7059. Uber provided its position for the first time in this submission. Plaintiffs will respond through briefing on the motion, and preview the following: (1) Uber's purported "fraud" justification does not address the core concern—Uber is in possession of privileged, protected, and confidential information belonging to Plaintiffs, their counsel,

and tens of thousands of nonparties with no connection to this litigation;[2] (2) Uber's failure to provide proper notice is not cured by the suggestion that Plaintiffs would not have objected had notice been sent—a claim that is refuted by the record as Plaintiffs moved for a protective order shortly after production of documents and discovering the scope of concerns presented; and (3) the Protective Order does not resolve the problem as the issue is not how Uber may use the information but that Uber should not have the information in the first place. Tellingly, Uber offers no reason why it opposes *temporary* relief that seeks to preserve the status quo until all impacted parties have had the opportunity to review and assert their rights. The voluminous productions have needlessly consumed time and resources from the upcoming trial. Any use or review by Uber is a calculated distraction from real trial issues.

Plaintiffs anticipate submitting unresolved disputes to Your Honor and may propose a briefing schedule in lieu of a PTO 8 letter, but welcome any guidance from the Court on the best process.

**Defendants' Position:** This dispute is not ripe for the Court's consideration, and Uber will fully address Plaintiffs' arguments in its opposition to Plaintiffs' Motion for Protective Order due September 2. *See* ECF 7059. The issues raised by Plaintiffs also overlap substantially with Uber's August 20 Motion for Appointment of a Special Master regarding fraud abuse and claim-integrity. *See* ECF 7070. Uber therefore reserves its full substantive response for the appropriate briefing but maintains the subpoenas are proper and Plaintiffs' requested relief is unwarranted.

Court-authorized discovery has helped identify and curb filing abuses involving counterfeit ride receipts and fraudulent Plaintiff Fact Sheets. *See* ECF 3876, 3972, 4440, 4442, 5454, 5970. Yet fraudulent claims continue to enter the litigation through third-party lead generators and marketers. Discovery obtained through the subpoenas shows that the lead-generation industry itself recognized and discussed fraud risks in the claimant-acquisition process.[3] The third-party productions have also

---

[2] Uber improperly cites clawed-back materials, for which no challenge has been properly asserted and resolved, in violation of PTO 14. Aside from this sanctionable conduct, Uber's example merely underscores the speculative nature of its "fraud investigation." The example does not connect any alleged misconduct to Plaintiffs, their counsel, or a particular claim; it reflects only a third-party's personal view on the economics of claimant acquisition. This highlights the very problem at issue—Uber relies on broad suspicions and hearsay, not actual evidence, to justify access to protected information.

[3] This morning, MTAA sent a template improper clawback notice, requesting to claw back its entire production in an attempt to conceal known fraud. For the benefit of contesting this clawback, Uber is providing examples of improperly clawed back documents here that include communications between

uncovered misleading solicitation practices, including Isla Marketing's use of social-media ads featuring AI-generated individuals portrayed as sexual-assault survivors. In addition, discovery has linked a fraudulent receipt to a third-party referral firm (Advocate Rights Center) and revealed relationships among several entities that are the subject of the subpoenas. *See* ECF 7070-8. Together with marketing practices, advertising expenditures, ROI metrics, and claimant-engagement data, these materials are directly relevant to tracing how claims were sourced, screened, and entered the litigation.

Plaintiffs' "shockingly broad" characterization ignores the scale of the fraud problem the subpoenas are designed to investigate. Hundreds of claims have been identified as fraudulent or potentially fraudulent. *See, e.g.*, ECF 7070. The subpoenas are narrowly tailored to investigate the role of third-party entities in sourcing and submitting such claims. The resulting discovery has been critical to Uber's evaluation of claims and defenses, claim-resolution efforts, and the integrity of this litigation. Any confidentiality, privacy, or privilege concerns can be addressed through the existing Protective Order and targeted procedures.

Although notices of intent for two subpoenas were not served on Plaintiffs due to a clerical error, Plaintiffs nonetheless received notice of Uber's other subpoenas months ago and waited until August 2026 to raise the objections asserted here, undercutting any claim of urgency or prejudice. Further, each subpoena included the Protective Order, and contrary to Plaintiffs' suggestion otherwise, MTAA designated their entire production "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" pursuant to the Protective Order, preventing unrestricted use or dissemination.

## VII. <u>Deposition Date for 30(b)(6) on June 2026 Background Check Policy</u>

**Plaintiffs' Position:** On July 23, the Court directed Uber to provide a 30(b)(6) deposition date by July 28 if Plaintiffs prevailed. ECF 6863. Uber instead offered dates after the QLF 001 trial and tied them to pending relevance objections. On July 30, the Court rejected those objections and gave

---

two non-lawyers about fraud. *See, e.g.*, MTAA E-Mail [redacted] (Apr. 11, 2026) ([redacted]) (emphasis added); MTAA E-Mail [redacted] (Apr. 11, 2026) ([redacted]) (emphasis added). The quotations in this footnote from the clawed back documents are being filed under seal.

Uber four weeks to produce a witness or stipulate to feasibility. ECF 6935. Uber did neither. It ignored Plaintiffs' scheduling requests of August 3, 5, 10, and 11, and asked to extend the Order's deadlines without offering dates and naming witness. Uber then filed a Rule 72 motion before Judge Breyer, but before a ruling was issued Uber unilaterally decided that it need not comply with the pending order—effectively granting itself a stay and maintaining that position for three weeks. Ultimately, Judge Breyer denied the motion (ECF 7052), but Uber's recalcitrance continued. Only after Plaintiff served a PTO 8 letter detailing these failures did Uber concede it would stipulate on feasibility.

The Parties are working on a stipulation that may resolve the deposition requests for QLF 001 and A.R., but this does not restore the time lost, or the efforts expended in preparing for a deposition that Uber likely knew would not occur, nor does it address Uber's disregard of this Court's Orders. With trial weeks away, there is no room for another cycle like this. The law is clear: absent a stay, a party "must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Rule 72 objections do "not automatically stay that order's operation." *In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 2024 WL 4495810, at *1 (N.D. Cal. Oct. 15, 2024). Plaintiffs ask the Court to: (1) admonish Uber that orders are binding unless and until Judge Breyer sets one aside, and a pending Rule 72 motion does not operate as a stay; and (2) direct Uber to file the executed stipulation by a date certain, in the form ¶ 1 of the July 30 Order covering QLF 001 and A.R; otherwise, the deposition should proceed in September on the Order's existing terms.

**Defendants' Position:** Plaintiffs criticize Uber for supposedly disregarding the Court's July 30 order but then concede that: (1) Uber has indicated it will be providing a stipulation, consistent with that order; and (2) even absent a stipulation, they are only seeking deposition dates in September. Uber has not missed any deadlines, did not "grant[] itself a stay," and there is no issue ripe for the Court's consideration.

## VIII. <u>Deposition Limits for Other Bellwether Cases Per ECF 6984</u>

**Plaintiffs' Position:** Deposition limits for bellwethers should be determined individually and not uniformly adopt the QLF 001 limit. Cases differ in size of witness pools, range of overlapping and potentially cumulative testimony (e.g., several friends present at the same bar, several family members

at the same home) that Rule 26(b)(2)(C) instructs courts to guard against. Cases may also differ on how much the assault itself, as opposed to Uber's conduct, is disputed. Also, depending on case facts, depositions of survivors' friends and family about the days surrounding the incident may carry less probative value—a variable that will differ case by case. A 15-deposition requirement sits 50% above Rule 30's presumptive limit of 10 and above what courts in comparable MDLs have allowed. *See, e.g., In re 3M Combat Arms Earplug Prods. Liab. Litig.,* MDL No. 2885, ECF 1518 (N.D. Fla. Nov. 6, 2020) (6 depositions per side); *In re Bard IVC Filters Prods. Liab. Litig.*, MDL No. 2641, ECF 5883 (D. Ariz. May 19, 2017) and ECF 3867 (D. Ariz. June 12, 2025) (5 depositions per side, with a heightened showing required before a plaintiff's friends or family may be deposed at all). Plaintiffs believe a case-by-case analysis is warranted to determine the appropriate number of depositions.

**Defendants' Position:** The 15-deposition limit established by ECF 6984 should apply to all bellwethers in the MDL, not just the *QLF 001*. Applying this limit to all cases will ensure the parties have clear guidance going forward and will minimize the need to burden the Court with serial disputes about the appropriate number of depositions in each case (which is what would invariably occur under Plaintiff's proposal). And, of course, if a party has a good-faith argument as to why that limit should not apply in a particular case, they would have the ability to raise that based on the unique case-specific circumstances at play in that case.

## IX. <u>Pending PTO 8 Letter Briefs</u>

**Joint:** The Parties will be prepared at the Discovery Status Conference to discuss Joint Letter Briefs regarding the following: (1) Plaintiff's Failure to Comply with the Court's August 12 Order (QLF 001) (to be filed today); (2) Plaintiff's requests for additional Safety Data (to be filed today); (3) Uber's motion for a protective order related to Sarfraz Maredia Deposition (to be filed by August 26); and (4) pending letter brief regarding Uber's Third-Party Document Subpoenas in QLF 001 (ECF 7011).

By: /s/ Roopal P. Luhana

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Michael Vives

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN
MICHAEL VIVES

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: August 24, 2026

By: /s/ *Michael Vives*
Michael Vives