[SUBMITTING COUNSEL BELOW]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

Case No.: 3:23-MD-03084-CRB

**JOINT LETTER REGARDING PLAINTIFF JANE DOE QLF 001'S COMPLIANCE WITH ECF 7012**

Judge: Hon. Lisa J. Cisneros
Courtroom: G – 15th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 501

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff Jane Doe QLF 001's compliance with ECF 7012.

Respectfully submitted,

DATED: August 24, 2026

By: /s/ *Roopal P. Luhana*
ROOPAL P. LUHANA (*pro hac vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ *Michael Vives*
MICHAEL VIVES (*pro hac vice*)
JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

KIM BUENO
State Bar No. 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## I. Uber's Position:

Despite the Court's clear directive in its August 12 Order, Plaintiff is still hiding the ball regarding her phone preservation and collection efforts, undermining Uber's ability to prepare for trial (just weeks away). The Court should require Plaintiff to: (i) present her declarant Lance Sloves for a deposition; (ii) identify the other experts who sought to retrieve her messages; (iii) submit a declaration explaining how she assessed responsiveness; (iv) manually review documents excluded by her unilaterally applied search terms; and (v) produce the phone records already ordered by the Court (which she has a legal right to retrieve from her provider).

The Court's August 12 Order was clear: Plaintiff was to produce declarations from each of her experts and phone records from 2020-2024. ECF 7012. Plaintiff did neither. Despite previously indicating that she was working with multiple experts, Plaintiff only produced a declaration from Lance Sloves. That declaration contains no explanation of his conclusions nor the account he analyzed. This does not come close to complying with the Order. The Sloves declaration is also concerning because it reveals that Plaintiff excluded documents from her device collections using inadequate search terms that were shared with Uber for the first time today—and produced less than 15 percent of the documents those terms identified. Plaintiff's late-produced supplemental declaration, served just today, just muddies the water further, confirming the need for a deposition.

Plaintiff also failed to comply with the Court's order that she produce phone records, claiming they are not within her control. But established law makes it clear that because Plaintiff is legally able to procure the records from her provider, they are, in fact, within her control. With trial just weeks away, Plaintiff's gamesmanship has to stop. Uber needs a fundamental understanding of her preservation and collection efforts in order to maximize its ability to obtain her missing documents and to evaluate whether additional relief is appropriate.

Plaintiff's conduct is particularly troubling because her late-produced and highly improper privilege log[1] has revealed that despite Plaintiff's repeated representations to the contrary, she "beg[an] look[ing] for counsel to pursue a civil claim"—"which would trigger an obligation to preserve relevant evidence," ECF 7012 at 4—as early as August 20, 2020—*months before she traded in the phone she had at the time of the alleged incident.* Ex. 1 (Pl.'s Priv. Log) at Log Nos. 7 & 9. This makes Plaintiff's recovery efforts even more critical, given the likelihood that evidence was spoliated and Uber's potential right to sanctions.

**Background.** On August 12, following months of inconsistent statements from Plaintiff, the Court issued ECF 7012. Along with the ordered relief, the Court anticipated a potential need to depose Plaintiff's expert(s). *Id.* at 7. On August 18, Plaintiff produced the declaration of Mr. Sloves from CFSI—not the experts from Plaintiff's e-discovery vendor (ILS) whom she previously indicated were working on recovering her texts. Plaintiff now claims Mr. Sloves is the *only* expert she used in those efforts. This is contrary to repeated statements that she had *multiple* experts for that purpose. *See* Ex. 2 (7/2/26 Velez Email) ("[W]e are working with *experts* regarding Plaintiff's devices and data."); Ex. 3 (7/23/26 Grille Letter) at 1 ("Plaintiff, through counsel, retained data recovery *specialists* to extract… data from her devices . . ."); ECF 6959 at 4 ("She retained data-recovery *specialists*…"). It is also contrary to her claim that she had experts working on this issue before Mr. Sloves's retention. The Court should require Plaintiff to identify these other experts.

**Sloves Declaration.** The declaration Plaintiff *did* produce (even the amended declaration first provided six days after the deadline in ECF 7012) is woefully inadequate and brings Uber no

[1] As indicated in today's JSR, Uber intends to seek production of documents that were improperly withheld or redacted based on meritless claims of privilege or work product.

closer to understanding the data that may exist and the efforts Plaintiff has made to recover it. To the contrary, Mr. Sloves's statements are directly at odds with Plaintiff's representations over the past two months and only perpetuate the shroud Plaintiff has cast around what data exists and what she has done to recover it. As the Court recognized, Uber is entitled to discovery on these issues because of Plaintiff's inconsistent statements. In order to get clear answers, Uber must have the opportunity to depose Mr. Sloves to understand, among other things:

- The basis, if any, for Plaintiff's ***July 8*** statements that her expert analyzed her laptop and sole backup and found no contemporaneous texts (Ex. 4 (7/8/26 Velez Email)), given that Mr. Sloves did not start that work until ***July 15*** or later and her recent claim that there is no other expert (Ex. 5 (Supp. Sloves. Decl.) ¶¶ 15, 24);
- Whether Mr. Sloves is the expert who allegedly concluded that the only existing iCloud backup was the March 2024 backup from Plaintiff's current phone,[2] and if so, how he came to that conclusion (Ex. 4 (7/8/26 Velez Email));
- Whether there are multiple backups of Plaintiff's phone(s) containing data, given her prior statements that the March 2024 backup had "no data" and the backup disclosed on July 27 was an "additional source" (Ex. 6 (7/27/26 Hilton Email)), and Mr. Sloves's declaration identifying 966 documents on a March 2024 backup (Ex. 5 (Supp. Sloves Decl.) ¶ 28);
- The methods Mr. Sloves used to conclude that "all available iCloud backup snapshots" were captured with the March 2024 backup. Ex. 5 (Supp. Sloves Decl.) ¶ 24);
- What iCloud account(s) Mr. Sloves analyzed, his source for account information, and when he was provided that information and asked to identify iCloud backups for Plaintiff's devices; and
- Why a forensic extraction tool was required to gain access to *Plaintiff's own account* and whether software other than Elcomsoft[3] could have been used to extract the backups.

Given the inconsistencies between Mr. Sloves's declarations and Plaintiff's prior representations (and conflicting representations about the involvement of other experts), Uber still has no idea what efforts were made to uncover the data and what data exists. As the Court anticipated, Uber requires a deposition to explore these issues. Plaintiff's role as the middleman has prevented a clear understanding for months. Uber needs answers directly from the expert.

**Search Terms.** The declaration also reveals that Plaintiff unilaterally selected and applied search terms to her device collections *without ever informing Uber* what was happening. On June 29, Uber specifically told Plaintiff that a discussion of search terms did not make sense until she could inform Uber what data was available for collection. Ex. 7 (6/29/26 Vives Email). And Plaintiff knew Uber opposed search terms given its prior objection to their application on social media. Plaintiff never raised search terms for her devices again, including in the parties' near-daily conferrals. Instead, she arbitrarily limited her collection and concealed that process from Uber, unilaterally applying terms without ever telling Uber. Earlier today, Plaintiff finally disclosed her terms, which did not include highly relevant terms such as assault*, attack*, or sex*.[4] Equally concerning, Mr. Sloves indicated that *20,776 "non-duplicative items"* were provided for her review, but Plaintiff has only produced *2,965 documents in total*—hundreds of which are not from Plaintiff's devices. Thus, much of what was collected from Plaintiff's devices—*including the*

[2] Plaintiff's argument that "[i]t is not the forensic expert's job to identify data sources" is absurd. *Plaintiff* used an expert to assert there were no other backups (Ex. 4 (7/8/26 Velez Email)), and Mr. Sloves asserted the same in his declaration (Ex. 5 (Supp. Sloves Decl.) ¶ 24).

[3] Despite Plaintiff's mischaracterization, Mr. Sloves states that *Elcomsoft* was "unable to access iCloud backups" (Ex. 5 (Supp. Sloves Decl.) ¶ 19), not that other "third-party extraction methods" would have failed (*infra* at 4). It appears some software had such capability by September 2025.

[4] Discovery is not governed by FRE 412, and sex* could implicate texts about the alleged incident.

*backup that is apparently the only source of Plaintiff's potentially spoliated texts*—was withheld from production. The Court should order Plaintiff to: (i) produce a declaration explaining her process for determining responsiveness; and (ii) manually review the documents she excluded.

**Phone Records.** Plaintiff also refused to produce phone records by August 19 as the Court ordered.[5] Instead, Plaintiff sent counsel a letter, stating that "no additional phone records are within Plaintiff's possession, custody, or control[.]" But even if these records are not in Plaintiff's "possession," the law is clear that they are in her control because she has a legal right to obtain them from her provider. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999); *see also Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 994 (C.D. Cal. 2012) (Even "documents reflecting the content of Plaintiff's text messages are within his 'control' because he has 'the legal right to obtain [these] documents on demand' from AT & T."). Conversely, Uber cannot seek those records without authorization, which would be time-consuming. Plaintiff has a direct route to acquire these records from her provider and the process is laid out on T-Mobile's website. *See Personal Data Request,* T-Mobile (accessed Aug. 24, 2026), https://www.t-mobile.com/privacy-center/personal-data-request. The Court should order Plaintiff to acquire the relevant records as soon as possible. Once it receives these records, Uber would have to take steps to determine the owners of the numbers (whom Plaintiff refuses to identify), the availability of potential evidence, and the extent of lost or destroyed texts before trial. That is a time-consuming process, and Plaintiff is running out the clock. Plaintiff's delays make the pursuit of this discovery less feasible by the day, further undermining Uber's due process right to a full and fair defense.

**Plaintiff's Position:** The Court's August 12th Order required Plaintiff to provide a declaration from experts she used describing their efforts to collect or recover Plaintiff's communications and the results. ECF 7012 at 6. Plaintiff did exactly that. The only expert she used to collect or recover data from the phone and MacBook that was the subject of the PTO 8 dispute (ECF 6959) is forensic expert Lance Sloves. Mr. Sloves forensically imaged her iPhone 15 and MacBook, connected to her Apple account and collected the available iCloud backups, applied the search terms, and exported the results for production. Sloves Decl. ¶¶ 5-20. His declaration describes those efforts and their results.[6] The Court's Order also required Plaintiff to produce phone records from 2020-2024 *within her custody or control*. ECF 7012 at 7. Following the Order, Plaintiff logged into the T-Mobile customer portal available to her and searched for responsive records and represented the same to Uber at the August 20th meet and confer. Nothing pre-2025 was there. This is not the first time Uber has manufactured a discovery crisis on the even of trial – it did the same in *Dean* and *B.L*. However, Uber cannot dispute the fact that Plaintiff Jane Doe QLF 001 has produced over 1,300 pages of text messages and hundreds of emails, hundreds of private and direct messages on social media applications (none of which contain relevance redactions). On this record, Uber's eleventh-hour discovery complaints ring hollow.

**The Sloves Declaration Complies With the Court's Order.** Uber's request to depose Mr. Sloves should be denied. The deposition amounts to nothing more than disfavored discovery-on-discovery, and appears intended to delay trial, not prepare for it.[7] Uber complains that Mr.

---

[5] Plaintiff argues that Uber did not make a formal request for Plaintiff's phone records, but that is beside the point; the Court ordered her to produce these records. ECF 7012 at 7.

[6] In a separate PTO 8 letter (ECF 6970), Plaintiff agreed to provide a declaration detailing her Facebook message production efforts; that declaration was produced on August 18, 2026.

[7] Uber's revisions to this PTO Letter following receipt of Mr. Sloves's supplemental declaration make plain that Uber intends to keep moving the goalposts with no foreseeable end. This is further underscored by Uber's desire to cross-examine Mr. Sloves with statements made by Counsel

Sloves's declaration fails to describe efforts to "identify data sources." This criticism fundamentally misapprehends how forensic engagements work. It is not the forensic expert's job to identify data sources. Attorneys identify the relevant devices, accounts, and repositories; the forensic expert is then tasked with imaging and analyzing what counsel directs them to examine.

Uber also mischaracterizes the "newly accessible" iCloud backup narrative as a contradiction. It is not. As a supplemental declaration from Mr. Sloves confirms, beginning with iOS 18, Apple made substantial modifications to its cloud infrastructure rendering prior third-party extraction methods (including those of Elcomsoft, the forensic tool used to access iCloud backups) obsolete. Ex. 5, Sloves Supp. Decl. at ¶¶18-24.[8] Elcomsoft then released a series of software updates that progressively restored its ability to access iCloud backups. The version that enabled access to iOS 26 iCloud backups (the operating system running on the subject iPhone) was released on June 18, 2026, only five days before the iPhone was imaged on June 23, 2026. *Id.*. Mr. Sloves investigated further and identified a newly available update to Elcomsoft that would permit access to the previously inaccessible iCloud backup after discussions with Counsel. *Id.* This Elcomsoft update is what counsel referred to when stating that Plaintiff supplemented her production "once additional extraction technology became available and Plaintiff's forensic consultant was able to identify and access an Apple iCloud backup that has not previously been accessible." ECF 6959 at 4.

Uber also criticizes the *timing* of Mr. Sloves's work, demanding to know not just what was done, but when. Plaintiff produced every single discoverable document recovered from Mr. Sloves's collection efforts. They are in Uber's hands. Demanding to know the internal sequencing of forensic work that has already yielded a full production is not a legitimate discovery need. The Court contemplated a possible deposition so that Uber could learn what steps were taken to recover data and whether additional data can still be recovered. ECF 7012 at 6-7. Mr. Sloves's declaration, now supplemented with the dates of his work, answers both questions. Regardless, Uber never explains what a deposition could add beyond cost and delay on the eve of trial.[9]

Uber's demand that Plaintiff identify any other experts who sought to retrieve her messages betrays a basic misunderstanding of ILS's role and the ESI collection and production process. ILS is Plaintiff's e-discovery vendor. With respect to Plaintiff's devices, ILS's involvement was limited to reviewing and processing the data Mr. Sloves extracted and provided to them. ILS had no first-hand knowledge of the devices and the imaging efforts. Mr. Sloves is the sole expert who had any role in seeking to retrieve Plaintiff's messages from her devices.

**Uber Declined to Meet and Confer, Then Complained About the Result.** Uber's complaint about search terms is particularly galling given that Uber itself refused to meet and confer on the ESI checklist despite Plaintiff's repeated requests to do so. Ex. 9, July 6 email "to address questions…we suggest the parties schedule an ESI conferral"); Ex. 4, July 8 email, Ex. 10, July 13 email. While Uber specifically stated it would object to Plaintiff using search terms on social media (requiring Plaintiff to conduct a manual and time-consuming review of all social

---

during the meet-and-confer process. Parsing counsel's words from meet and confers chills the very candor that the iterative discovery process relies upon, and suggests that Uber is more interested in laying traps than in genuine cooperation.

[8] While Plaintiff believes Mr. Sloves's August 18, 2026 declaration abided by the Court's order, Plaintiff offers this supplemental declaration to address the issues Uber raised during the Parties' August 20 meet-and-confer in order to bring this matter to a close.

[9] Uber's effort to connect Mr. Sloves's declaration with Plaintiff's privilege log entries makes no sense: Mr. Sloves performed the limited role of imaging Plaintiff's devices, and very clearly had nothing to do with what Counsel decided to withhold as privileged.

media sources to produce documents), Uber was silent on the issues of how to search text messages or email. Faced with a Court-ordered trial date and no cooperation from Uber, Plaintiff proceeded on a good-faith basis. The terms applied were intentionally broad and designed to capture more, not less. Uber now has those terms, and their breadth speaks for itself (for example, Plaintiff included the terms "bar" and "drink").[10] Ex. 11. In last-minute edits to this PTO Letter, Uber now demands that Plaintiff manually review every single item collected from her iPhone and MacBook — an undertaking of staggering burden that no court would ever require of a producing party. This is a demand that should be rejected out of hand.

**Plaintiff Complied with the Court's Order Regarding Phone Records.** Plaintiff produced all phone records within her possession, custody, and control — including by logging into her phone carrier's online portal and searching her account records directly (which is precisely what the website Uber cites instructs a customer to do). Records predating 2025 were simply not available through that process. To the extent Uber believes additional records exist beyond what is accessible through the online portal, it is unclear what more Uber expects of Plaintiff short of serving a subpoena herself.

However, that position has no limiting principle, as it would mean a party has a legal obligation to subpoena every third party that might possess relevant information. That is wrong. *See Vaughn v. Klamath Cnty. Fire Distr. No. 1*, 2025 WL 1248948, at *3 (D. Ore. Apr. 30, 2025) ("[T]he Verizon phone records were not within Defendant' possession, custody, or control."). *Cf. Vasquez v. Conquest Completion Servs., LLC*, 2018 WL 3611891, at *3 (W.D. Tex. Jan. 10, 2018) (contrasting "information … within the party's possession, custody, and control" from "records [that] should be subpoenaed directly from the non-party custodians" and ordering the plaintiff to serve a subpoena only after he refused to sign an authorization for defendants to do so). Rather, "[t]o establish control over documents in the possession of a non-party, the movant must typically show that there is a relationship, either because of some affiliation, employment or statute, such that a party is able to *command* release of certain documents by the nonparty person or entity in actual possession." *Pierce v. Town of Golden Meadow*, 2026 WL 815810, at *2 (E.D. La. Mar. 25, 2026) (emphasis added). Typically, this requires a showing of a right to "secure the materials from the non-party to meet its own business needs" or that "the party effectively controls the entity." *Id.* Indeed, Uber's own case, *In re Citric Acid*, rejected a party's attempt to transform the "control" test into a "practical-ability-to-obtain" test and denied discovery of documents in a third-party's possession. 191 F.3d at 1107.

In any event, here, Uber *never* made a formal discovery request for four years of phone records. Even if it had, such a request would not be proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). This case is therefore very different than *Mintz*, where the defendant's counter-claim alleged that plaintiff secretly called the defendant's clients to poach them, and the call logs would either prove or disprove it. Here, Uber has not identified a single communication it expects to find, a single number it believes to be significant, or any reason why four years of call logs are necessary to try this case. This is particularly true when Plaintiff has already produced over 1,400 pages of text messages, and the call logs will only show the existence of phone calls and/or the fact texts were sent and received, without showing the contents. Moreover, Uber has the T-Mobile logs from the day before and after the assault, obtained by Mr. Le's criminal defense attorney and used at his criminal trial. Uber used them to cross examine Plaintiff. Uber's demand for four years of subsequent carrier records cannot be reconciled with any legitimate trial need.

---

[10] Uber's stunning demand that Plaintiff should have searched her text messages and emails using the term "sex" is very hard to reconcile with the FRE 412.

**FILER'S ATTESTATION**

I, Michael Vives, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Michael Vives*
Michael Vives