[SUBMITTING COUNSEL BELOW]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING PLAINTIFF'S REQUEST TO DEPOSE SARFRAZ MAREDIA AND DEFENDANTS' REQUEST FOR PROTECTIVE ORDER**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge: Hon. Charles R. Breyer<br><br>Courtroom: 501 |

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff Jane Doe QLF 001's request to depose Sarfraz Maredia and Uber's request for a protective order.

Respectfully submitted,

DATED: August 28, 2026

By: /s/ *Roopal P. Luhana*
ROOPAL P. LUHANA (*pro hac vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ *Michael Vives*
MICHAEL VIVES (*pro hac vice*)
JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

KIM BUENO
State Bar No. 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## I. Uber's Position:

Plaintiff's request to depose Sarfraz Maredia asks the Court to abrogate its previous apex witness ruling, not because Mr. Maredia has relevant evidence, but because he happens to live in Texas and is thus within the Court's subpoena power for the *QLF001* trial. Plaintiff's suggestion that Mr. Maredia—Uber's Vice President, Head of Autonomous Mobility & Delivery and a member of Uber's Executive Leadership Team ("ELT")—has information relevant to this case is a strategy-driven fiction. This Court held last year that Plaintiffs were limited to 20 hours in total to depose Maredia and several other ELT members. Plaintiffs chose to spend those hours on other witnesses, which is unsurprising given Mr. Maredia's lack of relevant knowledge. While they now apparently regret that decision, it is too late. Nor can Plaintiff evade the Court's order by pretending this is case-specific discovery. Endorsing such a tactic would essentially mean Plaintiffs can depose any Uber executive as long as they change the caption in their Notice. While Plaintiff harps on Mr. Maredia's knowledge of local Houston regulations from 2014-2016—in a desperate attempt to draw a connection to this case—that experience does not give Mr. Maredia case-specific knowledge regarding Plaintiff's claims or Mr. Le, who was onboarded hundreds of miles away in a different operating market, several years later. The Court should issue a protective order.

***Background.*** Over the last 12 years, Mr. Maredia has held a number of positions at Uber, including General Manager of Uber's Houston office (2014-2016), Regional General Manager, U.S. & Canada for Mobility (2019-2021), and currently, Uber's Vice President, Head of Autonomous Mobility & Delivery and a member of Uber's ELT. In ***none*** of his roles did Mr. Maredia obtain any first-hand or unique knowledge about the issues raised in this litigation generally, let alone the *QLF 001* case specifically, including background checks, safety issues, or related policies and procedures. (Maredia Decl. ¶¶ 1-15 (Ex. 1.))

In 2025, Plaintiffs sought to depose multiple Uber senior executives. Uber moved for a protective order, arguing that they were apex witnesses without unique personal knowledge relevant to the litigation. The Court denied the motion, but limited Plaintiffs to "a collective total of eighteen hours" of deposition time for four of the executives—Jill Hazelbaker, Sachin Kansal, Frank Chang, ***and Sarfraz Maredia***—to be "divided at Plaintiffs' discretion." 3/24/2025 Order at 7. The Court further noted that "[i]f Plaintiffs would prefer to omit one or two of those witness[es] entirely, without substitution, and apply the full twenty[1] hours to the remaining witnesses, they may do so." *Id.* That is what Plaintiffs did. They opted to depose Ms. Hazelbaker, Mr. Kansal, and Mr. Chang for a combined ***25 hours***, and ***elected not to depose Mr. Maredia at all*** (despite knowing that many cases involve rides in Texas, including several bellwethers ***they had chosen***).

Nevertheless, on August 3, 2026, Plaintiffs served a Notice of Deposition for Mr. Maredia related to "ALL ACTIONS" for 7 hours. On August 13, 2026, Plaintiff also served Mr. Maredia with a trial subpoena. During meet-and-confers, Plaintiff's counsel argued that the deposition is not barred by the March 2025 Order because they seek *QLF 001*-specific testimony and the Notice was mistakenly captioned as relating to all actions. *See* 8/6/2026 email from B. Wilkins to M. Vives (Ex. 2). Plaintiff also argued that Mr. Maredia "had significant involvement in rideshare in Texas during the time that Texas required stricter background check requirements than Uber used at the time [the subject driver signed-up for the Uber platform]. Additionally, at the time of the incident trip, Mr. Maredia was a senior director and regional general manager of US & Canada rides for Uber." *See* 7/30/2026 email from B. Wilkins to J. Levy (Ex. 3).

When asked why Mr. Maredia is relevant to *QLF 001*, counsel produced a July 15, 2015

[1] The Order limits Plaintiffs to 18 hours in one place and 20 in another; Plaintiffs exceeded both.

affidavit signed by Mr. Maredia when he was the General Manager of Uber's Houston office. *See* Aff. (Ex. 4). This affidavit was submitted to the City of Houston in response to a Public Information Act ("PIA") request for information about Uber's "operations and driver partners," which Uber had submitted to the City pursuant to its regulations governing Transportation Network Companies. *Id.* at 1. But the alleged incident involving QLF 001 took place years later in Tarrant County, which is over 250 miles away from Houston and part of a different operating market. Mr. Maredia ceased to serve as the General Manager of the Houston office in 2016, ***four years*** before the incident involving QLF 001.

**Argument.** Under Federal Rule of Civil Procedure 26(c)(1), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Under Fed. R. Civ. P. 26(b)(1), all discovery must be "relevant . . . and proportional to the needs of the case[.]" Uber is entitled to a protective order here.

***First***, Plaintiffs are foreclosed by the Court's prior order from deposing Mr. Maredia. As set forth above, the MDL Plaintiffs previously were granted permission to depose Mr. Maredia and/or three other Uber senior executives, for a limited number of hours. *See* 3/24/2025 Order at 7. Presumably because they realized that Mr. Maredia did ***not*** in fact have any relevant information, Plaintiffs chose to use all of their allotted time on the other witnesses and not depose Mr. Maredia at all. Now, Plaintiffs have changed course because this trial is in Texas and Mr. Maredia resides within the subpoena power of the Court. But having made their choice and used all their time (and then some), Plaintiffs cannot seek his testimony now.

Plaintiffs attempt to circumvent this Court's prior Order by arguing that the Notice is miscaptioned and is specific to the *QLF 001* case, exempting it from the limitations of the Order. But even if Plaintiff had captioned the notice for *QLF 001*, the deposition would be improper. After all, if such maneuvering were tolerated, it would allow Plaintiffs to pursue additional depositions of Uber executives in every individual case under the guise of case-specific deposition notices. Again, Plaintiffs had the opportunity to depose Mr. Maredia and elected not to do so. They cannot obtain another opportunity merely by relabeling the same discovery as "case-specific."

***Second***, Mr. Maredia has no case-specific information. Plaintiff argues that Maredia has relevant information because he "had significant involvement in rideshare in Texas during the time that Texas required stricter background check requirements than Uber used at the time it onboarded the incident driver." But that does not establish knowledge specific to the *QLF 001* case. Plaintiff's cited documents demonstrate the opposite. Plaintiff's documents show that Mr. Maredia had some knowledge of Uber's background checks and Houston's TNC regulations during 2015-2016. They do not show that Mr. Maredia designed, selected, or implemented the background-check process that governed ***Mr. Le's 2020*** onboarding or that he participated in any decision concerning ***Mr. Le's*** screening. Nor does Plaintiff identify evidence that Mr. Maredia participated in any decision to eliminate warrant screening statewide. Rather, Plaintiff's theory improperly assumes—with no supporting evidence—that historical Houston regulatory decisions made during Mr. Maredia's tenure caused the absence of warrant screening years later. Involvement in Houston-specific regulatory and operational issues does not establish specific knowledge about the policies or decisions actually at issue in *QLF 001*. That is just general discovery. And Plaintiff's references to business "friction" or costs do not establish that Mr. Maredia was responsible for the background-check policies or any decision concerning the screening process that applied to ***Mr. Le*** in 2020. Likewise, isolated evidence that Mr. Maredia was copied on or involved in individual driver-deactivation years earlier does not establish knowledge tied to this particular case. In short,

Plaintiff has made no showing that Mr. Maredia has case-specific knowledge of any sort.[2]

Plaintiff also previously pointed to a 2015 affidavit signed by Mr. Maredia and submitted to the City of Houston in response to a PIA request seeking Uber's confidential and propriety information. *See* Ex. 4. But Plaintiff still offers no explanation as to how this affidavit could possibly be relevant to QLF 001's claims; nor could she. The affidavit was prepared ***five years*** before the alleged incident in this case, as well as five years before Mr. Le joined the Uber platform as a driver. And the substance of the affidavit—the confidential and proprietary nature of driver information—has nothing to do with QLF 001's claims either.

To the extent Plaintiff claims Mr. Maredia's testimony is relevant because his title covered the entire U.S. and Canada in 2020, that is also plainly insufficient. Plaintiff's inability to point to any actual connection between Mr. Maredia's role and QLF 001's claims—despite citing numerous documents in her brief—confirms what is already obvious—his testimony is sought for an improper purpose and amounts to harassment. Launching an unwarranted fishing expedition this close to trial is wildly out of proportion to the needs of the case. Mr. Maredia is a senior executive and member of the ELT with no first-hand or unique knowledge relevant to this litigation as a whole—much less to this specific Plaintiff's case. *See* Maredia Decl. ¶ 14. Plaintiffs have already deposed 57 current or former Uber employees, including more than 20 senior executives and many witnesses who testified about Uber's background check and safety procedures. Plaintiff has not identified any subject on which Mr. Maredia would provide testimony that could not be obtained from the witnesses already deposed concerning Uber's background-check policies, Texas operations, or driver-safety procedures. Enough is enough. The Court should issue a protective order to prevent a disproportionate and unnecessary deposition of Mr. Maredia

**Plaintiff's Position:**

Mr. Maredia's deposition is relevant and proportional to the needs of the QLF case.[3] Uber bears the burden to show specific harm or prejudice from the discovery. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 262–63 (N.D. Cal. 2012). Uber has not met that burden. Plaintiff need not prove that Mr. Maredia personally approved Mr. Le's 2020 onboarding as Uber incorrectly asserts; she need only show that his testimony is relevant and proportional to the needs of the case. Uber's own brief concedes as much: it admits that Mr. Maredia had knowledge of Uber's background checks and Houston's TNC regulations during the very period when Uber's warrant-screening apparatus was built and then dismantled. That concession establishes relevance; Uber's remaining arguments go to the weight of Mr. Maredia's testimony, not its discoverability.

As an initial matter, Uber is incorrect that the Court's order on "apex" depositions precludes this deposition.[4] The Court has been consistently clear that common discovery and case-specific discovery are distinct segments of discovery with distinct relevance and proportionality analysis. Plaintiff seeks Mr. Maredia's testimony now because this case turns on Texas-specific policies, requirements and capabilities that bear directly on how the Uber driver –banned from

---

[2] In addition, any inquiry into Uber's communications with any Texas entities regarding state or local background check requirements would also run afoul of this Court's prior order on lobbying. *See* 7/30/26 Order.

[3] Plaintiff has offered reasonable time limits to reduce any burden on Mr. Maredia.

[4] The Court specifically rejected an inflexible approach to Apex depositions and recognized that the appropriate test is to weigh the relevance and burden of the requested deposition. Dkt. 2600 at 3.

Uber in 2016 and subject to an open sexual assault warrant - was nevertheless activated on Uber's platform in 2020.

Plaintiff QLF 001 was sexually assaulted in 2020 by an Uber driver, Victor Le, who created the first of five Uber driver accounts in 2016. That same year, Le was allegedly permanently banned from the Uber platform for pretending to be an Uber driver and defrauding an Uber passenger. Le was ultimately onboarded in 2020, despite that ban, while there was a live warrant for his arrest for sexually assaulting a woman in 2017 when he again posed as an Uber driver (an incident that was also reported to Uber). How Le, despite a permanent ban and an open warrant, was able to pass Uber's screening process and be onboarded, are of utmost importance to this case.

Mr. Maredia led Defendant's rideshare operations in Texas from 2014-2017—first as General Manager of Uber's Houston office (2014–2016), then as Uber's Texas and Southwest General Manager for Mobility (2016–2017), and then as Regional General Manager for Central U.S. and Canada (2017). During his tenure, driver screening protocols in Texas underwent significant (and highly publicized) alterations. In his roles, Mr. Maredia was responsible for business performance of Uber's Mobility operations across Texas and the Southwest and, later, the Central United States. (Maredia Decl. ¶¶ 10–12.) That profit-and-loss accountability is precisely why his testimony matters here: the cost, speed, and rigor of Uber's driver background checks were direct inputs into the driver-supply growth and operating margins for which he was responsible, and Uber's use of quicker, cheaper screening to onboard more drivers is at the heart of Plaintiff's claim that Uber conducted a mediocre background check of Mr. Le because of its misplaced priority of profits over passenger safety.

The record confirms that Mr. Maredia's testimony is necessary. In 2016, Uber required potential Houston drivers to show they had no active warrants out against them as part of onboarding.[5] Uber also worked with the City of Houston to have a courthouse representative at Uber's "greenlight hubs" so drivers could obtain letters confirming the absence of outstanding warrants. Ex. 5 (UBER_JCCP_MDL_004899909). Under Maredia's leadership, Uber was a vocal supporter for the standardization of background check requirements across Texas, which eliminated Houston's ability to enforce additional warrant-screening requirements. *See* Ex. 6 (UBER_JCCP_MDL_005125966). [6]

Because of his position at Uber during this time period, just prior to the onboarding of the driver who raped Plaintiff QLF 001, Mr. Maredia has direct knowledge of the feasibility of conducting more thorough background checks on potential drivers, including checking for outstanding warrants. As the Uber executive with profit-and-loss responsibility for Texas and the Southwest during precisely this period, Mr. Maredia is uniquely positioned to explain why Uber abandoned the warrant screening it was already performing—and whether the cost and speed of background checks, and their effect on how quickly Uber could sign up new drivers, drove that decision. Those trade-offs between screening rigor and driver-supply growth are the core of Plaintiff's profits-over-safety claim, and they bear directly on how Le—permanently banned in

---

[5] City of Houston ARA, Briefing to Public Safety and Homeland Security Committee (Feb. 25, 2014): https://www.houstontx.gov/council/committees/pshs/20140225/vehiclesforhire.pdf.

[6] The deposition of Mr. Maredia will not focus on lobbying topics, but rather Uber's practices and Mr. Maredia's knowledge related to feasibility of those practices.

2016 and wanted on an open warrant—was nonetheless onboarded in 2020. Uber's contrary argument—that Mr. Maredia did not personally "design, select, or implement" the process that governed Mr. Le's 2020 onboarding—misframes the issue. The question is not who approved Mr. Le in 2020; it is why, by 2020, Uber's process no longer screened for the open warrant he was carrying. That gap is the direct legacy of decisions made on Mr. Maredia's watch: Uber's push to eliminate Houston's warrant-check requirement, and Mr. Maredia's own decisions to cut screening steps to grow driver supply. Indeed, Le first created a driver account in 2016—during Mr. Maredia's Texas tenure—and Uber retained that data, yet activated him anyway in 2020.

Uber's own documents further defeat any claim that Mr. Maredia lacks relevant knowledge. His public statements addressed Texas background-check regulations, including fingerprinting and continuous versus quarterly checks. Ex. 7 (UBER_JCCP_MDL_001611693). He is also the author of record of a 2016 Houston Chronicle op-ed criticizing the added security layers that, in his view, increased driver friction without improving rider safety. Ex. 8 (UBER_JCCP_MDL_001543292). Uber documents also show his role in cost-benefit discussions over stricter background checks and whether Uber could meet its driver onboarding goals under these policies. Ex. 9 (UBER_JCCP_MDL_004014873) (10/8/2014 e-mail exchange regarding [redacted] created by additional background check requirements); Ex. 10 (UBER_JCCP_MDL_004219553) (12/15/2016 e-mail from Maredia regarding "Super Bowl compromise" removing [redacted]). These documents show far more than awareness of "[redacted]" They show Mr. Maredia exercising authority over which vetting steps Uber kept and which it cut—in the "Super Bowl compromise," he personally described removing [redacted] An executive who decided which screening steps to eliminate to grow driver supply did not merely have "some knowledge" of the background-check process; he helped shape it. At a minimum, Uber's own records create a dispute about the scope of Mr. Maredia's role that cannot be resolved on his paper declaration—and that dispute is itself reason to allow the deposition.

The relevance is heightened because, during the same period, Mr. Maredia not only was aware of reports of Texas drivers sexually assaulting passenger, he was personally involved in deciding which drivers would be deactivated in response to those reports. *See* Ex. 11 (UBER_JCCP_MDL_000693940) (10/18/2015 e-mail from Maredia requesting driver deactivation for sexual misconduct); Ex. 12 (UBER_JCCP_MDL_001222034) (6/4/2016 JIRA report from Rider that "this guy tried to rape me."); Ex. 13 (UBER_JCCP_MDL_001221912) (8/26/2016 JIRA report that Driver has non-consensual intercourse with Rider who was intoxicated); and Ex. 14 (UBER_JCCP_MDL_001221703) (12/26/2016 JIRA reporting non-consensual intercourse).

The Court should deny Uber's informal request for a protective order, and order Uber to produce Mr. Maredia for a deposition. Because trial is approaching and Uber has refused to provide a date, the Court should further order Uber to provide a deposition date within two business days.

**FILER'S ATTESTATION**

I, Michael Vives, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Michael Vives*
Michael Vives