# EXHIBIT 4

| | |
|---|---|
| Control Number : | UBER_JCCP_MDL_005133251 |
| File Description : | Portable Document Format |
| JCCP Production - Custodian Other : | Maredia, Sarfraz |
| Author (Combined) : | |
| GOOGLE_#Author : | |
| GOOGLE_Collaborators : | |
| Date Created (App) : | 7/22/2015 7:07:00 PM |
| Date Last Modified (App) : | 7/23/2015 1:40:00 PM |
| Parent Doc Date : | 7/23/2015 1:50:00 PM |
| Production - Beginning Bates : | |

**AFFIDAVIT OF SARFRAZ MAREDIA**

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day personally appeared SARFRAZ MAREDIA, known to me to be the person whose name is subscribed below, and being by me first duly sworn, deposed and stated on his oath as follows:

1. My name is Sarfraz Maredia. I am the General Manager of the Houston office of Uber Technologies Inc. ("Uber"), of which Rasier LLC ("Rasier") is a wholly owned subsidiary. I am over the age of 18 years, have never been convicted of a felony, and am fully competent and duly authorized to make this affidavit. My job responsibilities at Uber include managing all aspects of Uber's operations in the Southeast Texas Metropolitan areas of Houston-Galveston, Bryan/College Station, and Corpus Christi. I have personal knowledge of the facts contained in this affidavit, and those facts are true and correct.

2. Uber is a private technology company that developed the Uber App, a mobile application-based digital platform that enables independent third-party vehicle drivers to receive requests for transportation services from interested riders. Rasier licenses use of the Uber App to ride-sharing drivers in Houston, who we refer to as driver partners.

3. In November 2014, the City of Houston implemented new regulations governing Transportation Network Companies ("TNCs"), which is a term for businesses like Rasier offering digital platforms to connect drivers to persons requesting transportation. Pursuant to those regulations, TNCs are required to provide the City of Houston with certain confidential information regarding their operations and driver partners. This information is highly confidential in nature.

4. The ride-sharing industry is in its infancy; however, there are a number of emerging TNCs, and the marketplace is extremely competitive. Many of Rasier's competitors are considering operations in Houston. As the fourth largest city in the country, Houston is an extremely attractive market. Without protections against the disclosure of Rasier's confidential and proprietary information, competitors could use Rasier's data as free market research, and jumpstart an entry into the Houston market while avoiding the considerable time and expense Rasier invested to develop its business in Houston.

5. The Public Information Act ("PIA") request at issue in this case is a request that the City of Houston ("City") release a large volume of information that includes (a) the names of Rasier's driver partners and the number of driver partners licensed by the City; (b) a great deal of personal identifying information about many of the



**EXHIBIT "D"**

driver partners, including at least five complete copies of the City's Vehicle-for-Hire License Applications, which include the applicant's name, address, social security number, telephone number, email addresses, driver's license numbers, birthdate, marital status, and employment and residential histories; (c) payment confirmations showing the amount of fees and other revenues paid by Rasier to the City; and (d) miscellaneous emails between Rasier and the City dealing with licensing matters, which include personal identifying information and personal email addresses (the "Requested Information"). The City's proposed document production exceeds 950 printed pages.

6. The Requested Information thus includes a great deal of personal and identifying information about many of the driver partners. Release of this information would constitute an unreasonable invasion of the personal privacy rights of Rasier's driver partners. In the present day, identity theft and internet security are matters of very significant concern. If the personal details of Rasier's driver partners were disclosed and made public, anyone could use that information to create false online identifies, or to perpetuate theft or financial fraud. Additionally, the personal medical histories of some driver partners, detailed on the second page of the completed TNC license application, contain highly sensitive and potentially embarrassing intimate details. Rasier driver partners have also expressed concerns to me about harassment by representatives of incumbent transportation industries and members of the media.

7. Rasier's driver partners are its sole source of revenue, and therefore are its customers. Rasier's driver partners pay Rasier a service fee that is a percentage of the fare the driver receives for every ride in exchange for access to the Uber digital platform. The service fee is set forth in a software sublicense and online services agreement that every driver partner executes with Rasier. These service fees are Rasier's primary source of revenue. If the identities of Rasier's driver partners were released to the public, including identifying and contact information such as employment histories, residence address and phone numbers, competitors or potential competitors could use that information to poach driver partners from the Rasier platform (in other words, to take Rasier's customers), to measure and assess the size of the market, and thereby to undermine one of Rasier's key competitive advantages in the marketplace. Rasier's driver partners are not employees. They are independent contractors. As such, there is nothing to prevent a driver partner from moving his or her vehicle transportation business to another TNC, because that TNC could target these customers based on information received for free but developed at great cost to Rasier. In more mature ride-share markets, such as San Francisco, California, it is not uncommon for individual driver partners to enter agreements with three or four different TNCs.

8. The process of attracting and qualifying driver partners includes multiple steps, including the following:

- Marketing: Rasier proactively markets to potential driver partners, including budgets for internet marketing, targeted website advertising, and market research to identify individuals or groups that are both interested and qualified to use Uber's software platform to receive requests for transportation services. Part of the financial investment for recruitment includes an incentive referral program, offering financial incentives to current driver partners who recruit and refer other qualified driver partners. The referral incentive program alone comprises over $100,000 of the Houston office's operating budget.

- Background Checks: Rasier uses a nationally accredited firm to do a detailed background check of every potential driver partner, which includes a county, state, multi-state and federal criminal history search. The background checks also include a search of driving records, sexual offender records, social security traces, and a search of motor vehicle records.

- Documentation Audit: Potential driver partners who have been marketed to and who have passed the background check are also required to submit personal documentation for audit by Rasier. This includes review of driver's licenses (as well as limousine licenses if applicants have them), vehicle registration, and proof of insurance, among other records. Rasier verifies all such records submitted by driver partners.

- Account Setup: Uber staff[1] also devotes time to ensure driver partner applicants supply relevant banking and tax information so that each driver partner who completes trips on the Uber platform can receive payment of the fares she or he earns.

- City of Houston Licensing: Uber then devotes considerable employee time to assisting potential driver partners with the City of Houston's licensing program. The City of Houston licensing regime includes physicals and drug tests, a second background check, and additional requirements from the City, such as furnishing each vehicle with a fire extinguisher and completing a warrant check at the City of Houston Municipal Court. Uber employees provide driver partners support via emails, text messages, follow-up telephone calls, as well as individual and group information sessions to support driver partners through the process. The City of Houston's licensing application process is among the most detailed and intensive in the entire country. Rasier sponsors multiple meetings per month to assist driver partners with the process and answer questions.

9. The process of marketing to, attracting, and qualifying driver partners is extremely labor-intensive, and has required that Uber and Rasier devote a very substantial investment of employee time and money to grow a nascent market like Houston.

[1] Uber provides certain services to its subsidiary Rasier through Uber's employees, pursuant to an intercompany agreement.

There are currently more than 40 employees in Texas, but that number is projected to at least double by the end of 2015. Approximately one-third of these employees are devoted to driver partner marketing, driver partner screening, and helping applicants complete the licensing process. In the Houston office alone, well over $1 million of the annual operating budget is dedicated to driver partner marketing and qualification. Based on my personal knowledge of Houston operations, I know that Uber has devoted at least 10,000 employee-hours over the past year to marketing to, screening, and qualifying driver partners in the Greater Houston area. Given that the driver partners are Rasier's customers, qualified and properly vetted driver partners are absolutely essential to Rasier's earning revenue in Houston.

10. If the requested information is released to the public, Rasier's potential TNC competitors in Houston could reap an enormous windfall. Since the driver partners are independent contractors, and not employees, there is nothing to prevent a competitor from contacting any or all of the driver partners, and offering them incentives to shift their ride-share business to the competitor. That competitor could instantly tap, recruit and poach an entire network of driver partners without incurring any of the expense to market to, attract, conduct background checks, verify documents, or support the licensing of any of the driver partners. In essence, that competitor would have the ability to co-opt a duly qualified and experienced driver partner customer base, which was identified, developed, and qualified at Rasier's expense.

11. Competition among TNC operators to attract qualified driver partners can be extremely aggressive. By way of example, an affiliate of Rasier's opened a lot in San Francisco to assist driver partners with vehicle inspections. Within days, another TNC competitor leased the lot across the street in order to solicit driver partners as they came to get their vehicles inspected. In addition, near the same vehicle inspection lot, Rasier's affiliate opened a driver partner support center to offer some of the same services described above: assisting driver partners, dispensing or collecting information from driver partners, and the like. Within days, another TNC competitor operating in San Francisco began to aggressively solicit the Rasier affiliate's driver partners as they came to and departed from the driver partner support center.

12. Since Rasier is the only TNC licensee operating in Houston, release of the requested information would give a potential competitor an exact headcount of Rasier's network of driver partners. A knowledgeable competitor can use the size of the driver partner network to estimate revenues by applying assumptions based on industry experience, such as average driver partner hours per week, average fares, and average number of trips in a given hour. The competitor can easily derive these averages using experience in comparable cities. If the competitor were to request multiple sets of the Requested Information for different dates, the competitor would also see changes in the size of the customer network of driver partners over time, which could then be used to estimate growth in the market. Additionally, TNCs like Rasier sometimes offer promotions to increase ridership and driver partner

activity, such as, for example, offering a $250 referral incentive payment to existing driver partners who refer qualified new driver partners. A competitor who reviews the Requested Information before and after certain public promotions could then determine the efficacy of particular promotions, enabling that competitor to craft a detailed marketing plan which they know to be effective in the Houston area. Simply put, the Requested Information in this case shows the exact size of Rasier's customer network of driver partners, which a knowledgeable competitor can use to develop revenue estimates, ascertain growth in the market, and execute effective promotional or marketing strategies, all developed at little or no cost to that competitor.

13. Under the City's regulations, TNCs pay the City a quarterly license fee equivalent to 2% of gross trip receipts. The Requested Information includes confirmations of these fees and other fees paid by Rasier. Release of this information would thus give competitors access to Rasier's gross revenues and gross trip receipts. Using experience in comparable markets, competitors could calculate average driver partner hours per week, average number of trips in a given hour, and average fare. Competitors would know to the dollar the precise value and gross revenue potential of the TNC market in the City, and by making multiple requests for the same information over time, would be able to see how the market grows or shrinks. Rasier is not a publically traded company and its revenues are strictly confidential and not disseminated outside the company. Rasier should not be forced to disclose its confidential revenues from operations to potential competitors.

14. The Requested Information is kept on secured computer servers maintained on behalf of Rasier. The servers are password protected, and access is restricted to a very limited number of personnel. Information on drivers and vehicles is not made available to the general public or to anyone outside Uber or Rasier, and in fact, some of that information is not available to most of Uber's operating personnel in Houston. Rasier's financial information, such as its gross trip receipts and the amounts paid to the City, is especially secret and maintained in strict confidence, known to very few individuals in the Company.

Further, Affiant sayeth naught.

[signature]

SARFRAZ MAREDIA

SUBSCRIBED and SWORN TO before me by SARFRAZ MAREDIA on this 22nd day of July, 2015.

Loretta Anne Clem

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

LORETTA ANNE CLEM
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 10, 2018