[SUBMITTING COUNSEL BELOW]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

Case No.: 3:23-MD-03084-CRB

**JOINT LETTER REGARDING PLAINTIFF'S REQUEST FOR PROTECTIVE ORDER REGARDING DEVICE SEARCH TERMS**

Judge: Hon. Lisa J. Cisneros
Courtroom: G – 15th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 501

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiff Jane Doe QLF 001's request for a protective order regarding device search terms.

Respectfully submitted,

DATED: September 1, 2026

By: /s/ *Roopal P. Luhana*
ROOPAL P. LUHANA (*pro hac vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ *Michael Vives*
MICHAEL VIVES (*pro hac vice*)
JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

KIM BUENO
State Bar No. 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## I. Plaintiff Jane Doe QLF 001's Position:

Oral. Head. Penis. Dick. Sex. Cheat. Regret. Uber demands that a 29-year-old rape survivor use these words to search her cell phone and her laptop – while her rapist serves eleven years in prison. Uber justifies these demands by saying that Plaintiff would "[redacted] *See* Ex. D (8/27 Email from [redacted]).

Uber tries to camouflage this request as a pedestrian discovery dispute. [1] But clearly, it is not. The Court's ruling on whether a sexual assault plaintiff can be compelled to excavate her own consensual sex life through device search terms will set the standard for every pending bellwether case in this litigation. What Uber is trying to normalize is the proposition that a rape victim's private sexual history is fair game for discovery. That is precisely the harm Congress enacted FRE 412 to prevent. Plaintiff Jane Doe QLF 001 requests a protective order barring discovery related to these terms and this invasive inquiry. Uber's demand that Plaintiff excavate her own sexual history to turn over any small iota Uber might use to shred her credibility at trial is not a legitimate discovery request nor is it sanctioned by any rule of civil procedure.

### A. Uber's Proposed Terms Are Designed to Harass, Not Discover Relevant Evidence

Uber has proposed over sixty-five search terms[2] to be run against Plaintiff's personal devices. Plaintiff has cooperated in good faith, accepting more than half of Uber's proposed terms, even including Uber's requested terms attenuated to the assault and Plaintiff's alleged damages. *See* Exs. A, B. But a line must be drawn somewhere. The Parties' dispute now centers on an extremely troubling subset of terms that have nothing to do with the central issues in the case. Ex. C. Plaintiff has shown good faith willingness to negotiate the contours of all other terms at issue, having agreed to run in excess of ***60 terms without limitation*** (including many of the words that Uber would have utilize in search strings as a modifier to make the terms in Ex. C actually tailored to the facts of the case). Uber's insistence on filing this brief is therefore telling, and speaks not to any legitimate discovery need, but rather to a troubling willingness to weaponize the discovery process to burden and embarrass Plaintiff — and, by extension, every other plaintiff who comes after her in this litigation.

While Uber now proclaims that it is not seeking discovery of consensual sexual activities, the meet-and-confer process would call this into question. For example, when Plaintiff objected to the term "head," (as it seemingly and naturally would pull in irrelevant documents), Uber justified the term by noting that "Plaintiff's produced messages show [redacted] Ex. D ([redacted]). In other words, Uber is explicitly seeking to search Plaintiff's private messages for evidence of her prior discussions of consensual oral sex with people other than her attacker.[3] This is not discovery – this is voyeurism and needless embarrassment and harassment of the Plaintiff.

---

[1] To be clear – Uber had knowledge of Plaintiff's use of search terms long before Mr. Sloves ever produced a declaration. *See* ECF 7011 (JSR from 8/11/2026). Plaintiff bears some responsibility for this dispute, and has taken meaningful steps to remedy that, accepting nearly half of Uber's requested terms without modification or objection. However, Uber's effort to cast Plaintiff as the sole architect of this discovery impasse by using the language of the Court's order is neither accurate nor warranted.

[2] Uber did not require these categories of search terms in other bellwether cases arising out of this same litigation. In the *A.R.* case, for example, Uber was satisfied with approximately fourteen total search terms. Here, Uber is not satisfied with over 60 terms.

[3] Uber's last-minute decision to withdraw 'oral' from this dispute while continuing to press for 'head' is, quite frankly, puzzling. 'Oral' is the more clinical term a person is more likely to use

The situation is even more troubling with respect to Uber's so-called "credibility" terms, (which Uber has now withdrawn, only hours before the filing of this brief). But the rationale for Uber even requesting these terms in the first instance undermines the statement that they make here about not seeking discovery related to Plaintiff's "irrelevant sexual experience." Uber justified asking for documents and "cheating" and "regret" identifying testimony from [redacted]." Ex. D ([redacted]). (The ex had no personal knowledge of the assault in this case.). The implication is unmistakable and breathtaking: Uber intends to argue that because Plaintiff allegedly cheated on a former boyfriend and was sexually active, she either consented to or is less credible when she reported what was done to her. That is the definition of victim-blaming, and it has no place in this proceeding.

The gravamen of Uber's overall PTO 8 position is that Uber is not asking for production of consensual sexual communications – only that Plaintiff review those messages and produce what is relevant.[4] The harm that FRE 412 and 26(c) guard against begins with the very process of even collecting these intimate communications, not just their ultimate production. Absent some legitimate and substantial discovery need, no rape victim should be required to allow anyone to comb through her private sexual communications and decide, document by document, which one the attorneys arguing the sexual assault never happened might find useful, regardless of whether those documents ultimately land in Uber's hands. Nevertheless, Uber's argument collapses under its own logic: if Uber only wants communications about the assault, Plaintiff's existing terms — "rape*," "assault," "attack," "abus*," "afraid," "scared," "PTSD," "Victor," "Uber," "Lyft" and many others she has already run or agreed to run already capture these documents.

### B. Uber's Request is Precisely Why Congress Enacted FRE 412

Federal Rule of Evidence 412 reflects a congressional determination that evidence of a complainant's sexual behavior is "more often harassing and intimidating than genuinely probative," and that "the potential for prejudice outweighs whatever probative value such evidence may have." *Priest v. Rotary*, 98 F.R.D. 755, 762 (N.D. Cal. 1983). And while FRE 412 is an evidentiary rule, the Advisory Committee Notes expressly instruct that courts should enter protective orders under Rule 26(c) to prevent unwarranted discovery into sexual history. Courts routinely apply FRE 412 to limit the scope of discovery in civil sexual assault and harassment cases. *See Barta v. City & Cnty. of Honolulu*, 169 F.R.D. 132, 135 (D. Haw. 1996) ("Rule 412 must inform the proper scope of discovery in this [sexual harassment] case" and "must constrict the broad scope of Rule 26(b)(1)"); *Doe v. City of San Diego*, 2013 WL 3989193, at *4 (S.D. Cal. Aug. 1, 2013) (collecting cases) (the policies underlying Rule 412 must be considered in determining discoverability of sexual behavior evidence); *Leamon v. KBR, Inc.*, 2011 WL 13340578, at *2 (S.D. Tex. Dec. 14, 2011) (considering the "high burden of satisfying" Rule 412 in determining the scope of discovery).

---

when describing a sexual assault. 'Head,' by contrast, is casual slang far more commonly associated with consensual sexual activity.

[4] Uber's suggestion that this dispute is premature because Plaintiff has not provided hit counts in a deduplicated manner misses the point entirely. While Plaintiff has agreed to negotiate hit counts for terms that present legitimate burden questions, there are categories of inquiry (namely, discovery into a rape victim's consensual sex life) that no hit count can render appropriate. Notably, Uber itself flatly refused to search for documents with low hit counts on relevance grounds, including terms such as "destroy," and "bigot," without any proportionality justification whatsoever.

Uber cannot make the required showing here. Uber justifies its request by arguing that terms about sex relate to Plaintiff's own claims about the assault and how she described the assault under questioning by Uber's lawyer. But that argument, taken to its logical conclusion, would mean that any rape victim who describes her assault — as every rape victim must — forfeits her privacy in every irrelevant communication she has ever had about sex. This is not so. Courts in the 5th and 9th Circuits have issued protective orders forbidding discovery into Plaintiff's sexual history and sexual behavior in sexual assault and harassment cases. *See Barta*, 139 F.R.D. at 136 (prohibiting discovery into Plaintiff's sexual conduct outside of the workplace in a workplace sexual harassment case); *Leamon*, 2011 WL 13340578 at *2 (determining that information into Plaintiff's extramarital affairs and related sexual interactions falls outside the scope of discovery in a sexual assault case). With respect to the credibility terms that Uber has since withdrawn, Uber cannot walk away from its own written rational. Ex. XX (C. Love Email). It tells this Court exactly what kind of discovery Uber is seeking, regardless of what Uber is now claiming in this brief.

Even if any of the disputed terms were somehow relevant — and clearly they are not — Uber has already obtained more than sufficient discovery to make whatever victim blaming argument it intends to make at trial. Rule 26(b)(2)(C) requires the Court to limit discovery when the information sought can be obtained from some other source or has already obtained the discovery. This Court should not permit Uber to use the discovery process to do what the rape shield rules were specifically designed to prevent.

**Uber's Position:**

To be clear, the only dispute before the Court is Uber's request that Plaintiff use five search terms that **Plaintiff herself has used to describe the alleged incident** in her own communications and deposition testimony to search her own documents for relevant material. On August 25, 2026, the Court already found that Plaintiff's decision to unilaterally select her own search terms was "concerning" after Uber highlighted, among other things, that Plaintiff failed to include the term "sex." ECF 7103. For some of those terms in dispute, Uber offered further options to qualify the search to narrow the information sought, again, in a way that would target the incident at hand and not unrelated information. Plaintiff refused and instead has submitted an inflammatory position statement that attempts to recast a narrow dispute about discovery search terms—which are being negotiated as a result of Plaintiff's unilateral selection of overly narrow search terms —as an attack on sexual-assault survivors. Plaintiff's statement is clearly written for the benefit of media outlets that follow the Court's docket, and intended to shame Uber into forgoing meritorious discovery, rather than to seek legitimate relief from the Court.

Plaintiff's rhetoric obscures the actual question before the Court: whether Plaintiff should be required to run targeted searches, using Plaintiff's own words, on Plaintiff's own devices so that she can identify whether any subset of those communications is relevant to her claims. Uber understands that the nature of this litigation, and therefore the terms used to search for relevant communications, are sensitive and may be uncomfortable. But that is why Plaintiff, **not Uber**, will run the searches and review the results for relevance. **To be perfectly clear, Uber is not asking Plaintiff to provide discovery to Uber about her irrelevant consensual sexual experiences.** As a result, Plaintiff's position statement is highly misleading and her request for a protective order should be denied.

***First***, Uber tailored its list of terms to words used by Plaintiff in her deposition and other communications describing the alleged incident—it is *not* targeting Plaintiff's personal communications about her sexual conduct unrelated to the alleged incident. The words at issue are words which the Plaintiff has put at issue, directly, in describing the incident that is the subject of

this litigation. Plaintiff alleges forced oral penetration, making terms that identify the specific act (e.g., sex, head [which is a term [redacted]), the anatomy involved (e.g., penis, dick), and the details of the encounter (e.g., pants) all relevant. In produced messages and deposition testimony, Plaintiff used the same terms Uber is proposing to describe the incident at issue. Nonetheless, Uber has further revised its search terms to ensure that every term relates directly to Plaintiff's allegations in the case, including by using proximity connectors and/or qualifiers where appropriate to tie broad terms to assault- or incident-related language.

***Second***, Rule 412 governs the admissibility of evidence "in a civil or criminal proceeding involving alleged sexual misconduct" and protects against "unwarranted" *production* of irrelevant evidence. Fed. R. Evid. 412(a); Advisory Committee Notes to 412(c). The Rule in no way limits the *search terms* a plaintiff should run to identify and review potentially relevant evidence on her own devices, particularly when the terms are drawn from her own allegations and testimony. Nor does it transform a controlled, claim-specific review by Plaintiff's own counsel into unilateral production of unrelated sexual-history material.

***Finally***, Plaintiff refuses to investigate if the disputed terms would require her to review any documents that have not already been considered. Plaintiff has conceded that she could identify whether that is the case by exporting the data from its current software, but she has not done so, and as such cannot substantiate any burden or privacy concern.

**Background.** Plaintiff unilaterally chose and applied search terms that excluded countless documents from her review, and thus, her ultimate productions. Those terms did not even include the words assault* or sex* even though Plaintiff's case centers on claims of *sexual assault*.[5] When the Court discovered this, it called Plaintiff's conduct "concern[ing]" and told the parties to confer on supplemental terms. ECF 7103. That history matters: Uber's proposal responds to a gap the Court identified and is not a new subject of inquiry. Uber has worked diligently to follow that directive, putting together an initial proposal and limiting several terms since. Ex. E (Emails re Search Terms). Uber has told Plaintiff multiple times that hit reports, which are standard practice, are necessary to assess if additional limitations are necessary. *Id.*

**The Requested Terms Are Targeted To Identify Communications Related to the Alleged Incident and Come from Plaintiff's Own Account of the Alleged Assault.** Despite Plaintiff's arguments to the contrary, all five [6] of the contested search terms are targeted to identify documents directly related to her claims about the alleged incident, *not* her sexual experiences. Uber has repeatedly explained this to Plaintiff's counsel and has been steadfast in that position throughout the briefing process. Ex. E (8/27/26 [redacted] Email). These terms also come directly from Plaintiff's own accounts of the alleged assault. For example, the term "head w/10 give OR gave OR giving OR push* OR forc*" derives [redacted] and described how the driver put his hand behind her head and pulled her head toward his penis. The terms "dick" and "penis" come from Plaintiff's own produced text messages and deposition testimony and are the terms she used to describe the incident when referring to male genitalia. The term "pants" was used in Plaintiff's

---

[5] Uber has asked multiple times if Plaintiff previously ran terms that she subsequently decided not to use in her unilateral application. Plaintiff has refused to answer.

[6] Uber previously proposed the terms "cheat" "regret," and "oral," but in the interest of compromise and narrowing disputes, each of those terms have been withdrawn. Plaintiff's assertion that this compromise is an admission that Uber's search terms are generally inappropriate is yet another example of Plaintiff baselessly attempting to vilify Uber and its lawyers for ordinary litigation conduct and discovery negotiations ordered by the Court.

description of the incident—i.e., that the driver "touch[ed] her genitals over her pants" and "unzipped his pants." In addition, "sex" and "consent" are foundational terms in any sexual assault case where the allegation is that a sexual act occurred without consent. Indeed, the Court expressly noted concern that Plaintiff's original searches omitted the term "sex."

**The Use Of Search Terms Is the Antithesis of Victim Shaming.** Plaintiff is attempting to capitalize on inaccurate narratives circulated recently in the media to avoid her discovery obligations. The Court should not endorse that effort. The issue here is *search* terms, not the production of sensitive documents. And there are safeguards built into Uber's request to protect Plaintiff's privacy: the searches are run by Plaintiff's counsel on Plaintiff's own devices; Plaintiff and her counsel, not Uber, review the results for relevance; and content that is deemed irrelevant will not be produced. This is precisely the targeted discovery courts should encourage: it permits the defense to evaluate the case on its merits while respecting Rule 412's bar on irrelevant sexual-character inquiries. It is the antithesis—not an instance—of victim shaming.

**Rule 412 Does Not Bar The Use Of The Contested Terms.** Plaintiff claims that Rules "412 and 26(c) guard against… the very process of even collecting… intimate communications" and "allow[ing] anyone to comb through [them]," including her own attorneys. By that logic, no person alleging sexual assault would ever be required to collect or review communications to determine if they are relevant to the allegations that form the basis of her claims. Plaintiff cites no legal support for that proposition.

This is likely because Rule 412 governs the *admissibility* of evidence regarding "other sexual behavior" and "sexual predisposition" at trial. And while Plaintiff states that the Advisory Committee Notes to the rule indicate that "courts should enter appropriate orders pursuant to Fed.R.Civ.P. 26 (c) to protect the victim against unwarranted inquiries and to ensure confidentiality," having ***Plaintiff*** run search terms to look for relevant documents is not an "unwarranted" inquiry, nor does it raise confidentiality concerns. Notably, all of the cases Plaintiff cites relate to depositions seeking the ***production*** of detailed information about a plaintiff's sexual character with no corresponding benefit—not the use of search terms to facilitate a plaintiff's review of her own communications for relevance.[7] Nor would the production of documents relevant to the alleged incident violate Rule 412. Rule 412 does not prevent discovery that is directly relevant to the allegations at issue. And Uber has demonstrated that the disputed terms may identify communications that reveal Plaintiff's contemporaneous thoughts and statements about the alleged incident because Plaintiff herself has used those terms to describe the incident repeatedly, including in her Bellwether Complaint. ECF 2496-12. Only these ***relevant*** documents would be produced.

---

[7] *See Rivera v. United States*, 2025 WL 4041930, at *6 (C.D. Cal. Dec. 15, 2025) (limiting deposition on unrelated sexual issues due to plaintiff's "broad waiver" of "all damages related to <u>both</u> feeling comfortable being sexually intimate <u>and</u> sexual performance" and waiver of certain other arguments); *Doe v. City of San Diego*, 2013 WL 3989193, at *5 (S.D. Cal. Aug. 1, 2013) (disallowing depositions because the information could be sought through written interrogatories); *Priest v. Rotary*, 98 F.R.D. 755, 762 (N.D. Cal. 1983) (defendant "sought to discover detailed information about plaintiff's sexual history, including the name of each person with whom [Plaintiff] had sexual relations in the past ten years"); *Barta v. City & Cnty. Of Honolulu*, 169 F.R.D. 132, 235 (D. Haw. 1996) (involving discovery of third-party "rumors and innuendo… of which [the witness] had no personal knowledge"); *Leamon*, 2011 WL 13340578, at *2 (finding deposition about plaintiff's extramarital affairs irrelevant).

**FILER'S ATTESTATION**

I, Layne Hilton, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Layne C. Hilton*
Layne C. Hilton