United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates To:

ALL CASES.

Case No. 23-md-03084-CRB (LJC)

**ORDER RESOLVING THE PARTIES' JOINT LETTER BRIEF REGARDING SAFETY DATA**

Re: Dkt. No. 7093

The parties have filed a joint letter raising disputes related to Uber's compliance with a previous June 11, 2026 Order calling for production of documents and information regarding updated safety incident data. Dkt. No. 7093 (addressing compliance with Dkt. No. 6452). In that previous Order, this Court granted all of Plaintiffs' requests calling for domestic data from 2017 through 2025.[1]

Plaintiffs requested the following three categories of information related to Uber's data for 2025:

> 1. For each month of the year 2025, provide the number of sexual assault and sexual misconduct incidents in the United States that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as "Insufficient Information," "Parent Category Usage Tracking," or any other categorization.
>
> 2. For each month of the year 2025, provide the number of sexual assault and sexual misconduct incidents in the United States that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as "Insufficient Information," "Parent Category Usage Tracking," or any other categorization despite determining the incident to be "invalid."

[1] The Court denied Plaintiff's requests for international data. Dkt. No. 6452 at 4–6. Those requests are not at issue in the present dispute and thus not summarized below.

> 3. For each sexual assault and sexual misconduct incident in the United States associated with a trip that took place between January 1, 2025 and December 31, 2025 that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as "Insufficient Information," "Parent Category Usage Tracking," or any other categorization, produce the raw data from Flack, Bliss, and Jira that Uber collected for each sexual assault or sexual misconduct incident in the format and scope which the Court has previously ordered Uber to produce. If Uber used a different system or tool to collect and/or store that data, identify that system or tool so that the parties can meet and confer regarding scope and format of production.

Dkt. No. 6452 at 1–2 (quoting Dkt. No. 6251 at 4, ¶¶ 1–3). The Court ordered Uber "to produce the documents and information requested in items 1 through 3 of Plaintiff's list . . . by June 18, 2026, unless the parties stipulate to a different production date." *Id.* at 3–4.

Plaintiffs also presented the following requests with respect to updated categorization of incidents from 2017 through 2024:

> 4. If Uber has re-categorized any sexual assault or sexual misconduct incidents in its Incident Report Classifications of Dominant Tickets for 2017-2024, as served to Plaintiffs on October 13, 2025, supplement that discovery accordingly.
>
> 5. If Uber has determined that any of the sexual assault or sexual misconduct incidents in its Incident Report Classifications of Dominant Tickets for 2017-2024, as served to Plaintiffs on October 13, 2025, are "invalid," provide the number of incidents in each month that Uber determined to be "invalid."

*Id.* at 4 (quoting Dkt. No. 6251 at 4). The Court directed Uber "to provide the updates that Plaintiffs seek here no later than June 30, 2026, and by the same date each following year so long as this MDL remains active." *Id.*

Uber previously requested reconsideration or relief from both this Court and Judge Breyer. All such requests were ultimately denied, except as to specific deadlines not at issue in the present dispute.

### A. Data Regarding Incidents from 2017 Through 2024

Plaintiffs acknowledge that in response to the previous Order, "Uber produced updated interrogatory responses for 2017–2024" reflecting incident reports from those years that have been recategorized. *See* Dkt. No. 7093 at 2–3. Plaintiffs object, however, to Uber's failure to produce underlying data from its Bliss, Jira, and Flack systems reflecting those changes. *Id.* Uber argues



United States District Court
Northern District of California

that it was not required to do so, because the requests at issue pertaining to 2017 through 2024 did not call for that data. *Id.* at 4–5.

Under the Federal Rules of Civil Procedure, requests for production "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Plaintiffs' previous requests for those years, and the Court's Order granting them, are at best ambiguous as to whether they called for production of underlying data. In their requests pertaining to incidents from *2025*, Plaintiffs specifically sought to compel Uber to "produce the raw data from Flack, Bliss, and Jira." Dkt. No. 6452 at 2. Plaintiffs' requests for 2017 through 2024 did not specifically mention "raw data" or underlying data. *Id.* at 4. Instead, Plaintiffs referenced Uber's "Incident Report Classifications of Dominant Tickets for 2017-2024," and sought to compel Uber to "supplement that discovery," *id.*, which Uber reasonably understood to mean the ticket classifications, not the underlying data.

There are also other indicia that both the Court and Uber understood these requests as seeking only updated classification numbers, not underlying data. The Court's Order granting Plaintiffs' requests included a footnote about privilege disputes that might arise from raw data in the 2025 production, *id.* at 4 n.2, but did not address similar concerns for supplementation of records from 2017 through 2024. Further, to the extent Plaintiffs might now seek production of *all* new Bliss, Jira, and Flack data for incidents from 2017 through 2024—the exact nature of Plaintiffs' request remains unclear—the burden of such production would likely be inconsistent with both Uber's and the Court's previous discussion of Uber's anticipated work to comply with the Court's Order. When Uber sought reconsideration, it asserted that the supplementation the Court required for future years would require "several hours involving different Uber personnel to create, peer review, and validate over the course of several days." Dkt. No. 6652 at 4 (quoting Dkt. No. 6540-2, ¶ 13). The Court denied reconsideration in part because "several hours" for an annual update is not an undue burden. *Id.* That characterization of the work required for an update appears consistent with updating categorization charts. Though it is not entirely clear that the production of the underlying data would necessarily be voluminous, this representation—which Plaintiffs never disputed—tends to support an understanding of the Court's previous Order

as calling only for updated classification numbers.

The Court recognizes that the Federal Rules of Civil Procedure require supplementation and it is important for Plaintiffs to have access to the same data that Uber is relying upon to make its representations, and defend against Plaintiffs' claims, but it is still necessary for Plaintiffs to be reasonably clear about the information and data that they are seeking so that Uber and the Court understand what particular information Plaintiffs contend is relevant and important to the case and can address the degree to which such supplementation is proportionate to the needs of the case. With respect to Plaintiffs' two requests concerning updated categorizations and invalidity determinations for incidents from 2017 through 2024, neither request specifically asked for raw or underlying data.

The Court therefore DENIES Plaintiffs' request that the Court find that Uber violated a prior court order for underlying data, as Plaintiffs had not clearly presented such a request in its discovery letter, and the Court did not order such relief. Relatedly, the Court DENIES Plaintiffs' request for a recommendation to Judge Breyer that he limit Uber from relying on such data that it has not produced and from attacking Plaintiff's expert for using Uber's previously-produced but now outdated data at the upcoming *QLF001* and *A.R.* trials. The undersigned takes no position either for or against such a limitation.

To the extent that Plaintiffs request an order that Uber produce raw data from its Bliss, Jira, and Flack databases as of the date of its most recent safety data interrogatory responses, it appears that they seek such a production for earliest use in the *A.R.* bellwether case, which will be tried after the *QLF001* trial.[2] To the extent that Uber seeks to paint a picture of a pervasive number of invalid, fraudulent reports of sexual assault and sexual misconduct, including for those incidents reported from 2017 through 2024, Plaintiffs have a strong interest in the underlying data. However, it is unclear what supplemented data Plaintiffs are requesting. For example, would the supplemented data require a reproduction of raw data from 2017 through 2024 that was previously produced, along with new raw data, or only new raw data that was not previously produced?

---

[2] Plaintiffs assert that they would not be able to review any such new data in time for the *QLF001* trial. Dkt. No. 7093 at 3.

United States District Court
Northern District of California

Would it be limited to incidents that Uber newly found to be invalid or otherwise reclassified, or would it include any new information that might have been added to Uber's databases for all of the hundreds of thousands of sexual assault and misconduct incidents Uber logged over those years? The burden and expense of such production would need to be weighed the likely benefit. Fed. R. Civ. P. 26(b)(1). Such balancing is not possible without a better understanding of what Plaintiffs are seeking and why they believe it is relevant.

Under the circumstances, the Court therefore declines to order at this time the production of data underlying Uber's supplemental charts for incidents from 2017 through 2024, but directs the parties to meet and confer regarding exactly what underlying data Plaintiffs seek and for what reasons, and to file a further joint letter no later than September 9, 2026 if Plaintiffs seek this data for use in the *A.R.* bellwether trial. Alternatively, the parties may defer their discussions until after the next two bellwether trials and raise any dispute over underlying data to be provided with Uber's next update next summer, no later than three months before Uber is due to provide that update.

**B. 2025 Data**

For 2025, Uber produced—among other data—a chart containing "a monthly count by taxonomical category of [sexual assault and misconduct] incident reports from 2025 that were determined to be invalid." Dkt. No. 7093 at 6. Plaintiffs object to this production as "nonresponsive," and ask this Court to recommend to Judge Breyer that it be excluded at trial. *Id.* at 3–4.

As a starting point, parties are not limited to producing in discovery only the documents and information that an opponent has asked for. Regardless, however, the chart is likely responsive to Plaintiffs' first request for "the number of sexual assault and sexual misconduct incidents in the United States that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as 'Insufficient Information,' 'Parent Category Usage Tracking,' *or any other categorization*," *see* Dkt. No. 6452 at 1 (quoting Dkt. No. 6251 at 4, ¶ 1) (emphasis added), as well as the second request for the same information regarding reports categorized "despite [Uber] determining the incident to be 'invalid,'" *id.* (quoting Dkt. No. 6251 at

4, ¶ 2). An argument could be made that "invalid" reports might not reflect actual "sexual assault and sexual misconduct incidents" within the scope of the requests, but the Court does not fault Uber for providing this information in response to those requests.

Plaintiffs object that the information differs from Uber's production for incidents from 2017 through 2024 and reflects a much higher rate of "invalid" reports. Dkt. No. 7093 at 4. As Uber notes, Plaintiffs' requests differ: Plaintiffs sought information about changed categorizations and new determinations of invalidity for 2017 through 2024, because Uber had already provided information about those years in previous responses, *see* Dkt. No. 6452 at 4, but Plaintiffs sought information about *all* incidents for 2025, because Uber had not yet provided that data at all, *see id.* at 1–2. It is not surprising that the percentage of incident reports newly reassessed as invalid two to nine years after the fact for the earlier data is smaller than the percentage of incident reports that Uber determined to be invalid from the outset in the 2025 data.

It is not clear whether Uber should have provided similar data for 2017 through 2024 in response to Plaintiffs' original interrogatories, which are not before the Court on this joint letter. Based on the record the parties have presented, however, Uber appears to have complied reasonably with the Court's June 11, 2026 Order and Plaintiffs' requests to which Uber was directed to respond. The Court therefore declines to order any relief in response to Uber's production of a chart of purportedly invalid incident reports in 2025, without prejudice to any argument that Plaintiffs might make to Judge Breyer regarding the admissibility of that information at trial.

It is also not entirely clear from the parties' arguments, however, whether Uber complied with the order to "produce the raw data from Flack, Bliss, and Jira that Uber collected for each sexual assault or sexual misconduct incident" reflected in that chart. *See* Dkt. No. 6452 at 2 (quoting Dkt. No. 6251 at 4, ¶ 3). Plaintiffs appear to argue primarily that Uber has not provided other context that Plaintiffs believe is relevant, but that was not part of the previous Order: "Uber refuses to explain why it produced this nonresponsive document, whether or how Uber intends to use it in this litigation, or what data underlies it. Nor will Uber produce the data necessary to understand this information in context of prior years, 2017-2024." Dkt. No. 7093 at 4. But in

stating the relief that they seek (rather than their description of Uber's purported noncompliance), Plaintiffs assert that "Uber's refusal to produce the data underlying the nonresponsive document" warrants a recommendation that it be excluded. *Id.* Uber does not specifically address whether it produced the Bliss, Jira, and Flack data underlying the incident reports from 2025 that it categorized as invalid. *Id.* at 6.

Accordingly, Plaintiffs' request for relief regarding 2025 data is DENIED at this time, but if the parties dispute whether Uber complied with an obligation to produce underlying raw data for the purportedly invalid incidents in 2025, they are directed to file a further joint letter addressing that issue more directly no later than September 9, 2026.

**IT IS SO ORDERED.**

Dated: September 2, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California