# EXHIBIT 6

# KIRKLAND & ELLIS LLP

Dale M. Cendali, P.C.
To Call Writer Directly:
+1 212 446 4846
dale.cendali@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

May 5, 2026

**Via Electronic Mail**

Mr. Simon A. Gaugush
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
sgaugush@carltonfields.com

Mr. D. Matthew Allen
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
mallen@carltonfields.com

Re: Deceptive Advertising Campaign by Isla Marketing, LLC and LegalCove Using Fabricated Personas and AI-Generated Testimonials – Demand to Cease and Desist and Preserve Documents

Dear Mr. Gaugush and Mr. Allen:

We are counsel for Uber Technologies, Inc. ("Uber"). We write regarding the deeply troubling and ongoing conduct of your client Isla Marketing, LLC ("Isla Marketing") and its affiliated platform LegalCove (collectively, "Isla"), which together have orchestrated a coordinated campaign of false and misleading testimonial advertising designed to solicit rideshare-assault claims against Uber. As you know, on April 2, 2026, Isla Marketing was served with a subpoena in In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation, Case No. 3:23-md-03084-CRB (N.D. Cal.) (the "MDL"), in connection with this campaign. This letter sets forth Uber's additional and independent demands arising from Isla's deceptive advertising and the substantial liability to which it gives rise.

Uber's investigation has determined that Isla is not merely promoting legal services—it is using artificial intelligence to falsely create fake people and present them as real riders seemingly recounting their personal experiences in order to drive consumers into Isla's lead-generation pipeline. This is not aggressive marketing or creative framing. It is the deliberate construction

of false human testimony for commercial gain, achieved by combining a misappropriated photograph of a real, uninvolved person with an AI-generated video persona that purports to recount a sexual assault that never occurred.

The seriousness of this conduct cannot be overstated. Isla is inserting fabricated voices into a context that depends on authenticity and trust, distorting consumer decision-making, and exploiting highly sensitive subject matter. At the same time, Isla's conduct falsely associates Uber with invented factual scenarios involving serious alleged criminal conduct, forcing Uber to expend substantial resources investigating the campaign, defending its reputation, and addressing downstream consequences in the legal claims process. This is a coordinated and deceptive scheme that implicates multiple legal and regulatory frameworks and exposes Isla and any participating actors to substantial liability. Uber demands that Isla immediately remove all false and misleading content and cease creating or distributing any advertisements or materials that include fabricated personas, AI-generated testimonials, misappropriated images, or other deceptive content relating to Uber.

1. Isla Marketing Is Engaging in a Deliberate Campaign of Fabricated Testimonial Advertising

Uber's investigation has revealed that Isla Marketing, through its LegalCove platform and associated advertising accounts, is engaged in a coordinated campaign to solicit rideshare-related legal claims through the use of fabricated testimonial advertising. The campaign does not depict the experiences of actual consumers. Instead, it constructs fictitious identities and narratives and presents them to the public as authentic, first-person accounts.

As part of this campaign, Isla Marketing operates a Facebook page that originally appeared under the handle "Freestarmoney," which was created in March 2022 and configured as an "internet company" advertising account, as confirmed by the page's own transparency disclosures. In February 2024, the page was rebranded under the name "Melanie Doran" and its profile picture was changed to depict a woman and man embracing. Reverse-image and facial-recognition analysis confirms that there is no real individual named "Melanie Doran" associated with the page. The replacement profile picture was misappropriated from a public Instagram post by Sameera Reddy, an Indian former actress, model, and public figure who lives in Goa, India, and who has no connection whatsoever to Isla Marketing, LegalCove, Uber, or any rideshare-related claim. The use of that real-world image is not incidental. It is intended to confer credibility and realism on an otherwise fabricated identity, and reflects a deliberate effort to mask Isla's commercial advertising as the organic posts of an ordinary person.

KIRKLAND & ELLIS LLP

Mr. Gaugush and Mr. Allen
May 5, 2026
Page 3

**CONFIDENTAL**







The advertisements disseminated through this persona include video content in which a purported individual claims, in substance, to have been "one of the women assaulted in a rideshare" and falsely encourages viewers to pursue legal claims by clicking through to LegalCove. Uber's investigation determined that the individual depicted in the video is not a real person, but rather an AI-generated construct. Forensic analysis identified multiple indicia of synthetic generation, including: (i) looped, repetitive movement patterns, in which the speaker repeatedly takes a sip of an iced beverage, points above to the left, and sets the drink down; (ii) glitched and unnatural finger movement when the speaker points upward; (iii) inconsistent and physiologically improbable placement of rings on the speaker's right hand; and (iv) a clear continuity error in which the iced beverage cup instantly transforms into a cellular telephone the moment the on-screen caption "I left you" appears. Independent facial-recognition analysis and reverse-image searches further confirmed that the depicted individual does not correspond to any identifiable real person, and that no actual person under the name "Melanie Doran" is associated with the account.









The construction of these advertisements reflects a deliberate effort to simulate authenticity. By pairing a misappropriated real-world image with a fake synthetic video persona and a first-person narrative, Isla Marketing creates the false and misleading impression that a real, identifiable individual is recounting a genuine personal experience. The format, tone, and presentation of the content are designed to mimic organic, user-generated social media posts—content that consumers reasonably understand to reflect unscripted, real-world experiences rather than paid advertising. This is not a case of exaggeration, dramatization, or opinion. The advertisements fabricate the existence of the speaker, the occurrence of the described events, and the authenticity of the testimonial itself. They present a constructed reality as fact for the purpose of inducing consumer engagement and generating legal leads.

The campaign is further structured to convert that deception into action. The Melanie Doran/Freestarmoney advertisements direct viewers to LegalCove, where consumers are encouraged to submit personal information and pursue legal claims against Uber and other defendants. Several of the videos themselves include screen recordings or simulations of a user navigating the LegalCove website, reinforcing the false impression that a real person is sharing her own experience and recommending a path to recovery. The fabricated testimonial thus operates as the gateway to a broader lead-generation system built on the false premise that the viewer is responding to a real person's experience.

2. Isla Marketing's Conduct Causes Substantial Harm to Consumers, Uber, and the Integrity of the Legal System

Isla Marketing's fabricated testimonial campaign causes significant and interrelated harms. By manufacturing fictitious individuals and presenting them as real victims, Isla Marketing distorts the information environment in which consumers, companies, and legal actors operate, substituting fabricated narratives for authentic experience.

First, the conduct harms consumers by undermining the reliability of testimonial information. Consumers reasonably rely on first-person accounts as a signal of authenticity and credibility, particularly in sensitive contexts. By injecting fabricated testimonials into that ecosystem, Isla Marketing creates false "social proof" and degrades trust in all such narratives, making it more difficult to distinguish real experiences from manufactured ones. That erosion of trust is itself a material harm, particularly where consumers are evaluating serious allegations and potential legal claims.

Second, the conduct harms Uber. The advertisements falsely associate Uber with fabricated narratives of serious alleged criminal conduct, creating negative impressions based on

events that did not occur. Uber is forced to respond to a narrative it did not create, while expending substantial resources investigating the campaign and addressing its consequences.

Third, the conduct undermines the integrity of the legal claims process. By introducing fabricated testimonials into legal advertising, Isla Marketing distorts the intake environment and risks compromising the reliability of claimant submissions. This, in turn, burdens courts and litigants and dilutes the credibility of legitimate claims.

In sum, Isla Marketing's conduct is not merely false and misleading in the abstract. It causes concrete harm to consumers, Uber, and the legal system by replacing authentic experience with fake narratives for commercial gain.

3. Isla Marketing's Conduct Is Unlawful Under Multiple Legal and Regulatory Frameworks

Isla's fabricated testimonial campaign violates multiple, independent legal and regulatory standards governing truthfulness in advertising, consumer protection, and the use of synthetic media. As described above, the advertisements present a fabricated individual and fictitious experiences as authentic first-person testimonials about a serious crime supposedly committed in connection with an Uber ride. That core misrepresentation is literally false and gives rise to liability under each of the independent frameworks set forth below.

(a) The Campaign Constitutes False and Misleading Advertising Under the Lanham Act

Section 43(a) of the Lanham Act prohibits false or misleading representations of fact in commercial advertising that are likely to influence consumer decisions. See 15 U.S.C. § 1125(a).

First, the advertisements are literally false. They attribute a personal, first-person account of a rideshare sexual assault to a purported individual—"Melanie Doran"—who does not exist, using a misappropriated photograph of an unrelated real woman and an AI-generated video persona to recount events that never occurred. Where an advertising claim is literally false, deception and materiality are presumed and no extrinsic consumer-survey evidence is required to prove falsity. See, e.g., *FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1295 (N.D. Ga. 2022).

At a minimum, the advertisements are misleading because they convey, both explicitly and through their deliberate UGC-style presentation, that a real consumer is recounting a genuine personal experience. That representation is plainly material: the persuasive force of a first-

KIRKLAND & ELLIS LLP



person testimonial—particularly one describing serious personal harm—lies entirely in its perceived authenticity, and is what induces consumer engagement and claim submission.

Uber has suffered injury in the form of reputational harm, consumer confusion, diversion of investigative and litigation resources, and exposure to claims influenced by deceptive advertising. Unlike attorney advertising that merely solicits clients, the advertisements here go further: they fabricate a victim and falsely tie a serious alleged crime to an Uber rideshare, directly disparaging Uber's brand and goodwill. Courts have recognized that even non-competitors may have Lanham Act standing where, as here, advertising disparages the plaintiff's business or services. *See Diamond Resorts Int'l Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1100–01 (M.D. Fla. 2019) (recognizing reputational injury from attorney advertising directed at the plaintiff's customer base).

Because Isla's conduct has been deliberate and systematic, Uber would be entitled to the full panoply of Lanham Act remedies, including injunctive relief, actual damages, disgorgement of Isla's profits attributable to the misconduct, enhanced damages for willful violations, and recovery of its attorneys' fees and costs. See 15 U.S.C. §§ 1116, 1117.

(b) The Campaign Violates Section 5 of the FTC Act, the FTC's Endorsement Guides, and NAD Standards

Section 5 of the Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). A representation is deceptive if it is likely to mislead reasonable consumers and is material to their decisions. *See FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). Neither proof of actual deception nor an intent to deceive is required. *See FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 384 (S.D.N.Y. 2023). Furthermore, the FTC may find a deceptive practice even when only a "significant minority" of reasonable consumers is likely to be misled. *See In the Matter of Kraft, Inc.*, 114 F.T.C. 40, 124 (1991). The FTC has, moreover, repeatedly brought deception actions against attorneys and other professionals, and the attorney-advertising context presents no bar to enforcement. *See, e.g., In the Matter of DoNotPay, Inc.*, Docket No. C-4812 (FTC Jan. 17, 2025).

Isla's advertisements satisfy these standards many times over. They convey the explicit and unambiguous message that a real person experienced a sexual assault during an Uber rideshare and is sharing that experience with viewers. That message is false—there is no "Melanie Doran," and the speaker depicted in the video is an AI-generated construct—and it is unquestionably material. Testimonials, particularly those involving personal harm, carry inherent persuasive weight, and consumers reasonably rely on such narratives in deciding whether to engage with a service or pursue a claim. By fabricating the speaker, the experience, and the identity of the endorser, Isla distorts consumer decision-making in a manner squarely

within the FTC's deception framework, and exposes itself to enforcement under Section 5 of the FTC Act, including investigation, administrative orders, court injunctions, and monetary remedies. *See* 15 U.S.C. §§ 45(b), 53(b), 57b.

The conduct independently violates the FTC's Guides Concerning the Use of Endorsements and Testimonials in Advertising, 16 C.F.R. Part 255, which require that endorsements reflect the honest opinions, findings, beliefs, or experiences of an actual endorser, and prohibit the use of fabricated or non-existent endorsers. *See* 16 C.F.R. §§ 255.1–255.2. A non-existent individual cannot provide a genuine endorsement, and an AI-generated persona cannot reflect any real consumer experience. The use of fabricated testimonials attributed to fictitious individuals—and presented in deliberate UGC style to mimic organic social media content—is precisely the type of practice these Guides prohibit.

In addition, the National Advertising Division ("NAD") of BBB National Programs applies a substantially similar standard in evaluating the truthfulness and substantiation of advertising claims and routinely requires advertisers to discontinue testimonials that are not based on real consumer experiences or that otherwise mislead consumers. Because Isla's campaign is national in scope and rests on fabricated, AI-generated testimonials attributed to a non-existent person, it falls directly within the category of advertising that NAD would require to be discontinued, and Isla's failure to participate in or comply with any NAD challenge could itself be referred to the FTC or to a state attorney general for further investigation.

(c) State Consumer-Protection Statutes Provide Additional, Independent Bases for Liability

Isla's conduct also gives rise to claims under the consumer-protection statutes of multiple states. In Florida, where Isla Marketing is organized and headquartered, the Florida Deceptive and Unfair Trade Practices Act prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). In California, where Uber is headquartered and where many viewers of the advertisements reside, Isla's conduct violates the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, both of which broadly prohibit untrue or misleading advertising. Because Isla's advertisements were disseminated nationally through major social media platforms, the consumer-protection statutes of numerous additional jurisdictions are likely implicated, each of which provides for injunctive relief, restitution, and, in many cases, statutory damages and attorneys' fees.

(d) The Campaign Violates Platform Policies Prohibiting Deceptive and Synthetic Media Misrepresentation

The advertisements also appear to violate the policies of the platforms on which they are disseminated. For example, Meta prohibits advertising that is false or misleading or that misrepresents identity. *See* https://transparency.meta.com/policies/ad-standards/fraud-scams/unacceptable-business-practices; https://transparency.meta.com/policies/community-standards/authentic-identity-representation/. Isla Marketing's use of a fabricated persona, a misappropriated profile image, and an AI-generated testimonial presented as authentic content contravenes these policies. Such violations expose Isla Marketing to removal of its advertisements, suspension or termination of its accounts, forfeiture of advertising privileges, and other platform-level enforcement actions.

Taken together, these frameworks underscore the same conclusion: Isla Marketing's campaign is not merely aggressive marketing—it is unlawful deceptive advertising that exposes Isla Marketing and any participating entities to substantial liability.

4. Uber's Demands

In light of the foregoing, Uber demands that Isla Marketing, LegalCove, Sean Mulrooney, Jesus Camacho, and all persons acting in concert with them take the following actions immediately.

1. **Immediate Cessation and Removal of All False and Misleading Advertising**

Permanently remove all such content from all platforms, accounts, websites, domains, and media under your ownership or control, including any archived, inactive, or unpublished materials that remain accessible.

Effective immediately, cease and desist from creating, publishing, disseminating, or promoting any advertisement or content that includes fabricated personas, AI-generated testimonial content, misappropriated images, or any other false or misleading representation relating to Uber or rideshare-assault claims.

2. **Full Identification of All Uber-Related Advertising Campaigns**

Provide a complete and comprehensive inventory of all advertisements, campaigns, and related materials that reference Uber, including any materials that directly or indirectly reference or make statements regarding Uber's rideshare services or performance, or otherwise relate to any rideshare-assault claims concerning Uber, including without limitation all content

disseminated through the Melanie Doran/Freestarmoney Facebook page, the LegalCove website, and any other property operated or controlled by Isla Marketing or LegalCove. This inventory must include, at a minimum:

(i) the dates of creation, publication, modification, and removal of each advertisement;

(ii) all platforms, accounts, pages, and handles through which the advertisements were disseminated;

(iii) all campaign identifiers, ad library records, and internal tracking references;

(iv) complete copies of all advertisements;

(v) all performance data, including impressions, reach, click-through rates, engagement metrics, conversions, and leads generated;

(vi) all targeting parameters, audience definitions, and geographic or demographic criteria used; and

(vii) the identity of all individuals and entities involved in the creation, approval, dissemination, or monetization of the advertisements, including any vendors, contractors, agencies, or law firms, and any use of artificial intelligence tools or services in the creation of content.

3. **Preservation of All Documents, Data, and AI-Generated Materials**

This letter constitutes formal notice of your obligation to preserve all documents, data, and information relevant to the matters described herein. You must immediately implement a litigation hold and preserve, without limitation:

(i) all advertisements and related materials, including drafts, iterations, and source files;

(ii) all communications, whether internal or external, relating to the conception, creation, approval, dissemination, or performance of the advertisements;

(iii) all analytics, performance data, and reporting associated with the campaigns; all contracts, agreements, invoices, and financial records relating to advertising, lead generation, or referral arrangements;

KIRKLAND & ELLIS LLP



**CONFIDENTAL**

(iv) And all inputs, outputs, prompts, logs, models, and related data associated with any artificial intelligence tools used to generate or modify advertising content.

You must immediately suspend any document-retention policies, auto-deletion settings, or automated processes that could result in the deletion, alteration, or loss of relevant information. Uber will pursue all available remedies for any failure to preserve evidence, including claims for spoliation.

Please confirm compliance with the foregoing demands by Tuesday, May 12, 2026. We look forward to hearing from you.

* * *

Nothing contained in this letter is intended as or should be construed to be a waiver or relinquishment of any right, remedy, or defense held by Uber, all of which are hereby expressly reserved.

Sincerely,

Dale M. Cendali, P.C.

Enclosures

cc: Svjetlana Tesic, Uber Counsel
Chris Cotton, Shook Hardy & Bacon