# EXHIBIT 9

| | |
|---|---|
| Control Number : | UBER_JCCP_MDL_004014873 |
| File Description : | RFC822 Email Message |
| JCCP Production - Custodian Other : | Maredia, Sarfraz |
| Author (Combined) : | |
| GOOGLE_#Author : | |
| GOOGLE_Collaborators : | |
| Date Created (App) : | 10/8/2014 2:39:00 AM |
| Date Last Modified (App) : | 10/8/2014 2:39:00 AM |
| Parent Doc Date : | 10/8/2014 2:39:00 AM |
| Production - Beginning Bates : | |

Message

**From**: Uber (Sarfraz) [sarfraz@uber.com]
**Sent**: 10/8/2014 2:39:18 AM
**To**: Chris Nakutis [nak@uber.com]
**Subject**: Re: HTX -- Housekeeping cleanup to Chapter 46 on Wednesday's council agenda

REDACTED - PRIVILEGED

Sarfraz

On Oct 7, 2014, at 4:28 PM, Chris Nakutis <nak@uber.com> wrote:

So about $500 per case, and we have how many outstanding? What are the best and worst case scenario for cost assuming that $500 / case is the best case?

On Tue, Oct 7, 2014 at 1:17 PM, Sarfraz Maredia <sarfraz@uber.com> wrote:

REDACTED - PRIVILEGED

REDACTED - PRIVILEGED our attorney in Houston REDACTED - PRIVILEGED

Sarfraz

On Tue, Oct 7, 2014 at 7:32 AM, Chris Nakutis - Uber <nak@uber.com> wrote:

Either way works.

Sent from my iPhone

On Oct 7, 2014, at 12:27 AM, Sarfraz Maredia <sarfraz@uber.com> wrote:

REDACTED - PRIVILEGED legal team REDACTED - PRIVILEGED

REDACTED - PRIVILEGED

On Mon, Oct 6, 2014 at 11:31 PM, Chris Nakutis <nak@uber.com> wrote:

REDACTED - PRIVILEGED

On Mon, Oct 6, 2014 at 2:37 AM, Sarfraz Maredia <sarfraz@uber.com> wrote:

REDACTED - PRIVILEGED the lawyer we're using in Houston REDACTED - PRIVILEGED

REDACTED - PRIVILEGED

Sarfraz

On Sun, Oct 5, 2014 at 8:17 PM, Justin Kintz <kintz@uber.com> wrote:

This is really helpful, thanks Derek.

justin kintz | public policy @ uber technologies | +1-561-523-5977 | kintz@uber.com

On Sun, Oct 5, 2014 at 9:12 PM, Derek Seibert <derek@uber.com> wrote:

Hey Justin,

I completely agree. For starters, I've included a doc that we recently created that outlines general comparisons and have listed a few more below. Beyond that, we should discuss on a call and I can include the Hirease team as well. Along with me, Phil Cardenas, our new Head of Safety should be on the call as well.

- Fingerprinting is just a FBI database check. That database is not updated in real -time so BGCs miss recent charges.
- The database requires people to input data. This leads to human errors but with our Hirease BGCs, Hirease visits the actual source, the courthouse in each county where the records are kept. Much less of a chance of error there.
- The FBI database does not include all misdemeanors. We screen these out on the Hirease BGC.
- The FBI database does not include pending litigation. Our Hirease check does and naturally, we can't let people with pending murder, rape, or other serious crimes on our platform. This is a HUGE factor in comparing the two.

On Sun, Oct 5, 2014 at 5:57 PM, Justin Kintz <kintz@uber.com> wrote:

Thx Derek. Most helpful for us would be to help articulate why our BGCs are more effective than LiveScan? (for external audiences. The reasons you listed are reason enough, internally.)

On Sun, Oct 5, 2014 at 8:53 PM, Derek Seibert <derek@uber.com> wrote:

I'll be looking into it more this week but as far as I know, it'd be beyond difficult to rollout a single livescan (FBI/CJIS fingerprinting) solution nationwide. Below, I've described why it would be difficult and have also listed some reasons as to why livescan is unfavorable.

- Fingerprint BGCs require applicants visiting DMVs, post-offices, or other types of certified locations local to that market where those prints are processed through the CJIS database. This would require hundreds of vendors and no change at tech integration.
- Additionally, we'd still have to run most of the Hirease BGC (for MVRs, pending crimes, certain misdemeanors, etc.) which would effectively double our BGC spend and put an incredible amount of friction on the application process.
- It would be very interesting to see what would happen to their turnaround time if we added upwards of 100k BGCs per month to their volume. I'm sure they'd put their best effort to staff up but there's no telling as to how fast they'd be able to do it. By they, I mean the CJIS staff that runs checks against their database and reports back to the livescan location.

With the above being said, I know that the Houston team won a major battle with the regulators in legalizing Uber where we also came out on top with regards to several other types of stringent regulations. From what I know of the situation, livescan fingerprinting was part of the negotiation that we agreed to do but the wins in other aspects of the negotiation outweighed the loss in having to do fingerprinting. Awesome job by the team in that win.

If at all possible, I strongly suggest that we push back hard against livescan unless we're faced with a similar situation in Houston. Thus far, we've had trouble proving to regulators that our BGCs are better than live scan when that fact is ABSOLUTELY TRUE. I think we need to bite down and keep pushing to prove that our current BGC system is better. For starters, we're beginning to compile lists of taxi drivers licensed in Texas that actually failed our BGC. I'm happy to hop on a call this week to discuss this further.

On Sun, Oct 5, 2014 at 10:55 AM, Krishna Juvvadi <krishna@uber.com> wrote:

+ Derek

**REDACTED - PRIVILEGED**

Krishna
Sent from my iPhone

On Oct 5, 2014, at 10:29 AM, Jennifer Mullin <mullin@uber.com> wrote:

I don't want to assume so want to ask if fingerprinting is a pricey endeavor? I know it doesn't add anything substantive to our BGCs but it's come up in meetings with reporters/others in Austin, SA, Corpus Christi, etc.

I think everyone knows this but noting it anyway: all the other TX cities are looking at Houston as the model and so if we commit to fingerprinting here, will be harder to fight it in other cities.

Jen

On Oct 5, 2014, at 1:51 PM, Andrew Macdonald <mac@uber.com> wrote:

Is there no hope to convince them that fingerprinting is no better than our current process?

On Sun, Oct 5, 2014 at 12:50 PM, Chris Nakutis <nak@uber.com> wrote:

In our meeting with the ARA last week, they told us that we could do our own BGCs so long as they include fingerprints. Derek is looking into this to see if Hirease can add it for Houston. He is also looking into Hirease including the Warrant Check. We were also able to get them to approve Meinike locations for the car inspections. If these three work out in our favor, it'll go a long way towards streamlining the process.

On Sun, Oct 5, 2014 at 11:42 AM, Andrew Macdonald <mac@uber.com> wrote:

I definitely think we should add a transition amendment to try to knock down the # of tickets we are getting.

Additionally, what are the chances of us getting the right to conduct our own BGC back in this round?

On Sat, Oct 4, 2014 at 12:33 PM, Miller, Robert <RMiller@lockelord.com> wrote:

It is on the first page of the attached pdf.

---

**From:** Uber (Sarfraz) [mailto:sarfraz@uber.com]
**Sent:** Saturday, October 04, 2014 11:26 AM
**To:** Miller, Robert
**Cc:** Altmin, Lauren; Blinick, Adam; Brooks Chatman, Jeri; Ghaussy, Jen; Johnson, Chris; Juvvadi, Krishna; Kintz, Justin; Macdonald, Andrew; Mullin, Jen; Nakutis, Chris; Partida, Neftali
**Subject:** Re: HTX -- Housekeeping cleanup to Chapter 46 on Wednesday's council agenda

Thanks Robert. Can you send us the language regarding driver appearance standards just so we have it? I'm assuming it's fairly standard but just want to review it to make sure.

Best,

Sarfraz

On Oct 4, 2014, at 11:12 AM, "Miller, Robert" <RMiller@lockelord.com> wrote:

Sarfraz and Nak -- I do not see any issues, but we will track closely and be prepared to tag any amendments.

ALTERNATIVELY, do we want think about adding a “transition amendment” regarding the enforcement issues we have been dealing with?

http://houston.novusagenda.com/agendapublic/CoverSheet.aspx?ItemID=1760&MeetingID=47

**CITY OF HOUSTON - CITY COUNCIL**
Meeting Date: 10/7/2014
ALL

Item Creation Date: 10/1/2014

ARA-DELAYING THE 2014-2015 TAXICAB PERMIT APPLICATION AND DISTRIBUTION PROCESS AND CORRECTING SCRIVENER’S ERRORS AND CERTAIN HOUSEKEEPING MATTERS IN CHAPTER 46 (1)

Agenda Item#: 13.

**Summary:**

ORDINANCE **AMENDING CHAPTER 46 OF THE CODE OF ORDINANCES, HOUSTON, TEXAS,** relating to regulation of vehicles for hire; standardizing licensee appearance requirements; standardizing the vehicle for hire passenger solicitation prohibition; amending taxicab identification and airport use fe

provisions; declaring certain conduct unlawful and providing penalties therefore; containing findings and other provisions relating to the foregoing subject providing for severability

**Background:**

The Administration & Regulatory Affairs Department (ARA) recommends that City Council approve an ordinance to delay the 2014-2015 taxicab permi application and distribution process until September 2015, and correct scrivener's errors and certain housekeeping matters in Chapter 46.

Chapter 46 of the City of Houston Code of Ordinances provides for the City to accept and consider applications for the issuance of taxicab permits at three-yea intervals. Although the ordinance directs that taxicab permits be distributed during these periods, permit issuance is not automatic. Section 46-63 of the Code provides for a mathematical determination of market demand for additional permits, by comparing growth in population and airport trips since the last time permi issuance was considered. As a result of the application of this formula, the last time permits were issued was in 2011 based on the 2007 taxicab permi computation.

Attached is the preliminary computation for 2014. Based on this preliminary computation, the City will begin taking applications in November 2014, for the issuance of 205 additional taxicab permits in May 2015. The computation and instructions on how to submit an appeal were published in The Houston Chronicle on September 1, 2014. Simultaneously, the computation was mailed to each taxicab permit holder, as well as all taxicab drivers, for a total of approximately 5,000 notices. The computation may be appealed by any interested person who submitted their written appeal to ARA by September 15, 2014. A public hearing will be held on October 8, 2014 to review all appeals to the computation of taxicab permits to be issued. There were eight appeals received by the Septembe 15 deadline.

ARA is concerned that the computation formula may not adequately reflect actual market demand and the actual existing need for additional taxicab permits to accommodate the interests of the public. The current formula takes into account only growth in demand for taxicab trips at Houston's airport stands, using population growth as a proxy for citywide or dispatch demand. The formula is not dynamic and it does not take into account external factors that may affec demand for taxicab services. City Council recently approved an ordinance creating a regulatory framework for Transportation Network Companies (TNCs) to operate in Houston. While these services may not adversely impact demand for taxicab services, as the new ordinance provisions allowing new entrants do no become effective until November 4th, there is no way to quantify the impact on taxicab demand and the need for additional taxicab permits for several months thereafter.

In addition, City Council has expressed an interest in reviewing the permit distribution methodology prescribed in the current ordinance and the resulting composition of the taxicab fleet. Specifically, on August 6, 2014 when City Council approved the omnibus changes to Chapter 46, ARA committed to return to Council with a recommendation for a distribution methodology that would include a provision for the creation of a driver-owned company. A delay in the taxicab application and distribution process will allow ARA and City Council to review alternatives with taxicab stakeholders and other interested members of the community to determine the changes that are needed.

In addition to requesting a delay in the application and distribution process for taxicab permits, since the adoption of the amendments to Chapter 46 in August ARA and stakeholders have identified scrivener's errors and minor oversights in the ordinance that was approved. ARA respectfully requests the following additional amendments to Chapter 46:

- Remove the rooftop lettering requirement for taxicabs in Section 46-21, as this would impose unintended and unnecessary costs on the taxicab industry ARA has been advised that this requirement would cost an average of $50.00 per vehicle to implement, which would be cost prohibitive for the larger flee owners.
- Move the driver appearance standards from 46-351 to Article I so that these standards apply to all vehicle-for-hire drivers. This relocation was intended but was an oversight in the ordinance presented on August 6th.
- Correct scrivener's errors in Sections 46-23(e), 46-31(3), and 46-331(b)(5).

- Move the prohibition on soliciting passengers from Section 46-40 to Article I so that this prohibition applies to vehicles-for-hire, in general. This relocatio was intended but was an oversight in the ordinance presented on August 6th.
- Amend the vehicle removal language in Section 46-11.4(a) to read “may” instead of “shall.” The provision as written does not mirror language in othe places in the Code of Ordinances which gives the officer discretion.
- Amend Section 46-352(d)(4)(d) to allow a jitney to display the vehicle route name on the front of the vehicle. This change was intended but was a oversight in the ordinance presented on August 6th.

**Prior Council Action:**

8/6/2014; Ord. #2014-754

**Amount of Funding:**

n/a

**Contact Information:**

Lara Cottingham Phone: (832) 393-8503

Kathryn Bruning Phone: (832) 394-9414

**ATTACHMENTS:**

| | Description | Type |
|---|---|---|
| <image001.gif> | 9.30.2014 Taxi Permit Distribution RCA | Backup Material |
| <image001.gif> | 8.28.2014 Taxi Permit Computation 2015 (As printed in Houston Chronicle) | Public Notice |

| | | |
|---|---|---|
| <image001.gif> | 9.1.2014 Taxi Permit Distribution Letter (As sent to all permit holders) | Public Notice |
| <image001.gif> | ARA-DELAYING THE 2014-2015 TAXICAB PERMIT APPLICATION AND DISTRIBUTION PROCESS AND CORRECTING SCRIVENER'S ERRORS AND CERTAIN HOUSEKEEPING MATTERS IN CHAPTER 46 (1) ORD | Ordinance/Resolution/Motion |
| <image001.gif> | ARA-DELAYING THE 2014-2015 TAXICAB PERMIT APPLICATION AND DISTRIBUTION PROCESS AND CORRECTING SCRIVENER'S ERRORS AND CERTAIN HOUSEKEEPING MATTERS IN CHAPTER 46 (1) REDLINE | Ordinance/Resolution/Motion |

CONFIDENTIALITY NOTICE:
This message and any attached files may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

CONFIDENTIALITY NOTICE:
This message and any attached files may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

--
Andrew Macdonald
**Uber** | **Central**

--
Chris Nakutis | **Uber** | General Manager

--
Andrew Macdonald
**Uber** | **Central**

--

**Derek Seibert**
PRO Team
619.977.1107
e: derek@uber.com

--

**Derek Seibert**
PRO Team
619.977.1107
e: derek@uber.com

--
Chris Nakutis | **Uber** | General Manager

--
Chris Nakutis | **Uber** | General Manager