[SUBMITTING COUNSEL BELOW]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | CASE NO. 3:23-MD-03084-CRB<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Judge: Mag. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | CASE NO. 26-cv-01694-CRB<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 501 |

Even though Plaintiffs forfeited their chance to depose Sarfraz Maredia, Uber's Vice President, Head of Autonomous Mobility & Delivery and a member of Uber's Executive Leadership Team ("ELT") as part of the 20 hours permitted in the Court's 2025 apex deposition ruling, Judge Cisneros has now ruled that he can be deposed anyway because he is purportedly a "case-specific" witness. This ruling was erroneous. Uber submitted a sworn affidavit from Mr. Maredia confirming that he had ***no involvement in "formulating Uber's policies or procedures on background checks" in Texas***—the purported basis for the deposition. Moreover, the documents Plaintiff produced show, at most, that Mr. Maredia had knowledge of ***Houston's*** local regulations regarding TNCs based on his time as the General Manager of Uber's Houston office (2014-2016). By contrast, the alleged incident in this case took place in Tarrant County, some ***250 miles away*** and well outside of the Houston operating market. Plaintiff's argument that the documents show Mr. Maredia has case-specific knowledge was intended to mislead the Court (and apparently succeeded). Judge Cisneros's rationale that "[t]he topics that Plaintiffs wish to explore here relate to Maredia's work for Uber in Texas regarding background checks in that state" is thus indisputably erroneous, *see* August 31, 2026 Order, Dkt. 7164 (the "Order"), as is her conclusion that "Maredia's work in Texas at issue here differs from his later work in a national role that supported Plaintiffs' previous request to depose him in that earlier context." *Id.*

Because Mr. Maredia's work in Texas is not even remotely related to this lawsuit, the Court should overrule Judge Cisneros's order and issue a protective order.

## BACKGROUND

After Plaintiffs sought to depose multiple Uber senior executives in 2025, Uber sought a protective order, arguing that they were apex witnesses without unique personal knowledge relevant to the litigation. The Court denied the motion, but limited Plaintiffs to "a collective total of eighteen hours" of deposition time for four of the executives—Jill Hazelbaker, Sachin Kansal, Frank Chang, ***and Sarfraz Maredia***—to be "divided at Plaintiffs' discretion." 3/24/2025 Order at 7 (Dkt. 2600). The Court further noted that "[i]f Plaintiffs would prefer to omit one or two of those witness[es] entirely, without substitution, and apply the full twenty[1] hours to the remaining witnesses, they may do so." *Id.* That is what Plaintiffs did. They opted to depose Ms. Hazelbaker, Mr. Kansal, and Mr. Chang for a combined ***25 hours***, and ***elected not to***

[1] The Order limits Plaintiffs to 18 hours in one place and 20 in another; Plaintiffs exceeded both.

***depose Mr. Maredia at all*** (despite knowing that many cases involve rides in Texas, including several bellwethers ***they had chosen***).

Nevertheless, on August 3, 2026, Plaintiffs served a Notice of Deposition for Mr. Maredia related to "ALL ACTIONS" for 7 hours. On August 13, 2026, Plaintiff also served Mr. Maredia with a trial subpoena for the *QLF 001* trial. During meet-and-confers, Plaintiff's counsel argued that the deposition is not barred by the March 2025 Order because they seek *QLF 001*-specific testimony and the Notice was mistakenly captioned as relating to all actions. *See* Ltr. Br. Ex. 2 (Dkt. 7130-3) (8/6/2026 Email from B. Wilkins to M. Vives). Plaintiff also argued that Mr. Maredia "had significant involvement in rideshare in Texas during the time that Texas required stricter background check requirements than Uber used at the time [the subject driver signed-up for the Uber platform]. Additionally, at the time of the incident trip, Mr. Maredia was a senior director and regional general manager of US & Canada rides for Uber." *See* Ltr. Br. Ex. 3 (Dkt. 7130-4) (7/30/2026 Email from B. Wilkins to J. Levy).

The parties were unable to resolve the dispute and filed a joint letter pursuant to PTO No. 8 in which Uber sought a protective order regarding Mr. Maredia's deposition notice. Dkt. 7130. In support of that motion, Uber submitted a declaration from Mr. Maredia outlining that over the last 12 years, he has held a number of positions at Uber, but that ***none*** of these roles gave Mr. Maredia any first-hand knowledge that is relevant to the *QLF 001* case, including background checks, safety issues, or related policies and procedures. *See* Ltr. Br. Ex. 1 (Dkt. 7130-2) (Maredia Decl.) ¶¶ 1-15. Judge Cisneros denied Uber's motion on August 31, 2026.

## ARGUMENT

The Order should be reversed as "clearly erroneous" and "contrary to law," Fed. R. Civ. P. 72(a), because it violates Rule 26's requirement that discovery be "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see also Gilead Scis., Inc. v. Merck & Co.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (Rule 26(b)'s proportionality requirement "defin[es] the scope of permissible discovery"); *Hegarty v. Transamerica Life Ins. Co.*, No. 19-cv-06006-MMC (RMI), 2021 WL 4899482, at *2 (N.D. Cal. Oct. 21, 2021) (similar). As explained below, (1) the Order erroneously concludes that Mr. Maredia has relevant case-specific evidence that is proportional to the needs of the

case; and (2) the deposition should have been foreclosed by the Court's March 2025 Order.

## I. THE FINDING THAT MR. MAREDIA HAS EVIDENCE RELEVANT TO THIS CASE IS CLEARLY ERRONEOUS.

Judge Cisneros found that Mr. Maredia's testimony was relevant to this case because of his "work for Uber in Texas regarding background checks in that state." *See* Order. That conclusion, however, is fundamentally at odds with the evidence that was presented to the Court in the letter brief. Although the Order did not address the evidence submitted by the parties, making it difficult to discern the basis for her findings, Judge Cisneros presumably credited Plaintiff's argument that the exhibits she cited supported the conclusion that Mr. Maredia made decisions about Uber's background check policies and procedures in Texas. *See* Ltr. Br. at 5 ("Mr. Maredia exercis[ed] authority over which vetting steps Uber kept and which it cut[.]"); *id.* (referring to "Mr. Maredia's own decisions to cut screening steps to grow driver supply"); *id.* (describing Mr. Maredia as "[a]n executive who decided which screening steps to eliminate to grow driver supply"). ***He did not***. None of Plaintiff's documents supports her argument or contradicts Mr. Maredia's sworn statement that he did not "have direct responsibility for formulating Uber's policies or procedures on background checks" at any time. *See* Ltr. Br. Ex. 1 ¶ 14.

Plaintiff's documents show, at most, that Mr. Maredia had knowledge of ***Houston's*** local regulations regarding TNCs during the time he was the General Manager of Uber's Houston office (2014-2016) and then as General Manager for Texas and the Southwest (2016-January 2017). By contrast, the alleged incident in this case took place in Tarrant County, some 250 miles away and well outside of the Houston operating market. Involvement in Houston-specific regulatory and operational issues does not establish specific knowledge about the policies or decisions actually at issue in *QLF 001*. And nothing Plaintiff cites shows that Mr. Maredia made decisions about Uber's background check policies and procedures in Texas, as Plaintiff argued.

A brief review of Plaintiff's documents makes clear there is no evidentiary support for Judge Cisneros's findings:

- **Exhibit 5** (Dkt. 7130-6) is a January 2017 draft document regarding internal planning for the Super Bowl. It merely shows that Uber established "Greenlight Hubs" in order to assist drivers in obtaining their TNC licenses in compliance with ***Houston*** regulations.[2]

[2] Contrary to Plaintiff's suggestion, Uber never adopted a warrant check as part of its background check policy in Houston; rather, it required its partners in Houston to obtain a TNC license as mandated by local

- **Exhibit 6** (Dkt. 7130-7) is a December 14, 2016 draft email prepared by Mr. Maredia that was later sent by Leandre Johns to "Central GMs." **Exhibit 10** (Dkt. 7130-11) is the final as-sent email. This document reports on a "Super Bowl compromise" Uber had reached with the City of ***Houston*** that eliminated or amended many of the "most expensive and time-consuming licensing steps." There is no discussion of background checks beyond an acknowledgement that the "fingerprinting requirement remains." Plaintiff cited the document for the proposition that "[u]nder Maredia's leadership, Uber was a vocal supporter for the standardization of background check requirements across Texas," but this document in no way supports that statement.

- **Exhibit 7** (Dkt. 7130-8) is a June 8, 2016 memo from Mr. Maredia to the Texas House of Representatives Committee on Business and Industry regarding an "Overview of Safety at Uber." It responded to a report by the City of ***Houston's*** Administration and Regulatory Affairs Department on the effectiveness of its fingerprint background checks and explained why the report was "misleading." Among other things, the memo explained flaws in the fingerprint background checks and stated that Uber had found that "dozens of individuals who passed the City of Houston's fingerprint-based background check failed Uber's screening process." Ltr. Br. Ex. 7 at 1. Nothing in this memo suggests that Mr. Maredia made decisions about statewide background check policies.

- **Exhibit 8** (Dkt. 7130-9) is a May 17, 2016 Houston Chronicle op-ed written by Mr. Maredia arguing that ***Houston's*** regulations were onerous and that some provisions, including the "car inspection, fingerprint background check and physical exam, are duplicative of Uber's process . . . ." Ltr. Br. Ex. 8 at 2. Again, this reflects Mr. Maredia's knowledge of Houston regulations, not any decisions he made about Uber policies there (or anywhere else).

- **Exhibit 9** (Dkt. 7130-10) is an October 2014 email string about the recently-enacted ***Houston*** regulations. The only contribution from Mr. Maredia that is not redacted as privileged concerns driver appearance standards.[3]

Plaintiff's inability to point to any actual connection between Mr. Maredia's role and QLF 001's claims—despite citing numerous documents in her brief—confirms that his testimony is sought for an improper purpose and amounts to harassment. Launching an unwarranted fishing expedition this close to trial is wildly out of proportion to the needs of the case. Mr. Maredia is a senior executive and member of the ELT with no first-hand knowledge relevant to this litigation as a whole—much less to this specific Plaintiff's case. *See* Maredia Decl. ¶ 14. Plaintiffs have already deposed 57 current or former Uber employees, including more than 20 senior executives and many witnesses who testified about Uber's background check and safety procedures. Plaintiff has not identified any subject on which Mr. Maredia

---

regulations. One prerequisite to obtaining that license was a warrant check normally completed at the Houston Municipal Court. Because a separate warrant check was never part of Uber's policies, neither Mr. Maredia nor Uber could have "abandoned" it when the Houston regulations were superseded by state law.

[3] Plaintiff's remaining exhibits do not relate to background checks at all, but supposedly demonstrate that Mr. Maredia was "personally involved in deciding which drivers would be deactivated in response to "reports of Texas drivers sexually assaulting [a] passenger[.]" Ltr. Br. at 5. Exhibit 11 is an October 2015 email chain about a "sexual misconduct/social media" incident. Mr. Maredia merely concurred in the recommendation to deactivate the driver. Exhibits 12, 13, and 14 are incident reports Mr. Maredia received via email, but there is no evidence that he personally took action or was involved in addressing any of them.

would provide testimony that could not be obtained from the witnesses already deposed concerning Uber's background-check policies, Texas operations, or driver-safety procedures. The Order's contrary conclusion is clearly erroneous and should be reversed.

## II. BECAUSE MR. MAREDIA HAS NO RELEVANT INFORMATION SPECIFIC TO THIS CASE, HIS DEPOSITION IS FORECLOSED BY THE COURT'S 2025 ORDER.

The MDL Plaintiffs previously were granted permission to depose Mr. Maredia and/or three other Uber senior executives, for a limited number of hours. *See* 3/24/2025 Order at 6-7. Plaintiffs chose to use all of their allotted time on the other witnesses and not depose Mr. Maredia at all. As noted above, Judge Cisneros concluded that the 2025 Order did not preclude Mr. Maredia's deposition here, finding that his "work in Texas is sufficiently relevant to this case arising from an alleged assault in Texas, and sufficiently distinct from the subject matter the Court addressed previously, to warrant discovery notwithstanding that previous Order." Thus, Judge Cisneros's Order effectively allowed Plaintiff to evade her prior ruling by pretending that Mr. Maredia has case-specific information. He does not. Rather, as explained above, Plaintiff fabricated a case-specific link between the witness and the case at hand by misrepresenting the import of various documents.

Allowing such tactics threatens to undermine the Court's prior ruling on apex witnesses in other respects as well. If Judge Cisneros's ruling is allowed to stand, it would invite Plaintiffs to seek additional depositions of previously deposed executives by mischaracterizing their anticipated testimony as "case-specific." Nothing in the March 2025 Order permits that second opportunity.

## CONCLUSION

For the foregoing reasons, this Court should overrule the Order requiring Uber to present Sarfraz Maredia for a deposition and issue a protective order.

DATED: September 8, 2026

Respectfully submitted,

*/s/ Michael Vives*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice in N.D. Cal.*)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026 I electronically filed the forgoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Michael Vives*
Michael Vives