[*Submitting counsel below*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates To:

ALL ACTIONS

Case No. 3:23-md-03084-CRB

**JOINT CASE MANAGEMENT STATEMENT**

| | |
|---|---|
| Judge: | Hon. Charles R. Breyer |
| Courtroom: | 6 – 17th Floor (videoconference) |
| Date: | September 11, 2026 |
| Time: | 10:00 a.m. |

# JOINT CASE MANAGEMENT STATEMENT

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for September 11, 2026.

## Proposed Agenda

**I. Status of Case Filings**

**II. Replenishing the Bellwether Pool and Setting More Trials**

**III. Pending Motions Under Submission**

**IV. Joint Filings**

**V. Whether Uber Contests Plaintiff QLF 001's Account of the Assault**

**VI. MIL Page Limits & Stipulation**

**VII. Legal Marketing & Client Acquisition Subpoenas**

**VIII. Next Case Management Conference**

## I. STATUS OF CASE FILINGS

### A. Number of MDL Case Filings

As of September 3, 2026, there are 4,182 cases in this MDL, with more than 245 new filings and 18 dismissals since the last case management conference. Uber alleges that of these 4,182 filed claims, a substantial percentage have been resolved, are subject to dismissal motions (*see* Section I(A)), or are otherwise fundamentally deficient (e.g., they are not connected to a trip arranged on the Uber app). Plaintiffs do not agree with Uber's characterizations of the docket.

The following chart provides further detail on the status of the case docket:

| | |
|---|---|
| **No. of Active MDL Cases**<br>*Includes cases pending dismissal or resolution but that remain on the docket* | 4,182 |
| **No. of Active MDL Cases in which Uber has Requested Dismissal Without Prejudice**<br>*Includes cases subject to pending dismissal motions before the Court*<br>**ECF Nos. 5891, 5914, 5915, 5989, 6192, 6350, 6420, 6468, 6586, 6785, 6979, 7074* | 153* |

| | |
|---|---|
| **No. of Active MDL Cases Dismissed Without Prejudice and in which Uber has Requested Conversion to Dismissal With Prejudice**<br>*Includes cases subject to pending conversion motions before the Court*<br>* **ECF Nos. 5567, 6340* | 315** |
| **No. of Active MDL Cases Dismissed With Prejudice on Any Grounds**<br>*MDL cases dismissed with prejudice to date* | 274 |
| **No. of Active MDL Cases Subject to Settlement**<br>*MDL cases subject to settlement that remain on the docket* | 834 |

### A. Status of JCCP

Approximately 697 cases are pending in the JCCP and 311 are subject to settlements but remain on the docket. At the last status conference, Judge Schulman did not set a next trial and will revisit trial scheduling at the next status conference in late October.

### B. Other Cases and Proceedings

Uber has provided a current list of civil actions arising from allegations of sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

## II. REPLENISHING THE BELLWETHER POOL AND SETTING MORE TRIALS

### A. Uber's Position

At the last status conference, the Court indicated that the *QLF 001* trial may inform bellwether replenishment and that it would be appropriate to continue evaluating the replenishment process after the *QLF 001* trial. Subject to further guidance from the Court, Uber intends to submit a further position, as directed by the Court and in response to Plaintiff's submission, Letter Brief Concerning Bellwether Selections (ECF 7079), shortly after the *QLF 001* trial, so that the Court can take into account any learnings from the trial in selecting future bellwethers.

### B. Plaintiffs' Position

The parties already provided their respective proposals for replenishing the bellwether pool in the August 13 Joint Case Management Statement (ECF No. 7020), Plaintiffs' Proposed Pretrial order (ECF No. 7020-1), and in supplemental briefing (ECF Nos. 7022, 7026, and 7079). At the August 24 status conference, the Court asked Uber to respond to Plaintiffs' proposed bellwether picks. Uber responded that its position was set out in the papers and has not provided any further feedback to

Plaintiffs regarding their selections, nor suggested any of their own. To the extent Uber has more to add, now, or after the *QLF* trial, Plaintiffs request an opportunity to respond.

## III. PENDING MOTIONS UNDER SUBMISSION FOR MORE THAN 120 DAYS

### A. Uber's position

As of September 3, 2026, the below motions have been under submission before this Court for more than 120 days.

| ECF # | Date Filed | Days Since Filing | Motion Description |
|---|---|---|---|
| 5520 | 3/13/2026 | 155 | Motion for Findings of Contempt and to Enforce Prior Court Orders |
| 5567 | 3/19/2026 | 152 | Motion to Convert Orders of Dismissal without Prejudice to Order of Dismissal with Prejudice |
| 5891 | 4/15/2026 | 125 | Motion to Dismiss Cases for Failure to Comply with Amended PTO 10 |
| 5914 | 4/17/2026 | 123 | Motion to Dismiss Cases for Failure to Comply with PTO 5 |
| 5915 | 4/17/2026 | 123 | Motion to Dismiss Cases for Failure to Comply with PTO 31 |

## IV. JOINT FILINGS

### A. Uber's Position

Uber provides this update on steps the Parties have taken to address late joint filings. Although the Parties had, until recently, worked relatively effectively to timely file joint statements, that process is in need of course correction. As the Court has likely noticed, the filing times for both case management conference statements and joint filings before Judge Cisneros are getting later and later. This is due in large part to parties adding new topics or making substantive revisions at the 11th hour. For example, on the day the last CMC statement was due—after initial positions had been exchanged—Plaintiff introduced a new topic into a CMC statement concerning the subpoenas issued to lead generator firms. Inclusion of this late-disclosed topic required Uber to review a new issue that had not previously been identified and respond without adequate time to review and consider the issue. With respect to both CMC statements and PTO 8 submissions, the Parties have missed their deadlines for revising and exchanging positions, pushing the final exchanges and eventual filing very late into

the night. And finally, the Parties have substantially revised positions in later exchanges, which should be limited to responding to new material or fixing typographical errors.

The result is rushed and late-night exchanges and filings that prevent thoughtful consideration of positions and leave attorneys and clients working until very late hours, compromising effective advocacy.

After the last case management conference, Uber proposed a set exchange schedule and asked that the Parties agree that only topics identified in the opening exchange can be included in the case management statement. Both of these are usual practices in joint filings, including in MDLs. A set exchange schedule ensures predictability, particularly given the many stakeholders involved, and benefits all involved. Identifying and disclosing clear opening positions upfront is necessary to ensure that a joint filing accomplishes the goal of ensuring that the other side considers the clearly identified position, addresses it, and that the Parties reach any agreements that are possible prior to submitting the statement to the Court. It is therefore surprising that Plaintiffs have declined to agree that the opening exchange is the only appropriate juncture to raise new topics. While Plaintiffs agreed to the schedule Uber proposed for exchanging positions on this joint filing, it was with the caveat that Plaintiffs will use "best efforts" to adhere to an exchange schedule. Unfortunately, despite **agreeing** to a 2PM exchange of opening positions, Plaintiff sent the opening position 90 minutes late; indicating that Plaintiffs are not meeting Uber's efforts to work cooperatively and pursuant to an agreed-upon schedule.

Uber requests that Plaintiffs agree that all joint submissions must be filed by 8:00 PM, which will facilitate all stakeholders having a meaningful opportunity to review these important submissions to the Court and commit to disclosing all positions in the initial exchange. Uber will do the same. The Parties should also adopt a similar process for joint filings before Judge Cisneros.

If Plaintiffs provide late-disclosed positions in the future, Uber intends to notify the Court of the late disclosure in the joint filing and state that Uber is not responding due to the late disclosure.

**B. Plaintiffs' Position**

As Plaintiffs have communicated to Uber and the Court, Plaintiffs are prepared to work with Uber to ensure an orderly process for joint filings. While Uber lays the blame with Plaintiffs, the reality

is that both parties have contributed to late filings by adding new topics, making substantive revisions at the 11th hour, or by briefing issues that should not be raised in a CMC statement. The remedy is for the parties to reset and work together to ensure that the Court receives a concise and helpful CMC Statement by the filing date. Uber, however, goes one step too far by seeking to bar any topic not raised in the initial exchange from being included in a CMC Statement. This type of categorical ban is unworkable in complex and fast-moving litigation, where case management issues sometimes arise spontaneously and can most efficiently be dealt with at the nearest CMC. Strict timing cut-offs for internal exchanges similarly fail to recognize that numerous stakeholders must be consulted in connection with these filings and their schedules will not always align. Accordingly, the parties should simply abide by the rules of reason, civility, and professionalism to ensure an orderly exchange and timely filings.

## V. WHETHER UBER CONTESTS PLAINTIFF QLF 001'S ACCOUNT OF THE ASSAULT

### A. Plaintiffs' Position

At the August 14 Case Management Conference, the Court noted, "I am and I continue to stay very interested in knowing whether or not Uber's going to contest…if there was a criminal act basically as described…in this case." Aug. 14, 20206 CMC Tr. at 15:23-16:5. The Court explained that Uber's position "will have a real impact on the length of the trial" and it's something the Court "need[s] to know so that I can proceed accordingly." *Id.* Uber responded that it would not feel comfortable sharing that information until after the driver's deposition.

That deposition was set for September 1, and the parties had made all necessary arrangements with Victor Le and the county jail. Then, the night before the deposition, Uber canceled it, citing its repeated (and unsupported) refrain of "witness interference." ECF Nos. 7184, 7189. The Court rejected Uber's assertion and found that counsel's phone call with Mr. Le was *not* "an appropriate justification to postpone the deposition." ECF No. 7208. The Court ordered that the deposition be scheduled "no later than September 9, 2026 unless both parties decide not to go forward with deposition." The Court further ordered Uber to provide daily status reports until the deposition takes place and later amended that order to require joint daily status reports regarding the driver's deposition. ECF No. 7245.

Plaintiff is prepared to work with Uber in rescheduling the deposition, but the parties and the

Court cannot wait any longer to learn whether Uber intends to contest Plaintiff's account of the June 9, 2020 assault. Plaintiff has been deposed for five hours and produced thousands of pages of documents. Expert reports have been served, and Uber has deposed numerous nonparties regarding Plaintiff's claims. Plaintiff asks that Uber be ordered to provide its position by September 14, regardless of whether the deposition of Victor Le has gone forward by that date.

**B. Uber's Position**

Uber expects to be in a position to answer the Court on this issue at the pretrial conference on September 25. At present, fact and expert discovery are still far from complete. Plaintiff continues to produce highly relevant documents, including a September 8 production of Plaintiff's text messages, and the upcoming depositions of Plaintiff and the driver. In addition, expert discovery has just begun. The parties just exchanged expert reports, including reports from multiple experts for Plaintiff that discuss facts about the underlying incident. Plaintiffs also disclosed a non-retained law enforcement expert who will opine on the criminal investigation. Uber is digesting these reports and preparing to depose the newly-disclosed witnesses, many of whom did not testify in prior trials. Uber is entitled to complete both fact and expert discovery before it is required to make a final decision. Uber is confident its decision regarding this issue will not impact the length of trial. Based on the expert opinions disclosed by Plaintiff and Uber's own expert lineup, the length of trial will not be impacted by Uber's decision about whether to contest the version of events on June 9, 2020. Uber respectfully requests that it be allowed to finish fact and expert discovery before finalizing its defense.

## VI. MIL PAGE LIMITS AND STIPULATION

Subject to the Court's approval, the parties agree that each side may file up to 25 pages of motions in limine in the *QLF* trial. *See* PTO 36 (setting the same limit in *Dean*).

The parties have also stipulated that the Court's Rule 702 rulings and motion in *limine* rulings from the prior cases will apply in this case, to the extent they are relevant, without waiver of any appellate rights. The parties further stipulate that no further briefing is necessary to preserve issues implicated by the parties' previously filed motions. The Parties will file this stipulation prior to the CMC.

## VII. LEGAL MARKETING AND CLIENT ACQUISITION SUBPOENAS

### A. Plaintiffs' Position

On September 3, 2026, in response to Plaintiffs' Motion for a Temporary Protective Order (ECF No. 7059), the Court issued an order temporarily prohibiting Uber from "seeking, accessing, using, or disseminating materials obtained from non-party legal marketing and client acquisition services." ECF No. 7209. The Order provides that "Uber is temporarily prohibited from seeking third-party discovery, and must notify each subpoenaed party that enforcement of the subpoena has been stayed pending resolution of the dispute, and there shall be no production of document by these parties." *Id.* The Order further directs the parties to "be prepared to address this motion at the September 11, 2026 case management conference."

By way of background, Uber served several subpoenas targeting advertising and marketing firms, legal intake service providers, referral organizations, and legal technology and operations vendors. On August 19, Plaintiffs moved for a temporary protective order because the subpoenas call for, and have resulted in, the production of irrelevant, privileged, and highly confidential information. *See* ECF No. 7059. For example, in response to just three of the subpoenas, Uber has received personally identifying information regarding tens of thousands of individuals seeking legal advice across many cases not limited to Uber. The productions include narrative descriptions of the harms experienced, including graphic details of sexual assaults, child sexual abuse, human trafficking, addictions, medical conditions, and other deeply sensitive matters. The productions further reveal attorney work product regarding analysis of claims and defenses and implicate many different law firms. There is no indication that the individuals and firms impacted—many of whom are not involved in this litigation—were notified and provided an opportunity to assert their privileges.

Plaintiffs, accordingly, moved for a temporary protective order, which the Court granted, as described above. That Order should stay in place until after the upcoming bellwether trial, at which time the parties can resume briefing on permanent relief. This aligns with the Court's admonishment that "the parties' efforts should be focused on the upcoming bellwether trial." ECF No. 7209. Finally, Plaintiffs ask that Uber promptly provide Plaintiffs with proof that it has notified each subpoenaed

party that enforcement of the subpoena has been stayed pending resolution of this dispute, in accordance with the Court's order.

### B. Uber's Position

Uber has notified each subpoenaed party that the enforcement of subpoenas at issue has been stayed pending resolution of this dispute. Delaying determination of this dispute until after the *QLF 001* trial is not necessary, as there are ample resources on both sides, and Uber requests that the Court set a further briefing schedule contemporaneous with *QLF 001* trial and a hearing after the trial concludes. Contrary to Plaintiffs' assertion, the documents seek relevant discovery; further, the subpoena recipients are corporate entities, represented by attorneys (or able to be represented by attorneys if they so choose) and able to review for responsiveness, log privileged documents and then produce them. There is no reason to conclude without evidentiary support that these corporate entities have produced privileged or otherwise protected information. Third-party discovery is an ordinary part of litigation. This issue can be resolved through briefing and, if necessary, a hearing on these issues soon after the close of the *QLF 001* trial. Although this issue has been briefed and likely will be subject to additional briefing, Uber is prepared to discuss these issues at the status conference, including the following reasons that this third-party discovery is proper and can be litigated during the *QLF 001* trial:

***First***, documents and communications between non-lawyer lead generators that bundle and sell leads to different parties are not inherently privileged, and Plaintiffs have not pointed to privileged documents, notwithstanding that Plaintiffs have possessed documents produced by third parties in response to the subpoenas beginning in November 2025. Despite now claiming that thousands of documents are privileged, to date, plaintiffs have not identified a single specific document that they contend is entitled to protection. The Court has already ruled that broad, sweeping privilege claims are not permitted and appointed Judge Jones to conduct a document-by-document analysis in alignment with the Court's PTOs and the federal rules. If nothing else, Uber should be permitted to use the third-party documents produced to date to contest Plaintiffs' blanket assertions of privilege, as set forth in the federal rules and the Court's PTOs. *See* Fed. R. Civ. P. 26(b)(5)(B); Fed. R. Civ. P. 45(e)(2)(B); ECF No. 396 ¶ 7; ECF No. 176 ¶ 11.3.

***Second***, there are protective measures in place in this litigation. The Court already issued a comprehensive Protective Order that maintains confidentiality and privacy and has further ruled that confidentiality and privacy are protected when Uber produced information about non-parties. *See* ECF No. 321; ECF No. 3346 at 4. To the extent any production contains personally identifying information that Uber did not request concerning individuals in unrelated matters, Uber remains willing to meet and confer regarding reasonable measures such as targeted redactions. A sweeping order preventing the parties from reviewing and using relevant third-party discovery will not support the resolution of this MDL.

***Third***, litigation of this issue can continue while the *QLF 001* case proceeds to trial. There are lawyers on both sides to brief this issue who are not involved in the upcoming trial, and the hearing and final resolution of the issue can be done soon after the *QLF 001* trial so that it does not coincide with the trial.

## VIII. NEXT CASE MANAGEMENT CONFERENCE

The Parties request that the Court set the next monthly Case Management Conference to occur after the *QLF 001* trial.

Dated: September 9, 2026

By: */s/ Laura Vartain Horn*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY & MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

Dated: September 9, 2026

By: */s/ Sarah R. London*

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: September 9, 2026

*<u>/s/ Laura Vartain Horn</u>*

Laura Vartain Horn