UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3084 CRB |
| This Document Relates to:<br><br>*ALL MATTERS* | **JOINT LETTER BRIEF REGARDING SAFETY DATA**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G - 15th Floor |

Dear Judge Cisneros:

Pursuant to the Court's September 2, 2026 Order, ECF No. 7193, the Parties respectfully submit this joint letter regarding Plaintiffs' request that Uber supplement its production of data, documents, and interrogatory responses regarding sexual assault and misconduct incident reports.

**<u>Plaintiffs' Portion</u>**:

Plaintiffs are compelled to submit these issues again for the Court's attention given developments since the previous letter brief was filed. (ECF 6251). First, Uber's recently served expert reports offer substantial opinions based on the disputed evidence. Plaintiffs are prejudiced in their efforts to challenge those opinions without the data that the opinions rely upon. Second, Uber has reaffirmed that it reserves the right to attack Plaintiffs' experts for relying on outdated data, even though Uber refuses to produce current data.

Uber argues that Plaintiffs never requested the data at issue, but that is untrue. In February 2024, Plaintiffs served Requests for Production seeking data related to Uber's Safety Reports and data related to sexual assault of riders. (ECF 651). These Requests were the subject of a series of disputes which resulted in numerous Court orders requiring Uber to produce the exact raw Bliss, Jira, and Flack data that is at issue here. (ECF 638, 706, 779, 1068, 1521, 1996, 2011, 4060). Uber completed production of that data in October 2025, along with summary charts tallying the data.

However, just a few months later, Uber's evidence and testimony in the *Dean* trial suggested that Uber had changed that data since producing it. Uber knew its discovery was outdated at least by January 2026 and so it had an obligation to supplement then. Fed. R. Civ. P. 26(e) (requiring a party to provide updated discovery in timely manner when it learns that its prior responses are incomplete or incorrect in some material manner). That obligation existed whether or not Plaintiffs requested supplementation. *Entangled Media, LLC v. Dropbox Inc*., 795 F. Supp. 1191, 1123 (N.D. Cal. 2025) ("Rule 26(e) establishes an 'ongoing duty to supplement or correct prior…discovery responses without the need for a request from another party.'"). But Plaintiffs did request updated data in March, nearly six months ago. Uber refused. Instead of supplementing in good faith, introduced additional delay through Motions to Reconsider and for Relief.

**2017-2024 Incident Data**: When Plaintiffs brought this issue to the Court nearly four months ago, they asked that "Uber to supplement its production of sexual assault and sexual misconduct incident *data* and related interrogatory responses to include incidents through 2025" and that "[i]f Uber has re-categorized any sexual assault or sexual misconduct incidents in its Incident Report Classifications of Dominant Tickets for 2017-2024, as served to Plaintiffs on October 13, 2025, supplement *that discovery* accordingly." (ECF 6251 at 1-2) (emphasis added). Plaintiffs acknowledge this request could have been better stated. However, the Parties have historically referred to the raw data as "data" and Uber's tallies of it as something else ("tabulated data," "incident report charts," etc.). Plaintiffs therefore maintain that, through the meet and confer process, Uber understood that Plaintiffs sought both (1) Uber's updated tallies reflecting any recategorized or invalidated incidents and (2) the underlying data necessary to identify which incidents had been recategorized or invalidated and why. Regardless of any ambiguity in these requests, Rule 26 required Uber to supplement its now materially incorrect data production.

Respectfully, Plaintiffs understood the Court's June Orders (ECF 6452, 6540) to require production of updated 2017-2024 raw data; otherwise, they would have sought reconsideration themselves. To be clear, the only reason Plaintiffs did not challenge Uber's burden representations is because they understood Uber's Motion for Reconsideration to challenge only the portions of the Order that Uber itself identified as requiring it to: "(1) produce Bliss and Jira data through 2025, by June 18, 2026; and (2) supplement Uber's categorized incident report charts by June 30, 2026 and reassess those charts annually until completion of the MDL Proceeding." (ECF 6540-1 at 2). Further, the burden of producing the updated 2017-2024 data would be relatively

inconsequential given that to create the summary tables, Uber needed to identify the recategorized or invalidated data and catalogue it. Producing an overlay of that same data— just 0.2% of the data per Uber— is a minimal burden. The first Plaintiffs learned of Uber's position that the Court's Orders did not require production of updated 2017-2024 raw data was when Plaintiffs received Uber's June 30 and July 23 productions— neither of which included that data.

That Uber's recent productions contained the updated tallies but not the underlying data needed to verify them deprives Plaintiffs of necessary discovery and threatens unfair prejudice in upcoming bellwethers. The unfair prejudice has now been confirmed by the expert reports Uber served last week, which make sweeping assertions about the number and percentage of reports that are purportedly "invalid" or recategorized. Plaintiffs have zero ability to challenge those assertions without the underlying data necessary to assess which specific reports were recategorized and/or invalidated, and why. Prejudice may arise in other ways. For example, if Plaintiffs introduce exemplar reports from the raw data—as they did during the *Dean* trial—Uber or its witnesses can assert that the incidents described in the reports have been recategorized or invalidated, and Plaintiffs will have no ability to challenge that. Principles of fair discovery require that Plaintiffs have the same data Uber has concerning its significant project of recategorization and invalidation.

Plaintiff QLF001 exemplifies the problem: Uber received a report of Plaintiff QLF001's rape in January 2025. Uber has produced a PDF copy of the Jira ticket Uber created for that report, which shows that by March 2025, Uber had categorized her report as "non-consensual sexual penetration" (rape). Uber has now produced Flack data that categorizes Plaintiff QLF001's report as "insufficient information." Because Uber did not produce the updated Bliss and Jira data, Plaintiff cannot determine when or why Uber recategorized her report.

Moreover, the raw data contains essential information about each individual report, including whether the report was made against the driver, the time and day of the incident, and prior reports involving the driver. Plaintiffs' experts used the raw data to analyze trends. Without updated data, Plaintiffs' experts cannot determine how their analyses are affected by Uber's recategorizations or invalidations. One concern in the *QLF001* trial is Plaintiff's analysis of the percent of rape reports that were reported against Uber drivers, which was calculated using the now outdated data. Without updated data, Uber may challenge whether Plaintiff's experts can say with accuracy what percentage of rapes were reported against drivers as opposed to against riders or third parties. Plaintiff attempted to eliminate the potential prejudice this creates without more discovery by asking Uber to agree that it would not challenge Plaintiff's experts for relying on the data Uber originally produced. Uber refused. As recently as yesterday (and even in this letter), Uber's counsel reaffirmed that Uber reserves the right to challenge Plaintiff's experts on the basis that their analyses rely on outdated data—meaning at trial, Uber may claim that the evidence of the percentage of rapes reported against Uber drivers is incorrect. Similarly, Uber reserves the right to challenge that any exemplar reports offered may have been recategorized or invalidated.

The burden of producing an overlay of just the new data for reports that were recategorized or invalidated is minimal. **Plaintiffs therefore respectfully request that the Court order Uber to produce, within 30 days, the updated 2017–2024 raw data from Bliss, Jira, and Flack reflecting the data as of the date of Uber's June 30 summary tables.** At this time, Plaintiffs are only requesting updated data for reports Uber has recategorized or invalidated since producing that data in October 2025. With respect to timing of production before upcoming trials, unfortunately, the delay Uber has caused by forcing the issue through numerous PTO 8 letters and Motions for Reconsideration and for Relief, it is too late for Plaintiffs' experts to analyze any raw data and

incorporate it into their expert reports before the *QLF001* trial.[1] Whether data produced may be used in the *A.R.* trial will depend on the timing, completeness, and accuracy of production.

**2025 Data**: Uber has not produced the underlying data regarding 2025 incidents it deemed invalid. This should have been produced under Rule 26 as supplement to the February 2024 discovery requests, or at least in response to Plaintiffs' request for the raw data for each SA/SM incident that Uber categorized into its Taxonomy "*or any other categorization*." (ECF 7193 at 2) (emphasis added). Without this, Plaintiffs cannot evaluate, much less challenge, Uber's position on the number of invalid reports or the validity of Uber's decision to deem reports invalid.[2] This is particularly prejudicial as Uber's experts rely on the 2025 invalid incident summary for opinions that bolster the "seriousness" of Uber's reporting system and Uber's "application of clear and stringent review standards rather than a judgment about the credibility of the reporting individual." **Plaintiffs therefore respectfully request that Uber be ordered to produce, within 30 days, raw data from Bliss, Jira, and Flack regarding the 2025 incidents Uber deemed "invalid."[3]**

**Uber's Portion**:

Plaintiffs' latest request asks the Court to revisit the very premise it rejected in its September 2, 2026 Order: that Plaintiffs' earlier requests for aggregate safety data should now be construed to encompass underlying incident-level raw data that Plaintiffs never requested. But the Court already found Uber's interpretation of its previous Order to be "reasonabl[e]" and consistent with the Court's understanding. ECF 7193 at 3. And contrary to Plaintiffs' claims, the expert reports issued last week – in which both parties' experts had the ability to rely on identical summary and raw data sets – provide no basis to disturb that conclusion. Nor does Rule 26(e) expand the Court's prior Orders: Uber's historical production was accurate when made, and subsequent changes to dynamic data do not render that production materially incomplete or incorrect. Despite the Court's finding, Plaintiffs continue to press for more and more discovery—data they never previously requested—without demonstrating that they have any actual need for it. Specifically, Plaintiffs demand production of (1) underlying raw data from Flack, Jira, and Bliss for the approximately 1,700 reported incidents occurring between 2017 and 2024 that were re-classified or determined to be invalid between October 2025 (when Uber first provided the summary chart) and June 2026 (when Uber provided the updated summary chart); and (2) underlying raw data from Flack, Jira, and Bliss for all reported incidents in 2025 that were identified on the chart documenting invalid incident reports.[4] None of this data is necessary for

---

[1] Plaintiffs reserve the right to use any updated data during the *QLF001* trial, although Plaintiffs' experts will not have had an opportunity to incorporate that data into their pretrial reports.

[2] Plaintiffs addressed this in the June 25, 2026 status conference. See Transcript at pp. 30-31.

[3] Plaintiffs are further prejudiced because Uber has not produced corresponding raw data or tabulated summaries for prior years, 2017-2024, particularly in light of Uber's expert opinions regarding the importance of Uber's purported consistency of invalid reports over time. Plaintiffs reserve the right to pursue this discovery at a later date.

[4] None of the data Plaintiffs now seek has ever been the subject of a request for production. The Court has already concluded that the 2017-2024 raw data was not covered either by Plaintiffs' requests or the Court's Order. ECF 7193 at 4. And as explained below, Uber produced the raw data underlying the chart documenting valid complaints for 2025, but did not produce such raw data for the invalid reports because Plaintiffs did not request it.

Plaintiffs to prepare the *A.R.* case for trial and its production would be grossly disproportionate to the needs of the case.

***First***, Plaintiffs have no need for the raw data underlying the 1,700 reported incidents between 2017 and 2024 that were reclassified or determined to be invalid between October 2025 and June 2026. The Court recognized Plaintiffs' interest in this information "[t]o the extent that Uber seeks to paint a picture of a pervasive number of invalid, fraudulent reports of sexual assault and sexual misconduct," ECF 7193 at 4, but that interest does not establish a need for incident-level discovery into every report underlying the aggregate figures. Plaintiffs' newly asserted desire to test individual classification decisions does not change the proportionality analysis or explain why the incident-level data they already have (and which provided the numbers they sought) is insufficient for that purpose.

As Plaintiffs concede, the only reason to require Uber to produce the raw data for each of these 1,700 incidents would be to allow Plaintiffs to challenge Uber's decisions on an incident-by-incident basis. That cannot possibly be their intent. Any such challenge would involve hundreds of mini-trials on incident reports that ***are not at issue in this case*** to determine whether Uber's re-classification or invalidation decisions could be challenged as somehow "incorrect." Nor does Plaintiffs' characterization of the requested production as a simple "overlay" answer the proportionality problem. The burden is not measured merely by the number of records transmitted; Plaintiffs expressly seek the data so that they can investigate and challenge why individual reports were reclassified or invalidated—an inquiry that necessarily expands discovery into the circumstances of incidents having nothing to do with either bellwether. Such an exercise would be wildly out of proportion to the needs of the case and would needlessly consume the parties' (and the Court's) time and interfere with their preparation for trial in the *QLF 001* and *A.R.* cases. This is particularly true given that there was a ***less than 0.2% discrepancy*** in classifications between the October 2025 and June 2026 charts. Plaintiffs do not explain how changes affecting such a small number of the reports could materially alter the aggregate trends they seek to analyze. In short, Plaintiffs already have the information necessary to assess and challenge Uber's position that it receives a substantial number of invalid reports of sexual misconduct; no raw data is required for that purpose. Thus, whatever marginal benefit Plaintiffs might obtain from incident-level review is substantially outweighed by the burden and distraction of opening collateral disputes concerning incidents unrelated to these bellwethers.

Plaintiffs' claims of prejudice are also unfounded. While Uber has declined Plaintiffs' requests to withdraw Uber's experts' opinions or preemptively limit its cross-examination of Plaintiffs' experts, Uber has already agreed that "both parties may rely at trial on the previously produced raw dataset so they are working off the same data." ECF 7093 at 4. Thus, while Plaintiffs claim that Uber's experts make "sweeping assertions about the number and percentage of reports that are purportedly 'invalid' or recategorized," Plaintiffs are not being required to conduct their incident-level analyses using a different dataset than Uber: both sides remain free to use the same previously produced raw dataset. Uber's experts' discussion of updated classification figures does not entitle Plaintiffs to discovery into thousands of individual reports merely to test those aggregate figures one report at a time. Nor does Uber's reservation of its rights concerning particular expert opinions alter that conclusion. Uber's refusal to prospectively waive otherwise proper evidentiary or cross-examination arguments is not a basis to expand discovery beyond what Plaintiffs requested and the Court ordered. Plaintiffs' reliance on QLF001 does not justify their sweeping request either. Any dispute concerning the classification history of QLF001's own report can be addressed through discovery concerning QLF001; it provides no basis for ordering incident-level

discovery concerning approximately 1,700 unrelated reports.

***Second***, the Court should reject Plaintiffs' demand for production of the raw data from Flack, Jira, and Bliss for all reported incidents in 2025 that were identified on the Flack "invalid chart" for the same reasons—that data was neither requested nor ordered. A closer look at Plaintiffs' requests and Uber's responses helps to clarify the issue. Plaintiffs' first request sought "the number of sexual assault and sexual misconduct incidents in the United States that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as 'Insufficient Information,' 'Parent Category Usage Tracking,' or any other categorization." ECF 7193 at 1. In response, Uber produced the chart titled "Incident Report Classification of Dominant Tickets for 2025." Plaintiffs' second request sought "the number of sexual assault and sexual misconduct incidents in the United States that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as 'Insufficient Information,' 'Parent Category Usage Tracking,' or any other categorization ***despite determining the incident to be 'invalid.'***" *Id.* (emphasis added). In response, Uber produced the chart titled "Incident Report Classification of Invalid Dominant Tickets for 2025." Plaintiffs' third request for raw data tracked the language of Request No. 1 (i.e., incidents "that Uber categorized into each category of its Sexual Misconduct and Violence Taxonomy or categorized as 'Insufficient Information,' 'Parent Category Usage Tracking,' or any other categorization") and then requested the raw data underlying those incidents. *Id.* at 3. It did not include any language regarding incidents determined to be invalid, in sharp contrast to the second request. Uber therefore produced raw data corresponding to the chart produced in response to the first request.

Plaintiffs now seek the raw data underlying the 2025 incident reports determined to be invalid, but this request is improper for the same reasons as their request for 2017-2024 data. Plaintiffs have no need for the raw data in order to rebut any argument that Uber received a significant number of invalid reports. While Plaintiffs may have an interest in understanding the ***degree to which*** Uber has reclassified incident reports or determined them to be invalid—information Plaintiffs already have—they do not have a similar need to analyze and attempt to challenge Uber's decisions as to each of the more than 6,000 incident reports from 2025 that were determined to be invalid.[5]

For all of these reasons, Plaintiffs' request for additional discovery should be denied.[6]

---

[5] The marginal (at best) relevance of—and lack of any actual need for—this raw data is underscored by the fact that Plaintiffs' own data science expert in *QLF 001* admits in her September 3, 2026 report that she did not even review the 2025 raw data for ***valid*** incidents, even though such data was made available on June 30 and July 23.

[6] To the extent that the Court determines any production is warranted (which it should not), Plaintiffs' request for production within 30 days should be rejected. As an initial matter, such a schedule would interfere with Uber's preparation for the *QLF 001* trial beginning on October 6, which is unnecessary given that the *A.R.* case is not scheduled for trial until 2027. Further, as previously discussed with the Court at the June 25, 2026 discovery conference (Tr. at 28-38) and further described in the Declaration of Michael Shortnacy (ECF 6540-2), production of raw data requires time-consuming and expensive review for privilege and PII. Uber therefore submits that at least 60 days is necessary and that cost-sharing is appropriate if further production is required. At the Court's request, Uber will submit declarations in support of both positions.

DATED: September 9, 2026

Respectfully Submitted,

By: /s/ Elizabeth M. Wilkins
Alexandra Walsh (*Pro Hac Vice*)
Elizabeth M. Wilkins (*Pro Hac Vice*)
**ANAPOL WEISS**
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
awalsh@anapolweiss.com
bwilkins@anapolweiss.com

ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

By: /s/ Christopher D. Cox
CHRISTOPHER D. COX (*Pro Hac Vice*)
Jessica Davidson (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
christopher.cox@kirkland.com
jessica.davidson@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER, LLC, And RASIER-CA, LLC

**FILER'S ATTESTATION**

I, Elizabeth Wilkins, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: September 9, 2026

By: /s/ *Elizabeth M. Wilkins*
Elizabeth M. Wilkins

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated: September 9, 2026

By: /s/ *Elizabeth M. Wilkins*
Elizabeth M. Wilkins