[SUBMITTING COUNSEL BELOW]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

Case No.: 3:23-MD-03084-CRB

**JOINT LETTER REGARDING UBER'S REQUEST FOR A SECOND RULE 35 EXAMINATION OF PLAINTIFF**

Judge: Hon. Lisa J. Cisneros
Courtroom: G – 15th Floor

**PUBLIC VERSION**

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

The Parties respectfully submit this joint letter regarding Uber's request for a second Rule 35 examination of Plaintiff.

Respectfully submitted,

DATED: September 10, 2026

By: /s/ Andrew Kaufman
ROOPAL P. LUHANA (*pro hac vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
ANDREW KAUFMAN (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Michael Vives
MICHAEL VIVES (*pro hac vice*)
JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

KIM BUENO
State Bar No. 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**Uber's Position:**

Plaintiff secured substantial restrictions on Uber's expert's Rule 35 examination by suggesting to Uber that Plaintiff was experiencing a mental health crisis—and that inquiry into the details of the alleged incident, Plaintiff's sexual history, and other related matters would be too triggering given her fragile state, "[redacted]"

Uber has now learned that at the very same time, Plaintiff's own experts were questioning her on the very same topics for long stretches of time. Plaintiff underwent more than 20 hours of examination over the course of five days with her retained experts, who explored, in extensive detail, subjects Uber's expert was barred from touching. Remarkably, one of those examinations occurred on August 7—***the same day*** Plaintiff's sister testified that [redacted] which Plaintiff's counsel then invoked as a basis to curtail Uber's examination. Moreover, Plaintiff's experts are now offering opinions in their reports based on topics that Uber's expert was barred from raising at her examination. That one-sided limitation deprived Uber of a fair opportunity to evaluate Plaintiff's alleged injuries and warrants a supplemental examination.

The prejudice is particularly pronounced as to Plaintiff's claimed [redacted] damages. Plaintiff and her experts now advance a theory [redacted] Yet, Uber's expert was expressly prohibited from inquiring into Plaintiff's sexual history in her examination. Uber's expert is entitled to clinically evaluate the existence, nature, extent, and potential causes of that claimed impairment.[1] The Court should permit a four-hour supplemental examination to cure this prejudice. Alternatively, Plaintiff should be precluded from presenting expert opinions based on subjects (such as issues [redacted]) that Uber's expert was improperly prevented from exploring.

**Background.** On July 22, Uber provided a proposed stipulation and requested dates for Plaintiff's IME. Ex. A (IME Emails) at 29-31 . For weeks, Plaintiff slow-rolled the negotiation process and sought to impose several unjustifiable restrictions on the exam. *Id.* at 4-29. On August 7, Plaintiff's sister was deposed and testified that [redacted] following her deposition. Ex. B (J.D. Dep.) 149:14-24. On August 10, Plaintiff's counsel represented that they had spoken with Plaintiff and mental health professionals and determined that the IME had to be severely limited because it could be [redacted] and [redacted] Ex. A (IME Emails) at 13-15. As such, counsel demanded: (i) the exam be limited to 3 hours (or 2 hours if Uber sought to litigate the issue); (ii) the examiner not be permitted to inquire into past sexual incidents (except two comments in medical records) or Plaintiff's general sexual history; (iii) Plaintiff be allowed to bring a "support person" and an attorney to the exam; and (iv) the examiner "not ask Plaintiff about the details of her assault." *Id.* at 13-15.

Uber repeatedly asked whether Plaintiff was undergoing an IME with Plaintiff's own expert and indicated that any restrictions on Uber's examination should be applied reciprocally. *Id.* at 8, 10, 12. Plaintiff refused to discuss her experts' examinations, leaving Uber in the dark. *Id.*

---

[1] Plaintiff's argument that a *different* examiner asked a *different* Plaintiff questions about [redacted] under a stipulation with *different* language (*compare* Ex. E ¶ 13 to ECF7607 ¶ 16) is highly misleading. In the examination of WHB823, *Plaintiff* raised [redacted]. The examiner *stopped* her and asked if it was [redacted] Ex. I at 76:6-12. Plaintiff did not [redacted] with Dr. Baker, and Uber would have been lambasted if Dr. Baker had asked any such questions.

at 11. On August 13, Plaintiff filed a case management statement contending that "cover[ing] the details of [the alleged incident]" had "re-traumatize[d] her" and "[t]here is no reason to . . . re-open the same wound, particularly given the traumatizing effect of the deposition." ECF 7020 at 27. On August 17, Plaintiff's counsel represented at a conferral that discussing the alleged incident or any other sexual history at a mental examination would pose a severe risk to Plaintiff's mental and physical well-being. Given these representations, Uber agreed to several proposed limitations to safeguard Plaintiff's health. Unbeknownst to Uber, however, ***at the very same time***, Plaintiff was discussing the very same topics with her own experts in several examinations lasting more than ***20 hours*** over the course of five separate days.

On August 7—***the same day Plaintiff's sister testified*** [redacted] Plaintiff met with psychologist David Feltoon and discussed the details of the alleged incident and [redacted], for an undisclosed number of hours. Ex. D (Feltoon Rep.) at 8-10. On August 16, 17, and 18—***while counsel was representing that these topics threatened Plaintiff's well-being***—Plaintiff met with psychologist Leslie Lebowitz and discussed details of the alleged incident and her sexual history for *18 hours*. Ex. C (Lebowitz Rep.) at 11, 24, 28-31, 36-38. Plaintiff then met with Lebowitz again on August 31 for 2.5 *additional* hours. *Id.* By contrast, Plaintiff refused to respond to some of Uber's expert's questions—e.g., inquiries related to [redacted].

Upon receiving Plaintiff's expert reports and learning about these extensive meetings, Uber raised this concerning series of events. Rather than providing any substantive explanation, Plaintiff's counsel responded by threatening to file a state bar action against Uber's counsel.[2] While Plaintiff now proposes as alternative relief a 45-minute exam, subject to several caveats, that is no compromise. First, it is far too short to be meaningful. Second, a psychiatric exam cannot be pre-scripted. And third, having Plaintiff's lawyer in the room would not be conducive to an open, informative conversation.

**Legal Standard.** "One of the purposes of Rule 35 is to 'level the playing field' between the parties in cases in which a party's physical or mental condition is in issue.'" *Brill v. Napolitano*, No. CV 09-0421-PSG(RCx), 2010 U.S. Dist. LEXIS 148474, at *2 (C.D. Cal. Apr. 26, 2010) (collecting cases). "The language of Rule 35 'does not limit the number of examinations.'" *Terrell v. Harder Mech. Constr., Inc.*, No. C-10-01080 CW (DMR), 2011 U.S. Dist. LEXIS 44861, at *5 (N.D. Cal. Apr. 19, 2011) (quotations omitted). "[T]he number of examinations to which a party may be subjected depends solely upon the circumstances of the underlying request," including if "the first examination was not adequate or complete." *Id.* at *6 (citation omitted). Particularly where "the plaintiff has pre-existing mental conditions, the exam's scope should not be limited, as the defendant needs to determine 'what effects are attributable to' the alleged incident." *Newman v. San Jaoquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 511 (E.D. Cal. 2011) (quotation omitted).

**Uber's Expert Should Be Allowed To Re-Examine Plaintiff.** Plaintiff's willingness and ability to meet with her experts for more than 20 hours while her counsel insisted on restricting Uber's expert by invoking the [redacted] and serious psychological harm did the opposite of creating a "level[] playing field." *Brill*, 2010 U.S. Dist. LEXIS 148474, at *2. The Court should find the stipulation void and allow Uber to reopen its IME to complete a proper examination, which includes allowing Dr. Baker the time and freedom needed to listen and respond to what Plaintiff says—rather than be tied to a pre-approved list of questions.[3]

---

2 This conduct itself violates California Rule of Professional Conduct 3.1.

3 Plaintiff's misguided claim that her experts are better credentialed than Dr. Baker, a Yale-trained forensic psychiatrist and associate dean of UT Southwestern Medical School, are both erroneous and irrelevant. And the tenor of their entire brief is highly insulting to Dr. Baker,

While there must be a "stronger showing of necessity" for a second exam, *Terrell*, 2011 U.S. Dist. LEXIS 44861, at *5, Uber has made that showing here. As Plaintiff's own expert states, "adequate time[] facilitates rapport and fosters unprepared disclosure, reflection, and association." Ex. C (Lebowitz Rep.) at 11. Yet Uber's expert was constricted by tight time limits. Moreover, Plaintiff spoke extensively with her experts about damages theories that she apparently intends to advance at trial regarding her [redacted], *id.* at 31, 35-38, while materially restricting Uber's examiner from asking any related questions. This result directly contradicts the Rules and the policies underlying them.

**Absent Further Examination, The Court Should Strike The Relevant Portions Of Plaintiff's Expert Reports.** Alternatively, if the Court does not permit a supplemental examination, it should strike the portions of Plaintiff's expert reports that address matters Uber was prevented from exploring. *See Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1232 (N.D. Cal. 2019). Uber's expert was restricted from meaningfully exploring Plaintiff's claimed post-incident [redacted] injuries and their potential causes, except as permitted by the stipulation (i.e., limited explicitly to statements in a few documents). *See* ECF 7064 at 2-3. By contrast, Plaintiff's experts rely on that subject matter to support a new damages theory involving [redacted].[4] Fundamental fairness requires that if Uber's expert is not allowed to test that theory through a supplemental examination, Plaintiff must be precluded from presenting expert opinions derived from those subjects.

**Plaintiff's Position:**

Uber's request for a second Rule 35 exam should be denied. Glaringly absent from Uber's brief is any statement from the psychiatrist herself that she needs four more hours with Plaintiff or explaining how she would use that time to "assess[] … any mental or psychiatric disorders or illnesses," ECF 7067 at 1, as opposed to deposing Plaintiff about her "consensual sexual activity" that the Court has already held is not discoverable. ECF 7194. Uber stipulated to the scope of the exam; did so after Plaintiff's counsel were firm that they would not negotiate their own experts' exams; and agreed to terms that essentially copied the rules that applied to previous DMEs in this MDL, and did not prevent Uber's expert from evaluating Plaintiff's claimed damages, including any [redacted] *See* Ex. A; Ex. E. Plaintiff's counsel did not make any misrepresentations in those negotiations. As importantly, Uber accepted the terms it now seeks to modify before any of the alleged "misrepresentations" it falsely attributes to Plaintiff's counsel.

When Uber requested a medical exam of Plaintiff, the parties negotiated the terms of a Rule 35 order authorizing the exam, just as they did for every prior DME in the litigation. *See* Ex. E (Wave 1 stip). Unlike previous trials, Uber tried to negotiate a "tit for tat" where the scope and length of Uber's exam would be contingent on the scope and length of Plaintiff's own experts' exams. As shown in Exhibit A, Plaintiff was clear that comparing a compulsory Rule 35 examination with a voluntary examination was apples and oranges, and that the negotiation needed to start and end with Uber's contentions regarding what its expert needed. Those negotiations resulted in a stipulation and Court order. ECF 7067. Uber was free to litigate the matter before the Court. Instead, the parties compromised along the same basic lines as they had in Wave 1.

---

who has treated hundreds of patients with trauma, is highly respected in her field and never said that Plaintiff was a "liar."

4 Plaintiff argues that this theory is not new because a medical record reflects her statement that [redacted] Obviously, that is not the same thing as saying [redacted] Ex. C (Lebowitz Rep.) at 35.

Uber misrepresents the stipulation to which it agreed. Uber claims that Plaintiff sought to exclude from examination "the alleged incident or any other sexual incident or history" but the stipulation shows that to be false: Uber's expert could "assess[] the extent, nature, and possible cause(s) of any mental or psychiatric disorders or illnesses," including relevant "other sexual incidents." ECF 7067 at 1-3. And while Uber acknowledged in the stipulation that its expert had reviewed the extensive "prior testimony" from Plaintiff concerning the assault, the stipulation prevented her only from "*unreasonably* prob[ing]" into those facts. *Id.* at 3 (emphasis added).

The stipulation did preclude Uber's psychiatrist from inquiring into "general" consensual "sexual history." *Id.* This provision was nothing novel: Uber agreed to *exactly* that term in the Wave 1 DMEs, even though those Plaintiffs made essentially similar claims for damages as the Plaintiff here does. *See* Ex. E at 2 ("[T]he examining provider may not inquire about any Plaintiff's general sexual history."). And this Court has consistently found such history out of bounds for discovery. ECF 7194; *see also Shadix-Marasco v. Austin Reg'l Clinic P.A.*, 2011 WL 2011483, at *6 (W.D. Tex. May 20, 2011) ("[W]hile Dr. Arambula may interview Marasco regarding past sexual abuse or abusive relationships (sexual or nonsexual), Dr. Arambula will not be permitted to question Marasco with regard to Marasco's sexual history in general."). The general-history limitation was particularly necessary here. Uber used Plaintiff's deposition to ask her irrelevant and embarrassing questions. *See* Ex. F at 153-58 (E.g., [redacted]

Nothing in the *QLF* stipulation prevented Uber's expert from inquiring into Plaintiff's current mental state, including any current [redacted]. Uber says that examination into those issues were limited "to statements in a few documents," but that portion of the stipulation (again reflecting the Wave 1 stipulation) covers "Other Sexual Incidents," not any effect the assault had on Plaintiff's current functioning. Uber knew that the stipulation permitted inquiry into current [redacted] because Uber's DME in *WHB 823*, *governed by the same language*, inquired into *exactly* that topic: [redacted] Ex. I at 76:10-25.

Beyond misrepresenting the stipulation, absent from the request is any statement in support by Dr. Baker, the psychiatrist. Dr. Baker conducted her exam on August 21, three weeks ago, and neither she nor Uber ever said a thing about needing more time or otherwise raise after-the-fact concerns with the conditions agreed to in the stipulation. Dr. Baker's 31-page report (Ex. G) does not mention any need to explore consensual sexual history to assess the existence and causes of "psychiatric disorders or illnesses." ECF 7067 at 1. Nor does she support Uber's motion with a declaration. Her silence speaks volumes. *See Kaveh v. Starbucks Corp.*, 2025 WL 2822406, at *1 (D. Utah Oct. 3, 2025) (warning against "the use of requests for mental examinations as a tool for harassment, intimidation, or delay").[5]

Uber never explains *why* its psychiatrist needs *four hours* of additional examination concerning Plaintiff's pre-assault, consensual sexual activity. Rule 35 exams are not free-floating fact discovery; they are expert work that must be justified by expert needs: "The Rule 35 exam and the retained expert's opinions are inextricably intertwined." *Minnard v. Rotech Healthcare Inc.*, 2008 WL 150502, at *2 (E.D. Cal. Jan. 15, 2008). Dr. Baker opines that: (1) Plaintiff suffers from certain conditions; (2) Plaintiff cannot be diagnosed with other conditions; (3) Plaintiff had pre-existing psychiatric conditions; and (4) Plaintiff is a liar with "incentive for potential financial

[5] Uber misrepresents the DME. Uber says that Plaintiff "refused to respond to "inquiries related to …[redacted] That is false and irrelevant. It is false because Plaintiff's answer to questions about a message concerning [redacted] was "I don't remember that," not a refusal to answer. And irrelevant because this dispute is not about [redacted]

gain." Ex. G at 3. How any of this requires rooting through Plaintiff's consensual sex life is unexplained. So, what does Uber want this time to do? Assert more inconsistencies in Plaintiff's statements? That's not the work of a psychiatrist. To the extent Uber seeks further support for Dr. Baker's inadmissible conclusion that Plaintiff is a liar looking for a "payday," Uber seeks leave essentially to take another deposition of Plaintiff, not a Rule 35 expert exam.

Putting Dr. Baker aside, Uber claims that "new" facts justify reconsidering the Court order adopting the stipulation, but Plaintiff's [redacted] are old facts, not new facts, as medical records in Uber's possession confirm. Ex. H [redacted]). Uber (and Dr. Baker) had access to all of those records, as well as Plaintiff's text messages, deposition testimony, and trial testimony. It's also pretty obvious that a sexual assault might affect a person's [redacted], especially considering testimony in previous trials. And, Uber still has two hours of deposition time remaining with Plaintiff to ask any relevant questions.

Uber argues that the stipulation was based on misrepresentations concerning Plaintiff's mental condition after her deposition. The accusation is false. Plaintiff's sister testified on August 7 that Plaintiff was [redacted] Ex. B at 149-50. After this testimony, facts about which Plaintiff's counsel were previously unaware, counsel talked to their client and investigated how she could proceed with a DME. Ultimately, they were able to stand down on more restrictive terms they had proposed for the DME. Counsel's conduct was entirely above-board, and Uber's false accusations are inappropriate. But more importantly for this dispute, Uber agreed on the basic framework of the stipulation (based on the Wave 1 stipulation), including the exclusion of "general sexual history," *before* Plaintiff's sister was deposed. *See* Ex. A at p. 25 (8/3 M. Vives Email). Uber's claims of being misled are not supported by the record.

Uber compares its Rule 35 examination with the voluntary examinations conducted by Plaintiff's experts. But Plaintiff was firm during negotiations that the two types of exams were not comparable. Uber acceded to that position, which is why the stipulation discusses only the scope of Uber's examination not discuss the scope of any potential examination by Plaintiff's experts. (And why the same terms governed the Wave 1 examinations.) Moreover, Uber's acceptance of the exclusion of "general sexual history" preceded any discussion of Plaintiff's voluntary exams. Even if the parties' agreement on this point were up for reconsideration, Plaintiff was right: a compulsory Rule 35 exam is not the same as a voluntary examination, for obvious reasons.

Instead of justifying a second Rule 35 exam on its own merits, Uber suggests that Plaintiffs' experts inappropriately considered Plaintiff's "general sexual history." For several reasons, this is wrong. First, the stipulation did not limit Plaintiffs' experts at all, and the Court should not allow Uber to shirk its own agreement. Second, while Dr. Baker is a psychiatrist, Drs. Feltoon and Lebowitz are psychologists who conducted psychological testing and assessments (work Dr. Baker is not qualified to do). It makes no sense to compare different kinds of experts, and different experts doing different work does not make any "playing field" unlevel. Third, Dr. Feltoon's and Dr. Lebowitz's reports gives no indication that they explored the kind of "general sexual history" that Uber evidently thinks that Dr. Baker should have asked about (Uber is vague about what exactly it wants Dr. Baker to explore, and Dr. Baker herself has said nothing). Rather, the cited portions of Dr. Lebowitz's report summarize Plaintiff's recounting of her background and upbringing (topics that *were* covered in the DME), and then make conclusions about her current condition (which the stipulation in no way limited Dr. Baker from exploring). *See* Ex. C at 24, 35-36.

To be clear: the Court should deny Uber's request for a second exam. If the Court does order an exam, Dr. Baker should identify the specific questions as to which, in her professional judgment, she needs follow-up, the examination should be limited to 45 minutes, and Plaintiff's attorney should be present to ensure the exam is not what it appears to be—a tool for harassment.

**FILER'S ATTESTATION**

I, Michael Vives, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Michael Vives*
Michael Vives