[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**

This Document Relates to:

*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al*, Case No. 3:24-CV-08783

No. 3:23-md-03084-CRB

**PLAINTIFF'S NOTICE OF MOTION AND OMNIBUS MOTIONS IN LIMINE**

Judge: Honorable Charles R. Breyer

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JANE DOE QLF 0001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

No. 1:26-cv-01694-CRB

Judge: Hon. Charles R. Breyer
Courtroom: 501

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 25, 2026, at 1 p.m., before the Honorable Charles R. Breyer, Plaintiff will and hereby does, move for an order granting Plaintiff's motions in limine as described herein.

## TABLE OF CONTENTS

ARGUMENT ........ 1
I. Plaintiff's Motion in Limine No. 1: Irrelevant and unduly prejudicial aspects of Plaintiff's personal life ........ 1
A. Plaintiff's [redacted] ........ 1
B. Plaintiff's [redacted] ........ 3
C. Plaintiff's [redacted] ........ 4
D. Plaintiff's [redacted] ........ 4
E. Issues related to [redacted] ........ 5
F. Irrelevant portions of [redacted] ........ 6
G. Irrelevant [redacted] ........ 6
H. Plaintiff's [redacted] ........ 7
I. Plaintiff's references [redacted] ........ 8
II. Plaintiff's Motion in Limine No. 2: Speculation regarding the basis for Victor Le's criminal conviction ........ 9
III. Plaintiff's Motion in Limine No. 3 : Argument challenging the assault using [redacted] ........ 11
IV. Plaintiff's Motion in Limine No. 4: Evidence that Victor Le was fined $500 ........ 12
V. Plaintiff's Motion in Limine No. 5: Argument or evidence that Plaintiff [redacted] ........ 12
VI. Plaintiff's Motion in Limine No. 6: Settlement discussions, attempts to settle, and Plaintiff's statements regarding a possible settlement ........ 13
VII. Plaintiff's Motion in Limine No. 7: Certain evidence related to Plaintiff's irrelevant interactions with Lyft ........ 16
VIII. Plaintiff's Motion in Limine No. 8: Argument or evidence that Non-Party Checkr is at fault for Plaintiff's injuries or that Checkr is a good, reputable company ........ 17
IX. Plaintiff's Motion in Limine No. 9: Irrelevant safety features and initiatives ........ 19
X. Plaintiff's Motion in Limine No. 10: Uber's safety reports ........ 19
XI. Plaintiff's Motion in Limine No. 11: Argument or evidence that the sexual assault and sexual misconduct incident report raw data that Uber has produced for 2017-2024 includes incidents that are "invalid" or have been recategorized ........ 20
XII. Plaintiff's Motion in Limine No. 12: Evidence regarding Uber's 2025 sexual assault and misconduct data, including alleged "invalid" reports ........ 22
XIII. Plaintiff's Motion in Limine No. 13: Hearsay from non-profit organizations, especially ones that refused to be deposed ........ 23
CONCLUSION ........ 25

## TABLE OF AUTHORITIES

### CASES

*Ansari v. Jimenez*,
176 F.4th 494 (6th Cir. 2026)........................................ 12
*Handley v. Werner Enters., Inc.*,
2022 WL 2194661 (M.D. Ga. June 17, 2022) ........................................ 9
*Harney v. Mersk A/S*,
2026 WL 1333406 (S. D. Tex. May 13, 2026) ........................................ 18
*Le v. U.S.*,
138 F. 4th 264 ........................................ 18
*Lyondell Chem. Co. v. Occidental Chem. Corp*.,
608 F.3d 284 (5th Cir. 2010)........................................ 13, 14
*Manoukian v. BMW of N. Am., LLC*,
2023 WL 2558397 (C.D. Cal. Feb. 9, 2023)........................................ 5
*Miyar v. SFR Owner ML Borrower LLC*,
2026 WL 2444381 (N.D. Tex. Aug. 3, 2026)........................................ 17
*Navarro v. City of Fontana*,
2011 WL 13124691 (C.D. Cal. Mar. 24, 2011)........................................ 10
*Ramada Dev. Co. v. Rauch*,
644 F.2d 1097 (5th Cir. 1981)........................................ 13
*S.M. v. J.K.*,
262 F.3d 914 (9th Cir. 2001)........................................ 2
*Simon v. State*,
374 S.W.3d 550 (Tex. App. 2012)........................................ 9
*Tanner v. U.S.*,
483 U.S. 107 (1987)........................................ 9
*U.S. v. Carmichael*,
373 F. Supp. 2d 1293 (M.D. Ala. 2005) ........................................ 11
*U.S. v. Davis*,
2015 WL 519455 (C.D. Cal. Feb. 5, 2015)........................................ 1
*U.S. v. Veal*,
23 F.3d 985 (6th Cir. 1994)........................................ 11
*Withers v. Schneider Nat'l Carriers, Inc*.,
13 F. Supp. 3d 686 (E.D. Tex. 2014) ........................................ 17

### STATUTES

Tex. Civ. Prac. & Rem. Code §§ 33.004(a), (d) ........................................ 17

### RULES

Fed. R. Evid. 401–402 ........................................ 16, 22
Fed. R. Evid. 403 ........................................ 1, 2, 5
Fed. R. Evid. 404, 412, 608 ........................................ 1, 4, 5

Fed. R. Evid. 408(a) .................................................. 13, 14, 15
Fed. R. Evid. 412(a) .................................................. *passim*
Fed. R. Evid. 602 .................................................. *passim*
Fed. R. Evid. 608(b) .................................................. 5
Fed. R. Evid. 701 .................................................. 3
Fed. R. Evid. 703 .................................................. 4
Fed. R. Evid. 801–802 .................................................. 23
Fed. R. Evid. 802 .................................................. 4
Rules 402 and 403, Rule 412 .................................................. 1, 4

## ARGUMENT

### I. Plaintiff's Motion in Limine No. 1: Irrelevant and unduly prejudicial aspects of Plaintiff's personal life

During discovery, Uber probed Plaintiff's [redacted]. These issues are irrelevant. They also create a significant danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403. This evidence would invite the jury to judge Plaintiff based on sensitive and inflammatory aspects of her private life rather than the facts of this sexual assault and would require collateral disputes concerning events that have no meaningful connection to this case. It also risks impermissible character and propensity reasoning, sexual stereotyping, and credibility attacks unrelated to truthfulness. *See* Fed. R. Evid. 404, 412, 608.

#### A. Plaintiff's [redacted]

The Court should exclude evidence concerning Plaintiff's [redacted] This includes, but is not limited to, numerous social-media communications and medical-record entries. *See* Ex. 1, [redacted]

In addition to the limitations of Rules 402 and 403, Rule 412 broadly prohibits "evidence offered to prove that a victim engaged in other sexual behavior." *See* Fed. R. Evid. 412(a). This rule protects sexual assault survivors "against the invasion of privacy, potential embarrassment and sexual stereotyping." Fed. R. Evid. 412, advisory comm. notes (principal purpose is "to safeguard the alleged victim"). The term "'[s]exual behavior' is construed broadly, both in subject matter and temporal scope." *U.S. v. Davis*, 2015 WL 519455, at *3 (C.D. Cal. Feb. 5, 2015). "Past sexual behavior connotes all activities that involve actual physical conduct, i.e. sexual intercourse and sexual contact, or that imply sexual intercourse or sexual contact," including, for example, "use of

contraceptives," "birth of an illegitimate child," or "venereal disease." Fed. R. Evid. 412, advisory committee notes.

To introduce evidence of sexual behavior, the proponent must meet a heightened standard showing the "probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). The Rule also imposes procedural requirements — a written motion, filed sufficiently in advance of trial, that specifically describes the evidence and states its intended purpose. Fed. R. Evid. 412(c); *see also S.M. v. J.K.*, 262 F.3d 914, 919 (9th Cir. 2001), amended, 315 F.3d 1058 (9th Cir. 2003) (affirming exclusion for failure to comply with Rule 412's procedural requirements).

The identified evidence falls squarely within Rule 412. At Plaintiff's deposition, Uber forced [redacted]. *See* Ex. 2, [redacted] None of this evidence makes it more or less likely that Le sexually assaulted Plaintiff during an Uber trip. [redacted]

The evidence also has no legitimate bearing on Plaintiff's damages. [redacted] cannot be used as a proxy for psychological health, susceptibility to trauma, or the seriousness of harm caused by an assault.

Finally, the evidence invites precisely the embarrassment, victim-blaming, and sexual stereotyping that Rule 412 is meant to prevent. Its introduction would divert the trial into collateral disputes over [redacted] while encouraging the jury to assess her credibility or damages through impermissible character reasoning. *See* Fed. R. Evid. 403,

404. The Court should exclude the evidence. To the extent an otherwise admissible medical record contains such information, any sexual-history references should be redacted.

**B. Plaintiff's [redacted]**

Plaintiff moves to exclude testimony or argument concerning her [redacted] *See* Ex.3, [redacted]

[redacted] lacks personal knowledge to opine on what occurred during or after Plaintiff's Uber ride. Fed. R. Evid. 602. His speculation is also inadmissible lay opinion because it is not rationally based on any perception of the assault and would not assist the jury in determining what occurred. Fed. R. Evid. 701. More fundamentally, [redacted] Such reasoning constitutes impermissible character and propensity evidence and falls squarely within Rule 412's prohibition against evidence offered to prove a victim's other sexual behavior or sexual predisposition. *See* Fed. R. Evid. 404(a), 412(a).

[redacted] and its judgment of Plaintiff's private relationships rather than the evidence concerning the assault. Any marginal probative value is substantially outweighed by the dangers of unfair prejudice, confusion,

misleading the jury, and a collateral trial concerning Plaintiff's prior relationship and sexual history.

**C. Plaintiff's [redacted]**

The Court should exclude evidence concerning [redacted]

None of this evidence makes it more or less probable that Plaintiff was sexually assaulted by an Uber driver, that Uber breached a duty owed to Plaintiff, or that the assault caused Plaintiff's injuries. Plaintiff testified only that [redacted] *See* Fed. R. Evid. 404.

The evidence also consists largely of out-of-court statements by family members and treatment providers and is inadmissible hearsay. *See* Fed. R. Evid. 802. An expert's review of these materials would not independently make them admissible; otherwise-inadmissible facts underlying an opinion may be disclosed to the jury only when their value in evaluating the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. Here, the opposite is true: any marginal relevance is substantially outweighed by the danger of unfair prejudice, [redacted]

**D. Plaintiff's [redacted]**

The Court should exclude evidence concerning Plaintiff's [redacted] These issues have no bearing on any issue in this case. In particular, any suggestion that a [redacted] provides evidence of a motive to fabricate a sexual assault would be precluded by Rules 402 and 403, especially considering that the correspondence postdated the assault and the report of the

assault to the police. *See Manoukian v. BMW of N. Am., LLC*, 2023 WL 2558397, at *2 (C.D. Cal. Feb. 9, 2023) (rejecting argument that the "Plaintiff's financial condition" was admissible to prove "pretext" and "to impeach Plaintiff's credibility," and explaining that financial condition is irrelevant and that the introduction of evidence regarding Plaintiff's 'motive' in bringing this lawsuit is likely to be substantially prejudicial, confuse the issues, and/or mislead the jury"). Nor does Plaintiff's [redacted] bear on her character for truthfulness or provide a proper basis for impeachment. *See* Fed. R. Evid. 608(b). Introducing these matters would trigger a collateral dispute over [redacted] substantially outweighs any conceivable probative value. Fed. R. Evid. 403.

**E. Issues related to [redacted]**

The Court should exclude evidence concerning Plaintiff's [redacted].

As above, these collateral matters have no bearing on any issue in this case. Moreover, [redacted] *See* Ex. 4 [redacted]. Uber should not be permitted to use [redacted] Such reasoning would constitute impermissible character evidence and has no proper bearing on Plaintiff's credibility. *See* Fed. R. Evid. 404(a), 608(b). Litigating these accusations would require testimony about [redacted] That collateral inquiry would serve only to inflame the jury and portray Plaintiff

negatively on matters having no connection to the assault.

**F. Irrelevant portions of [redacted]**

Plaintiff moves to exclude evidence concerning her [redacted]

Uber questioned Plaintiff extensively at her deposition about [redacted] Its intimate details do not establish an alternative cause of Plaintiff's damages and Defendants should not be permitted to characterize it as causally responsible for her injuries without any evidence establishing that connection. Moreover, [redacted] triggering the protections and procedural requirements of Rule 412.

These isolated medical events neither overlap with Plaintiff's injuries here nor provide a supported alternative cause for them. Their admission would instead invite speculation about [redacted]

**G. Irrelevant [redacted]**

Plaintiff moves to exclude evidence concerning her [redacted]

[redacted]

These prescriptions do not make it more or less probable that Victor Le sexually assaulted Plaintiff, that Uber is liable, or that the assault caused Plaintiff's claimed damages. A pharmacy record establishes, at most, that a medication was dispensed; without appropriate medical testimony, it does not establish the diagnosis, symptoms, treatment rationale, or any relationship to Plaintiff's claimed injuries. Plaintiff testified that [redacted] Nothing in that testimony connects the medication to the assault or Plaintiff's damages.

The records would instead invite speculation about [redacted] is barred by Rule 412 absent satisfaction of its substantive and procedural requirements. Any inquiry into these prescriptions would [redacted] while requiring Plaintiff to explain [redacted] producing substantial prejudice and confusion without assisting the jury on any disputed issue.

**H. Plaintiff's [redacted]**

Plaintiff moves to exclude evidence concerning her [redacted] Any such argument would constitute impermissible character and propensity evidence and is not proper impeachment. *See* Fed. R. Evid. 404(a)–(b), 608(b). Introducing this evidence would require a collateral examination

of [redacted] merely to invite the improper inference that [redacted]

**I. Plaintiff's references** [redacted]

Plaintiff moves to exclude evidence or argument suggesting that an [redacted]

Uber could rely on this evidence only by distorting the testimony about it. When asked whether she [redacted]

The same is true of [redacted] *See* Ex. 5, [redacted]

Dr. Baker nevertheless relies on these unrelated facts to opine that [redacted]. That inference is speculative and misleading. A past interest in [redacted] does not establish a propensity to exaggerate psychiatric symptoms, and the fact that [redacted]

[redacted]

Permitting Defendants to characterize Plaintiff as [redacted] would invite the jury to make an unsupported character inference rather than evaluate the evidence concerning her actual symptoms. It would also create a substantial danger of misleading the jury and unfairly prejudicing Plaintiff by transforming unrelated aspects of her background and [redacted] into purported evidence of dishonesty or symptom exaggeration.

## II. <u>Plaintiff's Motion in Limine No. 2: Speculation regarding the basis for Victor Le's criminal conviction</u>

### A. General speculation regarding the basis for Le's conviction

The Court should prohibit Uber from offering any argument or speculation that Mr. Le's conviction resulted from a procedural error, inadequate or ineffective representation, the manner in which Le's defense was presented, the fact that he absconded during trial, or any other reason besides the jury's determination that the prosecution proved Le's guilt beyond a reasonable doubt.

The criminal jury returned a guilty verdict against Le. Neither Uber nor its witnesses have personal knowledge of the jury's deliberations or why individual jurors voted to convict. Any attempt to attribute that verdict to some other supposed explanation would therefore be speculation unsupported by personal knowledge. *See* Fed. R. Evid. 602. Moreover, Rule 606(b) generally forecloses inquiry into the deliberations and mental processes underlying a jury's verdict, reflecting the "substantial policy considerations" favoring protection of jury deliberations from post-verdict scrutiny and preserving the finality of verdicts. *See Tanner v. U.S.*, 483 U.S. 107, 117–21 (1987).

The law presumes that jurors follow the court's instructions. *See, e.g., Simon v. State*, 374 S.W.3d 550, 552 (Tex. App. 2012). Courts therefore reject attempts to undermine a verdict based on speculation that jurors decided the case for some other, improper reason. *See, e.g., Handley v. Werner Enters., Inc.*, 2022 WL 2194661, at *3–4 (M.D. Ga. June 17, 2022) (rejecting argument premised on speculation that jury disregarded its instructions and improperly based its verdict on

improper information). Here, the verdict establishes that the jury found Le guilty beyond a reasonable doubt, and that verdict was affirmed on appeal. Defendants should not be permitted to invite this jury to disregard or discount that verdict based on conjecture that Le was convicted for some other reason.

Allowing such argument would improperly convert this civil trial into a time-consuming collateral review of Le's criminal prosecution. That inquiry would distract from the issues this jury must decide and create a substantial danger of confusing the issues and misleading the jury.

**B. Le's ethnicity or nationality**

For the same reasons, Uber should not be permitted to suggest that Le's ethnicity or nationality provides an alternative explanation for his conviction. Suggesting that the criminal jury convicted Le because of ethnic, national-origin, or anti-immigrant bias would be unsupported speculation about the jury's deliberations while simultaneously injecting those same prejudicial considerations into this trial. *See* Fed. R. Evid. 602, 403. Courts accordingly exclude nationality and immigration-related evidence where its limited relevance is substantially outweighed by the danger of prejudice. *See, e.g., Navarro v. City of Fontana*, 2011 WL 13124691, at *2 (C.D. Cal. Mar. 24, 2011) (excluding evidence that plaintiff was a legal permanent resident and citizen of Mexico).

**C. Alleged flaws in the police investigation**

Uber likewise should not be permitted to attack the conviction by speculating that law enforcement conducted a deficient investigation plagued by "tunnel vision" or inept and incomplete investigatory efforts. That is particularly true where prosecutors deemed the evidence developed through that investigation sufficient to bring charges and the jury found that evidence sufficient to find Mr. Le guilty beyond a reasonable doubt. If permitted, it appears Uber and its experts will, for example, [redacted] But the relevant evidence for this trial is what witnesses actually know and would testify to—[redacted]

[redacted] Such speculation lacks personal knowledge or a sufficient factual basis and would invite the jury to decide this case based on evidence that does not exist.

Courts recognize this distinction. "In most cases, [] evidence questioning the adequacy of various aspects of the government's investigation itself—as opposed to the adequacy of the evidence gathered as a result of that investigation—is either irrelevant or of very little probative value, as it improperly shifts the jury's focus from the accusations against the defendant to accusations against the police." *U.S. v. Carmichael*, 373 F. Supp. 2d 1293, 1297 (M.D. Ala. 2005) (collecting cases); *see also U.S. v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (affirming exclusion of evidence offered to show that the government's investigation was "sloppy" because the jury was not called upon to determine whether the investigation was "good or bad").

Just so here. The adequacy of the police investigation is an irrelevant collateral issue. Law enforcement is not a party, and this jury is not being asked to determine whether police conducted a perfect investigation. More importantly, the investigation resulted in a criminal prosecution in which a jury found Le guilty of sexually assaulting Plaintiff beyond a reasonable doubt, and that conviction was affirmed on appeal. Uber should not be permitted to collaterally attack that result by inviting this jury to speculate that different investigative choices might have produced different evidence or a different outcome. Litigating what investigators could or should have done would create a collateral mini-trial concerning investigative decisions and hypothetical evidence, creating a substantial danger of confusing the issues, misleading the jury, and wasting time.

## III. Plaintiff's Motion in Limine No. 3 : Argument challenging the assault using [redacted]

Uber should not be permitted to deny that the sexual assault occurred or attack the conviction by relying on [redacted] *See* Ex. 6 [redacted]

[redacted] *See* Ex. 7. [redacted]

When defending itself in this lawsuit, however, [redacted] Indeed, when evaluating an underlying criminal proceeding in a subsequent civil action, evidence "not presented in the criminal trial would be irrelevant." *Ansari v. Jimenez*, 176 F.4th 494, 505 (6th Cir. 2026). Any such attempt by Uber to introduce such irrelevant evidence would require a mini-trial over Uber's subpoena response, what the prosecution received, and how undisclosed materials might hypothetically have affected the criminal trial. That inquiry would confuse the issues, mislead the jury, waste time, and divert attention from Uber's conduct and Plaintiff's damages.

## IV. Plaintiff's Motion in Limine No. 4: Evidence that Victor Le was fined $500

For sexually assaulting Plaintiff, Victor Le was sentenced to 11 years in prison and fined $500. The amount of the fine has no tendency to prove Uber's liability, whether the assault occurred, causation, or the nature and extent of Plaintiff's injuries. The fine was imposed under a criminal framework serving purposes distinct from compensating Plaintiff for her physical, psychological, and economic injuries and provides no legitimate measure of the seriousness of the assault or the harm it caused. Reference to the amount would create an arbitrary and misleading damages anchor and could falsely suggest that Plaintiff's assault and resulting injuries were worth only $500 or were otherwise trivial.

## V. Plaintiff's Motion in Limine No. 5: Argument or evidence that Plaintiff [redacted].

Plaintiff moves to exclude argument or evidence that she [redacted]

[redacted] nothing material to the jury's consideration of her condition during the subsequent Uber trip. [redacted] does not make it more or less probable that Victor Le sexually assaulted her, that Uber is liable for the assault, or that the assault caused Plaintiff's claimed injuries.

The allegation instead presents a substantial danger that the jury will condemn Plaintiff for unrelated conduct and allow that judgment to influence its consideration of the assault. Uber should not be permitted to portray Plaintiff as reckless, irresponsible, or undeserving of protection based on hypothesized conduct that did not cause the assault and is not at issue in this case.

## VI. Plaintiff's Motion in Limine No. 6: Settlement discussions, attempts to settle, and Plaintiff's statements regarding a possible settlement

Plaintiff moves to exclude any evidence or argument concerning settlement discussions, attempts to settle this action, proposed settlement amounts, or Plaintiff's statements concerning a possible settlement or anticipated recovery, including any settlement offers, demands, proposed terms or amounts, communications between the parties or their counsel, and [redacted] The Court excluded settlement evidence in *Dean* and should do so here as well. *See* ECF No. 4941.

Rule 408 prohibits evidence of compromise offers and "conduct or statements made during compromise negotiations" when offered to prove or disprove the validity or amount of a disputed claim or to impeach through inconsistency or contradiction. Fed. R. Evid. 408(a). The Rule protects statements made during compromise negotiations because it "is designed to encourage settlements by fostering free and full discussion of the issues." *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981). Its protection extends to "legal conclusions, factual statements, internal memoranda, and the work of non-lawyers and lawyers alike" when the communications were intended to facilitate compromise. *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010).

Rule 408's prohibition cannot be avoided by characterizing settlement-related evidence as proof of Plaintiff's financial motivation. Using settlement negotiations or statements made during

those negotiations to suggest that Plaintiff exaggerated her injuries because she hoped to obtain compensation would use the evidence for the very purpose Rule 408 prohibits: to undermine the validity or amount of her claims. Likewise, Defendants should not be permitted to disclose the substance or status of compromise negotiations merely to portray Plaintiff's pursuit of compensation as improper or to attack her credibility. *See* Fed. R. Evid. 408(a); *Lyondell,* 608 F.3d at 295.

And Uber should not be permitted to evade Rule 408 by offering settlement-related statements through Plaintiff's deposition, private messages, counseling records, or other third-party communications. Uber pressed Plaintiff repeatedly at her deposition [redacted] *See* Fed. R. Evid. 408(a); *Lyondell*, 608 F.3d at 295. Disclosure of a specific anticipated amount would also improperly anchor the jury to a figure generated in the settlement context, particularly where Plaintiff seeks a different amount at trial.

Uber's expert reports confirm Defendants intend to use Plaintiff's settlement-related and financial statements for precisely that prejudicial purpose. [redacted] This is improper under Rule 408.

Admission of this evidence would further require collateral litigation concerning the history and status of negotiations, the meaning and source of particular figures, Plaintiff's evolving objectives, and why the case did not settle—precisely the inquiry Rule 408 seeks to prevent. The resulting inquiry into the parties' negotiations, the origin of particular figures, and Plaintiff's expectations would undermine Rule 408's settlement policy and risk anchoring the jury to amounts never offered as evidence of damages.

Beyond Rule 408, Plaintiff's general hopes about how she might use a potential recovery are independently excludable because they are irrelevant and unduly prejudicial. A litigant's recognition [redacted] does not make the underlying assault, Uber's liability, or the nature and extent of her injuries more or less probable. Nor does [redacted] establish that Plaintiff fabricated or exaggerated her injuries. Every plaintiff seeking damages has a financial interest in the outcome of the litigation; allowing ordinary circumstance to support an inference of symptom exaggeration would improperly convert the existence of a damages claim into evidence against the claimant.

The danger is particularly acute here because, again, [redacted] Any marginal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

This is especially true of the repeated characterization that Plaintiff was [redacted] Repetition of that inflammatory characterization carries little legitimate probative value and presents a substantial danger that the jury will view Plaintiff negatively merely because she seeks monetary compensation through this lawsuit. Uber remains free to challenge the nature, extent, and causation of Plaintiff's injuries through admissible evidence; they should not be permitted to do so by suggesting that her pursuit

of compensation itself demonstrates exaggeration.

## VII. Plaintiff's Motion in Limine No. 7: Certain evidence related to Plaintiff's irrelevant interactions with Lyft

### A. Lyft [redacted]

Plaintiff moves to exclude evidence concerning [redacted] Even if those problems were solved, the Lyft records are inadmissible hearsay.

Moreover, Plaintiff's testimony provided legitimate explanations for the information appearing in Lyft's records. She explained that [redacted] Nothing in this testimony supports a claim of [redacted]

### B. [redacted]

Plaintiff moves to exclude evidence concerning [redacted] *See* Fed. R. Evid. 401–402. They also constitute unsupported lay opinions and, if offered for their truth, hearsay without any established exception. *See* Fed. R. Evid. 602, 701,

801–802. Any minimal probative value is substantially outweighed by the danger of unfair prejudice, jury confusion, and a distracting collateral dispute.

**C.** [redacted]

Plaintiff moves to exclude evidence or argument that [redacted] *See* Ex. 8, [redacted] has no tendency to prove whether Uber acted negligently, whether its conduct caused Plaintiff's injuries, or the extent of her damages. Plaintiff's failure to respond also does not establish that she ignored a safety concern, believed such features were unnecessary, or would have responded differently under the circumstances of the subject assault. Any minimal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and inviting a collateral comparison between Lyft's 2026 technology and Uber's safety practices in 2020.

## VIII. Plaintiff's Motion in Limine No. 8: Argument or evidence that Non-Party Checkr is at fault for Plaintiff's injuries or that Checkr is a good, reputable company

Checkr is Uber's background check vendor and not a party here. Plaintiff moves to exclude any evidence or argument that Checkr caused or contributed to Plaintiff's injuries or that Checkr is a "good," "reputable," or otherwise trustworthy company. Uber cannot shift responsibility to an undesignated non-party, and generalized praise of Checkr is irrelevant to whether Uber exercised reasonable care in executing its responsibility to adequately screen Victor Le.

Texas law requires a defendant seeking to allocate fault to a non-party to move for leave to designate that person as a responsible third party at least 60 days before trial, and precludes doing so where the statute of limitations for a claim against that non-party has run. Tex. Civ. Prac. & Rem. Code §§ 33.004(a), (d). The Texas statute applies in federal court. *See Withers v. Schneider Nat'l Carriers, Inc.*, 13 F. Supp. 3d 686, 688–91 (E.D. Tex. 2014) (applying § 33.004 in federal court and holding defendant cannot raise third party's fault and apportion liability where defendant failed to comply with § 33.004(d)); *see also Miyar v. SFR Owner ML Borrower LLC*, 2026 WL

2444381, at *1 (N.D. Tex. Aug. 3, 2026); *Harney v. Mersk A/S*, 2026 WL 1333406, at *4 (S. D. Tex. May 13, 2026) (applying the rule in federal court and noting "the Fifth Circuit's treatment of Texas's entire proportionate responsibility scheme … including Section 33.0003 … as 'Texas substantive law'") (quoting *Le v. U.S.*, 138 F. 4th 264, 273-74 & nn. 21, 33-35 (5th Cir. 2025)).

Uber never filed the motion required by Texas law, and the statute of limitations for a claim against Checkr has long since expired. And even if an Answer could be sufficient to satisfy Uber's obligations under Texas law, Uber's Answer here alleges only generic comparative fault by unidentified "parties, persons and entities," and its Texas disclosures did not identify Checkr as a potentially responsible third party. *See* Ex. 9, Tex. Disclosures at 5; Answer, ECF No. 3799 at 7.

The evidence also shows that driver screening was Uber's responsibility. [redacted] *See* Ex. 10, [redacted] *See* Ex. 11, [redacted]. Uber may not avoid responsibility for its own choices by pointing to the contractor it selected to perform work on its behalf.

Further, generalized testimony that Checkr is reputable, accredited, experienced, or an "expert" is likewise irrelevant. Checkr's reputation does not establish that the particular screening package Uber selected was adequate, that the searches actually performed for Le were sufficient, or that Uber properly evaluated the resulting report. Nor is Checkr's character an issue for the jury.

Such evidence would instead invite an improper inference that the screening must have been adequate merely because Uber selected a purportedly "reputable" vendor.

## IX. Plaintiff's Motion in Limine No. 9: Irrelevant safety features and initiatives

At the *Dean* trial, the parties spent significant time putting on evidence and making argument about various safety features and initiatives (RideCheck, ID check, trip sharing, call button, audio recording, S-RAD, etc.). But Plaintiff was a "guest rider," i.e., not the account-holder that ordered the ride (a use of Uber that is both common and encouraged by the company). None of Uber's safety features could possibly protect Plaintiff or passengers like her because they do not have Uber accounts, or, even if they do, their account is not attached to the ride. So, evidence of those features has minimal if any relevance as to whether Uber was negligent in allowing this ride to happen or whether Uber's conduct was sufficiently egregious to warrant punitive damages. At the same time, introduction of such evidence guarantees a sideshow on whether any given safety feature actually works to deter sexual assault incidents. This evidence should be excluded.

The testimony of [redacted] *See* Ex. 12, [redacted] *See* Ex. 13, [redacted]. None of this is relevant to Plaintiff's case.

## X. Plaintiff's Motion in Limine No. 10: Uber's safety reports

Another piece of evidence that took up substantial time at the *Dean* trial and should not come in here is Uber's safety reports (all but one of which were published after Plaintiff was assaulted). To start, the safety reports are hearsay when offered by Uber and cannot come in for their truth. More importantly, the safety reports have virtually no, if any, relevance to this trial. They are marketing pieces, but not ones that Plaintiff points to as evidence of knowledge and negligence (in contrast to, for example, marketing to people to use Uber to send their intoxicated

friend's home).

Any marginal relevance Uber could articulate would be far outweighed by the waste of time the safety reports require. The Court saw in *Dean* how many witnesses and time it took to argue about whether the safety report disclosed the right number of assaults or omitted many thousands, whether the safety reports should have included other warnings (like risk factors), and why Uber designed the safety reports the way it did. To the extent the Court admits hearsay statements from non-profits praising the safety reports, the evidence invites a further side-show about what motivated those non-profits and what information Uber shared with them.

Of course, Uber may introduce the underlying substance of the reports (the number of assaults on the platform) through evidence, and Plaintiffs may rebut. But doing so does not require wasting the jury's time on the reports themselves or permitting Uber to introduce hearsay the company created to show how reasonable it is.

## XI. <u>Plaintiff's Motion in Limine No. 11: Argument or evidence that the sexual assault and sexual misconduct incident report raw data that Uber has produced for 2017-2024 includes incidents that are "invalid" or have been recategorized</u>

Plaintiff moves to preclude Uber from arguing that any individual sexual assault or sexual misconduct incident included in its produced raw data is "invalid," no longer falls within the Sexual Misconduct and Violence Taxonomy, or has been recategorized to a different category within that Taxonomy. In [redacted]. During the *Dean* trial, however, Uber challenged the validity of its own data, claiming that some unknown number of incidents were no longer "valid" and that Uber had recategorized other unidentified incidents. *See* <u>Ex. 14</u>, *Dean* Trial Trans. at 1596-1598, 3535.

Following the *Dean* trial, Plaintiff sought updated discovery from Uber. [redacted]

[redacted] The changes on Uber's summary chart necessarily mean that Uber changed the raw data it used to compile it. But Uber has refused to produce the updated raw data. Without it, [redacted] Uber cannot withhold the information needed to test its new assertions and then use those assertions to undermine the data on which Plaintiff's experts relied. This is a real threat: Plaintiff has attempted to eliminate the potential prejudice this creates without more discovery by asking Uber to agree that it would not challenge Plaintiff's experts for relying on the raw data Uber originally produced. Uber refused. Instead, Uber's counsel reaffirmed that Uber reserves the right to challenge Plaintiff's experts on this basis that their analyses rely on outdated data, or that any report may have been recategorized or invalidated.

Rule 26(e) required Uber to supplement materially incomplete or incorrect discovery responses, and Rule 37(c)(1) precludes Uber from using information it failed to disclose unless its failure was substantially justified or harmless. It was neither: Plaintiff has been denied the "mirror view" of Uber's incident information that the Court found necessary and cannot now reconstruct her experts' analyses. ECF Nos. 6452 at 4; 6652 at 5; 6988.

Allowing Uber to [redacted] would unfairly permit it to impeach Plaintiff's evidence with undisclosed information and require collateral mini-trials concerning Uber's shifting classifications and individual reports. Allowing Uber to rely on [redacted] would leave Plaintiff unable to test the evidence while requiring the jury to resolve collateral disputes about individual reports and Uber's changing methodology. That asymmetry presents precisely the unfairness and confusion Rule 403 is designed to prevent. Uber should therefore be bound by the raw data it produced.

**XII. Plaintiff's Motion in Limine No. 12: Evidence regarding Uber's 2025 sexual assault and misconduct data, including alleged "invalid" reports**

Plaintiff moves to exclude evidence or argument concerning sexual assault or sexual misconduct reports arising from Uber trips in 2025, including reports Uber classified as "invalid." This includes any comparison between: (1) the number, rate, or frequency of sexual assault or sexual misconduct reports or "invalid" reports in 2025 versus prior years, and (2) the number, rate, or frequency of "invalid" reports versus reports in other industries or sectors. This also includes any suggestion that data about "invalid" reports support opinions about Uber's standards for reviewing sexual assault or sexual misconduct reports or the credibility of individual reports. And this includes any suggestion that any individual report within the 2025 data is "invalid" or has been recategorized since Uber produced that data. *See supra*. Plaintiff was sexually assaulted in June 2020, making 2025 data irrelevant to Uber's knowledge and conduct at the relevant time. Fed. R. Evid. 401–402. Further, Uber has not produced underlying raw data from 2025 necessary to test its 2025 figures, or corresponding information and raw data from 2017-2024 that is necessary to compare the 2025 reliably with prior years.

The problem of supposedly "invalid" reports (discussed *supra*) is particularly acute when it comes to the 2025 data. Shortly before the deadline for expert reports, [redacted] Additionally, Uber has not produced complete information about reports it has deemed invalid from 2017-2024 or underlying data about any "invalid" reports from those years. This issue remains in dispute. Without the underlying data, Plaintiff cannot evaluate, much less challenge, Uber's position on the number of "invalid" reports or the validity of Uber's decision to deem reports "invalid". This is particularly prejudicial as Uber is proffering [redacted]

Allowing Uber to present these untested figures would reward its refusal to produce the supporting data and unfairly prevent Plaintiff from testing or rebutting its assertions. Presenting these figures would require litigation over thousands of unrelated reports, and an undisclosed methodology that Plaintiff cannot independently test. The risk that the jury would treat those figures as a reliable measure of Uber's safety in 2020 substantially outweighs their limited relevance. This prevents Plaintiff's experts from evaluating the same data available to Uber, contrary to the Court's recognition that Plaintiff is entitled to a "mirror view" of Uber's incident information. ECF Nos. 6452 at 4; 6652 at 5.

## XIII. <u>Plaintiff's Motion in Limine No. 13: Hearsay from non-profit organizations, especially ones that refused to be deposed</u>

The Court previously ruled that Uber may introduce evidence concerning work it did with non-profit organizations to develop safety initiatives. (ECF No. 4941). Plaintiff does not seek reconsideration of that ruling. But the ruling does not permit Uber to introduce otherwise inadmissible evidence, including purported endorsements from organizations that refused to submit to depositions and comply with document subpoenas, or hearsay endorsements of Uber's conduct.

Statements by non-profit organizations remain subject to the Federal Rules of Evidence, in particular the hearsay rules. *See* Fed. R. Evid. 801–802. Nor may an Uber witness lacking personal knowledge testify about what an independent organization believed, intended, or thought about Uber. *See* Fed. R. Evid. 602. The Court's prior ruling concerning relevance does not eliminate these independent requirements for admissibility. For example, Plaintiff moves to exclude the following statements which were offered at the *Dean* trial as inadmissible hearsay and/or lacking foundation:

- "And [nonprofit representative] calls this report unprecedented, as highlighted here, and a bold step that sets a new bar for transparency -- or corporate responsibility and transparency. I think you testified a little bit about that, but do you agree with that statement by Ms. Baker?" *See Dean* Trial Trans. at 2457:5-9.
- "And there's no question that Uber has been praised as an unprecedented report. Advocacy groups have said this is a bold step. Never before have we seen a company disclose." *Id*. at 3531:18-21.

- "That's the reason why RAINN on their website has tips today specifically for rideshare drivers. And you saw these. You saw that RAINN has said: Stay alert." *Id*. at 3540:23-25.[1]

Uber witnesses likewise should not be permitted to speculate about why non-profit organizations chose to work with Uber or what that relationship supposedly demonstrates about Uber. Emilie Boman, for example, testified during the *Dean* trial that certain safety features "came directly" from non-profits and went further by asserting that non-profits work with Uber because they know Uber is a company that does the "right thing." *See Dean* Trial Trans. at 2478:16-2479:6. Whatever Boman may know about Uber's interactions with particular organizations, she cannot speculate about the independent organizations' motives, beliefs, or reasons for working with Uber without personal knowledge establishing a foundation for that testimony. Her characterization that these organizations work with Uber because it does the "right thing" is also an improper means of using the perceived credibility of sexual-assault and domestic-violence organizations to vouch for Uber's corporate conduct.

Uber also should not be permitted to introduce evidence of its non-profits collaborators who refused to participate in discovery. Plaintiff sought depositions from three non-parties who purportedly support Uber: (1) Indira Henard, CEO of the D.C. Rape Crisis Center; (2) the National Alliance to End Sexual Violence ("NAESV"); and (3) the National Network to End Domestic Violence ("NNEDV"). All three were represented by Hogan Lovells (apparently paid for by Uber). On June 18, 2026, Judge Cisneros authorized Plaintiff to take these depositions, subject to the non-parties' right to seek relief under Rule 45. (ECF No. 6533). Nevertheless, Henard, NAESV, and NNEDV objected to the subpoenas and refused to appear for depositions. Plaintiff was therefore denied the opportunity to examine them concerning their work with Uber, their financial relationships with Uber, the basis and context for statements attributed to them, and whether they in fact endorse or support Uber's safety practices.

Uber should not now be permitted to obtain the benefit of purported support from these organizations while Plaintiff was denied the opportunity to test that evidence through discovery. If

[1] Plaintiff separately moves to exclude Uber's safety reports in their entirety.

Uber intends to tell the jury that Henard, NAESV, or NNEDV endorsed Uber or its safety practices, Plaintiff was entitled to examine those non-parties about precisely what they did, what they were paid or otherwise received from Uber, what information Uber provided to them, the scope and limitations of their work, and the basis for any statements Uber seeks to attribute to them. Allowing Uber to present that evidence after the organizations refused examination would leave Plaintiff without a meaningful opportunity to test or rebut it and would create an unfairly one-sided presentation to the jury.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant Plaintiff's motions in limine as described herein.

Dated: September 11, 2026

Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: September 11, 2026

By: */s/ Roopal P. Luhana*
Roopal P. Luhana