# EXHIBIT 7

**Pages 1 - 108**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION ) **NO. C 23-md-03084-CRB**

San Francisco, California
Tuesday, January 6, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

GIRARD SHARP LLP
601 California Street - Suite 1400
San Francisco, California 94108
**BY: SARAH R. LONDON, ATTORNEY AT LAW**
**ANDREW KAUFMAN, ATTORNEY AT LAW**
**SIMON S. GRILLE, ATTORNEY AT LAW**

PEIFFER WOLF CARR & KANE
555 Montgomery Street - Suite 820
San Francisco, California 94111
**BY: RACHEL B. ABRAMS, ATTORNEY AT LAW**

CHAFFIN LUHANA LLP
600 Third Avenue - 12th Floor
New York, New York 10016
**BY: ROOPAL P. LUHANA, ATTORNEY AT LAW**
**STEVEN COHN, ATTORNEY AT LAW**
**ELIZABETH WILKINS, ATTORNEY AT LAW**
**(Appearances via Zoom)**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By: Ruth Levine Ekhaus, RMR, RDR, FCRR
Official Reporter, CSR No. 12219

policies motivated its safety decision-making.

So quite simply. You know, it's out, but can be in. And it's in if they make a connection. If they don't make a connection, it's out. Fine.

Number 4, media reports. It's -- Uber seeks to exclude a New York Times story, a Crawford story, that were in the media prior to the trial.

I don't know how to rule on this; that is to say, I have to hear it. I mean, I have to hear why it's connected to something that would make it relevant. It has a number of hearsay problems with it. I need a context. And I don't think I've got the context yet in order to make that decision.

And I will say, you know, after 27 years on the bench, motions in limine, I have found, for the most part, are very difficult to rule in the abstract. What would not normally become -- is relevant somehow becomes relevant and vice versa.

So that doesn't mean I'm going to be -- exercise a will of Jello with respect to these rulings, but obviously if a party makes something relevant that I've kept out or, vice versa, makes something irrelevant that I was going to let in, then you revisit it. But you don't revisit it if the context is exactly the same as it is today. Okay? I mean, otherwise, I just get annoyed and nobody wants to annoy me.

Okay. Number 5, inflammatory evidence regarding Uber's media strategy. I'm denying that. And that's contrary to what

the response to negative media, and they often include snippets from that negative media so in that regard, for purposes of early witnesses, and our opening will we be allowed to --

**THE COURT:** Fine. Okay. So to the extent it impacts or impinges arguably -- not conclusively, arguably on the strategy is that Uber employed, of course, it's relevant. It will come in with a limiting instruction.

By the way, a lot of these will come in with limiting instructions. You know, especially "It goes to state of mind and it doesn't go to the truth of the matter." I can see a lot of that actually in play in this case.

I do want to be careful of certain things that I think are highly prejudicial, but as a general rule it comes in as a nonhearsay statement because it comes in for state of mind issues.

**MS. WALSH:** Okay.

**THE COURT:** So I'm not categorically leaving it out. View it, if you will, as what is the common sense sort of -- I don't care about the legal -- I mean, yes, of course, I care about the rules of evidence. We all care fervently about the rule of evidence -- rules of evidence. But there's not what is necessarily guiding.

What necessarily guides my thinking in it is sort of a commonsense thing. Is it connected to this? Is it probative? Is it probative such that it would outweigh its prejudicial

may be relevant with certain witnesses that mention *Super Pumped*, that mention *Always Be Hustling*.

**THE COURT:** Show me the evidence.

**MS. WALSH:** Okay. Thank you, Your Honor.

**THE COURT:** Greyballing, Motion Number 11. It was hard -- the plaintiff said that they do not intend to introduce any evidence of that.

**MS. LONDON:** That's correct.

**THE COURT:** I'm granting the motion.

Now, conduct outside the United States. How they handled claims abroad, such as in India, may very well inform their judgment as to what they did in the United States. It may, and it may not. Show me the evidence, but I won't exclude it on the basis of, oh, it happened outside the United States.

And I would think that the gender-matching initiative in Saudi Arabia may be quite relevant to the feasibility of adopting a similar standard in the United States. To the extent that Uber thought, "Oh, we can't do it," or "It's difficult," or there are reasons not to do it -- and there may be reasons not to do it. They did it in Saudi Arabia. So at least mechanically, it appears that it's something that can be done. Okay.

What are the reptile arguments? Anybody got an idea? Your motion.

**MS. BUENO:** It is, Your Honor. Kim Bueno on behalf of

**THE COURT:** Okay. So I will -- that's fine. I'm glad you brought it to my attention.

**MS. BUENO:** Good. Thank you, Your Honor.

**THE COURT:** Number 14, lobbying efforts including Assembly Bill 5 and Prop 22. I think it's barred by Noerr Pennington. I don't see that we have an issue as to that, so I'm granting the motion.

Number 15, actions by Uber to sue cross-claims, dismiss cross-claims or help any driver obtain counsel. I don't -- I just -- whether or not the drivers is a party and so -- the driver -- he's not a party; is that right?

He's not a party, but the driver will testify by deposition at the very least. I have forgotten whether he's coming in.

Is he coming in? Do we know whether he is coming in?

**MS. LONDON:** Your Honor, right now we have him designated by video. It's possible things could change. We have the option, I suppose, to bring him in live.

**THE COURT:** Okay. And that's actually not an answer.

I mean, I think what you said is you don't know quite yet.

**MS. LONDON:** Right. That's right, Your Honor. We don't know exactly how counsel plans to try the case or some of their theories. It may be necessary to bring him in on some point or another that wasn't covered in the deposition or anticipated. So that's what we reserve our right to do.

due to the evidence of a consensual nature of the sexual encounter, there was not enough to move forward.

In that particular -- in this particular case, the parties have already stipulated that all the body cam footage is admissible. All the video is admissible. All the audio is admissible, so the jury is going to here a lot about this criminal investigation. They're going to hear it all.

And what we're simply asking is for the jury to understand, through the testimony of Dr. -- or Detective Lopez, the records, or otherwise, that the conclusion of that criminal investigation specifically found that there was evidence of a consensual sexual encounter. That's different.

**THE COURT:** Why isn't that hearsay?

You're introducing it for the truth of the matter. You're introducing it exactly for a hearsay purpose. You're saying the police found that it was consensual, and therefore, they -- and they didn't charge. Okay? And you want to introduce that into evidence. So it's being introduced for the truth of the matter.

Generally, we call that hearsay where I come from, and isn't it excludable under the hearsay rule?

**MS. BUENO:** I think there are a couple of answers to that question.

Number 1, it's relevant if Detective --

**THE COURT:** By the way, hearsay is frequently

relevant. So that is not a ground.

**MS. BUENO:** Detective Lopez, if he's on the stand, can testify about his investigation and his conclusions. That's not hearsay. That's him talking about what he concluded in the investigation itself. "I talked to Mr. Turay. I talked to Ms. Dean. Here's what Ms. Dean told me" -- which is absolutely fair game.

**THE COURT:** So he's going to give his opinion. Okay. Maybe it's opinion.

**MS. BUENO:** It's not opinion, is it? It's his conclusion.

**THE COURT:** Yeah, it's conclusion based upon his opinion that -- that it was consensual. That's right. It's his conclusion based upon his opinion that it was consensual.

**MS. BUENO:** Based on the evidence that --

**THE COURT:** The argument that I think you ought to make is: Is it sort of an official act? Is it a -- is it that kind of thing that -- that would be an exception to the hearsay rule because it's an official act of the government in declining prosecution?

And I think that that then suffers from the same problem all the other suffers from is that it's highly prejudicial, one. Two, it is hearsay. I don't -- the failure of a state or a governmental entity or an individual to charge somebody.

Now, that's not the same thing as saying Officer -- you

know, whoever he was --

**MS. BUENO:** Lopez.

**THE COURT:** Thank you. If officer Lopez went up to the victim and said "What happened," and she said, "I'd rather not talk to you."

Oh, that would come in. I think that would come in.

**MS. BUENO:** Certainly, as well as what she says happened.

**THE COURT:** Absolutely.

**MS. BUENO:** Right.

**THE COURT:** It all comes in.

What doesn't come in is his conclusion based upon his opinion, or his opinion based upon his conclusion that it was consensual.

He doesn't know whether it's consensual; right? He wasn't there. And even then, if he even saw the whole thing, it's a question whether he would actually know whether it was consensual or not. But we don't have to go there. We don't have to go there.

I mean, there are a lot -- sexual assault is very complicated.

**MS. BUENO:** Yes.

**THE COURT:** Very complicated area. And what may appear as consent has been well documented, especially in the case of domestic abuse, that they are not consensual -- in a

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Wednesday, January 7, 2026

Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG, CSR No. 12219
Official Reporter, U.S. District Court