[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

**REDACTED VERSION**

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), by and through their undersigned counsel, will and hereby do move the Court for summary judgment in favor of Uber and against Plaintiff QLF 001 on the claims and theories described herein.

Uber seeks summary judgment, pursuant to Federal Rule of Civil Procedure 56, based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing.

DATED: September 11, 2026

**KIRKLAND & ELLIS LLP**

*/s/ Kim Bueno*
*Counsel for Uber*

# TABLE OF CONTENTS

**Page**


**I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1**

**I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ........ 2**

**II. STATEMENT OF THE ISSUES TO BE DECIDED ........ 4**

**III. ARGUMENT ........ 4**

A. The Court Should Hold That Punitive Damages Are Unavailable As A Matter Of Law. ........ 4

B. The Court Should Grant Uber Summary Judgment On Plaintiff's Negligence Claim. ........ 10

C. The Court Should Grant Uber Summary Judgment On Plaintiff's Product Liability Claims. ........ 14

**IV. CONCLUSION ........ 19**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banzhaf v. ADT Sec. Sys. Sw., Inc.*,
28 S.W.3d 180 (Tex. App.—Eastland 2000, pet. denied) ....16, 18

*Bhatti v. Concepts Am., Inc.*,
No. 3:14-CV-3445-L, 2016 WL 3880747 (N.D. Tex. July 18, 2016) ....6

*BIC Pen Corp. v. Carter*,
346 S.W.3d 533 (Tex. 2011) ....15, 17, 18

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995) ....16

*Ford Motor Co. v. Ledesma*,
242 S.W.3d 32 (Tex. 2007) ....17

*Freyer v. Lyft, Inc.*,
639 S.W.3d 772 (Tex. App.—Dallas 2021, no pet.) ....13, 14

*Gen. Motors Corp. v. Saenz ex rel. Saenz*,
873 S.W.2d 353 (Tex. 1993) ....10, 11, 15

*Gonzalez v. Ramirez*,
463 S.W.3d 499 (Tex. 2015) ....13

*Grant Thornton LLP v. Prospect High Income Fund*,
314 S.W.3d 913 (Tex. 2010) ....12

*Guzman v. Synthes (USA)*,
20 S.W.3d 717 (Tex. App.—San Antonio 1999, pet. denied) ....11

*Hammerly Oaks, Inc. v. Edwards*,
958 S.W.2d 387 (Tex. 1997) ....8

*Healthcare Centers of Texas, Inc. v. Rigby*,
97 S.W.3d 610 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ....5, 8

*Hux v. S. Methodist Univ.*,
819 F.3d 776 (5th Cir. 2016) ....6, 7

*In re Islamorada Fish Co. Texas, L.L.C.*,
319 S.W.3d 908 (Tex. App.—Dallas 2010, orig. proceeding) ....5

*Johnson & Johnson v. Batiste*,
No. 05-14-00864-CV, 2015 WL 6751063 (Tex. App.—Dallas Nov. 5, 2015) ....15

*Jung v. 24 Hour Fitness USA, Inc.*,
No. 4:17-CV-787, 2019 WL 3037537 (E.D. Tex. July 11, 2019) ....................7

*In re Luminant Generation Co.*,
711 S.W.3d 13 (Tex. App.—Houston [1st Dist.] 2023, pet. denied)....................14

*Martinez v. Hays Constr., Inc.*,
355 S.W.3d 170 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ....................13

*Massage Heights Franchising, LLC v. Hagman*,
679 S.W.3d 298 (Tex. App.—Houston [14th Dist.] 2023), *rev'd in part on other grounds*, 712 S.W.3d 615 (Tex. 2025)....................6

*Miles v. Jerry Kidd Oil Co.*,
363 S.W.3d 823 (Tex. App.—Tyler 2012, no pet.) ....................5, 8

*Owens Corning v. Carter*,
997 S.W.2d 560 (Tex. 1999)....................9

*R.M. v. Am. Airlines, Inc.*,
338 F. Supp. 3d 1203 (D. Or. 2018) ....................7

*Silguero v. CSL Plasma, Inc.*,
579 S.W.3d 53 (Tex. 2019)....................7

*Timpte Indus., Inc. v. Gish*,
286 S.W.3d 306 (Tex. 2009)....................15

*United States v. Burlington Res. Oil & Gas Co.*,
No. Civ. A H-98-611, 2000 WL 1058972 (S.D. Tex. May 18, 2000)....................17

*Washington v. Dep't of Transp.*,
8 F.3d 296 (5th Cir. 1993) ....................17

*Windrum v. Kareh*,
581 S.W.3d 761 (Tex. 2019)....................16

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.003(a)....................7

Tex. Civ. Prac. & Rem. Code § 41.003 ....................8

Tex. Civ. Prac. & Rem. Code § 41.005 .................... *passim*

Tex. Civ. Prac. & Rem. Code § 41.005(a).................... *passim*

Tex. Civ. Prac. & Rem. Code § 82.005(a)....................15

Tex. Civ. Prac. & Rem. Code § 150E.003(b) ....................14

Tex. Occ. Code § 2402.107 ....................12, 13, 14

Tex. Prop. Code § 92.151 ....................9

Tex. Prop. Code § 92.153(a)(1)-(5) ....................9

**Rule**

Fed. R. Civ. P. 56....................2

**Other Authority**

Lyft News, *Lyft's Popular Women+ Connect Feature Is Now Available Nationwide* (Feb. 13, 2024), https://www.lyft.com/blog/posts/lyfts-popular-women-connect-feature-is-now-available-nationwide....................16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's effort to hold Uber liable for an assault by an independent driver is precluded by Texas law and the unique factual circumstances of this case. Each theory of liability remaining in Plaintiff's Complaint fails because she lacks evidence necessary to establish an essential element of her claim. And regardless of whether the Court concludes that any substantive claim presents a triable issue, Texas law independently forecloses Plaintiff's request for punitive damages.

***First***, Texas law expressly prohibits punitive damages where, as here, a plaintiff seeks to hold a defendant liable for the criminal conduct of another. Tex. Civ. Prac. & Rem. Code § 41.005(a). In prior briefing on this topic, Plaintiff twisted the meaning of Section 41.005(a) to suggest that it allows an award of punitive damages where a Plaintiff alleges that the defendant was negligent in failing to prevent the criminal conduct. *See* Dkt. 6807 (Uber's motion to strike Plaintiff's punitive damages claim); Dkt. 6944 (Plaintiff's opposition). But that interpretation of the law is contrary to the statute's plain language and all relevant precedent applying it.

***Second***, Plaintiff's negligence theories fail as a matter of law because ***she did not request the ride, did not choose Uber, and did not even know that the ride had been requested through Uber*** (she believed it was arranged through Lyft). Thus, no representation or omission by Uber could have influenced Plaintiff's decision to take the ride. The same is true as to the Uber account holder who did order the ride, H.M. H.M. admitted that she does not know why she chose Uber over Lyft on the night in question, but acknowledged that it was possibly because Uber happened to be cheaper than Lyft. Even assuming H.M. saw and relied on Uber's safety-related marketing in choosing Uber, that would establish at most why H.M. selected the platform—not that Uber's marketing or any alleged failure to warn was a cause-in-fact of ***Plaintiff's*** subsequent assault. Texas law requires ***Plaintiff*** to show that, but for the alleged representation or omission, her injury would not have occurred. She cannot make that showing here.

Any negligence theory premised on Uber's background check of Mr. Le also fails as a matter of law because the background screening of Mr. Le that was required by Texas law (and performed by third-party accredited background check vendor Checkr) did not uncover any criminal conviction that was disqualifying under Texas law. Plaintiff therefore lacks any colorable argument that Uber acted

unreasonably based on actual knowledge that Mr. Le could not drive under Texas's Transportation Network Company ("TNC") statute.

***Finally***, Plaintiff's product liability claims fail for lack of causation. Plaintiff identifies two purported design defects in the Uber App: (1) that the App lacked a gender-matching feature whereby Plaintiff could elect to be matched only with female drivers; and (2) that it did not mandate video recording. But no jury could conclude that either of these defects was more likely than not the producing cause of Plaintiff's alleged injuries because there is insufficient evidence that H.M. (the person who requested a ride for Plaintiff) would have selected gender matching on Plaintiff's behalf, and there is no admissible evidence that in-app video recording would have deterred Plaintiff's driver, Victor Le.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff's Complaint asserts that she was assaulted by Mr. Le in the early morning hours of June 9, 2020. At the time of the assault, Plaintiff was a passenger in Mr. Le's vehicle on a ride arranged through the Uber platform. Plaintiff was traveling back to her parents' home from the [redacted] Bar, where Plaintiff had been drinking with her friends. *See* Ex. 1 (7/22/2026 Pl. Dep.) 168:13-169:20, 197:15-17. The ride lasted about 40 minutes and covered nearly 37 miles. Ex. 2 (UBER-MDL3084-DFS00064938: ride receipt).

Plaintiff did not request the ride at issue. Rather, it was requested by H.M., who at the time was married to the [redacted] Bar's manager. Pl. Dep. 51:12-20, 186:24-187:4; Ex. 3 (8/20/2026 H.M. Dep.) 44:3-8. H.M. observed that Plaintiff had been drinking at [redacted] that evening and that Plaintiff [redacted]. H.M. Dep. 37:5-39:1. H.M. then overheard Plaintiff say that she wanted to leave and overheard Plaintiff's friends [redacted] *Id.* At that point, H.M. offered to arrange a rideshare on Plaintiff's behalf. *Id.* Plaintiff initially declined the offer and said she would drive herself home, but ultimately accepted the offer of a ride after her friends apparently convinced her to do so. *Id.* 41:20-43:24.

H.M. used her own Uber App on her phone to request a ride on Plaintiff's behalf, entering the destination address that Plaintiff had given her. *Id.* 44:3-8, 47:10-12. H.M. believes she had both the Uber and Lyft Apps downloaded on her phone at the time. *Id.* 44:9-11. She is not certain why she used Uber

rather than Lyft to request a ride on Plaintiff's behalf, but she acknowledges [redacted] that she made this decision because Uber may have been the cheaper option. *Id.* 44:12-22. In any event, Plaintiff acknowledges that it was H.M.—not Plaintiff—who made the decision to request the ride through Uber, rather than Lyft or another ridesharing platform. Pl. Dep. 210:7-11 [redacted]. Plaintiff does not even remember H.M. telling her at the time which platform H.M. had used to request the ride. *Id.* 187:16-19. Plaintiff's contemporaneous belief was that the ride had been requested through Lyft; following the assault, Plaintiff reported the incident to the police and told the investigating officer that Mr. Le was "her Lyft driver." Ex. 4 (DOE QLF 000916, June 9, 2020 police report).

Plaintiff's Bellwether Complaint, filed March 14, 2025, asserts product liability claims against Uber premised on two purported design defects: (1) the lack of a "gender matching" feature that would have given "female passengers the option to be matched only with female drivers," Pl.'s Am. Bellwether Compl. (hereinafter "Compl."), Dkt. 2712-5 ¶ 32, and (2) the lack of an app-based ride recording feature whereby the Uber App would "trigger automatic video recording of rides and the time period immediately around them, whether through using the camera already installed on a driver's cell phone during Uber trips, or through an external device linked to the App," *id.* ¶ 38.[1] Additionally, the Complaint asserts a negligence claim against Uber. *Id.* ¶ 25. The Complaint does not allege the specifics of the negligence theory, but Uber anticipates that Plaintiff will pursue theories that: (1) Uber's marketing materials cultivated a false reputation for safety and negligently failed to warn of a purported risk of sexual assault, *see generally* H.M. Dep. 89:17-98:22 (questioning by Plaintiff's counsel regarding H.M.'s awareness of Uber's safety-related advertising); and (2) Uber's background screening of Mr. Le should have somehow uncovered any propensity for sexual assault that he harbored. Plaintiff seeks compensatory and punitive damages against Uber. Compl. at 8 (wherefore clause).

---

[1] The Court previously dismissed a third design defect claim alleged in Plaintiff's Complaint—that Uber failed to perform "Safe Ride Matching"—on the ground that these allegations were "directed at Uber's provision of services, and thus [were] not a product defect." PTO 28 at 15-17, Dkt. 3441.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff's punitive damages claims fail as a matter of law because a Texas statute bars this Court from "award[ing] exemplary damages against a defendant because of the criminal act of another." Tex. Civ. Prac. & Rem. Code § 41.005(a).

2. Whether Plaintiff's negligence claim fails (a) for lack of causation as to any alleged failure to warn of the purported risk of sexual assault because Plaintiff lacks sufficient evidence from which a jury could decide it is more likely than not that the absence of such a warning was a proximate cause of Plaintiff's alleged injury; and (b) for failure to prove breach of duty as to Uber's background check of Mr. Le because Uber indisputably complied with the Texas TNC statute regarding background checks.

3. Whether Plaintiff's product liability claims fail for lack of causation, because there is no admissible evidence that: (a) the person who requested the subject ride would have selected a gender-matching feature, had one existed at the time; or (b) mandatory video recording, had it existed at the time, would have deterred Mr. Le from assaulting Plaintiff in this specific instance.

## III. ARGUMENT

### A. The Court Should Hold That Punitive Damages Are Unavailable As A Matter Of Law.

First, the Court should grant summary judgment as to Plaintiff's claim for punitive damages because it is barred by Texas law.

Section 41.005 of the Texas Civil Practice & Remedies Code provides: "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another." Tex. Civ. Prac. & Rem. Code § 41.005(a). That statute unequivocally bars an award of punitive damages in this case, because Plaintiff seeks exemplary damages against Uber based on the criminal act of Mr. Le.[2]

In prior briefing on this issue, Plaintiff argued that she seeks punitive damages against Uber not "because of" the criminal assault perpetrated by Mr. Le against Plaintiff, but "because of" Uber's alleged negligence in permitting Mr. Le to connect with Plaintiff on the Uber platform. *See* Dkt. 6944. In other

---

[2] Section 41.005 contains four enumerated exceptions to the bar on punitive damages, but, as Uber explained in prior briefing on this topic, none of those four exceptions could possibly apply here. Dkt. 6807. Plaintiff's prior briefing on this issue does not contend otherwise. Dkt. 6944.

words, Plaintiff's position seems to be that Section 41.005 only bars an award of punitive damages against Uber if that award is premised on Mr. Le's criminal conduct, and does not bar an award of punitive damages if it is based on Uber's own purported negligence in failing to prevent Mr. Le's assault.

But Texas's intermediate appellate court has rejected that exact argument multiple times, holding that the statutory bar on punitive damages applies where a plaintiff alleges that a defendant is liable for negligently failing to prevent another's criminal conduct. In *Healthcare Centers of Texas, Inc. v. Rigby*, 97 S.W.3d 610, 617-21 (Tex. App.—Houston [14th Dist.] 2002, pet. denied), for example, the Texas Court of Appeals applied § 41.005 to reverse an award of punitive damages against a defendant nursing home in a negligence action alleging that the nursing home failed to prevent one of its residents from sexually assaulting another. In its decision, the Court expressly rejected the very argument Plaintiff advances here—that Section 41.005 "silently, but impliedly, allows recovery of punitive damages resulting from the defendant's conduct"—on the ground that such an exception would swallow the rule, permitting punitive damages in virtually any case and undermining the legislature's intent in including four specific, enumerated exceptions in the statute. *Id.* at 618-19.

Similarly, in *Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823 (Tex. App.—Tyler 2012, no pet.), the Texas Court of Appeals affirmed a grant of summary judgment in the defendant's favor and held that Section 41.005 barred punitive damages in a negligence action against an employer whose employee was killed by a drunk driver while walking across the street in the course of her employment. Like Plaintiff here, the plaintiff there argued that Section 41.005 "does not prevent recovery of exemplary damages from an in-court defendant when the criminal act of a third party combines with the noncriminal actions of the in-court defendant, as concurrent causes, that together caused the harm suffered by the plaintiff." *Id.* at 826-27. The Court disagreed, reasoning that the plaintiff's interpretation would "render[] the statute meaningless," because "[t]here is no theory of liability under which a defendant is punished for the criminal acts of unrelated third parties." *Id.* Accordingly, the Texas Court of Appeals reaffirmed that Section 41.005(a) "preclude[s] punishing a defendant for harm resulting from a criminal act of a third party when that defendant's actions are a concurrent cause of the harm." *Id.* at 826; *see also In re Islamorada Fish Co. Texas, L.L.C.*, 319 S.W.3d 908, 912 (Tex. App.—Dallas 2010, orig. proceeding)

(holding, in dram shop case, where plaintiffs' claims "arise from the injuries they sustained when [a third party] drove while intoxicated and hit [their] car," that "section 41.005(a) prohibits the trial court from assessing punitive damages against [the bar] because the harm alleged resulted from the criminal act of another").

More recently, in *Massage Heights Franchising, LLC v. Hagman*, 679 S.W.3d 298 (Tex. App.—Houston [14th Dist.] 2023), *rev'd in part on other grounds*, 712 S.W.3d 615 (Tex. 2025), the Texas Court of Appeals applied § 41.005 in reversing an award of punitive damages against a massage parlor franchisor over a sexual assault committed by a masseuse against a customer. In so ruling, the court reasoned that the statute "bars the award of exemplary damages because the cause of [the plaintiff's] injury is [the masseuse's] criminal act." 679 S.W.3d at 308-10. Significantly, the plaintiff there attempted to defend the punitive damages verdict on the ground that "the jury did not award exemplary damages based on [the masseuse's] criminal conduct but rather based on the harm caused by [the defendant's] gross negligence . . . ." *Id.* at 310. But the Court (again) rejected that argument—the exact argument Plaintiff advances here—holding that the statute bars punitive damages against the defendant even where the "criminal act . . . was made possible by the negligence of [the defendant]" or where the defendant's negligence "combined with" the masseuse's criminal conduct to cause the plaintiff's harm. *Id.*

These decisions control the analysis here. Under Fifth Circuit law, this Court is tasked with "mak[ing] an *Erie* guess" on how the Texas Supreme Court would rule on the competing interpretations urged by Plaintiff and Uber. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780-81 (5th Cir. 2016). Rather than deciding this question de novo, the Court must "treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning." *Id.* at 780-81. Because the Texas Court of Appeals has repeatedly and uniformly endorsed Uber's interpretation of Section 41.005(a) and rejected Plaintiff's, this Court can and must defer to those decisions.

Moreover, ***every*** federal district court that has considered this question has also come out the same way as the Texas Court of Appeals, and some federal district courts have expressly rejected the exact argument that Plaintiff advances here. *See, e.g.*, *Bhatti v. Concepts Am., Inc.*, No. 3:14-CV-3445-L, 2016

WL 3880747, at *16 (N.D. Tex. July 18, 2016) (punitive damages unavailable against defendant for negligently failing to intervene to stop criminal assault of plaintiff by another; rejecting plaintiff's argument that punitive damages were not barred by Section 41.005 because "[plaintiff's] claim [was] based on [the defendant's] own gross negligence"); *R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203, 1216-17 (D. Or. 2018) (punitive damages unavailable against American Airlines under Section 41.005 for claim alleging that airline negligently failed to prevent one passenger from sexually assaulting another); *Jung v. 24 Hour Fitness USA, Inc.*, No. 4:17-CV-787, 2019 WL 3037537, at *4 (E.D. Tex. July 11, 2019) (applying Section 41.005(a) to grant JNOV in defendant's favor on claim seeking punitive damages because defendant negligently failed to prevent a theft, and expressly rejecting plaintiff's argument that "the Court can separate the criminal theft from Defendant's conduct and award exemplary damages based solely on Defendant's conduct").

This Court should follow these persuasive authorities. That is especially so because there is no "compelling reason" to believe the Texas Supreme Court would change the law some 24 years after the first appellate ruling on this issue. *Hux*, 819 F.3d at 780-81. Quite the opposite. The text, structure, and legislative history uniformly support the consistent holdings of the Texas Courts of Appeals, and all of those rulings would figure prominently in the Texas Supreme Court's interpretation of the statute. *See Int. of J.S.*, 670 S.W.3d 591, 597 (Tex. 2023) (noting that Texas courts consider "both the literal text and its context" as part of the interpretation of a statute) (citation omitted); *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) (noting that the plain language of a statute must be construed "in light of the statute as a whole").

The text and structure of the statute independently foreclose Plaintiff's interpretation. After all, any award against Uber would be awarded because of Mr. Le's criminal conduct, since that conduct is the entire underpinning of Plaintiff's lawsuit.[3] Absent Mr. Le's criminal conduct, there would be no lawsuit;

[3] If Plaintiff's claim for punitive damages were not "because of" Mr. Le's criminal conduct, then the claim would be time-barred. Texas generally applies a two-year statute of limitations to personal injury claims, Tex. Civ. Prac. & Rem. Code § 16.003(a), under which Plaintiff's lawsuit would have been time-barred. While Texas extends the limitations period to five years where the claim "arises as a result of" a sexual assault, *id.* § 16.0045(b)(1), it is a logical impossibility for Plaintiff's claim to "arise as a result of" Mr. Le's alleged criminal sexual assault, but not be "because of" that alleged assault. It must be both or neither. Accordingly, to the extent Plaintiff argues in her response that her damages claim is not "because of" Mr. Le's alleged criminal conduct, then her entire Complaint would necessarily be time-barred.

the two are anchored together—the precise fact scenario in all of the cases cited above where courts have dismissed punitive damages claims pursuant to Section 41.005. Put another way: the very reason Plaintiff is alleging that Uber was negligent is because Mr. Le committed a crime while driving on the Uber platform.[4] Moreover, the whole point of Section 41.005 is to serve as an "exemption" from liability for punitive damages. *See* Tex. Civ. Prac. & Rem. Code § 41.005(b) (describing Section 41.005(a) as an "exemption"). In other words, § 41.005 makes punitive damages unavailable in certain situations where they otherwise ***would*** be available. Viewed in that light, Plaintiff's interpretation of the statute makes no sense. Plaintiff contends the statute bars damages that punish a defendant for another's criminal conduct but does not bar damages that punish a defendant for its own negligence in failing to prevent that criminal conduct. But "[t]here is no theory of liability under which a defendant is punished for the criminal acts of unrelated third parties." *Miles*, 363 S.W.3d at 826. Rather, the only reason the defendant would be punished is because its negligence allegedly led to, or enabled, the criminal conduct.

In short, if the statute were as limited as Plaintiff claims, it would not be an "exemption" at all; it would be meaningless.[5] *Miles*, 363 S.W.3d at 826. Thus, the only way to read the statute in a manner that avoids surplusage is to interpret it to bar punitive damages against a defendant in a case like this one where the plaintiff alleges that the defendant's negligent conduct resulted in a third party's criminal act.

This is all the more evident because two of the four exceptions set forth in Section 41.005(b) would make no sense under Plaintiff's interpretation of the statute. Section 41.005(b)(2) creates an exception for the defendant's own criminal conduct, holding that a defendant can be liable for punitive damages if it,

---

[4] The Texas Court of Appeals was getting at the same thing in *Rigby* when it described the plaintiff's injury as "indivisible." *Healthcare Centers*, 97 S.W.3d at 618. There, the plaintiff alleged that her injury had two concurrent causes—the criminal act of a non-party and the negligence of the defendant. In describing that injury as "indivisible," the Court meant that the injury could not be sub-divided into one component caused by the defendant and the other component caused by the third party engaged in criminal conduct. It was therefore impossible for any amount of punitive damages to be awarded "because of" the defendant's negligence and not also "because of" the non-party's crime. *Id.*

[5] Plaintiff argued in prior briefing on this topic that Section 41.005 operates to prevent a defendant from being held vicariously liable for punitive damages awarded against another person for that person's criminal conduct. *See* Dkt. 6944. But (1) that is not what the statute says, and (2) that interpretation would not give effect to the statute because Texas law already restricts vicarious liability for punitive damages to very limited scenarios. *See* Tex. Civ. Prac. & Rem. Code § 41.003 (general rule that punitive damages can only be awarded based on defendant's own fraud, malice, or gross negligence); *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (confirming that Texas permits vicarious liability for punitive damages only in narrow scenarios enumerated in Restatement (Second) of Torts § 909).

too, is ***criminally*** responsible for a plaintiff's assault.[6] This exception would be unnecessary and redundant if Plaintiff were correct that the statute already contained an implicit exception for the defendant's mere negligence. Similarly, Section 41.005(b)(5) provides an exception for landlords who fail to install locks on rental properties, providing that such landlords can still be held liable for punitive damages resulting from crimes committed by third parties.[7] But this exception, too, would be unnecessary if, as Plaintiff contends, a landlord could already be held liable for punitive damages for its negligence in connection with failing to install locks and preventing crimes by third parties. In other words, the statute's exceptions make clear that the punitive damages exception is precisely intended to apply to lawsuits like this one alleging negligence.

Finally, the legislative history of Section 41.005 accords with the text and structure of the statute and further demonstrates that Plaintiff's interpretation of the statute is erroneous. The Bill Analysis published by the House Research Organization regarding Section 41.005 clarifies that, "when harm resulting from the criminal act of another could subject a defendant to liability for punitive damages[,] [t]he defendant could only be subjected to punitive damages" in certain limited scenarios, which correspond to the exceptions enumerated in Section 41.005(b). House Research Org., Bill Analysis, Tex. S.B. 25 (Apr. 5, 1995) at 4; *see also Owens Corning v. Carter*, 997 S.W.2d 560, 580 (Tex. 1999) (expressly relying on "House Research Organization's bill analysis" in construing statutory language). This further highlights why Plaintiff's interpretation is nonsensical. The very purpose of the statute is to prohibit punitive damages where, as here, a plaintiff seeks to hold a defendant liable for a third party's conduct. There is no exception in Section 41.005 that would allow Plaintiff to seek punitive damages premised on

---

[6] *See* Tex. Civ. Prac. & Rem. Code § 41.005(b)(2) (exception where "the defendant is criminally responsible as a party to the criminal act"). This language suffices to cover extreme cases of misconduct by a defendant and provides a buffer against intentional coordination with third parties known to be engaged in criminal conduct, akin to some of the hypotheticals invoked by the Court at the August 14, 2026 oral argument on Uber's Motion to Strike Plaintiff's Punitive Damages Claim, Dkt. 6807. But nothing along those lines is alleged here, where Plaintiff merely claims that Uber was negligent in onboarding Mr. Le.

[7] Specifically, the statute states that the bar on punitive damages in Section 41.005(a) does not apply if "the criminal act resulted from the defendant's intentional or knowing violation of a statutory duty under Subchapter D, Chapter 92, Property Code." That statute, in turn, requires landlords to equip rental properties with locks on every exterior door and window. *See* Tex. Prop. Code § 92.153(a)(1)-(5); *see generally* Tex. Prop. Code § 92.151 *et seq.* (Subchapter D, entitled "Security Devices").

Uber's own purportedly negligent conduct because that is the very sort of liability that the statute was enacted to abolish.

For all of these reasons, Uber is entitled to summary judgment on Plaintiff's punitive damages claim.

**B. The Court Should Grant Uber Summary Judgment On Plaintiff's Negligence Claim.**

Plaintiff's negligence claim also fails as a matter of law. Although the Complaint does not detail her theory of negligence, Uber understands Plaintiff's theory to be that: (1) Uber's marketing materials failed to warn of the alleged risk of sexual assault and cultivated a false image of safety; and (2) Uber's background screening of Mr. Le was inadequate.

Neither claim can proceed. The warning theory—like the product liability claims—fails for lack of causation because Plaintiff cannot demonstrate by a preponderance of the evidence that any warnings regarding sexual assault in Uber's marketing materials would have caused Plaintiff not to ride in Mr. Le's vehicle. And the background-check theory fails because Uber indisputably complied with the Texas statute governing background screenings of TNC drivers and lacked actual knowledge of anything in Mr. Le's background that would disqualify him as a driver.

1. <u>Plaintiff Cannot Prove The Causation Element Of A Warning Claim.</u>

To prevail on a negligence theory sounding in failure to warn, Plaintiff must prove that the lack of a warning was the proximate cause of her injury. *Gen. Motors Corp. v. Saenz ex rel. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993). To constitute a proximate cause, the failure to warn must have been a cause-in-fact of the injury; in other words, Plaintiff "must show that but for [Uber's] omission the [injury] would not have occurred." *Id.*[8] The relevant causal inquiry does not end with whether an alleged representation or omission affected or influenced someone's decision to use Uber. Plaintiff must connect that representation or omission to the injury for which she seeks recovery—i.e., the assault—and show that the injury would not have occurred but for Uber's alleged failure to warn. *See id*. That causal link is absent here.

[8] Plaintiff must also prove that it was foreseeable to Uber that the lack of warning would cause Plaintiff's injury. *Id.*

Plaintiff did not request the ride, did not select Uber, and did not even know that H.M. had requested the ride on the Uber platform. She believed that the ride was requested through Lyft. Accordingly, Uber's safety-related marketing could not have influenced Plaintiff's decision to use Uber, and a different warning from Uber could not have caused Plaintiff herself to make a different platform choice.[9] *See Guzman v. Synthes (USA)*, 20 S.W.3d 717, 720 (Tex. App.—San Antonio 1999, pet. denied) (affirming trial court's grant of JNOV in defendant's favor on claim for negligent failure to warn where trial evidence "show[ed] that the [injury] would have occurred regardless of the proposed warnings") (emphasis omitted).

H.M.'s role in selecting Uber does not bridge the causal disconnect. Even assuming H.M. saw and relied on Uber's safety-related marketing, that reliance would establish at most a connection between Uber's marketing and H.M.'s choice of platform. H.M. is not the Plaintiff, and her selection of Uber is not the injury for which Plaintiff seeks recovery. Plaintiff must still present evidence from which a jury could find that Uber's alleged failure to warn was a cause-in-fact of the subject incident—i.e., that the assault would not have occurred but for Uber's alleged misrepresentation or omission. *Gen. Motors*, 873 S.W.2d at 357.

Plaintiff has no evidence establishing that causal chain. H.M. could not recall why she selected Uber rather than Lyft on the night in question and acknowledged that price may have driven her decision. H.M. Dep. 44:12-22. Although she later testified that she generally recalled seeing advertisements from 2018-2020 portraying Uber as safe, *see id.* 89:17-98:22, that testimony does not establish that a different warning would have caused H.M. to select another platform for Plaintiff's ride, much less that a different platform selection would have prevented the incident. At most, Plaintiff can ask the jury to speculate. That does not suffice under Texas law. Plaintiff's burden is to show that, but for the alleged representation or omission, her injury would not have occurred. She has no such evidence. In short, evidence that H.M. may have seen or even relied on Uber's safety-related marketing does not establish that the marketing caused Plaintiff's alleged injury. Plaintiff must show that, but for Uber's alleged failure to warn, the assault would

---

[9] *See, e.g.*, DOE QLF 000916, June 9, 2020 police report [redacted]

not have occurred. Because the record provides no nonspeculative basis for making that causal connection, Uber is entitled to summary judgment on this theory of liability.[10]

2. Plaintiff Cannot Prove Breach Of Duty As To Any Alleged Negligence In The Background Check Of Mr. Le.

Any negligence claim premised on the background screening of Mr. Le also fails as a matter of law because the background check Uber obtained for Mr. Le indisputably complied with the requirements of the Texas TNC statute, and that background check indisputably did not uncover any disqualifying convictions.

The Texas TNC statute imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber. Tex. Occ. Code § 2402.107. Namely, that statute requires Uber to "conduct or cause to be conducted" a search for prior criminal convictions in a commercial multistate database, in the national sex offender registry, and in the Texas sex offender registry. *Id.* § 2402.107(a)(2)(A)-(C). Uber must "conduct or cause to be conducted" such background searches at the time of onboarding and annually thereafter. *Id.* § 2402.107(a)(2) & (c). If those searches turn up certain enumerated convictions within specified time periods, then the individual must be disqualified from the platform. *Id.* § 2402.107(b).

Here, Uber indisputably ***did*** obtain a background check for Mr. Le at the time he was onboarded to the platform in January 2020 that fulfilled all the requirements of the Texas TNC statute. Ex. 5 (UBER-MDL3084-DFS00064890: Checkr background check on Mr. Le dated Jan. 12, 2020). That background check included searches of commercial multistate databases, the national sex offender registry, and the Texas sex offender registry. Ex. 6 (UBER-MDL3084-DFS00064891: Checkr background check including categories for "National Search," "Federal Search," "County Searches," "Global Watchlist Search," and "Sex Offender Search"); Exs. 7 & 8 (8/13/2026 Hubbard Dep. 114:6-13 & Ex. 2142). And those searches indisputably ***did not*** turn up any disqualifying convictions. Ex. 5 (UBER-MDL3084-DFS00064890:

[10] To the extent Plaintiff's safety-related marketing theory is construed as a negligent misrepresentation claim, it fails for the separate and additional reason that Plaintiff herself did not rely on any alleged misrepresentation by Uber. Actual and justifiable reliance by the plaintiff is an essential element of negligent representation under Texas law. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (noting that "negligent misrepresentation require[s] that the plaintiff show actual and justifiable reliance," and holding that the defendant was entitled to summary judgment in the absence of such evidence). H.M.'s alleged reliance cannot satisfy Plaintiff's own reliance requirement.

Checkr background check on Mr. Le with status "clear"). Moreover, at the time of the incident in June 2020, Mr. Le had been on the Uber platform for less than 9 months, and the statutory requirement to repeat the background check on an annual basis therefore did not apply. *See* Tex. Occ. Code § 2402.107(c). Thus, Plaintiff cannot prevail on this theory of liability either.

In *Freyer v. Lyft, Inc.*, 639 S.W.3d 772 (Tex. App.—Dallas 2021, no pet.), for example, the Texas Court of Appeals affirmed a grant of summary judgment in Lyft's favor on a plaintiff's negligence claim involving Lyft's background check process. In its holding, the court relied on the fact that Lyft had caused a third party to conduct a background check on the driver and that this background check found "nothing in [the driver's] driving record [that] would have prevented Lyft from hiring her." *Id.* at 789; *see also Martinez v. Hays Constr., Inc.*, 355 S.W.3d 170, 180 (Tex. App.—Houston [1st Dist.] 2011, no pet.), *disapproved on other grounds by Gonzalez v. Ramirez*, 463 S.W.3d 499 (Tex. 2015) ("An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee."). The court reached this conclusion even though the driver had in fact been involved in prior collisions, her license had been suspended multiple times, and she had prior driving-related convictions, all of which the background check missed. *Freyer*, 639 S.W.3d at 785. Moreover, Lyft had also received on-platform safety-related feedback from multiple riders about the driver at issue in *Freyer*. For example, ten days before the accident at issue in that case, a rider gave her one star and reported that she "was not really watching the cars around" and that the rider "did not feel safe." *Id*. at 790. The court nevertheless rejected the plaintiff's negligent-undertaking theory and affirmed summary judgment. *Id*. at 790-91. Thus, *Freyer* confirms that neither additional information outside an initial background check nor subsequent safety-related feedback suffices to establish negligence.

To the extent Plaintiff argues that a different background search would have found something disqualifying in Mr. Le's background, that argument, too, lacks merit. Even assuming Plaintiff could establish that a different investigation could have uncovered additional information, the fact remains that Uber complied with the TNC statute in good faith and had no actual knowledge of any disqualifying conviction prior to the incident. *See* Tex. Occ. Code § 2402.107(b); Ex. 5 (Checkr background check on

Mr. Le dated Jan. 12, 2020 with status "clear," at UBER-MDL3084-DFS00064890). Uber's conduct with respect to background screening was therefore reasonable as a matter of law.[11]

That result is confirmed by Texas Civil Practice & Remedies Code § 150E.003(b). Section 150E.003(b) clarifies that Section 2402.107 bars direct negligence claims against a TNC arising out of that TNC's screening of a driver where the TNC complied with the requirements of Section 2402.107 unless the TNC had "actual knowledge" that the driver was disqualified. *See* Tex. Civ. Prac. & Rem. Code § 150E.003(b) (clarifying that direct liability for negligence is available where "the company had actual knowledge that the driver was disqualified from logging on to the company's digital network" under Section 2402.107).[12] Here, there is no evidence Uber had actual knowledge that Mr. Le was disqualified from driving under the TNC statute, further precluding liability on this ground.

Accordingly, any negligence claim premised on Uber's background check of Mr. Le is barred as a matter of law.

### C. The Court Should Grant Uber Summary Judgment On Plaintiff's Product Liability Claims.

Finally, Plaintiff brings two product liability claims against Uber, asserting that the Uber App was defective because it lacked: (1) a feature where female riders could elect to be matched with female drivers, Compl. ¶¶ 32-37; and (2) a feature triggering automatic video recording of rides, either through the driver's cell phone camera or an external camera, *id.* ¶¶ 38-46. As a threshold matter, these claims fail as a matter of law because they concern the manner in which Uber facilitates ride-matching and monitors

---

[11] Lyft raised its "full[] compli[ance] with the TNC statute" as a defense in *Freyer*. The court noted the general proposition that "[c]ompliance with statutory standards is evidence of the use of reasonable care but is not necessarily dispositive of that issue," but it did not rule on the issue. 639 S.W.3d at 784. In this context, Uber's compliance with the statute should be conclusive based on the statutory language and structure, as detailed in the text.

[12] Section 150E.003(b) was enacted after the incident in this case, but the statutory language on actual knowledge did not create new law; rather, it clarified that a different, new rule it created for vicarious-liability claims (in Section 150E.003(a)) did not alter the operation of Section 2402.107's requirements pertaining to background checks. Such language presupposes that direct negligence claims against TNCs relating to driver background screening ***were already barred*** in situations where the TNC ***had*** complied with Section 2402.107. Otherwise, Section 150E.003(b) would be surplusage. The actual-knowledge requirement is also consistent with basic principles of Texas tort law, which premise a defendant's liability on the plaintiff's particular injury being foreseeable to the defendant. *In re Luminant Generation Co.*, 711 S.W.3d 13, 25 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (explaining that "foreseeability of the specific danger at hand—namely, whether the injury to the particular plaintiff or one similarly situated could be anticipated" is a "dominant consideration" in evaluating whether the defendant owed a duty to the plaintiff) (citation and internal quotations omitted).

rides—i.e., the quality of Uber's service—rather than defects in a tangible product placed into the stream of commerce. As Uber has previously argued, Plaintiff's gender-matching and video-recording allegations are premised on the level of care with which services are provided, not any alleged defect in the Uber App.[13] Indeed, at least one other Texas court has reached the same conclusion. *See* Ex. 12 (Order at 1, *Torres v. Uber Techs., Inc.*, No. 141-345646-23 (141st Dist. Ct., Tarrant Cnty., Tex. July 2024)) (granting summary judgment in Uber's favor, finding that "the Uber App is fundamentally a digital marketplace platform providing a service by connecting independent drivers with potential riders for the purpose of transportation services"). Accordingly, Plaintiff cannot state product liability claims, and on this ground alone, Uber is entitled to summary judgment.

But in any event, both claims fail for lack of causation. "To recover for a products liability claim alleging a design defect, a plaintiff must prove," among other things, that "the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *see* Tex. Civ. Prac. & Rem. Code § 82.005(a)(2). Importantly, it is the specific alleged defect itself—not the product generally—that must be the producing cause of the plaintiff's injury. *See Johnson & Johnson v. Batiste*, No. 05-14-00864-CV, 2015 WL 6751063, at *11 (Tex. App.—Dallas Nov. 5, 2015). "A producing cause must be a cause-in-fact; that is, it must be a substantial factor in bringing about the injury, and a cause without which the injury would not have happened." *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 541 (Tex. 2011). Texas law places the burden on the plaintiff to prove causation by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code § 82.005(a).[14]

Here, Plaintiff cannot carry her burden to prove that her injury would not have happened but for the two purported defects she identifies. That requires evidence sufficient to establish the complete causal chain between each alleged defect and the assault—not merely evidence that the proposed features might generally reduce risk. Accordingly, on the undisputed factual record, neither of these purported defects

---

[13] *See* Dkt. 387, 2791. The Court rejected these claims in ruling on Uber's motions to dismiss, but Uber preserves its prior arguments on this issue.

[14] Were Plaintiff to pursue her design defect claims under a negligence rather than strict liability theory, Uber's arguments would still apply with equal force because, as noted above, a negligence claim also requires Plaintiff to prove but-for causation. *See Gen. Motors*, 873 S.W.2d at 357.

was a producing cause of her injury. For this reason, too, the Court should grant summary judgment in Uber's favor.

1. <u>Plaintiff Cannot Prove Gender-Matching Would Have Prevented The Assault.</u>

Plaintiff cannot prove that the absence of a gender-matching feature was a producing cause of her alleged injury. Plaintiff did not request the ride or select its safety features; H.M., a third party, did. Pl. Dep. 51:12-20, 186:24-187:4; H.M. Dep. 44:3-8. And Plaintiff cannot show that H.M. would have utilized such a feature if it existed or otherwise establish that the absence of that feature was a substantial factor in causing the assault and that the assault would not otherwise have occurred.

As an initial matter, even accepting that H.M. would have used a gender-matching feature, Plaintiff cannot establish producing cause. H.M.'s hypothetical selection is only one step in the causal chain. Plaintiff must show that the absence of the feature was a substantial factor in causing the assault and that the assault would not otherwise have occurred. The record does not permit that conclusion without stacking one hypothetical inference upon another. For example, there is no evidence establishing that H.M.'s utilization of a gender-preference feature would have resulted in a pairing with a female driver. *See, e.g.*, *Windrum v. Kareh*, 581 S.W.3d 761, 778 (Tex. 2019) ("[T]he defendant's negligence may be too attenuated from the resulting injuries to be a substantial factor in bringing about the harm where the negligence was not the active cause of the injury, but merely created the condition by which the act of negligence could occur.") (cleaned up); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479-81 (Tex. 1995) (defendant entitled to summary judgment where "causal connection" between purported negligence and plaintiff's injury was "broken").

Moreover, and in any event, H.M.'s deposition testimony proves that she would ***not*** have selected a gender-matching feature on Plaintiff's behalf, had Uber provided that option at the time. H.M. testified that she does not currently use the gender-matching feature on her Uber App, even though such a feature indisputably exists today, and took a ride as recently as May 2026. H.M. Dep. 29:8-11, 32:12-16 [redacted] *see Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 187 (Tex. App.—

Eastland 2000, pet. denied) (rejecting design defect claim premised on absence of safety feature, where safety feature existed in optional form but was not used during incident in question).

To the extent Plaintiff might respond that H.M. does not use this feature only because she was unaware of it prior to her deposition, *see* H.M. Dep. 32:6-11, that only demonstrates that H.M. would have been unaware of such a feature even if it had existed in 2020 and therefore would not have used it for the ride at issue. H.M. also apparently did not learn of (and did not begin using) Lyft's Women+ Connect feature until last year, *id.* 31:10-18, even though Lyft launched that feature nationwide in February 2024.[15] More generally, H.M. does not know what other safety features, if any, she currently has selected on her Uber App. *Id.* 30:22-24 [redacted] Based on these undisputed facts, no reasonable juror could find by a preponderance of the evidence that H.M. would even have been aware of—much less used—a gender-matching feature had one been in place at the time of the subject ride.[16]

Nor is there any evidence from which a jury could find it more likely than not that Plaintiff herself would have caused H.M. to select a gender-matching feature when requesting the ride on Plaintiff's behalf. As noted above, Plaintiff apparently believed in the moment that the subject ride had been requested through Lyft, not Uber. Thus, no jury could conclude that Plaintiff would have insisted that a particular Uber feature be selected in connection with that ride. *See, e.g.*, *BIC Pen*, 346 S.W.3d at 541 (holding defendant was entitled to summary judgment on manufacturing defect claim involving child-proofing safety feature on lighter where plaintiff lacked evidence that injury would not have occurred but for defect); *cf. Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45-46 (Tex. 2007) (vacating jury verdict in

---

15 Lyft News, *Lyft's Popular Women+ Connect Feature Is Now Available Nationwide* (Feb. 13, 2024), https://www.lyft.com/blog/posts/lyfts-popular-women-connect-feature-is-now-available-nationwide.

16 Later in her deposition, on questioning by Plaintiff's counsel, H.M. testified that she would have selected gender matching for the subject ride had such a feature been available. H.M. Dep. 113:24-114:5 [redacted] That retrospective answer does not create a triable issue. It is well established in the Fifth Circuit that "a speculative opinion by a lay witness, that is, testimony concerning what the witness would have done if presented with a particular factual scenario, is generally considered inadmissible." *United States v. Burlington Res. Oil & Gas Co.*, No. Civ. A H-98-611, 2000 WL 1058972, at *7 (S.D. Tex. May 18, 2000); *see also Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (affirming district court's exclusion of witness's testimony "as to what he *would have done*" had he been aware of specific facts).

plaintiff's favor on design defect claim where jury not properly instructed that defect "must be a but-for cause, namely one without which the event would not have occurred.").

2. Plaintiff Cannot Prove Recording Would Have Prevented Her Injury.

Plaintiff also lacks sufficient evidence to prove that the lack of mandatory video recording was a producing cause of her alleged injury. Crucially, to satisfy the causation standard, Plaintiff must show that this feature, had it existed at the time of the subject ride, would more likely than not have deterred ***this*** particular driver from committing ***this*** particular assault. *See BIC Pen*, 346 S.W.3d at 541. Accordingly, even if there was admissible evidence that video recording has a deterrent effect generally, such evidence does not, without more, establish that the absence of recording was a substantial factor in bringing about this assault or that the assault would not otherwise have occurred.

On the factual record here, Plaintiff lacks sufficient evidence from which a jury could decide it is more likely than not that Mr. Le would have been deterred by video recording. Reports from two of Plaintiff's experts, Thomas R. Tremblay and Veronique N. Valliere, indicate that they will offer opinions that video recording has a deterrent effect in general on sexual assault. Ex. 9 (Tremblay MDL-wide report at 28-30) (opining that "Cameras / recording can be an effective deterrent as part of any crime prevention strategy," including "[i]n regards to the prevalence of Uber's sexual assault / misconduct patterns"); Ex. 10 (Valliere report at 30) (opining that "[c]ameras are a known deterrent for sexual assault based on general deterrence theory"). But neither expert offers the opinion that video recording during the subject ride would have specifically deterred Mr. Le from assaulting Plaintiff. Notably, Mr. Tremblay offers the case-specific opinions that "Uber did not require [Mr. Le] to have video or audio recording during the Uber ride," and that "[t]here is no record that [Mr. Le] had a camera or other recording in his car during the Incident Ride." Ex. 11 (Tremblay case-specific report at 11-12). But Mr. Tremblay does not take the critical next step: he does not opine that recording would more likely than not have prevented the assault. Plaintiff therefore offers evidence of a generalized deterrent effect, but no evidence bridging the gap between that general proposition and causation in this case.

In the absence of expert opinion or other evidence that video recording would have specifically deterred Mr. Le from assaulting Plaintiff, no jury could find that this purported defect was a producing cause of Plaintiff's injury, and summary judgment is warranted in Uber's favor. *See BIC Pen*, 346 S.W.3d

at 541; *Banzhaf*, 28 S.W.3d at 187 (defendant entitled to judgment on design defect claim as a matter of law, where plaintiff lacked evidence that converting safety feature from optional to mandatory would have prevented plaintiff's specific injury).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Uber's favor on Plaintiff's claims. At the very least, Uber is entitled to summary judgment on Plaintiff's claim for punitive damages.

DATED: September 11, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno