[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT ROBERT SNIDERMAN; MEMORANDUM OF POINTS & AUTHORITIES**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

# NOTICE OF MOTION AND MOTION TO EXCLUDE

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiff's expert Robert Sniderman.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: September 14, 2026

KIRKLAND & ELLIS LLP

By: *<u>/s/ Kim Bueno</u>*
*Counsel for Uber*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's expert, Robert Sniderman, seeks to testify at trial that Uber's criminal background checks on independent third-party drivers are not sufficiently rigorous and that if Uber employed a different background check process (by conducting, for example, in-person searches of specific municipality court records), the third-party driver at issue (Victor Le) would have never been onboarded prior to the assault. Dr. Sniderman's opinions are inadmissible for multiple reasons.

***First***, Dr. Sniderman's opinions that Uber's background check processes should be more rigorous are not supported by any objective industry standards, but rather are the product of his own beliefs and *ipse dixit*. These wholly unsupported opinions are squarely at odds with the Texas transportation network company ("TNC") statute, which imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber. Uber indisputably complied with those requirements.

***Second***, Dr. Sniderman's opinions also touch on ultimate issues of law in this case—such as the reasonableness of Uber's background check policy and whether Uber's background check processes ultimately led to Plaintiff's alleged injuries. These so-called opinions are issues to be decided by the jury, not Dr. Sniderman, and are therefore improper.

For all of these reasons, discussed further below, Dr. Sniderman's opinions should be excluded from trial.

## BACKGROUND

Robert Sniderman is a self-professed "Human Resources Consultant" who has been retained as an expert in more than 200 cases. Ex. 1 (Sniderman Report) at 1. He seeks to opine "on the reasonableness and adequacy of [Uber]'s written policies and practices," *id.*, including that "Uber has not adequately designed its background checks and screening policies to identify driver misconduct in its own records or a driver's criminal history," *id.* at 6. Dr. Sniderman further opines that Uber "should conduct the most complete background check that is reasonably available," *id.* at 7, which (according to Dr. Sniderman) should include specific "in-person" searches of municipal court records, *id.* at 8-9. Dr. Sniderman believes that if Uber had applied what he considers "reasonable screening and investigation practices," Uber "[w]ould have never considered [Victor Le's] application much less onboarded him as an Uber Driver in

2020" and "could have prevented [Plaintiff's] sexual assault." *Id.* at 1, 12; *id.* at 8 (opining that "the omitted municipal-court search for Le was outcome-determinative.").

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Sniderman's proffered testimony is admissible pursuant to Federal Rule of Evidence 702, where Dr. Sniderman's background check opinions are based solely on his *ipse dixit*?

2. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Sniderman's proffered testimony is admissible where Dr. Sniderman's proffered opinions contain ultimate conclusions of law?

## LEGAL STANDARD

Under the amendments to Federal Rule of Evidence 702, it is the propounding party's burden to establish by a preponderance of the evidence that an expert's testimony is admissible. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). The Rule 702 standard is addressed in Uber's Motion to Exclude Lacey Keller (filed concurrently), and Uber incorporates that discussion herein by reference.

## ARGUMENT

### I. Dr. Sniderman's Beliefs About Uber's Background Check Policies Are Inadmissible.

Dr. Sniderman recognizes that there are limits to a company's ability to "screen[] applicants," and thus, he states that a company "should conduct the most complete background check that is ***reasonably available***." Sniderman Rep. at 7 (emphasis added). Dr. Sniderman further acknowledges that "[i]t is not uncommon for a company like Uber to contract with a third party company" (here, Checkr) "to perform background checks." *Id.* And Dr. Sniderman recognizes that Uber does conduct a background check prior to onboarding third-party drivers, including by conducting "the federal criminal search, global watch list search, national criminal search, sex-offender search, social-security-number trace, and motor-vehicle-record search[.]" *Id.* at 8. In Mr. Le's case, Uber also conducted a "local criminal search" in Tarrant County, Texas. *Id.*

Despite these admissions, Dr. Sniderman believes that Uber should have undertaken a ***much*** more rigorous background check process prior to onboarding Mr. Le. Specifically, Dr. Sniderman believes that Uber should have conducted "in-person" searches of municipal court records in Fort Worth, Texas, and that Uber's failure to search those specific records "for Le was outcome-determinative" in Plaintiff's case. *Id.* at 8-9. Dr. Sniderman further believes that Uber should have conducted "a reference check and an interview, . . . [and] searches [of] the state Department of Motor Vehicles, as well as the Internet and social media," *id.* at 10, and that "Uber's failure to investigate and act on the earlier reports allowed a preventable risk to remain in service until after [Plaintiff's] assault[.]" *Id.* at 15.[1]

These statements are not supported by any objective authority. Dr. Sniderman fails to identify any applicable industry standard requiring any of these measures, any benchmark against which he evaluated Uber's background screening process, or any methodology connecting the additional steps he proposes to his conclusion that Uber's process was deficient. *See, e.g.*, *Open Cheer & Dance Championship Series LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2026 WL 1485212, at *5 (N.D. Tex. May 27, 2026) (excluding expert opinion where expert "offer[ed] no methodology for how he arrived at this conclusion"); *Allstate Ins. Co. v. Gen. Elec. Co.*, No. CIV. A. 00-0523, 2002 WL 34373485, at *10 (W.D. La. Feb. 4, 2002) (excluding plaintiff's expert where plaintiff did "not show[] Mr. Hero has relied upon accepted methodology to support the conclusions noted above. The expert's unsupported statement is insufficient.").

Dr. Sniderman's failure to identify objective industry standards to support his beliefs is problematic because "[w]idespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993) (quoting *United States v. Downing*, 753 F.3d 1224, 1238 (3d Cir. 1985)). This is all the

[1] Similarly, Dr. Sniderman faults Uber for not identifying internal records "banning" Mr. Le in 2017. But as Dr. Sniderman acknowledges, Uber did conduct a record search; Uber personnel did not connect that incident to Mr. Le due to name variation. Sniderman Rep. at 13. Dr. Sniderman believes—without citing any authority—that Uber should have instead "search[ed] Uber's own historical safety records by name variants, geography, prior accounts, and available photos . . . ." *Id.* Again, without any standard, Dr. Sniderman's opinions are nothing more than *ipse dixit.*

more true because Dr. Sniderman's statements about what constitutes an adequate background check are inconsistent with Texas law. Specifically, the Texas Transportation Network Company ("TNC") statute imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber, Tex. Occ. Code § 2402.107, including requiring Uber to search for prior criminal convictions in a commercial multistate database, in the national sex offender registry, and in the Texas sex offender registry, *id.* § 2402.107(a)(2)(A)-(C). Dr. Sniderman's report makes clear that Uber ***did*** conduct a background check on Mr. Le at the time he was onboarded to the platform in January 2020 that fulfilled all the requirements of the Texas TNC statute. *See* Sniderman Rep. at 8-9. And, as Dr. Sniderman concedes, those searches all "came back clear." *Id.* at 9. There is thus no basis for Dr. Sniderman's belief that Uber should have done more, or for his assumption that doing more would have generated a different result in Plaintiff's case. Rather, as a matter of law, Uber did all that was required with respect to its background check of Mr. Le, as set forth in more detail in Uber's pending summary judgment motion. *See* Dkt. 7329.

Dr. Sniderman's reliance on his litigation and HR experience cannot salvage his opinions. The Fifth Circuit has repeatedly excluded testimony of even well-qualified experts who fail to identify a reliable methodological basis for their opinions. *E.g.*, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991-92 (5th Cir. 1997) (excluding expert analysis that "relied on his experience" because it "lacked the requisite indicia of reliability"); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (excluding testimony of experience-based expert who had "neither the sufficient facts nor the reliable methodology that would warrant its inclusion as evidence"); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 273, 279 (5th Cir. 1998) (excluding opinion of "well-qualified medical specialist" where his "causation opinion was not based on scientific knowledge that would assist the trier of fact"). This is so because "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (excluding expert opinion that "simply lacks the foundation and reliability necessary to support expert testimony.").

Dr. Sniderman's opinions are also unreliable because he fails to consider the tradeoffs, which Uber has publicly acknowledged, between stricter background checks and competing civil rights priorities.[2] Dr. Sniderman does not address the fact that Uber develops its screening criteria in consultation with lawmakers, screening experts, and civil rights advocates, and works to balance rider safety with fair access to economic opportunity across more than 60 different background-check adjudication standards nationwide. Dr. Sniderman similarly fails to consider that Uber's decisions about whether and when to implement a particular screening configuration involve assessment of numerous factors, including, but not limited to, expert feedback on recidivism data, as well as legal, policy, and regulatory considerations across multiple jurisdictions, operational readiness and adjudication accuracy, false-positive rates and their impact on driver access, and the interaction of any screening change with Uber's broader multilayered safety system. The fact that Dr. Sniderman ignores these considerations highlights that he has no methodology and that his background check opinions are instead based on his mere say-so.

In short, Dr. Sniderman's belief that Uber should have conducted a scorched-earth background check is pure *ipse dixit*, unsupported by any objective authority, and should be excluded.

## II. <u>Dr. Sniderman's Opinions On Ultimate Legal Issues Are Improper.</u>

Dr. Sniderman also improperly seeks to usurp the role of the jury.

Dr. Sniderman seeks to tell the jury that Uber's actions with respect to its background check and onboarding processes were "unreasonable." Sniderman Rep. at 15; *id.* at 4 (opining that "Uber's screening measures, including its background checks of Le, did not sufficiently" comply with "[a] reasonable company['s]" screening measures). He then seeks to tell the jury that if Uber had applied more stringent background check and screening procedures, it "could have prevented [Plaintiff's] sexual assault." *Id.* at 12; *id.* at 8 (opining that "the omitted municipal-court search for Le was outcome-determinative.").

---

[2] *See, e.g.*, Uber Newsroom, *A New Standard for Background Checks* (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/ ("During our consultations with civil rights and safety organizations, many advocates emphasized that years of safe participation on the Uber platform should be weighed alongside past offenses when evaluating existing drivers. Others noted that removing access to a stable source of income could actually increase the risk of recidivism.").

It is black letter law that "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citation omitted); *see also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law"); *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (citations omitted) ("prohibition on experts testifying as to their own legal conclusions is 'so well established that it is often deemed a basic premise or assumption of evidence law'" that has been adopted by "every circuit"; striking expert report that was "replete with legal conclusions and speculations that ultimately render [expert's] entire report deficient.").

Applying these principles, courts have recognized Dr. Sniderman's tendency to improperly "offer [] opinions on the ultimate legal issues in this case" and have repeatedly excluded his opinions on this basis. *E.g.*, *McCray v. Westrock Servs., LLC*, No. CV 21-9853-DMG (RAOx), 2023 WL 4681371, at *6 (C.D. Cal. July 12, 2023) (stating Dr. Sniderman could not "opin[e] on the ultimate legal issues in this case, nor any factual characterizations or conclusions"); *Ybay v. RSUI Grp., Inc.*, No. BC486287, 2015 WL 1756068, at *1 (Cal. Super. Ct. L.A. Cnty. Feb. 3, 2015) ("the Court allows Mr. Robert Sniderman to testify as to standards in the community (profession), but not ultimate issue, i.e. failed to do so"); *Hood v. Time Warner Cable LLC*, No. SACV 08-0583 AG (JWJx), 2009 WL 1202561, at *4 (C.D. Cal. Apr. 30, 2009) (excluding "[t]he Sniderman Declaration" on the basis that it "offers improper legal conclusions, including findings that TWC failed to engage in an interactive process with [p]laintiff").

The same result is appropriate here. Dr. Sniderman should not be allowed to offer opinions on legal issues that are squarely within the jury's purview to decide.

**CONCLUSION**

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Robert Sniderman in their entirety.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno