[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT THOMAS R. TREMBLAY; MEMORANDUM OF POINTS & AUTHORITIES**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiffs' expert Thomas R. Tremblay.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: September 14, 2026

KIRKLAND & ELLIS LLP

By: */s/ Kim Bueno*

*Counsel for Uber*

## MEMORANDUM OF POINTS AND AUTHORITIES

Thomas Tremblay, a former law enforcement officer, seeks to offer opinions that stray far beyond the knowledge and experience he gained in law enforcement, do not relate to any issues presented in this case, and are otherwise impermissible.

Mr. Tremblay's Opinions 1-8 are substantially similar to the opinions in his *Dean* report and should be excluded for the reasons set forth in Uber's prior Motion to Exclude the Opinions of Mr. Tremblay. *See* Dkt. 4349. That motion is incorporated herein by reference, and the arguments therein are preserved for appellate review pursuant to the parties' Stipulation. *See* Dkt. 7302.

Separate and apart from the arguments in its prior motion, Uber also seeks to challenge Mr. Tremblay's opinions in two respects.

First, Mr. Tremblay's opinions regarding proposed measures that he claims Uber should have taken—mandatory audio or video recording of trips, a gender-matching feature, unspecified steps to address risk factors relating to sexual misconduct for this specific driver and ride, and additional driver screening requirements—are inadmissible because they constitute *ipse dixit*. Moreover, these opinions are irrelevant to any issue in dispute because Mr. Tremblay does not establish that any proposed measure would have prevented or altered the outcome of the incident at issue.

Second, Mr. Tremblay's opinions accusing Uber's counsel of employing [redacted] during Plaintiff's deposition—which Uber also moved to exclude in its Motion *In Limine* To Exclude Inflammatory Remarks About Uber's Defense, Dkt. 7325—are improper, irrelevant, and unduly prejudicial.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Tremblay's proffered testimony in Opinions 1-8 is admissible pursuant to Federal Rule of Evidence 702, because of the reasons set forth in Uber's prior Motion to Exclude the Opinions of Mr. Tremblay?
2. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Tremblay's proffered testimony regarding proposed measures that he claims should have taken—

mandatory audio or video recording of trips, a gender-matching feature, unspecified steps to address risk factors relating to sexual misconduct for this specific driver and ride, and additional driver screening requirements—is admissible pursuant to Federal Rule of Evidence 702, because these opinions are *ipse dixit* and do not fit the facts of the case and therefore irrelevant?

3. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Tremblay's proffered testimony accusing Uber's counsel of employing [redacted] during Plaintiff's deposition is admissible pursuant to Federal Rule of Evidence, because these opinions are improper, irrelevant, and unduly prejudicial?

**BACKGROUND**

Mr. Tremblay served in various law enforcement positions, including Chief of Police of Burlington, Vermont, and Vermont Public Safety Commissioner. Tremblay Rep. at 2-3 (Ex. 1). After retiring from law enforcement in 2011, he started a consulting and training business that focuses on "leadership, reforms, and prevention for sexual assault, domestic violence and other crimes involving gender-based violence." *Id.* at 4. Mr. Tremblay was retained by Plaintiff's counsel "to render opinions regarding public safety accountability and sexual assault and sexual misconduct prevention[.]" *Id.* at 1. Mr. Tremblay's generally applicable opinions are rife with assertions that lie far outside the scope of his law enforcement expertise, including, but not limited to, opinions that: (1) "[i]t is more likely than not that the crimes of sexual assault and sexual misconduct by Uber drivers on Uber Riders were foreseeable to Uber"; (2) "Uber knew about the risk of Uber drivers committing sexual assault / misconduct against Uber Riders in Uber vehicles"; (3) "[i]t's more likely than not that Uber could have prevented or substantially reduced sexual assault / misconduct by Uber drivers on Uber Riders on the Uber platform"; and (4) "[i]t is more likely than not that Uber's conduct increased the risk that Uber Riders would be subject to sexual assault / misconduct committed by Uber drivers on the Uber platform." *Id.* at 10, 11, 18, 31. Uber incorporates by reference its prior Motion to exclude Mr. Tremblay's opinions, which argued that these opinions have no connection to Mr. Tremblay's law-enforcement experience, and, in any event, are not proper topics for expert testimony.

Mr. Tremblay also opines that Uber should have taken certain additional safety measures, including audio or video recording of trips, a gender-matching feature, unspecified steps to address risk factors relating to sexual misconduct for this specific driver and ride, and increased screening.

Finally, Mr. Tremblay accuses Uber's counsel of employing [redacted] during Plaintiff's deposition and suggested at his deposition that he intends to testify to that effect at trial.

## LEGAL STANDARD

The standard for admissibility under Fed. R. Evid. 702 is set forth in Uber's Motion to Exclude the Opinions of Plaintiffs' Expert Lacey Keller and incorporated herein by reference.

## ARGUMENT

### A. Mr. Tremblay Should Not Be Allowed To Testify About Various Safety Measures Uber Purportedly Should Have Taken.

Mr. Tremblay's opinions about proposed measures that Mr. Tremblay asserts Uber should have taken—specifically, regarding audio or video recording, gender-matching, unspecified steps to address risk factors for sexual misconduct, and increased background screening—should be excluded because they constitute *ipse dixit* and/or fail to assist the jury in determining any fact in issue in this case.

***First***, Mr. Tremblay opines that "Uber did not take certain reasonable steps in this case . . . to meaningfully reduce the incidents of Sexual Assault/Sexual Misconduct" because Uber "did not require Driver V.L. to have video or audio recording during the ride" at issue. Tremblay Rep., Schedule A.6 at 11. But Mr. Tremblay fails to opine, or identify a basis to conclude, that requiring such recordings would have deterred Mr. Le from assaulting Plaintiff—or otherwise altered the events of this particular ride. There is no evidence ***anywhere else in the record*** supporting such a conclusion. Mr. Tremblay's report acknowledges that a pilot showed only an 11% decrease in "safety incidents" generally—not specifically sexual assaults—but nonetheless extrapolates from that result to conclude that recording would have "meaningfully reduced" the risk here. Mr. Tremblay's failure to establish that any proposed recording requirement would have deterred ***this assault*** renders his opinion unhelpful to the jury to determine any fact actually in issue and should therefore be excluded as irrelevant. *See U.S. All. Grp., Inc. v. Cardtronics*

*USA, Inc.*, 645 F. Supp. 3d 554, 559-60 (E.D. La. 2022) (explaining that an expert's reasoning or methodology must "fit" the facts of the case to assist the trier of fact); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citation omitted).

Nor does Mr. Tremblay identify any methodology, data, or other evidence showing that mandatory recordings reduce the risk of sexual assault under similar circumstances. The generalized pilot result he cites does not establish deterrence, does not isolate sexual assaults, and does not connect recording to the facts of this ride. His say-so that requiring a recording would have "meaningfully reduce[d]" the risk of sexual assault is thus precisely the sort of *ipse dixit* that Rule 702 precludes. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987) (excluding an expert's testimony where he offered "little more than his credentials and a subjective opinion").

***Second***, Mr. Tremblay opines that "Uber did not make the option of a woman-to-woman match available to either [H.M.] or Plaintiff QLF 001" and that "[H.M.] would have used the match option if it were available." Tremblay Rep., Schedule A.6 at 18. As an initial matter, whether Uber made this feature available to Plaintiff is wholly irrelevant because she did not request the ride—H.M. did so on Plaintiff's behalf. Pl. Dep. 51:12-20, 186:24-187:4 (Ex. 2); H.M. Dep. 44:3-8 (Ex. 3). Nor does Mr. Tremblay have any reliable basis for concluding that H.M. would have used the feature. Instead, his conclusion rests solely on H.M.'s testimony that she would have selected gender matching for the ride had the feature been available. *See* H.M. Dep. 113:24-114:5. It is well established in the Fifth Circuit that "a speculative opinion by a lay witness, that is, testimony concerning what the witness would have done if presented with a particular factual scenario, is generally considered inadmissible." *United States v. Burlington Res. Oil & Gas Co.*, No. Civ. A H-98-611, 2000 WL 1058972, at *7 (S.D. Tex. May 18, 2000); *see also Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (affirming district court's exclusion of witness's testimony "as to what he would have done" had he been aware of specific facts). And it is likewise well settled that Mr. Tremblay cannot transform that inadmissible speculation into admissible expert testimony by simply repeating it. *See U.S. All. Grp.*, 645 F. Supp. 3d at 560 ("The Fifth Circuit has made clear that when testimony is "no more than [a party's] testimony dressed up and sanctified as the

opinion of an expert," it is not admissible); *United States ex rel. Shepherd v. Fluor Corp.*, No. 6:13-CV-02428-JD, 2026 WL 105725, at *5 (D.S.C. Jan. 14, 2026) ("Expert testimony may not speculate about a party's intent or credibility, nor may it opine on how particular decisionmakers would have acted under counterfactual circumstances.").

Mr. Tremblay's crystal-ball assessments of what H.M. would have done are especially improper and unreliable because they ignore and contradict H.M.'s deposition testimony indicating that she ***would not have selected*** a gender-matching feature on Plaintiff's behalf had Uber provided that option. *See In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 242 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 113 (2d Cir. 2020) ("Where an expert ignores evidence that is highly relevant to his conclusion, contrary to his own stated methodology, exclusion of the expert's testimony is warranted."). H.M. testified that she does not currently use Uber's gender-matching feature despite having taken an Uber as recently as May 2026, H.M. Dep. 29:8-11, 32:12-16, did not learn of or begin using Lyft's Women+ Connect feature when it became available, *id*. 31:10-18, and does not know what safety features she currently has selected on her Uber account, *id*. 30:22-24. Accordingly, Mr. Tremblay has no basis from which to conclude that H.M. would have used the feature had it been available during the ride at issue. Because his unsupported adoption of H.M.'s inadmissible hypothetical testimony is contrary to the record, it would not assist the jury in determining any fact in issue, and should be excluded.

Moreover, even assuming H.M. would have selected a female driver, Mr. Tremblay provides no reliable basis for concluding that a gender-matching option would have prevented or altered this particular assault. His report identifies no methodology, data, or case-specific analysis establishing that a female driver would have been available and matched with Plaintiff, that the resulting ride would have occurred, or that the alleged assault would not have occurred. Instead, he moves from H.M.'s hypothetical selection of the feature to the ultimate outcome without analyzing the intervening factual circumstances necessary to support that inference. That unsupported counterfactual chain is *ipse dixit*, not a reliable application of specialized knowledge to the facts of this case, and cannot assist the jury under Rule 702. *See Daubert*, 509 U.S. at 591; *U.S. All. Grp.*, 645 F. Supp. 3d at 559-60.

***Third***, Mr. Tremblay opines that "Uber has identified high risk factors for Sexual Assault/Sexual Misconduct that were" purportedly present during the ride but "did not intervene" or disclose them to Plaintiff or H.M. Tremblay Rep., Schedule A.6 at 18-19. But Mr. Tremblay altogether fails to specify what should have occurred differently or why. He does not identify which particular combination or threshold of risk factors should have triggered action, which particular action Uber should have therefore taken, or any basis to conclude that such action would have prevented the assault. Mr. Tremblay's bare assertion that risk factors were present and Uber nevertheless "did not intervene" does not provide the jury with any standard by which to evaluate Uber's conduct. Instead, it merely invites the jury to infer that Uber should have done ***something*** without identifying what that something was or why it was required. Similarly, Mr. Tremblay's attempt to fault Uber for not disclosing to Plaintiff or H.M. that these or other supposed "risk factors" were present for this ride fails to identify any standard, practice, or methodology establishing what information Uber should have disclosed, under what circumstances it should have done so, or in what manner it should have been shared.

In sum, Mr. Tremblay's opinion amounts to "nothing more than bare conclusions" that Uber should have acted differently and is in no way reliable or helpful to the jury in resolving any fact in issue. Accordingly, it should be excluded. *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990); *see In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) ("To be reliable, expert testimony must 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'") (quoting *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019)); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (excluding expert testimony where the expert "offers little more than personal assurances based on his [professional] experience that his conclusions are so" on the grounds that such opinions have "insufficient factual support and lack [] reliable methodology").

***Fourth***, Mr. Tremblay opines that Uber's background screening of Mr. Le was "inadequate and deficient." Again, that conclusion is not the product of any identified methodology or application of specialized expertise. Instead, Mr. Tremblay largely catalogs facts from the record—including that Uber did not interview Mr. Le, search his social media accounts, obtain employment references, or itself search

certain municipal court records—and then simply labels Uber's screening as "inadequate." *See U.S. All. Grp.*, 645 F. Supp. 3d at 560 (excluding expert report that contained opinions that were "substantively identical" to plaintiff's allegations without independent analysis). Once again, however, he identifies no industry standard applicable to rideshare driver screening in January 2020 requiring any of these measures (because there is none), no benchmark against which he evaluated Uber's screening process, and no methodology connecting the cited facts to his conclusion that the process was deficient.

Mr. Tremblay's report also ignores the applicable requirements governing Uber's background check of Mr. Le, which are found in the Texas TNC statute. That statute imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber. Tex. Occ. Code § 2402.107. Namely, the statute requires Uber to "conduct or cause to be conducted" a search for prior criminal convictions in a commercial multistate database, in the national sex offender registry, and in the Texas sex offender registry, *id.* § 2402.107(a)(2)(A)-(C), both at the time of onboarding and annually thereafter, *id.* § 2402.107(a)(2) & (c). If those searches turn up certain enumerated convictions within specified time periods, then the individual must be disqualified from the platform. *Id.* § 2402.107(b).

Mr. Tremblay does not and cannot dispute that Uber's background check of Mr. Le ***fully complied with those requirements***, because Uber confirmed, among other things, that Mr. Le was not on the national sex offender registry or the Texas sex offender registry, and did not otherwise have any disqualifying convictions. Ex. 4 (UBER-MDL3084-DFS00064890, Checkr background check on V.L. dated Jan. 12, 2020); Ex. 5 (UBER-MDL3084-DFS00064891, Checkr background check including categories for "National Search," "Federal Search," "County Searches," "Global Watchlist Search," and "Sex Offender Search"); Exs. 6 & 7 (Hubbard Dep.) 114:6-13 & Ex. 2142; Ex. 4 (UBER-MDL3084-DFS00064890, Checkr background check on Mr. Le with status "clear").

In short, Mr. Tremblay lacks any reliable basis to opine that Uber's background check was inadequate. Accordingly, Mr. Tremblay's opinions regarding background screening are unsupported, subjective opinions that Rule 702 bars from the courtroom. *See Viterbo*, 826 F.2d at 424 ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."); *U.S.*

*All. Grp.*, 645 F. Supp. 3d at 559 ("[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded.") (citation omitted).

**B. Mr. Tremblay's Baseless Attacks On Uber's Litigation Conduct Are Improper, Irrelevant, And Unduly Prejudicial.**

Mr. Tremblay's accusations that Uber's counsel employed "[redacted]" during Plaintiff's deposition are not proper expert opinions under Rule 702 because they are not grounded in any expertise and would not assist the jury. They are also irrelevant to the merits, because defense counsel's deposition questions have no bearing on Uber's liability. Even if the accusations had some marginal relevance, their inflammatory character would invite the jury to decide the case on an improper basis and unfairly prejudice Uber in violation of Rule 403.

The impropriety of such attacks is well established. As the Fifth Circuit has recognized, "attacks against opposing counsel" contravene "dignity, order, and decorum[,]" and can constitute grounds for a new trial. *Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 317 (5th Cir. 2024) ("[R]epeated improper statements including attacks against opposing counsel, references to [plaintiff's] wealth, matters not in the record, appeals to local bias, and suggestions of [plaintiff's] bad motives . . . affected [plaintiff's] 'substantial rights' and warrant a new trial.") (citation omitted).

These accusations are all the more troubling because they perpetuate Plaintiff's counsel's campaign against Uber's counsel that has played out in *The New York Times* and on social media. Contrary to Mr. Tremblay's (and Plaintiff's counsel's) accusations, the Court has recognized that Uber's counsel has acted in a professional and respectful manner throughout this litigation and rejected the suggestion that Uber's counsel "would be responsible for any type of conduct that would give rise to . . . accusations" about litigation misconduct. 8/14/2026 CMC Tr. 14:21-15:7. In any event, the manner in which Uber's attorneys questioned Plaintiff at her deposition in 2026 has no bearing on the issues presented in this lawsuit, which concern whether Uber is liable for an assault committed by an independent driver in 2020.

In short, allowing an expert to characterize Uber's ordinary litigation conduct as Uber's use of "[redacted]" would improperly invite the jury to condemn Uber for exercising its due-process right to "present every available defense," *Lindsey v. Normet*, 405 U.S. 56, 66

(1972) (citation omitted), rather than decide the case based on evidence bearing on liability. That is precisely the type of inflammatory, merits-irrelevant testimony Rule 403 excludes. Because any attempt by Mr. Tremblay to characterize Uber's defense as designed to shame Plaintiff or prevent sexual assault victims from coming forward would be highly improper and enormously prejudicial, it should be excluded from trial.

## CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Thomas Tremblay.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send Notification of the filing to all counsel of record.

*/s/Kim Bueno*__________________________
Kim Bueno