[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT JOHN ROMERO; MEMORANDUM OF POINTS & AUTHORITIES**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

**<u>NOTICE OF MOTION AND MOTION TO EXCLUDE</u>**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiff's expert John Romero.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: September 14, 2026

KIRKLAND & ELLIS LLP

By: */s/ Kim Bueno*
*Counsel for Uber*

# TABLE OF CONTENTS

**Page**

**I. MR. ROMERO IS NOT QUALIFIED TO OFFER AN EXPERT OPINION ON THE ADEQUACY OF UBER'S BACKGROUND CHECKS. .......... 3**

**II. MR. ROMERO'S OPINIONS ARE INADMISSIBLE BECAUSE THEY ARE NOT THE PRODUCT OF A RELIABLE METHODOLOGY. .......... 6**

**III. MR. ROMERO'S OPINIONS REGARDING UBER'S BACKGROUND CHECKS ARE IRRELEVANT AND INADMISSIBLE. .......... 10**

A. Mr. Romero's Opinions That Are Irrelevant To Plaintiff's Claims Are Inadmissible. .......... 10

B. Mr. Romero's Opinions On Legal Conclusions Are Improper. .......... 12

C. Mr. Romero's Opinions As To Uber's Knowledge And State Of Mind Are Irrelevant And Inadmissible. .......... 13

**CONCLUSION .......... 14**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) ....................12

*Bryant v. 3M Co.*,
78 F. Supp. 3d 626 (S.D. Miss. 2015)....................5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................7, 8, 9, 10

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ....................3

*Fisher v. Halliburton*,
No. CIV. A. H-05-1731, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009)....................12, 14

*Harrison v. Aztec Well Servicing Co.*,
No. 1:20-CV-038-H, 2022 WL 125315 (N.D. Tex. Jan. 13, 2022)....................4

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) ....................8

*Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*,
574 F. App'x 486 (5th Cir. 2014) ....................10, 12

*Jenkins v. Helmerich & Payne Int'l Drilling Co.*,
577 F. Supp. 3d 587 (S.D. Tex. 2021) ....................14

*Marlin v. Moody Nat'l Bank, N.A.*,
248 F. App'x 534 (5th Cir. 2007) ....................14

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998) ....................8

*Open Cheer & Dance Championship Series LLC v. Varsity Spirit, LLC*,
No. 2:23-CV-155-Z, 2026 WL 1485212 (N.D. Tex. May 27, 2026) ....................7

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983) ....................13

*Renfroe v. Parker*,
974 F.3d 594 (5th Cir. 2020) ....................12

*Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*,
No. 5:05-CV-157, 2010 WL 11531436 (E.D. Tex. June 18, 2010) ....................14

*Salas v. Carpenter*,
980 F.2d 299 (5th Cir. 1992) ....................14

*Thibodeaux v. Gulf Coast Tugs, Inc.*,
668 F. Supp. 3d 486 (E.D. La. 2023) ....................10, 12

*Thomas v. City of Port Arthur*,
No. 1:23-CV-282, 2025 WL 474902 (E.D. Tex. Feb. 12, 2025) ....................8

*U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*,
645 F. Supp. 3d 554 (E.D. La. 2022) ....................8, 10

*United States v. Downing*,
753 F.2d 1224 (3d Cir. 1985) ....................7

*Viterbo v. Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987) ....................8

*Watkins v. Telsmith, Inc.*,
121 F.3d 984 (5th Cir. 1997) ....................8

*Williams v. First Advantage LNS Screening Sols. Inc.*,
No. 1:13CV222-MW/GRJ, 2015 WL 9690018 (N.D. Fla. Mar. 31, 2015) ....................1, 10, 13

*Wilson v. Woods*,
163 F.3d 935 (5th Cir. 1999) ....................4

**Statutes**

34 U.S.C. § 41101 ....................12

Tex. Occ. Code § 2402.107 ....................7, 12

**Rule**

Fed. R. Evid. 702 ....................2, 3, 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff's purported background-check expert, John Romero, is a former police officer who has since worked for two executive-protection firms that provide threat assessment and other security services to high-profile individuals. He now—apparently for the first time—holds himself out as an expert on employment background checks and seeks to offer numerous opinions concerning the alleged inadequacy of Uber's background checks for drivers. The Court should exclude these opinions in their entirety for three independent reasons.

***First***, Mr. Romero is unqualified to offer opinions on the adequacy of Uber's background checks because he possesses no specialized knowledge that would assist the jurors in evaluating Plaintiff's claims. His professional experience is limited to bespoke threat-mitigation and protective services for celebrities and executives—a world apart from the high-volume, statute-driven screening that rideshare platforms conduct. He has no accreditation, no specialized training, no publications, and no prior expert testimony in the field of background screening in the context of independent contractors.

***Second***, his opinions lack any reliable methodology. Mr. Romero identifies no industry standard, no benchmark, and no professionally recognized framework for evaluating background checks. His sole methodology is his own personal practice—the very definition of *ipse dixit*. He also fails to address reliably the fact that Uber fully complied with the Texas Transportation Network Company ("TNC") statute, the only objective legal standard governing its background checks.

***Third***, Mr. Romero's opinions are irrelevant and legally improper. Many of his proposed additional screening steps (resumes, interviews, references) have no connection to the incident at issue because he does not—and cannot—claim those steps would have uncovered disqualifying information about the driver, Victor Le. His remaining opinions are thinly veiled legal conclusions: he opines on Uber's legal responsibility for contractor work, pronounces Uber's conduct "unreasonable," and speculates freely about Uber's knowledge and state of mind—all matters reserved for the Court and the jury, not for expert testimony.

In short, Mr. Romero lacks the qualifications, the methodology, and the relevance that Rule 702 demands. His opinions would not assist the trier of fact; they would only confuse and mislead. The Court should exclude them.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Romero is qualified to render opinions about the adequacy of Uber's background checks?

2. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Romero's proffered testimony is admissible pursuant to Federal Rule of Evidence 702, where Mr. Romero's background check opinions lack a reliable methodology and are based solely on ipse dixit?

3. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Romero's proffered testimony is admissible where Mr. Romero's proffered opinions are irrelevant and would not aid the jury?

## BACKGROUND

John Romero is the Director of Investigations for 190 Intel, Inc. *See* Romero Rep. at 1 (Ex. 1). Prior to that, he held the same title at Black Box Security, Inc. *Id.* In his report, he states that he "conduct[s] and supervise[s] internal and external background checks and investigations, and advise[s] clients, including organizations and high-profile individuals on screening, criminal history checks and identity verification for safety-sensitive roles." *Id.* More specifically, he claims he "ha[s] been responsible" for more than 100 background checks annually, along with 50 threat assessments. *Id.*

His employers, however, are not accredited background check companies. Instead, both companies describe themselves as providers of threat mitigation and protective services to high-profile individuals. *See* https://190intel.com/about (Ex. 2) ("190 Intel delivers complete threat resolution for high-profile individuals, executives, celebrities, and public figures facing digital and physical threats."); https://bbxsecurity.com/services/ (Ex. 3) (listing services provided as executive protection, residential security, investigation and surveillance, cybersecurity, risk assessment, and film and photo shoots). *See also* Rep. at 1 (describing Black Box Security as "an executive-protection company serving high-profile and high-net-worth clients"). Neither company's website advertises that it offers routine employment background checks.

Mr. Romero's LinkedIn profile claims he has "expertise in crisis communications, emergency operations and complex investigations," but it does not suggest he has any expertise in conducting background checks. *See* https://www.linkedin.com/in/execprotect/ (Ex. 4). Mr. Romero does not appear

to be accredited by or a member of the Professional Background Screening Association ("PBSA") or any other relevant professional organization. It does not appear that he has any specialized training in the field of background checks, or that he has published any articles or been asked to speak on that topic. Mr. Romero does not indicate that he has ever served as an expert witness on this topic.

Despite his lack of relevant experience, Mr. Romero seeks to testify in this litigation that Uber's background checks were inadequate and that a more rigorous background check would have uncovered information that would have disqualified Mr. Le from gaining access to the Uber platform. In particular, he opines that (1) as the alleged hirer, Uber is responsible for the background checks; (2) Uber's background checks screen for "safety-sensitive positions"; (3) a background check should include all court levels everywhere the candidate lived or worked; (4) that "reasonably careful companies" conduct such searches; (5) that Uber "failed to meet even the minimum standards for background investigations" and could not rely on Checkr to do so; (6) Uber chose cheap and quick background checks over more exhaustive options; (7) Uber "skipped other standard screening steps," rendering its background checks "even more dangerous and substandard"; (8) Uber conducted an incomplete background check for Mr. Le; and (9) had Uber conducted a more comprehensive background check, disqualifying records for Mr. Le would have been found. Rep. at 4-5.

## LEGAL STANDARD

Under the amendments to Federal Rule of Evidence 702, it is the propounding party's burden to establish by a preponderance of the evidence that an expert's testimony is admissible. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). The Rule 702 standard is addressed in Uber's Motion to Exclude Lacey Keller (filed concurrently), and Uber incorporates that discussion herein by reference.

## ARGUMENT

### I. MR. ROMERO IS NOT QUALIFIED TO OFFER AN EXPERT OPINION ON THE ADEQUACY OF UBER'S BACKGROUND CHECKS.

Mr. Romero has no expertise that would qualify him to offer an expert opinion regarding the adequacy of Uber's background checks. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v.*

*Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "Accordingly, the Court must ensure that a particular expert possesses sufficient specialized knowledge to assist the jurors in deciding the particular issues." *Harrison v. Aztec Well Servicing Co.*, No. 1:20-CV-038-H, 2022 WL 125315, at *8 (N.D. Tex. Jan. 13, 2022) (internal quotations and citation omitted). Here, Mr. Romero possesses no specialized knowledge that would assist the jurors in evaluating Plaintiff's claims.

Although Mr. Romero claims he has been responsible for hundreds of background investigations, Rep. at 1, all of the available evidence suggests those were very different than the types of background checks employed by rideshare companies. Neither of the companies Mr. Romero has worked for holds itself out as offering background check services at all. Instead, both describe themselves as providers of threat mitigation and protective services to high-profile individuals. *See* https://190intel.com/about ("190 Intel delivers complete threat resolution for high-profile individuals, executives, celebrities, and public figures facing digital and physical threats."); https://bbxsecurity.com/services/ (listing services provided as executive protection, residential security, investigation and surveillance, cybersecurity, risk assessment, and film and photo shoots). *See also* Rep. at 1 (describing Black Box Security as "an executive-protection company serving high-profile and high-net-worth clients"). Indeed, Mr. Romero testified that these companies are "boutique business[es] for the entertainment industry, for vulnerable public figures, populations." Romero Dep. (Rough) 105:1-5 (Ex. 5). Neither company's website advertises that it offers routine background checks for independent contractors. Mr. Romero's LinkedIn profile further undermines his qualifications, describing his expertise as "crisis communications, emergency operations and complex investigations." *See* https://www.linkedin.com/in/execprotect/. Nothing in that profile suggests that he has any expertise in conducting background checks.

Furthermore, it appears Mr. Romero is not accredited by or a member of the PBSA or any other relevant professional organization.[1] There is no indication in his report or on his CV[2] that he has any specialized training in the field of background checks, nor has he published any articles or been invited to speak on that topic. And there is no indication that he has ever served as an expert witness on background checks. Mr. Romero has no experience with background checks in the rideshare or any other consumer-facing industry, or in any circumstance in which background checks must be conducted at scale. Instead, he would only be able to tell the jury about his personal experience with background investigations for high-profile, high-net-worth individuals whose needs are very different from those of a rideshare company. As his own report states, "[t]hese clients face unusual safety and privacy concerns where candidates will potentially have close access to the client, their family, business and other sensitive areas." Rep. at 1. Nothing explains why experience limited to this "unusual" context would translate to the more typical context in which background checks are conducted, and Mr. Romero's lack of any connection to the recognized professional infrastructure governing this field further underscores his lack of qualifications to opine on the adequacy of background screening programs.

Taken together, these factors demonstrate that he lacks the knowledge, training, skills, and experience necessary to opine on the adequacy of Uber's background check policy. *See Bryant v. 3M Co.*, 78 F. Supp. 3d 626, 631 (S.D. Miss. 2015) (finding expert to be unqualified where, among other things, he was not certified by any organization in the field, was not a member of any professional association, and his opinions had never been published). His opinions regarding Uber's background check policy should be excluded on this basis alone.

[1] PBSA maintains a formal accreditation program and comprehensive body of professional standards for the background screening industry. PBSA accreditation is widely regarded in the legal, compliance, and HR communities as the gold standard for background screening firms, requiring rigorous independent audits of data quality, compliance, accuracy, and operational protocols. Neither Mr. Romero nor either of his employers is a PBSA member or accredited. *See* Romero Dep. (Rough) 134:7-135:6. Uber's background check vendor, Checkr, by contrast, has maintained PBSA accreditation since 2015. *See* Hubbard Dep. 248:10-12.

[2] Although his CV indicates that he has experience in "Background investigations, pre-employment and pre-engagement screening," Romero Rep. App. A, Mr. Romero testified that he updated his CV specifically "for the attorneys" in this litigation, Romero Dep. (Rough) 70:16-71:15.

## II. MR. ROMERO'S OPINIONS ARE INADMISSIBLE BECAUSE THEY ARE NOT THE PRODUCT OF A RELIABLE METHODOLOGY.

Mr. Romero opines generally that Uber's background screening "failed to meet even the minimum standards for background investigations . . . ." Rep. at 5. But that conclusion is not the product of any identified methodology or the application of specialized expertise, which separately makes his opinions inadmissible.

Mr. Romero offers nothing but his own personal opinions and practices as to what constitutes an adequate background check. The reality is that the measures he proposes are not recognized practices in the background screening industry at all. For example, live interviews have never been an industry standard for rideshare driver screening. Traditional interviews are designed to assess cultural fit and role-specific competencies, but they offer no value in identifying criminal history or safety risks. No study has demonstrated that a job candidate displays body language or other demeanor evidence signaling a propensity toward criminal behavior in a live interview. Reference checks are similarly disfavored in the modern hiring landscape. The safety-related information a reference might theoretically surface is more reliably and consistently captured through objective tools such as criminal background checks and motor vehicle record reviews. *See generally* Morris Rep. 11-12 (Ex. 6).

Mr. Romero has no basis for his contrary views. He cites no industry standards at all, much less any requiring all of the additional steps he says are necessary (e.g., fingerprinting, interviews, etc.). He points to no benchmark against which he evaluated Uber's screening process, and no methodology connecting these additional steps to his conclusion that the process was deficient. He does not identify procedures used by other rideshare companies, much less identify another company whose screening process includes every measure he claims Uber should have taken. Nor does he identify any best practices published by a professional organization in the industry. Although he refers occasionally to "standard practice," *see* Rep. at 5, 8, 9, 21, he is only referring to ***his own*** practices. The lack of an objective standard is further underscored by the fact that the only materials Mr. Romero considered in reaching his opinions were depositions and other discovery from this litigation. *See id.* at 4, App. B. And the only methodology he identified was "the same methods and analysis that I deploy when advising a client who has retained me to conduct a screening and background check for an applicant for a safety-sensitive role." Rep. at 4;

*see also* Romero Dep. (Rough) 94:18-95:23 (testifying that 190 Intel and Black Box Security have no written procedures governing background investigations). In other words, his personal practices ***are*** his methodology—which is not sufficient to meet Rule 702's requirements. *See, e.g.*, *Open Cheer & Dance Championship Series LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2026 WL 1485212, at *5 (N.D. Tex. May 27, 2026) (excluding expert opinion where expert "offer[ed] no methodology for how he arrived at this conclusion"); *Allstate Ins. Co. v. Gen. Elec. Co.*, No. CIV.A. 00-0523, 2002 WL 34373485, at *10 (W.D. La. Feb. 4, 2002) (excluding plaintiff's expert where plaintiff did "not show[] Mr. Hero has relied upon accepted methodology to support the conclusions noted above. The expert's unsupported statement is insufficient.").

Mr. Romero's failure to identify objective industry standards to support his beliefs is problematic because "[w]idespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism." *Daubert*, 509 U.S. at 594 (quoting *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir. 1985)). This is all the more true because Mr. Romero's statements about what constitutes an adequate background check are inconsistent with Texas law. Specifically, the Texas TNC statute imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber, Tex. Occ. Code § 2402.107, including requiring Uber to search (or to cause a search to be conducted) for prior criminal convictions in a commercial multistate database, in the national sex offender registry, and in the Texas sex offender registry, *id.* § 2402.107(a)(2)(A)-(C). There is no dispute that Uber ***did*** cause a background check on Mr. Le to be conducted at the time he applied for access to the platform as a driver in January 2020 that fulfilled all the requirements of the Texas TNC statute, and those searches came back clear. There is thus no basis for Mr. Romero's belief that Uber should have done more, or for his assumption that doing more would have generated a different result in Plaintiff's case. Rather, as a matter of law, Uber did all it was required to do with regard to its background check of Mr. Le, as set forth in more detail in Uber's pending summary judgment motion. *See* Dkt. 7329.

Mr. Romero's reliance on his own experience being "responsible" for background checks in entirely different circumstances cannot salvage his opinions. The Fifth Circuit has repeatedly excluded

testimony of even well-qualified experts who fail to identify a reliable methodological basis for their opinions. *E.g.*, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991-92 (5th Cir. 1997) (excluding expert analysis that "relied on his experience" because it "lacked the requisite indicia of reliability"); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (excluding testimony of experience-based expert who had "neither the sufficient facts nor the reliable methodology that would warrant its inclusion as evidence"); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 273, 279 (5th Cir. 1998) (excluding opinion of "well-qualified medical specialist" where his "causation opinion was not based on scientific knowledge that would assist the trier of fact"). This is so because "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (excluding expert opinion that "simply lacks the foundation and reliability necessary to support expert testimony"); *see also U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 559 (E.D. La. 2022) ("[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded."); *Thomas v. City of Port Arthur*, No. 1:23-CV-282, 2025 WL 474902, at *4 (E.D. Tex. Feb. 12, 2025) ("An expert's opinion relies on *ipse dixit* when the opinion advances unproven and unsupported assertions that rest solely on the expert's authority.").

The remaining *Daubert* factors confirm the same conclusion. Mr. Romero's approach has never been tested—he identifies no study or analysis validating that his proposed screening measures reduce the risk of driver misconduct. His methodology has never been subjected to peer review or publication; he has authored no articles on background-check standards and has never presented his approach for scrutiny by other professionals in the field. And he identifies no known or potential rate of error for his proposed framework—a critical omission given the well-documented risk of false positives in name-based criminal record searches. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993). Each of these factors weighs against admissibility.

Mr. Romero's opinions also bear the hallmarks of testimony developed exclusively for litigation rather than from independent professional work. He has never previously been retained as an expert on background-check adequacy, has never testified on this topic, and appears to have formulated his "standard practice" opinions specifically for this case. Courts appropriately subject such litigation-

generated opinions to heightened scrutiny. *See Daubert*, 509 U.S. at 595 ("[W]hether the expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."); Fed. R. Evid. 702 advisory committee's note (2000 amendment) ("If the expert is relying solely or primarily on experience, then the expert must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). Mr. Romero has offered no such explanation here.

Mr. Romero also fails to consider the tradeoffs, which Uber has publicly acknowledged, between stricter background checks and competing civil rights priorities. Among other things, Mr. Romero fails to consider that Uber develops its screening criteria in consultation with lawmakers, screening experts, and civil rights advocates, and works to balance rider safety with fair access to economic opportunity across more than 60 different background-check adjudication standards nationwide. Mr. Romero similarly fails to consider that Uber's decisions about whether and when to implement a particular screening configuration involve assessment of numerous factors, including, but not limited to, expert feedback on recidivism data, as well as legal, policy, and regulatory considerations across multiple jurisdictions, operational readiness and adjudication accuracy, false-positive rates and their impact on driver access, and the interaction of any screening change with Uber's broader multilayered safety system. Robust and established methodologies balance these considerations; Mr. Romero does not even acknowledge them.

Finally, Mr. Romero's approach also reflects a well-recognized cognitive error: hindsight bias, which is the tendency to view past events as having been more predictable than they actually were. Once an assault has occurred, it is cognitively natural but scientifically unsound to trace a causal narrative backward through earlier incidents and conclude that the outcome was predictable. The scientific literature on sexual violence consistently demonstrates that even among individuals with a documented history of sexual aggression, a substantial proportion do not re-offend. The notion that sexually aggressive behavior follows a predictable, progressive trajectory is a simplification that does not reflect the heterogeneous pathways documented in longitudinal research. Mr. Romero's backward-looking reasoning—that a more thorough background check would have prevented this incident—improperly treats hindsight knowledge

as foresight and should be given no weight. All this further illustrates that Mr. Romero's background check opinions are based on his mere say-so, and must be excluded.

## III. MR. ROMERO'S OPINIONS REGARDING UBER'S BACKGROUND CHECKS ARE IRRELEVANT AND INADMISSIBLE.

### A. Mr. Romero's Opinions That Are Irrelevant To Plaintiff's Claims Are Inadmissible.

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702(a)). "[T]he district court must determine whether the expert's reasoning or methodology 'fits' the facts of the case and whether it will assist the trier of fact to understand the evidence, i.e., whether it is relevant." *Id*. Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[ ] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014); *see also Thibodeaux v. Gulf Coast Tugs, Inc.*, 668 F. Supp. 3d 486, 492-93 (E.D. La. 2023). These principles compel exclusion of several of Mr. Romero's opinions.

***First***, many of Mr. Romero's opinions purport to identify certain additional measures that Uber should have included in its background checks but fail to link them to the outcome in Plaintiff's case. Specifically, Mr. Romero opines that "foregoing a resume, employment check, interview, and reference check" made the background check that was conducted "even more dangerous and substandard." Rep. at 5; *see also, e.g.*, *id.* at 11 (fingerprinting); *id.* at 12 (military records). But this case is not a referendum on Uber's background check procedures in the abstract. The pertinent question is whether any supposed deficiencies in Uber's background checks of Mr. Le caused the specific injuries alleged by Plaintiff. And Mr. Romero does not claim—and could not claim—that resumes, employment checks, interviews, reference checks, fingerprinting, or review of military records would have uncovered information that would have disqualified Mr. Le from gaining access to the Uber platform. Mr. Romero's failure to connect any of these additional steps to the assault at issue renders his opinion unhelpful to the jury to determine any fact actually in issue. *See U.S. All. Grp.*, 645 F. Supp. 3d at 560 (explaining that an expert's reasoning or methodology must "fit" the facts of the case to assist the trier of fact).

***Second***, Mr. Romero opines that if Uber had only conducted a proper search at the Fort Worth Municipal Court, it would have found Mr. Le's 2017 citation and he never would have been allowed onto the platform. Rep. at 23, App. C. But the question is not whether a record is theoretically findable, particularly in hindsight, when one knows exactly what one is looking for. The question is whether Uber fulfilled its obligations under the Texas TNC statute and, as discussed above, there is no question it did. Moreover, even if the record could be located, there is a separate question as to whether that record would have been reportable. Under the Fair Credit Reporting Act, a consumer reporting agency may report a record only when it can match at least three identifiers—e.g., name, date of birth, and address. *See* Expert Rep. of Jason Morris at 9 (Ex. 6); *see also* Hubbard Dep. 321:7-322:18 (Ex. 7.) Here, the Fort Worth Municipal Court record only contains Mr. Le's birth year—not his full date of birth. And "Le" is the third most common Vietnamese surname, substantially increasing the risk of a false positive. Morris Rep. at 14. Because the record lacks a third matching identifier, it could not have been reported in a background check, even if it had been found. Accordingly, Mr. Romero's assertion that a proper search would have found a disqualifying record fundamentally misunderstands how background checks work (further calling into question his qualifications) and would only confuse and mislead the jury.

***Third***, Mr. Romero's opinions on fingerprinting specifically must also be excluded. He suggests that Uber should have employed fingerprint-based background checks. But Mr. Le was never fingerprinted in connection with the 2017 Fort Worth Municipal Court citation. The Fort Worth Municipal Court only fingerprints defendants in family violence cases, and there is no indication Mr. Le was ever booked in connection with that citation. Phelan Rep. at 33 (Ex. 8). A fingerprint-based check would therefore have been no more effective than the name-based screening Uber employed—it simply would not have captured a record that was never entered into the fingerprint system in the first place.[3]

[3] Moreover, Mr. Romero does not address other issues with respect to fingerprinting, including the fact that Uber is legally prohibited from accessing the FBI's NCIC and III fingerprint databases, which were created for law enforcement and are available to private entities only in limited, enumerated circumstances under 34 U.S.C. § 41101—circumstances that do not apply here. Nor does he reconcile his opinion with the fact that fingerprint-based checks are not required by the Texas TNC statute, which specifies the use of "a commercial multistate and multijurisdictional criminal records locator or similar commercial nationwide database." Tex. Occ. Code § 2402.107(a)(2)(A). Mr. Romero's fingerprinting recommendation thus reflects a fundamental misunderstanding of both the legal landscape and the practical limitations of the screening methods he advocates.

***Finally***, it is no answer to these gaps in Mr. Romero's opinion to say it is a matter of common sense that additional interventions would necessarily have prevented an assault. The necessary premise of such an opinion—that additional screening measures could have predicted or prevented the assault at issue—is contrary to the established scientific literature on violence prediction. Peer-reviewed meta-analyses have established that no validated tool or screening process can accurately predict whether an individual without a criminal history of sexual offenses will commit sexual violence in the future. Expert Rep. of K. Zgoba at 28-29 (Ex. 9). Risk assessment tools developed for criminal justice and psychiatric settings achieve only moderate accuracy and produce unacceptably high false-positive rates when applied to the general population, where the base rate of sexual violence is low. For this reason, too, Mr. Romero cannot bridge the gap in his opinions and make them apply to this case.

**B. <u>Mr. Romero's Opinions On Legal Conclusions Are Improper.</u>**

Mr. Romero offers several opinions that are improper legal conclusions and should be excluded on that basis. It is well-established that "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citation omitted); *see also Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (finding inadmissible an expert's testimony about whether the defendant breached its fiduciary duties because it was a "legal opinion" and "an issue for the trier of fact to decide"); *Thibodeaux*, 668 F. Supp. 3d at 492-93 ("an expert cannot make 'legal conclusions reserved for the court,' credit or discredit witness testimony, or 'otherwise make[ ] factual determinations reserved for the trier of fact'") (quoting *Highland Cap. Mgmt.*, 574 F. App'x at 491); *Fisher v. Halliburton*, No. CIV. A. H-05-1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (an expert's "opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant") (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).

Here, for example, Mr. Romero testified at his deposition that in his opinion, Uber violated the Texas TNC statute. *See* Romero Dep. (Rough) 156:23-157:7 ("I am going to tell you that had they done what the TNC requires, Victor Le would have had a disqualifying event and he would not have been onboarded."). That is plainly wrong, as explained above. Moreover, Mr. Romero is not an attorney and had never even seen a TNC statute prior to this litigation. *Id.* 152:5-12. Nevertheless, he believes he can offer an expert opinion on what the statute requires because he "made arrests based on probable cause

without calling a city attorney or a district attorney" when he was a police officer. *Id*. 158:21-159:3. It is clearly improper for Mr. Romero to testify that Uber violated the TNC statute.

In addition, Mr. Romero opines that "As it relates to background checks, the hirer (in this case, Uber) is responsible for ensuring that background checks are conducted." Rep. at 4; *see also id.* at 8 ("Uber—Not Checkr—is Responsible for the Adequacy of its Background Checks"). But whether Uber is responsible for the conduct of an independent contractor is also a legal conclusion that is not the proper subject of expert testimony.

Similarly, Mr. Romero offers a number of opinions about the reasonableness of Uber's background check procedures. *See*, *e.g.*, Rep. at 5 (opining on steps "reasonably careful companies" would take); *id*. ("Uber failed to meet even the minimum standards for background investigations…."); *id.* at 8 (same); *id.* at 13 ("It is reasonable and standard, however, to manually check every location the candidate has ever lived…"); *id.* at 21 ("These decisions —omitting to order a search of all criminal records in the places the driver had lived, including municipal court records, and omitting the candidate's state of residence, here Texas, from the state-level search — violated standard and reasonable practices for hirers screening applicants for safety-sensitive positions."). But whether Uber's conduct was reasonable is a legal question reserved for the trier of fact, and not the proper subject of expert testimony. *See Williams v. First Advantage LNS Screening Sols. Inc.*, No. 1:13CV222-MW/GRJ, 2015 WL 9690018, at *3 (N.D. Fla. Mar. 31, 2015) (holding, with respect to background check expert, testimony as to whether defendant's conduct was reasonable was inadmissible).

In sum, Mr. Romero's opinions on questions of law are impermissible and should be excluded.

### C. Mr. Romero's Opinions As To Uber's Knowledge And State Of Mind Are Irrelevant And Inadmissible.

Mr. Romero's opinions about Uber's supposed knowledge should be excluded because questions pertaining to state of mind are properly for the trier of fact. *See*, *e.g.*, *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("an expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible") (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)); *Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 577 F. Supp. 3d 587, 597 (S.D. Tex. 2021) (excluding expert opinion where expert "arrive[d] at this conclusion by noting the instances in the record where the

Defendants were apparently made aware of an issue" but the expert had "no special insight into whether the Defendants knew what was happening"); *Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*, No. 5:05-CV-157, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010) ("The question of intent is a classic jury question and not one for the experts."); *Fisher*, 2009 WL 5216949, at *2 ("[A] trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury.").

Nevertheless, Mr. Romero's report is littered with references to Uber's supposed knowledge and state of mind. *See* Rep. at 8 ("Uber understood that it needed to conduct full and thorough screening; Uber knew that the Checkr background check packages it selected did not include a search for records in the places they are most likely to exist. Uber knew that they were onboarding drivers and giving them platform access with background checks that did not meet minimum standards including the standards Uber alleged to have set for itself."); *id*. at 16 (Uber was "aware" that "a background check limited exclusively to county records without also separately searching municipal court records, cannot be considered complete"); *id*. at 17 ("Uber knew that municipal court records were a critical component of a complete criminal background check and were especially relevant to a company operating a transportation network"); *id.* at 20 ("When Uber selected a background check package that was used for Le's background check, cost and speed, not thoroughness or rigor, drove its choices."); *id.* at 24 ("Uber knew that local criminal records were being missed in its background checks but did nothing to address it in time to prevent Le from being onboarded."). These opinions invade the province of the jury and are not a proper subject of expert testimony. They are irrelevant and should be excluded.

**CONCLUSION**

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert John Romero.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*<u>/s/ Kim Bueno</u>*
Kim Bueno