[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT LACEY R. KELLER; MEMORANDUM OF POINTS & AUTHORITIES**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiff's expert Lacey R. Keller.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: September 14, 2026

KIRKLAND & ELLIS LLP

By: */s/Kim Bueno*

*Counsel for Uber*

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff has designated Lacey Keller, a purported data scientist, to opine on the reported rates of alleged sexual assault and misconduct ("SA" or "SM") related to rides arranged on the Uber platform, and to offer case-specific opinions about purported risk factors for sexual assault that were present during Plaintiff's ride. The core of Ms. Keller's lengthy report is that "hundreds of thousands of Sexual Assault and Sexual Misconduct incidents" were reported to Uber in the U.S. from 2017 through 2025, at an average rate of once "every eight minutes;" and that Mr. Le's record with Uber purportedly exhibited risk factors for sexual assault.

Ms. Keller's opinions should be excluded in their entirety for three reasons.

***First***, Ms. Keller's opinions regarding the statistics of reported SA/SM on the Uber platform (Opinions 1-3) are substantially similar to the opinions in her *Dean* report and should be excluded for all the reasons set forth in Uber's prior Motion to Exclude the Opinions of Ms. Keller. *See* Dkt. 4337. That motion is incorporated herein by reference, and the arguments therein are preserved for appellate review pursuant to the parties' Stipulation. *See* Dkt. 7302.

***Second***, Ms. Keller's remaining opinions—that Mr. Le had multiple Uber accounts, including one that had been banned in 2016 (Opinion 4), and that Mr. Le's driving record on the Uber platform exhibited risk factors for SA/SM (Opinion 5)—are fact-witness testimony masquerading as expert opinions. In these sections of her report, Ms. Keller merely parrots the factual record without applying the statistical expertise she claims as a data scientist. These "opinions"—which effectively seek to prop up counsel's arguments—do not constitute proper expert testimony and should be excluded.

***Third***, Ms. Keller's Opinion 5 should also be excluded because it does not fit the facts or issues in this case. Ms. Keller does not (and cannot) opine that the purported risk factors made it foreseeable that Mr. Le would assault Plaintiff, or that Uber should have taken any different action before or during the subject ride. The opinion therefore would not assist the jury in deciding whether Uber acted unreasonably and should be excluded on that ground as well.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Ms. Keller's proffered testimony in Opinions 1-3 is admissible pursuant to Federal Rule of Evidence 702, because bare statistics without relevant context are unhelpful to the jury?
2. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Ms. Keller's proffered testimony in Opinions 4-5 is admissible pursuant to Federal Rule of Evidence 702, because these "opinions" are mere factual recitations without expert analysis?
3. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Ms. Keller's proffered testimony in Opinion 5 is admissible pursuant to Federal Rule of Evidence 702, because this opinion does not fit the facts of the case and is therefore irrelevant?

## BACKGROUND

Lacey Keller, a self-described data scientist, claims to have "calculate[d] the number of, rates of, and trends related to SA/SM Incidents reported to Uber between 2017 and 2025." Keller Rep. ¶ 3 (Ex. 1). She also claims to have "conduct[ed] data analyses related to Victor Le" and to have "evaluate[d] if any of the data and information Uber collected on Mr. Le before and after [Plaintiff's] incident aligned with various 'risk factors,' 'predictors,' or 'precursors' of SA/SM that Uber itself identified and tracked." *Id.* ¶¶ 4-5.

Based on these purported analyses, Ms. Keller offers what she identifies as five opinions. Opinions 1, 2, and 3 all relate to the overall number and frequency of reported SA/SM incidents on the Uber platform between 2017 and 2025, culminating in the claim that "[f]rom 2017 through 2025, an SA/SM Incident was reported to Uber the equivalent of every eight (7.6) minutes," *id.* ¶ 46, and that such incidents were likely underreported, *id.* ¶ 55.[1] Ms. Keller states that she arrived at these opinions by analyzing data produced by Uber regarding incidents of SA/SM that were reported on the platform. Importantly, however,

[1] *See generally id.* ¶¶ 29-38 ("Opinion 1: [redacted] *id.* ¶¶ 39-43 ("Opinion 2: Uber began systematically categorizing and tracking Rape incident reports in 2017. From 2017 through 2025, [redacted] *id.* ¶¶ 44-71 ("Opinion 3: Uber's Flack Incident Report Classification Data show hundreds of thousands of Sexual Assault and Sexual Misconduct Incidents reported to Uber in the U.S. from 2017 through 2025.").

Ms. Keller asserts these statistics without context and without comparison to any non-Uber baseline. Ms. Keller conceded as much at her deposition. 9/14/2026 Keller Rough Dep. Tr. 47:8-18 (Ex. 2) (Q. "[Y]ou're not offering any opinion on whether the rate of any type of sexual assault or sexual misconduct on the Uber platform is higher or lower than the rate of that reported on other transportation systems; right?" A. "This report does not reflect that opinion. . . . [A]s far as this report's concerned, that is not included in this because that's not what I – I am showing."); *see also* 10/27/2025 *Dean* Dep. Tr. 78:5-11 (Ex. 3) (Keller testifying that such a comparison "was not necessary to do my analysis . . . ."); *id.* 40:13-41:6 (Ms. Keller testifying that, because "the purpose of [her] report is to show . . . what data Uber had in its possession[,] . . . making comparisons to the taxi industry" or other ridesharing services "was not necessary").[2]

Opinion 4 is that "Victor Le had multiple Uber accounts" and that "Uber approved Mr. Le as a Driver in January 2020 despite maintaining data sufficient to link him to his four prior accounts, including an account that was rejected and banned in 2016." *See* Keller Rep. ¶¶ 72-75. Unlike the first three opinions, however, Opinion 4 rests entirely on Ms. Keller's recitation of the factual record and does not purport to contain any statistical analysis conducted by Ms. Keller. *Id.*

Opinion 5 is that "Uber had identified certain Driver activity and trip-related variables as Risk Factors, Predictors, or Precursors of SA/SM," and that these risk factors were evident in Mr. Le's overall driving record with Uber and during the subject ride specifically. *See* Keller Rep. ¶¶ 76-100. For example, Ms. Keller asserts, based on her examination of documents produced by Uber, that Mr. Le disproportionately drove late at night and cancelled ride requests with unusually high frequency. *See, e.g.*, *id.* ¶¶ 85-94. She also observes that the subject ride occurred late at night, originated at a bar, was a guest ride, and involved an opposite gender driver-rider pairing. *Id.* ¶ 100. Like Opinion 4, however, Opinion 5 is little more than a recitation of the factual record without any analysis drawing on Ms. Keller's self-described qualification as a data scientist. Moreover, Ms. Keller does not opine that Uber should have done anything differently with regard to Mr. Le in general or the subject ride in particular.

---

[2] Ms. Keller's deposition in this matter occurred on September 14.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, the party offering testimony of a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" must demonstrate to the Court by a preponderance of the evidence that (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. A witness may only offer opinion testimony if she qualifies as an expert "by knowledge, skill, experience, training, or education[.]" *Id.*

"[T]he threshold inquiry is whether the expert witness possesses the requisite qualifications to render an opinion on particular subject matter." *Addison v. La. Reg'l Landfill Co.*, No. 19-11133, 2024 WL 3431490, at *3 (E.D. La. July 16, 2024); *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."). But even testimony from a qualified expert is admissible "only if it is both relevant and reliable." *Ruffin v. BP Expl. & Prod., Inc.*, 176 F.4th 855, 859 (5th Cir. 2026) (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). Because expert testimony "can be both powerful and quite misleading," the Court plays an important "gatekeeping role" in ensuring that the requirements of Rule 702 are satisfied. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 597 (1993); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) (emphasizing the trial court's "'gatekeeper' role" in "screening" expert evidence for relevance and reliability). Recent amendments to Rule 702 underscore the importance of that gatekeeping role and emphasize that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" go to the admissibility of expert evidence, not its weight. *Open Cheer & Dance Championship Series LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2026 WL 1485212, at *2 (N.D. Tex. May 27, 2026) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment); *see also FBCC Citypoint LP v. City of Austin*, No. A-22-CV-1272-DAE, 2024 WL 5699778, at *2 (W.D. Tex. Nov. 5, 2024) (same).

The U.S. Court of Appeals for the Fifth Circuit has held that, under amended Rule 702, "[t]he reliability analysis mandated by Rule 702 applies to *all* aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Williams v. BP Expl. & Prod., Inc.*, 143 F.4th 593, 598 (5th Cir. 2026) (emphasis added) (internal quotation marks and citation omitted); *see also Open Cheer*, 2026 WL 1485212, at *2 (noting that "the 2023 amendment specifically rebuked lower-court decisions holding" that the Rule 702 factors went to "weight and not admissibility" and that "it is now firmly within the trial court's gatekeeping function to exclude expert testimony that lacks a sufficient grounding in a reliable methodology"); *Finite Util. Consulting, LLC v. Tawa Inc.*, No. H-23-432, 2025 WL 1544044, at *2 (S.D. Tex. May 29, 2025) (noting that "the admission of inadequately supported and flawed opinion evidence" was the "kind of error" "that led to the recent 2023 amendment to Rule 702.").

## ARGUMENT

### I. MS. KELLER'S OPINIONS 1-3 SHOULD BE EXCLUDED BECAUSE BARE STATISTICS WITHOUT CONTEXT ARE UNHELPFUL TO THE JURY.

Ms. Keller's opinions regarding the frequency of reported SA/SM incidents on the Uber platform should be excluded because Plaintiff cannot demonstrate that abstract statistics lacking relevant context will be helpful to the trier of fact. *See* Fed. R. Evid. 702(a) (expert opinion only admissible if party offering opinion demonstrates by a preponderance of the evidence that it "will help the trier of fact to understand the evidence or to determine a fact in issue"); *Cuevas v. E.I. DuPont de Nemours & Co.*, 956 F. Supp. 1306, 1310 (S.D. Miss. 1997) (expert opinion properly excluded when "there is no comparison for the jury to evaluate" because such "testimony is not helpful to the jury") (citing *Porter v. Whitehall Lab'ys., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)). A raw count that combines events of radically different severity and lacks a meaningful comparator cannot show how often a serious assault occurred, how Uber's reported rate compares with relevant baselines, or whether the numbers bear on negligence. Instead, it invites the jury to infer danger from an undifferentiated total. For the same reason, permitting the jury to hear these statistics without having the equivalent numbers for relevant comparator groups also risks unfair prejudice to Uber, as well as a substantial danger of confusing the issues, misleading the jury, and undue delay. *See*

Fed. R. Evid. 403. These arguments are set forth more fully in Uber's Motion to Exclude Ms. Keller's Opinions from the *Dean* trial, Dkt. 4337, which Uber incorporates here by reference. Because Ms. Keller's Opinions 1-3 here are substantially the same as those she offered in her *Dean* report (except that the current report updates the time period of the analysis from 2017-2024 to 2017-2025), they should be excluded for the same reasons set forth in Uber's prior briefing.

## II. MS. KELLER'S OPINIONS 4 AND 5 SHOULD BE EXCLUDED BECAUSE THEY MERELY RECITE THE FACTUAL RECORD.

Ms. Keller's Opinion 4 (that Uber allegedly "approved Mr. Le as a Driver in January 2020 despite maintaining data sufficient to link him to his four prior accounts, including an account that was rejected and banned in 2016") and Opinion 5 (that both Mr. Le's driving record on the Uber platform and the subject ride allegedly exhibited known "Risk Factors, Predictors, or Precursors of SA/SM") should be excluded because neither is a proper expert opinion.[3]

As district courts within the Fifth Circuit have repeatedly recognized, to satisfy the dictates of Rule 702, an expert must actually apply her "expertise" to the facts of the case rather than taking fact witness testimony and dressing it up as an expert opinion. *See, e.g.*, *Alexander v. Intracoastal Tug & Barge Co.*, No. 23-2566, 2025 WL 306359, at *7 (E.D. La. Jan. 27, 2025) ("What experts cannot do . . . is present facts without applying their expertise to assist the jury in analyzing them."); *Neely v. Great Escapes Pelahatchie, LP*, No. 3:21-CV-786-DPJ-ASH, 2024 WL 5125140, at *7 (S.D. Miss. Dec. 16, 2024) ("[A]n expert may not merely 'parrot' what he has been provided.") (citation omitted); *Terral River Serv., Inc. v. SCF Marine, Inc.*, No. 3:19-CV-00406, 2020 WL 7711365, at *5 (W.D. La. Dec. 28, 2020) ("Although an expert witness may provide opinions regarding factual issues and rely on factual assumptions in forming those opinions, the opinion must add something and not merely be a gratuitous interpretation [of] the factual record.") (citation omitted); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)

---

[3] Ms. Keller's Opinion 1(D)—that "[b]etween 2021 and 2025, Uber classified [Plaintiff's] incident under at least three categories at three different points in time," Keller Rep. ¶ 35; *see id.* ¶¶ 35-38—suffers from the same defect. It is also irrelevant because Uber's internal, after-the-fact classification of the subject incident has no bearing on whether Uber was negligent at the time of the subject ride.

("[T]he existence of sufficient facts *and* a reliable methodology is in all instances mandatory.") (emphasis added).

Ms. Keller's Opinions 4 and 5 contravene this requirement because they merely regurgitate the record without offering any expert analysis. Opinion 4—that Mr. Le had prior Uber accounts, including one that was banned in 2016—is entirely factual. *See* Keller Rep. ¶¶ 72-73. The only part of this section of the report that is even conceivably an "opinion" is Ms. Keller's assertion that Uber had sufficient information to link Mr. Le's 2020 account with the banned 2016 account. *See* Keller Rep. ¶¶ 74-75. But this conclusion is not the product of any analysis conducted by Ms. Keller in her capacity as a data scientist. Rather, it is just Ms. Keller's subjective impression of documents produced by Uber which purportedly show that "[t]he rejected and banned 2016 account shared [certain] information with the approved 2020 account," including driver's license number, full name, date of birth, etc. *Id.* That is quintessential fact witness testimony, which does not require the imprimatur of an expert.

Similarly, Opinion 5—that Mr. Le's driving record on the Uber platform exhibited certain tendencies (e.g., driving late at night, frequent cancellations of ride requests) that Uber purportedly recognized as "risk factors" for SA/SM—is nothing more than a recitation of documents produced by Uber. It offers no analysis of what those facts mean or how they support any conclusion about foreseeability or Uber's conduct. *See* 9/14/2026 Keller Rough Dep. Tr. 77:2-14 (acknowledging that Opinion 5 is "not based on any independent data analysis" but rather "rel[ies] upon the studies that Uber did internally"). The extent of Ms. Keller's "analysis" consisted of creating charts and graphics that illustrate straightforward matters understandable to lay jurors, such as Mr. Le's ride cancellation rate and the share of Mr. Le's rides conducted late at night. *See, e.g.*, Keller Rep. ¶¶ 85-94. But Ms. Keller's graphics do not apply data-science expertise to the facts or transform her factual recitations into proper expert testimony. *See Silloway v. City & Cnty. of San Francisco*, No. 20-cv-07400-RS, 2025 WL 3675116, at *5-6 (N.D. Cal. Dec. 17, 2025) (Rule 1006 permits the admission of charts to summarize "voluminous" materials but "[t]he testifying witness does not carry the imprimatur of an expert"). Ms. Keller's discussion of the subject ride likewise summarizes basic facts—e.g., that it occurred late at night, originated at a bar, etc.—all of which jurors can evaluate themselves. Keller Rep. ¶ 100.

Nor would Ms. Keller's purported expertise as a "data scientist" qualify her to interpret risk factors for sexual assault or to opine that Uber should have acted differently in any event. The "risk factors" identified in sexual-violence research are group-level statistical associations—correlations—not forecasts of what a particular person will do in a particular encounter. Assessing the significance of those factors in an individual case requires expertise in sexual-violence prevention, criminology, or psychology, not merely the ability to summarize platform data. Ms. Keller's lack of the expertise needed to address these issues helps explain why her Opinion 5 simply collects facts without applying any expert analysis to them. Because the jury can interpret basic factual evidence on its own, Ms. Keller's Opinions 4 and 5 should be excluded.

## III. MS. KELLER'S OPINION 5 SHOULD ALSO BE EXCLUDED BECAUSE IT DOES NOT FIT THE FACTS OF THE CASE.

Finally, Opinion 5, that risk factors previously identified by Uber were allegedly present in Mr. Le's driver history, should be excluded for the additional and independent reason that it does not fit the facts or issues of this case. The question for the jury is whether Uber was negligent—i.e., whether it acted unreasonably given what it knew or should have known at the time of the alleged injury. To fit that issue, Ms. Keller would have to connect the identified factors to a scientifically reliable inference that Uber could have foreseen the assault and acted differently. But she does not do so. The mere fact that Mr. Le's record or the subject ride exhibited purported "risk factors" for SA/SM does not establish foreseeability or breach, and Ms. Keller conspicuously fails to opine that Uber should have done anything differently. *See* 9/14/2026 Keller Rough Dep. Tr. 101:19-20 ("I don't offer an opinion on what Uber should have done.").

To be admissible, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citation omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted). In negligence cases such as this one, district courts in the Fifth Circuit have excluded expert opinions regarding background risk conditions where the expert fails to connect those risks to a breach of duty by the defendant that caused the plaintiff's injury. *See, e.g.*, *Henderson v. Atmos Energy*, 496 F. Supp. 3d

1011, 1017 (E.D. La. 2020) (in a slip-and-fall case at a construction site, excluding expert's opinions that "excavated areas were left open [by defendant] for an extended amount of time" and that defendant's "[c]lean up was inadequate" on relevance grounds, where expert did not opine that those factors caused the injury); *Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 577 F. Supp. 3d 587, 596 (S.D. Tex. 2021) (in a slip-and-fall case at an oil rig, excluding expert's opinion that "[t]he condition of the oil rig platform . . . constituted a dangerous condition"); *see also Sittig v. Louisville Ladder Grp. LLC*, 136 F. Supp. 2d 610 (W.D. La. 2001) (in product liability case, excluding experts' opinions regarding design defect where experts did not opine that alternative design would have prevented injury).

Like the excluded opinions in the cases above, Ms. Keller's Opinion 5 merely describes background risk conditions and fails to connect those purported risks to any alleged breach of duty by Uber. Ms. Keller's opinion that Mr. Le's driving record exhibited purported "risk factors," such as a tendency to drive late at night, therefore does not fit the case because it does not bear on the question of whether Uber acted unreasonably. *See* Keller Rep. ¶¶ 79-99. Ms. Keller's opinion that Uber allegedly knew of these risk factors, *id.* ¶ 77, does not change that conclusion because Ms. Keller does not (and presumably cannot) opine that Uber should have done anything differently with regard to Mr. Le as a result of this knowledge. The same is true of Ms. Keller's opinion that the subject ride itself exhibited certain risk factors (e.g., it occurred late at night and originated from a bar), *id.* ¶ 100, because Ms. Keller again fails to opine that Uber should have done anything differently. Nor would Ms. Keller be remotely qualified to offer such an opinion, given that her expertise is in data analysis rather than industry standards or safety.

Because Opinion 5 neither provides a scientifically reliable basis to predict the assault nor connects the identified factors to any action Uber should have taken, it lacks the requisite "fit" with the facts and issues of this negligence case and should be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Lacey R. Keller in their entirety.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno* ____________________________
Kim Bueno