[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT LEIGH ANNE LEVY; MEMORANDUM OF POINTS & AUTHORITIES**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiff's expert Leigh Anne Levy.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: September 14, 2026

KIRKLAND & ELLIS LLP

By: */s/ Kim Bueno*
*Counsel for Uber*

## MEMORANDUM OF POINTS AND AUTHORITIES

Leigh Anne Levy, a registered nurse and life care planner who runs a litigation consulting company, seeks to drive up Plaintiff's damages by projecting needs for medications that no doctor has said Plaintiff will require; in-patient hospital stays that no professional has said she will need; and a variety of expensive experimental treatments ***no mental health professional has recommended,*** including acupuncture, aquatic therapy, recreational therapy, music therapy, and Hippotherapy (which uses a horse's movement for physical and neurological rehabilitation). Ms. Levy has no expertise to recommend these far-flung therapies, and there is no basis in any medical records to support them. Moreover, the projections are not grounded in a reliable methodology connecting Plaintiff's condition to the proposed treatment, frequency, duration, or cost. The Court should exclude Dr. Levy's opinions in their entirety.

***First***, Dr. Levy's life care plan includes fringe treatments—such as "hippotherapy," which involves "use [of] a horse's rhythmic, multi-dimensional movement to help improve a patient's balance, posture, and nervous system function," Levy Rep. at 19 (Ex. 1)—that are not the standard of care[1] and that not even Plaintiff's paid experts recommend. She also inflates the frequency, duration, and costs of Plaintiff's projected care without any supporting basis.

***Second***, Dr. Levy's opinions are unreliable because she ignores medical records from Plaintiff's treating providers that contradict the opinions of litigation-hired psychologists Drs. H. David Feltoon and Leslie Lebowitz, on whom she chiefly relies.

***Third***, Dr. Levy is not a physician, psychiatrist, or psychologist. She lacks any specialized training in assessing, diagnosing, or treating psychological disorders—as does the physiatrist she consulted.[2] Her opinions about Plaintiff's psychiatric diagnoses and their causes should thus be excluded because she is unqualified to render them.

---

[1] Michael D. Anestis et al., *Equine-Related Treatments for Mental Disorders Lack Empirical Support: A Systematic Review of Empirical Investigations*, 70 J. Clin. Psychol. 1115, 1129 (2014), https://scottlilienfeld.com/wp-content/uploads/2021/01/anestis2014.pdf ("[T]here is negligible evidence that it offers benefits to individuals with mental disorders or other psychological difficulties.").

[2] A physiatrist is "a doctor who manages conditions affecting your skeletal and nervous systems. They use nonsurgical treatments like injections and nerve stimulators to improve how you move and function." Cleveland Clinic, *Physiatrist* (last updated July 11, 2024), https://my.clevelandclinic.org/health/articles/physiatrist.

***Fourth***, to the extent the Court excludes the opinion of any expert on whom Ms. Levy relies, her derivative opinions should also be excluded.

***Finally***, to the extent Dr. Levy seeks to offer a cherry-picked recitation of Plaintiff's medical records, such testimony will not help the trier of fact and should be excluded.

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Levy's proffered opinions regarding Plaintiff's anticipated life care needs is admissible pursuant to Federal Rule of Evidence 702, because her life care plan opinions are unsupported by medical records or qualified expert recommendations?
2. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Levy's proffered opinions regarding Plaintiff's anticipated life care needs are admissible pursuant to Federal Rule of Evidence 702, because her life care plan opinions fail to explain factual inconsistencies or apportion costs attributable to assault?
3. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Levy's proffered opinions concerning the assessment, diagnosis, or treatment of psychological conditions are admissible pursuant to Federal Rule of Evidence 702, because she is not a physician, psychiatrist, or psychologist, and is not qualified to render such opinions?
4. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Levy's proffered derivative opinions are admissible pursuant to Federal Rule of Evidence 702, because to the extent her opinions rely on the opinions of other experts that are excluded, her derivative opinions should also be excluded?
5. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Dr. Levy's proffered opinions reciting Plaintiff's medical records is admissible pursuant to Federal Rule of Evidence 702, because such cherry-picked recitation of those records is unhelpful to the trier of fact?

## BACKGROUND

Dr. Levy is a registered nurse and life care planner who in 2025 founded LegalMed180, a company that connects lawyers with medical experts for litigation. Levy Rep. at 31; LegalMed180 website, https://legalmed180.com.

Dr. Levy prepared a life care plan for Plaintiff based on her review of Plaintiff's medical records, the expert reports of Plaintiff's expert psychologists Drs. H. David Feltoon and Leslie Lebowitz, a phone interview with Dr. Feltoon, and consultation with [redacted]—a physiatrist employed by MediSys Rehabilitation. Although she lacks expertise in psychiatry or psychology, Dr. Levy's report is rife with her own opinions on treatments she believes Plaintiff will need, including "[c]ommunity-based services" such as "acupuncture, aquatic therapy, recreational therapy, music therapy, [and] Hippotherapy[.]" Levy Rep. at 18. She cites no expert or treater who recommends these modalities. Likewise, she opines that Plaintiff will need future inpatient psychiatric care[3] and a lifetime of [redacted] medications, without citing a treater or expert who recommends such care (other than Dr. Feltoon, who is not licensed to prescribe). *Id.* at 23. Dr. Levy also asserts that Plaintiff's assault "[redacted]"—a causation opinion she does not attribute to anyone qualified to render it. *Id.* at 4 (emphasis added).

Dr. Levy's report notes the results of Beck Depression Inventory II ("BDI-II") and Beck Anxiety Inventory ("BAI") tests administered by Plaintiff's treaters to assess symptom severity. In 2023, [redacted]. *Id.* at 9. In 2024, Plaintiff "[redacted]," and her BDI-II and BAI scores "[redacted]." Jane Doe QLF 001-SCHS-000060 (Ex. 2). In 2025, Plaintiff's BDI-II and BAI scores [redacted]. Levy Rep. at 9; Jane Doe QLF 001-SCHS-000079 to -82, at -81 (Ex. 3). Yet, when Dr. Feltoon administered these same tests in August 2026 for litigation, he reported scores of [redacted] Feltoon Rep. at 11 (Ex. 4). Dr. Levy makes no attempt

[3] Specifically, Dr. Levy anticipates "[d]aily" inpatient psychiatric care starting at age 29 until a "[t]arget [a]ge" of 82 at "60/53" "Units/Year"—which appears to mean 60 total days of inpatient care over the next 53 years. Dr. Levy cites no treater or psychology expert supporting the expectation for future inpatient care.

to reconcile this dramatic variance, explain what it means for the reliability of Dr. Feltoon's opinions, or address how it affects the accuracy of her projections for Plaintiff's future care needs.

## LEGAL STANDARD

Under the amendments to Federal Rule of Evidence 702, it is the propounding party's burden to establish by a preponderance of the evidence that an expert's testimony is admissible. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). The Rule 702 standard is addressed in more detail in Uber's Motion to Exclude Lacey Keller (filed concurrently), and Uber incorporates that discussion herein by reference.

## ARGUMENT

### I. DR. LEVY'S OPINIONS ABOUT PLAINTIFF'S ANTICIPATED CARE NEEDS ARE SPECULATIVE AND LACK A RELIABLE BASIS.

Dr. Levy ignores medical professionals and record facts to offer an inflated catalog of health care goods and services that no physician has ever recommended to Plaintiff. She fails to explain glaring inconsistencies in the information on which she relies or distinguish between anticipated future needs based on the assault versus other life events. Without any basis for various recommended therapies, she has no reliable methodology for her opinions.

#### A. Dr. Levy's Recommendations Are Unsupported By Medical Records Or Experts.

Dr. Levy's opinions about Plaintiff's anticipated care needs lack support in the medical records or any purported expertise. A federal court previously excluded Ms. Levy's testimony for these same deficiencies. *See Rivers v. B Braun Interventional Sys. Inc.*, No. 19-CV-988, 2023 WL 7166520, at *21 (E.D. Wis. Oct. 31, 2023) (excluding Ms. Levy's opinion about plaintiff's future medical needs and "future costs for … 'health and behavior psychological services,' and a nutritional therapist" as "conspicuously devoid of any explanation" because her "thought appears incomplete" and "no actual explanation is included"). This Court should do the same.

[redacted] Among the treater records and expert opinions Dr. Levy reviewed, only Dr. Feltoon reportedly told her that Plaintiff "[redacted]." Levy Rep. at 17. But an admissible life care plan requires that "a doctor or medical expert must opine to a reasonable degree of medical certainty that the items listed in the life care plan are necessary." *In re Ethicon, Inc., Pelvic Repair*

*Sys. Prods. Liab. Litig.*, No. 2:12-MD-02327, 2014 WL 186872, at *12 (S.D. W. Va. Jan. 15, 2014). Dr. Feltoon does not claim anywhere in his report that Plaintiff [redacted]. Rather, his own expert report is more equivocal—stating that Plaintiff's symptoms "[redacted]"[4] Feltoon Rep. at 14 (emphasis added). Thus, Dr. Levy's recommendation for [redacted] lacks sufficient medical certainty for admissibility. *See Seresht v. United States*, No. 8:21-cv-01365-SPG-ADS, 2026 WL 1507887, at *17 (C.D. Cal. May 28, 2026) ("A plaintiff is not entitled to recover damages for future care that are speculative or merely possible."); *see also Warren v. United States*, 669 F. Supp. 3d 987, 1023-24 (D. Haw. 2023) (refusing to award future damages based on life care plan consisting of possible future medical procedures that "are not likely or, at best, possible (not probable).").

**Inpatient Care.** Neither Plaintiff's treaters nor her hired experts recommend inpatient care. Rather, Plaintiff's treating psychiatrist, Dr. [redacted], recommended "[redacted] Levy Rep. at 20 (emphases added). Nonetheless, Dr. Levy's report inexplicably concludes that treating providers recommended "[i]npatient psychiatric care" without citing any source. *Id.* Based on this unsupported assertion alone, Dr. Levy projects $130,821 in speculative costs for future psychiatric inpatient care. *Id.* at 23.

**Rehabilitation Maintenance.** Dr. Levy recommends various treatments based apparently on her own research, including "[c]ommunity-based services of therapeutic value e.g. acupuncture, aquatic therapy, recreational therapy, music therapy, Hippotherapy, etc." Levy Rep. at 18-19. But as explained below, Dr. Levy is not qualified to offer these recommendations, which she estimates to cost approximately $109,000 over Plaintiff's anticipated lifetime. Because no qualified expert or treater has recommended these treatments, these opinions should be excluded. *See Rivers*, 2023 WL 7166520, at *21 (excluding Dr. Levy's unexplained opinion that plaintiff "would require nearly $7,000 for a nutritional therapist").

---

[4] Plaintiff's treating psychologist, Dr. [redacted], noted in 2025 that he "[redacted] for her, falling well short of a [redacted] recommendation anticipated by Dr. Feltoon. Levy Rep. at 20.

**Medications.** Dr. Levy cites no medical professional to support the claim that Plaintiff needs "[redacted]" such as an [redacted]" Levy Rep. at 18; *see also id.* at 19 ([redacted]). Indeed, medical records cited by Dr. Levy suggest otherwise. In 2019, counselor [redacted] recommended "[redacted]" and following the assault in 2020, psychologist [redacted] recommended [redacted]" Levy Rep. at 20. In 2020 and 2021, Plaintiff's psychiatrist, Dr. [redacted] recommended starting [redacted] *Id.* In 2024 and 2025, Dr. [redacted] recommended "[redacted]" for treatment of Plaintiff's [redacted] *Id.* Dr. Levy does not report that any of these treaters recommended [redacted]

Dr. Levy's life care plan further anticipates costs for "[a]lternative [s]trategies/[p]rocedures/[c]omplications" from ages 30 to 82 for [redacted] based on anticipated annual medication costs.[5] Levy Rep. at 24. Yet, no treater has recommended that Plaintiff take [redacted] for the rest of her life. Plaintiff's own expert, Dr. Feltoon, does not even diagnose Plaintiff with an [redacted]—reporting only "[redacted]" Feltoon Rep. at 14. And presumably because no mental health professional has recommended lifetime [redacted] medications, Dr. Levy's report fails to specify which [redacted] costs $7,770.85 per year or which [redacted] costs $4,171.95 per year. Moreover, while Dr. Levy reports that Dr. Feltoon stated Plaintiff "[redacted]" Levy Rep. at 17, ***Dr. Feltoon is not licensed to prescribe medications*** and is therefore unqualified to opine on whether Plaintiff should take any medication, much

---

[5] Like many of the line items in Dr. Levy's cost projections, she does not explain the basis of her numbers and calculations—making it nearly impossible to verify her calculations and assumptions. Indeed, prescription medications used [redacted] *see* Abby Luck Parish et al., *Pharmacotherapy for Depression and Anxiety in the Primary Care Setting*, 19 J. for Nurse Practitioners 1 (2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC9951804 (Ex. 5)—meaning Dr. Levy's estimated costs for the separate treatment of each condition are likely grossly overestimated.

less for life. Accordingly, Dr. Levy has no reliable basis to project over $630,000 in lifetime psychiatric medication costs.

In short, Dr. Levy's opinions are not grounded in any qualified medical opinion or methodology supporting the medications or treatments for which she projects future costs. This is a glaring analytical gap in her opinions that requires their exclusion under Rule 702.

**B. Dr. Levy Fails To Explain Factual Inconsistencies Or Apportion Costs Relating To The Assault.**

Dr. Levy's opinions are unreliable because she does not address factual and methodological defects that compromise the accuracy of her future care need projections.

***First***, Dr. Levy fails to explain the glaring discrepancies between Dr. Feltoon's litigation-driven psychological assessment and Plaintiff's prior clinical assessments. Dr. Feltoon administered the BDI-II and BAI in August 2026, yielding scores of [redacted], which he characterized as [redacted]" Feltoon Rep. at 11. But outside of litigation, these same tests in 2023 yielded scores of only [redacted]—reflecting [redacted] symptoms. Levy Rep. at 9. In 2024, Plaintiff reported "[redacted]" Jane Doe QLF 001-SCHS-000060. In 2025, those same tests yielded scores of [redacted]. Levy Rep. at 9; Jane Doe QLF 001-SCHS-000079 to -82, at -81. Dr. Levy does not address this dramatic variance, let alone explain why the substantially higher litigation-generated scores provide a reliable basis for projecting Plaintiff's future treatment needs as opposed to her clinical history of substantially milder symptoms. Nor does she identify any methodology for determining which assessment should control her lifetime projections.

***Second***, Dr. Levy also fails to apportion costs arising from the assault versus costs arising from Plaintiff's other prior and subsequent traumas. As Dr. Feltoon concedes, "[t]raumas are cumulative and additive" and Plaintiff "had history of traumatic events[.]" Levy Rep. at 17. But Dr. Levy's plan ignores this history. For example, she includes a primary care physician "[t]o provide preventative care, treat acute illnesses and chronic conditions" without explaining why the need for such care arises specifically from the assault. *Id*. at 18. She identifies no methodology for determining which future psychological treatment

needs, if any, are attributable to the assault rather than Plaintiff's acknowledged preexisting and subsequent traumas. Yet she assigns the entire projected cost of those services to her life care plan. These failures render her opinions unreliable and inadmissible.

## II. DR. LEVY SHOULD BE PRECLUDED FROM OFFERING ANY OPINION ON THE ASSESSMENT, DIAGNOSIS, OR TREATMENT OF PSYCHOLOGICAL CONDITIONS.

Dr. Levy is not a physician, psychiatrist, or psychologist, and is not being offered as an expert in assessing or treating psychological conditions. Nevertheless, she offers her own opinions, unsupported by any medical expert, about Plaintiff's psychological state and supposed treatment needs. For example, her report includes her own judgments about Plaintiff's psychological symptoms, such as that "[Plaintiff] [redacted] . . ." Levy Rep. at 18. A federal court previously excluded Dr. Levy's "opinions regarding [plaintiff]'s need for psychological and nutritional services" for this reason. *Rivers*, 2023 WL 7166520, at *21; *see also id.* at *20 ("Levy … may not vouch for or otherwise offer an opinion as to the correctness of any other expert's opinion."). This Court should do the same.

Dr. Levy also improperly recommends treatment options for Plaintiff's alleged psychological symptoms. In addition to offering nontraditional treatment options like hippotherapy, Dr. Levy also exceeds her scope of expertise by "[redacted]" Levy Rep. at 19. A "life care plan will not be admitted if it [is] not supported by the recommendations and opinions of qualified doctors." *Fabrizius v. Shultz*, No. 08-114-BLG-RFC, 2010 WL 11534337, at *1 (D. Mont. Apr. 5, 2010). Because Dr. Levy is unqualified to opine on psychological issues (let alone medication), her opinions on Plaintiff's psychological symptoms and treatments should be excluded.[6]

[6] To the extent Dr. Levy offers any opinion that relies on another expert's opinion that is later excluded, Dr. Levy's opinion must be excluded for that reason as well. Order, *Wright v. C.R. Bard, Inc.*, No. 3:19-CV-02176-S (N.D. Tex. Oct. 20, 2020), Dkt. 132 (Ex. 6) (excluding Dr. Levy's opinions to the extent they relied on excluded experts' testimony); *Rivers*, 2023 WL 7166520, at *20 ("To the extent that [other experts'] opinions are admissible …, Levy is entitled to rely on them as a foundation for her opinions.").

## III. DR. LEVY'S CURATED RECITATION OF PLAINTIFF'S MEDICAL RECORDS IS UNHELPFUL TO JURORS AND SHOULD BE EXCLUDED.

Much of Dr. Levy's report consists of cherry-picked notes from Plaintiff's medical records and a recounting of her telephone interview with Dr. Feltoon. None of this will help the jurors, who can review the medical records without Dr. Levy's selection bias or commentary. *See Valentine v. Torres-Quezada*, No. 22-cv-01520-JSW, 2024 WL 3463822, at *4 (N.D. Cal. July 17, 2024) ("During their testimony, the experts shall not cite to or recite the evidentiary record in this case.").

Dr. Levy's reporting on her interview with Dr. Feltoon should likewise be excluded because the jury will hear Dr. Feltoon's opinions when he testifies at trial—assuming any are deemed admissible. Rule 703 permits an expert to rely on appropriate "facts or data" in forming her own admissible opinion; it does not permit her to serve as a second vehicle for presenting another expert's opinions to the jury. Fed. R. Evid. 703; *Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-CV-00031-AKB, 2024 WL 326848, at *5 (D. Idaho Jan. 29, 2024) ("Rule 703 of the Federal Rules of Evidence 'does not permit an expert to simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions.'") (citations and emphasis omitted). Using Dr. Levy as a conduit for Dr. Feltoon's opinions is improper. *See Rivers*, 2023 WL 7166520, at *20 ("One expert cannot be the mouthpiece for another expert in a different specialty . . . An expert who parrots an out-of-court statement is not giving expert testimony; she is a ventriloquist's dummy.") (citations omitted); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188, at *3 (D. Ariz. Jan. 22, 2018) (No experts "will be permitted at trial to simply parrot the opinions of other experts, or to vouch for those experts, but they can rely on opinions stated by other experts.").

## CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Leigh Anne Levy in their entirety.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno