[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT ROBERT W. JOHNSON; MEMORANDUM OF POINTS & AUTHORITIES**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom:

**<u>NOTICE OF MOTION AND MOTION TO EXCLUDE</u>**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiffs' expert Robert W. Johnson.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: September 14, 2026

KIRKLAND & ELLIS LLP
By: */s/ Kim Bueno*
*Counsel for Uber*

## TABLE OF CONTENTS

Page

**I. BACKGROUND** ..... **3**

**II. LEGAL STANDARD** ..... **5**

**III. ARGUMENT** ..... **5**

A. Mr. Johnson's Opinions Are Not Based On Any Discernible Methodology. ..... 6

B. Mr. Johnson's Purported Methodology Is Designed To Inflate Uber's "Ability To Pay." ..... 8

C. Texas Law Prohibits Consideration Of Mr. Johnson's Irrelevant And Prejudicial Metrics. ..... 10

**IV. CONCLUSION** ..... **11**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baxter v. Peterson*,
150 Cal. App. 4th 673 (2007) ....................12

*Bibbs v. Molson Coors Beverage Co., USA*,
699 F. Supp. 3d 509 (N.D. Tex. 2023) ....................11

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................4

*Dewolff, Boberg & Assocs. v. Pethick*,
No. 3:20-CV-3649-L, 2024 WL 1396267 (N.D. Tex. Mar. 31, 2024) ....................5, 11

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ....................8

*Farah Mfg. Co. v. Alvarado*,
763 S.W.2d 529 (Tex. App. El Paso 1988), *aff'd*, 830 S.W.2d 911 (Tex. 1992) ....................14

*In re Garth*,
214 S.W.3d 190 (Tex. App. 2007)....................13

*Gregory v. Chohan*,
670 S.W.3d 546 (Tex. 2023)....................14

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) ....................5, 11

*Hayes v. Wal-Mart Stores, Inc.*,
294 F. Supp. 2d 1249 (E.D. Okla. 2003) ....................12

*In re House of Yahweh*,
266 S.W.3d 668 (Tex. App. 2008)....................12, 13

*Lopez v. Am. Honda Motor Co.*,
No. 4:23-CV-00911, 2025 WL 2246617 (S.D. Tex. July 14, 2025) ....................10

*Manzanares v. El Monte Rents, Inc.*,
No. 4:24-cv-191, 2026 WL 25448 (E.D. Tex. Jan. 5, 2026) ....................9

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998) ....................11

*Ningbo Bonny Decorative Material Co. v. E. Sys., Inc.*,
No. 1:17-CV-114-DMB-DAS, 2020 WL 1333164 (N.D. Miss. Mar. 23, 2020) ....................13

*Pooshs v. Philip Morris USA, Inc.*,
287 F.R.D. 543 (N.D. Cal. 2012)....10

*Richardson v. United States*,
No. 6:23-CV-03337-RK, 2026 WL 579508 (W.D. Mo. Mar. 2, 2026)....13

*Soto v. BorgWarner Morse TEC Inc.*,
239 Cal. App. 4th 165 (2015), *as modified* (Aug. 20, 2015)....5, 12

*Sullivan v. City of Buena Park*,
No. SACV 20-01732-CJC, 2022 WL 2965664 (C.D. Cal. Apr. 11, 2022)....10

*Viterbo v. Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987)....11

*Watkins v. Telsmith, Inc.*,
121 F.3d 984 (5th Cir. 1997)....11

*WHBE 303 v. Uber*,
No. 2322-CC-01288 118:9-12....4, 6, 7, 8

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 41.001....12

Tex. Civ. Prac. & Rem. Code Ann. § 41.011....12, 13

**Rule**

Fed. R. Evid. 702.... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff has retained Robert W. Johnson, an economist-turned-professional litigation expert, for a single purpose: to mislead jurors about Uber's financial condition in the hopes of prompting the jury to return an inflated punitive damages award. Essentially, Mr. Johnson seeks to testify, based on his subjective and selective weighing of certain positive financial metrics (e.g., revenue), while disregarding negative metrics (e.g., expenses and losses), that Uber can afford to pay an exorbitant punitive damages award.

As elaborated in Uber's pending motion for summary judgment, Texas law proscribes punitive damages in cases like this one, where a plaintiff's injuries arise out of the criminal acts of a third party. *See* Mot. Summ. J. at 1, Dkt. No. 7328 (Sept. 11, 2026) (incorporated herein by reference). If this Court grants that motion, Mr. Johnson's testimony about Uber's purported financial condition would not "help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citation omitted). This alone requires his exclusion.

Even if the Court denies Uber's summary judgment motion (notwithstanding the express Texas statutory bar on punitive damages in this case), it should still exclude Mr. Johnson's opinions because they are not "based on sufficient facts or data" and are not "the product of reliable principles"; instead, they are grounded in results-oriented methods. *See* Fed. R. Evid. 702(b)-(d). The question is not whether the figures Mr. Johnson selected from Uber's public filings are accurate. It is whether he has a reliable methodology for selecting those figures, excluding others, and using the resulting subset to render expert opinions about Uber's financial condition. He does not. As Mr. Johnson has repeatedly made clear, his so-called "methodology" for touting the "positive" half of Uber's balance sheet and omitting Uber's liabilities (the "negative" half of the balance sheet)—was his "experience" working as a paid litigation consultant. 2/27/2026 R. Johnson Dep., *WHBE 303 v. Uber*, No. 2322-CC-01288 ("Johnson WHBE 303

Dep.") 118:9-12 (Ex. 1); 10/29/2025 R. Johnson *Dean* Dep. 28:10-29:5 (Ex. 2).[1] The Fifth Circuit has long made clear that "experience" does not relieve an expert of Rule 702's requirement to identify a reliable basis for his opinion and explain how that experience reliably leads to the conclusions offered. *See, e.g.*, *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (excluding expert testimony for "lack of [a] reliable methodology" where expert "offers little more than personal assurances based on his police experience that his conclusions are so"). That longstanding principle is even clearer in light of the 2023 amendments to Federal Rule of Evidence 702, which "'emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology[.]'" *See Dewolff, Boberg & Assocs. v. Pethick*, No. 3:20-CV-3649-L, 2024 WL 1396267, at *6, *10 (N.D. Tex. Mar. 31, 2024) (construing amended Rule 702 and noting that "the court cannot simply take Plaintiff's or [expert's] word . . . that expertise and judgment appropriately played a role" in formulating damages opinions) (quoting Fed. R. Evid. 702 advisory committee's notes), *aff'd*, 133 F.4th 448 (5th Cir. 2025). Moreover, even assuming Mr. Johnson's vague invocation of "experience" qualified as a methodology, his ultimate conclusions on Uber's financial condition ignore Texas law on the calculation of punitive damages and do not "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). As the California Court of Appeal previously recognized in overturning a punitive damages award based on Mr. Johnson's subjective and one-sided approach to a defendant's financial condition, consideration of "half of [the defendant's] balance sheet" is inherently unreliable and does not constitute "meaningful evidence[.]" *Soto v. BorgWarner Morse TEC Inc.*, 239 Cal. App. 4th 165, 194-95 (2015), *as modified* (Aug. 20, 2015). This Court should reach the same conclusion under Federal Rule of Evidence 702.[2]

Finally, Mr. Johnson also seeks to address the executive compensation of Uber's Chief Executive Officer, Dara Khosrowshahi, for 2025. 9/3/2026 Report of Robert W. Johnson ("Johnson Rep.") at Ex. A,

---

[1] Due to the compressed schedule in this case, Mr. Johnson will not sit for a deposition until after the filing date for this motion. Uber thus cites his depositions from prior cases where he offered substantially similar reports.

[2] Uber did not move to exclude Mr. Johnson's testimony in connection with the *Dean* trial because, at the time such motions were due, the parties were discussing a potential stipulation regarding Uber's finances that would have obviated the need for his testimony. While the court overseeing the California JCCP refused to exclude Mr. Johnson's opinions, that ruling is at odds with both *Soto* and Federal Rule of Evidence 702.

Slide 16 (Ex. 3). For the reasons set forth in Uber's Motion *In Limine* to Exclude Evidence or Argument of Executive Compensation, information as to Mr. Khosrowshahi's compensation is inadmissible because it is irrelevant and highly prejudicial. *See* Uber's Mot. in Lim. and Mem. in Supp., MIL No. XI, at 23, Dkt. 7325 (Sept. 11, 2026) (incorporated herein by reference).

For all of these reasons, discussed further below, Mr. Johnson's irrelevant, speculative, and unreliable opinions should be excluded from trial.

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Johnson's proffered testimony is admissible pursuant to Federal Rule of Evidence 702, where his opinions are irrelevant, unreliable, and based on his ipse dixit?

## I. BACKGROUND

Robert W. Johnson is the owner and founder of the litigation economics consulting firm Robert W. Johnson and Associates. 6/20/2025 Johnson Dep. ("Johnson JCCP Dep.") 33:14-34:9 (Ex. 4). Mr. Johnson's role in this case is "to frame, in economic terms, the financial condition of Uber" and "opine as to Uber's ability to pay a punitive damages award." Johnson Rep. at 1.

Mr. Johnson divided his report into three separate sections, focusing on Uber's economic "health," economic "wealth," and economic "status." *See generally* Johnson Rep. Mr. Johnson admitted that he is not aware of any standard or generally accepted definitions of the terms "economic health," "economic wealth," and/or "economic status"; nor is he aware of any standard or generally accepted way of assessing them. Johnson WHBE 303 Dep. 51:11-20; Johnson JCCP Dep. 122:6-123:1, 123:14-18, 124:21-25, 125:6-11, 160:9-25, 219:25-220:12. Mr. Johnson also does not know whether Uber or any other company even uses terms like "financial health" or "financial wealth" to discuss its financial condition. Johnson WHBE 303 Dep. 51:21-52:5.

Mr. Johnson has no objective methodology for assessing Uber's financial condition. Mr. Johnson took financial metrics of interest to him from public filings—namely, Uber's 10-K reports from 2023-2025 and its 2026 proxy statement. Johnson Rep. at 1; Johnson WHBE 303 Dep. 38:3-10. But while his report contains positive financial metrics, such as Uber's revenue, net income, net worth, cash on hand,

and "cash flow profit" (a term he made up),[3] it omits metrics on the other side of Uber's balance sheet, such as total costs and expenses, cost of revenue, sales and marketing expenses, and executive compensation for all executives other than Uber's CEO. *See generally* Johnson Rep.; *see also* Johnson WHBE 303 Dep. 60:21-25; Johnson JCCP Dep. 131:23-135:24, 137:3-138:12, 205:21-206:6. When asked how he decided what metrics to include in his report, Mr. Johnson repeatedly testified that he selected metrics based on his "40 years of training expertise" and included data that he "felt was relevant"—without elaborating on how his oft-invoked "experience" informed his choice of metrics. Johnson WHBE 303 Dep. 43:7-8; Johnson JCCP Dep. 86:20-87:21, 88:4-7, 113:15-114:3, 130:10-22, 138:13-21.[4] Mr. Johnson acknowledged during a prior deposition that he is not aware of any training manual or peer-reviewed articles or reports that provide the appropriate metrics to use when performing a punitive damages analysis like the one he performed here. Johnson JCCP Dep. 88:4-21.

Mr. Johnson selectively included data in his report for varying timeframes. Certain financial metrics reflect fiscal years 2021-2025 (revenue, net income, cash flow, capital expenditures, "free cash flow," R&D expenditures, and advertising expenses) or 2022-2026 (net worth, "cash on hand"), while other financial metrics reflect anywhere from one to three years of information: auditing and accounting fees (2024-2025), undrawn lines of credit (2026), stock repurchases (2024-2026), stock market valuation (2026), and CEO compensation and severance package (2025). *See generally* Johnson Rep. When asked why he used different time periods for different data categories in prior Uber reports, Mr. Johnson responded that certain data were "irrelevant" based on his subjective "standard" and that "[i]n [his] business . . . [that's] [t]he way we do it[.]" Johnson JCCP Dep. 232:10-233:5; Johnson WHBE 303 Dep.

---

[3] *See* Johnson WHBE 303 Dep. 73:23-74:2 ("Q. But the words 'cash flow profit' is not a term that you pulled from Uber's financial statements, right? A. They didn't call it cash flow profit. I'm calling it cash flow profit.").

[4] When asked why he included audit and accounting fees as a metric for evaluating Uber's economic state, for example, Mr. Johnson testified that, "to me, it says how serious Uber is about getting the numbers in the 10-Ks, 10-Qs[,] proxies. Their financial statements, correct, valid, accurate and truthful . . . [Uber] is serious enough to pay $30 million to make sure their books are correct, accurate and valid." Johnson JCCP Dep. 230:2-231:9. When asked if he was familiar with any other economists or financial professionals who consider audit and accounting fees as a reflection of a company's economic status, he testified that he has not checked and is not familiar with any other person doing so. *Id*. 231:15-21. In response to questioning about whether a company could be considered financially healthy and spend less than $30 million on auditing and accounting, he testified that he did not know. Johnson WHBE 303 Dep. 84:17-20.

83:14-18.[5] He also testified that he was waiting for Uber's own expert's opinion about the company's financial condition to provide him with further "enlightenment" about Uber's ability to pay and additional information or metrics that he may have missed in his analysis. Johnson JCCP Dep. 73:13-22, 87:22-88:3, 137:23-138:12.[6]

Mr. Johnson's analysis is also misleading. Mr. Johnson intends to tell the jury that Uber's "[r]evenue per day" in 2025 was $142.5 million—a number that Mr. Johnson calculated by dividing Uber's total 2025 revenue by 365. Johnson Rep. at Ex. A, Slide 3; Johnson WHBE 303 Dep. 69:15-18. But Mr. Johnson did not separately report or calculate Uber's total costs and expenses per day despite having been able to do so. Johnson WHBE 303 Dep. 68:11-19, 69:1-14, 69:19-70:6. When asked why he did not include Uber's daily costs and expenses as well as "revenue per day," Mr. Johnson responded that it is "[n]ot necessary" to do so. Johnson WHBE 303 Dep. 68:15-19.

## II. LEGAL STANDARD

Under the amendments to Federal Rule of Evidence 702, it is the propounding party's burden to establish by a preponderance of the evidence that an expert's testimony is admissible. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). The Rule 702 standard is addressed in more detail in Uber's Motion to Exclude Lacey Keller (filed concurrently), and Uber incorporates that discussion herein by reference.

## III. ARGUMENT

Uber's financial condition and ability to pay a punitive damages award are not relevant because Texas law bars punitive damages in cases like this one, as set forth in more detail in Uber's Motion For Summary Judgment. But even if punitive damages were properly at issue in this case, Mr. Johnson's opinions would still be inadmissible under Rule 702 because: (1) they are not grounded in any discernible methodology; and (2) to the extent Mr. Johnson employs any kind of method, he applies it in a results-

[5] For example, when asked the basis for his decision to include only two years of auditing statements, Mr. Johnson said, "As for audit fees, we don't care . . . I'm not interested in the trend of audit fees. I'm just interested in what happened in the last two years. How much did they spend? Because companies may have changed. But that's just the way we operate. Other economists or forensic experts may do it differently. There's no set standard. ***Whatever the economist feels is appropriate***." Johnson JCCP Dep. 232:21-233:5 (emphasis added).

[6] Uber does not intend to disclose an expert regarding its ability to pay.

oriented manner that cherry-picks data favorable to Plaintiff's litigation position, ignores critical information, and wildly inflates Uber's purported financial ability to pay a punitive damages verdict.

**A. Mr. Johnson's Opinions Are Not Based On Any Discernible Methodology.**

Under amended Rule 702, "it is up to the Court to determine if a reliable method exists," and it is "Plaintiff['s] burden to" provide the Court with sufficient "information required to perform [that] gatekeeping function[.]" *Manzanares v. El Monte Rents, Inc.*, No. 4:24-cv-191, 2026 WL 25448, at *5 (E.D. Tex. Jan. 5, 2026) (court "lacks the information required . . . under Rule 702(c) to evaluate the reliability of the method underlying this opinion"). The Court need look no further than Mr. Johnson's own words to conclude that he did not rely on any tested, consistent, or generally accepted methodology in analyzing Uber's financial condition. When asked whether there is any "rule or test that [Mr. Johnson] can describe in order to determine which metric should be used in order to assess Uber's economic health," Mr. Johnson responded:

> No. There is no generally accepted methodology or exclusivity check that says you only need to use these or you must use more or less. Nobody has written that. It is all left up to the individual economist to determine based on their training and expertise and knowledge regarding financial data, you know, what metrics they believe are most appropriate.

Johnson JCCP Dep. 128:19-129:7. In other words, Mr. Johnson cannot identify any objective criteria that another economist could apply to determine which financial metrics belong in the analysis, which may be omitted, what time periods should be used, or what conclusions follow from those selections. His analysis therefore cannot be replicated, tested, or meaningfully evaluated for reliability. Again, the defect is not the accuracy of the underlying financial data; it is Mr. Johnson's lack of any reliable method for deciding which data to include and what expert conclusions follow from those choices. Another court excluded Mr. Johnson's opinions as unreliable based on his similar testimony about how economists should "go about calculating their own numbers, that's their purview." *Sullivan v. City of Buena Park*, No. SACV 20-01732-CJC (ADSx), 2022 WL 2965664, at *6 (C.D. Cal. Apr. 11, 2022) ("The Court questions the reliability of a methodology when experts cannot seem to agree what inputs or variables to use in deriving a result."). This Court should do the same.

Mr. Johnson also repeatedly answered questions about why he omitted certain metrics or years of data by citing his own "standard." Johnson JCCP Dep. 111:10-112:2, 128:19-130:1, 183:25-184:9,

232:19-233:5. For example, when asked why he included advertising expenses in his report rather than sales and marketing expenses, Mr. Johnson testified: "Advertising is usually considered a more discretionary item of expense. But I'll let the trier of fact decide. But if I've left out anything, I'm sure your expert will bring it in." *Id.* 137:23-138:12. At another point, when asked why he did not include certain liabilities, such as total costs and expenses, in his report, he offered no reasoned explanation whatsoever, other than that he likes to "cut to the chase" and he thinks the "rest is . . . not necessary." *Id.* 134:18-135:10. In response to questioning about why he only included the executive compensation of Uber's CEO (even though Uber's public filings identify the compensation packages of other Uber executives), Mr. Johnson stated in a circular manner: "Because he's the chief executive officer. And that's – that's why." *Id.* 205:21-206:6.[7]

Each of these statements is "classic inadmissible ipse dixit." *Lopez v. Am. Honda Motor Co.*, No. 4:23-CV-00911, 2025 WL 2246617, at *4 (S.D. Tex. July 14, 2025) (excluding bottom-line conclusion where expert "provides no information to support his opinion"), *R. & R. adopted by* 2025 WL 2242744 (S.D. Tex. Aug. 6, 2025). Notably, other courts have barred Mr. Johnson from offering opinions about a defendant's finances where he relied on extraneous information without adequate explanation for his choices. *See Pooshs v. Philip Morris USA, Inc.*, 287 F.R.D. 543, 549-50 (N.D. Cal. 2012) (limiting Mr. Johnson "to testify only as to the 'default' measure of defendants' financial condition—current net worth" and holding that his remaining financial analysis "(based on a wide variety of financial statistics) is unreliable, and is not clearly based on any generally accepted criteria or methodology.").

Although Mr. Johnson repeatedly invoked his "experience" as support for his opinions during his prior depositions, that does not suffice. "Expert testimony is inadmissible when it is based solely on one's credentials and opinions." *Bibbs v. Molson Coors Beverage Co., USA*, 699 F. Supp. 3d 509, 513 (N.D. Tex. 2023) (holding that while résumé "rife with decades of industry experience" may make one "an 'expert' in the colloquial sense, it does not qualify him as an expert in the legal one"). The Fifth Circuit has repeatedly excluded testimony of even well-qualified experts who fail to identify a reliable methodological basis for their opinions. *E.g.*, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991-92 (5th Cir.

[7] As noted above, Uber seeks to exclude evidence or argument as to Uber's executive compensation. *See* Dkt. 7325 at 23.

1997) (excluding expert analysis that "relied on his experience" because it "lacked the requisite indicia of reliability"); *Hathaway*, 507 F.3d at 319 (excluding testimony of experience-based expert who had "neither the sufficient facts nor the reliable methodology that would warrant its inclusion as evidence"); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 273, 279 (5th Cir. 1998) (excluding opinion of "well-qualified medical specialist" where his "causation opinion was not based on scientific knowledge that would assist the trier of fact"). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (excluding expert opinion that "simply lacks the foundation and reliability necessary to support expert testimony"). That is all the more clear in light of the recent amendments to Rule 702, which "emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology[.]" *See Dewolff, Boberg & Assocs.*, 2024 WL 1396267, at *6 (quoting Fed. R. Evid. 702 advisory committee's notes). For this reason alone, Mr. Johnson's opinion should be excluded from trial.

### B. Mr. Johnson's Purported Methodology Is Designed To Inflate Uber's "Ability To Pay."

To the extent Mr. Johnson employs any kind of method, his opinions are not "based on sufficient facts or data," and do not "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Instead, Mr. Johnson's one-sided approach to a defendant's financial condition systematically inflates Uber's purported "ability to pay"—for example, by including only revenue, while ignoring expenses and losses. This not only demonstrates a lack of reliable methodology, but it is contrary to Texas law, which designates "net worth" as the appropriate financial consideration for the purposes of calculating exemplary damages and defines it as "the total assets of a [party] minus the total liabilities of the [party] on a date determined by the trial court." Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001, 41.011.

Other courts have recognized the same flaw and excluded Mr. Johnson's opinions on similar grounds. In *Soto*, 239 Cal. App. 4th 165, a California appellate court overturned a punitive damages award based on Mr. Johnson's testimony, holding that he failed to provide sufficiently reliable information about the defendant's financial condition to support such an award. Among other things, the court considered

the fact that Mr. Johnson only analyzed "half of [the defendant's] balance sheet," and failed to sufficiently opine on the defendant's profits, losses, debts, and available credit. *Id.* at 195. According to the court, "[e]vidence of a defendant's income, standing alone, [was] not meaningful evidence." *Id.* at 194 (citation and quotations omitted); *see also Hayes v. Wal-Mart Stores, Inc.*, 294 F. Supp. 2d 1249, 1250-51 (E.D. Okla. 2003) (excluding opinion that defendant could afford a punitive damages award "equal to or less than dividends paid" because it "has not been tested or subjected to peer review, has no known error rate and has not been accepted in the community of economists").

The same is true here. Mr. Johnson included certain positive metrics in his analysis but omitted others, including metrics about Uber's costs, expenses, current debts, and liabilities—an approach that is unreliable and misleading. *In re House of Yahweh*, 266 S.W.3d 668, 674 (Tex. App. 2008) ("[T]he record contains no explanation as to how documents showing only the asset side of the net worth equation, such as tax returns, income lists, and property lists, as opposed to documents showing assets and liabilities, would be relevant to the discovery of [defendant's] net worth."); *Baxter v. Peterson*, 150 Cal. App. 4th 673, 680 (2007) ("Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income."). To amplify the impact of this misleading figure, Mr. Johnson went further, constructing an arbitrary metric of "revenue per day" that does not exist anywhere in any of Uber's publicly filed financial documents. The effect of this one-sided metric is to present an artificially inflated, highly prejudicial picture of Uber's financial condition, as illustrated by Plaintiff's use of Mr. Johnson's "revenue per day" figure in the January 2026 *Dean* trial. 2/3/2026 *Dean* Trial AM Session (Closing Arguments) 3470:10-12 ("One rape a day, gambling with our lives is one day of pay. We will dock you one day of pay. And that's why the amount we are asking for is $120,200,000.") (Ex. 5).

Mr. Johnson has not provided any reasoned explanation based on any established methodology for the metrics he chose and excluded, or to explain why he included some years of data in his analysis and omitted others. Without a baseline against which Mr. Johnson's opinions can be tested, his opinions cannot satisfy the analytical rigor required by Rule 702. *See Richardson v. United States*, No. 6:23-CV-03337-RK, 2026 WL 579508, at *6 (W.D. Mo. Mar. 2, 2026) (excluding Mr. Johnson's opinion because "Mr.

Johnson's report in particular lacks sufficient explanation and support for his conclusions"). For this reason, too, Mr. Johnson's opinions in this case do not provide any reliable basis from which a jury can reasonably evaluate Uber's financial condition and should be excluded from trial.[8]

**C. Texas Law Prohibits Consideration Of Mr. Johnson's Irrelevant And Prejudicial Metrics.**

At a minimum, the Court should preclude Mr. Johnson from offering his subjective characterizations of Uber's economic "health," "wealth," "status," or "ability to pay," or presenting derivative metrics such as "revenue per day" that are unsupported by any reliable economic methodology and precluded from the calculation of punitive damages under Texas law.

Texas law outlines specific factors for the trier of fact to consider when determining the amount of exemplary damages, and the only financial factor is "the net worth of the defendant." Tex. Civ. Prac. & Rem. Code Ann. § 41.011. Financial information that is not "reflective" of a defendant's net worth is not relevant to that analysis. *In re Garth*, 214 S.W.3d 190, 194 (Tex. App. 2007) (holding that trial court abused its discretion in ordering defendants to produce "documents not necessarily reflective of their net worth[,]" including income statements, bank statements, insurance applications, contracts of assignment, accounts receivable, data, inventory lists and judgments); *In re House of Yahweh*, 266 S.W.3d at 673 ("A trial court abuses its discretion by ordering the production of financial records that would not necessarily evidence net worth."). Mr. Johnson goes far beyond what Texas law permits by using undefined characterizations of Uber's financial status that do not reflect net worth.[9]

[8] Even if Mr. Johnson had utilized a reliable methodology (which he did not), his opinions would still be inadmissible because they simply parrot financial data contained in Uber's public filings. "Opinions that purport to interpret documents which are clear on their face do not satisfy the helpfulness requirement." *Ningbo Bonny Decorative Material Co. v. E. Sys., Inc.*, No. 1:17-CV-114-DMB-DAS, 2020 WL 1333164, at *5 (N.D. Miss. Mar. 23, 2020) (excluding expert testimony related to invoices that were "self-explanatory such that [the expert's] characterization of their contents would add nothing to a jury's understanding of the case"). As Mr. Johnson explained, he opined that Uber has been "growing" because Uber's revenue, as shown by a single line item in each of its 10-K reports from 2020 to 2024, has increased from 2020 to 2024. Johnson JCCP Dep. 110:20-111:15, 142:13-16. A jury would be capable of reviewing Uber's 10-Ks and coming to the same conclusion.

[9] Mr. Johnson's focus on the compensation of Uber's CEO similarly seeks to inject improper and irrelevant information into the jury's calculation of damages. *See* Dkt. 7325 at 23 (citing *Farah Mfg. Co. v. Alvarado*, 763 S.W.2d 529, 534-35 (Tex. App. El Paso 1988), *aff'd*, 830 S.W.2d 911 (Tex. 1992) (holding that while evidence of a corporate defendant's net worth is admissible to assess punitive damages, money paid to an executive board member is irrelevant to the company's "net worth" and inadmissible in determining the proper level of punitive damages)).

Moreover, Texas law prohibits "anchoring" the jury with large figures—"a tactic whereby attorneys suggest damages amounts by reference to objects or values with no rational connection to the facts of the case." *Gregory v. Chohan*, 670 S.W.3d 546, 557 (Tex. 2023). The *Gregory* Court, for example, found it improper when counsel in closing referenced "expensive paintings and military aircraft, [and then] urged the jury to give defendants their "two cents worth" for every one of the 650 million miles that New Prime's trucks drove during the year of the accident." *Id*. at 558 (rejecting a jury's award that appeared based on counsel's suggestion of a calculation of two cents times 650 million miles). As noted above, in the *Dean* trial, Plaintiff's counsel did the same by suggesting the jury use Mr. Johnson's inflated "revenue per day" figure to anchor damages against Uber for "[o]ne rape a day" to "one day of pay." 2/3/2026 *Dean* Trial AM Session (Closing Arguments) 3470:10-12 (Ex. 5). While *Gregory's* admonition concerned noneconomic damages, its rationale—that there was "no rational connection" between the anchoring references and the category of damages at issue—applies with equal force to a suggestion that a jury award punitive damages based on a metric that lacks support under Texas law. The Court should preclude Mr. Johnson from doing so at trial. *Gregory*, 670 S.W.3d at 559 ("It should go without saying that the cost of a painting, a military aircraft, or a percentage of a company's revenue are not 'evidence' to which "counsel shall be required to confine the argument.").

## IV. CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Robert W. Johnson.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Laura Vartain Horn (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno