[Submitting counsel below]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF QLF 001'S OMNIBUS MOTION TO EXCLUDE EXPERT TESTIMONY** |
| This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Techs., Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Judge: Honorable Charles R. Breyer<br>Date: September 25, 2026<br>Time: 10:30 A.M. PT<br>Ctrm.: 6, 17th Floor (zoom)<br><br>**PROVISIONALLY FILED UNDER SEAL PURSUANT TO ECF 7312** |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer |

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. EXPERT TESTIMONY OF SARAH BAKER ........ 7

II. EXPERT TESTIMONY OF KEVIN PHELAN ........ 9

A. Phelan's credibility attacks and victim shaming are inadmissible. ........ 9

B. Phelan's critiques of the underlying criminal investigation and prosecution are irrelevant. ........ 12

C. Phelan's testimony would create collateral mini-trials and unfair prejudice. ........ 12

D. Phelan's "[redacted]" and remaining miscellaneous opinions are irrelevant and unreliable. ........ 13

III. EXPERT TESTIMONY OF KRISTEN ZGOBA ........ 14

A. Zgoba's opinions regarding [redacted] are irrelevant and unreliable. ........ 15

B. Zgoba's opinions on the [redacted] are unreliable. ........ 17

C. Zgoba's opinions on Uber's corporate motives and character are irrelevant and unreliable. ........ 18

D. Zgoba's opinions on [redacted] are irrelevant. ........ 19

E. Zgoba's opinions on [redacted] are unreliable. ........ 19

F. Zgoba's opinions on "[redacted]" are irrelevant. ........ 21

G. Zgoba's opinions regarding [redacted] are unreliable and outside her expertise. ........ 22

IV. EXPERT TESTIMONY OF LINDSAY ORCHOWSKI ........ 23

A. Orchowski's opinions regarding "[redacted]" are irrelevant. ........ 23

B. Orchowski's opinions on a "[redacted]" standard are improper. ........ 23

V. EXPERT TESTIMONY OF BETSY BARTKO ........ 24

VI. EXPERT TESTIMONY OF ERIC PIZA ........ 25

VII. EXPERT TESTIMONY OF CHRISTOPHER WILSON ........ 26

VIII. EXPERT TESTIMONY OF JASON MORRIS ........ 27

A. Morris's opinions regarding legal compliance are improper legal conclusions. ........ 27

B. Morris's opinions about [redacted] are unreliable. ........ 29

## TABLE OF CONTENTS

**Page**


IX. EXPERT TESTIMONY OF JOSEPH OKPAKU ........ 29

A. Okpaku's "[redacted]" opinions are improper legal conclusions. ........ 29

B. Okpaku's opinions regarding [redacted] are improper legal conclusions. ........ 30

C. Okpaku's opinions about [redacted] are unreliable and irrelevant. ........ 31

D. Okpaku's opinions related to [redacted] are unreliable ........ 32

1. [redacted] opinions are not supported by any methodology or data. ........ 32

2. [redacted] opinions are *ipse dixit*. ........ 32

E. Okpaku's "[redacted]" opinions are unreliable and unhelpful. ........ 33

F. Okpaku's "[redacted]" opinions are irrelevant. ........ 34

X. EXPERT TESTIMONY OF VIDA THOMAS ........ 35

A. Thomas is not qualified to opine on [redacted]. ........ 35

B. The reLabeled "notice" opinion is irrelevant and was previously excluded by the Court. ........ 36

C. Thomas's opinion regarding "[redacted]" is unreliable. ........ 37

D. Thomas's opinions on legal requirements are improper. ........ 38

XI. EXPERT TESTIMONY REGARDING LEGAL BARRIERS ........ 38

CONCLUSION ........ 39

## TABLE OF AUTHORITIES

Page

### CASES

*Bavely v. Panini Am., Inc.,* 2023 WL 12098402 (E.D. Tex. July 5, 2023) ............................... 2, 12
*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) .......................... 24
*Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, (5th Cir. 2015) .............................. 13
*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)............................................... *passim*
*Daubert v. Merrell Dow Pharms., Inc. ("Daubert II")*, 43 F.3d 1311 (9th Cir. 1995) ........... 19, 24
*Doe (E.M.B.) v. G6 Hosp., LLC,* 2025 WL 2556106 (E.D. Tex. Apr. 23, 2025) ................ 7, 27, 37
*Doe (S.R.C.) v. G6 Hosp., LLC*, 2025 WL 4225662 (E.D. Tex. Dec. 17, 2025) ....................... 8, 10
*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002) ................................................. 34
*Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025)............................................................ 35
*Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 644 (E.D. Tex. 2024) ......................................................................................................................... 8
*Fisher v. Halliburton*, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ............................... 10-11, 18
*Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015)............. 11
*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................... 14, 25, 29
*Griffin v. Chevron U.S.A. Inc.*, 2003 WL 25667612 (C.D. Cal. Feb. 26, 2003).......................... 24
*Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001) .................................... 31
*Henricksen v. ConocoPhillips Co.,* 605 F. Supp. 2d 1142 (E.D. Wash. 2009)............................. 20
*In re Uber Rideshare Cases*, 2025 WL 2631568 (Cal. Super. Aug. 29, 2025) ............................ 36
*Jinro Am. Inc. v. Secure Invs., Inc*., 266 F.3d 993 (9th Cir. 2001), *reh'g denied and amended by* 272 F.3d 1289 (9th Cir. 2001) ...................................................................... 18
*Kim v. Am. Honda Motor Co.*, 86 F.4th 150 (5th Cir. 2023) ......................................................... 7
*Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956 (N.D. Cal. 2025)............................... 17-18, 33
*Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). ......................................................................... 7
*Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941 (N.D. Cal. July 11, 2014), *aff'd mem.* 653 F. App'x 553 (9th Cir. 2016)........................................................... 37
*Magallon v. Robert Half Int'l., Inc.*, 743 F. Supp. 3d 1237 (D. Or. 2024) ....................... 30, 33, 38
*Nationwide Transp. Fin. v. Cass. Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008).................. 24, 30
*Newton v. Roche Lab'ys, Inc.,* 243 F. Supp. 2d 672 (W.D. Tex. 2002)........................................ 16
*Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125 (Tex. 2018) ............................................. 34
*Poole-Ward v. Affiliates for Women's Health, P.A.,* 329 F.R.D. 156 (S.D. Tex. 2018)........... 8, 10
*Powell v. Anheuser-Busch Inc.*, 2012 WL 12953439 (C.D. Cal. Sept. 24, 2012) ........................ 32

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..... 36

*SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869 (N.D. Cal. 2022) ..... 28

*Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992) ..... 8, 12

*San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085 (N.D. Cal. 2022) ..... 28

*SEC v. Life Partners Holdings, Inc.*, 2013 WL 12076933 (W.D. Tex. Oct. 23, 2013) ..... 10, 14, 18

*Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194 (5th Cir. 1996) ..... 38

*State Farm Fire &Cas. Co. v. Electrolux Home Prods., Inc.*, 980 F. Supp. 2d 1031 (N.D. Ind. 2013) ..... 20

*Stiner v. Brookdale Senior Living.*, Inc., 665 F. Supp. 3d 1150 (N.D. Cal. 2023) ..... 28, 30, 38

*U.S. ex rel. Miller v. ManPow, LLC*, 2023 WL 9005796 (C.D. Cal. Nov. 22, 2023) ..... 30

*U.S. v. Artero*, 121 F.3d 1256 (9th Cir. 1997), *cert. denied* 522 U.S. 1133 (1998) ..... 20

*U.S. v. Carmichael*, 373 F. Supp. 2d 1293 (M.D. Ala. 2005) ..... 9, 12

*U.S. v. Diaz*, 876 F.3d 1194 (9th Cir. 2017) ..... 37

*U.S. v. Finley*, 301 F.3d 1000 (9th Cir. 2002) ..... 7

*U.S. v. Scholl*, 166 F.3d 964 (9th Cir. 1999), *cert. denied* 528 U.S. 873 (1999) ..... 30

*U.S. v. Veal*, 23 F.3d 985 (6th Cir. 1994) ..... 9, 12

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, 2019 WL 6896674 (E.D. Tex. Dec. 18, 2019) ..... 11, 36

*Wackman v. Rubsamen*, 602 F.3d 391 (5th Cir. 2010) ..... 8

**STATUTES**

15 U.S.C. § 1681e(b) ..... 28

34 U.S.C. § 41101 ..... 28

**RULES**

Fed. R. Evid. 403 ..... *passim*

Fed. R. Evid. 702 ..... *passim*

**INTRODUCTION**

Plaintiff moves to exclude the expert testimony, or portions thereof, of Uber's experts Sarah Baker, Kevin Phelan, Kristen Zgoba, Lindsay Orchowski, Betsy Bartko, Eric Piza, Christopher Wilson, Jason Morris, Joseph Okpaku, and Vida Thomas for failing to meet the requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**Sarah Baker**. Sarah Baker is a psychiatrist. Plaintiff moves to exclude Baker's opinions concerning Plaintiff's credibility, character, and motivations. Specifically, Baker improperly opines that [redacted]." Ex. A, Expert Report of Sarah Baker dated Sept. 8, 2026 ("Baker Rep."), at ¶ 6(c); *see also id.* at ¶¶ 144, 147. She further opines that Plaintiff has a propensity for dishonesty and attention-seeking because Plaintiff is a "[redacted]." *Id.* at ¶ 147. Baker goes even further and accuses Plaintiff of lying because of "[redacted]" *Id.* at ¶¶ 6(c), 149. Offering an expert to pass judgment on Plaintiff's credibility improperly invades the province of the jury and should be excluded, consistent with rulings in prior bellwethers.[1] *See* ECF 5809, PTO No. 43 re *WHB 823* Pretrial Motions (excluding Uber's expert testimony "to the extent she seeks to offer opinions about Plaintiff's credibility as a witness").

**Kevin Phelan**. Kevin Phelan, a former FBI agent, purports to analyze the quality of the police investigation into the sexual assault in this case. *See* Ex. B, Expert Report of Kevin Phelan dated Sept. 8, 2026 ("Phelan Rep."). Plaintiff moves to exclude all of Phelan's testimony, the bulk of which vilifies Plaintiff's character and credibility. While framed as a review of the criminal investigation (itself an irrelevant opinion), Phelan's core conclusion is that Plaintiff is unreliable and inconsistent. *See, e.g. id.* at 24 ([redacted]); *id.* at 11 ([redacted]

[1] Indeed, the Parties stipulated to cross-case application. *See* ECF 7302, Stipulation re Rule 702 Motions and Motions in *Limine*, at 2 (stipulating that "the Court's Rule 702 rulings and motions in *limine* rulings from the prior cases will apply in this case, to the extent they are relevant").

[redacted]"); *id.* at 24 ([redacted]"); *id.* ([redacted]). Phelan goes so far as to insinuate Plaintiff must be lying about being raped because of her actions on the night of the incident, when she spent "[redacted]." Phelan Rep. at 8-10, 16. This peddling of rape myths is juxtaposed against Phelan's view of Uber driver Le, who he describes as "[redacted]." *Id.* at 17 n.1.

Insofar as Uber argues that Phelan is merely reciting facts to support his opinion, such argument is disingenuous. Virtually every fact he cites is to further his "opinion" that Plaintiff is unreliable. This is inadmissible. Anything that remains is just a cherry-picked summary of facts, untethered to any application of expertise. Uber cannot use Phelan as a mouthpiece for its slanted summation of evidence. *See Bavely v. Panini Am., Inc.,* 2023 WL 12098402, at *6 (E.D. Tex. July 5, 2023) ("[e]xpert witnesses cannot be used as a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert's asserted expertise") (internal quotation marks and citations omitted).

Moreover, an opinion as to adequacy of the underlying criminal investigation is irrelevant. The facts adduced by that investigation were presented to a grand jury, the grand jury returned an indictment, the case was tried to a jury, the jury convicted Uber's driver beyond a reasonable doubt, and that conviction was affirmed on appeal. Phelan cannot, years later, seat himself in that jury box to play "the 13th juror." It is one thing for Uber to ask a civil jury, applying a lower standard of proof, to find that its driver did not in fact rape Plaintiff, notwithstanding the driver's criminal conviction. But to allow Uber, years after the fact, to nitpick the State's investigation and prosecution, and disrespect a duly rendered jury verdict, is wholly improper and should be prohibited. This case is about Uber's conduct and whether Uber was negligent. Anything else seeks

only to confuse and mislead.

Phelan's remaining opinions fare no better. His "[redacted]" opinion is in truth impermissible speculation on [redacted]. And his remaining discussion regarding [redacted], merely recites facts without providing any applicable expertise in his field.

His testimony should be excluded in full.

**<u>Kristen Zgoba</u>**. Kristen Zgoba is a criminologist. Plaintiff moves to exclude portions of her report. *See* Ex. C, Expert Report of Kristen Zgoba dated Sept. 3, 2026 ("Zgoba Rep."). *First*, Zgoba opines [redacted], comparisons this Court has already excluded as irrelevant. *See* Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 78:20-22 ("this isn't a case about drunk-driving. It's out"). *Second*, she opines [redacted] but conceded at deposition the opinion rests on no data and offers no methodology in its place. *Third*, she repeatedly comments on Uber's motives and character, which is squarely outside the bounds of expert testimony. *Fourth*, she analogizes Uber to [redacted], an environment this Court has stated is too dissimilar to assist the jury. *Fifth*, she opines that Uber cannot be judged against a "[redacted]" benchmark, a standard no party has advanced. *Sixth*, she pronounces Uber's screening "[redacted]" though she conceded she is not a [redacted], has not reviewed Uber's internal [redacted] and has not performed any research into the effectiveness of Uber's procedures. *Finally*, she purports to compare [redacted] to statistics she concedes are not comparable.

**<u>Lindsay Orchowski</u>.** Lindsay Orchowski is a psychologist. Plaintiff moves to exclude portions of her report insofar as she seeks to (1) opine on [redacted]" *See, e.g.,* Ex. D, Expert Report of Lindsay Orchowski dated Sept. 3, 2026 ("Orchowski Rep.") at 8, 11-12. As to the former, this Court held in *Dean* that such opinions are irrelevant to the issues in this case and should therefore be excluded. *See* Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 78:20-22, *supra.* As to the latter, it is improper for an expert to opine on a legal conclusion.

**Betsy Bartko**. Betsy Bartko purports to be a GPS expert. Plaintiff moves to exclude Bartko's testimony insofar as she opines Le's driving was "[redacted]." Ex. G, Expert Report of Betsy Bartko dated Sept. 3, 2026 ("Bartko Rep."), at 4. There is no methodology for this opinion, which rests solely on a subjective term, and it is not supported by the data on which she relies. Bartko provides no objective criteria, standard, or definition for "[redacted]," and thus no baselines for delineating between "[redacted]" and "not [redacted]," either in general or for the specific driver in this case. The GPS data does not help Bartko. The data is limited to an accuracy range of [redacted]. Bartko acknowledged in deposition that it cannot discern if the driver was drifting or swerving into another lane on the road, nor can it rule out instances of deceleration and acceleration (Bartko can speak only to the *average* pace for the trip). An opinion that Le's driving was "[redacted]" is therefore unsupported by the data. Moreover, it is incredibly misleading as the inference being suggested to the jury is that absent "[redacted]" the assault, forced oral copulation, could not have occurred. This is pure conjecture. Bartko admits she has no expertise and consulted no literature or studies concerning what GPS patterns are and are not consistent with a driver committing forced oral copulation or any sexual assault, in a moving vehicle.

**Eric Piza**. Eric Piza is a criminologist and purports to testify on the deterrent effects of video surveillance. Plaintiff moves to exclude his testimony that "[redacted]." *See* Ex. E, Expert Report of Eric Piza dated Sept. 3, 2026 ("Piza Rep."), at ¶¶ 47-50. This is the same opinion that Piza sought to introduce in *Dean*, and which Plaintiff moved to exclude on the basis that (1) Piza lacked the requisite qualifications, and (2) Piza lacked any supporting data—*i.e.,* data as to Uber's resources, financials, priorities, and product strategies—to make such an opinion. The Court agreed and excluded that testimony. *See* ECF 4941, PTO 39 re *Dean* Pretrial Motions, at 2 (excluding "to the extent Piza seeks to opine that complementary policies and safeguards needed for video cameras to prevent violent crime cannot realistically be implemented for the millions of rides on the Uber platform"). The same should hold here.

**Christopher Wilson.** Christopher Wilson works in the field of vehicle telematics. Plaintiff moves to exclude two portions of his testimony. *First,* Wilson purports to be an expert in the technological feasibility of in-vehicle cameras, but his opinions tread into [redacted]. Ex. F, Expert Report of Christopher Wilson dated Sept. 3, 2026 ("Wilson Rep."), at ¶¶ 2, 66. That opinion is outside the scope of his qualifications—he has and claims no expertise in corporate management, resource allocation, or product strategy. The opinion is also unreliable as it lacks any foundation in data or methodology regarding Uber's corporate resources. *Second,* Wilson's claims regarding [redacted] are improper legal opinions. *See, e.g., id.* at ¶ 47.

**Jason Morris.** Uber offers the testimony of Jason Morris, a consultant on background screenings, to address the sufficiency of Uber's driver screening processes. Morris's opinions should be excluded in part. *First*, he offers improper legal conclusions that [redacted] (which does not apply to Uber). *See* Ex. H, Expert Report of Jason Morris dated Sept. 3, 2026 ("Morris Rep."), at 6-7, 9. *Second*, he offers unreliable opinions, based on no methodology or data, about the [redacted]. *See id.* at 11-12.

**Joseph Okpaku.** Uber offers the testimony of Joseph Okpaku, a former lobbyist for Lyft, to testify about the "[redacted]." Ex. I, Expert Report of Joseph Okpaku dated Sept. 3, 2026 ("Okpaku Rep."). Okpaku's opinions are largely inadmissible. *First*, Okpaku offers improper legal conclusions about [redacted]. *See id.* at 6-14. *Second*, Okpaku offers irrelevant and unreliable opinions about the [redacted], which are not based on a review of underlying data or any methodology. *See id.* 20-21, 24. *Third*, Okpaku offers an unreliable and unhelpful opinion about the "[redacted]" of fingerprint-based background checks that provides the jury nothing beyond lay understandings of racism. *See id.* at 29-30. *Finally*, Okpaku attempts to opine on [redacted] even though vicarious liability is not at issue in this case. *See id.* at 31-38. These

opinions are inadmissible.

**Vida Thomas**. Vida Thomas presents herself as a lawyer and human resources consultant. Plaintiff moves to exclude her testimony in full. *First,* Plaintiff moves to exclude her opinion with respect to [redacted], as Thomas conceded at deposition that she was not qualified to opine on these issues. *See* Ex. J, Expert Report of Vida Thomas dated Sept. 3, 2026 ("Thomas Rep."), at § VI.A. *Second*, Plaintiff moves to exclude the opinion that the "[redacted]." *Id.* at § VI.B. This is a relabeled version of the "notice" opinion that was previously excluded by the Court. *See* ECF 4941 at 2 (excluded "to the extent that Thomas seeks to opine that Uber was not on notice that [driver] would purportedly sexually assault a rider"). *Third*, Plaintiff moves to exclude the opinion that [redacted]." *Id.* at § VI.C. That opinion identifies no standard relevant to this case and does nothing more than observe (incorrectly) that [redacted]. This is not expert testimony at all but merely a factual recitation under the pretense of expertise. *Lastly*, insofar as Thomas seeks to opine on legal requirements, i.e., [redacted], those are improper legal opinions.

## LEGAL STANDARD

Admissibility of expert testimony is governed by Fed. R. Evid. 702, as elucidated by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Expert testimony is admissible only if the proponent demonstrates to the court that it is more likely than not that (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *See* Fed. R. Evid. 702; *see also Daubert,* 509 U.S. at 593-94.

The Supreme Court in *Daubert* charged trial judges with the responsibility of acting as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Kim v. Am. Honda Motor Co.*, 86 F.4th

150, 160 (5th Cir. 2023). The Court set out a two-step inquiry to determine whether expert testimony is admissible. *See Daubert,* 509 U.S. at 592-93. *First*, the trial court must assess reliability by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* Reliability requires that the testimony be rooted in "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotation marks, alteration, and citation omitted). This includes the requirement that the opinion be grounded in "sufficient facts or data." Fed. R. Evid. 702(b). *Second*, expert testimony must be relevant and serve to assist the trier of fact. *See Daubert*, 509 U.S. at 591-592; *Doe (E.M.B.) v. G6 Hosp., LLC,* 2025 WL 2556106, at *3 (E.D. Tex. Apr. 23, 2025). Expert testimony helps the trier of fact "when it provides information beyond…common knowledge." *U.S. v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002).

Notably, there are "two cardinal rules governing the admissibility of expert testimony: no legal conclusions or credibility determinations." *Doe (E.M.B.),* 2025 WL 2556106 at *24. Uber's experts repeatedly violate both.

**ARGUMENT**

Plaintiff moves to exclude the following expert opinions.

## I. EXPERT TESTIMONY OF SARAH BAKER

Baker inserts personal judgments as to Plaintiff's credibility, motives, and character; effectively calling Plaintiff a liar and an attention seeker, whose claims in this case are financially motivated. This testimony is improper and should be excluded.

Baker accuses Plaintiff of "[redacted]." Baker Rep. at ¶ 6(c). She further insinuates that Plaintiff has a propensity for lying because Plaintiff is a "[redacted] and because [redacted] *See id.* at ¶ 147. In Baker's view, interest in performance arts and a desire to expose Uber in a public forum are indicative of attention-seeking and fraudulent behavior. *See id.* (asserting that these factors "[redacted]

[redacted]"). More troubling still, Baker accuses Plaintiff of lying for financial gain.[2] *See id.* at ¶ 6(c) (concluding an "[redacted]" based on statements by collateral witnesses); *see also id.* at ¶ 149 [redacted]").

These opinions are wholly improper. They reflect speculative and subjective character and credibility judgments that are of no help to a jury. "Fifth Circuit precedent makes clear that '[i]t is uniquely within the jury's province to weigh the evidence and make credibility determinations.'" *Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 644, 690 (E.D. Tex. 2024) (quoting *Wackman v. Rubsamen*, 602 F.3d 391, 404 n.5 (5th Cir. 2010)); *see also Poole-Ward v. Affiliates for Women's Health, P.A.,* 329 F.R.D. 156, 168 (S.D. Tex. 2018) (instructing "[a]s a threshold matter, [an expert] may not characterize witness testimony [or] assess witness credibility"); *Doe (S.R.C.) v. G6 Hosp., LLC*, 2025 WL 4225662, at *4 (E.D. Tex. Dec. 17, 2025) (excluding as improper credibility opinions expert testimony that sought to point out alleged inconsistencies in statements); ECF 5809 (excluding, in *WHB 823,* Uber's expert "to the extent she seeks to offer opinions about Plaintiff's credibility as a witness"); ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings in prior bellwether cases). In fact, these opinions do nothing more than encapsulate arguments Uber's attorneys seek to make at closing. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (reiterating that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument") (internal quotation marks and citation omitted).

Uber's attempt to shield these opinions under the umbrella of "an important component of every psychiatric evaluation" (Baker Rep. at ¶ 6(c)) cannot cure what are clearly improper credibility determinations. The testimony should be excluded.

---

[2] The basis for this accusation is that [redacted]. *See, e.g.* Baker Rep. at ¶¶ 6(c), 20, 72-73, 90, 102, 149.

## II. EXPERT TESTIMONY OF KEVIN PHELAN

Plaintiff moves to exclude the testimony of Phelan, a former FBI agent retained by Uber to attack Plaintiff's credibility and critique the investigation and prosecution of Victor Le. Phelan offers four primary opinions: (1) [redacted]; (2) [redacted]; (3) [redacted]; and (4) [redacted]. *See* Phelan Rep. at 24.

While set out as discrete conclusions, in truth these represent Phelan's progressive attacks on Plaintiff's credibility. When those improper attacks are removed, all that remains is a regurgitation of facts from the criminal investigation. In short, all of his opinions derive from his core conclusion that Plaintiff was unreliable and therefore the investigation was flawed (with a bit of vouching for Victor Le's character to boot). Even if Phelan's opinions on the integrity of the investigation were reliable, they would be irrelevant: nothing in this case turns on whether the police did a good job. *See, e.g., U.S. v. Carmichael*, 373 F. Supp. 2d 1293, 1297 (M.D. Ala. 2005) (collecting cases) ("[i]n most cases, [] evidence questioning the adequacy of various aspects of the government's investigation itself—as opposed to the adequacy of the evidence gathered as a result of that investigation—is either irrelevant or of very little probative value, as it improperly shifts the jury's focus from the accusations against the defendant to accusations against the police"); *U.S. v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (affirming exclusion of evidence offered to show that the government's investigation was "sloppy" because the jury was not called upon to determine whether the investigation was "good or bad"). Phelan's four "conclusions" should be excluded.

### A. PHELAN'S CREDIBILITY ATTACKS AND VICTIM SHAMING ARE INADMISSIBLE.

Again, credibility is for the jury to decide and not the proper subject of expert testimony. *See* ECF 5809 (in *WHB 823,* excluding expert testimony "to the extent she seeks to offer opinions about Plaintiff's credibility as a witness"); ECF 7302 (stipulation regarding cross-case application

of 702 and motions *in limine* rulings).

Phelan's first two conclusions are credibility opinions on their face; addressing Plaintiff's "[redacted]" and alleged "[redacted]" statements. These opinions are improper and should be excluded. *See, e.g., Poole-Ward*, 329 F.R.D. at 168 (experts "may not characterize witness testimony [or] assess witness credibility"); *Doe (S.R.C.)*, 2025 WL 4225662, at *4 (excluding expert testimony pointing out purportedly inconsistent statements).

Phelan's next two opinions (Nos. 3 and 4) continue his vilification of Plaintiff's credibility. Opinion No. 3 concludes that [redacted]." Phelan Rep. at 24. This is an extension of the same improper credibility attack, this time under the guise of [redacted]. A pretense Phelan readily conceded at deposition, when he acknowledged that he has no [redacted]. *See* Ex P, Kevin Phelan Deposition (Rough Transcript) ("Phelan Dep."), at 119:11-16. Likewise, Opinion No. 4, while couched in more objective terms that "[redacted]" remains grounded in Plaintiff's credibility. Phelan asserts that jurisdiction was an issue because Plaintiff purportedly gave "[redacted]." *Id.* at 15, 23; *see also* Phelan Dep. at 74:7-17 ([redacted]").

Indeed, the common core opinion throughout all of these "conclusions" is that Plaintiff is a liar. Phelan goes even further by providing inappropriate and speculative commentary that police officers handling Plaintiff's interview were "[redacted]" and the investigator "[redacted]" *Id.* at 11, 13; *see SEC v. Life Partners Holdings, Inc.*, 2013 WL 12076933, at *3 (W.D. Tex. Oct. 23, 2013) ("a trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury") (quoting *Fisher v. Halliburton*, 2009 WL 5216949, at *2 (S.D.

Tex. Dec. 21, 2009)). This is not expert testimony. It is conjecture and character assassination.

And Phelan does not stop there. His "opinions" deteriorate to perpetuating offensive sexual-assault and victim-blaming stereotypes as a basis to cast doubt on Plaintiff's assault. For example, he points out that Plaintiff spent "[redacted]" (as if consent is assumed—it is not). Phelan Rep. at 8-10, 16. Phelan then works the other side of the same ledger. While casting Plaintiff as unreliable, he vouches for the man convicted of assaulting her, referencing Le's [redacted], and describing Le as "[redacted]." *Id.* at 17 n.1.

Phelan's entire report is nothing more than calling Plaintiff a liar and then concluding that the criminal conviction must therefore have been baseless. Indeed, Phelan makes this point quite clear when he asserts that "[redacted]." *Id.* at 17. Phelan's testimony should be excluded—any "opinion" he seeks to make is an end to an improper credibility determination.

Insofar as Uber argues that Phelan's statements are merely factual recitations, such argument is circular and meritless. Every fact he cites is to further his opinion that Plaintiff is a liar. This opinion is inadmissible. So, anything that remains is just a factual recitation, which needs no expert opinion and indeed is improper. *See United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, 2019 WL 6896674, at *2 (E.D. Tex. Dec. 18, 2019) (striking most of expert's report because it contained no expert analysis and merely parroted facts from the documents and witnesses); *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015) (striking expert's factual narrative because it offered no more than "simple inferences drawn from uncomplicated facts" and a narrative "a lay juror is equally capable of constructing") (internal quotation marks and citations omitted).

Uber cannot use Phelan as a mouthpiece for its slanted presentation of facts. *See Salas*, 980

F.2d at 305; *see also Bavely, Inc.*, 2023 WL 12098402 at *6 (“[e]xpert witnesses cannot be used as a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert’s asserted expertise”) (internal quotation marks and citations omitted).

### B. PHELAN’S CRITIQUES OF THE UNDERLYING CRIMINAL INVESTIGATION AND PROSECUTION ARE IRRELEVANT.

The Court should reject any attempt to insulate improper credibility opinions from exclusion by recasting them as critiques of the investigation and prosecution of Victor Le. Expert testimony is admissible only if it will “help the trier of fact to understand the evidence or to determine a fact in issue,” Fed. R. Evid. 702(a), which requires a valid connection to the “pertinent inquiry,” or what *Daubert* called “fit.” *Daubert*, 509 U.S. at 591-92. Phelan does not offer opinions about whether Uber knew or should have known of Le’s prior misconduct, whether Uber’s safety systems were reasonable, or whether Uber responded reasonably to known risks. Instead, he critiques what police and prosecutors did after Plaintiff reported the assault, faulting them for [redacted]. *See* Phelan Rep. at 11, 13-15. These opinions do not help the jury decide Uber’s liability.

These opinions also do not help the jury evaluate the import of Mr. Le’s criminal conviction. Le was convicted beyond a reasonable doubt of sexually assaulting Plaintiff. Phelan cannot now nitpick the investigation that preceded that trial, the prosecution obtained the conviction, or the judgment the jury rendered. *See U.S. v. Carmichael*, 373 F. Supp. 2d at 1297 (collecting cases); *U.S. v. Veal*, 23 F.3d at 989. If Uber wants to challenge the evidence that the assault occurred—Plaintiff’s reports, her testimony, her parents’ testimony, her friends’ testimony, etc.—it may. But whether the police asked the right questions or the prosecution made the right charging decisions is irrelevant.

### C. PHELAN’S TESTIMONY WOULD CREATE COLLATERAL MINI-TRIALS AND UNFAIR PREJUDICE.

Through Phelan, Uber asks this jury to relitigate the adequacy of a criminal investigation and prosecution from years earlier. One that ended in Le’s conviction, which was then upheld on appeal. Phelan wants to tell the jury, notwithstanding the conviction, that “[redacted]” what happened in Le’s vehicle. Phelan Rep. at 23. That opinion invites a collateral attack on a

criminal judgment and criminal investigative protocols, e.g., what occurred at the criminal trial, what evidence police should have collected, whether and when officers should have sought search warrants, how prosecutors charged and tried the case, and what the arrest-warrant affidavit should have included. These issues are irrelevant in this civil case where the question is whether Uber acted negligently with respect to Plaintiff's sexual assault. Phelan's testimony goes to no issue in this trial. It is irrelevant and should be excluded. *See Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 198 (5th Cir. 2015) (affirming exclusion of law enforcement expert whose report addressed the adequacy of the officer's investigation rather than of the dispositive question of probable cause).

Moreover, the prejudice posed by the testimony is severe. The report's function is to instruct the jury that Plaintiff is a liar and that Le was wrongly accused. It does so under the strength and cover of testimony from a former FBI special agent whose "expert opinion" is intended to, and would, mislead the jury. The testimony engineers confusion on the issues, invites re-litigation of a criminal trial, instructs the jury on credibility, and perpetuates baseless stereotypes related to victim-blaming and shaming. Rule 702 and Fed. R. Evid. 403 do not permit this. Phelan's report and testimony should be excluded.

**D. PHELAN'S "[redacted]" AND REMAINING MISCELLANEOUS OPINIONS ARE IRRELEVANT AND UNRELIABLE.**

After setting out his final opinions, Phelan tacks on a "[redacted]" section that provides irrelevant and unreliable testimony. *See* Phelan Rep. at 24. Specifically, he seeks to opine that "[redacted]." Phelan Rep. at 33 (emphasis added); *see also id.* at 24-25 (instructing the jury on [redacted]") (emphasis added). Phelan cannot opine on [redacted]. Such testimony is not the product of reliable expert methodology but rather speculation

on the subjective knowledge and intent of another. *See SEC*, 2013 WL 12076933, at *3.

And he certainly cannot opine on whether that belief was reasonable or unreasonable. Phelan conceded at deposition that he does not know [redacted]. *See* Phelan Dep. at 34:5-6, 34:20-22, 76:14-77:8. He does not know [redacted]. *See* Phelan Dep. 34:5-6, 34:20-22, 76:14-77:8. He alludes to what is "[redacted]" available on municipal county databases (*see* Phelan Rep. at 33) but cites no data or basis for this claim. *See id.* at 30. Accordingly, even if a state of mind opinion were permissible (it is not), Phelan lacks any data to make the analytical leap to what an individual would or should reasonably believe in 2020. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (court may exclude opinion where there is "simply too great an analytical gap between the data and the opinion proffered"). Testimony as to what an investigator in 2020 believed, should have believed, knew, should have known, or whether the individual's conduct was reasonable or unreasonable is therefore improper.

The remainder of Phelan's report contains a smattering of irrelevant and unreliable opinions. For example, the "[redacted]" section merely recounts a discussion between [redacted]. *See* Phelan Rep. at 33; *see also id.* at 33-34 (summarizing [redacted], without providing any real "expert" opinion). There are no opinions here, and it is just a gratuitous factual recitation intended to circumvent the rules of hearsay at trial. Similarly, Phelan's [redacted] section does nothing more than set out what a [redacted] request is. *See id.* at 34. Insofar as Phelan seeks to opine on whether it is or is not "[redacted]" he is not qualified to do so. *See id.* at 2-3 (setting out his qualifications in criminal investigation, *not* employment and hiring practices). These opinions should be excluded.

## III. EXPERT TESTIMONY OF KRISTEN ZGOBA

Zgoba is a criminologist offered by Uber to provide nearly forty opinions spanning topics

from [redacted]. Much of the report contains no opinion at all. Instead, it is an ode to Uber's character, presenting unsupported commentary on how great Uber and its safety features are. To establish a veneer of "expertise," Zgoba cites to a range of literature, but none support her bald conclusions. By and large, she identifies no testable methodology, leaping from generalized data to *ipse dixit* conclusions. At bottom, the report is a collection of mismatched data, hypotheticals, corporate character testimony, and prepackaged attorney litigation themes presented under the guise of expertise. Plaintiff moves to exclude the following opinions.

### A. ZGOBA'S OPINIONS REGARDING [redacted] ARE IRRELEVANT AND UNRELIABLE.

Plaintiff moves to exclude testimony related to "[redacted]" and "[redacted]." Zgoba Rep. at 16-17, 19-22. Despite the camouflage of scientific terminology, the testimony is, in truth, an irrelevant discussion of safety risks and harms that are not at issue in this case, e.g., [redacted]." *Id.* at 16. Her discussion on these issues is irrelevant, and unreliable for lack of data and methodology.

*First,* the Court has already ruled that these types of comparisons are irrelevant to this case. *See, e.g.,* Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 78:20-22 (explaining that "this isn't a case about drunk-driving" and excluding evidence or argument that Uber reduced impaired driving); ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings). Zgoba nevertheless repeatedly returns to [redacted] and other irrelevant scenarios. *See* Zgoba Rep. at 16-17, 19-22.

*Second,* Zgoba attempts to legitimize these irrelevant opinions by asserting that any discussion of Uber's risk is "[redacted]" unless it is compared against one of these "[redacted]." *Id.* at 16-17. Not so. Plaintiff was sexually assaulted by the driver Uber sent to pick her up. Whether rideshare reduces [redacted] tells the jury nothing

about whether Uber was negligent here. Uber cannot discharge its duty of care to Plaintiff by speculating that her alternatives were worse. *See* Fed. R. Evid. 702(a) (expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). The only relevant comparison is the ride Plaintiff received against the ride Uber should have provided—not a hypothetical comparison with a speculative "[redacted]." The supposed "[redacted]" gap is nothing more than a sham argument to present irrelevant and misleading "[redacted]" to the jury.[3] In fact, Zgoba admits a "[redacted]" analysis is "[redacted]" to conduct. *See* Ex. K, Kristen Zgoba Deposition (Rough Transcript) dated Sept. 11, 2026 ("Zgoba Dep.") at 62:2-23 (emphasis added).

*Third*, under the umbrella of "[redacted]" and "[redacted]," Zgoba opines that Uber is [redacted], and because Uber is [redacted]." Zgoba Rep. at 7, 19-22. These opinions are unreliable and outside Zgoba's expertise. Zgoba is a criminologist; she has no expertise in transportation safety or impaired-driving prevention. *See id.* at 4-5. Moreover, her support for these opinions consists of only [redacted]—which she did not validate, test, or apply to the facts of this case. "[A]n individual's review of literature in an area outside [her] field does not make [her] any more qualified to testify as an expert than a lay person who read the same articles." *Newton v. Roche Lab'ys, Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002) (cleaned up). More fundamentally, Zgoba's analysis employs the logical fallacy that she herself cautions against: she equates correlation ([redacted]) with causation ([redacted]). She has no qualification, data, or reliable methodology to support the opinion that [redacted].

Finally, these opinions should be excluded under Fed. R. Evid. 403. Zgoba's [redacted] invite the jury to speculate that Plaintiff was in even greater danger without Uber, while her [redacted]

[3] The definition of "[redacted]" itself underscores this point. It is a statement, concept, or line of reasoning that is *contrary to the actual facts*. Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/counterfactual ("thinking about what did not happen but could have happened").

[redacted] opinions ask the jury to credit Uber with generalized public-safety benefits unrelated to the assault. This will distract from the core issues at trial, as Plaintiff will be forced to disprove the safety risks of every conceivable alternative way home. Any marginal probative value is substantially outweighed by the danger of unfair prejudice, confusion, and misleading the jury.

### B. ZGOBA'S OPINIONS ON THE [redacted] ARE UNRELIABLE.

Zgoba's opinions about the supposed [redacted] should be excluded as unreliable. The opinions assert that Uber's reporting mechanisms reduce "[redacted]." Zgoba Rep. at 16-18; *see also id.* at 7, 37 (Uber's systems "[redacted]"; "[redacted]"). This testimony lacks reliable data and methodology.

Zgoba conceded at deposition [redacted]. Zgoba Dep. at 60:21-61:15. The studies she purportedly relied on did not evaluate the efficacy of apps or online [redacted]. They addressed advances in sexual-assault prevention, *e.g.* services allowing a woman to call for a ride home late at night. *Id.* at 120:14-121:8. Her report is no more forthcoming, citing only studies showing that [redacted]. But Zgoba's opinion depends on the proposition that Uber's systems actually reduce barriers to [redacted] and she conceded at deposition that she cannot conclude [redacted]. Zgoba Dep. at 65:9-66:25; *see e.g.,* Zgoba Rep. at 18, 25, 37 ([redacted]). These concessions are dispositive. Rule 702 requires reliable facts, data, and methodology, not a series of untested "maybes" relying entirely on *ipse dixit*. An opinion the expert declines to state is not one the jury can be asked to accept. *See Klein v.*

*Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 963 (N.D. Cal. 2025) ("purpose of the Court's inquiry under FRE 702 is to ensure that proposed expert testimony imparts scientific knowledge rather than guesswork") (internal quotation marks and citation omitted).

Zgoba's "expertise" alone cannot clear this analytical void. She has no expertise in the efficacy of a [redacted] design, implementation, and "ease" of use. She is *not* a psychologist, trauma expert, human-factors expert, or product-design expert. She identifies no expertise in how sexual-assault survivors (or riders in general) interact with digital [redacted] tools, how platform design affects [redacted] behavior, how to overcome social and psychological barriers to [redacted], or how to measure [redacted]. She cannot opine on what does or does not remove "[redacted]. *See Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (before an expert may come "before the jury cloaked with the mantle of an expert ... care must be taken to assure that a proffered witness truly qualifies as an expert" through "knowledge, skill, experience, training, or education"), *reh'g denied and amended by* 272 F.3d 1289 (9th Cir. 2001).

### C. ZGOBA'S OPINIONS ON UBER'S CORPORATE MOTIVES AND CHARACTER ARE IRRELEVANT AND UNRELIABLE.

Zgoba repeatedly and improperly opines on Uber's corporate motives and character, citing, for instance, Uber's supposed "[redacted], and speculating that Uber [redacted]." Zgoba Rep. at 25; *see also, e.g., id.* at 24, 29 ("[redacted]"). This testimony should be excluded. A corporation's state of mind lies outside the bounds of expert opinion. *See SEC*, 2013 WL 12076933, at *3; *Fisher*, 2009 WL 5216949, *2.

Even if proper, there is no reliable data or methodology to support her conclusions. Zgoba is not an Uber employee, was not present for any of the decisions she characterizes, and identifies no documents, testimony, or method supporting her account of Uber's character, motives, and

reasons. Rule 702's requirement of "knowledge" "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

**D. ZGOBA'S OPINIONS ON [redacted] ARE IRRELEVANT.**

Zgoba invokes the [redacted] throughout her report, comparing Uber to [redacted]. *See* Zgoba Rep. at 15-16, 18-19. As this Court explained in *Dean*, prison environments with known rapists and convicted criminals are "microcosms of a concentration of people who have a high…and proven degree of antisocial behavior and illegal behavior," making them "so different from the general population" that the analogy is "so remote from the issues in this particular case" that it has "almost no probative value[.]" Dean Trial Tr. at 2689:18-23; 2690:16-2691:3. The same reasoning applies here. Whether prisons have failed to eliminate sexual assault, or whether complaints by prisoners have been substantiated by the facility (which has its own unique investigations, resources, and incentives) says nothing about whether Uber used reasonable care to address known and foreseeable risks on its platform. Expert testimony must bear "a valid scientific connection to the pertinent inquiry[.]" *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1995) ("*Daubert II*"). Zgoba's [redacted] comparison bears none. It instead invites the jury to evaluate Uber against an extreme and inflammatory institutional setting rather than the facts of this case, posing a substantial risk of unfair prejudice and confusion that independently warrants exclusion under Rule 403.

**E. ZGOBA'S OPINIONS ON [redacted] ARE UNRELIABLE.**

Zgoba cites [redacted], then states, without further explanation, that they are still "[redacted]" and provide a "[redacted]." Zgoba Rep. at 10, 12. The barrage of statistics seeks to confuse and mislead the jury, presenting unreliable figures to give the appearance that Uber's platform poses no real risk, while in truth the numbers say nothing at all. Zgoba's hallmark comparative-risk figure is her assertion that [redacted]. *Id.* at 11. But she conceded at deposition it would be incorrect to say that

[redacted]. *See* Zgoba Dep. at 45:5-10. Testimony predicated on admittedly incomparable and misleading data sets should be excluded. *See, e.g.*, Zgoba Rep. at 9-13.

Zgoba identifies several datasets that measure different undefined forms of sexual violence (e.g., "[redacted]"). These datasets arise from different populations (e.g., [redacted]). They also cover different time periods (e.g., [redacted]). And they span different contexts (e.g., [redacted]). Zgoba admits, as she must, that these figures "[redacted]." Zgoba Rep. at 9-12; Zgoba Dep. at 41:23-42:4 (statistics are *not* "[redacted]"); *see State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 980 F. Supp. 2d 1031, 1049 (N.D. Ind. 2013) ("[w]hen conducting a comparative analysis, to meet the reliability that *Daubert* demands, an expert must 'select samples that are truly comparable. To put it another way, care must be taken to be sure that the comparison is one between 'apples and apples' rather than one between 'apples and oranges''"). Yet without any methodology to account for those differences, she boils the figures down to [redacted] and states that [redacted]." *Id.* at 12. But she conceded that [redacted]. *See* Zgoba Dep. at 44:15-21 (the percentages are "[redacted]") (emphasis added). Zgoba thus simply places incompatible figures side by side, which a jury can do without expert assistance. This type of evidence is inadmissible. *See Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1164-65 (E.D. Wash. 2009) ("While Rule 702 does not require an expert to find a study linking the exact facts, it does require the expert demonstrate a scientifically valid basis for projecting the findings of a study to the proffered [causal] theory"); *U.S. v. Artero*, 121 F.3d 1256, 1262 (9th Cir. 1997) ("a statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has

no value as causal explanation and is therefore inadmissible in a federal court") (internal quotation marks and citation omitted), *cert. denied* 522 U.S. 1133 (1998).

Zgoba also says that although [redacted]." Zgoba Rep. at 10. Again, Zgoba offers no reason or methodology except for her own say-so as to why these disconnected figures are "[redacted]" or appropriate illustrations. Nor are "[redacted]" probative of any fact at issue. *Id.* Absent a methodology connecting the figures to the risk of sexual assault during an Uber ride, these opinions are not relevant to any issue in the case. They serve only to misdirect the jury from Uber's conduct to generalized social prevalence, creating a substantial risk of unfair prejudice and confusion. *See* Fed. R. Evid. 403.

Finally, Zgoba compares [redacted]," notes that [redacted], and concludes this is "[redacted]. *Id.* at 13. Zgoba provides zero explanation for this causal conclusion, [redacted]. *See* Zgoba Dep. at 46:25-47:5. It is a quintessential example of *ipse dixit*. Zgoba's comparative-risk analysis opinions should be excluded.

### F. ZGOBA'S OPINIONS ON "[redacted]" ARE IRRELEVANT.

Zgoba opines that [redacted] Zgoba Rep. at 14. These opinions are irrelevant, purport to instruct the jury on matters of common sense, and invite the jury to apply an erroneous legal standard—that Uber can avoid liability only if it eliminates sexual assault.

No one contends that Uber must eliminate all crime on its platform. And whether Uber could possibly do so is not pertinent to whether Uber breached its standard of care. The "[redacted]"

opinion merely sets up the "[redacted]" so that Uber can measure itself in a more favorable light. But it is a false baseline—one that is not advanced in this litigation—and which misleads the jury into thinking that unless Uber can prevent all crime, it cannot be liable for any crime. That is not what this case is about and not what the law requires. Further, the proposition that no system prevents all crimes lies well within the common sense of any juror and is therefore not proper expert opinion. This opinion should be excluded.

### G. ZGOBA'S OPINIONS REGARDING [redacted] ARE UNRELIABLE AND OUTSIDE HER EXPERTISE.

Zgoba conceded [redacted]. Zgoba Dep. at 24:24-25:7, 55:11-12, 55:25-56:3. She nonetheless pronounces Uber's screening and background methods as "[redacted]," and concludes that [redacted]." Zgoba Rep. at 8, 26. Zgoba's opinions regarding the [redacted] should be excluded.

Zgoba conceded at deposition that she is not [redacted]. Zgoba Dep. at 55:11-12. She agreed that [redacted]. *Id.* at 102:22-25. Her experience bears that out. Her exposure to [redacted]. *Id.* at 32:1-33:3; 90:4-15; 99:3-13. Rule 702 permits opinion testimony only from a witness qualified in the relevant field, and Zgoba has disclaimed qualification in the only field to which these opinions pertain. *See* Fed. R. Evid. 702.

Qualifications aside, the opinions rest on insufficient facts and data. [redacted]. Zgoba Dep. at 20:3-23, 24:24-25:7, 55:25-56:3. [redacted]. *Id.* at 20:3-10, 25:8-13. She therefore cannot say what Uber searched, how those

searches were conducted, whether Le's pending charge and outstanding warrant was discoverable, or whether a reasonably designed process should have surfaced them. Her opinions describe screening tools in the abstract. They say nothing about the screening Uber actually performed on the driver it sent to pick up Plaintiff.

What remains is an opinion with no method behind it. Zgoba offers no basis, beyond her own say-so, for moving from general literature about screening modalities to a conclusion about the system Uber in fact used—a system she did not examine and is not qualified to evaluate. That is *ipse dixit*, and Rule 702 does not permit it. *See* Fed. R. Evid. 702(b)-(d). These opinions should be excluded.

## IV. EXPERT TESTIMONY OF LINDSAY ORCHOWSKI

### A. ORCHOWSKI'S OPINIONS REGARDING "[redacted]" ARE IRRELEVANT.

Plaintiff moves to exclude Orchowski's testimony insofar as she opines on rideshares' reduction of "[redacted]." Orchowski Rep. at 11-12. This topic is irrelevant to this case, devolving into opinions regarding [redacted]. *Id.* at 11. None of this is relevant and serves only to confuse the issues. As the Court noted in *Dean*, "Uber has helped reduce drunk-driving rates. That's great, but this isn't a case about drunk-driving. It's out." Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 78:20-22 (regarding motions in *limine*). The same should apply here. *See* ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings).

### B. ORCHOWSKI'S OPINIONS ON A "[redacted]" STANDARD ARE IMPROPER.

Plaintiff further moves to exclude Orchowski's testimony insofar as she seeks to opine on "[redacted]," which Orchowski equates to mean "[redacted]." Orchowski Rep. at 8; Ex. L, Lindsay Orchowski Deposition (Final Transcript) dated Sept. 8, 2026 ("Orchowski Dep.")

at 101:13-24. A standard that Orchowski acknowledges [redacted]. *See* Orchowski Dep. at 116:13-17, 136:23-25. Experts are prohibited from deciding disputed issues of fact and making legal conclusions as "such opinions may 'invade the province of' the jury." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 971 (N.D. Cal. 2019); *see Nationwide Transp. Fin. v. Cass. Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008); *see also Griffin v. Chevron U.S.A. Inc.*, 2003 WL 25667612, at *2 n.1 (C.D. Cal. Feb. 26, 2003) ("[an] expert opinion may not be given regarding legal conclusions, such as the existence of a legal duty or whether or not a party was negligent"). Orchowski's "[redacted]" opinion violates this rule; it instructs the jury (incorrectly) on the element of causation and "merely tells the jury what result to reach." *Berman*, 400 F. Supp. 3d at 971. She compounds this error by employing a scientifically unsupported standard. The testimony should be excluded.

## V. <u>EXPERT TESTIMONY OF BETSY BARTKO</u>

Bartko is a digital forensic analyst engaged by Uber to review GPS data. Plaintiff moves to exclude her opinion insofar as she opines that there were "[redacted]" during the ride. Bartko Rep. at 4. The opinion is a subjective and speculative conclusion with no reliable basis in data or methodology. Indeed, there is no definition or meaning ascribed to the term "[redacted]," or supporting literature, published standard, or industry protocol setting objective criteria for its measurement. She identified no threshold—no heading change, no lateral acceleration, no deviation distance or duration—to distinguish what is or is not, in her view, an "[redacted]." At deposition, Bartko conceded that she "[redacted]" and there is otherwise no [redacted] to support the opinion. Ex. M, Betsy Bartko Deposition (Rough Transcript) dated Sept. 11, 2026 ("Bartko Dep."), at 121:6-124:8. And she has no knowledge of Le's prior driving history to ascertain a baseline of what would or would not be "[redacted]" for him. *See* Bartko Dep. at 126:14-127:3; *see Daubert II*, 43 F.3d at 1319 n.11 (offering party "must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable scientific method and followed it faithfully").

In fact, according to her own analysis, the GPS data is limited to an accuracy range of "[redacted]." Bartko Rep. at 3. This is the "[redacted]" scenario and she acknowledged that the margin of error could be "[redacted]." Bartko Dep. at 131:3-132:14. Thus, by her own admission, she lacks sufficient data to ascertain what is or isn't "[redacted]." She does not and cannot know based on the GPS data if Le was drifting or swerving into another lane on the road, nor can she determine whether Le had moments of deceleration and acceleration while driving on the highway (she can speak only to the *average* pace for the trip). *See* Bartko Dep. at 138:4-139:25, 151:4-23. The GPS data that Bartko reviewed contains only five fields: driver name, timestamp, latitude, longitude, and speed in miles per hour. *See* Bartko Rep. at § 3.1 (citing UBER-MDL-3084-DFS00064941). It contains no heading, lateral motion, or acceleration data of any kind. *Id.* Nonetheless, she seeks to testify that Le's driving was "[redacted]." Bartko Rep. at 4. This is not an expert opinion. It is a subjective impression, devoid of reliable principles, data, or methodology by which to test that impression. *See Gen. Elec. Co. v. Joiner*, 522 U.S. at 146 (court need not admit opinion "connected to existing data only by the *ipse dixit* of the expert").

The opinion is also incredibly misleading. It invites the jury to accept the faulty premise that because Bartko could not discern "[redacted]" the jury should therefore infer that the assault did not occur. *See Daubert*, 509 U.S. at 595 (courts should also consider Rule 403 prejudice in determining exclusion, including risk of confusion of the issues or misleading the jury). This intended logical leap is clear, and Uber is effectively shoehorning an assault-feasibility opinion through a GPS expert. A subject that Bartko concedes she has no expertise in or any frame of reference to opine on; she consulted no literature or studies concerning what GPS patterns are and are not consistent with a driver committing forced oral copulation or any sexual assault, in a moving vehicle. *See* Bartko Dep. at 124:9-16, 125:6-22. The testimony should be excluded.

## VI. <u>EXPERT TESTIMONY OF ERIC PIZA</u>

Piza, a criminologist, seeks to resubmit the opinion that "[redacted]." Piza Rep. at ¶¶ 47-50; *see also id.* at ¶¶ 18, 51. The

Court already excluded this opinion in the *Dean* trial. *See* ECF No. 4941 at 2 (excluding "to the extent that Piza seeks to opine that complementary policies and safeguards needed for video cameras to prevent violent crime cannot realistically be implemented for the millions of rides on the Uber platform"). The only change this time around is a footnote stating: "[redacted]." *Id.* at ¶ 49 n.73. This footnote does nothing more than concede that Piza is not qualified to provide the opinion. And then, only half-heartedly, as it extends to only [redacted] it says nothing about [redacted] that the report also addresses – and which Piza remains wholly unqualified to opine on (he is a "criminologist" not a technology or camera specifications expert). *See id.* Disavowing the opinion while still asserting the same testimony does not turn what was previously excluded, admissible. *See* ECF 4941 at 2. For the same reasons as previously briefed, the Court's prior rulings should apply in this case. *See* ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings).

## VII. EXPERT TESTIMONY OF CHRISTOPHER WILSON

Plaintiff moves to exclude testimony from Wilson insofar as he seeks to opine on Uber's "[redacted]" capabilities, i.e., [redacted]. *See, e.g.,* Wilson Rep. at ¶ 2. This opinion is beyond the scope of Wilson's qualifications and unsupported by any data or reliable methodology. Indeed, Wilson's expertise is limited to vehicle telematics, and he focuses on vehicle data and technology. *See id.* at ¶ 5. He has no experience or expertise in corporate management, resource allocation, or product strategy, let alone corporate feasibility and standards related to sexual-assault prevention and risk. Wilson is thus unqualified to speak to Uber's "[redacted]" capabilities.

Wilson's report bears out the limitations of his qualifications. In line with his technical expertise, Wilson exclusively discusses [redacted]. *See generally, id.* Absent from the report is any review, consideration, or discussion of data specific to Uber's resources and capabilities vis-à-vis overcoming any technical hurdle. Yet sprinkled throughout the report, Wilson adds on the phrase

"[redacted]" capabilities to his opinions. *See, e.g., id.* at ¶¶ 2, 66. There is no basis for this opinion. Thus, insofar as Wilson seeks to testify as to Uber's resources and capabilities, that testimony should be excluded.[4]

Plaintiff further moves to exclude testimony from Wilson regarding legal requirements. *See, e.g.,* Wilson Rep. at ¶47. Like Uber's other experts, Wilson violates the "cardinal rule" against legal opinions (*Doe (E.M.B.),* 2025 WL 2556106 at *24), by asserting "[redacted]. Wilson Rep. at ¶ 47. This presentation of Wilson's legal interpretation, propped up by the weight of "expert opinion," is improper. Further, as discussed in § XI, *infra*, Uber has indicated that it will not waive privilege as to legal barriers and legal considerations to implementing safety features. Accordingly, any testimony regarding what was legally feasible, in addition to being improper, is also irrelevant.

## VIII. <u>EXPERT TESTIMONY OF JASON MORRIS</u>

The Court should preclude Morris, Uber's background check expert, from offering testimony or opinions as to [redacted]. At core, these are improper legal opinions, and they are irrelevant, unreliable, and unhelpful because they fail to articulate any [redacted]. Insofar as Morris opines that Uber was [redacted], that should also be precluded under the bar on legal conclusions. It should also be precluded based on Uber's privilege assertions. *See* § XI, *infra.* Lastly, the Court should preclude the opinions purporting to compare [redacted] because Morris has no data from which to make such a comparison. *See id.* at 11-12.

### A. MORRIS'S OPINIONS REGARDING LEGAL COMPLIANCE ARE IMPROPER LEGAL CONCLUSIONS.

"[A]n expert may not give testimony regarding a legal conclusion." *San Francisco*

[4] This testimony tracks the ones that Piza attempts to make (*see* § VI, *supra*) which Plaintiff had previously moved to exclude (*see* ECF 4358, Pls.' Omnibus Mot. to Exclude *Dean*, at 28-34) and the Court granted (*see* ECF 4941).

*Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1097 (N.D. Cal. 2022). Yet, that is precisely what Morris does, opining that Uber [redacted].

Morris opines that Uber [redacted]. *See* Morris Rep. at 1 ("[redacted]"); *id.* at 6 ("[redacted]"); *id.* at 7 ("[redacted]"); *id.* ("[redacted]"). Testimony that a party did or did not comply with a statute is inadmissible. *See Stiner v. Brookdale Senior Living.*, Inc., 665 F. Supp. 3d 1150, 1171 (N.D. Cal. 2023) (prohibiting expert testimony that certain "policies or practices are out of compliance with the ADA and its regulations" as "improper legal conclusions").

Similarly improper are the assertions that Uber was [redacted]. *See* Morris Rep. at 9 ("[redacted]"); *id.* ("[redacted]"); *id.* at 10 ("[redacted]"). These opinions are "just bald legal conclusions" which are inadmissible because "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 902 (N.D. Cal. 2022) (internal quotation marks and citation omitted).[5] Further, because Uber refuses to waive privilege regarding legal advice, Uber's experts should be precluded from raising these issues at trial. *See* § XI, *infra.*

---

[5] It is also an incorrect interpretation of the law. There is *no* preclusion under the FCRA that a CRA, like Checkr, cannot return a name-based match for a criminal report. Rather, a CRA must maintain "*reasonable procedures* to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). Reasonable procedures can include consulting additional databases or sources of information, or reporting the information with appropriate caveats and limitations. Uber paid Checkr $7 per background check and got what it paid for.

### B. MORRIS'S OPINIONS ABOUT [redacted] ARE UNRELIABLE.

Morris asserts, without support, that [redacted]." Morris Rep. at 12. But he fails to identify any technological or other logistical barrier to incorporating [redacted] into Uber's screening process. *Id.* at 11-12. Indeed, he has no basis to opine on Uber's business resources or corporate feasibility on [redacted] other than saying "it can't be done." Nor does he rely on (or consider) any data on how incorporating [redacted] into the onboarding process would impact safety outcomes for passengers at all. *Id.* His testimony in this regard is pure *ipse dixit* and should be excluded. *See Gen. Elec. Co.*, 522 U.S. at 146; *see also* ECF 4941 at 2 (in *Dean*, the Court excluded similar testimony, regarding Uber's expert Piza, on similar grounds, i.e., the expert lacked a reliable basis to opine as to Uber's capabilities).

## IX. EXPERT TESTIMONY OF JOSEPH OKPAKU

Plaintiff moves to exclude portions of Okpaku's testimony. *First,* Okpaku opines that Uber [redacted]. *See* Okpaku Rep. at 6-24. These opinions are inadmissible because Uber's compliance with the law is a legal conclusion outside the scope of proper expert testimony. *Second*, Okpaku seeks to opine on the [redacted]. *See id.* at 19-24, 29-30. These opinions are inadmissible because they lack an adequate factual foundation and are not grounded in a reliable methodology. Indeed, Okpaku admitted at his deposition [redacted] *See* Ex. N, Joseph Okpaku Deposition (Final Transcript) dated September 10, 2026 ("Okpaku Dep."), at 102:17-103:9.

### A. OKPAKU'S "[redacted]" OPINIONS ARE IMPROPER LEGAL CONCLUSIONS.

Okpaku's "[redacted]" opinions are in truth improper legal conclusions. The "[redacted]" that he purports to apply is nothing more than [redacted]

[redacted]. *See* Okpaku Rep. at 9-13; *see also id.* at 18 ("[redacted]"); *id.* at 22 ("[redacted]"); *id.* ("[redacted]"). Courts routinely exclude these kinds of "[redacted]" opinions as improper legal conclusions. *See, e.g., Stiner*, 665 F. Supp. 3d at 1171 (excluding opinion that "[defendant's] policies or practices are out of compliance with the ADA and its regulations" as "improper legal conclusions"); *Magallon v. Robert Half Int'l., Inc.*, 743 F. Supp. 3d 1237, 1250 (D. Or. 2024) (excluding "industry standard" testimony where expert "has not articulated relevant industry standards, has explained that essentially there are no industry standards relevant to this dispute, and has generally conceded that 'industry standards' are no more than compliance with FCRA"). Here, too, the Court should exclude Okpaku's "[redacted]" opinions as legal conclusions.

**B. OKPAKU'S OPINIONS REGARDING [redacted] ARE IMPROPER LEGAL CONCLUSIONS.**

Okpaku provides a summary of the [redacted] and an interpretation of [redacted]. *See* Okpaku Rep. at 9-13. He then asserts that, [redacted]." *Id.* at 13 (emphasis in original). This is an improper and incorrect interpretation of the statute.

Interpreting regulations and statutes is for the Court to do, not an expert witness. *See Nationwide Transp. Fin.*, 523 F.3d at 1058-59. Experts "do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations." *U.S. v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (citation omitted), *cert. denied* 528 U.S. 873 (1999); *U.S. ex rel. Miller v. ManPow, LLC*, 2023 WL 9005796, at *8-9 (C.D. Cal. Nov. 22, 2023) (excluding expert report "rife with impermissible statutory and regulatory interpretations"). If Uber wishes to advocate for an interpretation of [redacted], it may do so—in briefing to the Court (as will be explained

in Plaintiff's summary judgment opposition, Okpaku's interpretation is wrong in addition to being improper). It may not present expert testimony to instruct the jury as to its own interpretation of the law. This testimony is inadmissible on its face.

### C. OKPAKU'S OPINIONS ABOUT [redacted] ARE UNRELIABLE AND IRRELEVANT.

Okpaku's opinion that "[redacted]" (Okpaku Rep. at 24), should be excluded as both irrelevant and unreliable.

*First*, the opinions comparing the [redacted] have no relevance to this case. Okpaku does not suggest that a [redacted] was an alternative transportation option available to Plaintiff. *See generally* Okpaku Rep. Even if Okpaku showed that [redacted] were available *and* that Uber was safer than [redacted], those facts would not establish that Uber acted with reasonable care in preventing sexual assaults on its platform.

*Second*, the opinions regarding the [redacted] are untethered to any data. Okpaku repeatedly acknowledges that a "[redacted]" because "[redacted][.]" Okpaku Rep. at 22-23; *see also id.* at 24. Nonetheless, with no empirical research, he asserts that "[redacted]" *Id.* at 24; Okpaku Dep. at 24:6-8. By his own terms, the conclusion is based on nothing. He further notes that [redacted]." Okpaku Rep. at 24. Again, a conclusion with no supporting data or source as to efficacy of any [redacted], let alone allowing comparison to [redacted]. Indeed, Okpaku has not reviewed a single [redacted]. *See* Okpaku Rep., Materials Considered. He cannot know whether these [redacted] have any measurable impact on the rate of sexual assaults in the rideshare industry in the first place, and he certainly cannot compare that rate to the (still unknown) rate of sexual assault in the [redacted] industry. This opinion is inherently unreliable and should be excluded. *See, e.g.*, *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (expert testimony may not rest on "unsupported speculation and subjective beliefs").

**D. OKPAKU'S OPINIONS RELATED TO [redacted] ARE UNRELIABLE.**

**1. [redacted] opinions are not supported by any methodology or data.**

As noted above, Okpaku's opinions about the purported "[redacted]" and "[redacted]" of [redacted]" should be excluded as lacking in any supporting data or methodology. *See* Okpaku Rep. at 20-22.[6] He conducted no research into the [redacted], and his only knowledge of them derives from [redacted]. *See* Okpaku Dep. at 102:9-23. At most, Okpaku can only confirm the existence of the [redacted], but he has no technical or specialized expertise that would assist a jury understand how these [redacted]. Nor did Okpaku review any information about whether the [redacted] are available (let alone effective) for [redacted]. *See id.* at 104:9-105:11. His failure to consider the relevant underlying facts—including whether the [redacted] he claims deter bad conduct actually do so—renders his opinions irrelevant and unreliable. *See Powell v. Anheuser-Busch Inc.*, 2012 WL 12953439, at *7 (C.D. Cal. Sept. 24, 2012) (expert testimony unreliable and inadmissible where expert "failed to sufficiently consider the relevant underlying facts necessary to support his opinions and conclusions" or to "develop [a] factual record" regarding the defendant's conduct).

**2. [redacted] opinions are *ipse dixit*.**

Okpaku also restates a version of his same faulty legal compliance argument to suggest that [redacted]. *See* Okpaku Rep. at 21-22. With respect to the [redacted], Okpaku asserts that [redacted]. *Id.* With respect to [redacted], Okpaku states that [redacted]

[6] These are: providing information about the driver's name, vehicle type, license plate, and anonymized contact information; GPS Tracking; RideCheck; RealTime ID Check; 24/7 Incident Response Team; "Verify Your Ride" (separately listed as "PIN Verification"); Cross-Street Identification; Phone Anonymization; Inappropriate Message Detection; Trusted Contacts; Background Check Re-Runs; and Two-Way Ratings.

[redacted]. *See id.* at 22. The presence or absence of a statutory requirement does not establish that Uber acted reasonably, nor does it provide a reliable basis to assess whether a company exercising due care would have implemented such a measure. Expert testimony that simply equates legal compliance with reasonable care misstates the law, offers no specialized expertise, and risks misleading the jury into believing that the standard of care is defined by the lowest level of regulatory obligation. *See e.g., Magallon*, 743 F. Supp. 3d at 1250 (testimony about "industry standards" is irrelevant if the alleged standards are nothing more than compliance with the law). These opinions are inadmissible.

**E. OKPAKU'S "[redacted]" OPINIONS ARE UNRELIABLE AND UNHELPFUL.**

The Court should exclude the opinion that [redacted]. *See* Okpaku Rep. at 29-30.

*First,* this opinion does not fit the facts of this case. It is therefore unhelpful and should be excluded. *See Daubert*, 509 U.S. at 591-92. Okpaku asserts that [redacted]. *See* Okpaku Rep. at 29. However, Uber has never claimed (and Okpaku does not do so here) that [redacted]. *See id.* There is not even a suggestion that the addition of [redacted]. In any event, Okpaku concedes that [redacted]. *See* Okpaku Dep. at 59:25-62:22.

*Second*, the opinion is unreliable. On its face, the opinion is nothing more than guesswork. *See* Okpaku Rep. at 29 (describing "[redacted]") (emphasis added); *id.* ([redacted]"). Expert opinions that are based on speculation or guesswork are unreliable and consequently inadmissible. *See Klein*, 766 F. Supp. 3d at 963. Moreover, the opinion lacks any

reliable methodology. *See* Okpaku Rep. at 29-30. Okpaku did not perform any study, survey, or formal literature review. *See id.* at 6. Instead, he predicates his musings on a hypothetical [redacted]." *Id.* at 29.[7] The opinion is unreliable and should be excluded. *See, e.g.*, *Guidroz-Brault*, 254 F.3d at 829.

Okpaku cites five articles [redacted]." Okpaku Rep. at 30 (emphasis added). However, the articles cited *do not* stand for this proposition. Four of the five articles do not address [redacted] at all.[8] The sole article[9] that references [redacted] does not relate to the actual substance of his opinion, i.e., [redacted]. Accordingly, these articles cannot cure the deficiencies in his opinion. *See Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606 (9th Cir. 2002) (affirming exclusion of expert testimony as unreliable where the studies the expert cited "do not provide support" for the proposition advanced).

### F. OKPAKU'S "[redacted]" OPINIONS ARE IRRELEVANT.

Okpaku opines that "[redacted]" Okpaku Rep. at 5; *see also id.* at 31-34. Under Texas law, the "right to control" is an element of a vicarious liability claim. *See Painter v. Amerimex Drilling I, Ltd.*, 561

---

[7] While Okpaku asserts that his "[redacted]" bear out this hypothesis, as noted above the five cited cases do not support his conclusion. *Id.* All that remains is common experience regarding racism, for which the jury needs no expert opinion.

[8] *See* Samuel R. Gross et al., *Race and Wrongful Convictions in the United States*, Mar. 7, 2017 (discussing rate of wrongful convictions amongst African Americans); Nat'l Sci. & Tech. Council, Comm. on Sci. Subcomm. on Forensic Sci., *Achieving Interoperability for Latent Fingerprint Identification in the United States*, Apr. 2015 (discussing background check technology without reference to "disparate impact"); Becki R. Goggins & Dennis A. DeBacco, *Survey of State Criminal History Information Systems, 2018*, Nov. 5, 2020 (discussing background check technology without reference to "disparate impact"); U.S. Gov't Accountability Off., *Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks*, Feb. 2015 (discussing background check completeness without reference to "disparate impact").

[9] *See* Maurice Emsellem & Madeline Neighly, *Wanted: Accurate FBI Background Checks for Employment*, July 30, 2013.

S.W.3d 125, 138 (Tex. 2018). However, vicarious liability is not at issue in this case. *See* ECF 2959-5, Amended Complaint. Testimony about Uber's "[redacted]" over drivers is therefore irrelevant and unhelpful to the jury because it has no connection to any claim or defense at issue in this case. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025) ("[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry") (internal quotation marks omitted); *see also* Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 8:20-24 (excluding Okpaku report where his opinions, e.g. control over drivers and common carrier duty, were not at issue in the case); ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings).

## X. EXPERT TESTIMONY OF VIDA THOMAS

Plaintiff moves to exclude the report and testimony of Thomas. She provides three opinions, all of which should be excluded. *First*, she offers an opinion on [redacted] but concedes that she is unqualified to do so. *Second*, she concludes that the "[redacted]," but this opinion was already excluded by the Court in the *Dean* case. *Third*, she opines that [redacted]," but fails to provide any actual relevant standard on which she makes this judgment. *Finally*, throughout the report, she seeks to opine on the legal requirements, e.g., [redacted], which are improper legal opinions.

### A. THOMAS IS NOT QUALIFIED TO OPINE ON [redacted].

Thomas is an employment lawyer and consultant, who "[redacted]." *See* Thomas Rep. at ¶¶ 1-8 (emphasis added). She has no expertise or experience with respect [redacted]—which she discusses at length in her report. *See* Ex. O, Vida Thomas Deposition (Rough Transcript) dated Sept. 11, 2026 ("Thomas Dep."), at 13:22-14:19, 57:6-8; Thomas Rep. at ¶¶ 32-37. She is therefore unqualified to testify that "[redacted]

[redacted]." Thomas Rep. at § VI.A. In fact, her "opinion" in this regard is merely a recitation of [redacted]" did. *See id.* at ¶¶ 34-35. This opinion is therefore inadmissible—she is not qualified—and, what remains, is irrelevant, as no expert is needed to just parrot Uber's facts. *See United Servs. Auto. Ass'n*, 2019 WL 6896674, at *2; *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) ("expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy") (internal quotation marks and citation omitted).

### B. THE RELABELED "NOTICE" OPINION IS IRRELEVANT AND WAS PREVIOUSLY EXCLUDED BY THE COURT.

In *Dean*, Thomas opined that Uber "[redacted]" that drivers in each bellwether case "[redacted]." ECF 4357-3, Expert Report of Vida Thomas dated Sept. 26, 2025, filed under seal in *Dean*, at § VI.B. Plaintiff moved to exclude that opinion because it merely regurgitated facts and instructed the jury on what conclusion to reach. *See* ECF 4358 at 22-23. And, the opinion required no actual expertise because [redacted] or, as reframed this time around, whether the "[redacted]" was a matter of commonsense that jurors were well capable of determining. The "opinion" was and continues to be irrelevant. The Court agreed and excluded the "notice" opinion. ECF No. 4941 at 2. As did the JCCP Court. *See In re Uber Rideshare Cases*, 2025 WL 2631568, at *6 (Cal. Super. Aug. 29, 2025) (excluding Thomas's "notice" opinion because the "jury is perfectly capable of drawing its own conclusion from the evidence" and "the question of whether Uber was on notice that any of the drivers in question would sexually assault a passenger is 'one of such common knowledge that [people] of ordinary education could reach a conclusion as intelligently as the witness'") (citation omitted).

The same ruling should apply here. *See* ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings). That Thomas dropped the word "notice" does not change the outcome. Her conclusion, i.e., that [redacted]

[redacted]," suffers from the same flaws as before. Thomas Rep. at ¶ 52; *see U.S. v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's") (internal quotation marks and citation omitted) (emphasis in original); *Doe (E.M.B.)*, 2025 WL 2556106, at *15 (striking as an impermissible legal conclusion expert's opinion that the defendants "knew or should have known of sex trafficking," because the expert would be "telling the jury what conclusion to reach") (internal quotation marks and citation omitted); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014) (excluding expert opinion that "merely summarize[d] the record evidence and gratuitously interpret[ed] it"), *aff'd mem.* 653 F. App'x 553 (9th Cir. 2016).

### C. THOMAS'S OPINION REGARDING "[redacted]" IS UNRELIABLE.

Thomas seeks to testify that "[redacted]." Thomas Rep. at § VI.C. However, she fails to identify any standard relevant to the case. At most, she discusses whether there was a "[redacted]," which requires that Uber "[redacted]." *Id.* at ¶ 56. But whether [redacted], is irrelevant to this case. Uber is not on trial for whether it provided [redacted], it is on trial for whether its negligence caused Plaintiff's sexual assault and injuries. Accordingly, the "standard" of "[redacted]" is irrelevant. The only other basis for this opinion is the assertion that "[redacted]." *Id.* at ¶ 57. This is no opinion at all—it merely recites facts and then concludes (incorrectly) that Uber followed its *own* policies (as opposed to any "[redacted]"). *See Doe (E.M.B.)*, 2025 WL 2556106, *20 ("rudimentary precepts of reliability require that an expert cannot forgo [her] own independent analysis and rely exclusively on what an interested party tells them") (internal quotation marks and citation omitted). Whether or not Uber complied with its self-imposed requirements is a matter well within the province of the jury, for which no expert testimony is required. This opinion should be excluded.

### D. THOMAS'S OPINIONS ON LEGAL REQUIREMENTS ARE IMPROPER.

Lastly, insofar as Thomas seeks to opine on legal requirements under [redacted], such testimony is improper (and incorrect) legal opinions. *See* Thomas Rep. at ¶ 35 (asserting that "[redacted]"); *id.* at ¶ 44 (opining that [redacted]");[10] *see Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) (experts may not render conclusions of law); *Stiner*, 665 F. Supp. 3d at 1171; *Magallon*, 743 F. Supp. 3d at 1250. Nor is she qualified to offer such opinions. She admitted at her deposition that [redacted]. *See* Thomas Dep. at 14:25-15:12.

## XI. EXPERT TESTIMONY REGARDING LEGAL BARRIERS

In *Dean,* plaintiff moved to preclude Uber "from introducing evidence, testimony, or argument that it was legally prohibited or otherwise constrained by legal considerations from implementing effective safety measures—including dashcams, a woman-to-woman matching option, or risk-based dispatch" because Uber had claimed privilege with respect to that issue and had withheld over 110,000 documents on that basis. ECF 4690, Pls.' Omnibus Mot. in *Limine* No. XI, at 14-15. At the pretrial conference, Uber confirmed that it did not intend to waive privilege. *See* Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 76:25-77:3. Accordingly, the Court denied Plaintiff's motion. *See id.* at 76:14-21 (noting that if there was waiver then "we may have some supplemental discovery in the next week"). By agreement of the Parties this ruling applies in this case. *See* ECF 7302 (stipulation regarding cross-case application of 702 and motions *in limine* rulings).

Thus, to the extent any expert seeks to opine that legal barriers prevented Uber from implementing any safety measure (*see, e.g.,* Orchowski, Wilson, Morris, Okpaku, Thomas), that testimony should be excluded. In addition to being improper legal opinions, the testimony is

[10] Thomas's opinion regarding the FCRA's requirements is based on nothing more than the statements of a fact witness. She has no independent framework or basis for "opinion," which is actually an incorrect statement of the law. *See* n.5, *supra.*

excludable because Uber has indicated that it will not waive privilege on this issue, thereby rendering the opinions irrelevant to the facts of this case. Uber cannot circumvent the Court's motion in *limine* ruling, or shield itself from supplementing discovery, by presenting a position through an expert that it has represented it otherwise would not.

**CONCLUSION**

For these reasons, the above opinions should be excluded in whole or in part.

Dated: September 14, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: September 14, 2026

By: */s/ Ellyn Hurd*
Ellyn Hurd