IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

ALL CASES

Case No. 23-md-03084-CRB

**AFFIDAVIT OF TIFFANY R. ELLIS IN SUPPORT OF PLAINTIFFS' LIST OF DISPUTED ENTRIES FOR SPECIAL MASTER REVIEW**

Judge: Honorable Barbara S. Jones

I, Tiffany R. Ellis, hereby declare as follows:

1. I am a partner of Peiffer Wolf Carr Kane Conway & Wise, an attorney licensed in the States of Michigan and Illinois and duly admitted to practice before this Court, representing Plaintiffs in the above caption action.

2. I submit this declaration in support of Plaintiffs' List of Remaining Challenges to Uber's Privilege logs issued on August 10, 2026, August 25, 2026, and on September 1, 2026.

3. Plaintiffs incorporate the Discovery Letter Brief Regarding Disputed Entries for Master Review filed by All Plaintiffs on March 4, 2025. *See* ECF No. 2434. Plaintiffs incorporate the brief to support the specific reasons each entry on Plaintiffs' List of Remaining Challenges to Uber's Privilege logs issued on August 10, 2026, August 25, 2026, and on September 1, 2026 was challenged. The Brief included the general background of the privilege dispute process to date, the legal standard for Plaintiffs raising challenges to Defendants' privilege log entries, and a general argument for the challenges Plaintiffs raised.

4. The history of the four privilege logs at issue makes clear that Uber has repeatedly failed to timely produce privilege logs that are adequately reviewed, accurate, and compliant with the Court's orders. Uber has repeatedly forced Plaintiffs to expend substantial time and resources reviewing what were, in effect, "rough drafts" of privilege logs, identifying significant deficiencies and entries with no grounds for privilege claims to Uber's attention before Uber finally undertook the work it should have completed in the first instance. Only after multiple rounds of amended privilege logs and well after the privilege logs should have been properly prepared, did Uber produce logs that were adequate for review. This latest round of privilege logging has shown once again that Uber continues to serially over-designate documents as privileged, shifting the burden of identifying and correcting its deficient privilege assertions onto Plaintiffs. Uber's approach has required Plaintiffs to spend countless hours performing work that Uber was obligated to do itself, and only after Plaintiffs have incurred that undue burden does Uber finally begin to satisfy its discovery obligations.

**Uber's August 10, 2026 Privilege log**

5. Defendants issued a privilege log on August 10, 2026 totaling 4,474 entries.

6. On August 17, 2026, Plaintiffs sent challenges to Uber. Plaintiffs specifically noted that Uber logged nearly 1,400 Google Product Comment Notification emails without providing any substantive information in Column AH, "Google Docs Information." Uber's failure to provide the additional detail was in direct disregard of Judge Cisneros's November 27, 2024 Order, which required Uber to provide further information regarding these entries. See ECF No. 1908 at 9.

7. Plaintiffs challenged or noted issues with eight hundred seventy-three (873) of the entries on the August 10, 2026 log.

8. On August 22, 2026 Uber provided an email response before the Parties meet and confer noting it was still reviewing the challenged entries but would produce one hundred twenty-five (125) entries with redactions or with modified redactions.

9. The Parties conferred on August 24, 2026 and Uber agreed to amend its August 10, 2026 log to reflect Google Doc information and make additional productions of documents it was altering its privilege claim on.

10. On August 28, 2026, Uber produced an Amended August 10, 2026 privilege log.

11. On September 1, 2026, Uber produced a second Amended August 10, 2026 privilege log.

12. On September 4, 2026, after a careful re-review of the Amended August 10, 2026 privilege log, Plaintiffs sent Uber an updated list of challenged entries that included fifteen (15) remaining challenges.

13. On September 9, 2026, before the Parties conferred, Uber provided an additional response to Plaintiffs' challenges. Uber noted it would produce ten (10) entries in full or with redactions.

14. On September 9, 2026, the Parties met and conferred and Uber stated that they are still reviewing the remaining five (5) entries.

15. On September 11, 2026, Uber produced another amended privilege log. Of the remaining fifteen (15) challenged entries, Uber withdrew its privilege claim in full to four (4) entries, modified its privilege claim to seven (7) entries and produced previously fully withheld documents with redaction or modified/reduced existing redactions, and maintain is claim on four (4) entries.

16. On September 15, 2026, Uber provided an additional email response stating it would withdrawal its claim of privilege to three (3) entries on the August 10, 2026 privilege log.

17. Plaintiffs maintain their challenge to the one (1) remaining entry.

**Uber's August 25, 2026 Privilege logs**

18. On August 25, 2026, Uber produced two (2) privilege logs related to the custodial files of Gaddis, Kaiser, and Maredia and to its Women to Women Ride Matching production. The Gaddis, Kaiser, and Maredia related privilege log contained 3,899 entries and the Women to Women Ride Matching related privilege log contained 642 entries.

19. On September 1, 2026, Plaintiffs challenged or noted issues with one hundred eighty-five of the (185) of the entries on the Gaddis, Kaiser, and Maredia related privilege log and fourteen (14) of the entries on the Women to Women Ride Matching related privilege log.

20. On September 9, 2026, before the Parties conferred, Uber provided an additional response to Plaintiffs' challenges. Uber noted it would produce one hundred fifty-six (156) entries on the Gaddis, Kaiser, and Maredia related privilege log and eleven (11) entries on the Women to Women Ride Matching related privilege log in full or with redactions.

21. On September 9, 2026, the Parties met and conferred, and Uber stated that they are still reviewing the remaining entries.

22. On September 11, 2026, Uber produced another amended privilege log. Of the remaining one hundred eighty-five of the (185) challenged entries on the Gaddis, Kaiser, and Maredia related privilege log, Uber withdrew its privilege claim in full to eighty-eight (88) entries, modified its privilege claim to eighty (80) entries and produced previously fully withheld documents with redaction or modified/reduced existing redactions, and maintain is claim on

seventeen (17) entries.

23. On September 15, 2026, Uber provided an additional email response stating it would withdrawal its claim of privilege to one (1) entries on the Gaddis, Kaiser, and Maredia related privilege log.

24. Plaintiffs maintain their challenges to the thirteen (13) remaining entries on the Gaddis, Kaiser, and Maredia related privilege log.

25. Of the remaining fourteen (14) challenged entries on the Women to Women Ride Matching related privilege log produced on September 11, 2026, Uber withdrew its privilege claim in full to eight (8) entries, modified its privilege claim to four (4) entries and produced previously fully withheld documents with redaction or modified/reduced existing redactions, and maintain is claim on two (2) entries.

26. Plaintiffs maintain their challenge to the one (1) remaining entry on the Women to Women Ride Matching related privilege log.

**Uber's September 1, 2026 Clawback Privilege logs**

27. On August 28, 2026, Uber issued a clawback notice of thirteen (13) documents. On September 1, 2026, Uber sent follow-up correspondence regarding those clawbacks, withdrawing four (4) of them and providing privilege log entries and replacement images for the rest.

28. On September 4, 2026, Plaintiffs raised issues with seven (7) of Uber's clawbacks, but because the contents of the documents were duplicative of one another, in the interest of efficiency, Plaintiffs limited their objections to three documents/privilege log entries: JCCP_MDL_PRIVLOG119635 (UBER_JCCP_MDL_003281797), JCCP_MDL_PRIVLOG119641 (UBER_JCCP_MDL_003068906), and JCCP_MDL_PRIVLOG119638 (UBER_JCCP_MDL_003068900).

29. The parties met and conferred on September 9, 2026.

30. **<u>JCCP_MDL_PRIVLOG119635 (UBER_JCCP_MDL_003281797)</u>**. On September 9, 2026, Uber withdrew its clawback of JCCP_MDL_PRIVLOG119635, after

Plaintiffs objected on the following grounds:

- Uber's clawback violated the Court's January 12, 2026 Order. The document was produced by Uber on March 4, 2025 and designated as a potential exhibit for the Dean trial in December 2025, assigned exhibit number P-00728. Uber's attempt to claw it back thus violated the Court's January 12, 2026 Order (Dkt. No. 4977), which prohibits Uber "from clawing back any documents produced before December 1, 2025, that have been designated as potential exhibit for the Dean trial."
- Uber's clawback was untimely. Paragraph 4 of PTO 14 requires Uber to notify Plaintiffs "within twenty-one (21) calendar days … upon discovery that a document has been produced for which [it] asserts privilege and/or other protection." Uber could not demonstrate that it just, in the 21 days preceding its clawback notice, discovered this purported "privileged" document had been "inadvertently" produced. It has known of the document's production for over 17 months. It was marked as an exhibit (Ex. 2208) to the March 26, 2025 deposition of Gus Fulder. **Plaintiffs are submitting to the Master via email a copy of JCCP_MDL_PRIVLOG119635, as marked at Mr. Fuldner's deposition.** Uber's counsel was present at that deposition, reviewed the exhibits, and never once raised a privilege objection or sought a clawback. The same document was also highlighted in Veronique Valliere's September 26, 2025 expert report (at p. 40), which Uber has had for almost a year. And then, as noted above, it was on Plaintiffs' December 2025 trial exhibit list in the Dean case.
- Uber waived any claim to privilege over the contents of the document under Paragraph 10 of PTO 14, which deals specifically with deposition exhibits and provides that "[w]ith respect to any document … that is the subject of a Clawback Notice that is sent more than twenty (20) days after receipt of the final transcript, the asserted privilege or protection will be deemed as waived absent good cause." Uber's clawback notice was sent 484 days after Uber received the final transcript of Mr.

Fuldner's deposition. Uber made no effort to explain its delay, let alone demonstrate good cause.

- The contents of the document are not privileged. Legal advice is not sought, provided or otherwise reflected in the document. It first recites facts reported to Uber by a third-party account holder and memorialized by a non-attorney Uber support agent regarding the agent's outreach to third parties, what Uber's records showed about the GPS for the ride and the driver's safety history, and the fact of the driver's reactivation. Mr. Fuldner's question about the incident that follows is not directed to any attorney, does not seek legal advice and none is provided in response. Instead, in his response, non-attorney Mr. Haas simply repeats the reported facts and non-privileged communications included in the incident summary and advises that he intends to seek the views of non-attorney "experts" Matt Baker and Cory Freivogel. Mr. Haas then reports back to Mr. Fuldner not with any legal advice, but with a summary of the non-legal views that he received from the three non-attorney "experts" he consulted. Even if Mr. Haas was an attorney (he is not), a company cannot manufacture privilege by using an attorney as a go-between to relay non-legal questions and answers between non-attorneys. *See, e.g.,* Dkt. 2168 at 7:5-8 ("The Court is highly skeptical that Uber could cloak the conduct of its business under the attorney-client privilege simply by placing attorneys in the chain of operational command.").

31. **JCCP_MDL_PRIVLOG119638 (UBER_JCCP_MDL_003068900) and JCCP_MDL_PRIVLOG119641 (UBER_JCCP_MDL_003068906)**. JCCP_MDL_PRIVLOG119641 was recently marked as Ex. 2247 to the March 28, 2026 deposition of Cory Freivogel, and JCCP_MDL_PRIVLOG119638 is a more inclusive email in the same email thread. Uber initially clawed back JCCP_MDL_PRIVLOG119638 and JCCP_MDL_PRIVLOG119641 in full. On September 9, 2026, after receipt of Plaintiffs' objections, Uber withdrew its clawback of these two documents in part and has since produced

them with redactions. The portion of the email as to which Uber maintains privilege (in both documents) is part of an August 2, 2024 email from Cory Freivogel. Plaintiffs do not believe that email is entitled to any privilege protection and, even if it were, Uber has waived any claim to privilege over its contents and assert the following is support of their challenges.

- *Waiver*: Mr. Freivogel's email is summarized in JCCP_MDL_PRIVLOG119635 (in the email from Mr. Haas to Mr. Fuldner discussed above), as to which (as discussed above), Plaintiffs believe Uber has waived its right to any privilege protection. Plaintiffs contend that given its waiver of privilege as to the same contents in JCCP_MDL_PRIVLOG119635, Uber has also waived any privilege that might apply to Mr. Freivogel's email in JCCP_MDL_PRIVLOG119638 and JCCP_MDL_PRIVLOG119641.
- *No Privilege*: Plaintiffs also contend that no privilege applies to Mr. Freivogel's email. Mr. Freivogel is not an attorney, and the redacted portion of his email does not convey any legal advice. Nor is its purpose the seeking of legal advice. Mr. Freivogel simply expresses an interest in getting the "legal perspective" on non-attorney Mr. Fuldner's question from a person cc'd on the email (Michele, who never provides one) and also getting non-attorney Matthew Baker's "take" on Mr. Fuldner's question. The sentences that follow (now redacted) are not sent as part of an effort to get legal advice from Michele or anyone else. As is plain from the face of the email, the sole purpose is a non-legal one: Mr. Freivogel provides his lay perspective based on his reading of the admittedly non-privileged incident/investigation details and shares non-legal questions that it raises for him – all for the purpose of providing non-attorney Mr. Haas a response to a non-legal business question raised by non-attorney Mr. Fuldner so that Mr. Haas can convey that back to Mr. Fuldner. Notably, no one waits for any "legal perspective" from anyone after that or follows up to get one. Instead, Mr. Haas thanks the three non-attorneys for their input, which he'll "relay" back to Mr. Fuldner to see if he has any follow-up questions for them. Uber concedes

that Mr. Haas' recitation of Mr. Freivogel's views in his subsequent email to Mr. Fuldner (JCCP_MDL_PRIVLOG119635, discussed above) is not privileged. Neither is Mr. Freivogel's email to Mr. Haas.

32. On September 11, 2026, Uber advised that it reserves the right to object to Plaintiffs' use at trial of deposition testimony related to the redacted portions of JCCP_MDL_PRIVLOG119638 or JCCP_MDL_PRIVLOG119641. Given the impending trial in Jane Doe QLF 001 matter (jury selection on September 30, 2026), we request expedited review of these challenges such that a decision is rendered in time for Plaintiffs to make use at trial of the clawed back documents and any associated deposition testimony of Mr. Freivogel.

Executed this 21st day of September 2026 in Detroit, Michigan.

/s/ *Tiffany R. Ellis*
Tiffany R. Ellis