Laura Vartain Horn (SBN: 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION,<br><br>This Document Relates to:<br><br>*All Cases* | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S BRIEF IN SUPPORT OF (1) UBER'S AUGUST 2026 PRIVILEGE LOGS AND (2) CLAWBACKS IDENTIFIED IN UBER'S SEPTEMBER 11, 2026 PRIVILEGE LOG PURSUANT TO SPECIAL MASTER ORDER NO. 4, § II** |

Pursuant to Special Master Order No. 4, § II (Dkt. No. 2933), Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") submit this brief in support of (1) Uber's privilege assertions for fifteen documents it logged as privileged on August 10, 2026, and August 25, 2026, and (2) Uber's privilege assertions for two documents it logged on September 11, 2026, which Uber clawed back on August 28, 2026 pursuant to Pretrial Order No. 14.

Plaintiffs initially challenged 873 documents on Uber's August 10, 2026, privilege log, which identified privileged documents from the files of custodian Emilie Boman. Following conferrals, Uber produced amended log entries for 419 documents and produced 425 documents in full or with new redactions, resolving nearly all of Plaintiffs' challenges. Only one challenge remains from the August 10 log and is now submitted for the Special Master's review.[1]

On August 25, 2026, Uber produced two additional privilege logs identifying privileged documents from custodians Todd Gaddis, Roger Kaiser, and Sarfraz Maredia, as well as documents regarding women-to-women ride matching in the United States (the "August 25 Logs"). Plaintiffs challenged 199 documents from the August 25 Logs. Following conferrals, Uber produced 181 documents in full or with new redactions, resolving nearly all challenges. Thirteen remaining challenges are now submitted from the August 25 Logs for the Special Master's review.[2]

On August 28, 2026, Uber issued a clawback notice that included two documents redacted for privilege. Uber produced a privilege log to address these documents on September 11. Plaintiffs challenge the redactions on both documents, which are now submitted for the Special Master's review.

The Special Master has ample grounds on which to affirm Uber's remaining privilege claims

[1] For efficiency, the Parties agreed to adjust the schedule regarding challenges to the August 10 log so that unresolved disputes would be submitted at the same time as disputes from the August 25 Logs and the clawed back documents on the September 11 log. *See* Aug. 26, 2026 Email from J. Hill to Hon. B. Jones, et al.; Sept. 11, 2026 Email from J. Hill to Hon. B. Jones, et al.

[2] Since Plaintiffs submitted their list of challenged documents to the Special Master on September 15, 2026, Uber has made the following adjustments to its privilege claims: (1) Uber is no longer claiming privilege over JCCP_MDL_PRIVLOG116378; (2) Uber has redacted rather than withheld versions of eight documents (JCCP_MDL_PRIVLOG117126, JCCP_MDL_PRIVLOG117125, JCCP_MDL_PRIVLOG117127, JCCP_MDL_PRIVLOG117128, JCCP_MDL_PRIVLOG117129, JCCP_MDL_PRIVLOG117130, JCCP_MDL_PRIVLOG117131, and JCCP_MDL_PRIVLOG117132); and (3) Uber has narrowed its redactions on JCCP_MDL_PRIVLOG119021. Today, Uber will produce the downgraded versions of the documents to Plaintiffs and make them available to the Special Master.

from all three logs. Plaintiffs' remaining challenges are based mainly on objections that no attorney is listed in the document's metadata or otherwise identified on the face of a document or that the document primarily serves a business purpose, issues which have been briefed by the Parties previously. Uber incorporates by reference the legal standard and arguments set forth in its prior briefing (Dkt. Nos. 2433, 2461, 2528, 2544, 2580, 2605, and 2661). As further support for its privilege claims, Uber provides the arguments and factual support set forth below. Uber also submits declarations from Daniel Kolta, Uber's Legal Director, Global Safety (Ex. A), Erin Novak, Legal Director at Uber (Ex. B), Jennifer Handley, Senior Legal Director, Global Safety at Uber (Ex. C), Kathleen Waitzman, Vice President, Chief Deputy General Counsel (Ex. D), and Jane Lee, Legal Director, Regulatory at Uber Technologies, Inc. (Ex. E). Taken together, the applicable legal standards and arguments outlined below and in prior briefs, the attached declarations, and the factual material previously provided to the Special Master,[3] when reviewed in conjunction with the challenged documents and the associated metadata fields, support Uber's privilege claims.

***Uber Has Appropriately Clawed Back Privileged Documents.***

The two clawed back documents on the September 11 log that Plaintiffs now challenge, **JCCP_MDL_PRIVLOG119641** and **JCCP_MDL_PRIVLOG119638**, are privileged, and Plaintiffs' arguments otherwise are baseless. Both of these documents are part of the same email chain and have the same narrowly redacted content—the substance of a request for legal advice from Cory Freivogel to Michelle Morris, then-Counsel, Safety Legal at Uber. The unredacted portion of the documents plainly shows Mr. Freivogel's unambiguous request for "Michele's legal perspective." Plaintiffs mischaracterize this request as merely "express[ing] an interest" in obtaining legal advice, *see* Sept. 15, 2026 Email from G. Spaulding to Hon. B. Jones, et al. (the "September 15 Email"), but the unredacted portion of the documents also plainly shows that Ms. Morris is included in the email chain.[4] There is no credible argument that Mr. Freivogel's express request for Ms. Morris' "legal

[3] As requested by the Special Master, Uber has provided (1) a glossary of terms commonly used in disputed documents, (2) a list of names and titles of relevant Uber inside and outside counsel, and (3) a digest of third parties present in its privilege log. Defense counsel will also be available for any questions the Special Master may have during the review process.

[4] For this same reason, despite suggesting as much in the September 15 Email, Plaintiffs cannot seriously contend that Mr. Freivogel's reference to "Michele" within the same chain is not a reference

perspective" was not a request for legal advice.

Plaintiffs' attempt in their September 15 Email to recast the entire challenged email chain as solely a business exchange is similarly meritless. First, Plaintiffs' contention that the "sole purpose" of this email exchange is non-legal discussion of Mr. Freivogel's "lay perspective" is undermined entirely by the existence of Mr. Freivogel's indisputable request for Ms. Morris' legal advice. In fact, Mr. Freivogel's perspective and summary of the underlying issue is precisely the subject on which he sought Ms. Morris' legal advice. Moreover, the fact that the challenged email chain contains business discussion between Mr. Freivogel and other non-lawyers—discussion which is unredacted and over which Uber does not claim privilege—does not undermine the assertion of privilege over Mr. Freivogel's request for legal advice. *See Staley v. Gilead Scis., Inc.*, No. 19-cv-02573-EMC, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021) ("[T]he attorney-client privilege can still obtain even where a business decision is implicated."). Finally, it is irrelevant that Ms. Morris did not respond in the email chain while business discussion ensued. The attorney-client privilege attaches when a communication is made for the purpose of obtaining legal advice and does not disappear if the attorney has not yet replied—or never replies at all. *See Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019) (privilege attaches when "legal advice of any kind is sought" from a legal adviser) (citation omitted).

Finally, Uber has not waived privilege over JCCP_MDL_PRIVLOG119641 and JCCP_MDL_PRIVLOG119638. Plaintiffs incorrectly argue in the September 15 Email that privilege over the redacted content in the two challenged documents is waived because it is purportedly summarized in JCCP_MDL_PRIVLOG119635 (UBER_JCCP_MDL_003281797), a separate document that Uber has produced. Plaintiffs' argument ignores that JCCP_MDL_PRIVLOG119635 does not contain Mr. Freivogel's specific request for legal advice to Ms. Morris nor the same analysis he provided to facilitate that advice. That request is what gives rise to the privilege claim, and the fact that related information may have been summarized within the context of an entirely different document does not waive privilege over the substance of the request itself. *See Costco Wholesale*

---

to Ms. Morris. If her obvious inclusion in the email were not sufficient, Uber also identified her on the privilege log as the source of legal advice.

*Corp. v. Super. Ct.*, 47 Cal. 4th 725, 735 (2009) ("[B]ecause the privilege protects the transmission of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means."); *S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 49 (1990) ("The attorney-client privilege seeks to protect the conversations and communications between the attorney and client, not merely the conclusions developed by those conversations."). Moreover, the purported summary in JCCP_MDL_PRIVLOG119635 does not reflect all of the redacted content in the challenged documents but rather conveys a high-level acknowledgment that three individuals were "aligned" on the ultimate outcome of the underlying issue. Thus, Plaintiffs' waiver argument fails.

***Uber Counsel's Involvement in the Development of Safety-Related Features and Initiatives***

Plaintiffs challenge several documents related to safety features and initiatives mainly on the basis that these documents primarily serve a business purpose. But as the prior declarations from Daniel Kolta, Uber's Legal Director, Global Safety, and Scott Binnings, Uber's Associate General Counsel, Safety and Core Services, establish, Uber's in-house legal team closely collaborated with business personnel on safety-related topics. This close collaboration was driven by the complex nature of the underlying legal considerations, which span federal, state, and local legal issues. *See, e.g.*, Apr. 21, 2025, Declaration of Daniel Kolta (provided to the Special Master ex parte on April 21, 2025) and June 2, 2025, Declaration of Scott Binnings (Dkt. No. 3141-1). The dominant purpose of in-house counsel's involvement in developing these features and initiatives was to identify and advise on legal risks. As the Special Master has observed, these safety-related projects carry "significant legal implications for which Uber would be expected to seek legal advice." *See* Order re Tranche 3 Privilege Disputes (Dkt. No. 2168) at 18. Uber provides further context for the challenged documents below.[5]

**JCCP_MDL_PRIVLOG114274** is a confidential document titled "Notes - US BGCs 101" that identifies Erin Novak, Legal Director at Uber, as an attendee of a meeting regarding Uber's U.S.

[5] For each of the documents in this section, as well as others in this set of challenges, Plaintiffs challenge privilege because attorneys are not identified in document metadata or as collaborators. But the Special Master's rulings on previous challenges establish that the absence of an attorney in document metadata does not preclude a finding of privilege, and it is well-settled that communications among non-attorneys can be privileged. *See USA v. Shaw*, No. 22-cr-00105-BLF-1 (SVK), 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023).

background check policies and practices. As explained in her declaration, attached as Exhibit B, this document memorializes and reflects legal advice provided by Ms. Novak regarding these policies and practices to a new Uber hire during the meeting. *See* Ex. B at ¶¶ 2-3.

**JCCP_MDL_PRIVLOG115219** contains confidential talking points for Roger Kaiser in connection with a Safety Advisory Board meeting. As explained in her attached declaration, Ms. Handley advised on the content of this document and its contents reflect her legal advice concerning public messaging on safety and related regulatory requirements. *See* Ex. C at ¶¶ 2-3.

***Uber Counsel's Advice Regarding* New York Times *Articles on Its Safety Practices***

Plaintiffs challenge eight documents encompassing a single email thread on the mistaken basis that the thread is business-related and that no legal advice was sought.[6] The confidential email chain, which discussed *New York Times* articles regarding certain safety policies and procedures at Uber, included two Uber attorneys: Elizabeth Coleman, Associate General Counsel, Litigation, Global Competition, Government Investigations & Special Matters and Kathleen Waitzman, Vice President and Chief Deputy General Counsel. As established in Ms. Waitzman's declaration, attached as Exhibit D, Ms. Waitzman directed the circulation of the information in this email chain, and redacted portions containing legal advice from Uber's in-house counsel on the legal implications of the *New York Times* articles, including in connection with this litigation. *See* Ex. D at ¶¶ 2-3. As the eight challenged documents make clear, the *New York Times* articles raised concerns that confidential information produced by Uber in this very litigation had been improperly disclosed in violation of court orders and formed the basis of those articles. *See id.* These articles have been a source of disputes requiring advice from legal counsel since Uber first raised its concerns with the Court in August of 2025, *see* Aug. 1, 2025 Letter from M. Premo-Hopkins to Pls.' Counsel, Dkt. No. 3695-18 (raising concerns that confidential information produced by Uber in this litigation had been improperly disclosed to the *New York Times* in potential violation of the Protective Order), through the present, *see* Aug. 13, 2026 Joint Case Management Statement, Dkt. No. 7020 (discussing hate mail received

[6] The eight now-redacted documents are JCCP_MDL_PRIVLOG117126, JCCP_MDL_PRIVLOG117125, JCCP_MDL_PRIVLOG117127, JCCP_MDL_PRIVLOG117128, JCCP_MDL_PRIVLOG117129, JCCP_MDL_PRIVLOG117130, JCCP_MDL_PRIVLOG117131, and JCCP_MDL_PRIVLOG117132.

by Uber attorneys as a result of *New York Times* articles).[7] As Ms. Waitzman's declaration further explains, redacted portions of the challenged documents also reflect a request for legal advice from Uber's executive leadership team related to comparative industry safety policies. *See* Ex. D at ¶ 4.

***Privilege Extends to Non-Attorney Communications***

Plaintiffs challenge several communications that do not include an attorney, but privilege "may attach to communications between nonlegal employees where: (1) the employees discuss or transmit legal advice given by counsel; and (2) an employee discusses her intent to seek legal advice about a particular issue." *Dolby*, 402 F. Supp. 3d at 866 (citation omitted); *see also* Order re Tranche 3 Privilege Disputes (Dkt. No. 2168) at 19. Moreover, "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege." *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) (citation omitted); *see also USA v. Shaw*, 2023 WL 4539849, at *2 (privilege applies to non-attorneys working at the direction of counsel). Applying this standard, the documents Plaintiffs challenge are privileged.

**JCCP_MDL_PRIVLOG118812** is a chat message thread between Rob Solomon and Todd Gaddis in which Mr. Solomon states the purpose of the communication was to collect information in connection with pending litigation. As explained in Ms. Handley's declaration, attached as Exhibit C, this communication pertained to work being performed at her direction. *See* Ex. C at ¶ 4.

**JCCP_MDL_PRIVLOG118503** is a Slack chat thread between Mr. Gaddis and Stephanie Kuhlman, then-Regulatory Project Paralegal at Uber, in which Ms. Kuhlman states that the purpose of the communication was to collect information in preparation for a report to the California Public Utilities Commission in connection with an ongoing regulatory matter with inherent legal implications. And as Uber attorney Jane Lee explains in her attached declaration, this exchange

[7] As Judge Schulman in the JCCP proceeding stated, there is "little room for doubt that sealed filings from this proceeding were improperly disclosed to third parties in violation of the protective order." Order Granting Uber's Motion to Enforce the Protective Order, *In re Uber Rideshare Cases*, No. CJC-21-005188, at 5 (Cal. Super. Ct. Oct. 22, 2025). Plaintiffs now attempt to improperly benefit from that leak by arguing they are entitled to internal communications created by some of Uber's most senior attorneys and executives as a direct result of Uber's response to media reports about those leaked documents.

pertained to work performed at her direction. *See* Ex. E at ¶¶ 2-3.

***Discrete Issues Impacting Certain Remaining Challenges***

Uber provides below additional context for the discrete documents identified.

**JCCP_MDL_PRIVLOG118958** is a confidential draft memorandum that contains pervasive comments from two Uber attorneys: Alicia Alvelo and Aaron Brand. Their comments provide legal advice concerning potential product liability claims and regulatory requirements and demonstrate that the entire document was under active review by Uber's legal department.

Plaintiffs challenge the redaction of several slides in **JCCP_MDL_PRIVLOG119021** on bases that the redactions do not provide context as to whether they relate to legal advice and no attorney is identified in the metadata.[8] As set forth in Mr. Kolta's attached declaration, Mr. Kolta and other Uber in-house counsel served as Product Counsel advising the development team on the Women Preferences feature and directed the creation of the redacted slides, which incorporate his and other in-house counsels' legal advice. *See* Ex. A at ¶ 3.

* * *

For all these reasons, the privilege claim on each document challenged by Plaintiffs should be upheld.

[8] As noted above, on September 21, 2026, Uber will reproduce this document with narrowed redactions and will also make the redacted version available to the Special Master.

DATED: September 21, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC