[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| This Document Relates to:<br><br>*Jane Doe QLF 1 v. Uber Techs. Inc.*, N.D. Cal. No. 24-cv-8783, W.D. Tex. No. 26-cv-01694 | Judge: Honorable Charles R. Breyer<br>Date: September 25, 2026<br>Time: 10:30 a.m.<br>Ctrm.: 6-17th Floor<br><br>**REDACTED** |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JANE DOE QLF 0001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer |

## TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

BACKGROUND ........ 1

I. Uber hired Mr. Le [redacted] ........ 1

A. Mr. Le [redacted] ........ 1

B. In [redacted] ........ 1

C. In 2017, Uber learned [redacted] but did nothing to make sure he would not become an actual Uber driver and have access to vulnerable passengers........ 2

D. In January 2020, Uber hired Mr. Le as an Uber driver despite the Jay and G.M. reports. ........ 4

II. Uber hired Mr. Le despite pending charges for sexual assault and an outstanding warrant for his arrest. ........ 6

III. Uber let Mr. Le keep driving, without any restrictions, [redacted] ........ 9

LEGAL STANDARD ........ 10

ARGUMENT ........ 10

I. Texas law permits punitive damages in this case. ........ 10

A. The plain text of Section 41.005 prohibits vicarious liability for the driver's conduct, not punitive damages for Uber's conduct. ........ 12

B. The rest of Section 41.005 supports the plain meaning interpretation of Section 41.005(a). ........ 14

C. Uber's speculation about legislative purpose should be disregarded. ........ 15

D. Legislative history is irrelevant. ........ 16

E. The Court should disregard the non-binding precedent on which Uber relies. ........ 17

1. Non-binding authority cannot override the plain text of the statute. ........ 17

2. The cases on which Uber relies do not correctly interpret the statute. ........ 18

II. Sufficient evidence supports Plaintiff's negligence claim. ........ 21

A. Sufficient evidence supports a background-check theory. ........ 21

B. Sufficient evidence supports a marketing and warnings theory. ........ 23

III. Plaintiff will not try a strict liability claim, but the factual theories underlying that claim remain available to show negligence. ........ 24

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page**

### CASES

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76 (Tex. 2017) ..... 11

*Banzhaf v. ADT Sec. Syst. Sw., Inc.*, 28 S.W.3d 180 (Tex. App. 2000) ..... 25

*Bennett v. Reynolds*, 315 S.W.3d 867 (Tex. 2010) ..... 11

*Bhatti v. Concepts Am. Inc.*, 2016 WL 3880747 (N.D. Tex. July 18, 2016) ..... 21

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) ..... 16

*Brown v. City of Houston*, 660 S.W.3d 749 (Tex. 2023) ..... 16

*Camacho v. Ford Motor Co.*, 993 F.3d 308 (5th Cir. 2021) ..... 11, 12, 18

*City of San Antonio v. Realme*, 731 S.W.3d 342 (Tex. 2026) ..... 21

*Cole v. Tucker*, 6 Tex. 266 (1851) ..... 10

*Dan's City Used Cards, Inc. v. Pelkey*, 569 U.S. 251 (2013) ..... 14

*Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246 (11th Cir. 2020) ..... 6

*Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205 (Tex. App. 2011) ..... 23

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653 (Tex. 2008) ..... 10, 11

*Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272 (5th Cir. 2015) ..... 18

*Freyer v. Lyft, Inc.*, 639 S.W.3d 772 (Tex. App. 2021) ..... 22

*Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463 (3d Cir. 2024) ..... 18

*Grasis v. WIN Access Inc.*, 2017 WL 8948953 (D.P.R. Mar. 28, 2017) ..... 25

*Greater Houston P'ship v. Paxton*, 468 S.W.3d 51 (Tex. 2015) ..... 16

**TABLE OF AUTHORITIES**
**(continued)**


**Page(s)**

*Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*,
90 F.4th 919 (7th Cir. 2024) .......... 18

*Hammerly Oaks, Inc. v. Edwards*,
958 S.W.2d 387 (Tex. 1997) .......... 15

*Healthcare Ctrs. of Tex., Inc. v. Rigby*,
97 S.W.3d 610 (Tex. App. 2002) .......... 18, 20

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) .......... 13

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) .......... 13

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018) .......... 24

*In re E.C.R.*,
402 S.W.3d 239 (Tex. 2013) .......... 23

*In re Facebook, Inc.*,
625 S.W.3d 80 (Tex. 2021) .......... 16

*Jung v. 24 Hour Fitness USA, Inc.*,
2018 WL 5045214 (E.D. Tex. Oct. 17, 2018) .......... 10

*Jung v. 24 Hour Fitness USA, Inc.*,
2019 WL 3037537 (E.D. Tex. July 11, 2019) .......... 21

*Keen v. C.R. Bard, Inc.*,
480 F. Supp. 3d 624 (E.D. Pa. Aug. 19, 2020) .......... 10

*Liberty Mut. Ins. Co. v. Adcock*,
412 S.W.3d 492 (Tex. 2013) .......... 20

*MacQuarrie v. Howard Johnson Co.*,
877 F.2d 126 (1st Cir. 1989) .......... 25

*Marsh USA Inc. v. Cook*,
354 S.W.3d 764 (Tex. 2011) .......... 18

*Martinez v. Walgreen Co.*,
935 F.3d 396 (5th Cir. 2019) .......... 17, 18

*Massage Heights Franchising, LLC v. Hagman*,
712 S.W.3d 615 (Tex. 2025), *rev'd in part on other grounds*, 712 S.W.3d 615 (Tex. 2025) .......... 11, 21

*May v. Chrysler Grp., LLC*,
716 F.3d 963 (7th Cir. 2013) .......... 25

*Miles v. Jerry Kidd Oil Co.*,
363 S.W.3d 823 (Tex. App. 2012) .......... 20

*Morris v. JTM Materials, Inc.*,
78 S.W.3d 28 (Tex. App. 2002) .......... 21

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**


*Packard v. OCA, Inc.*,
624 F.3d 726 (5th Cir. 2010) ........ 11, 18

*Perez v. Am. Med. Sys. Inc.*,
461 F. Supp. 3d 488 (W.D. Tex. 2020) ........ 18, 21

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ........ 16

*Pugin v. Garland*,
599 U.S. 600 (2023) ........ 16

*Putman v. Erie City Mfg. Co.*,
338 F.2d 911 (5th Cir. 1964) ........ 12

*R.M. v. Am. Airlines, Inc.*,
338 F. Supp. 3d 1203 (D. Or. 2018) ........ 21

*Rattray v. City of Brownsville*,
662 S.W.3d 860 (Tex. 2023) ........ 13

*River Creek Dev. Corp. v. Preston Hollow Cap., LLC*,
739 S.W.3d 825 (Tex. 2026) ........ 11, 16

*Ryder v. Union Pac. R.R. Co.*,
945 F.3d 194 (5th Cir. 2019) ........ 10

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ........ 16

*Taylor v. Tolbert*,
644 S.W.3d 637 (Tex. 2022) ........ 23

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ........ 13

*Williams v. Manitowoc Cranes, L.L.C.*,
898 F.3d 607 (5th Cir. 2018) ........ 24


## STATUTES


15 U.S.C. § 1681e(b) ........ 6

2023 Tex. Sess. L. Serv. Ch 318 (H.B. 1745) ........ 22

Tex. Civ. Prac. & Rem. Code § 150E.002 ........ 23

Tex. Civ. Prac. & Rem. Code § 150E.003 ........ 22

Tex. Civ. Prac. & Rem. Code § 41.001 ........ 12

Tex. Civ. Prac. & Rem. Code § 41.003 ........ 12, 14, 15

Tex. Civ. Prac. & Rem. Code § 41.005 ........ 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21

Tex. Civ. Prac. & Rem. Code § 82.008 ........ 23

Tex. Gov't Code § 31.005 ........ 23

Tex. Occ. Code § 2402.107 ........ 7, 21

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Tex. Penal Code, tit. 2, ch. 7 .......... 15

**OTHER AUTHORITIES**

House Res. Org., Bill Analysis, Tex. S.B. 25 (Apr. 5, 1995) .......... 17

Richard B. Vance, Jr., *Placing Blame Where Blame is Due: How* Healthcare v. Rigby *Exempts Defendants from Punitive Damages Where There is Third Party Criminal Conduct, Regardless of the Defendant's Own Malicious Conduct*, 57 Baylor L. Rev. 563 (2005) .......... 17

**RULES**

Fed. R. Civ. P. 56(a) .......... 10

## INTRODUCTION

Uber never should have hired Victor Le to be an Uber driver and never should have dispatched him to drive Plaintiff home. By 2016, Uber knew that [redacted] In 2017, Uber told [redacted] In January 2020, Uber hired Mr. Le, despite the [redacted] the [redacted] and outstanding charges and an arrest warrant. In early 2020, Uber found [redacted] and let him keep driving. The result? In June 2020, Mr. Le sexually assaulted Plaintiff, a crime for which he was charged, tried, convicted, and sentenced.

Uber's conduct supports liability for both negligence and gross negligence, the latter sufficient to award punitive damages. The motion for summary judgment should be denied.

## BACKGROUND

### I. Uber hired Mr. Le [redacted]

#### A. Mr. Le [redacted]

[redacted] Ex. 1. [redacted] Ex. 2 at 49-55, 189-90; Ex. 3; Ex. 4; Ex. 5. Uber did not [redacted] Ex. 2 at 50. But [redacted] *Id.* at 49-55.

#### B. In [redacted]

In December 2016, Uber received [redacted] *Id.* at 30-44. [redacted]" *Id.* at 39-40; *see also id.* at 39 ("[redacted]"). Uber told [redacted] *Id.* at 44. And Uber was easily able to

[redacted] *Id.* at 35-36, 44. Uber [redacted] *Id.* at 55. [redacted] To Uber, [redacted] *Id.* at 56. Uber told Mr. Le directly: [redacted] *Id.* at 50-51. And Uber told [redacted] *Id.* at 44-45. But [redacted] *See id.* at 62-64, 241-42; *see also* Ex. 22 ("[redacted]"). [redacted] Worse, Uber affirmatively suggested to Mr. Le [redacted] One day after [redacted] Ex. 2 at 64-65. Uber responded: "[redacted]" Ex. 6. And that [redacted] Ex. 23.

**C. <u>In 2017, Uber learned</u> [redacted] <u>but did nothing to make sure he would not become an actual Uber driver and have access to vulnerable passengers.</u>**

In 2017, Uber learned that [redacted] Ex. 2 at 71-76, 113-19, 151-56, 253. Uber knew that [redacted] *Id.* at 151. The company had received [redacted] *Id.* at 99-104, 107-10, 171-73. In 2017, [redacted]

[redacted] *Id.* at 108-09.

G.M.'s report was credible. G.M. reported the assault to the police (who took less than twenty-four hours to identify the assailant as Victor Huynh Le). *Id.* at 153-54. [redacted] Uber [redacted] *Id.* at 75, 94, 163-64.

Uber acknowledges [redacted] *See id.* at 169-70. And Uber admits that [redacted] given the obvious risk he poses to passengers. *See id.* at 170-71. Uber told G.M. that [redacted] *Id.* at 165.

Uber lied. [redacted] *Id.* at 74, 91-92, 154-56, 164-65, 168, 243-44. It would have been reasonable, "standard[,] and technically feasible" to operate a data system that would have matched the name to Uber's records. Ex. 7 at 56. But Uber [redacted] *See* Ex. 8 ("[redacted]"); Ex. 2 at 157-63, 194-95 (conceding that [redacted]), 254-56 ([redacted]).

Uber did not [redacted] Ex. 2 at 167-68, 171, 192-94, 252. Uber's choice was no accident, but company policy: "[redacted]" *Id.* at 170. That police report (available without a subpoena) would have given Uber "basic information about the case," including Mr. Le's full name, address, and age, all of which matched what Uber already had in its database. Ex. 9. Uber also did not [redacted]

[redacted] Ex. 2 at 168. Five [redacted] *Id.* at 187-202, 265-68. This was no surprise. By 2017, [redacted] *Id.* at 206-08. That same year, Uber celebrated [redacted] Ex. 2 at 211-12.

Failing to respond appropriately to reports of misconduct was a feature, not a bug, of Uber when Travis Kalanick still ran the company, as he did in 2017. During that time, Uber was always a step behind negative stories, including reports that it had covered up a data breach, that it had obtained and circulated a rape victim's medical records in an attempt to discredit her account of an assault, that it ignored sexual harassment and discrimination, and of improper conduct by senior executives at a Korean night club. *See* Ex. 25 at 169-70. G.M.'s report was just one more.

### D. <u>In January 2020, Uber hired Mr. Le as an Uber driver despite the Jay and G.M. reports.</u>

By 2020, Mr. Kalanick was gone, but Mr. Khosrowshahi had not cleaned up Uber's act. In January, [redacted] Ex. 10 at 10-11. Despite the Jay and G.M. reports, Uber let him drive passengers. *Id.* at 208-229. [redacted] Ex. 2 at 268-71.

**Jay Report**. Recall that [redacted] And, [redacted] In 2020, when Mr. Le applied again, [redacted] Ex. 11 at 66-67; Ex. 12; Ex. 10 at 214-19; Ex. 2 at 230-32. So, it would have been easy to connect the two accounts.

What most likely happened here is that Uber did not bother to figure out whether Mr. Le had a previously banned account, even though Uber knew [redacted] *See* Ex. 6 ("[redacted]"). Uber knew in 2019 that "[redacted]"—like Victor Le. *Id.*; *see also* Ex. 24 (in March 2020, noting [redacted]).[1]

For this trial, Uber now says [redacted] Ex. 2 at 319-20, 332-33. This excuse does not withstand scrutiny. First, even "street hails" are illegal conduct, and Uber should not onboard drivers it knows broke the law. As Uber told Mr. Le: [redacted] *Id.* at 232-38. Uber itself [redacted] *Id.* at 481-87.

Second and more importantly, what Victor Le did in 2016 went way beyond "street hailing," that is, a background-checked and approved Uber driver charging for a ride outside of the Uber app. Victor Le [redacted] A person pretending to be an Uber driver to *lure* people into the imposter's car creates a clear and present danger to the passenger. Just ask Uber: "[redacted]" *Id.* at 488-94. This guy should never have been an Uber driver and Uber knew it.

**G.M. Report**. Had Uber identified Mr. Le as the person who assaulted G.M. (as it agrees it

---

[1] Uber now defends Mr. Le's [redacted] Ex. 2 at 495-97.

was supposed to do) and blocked him from ever driving for Uber (as it agrees it was supposed to do), it would have, and should have, also connected the 2020 application to that same person. But Uber [redacted] Ex. 10 at 310. In addition, Uber never [redacted] *Id.* at 308-10; Ex. 2 at 261-62.

**II. <u>Uber hired Mr. Le despite pending charges for sexual assault and an outstanding warrant for his arrest.</u>**

Even if Uber had never received the Jay report and had never received the G.M. report, it *still* should have blocked Mr. Le from being an Uber driver because he had an outstanding criminal charge and arrest warrant stemming from the assault of G.M. The records of the charge and the warrant were publicly available in Fort Worth municipal court records (the jurisdiction in which Mr. Le lived) and were easily matchable to Mr. Le: the records had his first and last name, middle initial, address, and birthday, all of which [redacted] Ex. 13; Ex. 11 at 104-07, 314-15; Ex. 14 at 23-24 & App'x C.[2] The documents showed that Mr. Le was charged with "assault by contact," Ex. 13, specifically that he "did touch [G.M.] on the breast." Ex. 15. And that there was an outstanding warrant for his arrest. Ex. 16. Uber admits [redacted] Ex. 10 at 191-201, 300-01.

But Checkr, Uber's vendor, never found those records or sent them to Uber because Uber knowingly designed a porous background check. Uber understood [redacted] Ex. 10 at 16-20. And Uber knew that [redacted]

[2] Uber argues that the records included only Mr. Le's name and birth year and so were not reportable under the Fair Credit Reporting Act. Uber's argument is based on a false premise: the records included both address and birthday. But even if the records included only the name, the FCRA did not require Checkr to ignore the records. The FCRA requires only that CRAs like Checkr maintain "reasonable procedures" to ensure accurate consumer reports. 15 U.S.C. § 1681e(b). Nothing prevented Checkr from investigating persons with the name "Victor H Le" in the Fort Worth area to confirm the match, or from telling Uber that the criminal records matched the name only (and allowing Uber to conduct further investigation). *See, e.g.*, *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252-53 (11th Cir. 2020) (no violation where report "cautioned that" criminal "record might *not* be connected to" plaintiff). Further action was particularly justified because Mr. Le had an outstanding warrant, suggesting an unusually dangerous person.

[redacted] *Id.* at 122-23.

Uber [redacted] Ex. 10 at 26-29, 304-05; Ex. 11 at 25-26, 28. For example, Checkr offers, but Uber does not pay for: [redacted] *Id.* at 29-31. The background checks Uber purchased from Checkr [redacted] Ex. 10 at 53-55; Ex. 11 at 157.

Texas law requires Uber to search national, state, *and* local criminal records. Tex. Occ. Code § 2402.107(a)(2). Local really does mean local. As Uber knew, most criminal records exist at the county or municipal level. Ex. 10 at 125-39 ([redacted]). The national and state searches are "[redacted]" Ex. 11 at 110-13.[3] Uber did not even [redacted] *Id.* at 113. Nor is it sufficient to search only counties because, as Uber knew, many jurisdictions (for example, Fort Worth) have separate county-level and municipal-level court records. *Id.* at 120-21; Ex. 14 at 18.

Checkr never searched Fort Worth records. While [redacted] The best evidence is that Checkr never found the Victor Le criminal records, even though they were publicly available. *See* Ex. 11 at 146-49 ([redacted]). The entire background check, [redacted] Ex. 11 at 159; Ex. 10 at 65-66. While at least one background check in a different bellwether case expressly included "[redacted]" the one conducted on Mr. Le did not. Ex. 10 at 182-83. Checkr doesn't [redacted]). Ex. 11 at 116-17, 123-24, 128, 130-31; *see also* Ex. 19 (Uber recognizing [redacted]

[3] Uber required [redacted] Ex. 10 at 55-56, 61-62; Ex. 11 at 158.

[redacted]. RapidCourt's report indicated [redacted]. Ex. 11 at 131.[4] As Uber knew, local criminal records often require manual, in-person searches. Ex. 26 at 22.

Checkr never [redacted]. Ex. 10 at 114-16, 177-79; Ex. 11 at 136-38. While Uber [redacted] Ex. 10 at 35-46. Checkr [redacted] *Id.* at 47. And [redacted] *Id.* at 155.

Uber knew [redacted]. In 2018, Uber noted [redacted] *Id.* And Checkr [redacted] *Id.* Uber [redacted] Ex. 11 at 117-18, 131-32. Two years later, [redacted] Ex. 19. [redacted] *Id.*

These risks were not merely hypothetical: Uber had received [redacted] Ex. 10 at 406-15. Uber never fired Checkr or modified its background checks. *Id.*

[4] [redacted] Ex. 10 at 174-75.

**III. Uber let Mr. Le keep driving, without any restrictions, [redacted]**

Uber deliberately disregarded yet another opportunity to keep this predator off its platform. On [redacted] Ex. 10 at 319-20; Ex. 2 at 269-310. As with Plaintiff, [redacted] Ex. 10 at 319-20; Ex. 2 at 275. The report was credible: [redacted] Ex. 2 at 282-84.

Uber found the report [redacted] *Id.* at 285-87. Uber promised [redacted] *Id.* at 277-78. For good reason: pretending to be a masseuse and offering to give a person a massage in their home creates an obvious and serious risk of sexual assault. Nevertheless, Uber designated [redacted] Ex. 10 at 319-29; Ex. 2 at 305-10. That very night, [redacted] *Id.* at 326. Uber did not investigate.

* * *

Despite all of this, Uber hired Mr. Le, let him drive without restrictions, and dispatched him for a late-night pickup from a bar in [redacted] in Uber rides. Ex. 10 at 371-72; Ex. 2 at 310, 315-16. Since Victor Le sexually assaulted Plaintiff, Uber has not [redacted] Ex. 10 at 204-07, 337; Ex. 2 at 157-75. Instead, Uber [redacted] Ex. 10 at 16-25, 77. Uber also claims publicly to conduct "courthouse" searches where

required; the facts of this case show that claim to be false. Ex. 26 at 22. And Uber [redacted] Ex. 27 at 215-17.

**LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "refrain from making credibility determinations or weighing the evidence." *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019) (citation omitted). The Court must "read all evidence in the light most favorable to the nonmoving party and likewise draw all reasonable inferences in that party's favor." *Id.* The Court may deny a motion targeting punitive damages as premature. *See Jung v. 24 Hour Fitness USA, Inc.*, 2018 WL 5045214, at *7 (E.D. Tex. Oct. 17, 2018) (denying summary judgment on punitive damages under Section 41.005 as "premature because the decision is only relevant if Plaintiff establishes actual damages"); *see also Keen v. C.R. Bard, Inc.*, 480 F. Supp. 3d 624, 646 (E.D. Pa. Aug. 19, 2020) ("[I]ssuing a ruling on punitive damages is premature at the summary judgment stage.").

**ARGUMENT**

**I. Texas law permits punitive damages in this case.**

"For over 150 years, [the Texas Supreme] Court has held that exemplary damages serve to punish the wrongdoer and 'set a public example to prevent the repetition of the act.'" *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 666 (Tex. 2008) (quoting *Cole v. Tucker*, 6 Tex. 266, 268 (1851)). In this case, Uber hired and dispatched Mr. Le despite his criminal history and [redacted]. Plaintiff seeks punitive damages because of Uber's conscious indifference toward and reckless disregard for her safety, not for the driver's downstream criminal conduct. This case is not about punishing the driver and Uber for the same wrong, but about punishing two distinct actors for two distinct wrongs. The driver has already been punished and deterred for his conduct—he is in prison. Uber has not been punished or deterred for *its* conduct.

Uber claims immunity from punitive damages because Texas law states that "a court may not award exemplary damages against a defendant because of the criminal act of another." Tex. Civ. Prac. & Rem. Code § 41.005(a). No problem: In this trial, the jury will be asked to award

punitive damages "because of" Uber's gross negligence in hiring and dispatching the driver, not "because of" the driver's criminal act. Appropriate jury instructions will ensure the jury segregates Uber's conduct from that of its driver. The plain text requires denial of Uber's motion.

This Court must predict how the Texas Supreme Court would interpret Section 41.005. In that court, "text is the alpha and the omega of the interpretive process." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017); *see also Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021) (describing the Texas Supreme Court as "text-centric"). The court "interpret[s] statutes by hewing to their plain text and eschewing speculation about what their drafters may have intended to accomplish." *River Creek Dev. Corp. v. Preston Hollow Cap., LLC*, 739 S.W.3d 825, 832 (Tex. 2026).

That is why, every time the Texas Supreme Court mentions Section 41.005, it describes the statute as doing exactly what its plain text says it does: "Section 41.005(c) … addresses the imposition of exemplary damages against a defendant *for the criminal act of another*." *Bennett v. Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010) (emphasis added); *accord Massage Heights Franchising, LLC v. Hagman*, 712 S.W.3d 615, 620 (Tex. 2025) ("Section 41.005 … prohibits such damages *for the criminal acts of another*.") (emphasis added); *Fairfield*, 246 S.W.3d at 667 (describing Section 41.005: "A defendant's liability for exemplary damages based on the conduct of employees, agents, and associates is also limited.").

Uber asks the Court to depart from the plain text of the statute. According to Uber, even though the statute says no punitive damages "because of" another's criminal act, in fact it precludes punitive damages in any case where *the harm* resulted from another's criminal act. But that is not what the statute says or how the Texas Supreme Court has described it.

Uber finds support only in a few opinions from the Texas intermediate appellate court. But those opinions, while they "may provide guidance," "are not controlling." *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010). The question for the Court is not what the intermediate appellate court has decided, but what the Texas Supreme Court would decide were the question put to it. In so discerning, the Court "must do its best (not its worst) to determine what that law is. It must use its judicial brains, not a pair of scissors and a paste pot." *Putman v. Erie City Mfg. Co.*, 338 F.2d

911, 918 (5th Cir. 1964) (citation omitted). The decisions on which Uber relies disregard the plain text of the statute, and so fail to do what this Court must do, which is "use the same methods of statutory interpretation used by the Texas Supreme Court." *Camacho*, 993 F.3d at 311. The plain text authorizes punitive damages in this case, and the plain text is what the statute means.

**A. <u>The plain text of Section 41.005 prohibits vicarious liability for the driver's conduct, not punitive damages for Uber's conduct.</u>**

Because the driver's conduct was criminal, Uber claims a windfall—no punishment, no deterrence. The plain text of the relevant Texas statutes requires denial of Uber's motion. Tex. Civ. Prac. & Rem. Code § 41.003(a) sets out the general rule concerning punitive damages: "exemplary damages may be awarded" where the plaintiff "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." By its terms, Section 41.003(a) authorizes punitive damages where the harm results from the specified kind of conduct. But the statute does not distinguish between the conduct of a defendant and that of a third party.

Tex. Civ. Prac. & Rem. Code Section 41.005(a) provides an "exemption" in cases involving criminal conduct: In "an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another." The plain text precludes imputed or vicarious liability, instead requiring that in a case involving criminal acts, exemplary damages be awarded "because of" the defendant's *own conduct*, not "because of" the criminal perpetrator's act.

Consider the elements that must be proven to support an award of punitive damages. In this case, the jury will decide whether Uber was grossly negligent. Gross negligence means:

> an act or omission … which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and … of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code § 41.001(11). So, the jury will evaluate Uber's "act[s] or omission[s]" in light of the company's "actual" knowledge. The driver's criminal conduct is not a fact the jury need consider in determining *Uber*'s liability for punitive damages. Uber could be grossly negligent

even if the driver's conduct did not rise to the level of a criminal act; therefore, punitive damages are not "based on the criminal act of Mr. Le." Mot. at 4.

Uber largely ignores key text as well as the required elements of an award of punitive damages. Instead, Uber argues the statute precludes punitive damages only by describing the lawsuit at the highest level of generality. *See* Mot. at 7 (arguing that "Mr. Le's criminal conduct … is the entire underpinning of Plaintiff's lawsuit"). This argument ignores that different parts of a cause of action have different elements. For example, Uber argues that Plaintiff's "damages claim" is "because of Mr. Le's alleged criminal conduct." *Id.* at 7 n.3. But Plaintiff does not have an undifferentiated "damages claim." She has a claim for negligence that requires certain elements to be proven. She seeks compensatory damages, a recovery that requires certain facts to be proven. And she seeks punitive damages, a remedy that requires other facts to be proven. As demonstrated above, those facts do not include Mr. Le's criminal conduct.

Uber ignores the text of the statute because the company's position necessarily rests on an extreme interpretation of that text, specifically, the key phrase: "because of." The "ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (citation omitted). In turn, "the phrase 'by reason of' denotes some form of causation." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 769 (2018). Depending on "context," a statute may "demand[] only but-for cause as opposed to proximate cause or sole cause." *Id.*; *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-68 (1992) (explaining that the interpretation of "by reason of" as requiring merely "but for cause" is "hardly compelled" and rejecting it). For example, the Texas Supreme Court has interpreted the similar phrase "arises from" to require proximate cause. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 873-74 (Tex. 2023).

Here, Uber's interpretation of the statute is unsupported by any ordinary understanding of "because of." Start with the lowest possible standard: "but for cause." As discussed above, proving Uber's gross negligence does not require any showing of the driver's conduct at all. Driver criminality is therefore not a "but-for" cause of any such damages. If "because of" requires proximate cause or sole cause, then the answer is even more clear. Because any punitive damages will be based on Uber's conduct, not the driver's, the driver's criminal acts cannot be deemed a

proximate cause or sole cause of such damages. *See* Tex. Pattern Jury Charge 2.4 (proximate cause requires "substantial factor").

Uber's position would find the required causal relationship where the injury "arise[s] as a result of a sexual assault" (such as the test for the statute of limitations). Mot. at 7 n.3. But "the injury arises as a result of" and "punitive damages are awarded because of" ask different questions. The former asks whether the action originates in a sexual assault—that's the first clause of Section 41.005(a). The latter, captured in the second clause, asks a narrower question specific to the punitive damages remedy: whether the specific finding needed to support that remedy (Uber's gross negligence) is itself established by proof of Le's crime. Had the legislature intended to immunize defendants from punitive damages in all cases involving third-party criminal conduct, it would have been simple to write a statute doing so: "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant who did not commit the criminal act." Instead, the legislature required only that punitive damages not be awarded "because of the criminal act of another."

**B. <u>The rest of Section 41.005 supports the plain meaning interpretation of Section 41.005(a).</u>**

Uber argues that the Court should look to the rest of section 41.005, specifically the exceptions to the prohibition on vicarious liability, to interpret the operative language in the statute. As an initial point, exceptions are not the rule: "Exceptions to a general rule, while sometimes a helpful interpretative guide, do not in themselves delineate the scope of the rule." *Dan's City Used Cards, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013). Section 41.005(a) means what it means, and the exceptions cannot change that.

Uber is also wrong about the exceptions. Uber argues that "two of the four exceptions … would make no sense" if Section 41.005(a) is given its plain meaning interpretation. Mot. at 8. This argument misunderstands both the exceptions and the requirements for an award of punitive damages. Again, remember that Section 41.003 permits punitive damages if the case involves fraud, malice, or gross negligence—no matter who the actor is behind it. Section 41.005(a) then says that a defendant cannot be liable for punitive damages where the only fraud, malice, or gross negligence

is somebody else's criminal act. The exceptions in Section 41.005(b) permit punitive damages against a defendant *without* any showing that that defendant themselves committed fraud, malice, or gross negligence, i.e., damages based on *someone else's* criminal conduct meets one of those prerequisites.

The first exception Uber highlights—Section 41.005(b)(2)—applies where "the defendant is criminally responsible as a party to the criminal act under the provisions the provisions of Chapter 7, Penal Code." *Id.* § 41.005(b)(2). Uber italicizes and bolds the word "criminally," but ignores that fact that Chapter 7 of the Penal Code provides for *vicarious* liability: "Criminal Responsibility for Conduct of Another." Tex. Penal Code, tit. 2, ch. 7. There is no requirement that the accomplice liability be premised on fraud, malice, or gross negligence. Similarly, the other exception Uber cites—Section 41.005(b)(4)—allows for punitive damages where a landlord fails to install security devices in rental units. Such failure could be negligent, malicious, or fraudulent, or it might not be—regardless, the statute provides no obligation for the plaintiff to show it constituted fraud, malice, or gross negligence. In other words: vicarious or imputed liability.

### C. Uber's speculation about legislative purpose should be disregarded.

Uber argues that the plain-text interpretation of the statute should be rejected because Texas law disfavors vicarious liability for punitive damages. Mot. at 8 n.5. But that's not how the Texas statutes work. The operative provision—that Uber mis-cites—permits punitive damages where the "harm results from" gross negligence, § 41.003(a), and leaves questions of actor-specific conduct to other provisions, like Section 41.005. And the case Uber cites, *Hammerly Oaks, Inc. v. Edwards*, does not purport to set out the full scope of vicarious liability for punitive damages (and applied law pre-dating the comprehensive 1995 amendments to Chapter 41). 958 S.W.2d 387 (Tex. 1997).

Uber is also wrong that the statute, if properly interpreted, "would be meaningless." There are all kinds of hypothetical cases in which a person is liable as a result of another's criminal acts—premises cases, special relationship cases, etc. Section 41.005 makes clear that, while *liability* may exist in such cases, *punitive damages* require that the defendant's *own* conduct be fraudulent, malicious, or grossly negligent. So, to argue, as Uber does, that Plaintiff's interpretation requires the existence of some "unrelated third part[y]," Mot. at 8, makes no sense: the statute has a function

no matter how "related" the two actors are.

In any event, "redundancies are common in statutory drafting—sometimes in a [legislative] effort to be doubly sure, sometimes because of [legislative] inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Pugin v. Garland*, 599 U.S. 600, 609 (2023) (citation omitted); *see also Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 66 (Tex. 2015) ("[T]here are times when redundancies are precisely what the Legislature intended.") (citation omitted).

More broadly, Uber's argument sounds in notions of legislative expectation—how the legislature thought this statute would work. But the Texas Supreme Court "eschew[s] speculation about what [a statute's] drafter may have intended to accomplish." *River Creek*, 739 S.W.3d at 832. This case shows why that rule is sound. The 1995 Texas legislature could not have anticipated a company hiring millions of people it designates as independent contractors, and tasking those people with driving around vulnerable people in drivers' personal vehicles as determined by algorithm and mobile application. Not only would the facts of this litigation be alien to the 1995 Texas drafters, but the law would be too. Section 41.005 was enacted before the Supreme Court limited such damages for harm caused to others, *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), or for out-of-state conduct, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), or even before the Supreme Court set out the now-familiar guideposts of reprehensibility and proportionality. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).

### D. <u>Legislative history is irrelevant.</u>

Lacking support in the plain text of the statute, Uber turns to legislative history. But in Texas, "[l]egislative history is generally useless to courts—indeed, it can be worse than useless because it is manipulable and relies on what *never* was the law." *Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023). Legislative history "serves as an ever-present judicial mercenary, embraced when helpful and ignored when not, and courts' consultation of it often devolves into looking over a crowd and picking out your friends." *In re Facebook, Inc.*, 625 S.W.3d 80, n. 4 (Tex. 2021) (citation omitted).

The legislative history Uber cites is, indeed, "useless." Uber cites a report released by an

administrative office (the "HRO") in the Texas House of Representatives supervised by a committee of House members. But the HRO cautions that its "publications are not an official part of the legislative process nor an official expression of the views of the Texas House of Representatives." *About the HRO*, House Res. Org., Tex. House of Rep. (last visited Sept. 14, 2026).[5] And the report Uber cites does not even describe the statute correctly (and may have been issued in connection with a never-enacted version). *See* House Res. Org., Bill Analysis, Tex. S.B. 25 (Apr. 5, 1995) at 3 [6] (stating inaccurately that the bill would remove gross negligence as a predicate for punitive damages).

It's also easy to "pick out … friends" and find legislative history supporting the plain-text interpretation of the statute as targeting vicarious liability only. That same HRO report states that the purpose of Section 41.0005 was to "ensure[] that legitimate business are not subjected to punitive damages for *not doing anything wrong*." HRO, *Bill Analysis*, at 7 (emphasis omitted). The legislature also heard testimony from the statute's proponents that if a third party commits a criminal act, and "the business [defendant] did have something to do, or failed to do something, that could have prevented that sort of action," it would not be "off the hook." Richard B. Vance, Jr., *Placing Blame Where Blame is Due: How* Healthcare v. Rigby *Exempts Defendants from Punitive Damages Where There is Third Party Criminal Conduct, Regardless of the Defendant's Own Malicious Conduct*, 57 Baylor L. Rev. 563, 578 (2005) (quoting briefing).

**E. <u>The Court should disregard the non-binding precedent on which Uber relies.</u>**

Lacking support in the plain text of the statute or the Texas Supreme Court's discussions of it, Uber relies on decisions from the Texas intermediate appellate court (and federal district court cases citing those decisions). But such authority does not resolve the question before the Court.

**1. <u>Non-binding authority cannot override the plain text of the statute.</u>**

In "a diversity case like this one, when no Texas Supreme Court case precisely resolves the legal issue," the Court "must make an *Erie* guess and determine as best [it] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019)

---

[5] https://hro.house.texas.gov/about.aspx#about

[6] *Available at* https://hro.house.texas.gov/pdf/ba74R/SB0025.PDF

(internal quotation marks omitted). The "decisions of Texas intermediate appellate courts may provide guidance, but are not controlling." *Packard*, 624 F.3d at 729; *see also Martinez*, 935 F.3d at 400-01 (disregarding "intermediate appellate case" that the federal court determined was "unlikely [to] reflect[] the Texas Supreme Court's view" on the issue).

"Overly rigid deference to the decision of an intermediate appellate court can easily distract a federal court from the constitutionally-based north star of its inquiry: what would the highest court of the state do if the present case was now before that court?" *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 (7th Cir. 2024). "Consequently, a federal court must be alert to indications that the highest court of the state might well reject the view of the intermediate appellate court." *Id.*; *see also Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 467 n.2 (3d Cir. 2024) ("[I]f we believe an opinion is unsupported, we should not reflexively follow it. Circuit courts are competent to interpret state law, too.").

In particular, "[w]hen interpreting a Texas statute, [the Court] use[s] the same methods of statutory interpretation used by the Texas Supreme Court." *Camacho*, 993 F.3d at 311. The Court "follow[s] the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 277 (5th Cir. 2015) (citation omitted). Accordingly, "the decisions of lower state courts … are only persuasive to the extent that they are well-reasoned and reflect the faithful application of Texas's framework for statutory interpretation." *Perez v. Am. Med. Sys. Inc.*, 461 F. Supp. 3d 488, 503-04 (W.D. Tex. 2020) (disregarding Texas intermediate appellate court decision and several federal district court decisions for reaching conclusion unsupported by the plain text of the statute). *Cf. Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 779 (Tex. 2011) ("*[S]tare decisis* does not compel perpetuating an interpretation of [a statute] that the entire Court agrees cannot be discerned from the text of the statute.").

**2. <u>The cases on which Uber relies do not correctly interpret the statute.</u>**

Only one decision Uber cites is principally relevant because later cases cite to it without undertaking any independent analysis of the statute itself. That case is *Healthcare Ctrs. of Tex., Inc. v. Rigby*, 97 S.W.3d 610 (Tex. App. 2002), the first decision to interpret Section 41.005. There,

a resident of a nursing home (Underwood) sued the nursing home for failing to prevent an attempted sexual assault by another resident (Jones). *Id.* at 614-17.

The opinion is not a model of clarity. But it appears that the court held that Section 41.005 precluded punitive damages against the nursing home for three reasons. First, the court held that "the injury to Mrs. Underwood was indivisible" and the court found "it highly improbable that the jury awarded $50 million in punitive damages solely because of the [conduct] of the nursing home, separate and apart from any criminal act by Jones." *Id.* at 618. The court also suggested that the jury instructions and verdict form were "posited such that the jury could not distinguish between the criminal act of Jones and malice attributed to [the nursing home]." *Id.* at 619. The court could have stopped there; it is indisputable that Section 41.005 precludes a judgment for punitive damages if it is determined (from the jury instructions, from the size of the verdict itself, or from other evidence) that the jury assigned punitive damages for the criminal conduct of another person.[7]

Second, the court emphasized the plaintiff's "judicial admission" that the harm was caused by Jones, even though such an admission does not say anything about whether the punitive damages were awarded "because of" Jones's conduct (and it was "undisputed that the direct cause of [the plaintiff's] harm was the criminal conduct of another"). *Id.* at 618. This portion of the opinion does not make much sense.

Third, the court went on to interpret Section § 41.005 more broadly—and erroneously considering the plain text. The key holding is this:

> In interpreting or applying 41.005 to any scenario, it seems implicit that our legislature anticipated a jury might find a defendant acted with malice even though the harm to a plaintiff was caused by the criminal act of another. Because the plaintiff admitted her harm was caused by the criminal conduct of Jones, she is barred from recovering exemplary damages under section 41.005 despite the jury's finding that Healthcare acted with malice.

*Id*. at 619-20. This analysis pays scant attention to the actual text of the statute, instead reaching a conclusion based on the court's opinion of what was "implicit" that the "legislature anticipated."

[7] Uber tries to defend *Rigby* by explaining that "the Court meant that the injury could not be sub-divided into one component caused by the defendant and the other component caused by the third party." Mot. at 8 n.4. Sure, but that only goes to show that the "action aris[es] from harm resulting from an assault, theft, or other criminal act." Tex. Civ. Prac. &. Rem. Code § 41.005(a). It does not establish that punitive damages are necessarily "because of" the criminal act.

But that is not how the Texas Supreme Court interprets statutes. *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 493 (Tex. 2013) ("A fundamental constraint on the courts' role in statutory interpretation is that the Legislature enacts the laws of the state and the courts must find their intent in that language and not elsewhere."). Indeed, the court's reasoning treats the statute's introductory clause—"an action arising from harm resulting from an assault, theft, or other criminal act"—as the operative prohibition, and gives minimal effect to the language the legislature actually used as the operative clause restricting punitive damages: "because of the criminal act of another."

*Rigby* never once grappled with the plain text of Section 41.005(a). The only textual analysis in the decision concerned the exceptions in Section 41.005(b). The *Rigby* court determined that the "four exceptions to a defendant's exemption from punitive damages because of the criminal act of another" precluded the court from recognizing any "other exemptions." 97 S.W.3d at 618. The problem with this conclusion—like the rest of the court's analysis—is that it skips past the plain text of Section 41.005(a) and does not examine the textual meaning of "because of the criminal act of another." As explained above, the exceptions, to the extent relevant at all, support Plaintiff's interpretation of the statute.

Uber also relies on *Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823 (Tex. App. 2012), but that case is similarly unhelpful. There, the court paid lip service to the plain-text analysis (which is more than can be said of *Rigby*), but ultimately "construe[d] Section 41.005 to preclude punishing a defendant for harm resulting from a criminal act of a third party when that defendant's actions are a concurrent cause of the harm." *Id.* at 826-27. The court did not acknowledge that "award exemplary damages against a defendant because of the criminal act of another" (the statutory language) is not the same as "punishing a defendant for harm resulting from a criminal act" (the court's language). The court also relied on *Rigby* for the mistaken analysis of the exceptions in Section 41.005(b). Finally, the court reasoned that "[t]here is no theory of liability under which a defendant is punished for the criminal acts of unrelated third parties." *Id.* at 826. As discussed above, this point makes no sense; the statute has a role to play no matter how "related" the actors are. And two such examples of "unrelated" actors appear in the statute itself: where a person maintains a public nuisance and where a landlord fails to provide appropriate locks. *See* Tex. Civ.

Prac. & Rem. Code § 41.005(b)(3) & (4).

Uber cites other decisions for quantity rather than quality, because they add very little. None analyzes the text of Section 41.005(a). In *Massage Heights Franchising, LLC v. Hagman*, 679 S.W.3d 298 (Tex. App. 2023), *rev'd in part on other grounds*, 712 S.W.3d 615 (Tex. 2025), the court cited *Rigby* without undertaking any analysis of the statute. *Id.* at 309-10. The federal cases are the same.[8] Neither *Rigby* nor cases citing it are "well-reasoned" or "reflect the faithful application of Texas's framework for statutory interpretation." *Perez*, 461 F. Supp. 3d at 502. None justifies departure from the "[p]lain text," the "truest manifestation of legislative intent." *City of San Antonio v. Realme*, 731 S.W.3d 342, 350 (Tex. 2026) (internal quotation marks omitted).

## II. <u>Sufficient evidence supports Plaintiff's negligence claim.</u>

Uber argues that Plaintiff's negligence claim is supported only by a "warning theory" and a "background-check theory." As explained above, that is incorrect: Plaintiff also asserts liability based on Uber's failure to act appropriately on the [redacted] For that reason alone, the motion should be denied. But in any event, there is sufficient evidence to support both warnings- and background-check-based negligence theories.

### A. <u>Sufficient evidence supports a background-check theory.</u>

Uber argues that it cannot be liable for hiring Mr. Le because its background check complied with Texas's TNC statute. As an initial matter, Uber did not comply with the TNC statute. The statute requires Uber to conduct a "local" and "state … criminal background check." Tex. Occ. Code § 2402.107(a)(2). Uber did not [redacted] Ex. 11 at 113. And the evidence supports a finding that Uber did not search municipal records, which are indisputably "local."

Even if Uber did comply with the statute, "[c]ompliance with statutory standards is evidence of the use of reasonable care but is not necessarily dispositive of that issue." *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 50 (Tex. App. 2002) (collecting cases). Uber suggests that the TNC

---

[8] *See R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203, 1216-17 (D. Or. 2018); *Bhatti v. Concepts Am. Inc.*, 2016 WL 3880747 (N.D. Tex. July 18, 2016) (similar, relying on *Miles*); *Jung v. 24 Hour Fitness USA, Inc.*, 2019 WL 3037537, at *4 n.4 (E.D. Tex. July 11, 2019) (relying on *Rigby*'s "indivisible injury" holding, which has nothing to do with key text at all).

statute is exempt from that general rule based on "the statutory language and structure," Mot. at 14 n.11, but never explains why the language or structure supports that conclusion.

Uber relies on *Freyer v. Lyft, Inc.*, 639 S.W.3d 772 (Tex. App. 2021), for the proposition that Mr. Le's criminal record and [redacted] cannot support a negligence claim as a matter of law. But Uber's fast and loose check missed criminal records that Uber [redacted] Ex. 10 at 191-201, 300-01. This case is therefore unlike *Freyer*, where the overlooked information was "not evidence of a reckless or incompetent driver." 639 S.W.3d at 786. Similarly, the evidence Uber had of previous bad conduct—[redacted]—should have disqualified Mr. Le from driving. Unlike in *Freyer*, where the company lacked sufficient reason to act on the prior reports (*id.* at 790-91), here Uber [redacted]

Finally, Uber argues that Tex. Civ. Prac. & Rem. Code § 150E.003 supports summary judgment here. For four reasons, the statute does not have that effect. *First*, the statute has no applicability to Plaintiff's case, which arose before the statute was enacted in 2023. *See* 2023 Tex. Sess. L. Serv. Ch 318 (H.B. 1745) §§ 2-3 (act does not apply retroactively). *Second*, the statute concerns vicarious liability. *See* PTO 17 at 12. The operative provision reads: "A transportation network company may not be held vicariously liable for damages in an action ..." Tex. Civ. Prac. & Rem. Code § 150E.003(a). The statute goes on to make clear that "Subsection (a) does not affect the liability of a transportation network company arising out of the company's own negligence," and gives, as an example, "including" a company being negligent by permitting a person to drive despite knowing he was disqualified under the state's background check statute. *Id.* § 150E.003(b).

Uber asserts that the example provided not only modifies the precaution that the statute does not affect negligence liability, but contradicts it, by making it so that the statue *does* "affect the liability of a [TNC] arising out of the company's own negligence." This reads far too much into an illustrative example. In Texas, the words "'[i]ncludes' and 'including' are terms of enlargement and not limitations or exclusive enumeration, and use of the terms does not create a presumption

that components not expressed are excluded." Tex. Gov't Code § 31.005(13); *see also In re E.C.R.*, 402 S.W.3d 239, 246 n.6 (Tex. 2013).

*Third*, when the Texas legislature limits liability based on compliance with a statute, it does so expressly, not obliquely. *See*, *e.g.*, Tex. Civ. Prac. & Rem. Code § 82.008(a) (setting out rebuttable presumption in products liability actions based on compliance with regulations); *see also Taylor v. Tolbert*, 644 S.W.3d 637, 649 (Tex. 2022) ("[S]tatutes purporting to abrogate common-law principles must do so either expressly or by necessary implication."). *Fourth*, even if the statute somehow applied to Plaintiff's negligence claims, it has no effect where the plaintiff proves either gross negligence or non-compliance with the TNC statute. Tex. Civ. Prac. & Rem. Code § 150E.002(a)(1) & (2); PTO 17 at 12-14. Here, the evidence supports findings of both.

**B. <u>Sufficient evidence supports a marketing and warnings theory.</u>**

Uber argues that a warnings-based theory fails for lack of causation because marketing did not influence a third party (H.M.) into ordering the ride for Plaintiff into accepting it. As an initial matter, Plaintiff need only show that marketing or the lack of a warning was negligent, not that Uber made some misrepresentation on which a person relied—this is not a negligent misrepresentation claim. *See Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App. 2011) (discussing negligent marketing claim). And here, the record shows exposure to and effect of Uber's safety-related marketing.

*First*, Uber messaging influenced H.M. into ordering an Uber ride for Plaintiff. H.M. saw commercials advertising Uber as "the safe route to take." Ex. 20 at 23-24. Although she unsurprisingly could not recall specific ads, she remembers advertising promoting intoxicated women using Uber to get home, including on social media. *Id.* at 88-98. That was "the message that [she] remember[ed] hearing pretty strongly." *Id.* at 97. Those types of messages made her "excited about" using Uber and "gave [her] more confidence and reassurance in choosing [Uber] for a safe ride." *Id.* at 90-93. She thought Uber "was the safest option," in particular because of what she heard about the company's background checks. *Id.* at 93-95. When she put Plaintiff, an intoxicated woman alone, into an Uber, she was doing exactly what Uber told her to do. *Id.* at 97-98. She was further reassured by what Uber told her (and did not tell her) about Mr. Le specifically.

Uber told her that Mr. Le had "passed a multi step safety screen," had a high star rating, was "Uber Pro Platinum," and was an army veteran. *Id.* at 99-100. Uber never told H.M. about the previous reports against Mr. Le, any one of which would have changed her decision. *Id.* at 99-103.[9]

*Second*, Plaintiff *was* influenced by Uber advertising. She "uses Uber as a verb" and testified that she downloaded the Uber app because it "was a part of the culture" and "word of mouth," all of which are signs "that she has been affected by Uber's ad messages." Ex. 21 at 84-86; *see also Dean* Trial Tr. at 378 (explaining that people typically do not recall specific advertisements, but rather "the general themes of the ads"). The jury may conclude that those influences led Plaintiff to be willing to use a rideshare service late at night, alone, and intoxicated on the night in question, notwithstanding that, under the stress of being sexually assaulted and being interviewed by police, she initially stated that it was a Lyft.

## III. **<u>Plaintiff will not try a strict liability claim, but the factual theories underlying that claim remain available to show negligence.</u>**

Plaintiff will not try her strict products liability claim. But the factual bases for that claim remain viable parts of her negligence claim.

**Woman:Woman Matching**. H.M. testified that if Uber had had the option to choose a female driver, she would have used that option for Plaintiff's ride, especially given that Plaintiff was young, alone, and intoxicated. Ex. 20 at 113-15.[10] Had there been a longer wait for a female driver, Plaintiff could have safely waited at the bar. *Id.* at 115-16. Uber says that H.M. does not use the women-preferred option on her Uber account, but omits her explanation: she rarely uses Uber and, when she did, was always with her husband. *Id.* at 31-32. She more commonly uses Lyft,

[9] Uber speculates that H.M. chose Uber because it was cheaper than Lyft. Mot. at 11. In reality, she could not "recall" doing that. Ex. 20 at 44. Regardless, what H.M. thought about Lyft is irrelevant. The question here is why she thought putting an intoxicated woman by herself in a stranger's car late at night was a good idea, and whether a warning should have been given.

[10] Uber argues that H.M.'s testimony on this point is inadmissible speculation regarding what she "would have done." Mot. at 17 n.16. That is wrong. *See*, *e.g.*, *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 621-22 (5th Cir. 2018) (finding sufficient evidence where plaintiff's co-worker "testified that had he seen the warning, he would know that he should flee the cab as quickly as possible during a tip-over"); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 775-77 (5th Cir. 2018) (examining physician testimony regarding what they would have done had they received a warning).

where she does have the women-preferred option selected. *Id.*[11]

Finally, Uber argues that "there is no evidence that" a "gender-preference feature would have resulted in a pairing with a female driver." Mot. at 16. But Uber explained in the *Dean* trial that the women-preferred feature, once launched, informed users of the different wait times for a woman driver. *See Dean* Tr. at 3052-53. And H.M. testified that Plaintiff could have waited longer safety. The idea that there were *no* women drivers nearby is contradicted by Uber's statement that "[redacted]" Ex. 2 at 348-50.

**Video Recording**. Uber says that there is insufficient evidence that video recording would have deterred Mr. Le from assaulting Plaintiff. But there is ample evidence from Uber itself that cameras deter Uber drivers from sexually assaulting Uber passengers. *See Dean* Tr. at 649-54, 754-57, 864-66; *Dean* Ex. 22; *Dean* Ex. 1316 ("We know that recording tools, such as dashcams and audio recording, act as significant deterrents to misconduct and unsafe behavior[.]"); *Dean* Ex. 1528 (finding "evidence that dashcams cams work at a deterrent for inappropriate behavior"); *Dean* Tr. at 1360-61 (expert testimony on this point); Ex. 28 at 251-53 ([redacted]). The jury may conclude that this powerful deterrent effect would have applied in this case. *See May v. Chrysler Grp., LLC*, 716 F.3d 963, 972-73 (7th Cir. 2013) (affirming verdict that employer did not act reasonably to end harassment, including by failing to "install a single surveillance camera," where "it would have been a step reasonably likely to end, reduce, or deter the harassment"); *MacQuarrie v. Howard Johnson Co.*, 877 F.2d 126, 130-31 (1st Cir. 1989) (crediting evidence that "cameras … would have greatly deterred criminal activities in this area, as well as the specific attack," and explaining that "evidence need not prove that with additional security measures the crime definitely would not have taken place").[12]

## CONCLUSION

For these reasons, the Court should deny Uber's motion for summary judgment.

---

[11] Uber argues that H.M. did not begin using women-preferred on Lyft until "last year" even though the feature was available in 2024. Mot. at 17. Uber's contention assumes facts not in evidence, including how frequently H.M. used Lyft in 2024, and at most presents a jury argument.

[12] Uber mis-cites *Banzhaf v. ADT Sec. Syst. Sw., Inc.*, 28 S.W.3d 180 (Tex. App. 2000), as rejecting an alternative-design claim on causation grounds, when in reality the court found the design was not defective because the defendant had good reasons for its choices. *Id.* at 187.

Dated: September 22, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: September 22, 2026

By: */s/ Andrew R. Kaufman*
Andrew R. Kaufman