[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**<br><br>Judge: Honorable Charles R. Breyer |
| This Document Relates to:<br><br>*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al*, Case No. 3:24-CV-08783 | |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 0001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 501 |

# TABLE OF CONTENTS


ARGUMENT ..... 1

I. Uber's 2026 Background Check Policy Changes ..... 1

A. The 2026 background-check changes are admissible to challenge Uber's corporate testimony that its background checks in 2020 were "the best that it c[ould] do." ..... 1

B. The evidence is relevant to the scope and limitations of the background check Uber used for Victor Le. ..... 2

II. Austin Fingerprint Requirement From 2016–2017 ..... 4

A. This case exposes the limits of Uber's name-based screening process. ..... 5

B. Uber has put the comparative adequacy of fingerprint and name-based background checks directly at issue. ..... 5

C. Uber's Texas safety representations further show why the Austin evidence is relevant. 6

III. Mr. Le's Criminal Trial And Appeal And The Police Investigation ..... 7

A. The criminal proceedings and investigation are relevant to Plaintiff's damages and to rebut Uber's attacks on Plaintiff's account. ..... 7

B. Uber's response to law enforcement is independently relevant. ..... 10

IV. Uber's Women Driver Preferred Option ..... 11

A. H.M.'s testimony establishes that the option would have been used for Plaintiff's ride. 11

B. The evidence is relevant to feasibility and causation. ..... 12

V. Safety Risk Assessed Dispatch ("S-RAD") Program ..... 13

VI. Uber's Advertising or Marketing ..... 14

A. Uber's marketing is relevant to show negligence and gross negligence. ..... 15

B. H.M. directly connects Uber's safety marketing to the ride in this case. ..... 16

VII. Driver's Alleged "Propensity" to Commit Sexual Assault ..... 17

VIII. Driver's "Unrelated" Alleged Misconduct ..... 18

A. The 2016 incident is relevant to Uber's knowledge, screening, and failure to prevent Le from rejoining Uber's platform. ..... 18

B. The remaining allegations may be excluded unless Uber opens the door to Le's character. ..... 21

IX. Media Reports Involving Uber That Post-Date The *Dean* Trial ..... 21

X. "Inflammatory" Remarks About Uber's Defense ..... 22

XI. Executive Compensation ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page(s)

CASES


*Arrington's Estate v. Fields*,
578 S.W.2d 173 (Tex. Civ. App. 1979) .................... 20

*Avondale Mills, Inc. v. Norfolk S. Corp.*,
2008 WL 6953958 (D.S.C. Jan. 16, 2008).................... 25

*Becker v. PaineWebber, Inc.*,
962 F.2d 524 (5th Cir. 1992).................... 16

*Boyd v. City of Oakland*,
458 F.Supp.2d 1015 (N.D. Cal. 2006) .................... 21

*Bryant v. S.A.S.*,
416 S.W.3d 52 (Tex. App. Houston [1st Dist.] 2013, pet. denied).................... 17

*Cardona v. Cnty. of Los Angeles*,
2025 WL 4227217 (C.D. Cal. Dec. 16, 2025) .................... 22

*Cleveland v. KFC Nat. Mgmt. Co.*,
948 F. Supp. 62 (N.D. Ga. 1996) .................... 18

*Cotton v. City of Eureka*,
2010 WL 5154945 (N.D. Cal. Dec. 14, 2010) .................... 2

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995).................... 17

*Ellsworth v. Prison Health Servs., Inc.*,
2013 WL 6587876 (D. Ariz. Dec. 12, 2013) .................... 9

*Farah Mfg. Co. v. Alvarado*,
763 S.W.2d 529 (Tex. App. El Paso 1988).................... 25

*Freyer v. Lyft*,
639 S.W.3d 772 (Tex. App. Dallas 2021).................... 3

*Galland v. Harvey Gulf Int'l Marine, LLC*,
2025 WL 2845135 (E.D. La. Oct. 7, 2025) .................... 4

*Gilead Tenofovir Cases*,
594 P.3d 61 (Cal. 2026) .................... 4

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
2017 WL 2844646 (E.D. Tex. May 19, 2017).................... 25

*Graef v. Chem. Leaman Corp.*,
106 F.3d 112 (5th Cir. 1997).................... 25

*Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*,
921 F.2d 139 (8th Cir. 1990).................... 9, 22

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*,
2016 WL 10706086 (N.D. Ind. Oct. 28, 2016).................... 25

*In re Bella Corp.*,
648 S.W.3d 373 (Tex. App. Tyler 2021, orig. proceeding).................... 25

*In re DePuy Orthopaedics, Inc.*,
888 F.3d 753 (5th Cir. 2018).................... 9, 20

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
MDL No. 2592, 2017 WL 11718344 (E.D. La. Apr. 18, 2017) .................... 17

*J.S. ex rel. N.S. v. Children of Am., Inc.*,
696 F. App'x 39 (2d Cir. 2017) ........ 18
*James v. Tilghman*,
194 F.R.D. 398 (D. Conn. 1999) ........ 18
*Johnson v. Wyeth LLC*,
2012 WL 1150857 (D. Ariz. Apr. 5, 2012) ........ 16
*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ........ 23
*McKiver v. Murphy-Brown, LLC*,
980 F.3d 937 (4th Cir. 2020) ........ 25
*Minton v. Intercontinental Terminals Co.*,
697 F. Supp. 3d 690 (S.D. Tex. 2023) ........ 6
*Muzyka v. Remington Arms*,
774 F.2d 1309 (5th Cir. 1985) ........ 2
*Nano-Proprietary, Inc. v. Canon Inc.*,
2007 WL 9747591 (W.D. Tex. Feb. 28, 2007) ........ 21
*NeSmith v. Cnty. of San Diego*,
2022 WL 272011 (S.D. Cal. Jan. 28, 2022) ........ 22
*Old Chief v. U.S.*,
519 U.S. 172 (1997) ........ 9
*Phillips v. Super Servs. Holdings, LLC*,
189 F. Supp. 3d 640 (S.D. Tex. 2016) ........ 20
*Sanders v. Sky Transp., LLC*,
569 F. Supp. 3d 455 (E.D. Tex. 2021) ........ 11
*Tennison v. Circus Circus Enters., Inc.*,
244 F.3d 684 (9th Cir. 2001) ........ 13
*Trepagnier v. Alimak Hek, Inc.*,
784 F. App'x 195 (5th Cir. 2019) ........ 2, 13
*U.S. v. Bighead*,
128 F.3d 1329 (9th Cir. 1997) ........ 23
*U.S. v. Spletzer*,
535 F.2d 950 (5th Cir. 1976) ........ 9
*U.S. v. Williams*,
30 F.4th 263 (5th Cir. 2022) ........ 13
*U.S. v. Young*,
316 F.3d 649 (7th Cir. 2002) ........ 22
*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
2022 WL 15792838 (D. Or. Oct. 28, 2022) ........ 6
*Wal-Mart Stores, Inc. v. Cordova*,
856 S.W.2d 768 (Tex. App. El Paso 1993, writ denied) ........ 25
*Williams v. J.B. Hunt Transp., Inc.*,
151 F.4th 1020 (9th Cir. 2025) ........ 2, 13

STATUTES

M.S. at 115-119 ........ 17

RULES

Fed. R. Evid. 404(b)(2) ........ 17, 18
Fed. R. Evid. 407 ........ 1, 2, 13
Fed. R. Evid. 415(a) ........ 18
Fed. R. Evid. 803(8) ........ 11

## ARGUMENT

### I. Uber's 2026 Background Check Policy Changes

#### B. The 2026 background-check changes are admissible to challenge Uber's corporate testimony that its background checks in 2020 were "the best that it c[ould] do."

Fed. R. Evid. 407 expressly permits evidence of subsequent measures when offered for another purpose, including impeachment. Here, at a minimum, Uber's 2026 changes are admissible to challenge Uber's corporate testimony concerning the background checks Uber was actually performing, the adequacy and scope of those checks, and whether Uber had already implemented the lifetime-search package it ultimately adopted nationwide in 2026.

The common theme from Uber's corporate witnesses and experts is that the company goes above and beyond legal minimums and industry standards. *See, e.g.*, ECF 7363-9, Expert Report of J. Okpaku, at 18, 22, 24, 38 (Sept, 3, 2026). In 2025, Uber designated Hannah Nilles to testify as its corporate representative concerning background checks and driver screenings. [redacted] That testimony is central to Uber's defense in this case: that its background checks were good enough, despite missing Victor Le's criminal record.

But that testimony was false. After Judge Cisneros ordered a deposition concerning the 2026 background check policy (an order this Court affirmed and Uber threatened to appeal to the Ninth Circuit), Uber designated Elisha McCann to testify concerning the accuracy of Nilles's testimony and Uber's 2026 background-check change. [redacted]

[redacted]

Because Uber argues that its 2020 background checks were the best it could do and that the company goes "above and beyond" to keep bad actors (like Le) off the platform, Plaintiff is entitled to challenge those claims by showing the gaps in its screening process, the failures the company knew about, and how Uber was, in reality, not doing "the best that it can." The 2026 policy change is direct evidence that rebuts Uber's false claims. *See, e.g., Muzyka v. Remington Arms*, 774 F.2d 1309, 1313-14 (5th Cir. 1985) (holding jury was entitled to hear and evaluate evidence that impeaches an expert's opinions and to evaluate and weigh that evidence when it directly contradicts a party's reasoning).[1]

**C. The evidence is relevant to the scope and limitations of the background check Uber used for Victor Le.**

This evidence is also relevant to rebut Uber's defense of the reasonableness and comprehensiveness of its 2020 screening of Victor Le. Uber argues that its screening decisions regarding Le reflect a reasonable and non-negligent balance among safety, regulatory considerations, operational readiness, adjudication accuracy, and driver access. Plaintiff must be permitted to test the factual underpinning of Uber's contention: what Uber actually purchased, what additional screening was available, what Uber knew about the limitations of its existing screening, and whether Uber's witnesses accurately described those choices.

The evidence at trial will show that Uber knowingly purchased the cheapest, fastest background check, and as a result never searched the Fort Worth Municipal Court records that

[1] Uber's Rule 407 cases are distinguishable. In *Williams*, the plaintiffs invoked feasibility but sought to use a later policy to prove the defendant's prior culpable conduct. *Williams v. J.B. Hunt Transp., Inc.*, 151 F.4th 1020, 1037–38 (9th Cir. 2025). *Cotton* and *Trepagnier* similarly involved subsequent measures offered but the courts determined that were only to establish prior liability or negligence. *Cotton v. City of Eureka*, 2010 WL 5154945, at *16 (N.D. Cal. Dec. 14, 2010); *Trepagnier v. Alimak Hek, Inc.*, 784 F. App'x 195, 199 (5th Cir. 2019).

contained Victor Le's pending criminal charge for sexual assault and outstanding arrest warrant regarding the same. [redacted]

Uber argues that the 2026 background check change is inadmissible because it would not have changed the background-check result in this case. It may have. The expanded SSN search that Uber could have adopted earlier, but chose not to, would have implemented a search that was unquestionably better (but more expensive), and may have found the open arrest warrant for Le. For example, if Checkr had actually visited the county where Le had lived and learned that records of municipal records were housed in the municipal court, it may have searched them and provided the pending arrest arising from a sexual assault to Uber. There is no dispute that if Uber had learned about Le's criminal history, it would not have hired him.

Regardless, Uber's decisions about the scope of its background checks, and the trade-offs behind those choices, are relevant to negligence (and gross negligence). In 2020, Uber intentionally chose weaker background checks in order to maximize profit. In other words, Uber's failure to find Victor Le's criminal history was not a one-off "accident." Rather, it was the foreseeable and foreseen result of Uber's overall approach to background checks: bottom dollar, bottom results. Also, it shows that Uber has not taken meaningful safety actions, such as strengthening background checks, until it faced significant business and litigation risk from victims coming forward, including Plaintiff QLF 001.

Uber relies on *Freyer v. Lyft*, 639 S.W.3d 772 (Tex. App. Dallas 2021), in which the court affirmed summary judgment where there was no evidence that a different background-check procedure would have uncovered additional information showing the driver was incompetent. *Id.* at 789. Here, the evidence is that a different procedure could have changed things. And in any

event, *Freyer* said nothing about what kinds of evidence are admissible to prove negligence, only what is separately required to show causation.[2]

**II. Austin Fingerprint Requirement From 2016–2017**

[redacted] Uber says it could not have done so based on a name-based search alone. So, this begs the question, why didn't Uber require fingerprints—an identification verification tool—that could have ensured Le did not get hired when he did?

The answer is that Uber fought fingerprinting at every turn, because it would preclude the kind of rapid onboarding of drivers Uber demanded to scale massive growth. Austin was ground-zero for this fight. Uber flooded the market in Texas with advertising stating that Uber's background checks were superior to fingerprinting, and that the public should trust Uber's technology. This built public trust in Uber and paved the way for the minimal regulations implemented in the 2017 Texas TNC Statute.

Uber has affirmatively placed at issue the comparative adequacy of fingerprint and name-based background checks, has repeatedly represented in this case and publicly that its name-based system is comprehensive and superior to fingerprinting, and marketed the safety of that screening system to Texas riders. The Austin evidence bears on Uber's knowledge, the feasibility of alternative screening, the credibility of its asserted reasons for rejecting fingerprinting, and its safety representations to riders. Moreover, it is relevant to challenging the opinions of its expert,

---

[2] Uber cites *Gilead Tenofovir Cases*, 594 P.3d 61 (Cal. 2026), but that case merely held that as a matter of public policy, in the absence of a showing that a product was defective, a manufacturer owed no duty to develop other, safer drugs. Even ignoring the obvious differences between life-saving pharmaceuticals and rideshare background checks, *Gilead* said nothing about whether evidence of feasible safer practices is inadmissible in a case alleging that a background-check process *was* defective. Uber also cites *Galland v. Harvey Gulf Int'l Marine, LLC*, 2025 WL 2845135 (E.D. La. Oct. 7, 2025), but that case does not support exclusion. There, the subsequent repair had minimal probative value because causation had already been conceded. Here, the evidence has substantial probative value because it directly contradicts Uber's corporate testimony concerning what Uber had already implemented and illustrates Uber's overall approach to background checks.

Joseph Okpaku, [redacted] Uber should not be permitted to use regulations as a shield, without allowing Plaintiff to use them as a sword. [redacted] This context is important because it undermines Uber's contention that the regulators determine the industry standard and goes to gross negligence and punitive damages as Uber intentionally crushed local safety efforts and ensured weaker regulations by promising its own screening was superior and trustworthy, all while knowing it was not, and that women like Plaintiff would be harmed.

**A. This case exposes the limits of Uber's name-based screening process.**

As explained *infra*, [redacted] The jury may well conclude that Uber did not connect the accounts, leading to the question of whether its failure to do so was negligent or grossly negligent. Had Uber collected Le's fingerprints in 2016 and 2020, then it would have matched the accounts, and he would never have been permitted to drive.

**B. Uber has put the comparative adequacy of fingerprint and name-based background checks directly at issue.**

The evidence is also relevant because Uber itself has made the comparative adequacy of fingerprint and name-based screening part of its defense. When questioned about efforts to require more stringent screening, including fingerprinting, [redacted]

[redacted] Uber cannot tell the jury that its chosen name-based system was more comprehensive, more current, or otherwise superior to fingerprint screening and then exclude the history showing that fingerprint screening was feasible in Texas and Uber chose not to require it. For example, Uber's expert Joseph Okpaku testified that [redacted]

Uber's authorities are inapposite. In *Minton*, the court excluded expert testimony invoking an OSHA regulation that did not apply to the operations at issue and was offered to establish the governing standard of care. *Minton v. Intercontinental Terminals Co.*, 697 F. Supp. 3d 690, 696, 701–03 (S.D. Tex. 2023). But Plaintiff is not offering Austin's ordinance as the standard of care governing Uber in Arlington. *Unigestion* is similarly distinguishable. There, the court excluded conduct in other jurisdictions that did not affect the relevant operations in Haiti. *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 2022 WL 15792838, at *11 (D. Or. Oct. 28, 2022). Here, the evidence concerns Uber's own screening practices in Texas and the same alternative screening method Uber now contends was inferior.

**C. Uber's Texas safety representations further show why the Austin evidence is relevant.**

The Austin evidence is also relevant because Uber promoted the safety of its service and background checks specifically to riders in Texas, including H.M., who ordered the Uber for Plaintiff and placed her in Le's vehicle. [redacted]

[redacted]

Uber therefore cannot plausibly characterize the history surrounding its background-check representations as wholly disconnected from this case. Uber marketed screening as a reason riders could trust its platform. [redacted] The evidence concerning Uber's contemporaneous efforts to defend its name-based system against fingerprint requirements provides context for what Uber knew when making those representations and why it was making them.

Rule 403 does not justify exclusion. Plaintiff need not relitigate Proposition 1, ask the jury whether Austin voters made the correct policy choice, or invite the jury to decide this case based on local politics. Instead, the evidence can be narrowly presented to establish that fingerprint screening was a known and feasible alternative; that Uber actively defended its name-based screening as comprehensive and superior; that Uber simultaneously marketed the safety and rigor of its screening to Texas riders, including H.M.; and that the system Uber chose failed to identify Le's outstanding assault warrant. Any concern about the Austin jury treating the former ordinance itself as the governing standard of care can be addressed through a limiting instruction, not wholesale exclusion.

## III. Mr. Le's Criminal Trial And Appeal And The Police Investigation

Uber seeks to exclude virtually all evidence concerning the police investigation, Le's criminal trial, his flight during trial, Sergeant Reinhardt's testimony, and even the fact that Le's conviction was affirmed on appeal. Uber's overbroad motion should be denied. Plaintiff does not intend to retry the criminal prosecution or introduce the police file wholesale. But portions of the investigation and criminal proceedings are independently relevant to Plaintiff's damages, to rebut Uber's attacks on Plaintiff's account, and to explain Uber's own response to law enforcement.

### A. The criminal proceedings and investigation are relevant to Plaintiff's damages and to rebut Uber's attacks on Plaintiff's account.

Uber argues that the criminal proceedings are irrelevant because they occurred after the assault and therefore do not bear on Uber's pre-assault conduct. That argument ignores Plaintiff's damages. Plaintiff was required to participate in the investigation, revisit the assault, review evidence of it, testify at Le's criminal trial, and live in fear when Le absconded during the trial. Those experiences are part of the harm resulting from the assault.

The record demonstrates that impact. [redacted]. Uber cannot characterize those proceedings as an irrelevant "sideshow" when Plaintiff seeks damages for the emotional consequences of the assault and the prosecution that required her to repeatedly revisit it and retraumatize her.

The same applies to Le's flight. Le was present when trial began, failed to appear the next day, and the court found that he had voluntarily and willfully absented himself before continuing the trial in absentia. Ex. 8, Trial Tr. Vol. 5 at 22:22-23:1, The State of Texas v. Victor Huynh Le, No. 07-22-00287-CR (372d Jud. Dist. Ct. Tarrant County, Tex. 2022). Le's disappearance during the proceeding is relevant to the constant fear Plaintiff experienced while he was a fugitive (he knew where she lived) and her resulting emotional harm.

Nor does Uber's concession that Le was convicted eliminate the relevance of the investigation. Uber apparently is not conceding Plaintiff's account of the sexual assault or the nature and extent of her resulting damages. To the contrary, [redacted]

[redacted]

Uber cannot selectively use the police investigation and criminal proceedings to attack Plaintiff while excluding the context necessary to understand that evidence. Indeed, Uber's motion expressly preserves its ability to use Plaintiff's statements from the investigation as party-opponent statements or for impeachment. Uber should not be permitted to isolate statements Plaintiff made during the investigation and use them to suggest inconsistency or unreliability while preventing Plaintiff from presenting the investigating officer and other evidence necessary to place those statements in context.

As for Plaintiff's non-retained expert [redacted]

Uber's reliance on *Spletzer* and *Old Chief* is misplaced. Both involved prior convictions offered solely to prove an undisputed conviction element, making the details cumulative and prejudicial. *See U.S. v. Spletzer*, 535 F.2d 950, 956 (5th Cir. 1976); *Old Chief v. U.S.*, 519 U.S. 172, 174 (1997). Here, the criminal proceeding arose from the very assault at issue, and Plaintiff does not offer it to prove Le's conviction. Her participation in the investigation and prosecution, including testifying at trial and Le's flight during that trial, is independently relevant to her damages.[3]

[3] *Ellsworth* and *DePuy* are similarly inapposite. *Ellsworth* concerned use of a plaintiff's unrelated prior sexual conviction to impeach his credibility. *Ellsworth v. Prison Health Servs., Inc.*, 2013 WL 6587876, at *4–5 (D. Ariz. Dec. 12, 2013). And *DePuy* involved unrelated bribery by third-party subsidiaries offered to suggest the defendant's propensity for wrongdoing. *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 784–

Finally, if the conviction itself is admitted, the jury should also hear the conviction was affirmed on appeal. Plaintiff will not litigate the substance of the appellate proceedings. But if the jury hears about the conviction, it should not be left with the misleading impression that the conviction may later have been overturned or otherwise undermined.

**B. Uber's response to law enforcement is independently relevant.**

Portions of the investigation are also relevant because they concern Uber's conduct, specifically, its own response to law enforcement. Part of Uber's defense is that it deactivated Le right when it learned about his arrest for assaulting Plaintiff. According to Uber, this shows that it responds appropriately to sexual assault incidents (and therefore suggests to the jury that the previous reports to Uber about Le were not credible).

Plaintiff is entitled to respond by showing how Uber *actually* responded to the assault—by flouting a subpoena for records. [redacted]

That history is particularly relevant because Uber now seeks to use the information it did not provide to law enforcement to challenge the assault. [redacted] Uber should not be permitted to use evidence it failed to provide to law

---

85 (5th Cir. 2018). Plaintiff does not seek to introduce unrelated bad acts to establish propensity; she seeks evidence concerning the investigation and prosecution of the assault underlying this action for independently relevant purposes, including her damages. Nor does *Gulbranson* apply because Plaintiff does not offer the post-assault proceedings to establish Uber's pre-assault knowledge. *See Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*, 921 F.2d 139, 142 (8th Cir. 1990).

enforcement to attack the investigation or Plaintiff's account while simultaneously preventing Plaintiff from explaining that investigators requested Uber's records and did not receive that evidence.

Uber's hearsay authorities do not justify exclusion. Plaintiff does not contend that every statement in every police report is admissible for its truth. Rule 803(8), however, permits qualifying factual findings from a legally authorized investigation, and Reinhardt may testify concerning matters within his personal knowledge. *See* Fed. R. Evid. 803(8); *Sanders v. Sky Transp., LLC*, 569 F. Supp. 3d 455, 458–59 (E.D. Tex. 2021). Particular hearsay objections can be addressed when the evidence is offered at trial.

Rule 403 likewise does not support Uber's sweeping request. Again, Plaintiff will not present every police report, witness statement, or page of the criminal-trial transcript. But Uber should not be permitted to use selected portions of the investigation and criminal proceedings to challenge Plaintiff while preventing her from presenting the context for those same materials and the portions of those proceedings that contributed to her damages.

## IV. Uber's Women Driver Preferred Option

Uber seeks to exclude all evidence concerning its Women Driver Preferred option on the theory that there is no evidence the feature would have been used for Plaintiff's ride. That is false. H.M., the person who actually ordered the ride, [redacted] Because this evidence is relevant to feasibility and causation, Uber's motion should be denied.

### A. H.M.'s testimony establishes that the option would have been used for Plaintiff's ride.

[redacted]

[redacted] In any event, Plaintiff did not order the subject ride—H.M. did. And H.M.'s testimony makes this evidence relevant.

**B. The evidence is relevant to feasibility and causation.**

Uber acknowledges that the Court previously declined in *Dean* to exclude evidence that similar gender-matching options were available in foreign markets before being launched in the United States, finding that such evidence was relevant to feasibility. Indeed, Uber had implemented women-matching options in multiple countries years earlier and possessed internal data showing that female riders preferred female drivers. Yet Uber did not offer that option in the United States until years later.

That evidence remains relevant here. The issue is not merely that Uber eventually launched Women Driver Preferred domestically in 2025. The evidence includes Uber's pre-incident implementation of women-matching options in other markets, which bears directly on feasibility. And unlike the speculative causation Uber portrays in its motion, [redacted]

Rule 403 does not justify exclusion. This evidence can be presented narrowly without the "mini-trials" Uber predicts concerning every regulatory or operational aspect of the program. Plaintiff can show that comparable women-matching options existed before the incident (evidence the Court already found relevant in *Dean*), and that [redacted]

Nor does Rule 407 support exclusion. Uber's pre-incident implementation of comparable women-matching options in foreign markets is not a subsequent remedial measure at all. *Trepagnier* and *Williams v. J.B. Hunt* therefore do not apply to that evidence; both involved measures adopted after the events at issue and attempts to use those later measures to prove earlier negligence. *See Trepagnier v. Alimak Hek, Inc.*, 784 F. App'x 195, 199 (5th Cir. 2019); *Williams v. J.B. Hunt Transp., Inc.*, 151 F.4th 1020, 1037–38 (9th Cir. 2025). And to the extent Uber disputes whether a women-matching option was feasible before Plaintiff's assault, Rule 407 expressly permits evidence of subsequent measures to prove feasibility when controverted. Fed. R. Evid. 407.

**V. Safety Risk Assessed Dispatch ("S-RAD") Program**

Plaintiff largely agrees that S-RAD will not be at issue in this trial. But Uber may not rely on that to exclude other relevant evidence merely because it has some connection to S-RAD.

---

[4] Uber's cases are distinguishable. *Williams* involved nearly a decade of collateral tax history whose limited probative value risked multiple mini-trials, and *Tennison* involved disputed allegations by nonparties concerning separate incidents of workplace harassment. *See U.S. v. Williams*, 30 F.4th 263, 267–68 (5th Cir. 2022); *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689–90 (9th Cir. 2001). Here, Plaintiff need not litigate collateral incidents. The evidence is narrow: Uber offered comparable women-matching options before Plaintiff's assault, and H.M. testified that she would have selected a female driver. Those facts directly bear on feasibility and causation.

Here is the problem. Plaintiff contends that (on top of the criminal record and reported misconduct) Victor Le's driving history put Uber on notice that he was dangerous. Specifically, [redacted]

So there is no reason S-RAD needs to be mentioned at all, unless Uber challenges that it was feasible [redacted]. If Uber contests that feasibility, Plaintiff must be permitted to introduce the evidence necessary to establish it. This approach avoids the Rule 403 concerns Uber identifies while preserving relevant evidence concerning what Uber knew, or could know, about Le before the assault. Likewise, if Uber seeks to admit evidence of S-RAD to show "good acts" to mitigate punitive damages, Plaintiff should be permitted to elicit testimony that the technology was available to Uber before Plaintiff's assault, and to discuss the many limitations that Uber has imposed to ensure zero business impact from this safety tool.

## VI. Uber's Advertising or Marketing

Uber seeks categorical exclusion of its advertising and marketing on the theory that neither Plaintiff nor H.M. relied on Uber's safety representations in connection with Plaintiff's Uber ride. This argument is both irrelevant and wrong.

First, the argument is irrelevant because Uber's marketing goes to its negligence, both in showing how Uber encouraged intoxicated guest rides even though it knew them to be unusually dangerous, and in showing how Uber marketed its background checks despite knowing how ineffective those checks were at keeping dangerous drivers off its platform.

Second, the argument is false because [redacted]

[redacted] Uber's marketing is also independently relevant to the reasonableness of its driver-screening practices and its promotion of Uber to guest riders.

**A. Uber's marketing is relevant to show negligence and gross negligence.**

Uber's marketing shows that it anticipated and even encouraged the exact kind of ride that happened in this case: a woman, by herself, late at night, intoxicated, who was a "guest rider," i.e., not the account holder who ordered the ride (and so had no access to Uber's much-touted safety tools). [redacted] That evidence goes directly to Uber's negligence and gross negligence. Letting a dangerous person like Victor Le drive for Uber is irresponsible; but it is more irresponsible—and more akin to conscious indifference—when a company knows that Le will be driving in circumstances that the company itself has identified as the most dangerous, and nevertheless actively promotes. No doubt Uber will suggest to the jury that it was Plaintiff's fault for getting into an Uber by herself, intoxicated, without the ability to access the Uber App if something went wrong. Uber's marketing directly rebuts that argument.

Uber's marketing also goes to the reasonableness of Uber's background checks. Uber advertised to the public in the Fort Worth area specifically: [redacted]

[redacted] Uber will defend that choice as reasonable; its own marketing shows that it knew the choice was not.

**B. H.M. directly connects Uber's safety marketing to the ride in this case.**

Even if the relevance of marketing evidence required a more specific connection to this ride in particular, the evidence shows that too. Uber emphasizes that [redacted]

More importantly, [redacted]

[redacted] Uber's marketing therefore connects directly to Plaintiff's Uber ride.

Uber's reliance on *Johnson* and *Becker* is misplaced. In *Johnson*, neither the plaintiff nor her prescribing physician had seen or relied on the challenged drug marketing, so the proposed marketing expert testimony lacked any connection to the prescribing decision. *Johnson v. Wyeth LLC*, 2012 WL 1150857, at *3 (D. Ariz. Apr. 5, 2012). *Becker* likewise involved a negligent-misrepresentation claim where the plaintiff failed to establish reliance or any causal link between the alleged representation and his claimed loss. *Becker v. PaineWebber, Inc.*, 962 F.2d 524, 527 (5th Cir. 1992). Here, H.M. testified that she had seen Uber's safety advertising, believed its background-check representations, and relied on those representations in viewing Uber as a safe option.

Uber's reliance on Plaintiff's initial reference to [redacted] into a basis for categorically excluding Uber's marketing is meritless.[5]

**VII. Driver's Alleged "Propensity" to Commit Sexual Assault**

Uber moves to exclude evidence concerning another sexual-assault allegation on the theory that Plaintiff would use the evidence only to prove propensity. Plaintiff does not seek to offer other-act evidence simply to argue that Le is a bad person and therefore must have assaulted Plaintiff. But depending on how Uber defends Le's conduct at trial, evidence concerning his prior conduct may be admissible for non-propensity purposes under Rule 404(b)(2), and to rebut any attempt by Uber to portray Le as non-predatory or otherwise vouch for his character.

Rule 404(b) does not categorically exclude evidence of other acts. It expressly permits such evidence for other purposes, including intent, plan, absence of mistake, and lack of accident. Fed. R. Evid. 404(b)(2). Here, M.S. reported to police and later testified at Le's criminal trial that Le sexually assaulted her in 2019 after taking advantage of her intoxication at a bar. Ex. 17, Transcript of Testimony of M.S. at 115-119, The State of Texas v. Victor Huynh Le, No. 07-22-

[5] *Doe* and *Bryant* are also distinguishable. In *Doe*, the grandparents developed an independent relationship with the volunteer after meeting him through the Boys Club, breaking the causal connection between the club's representations and the later assault. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479–81 (Tex. 1995). *Bryant* likewise involved parents who repeatedly hired a babysitter over a period of months before the abuse occurred. *Bryant v. S.A.S.*, 416 S.W.3d 52, 58–60 (Tex. App. Houston [1st Dist.] 2013, pet. denied). Here, there was no comparable intervening relationship or lapse of time: H.M. selected Uber to transport Plaintiff that night, placed Plaintiff directly into Le's vehicle, and the assault occurred during that very ride. *In re Xarelto* is likewise distinguishable because the court excluded marketing that the relevant prescribing physician had not seen or relied upon. *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2017 WL 11718344, at *4 (E.D. La. Apr. 18, 2017). Here, H.M. testified to the opposite.

00287-CR (372d Jud. Dist. Ct. Tarrant County, Tex. 2022).[6] The M.S. sexual assault may become admissible under Rule 404(b)(2) depending on Uber's defense. [redacted] If Uber argues, for example, that Le misunderstood Plaintiff's conduct, believed she consented, or was somehow misled by her intoxication, the M.S. evidence bears directly on intent, plan, and absence of mistake—not merely propensity.

Uber's assertion that the incidents are too dissimilar cannot support exclusion before trial. That argument depends on assumptions about what evidence will be presented concerning Plaintiff's assault, and how Uber will characterize Le's conduct.[7]

## VIII. Driver's "Unrelated" Alleged Misconduct

Uber seeks to exclude a central part of Plaintiff's negligence case: Uber's 2016 knowledge of Victor Le and its decision to reject him from the platform at that time. Plaintiff does not oppose exclusion of allegations that Le failed to return DJ equipment or his sister's laptop, failed to pay child support, or carried credit-card debt. But the 2016 incident is different. Uber's description of that incident as merely an allegation that Le "overcharged" a passenger materially understates what Uber was told and what Uber itself did in response. As to that incident. Uber's motion should be denied.

### A. The 2016 incident is relevant to Uber's knowledge, screening, and failure to prevent Le from rejoining Uber's platform.

[6] Le's assault of M.S. is also likely admissible under Rule 415. That rule permits relevant evidence of previous sexual assaults where the assailant is a party. Fed. R. Evid. 415(a). And at least two courts have explained that the same rule applies where the plaintiff has, rather than sued the assailant, sued another party she asserts is liable as a result of the assault. *See James v. Tilghman*, 194 F.R.D. 398, 401 (D. Conn. 1999); *Cleveland v. KFC Nat. Mgmt. Co.*, 948 F. Supp. 62, 64 (N.D. Ga. 1996).

[7] *J.S.* does not support exclusion under Rule 404(b). Although *J.S.* held that Rule 415 did not apply where the alleged assailant was a nonparty, it separately recognized that Rule 404(b) permits other-act evidence offered for a proper non-propensity purpose. *J.S. ex rel. N.S. v. Children of Am., Inc.*, 696 F. App'x 39, 40-41 (2d Cir. 2017). The court affirmed exclusion there only after considering the similarity of the incidents and concluding that the other act had little probative value for the asserted non-propensity purpose. *Id.* Here, Plaintiff seeks to offer the evidence to show intent, plan, absence of mistake, or lack of accident, the purposes expressly identified in Rule 404(b)(2).

[redacted], [redacted]

[redacted]

The Jay incident is unquestionably relevant, [redacted]

Thus, even accepting Uber's present characterization of the incident as "street hailing," the evidence remains highly probative. Uber itself treated the conduct as a safety issue and intended that Le not simply return under another account. This evidence is directly relevant to show Uber's negligence and is relied upon by multiple experts.

This evidence is not offered to show that Le had a bad character and therefore later assaulted Plaintiff. Rather, it goes to what Uber knew about Le, the action Uber previously took against him, deficiencies Uber knew existed in its account-control systems, and why a person Uber had already rejected was nevertheless permitted to obtain a new driver account. Rule 404 does not exclude evidence offered for such purposes.[8] Texas law likewise recognizes the relevance of pre-hire misconduct known or knowable to the employer. *See Arrington's Estate v. Fields*, 578 S.W.2d 173, 177–78 (Tex. Civ. App. 1979) (holding a security guard's prior criminal record admissible in a negligent-hiring action to show the employer's failure to exercise reasonable care in employing him).

---

[8] Uber's authorities are distinguishable. *DePuy* involved unrelated bribery by non-party corporate affiliates that was used to invite a propensity inference against the defendant. *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 784–85 (5th Cir. 2018). Here, the 2016 incident is offered not to show Le's propensity for misconduct, but to establish Uber's own pre-incident knowledge of Le, its decision to reject him, and its later failure to prevent him from rejoining the platform. *Phillips* is even further removed: it held that an employee's post-accident traffic conviction was irrelevant to what the employer knew or should have known when it hired her. *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 646 n.4 (S.D. Tex. 2016). The 2016 incident here occurred years before Plaintiff's assault, was reported directly to Uber, and prompted Uber itself to reject Le from the platform.

**C. The remaining allegations may be excluded unless Uber opens the door to Le's character.**

Plaintiff does not intend to introduce evidence that Le allegedly failed to return DJ equipment or his sister's laptop, failed to pay child support, or had credit-card debt. The evidence concerning PTSD or aggression is different if Uber or Le affirmatively places his character, temperament, or supposed lack of dangerousness at issue. And if Le vouches for his own character, relevant specific instances of conduct may become proper subjects of cross-examination under Rule 405(a).

## IX. Media Reports Involving Uber That Post-Date The *Dean* Trial

Uber's motion should be denied with respect to statements Uber made to the New York Times concerning Victor Le and the very incident at issue in this case. Those statements are not offered as independent journalistic accounts of unrelated allegations; rather, they are admissible statements Uber made concerning Victor Le, its investigation of him, and the information in its possession. *See, e.g., Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1050 (N.D. Cal. 2006) (holding statements made by police chief in newspaper were admissible as a party opponent admission); *Nano-Proprietary, Inc. v. Canon Inc.*, 2007 WL 9747591 (W.D. Tex. Feb. 28, 2007) (holding defendant's statements to the press were admissible party opponent admissions).

Specifically, in a December 2025 article, [redacted]

The article also addressed a 2017 report concerning Le posing as an Uber driver in order to sexually assault a woman. [redacted] Those facts are

directly relevant to issues Uber itself has placed in dispute, including what information concerning Le existed in Uber's systems, the adequacy of Uber's efforts to locate prior reports concerning him, and the accuracy of Uber's characterization of those events.

Indeed, the Court declined to categorically exclude media-report evidence in *Dean* and instead directed that admissibility depend upon the purpose for which particular evidence was offered. The Court explained that the appropriate inquiry is whether the particular evidence is connected to the case and sufficiently probative, including whether a limiting instruction can address any potential prejudice. (*See* Ex. 23, Jan. 6, 2026 Tr. at10:5-23) That same approach applies here.[9]

**X. "Inflammatory" Remarks About Uber's Defense**

Uber asks the Court to bar Plaintiff from accusing Uber or its counsel of "victim blaming," "shaming tactics," or intimidation, relying principally on a passage in Thomas Tremblay's expert report. To be clear, Plaintiff will not say that Uber's lawyers are bad people, that they are improperly litigating this case or make any similar "inflammatory" remarks. But, as explained in the opposition to Uber's motion to exclude Mr. Tremblay's testimony, Uber cannot prevent Plaintiff or Mr. Tremblay from rebutting defense arguments that invoke the very rape myths, victim-blaming assumptions, or misconceptions about sexual-assault victims that Tremblay is qualified to address given his experience investigating sexual assault cases. Expert testimony regarding victim behavior patterns is admissible to counter defense strategies that rely on victim-blaming tropes or exploit typical trauma responses as evidence of fabrication. *See U.S. v. Young*, 316 F.3d 649, 655, 658-659 (7th Cir. 2002) (affirming the admission of expert testimony to explain counterintuitive responses in victims of domestic violence, e.g., commonly recant their accusations and have limited ability to perceive means of escape; the testimony was

[9] Uber's reliance on *NeSmith*, *Gulbranson*, and *Cardona* is misplaced. *NeSmith* excluded post-incident articles concerning other inmate suicides and unrelated litigation, whereas the statements here concern Le himself and Uber's own investigation of the reports at issue in this case. *See NeSmith v. Cnty. of San Diego*, 2022 WL 272011, at *13 (S.D. Cal. Jan. 28, 2022). *Gulbranson* held only that post-incident knowledge could not establish what the defendant knew before the injury; Plaintiff does not offer Uber's later statements for that purpose. *See Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*, 921 F.2d 139, 141-42 (8th Cir. 1990). And *Cardona* involved an attempt to present an article, headlines, excerpts, and an unauthenticated video to the jury, not the limited use of a party's own statements through corporate testimony. *See Cardona v. Cnty. of Los Angeles*, 2025 WL 4227217, at *4 (C.D. Cal. Dec. 16, 2025).

helpful to the jury in determining how to credit witnesses); *U.S. v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997) (affirming the admission of rebuttal testimony regarding typical characteristics of abuse victims), *abrogated in part on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Unfortunately, Uber also repeats its accusation that Plaintiff's counsel has engaged in a coordinated media campaign against Uber's lawyers. That accusation has already been addressed. In the August 13 Joint Case Management Statement, Plaintiffs expressly condemned threats against Uber's attorneys but explained that Uber's attempt to attribute those threats to Plaintiffs' counsel was baseless and offensive. Plaintiffs further explained that the New York Times article was an independent investigative report and that Judge Cisneros had already found "zero evidence that any lawyer from the MDL was involved in any leak." (ECF 7060 at16). Uber should not repeat unsupported accusations and then use them as a basis to restrict otherwise proper expert rebuttal.

What matters here is Tremblay's expertise on a highly relevant issue. [redacted]

That expertise is directly relevant to Uber's and its experts' attempt to undermine Plaintiff's account by invoking misconceptions about how a "real" sexual-assault victim supposedly behaves, remembers, reports, communicates, or reacts. Tremblay is qualified to explain how such assumptions can distort an investigation and lead an investigator away from an objective evaluation of the available evidence. His report reflects that his methodology is

grounded in decades of investigating sexual assaults and advising investigators, prosecutors, and agencies on proper sexual-assault response and investigation.

If Uber's witnesses or experts suggest (as many of them do) that Plaintiff's conduct, post-assault behavior, etc. makes her account less reliable in a manner that implicates recognized misconceptions about sexual-assault victims, Tremblay must be permitted to explain why those assumptions are not sound methods for evaluating a sexual-assault report.

**XI. Executive Compensation**

As explained in Plaintiff's Opposition to Defendants' *Daubert* Motion concerning Mr. Johnson, executive compensation is relevant to punitive damages. But even if it were not, the structure of Uber executives' compensation is independently relevant to Plaintiff's negligence claims because it shows what conduct Uber financially incentivized and how Uber rewarded growth and financial performance over safety.

[redacted]

[redacted]

[redacted]

[redacted]

Therefore, the evidence goes to negligence and gross negligence (as a predicate for punitive damages), whether or not it would independently come in for punitive damages.[10] *McKiver and Avondale*, cited by Uber, support that distinction. *McKiver* recognized that executive-compensation evidence was relevant to whether a defendant's refusal to change its policies and technologies was a "willful choice," while holding that it was not relevant to determining the amount of punitive damages under North Carolina law because parent companies, not the defendant, paid those salaries. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 976 (4th Cir. 2020). *Avondale* likewise permitted executive-compensation evidence to show bias and allowed its use for other purposes upon a proper showing. *Avondale Mills, Inc. v. Norfolk S. Corp*., 2008 WL 6953958, at *1 (D.S.C. Jan. 16, 2008).[11]

**CONCLUSION**

For these reasons, Defendants' motions should be denied as described herein.

---

[10] Uber's cited cases do not establish that, as a matter of Texas law, executive compensation is irrelevant to punitive damages. In *Graef v. Chem. Leaman Corp*., 106 F.3d 112, 119 (5th Cir. 1997), the court found only that evidence of the "total annual salary" the defendant "paid to all of its officers" was irrelevant. And in *Farah Mfg. Co. v. Alvarado*, 763 S.W.2d 529, 534–35 (Tex. App. El Paso 1988), aff'd, 830 S.W.2d 911 (Tex. 1992), the court excluded evidence of "the financial ability of a person not obligated to pay any award in the suit before the jury."

[11] Uber's other cases provide no additional support. *Wal-Mart* and *In re Bella* concerned financial or net-worth evidence relevant only to punitive damages where the plaintiff had not established a viable exemplary-damages claim. *See Wal-Mart Stores, Inc. v. Cordova*, 856 S.W.2d 768, 774 (Tex. App. El Paso 1993, writ denied); *In re Bella Corp*., 648 S.W.3d 373, 377-78 (Tex. App. Tyler 2021, orig. proceeding). *Godo Kaisha* involved only nominal relevance of executive compensation to a patent hypothetical-negotiation analysis. *Godo Kaisha IP Bridge 1 v. Broadcom Ltd*., 2017 WL 2844646, at *3 (E.D. Tex. May 19, 2017).

Dated: September 22, 2026

Respectfully Submitted,

By: /s/ *Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: /s/ *Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: /s/ *Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: September 22, 2026 By: */s/Roopal P. Luhana*