[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 5

# TABLE OF CONTENTS

**Page**

**I. RESPONSE TO MIL NO. 1 .......... 1**

A. Plaintiff's [redacted] .......... 1

B. Plaintiff's [redacted] .......... 2

C. Plaintiff's [redacted] .......... 3

D. Plaintiff's [redacted] .......... 5

E. Issues Related To [redacted] .......... 5

F. Irrelevant Portions of [redacted] .......... 6

G. Irrelevant [redacted] .......... 7

H. Plaintiff's [redacted] .......... 7

I. Plaintiff's References To [redacted] .......... 7

**II. RESPONSE TO MIL NO. 2: "SPECULATION REGARDING THE BASIS FOR VICTOR LE'S CRIMINAL CONVICTION." .......... 9**

**III. RESPONSE TO MIL NO. 3: EXCLUDE "ARGUMENT CHALLENGING THE ASSAULT USING DATA THAT UBER IMPROPERLY CONCEALED FROM LAW ENFORCEMENT." .......... 11**

**IV. RESPONSE TO MIL NO. 4: EXCLUDE "EVIDENCE THAT VICTOR LE WAS FINED $500." .......... 12**

**V. RESPONSE TO MIL NO. 5: "EXCLUDE ARGUMENT OR EVIDENCE THAT PLAINTIFF [redacted]." .......... 12**

**VI. RESPONSE TO MIL NO. 6: "EXCLUDE EVIDENCE OR ARGUMENT CONCERNING SETTLEMENT DISCUSSIONS, ATTEMPTS TO SETTLE, AND PLAINTIFF'S STATEMENTS REGARDING A POSSIBLE SETTLEMENT." .......... 14**

**VII. RESPONSE TO MIL NO. 7: "EXCLUDE EVIDENCE RELATED TO PLAINTIFF'S IRRELEVANT INTERACTIONS WITH LYFT." .......... 16**

**VIII. RESPONSE TO MIL NO. 8: "EXCLUDE ARGUMENT OR EVIDENCE THAT NON-PARTY CHECKR IS AT FAULT FOR PLAINTIFF'S INJURIES OR THAT CHECKR IS A GOOD, REPUTABLE COMPANY." .......... 18**

**IX. RESPONSE TO MIL NO. 9: EXCLUDE EVIDENCE REGARDING "IRRELEVANT SAFETY FEATURES AND INITIATIVES." ....................................20**

**X. RESPONSE TO MIL NO. 10: EXCLUDE EVIDENCE REGARDING "UBER'S SAFETY REPORTS." ....................................21**

**XI. RESPONSE TO MIL NO. 11: "EXCLUDE ARGUMENT OR EVIDENCE THAT THE SEXUAL ASSAULT AND SEXUAL MISCONDUCT INCIDENT REPORT RAW DATA THAT UBER HAS PRODUCED FOR 2017-2024 INCLUDES INCIDENTS THAT ARE 'INVALID' OR HAVE BEEN RECATEGORIZED." .........22**

**XII. RESPONSE TO MIL NO. 12: "EXCLUDE EVIDENCE OR ARGUMENT REGARDING UBER'S 2025 SEXUAL ASSAULT AND MISCONDUCT DATA, INCLUDING ALLEGED 'INVALID' REPORTS." ....................................23**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Agrium U.S., Inc. v. Clark*,
179 S.W.3d 765 (Tex. Ct. App. 2005) ....................21

*Ansari v. Jimenez*,
176 F.4th 494 (6th Cir. 2026) ....................12

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)....................14

*Aviation Advisors Int'l, Inc. v. TransAmerica Inv. Grp., Inc.*,
No. 8:09-CV-588-T-23AEP, 2010 WL 11507332 (M.D. Fla. Apr. 20, 2010) ....................15

*Behler v. Hanlon*,
199 F.R.D. 553 (D. Md. 2001)....................15, 16

*Brazos River Auth. v. GE Ionics, Inc.*,
469 F.3d 416 (5th Cir. 2006) ....................13

*Cameron v. Werner Enters., Inc.*,
No. 2:13-CV-243-KS-JCG, 2016 WL 3030181 (S.D. Miss. May 25, 2016) ....................15

*Carter v. Morehouse Par. Sch. Bd.*,
441 F.2d 380 (5th Cir. 1971) ....................11

*Commonwealth Cap. Corp. v. City of Tempe*,
No. 2:09-CV-00274 JWS, 2011 WL 1429624 (D. Ariz. Apr. 14, 2011)....................15

*Cruz v. Cervantez*,
96 F.4th 806 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 331 (2024)....................12

*Gaudin v. Shell Oil Co.*,
132 F.R.D. 178 (E.D. La. 1990)....................5

*Grigoryan v. Barr*,
959 F.3d 1233 (9th Cir. 2020) ....................10

*Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*,
No. 2:10-CV-260-JRG, 2013 WL 5273326 (E.D. Tex. Sept. 18, 2013), *aff'd*, 577 F. App'x 998 (Fed. Cir. 2014)....................9

*Lang v. DirecTV, Inc.*,
No. 10–1085 "G"(1), 2011 WL 6934607 (E.D. La. Dec. 30, 2011)....................3

*Le v. Vannoy*,
No. 19-9597, 2022 WL 22863621 (E.D. La. Oct. 6, 2022) ........................................................8

*Lindsey v. Normet*,
405 U.S. 56 (1972)........................................................................................................2, 4, 10

*Lozada v. Posada*,
718 S.W.3d 262 (Tex. 2025).....................................................................................................20

*Lyondell Chem. Co. v. Occidental Chem. Corp.*,
608 F.3d 284 (5th Cir. 2010) ....................................................................................................15

*Manoukian v. BMW of North America, LLC*,
No. CV 21-8813-KS, 2023 WL 2558397 (C.D. Cal. Feb. 9, 2023) .........................................5

*Murman v. Murman*,
No. 24-CV-01439-RMI, 2026 WL 765168 (N.D. Cal. Mar. 18, 2026)..................................14

*Parker v. Tyson Foods, Inc.*,
499 F. Supp. 3d 297 (S.D. Miss. 2020)....................................................................................12

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) ..................................................................................................15

*Ruderman v. Rolls-Royce Motor Cars NA, LLC*,
No. 2:20-cv-04529-JWH-RAOx, 2021 WL 4193194 (C.D. Cal. July 12, 2021) ....................16

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008)..................................................................................................................12

*Stevenson v. Holland*,
504 F. Supp. 3d 1107 (E.D. Cal. 2020)......................................................................................4

*Sumrall v. Ensco Offshore Co.*,
No. 2:17-CV-48-KS-MTP, 2018 WL 2224074 (S.D. Miss. May 15, 2018) ...........................19

*Sun v. Xu*,
99 F.4th 1007 (7th Cir. 2024) .....................................................................................................3

*Treminio v. Crowley Mar. Corp.*,
No. 3:22-cv-00174-CRK-PDB, 2024 WL 382399 (M.D. Fla. Feb. 1, 2024) ............................8

*U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*,
896 F.2d 949 (5th Cir. 1990) ....................................................................................................15

*United States v. Decinces*,
808 F.3d 785 (9th Cir. 2015) ....................................................................................................18

*United States v. DePape*,
2026 WL 821891 (9th Cir. Mar. 25, 2026)....................18

*United States v. Heard*,
709 F.3d 413 (5th Cir. 2013)....................3

*United States v. King*,
93 F.4th 845 (5th Cir. 2024), *cert. denied sub nom. Diggs v. United States*, 145 S. Ct. 213 (2024)....................5, 14

*Vaughn v. Hobby Lobby Stores, Inc.*,
539 F. Supp. 3d 577 (W.D. La. 2021)....................6

**Statutes**

Tex. Civ. Prac. & Rem. Code § 41.003(a)(3)....................20

**Rules**

Fed. R. Evid. 401....................12, 19

Fed. R. Evid. 402....................19

Fed. R. Evid. 403.................... *passim*

Fed. R. Evid. 404(b)....................5

Fed. R. Evid. 408....................14, 15

Fed. R. Evid. 412....................1, 2, 6

Fed. R. Evid. 412(a)....................1, 2, 7

Fed. R. Evid. 607....................5, 9

Fed. R. Evid. 608....................5

Fed. R. Evid. 703....................4

Fed. R. Evid. 801(d)(2)(A)....................17

Fed. R. Evid. 803....................17

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit the following responses to Plaintiff's omnibus motions *in limine*.

### I. RESPONSE TO MIL NO. 1

### A. Plaintiff's [redacted]

Plaintiff seeks to exclude all evidence and argument related to her [redacted]. Uber recognizes the serious and sensitive nature of the allegations in this case and does not seek to probe Plaintiff's private life or [redacted]. Uber opposes this motion in only one narrow respect: to the extent it would preclude expert testimony—and/or Uber's ability to cross-examine Plaintiff's experts—regarding Plaintiff's [redacted] following the incident at issue, which Plaintiff's experts have placed directly at issue.

Importantly, Uber ***does not*** seek to affirmatively present evidence of Plaintiff's [redacted] before or after the June 2020 assault.[1] But ***three*** of Plaintiff's experts have opined in their reports that Plaintiff's alleged injuries attributable to Uber include the "[redacted]" following the incident at issue. *See* Levy Rep. at 13 (ECF 7356-1); Feltoon Rep. at 10 (ECF 7358-1) (quoting Plaintiff as stating "[redacted]"); Lebowitz Rep. at 36 (Ex. 1) (asserting that "[redacted]"). These opinions are contrary to the record evidence, which reflects that Plaintiff has [redacted] since the incident, including [redacted]. *See, e.g.*, Pl. Dep. 57:9-18 (Ex. 2); Baker Rep. at 9, 14 (ECF 7363-1). In therapy sessions in June and July 2026, Plaintiff [redacted] *See* QLF 001-LHC-000064-69 (Ex. 3). This evidence

---

[1] Plaintiff's [redacted] in the years that followed the incident at issue does not fall within the purview of Federal Rule of Evidence 412, which generally bars the admission of "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).

is relevant not to scrutinize Plaintiff's personal life, but solely to respond to Plaintiff's experts' opinions about Plaintiff's alleged [redacted]. Uber must be permitted to address this discrete issue through cross-examination of Plaintiff's experts and its own rebuttal expert testimony.

Evidence establishing that—contrary to Plaintiff's experts' opinions—Plaintiff has continued to engage [redacted] since the 2020 incident does not fall within the purview of Federal Rule of Evidence 412, which generally bars the admission of "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). Uber does not seek to offer affirmative evidence that Plaintiff [redacted]. But, because Plaintiff's own experts have affirmatively inserted the issue of Plaintiff's experience with [redacted] into this case, Uber is entitled to address these opinions by cross-examining Plaintiff's experts (and offering its own rebuttal expert testimony) about Plaintiff's [redacted] following the 2020 incident. Uber will not refer to [redacted]—in order to avoid any concerns implicated by Fed. R. Evid. 412. However, Uber would be unduly prejudiced in its ability to defend itself at trial if it were restricted from rebutting Plaintiff's experts' own affirmative theory of damages. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (recognizing the due-process right to have the "opportunity to present every available defense") (citation omitted).

**B. Plaintiff's [redacted]**

Plaintiff seeks to exclude deposition testimony from [redacted] P.D. Uber submits that the best way to address the admissibility of this evidence is through the deposition designation process. To the extent the Court prefers to address it on this motion, Uber does not oppose the majority of Plaintiff's motion. Uber will not introduce evidence specifically related to [redacted] before or after the June 2020 sexual assault incident. Uber only opposes the motion to the extent it would bar Uber from: (1) presenting P.D.'s deposition testimony recalling what Plaintiff told him about the assault; and (2) rebutting Plaintiff's experts' opinions that Plaintiff has [redacted] since the assault.

Plaintiff argues that P.D. "lacks personal knowledge to opine on what occurred during or after Plaintiff's Uber ride," but that assertion is contradicted by evidence in the record. Plaintiff identified P.D. as one of the individuals with whom she communicated about the June 2020 sexual assault. *See* 7/22/2026 Seventh Amended Plaintiff Fact Sheet at 17 (Ex. 4). P.D. testified that Plaintiff made statements to him [redacted]." *See* 8/22/2026 P.D. Dep. 36:4-16 (Ex. 5). Uber does not intend to offer P.D.'s testimony to cast doubt on the fact of the assault, but rather as evidence bearing on Plaintiff's credibility and potential bias. Lay opinions regarding another person's "mental state" are permissible if they are based on the witness's objective perception of events. *See United States v. Heard*, 709 F.3d 413, 422 (5th Cir. 2013).

To the extent Plaintiff claims that P.D.'s knowledge is insufficient because he did not [redacted]" P.D.'s degree of knowledge goes to the weight of his testimony, not its admissibility. *See Lang v. DirecTV, Inc.*, No. 10–1085 "G"(1), 2011 WL 6934607, at *9 (E.D. La. Dec. 30, 2011) (noting that "questions regarding the personal knowledge of the [witness], where he does allege that his statements are based on personal knowledge, go[ ] to the weight, rather than the admissibility of the [testimony]") (internal quotation marks and citation omitted). Therefore, this evidence falls well within the bounds of proper percipient witness testimony.

Moreover, P.D.'s testimony is admissible to rebut opinions offered by Plaintiff's own experts about the nature and extent of Plaintiff's alleged damages. As set forth in section I.A, above, to the extent that Plaintiff introduces expert or other evidence that her alleged injuries include the "[redacted]" as a result of the sexual assault incident at issue, Uber is entitled to rebut this claim by introducing evidence relating to Plaintiff's [redacted]., following the June 2020 sexual assault. *See Sun v. Xu*, 99 F.4th 1007, 1018 (7th Cir. 2024).

### C. Plaintiff's [redacted]

Plaintiff seeks to exclude evidence relating to "([redacted]

[redacted]" arguing that such evidence is irrelevant and prejudicial. Mot. at 4. Uber is sensitive to the personal nature of Plaintiff's [redacted] and opposes this motion only to the limited extent it seeks to exclude evidence relating to Plaintiff's [redacted] of Plaintiff. *Id.* A fundamental question at trial will be what caused or contributed to Plaintiff's alleged mental health injuries. Uber's psychiatric expert, Dr. Sarah Baker, explains that Plaintiff's [redacted]," including her symptoms after the June 2020 sexual assault. Baker Rep. at 30 (ECF 7363-1). Because evidence "tends to show that something other than [Uber's] conduct caused" or contributed to those alleged injuries, "the probative value of this evidence is not substantially outweighed under Rule 403." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1138 (E.D. Cal. 2020). Excluding such evidence would prevent Uber from presenting a full defense on the issue of alternative causes, resulting in undue prejudice. *See Lindsey*, 405 U.S. at 66 (recognizing that "[d]ue process requires that there be an opportunity to present every available defense") (citation omitted) .

Moreover, Plaintiff's argument that this evidence constitutes inadmissible hearsay also fails. Mot. at 4. Plaintiff herself testified about instances of [redacted]. *See* 7/22/2026 Pl. Dep. 86:18-87:4 (Ex. 2) ([redacted]); 81:13-24 ([redacted]). Plaintiff also acknowledged that her [redacted] *See id.* 76:6-25 (Plaintiff testified that [redacted]"). Further, to the extent Dr. Baker relies on evidence other than Plaintiff's own testimony in opining on the effects of [redacted] on Plaintiff's mental and emotional health, she is permitted to do so pursuant to Fed. R. Evid. 703. Evidence relating to Plaintiff's [redacted] is plainly relevant to Plaintiff's history of trauma, her mental state, and the causes of her alleged injuries.

### D. Plaintiff's [redacted]

Plaintiff seeks to exclude evidence regarding her [redacted]," Mot. at 4-5, but the law is clear that such evidence is highly probative of Plaintiff's overall credibility and the extent of her claimed injuries. *See Gaudin v. Shell Oil Co.*, 132 F.R.D. 178, 180 (E.D. La. 1990) (denying plaintiff's motion *in limine* to exclude evidence of her credit history and financial transactions because such evidence was admissible to show plaintiff's "improper motive" in bringing her personal injury action). Although Plaintiff argues that evidence [redacted]," Mot. at 5, the mere fact that the evidence is harmful to Plaintiff's case and/or bears on her credibility does not render the evidence unduly prejudicial. *See United States v. King*, 93 F.4th 845, 852 (5th Cir. 2024) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403."), *cert. denied sub nom. Diggs v. United States*, 145 S. Ct. 213 (2024).[2]

Plaintiff also contends that her "[redacted] [does not] bear on her character for truthfulness" and thus should be excluded pursuant to Rule 608(b). Mot. at 5. This argument fails because these matters are not being offered to establish Plaintiff's "character for truthfulness." Fed. R. Evid. 608. Rather, Uber seeks to introduce Plaintiff's [redacted] to test her motives for bringing this lawsuit, which is always a legitimate (indeed, central) topic for cross-examination. *See* Fed. R. Evid. 607 ("Any party . . . may attack the witness's credibility."); Fed. R. Evid. 404(b) ("other . . . wrong[s] or act[s]" are "admissible for another purpose, such as proving motive").

### E. Issues Related To [redacted]

Uber does not oppose this motion.

---

[2] *Manoukian v. BMW of North America, LLC*, No. CV 21-8813-KS, 2023 WL 2558397 (C.D. Cal. Feb. 9, 2023) (cited in Mot. at 5), is not to the contrary. There, the court noted that "impeachment evidence can be quite broad," but nonetheless granted the plaintiff's motion *in limine* without prejudice because it had not been demonstrated "in th[at] case" "why or how, evidence, testimony, or argument regarding [p]laintiff's financial condition would be suitable impeachment evidence . . . ." *Id.* at *2. Here, by contrast, Plaintiff's [redacted] has been directly linked by Uber's expert psychiatrist to Plaintiff's inconsistent statements regarding her alleged injuries, *see* Baker Report ¶ 6(c) (Dr. Baker explaining that "[redacted]) (ECF 7363-1), and undercuts Plaintiff's testimony that she [redacted].

**F. Irrelevant Portions of [redacted]**

Plaintiff seeks to exclude evidence and argument pertaining to her [redacted]. While Uber does not oppose the majority of Plaintiff's motion, it ***does*** oppose Plaintiff's request to exclude evidence concerning [redacted]. Uber acknowledges that this was a deeply distressing experience for Plaintiff. But the traumatic nature of the experience makes this evidence directly relevant to the question of alternative causes of Plaintiff's claimed emotional injuries, and Uber must be permitted to cross-examine Plaintiff's experts—and present its own expert testimony—about the potential contribution of this prior traumatic experience to Plaintiff's reported symptoms.

Plaintiff herself testified that [redacted]" Pl. Dep. 82:5-83:21 (Ex. 2). And in text messages from August 2024 (four years after the incident underlying this lawsuit) Plaintiff compared [redacted]." DOEQLF010055-56 (Ex. 6).

Plaintiff's expert psychologist, Dr. Lebowitz, echoed Plaintiff's description, calling [redacted] Lebowitz Rep. at 24-25 (Ex. 1). And Uber's expert psychiatrist, Dr. Baker, opines that the [redacted]" prior to and after the 2020 assault. Baker Rep. at 30 (ECF 7363-1). Although Plaintiff and her experts now assert that the mental health harms Plaintiff experienced as a result of the [redacted] were minimal, Uber's expert disagrees, creating a highly relevant issue of fact for the jury to decide. *See Vaughn v. Hobby Lobby Stores, Inc.*, 539 F. Supp. 3d 577, 584-85, 591 (W.D. La. 2021) (denying plaintiff's motion *in limine* to exclude evidence of plaintiff's pre-accident stressors, harassment, and medical conditions because such evidence was relevant to show other causes of plaintiff's alleged anxiety, PTSD, and other accident-related mental illnesses).

Further, and contrary to Plaintiff's assertion, the introduction of this evidence does not "trigger[] the protections and procedural requirements of Rule 412." Mot. at 6. The [redacted] are part of the context of that traumatic event, not evidence offered to demonstrate

that Plaintiff "engaged in other sexual behavior" or has a "sexual predisposition." Fed. R. Evid. 412(a). Uber ***does not*** seek to use this evidence to make any argument or inference about Plaintiff's private life, but instead to present evidence of alternative causes of her alleged mental health symptoms. In any event, the Court can cure any possible prejudice by instructing the jury to consider this evidence solely on the question of alternative causation.

**G. Irrelevant [redacted]**

Plaintiff seeks to exclude evidence concerning her [redacted][.]" Mot. at 6. Uber does not oppose the motion with regard to the specific [redacted] identified by Plaintiff, but because Plaintiff has placed her mental health squarely at issue in this litigation, Uber ***does*** oppose any effort to exclude evidence of [redacted] related to Plaintiff's mental health prior to the 2020 assault. The Court should therefore clarify that Plaintiff's motion *in limine* does not apply to any [redacted] related to mental health treatment.

**H. Plaintiff's [redacted]**

Uber does not oppose this motion.

**I. Plaintiff's References To [redacted]**

Plaintiff's motion seeks to exclude evidence related to Plaintiff's testimony that she [redacted], *see* 7/22/2026 Pl. Dep. 85:16-86:2 (Ex. 2), as well as Plaintiff's [redacted]. Mot. at 8-9. Plaintiff argues that such evidence is irrelevant to her claims and is unduly prejudicial because it suggests that Plaintiff [redacted] of the assault at issue. *Id*. Uber respectfully disagrees; the substantial probative value of this evidence for the limited purpose described below far outweighs any claimed prejudice.

***First***, the evidence Plaintiff seeks to exclude is highly relevant to Plaintiff's claims for damages and to her credibility as a witness. Plaintiff's own testimony that she is a [redacted] *see* 7/22/2026 Pl. Dep. 85:16-86:2, bears directly on the reliability of her subjective reports about the nature and extent of her claimed symptoms and whether the 2020 assault—rather than other traumatic incidents and preexisting conditions—caused her alleged mental health injuries. But, as

explained by Uber's expert psychiatrist, Plaintiff's "[redacted]" is in question in light of evidence that she [redacted]," and further complicated by the fact that Plaintiff describes "[redacted] which may have influenced her portrayal of her current symptoms." Baker Rep. ¶¶ 6(c), 147 (ECF 7363-1). Because Plaintiff has put her mental health and the extent of her alleged emotional damages at issue, Uber must be allowed to rebut Plaintiff's assertions about the extent of her alleged injuries with expert evidence about her [redacted].

In addition, Plaintiff's [redacted] bear directly on Plaintiff's credibility, the credibility of other witness testimony, and the overall consistency of her narrative. Plaintiff testified that she was so severely traumatized by the assault at issue in this case that she [redacted]. 7/22/2026 Pl. Dep. 34:9-16. Plaintiff's sister also testified that Plaintiff [redacted] following discussion of the June 2020 assault at her deposition. 8/7/2026 J.D. Dep. 149:14-24 (Ex. 7). These statements are belied by the fact that Plaintiff repeatedly [redacted]. *See* DOE QLF 008687 (Ex. 8). In fact, Plaintiff told friends that she was [redacted]. *See* DOE QLF 008955 (Ex. 9); *see Le v. Vannoy*, No. 19-9597, 2022 WL 22863621, at *7 (E.D. La. Oct. 6, 2022) ("[E]xtrinsic evidence contradicting a witness's testimony is admissible when offered solely to attack the credibility of a witness"), *R. & R. adopted by* 2024 WL 3742741 (E.D. La. Aug. 8, 2024); *see also Treminio v. Crowley Mar. Corp.*, No. 3:22-cv-00174-CRK-PDB, 2024 WL 382399, at *7 (M.D. Fla. Feb. 1, 2024) (evidence that plaintiff trained for press conferences with a media contact is admissible because "the evidence demonstrates Plaintiff's motivations underlying her lawsuit that can be used to impeach her credibility at trial").

***Second***, there is nothing unduly prejudicial about this evidence. Evidence is not prejudicial "merely because it is adverse to the moving party." *Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:10-CV-260-JRG, 2013 WL 5273326, at *9 (E.D. Tex. Sept. 18, 2013), *aff'd*, 577 F. App'x 998 (Fed. Cir. 2014). Although Plaintiff argues that her [redacted] "would invite the jury to make an unsupported character inference," Mot. at 9, Uber only seeks to offer this evidence to impeach the credibility of Plaintiff's testimony and allegations, not as character evidence. *See* Fed. R. Evid. 607 ("Any party . . . may attack the witness's credibility."). Further, excluding this evidence would unfairly prejudice Uber by depriving the jury of essential information needed to assess the veracity of Plaintiff's testimony and claims.

## II. RESPONSE TO MIL NO. 2: "SPECULATION REGARDING THE BASIS FOR VICTOR LE'S CRIMINAL CONVICTION."

As set forth in Uber's pending motion to exclude evidence from the criminal proceedings against Mr. Le, Uber does not contest that Victor Le, the driver involved in the incident at issue of this case, was criminally convicted of assaulting Plaintiff during a guest ride arranged through the Uber platform on June 9, 2020. *See* Uber's Omnibus MIL, ECF 7327, at 9-11 (incorporated by reference herein). As a result, Uber has moved to exclude evidence regarding Mr. Le's criminal case beyond the fact of Mr. Le's conviction and incarceration, including the police investigation files, the criminal trial transcripts, references to testimony provided during trial, and Mr. Le's appeal of the conviction as irrelevant, cumulative, and unduly prejudicial. *Id*. Uber agrees with Plaintiff that the presentation of evidence about the criminal case against Mr. Le "would improperly convert this civil trial into a time-consuming collateral" mini-trial regarding Mr. Le's "criminal prosecution" that has no bearing on Plaintiff's claims against Uber. Mot. at 9-10. Thus, to the extent Uber's motion is granted, it does not oppose Plaintiff's MIL No. 2.

If, however, the Court denies Uber's motion to preclude Plaintiff from introducing evidence about the criminal investigation of Mr. Le and the trial proceedings, and Plaintiff introduces evidence related to the criminal trial, Plaintiff will have opened the door to evidence and argument related to the trial proceeding. Indeed, fairness demands that ***Uber*** be similarly allowed to present evidence about the

criminal investigation and trial, including evidence regarding the basis for Mr. Le's conviction and the police investigation that led to his criminal arrest.[3]

***First***, if Plaintiff is allowed to present irrelevant and cumulative evidence about the police investigation and criminal trial of Mr. Le, due process demands that Uber be permitted to rebut the highly prejudicial nature of such evidence by cross-examining Plaintiff's witnesses about, and presenting its own evidence related to, the criminal trial. *See Lindsey*, 405 U.S. at 66; *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) (due process "at a minimum, includes a reasonable opportunity to present and rebut evidence and to cross-examine witnesses"). This is particularly true given that Uber was not a party to, or involved in any way in, the criminal proceedings against Mr. Le and did not have the opportunity to challenge evidence presented in that case. Further, allowing Uber to respond to evidence presented by Plaintiff about the criminal proceedings would not, as Plaintiff contends, "invite this jury to disregard or discount" the criminal verdict. Mot. at 10. As set forth above, Uber does not intend to contest the verdict and, in fact, is seeking to exclude all other evidence about Mr. Le's criminal proceedings but for the conviction.

***Second***, to the extent Plaintiff is permitted to introduce evidence related to the police investigation that resulted in Mr. Le's criminal arrest, including proposed testimony by the police sergeant involved in the criminal investigation (despite Uber's pending motion to exclude such evidence), fairness also demands that Uber be allowed to rebut that evidence and testimony. Plaintiff proposes to offer non-retained expert testimony by police Sergeant Phillip Jeremy Reinhardt regarding the police investigation of Mr. Le ***after*** the incident at issue took place, *see* Reinhardt Discl. at 2 (Ex. 10), which has zero relevance to Plaintiff's claim that Uber failed to take adequate steps to prevent the incident. Plaintiff's Non-Retained Expert Witness disclosure indicates that Plaintiff seeks to introduce evidence on all the details of the police investigation and criminal trial from the perspective of Sergeant Reinhardt's "law-enforcement training and experience." *Id.* But at the same time, Plaintiff seeks to prevent Uber from questioning Sergeant Reinhardt about or offering any evidence related to the sufficiency of the police investigation. To the

[3] Plaintiff also seeks to exclude evidence that Mr. Le's "ethnicity or nationality provides an alternative explanation for his conviction." Mot. at 10. Uber does not oppose this portion of the motion regardless of the outcome of its own motion to exclude evidence related to the criminal trial.

extent Plaintiff is allowed to present evidence and/or testimony regarding the details, reliability, or completeness of the police investigation of Mr. Le over Uber's objection, Plaintiff will have opened the door to rebuttal evidence regarding the various shortcomings of that investigation. Indeed, the Fifth Circuit has long recognized that "[a] ruling based on evidence which a party has not been allowed to confront or rebut is one which denies due process." *Carter v. Morehouse Par. Sch. Bd.*, 441 F.2d 380, 382 (5th Cir. 1971).

## III. RESPONSE TO MIL NO. 3: EXCLUDE "ARGUMENT CHALLENGING THE ASSAULT USING DATA THAT UBER IMPROPERLY CONCEALED FROM LAW ENFORCEMENT."

Plaintiff has moved to exclude Uber's expert Betsy A. Bartko's testimony about the average speed, route, and continuity of the 2020 ride underlying this lawsuit based on GPS data. Pl.'s Omnibus Mot. to Exclude Expert Testimony, ECF 7364, at 24. Uber has separately opposed that motion. Regardless of the Court's ruling there, however, there is no basis to exclude GPS data. Plaintiff asserts that Uber should be barred from introducing the GPS data because its only purpose would be to "undermine" Mr. Le's conviction by presenting evidence not introduced at the criminal trial that "contradict[s] Plaintiff's account" of the June 2020 incident. Mot. at 12. This is untrue. As set forth above and in Uber's own motions *in limine*, Uber does not intend to contest Mr. Le's criminal conviction. But Uber's experts question the nature and extent of Plaintiff's alleged damages ***in this case***. Dr. Baker has noted that "[redacted]," and that is one of the reasons why it is "[redacted]." Baker Rep. ¶ 6(c). The fact that objective data regarding the trip giving rise to the incident are inconsistent with Plaintiff's representations of the trip are directly relevant to this issue, which is unrelated to the fact of Mr. Le's criminal conviction.

For similar reasons, there is no merit to Plaintiff's argument that Uber is somehow barred from using the GPS data at this trial because it was not produced in the criminal case.[4] Because Uber is not contesting Mr. Le's conviction, it does not matter—and the jury in this case will never know—whether the GPS data was presented at Mr. Le's criminal trial. Further, Uber's production of materials to the

[4] Uber disputes Plaintiff's inaccurate characterization that Uber "concealed" anything, including but not limited to GPS data, from law enforcement and/or prosecutors in Mr. Le's criminal case. The foundational premise of Plaintiff's MIL No. 3 is thus fundamentally flawed, and the motion should be denied for that reason alone.

government as a third party not involved in Mr. Le's criminal trial has no bearing on the admissibility of GPS data that was properly produced to Plaintiff in connection with this separate civil action involving negligence claims against Uber. Plaintiff does not, and cannot, cite to any authority for the extraordinary proposition that a civil litigant forfeits the right to introduce relevant evidence at trial merely because it was not produced in a prior criminal proceeding to which the civil litigant was not a party.[5]

"Relevance and prejudice under Rules 401 and 403 are determined from the context of the facts and arguments ***in the particular case***[.]" *Parker v. Tyson Foods, Inc.*, 499 F. Supp. 3d 297, 302 (S.D. Miss. 2020) (emphasis added) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)). Here, the GPS data at issue were properly and timely produced to Plaintiff and are clearly relevant to document the time, route, and manner of Plaintiff's ride, which are facts of consequence to this case and relevant to evaluate the credibility of Plaintiff's own descriptions of the ride. Fed. R. Evid. 401. Given the clear probative value of data confirming the details of Plaintiff's trip, the potential prejudice of admitting the GPS data would not be "unfair" in a manner that "implicate[s] Rule 403." *Cruz v. Cervantez*, 96 F.4th 806, 814 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 331 (2024) ("Virtually all evidence is prejudicial to one party or another; otherwise, it would likely not be relevant at all.").

## IV. RESPONSE TO MIL NO. 4: EXCLUDE "EVIDENCE THAT VICTOR LE WAS FINED $500."

Uber does not oppose this motion.

## V. RESPONSE TO MIL NO. 5: "EXCLUDE ARGUMENT OR EVIDENCE THAT PLAINTIFF [redacted]"

Uber opposes this motion. Evidence or argument that Plaintiff [redacted] on the night of the assault is highly relevant to this case. To be clear, Uber seeks to introduce this evidence solely to establish the actual reason the ride was arranged—not to suggest that [redacted] bears in any way on the assault or her right to recovery.

[5] Plaintiff's reliance on *Ansari v. Jimenez*, 176 F.4th 494, 505 (6th Cir. 2026), for the proposition that "evidence not presented in [a] criminal trial" is irrelevant and inadmissible in a subsequent civil action, *see* Mot. at 12, is woefully misplaced. There, the court was evaluating whether exculpatory evidence withheld from a criminal trial would have made a difference to the outcome of trial. At no point did the court suggest that, where a civil negligence action implicates the actions of a third party who was previously convicted of the incident at issue, evidence not introduced at the criminal trial is irrelevant and inadmissible in the civil action.

Plaintiff has focused an inordinate amount of attention in expert reports and discovery on Uber's marketing and advertising in furtherance of her claim that such marketing influenced a third party to order a ride for Plaintiff through the Uber platform on June 9, 2020. *See, e.g.*, Drumright Rep. at 118-19 (Ex. 11); Valliere Rep. at 2 (Ex. 12); Pl.'s 4th Set of Interrogatories (Ex. 13); Pl.'s 2d Set of RFAs (Ex. 14). But that Uber account holder, H.M., who had no connection to Plaintiff before that night, has been clear about why she ordered a ride for a stranger: [redacted]. H.M. Dep. 38:20-22 (Ex. 15) ("[redacted]"); 41:20-25 ([redacted]); 42:1-5 ("[redacted]); 42:23-43:6 ("[redacted]). H.M. also testified that she had personal motivation to order a rideshare for Plaintiff because H.M's husband had [redacted] *Id.* 42:18-22.

While Plaintiff contends that her [redacted] not relevant to her claims against Uber, Plaintiff has placed the reason why she took a ride arranged through the Uber platform at issue by asserting that Uber's marketing and other conduct purportedly negligently caused her alleged injuries. Accordingly, Uber is entitled to offer its own evidence about the motivation for the ride at issue to rebut Plaintiff's theory of causation and damages. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432 (5th Cir. 2006) (holding that "relevant evidence which engenders no unfair prejudice and which relates to the core of the dispute should not be summarily excluded."). Plaintiff should not be allowed to place the reason for the ride at the center of her negligence theory and simultaneously bar Uber from presenting the actual, undisputed reason the ride was arranged.

Further, there is no basis to exclude this evidence as unduly prejudicial under Rule 403. "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative

value, which permits exclusion of relevant matter under Rule 403." *King*, 93 F.4th at 852 (citation omitted). Here, the probative value of evidence demonstrating that the motivating force behind H.M.'s decision to arrange a ride for Plaintiff using the Uber platform was to ensure that [redacted] as opposed to Uber's marketing or other alleged conduct—far outweighs any prejudice associated with this evidence.

## VI. RESPONSE TO MIL NO. 6: "EXCLUDE EVIDENCE OR ARGUMENT CONCERNING SETTLEMENT DISCUSSIONS, ATTEMPTS TO SETTLE, AND PLAINTIFF'S STATEMENTS REGARDING A POSSIBLE SETTLEMENT."

Plaintiff frames her motion as a request to exclude settlement evidence barred under Federal Rule of Evidence 408, but the evidence Uber seeks to introduce is not settlement evidence at all. Rather, it is highly relevant and admissible evidence related to Plaintiff's [redacted] for bringing this suit, which are directly relevant to her credibility and the veracity of her claims.

Uber does not intend to introduce evidence of the ***parties'*** settlement negotiations, which would be barred under Rule 408. In substance, however, the majority of the evidence at issue has no connection to the parties' settlement negotiations. For example, Plaintiff seeks to exclude "testimony that Plaintiff was '[redacted],'" and private messages between Plaintiff and relatives indicating that Plaintiff hoped [redacted]. Mot. at 14; *see also* Pl. Dep. 254:22-255:7 (Plaintiff testifying that she [redacted]"); *id.* 255:15-18 (Plaintiff explaining "correspondence" regarding [redacted]"). This evidence is outside the scope of Rule 408, and is highly relevant to Plaintiff's credibility, bias, and motive for suing.

***First***, Plaintiff argues that any evidence that loosely relates to the subject of settlement is barred by Rule 408. Mot. at 13. That argument fails on multiple levels. Most fundamentally, Rule 408 only covers "attempt[s] to compromise the claim" and "statement[s] ***made during compromise negotiations about the claim***[.]" Fed. R. Evid. 408(a) (emphasis added). Accordingly, "Rule 408 does not shield . . . communications with non-parties"—such as with Plaintiff's friends and family members. *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 418 (S.D.N.Y. 2011); *see also Murman v. Murman*, No. 24-CV-01439-RMI, 2026 WL 765168, at *1 (N.D. Cal. Mar. 18, 2026) ("discussions between family

members about resolving their dispute" were "not 'settlement offers' within the bounds of Rule 408"). Because these messages were not "sent as part of compromise negotiations," Rule 408 does not apply. *Commonwealth Cap. Corp. v. City of Tempe*, No. 2:09-CV-00274 JWS, 2011 WL 1429624, at *2 (D. Ariz. Apr. 14, 2011) (Rule 408 is inapplicable where "[t]he e-mail does not contain an offer to furnish consideration, and it was not sent as part of compromise negotiations.").

In any event, Rule 408(a) only prohibits a party from using settlement evidence "either to prove or disprove the validity or amount of a disputed claim[.]" Fed. R. Evid. 408(a). "Rule 408 does not require exclusion of settlement evidence 'when the evidence is offered for another purpose, such as proving bias or prejudice of a witness.'" *U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990) (citing Rule 408(b)); *see also Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161-62 (9th Cir. 2007) (describing Rule 408 as "one of limited applicability" because "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured"). Here, Uber seeks to offer the challenged evidence for that expressly permitted purpose: to inform jurors that Plaintiff [redacted].[6] *See Cameron v. Werner Enters., Inc.*, No. 2:13-CV-243-KS-JCG, 2016 WL 3030181, at *2 (S.D. Miss. May 25, 2016) (refusing to exclude settlement evidence on the basis that such evidence could be used "to impeach Angela by showing bias or prejudice").

***Second***, Plaintiff's argument that this evidence is irrelevant, Mot. at 15, is contrary to law. "[A] witness ***always*** may be impeached by evidence that she . . . is biased, prejudiced, has a financial interest in the outcome of the case, or a motive to testify in a particular manner." *Behler v. Hanlon*, 199 F.R.D. 553, 555-56 (D. Md. 2001) (emphasis added). Statements that Plaintiff "was '[redacted] obviously fall into that category and are highly relevant to motive and credibility. *See, e.g.*, *Aviation Advisors Int'l, Inc. v. TransAmerica Inv. Grp., Inc.*, No. 8:09-CV-588-T-23AEP, 2010 WL 11507332, at

[6] Plaintiff's reliance on *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284 (5th Cir. 2010) (cited in Mot. at 13-14), is misplaced. *Lyondell* narrowly addressed evidence "created for use in [settlement] negotiations[.]" *Id.* at 298. Far from supporting Plaintiff's position, the Fifth Circuit cautioned that "Rule 408 should not exclude more than required to effectuate its goals, which, after all, run counter to the overarching policy favoring the admission of all relevant evidence." *Id.* at 299.

*1 (M.D. Fla. Apr. 20, 2010) (noting settlement evidence was "relevant" because "the settlement documents may be used to show bias or prejudice"); *Ruderman v. Rolls-Royce Motor Cars NA, LLC*, No. 2:20-cv-04529-JWH-RAOx, 2021 WL 4193194, at *2 (C.D. Cal. July 12, 2021) ("[I]t is true that the fact that [plaintiff] may collect money if he wins this lawsuit may be used to impeach him."). This is particularly true given Plaintiff's testimony that she views this lawsuit as [redacted] which squarely puts her motivations at issue. Pl. Dep. 254:8-21; *see also id.* 255:24-256:2 (Plaintiff testifying that [redacted]). Uber must be allowed to present evidence that contradicts these statements.

Evidence bearing on Plaintiff's [redacted] is also relevant to causation and the nature of Plaintiff's alleged injuries. As Uber's expert, Dr. Sarah Baker, opines, "[redacted]." Baker Rep. at 30. The veracity of Plaintiff's testimony will be central to determining whether her alleged harms occurred and, if so, their cause and severity. The jury should thus be permitted to hear evidence that puts Plaintiff's statements into proper context and allows jurors to assess the credibility of her causation and damages testimony.

***Third***, Plaintiff also claims that this evidence would be unduly prejudicial because it would "[redacted] Mot. at 15. But that [redacted] is an essential component of her credibility, and it will aid the jury in evaluating all other evidence in the record, including her [redacted]. *See Behler*, 199 F.R.D. at 555-56. The fact that Plaintiff's [redacted] undermines those statements does not render the evidence unduly prejudicial. On the other hand, excluding this evidence would mislead jurors into believing that Plaintiff had [redacted] and leave them with a distorted view of the facts. For this reason, too, the motion should be denied.

**VII. RESPONSE TO MIL NO. 7: "EXCLUDE EVIDENCE RELATED TO PLAINTIFF'S IRRELEVANT INTERACTIONS WITH LYFT."**

As the Court has recognized, records of Plaintiff's Lyft use post-dating the subject incident are indisputably relevant to Plaintiff's claims against Uber. *See, e.g.*, 1/6/2026 Hr'g Tr. 64:10-65:20 (Ex. 16)

(holding that evidence of post-incident Lyft use is relevant and admissible); 4/2/2026 Hr'g Tr. 48:5-24 (Ex. 17) (similar). Nevertheless, Plaintiff appears to be asking the Court to exclude these records in full. These arguments are meritless and should be rejected.

***First***, Plaintiff's Lyft records are not subject to exclusion under the hearsay rule because they fall squarely within the business records exception. *See* Fed. R. Evid. 803(6). Indeed, Lyft has submitted a declaration from its custodian of records establishing the foundation for the business records exception in compliance with Rule 803. Ramos Decl. (Ex. 18). Statements by drivers contained within the Lyft records, including passenger feedback and ratings, *see* LYFT-3.24-CV-08783-0005 (Ex. 19), similarly satisfy the business record exception under Rule 803(6) because these observations are regularly conducted business activities made by someone with knowledge at the time of the event. And Plaintiff's own statements to the driver, also reported in the Lyft records, are *not* hearsay at all because they are statements of a party opponent. Fed. R. Evid. 801(d)(2)(A).

***Second***, the fact that the documents mention [redacted] on Plaintiff's Lyft account does not render them inadmissible. Plaintiff is unable to identify a single authority suggesting that the entirety of a relevant document may be excluded because it contains a reference to a matter that Plaintiff deems irrelevant or prejudicial. Further, and contrary to Plaintiff's arguments, the reference to [redacted] on Plaintiff's account is supported by the facts and relevant to Plaintiff's credibility regarding her rideshare account usage. At her deposition, Plaintiff testified that [redacted] Pl. Dep. 236:4-237:17 (Ex. 2). Lyft records, however, reflect that [redacted] LYFT-3.24-CV-08783-0001, 0007, 0014 (Ex. 20). This discrepancy is relevant to Plaintiff's credibility as a witness.

***Third***, feedback and comments [redacted] in the ordinary course of business are directly relevant to Plaintiff's emotional state and potential alternative causes of her alleged damages [redacted] This provides direct evidence of a potential alternative cause of Plaintiff's claimed emotional and mental damages. Moreover, while Plaintiff suggests in her

motion that [redacted] because Plaintiff testified at her deposition that [redacted] Mot. at 16, Plaintiff ignores that she also admitted at her deposition that [redacted] *See* Pl. Dep. 242:25-243:8. And while Plaintiff broadly claims that this evidence creates a "danger" of unfair prejudice or jury confusion, she offers no explanation as to what is purportedly prejudicial about this alternate cause evidence, or why it would confuse the jury.

***Fourth***, evidence in the Lyft records that [redacted] is highly relevant to rebut her experts' opinions that the effects of the June 2020 incident left Plaintiff [redacted]" Lebowitz Rep. at 33 (Ex. 1). Further, Plaintiff fails to explain what purportedly unfair prejudice would result from the admission of this factual evidence directly related to Plaintiff's use of, and reactions to, [redacted] after the incident at issue. *See United States v. DePape*, 2026 WL 821891, at *2 (9th Cir. Mar. 25, 2026) (cleaned up) (noting that "[u]ndue prejudice applies only to a narrow class of materials of scant or cumulative probative force, dragged in by the heels for the sake of their prejudicial effect"); *United States v. Decinces*, 808 F.3d 785, 791-92 (9th Cir. 2015) ("Although the admission of the evidence may harm the defendants' case, that is not a reason to exclude it under Rule 403, which refers only to *unfair* prejudice.").

## VIII. RESPONSE TO MIL NO. 8: "EXCLUDE ARGUMENT OR EVIDENCE THAT NON-PARTY CHECKR IS AT FAULT FOR PLAINTIFF'S INJURIES OR THAT CHECKR IS A GOOD, REPUTABLE COMPANY."

Uber opposes this motion. Uber is entitled to argue at trial that it reasonably relied on the background check conducted on Mr. Le by Uber's accredited third-party vendor, Checkr.

Uber expects that Plaintiff will advance theories at trial that Uber was negligent in deciding to engage third-party consumer reporting agency Checkr to conduct background screenings on Uber's behalf. Specifically, Uber anticipates that Plaintiff may argue either that Uber should not have outsourced background checks to Checkr generally, or that Uber should not have relied on Checkr's report in this particular case because Checkr allegedly missed information about the driver, Mr. Le. Uber must be allowed to rebut these theories by presenting evidence that Uber's collaboration with a third-party consumer reporting agency to conduct background checks is reasonable and consistent with industry

standards and best practices, *see, e.g.*, Morris Rep. at 11 (ECF 7363-8); that Checkr is a reputable background screening agency accredited by the Professional Background Screening Association (PBSA), *see, e.g.*, 8/13/2026 Hubbard Dep. 248:2-19, 249:17-254:10 (Ex. 21); and that Uber worked with Checkr to develop and implement a robust and multi-layered background screening process, *see, e.g.*, Morris Rep. at 6-8.

In addition, Uber is entitled to present evidence and argument that Checkr conducted a robust background screening on Mr. Le that did not uncover negative information—and that Uber reasonably relied on Checkr's clean background check report regarding Mr. Le. *See, e.g.*, Morris Rep. at 12-17. Relatedly, although Uber does not intend to "blame" Checkr, as Plaintiff suggests, Uber is entitled to introduce sufficient facts to explain to the jury what records Checkr identified or did not identify and why.

All this evidence plainly bears on Plaintiff's negligence theories, and the evidence is therefore admissible. Fed. R. Evid. 401, 402. Plaintiff's motion *in limine* provides no persuasive rationale to the contrary. Plaintiff argues that Uber's corporate representative, Greg Brown, testified at his deposition "that Uber had an obligation to screen drivers, selected Checkr to gather information to do so, set Checkr's driver-adjudication standards, and chose among the various background-check packages Checkr sells[.]" Mot. at 18. In Plaintiff's view, this means that Uber took ultimate responsibility for its background checks, making it improper to criticize Checkr's efforts in any way. But even if Plaintiff were correct in her characterization of Mr. Brown's testimony, that would provide Plaintiff with impeachment; it is not a basis for a motion *in limine. See Sumrall v. Ensco Offshore Co.*, No. 2:17-CV-48-KS-MTP, 2018 WL 2224074, at *1 n.2 (S.D. Miss. May 15, 2018) (noting that testimony could not be precluded at the *in limine* stage on the ground that it was contradicted by other evidence, as this "presented a question of credibility best resolved by the jury").

Finally, Plaintiff also argues that evidence "that Checkr is reputable, accredited, [and] experienced" is "irrelevant," but that position is equally meritless. Checkr's quality and reputation go directly to the reasonableness of Uber's decision to rely on Checkr to conduct background screenings in

general, as well as Uber's decision to rely on Checkr's background report on Mr. Le in this particular case.[7] For all of these reasons, the Court should deny Plaintiff's motion *in limine*.

## IX. RESPONSE TO MIL NO. 9: EXCLUDE EVIDENCE REGARDING "IRRELEVANT SAFETY FEATURES AND INITIATIVES."

Plaintiff seeks to exclude evidence of "various safety features and initiatives (RideCheck, ID check, trip sharing, call button, audio recording, S-RAD, etc.)" that Plaintiff asserts are "irrelevant" because the incident at issue occurred during a guest ride. Mot. at 19. Uber opposes this motion.

The evidence is relevant for three reasons. First, Plaintiff's claims against Uber are premised on an allegation that Uber acted negligently by failing to protect Plaintiff from the June 2020 assault. As a result, the various safety measures and procedures Uber had in place at the time of the assault—as well as the resources Uber dedicated to promoting safety at that time—are highly relevant to whether Uber breached a duty to exercise reasonable care in operating its rideshare platform. *See Lozada v. Posada*, 718 S.W.3d 262, 267 (Tex. 2025) (explaining that a defendant owes "a common-law duty to act as a reasonably prudent person . . . toward others") (citation and quotations omitted). Specifically, such evidence is directly relevant to Uber's overall investment in safety and reflects the exercise of reasonable care, a determination the jury is entitled to make based on the full picture of Uber's safety efforts.

Second, the evidence is also relevant to whether additional safety features would have prevented the assault. The fact that a third party failed to arrange a "formal" guest ride for Plaintiff on the Uber app despite the fact that doing so could have made some of these additional safety features available to Plaintiff goes to whether Plaintiff or the third party would have availed themselves of other safety features as well.

Finally, Plaintiff is seeking punitive damages, which requires clear and convincing proof that Plaintiff's harm resulted from Uber's alleged gross negligence, independent of any criminal act by a third party. Tex. Civ. Prac. & Rem. Code § 41.003(a)(3). As explained in Uber's pending Motion for Summary Judgment, ECF 7329 at 4-10, Plaintiff's claim for punitive damages fails as a matter of Texas law because Plaintiff's injuries arise out of the criminal acts of a third party. If, however, the Court allows Plaintiff to present this claim to the jury, Uber must have the opportunity to rebut Plaintiff's allegations by

[7] Plaintiff also argues that Uber missed the deadline under Texas law to seek leave to allocate fault to a non-party. That is beside the point. Uber will not ask the jury to allocate fault to Checkr on the verdict form; rather, Uber will defend against Plaintiff's negligence theories by arguing that it was reasonable for Uber to rely on Checkr's background screenings.

demonstrating that it took many steps to promote the safety of the Uber platform, including by adopting a large number of safety measures available at the time of the ride at issue. *See Agrium U.S., Inc. v. Clark*, 179 S.W.3d 765, 769 (Tex. Ct. App. 2005) (jury's finding of gross negligence lacked support of legally sufficient evidence because defendant "had in place [safety] procedures which obviated the danger," and those procedures "had been effective over the years").

## X. RESPONSE TO MIL NO. 10: EXCLUDE EVIDENCE REGARDING "UBER'S SAFETY REPORTS."

Plaintiff seeks to bar Uber from introducing or offering evidence pertaining to the U.S. Safety Reports it issued covering the periods 2017-2018, 2019-2020, and 2021-2022, arguing that they are irrelevant and are hearsay. These arguments are meritless; rather, it is clear that Plaintiff seeks to exclude the Safety Report because it undermines her negligence theories, which is not proper grounds for a motion *in limine*.

***First***, the Safety Reports are far from irrelevant. They are key evidence in establishing the reasonableness of Uber's conduct because they reflect Uber's efforts to take steps to address concerns about sexual misconduct by drivers and riders on the Uber platform.[8] Unsurprisingly, they have been admitted as evidence at every trial that has occurred to date, including in the JCCP. Both Plaintiff's and Uber's experts in this case have addressed the Safety Reports extensively in their reports. *See generally* Uber Expert Reps. of K. Zgoba (ECF 7363-3), C. Rudin (Ex. 22); Pl.'s Expert Reps. of L. Keller (ECF 7354-1), M. Drumwright (Ex. 11), T. Tremblay (ECF 7349-1), and V. Valliere (Ex. 12). And while Plaintiff decries the amount of trial time that was allegedly "wast[ed]" on the reports in the *Dean* trial, Mot. at 20, each side is permitted to use their allotted trial time how they wish. Indeed, the fact that Plaintiff went to such great lengths to attempt to discredit the Reports in *Dean* demonstrates just how relevant they are.

***Second***, Plaintiff baldly, and wrongly, asserts that the Safety Reports constitute inadmissible hearsay. But the Reports are not being introduced for their truth. Rather, they are being introduced to show Uber's efforts to make detailed data about safety on its platform available to the public. Such evidence is highly relevant given that Plaintiff is claiming both failure to warn and false marketing.

---

[8] The Safety Reports would also be relevant to any claim for punitive damages, as evidence that Uber's conduct was not malicious and does not require deterrence.

## XI. RESPONSE TO MIL NO. 11: "EXCLUDE ARGUMENT OR EVIDENCE THAT THE SEXUAL ASSAULT AND SEXUAL MISCONDUCT INCIDENT REPORT RAW DATA THAT UBER HAS PRODUCED FOR 2017-2024 INCLUDES INCIDENTS THAT ARE 'INVALID' OR HAVE BEEN RECATEGORIZED."

Plaintiff seeks to preclude Uber from offering evidence related to incident reports that were either reclassified outside of the sexual assault and misconduct taxonomy or determined to be "invalid" between October 2025 (when Uber first provided a summary chart of incident reports from 2017-2024) and June 2026 (when Uber provided an updated summary chart of those incidents). Approximately [redacted] reported incidents occurring between 2017 and 2024 were re-classified or determined to be invalid between October 2025 and June 2026—a less than 0.2% discrepancy between the two charts. Plaintiff now argues that because Uber has only produced the incident-level "raw data" underlying the October 2025 report and not the raw data underlying the June 2026 update, it should not be allowed to rely on the updated June 2026 numbers at trial. Plaintiff's argument fails for several reasons.

***First***, although Plaintiff implies that Uber has failed to comply with its discovery obligations, Judge Cisneros already concluded that the underlying raw data from Flack, Jira, and Bliss for 2017-2024 was not covered either by Plaintiff's discovery requests or the Court's Order requiring production of the updated summary chart. ECF 7193 at 4. The Court permitted further briefing regarding the raw data underlying the approximately [redacted] reports that were reclassified or determined to be invalid, and that matter remains pending before the Court. ECF 7282. Accordingly, Plaintiff's suggestion that Uber has improperly withheld that data is contrary to the record.

***Second***, even if the Court ultimately requires Uber to produce the raw data, there is no basis for preventing Uber from relying on or introducing evidence that is already in both parties' possession. Plaintiff suggests that she should be permitted to "test the evidence," Mot. at 21, as to each of the [redacted] incident reports at issue, an undertaking that is plainly not feasible within the time constraints of this trial.

***Third***, Plaintiff's argument that her "experts who relied on the raw data cannot evaluate how their trend analysis may have changed based on Uber's changes to its data" is misguided. As noted above, the discrepancy between the two reports was less than 0.2%, which would not have a material impact on the overall numbers or trends. Moreover, contrary to Plaintiff's claim, Uber has not refused "to agree that it would not challenge Plaintiff's experts for relying on the raw data Uber originally produced." Mot. at 21.

While Uber has declined Plaintiff's requests to withdraw Uber's experts' opinions or to preemptively limit its cross-examination of Plaintiff's experts, Uber has already agreed that "both parties may rely at trial on the previously produced raw dataset so they are working off the same data." ECF 7093 at 4. Indeed, Uber's experts did not rely on the raw data at all but instead relied on the summary charts in formulating their opinions. *See* Zgoba Rep. at 38; Rudin Rep. at 10 n.3 (Ex. 22). Thus, there is no unfairness in the information available to the parties, and there is no basis to exclude this evidence.

## XII. RESPONSE TO MIL NO. 12: "EXCLUDE EVIDENCE OR ARGUMENT REGARDING UBER'S 2025 SEXUAL ASSAULT AND MISCONDUCT DATA, INCLUDING ALLEGED 'INVALID' REPORTS."

Plaintiff similarly seeks exclusion of any information concerning incident reports from 2025 that were classified as invalid because Uber did not produce the underlying raw data from Flack, Jira, and Bliss. Plaintiff reasserts the same arguments here that she makes in MIL No. XI as to the 2017-2024 raw data, but her arguments are no more compelling in this context.

***First***, contrary to Plaintiff's argument, Uber has never "refused" to provide the raw data. Mot. at 22. Rather, Plaintiff has never requested—and the Court has never ordered—Uber to produce it. Uber did produce the raw data underlying a separate chart documenting *valid* complaints from 2025, but it did not produce such raw data for the *invalid* reports because the plain language of Plaintiff's requests did not seek it. ECF 7282. Judge Cisneros permitted further briefing on this issue and the matter remains pending before the Court.

***Second***, Plaintiff has all the evidence she needs in order to "test[] or rebut[] [Uber's] assertions." Mot. at 23. Once again, Plaintiff has the same information as Uber regarding the number of invalid incident reports during 2025 (as well as 2017-2024), and it is unreasonable for Plaintiff to expect that she can challenge at trial the accuracy of Uber's more than [redacted] determinations in 2025 that an incident report was invalid.

***Third***, although Plaintiff once again asserts that her experts are at a disadvantage without the raw data, Uber's experts relied only on the summary charts to form their opinions. *See* Zgoba Rep. at 38; Rudin Rep. at 10 n.3. Accordingly, there is no unfairness or asymmetry of information that should bar Uber from relying on this evidence.

## XIII. RESPONSE TO MIL NO. 13: "HEARSAY FROM NON-PROFIT ORGANIZATIONS, ESPECIALLY ONES THAT REFUSED TO BE DEPOSED."

This Court previously denied a motion to exclude evidence related to Uber's partnerships with non-profit organizations in connection with the *Dean* trial, rejecting arguments that these third-party organizations' statements about and work with Uber constitute inadmissible hearsay and undisclosed expert testimony. *See* ECF 4941 (*Dean* PTO No. 39) at 3; ECF 4690 (*Dean* Pl.'s Omnibus Mot. in Limine) § XII. While Plaintiff asserts that she "does not seek reconsideration of that ruling," Mot. at 23, she is seeking to exclude the very same testimony and evidence the Court ***admitted*** in *Dean*. Further, Plaintiff's arguments, many of which are recycled from *Dean*, are meritless.

***First***, Plaintiff repeats the previously rejected argument that statements by non-profit organizations about their work with Uber constitute hearsay. But, as Uber previously explained, and the Court implicitly agreed by denying this same motion in *Dean*: (1) the ***fact*** of Uber's work with these organizations is not hearsay if discussed by Uber witnesses who have personal knowledge of such work; and (2) statements by non-profit organizations are admissible for the non-hearsay purposes of establishing Uber's state of mind and reasonable care. *See* ECF 4847 (Uber's Opp. to *Dean* Pl.'s Omnibus MIL) § XII. Notably, Plaintiff seeks to exclude testimony from Uber witness Emilie Boman about a statement made by Karen Baker of the National Sexual Violence Resource Center ("NSVRC") in her Foreword to Uber's Safety Report, Mot. at 23, but Plaintiff fails to mention that the Court ***overruled*** a contemporaneous objection to this same testimony at the *Dean* trial, finding that the evidence was "not being offered for the truth of the matter" asserted, but instead to "demonstrat[e] the state of mind" and "certain actions that were taken by Uber." *Dean* Trial Tr. 2457:5-2458:7 (Ex. 23).

***Second***, Plaintiff's suggestion that Uber's witnesses lack the requisite "personal knowledge" to testify about "why non-profit organizations chose to work with Uber or what that relationship supposedly demonstrates," Mot. at 24, is baseless. The only purported example cited by Plaintiff is Ms. Boman's testimony in *Dean* about why Uber's relationships with non-profits are valuable ***to Uber*** and why it is important for ***Uber*** to foster these relationships, which she unquestionably has the requisite personal knowledge to explain. *See id.* (citing *Dean* Trial Tr. 2478:16-2479:6). To the extent Plaintiff intends to

object to other testimony on grounds that the witness lacks personal knowledge, those objections can be raised and ruled on at trial.

***Third***, Plaintiff's assertion that Uber is barred from discussing its work with third-party organizations because they have not been deposed in this litigation, Mot. at 24, is factually baseless and unsupported by any law. For one thing, Ms. Baker of NSVRC—whose statements are at the center of Plaintiff's motion—***has*** been deposed by Plaintiff's counsel and strongly defended her (and NSVRC's) work with Uber in her testimony. *See, e.g.*, 8/26/2026 Karen Baker Dep. 172:21-25 (Ex. 24) ("[redacted]"). Further, counsel for the three other organizations mentioned in Plaintiff's motion has offered October 1-2 for the depositions of two of the nonprofits and is working on securing a date for the third deposition. *See* 9/20/2026 Email from N. Clarke to M. Goldenberg (Ex. 25). In any event, Plaintiff is ***unable to cite a single authority*** to support the proposition that Uber should be barred from discussing its work with third parties unless they are first deposed. Nor has the Court imposed such a rule in any of the bellwether cases tried to date. For all of these reasons, Plaintiff's attempt to bar evidence of Uber's work with non-profit organizations should once again be denied.

## **CONCLUSION**

For all the reasons set forth above, Plaintiff's motions *in limine* should be denied.

DATED: September 22, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9050
kim.bueno@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625

laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Michael Vives (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
Jessica Davidson (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno