*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br>**JOINT STATUS REPORT FOR SEPTEMBER 24, 2026 DISCOVERY STATUS CONFERENCE**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**<u>JOINT STATUS REPORT</u>**

In advance of the discovery status conference set by the Court for September 24, 2026 at 3:00 p.m. (ECF 6463), Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants") (jointly, "the parties"), respectfully submit this Joint Status Report.

## I. Uber's Objections and Responses to Interrogatories and Requests for Admission

**Plaintiff's Position:** On September 18, 2026, the Parties met and conferred regarding Uber's Objections to Plaintiff's Fifth Set of Interrogatories and Third Set of Requests for Admission. Uber contends that the discovery is untimely because it was served on August 31, and that the Interrogatories exceed the limits set by the Federal Rules. On this basis, Uber declined to provide factual responses and instead stands on its objections. The narrow discovery authorized by the Court's order regarding marketing was intended to fall outside the 25-interrogatory limit. The Parties will continue to confer and will submit any remaining disputes pursuant to PTO 8.

**Defendants' Position:** Plaintiff's written discovery is untimely, exceeds the limits under the Federal Rules of Civil Procedure, and violates the Parties' May 25, 2025 agreement regarding Bellwether interrogatories.[1] On August 31, 2026—one day before the fact discovery deadline—Plaintiff served her fifth set of interrogatories and her third set of requests for admission. Both sets of written discovery, which call for responses long after the substantial completion of fact discovery, are clearly untimely. As to limits, Plaintiff argues that she has not exceeded the 25 interrogatory limit with this fifth set (which includes her 44th, 45th, and 46th interrogatories, *excluding* subparts) because she believes the 20 interrogatories she served pursuant to ECF 7012 should not count towards her limit. This argument fails. ECF 7012 permitted Plaintiff "to serve narrowly tailored interrogatories or requests for admission addressing whether specific marketing campaigns of interest to Plaintiff were deployed in the North Texas region." Nowhere does ECF 7012 suggest that any interrogatories served pursuant to that Order would not count toward Plaintiff's limit; nor did the Court authorize Plaintiff to propound subsequent interrogatories beyond the prescribed limits without first seeking leave.[2] Uber will respond more fully to Plaintiff's arguments on this issue if Plaintiff chooses to pursue the issue in a PTO 8 letter brief.

## II. Uber's Failure to Produce Supplemental Safety Data

**Plaintiffs' Position:** The issues related to safety data raised in ECF 7282 remain pending. Of

[1] On May 25, 2025, the Parties agreed that Bellwethers would seek leave of Court *before* serving additional interrogatories, and Plaintiff did not do so before serving this fifth set.

[2] The Court gave Plaintiff a choice of discovery methods—RFAs or interrogatories (or even additional document requests)—and she chose interrogatories despite knowing doing so would cause her to exceed the 25 interrogatory limit under Rule 33(a)(1).

particular concern for the upcoming trial is that despite the September 10 Order (ECF 7285) Uber still has not produced data sufficient to indicate when or why Uber changed the categorization of Plaintiff QLF 001's report from "non-consensual sexual penetration" to "insufficient information." Uber's June 30, 2026 production of 2025 Flack raw data includes Plaintiff's January 2025 report, categorized as "insufficient information." Both the PDF Jira ticket Uber produced previously for the January 2025 report, and the updated PDF Jira ticket Uber produced on September 14, indicate Uber categorized the report as "non-consensual sexual penetration." Uber still has not produced any Bliss or Jira raw data about the January 2025 report or any other information that explains the discrepancy.

Further, in response to the September 10 Order, Uber provided un updated PDF Jira ticket for Plaintiff's March 2021 report. The previously-produced PDF report regarding that trip indicates that the ticket was "Neither Excluded nor Invalid." But the updated PDF Jira ticket produced on September 14 indicates the ticket is "Invalid or Excluded." Uber has never produced any raw data about the March 2021 report (not from Bliss, Jira, Flack, or any other source). Nor has Uber produced any data or information to identify when or why Uber changed this incident from "Neither Invalid and Excluded" to "Invalid and Excluded." Additionally, although the Court ordered Uber to produce a privilege log for these documents by September 14, Uber has not done so.

**Defendant's Position:** Pursuant to the Court's September 10 order, on September 14, Uber produced updated data related to Plaintiff QLF 001's reported incident. The production included Flack and Jira data as no Bliss data had been updated since Uber's prior production. The first time Plaintiffs raised any issue with Uber's September 14 production was in the exchange of draft joint status report statements on the evening of September 18. Uber also updated its privilege log to address the redacted documents produced. Uber submits that Plaintiffs' questions have nothing to do with the sufficiency or completeness of the data produced, but Uber will meet and confer with Plaintiffs regarding the issues they have raised.

## III. <u>Record My Ride Data Disclosed During 09/17/2026 Gaddis Deposition</u>

**Plaintiffs' Position**: Plaintiffs have long had outstanding requests for documents and data related to Uber's recording features, including the "Record My Ride" ("RMR") feature, but do not have data regarding the use or efficacy of this feature. During a deposition on September 17, Todd

Gaddis testified that one of his direct reports pulled data in connection with RMR experimentation in the past. While he stated that the *last time* anyone had looked at this data was within the past year, he never testified that his team's work with this data was limited to the past year. Prior to Mr. Gaddis's testimony, Plaintiffs had no reason to believe this data existed. Further, Mr. Gaddis testified that this data was not pulled solely for litigation. Uber should not be permitted to rely on this unproduced data to assert that it does (or would) establish that RMR effectively prevents or reduces sexual assaults. Plaintiffs will confer with Uber following its investigation into this data but may file a PTO 8 letter if this matter is not resolved.

**Defendants' Position:** Uber has produced documents relating to the "Record My Ride" feature in accordance with the discovery parameters set by the Court, which established a general December 1, 2024 cut-off but ordered the production of specified data and custodial files through December 31, 2025 (which is ongoing). During his September 17 deposition, Mr. Gaddis testified that he was ***aware of*** a data analysis examining the impact of "Record My Ride" on sexual assault and misconduct that he believed was conducted within the last year. Mr. Gaddis further testified that he did not prepare the data himself or have detailed information regarding the reasons it was prepared. Mr. Gaddis offered no testimony about what the data showed. Based on initial investigation, any analysis would be outside the date range and done at the request of in-house attorneys at Uber for the purposes of providing legal advice and therefore, privileged. Uber continues to investigate the data referenced by Mr. Gaddis and will meet and confer with Plaintiffs regarding its findings. Uber has not represented that it would attempt to rely on data not produced to Plaintiffs.

## IV. <u>Audio Recording of Prison Phone Call with Independent Driver</u>

**Defendants' Position:** After Plaintiff noticed and then withdrew the driver's deposition, Uber made the necessary arrangements with the prison for Mr. Le's deposition to proceed on September 1, 2026. The day before the deposition was set to occur, Plaintiff's counsel privately contacted Mr. Le—without advance notice to Uber—and discussed, among other things, the upcoming deposition, Mr. Le's legal rights, and whether he had counsel or any pending or planned appeals. Plaintiff's counsel informed Uber of that call after it occurred and told Uber that, at the end of that call, Mr. Le indicated his intention to invoke his Fifth Amendment rights.

Based on conversations with prison staff, Uber has reason to believe the August 31 phone call was recorded but that a Court Order is required for the prison to produce the recording. Plaintiff's counsel have indicated that if the call was recorded, they would not object to it being produced. Throughout this litigation, communications with third-party witnesses and counsel have been routinely produced, including with respect to driver depositions. This conversation is no different.[3] Uber thus respectfully requests that the Court enter an Order requiring the Coffield Unit—or its agents—to produce any recordings related to the August 31, 2026 phone call between Plaintiff counsel and Mr. Le by October 5, 2026.

**Plaintiff's Position:** Plaintiff takes no position on this issue.

## V. Deficiencies in Plaintiff's Productions

**Defendants' Position:** Trial is only a few weeks away, and Plaintiff has not completed critical productions. On September 15, Plaintiff revealed that she has failed to properly thread text messages during her collection process, and as a result, has been improperly excluding "slices" of text threads from her productions, omitting necessary context and rendering those threads inaccurate and unusable. The extent of these deficiencies is revealed in the limited number of text threads that Plaintiff has now reproduced. One thread, which was previously produced as a conversation with 14 messages across 2 pages (*see* Ex. A (DOE QLF 008977-8978)), has now been reproduced with ***189 messages across 23 pages*** (*see* Ex. B (DOE QLF 010052-10074)). The messages interspersed within that thread that were initially omitted reference [redacted] That Plaintiff previously withheld or otherwise did not produce these messages is shocking and raises serious concerns that there are similar unproduced messages in the text threads she has yet to correct. Plaintiff attempts to minimize this issue, but her inaccurate productions have left Uber in the dark as to the true meaning behind any text message she has produced. Indeed, the first time Plaintiff produced the above thread (in yet another variation) was

[3] Prison staff called counsel for Uber on September 14 and indicated that Mr. Le wanted to speak to Uber's counsel about the upcoming deposition. Instead of having a conversation with Mr. Le alone, Uber invited Plaintiff counsel to that call so both sides would have the opportunity to know what Mr. Le had to say. The production of any recording will ensure both sides are fully apprised of everything Mr. Le has said to either side in the lead up to trial.

July 21. Uber did not receive the true thread until September 17—*2 months and 2 iterations later*—which revealed that the original production blatantly mischaracterized the conversation.

Plaintiff perplexingly seeks to cast blame on Uber for requiring her to spend time correcting these significant deficiencies, but they are problems of her own making. For months, Plaintiff has produced incomplete and inaccurate versions of her communications, which has required repeated reproductions.[4] Trial is less than two weeks away and Uber still does not know what Plaintiff has and has not said in relevant communications because of Plaintiff's production failures. As a result, her suggestion that Uber has somehow manufactured this dispute to burden counsel is insulting and inappropriate. Plaintiff has conceded fault for the production issues and has agreed to correct her deficiencies by September 23rd. Nevertheless, Uber is concerned that Plaintiff's persistent discovery issues have prejudiced Uber's ability to prepare for trial.[5] That concern is exacerbated by ongoing revelations regarding Plaintiff's failure to preserve evidence. Despite the declaration from Uber's expert, Plaintiff has refused to take available steps to determine what happened to texts that are missing from her phone—including at least 313 texts from the days surrounding the alleged incident—and declined to let Uber's experts analyze the metadata (exclusive of the content) on that phone as well. This matter is the subject of a PTO 8 letter brief, which will be submitted shortly.

**Plaintiff's Position:** Uber substantially overstates a promptly-corrected technical issue affecting a limited set of text messages. Uber uses this technical issue as a pretext for what has become a pattern: raising eleventh-hour issues with documents Uber may never even seek to introduce as trial exhibits, in an effort to portray Plaintiff (and her Counsel) as dishonest or concealing evidence, and to divert Plaintiff's counsel from trial preparation.

Uber identified approximately 30 sets of text messages it believed were affected by a processing issue. Plaintiff immediately investigated and made a supplemental production correcting

---

[4] These repeated reproductions are the source of the 2,000 pages of texts Plaintiff flaunts to the Court as evidence of her good faith in discovery, despite knowing that most of those pages are duplicates or inaccurate versions of conversations that Uber cannot use.

[5] Uber reserves the right to seek relief from the Court, including renewed depositions of certain witnesses, on an expedited timeline should Plaintiff's efforts to correct these deficiencies be insufficient and/or reflect additional relevant information that should have been produced sooner. An expedited timeline is necessary because, as Plaintiff states, "trial [] is only weeks away."

those threads on September 17. During a meet-and-confer on September 17, Plaintiff's counsel asked Uber to identify any other threads it believed were affected so they could be corrected together, and proposed prioritizing the texts on Uber's proposed exhibit list. On September 18, Uber instead requested that Plaintiff review *all* previously produced text messages. In the interest of efficiency, Plaintiff agreed to a wholesale re-review of all produced text threads to ensure completeness and will make a further supplemental production, which Plaintiff anticipates completing by September 22.[6] As to Uber's request to "seek relief from the court" on an expedited timeline, Plaintiff cannot operate on a more expedited timetable than she already is. Plaintiff's counsel worked around the clock — including late into the evening, to deliver a supplemental production in advance of the second day of Plaintiff's deposition, all while simultaneously preparing for a trial that is only weeks away. At some point, Uber's discovery demands must be bound by what is relevant and proportional.

Plaintiff has already addressed the alleged "missing texts" from 2020 at length, including in Mr. Sloves' supplemental declaration, and at Plaintiff's deposition.[7] The gaps stem from Plaintiff's phone changes over time, not from some intentional concealment. Plaintiff opposes Uber's eleventh-hour request for forensic access to her phone as untimely and unsupported, for the reasons set forth in Plaintiff's statement in the forthcoming PTO 8 brief on the issue.

## VI. <u>Production of Expert Documents.</u>

**Defendants' Position:** Plaintiff disclosed two expert witnesses who performed psychological testing of the Plaintiff: Dr. Feltoon and Dr. Leibowitz. The Court previously addressed issues related to psychological testing and made clear such data had to be produced. ECF 4872. Nonetheless,

---

[6] Critically, this was not an "improper exclusion" of material. Because each text message alone is captured as an individual document, applying search terms to the collection broke apart continuous conversations that had to be manually re-threaded into their original form. There were technical issues with that process. It has been remedied. As for Uber's "startling" example – it was produced almost instantaneously after Uber raised it, and without redaction of all irrelevant texts within that thread.

[7] To be clear: Plaintiff has produced nearly 2,000 pages of text messages, has produced hundreds of pages from social media, and has provided authorizations for both her phone and social media accounts.

Plaintiff has needlessly delayed providing Uber with this data, all of which has impeded Uber's ability to prepare for trial and these depositions.

Dr. Feltoon's role is largely limited to performing and interpreting psychological testing. As such, under Rule 26(a)(2)(B)(ii), Plaintiff should have produced his testing documents along with his report on September 4. Instead, Plaintiff ignored Uber's repeated requests that they produce this data and waited until September 9 at 3:26 PM ET—the day before Dr. Feltoon's scheduled deposition—to send a proposed stipulation that they indicated needed to be entered by the Court before Dr. Feltoon could produce any testing documents. While Uber proceeded on September 9 in a limited capacity, the only dates offered by Plaintiff to complete this deposition are October 8 and 9, which are after trial is set to begin. Plaintiff claims these are the earliest dates they can offer because Dr. Feltoon is traveling out of the country, but that is neither acceptable nor credible. One of Plaintiff's other experts, Dr. Levy, testified that she spoke to Dr. Feltoon for 45 minutes on September 20, 2026 in order to prepare for her deposition, meaning that he is able to make himself available when it suits Plaintiff's needs.

Moreover, this is a problem of Plaintiff's own making. If the testing documents had been timely produced, the deposition would now be complete. Plaintiff should not be able to shield Dr. Feltoon when trial is set to begin October 5. Particularly given certain aspects of Plaintiff's responses to Dr. Feltoon's testing that even Dr. Lebowitz characterized as "disquiet[ing]," it is critical that Uber be allowed to depose him before opening statements. Uber also intends to raise this issue with Judge Breyer during the September 25 pre-trial conference.

Plaintiff attempts to muddy the waters by raising concerns related to Cynthia Rudin. But her arguments are disingenuous and not remotely analogous. To be clear, Uber produced Dr. Rudin's raw data and calculations that she intends to rely upon for her opinions in native format prior to her deposition. Uber also produced all relevant billing information in advance of Dr. Rubin's deposition.

**Plaintiff's Position:** Uber does not dispute that ECF 4872 is inapplicable to Dr. Feltoon. Uber is aware that Dr. Feltoon, as a licensed clinical psychologist, may only provide his raw data to another licensed psychologist or under a court order per the applicable licensing authority and state statutes. Because Uber does not have a psychologist eligible to receive such documentation, the only option

remaining was a court order/stipulation specific to Dr. Feltoon. Given this significant and known statutory limitation, Plaintiff disputes that she was required under Rule 26(a)(2)(B)(ii), to have produced his testing documents along with his report on September 4.

Plaintiff circulated the proposed stipulation- in advance of Dr, Feltoon's deposition to ensure timely production. Uber delayed on its responses, e.g., taking over a day, and countless emails to respond to the proposed stipulation, and did not provide revisions to the proposed stipulation until after his deposition. Upon entry of the order, Dr. Feltoon's documents were produced within 24 hours.

Uber is, and has been, aware that Dr. Feltoon is out of the country for his 60th wedding anniversary and will be traveling between destinations throughout his trip. The fact that Ms. Levy was able to have a telephone conversation with Dr. Feltoon does not make said fact less credible. As Uber is aware, a deposition appearance from outside of the country will necessarily require more than good cell phone reception. Prior to Dr. Feltoon's September 10 deposition, Plaintiff offered to conduct the continuation of his deposition, if necessary, immediately upon his return on October 8 or 9. Both dates would occur in advance of his anticipated trial testimony. Uber provides no basis for requiring the deposition to occur sooner while Dr. Feltoon is outside the country. More importantly, there is no basis to expect that Dr. Feltoon is traveling with the equipment and materials necessary for his deposition. Dr. Feltoon was questioned and confirmed that he was not aware of what the internet capabilities would be like throughout the trip. Thus, requiring his deposition before October 5 can and will likely present technological challenges as well as limited testimony if Dr. Feltoon is not traveling with his necessary materials.

Uber's complaints are particularly disingenuous when it has failed to produce underlying data for its own experts. Notably, Uber's statistics expert, Cynthia Rudin, testified during her deposition that she maintains notes, code, and invoices supporting the opinions she intends to offer at trial, but which Uber has not, and refuses to, produce. Plaintiff requests that Uber be ordered to produce these documents by September 25 and that Dr. Rudin be made available for an additional hour on or before October 2 to address questions about the documents.

## VII. <u>Plaintiff Deposition Date</u>

**Defendants' Position:** On July 22, Uber deposed the Plaintiff for five hours. At that time, Plaintiff had produced very few documents and many requests remained outstanding. As a result, Uber held the deposition open with agreement from Plaintiff's counsel on the record that it could complete the final two hours after Plaintiff finished her document productions, which as described above remain deficient and incomplete to this day. Plaintiff's counsel claim they will correct Plaintiff's document deficiencies by September 23. In order to ensure Plaintiff only has to sit for one additional deposition before trial, Uber has asked Plaintiff to provide times to complete her deposition the week of September 28.

**Plaintiff's Position:** Plaintiff has offered, and Uber has agreed, to the second deposition of Plaintiff. Plaintiff is working to determine if September 28 will be a workable date..

By: */s/Roopal P. Luhana*

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/Michael Vives*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN
MICHAEL VIVES

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC

**ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the above signatories.

Dated: September 22, 2026 /s/ *Roopal P. Luhana*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ *Roopal P. Luhana*