[SUBMITTING COUNSEL BELOW]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*,<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING UBER'S REQUEST FOR FORENSIC EXAMINATION OF PLAINTIFF'S DEVICES**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | CASE NO. 26-CV-01694-CRB<br><br>Judge: Hon. Charles R. Breyer<br><br>Courtroom: 5 – 6th Floor |

The Parties respectfully submit this joint letter regarding Uber's request for forensic examination of Plaintiff's devices.

Respectfully submitted,

DATED: September 24, 2026

By: /s/ Roopal Luhana
ROOPAL P. LUHANA (*pro hac vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
ANDREW KAUFMAN (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Michael Vives
MICHAEL VIVES (*pro hac vice*)
JESSICA DAVIDSON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.,
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
555 California St., 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

ALLISON M. BROWN (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Ste. 1000
Philadelphia, PA, 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

KIM BUENO
State Bar No. 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**Uber's Position:** For months, Plaintiff has sought to hide her preservation failures, attempting to hold Uber at bay while its time to prepare for trial runs out. Plaintiff first told the Court that there were no preservation issues in this case (ECF 6483 at 2) despite knowing she no longer had her phone from the time of the alleged incident (Ex. 1 (6/29/26 Velez Email)); then she argued she had no preservation obligations before 2023 (ECF 6959 at 5) while concealing an August 2020 email exchange with lawyers about her claims (Ex. 2 (Pl.'s Priv. Log) at 7, 9); and still later, she contended that Lance Sloves was the "only expert used to collect or recover data" from Plaintiff's devices (ECF 7100 at 3-4) despite claiming that an expert made conclusions about the data on certain of those devices *a week before Mr. Sloves began working on them* (Ex. 3 (7/8/26 Velez Email)). The Court has already ruled that "Plaintiff and her counsel have made inconsistent statement[s] about the degree to which prior potentially relevant communications could be recovered." ECF 7012 at 4. Unfortunately, this conduct continues.

Given Plaintiff's inconsistencies and obfuscation, it comes as no surprise that Dan Roffman, a forensics expert with over two decades of experience, has now concluded that **"it is highly probable that text messages sent and received between June 8, 2020 and March 15, 2024, which existed on Plaintiff's devices were manually deleted or destroyed."** Roffman Decl. ¶ 30; *id.* ¶ 32 (concluding "with high probability that actions taken by the user caused these messages to be destroyed" and that evidence "may indicate" selective deletion). Mr. Roffman also found that Plaintiff and her experts have failed to conduct "simple and routine procedure[s]" that could reveal what happened to her texts. *Id.* ¶¶ 25-27, 30-31. Plaintiff's three-month-long refusal to provide any meaningful information related to her potential spoliation of relevant evidence—*including at least 313 texts sent in the days surrounding the alleged incident*—has left critical questions unanswered. With trial weeks away, Mr. Roffman must immediately have the opportunity to analyze the metadata from Plaintiff's current phone, the related backup (the "2024 Backup"), and the relevant laptop (the "Devices"), or the complete, unaltered forensic images thereof (which were already created) to determine whether Plaintiff spoliated evidence. Mr. Roffman can assess the necessary metadata ***without viewing any of the content on the Devices***—a typical process he has engaged in "thousands of times." Roffman Decl. ¶¶ 33-34.

**Background.** As early as August 20, 2020, Plaintiff was discussing her claims with lawyers. *Seven months later*, Plaintiff voluntarily traded in the phone she had at the time of the alleged incident (the "2020 Phone") for a new phone (the "2024 Phone"). In March 2024, Plaintiff damaged the 2024 Phone and obtained her current phone. While counsel claimed the data on those devices was lost with each new phone, Plaintiff testified that she transferred the data. After contradicting statements about whether *any* text messages from 2020-2024 existed, Plaintiff produced two text threads from her current phone—from 2021 and 2024—and 204 text threads from a 2024 Backup that Plaintiff initially claimed did not exist. Roffman Decl. ¶¶ 14-18. Those 204 threads included 203 threads from 2021 and one from 2024 that are not on the current phone even though Plaintiff said the 2024 Backup was a backup of that phone. *Id.* ¶ 31. Plaintiff also exchanged at least 313 texts in the day before and two days after the incident. **None of those messages—*nor any texts from 2020, 2022, or 2023*—has been identified or produced.**

Plaintiff's repeated claims that she took extensive steps to recover these messages (*e.g.*, Ex. 4 (Hr'g Tr.) 16:22-23), are untrue. Plaintiff *still* has not issued subpoenas to *any* third parties attempting to recover those texts. To the contrary, she opposed Uber's attempts to obtain them. ECF 7011. And although Plaintiff's expert imaged her devices and searched them for responsive documents, neither Plaintiff nor her expert performed routine forensic analyses to determine whether data was wiped or deleted. For example, the Devices could have been examined to determine whether data logs contained signs of such deletion, or even more simply, Plaintiff could have compared the number and dates of files on the 2024 Backup to those on Plaintiff's current

phone—which should contain the same files—to determine whether texts had been removed. Roffman Decl. ¶¶ 20-28. Plaintiff has not done so. *Id.* Plaintiff's refusal to undertake these efforts is particularly concerning given Mr. Roffman's conclusion that it is "highly probable" that relevant messages "were manually deleted or destroyed." *Id*. ¶¶ 30-32.[1]

**Legal Standard.** Rule 34 "allows a party to request 'to inspect'… among things 'data or data compilations… stored in any medium.'" *People Ctr., Inc. v. Deel, Inc.*, No. 3:25-cv-02576-CRB at * 7 (N.D. Cal. June 5, 2026) (Cisneros) ("*Deel*"). Particularly where "a requesting party has established that 'serious questions exist as to the reliability and the completeness of materials produced in response to… discovery requests,' a forensic inspection of a device that stores electronic information [may be] justified." *Id.* (citation omitted); *see also Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734, 737 (9th Cir. 2024) (affirming an order for inspection of a party's phone, *including content*, because the party was unable to produce messages that others testified existed).[2]

**Plaintiff's "Highly Probable" Deletion of Text Messages Justifies Inspection.** There is no dispute that Plaintiff's current phone is missing text messages—including the 313 texts in Plaintiff's phone records and 204 threads from the 2024 Backup. The Court already found that at least some of the missing texts were destroyed ***after*** Plaintiff's obligation to preserve arose. ECF 7012 at 4. Some of these texts were clearly relevant to Plaintiff's claims. Phone records and Plaintiff's own testimony show that she sent texts right after the alleged incident—which would be relevant to Plaintiff's mental state no matter the nature of the texts. Ex. 5 (Pl. Dep.) 210:18-212:14. Additionally, her friend, M.S., who regularly communicated with Plaintiff through text message, recalls sending messages following the alleged incident checking in on her. Ex. 6 (M.S. Dep.) 18:1-19:2, 44:5-49:19.[3] Plaintiff has produced *no* text messages with M.S.

The loss of these messages is not accidental. Mr. Roffman concluded that the disappearance of messages on the 2024 Backup from Plaintiff's current phone makes it "highly probable" that those messages were deleted and that, "when coupled with the other gaps" in Plaintiff's productions, there is a "strong[] suggest[ion] that others may have been deleted as well." Most significantly, the available evidence indicates "with high probability that actions taken by the user caused these messages to be destroyed." Roffman Decl. ¶¶ 2, 30-32. The Ninth Circuit has allowed inspection of a party's phone, *including content*, for less. *Jones*, 95 F.4th at 734, 737.

Plaintiff has no basis to question Mr. Roffman's expert conclusions. Neither Plaintiff nor her counsel have any forensic expertise, and Plaintiff offers no expert declaration to support her arguments. Mr. Roffman cannot state with any certainty how the texts were deleted precisely because he needs the image to know that. And Uber has the right to test Plaintiff's testimony that she did not intentionally delete messages with objective evidence. Not only did Plaintiff herself testify that she transferred her data to her current phone, but both her current phone and the 2024 Backup of the current phone *contain texts from 2021 and 2024*—objective evidence that the data was in fact transferred. And even if messages *were* lost in that transfer, Plaintiff had a duty to

[1] The Court has instructed Plaintiff to explain a July 8 email stating that an "expert [] repaired and conducted a forensic image of Plaintiff's laptop," and "imaging did not uncover contemporaneous text[s]" (Ex. 3), given Mr. Sloves's declaration that he did not image the laptop until July 15 (Ex. 7 (Supp. Sloves Decl.) ¶ 15). ECF 7103. Plaintiff has failed to provide any meaningful explanation. Ex. 8 (Supp. Hilton Decl.); Ex. 9 (9/24 Hilton Decl.).

[2] Plaintiff misrepresents *Areizaga v. ADW Corp.*, 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016). There, the defendant admitted it could obtain the information sought using the workstation already in its possession rather than analyzing plaintiff's personal computer. In *A.M. Castle & Co. v. Byrne*, there was no evidence of deletion. 123 F. Supp. 3d 895, 908 (S.D. Tex. 2015).

[3] Uber did not "misconstrue[]" M.S.'s testimony, as evidenced by Plaintiff's phone records.

preserve given that she had already reached out to lawyers in 2020.

**Uber Only Seeks Metadata, Obviating Privacy Concerns.** Uber has made clear that it "***does not seek to have anyone look at the contents*** of Plaintiff's devices such as messages, emails, photos, videos, audio recordings, application content, or anything else of this nature." Ex. 10 (9/12/26 Love Email). Courts assess privacy rights in relation to the *content* of a device, not its metadata. *Deel*, at *12-13; *Jones*, 95 F.4th at 737-738. Thus, any privacy concern is obviated by Uber's metadata-only protocol. *See Deel*, at *12. In any event, the Ninth Circuit has held that where there is evidence a party deleted relevant text messages and "failed to produce discoverable messages," the need for a forensic examination outweighs even "a strong privacy interest in the content of mobile phones." *Jones*, 95 F.4th at 737-738. All of those factors exist in this case. *Id.*

**Uber's Request is Not Untimely Or Waived.** Uber has diligently sought to understand the extent of Plaintiff's preservation failures for months (*see* ECF 6959, 7100) and was stonewalled at every turn (*e.g.*, ECF 7012, 7103). She should not be rewarded for delay. As recently as August 25, the Court ordered Plaintiff to produce more information related to her preservation failures, including an authorization for her phone records. ECF 7103. Mr. Roffman was retained by Uber two days later. By September 12, he had reviewed the relevant materials and provided a declaration. Moreover, Uber has certainly shown the diligence required for good cause. ECF 5263 at 3. And Plaintiff's argument that the Court already rejected these arguments is incorrect for many reasons, including that Mr. Roffman's conclusions are new to the Court.

Plaintiff faults Uber for not seeking forensic inspection sooner, while simultaneously arguing that such relief requires concrete evidence rather than speculation. But Uber did everything in the correct order by first expressing concerns to Plaintiff, then retaining an expert, and finally seeking inspection only after that expert identified objective evidence warranting further analysis.

Because Uber has almost no time to assess the full import of Plaintiff's spoliation and seek appropriate relief, Mr. Roffman should **immediately** be allowed to analyze the Devices.

**Plaintiff's Position:** Nearly a month ago, this Court found Plaintiff's ESI expert declarations sufficient and rejected Uber's speculation about spoliation as a basis for further discovery. ECF 7103. Now, with jury selection less than one week away, Uber asks this Court to order a forensic examination of a sexual assault survivor's personal phone and laptop. The standard for such relief is demanding for good reason. Courts require specific, concrete evidence of intentional concealment or destruction of evidence before permitting a stranger to rummage through the most intimate corners of a person's digital life. Uber has not come close to meeting that standard.

**Uber's Request is Untimely:** Uber did not identify Mr. Roffman or demand access to Plaintiff's devices until September 12, 2026 — eleven days after the September 1 substantial completion deadline and less than three weeks before jury selection. This request by any objective measure is untimely. It is also forfeited. Despite previously raising the same underlying arguments weeks ago, Uber never sought direct access to Plaintiff's devices, a forensic image, or their own expert examination during the Parties' Joint Letter briefing over Mr. Sloves's deposition. Discovery was still open and the issue was squarely before the Court. If forensic imaging were truly necessary, that was the time to ask. Instead, Uber raised it for the first time right before trial and after discovery closed. Uber's disclosure that Mr. Roffman was retained *after* the Court denied Uber's request to depose Mr. Sloves is proof-positive that this exercise is discovery-on-discovery for its own sake and will not end here.

**Uber's Request is Extraordinary.** Courts are unambiguous: "direct access to an opposing party's electronic storage device" is "highly intrusive," and Rule 34 is "not meant to create a routine right" to a party's electronic information system. *A.M. Castle & Co. v. Byrne,* 123 F. Supp.

3d 895, 900 (S.D. Tex. 2015); *see People Ctr., Inc. v. Deel, Inc.*, 2026 WL 1628697 (N.D. Cal. June 5, 2026). In particular, there is a strong, recognized privacy interest in individuals' personal cell phones. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig*., No., 2024 WL 3498235, at *3 (N.D. Cal. July 19, 2024) (collecting cases).

There is no metadata-only exception to the presumption against forensic examination of personal devices, and Uber cites no case saying there is none. The Northern District of Texas rejected this very argument in *Areizaga v. ADW Corp.*, holding that a defendant's proposal to use a third-party vendor to restrict the defendant's access to Plaintiff's substantive and personal information did not alleviate privacy concerns, and denied the request. 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016) (where defendant sought Plaintiff's log and event files not only to provide a more "complete analysis" of material in defendant's possession, but also because Plaintiff's devices are "nevertheless" potentially relevant to other claims and defenses in the case); *see also*, *e.g.*, *Allstate Ins. Co. v. Birnhak*, 2026 WL 2350330, at *2 (E.D.N.Y. Aug. 13, 2026) (recognizing "legitimate privacy interests" in metadata alone).

There must be a showing of "good cause" to allow for forensic inspection of a party's device. *Deel*, 2026 WL 1628697, at * 1 (N.D. Cal. June 5, 2026) (finding good cause as to one defendant but not another, based on the extent of evidence of intentional conduct). "Good cause" requires more than mere speculation. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735-36 (9th Cir. 2024) (finding forensic inspection to be appropriate where the party obtained a new phone shortly after being ordered to hand over device for imaging). Generalized assertions that imaging is needed to ensure that data was not spoliated are insufficient. Where there is no reason to believe the Plaintiff intentionally destroyed relevant ESI or was unwilling to preserve it, forensic imaging simply for the sake of arguing spoliation is not appropriate. *Dodd v. Hendrickson USA*, LLC, 349 F.R.D. 286, 312 (W.D. Ky. 2025).

**The Roffman Declaration Does Not Justify an Inspection.** Rather than serving to answer a genuine forensic question, the Roffman Declaration exists to manufacture one. The parties agree that a small number of Plaintiff's text messages from the relevant period are no longer on her current phone. Plaintiff has been candid with Uber about this gap since discovery began this summer, and Uber has known about it for months. Roffman Decl. Ex. 7 at 1 (from 7/23/2926 Ltr. "Plaintiff has not identified text messages from the time period 2020-2021."); Roffman Decl. ¶ 16.

**Plaintiff Has Already Sworn She Did Nothing Wrong.** Long before Mr. Roffman ever opined on the subject, Plaintiff gave a full account of what happened with her phones. Under oath, and without hesitation or caveat, Plaintiff testified that she never intentionally deleted any messages relating to the assault. *See* Ex. 5, Pl.'s Dep. 268:20–269:1. Plaintiff testified that she never turned off any automatic backup function on any of her phones. *Id.* 268:6–8. Plaintiff testified that she is "the absolute worst with technology" and that "[a]ny backups that have been done I have not done myself" and occurred automatically. *Id.* 269:4–6. Plaintiff testified that each time she upgraded her phone at T-Mobile, the data was transferred from her prior device by store employees. *Id.* 278:2–5. This sworn testimony is the fundamental starting point for any genuine inquiry into preservation, and is exactly the kind of testimony courts look to first when grappling with a preservation issue like this one.

**Routine Phone Replacements Explain the Gap.** Plaintiff replaced her phone at a T-Mobile store in February of 2021, and again in March of 2024 after her previous phone was damaged. Any gaps in her text messages are the ordinary, well-documented byproduct of those routine phone migrations, not evidence of deliberate deletion. *See* Roffman Ex. 7 (7/23/26 Grille Letter) at 1; Roffman Decl. ¶¶ 10–11. This explanation has, again, been known to Uber since July 2026 and has not changed in any way over time, either before entry of ECF 7103 or after. *See*

Roffman Ex. 5 (June-Aug. Emails) at 40 (7/8/26 Velez Email); Roffman Ex. 7 at 1; Roffman Decl. ¶¶ 10–11."

**Mr. Roffman's Theory Rests on Speculation and Ignores the Record.** Mr. Roffman infers that because a few messages from 2021 and 2024 survive on the current phone, other messages were "deleted or destroyed" in an effort at spoliation. But his declaration fails to support that inference. Mr. Roffman cannot even settle on a single theory of destruction, offering that Plaintiff either "manually de-activated settings which would have preserved her text messages" *or* "enabled a retention policy which destroyed" them. Roffman Decl. ¶ 33(d). An expert confident he has found evidence of spoliation does not need two contradictory theories to explain it.

Worse, Mr. Roffman's mutually exclusive theories are also contradicted by the record already before this Court, a record that Mr. Roffman did not consider. Mr. Roffman does not evaluate what Plaintiff testified happened to her devices before offering a "high probability" conclusion to the contrary. His conclusions are pure speculation (totally unmoored from the only firsthand account of what actually happened), and so fall well short of the "specific, concrete evidence" required. *Lewis v. Archer Daniels Midland Co.*, 2018 WL 6591999 at *2. Uber's suggestion that Plaintiff should have offered a competing expert misplaces the burden. As the party seeking this extraordinary relief, Uber bears the burden of justifying it. Because Mr. Roffman's declaration falls well short of establishing the good cause required for a forensic examination, Uber's request should be denied.

Whatever one makes of Mr. Roffman's speculative and contradictory theories, they lead nowhere. Roffman cannot claim that his analysis will reveal whether any of these purportedly missing messages were actually responsive.[4] He cannot even distinguish a deleted message from one lost to a routine phone upgrade, let alone say whether any such message had anything to do with this case at all. This exercise will only confirm Plaintiff has already attested under oath: that she never wiped or erased her phone, and that she set her phone to save texts indefinitely, and that due to phone upgrades, some texts are missing. Consequently, Mr. Roffman's testimony will not resolve this dispute. It will only provide Uber with a pretext for the next dispute.

**The Record Shows Only Plaintiff's Cooperation:** Uber's suggestion that Plaintiff is "obfuscating" or that counsel is "concealing evidence" is unfounded.[5] Since the Court issued ECF 7103, Plaintiff has not paused for a single moment. *See* Ex. 9, Hilton Decl. at ¶¶ 1-18 (detailing Plaintiff's discovery efforts). With trial imminent, Uber has contrived another eleventh-hour forensic dispute seemingly designed to divert Plaintiff's counsel away from trial preparation and into a reactive scramble. Uber cannot credibly claim its own trial preparation time is "running out" because of Plaintiff's conduct when the record shows the opposite: it is Plaintiff who has met every demand on an accelerated timeline, only to find that Uber has once again shifted the goalposts. That is not a coincidence; it is procedural gamesmanship – and this Court should not reward it.

---

[4] Uber misconstrues third-party M.S.'s deposition testimony, which likely referred to Facebook messages, not text messages. M.S. testified that he and Plaintiff communicated "[m]ostly through text or, yeah, I think Facebook Messenger" and that he no longer has any of those messages because he used to communicate with Plaintiff back then is gone. Ex. 6, 18:22-19:15. Plaintiff has produced Facebook Messages from as far back as 2019.

[5] Uber's accusations follow on its false claims that Plaintiff engaged in "witness tampering," "hid[] the ball regarding her phone preservation and collection efforts," and lied about her mental health during negotiations concerning Uber's DME. The recurring pattern in this case is Uber makes unsubstantiated and unprofessional accusations, the Court finds them to be baseless, and, undeterred, Uber continues to make them anyway.

**FILER'S ATTESTATION**

I, Michael Vives, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Michael Vives*
Michael Vives