# EXHIBIT 7

M. Kevin Queenan (TX SBN 16427150)
*Appearance pro hac vice*
Carlos Lopez (TX SBN 24083414)
*Appearance pro hac vice*
**QUEENAN LAW FIRM P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com
*Attorneys for Plaintiff Jane Doe QLF 001*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | MDL No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.; C.A. No. 1:26-cv-01694-CRB* | **SUPPLEMENTAL AND AMENDED DECLARATION OF LANCE E. SLOVES**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 15th Floor<br><br>Judge: Honorable Lisa J. Cisneros<br>Courtroom: G –15th Floor |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 501 |

# DECLARATION OF LANCE E. SLOVES

I, Lance E. Sloves, declare the following:

1. I am over 18 years of age and am a resident of Texas, and I have personal knowledge of the statements set forth below and could testify as to same if called upon to do so.

**Background and Expertise**

2. I am the Founder and President of Computer Forensic Services, Inc. ("CFSI"), a Texas corporation specializing in computer forensics, mobile device forensics, and eDiscovery in support of evidentiary analysis in State and Federal Court proceedings. I previously served as a Special Agent with the U.S. Government and as a consultant with First Advantage Litigation Consulting (now Consilio) and Grant Thornton LLP. In addition to my role at CFSI, I have served as an instructor for the U.S. State Department, training foreign law enforcement personnel in digital forensic techniques. I hold a bachelor's degree in information technology and maintain the following professional certifications: Certified Computer Examiner (CCE), Certified Cellebrite UFED Mobile Phone Examiner, and certification in cell tower analysis and call detail record (CDR) analysis. Over the course of my career, I have conducted thousands of forensic examinations and forensically imaged thousands of computers, mobile devices, and other electronic storage media. A true and correct copy of my curriculum vitae is attached hereto as Exhibit A and incorporated herein by reference.

3. I have been qualified and served as a computer/mobile device digital forensic expert in Federal, State, and local district courts since 1999, supporting law firms, corporations, the courts, and law enforcement agencies in both civil and criminal proceedings. To date, I have performed more than 1,000 mobile data extractions and analyses. Over more than 27 years in the industry, my forensic work product has been accepted without challenge to methodology or disruption to proceedings.

4. I have read the Protective Order entered in this MDL, executed the acknowledgment required thereunder, and have handled all materials described below in compliance with its terms.

**Scope of Engagement**

5. I was contacted by counsel M. Kevin Queenan of the Queenan Law Firm, P.C., to perform forensic collection and analysis of electronically stored information ("ESI") in this matter."

**Collections of Apple iPhone 15 and MacBook**

6. I imaged Plaintiff's Apple iPhone 15 and her Apple MacBook. In order to do this, I used Cellebrite Inseyets version 10.10.0.286 to image the iPhone device, and Cellebrite Digital Collector version 3.9 to image her Apple MacBook. Both Cellebrite Inseyets and Cellebrite Digital Collector are industry-standard forensic tools widely used by digital evidence experts for the acquisition and preservation of mobile device and computer data.

7. After forensically imaging each device, I processed and analyzed Plaintiff's Apple MacBook in the forensic program Magnet Axiom Version 10.2.0.49217 ("Magnet Axiom"). I also processed and analyzed Plaintiff's Apple iPhone 15 using the forensic program Oxygen Forensic Detective Version 18.3.0.100 ("Oxygen Forensic Detective").

8. Both Magnet Axiom and Oxygen Forensic Detective are industry-standard, commercially available software products used by digital evidence experts. These applications (Magnet AXIOM and Oxygen Forensic Detective) allowed me to search and analyze content stored on the device.

9. I have been informed by Counsel that Plaintiff had two previous iPhones prior to the iPhone 15 I examined. I have been informed by Counsel that Plaintiff had one phone during the incident in 2020, and that she subsequently replaced that phone in 2021. I was informed by Counsel that the phone Plaintiff had from 2021 was destroyed after

being dropped in water in 2024, which is when she obtained the iPhone 15. I examined the iPhone 15. Plaintiff's two previous phones were not available to me for imaging or examination.

10. I have been informed by Counsel that Plaintiff has had the same MacBook computer since 2018, which is the MacBook I have examined.

**Search of Plaintiff's iPhone 15**

11. I imaged Plaintiff's iPhone 15 on June 23, 2026.

12. After processing and analyzing Plaintiff's iPhone 15, I was given a set of search terms to search the iPhone 15. I used Oxygen Forensic Detective to conduct these searches.

13. In connection with the iPhone 15 examination, I performed a Full File System ("FFS") extraction of the device.

14. I applied the search terms provided by Counsel to all processed iPhone data, including text messages, email messages, applications, notes, and files. I produced the resulting data to Counsel.

**Search of Plaintiff's MacBook**

15. I imaged the Plaintiff's MacBook on July 15, 2026.

16. After acquiring a forensic image using Cellebrite Digital Collector version 3.9, I processed the MacBook image in Magnet AXIOM, which created an index of artifacts & content of the device. Specifically, my examination of the MacBook included:

    a. **Messages Data:** I examined the MacBook for Apple Messages application data;

    b. **iTunes Backups:** I examined the MacBook for local iPhone backups created through iTunes. No local iPhone backups were identified on the MacBook;

    c. **Synchronized Apple Account Data:** I examined the MacBook for Apple local account-synchronized data, including iCloud Drive artifacts and any locally cached cloud content.

17. After processing and analyzing Plaintiff's MacBook, I was given the same set of search

terms used on the iPhone 15 to search Plaintiff's MacBook using Magnet Axiom. I applied the search terms provided by Counsel to all processed MacBook data, including email, documents, and messaging application artifacts. I produced the resulting data to Counsel.

**<u>Collection of Apple iCloud Backups</u>**

18. At the time I first collected and imaged the subject iPhone on June 23, 2026, I believed the forensic software I use for iCloud backup extraction, called Elcomsoft Phone Breaker ("Elcomsoft"), did not have support for iCloud backups.

19. This is because, beginning with the introduction of iOS 18, Apple made modifications to its cloud infrastructure in 2024, which rendered prior versions of Elcomsoft Phone Breaker unable to access iCloud backups.

20. On June 18, 2026, Elcomsoft released version 11.2 with what it described as "preliminary" support for iOS 26 iCloud backups.

21. However, at the time of my initial collection and imaging of the iPhone 15, I was not yet aware that this latest version had been released.

22. It was only after counsel reviewed the data imaged directly from the phone and raised questions with me that I investigated further and confirmed that a new Elcomsoft release had become available (and would permit access to the previously inaccessible iCloud backup).

23. Consequently, following the initial forensic collection of the iPhone 15 and MacBook, I took additional steps and researched to see if Elcomsoft was supporting iCloud Backup downloads.

24. On July 23, 2026, using Elcomsoft version 11.3 (which had been released on July 16, 2026), I connected to Plaintiff's Apple account and collected all available iCloud backup snapshots. The available backups were dated March 14, 2024 and March 15, 2024. I downloaded these two available backups and processed them using Oxygen Forensic Detective. No other backup snapshots were available within the account at the

time of collection.

**Results of Search Efforts**

25. I understand from Counsel that after exporting these items from Plaintiff's iPhone 15, MacBook and iCloud backups to Counsel, these items were provided to Counsel's e-discovery vendor, who applied native deduplication by custodian (Plaintiff) during processing and provided them to Counsel for review and ultimate production.

26. As a result of the search from Plaintiff's iPhone 15, I have been advised by Counsel that 14,189 non-duplicative items were provided to them for review and production.

27. As a result of the search of Plaintiff's MacBook, I have been advised by Counsel that 5,621 non-duplicative items were provided to them for review and production.

28. As a result of the search from Plaintiff's iCloud sources, I have been advised by Counsel that 966 non-duplicative items were provided to them for review and production.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 24, 2026, at Dallas, Texas.

lance sloves

Lance E. Sloves