# EXHIBIT 8

M. Kevin Queenan (TX SBN 16427150)
*Appearance pro hac vice*
Carlos Lopez (TX SBN 24083414)
*Appearance pro hac vice*
**QUEENAN LAW FIRM P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com
*Attorneys for Plaintiff Jane Doe QLF 001*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | MDL No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.; C.A. No. 1:26-cv-01694-CRB* | **SUPPLEMENTAL DECLARATION OF LAYNE HILTON, ESQ. IN RESPONSE TO AUGUST 28, 2026 EMAIL FROM COHL LOVE**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 15th Floor<br><br>Judge: Honorable Lisa J. Cisneros<br>Courtroom: G –15th Floor |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 501 |

I, Layne Hilton declare as follows:

1. I am an attorney at law, duly licensed and admitted to practice. I am a member of the Plaintiff's Steering Committee ("PSC") in the *In re: Uber Sexual Assault Litigation*. I have personal knowledge of the facts set forth in this Declaration. If called as a witness, I could and would competently testify to the facts stated herein.

2. In response to the Court's Order (ECF No. 7103), I submit this Declaration concerning the forensic imaging of Plaintiff's iPhone, MacBook and iCloud (collectively, the "Devices"), and the collection and processing of Plaintiff's data.

3. The forensic imaging of the Devices was performed exclusively by Lance Sloves. Neither Plaintiff nor her counsel has retained any other person or entity to forensically image either Device at any time before, during, or after Mr. Sloves's imaging efforts.

4. The PSC did, however, retain Magna Legal Services to perform a collection of data from Plaintiff's social media accounts. The retention of Magna Legal Services ("MLS") was disclosed to Uber on August 18, 2026, contemporaneously with the disclosure of Mr. Sloves. *See* Declaration of Adriana Rincon attached as Exhibit A. The scope of MLS's work was limited to the collection of social media data. MLS was not engaged to perform any independent forensic imaging of the Devices, and it has not done so.

5. The PSC also retained International Litigation Services ("ILS"), who received data resulting from Mr. Sloves's forensic imaging collection efforts. ILS was responsible for the ingestion of materials exported by Mr. Sloves following his imaging work, as well as the processing and quality control of those materials (such as de-duplication). ILS was not engaged to perform any independent forensic imaging of the Devices, and it has not done so.

6. I have personal knowledge regarding a statement made by my colleague, Ms. Velez, in correspondence dated July 2, 2026. In that correspondence, Ms. Velez wrote that Plaintiff "was working with experts regarding Plaintiff's devices and data." That reflects the two distinct engagements for which Plaintiff has now provided declarations: (a) the forensic imaging work being performed by Mr. Sloves on Plaintiff's Devices; and (b) MLS, which was also engaged at that time in collecting data from Plaintiff's social media accounts. In re

7. I also have personal knowledge regarding a letter sent by my colleague, Mr. Simon Grille, dated July 26, 2026. In that letter, Mr. Grille used the term "specialists" in connection with the work being performed on Plaintiff's Devices. I have personal knowledge of the context in which that term was used, and I can attest that Mr. Grille's reference to "specialists" in the July 26 Letter was intended to encompass two distinct engagements: (a) the forensic imaging work performed by Mr. Sloves on Plaintiff's Devices; and (b) the work undertaken by ILS, which assisted with the ingestion of materials exported by Mr. Sloves following his imaging work of Plaintiff's Devices, as well as the processing and quality control of those materials (such as de-duplication).

8. Finally, on July 27, 2026, I wrote an email to Counsel for Uber stating that Plaintiff would be "producing an additional tranche of text messages….from the additional source we discussed on the call today." In that email I was describing the data that was located by Mr. Sloves, and described in his declaration at paragraphs 18-24, and that were collected on July 23, 2026.

On August 28, 2026, I received an email one of Uber's attorneys, Cohl Love, regarding a previous iteration of this declaration served on August 26, 2026. In response to that email I further attest as follows:

1. I have personal knowledge regarding a statement by my colleague, Ms. Velez, on July 8, 2026, wherein she stated that "Plaintiff's expert also repaired and conducted a forensic image of Plaintiff's laptop." I have personal knowledge that to the extent Ms. Velez used the term "expert," she was referring to Mr. Sloves. I have personal knowledge that Plaintiff's Devices were in Mr. Sloves's possession at the time that Ms. Velez made that statement. I have personal knowledge that when Ms. Velez made her statement, she believed Mr. Sloves had commenced his work on the MacBook. I have personal knowledge that only in the context of serving Mr. Sloves's Supplemental Declaration did Ms. Velez learn the exact date the MacBook was imaged. Regardless, documents from the MacBook were produced to Uber by July 20, 2026.

2. Mr. Love requested that I provide clarification on any statements made by Counsel that "no data" existed from any iCloud backup and/or how that comported with my statement from July 27, 2026 that an "additional source" of data existed. I have personal knowledge that to the extent any counsel for Plaintiff stated that "no data" existed (or any similar statementss), those statements reflect and were based upon the issues with the Elcomsoft software and its ability to access data from iPhones (at least as Counsel understood them at that time). This issue has been more fully discussed and described in Mr. Sloves's supplemental declaration at paragraphs 18-24.

3. I have personal knowledge regarding the statements made in ECF 6959. In the context of that statement, Plaintiff wrote that she had retained "data recovery specialists." I have personal knowledge of the context in which that term was used, and I can attest "specialists" as used in ECF 6569 was intended to encompass two distinct engagements: (a) the forensic imaging work performed by Mr. Sloves on Plaintiff's Devices; and (b) the work undertaken by ILS, which assisted with the ingestion of materials exported by Mr. Sloves following his imaging work of

Plaintiff's Devices, as well as the processing and quality control of those materials (such as de-duplication).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 31, 2026, at New Orleans, Louisiana.

Layne C. Hilton