# EXHIBIT 10

| | |
|---|---|
| **From:** | Love, Cohl K. |
| **To:** | Layne Hilton; Andrew Kaufman; Sarah London; Rachel B. Abrams; Kevin Queenan; Roopal P. Luhana; Carlos Lopez; Isabel Velez; Emily Beeson; Simon S. Grille |
| **Cc:** | Brown, Alli; Bueno, Kim; Vives, Michael; Vartain, Laura; Davidson, Jessica; Cox, Christopher; Borge, Theresa |
| **Subject:** | RE: In re Jane Doe QLF 001 v. Uber et al., (Declarations Pursuant to ECF No. 7103) |
| **Date:** | Saturday, September 12, 2026 12:32:23 PM |
| **Attachments:** | 2026.09.06 DRAFT Roffman Declaration(143255634.5) (003).docx.pdf<br>Roffman Decl. Exhibits.zip |

Counsel,

We are following up on Plaintiff's preservation and recovery efforts regarding her devices and text messages from 2020-2024. Plaintiff has made no meaningful attempt to determine what happened to her text messages from 2020-2024, including whether they were deleted or destroyed. Uber has retained a consulting expert who has set forth several industry standard analyses that can be used to determine these facts by analyzing the metadata—*not the content*—on Plaintiff's available devices or their full, complete, unaltered forensic images. To conduct those analyses, Uber's expert requires access to those devices/images. Uber is willing to work out a stipulation and statement of work which would explicitly limit review to metadata and thus avoid any privacy and/or confidentiality concerns. Please confirm that Plaintiff is amendable to providing access to the relevant devices/images provided that the parties reach a mutually agreeable statement of work. As trial is rapidly approaching it is important that this process be expedited. Thus, if we do not receive confirmation that Plaintiff is amendable to this course of action by September 14, 2026 (or if the parties cannot reach an agreement as to the scope of work of Uber's expert by September 18, 2026), we will move forward with PTO 8 briefing.

On June 26, Plaintiff revealed that she had replaced the phone she had at the time of the alleged incident. 6/26/26 Vives Email. Shortly thereafter, Plaintiff also admitted that her replacement phone—which she utilized from February 2021 to March 2024—was damaged when she dropped it in water, at which point she obtained the phone which is currently in her possession. 7/8/26 Velez Email; 7/23/26 Grille Letter. Following these concessions, Plaintiff provided a slurry of inconsistent statements: Plaintiff transferred all of her data between phones (Pl's Dep. at 266:22-268:5, 277:20-278:17), yet she lost all of her text messages in a routine cellphone upgrade (7/23/26 Grille Letter); Plaintiff had no text messages in her possession from 2020 to 2024 (7/16/26 Vives Email), yet she was able to produce a text message from 2021 and a text message from 2024 that were on her current phone (7/23/26 Grille Email); Plaintiff's expert concluded that the only backup in existence related to Plaintiff's phones was a March 2024 backup that contained no data (7/8/26 Velez Email; 7/16/26 Vives Email), yet there was an "additional source"—later revealed to be the same March 2024 backup—which contained at least 966 unique documents (7/27/26 Hilton Email; 8/24/26 Supp. Solves Decl.). These are just examples of some of the statements that prompted the Court to make a finding that "Plaintiff and her counsel have made inconsistent statement[s] about the degree to which prior potentially relevant communications could be recovered." ECF 7012 at 4.

Since the Court's ruling, Plaintiff has only provided more of the same. For example,

Uber is still at a loss as to how Plaintiff could make the representations that "Plaintiff's expert [] repaired and conducted a forensic image of Plaintiff's laptop" and that "[t]he imaging did not uncover contemporaneous text communications surrounding the incident, but did identify additional responsive documents" on July 8, 2026 (7/8/26 Velez Email) when she has been adamant that Lance Sloves was the only expert who made efforts in collecting or recovering messages from Plaintiff's devices (8/31/26 Supp. Hilton Decl.; 8/26/26 Queenan Decl.), and Mr. Sloves was explicit that he did not image that laptop until July 15, 2026 (8/24/26 Supp. Solves Decl. ¶ 15). Likewise, Plaintiff's assertions that her current phone was "last backed up on March 15, 2024" (7/8/26 Velez Email) on July 8, 2026 and that "nothing has been recovered from the back up because nothing was on that back up" on July 15, 2026 (7/16/26 Vives Email) cannot be squared with Mr. Sloves contention that he did not look for or find the March 2024 backup until July 23, 2026 (8/24/26 Supp. Solves Decl. ¶¶ 8, 22-24). While Uber has repeatedly asked for clarification on these issues, Plaintiff has been unable to provide any. *See* 8/31/26 Supp. Hilton Decl. What's more, it is readily apparent from Mr. Sloves's declaration that Plaintiff has only done the most routine collections from her devices—there has been no effort to determine what happened to Plaintiff's messages from 2020-2024. Uber has concerns this is because those messages were wrongfully spoliated. Indeed, the evidence suggests as much. The presence of messages from 2021 and 2024 on Plaintiff's current phone suggests that data from the 2021-2024 phone was transferred to Plaintiff's current phone and yet only two such text messages exist on the phone—*none from 2020, 2022, or 2023*. Moreover, none of the 204 text message threads produced from the March 2024 backup—which Plaintiff has indicated is of the Plaintiff's current phone—are on Plaintiff's phone, suggesting they were deleted since that backup was made.

As the Court already ruled: "Plaintiff in the *QLF001* case has lost and replaced her phone multiple times after the alleged sexual assault in 2020, including after beginning to look for counsel to pursue a civil claim... which would trigger an obligation to preserve relevant evidence. ECF 7012 at 4. Plaintiff began speaking to attorneys about her claims in this action as early as August 20, 2020. Pl's Priv. Log at Nos. 7, 9. Thus, she was under a duty to preserve her text messages from at least that date. Her phone replacements in February of 2021 and March of 2022 are therefore no excuse for her to not have those messages, including those which were sent and received in the hours surrounding the alleged incident as demonstrated by her phone records. DOE QLF 001136. Nevertheless, Plaintiff has made no attempt to analyze what happened to those text messages. *See* 8/24/26 Suppl. Sloves Decl.

Uber has retained a consulting forensic expert, Dan Roffman, and his firm Charles River Associates to assess these issues. From his review, Plaintiff has failed to take several steps that are standard in the industry under such conditions, including comparing the number and associated date ranges of documents that exist on the March 2024 backup to Plaintiff's current phone, analyzing whether there are files in Plaintiff's devices indicated that her phone was wiped or restored to factory settings, or whether the data logs in her phone suggest that messages were deleted or otherwise destroyed. Indeed, Plaintiff has not even confirmed the basic settings on Plaintiff's current phone, including whether automatic backups are enabled—the default for iPhones post-dating 2015, whether message syncing is turned on—the default post-

dating 2018, or whether Plaintiff has enabled certain retention settings which would purge messages after a set amount of time. These are issues Uber has raised extensively. *See, e.g.*, 6/30/26 Vives Email, 7/14/26 Vives Email, 7/14/26 Vives Letter. With trial just around the corner, Uber can no longer stand idly by waiting for Plaintiff to finally explain the years of missing text messages from her phone. Uber must be permitted to conduct its own analysis.

Uber requests that Plaintiff provide her devices (or full, complete, and unaltered forensic images of those devices) to Mr. Roffman to analyze metadata and data logs —*not the contents*—on those devices/forensic images. This data can provide answers to the above questions. Mr. Roffman has acted as a court-appointed and otherwise retained neutral in countless civil cases, and he has engaged in projects with limited scopes of work regularly. Thus, he understands how to stay in the bounds of a statement of work. To be clear, ***Uber does not seek to have anyone look at the contents of Plaintiff's devices such as messages, emails, photos, videos, audio recordings, application content, or anything else of this nature***. We are willing to work out a stipulation with Plaintiff regarding the scope of the work to be done by Mr. Roffman which will make these limitations clear. That being said, Mr. Roffman—who is an expert in forensic collections, data, and recovery—can make certain assessments regarding the potential spoliation of messages by analyzing metadata and data logs in the devices' stores. If Plaintiff is not willing to provide her devices (or their respective forensic images) for these limited purposes, Uber will need to raise this with the Court. Attached is a Draft Declaration from Mr. Sloves which we would intend to attach to a PTO 8 brief. Mr. Roffman reserves the right to amend this draft declaration which is only being supplied for Plaintiff's benefit in understanding his perspective and Uber's position. Please provide the confirmation requested above no later than September 14, 2026. Given Plaintiff's repeated failure to assess or explain the apparent deletion of years' worth of text messages, there is no more time to delay. Accordingly, if we cannot reach agreement by September 18, 2026, we will move forward with a PTO 8 brief. We are available to confer.

Thank you,
Cohl

**Cohl K. Love**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3366 **M** +1 310 330 6153
**F** +1 212 446 4900

cohl.love@kirkland.com

**From:** Layne Hilton <lhilton@meyerwilson.com>
**Sent:** Monday, August 31, 2026 7:15 PM
**To:** Love, Cohl K. <cohl.love@kirkland.com>; Vives, Michael <michael.vives@kirkland.com>; Brown, Alli <alli.brown@kirkland.com>; Bueno, Kim <kim.bueno@kirkland.com>; Davidson, Jessica <jessica.davidson@kirkland.com>; Cox, Christopher <christopher.cox@kirkland.com>