*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.*<br>N.D. Cal. No. 3:24-cv-08783<br>W.D. Tex. No. 1:26-cv-01694 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DECLARATION OF DANIEL ROFFMAN**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 001,<br>Plaintiff,<br>v.<br>UBER TECHNOLOGIES, INC., et al.,<br>Defendants. | CASE NO. 26-CV-01694-CRB<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 501 |

## DECLARATION OF DANIEL ROFFMAN

I, Daniel Roffman, declare pursuant to 28 U.S.C. § 1746:

1. I am over 18 years of age, of sound mind, and competent to make the statements in this declaration. This declaration and information are provided pursuant to and under the provisions of the protective order previously entered in this matter.

## BACKGROUND & CREDENTIALS

2. I am a Vice President in the Forensic Services Practice at Charles River Associates, Inc. ("CRA"). I have more than 20 years of experience in digital forensics, specializing in expert testimony and consulting. I have led thousands of investigations into trade secret misappropriation, data deletion (including spoliation of evidence), online data scraping, data authenticity, and software piracy—with a particular focus in recent years on Apple operating systems such as macOS and iOS.

3. Previously, I was a Senior Managing Director at FTI Consulting in their digital forensics practice for 15 years. I also previously worked in the High Technology Investigations Unit of the Criminal Division of the US Department of Justice. At the DOJ, I assisted in investigations and developed software that was used to track IP addresses and websites that the DOJ investigators analyzed.

4. I have delivered oral or written testimony more than 120 times across federal, state, and international courts, as well as in arbitrations and am frequently appointed by courts as a neutral digital forensic expert in matters involving deletion, alteration, and recovery of data. I am a recognized thought leader in the industry; a frequently requested speaker at conferences; an author of numerous articles and whitepapers on digital forensics, cybersecurity, and trade secret theft; and an innovator in developing unique technical solutions for our clients.

5. I hold a bachelor's degree in Information Systems from the University of Maryland, as well as the EnCase Certified Examiner certification for complex computer investigations and analysis. I have been recognized nine times by Who's Who Legal, an organization that identifies the foremost legal practitioners and consulting experts based upon comprehensive, independent research and was awarded a Certificate of Commendation from the U.S. Attorney General in 2004 for my work in this

field. My curriculum vitae, attached as **Exhibit 10**, further describes my professional credentials, including publications, prior expert reports, and testimony.

6. CRA was retained by Kirkland & Ellis LLP on behalf of their clients Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber") at rates ranging between $290.00 and $1,200.00 an hour for our time. Our compensation is not tied to the outcome of the investigation in any way.

7. CRA was asked to analyze documentation related to the preservation and recovery of data by Jane Doe QLF 001 ("Plaintiff") in this case, including:

a. The Supplemental and Amended Declaration of Lance Sloves dated August 24, 2026, **attached as Exhibit 1**;

b. The Supplemental Declaration of Layne Hilton dated August 31, 2026, **attached as Exhibit 2**;

c. The Declaration of Kevin Queenan dated August 26, 2026, **attached as Exhibit 3**;

d. Relevant portions of Plaintiff's deposition dated July 22, 2026, **attached as Exhibit 4**;

e. Correspondence between counsel from June-August of 2026 related to Plaintiff's devices and data, **attached as Exhibit 5**;

f. A letter from Uber's counsel dated July 14, 2026, **attached as Exhibit 6**;

g. A letter from Plaintiff's counsel dated July 23, 2026, **attached as Exhibit 7**;

h. Records showing text messages and phone calls sent and received by Plaintiff on June 8-10, 2020 produced by Plaintiff as DOE QLF 001136, **attached as Exhibit 8**; and

i. Text message thread produced by Plaintiff as DOE QLF 005423, 5935, 6060, 7780, **attached as Exhibit 9**.

**PLAINTIFF'S DEVICES & DATA**

8. From review of the materials, CRA understands that there is a question as to the existence and/or potential destruction of text messages sent to or received by Plaintiff from June 8, 2020 to March 15, 2024 (the "Relevant Period"). Ex. 5 (June-Aug. Emails) at 14.

9. The alleged incident took place on June 9, 2020. Ex. 7 (7/23/26 Grille Letter) at 1. Phone records from T-Mobile indicate that Plaintiff sent and received, at minimum, 313 text messages between June 8, 2020 and June 10, 2020. *See* Ex. 8 (DOE QLF 001136). These records do not account for any iMessages (messages sent over the internet through Apple's servers) that were sent and received during this time period, only SMS and/or RCS (cellular-service-based) messages. We understand based on conversations with Uber's counsel that Plaintiff has not produced any text messages from 2020, including those reflected on her phone records for June 8-10, 2020.

10. In February of 2021, Plaintiff traded-in the iPhone she had during the alleged incident (the "2020-2021 Phone") and obtained a new iPhone (the "2021-2024 Phone"). Ex. 7 (7/23/26 Grille Letter) at 1. Plaintiff transferred the data from the 2020-2021 Phone to the 2021-2024 Phone. *Id.* at 2; *see also* Ex. 4 (Pl's Dep.) at 266:22-268:5, 277:20-278:17.

11. In March of 2024, Plaintiff damaged the 2021-2024 Phone and obtained a third iPhone (the "Current Phone"). Ex. 7 (7/23/26 Grille Letter) at 1. Despite damaging the 2021-2024 Phone, Plaintiff was able to transfer the data from the 2021-2024 Phone to her Current Phone. Ex. 7 (7/23/26 Grille Letter) at 2; *see also* Ex. 4 (Pl's Dep.) at 266:22-268:5, 277:20-278:17. Assuming that no data was deleted between February of 2021 and March of 2024, the data from the 2020-2021 Phone (which was previously transferred to the 2021-2024 Phone) was also transferred to the Current Phone.

12. On June 23, 2026, Plaintiff's expert, Lance Sloves imaged the Current Phone. Ex. 1 (Supp. & Am. Sloves Decl.) ¶ 11. Mr. Sloves applied search terms supplied by Plaintiff's counsel to that collection, which resulted in 14,189 non-duplicative items that were subsequently provided to Plaintiff's counsel for review. *Id.* at ¶¶ 14, 26. At this time, Mr. Sloves "believed the forensic software [he] use[s] for iCloud backup extraction… did not have support for iCloud backups" and so he did not extract any backups.

13. On July 2, 2026, Plaintiff's counsel stated that they were "working with experts regarding Plaintiff's devices and data." Ex. 5 (June-Aug. Emails) at 51. On July 8, 2026, Plaintiff's counsel made the following statements regarding her devices and data (*id.* at 40-41):

a. "Plaintiff does not recall manually backing up her phone on iCloud."

b. "Our expert concluded that there are no backups on the iCloud related to this [the 2020-2021 Phone]."

c. "In March 2024, Plaintiff obtained [her Current Phone] that was last backed up on March 15, 2024. A forensic image of this device has been made but did not uncover contemporaneous test communications surrounding the incident. The forensic image did, however, identify additional responsive documents…"

d. "Plaintiff's expert also repaired and conducted a forensic image of Plaintiff's laptop, which she owned prior to the incident date" (the "MacBook"). "The imaging did not uncover contemporaneous text communications surround the incident, but did identify additional responsive documents…"

14. Plaintiff's counsel produced one SMS thread containing messages from March 11, 2021 to July 20, 2021 (Ex. 9 (Pl's Text Messages) at 2), and one iMessage thread containing messages from March 11, 2024 to May 7, 2024 (Ex. 9 (Pl's Text Messages) at 1) which were both collected directly from the Current Phone (Ex. 5 (June-Aug. Emails) at 16). CRA understands from conversations with Uber's counsel that no other text messages from the Relevant Period have been produced from the Current Phone, specifically. We are informed by Uber's counsel that Plaintiff has previously filed a letter with the Court claiming that two other message threads produced from Plaintiff's Current Phone represent texts sent during the Relevant Period. *See* Ex. 9 (Pl's Text Messages) at 3-4. These threads do not indicate that they were sent or received via a text message platform (*i.e.* iMessage, SMS, or RCS), but rather by "Message," which may indicate a third-party application such as Facebook, Snapchat, or Signal.

15. On July 15, 2026, Mr. Sloves forensically imaged the MacBook. Ex. 1 (Supp. & Am. Sloves Decl.) ¶ 15. Mr. Sloves applied search terms supplied by Plaintiff's counsel to that collection,

which resulted in 5,621 non-duplicative items that were subsequently provided to Plaintiff's counsel for review. *Id.* at ¶¶ 17, 27.

16. On July 16, 2026, Uber's counsel sent correspondence recapping a meet and confer from July 15, 2026. Ex. 5 (June-Aug. Emails) at 18. According to that recap, Plaintiff's counsel represented at the meet and confer that "nothing has been recovered from the backup [of the Current Phone] because nothing was on that backup" and confirmed that Plaintiff was not in possession of any text messages from 2020 to 2024. *Id*. From what we have reviewed, we have not seen any statements by Plaintiff's counsel denying these statements.

17. On July 23, 2026, Mr. Sloves found the two iCloud backups on one iCloud account belonging to Plaintiff from March 14-15, 2024 (the "March 2024 Backup"). Ex. 1 (Supp. & Am. Sloves Decl.) ¶ 24. Mr. Sloves found 966 non-duplicative items that were subsequently provided to Plaintiff's counsel for review. *Id.* at ¶ 28. It is unclear whether search terms were applied to this collection.

18. On July 27, 2026, Plaintiff's counsel stated they would produce text messages from the Relevant Period from an "additional source" which was identified as two iCloud backups from March 14-15, 2024. Ex. 5 (June-Aug. Emails) at 2; Ex. 1 (Supp. & Am. Sloves Decl.) at ¶¶ 22-24. We are informed by Uber's counsel that Plaintiff produced 204 text message threads (141 iMessage threads and 63 SMS threads) on July 28, 2026. According to Uber's counsel, one of those threads contained a single text message from 2024 and none of the text messages were from 2020, 2022, or 2023.

19. On August 31, 2026, Plaintiff's counsel stated that the July 8 statements regarding their expert's conclusions related to Plaintiff's devices and data all refer to Mr. Sloves and that they "believed Mr. Sloves had commenced his work on the MacBook" prior to that date. Ex. 2 (Supp. Hilton Decl.) at 4.

**METHODOLOGY & PRINCIPLES**

20. When obtaining a new iPhone, users can choose to setup the phone as a new device, migrate their data from one phone to another using an Apple service, or restore a backup from the previous phone. When migrating the data from one phone to another, or restoring a backup, the data

from the user's old phone is transferred to the new phone. Each iPhone has its own unique serial number, and each backup indicates the serial number of the iPhone that is the subject of that backup.

21. Apple introduced iCloud Backup with iOS 5 in 2011. *See Apple to Launch iCloud on October 12*, Apple (Oct. 4, 2011), *https://www.apple.com/newsroom/2011/10/04Apple-to-Launch-iCloud-on-October-12/*. When iCloud Backup was enabled, iPhones could automatically back up to iCloud when connected to power and Wi-Fi and locked. The automated process created a backup approximately every 24 hours.[1] The user was typically only able to restore data from the most recent backups, as opposed to backups that were not as recent.

22. Beginning with the release of iOS 9 on September 16, 2015, iCloud Backup was enabled by default when a user was signed into an Apple Account during the setup of the iPhone. *See Apple Now Automatically Saves Your Data in iCloud Without Your Permission Unless You Opt Out*, Tech Times (Oct. 6, 2015)[2] ("iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud."). *See also iCloud Terms and Conditions*, Apple (last revised Sep. 16, 2015)[3] ("The Service creates automatic backups for iOS devices periodically, when the device is screen locked, connected to a power source, and connected to the Internet via a Wi-Fi network. iCloud will store your last three backups; however, if a device has not backed up to iCloud for a period of one hundred and eighty (180) days, Apple reserves the right to delete the backups associated with that device. Backup is limited to device settings, device characteristics, photos and videos, documents, messages (iMessage, SMS, and MMS), ringtones, app data (including Health app data), location settings (such as location-based reminders that you have set up), and Home screen and app organization…. If you enable iCloud Photo Library, your Photo Library will be backed up

---

[1] Backups are initiated daily if the following is true: the device is connected to a power source, is connected to a Wi-Fi network, the screen is locked and enough space is available in the user's iCloud account. (https://support.apple.com/en-us/108366)

[2] Available at https://www.techtimes.com/articles/91689/20151006/apple-now-automatically-saves-your-data-in-icloud-without-your-permission-unless-you-opt-out.htm.

[3] Available at https://web.archive.org/web/20151021123845/https://www.apple.com/legal/internet-services/icloud/en/terms.html.

separately from the automatic iCloud backup. Your iCloud email, contacts, calendars, bookmarks, and documents are stored in, and can be accessed via iCloud on your devices and computers.")

23. Beginning with the release of iOS 11.4 in 2018, Apple introduced a feature that synchronized messages to iCloud *See* Chalm Gartenberg, *Messages in iCloud Finally Arrives in iOS 11.4 to Fix Your iMessage Syncing Woes*, The Verge (May 29, 2018)[4] ("It's been a long time coming, but Apple is finally launching its Messages in iCloud feature today with the release of iOS 11.4.") Messages in the cloud "Stores all your messages – whether iMessage or SMS — from all your devices in iCloud, which allows for better syncing between devices." *Id.* When this feature is enabled, backups of the phone to iCloud do not include text messages, but the messages are synchronized to all devices signed into the Apple Account (e.g. an iPad, MacBook, etc.). When this feature is disabled, backups of the phone include text messages. In either scenario, messages are stored in iCloud and would be available on a newly purchased phone that was either synchronized with the same Apple Account or restored from an iCloud Backup.

24. Text messages within the Messages application are retained forever by default. A user can adjust the Message retention settings on the user's iPhone, which would purge text messages after a certain amount of time. This setting must be manually changed, and the user must select from the following retention settings: 30 days, 1 year, or forever. Aside from retention settings, a user can delete a message (or an entire conversation) and they are retained for 30 days in an area labeled, "Recently Deleted." A user may also manually purge items from the "Recently Deleted" messages.

25. When analyzing a phone for missing text messages, there are methods that can determine whether data has been erased. Once an iPhone is imaged (as is the Current Phone), an analyst can check the data for a file (typically a file titled ".obliterated") which indicates that the phone was previously wiped and/or restored to factory settings (the "Obliteration Analysis"). This is a simple and routine procedure for forensic analysts which does not require much time or effort. Based on what

---

[4] Available at https://www.theverge.com/2018/5/29/17405420/messages-icloud-ios-11-4-imessage-syncing-apple-iphone-feature.

we have reviewed, it does not appear that Plaintiff or her agents, including Mr. Sloves, have conducted such an analysis.

26. An analyst can also check stored databases on the subject phone for gaps in data, which typically indicate that messages have been deleted (the "Deletion Analysis"). It does not appear that Plaintiff or her agents, including Mr. Sloves, have conducted such an analysis. The Deletion Analysis could include chronological gaps (e.g. no messages between 2021 and 2022), gaps in sequential numbering within the underlying database, or locations where Apple stores information about deletions for synchronization purposes.

27. An analyst may also compare the number of text messages on a backup to the number of messages on the corresponding phone during the same period. If the numbers do not align, that may also be an indication that messages have been deleted. It does not appear that Plaintiff or her agents, including Mr. Sloves, have conducted such an analysis.

28. The principles and methods mentioned above are all widely accepted in the industry, generally known to analysts in the field (and largely available to the public as demonstrated by the sources above), and routinely utilized to determine whether data has been deleted or destroyed from various data sources and, if so, how that data may have been erased.

**DELETION OR DESTRUCTION OF TEXT MESSAGES**

29. Many facts surrounding Plaintiff's devices and data remain unclear. For example, Plaintiff has not indicated what settings are currently active on the Current Phone (*i.e.* whether automatic backups and/or message syncing have been deactivated and whether Plaintiff has implemented a retention setting for her text messages), nor what the date range is for messages that were recovered from the March 2024 Backup that were not produced and how many text messages were found (*i.e.* the number of text messages before search terms were potentially applied).

30. Regardless, based on the information that has been provided, it is highly probable that text messages sent and received between June 8, 2020 to March 15, 2024, which existed on Plaintiff's

devices were manually deleted or destroyed. As described further below, the presence of certain text messages indicates that there were other text messages that were deleted or destroyed.

31. Despite Plaintiff's data from 2020-2024 being transferred to her Current Phone, there were no text messages produced from 2020, 2022, or 2023 on that device and only one message from each of 2021 and 2024. Additionally, Plaintiff has indicated that the March 2024 Backup is a backup of the Current Phone, meaning any data on that backup should still be present on the Current Phone. Yet, based on Plaintiff's productions, messages from the March 2024 Backup are *not* contained on the Current Phone, including the 203 text messages from 2021 and the one text message from 2024 that Plaintiff produced on July 28, 2026. This makes it highly probable that those text messages were deleted from Plaintiff's Current Phone and, when coupled with the other gaps, strongly suggests that others may have been deleted as well.

32. The presence of two text messages from the Relevant Period (one from 2021 and one from 2024) on the Current Phone indicates, at minimum, that other messages from the 2021-2024 Phone should also be contained on the Current Phone, but based on statements and productions from Plaintiff and her agents, there appear to be no other text messages from the Relevant Period on the Current Phone, including those known to exist from the March 2024 backup and Plaintiff's June 8-10, 2020 phone records. Based on the information available to me, this indicates with high probability that actions taken by the user caused these messages to be destroyed. Additionally, the dates of two text threads in the Relevant Period produced from the Current Phone may indicate that there was selective deletion of messages, as there is an extensive period of time between those messages for which no texts have been identified.

**ANALYSIS OF PLAINTIFF'S DEVICES**

33. In order to confirm whether text messages from the Relevant Period were deleted or destroyed, CRA requires more information, including:

a. Confirmation that Plaintiff has provided all Apple Accounts, and identified and provided all devices used between 2020 and present day, which would allow CRA

to confirm that there is not some other account or device that contain the text messages from the Relevant Period;

b. The serial number of the Current Phone and the iPhone serial number recorded on the March 2024 Backup, which would allow CRA to confirm that the March 2024 Backup was taken from the Current Phone and identify the date that the Current Phone was purchased;

c. The circumstances surrounding the setup of the Current Phone, including whether it was originally set up using a backup, and if so, when and how, which would allow CRA to evaluate the transfer of data to the Current Phone and the date by which text messages began originating from the Current Phone rather than the 2020-2021 Phone or 2021-2024 Phone. An expert can verify elements of this from the existing forensic image of the Current Phone;

d. The backup, syncing, and retention settings on the Current Phone, including whether those settings have changed from the settings in the available backups present in iCloud to the date the existing forensic image of the Current Phone was made, which would allow CRA to assess whether Plaintiff manually de-activated settings which would have preserved her text messages or enabled a retention policy which destroyed text messages from the Relevant Period;

e. The number of text messages within the Relevant Period found in the March 2024 Backup and the date ranges for those messages, as well as, the same information for text messages on the Current Phone, which would allow CRA to compare the data and determine whether there are additional messages missing from the Current Phone and where the gaps exist; and

f. Whether an Obliteration Analysis and/or Deletion Analysis indicates that text messages were wiped, deleted, or otherwise destroyed.

34. CRA is capable of analyzing Plaintiff's devices for the above information *without reviewing the substance of any messages or any confidential information*. CRA would simply be

reviewing the metadata—which includes no content of any messages—that is, in CRA's experience, typically exchanged in civil cases. CRA has regularly acted as a neutral and/or court-appointed examiner in litigation and has conducted this type of analysis thousands of times.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 9/11/2026, at Baltimore, MD.

Signed by:
Dan Roffman
9D3E1DE694F0432...

Daniel Roffman

# EXHIBIT 1

M. Kevin Queenan (TX SBN 16427150)
*Appearance pro hac vice*
Carlos Lopez (TX SBN 24083414)
*Appearance pro hac vice*
**QUEENAN LAW FIRM P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com
*Attorneys for Plaintiff Jane Doe QLF 001*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | MDL No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.; C.A. No. 1:26-cv-01694-CRB* | **SUPPLEMENTAL AND AMENDED DECLARATION OF LANCE E. SLOVES**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 15th Floor<br><br>Judge: Honorable Lisa J. Cisneros<br>Courtroom: G –15th Floor |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 501 |

# DECLARATION OF LANCE E. SLOVES

I, Lance E. Sloves, declare the following:

1. I am over 18 years of age and am a resident of Texas, and I have personal knowledge of the statements set forth below and could testify as to same if called upon to do so.

**Background and Expertise**

2. I am the Founder and President of Computer Forensic Services, Inc. ("CFSI"), a Texas corporation specializing in computer forensics, mobile device forensics, and eDiscovery in support of evidentiary analysis in State and Federal Court proceedings. I previously served as a Special Agent with the U.S. Government and as a consultant with First Advantage Litigation Consulting (now Consilio) and Grant Thornton LLP. In addition to my role at CFSI, I have served as an instructor for the U.S. State Department, training foreign law enforcement personnel in digital forensic techniques. I hold a bachelor's degree in information technology and maintain the following professional certifications: Certified Computer Examiner (CCE), Certified Cellebrite UFED Mobile Phone Examiner, and certification in cell tower analysis and call detail record (CDR) analysis. Over the course of my career, I have conducted thousands of forensic examinations and forensically imaged thousands of computers, mobile devices, and other electronic storage media. A true and correct copy of my curriculum vitae is attached hereto as Exhibit A and incorporated herein by reference.

3. I have been qualified and served as a computer/mobile device digital forensic expert in Federal, State, and local district courts since 1999, supporting law firms, corporations, the courts, and law enforcement agencies in both civil and criminal proceedings. To date, I have performed more than 1,000 mobile data extractions and analyses. Over more than 27 years in the industry, my forensic work product has been accepted without challenge to methodology or disruption to proceedings.

4. I have read the Protective Order entered in this MDL, executed the acknowledgment required thereunder, and have handled all materials described below in compliance with its terms.

**Scope of Engagement**

5. I was contacted by counsel M. Kevin Queenan of the Queenan Law Firm, P.C., to perform forensic collection and analysis of electronically stored information ("ESI") in this matter."

**Collections of Apple iPhone 15 and MacBook**

6. I imaged Plaintiff's Apple iPhone 15 and her Apple MacBook. In order to do this, I used Cellebrite Inseyets version 10.10.0.286 to image the iPhone device, and Cellebrite Digital Collector version 3.9 to image her Apple MacBook. Both Cellebrite Inseyets and Cellebrite Digital Collector are industry-standard forensic tools widely used by digital evidence experts for the acquisition and preservation of mobile device and computer data.

7. After forensically imaging each device, I processed and analyzed Plaintiff's Apple MacBook in the forensic program Magnet Axiom Version 10.2.0.49217 ("Magnet Axiom"). I also processed and analyzed Plaintiff's Apple iPhone 15 using the forensic program Oxygen Forensic Detective Version 18.3.0.100 ("Oxygen Forensic Detective").

8. Both Magnet Axiom and Oxygen Forensic Detective are industry-standard, commercially available software products used by digital evidence experts. These applications (Magnet AXIOM and Oxygen Forensic Detective) allowed me to search and analyze content stored on the device.

9. I have been informed by Counsel that Plaintiff had two previous iPhones prior to the iPhone 15 I examined. I have been informed by Counsel that Plaintiff had one phone during the incident in 2020, and that she subsequently replaced that phone in 2021. I was informed by Counsel that the phone Plaintiff had from 2021 was destroyed after

being dropped in water in 2024, which is when she obtained the iPhone 15. I examined the iPhone 15. Plaintiff's two previous phones were not available to me for imaging or examination.

10. I have been informed by Counsel that Plaintiff has had the same MacBook computer since 2018, which is the MacBook I have examined.

**<u>Search of Plaintiff's iPhone 15</u>**

11. I imaged Plaintiff's iPhone 15 on June 23, 2026.

12. After processing and analyzing Plaintiff's iPhone 15, I was given a set of search terms to search the iPhone 15. I used Oxygen Forensic Detective to conduct these searches.

13. In connection with the iPhone 15 examination, I performed a Full File System ("FFS") extraction of the device.

14. I applied the search terms provided by Counsel to all processed iPhone data, including text messages, email messages, applications, notes, and files. I produced the resulting data to Counsel.

**<u>Search of Plaintiff's MacBook</u>**

15. I imaged the Plaintiff's MacBook on July 15, 2026.

16. After acquiring a forensic image using Cellebrite Digital Collector version 3.9, I processed the MacBook image in Magnet AXIOM, which created an index of artifacts & content of the device. Specifically, my examination of the MacBook included:

    a. **Messages Data:** I examined the MacBook for Apple Messages application data;

    b. **iTunes Backups:** I examined the MacBook for local iPhone backups created through iTunes. No local iPhone backups were identified on the MacBook;

    c. **Synchronized Apple Account Data:** I examined the MacBook for Apple local account-synchronized data, including iCloud Drive artifacts and any locally cached cloud content.

17. After processing and analyzing Plaintiff's MacBook, I was given the same set of search

terms used on the iPhone 15 to search Plaintiff's MacBook using Magnet Axiom. I applied the search terms provided by Counsel to all processed MacBook data, including email, documents, and messaging application artifacts. I produced the resulting data to Counsel.

**Collection of Apple iCloud Backups**

18. At the time I first collected and imaged the subject iPhone on June 23, 2026, I believed the forensic software I use for iCloud backup extraction, called Elcomsoft Phone Breaker ("Elcomsoft"), did not have support for iCloud backups.

19. This is because, beginning with the introduction of iOS 18, Apple made modifications to its cloud infrastructure in 2024, which rendered prior versions of Elcomsoft Phone Breaker unable to access iCloud backups.

20. On June 18, 2026, Elcomsoft released version 11.2 with what it described as "preliminary" support for iOS 26 iCloud backups.

21. However, at the time of my initial collection and imaging of the iPhone 15, I was not yet aware that this latest version had been released.

22. It was only after counsel reviewed the data imaged directly from the phone and raised questions with me that I investigated further and confirmed that a new Elcomsoft release had become available (and would permit access to the previously inaccessible iCloud backup).

23. Consequently, following the initial forensic collection of the iPhone 15 and MacBook, I took additional steps and researched to see if Elcomsoft was supporting iCloud Backup downloads.

24. On July 23, 2026, using Elcomsoft version 11.3 (which had been released on July 16, 2026), I connected to Plaintiff's Apple account and collected all available iCloud backup snapshots. The available backups were dated March 14, 2024 and March 15, 2024. I downloaded these two available backups and processed them using Oxygen Forensic Detective. No other backup snapshots were available within the account at the

time of collection.

**Results of Search Efforts**

25. I understand from Counsel that after exporting these items from Plaintiff's iPhone 15, MacBook and iCloud backups to Counsel, these items were provided to Counsel's e-discovery vendor, who applied native deduplication by custodian (Plaintiff) during processing and provided them to Counsel for review and ultimate production.
26. As a result of the search from Plaintiff's iPhone 15, I have been advised by Counsel that 14,189 non-duplicative items were provided to them for review and production.
27. As a result of the search of Plaintiff's MacBook, I have been advised by Counsel that 5,621 non-duplicative items were provided to them for review and production.
28. As a result of the search from Plaintiff's iCloud sources, I have been advised by Counsel that 966 non-duplicative items were provided to them for review and production.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 24, 2026, at Dallas, Texas.

*lance sloves*

Lance E. Sloves

# Exhibit A

# LANCE ELIOT SLOVES

Digital Forensics Expert | Certified Computer Examiner | Testifying Expert

214-306-6470
lancesl@cfsiusa.com
Dallas, Texas
www.cfsiusa.com
CCE #282 | TX PI #A11665
Top Secret/SSBI Clearance

## PROFESSIONAL SUMMARY

Digital forensics professional with over 25 years of investigative experience and more than 1,000 electronic evidence examinations conducted globally. Founder of Computer Forensic Services, Inc., a veteran-owned firm operating since 2002 and recognized as a Top Three Computer Forensics firm in Dallas by *Texas Lawyer*. Qualified and testified as an expert in Texas state courts (civil and criminal) and federal court, with extensive experience in mobile device forensics, call detail record analysis, cell tower mapping, trade secret theft investigations, and electronic evidence data collections.

**NOTABLE CASE WORK:** Amber Guyger (Dallas Police Shooting) • Dr. Christopher Duntsch (Dr. Death) • Barrett Brown (2012–13 Stratfor Email Leak) • Khalid Aldawsari (WMD Terrorism) • Collin Street Bakery Embezzlement

## CORE COMPETENCIES

- Computer & Mobile Device Forensics
- Digital Evidence Imaging & Acquisition
- Timeline Reconstruction & Artifact Analysis
- DVR & Surveillance Video Forensics
- Cell Tower Location Mapping & Analysis
- Call Detail Record (CDR) Analysis
- Cloud-Based Systems Analysis (O365, Google, iCloud)
- Trade Secret & Data Exfiltration Investigations
- Private Investigative Research & OSINT
- Expert Witness Testimony

## CERTIFICATIONS & CREDENTIALS

| | |
|---|---|
| **Certified Computer Examiner (CCE) #282** | ISFCE — Certified 2005; Recertified 2006, 2008, 2010, 2012, 2014, 2016, 2018, 2020, 2022, 2025 |
| **Certified Cellebrite UFED Examiner** | Mobile Forensic Essentials, iOS, Android, Blackberry |
| **Cellular Technology Mapping & Analysis** | CellHawk Cell Tower Analysis Software |
| **Licensed Private Investigator, Texas** | License #A11665 |
| **Top Secret / SSBI Clearance** | U.S. Government |
| **SBA Certified Veteran-Owned Business** | NVBDC Certified |

## PROFESSIONAL EXPERIENCE

### Founder & Director of Forensics — 2002 – Present

*Computer Forensic Services, Inc., Dallas, TX*

Founded and lead a veteran-owned digital forensics firm providing computer and mobile device forensics, CDR/cell tower analysis, eDiscovery, and expert witness services to criminal defense attorneys, prosecutors, and civil litigation teams. Performed thousands of forensic acquisitions across computers, smartphones, USB devices, and cloud platforms. Authored expert reports and provided deposition and trial testimony in state and federal courts across multiple jurisdictions.

### Strategic Partner — 2011 – 2014

*YAdvisors*

Provided computer forensic services as a strategic partner supporting investigations and litigation consulting.

### Part-Time Instructor — 2010 – 2011

*U.S. Department of State, Anti-Terrorism Assistance Program (via Network Designs)*

Taught cyber-crime training courses on behalf of the U.S. Department of State to foreign governments including Mexico and Thailand, improving their cyber-security awareness and investigative capabilities.

**Regional Practice Leader — Electronic Evidence** 2008 – 2009
*First Advantage Litigation Consulting (Corefacts)*

**Manager of Computer Forensics** 2005 – 2007
*Grant Thornton, LLP — Economic Advisory Services*
Managed computer forensic operations including lab setup and maintenance, supervised large-scale electronic evidence projects, conducted forensic examinations, produced expert reports, and presented seminars on forensic best practices.

**Program Analyst — Customs Compliance & Global Sourcing** 2000 – 2004
*JCPenney Purchasing Co.*
Performed customs compliance and import trade analysis while attending university and launching Computer Forensic Services.

**Special Agent** 1995 – 2000
*U.S. Customs Service*
Conducted criminal and civil investigations involving trade fraud, narcotics, and computer crimes. Served as Internet and Computer Forensic investigations coordinator. Designated Seized Computer Evidence Recovery Specialist (SCERS #803).

- Performed and managed civil and criminal trade fraud, narcotics, and computer investigations encompassing complex Federal, State, and Local issues.
- Performed arrests, search warrants, surveillance, interviews, teamwork, and travel for extended periods.
- Internet and Computer Forensic investigations coordinator and field investigator.
- Systems Computer Operations Officer, Treasury Enforcement System.
- Trade fraud coordinator for regional office.
- Participated in trade fraud, narcotics, and computer investigations with other governmental agencies including the International Trade Commission, FDA, Dept. of Agriculture, FBI, foreign governments, and others.

## EDUCATION

**B.S., Information Technology**, DeVry University, Texas — *Magna Cum Laude* 2001
**B.A., Political Science**, Ramapo College of New Jersey, Mahwah, NJ 1991

## INTERNATIONAL INSTRUCTION

- Mexico City, Mexico — Trained Mexican SSP Policia Federal in Introduction to Computer Forensics (two one-week courses)
- Bangkok, Thailand — Trained the Royal Thai Police and Department of Special Investigations in Proactive Internet Investigations (two-week course)

## SPEAKING ENGAGEMENTS (SELECTED)

- Master's Conference — Call Detail Records and Location Information (Oct. 2022)
- TCDLA 18th Annual Forensic Seminar — Criminal Defense Mobile Device and Cell Tower Analysis (Oct. 2021)
- Tarrant County Capital Seminar — Phone Forensics and Historical Cell Tower/CDR Analysis (May 2021)
- Texas Bar Advanced Family Law Drafting Course — Challenges in eDiscovery, Cell Phone Forensics, and CDR (Dec. 2019)
- Dallas Bar Association — Cybersecurity, Privacy, and Professional Responsibility panel (Sept. 2019)
- ACEDS Panel Discussion on Wearable and Mobile Devices (May 2019)
- TCDLA Annual Forensic Seminars — Computer and Mobile Device Forensics (annually, 2005–2022)
- Louisiana Association of Criminal Defense Lawyers Forensic Seminar (Aug. 2017)
- Texas Academy of Family Law Specialists — Surveillance, Wiretapping, and Criminal Implications (Jan. 2017)
- Additional presentations to Dallas Bar Association, Tarrant County Bar, Fort Worth HR Association, Dallas Area Paralegal Association, North Texas PI Association, UTD School of Management, and others (2005–2022)

## PUBLICATIONS

- *"Blue Dot Marks the Spot — Questioning Location Service Data in Legal Cases,"* Texas Criminal Defense Lawyers Association — Voice for the Defense, 2021.
- CFSI Blogs: https://www.cfsiusa.com/blog

## AFFILIATIONS

- International Society of Forensic Computer Examiners (ISFCE)
- Texas Criminal Defense Lawyers Association

## CASE EXPERIENCE AREAS

Capital Murder • Terrorism • Trade Secret Theft • Non-Compete/Non-Solicitation • Fraud & Deception • Forgery • FCPA • eDiscovery • SEC • CFTC • Employee Misconduct • Sexual Harassment • Missing Persons • Wrongful Death • Distracted Driving • Wrongful Termination • Breach of Fiduciary Duty • Intellectual Property • Bankruptcy • Internet Abuse • Child Exploitation • Spoliation • Defamation • Family Law • Military • Personal Injury • Cyberstalking • Unlawful Access to Stored Communications

## TRAINING & CERTIFICATES

- Certified Computer Examiner (CCE), International Society of Forensic Computer Examiners — ISFCE. Re-Certified 2025, 2022, 2020, 2018, 2016, 2014, 2012, 2010, 2008, and 2006.
- PFIC 2022 onsite training.
- Binalyze Computer Forensic and Incident Response Forensic Suite.
- Techno Security and Forensics Conference. Computer forensic, Mobile, Security related training. 24 hours. June 2023.
- PFIC 2022 onsite training Event 18 Hours Computer & Cell Phone Forensics.
- Hawk Analytics ATT Records Breakdown — October 2021.
- PFIC 2021 online Virtual Event 18 Hours Computer & Cell Phone Forensics.
- PFIC 2020 online Virtual Event 18 Hours Computer & Cell Phone Forensics, Network Investigations. September 2020.
- Hawk Analytics Carrier Breakdown Series — Verizon Returns. June 2020.
- Hawk Analytics Cell Site Representation Webinar. May 2019.
- Hawk Analytics CellHawk Software Product Training. November 2018.
- Hawk Analytics Cellular Technology, Mapping & Analysis and Call Detail Records Course. Two Days. November 2018.
- Techno Security and Forensics Conference. Computer forensic, Mobile, Security related training. 30 hours. September 2018.
- CellHawk Training Webinar Cell Tower Analysis and Usage. January 2018.
- Cellebrite and Techno Security Conference Digital Forensics. Mobile and Computer Forensics. Trends Digital Evidence. Cell Towers. 30 Hours. September 2017.
- Texas Academy of Family Law Specialists. Spoke and received credit hours for attending class surveillance, wiretapping statutes and criminal implications of family law. January 2017.
- CTIN Digital Forensics Conference. Training in Computer Forensics, Mobile Forensics and Computer Security. 21 Hours. March 2016.
- Guidance Software CEIC Conference. Hands on and instructional Training in Computer Forensics, Mobile Forensics and Computer Security. 15 hours. May 2015.
- Access Data Users Conference (ADUC) — Instruction, Hands on Training in Mobile, Computer Forensics, Security and eDiscovery. 20 hours. May 2014.
- Certified Cellebrite UFED Mobile Phone Examiner. 2012. Sumuri's SURVIVING MOBILE FORENSICS. 40 hours of training and certification in Mobile Forensic Essentials, Cellebrite UFED Logical & Physical extraction and analysis of Mobile Phones. iOS, Android and Blackberry Forensics.
- The Computer Enterprise and Investigations Conference (CEIC) 2011. Network Forensics, Malware, Web Browser Analysis, Timeline Analysis.
- X-Ways Forensics Course — Computer Forensic Examination Techniques, Concepts & Procedures. WinHex & X-Ways Forensics Software. 2008.
- Encase Certified Examiner (ENCE), Guidance Software. 2006.
- Certificate: American Institute of Certified Public Accountants: Professional Ethics. 2006.
- Certified Computer Examiner (CCE). 2005.
- Techno Security Conference — FTK, Gargoyle, PDA & Cell Seizure, NEMX. 2006.
- Dallas Texas Bar Association Intellectual Property Roundtable. 2006.
- Certificate: Dallas Texas Bar Association Electronic Discovery and Digital Evidence. 2006.
- Certificate: University of Kennesaw Southeast Cybercrime Institute Computer Forensic Boot Camp and Online Training Course. 2004.
- Certificate: HTCIA summer training 2004 on Encase (Intermediate & Advanced), Forensic Toolkit, Email Examiner, PDA Seizure, Cell Phone Seizure, SMART (Intermediate & Advanced). 2004.
- Certificate: North Texas Private Investigators Association Computer Intrusions Seminar. 2004.
- Certificate: Access Data, Forensic Toolkit, Intermediate Forensic Boot Camp Training. 2003.
- Certificate: United States Treasury Department, Federal Law Enforcement Training Center, Computer Investigative Specialist, Seized Computer Evidence Recovery Training (Computer Forensics). 1999.
- Certificate: High Technology Crime Investigation Association Professional Development Seminar, San Diego, California. 1999.
- Certificate: Undercover Investigators Training US Customs Service Academy, Federal Law Enforcement Training Center. 1999.
- Certificate: Encase Software Training (Intermediate), US Customs Cyber Smuggling Center. 1998.
- Certificate: Computer Horizons Corp., MSDOS, Norton Utilities and Norton Commander Training Course. 1998.
- Certificate: Federal Law Enforcement Training Center Computer Investigative Specialist 2000 Internet Investigations. 1998.
- Certificate: Fraud Investigations Training US Customs Service Academy, Federal Law Enforcement Training Center. 1998.
- Certificate: Systems Security Control Officer, TECS US Customs Service Academy. 1998.

- Certificate: Advanced Customs Enforcement Criminal Investigator Training US Customs Service Academy, Federal Law Enforcement Training Center. 1996.
- Certificate: United States Treasury Department, Criminal Investigator Training, Federal Law Enforcement Training Center. 1996.

## EXPERT DEPOSITION & TRIAL TESTIMONY

*The following is a comprehensive record of deposition and trial testimony. A complete list with case details and cause numbers is available upon request.*

### 2026

- Deposition: Jesus Alfredo Garcia-Rivera et al. v Enterprise Logistic Services LLC d/b/a Enterprise Transportation Company et al. 80th Judicial District Court Harris County. Cause #2024-41889. August 2026.
- Deposition: Zani Perry v Tempest Houston, Inc. et al. 80th Judicial District Court Harris County. Cause #2024-18064. March 2026.
- Hearing: Licata v Licata. 325th District Court Tarrant County. Cause #325-766480-25. February 2026.
- Hearing: State of Texas v Cesar Osorio. District Court Dallas County 265th. Cause #F23-25446. February 2026.

### 2025

- Deposition: Broadleaf IT, LLC v Patricia Nicole Walley et al. S.D. Texas Houston Division. Cause No. 4:24-CV-00303. December 2025.
- Deposition: Dennis Lee Smith, Deceased v Swift Transportation Company. County Court at Law No. 2, Dallas County. Cause #CC-24-04029-B. June 2025.
- Hearing: State of Texas v Victor Lynn Lee. 42nd District Court Taylor County. Cause #31067-A. April 2025.
- Trial by Jury: Charlotte Stephens v AHLN Corporation. 134th Judicial District Dallas County. Cause #DC-23-11124. February 2025.
- Deposition: Centennial Bank v Jerry Holmes et al. N.D. Texas Lubbock Division. Cause No. 5:23-cv-00044-H. February 2025.

### 2024

- Deposition: Dail Larky v BMC Transportation Company. District Court Oklahoma County. September 2024.
- Hearing: Melissa Abel v Texas Capital Bancshares. Judicial Workplace Arbitrations Case No. 3370-A-2022. September 2024.
- Hearing: Star-Tex Propane v Joseph January et al. McLennan County 474th Judicial District. August 2024.
- Hearing: Singh v Singh. 326th Judicial District Taylor County. August 2024.
- Deposition: JAMS Arbitration #5310000357. Paul Abramowitz et al. v ARGO Group International Holdings. July 2024
- Trial by Jury: State of Texas v Amber Guyger. 204th Judicial District Dallas County. January 2024.

### 2023

- Trial by Jury: Ricky Coronado v Pena Auto Group et al. 93rd Judicial District Court Hidalgo County. November 2023.
- Hearing: In Re Marriage of Haskell. 416th Judicial District Court Collin County. July 2023.
- Deposition: Spring et al. v Hughes Trucking Company, Inc. and Antonio L. Sandoval, Jr. 217th Judicial District Court, Angelina County. April 2023.
- Hearing: In the Interest of D.M.M. a Child. 417th Judicial District Court Collin County. March 2023.
- Deposition: State of Texas v Mark Steven Deems. 13th Judicial District Navarro County. February 2023.

### 2022

- Trial by Jury: State of Texas v Cody Wayne Beavers. 47th Judicial District Court Potter County. November 2022.
- Deposition: Dania Cabrales Saucedo v Werner Enterprises Inc. 139th Judicial District Court Hidalgo County. September 2022.
- Hearing: In Re Islas Velazquez. 305th Family District Court Dallas. August 2022.
- Deposition: State of Texas v Aaron Dean. 396th Judicial District Court Tarrant County (Atatiana Jefferson case). March 2022.
- Deposition: Christopher Duntsch (Dr. Death) v Fred Cerise, MD. Dallas County, Texas. January 2022.

### 2021

- Hearing: State of Texas v Andrew Lester. 291st District Court Dallas County. December 2021.
- Hearing: State of Texas v Frederick Frazier. Criminal District Court No. 6, Dallas County. October 2021.
- Trial by Jury: Timothy Okonkwo v FedEx Freight Inc. 134th Judicial District Court Dallas County. May 2021.
- Deposition: Dustin D. Morrow v Aerojet Rocketdyne Inc. N.D. Texas Dallas Division. March 2021.
- Deposition: Brent Bailey v C.R. England Inc. 134th Judicial District Court Dallas County. February 2021.

### 2020

- Hearing: State of Texas v Joseph T. McElroy. 401st Judicial District Court Collin County. February 2020.
- Hearing: Shallowford Brickyard LLC v LGI Homes. Arbitration. January 2020.

### 2019

- Trial by Jury: State of Texas v Amber Guyger. 204th Judicial District Dallas County (Dallas Police Shooting). October 2019.
- Deposition: John Butcher v Crete Carrier Corporation. 362nd Judicial District Court Denton County. August 2019.
- Hearing: State of Texas v Patrick Long. 195th Judicial District Court Dallas County. April 2019.

- Trial by Jury: State of Texas v Sandra Louise Merritt. Harris County Texas. February 2019.
- Deposition: Ashely Saucedo v YRC Inc. d/b/a Yellow Transportation. 332nd District Court Hidalgo County. January 2019.

## 2018

- Deposition: State of Texas v Christopher Duntsch (Dr. Death). Dallas County, Texas. November 2018.
- Trial by Jury: Jose Mendieta v S&W Enterprises. District Court Hidalgo County. August 2018.
- Hearing: Lewis v Lewis. 301st Family District Court Dallas County. May 2018.

## 2017

- Deposition: Soto v MV Transportation. 206th Judicial District Hidalgo County. CDR analysis. September 2017.
- Deposition: Jenny Hennes v JC Fodale Energy Services. 225th District Court Bexar County. CDR analysis. July 2017.

## 2016

- Deposition: Fitzgerald v Sunburst Truck Lines. 133rd Judicial Court Harris County. Android analysis. November 2016.
- Hearing: In the Matter of Militello. 301st Family District Court Dallas. September 2016.
- Hearing: Aspire Inc v Dwight Jones. 342nd District Court Tarrant County. Computer Searches and Deletions. September 2016.

## 2015

- Hearing: Fox v Redden Management. Probate Court 1, Dallas County. December 2015.
- Deposition: Garcia v JT Vaughn Construction et al. Harris County 80th Judicial District. October 2015.
- Hearing: Moussa v AdvoCare. 199th Judicial District Collin County. October 2015.
- Deposition: Trichel v Union Pacific Railroad. 125th Judicial District Court Harris County. August 2015.
- Bench Trial: Kuhlman v Kuhlman. 255th Judicial District Court Dallas County. June 2015.
- Hearing: State of Texas v James Calvert. 241st Judicial District Court Smith County. March–April 2015 (multiple hearings).
- Hearing: Nguyen v Verp Investment LLC et al. 134th Judicial District Court Dallas County. March 2015.
- Trial by Jury: State of Texas v Gabriel Armandariz. 90th Judicial District Court Young County. Capital Murder. February 2015.
- Trial by Jury: Merritt Hawkins v Gresham and Consilium Staffing. N.D. Texas Dallas Division. January 2015.

## 2014

- Deposition: Blackstone v Motor Company of Texarkana. 102nd District Bowie County. November 2014.
- Hearing: In the Matter of Christopher Wiseman. 305th Judicial District Court Dallas County (Juvenile). October 2014.
- Bench Trial: In the Interest of Rylee Ferguson. Jasper County District Court. August 2014.
- Hearing: Kuhlmann v Kuhlmann. 255th Judicial District Court Dallas County. July 2014.
- Deposition: Merritt Hawkins v Gresham and Bowden. N.D. Texas. June 2014.
- Hearing: Mazur v Rivas. 254th/302nd Judicial District Court Dallas County. April–May 2014 (multiple hearings).
- Trial by Jury: State of Texas v Sidney White. Criminal Court 7 Dallas County. March 2014.
- Hearing: In the Interest of Adriana Barrie. 231st District Court Tarrant County. February 2014.
- Deposition: In re Certain TV Programs (ITC Inv. No. 337-TA-886). International Trade Commission. January 2014.

## 2013

- Trial-Deposition: Moody v Moody. Circuit Court Pulaski County, Arkansas. November 2013.
- Hearing: State of Texas v Mario X. Perez. 36th District Court Tarrant County. July 2013.
- Hearing: Clark v Clark. District Court Hunt County. June 2013.
- Hearing: Fossil Inc. Texas Workforce Commission Appeal. June 2013.
- Hearing: USA v Jeffery Dale St. John. N.D. Texas. Case 3:12-CR-00310-N. May 2013.

## 2012 & Earlier

- Deposition: Powell Protection Systems v Hill and Sovereign Electronics. 199th Judicial District Collin County. February 2012.
- Hearing: State of Texas v Jeffery Gerron. 40th Judicial District Court Ellis County. January 2012.
- Hearing: State of Texas v Dustin Lorance. 362nd District Court Denton County. August 2011.
- Hearing: Green Hills Development v Credit Union Liquidity Services. 191st Judicial District Dallas County. September 2010.
- Deposition: Salinas v Manning et al. 429th Judicial District Dallas County. April 2010.
- Hearing: US Staffing v Sharp and Sanders. 162nd Judicial District Dallas County. 2009–2010 (multiple hearings).
- Hearing: Dallas County v Darrell Dewayne Savage. Criminal District Court No. 2 Dallas County. November 2009.
- Hearing: Alan Consulting v Vaughn, Jernigan, and Trident Pharma. 101st Judicial District Dallas County. October 2009.
- Deposition: Moore v Moore. Dallas District Court. May 2009.
- Trial: State of Texas v Christopher Burnhardt Devore. Case 380-80577-06. February 2007.
- Hearing: McCommas LFG Processing Partners. N.D. Texas. Case 07-32219. September 2007.
- Trial & Hearings: Sanchez v General Electrodynamics Corporation. Case 153-202204-03. 2005.

- Hearing: The Maxcel Company v Anne Findley. 44th Judicial Court Dallas County. October 2005.
- Deposition: Sanchez v General Electrodynamics Corporation. October 2005.

# EXHIBIT 2

M. Kevin Queenan (TX SBN 16427150)
*Appearance pro hac vice*
Carlos Lopez (TX SBN 24083414)
*Appearance pro hac vice*
**QUEENAN LAW FIRM P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com
*Attorneys for Plaintiff Jane Doe QLF 001*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | MDL No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.; C.A. No. 1:26-cv-01694-CRB* | **SUPPLEMENTAL DECLARATION OF LAYNE HILTON, ESQ. IN RESPONSE TO AUGUST 28, 2026 EMAIL FROM COHL LOVE**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 15th Floor<br><br>Judge: Honorable Lisa J. Cisneros<br>Courtroom: G –15th Floor |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 501 |

I, Layne Hilton declare as follows:

1. I am an attorney at law, duly licensed and admitted to practice. I am a member of the Plaintiff's Steering Committee ("PSC") in the *In re: Uber Sexual Assault Litigation*. I have personal knowledge of the facts set forth in this Declaration. If called as a witness, I could and would competently testify to the facts stated herein.

2. In response to the Court's Order (ECF No. 7103), I submit this Declaration concerning the forensic imaging of Plaintiff's iPhone, MacBook and iCloud (collectively, the "Devices"), and the collection and processing of Plaintiff's data.

3. The forensic imaging of the Devices was performed exclusively by Lance Sloves. Neither Plaintiff nor her counsel has retained any other person or entity to forensically image either Device at any time before, during, or after Mr. Sloves's imaging efforts.

4. The PSC did, however, retain Magna Legal Services to perform a collection of data from Plaintiff's social media accounts. The retention of Magna Legal Services ("MLS") was disclosed to Uber on August 18, 2026, contemporaneously with the disclosure of Mr. Sloves. *See* Declaration of Adriana Rincon attached as Exhibit A. The scope of MLS's work was limited to the collection of social media data. MLS was not engaged to perform any independent forensic imaging of the Devices, and it has not done so.

5. The PSC also retained International Litigation Services ("ILS"), who received data resulting from Mr. Sloves's forensic imaging collection efforts. ILS was responsible for the ingestion of materials exported by Mr. Sloves following his imaging work, as well as the processing and quality control of those materials (such as de-duplication). ILS was not engaged to perform any independent forensic imaging of the Devices, and it has not done so.

6. I have personal knowledge regarding a statement made by my colleague, Ms. Velez, in correspondence dated July 2, 2026. In that correspondence, Ms. Velez wrote that Plaintiff "was working with experts regarding Plaintiff's devices and data." That reflects the two distinct engagements for which Plaintiff has now provided declarations: (a) the forensic imaging work being performed by Mr. Sloves on Plaintiff's Devices; and (b) MLS, which was also engaged at that time in collecting data from Plaintiff's social media accounts. In re

7. I also have personal knowledge regarding a letter sent by my colleague, Mr. Simon Grille, dated July 26, 2026. In that letter, Mr. Grille used the term "specialists" in connection with the work being performed on Plaintiff's Devices. I have personal knowledge of the context in which that term was used, and I can attest that Mr. Grille's reference to "specialists" in the July 26 Letter was intended to encompass two distinct engagements: (a) the forensic imaging work performed by Mr. Sloves on Plaintiff's Devices; and (b) the work undertaken by ILS, which assisted with the ingestion of materials exported by Mr. Sloves following his imaging work of Plaintiff's Devices, as well as the processing and quality control of those materials (such as de-duplication).

8. Finally, on July 27, 2026, I wrote an email to Counsel for Uber stating that Plaintiff would be "producing an additional tranche of text messages….from the additional source we discussed on the call today." In that email I was describing the data that was located by Mr. Sloves, and described in his declaration at paragraphs 18-24, and that were collected on July 23, 2026.

On August 28, 2026, I received an email one of Uber's attorneys, Cohl Love, regarding a previous iteration of this declaration served on August 26, 2026. In response to that email I further attest as follows:

1. I have personal knowledge regarding a statement by my colleague, Ms. Velez, on July 8, 2026, wherein she stated that "Plaintiff's expert also repaired and conducted a forensic image of Plaintiff's laptop." I have personal knowledge that to the extent Ms. Velez used the term "expert," she was referring to Mr. Sloves. I have personal knowledge that Plaintiff's Devices were in Mr. Sloves's possession at the time that Ms. Velez made that statement. I have personal knowledge that when Ms. Velez made her statement, she believed Mr. Sloves had commenced his work on the MacBook. I have personal knowledge that only in the context of serving Mr. Sloves's Supplemental Declaration did Ms. Velez learn the exact date the MacBook was imaged. Regardless, documents from the MacBook were produced to Uber by July 20, 2026.

2. Mr. Love requested that I provide clarification on any statements made by Counsel that "no data" existed from any iCloud backup and/or how that comported with my statement from July 27, 2026 that an "additional source" of data existed. I have personal knowledge that to the extent any counsel for Plaintiff stated that "no data" existed (or any similar statementss), those statements reflect and were based upon the issues with the Elcomsoft software and its ability to access data from iPhones (at least as Counsel understood them at that time). This issue has been more fully discussed and described in Mr. Sloves's supplemental declaration at paragraphs 18-24.

3. I have personal knowledge regarding the statements made in ECF 6959. In the context of that statement, Plaintiff wrote that she had retained "data recovery specialists." I have personal knowledge of the context in which that term was used, and I can attest "specialists" as used in ECF 6569 was intended to encompass two distinct engagements: (a) the forensic imaging work performed by Mr. Sloves on Plaintiff's Devices; and (b) the work undertaken by ILS, which assisted with the ingestion of materials exported by Mr. Sloves following his imaging work of

Plaintiff's Devices, as well as the processing and quality control of those materials (such as de-duplication).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 31, 2026, at New Orleans, Louisiana.

Layne C. Hilton

# EXHIBIT 3

M. Kevin Queenan (TX SBN 16427150)
*Admitted in W.D. of Texas*
Carlos Lopez (TX SBN 24083414)
*Admitted in W.D. of Texas*
**QUEENAN LAW FIRM P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com
*Attorneys for Plaintiff Jane Doe QLF 001*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | MDL No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>*Jane Doe QLF 001 v. Uber Technologies, Inc., et al.; C.A. No. 1:26-cv-01694-CRB* | **DECLARATION OF KEVIN QUEENAN, ESQ.**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 15th Floor<br><br>Judge: Honorable Lisa J. Cisneros<br>Courtroom: G –15th Floor |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE DOE QLF 001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 501 |

I, Kevin Queenan, declare as follows:

1. I am an attorney at law, duly licensed and admitted to practice law. I am the attorney of record representing Plaintiff Jane Doe QLF 001 in the above-captioned matter. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would competently testify to the same.

2. I am the attorney who retained Computer Forensic Services, Inc. ("CFSI") and Lance Sloves to perform forensic imaging of the subject devices in this matter, specifically Plaintiff's iPhone 15, Plaintiff's MacBook and iCloud (collectively, the "Devices").

3. Prior to retaining CFSI and Lance Sloves, I did not retain, hire, engage, or otherwise authorize any other person or entity to perform forensic imaging of the Devices.

4. Subsequent to retaining CFSI and Lance Sloves, I have not retained, hired, engaged, or otherwise authorized any other person or entity to perform forensic imaging of the Devices.

5. To my knowledge, CFSI and Lance Sloves are the only company and individual who have been retained, hired, or engaged to conduct forensic imaging of the Devices in connection with this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 26, 2026, at Arlington, Texas.

M. Kevin Queenan, Esq.

# EXHIBIT 4
# SEALED

# EXHIBIT 5
# SEALED

# EXHIBIT 6
# SEALED

# EXHIBIT 7

GIRARD SHARP

July 23, 2026

**Via Email**
Michael Vives
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
michael.vives@kirkland.com

Counsel:

We write in response to Uber's July 14 letter. Plaintiff has worked with her counsel to take reasonable and proportionate steps to preserve and search for materials relevant to this litigation. To date, Plaintiff has produced over 7,000 pages of documents, including communications from before, after, and near the time of the assault. Despite the disruptive nature of Uber's repeated accusations and unreasonable demands, Plaintiff has promptly reported the results of her ongoing efforts to retrieve data from many years in the past across multiple sources.

Plaintiff has retained and produced documents from her cell phone, laptop, and online accounts, including social media accounts and messaging apps. She has produced text messages, emails, and documents from Facebook, Instagram, Snapchat, TikTok, X (Twitter), YouTube, and Telegram. She has recovered text messages from her phone dating back to 2021 and messages from email accounts or other apps from several years before the assault. Plaintiff conducted a reasonable search in response to Uber's requests and produced responsive, non-privileged documents on an expedited basis.

As Uber knows, Plaintiff is no longer in possession of the phone she had when she was sexually assaulted in an Uber on June 9, 2020. She traded-in that phone for a new one in February, 2021—roughly a year and a half prior to retaining counsel for this action, roughly two years prior to commencing her state court action, and over three years prior to filing in the MDL. Plaintiff inadvertently damaged her second phone beyond repair when she dropped it in water. Our understanding is that she obtained a new phone in March 2024. Plaintiff is also in possession of a MacBook laptop, which she has owned since before the assault.

Plaintiff, through counsel, retained data recovery specialists to extract documents and data from her devices, extract information from online accounts, and help prepare those materials for review and production of responsive information. Through that process, as well as manual searches, Plaintiff has identified and produced thousands of pages of communications that are not only responsive to the substance of Uber's requests but also extend across the complete time period for which Uber has sought documents. While Plaintiff has not identified text messages from the time period 2020-2021, Plaintiff has been candid with Uber about this possibility. The

apparent lack of text messages from this short period is not the result of any misconduct, but instead appears to result from a routine cell phone upgrade long before Plaintiff retained counsel for this action. To the extent Uber intends to suggest spoliation, that suggestion fails at the threshold: any 2020-2021 text messages were lost, if at all, through an ordinary device upgrade before any duty to preserve arose, and nothing indicates that Plaintiff failed to take reasonable steps to preserve relevant information—let alone that she acted with any intent to deprive Uber of its use. See Fed. R. Civ. P. 37(e).

Our understanding is that Plaintiff has not manually deactivated automatic backups or deleted backups, and each time Plaintiff traded in or replaced her phone, her data was transferred. Uber has now had an opportunity to depose Plaintiff regarding these matters. Uber provides no legitimate basis for seeking an authorization for iCloud records, which would presumably give Uber access to every piece of data ever stored on Plaintiff's iCloud account. Such a request is disproportionate to the needs of the case and harassing.

As Uber is also aware, Plaintiff produced records from her cell phone carrier, T-Mobile, for the time period agreed upon by the parties—24 hours before and after the assault. These records address Uber's queries about phone calls or text messages Plaintiff set around the time of the assault. Uber's letter wrongfully accuses Plaintiff of misstating the date of this production. The production was made April 14, 2025. Plaintiff then uploaded a new link on July 10, in response to Uber's request, because the old link had expired. The letter also quibbles about production logistics, but there has been no attempt to hide documents from Uber's counsel, and Plaintiff has since provided production cover letters in the manner requested.

Next, Uber speculates that Plaintiff has used cell phone carriers other than T-Mobile. But the screenshot in Uber's letter is not from Plaintiff's phone. It appears to be a screenshot taken by one of her friends that is captured within one of her text threads. Misleading accusations like this one are unproductive and distract from Plaintiff's efforts to provide responsive material as quickly as possible. In any event, as discussed, to the extent Uber is requesting that Plaintiff subpoena additional logs from T-Mobile, Plaintiff is amenable to discussing a reasonable time period for such a request.

Uber continues to seek work product regarding Plaintiff's non-testifying consultant retained for purposes of data recovery. But Uber provides no reasonable basis for seeking this "discovery on discovery," and, in light of the foregoing, has not demonstrated that such discovery is proportionate to the needs of this case. To the extent Uber still has specific, unanswered questions about Plaintiff's data-recovery efforts, we ask that Uber identify those questions, and Plaintiff will work in good faith to address them directly. Plaintiff has already provided substantial information through her productions, her written discovery responses, and her own recent deposition. She remains willing to answer reasonable, specific questions so that any genuine concern can be resolved without deposing a non-testifying consultant.

In response to Uber's point that text messages and social media messages are distinct, Plaintiff has produced both. That Plaintiff did not use certain platforms to communicate with certain people is not a preservation failure. In response to Uber's demands, Plaintiff made an initial production of social media communications on July 10. Uber then complained of minor technical problems that naturally flowed from the forced haste of that production. Plaintiff addressed those points in her July 20 production. Plaintiff cannot, however, control when social media platforms remove certain information, such as when a person's account is deleted or how parties are identified (e.g., by phone number rather than name). Plaintiff produced these records "as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i).

It is unclear why Uber believes Plaintiff's efforts with respect to nonparties have been insufficient. As Uber knows, Plaintiff has issued a variety of subpoenas to nonparties for records, has signed authorizations for Uber to obtain records from nonparties, and is producing for deposition nonparties represented by counsel.

Plaintiff has met her preservation obligations and has substantially produced responsive, non-privileged materials within her possession, custody, or control. To the extent Uber believes otherwise, we ask that it identify with specificity the documents or categories it contends remain outstanding, rather than repeating generalized accusations of delay or non-preservation that the record does not support. We look forward to discussing these matters in hopes of resolving any lingering disputes.

Sincerely,

*/s/ Simon S. Grille*

___________________

Sarah R. London (State Bar No. 267083)
Simon Grille (State Bar No. 294914)
Isabel Velez (State Bar No. 359574)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: slondon@girardsharp.com
Email: sgrille@girardsharp.com
Email: ivelez@girardsharp.com

M. Kevin Queenan (*Pro Hac Vice*)
Carlos Lopez (*Pro Hac Vice*)
**Queenan Law Firm P.C**.

731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com

*Attorneys for Plaintiff Jane Doe QLF 001*

# EXHIBIT 8
# SEALED

# EXHIBIT 9
# SEALED

# EXHIBIT 10

CRA Charles River Associates

# Daniel Roffman

Vice President

BS, Information Systems
University of Maryland

Dan Roffman is a Vice President in the Forensic Services Practice with more than 20 years of experience in digital forensics, specializing in expert testimony and consulting. He has led thousands of investigations into trade secret misappropriation, data deletion (including spoliation of evidence), online data scraping, data authenticity, and software piracy—with a particular focus in recent years on Apple operating systems such as macOS and iOS.

Widely regarded as a trusted expert witness, Dan has delivered oral or written testimony more than 120 times across federal, state, and international courts, as well as in arbitrations. He is frequently appointed by courts as a neutral digital forensic expert. In addition to investigative work, Dan advises clients on how to safeguard their most sensitive data and has testified on the reasonableness of the measures companies use to protect their trade secrets.

Before joining CRA, Dan was a Senior Managing Director at a consulting firm, where he led the digital forensic team and oversaw operations at the firm’s U.S. forensic laboratories. Earlier in his career, he served in the High Technology Investigations Unit of the Criminal Division at the U.S. Department of Justice.

Recognized as a thought leader in the industry, Dan is a frequent speaker at conferences and the author of several articles, whitepapers, and a book chapter on evidence authentication. Earlier in his career, he also developed custom technical solutions to address complex client data challenges. Dan holds a bachelor’s degree in Information Systems from the University of Maryland and is an EnCE Certified Examiner. He has been recognized nine times by Lexology (formerly “Who’s Who Legal”) for his expertise in digital forensics.

## Selected experience

- Testified in state court regarding an engineering firm’s measures to protect their trade secrets.
- Investigated and testified at arbitration regarding the misappropriation of trade secrets and spoliation of evidence by the founder of a biotech firm.
- Assisted one of the world’s largest software publishers in investigating the piracy of their software and destruction of evidence by a publicly traded US corporation.
- Submitted expert reports in federal court regarding malware found in connection with one of the largest data breaches involving healthcare data.
- Testified in federal court regarding email fabrication at the center of a contract dispute, leading the judge to sanction the fabricating party by dismissing their counterclaim with prejudice.
- Testified in federal court regarding the misappropriation of trade secrets by a former employee of a global industrial technology provider, leading to a favorable ruling for the client.
- Testified in federal court regarding the author of fraudulent financial documents supplied by a seller seeking to inflate the sale of her business.

- Led an investigation into the theft of trade secrets by a financial analyst who attempted to cover up his theft, leading to the arrest of two former employees who pled guilty to federal charges.
- Worked with a team of investigators appointed by the US Attorney's Office to monitor and test a firm's security measures, helping the firm to settle their case.

## Publications

"Chapter 9. Authenticating Evidence from Emerging Sources—What Experts Say." In The American College of Trial Lawyers Handbook of Electronic Evidence. The Bureau of National Affairs, Inc. 2022.

"4 Ways to Mitigate Emerging Challenges in Trade Secret Litigation," *Law.com*, December 18, 2019.

"Minimizing Privacy Risk with Data Minimization," *Law.com Corporate Counsel*, September 2, 2019.

"The Rise in Trade Secret Litigation and New Investigation Trends," *Bloomberg Law Insight*, July 24, 2019.

"The Reality of Trade Secret Protection," *Risk Management Magazine*, July 1, 2019.

"Litigation in the Digital Health Revolution," *Risk Management Magazine*, July 10, 2018.

"Understanding remote collections for e-discovery: Benefits, pitfalls and use cases." With Erik Hammerquist, James Scarazzo. *InsideCounsel*, May 16, 2014.

"Five Tips for Managing Social Media and E-Discovery Collections." With David Freskos. *KMWorld*, October 25, 2013.

"Data Collection in a Social Media World," *Metropolitan Corporate Counsel*, June 21, 2013.

"Work with IT to build a defensible information management strategy," *InsideCounsel*, May 6, 2013.

"Game Change: Reevaluating Collection Processes in the Wake of the National Day Laborer Organizing Network Ruling." With Veeral Gosalia, Ian Smith, Erik Hammerquist. FTI Consulting Technology LLC, February 12, 2013.

"Data Deluge: The Problem Is, You Can't Keep Everything," *Forbes*, July 5, 2012.

"IT Reduction: A Much-Needed Service." With Lawrence Briggi. *Metropolitan Corporate Counsel*, May 18, 2012.

## Testimony/Expert Witness

Declaration, August 17, 2026, *Fresenius USA Manufacturing, Inc. V. Micah Much*, Case No. 1:26-cv-13572, U.S. District Court District Of Massachusetts.

Declaration, August 3, 2026, *Apple, Inc. v. Chang Liu, Tang Yew Tan, OpenAI Foundation F/K/A OpenAI, Inc., OpenAI Group PBC, And io Products, LLC F/K/A io Products, Inc.,* Case No. 5:26-cv-07078-EJD, U.S. District Court for the Northern District of California.

Declaration, August 3, 2026, *Delinea, Inc. v. Saviynt, Inc.*, Case No. 2:25-cv-09040-SVW-JC, U.S. District Court for the Central District of California.

Declaration, June 25, 2026, *Delinea, Inc. v. Saviynt, Inc.*, Case No. 2:25-cv-09040-SVW-JC, U.S. District Court for the Central District of California.

Declaration, June 15, 2026, *BDO USA, P.C. v. Ankura Consulting Group, LLC, et al*. Case No. 3:24-cv-00179-HEH, U.S. District Court for the Eastern District of Virginia.

Deposition, May 1, 2026, *BDO USA, P.C. v. Ankura Consulting Group, LLC, et al*. Case No. 3:24-cv-00179-HEH, U.S. District Court for the Eastern District of Virginia.

Expert Report, April 30, 2026, *Shalanda Ballard v. Pactiv LLC*, Case No. 25-CV-2822, In the United States District Court For The District Of Minnesota.

Declaration, April 27, 2026, *Delinea, Inc. v. Saviynt, Inc.*, Case No. 2:25-cv-09040-SVW-JC, U.S. District Court for the Central District of California.

Expert Report, April 9, 2026, *BDO USA, P.C. v. Ankura Consulting Group, LLC, et al*. Case No. 3:24-cv-00179-HEH, U.S. District Court for the Eastern District of Virginia.

Deposition, March 23, 2026, *Pactiv Evergreen v. Shalanda Ballard*, Case No. 23 CH 181, In the Circuit Court of Lake County, Illinois.

Deposition, March 6, 2026, *Lockton Companies LLC - Pacific Series et al v. Barnes et al.* Case No. 4:23-cv-00705-SRB. In The United States District Court For The Western District Of Missouri.

Trial Testimony, March 2, 2026, *Housecanary, Inc., F/K/A Canary Analytics, Inc., v. Amrock, Llc, F/K/A Title Source, Inc.* Cause No. 016-CI-06300. In the District Court of Bexar County, Texas. 438th Judicial District.

Deposition, January 8, 2026, *Housecanary, Inc., F/K/A Canary Analytics, Inc., v. Amrock, Llc, F/K/A Title Source, Inc.* Cause No. 016-CI-06300. In the District Court of Bexar County, Texas. 438th Judicial District.

Expert Report, December 29, 2025, *Housecanary, Inc., F/K/A Canary Analytics, Inc., v. Amrock, Llc, F/K/A Title Source, Inc.* Cause No. 016-CI-06300. In the District Court of Bexar County, Texas. 438th Judicial District.

Testimony, December 19, 2025, *Mitchell Repair Information Co. v. Autel US et al.*, Case No. 3:21-cv-01339, U.S. District Court for the Southern District of California, San Diego.

Deposition, December 4, 2025, *Apple, Inc. v. Chen Shi, Guangdong Oppo Mobile Telecommunications Corp., Ltd., and Innopeak Technology, Inc.,* Case No. 5:25-cv-07105, U.S. District Court for the Northern District of California.

Expert Report, November 21, 2025, *Pactiv Evergreen v. Shalanda Ballard*, Case No. 23 CH 181, In the Circuit Court of Lake County, Illinois.

Expert Report, November 17, 2025, *West Series of Lockton Companies, LLC, Lockton Partners, LLC, And Lockton Insurance Agency, LLC, v. Alliant Insurance Services, Inc., Gregory D. Barnes, Scott Canales, James R. Lawrence, Andrew Mcclave, Mark Racunas, And Richard A. Roderick,* Case No: 4:23-Cv-00705, United States District Court For The Western District Of Missouri.

Declaration, November 14, 2025, *Apple, Inc. v. Chen Shi, Guangdong Oppo Mobile Telecommunications Corp., Ltd., and Innopeak Technology, Inc.*, Case No. 5:25-cv-07105, U.S. District Court for the Northern District of California.

Declaration, September 22, 2025, *Riot et al v. Apex Trader Funding Inc. et al.*, Case No. 1:24-cv-1557-ADA, In The United States District Court For The Western District Of Texas, Austin Division.

Declaration, September 8, 2025, *IN RE: McKINSEY & CO., INC.NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION (Case No. 3:21-Md-2996-Crb (Sk)) (Relating To Hurley v. Mckinsey & Company, Inc. United States, Case No. 3:22-Cv-10351-Mgm (D. Mass.))*, United States District Court, Northern District Of California.

Declaration, September 2, 2025, *Mitchell Repair Information Co. v. Autel US et al.*, Case No. 3:21-cv-01339, U.S. District Court for the Southern District of California, San Diego.

Declaration, August 21, 2025, *Apple, Inc. v. Chen Shi, Guangdong Oppo Mobile Telecommunications Corp., Ltd., and Innopeak Technology, Inc.,* Case No. 5:25-cv-07105, U.S. District Court for the Northern District of California.

Testimony, July 17-18, 2025, Confidential Arbitration, Case No. 01-23-0001-0322, American Arbitration Association.

Declaration, July 15, 2025, *Mitchell Repair Information Co. v. Autel US et al.*, Case No. 3:21-cv-01339, U.S. District Court for the Southern District of California, San Diego.

Affirmation, April 24, 2025, *Ambase Corp. v. 111 W. 57th Sponsor LLC,* Index number 652301/2016, Supreme Court of the State of New York, County of New York.

Declaration, April 7, 2025, *Jane Doe Vs Lockton Companies LLC - Pacific Series, Et Al.*, Case No. 24STCV17170, Superior Court Of The State Of California, County Of Los Angeles.

Deposition, March 12, 2025, *William J. Pulte, V. Brandon Jones,* Case No.: 50-2022-Ca-012238-Xxxx-Mb, Circuit Court Of The 15th Judicial Circuit In And For Palm Beach County, Florida.

Affirmation, February 19, 2025, *Ambase Corp. v. 111 W. 57th Sponsor LLC,* Index number 652301/2016, Supreme Court of the State of New York, County of New York.

Trial Testimony, October 30, 2024, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Declaration, October 21, 2024, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Declaration, September 30, 2024, *Synopsys, Inc. v. Sunlune Corporation, and DOES 1-10, inclusive*, Case No. 5:24-cv-00220-BLF, U.S. District Court for the Northern District of California.

Declaration, September 18, 2024, Apple, Inc. v. Andrew Aude, Case No. 24CV433319, Superior Court Of The State Of California, County of Santa Clara.

Deposition, September 5, 2024, Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc., Case No. 37-2022-00018260-CU-BT-CTL, Superior Court of the State Of California, County Of San Diego.

Declaration, August 30, 2024, Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc., Case No. 37-2022-00018260-CU-BT-CTL, Superior Court of the State Of California, County Of San Diego.

Declaration, July 10, 2024, *William J. Pulte, V. Brandon Jones,* Case No.: 50-2022-Ca-012238-Xxxx-Mb, Circuit Court Of The 15th Judicial Circuit In And For Palm Beach County, Florida.

Declaration, July 1, 2024, *William J. Pulte, V. Brandon Jones,* Case No.: 50-2022-Ca-012238-Xxxx-Mb, Circuit Court Of The 15th Judicial Circuit In And For Palm Beach County, Florida.

Deposition, June 6, 2024, CoStar Group, Inc. v. Commercial Real Estate Exchange Inc., Case No. 2:20-cv-08819-CBM-AS, U.S. District Court for the Central District of California.

Expert Report, May 24, 2024, CoStar Group, Inc. v. Commercial Real Estate Exchange Inc., Case No. 2:20-cv-08819-CBM-AS, U.S. District Court for the Central District of California.

Deposition, May 24, 2024, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Expert Report, May 23, 2024, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Declaration, May 16, 2024, Sigma Lithium Corporation v. Calvyn Gardner And Luiza Valim. Case No. 1:23-cv-07403, U.S. District Court for the Southern District of New York.

Deposition, April 10, 2024, Nantworks, LLC, and Nant Holdings IP, LLC, V. Bank Of America Corporation, and Bank Of America, N.A., Case No. 2:20-cv-07872-GW-PVC, U.S. District Court for the Central District of California.

Expert Report, March 19, 2024, CoStar Group, Inc. v. Commercial Real Estate Exchange Inc., Case No. 2:20-cv-08819-CBM-AS, U.S. District Court for the Central District of California.

Expert Report, March 19, 2024, Nantworks, LLC, and Nant Holdings IP, LLC, V. Bank Of America Corporation, and Bank Of America, N.A., Case No. 2:20-cv-07872-GW-PVC, U.S. District Court for the Central District of California.

Declaration, March 18, 2024, Confidential Arbitration, Case No. 01-23-0001-0322, American Arbitration Association.

Expert Report, March 7, 2024, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Deposition, February 23, 2024, *RoadSync, Inc. v. Relay Payments, Inc. et al*, Case No. 1:2021-cv-03420, U.S. District Court For The Northern District Of Georgia, Atlanta Division.

Deposition, February 7, 2024, *Lockton Companies LLC – Pacific Series et al., v. Sallie F Giblin,* Case No. 4:22-cv-00791-SRB, U.S. District Court For The Western District Of Missouri.

Deposition, February 7, 2024, *Lockton Companies LLC – Pacific Series et al., v. Erik D. Kaufman,* Case No. 4:22-cv-00462-SRB, U.S. District Court For The Western District Of Missouri.

Expert Report, January 19, 2024, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Declaration, January 19, 2024, *Synopsys, Inc. v. Sunlune Corporation, and DOES 1-10, inclusive*, Case No. 5:24-cv-00220-BLF, U.S. District Court for the Northern District of California.

Expert Report, January 9, 2024, *Lockton Companies LLC – Pacific Serie et al., v. Sallie F Giblin,* Case No. 4:22-cv-00791-SRB, U.S. District Court For The Western District Of Missouri.

Expert Report, January 9, 2024, *Lockton Companies LLC – Pacific Serie et al., v. Erik D. Kaufman,* Case No. 4:22-cv-00462-SRB, U.S. District Court For The Western District Of Missouri.

Expert Report, January 3, 2024, *RoadSync, Inc. v. Relay Payments, Inc. et al*, Case No. 1:2021-cv-03420, U.S. District Court For The Northern District Of Georgia, Atlanta Division.

Declaration, January 2, 2024, *Microchip Technology Inc. and Microsemi Corp. v. GTMI, Inc., Cang Nguyen, and Jerry Chang,* Case No. 5:23-cv-6400-BLF, U.S. District Court for the Northern District of California.

Declaration, November 6, 2023, *Pactiv Evergreen v. Shalanda Ballard*, Case No. 23 CH 181, In the Circuit Court of Lake County, Illinois.

Declaration, October 27, 2023, *Mitchell Repair Information Co. v. Autel US et al.*, JAMS Ref. No. 1240024892.

Declaration, October 19, 2023, *Litrinium, Inc. V. Abdelnaser Mohammed Adas*., Case No. 30-2021-01210846-CU-BT-CJC, Superior Court Of The State Of California County Of Orange.

Declaration, October 11, 2023, *Mitchell Repair Information Co. v. Autel US et al.*, JAMS Ref. No. 1240024892.

Declaration, October 6, 2023, *Pactiv Evergreen v. Shalanda Ballard*, Case No. 23 CH 181, In the Circuit Court of Lake County, Illinois

Deposition, September 6, 2023, *PRCM Advisers LLC, Pine River Capital Management L.P., and Pine River Domestic Management L.P. v. Two Harbors Investment Corp.,* Case No. 1:20-CV-05649-LAK, U.S. District Court for the Southern District of New York.

Declaration, July 17, 2023, *Synopsys, Inc. v. Cista Design Inc. et al.*, Case No. 3:23-cv-03362-VC, U.S. District Court for the Northern District of California.

Declaration, July 10, 2023, *Synopsys, Inc. v. Cista Design Inc. et al.*, Case No. 3:23-cv-03362-VC, U.S. District Court for the Northern District of California.

Declaration, June 6, 2023, *Mitchell Repair Information Co. v. Autel US et al.*, JAMS Ref. No. 1240024892.

Declaration, April 4, 2023, *I-MAB Biopharma V. Inhibrx, Inc. And Brendan Eckelman*, C.A. No. 22-276-CJB, In The United States District Court For The District Of Delaware.

Declaration, March 31, 2023, *Apple Inc. v. Rivos, Inc. et al.,* Case No. 5:22-cv-02637-EJD, U.S. District Court for the Northern District of California.

Declaration, March 23, 2023, *Apple Inc. v. Rivos, Inc. et al.,* Case No. 5:22-cv-02637-EJD, U.S. District Court for the Northern District of California.

Testimony, March 9, 2023, *Gene Katz v. Underwriter's Laboratories, Inc.*, Case No. 2018-L-003788, Circuit Court of Cook County, Illinois.

Declaration, February 8, 2023, *Synopsys, Inc. v. Khanh*, Case No. 3:22-cv-02546-JD, U.S. District Court for the Northern District of California.

Declaration, September 14, 2022, *Apple Inc. v. Rivos, Inc. et al.*, Case No. 5:22-cv-02637-EJD, U.S. District Court for the Northern District of California.

Declaration, September 2, 2022, *Capchase Inc., v. David Sukhraj*, Case No. 652427/2022, Supreme Court of the State of New York, County of New York.

Deposition, August 5, 2022, *Life Spine, Inc. v Aegis Spine, Inc.*, Case No. 19-cv-07092, U.S. District Court Northern District of Illinois Eastern Division.

Expert Report, July 15, 2022, *Gene Katz v. Underwriter's Laboratories, Inc.*, Case No. 2018-L-003788, Circuit Court of Cook County, Illinois.

Testimony, June 10, 2022, *BDO USA, LLP v. EverGlade Global, Inc.*, Case No. 2021-0244-KSJM, In the Court of Chancery of the State of Delaware.

Declaration, May 20, 2022, *Apple Inc. v. Rivos, Inc. et al.*, Case No. 5:22-cv-02637-EJD, U.S. District Court for the Northern District of California.

Declaration, April 22, 2022, *Synopsys, Inc. v. Khanh*, Case No. 3:22-cv-02546-JD, U.S. District Court for the Northern District of California.

Declaration, March 11, 2022, *Mitchell Repair Information Co. v. Autel US et al.*, JAMS Ref. No. 1240024892.

Deposition, February 25, 2022, *BDO USA, LLP v. EverGlade Global, Inc.*, Case No. 2021-0244-KSJM, In the Court of Chancery of the State of Delaware.

Expert Report, January 18, 2022, *BDO USA, LLP v. EverGlade Global, Inc.*, Case No. 2021-0244-KSJM, In the Court of Chancery of the State of Delaware.

Testimony, December 7, 2021, *Westrock Company And Victory Packaging, LP, v. Thomas Dillon and CDS Moving Equipment, Inc.*, Case No. 1:21-cv-05388, U.S. District Court Northern District of Illinois Eastern Division.

Declaration, December 3, 2021, *Westrock Company And Victory Packaging, LP, v. Thomas Dillon and CDS Moving Equipment, Inc.*, Case No. 1:21-cv-05388, U.S. District Court Northern District of Illinois Eastern Division.

Declaration, October 20, 2021, *Westrock Company And Victory Packaging, LP, v. Thomas Dillon and CDS Moving Equipment, Inc.*, Case No. 1:21-cv-05388, U.S. District Court Northern District of Illinois Eastern Division.

Declaration, September 29, 2021, *Mitchell Repair Information Co. v. Autel US et al., Case No. 3:21-cv-01339*, U.S. District Court for the Southern District of California, San Diego.

Declaration, July 28, 2021, *Mitchell Repair Information Co. v. Autel US et al.*, Case No. 3:21-cv-01339, U.S. District Court for the Southern District of California, San Diego.

Evidentiary Hearing Testimony, June 2, 2021, *Future Metals LLC v. Frank Ruggiero*, Case No. 1:2021cv20187, U.S. District Court for the Southern District of Florida.

Court Ordered Appointment as Forensic Neutral, June 1, 2021, *Profit Point Tax Technologies, Inc. v. DPAD Group, LLP, John Manning, and Daniel Steele*, Case No. 2:19-cv-00698-WSS-MPK, U.S. District Court for the Western District of Pennsylvania.

Deposition, May 11, 2021, *Future Metals LLC v. Frank Ruggiero*, Case No. 1:2021cv20187, U.S. Court for the Southern District of Florida.

Trial Testimony, April 19, 2021, *FMC Technologies, Inc. v. Richard Murphy and Dril-Quip, Inc.,* Case No. 2020-63081, In the 127th District Court of Harris County, Texas.

Deposition, March 31, 2021, *FMC Technologies, Inc. v. Richard Murphy and Dril-Quip, Inc.,* Case No. 2020-63081, In the 127th District Court of Harris County, Texas.

Expert Report, March 30, 2021, *Maplebear Inc. DBA Instacart v. Cornershop Technologies, Inc.* Case No. 2:20-cv-00240-JRG, U.S. District Court for the Eastern District of Texas.

Declaration, March 15, 2021, *Future Metals LLC v. Frank Ruggiero*, U.S. District Court for the Southern District of Florida.

Declaration, February 26, 2021, *Maplebear Inc. DBA Instacart v. Cornershop Technologies, Inc.*, Case No. 2:20-cv-00240-JRG, U.S. District Court for the Eastern District of Texas.

Affidavit, February 3, 2021, *Gene Katz v. Underwriter's Laboratories, Inc.*, Case No. 2018-L-003788, Circuit Court of Cook County, Illinois.

Declaration, December 4, 2020, *Confidential Arbitration Proceedings Before JAMS* Reference No 1100106192.

Declaration, July 24, 2020, *Tesla, Inc. v. Guangzhi Cao*, Case No. 19-cv-01463-VC, U.S. District Court, Northern District of California.

Testimony, July 13, 2020, *Confidential Arbitration Proceedings Before JAMS* Reference No 1100106192.

Deposition, June 2, 2020, *Farmers Insurance Exchange and Farmers Group Inc. v. Venkatesh Kamath; Shoreh Abedi; The Auto Club Group; Automobile Club of Michigan DBA AAA Michigan*, Case No. BC681655, Superior Court of the State of California.

Deposition, April 7, 2020, *Confidential Arbitration Proceedings Before JAMS* Reference No 1100106192.

Expert Report, March 3, 2020, *Confidential Arbitration Proceedings Before JAMS* Reference No 1100106192.

Declaration, February 28, 2020, *Confidential Arbitration Proceedings Before JAMS* Reference No 1100106192.

Declaration, February 25, 2020, *Farmers Insurance Exchange and Farmers Group Inc. v. Venkatesh Kamath; Shoreh Abedi; The Auto Club Group; Automobile Club of Michigan DBA AAA Michigan*, Case No. BC681655, Superior Court of the State of California.

Expert Report, November 8, 2019, *Morgan Art Foundation v. McKenzie et al.,* Case No 1:18-cv-04438, U.S. District Court for the Southern District of New York.

Declaration, September 27, 2019, *Confidential Arbitration Proceedings Before JAMS* Reference No 1100106192.

Declaration, August 9, 2019, *Syntel Sterling Best Shores Mauritius Limited and Syntel, Inc. v. The Trizetto Group, Inc. and Cognizant Technology Solutions Corp.*, Case No. 1:15-cv-00211 (LGS)(SDA), U.S. District Court for the Southern District of New York.

Declaration, June 4, 2019, *Synopsys, Inc. v. Innogrit, Corp.,* Case No. 5:19-cv-02082, U.S. District Court for the Northern District of California.

Deposition, January 24, 2019, *Syntel Sterling Best Shores Mauritius Limited and Syntel, Inc. v. The Trizetto Group, Inc. and Cognizant Technology Solutions Corp.*, Case No. 1:15-cv-00211 (LGS)(SDA), U.S. District Court for the Southern District of New York.

Rebuttal Expert Report, December 7, 2018, *Syntel Sterling Best Shores Mauritius Limited and Syntel, Inc. v. The Trizetto Group, Inc. and Cognizant Technology Solutions Corp.*, Case No. 1:15-cv-00211 (LGS)(SDA), U.S. District Court for the Southern District of New York.

Deposition, September 5, 2018, *Synopsys, Inc., v. Ubiquiti Networks, Inc.*, et al. Case No. 3:17-cv-00561-WHO, in the U.S. District Court, Northern District of California, San Francisco Division.

Expert Report, August 3, 2018, *Synopsys, Inc., v. Ubiquiti Networks, Inc.*, et al. Case No. 3:17-cv-00561-WHO, in the U.S. District Court, Northern District of California, San Francisco Division.

Deposition, April 18, 2018, *SS&C Technologies, Inc., v. Bradley Rossa And Clearwater Analytics, LLC*, Case no. 2015-CH-15891, Circuit Court of Cook County, Illinois.

Declaration, March 22, 2018, *Synopsys, Inc., v. Ubiquiti Networks, Inc.*, *et al.* Case No. 3:17-cv-00561-WHO, in the U.S. District Court, Northern District of California, San Francisco Division.

Affidavit, October 4, 2017, *St. Paul Surplus Lines Insurance Company v. Wright Medical Group, Inc.* Docket No. CH-14-0927-3, In the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis.

Supplemental Report, July 20, 2017, *Open Text Corporation v. Steven Grimes, et al*. Case no. 1:17-cv-01248-RDB, U.S. District Court for the District of Maryland.

Expert Report, June 16, 2017, *Open Text Corporation v. Steven Grimes, et al*. Case no. 1:17-cv-01248-RDB, U.S. District Court for the District of Maryland.

Court Appointed Expert, June 9, 2017, *Open Text Corporation v. Steven Grimes, et al.* Case no. 1:17-cv-01248-RDB, U.S. District Court for the District of Maryland.

Deposition, December 7, 2016, *SS&C Technologies, Inc., v. Bradley Rossa And Clearwater Analytics, LLC*, Case no. 2015-CH-15891, Circuit Court of Cook County, Illinois.

Testimony, December 5, 2016, *Flextronics International USA, Inc., v. SDS-IC Ltd, SDS-IC-HK Ltd, and Aaron Serge Bueno* (a/k/a “Serge Joseph Bueno”). Case No. 1:15-cv-04904, U.S. District Court Northern District of Illinois Eastern Division.

Deposition, November 17, 2016, *Flextronics International USA, Inc., v. SDS-IC Ltd, SDS-IC-HK Ltd, and Aaron Serge Bueno* (a/k/a “Serge Joseph Bueno”). Case No. 1:15-cv-04904, U.S. District Court Northern District of Illinois Eastern Division.

Deposition, November 9, 2016, *SS&C Technologies, Inc., v. Bradley Rossa And Clearwater Analytics, LLC*, Case no. 2015-CH-15891, Circuit Court of Cook County, Illinois.

Declaration and Rebuttal Report, September 27, 2016, *Flextronics International USA, Inc., v. SDS-IC Ltd, SDS-IC-HK Ltd, and Aaron Serge Bueno* (a/k/a "Serge Joseph Bueno"). Case No. 1:15-cv-04904, U.S. District Court Northern District of Illinois Eastern Division.

Affidavit, August 30, 2016, *TP Group-CI, Inc. v. Steven R. Smith and William Dean Wallace*. Case No. 1:16-cv-07463, U.S. District Court Northern District of Illinois Eastern Division.

Deposition, August 26, 2016, *Penny Davenport, et al. v. Charter Communications, LLC*, Case No. 4:12CV0007 AGF, U.S. District Court, Eastern District of Missouri, Eastern Division.

Affidavit, August 15, 2016, *TP Group-CI, Inc. v. Steven R. Smith and William Dean Wallace*. Case No. 1:16-cv-07463, U.S. District Court Northern District of Illinois Eastern Division.

Expert Report, June 27, 2016, *Penny Davenport, et al. v. Charter Communications, LLC*, Case No. 4:12CV0007 AGF, U.S. District Court, Eastern District of Missouri, Eastern Division.

Affirmation, June 14, 2016, *Medidata Solutions, Inc. v. Michael Petrarca And Bioclinica, Inc*. Index No.: 652501/2016, Supreme Court of The State of New York, County of New York.

Affidavit, May 31, 2016, *Kelly Hespe v. City of Chicago et al.* Case No. 13 C 7998, U.S. District Court Northern District of Illinois Eastern Division.

Expert Report, May 11, 2016, *Flextronics International USA, Inc., v. SDS-IC Ltd, SDS-IC-HK Ltd, and Aaron Serge Bueno* (a/k/a "Serge Joseph Bueno"). Case No. 1:15-cv-04904, U.S. District Court Northern District of Illinois Eastern Division.

Declaration, February 18, 2016, *Teledyne Technologies Incorporated v. Shekar*. Case No. 1:2015cv01392, U.S. District Court Northern District of Illinois Eastern Division.

Declaration, November 11, 2015, *Synopsys, Inc. v. Chao, et al.*, Case No. 3:15-cv-1953MO, U.S. District Court, District of Oregon, Portland Division.

Written Affidavit, July 31, 2015, *Lutonix, Inc. and C.R. Bard, Inc. v. Christopher Barry*, Case No 11313-VCL, In the Court of Chancery of the State of Delaware.

Written Affidavit, July 30, 2015, *Lutonix, Inc. and C.R. Bard, Inc. v. Christopher Barry*, Case No 11313-VCL, In the Court of Chancery of the State of Delaware.

Testimony, April 30, 2015, *Teledyne Technologies Incorporated v. Shekar*. Case No. 1:2015cv01392, U.S. District Court Northern District of Illinois Eastern Division.

Written Affidavit, December 29, 2014, *United States of America v. Yihao Pu and Sahil Uppal*. Case No. 11 CR 699, U.S. District Court Northern District of Illinois Eastern Division.

Deposition, March 18, 2014, *Murphy v. NXP Semiconductor, et al.* Case No. 1-10-CV-188679, Superior Court of the State of California for the County of Santa Clara.

Testimony, November 1, 2013, *Echo v. Avidpath Inc.*, Docket No. 13 C 309, U.S. District Court for the Northern District of Illinois.

Written Affidavit, March 7, 2013, *Echo v. Avidpath Inc.,* Docket No. 13 C 309, U.S. District Court for the Northern District of Illinois.

Expert Report, June 15, 2012, *Clarion Partners LLP v. Carlos Tommasi Villammi, et al*. Case nos. 17581/JRF and ICC Arbitration 17548/JRF International Chamber of Commerce (ICC) International Court of Arbitration, Mexico City, Mexico.

Court Appointed Expert, November 24, 2010, *1501 Feehanville LLC v. Michael W. Bishop and Cresa Partners, LLC*. Case no. 08 L 013851, Circuit Court of Cook County, Illinois.

Written Affidavit, November 18, 2010, *Fort Benning Family Communities, LLC v. American Management Services East LLC*. Case No. SU10CV2025-F, Superior Court of Muscogee County, State of Georgia.

Written Affidavit, April 15, 2009, *Stanford International Bank Limited, et al. v. Ralph Janvey, et al*. Case No. 500-11-036045-090, Superior Court, Province of Quebec, District of Montreal, Canada.

## Professional Presentations and Speaking Engagements

“Panel: The In-House Perspective - Protection, Prevention and Investigations” Sandpiper Partners Trade Secrets, Non-Competes and Other Competitive Restrictions, Wednesday, September 17, 2025.

"Tales from the Crypt: A Conversation with Digital Forensics Experts on Trade Secret Misappropriation and Remote Workforce.” DOWNLOAD Digital Tech Conference Los Angeles, Webinar, March 14, 2024.

“Panel: The In-House Perspective – Protection, Prevention and Enforcement.” and “Panel: Judicial and Government Observations on Trade Secrets Law and Practice.” Sandpiper Partners Trade Secrets Protection, Enforcement, and Litigation – East Coast Conference, February 14, 2024

“Responding to Trade Secret Theft: The First 100” Morrison & Foerster LLP Fall 2023 Intellectual Property Insights Webinar Series, November 14, 2023

“Moderator: Protection, Prevention, and Investigations” Sandpiper Partners Trade Secrets Protection, Enforcement, and Litigation San Francisco Conference, January 31, 2023

“Panel: The In-House Perspective – Protection, Prevention and Enforcement.” Sandpiper Partners Trade Secrets Protection, Enforcement, and Litigation New York Conference, November 16, 2022

“Panel: Protection, Prevention, and Investigations” Sandpiper Partners Trade Secrets Protection, Enforcement, and Litigation Chicago Conference, October 27, 2022

“Panel: Forensic Issues in Trade Secret Disputes.” Sedona Conference on Trade Secrets, December 13, 2021.

"Responding to the Challenges of the Modern Investigation." Consero Corporate Litigation Roundtable, December 9, 2021.

“Panel 3: SEC Disclosure and Civil Enforcement.” Sandpiper Partners Hot Trends in SEC and DOJ Enforcement and Litigation 2022 Conference, November 17, 2021.

“Panel: The In-House Perspective – Protection, Prevention and Enforcement.” and “Panel: Trade Secrets in the Courtroom: Civil Litigation and Criminal Prosecution.” Sandpiper Partners Trade Secrets Protection, Enforcement, and Litigation – East Coast Conference, October 5, 2021

Breaches in the M&A Context and Disclosure Controls in Cybersecurity Panel, Sandpiper Partners Cybersecurity & Privacy East Coast Conference, July 21, 2021.

Criminal Litigation Panel, Sandpiper Partners Antitrust & Competition in Key Industry Segments Conference, July 15, 2021.

Collection and Analysis of Ephemeral Data, OpenText EnFuse, November 13, 2019.

Uncovering and Acting Upon Trade Secrets Theft, Association of Corporate Counsel Annual Meeting, October 28, 2019.

Trade Secrets Theft: Legal Teams Weigh in on Prevention & Investigation, Webinar, January 24, 2019.

“Text, Lies and Social Media: Reducing Risk from Non-Standard Data,” Compliance, Governance & Oversight Council Conference, May 1, 2018.

“6 Degrees of Forensics,” Panelist, OpenText EnFuse, May 24, 2017.

“Cybersecurity and Patent Protection,” Patent Disputes Forum North, Panelist, April 18, 2017.

“Who’s in Charge? Developments in Regulation of Insurer Cybersecurity Practices,” St. John’s University School of Risk Management Conference on Insurance Regulation, Panelist, October 20, 2016.

“Cyber Threats to Your Business,” Baker Donelson Webinar, October 7, 2016.

“Warning – Blind Curves: How You Can Prevent Data Theft,” Thompson Coburn HR Seminar, April 7, 2016.

“Outsmarting Smartphones,” Panelist, Georgetown Advanced eDiscovery Institute, November 19, 2015.

“Protecting Your Organization from Data Theft,” Compliance Governance and Oversight Counsel (CGOC) New York Regional, March 11, 2015.

“Social Media Collection,” Women in eDiscovery, St. Louis Chapter, August 28, 2014.

“Social Media Bootcamp for E-Discovery,” FTI presentations, May 15, 2014, May 28, 2014, June 13, 2015, March 12, 2015.

“The “eWorkplace” and its Impact on eDiscovery,” Panelist, Today’s General Counsel and Institute, June 10, 2014.

“Trade Secrets Theft: Addressing Evidence From Emerging Technologies,” May 30, 2014.

“Remote Collection: What is it, and Can it Reduce E-Discovery Costs?,” Moderator, ALM’s Law Technology News Webcast, May 21, 2014.

“Protecting Against IP Theft in Dynamic Work Environments,” InsideCounsel SuperConference, May 15, 2014.

"Litigation Trends," InsideCounsel Global Lawyer Forum, May 14, 2014.

"Legal Learning Series Social Media Bootcamp," with Ethan Wall, April 24, 2014.

"E-Discovery and the Cloud: A Checklist for Success," with Joel Jacob, February 11, 2014.

"Defensibly collecting all the relevant data (Cloud / Social Media / BYOD)," November 19, 2013.

"E-Discovery in a Social Media World," Legal Learning Series eDiscovery Leadership Conference, November 15, 2013.

"Data Theft "Dos and Don'ts", Vinson & Elkins CLE, January 14, 2013.

"Trade Secrets Theft: Addressing Evidence from Emerging Technologies," FTI presentation, August 30, 2012.

"Fundamental Issues of Network Security and the Risks Facing Law Firms on Cyber Breaches," May 17, 2012.

"Cyber Liability for Law Firms," Association of Legal Administrators, March 15, 2012.

"Cyber Liability for Hedge Funds," Association of Legal Administrators, February 14, 2012.

"Understanding the Impact of the iPad, Kindle & Other New Mobile Devices and Services on e-Discovery," FTI presentation, November 3, 2010.

"eDiscovery Cost Savings for Attorneys," Knowledge Congress Webinar, July 21, 2010.

## Awards & Recognition

Lexology Index: Experts - Digital & Data - Digital Forensic 2025

Who's Who Legal: Digital & Data – Digital Forensic Experts 2024

Who's Who Legal: Investigations 2021 - Future Leaders in Digital Forensics, March 2021

Who's Who Legal: Future Leaders in Digital Forensics, March 2020

Who's Who Legal: Data – Data Experts 2020, February 2020

Who's Who Legal: Thought Leaders: Data, August 2019

Who's Who Legal: Investigations 2019, February 2019

Who's Who Legal: Data Experts – November 2018

Who's Who Legal Consulting Experts: Experts – Digital & Data – Data and E-Discovery Experts, July 30, 2018

Certificate of Commendation from the US Attorney General, 2004

## Professional history

| | |
|---|---|
| 2021–Present | *Vice President*, Forensic Services, Charles River Associates |
| 2006–2021 | FTI Consulting |

| | |
|---|---|
| | 2018-2021 Senior Managing Director, Washington, DC |
| | 2014–2018 *Managing Director*, Washington, DC |
| | 2011–2014 *Managing Director*, Chicago |
| | 2010–2011 *Director*, Chicago |
| | 2007–2010 *Director*, Washington, DC |
| | 2006–2007 *Senior Consultant*, Washington, DC |
| 2005–2005 | *Analytic & Forensic Technology Laboratory*, Deloitte, New York |
| 2003–2005 | *Child Exploitation & Obscenity Section, High Technology Investigative Unit, Criminal Division*, United States Department of Justice, Washington, DC |
| 2000–2003 | *Information Technology Consulting*, Shiron Associates, Elkins Park, PA |
| 2000–2003 | *Information Technology Department*, Sabre System, Inc., Warminster, PA |