[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*Jane Doe QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF REQUESTING ORDER TO STRIKE IMPROPER SUPPLEMENTAL AND REBUTTAL OPINIONS**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

*Plaintiff,*

v.

UBER TECHNOLOGIES, INC., et al.,

*Defendants.*

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 5 – 6th Floor

# TABLE OF CONTENTS

**Page**

**I. PLAINTIFF'S DISCLOSURES VIOLATE RULE 26 AND ARE UNTIMELY. ................6**

A. Dr. Lebowitz ........................................................................................................7

B. Keller And Drumwright.........................................................................................7

C. Wells, Sniderman, And Romero .............................................................................8

**II. THE COURT SHOULD EXCLUDE THE IMPROPER EXPERT TESTIMONY. ............9**

**III. ALTERNATIVELY, UBER SHOULD BE ALLOWED TO DEPOSE THESE EXPERTS. .........................................................................................................13**

**CONCLUSION ..........................................................................................................13**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carballido v. Target Corp.*,
No. 1:19-cv-01057-REB-SKC, 2021 WL 1376997 (D. Colo. Apr. 12, 2021) ....................................8

*Cleave v. Renal Care Grp., Inc.*,
No. 2:04CV161-P-A, 2005 WL 1629750 (N.D. Miss. July 11, 2005) ................................................6

*Cooper Tire & Rubber Co. v. Farese*,
No. 3:02CV210-SA-JAD, 2008 WL 5188266 (N.D. Miss. Dec. 9, 2008).............................10, 11, 12

*Edwards v. First Tr. Portfolios L.P.*,
No. 3:23-cv-2239-BN, 2025 WL 531787 (N.D. Tex. Feb. 18, 2025) ......................................1, 6, 7, 8

*Familias Unidas Por La Educación v. El Paso Indep. Sch. Dist.*,
No. EP-20-CV-170-DB, 2022 WL 2906505 (W.D. Tex. July 22, 2022) ................................5, 10, 11

*Gatewood v. Koch Foods of Miss., LLC*,
No. 3:07CV82-KS-MTP, 2009 WL 8642001 (S.D. Miss. Oct. 20, 2009) ........................................12

*Geiserman v. MacDonald*,
893 F.2d 787 (5th Cir. 1990) ..........................................................................................................11

*Hernandez v. Structsure Projects, Inc.*,
No. 5:25-CV-01231-MA, 2026 WL 2621258 (W.D. Tex. Sept. 3, 2026)..........................................10

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982)..........................................................................................................................11

*Muslow v. Bd. of Supervisors*,
No. 19-11793, 2021 WL 2168812 (E.D. La. May 27, 2021).......................................................6, 7, 9

*Newsome v. Int'l Paper Co.*,
123 F.4th 754 (5th Cir. 2024) ..........................................................................................................11

*Pace v. State Farm Fire & Cas. Co.*,
No. 2:23cv19-HSO-BWR, 2024 WL 409398 (S.D. Miss. Feb. 2, 2024) ............................................6

*Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*,
No. A-19-CV-00696-RP, 2022 WL 1014139 (W.D. Tex. Apr. 5, 2022)...............................11, 12, 13

*Rodriguez v. Olin Corp.*,
780 F.2d 491 (5th Cir. 1986) .........................................................................................................6, 8

*Self v. Ill. Cent. R.R.*,
No. 96-4141, 2000 WL 14682 (E.D. La. Jan. 6, 2000)...................................................................12

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,
73 F.3d 546 (5th Cir. 1996) ....................5, 9

*Sierra Club v. Energy Future Holdings Corp.*,
No. W-12-CV-108, 2014 WL 12690016 (W.D. Tex. Feb. 20, 2014)....................6, 8, 9

*Terpin v. AT&T Mobility, LLC*,
No. 18-cv-06975-ODW-KS, 2023 WL 3431906 (C.D. Cal. Mar. 20, 2023) ....................9

**Rules**

Fed. R. Civ. P. 26.................... *passim*

Fed. R. Civ. P. 37....................3, 5, 10

Fed. R. Civ. P. 702....................1, 10

**Other Authorities**

Manual for Complex Litigation (Fourth) § 22.315 (2004) ....................12

Last Friday—just days before the scheduled start of trial—Plaintiff disclosed several new, belated expert opinions in five "supplemental" reports from her existing experts (Leslie Lebowitz, John Romero, Robert Sniderman, Lacey Keller, and Minette Drumwright) and one "rebuttal" report from an entirely new expert, Laura Wells.[1] For the most part, however, these reports neither "supplement" (i.e., correct inaccuracies or update opinions with new discovery) nor "rebut" new information set forth in Uber's experts' reports. Instead, they attempt to plug holes highlighted by Uber's counsel in Plaintiff's experts' depositions; they inject new opinions into this litigation at the eleventh hour; and they address pieces of evidence pertaining to Victor Le's military service history and Uber's Flack data that were long available to Plaintiff. The time for disclosing these "expert" opinions was, at the latest, September 8, the last deadline for the parties' affirmative expert reports. Plaintiff's decision to wait until just days before the start of trial lacks substantial justification, is extremely prejudicial, and should not be countenanced.

***First***, the Court's Scheduling Order established September 3 as the deadline for the parties to serve their affirmative expert reports. *See* ECF 7087.[2] Although that Order also provides that the parties "may supplement based on depositions of Gaddis, Kansal and Boman Sept. 2026 and other depositions," *id.*, that merely reflected the reality that certain limited discovery was ongoing and that the parties' experts would be able to address information that was not available at the time their original reports were due. It was clearly not an invitation for Plaintiff's experts to bolster their prior opinions or address information that they could have included in their original reports, much less introduce entirely new theories and opinions into this case. But that is exactly what Plaintiff has done. For example, after Dr. Lebowitz repeatedly conceded at her deposition that she had ***not*** reviewed certain pieces of evidence (e.g., journal entries, Instagram posts, and text messages) that were on her reliance list and thus obviously available to her before she completed her report, she attempted to rehabilitate her credibility by conducting a "supplemental interview" of Plaintiff where she supposedly ***did*** discuss those materials—a process she then summarized in an "Addendum" to her original report. Lebowitz Addendum (Ex. 1). Ms. Keller offers

[1] A seventh expert, Thomas Tremblay, inappropriately attacks one of Uber's experts (Kevin Phelan) as perpetuating rape myths, which is improper for all of the reasons set forth in Uber's pending Rule 702 motion to exclude.

[2] The parties agreed that each side could disclose up to two expert reports slightly later, by September 8.

a completely new opinion regarding the feasibility of facial recognition technology, *see* Keller Addendum (Ex. 2), while Dr. Drumwright purports to conduct a new analysis of Uber's Flack data that was produced to Plaintiff more than two months before she completed her original report, *see* Drumwright Suppl. Rep. (Ex. 3). And Plaintiff's purported "rebuttal" expert, Ms. Wells, along with Mr. Romero and Mr. Sniderman, delve into the import of Mr. Le's military service records, even though all of that evidence was sought—and obtained—by Plaintiff before the deadline for opening expert reports. *See* Wells Rebuttal Rep. (Ex. 4); Romero Suppl. Rep. (Ex. 5); Sniderman Suppl. Rep. (Ex. 6). This testimony far exceeds the bounds of proper "supplemental" or "rebuttal" testimony and should have been disclosed (if at all) by September 8.

***Second***, the Court should strike the improper "supplemental" and "rebuttal" reports because Plaintiff's failure to comply with the Court's Scheduling Order and Rule 26 was neither substantially justified nor harmless. With the exception of narrow portions of Mr. Romero's and Mr. Sniderman's reports addressing recent deposition testimony, the reports concern subjects and evidence that existed on September 3 and could have been disclosed by that deadline. The only credible explanation for not disclosing this information earlier and instead springing it on Uber on the eve of trial against the backdrop of an incredibly compressed pre-trial schedule was to ensure that Uber would have no meaningful ability to depose these experts on these opinions or otherwise challenge these new reports. Uber should not be forced to defend against completely new opinions (like Ms. Keller's claims regarding facial recognition technology) that it could not reasonably anticipate, let alone fairly explore during discovery.

In short, there is not enough time between now and the start of trial for Uber to evaluate and respond to Plaintiff's experts' new reports and complete other trial preparation. Allowing Plaintiff to introduce these improper reports would violate Uber's due-process rights by making it impossible to prepare a proper defense in this case. It would also undermine the utility of any resulting verdict to the broader claims pool, frustrating the purpose of the bellwether process. For all of these reasons, the Court should: (i) strike in full the "supplemental" reports of Dr. Lebowitz, Dr. Drumwright and Ms. Keller; (ii) strike in full the "rebuttal" report of Ms. Wells; and (iii) strike the "supplemental" reports of Mr. Romero

and Mr. Sniderman except to the extent they address new deposition testimony.[3] Alternatively, and at the very least, Uber must be allowed to depose these experts with respect to their improper opinions in the time remaining before they would testify at trial.

**BACKGROUND**

***Dr. Lebowitz***. In her report, Dr. Lebowitz, Plaintiff's expert psychologist, states that she "considered the following documents provided by counsel in formulating my opinion," including Plaintiff's journal entries, social media posts, and text messages. *See* 9/3/2026 Lebowitz Rep. at 3 (ECF 7474-2). At her deposition, however, Dr. Lebowitz conceded that she actually had not considered all of the documents listed in her report, including Plaintiff's journal entries, 9/21/2026 Lebowitz Dep. 121-22 (Ex. 7); Plaintiff's social media posts, *id.* 141; and Plaintiff's text messages, *id.* 202-03 (Dr. Lebowitz testifying that "I'm not sure" whether she had seen Plaintiff's text messages before or after she completed her report). Several days later, on September 25, Dr. Lebowitz conducted a "supplemental" interview of Plaintiff that lasted 2.5 hours and "focused primarily on messages, including texts and Instagram posts, and school journal entries that have been produced in this litigation." Lebowitz Addendum. Dr. Lebowitz also "briefly discussed aspects of [Plaintiff's] therapy history." *Id.* Plaintiff's "Addendum" describes this "supplemental" interview in the most conclusory of terms, concluding that the information she obtained "was consistent with, and did not alter, the opinions set forth in my prior report." *Id.*

***Lacey Keller***. In her "supplemental" report, Ms. Keller, Plaintiff's statistician, proposes a brand new (sixth) opinion: "Uber had access to three technological methods it could have used to associate Victor Huynh Le with the 2017 incident report by [G.M.] and with his multiple Uber accounts, including his account Uber banned in 2016." Keller Suppl. Rep. at 1. One of those methods includes facial recognition technology—a subject that no expert in this case had previously addressed. *Id.* Notably, with the exception of Uber's expert depositions, every one of the eleven sources included in Ms. Keller's new

[3] Although Judge Cisneros addressed a dispute about the scope of supplemental and rebuttal testimony last year, that decision primarily focused on whether Uber had established prejudice from any untimely expert disclosures. *See* ECF 4701. Uber respectfully submits that such an approach to Rules 26 and 37 misapprehends the relevant burden of proof and is, in any event, inapplicable given the extreme prejudice Uber demonstrates throughout this brief.

report predates the filing of her initial report (in fact, most sources predate the date of the incident in question).

***Minette Drumwright***. In her "supplemental" report, Dr. Drumwright, Plaintiff's marketing expert, claims to perform a new analysis of "updated" Flack data that "recategorized some 2017-2024 incidents and, for the first time, provided 2025 data[.]" Drumwright Suppl. Rep. at 1. But Dr. Drumwright expressly acknowledges that this data was provided by Uber on "June 30, 2026." *Id.* Dr. Drumwright then states that this information (which existed well before she served her original report) "reinforces my opinion that Uber's marketing and strategic communications . . . were unreasonable, reckless, and irresponsible . . . ." *Id.* at 1-2.

***John Romero***. In his "supplemental" report, Mr. Romero, Plaintiff's background check expert, acknowledges that during his deposition, he "indicated [he] had no information about what the military considered or its standards, waivers, or continuous monitoring practices, and that [he] was not offering any opinions on such." Romero Suppl. Rep. at 1 (citing Romero Dep. at 409). Now, however, Mr. Romero attempts to offer the very opinions he previously disclaimed having, and he does so based on Mr. Le's military service records that Plaintiff sought and obtained before Mr. Romero served his original report. *See* ECF 7110 at 1.[4]

***Dr. Robert Sniderman***. At his deposition, Dr. Sniderman, Plaintiff's human resources expert, admitted that he is "not an expert on military records" and, thus, was "not sure what is available and what is not available" with regard to Mr. Le's military service history. 9/23/2026 Sniderman Dep. 202 (Ex. 8). Admitted lack of expertise notwithstanding, Dr. Sniderman now states that the fact that Mr. Le "passed a military background check" and "was allowed to enlist is of no consequence." Sniderman Suppl. Rep. at 1. Dr. Sniderman goes on to claim that, "[w]hat ***is*** significant to [him] about Mr. Le's military records is that he was stationed in Fort Benning, Georgia for 5 months beginning in March 2018 and Germany until his discharge in December 2019," yet Checkr never searched either jurisdiction. *Id.* (emphasis added). As previously discussed, these records were in Plaintiff's possession before Dr. Sniderman completed his original report. In addition to discussing Mr. Le's military service history, Dr. Sniderman seeks to

[4] The parties did not receive Le's unredacted military records until after September 3, but nothing about Mr. Romero's opinions rests on the specifics of the subsequent disclosures.

rehabilitate his testimony at his deposition as to whether Uber should have searched Fort Worth Municipal Court records. *Id.*

***Laura Wells***. Unlike Plaintiff's other experts, Ms. Wells (a completely new expert) claims to have "experience in military justice, personnel administration, and military training[.]" Wells Rebuttal Rep. at 1. In her report, Ms. Wells attempts to respond to the opinions offered by Uber's experts, Jason Morris, Vida Thomas, Kristen Zgoba, and Kevin Phelan, concerning Mr. Le's military service history. *Id.* But all parties obviously understood the potential relevance of Mr. Le's military service history at the time initial expert reports were due, and that was the time to disclose any opinions Ms. Wells had about Mr. Le's military service.

## ARGUMENT

Under Rule 26, a party who has served an opening expert report under Rule 26(a) "must supplement or correct its disclosure or response[] in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1). The time for serving rebuttal opinions (i.e., evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" is "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). Where a party fails to comply with the requirements governing proper supplemental or rebuttal opinions, she "is not allowed to use that information . . . at a trial . . . unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). "The burden of proving that the failure to disclose was substantially justified or harmless is on the party facing sanctions." *Familias Unidas Por La Educación v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170-DB, 2022 WL 2906505, at *5 (W.D. Tex. July 22, 2022).

As the Fifth Circuit has made clear, "[t]he purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571-72 (5th Cir. 1996). That strict limitation takes on special importance in cases, like this one, with a compressed schedule under which such reports are served just

days before the start of trial. As explained below, however, the purported "supplemental" opinions of six of Plaintiff's previously disclosed experts and the purported "rebuttal" opinions of an entirely new expert contravene these dictates and must be stricken.

## I. PLAINTIFF'S DISCLOSURES VIOLATE RULE 26 AND ARE UNTIMELY.

Most of what Plaintiff has disclosed exceeds the bounds of proper supplemental or rebuttal opinion. Courts within the Fifth Circuit "distinguish 'true supplementation' (*e.g.*, correcting inadvertent errors or omissions) from gamesmanship and have repeatedly rejected attempts by parties to bolster their position by 'supplementing' an expert report with a 'new and improved' expert report." *Muslow v. Bd. of Supervisors*, No. 19-11793, 2021 WL 2168812, at *2 (E.D. La. May 27, 2021) (citation omitted); *see also, e.g.*, *Edwards v. First Tr. Portfolios L.P.*, No. 3:23-cv-2239-BN, 2025 WL 531787, at *2 (N.D. Tex. Feb. 18, 2025) (expert's supplemental report "contains an untimely expert opinion that is based on information available before the deadline for expert disclosures and that departs from his Original Report in material respects."); *Cleave v. Renal Care Grp., Inc.*, No. 2:04CV161-P-A, 2005 WL 1629750, at *1 (N.D. Miss. July 11, 2005) (striking supplemental report that "failed to identify any new records or information which would prompt [the] new opinions"). Courts within this circuit have similarly distinguished between proper "rebuttal" testimony that "address[es] ***new*** information" from improper attempts to "correct[] or fill[] in the gaps of the party's case-in-chief . . . ." *Pace v. State Farm Fire & Cas. Co.*, No. 2:23cv19-HSO-BWR, 2024 WL 409398, at *4-5 (S.D. Miss. Feb. 2, 2024) ("Defendant's experts' reports did not constitute new information that allowed for rebuttal testimony.") (internal quotation marks and citation omitted, emphasis added). *Sierra Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 12690016, at *4 (W.D. Tex. Feb. 20, 2014) ("Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief.") (quoting *Rodriguez v. Olin Corp.*, 780 F.2d 491, 494 (5th Cir. 1986)).

As explained below, four of Plaintiff's latest disclosures (Lebowitz, Drumwright, Keller, Wells) are improper under these principles in their entirety, while two others (Romero and Sniderman) are improper at least in part.

**A. Dr. Lebowitz**

At her deposition, Plaintiff's expert psychologist, Dr. Leslie Lebowitz, repeatedly conceded that she had ***not*** considered several items on her reliance list, including Plaintiff's text messages, Instagram posts, journal entries, and other aspects of her therapy history. *See, e.g.*, Lebowitz Dep. 121-22 (Dr. Lebowitz testifying that she did not review any of Plaintiff's journal entries); *id.* 125 (same as to Plaintiff's Instagram posts); *id.* 167 (Dr. Lebowitz acknowledging that she included an MMPI summary without looking at the actual test results themselves); *id.* 202-03 (Dr. Lebowitz stating that she is not "sure" if she saw various text messages before or after she had finalized her report).

Dr. Lebowitz has since conducted a "supplemental" interview of Plaintiff, during which she claims to have "focused primarily" on these very materials—none of which changes her prior opinions. *See* Lebowitz Addendum. This so-called "Addendum" "is not a true supplementation"; it is a clear attempt to "fill[] a hole in, and hence bolster[], her original expert report," which Uber effectively challenged during Dr. Lebowitz's deposition. *See Muslow*, 2021 WL 2168812, at *2 ("supplemental disclosures are only permissible as a means of correcting inaccuracies or filling in the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure*.") (internal quotation marks and citation omitted).

The time for interviewing Plaintiff and asking her about discovery identified on Dr. Lebowitz's reliance list was ***before*** she served her report referencing that discovery, not days before the scheduled start of trial. By sandbagging in this manner—made worse by the fact that Dr. Lebowitz's report offers no analysis or explanation at all of the matters discussed with Plaintiff for 2.5 hours—Uber has been deprived of the opportunity to understand the details or bases of Dr. Lebowitz's opinions on materials she failed to consider in time for her duly scheduled deposition. This late disclosure is a particularly brazen violation of the rule against using the "supplementation" label to "fill[] a hole in" her original report or proffer "new and improved" opinions, *Muslow*, 2021 WL 2168812, at *2, "based on information available before the deadline for expert disclosures," *Edwards*, 2025 WL 531787, at *2.

**B. Keller And Drumwright**

Both Ms. Keller and Dr. Drumwright offer completely new opinions that should have been disclosed in their original reports. In particular, Ms. Keller now offers a sixth opinion: that "Uber had

access to three technological methods it could have used to associate [Mr.] Le with the 2017 incident report by [G.M.] and with his multiple Uber accounts," including facial recognition technology. Keller Suppl. Rep. at 1-2. Not only is this the first time Ms. Keller has raised such an opinion in this case, but also, with the exception of defense experts' depositions, every one of the eleven sources she claims to rely on was available to Plaintiff at the time Ms. Keller filed her initial report. And Dr. Drumwright's "supplemental" report purports to address "Updated Flack Data," which she claims "***reinforces*** and supports the opinion [she] offered in [her] Opening Report." Drumwright Suppl. Rep. at 1 (emphasis added). But as even Dr. Drumwright is forced to acknowledge, this "updated" data was provided to Plaintiff June 30, 2026—more than two months before her original report was due. *Id.* Indeed, her fellow expert, Ms. Keller, addressed it (albeit unreliably) in her opening report. *See* 9/3/2026 Keller Orig. Rep. ¶¶ 15-16 (ECF 7353-2). Dr. Drumwright's attempt to bury this acknowledgment in a couple of footnotes only underscores the gamesmanship and confirms the untimely nature of this "updated" analysis.

**C. Wells, Sniderman, And Romero**

The entirety of Wells' 14-page "rebuttal" report and much of Romero's and Sniderman's "supplemental" reports address Mr. Le's military service history records and discuss what relevance that evidence has to Mr. Le's suitability as an independent rideshare driver.[5] But the potential relevance of Mr. Le's military service has long been known to Plaintiff, which explains why her counsel sought—and ultimately obtained—these records before the initial expert report deadline. Because both Mr. Romero and Dr. Sniderman could have addressed this evidence in their original reports, their belated discussion of it does not constitute proper supplementation. *See Edwards*, 2025 WL 531787, at *2 (striking supplemental report where plaintiff "does not point to any newly produced information that [expert] relied on to develop his Supplemental Report calculation"). And while Wells did not offer an opening report, "rebuttal" testimony is supposed to address "new facts brought out in his opponent's case in chief." *Sierra Club*, 2014 WL 12690016, at *4 (quoting *Rodriguez*, 780 F.2d at 494); *see also Carballido v. Target Corp.*, No. 1:19-cv-01057-REB-SKC, 2021 WL 1376997, at *2 (D. Colo. Apr. 12, 2021) (striking rebuttal

[5] Uber is not moving to strike the narrow portions of Romero's and Sniderman's "supplemental" reports that specifically address the recent depositions of Sergeants Reinhardt and Bentley and Uber's expert, Jason Morris.

report where "the only information not available to [plaintiff's expert] at the time of his original disclosure was [defendant's] rebuttal expert report"). In other words, the fact that several of Uber's own experts address Mr. Le's military service records was not a license for Plaintiff to designate a completely new expert to opine on a topic that Plaintiff's counsel clearly knew would be relevant to Uber's defense at the time expert reports were due in this case. *See Terpin v. AT&T Mobility, LLC*, No. 18-cv-06975-ODW-KS, 2023 WL 3431906, at *7 (C.D. Cal. Mar. 20, 2023) ("[W]hen a rebuttal expert's testimony is offered to 'contradict an expected or anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything close to one.") (citation omitted). To hold otherwise would "blur the distinction between 'affirmative expert' and 'rebuttal expert' and 'render the scope of the subject matter limitless." *Sierra Club*, 2014 WL 12690016, at *4-5 (internal quotation marks and citation omitted).[6]

In short, Plaintiff's recently served expert reports constitute improper backfilling and/or "impermissible new opinion[s]" that should have been disclosed (if at all) on September 3, the date set by the Court for the parties' expert reports. *Muslow*, 2021 WL 2168812, at *2; *see also Terpin*, 2023 WL 3431906, at *7 (addressing similar standard with respect to "rebuttal" testimony).

## II. <u>THE COURT SHOULD EXCLUDE THE IMPROPER EXPERT TESTIMONY.</u>

The Fifth Circuit has instructed courts to consider the following factors in assessing whether a party's untimely expert opinions are substantially justified or harmless and should be excluded: (1) the explanation, if any, of the party's failure to comply with Rule 26; (2) the importance of the testimony; (3) the prejudice to the opposing party of allowing the testimony; and (4) the possibility of curing that prejudice with a continuance. *Sierra Club*, 73 F.3d at 572. These factors plainly weigh in favor of excluding Plaintiff's belated expert opinions.

***Explanation***. Plaintiff has no justification (let alone a "substantial" one) for waiting until the eve of trial to spring completely new expert opinions on Uber. As already discussed, Mr. Le's military records,

---

[6] Dr. Sniderman's opinion that Uber should have searched Fort Worth Municipal Court records is also improper under these principles except to the extent it narrowly addresses the recent testimony of Plaintiff's non-retained expert, Sergeant P.J. Reinhardt, and Sergeant Eric Bentley. As Dr. Sniderman concedes, this opinion is in direct response to questioning by "***Uber's counsel***" at his deposition, Sniderman Suppl. Rep. at 1 (emphasis added). Thus, this discussion is "not a true supplementation, but rather an impermissible new opinion, filling a hole in, and hence bolstering, [Sniderman's] original expert report." *Muslow*, 2021 WL 2168812, at *2.

Uber's "updated" Flack data, and the materials Dr. Lebowitz claimed to have "considered" before formulating her opinions in this case were all available by September 3, which is when Dr. Lebowitz, Mr. Romero, Dr. Sniderman, Dr. Drumwright, and Ms. Keller served their opening reports, and when Plaintiff could have (and should have) designated Ms. Wells as an expert. The fact that Plaintiff did not disclose these opinions until after depositions and briefing on Rule 702 motions, and just days before the scheduled start of trial, confirms that Plaintiff's goal is to sandbag and disrupt Uber's trial preparation efforts.

Uber anticipates that Plaintiff may attempt to justify her dilatory disclosures by pointing to the provision of the Amended Scheduling Order authorizing supplemental opinions. But that Order did not (and could not) purport to abrogate the longstanding limits on the scope of supplemental expert testimony. To the contrary, the Order makes clear that the parties "may ***supplement*** based on depositions of Gaddis, Kansal and Boman Sept. 2026 and other depositions, discovery"—i.e., information that was ***not*** available to the experts when they issued their original reports. ECF 7087 at 1 (emphasis added). Any other reading would render the expert disclosure requirements of Rule 26 a dead letter, allowing a party to dump new expert opinions onto its opponent on the eve of trial, resurrecting the trial-by-ambush approach that the Federal Rules of Civil Procedure were designed to eliminate.

***Importance***. Plaintiff also cannot establish the high degree of importance required to excuse a party's untimely expert disclosures. *See Cooper Tire & Rubber Co. v. Farese*, No. 3:02CV210-SA-JAD, 2008 WL 5188266, at *2 (N.D. Miss. Dec. 9, 2008) (this factor did not support plaintiff given the "nonessential nature" of the testimony). As several of the new reports concede, the information is primarily designed to "reinforce[] and support[]" previously disclosed opinions, Drumwright Suppl. Rep. at 1; *see also* Lebowitz Addendum, rendering it cumulative (i.e., not "essential"). Even if these improper reports are stricken (and in the event the Court denies Uber's Rule 702 motions), Plaintiff will be able to rely on the experts' original reports. *See Familias*, 2022 WL 2906505, at *6 (importance factor weighed in favor of striking untimely reports because "[e]ven if [they] are stricken, [defendant] retains the ability to present the analysis it performed in its first report"). But regardless, "the Fifth Circuit has made clear that the relative importance of improperly disclosed experts to a *plaintiff's* case does not override the importance of the *plaintiff's* adherence to discovery deadlines, in terms of Rule 37 sanctions." *Hernandez*

*v. Structsure Projects, Inc.*, No. 5:25-CV-01231-MA, 2026 WL 2621258, at *3 (W.D. Tex. Sept. 3, 2026) (citing *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 767 (5th Cir. 2024)); *see also Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*, No. A-19-CV-00696-RP, 2022 WL 1014139, at *4 (W.D. Tex. Apr. 5, 2022) ("While [the expert's] new testimony . . . certainly may be important to Plaintiff's case, the remaining factors weigh against allowing the untimely report into evidence.").

***Prejudice to Uber***. Although none of Plaintiff's improper expert testimony is "essential" to Plaintiff's case, allowing her to inject it into this case at this late stage would be extremely prejudicial to Uber. With just days before the scheduled start of trial, it would be nearly impossible for Uber and its counsel to absorb Plaintiff's experts' new opinions and prepare proper defenses to them. In addition, because the Scheduling Order does not permit additional expert depositions for "supplemental" reports absent leave of Court, it is not even clear whether (and even if leave were granted, when) Uber would be able to depose these experts as to their dilatory opinions. *See Cooper Tire*, 2008 WL 5188266, at *2 ("The Fifth Circuit has noted that a delay of even a few weeks in disclosing expert testimony disrupts the court's schedule and the opponent's preparation and is thus prejudicial.") (citing *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)). That means Uber's counsel would essentially have to test these improperly disclosed opinions (such as Ms. Keller's entirely new claims about facial recognition technology) on the fly, in the middle of trial. *See, e.g.*, *Familias*, 2022 WL 2906505, at *6 (consideration of "supplemental" report would unfairly "depriv[e] [opponent] of any meaningful opportunity to rebut [it] with a report from its own or additional rebuttal experts") (citation omitted); *Rex Real Est.*, 2022 WL 1014139, at *4 (defendant "would be prejudiced by the admission of the supplemental report since it has had no opportunity to test [the new] opinion through deposition . . . or to provide its own expert opinion in rebuttal") (internal quotation marks and citation omitted).

Importantly, these are not trivial burdens that a defendant is expected to incur as a cost of defending itself in civil litigation. Rather, they threaten to deny Uber's due-process-based right to a fair trial. As the Supreme Court has recognized, "the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982). Accordingly, due process

requires courts to ensure that defendants have the opportunity to "defend[] the claims in a meaningful way." *See Gatewood v. Koch Foods of Miss., LLC*, No. 3:07CV82-KS-MTP, 2009 WL 8642001, at *20 (S.D. Miss. Oct. 20, 2009). Because Plaintiff's latest gambit, coupled with the already ambitious trial schedule, does not afford Uber that fundamental opportunity, allowing jurors to consider this previously undisclosed "expert" testimony would raise serious due-process concerns.

Moreover, excusing Plaintiff's dilatory conduct would also undermine the MDL process because forcing Uber to try a case that it has not had the opportunity to fully prepare would not produce a "reliable" verdict. *See Self v. Ill. Cent. R.R.*, No. 96-4141, 2000 WL 14682, at *2 (E.D. La. Jan. 6, 2000) (the "fundamental purpose" of a bellwether trial "is to facilitate the resolution of all claims" in a "trustworth[y]" and "reliab[le]" manner); *see also* Manual for Complex Litigation (Fourth) § 22.315 (2004) (bellwether trials should be selected and conducted in a way that will produce "representative verdicts" and provide "reliable information" about other, similar cases). Bellwether trials will advance the litigation only if all parties view the results of those trials as legitimate. A process that denies Uber a meaningful opportunity to prepare for expert testimony disclosed for the first time just days before the start of trial would not only be fundamentally unfair to Uber, but would also delegitimize the next bellwether trial and fail to advance the litigation in any meaningful way.

***Possibility of a continuance***. Finally, although a lengthy continuance would mitigate some of the prejudice detailed above, the Court has indicated that it will not entertain any such request. *See Cooper Tire*, 2008 WL 5188266, at *3 (striking improper supplemental report because "[t]his Court made it clear to all parties . . . that the trial date would not be continued"); *see also Rex Real Est.*, 2022 WL 1014139, at *4 (striking untimely supplemental expert report where "a continuance is not available here, as trial begins later this week . . . ."). As a result, absent a reversal in the Court's position, there is no conceivable way to alleviate the substantial hardship to Uber's trial preparation efforts that would inevitably result if Plaintiff's experts' improper "supplemental" and "rebuttal" reports are not stricken.

In sum, Plaintiff cannot possibly carry her burden of establishing that her untimely expert reports are either substantially justified or harmless and, thus, they should be stricken.

## III. ALTERNATIVELY, UBER SHOULD BE ALLOWED TO DEPOSE THESE EXPERTS.

Finally, if the Court does not strike the improper reports, it should, at a minimum, permit Uber an opportunity to depose any of the experts identified in this motion. As the cases cited above make clear, basic fairness dictates that a defendant have a full and fair "opportunity to test" any belatedly disclosed "supplemental" opinions prior to trial. *See Rex Real Est.*, 2022 WL 1014139, at *4 (citation omitted). Accordingly, if the Court denies Uber's primary requested relief, Uber must be allowed to depose these experts as to their improper reports in the time remaining before they would testify at trial.

## CONCLUSION

For all of the reasons set forth above, the Court should: (1) exclude in full the "supplemental" reports of Dr. Lebowitz, Ms. Keller, and Dr. Drumwright; (2) exclude in full the "rebuttal" report of Ms. Wells; and (3) exclude Mr. Romero's and Mr. Sniderman's "supplemental" reports except to the extent they address new deposition testimony. Alternatively, the Court should grant Uber leave to depose these experts as to their belatedly disclosed opinions.

DATED: September 28, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9050
kim.bueno@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Michael Vives (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
Jessica Davidson (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno