[SUBMITTING COUNSEL BELOW]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-md-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OFFER OF PROOF RE LE'S MILITARY HISTORY IN CONNECTION WITH MOTION IN LIMINE BRIEFING**

Judge: Hon. Charles R. Breyer
Courtroom: 6 – 17th Floor

Judge: Mag. Lisa J. Cisneros
Courtroom: G – 15th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-cv-01694-CRB

Judge: Hon. Charles R. Breyer
Courtroom: 5 – 6th Floor

**<u>OFFER OF PROOF OF EVIDENCE OF VICTOR LE'S MILITARY HISTORY AND DISCHARGE</u>**

Plaintiff's core theory in this case is that the background check of independent driver Victor Le was inadequate. Le's service in the military is highly relevant to this theory of liability. Plaintiff has proffered multiple experts who offer critiques of the background check performed before Mr. Le was allowed to drive on the Uber platform; according to those experts, Uber should have obtained his military records, determined the reasons for his discharge, and collected information about where he was stationed during his time in the military. Presumably hoping that the answers to these questions would support her theory of the case, it was ***Plaintiff*** who originally sought access to Le's military records pursuant to a FOIA request. Indeed, Plaintiff went further, seeking and obtaining an Order from this Court compelling the military to release certain information redacted in those records.

Plaintiff's objection to those records is a clear case of buyer's remorse. Not only do the records fail to demonstrate any misconduct or dishonorable discharge, but they undermine Plaintiff's other background-check theories—in particular, that any reasonable background check would have found Le's municipal citation,[1] that in-person interviews would have found Le unfit,[2] or that fingerprinting would have revealed disqualifying criminal history.[3]

The jury is entitled to hear this evidence because it strongly rebuts the unsupported opinions of Plaintiff's experts and tends to negate her primary theory of negligence. Plaintiff now seeks to exclude it—and the reason for doing so is obviously her disappointment that the records did not turn out differently. The Court should reject this self-serving pivot and admit the records. Otherwise, Plaintiff will be allowed to present a factually inaccurate and intentionally misleading story to the jury regarding negligence and causation in this case by suggesting that jurors should hold Uber liable for its alleged background check failures without telling the jury what those additional steps would have revealed.

The military records are relevant to both issues. They are relevant to negligence because the military's broader search evidently did not uncover material information that Plaintiff contends Uber

---

[1] There is no evidence the military's background check found the 2017 municipal court citation.

[2] There is no evidence the military's in-person interview found Le unfit.

[3] The military's fingerprinting evidently found no criminal history.

missed—a fact that tends to negate any contention that the search commissioned by Uber was unreasonable. And the military records are also relevant to causation for a similar reason: Plaintiff cannot point to anything in the military record (or the steps it undertook, including interviews and fingerprinting) that would have led to a different decision about allowing him to access the Uber platform.

This evidence should be admitted. Plaintiff's counsel should not be permitted to pick and choose which background-check-related evidence is pertinent for the jurors to hear and selectively hide from jurors relevant evidence—evidence they initially placed at issue—simply because it does not support their tenuous theory. This brief offers the proof Uber would present from Le's military records to negate Plaintiff's theory of liability. This Court should admit all of it because: (1) Mr. Le's military background check is highly probative and critical to rebut Plaintiff's claims that Uber's own background check was inadequate because it included elements that Plaintiff's experts claim are necessary but did not disqualify him;[4] (2) evidence regarding Le's enlistment and service is relevant background and employment history—the very information Plaintiff's own experts contend Uber should have collected—and Uber is entitled to use that history to rebut those experts' opinions; (3) evidence of Mr. Le's honorable discharge and awards is relevant and admissible to rebut the opinions of Plaintiff's expert witnesses; and (4) excluding the evidence while permitting Plaintiff's experts to criticize Uber for failing to check military records would be fundamentally unfair and would mislead the jury.

## BACKGROUND AND PROCEDURAL HISTORY

### A. Plaintiff's Shifting Arguments About The Relevance Of Le's Military Records To His Background Check

Plaintiff's counsel initially argued that Le's military history was ***both*** relevant and discoverable. Based on that argument, she sought and obtained an order compelling discovery from the military and

[4] As outlined below, the military's background check process includes a detailed face-to-face interview with a military recruiter, covering criminal history—including minor traffic violations—drug use, prior military service, and immigration status. Critically, recruits are required to disclose records that have been sealed or expunged, and offenses that occurred as a juvenile. Every recruit, regardless of branch, must then pass through a Military Entrance Processing Station ("MEPS") facility. MEPS initiates a comprehensive FBI fingerprint-based background check covering federal, state, and local criminal history databases. The MEPS process also includes verification of prior legal and immigration status; credit history review; urinalysis drug testing; and a background interview covering drug abuse and law violations. The lookback period is a minimum of ten years.

subpoenaed Le's unredacted and complete military history records. In seeking a Court order compelling the Army to produce Le's complete service records, Plaintiff herself indicated in a jointly filed stipulation that she reserved the right to argue Le's military records were relevant to issues beyond his character. *See* Stipulation and Proposed Order Authorizing Release of Victor Le's Army Discharge Records, at 2 (ECF No. 7110).

Meanwhile, Plaintiff disclosed several expert reports that broadly assert that Le's background check was inadequate for a host of reasons, including that Uber should have ensured that Le's military records were checked, that he was interviewed in person, and that he was fingerprinted—all in furtherance of Plaintiff's core theory in the case: that Uber's background check provider, Checkr, performed an insufficient background check and, as a result, Uber "hired" an unqualified, dangerous driver. For example, Plaintiff's purported background-check expert John Romero intends to opine as follows:

> Another aspect of a robust background check is to ensure the prospective driver's military history is captured. ***Uber did not check Le's military background. Checkr's background check here did not collect information about Le's military record.*** (CHECKR 001641, Hubbard Ex. 2142[5]) (Checkr Driver Premium package). Brown also testified that he did not believe Uber asked Checkr to consider military history as part of the screening process nor had he seen Checkr inquire about military service. (Brown Dep., Aug. 26, 2026, at 315[.].[6]
>
> ***In my professional practice, I collect and review military service records including the service branch, current or final rank, (officer or enlisted) current service status date they entered the military, and when and why*** (under what conditions – Honorable, General, Other than Honorable (OTH), Bad Conduct, Dishonorable) they separated from the military. ***The type of discharge is a strong indicator of a candidate's performance*** (from no discipline issues to minor administrative discipline and all the way to major felonies). Military duty stations, including training assignments and temporary duty stations provide an additional local court system to check. For example, a candidate assigned to Kirtland Air Force Base would trigger a check of local records in Albuquerque, New Mexico. It is important to understand whether a potential candidate has been discharged and the basis for discharge to assess if the prospective candidate is appropriate for a safety-sensitive role.

Ex. 3, Romero Report at 12-13. Romero also criticizes Uber and Checkr for not requiring drivers to be fingerprinted and opines that fingerprinting "would result in more complete information related to a prospective driver's history of arrests," and that "[w]hen available, finger-print based background

---

[5] Ex. 1, Hubbard Deposition Ex. 2142 (CHECKR 001641).

[6] Ex. 2, Aug. 26, 2026 Greg Brown Deposition Transcript.

checks provide the most comprehensive view of official criminal histories, including pending charges, warrants, conditions of probation and parole, and convictions." *Id.* at 12.

Plaintiff's expert Robert Sniderman criticizes Uber's background checks and the information Uber requires drivers to submit when applying to drive on Uber's platform, including that Uber does not require applicants to submit military records or to disclose their discharge status. Sniderman's report states:

> "***Reasonable basic screening of a potential Uber driver*** who is placed in a position of trust and has access to vulnerable targets s***hould also be required to submit***:. . . work history and educational history noting name and location of company or school, ***military records, if any, and discharge status, and employment references.*** In addition, ***reasonable basic screening in this context should include a request for military service with discharge category and location of stations.***"

Ex. 4, Sniderman Rep., at 10. Sniderman also expressly criticizes Uber's corporate representative, Greg Brown, because Uber failed to submit "military records or references." *Id.* And Sniderman opines that "Uber did not ask Le to provide any of the following standard information so that Le could be properly screened: an address ***or work history, or military records or references.***" *Id.* (citing Greg Brown 08/25/26 Dep. 30:25-33:24[7]); *see also id.* ("Uber's representative, Greg Brown, stated that he believed Uber did not require Checkr to obtain Driver Le's military service history.").

Plaintiff's expert Thomas Tremblay also criticizes Uber's background check process and takes issue with the fact that "Uber did not interview Driver V.L."; and that, "[w]hen asked if Uber's background check includes any inquiry into a potential Uber driver's military service history, Uber's corporate representative, Greg Brown, testified on behalf of Uber that, 'I don't know the answer to that question,' 'Checkr's corporate representative, Brad Hubbard, ***testified on behalf of Checkr that Checkr did not have access to any records related to V.L.'s service in the armed forces***.'"[8] Ex. 7, Tremblay Rep., at 7. Tremblay also criticizes Uber's background check because "the criminal record check was not supported by fingerprint verification." *Id.* at 8. In his deposition, Tremblay reiterated, "I think my report is really clear that I believe fingerprinting would be helpful, especially as it relates to some of the identification issues that Uber's faced with drivers." Ex. 8, Tremblay Dep. 61:3-12.

---

[7] Ex. 5, Aug. 25, 2026 Greg Brown Deposition Transcript.

[8] Ex. 6, Aug. 13, 2026 Brad Hubbard Deposition Transcript.

Having had her experts proffer these opinions, Plaintiff has since realized that Le's military records are highly problematic for her because they undermine all of these opinions. Most obviously, the military records themselves do not contain disqualifying information and reflect an honorable discharge and therefore flatly contradict the suggestions of Romero and Sniderman that Uber would have denied Le access to the platform had it only reviewed the military records. But the military records also tend to negate the experts' other baseless suggestions that Checkr should have interviewed Le in person or had him fingerprinted, since the military did both and evidently found nothing disqualifying.

Despite "reserv[ing] her right to argue that the [military] materials are relevant to other issues in this litigation" in the parties' stipulation seeking release of Le's records, Stipulation and Proposed Order Authorizing Release of Victor Le's Army Discharge Records, at 2, ECF No. 7110, Plaintiff filed a new motion September 17 (after the due date for motions in limine)[9] to exclude these same records, Plaintiff's Trial Brief re Motion in Limine to Exclude Certain Evidence About Mr. Le's Military Service, ECF No. 7420. In that motion, Plaintiff argues for exclusion of evidence and argument about Le's Army service, including his enlistment, the Army's background screening, his service awards, and the nature and circumstances of his discharge. *Id.* On September 24, Uber filed its opposition to Plaintiff's motion requesting this evidence be admitted. ECF No. 7505.

### B. The Relevant Evidence Uber Will Present From Le's Military Records

At the pre-trial hearing on September 25, the Court requested an offer of proof regarding independent driver Le's military history. In response, Uber sets forth in this brief the military records and expert testimony about the military screening process that it will offer to rebut Plaintiff's theories regarding causation and her experts' opinions, as summarized above.

The records at issue were produced by the military in response to Plaintiff's subpoena and the Court's order—discovery Plaintiff requested. They are attached at Ex. 9, DOE QLF 009096-9207. Based on these records, Uber's experts will offer the following opinions.

---

[9] Per the scheduling order, *motions in limine* were due on September 11. ECF No. 7066.

First, Jason Morris will testify regarding the military background check process and the detailed background check (including an interview and fingerprinting) that Le passed when he enlisted in the military in 2018, and that the military did not identify the 2017 citation. Specifically, Morris will testify:

> Le enlisted in the army in 2018 and served through 2020. (DOE QLF 007945).[10] Le requested to be discharged at the end of 2019, and that request was granted in 2020. (*Id.* at 955.)[11] During his time in the military, he was granted the National Defense Service Medal, Global War on Terrorism Service Medal, Army Service Ribbon, and Parachutist Badge. (*Id.*)
>
> The military background check process includes a detailed face-to-face interview with a military recruiter, covering criminal history—including minor traffic violations—drug use, prior military service, and immigration status.[12] Critically, recruits are required to disclose records that have been sealed or expunged, and offenses that occurred as a juvenile.[13]
>
> Every recruit, regardless of branch, must then pass through a Military Entrance Processing Station (MEPS) facility.[14] MEPS initiates a comprehensive FBI fingerprint-based background check covering federal, state, and local criminal history databases.[15] The MEPS process also includes verification of prior legal and immigration status; credit history review; urinalysis drug testing; and a background interview covering drug abuse and law violations. The lookback period is a minimum of ten years.[16]
>
> In certain circumstances, additional security clearance investigations are required for specialist roles.[17] Military commanders are required to report any immediate threat to life or safety to Department of Defense law enforcement, including if someone is at risk of committing sexual assault or misconduct.[18] No such records appear on the background checks conducted by Checkr. (UBER-MDL3084-DFS00064890[19]; UBER-MDL3084-DFS00064887.)[20]

---

[10] Ex. 10, DOE QLF 007945 - DOE QLF 007950.

[11] Ex. 11, DOE QLF 007955.

[12] Military Recruiting Memo, Feb. 1999. https://www.gao.gov/assets/nsiad-99-53.pdf; *see also* Go Army, Joining Requirements. https://www.goarmy.com/how-to-join/requirements.

[13] Military Recruiting Memo, Feb. 1999. https://www.gao.gov/assets/nsiad-99-53.pdf.

[14] What to Expect at MEPS. https://www.goarmy.com/how-to-join/steps/processing-station.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Department of Defense SAPR Policy, Sept. 27, 2016. https://www.federalregister.gov/documents/2016/09/27/2016-21874/sexual-assault-prevention-and-response-sapr-program-procedures; *see also* Army SHARP Policy, Dec. 12, 2025. https://myarmybenefits.us.army.mil/Benefit-Library/Federal-Benefits/Sexual-Harassment-Assault-Response-and-Prevention-(SHARP)?serv=125.

[19] Ex. 12, Jan. 2020 Background Check, UBER-MDL3084-DFS00064890 - UBER-MDL3084-DFS00064894.

[20] Ex. 13, July 2020 Background Check, UBER-MDL3084-DFS00064887 - UBER-MDL3084-DFS00064889.

> It would be extraordinarily difficult for Uber to obtain details about a prospective driver's military service before onboarding.[21] To identify military records for individuals who left service less than 62 years ago, a Freedom of Information Act (FOIA) request is required.[22] However, Le's military service, following a rigorous background screening process, is further evidence that Le's history prior to onboarding at Uber would not have included a disqualifying criminal offense.

Ex. 14, Morris Rep., at 15-16.

This evidence is directly relevant to the central issue in this case regarding whether Uber's background check should have identified the 2017 citation.

Second, Uber's expert Kristen Zgoba will further expand on the military background check process and will explain:

> Additionally, of particular interest to this case, military personnel are also subject to formal federal background-investigation procedures administered through the Department of Defense personnel-vetting system. The Defense Counterintelligence and Security Agency (DCSA), which conducts vetting for most Department of Defense personnel, requires background investigations for military members, with the scope of the investigation determined by the sensitivity and responsibilities of the position. These investigations often include fingerprint-supported criminal-history checks, investigative questionnaires, verification of employment, educational institutions, residence, citizenship, and other background information, and formal adjudication of the completed investigation. For positions requiring continued eligibility or access to sensitive information, the Department of Defense has also transitioned toward continuous vetting, under which automated checks can identify subsequent criminal, financial, terrorism-related, and other potentially relevant information (DCSA, n.d.).

Ex. 15, Zgoba Rep., at 28.

Third, Uber's expert Vida Thomas will further testify:

> Le enlisted in the military in 2018 and served through 2020. (DOE QLF 007945.) The military background check process includes a detailed face-to-face interview with a military recruiter covering criminal history, a comprehensive FBI fingerprint-based background check at a Military Entrance Processing Station (MEPS), credit history review, urinalysis drug testing, and a background interview covering drug abuse and law violations, with a look-back period of a minimum of ten years, depending on the level of access required. (https://www.goarmy.com/how-to-join/steps/processingstation.) The military does not allow applicants to join if they have any current charges pending against them. (https://www.goarmy.com/how-to-join/requirements; https://www.goarmy.com/how-to-join/steps/processing-station.). In light of this requirement and the fact that he was able to enlist, it appears the military did not find the 2017 citation.

Ex. 16, Thomas Rep., at 14.

---

[21] Requesting Military Service Records. https://www.archives.gov/veterans/military-service-records.

[22] *Id.*

Finally, Uber's expert Kevin Phelan will testify that Le enlisted in the United States Army in March 2018 and received the following commendations: National Defense Service Medal, Global War on Terror Service Medal, Army Service Ribbon, and Parachutist Badge. Ex. 17, Phelan Rep., at 17. These facts speak directly to the opinions offered by Romero and Sniderman that among the things to look for in military records are indications of the "candidate's performance." Ex. 3, Romero Rep., at 12-13. These commendations (along with Le's honorable discharge) help to negate the suggestion that Le's military records would have led to a disqualification of his application to access Uber's platform—in other words, they disprove causation as to Plaintiff's background-check theory of negligence.

## ARGUMENT

The Court should admit Le's military records and Uber's experts' opinions on these topics as summarized above for at least four reasons.

***First***, Plaintiff affirmatively placed Le's military records, military history, and specific military background screening processes at issue through her experts' affirmative opinions. Plaintiff's experts criticize Uber for failing to obtain military records and discharge status or to identify duty stations. They contend those measures are meaningful components of screening a potential driver and that performing these measures would have made a difference in this case because, had Uber implemented these measures, Plaintiff claims Uber would have discovered the 2017 citation and Le would never have been allowed to access the platform as a driver. In response, Uber must be allowed to show what the records actually reveal about Le's military history and to rebut Plaintiff's theories relevant to the background screening process at the center of this case.

***Second***, the records are also relevant to rebut Plaintiff's contentions that a reasonable background check would have fingerprinted Le, conducted an in-person interview, or checked employment history. Le's military screening included each and every one of these measures, and plainly did not disqualify him from joining the military. And once again, there is no evidence that these measures unearthed the municipal citation that Plaintiff's experts insist would have been discovered through a reasonable background check.

***Third***, the records are relevant to negate any suggestion or invitation to speculate by Plaintiff or her experts that Le must have engaged in unseemly conduct in the military or that he was anything other

than honorably discharged. Again, Plaintiff's own experts have put this prospect at play in their opinions by suggesting that a military records review would have revealed unspecified negative information about Le's performance or discharge status that is entirely unsupported—and indeed contradicted—by the records.

***Fourth***, Uber must be permitted to address these topics as a matter of basic fairness. Plaintiff should not be permitted to argue, for example, that Le's background check was deficient because it did not include a fingerprint check, while at the same time excluding evidence that the military conducted such a check and found no disqualifying history. Such a presentation would be misleading and would provide jurors with a false narrative that is affirmatively disproven by the evidentiary record. Alternatively, if Uber is barred from presenting this evidence, Plaintiff should be prohibited from arguing that Uber's background-check policy is deficient in any respect that is negated by the military's own background check of Le, including with respect to fingerprinting and live interviews, as well as any suggestion that a reasonable background check would have identified the 2017 citation.

In short, Plaintiff has sought to develop the evidence relevant to Le's military service throughout the discovery process and expected to do so at trial. However, after receiving the documents in response to her own subpoena showing that Le was honorably discharged, Plaintiff has now reversed course and argues that evidence regarding Le's military history is irrelevant. But relevance does not turn on whether or not evidence is favorable to Plaintiff's case. Evidence regarding Le's military history is directly relevant and responsive to Plaintiff's anticipated evidence, and it would be unduly prejudicial and patently unfair to prevent Uber from admitting this relevant and highly probative evidence in response to Plaintiff's attacks. Evidence regarding Le's military history, including his background check, service record, and honorable discharge is directly relevant to the issues at the core of this case and should be permitted.

## CONCLUSION

This Court should deny Plaintiff's motion in limine regarding Le's military history and permit Uber to admit the evidence.

DATED: September 29, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Michael Vives (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
Jessica Davidson (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno* __________________________
Kim Bueno