[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*Jane Doe QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFF'S TRIAL BRIEF TO EXCLUDE EXPERT REBUTTAL TESTIMONY OF JASON MORRIS AND KEVIN PHELAN**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

*Plaintiff,*

v.

UBER TECHNOLOGIES, INC., et al.,

*Defendants.*

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 5 – 6th Floor

Plaintiff filed a cursory two-and-a-half-page trial brief addressing two of Uber's rebuttal experts: Jason Morris and Kevin Phelan. Plaintiff does not challenge the overwhelming majority of either expert's rebuttal opinions, effectively conceding their admissibility. Instead, Plaintiff narrowly targets portions of the reports she claims amount to "improper and incorrect legal opinions." Mot. at 2. Essentially, Plaintiff contends that page 3 of Mr. Phelan's report and pages 10-11 of Mr. Morris's report improperly opine that Victor Le's 2018 arrest warrant was, "as a matter of law, unknowable to anyone" before it was executed. Mot. at 3. But this characterization misapprehends both the nature of the challenged testimony and Mr. Morris's and Mr. Phelan's role as rebuttal experts. As even a cursory review of the reports makes clear, the challenged testimony does not pronounce what Texas law requires as a matter of law. Rather, it criticizes ***Plaintiff's experts*** (John Romero, Robert Sniderman, and Thomas Tremblay) for ignoring Texas law and "local practice" in opining that Uber should have searched for—and ultimately obtained—information about a warrant related to Mr. Le's municipal citation before it was executed (which occurred after the incident in this case). *See* Morris Rebuttal Rep. (Mot. Ex. B) at 11; *see also* Phelan Rebuttal Rep. (Mot. Ex. A) at 3 (addressing "criminal records access and policies"). That is not an improper (much less incorrect) legal opinion; rather, it is a fair and straightforward critique of Plaintiff's experts' claims that Uber did not do what industry standards and customs supposedly dictated. While Plaintiff may not like that criticism, it is well-grounded and easily satisfies the requirements for rebuttal testimony within the Fifth Circuit. Mr. Morris and Mr. Phelan base their opinions on firsthand factual investigation—including Mr. Phelan's in-person conversations with Fort Worth Police Department ("FWPD") and Tarrant County personnel and Mr. Morris's review of systemic limitations in municipal-court recordkeeping—which is precisely the type of specialized, fact-based critique that rebuttal testimony is designed to provide.

**ARGUMENT**

Plaintiff's trial brief implicates two principles: (1) the scope of proper rebuttal testimony; and (2) the line between improper legal conclusions and appropriate expert testimony on industry standards. The rebuttal opinions of Mr. Morris and Mr. Phelan are manifestly appropriate and admissible under these principles.

First, "the standards applicable to rebuttal experts are different from those governing affirmative expert testimony. A rebuttal expert's function is to identify flaws in the opposing expert's analysis, not necessarily to construct a competing model." *Stonewater Roofing Ltd. Co. v. Merryton Bossier, LLC*, No. 22-1048, 2025 WL 3654059, at *3 (W.D. La. Dec. 17, 2025); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii) (the purpose of rebuttal testimony is "to contradict or rebut evidence on the same subject matter identified by another party"). Accordingly, it is entirely proper for a rebuttal expert to "attempt[] to poke holes in and undermine" the other side's expert analyses. *See Archer Daniels Midland Co. v. M/T Am. Liberty*, No. 19-10525, 2022 WL 3700896, at *3 (E.D. La. Aug. 26, 2022) (criticizing the opponent's expert's analysis "is the precise purpose of a rebuttal report"); *see also, e.g.*, *Stonewater Roofing*, 2025 WL 3654059, at *3 (expert's "decision to limit his opinions to critiquing [other side's] methodology falls squarely within the permissible scope of rebuttal").

Second, qualified experts (including rebuttal witnesses) "are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters." *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047-48 (N.D. Tex. 2022) (applying this rule to rebuttal expert and noting "many of the examples of legal conclusions Plaintiffs reference . . . rebut legal conclusions from their expert reports") (citation omitted). This includes critiquing an opposing expert's methodology for misapplying industry standards. *See Tankersley v. Harvey*, No. 3:13-CV-4019-P, 2015 WL 12567256, at *3 (N.D. Tex. Oct. 20, 2015) (opinion that opposing expert's "methodology does not meet industry standards" "is routinely allowed, and will be allowed in this case"). In short, whether being offered in a party's case-in-chief or rebuttal, "[expert] testimony analyzing the conduct of the various parties with respect to various applicable rules and regulations may assist the trier of fact without crossing the line into impermissible legal conclusions." *Ponds v. Force Corp.*, No. CV 16-1935, 2016 WL 7178483, at *4 (E.D. La. Dec. 8, 2016); *see also, e.g.*, *Leyman v. Amazon Logistics, Inc.*, No. 2:24-CV-129-BR, 2026 WL 2283610, at *5 (N.D. Tex. Aug. 7, 2026) (holding expert's "testimony that the accident was preventable as defined by industry standards, and that compliance with industry standards by the Defendants would have in fact prevented it, constitutes admissible expert opinions, even if it embraces ultimate issues that the jury must determine");

*Ponds*, 2016 WL 7178483, at *5 (rejecting "argument that experts can never testify about the applicability of industry standards and regulations to a particular situation").

The narrow portions of the rebuttal reports Plaintiff challenges (pages 10-11 of the Morris report and page 3 of the Phelan report) squarely comply with these requirements. Contrary to Plaintiff's claim, these experts are not opining that Mr. Le's municipal-court citation was, "***as a matter of law***, unknowable to anyone." Mot. at 3 (emphasis added). Rather, Mr. Morris clearly states that ***Plaintiff's*** experts ("Romero, Sniderman, and Tremblay") "do not address" the fact that under Article 15.26 of the Texas Code of Criminal Procedure and local practice, an arrest warrant is not made "available for public inspection" until it is executed. Morris Rebuttal Rep. at 10. While the statute classifies arrest warrants as "public information," it conditions the clerk's duty to make copies "available for public inspection" on execution. Tex. Code Crim. Proc. art. 15.26. Plaintiff calls this a "floor, not a ceiling," but identifies no mechanism by which a private employer could actually obtain an unexecuted warrant from a clerk with no duty to produce it. This is precisely the practical gap Mr. Morris highlights. He does not instruct the jury on what Article 15.26 means as an abstract legal matter. Rather, he explains—based on his professional experience and review of local policies—that unexecuted warrants are not released to the general public in practice, and that Plaintiff's experts failed to consider this limitation or explain how it could be overcome. That is precisely the kind of expert analysis that Rule 702 contemplates.

Similarly, Mr. Phelan criticizes Mr. Sniderman for failing to consider "Tarrant County policies," under which "the warrant would not have been publicly available until it was executed[.]" Phelan Rebuttal Rep. at 9. Plaintiff's response that Mr. Phelan's opinion lacks a sufficient basis fails to account for the fact that Mr. Phelan not only considered the Sheriff's Office website but also consulted personnel from FWPD, Tarrant County, and a former Texas law enforcement official, all confirming the same practical limitation. *Id.* at 3[1]

Plaintiff complains that "[n]othing in Article 15.26" or Tarrant County policies legally "preclude[s] pre-execution public access" to arrest warrants before they are executed. Mot. at 3. But

[1] Although Plaintiff faults Mr. Phelan for not identifying the individuals he spoke with or describing his conversations, Mot. at 4, these details are not required by Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

Plaintiff does not cite any authority indicating that pre-execution arrest warrants ***are*** publicly accessible, much less explain how Uber could have possibly obtained the citation before it was executed. Notably, even Sergeant Reinhardt—who handled the investigation of Mr. Le for the Fort Worth Police Department—testified that when he ran Mr. Le through TCIC and NCIC on July 2, 2020, neither database returned the 2017 municipal-court citation or warrant. Reinhardt Dep. 98:15-99:22 (Ex. 1). Yet Plaintiff's experts fail to address this point entirely. And even if Plaintiff's undeveloped legal theory had any merit, that would not change the fact (explained by Uber's experts) that unexecuted warrants are not released to the "general public" as a matter of "local practice," Morris Rebuttal Rep. at 11; *see also* Phelan Rebuttal Rep. at 3 (referencing "criminal records access and policies"). Most fundamentally, ***Plaintiff's experts*** say nothing on these matters ***at all***. "This is a basic limitation that Romero, Sniderman, and Tremblay do not address," Morris Rebuttal Rep. at 11, and which Mr. Morris and Mr. Phelan are "permitted" to highlight in their role as rebuttal experts. *Am. Can!*, 597 F. Supp. 3d at 1047.[2]

## CONCLUSION

For all of the reasons set forth above, the Court should deny Plaintiff's request to exclude the challenged rebuttal testimony of Jason Morris and Kevin Phelan.

DATED: September 29, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9050
kim.bueno@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104

[2] Plaintiff's reliance on *Lamar Advertising Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332 (M.D. La. 2021) (cited in Mot. at 2), is fundamentally misplaced. In *Lamar*, the court precluded an expert from "disagree[ing]" with "statement[s] of Louisiana law" that were a "foundation of th[e] [c]ourt's" prior summary judgment ruling. *Id.* at 347. Here, by contrast, not even Plaintiff claims that either Mr. Morris or Mr. Phelan is second-guessing any legal determinations previously made by the Court.

Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Michael Vives (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
Jessica Davidson (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*<u>/s/ Kim Bueno</u>*
Kim Bueno