[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S OPPOSITION TO UBER'S TRIAL BRIEF REQUESTING ORDER TO STRIKE IMPROPER SUPPLEMENTAL AND REBUTTAL OPINIONS** |
| This Document Relates to:<br><br>*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al*, Case No. 3:24-CV-08783 | Judge: Honorable Charles R. Breyer |

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| JANE DOE QLF 0001,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | No. 1:26-cv-01694-CRB<br><br>Judge: Hon. Charles R. Breyer |

## I. INTRODUCTION

Uber's request to strike Plaintiff's expert rebuttal and supplemental disclosures should be denied. The challenged reports, the majority of which are under two pages, are exactly what the Court's schedule and the parties' agreement contemplated: timely supplements and rebuttals to address post-report depositions and late-produced or clarified records, and to respond to an opposing party's opening expert disclosures. *See* ECF 7066. The built-in flexibility to the scheduling order was made to get this case to trial on time, accounting for the realities that (1) the parties took expert, corporate, third-party, and fact depositions after the initial expert disclosures, and (2) rebuttal opinions would contribute to a fulsome evidentiary record. Uber itself served supplemental and rebuttal expert reports on September 25, relying on much of the same post-report depositions and discovery. *See Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634, 637 (W.D. Tex. 2006) (finding it inconsistent for an opposing party to "willingly participate" in post-disclosure discovery and then challenge the resulting supplement based on that discovery as untimely).

But Uber seeks to hold Plaintiff to a different standard. In doing so, it advances the false premise that *any* reference to evidence existing before September 3 renders a supplemental or rebuttal report invalid. There is no basis for such an overly restrictive view. Plaintiff's supplemental reports are based on evidence obtained post-September 3 (and on Uber's experts' opinions served that day). In discussing the relevance of that new evidence, the experts necessarily had to tie it to the existing record and information previously known, in order to explain the opinions and place them in context. This is proper supplementation and rebuttal.

Uber's alternative request for depositions should also be denied. Uber has already deposed the challenged experts on their core opinions (which have not changed). There is no need to draw out the discovery process, and place experts through exhausting depositions, just days before trial.

## II. ARGUMENT

Rule 26 permits—indeed, requires—experts to supplement their disclosures. Fed. R. Civ. P. 26(a)(2)(E). The Federal Rules "contemplate allowing parties to supplement their expert reports." *Helen of Troy, L.P.*, 235 F.R.D. at 637. "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report *and* to information given during the expert's deposition. Any additions or changes to the information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due…[u]nless the court orders otherwise[.]" Fed. R. Civ. P.

26(a)(3)(B), (e)(2) (emphasis added). Rule 26(a)(2)(D)(ii) also permits rebuttal reports "to contradict or rebut evidence on the same subject matter identified by another party." A "rebuttal expert may cite new evidence and data or introduce new methods of analysis in a rebuttal report so long as the new evidence, data, or method is offered to contradict or rebut the opposing party's expert." ECF 4701 at 2 (Cisneros, J.) (citation omitted). In this case, the parties agreed any rebuttal reports would be due at the same date as supplemental reports (September 25). Any late disclosure will not be stricken if the disclosure "was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

**A. Plaintiff's Supplemental and Rebuttal Disclosures Are Timely and Proper.**

The challenged reports are timely and permitted by Rule 26. They were submitted within the designated deadline for supplementation and rebuttal, and either address new evidence or information obtained after initial reports were served, or appropriately rebut Uber's expert opinions. *See U.S. v. Austin Radiological Ass'n*, 2014 WL 2611809, at *4 (W.D. Tex. 2014) (considering additional data for opinions in original expert report and expanding on those opinions was proper); ECF 4701 at 18-19 (Judge Cisneros denying motion to strike supplemental expert report that addressed new evidence and included "harmless supplementation that clarifies or amplifies matters expressly referenced in the original report without revising or reversing the original opinion") (citation omitted); *id.* at 9-16 (denying motion to strike rebuttal report that responded to Uber's expert).

**Dr. Leslie Lebowitz.** Dr. Lebowitz's addendum properly responds to evidence raised by Uber during her September 21 deposition that Uber insinuated would call into question her opinions. *See* ECF 7537-2, Lebowitz Addendum; *Holcombe v. U.S.*, 516 F. Supp. 3d 660, 670-71 (W.D. Tex. 2021) ("Though the information in the [expert's supplement] was available before the deadline for expert disclosures," the supplement was "substantially justified" because the expert's deposition did not occur until after the deadline, and "he could not have anticipated or addressed the Government's alleged misperceptions about his report, data, and testimony before the Rule 26(e) deadline"); *Vega v. Ford Motor Co.*, 2013 WL 6147506, at *2 (W.D. Tex. Mar. 27, 2013) (finding persuasive plaintiffs' explanation that the supplemental expert report resulted from deposition questions by defense counsel).

Consistent with expert standards and methodology, upon being alerted to evidence that could impact her opinions, Dr. Lebowitz did her due diligence, reviewed the information highlighted, and determined

whether her opinions should change in any respect. They did not. *See* Lebowitz Addendum. This is entirely proper. *See Austin Radiological Ass'n*, 2014 WL 2611809, at *4 (considering additional data for opinions in original expert report and expanding on those opinions was proper). Uber's authorities, by contrast, involved supplements that offered an "impermissible new opinion," *Muslow v. Bd. of Supervisors of La. State Univ.*, 2021 WL 2168812, at *2 (E.D. La. May 27, 2021), or "depart[ed] from [the] Original report in material respects," *Edwards v. First Tr. Portfolios L.P.*, 2025 WL 531787, at *2 (N.D. Tex. Feb. 18, 2025). Dr. Lebowitz does neither. And, contrary to Uber's framing, there is no "sandbagging" here. Uber asked Dr. Lebowitz if certain information would change her opinion, she reviewed that information and determined that it did not. Uber's own brief acknowledges that nothing has changed. *See* Mot. at 10; *Holcombe*, 516 F. Supp. 3d at 672 (finding no prejudice or surprise where expert's opinion did not change).

Nor does Uber's complaint that it cannot depose Dr. Lebowitz on the addendum warrant exclusion. Uber already questioned Dr. Lebowitz about these very materials—the journal entries, Instagram posts, and text messages—at her September 21 deposition. The addendum adds no new opinion for Uber to test. An addendum that changes nothing cannot prejudice Uber. At most, Uber's concern warrants a short, time-limited deposition confined to the addendum—not exclusion.

**Minette Drumwright.** Dr. Drumwright's September 25 supplemental report offers no new opinion; instead, it simply addressed the fact that Uber had produced updated data. *See* ECF 7537-4, Drumwright Supp. Rep., at 1. Dr. Drumwright explained that she had not included the updated data previously because Uber had provided piecemeal and changing Flack data throughout this litigation and discovery disputes on further productions were outstanding as of September 3. *See id.* at ¶ 4. Accordingly, Dr. Drumwright deferred an opinion on that data. *See id.*[1] Given the approaching trial and supplementation deadline, however, she now provides her opinion on the incomplete dataset. *See id.* This is reasonable. An expert should endeavor to offer opinions based on a comprehensive analysis of accurate and complete data. *See In re C.F. Bean L.L.C.*, 841 F.3d 365, 372-73 (5th Cir. 2016) (holding expert did not act unreasonably "by waiting to form opinions…until receiving discovery"); *Austin Radiological Ass'n*, 2014 WL 2611809, at *4 (finding expert's consideration of

[1] At the time of initial expert disclosures, a discovery brief was pending before Judge Cisneros regarding production of additional Flack data. That motion remains pending and should additional data be produced, it will come as no surprise that experts from both sides may likely supplement their opinions.

data ordered to be produced after her initial report was an explanation that weighed against excluding the amended report). But Uber's production delays necessitated an evaluation based on the available record, which Dr. Drumwright timely provided in accordance with the supplementation deadline.

Notably, Dr. Drumwright's supplement does not change any existing opinion. *See* Drumwright Supp. Rep. at ¶ 6. It only "reinforces" her preexisting opinion that Uber's marketing and strategic communications, including its Safety Reports, were unreasonable, reckless, and irresponsible in downplaying the prevalence and extent of sexual violence incidents during Uber rides. *See id.* Specifically, Dr. Drumwright had previously identified the disparity between Uber's internal SA/SM data and public disclosures as a basis for her existing opinion. Updating that analysis with the updated Flack Data is proper supplementation, not ambush. *See Austin Radiological Ass'n*, 2014 WL 2611809, at *5 (finding any prejudice was lessened where expert "adopted an approach to analyzing the data…similar to that in her earlier analysis").

**Lacey Keller.** Contrary to Uber's contentions, Ms. Keller's supplement is based on newly obtained evidence. Specifically, the depositions of Todd Gaddis (September 17), Uber's Data Analytics manager; Cynthia Rudin (September 16), Uber's data science expert; and Sachin Kansal (September 24), Uber's Chief Product Officer. *See* ECF 7537-3, Keller Supp. Rep., at ¶¶ 2-4. These depositions established three new pieces of evidence: (1) testimony from Gaddis and Kansal [redacted]; (2) testimony from Uber expert Rudin established that [redacted]; and (3) testimony from Gaddis [redacted]. *See id.* Ms. Keller properly considered this new evidence to supplement her prior opinion that Uber was capable of identifying Le across multiple Uber accounts through various technological means, which includes through text-based searches of database fields, and through image searches and image comparison tools. That her supplemental report also references pre-September 3 evidence does not render it improper. *See* ECF 4701 at 18-19 (rejecting similar arguments from Uber). Ms. Keller referenced pre-September 3 evidence to place her supplemental opinions in proper context and explain why the new information was relevant to and supportive of her existing opinions. *See id.* at 19-20 (permissible supplement that "clarifies or amplifies matters expressly referenced in the original

report") (citation omitted).

Uber incorrectly asserts that the supplement contains a "completely new opinion regarding the feasibility of facial recognition technology." Mot. at 2. But Ms. Keller's testimony has always encompassed the methods Uber could have used to associate Victor Le with prior accounts and a 2017 incident report. *See* ECF 7354-1, Keller Rep., at Opinion No. 4. In any event, a new opinion based on new evidence, e.g., Uber's facial recognition capabilities, is not excludable. It is proper supplementation. *See Holcombe*, 516 F. Supp. 3d at 671 (finding "new studies" cited by expert "in support of what the Government describes as 'new opinions'" were a "logical extension and clarification of an underlying assumption in the studies cited in [the expert's] initial expert report").

**John Romero and Robert Sniderman**. Uber challenges Mr. Romero and Dr. Sniderman's supplemental reports to the extent they reference Victor Le's military record, which Uber contends was available prior to September 3.

*First,* Uber's own briefing concedes that the parties did not receive Le's unredacted military records until after September 3, the initial disclosure of expert reports. *See* Mot. at 4. As noted above, it is reasonable and proper for an expert to await a complete production rather than opine on a piecemeal record.

*Second,* Uber fails to acknowledge (as it must) that the opinions regarding Le's military history directly respond to the reports and corresponding depositions of Uber's experts Jason Morris, Vida Thomas, Kristen Zgoba, and Kevin Phelan,[2] all of whom opine on Le's military enlistment, discharge, awards, and the claimed probative significance of his military service. Uber suggests that the reports are improper rebuttal because "the potential relevance of Mr. Le's military service has long been known to Plaintiff." Mot. at 8. But Judge Cisneros rejected this exact same argument: "Nothing in th[e] rule limits rebuttal reports to *unforeseeable* positions advanced by an opposing expert." ECF 4701 at 12. The Rule requires only that rebuttals "contradict or rebut" the other side's expert reports; these rebuttals do. Fed. R. Civ. P. 26(a)(2)(D)(ii).

*Third*, the challenged opinions are based on post-September 3 evidence, which, in addition to the above, includes the depositions of Sergeants Reinhardt (September 17) and Bentley (September 16), and the deposition testimony of Uber's expert Jason Morris (September 10). *See* ECF 7537-6, Romero Suppl. Rep.,

[2] These expert reports were served either on the same day or after Romero and Sniderman had served their opening reports.

at App. B; ECF 7537-7, Sniderman Suppl. Rep., at Ex. A.

*Fourth*, Uber argues that Mr. Romero and Dr. Sniderman cannot address Le's military service because they are not military experts. That argument misreads both their deposition testimony and their supplemental opinions. Neither expert opines on military justice, personnel administration, or training; those are Major Wells's subjects. Instead, each explains what Le's military history means within his own field of expertise of commercial background screening and hiring. To the extent Uber believes these opinions are in tension with the experts' deposition testimony, that is fodder for cross-examination, not exclusion. These are proper bases for supplementation and rebuttal. Uber cannot ask its experts to opine on military service and municipal-record searches, cross-examine Plaintiff's experts on those same topics, and then prevent Plaintiff's experts from addressing the resulting and evolving record.

**Laura Wells.** Uber argues that Major Wells should have been designated as an affirmative expert because Plaintiff knew about Le's military service prior to expert disclosures. That is not the test. Again, per Judge Cisneros: "Nothing in [Rule 26(a)(2)(D)(ii)] limits rebuttal reports to *unforeseeable* positions advanced by an opposing expert." ECF 4701. Rebuttal is proper where the expert responds to opinions offered by the opposing side on the same subject matter. *See Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.") (internal citation omitted).

Major Wells does exactly that. Her report directly counters Uber's experts' opinions that Le's military service, military screening, "Honorable Discharge," and medals are probative of his suitability, and general good character, to drive for Uber. *See*, *e.g.*, ECF 7363-8, Morris Rep., at 15-16 (opining that military service follows "a rigorous background screening process"); ECF 7363-2, Phelan Rep., at 16-17 (referencing Le's military status and commendations); *In re MacBook Keyboard Litig.*, 2022 WL 1604753, at *8 (N.D. Cal. Jan. 25, 2022) ("A rebuttal expert may cite new evidence and data *or* introduce new methods of analysis in a rebuttal report so long as the new evidence, data, or method is offered to contradict or rebut the opposing party's expert."). This is a classic rebuttal.

To be clear, Plaintiff has moved to exclude evidence of Mr. Le's military recruitment, medals, and discharge. If the Court grants that motion, then Major Wells will not testify.

**B. Uber has not shown prejudice warranting exclusion.**

There is no basis for exclusion here. As explained above, the challenged reports were timely and proper And, in any event, the factors to be considered for exclusion, in particular, justification and any prejudice, all weigh in Plaintiff's favor.

*First,* the supplementations and rebuttals were justified by the scheduling order and trial schedule that necessitated expert disclosures simultaneously with ongoing depositions and discovery. A fact that Uber concedes—"the parties 'may *supplement* based on depositions of Gaddis, Kansal and Boman Sept. 2026 *and other depositions, discovery*[.]'" Mot. at 14 (emphasis added). Under this provision, both parties have served supplemental and rebuttal reports.

*Second,* the issues addressed in the challenged reports are central to this trial. Of note, recent discussions at the September 25 Pretrial Conference reveal that Uber seeks to present Le's military record as a cornerstone of its defense. *See* 9/25/26 Pretrial Conf. Tr. at 110:3-21 (presenting Uber's intended argument that Le's military record and military background check are evidence that Uber's approval of Le as a driver was justified).

*Third,* Uber presents no concrete prejudice claim. The supplemental reports are limited to two pages, and the issues are familiar, e.g., military-service evidence, background screening, and internal incident sexual assault and sexual misconduct data, and the opinions remain the same. Uber has already briefed these issues in various motions and oppositions, deposed the relevant experts, and served its own supplemental and rebuttal expert report on similar topics. Nor can Uber claim surprise from Plaintiff responding to Uber's own expert theories. Uber's requested relief would strike Plaintiff's disclosures while allowing Uber's own supplementations and rebuttals to stand despite the fact that they are based on the same type of late-developing expert and discovery record. *See*, *e.g.*, ECF 7542, Phelan Supp. and Rebuttal Rep., at 2 (justifying his supplemental and rebuttal expert work based on Plaintiff's expert reports and depositions). The Court should hold both sides to the same rule.

*Fourth,* no continuance is needed. If the Court concludes some limited cure is necessary, exclusion is still not warranted. The proper remedy, if any, would be narrow, time-limited deposition questioning confined to genuinely new opinions, with reciprocal access for Plaintiff to address Uber's September 25 supplements and rebuttals.

## III. CONCLUSION

Uber's motion should be denied.

Dated: September 29, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: September 29, 2026

By: */s/ Ellyn Hurd*
Ellyn Hurd