[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*JANE DOE QLF 001 v. Uber Technologies, Inc. et al.,*
N.D. Cal. No. 3:24-cv-08783
W.D. Tex. No. 1:26-cv-01694

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO SAFETY ADVISORY BOARD AND CERTAIN NON-PROFITS**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

JANE DOE QLF 001,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 26-CV-01694-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 5 – 6th Floor

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this opposition to Plaintiff's motion *in limine* to exclude evidence or argument related to Uber's Safety Advisory Board ("SAB"), its members, and non-profit organizations affiliated with the SAB.[1]

Plaintiff's untimely motion *in limine* reflects an ongoing effort by Plaintiff's counsel to preclude Uber from presenting evidence to the jury about its significant safety efforts. Evidence regarding both Uber's Safety Advisory Board ("SAB"), an advisory board made up of third-party safety experts, and its partnerships with various non-profit organizations focused on safety issues, some of whose members serve on the SAB, was permitted in the *Dean* trial. Because this evidence clearly demonstrates Uber's commitment to safety and continuous efforts to advance the safety of its platform—and thus undermines the negligence claims alleged by Plaintiffs in this litigation—Plaintiff's counsel has engaged in various strategies to exclude it from trial.

Initially, Plaintiff's counsel issued overbroad and burdensome third-party discovery requests and demands for depositions to SAB members and non-profits who provided advice to Uber regarding safety issues, taking the position that extensive discovery was necessary to test and challenge that work.[2] Then, Plaintiff's counsel pivoted to the opposite approach, attempting to silence the same SAB members and non-profits by sending them inappropriate letters proposing to drop the onerous discovery requests and depositions if the organizations would provide Plaintiff's counsel with letters addressed to Uber instructing Uber not to mention this important work at trial. *See, e.g.*, Ex. 1 (7/30/2026 Letter from M. Goldenberg and A. Walsh to N. Clarke; 8/4/2026 Letter from M. Goldenberg and A. Walsh to A. Shienvold). The SAB members and non-profits firmly ***rejected*** this attempted coercion, and subsequently produced thousands of documents and provided multiple dates on which they would be available for

[1] Plaintiff's motion should be rejected as untimely and in violation of the Court's orders. Plaintiff filed the motion more than two weeks after the September 11, 2026 deadline for the parties' motions *in limine*, *see* ECF 7087 at 1, and the motion (when combined with Plaintiff's omnibus motion *in limine* and other late-filed motion to exclude military records) far exceeds the 25-page briefing limit set forth in the Joint Case Management Statement. ECF 7264 at 6.

[2] The scope of the discovery related to the SAB and Uber's work with non-profits has already been litigated before Judge Cisneros. In addition, counsel for the SAB-related non-profits litigated, and ultimately resolved, issues related to the scope of SAB-related discovery and depositions in the District Court for the District of Columbia, where the non-profit organizations at issue are located.

deposition. Despite their prior insistence that these depositions were necessary, Plaintiff's counsel ***declined*** the opportunity to take these depositions. Now that they can no longer argue that they do not have enough discovery, Plaintiff's counsel have changed course again, asking the Court to impose the most extreme remedy yet: silence SAB members and their organizations altogether and hide important information about their work with Uber from the jury because Uber properly asserted privilege over a narrow set of limited, discrete attorney communications and work product.

This latest attempt to keep evidence regarding Uber's work with the SAB and its members' affiliate organizations from the jury should be rejected for several reasons.

***First***, Plaintiff asserts that, due to Uber's limited privilege claims, Plaintiff lacks evidence necessary to cross-examine witnesses about the SAB's purported bias stemming from its work with Uber's counsel. Plaintiff's motion disproves its own premise: the evidence Plaintiff says she needs to expose the SAB's purported litigation-related role is nonprivileged, has been produced, was the subject of questioning at Ms. Boman's deposition, and is quoted repeatedly in Plaintiff's motion. Uber's narrow privilege claims with respect to Uber's lawyers' communications with the SAB about litigation or legal issues are fundamentally different—and therefore do not implicate the "sword and shield" doctrine in any way. Uber only seeks to protect the substance of counsel's legal advice, communications, and work product, and ***does not intend to rely on those or other privileged communications*** at trial. Moreover, those narrow privilege assertions do not in any way restrict Plaintiff's ability to cross-examine or impeach any Uber witnesses who may mention the SAB at trial. (Indeed, Uber asserted privilege with respect to less than 20 percent of the documents produced, and many of those documents were redacted rather than withheld.)

***Second***, Plaintiff's accusations that Uber has somehow "interfered" with third-party discovery are simply false. The SAB-affiliated third parties have produced more than 3,000 documents, more than 97% of which were produced in full, and agreed to sit for depositions that Plaintiff chose not to take.

***Third***, Plaintiff's request that the Court exclude all evidence related to the SAB and non-profits affiliated with SAB members is grossly disproportionate to the discrete privilege dispute on which its motion rests.

For all of these reasons, Plaintiff's motion should be denied.[3]

## BACKGROUND

In 2015, Uber launched the SAB. 9/24/2026 Boman Dep. 19:18-20:5 (Ex. 2). The SAB, which consists of a group of safety experts, is an advisory board that advises Uber on safety initiatives related to the use of its technology platform and mobile application. *Id.* During the *Dean* trial, Uber presented the testimony of Uber employee Emilie Boman about the role of the SAB and Uber's partnerships with non-profit organizations. *See Dean* Tr. 2452:7-2467:13 (Ex. 3). Months after the bellwether trial in *Dean*, Plaintiff's counsel issued notices of intent to subpoena a number of third parties, including various SAB members (and their affiliate organizations) and other non-profit organizations that have partnered with Uber on safety initiatives. Plaintiff's counsel asserted the need to depose each of the non-profit partners and also requested a supplemental deposition of Ms. Boman to ask her about Uber's relationship with these and other organizations. Judge Cisneros granted the request, urging Plaintiff's counsel to attempt first to depose Ms. Boman to obtain the information before deposing third parties. In her ruling, Judge Cisneros ordered the parties to meet and confer "regarding the extent to which third-party depositions are relevant and proportional to the needs of the case[.]" ECF 6208, 5/15/2026 Order.

On June 4, 2026, Plaintiff deposed Ms. Boman, questioning her about, *inter alia*, Uber's relationship with the SAB, as well as Uber's engagement with non-profit organizations regarding Uber's safety features. *See* 6/4/2026 E. Boman Dep. 107:13-122:2, 136:22-142:19 (Ex. 4). Prior to Ms. Boman's deposition, Uber provided Plaintiff a 12-page deposition aid referencing previously produced and publicly available documents, including, but not limited to: (1) the identities of all SAB members each year since the Board's inception; (2) SAB members' compensation; (3) the powers and authorities delegated to the SAB; and (4) prior SAB meeting agendas, PowerPoint presentations, and meeting minutes. 6/3/2026 E. Boman Deposition Aid (ECF 6511-4).

[3] While Plaintiff asserts that her motion seeks to exclude "all evidence and arguments about ***the SAB and its members***," Mot. at 9 (emphasis added), her brief refers at several points to excluding evidence pertaining to "nonprofits" more generally. Uber understands these references to relate specifically to non-profits with whom SAB members are or have been affiliated. If Plaintiff is asking the Court to exclude evidence related to Uber safety partners that are not affiliated with the SAB, that argument should be separately rejected because Plaintiff does not identify any basis for such a request. Uber has separately opposed Plaintiff's Motion *In Limine* No. 13 to exclude evidence related to Uber's partnerships with non-profits on hearsay grounds. *See* ECF 7474 at 23.

After Ms. Boman's deposition, Plaintiff's counsel issued subpoenas for third-party depositions to nine organizations/individuals: Bay Area Women Against Rape, District of Columbia Rape Crisis Center ("DCRCC"), National Alliance to End Sexual Violence ("NAESV"), National Crime Prevention Council, National Network to End Domestic Violence ("NNEDV"), NO MORE Foundation, Respect Together, RAINN, and the current chair of Uber's SAB, Secretary Jeh Johnson, regarding the same topics already covered by Ms. Boman. ECF 5893 (Joint Letter Brief Regarding Nonprofit Depositions); ECF 6510 (Joint PTO 8 Letter Regarding Nonprofit Depositions). As a result of the PTO 8 process, Plaintiff's counsel eventually narrowed their subpoenas to five individuals and entities, including Indira Henard of DCRCC, NNEDV, NAESV, Max Bazerman (an ethicist from Harvard University), and Karen Baker of the National Sexual Violence Resource Center ("NSVRC"). *See* 6/22/2026 Notice of Subpoena to NAESV, NNEDV, and Indira Henard; 7/15/2026 Am. Subpoena to Karen Baker; and 7/28/2026 Am. Subpoena to Max Bazerman (Ex. 5). All five parties retained their own counsel and began communicating with Plaintiff's counsel and Uber.[4]

Plaintiff deposed Ms. Boman again on September 24, 2026, questioning her once more about the work of the SAB. Among other things, Plaintiff's counsel questioned Ms. Boman about Uber's template engagement letter for SAB members, which has been produced to Plaintiff in full, and Ms. Boman testified about that document. 9/24/2026 Boman Dep. 34:5-36:16. Plaintiff also asked Ms. Boman about two PowerPoint presentations presented at SAB meetings, portions of which were prepared by Uber's counsel and address active litigation and other legal recommendations. *See* UBER_JCCP_MDL_002624763 (Boman Exhibit 2504); UBER_JCCP_MDL_002625620 (Boman Exhibit 2501) (both documents to be submitted to the Court *in camera*). As Uber's counsel noted on the record during the deposition, both documents were inadvertently produced in unredacted form, even though other copies of the same documents have been produced with counsel's litigation-related communications and legal recommendations redacted. *See* 9/24/2026 Boman Dep. 32:22-33:2, 43:10-13; *see* UBER_JCCP_MDL_005852310 (Ex. 7) (a related version of Boman Exhibit 2501 but logged with redactions never challenged by Plaintiffs); UBER_JCCP_MDL_003350868 (Ex. 8) (a related version of

[4] Two of these third parties, Karen Baker and Max Bazerman, have produced documents and been deposed.

Boman Exhibit 2504 produced with redactions never challenged by Plaintiffs). To date, Plaintiff has not challenged those redactions.

On September 29, 2026, Uber clawed back portions of these two documents—and two related copies of UBER_JCCP_MDL_002624763 that were also inadvertently produced unredacted—and provided a privilege log. *See* 9/29/2026 Letter from Amy St. Amand to Co-Lead Counsel for JCCP & MDL Plaintiffs (Ex. 14). With respect to UBER_JCCP_MDL_002624763 and its copies, Uber has clawed back portions of 22 of the 177 pages, because those pages contain Uber's counsel's work product and privileged communications about ongoing and potential litigation. With respect to UBER_JCCP_MDL_002625620, Uber has clawed back portions of six of the 364 pages because they contain legal advice and recommendations from Uber's counsel about the operations of the SAB. The remainder of these lengthy presentations remain available to Plaintiff. These documents will be submitted to the Courtfor *in camera* review.

In total, Uber has produced over 1,700 documents and communications related to the SAB to date, of which only 20% include any claim of attorney-client privilege or attorney work product. Importantly, Plaintiffs have challenged fewer than 2% of these privilege claims before the Special Master. And on the select occasions when Judge Jones has reviewed privilege challenges regarding Uber SAB documents, she has repeatedly affirmed or otherwise recognized Uber's claims of protection. *See, e.g.*, UBER_JCCP_MDL_005913106 (Uber's privilege claim affirmed); UBER_JCCP_MDL_004153987 (Ex. 11) (Uber's privilege claim recognized and tailored redactions ordered).

Independently, Ms. Henard, NNEDV, and NAESV have produced over three thousand documents. *See* Pl.'s Ex. B (UBER_JCCP_MDL_002309759); Pl.'s Ex. C (UBER_JCCP_MDL_003350868); Pl.'s Ex. D (UBER_JCCP_MDL_002309920); Pl.'s Ex. E (NNEDV VOL001); Pl.'s Ex. F (HENARD VOL001, DCRCC VOL001); Pl.'s Ex. G (NAESV VOL001). More than 97% of the documents provided by these third parties have been produced to Plaintiff in full. As with other third-party documents subpoenaed in the MDL, Uber narrowly asserted privilege with respect to certain documents (or portions of documents) that reflected substantive legal communications from Uber's attorneys. Only 81 documents were either redacted or withheld based on a claim of privilege by Uber.

Separate and apart from the SAB, Uber also partners with other non-profit organizations on safety issues. For example, Uber has partnered with NSVRC and the CEO of that organization, Karen Baker, who wrote the Foreword to Uber's Safety Report, which was discussed at the *Dean* trial. *See Dean* Trial Tr. 2456:18-2457:18 (Ex. 3). Plaintiffs sought and have obtained documents from NSVRC about its work with Uber on safety issues and separately deposed Ms. Baker on August 26, 2026.[5] At her deposition, Ms. Baker strongly defended her (and NSVRC's) work with Uber in her testimony. *See, e.g.*, 8/26/2026 Karen Baker Dep. 172:21-25 (Ex. 12) ("[T]his is a project that I'm really proud of. In fact, it's one of the top things that I would say in all my work with NSVRC, one of the things I'm most proud of that we accomplished.").

## ARGUMENT

### I. UBER HAS PROVIDED PLAINTIFF WITH THE IMPEACHMENT EVIDENCE SHE CLAIMS TO NEED FOR TRIAL.

Plaintiff seeks to bar Uber from referencing "the Safety Advisory Board (SAB), its members, and the organizations affiliated with those members at trial" on the ground that "Uber seeks to shield information Plaintiffs need to rebut Uber's SAB defenses at trial while ensuring that it can access favorable information." Mot. at 1. But Plaintiff's own motion demonstrates that this premise is false.

Plaintiff asserts that the SAB is biased and lacks independence because the form retention letter signed by SAB members—copies of which have been produced at least 12 times (including as early as January 2025)—states that "one of the five responsibilities SAB members are expected to fulfill is to 'advise Uber's legal counsel . . . on potential safety-related legal liabilities with the goal of limiting or eliminating exposure in current or anticipated litigation.'" Mot. at 2 (quoting Boman Dep. Ex. 2502 (retention letter)). According to Plaintiff, ***this nonprivileged document demonstrates*** that "[c]ontrary to what Uber has told jurors, SAB . . . members do not exist solely to provide advice to Uber on how to make the Platform safer" and instead "[a]n important part of their role is to help Uber 'limit[] or eliminat[e] exposure in current and anticipated litigation.'" *Id.*

[5] As set forth in Uber's Supplemental Opposition to Plaintiff's Motion In Limine No. 13 to Exclude Hearsay From Non-Profit Organizations, filed contemporaneously herewith, NSVRC produced over 11,00 documents in November 2024 in response to Plaintiff's counsel's subpoena.

Notably, Plaintiff questioned Ms. Boman about this document at her deposition, and Ms. Boman answered all of Plaintiffs' counsel's questions about that document without any invocation of privilege. 9/24/2026 Boman Dep. 34:5-36:16. Thus, to the extent Plaintiff claims to need information about "this part of the SAB's role" to use in cross-examining any Uber witnesses who may potentially discuss or mention the SAB at trial, she already has it. ***In addition, the SAB members themselves agreed to sit for depositions—during which Plaintiff could have attempted to impeach them on these issues—but Plaintiff chose not to take those depositions.***

Contrary to Plaintiff's suggestions, Uber only asserted privilege over very narrow portions of two SAB meeting PowerPoint presentations, which include ***Uber's attorneys' statements to the SAB about legal advice and anticipated and pending litigation***. Mot. at 2, Pl. Exs. B and C. Plaintiff argues that, because Uber withheld these portions and did not permit Plaintiff's counsel to question Ms. Boman about those attorney statements, the "sword and shield" doctrine prohibits Uber from mentioning the SAB at all at trial. Mot. at 1. But Plaintiff's tortured interpretation of the "sword and shield" doctrine is contrary to the relevant law.

The sword and shield doctrine is grounded in fairness: "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). Such concerns arise where, for example, a party relies on the advice of its counsel to defend its conduct while also seeking to withhold its counsel's communications, *see id.* at 1196 (precluding defendant from invoking advice of counsel defense where defendant claimed his conduct was "based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel"), or a party seeks to use a portion of a privileged communication affirmatively while withholding the remainder of a conversation, *see Coleman v. Sterling*, No. 09-CV-1594-W (BGS), 2011 WL 1099793, at *3-4 (S.D. Cal. Mar. 24, 2011) (finding that the defendant "must produce the redacted portions of [investigative] reports" where the defendant "voluntarily disclos[ed] part of the communications and . . . rel[ied] on the reports to justify the termination of [p]laintiffs"). In such situations, a party's affirmative use of ***privileged***

information demands the disclosure of other, related privileged information. *See Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG (MEJ), 2017 WL 2531472, at *2 (N.D. Cal. June 12, 2017) ("Fairness dictates that a party may not . . . selectively disclose privileged" information "while claiming privilege on damaging [information] relating to the same subject.") (citation omitted).

Uber, however, is ***not*** seeking to use privilege as a "sword and shield." As courts have recognized, the sword and shield doctrine does not apply where there is "no showing that [a party] has actually asserted the advice of counsel defense," no evidence that the party "relied upon the advice of counsel to defend itself in any pleadings filed with the Court," and "nothing in the record before the Court [] shows that [plaintiff] has produced or presented evidence of its reliance upon the advice of counsel[.]" *Oakley, Inc. v. Bugaboos Eyewear Corp.*, No. 09-CV-2037-JLS (JMA), 2010 WL 4117223, at *2-3 (S.D. Cal. Oct. 15, 2010) (emphasis omitted).

Here, Uber has ***never*** affirmatively used or placed at issue its counsel's privileged and work product communications with the SAB members such that fairness demands disclosure of privileged material. Plaintiff does not—and cannot—claim that Uber is asserting an advice of counsel defense with respect to the SAB. Uber does not intend to rely on any privileged communication, attorney recommendation, or litigation advice to establish the SAB's work at trial, or to argue that any challenged safety decision was reasonable because counsel or the SAB advised Uber to take that action. Uber therefore has not placed the substance of those privileged communications at issue. In short, the fact that Uber witnesses may discuss the SAB generally does not implicate the sword and shield doctrine because they will not be relying on the handful of withheld or redacted communications that contain legal advice or discuss litigation.

Plaintiff's cases are not to the contrary. For example, Plaintiff relies upon *Columbia Pictures Television*, 259 F.3d at 1196 (Mot. at 7), in which the court affirmed the district court's decision precluding a defendant from invoking the advice of counsel defense while refusing to answer questions regarding client communications. But, as noted above, Uber is not invoking the advice of counsel defense, and therefore it is not wielding the privilege as a sword at all. In *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033, 1043 (9th Cir. 2009) (Mot. at 4), the court ***declined*** to find a waiver

where, as here, the defendant "did not actually rely on an advice-of-counsel defense at trial." *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (Mot. at 4, 7-8), is utterly irrelevant; that case involved a federal habeas claim based on ineffective assistance of counsel, and the court simply noted the longstanding "rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." And in *Moeller v. Taco Bell Corp.*, No. C 02-5849 PJH (JL), 2009 WL 10710495, at *2-4 (N.D. Cal. Oct. 6, 2009) (Mot. at 4-5), a party was deemed to have waived privilege with respect to materials directly related to affirmative witness testimony that the party's conduct was "now in compliance with state and federal law," i.e., the testimony directly implicated legal issues. None of these cases supports Plaintiff's position that unless she is allowed to use privileged material for impeachment—even though she has ample other material at her disposal—Uber must be barred from presenting highly relevant evidence at trial that does ***not*** implicate legal issues.

Plaintiff's argument that the privileged material is somehow necessary to impeach Uber witnesses on bias issues is simply not true. While Plaintiff asserts that her counsel was prevented from "explor[ing]" the SAB's potential role in advising counsel at Ms. Boman's most recent deposition, the record shows otherwise. During the deposition, Uber's counsel objected only to Plaintiff's questions about particular portions of PowerPoint presentations made by Uber's legal team to the SAB that should have been redacted because they revealed counsel's legal advice, litigation-related communications, recommendations, or attorney mental impressions. Uber did not instruct Ms. Boman not to answer merely because a question concerned the SAB or its litigation-related role.[6] As Ms. Boman explained, some of these redactions include litigation updates from counsel.[7] Plaintiff's counsel immediately went on to ask

[6] *See* 9/24/2026 Boman Dep. 45:6-15 ("Q. So – all right. Uber is claiming privilege over the role that its Safety Advisory Board played in defending Uber against litigation claims. Is that right? MS. LEVY: That is not the position I'm taking. I'm taking the position that you can't ask about a redacted document. You can't ask about the contents. You can ask general questions to Ms. Boman about what roles SAB played."). Notably, Plaintiff's counsel had the unredacted versions of the PowerPoints that they now claim are needed to impeach Uber witnesses about the SAB—and did not use any of them in cross-examining Uber's witnesses at trial in *Dean*. Nor have Plaintiffs ever challenged Uber's privilege claims with respect to the redacted versions of these documents that appear in the production.

[7] *See* 9/24/2026 Boman Dep. 43:25-44:7 (Ms. Boman being questioned about the redacted portion of a PowerPoint created by Uber's counsel that includes "Key Legal Updates" (as noted in the document itself) and testifying that "[f]rom what I recall, the legal team would run a session at many Safety Advisory

Ms. Boman a number of questions—all answered—about the different roles played by the SAB, including whether the SAB was consulted with respect to a number of different issues relevant to litigation, such as the use of dashcams in rideshare vehicles and Uber's independent contractor model. 9/24/2026 Boman Dep. 48:3-57:16.

In short, the very evidence cited in Plaintiff's motion makes clear that Uber has not "blocked Plaintiff's ability" to impeach any Uber witnesses who may mention or testify about the SAB at trial with purported evidence of "the [alleged] bias of the SAB members." To the extent an Uber witness testifies about the SAB, Plaintiff's counsel is free to cross-examine the witness with non-privileged record evidence about the SAB's litigation-related responsibilities, including the retention letter itself. That material more than suffices to impeach witnesses on these topics, and Plaintiff's contrary arguments are meritless.

## II. UBER HAS NOT INTERFERED WITH PLAINTIFF'S ABILITY TO SEEK INFORMATION ABOUT THE SAB FROM THIRD PARTIES.

Plaintiff also argues that Uber should be precluded from presenting evidence about the SAB, and the non-profits for whom SAB members work or have worked, because Uber purportedly "interfered with Plaintiffs' ability to obtain that information from [these] third parties" about the SAB. Mot. at 7. The actual discovery record tells the opposite story.

Together, DCRCC, NNEDV, and NAESV have produced more than 3,000 documents related to the SAB's involvement in various safety initiatives. Uber has asserted its right to redact or withhold only 81 documents—***less than 3%*** of the production—because they include privileged legal advice and/or litigation work product from ***Uber's lawyers*** that was shared with the SAB. Contrary to the suggestions made to the Court at the pretrial conference, counsel for Uber actually attempted to ***facilitate and accelerate*** the agreement between Plaintiffs and the non-profits' counsel about the scope of the production, and was transparent from the outset that Uber would very quickly review the materials for privilege and confidentiality so that depositions could occur prior to trial. *See* 9/29/2026 Email from N. Clarke to M. Goldenberg (Ex. 13).

---

Boards that would provide an update on legal issues around the world, and that would include ongoing litigation").

Plaintiff incorrectly suggests that there is something untoward or procedurally improper about Uber reviewing third-party documents for privilege before production, but this is a common practice in litigation involving third-party discovery. Indeed, courts routinely allow a party to review a third party's proposed production and withhold materials that reveal the party's privileged communications or protected work product. *See, e.g.*, *Fusion Elite All Stars v. Varsity Brands*, *LLC*, 340 F.R.D. 255, 262 (W.D. Tenn. 2022) (allowing the "defendants to review [third-party's] documents for privilege before they are produced to the plaintiffs" and finding that "[i]f defendants believe that certain documents are covered by privilege, they may withhold production of those documents"); *Wickersham v. Eastside Distilling, Inc.*, 692 F. Supp. 3d 1052, 1069 (D. Or. 2023) (recognizing that "some of the documents possessed by the subpoenaed third parties may be subject to defendant's claims of privilege or work product protection" and holding that those documents may be withheld "based on an objectively reasonable assertion of attorney-client privilege or attorney work product protection"), *aff'd and modified in part by* 713 F. Supp. 3d 1013 (D. Or. 2024); *Louisiana Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, 650 F. Supp. 3d 491, 502 (E.D. La. 2023) (allowing the defendant "to review [third-party] subpoenaed materials" and "withh[o]ld [documents] on the basis of privilege or work product.").

Plaintiff's cited case is not to the contrary. In *Calhoun v. Google*, EY, a third party to litigation against Google, identified approximately 6,322 responsive documents consistent with the court's order regarding the scope of a third-party discovery subpoena. Order at 1, 4:20-cv-05146-YGR (N.D. Cal. Mar. 14, 2022), ECF 558. Google culled EY's documents prior to production and determined that only 90 of the 6,322 documents were ***relevant and responsive*** to the plaintiff's third-party subpoena and prevented EY from producing the others. *Id.* Google did ***not*** seek to withhold any of these documents on grounds that they revealed Google's privileged communications. The court found that Google's conduct of "deselect[ing] 6,232 documents on the basis of relevance" violated the court's order regarding the scope of what documents EY should produce. *Id.*, ECF 685 at 1, 3 (N.D. Cal. June 6, 2022).

Here, by contrast, Uber has not questioned any third party's relevance or responsiveness determinations; instead, it has properly invoked its right to assert privilege and work product objections over a small percentage of third-party documents that reveal Uber's attorneys' mental impressions and

advice. *See Roe v. White*, No. 03-cv-04035 CRB (NC), 2014 WL 13160231, at *1 (N.D. Cal. July 14, 2014) ("Privileged attorney-client communication or attorney work product are not . . . discoverable."), *clarified by* 2014 WL 13160229 (N.D. Cal. July 29, 2014).

Indeed, if anyone has curtailed Plaintiff's discovery with respect to Ms. Henard, DCRCC, NNEDV, or NAESV for strategic reasons, it is Plaintiff's counsel. Plaintiff initially asked these individuals and entities for depositions and each offered deposition dates in advance of trial. Plaintiff insisted for months that this discovery was necessary. Plaintiff then offered to abandon those discovery demands if the organizations would send letters instructing Uber not to reference their work at trial. The organizations rejected that proposal, produced thousands of documents, and offered deposition dates before trial. Plaintiff declined to take them.

Plaintiff's reversal came after deposing Ms. Baker—who formerly worked for NSVRC, a different non-profit that partners with Uber but is not affiliated with the SAB. This is no doubt because Ms. Baker provided testimony regarding the work that NSVRC did in partnership with Uber (including with respect to the sexual misconduct and sexual violence taxonomy and Uber's first safety report) that undermines Plaintiff's litigation theories and themes. 8/26/2026 Karen Baker Dep. 120:11-23, 121:3-122:23, 125:1-11, 185:7-17. For example, Ms. Baker testified that she was "proud of [the] work" that NSVRC performed for Uber, and it had "never before worked with an organization that . . . ha[s] such a commitment" to improving safety on its platform. *Id.* 125:1-8. After Ms. Baker's deposition, Plaintiff's counsel backtracked, slow-walking negotiations about document production and declining to take non-profit organization depositions that they previously claimed were urgently needed.

In short, Plaintiff has not identified any legitimate basis for the Court to exclude evidence and argument regarding Uber's SAB or the company's partnerships with safety organizations affiliated with SAB members, evidence that the Court admitted in the *Dean* trial.

## III. PLAINTIFF SEEKS HIGHLY DISPROPORTIONATE RELIEF.

Even if Plaintiff's argument had any merit, the relief she seeks would be overly broad and improper. After all, Plaintiff asks the Court to exclude *all* evidence about the SAB, its members, and affiliated organizations, including extensive non-privileged evidence concerning years of safety work that has nothing to do with the privileged communications at issue. That sweeping relief is particularly unwarranted because, as explained above, Plaintiff already possesses the non-privileged evidence counsel claims she needs to impeach witnesses about the SAB's role and independence.

Accordingly, if the Court does not deny Plaintiff's motion in full, it should, at most, order relief that is narrowly tailored to the two documents Plaintiff attempted to use with Ms. Boman—i.e., overturning the clawbacks and permitting a ***very limited*** fifth deposition of Ms. Boman, to address those two documents. By contrast, wholesale exclusion of all evidence related to the SAB would be a grossly disproportionate remedy and would undermine Uber's due process right to defend itself at trial.

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court deny Plaintiff's motion *in limine* to exclude evidence related to the Safety Advisory Board and affiliated non-profit organizations.

DATED: September 30, 2026

Respectfully submitted,

*/s/ Kim Bueno*

Kim Bueno (Admitted *Pro Hac Vice* in N.D. Cal.)
TX SBN 24065345
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9050
kim.bueno@kirkland.com

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**

2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Michael Vives (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
Jessica Davidson (Admitted *Pro Hac Vice* in N.D. Cal. and W.D. Tex.)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
michael.vives@kirkland.com
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Kim Bueno*
Kim Bueno