[*Submitting counsel below*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To:<br><br>ALL ACTIONS | Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor (videoconference)<br>Date: October 16, 2026<br>Time: 10:00 a.m. |

# JOINT CASE MANAGEMENT STATEMENT

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for October 16, 2026.

## Proposed Agenda

I. **Status of Case Filings**

II. **Bellwether Case Updates**

III. **Scheduling Matters Related to the Next Bellwether Trial**

IV. **Bellwether Replenishment**

V. **Uber's Refusal to Make an Election about the Safety Advisory Board**

VI. **Pending Motions Under Submission**

VII. **Resolution / Mediation**

VIII. **Next Case Management Conference**

## I. STATUS OF CASE FILINGS

### A. Number of MDL Case Filings

As of October 12, 2026, there are 4,561 cases in this MDL, with more than 469 new filings and 90 dismissals since the last case management conference. Uber alleges that of these 4,561 filed claims, a substantial percentage have been resolved, are subject to dismissal motions (*see* Section I(A)), or are otherwise fundamentally deficient (e.g., they are not connected to a trip arranged on the Uber app). Plaintiffs do not agree with Uber's characterizations of the docket.

The following chart provides further detail on the status of the case docket:

| | |
|---|---|
| **No. of Active MDL Cases**<br>*Includes cases pending dismissal or resolution but that remain on the docket* | 4,561 |
| **No. of Active MDL Cases in which Uber has Requested Dismissal Without Prejudice**<br>*Includes cases subject to pending dismissal motions before the Court*<br>**ECF Nos. 5891, 5914, 5915, 5989, 6192, 6350, 6420, 6468, 6586, 6785, 6979, 7074* | 165* |

| | |
|---|---|
| **No. of Active MDL Cases Dismissed Without Prejudice and in which Uber has Requested Conversion to Dismissal With Prejudice**<br>*Includes cases subject to pending conversion motions before the Court*<br>***ECF Nos. 5567, 6340* | 315** |
| **No. of Active MDL Cases Dismissed With Prejudice on Any Grounds**<br>*MDL cases dismissed with prejudice to date* | 281 |
| **No. of Active MDL Cases Subject to Settlement**<br>*MDL cases subject to settlement that remain on the docket* | 834 |

Dismissals from the WHB law firm are expected soon.

### A. Status of JCCP

Approximately 891 cases are pending in the JCCP and 320 are subject to settlements but remain on the docket. At the last status conference, Judge Schulman did not set a next trial and will revisit trial scheduling at the next status conference in late October.

### B. Other Cases and Proceedings

Uber has provided a current list of civil actions arising from allegations of sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

## II. BELLWETHER CASE UPDATES

Days after jury selection, Uber entered a confidential settlement with the Plaintiff in *Jane Doe QLF 0001 v. Uber*, No. 3:24-cv-08783, resolving that action. The stipulation of dismissal is expected to be filed next week.

## III. SCHEDULING MATTERS RELATED TO THE NEXT BELLWETHER TRIAL

### A. Plaintiffs' Position

Opening expert reports in *A.R.2* were served more than a year ago. Since that time, the parties have completed substantial additional discovery in the MDL, including more than *eleven* depositions of either senior Uber executives or Uber itself under Rule 30(b)(6). Much of this discovery focused on Uber's background checks and screening, issues that will be front and center in *A.R.2*. For example, discovery included the very first deposition of Uber's background check vendor, Checkr (and numerous 30(b)(6) depositions of Uber building on the Checkr deposition). The parties also tried two

cases and very nearly tried a third (*QLF*) that, like *A.R.2*, would have focused on Uber's background check and screening process.

Before the *QLF* trial, the parties met and conferred and discussed the opportunity for *both sides* to serve a limited number of additional expert reports for the *A.R.2* trial. Plaintiff understood Uber was open to this idea and expected agreement to be reached on a schedule and related matters (e.g., scope of expert discovery).After *QLF* settled, Plaintiff sent Uber a proposed schedule, which provided a "firm deadline" for any additional expert reports of October 26. Then, for the first time on a meet and confer on October 9, Uber stated its position detailed below. Uber also refused to further discuss a pretrial schedule, prompting Plaintiff's insertion of a proposed schedule in this CMC statement.

Uber's position is not only unproductive, but also threatens to deprive *A.R.2* of its value as a bellwether by limiting the expert record to what it was 12 months and 3 trials ago. In particular, it makes no sense to try a case principally concerning Uber's background checks without applying the lessons learned from working up *QLF*, also a background-check case, and information gained from the Checkr and related depositions. Uber's position is essentially that the parties must proceed with stale expert reports, regardless of new developments in discovery or things learned from other bellwether cases. That is wrong. The expert process in an MDL like this one loses value if it is not iterative.

Plaintiff is not proposing a full re-do of expert work. She will not introduce experts new to the MDL but instead will supplement reports of previously disclosed experts based on newly discovered information and address issues specific to the upcoming *A.R.2* trial. Apart from supplementing MCLs to reflect new discovery, she also intends to serve two or three additional or supplemental expert reports, each analyzing the flawed background check and on-boarding process that resulted in the sexual assault in this case. For example, Plaintiff plans to serve an expert report of a previously disclosed background check expert in the MDL applying their expertise to the *A.R.2* record, including the significant discovery completed in the last year. Every report will come from an expert previously disclosed and previously deposed in this MDL—no surprises—and will be proper, justified by the expanded discovery record. To the extent Uber believes a report exceeds the permissible bounds of expert discovery, it may move to strike.

Plaintiff agrees a "firm deadline" for a limited number of expert reports makes sense, and she proposed one to Uber (October 26). If Uber is concerned about timing, then the solution is to move the date up (Plaintiff offered October 22). Given Uber's refusal to agree, Plaintiff will serve reports on a rolling basis as they are ready (with the first already served on October 13). Given the ample time before trial, Uber cannot claim any prejudice.

Uber largely agrees with Plaintiff's proposed schedule but disputes the deadline for *Daubert* motions, asking the Court to set it seven days later on November 20. Uber, however, provides no reason why it needs this additional time, which will only force briefing over the holidays. And, again, if Uber requires additional time to brief *Daubert* motions, the solution is to advance the deadline for additional reports to October 22 rather than impede the holidays. Uber's proposal also suggests that Plaintiffs fail to consider a deadline for deposing additional experts, but Plaintiffs have proposed November 9 as the close of expert discovery.

Plaintiff respectfully requests that the Court enter the following schedule, reflected in the attached proposed order, Exhibit B.

| **EVENT** | **DATE** |
|---|---|
| Additional Expert Reports | October 26, 2026 |
| Close of Expert Discovery | November 9, 2026 |
| Motions for Summary Judgment | November 13, 2026 |
| *Daubert* Motions | November 13, 2026 |
| Motions in Limine / 412 Motions | November 20, 2026 |
| Oppositions to Motions for Summary Judgment | December 8, 2026 |
| Oppositions to *Daubert* Motions | December 8, 2026 |
| Oppositions to Motions in Limine / 412 Motions | December 8, 2026 |
| Joint Proposed Pretrial Order | December 10, 2026 |
| Jury Questionnaire / Voir Dire Questions | December 10, 2026 |
| Pretrial Conference | December 17, 2026 |
| Witness Lists / Exhibit Lists | December 18, 2026 |
| Jury Instructions / Verdict Forms | December 30, 2026 |
| Trial Briefs (if any) | January 5, 2027 |
| Branded Exhibits | January 6, 2027 |
| Jury Selection | January 7, 2027 |
| Trial | January 11, 2027 |

**B. Uber's Position**

Plaintiff wants to disclose several new experts and new background-check opinions because she is evidently dissatisfied with the 100-page-plus report already disclosed on this topic by her expert David Sawyer on the deadline set by the Court last year. Plaintiff's counsel previously succeeded in limiting the opinions of rebuttal experts disclosed by Uber for failing to offer affirmative opinions by that deadline. *See* ECF Nos. 4384, 4386, 4701. But Plaintiff now argues that the deadline to disclose affirmative opinions should not apply to her and that Uber should be forced to depose and respond to new affirmative opinions offered by "two or three" other experts in the short, 14-day period between the deadline for supplemental reports and the close of fact discovery. The Court should reject Plaintiff's proposal as improper and unfair.

The Court set the *A.R.2* expert schedule more than a year ago. According to the September 24, 2025 Stipulation and Order to Reset Pretrial Deadlines, opening expert reports were due September 26, 2025, rebuttal reports were due October 24, 2025, and *Daubert* motions were due November 10 and 14, 2025. *See* ECF No. 3997 at 2-3. At that time, Plaintiff disclosed 15 experts. Since then, the Court has permitted only narrow supplementation based on newly produced evidence. *See* ECF Nos. 4788, 4990. It has never reset the expert deadlines. A new trial date is not a new opportunity to serve opening or rebuttal reports, especially where, as here, there is very little time in the schedule to accommodate new expert reports, depositions, and motions to exclude.

Plaintiff asserts that Uber "threatens to deprive *A.R.2* of its value as a bellwether by limiting the expert record to what it was 12 months and 3 trials ago," particularly on background check issues. This rhetoric does not match reality. As noted above, Plaintiff has disclosed 15 experts for *A.R.*, including one expert, David Sawyer, who issued a 100-page report solely about background check issues. The fact that Plaintiff now finds her own prior disclosure to be too "limiting" is telling, suggesting that she seeks to disclose new experts not because of new facts that have arisen, but because she prefers a different expert (or experts). Surely that is not an appropriate basis to proffer up to four more background check experts long after the disclosure deadline.

To the extent new facts have arisen on this topic, the logical and most efficient way to proceed is to have Mr. Sawyer supplement his opinions subject to Rule 26(e), which Uber expressly agrees

Plaintiff can do (and as such, Plaintiff's suggestion that Uber is seeking to prevent her experts from relying on new facts that have arisen since expert discovery was completed last year is categorically false). Experts on both sides should be allowed to update their existing opinions to account for new information produced after they served their reports. Under this approach, Plaintiff is free to issue a supplemental report from her previously disclosed background check expert to account for any new facts, company depositions, or "lessons learned" from the *QLF* case.

As the Court has explained, supplementation "means 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" ECF No. 4788 at 3 (quoting *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013)). It is not a vehicle for "a new theory," and courts strike supplemental reports that offer one. *Id.* at *4 (citing *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 189 (S.D. Cal. 2020) (striking supplemental report offering new opinion on previously available information); *Gerawan*, 2013 WL 1982797, at *5 (striking supplemental report with significantly different damages calculation)). Supplementation must also be made "in a timely manner," not merely before pretrial disclosures. *Id.* at 2.

A date certain gives both sides certainty and keeps supplementation from spilling into pretrial preparation. With the pretrial conference set for December 17, 2026 and trial in January 2027, the schedule should be settled now, not report-by-report as trial approaches. In *Dean*, supplemental reports served weeks before trial led to repeated motion practice and depositions taken during trial. *See* ECF No. 4788; ECF No. 4990. A firm deadline, limited to proper Fed. R. Civ. P. 26(e) supplementation, will prevent a repeat.

Uber therefore asks the Court to order the following:

a) Scope. Supplemental reports are permitted but must be limited to updating opinions already disclosed in each expert's timely report, based on information produced after that report was served. Supplements may not include new opinions, theories, or methodologies that could have been disclosed by the governing deadlines.

b) Supplemental reports. Due by **October 26, 2026**.

c) Responsive supplements. Due by **November 4, 2026**, and limited to the new material in the opposing side's supplements. *See* ECF No. 4990 at 4 (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)) (new disclosures permit response on "the same subject matter").

d) Limited depositions. If needed, depositions of supplementing experts, limited to the supplemental material and to three hours each, must be completed by **November 20, 2026**.

e) *Daubert* Motions. Due by **November 20, 2026**.

f) Oppositions to *Daubert* Motions. Due by **December 8, 2026**.

For the Court's reference, the following chart demonstrates the parties' positions:

| **Event** | **Plaintiff's Proposal** | **Uber's Proposal** |
|---|---|---|
| Scope of supplemental/additional expert reports | No stated limit | Supplements may only update opinions already disclosed in each expert's timely report, based on information produced after that report was served. No new opinions, theories, or methodologies that could have been disclosed by the governing deadlines. |
| Additional (Supplemental) Expert Reports | October 26, 2026 | October 26, 2026 |
| Responsive Supplements | Not included | November 4, 2026. Limited to new material in the other side's supplements (citing ECF No. 4990 at 4; Fed. R. Civ. P. 26(a)(2)(D)(ii)). |
| Close of Expert Discovery | November 9, 2026 | No change proposed. But Uber's limited depositions run through November 20, 2026. |
| Motions for Summary Judgment | November 13, 2026 | November 13, 2026 |
| *Daubert* Motions | November 13, 2026 | November 20, 2026 |
| Limited Depositions of Supplementing Experts | Not included | Must be done by November 20, 2026, if needed. Limited to the supplemental material and 3 hours per expert. |
| Motions in Limine / 412 Motions | November 20, 2026 | November 20, 2026 |
| Oppositions to Motions for Summary Judgment | December 8, 2026 | December 8, 2026 |
| Oppositions to *Daubert* Motions | December 8, 2026 | December 8, 2026 |
| Oppositions to Motions in Limine / 412 Motions | December 8, 2026 | December 8, 2026 |
| Joint Proposed Pretrial Order | December 10, 2026 | December 10, 2026 |

| Event | Plaintiff's Proposal | Uber's Proposal |
|---|---|---|
| Jury Questionnaire / Voir Dire Questions | December 10, 2026 | December 10, 2026 |
| Pretrial Conference | December 17, 2026 | December 17, 2026 |
| Witness Lists / Exhibit Lists | December 18, 2026 | December 18, 2026 |
| Jury Instructions / Verdict Forms | December 30, 2026 | December 30, 2026 |
| Trial Briefs (if any) | January 5, 2027 | January 5, 2027 |
| Branded Exhibits | January 6, 2027 | January 6, 2027 |
| Jury Selection | January 7, 2027 | January 7, 2027 |
| Trial | January 11, 2027 | January 11, 2027 |

Uber has submitted a proposed order setting out the dates consistent with its recommended schedule.

## IV. BELLWETHER REPLENISHMENT

The parties submitted proposals for replenishing the bellwether pool in the August 13 Joint Case Management Statement (ECF No. 7020), Plaintiffs' Proposed Pretrial order (ECF No. 7020-1), and in supplemental briefing (ECF Nos. 7022, 7026, and 7079).

### A. Plaintiffs' Position

At the August 24 Case Management Conference, the Court directed Uber to provide its response to the pool of cases Plaintiffs proposed for the next bellwether waves. 8/24/26 CMC Tr. at 5:7-7:12. At the October 5 conference in Austin, Uber confirmed that it would provide its response by October 12. 10/5/26 Trial Tr. at 262:8-25. Uber did not file its response on October 12 and now asserts that it will file something concurrently with this CMC statement. There is no credible justification for this delay as Uber has had ample time to respond to Plaintiffs' proposals. While Uber suggests that continuing this CMC would ameliorate any prejudice caused by Uber's late filing, deferring the CMC—and a decision on how to replenish the bellwether pool—suspends the parties' ability to identify the next cases that will be prepared for trial and move this MDL toward resolution. Plaintiffs, accordingly, will endeavor to respond to Uber's forthcoming filing before the CMC on October 16.

Setting aside Uber's dilatory response, the Court has already received extensive briefing regarding this matter, and Uber's conduct in resolving cases on the eve of trial only highlights the need to work up multiple matters for successive trials, as Plaintiffs have proposed. *See* ECF No. 7020-1. Plaintiffs' proposed approach will ensure the parties gain meaningful insights from the bellwether process by assessing multiple liability theories across different jurisdictions, rather than focusing myopically on Uber's taxonomy or categories of cases that may account for an outsized portion of the MDL but offer limited bellwether value.

**B. Uber's Position**

The bellwether replenishment process is critical for case evaluation and to promote opportunities for resolution. As such, it warrants careful consideration. Until last week, the parties were preparing for trial in *QLF*, and Uber's resources were heavily focused on that significant effort. Now, with that case resolved, and with the benefit of reviewing the bellwether process to date and the status of the litigation, Uber has prepared a response to Plaintiffs' submission and a counter-proposal. In that submission, which is being filed this evening, Uber proposes new bellwether candidates from three categories in the bellwether pool that account for approximately half of the MDL case pool, but have not been tested as part of the bellwether process. Recognizing that Plaintiffs will not have time to meaningfully respond to Uber's proposal and that the Court will have limited time to review the materials prior to the Case Management conference, Uber suggested postponing the Conference to next week. Plaintiffs preferred to proceed this week and, as such, Uber will be prepared to discuss these submissions and its proposal at the CMC.

**V. UBER'S REFUSAL TO MAKE AN ELECTION ABOUT THE SAFETY ADVISORY BOARD**

**A. Plaintiffs' Position**

In the days leading up to the most recent Bellwether case, the Court issued an order relating to Plaintiffs' Trial Brief Related to Safety Advisory Board and Certain Non-Profits (ECF No. 7518) on October 1, 2026. The Court held, "Without judgment as to privilege determinations, if Uber wants to present evidence about the Safety Advisory Board or affiliated non-profits in its case-in-chief, then documents that were withheld from Plaintiffs on privilege grounds must be disclosed to Plaintiffs."

(ECF No. 7633.) While the QLF 001 case resolved, the issue is not moot—the next bellwether trial is rapidly approaching and the same issues will arise. To date, despite several follow up requests, Uber has not made the decision about how it will proceed in future trials.

Uber's refusal to make a decision came to a head this week when Plaintiffs were required to decide whether to challenge Uber's confidentiality designations as to documents relating to the Safety Advisory Board and several third parties. With another trial set for January, coupled with Plaintiffs' obligations to challenge entries on Uber's privilege log, Uber's refusal to make a decision is causing Plaintiffs to spend unnecessary time and money litigating the privilege issues, and it prevents both sides from understanding whether the Safety Advisory Board and the related third parties will have a place in future trials. How Uber intends to proceed may also necessitate the production of additional documents and a deposition limited to those newly produced documents. For this reason, Plaintiffs request that the Court clarify that its order applies generally to bellwether cases in the MDL, and set a deadline for Uber to provide its decision on or before October 19, 2026. Plaintiffs are willing to hold their privilege challenges in abeyance until after the Court rules on the issue.

**B. Uber's Position**

Plaintiffs complain that Uber has "refused" to make a decision about how it will address alleged "sword-shield" issues in a future trial. That is not so. As Uber has explained to Plaintiffs, it believes that this issue needs to be addressed in a methodical way. First, the initial privilege determination with respect to any challenged SAB-related document should be made by the Special Master, consistent with how privilege has been addressed in every other aspect of this litigation. Then, once the parties know what documents are at issue, they should present the Court with their respective arguments regarding admissibility for the *A.R.* trial. Uber has also explained that it does not believe that withholding a small amount of documents—most of which involve litigation updates—should in any way affect its ability to present SAB-related evidence at trial.

Plaintiffs misread the Court's October 1, 2026 Order, suggesting that it somehow overruled and superseded the Court-ordered process for deciding privilege claims. It did not. The order at issue was a pretrial ruling on what evidence could be admitted at the *QLF-001* trial, which has since settled. It does not govern privilege assertions or clawback decisions for documents across the MDL. In fact,

the Court expressly declined to make any "judgment as to privilege determinations." The Order also does not require Uber to make any election, by a deadline or otherwise, about how it will assert privilege or present evidence at other bellwether trials, including the January *AR-002* trial. Uber therefore has not "refus[ed] to comply" with the Order, and there is no basis for Plaintiffs' proposed October 19, 2026 deadline.

Now that *QLF 001* has settled, Uber submits that the Court should proceed in two steps.

First, the Special Master should address disputes over whether the documents at issue were properly withheld/redacted. The Court appointed the Special Master to resolve "all disputes relating to privilege logs and the assertion of attorney-client and work product privileges in this MDL" ECF No. 2289 at 3, as amended by ECF No. 2302. Special Master Order No. 4 clearly enunciates a process for the parties to resolve any "challenges to Uber's privilege logs issued after May 7, 2025" (Section II) and "all clawbacks raised after the date of this order [May 6, 2025]" (Section III).

Second, once any privilege disputes are resolved, if Plaintiffs seek again to advance sword-shield arguments, they should present their arguments to the Court and the Court should review the relevant documents *in camera* and entertain argument on these issues. Uber strongly believes that the narrow set of privileged material does not implicate sword-shield issues and is prepared to present its arguments to the Court once any outstanding privilege disputes are addressed.

## VI. PENDING MOTIONS UNDER SUBMISSION FOR MORE THAN 120 DAYS

### A. Uber's position

Uber respectfully requests that the Court set a hearing date for Uber's post-trial renewed motion for judgment as a matter of law or alternatively for a new trial in *Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 23-cv-06708. On October 5, 2026, Defendants submitted a notice pursuant to Rule 7-13 identifying that the motion has been under submission for well over 120 days, and submitting that resolution of that motion is necessary for *Dean* to function as a bellwether trial in this MDL proceeding, and to enable any appellate proceedings to commence. ECF No. 7666.

As of September 3, 2026, the below motions have been under submission before this Court for more than 120 days.

| ECF # | Date Filed | Days Since Filing | Motion Description |
|---|---|---|---|
| 5520 | 3/13/2026 | 155 | Motion for Findings of Contempt and to Enforce Prior Court Orders |
| 5567 | 3/19/2026 | 152 | Motion to Convert Orders of Dismissal without Prejudice to Order of Dismissal with Prejudice |
| 5891 | 4/15/2026 | 125 | Motion to Dismiss Cases for Failure to Comply with Amended PTO 10 |
| 5914 | 4/17/2026 | 123 | Motion to Dismiss Cases for Failure to Comply with PTO 5 |
| 5915 | 4/17/2026 | 123 | Motion to Dismiss Cases for Failure to Comply with PTO 31 |

## VII. RESOLUTION / MEDIATION

The parties continue to meet with Special Master, Randi Ellis, to discuss the potential for resolution.

## VIII. NEXT CASE MANAGEMENT CONFERENCE

The Parties request that the Court set the next monthly Case Management Conference.

Dated: October 14, 2026

By: */s/ Laura Vartain Horn*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY & MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

Dated: October 14, 2026

By: */s/ Sarah R. London*

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I, Simon Grille, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: October 14, 2026

*/s/ Simon S. Grille*
Simon S. Grille