# KIRKLAND & ELLIS LLP

555 California Street
San Francisco, CA 94104
United States

Laura Vartain
To Call Writer Directly:
+1 415 439 1625
laura.vartain@kirkland.com

+1 415 439 1400

www.kirkland.com

Facsimile:
+1 415 439 1500

October 14, 2026

**VIA ECF**

Hon. Charles R. Breyer
United States Senior District Judge
U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*,
MDL No. 3084

Dear Judge Breyer:

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this letter brief to address the selection of future bellwether cases.

At this stage in the MDL proceeding, it is important to take stock of what has been achieved to date in the bellwether process—and what remains to be done. As the Court knows, the parties have now:

1. Tried a case to verdict under Arizona law involving vaginal penetration;

2. Tried a case to verdict under North Carolina law involving touching of a non-sexual body part; and

3. Worked up and settled a case, on the eve of trial, involving forced oral sex, under Texas law.

The parties are also preparing to try a case in January involving unwanted kissing, under California law.

Each of these cases has provided helpful information about the pool at large and helped advance resolution. Indeed, the parties have already settled approximately 1,000 cases in this proceeding and continue to work diligently on resolution efforts.

There are large swaths of the MDL pool, however, about which the parties know very little. The next round of bellwether selections should be used to explore those cases and better understand their merits and value. This approach will help ensure that the bellwether process provides the Court and parties with a reliable picture of the MDL pool as a whole. The parties have yet to test three categories of claims that collectively account for approximately half of the MDL inventory: (1) touching of a sexual body part over clothing; (2) masturbation and/or indecent exposure; and (3) touching of a sexual body part under clothing. Bellwether selection should also focus, at least to some extent, on state laws that have not yet been meaningfully tested in this proceeding.

Plaintiffs' proposal, by contrast, simply offers more of the same. On August 21, 2026, Plaintiffs submitted a letter to the Court (*see* ECF 7079) proposing a pool of 14 bellwether cases, nearly all of which involve allegations of rape and/or the involvement of law enforcement (like prior bellwethers)—and many of which arise under state laws that have already been examined in previous bellwether cases. Retesting this narrow subset of claims—and leaving nearly half the MDL inventory without bellwether guidance—will not meaningfully inform resolution of the broader MDL pool.

## I. UBER'S PROPOSED BELLWETHER POOL WILL PROVIDE VALUABLE INFORMATION NEEDED TO PROMOTE THE RESOLUTION OF THE LITIGATION.

Uber proposes a pool of 15 cases from 11 states, divided among three types of cases that together account for almost ***half*** (48.9%) of the MDL proceeding: Touching of a Sexual Body Part (Over Clothing) (21.8% of the MDL inventory); Masturbation or Indecent Exposure (17.4% of the MDL inventory); and Touching of a Sexual Body Part (Under Clothing) (9.7% of the MDL inventory). Uber's proposed pool is also diverse chronologically, including incidents that allegedly occurred between 2020 and 2025, and cases brought by nine different firms.

Uber's proposed cases are divided among the three categories roughly in proportion to the representation of these cases in the MDL pool.

Below are brief summaries of the proposed cases.

**<u>Touching of a Sexual Body Part (Over Clothes)</u> D.S. (3354) (Chaffin Luhana LLP) (Oregon):** This case arises out of a May 14, 2023 ride in Portland, Oregon. Plaintiff alleges that, during the ride, the driver pulled over and grabbed her breasts. This would be the first case to be tried under Oregon law, which applies to 46 active cases in the MDL.

1. **E.G. (1390) (Slater Schulman) (Florida):** Plaintiff's claims arise from a June 26, 2020 ride near Fort Lauderdale-Hollywood International Airport. Plaintiff alleges that the

KIRKLAND & ELLIS LLP



driver fondled and groped her buttocks as she entered the vehicle and also fondled and groped her buttocks and breasts at the end of the ride, after the driver removed Plaintiff's bags from the trunk of the vehicle. The Court has not yet selected a bellwether case involving Florida law, which is at issue in 361 active MDL cases.

2. **A.G. (1505) (Nachawati Law Group) (Alabama):** Plaintiff alleges that, during a guest ride on January 18, 2023 in Huntsville, Alabama, the driver verbally harassed her, attempted to grab Plaintiff's groin area, and became aggressive when Plaintiff resisted. The Court has not yet selected a bellwether case involving Alabama law, which applies to 51 active MDL cases.

3. **T.W. (3860) (Girard Sharp LLP) (Missouri)**: Plaintiff's claims arise from a December 17, 2024 ride in Kansas City, Missouri. Plaintiff alleges that, during the ride, the driver leered at her, made sexual comments to her, and grabbed her breast. The Court has not yet selected a bellwether addressing Missouri law, which is at issue in 81 active cases in the MDL proceeding.

4. **L.M.02 (4799) (Chaffin Luhana LLP) (Oklahoma):** Plaintiff's claims arise from a May 31, 2024 ride in El Reno, Oklahoma. Plaintiff alleges that the driver pulled over, saying he needed to check the tires, and then proceeded to open the back door and grab the Plaintiff's neck, breasts, thighs, and genitals before continuing to drive to the Plaintiff's destination. The Court has not selected a bellwether involving Oklahoma law, which applies to 69 active MDL cases.

5. **JLG 235 (4880) (Johnson Law Group) (Ohio):** Plaintiff's claims arise from a ride on August 6, 2025, in Cincinnati, Ohio. Plaintiff alleges that, as she was exiting the vehicle, the driver groped her and made sexual comments; Plaintiff reported this incident to Uber and the Cincinnati police later that same day. The Court has not yet selected a bellwether addressing Ohio law, which is at issue in 105 active MDL cases.

**<u>Masturbation/Indecent Exposure</u>Jane Doe NLG (C.N.) (2915) (Nachawati Law Group) (Florida):** Plaintiff's claims involve a May 14, 2024 ride in Arcadia, Florida. Plaintiff alleges that the driver made sexual remarks and asked Plaintiff if she would perform sex acts on him. Plaintiff alleges that, when she declined, he driver became angry, pulled behind a building, and began masturbating. Once finished, she alleges, the driver continued the trip and took Plaintiff to her final destination. As noted above, the Court has not yet selected a bellwether addressing Florida law.

1. **A.J. (3715) (Daly & Black, P.C.) (Virginia):** Plaintiff's claims arise from a ride on October 7, 2023 that originated at a bar in Falls Church, Virginia. Plaintiff alleges that, during the ride, the driver touched himself over his pants, asked Plaintiff inappropriate questions, and then pulled his penis out of his pants and started masturbating. Plaintiff alleges that she exited the vehicle once it came to a stop, before reaching her destination. The Court has not yet selected a bellwether addressing Virginia law, which is at issue in 97 active MDL cases.

2. **JLG 283 (5156) (Johnson Law Group) (Nevada):** Plaintiff's claims arise from an April 11, 2024 ride in Las Vegas, Nevada, that the Plaintiff's husband ordered for her. Plaintiff alleges that, when she entered the vehicle, she saw the driver masturbating with his penis outside of his pants. Plaintiff alleges that she exited the vehicle and retrieved her husband. According to Plaintiff, when they returned to the car, the driver had put his penis back into his pants. As noted, the Court has not yet selected a bellwether case involving Nevada law.

3. **B.R. 1470 (1470) (Cohen Hirsch) (Nevada):** Plaintiff alleges that, during a November 8, 2023 ride in Las Vegas, Nevada, the driver made inappropriate sexual comments about his penis and told the Plaintiff she could get a free ride if she gave him a handjob. The driver also allegedly exposed himself and masturbated in Plaintiff's presence. As set forth above, the Court has not yet selected a bellwether case involving Nevada law.

4. **JLG 221 (4610) (Johnson Law Group) (Texas):** Plaintiff's claims stem from a January 3, 2024 ride in Houston, Texas. Plaintiff alleges that, during the ride, the driver stared at Plaintiff in a sexual manner. She further alleges that the driver texted her photos of his genitals after the ride. Because *QLF 001* settled, there has not been a bellwether trial in Texas, which has 496 active MDL cases (more than 12 percent of the MDL pool).

5. **M.P. (1359) (Simmons Hanly Conroy) (New York):** Plaintiff's claims stem from a May 22, 2021 trip in Merrick, New York. Plaintiff alleges that the driver stopped at the intended destination, locked the doors, exposed himself, and began masturbating. The driver then forced himself onto Plaintiff, fondled her, and attempted to kiss her. The Court has not yet selected a bellwether case involving the law of New York, which applies in 287 active MDL cases.

**<u>Touching of a Sexual Body Part (Under Clothes)</u> S.A. (1369) (Cohen Hirsch) (West Virginia):** Plaintiff's allegations involve a March 21, 2023 ride in Dunbar, West Virginia, that

was arranged for the Plaintiff by a third party. Plaintiff alleges that, during the ride, the driver groped her between her legs and on her breasts, both over and under her clothing. The Court has not yet selected a case involving West Virginia law, which applies to 16 active MDL cases.

1. **LCHB 107 (1324) (Girard Sharp LLP) (Florida):** Plaintiff's claims arise from a March 15, 2024 ride in Port St. Lucie, Florida. Plaintiff alleges that, during the ride, the driver made sexual comments, pulled Plaintiff's shirt down, and stared at her chest. Plaintiff alleges she attempted to report the assault to Uber but could not find the correct way to do so in the app. As noted above, the Court has not yet selected a bellwether addressing Florida law.

2. **N.L. (4193) (Anapol Weiss) (New York):** Plaintiff claims that during an October 1, 2022 ride in Grand Island, New York, the driver made sexual advances toward Plaintiff. Plaintiff alleges that, when they arrived at the Plaintiff's home, the driver exited the car, reached under Plaintiff's dress and touched her vaginal area. Plaintiff also alleges that the driver insisted on walking Plaintiff to her door and tried to continue the assault inside her house, stopping only after Plaintiff's dog scared him away. The Court has not yet selected a bellwether case involving the law of New York.

In sum, under Uber's proposal, the Parties would work up and try cases from categories that have not yet been tested (even though they account for almost half of the MDL pool), while also addressing the laws of several states that have not yet been part of the bellwether process. This is the right path forward because it would provide the most helpful information and data for the ongoing resolution process.

## II. PLAINTIFFS' PROPOSED BELLWETHER CASES WILL NOT ADVANCE THE LITIGATION.

Plaintiffs' proposed bellwether cases, by contrast, will not serve the core purpose of bellwether trials: to produce outcomes that will provide meaningful information about the value of claims across the MDL proceeding and help achieve global resolution. This is because Plaintiffs' proposed bellwether cases involve alleged fact patterns and state laws that have already been vetted and addressed in this proceeding. Indeed, Plaintiffs' cases appear to have been selected not for their value to the bellwether process, but because they are likely to attract inflammatory and highly prejudicial press coverage.

*Plaintiffs' Cases Focus On Extreme And Uncommon Factual Circumstances*. Plaintiffs openly acknowledge that their proposed bellwether cases focus on a particular set of facts: those

involving a report to law enforcement,[1] a criminal investigation or conviction, a purported background check error or report(s) of interpersonal conflict on the Uber platform, and/or a supposedly problematic S-RAD score. These features are present in only a minority of MDL claims; yet, every case Plaintiffs propose involves at least one of these features and several include more than one. Thus, Plaintiffs' proposed slate of bellwether cases do not reflect the factual scenarios at issue in most MDL cases.

Trying Plaintiffs' proposed bellwethers would also do little to advance the MDL proceeding because many of the factual and legal issues at issue in Plaintiffs' proposed bellwethers have already been tested. For example, *QLF001* involved a law enforcement investigation of the driver that resulted in a criminal conviction, as well as prior reports against the driver and purported background check issues. The *AR* case, which is set for trial in January, will also focus on purported background check issues. Trying more cases with atypical fact scenarios will not meaningfully inform efforts at global resolution.

*Plaintiffs' Selections Fail To Focus On Common Types Of Cases Not Yet Addressed In The MDL.* Although Uber has already tried a non-consensual sexual penetration case (*Dean*)—and although these cases account for just 12.9% of the bellwether pool—Plaintiffs ask the Court to set 10 more such cases for trial. Meanwhile, and as noted above, the parties have not yet tried a single case within many other categories, including, most importantly: (1) Touching of a Sexual Body Part (Over Clothing) (which makes up 21.8% of the MDL inventory); (2) Touching of a Sexual Body Part (Under Clothing) (which makes up 9.7% of the MDL inventory); and (3) Masturbation or Indecent Exposure (which together make up 17.4% of the MDL inventory). Testing the same taxonomy repeatedly will not produce reliable valuations for the MDL pool at large.

*Plaintiffs' Cases Focus on State Laws Already Addressed.* A proper bellwether process tests claims under different states' laws. Yet, Plaintiffs' proposal includes two more Arizona cases, *Adorno ex rel. I.O.* (1025) and *A.D.* (5014). This makes no sense given that Arizona law was at issue in *Dean* and is relevant to just 2.7% of cases in the MDL at large. It is also contrary to

---

[1] In support of their bellwether proposal, Plaintiffs assert that focusing on cases in which alleged incidents were reported to law enforcement will obviate the need for the jury to decide whether an alleged incident actually occurred. ECF 7079 at 1. But the Court itself has acknowledged that fraudulent claims could make up as much as 30% of the MDL docket. Ex. 1 (8/24/2026 Hr'g Tr.) 9:14–12:22. In any event, the accuracy and quality of a Plaintiff's memory regarding how events transpired will always be relevant to the Plaintiff's alleged damages (and claim for punitive damages, where applicable).

Plaintiffs' argument that the final Wave 1 case, *LCHB 128*, would not be informative because the parties have already tried an Arizona case.

Notably, Plaintiffs do not propose any cases from Florida, even though 361 active MDL cases involve Florida law; nor do they include any cases governed by Nevada law, which applies to 218 cases in the MDL pool. By contrast, Uber's proposal focuses on these and other states' laws that have not yet been tested in this proceeding.

*Plaintiffs' Cases Appear Aimed To Attract More Media Attention.* Plaintiffs' proposal will also serve to fan the flames of inflammatory media coverage of this litigation by focusing on outlier claims that involve ultra-sensitive topics likely to attract press coverage. As the Court is aware, this litigation has been the subject of media coverage that has led to serious threats to the health and safety of Uber employees and attorneys. Such prejudicial media coverage can taint jury pools, as the Court has also acknowledged. *See* Ex. 1 (8/14/2026 Hr'g Tr.) 12:7-14:16. Likely for this reason, Plaintiffs have proposed bellwether cases that involve inflammatory allegations likely to spur more press coverage, including claims involving accusations regarding a driver's purported terroristic threats (*A.M.* (1301)), a driver's deportation issues (*L.M.* (6207)), and the alleged sexual assaults of a plaintiff who is "mentally disabled" (*R.M.* (5148)) and a plaintiff described as a "minor child" (*Adorno ex rel. I.O.* (1025)). These uniquely provocative issues would also skew trial outcomes, and would therefore fail to produce data points useful to evaluation for resolution of the litigation as a whole. To Uber's knowledge, there are no other cases in the MDL pool that involve terrorism-related allegations, and only one percent involve alleged assaults of minors.

Finally, it is worth noting that almost every one of the bellwether candidates proposed by Plaintiffs is represented by one of Plaintiffs' leadership firms. This is consistent with Plaintiffs' counsel's statement to Uber at a recent conferral that Plaintiffs' leadership would not choose a case as a bellwether unless the Plaintiff's firm agreed not to settle that case with Uber. It is inconsistent, however, with the goal of bellwether proceedings, which are designed to encourage resolution.

In short, Plaintiffs have assembled a trial lineup drawn entirely from a minority of the MDL pool and that present alleged factual scenarios and legal questions already addressed by the Court and the Parties in other bellwether cases. As a result, any verdict or other resolution of these cases would be of no use in evaluating the merit or value of the thousands of claims that do not involve these specific facts and legal theories.

For all of these reasons, the Court should adopt Uber's proposal.

Sincerely,

Laura Vartain Horn

cc: Counsel of record (via ECF)