GIRARD SHARP

**VIA ECF**

The Honorable Charles R. Breyer
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

RE: *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*, MDL No. 3084 CRB; Bellwether Selections

Your Honor:

Plaintiffs respectfully submit this response to Uber's belated letter proposing bellwether candidates and response to Plaintiffs' selections (ECF 7813). While Plaintiffs have not had time to perform a deep analysis of Uber's proposed selections, Plaintiffs get the gist of what Uber seeks to do, and urge the Court to reject Uber's approach entirely.

At this stage in the proceedings, what Uber lacks is a will to resolve cases globally. Plaintiffs' approach is the better one to drive global resolution, because it focuses on the common issues in this MDL: what Uber knew, when it knew it, and what it did regarding its serious problem with its drivers sexually assaulting passengers. It is only when these issues are foregrounded and pose reputational risks that Uber takes meaningful steps toward resolution. Uber's proposal is the opposite: it offers only wheel-spinning, delay, and needless expense. The parties already know that Uber will question every survivor's credibility and their own experience of harm, regardless of how severe or corroborated the assault. What the parties have not yet fully explored is whether and under what circumstances juries will find Uber's conduct negligent or deserving of punitive damages. Plaintiffs' proposal does precisely that.

Uber proposes to spend the parties' and the Court's resources working up and trying a series of cases in which Uber anticipates the Plaintiffs have other traumas that Uber can say obscures any harm caused by sexual assaults, many of which Uber has designated as "lower tier" injuries.[1] Uber wants the Court to focus its time on putting Plaintiffs' personal lives and pre-existing traumas on trial, even though it knows that these factors made them precisely the kind of people targeted by predators in the first place. All on the false, and frankly absurd, premise that the "Court itself has acknowledged that fraudulent claims could make up as much of 30% of the MDL docket." Ltr. at 6 n.1.

Uber's approach is unlikely to result in meaningful bellwether cases that use everyone's time and resources prudently. In *Mensing*, for example, the plaintiff, in evaluating the injury

[1] Like *L.M.* (4799), who has a history of drug charges, *E.G.* (1390), who was diagnosed with PTSD before the Uber ride, or *A.G.* (1505), which is a no-touch case.

asserted against the re-traumatization of a trial evaluating every detail of her complex life, chose to limit the scope of her claims and the damages sought. One could easily imagine the same type of choice made in many of Uber's proposed cases, depriving the parties of the benefit of juries' answers to important questions about Uber's conduct.

Uber claims that litigating these cases as bellwethers will inform valuation for settlement purposes. But Uber has already reached "inventory" settlements and picked off a bellwether, so the valuation of different types of incidents is no barrier to resolution. As the Court explained: "any case that has really minimal … damages… what is that going to tell us? … Everybody's got that information." 8/24/26 H'rg Tr. at 19:11-18. And the one defense pick tried—*Mensing*—did not promote resolution of even that firm's cases. Rather, that firm settled because it had trial dates set for several serious incident cases. *Mensing* itself was not even included in that resolution.

As Plaintiffs explained in their earlier letter (ECF 7079), their bellwether picks focused on cases that justify not only the time investments in the cases, but also the nature and scope of the attendant discovery. That is why Plaintiffs' picks would test different theories of negligence. And why many of those cases involve law enforcement because, as the Court saw in *QLF 001*, such cases are more likely to focus on Uber's conduct rather than whether an assault occurred. That is what bellwethers should do. *See* 10/31/25 H'rg Tr. at 5:19-6:1 (noting that a consent defense in a case "removes in some large measure its efficacy as a bellwether case"). Plaintiffs' proposed cases identify particular types of Uber's conduct with specific examples cited in their letter brief (ECF 7079). Other cases deserve trial dates and should receive them, but through an eventual remand process, not through intensive use of the Court's and leadership's limited time and resources.

Uber suggests that its bellwether picks appropriately target states with laws not previously tested through the bellwether process (notwithstanding that some, like Florida, were addressed at the Master Complaint stage). Plaintiffs' picks originated from a variety of states too, but jurisdictional diversity, by itself, misses the point. To the extent that resolving legal issues is the Court's priority, we do not need bellwethers to accomplish that goal. If the Court wants the parties to brief, for example, vicarious liability issues under Missouri law, that work can be done separate from the bellwether process.

Uber says that the Court should prioritize cases represented by non-leadership firms. *QLF 001* was a non-leadership case. While working that case to jury selection was a valuable use of time, ultimately the case resolved individually, confidentially, and without input from leadership. That type of settlement does not promote global resolution or help Plaintiffs understand what motivates Uber to resolve. Picking leadership cases ensures that leadership is involved in settlement negotiations, maximizing the chances of the global resolution that Plaintiffs and Uber have both said is the goal. *See* 9/8/2026 Hr'g. Tr. 13:13-15:21.

Finally, proportionality guardrails are needed if the Court includes any of Uber's selections in the next wave. These selections generally would not justify the kind of discovery the company has engaged to date defending bellwethers. The Court has said it wants bellwether cases tried as if they were individual cases pending in their home districts. But in any individual case, the assigned court would conduct a proportionality analysis of what discovery is appropriate. That same

analysis would have to be conducted here. In a case that looks like *Mensing*, no judge would allow what routinely happens in the MDL bellwethers: a dozen-plus depositions of friends and family, ESI and social media productions, etc. If the Court proceeds down the path Uber invites, then it would need to design a system where, if a Plaintiff elects to pursue garden-variety damages only (or something similar), then discovery is sharply circumscribed (1-2 depositions, limited medical authorizations, no ESI, etc.).

For these reasons, the Court should select bellwethers from Plaintiffs' proposed cases. These cases should be advanced to trial as expeditiously as possible, and grouped to ensure trials proceed even if Uber picks some off. Plaintiffs are prepared to submit a proposed grouping of cases by wave at the Court's convenience.

Respectfully,

Sarah R. London

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory identified above has concurred in this filing.

Dated: October 15, 2026

By: *<u>/s/ Andrew R. Kaufman</u>*
Andrew R. Kaufman