# EXHIBIT 6

Jamie Brown (Bar No. 022830)
**SHOOK, HARDY & BACON L.L.P.**
1 Rockefeller Plaza, Suite 2601
New York, NY 10020
(212) 989-8844
jabrown@shb.com

*Attorney for Defendants*
*Uber Technologies, Inc.*
*and Rasier, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC, RICKY ROSALES; and JOHN DOES 1-10;<br><br>Defendants. | Case No. 4:26-cv-00370-SHR<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Hon. Scott Rash<br>Courtroom: #5C (Deconcini Courthouse) |

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... ii

**TABLE OF AUTHORITIES** .......... iii

**I. LEGAL STANDARD** .......... 2

**II. ARGUMENT** .......... 4

**A. Permanent Resident Status of a Foreign Citizen or Subject is Not Relevant to Federal Jurisdiction Under 28 U.S.C. § 1332(a)(3).** .......... 4

***1. Case Law Supports Uber's Interpretation of Section 1332(a)(3), Not Plaintiff's.*** .......... 4

***2. The History of Congressional Amendments to Section 1332 Supports Defendants' Interpretation.*** .......... 7

***3. The Text of Section 1332(a) Supports Defendants' Interpretation.*** .......... 11

***4. The Legislative History of Section 1332(a) Supports Defendants' Interpretation.*** .......... 13

**B. Plaintiff Has Not Shown that Ricky Rosales Was Domiciled in Arizona at the Time of Removal.** .......... 14

**III. CONCLUSION** .......... 17

# TABLE OF AUTHORITIES

**Cases**


*Alaska v. Nat'l Marine Fisheries Serv.*, 171 F.4th 1145 (9th Cir. 2026) .......... 2

*Auctus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177 (D. Mass. 2022) .......... 6

*Ben-Haim v. New Israel Fund*, 2017 WL 3105879 (D.N.J. July 20, 2017) .......... 7

*Big3 LLC v. Al-Rumaihi,* 2018 WL 11470406 (C.D. Cal. Nov. 29, 2018) .......... 5

*Blanda v. Cisar*, 2021 WL 4305917 (D. Ariz. Sept. 22, 2021) .......... 15, 17

*Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003) .......... 4

*City of Flagstaff, v. Desert Mountain Energy Corp.*, 2026 WL 2211928 (D. Ariz. July 31, 2026) .......... 3

*Cumming v. Mohamed*, 2014 WL 4802634 (N.D. Cal. Sept. 26, 2014) .......... 5

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) .......... 4

*Foster v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2661608 (D. Ariz. Mar. 28, 2023) .......... 2

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) .......... 11

*Hodgson v. Bowerbank*, 9 U.S. 303 (1809) .......... 8

*Jackson v. Twentyman*, 27 U.S. 136 (1829) .......... 8

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88 (2002) .......... 8

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) .......... 15, 16

*Katebian v. Missaghi*, 2021 WL 2381690 (E.D. Mich. June 10, 2021) .......... 6

*Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48 (1954) (Frankfurter, J., concurring) .......... 11

*Montalet v. Murray*, 8 U.S. 46 (1807) .......... 8

*Mossman v. Higginson*, 4 U.S. 12 (1800) .......... 8

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) .......... 15

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987 (9th Cir. 1994) .......... 8, 11

*Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6 (1989) .......... 11

*Nouinou v. Smith*, 2021 WL 1199431 (S.D.N.Y. Mar. 30, 2021) ....................... 6

*One World, LLC v. Onoufriadis*, 2021 WL 184400 (S.D.N.Y. Jan. 19, 2021) ... 6

*Onoufriadis v. One World, LLC*, 2022 WL 2392968 (D. Mass. May 23, 2022) . 6

*Prem v. Wing Spirit Inc.*, 2022 WL 801338 (D. Haw. Mar. 16, 2022) ............... 7

*Saadeh v. Farouki*, 107 F.3d 52 (D.C. Cir. 1997) ............................................ 10

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ............................... 3

*Signature Fin. LLC v. Razikov*, 2020 WL 13120130 (M.D. Fla. July 9, 2020) . 6

*Singh v. Daimler-Benz AG*, 9 F.3d 303 (3d Cir. 1993) ........................... 8, 11, 12

*Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020) . 3

*Tides v. The Boeing Co.*, 644 F.3d 809 (9th Cir. 2011) ...................................... 3

*Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297 (9th Cir. 1985) ..... 8

*Tresco, Inc. v. Cont'l Cas. Co.*, 727 F. Supp. 2d 1243 (D.N.M. 2010) ................ 4

*Van Der Steen v. Sygen Int'l, PLC*, 464 F. Supp. 2d 931 (N.D. Cal. 2006) ....... 7

*W. Virginia v. Env't Prot. Agency*, 597 U.S. 697 (2022) .................................... 2

**Statutes**

18 Stat. 470, 470–71, §§ 2–3 (1875) .................................................................. 8

28 U.S.C. § 1332 ........................................................................................ *passim*

28 U.S.C. § 1332(a) (pre-2011 amendment version) ......................................... 9

28 U.S.C. § 1446 .............................................................................................. 3, 4

Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat. 758 (2011) ................................................................... 10

The Judicial Improvements and Access to Justice Act, Pub. L. 100-702, 102 Stat. 4642 (1988) .......................................................................... 9

The Judiciary Act of 1789, 1 Stat. 73 (1789) ..................................................... 8

**Rules**

Federal Rule of Civil Procedure 8(a) ................................................................ 4

**Treatises**

Wright & Miller, 13E Federal Practice & Procedure Jurisdiction § 3604 (3d ed.) ............................................................................................ 11

**Constitutional Provisions**

U.S. Constitution, Article III, § 2 .................................................... 1, 8

**Legislative History**

H.R. Rep. No. 100-889, 1988 U.S.C.C.A.N. 5982 (1988).................................. 11

H.R. Rep. No. 112-10, 2011 U.S.C.C.A.N. 576 (2011)..................................... 17

**DEFENDANT UBER TECHNOLOGIES, INC.
AND RASIER, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Plaintiff's Motion to Remand should be denied. Defendants Uber Technologies, Inc. ("UTI") and Rasier, LLC (collectively "Uber" or "Defendants") properly removed this case under 28 U.S.C. § 1332(a)(3), which unambiguously confers diversity jurisdiction here.

There are two provisions of the diversity jurisdiction statute at issue. Subsection (a)(2) provides jurisdiction over cases between "citizens of a State and citizens or subjects of a foreign state"—i.e., *alien-vs-citizen* or *citizen-vs-alien* cases. For its part, Subsection (a)(3) provides jurisdiction over cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties"—i.e., *citizen-vs-diverse-citizen-and-alien* cases like this one.

The diversity jurisdiction statute has been amended several times, often out of concern that it might permit jurisdiction over cases between foreign citizens without a U.S. citizen, exceeding the alienage jurisdiction permitted by Article III for "… Cases … between a State, or the Citizens thereof, and foreign States, Citizens or Subjects …." U.S. Const., Art. III, § 2. Since 2011, there has been a statutory carve-out from the jurisdiction provided under Subsection (a)(2) over cases between "citizens of a State and citizens or subjects of a foreign state." The carve-out provides: "...that the district courts shall not have original jurisdiction ***under this subsection*** of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State."

This jurisdictional carve-out appears only within Subsection (a)(2) and, by its express terms, limits jurisdiction only "under this subsection." Plaintiff's

Motion depends entirely on the unsupported theory that the carve-out applies to ***all*** of Section 1332(a). That reading contradicts the statutory text, the amendment history, legislative history, and every court to address the issue.

Plaintiff does not dispute that Defendant Ricky Rosales is ***not*** a U.S. citizen, and therefore not a citizen of Arizona. She does not dispute that there is complete diversity between her and the Uber defendants. Instead, she relies on the fact that Mr. Rosales was apparently, at some point, a lawful permanent resident and on her novel interpretation of Section 1332(a).

Because the statute is unambiguous, and Plaintiff's interpretation is incorrect—and because Plaintiff independently failed to establish that Mr. Rosales was domiciled in Arizona at the time of removal, the Court should deny the Motion and retain jurisdiction.

## I. LEGAL STANDARD

Article III courts are to exercise "independent judgment" on "questions of statutory interpretation." *E.g.*, *Alaska v. Nat'l Marine Fisheries Serv.*, 171 F.4th 1145, 1157 (9th Cir. 2026). "In determining the requirements of statutes, courts must begin with the text. When the text of a governing statute is plain, that is where the inquiry begins and ends." *Foster v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2661608, at *4 (D. Ariz. Mar. 28, 2023) (citation omitted). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022).

The proposition that jurisdictional and removal statutes should be strictly construed against removal, *see* Mot. at 3, 8, does not apply where a statute is unambiguous and does not require contorting a statute or adopting a strained reading. Nor does it require disregarding the normal rules and canons of statutory interpretation at every suggestion of an alternative

interpretation. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) (denying remand, despite strict construction, where "the text is unambiguous"). As Judge Lanza recently explained in addressing a novel issue of interpretation of the removal statute, 28 U.S.C. § 1446, courts "must 'turn to the statute's language to determine whether it has a plain meaning. … Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *City of Flagstaff, v. Desert Mountain Energy Corp.*, 2026 WL 2211928, at *4 (D. Ariz. July 31, 2026) (quoting *Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011)). He explained that, notwithstanding the strict construction of removal statues, "an issue of first impression is not tantamount to an issue shrouded in doubt" and adhered to the best interpretation of the "statutory terms." *Id.* at *6.

Moreover, the strict construction proposition recited by many courts traces back to a 1941 U.S. Supreme Court opinion, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, which the Court has subsequently clarified. In *Breuer v. Jim's Concrete of Brevard, Inc.*, the Supreme Court rejected an argument made in reliance on *Shamrock*'s strict construction principle, stating:

> [W]hatever apparent force this argument might have claimed when *Shamrock* was handed down has been qualified by later statutory development. At the time that case was decided, § 1441 provided simply that any action within original federal subject-matter jurisdiction could be removed. Fourteen years later, however, it was amended into its present form, requiring any exception to the general removability rule to be express. Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for

> removal, the burden is on a plaintiff to find an express exception.

538 U.S. 691, 697–98 (2003) (citation omitted). Courts should give a fair, reasonable interpretation to statutes like 28 U.S.C. § 1332, especially in the absence of serious ambiguity. "Strict construction and resolving doubts against removal does not mean the courts should be hostile to the Congressionally created right to removal." *Tresco, Inc. v. Cont'l Cas. Co.*, 727 F. Supp. 2d 1243, 1255 (D.N.M. 2010).

## II. ARGUMENT

The jurisdictional carve-out in 28 U.S.C. § 1332(a)(2) applies only to "th[at] subsection." Because Subsection (a)(3) independently confers jurisdiction where, as here, there is complete diversity between U.S. citizens (Plaintiff and the Uber defendants) and a foreign citizen (Mr. Rosales), Plaintiff's Motion should be denied.

### A. Permanent Resident Status of a Foreign Citizen or Subject is Not Relevant to Federal Jurisdiction Under 28 U.S.C. § 1332(a)(3).

#### *1. Case Law Supports Uber's Interpretation of Section 1332(a)(3), Not Plaintiff's.*

Plaintiff faults Defendants for not citing a "case where a named party was a lawfully admitted permanent resident domiciled in the same state as an opposing party, which holds that diversity jurisdiction is proper under 28 U.S.C. § 1332(a)(3)…," positing that Defendants "simply cannot" due to the "explicit textual bar in § 1332(a)(2). Mot. at 6. Plaintiff is wrong.

A Notice of Removal is akin to a pleading, not a legal brief—Plaintiff's critique misses the target. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *compare* 28 U.S.C. § 1446(a) *with* Fed. R. Civ. P. 8(a).

More importantly, Plaintiff's own Motion cites no case law supporting the proposition that the limitation in Subsection (a)(2)—expressly confined to "jurisdiction under this subsection"—also restricts jurisdiction under Subsection (a)(3).

Finally, the case law from courts that have addressed this issue overwhelmingly supports Defendants' position, not Plaintiff's. For example, in *Big3 LLC v. Al-Rumaihi*, the district court denied the plaintiffs' motion for jurisdictional discovery about the immigration status of a Qatari citizen defendant who allegedly lived in California. 2018 WL 11470406, at *2–*3 (C.D. Cal. Nov. 29, 2018). The plaintiffs were citizens of California and the defendants were citizens of Florida and Qatar. The court explained that permanent resident immigration status was not relevant under Section 1332(a)(3): "Unlike Section 1332(a)(2), ***Section 1332(a)(3) does <u>not</u> deprive federal courts of jurisdiction over cases involving foreign citizens who are domiciled in the United States***. Therefore, Al-Rumaihi's contacts with California have no bearing on whether this Court has subject matter jurisdiction." *Id.* (emphasis added).

In *Cumming v. Mohamed*, the district court held that there was jurisdiction under § 1332(a)(3). 2014 WL 4802634, at *1–*3 (N.D. Cal. Sept. 26, 2014). The court concluded the residence of Indian citizen defendants was irrelevant (despite potentially living in California and the plaintiffs being California citizens). *Id.* It explained that, after the repeal of the Deeming Clause (*see infra* § II(A)(2)), "under current law, the domicile of a foreign national is irrelevant for purposes of determining her citizenship under § 1332(a)(3)." *Id.* at *2.

In *Katebian v. Missaghi*, the district court considered whether the Canadian citizen plaintiff's permanent U.S. resident status would deem her a

U.S. citizen for purposes of establishing jurisdiction under § 1332(a)(3). 2021 WL 2381690, at *8 (E.D. Mich. June 10, 2021). Citing several cases, the Wright & Miller treatise, and Congress's 2011 repeal of the "Deeming Clause" in § 1332(a) (*see infra* § II(A)(2)), the court concluded the permanent resident status did not alter citizenship for purposes of diversity jurisdiction. *Id.* at *8, n.7.

Likewise, the district court in *Nouinou v. Smith* held that "[a] lawful permanent resident domiciled in a state remains an alien for purposes of diversity jurisdiction." 2021 WL 1199431, at *3 (S.D.N.Y. Mar. 30, 2021) (disregarding foreign citizen plaintiff's U.S. permanent resident status for purposes of diversity jurisdiction); *see also Auctus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177, 185 (D. Mass. 2022) ("Congress has abrogated the complete diversity rule for actions arising under Section 1332(a)(3). … [And c]onferring jurisdiction over actions [with diverse citizens and aliens on each side] does not contribute to the practical concern that parties may manufacture diversity jurisdiction by adding 'fake' parties."); *One World, LLC v. Onoufriadis*, 2021 WL 184400, at *13 (S.D.N.Y. Jan. 19, 2021) ("A lawful permanent resident domiciled in a state is not a citizen of that state—he is an alien for purposes of diversity jurisdiction. … As a citizen of Greece, [Defendant] Onoufriadis is an alien—not a citizen of Massachusetts…. His status as a lawful permanent resident does not alter that conclusion."); *Signature Fin. LLC v. Razikov*, 2020 WL 13120130, at *3 (M.D. Fla. July 9, 2020) ("The fact that an alien resides in the United States is not relevant for diversity jurisdiction; what matters for purposes of diversity is the alien's citizenship, not residency."); *Onoufriadis v. One World, LLC*, 2022 WL 2392968, at *1 (D. Mass. May 23, 2022) ("Plaintiff Onoufriadis is a citizen of Greece and is an alien for purposes of diversity jurisdiction. The plaintiff's

"status as a lawful permanent resident does not alter that conclusion."); *Ben-Haim v. New Israel Fund*, 2017 WL 3105879, at *2 (D.N.J. July 20, 2017) ("28 U.S.C. § 1332(a)(3) does not require complete diversity between parties that are citizens of foreign states so long as there is complete diversity between the parties that are citizens of different States.").

Plaintiff cites no case law to the contrary. The *Van Der Steen v. Sygen Int'l, PLC*, pre-dates the 2011 amendment to Section 1332 and discusses the Deeming Clause Congress repealed in 2011 (*see infra* § II(A)(2)). 464 F. Supp. 2d 931, 935 (N.D. Cal. 2006) (cited in Mot. at 7). In *Prem v. Wing Spirit Inc.*, the court correctly *disregarded* the plaintiff's permanent resident status, concluding that her foreign citizenship was what mattered for purposes of diversity jurisdiction. 2022 WL 801338, at *3 (D. Haw. Mar. 16, 2022) (cited in Mot. at 7–8). None of the cases Plaintiff cites support the proposition that the jurisdictional carve-out in Subsection (a)(2) applies to Subsection (a)(3).

Under the case law cited by Defendants—with no case law to the contrary cited by Plaintiff—Mr. Rosales's lawful permanent resident status and domicile are irrelevant to whether federal jurisdiction exists under 28 U.S.C. § 1332(a)(3).

### *2. The History of Congressional Amendments to Section 1332 Supports Defendants' Interpretation.*

The primary purpose of the 1988 and 2011 amendments was to avoid constitutional problems in the wording of the diversity jurisdiction statute, 28 U.S.C. § 1332. In light of this context, it makes sense that Congress did not impose the same restriction in Subsection (a)(3) as it did in Subsection (a)(2) in the 2011 amendments, because those constitutional concerns are not present when there is complete diversity between U.S. citizens and foreign citizens are "additional parties" to the case. *See, e.g. Singh v. Daimler-Benz AG*, 9 F.3d

303, 305 (3d Cir. 1993) (Article III requires minimal diversity for alienage jurisdiction); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) ("[P]ursuant to § 1332(a)(3) presence of aliens on both sides does not defeat diversity when citizens of United States on both sides who satisfy diversity requirement." (citing *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1298–99 (9th Cir. 1985)).

"Th[e] penchant of the state courts to disrupt international relations and discourage foreign investment" through bias against foreign parties "led directly to the alienage jurisdiction provided by Article III of the Constitution." *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 94–95 (2002). The Judiciary Act of 1789 initially permitted federal jurisdiction in any civil case where "an alien is a party." *See* 1 Stat. 73, 78–80, § 11–12 (1789). But the U.S. Supreme Court soon narrowly interpreted the statute, in order to avoid an unconstitutional conflict with Article III, Section 2, of the U.S. Constitution,[1] to ***not*** create federal jurisdiction over suits between foreign citizens with no U.S. party in the case, *i.e.*, unconstitutional alien-vs-alien cases. *See Jackson v. Twentyman*, 27 U.S. 136 (1829); *Hodgson v. Bowerbank*, 9 U.S. 303 (1809); *Montalet v. Murray*, 8 U.S. 46 (1807); *Mossman v. Higginson*, 4 U.S. 12 (1800). In 1875, Congress amended the jurisdictional and removal statutes to align with Article III. *See* 18 Stat. 470, 470–71, §§ 2–3 (1875).

In 1988, Congress made a number of amendments to federal jurisdiction, procedure, and administration,[2] including, among other things,

[1] "The judicial Power shall extend to all Cases, in Law and Equity … between a State, or the Citizens thereof, and foreign States, Citizens or Subjects …." U.S. Const, Art. III, § 2.

[2] *See, e.g.*, H.R. Rep. No. 100-889, at 44–45, 1988 U.S.C.C.A.N. 5982, 6005 (1988); *see also Singh v. Daimler-Benz AG*, 9 F.3d 303, 307–08 (3d Cir. 1993) (explaining that "[b]ecause the permanent resident alien provision was not

increasing the amount-in-controversy requirement and adding the "Deeming Clause" to Section 1332(a). *See* Judicial Improvements and Access to Justice Act, Pub. L. 100-702, 102 Stat. 4642 at 4646, § 203. The amendment "reflects the judgment that the rationale for alienage jurisdiction does not apply" in suits between a citizen of one state and a permanent resident of the same state. Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3604 (3d ed.). Thus, from 1988 to 2011, the old version of Section 1332(a) included the now-repealed Deeming Clause:

> **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> **(1)** citizens of different States;
>
> **(2)** citizens of a State and citizens or subjects of a foreign state;
>
> **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
>
> *For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.*

28 U.S.C. § 1332(a) (emphasis added) (pre-2011 amendment version).

The Deeming Clause soon proved to have unintended consequences. By its plain language, it would permit suits between a permanent resident alien citizen and another alien citizen—arguably in conflict with the constitutional

part of the bill at the time the House Report was written, and there was no Senate Report, there is only scant legislative history" and that "[n]othing in the [limited legislative history] supports [the] argument that the overall goal of the bill was 'to reduce diversity jurisdiction to relieve caseload pressures[,' instead t]he overall bill was clearly designed to improve federal court administration and efficiency….").

limits of Article III jurisdiction. *See Saadeh v. Farouki*, 107 F.3d 52, 58 (D.C. Cir. 1997) ("A literal reading of the 1988 amendment to § 1332(a) would produce an odd and potentially unconstitutional result.").

So, in 2011, Congress repealed the Deeming Clause. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat. 758, 758, § 101. In its place, Congress added a reworded provision with somewhat similar effect, but placed it *only* Subsection (a)(2) and confined its application to "this ***subsection***," *i.e.*, only Subsection 1332(a)(2), whereas the original Deeming Clause applied to "this ***section***," *i.e.*, all of Section 1332(a). 28 U.S.C. § 1332(a)(2) (emphasis added). The current, post-2011 amendment version of Section 1332(a) now reads:

> **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>
> **(1)** citizens of different States;
>
> **(2)** citizens of a State and citizens or subjects of a foreign state, *except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State*;
>
> **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a) (emphasis added).

Congress' choice to limit the jurisdictional carve-out to Subsection (a)(2), and not extend it to Subsection (a)(3)—suits with complete diversity between "citizens of different States" and where the foreign citizen is an "additional part[y]"—makes sense. First, while the primary rationale for alienage

jurisdiction, the risk of prejudice against foreign citizens, may not be present in suits between U.S. citizens and foreign citizens who are lawful permanent resident domiciled in the same state, the primary rationale for diversity jurisdiction *is* present in the situation presented by Subsection (a)(3). In such a case, there still exists the risk of "local prejudice in favor of the" home-state party against an out-of-state defendant, even if a foreign citizen is an "additional party." *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 11 (1989); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010) (noting that "prejudice against an out-of-state party" is the primary purpose behind diversity jurisdiction); *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54 (1954) (Frankfurter, J., concurring) (explaining that, among the "Framers and ratifiers, there was fear that parochial prejudice by the citizens of one State toward those of another, as well as toward aliens, would lead to unjust treatment of citizens of other States and foreign countries.").

Second, the constitutional concerns about alien-vs-alien suits that led to the repeal of the Deeming Clause are not present in cases where there is complete diversity between U.S. citizens and a foreign citizen is an additional party. *See, e.g.*, *Singh*, 9 F.3d at 305; *Nike, Inc.*, 20 F.3d at 991.

#### ***3. The Text of Section 1332(a) Supports Defendants' Interpretation.***

Plaintiff asserts that the statute's "plain text is clear," but provides little analysis of the text to support her position. *See* Mot. at 6. It's true, the statute *is* clear. But its text does not support Plaintiff's interpretation.

First, the jurisdictional carve-out in Subsection (a)(2) is a restriction on "jurisdiction under ***this subsection***." 28 U.S.C. § 1332(a)(2) (emphasis added). It does not purport to limit jurisdiction in any other subsection, such as Subsection (a)(3).

There can be no argument that the word "subsection" refers to all of 1332(a) rather than specifically 1332(a)(2), for several reasons. The now-repealed Deeming Clause, which actually *did* apply to all of 1332(a), defined its scope as "this ***section***," not "this ***subsection***." Referring to all of 1332(a) as a "subsection" rather than a "section" would be inconsistent with the language Congress used in the immediate prior version of the very same statute. The placement of the provision also confirms that "section" means 1332(a) and "subsection" is used to mean 1332(a)(2). In the old version of the statute, the Deeming Clause was placed at the very end of 1332(a), after subparts (a)(1) through (a)(4), *see supra* § II(A)(2), such that it clearly applied to all of 1332(a). This shows that the word "section" meant 1332(a) in the old statute. By contrast, Congress placed the new jurisdictional carve-out (enacted at the same time as repealing the Deeming Clause) *within* 1332(a)(2) rather than at the end of 1332(a) where the Deeming Clause had been, indicating that the word "subsection" means only 1332(a)(2), not all of Section 1332(a). Courts interpreted the Deeming Clause this way prior to its repeal. For example, the Third Circuit explained, prior to the 2011 repeal, that the Deeming Clause applied to all of 1332(a), not just 1332(a)(2), because it used the phrase "this section." *See Singh*, 9 F.3d at 310. By the same logic, the new jurisdictional carve-out applies only to Subsection (a)(2) because it uses the phase "this subsection."

Second, independent of the use of terms "section" and "subsection," the placement of the Deeming Clause and the new jurisdictional carve-out, respectively, confirm that the new provision does not apply outside of Subsection (a)(2). The Deeming Clause was placed at the end of Section 1332(a), separate and apart from all the subsections therein, clearly indicating that it applied to all of Section 1332(a). By contrast, the new provision is placed

within Subsection (a)(2), and not any of the other subsections—showing that it does not apply to Subsection (a)(3).

Third, Plaintiff's argument from the axiom that the specific controls over the general makes little sense. *See* Mot. at 8. Plaintiff argues that the specific rule that lawful permanent residents "domiciled in the same state as an opposing party … controls over a general rule otherwise set forth regarding non-citizens elsewhere in that same statute." Mot. at 8. If the jurisdictional carve-out in Subsection 1332(a)(2) was a separate, free-standing statutory provision not housed within a specific jurisdictional subsection and not expressly limited to "jurisdiction under this subsection," this argument might work. But this is not a case of two completely separate provisions where it is unclear how they intersect, requiring resort to the specific-controls-over-the-general canon. The provision is placed directly within Subsection (a)(2) and ***only*** that subsection. And the provision, by its plain text, only limits jurisdiction under "***this*** subsection."

The text of the statute is clear. The jurisdictional carve-out in Subsection 1332(a)(2) that "the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State" does not have any application to, or effect on, the independent grant of jurisdiction under Subsection 1332(a)(3).

#### ***4. The Legislative History of Section 1332(a) Supports Defendants' Interpretation.***

To the extent this Court considers the legislative history of § 1332(a), it strongly supports Defendant's interpretation, not Plaintiff's.

Plaintiff relies on a U.S. House of Representatives Judiciary Committee report for the Federal Courts Jurisdiction and Venue Clarification Act of 2011 that repealed the Deeming Clause. Plaintiff cites general language in the report about the purpose of the 1988 Deeming Clause and the purpose of the 2011 repeal to address potential constitutional problems with the clause, none of which directly addresses the issue here. *See* Mot at 7; *supra* § II(A)(2).

But what Plaintiff omits is the language in the paragraph immediately following the portion they quote. Referring to the addition of the jurisdictional carve-out to Subsection (a)(2), the report directly refutes Plaintiff's interpretation and explains that the new provision does not apply to Subsection (a)(3):

> By attaching this modest restriction ***only to paragraph 1332(a)(2)***, the amendment would permit resident aliens to appear as additional parties to disputes under paragraph 1332(a)(3), ***without their status as deemed U.S. citizens of their state of residence being treated as a basis for either establishing or defeating the diversity of U.S. citizenship*** that grounds jurisdiction under this provision.

H.R. Rep. No. 112-10, at 7-8, 2011 U.S.C.C.A.N. 576, 580 (2011) (emphases added). Thus, the legislative history adopts the same view as Uber advances here and directly contradicts Plaintiff's interpretation.

### B. Plaintiff Has Not Shown that Ricky Rosales Was Domiciled in Arizona at the Time of Removal.

Determining Mr. Rosales's domicile is not necessary to deny the Motion because he is, as Plaintiff does not dispute, ***not*** a U.S. citizen. Therefore, as explained above, even if Mr. Rosales holds (or held at some point) a "green card" for lawful permanent residence, his immigration status is not relevant to

jurisdiction under 28 U.S.C. § 1332(a)(3). *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("28 U.S.C. § 1332(a)(3) … confers jurisdiction in the District Court when a citizen of one State sues both aliens and citizens of a State (or States) different from the plaintiff's. In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State."). However, even under the jurisdictional carve-out in 28 U.S.C. § 1332(a)(2), a lawful permanent resident must be domiciled in the same state as an opposing party, here, Plaintiff's state of Arizona.

"A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "The proper test to determine diversity is to look at the parties' citizenship at the time of removal." *Blanda v. Cisar*, 2021 WL 4305917, at *2 (D. Ariz. Sept. 22, 2021).

Plaintiff points to Mr. Rosales' Arizona driver's license, associated Arizona addresses, vehicle registration in Arizona, and Facebook photographs suggesting he was married around 2020. *See* Mot. at 5; Dkt. 7-1. On closer review, this evidence falls short of establishing that Mr. Rosales's domicile was Arizona. Therefore, Plaintiff's argument fails even under § 1332(a)(2) and her Motion should be denied for this independent reason.

First, the photographs Plaintiff obtained from Facebook suggest Rosales was married in 2020. They do not suggest *any* connection to Arizona at that time. Plaintiff's counsel do not claim that the photos were taken in Arizona or that they show that he or his wife lived in Arizona at the time.

Second, Plaintiff cites the fact that Arizona addresses have been associated with Mr. Rosales in the background report obtained by Uber's counsel and cited in the Notice of Removal. But as set forth in the Notice of

Removal, he has also been associated with addresses in California. *See* Dkt. 1 ¶¶ 13–14. Mr. Rosales appears to have lived outside the United States, then in Yuma, Arizona, for a brief time, then in San Bernardino County, California, for a few years, then in Tucson, Arizona, for a short period. The Tucson addresses in the background report are dated to 2025 at the earliest.

Mr. Rosales also held a California driver's license issued in 2021 and only obtained an Arizona license in 2025; his Arizona vehicle registration is likewise dated to 2025. *See id.* Similarly, the protective order issued against him in Arizona listing an Arizona address only dates back to 2025. Prior to 2025, Mr. Rosales' geographic area as an independent driver on the Uber platform was in Southern California. The alleged sexual assault occurred in January 2026, less than a year after the earliest records tying Mr. Rosales to Arizona. Dkt. 1, ¶ 1.

Third, Plaintiff alleges that, after the sexual assault, Mr. Rosales—whose permanent resident card produced by Plaintiff (Dkt. 7-1 at 4) states he is from the Philippines—fled the United States. *See* Dkt. 1-3 at 22, ¶ 83.

In sum, the available information shows that Mr. Rosales was born in the Philippines, came to the United States around 2020 or 2021, briefly lived in Yuma, Arizona, resided in California for several years, spent less than one year in Tucson, Arizona, and then fled the country approximately 6 months before this case was removed to federal court on July 23, 2026. This does not establish that Arizona is Mr. Rosales' "permanent home" or that he "intends to return." *Kanter*, 265 F.3d at 857. To the contrary, the fact that he has fled the United States—possibly to the Philippines—to avoid criminal prosecution supports the inference that he does not consider Arizona his home and does not intend to return. Domicile is determined as of the date of removal, not the date of the underlying incident. *See Blanda*, 2021 WL 4305917, at *2.

## III. CONCLUSION

For the reasons set forth above, Uber respectfully asks the Court to deny the Motion and retain jurisdiction.

Date: August 24, 2026

Respectfully submitted,

**SHOOK, HARDY & BACON, L.L.P.**

By: */s/ Jamie Brown*

Jamie Brown (Bar No. 022830)
**SHOOK, HARDY & BACON, L.L.P.**
1 Rockefeller Plaza, Suite 2601
New York, NY 10020
(212) 989-8844
jabrown@shb.com

*Attorney for Defendants Uber Technologies, Inc. and Rasier, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing Opposition to Motion to Remand with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. I further certify that a true and correct copy of the Opposition to Motion to Remand was served via electronic mail upon or U.S. mail on all parties not registered to receive CM/ECF notice:

**THE LEADER LAW FIRM**
John P. Leader, Esq.
405 West Cool Drive Suite 107
Tucson, AZ 85704
john@leaderlawaz.com
Phone (520) 575-9040
Fax (520)575-9340

*Attorney for Plaintiff*

**MOTLEY RICE, LLC**
Carmen S. Scott
Laura K. Stemkowski
Jessica F. Tallant
28 Bridgeside Blvd
Mount Pleasant, SC 29464
cscott@motleyrice.com
Phone: (843) 216-9160
Fax: (843) 216-9430

*Attorneys for Plaintiff*

Alexandra A. Stulpin
**MOTLEY RICE, LLC**
1717 Arch Street
Suite 3610
Philadelphia, PA
astulpin@motleyrice.com
Phone: (267) 267-4742
Fax: (267) 267-4759

*Attorney for Plaintiff*

Ricky Rosales
*Last known address:*
2800 S. Mission Rd., Apt. 11102,
Tucson, AZ 85713-3185

*Defendant*

*/s/Jamie Brown*
Jamie Brown (Bar No. 022830)

*Attorney for Defendants*
*Uber Technologies, Inc. and*
*Rasier, LLC*