GIRARD SHARP

October 23, 2026

**VIA ECF**

The Honorable Charles R. Breyer
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

RE: *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*, MDL No. 3084 CRB; Bellwether Waves

Your Honor:

Plaintiffs respectfully submit the attached proposed order setting additional bellwether trial waves. The three waves include 13 new bellwether cases (*see* ECF 7079), along with three cases that were included in the earlier bellwether pool (*LCHB128*, *C.L.*, and *T.R.*). These groupings have been designed to meet the Court's goals of trying a range of negligence theories, minimizing resources spent on unique plaintiff credibility issues, and advancing efficiency by grouping multiple plaintiffs from a single state into one wave to increase likelihood of using an available courtroom in the event a case settles.

Plaintiffs also respectfully request that the Court reconsider two decisions: (1) to transfer cases for trial based on Uber's forum selection clause and (2) to try bellwether cases individually. *First*, even where a valid forum selection clause exists, courts may deny a motion to transfer based on public-interest factors, including the burden on the courts. *See Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. Of Texas*, 571 U.S. 49, 64 & n.6 (2013). The bellwether process to date has imposed substantial burdens on this Court to travel and the remand courts to host. Those burdens were more justified when it was likely that bellwether cases would be tried. Now that Uber has demonstrated readiness to settle bellwethers individually on the eve of trial, those expenses are disproportionate to the needs of the case. Also, if Uber settles a bellwether, the litigation demands that another be ready for trial promptly, which is much harder for the Court to arrange when venue is scattered. *See*, *e.g.*, *id.* at 62 n.6 (court may consider "the administrative difficulties flowing from court congestion"); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344-45 (Fed. Cir. 2010) (approving order denying transfer based on "judicial economy considerations" even when "all of the convenience factors clearly favor transfer"). At minimum, the Court should reconsider whether it will transfer cases like *QLF 001* where there is no valid forum selection clause (for example, the *T.R.* case in which the plaintiff was a minor, *see* PTO 29 at 13).

*Second*, the Court should reconsider its decision to try bellwether cases individually. As both sides have acknowledged, one purpose of bellwether cases is to push the parties towards resolution or give them tools to make resolution easier. It follows that more data is better than less.

Consolidated trials (for example, of the two Washington cases proposed for Wave 2 below) would advance the MDL's goals more efficiently, especially given that it now seems that many more trials will be required before the MDL resolves.

**Wave 2**

The first group (Wave 2) includes four cases that present a range of negligence theories and also involve law enforcement activity (criminal charges or convictions), making it most likely that trial will focus on Uber's alleged negligence and not on whether the incident occurred. Three of the four cases stem from incidents in states where the Court has not yet analyzed the law: Washington and New Jersey.[1] The fourth case is a North Carolina case, but the Court has not yet tried a North Carolina bellwether raising negligence claims.

Below, a table indicates the following information:

- Case name
- State
- Vicarious liability claims potentially available (ECF 6439)
- Whether the Court addressed the state's law in earlier Rule 12 or Rule 56 rulings (including where the parties stipulated on the applicability of the Court's orders, ECF 1932)
- Whether the case was in the original bellwether pool (and so has completed some fact discovery)
- The law firm that represents the plaintiff (along with a star indicating that firm is on the Plaintiffs' Steering Committee).

Following the table are case descriptions for the bellwethers.

| CASE | STATE OF ASSAULT | DATE OF ASSAULT | V.L. CLAIMS | ADDRESSED BY COURT | ORIG. BELLWETHER | LAW FIRM (PSC) |
|---|---|---|---|---|---|---|
| *G.C.* | WA | 10/27/2024 | Common Carrier | No | No | Anapol Weiss* |
| *C.I.* | WA | 4/1/2023 | Common Carrier | No | No | Peiffer Wolf* |
| *J.J.01* | NC | 7/20/2025 | Common Carrier | Yes | No | Chaffin Luhana* |
| *A.M.1* | NJ | 6/10/2022-6/11/2022 | Common Carrier | No | No | Girard Sharp* |

**G.C. (3369):** G.C. was sexually assaulted in Seattle, Washington by an Uber driver in the early morning hours of October 27, 2024. G.C. began the ride in the backseat, but the driver demanded that she move to sit in the front seat. He began groping her legs, prying them apart,

[1] Plaintiffs' earlier letter misidentified this case (*A.M.1*, No. 3:24-cv-01732) as a New York case.

and asked her to have sex (Plaintiff refused). The driver pulled over into an empty parking lot, parked the vehicle, and continued groping Plaintiff's legs, breasts, and groin. He then forcibly kissed her while forcing her hands onto his penis. The assault was reported to the police, and the driver's criminal trial is set for September 29, 2026. G.C.'s ride involved numerous factors that Uber knows are associated with a high risk for assault. It was a late-night ride involving an intoxicated female passenger and a driver who diverted the ride into an isolated location before the assault.

**C.I. (5004):** On the morning of April 1, 2023, C.I. ordered a ride from Kent, Washington to Covington, Washington. While in the car, C.I. fell asleep and woke up to the driver penetrating her. The incident was reported to Uber and Law Enforcement the following day. It appears that Uber re-activated the driver after the Plaintiff's report.

**J.J.01 (5480):** On July 20, 2025, J.J.01 was sexually assaulted, just after 3:00 a.m. in Wake County, North Carolina. She was intoxicated and fell asleep in the car. The driver groped her breasts and legs during the ride. When the vehicle reached the destination, he entered the backseat of the vehicle, took her phone away from her, held her in place with his bodyweight, and digitally penetrated her in the back of the car. Before her let her leave the vehicle, the driver made her repeat after him that she was drunk, "wanted it," and that it was her fault for being in an Uber ride by herself. The driver was arrested on felony charges of Second Degree Forcible Sex Offense and First Degree Kidnapping; the criminal case is pending. The S-RAD score of the ride was 0.88.

**A.M.1 (1301)**: Overnight between June 10 and June 11, 2022, Plaintiff A.M.1 ordered an Uber in Bayonne, New Jersey to take her home from a friend's house. The driver went off route, pulled over and sexually assaulted the Plaintiff, forcing her hand onto his penis and his penis into her mouth. Plaintiff reported the incident to Uber and to law enforcement. Despite an outstanding 2021 arrest warrant for terroristic threats and assault, Uber allowed the driver—who joined the platform in 2020—to continue driving.

**<u>Wave 3</u>**

The second group (Wave 3) similarly presents different negligence theories and some criminal convictions, but includes cases from states where the Court has already tried or nearly tried bellwethers—Arizona (two cases) and Texas (two cases). Wave 3 also includes two Pennsylvania cases (one of which, *T.R.,* was in the original bellwether pool). The Court has addressed Pennsylvania law at the motion-to-dismiss stage, but has not yet tried a Pennsylvania bellwether.

| CASE | STATE OF ASSAULT | DATE OF ASSAULT | V.L. CLAIMS | ADDRESSED BY COURT | ORIG. BELLWETHER | LAW FIRM (PSC) |
|---|---|---|---|---|---|---|
| *M.O.* | PA | 9/13/2024 | None | Yes | No | Peiffer Wolf* |
| *T.R. (A.R.1)* | PA | 3/13/2023 | None | Yes | Yes | Chaffin Luhana* |
| *Adorno* | AZ | 9/7/2022 | Apparent Agency | Yes | No | Peiffer Wolf* |
| *LCHB128* | AZ | 6/28/2024 | Apparent Agency | Yes | Yes | Girard Sharp* |
| *L.S.* | TX | 1/19/2025 | None | Yes | No | Guerra* |
| *L.M.* | TX | 7/27/2024 | None | Yes | No | Guerra* |

**M.O. (5499):** On September 13, 2024, Plaintiff M.O. ordered an Uber from Philadelphia, PA to Villanova, PA, where she was a university student. Plaintiff was not feeling well and decided to return to her dorm room and not go out for a friend's birthday. When the driver arrived at the destination, he followed Plaintiff into her dorm room and raped her. The driver then found an RA to help him obtain a $150 "fee" for a mess Plaintiff had left in his car, which she provided through a crack in her dorm door before asking the RA to make the driver leave. The assault was reported to law enforcement and Uber. The driver pled "no contest" and is incarcerated for the rape.

**T.R. (1299):** On March 13, 2023, Plaintiff, a minor, requested an Uber ride home from her workplace at night. The driver had previously given Plaintiff his phone number and asked her to call him if she needed a ride. Plaintiff never called him. Uber dispatched the same driver to Plaintiff again, Plaintiff got into the car, hoping the driver did not remember her. Shortly after the ride started, the driver insisted Plaintiff sit in the front seat. The driver started groping Plaintiff's inner thighs and interlocking his and Plaintiff's hands together to try to hold hands. When the vehicle pulled up to Plaintiff's house, the driver grabbed Plaintiff and kissed her forcibly on the lips. Prior to the incident, Uber had received multiple reports of inappropriate comments by the driver.

**Adorno (1025):** On September 7, 2022, Mr. Adorno ordered an Uber ride for his daughter, I.O. from a school to their residence in Phoenix, Arizona. The Uber driver enticed the minor child to consume drugs he had with him in his vehicle. The driver then took the minor child to an alley and raped her, taking her virginity. The incident was reported to the police, the driver's DNA matched a sample taken from Plaintiff during the investigation, and ultimately the driver was convicted of the assault and is serving time in prison. The driver was noted to have two prior felony convictions and three misdemeanor convictions before raping I.O including records of dangerous criminal activity in 2021.

**LCHB128 (2589):** Plaintiff LCHB128 was sexually assaulted on June 28, 2024, in Maricopa County, Arizona after 10:30 p.m. The driver convinced Plaintiff to move into the front

seat. Once on the freeway, the driver freely groped Plaintiff until the vehicle arrived at her destination. Uber disregarded, and failed to disclose to LCHB128, numerous reports of driver misconduct, including one credible report of aggressive sexual propositioning and unconsented parking of the vehicle. Uber ignored that the driver had an incomplete background check and paired the ride despite multiple known risk factors, including late-night ride, origination from a restaurant, a longer ride, and a previous report of sexual misconduct.

**L.S. (3352):** On January 19, 2025, Plaintiff L.S. ordered an Uber from a bar after a wedding to her family's home in Corpus Christi, Texas. The driver then went off route and pulled over at a park where he raped her. Plaintiff reported the incident to law enforcement and Uber and a criminal trial against the driver is set for fall 2026. The driver allegedly told the Plaintiff that he had engaged in prior off-route activity before the subject incident.

**L.M. (6207):** On July 27, 2024, Plaintiff ordered an Uber in Houston, Texas to go home from a birthday party. During the ride, the driver stared and leered at Plaintiff until they arrived at her destination. Once there, the driver jumped out of the car and followed Plaintiff, forcing himself into her building. He attacked Plaintiff, digitally penetrating her, and kissing her. When other people came into view, he ran away. Plaintiff had bruises on her neck and body and reported the incident to the police. It's Plaintiff's understanding the driver was arrested by ICE and has been deported, meaning he should not have been on the platform at the time of the assault given he was not able to work in the United States.

**Wave 4**

The third group (Wave 4) again includes different negligence theories, but includes cases lacking law enforcement activity or where state law may limit damages. These states include Illinois, Indiana, Virginia, Maryland/Virginia, and Tennessee.

| CASE | STATE OF ASSAULT | DATE OF ASSAULT | V.L. CLAIMS | ADDRESSED BY COURT | ORIG. BELLWETHER | LAW FIRM (PSC) |
|---|---|---|---|---|---|---|
| *B.L.* | IL | 7/28/2023 | None[2] | Yes | No | Chaffin Luhana* |
| *L.B.* | IN | 10/13/2023 | None | No | No | Simmons Hanly* |
| *A.M.2* | VA | 12/30/2022 | Employee | Yes | No | Peiffer Wolf* |
| *C.L.* | MD/VA | 8/28/2023 | Common Carrier (MD), Employee (VA) | Yes (VA), No (MD) | Yes | Clarkson* |

[2] Illinois cases arising after January 1, 2024 have viable common carrier claims. This case arose on July 28, 2023.

| | | | | | | |
|---|---|---|---|---|---|---|
| *R.M.* | TN | 10/1/2025 | Common Carrier | No | No | Anapol Weiss* |

**B.L. (3077):** On July 28, 2023, B.L. was sexually assaulted during a ride between 11:10 p.m. and 12:50 a.m. in Chicago, Illinois. She had been drinking, and it was raining. The driver asked her to sit in the front seat and offered a shirt for her to dry off with. He groped her inner thigh and forcefully kissed her multiple times. The driver deviated from the route, extending the time of the ride. The driver had two prior sexual misconduct reports of asking for rider phone numbers, and making sexual remarks and rubbing a rider's leg, but Uber did not deactivate him. The driver continued on the Uber platform until this lawsuit was filed, receiving four additional incident reports after this assault, including a sexual misconduct report that was not denoted due to insufficient information. The S-RAD score of the ride was 0.81.

**L.B. (4074):** On October 13, 2023, L.B ordered an Uber for a trip to CVS in Anderson, Indiana. The driver requested that the Plaintiff drive the car and indicated that he had some sort of disability. While she drove, he showed her inappropriate messages on his phone and then grabbed her breast. She has photos of the messages and the driver, eliminating any doubt that they were given to her during the trip, and reported the incident to the police. Earlier that year, the driver's account status log showed notations that appear to indicate fraud and platform abuse, Furthermore, two days before the assault another passenger noted that the driver was in the passenger seat with an older woman doing the actual driving.

**A.M.2 (2579):** On December 30, 2022, Plaintiff ordered an Uber in Stafford, VA to Fredericksburg, VA. The driver went off route, pulled over and locked the doors and touched Plaintiff's vagina. He then masturbated the rest of the ride until he dropped her off only after she threatened to have the police called. The ride had an S-RAD score of 0.89 and was marked as a "holdout," meaning Uber intentionally allowed the ride to proceed despite the high score. The driver also had two prior incidents reported against him in 2022 by other Uber passengers including a solicitation of a sexual act on November 7, 2022, and a report for explicit comments on September 18, 2022.

**C.L. (1206):** On August 28, 2023, Plaintiff C.L. was picked up by an Uber driver from Dulles airport around 9:14 AM. During the ride, the driver started moaning and rubbing himself before reaching into the backseat and touching Plaintiff between her legs under a blanket that was on her lap. Uber had received multiple complaints concerning the driver's misconduct before the incident, including a prior report of sexual harassment that was not investigated.

**R.M. (5148):** On October 1, 2025, R.M., a mentally disabled 27-year-old resident of Nashville, TN, was sexually assaulted by a driver Uber sent to give her a ride. R.M. had taken an Uber to a smoothie cafe with a friend, and the same driver who drove them there picked her up when she ordered an Uber to take her home. As they neared R.M.'s home, the driver parked at the back of the parking lot at the requested destination and got into the backseat, where he forced Plaintiff to touch his penis and forced his fingers inside her vagina. He attempted to follow her into her home, but she was able to get away. The assault was immediately reported to Uber and to the police. A criminal investigation is pending.

**<u>Schedule</u>**

Plaintiffs propose that the Court order the parties to propose a schedule for each wave that would have Wave 2 ready for trial in Spring 2027, Wave 3 in Summer 2027, and Wave 4 in Fall 2027. Plaintiffs further propose that the Court require an early 26(f) conference in each case and that the parties be ordered to file a report that includes their respective positions on discovery limitations and appropriate protocols for case-specific discovery, as well as any stipulations that may narrow the issues for trial.

Finally, Uber has argued that the Court should pick bellwethers that implicate state laws that the Court has not yet analyzed. Uber's position ignores much of the work the Court and the parties have done (for example, Florida law has been litigated in this MDL, *see* PTO 18). But if there are cross-cutting legal issues that should be decided in one or more states not included in the bellwether pool, then the parties can brief those issues outside of and concurrently with the bellwether process.

Respectfully,

Sarah R. London

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com
*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory identified above has concurred in this filing.

Dated: October 23, 2026

By: */s/ Andrew R. Kaufman*