*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR OCTOBER 29, 2026 DISCOVERY STATUS CONFERENCE**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**<u>JOINT STATUS REPORT</u>**

In advance of the discovery status conference set for October 29, 2026 at 9:00AM PST Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), respectfully submit this Joint Status Report.

## I. <u>PTO 8 Letter Briefs:</u>

Plaintiffs produced additional case-specific documents for the first time on October 12, 2026. Uber is evaluating the need for PTO 8 letter briefs in light of Plaintiff's continued late productions.

## II. <u>Production of all invoices from Dr. Mechanic related to all Wave 1 cases</u>

**Defendants' Position:** Dr. Mindy Mechanic evaluated four bellwether plaintiffs in the MDL (Dean, BL, AR, and LCHB128) and submitted her opening reports in September 2025. Uber requested her invoices related to all work she did on each of these cases. Despite that, no invoices or other billing documentation were provided by Dr. Mechanic or plaintiffs' counsel for any case until April 2026. Defendants again requested that she provide invoices or billing information in advance of the Dean trial in early 2026. Neither Dr. Mechanic nor plaintiffs' counsel provided any billing or invoice documentation of any kind before or even *during* the *Dean* trial. At the trial, she could not provide an estimate of how much money she would be paid for the *Dean* case other than admitting she got paid a $5,000 retainer. *See* 1/26/2026 Dean PM Trial Tr. 1973:23-25, 1974:4-5 ("Q. And how much have you made on Ms. Dean's case? A. I haven't invoiced yet."); *see also id.* 1974:14-18 (testifying she could not say how much she will get paid). There was no testimony at trial about how much time she spent on the *Dean* case either. Four months later, Defendants once again requested that she provide invoices for the bellwether plaintiffs. This time, Dr. Mechanic finally complied (albeit months late) and provided spreadsheets for A.R., BL, and LCHB128 but refused to provide the same for Dean. Defendants appropriately requested the invoice or billing information for Dean on the record. *See* 4/11/2026 Mechanic Dep. 26:6-27:12. To date, Defendants have still never received any invoices or billing information for Dr. Mechanic's time on the Dean matter. All experts other than Dr. Mechanic have produced billing material for each case in which they have been retained and Plaintiffs have provided no justification for her failure to produce this information as to the *Dean* case. Simply put, this material should have been produced over a year ago and is highly relevant to Dr. Mechanic's bias and motive for any testimony she may provide at the upcoming *AR* trial.

**Plaintiff's Position:** Dr. Mechanic produced time logs and testified regarding her hourly rates for document review, evaluations, drafting reports, and deposition and trial testimony. Any remaining invoices related to Plaintiff AR2 will be produced shortly.

**III. <u>Improper instructions not to answer regarding rideshare use</u>**

**Defendants' Position:** During preparation for the QLF-001 trial, Plaintiff's counsel instructed several expert witnesses not to answer questions about their personal rideshare use or their families rideshare use, citing a supposed "court order" prohibiting such questions at depositions. *See* 2026.09.21 Lebowitz Dep. Tr. at 70:1-5; 2026.09.10 Tremblay Dep. Tr. at 22:9-23:7. To be clear, no such order exists. While it is correct that Judge Breyer granted Plaintiff's motion *in limine* seeking to exclude evidence or argument about personal Uber use by counsel, witnesses, or their family or friends at the Dean trial, that ruling – in no way – provides a valid legal basis to instruct a witness not to answer any such questions. *See Mendez v. R+L Carriers, Inc.,* 2012 WL 1535756, at *1 (N.D. Cal. Apr. 30, (2012) (instruction not to answer permitted only to preserve privilege, enforce a court-ordered limitation on discovery, or present a Rule 30(d)(3) motion for bad-faith, annoying, embarrassing, or oppressive questioning).

First, a motion *in limine* ruling is simply not a proper basis to instruct a witness not to answer a question. The Federal Rules of Civil Procedure contemplate the scenarios under which a witness can be instructed not to answer, and this Court has ruled that such instructions must be supported by an order "reflect[ing] a determination that information should not be revealed." *See* ECF No. 6935 at 2-3. That is not what Judge Breyer's motion *in limine* ruling did. Rather than foreclosing Uber from presenting evidence of a witness's rideshare usage altogether, he explicitly stated: "Now, I will give you this: If you think that there's a particular witness where that question is relevant, let me know and I'll revisit this issue." 2026.01.06 Dean Pre-Trial Tr. at 73:21-23. And in fact, during the *Dean* trial, Uber explained to Judge Breyer why it thought these questions were relevant as to one of Plaintiff's expert, Dr. Valliere, and Judge Breyer permitted Uber to cross examine her about her continued use of Uber and Lyft after being hired as an expert witnesses. *See* 2026.01.16 Dean Trial Tr. 857:20-858:1. In order to be able to follow the process laid out by Judge Breyer – which explicitly permitted Uber to elicit this evidence at trial as to at least one expert witness – Uber must be allowed to ask Plaintiff's experts these questions during depositions. Uber would also point out that in a prior Order, the Court made clear that instructions not to answer are limited to privileged content. *See* ECF No. 6935 at 2 (citing PTO 16).

**Plaintiff's Position:** Uber seeks blanket authority to interrogate every one of Plaintiffs' experts about their families' and friends' personal rideshare use that Judge Breyer has already excluded as irrelevant and unfairly prejudicial. The Court should apply the witness-specific process Judge Breyer prescribed rather than let Uber relitigate its *in limine* loss through discovery. Counsel invoked Judge Breyer's *in limine* ruling – a judicial determination that personal Uber use by counsel, witnesses, and their family or friends is irrelevant and prejudicial – in objecting to the testimony of expert witness Lebowitz. An *in limine* order is a court-ordered limitation on discovery "reflect[ing] a determination that information should not be revealed." ECF No. 6935 at 2-3, exactly what is required under Fed.R.Civ.P. 30(c)(2).

Judge Breyer permitted Uber to question Dr. Valliere only after Uber made a witness-specific showing of her continued use of Uber and Lyft after retention. 2026.01.16 Dean Trial Tr. 857:20-858:1. Uber has made no such showing for Dr. Lebowitz or Dr. Tremblay. In the Tremblay deposition, Plaintiffs permitted Uber's questioning regarding Tremblay's own use of Uber. Only when Uber probed even further – into the Uber use of Tremblay's family members – did Plaintiffs object to that line of questioning. 9/10/2026 Tremblay Dep. Tr. at 22:9-23:7. Which app an expert or her family member happens to use has no bearing on the expert's methodology or opinions. Demanding that a retained expert catalog relatives' consumer habits is inquiry that "unreasonably annoys, embarrasses, or oppresses the deponent," which is grounds for Plaintiffs to move to terminate or limit a deposition. Fed. R. Civ. P. 30(d)(3)(A).

As this Court has stated, whether an expert uses Uber has a "probative value [of] almost zero." 1/6/2026 Dean Pre-Trial Tr. at 73:3-23. Testimony regarding experts' *family member's* Uber use is even less probative and not relevant to the causes of action or defenses in this case.

## IV. Uber's Document Subpoenas to Legal Marketing and Client Acquisition Services

**Plaintiffs' Position:** Judge Breyer has issued a temporary protective order regarding Uber's third-party subpoenas to legal marketing and client acquisition services that prohibits Uber from accessing, using, or disseminating the MTAA, Isla, and Blue Sky productions and staying future productions from MTAA, Isla, Blue Sky, Meta, NexLevel, and Freestar. *See* ECF 7297. The MTAA,

Isla, and Blue Sky productions to date each contain information from parties and nonparties that Judge Breyer has found "squarely protected by the attorney-client privilege" and by the work product doctrine. *Id.* at 3.[1] That order remains in effect, until the parties brief and resolve any disputes before the Court.

Plaintiffs have been waiting weeks for Uber's availability to meet and confer on this issue. Uber did not provide it. Instead, at 6 PM on the day this report was due, Uber disclosed for the first time that it is in contact with MTAA, the entity that produced more than 16,000 of the roughly 17,000 documents at issue. Uber states it is working with MTAA on a process for "identifying the out-of-scope" information, including through search terms. Uber is doing so without involving any of the parties whose privileges and rights are actually affected. Moreover, MTAA is the very entity that indiscriminately turned over confidential and privileged material from tens of thousands of individuals in the first place—after negotiations with Uber's counsel of which Plaintiffs had no notice or involvement. No such discussions should proceed without Plaintiffs' participation.

Plaintiffs' position is that a permanent protective order over the subpoenas should be issued and any documents produced in response should be destroyed. The subpoenas call for, and have resulted in, the production of privileged and confidential materials. Uber also served the MTAA and NexLevel subpoenas without the notice Rule 45 requires.

Uber has not articulated any justification for its access to this privileged and highly sensitive information. Although Uber represents that it has reviewed the productions in full, its briefing to defend its access to these productions identifies only a few documents (none of which are relevant) out of more than 17,000. In fact, Uber concedes that most of the production exceeds the scope of the subpoena requests (e.g., extending to other, irrelevant litigations) and that Uber had no interest in that information.

---

[1] Uber attempts to confine this dispute to MTAA, stating that Blue Sky and Isla produced only 142 documents. However, those 142 documents include spreadsheets containing questionnaire responses from more than eight thousand prospective plaintiffs who were seeking representation not only in this litigation but also other rideshare litigation. The volume of "documents" does not capture the volume of privileged information exposed.

Uber previously insisted on retaining everything unless Plaintiffs undertook a document-by-document review of tens of thousands of pages and hundreds of spreadsheets containing tens of *millions* of rows of intake data. Now, for the first time on the night of this filing, Uber contends that it should be allowed to screen the productions with MTAA using search terms or Bates ranges and keep the rest. Uber's proposal would allow it to use and sort through privileged material the Court has barred it from accessing, compounding the profound violation of privilege and confidentiality that has already occurred. It also raises professional responsibility concerns, as it would entail sifting through third parties' privileged materials. Nor is such a review required: the Court has broad authority to manage discovery, including by ordering destruction of materials obtained through a defective subpoena or otherwise correcting a wrong done through its processes. Finally, Plaintiffs have standing because the subpoenas implicate their own privileged and confidential information, and in any event, the Court may limit discovery on its own authority.

On balance, the seriousness of the harms to Plaintiffs and nonparties, weighed against Uber's nonexistent showing of relevance, warrants a permanent protective order and destruction of the productions.

**Uber's Position**: Uber and Plaintiffs' counsel are following up on scheduling a meet and confer to address the issues relating to the lead generator subpoenas. Contrary to Plaintiffs' claim above, Uber proposed that the parties meet and confer on November 5 or 6. In addition, Uber's counsel notified Plaintiffs that they are working on scheduling a meet and confer with counsel for MTAA during the week of November 2, in light of an outreach made by counsel for MTAA to Uber's counsel.

As in their Motion for Temporary Protective Order, Plaintiffs focus primarily on one subpoena recipient, MTAA, yet ask for a permanent protective order over all five of the subpoenas and destruction of every production. The relief they seek goes well beyond the problem they identify. Of the five entities subpoenaed, NexLevel and Freestar produced zero documents, Blue Sky produced 66 documents, Isla Marketing produced 76 documents, and MTAA produced 17,659 documents. MTAA thus accounts for more than 99% of the documents at issue, and Plaintiffs' complaints about burden, volume, and out-of-scope material are, in substance, complaints about the MTAA production alone.

Uber acknowledges that MTAA produced documents concerning other litigation that Uber did not request.

As conveyed to Plaintiffs' counsel, MTAA and its founder, Jacob Malherbe, recently obtained counsel, and MTAA's counsel reached out to Uber's counsel in an attempt to confer to reach agreement on the limited, remaining issues. Contrary to Plaintiffs' suggestion above, Uber notified Plaintiffs' counsel of MTAA's conferral request, but Plaintiffs did not respond. Regardless, counsel for MTAA is first available for a meet and confer during the week of November 2. Uber hopes to reach agreement – consistent with Judge Breyer's prior order and in consultation with Plaintiffs' counsel on an efficient means of identifying the out-of-scope documents, such as agreed search terms or Bates ranges, so that those documents can be returned to MTAA or destroyed. That process, not a document-by-document review by Plaintiffs, is the answer to the burden Plaintiffs describe, and it will substantially narrow any remaining dispute. A narrow issue concerning MTAA-produced documents cannot justify a permanent protective order or destruction as to the other subpoenas, two of which yielded no documents at all, and none of the subpoena recipients has moved to quash or for a protective order. Plaintiffs' allegation that the productions are improper is equally baseless: each subpoena was validly issued and served, and each recipient produced documents through ordinary discovery processes long before Plaintiffs objected to their contents.[2]

Judge Breyer's temporary order was narrow: it rested solely on Rule 26's "good cause" standard and the "risk" that some privileged materials may have been produced to Uber, and it preserves the status quo pending briefing before this Court. *See* ECF No. 7297 at 3. The Court did not find any particular document privileged, and it could not have, because – **more than two months later – Plaintiffs have not identified a single document that they contend is privileged**. Uber's review of the documents confirms that the vast majority of the documents are facially non-privileged

[2] Over the course of nearly a year, Plaintiffs received notice of several similar third-party subpoenas and raised no objections to any of the subpoenas or the resulting productions—including the subpoenas to Isla Marketing, Blue Sky, Meta, and Freestar at issue here. The service issues Plaintiffs raise were previously addressed with Judge Breyer *See* ECF 7204 at 14-15, and NexLevel produced no documents. In any event, a notice defect is a procedural issue that does not convert non-privileged, relevant business records into material that must be destroyed.

business records, such as marketing materials, engagement metrics, verification protocols, and fraud-screening procedures, that fall completely outside of the materials for which Judge Breyer expressed concern. The documents Uber cited in prior briefing were illustrative, not exhaustive. Plaintiffs' contention that the Isla and Blue Sky productions contain information concerning potential claimants against Lyft or individuals who never filed suit does not change the analysis: those productions total 142 documents, and Plaintiffs *still* identify none that is privileged. Plaintiffs, the parties asserting privilege, bear the burden of establishing it document by document. They cannot shift the burden to the Court by declaring the review too burdensome, and any professional responsibility concern is addressed through a privilege log, and where needed, in camera review, not by destroying thousands of non-privileged business records. Even with Judge Breyer's rulings serving as guidance, privilege cannot be applied across the board. Among other things, this Court and/or Judge Jones must decide: (a) whether the crime-fraud exception bars privilege protection for a particular document or communication; (b) whether privilege was waived because a particular communication was made in the presence of, or shared with, a third party; (c) whether a given lead generator was in fact the law firm's "agent," a serious question given several lead generators' business models; and (d) whether each particular communication was made for the purpose of giving legal advice, as opposed to some other purpose – the same standard this Court has repeatedly applied to Uber. Any document-specific challenges should be resolved by Judge Jones through a document-by-document privilege log, not wholesale destruction. ECF No. 2302, ¶ 6 (appointing Judge Jones to "assist the Court with all disputes relating to privilege logs and the assertion of attorney client and work product privileges in this MDL ….").

The materials are also plainly relevant. A party is entitled to discovery concerning its defenses. *See* ECF No. 7204 at 16 (collecting cases). The subpoenas seek materials related to: (1) financial interests underlying the claims at issue; (2) the collection of facts and any vetting of information provided by claimants; and (3) Uber's ongoing efforts to identify and defend itself against fraudulent claims that unnecessarily consume litigation resources, take up this Court's time, and impede efforts to reach a global resolution. Each of these areas of inquiry is squarely within the scope of discovery

and relevant to Uber's defenses. Indeed, the very intake data Plaintiffs describe goes to how claims in this MDL were solicited, screened, and vetted. Plaintiffs, moreover, lack standing to challenge the relevance of business records that on their face do not implicate the interests of any Plaintiff. The appropriate course is a targeted process, not a permanent protective order and destruction. Uber will work with MTAA to identify and return or destroy the out-of-scope materials, and any party or nonparty asserting privilege should identify the specific documents at issue, with any remaining disputes submitted to Judge Jones.

By: /s/ Roopal P. Luhana
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Michael Vives
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN
MICHAEL VIVES

**NELSON MULLINS**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: October 26, 2026

By: /s/ *Michael Vives*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Michael Vives*