# EXHIBIT A

FILED
San Francisco County Superior Court

JUL 31 2025

CLERK OF THE COURT
BY: [signature]
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550]

IN RE UBER RIDESHARE CASES

THIS DOCUMENT RELATES TO:

*Jane Doe LSA 78 v. Uber Tech., Inc., et al.*, San Francisco Superior Court, Case No. CGC-21-592427

*Jane Doe WHBE 6 v. Uber Tech., Inc.*, et al., San Francisco Superior Court, Case No. CGC-20-588388

Case No. CJC-21-005188
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188

ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Defendants Uber Technologies, Inc. and Rasier, LLC's (together, "Uber") motion for summary judgment or, in the alternative, summary adjudication came on for hearing on July 31, 2025. The Court circulated a tentative ruling prior to the hearing denying the motion, and the parties submitted on the tentative ruling, which is hereby adopted.

## BACKGROUND

By order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties. Since that time, over 1,200 additional cases were the subjects of add-on orders from this Court. On January 23, 2023, the Court granted Uber's motions to stay or dismiss based on *forum non conveniens*, a ruling that was affirmed by the Court of Appeal in *Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135. Over 500 California cases remain in this JCCP.

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint ("Complaint" or "Compl.") against Uber. Plaintiffs alleged sixteen causes of action: (1) general negligence; (2) common carrier negligence; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) vicarious liability/liability for the torts of Uber drivers; (8) vicarious liability for sexual assault; (9) vicarious liability for sexual battery; (10) vicarious liability for false imprisonment; (11) negligence by misfeasance; (12) negligence by nonfeasance; (13) intentional concealment; (14) strict product liability – design defect; (15) strict product liability – failure to warn; and (16) fraud. (Compl. ¶¶ 164-348.) Plaintiffs generally alleged as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (*Id.* ¶ 6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers…looking for rides." (*Id.* ¶¶ 1, 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶¶ 3, 166; see *id.* ¶¶ 27, 244.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶ 122 [approximately 250 reported sexual assaults per month in 2017 and 2018].) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other ridesharing companies. (*Id.* ¶¶ 84-86, 88, 134.) In addition, Uber does not proactively cooperate with

law enforcement investigating cases passenger victims report to the police or participate in transportation network company ("TNC") safety hearings. (*Id.* ¶¶ 89-94, 116-120, 172.) Moreover, after a victim reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account, which precludes the victim from accessing pertinent information such as the driver's name, driver's photo, make and model of the vehicle, ride time, ride distance, and route. (*Id.* ¶¶ 94-95, 100, 102.)

Despite marketing itself as a safe and better alternative to other transportation methods, Uber continues to hire drivers without conducting adequate background checks and screening procedures, allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring and investigation procedures to protect passengers. (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 152-153, 157, 167-169, 171, 173-180, 195-196, 198, 204, 221-226, 232-238, 245-247, 262, 267, 295, 301, 316, 332-333; see, e.g., *id.* ¶¶ 33-43, 66-83, 130 [Uber Safe Rides Fee was a revenue source rather than a fund for implementing background checks, vehicle checks, driver safety education, development of safety features, and insurance], 329-330; but see *id.* ¶ 111 [the Uber App now includes an emergency button that allows a passenger to call 911].) Due to Uber's failure to implement changes, passengers continue to be victims of sexual assaults. (*Id.* ¶¶ 28, 127.)

By order filed June 22, 2023, the Court sustained Uber's demurrer to Plaintiffs' vicarious liability claims (sixth through tenth causes of action), fraud and misrepresentation claims (third, fourth, thirteenth, and sixteenth causes of action), and strict products liability claims (fourteenth and fifteenth causes of action) without leave to amend.[1] The Court sustained Uber's demurrer as to the negligent infliction of emotional distress claim (fifth cause of action) with leave to amend. Plaintiffs did not amend the fifth cause of action. As a result, the claims remaining in the Complaint are claims for general negligence (first cause of action), common carrier negligence (second cause of action), negligence by misfeasance (eleventh cause of action), and negligence by nonfeasance (twelfth cause of action). Each of the individual Plaintiffs whose claims are the subject of the motion adopted the long-form Complaint in their short-form complaints. (Opening Brief, 12-13.)

[1] The Court issued a separate order granting in part Uber's motion to strike certain factual allegations in the Complaint, denying its motion to strike Plaintiffs' punitive damages allegations, and denying its motion to strike Plaintiffs' common carrier allegations.

Uber initially moved for summary judgment or, in the alternative, summary adjudication as to the negligence, common carrier negligence, and punitive damages claims asserted in the four bellwether cases then scheduled for trial, brought by Plaintiffs EB 25, LSA 78, WHBE 6, and WHBE 11. (Motion, 3; Opening Brief, 12.) Since Uber filed its motion, however, the Court issued an order deselecting WHBE 11 as a bellwether case and tentatively severing it from the JCCP and transferring it to Los Angeles County Superior Court, where it was originally filed. (May 30, 2025 Order.) In addition, EB 25 and Uber have entered into a settlement agreement, and the Court has vacated the trial date and other related pretrial dates in that case pending the implementation of that agreement and dismissal of her claims. (July 10, 2025 Joint Stipulation and Order.) Thus, the motion applies to the cases brought by Plaintiffs LSA 78 and WHBE 6, which are among the first cases currently set for trial to commence on September 8, 2025. Plaintiffs oppose the motion.

## <u>LEGAL STANDARD</u>

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc. § 437c(a)(1).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.* § 437c(c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Id.* (cleaned up); *VFLA Eventco, LLC v. William Morris Endeavor Entertainment, LLC* (2024) 100 Cal.App.5th 287, 296; Code Civ. Proc. § 437c(p).)

"A party may move for summary adjudication as to one or more causes of action within an action, . . . if the party contends that the cause of action has no merit." (Code Civ. Proc. § 437c(f)(1).) "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an

affirmative defense, a claim for damages, or an issue of duty." (*Id.*) "A motion for summary adjudication may be made . . . as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (*Id.* § 437c(f)(2).)

## SEPARATE STATEMENTS AND EVIDENTIARY OBJECTIONS

A motion for summary judgment "shall include a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed." (Code Civ. Proc. § 437c(b)(1).) Similarly, the opposition papers "shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, *indicating if the opposing party agrees or disagrees that those facts are undisputed.*" (*Id.* § 437c(b)(3) (emphasis added).) "The separate statement should include only material facts and not any facts that are not pertinent to the disposition of the motion." (*Id.* § 437c(d)(2).) Material facts are "facts that relate to the cause of action, claim for damages, issue of duty, or affirmative defense that is the subject of the motion and that could make a difference in the disposition of the motion." (Cal. Rules of Court, rule 3.1350(a)(2).) In response to the moving party's statement of material facts, "the response must unequivocally state whether that fact is 'disputed' or 'undisputed.'" (*Id.*, rule 3.1350(f)(2).)

Both parties fail to comply with these requirements. Uber's 124-page separate statement comprises some 383 purported material facts, many of which are not material to the issues. Plaintiffs have filed a 229-page "Opposition" to that separate statement which disputes nearly all of those facts, many of which are not genuinely disputed but instead serve as a pretext for argument that is more appropriately conveyed in a brief. Plaintiffs, for their part, have filed a 42-page statement of some 310 additional facts, to which Uber in turn responds in a 138-page response that *fails to admit or deny a single one* of the asserted facts, including a number that are incontrovertible, but instead argues at length that each is "immaterial."

"The separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process. Separate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit trial courts to

expeditiously review complex motions for summary judgment to determine quickly and efficiently whether material facts are disputed." (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 415-416 (cleaned up).) "Its purpose is to ease the trial court's burden and put the moving party on notice of the evidence which is disputed by respondent." (*Id.* at 419.) Unfortunately, the parties' approach has accomplished little other than to unnecessarily burden the Court. (See *Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 876 ["Trial courts should not hesitate to deny summary judgment motions when the moving party fails to draft a compliant separate statement—and an inappropriate separate statement includes an overly long document that includes multiple nonmaterial facts in violation of the Rules of Court. Courts should also not hesitate to disregard attempts to game the system by the opposing party claiming facts are 'disputed' when the uncontroverted evidence clearly shows otherwise."].)

The parties' approach to evidentiary objections is no better. Both parties have submitted hundreds of evidentiary objections and responses. Thus, Plaintiffs have filed 82 pages of unnumbered objections to much of Defendants' evidence, while Uber, not to be outdone, has filed 87 pages comprising 433 objections. The Court will not issue separate rulings on each of these evidentiary objections, which are unnecessary overkill. (Code Civ. Proc. § 437c(q) ["In granting or denying a motion for summary judgment or summary adjudication, the court need rule only on those objections to evidence that it deems material to its disposition of the motion."]; see *Reid v. Google* (2010) 50 Cal.4th 512, 532 ["it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical. Trial courts are often faced with innumerable objections commonly thrown up by the parties as part of the all-out artillery exchange that summary judgment has become. To counter that disturbing trend, we encourage parties to raise only meritorious objections to items of evidence that are legitimately in dispute and pertinent to the disposition of the summary judgment motion. In other words, litigants should focus on the objections that really count." (cleaned up)]; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248-250, 252.)

## DISCUSSION

"To establish a cause of action for negligence, the plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (cleaned up).) Here, Uber moves for summary judgment or summary adjudication as to each of these elements. First, it argues it does not have a duty of care to protect Plaintiffs against injuries caused by its drivers' acts, which it characterizes as "extraordinary and unforeseeable criminal acts by third parties." (Opening Brief, 10-11, 22-32.) Second, it asserts that Plaintiffs cannot establish proximate causation because they cannot show that Uber's failure to implement a safety measure caused their sexual assaults. (*Id.* at 11, 33-37.) Third, Uber argues separately that it is not a common carrier under Civil Code Section 2168, and therefore does not owe its passengers a heightened duty of care. (*Id.* at 11-12, 37-42.) Finally, it seeks summary adjudication that as a matter of law, Plaintiffs are not entitled to punitive damages. (*Id.* at 12, 42-46.) The Court addresses each issue in turn.

### I. Uber's Motion For Summary Adjudication Is Procedurally Deficient.

As an initial matter, to the extent that Uber seeks summary adjudication, its motion is procedurally defective. Rule 3.1350 of the California Rules of Court provides,

> If summary adjudication is sought, whether separately or as an alternative to the motion for summary judgment, the specific cause of action, affirmative defense, claims for damages, or issues of duty must be stated specifically in the notice of motion and be repeated, verbatim, in the separate statement of undisputed facts.

(Cal. Rules of Court, rule 3.1350((b).) Uber's notice of motion fails to comply with this requirement. It states only that Uber is moving "for an order granting summary judgment or, in the alternative, summary adjudication as to all causes of action" brought in the complaints. (Motion, 3.) Its notice of motion does not specifically state the specific causes of action or issues of duty as to which it seeks summary adjudication, as required by the Rule. Further, Plaintiffs' punitive damages claim is a "claim for damages," not a "cause of action."

Uber's separate statement in support of its motion for summary adjudication of Plaintiffs' claim for punitive damages violates another provision of the Rule, which provides that the separate statement

must identify "[e]ach supporting material fact claimed to be without dispute *with respect to the cause of action, claim for damages, issue of duty, or affirmative defense that is the subject of the motion.*" (Cal. Rules of Court, rule 3.1350(d)(1)(B) (emphasis added).) In other words, "*[t]he facts in a separate statement should be limited to facts that address the elements of a cause of action or an affirmative defense.*" (*Beltran*, 97 Cal.App.5th at 875 (emphasis original).) Yet Uber's separate statement in support of its motion for summary adjudication of Plaintiffs' punitive damages claim ignores this requirement, and instead simply incorporates *every single one* of the 379 purportedly undisputed material facts set forth in support of its motion. (Def. Separate Statement, 124.) It is not the Court's job to root through the entire voluminous record that Uber has submitted in support of its motion to determine whether it forecloses Plaintiffs' claim for punitive damages.

Uber's motion properly could be denied on these grounds alone. "A motion for summary adjudication tenders only those issues or causes of action specified in the notice of motion, and may only be granted as to the matters thus specified." (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 743-744.) Nevertheless, because Plaintiffs have not squarely raised the issue,[2] and because Uber's motions as to duty and causation, if granted, arguably would entitle it to summary judgment of the entire action, the Court will disregard the defect and address the merits of the motion. (See *Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1045-1046 [finding Rule 3.1350(b) inapplicable where defendants were not seeking summary adjudication as to only part of the amended complaint, but instead sought summary judgment as to the entire amended complaint].) For the foregoing reasons, however, the Court will not address Uber's motion for summary adjudication of Plaintiffs' claim for punitive damages.

## II. Uber Owes Plaintiffs A Duty Of Care.

First, Uber contends it does not owe a duty of care to Plaintiffs, arguing that it does not have a duty to protect Plaintiffs against crimes by others and that even if it owed such a duty, the *Rowland* factors would counsel limiting that duty. (Opening Brief, 22-32.) Uber also seeks summary adjudication

[2] Plaintiffs argue that "Uber's motion and separate statement do not identify the issue of duty as a distinct issue to be summarily adjudicated," such that summary adjudication is precluded on "a narrower issue of duty that does not completely dispose of a cause of action." (Opposition 12 n. 2.)

that Plaintiffs' second cause of action for "common carrier negligence" has no merit because Uber is not a common carrier. (*Id.* at 37-42.)[3] Plaintiffs oppose, arguing first that the evidence establishes Uber is a common carrier. (Opposition, 12-17.)[4] Because that issue is dispositive of Uber's duty argument, the Court addresses it first.

**A. Uber Is A Common Carrier.**

Uber argues that it is "an *intermediary* which provides technology to facilitate the connection of driver to rider—not an actual 'common carrier' of passengers." (Opening Brief, 37.) Plaintiffs disagree, and contend the evidence establishes Uber is a common carrier. (Opposition, 12-17.) The Court agrees with Plaintiffs.

A common carrier is "[e]very one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." (Civ. Code § 2168.) The California Public Utilities Code similarly defines common carrier as:

> . . . every person and corporation providing transportation for compensation to or for the public or any portion thereof, except as otherwise provided in this part. "Common carrier" includes:
> (a) Every railroad corporation; street railroad corporation; dispatch, sleeping car, dining car, drawing-room car, freight, freight line, refrigerator, oil, stock, fruit, car-loaning, car-renting, car-loading, and every other car corporation or person operating for compensation within this state.

(Pub. Util. Code § 211.) The term common carrier, like the closely related statutory term "a carrier of persons" (Civ. Code §§ 2096, 2100), has been given "an expansive definition." (*Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1131.) Thus, as one court has recently observed, the types of transportation providers who are considered common carriers under California law has broadened significantly over time:

> Since 1872, the universe of "common carrier[s] has been statutorily defined to reach "[e]veryone who offers to the public to carry persons, property or messages, excepting only telegraphic messages." At first, common carriers included the operators of stagecoaches and railroads. But as technology evolved, the universe of common carriers evolved to encompass operators of streetcars, airplanes, buses, taxicabs and rideshares like Uber. These days, the "expansive" universe of common carriers includes those who operate elevators and escalators, ski lifts, and mule trains.

---

[3] The Court declines to consider the unpublished state court rulings cited in Uber's brief. (Opening Brief, 37 fn. 16.) As Plaintiffs correctly point out (Opposition, 36 fn. 7), such rulings have no precedential value. (*SHR St. Francis, LLC v. City and County of San Francisco* (2023) 94 Cal.App.5th 622, 642.)
[4] Plaintiffs assert that their second and third causes of action for negligence by misfeasance and nonfeasance "refer only to Uber's duty as a common carrier." (Opposition, 12 fn. 3.)

(*Smith v. Magic Mountain LLC* (2024) 106 Cal.App.5th 1128, 1136 (cleaned up).)[5]

This Court has previously concluded that Plaintiffs' allegations are sufficient to establish that Uber is a common carrier: "Uber, as a ride-sharing company, is a common carrier because it provides transportation to the public (anyone can download the app and order a ride) in exchange for compensation." (June 22, 2023 Order on Demurrer, 10-11.) Other courts have reached the same conclusion. (See, e.g., *Doe v. Uber Technologies, Inc.* (N.D. Cal. Nov. 22, 2019) 2019 WL 6251189, *6 ["Uber's status as an app-based transportation network does not preclude it as a matter of law from being held liable as a common carrier"]; *Doe v. Uber Technologies, Inc.* (N.D. Cal. 2016) 184 F.Supp.3d 774, 787 ["Plaintiffs have alleged sufficient facts to plausibly claim that Uber is a common carrier. Looking beyond any conclusory assertions, plaintiffs have alleged critical underlying facts: that Uber's services are available to the general public and that Uber charges customers standardized fees for car rides. . . . Plaintiffs' allegations support the claim that Uber 'offers to the public to carry persons,' thereby bringing it within California's definition of common carrier for tort purposes."].)[6] The Court now reaches the same conclusion on summary judgment. (See *Huang v. Bicycle Casino, Inc.* (2016) 4 Cal.App.5th 329, 339 ["Whether a party is a common carrier for reward may be decided as a matter of law when the material facts are not in dispute."]; *Squaw Valley Ski Corp. v. Superior Court* (1992) 2 Cal.App.4th 1499, 1506 [same].)

"Factors bearing on a party's common carrier status include: (1) whether the party maintained an established place of business for the purpose of transporting passengers; (2) whether the party engaged in transportation as a regular business and not as a casual or occasional undertaking; (3) whether the party advertised its transportation services to the general public; and (4) whether the party charged standard rates for its service." (*Huang*, 4 Cal.App.5th at 1506; see CACI No. 901.) "Not all these factors need be present for the party to be a common carrier subject to the heightened duty of care." (*Id.*) "The party

---

[5] "It is settled that the liability of a common carrier to its passengers is the same whether the carrier is a public or a private entity." (*De Vera v. Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 792.)

[6] Notably, in the parallel MDL proceeding, Uber did "not dispute that it is a common carrier" and did not move to dismiss plaintiffs' claim against it for breach of a common carrier's non-delegable duty to provide safe transportation. (*In re Uber Technologies, Inc. Passenger Sexual Assault Litigation* (N.D. Cal. 2024) 745 F.Supp.3d 869, 898.)

need not have a regular schedule or a fixed route to be a common carrier, nor need the party have a transportation license." (*Id.*) "Hence, a common carrier for reward is any entity which holds itself out to the public generally and indifferently to transport goods or persons from place to place for profit." (*Id.* (cleaned up).)

Here, there is no material dispute regarding the nature of Uber's business. "The Uber entities operate a technology company that connects individuals looking for transportation with authorized drivers. Users request a ride through the Uber app on their smartphones. The Uber app uses Global Position System (GPS) technology available within one's smartphone device to identify the user's location, as well as a nearby available driver. The user then meets the driver at an individually designated pickup location. The Uber app also has safety features to help users identify their authorized driver. When the rider is matched with a driver, the Uber app provides the driver with the authorized driver's name, picture, and license plate, as well as a description of the car. The GPS technology also allows the rider to track their driver's progress, so they can see when their authorized driver is nearby." (*Jane Doe No. 1 v. Uber Technologies, Inc.* (2022) 79 Cal.App.5th 410, 416.)

Uber is licensed and regulated by the California Public Utilities Commission (CPUC) as a "transportation networking company" (TNC), a type of charter-party carrier. (*Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1162-1163; see also, e.g., *City and County of San Francisco v., Uber Technologies, Inc.* (2019) 36 Cal.App.5th 66, 70.) The CPUC defines a TNC as "an organization, including, but not limited to, a corporation, limited liability company, partnership, sole proprietor, or any other entity, operating in California that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle." (Pub. Util. Code § 5431(c).)

Uber and its principal rideshare competitor, Lyft, "may monitor or collect information about drivers' locations, communications with riders, and driving habits, such as speeding, braking, and acceleration. Drivers and riders rate each other, and defendants may use low ratings to deactivate drivers. Defendants address riders' complaints." (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 280.) "Riders pay fares through Lyft's and Uber's apps, and Lyft and Uber deduct a fee for each ride and

remit the remainder of the payment to the driver. Uber and Lyft set the base fare rates and time and distance rates. Uber maintains a bank account for the benefit of drivers, separate from its corporate accounts, into which fares and tips are paid, then transmits to the driver the fare and gratuity less any service fee." (*Id.*) "Uber and Lyft both encourage riders to obtain transportation through their apps. Uber's Internet site, for instance, tells potential riders they will receive '[a]lways the ride you want' and 'a reliable ride in minutes,' and that they can '[r]equest a ride, hop in, and go.'" (*Id.*) There is no genuine dispute in the record before the Court as to the accuracy of these general descriptions.

Contrary to Uber's central argument, "[a] number of cases have considered contentions that ride-sharing companies such as Lyft and Uber are in the business solely of creating technological platforms, not of transporting passengers, and have dismissed them out of hand." (*Id.* at 292, citing, among other authorities, *O'Connor v. Uber Technologies, Inc.* (N.D. Cal. 2015) 82 F.Supp.3d 1133, 1141-1142 ["Uber does not simply sell software; it sells rides."; "Uber's revenues do not depend on the distribution of its software, but on the generation of rides by its drivers"; "Put simply, . . . Uber *only* makes money if its drivers actually transport passengers." (cleaned up)]; *Namisnak v. Uber Technologies, Inc.* (N.D. Cal. 2020) 444 F.Supp.3d 1136, 1143 ["Uber's claim that it is 'not a transportation company' strains credulity, given the company *advertises itself* as a 'transportation system'"]; see also *James v. Uber Technologies, Inc.* (N.D. Cal. 2021) 338 F.R.D. 123, 138 ["This Court has repeatedly held that Uber and Uber's drivers are both in the business of transportation."].) In *People v. Uber Technologies, Inc.*, the California Court of Appeal joined that body of authority, concluding that Uber's business "depend[s] on riders paying for rides" and that "providing transportation is part of Uber's usual course of business." (56 Cal.App.5th at 295, 298.) Even if that conclusion were not binding here, Uber offers no compelling reason for the Court to revisit it, nor does the record raise any disputed issues of material fact that could warrant a trial on the issue.[7]

Uber's arguments are unpersuasive. First, Uber argues that it is not a common carrier because it

[7] See, e.g., Pl. Ex. 1 at 390:5-13 ["Uber offers transportation as a part of its business service" and takes people from place to place for money]; Ex. 2 at 96:5-19 [Uber and other rideshare companies are part of the transportation industry]; Ex. 4 at 42:9-15 ["we try to provide safe and reliable transportation options through our matching platform"]; Ex. 10 at 94:14-17, 96:11-15 [Uber is "fairly characterized as a transportation option" and part of the transportation industry].)

does not own the vehicles its drivers utilize to transport passengers. (Opening Brief, 38-39.) In *Crawford*, Uber raised the same argument, asserting it is not an entity "primarily engaged in the business of transporting people" within the meaning of the ADA:

> Uber views itself as a technology company that is engaged in the business of facilitating networking between drivers and riders. Because Uber does not own vehicles or lease them to Uber drivers, it believes it cannot be categories as a taxi service under [the ADA].

(*Crawford v. Uber Technologies, Inc.* (N.D. Cal. Mar. 1, 2018) 2018 WL 1116725, *3.) The court rejected the argument, concluding that nothing in the ADA "requires that an entity own or lease its own vehicles in order to qualify as a private entity providing taxi service within the meaning of the statute." (*Id.* at *4.) "To say that Uber merely *facilitates* connections between 'both sides of the two-sided ridesharing market' obscures the fact that Uber arguably *created* a market for this type of transportation." (*Id.*) Nor does Uber's emphasis on ownership of the vehicles make sense. A transit agency is a common carrier, whether it owns the vehicles on which it transports passengers, leases them, or utilizes them on loan from another agency. So is the closest analogy: "A taxicab is a common carrier." (*Ingham v. Luxor Cab Co.* (2001) 93 Cal.App.4th 1045, 1050.) Further, as Uber acknowledges (Reply, 9), regardless of ownership, the "operator" of a transportation service may be a common carrier. (See, e.g., *Gomez*, 35 Cal.4th at 1127 [holding that "the operator of a roller coaster or similar amusement park ride can be a carrier of persons for reward within the meaning of Civil Code sections 2100 and 2101."]; *id.* at 1131 ["It is now well established that commercial operators of elevators and escalators are carriers of persons for reward."].)[8]

The Court finds that Uber is the "operator" of a rideshare service, even if the vehicles it utilizes are owned and driven by individual drivers, because Uber has substantial control over its passengers' safety. "[T]he key inquiry in the common carrier analysis is whether passengers expect the transportation to be safe because the operator is reasonably capable of controlling the risk of injury." (*Grotheer v. Escape Adventures, Inc.* (2017) 14 Cal.App.5th 1283, 1295.) Thus, where an operator "can take steps to

[8] Uber's argument that "common carrier status is reserved for actual operators of vehicles" (Reply, 9) is unduly literal. An elevator or an escalator lacks any "actual operator," yet its owner or operator is nevertheless a common carrier. (*Gomez*, 35 Cal.4th at 1131.) Indeed, Waymo, Cruise and other similar autonomous vehicle companies do not utilize drivers at all, yet they "carry people" in the same fashion as taxicabs and rideshare companies.

make [its] conveyances safer for passengers without significantly altering the transportation experience," such as "through engineering design and operator skill," common carrier liability may fairly apply to the operator that fails to take those safety measures. (*Id.* at 1296.) Uber agrees: "Operators generally have the ability to influence the ultimate safety outcome as they control the details of the transport." (Reply, 9.) This test governs here. Under the TNC regulatory scheme, Uber has substantial control over factors bearing on passenger safety: it is required to maintain insurance covering rides in its drivers' vehicles (Pub. Util. Code § 5433); it is required to conduct criminal background checks of drivers and to screen out drivers with specified criminal convictions (*id.* § 5445.2); it is required to ensure that participating drivers have valid California driver's licenses and to notify drivers of the applicability of the California Vehicle Code (*id.* § 5445.3). Further, as Plaintiffs point out, Uber provides its drivers with codes of conduct, manages and supervises driver behavior with a rating system, and waitlists and deactivates drivers for misbehavior. (PAUMF 143.)[9] As Uber acknowledges, "it takes reasonable steps to build safety features into its app to play an active role in facilitating a safe platform experience." (Reply, 9.)

Second, Uber argues that it "does not offer services to the general public; only registered users who execute Uber's terms and conditions and create accounts have access to trip requests within the Uber platform." (Opening Brief, 39; Reply, 9-10.) However, "common carrier liability can attach even for transportation services that are of possible use to only a fraction of the population." (*Doe v. Uber Technologies, Inc.* (N.D. Cal. Nov. 22, 2019) 2019 WL 6251189, *6, quoting *Huang*, 4 Cal.App.5th at 339 [rejecting Uber's argument that it is not a common carrier because of conditions that are placed on who can use and be connected with drivers via the app]; see also *Squaw Valley Ski Corp.*, 2 Cal.App.4th at 1509-1510 [rejecting ski lift operator's argument that it is not a common carrier because its chair lift is restricted to persons who wear skis and purport to possess the ability to ski, and thus, is not offered for use by the general public: "the 'public' does not mean everyone all of the time; naturally, passengers are restricted by the type of transportation the carrier affords. . . . To be a common carrier, the entity merely must be of the character that members of the general public may, if they choose, avail themselves of

[9] PAUMF refers to Plaintiffs' Separate Statement of Additional Undisputed Material Facts in opposition to Uber's motion.

it."].)[10]

In short, Uber engages in transportation as a regular business; it advertises its transportation services to the general public; it charges standard rates for its services; and it has a transportation license to provide those services, among other factors. The Court therefore concludes that Uber is a common carrier within the meaning of California law.[11]

This conclusion is largely dispositive of Uber's other duty arguments, which the Court need not reach in any event. Uber relies heavily on the general rule that "the person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another from that peril." (Opening Brief, 22, quoting *Brown*, 11 Cal.5th at 214 (cleaned up).) As Uber acknowledges, however, there are several exceptions to that general no-duty-to-protect rule. (Opening Brief, 22-23.) One, which may be characterized as negligence by misfeasance, is where it is the defendant who has created a risk of harm to the plaintiff. (*Brown*, 11 Cal.5th at 214.) Even if the risk of harm is not of the defendant's own making, it may be liable for nonfeasance if it chooses to undertake to come to the aid of another. (*Id.* at 215.) Further, "[i]n a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm." (*Id.* at 215.) Significantly, as Uber concedes (Opening Brief, 23), relationships between "common carriers and passengers" are among those special relationships that give rise to an affirmative duty to protect. (*Id.* at 216; accord, *Regents of Univ. of California v. Superior Court* (2018) 4 Cal.5th 607, 621 ["Common carriers and their passengers present

---

[10] Further, it is significant that the Legislature enacted the TNC statutes in 2014 without amending Civil Code section 2168. (Pub. Util. Code §§ 5430-5450.) "[H]ad the Legislature intended to exempt [rideshare companies] from common carrier status for the purpose of tort liability, it easily could have amended Civil Code section 2168 to accomplish this objective." (*Squaw Valley Ski Corp.*, 2 Cal.App.4th at 1514.) Likewise, Proposition 22, enacted by the voters in the November 2020 election, is silent on the subject of rideshare companies' status as common carriers. (Bus. & Prof. Code §§ 7448-7467.)

[11] Uber's cases are readily distinguishable. (Reply, 8.) *Simon v. Walt Disney World Co.* (2004) 114 Cal.App.4th 1162 held only that Disney could not be construed as a common carrier with respect to admission discounts it offered to residents near its amusement park because restrictions imposed on common carriers are limited to carriage-related activities only. (*Id.* at 1170.) And *Chubb Group of Ins. Companies v. H.A. Transp. Systems, Inc.* (C.D. Cal. 2002) 243 F.Supp.2d 1064 held only that a property broker with which a shipper that contracted with a transportation company to transport a shipment of goods was not a common carrier with responsibility for the theft of the shipment from a subcontracting trucking company. Neither case is remotely comparable.

a[] quintessential example" of a special relationship].) As the California Supreme Court has explained, that is because "[t]he existence of such a special relationship puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this position accordingly." (*Brown*, 11 Cal.5th at 216; see also *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 789 [the characteristics of public transportation, along with the duty of utmost care and diligence imposed by section 2100, provide "a more than ample basis for finding a special relationship between common carriers and their passengers"].)[12]

**B. A Common Carrier Owes Its Passengers A Heightened Duty Of Care To Protect Them Against Sexual Assault.**

"Carriers of persons for reward have long been subject to a heightened duty of care." (*Gomez*, 35 Cal.4th at 1128.) Thus, Civil Code section 2100 states: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." "Both California and federal cases consistently hold that, under California law, a common carrier relationship exists and a corresponding 'heightened standard of care applies to a passenger while in transit' with a common carrier . . . , and, under certain circumstances, for brief windows of time immediately before and/or after the passenger is in transit with the carrier." (*Jane Doe No. 1 v. Uber Technologies, Inc.* (2022) 79 Cal.App.5th 410, 420-421, quoting *Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 250-251 (cleaned up).) "This heightened duty of care a common carrier owes its passengers is a function of the fact that the passenger while in actual progress upon his journey is exposed to countless hazards, and gives himself wholly in charge of the carrier." (*Id.* at 421 (cleaned up); accord, *Smith*, 106 Cal.App.5th at 1137.)[13]

[12] Even if the *Rowland* factors applied in the context of a common carrier subject to a heightened duty of care, the Court would conclude that they do not weigh in favor of limiting Uber's duty to prevent sexual abuse. (See *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 130-138.)

[13] The court in *Jane Doe No. 1* assumed that Uber was a common carrier. On the allegations before it, however, where plaintiffs were abducted and sexually assaulted by assailants who posed as authorized Uber drivers, it held that Uber it did not have a common carrier-passenger relationship with plaintiffs that gave rise to a special relationship giving rise to a duty to protect. (79 Cal.App.5th at 420-423.) The court reasoned that the duration of the common carrier-passenger relationship is "a function of how long the common carrier has control over the passenger in a manner associated with being a common carrier." (*Id.* at 421.) Uber had no control over the plaintiffs' movements or the environment in which they were waiting. (*Id.* at 422.) Further, plaintiffs did not allege misfeasance because they did not allege that Uber had affirmatively created the peril, since they did not show that the harm plaintiffs suffered was a

The federal court presiding over the parallel MDL litigation held that as a common carrier, Uber has a non-delegable duty to protect its passengers from injury, including from sexual assault. (*In re Uber Technologies, Inc. Passenger Sexual Assault Litigation* (N.D. Cal. 2024) 745 F.Supp.3d 869, 897-900.) As Judge Breyer explained, common carriers' duty to safely transport passengers, which is codified in Civil Code section 2100, is nondelegable. (*Id.* at 898, citing *Eli v. Murphy* (1952) 39 Cal.2d 598.)[14] "Instead, the carrier's duty is only satisfied if its agent actually does exercise the requisite level of care." (*Id.* at 898.) Thus, "[i]f instead of exercising the utmost care and diligence for passengers' safe carriage, a driver assaults the passenger, then Uber's non-delegable duty has been breached." (*Id.*) The court found that conclusion follows from an early case, *Berger v. Southern Pac. Co.* (1956) 144 Cal.App.2d 1. In *Berger*, a passenger in a Pullman sleeping car alleged that she was sexually assaulted by the car's porter. The court held that there was no evidence of negligence on the part of the railroad, since there no evidence that it had negligently selected the porter as an employee or that he had any propensity toward molesting passengers. (*Id.* at 5.) However, the court held that the jury had been properly instructed that if it found that the assault had been committed and that the porter was an agent of the defendant, then the defendant was liable. (*Id.* at 7.) The court held as follows:

> A carrier is liable for acts of assault and battery upon the part of its employees resulting in injury to those it has agreed to transport upon its facilities. This liability extends not only to cases where the assault was in the line of the employee's duty, but also to those instances where the act was merely that of an individual and entirely disconnected with the performance of the agent's duties, as where the conductor of a train kisses a female passenger against her will. … The liability of a common carrier for an assault by one of its employees on a passenger is not dependent on the question as to whether the employee was acting within the scope of his authority or in the line of his duty, but is based upon its broad duty as a common carrier to protect its passengers from assault.

(*Id.* at 6-7 (cleaned up).) Judge Breyer rejected Uber's arguments that *Berger* is outdated and wrongly decided, observing that it is "directly on point, has never been overruled, and does not ever seem to have been criticized by California courts." (745 F.Supp.3d at 899.)[15] Accordingly, the court held that

"necessary component" of Uber's actions. (*Id.* at 424-429.)

[14] In *Eli v. Murphy*, the Court held that highway common carriers may not insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport freight for them. (39 Cal.2d at 599-600.)

[15] Uber did not cite Judge Breyer's opinion in its opening brief. Nor did it address *Berger* in either of its briefs, although that case was highlighted both in this Court's prior ruling on Uber's demurrer and in

"Plaintiffs' theory that a common carrier's non-delegable duties can form an independent basis for vicarious liability can proceed under California law." (*Id.* at 900; see also *Lopez*, 40 Cal.3d at 785-788, 791 [holding that Civil Code section 2100 imposes upon all common carriers—public or private—a duty of utmost care and diligence to protect their passengers from assaults by fellow passengers].)[16] This Court agrees.

To be sure, "a heightened duty of care does not mean that a common carrier is strictly liable for anything that happens to its passengers." (745 F.Supp.3d at 899.) As the Supreme Court has explained,

> Common carriers are not, however, insurers of their passengers' safety. Rather, the degree of care and diligence which they must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of the business of the carrier.

(*Lopez*, 40 Cal.3d at 785-786 (cleaned up); see also *Huang*, 4 Cal.App.5th at 344 fn. 3 ["In the case of a common carrier, the question for the trier of fact would be whether the [defendant] breached the duty of utmost care and diligence, under the circumstances."].) As discussed below, whether Uber's alleged breaches of its duty of care proximately caused Plaintiffs' injuries presents disputed issues of material fact that must be resolved by a jury.

## III. Whether Uber's Alleged Breaches Of Its Duty Of Care Proximately Caused Plaintiffs' Injuries Presents Disputed Issues Of Fact For Determination By A Jury.

Uber argues that "Plaintiffs cannot establish proximate causation on this record" because they cannot show that "Uber's alleged failure to implement their proposed safety measures directly caused their assaults." (Opening Brief, 11, 33-35.) It also argues that "the intervening criminal acts of third-party drivers supersede any earlier steps in the causal chain and stand alone as the sole proximate cause of Plaintiffs' injuries." (*Id.* at 11, 35-37.) Plaintiffs respond that triable issues of material fact exist as to causation, such that a jury could find that Uber's negligence caused their injuries. (Opposition, 28-34.)

---

Judge Breyer's ruling.

[16] The Court previously sustained Uber's demurrer to Plaintiffs' vicarious liability claims without leave to amend. As it observed in its order, Plaintiffs did not "rely upon *Berger* to establish that Uber is vicariously liable for torts committed by its drivers, but rather for the distinct proposition that as a common carrier, it owed them a duty of care to prevent their injuries." (June 22, 2023 Order, 11 (footnote omitted).) That order did not address Uber's causes of action for common carrier negligence or their negligence by misfeasance and negligence by nonfeasance causes of action, which are premised on Uber's common carrier status. (*Id.* at 11 fn. 4.)

Plaintiffs also disagree that the drivers' actions were a superseding cause absolving Uber of liability. (*Id.* at 34-36.) The Court agrees with Plaintiffs.

### A. Whether Uber's Negligence Was The Proximate Cause Of Plaintiffs' Injuries Presents Disputed Issues Of Material Fact.

Proximate cause, also known as legal cause, is an element of a cause of action for negligence. (*Brown*, 11 Cal.5th at 213.) "Proximate cause is often said to focus on two things: the 'cause in fact' of the injury and 'policy considerations.'" (*Ortiz v. Daimler Truck North America LLC* (2025) 112 Cal.App.5th 608, 2025 WL 1778776, *5 (cleaned up).) "Once a court determines a defendant owes a duty to a plaintiff, the remaining liability questions—breach as well as factual and legal causation—are usually questions for the jury." (*Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 126.) "[D]eciding who should be found a proximate cause of an injury is typically a question of fact for the jury, not a question of law to be resolved on summary judgment." (*Ortiz*, 2025 WL 1778776, at *1.) "It may be decided as a question of law only if, under the undisputed facts, there is no room for reasonable minds to differ." (*Id.* at *5; see *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1084 ["Breach, injury, and causation must be demonstrated on the basis of facts adduced at trial, and a jury's determination of each must take into account the particular context in which any act or injury occurred."].)

Uber contends that in order to establish causation, Plaintiffs must present "nonspeculative evidence that a proposed measure would have prevented the specific harm at issue, not merely reduced the risk. (Opening Brief, 33 (emphases omitted).) And, it contends, there is no evidence demonstrating that the adoption of specific safety measures, such as dashcams or real-time surveillance, "would have deterred, interrupted, or prevented these specific assaults." (*Id.*) Uber's argument is inconsistent with its burden on summary judgment, the controlling legal standard and the record.

First, Uber has not met its burden on summary judgment. "[T]o be entitled to summary judgment based on a lack of causation, [Uber has] to conclusively negate" Plaintiffs' allegations that Uber's breaches of its duty of care were "a cause in fact of [Plaintiffs'] injuries, or show that the element of causation cannot be established." (*Union Pacific Railroad Co. v. Ameron Pole Products LLC* (2019) 43

Cal.App.5th 974, 981; see also *Stokes v. Forty Niners Stadium Management Co., LLC* (2024) 107 Cal.App.5th 1199, 1214 [on motion for summary judgment, defendant bears "an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact," either by "presenting affirmative evidence that negates an essential element of the plaintiff's claim or "by submitting evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence supporting an essential element of its claim." (cleaned up)].)[17]

Uber meets its burden to negate causation as to certain of Plaintiffs' claims of negligence. For example, Uber shows that none of the background checks conducted on the accused drivers prior to the incidents revealed any criminal history related to sexual assault or sexual misconduct. (Opening Brief, 27, 36; Luskey Decl. ¶¶ 9, 11 & Exs. 1-5, 43.)[18] While Plaintiffs suggest a number of ways in which Uber could have conducted more robust background checks, such as by utilizing fingerprints or searching for drivers' criminal records in foreign countries, they point to no additional information that such additional background checks would have revealed. It follows that Plaintiffs cannot show that any alleged shortcomings in Uber's background check process proximately caused their injuries.[19]

However, to be entitled to summary judgment, Uber must negate proximate cause as to *all* of Plaintiffs' claims of negligence. Plaintiffs articulate numerous theories of negligence in their Complaint, including Uber's alleged failures to adopt safety precautions such as video monitoring of drivers with in-

[17] Uber's reliance on *Stokes* (Opening Brief, 33, 34, 36; Reply, 13-14, 16, 17) is misplaced. There, plaintiffs' decedent died after being punched by a fellow sports fan in the stadium parking lot following a football game. Plaintiffs brought suit against the stadium manager and a security contractor on theories of negligence and premises liability. The court explained that defendants "could certainly incur liability for negligence resulting in a fan's injuries caused by a third-party assault. The fact that the third party directly caused the injury through a criminal act does not constitute a superseding cause that necessarily absolves the defendants of liability for their own negligence." (107 Cal.App.5th at 1223 (cleaned up).) However, on the record before it, the court affirmed summary judgment for defendants, holding that the defendants' alleged acts or omissions were not a substantial factor in causing the injuries because, among other things, the assault occurred so quickly that it was not possible to intervene. (*Id.* at 1226-1227.) The causation inquiry is a record-specific inquiry.

[18] LSA 78's incident occurred on December 6, 2016, while WHBE 6's occurred on July 10, 2017. (Opposition, 2-3; Luskey Decl. Exs. 43, 45.)

[19] For this reason, the Court is skeptical that expert testimony regarding Uber's background checks will be admissible at trial. The purpose of a trial is to determine whether Uber's negligence caused a given Plaintiff's injuries, not to conduct a referendum on whether its corporate practices could or should be improved. Moreover, the TNC statutes specifically address the type of background checks rideshare companies are mandated to conduct. (See Pub. Util. Code § 5445.2(a)(1).) It is open to question whether a company could be held liable in negligence for not doing more than required by law.

car cameras and requiring drivers to undergo sexual harassment/assault training, as well as failing to warn female passengers about the risk of sexual assault by an Uber driver. (E.g., Compl. ¶¶ 35, 38, 113, 168, 171, 195, 197.) Uber does not address all of these theories in its moving papers, such as the failure to warn and mandatory training claims, much less present evidence sufficient to negate Plaintiffs' claim of causation. "Having failed to address the theory of causation set forth" in Plaintiffs' complaint, Uber failed to shift the burden to Plaintiffs, and its motion must be denied on that ground alone. (*Union Pacific Railroad Co.*, 43 Cal.App.5th at 983; see also *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 945 [where the defendant's summary judgment motion did not negate all theories of liability, "the trial court should have held that [the defendant] failed to carry his initial burden and stopped there"].)

Second, even if Uber had met its burden, it misconceives the legal standard for causation. Under California law, Plaintiffs need only show that Uber's negligence was a "substantial factor" in causing their harm. (*Union Pacific Railroad Co.*, 43 Cal.App.5th at 981 ["In order for a plaintiff to satisfy the causation element of a negligence cause of action, he or she must show the defendant's act or omission was a substantial factor in bringing about the plaintiff's harm."], quoting *Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1104; CACI No. 430.) This is not a rigorous standard:

> Causation in fact is ultimately a matter of probability and common sense: A plaintiff is not required to eliminate all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant than it was not. The fact of causation is incapable of mathematical proof, since no person can say with absolutely certainty what would have occurred if the defendant had acted otherwise. If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case.

(*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1029-1030 (cleaned up).) That does not mean, as Uber contends, that *Plaintiffs* must show at this stage that specific safety measures "would have prevented these specific assaults – the precise harm to the Plaintiffs at issue." (Opening Brief, 35.) "In order to defeat defendant's summary judgment motion, plaintiff only needed to raise a triable issue of material fact as to the issue of causation; she did not need to *establish* that element of her negligence cause of action." (*Raven H.*, 157 Cal.App.4th at 1021.) Thus, Plaintiffs need only present evidence from which a jury

could conclude that it was "more probable than not that additional security precautions would have prevented the attack," not that "such security measures would absolutely have prevented an attack." (*Sandoval v. Bank of America* (2002) 94 Cal.App.4th 1378, 1387.) Where a plaintiff shows that a defendant "omitted an available safety feature designed to prevent this very type of foreseeable accident," a reasonable jury could find proximate cause, and summary judgment is not warranted. (*Ortiz*, 2025 WL 1778776, at *7; accord, *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 121 ["It is particularly appropriate that the jury be allowed to determine the inference to be drawn when the evidence indicates that a safety device, designed to prevent the very injury that occurred, was not present."].)

Third, Plaintiffs do, indeed, present such evidence. Two examples will suffice.

(a) Uber contends that requiring drivers to utilize dashcams to record their interactions with passengers would be operationally and technologically infeasible for a variety of reasons. (Opening Brief, 29-31; see also Reply, 12.) However, Plaintiffs present uncontested testimony to the effect that dashcam cameras were readily available for installation in cars at the time of Plaintiffs' assaults, and that fleet telematics service companies were offering fleet services to provide dashcams with cellular data links and remote video storage, thereby making such products and services feasible for wide deployment in passenger vehicles. (Feldis Decl. ¶¶ 5-10; see Opposition, 30-31.) Plaintiffs' evidence further shows that Uber was aware of potential dashcam solutions as early as February 2016 and studied the feasibility of adding video cameras to driver vehicles in October 2017. (Feldis Decl. ¶¶ 11-13; PAUMF 116-136.) Indeed, starting in October 2018, Uber began conducting dashcam pilot programs in numerous U.S. cities. (*Id.* ¶¶ 14-15.) Thus, there are disputed issues of material fact as to the feasibility and potential availability of this proposed safety measure.

(b) Uber asserts that "Plaintiffs offer no evidence suggesting that an option to allow riders to require or prefer female drivers would be lawful or operationally feasible." (Opening Brief, 32; see also Reply, 14.) Plaintiffs do, in fact, offer such evidence. (See Opposition, 29-30; PAUMF 15-23, 212-214, 216-222.) Remarkably, moreover, on July 23, 2025—just a week before the hearing on its motion—Uber itself issued a press release announcing its imminent introduction of just such a program, entitled "Women Preferences," in three cities (Los Angeles, San Francisco, and Detroit). (Uber Newsroom,

"Coming Soon: Women Preferences" (July 23, 2025), https://www.uber.com/newsroom/women-preferences/.) That press release states that Uber "first launched Women Rider Preference in Saudi Arabia in 2019," and that since then, "the feature has expanded to 40 countries, completing over 100 million trips." (*Id.*)[20] Uber's own statements and conduct cast doubt on the veracity and credibility of its litigation posture and, at a minimum, raise triable issues of fact.

In short, Plaintiffs' opposition is sufficient to create triable issues of fact regarding proximate causation, particularly because Plaintiffs' evidence must be liberally construed and all reasonable inferences must be drawn in their favor. (See, e.g., *Raven H.*, 157 Cal.App.4th at 1026-1030 [reversing summary judgment where there were triable issues of material fact regarding whether landlord's failure to provide security measures was proximate cause of tenant's injuries from sexual assault by intruder]; *Ingham*, 93 Cal.App.4th at 1054-1055 [genuine issue of material fact about causation of taxicab passenger's injuries precluded summary judgment]; *Huang*, 4 Cal.App.5th at 347-348 [genuine issues of material fact as to whether casino's operation of shuttle bus was proximate cause of patron's injuries precluded summary judgment].) "While a court may decide factual questions if no rational juror could find to the contrary, that is certainly not the case here." (*Ingham*, 93 Cal.App.4th at 1055.)

### B. Whether The Drivers' Conduct Is A Supervening Cause Raises Disputed Issues Of Material Fact.

Finally, Uber contends that the drivers' conduct is a supervening cause because Uber is not liable for the independent criminal acts of third parties. (Opening Brief, 35-37.) The argument requires only brief discussion.

First, the argument is inconsistent with the Court's conclusion that Uber is a common carrier with a heightened duty of care to protect its passengers from sexual assaults by its drivers, and with the authority (notably, *Berger* and Judge Breyer's decision in *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*) on which that conclusion is based. If such an assault were a superseding cause that absolved the common carrier of liability, then those cases could not have been decided the way they were. Indeed, *Berger* explicitly held that the railroad could be held liable for the sexual assault by its porter even

[20] Lyft launched its female matching option in September 2023. (PAUMF 20.)

though there was no evidence that it had negligently employed him or that he had any propensity to molest passengers. (144 Cal.App.2d at 5.)

Second, "a third party's conduct is a superseding force cutting off the defendant's liability only if it was unforeseeable and the injury it caused was unforeseeable under the circumstances of the case." (*Huang*, 4 Cal.App.5th at 348.) "A central consideration in evaluating proximate cause is foreseeability." (*Ortiz,* 2025 WL 1778776, at *5.) "That is particularly true in cases involving a third party's intervening conduct. Courts have found that unforeseeable intervening acts can sever the causal chain in some cases. But courts have found otherwise when the intervening act is foreseeable. . . . In that case, both the original wrongdoer and the intervening actor may be deemed a proximate cause of an injury." (*Id.*; accord, *The Law Firm of Fox & Fox v. Chase Bank, NA* (2023) 95 Cal.App.5th 182, 205 ["Foreseeability is therefore the touchstone of the supervening cause analysis."].) "Ordinarily, foreseeability is a question of fact for the jury. It may be decided as a question of law only if the undisputed facts there is no room for a reasonable difference of opinion." (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 (cleaned up).) "Moreover, it is settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Id.* at 57-58.)

Whether the drivers' conduct constitutes a supervening cause turns on whether it was foreseeable by Uber. Here, Plaintiffs have presented substantial evidence, drawn from Uber's own data, of the prevalence of incidents of sexual assault and sexual misconduct by Uber drivers during the years preceding (and following) Plaintiffs' incidents. (Madigan Decl. ¶¶ 13-23; see also Opposition, 35; PAUMF 33-40, 66, 186-187, 189-190.) They also offer evidence that the rates reported by Uber may significantly underestimate the true rate of such incidents on the Uber platform, in light of the general recognition that such incidents are frequently under-reported. (Madigan Decl. ¶¶ 24-36.) Thus, there are material disputed issues of fact regarding foreseeability that preclude summary judgment on this ground. (See, e.g., *Hoyem v. Manhattan Beach City School Dist.* (1978) 22 Cal.3d 508, 520-521 [whether school district's negligent supervision of students on campus proximately caused plaintiff's off-campus injury when he was struck by a motorcycle after leaving school premises before the end of scheduled classes was a question of fact for the jury].)

**CONCLUSION**

For the foregoing reasons, Uber's motion for summary judgment or, in the alternative, summary adjudication is denied.

IT IS SO ORDERED.

Dated: July 31, 2025

Ethan P. Schulman
Judge of the Superior Court

**CERTIFICATE OF ELECTRONIC SERVICE**

(CCP sec. 1010.6(6) & CRC 2.260(g))

I, Edward Santos, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On July 31, 2025, I electronically served:

**ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Date: JUL 3 1 2025

Brandon E. Riley, Court Executive Officer

By: *Edward J. Santos*

Edward Santos, Deputy Clerk