# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB

**************************************************

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**************************************************

VIDEOTAPED 30(b)(6) DEPOSITION OF

MARIANA CORREA ESTEVES

Via Videoconference

Thursday, August 28, 2025

9:35 a.m. to 7:39 p.m. CDT

Witness appearing remotely from São Paulo, Brazil

Job No. 6954925-001

Pages: 1 to 337

Stenographically Reported By:

LEAH M. WITT, CRR, RPR

Within Uber's -- the safety -- Uber has considered having cameras in cars for safety reasons going as far back as 2015, right?

A. I'm aware of discussions and different discussions among different areas at Uber discussing recording devices that, to my knowledge, go back to around 2015.

Q. Okay.

MS. LONDON: If we can go ahead and pull up the next numbered exhibit, which is Tab 10.

(Exhibit No. 2005 marked for identification at 12:39 p.m.)

BY MS. LONDON:

Q. And this is a document with the Bates ending in 39175, and this is an email chain, and I want to go ahead draw your attention, please, to 181. The Bates at the bottom of 181.

All right. You'll see on -- the email is on Tuesday, October 13th, 2015. He states -- this is an email from Will McCollum to Mac.

Do you know who Mac is?

A. Let me just confirm the email address. One second.

Q. I draw your attention to the bottom right where it says Andrew Macdonald.

A. Oh, yeah, if it's Andrew Macdonald, I know who that is.

Q. All right. Who's Andrew Macdonald?

A. As of today he is the senior VP of Uber operations.

Q. Okay. And in 2015 Will McCollum, he's the Uber Colorado general manager.

You see that on the bottom right on 182?

A. 182? One second. Will McCollum, Uber Colorado -- yeah. Yeah, I see that.

Q. Okay. So on Tuesday, October 13, 2015, Will McCollum, who's a Uber Colorado general manager, writes to Andrew Macdonald.

You see that?

A. I see that.

Q. And he writes, "TL;DR, TripCam," and it's a "New tablet available to drivers to install in the back seat of uberX," and it talks about a "Video Records Riders."

Do you see that?

A. I see that.

Q. All right. And then on the right and on the bottom of page 182, it says, "As an aside, the Safety & Prevention team has reached out to Colorado team to pilot having cameras available to drivers

with the idea of increasing supply hours, increasing women drivers, and reducing rates of incidence."
That's what it says, right?
A. That's what it says, correct.
Q. Okay. And then if you go to page 181, if you go up, Andrew Macdonald, he responds, says, "Will."
Do you see that?
A. Yes.
Q. He says, "Regarding piloting in cars - who is leading that effort? This is something we sometimes deal with in regulatory discussions - we need to be very careful in testing this anywhere. We do not want this to find a way into regulations, as it would be majorly expensive and a major drag on conversion." That's what it says, right?
A. I can see it's what it says here, yes.
Q. All right. And in the very last sentence, it says, quote, "Plus, it begs the question of what are we solving for, since we argue everywhere that we are the safest ride on the road without cameras. So lots to consider here."
That's what it says, right?
A. I can see it's what it says.
Q. And then if you go up, Phil Cardenas on

October 13th, 2015.
A. Okay.
Q. He writes -- and if you look down, it says A/C Privilege.
That's attorney-client privilege, right?
A. Yes.
Q. And he writes, "Hey Mac, I understand your concerns, but we also need to take risks when testing incident reduction techniques."
You see that?
A. I see that.
Q. Okay. And then let's go to the next page.
Andrew Macdonald responds on October 14th, 2015, and he writes, "I think we are underestimating the risk of setting precedent here."
You see that?
A. I see that.
Q. And it goes on to say, "When cities tries to make an argument for mandatory cameras in cars (which has happened, though not a major theme right now), we use many arguments in response, including" -- and can you read the following?
A. "It isn't feasible from a logistics perspective."
Q. Keep going.

A. "It's too costly, drivers are part time and this adds friction for them, et cetera, et cetera, et cetera."
Q. And he says, "I worry that we disarm these arguments somewhat by rolling this out."
That's what he wrote, right?
A. It's what it says here, yeah.
Q. Okay. You can put that aside.
MS. LONDON: Now I'm going to move to Tab Number 11, which is Exhibit --
MS. PALUMBO: 2006.
MS. LONDON: 2006.
(Exhibit No. 2006 marked for identification at 12:45 p.m.)
BY MS. LONDON:
Q. And before I get there -- no, that's okay. In 20 -- Exhibit 2006, and the bottom Bates is 01217.
And before I get there, Ms. Esteves, do you know one way or the other whether that Colorado pilot ever happened?
A. So based on my knowledge, we did pilots in 2017 for Phoenix, Arizona, New York, Florida the next year, and continue to do other pilots in the U.S.