Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | CASE NO. 3:23-MD-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO PARTIALLY EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT JULIE A. MOORE**<br><br>Judge: Hon. Charles R. Breyer<br><br>Courtroom: 6 – 17th Floor |

## NOTICE OF MOTION AND MOTION TO EXCLUDE

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding certain opinions of Plaintiff's expert Julie A. Moore.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: November 13, 2026

KIRKLAND & ELLIS LLP

By: */s/ Geoffrey M. Wyatt*

*Counsel for Uber*

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION AND BACKGROUND .......... 1**

**II. STATEMENT OF THE ISSUES TO BE DECIDED .......... 2**

**III. LEGAL STANDARD .......... 3**

**IV. ARGUMENT .......... 4**

A. The Court Should Exclude Ms. Moore's Opinions About Uber's Legal Duties Or Responsibilities. .......... 4

B. The Court Should Exclude Ms. Moore's Anecdotes About Other Reports Of Alleged Background Check Misses. .......... 6

C. The Court Should Exclude Ms. Moore's Statements Regarding The Frequency Of Reports Of Sexual Assault And Sexual Misconduct On The Uber Platform—Including The Claim That There Was One Such Report Every Eight Minutes. .......... 8

D. The Court Should Exclude Ms. Moore's Unsupported Claim That "No Data" Supports Utility Of Name-Based Background Checks. .......... 9

E. The Court Should Exclude Ms. Moore's Unsupported Opinion That Uber Should Have Had Checkr Search Civil Records As Part Of Mr. Le's Background Check. .......... 10

F. The Court Should Exclude Ms. Moore's Opinion That Uber's Sexual Assault Training Was Inadequate Because There Is No Evidence That Additional Training For Mr. Le Would Have Prevented Plaintiff's Alleged Injury. .......... 11

G. The Court Should Exclude Ms. Moore's Opinion That Uber Failed To Comply With Standard HR Practices In Its Investigation Of The Report Made Against Mr. Le By Passenger Ming. .......... 13

**V. CONCLUSION .......... 13**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*,
840 F. Supp. 3d 545 (N.D. Cal. 2026) ....................9

*Boyer v. City of Simi Valley*,
No. 2:19-cv-00560-DSF-JPR,
2024 WL 993316 (C.D. Cal. Feb. 13, 2024)....................4

*Cabrera v. Cordis Corp.*,
945 F. Supp. 209 (D. Nev. 1996), *aff'd*, 134 F.3d 1418 (9th Cir. 1998) ....................12

*Cooper v. Firestone Tire & Rubber Co.*,
945 F.2d 1103 (9th Cir. 1991) ....................8

*Cuevas v. E.I. DuPont de Nemours & Co.*,
956 F. Supp. 1306 (S.D. Miss. 1997)....................7

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ....................12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................4, 11

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002) ....................10, 12

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ....................4

*Gable v. Nat'l Broad. Co.*,
727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd*, 438 F. App'x 587 (9th Cir. 2011) ....................11

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................4

*Glenn v. B & R Plastics, Inc.*,
326 F. Supp. 3d 1044 (D. Idaho 2018) ....................12, 13

*Grimes v. Wal-Mart Stores Texas, LLC*,
No. MO-10-cv-067, 2012 WL 12883080 (W.D. Tex. Jan. 23, 2012) ....................5

*Guidroz-Brault v. Missouri Pac. R.R. Co.*,
254 F.3d 825 (9th Cir. 2001) ....................10, 13

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ..........6

*Hyer v. City & Cnty. of Honolulu*,
118 F.4th 1044 (9th Cir. 2024) ..........6

*Johnson v. Wyeth LLC*,
No. CV 10-02690-PHX-FJM, 2012 WL 1204081 (D. Ariz. Apr. 11, 2012)..........7, 8

*Keams v. Tempe Tech. Inst., Inc.*,
993 F. Supp. 714 (D. Ariz. 1997) ..........3

*Knox v. PPG Indus., Inc.*,
No. 15-cv-1434, 2018 WL 11423313 (W.D. Pa. Mar. 15, 2018)..........5

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..........11

*Louie v. British Airways, Ltd.*,
No. A01-0329 CV(JKS),
2003 WL 22769110 (D. Alaska Nov. 17, 2003)..........11

*Madrigal v. Mendoza*,
639 F. Supp. 2d 1026 (D. Ariz. 2009) ..........12, 13

*Magallon v. Robert Half Int'l, Inc.*,
743 F. Supp. 3d 1237 (D. Or. 2024) ..........11

*McConnell v. Wal-Mart Stores, Inc.*,
995 F. Supp. 2d 1164 (D. Nev. 2014)..........12, 13

*Moussouris v. Microsoft Corp.*,
311 F. Supp. 3d 1223 (W.D. Wash. 2018)..........7, 8

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ..........6

*Neely v. PSEG Texas, LP*,
No. MO-10-cv-030,
2012 WL 12877923 (W.D. Tex. May 29, 2012) ..........5

*Optical Sols., Inc. v. Nanometrics, Inc.*,
No. 18-cv-00417-BLF, 2023 WL 8101885 (N.D. Cal. Nov. 21, 2023) ..........4, 5

*Pepin v. PC Connection, Inc.*,
No. 08-C-470, 2010 WL 5572420 (N.H. Super. Ct. June 14, 2010) ..........5

*Porter v. Whitehall Lab'ys, Inc.*,
9 F.3d 607 (7th Cir. 1993) ..........8

*Powell v. Anheuser–Busch Inc.*,
No. CV 09-729-JFW, 2012 WL 12953439 (C.D. Cal. Sept. 24, 2012)....7, 8

*Senne v. Kansas City Royals Baseball Corp.*,
591 F. Supp. 3d 453 (N.D. Cal. 2022)....12

*Snyder v. Bank of Am., N.A.*,
No. 15-cv-04228-KAW, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020)....9, 10, 11

*United States v. 99.66 Acres of Land*,
970 F.2d 651 (9th Cir. 1992)....3

*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017)....6

*United States v. Santini*,
656 F.3d 1075 (9th Cir. 2011)....9

*Utica Mut. Ins. Co. v. Lifequotes of Am., Inc.*,
No. CV-06-0228-EFS, 2011 WL 1984423 (E.D. Wash. May 20, 2011)....6

**Statutes**

Cal. Bus. & Prof. Code § 7458(c)....5

**Rules**

Fed. R. Evid. 402....12

Fed. R. Evid. 403....8

Fed. R. Evid. 702....*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND BACKGROUND

Plaintiff's expert Julie A. Moore seeks to testify that: (1) Uber failed to comply with standard HR practices in its background screening process and its onboarding of the driver in this case, Mr. Hung Quang (Michael) Le, *see generally* 10/13/26 Supplemental Report of Julie A. Moore, Esq. ("Rpt.") at 3-80 (Ex. 1), and (2) Uber failed to comply with standard HR practices in its investigation of the two reports made against Mr. Le—one by Plaintiff A.R. and another several weeks earlier by a passenger identified as "Ming," *see generally id.* at 80-127.

As a general matter, Uber does not seek to preclude Ms. Moore from testifying about standard HR practices in the ridesharing industry. Uber will instead address those opinions through cross-examination. In several places, however, Ms. Moore's report veers outside its stated scope and instead offers impermissible legal conclusions, factual recitations, *ipse dixit*, and other assertions that are inadmissible on a variety of grounds. In particular, the Court should exclude the following portions of Ms. Moore's report and testimony:

*First*, Ms. Moore should not be allowed to testify that Uber failed to satisfy duties and obligations imposed by the law. Although Ms. Moore is entitled to opine as to whether Uber violated HR industry standards, she should not be allowed to invade the province of the Court and the jury by testifying that Uber violated the law, as several courts have held in limiting or excluding her opinions in other litigation.

*Second*, the Court should bar Ms. Moore from discussing other instances where drivers with criminal histories purportedly slipped through the background check process. This portion of Ms. Moore's report is pure factual recitation without expert analysis. It is also irrelevant, because the purported background check failures in those other cases have nothing to do with the purported background check failure at issue here (i.e., whether Checkr's treatment of Mr. Le's aliases was consistent with HR industry standards). Finally, admission of these anecdotes would risk unfair prejudice to Uber and would require mini-trials on what happened in these unrelated instances.

*Third*, the Court should exclude Ms. Moore's statements about the frequency of reported instances of sexual assault or sexual misconduct on the Uber platform, including the claim that one such incident was reported every eight minutes from 2017 to 2022. These statements, too, are purported factual

recitations without expert analysis. They also lack context and comparators necessary to make them helpful to the trier of fact. Moreover, these claims are well outside Ms. Moore's area of expertise in HR and employment law.

*Fourth*, the Court should exclude Ms. Moore's unsupported assertion that "no data" exists supporting the efficacy of Checkr's name-based background check methodology. Ms. Moore cites an internal Uber document for that proposition, but she mischaracterizes it. What the document actually says is that Uber has not ***independently*** researched the utility of this background check methodology, which does not provide a reliable basis for Ms. Moore's assertions in her report.

*Fifth*, the Court should similarly exclude Ms. Moore's unsupported assertion that standard HR practices called for Checkr to search civil court records (including temporary restraining orders) as part of its background screenings of driver applicants like Mr. Le. This, too, is nothing more than Ms. Moore's own personal view—and therefore not an admissible expert opinion—because she cites no objective standard providing that civil court record searches are standard practice in the HR industry for background checks.

*Sixth*, the Court should exclude Ms. Moore's opinion that Uber failed to adequately train Mr. Le on the topic of sexual assault and sexual misconduct. This opinion, relegated to a footnote, does not fit the facts of the case—and is therefore not relevant to the jury's determination of any material fact at issue—because there is no evidence that additional training would have prevented Plaintiff's alleged injury.

*Finally*, the Court should exclude Ms. Moore's opinion that Uber failed to comply with standard HR practices in its investigation of Ming's report against Mr. Le. This, too, does not fit the facts of the case because there is no evidence that any incident of sexual assault or misconduct actually occurred between Ming and Mr. Le, meaning that a more thorough investigation would not have led to Mr. Le's deactivation from the platform.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the statements throughout Ms. Moore's report that Uber failed to satisfy duties or obligations imposed by the law are inadmissible legal conclusions.

2. Whether the anecdotes in Ms. Moore's report about other instances where drivers with criminal histories purportedly slipped through Uber's background check process are inadmissible because

they (a) are pure factual recitations, (b) are irrelevant, and (c) lack necessary context.

3. Whether Ms. Moore's statements about the frequency of reported incidents of sexual assault on the Uber platform—including the claim that there was one such report every eight minutes between 2017 and 2022—are inadmissible because they (a) are purported factual recitations, (b) lack necessary context, and (c) are outside Ms. Moore's field of expertise.

4. Whether Ms. Moore's statement that "no data" supports the efficacy of Checkr's background check methodology should be excluded as *ipse dixit*.

5. Whether Ms. Moore's assertion that standard HR practices required Uber to have Checkr search civil court records as part of its background checks of Mr. Le should also be excluded as unsupported *ipse dixit*.

6. Whether Ms. Moore's opinion that Uber failed to adequately train Mr. Le on the topic of sexual assault and sexual misconduct should be excluded on the ground that it does not fit the facts of the case.

7. Whether Ms. Moore's opinion that Uber failed to comply with standard HR practices in its investigation of Ming's report against Mr. Le should also be excluded on the ground that it does not fit the facts of the case.

## III. LEGAL STANDARD

Under Federal Rule of Evidence 702, the party offering testimony of a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" must demonstrate to the Court by a preponderance of the evidence that (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. A witness may only offer opinion testimony if she qualifies as an expert "by knowledge, skill, experience, training, or education[.]" *Id.*; *see also Keams v. Tempe Tech. Inst., Inc.*, 993 F. Supp. 714, 721 (D. Ariz. 1997) (quoting Rule 702 and explaining that witness's "expert status would not survive the close scrutiny demanded by Rule 702"); *United States v. 99.66 Acres of Land*, 970 F.2d 651, 657 (9th Cir. 1992) (affirming expert's exclusion and noting that "testimony is properly excluded

when foundational facts demonstrating qualification are absent").

Because expert testimony "can be both powerful and quite misleading," the Court plays an important "gatekeeping role" in ensuring that the requirements of Rule 702 are satisfied. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 597 (1993); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) (emphasizing the trial court's "'gatekeeper' role" in "screening" expert evidence for fit and reliability). Recent amendments to Rule 702 underscore the importance of that gatekeeping role and emphasize that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" go to the admissibility of expert evidence, not its weight. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment).

The U.S. Court of Appeals for the Ninth Circuit has unequivocally held that, under amended Rule 702, there is no longer a "'liberal thrust' favoring admission" or any "categorical preference for admitting expert testimony." *Engilis*, 151 F.4th at 1050 (citation omitted); *see also Optical Sols., Inc. v. Nanometrics, Inc.*, No. 18-cv-00417-BLF, 2023 WL 8101885, at *1 (N.D. Cal. Nov. 21, 2023) (describing the newly amended Rule 702 as a "more stringent standard"); *Boyer v. City of Simi Valley*, No. 2:19-cv-00560-DSF-JPR, 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024) (noting that, under the 2023 amendments to Rule 702, "[t]he Court is required to analyze the expert's data and methodology at the admissibility stage more critically than in the past"). Rather, "a proponent of expert testimony must always establish the admissibility requirements of Rule 702 by a preponderance of the evidence," or the Court must exclude the testimony. *Engilis*, 151 F.4th at 1050.

## IV. ARGUMENT

### A. The Court Should Exclude Ms. Moore's Opinions About Uber's Legal Duties Or Responsibilities.

Ms. Moore frequently crosses the line from opining that Uber's actions were inconsistent with standard HR practices to opining that Uber's actions were inconsistent with its duties or obligations under the law. *See, e.g.*, Rpt. at 5 (opining that Uber's purported miss of criminal conviction on Mr. Le's background check "was in derogation of [Uber's] criminal background checking responsibilities under California law/regulations"); *id.* at 53 (opining that Uber had a "duty and responsibility" to collect name

history and aliases from Mr. Le); *id.* at 71 (opining that Uber has "distinct and inescapable legal obligations" to screen drivers); *id.* at 76 (opining that Uber had an "obligation to ascertain whether Mr. Le was fit" to be a driver on the Uber platform). Moreover, Ms. Moore often grounds her opinions in legal standards borrowed from the employment law context, implying that a company acts unlawfully by failing to follow her recommendations. *See, e.g.*, *id.* at 60 ("Uber's actions in granting Mr. Le . . . access to its platform[] was a violation of [Cal. Bus. & Prof. Code § 7458(c)]."); *id.* at 104 (relying on EEOC guidance "that companies are required to investigate" reports of sexual assault). Ms. Moore further states that Uber has a "responsibility" to follow the standard HR practices for its background check process that she recommends, and that doing so is "consistent with California law/regulations." *Id.* at 66.[1]

These are improper legal conclusions and should be excluded. Even Ms. Moore acknowledged in the *Dean* case that it "would be inappropriate for an HR expert" to "render[] . . . opinions about whether any of Uber's actions comply with the law or do not comply with the law." 11/13/25 Moore Dep. 87:18-23. That is precisely the type of opinion Ms. Moore offers here.

Numerous courts have excluded similar testimony by Ms. Moore because it improperly invades the province of the jury. *See Knox v. PPG Indus., Inc.*, No. 15-cv-1434, 2018 WL 11423313, at *2 (W.D. Pa. Mar. 15, 2018) ("Moore's testimony would suggest a higher standard than what the law requires."); *Grimes v. Wal-Mart Stores Texas, LLC*, No. MO-10-cv-067, 2012 WL 12883080, at *3 (W.D. Tex. Jan. 23, 2012) (Moore's opinion that defendant "failed to abide by sound employment practices . . . in connection with the investigation into alleged misconduct" excluded as a legal conclusion); *Neely v. PSEG Texas, LP*, No. MO-10-cv-030, 2012 WL 12877923, at *2-3 (W.D. Tex. May 29, 2012) (excluding Ms. Moore's opinions about a company's disability accommodation policies as "legal conclusions that invade that province of the jury"); *Pepin v. PC Connection, Inc.*, No. 08-C-470, 2010 WL 5572420 (N.H. Super. Ct. June 14, 2010) ("The Court finds that if Ms. Moore testifies to her opinions of the reasonableness of

[1] Likewise, at her November 13, 2025 deposition in the *Dean* case, Ms. Moore repeatedly framed her opinions as legal conclusions, testifying, for example, that employers should "follow standard HR practices . . . if they are exercising reasonable care, if they want to do the right thing." 11/13/2025 Moore Dep. 132:14-18 (Ex. 2); *see also id.* 131:9-16 ("[W]hen we're dealing with something like negligence, negligent hiring, training or supervision, then whether a violation of a standard HR practice may well inform whether an employer acted consistently with or fell below the standard of care, because industry standards essentially set the standard of care."); *id.* 134:21-23 (opining that "the HR field, you know, is intertwined to some degree with the law").

the Defendant's actions, she will, in fact, prejudice the jury, who is more than capable of determining whether the Defendants' actions were reasonable.").

These rulings are consistent with Ninth Circuit law distinguishing between expert testimony describing industry customs or standards—which is permissible—and expert testimony that a failure to meet such standards was negligent or in breach of some legal duty, which impermissibly intrudes on the role of the Court and the jury. *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008) (allowing expert to testify about "industry conditions, standards, and practices," but not that failure to follow standards was "wrongful"); *Utica Mut. Ins. Co. v. Lifequotes of Am., Inc.*, No. CV-06-0228-EFS, 2011 WL 1984423, at *3-4 (E.D. Wash. May 20, 2011) (permitting expert testimony about insurance industry standards but excluding expert testimony as to "whether [the insurer] acted reasonably"). This rule is a corollary of the more general principle that expert testimony is inadmissible under Rule 702(a) when it "represent[s] an attempt to instruct the jury on the law, or [on] how to apply the law to the facts of the case." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024) (quoting *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017)); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[I]nstructing the jury as to the applicable law 'is the distinct and exclusive province' of the court.") (citation omitted).

This Court should draw the same line as other courts and bar Ms. Moore from testifying that Uber acted unreasonably, negligently, or in breach of some legal duty.

### B. The Court Should Exclude Ms. Moore's Anecdotes About Other Reports Of Alleged Background Check Misses.

The Court should also exclude Ms. Moore's anecdotal testimony about other instances apart from this case in which Uber's background check process reportedly missed a driver's criminal history. *See* Rpt. at 11-13. These statements by Ms. Moore are inadmissible for four independent reasons.

***First***, they are not expert opinions at all, but rather mere recitations of the factual record—specifically, instances where Uber internal documents reference media reports about drivers with criminal histories purportedly slipping through Uber's background check process. *See id.* at 11-12 (citing Uber internal documents referencing stories in the *Los Angeles Times*, the *Washington Post*, and other outlets). It is axiomatic that an expert may not "merely recite or summarize documents," without providing "some

analysis, opinion, or expertise . . . .” *Johnson v. Wyeth LLC*, No. CV 10-02690-PHX-FJM, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012).

***Second***, Ms. Moore’s anecdotes have no bearing on whether Uber was negligent in its screening of Mr. Le and are therefore irrelevant and inadmissible. In Ms. Moore’s own telling, the supposed background check failures referenced in the cited documents all allegedly occurred because “Uber restricts the background check to the driver’s county of residence or because [Uber] limit[ed] a lookback period to seven years.” Rpt. at 11. But that is ***not*** what Ms. Moore opines happened in this case. Instead, Ms. Moore contends that Checkr missed Mr. Le’s purported criminal history because it failed to adequately account for Mr. Le’s aliases. As such, her statements about Uber’s purported background check failures in other cases are unhelpful to the jury in understanding the evidence or determining a fact at issue. *See* Fed. R. Evid. 702(a).

***Third***, the anecdotes should also be excluded because they lack context necessary for the jury to understand their significance. All Ms. Moore offers are isolated, unrepresentative examples of background checks that purportedly missed criminal history in other cases; but she offers no opinion about how frequently these problems occur relative to the number of times that Uber’s background check process successfully prevents an applicant with a disqualifying criminal history from joining the platform. These anecdotes should therefore be excluded as meaningless and misleading.[2] *See Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1244-45 (W.D. Wash. 2018) (excluding HR consultant’s expert testimony that relied on a small, unrepresentative sample of complaints); *Powell v. Anheuser–Busch Inc.*, No. CV 09-729-JFW (VBKx), 2012 WL 12953439, at *6-7 (C.D. Cal. Sept. 24, 2012) (excluding expert opinion where the expert’s testimony “fail[ed] to provide a complete picture of the relevant events,” “attempt[ed] to offer opinions without a full understanding or knowledge of the facts of [the] case,” and “failed to sufficiently consider the relevant underlying facts necessary to support his opinions and conclusions”); *see also Cuevas v. E.I. DuPont de Nemours & Co.*, 956 F. Supp. 1306, 1310 (S.D. Miss. 1997) (expert opinion properly excluded when “there is no comparison for the jury to evaluate” because such “testimony

---

[2] The Court rejected an analogous argument in the context of Uber’s Motion to Exclude Plaintiff’s Expert Lacey Keller in the *Dean* case, *see* Dkt. 4941 at 2, but Uber respectfully submits that the Court should revisit that ruling for the reasons set forth above.

is not helpful to the jury") (citing *Porter v. Whitehall Lab'ys, Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)).

***Finally***, Ms. Moore's testimony on supposed background check failures would also run afoul of Federal Rule of Evidence 403. Specifically, these statements by Ms. Moore risk confusing the issues, misleading the jury, undue delay, and wasting time, because they would require mini-trials about what happened in these other, unrelated instances and suggest to jurors that Uber is somehow sloppy based on completely different circumstances. *Cf. Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991) ("A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.").

### C. The Court Should Exclude Ms. Moore's Statements Regarding The Frequency Of Reports Of Sexual Assault And Sexual Misconduct On The Uber Platform—Including The Claim That There Was One Such Report Every Eight Minutes.

The Court should also exclude Ms. Moore's statements on the supposedly "documented statistics and data" regarding the frequency of reports of sexual assault and sexual misconduct on the Uber platform, including the claim that there was one such report in the United States every eight minutes from 2017 to 2022, for multiple reasons.

***First***, like her anecdotal opinions about supposed background check failures, Ms. Moore's statements about the frequency of sexual assault reports are mere factual recitations, not expert opinions. Ms. Moore describes this section of her report as a "[s]ummary of data produced by Uber to Plaintiffs," and recites the statistics without performing any analysis of her own. Accordingly, this is not an admissible expert opinion. *See Johnson*, 2012 WL 1204081, at *3.

***Second***, Ms. Moore's statements regarding the frequency of reported sexual assault and sexual misconduct incidents on the Uber platform lack the context necessary for these claims to be helpful to the jury. *See Moussouris*, 311 F. Supp. 3d at 1244-45; *Powell*, 2012 WL 12953439, at *6-7. A raw statistic that combines events of radically different severity and lacks a meaningful comparator cannot show how often a serious assault occurred, how Uber's reported rate compares with relevant baselines, or whether the numbers bear on negligence. Ms. Moore also does not account for the number of trips taken during the same period, which is the denominator necessary to give any such count meaning. *See* 11/6/2026 Zgoba Rebuttal Rpt. at 15-16 (Ex. 3) (explaining that a reporting interval untethered to the billions of rides on the platform "can create a misleading impression of risk"). Instead, it invites the jury to infer danger

from an undifferentiated total.[3]

Third, even if Ms. Moore were offering some opinion about these frequency statistics that was meant to be helpful to the trier of fact, that opinion would be well outside Ms. Moore's expertise. Ms. Moore is an employment lawyer and HR consultant, not a statistician. *See* 9/26/2025 Report of Julie A. Moore, Esq. at 9-11 (Ex. 4) (describing Ms. Moore's professional background) & App'x A (CV). Although Uber does not contest Ms. Moore's qualification to opine about standard HR practices, that qualification does not entitle Ms. Moore to opine about wholly unrelated topics outside her field. *See, e.g.*, *United States v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011) ("An expert in one field . . . cannot express an opinion relying on data that requires expertise in another field . . . ."); *Snyder v. Bank of Am., N.A.*, No. 15-cv-04228-KAW, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020) (precluding expert in one field (real estate) from offering opinions drawing on other fields (loan servicing and credit reporting) because "[e]xpertise in one subject does not necessarily mean the expert will be qualified to testify on all issues that could arise from that subject"); *Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, 840 F. Supp. 3d 545, 557-58 (N.D. Cal. 2026) (similar). Ms. Moore's statements regarding the frequency of reported sexual assault or sexual misconduct on the Uber platform should be excluded for this reason as well.

### D. The Court Should Exclude Ms. Moore's Unsupported Claim That "No Data" Supports Utility Of Name-Based Background Checks.

Ms. Moore also appears to offer the opinion that there is "no data" supporting the efficacy of Checkr's name-based method of conducting background checks (i.e., searching for criminal convictions that correspond to the first and last name of the driver applicant as well as any aliases associated with that applicant per an SSN trace). Rpt. at 9. This is pure *ipse dixit*. The evidence that Ms. Moore cites for this opinion is an Uber internal document, which merely states that ***Uber*** has not independently researched the utility of this background check methodology—not that no such research exists at all. *See id.* at 9-10 (citing UBER_JCCP_MDL_002341376). Accordingly, there is an analytical gap between the opinion Ms. Moore wishes to offer and the document on which she relies for that opinion. Courts routinely exclude expert opinions where the evidence cited by the expert does not actually support the expert's opinion. *See*

---

[3] *See supra* Note 2.

*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606-07 (9th Cir. 2002) (affirming exclusion of expert opinion where studies cited by expert did not offer sufficient support for expert's ultimate opinion); *see also Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (noting that Rule 702 does not permit introduction of expert testimony premised on "unsupported speculation and subjective beliefs"). This Court should do the same.

### E. The Court Should Exclude Ms. Moore's Unsupported Opinion That Uber Should Have Had Checkr Search Civil Records As Part Of Mr. Le's Background Check.

The Court should also exclude Ms. Moore's unsupported opinion that standard HR practices called for Uber to have Checkr search civil records (e.g., temporary restraining orders) as part of its background screening of Mr. Le. *See* Rpt. at 17-20, 73-78. This opinion, too, is inadmissible *ipse dixit* because Ms. Moore's statements in this portion of her report fail to cite or rely on any published standards or other objective sources establishing that searching civil records as part of a background check is the HR industry standard. Indeed, the ***only*** objective standard Ms. Moore cites in this portion of her report is the Workplace Violence Prevention and Intervention American National Standard, published by ASIS International and the Society for Human Resource Management. *Id.* at 17. But Ms. Moore does not claim that this standard says ***anything*** about searching civil records as part of a background check. *Id.* Rather, according to Ms. Moore's report, all this standard says is that standard background screening practices include "rigorous interviewing and the use of background checks, legally conducted, for both employees and contractors where appropriate to the position in question." *Id.* Ms. Moore's reliance on Checkr's website, which markets civil court searches as an "add-on" to its screening packages, *id.* at 32-33, 74-75, is similarly misplaced. A vendor's promotional description of a product is not evidence of standard industry practice.

Notably, the only evidence in the record on this subject is that searches of civil records are ***not*** the industry standard, because civil records—e.g., temporary restraining orders—can be granted without a finding of guilt or wrongdoing and thus do not carry the same evidentiary significance as a criminal adjudication. *See* 11/6/2026 Zgoba Rebuttal Rpt. at 9-10 (Ex. 3).

Tacitly acknowledging her lack of support, Ms. Moore then pivots to the claim that Uber's decision not to direct Checkr to search civil records as part of driver applicant background screenings was inconsistent with Uber's "own stated commitments" regarding safety. Rpt. at 73. But this opinion fares

no better because Ms. Moore does not and cannot cite any evidence that Uber ever committed to searching civil court records as part of its background screenings of driver applicants. Instead, throughout these portions of her report, Ms. Moore repeatedly relies on Uber internal documents discussing passenger safety more generally—including multiple references to a 2017 strategy document stating that drivers with a "detectable history" of sexual assault should be excluded from the platform. *See id.* at 17-19; UBER_JCCP_MDL-000251111 at -.0001 (Ex. 5). That is not in any way a commitment to search civil records.

It goes without saying that an "expert's opinion [must] have a reliable basis in the knowledge and experience of [her] discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) (quoting *Daubert*, 509 U.S. at 592); *see* Fed. R. Evid. 702(c). Enforcing that reliability requirement, trial courts in the Ninth Circuit routinely exclude expert opinions about industry standards where an expert fails to ground their opinion in some objective standard and instead advances only her own, personal view on what the standard ought to be. *See, e.g.*, *Magallon v. Robert Half Int'l, Inc.*, 743 F. Supp. 3d 1237, 1250 (D. Or. 2024) (excluding expert opinion about party's compliance with industry standard where expert "did not identify any specific 'industry standards' in her expert report"); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 830 (C.D. Cal. 2010) (holding that an expert "cannot purport to testify as to a custom and practice without first establishing that such a practice existed"), *aff'd*, 438 F. App'x 587 (9th Cir. 2011); *see also Louie v. British Airways, Ltd.*, No. A01-0329 CV(JKS), 2003 WL 22769110, at *10-11 (D. Alaska Nov. 17, 2003) (disregarding expert affidavit on industry standard and granting summary judgment to defendant where expert did not establish that standard existed at the relevant time). For all of these reasons, the Court should exclude Ms. Moore's opinions about civil court records.

### F. The Court Should Exclude Ms. Moore's Opinion That Uber's Sexual Assault Training Was Inadequate Because There Is No Evidence That Additional Training For Mr. Le Would Have Prevented Plaintiff's Alleged Injury.

The Court should exclude Ms. Moore's opinion that Uber inadequately trained Mr. Le on the topic of sexual assault and sexual misconduct. Rpt. at 81 n.82. This opinion does not fit the facts of the case, *see Daubert*, 509 U.S. at 591, because there is no reason to believe that additional training would have prevented Mr. Le's alleged assault of Plaintiff.

Under Rule 702 and *Daubert*'s "fit" requirement, expert testimony may only be admitted if the Court is "convinced that it speaks clearly and directly to an issue in dispute in the case[.]" *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995); *see also id.* at 1315 (expert testimony must "logically advance[] a material aspect of the proposing party's case"). This fit requirement is more stringent than the Rule 402 relevance standard. *See Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 479 (N.D. Cal. 2022). Here, Ms. Moore's opinion flunks the "fit" test because whether Uber's training of Mr. Le on the topic of sexual assault or sexual misconduct was consistent with standard HR practices does not "speak[] clearly and directly" to a "material aspect" of Plaintiff's case. To the contrary, Uber's training of Mr. Le has little (if any) probative value in the case because there is no evidence that further training would have prevented Plaintiff's alleged injury. Even Ms. Moore appears to acknowledge as much by relegating her entire discussion of Uber's training of Mr. Le to a footnote. *See* Rpt. at 81 n.82.

Trial courts applying *Daubert*'s "fit" requirement routinely exclude expert opinions that a defendant's actions fell short of the industry standard where the expert fails to connect the defendant's alleged shortcomings to the plaintiff's injuries. In other words, freewheeling expert opinions about a defendant's alleged wrongdoing are not admissible; the wrongdoings at issue must bear a causal relationship to the plaintiff's injuries. *See, e.g.*, *Madrigal v. Mendoza*, 639 F. Supp. 2d 1026, 1031-32 (D. Ariz. 2009) (in medical malpractice case, excluding plaintiff's expert's opinions that doctor's actions fell short of standard of care, where doctor's purported breaches at issue did not cause plaintiff's injury); *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014) (in slip-and-fall case, excluding expert testimony about defendant's adherence to its own policies where question of adherence was irrelevant to whether defendant's negligence caused plaintiff's injury); *Glenn v. B & R Plastics, Inc.*, 326 F. Supp. 3d 1044, 1050-51, 1058 (D. Idaho 2018) (in products liability case involving step stool, excluding expert opinion that stool could be tipped over or pushed if user's weight placed a certain way, where the plaintiff's accident was not alleged to have occurred in that manner); *see also Cabrera v. Cordis Corp.*, 945 F. Supp. 209 (D. Nev. 1996) (in products liability case alleging silicone toxicity, excluding pathologist's opinion that foreign body was found in plaintiff's tissue because expert could not identify foreign body as silicone), *aff'd*, 134 F.3d 1418 (9th Cir. 1998); *Domingo*, 289 F.3d at 607 (trial court

properly excluded expert where "there was nothing but [expert]'s *ipse dixit* linking" the alleged conduct to the plaintiff's injury). Because Ms. Moore does not and cannot opine that any alleged shortcomings in Uber's training of Mr. Le caused Plaintiff's injury, her opinion about this training does not fit the case and should be excluded.

### G. The Court Should Exclude Ms. Moore's Opinion That Uber Failed To Comply With Standard HR Practices In Its Investigation Of The Report Made Against Mr. Le By Passenger Ming.

Finally, the Court should exclude Ms. Moore's opinion that Uber failed to comply with standard HR practices in its investigation of a report submitted by a passenger identified as "Ming." Rpt. at 97-111. Although Mr. Ming made a report about Mr. Le that included the word "rapist," there is no basis to believe he intended to report sexual assault or misconduct. Mr. Ming, who is not a native English speaker, made a number of other reports in connection with the same ride, including lost item reports and reports of mechanical issues with Mr. Le's vehicle, *see* UBER-MDL3084-DFS00144587, UBER-MDL3084-DFS00054771 (collectively, Ex. 6). Ms. Moore does not address any of these facts, but instead impermissibly assumes that Mr. Ming's single-word report indicates an instance of sexual assault or misconduct. *See Guidroz-Brault*, 254 F.3d at 830-31 (affirming exclusion of expert where "there was no factual basis for the assumption" made by the expert).

Given the strong circumstantial evidence that Mr. Ming's report of "rapist" was a mistake or a mistranslation, there is no reason to believe that a more thorough investigation by Uber would have led to Mr. Le's deactivation from the platform or otherwise prevented Plaintiff's alleged injury. Accordingly, this opinion, too, should be excluded. *See, e.g.*, *Madrigal*, 639 F. Supp. 2d at 1031-32; *McConnell*, 995 F. Supp. 2d at 1169; *Glenn*, 326 F. Supp. 3d at 1050-51, 1058.

## V. CONCLUSION

For the foregoing reasons, the Court should exclude the portions of Ms. Moore's report and testimony discussed above and limit Ms. Moore to testifying about whether Uber's screening and onboarding of Mr. Le, as well as Uber's investigation of Plaintiff's report against Mr. Le, were consistent with standard HR practices.

DATED: November 13, 2026

Respectfully submitted,

*/s/ Geoffrey M. Wyatt*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send Notification of the filing to all counsel of record.

*/s/ Geoffrey M. Wyatt*
Geoffrey M. Wyatt, P.C.