Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | CASE NO. 3:23-MD-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT THOMAS R. TREMBLAY; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge: Hon. Charles R. Breyer<br><br>Courtroom: 6 – 17th Floor |

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, to exclude the opinions of Plaintiff's Expert Thomas R. Tremblay.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matter as may be offered at the time of the hearing of this motion.

DATED: November 13, 2026

**KIRKLAND & ELLIS LLP**

*/s/ Geoffrey M. Wyatt*
*Counsel for Uber*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Thomas Tremblay, a former law enforcement officer, seeks to offer opinions that are not supported by a reliable methodology, are not relevant to any issues presented in this case, and are otherwise impermissible.

Uber previously argued in *Dean* that Mr. Tremblay should not be allowed to testify that: (1) incidents of sexual assault and sexual misconduct by independent drivers on the Uber platform were foreseeable; (2) Uber knew about such risks; (3) Uber could have prevented or substantially reduced such incidents; and (4) Uber's conduct increased the risk of such incidents, 9/26/2025 Report of Thomas R. Tremblay at 10, 11, 18, 31 (Ex. 1). *See* 11/10/2025 Defs.' Mot. to Exclude Opinions of Pls.' Expert Thomas R. Tremblay in *Dean*,[1] Dkt. 4349. That motion is incorporated herein by reference, and the arguments therein are preserved for appellate review pursuant to the parties' Stipulation. *See* Dkt. 7302.

Mr. Tremblay's additional opinions, offered specifically for the *A.R.* case, are similarly inadmissible.

***First***, Mr. Tremblay seeks to testify that Checkr's background checks on Mr. Hung Quang Le, the third-party driver in *A.R.*, were deficient because they did not consider criminal charges that did not result in a conviction, did not search civil court records, and did not search for all possible aliases Mr. Le may have used. 10/26/2026 Tremblay Suppl. Schedule A.3 at 4-5 (Ex. 2). This opinion is inadmissible because it is unsupported by any objective industry standard or other reliable methodology and therefore reflects only his own subjective beliefs. And Mr. Tremblay's related suggestions that Uber should have used fingerprinting, applicant interviews, references, resumes, and personal-history questionnaires suffer the same defect. *Id.* at 4.

***Second***, Mr. Tremblay seeks to testify that Uber should have employed additional safety measures, including prohibiting solo riders from sitting in the front seat of the vehicle and conducting a post-incident GPS analysis to detect potential "stalking" behavior by the driver. *Id.* at 3, 5-6. These opinions are likewise based solely on Mr. Tremblay's own beliefs, rather than a reliable methodology.

[1] Mr. Tremblay's initial report attached several Plaintiff-specific schedules; the two opinions offered in Schedule A.1 (*Dean*) mirror those offered in Schedule A.3 (*A.R.*).

***Finally***, Mr. Tremblay's opinion that Uber should have conducted a post-incident GPS analysis is separately inadmissible because such a measure could not have altered the outcome of the alleged incident at issue, rendering this opinion irrelevant. And his accompanying characterization of Mr. Le's post-ride movements as "post assault stalking," is highly speculative and unduly prejudicial.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Tremblay's proffered testimony is admissible pursuant to Federal Rule of Evidence 702 where his opinion that Checkr's background checks were inadequate lacks a reliable methodology and is based solely on *ipse dixit*?

2. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Tremblay's proffered testimony is admissible pursuant to Federal Rule of Evidence 702 where his opinion that Uber should have adopted additional safety measures lacks a reliable methodology?

3. Has Plaintiff failed to demonstrate by a preponderance of the evidence that Mr. Tremblay's proffered testimony that Uber should have conducted post-incident GPS analysis is admissible?

## III. LEGAL STANDARD

The standard for admissibility under Fed. R. Evid. 702 is set forth in Uber's Motion to Exclude the Opinions of Plaintiff's Expert Julie A. Moore and incorporated herein by reference.

## IV. ARGUMENT

### A. Mr. Tremblay's Opinions About The Adequacy Of Uber's Background Policies Are Unreliable And Therefore Inadmissible.

"An expert's testimony may [be] excluded where it is based on subjective beliefs or unsupported speculation which is no more than unreliable *ipse dixit* guesswork." *Friend v. Time Mfg. Co.*, 422 F. Supp. 2d 1079, 1081 (D. Ariz. 2005). Enforcing that reliability requirement, trial courts in the Ninth Circuit routinely exclude expert opinions about industry standards where an expert fails to ground his opinion in some objective standard and instead advances only his own, personal view on what the standard should be. *See, e.g.*, *Magallon v. Robert Half Int'l, Inc.*, 743 F. Supp. 3d 1237, 1250 (D. Or. 2024) (excluding expert opinion about party's compliance with industry standard where expert "did not identify any specific 'industry standards' in her expert report"); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 830 (C.D. Cal.

2010) (holding that an expert "cannot purport to testify as to a custom and practice without first establishing that such a practice existed"), *aff'd*, 438 F. App'x 587 (9th Cir. 2011). Here, Mr. Tremblay's opinions regarding Uber's background check policy, as carried out by Checkr, are not based on any objective standard or methodology, but rather his own unsupported beliefs. In other words, they are classic, inadmissible *ipse dixit*.

Mr. Tremblay first opines that, instead of limiting its screening to identifying disqualifying records, Uber's background check policy should essentially build a psychological profile and attempt to predict which applicants may be "predatory offenders" by assessing their supposed "course of conduct," including conduct that never resulted in any finding of wrongdoing. Specifically, Mr. Tremblay contends that Uber should take account of a driver's "course of conduct" and the "low conviction rates for [sexual] offenders," Suppl. Schedule A.3 at 1, 4, by searching for and considering: (1) the existence of criminal charges that are dismissed and thus do not result in a conviction; and (2) civil court records, including temporary restraining orders that were vacated or denied, *id*. at 4. In addition, with respect to the particular driver at issue in this case, Mr. Tremblay opines that "Uber knew or should have known that [Mr. Le] used multiple names" and therefore should have "[b]roaden[ed] its use of alias names in its background and screening processes to include all names and name variations to account for intended and unintended name variations[.]" *Id.* at 3-4. Mr. Tremblay concludes that Uber's failure to have Checkr take these additional steps renders the background check for Mr. Le inadequate. *Id.*

These opinions are not the product of any reliable methodology or application of any relevant industry standard.[2] Indeed, Mr. Tremblay ignores the only objective standard relevant here—California's Transportation Network Company ("TNC") statute—and the fact that Uber acted in accordance with it. The California TNC statute imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber. *See* Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B); *see also* Cal. Bus. & Prof. Code § 7458(a) (incorporating Section 5445.2 of the Public Utilities Code). The statute

[2] Mr. Tremblay's only attempt to identify an industry standard that supports his opinions is his vague assertion, without any citation in support, that the background check measures he proposes are part of "a strategy that has enhanced public safety in settings where applicants apply to work with children, or other vulnerable populations." Suppl. Schedule A.3 at 5. Mr. Tremblay offers no explanation as to why this standard would be appropriate in the rideshare industry or why riders represent a vulnerable population.

requires Uber to "conduct, or have a third party conduct, a local and national criminal background check for each participating driver" that includes a search "of a multistate and multijurisdiction criminal records locator or other similar commercial nationwide database" and "[a] search of the United States Department of Justice National Sex Offender Public website." Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B). The statute goes on to list a series of crimes that disqualify a driver from driving on a TNC platform if convictions for those crimes appear on a driver's background check. *Id*. § 5445.2(a)(2)-(3).

Here, the undisputed facts are that Uber had Checkr conduct several background checks on Mr. Le, including aliases, that complied with the California TNC statute, and that these background checks identified no reportable criminal history apart from non-disqualifying traffic offenses. *See* Uber's Mot. for Summ. J., Statement Of Relevant Facts And Procedural History. Mr. Tremblay fails to identify any applicable industry standard or other reliable basis for concluding that searches for dismissed criminal charges, a review of civil court records, or additional alias investigations are a necessary part of a sufficient background check.

This is not surprising. Criminal charges that are dismissed and thus do not result in a finding of guilt cannot provide reliable or relevant information for a background check. Indeed, it would be inappropriate for Uber to base its onboarding decisions on the ***absence*** of a finding of wrongdoing. Moreover, the Fair Credit Reporting Act, which governs the reportability of criminal records on consumer background checks, likewise prohibits records of arrest, and other adverse items of information, other than records of convictions, more than seven years old from being reported to Uber in the first instance. *See* 15 U.S.C. § 1681c(a)(5).[3] Mr. Le's 2012 Texas charges were dismissed in August 2012,[4] more than seven years before he signed up to drive on the Uber platform. Nonetheless, Mr. Tremblay's report does not mention the Fair Credit Reporting Act *once*. Because Mr. Tremblay failed to consider that applicable

---

[3] Mr. Tremblay implicitly recognizes these legal constraints in his report, suggesting that Uber should "advocat[e] for necessary changes in regulations and laws" to permit "greater access to a more complete driver history." Suppl. Schedule A.3 at 4-5. In other words, he admits that Uber could not adopt the practices he espouses under existing law.

[4] Mr. Tremblay notes that the charges were "dismissed as a result of a 'Missing Witness,' likely the female victim." Suppl. Schedule A.3 at 2. This is nothing more than irrelevant, rank speculation.

federal law ***barred*** Checkr from reporting dismissed criminal charges, his opinions are unreliable and inadmissible.[5]

Civil orders (including, for example, temporary restraining orders) are similarly unreliable indicators because they can be granted without a finding of guilt or wrongdoing. *See id.* § 1681c(a)(2); *see, e.g.*, Cal. Fam. Code § 6320(a) (ex parte domestic violence temporary restraining order maybe be issued "on a showing of good cause"); *id.* § 6300(a) (domestic violence temporary restraining order may be issued based on "reasonable proof of a past act or acts of abuse"). The very records on which Mr. Tremblay relies illustrate the point: the first San Diego temporary restraining order was "vacated by Petitioner" and the case dismissed, and in the second matter, the court denied a final restraining order. Suppl. Schedule A.3 at 2-3. Accordingly, it is not accepted industry standard practice for a background check to include identification of civil court orders. Mr. Tremblay points to no other basis for his conclusion that the background check Checkr conducted for Uber was unreasonable because it did not include such a search.

Mr. Tremblay also cites no industry standard or other objective basis for requiring Uber to have Checkr search "all names and name variations" an applicant may have used. Suppl. Schedule A.3 at 4. Nor does he explain how Uber or Checkr could be expected to divine at the outset all possible names or name variations that any particular driver may have used. Mr. Tremblay is apparently unaware that Checkr ***did*** search aliases for Mr. Le. Moreover, Mr. Tremblay's premise that Checkr "only ran a background search on the name Hung Quang Le," *id.* at 3, ignores that Checkr's screen was ***not*** a name-only search. Checkr performed a Social Security number trace, which identifies names and addresses associated with the applicant's identifiers, and searched the names that trace returned. *See* CHECKR001113 (Ex. 3).

For all of these reasons, Mr. Tremblay's opinions amount to "speculation [and] conjecture," which are "inadmissible[.]" *Valentine v. Pioneer Chlor Alkali Co.*, 921 F. Supp. 666, 672 (D. Nev. 1996) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993)); *Domingo ex rel. Domingo v. T.K.*,

[5] In addition, Mr. Tremblay suggests in his report that a 1998 conviction was "disqualifying" and should have prevented the driver from gaining access to the platform. But he does not cite any Uber documents or regulatory standards to support this opinion—or otherwise explain why he believes this charge is disqualifying.

289 F.3d 600, 607 (9th Cir. 2002) (trial court properly excluded expert where "there was nothing but [expert]'s *ipse dixit* linking" the alleged conduct to the plaintiff's injury).

Mr. Tremblay's reliance on his law enforcement experience cannot salvage his opinions. The Ninth Circuit has repeatedly excluded testimony of even well-qualified experts who fail to identify a reliable methodological basis for their opinions. *E.g.*, *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (finding court abused its discretion in admitting expert testimony where "[h]is qualifications and experience are relevant, and indeed necessary," "[b]ut they cannot establish the reliability and thus the admissibility of the expert testimony at issue"); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (excluding testimony of experience-based expert who had "neither the sufficient facts nor the reliable methodology that would warrant its inclusion as evidence"). This is so because "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (excluding expert opinion that "simply lacks the foundation and reliability necessary to support expert testimony"). That is precisely the case here, given Mr. Tremblay's inability to point to anything other than his own *ipse dixit* to support his assertions about what a proper background check should entail.

Finally, Mr. Tremblay's opinions are also unreliable because he fails to consider the tradeoffs, which Uber has publicly acknowledged, between stricter background checks and competing civil rights priorities.[6] Mr. Tremblay does not address the fact that Uber develops its screening criteria in consultation with lawmakers, screening experts, and civil rights advocates, and works to balance rider safety with fair access to economic opportunity across more than 60 different background-check adjudication standards nationwide. He similarly fails to consider that Uber's decisions about whether and when to implement a particular screening configuration involve the assessment of numerous factors, including, but not limited to, expert feedback on recidivism data, as well as legal, policy, and regulatory considerations across multiple jurisdictions, operational readiness and adjudication accuracy, false-positive rates and their

[6] *See, e.g.*, Uber Newsroom, *A New Standard for Background Checks* (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/ ("During our consultations with civil rights and safety organizations, many advocates emphasized that years of safe participation on the Uber platform should be weighed alongside past offenses when evaluating existing drivers. Others noted that removing access to a stable source of income could actually increase the risk of recidivism.").

impact on driver access, and the interaction of any screening change with Uber's broader multilayered safety system. The fact that Mr. Tremblay ignores these considerations highlights that he has no methodology and that his background check opinions are instead based on his mere say-so.

In short, Mr. Tremblay's opinions are supported by nothing more than his own views, rather than a reliable methodology, and should therefore be excluded.

### B. Mr. Tremblay Should Not Be Allowed To Testify About Various Safety Measures Uber Purportedly Should Have Taken.

#### 1. Mr. Tremblay's Opinions About Other Safety Measures Are Pure *Ipse Dixit*.

Mr. Tremblay's opinions that Uber should have implemented other safety measures should similarly be excluded because they are not grounded in a reliable methodology and instead reflect mere *ipse dixit*. First, Mr. Tremblay opines that Uber should prohibit solo passengers from riding in the front seat with drivers under any circumstance.[7] Suppl. Schedule A.3 at 5-6. Mr. Tremblay asserts that "Uber must leverage technology, including cameras / recording, and monitor for violations of this prohibition and hold those who violate the policy accountable." *Id.* Second, Mr. Tremblay opines that it is "critical" for Uber to analyze GPS data as part of its post-incident investigation because, in his experience, "predatory offenders often engage in pre assault stalking, and post assault stalking." *Id.* at 3.

Once again, Mr. Tremblay does not ground either of these opinions in an industry standard or other reliable methodology. His sole support for the front-seat prohibition is a 2018 internal Uber statistic that "in over 15% of audited Sexual Assault reports, the Rider was indicated to be sitting in the front." *Id.* at 5. But that figure says nothing about whether sitting in the front seat increases risk. He cites no evidence or studies concluding that sitting in the back seat of a rideshare vehicle reduces the risk of assault or that audio or video recording could feasibly be used to enforce a no-front-seat policy. Nor does he explain how it would be practical or feasible for Uber to record and review millions of rides in the United States each day to confirm the absence of a solo passenger in the front seat. And Mr. Tremblay's conclusion that Mr.

---

[7] Mr. Tremblay apparently is unaware that Uber ***does*** advise riders—particularly solo riders—not to sit in the front seat. *See* https://www.uber.com/us/en/ride/safety/tips/ ("Whenever possible, sit in the back seat, especially if you're riding alone. This helps ensure that you can safely exit on either side of the vehicle to avoid moving traffic, and it gives you and your driver some personal space.").

Le's alleged invitation to sit in the front was "offender testing and grooming behavior[]" disregards the testimony he himself cites that Plaintiff preferred to sit in the front seat to avoid car sickness. *Id.* at 5.

Likewise, Mr. Tremblay cites no study or other evidence in support of his claim that sexual offenders engage in stalking or that post-incident GPS analysis would promote safety on the Uber platform. In short, Plaintiff offers nothing more than Mr. Tremblay's personal assurances that these are good ideas, which is patently insufficient for admissibility under Rule 702. *See Magallon*, 743 F. Supp. 3d at 1250; *Gable*, 727 F. Supp. 2d at 830.

For these reasons, Mr. Tremblay's opinions regarding additional safety measures that Uber should have adopted are unreliable *ipse dixit* and should therefore be excluded.

**2. Mr. Tremblay's Opinions Related To Mr. Le's Purported Stalking And Post-Incident GPS Analysis Should Be Excluded.**

Mr. Tremblay's opinion that Uber should have performed a post-incident GPS analysis is separately inadmissible because it does not "fit" the facts of this case. It is a basic legal principle that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702(a)). Thus, the "district court must determine whether the expert's reasoning or methodology 'fits' the facts of the case and whether it will assist the trier of fact to understand the evidence, i.e., whether it is relevant." *Id.*

The pertinent question here is whether the supposed deficiencies in Uber's safety procedures identified by Mr. Tremblay caused the specific injuries alleged by Plaintiff. But Mr. Tremblay does not opine that a post-incident GPS analysis would have prevented the alleged incident from happening in the first place. Nor could he, because nothing Uber could have done ***after*** the alleged incident could possibly have prevented it from occurring in the first place. Instead, Mr. Tremblay simply reaches a sweeping conclusion that Uber's supposed screening failures, taken "together with" its failure to take certain other steps, were a "more probable than not substantial factor" in causing Plaintiff's alleged assault. Suppl. Schedule A.3 at 6. Mr. Tremblay's failure to identify any evidence to support the illogical proposition that a ***post-incident*** GPS analysis would have prevented or affected Plaintiff's alleged assault cannot be cured by simply lumping all of his criticisms of Uber's background check and safety processes together.

Accordingly, Mr. Tremblay's opinion about the need for a post-incident GPS analysis is utterly irrelevant and should be excluded. *See Daubert*, 509 U.S. at 591.[8]

Mr. Tremblay's related assertion that Mr. Le engaged in "post assault stalking" is utterly speculative and inadmissible. That opinion rests entirely on GPS data showing that, roughly 17 minutes after A.R. left the vehicle, Mr. Le was "in the vicinity of Plaintiff A.R.'s intended dropoff location." Suppl. Schedule A.3 at 3. Mr. Tremblay, of course, has no way to know why Mr. Le was in that vicinity and simply seeks to prejudice jurors with his insinuations. Accordingly, this testimony should be excluded as speculative and unduly prejudicial. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025) (affirming exclusion of doctor's "conclusory assertion of his subjective opinion" as not being "based on sufficient facts or data," as required under amended Rule 702) (citing Fed. R. Evid. 702(b)).

## V. CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Thomas Tremblay.

[8] It is also unduly prejudicial because any minimal probative value would be vastly weighed outweighed by the potential prejudice of this testimony. *See* Fed. R. Evid. 403.

DATED: November 13, 2026

Respectfully submitted,

*/s/ Geoffrey M. Wyatt*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Geoffrey M. Wyatt*
Geoffrey M. Wyatt, P.C.