Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | CASE NO. 3:23-MD-03084-CRB |
| This Document Relates to: *A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), by and through their undersigned counsel, will and hereby do move the Court for summary judgment in favor of Uber and against Plaintiff A.R.2 on the claims and theories described herein.

Uber seeks summary judgment, pursuant to Federal Rule of Civil Procedure 56, based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing.

DATED: November 13, 2026

**KIRKLAND & ELLIS LLP**

*/s/ Geoffrey M. Wyatt*
*Counsel for Uber*

# TABLE OF CONTENTS

**Page**


**I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1**

**I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY .......... 2**

**II. STATEMENT OF THE ISSUES TO BE DECIDED .......... 3**

**III. ARGUMENT .......... 4**

A. The Court Should Grant Summary Judgment In Uber's Favor On Plaintiff's Fraud And Misrepresentation Claim. .......... 4

B. Uber Is Not Vicariously Liable For Mr. Le's Alleged Tortious Conduct. .......... 5

C. Uber Is Not A Common Carrier And Did Not Owe Plaintiff A Heightened Duty. .......... 11

D. At A Minimum, Plaintiff's Claim Against Mr. Le For False Imprisonment Fails To Support A Vicarious Liability Claim. .......... 14

E. The Court Should Grant Summary Judgment In Uber's Favor On Plaintiff's Negligence Claims. .......... 14

F. The Court Should Grant Summary Judgment In Uber's Favor On Plaintiff's Product Liability Claims. .......... 19

**IV. CONCLUSION .......... 23**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agustin v. Golden Empire Transit Dist.*,
116 Cal. App. 5th 426 (2025), *as modified* (Nov. 26, 2025) ....................13

*Bacoka v. Best Buy Stores, L.P.*,
71 Cal. App. 5th 126 (2021) ....................6

*Berger v. S. Pac. Co.*,
144 Cal. App. 2d 1 (1956) ....................13

*Bilby v. Jalil*,
No. 37-2023-00015325-CU-PA-CTL (Cal. Super. Ct. San Diego Cnty. Jan. 15, 2025)....................6

*C.R. v. Tenet Healthcare Corp.*,
169 Cal. App. 4th 1094 (2009) ....................7

*Cabanillas v. Lyft, Inc.*,
No. 24STCV12700 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2026) ....................6

*Cadlo v. Owens-Illinois*,
125 Cal. App. 4th 513 (2004), *as modified* (Dec. 30, 2004)....................4, 5

*Chan v. Lyft, Inc.*,
No. 22STCV23537 (Cal. Super. Ct. L.A. Cnty. Oct. 1, 2025) ....................6

*Chavez v. Glock, Inc.*,
207 Cal. App. 4th 1283 (2012) ....................20

*Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*,
243 F. Supp. 2d 1064 (C.D. Cal. 2002) ....................11

*Delfino v. Agilent Techs., Inc.*,
145 Cal. App. 4th 790 (2006) ....................8, 9

*Doe v. Soothe, Inc.*,
No. 23STCV25948, 2025 WL 1840136 (Cal. Super. Ct. L.A. Cnty. June 13, 2025) ....................18

*Easton v. Sutter Coast Hosp.*,
80 Cal. App. 4th 485 (2000) ....................14

*Federico v. Superior Ct. (Jenry G.)*,
59 Cal. App. 4th 1207 (1997) ....................18

*Fretland v. Cnty. of Humboldt*, 69 Cal. App. 4th 1478 (1999) .....8

*Gomez v. Superior Ct.*, 35 Cal. 4th 1125 (2005) .....11, 13

*Griffith v. Simeone*, No. CVPS2303174 (Cal. Super. Ct. Riverside Cnty. May 28, 2025) .....6

*Hamidi v. Kumar*, No. HG13683127, 2014 WL 12613468 (Cal. Super. Ct. Alameda Cnty. July 4, 2014) .....14

*Himes v. Somatics, LLC*, 16 Cal. 5th 209 (2024) .....15

*Hu v. XPO Logistics*, 117 Cal. App. 5th 1197 (2026) .....11

*Hughes v. Farmers Ins. Exch.*, 107 Cal. App. 5th 73 (2024), *as modified* (Dec. 3, 2024) .....9, 10

*J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388 (2009) .....10

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 (1995) .....6

*Lopez v. McDonald's Corp.*, 193 Cal. App. 3d 495 (1987) .....20

*Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780 (1985) .....13

*Lopez v. Uber Techs., Inc.*, No. 23STCV10200 (Cal. Super. Ct. L.A. Cnty. Mar. 12, 2026) .....6

*Markow v. Rosner*, 3 Cal. App. 5th 1027 (2016) .....10

*Mary M. v. City of L.A.*, 54 Cal. 3d 202 (1991) .....7

*Merrill v. Navegar, Inc.*, 26 Cal. 4th 465 (2001) .....16

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) .....5

*Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985) .....22

*Okun v. Morton*,
203 Cal. App. 3d 805 (1988) ..........4

*People v. Arnold*,
6 Cal. App. 4th 18 (1992) ..........14

*Ratcliff v. Roman Cath. Archbishop of L.A.*,
79 Cal. App. 5th 982 (2022), *as modified* (June 15, 2022)..........7, 8, 9

*Rutherford v. Owens-Illinois, Inc.*,
16 Cal. 4th 953 (1997) ..........19

*Samantha B. v. Aurora Vista Del Mar, LLC*,
77 Cal. App. 5th 85 (2022) ..........7

*Sharufa v. Festival Fun Parks, LLC*,
49 Cal. App. 5th 493 (2020) ..........12

*Smith v. O'Donnell*,
215 Cal. 714 (1932) ..........11

*Snyder v. Evangelical Orthodox Church*,
216 Cal. App. 3d 297 (1989) ..........14

*Soule v. Gen. Motors Corp.*,
8 Cal. 4th 548 (1994) ..........20

*Stokes v. Forty Niners Stadium Mgmt. Co.*,
107 Cal. App. 5th 1199 (2024) ..........20

*Taylor v. Oakland Scavenger Co.*,
17 Cal. 2d 594 (1941) ..........6

*Treadwell v. Whittier*,
80 Cal. 574 (1889) ..........11

*In re Uber Rideshare Cases (JCCP)*,
No. CGC-21-592427, 2025 WL 2631565 (Cal. Super. Ct. S.F. Cnty. July 31, 2025) ..........12

*In re Uber Rideshare Cases* (*JCCP*),
No. CJC-21-005188, 2023 WL 12308268 (Cal. Super. Ct. S.F. Cnty. June 22, 2023)..........6, 7, 12

*Vaserfirer v. Uber Techs., Inc.*,
No. 21STCV37594, 2024 WL 5298968 (Cal. Super. Ct. L.A. Cnty. Nov. 22, 2024)..........18

*Visueta v. Gen. Motors Corp.*,
234 Cal. App. 3d 1609 (1991) ..........20

**Statutes**

Cal. Bus. & Prof. Code § 7451 ....................5, 9, 13

Cal. Bus. & Prof. Code § 7458(a) ....................16

Cal. Civ. Code § 2100 ....................12

Cal. Civ. Code § 2168 ....................11, 12

Cal. Civ. Code § 2300 ....................9, 10

Cal. Pub. Util. Code § 5445.2 ....................16

Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B) ....................16

Cal. Pub. Util. Code § 5445.2(a)(2)-(3) ....................16, 17

**Other Authorities**

CBS News, *Uber Enables In-App 'Record My Ride" Feature For Riders, Drivers in San Francisco* (Aug. 9, 2023), https://www.cbsnews.com/sanfrancisco/news/uber-record-my-ride-in-app-feature-sf-riders-drivers/ ....................21

Uber Newsroom, Uber's Record on Safety is Clear (Aug. 5, 2025), https://www.uber.com/us/en/newsroom/ubers-safety-record/; ....................21

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's effort to hold Uber liable for an alleged assault by an independent driver is precluded by California law and the undisputed facts of this case. The Court should grant summary judgment in Uber's favor on each of Plaintiff's causes of action for multiple reasons.

***First***, Plaintiff's claim for fraud and misrepresentation fails as a matter of undisputed fact and law. Plaintiff contends that Uber's "star rating" of Mr. Le fraudulently omitted information Uber knew about Mr. Le's background. But Plaintiff cannot demonstrate that she ***relied on*** any purported misrepresentation in choosing to ride in Mr. Le's vehicle.

***Second***, Plaintiff contends that Uber is vicariously liable for the alleged tortious acts committed by the independent driver, Hung Quang (Michael) Le, against Plaintiff. These claims all fail, however, because (1) Mr. Le was an independent contractor and not Uber's employee under California law; (2) Mr. Le was not Uber's apparent agent, both as a matter of law and because Plaintiff had actual notice to the contrary; and (3) Uber did not ratify Mr. Le's alleged tortious acts—to the contrary, it promptly deactivated his account upon learning of Plaintiff's allegations.

***Third***, Plaintiff's attempts to hold Uber vicariously liable as a common carrier also fail. Uber is not a common carrier under California law because it is an intermediary, rather than a provider of transportation services. And even if Uber were a common carrier, California law rejects a rule of automatic vicarious liability for common carriers, and instead imposes only a heightened duty of care.

***Fourth***, even if Uber could theoretically be held vicariously liable for Mr. Le's acts, the Court should nevertheless grant it summary judgment on Plaintiff's false imprisonment claim because the undisputed facts are that Mr. Le did not confine or restrain Plaintiff by force, threat, or physical barrier at any point during or after the ride, as required under California law to prove false imprisonment.

***Fifth***, Plaintiff's direct negligence claims against Uber also fail. As to Plaintiff's theory that Uber negligently failed to warn of the purported risk of sexual assault in its marketing or advertising materials, Plaintiff cannot satisfy the essential element of causation because Plaintiff testified [redacted] As a result, she cannot possibly demonstrate that Uber's advertising about safety caused her to ride as a passenger in Mr. Le's vehicle. Additionally, Plaintiff's

negligence theory premised on Uber's background checks of Mr. Le also fails, because the undisputed facts are that Uber had Checkr conduct several background checks on Mr. Le that complied with the California Transportation Network Company ("TNC") statute, and that these background checks identified no reportable criminal history apart from non-disqualifying traffic offenses.

***Sixth***, Plaintiff's product liability claims all fail for lack of causation. Plaintiff contends that the Uber App was defective because it purportedly lacked gender-matching, in-app video recording, and GPS route discrepancy alert features. But Plaintiff cannot prove that the absence of any of these features caused her alleged injury—i.e., that the alleged injury would not have occurred had these features been present. Moreover, Plaintiff's product liability theory about the GPS route discrepancy alert feature independently fails because that feature relates to Uber's provision of rideshare services, not the Uber App as a product.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff was a passenger in Michael Le's vehicle on a ride Plaintiff arranged through the Uber platform on August 10, 2023 in San Francisco. Plaintiff alleges that, at the start of the ride, Mr. Le invited Plaintiff to sit in the front seat, which Plaintiff did. Bellwether Complaint ¶ 8 ("Compl."), Dkt. 2500 (Mar. 14, 2025). Plaintiff further alleges that, in the middle of the ride, Mr. Le ended the ride on the Uber App and then pulled over a few blocks later. *Id.* ¶¶ 9-11. According to Plaintiff, Mr. Le then "reached over and kissed Plaintiff on the lips twice." *Id.* ¶ 13. Plaintiff acknowledges that [redacted] *See, e.g.*, 7/1/2025 Pl. Dep. 80:14-18, 82:2-5, 86:14-17, 95:5-11 (Ex. 1); 10/14/2025 Pl. Dep. 64:4-16 (Ex. 2); 7/11/2025 O.K. Dep. 24:13-16 (Ex. 3); 7/8/2025 I.E. Dep. 34:20-35:3 (Ex. 4). Plaintiff then exited Mr. Le's vehicle, over a mile from her intended destination. Compl. ¶¶ 12, 14.

Plaintiff reported to Uber only that the "Driver completed the trip on the app and continued driving," with no mention of an attempted kiss. Uber-MDL3084-DFS00054846 (Bliss) (Ex. 5). The same day Plaintiff made this report, an Uber representative reached out to request more details, but Plaintiff did not respond. *Id.* Plaintiff first alleged that Mr. Le assaulted her in her Complaint, *see* Compl. at 3, No. 3:24-cv-07821-CRB, Dkt. 1 (boilerplate allegation that Mr. Le sexually assaulted Plaintiff), and subsequent PFS (Ex. 6), *id.* at 6 (allegation that "[redacted]"). Uber investigated and took action against Mr. Le's account, waitlisting it on December 31, 2024 and

permanently banning him the next day: January 1, 2025. UBER-MDL3084-DFS00160114 -118 (JIRA) (Ex. 7); UBER-MDL3084-BW-00007778 (Status and Flow) (Ex. 8).

Uber onboarded Mr. Le in July 2022 after Checkr conducted the criminal background check required by California law, which returned no reportable criminal history. UBER-MDL3084-BW-00007778 (Status and Flow); Uber-MDL3084-DFS00054724 (7/23/2022 Checkr MVR Report) (Ex. 9) UBER-MDL3084-DFS00054709 (7/25/2022 Checkr Background Check) (Ex. 10); UBER-MDL3084-DFS00054679 (7/27/2022 SambaSafety Report) (Ex. 11). All subsequent background checks of Mr. Le conducted for Uber were clear, except that they noted a handful of non-disqualifying misdemeanor traffic convictions in Louisiana from 1996 and a motor vehicle accident in Oakland, California on March 1, 2023.[1]

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff's fraud and misrepresentation claim premised on Uber's "star rating" of Mr. Le fails because the undisputed facts demonstrate that Plaintiff did not rely on any such misrepresentation in deciding to ride in Mr. Le's vehicle.

2. Whether Plaintiff's vicarious liability claims against Uber fail as a matter of undisputed fact and law because (1) Mr. Le was not Uber's employee, (2) Mr. Le was not Uber's apparent agent, and (3) Uber did not ratify Mr. Le's alleged tortious acts.

3. Whether Plaintiff's claim that Uber is automatically vicariously liable for Mr. Le's conduct as a common carrier fails because (1) Uber is not a common carrier as a matter of California law; and (2) even if it were, Uber would only owe Plaintiff a heightened duty of care and would not automatically be liable for Plaintiff's injuries.

---

[1] UBER-MDL3084-DFS00054679 at -682 (6/20/2023 SambaSafety Report); UBER-MDL3084-DFS00054716 (6/26/2023 Checkr MVR Report) (Ex. 12); UBER-MDL3084-DFS00054704 (6/27/2023 Checkr Background Check) (Ex. 13); UBER-MDL3084-DFS00054679 at- 680 (7/16/2023 SambaSafety Report); UBER-MDL3084-DFS00054679 at -684 (7/25/2023 SambaSafety Report); UBER-MDL3084-DFS00054726 (5/31/2024 Checkr MVR Report) (Ex. 14); UBER-MDL3084-DFS00054713 (6/3/2024 Checkr Background Check) (Ex. 15); UBER-MDL3084-DFS00054679 at -683 (7/7/2024 SambaSafety Report); UBER-MDL3084-DFS00054679 at -681 (11/19/2024 SambaSafety Report). Plaintiff's experts contend that Checkr missed certain background issues, but as elaborated in the argument below, these records either did not identify Mr. Le by the same name, involved civil records that contained no factual findings, or were not reportable by Checkr for other reasons.

4. Whether Plaintiff's false imprisonment claim against Mr. Le—for which Plaintiff seeks to hold Uber vicariously liable—fails because the undisputed evidence demonstrates that Mr. Le did not confine or restrain her by force, threat, or physical barrier.

5. Whether Plaintiff's negligence theories against Uber fail—regardless of whether Uber owed an ordinary or heightened duty of care—because (1) Plaintiff's claim premised on Uber's marketing materials allegedly failing to warn of the purported risk of sexual assault fails for lack of causation; and (2) Plaintiff's claim premised on Uber's background screenings of Mr. Le fails because Uber indisputably had Checkr conduct the background screenings required by California law.

6. Whether (1) Plaintiff's product liability claims all fail because Plaintiff cannot demonstrate that the purported absence of any of the safety features the Complaint identifies caused Plaintiff's injury; and (2) Plaintiff's product liability claim premised on the alleged absence of a GPS route discrepancy alert feature also fails because this feature relates to Uber's rideshare services, not the Uber App as a product.

## III. ARGUMENT

### A. The Court Should Grant Summary Judgment In Uber's Favor On Plaintiff's Fraud And Misrepresentation Claim.

Plaintiff brings a claim of fraud and misrepresentation grounded on Uber's "star rating" of Mr. Le, alleging that the information Uber "conveyed about the driver" was "materially incomplete" because the star rating disclosed neither "any information about Mr. Le's criminal background nor the previous rider report of driver misconduct."[2] Compl. ¶¶ 34, 38, 40. But to establish a claim for fraudulent misrepresentation, Plaintiff must prove, among other things, that she relied to her detriment on Uber's purported misrepresentation. *See Cadlo v. Owens-Illinois*, 125 Cal. App. 4th 513, 519 (2004), *as modified* (Dec. 30, 2004).[3] In other words, Plaintiff must prove that she "actually relied upon the misrepresentation . . . and that without such representation, '[she] would not, in all reasonable probability, have'" requested a trip on the Uber platform. *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988) (citation omitted). Here, however, Plaintiff testified that the ***sole*** reason she chose Uber over Lyft on the night of

---

[2] The Court previously denied Uber's motion to dismiss this claim, which argued that the "star rating" is not an actionable misrepresentation. Dkt. 3441 at 9-14. Uber preserves its prior arguments.

[3] "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Cadlo*, 125 Cal. App. 4th at 519.

the subject incident was "[redacted] than Lyft. 7/1/2025 Pl. Dep. 69:6-9. That reason had nothing to do with any representation by Uber or with Mr. Le's star rating. Indeed, Plaintiff never testified that she saw Mr. Le's star rating prior to the alleged incident. Because Plaintiff did not decide to ride in Mr. Le's vehicle as a result of any affirmative representation made by Uber regarding Mr. Le, Plaintiff cannot establish the essential element of reliance, dooming her fraud claim as a matter of law. *See, e.g.*, *Cadlo*, 125 Cal. App. 4th at 520 (affirming dismissal of fraudulent misrepresentation claim absent allegation that plaintiff "was actually aware of, or was reassured by and relied on this misrepresentation when undertaking work"); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1083 (1993) (affirming dismissal of fraud claim where "plaintiffs did not [show] that they had heard or read the representations," which is "not sufficient to allege reliance upon the misrepresentations"). Uber is entitled to summary judgment on Plaintiff's fraud claim for this reason alone.

**B. Uber Is Not Vicariously Liable For Mr. Le's Alleged Tortious Conduct.**

Plaintiff next argues that Uber is liable for the torts allegedly committed by Mr. Le against Plaintiff. In support of this argument, Plaintiff advances three theories of vicarious liability: (1) Mr. Le was Uber's employee; (2) Uber ratified Mr. Le's actions; and (3) Mr. Le was Uber's apparent agent. Each theory fails as a matter of law.

1. <u>Mr. Le Was Not Uber's Employee.</u>

Plaintiff contends that Mr. Le was Uber's employee and that Uber is therefore vicariously liable for Mr. Le's alleged misconduct pursuant to the doctrine of *respondeat superior*. Compl. ¶ 30. But California has rejected Plaintiff's assertion by statute: Under applicable California law, "[n]otwithstanding any other provision of law . . . an app-based driver ***is an independent contractor and not an employee or agent***" as long as certain statutory conditions are met. Cal. Bus. & Prof. Code § 7451 ("Proposition 22") (emphasis added). All of those conditions are indisputably satisfied here.[4]

---

[4] Specifically: (1) Uber does not prescribe the dates or hours drivers must use the platform; (2) Uber does not require the driver to accept any specific rideshare requests; (3) Uber does not restrict drivers' access to other network companies; and (4) Uber does not restrict the driver from working in any other occupation. Cal. Bus. & Prof. Code § 7451(a)-(d). All of those criteria are met pursuant to the Platform Access Agreement that Mr. Le and Uber assented to when Mr. Le was onboarded. *See* UBER-MDL3084-00004521 at -4522 (Uber Platform Access Agreement) (Ex. 16).

California law is also clear that a principal is not vicariously liable for tortious acts committed by an independent contractor. *See Bacoka v. Best Buy Stores, L.P.*, 71 Cal. App. 5th 126, 132-33, 135 (2021) (affirming summary judgment on respondeat superior claims where undisputed evidence established that tortfeasor was defendant's independent contractor, not employee); *Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594, 604 (1941) ("An employer is generally liable for negligent acts of an employee performed within the scope of employment, but if an independent contractor rather than master and servant relationship exists, the independent contractor usually is alone liable for his negligent acts."). Numerous California courts have granted summary judgment in favor of Uber and Lyft on analogous grounds, holding that Proposition 22 forecloses vicarious liability claims against rideshare platforms because drivers are independent contractors and not employees. *See, e.g.*, Minute Order, *Lopez v. Uber Techs., Inc.*, No. 23STCV10200 (Cal. Super. Ct. L.A. Cnty. Mar. 12, 2026) (Ex. 17); Judgment, *Bilby v. Jalil*, No. 37-2023-00015325-CU-PA-CTL (Cal. Super. Ct. San Diego Cnty. Jan. 15, 2025) (Ex. 18); Judgment, *Cabanillas v. Lyft, Inc.*, No. 24STCV12700 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2026) (Ex. 19); Minute Order, *Chan v. Lyft, Inc.*, No. 22STCV23537 (Cal. Super. Ct. L.A. Cnty. Oct. 1, 2025) (Ex. 20); Ruling, *Griffith v. Simeone*, No. CVPS2303174 (Cal. Super. Ct. Riverside Cnty. May 28, 2025) (Ex. 21).

Moreover, even if Proposition 22 did not govern, Uber could still not be liable for Mr. Le's alleged sexual assault of Plaintiff under a *respondeat superior* theory because such conduct unmistakably fell outside the scope of Mr. Le's purported employment. Under settled California Supreme Court precedent, an employer is not vicariously liable for an employee's sexual misconduct unless the employment predictably creates the risk that employees will commit the type of intentional tort at issue. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 299-301 (1995) (hospital not vicariously liable where ultrasound technician "took advantage of solitude" with patient to assault her, even though assaulter's employment "provided the opportunity for him to meet plaintiff and to be alone with her in circumstances making the assault possible"). The key distinction explained in *Lisa M.* is whether the employee's tortious conduct "*arise[s] out of* the performance of the" employment or merely was "made . . . possible" by the circumstances of the employment. *Id.* at 301. Applying that standard, the JCCP court sustained Uber's demurrer to vicarious liability claims for sexual assaults, holding that such conduct is outside the scope of employment as a matter of law. *In re Uber Rideshare Cases* (*JCCP*), No. CJC-21-005188, 2023 WL

12308268, at *3-4 (Cal. Super. Ct. S.F. Cnty. June 22, 2023) (noting that California courts "routinely find sexual assaults are beyond the scope of employment, and hence employers may not be held vicariously liable for such misconduct"). The JCCP court found that Uber's business of transporting passengers does not predictably create a risk of sexual assault. *Id.* at *4-5. This makes sense because Uber's business is nothing like the few exceptional circumstances where courts have found a predictable risk of employee intentional assaults, such as when a police officer assaulted a person he had taken into custody, *Mary M. v. City of L.A.*, 54 Cal. 3d 202 (1991), or where a psychiatric hospital worker assaulted patients who lacked capacity to consent, *Samantha B. v. Aurora Vista Del Mar, LLC*, 77 Cal. App. 5th 85, 107 (2022) (acknowledging that "[c]ourts have generally held that an employer is not liable under the doctrine of respondeat superior for sexual assaults committed by an employee").

Although this Court previously came to the opposite conclusion and declined to dismiss the MDL Plaintiffs' *respondeat superior* claims under California law, Dkt. 1044 at 19-24, the Court should revisit that holding on the full summary judgment record in light of the JCCP court's persuasive reasoning and application of California law.[5]

2. Uber Did Not Ratify Mr. Le's Acts.

Plaintiff's allegation that Uber is vicariously liable for Mr. Le's tortious conduct against Plaintiff because Uber purportedly ratified Mr. Le's conduct also fails. "As an alternate theory to respondeat superior, an employer may be liable for an employee's act where the employer . . . ratified an originally unauthorized tort." *Ratcliff v. Roman Cath. Archbishop of L.A.*, 79 Cal. App. 5th 982, 1002 (2022), *as modified* (June 15, 2022) (quoting *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1110-11 (2009)). Ratification "is the voluntary election by a party to adopt, as its own, an act purportedly done on its behalf by another, the effect of which is to treat the act as originally authorized by the ratifier." *Id.* at 1002-03. "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery." *Id.* at 1002 (quoting *C.R.*, 169 Cal. App. 4th at 1110). Additionally, "[t]he failure to discharge an employee who has committed misconduct may be evidence of ratification." *Id.* at 1002 (quoting *C.R.*, 169 Cal. App. 4th at 1110).

[5] The Court's motion-to-dismiss opinion, Dkt. 1044, did not address arguments relating to Proposition 22.

Plaintiff alleges that Uber ratified Mr. Le's alleged tortious conduct against Plaintiff because "Uber did not deactivate Mr. Le, even after Plaintiff filed a lawsuit on November 8, 2024." Compl. ¶ 42. But the undisputed facts demonstrate otherwise. Far from showing that Uber "fail[ed] to investigate or respond to charges that [Mr. Le] committed an intentional tort," *Ratcliff*, 79 Cal. App. 5th at 1002, the record evidence indisputably shows that Uber promptly investigated and then deactivated Mr. Le upon learning Plaintiff's allegation that Mr. Le had non-consensually kissed her. Uber first learned of Plaintiff's allegation that Mr. Le had assaulted her when Plaintiff filed her Complaint in this matter on November 8, 2024. Compl., No. 3:24-cv-07821-CRB, Dkt. 1 (Nov. 8, 2024). That Complaint, however, only includes a boilerplate allegation that "Plaintiff was sexually assaulted, harassed, battered, or otherwise attacked by an Uber driver," *id.* at 3, without providing any details about what allegedly occurred. Uber learned of Plaintiff's allegation that Mr. Le had kissed her on November 18, 2024, when Plaintiff produced her first PFS.[6]

Uber then promptly opened an investigation, waitlisted Mr. Le's account on December 31, 2024, and permanently banned him from the Uber platform on January 1, 2025. *See* UBER-MDL3084-DFS00160114 (JIRA); UBER-MDL3084-BW-00007778 (Status and Flow). That timeline—about six weeks from the date Uber first learned that Mr. Le allegedly kissed Plaintiff until Uber waitlisted and permanently deactivated Mr. Le—forecloses any argument that Uber ratified Mr. Le's conduct by "fail[ing] to discharge" him. *Ratcliff*, 79 Cal. App. 5th at 1002. Indeed, it demonstrates the exact opposite. *See, e.g.*, *Fretland v. Cnty. of Humboldt*, 69 Cal. App. 4th 1478, 1482, 1491 (1999) (affirming grant of summary judgment in employer's favor and holding that employer did not ratify employee's assault and battery where employer learned of employee's behavior, promptly investigated, and then issued a "letter of warning" to employee approximately seven weeks after learning of employee's conduct); *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 811 (2006) (affirming grant of summary judgment in employer's favor and holding that employer did not ratify employee's tortious conduct where employer promptly placed employee on leave and then terminated employee upon learning of conduct).

Nor can Plaintiff credibly fault Uber for failing to terminate Mr. Le immediately after the alleged incident itself, which occurred on August 10, 2023. Although Plaintiff made a report to Uber regarding

---

[6] The PFS is undated, but Plaintiff's verification of it is dated November 18, 2024.

this ride the following day, on August 11, 2023, all Plaintiff said about the ride at the time was that "Driver completed the trip on the app and continued driving." Uber-MDL3084-DFS00054846 (Bliss). Crucially, Plaintiff did not report this as an incident of sexual assault or provide any information from which Uber reasonably could have inferred that conclusion. Moreover, the same day Plaintiff made her report, an Uber representative reached out to Plaintiff to request more details about the incident, but Plaintiff did not respond. *Id.* On this record, Uber cannot be charged with ratifying an alleged sexual assault of which it was indisputably unaware. *See Ratcliff*, 79 Cal. App. 5th at 1002 (noting that "ratification may occur when an employer *learns of misconduct*" and fails to take remedial action) (emphasis added).

3. <u>Mr. Le Was Not Uber's Apparent Agent.</u>

Any vicarious liability claim premised on the notion that Mr. Le was Uber's apparent agent also fails as a matter of undisputed fact and law. Under California law, an apparent-agency relationship arises only "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. In this unusual scenario, a defendant may be held vicariously liable for the acts of the apparent agent, but only when "(1) the plaintiff, when dealing with the agent, did so 'with [a reasonable] belief in the agent's authority,' (2) that 'belief [was] generated by some act or neglect by the principal,' and (3) the plaintiff was not negligent in relying on the agent's apparent authority." *see Hughes v. Farmers Ins. Exch.*, 107 Cal. App. 5th 73, 85 (2024) (citation omitted), *as modified* (Dec. 3, 2024). Plaintiff's apparent-agency claim fails for several independent reasons.

***First***, as noted above, Plaintiff cannot claim to have been misled about Mr. Le's status: the California statute gave her actual notice that "an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company," "***[n]otwithstanding any other provision of law***[.]" Cal. Bus. & Prof. Code § 7451 (emphasis added). Proposition 22 thus expressly forecloses ***any*** agency relationship between Uber and Mr. Le—whether actual or apparent—because it states that Mr. Le was not Uber's agent, "notwithstanding any other provision of law," which includes Section 2300. Moreover, Section 7451 was enacted in November 2020 by way of a high-profile ballot initiative (Proposition 22). Given the extensive news coverage that surrounded the initiative, the situation here is precisely the opposite of one where "apparent agency" could

be demonstrated. *See Markow v. Rosner*, 3 Cal. App. 5th 1027, 1039 (2016) (no apparent agency relationship as a matter of law where plaintiff had "actual notice of the absence of any agency relationship"); *J.L. v. Children's Inst., Inc*., 177 Cal. App. 4th 388, 404-05 (2009) (similar). Accordingly, Plaintiff's apparent-agency claim fails as a matter of law.

***Second***, the Terms of Use that govern the relationship between Uber and Mr. Le separately foreclose any agency relationship, whether actual or apparent. The Terms of Use are crystal clear that drivers who provide transportation services on the Uber platform are "***independent***" from Uber, and are not its "actual agents, apparent agents, ostensible agents, or employees of Uber in any way[.]" UBER-MDL3084-BW-00001048 at -1060 (Terms of Use) (Ex. 22) (emphasis added). Plaintiff had actual notice of the Terms of Use because she consented to them through her Uber App when she created her passenger account, and every time thereafter when she agreed to Uber's updated Terms. *See* UBER-MDL3084-BW-00001002 (Confirmation of Plaintiff's Sign-up/Consent) (Ex. 23); UBER-MDL3084-BW-00001003-1013 (Plaintiff's Terms of Use) (Ex. 24). For this reason, too, any subjective belief by Plaintiff that Mr. Le was Uber's agent was unreasonable as a matter of law. *See Markow*, 3 Cal. App. 5th at 1039.

***Third***, the facts Plaintiff cites in support of her apparent agency claim—Uber's requirement that all rides be initiated through the Uber App; its requirement that drivers display the Uber logo; its control over payments, communications, and complaints; and its policies governing the use of the platform, *see* Long Form Compl. ¶ 434—would not establish apparent agency as a matter of law in any event. *See, e.g.*, *Hughes*, 107 Cal. App. 5th at 85 (explaining that "the use of a principal's trade name and logo by another does not alone demonstrate an ostensible agency relationship"). Crucially, Plaintiff nowhere points to any ***representation*** by Uber that intentionally or negligently gave Plaintiff the reasonable impression that Mr. Le was Uber's agent, and it is indisputable that no such representation exists. That independently forecloses Plaintiff's apparent agency claim. *See* Cal. Civ. Code § 2300; *Hughes*, 107 Cal. App. 5th at 85.

***Fourth***, even if Mr. Le were Uber's apparent agent, Uber would still not be vicariously liable for his alleged sexual assault of Plaintiff. As explained above, Mr. Le's alleged assault of Plaintiff clearly fell outside the scope of his purported agency relationship with Uber, and this Court has already held that a principal can only be vicariously liable for the tortious conduct of an apparent agent when that conduct falls within the scope of the agency. Dkt. 1044 at 28 ("[T]he scope of vicarious liability for the torts of an

agent who *apparently* has some business confided to him can be no greater than the scope of such liability for an agent who *actually* has that business confided to him.") (quotation marks and citation omitted).

**C. Uber Is Not A Common Carrier And Did Not Owe Plaintiff A Heightened Duty.**

1. Uber Is An Intermediary, Not A Provider Of Transportation Services.

Plaintiff also alleges that Uber owed her nondelegable duties as a common carrier. But Uber is not a common carrier, and the Court should hold as a matter of law that Uber owed Plaintiff no duty apart from the ordinary duty of care. California law defines a "common carrier" as "[e]very one who offers to the public to carry persons, property, or message[.]" Cal. Civ. Code § 2168. Common carriers, in other words, are the ***owners*** and ***operators*** of the relevant modes of transportation. *See, e.g.*, *Gomez v. Superior Ct.*, 35 Cal. 4th 1125, 1140-41 (2005) (owner and operator of amusement park ride is a common carrier); *Treadwell v. Whittier*, 80 Cal. 574, 598-99 (1889) (owner and operator of elevator is a common carrier); *Smith v. O'Donnell*, 215 Cal. 714, 717 (1932) (owner and operator of private plane is a common carrier). That definition does not include a party that "merely 'acts as an intermediary'" in arranging transportation. *Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1070, 1073 (C.D. Cal. 2002) (holding that "broker" of transportation services that did not "transport the items itself" was an intermediary and therefore not a common carrier). The California Court of Appeal recently reaffirmed as much, holding that an intermediary is not a common carrier unless it is "***providing*** motor vehicle transportation for compensation." *Hu v. XPO Logistics*, 117 Cal. App. 5th 1197, 1202, 1210 (2026) (broker that arranged transportation services not a common carrier) (emphasis added).

Here, the undisputed record evidence demonstrates that Uber is an intermediary offering technology that facilitates the connection of driver to rider—not an actual carrier that "perform[ed] the transport" of Plaintiff. The service that Uber provides is licensing its technology platform and App, and providing software to connect riders with independent drivers. Decl. of Erin O'Keefe (Dkt. 5475-21) ¶ 6. Drivers provide—at their sole discretion and using their own personal vehicles—third-party transportation services. *Id.* ¶ 7. Uber neither owns nor operates the vehicles that the drivers use to transport riders. *Id.* ¶ 13. Instead, drivers "represent that at all times during the provision of any Rides [their] vehicle will be in [their] lawful possession[.]" *See* UBER-MDL3084-000004521 at -4524 (Uber Platform Access Agreement). Drivers further agree that "[a]ccepting a Ride request creates a direct business relationship

***between [them] and [their] Rider[.]*** " *Id.* (emphasis added). And Uber has no right to "direct or control" drivers or their "provision of Rides." *Id.* at UBER-MDL3084-000004526. In short, the Uber App facilitates the exchange of services between providers and consumers through a virtual marketplace that does not itself "carry persons, property, or messages" and is therefore not a common carrier under California Civil Code Section 2168. This Court should therefore reject as a matter of law Plaintiff's negligence theories premised on Uber's purported common carrier status.[7]

2. Even If Uber Were A Common Carrier, It Would Only Owe A Heightened Duty—It Would Not Be Automatically Liable For Plaintiff's Alleged Injuries.

Even if Uber were a common carrier under California law, the upshot would be that Uber is subject to a heightened duty of care, not that it is subject to automatic vicarious liability. That is the position the JCCP court endorsed, holding that "Uber's potential status as a common carrier" imposes a "heightened standard of care" but "does not alter the vicarious liability analysis." *In re Uber Rideshare Cases*, 2023 WL 12308268, at *6.

California courts have long recognized that "[c]ommon carrier status does not trigger strict liability, which imposes liability for injury regardless of the care exercised by a defendant." *Sharufa v. Festival Fun Parks, LLC*, 49 Cal. App. 5th 493, 500 (2020). Rather, although carriers "must use the utmost care and diligence" to provide safe transportation, a common carrier is not liable if a passenger's injuries are unconnected to any lack of care or diligence by the carrier itself. *Id.* at 498, 501; *see* Cal. Civ. Code § 2100 ("A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of

---

[7] The JCCP court has held that Uber is a common carrier under California law. *In re Uber Rideshare Cases (JCCP)*, No. CGC-21-592427, 2025 WL 2631565, at *5-8 (Cal. Super. Ct. S.F. Cnty. July 31, 2025). But the JCCP court's decision predates *Hu*, an on-point, appellate ruling. This Court has previously found that Uber qualified as a common carrier under North Carolina law, Dkt. 5809 at 1, but has not previously analyzed Uber's status as a common carrier in California because Uber did not move to dismiss the MDL Plaintiffs' California common carrier claims. *See* Dkt. 1044 at 31. This Court's reasoning in the North Carolina decision supports the conclusion that Uber is not a common carrier under California law. There, the Court noted that the North Carolina legislature declined to adopt a TNC statute that "explicitly exempted Uber and other rideshare providers from common carrier liability." Dkt. 5809 at 2 (citing Dkt. 1044 at 31). California, by contrast, *has* enacted Proposition 22, which classifies app-based drivers as independent contractors "[n]otwithstanding any other provision of law." No ballot measure that would define Uber as a common carrier has reached any ballot. *See* 12/8/2025 Ltr. to Cal. OAG re Rideshare Company Public Accountability Act, oag.ca.gov/system/files/initiatives/pdfs/25-0028A1 %28Rideshare Accountability %29.pdf.

skill."). The California Supreme Court has repeatedly held that "[c]ommon carriers are not . . . insurers of their passengers' safety." *Gomez*, 35 Cal. 4th at 1130 (quoting *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 (1985)). Accordingly, even if the Court holds that Uber is a common carrier, it should still grant summary judgment to Uber on any of Plaintiff's theories premised on a rule of automatic liability, and hold Plaintiff to her burden to prove at trial that Uber breached a heightened duty of care and that Uber's breach was the cause of Plaintiff's injuries. *See Agustin v. Golden Empire Transit Dist.*, 116 Cal. App. 5th 426, 448 (2025), *as modified* (Nov. 26, 2025) (affirming grant of summary judgment in favor of common carrier for lack of causation).

This Court seemingly came to the opposite conclusion in a prior decision, holding that Uber has a "non-delegable duty" as a common carrier and that if "a driver assaults the passenger, then Uber's non-delegable duty has been breached." Dkt. 1044 at 33. The Court's reasoning relied on the decision in *Berger v. S. Pac. Co.*, 144 Cal. App. 2d 1, 6 (1956), where the California Court of Appeal held that a train operator was liable for its employee's assault of a passenger. But *Berger* was about vicarious liability, not nondelegable duties. *Berger* created a bespoke rule of vicarious liability in the common carrier context whereby the carrier may be held liable for its employee's tortious conduct regardless of whether the tort was committed within the scope of employment. *Id.* at 6. That rule has no application to rideshare platforms. *Berger* was superseded by California Proposition 22 (discussed above), which amended Section 7451 of the California Business and Professions Code to abrogate ridesharing companies' vicarious liability for tortious acts committed by drivers on their platforms. Because *Berger's* rule depends on an employment relationship that Proposition 22 forecloses, it cannot support liability for a driver's alleged misconduct.[8] *See Berger*, 144 Cal. App. 2d at 4-5 (referring to the person who committed the assault as the carrier's "employee"). Accordingly, any non-delegable duty theory that effectively amounts to a rule of vicarious liability is foreclosed by Proposition 22. For that reason, even if Uber were a common carrier, that status would only impose a heightened duty of care on Uber, but would not relieve Plaintiff of her burden to prove breach and causation at trial.

---

[8] *Berger* is also in tension with this Court's prior holding that, assuming Uber is vicariously liable for Mr. Le's tortious acts, the scope of Uber's vicarious liability extends no further than the scope of Uber's agency relationship with Mr. Le. *See* Dkt. 1044 at 28.

**D. At A Minimum, Plaintiff's Claim Against Mr. Le For False Imprisonment Fails To Support A Vicarious Liability Claim.**

Even if Uber could theoretically be held vicariously liable for Mr. Le's tortious conduct, Plaintiff's claim here that Uber is vicariously liable for Mr. Le's alleged false imprisonment fails because Mr. Le's alleged conduct does not constitute false imprisonment under California law. "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000). To succeed on a false imprisonment claim, "it is essential that there be some restraint of the person[.]" *People v. Arnold*, 6 Cal. App. 4th 18, 27 (1992) (citation omitted). Here, the undisputed facts plainly demonstrate that Mr. Le never "restrain[ed]" Plaintiff or took her against her will. To the contrary, after he allegedly attempted to kiss her, Plaintiff [redacted] 10/14/2025 Pl. Dep. 64:4-16. It took approximately [redacted] for Plaintiff to refuse Mr. Le's alleged kiss and exit the vehicle. 7/1/2025 Pl. Dep. 80:24-81:23. Plaintiff never claims that Mr. Le locked the car or held her in the car in any way. And after she freely exited the vehicle, Mr. Le [redacted]" *Id.* 85:1-3. These facts do not demonstrate the requisite "restraint" to satisfy a false imprisonment claim as a matter of law. *See Snyder v. Evangelical Orthodox Church*, 216 Cal. App. 3d 297, 304-05 (1989) (affirming summary judgment in favor of defendants on false imprisonment claim because plaintiff was "free from physical restraint" during purported imprisonment); *see also Hamidi v. Kumar*, No. HG13683127, 2014 WL 12613468, at *4 (Cal. Super. Ct. Alameda Cnty. July 4, 2014) (granting summary judgment in favor of defendant and holding that plaintiff's subjective feelings of fear and being threatened did not "rise[] to the level of restraint by physical force, threats, confinement by physical barriers, or similar confinement" that a claim for false imprisonment requires) (internal citations omitted).

**E. The Court Should Grant Summary Judgment In Uber's Favor On Plaintiff's Negligence Claims.**

Regardless of whether a heightened or ordinary standard of care applies, Plaintiff's negligence claims against Uber fail as a matter of law. Although the Complaint does not detail her theories of negligence, Uber understands Plaintiff's theories to be that: (1) Uber's marketing materials failed to warn

of the alleged risk of sexual assault and cultivated a false image of safety; and (2) Uber's background screenings of Mr. Le were inadequate.

Neither claim can proceed. The warning theory fails for lack of causation because Plaintiff cannot demonstrate by a preponderance of the evidence that any warnings regarding sexual assault in Uber's marketing materials would have caused Plaintiff not to ride in Mr. Le's vehicle. And the background-check theory fails because Uber indisputably complied with California law governing background screenings of TNC drivers and lacked actual knowledge of anything in Mr. Le's background that would disqualify him as a driver.

1. <u>Plaintiff Cannot Prove The Causation Element Of A Warning Claim.</u>

Any claim by Plaintiff that Uber negligently failed to warn of the risk of sexual assault in its advertising or marketing materials fails because Plaintiff cannot demonstrate on the undisputed evidentiary record that Uber's marketing or advertising was a substantial factor in causing her alleged injury. *Himes v. Somatics, LLC*, 16 Cal. 5th 209, 222 (2024) ("Whether asserting a negligent or strict liability failure-to-warn claim, the plaintiff must . . . establish that the [defendant]'s failure to warn was a substantial factor in causing the plaintiff's injury.") (cleaned up). Although Plaintiff testified that [redacted], 7/1/2025 Pl. Dep. 28:17-29:1, she never testified that [redacted] To the contrary, [redacted]. *Id.* 29:2-4 ([redacted]). While she [redacted] *Id.* 29:11-16.

Plaintiff instead testified that she chose Uber over other methods of transportation "[redacted]" *Id.* 69:6-9. Indeed, Plaintiff's own testimony confirms it could not have been Uber's advertising about safety that caused her to take Uber on the night in question because Plaintiff [redacted]. *Id.* 32:11-16. Plaintiff testified that ridesharing "[redacted] but this was just Plaintiff's gut feeling, and she did not say that this impression arose from ***any*** particular

source—much less Uber's marketing. *Id.* 83:21-25. Tellingly, Plaintiff stated at her deposition that [redacted]. 10/14/2025 Pl. Dep. 55:21-56:9.

On these facts, Plaintiff cannot carry her burden to show that Uber's failure to warn of the purported risks of sexual assault in its advertising or marketing was a substantial factor in causing Plaintiff's alleged injury. Accordingly, the Court should grant summary judgment in Uber's favor on this theory. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 489 (2001) (affirming summary judgment for defendant gun manufacturer on negligence claim relating to marketing where plaintiff offered "no evidence, direct or circumstantial," that the shooter sought the weapon "in response to [defendant's] marketing efforts").

2. <u>Plaintiff Cannot Prove Breach Of Duty As To Any Alleged Negligence In The Background Checks Of Mr. Le.</u>

Any negligence claim premised on the background screening of Mr. Le also fails as a matter of law because the background checks Uber obtained for Mr. Le indisputably complied with the requirements of the California TNC statute, and those background checks indisputably did not uncover any disqualifying convictions.

The California TNC statute imposes specific requirements regarding criminal background checks on independent drivers by a platform like Uber. *See* Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B); *see also* Cal. Bus. & Prof. Code § 7458(a) (incorporating Section 5445.2 of the Public Utilities Code). Namely, that statute requires Uber to "conduct, or have a third party conduct, a local and national criminal background check for each participating driver" that includes a search "of a multistate and multijurisdiction criminal records locator or other similar commercial nationwide database" and "[a] search of the United States Department of Justice National Sex Offender Public website." Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B). The statute goes on to list a series of crimes that disqualify a driver from driving on a TNC platform if convictions for those crimes appear on a driver's background check. *Id.* § 5445.2(a)(2)-(3).

Here, Uber indisputably ***did*** obtain background checks for Mr. Le at the time he was onboarded to the platform in July 2022, and periodically thereafter, that fulfilled all the requirements of the California TNC statute. UBER-MDL3084-DFS00054709 (7/25/2022 Checkr Background Check indicating "Sex Offender Search," "Global Watchlist Search," "National Search," "Federal Search," and "County Searches"); UBER-MDL3084-DFS00054704 (6/27/2023 Checkr Background Check indicating same); UBER-MDL3084-DFS00054713 (6/3/2024 Checkr Background Check indicating same). And those searches indisputably ***did not*** turn up any disqualifying convictions—indeed, they did not turn up any criminal history ***at all*** except for a handful of nearly three-decade-old misdemeanor traffic convictions, which are not disqualifying.[9] *See* Cal. Pub. Util. Code § 5445.2(a)(2)-(3) (listing disqualifying offenses); UBER-MDL3084-DFS00054709 (7/25/2022 Checkr Background Check: Clear); UBER-MDL3084-DFS00054704 (6/27/2023 Checkr Background Check: "Consider" for 1996 misdemeanor traffic convictions in Louisiana); UBER-MDL3084-DFS00054713 (6/3/2024 Checkr Background Check: Clear).

Plaintiff contends that Checkr missed 10 criminal records that should have disqualified Mr. Le from driving on the Uber platform. But even assuming that these records are actually associated with Mr. Le, the undisputed evidence is that *none* of these records was reportable on a background check. *See* 10/26/2026 Morris Rpt. at 6-14; 10/26/2026 Thomas Rpt. ¶¶ 11-18. The majority of these records—six of the ten—do not even appear under Mr. Le's legal name or under any alias associated with Mr. Le according to an SSN trace, meaning Checkr had no way of identifying these records by searching Mr. Le's name or aliases.[10] *Id.* Moreover, five of those six records lack any indication of a guilty disposition (and two indicate that the charges were dismissed), which means they would not have been reportable anyway under either the Fair Credit Reporting Act ("FCRA") or California law.[11] *Id.* Two further records (2003

[9] Uber also engaged SambaSafety to perform driver record checks on Mr. Le. Those reports were clean except for a March 1, 2023 accident in Oakland, California, which is not disqualifying. *See supra* Note 1.

[10] Four records—a 1996 forgery charge and 1998 assault, kidnapping, and weapons charges—appear under the name "Hung Quang," not Hung Quang Le. 10/26/2026 Morris Rpt. at 7-10 (Ex. 26); 10/26/2026 Thomas Rpt. ¶¶ 14, 16 (Ex. 27). Two additional records—2012 aggravated assault and invasive visual recording charges—appear under the name "Hung Q. Lee," a different spelling than "Le." 10/26/2026 Morris Rpt. at 12-13; 10/26/2026 Thomas Rpt. ¶ 17.

[11] Only the 1998 weapons charge indicates a disposition of guilt, but, again, that record is not associated with Mr. Le's legal name. 10/26/2026 Morris Rpt. at 10.

charges for rape and kidnapping) are associated with Mr. Le's legal name but contain a different date of birth and lack any other strong identifier (e.g., address, SSN) linking the record to Mr. Le. 10/26/2026 Morris Rpt. at 10-12; 10/26/2026 Thomas Rpt. ¶ 15.[12] These records are therefore not reportable under the FCRA, which requires a second identifier apart from name to link a record to a particular individual. *Id.* Moreover, neither of the 2003 records indicates a guilty disposition; to the contrary, both state that the District Attorney refused either part or all of the charges, 10/26/2026 Morris Rpt. at 11-12, and these records were therefore not reportable under the FCRA or California law for that additional reason. The final two records—a 1989 auto theft charge and a 1991 aggravated assault charge—are also both unreportable because they do not indicate guilty dispositions. Rather, the former charge was dismissed and the latter was resolved via deferred adjudication. 10/26/2026 Morris Rpt. at 6-7; 10/26/2026 Thomas Rpt. ¶ 13. Lastly, Plaintiff points to a 2015 civil restraining order apparently issued against Mr. Le in California, but this did not appear on Checkr's background checks because criminal background checks by definition do not report civil suits. 10/26/2026 Morris Rpt. at 13-14. Accordingly, Plaintiff can provide no evidence that Uber knew or should have known about *any* of the issues Plaintiff claims to have identified in Mr. Le's background.

For all of these reasons, Plaintiff cannot prevail on this theory of liability, and the Court should grant summary judgment in Uber's favor. *See Vaserfirer v. Uber Techs., Inc.*, No. 21STCV37594, 2024 WL 5298968, at *4, *6-7 (Cal. Super. Ct. L.A. Cnty. Nov. 22, 2024) (granting summary judgment in Uber's favor on plaintiff's negligent hiring and negligent entrustment claims on fact pattern where Uber's Checkr background check of driver missed disqualifying carjacking conviction); *Doe v. Soothe, Inc.*, No. 23STCV25948, 2025 WL 1840136, at *9-10 (Cal. Super. Ct. L.A. Cnty. June 13, 2025) (granting summary judgment in favor of defendant massage platform on negligent hiring claim relating to alleged sexual assault by massage therapist, where defendant had conducted criminal background checks on massage therapist that came back clean); *see also Federico v. Superior Ct. (Jenry G.)*, 59 Cal. App. 4th 1207 (1997) (in mandamus posture, directing trial court to enter summary judgment in defendant's favor

[12] The 2012 aggravated assault record also indicates a date of birth different from Mr. Le's date of birth. 10/26/2026 Thomas Rpt. ¶ 17.

on negligent hiring claim, because plaintiff provided no evidence that employer knew or "antecedently had reason to believe" that employee had criminal history).

### F. The Court Should Grant Summary Judgment In Uber's Favor On Plaintiff's Product Liability Claims.

Plaintiff also asserts product liability claims against Uber, asserting that the Uber App was defective because it allegedly lacked gender matching, app-based ride recording, and GPS route discrepancy alert features.[13] *See* Compl. ¶¶ 51-70. The Court should grant summary judgment on each theory.

1. Plaintiff's Product Liability Claims All Fail For Lack Of Causation.

Each of Plaintiff's product liability claims fails for lack of causation, because Plaintiff cannot demonstrate on the undisputed record evidence that the absence of these features was a substantial factor in causing her injury or that the alleged assault would not have occurred if these features had been present. *See Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968 (1997) ("[T]he plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury. . . . The substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct.").

***Gender Matching.*** Plaintiff cannot prove that the absence of a gender-matching feature was a substantial factor in causing her alleged injury because Plaintiff's deposition testimony demonstrates that she would not have selected such a feature for the subject ride even if it had existed at the time. Plaintiff testified that, as of August 2023, [redacted] 7/1/2025 Pl. Dep. 32:11-16. And even today, [redacted]. *Id.* 206:5-19 (admitting she has [redacted]). Further, Plaintiff admitted that although she "[redacted]," *id.* 206:7-8, she has never "[redacted]

---

[13] Plaintiff's Complaint also alleges that the Uber App was defective because it lacked a safe ride matching feature. *See* Compl. ¶¶ 43-50. The Court already dismissed this claim, however, on the reasoning that the absence of this feature was not an alleged product defect but really an alleged problem with Uber's rideshare services. *See* Dkt. No. 3441, at 15-17.

[redacted]," *id*. 206:20-22. Plaintiff's refusal to utilize any gender-matching feature ***even today*** means the absence of the feature could not have caused her alleged injuries. *See Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1305-06 (2012) (rejecting plaintiff's design defect claim premised on absence of safety feature on causation grounds where undisputed evidence was that plaintiff would not have used that feature because he did not use it elsewhere).

Even accepting the hypothetical that Plaintiff would have opted into a gender-matching feature had it existed, Plaintiff's testimony made clear that [redacted] 7/1/2025 Pl. Dep. 206:20-22. Indeed, Plaintiff testified that she chose to take Uber rides on the basis of "[redacted] *Id.* 69:6-9. On this record, Plaintiff cannot demonstrate that the absence of a gender-matching feature was a substantial factor in causing her alleged injury. *See, e.g.*, *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 572-73 (1994) (explaining that an alleged design defect is not a "substantial factor" in causing injury if the same injury would have occurred even with a non-defective design); *Visueta v. Gen. Motors Corp.*, 234 Cal. App. 3d 1609, 1616-17 (1991) (affirming summary judgment in favor of defendant on manufacturing defect claim where allegedly defective placement of a parking brake lever did not cause collision because brake was inoperable due to unrelated maintenance problem).

***App-Based Ride Recording.*** Plaintiff also lacks sufficient evidence to demonstrate that mandatory in-app video recording was a substantial factor in causing her injury. Plaintiff alleges that "[t]he presence of cameras serves a deterrent function that significantly reduces and prevents sexual assault and misconduct." Compl. ¶ 58. To carry her burden, however, Plaintiff must prove by a preponderance of the evidence not only that video recording serves a deterrent function generally, but that the presence of in-app video recording during the subject ride would have deterred Mr. Le specifically. *See, e.g.*, *Lopez v. McDonald's Corp.*, 193 Cal. App. 3d 495, 516-17 (1987) (affirming summary judgment in favor of defendant where security cameras and other precautions "might have deterred ordinary criminal conduct" but "could not reasonably be expected to deter or hinder" the specific assailant); *Stokes v. Forty Niners Stadium Mgmt. Co.*, 107 Cal. App. 5th 1199, 1229-31 (2024) (affirming summary judgment in favor of defendant where plaintiffs' theory that additional security staffing would have deterred assailant rested on "speculation heaped upon speculation" that assailant would have heeded security officers).

Here, Plaintiff has proffered two expert reports opining that video recording has a general deterrent effect on sexual assault. *See* 9/26/2025 Tremblay MDL-Wide Report at 28-30 (Ex. 28) (opining that "Cameras / recording can be an effective deterrent as part of any crime prevention strategy," including "[i]n regards to the prevalence of Uber's sexual assault / misconduct patterns"); 9/26/2025 Valliere Report at 30 (Ex. 29) (opining that "[c]ameras are a known deterrent for sexual assault based on general deterrence theory"). But Plaintiff offers no evidence that video recording during the subject ride would have specifically deterred Mr. Le from the alleged conduct. Notably, Mr. Tremblay offers the case-specific opinion that "Uber did not require [Mr. Le] to have video or audio recording during the ride," 9/26/2025 Tremblay Rep. at A.R.2 Case-Specific Report (Schedule A.3) at 5, but Mr. Tremblay does not take the critical next step because he does not opine that recording would more likely than not have prevented the alleged assault. While Plaintiff offers evidence of a generalized deterrent effect, there is no evidence bridging the gap between that general proposition and causation. Moreover, any inference of specific deterrence is undercut by the fact that an optional in-app audio recording feature was available as of the date of the subject ride[14] [redacted] 7/1/2025 Pl. Dep. 32:11-16), and the credible threat of audio recording apparently did not deter Mr. Le's alleged assault here. Absent expert opinion or other evidence that video recording would have specifically deterred Mr. Le from assaulting Plaintiff, no jury could find that this purported defect was a substantial factor in causing Plaintiff's alleged injury, and summary judgment is warranted in Uber's favor.

***GPS Route Discrepancy Alerts.*** Plaintiff also lacks sufficient evidence to prove that the purported lack of a "GPS Alert feature [that] would have flagged Plaintiff's ride due to the driver terminating the ride early" was a substantial factor in causing Plaintiff's alleged injury. Compl. ¶ 69. As of 2023, the Uber App had a feature, known as RideCheck, that pushes alerts to the passenger's Uber App in the event of an unexpected deviation, such as a midway drop-off. *See* 7/15/2025 Esteves Dep. 14:8-15:1, 19:11-16, 21:24-22:4 (Ex. 30). Uber records indicate that this feature ***did*** trigger a midway drop-off alert for Plaintiff's

---

[14] Uber began rolling out the Record My Ride feature in 2022, and the feature became available in San Francisco on August 9, 2023, the day before the subject ride. *See* Uber Newsroom, Uber's Record on Safety is Clear (Aug. 5, 2025), https://www.uber.com/us/en/newsroom/ubers-safety-record/; *see also* CBS News, *Uber Enables In-App 'Record My Ride" Feature For Riders, Drivers in San Francisco* (Aug. 9, 2023), https://www.cbsnews.com/sanfrancisco/news/uber-record-my-ride-in-app-feature-sf-riders-drivers/.

ride. *Id.* 233:3-234:6 ("RideCheck was triggered for [Plaintiff's] ride; it's only that [Uber] doesn't necessarily have a conclusive message to pair with that RideCheck notification"); *id.* Ex. 1601 at Row 54 (Ex. 25) (Mr. Le's RideCheck log indicating a midway drop-off for the subject trip). Even assuming that message for some reason did not reach Plaintiff, *see id.*, she cannot prove by a preponderance of the evidence that the alleged assault would not have occurred in any event. As noted above, Plaintiff testified that [redacted] hat Mr. Le had ended the trip early on his Driver App; thus, a RideCheck alert would not have given Plaintiff any information she did not already have. 7/1/2025 Pl. Dep. 75:11-21, 76:7-10, 78:13-79:4, 94:22-25. This is doubly true because Plaintiff would most likely not have seen a RideCheck alert even if she had received one because she testified at her deposition that [redacted]. *See* 7/1/2025 Pl. Dep. 77:5-10 ([redacted]); *id.* 37:20-38:2; *id.* 37:17-19; *id.* 32:11-16.

On this undisputed record, Plaintiff cannot show by a preponderance of the evidence that a RideCheck alert would have prevented her alleged injury.

2. Plaintiff's Product Liability Claim As To The GPS Route Discrepancy Alert Feature Also Fails Because That Claim Relates To Uber's Rideshare Services.

Plaintiff's product liability claim relating to the GPS route discrepancy alert feature also fails for the additional reason that this feature relates to Uber's rideshare services, not the Uber App as a product. Under California law, only products, not services, are subject to strict liability. *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 675-77 (1985) (defendant not strictly liable for injuries resulting from performance of a service). As this Court has previously acknowledged, "the key question for evaluating plaintiffs' products liability claims becomes whether the alleged defects are really defects in the Uber app, or are they just problems with Uber's services (or with some other aspect of its business model)?" Dkt. 3441 at 15 (cleaned up). Here, the GPS feature that forms the basis of Plaintiff's claim indisputably falls into the latter category.[15] Plaintiff alleges that Uber's GPS technology "detect[s] when a ride has deviated

[15] Uber preserves its prior arguments that *all* of Plaintiff's product liability claims should be rejected as relating to Uber's provision of rideshare services, while acknowledging that the Court has already rejected Uber's argument that the Uber App is categorically not a product. Dkt. 1044 at 41-47.

from the expected route, including when a driver goes off route, when a driver stops for an unusual amount of time, or when the driver and rider stay in proximity after a ride has concluded." Compl. ¶ 67. While "GPS-based alerting and tracking exists as part of many tangible products," Dkt. 1044 at 43, Plaintiff does not limit her claims to GPS *tracking*. Instead, Plaintiff alleges that the Uber App is defective because Uber did not use its GPS tracking data to then "automatically trigger safety alerts in the event of route deviations, unusually long stops, or excessive time spent with a passenger at the beginning or end of a route." Compl. ¶ 68. Such claims are premised on the ***services*** Uber provides with information gleaned from its GPS technology, not the GPS technology itself. *See* Dkt. 3441 at 16 (holding "[w]hat data inputs Uber considers on the 'backend,' . . . and whether those inputs are sufficient to ensure Uber's ride assignments effectively reduce the risk of sexual assault, are 'question[s] of Uber's level of care with respect to its services, not with the design or functionality of the app'") (citation omitted). And as this Court has repeatedly held, such an "allegation[] . . . directed at Uber's provision of services" is "not a product defect." Dkt. 3441 at 14; Dkt. 1044 at 46. The Court should therefore grant summary judgment in Uber's favor on Plaintiff's product liability claim on the GPS route discrepancy alert feature.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Uber summary judgment on Plaintiff's claims.

DATED: November 13, 2026

Respectfully submitted,

*/s/ Geoffrey M. Wyatt*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send Notification of the filing to all counsel of record.

*/s/ Geoffrey M. Wyatt*
Geoffrey M. Wyatt, P.C.