[Counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084-CRB |
| This Document Relates to:<br><br>*A.R.2 v. Uber Technologies, Inc.,* N.D. Cal. No. 24-cv-07821 | **JOINT DISCOVERY LETTER BRIEF REGARDING THE REBUTTAL REPORT OF BETSY BARTKO**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

Dear Judge Cisneros:

Pursuant to Pretrial Order No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding Plaintiff's motion to strike in part the rebuttal report and testimony of Betsy Bartko.

Attached as Exhibit A is a true and correct copy of the Rebuttal Report of Betsy Bartko dated November 5, 2026.

Attached as Exhibit B is a true and correct copy of the Supplemental Expert Report of Julie Moore dated October 13, 2026.

Attached as Exhibit C is a true and correct copy of the Expert Report of Robert Sniderman dated October 26, 2026.

**Plaintiff's Position**:

Uber's GPS expert, Betsy Bartko, claims to rebut the opinions of Plaintiff's experts Julie Moore and Robert Sniderman. She does not. Ms. Moore and Mr. Sniderman opine on *how Uber responded* when a rider, in June 2023 (seven weeks prior to Plaintiff's assault), made a complaint of "rapist" against Uber Driver Michael Le. Ms. Bartko seeks to opine on the validity of the report itself, i.e., whether the rider was telling the truth. Plaintiff's experts did not address that question (nor would they as it has no bearing on what Uber knew and reasonableness of Uber's conduct up to the time of Plaintiff's assault). The opinion is not a proper rebuttal and should be stricken.

**Legal Standard**. A proper rebuttal opinion is "intended solely to contradict or rebut evidence on *the same subject matter* identified by another party" in its own expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). It is only appropriate to "explain, repel, counteract or disprove evidence of the adverse party." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015); *see also Huawei Techs., Co. v. Samsung Elecs. Co., Ltd.,* 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018). As this Court previously noted,

> "[r]ebuttal testimony *cannot* be used to advance new arguments or new evidence. The test of whether an expert's opinion constitutes rebuttal or a 'new' opinion, however, is not whether a rebuttal expert employs new testing or methodologies but instead, whether a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut."

ECF 4701 at 2 (quoting *Wadler v. Bio-Rad Lab'ys, Inc*., 2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (emphasis added). "A rebuttal expert may cite new evidence and data or introduce new methods of analysis in a rebuttal report *so long as* the new evidence, data, or method is offered to contradict or rebut the opposing party's expert." *Id.* (quoting *In re MacBook Keyboard Litig*., No. 5:18-cv-02813-EJD, 2022 WL 1604753, at *8 (N.D. Cal. Jan. 25, 2022)) (emphasis added).

**Ms. Bartko's opinions regarding the validity of a prior report against Uber Driver Michael Le should be stricken.** Ms. Bartko's "rebuttal" opinion does not meet the required standard. She frames her rebuttal as "whether there is any evidence in the form of trip irregularities that would support Plaintiff's experts' opinions that sexual misconduct *occurred* on the [June 2023] ride." Ex. A at 2 (emphasis added). But neither Ms. Moore nor Mr. Sniderman offer any opinion on that issue.

Plaintiff's experts discuss the June 2023 Report in the context of whether Uber, upon receipt of a complaint containing the word "rapist," acted within appropriate HR standards of care and within its own espoused policies, to adequately investigate, identify, and address safety concerns with respect to Uber Driver Michael Le. These opinions turn on what the report said, what Uber did with it (which was nothing), and what Uber knew prior to Plaintiff's assault. At no point does Ms. Moore or Mr. Sniderman review the GPS data for this other ride, nor do they opine on the validity of that report. *See, e.g.,* Ex. B, Moore Suppl. Report, at 81 (discussing the June 2023 Report in the context of whether *Uber* complied with standard HR practices and its own stated policies and procedures); *id.* at 82 (opining that Uber failed in its response to the June 2023 Report, as it "should have responded in a way that demonstrated that ***safety*** was its first priority[,]" including "taking immediate interim action, such as deactivating Mr. Le, and conducting a prompt, thorough, and impartial investigation as part of a company's preventative measures related to sexual assault and sexual misconduct") (emphasis in original); *id.* at 83 ("[t]o support my expert opinions about Uber's responses to the two complaints from [a June 2023 ride] and then A.R., I

examined Uber's internal documents, which show that Uber failed to comply with standard HR practices with regards to safety and its own polices when the Company received complaints about Mr. Le within the span of about seven weeks"); *id.* at 98 (noting that the June 2023 Report exemplified one of Uber's own HR teaching examples which addressed situations in which Uber received "sparse information," like "a report with one single word (for example, 'Rape' or "Touched')" and that in such situations "agents make numerous attempts to contact the reporting party"); Ex. C, Sniderman Report, at 5 (opining that Uber's "policies and practices regarding investigation of reports of sexual assault and misconduct were grossly inadequate[,]" and citing the June 2023 Report as an example); *id.* at 13 (stating that Uber failed to comply with standards practices and company policies when it failed to adequately investigate the June 2023 Report); *id.* at 15 (noting that "Uber did not do anything to follow up on or investigate [The June 2023 Report] other than sending a single message in English to the reporting part, even though Uber knew the rider used the Uber app in Chinese"); *id.* at 16 (opining that "a report of 'rapist' in the context of a driver transporting a rider provides a reasonable company a clear enough understanding that further investigation is warranted").

Uber's briefing concedes the scope of these opinions, yet argues that it should nonetheless be permitted to introduce new expert opinion because Plaintiff's experts "do not stop at process. They contend that a different response would have changed the outcome." But the fact remains that Plaintiff's experts do not assume that the report would have been substantiated had it been timely investigated. *See, e.g.,* Moore Suppl. Report at 97 (opining on outcomes in accordance with Uber's policies for a substantiated *and* unsubstantiated reported had a timely investigation occurred). And, while Plaintiff's experts reference the need to review available GPS data, that opinion is tethered to how Uber's policies called for the review and for further investigation (which Uber's own witnesses admitted Uber failed to do), as opposed to Uber's mis-framing that the GPS data would have validated the report. The focus on Uber and its investigation at the time of the report and up until Plaintiff's assault is the crux of these opinions.[1]

Nothing in Ms. Bartko's report rebuts these points. Instead, she provides a new opinion that seeks to discredit the June 2023 report, bypassing Uber's misconduct entirely. Her opinion is summed up in one sentence: "I observed no irregularities in LE's GPS data that would suggest anything unusual occurred during the ride." Ex. A at 6. Plaintiff's experts do not opine on the validity of the June 2023 Report (let alone the GPS data from that ride), nor do they offer any opinion as to whether an assault or misconduct could or could not have occurred. The opinion as to whether "anything unusual occurred during th[at] ride" is therefore completely outside the scope of proper rebuttal.

The submission is neither justified nor harmless. The Parties exchanged an initial round of expert reports (including rebuttals) for Wave 1 cases in September and October 2025. *See* ECF 8091. The Court then permitted additional expert reports for A.R. to be served by October 26, 2026, with deadlines for pretrial briefings to commence in mid-November. *See id.* All experts are currently preparing for depositions that will extend through the beginning of December. Allowing Uber to submit an entirely new report at this late stage, outside of the permitted case schedule, and after ample opportunity to do so (going back over a year), would needlessly extend deadlines to

[1] Plaintiff's experts do not intend to opine on the gender of the reporter. Even if they were, that still does not provide grounds for Uber to introduce a new opinion that seeks to unsubstantiate a report made in 2023.

the eve of trial itself (jury selection commences January 7). There is no time to respond to a new affirmative opinion, let alone one that seeks to open a mini-trial into the validity of a past report of "rapist" by another rider.

The opinion should be stricken.[2]

**Uber's Position**:

In her recently disclosed expert reports, Plaintiff made clear for the first time that she seeks to present expert testimony (through Ms. Moore and Mr. Sniderman) that a prior rider, Ming D., reported a sexual assault by Michael Le to Uber. This entire episode is irrelevant, and Uber will seek to exclude reference to it at trial. But to the extent the issue is raised at trial, Ms. Bartko's opinion is proper rebuttal and should not be stricken.

Mr. D., a male rider, submitted three reports to Uber in quick succession: a lost-item report at about 7:46 a.m.; a second lost-item report at about 7:47 a.m.; and an unsafe-vehicle report at about 7:49 a.m. *See* UBER-MDL3084-DFS00144587-88 (Ex. D); UBER-MDL3084-DFS00144588_EN-US (Ex. E); UBER-MDL3084-DFS00054771-72 (Ex. F); UBER-MDL3084-DFS00054771_EN-US (Ex. G). In the unsafe-vehicle report, Mr. D. selected "true" for every possible mechanical issue, including seat belt, window, taillight, heating or air conditioning, and other damage. *See* UBER-MDL3084-DFS00054771-72. In addition, when queried as to why he felt the vehicle was unsafe, Mr. D. wrote in English the word: "rapist." *Id*. Mr. D. failed to respond to Uber's request for additional information. *See id.*

Plaintiff not only attacks Uber's response to Mr. D.'s complaint, but also seeks to offer newly disclosed expert opinions that Uber should have reviewed the GPS data from Mr. D.'s trip as part of its investigation. Uber's expert, Betsy Bartko, performed that very review. As set forth in her rebuttal report, Ms. Bartko found no route deviations, no stops other than at traffic lights or intersections, and no other trip irregularities. Bartko Rebuttal Rpt. at 2, 6, 12. This analysis confirms that if Uber had reviewed the GPS data of Mr. D.'s ride, it would not have discovered any basis to suspect that a sexual assault had occurred.

***Ms. Bartko Rebuts Plaintiff's Expert's Opinions.*** Ms. Bartko's report directly rebuts Plaintiff's critique of Uber's response to Mr. D.'s report. Plaintiff argues that Ms. Moore and Mr. Sniderman opine only as to "*how Uber responded*" to Mr. D.'s report. But their opinions do not stop at process. They contend that a different response would have changed the outcome—leading to Mr. Le's removal from the platform and thereby prevented the alleged assault of A.R. Ms. Bartko's report tests that contention against the trip data.

Plaintiff denies that her experts' opinions rely upon an assumption that further investigation would have substantiated a sexual assault, but their reports belie this claim. For example, Ms. Moore opines that "Mr. Le would have been deactivated and thus never would have been in a position to pick up A.R." if only Uber "had substantiated the sexual assault" allegedly connected with Mr. D.'s report. Moore Suppl. Rpt. at 97; *see also id.* at 103 ("Had an investigation been conducted and Ming's complaint been substantiated, Mr. Le would have been removed from the platform and unable to pick up other riders, such as A.R."). In other words, Ms. Moore acknowledges that substantiation is an important question to answer for her opinion, and this is

[2] Plaintiff has also moved to exclude the opinion under Fed. R. Evid. 702 and *Daubert*. *See* ECF 8301.

precisely what Ms. Bartko's opinion addresses. Mr. Sniderman likewise opines that, based on Mr. D.'s one-word allegation, "Uber should have, at a minimum, monitored Driver Le's future rides and blocked him from driving at high-risk times and from picking up at high-risk locations." Sniderman Rpt. at 15. One component of those opinions is that Uber should have undertaken a deeper investigation of Mr. D.'s report (including review of the GPS data). *See* Moore Suppl. Rpt. at 101 (listing "review [of] the GPS data for the trip" as something Uber did not do); *id.* at 107 (asserting that the investigation of Mr. D.'s complaint should have included review of "GPS data"); *see also* Sniderman Rpt. at 13 (faulting Uber for failing to review "such basic factual evidence as GPS data"). Ms. Bartko performed that review. Using Mr. Le's GPS data, she reconstructed the route and found that Mr. D.'s ride covered 19 miles, from his pick-up point to his selected destination, in 22 minutes, with no stops other than at traffic lights or intersections. Bartko Rebuttal Rpt. at 6. She also analyzed Mr. D.'s own app data and concluded that he was in Mr. Le's vehicle for the entire trip. *Id.* at 9-14. As such, she concludes there were no irregularities in the GPS data "that would suggest anything unusual occurred during the ride." *Id.* at 6. This evidence contradicts the premise of Plaintiff's experts' opinions because it shows that if Uber had taken one of the steps they insist is necessary, that inquiry would not have substantiated the complaint or supported Mr. Le's removal. Accordingly, the opinions are proper rebuttal.

Plaintiff insists that "the validity" of Mr. D.'s report "has no bearing on what Uber knew and the reasonableness of Uber's conduct up to the time of Plaintiff's assault," and that "neither Ms. Moore nor Mr. Sniderman offer[s] any opinion" on whether Mr. Le sexually assaulted Mr. D. Plaintiff similarly contends that her experts' opinions are "tethered" to Uber's alleged deviation from its own policies. But as explained above, evidence that a GPS review would not have provided new information responds directly to Plaintiff's experts' opinions. After all, both of her experts' opinions depend not merely on an alleged deviation from Uber policies, but also on what alleged adherence to those policies through further investigation would have revealed. Sniderman Rep. at 12 ("Had Uber investigated Rider Ming's 'rapist' report even cursorily, it ***may have prevented*** A.R.'s sexual assault.") (emphasis added); Moore Suppl. Rpt. at 82 ("The response should aim to hold ***wrongdoers*** accountable and, also, to prevent future harm.") (emphasis added). Ms. Moore goes even further and suggests the report was true, asserting that Mr. D.'s "report of rape may well have been true when Mr. Le was sent by Uber to pick up A.R. and, if so, he never should have continued driving." Moore Suppl. Rpt. at 124, 127. Having put the report's truth at issue, Plaintiff cannot complain of a "mini-trial." In any event, Ms. Bartko addresses only one 22-minute trip and what its data shows. And even if an investigation had not substantiated the report, Ms. Moore opines that the "unresolved ambiguity surrounding a potential report of assault or rape" would have required remedial measures such as blocking Mr. Le from high-risk times and locations. *Id.* at 108. Plaintiff should not be allowed to argue that Uber's failure to review the GPS data caused her injury while preventing Uber from showing what that data contains.

To the extent Plaintiff's objection is that Ms. Bartko utilized data that Plaintiff's own experts ignored, that is obviously not a basis for striking the rebuttal report. As the Court has held, a rebuttal expert may offer testimony that "properly seeks to 'impeach or defuse the impact of the evidence offered by an adverse party.'" Dkt. No. 4990 (citing *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018). And as Plaintiff acknowledges, a "rebuttal expert may cite new evidence and data or introduce new methods of analysis in a rebuttal report *so long as* the new evidence, data, or method is offered to contradict or rebut the opposing party's expert." Pl.'s PTO 8 Stmt. at 1; *accord* Dkt. No. 4701 at 2.

***Ms. Bartko Also Corrects Ms. Moore's Erroneous Statement About Mr. D.'s Gender.*** Plaintiff ignores the portion of Ms. Bartko's report that specifically rebuts Plaintiff's experts' mischaracterization of Mr. D.'s sex. Ms. Moore at times refers to Mr. D. as "she," *see* Moore Suppl. Rpt. at 107, while Mr. Sniderman awkwardly avoids any indication of gender by referencing only "rider Ming" or "Ming" without ever using pronouns. Sniderman Rpt. at 14-15. This is particularly troubling since Plaintiff's counsel have known since at least August 2025 that Mr. D. is a man (and presumably would have shared this knowledge with their experts). Ms. Moore also emphasizes gender in stating that, based only on Mr. D.'s report, Uber should not have matched the driver, Mr. Le, with "a woman requesting a ride late at night from an area where there are a number of establishments serving alcohol." Moore Suppl. Rpt. at 82. But she never acknowledges the relevant fact that Mr. D. is a man. Ms. Bartko's report appropriately rebuts this erroneous suggestion. Bartko Rebuttal Rpt. at 2.

***Ms. Bartko's Report is Timely, and Plaintiff Has Not Suffered Prejudice.*** Finally, Ms. Bartko's report is timely, and Plaintiff has suffered no prejudice as a result of Ms. Bartko's opinions. The Parties exchanged A.R.-specific expert reports on October 13 and 26, 2026, and Uber provided Ms. Bartko's rebuttal report on November 5, within 30 days. *See* Fed. R. Civ. P. 26 (a)(2)(D)(ii). Uber could not have rebutted these opinions earlier because Plaintiff's experts first disclosed them in their A.R.-specific reports. Rule 702 motions were filed on November 13—including as to Ms. Bartko, as Plaintiff acknowledges, *supra* note 1, and oppositions are due December 8. *See* A.R. Dkt. No. 17. As Plaintiff notes, "experts are currently preparing for depositions that will extend through the beginning of December." Pl.'s PTO 8 Stmt. at 1. Plaintiff has plenty of time and opportunity to digest Ms. Bartko's 15-page rebuttal report and prepare accordingly for trial, especially given her counsel's assertion that the validity of Mr. D.'s report is not relevant to her experts' opinions on the appropriateness of Uber's response. For this reason, too, the Court should deny Plaintiff's request to strike Ms. Bartko's opinions.

Dated: November 18, 2026

By: */s/Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

Respectfully Submitted,

By: */s/Laura Vartain Horn*
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN
CHRISTOPHER COX
**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN
**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: November 18, 2026

By: */s/ Ellyn Hurd*
Ellyn Hurd
Simmons Hanly Conroy LLP