[Submitting counsel on signature page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*A.R. v. Uber Technologies, Inc., et al.,*<br>Case No. 3:24-cv-07821 | Case No. 3:23-md-03084-CRB<br><br>Judge: Honorable Charles R. Breyer<br><br>**PLAINTIFF A.R.'S MOTIONS *IN LIMINE***<br><br>**PROVISIONALLY FILED UNDER SEAL PURSUANT TO ECF 8182** |

# TABLE OF CONTENTS

LEGAL STANDARD ..... 1
ARGUMENT ..... 1
I. Plaintiff's Motion *In Limine* No. 1: Exclude evidence or testimony related to information Uber allegedly learned about the "[redacted]" report by rider M.D. after A.R.'s assault. ..... 1
II. Plaintiff's Motion *In Limine* No. 2: Exclude evidence or testimony about A.R.'s alleged use of drugs, alcohol, or tobacco. ..... 3
III. Plaintiff's Motion *In Limine* No. 3: Exclude evidence or testimony related to the conduct of Plaintiff's counsel. ..... 4
IV. Plaintiff's Motion *In Limine* No. 4: Exclude evidence or testimony about Plaintiff's unrelated medical conditions. ..... 5
V. Plaintiff's Motion *In Limine* No. 5: Exclude evidence or testimony about nonparties' unrelated medical conditions. ..... 6
VI. Plaintiff's Motion *In Limine* No. 6: Exclude evidence or testimony related to Plaintiff's sexual history. ..... 7
VII. Plaintiff's Motion *In Limine* No. 7: Exclude evidence or testimony related to Plaintiff's finances. ..... 9
VIII. Plaintiff's Motion *In Limine* No. 8: Exclude evidence or testimony related to Plaintiff's deposition preparation meeting with a consulting expert. ..... 10
IX. Plaintiff's Motion *In Limine* No. 9: Exclude evidence or testimony related to Lyft's background check records. ..... 13
X. Plaintiff's Motion *In Limine* No. 10: Exclude lay evidence or testimony by lay witnesses regarding Plaintiff's mental state. ..... 14
XI. Motion *In Limine* No. 11: Exclude testimony or evidence related to Uber's Safety Advisory Board (SAB) or affiliated nonprofits including "general" references ..... 15
XII. Motion *In Limine* No. 12: Exclude evidence or testimony that the Fair Credit Reporting Act (FCRA) precludes CRAs from reporting civil domestic violence suits or precludes Uber, a non-CRA from discovering any aspect of Le's ackground ..... 17
XIII. Plaintiff's Motion *in Limine* No. 13: Exclude evidence or testimony that legal barriers prevented Uber from adopting safety measures ..... 19
CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agan v. BNSF Railway Co.*,
2022 WL 3700052 (D. Mont. Aug. 26, 2022)........................................................................ 6
*Angeles Chem. Co. v. McKesson Corp.*,
2009 WL 10673132 (C.D. Cal. April 30, 2009) .................................................................... 13
*Barta v. City & County of Honolulu*,
169 F.R.D. 132 (D. Haw. 1996) .............................................................................................. 8
*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003).............................................................................................. 16, 20
*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir.1992)...................................................................................................... 20
*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001).............................................................................................. 20, 21
*Giannerini v. Embry-Riddle Aeronaut. Univ., Inc.*,
2025 WL 2918880 (M.D. Fla. Jan. 29, 2025) ........................................................................... 9
*Hood v. Bare*,
2021 WL 5014532 (S.D. Ohio, Oct. 28, 2021) .......................................................................... 9
*Hynix Semiconductor Inc v. Rambus, Inc.*,
2008 WL 397350 (N.D. Cal. Feb. 10, 2008)...................................................................... 12, 13
*In re Bard Implanted Port Catheter Prod. Liab. Litig.*,
2026 WL 923452 (D. Ariz. April 6, 2026)................................................................................. 6
*In re Cendant Corp. Sec. Litig.*,
343 F.3d 658 (3d Cir. 2003)................................................................................................ 12, 13
*In re Xyrem Antitrust Litig*.,
2025 WL 860505 (N.D. Cal. Mar. 19, 2025) ........................................................................... 21
*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
552 F.3d 1033 (9th Cir. 2009)............................................................................................. 16, 20
*Lindfors v. State Farm Mut. Auto. Ins. Co*.,
2022 WL 1241399 (D. Alaska April 27, 2022)......................................................................... 19
*Luce v. United States*,
469 U.S. 38 (1984) .................................................................................................................... 1
*Madrigal v. Allstate Indem. Co.*,
2015 WL 12748277 (C.D. Cal. Nov. 5, 2015) ......................................................................... 21
*Maiorano v. Home Depot U.S.A., Inc.*,
2018 WL 2128609 (S.D. Cal. May 9, 2018) ............................................................................. 3
*Manoukian v. BMW of N. Am., LLC*,
2023 WL 2558397 (C.D. Cal. Feb. 9, 2023)............................................................................. 10
*Mfg. Automat. & Software Sys., Inc. v. Hughes*,
2019 WL 266970 (C.D. Cal. Jan. 15, 2019)................................................................................ 4
*Mformation Techs., Inc. v. Research in Motion, Ltd*,
2012 WL 2339762 (N.D. Cal. June 7, 2012) ............................................................................. 4

*Moeller v. Taco Bell Corp.*, 2009 WL 10710495 (N.D. Cal. Oct. 6, 2009) ........ 16
*Palmerin v. City of Riverside*, 794 F.2d 1409 (9th Cir. 1986) ........ 1
*Quintero v. Nat'l R.R. Passenger Corp.*, 2022 WL 4093120 (W.D. Wash. Sept. 7, 2022) ........ 19
*San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085 (N.D. Cal. 2022) ........ 19
*Sonnier v. Field*, 2007 WL 2155576 (W.D. Pa. 2007) ........ 9
*Torres v. City of Los Angeles*, 2014 WL 13133503 (C.D. Cal. Aug. 5, 2014) ........ 3
*United States v. Simons*, 2026 WL 1194932 (S.D. Cal. May 1, 2026) ........ 19
*V.R. v. County of San Bernadino*, 2022 WL 2285655 (C.D. Cal. April 12, 2022) ........ 1, 3

Statutes

15 U.S.C. § 1681 ........ 17, 18
15 U.S.C. § 1681a(d)(1) ........ 18
15 U.S.C. § 1681c(a)(2), (5) ........ 17
Cal. Civ. Code § 1785.13(a)(2), (8) ........ 18
U.S.C. § 1681c(a)(2), (5) ........ 17

Rules

Fed. R. Evid. 401–403 ........ passim
Fed. R. Evid. 402, 403 ........ 3, 6
Fed. R. Evid. 403 ........ passim
Fed. R. Evid. 412 ........ 6, 7, 8, 9
Fed. R. Evid. 601, 701, 702 ........ 11
Fed. R. Evid. 602 ........ 15
Fed. R. Evid. 701 ........ 15
Fed. R. Evid. 702 ........ 11
Fed. R. Evid. 703 ........ 4
Fed. R. Evid. 801–803 ........ 2, 4, 13

Other Authorities

L.R. 5-1 ........ 23

## LEGAL STANDARD

Motions *in limine* are a "well-recognized judicial practice based in 'the court's inherent power to manage the course of trials." *V.R. v. County of San Bernadino*, 2022 WL 2285655, at *2 (C.D. Cal. April 12, 2022) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). They are "useful tools to resolve issues which would otherwise clutter up the trial," thus permitting the trial to be conducted more efficiently and effectively. *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986) (quotations omitted).

## ARGUMENT

### I. Plaintiff's Motion *In Limine* No. 1: Exclude evidence or testimony related to information Uber allegedly learned about the "[redacted]" report by rider M.D. after A.R.'s assault.

Plaintiff intends to introduce evidence that, on June 18, 2023, less than two months before she was sexually assaulted, Uber received a report from another rider, M.D., containing one English word: "[redacted]." Ex. A, UBER-MDL3084-DFS00054771. Uber's corporate representative, Greg Brown, testified that one "[redacted]" of the report "[redacted]," and it did not "[redacted]." Ex. B, July 16, 2025 30(b)(6) Deposition of Greg Brown at 400:16–404:13. Despite that conclusion, Uber classified the "[redacted]" report as "[redacted]" and let the driver keep driving. Ex. C, Exhibit 1707 to the July 16, 2025 30(b)(6) Deposition of Greg Brown; *see also* Ex. B at 431:2–19. In September 2024, Uber reported this incident to the California Public Utilities Commission as "[redacted]" Ex. Y, UBER-MDL3084-BW-00023188 at Tab 1, Row 31298, Column AF. Uber continued to classify the report this way as recently as 2025, when Mr. Brown testified on Uber's behalf in this case. *Id.* Mr. Brown also confirmed that, had M.D. used the word "[redacted]" as opposed to the variant "[redacted]," the report would have been classified as "[redacted]." Ex. B, at 431:13–433:25. Such a classification would have resulted in [redacted]. *See id.* at 448:14–29. This evidence illustrates both the general irresponsibility of Uber's approach to reports of sexual misconduct and how that approach resulted in a dangerous driver remaining on the platform due to the use of one word versus another.

Only after A.R. was assaulted and filed this suit did Uber try to learn more. Uber translated some

of M.D.'s communications to English and subpoenaed him for a deposition.[1] Though M.D. did not attend, Uber stated that it intends to serve M.D. again.

Uber should not be permitted to defend its decision to retain Driver Le on the platform by relying on information it obtained only after A.R.'s assault. The relevant question is whether Uber acted reasonably based on the information available to it when it received and evaluated M.D.'s June 18, 2023 report. Information subsequently obtained about M.D. or the underlying incident could not have informed Uber's contemporaneous 2023 decision and therefore cannot establish that its response was reasonable. Permitting Uber to introduce such evidence would invite the jury to evaluate Uber's conduct with the benefit of hindsight, rather than based on what Uber actually knew and did at the time. Such evidence should be excluded under Rules 401–403.

Now, Uber intends to introduce evidence of what it learned about M.D. and the report years after A.R. was assaulted (for example, in a future deposition of M.D.). Such evidence should be excluded as irrelevant and a waste of time under Fed. R. Evid. 401–403. What Uber learned about M.D. years later does not show that Uber's policies were reasonable, or that Uber acted reasonably in letting this driver stay on the platform. Speculation about what Uber might have learned or done under different circumstances would be nothing but a distraction from the real issue: what Uber actually knew at the time of A.R.'s assault and how it reacted to that information. The Court already issued the same ruling in *Dean*. In *Dean*, the Court allowed evidence of a misconduct report by an earlier rider but excluded information Uber learned after the Plaintiff's sexual assault. *See* Jan. 6, 2026 *Dean v. Uber Techs. Inc.*, Pretrial Hr'g Tr., at 65:21–69:18 ("[T]he point is: What did Uber know or what about Uber – what was brought to

[1] Additionally, in 2025, a Peiffer Wolf attorney spoke to M.D. via phone for under five minutes with a translator. Over a year later, on November 13, 2026, a different Peiffer Wolf attorney emailed counsel for Uber, indicating M.D. had denied knowledge of the complaint or receipt of notice by Uber that his contact information had been shared with Plaintiffs. Then, on November 17, 2026 counsel for Uber recited the email into the record during the deposition of M.D., which M.D. did not attend. Evidence about an attorney's recollection of a year-old conversation conducted through a translator that was, in turn, about M.D.'s recollection of a two-year old complaint should be excluded. First, it would invite a mini-trial not about what happened to A.R., or even what happened to M.D., but about what various others remember of subsequent conversations. Fed. R. Evid. 403. Second, permitting inquiry into the 2025 conversation risks making counsel both advocate and witness thus depriving A.R. of the counsel of her choice solely for reasons of advancing a collateral issue. Third, these statements are hearsay (and hearsay within hearsay) not subject to an exception and inadmissible. Fed. R. Evid. 801–803.

Uber's attention.... What was brought to Uber's attention about the driver up until -- at least this point, up until the purported assault...So I think you get to show: What did you know as of the that time. What happened subsequently I don't think is relevant...It's what did Uber know, and when did they know it? And it stops at that."). Here, too, the relevance of the "rapist" report stops at the time of A.R.'s assault. Any later-learned information should be excluded.

## II. Plaintiff's Motion *In Limine* No. 2: Exclude evidence or testimony about [redacted].

Plaintiff anticipates Uber will introduce evidence about [redacted] Plaintiff testified that she had "[redacted]" at a charity event in the evening preceding the sexual assault. Ex. D, July 1, 2025 Deposition of A.R. at 41:16–42:24. Plaintiff did not testify that she [redacted] on the date of the incident. *Id.* Nonetheless, Uber questioned Plaintiff, her friends, and her mental health providers about [redacted] before and after the date of the sexual assault. *See* Ex. J, July 11, 2025 Deposition of O.K. at 25:2–26:20; Ex. X July 28, 2025 Deposition of R.S. at 35:1–36:11. Evidence of [redacted] is wholly irrelevant to any claims or defenses but is substantially prejudicial. Fed. R. Evid. 402, 403.

Since Plaintiff does not allege [redacted] caused or contributed to the sexual assault, or vice versa, there is no probative value to this kind of evidence. *See* Fed. R. Evid. 401, 402. On the other hand, evidence of Plaintiff's [redacted] would substantially prejudice Plaintiff by suggesting she is irresponsible, a party girl, or [redacted] who does not deserve to be believed. *See* Fed. R. Evid. 403. Courts in this Circuit exclude evidence of use of alcohol and drugs outside of the underlying incident as irrelevant and unduly prejudicial. *See Torres v. City of Los Angeles*, 2014 WL 13133503, at *2 (C.D. Cal. Aug. 5, 2014) ("Specific examples of Plaintiff's drug or alcohol use at times other than the time of the incident and the time of trial are not relevant and, in any event, are excluded as unduly prejudicial"); *Maiorano v. Home Depot U.S.A., Inc.*, 2018 WL 2128609, at *1 (S.D. Cal. May 9, 2018) ("The Court finds good cause exists to exclude evidence that decedent [...] had a history of 'partying,' consuming alcohol and/or drugs [...] prior to the incident that is the subject of Plaintiff's action."); *V.R. v. County of San Bernadino*, 2022 WL 2285655, at *6 (C.D. Cal. April 12, 2022) (holding that the plaintiff's "history of drug/alcohol use [...] has no likelihood of proving any material facts relevant to the claims and

would be highly prejudicial.”). The Court should do the same here.

Moreover, much of the evidence Uber would introduce is inadmissible hearsay. The out-of-court statements by family members and treatment providers about substance use by Plaintiff are hearsay because they are out-of-court statements offered for their truth and do not fall within any exception to hearsay. Fed. R. Evid. 801, 802. An expert’s review of these materials would not independently make them admissible; otherwise-inadmissible facts underlying an opinion may be disclosed to the jury only when their value in evaluating the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. Here, Uber cannot meet that standard.

### III. Plaintiff’s Motion *In Limine* No. 3: Exclude evidence or testimony related to the conduct of Plaintiff’s counsel.

The Parties litigated numerous discovery disputes over the course of Plaintiff’s case, during which Uber alleged, for example, that Plaintiff’s counsel delayed or suppressed production of certain text messages between Plaintiff and nonparty witness I.E. *See* ECF 3786, 3985. To the extent Uber plans to introduce evidence, or argument about any discovery issues including these text message productions, this evidence should be excluded as irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401, 402, 403.

Discovery disputes, including those related to the timeliness or completeness of productions, are irrelevant and prejudicial. *See Mformation Techs., Inc. v. Research in Motion, Ltd*, 2012 WL 2339762, at *2 (N.D. Cal. June 7, 2012) (“Evidence of the parties’ discovery disputes are not relevant … and thus should not be presented to the jury. This includes evidence that Plaintiff produced some source code later than it should have under the discovery rules.”). Here, the process and timing of document productions has no probative value as it relates to the underlying facts in this litigation. However, testimony or argument about the discovery process and related disputes will substantially prejudice Plaintiff by suggesting that she is not credible or her claims are not strong, even though Plaintiff was not herself involved in these disputes and the documents at issue were ultimately produced to, and used by, Uber.

This is particularly true where, as here, the opposing party has not been prejudiced. *See Mfg. Automat. & Software Sys., Inc. v. Hughes*, 2019 WL 266970, at *5 (C.D. Cal. Jan. 15, 2019) (explaining that presenting evidence of counsel’s alleged conduct or other discovery disputes is not an “automatic right” and is only available “if no greater than necessary to cure prejudice.”) (quotations omitted). Here,

not only has Plaintiff produced the discovery at issue, but Uber also had the opportunity to depose witnesses about the productions. *See* ECF 3786, 3985; *see also* Ex. E, Oct. 13, 2025 Deposition of I.E. at 7:24–8:1 ("It is my understanding that I am being deposed because I was missing documents from my previous deposition that we are going to go over today."). The Court should preclude Uber from introducing evidence related to these discovery disputes. Evidence about such a collateral issue would divert the course of the trial from the underlying facts and merits of the trial, serving no purpose but to prejudice Plaintiff. *See* Fed. R. Evid. 401–403.

## IV. Plaintiff's Motion *In Limine* No. 4: Exclude evidence or testimony about Plaintiff's [redacted].

Uber questioned Plaintiff and her friends and family about Plaintiff's [redacted] including [redacted]. Plaintiff's medical records describe these conditions in detail. Additionally, Plaintiff's medical records include sensitive information about Plaintiff's [redacted].

Plaintiff has not alleged that the sexual assault in this litigation caused, contributed to, or worsened any of these [redacted] Nor is there any evidence that these [redacted] contributed to Plaintiff's emotional distress or mental health symptoms. On the contrary, Plaintiff, her friends, and family testified that despite Plaintiff's [redacted], she is still able to participate in her preferred hobbies with [redacted] *See, e.g.*, Ex. D, July 1, 2025 Deposition of A.R. at 177:1–16; Ex. F, July 14, 2025 Deposition of S.R. at 31:25–31:16; Ex. G, July 7, 2025 Deposition of I.E. at 32:2–24. Plaintiff's treating provider likewise denied that Plaintiff's [redacted] Ex. H, Aug. 7, 2025 Deposition of Alexander Patsiornik, M.D. at 31:2–13. Consistent with this testimony, Uber's forensic psychiatrist also did not opine that [redacted] caused or contributed to Plaintiff's mental health condition before or after 2023. *See* Ex. I, Expert Report of Sarah West, M.D. Plaintiff's physical medical conditions have no relevance to any issue to be decided in this case and should be excluded.

The Court should exclude all evidence related to Plaintiff's [redacted]. Evidence related to

these [redacted] is irrelevant and likely to confuse the jury in accordance with Fed. R. Evid. 401, 402, and 403. Evidence related to Plaintiff's [redacted], is also inadmissible under Fed. R. Evid. 412.[2] Courts in this Circuit routinely exclude evidence of irrelevant medical conditions, and the Court should do the same here. *See In re Bard Implanted Port Catheter Prod. Liab. Litig.*, 2026 WL 923452, *5 (D. Ariz. April 6, 2026) (excluding evidence of unrelated physical conditions of plaintiff as "irrelevant to the claims in this case, including the damages claims"); *see also Agan v. BNSF Railway Co.*, 2022 WL 3700052, *9 (D. Mont. Aug. 26, 2022) ("Discussion during trial will be cabined to the injuries claimed and directly flowing from the accident at issue. Evidence of other, unrelated medical issues would be irrelevant and misleading.").

### V. Plaintiff's Motion *In Limine* No. 5: Exclude evidence or testimony about nonparties' [redacted].

Uber questioned Plaintiff and third-party witnesses about the [redacted]. Plaintiff's medical records also include details about the [redacted], as do Uber's expert reports. *See* Ex. I, Expert Report of Sarah West at 2, 5, 7. The [redacted] have no tendency to make a fact of consequence "more or less probable." Fed. R. Evid. 402. Similarly, the [redacted] of third parties have minimal probative value. *Id.* On the other hand, evidence of [redacted], is highly prejudicial and that prejudicial effect substantially outweighs any nominal probative value. Fed. R. Evid. 403.

Uber elicited testimony about the effect of [redacted] on Plaintiff, but this testimony was limited to the impact on Plaintiff when she was an 18-year-old college freshman more than ten years ago. Ex. D, July 1, 2025 A.R. Deposition at 148:13–19 ("A: My freshman year in college…"); *id.* at 148:23–24 ("Q. But in your experience of that, how did you – how did that experience impact your life *when you were 18*?) (emphasis added); *id.* at149:1–12 (A… [redacted] over the course *of that year in college*.") (emphasis added). Plaintiff's mother confirmed that

[2] *See* Plaintiff A.R.'s Motion *in Limine* No. 6.

this event did not cause Plaintiff to experience depression and that Plaintiff has finished working through any issues in connection with the event. *See* Ex. F, S.R. Deposition at 22:13–18 [redacted] *id.* at 22:24–23:2 [redacted].

Uber did not elicit any testimony about the impact of this [redacted] on Plaintiff at the time of the sexual assault in this case or afterwards. *Id.* Uber's forensic psychiatrist also discussed this incident with Plaintiff during her IME. Ex. I, Expert Report of Sarah West at 5, 7. However, Dr. West only referenced this incident in the "history" sections of her report and did not attribute any of Plaintiff's current or post-2023 mental health symptoms to this incident. *Id.* The record is devoid of any evidence that the [redacted] affected her mental health at the time of the incident or after. Nonetheless, evidence that Plaintiff's [redacted] have certain [redacted] would likely have a substantial prejudicial effect. This evidence should be excluded under Fed. R. Evid. 401–403.

### VI. Plaintiff's Motion *In Limine* No. 6: Exclude evidence or testimony related to Plaintiff's [redacted]

Plaintiff's medical records include details of Plaintiff's [redacted] including information about [redacted]. Counsel for Uber repeatedly asked Plaintiff and third party witnesses about these issues, including [redacted] Evidence related to Plaintiff's [redacted] has minimal, if any, probative value but is likely to have a substantial prejudicial effect. *See* Fed. R. Evid. 403, 412. This evidence should be excluded entirely.

Rule 412 prohibits evidence offered to prove: (1) "that a victim engaged in other sexual behavior" or (2) "a victim's sexual predisposition." Fed. R. Evid. 412(a). Rule 412 exists to safeguard sexual assault survivors like Plaintiff "against the invasion of privacy, potential embarrassment and sexual stereotyping." Fed. R. Evid. 412 Advisory Comm. Notes. Therefore, the proponent of sexual history evidence must meet a heightened standard, showing that the "probative value substantially outweighs the danger of harm to

any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2).[3] Evidence of [redacted] falls within the ambit of Rule 412 which applies to "all activities that involve actual physical conduct, i.e. sexual intercourse and sexual contact, or that *imply* sexual intercourse or sexual contact." Fed. R. Evid. 412 Advisory Comm. Notes (emphasis added). Additionally, "the language of Rule 412 is broad enough to encompass the behavior of the mind." *Id.* (quotations omitted). Therefore, Uber would need to show that the probative value of this evidence "substantially outweighs" any prejudicial effect. *See* Fed. R. Evid. 412(b)(2). It cannot do that because the opposite is true: the prejudicial effect of this evidence substantially outweighs the minimal (if any) probative value of the evidence, such that it should be excluded under Rule 412. Even if Rule 412 did not apply, the evidence would be inadmissible under Rule 403 for the same reason. *See* Fed. R. Evid. 403, 412.

First, the probative value of this evidence is minimal. There is no probative value to evidence of Plaintiff's [redacted]. While Uber may argue that the [redacted] is relevant to rebut Plaintiff's damages claims, any impact of this relationship on Plaintiff was limited in time and therefore not relevant. *See Barta v. City & County of Honolulu*, 169 F.R.D. 132, 136 (D. Haw. 1996) ("[plaintiff's] sexual conduct in that defined area, remote in time and/or kind from her claims has no relevance to her claims or applicable defenses.").

Plaintiff identified the [redacted] as a stressor in her life "prior to 2023." Ex. D, July 1, 2025 Deposition of A.R. at 150:10–151:13. Specifically, the [redacted] and Plaintiff experienced mental health symptoms "over the course of the following year." *Id.* Consistent with this testimony, O.K., a close friend of Plaintiff's since 2023, who regularly discusses personal relationships with Plaintiff testified that Plaintiff had never mentioned [redacted] Ex. J, July 11, 2025 Deposition of O.K. at 15:9–13, 17:10–23. In addition, Uber's own forensic psychiatrist did not identify the [redacted] as a source of any past or current emotional distress or mental health symptoms in

[3] In addition, the Rule mandates that the proponent of such evidence file a written motion, filed in advance, that specifically describes the evidence and its intended purpose. Fed. R. Evid. 412(c). To the extent Uber fails to file a written motion or omits any type of sexual history evidence from its written motion, that evidence should be excluded as a matter of course. *See id.*

any of her three reports. Ex. I, Expert Report of Sarah West, M.D., at 4; *see also* Ex. K, Nov. 14, 2025 Deposition of Sarah West, M.D. at 97:16–20 ("Q… have we discussed all of the opinions that you intend to offer in the – in this case? A. Yes.").

Second, the prejudicial effect is substantial. Evidence of [redacted] would serve only to introduce intimate details of Plaintiff's private life that are not at issue and promote sexual stereotypes. *See* Fed. R. Evid. 412 Advisory Comm. Notes. Even where evidence of relationship problems or breakups have been proffered to rebut damages, courts have excluded this evidence under Rules 403 or 412 due to the risk of substantial prejudice. *See Giannerini v. Embry-Riddle Aeronaut. Univ., Inc.*, 2025 WL 2918880, *2 (M.D. Fla. Jan. 29, 2025) (rejecting argument that evidence about plaintiff's breakup with an abusive ex-boyfriend and therapy notes about the relationship were relevant in discrimination case to show plaintiff was "traumatized by the relationship" and permitting only evidence of how relationship impacted behavior at work at time of firing); *Hood v. Bare*, 2021 WL 5014532, at *4 (S.D. Ohio, Oct. 28, 2021) (granting motion to exclude evidence of past evidence of relationship and relationship violence "which Defendants proposed to use to rebut Plaintiff's damages" as substantially more prejudicial than probative); *Sonnier v. Field*, 2007 WL 2155576, *4 (W.D. Pa. 2007) (excluding evidence of prior suicide attempt and breakup of plaintiff's engagement occurring before Plaintiff's death, where defendant argued Plaintiff's emotional state was relevant to show Plaintiff committed suicide-by-cop). The Court should preclude the introduction of salacious information about Plaintiff's [redacted], so that Uber is not able to use these [redacted] as a vehicle to embarrass and harass Plaintiff by putting intimate details of Plaintiff's [redacted] on display even where those [redacted] are remote in time from the assault.

### VII. Plaintiff's Motion *In Limine* No. 7: Exclude evidence or testimony related to Plaintiff's [redacted].

In *QLF 001*, the Court granted Plaintiff's motion *in limine* to exclude evidence of the plaintiff's financial situation. ECF 7975 (granting QLF 001's motion *in limine* No. 9). Here, too, the Court should exclude any evidence concerning Plaintiff's [redacted] including evidence related to [redacted] Plaintiff's [redacted] were nothing out of the ordinary. *See* Ex. E,

Oct. 13, 2025 Deposition of I.E. at 31:13–19 [redacted]”); Ex. N, July 28, 2025 Deposition of R.S. at 28:3–23 (“[redacted]). As in *QLF 001*, Plaintiff’s [redacted] have no bearing on Plaintiff’s credibility. Therefore, such evidence “is likely to be substantially prejudicial, confuse the issues, and/or mislead the jury” and should be excluded. *Manoukian v. BMW of N. Am., LLC*, 2023 WL 2558397, at *2 (C.D. Cal. Feb. 9, 2023).

### VIII. Plaintiff’s Motion *In Limine* No. 8: Exclude evidence or testimony related to Plaintiff’s deposition preparation meeting with a consulting expert.

Before her first deposition, Plaintiff attended a virtual meeting with a consulting expert psychologist in April 2025 and an in-person deposition prep meeting with her counsel and two consulting expert psychologists in May 2025. Ex. L, September 2, 2026 Deposition of A.R. at 26:3–30:14, 32:2–12. During the deposition prep meeting, the participants got to know Plaintiff’s background and walked through the sexual assault. *Id.* at 55:2–11, 55:17–22, 67:3–10. Plaintiff likened the process to a “[redacted]” *Id.* at 65:16–21. Uber questioned Plaintiff and third party witnesses extensively about the deposition prep meeting, the identities of the consulting experts, and text messages Plaintiff sent to friends about her attendance at the meeting (messages that have since been clawed back as including work product). *See id.* at 26:3–30:14, 32:2–12, 55:2–11, 55:17–22, 65:16–21, 67:3–10. Plaintiff moves to exclude any evidence, testimony, or argument about the May 2025 deposition prep meeting under Fed. R. Evid. 401–403, 802, 805, and the work product doctrine. Plaintiff’s phone call with the consulting expert and participation in the deposition prep session are irrelevant. *See* Fed. R. Evid. 401, 402. Witnesses routinely meet with their counsel and consulting experts before giving testimony in litigation. There is no evidence in the record to suggest that Plaintiff rehearsed her testimony in these deposition prep activities. Nor is there any basis to conclude that recounting her story at this deposition prep session impacted Plaintiff’s feelings about the assault any more than recounting her story at any of the repeated depositions Uber has demanded.

Uber has suggested that Plaintiff’s deposition preparation is relevant because its forensic

psychologist, Dr. Sarah West, "[redacted]" that Plaintiff's symptoms "[redacted]" Ex. N, Supplemental Report of Sarah West, M.D. at 4. But Dr. West identifies no factual basis for attributing Plaintiff's psychological symptoms to the deposition-preparation sessions rather than the sexual assault, nor does she identify any particular statement, exercise, or interaction during those sessions that caused or exacerbated Plaintiff's symptoms. See Fed. R. Evid. 702. Indeed, Dr. West does not affirmatively conclude that the sessions affected Plaintiff's psychological condition, instead offering only speculation about a possible alternative cause. Plaintiff's testimony further undermines that inference. She explained that interacting with the consulting psychologist affected her in the same manner as interacting with anyone involved in the litigation because it "[redacted]" Ex. L, September 2, 2026 Deposition of A.R. at 30:10–14. Plaintiff also expressly denied taking any "ideas or themes away from the exercise." *Id.* at 65:16–21.

Nor is there evidence that the preparation session caused any lasting psychological effects. Although Plaintiff told a friend that she wanted to "decompress" afterward, she nevertheless made dinner plans for that evening. Ex. P, BW-A_R-001909. Thus, Uber has identified no reliable basis to suggest that Plaintiff's deposition preparation caused her psychological symptoms or otherwise affected her testimony, and permitting such evidence would invite the jury to speculate about matters unrelated to the merits of Plaintiff's claims.

While Uber has elsewhere suggested that the materials are relevant because its forensic psychologist "[redacted]" Plaintiff's symptoms [redacted] Ex. N, Supplemental Report of Sarah West, M.D. at 4, this is pure speculation and not admissible. See Fed. R. Evid. 601, 701, 702. Dr. West has never stated that the prep sessions did affect Plaintiff's presentation. She can only guess. On the other hand, Plaintiff's testimony shows that interacting with the consulting expert impacted her the same way as interacting with anyone involved in the litigation. *See* Ex. L, September 2, 2026 Deposition of A.R. at 30:10–14 ("[redacted]."); *see also id.* at 65:16–21 (denying that she took any "ideas or themes away from the exercise"). Similarly, there is no evidence that Plaintiff remains affected by the deposition prep session or

was impacted beyond that day. For example, though Plaintiff told a friend she wanted to "decompress," that afternoon, she still made dinner plans for that evening. Ex. P, BW-A_R-001909.

Further, Plaintiff previously disclosed to Dr. West that the litigation process was [redacted] and that she found it "[redacted]" during litigation." Ex. I, Expert Report of Sarah West, M.D., at 8. At this time, Dr. West was fully aware Plaintiff had been forced to recall the incident as part of her deposition and the discovery requests by Uber and was aware that Plaintiff had a full day deposition prep meeting with her counsel and consulting experts. *Id.* at 3 (materials considered); Ex. D., July 1, 2025 Deposition of A.R. at 15:16–17:7. Despite this, Dr. West never stated that the [redacted]" during the litigation process either affected or could have affected Plaintiff's presentation during the psychiatric evaluations she or Dr. Mechanic conducted. Ex. I, Expert Report of Sarah West, M.D., at 9; *see generally* Ex. Q, Rebuttal Report of Sarah West, M.D. Instead, Dr. West concluded that the assault did not have a "[redacted]" on Plaintiff at all. *Id.* Dr. West knew about Plaintiff's deposition prep session and spoke to her about the impact of litigation on her mental health but this *did not affect her opinions*. Ex. I, Expert Report of Sarah West, M.D., at 9. Uber cannot reasonably claim that they make any fact of consequence in this litigation more or less likely. Fed. R. Evid. 401, 402.

However, evidence of these prep sessions and the litigation process is likely to have a substantial prejudicial effect that outweighs any nominal probative value. Fed. R. Evid. 403. Courts strictly limit cross-examination at trial into witness meetings with consulting experts because the substance of these meetings is subject to work product protection and, additionally, is substantially more prejudicial than it is probative because it risks creating a sideshow and confusing juries. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 668 (3d Cir. 2003) ("Compelled disclosure of the substance of conversations between [the party], his counsel, and [the consultant] would require disclosure of communications protected by the work product doctrine. The communications took place during a consultation that focused on those issues that counsel and [the consultant] perceived to be central to the case."). The Northern District of California, adopting *Cendant*'s reasoning, specifically recognized that even questioning a witness about how a consultant instructed them to improve their testimony was inappropriate. *See Hynix Semiconductor Inc v. Rambus, Inc.*, 2008 WL 397350, *3–4 (N.D. Cal. Feb. 10, 2008) ("Questions going to how the consultant

told the witness to improve his or her testimony seem to intrude on the values underlying the work product doctrine and the adversarial system… [and] will create a sideshow and distract the jurors from the factual issues in this case raising FRE 403 concerns."). On this basis, testimony about meetings with outside consultants—even where the subject of the meeting is a witness's trial or deposition testimony—is properly limited to "*whether* his anticipated testimony was practiced or rehearsed." *In re Cendant*, 343 F.3d at 668 (emphasis added); *see also Hynix* 2008 WL 397350, at *4. Questions about the substance of what was discussed "will lead to both confusion and delay." *Id.*

Here, too, Plaintiff's communications with her counsel and consulting experts are subject to the work product privilege and are not a proper subject of inquiry at trial. *See Angeles Chem. Co. v. McKesson Corp.*, 2009 WL 10673132, at *1 (C.D. Cal. April 30, 2009) (excluding testimony based on documents subject to work product privilege). Regardless of whether the work product privilege applies, the likelihood of misleading and confusing the jury is high. Rather than focusing on the merits of the case, their attention would be diverted to collateral issues including the various second- and third-hand accounts of the deposition preparation meetings, the difference between testifying and consulting experts, the identities of the consulting experts (which Plaintiff does not remember), and the timeline of the meetings and Plaintiff's various depositions. As in *Cendant* and *Hynix*, the Court should exclude preclude all evidence, testimony, and argument about the substance of the phone call and meeting.

Finally, statements by attorneys, consulting experts, or Plaintiff's friends about the meeting are out of court statements offered for their truth, including the purpose, structure, and timing of the phone call and meeting. These statements are hearsay, or hearsay within hearsay, not subject to an exception that should be excluded under Fed. R. Evid. 801, 802, and 805.

## IX. Plaintiff's Motion *In Limine* No. 9: Exclude evidence or testimony related to Lyft's background check records.

Driver Michael Le drove for both Uber and Lyft. Plaintiff moves to exclude all evidence, testimony, or argument about the results of Driver Le's Lyft background check pursuant to Fed. R. Evid. 401–403 as irrelevant and likely to confuse and mislead the jury.

For the background checks Lyft conducted on Driver Le, the materials produced by Lyft include the name of the consumer reporting agency that performed the background check, the date of the

background check, the status (i.e. completed), and the result (i.e. passed/failed). Ex. M, UberMDL-AR2-0016. However, the materials produced by Lyft do not include information about the background check packages the consumer reporting agencies used, the lookback period applied, aliases or jurisdictions searched, or identity and alias verification policies and procedures. *Id.* As a result, there is no way to tell whether the background check Lyft used was more or less rigorous than the background check Uber used. *Id.* The fact that Lyft may have approved Driver Le following a separate background check does not establish that Uber exercised reasonable care in conducting its own screening. Without evidence identifying the information Lyft searched, the screening criteria it applied, and the information available to Lyft at the relevant time, the jury cannot meaningfully compare the two companies' screening practices. Introducing Lyft's approval under these circumstances would invite the jury to infer that Uber's screening was reasonable simply because another rideshare company reached a similar result. That inference lacks an adequate factual foundation and presents a substantial risk of misleading the jury under Rule 403.

Additionally, Plaintiff anticipates that Uber will use the Lyft background check to suggest that because Lyft did not catch Driver Le's history of domestic violence, driving offenses, and felonies, Uber could not be expected to catch them either. That suggestion is misleading because it relies on an unsupported assumption that Lyft's background check is adequate, even though there is no information to show this one way or the other. *See* Fed. R. Evid. 403.

### X. Plaintiff's Motion *In Limine* No. 10: Exclude lay evidence or testimony by lay witnesses regarding Plaintiff's [redacted].

Plaintiff moves to exclude all evidence, testimony, or argument regarding lay witness opinions about her mental state, including speculation about her motivations or susceptibility to "[redacted]." Uber elicited testimony from third party witnesses speculating about Plaintiff's possible mental state. For example, Plaintiff's friend, I.E. testified that she "[redacted]" Plaintiff may be "[redacted]." *See* Ex. E, Oct. 13, 2025 Deposition of I.E. at 54:2–55:3. Prodded further, I.E. supposed that Plaintiff "[redacted]" and therefore may be "[redacted]" by her counsel in this litigation. *Id.* However, third parties' personal knowledge of Plaintiff's internal thoughts, feelings, and motivations is necessarily limited to what Plaintiff has shared with them. I.E. and other third parties lack any personal knowledge to opine on, among other things, Plaintiff's privileged interactions with counsel and their impact on Plaintiff's mental

state. Fed. R. Evid. 602. Any opinion by I.E. or another third party about Plaintiff's internal feelings or susceptibility to influence is entirely speculative and not rationally based on their perception. Fed. R. Evid. 701. I.E. does not know what Plaintiff or her counsel said to each other or how Plaintiff feels about these conversations. *Id.* Accordingly, testimony, evidence, or argument about what third party witnesses assume or believe Plaintiff's mental state or susceptibility to influence should be excluded as unhelpful. Fed. R. Evid. 602, 701; *see also* ECF 4941 at 3 (granting Plaintiff Dean's Motion *in Limine* No. 9 to exclude evidence or argument of purported "attorney-driven" litigation).

### XI. Motion *In Limine* No. 11: Exclude testimony or evidence related to Uber's Safety Advisory Board (SAB) or affiliated nonprofits including "general" references

In *QLF 001*, the Court ordered: "if Uber wants to present evidence about the Safety Advisory Board or affiliated non-profits in its case-in-chief, then documents that were withheld from Plaintiffs on privilege grounds must be disclosed to Plaintiffs." ECF 7633. Thereafter, the Court ordered, "[i]f Uber intends to argue at any future trial in this MDL that any challenged safety decision was reasonable because the SAB advised Uber to take that action Uber shall disclose the following documents to Plaintiffs" (listing documents). ECF 8127.[4] On November 6, 2026, counsel for Uber notified Plaintiff that if Uber "presents evidence at the *A.R.* trial or future MDL trials relating to its safety advisory board, such evidence will be general in nature." Ex. O, November 6, 2026 Email from M. Vives.

The Court should apply its initial *QLF* order. Uber should not be permitted to avoid the Court's prior disclosure requirements by characterizing its proposed SAB testimony as merely "general." There is no meaningful distinction between arguing that the SAB advised on a specific safety decision and arguing that the SAB or any of the affiliated third parties advised on Uber's strategy more generally. Permitting Uber to present only favorable characterizations of the SAB's involvement would allow Uber to obtain the evidentiary benefit of those relationships while preventing Plaintiff from examining their actual nature and significance. Either way, the contention relies on Uber's privilege assertions to shield the complete purpose and nature of the SAB from the jury's evaluation of the facts.

[4] This decision was based on documents Uber submitted to the Court for in camera review. ECF 7864. However, the Court's order was based on an incomplete record because Uber chose only to submit third party documents rather than the kinds of internal SAB materials that prompted this dispute in the first place: Uber's internal Safety Advisory Board documents.

For example, in *Dean*, Uber witness Emilie Boman bragged about Uber's relationships with the nonprofits that sit on Uber's SAB, claiming, "[t]hese [advocates] are organizations with high integrity, they want to work with companies who they think they're doing the right thing, showing up, tackling the hard issues day in day out." *Dean v. Uber Techs., Inc.* Trial Tr. at 2478:16–2479:06. She further asserted that Uber had "essentially pull[ed] together a group of experts with really longstanding careers and deep subject matter expertise to help us do the right thing when it comes to safety." *Id.* at 2461:04–2461:11. This testimony may be "general" in nature, but it is extremely prejudicial in that it suggests the SAB existed broadly to help Uber do the "right thing" by its riders. Plaintiffs know this is not accurate, because [redacted] during the September 24 deposition of Emilie Boman. Uber continues to withhold this document and other documents detailing the true role of the SAB based on attorney client privilege. Plaintiffs have therefore been precluded from cross-examining Uber's witnesses on the full scope of the SAB's' activities, making it impossible to mount a full defense to Uber's claims.

The Court should not allow Uber to continue using privilege as both a sword and a shield. *See Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009). "[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (*en banc*) (citation omitted). Under this principle, a "[d]efendant may not proffer favorable information and conceal potentially unfavorable information on the same subject by hiding behind a claim of privilege." *Moeller v. Taco Bell Corp.*, 2009 WL 10710495, at *5 (N.D. Cal. Oct. 6, 2009). Yet, that is exactly what Uber is doing here. Uber withheld documents that show [redacted] but still plans to tout the SAB at trial to mislead the jury into believing the SAB exists only to help Uber do the "right thing" and keep users safe.

To prevent Uber from abusing its privilege claim, and the privilege claims it has interposed into third party productions, Uber must be precluded from litigating its defenses related to the SAB. *Bittaker*, 331 F.3d at 720. This would ensure that evidence related to the SAB may be used *only if* both parties have equal access to the evidence. On the other hand, allowing Uber to tout the SAB even "generally" would substantially prejudice Plaintiff. *See* ECF 7518 (describing prejudice).

Uber's proposed use of SAB and related third party evidence in this case does not materially differ from its proposed use of SAB evidence in *QLF 001*, which the Court excluded. ECF 7633. Since that case settled, Uber has refused to produce the internal SAB documents Plaintiffs need in order to adequately rebut SAB evidence at trial. *See* Ex. O. With no material change in Uber's position, the Court's order in this case should be the same as in *QLF 001*.

### XII. Motion *In Limine* No. 12: Exclude evidence or testimony that the Fair Credit Reporting Act (FCRA) precludes CRAs from reporting civil domestic violence suits or precludes Uber, a non-CRA from discovering any aspect of Le's ackground

Uber intends to misrepresent the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, to suggest that (1) Le's involvement in two domestic violence civil suits was not reportable under the FCRA; and (2) Uber was subject to the FCRA's restrictions, despite not being a consumer reporting agency (CRA). Any such testimony or argument is legally incorrect and should be excluded to prevent misleading the jury as to the relevant law. Fed. R. Evid. 403.

First, Uber's background check expert Jason Morris stated that two civil cases involving petitions for domestic violence restraining orders filed against Le were not reportable under the FCRA. Ex. R, November 17, 2026 Deposition of Jason Morris, at 91:10–92:4, 93:16–94:2. This is not correct. *See* 15 U.S.C. § 1681c(a)(2), (5). The FCRA prohibits CRAs from reporting "[c]ivil suits… that, from date of entry, antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(2). Similarly, it prohibits CRAs from reporting an "adverse item of information … which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5). The dates of entry of the two domestic violence civil suits involving. Le were December 15, 2015 and May 9, 2016. Ex. T, BW-A_R-DRIVER-000143. By contrast, Uber first conducted a background check of Le on July 25, 2022, Ex. U, CHECKR000861, which was six years, seven months, and two days from the earlier filed domestic violence suit. Therefore, the domestic violence suits fall within the FCRA's seven-year lookback period for civil suits. 15. U.S.C. § 1681c(a)(2), (5). While Mr. Morris speculated that some other state law may exist prohibiting CRAs from reporting civil suits *less than* seven years old to employers, he failed to identify such a statute. Ex. R, November 17, 2026

Deposition of Jason Morris, at 92:1–4. Nor will he be able to do so by trial, as the lookback period under California law mirrors the FCRA. Cal. Civ. Code § 1785.13(a)(2), (8).

Second, during the deposition of Plaintiff's experts counsel for Uber repeatedly conflated restrictions on CRAs with restrictions on Uber. Ex. S, November 12, 2026 Deposition of Robert Sniderman, at 55:22–56 ("[redacted]); Ex. W, November 18, 2026 Rough Deposition of Thomas Tremblay at 64:12–14 [redacted] (emphasis added) This too is incorrect. *See* 15 U.S.C. §§ 1681, 1681a(d); The FCRA regulates "consumer reports." 15 U.S.C. §§ 1681, 1681a(d) Consumer reports are "communications of any information *by a consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living[.]" 15 U.S.C. § 1681a(d)(1) (emphasis added). Consumer reporting agencies (CRAs) include companies like Checkr, but not employers like Uber. *See* 15 U.S.C. § 1681a(f) (defining CRA as a "person who, for monetary fees … assembl[es] or evaluat[es] consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."). The FCRA's restrictions on CRAs, including lookback periods for criminal offenses or the necessity of using reasonable procedures to ensure maximum possible accuracy do *not* apply to Uber because Uber is not a CRA. 15 U.S.C. §§ 1681, 1681a(d). Therefore, any suggestion that the FCRA precluded *Uber* from assembling or evaluating information on Le's civil or criminal background including by searching court databases, interviewing candidates, or otherwise, is inaccurate as a matter of law and should be excluded to prevent Uber from misleading the jury. Fed. R. Evid. 401–403.

Courts in the Ninth Circuit routinely exclude evidence or argument that misstates or misrepresents

the applicable law under Fed. R. Evid. 403 in order to prevent confusing or misleading the jury. *See United States v. Simons*, 2026 WL 1194932, at *11 (S.D. Cal. May 1, 2026) (granting motion to exclude testimony premised, in part, on legal inaccuracy of testimony under Fed. R. Evid. 403 "to ensure that the jury properly understands the relevant law."); *Lindfors v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 1241399, at *8–9 (D. Alaska April 27, 2022) (granting motion in limine to exclude testimony or argument that was legally incorrect under an applicable statute); *see also Quintero v. Nat'l R.R. Passenger Corp.*, 2022 WL 4093120, at *15 (W.D. Wash. Sept. 7, 2022) ("The Court will not permit counsel to misstate the law and confuse the jury, including on whether the jury may award punitive damages in this case… The Parties may not reference punitive damages, to avoid confusing the jury."), Additionally, expert testimony on legal issues is inadmissible. *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1097 (N.D. Cal. 2022) ("[A]n expert may not give testimony regarding a legal conclusion."). The Court should preclude Uber from suggesting that Le's civil suits are not reportable or that the FCRA's requirements apply to Uber, which is not a CRA, because that testimony or argument would misstate the law and confuse the jury. Fed. R. Evid. 403. Doing so under the guise of expert testimony would only further confuse the jury.

### XIII. Plaintiff's Motion *in Limine* No. 13: Exclude evidence or testimony that legal barriers prevented Uber from adopting safety measures

Uber intends to introduce evidence that legal or regulatory considerations prevented or limited Uber from adopting safety measures. *See, e.g.*, Ex. V, Expert Report of Cynthia (Rudin Rep.) at 39 (commenting on "[redacted]" associated with certain safety features); ECF 8300-7 (Morris Reb. Rep.) at 9 [redacted]; *id.* at 3 [redacted] to fingerprint-based screening); ECF 8300-10 (Thomas Reb. Rep.) ¶ 23 ("[redacted]"). The Court should bar this evidence.

In *Dean*, plaintiff moved to preclude Uber "from introducing evidence, testimony, or argument

that it was legally prohibited or otherwise constrained by legal considerations from implementing effective safety measures-including dashcams, a woman-to-woman matching option, or risk-based dispatch" because Uber had claimed privilege with respect to that issue and had withheld over 110,000 documents on that basis. ECF 4690, Pls.' Omnibus Mot. in Limine No. XI, at 14–15. At the pretrial conference, Uber represented it would not rely on advice of counsel, did not intend to waive privilege, and would only offer "nonprivileged evidence about potential legal considerations or things that lay witnesses were…factoring into a decision-making process." *See* Jan. 6, 2026 *Dean* Pretrial Conf. Tr. at 76:4–77:3. The Court denied Plaintiff's motion on that representation but warned, "[I]f you are relying on 'My lawyers told me X,' that is a waiver of the privilege, and we may have some supplemental discovery[.]" *Id.* at 76:18-21. The Court applied this principle at trial, holding witnesses could not testify that they considered legal implications if Uber asserted privilege. *See Dean* Trial Tr. at 2042:13–21 ("If you assert the attorney-client privilege, a witness cannot testify that, I considered the legal implications of whatever I did" because "you can't cross-examine him on the legal implications.").

Uber's anticipated expert testimony in this trial goes well beyond this limit. None of Uber's experts are "lay witnesses" who made or informed any of Uber's decisions. Yet Uber offers them to explain the legal risks of safety measures as a justification for why Uber did not adopt those measures—the same inference the Court would not let Uber's own witnesses convey. Offering it through experts makes the problem worse. It gives post hoc legal rationales the weight of expert opinion, while Uber's privilege assertions continue to preclude Plaintiff from testing those rationales. The Court should not permit Uber to use its retained experts to get around the Court's prior orders on privilege. A party cannot use privilege as both a sword and a shield. *See Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009). In practical terms, "this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc) (citation omitted). "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992)). A "[d]efendant may testify as to attorney-client communications and their effect on

[d]efendant's mental processes only to the extent that evidence of those communications was made fully available to [p]laintiffs through depositions or other discovery." *Id.* (citing *Madrigal v. Allstate Indem. Co.,* 2015 WL 12748277, at *9 (C.D. Cal. Nov. 5, 2015)).

*In re Xyrem Antitrust Litig*., 2025 WL 860505, at *4-6 (N.D. Cal. Mar. 19, 2025) is instructive. There, the court precluded defendants from introducing evidence at trial about topics defendants asserted privilege over unless defendants waived privilege and immediately produced the discovery. *Id.* The court further added, while non-privileged evidence was available on the topic, "in order to test the veracity of [a] belief.... other justifications that plaintiffs have shown relied on attorney-client advice are also directly implicated. In other words, Defendants are essentially saying 'Trust us. []' To rebut such assertions, Plaintiffs must, in all fairness, be given access to contemporaneous information regarding those topics that necessarily implicate attorney-client advice." *Id.* (citation and quotations omitted).

The Court should therefore preclude Uber from offering evidence that legal or regulatory considerations prohibited, constrained, or justified its decisions not to adopt safety measures, unless Uber waives privilege and produces any withheld materials before offering such evidence.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court grant Plaintiff's motions *in limine* as described herein.

Dated: November 20, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: November 20, 2026 By: */s/ Roopal P. Luhana*