Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
900 Third Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | CASE NO. 3:23-MD-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OMNIBUS MOTIONS IN LIMINE**<br><br>Judge: Hon. Charles R. Breyer<br><br>Courtroom: 6 – 17th Floor |

# TABLE OF CONTENTS

Page


**I. UBER'S DISCOVERY CONDUCT .......... 1**

**II. THE DRIVER'S FAILURE TO APPEAR FOR A DEPOSITION .......... 2**

**III. MR. LE'S SUPPOSEDLY "MISSED" CRIMINAL AND CIVIL RECORDS .......... 4**

A. Introducing Evidence Of Nonreportable Criminal And Civil Records Would Violate The Law And Public Policy. .......... 5

B. Evidence Of Nonreportable Criminal And Civil Records Would Be Unduly Prejudicial. .......... 9

C. Nonreportable Criminal And Civil Records Constitute Improper Character Evidence. .......... 10

**IV. IRRELEVANT EVIDENCE OF BACKGROUND CHECKS INVOLVING OTHER DRIVERS .......... 11**

**V. UBER'S 2026 BACKGROUND CHECK POLICY CHANGES .......... 13**

A. Evidence Of The 2026 Background Check Policy Changes Is Irrelevant. .......... 14

B. Evidence Of The 2026 Background Check Policy Changes Would Be Unduly Prejudicial. .......... 15

C. The 2026 Background Check Policy Change Is Independently Inadmissible Under Rule 407 As A Subsequent Remedial Measure. .......... 16

**VI. PRIOR COMPLAINT ABOUT DRIVER BY MR. M. [redacted] .......... 17**

**VII. ADMISSION OF EVIDENCE REGARDING ATTORNEY ADVERTISEMENTS .......... 20**

**CONCLUSION .......... 22**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldassarre v. Norfolk S. Ry. Co.*,
No. 2:18-CV-598, 2020 WL 855964 (E.D. Va. Feb. 19, 2020), *aff'd*, 854 F. App'x 540 (4th Cir. 2021)....3

*Barta v. Target Corp.*,
No. SACV 16-00786 AG, 2017 WL 6551145 (C.D. Cal. Sept. 13, 2017), *aff'd*, 775 F. App'x 323 (9th Cir. 2019)....12

*Beachy v. Boise Cascade Corp.*,
191 F.3d 1010 (9th Cir. 1999)....11

*Behler v. Hanlon*,
199 F.R.D. 553 (D. Md. 2001)....21

*Buonanoma v. Sierra Pac. Power Co.*,
No. 3:04-cv-0077-LRH-VPC, 2010 WL 3724254 (D. Nev. Sept. 16, 2010)....13

*Castaneda v. Olsher*,
41 Cal. 4th 1205 (2007)....5

*Cotton v. City of Eureka*,
No. C 08-04386 SBA, 2010 WL 5154945 (N.D. Cal. Dec. 14, 2010), *on recons.*, 2011 WL 4047490 (N.D. Cal. Sept. 8, 2011)....17

*Cruz v. Meachum*,
159 F.R.D. 366 (D. Conn. 1994)....3

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018)....11

*Ernst v. HB Aspen, Inc.*,
No. CV 07-1070 CBM (CWx), 2008 WL 11338185 (C.D. Cal. Mar. 24, 2008)....9

*In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
MDL No. 2327, 2014 WL 505234 (S.D. W. Va. Feb. 5, 2014)....21

*Feldman v. Allstate Ins. Co.*,
322 F.3d 660 (9th Cir. 2003)....5

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
No. CV 18-01912-AB, 2019 WL 7185548 (C.D. Cal. Dec. 9, 2019)....21, 22

*Gates v. Rivera*,
993 F.2d 697 (9th Cir. 1993)....12

*Gilead Tenofovir Cases*,
20 Cal. 5th 390 (2026) ....................15, 17

*Hendricks v. A-Z Women's Ctr.*,
No. 2:03-CV-1338-RCJ-LRL, 2007 WL 9734381 (D. Nev. May 22, 2007) ....................10, 12

*Herrera v. Eli Lilly & Co.*,
No. 2:13-CV-02702-SVW-MAN, 2015 WL 12911753 (C.D. Cal. Aug. 3, 2015)....................21

*Hill v. Novartis Pharms. Corp.*,
944 F. Supp. 2d 943 (E.D. Cal. 2013)....................5

*Hotel Roslyn, LLC v. AmGuard Ins. Co.*,
No. 2:22-cv-1344-TMC, 2024 WL 6960800 (W.D. Wash. May 10, 2024) ....................2

*Kelly v. Provident Life & Accident Ins. Co.*,
No. 04cv807-CAB (BGS), 2012 WL 12845618 (S.D. Cal. Nov. 13, 2012) ....................9, 16

*Lindsey v. Normet*,
405 U.S. 56 (1972)....................2

*Lister v. City of Las Vegas*,
No. 2:21-cv-00589-CDS-MDC, 2024 WL 493292 (D. Nev. Feb. 7, 2024) ....................3

*M.H. v. Cnty. of Alameda*,
No. 11-cv-02868-JST, 2015 WL 894758 (N.D. Cal. Jan. 2, 2015) ....................13

*In re Mentor Corp. ObTape, Transobturator Sling Prods. Liab. Litig.*,
MDL No. 2004, 2015 WL 7863032 (M.D. Ga. Dec. 3, 2015) ....................21

*Mims v. Fed. Express Corp.*,
No. CV 13-03947-AB, 2015 WL 12711651 (C.D. Cal. Jan. 15, 2015) ....................10

*Nike, Inc. v. Wu*,
No. 13-cv-8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021)....................3

*Orchestrate HR, Inc. v. Trombetta*,
No. 3:13-cv-2110-KS, 2017 WL 273669 (N.D. Tex. Jan. 20, 2017) ....................1

*Pau v. Yosemite Park & Curry Co.*,
928 F.2d 880 (9th Cir. 1991) ....................17

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007)....................12

*In re Seroquel Prods. Liab. Litig.*,
No. 6:06-md-1769-Orl-22DAB, 2009 WL 260989 (M.D. Fla. Feb. 4, 2009)....................21

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) .......... 12

*Tennison v. Circus Circus Enters., Inc.*,
244 F.3d 684 (9th Cir. 2001) .......... 2, 4, 9, 16

*In re Tesla, Inc. Sec. Litig.*,
No. 18-CV-04865-EMC, 2022 WL 17582008 (N.D. Cal. Dec. 7, 2022) .......... 9

*United States v. Gillespie*,
852 F.2d 475 (9th Cir. 1988) .......... 9

*United States v. Hussain*,
No. 16-cr-00462, 2018 WL 3619797 (N.D. Cal. July 30, 2018) (Breyer, J.), *aff'd*, 818 F. App'x 765 (9th Cir. Aug. 26, 2020) .......... 20

*Whittenburg v. Werner Enters. Inc.*,
561 F.3d 1122 (10th Cir. 2009) .......... 1

*Williams v. J.B. Hunt Transp., Inc.*,
151 F.4th 1020 (9th Cir. 2025) .......... 16, 17

**Statutes**

15 U.S.C. § 1681 .......... 6, 7

28 U.S.C. § 2072 .......... 5

Cal. Civ. Code § 1786.18(a)(7) .......... 6, 7

Cal. Pub. Util. Code § 5445.2 .......... 4, 7, 8

**Rules**

Fed. R. Civ. P. 42(b) .......... 12

Fed. R. Evid. 105 .......... 19

Fed. R. Evid. 401 .......... 2, 3, 11, 13

Fed. R. Evid. 403 .......... *passim*

Fed. R. Evid. 404 .......... 4, 10, 11, 12

Fed. R. Evid. 407 .......... 13, 16, 17

Fed. R. Evid. 702 .......... 1

Fed. R. Evid. 801 .......... 19

Fed. R. Evid. 802 .......... 19

**Other Authorities**

Samuel R. Gross et al., *Race and Wrongful Convictions in the United States*, Mar. 7, 2017, at iv, https://repository.law.umich.edu/cgi/viewcontent.cgi?article=1121&context=other ............................5

Uber Newsroom, A New Standard for Background Checks (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/ .....................................................14

**DEFENDANTS MOTIONS IN LIMINE AND MEMORANDUM IN SUPPORT**

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this motion to exclude certain evidence or argument at trial.

Pursuant to the Parties' Stipulation Re: Rule 702 Motions and Motions *In Limine* agreed to by the Parties, and the related Order from the Court granting that stipulation, Uber incorporates herein the motions *in limine* previously filed by Uber in connection with the *Dean*, *Mensing*, and *QLF 001* cases, and preserves those issues for appeal. *See* Dkt. No. 7313 (Sept. 11, 2026).

**MOTIONS**

**I. UBER'S DISCOVERY CONDUCT**

Uber anticipates that Plaintiff may seek to elicit testimony or otherwise argue that Uber's discovery efforts in this matter, including the fact that it took three depositions of Plaintiff, were improper or somehow constituted harassment. The Court should preclude any such testimony or argument.

In connection with the *Dean* trial, this Court barred Plaintiff from introducing evidence or argument that Uber's counsel's questioning of witnesses, including the Plaintiff, at deposition was improper or harassing. *See* Pretrial Order 39 Re: Dean Pretrial Motions, Dkt. No. 4941, at 2 (granting Uber's MIL to Preclude Discovery Disputes). Similarly, in *QLF 001*, the Court granted Uber's motion to exclude argument that Uber's counsel engaged in "victim blaming" or "shaming tactics" for properly seeking discovery of the plaintiff's state of mind and mental health records. *See* Order on Motions in Limine, Dkt. No. 7579, at 2. Separately from those rulings, the Court has recognized that Uber's counsel have acted with integrity in connection with this litigation, including in questioning witnesses. *See, e.g.*, 8/14/2026 Hr'g Tr. 13:20-24, 14:21-15:7. These prior findings should be extended to bar Plaintiff from advancing similar arguments in this case.

Evidence or argument that Uber acted improperly by conducting discovery to defend itself against the claims in this lawsuit has no real probative value and would be unduly prejudicial. *See Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1129-30 (10th Cir. 2009) (ordering a new trial where plaintiff's counsel spent closing attacking defendant for defending lawsuit; "[t]o imply or argue that the mere act of defending oneself . . . is reprehensible serves no proper purpose"); *see also Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-KS, 2017 WL 273669, at *9 (N.D. Tex. Jan. 20, 2017) (excluding references

to discovery disputes and litigation conduct under Rules 401 and 403); *Hotel Roslyn, LLC v. AmGuard Ins. Co.*, No. 2:22-cv-1344-TMC, 2024 WL 6960800, at *4 (W.D. Wash. May 10, 2024) (similar).

Moreover, evidence that Uber deposed Plaintiff multiple times would be particularly inappropriate because it would create the need for a time-consuming and confusing mini-trial regarding Plaintiff's discovery misconduct, which prompted the need for additional depositions. *See Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion where disputed evidence risked "an inefficient allocation of trial time" that "might have resulted in a 'mini trial'"). In particular, if the Court allows Plaintiff to comment on the fact that Uber deposed Plaintiff three times, Uber would have to rebut Plaintiff's suggestion of wrongdoing by submitting evidence of Plaintiff's discovery violations that resulted in the need for multiple depositions. Specifically, Uber would need to explain to the jury that:

- The Court compelled a second deposition of Plaintiff after Uber demonstrated that Plaintiff's counsel had instructed a non-party witness (also represented by Plaintiff's counsel) not to produce certain text messages exchanged between that witness and Plaintiff. Dkt. Nos. 3669, 3786, 3966, 3985.

- Plaintiff's second deposition established that Plaintiff had failed to produce responsive information, leading Plaintiff's counsel to agree to: (1) document re-collection and re-production to ensure complete discovery; and (2) a third deposition of Plaintiff (as well as additional depositions of other fact witnesses) regarding newly produced documents.[1]

That is not victim mistreatment; it is Uber exercising its due-process right to have the "opportunity to present every available defense." *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted). Accordingly, just as in previous bellwether cases, evidence and argument that Uber's discovery conduct was improper or harassing, including Uber's need to depose Plaintiff and other witnesses multiple times due to Plaintiff's discovery failures, should be excluded under Rules 401 and 403.

## II. THE DRIVER'S FAILURE TO APPEAR FOR A DEPOSITION

Uber anticipates that Plaintiff may attempt to introduce evidence that the third-party driver, Mr. Le, failed to appear for a noticed deposition and argue that this no-show somehow constitutes an admission that he engaged in the conduct alleged by Plaintiff—i.e., attempting to kiss her. Any such evidence or argument should be barred because it is both irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401.

---

[1] During her third deposition, it emerged that Plaintiff and her counsel had *still* not adequately complied with the re-production protocol, and Plaintiff made yet another production of text messages on October 12, 2026.

First, the evidence is irrelevant. Mr. Le is a third party over whom Uber never had control—and who was no longer a driver on the Uber platform by the time his deposition was sought. Whether or not Mr. Le appeared for deposition is not material to any fact at issue in this case. There are countless reasons why Mr. Le might have failed to appear for his deposition—e.g., not understanding what the deposition notice meant and required in light of the fact that Mr. Le is not a native English speaker; an inability to afford or retain counsel to properly advise him; or a general reluctance to be involved in litigation. Courts have thus held that no inference may be drawn from a third party's refusal to testify. *Baldassarre v. Norfolk S. Ry. Co.*, No. 2:18-CV-598, 2020 WL 855964, at *5 (E.D. Va. Feb. 19, 2020) (holding that there was "absolutely no basis" to draw an adverse inference where two former employees of the defendant did not appear for their depositions and noting that "Plaintiff made no motions and filed no other pleading such [as] requests for admission in response to the witnesses failure to appear"), *aff'd*, 854 F. App'x 540 (4th Cir. 2021); *Nike, Inc. v. Wu*, No. 13-cv-8012 (CM), 2020 WL 257475, at *27 (S.D.N.Y. Jan. 17, 2020) (denying "unprecedented request" to enter adverse inference against non-parties who failed to produce documents in response to subpoenas), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021); *see also Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn. 1994) (Rule 37 discovery sanctions were not available against non-party who failed to attend deposition). Absent any evidence of Mr. Le's reasons for not appearing, Plaintiff has no basis to speculate in front of the jury that Mr. Le's failure to appear says anything about the merits of Plaintiff's claims.

The evidence is also unduly prejudicial and thus inadmissible under Rule 403. Any argument or suggestion that Mr. Le did not appear for his deposition because he is guilty of the alleged assault underlying this lawsuit would invite the jury to speculate about a non-party's motives, as to which there is no evidence. Further, it would improperly invite the jury to impute those speculative conclusions about Mr. Le's motives to Uber, even though it had no control over him. *See Lister v. City of Las Vegas,* No. 2:21-cv-00589-CDS-MDC, 2024 WL 493292, at *4-5 (D. Nev. Feb. 7, 2024) (precluding "argument or suggestion" that the defendant advised a former employee not to appear for deposition as potentially "misleading or confusing for the jury" where there was "no evidence of such action by defendant"). In addition, rebutting the baseless suggestion that Mr. Le's failure to appear is an indicator of his guilt (and, by extension, Uber's purported liability to Plaintiff) would require a collateral mini-trial about Plaintiff's

efforts to serve him with a deposition subpoena, as well as Mr. Le's whereabouts and circumstances at the time of the deposition. This would unnecessarily complicate and extend the trial, while diverting the jury's attention from the core liability issues it must actually decide in this case. *See Tennison*, 244 F.3d at 690.

Accordingly, the Court should preclude Plaintiff from offering evidence of, or arguing about, Mr. Le's failure to appear for deposition, including any suggestion that Mr. Le is guilty of the conduct alleged by Plaintiff and/or that Uber is shielding or controlling Mr. Le.

## III. MR. LE'S SUPPOSEDLY "MISSED" CRIMINAL AND CIVIL RECORDS

Consistent with Uber policy, Mr. Le underwent a background check in July 2022, prior to being onboarded as a driver on the Uber app. Mr. Le's background check was executed by Checkr—a third-party accredited background check company used by Uber—and was consistent with California law and industry standards, which do not entail a search of criminal charges that do not result in convictions or civil records. 10/26/2026 Thomas Rpt. ¶¶ 7-10 (Dkt. No. 8299-22); Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B).

The initial criminal background check, and the 11 subsequent criminal background and motor vehicle record checks conducted periodically during Mr. Le's tenure on the Uber platform,[2] did not turn up ***any*** disqualifying criminal convictions.[3] *See* 10/26/2026 Morris Rpt. at I.A (Dkt. No. 8299-21). Plaintiff nonetheless contends that Checkr "missed" criminal and civil records that should have disqualified Mr. Le from driving on the Uber platform. This evidence should be excluded because: (1) most of the records involve dismissed or otherwise unadjudicated charges and civil petitions, and their introduction would violate the law and public policy; (2) the evidence would be unduly prejudicial and is thus inadmissible under Rule 403; and (3) it is improper propensity evidence. Fed. R. Evid. 403, 404(b).

---

[2] UBER-MDL3084-DFS00054709 (7/25/2022 Checkr Background Check: Clear) (Dkt. No. 8299-10); UBER-MDL3084-DFS00054704 (6/27/2023 Checkr Background Check: "Consider" for 1996 misdemeanor traffic convictions in Louisiana) (Dkt. No. 8299-13); UBER-MDL3084-DFS00054713 (6/3/2024 Checkr Background Check: Clear) (Dkt. No. 8299-15).

[3] The background checks only found a handful of nearly three-decade-old misdemeanor traffic convictions, which are not disqualifying. *See* Cal. Pub. Util. Code § 5445.2(a)(2)-(3) (listing disqualifying offenses). Uber also engaged SambaSafety to perform driver record checks on Mr. Le. Those reports were clean except for a March 1, 2023 accident in Oakland, California, which did not indicate fault and is not disqualifying. 10/26/2026 Morris Rpt. at 3 (Dkt. No. 8299-21).

### A. Introducing Evidence Of Nonreportable Criminal And Civil Records Would Violate The Law And Public Policy.

Most fundamentally, it would have been ***illegal*** for Checkr to report nearly all of the supposedly missed criminal records. This is so because all but one of the records that Plaintiff claims should have been reported are non-conviction records that predate the report by more than seven years and cannot be the subject of any background check under the Fair Credit Reporting Act ("FCRA") or California's Investigative Consumer Reporting Agencies Act ("ICRAA"). Moreover, the only record pertaining to a charge that resulted in an actual conviction contained incomplete and incorrect identifying information, and matching criminal records based on name alone was barred by the FCRA at the time the background checks on Mr. Le were conducted. These are not trivial prohibitions. Rather, they codify two fundamental substantive principles that undergird our civil justice system. The first is the presumption of innocence until proven guilty. And the second is redemption—i.e., the recognition that even those properly convicted of crimes should not be branded with the stigma of those convictions in perpetuity. These are important public policy imperatives. Employing overinclusive background check policies that violate these statutes would unfairly harm people of color and other minorities, who are disproportionately arrested, charged, and convicted of crimes.[4] *See Castaneda v. Olsher*, 41 Cal. 4th 1205, 1210, 1216-17 (2007) (warning that overinclusive background checks could "encourage arbitrary housing discrimination," and "unfairly deprive many Californians of housing").

Federal law is clear that procedural rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Accordingly, the Ninth Circuit has held that evidence is inadmissible if its introduction would violate a federal law or contravene the requirements of state substantive law. *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). In *Feldman* (a case involving an insurance dispute), the plaintiff argued that the admission of conversations secretly taped by his former wife violated California law. On appeal, the Ninth Circuit reasoned that, although the introduction of the evidence did not violate federal law, doing so disregarded a "state substantive interest in the privacy of California citizens from exposure of their confidential conversations to third parties." *Id.* at 667; *see also Hill v. Novartis Pharms. Corp.*, 944 F. Supp. 2d 943, 957 (E.D. Cal. 2013) (granting motion in limine to preclude

---

[4] Samuel R. Gross et al., *Race and Wrongful Convictions in the United States*, Mar. 7, 2017, at iv,https://repository.law.umich.edu/cgi/viewcontent.cgi?article=1121&context=other.

plaintiff from arguing that defendant should have changed the formatting of its FDA-approved drug label where federal regulations governed formatting).

Similarly, here, admitting evidence of Mr. Le's alleged past non-conviction records would undermine the substantive policies embodied in ***both*** federal and state law, which prohibit those records from being reported at all. In addition, admitting Mr. Le's alleged past civil records would contravene accepted industry standards for background checks. And allowing Plaintiff to introduce evidence of those unreportable records would have the unintended consequence of inviting discrimination against communities of color and other minorities in derogation of public policy.

**1. *Past Criminal Records***

Federal and state law strictly limit the types of criminal records reportable for purposes of a background check. The FCRA does not permit the reporting of records of any "arrest that, from date of entry, antedate the report by more than seven years," as well as "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(2), (5). This means that non-conviction records cannot legally be reported by a consumer reporting agency under the FCRA more than seven years from the date of entry or disposition. Further, at the time the background checks on Mr. Le were conducted, both the Consumer Financial Protection Bureau (CFPB) and Professional Background Screening Association (PBSA) determined that matching criminal records to a candidate on the basis of name alone was barred under the FCRA. *See* 15 U.S.C. § 1681e(b) (requiring that "a consumer reporting agency . . . follow reasonable procedures to assure maximum possible accuracy"); 8/13/2026 Hubbard Dep. 268:18-270:18 (Ex. 2); 10/26/2026 Morris Rpt. at 10.

Similarly, under the ICRAA, records of arrests, indictments, charges, or convictions that "antedate the report by more than seven years" cannot be reported on a background check. Cal. Civ. Code § 1786.18(a)(7) ("an investigative consumer reporting agency may not make or furnish any investigative consumer report containing . . . [r]ecords of arrest, indictment, . . . or conviction of a crime that, from the date of disposition, . . . antedate the report by more than seven years"). Only convictions of violent felonies override this general rule prohibiting the reporting of convictions that predate the report by seven years. *See* Cal. Pub. Util. Code § 5445.2. Accordingly, pursuant to both federal and state law, it is ***illegal*** for a

consumer reporting company (like Checkr) to report non-conviction records more than seven years old and/or records that lack sufficient identifying information.

Plaintiff nonetheless intends to present evidence at trial that Uber, through Checkr, "missed" ten prior criminal charges in its background check, all of which: (1) were non-convictions between 1989 and 2012 (i.e., more than seven years prior to Mr. Le's onboarding), Cal. Civ. Code § 1786.18(a)(7); 15 U.S.C. § 1681c(a)(2), (5); and/or (2) could not be located due to incorrect or incomplete identifying information, 10/26/2026 Morris Rpt. at 10.

| **Dismissed Charges And/Or No Findings Of Guilt** | |
|---|---|
| **Criminal Record** | **Reason Not Reported to Uber** |
| 1989 Auto Theft | Charge dismissed; per Plaintiff's expert, record bears a date of birth that does not match Mr. Le's and belongs to a different individual (10/13/2026 Moore Suppl. Rpt. at 47 n.46, Dkt. No. 8285-2) |
| 1991 Aggravated Assault | Charge resolved via deferred adjudication; per Plaintiff's expert, record bears a date of birth that does not match Mr. Le's and belongs to a different individual (10/13/2026 Moore Suppl. Rpt. at 47 n.46, Dkt. No. 8285-2) |
| 1996 Forgery | (1) No disposition of guilt for the charge<br>(2) Record lists only "Hung Quang," and is devoid of other strong identifiers (i.e., DOB, address, SSN) that would allow Checkr to link the record to Mr. Le |
| 1998 Kidnapping | (1) No disposition of guilt for the charge<br>(2) Charging record lists "Hung Quang," omitting Mr. Le's surname, and was not returned by Checkr's legal-name searches. |
| 1998 Assault | (1) No disposition of guilt for the charge<br>(2) Charging record lists "Hung Quang," omitting Mr. Le's surname, and was not returned by Checkr's legal-name searches. |
| 2003 Rape | (1) No disposition of guilt for the charge<br>(2) Record lists "Hung Quang Le" with an incorrect DOB |
| 2003 Kidnapping | (1) No disposition of guilt for the charge<br>(2) Record lists "Hung Quang Le" with an incorrect DOB |
| 2012 Aggravated Assault | (1) Charge dismissed<br>(2) Record lists "Hung Quang Lee" with Le's last name spelled incorrectly |
| 2012 Invasive Visual Recording | (1) Charge dismissed<br>(2) Record lists "Hung Quang Lee" with Le's last name spelled incorrectly |
| **Guilty Convictions** | |
| **Criminal Record** | **Reason Not Reported to Uber** |
| 1998 Illegal Use of a Weapon | Conviction record is captioned "State of Louisiana vs. Hung Quang," omitting Mr. Le's surname, and was not returned by Checkr's searches of Mr. Le's legal name and Social Security trace names; conviction record is also devoid of other strong identifiers (i.e., DOB, address, SSN) that would have allowed Checkr to link the record to Mr. Le |

As the table above demonstrates, it would have been illegal under both California law and the FCRA for Checkr to report ***all but one*** of the criminal records (the 1998 illegal weapons conviction) to Uber because they are non-conviction records that antedate the report by more than seven years. *E.g.*,

11/12/2026 Sniderman Dep. 56:5-20 (Sniderman testifying that "the Fair Credit Reporting Act does not allow" a consumer reporting company to consider dismissed charges) (Ex. 3).

As for the 1998 illegal weapons conviction, the record is captioned "State of Louisiana vs. Hung Quang," omitting Mr. Le's surname, and was not returned by any of Checkr's searches, which were run on Mr. Le's legal name and the names returned by his Social Security trace. 8/13/2026 Hubbard Dep. 280:5-15, 281:1-18, 287:3-10, 288:9-290:11 (Ex. 2). Checkr testified that its alias process searched each name it identified and that it is not standard practice to run an individual's middle name as a surname. *Id.*; 10/26/2026 Morris Rpt. at 8-9. As such, evidence and argument regarding these criminal records should be excluded from trial.[5]

**2. *Past Civil Records***

The California Transportation Network Company statute (CTNC) requires Uber to "conduct, or have a third party conduct, a local and national criminal background check for each participating driver" that includes a search "of a multistate and multijurisdiction ***criminal*** records locator or other similar commercial nationwide database" and "[a] search of the United States Department of Justice National Sex Offender Public website." Cal. Pub. Util. Code § 5445.2(a)(1)(A)-(B) (emphasis added). It does not require searches for civil court orders. Consistent with the CTNC, industry-standard background checks do not report civil suits. 10/26/2026 Morris Rpt. 13-14; *see also* 11/12/2026 Sniderman Dep. 133:16-20 (Ex. 3) ("Q. Are you aware of any industry regulations that require [Checkr] to search for civil records when conducting a background check? . . . . [A] I am not aware of any.").

Plaintiff nonetheless intends to present evidence at trial that Uber, through Checkr, "missed" prior civil records in its background check. As the table below demonstrates, ***none*** of Mr. Le's prior civil records involves a criminal disposition, and thus, pursuant to industry standards, Checkr was not obligated to search for them:

[5] *See also* 10/26/2026 Morris Rpt. at 6-14; 10/26/2026 Thomas Rpt. ¶¶ 11-18; 8/13/2026 Hubbard Dep. 227:13-15 (Ex. 2) ("[redacted]").

| Civil Records | |
|---|---|
| **Civil Record** | **Reason Not Reported to Uber** |
| 2015 Domestic Violence Temporary Restraining Order | Temporary restraining order dismissed, permanent restraining order never granted |
| 2016 Domestic Violence Temporary Restraining Order | Temporary restraining order dismissed, permanent restraining order never granted |

Evidence of these records would be doubly inappropriate because Mr. Le's prior TROs were granted without a finding of guilt or wrongdoing, and thus do not carry the same evidentiary significance as a criminal adjudication. And the civil orders were also both ***dismissed***, rendering their evidentiary value questionable (at best). In short, because Mr. Le's prior alleged civil records were not required to be reported to Uber under any applicable law or industry regulation, and because they do not constitute reliable evidence of any wrongdoing, they, too, should be excluded from trial.

### B. Evidence Of Nonreportable Criminal And Civil Records Would Be Unduly Prejudicial.

Evidence of unsubstantiated allegations that Mr. Le engaged in criminal and/or civil misconduct would also be unduly prejudicial and thus inadmissible under Fed. R. Evid. 403 because it is likely to adversely affect the jury's attitude toward Mr. Le, which could then be imputed to Uber. *See United States v. Gillespie*, 852 F.2d 475, 478 (9th Cir. 1988) (district court erred in admitting evidence of homosexuality because it neither proved nor disproved that appellant molested the child but was extremely prejudicial); *see also, e.g.*, *Kelly v. Provident Life & Accident Ins. Co.*, No. 04cv807-CAB (BGS), 2012 WL 12845618, at *2 (S.D. Cal. Nov. 13, 2012) (testimony "based on broad and unrelated conduct [] will be confusing to the jury and unduly prejudicial" to the defendant).

This would not only be highly prejudicial; it would confuse jurors and distract them from the facts and circumstances of this case, ultimately requiring time-intensive "mini-trials" on collateral matters. *See Ernst v. HB Aspen, Inc.*, No. CV 07-1070 CBM (CWx), 2008 WL 11338185, at *2 (C.D. Cal. Mar. 24, 2008) (excluding co-worker complaints against plaintiff as "both irrelevant and unduly prejudicial"); *Tennison*, 244 F.3d at 690 (affirming exclusion where disputed evidence risked "an inefficient allocation of trial time" that "might have resulted in a 'mini trial'"); *In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2022 WL 17582008, at *19 (N.D. Cal. Dec. 7, 2022) (in securities case, excluding evidence of SEC

complaints and settlements because, although mildly relevant, their admission "could create a 'mini-trial' in which Defendants would have to defend against both Plaintiff's claims and the SEC's now-dismissed claims"). There is no need for the jury to waste time deliberating over past criminal and civil allegations related to Mr. Le, which would require the parties to litigate the facts of each unproven allegation and its ultimate disposition by dismissal, dropped charges, or other failure to prosecute. Such an exercise would essentially result in an irrelevant mini-trial that would take a significant amount of time, needlessly protract an already-complex trial, and substantially outweigh any marginal probative value. *See Mims v. Fed. Express Corp.*, No. CV 13-03947-AB (SSx), 2015 WL 12711651, at *9 (C.D. Cal. Jan. 15, 2015) ("Evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues.") (citations and internal quotations omitted).

In short, the jury's task is to evaluate Plaintiff's asserted claims against Uber based on the 2023 attempted kissing, not to litigate the details of prior arrests, charges, and civil complaints against Mr. Le that were not fully adjudicated and of which Uber was not (and could not have been) aware when it onboarded Mr. Le. For this reason, too, the Court should exclude the allegedly "missed" records from trial.

### C. Nonreportable Criminal And Civil Records Constitute Improper Character Evidence.

Finally, the evidence is barred under Fed. R. Evid. 404 because it would improperly suggest that Mr. Le had a propensity to engage in bad conduct and acted in conformity with that propensity during the ride at issue.

Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b); *Hendricks v. A-Z Women's Ctr.*, No. 2:03-CV-1338-RCJ-LRL, 2007 WL 9734381, at *4 (D. Nev. May 22, 2007) (excluding evidence of alleged misconduct committed by doctor against other patients because the evidence "is not admissible to prove the character of a person in order to show action in conformity therewith"). Here, the unproven criminal and civil allegations (and single, decades-old weapons-related conviction) would cast aspersions on Mr. Le's character and propensity for misconduct, which would "taint" any verdict "by inviting the jury to infer

guilt based on no more than [alleged] prior bad acts[.]" *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 784-85 (5th Cir. 2018) (holding that admission of evidence of bribes paid by third-party subsidiaries was reversible error due to the prejudicial effect); *see also Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1014 (9th Cir. 1999) (affirming exclusion of other employees' complaints of hostile treatment as unfairly prejudicial where "it was unclear whether the complained-of conduct was a violation of law at the time it occurred"). Put another way, Plaintiff would be admitting this evidence to show that Mr. Le's character is consistent with Plaintiff's allegations—i.e., that Mr. Le did attempt to kiss Plaintiff in an Uber, and thus, Uber should be liable for Plaintiff's alleged injuries. For this reason, too, the evidence should be excluded.

## IV. IRRELEVANT EVIDENCE OF BACKGROUND CHECKS INVOLVING OTHER DRIVERS

Uber anticipates that Plaintiff will seek to introduce evidence of background checks conducted by Checkr on behalf of Uber that relate to other drivers with no connection to the alleged incident giving rise to Plaintiff's lawsuit. *See, e.g.*, 10/13/2026 Moore Suppl. Rpt. at 12-14 (noting media reports "about other 'misses' in Uber's background check process") (Dkt. 8285-2); 10/26/2026 Tremblay Suppl. Rpt. at 1 (noting the cases he has "reviewed showing failures in background checks including this case[.]") (Dkt. 8289-1). Plaintiff's purpose in introducing such evidence, which has nothing to do with Plaintiff's case, is clear: she seeks to have the jury improperly infer that purported issues related to Checkr's background checks for other drivers mean that Uber must have acted negligently with respect to Mr. Le's background check. This evidence should be excluded because: (1) it has nothing to do with Uber's actions with regard to Mr. Le's background check or Uber's alleged duties toward Plaintiff, Fed. R. Evid. 401; (2) it constitutes impermissible character evidence, Fed. R. Evid. 404(b), regarding Checkr, and by extension, Uber; and (3) introduction of the evidence would be unduly prejudicial, unnecessarily confusing, and would result in a needless waste of time. Fed. R. Evid. 403.

***First***, background checks of other drivers with no connection to Plaintiff's allegations are irrelevant to Plaintiff's case. Fed. R. Evid. 401. Plaintiff's claims are based on alleged harm stemming from the August 2023 ride in which Mr. Le—not any other driver—allegedly attempted to kiss her. Uber's conduct with regard to other drivers does not bear on ***any*** issue in this case, including Mr. Le's background

check or his attempt to kiss Plaintiff. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993) (holding that past conduct that does not bear on the incident at issue is irrelevant and therefore inadmissible). Further, Mr. Le's specific criminal and civil records history (which should not be admissible at trial, *see supra*), are unique to his situation and not comparable to background checks conducted on other individuals. *Barta v. Target Corp.*, No. SACV 16-00786 AG, 2017 WL 6551145, at *1 (C.D. Cal. Sept. 13, 2017) (requiring a "showing of substantial similarity" to introduce evidence of other incidents as "direct proof of negligence . . . or notice . . . ."), *aff'd*, 775 F. App'x 323 (9th Cir. 2019). Background-check issues are inherently fact-specific, and Plaintiff has made no showing that any other purported "miss" involved the same facts as those here.

Nor are allegations of other purported background check "misses" relevant to punitive damages. Due process does not permit a party to be punished for injury to a nonparty. *See Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003).

***Second***, evidence related to background checks of other drivers would constitute improper propensity evidence. *See* Fed. R. Evid. 404. Admitting such evidence would suggest that because there were alleged problems related to Checkr's background checks of other drivers, it is more likely that Checkr—and, by extension, Uber— acted negligently with respect to Mr. Le's background check in ***this*** case. This is precisely the kind of evidence that Rule 404 prohibits. *See Hendricks*, 2007 WL 9734381, at *4 (excluding evidence of alleged misconduct committed by doctor against other patients because the evidence "is not admissible to prove the character of a person in order to show action in conformity therewith").

***Third***, evidence of background checks of other drivers would be unduly prejudicial, time-consuming, and confusing. *See* Fed. R. Evid. 403. There is a substantial risk that the jury would improperly impose liability on Uber due to its purported conduct in connection with other, unrelated incidents unconnected to Plaintiff's claims. *See, e.g.*, *Buonanoma v. Sierra Pac. Power Co.*, No. 3:04-cv-0077-LRH-VPC, 2010 WL 3724254, at *5 (D. Nev. Sept. 16, 2010) ("Introducing evidence of other lawsuits against [defendant] could unfairly bias the jury against [defendant] for . . . acts that did not take place in this case and confuse the jury into thinking it could hold [defendant] liable in this action for alleged wrongs

in other actions.”). Additionally, introducing evidence of background checks of other drivers with no connection to this case would force Uber to put on a “trial within a trial” to delve into the circumstances of each additional check, wasting the jury’s time and confusing the issues. *See, e.g.*, *M.H. v. Cnty. of Alameda*, No. 11-cv-02868-JST, 2015 WL 894758, at *13 (N.D. Cal. Jan. 2, 2015) (“[E]xamination about the facts and outcomes of prior cases presents the risk of a ‘mini-trial’ regarding other cases not before the jury; risks prejudicing the Defendants by associating their conduct with the conduct of defendants in other cases; and wastes the time of the jury and the Court.”).

For all of these reasons, evidence of background checks of other drivers who were not involved in the alleged incident giving rise to Plaintiff’s lawsuit should be excluded from trial.

## V. UBER’S 2026 BACKGROUND CHECK POLICY CHANGES

The Court should exclude evidence or argument related to Uber’s 2026 background check policy changes, including the Stipulation Uber submitted pursuant to the Magistrate Judge’s July 30 Order, *see* Order Resolving Joint Letters Regarding Texas Lobbying and June 2026 Background Check Policy (Dkt. 6935) at 5, because Plaintiff cannot demonstrate that the 2026 changes would have had any impact on the case at hand. As such, the evidence is inadmissible as irrelevant under Rule 401 and unduly prejudicial and confusing under Rule 403. Additionally, evidence of the 2026 background check policy change is independently inadmissible as a subsequent remedial measure under Rule 407 and the public policy animating that rule.

The Court preliminarily admitted this evidence for the *QLF 001* trial, but held that Uber could file a motion to strike if the Plaintiff could not demonstrate a connection to the case. *See* Dkt. 7579; 9/25/2026 Pretrial Conf. Tr. 15:13-20. Plaintiff here cannot possibly demonstrate that the 2026 background check policy change is connected to this case because, as discussed below, the driver here was already subject to a 99-year SSN trace in the background checks that Checkr ran on him, pursuant to Uber’s direction.

### <u>BACKGROUND</u>

On June 26, 2026, almost three years after the alleged incident underlying this case, Uber announced that, after consulting with subject-matter experts, it would update its U.S. criminal background check process. Under the new requirements, Uber: (1) broadened the criteria for convictions that permanently disqualify an individual from driving or delivering on the Uber platform; and (2) expanded

the Social Security Number ("SSN") trace from seven years to a 99-year, or lifetime, SSN trace nationwide.[6] Even prior to the adoption of the new policy, however, driver applicants in certain jurisdictions—including San Francisco, California—were already subject to a 99-year SSN trace.

In July, Judge Cisneros stated that there is no "reason to expect that all of the details of the new 2026 policy will be relevant to the two upcoming bellwether cases concerning events multiple years earlier." Dkt. 6935 at 4. Nevertheless, Judge Cisneros ordered Uber either to "stipulate[] for the purpose of the next two bellwether trials that the expanded background check policy it adopted in 2026 would have been feasible at the time of the incidents in question for those trials," or produce 30(b)(6) deposition testimony and documents as to "the reasons why that would not have been feasible." *Id.* at 5. In affirming Judge Cisneros's Order, this Court noted that it was doing so "without prejudice to Uber's ability to challenge the ***admissibility*** of any such evidence at a later stage." Dkt. 7052 at 2 (emphasis added).

Solely in response to Judge Cisneros's Order, Uber produced a stipulation on August 26, 2026 stating: "For purposes of the *QLF 001* trial only, it was technologically feasible at the time of the alleged incident in *QLF 001* to instruct [Uber's] background-check provider to conduct a 99-year Social Security Number trace." By its terms, that stipulation is limited to the *QLF 001* trial and has no application here.

## ARGUMENT

Evidence of the 2026 background check policy change, including the feasibility stipulation that Uber entered into in response to Judge Cisneros's Order, should be excluded for several independent reasons.

### A. Evidence Of The 2026 Background Check Policy Changes Is Irrelevant.

First, and most fundamentally, the 2026 policy is irrelevant to this case because the July 2022 background check on Mr. Le *already included* a 99-year lookback. 8/13/2026 Hubbard Dep. 185:3-17, 301:15-23 (Ex. 2) (confirming that Checkr "already conducted a 99-year SSN trace when they ran the background check on [Mr. Le] previously"). Thus, the central change in the 2026 policy—extending the Social Security trace from seven years to 99 years nationwide— ***would not have changed*** anything about Mr. Le's screening. 10/26/2026 Morris Suppl. Rpt. at 14 (Checkr's testimony "forecloses any suggestion

[6] Uber Newsroom, A New Standard for Background Checks (June 26, 2026), https://www.uber.com/us/en/newsroom/uber-backgroundchecks/.

that the potentially disqualifying records identified to date escaped detection because Checkr did not perform a 99-year SSN Trace”). Plaintiff’s theory is not that the lookback period was too short; it is that Checkr’s alias and name-matching process did not surface a record docketed under “Hung Quang.” But the 2026 policy did not change how names or aliases are searched. Whether it was feasible for Uber to adopt the 2026 policy earlier is irrelevant, because doing so would not have altered the search that was run or the records that were returned on Mr. Le.

The policy change and the stipulation regarding technological feasibility are independently irrelevant because liability cannot lie on the ground that a defendant should have adopted a different policy earlier in time. *See Gilead Tenofovir Cases*, 20 Cal. 5th 390, 401-03 (2026) (holding that a product that is not otherwise defective cannot give rise to liability on the ground that the manufacturer “unreasonably delayed” bringing an improved product to market). In *Gilead*, the California Supreme Court explained that imposing a duty on manufacturers “to not unduly delay developing and commercializing an allegedly safer product” would be unworkable and could “undermine, rather than promote, public health and safety” by “inviting fact finders to second-guess complex resource-allocation decisions about whether and when to pursue potential alternative products while a concededly nondefective product remains on the market.” *Id.* at 402, 426. That same logic should control here because introduction of the 2026 policy change or the feasibility stipulation would effectively allow Plaintiff to argue or insinuate that Uber should have adopted the new policy earlier in time. As the California Supreme Court observed, allowing plaintiffs to make such arguments “undermine[s], rather than promote[s]” corporate innovation because it turns every policy change or product improvement into fodder for litigation.

**B. Evidence Of The 2026 Background Check Policy Changes Would Be Unduly Prejudicial.**

The evidence is also inadmissible because, even if it had some minimal probative value, any such value would be substantially outweighed by the danger of undue prejudice, waste of time, and jury confusion. *See* Fed. R. Evid. 403.

The most likely effect of telling the jury about Uber’s 2026 background check policy changes would be to confuse jurors by improperly suggesting that Uber’s screening practices at the time of the alleged assault were unsafe, unreasonable, or deficient, when the record does not support this inference.

*Kelly*, 2012 WL 12845618, at *2 (testimony "based on broad and unrelated conduct [] will be confusing to the jury and unduly prejudicial" to the defendant and should be limited to "only those corporate policies and initiatives . . . that were actually implemented" with respect to the plaintiff). The same would be true if the *QLF 001* feasibility stipulation, or any similar evidence, were introduced to jurors, because it would inevitably invite jurors to wrongly infer that Uber had some duty to implement the new background check policy earlier merely because the stipulation states that a 99-year trace "was technologically feasible as of 2020." Both of these highly prejudicial (and unsupported) suggestions would unfairly relieve Plaintiff of her burden of proof.

In addition, if Plaintiff were allowed to introduce the feasibility stipulation, or to otherwise insinuate that Uber's adoption of a new background check policy shows that the Uber application was defective at the relevant time, Uber would then be forced to defend against that claim in the form of a mini-trial about the operational, technological, and regulatory limitations, as well as the balance between rider safety and fair access to economic opportunity, across more than 60 different background-check adjudication standards nationwide. Such lines of inquiry would require substantial trial time and resources, despite the tenuous connection to the real issues in this case. *Tennison*, 244 F.3d at 690 (affirming exclusion where disputed evidence risked "an inefficient allocation of trial time" and the possibility of a "mini trial"). For this reason, too, any minimal probative value would be dwarfed by the real and substantial danger of undue consumption of time, confusing the issues, misleading the jury, and unfair prejudice to Uber.

### C. The 2026 Background Check Policy Change Is Independently Inadmissible Under Rule 407 As A Subsequent Remedial Measure.

Finally, the evidence at issue is independently inadmissible under Fed. R. Evid. 407.

It is well established that a subsequent remedial measure cannot be used as an admission of defect or liability. *See* Fed. R. Evid. 407. Consistent with this rule, federal courts have excluded evidence related to policy changes when offered to show that a defendant was at fault for an incident or injury. *See Williams v. J.B. Hunt Transp., Inc.*, 151 F.4th 1020, 1037-38 (9th Cir. 2025) (affirming district court's exclusion of evidence that, after the lawsuit was filed, defendant changed its policy because Rule 407 bars "use [of] the evidence of [defendant's] change in policy to prove the allegedly culpable conduct at the heart of their

[] claim"); *Cotton v. City of Eureka*, No. C 08-04386 SBA, 2010 WL 5154945, at *16 (N.D. Cal. Dec. 14, 2010), *on recons.*, 2011 WL 4047490 (N.D. Cal. Sept. 8, 2011) (granting defendant's motion *in limine* to exclude policy change instituted after the incident at issue because "it is plain that Plaintiffs are seeking to utilize evidence of the Police Chief's policy change for the very purpose proscribed by FRE 407, i.e., to establish Defendants' liability").

While Rule 407 contains a narrow carve-out for other limited purposes, such as feasibility of the measure at an earlier date, courts have made it clear that the feasibility exception does not apply where a party's true purpose is to prove culpable conduct. *Williams*, 151 F.4th at 1038 (affirming rejection of plaintiff's request to admit evidence of defendant's policy change where "they do not actually challenge whether it was 'feasible'" but seek to introduce the evidence to prove culpability). Here, the only conceivable purpose for introducing evidence of the 2026 background check policy change would be to use it as a proxy for liability. Thus, any attempt to invoke Rule 407's narrow feasibility exception would be entirely pretextual and improper.

Moreover, exclusion of the policy change and the feasibility stipulation would also promote the goals of Rule 407, which are to ensure that companies like Uber can continue updating policies to better align with today's expectations, without fear that later policy updates will be used against them to prove liability for past events in litigation. *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) ("Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them."); *accord Gilead*, 20 Cal. 5th at 427 (turning every corporate change into a litigation issue would "threaten[] to skew innovation priorities in a manner that does not advance—and may ultimately undermine—public health and safety"). Allowing Plaintiff to use a safety policy update as proof of past liability would discourage companies like Uber from making updates like those embodied in the 2026 changes. For this reason, too, the evidence should be excluded.

## VI. PRIOR COMPLAINT ABOUT DRIVER BY MR. M. [redacted]

At trial, Plaintiff intends to introduce evidence and testimony about an "unsafe vehicle" report made against Mr. Le by a previous passenger, to argue that Uber should have investigated Mr. Le before the alleged assault on Plaintiff. The Court should exclude all evidence and testimony about this earlier

accusation, including related expert testimony, because the accusation constitutes hearsay, and because evidence and testimony about the accusation would unfairly prejudice Uber, confuse the issues, and mislead the jury.

In the early morning of June 18, 2023, a male rider, M. [redacted], used the Uber App to connect with Mr. Le. *See* UBER-MDL3084-BW-00054507 (reflecting male appearance) (Ex. 4). Mr. Le drove Mr. [redacted] from Fremont, California to Hayward, California. *See* UBER-MDL3084-BW-00054508 (row 79) (Ex. 5); UBER-MDL3084-BW-00054505 (rows 418 & 1729) (Ex. 6). Within an hour after being dropped off, Mr. [redacted] submitted two reports to Uber in quick succession. First, Mr. [redacted] sent Uber a lost-item report at approximately 7:45 a.m. PT. That report stated "[c]ontact driver regarding lost items, I would like to inquire about lost items, but I cannot reach the driver." *See* UBER-MDL3084-BW-00011810 (Chinese) (Ex. 7); UBER-MDL3084-BW-00011810_zhCN_EN-US (English translation & certification) (Ex. 8).

Four minutes later, at about 7:49 a.m. PT, Mr. [redacted] submitted an unsafe-vehicle report through the Uber app about his ride with Mr. Le. *See* UBER-MDL3084-DFS00054771 (partially Chinese) (Ex. 9); UBER-MDL3084-DFS00054771_EN-US (English translation & certification) (Ex. 10). In that unsafe-vehicle report, Mr. [redacted] reported that Mr. Le's vehicle had mechanical failures, a damaged or missing seat belt, a damaged window and tail-light, broken heating or air conditioning, and other issues. *See id*. In addition, when asked why he felt the vehicle was unsafe, Mr. [redacted] wrote—***in English***—the word: "rapist." *Id.*

Within an hour, Uber responded to the unsafe-vehicle report, stating in part: "Hi M—, thanks for bringing this matter to our attention. We take the safety of all riders and drivers seriously, so we are eager to look further into the feedback you have provided. If it's okay with you, could you provide us with more details about what happened on this trip to help us in our review?" UBER-MDL3084-DFS00054771 at -54771–72 (Ex. 9). Although Uber issued that response in English, Uber also sent Mr. [redacted] two in-app push notifications the following day in Chinese asking him to call Uber again. UBER-MDL3084-BW-00054506 (partially Chinese) (rows 2 & 5) (Ex. 11); UBER-MDL3084-BW-00054506_EN-US (English translation & certification) (rows 2 & 5) (Ex. 12). Mr. [redacted] did not respond to any of these messages, and his unsafe-vehicle report was "marked as an insufficient information report pending . . . further detail being provided, which it was not[.]" 7/16/2025 G. Brown Dep. 404:18-405:24 (Ex. 13). Following the

June 18, 2023 ride, Mr. [redacted] requested dozens of rides on the Uber app over the next few years. *See* UBER-MDL3084-BW-00054508 (rows 2-78) (Ex. 5).

To the extent Plaintiff offers Mr. [redacted]'s one-word "rapist" entry to prove that Mr. Le in fact engaged in sexual misconduct toward Mr. [redacted], it is inadmissible hearsay. Fed. R. Evid. 801(c), 802. Plaintiff will likely respond that she offers the report not for its truth, but to show what Uber knew before her ride. But that non-hearsay purpose does not end the inquiry. A statement admitted only for notice carries a well-recognized risk that jurors will use it for its truth—here, as an accusation that Mr. Le is a "rapist"—and that risk must be weighed under Rule 403. Fed. R. Evid. 105, 403. The notice value of this entry is minimal: it was a single word typed into the "why did the vehicle feel unsafe" field of a report that also checked every mechanical-defect box, submitted minutes after a lost-item report, with no description of any conduct, no follow-up from Mr. [redacted] despite Uber's several requests in both English and Chinese, and no further complaint as Mr. [redacted] continued to use the Uber app for years.

This evidence should also be excluded because any nominal probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury[.]" Fed. R. Evid. 403. Should Plaintiff seek to introduce any evidence of or testimony about the supposed "rapist" accusation, Uber would need to introduce evidence demonstrating that: (i) there is no evidence that any sexual misconduct occurred during Mr. [redacted]'s ride; (ii) Mr. [redacted]'s accusation was part of an unsafe-vehicle report in which he also reported that every aspect of Mr. Le's car was broken or damaged in some way; (iii) Mr. [redacted] never responded to Uber's inquiries about his lost-item or unsafe-vehicle reports; (iv) Mr. [redacted] never again contacted Uber about this accusation; (v) Mr. [redacted] continued to take dozens of rides requested through the Uber app; (vi) Uber's handling of the supposed accusation complied with its internal policies and otherwise was proper; (vii) Plaintiff's experts' theory that a different investigation would have uncovered other information rests on improper speculation about what an unresponsive reporter might have said; and (viii) nothing about this supposed accusation, and any imagined investigation, would have changed anything with respect to Plaintiff's ride. Because "this line of inquiry would [lead] to a confusing and time-consuming mini-trial" on Mr. [redacted]'s collateral and unrelated accusation, it would be "well within the Court's discretion to exclude the evidence under Rule 403." *United States v. Hussain*,

No. 16-cr-00462, 2018 WL 3619797, at *27 (N.D. Cal. July 30, 2018) (Breyer, J.), *aff'd*, 818 F. App'x 765 (9th Cir. Aug. 26, 2020).

For all of these reasons, the Court should exclude all evidence and testimony about this earlier accusation, including related expert testimony.

## VII. ADMISSION OF EVIDENCE REGARDING ATTORNEY ADVERTISEMENTS

Finally, Uber affirmatively seeks permission to introduce evidence and argument regarding lawyer advertising that was sent to Plaintiff before she filed the instant lawsuit. This evidence is highly relevant because a central issue in this case is what led Plaintiff to allege that she was injured as a result of Uber's conduct—i.e., her motivation for bringing suit in the first place.[7]

As the timeline of events summarized below illustrates, [redacted]:

- **August 10, 2023**: Plaintiff's ride with Mr. Le.
- **August 18, 2023**: Plaintiff [redacted]. 7/1/2025 A.R. Dep. 157:8-11, 158:11-14 (Ex. 14).
- **August 19, 2023**: [redacted]. 7/1/2025 A.R. Dep. Exhibits 15 (Ex. 15) & 16 (Ex. 16).
- **August 29, 2023**: [redacted] 7/1/2025 A.R. Dep. Exhibit 17 (Ex. 17).
- **September 1, 2023**: [redacted]. *See* 9/1/2023 BW-A_R-[redacted]-000012-0015 (Ex. 18).
- **September 1, 2023**: [redacted]. 7/1/2025 A.R. Dep. 166:19-167:1 (Ex. 14).
- **April 5, 2024**: [redacted]" BW-A_R-000282 (Ex. 1).

In light of this evidence and timing of events, the jury should be able to decide what (if any) role advertisements played in Plaintiff's ultimate decision to file suit against Uber [redacted]. As courts around the country have recognized, whether a plaintiff brought suit after seeing

---

[7] Although this Court previously excluded evidence of attorney advertising in *Dean* and *Mensing*, Uber respectfully urges the Court to reach a different conclusion here both because the timeline of events is even clearer and the prevailing weight of authority supports Uber's position, as discussed in text.

attorney advertisements dangling the prospect of financial remuneration is directly relevant to their credibility. *See, e.g.*, *Herrera v. Eli Lilly & Co.*, No. 2:13-CV-02702-SVW-MAN, 2015 WL 12911753, at *4 (C.D. Cal. Aug. 3, 2015) (denying motion to exclude attorney advertising "insofar as this motion concerns evidence relating to Plaintiffs' decision to file the case"); *In re Mentor Corp. ObTape, Transobturator Sling Prods. Liab. Litig.*, MDL No. 2004, 2015 WL 7863032, at *5 (M.D. Ga. Dec. 3, 2015) (denying motion to exclude evidence of TV commercials regarding ObTape and other mesh litigation because it is relevant to "how [plaintiffs] discovered their potential claims"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 260989, at *7 (M.D. Fla. Feb. 4, 2009) (attorney advertising is relevant to determine whether "it played a role in a [p]laintiff's belief that he or she suffered injury as a result of Seroquel"); *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 WL 505234, at *3 (S.D. W. Va. Feb. 5, 2014) (denying plaintiff's motion in limine to exclude evidence that the plaintiff "was prompted by a television commercial to file suit"; evidence "is probative of her credibility regarding her injuries").

In fact, there may be no stronger bias than a financial interest in the outcome of the litigation. *See Behler v. Hanlon,* 199 F.R.D. 553, 555-56 (D. Md. 2001) ("[A] witness always may be impeached by evidence that she . . . is biased, prejudiced, has a financial interest in the outcome of the case, or a motive to testify in a particular manner."). And such impeachment evidence includes attorney advertising and "the chronology leading up to Plaintiffs' filing this case." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. CV 18-01912-AB (FFMx), 2019 WL 7185548, at *1 (C.D. Cal. Dec. 9, 2019) (denying motion to exclude attorney advertising evidence where such evidence "go[es] to [p]laintiffs' motivations for filing the lawsuit").

Admitting this evidence would not be unduly prejudicial. To the extent courts have excluded evidence of attorney advertising, they have done so out of concerns about improper attempts to impugn plaintiffs' lawyers. But Uber does not seek to attack counsel. Instead, Uber seeks to introduce limited testimony from Plaintiff about her own exposure to attorney advertising that led ***her*** to initiate this lawsuit. Such evidence merely lays out the facts and chronology that led to Plaintiff's lawsuit in this case and is not unduly prejudicial. *See In re Ford Motor*, 2019 WL 7185548, at *1 (denying motion to exclude attorney advertising where parties did not "intend[] to engage in personal attacks").

## CONCLUSION

For the foregoing reasons, the Court should exclude the matters discussed herein from trial.

DATED: November 20, 2026

Respectfully submitted,

*/s/ Geoffrey M. Wyatt*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Michael Vives (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
michael.vives@kirkland.com

Geoffrey M. Wyatt, P.C. (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3393
geoffrey.wyatt@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Geoffrey M. Wyatt*
Geoffrey M. Wyatt, P.C.