# EXHIBIT A
# REDACTED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | **CASE NO. 3:24-CV-07821-CRB** |
| | Judge: Hon. Charles R. Breyer |
| This Document Relates to: | Courtroom: 6 – 17th Floor |
| *A.R.2 v. Uber Technologies, Inc. et al., N.D. Cal No. 3:24-cv-07821* | |

# REBUTTAL REPORT OF BETSY BARTKO

**November 5, 2026**

## Uber GPS Route and Location Analysis Report

**Prepared by:** Betsy A. Bartko, Digital Forensic Analyst

**Case Number:** MDL3084

**Date of Report:** November 5, 2026

**Prepared for:** Kirkland & Ellis, LLP

---

### 1. Purpose of Report

I have been asked to review, analyze, and respond to the opinions of Plaintiff's experts Julia Moore and Robert Sniderman Moore and Sniderman offer opinions related to a ride that occurred on Sunday, June 18, 2023 between 6:41 AM and 7:03 AM in the San Francisco Bay Area, in California (the "Sunday, June 18, 2023 Ride"). The driver was MICHAEL LE and the rider was MING [redacted] Plaintiff's experts appear to opine that some sort of sexual misconduct occurred during this ride and that MING [redacted] is a female. *See, e.g.,* Moore Report, at 97-103, 107 (referring to MING [redacted] as "she"); Sniderman Report, at 4, 14-18.

I have been asked to review, analyze, reconstruct, and offer my expert opinion on a route using GPS (Global Positioning System) data captured by the Uber application the ride and to investigate whether there is any evidence in the form of trip irregularities that would support Plaintiff's experts' opinions that sexual misconduct occurred on the Sunday, June 18, 2023 Ride. I found no evidence of any deviations from the route or other trip irregularities in LE's GPS data that would support Plaintiff's experts' allegations regarding sexual misconduct on the Sunday, June 18, 2023 Ride.

I also investigated Plaintiff's experts' allegations that MING [redacted] is a woman. This is not accurate. Based on my review of the Uber documents in this case and publicly available database information, MING [redacted] is a male. I hold all my opinions in this report to a reasonable degree of scientific certainty.

---

### 2. Qualifications

I have worked both in cyber investigations and digital forensics for 20 years. In 2025, I retired from the Federal Bureau of Investigation (FBI) with 22 years as an agent conducting cyber investigations, analyzing digital evidence as a certified digital forensic examiner, and supervising

a Regional Computer Forensics Laboratory (RCFL). As the Director of the RCFL and chief quality manager, I ensured quality control and adherence to procedures for this full-service forensic laboratory and training center devoted to the examination of digital evidence in support of criminal investigations.

I have extensive experience in forensic processing and the extraction and analysis of data derived from mobile devices, computers, call detail records, vehicle electronics, drones, and various types of GPS units. This includes recovery of deleted data, device timeline analysis, device artifact presentations, GPS location analysis, preparation of records and creation of trial exhibits and knowledge of discovery procedures and formats.

In 2025, I joined Stutchman Forensic Laboratory and continue the forensic processing and analysis of digital devices, as well as the forensic analysis of audio and video recordings.

During my tenure with the FBI, I lectured and trained law enforcement, prosecutorial, and judicial personnel on many aspects of digital forensics pertinent to criminal investigations. I have also testified as an expert witness in local, state and federal court.

I have a Master of Science degree from DePaul University in Computer Information and Network Security. I am currently an instructor for Cellebrite Inc., a digital forensics company that provides tools for law enforcement and other organizations to collect, analyze, and manage digital data from devices like mobile phones and computers.

In addition to my various FBI certifications, I am also certified as a forensic technical assessor by the ANSI-ANAB National Accreditation board, which provides accreditation to testing and calibration laboratories against an international standard (ISO 17025).

---

## 3. Submitted Data Sources

### 3.1 The following data sets were considered in this analysis:

| Document | Description |
|---|---|
| UBER-MDL3084-BW-00054505.xlsx | GPS Coordinates and speed data for driver MICHAEL LE from 6/18/2023, 6:34:29 AM to 6/18/2023, 7:03:16 AM |
| UBER-MDL3084-BW-00054508.xlsx | Ride History for MING [redacted] from 2/14/2022 to 11/18/2025 |
| UBER-MDL3084-BW-00054509.xlsx | Rider Mobile Events Data for MING [redacted] from 6/18/2023, 6:34:14 AM to 6/18/2023, 7:52:52 AM |
| 2026.10.13 Julie Moore Supplemental Report (A.R.).pdf | Report of Human Resources standard practices |

| | |
|---|---|
| 2026.10.26 Expert Report of Sniderman (A.R.2).pdf | Report of standards of practice in Human Resources and workplace investigations |
| UBER-MDL3084-BW-00054507.pdf | Uber Safety Lens |
| Ming [redacted] Accurint Results.pdf | Accurint Advanced Person Search |

### 3.2 Data Types Provided by UBER[1]

Driver Speed and GPS Data recorded a local timestamp, GPS latitude and longitude, and speed in miles per hour every second for the duration of the ride. In analyzing the driver's timestamps, there is no missing data and the timestamps are continuous at every second.

Rider Mobile Events Data was recorded during specific Uber application events, when [redacted] interacted with the application, i.e. confirmation, home screen, rating card, trip fare view, etc. GPS data was collected during these interactions but are limited to [redacted] interactions in the application only.

Ride History recorded rider [redacted] trips with Uber; when a ride was requested, the pick-up time, drop-off time, status and ratings of the ride for the period of 2/14/2022 to 11/18/2025.

[1] I have relied on this data and the other materials cited throughout this report and on my materials considered list.

## 4. Methodology

### 4.1 Tools Utilized

GPS and location data was provided and reviewed in spreadsheet format in Microsoft Excel. All timestamps were confirmed to be in local time, Pacific Daylight Time (PDT).

Using QGIS (Quantum Geographic Information System), an open-source application used commonly in law enforcement, government and academia for working with GPS and location data to plot location and visualize routes, the ride route was mapped.[2] Google Earth was used to validate the findings as well as to provide historical satellite imagery where available (2023).

### 4.2 GPS Data Accuracy

From training and experience as noted above, I intend to testify regarding a hybrid positioning system utilized by modern smartphones for determining device location, including GPS (Global Positioning System), wireless networks (Wi-Fi), Bluetooth, cellular tower triangulation, and device sensors such as motion and orientation, that detect movement, rotation, and direction. This positioning system data is then processed by the phone's operating system, i.e. Android or iOS, and then passed along to applications which request the data.[3]

In open-sky conditions, GPS accuracy generally falls within a range of 10 to 16 feet (3-5 meters). Other factors can also contribute to the range, for example: proximity to buildings, tree cover, number of available satellites or severe weather. The range could be extended if the device is indoors.

Historical weather data for the Bay Area on Sunday, June 18, 2023 was recorded as partly cloudy/fair conditions. [4] This weather would indicate favorable GPS accuracy between 10-16 feet.

## 5. Data Analysis, Findings, and Timeline Analysis

### 5.1 Timeline of MING [redacted] Ride with MICHAEL LE on June 18, 2023

The ride began at 6:41:25 AM and concluded at 7:03:16 AM, approximately a 22-minute duration and 19-mile route.

| Timestamp | Event | Source |
|---|---|---|
| 6:41:25 AM | LE picks up [redacted] at [redacted] Fremont, CA | Driver GPS Data<br>Ride History for MING [redacted]<br>Rider Mobile Events |
| 7:03:16 AM | LE drops off [redacted] at [redacted] Hayward, CA | Driver GPS Data<br>Ride History for MING [redacted]<br>Rider Mobile Events |

The ride began at a [redacted] in Fremont, heading north towards the [redacted] turning east onto the freeway. LE then entered Interstate 880 going north. LE exited the interstate at [redacted] heading east and then to the destination at [redacted] in Hayward.

The ride speed ranged from zero to 83 miles per hour with an average speed of 51 miles per hour.

According to LE's continuous, every-second GPS collection, no stops were made other than stops at traffic lights or intersections. I observed no irregularities in LE's GPS data that would suggest anything unusual occurred during the ride.

Note: This report deals with GPS data that was recorded on mobile devices, the movements of which were from the phone and cannot be conclusively attributed to the actual movements of the people themselves, only that their phones were collecting the data.

### 5.2 Images from Ride Route, Start and End Points, in Chronological Order

Route overview [redacted] Fremont, CA to [redacted] Hayward, CA




Figure 1: Image source: QGIS with Google Hybrid view.

Ride pick-up, [redacted], Fremont, CA

[redacted]

Ride Drop-off, [redacted] Hayward, CA

[redacted]

### 5.3 [redacted] Mobile Events Data

I also reviewed Mobile Rider Events data for MING [redacted] The Mobile Events data generally captures [redacted] GPS data. It is clear based on the Mobile Events Data that [redacted] entered LE's vehicle at the beginning of the trip and rode with LE to the drop-off point. However, in the Mobile Rider Events data for [redacted] several recorded GPS coordinates and timestamps appear to be errant. At 6:46:03, while the ride was in progress, his location is captured in a residential neighborhood approximately 350 yards away from driver LE. (see figure 4). However, there was no stop or drop-off at the neighborhood location. [redacted] location stays here for 4 minutes and 35 seconds, while the ride continued along its route. ([redacted] location is represented by the blue dot).




Figure 4: Image source: QGIS with Google Hybrid view.

At 6:50:46, [redacted] location is captured on Interstate 880 near Driver LE's location.




Figure 5: Image source: QGIS with Google Hybrid view.

Also, at the exact time of 6:50:46, [redacted] location is recorded again in the residential neighborhood as noted above, then toggles back to the Interstate 880 location at 6:50:47, seemingly putting him in two locations at the same time at 6:50:46.

| Local Timestamp | Latitude | Longitude |
|---|---|---|
| 2023-06-18 6:50:46 | 37.53407 | -122.00928 |
| 2023-06-18 6:50:46 | 37.53407 | -122.00928 |
| 2023-06-18 6:50:46 | 37.53407 | -122.00928 |
| 2023-06-18 6:50:46 | 37.51365 | -121.9534 |
| 2023-06-18 6:50:46 | 37.51365 | -121.9534 |
| 2023-06-18 6:50:46 | 37.51365 | -121.9534 |

From 6:50:48 until 6:53:08, [redacted] location is stationary on Interstate 880.

At 6:53:15, [redacted] location is in the same location as LE on Interstate 880, but his location is captured there (i.e. stopped I the middle of the freeway) until 7:03:32.




Figure 6: Image source: QGIS with Google Hybrid view.

Finally, LE's GPS coordinates place him at the destination at [redacted] at 7:03:16, while [redacted] GPS coordinates still show him on Interstate 880.

There are several possibilities causing the errant data, including but not limited to:

A <u>multipath error</u> is caused when more than one GPS signal is captured by a device, in this case [redacted] mobile phone. The error can be caused by the GPS signal bouncing off tall buildings, overpasses, tunnels, or other urban monuments. This isn't likely as the route was along wide freeways with no obvious interference.

<u>Poor satellite geometry</u> is caused when the receiving device receives signals from too few satellites. This also seems unlikely as driver LE's GPS location was calculated precisely every second and is accurately represented on the route.

Location settings on [redacted] phones are a possible source of errant data. Modern mobile phones are capable of not only using GPS signals for determining location but also Wi-Fi signals and cell towers. Depending on [redacted] phone location settings, it's possible his location was captured from a Wi-Fi source or a cell tower.

Application or phone errors can cause data collection to be interrupted by processes running on the phone during updates, application bugs, automatic background processes, or application crashes which may close an application unexpectedly causing errors in the data.

Rebooting the phone would cause the phone to stop collecting GPS signals for an unknown period of time when the phone is off. If [redacted] rebooted his phone, there would have been a period of time during the cold startup when his phone attempted to connect to the network as well as searching for GPS signals. Again, depending on [redacted] phone location settings, the phone could have been attempting to establish a connection with satellites, Wi-Fi, or cell towers.

Potentially stale data: The mobile events may not have constantly updated for other reasons (e.g. unexpected exceptions).

Ultimately, I do not know what caused the errant data points.

Notwithstanding the few errant data points, there are substantial overlaps in LE's and [redacted] GPS data that was recorded at the ride start and ride destination, indicating the errant data collection occurred sometime between the start and end of the ride. Despite the errant data, it is my opinion that [redacted] entered LE's vehicle at the beginning of the ride and exited at the drop-off point. There were no stops recorded during LE's route. It would have been physically impossible for [redacted] to catch up to LE or for [redacted] to stop in the middle of the freeway, as would have to be the case if [redacted] Mobile Events data points were entirely accurate. Thus, it is my opinion that [redacted] was in LE's vehicle the entire trip and that there were no irregularities in the trip data to support Plaintiff's experts' contentions that anything unusual occurred during the Sunday, June 18, 2023 Ride.

Ride pick-up with LE and [redacted] GPS locations

[redacted]

Figure 7: Image source: QGIS with Google Hybrid view.

Ride drop-off with LE and [redacted] GPS locations

[redacted]

Figure 8: Image source: QGIS with Google Hybrid view.

## 6. MING [redacted] Is Male

I was provided with two expert reports: SUPPLEMENTAL REPORT OF JULIE A. MOORE, ESQ., SPHR, SHRM-SCP, Case No. 24-cv-7821 (A.R.2) and EXPERT REPORT OF ROBERT SNIDERMAN, PH.D., Case No. 24-cv-7821 (A.R.2) for consideration in this report. After review, it was unclear whether Sniderman or Moore were opining that MING [redacted] was a woman. In Sniderman's report, the rider is only identified as "Ming", and in Moore's report, the rider is identified as both "she" and "they" as well as "Ming (last name unknown)." Neither report mentions nor confirms the rider's UUID (Universally Unique Identifier) assigned by Uber. Therefore, to confirm Ming's gender is male, I requested further identifying information for MING [redacted]

I requested an Accurint Advanced Person Search report from Kirkland-Ellis LLP to confirm MING [redacted] identity. In my experience as an FBI agent, I routinely reviewed and relied on Accurint reports to assist with confirming identities. I received the Accurint Advanced Person Search report for MING [redacted] Accurint, a LexisNexis product, is a public records and investigative database used by authorized subscribers such as law enforcement, government agencies, legal professionals, etc. This report returned current address information and identified MING [redacted] as male.

I also received and reviewed the document "UBER-MDL3084-BW-00054507.pdf"; Uber's internal Safety Lens document for rider MING [redacted] [redacted] photo is captured and he appears to be male.

[redacted]

This document also confirmed [redacted] UUID, b327e85d-07e2-43e1-a0b4-cd837275854f, as the same UUID in the Rider Mobile Events, and Rider History data I received.

## 7. Conclusion

This report summarizes and analyzes the information available based on the methods described herein, for the GPS data collected by the Uber application for Driver MICHAEL LE and MING [redacted] on Sunday, June 18, 2023 and research I conducted and analyzed on [redacted]

I reserve the right to amend this report if new data becomes available.

Prepared by:

Betsy Bartko
Date: November 5, 2026

---

## 7. References

[1] "Understanding Your Data" *Uber.com*, 2026, https://privacy.uber.com/viewwhatpowersyourexperience

[2] QGIS Project. (2026). *QGIS Geographic Information System* (3.44.6-Solothurn). https://www.qgis.org

[3] SANS Institute, *FOR585: Smartphone Forensic Analysis In-Depth.*

[4] "San Francisco, CA Weather History – June 18, 2023", *Weatherunderground.com*, https://www.wunderground.com/history/daily/us/ca/sacramento/KSAC/date/2025-5-28

---

## 8. Materials Considered

- *See* Report, section 3.1 for submitted data sources
- Google© Maps/Earth
- 2026.10.13 Julie Moore Supplemental Report.pdf
- 2026.10.26 Expert Report of Sniderman (A.R.2).pdf
- UBER-MDL3084-BW-00054507.pdf
- Ming [redacted] Accurint Results.pdf